**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE APPOINTMENT OF KROLL**
**RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE AS TO THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this application (the "Application"):

## Relief Requested

1.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing, but not directing, the Debtors to appoint Kroll Restructuring Administration LLC ("Kroll")[2] as claims and noticing agent ("Claims and Noticing Agent") in their Chapter 11 Cases (as defined herein) effective as to the Petition Date (as defined herein) pursuant to the terms and conditions of that certain engagement agreement dated January 20, 2023, by and between the Debtors and Kroll (the "Engagement Agreement"), and (b) granting related relief.  A copy of the Engagement Agreement is attached hereto as Exhibit 1 to **Exhibit A**.  In support of this application, the Debtors submit the Declaration of Benjamin J. Steele, Managing Director of Kroll (the "Steele Declaration"), attached hereto as **Exhibit B**.[3]

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

---

[2]    Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

[3]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, 28 U.S.C. §§ 1–5001, and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

**Background**

5.    The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more. In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America. Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

6.    The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders. Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

7.    On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrent with the filing of this Motion, the Debtors filed a motion

requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant
to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been
made in these Chapter 11 Cases, and no official committees have been appointed or designated.

### Kroll's Qualifications

8.      Kroll is comprised of leading industry professionals with significant experience in
both the legal and administrative aspects of large, complex chapter 11 cases.    Kroll's
professionals have experience in noticing, claims administration, solicitation, balloting, and
facilitating other administrative aspects of chapter 11 cases and experience in matters of this size
and complexity.    Kroll's professionals have acted as debtor's counsel or official claims and
noticing agent in many large bankruptcy cases in this district and others.    *See, e.g.*,
*In re BlockFi Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Nov. 30, 2022); *In re FTX Trading Ltd.,*
No. 22-11068 (JTD) (Bankr. D. Del. Nov 22, 2022); *In re Endo Int'l plc,* No. 22-22549 (JLG)
(Bankr. S.D.N.Y. Sept. 6, 2022); *In re GenapSys, Inc.,* No. 22-10621 (BLS) (Bankr. D. Del.
July 13, 2022); *In re SAS AB,* No. 22-10925 (MEW) (Bankr. S.D.N.Y July 8, 2022); *In re Revlon
Inc.,* No. 22-10760 (DSJ) (Bankr. S.D.N.Y. June 17, 2022); *In re TPC Grp. Inc.*, No. 22-10493
(CTG) (Bankr. D. Del. June 2, 2022); *In re Ruby Pipeline, LLC,* No. 22-10278 (CTG)
(Bankr. D. Del. Apr. 4, 2022); *In re Diocese of Camden,* No. 20-21257 (JNP) (Bankr. D.N.J Oct.
8, 2020); *In re Modell's Sporting Goods, Inc.,* No. 20-14179 (VFP) (Bankr. D.N.J Mar. 13,
2020); *In re Hollister Constr. Servs., LLC,* No. 19-27439 (MBK) (Bankr. D.N.J. Sept. 16, 2019);
*In re Aceto Corp.,* No. 19-13448 (VFP) (Bankr. D.N.J. Feb. 22, 2019); *In re Frank Theatres
Bayonne/S. Cove, LLC,* No. 18-34808 (SLM) (Bankr. D.N.J. Dec. 21, 2018); *In re Mountain
Creek Resort, Inc.,* No. 17-19899 (SLM) (Bankr. D.N.J. May 17, 2017).

9.      Appointing Kroll as the Claims and Noticing Agent in these Chapter 11 Cases
will expedite and maximize the efficiency of the distribution of notices and the processing of

claims, as well as relieve the Office of the Clerk of the Bankruptcy Court (the "<u>Clerk</u>") of the administrative burden of processing an overwhelming number of claims.  Prior to selecting Kroll as their Claims and Noticing Agent, the Debtors solicited and reviewed engagement proposals from two other Court-approved claims and noticing agents to ensure selection through a competitive process.  The Debtors submit that Kroll's rates are competitive and reasonable given Kroll's quality of services and expertise.  The terms of Kroll's engagement are set forth in the Engagement Agreement.

