**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS (I) AUTHORIZING THE**
**DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

## **Relief Requested**

1.     The Debtors seek entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  (a) authorizing, but not directing, the Debtors to (i) pay all prepetition wages, salaries, reimbursable expenses, and other obligations incurred on account of the Employee Compensation and Benefits Programs (each as defined herein) in the ordinary course of business and (ii) continue to administer the Employee Compensation and Benefits Programs in the ordinary course of business during these Chapter 11 Cases (as defined herein), and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing 28 days after the commencement of these Chapter 11 Cases to consider entry of an order approving the relief requested herein on a final basis.[2]

## **Jurisdiction and Venue**

2.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 9013-1, and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.    The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

6.    The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

7.    On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting

procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

### The Debtors' Workforce

8.      As of the Petition Date, the Debtors employ approximately 14,000 individuals in the United States, Puerto Rico, and Canada (collectively, the "Employees"), approximately 6,000 of whom are employed on a full-time basis and approximately 8,000 of whom are employed on a part-time basis.  Approximately 1,600 Employees earn a salary and approximately 12,400 Employees are paid on an hourly basis.  In addition to the Employees, the Debtors have historically sourced critical labor support from various agencies and periodically retain specialized individuals as independent contractors (the "Independent Contractors") to complete discrete projects.  At this time, the Debtors retain approximately 50 Independent Contractors.  The Independent Contractors are an important supplement to the efforts of the Debtors' Employees.

9.      The Debtors' Employees and Independent Contractors perform a wide variety of functions critical to the operations at the Debtors' offices, distribution and fulfillment centers, and stores.  Certain of these individuals are highly trained and have an essential working knowledge of the Debtors' businesses that cannot be easily replaced.  The remainder of the Employees and Independent Contractors provide services necessary to continue the Debtors' operations and maximize the value of the Debtors' estates.  Without the continued, uninterrupted services of their Employees and Independent Contractors, the Debtors' ability to efficiently conduct their business operations during the pendency of these Chapter 11 Cases will be threatened.  Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these Chapter 11 Cases.

**Employee Compensation and Benefits Programs**

10.     The Debtors seek authority to (a) pay and honor certain prepetition claims, if any,

relating to, among other things, Employee Compensation, Independent Contractor Compensation,

Payroll Processing Fees, Withholding and Deduction Obligations, Reimbursable Expenses, Health

and Welfare Programs, Paid and Unpaid Leave, WARN Act Obligations, Non-Employee Director

Compensation, and Supplemental Benefit Programs that the Debtors historically provide in the

ordinary course of business (each as defined herein, and collectively, the "Employee

Compensation and Benefits Programs"), and (b) pay all costs related to or on account of the

Employee Compensation and Benefits Programs.

11.     As set forth below, by this Motion, the Debtors seek authority, but not direction, to

pay, remit, or reimburse, as applicable, the following aggregate prepetition amounts on account of

the Employee Compensation and Benefits Programs:

| Employee-Related Obligations | Amount Requested |
|---|---|
| Employee Compensation | $29.4 million |
| Independent Contractor Compensation | $389,000 |
| Payroll Processing Fees | $6.2 million |
| Withholding and Deduction Obligations | $10.9 million |
| Reimbursable Expenses | $1.2 million |
| Health Insurance Programs | $7.5 million |
| Life and AD&D Insurance and Disability Benefits | $344,000 |
| Workers' Compensation Program | $14.7 million |
| Paid Leave | $4.4 million |
| Postpetition Non-Employee Director Compensation | N/A |
| Supplemental Benefits Programs | $500,000 |
| **Total** | **$76,133,000** |

12.     Further descriptions of these programs and the prepetition amounts owing, if any,

on account of such programs are provided below.  Subject to the Court's approval, the Debtors

intend to continue their prepetition Employee Compensation and Benefits Programs in the ordinary

course of business.  Out of an abundance of caution, the Debtors request authority to modify,

change, supplement, and/or discontinue any of their Employee Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in their sole discretion (subject in all respects to the terms of the Interim Order and Final Order, as applicable) and without the need for further Court approval, subject to applicable law.  For the avoidance of doubt, to the extent the Debtors seek to pay outstanding prepetition amounts on account of the Employee Compensation and Benefits Programs in excess of the priority amount of $15,150 imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Claim Amount"), the Debtors request such relief solely pursuant to the Final Order.

13.     The vast majority of Employees rely exclusively on the Employee Compensation and Benefits Programs to pay their daily living expenses and support their families. Thus, Employees will face significant financial consequences and hardship if the Debtors are not permitted to continue the Employee Compensation and Benefits Programs in the ordinary course of business.  Consequently, the relief requested herein is necessary and appropriate.

I.      **Compensation, Employee Administration Providers, and Withholding Obligations.**

        A.      **Unpaid Employee Wages.**

14.     The Debtors pay all of their Employees' wages, salaries, and other compensation (excluding Reimbursable Expenses, Paid Leave, and any severance) on a bi-weekly or, if required by applicable law, weekly basis (collectively,  the "Employee Compensation").   Employee Compensation may also be due and owing as of the Petition Date because of, among other things, payroll processing delays or potential discrepancies between the amounts paid and the amounts that Employees believe they should have been paid.  Payroll amounts may vary depending upon certain other factors, including, but not limited to, overtime, which each hourly Employee is eligible to earn.

15.     In the three months before the Petition Date, the Debtors spent an average of approximately $13.8 million per week on account of Employee Compensation.  As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid obligations owed on account of Employee Compensation is approximately $29.4 million, all of which is expected to come due and owing between the Petition Date and the final hearing on this Motion (the "Interim Period").

16.     Accordingly, by this Motion, the Debtors respectfully request that the Court authorize the Debtors to pay, in a manner consistent with historical practice, any unpaid Employee Compensation, including amounts that may have accrued or been incurred prior to the Petition Date, and to continue to honor the Employee Compensation in the ordinary course of business on a postpetition basis.

**B.     Independent Contractor Compensation.**

17.     The Debtors pay the Independent Contractors compensation (the "Independent Contractor Compensation") directly through accounts payable or indirectly through one of the Payroll Processors (as defined herein).  The Independent Contractors perform certain services critical to the Debtors' operations, including, among other things, interim management, marketing, administrative functions, and operational functions related to the Debtors' businesses.