## <u>Scope of Services</u>

10.    This Application only pertains to the work to be performed by Kroll pursuant to the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c).  Any work to be performed by Kroll that falls outside of this scope is not covered by this application or by any order granting approval hereof.  Specifically, Kroll will perform the following tasks in its capacity as Claims and Noticing Agent, as well as all quality control relating thereto:

a)    Prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") in the form and manner directed by the Debtors and/or the Court, including (a) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (b) notice of any claims bar date, (c) notices of transfers of claims, (d) notices of objections to claims and objections to transfers of claims, notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (e) notice of the effective date of any plan, and (f) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules and Statements</u>"), listing the Debtors' known creditors and the amounts owed thereto;

c)     Maintain a list of all potential creditors, equity holders and other parties in interest and a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties who have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make such lists available upon request by a party in interest or the Clerk;

d)     Furnish a notice to all potential creditors of the deadline for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims, as set forth in the Schedules and Statements, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules and Statements indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f)     For all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service, which includes (a) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (b) a list of persons or entities on whom it was mailed (in alphabetical order) with their addresses, (c) the manner of service, and (d) the date served;

g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h)     Provide an electronic interface for filing proofs of claim;

i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk on a case-specific website; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (a) the claim number assigned; (b) the date received; (c) the name and address of the claimant and agent, if applicable, who filed the claim; (d) the amount asserted; (e) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (f) the applicable Debtor; and (g) any disposition of the claim;

j)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

k)      Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

l)      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m)      Relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of Kroll not less than weekly;

n)      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

o)      Monitor the Court's docket for all notices of appearance, address changes, claims-related pleadings, and orders filed, and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p)      Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q)      Assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

r)      Monitor the Court's docket in these Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error.

s)      If these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of notice to Kroll of entry of the order converting the cases;

t)      Thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Kroll as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

u)      Within seven (7) days of notice to Kroll of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

      v)      At the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk, to (a) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (b) any other location requested by the Clerk.

11.    For the avoidance of doubt, this Application pertains only to services to be provided by Kroll pursuant to 28 U.S.C. § 156(c) and does not seek approval for Kroll to perform any services outside of that scope. However, the Debtors reserve the right to seek authority to retain Kroll to perform additional services pursuant to section 327 of the Bankruptcy Code.

## **Professional Compensation**

12.    The Debtors respectfully request that the undisputed fees and expenses incurred by Kroll in the performance of the above-listed services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Kroll agrees to maintain records of all services, which will include dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for Region 3 (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any other party in interest that specifically requests service of Kroll's monthly invoices. If any dispute arises relating to the Engagement Agreement or Kroll's monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; *provided* that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful.

13.     Prior to the Petition Date, the Debtors provided Kroll an advance in the amount of $100,000.  Kroll first seeks to apply the advance to all prepetition invoices, and, thereafter, to have the advance replenished to the original advance amount, and, thereafter, to hold the advance during these Chapter 11 Cases as security for the payment of fees and expenses incurred pursuant to the Engagement Agreement.

14.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Kroll and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances solely resulting from Kroll's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or by order of this Court.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

### Kroll's Disinterestedness

15.     Although by this application the Debtors do not propose to employ Kroll under section 327(a) of the Bankruptcy Code, Kroll nevertheless has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest identified by the Debtors.  To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Kroll has represented that it neither holds nor represents any interests that are materially adverse to the Debtors' estates in connection with any matter on which it will be employed.

16.     Moreover, in connection with its appointment as Claims and Noticing Agent, Kroll represents in the Steele Declaration, among other things, that:

(a)     Kroll is not a creditor of the Debtors;

9

(b)    Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)    By accepting employment in these Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)    In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)    Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)    Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)    In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)    Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by Kroll as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

17.    Kroll will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## **Basis for Relief Requested**

18.    Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's office for administration of bankruptcy cases.  It states as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties

> in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

19.     Moreover, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court may rely on its general equitable powers to grant the relief requested herein.

20.     The Debtors request entry of an order authorizing the appointment of Kroll as their Claims and Noticing Agent, *nunc pro tunc* to the Petition Date, the duties of which include assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these Chapter 11 Cases. Such relief is appropriate in light of 28 U.S.C. § 156(c) and in order to relieve the Court and the Clerk's office of the heavy administrative burdens these Chapter 11 Cases stand to impose. Specifically, although the Debtors have not yet filed their Schedules and Statements, they anticipate that they will be required to provide notices to, and serve documents on, thousands of entities. In view of the number of anticipated claimants and the complexity of these Chapter 11 Cases, the Debtors submit that the appointment of a Claims and Noticing Agent is in the best interests of the Debtors' estates, their creditors, and all parties in interest.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

21.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Application, the Debtors believe an immediate and orderly transition

into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. The appointment of Kroll as Claims and Noticing Agent is vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Request of Waiver of Stay

22. To the extent that the relief sought in the Application constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Application is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

23. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to rule 9013-1(a)(3) of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules") because the legal basis upon which the Debtors rely is set forth herein and the Application does not raise any novel issues of law.