18.     In the three months before the Petition Date, the Debtors spent a monthly average of approximately $200,000 on Independent Contractor Compensation.  As of the Petition Date, the Debtors estimate that Independent Contractors are owed an aggregate of approximately $389,100 on account of accrued services rendered prior to the Petition Date, all of which is expected to come due during the Interim Period.  By this Motion, the Debtors seek authority to pay in a manner consistent with historical practice any unpaid Independent Contractor Compensation, including amounts that may have accrued or been incurred prior to the Petition Date, and to continue to honor

the Independent Contractor Compensation in the ordinary course of business on a postpetition basis.

### C.      Payroll Processing.

19.      The Debtors retain and pay payroll processing fees to (i) ADP, LLC, (ii) Workday, Inc., (iii) Blue Yonder, and (iv) Accenture plc in the United States and Puerto Rico (collectively, the "Payroll Processors") to administer payroll, Employee Compensation, and certain Independent Contractor Compensation.  In the three months before the Petition Date, the Debtors paid the Payroll Processors approximately $1.7 million (the "Payroll Processing Fees") on average per month.  As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid obligations owed on account of the Payroll Processing Fees is approximately $6.2 million, all of which will come due and owing during the Interim Period.  By this Motion, the Debtors seek authority to pay or deduct in a manner consistent with historical practice any Payroll Processing Fees, including amounts that may have accrued or been incurred prior to the Petition Date, and to continue to honor the Payroll Processing Fees in the ordinary course of business on a postpetition basis.

### D.      Withholding and Deduction Obligations.

20.      *Deductions.*  During each applicable pay period, the Debtors routinely deduct certain amounts from Employees' paychecks, including, without limitation, garnishments, levies, child support and related fees, and pre-tax deductions payable pursuant to certain of the Debtors' Health and Welfare Programs, including, but not limited to, an Employee's share of healthcare benefits and insurance premiums, retirement plan contributions, and legally-ordered deductions (collectively, the "Deductions").  The Debtors forward such Deduction amounts to various third-party recipients.

21.    ***Payroll Taxes.***  In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay pursuant to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes").  The majority of Payroll Taxes are generally processed and forwarded to the appropriate federal, state, or local taxing authority promptly after the Employees' payroll checks are disbursed.

22.    In the three months before the Petition Date, the average monthly Deductions and Payroll Taxes (together,  the "Withholding and Deduction Obligations") were approximately $21.1 million.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Withholding and Deduction Obligations is approximately $10.9 million.  By this Motion, the Debtors seek authority to pay or deduct in a manner consistent with historical practice any unpaid Withholding and Deduction Obligations, including amounts that may have accrued or been incurred prior to the Petition Date, and to continue to honor the Withholding and Deduction Obligations in the ordinary course of business on a postpetition basis.

**E.    Reimbursable Expenses.**

23.    The Debtors reimburse Employees and members of the Debtors' boards of directors (collectively, the "Boards," and such members, the "Directors") who incur certain expenses in the scope of their duties (the "Reimbursable Expenses").  The Debtors' inability to reimburse such expenses would impose hardship on Employees where the obligations were incurred for the Debtors' benefit.  By this Motion, the Debtors seek authority to continue the Reimbursable

Expenses programs and to pay amounts relating to Reimbursable Expenses, including unpaid amounts owed to Employees and Directors on account of Reimbursable Expenses incurred via Personal Funds, Personal Devices, Corporate Purchase Cards, Travel and Business Expenses, the Vehicle Reimbursement Plan, and Relocation Expenses (each as defined herein).

24.     In the ordinary course of business, Employees submit their expenses online through Cartus Corporation and Oracle Corporation (together, the "Expense Report Administrators") as third-party administrators.  The Debtors then process reimbursement requests and pay the Employee or Director for the approved expense.  The Expense Report Administrators greatly reduce the administrative burden that would otherwise fall on the Debtors related to the prompt payment of Reimbursable Expenses.  The Debtors pay approximately $221,000 per month for the Expense Report Administrators' services.

25.     In the three months before the Petition Date, the Debtors spent approximately $467,000 per month on account of the Reimbursable Expenses, other than amounts owed on account of the Relocation Expenses and the Expense Report Administrators.  As of the Petition Date, the Debtors estimate that the aggregate amount of unpaid obligations on account of the Reimbursable Expenses and the Expense Report Administrators is approximately $1.2 million, all of which will come due during the Interim Period.  By this Motion, the Debtors seek authority to pay or deduct in a manner consistent with historical practice any unpaid obligations on account of the Reimbursable Expenses and the Expense Report Administrators, including amounts that may have accrued or been incurred prior to the Petition Date, and to continue to honor obligations on account of the Reimbursable Expenses and the Expense Report Administrators in the ordinary course of business on a postpetition basis.

### 1.  Personal Funds and Personal Devices.

26.    ***Personal Funds.***  Eligible Employees and Directors may elect to use their personal credit cards or cash (collectively, the "Personal Funds") to incur Reimbursable Expenses and thereafter seek reimbursement for such expenses from the Debtors.  The Debtors reimburse Personal Funds in several currencies, including U.S. dollars and Canadian dollars, based on the multinational presence of the Debtors' businesses and Employees.  The Debtors' inability to reimburse such expenses would impose a hardship on such individuals where the obligations were incurred for the Debtors' benefit.

27.    ***Personal Devices.***  Eligible Employees may also elect to use their personal mobile devices, including smartphones, laptops, and tablet computers (collectively, the "Personal Devices") to incur Reimbursable Expenses.  Using Personal Devices for business purposes may result in an increase in costs to the Employee's personal service plan. Eligible Employees can thereafter seek reimbursement for such increase in costs from the Debtors. The Debtors' inability to reimburse such expenses would impose a hardship on such individuals where the obligations were incurred for the Debtors' benefit.

28.    The Debtors reimburse amounts on account of the Personal Funds and Personal Devices through the Debtors' ordinary course payroll process.  In the three months before the Petition Date, the Debtors spent approximately $33,000 per month on account of Personal Funds and Personal Devices.  As of the Petition Date, the Debtors estimate that the aggregate amount of unpaid obligations on account of the Personal Funds and Personal Devices is approximately $17,000.