## No Prior Request

24. No prior request for the relief sought in this Application has been made to this Court or any other court.

## **Notice**

25.     The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; (m) counsel for any committee appointed by this Court; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:        msirota@coleschotz.com
                 wusatine@coleschotz.com
                 fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:        josuha.sussberg@kirkland.com
                 emily.geier@kirkland.com
                 derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER (I) AUTHORIZING THE APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through nine (9), is hereby

**ORDERED.**

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/BBBY.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

Upon the *Debtors' Application for Entry of an Order (i) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to, pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of the Bankruptcy Code, appoint Kroll Restructuring Administration LLC ("Kroll") as claims and noticing agent (the "Claims and Noticing Agent") in their Chapter 11 Cases, pursuant to the terms of the Engagement Agreement, effective as of the Petition Date, all as more fully set forth in the Application; and (b) granting related relief; and upon the First Day Declaration and the *Declaration of Benjamin J. Steele in Support of Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief* (the "Steele Declaration"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**,

1.      The Application is **GRANTED** to the extent set forth herein**.**

2.      The Debtors are authorized to retain Kroll as Claims and Noticing Agent, effective as to the Petition Date, pursuant to the terms of the Engagement Agreement, in the form attached hereto as Exhibit 1, and Kroll is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and all related tasks, all as described in the Application.

3.      Any services Kroll will provide relating to the Debtors' schedules of assets and liabilities and statements of financial affairs shall be limited to administrative and ministerial services.  The Debtors shall remain responsible for the content and accuracy of their schedules of assets and liabilities and statements of financial affairs.

4.      Kroll shall serve as the custodian of Court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate of any and all proofs of claim upon the request of the Clerk.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

5.      Kroll is authorized and directed to provide public access to every proof of claim unless otherwise ordered by the Court and to obtain a post office box or address for the receipt of proofs of claim.

6.      Kroll is authorized to take such other action to comply with all the duties set forth in the Application.

7.      The Debtors are authorized to compensate Kroll in accordance with the terms of the Engagement Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged therefor, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to file fee applications or otherwise seek Court approval for the payment of compensation for services rendered and reimbursement of expenses incurred.

8.      Kroll shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any other party in interest that specifically requests service of the monthly invoices.

9.      Parties shall have ten (10) days from receipt of the invoice to review such invoice and raise any objections, either formally through the filing of an objection with the Court or informally through a writing served on Kroll, to the fees and expenses being requested by Kroll. If an objection is interposed, the parties shall meet and confer in an attempt to resolve any

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

dispute which may arise relating to the Engagement Agreement or Kroll's monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful.  If no objection has been raised, the Debtors are authorized to pay Kroll the full amount of the requested fees and expenses upon expiration of the ten (10) day review without further order of the Court.  If an objection has been raised, the Debtors may not pay the objected to amount pending agreement of the parties or entry of an order of this Court authorizing payment.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates.  Kroll may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and, thereafter, Kroll may hold its advance during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     Kroll shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Kroll, or provide contribution or reimbursement to Kroll, for any claim or expense that is either:  (i) judicially determined (the determination having

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

become final) to have arisen from Kroll's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Kroll's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Kroll should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified by this Order.

14.     If, before the earlier of the entry of an order (i) confirming a chapter 11 plan in these Chapter 11 Cases (that determination having become final) or (ii) closing these Chapter 11 Cases, Kroll believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement, as modified by this Order, including the advancement of defense costs, Kroll must file an application therefor in this Court, and the Debtors may not pay any such amounts to Kroll before the entry of an order of this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Kroll for indemnification, contribution, or reimbursement and is not intended to limit the duration of the Debtors' obligation to indemnify Kroll.   All parties in interest shall retain the right to object to any demand by Kroll for indemnification, contribution, or reimbursement.

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

15.    In the event Kroll is unable to provide the services set out in this Order, Kroll shall immediately notify the Clerk and counsel for the Debtors and, upon approval of the Court, shall cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and counsel for the Debtors.

16.    The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

17.    Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 6 thereof, by this Order, the Court is not authorizing Kroll to establish financial accounts with financial institutions on behalf of the Debtors.

18.    Notwithstanding anything to the contrary contained in the Engagement Agreement, the 1.5% late charge in paragraph 2(c) of the Engagement Agreement shall not be assessed during the pendency of these Chapter 11 Cases.