### 2.  Corporate Purchase Cards.

29.    The Debtors also provide certain Employees with corporate purchase cards (the "Corporate Purchase Cards") serviced by PNC Financial Services Group.  The Corporate

Purchase Cards are issued to Employees in each Employee's own name and have a monthly limit ranging from $1,500 to $2 million.  In the three months before the Petition Date, the average monthly amount paid on account of the Corporate Purchase Cards was approximately $326,000. As of the Petition Date, the Debtors estimate that the aggregate amount of unpaid obligations on account of the Corporate Purchase Cards is approximately $290,000.

### 3. Travel and Business Expenses.

30.    The Debtors maintain a travel and business expense policy, whereby the Debtors reimburse Employees for authorized and reasonable expenditures incurred while conducting business (the "Travel and Business Expenses").  Travel and Business Expenses typically include expenses associated with transportation, lodging, internet, and meals incurred in connection with business travel.  In the three months before the Petition Date, the average monthly amount paid on account of the Travel and Business Expenses was approximately $42,000.  As of the Petition Date, the Debtors estimate that the aggregate amount of unpaid obligations on account of the Travel and Business Expenses is approximately $190,000.

### 4. Vehicle Reimbursement Plan.

31.    The Debtors maintain a business vehicle reimbursement plan pursuant to which Employees using personal vehicles for business purposes are reimbursed (the "Vehicle Reimbursement Plan").  Pursuant to the Vehicle Reimbursement Plan, the Debtors either pay a fixed rate reimbursement or pay a mileage reimbursement, depending on the Employee.  In the three months before the Petition Date, the average monthly amount paid on account of the Vehicle Reimbursement Plan was approximately $66,000.  As of the Petition Date, the Debtors estimate that the aggregate amount of unpaid obligations on account of the Vehicle Reimbursement Plan is approximately $110,000.

### 5.   Relocation Expenses.

32.     In the ordinary course of business, the Debtors also pay certain expenses of Employees who are transferred in connection with their job (the "Relocation Expenses").  The Relocation Expenses are reimbursed by the Debtors to the Employees directly.  The Relocation Expenses include, but are not limited to, costs associated with the transportation of household goods and automobiles, lease cancellation expenses, eligible home sale and purchase closing cost expenses, spousal support, temporary living accommodations, and other covered expenses.  In the three months before the Petition Date, the Debtors spent approximately $2.0 million on account of Relocation Expenses for a total of sixty-three Employees.  As of the Petition Date, the Debtors estimate the aggregate amount of unpaid obligations on account of the Relocation Expenses is approximately $40,000.

## II.   Employee Benefit Programs.

### A.     Health and Welfare Programs.

33.     The Debtors offer a number of health and welfare benefits programs to eligible Employees, such as the Health Insurance Programs, the Life and AD&D Insurance, the Disability Benefits, and the Workers' Compensation Program, and pay certain administrative fees to third-party providers associated with such programs (each as defined herein, and, collectively, the "Health and Welfare Programs").

### 1.     Health Insurance Programs.

34.     Employees are offered the opportunity to participate in, or are otherwise provided, a number of health benefit plans, including the Medical Plans, the HSA, the FSAs, the Vision Plans, and the Dental Plans (each as defined herein).  The Debtors also historically subsidize or continue to provide certain benefits to certain former Employees after their termination, retirement, or disability leave, including, without limitation, benefits provided under the Consolidated

Omnibus Budget Reconciliation Act of 1985 ("COBRA," and, together with the Medical Plans, the HSA, the FSAs, the Vision Plans, and the Dental Plans, the "Health Insurance Programs").

35. ***Medical Plans.*** The Debtors offer medical and prescription drug benefit programs (the "Medical Plans") to eligible Employees through (i) self-funded plans administered by Aetna, Centivo, and OptumRx in most of the United States and (ii) fully-insured plans administered by Kaiser Permanente in certain areas of the United States, the Hawaii Medical Service Association ("HMSA") in Hawaii, and Triple-S Management Corporation ("Triple-S") in Puerto Rico (collectively, the "Medical Plan Administrators"). Premiums are paid to the Medical Plan Administrators monthly. Incremental premium amounts differ depending on the Medical Plan in which the Employee is enrolled and the number of dependents covered by the applicable plan.

36. The Debtors pay amounts owing on account of the self-funded Medical Plans on either a daily or weekly basis, as applicable. The total cost of the Medical Plans to the Debtors is approximately $5.1 million per month.[3] As of the Petition Date, the Debtors estimate that they owe approximately $5.5 million in claims and administrative costs on account of the Medical Plans.

37. ***HSA and FSAs.*** Employees who participate in certain of the Medical Plans may contribute a portion of their compensation into a health savings account (the "HSA"), administered by Via Benefits, which may be used for incidental medical expenses. Participating Employees can make before-tax contributions to the HSA through payroll deductions to cover reimbursements under the program up to the maximum amount permitted by the IRS. Former Employees may

---

[3]   For the avoidance of doubt, the Debtors' costs on account of the Medical Plans are exclusive of any Employee contributions.

continue to use any funds left in their HSA following termination of their employment but may no longer contribute to such HSA. The Debtors do not contribute to the Employees' HSAs.

38.     The Debtors also provide U.S. Employees with access to flexible spending accounts, including the health care flexible spending accounts (the "HCFSAs") and the dependent childcare flexible spending accounts (the "DCFSAs," and, together with the HCFSAs, the "FSAs"). The FSAs are administered by Via Benefits and can be used to cover incidental medical costs or dependent childcare. The Debtors do not contribute to the FSAs.

39.     Currently, approximately 1,900 Employees contribute to an HSA and approximately 400 Employees are enrolled in an FSA. The Debtors pay monthly administration fees of approximately $7,000 to the Medical Plan Administrators on account of the HSA and FSAs. As of the Petition Date, the Debtors estimate that they owe approximately $5,000 on account of the HSA and FSAs.

40.     **_Vision Plans._** The Debtors provide vision insurance through EyeMed in the United States and Puerto Rico (the "Vision Plan"). Employees determine whether to enroll in the Vision Plan separate from their enrollment in the Medical Plans or Dental Plans. The Vision Plan is fully insured, and the enrolled Employees pay the full cost of their participation in the Vision Plan through payroll Deductions. The Debtors then remit the Vision Plan premiums monthly. The monthly cost of the Vision Plan is approximately $53,000. As of the Petition Date, the Debtors estimate that they owe approximately $37,000 on account of the Vision Plan.