19.    Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 15 thereof, the Court shall have exclusive jurisdiction over Kroll's engagement during the pendency of these Chapter 11 Cases, and the Arbitration clause shall have no force or effect during the pendency of these Chapter 11 Cases.

20.    Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 2(h) thereof, Kroll shall provide at least ten (10) days' notice of any increases in its billing rates, subject to the parties in interest's right to object to any such increases.

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

21.     Notwithstanding anything to the contrary in the Engagement Agreement, in the event that any of these chapter 11 cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement of Kroll.

22.     The Debtors may submit a separate retention application, pursuant to section 327(a) of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Kroll but that is not specifically authorized by this Order.

23.     To the extent applicable, Kroll shall exclude the Debtors' bankruptcy cases and related information, as well as information regarding any of the Debtors' non-Debtor affiliates, from any file sharing arrangement with Xclaim, Inc. or any other entity operating a marketplace or similar service to facilitate trade or resolution of claims held against bankruptcy or insolvent entities.

24.     Kroll shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

25.     In the event of any inconsistency between the Engagement Agreement and this Order, this Order shall govern.

26.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Application or otherwise deemed waived.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as to the Petition Date, and (II) Granting Related Relief |

28.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

29.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

30.     The requirement set forth in 9013-1(a)(3) of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules") that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived.

31.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

32.     A true copy of this Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

33.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Kroll Engagement Agreement**



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of January 20, 2022 between Kroll Restructuring Administration LLC ("***Kroll***") and Bed Bath & Beyond Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  <u>**Services**</u>

    (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2.  <u>**Rates, Expenses and Payment**</u>

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll will provide a discount of 10% off the attached hourly rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

    (c) Kroll will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $100,000.  Kroll may use such advance against unpaid fees and expenses hereunder.  Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5.  **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

6.  **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Kroll's agreement with financial institutions, Kroll may receive compensation from such institutions for the services Kroll provides pursuant to such agreement.

7.  **Term and Termination**

> (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.
>
> (b) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.
>
> (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.
>
> (d) If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.  **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9. **Indemnification**

    (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

    (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

    (a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

    (c) Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d)  If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e)  Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a)  Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
|  | 55 East 52nd Street, 17th Floor |
|  | New York, NY 10055 |
|  | Attn:   Legal Department |
|  | Tel:     (212) 257-5450 |
|  | Email:  Legal@kbs.kroll.com |

|  |  |
|---|---|
| If to the Company: | Bed Bath & Beyond Inc. |
|  | 650 Liberty Ave. |
|  | Union, New Jersey 07083 |
|  | Attn: David Kastin |
|  | Tel: 908-688-0888 |
|  | Email: david.kastin@bedbath.com |

|  |  |
|---|---|
| With a copy to: | Kirkland & Ellis LLP |
|  | 601 Lexington Avenue |
|  | New York, NY 10022 |
|  | Attn:   Emily E. Geier |
|  | Tel:     (212) 446-6429 |
|  | Email:  emily.geier@kirkland.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Shira Weiner
Title: General Counsel

Bed Bath & Beyond Inc.

By: David Kastin
Title: EVP - Chief Legal Officer



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
|---|---|
| **TITLE** | **HOURLY RATE** |
| **Analyst** <br> The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant** <br> The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant** <br><br> The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience. <br><br> The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 - $195 |
| **Director** <br> The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



## R A T E S

Quality.
Partnership.
Expertise.
Innovation.

### Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

### Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



## R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106

## **Exhibit B**

**Steele Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF BENJAMIN J. STEELE**
**IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE APPOINTMENT OF KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE**
**AS TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF DATE**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.      I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"),[2] a chapter 11 administrative services firm whose offices are located at 55 East 52nd Street, 17th Floor, New York, NY 10055.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the application (the "Application")[3] of Bed Bath & Beyond Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"), for entry of an Order authorizing the appointment of Kroll as their Claims and Noticing Agent.

3.      Kroll is comprised of industry-leading professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Kroll's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this district and others.  *See, e.g.*, *In re BlockFi Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Nov. 30, 2022); *In re FTX Trading Ltd.,* No. 22-11068 (JTD) (Bankr. D. Del. Nov. 22, 2022); *In re Endo Int'l plc,* No. 22-22549 (JLG) (Bankr. S.D.N.Y. Sept. 6, 2022); *In re GenapSys, Inc.,* No. 22-10621 (BLS) (Bankr. D. Del. July 13, 2022); *In re SAS AB,* No. 22-10925 (MEW) (Bankr. S.D.N.Y July 8, 2022); *In re Revlon*

---

[2]     Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

[3]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Application.