41.     **_Dental Plans._** The Debtors provide dental insurance through MetLife, Inc. ("MetLife") in the United States and Puerto Rico (the "Dental Plan"). The Dental Plan is fully insured. Premiums for the Dental Plan are paid monthly. The monthly cost of the Dental Plan to

the Debtors is approximately $74,000.[4]  As of the Petition Date, the Debtors estimate that they

owe approximately $115,000 in claims and administrative costs on account of the Dental Plan.

42.    ***COBRA.***    Additionally, the Debtors are required to offer certain of their former

Employees certain health benefits following termination of employment.  Pursuant to COBRA,

former Employees of the Debtors (the "COBRA Eligible Employees") may continue insurance

coverage under the Medical Plans, Dental Plans, and Vision Plans (the "COBRA Benefits").

COBRA Eligible Employees are entitled by law to continue to receive COBRA Benefits for up to

eighteen, and occasionally thirty-six, months following termination of employment.

COBRA Eligible Employees are typically responsible for paying all costs associated with the

COBRA Benefits.  The COBRA Benefits are administered by BenefitConnect, and the Debtors

contribute payments to the COBRA Benefits as part of their usual expenditures under the Medical

Plans.

43.    As of the Petition Date, the Debtors estimate there is approximately $5.1 million to

be remitted on behalf of COBRA Eligible Employees.  Accordingly, the Debtors seek authority to

(a) pay any prepetition amounts outstanding on account of the COBRA Benefits; (b) to continue

to offer the COBRA Benefits, including to Employees who may be terminated after the Petition

Date, if any, and to honor all postpetition obligations related thereto in the ordinary course of

business consistent with past practices; and (c) to continue to pay fees related to the COBRA

Benefits in the ordinary course of business on a postpetition basis.

44.    The Debtors spend approximately $14.3 million per month on average on account

of the Health Insurance Programs, excluding COBRA Benefits.  As of the Petition Date, the

---

[4]    For the avoidance of doubt, the Debtors' costs on account of the Dental Plans are exclusive of any Employee
contributions.

Debtors estimate they owe approximately $5.5 million of accrued but unpaid amounts on account of the Health Insurance Programs.  By this Motion, the Debtors seek authority to pay in a manner consistent with historical practice any unpaid obligations on account of the Health Insurance Programs and to continue to honor the Health Insurance Programs in the ordinary course of business on a postpetition basis.

### 2.    Insurance, Disability, and Workers' Compensation Programs.

#### a.    Life and AD&D Insurance Programs and Disability Benefits.

45.    ***Life and AD&D Insurance Programs.***  The Debtors provide life and accidental death and dismemberment insurance coverage (the "Basic Life and AD&D Insurance") to current Employees through SunLife U.S. in the United States and Puerto Rico (the "Life and AD&D Insurance Provider").  The Life and AD&D Insurance Provider provides coverage equal to an Employee's salary up to a maximum of $500,000.  Employees may also purchase optional life insurance and accidental death and dismemberment insurance (together with the Basic Life and AD&D Insurance, the "Life and AD&D Insurance") through the Life and AD&D Insurance Provider, which provides coverage of up to five times an Employee's salary up to a maximum of $1 million.  The Life and AD&D Insurance is fully insured.

46.    Additionally, the Debtors provide Employees with short- and long-term disability benefits, as well as certain state specific statutory disability benefits (the "Disability Benefits").  All full-time Employees are eligible to receive Disability Benefits through the Debtors' benefits enrollment process.

47.    ***Short-Term Disability.***  The short-term disability benefits are self-funded and administered by ReedGroup in the United States and Puerto Rico, (the "Short-Term Disability Benefits").  Under the Short-Term Disability Benefits program, eligible Employees are entitled to continuation of 100% of their base wages for an initial eight-week period and 60% of their base

wages for the remainder of their leave, up to a maximum term of twenty-six weeks, in the event of a short-term medical disability due to an illness, injury, or pregnancy-related condition, and such payments are reduced by the available amount, if any, of state and local statutory benefits. Payments on behalf of the Short-Term Disability Benefits are made out of the Debtors' ordinary payroll processing.

48.    ***Long-Term Disability.***    The long-term disability benefits (the "Long-Term Disability Benefits") are fully insured and are administered by SunLife U.S. in the United States and Puerto Rico.  Under the Long-Term Disability Benefits program, eligible full-time Employees are entitled to, among other things, continuation of 50% of their wages in the event of a long-term medical disability due to illness or injury.  To qualify for Long-Term Disability Benefits, an Employee must be disabled for twenty-six consecutive weeks.  The Long-Term Disability Benefits premiums are paid solely by the Debtors.  Employees may purchase optional additional long-term disability coverage through the long-term disability provider.

49.    ***Statutory Disability.***    The Debtors also maintain fully insured disability insurance to cover statutory disability benefits in certain states in which the Debtors operate, including New Jersey, New York, and Hawaii (the "Statutory Disability Insurance").    The Statutory Disability Insurance premiums are paid through state Payroll Taxes and are not a separate expenditure.  The Statutory Disability Insurance is privately administered by The Guardian Life Insurance Company of America in New Jersey and Hawaii, and ShelterPoint Life Insurance Company in New York.

50.    In the three months before the Petition Date, the Debtors paid an average of approximately $120,000 per month in premiums with respect to the Life and AD&D Insurance and approximately $361,000 per month in administrative fees and premiums with respect to the

Disability Benefits.  As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid obligations on account of the Life and AD&D Insurance and Disability Benefits is approximately $369,000.  By this Motion, the Debtors seek authority to pay all prepetition amounts due under the Life and AD&D Insurance and Disability Benefits and to continue the Life and AD&D Insurance and Disability Benefits on a postpetition basis in the ordinary course of business.

### b. Workers' Compensation Program.

51.    The Debtors maintain workers' compensation insurance for Employees and employer's liability insurance at the levels required by laws in the states in which the Debtors operate (collectively, the "Workers' Compensation Program").  The Debtors maintain coverage for the Workers' Compensation Program through Safety National Casualty Corporation ("Safety National").  The Debtors pay approximately $1.2 million in premiums and fees annually to maintain the Workers' Compensation Program, and Safety National holds two letters of credit, one valued at $4.25 million and the other valued at $39.75 million (the "Letters of Credit"), as insurance collateral to secure the Debtors' payment obligations on behalf of the Workers' Compensation Program, which automatically renews each year on March 1.  Payments on account of claims under the Workers' Compensation Program are made daily.