4

*Inc.,* No. 22-10760 (DSJ) (Bankr. S.D.N.Y. June 17, 2022); *In re TPC Grp. Inc.*, No. 22-10493

(CTG) (Bankr. D. Del. June 2, 2022); *In re Ruby Pipeline, LLC,* No. 22-10278 (CTG)

(Bankr. D. Del. Apr. 4, 2022); *In re Diocese of Camden,* No. 20-21257 (JNP) (Bankr. D.N.J Oct.

8, 2020); *In re Modell's Sporting Goods, Inc.,* No. 20-14179 (VFP) (Bankr. D.N.J Mar. 13,

2020); *In re Hollister Constr. Servs., LLC,* No. 19-27439 (MBK) (Bankr. D.N.J. Sept. 16, 2019);

*In re Aceto Corp.,* No. 19-13448 (VFP) (Bankr. D.N.J. Feb. 22, 2019); *In re Frank Theatres*

*Bayonne/South Cove, LLC,* No. 18-34808 (SLM) (Bankr. D.N.J. Dec. 21, 2018); *In re Mountain*

*Creek Resort, Inc.,* No. 17-19899 (SLM) (Bankr. D.N.J. May 17, 2017).

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Kroll

will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the

services specified in the Application and the Engagement Agreement, and, at the Debtors'

request, any related administrative, technical, and support services as specified in the Application

and the Engagement Agreement.  In performing such services, Kroll will charge the Debtors the

rates set forth in the Engagement Agreement.

5.      Kroll represents, among other things, the following:

(a)     Kroll is not a creditor of the Debtors;

(b)     Kroll will not consider itself employed by the United States government
and shall not seek any compensation from the United States government in
its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)     By accepting employment in these Chapter 11 Cases, Kroll waives any
rights to receive compensation from the United States government in
connection with these Chapter 11 Cases;

(d)     In its capacity as the Claims and Noticing Agent in these Chapter 11
Cases, Kroll will not be an agent of the United States and will not act on
behalf of the United States;

(e)     Kroll will not employ any past or present employees of the Debtors in
connection with its work as the Claims and Noticing Agent in these
Chapter 11 Cases;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

6.     To the best of my knowledge and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll nor any of its professionals have any materially adverse connection to the Debtors, their creditors, or other relevant parties. Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

7.     Kroll has reviewed its electronic database to determine whether it has any relationships with the persons and entities on the list of potential parties in interest provided by the Debtors. Based on the results of such search, at this time, Kroll is not aware of any relationship that would present a disqualifying conflict of interest. Should Kroll discover any new, relevant facts or relationships bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly file a supplemental declaration.

8.     Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these Chapter 11 Cases. Such firms include Kirkland & Ellis LLP ("K&E"); Weil, Gotshal & Manges LLP;

O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed.

9.      I was previously an associate at K&E, co-counsel to the Debtors in these Chapter 11 Cases.  In addition, Brad Weiland, a Managing Director of Kroll, was previously a partner at K&E.  I left K&E in August 2013, and Mr. Weiland left K&E in November 2021. Neither I nor Mr. Weiland worked on any matter involving the Debtors while employed by K&E.

10.      I understand that K&E has represented and currently represents Kroll in matters unrelated to the Debtors and these Chapter 11 Cases.  I do not believe that these connections preclude Kroll from meeting the disinterestedness standard under the Bankruptcy Code.

11.      James Waldron, former Clerk of the United States Bankruptcy Court for the District of New Jersey, joined Kroll as Senior Advisor in March 2017.  Mr. Waldron was not employed as Clerk of the United States Bankruptcy Court for the District of New Jersey when these Chapter 11 Cases were filed.

12.      Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent").  Kroll Parent is the world's premier provider of services and digital products related to governance, risk, and

transparency.  Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent.  As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders.  Kroll Parent is not currently identified on the Potential Parties in Interest list, but Kroll makes this disclosure out of an abundance of caution.

13.    Kroll, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' Chapter 11 Cases. Kroll may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

14.    Kroll and its personnel, in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Kroll, or its personnel, may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to these Chapter 11 Cases.

15.    Kroll further declares that Kroll does not now have, nor has it ever had, any contract or agreement with XClaim Inc. or with any other party under which Kroll provided, provides, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

16.     Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Kroll is to be engaged.

Pursuant to 28 U.S.C. § 1746, 1 declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on _____ April 23 _, 2023

BENJAMIN J. STEELE
Managing Director, Kroll Restructuring
Administration LLC