52.    Additionally, non-Debtor affiliate Oak Insurance Company Inc. (the "Captive Insurer") historically administered certain aspects of the Debtors' Workers' Compensation Program from 2016 through 2021 and the Debtors' medical stop loss policies in 2021.  The Captive Insurer was pre-funded and currently holds a balance of approximately $25 million.  The Debtors use the Captive Insurer's balance to fund obligations that arose under the Workers' Compensation Program from 2016 through 2021 of less than $1 million by remitting payment of all claims to a third-party administrator and then seeking reimbursement

of the requisite amount from the Captive Insurer.  Safety National administers all claims from 2016 through 2021 that exceed $1 million.

53.     By this Motion, the Debtors seek authority to pay accrued but unpaid prepetition amounts related to the Workers' Compensation Program and to modify the automatic stay to allow Employees to assert claims under the Workers' Compensation Program to the extent applicable.[5]

54.     The Debtors must continue, through Safety National and the Captive Insurer, the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[6]  There are currently 437 open claims under the Workers' Compensation Program.  As of the Petition Date, the Debtors estimate that approximately $14.7 million in unpaid obligations are outstanding on account of the Workers' Compensation Program.  The Debtors seek authority to pay all prepetition amounts, if any, due under the Workers' Compensation Program and to continue the Workers' Compensation Program on a postpetition basis in the ordinary course of business.[7]

55.     The Workers' Compensation Program is subject to regular audits (the "Workers' Compensation Audits"), which may result in an adjustment of the premiums owed on account thereof.  Workers' Compensation Audits for prepetition premium payments will not

---

[5]   For the avoidance of doubt, the Debtors seek authority to pay unpaid prepetition amounts on account of claims under the Workers' Compensation Program in the amount less than $1 million that were accrued from 2016 through 2021, if any, solely from funds available from the Captive Insurer.

[6]   The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.

[7]   While the Debtors estimate that approximately $9.9 million in aggregate unpaid obligations under the Workers' Compensation Program are payable from funds held by Safety National and the Captive Insurer, out of an abundance of caution, the Debtors seek authority to pay up to $14.7 million on account of prepetition obligations under the Workers' Compensation Program.

conclude until after the Petition Date.  As a result, the aggregate amount of the Debtors' obligations arising from the Workers' Compensation Audits is not known at this time.  Accordingly, the Debtors seek authority to honor any amounts owed on account of any Workers' Compensation Audits in the ordinary course of business.

### B.    Paid and Unpaid Leave.

56.    The Debtors provide leave to Employees in the form of Flexible Time Off, Vacation Leave, Holiday Leave, Paid Leave, and Unpaid Leave (each as defined below).  In the ordinary course of business, the Debtors provide flexible time off and non-statutory sick pay ("Flexible Time Off") to eligible Employees that may be used for any reason.  Eligible Employees may receive Flexible Time Off for up to ten consecutive days, and there is no annual limit on the amount of Flexible Time Off an Employee may receive.  Flexible Time Off does not accrue, and thus there are no prepetition amounts owing on account of Flexible Time Off.  By this Motion, the Debtors seek authority to continue the Flexible Time Off policy in the ordinary course of business on a postpetition basis.

57.    Separately, the Debtors provide a vacation leave policy (the "Vacation Leave") to eligible Employees, including to certain Employees as required by state or local law.  An Employee accrues Vacation Leave on the first day of each month, beginning sixty days after the start of such Employee's employment, up to a maximum of twenty days of Vacation Leave.  Unless required by applicable state law, accrued but unused Vacation Leave does not carry over to the next year.  As of the Petition Date, the Debtors estimate that approximately $1.2 million in Vacation Leave has accrued but has not been used by Employees.  This amount is not a current cash payment obligation; however, the Debtors may be obligated to "cash out" any accrued Vacation Leave to an Employee upon the termination of such Employee's employment.  By this Motion, the Debtors seek authority to pay any prepetition "cash out" amounts due with respect to earned but unused

Vacation Leave, if applicable, and to continue the Vacation Leave policy in the ordinary course

on a postpetition basis.  For the avoidance of doubt, the Debtors seek to pay Vacation Leave to

any Employee in excess of the Priority Claim Amount solely pursuant to the Final Order.

58.     The Debtors also maintain a holiday leave policy (the "Holiday Leave"), whereby

eligible Employees are compensated for certain working and non-working holidays.  Employees

are paid their base rate of pay on account of Holiday Leave, and such Holiday Leave accrues

throughout the year.  As of the Petition Date, the Debtors estimate that approximately $3.2 million

in Holiday Leave has accrued.  This amount is not a current cash payment obligation; however,

the Debtors may be obligated to "cash out" any accrued Holiday Leave to an Employee upon the

termination of such Employee's employment.  By this Motion, the Debtors seek authority to pay

any prepetition "cashout" amounts due with respect to earned Holiday Leave, if applicable, and to

continue the Holiday Leave policy in the ordinary course of business on a postpetition basis.  For

the avoidance of doubt, the Debtors seek to pay Holiday Leave to any Employee in excess of the

Priority Claim Amount solely pursuant to the Final Order.

59.     In addition, the Debtors provide certain other forms of paid leave, including:

- sick time, including statutorily required leave, to compensate Employees during absences caused by illness, injury, or other medical purposes (the "Sick Leave");

- personal days, during which Employees receive paid time off and can attend to personal matters (the "Personal Days");

- eight weeks paid parental leave (the "Parental Leave") for all full-time Employees following the birth, adoption, or fostering of a new child; and

- other paid leaves of absence for personal reasons, many of which are required by law, including, time missed for bereavement, jury or court attendance, military leave (for up to fifty-two weeks), or time spent voting (together with the Vacation Leave, Holiday Leave, Sick Leave, Personal Days, and Parental Leave, the "Paid Leave").

As of the Petition Date, the Debtors believe there is approximately $4.4 million outstanding on account of Paid Leave.

60.     The Debtors also provide unpaid leaves of absence for additional sick leave, military leaves extending beyond fifty-two weeks, leave under the Family and Medical Leave Act, and other similar purposes (collectively, the "Unpaid Leave").  The Paid Leave and Unpaid Leave do not involve incremental cash outlays beyond standard payroll obligations.

61.     The Debtors believe that the continuation of the Paid Leave and Unpaid Leave policies in accordance with prior practice is essential to maintaining Employee morale during these Chapter 11 Cases.  Further, the policies are broad-based programs upon which all Employees have come to depend.  The Debtors anticipate that their Employees will utilize any accrued Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.  For the avoidance of doubt, the Debtors seek authority to continue the Paid Leave and Unpaid Leave policies in the ordinary course of business on a postpetition basis.

### C.    WARN Act Obligations.

62.     In the sixty days prior to the Petition Date, the Debtors issued notices pursuant to the Worker Adjustment and Retraining Notification Act (the "Federal WARN Act") to certain governmental entities and to 252 Employees that are expected to be impacted by a qualified "mass layoff" or "plant closing" at seven facilities, including four distribution and fulfillment centers in Texas and three stores in New York (collectively, the "WARN Act Notices").

63.     Unless an exception applies, the Federal WARN Act generally requires sixty days advance notice to affected employees and governmental entities prior to the implementation of a "mass layoff" or a "plant closing."  The WARN Act Notices each contemplate a termination date (the "WARN Act Termination Date") for the relevant Employees that is in accordance with the

23

notice period under the WARN Act.  The Debtors intend to continue to employ the Employees who received the WARN Act Notices through the WARN Act Termination Date before terminating their employment.  Accordingly, the Debtors do not anticipate incurring any postpetition severance obligations pursuant to the Federal WARN Act ("WARN Act Obligations") on account of Employees who received the WARN Act Notices.

64.     In addition to requirements under the Federal WARN Act, the Debtors must comply with various state law equivalent "mini-WARN Acts," including New Jersey's Millville Dallas Airmotive Plan Job Loss Notification Act, N.J. Stat. § 34:21-2, (the "NJ WARN Act," and together with the Federal WARN Act and other state law equivalents, the "WARN Acts").  The NJ WARN Act, among other things, requires ninety days' advance notice to affected employees and applicable governmental entities prior to a "mass layoff" or "plant closing."  The NJ WARN Act also requires an employer to provide severance pay to affected employees equal to one week of pay for each full year of employment.  An additional four weeks of severance must be paid if less than ninety days' notice is provided.  The Debtors have not issued any notices pursuant to the NJ WARN Act within the sixty days prior to the Petition Date.

65.     During these Chapter 11 Cases, the Debtors anticipate closing further offices, stores, and distribution and fulfillment centers during the postpetition period, and such closures may implicate the WARN Acts.  To the extent the WARN Acts are implicated by these closures, or there are circumstances that may result in the accelerated closure of any impacted facilities, by this Motion, out of an abundance of caution, the Debtors seek authority to make payments on behalf of obligations incurred on account of the WARN Acts on a postpetition basis.

**D.     Postpetition Non-Employee Director Compensation.**

66.     As of the Petition Date, the Boards include eleven non-Employee individuals who serve as Directors for various Debtor entities.  Nine of the non-Employee Directors receive an

average annual cash retainer of $90,000, which is historically paid on a quarterly basis in arrears (the "Cash Retainer"). [8] These non-Employee Directors also receive annual restricted stock awards under the Debtors' long term incentive program at a value of $150,000 (the "Director Equity Payments"). Additionally, non-Employee Directors are compensated for serving on and chairing the Boards' various committees (the "Committee Fees"). The Committee Fees range from $5,000 to $25,000. The three disinterested Directors (the "Disinterested Directors") receive monthly cash payments of $30,000 and compensation of $5,000 on a per diem basis if certain criteria are met (the "Disinterested Director Payments"). Non-Employee Directors are also entitled to expense reimbursement for certain Reimbursable Expenses, such as Travel and Business Expenses (the "Director Reimbursable Expenses," and together with the Cash Retainer, the Director Equity Payments, the Committee Fees, and the Disinterested Director Payments, the "Director Compensation").

67. As of the Petition Date, the Debtors do not believe they owe any amounts on account of Director Compensation and believe that they are authorized to pay any postpetition Director Compensation in the ordinary course. However, out of an abundance of caution, by this Motion, the Debtors seek authority to continue to pay the Director Compensation on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

### III. Supplemental Benefits Programs and Benefit Plan Administrators.

68. The Debtors also provide their Employees the opportunity to participate in supplemental benefits, some of which are funded by the Debtors, including the Employee Relief Fund, Commuter Accounts, Supplemental Health and Wellness Programs, Supplemental Medical Benefits Programs, the Gift Card Program, the Associate Discount Program, the Legal Services

---

[8]     The Debtors paid the previous quarterly installment of the Cash Retainer in advance.

Plan, and Identity Theft Protection (each as defined below and, collectively, the "Supplemental

Benefits Programs"):[9]

- **Employee Relief Fund.**  The Debtors administer the Stronger Together Relief Fund, which is an employee relief fund primarily funded through Employee contributions to assist Employees experiencing personal hardships.  All Employees are eligible to receive hardship grants through this employee relief fund.

- **Commuter Accounts.**  The Debtors offer enrollment in a program that subsidizes transit expenses on a pre-tax basis.

- **Supplemental Health and Wellness Programs.**  The Debtors have contracted with various providers to provide Employees with free access to mental health counseling services, advice from medical professionals, fertility and family planning services, digital physical therapy programs, and digital mindfulness and meditation programs.

- **Supplemental Medical Benefits Program.**  Eligible Employees may enroll in supplemental medical programs through MetLife that provide critical illness care, hospital indemnity, and accident insurance.

- **Gift Card Program.**  The Debtors provide an anniversary gift card, the value of which ranges from approximately $25 to $300, to each of their Employees.

- **Associate Discount Program**.  The Debtors permit eligible Employees to apply a twenty-five percent discount to all purchases at the Debtors' stores.

- **Legal Services Plan.**  The Debtors enable Employees to enroll in the Legal Services Plan to access a network of attorneys to provide affordable legal guidance for various matters.

- **Identity Theft Protection.**  Enrolled Employees receive access to services that protect against identity theft, including credit monitoring services.

69.    The Debtors utilize certain vendors to secure, administer, and manage these

Supplemental Benefits Programs offered to Employees (collectively, the "Benefit Plan

Administrators").[10]  Historically, the Debtors have paid approximately $310,000 per month on

---

[9]    In addition to the Supplemental Benefits Programs, the Debtors may have indemnification obligations to certain Employees to fund necessary and reasonable legal fees and expenses incurred by an Employee in connection with certain governmental investigations and litigation brought against the Debtors.

[10]   The Benefit Plan Administrators include, but are not limited to, MetLife, MassMutual, Guardian, ShelterPoint SunLife, SunLife Financial, ID Watch Dog, EyeMed, Triple-S, Kaiser Permanente, HMSA, Headspace,

account of the Supplemental Benefits Programs and the Benefit Plan Administrators.  As of the

Petition Date, the Debtors estimate that approximately $508,000 is accrued and outstanding on

account of the Supplemental Benefits Programs and the Benefit Plan Administrators.  The Debtors

seek authority to pay their Employees and Benefit Plan Administrators any prepetition amounts

due pursuant to the Supplemental Benefits Programs consistent with past practice and to continue

paying amounts due pursuant to the Supplemental Benefits Programs on a postpetition basis in the

ordinary course of business.

### **Basis for Relief**

I.    **Sufficient Cause Exists to Authorize the Debtors to Honor the Employee
      Compensation and Benefits Programs.**

    A.    **Certain Employee Compensation and Benefits Programs Are Entitled to
      Priority Treatment.**

70.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle amounts owed to

Employees under certain of the Employee Compensation and Benefits Programs to priority

treatment to the extent such payments do not exceed the Priority Claim Amount for each

individual.  *See* 11 U.S.C §§507(a)(4) and (a)(5).  As priority claims, the Debtors are required to

pay these claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring

payment in full of certain allowed unsecured claims for (a) wages or salaries, including severance,

and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  To

the extent that an Employee receives more than the Priority Claim Amount on account of claims

entitled to priority, the relief requested herein only affects the timing of certain payments to the

Employees and does not have any material negative impact on recoveries for general unsecured

---

ComPsych, ConsumerMedical, CarrumHealth, Progyny, Emergency Relief Foundation, Perk Spot, BenefitConnect, Willis Towers Watson, AssuredPartners, Healthy San Francisco, ReedGroup, Alight and Equifax, and Empower.

creditors.  Indeed, the Debtors submit that payment of the Employee Compensation and Benefits

Programs at this time enhances value for the benefit of all interested parties.

71.     To the extent that an Employee is owed amounts in excess of the Priority Claim

Amount, the Debtors submit that the full payment of such obligations in the ordinary course of

business is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity.

As such, these claims would be entitled to payment in full under any plan.

**B.     Payment of Certain Employee Compensation and Benefits Programs Is Required by Law.**

72.     The Debtors also seek authority to pay the Withholding and Deduction Obligations

to the appropriate third-party entities.  These amounts principally represent Employee earnings

that governments, Employees, and judicial authorities have designated for deduction from the

Employees' paychecks.  Indeed, certain Withholding and Deduction Obligations are not property

of the Debtors' estates because the Debtors have withheld such amounts from the

Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further,

Canadian, federal, and state laws require the Debtors to withhold certain tax payments from the

Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§

6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994)

(finding that state law requiring a corporate debtor to withhold city income tax from its employees'

wages created a trust relationship between debtor and the city for payment of withheld income

taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers

of a company may be held personally liable for failure to pay trust fund taxes).  Because the

Withholding and Deduction Obligations may not be property of the Debtors' estates, the Debtors

should be authorized to transmit the Withholding and Deduction Obligations on account of the

Employees to the proper parties in the ordinary course of business.  *See In re Dameron*, 155 F.3d

718, 721 (4th Cir. 1998). The Debtors therefore request that the Court recognize that the Withholding and Deduction Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business.

73. Similarly, certain state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state law may prohibit the Debtors from operating in such states. Payment of all Workers' Compensation Program amounts is therefore crucial to the Debtors' continued operations and the success of these Chapter 11 Cases. The Debtors therefore request that the Court authorize the Debtors to maintain the Workers' Compensation Program.

## II. Payment of the Employee Compensation and Benefits Programs Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

74. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b) of the Bankruptcy Code, bankruptcy courts require only that a debtor show a sound business purpose to justify the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (quoting *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts

will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").  Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

75.    Additionally, section 105(a) of the Bankruptcy Code further provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, including authorizing payments on account of the Employee Compensation and Benefits Programs pursuant to the doctrine of necessity. 11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code, and supports the relief requested herein. *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of [prepetition] claims" under the doctrine of necessity; *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).

76.    The doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also Just for Feet*,

242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of [prepetition] claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain [prepetition] claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the [c]hapter 11 process"); *In re Chateaugay Corp.*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

77.     Payment of the Employee Compensation and Benefits Programs is warranted under this authority and the facts of these Chapter 11 Cases. Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits Programs. Additionally, continuing ordinary course benefits will help boost Employee retention and minimize the adverse effect of the commencement of these Chapter 11 Cases on the Debtors' ongoing business operations.

78.     Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' businesses, and the Debtors believe that absent the payment of the Employee Compensation and Benefits Programs owed to the Employees, the Debtors may experience Employee turnover and instability at this critical time in these Chapter 11 Cases. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships Employees may face. Such

Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—which efforts may not be successful given the overhang of these Chapter 11 Cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits Programs is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these Chapter 11 Cases.

79.     Courts in this district have granted similar relief to that requested in this Motion in previous chapter 11 cases. *See, e.g.*, *In re Block Fi, Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 17, 2023) (authorizing the debtors to (a) pay prepetition employee wages, salaries, and other compensation, and reimbursable expenses, and (b) continue employee benefits programs); *In re Nat'l Realty Inv. Advisors, LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. Jan. 3, 2023) (same); *In re Alliant Tech., L.L.C.*, No. 21-19748 (JKS) (Bankr. D.N.J. Jan. 25, 2022) (same); *In re Christopher & Banks Corp.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (same).[11]    Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay prepetition amounts outstanding on account of the Employee Compensation and Benefits Programs, and to continue their

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

prepetition Employee Compensation and Benefits Programs in the ordinary course of business on a postpetition basis.

### III.    A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.

80.    Section 362(a) of the Bankruptcy Code operates to stay:

"the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . ."

11 U.S.C. § 362(a)(1).

81.    Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1).  Cause exists here to modify the automatic stay to permit the Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees.  In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Workers' Compensation Program to proceed.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

82.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."

As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed above, authorizing the Debtors to (i) pay all prepetition wages, salaries, reimbursable expenses, and other obligations on account of the Employee Compensation and Benefits Programs and (ii) continue to administer the Employee Compensation and Benefits Programs in the ordinary course of business, and granting the other relief requested herein is vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## **Request of Waiver of Stay**

83.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## **Waiver of Memorandum of Law**

84.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

85.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

86.    No prior request for the relief sought in this Motion has been made to this or any other court.

## Notice

87.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent

counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       josuha.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

# INTERIM ORDER (I) AUTHORIZING
# THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
# COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
# EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay all prepetition obligations on account of the Employee Compensation and Benefits Programs in the ordinary course of business, (b) continue to administer the Employee Compensation and Benefits Programs, including payment of postpetition obligations related thereto, (c) scheduling a final hearing to consider approval of the Motion on a final basis, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____**, 2023 at** _____ **(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____**, 2023 at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are hereby authorized, but not directed, to:  (a) continue, modify, change, and/or discontinue the Employee Compensation and Benefits Programs including all administrative and processing costs in connection therewith, in their business judgment during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law and the terms of this Interim Order; and (b) pay and honor prepetition amounts outstanding under or related to the Employee Compensation and Benefits Programs in the ordinary course of business; *provided* that pending entry of the Final Order, the Debtors shall not make any payment to, or on account of, any individual with respect to any prepetition claim in excess of $15,150 as set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code; *provided, further*, that the Debtors are authorized to pay any amount due and payable as of the Petition Date and amounts that become due and payable between the Petition Date and the date that a Final Order is entered; *provided, further* that payments on account of Non-Employee Director Compensation shall not be

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

made by this Interim Order and shall be made pursuant to the Final Order.  The Debtors shall seek

Court approval, upon motion and notice, if any modifications to the Employee Compensation and

Benefits Programs implicate any provision of section 503(c) of the Bankruptcy Code.

4.      Nothing herein shall be deemed to authorize the Debtors to cash out unpaid

Vacation Leave, Holiday Leave, or other Paid Leave except upon termination of an Employee if

applicable law requires such payment.

5.      The Debtors are authorized, but not directed, to pay and honor all claims and

obligations, if any, whether arising prepetition or postpetition, arising under the WARN Acts;

*provided* that the Debtors shall not make any payments to any Insiders (as such term is defined in

section 101(31) of the Bankruptcy Code) without further order of this Court.

6.      Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to

proceed with their claims under the Workers' Compensation Program in the appropriate judicial

or administrative forum and the Debtors are authorized to continue the Workers' Compensation

Program and pay all prepetition amounts relating thereto in the ordinary course of business.  The

Debtors shall exhaust all funds available first from Safety National and then from the Letters of

Credit to pay claims or obligations under the Workers' Compensation Program, if any, before

funding such claims or obligations from other available sources; *provided* that the Debtors shall

exhaust all funds available first from Safety National and then from the Captive Insurer to pay all

prepetition amounts owing on account of claims less than $1 million under the Workers'

Compensation Program that accrued from 2016 through 2021, if any, before funding such claims

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

from other available sources. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

7.     JPMorgan Chase Bank, N.A. ("JPM") is hereby authorized to release, as soon as reasonably practicable, the Debtors' funds from any applicable bank accounts held or otherwise controlled by JPM so as to allow the Debtors to make payments, as approved by this Interim Order, on account of the Debtors' Employee Compensation, Independent Contractor Compensation, and Payroll Processing obligations consistent with the Debtors' ordinary course operations.

8.     Nothing herein shall be deemed to authorize the payment of any amounts that violate or implicate section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

9.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of any obligations owed under any Employee Compensation and Benefits Programs.

10.     The Debtors are authorized to forward any unpaid amounts on account of the Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities, as applicable, in the ordinary course of business.

11.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

designation of any particular check or electronic payment request as approved by this Interim Order.

12.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

13.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

14.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing The Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

15.     7.     Nothing in this Interim Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Interim Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

16.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

18.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

21.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Order.

22.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit B**

### **Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

# FINAL ORDER (I) AUTHORIZING
# THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
# COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
# EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered three (3) through eight (8), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an final order (this "Final Order") (a) authorizing the Debtors to pay all prepetition obligations on account of the Employee Compensation and Benefits Programs in the ordinary course of business and (b) continue to administer the Employee Compensation and Benefits Programs, including payment of postpetition obligations related thereto, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to:  (a) continue, modify, change, and/or discontinue the Employee Compensation and Benefits Programs, including all administrative and processing costs in connection therewith, in their business judgement during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law; and (b) pay and honor prepetition amounts outstanding under or related to the Employee Compensation and Benefits Programs in the ordinary course of business.

3.      Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business.  The Debtors shall exhaust all funds available first from Safety National and then from the Letters of Credit to pay claims or obligations under the Workers' Compensation Program, if any, before funding such claims or obligations from other available sources; *provided* that the Debtors shall exhaust all funds available first from Safety National and then from the Captive Insurer to pay all prepetition amounts owing on account of claims less than $1 million under the Workers' Compensation Program that accrued from 2016 through 2021, if any, before funding such claims

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

from other available sources.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

4.      Nothing herein shall be deemed to authorize the payment of any amounts that violate or implicate section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

5.      Nothing contained herein is intended or should be construed to create an administrative priority claim on account of any obligations owed under any Employee Compensation and Benefits Program.

6.      The Debtors are authorized to forward any unpaid amounts on account of the Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in the ordinary course of business.

7.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

8.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

(d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

9.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

10.      Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing The Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying*

| | |
|---|---|
| (Page \| 7) | |
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

*the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "<u>DIP Orders</u>"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

11.     Nothing in this Final Order shall alter or limit any authorization, requirement or relief contained in, or prevent non-Debtor affiliates BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "<u>BBB Canada</u>") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "<u>Initial Order</u>") issued by the Ontario Superior Court of Justice (Commercial List) (the "<u>CCAA Court</u>") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Final Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA , the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

12.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

15.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.