**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR**
**ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**USE OF EXISTING BUSINESS FORMS AND RECORDS,**
**(B) MAINTAIN EXISTING CORPORATE BANK ACCOUNTS**
**AND CASH MANAGEMENT SYSTEM, (C) PAY PREPETITION**
**BANK FEES ASSOCIATED WITH THE CASH MANAGEMENT**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**SYSTEM, AND (D) CONTINUE PERFORMANCE OF INTERCOMPANY
TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO
POSTPETITION INTERCOMPANY BALANCES; AND (III) WAIVING CERTAIN
U.S. TRUSTEE REQUIREMENTS FOR A PERIOD NOT TO EXCEED THIRTY DAYS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):

**Relief Requested**

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final

Order"):  (a) authorizing the Debtors to (i) continue using their existing business forms and records

in the ordinary course of business, (ii) maintain the Bank Accounts and operate their Cash

Management System, (iii) pay prepetition Bank Fees associated with the Cash Management

System, and (iv) continue performing Intercompany Transactions (as such terms are defined

below) consistent with historical practices;  (b) granting administrative expense status to

postpetition intercompany balances;  (c) granting an interim limited waiver of the Debtors'

compliance with the deposit and investment guidelines set forth in section 345 of the Bankruptcy

Code; and (d) scheduling a final hearing 28 days after commencement of these Chapter 11 Cases

(as defined herein) to consider entry of an order approving the relief requested herein on a final

basis.[2]

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the
*Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc.,
in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed
description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11
Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated
by reference herein.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on
September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a
final order in connection with this Motion to the extent that it is later determined that the Court,
absent consent of the parties, cannot enter final orders or judgments in connection herewith
consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 345, 363, 503, and 507 of
title 11 of the United States Code (the "Bankruptcy Code"), rules 2002 and 6004 of the Federal
Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013–1 and 9013–5 of the
Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

### Background

5.      The Debtors are the largest home goods retailer in the United States, offering
everything from bed linens to cookware to home organization, baby care, and more.  In addition
to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond
stores and their buybuy BABY stores with locations across North America.  Headquartered in
Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs
approximately 14,000 non-seasonal employees.

6.      The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to
implement a timely and efficient process to maximize the value of the Debtors' estates for the
benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an

orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

7.    On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

## The Cash Management System

### I.    Overview.

8.    In the ordinary course of business, the Debtors and their non-Debtor affiliates[3] (the "Non-Debtor Affiliates" and, together with the Debtors, the "Company") use a cash management system (the "Cash Management System") as illustrated[4] on Exhibit 1 annexed to **Exhibit A** attached hereto.  The main components of the Cash Management System include, among others, collections from brick-and-mortar store locations and credit card sales, transfers between Company entities, and disbursements to fund daily operations of the business.  The Cash Management System is comparable to the centralized cash management systems used by other similarly-sized companies to manage the cash flow of operating units in a cost effective, efficient manner.  The Debtors use their Cash Management System in the ordinary course to transfer and

---

[3]    Of the twenty-three Non-Debtor Affiliate accounts, two are held by Non-Debtor Affiliate Oak Insurance Company, Inc. ("Oak Insurance"), one is held by Non-Debtor Affiliate BBB Mexico LLC ("BBB Mexico"), and twenty are held by Canadian Non-Debtor Affiliates.

[4]    For illustrative purposes only.  To the extent that the actual system varies from the illustration, the Debtors seek to maintain the existing system.

distribute funds and to facilitate cash monitoring, forecasting, and reporting. The Debtors' treasury department (the "Treasury") maintains daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds, including in connection with Intercompany Transactions. Additionally, the Debtors' corporate accounting department and the Treasury regularly reconcile the Debtors' books and records to ensure transfers are accounted for properly.

9.      As of the Petition Date, the Cash Management System is comprised of 77 bank accounts (such accounts, together with any other bank accounts the Debtors or their Non-Debtor Affiliates may open in the ordinary course of business, the "Bank Accounts")[5] that are owned by the Debtors and certain Non-Debtor Affiliates and are maintained at various branches of 12 banks (such banks, collectively, the "Cash Management Banks"). Of the 77 total Bank Accounts, 20 are maintained by Canadian Non-Debtor Affiliates for purposes of funding the the Company's Canadian businesses (the "Canadian Bank Accounts").[6] More specifically, the Cash Management System is comprised of:

| Cash Management Bank | Number of Bank Accounts |
|---|---|
| **Debtor Accounts** | |
| JPMorgan Chase Bank, N.A. ("JPMorgan") | 33 |
| Wells Fargo Bank, N.A. ("Wells Fargo") | 4 |
| MUFG Union Bank, N.A. ("Union Bank") | 3 |
| U.S. Bancorp ("U.S. Bank") | 3 |
| Union Bank of Switzerland ("UBS") | 3 |
| Fifth Third Bank, N.A. ("Fifth Third") | 2 |

---

[5]    The Bank Accounts are identified on **Exhibit C**.

[6]    For the avoidance of doubt, the Debtors do not seek relief with respect to the Canadian Bank Accounts. The Canadian Bank Accounts, and the Non-Debtor Affiliates that operate such Canadian Bank Accounts, are governed by Non-Debtor Affiliates BBB Canada Limited's and Bed Bath & Beyond Canada L.P.'s proceedings before the Ontario Court of Justice (Commercial List) (the "CCAA Court") under the Companies' Creditors Arrangement Act (the "CCAA," and such proceedings, the "CCAA Proceedings").

| | |
|---|---|
| KeyBank N.A. ("KeyBank") | 2 |
| Banco Popular de Puerto Rico ("Banco Popular") | 1 |
| Truist Financial Corporation ("Truist") | 1 |
| First Hawaiian, Inc. ("First Hawaiian") | 1 |
| Morgan Stanley Smith Barney LLC ("Morgan Stanley") | 1 |
| ***Total Debtor Accounts*** | ***54*** |
| ***Non-Debtor Affiliate Accounts*** | |
| JPMorgan | 18 |
| The Bank of Nova Scotia ("Scotia Bank") | 4 |
| Wells Fargo | 1 |
| ***Total Non-Debtor Affiliate Accounts*** | ***23*** |

10.    The Debtors estimate that cash collections for the Cash Management System average approximately $300 million per month, including store cash receipts, credit and debit card receipts, and website sales.  The Debtors estimate that total disbursements will average approximately $200 million per month during these Chapter 11 Cases.  Because of the nature of the Debtors' business and the disruption to the business that would result if they were forced to close their existing bank accounts, it is critical that the Debtors' Cash Management System remain in place on a postpetition basis.

11.    Substantially all of the cash held in the Bank Accounts is subject to properly perfected security interests in favor of JPMorgan, in its capacity as the Prepetition ABL Agent under the Prepetition ABL Facility, subject to the priority of payments among the secured parties set forth in the Prepetition Credit Agreement.  As more fully described in the First Day Declaration, on January 23, 2023, the Prepetition ABL Agent informed the Debtors that, as a result of certain events of default, a cash dominion event had occurred under the Prepetition Credit Agreement, meaning that, on a daily basis for the duration of the cash dominion event (the "Cash Dominion Period"), the Prepetition ABL Agent sweeps cash amounts remaining in certain of the Debtors' accounts to pay down balances of the Prepetition ABL Obligations.  On February 6, 2023, the

Debtors and the Prepetition Secured Lenders entered into the Second Amendment to the Prepetition Credit Agreement, pursuant to which, among other things, the Cash Dominion Period was extended until all obligations under the Prepetition Credit Agreement were paid in full and all outstanding commitments were terminated.  Accordingly, as of the Petition Date, the Debtors are in cash dominion.  Furthermore, the Debtors' loan funding request to make cash disbursements have remained subject to the consent of the Prepetition ABL Lenders and the Prepetition FILO Agent at times when the Prepetition ABL Facility and Prepetition FILO Facility were in default.

12.     Given the economic and operational scale of the Debtors' businesses, any further disruption to the Cash Management System would have an immediate adverse effect on the Debtors' businesses and operations to the detriment of the Debtors' estates and to their stakeholders.  Accordingly, to minimize disruption, the Debtors request authority to continue operating their Cash Management System in the ordinary course on a postpetition basis, consistent with historical practices.

**II.     Cash Management System.[7]**

**A.     Concentration Accounts.**

13.     The Cash Management System is based around 19 concentration accounts maintained with JPMorgan (each a "<u>Concentration Account</u>" and, together, the "<u>Concentration Accounts</u>"), of which 12 are maintained in the United States[8] and 7 are maintained in Canada in local currencies, respectively.  The Concentration Accounts located in the United States pool incoming funds, via daily sweeps, from the Debtors' domestic Collection and Store Depository

---

[7]     The Cash Management System described herein reflects the Bank Account structure as of the date of this Motion. The Debtors may further adjust the Cash Management System postpetition to reflect the terms of any postpetition financing agreements and the orders related thereto.

[8]     11 of the Concentration Accounts located in the United States are maintained by the Debtors and one Concentration Account located in the United States is maintained by Oak Insurance.

Accounts (as defined below). These funds result from cash sales at the Debtors' domestic brick-and-mortar locations and various operating, deposit, and loan-funding receipts. As further described below, the Concentration Accounts, in turn, fund the Debtors' various Disbursement Accounts (as defined below), as needed, for their respective locations.

### B.    Store Depository Accounts.

14.    The Company maintains various store-level deposit accounts (the "Store Depository Accounts") for their United States and Canadian store locations, respectively, into which all non-credit card, store-level cash sales are deposited by the store manager on a daily basis. Each Store Depository Account located within the United States pools cash collections from multiple of the Debtors' brick-and-mortar locations. Under ordinary circumstances, each week, armored cars collect and transfer cash from each of the Debtors' store locations to a depository account where the cash is counted and electronically deposited into the applicable Store Depository Accounts. At any given moment, there may be significant cash in transit in the armored car services, depending on the season. Cash deposited at the Store Depository Accounts is then either moved to Collection Accounts (as defined below) or automatically swept to the Concentration Accounts on a daily basis.

### C.    Collections Process.

15.    All remaining funds are deposited into seven primary collection accounts (the "Collection Accounts"), of which five are maintained domestically with JPMorgan and two are maintained with JPMorgan in Canada. Credit card sales are processed through a third party, and the proceeds are deposited (net of fees, charge-backs, and returns) into the Collection Accounts. The receipts primarily consist of income proceeds from stores (including those mentioned above), credit card funds, and e-commerce and website receipts. Funds from the

Collection Accounts are swept daily to the respective Concentration Accounts in the United States and in Canada.

### D.      Disbursement Process.

16.      The Concentration Accounts fund each of the Company's 21 disbursement accounts (the "Disbursement Accounts"), 14 of which are maintained by the Debtors and seven of which are maintained by Canadian Non-Debtor Affiliates.  The Disbursement Accounts located in the United States make disbursements to fund the Debtors' daily operations, such as accounts payable (including payments made to vendors and freight providers), payroll (including benefits), sales tax and other tax obligations, employee obligations, and rent.  Each of the 21 Disbursement Accounts is a zero-balance account maintained at JPMorgan and is funded by the Concentration Accounts on an as-needed basis.

17.      One of the Debtors' Disbursement Accounts is an existing letter of credit funding account, which the Debtors utilize to satisfy payment and/or reimbursement obligations resulting from draws made by beneficiaries under issued and outstanding letters of credit (the "LC Funding Account").  The Debtors further anticipate, in connection with the DIP Orders,[9] opening an additional letter of credit account during the postpetition period to cash collateralize their obligations for future draw requests under existing letters of credit with longer expiry terms (the "LC Cash Collateral Account").

18.      The Debtors anticipate that disbursements from the Disbursement Accounts will be funded, as they have been in the ordinary course of business, from funds in the Concentration

---

[9]      "DIP Orders" shall mean any interim and final orders granting relief with respect to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed contemporaneously herewith.

Accounts generated from the Debtors' operations and from the use of the Debtors' cash collateral and funds available under the postpetition financing facility. Because of the nature of the Debtors' business and the disruption that would result if the Debtors were forced to close their existing Bank Accounts, the continued existence of the Cash Management System is critical to the Debtors' restructuring efforts.

###### E.    Intercompany Transfers.

19.    In the ordinary course of business, the Debtors maintain business relationships with each other and their Non-Debtor Affiliates (the "Intercompany Transactions") resulting in intercompany receivables and payables in the ordinary course of business (the "Intercompany Claims"). The Intercompany Claims and Intercompany Transactions cover a number of different categories, including, for example, management services, licensing, and merchandising. Accordingly, at any given time there may be Intercompany Claims owing by one Debtor to another Debtor and/or by a Non-Debtor Affiliate to a Debtor. These Intercompany Claims are reflected as journal entry receivables and payables, as applicable, in the respective Debtors' and Non-Debtor Affiliates' accounting records. The Debtors track all fund transfers through their accounting system and can ascertain, trace, and account for all Intercompany Transactions.

20.    Intercompany Transactions involving Debtor-to-Debtor transfers are the most common. For example, in the ordinary course of business, the Debtors transfer funds between Concentration Accounts throughout the United States for purposes of providing cash support to other Debtor entities so that they can continue to operate and fund local operations. Lately, the volume of these Intercompany Transactions has decreased as the Debtors have begun to wind down operations in various jurisdictions.

21.    The Debtors have also transacted, on occasion, with Non-Debtor Affiliates Oak Insurance and BBB Mexico.  Intercompany Transactions with Oak Insurance consist solely of reimbursement payments from Oak Insurance to Debtor Bed Bath & Beyond, Inc. for amounts paid on account of insurance claims.  The Debtors estimate that Oak Insurance transfers approximately $100,000–$500,000 per month in reimbursement payments to Debtor Bed Bath & Beyond, Inc.  Additionally, while the Debtors had historically made payments to BBB Mexico, they discontinued this practice at least two years ago.  Accordingly, the Debtors generally do not transfer funds to Non-Debtor Affiliates.[10]

22.    Any discontinuation of the Intercompany Transactions would unnecessarily disrupt the Cash Management System and the Debtors' operations to the detriment of the Debtors, their creditors, and other stakeholders.[11]

**F.    Investment Accounts.**

23.    The Company maintains five investment accounts, along with six Concentration Accounts (included above) that also serve as investment accounts, comprised of:  (a) five money market accounts maintained by the Debtors at JPMorgan (the "Money Market Accounts"); (b) one investment account maintained by the Debtors at Morgan Stanley (the "Morgan Stanley

---

[10]    Since the commencement of the CCAA Proceedings, certain funds have been periodically swept from Canadian Bank Accounts to Bank Accounts located in the United States so such funds may be used to pay down the Debtors' obligations under the Prepetition Credit Agreement.  Because the CCAA Court requires that the Canadian Non-Debtor Affiliates maintain a minimum balance in the Canadian Bank Accounts during the pendency of the CCAA Proceedings, the Company has been sweeping amounts in excess of the minimum threshold set by the CCAA Court from the Canadian Bank Accounts into Bank Accounts located in the United States once or twice weekly.

[11]    This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this Motion.  To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations consistent with historical practice and in accordance with the Interim Order and Final Order.

Account"); (c) three investment accounts maintained by the Debtors at UBS (the "UBS Accounts"); (d) one joint venture investment account maintained by a Non-Debtor Affiliate at JPMorgan (the "Joint Venture Account"); and (e) one captive insurance investment account maintained by a Non-Debtor Affiliate at JPMorgan (the "Captive Investment Account" and, together with the Money Market Accounts, the Morgan Stanley Account, the UBS Accounts, and the Joint Venture Account, the "Investment Accounts").  The Debtors have historically invested excess liquidity into Money Market Accounts on a daily basis in order to increase returns on excess liquidity.  Each of the Money Market Accounts is tied to a Concentration Account, and the excess liquidity was historically swept on a daily basis.  Given the recent decline in excess liquidity, however, the Debtors have temporarily paused these investment practices.  As of the Petition Date, the Money Market Accounts at JPMorgan are not active and do not hold funds (*i.e.*, the balance is approximately $0).

24.    Additionally, the Debtors have historically maintained certain other Investment Accounts to increase returns through alternate methods.  The Morgan Stanley Account previously held auction rate securities that the Debtors purchased more than 15 years ago, but the Morgan Stanley Account is no longer active.  The Debtors also used one of the UBS Accounts to effectuate the sale of the auction rate securities in February 2023.  The remaining two UBS Accounts were previously utilized to make less flexible investments over longer investment periods than with the Money Market Accounts.  As of the Petition Date, the UBS Accounts are not active and do not hold funds (*i.e.*, the balance is approximately $0).

G.    **Other Accounts.**

25.    ***Collateral Account.***  As described above, Non-Debtor Affiliate Oak Insurance maintains a Wells Fargo account to fund reimbursement payments to Debtor Bed Bath & Beyond, Inc. on a regular basis.[12]

26.    ***Escrow Account***.  Debtor Bed Bath & Beyond, Inc. also maintains a legacy escrow account with JPMorgan—the Daniel Randolph Special Indemnity Escrow account.  This Bank Account is no longer active and, as of the Petition Date, has no balance.

III.    **Bank Accounts and Fees.**

27.    The Bank Accounts and the Cash Management System are described further in the following table:

| Bank Account(s) | Account Description |
|---|---|
| **Concentration Accounts**<br><br>*JPMorgan x8770, x8133, x7625, x2108, x5571, x6298, x5103, x0794, x4034, x1955, x4038, x6055, x8101, x8210, x8101, x2533, x8056, x1121, x1618* | The Concentration Accounts are the primary accounts for the Company's cash collection process, pooling incoming funds from across the Debtors' businesses.  The Concentration Accounts fund all of the Company's Disbursement Accounts. |
| **Store Depository Accounts**<br><br>*Key Bank x4918, x1380*<br><br>*Wells Fargo x2262, x5454, x1160, x6135*<br><br>*Fifth Third x2540, x2874*<br><br>*US Bank x0987, x0995, x1843*<br><br>*Banco Popular x7158*<br><br>*First Hawaiian x4807*<br><br>*Union Bank x9951, x9985, x9977*<br><br>*Truist x1428* | The Store Depository Accounts are used by the Debtors' businesses to deposit cash receipts from their brick-and-mortar store locations. |

---

[12]    For additional information regarding the Debtors' captive insurance policies, see *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief*, filed contemporaneously herewith.

| Bank Account(s) | Account Description |
|---|---|
| *Scotia Bank x0412, x5118, x5612, x1118*<br><br>*JPMorgan x6781, x5217* | The Store Depository Accounts are swept into both the Collection and Concentration Accounts. |
| **Collection Accounts**<br><br>*JPMorgan x5398, x7105, x2270, x2272, x7253, x1378, x1675* | The Company has seven Collections Accounts.<br><br>Receipts, other than cash receipts, are deposited in the Collection Accounts, which are swept daily to the Concentration Accounts. |
| **Disbursement Accounts**<br><br>*JPMorgan x4056, x4692, x3528, x1769, x7509, x8295, x8509, x7633, x2116, x 2509, x6329, x5101, x6337, x5104, x5105, x4035, x1971, x9895, x2574, x1527, x1576* | The Disbursement Account ending in 3528 is funded by the Concentration Accounts and disburses 401(k) payments.<br><br>The Disbursement Accounts ending in 7509, 8295, 8509, 6329, 5101, 6337, 5104, 4035, 1971, 2574, 1527, and 1576 are funded by the Concentration Accounts and disburse accounts payable payments.<br><br>The Disbursement Account ending in 4692 is funded by the Concentration Accounts and disburses federal income tax payments.<br><br>The Disbursement Account ending in 1769 is funded by the Concentration Accounts and funds payment and/or reimbursement obligations for draws under letters of credit.<br><br>The Disbursement Accounts ending in 4056, 7633, 2116, 5105, and 9895 are funded by the Concentration Accounts and disburse payroll and payroll taxes.<br><br>The Disbursement Account ending in 2509 is funded by the Concentration Accounts and disburses rent payments. |
| **Investment Accounts**<br><br>*JPMorgan x8770, x8133, x7625, x2108, x2533*<br><br>*Morgan Stanley x8867*<br><br>*UBS x96 G2, x57 G2, x6679* | The Investment Accounts were historically used by the Debtors to move excess funds from the Concentration Accounts to interest bearing accounts on a daily basis. The Debtors primarily deposited such funds into Money Market Accounts maintained at JPMorgan. Accounts ending in 8770, 8133, 7625, 2108, and 2533 are Concentration Accounts that also serve as Investment Accounts. |
| **Collateral Account**<br><br>*Wells Fargo x4400* | The Non-Debtor Affiliate Oak Insurance maintains the Wells Fargo account ending in 4400 to fund reimbursement payments on account of insurance claims. |
| **Escrow Account**<br><br>*JPMorgan x6638* | The Escrow Account is a legacy account that is no longer active. |

28.    On a monthly basis, the Debtors pay approximately $145,000 in service fees (before earnings credits) owed under their cash management and treasury service agreements covering the Bank Accounts (the "Bank Account Agreements") to the Cash Management Banks

(collectively with any other amounts owning under the Bank Account Agreements, the "Bank Fees"). The Debtors paid approximately $1.6 million on account of Bank Fees in the prior fiscal year (after earnings credits). The Debtors estimate that they owe approximately $155,000 on account of Bank Fees as of the Petition Date and request authority to pay any outstanding Bank Fees owed under the Bank Account Agreements, including any prepetition amounts, in the ordinary course of business on a postpetition basis.

### A. Critical Payment Processing Providers.

29. The Debtors incur processor fees (the "Processor Fees") in connection with their various service agreements with credit card processors (each, a "Payment Processing Provider"), such as Fiserve Inc. ("Fiserve") and Afterpay Limited, that relate to the processing of the Debtors' credit card and gift card transactions. Processor Fees are netted out of funds deposited to the Debtors' Collection Accounts. As of the Petition Date, the Debtors estimate that they owe approximately $1,100,000, which includes $400,000 to be netted out, on account of unpaid Processor Fees. The Debtors estimate that the remaining outstanding balance of approximately $700,000 is owed and payable to Fiserv pursuant to their agreements (the "FDMS Processing Agreements"). The Debtors seek authority to continue paying the Processor Fees, including the prepetition Processor Fees and fees owed under the FDMS Processing Agreements, in the ordinary course on a postpetition basis, consistent with historical practices.

### B. Debtors' Existing Check Stock & Business Forms.

30. In the ordinary course of business, the Debtors also use JPMorgan to prepare preprinted and future checks. Additionally, as part of the Cash Management System, the Debtors use a number of preprinted business forms in the ordinary course of their business, including letterhead, deposit slips, purchase orders, and invoices (collectively with checks, the "Business

Forms"). Continuing to use the existing Business Forms will minimize expenses to the Debtors'

estates, reduce confusion on the part of employees, customers, vendors, and suppliers during the

pendency of these Chapter 11 Cases, avoid the delay in conducting business, and ensure continuity

and avoid confusion between the Debtors' Business Forms. The Debtors seek authority to continue

using their prepetition printed existing stock without reference therein to the Debtors' status as

"Debtors in Possession," provided that the Debtors shall include the "Debtors in Possession"

designation with the corresponding case number on all replacement stock Business Forms once

the existing preprinted stock is depleted.

31.     The Debtors have prepared communication materials for use with the various

parties with which they conduct business that will, among other things, inform such parties of the

commencement of these Chapter 11 Cases. The Debtors believe that these direct communications

and the Debtors' noticing campaign, along with anticipated publicity of this filing, will provide

adequate notice of the Debtors' status as debtors in possession.

**IV.     Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee
Guidelines.**

32.     The Bank Accounts substantially comply with the requirements of section 345 of

the Bankruptcy Code. The majority of the Debtors' active Bank Accounts are maintained at Cash

Management Banks designated as authorized depositories by the Office of the United States

Trustee for the District of New Jersey (the "U.S. Trustee"), pursuant to the *Operating Guidelines*

*for Chapter 11 Cases*, U.S. Department of Justice, United States Trustee Program, Region 3,

(the "U.S. Trustee Guidelines").

33.     The Debtors submit that cause exists to temporarily suspend the requirements of

section 345(b) for an interim period of thirty days from the Petition Date, without prejudice to the

Debtors' ability to seek further extensions to the extent applicable. While 17 of the Company's

77 Bank Accounts are maintained at Cash Management Banks that are not considered to be authorized depositories, each of these Bank Accounts is FDIC-insured.  Additionally, 13 of these 17 Bank Accounts are Store Depository Accounts.  In many cases, the Store Depository Accounts are the only or nearest banks to these stores.  The remaining four Bank Accounts are Investment Accounts maintained at reputable banking institutions (Morgan Stanley and UBS) that have little to no activity.  As explained above, the Debtors have paused their investment practices, such that the UBS Accounts have balances of zero dollars, and the Morgan Stanley Account is no longer active.  To avoid the additional and unnecessary disruption to the Debtors' operations that would ensue if the Debtors were required to close these accounts, the Debtors submit that cause exists to suspend the requirements of section 345 for a period of 30 days.

34.     Moreover, as explained below, the Debtors seek a waiver of certain of the U.S. Trustee Guidelines, for an interim period of thirty days from the Petition Date, without prejudice to the Debtors' ability to seek further extensions to the extent applicable, requiring the Debtors to close all of their prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and obtain new business forms and statements.  Although the Debtors are requesting a waiver of the requirement to close all Bank Accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing Bank Accounts in the ordinary course of business is in the best interests of their estates.  While the Debtors do not currently have plans to open a new bank account, nothing contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion.  In the event the Debtors open new accounts, any new bank account opened by the Debtors shall be established at

an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute a Uniform Depository Agreement.

**Basis for Relief**

**I.      Maintaining the Existing Cash Management System Is Essential to Maximizing the Value of the Debtors' Estates.**

35.      Pursuant to 28 U.S.C. § 586(a)(3) and the U.S. Trustee Guidelines, debtors in possession are required to, among other things:  (a) close all existing bank accounts and open new debtor in possession accounts; (b) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; and (c) maintain a separate debtor in possession account for cash collateral (collectively, the "Accounting Requirements"). These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

36.      Notwithstanding the Accounting Requirements, continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Bankruptcy courts routinely treat requests for authority to continue using existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3rd Cir. 1993).

37.      To accomplish the goals of the Accounting Requirements without the burden and expense of overhauling the Cash Management System in the early days of these Chapter 11 Cases,

18

the Debtors, with the assistance of their advisors, have implemented internal control procedures

that prohibit payments on account of prepetition debts without the prior approval of the Debtors'

Treasury.  In light of such protective measures, the Debtors respectfully submit that parties in

interest will not be harmed by their maintenance of the Cash Management System.

38.    Requiring the Debtors to adopt a new, segmented cash management system during

these Chapter 11 Cases would be expensive, burdensome, and unnecessarily disruptive to the

Debtors' operations.  Importantly, the Cash Management System provides the Debtors with the

ability to track and report the location and amount of funds, which, in turn, allows management to

track and control such funds, ensure cash availability, and reduce administrative costs through a

centralized method of coordinating the collection and movement of funds.  Any disruption of the

Cash Management System could have a negative effect on the Debtors' restructuring efforts.

39.    By contrast, maintaining the current Cash Management System will facilitate the

Debtors' transition into chapter 11 by, among other things, minimizing delays in paying

postpetition debts and eliminating administrative inefficiencies.  Maintaining the current Cash

Management System will also allow the Debtors' Treasury and accounting employees to focus on

their daily responsibilities.  The Debtors can distinguish between prepetition and postpetition

obligations and payments without closing the Bank Accounts and opening new ones.  With the

protective measures put in place by the Debtors and their advisors, the benefits of continuing the

Cash Management System decidedly outweigh the costs.

40.    In addition, all Cash Management Banks where the Debtors maintain Bank

Accounts have been or are in the process of being advised not to honor checks, advises, drafts, or

other requests for payment issued prior to the Petition Date, except as otherwise expressly

permitted by an order of the Court and as directed by the Debtors.  Therefore, the goals of the

U.S. Trustee Guidelines can be satisfied, and the Debtors' creditors will be protected without closing the Bank Accounts.

41.    As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtors' tax obligations can be paid out of the Bank Accounts as they are in the ordinary course of business, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, as set forth in the required reporting.  Moreover, the creation of a new debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

42.    In further connection with the Cash Management System, the Debtors request authorization to continue to pay, honor, or deduct certain Bank Fees from the appropriate accounts. Payment of the Bank Fees will minimize disruption to the Debtors' operations and is therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Cash Management Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtors.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Cash Management Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

43.    For these reasons, the Debtors respectfully submit that cause exists to continue to allow the Debtors to use the existing Bank Accounts as described herein and in accordance with the Bank Account Agreements.  The Debtors will work in good faith with the U.S. Trustee, however, to resolve any concerns regarding the continued use of these accounts on a postpetition basis.

44.     Courts in this and other districts have regularly allowed debtors in large chapter 11 cases to maintain their existing cash management systems and such relief generally is non-controversial.    *See*, *e.g.*, *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 17, 2023) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. Feb. 25, 2021) (same); *In re Modell's Sporting Goods, Inc.*, Case No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (same).

## II.    Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments is Warranted.

45.     The Debtors request that the Court grant further relief from any applicable guidelines to the extent they require the Debtors to make all disbursements by check.  In the ordinary course of business, the Debtors conduct transactions through methods, including, but not limited to, wires, ACH transactions, direct deposits, and other similar methods.  If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, and payments to vendors could be delayed, resulting in unnecessary disruption to their business operations and the incurrence of additional costs to their estates.

## III.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims Among the Debtors.

46.     The Debtors' funds move through the Cash Management System as described above.  At any given time, there may be Intercompany Claims owed by one Debtor to another Debtor and/or by a Non-Debtor Affiliate to a Debtor in the ordinary course as part of the

Cash Management System.  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described. The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment. Accordingly, the Debtors respectfully submit that the continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue such performance.

47.    The Debtors respectfully submit that postpetition Intercompany Transactions arising in the ordinary course are authorized as a matter of law pursuant to section 363(c)(1) of the Bankruptcy Code, and no additional relief is required.  However, out of an abundance of caution, the Debtors respectfully request authority to continue to enter into the Intercompany Transactions in the ordinary course of business and in accordance with the Interim Order and Final Order after the Petition Date.

48.    Because these transactions represent extensions of intercompany credit made in the ordinary course of the Debtors' operations that are an essential component of the Cash Management System, the Debtors respectfully request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order and request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such

ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

49.     The Debtors further submit that the relief requested herein fairly balances the Debtors' need to facilitate the ordinary course operation of their business, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders in transparency, on the other hand.  The requested relief will also ensure that a Debtor's estate will not be unduly burdened by the cost of transfers.

50.     Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district and others.  *See*, *e.g.*, *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 17, 2023); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021); *In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. Feb. 25, 2021).

**IV.    The Court Should Authorize the Debtors to Continue Using the Business Forms.**

51.     To avoid disruption of the Cash Management System and unnecessary expenses, the Debtors request authorization to continue to use the Business Forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced by this relief.  Parties doing business with the Debtors likely will be aware of their status as debtors in possession and, thus, changing Business Forms is unnecessary and would be unduly burdensome.  The Debtors further submit that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtors in Possession."  With respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtors in Possession."

**V.      Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted.**

52.      As discussed above, strict implementation of the U.S. Trustee Guidelines would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and reorganize in an efficient manner.  Thus, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business in accordance with the Bank Account Agreements.  In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.

53.      The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or after the Petition Date.  The Debtors also request that, to the extent a bank honors a prepetition check or other item drawn on any account either:  (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary item handling procedures, such bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such

prepetition check or other item honored postpetition.  The Debtors respectfully submit that such

relief is reasonable and appropriate because the Cash Management Banks are not in a position to

independently verify or audit whether a particular item may be paid in accordance with a Court

order or otherwise.

54.    Moreover, the Debtors request that the Court authorize the Cash Management

Banks to (a) continue to charge the Debtors the Bank Fees, as applicable, and (b) charge-back

returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to

the Petition Date, in the ordinary course of business.  The Debtors further request that the Court

order that liens on any of the Bank Accounts granted to creditors will not have priority over the

Bank Fees of the respective bank at which the Bank Account is located.  Finally, the Debtors

request that the Court authorize the Debtors to pay any Bank Fees, including prepetition amounts.

55.    The relief requested herein is consistent with relief regularly granted by Courts in

this and other districts.  *See, e.g.*, *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J.

Jan. 17, 2023); *In re Aceto Corp.*, No. 19-13448 (VFP) (Bankr. D.N.J. Feb. 19, 2019); *In re Frank

Theatres Bayonne/South Cove, LLC*, No. 18-34808 (Bankr. D.N.J. Dec. 21, 2018); *In re B. Lane,

d/b/a re Fashion to Figure,* No. 17-32958 (Bankr. D. N.J. Nov. 14, 2017); *In re Mountain Creek

Resort, Inc.,* No. 17-19899 (Bankr. D. N.J. June 5, 2017); *In re Cinram Group, Inc.*, No. 17-15258

(Bankr. D. N.J. Mar. 24, 2017); *In re Cubic Energy, Inc.*, No 15-12500 (CSS) (Bankr. D. Del. Jan.

12, 2016); *In re Offshore Grp. Investment Ltd.*, No. 15-12422 (BLS) (Bankr. D. Del. Jan. 5, 2016);

*In re Hercules Offshore, Inc.*, No. 15-11685 (BLS) (Bankr. D. Del. Sept. 8, 2015).

## VI.    Cause Exists To Suspend the Investment and Deposit Guidelines Under Section 345 of the Bankruptcy Code.

56.    Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the

money of the estate, such as cash, as "will yield the maximum reasonable net return on such money,

taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  Although

section 345(b) of the Bankruptcy Code generally requires that, with respect to investments other

than investments "insured or guaranteed by the United States or by a department, agency or

instrumentality of the United States or backed by the full faith and credit of the United States," the

estate must require a bond in favor of the United States secured by the undertaking of a

U.S. Trustee approved corporate surety, the court is permitted to dispense with this undertaking

"for cause."  11 U.S.C. § 345(b).

57.     Courts may extend, modify, or waive compliance with section 345 of the

Bankruptcy Code and the Guidelines for "cause."  In evaluating whether "cause" exists, courts

have considered a number of factors such as:

    a.    the sophistication of the debtor's business;
    b.    the size of the debtor's business operations;
    c.    the amount of the investments involved;
    d.    the bank ratings (*e.g.*, Moody's Investor Service, Inc. ("Moody's") and Standard & Poor's Financial Services LLC ("Standard & Poor's") of the financial institutions where the debtor-in-possession funds are held);
    e.    the complexity of the case;
    f.    the safeguards in place within the debtor's own business of insuring the safety of the funds;
    g.    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions
    h.    the benefit to the debtor;
    i.    the harm, if any, to the estate; and
    j.    the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*In re Service Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

58.     Cause exists to suspend the requirements under section 345(b) of the Bankruptcy

Code for a period of 30 days.  As an initial matter, although 16 Bank Accounts, comprised of

13 Store Depository Accounts and three Investment Accounts, are maintained at Cash

Management Banks that are not authorized depositories, each of these Cash Management Banks

is FDIC-insured.  Moreover, these Chapter 11 Cases are large and involve sophisticated Debtors

with nationwide retail locations.  The Store Depository Accounts are, in many cases, the nearest or only banks located near these stores.  If the Debtors are not permitted to maintain these Bank Accounts, they could be subjected to additional operational and administrative burdens to the detriment of the Debtors' business and their estates.

59.    Additionally, the three Investment Accounts are maintained at reputable banking institutions:  Morgan Stanley and UBS.  As explained above, the Debtors no longer use their UBS Accounts, and the Morgan Stanley Account holds only auction rate securities that were purchased 15 years ago.  Requiring the Debtors to modify their Cash Management System to strictly adhere to the restrictions established by section 345(b) of the Bankruptcy Code will only distract the Company's management, slow the Debtors' momentum, and cause the estates to unnecessarily incur potentially substantial costs to the detriment of creditors.  To avoid disruption to the Debtors' operations, the Debtors submit that an interim limited waiver of the deposit guidelines to permit the Debtors to maintain all of their Bank Accounts, including those Store Depository and Investment Accounts, is in the best interests of the Debtors, their estates, and their creditors. Therefore, the Debtors request that they be permitted to continue to maintain the existing Bank Accounts.

**The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

60.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief

requested is necessary in order for the Debtors to operate their business in the ordinary course and

maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors

submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy

Rule 6003 to support the relief requested herein.

### Request of Waiver of Stay

61.     To the extent that the relief sought in the Motion constitutes a use of property under

section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under

Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find

that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested

in this Motion is immediately necessary for the Debtors to be able to continue to operate their

businesses and preserve the value of their estates.

### Waiver of Memorandum of Law

62.     The Debtors respectfully request that the Court waive the requirement to file a

separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon

which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

63.     Notwithstanding anything to the contrary herein, nothing contained in this Motion

or any actions taken pursuant to any order granting the relief requested by this Motion is intended

or should be construed as (a) an admission as to the validity of any particular claim against the

Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a

promise or requirement to pay any particular claim, (d) an implication or admission that any

particular claim is of a type specified or defined in this Motion or any order granting the relief

requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease

pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any

other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**No Prior Request**

64. No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

65. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA Proceedings and counsel thereto; (l) the Debtors' Canadian Counsel; (m) the Cash Management Banks; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ Michael Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**INTERIM ORDER**
**(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**USE OF EXISTING BUSINESS FORMS AND RECORDS,**
**(B) MAINTAIN EXISTING CORPORATE BANK ACCOUNTS**
**AND CASH MANAGEMENT SYSTEM, (C) PAY PREPETITION**
**BANK FEES ASSOCIATED WITH THE CASH MANAGEMENT**
**SYSTEM, AND (D) CONTINUE PERFORMANCE OF INTERCOMPANY**

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY BALANCES; AND (III) WAIVING CERTAIN U.S. TRUSTEE REQUIREMENTS FOR A PERIOD NOT TO EXCEED THIRTY DAYS**

The relief set forth on the following pages, numbered three (3) through seventeen (17), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days* [Docket No. [●]] (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"): (a) authorizing the Debtors to, in all cases consistent with historical practices and in the ordinary course of business, (i) continue using their existing Business Forms and records, (ii) maintain the Bank Accounts and operate their Cash Management System, (iii) pay prepetition Bank Fees associated with the Cash Management System, and (iv) continue performing Intercompany Transactions (as such terms are defined below) consistent with historical practices; (b) granting administrative expense status to postpetition intercompany balances; (c) granting an interim limited waiver of the Debtors' compliance with the deposit and investment guidelines set forth in section 345 of the Bankruptcy Code; (d) scheduling a final hearing 28 days after commencement of these Chapter 11 Cases to consider entry of an order approving the relief requested herein on a final basis; and

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

(e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on an interim basis as set forth herein.

2. The Final Hearing on the Motion will be held on _____, 2023 at _____ **(Eastern Time)**. Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____, 2023 **at 4:00 p.m. (Eastern Time)**. If no objections are filed to the Motion, this Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

3.      The Debtors are authorized, on an interim basis and until the Final Hearing, in all cases consistent with this Order, historical practices, and in the ordinary course of business, to continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and described in the Motion, honor their prepetition obligations related thereto, pursuant to the terms hereof, and maintain existing Business Forms.  The Debtors shall provide reasonable notice to the U.S. Trustee, the Prepetition ABL Agent, and any statutory committee appointed in the Chapter 11 Cases of any material changes to their Cash Management System.

4.      The Debtors are hereby authorized, on an interim basis, to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date; (b) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (e) pay the Bank Fees, including any prepetition amounts, and any postpetition ordinary course Bank Fees incurred in connection with the Bank Accounts (which, absent such payment, would be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code), and to otherwise perform their obligations under the Bank Account Agreements; *provided*, that in each case, such action is taken in the ordinary course of business and consistent with historical

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

practices.  Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtors in Possession" and the corresponding bankruptcy case number on all checks.  Further, within fourteen days of the entry of this Interim Order, the Debtors shall update any electronically produced checks to reflect their status as debtors in possession and to include the corresponding bankruptcy case number.

5.      Subject to entry of a Final Order and to the extent set forth therein, the Debtors are authorized to, consistent with prepetition practices and this Order, honor, perform under, and otherwise satisfy all prepetition and postpetition obligations arising under the FDMS Processing Agreements, including any payments or reimbursements owed to Payment Processing Providers in the ordinary course of business and consistent with prepetition practices.  Those FDMS Processing Agreements existing between the Debtors, the Cash Management Banks, and the Payment Processing Providers will continue to govern the postpetition cash management relationship between the Debtors, the Cash Management Banks, and the Payment Processing Providers.  Subject to the applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such FDMS Processing Agreements shall remain in full force and effect without further order of this Court or, with respect to any such agreement with any Cash Management Bank and Payment Processing Provider (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank

| (Page | 7) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise, subject to applicable bankruptcy law.

6.     If any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines, the Debtors shall have thirty (30) days from the date of this Interim Order to come into compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines, without prejudice to the Debtors' ability to seek an additional extension or a final waiver of such requirements; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from this Court to the extent that an agreement cannot be reached within that time period (or such other period as agreed to by the Debtors and U.S. Trustee).

7.     For Cash Management Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement for the District of New Jersey ("UDA") with the U.S. Trustee, within fifteen (15) days of entry of this Interim Order, the Debtors shall (a) contact each Cash Management Bank, (b) provide the Cash Management Banks with each of the Debtors' employer identification numbers, and (c) identify each of their Bank Accounts held at such Cash Management Banks as being held by a debtor in possession in a bankruptcy case, and provide the case number.

8.     For banks at which the Debtors hold accounts that are not party to a UDA with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a UDA in

| (Page \| 8) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a UDA in a form prescribed by the U.S. Trustee are fully preserved.

9.    The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption, consistent with historical practices and in the ordinary course, and to receive, process, honor, and pay, solely to the extent of available funds and consistent with the DIP Orders (as defined below), any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be. The Bank Account Agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, and any provisions relating to offset or charge-back rights with respect to return items, shall remain in full force and effect.

10.    The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, consistent with historical practice and in accordance with the terms of the interim and final orders granting relief with respect to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition*

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

*Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. [●]] (the "DIP Orders"), including, without limitation, the opening of any new bank accounts, the closing of any existing Bank Accounts, and entrance into ancillary agreements, including new deposit account control agreements related to the foregoing, as the Debtors may deem necessary and appropriate. Any new bank account opened by the Debtors shall be established at an institution that is (a) a party to a UDA with the United States Trustee for the District of New Jersey or is willing to immediately execute a UDA, and (b) bound by the terms of this Interim Order.  The Debtors shall provide notice within fifteen (15) days to the U.S. Trustee, counsel to the DIP Agent, the Prepetition ABL Agent, and counsel to any statutory committee of the opening of such account or closing of any Bank Account; *provided*, that such opening or closing shall be timely indicated on the Debtors' monthly operating reports.

11.    The relief granted in this Interim Order is extended to any new bank account opened by the Debtors in the ordinary course of business and consistent with historical practice after the date hereof in accordance with the terms of the DIP Orders, including, without limitation the LC Cash Collateral Account, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.  The Debtors are further authorized, but not directed, to open the LC Cash Collateral Account at JPMorgan Chase

(Page | 10)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Bank, N.A. for the purpose of cash collateralize their payment and/or reimbursement obligations under any outstanding letters of credit issued under the Prepetition ABL Facility (the "ABL LC Obligations") and to execute any appropriate documentation to grant the Prepetition ABL Agent a first priority lien on all cash on deposit in the LC Cash Collateral Account to secure the ABL LC Obligations.

12.     All Cash Management Banks that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

13.     The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices and the Cash Management System, without the need for further order of this Court for:  (a) all checks drawn on the Debtors' Bank Accounts which are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' Bank Accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any,

(Page | 11)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

owed to any Cash Management Bank as Bank Fees, including service charges, for the maintenance of the Cash Management System.

14.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

15.     Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, of which items the Debtors shall promptly notify the Cash Management Banks, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors; (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

(Page | 12)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

16.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

17.     The Debtors are authorized to continue the Intercompany Transactions in the ordinary course of business.

18.     All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions are authorized hereunder, subject to paragraph 19 hereof, and postpetition obligations under any Bank Account Agreements, are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code upon entry of a Final Order to the extent set forth therein; *provided*, that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted under the DIP Order, including, without limitation, DIP Superpriority Claims and DIP Liens, Adequate Protection Claims, or Adequate Protection Liens (each as defined in the DIP Orders).

19.     In connection with the Intercompany Transactions, the Debtors shall continue to maintain accurate and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, distinguished between prepetition and postpetition transactions, and properly recorded on intercompany accounts and shall make such

(Page | 13)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

records available to the U.S. Trustee, any statutory committee appointed in the Chapter 11 Cases, counsel to the Prepetition ABL Agent, and counsel to the DIP Agent upon request.

20.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

21.     Nothing in this Interim Order shall be interpreted to authorize the Debtors to loan or otherwise transfer any money to any non-Debtor affiliate absent further order of this Court.

22.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

23.     Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of which entity pays those disbursements.

24.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the

(Page | 14)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

25.     The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with Bank Fees or Processor Fees.

26.     The Debtors are authorized, but not directed, pursuant to section 364(b) of the Bankruptcy Code, to continue utilizing any existing corporate credit card or purchase card arrangements, including, but not limited to, any purchase cards issued by PNC Bank, National

(Page | 15)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Association, in the ordinary course of business and consistent with prepetition practices, including by paying any obligations outstanding with respect thereto, whether or not such obligations were outstanding on or before the Petition Date. Those agreements existing between the Debtors and the card issuers governing any existing corporate credit card or purchase card arrangements, including any deposit agreement with PNC Bank, National Association, shall continue to govern the postpetition relationship with respect to the purchase cards and credit cards between the Debtors and the card issuers and all of the provisions of such agreements, including, but not limited to, the termination, fee provisions, rights, benefits, collateral, offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of this Court, or with respect to any such agreement, with the issuer of the purchase cards or credit cards.

27.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by this Court in respect of the DIP Orders, including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders. To the extent there is any conflict or inconsistency between this Interim Order or any

(Page | 16)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

action proposed to be taken hereunder and terms of the DIP Orders, the terms of the DIP Orders shall govern.

28.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

29.     7.     Nothing in this Interim Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Interim Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

30.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

31.     Solely to the extent any letters of credit issued in connection with the Prepetition ABL Facility for the benefit of the Debtors are drawn, JPMorgan may apply funds from the LC Funding Account or the LC Cash Collateral Account to satisfy the ABL LC Obligations, as appropriate, without seeking further relief from the automatic stay pursuant to section 362(d) of

(Page | 17)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

the Bankruptcy Code and without the Debtors' further consent or further order of this Court as it relates to the funds held in the LC Funding Account or LC Cash Collateral Account.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

33.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

34.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

35.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

36.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Order.

37.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

38.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit 1**

**Cash Management System Schematic**



[1] The Bed Bath & Beyond Inc. and BBBYTF LLC concentration accounts transfer funds to the Buy Buy Baby, Inc. and BBBYCF LLC concentration accounts as needed for business operation purposes.

[2] This account is used as an intermediary account for funds being transferred from Bed Bath & Beyond of California LLC depository and collection accounts to the Bed Bath & Beyond Inc. concentration account.
It is also used as an intermediary account for funds being transferred from the Bed Bath & Beyond Inc. concentration account to the Bed Bath & Beyond of California LLC concentration account.

[3] The BBB Value Services Inc. concentration account transfers funds to the Bed Bath & Beyond Inc. concentration account as needed for business operation purposes.

[4] Previously, the Debtors utilized the Investment Accounts to transfer excess funds on a periodic basis to interest-bearing accounts. These funds would periodically sweep to concentration accounts. As of the Petition Date, the Debtors are no longer utilizing the Investment Accounts for this purpose.

[5] The funds in the collateral account are utilized for insurance claims administered under the captive insurance provider.

[6] Escrow account is a legacy account that is no longer used.

[7] The Oak Insurance Company Inc. concentration account transfers funds to the Bed Bath & Beyond Inc. concentration account to reimburse payment of insurance claims.

## **Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**FINAL ORDER**
**(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**USE OF EXISTING BUSINESS FORMS AND RECORDS,**
**(B) MAINTAIN EXISTING CORPORATE BANK ACCOUNTS**
**AND CASH MANAGEMENT SYSTEM, (C) PAY PREPETITION**
**BANK FEES ASSOCIATED WITH THE CASH MANAGEMENT**
**SYSTEM, AND (D) CONTINUE PERFORMANCE OF INTERCOMPANY**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY BALANCES; AND (III) WAIVING CERTAIN U.S. TRUSTEE REQUIREMENTS FOR A PERIOD NOT TO EXCEED THIRTY DAYS**

The relief set forth on the following pages, numbered three (3) through sixteen (16), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days* [Docket No [●]] (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an final order (this "Final Order"):  (a) authorizing the Debtors to (i) continue using their existing Business Forms and records in the ordinary course of business, (ii) maintain the Bank Accounts and operate their Cash Management System, (iii) pay prepetition Bank Fees associated with the Cash Management System, and (iv) continue performing Intercompany Transactions consistent with historical practices;  (b) granting administrative expense status to postpetition intercompany balances; (c) granting an interim limited waiver of the Debtors' compliance with the deposit and investment guidelines set forth in section 345 of the Bankruptcy Code; (d) scheduling a final hearing 28 days after commencement of these Chapter 11 Cases to consider entry of an order approving the relief requested herein on a final basis, and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, on a final basis, and in all cases consistent with this Final Order, to continue operating the Cash Management System in accordance with prepetition practices, and the ordinary course of business, honor their prepetition obligations related thereto, and maintain existing Business Forms.  The Debtors shall provide reasonable notice to the

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

U.S. Trustee, counsel to the DIP Agent, the Prepetition ABL Agent, and counsel to any statutory committee appointed in the Chapter 11 Cases of any material changes to their Cash Management System.

3.      The Debtors are hereby authorized to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date; (b) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (e) pay the Bank Fees, including any prepetition amounts, and any postpetition ordinary course Bank Fees incurred in connection with the Bank Accounts (which, absent such payment, would be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code), and to otherwise perform their obligations under the Bank Account Agreements; *provided*, that in each case, such action is taken in the ordinary course of business and consistent with historical practices. Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtors in Possession" and the corresponding bankruptcy case number on all checks.

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

4.      To the extent set forth herein, the Debtors are authorized to, consistent with prepetition practices and this Final Order, honor, perform under, and otherwise satisfy all prepetition and postpetition obligations arising under the FDMS Processing Agreements, including any payments or reimbursements owed to Payment Processing Providers in the ordinary course of business and consistent with prepetition practices.  Those FDMS Processing Agreements existing between the Debtors, the Cash Management Banks, and the Payment Processing Providers will continue to govern the postpetition cash management relationship between the Debtors, the Cash Management Bank, and the Payment Processing Providers.  Subject to the applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such FDMS Processing Agreements shall remain in full force and effect without further order of this Court or, with respect to any such agreement with any Cash Management Bank and Payment Processing Provider (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise, subject to applicable bankruptcy law.

5.      Nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from this Court with respect to the Debtors' compliance with section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines.

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

6.     The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption, consistent with historical practices, and in the ordinary course, and to receive, process, honor, and pay, solely to the extent of available funds and consistent with the interim and final orders granting relief with respect to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. [●]] (the "DIP Orders"), any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.  The Bank Account Agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, and any provisions relating to offset or charge-back rights with respect to return items, shall remain in full force and effect.

7.     The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, consistent with historical practice and in accordance

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

with the terms of the DIP Orders, including, without limitation, the opening of any new bank accounts, the closing of any existing Bank Accounts, and entrance into ancillary agreements, including new deposit account control agreements related to the foregoing, as the Debtors may deem necessary and appropriate.   Any new bank account opened by the Debtors shall be established at an institution that is (a) a party to a UDA with the United States Trustee for the District of New Jersey or is willing to immediately execute a UDA and (b) bound by the terms of this Final Order.   The Debtors shall provide notice within fifteen (15) days to the U.S. Trustee, counsel to the DIP Agent, the Prepetition ABL Agent, and counsel to any statutory committee of the opening of such account or closing of any Bank Account; *provided* that such opening or closing shall be timely indicated on the Debtors' monthly reports.

8.      The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business and consistent with historical practice after the date hereof, in accordance with the terms of the DIP Orders, including, without limitation, the LC Cash Collateral Account, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.   The Debtors are further authorized, but not directed, to open the LC Cash Collateral Account at JPMorgan Chase Bank, N.A. for the purpose of cash collateralize their payment and/or reimbursement obligations under any outstanding letters of credit issued under the Prepetition ABL Facility (the "ABL LC Obligations") and to execute any appropriate documentation to grant the Prepetition ABL Agent a

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

first priority lien on all cash on deposit in the LC Cash Collateral Account to secure the ABL LC Obligations.

9.     All Cash Management Banks that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

10.     The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, consistent with historical practices and the Cash Management System, without the need for further order of this Court for:  (a) all checks drawn on the Debtors' Bank Accounts which are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' Bank Accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as Bank Fees, including service charges, for the maintenance of the Cash Management System.

11.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned

(Page | 10)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

12.     Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, of which items the Debtors shall promptly notify the Cash Management Banks, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors; (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

13.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that

(Page | 11)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14.     The Debtors are authorized to continue the Intercompany Transactions in the ordinary course of business.

15.     All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions are authorized hereunder, subject to paragraph 16 hereof, and postpetition obligations under any Bank Account Agreements are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted under the DIP Order, including, without limitation, DIP Superpriority Claims and DIP Liens, Adequate Protection Claims, or Adequate Protection Liens (each as defined in the DIP Orders).

16.     In connection with the Intercompany Transactions, the Debtors shall continue to maintain accurate and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, distinguished between prepetition and postpetition transactions, and properly recorded on intercompany accounts and shall make such records available to the U.S. Trustee, any statutory committee appointed in these Chapter 11 Cases, counsel to Prepetition ABL Agent, and counsel to the DIP Agent upon request.

(Page | 12)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

17.    Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

18.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

19.    Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of which entity pays those disbursements.

20.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors',

(Page | 13)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

21.     The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with Banks Fees or Processor Fees.

22.     he Debtors are authorized, but not directed, pursuant to section 364(b) of the Bankruptcy Code, to continue utilizing any existing corporate credit card or purchase card arrangements, including, but not limited to, any purchase cards issued by PNC Bank, National Association, in the ordinary course of business and consistent with prepetition practices, including by paying any obligations outstanding with respect thereto, whether or not such obligations were outstanding on or before the Petition Date. Those agreements existing between the Debtors and the card issuers governing any existing corporate credit card or purchase card arrangements, including any deposit agreement with PNC Bank, National Association, shall continue to govern

(Page | 14)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

the postpetition relationship with respect to the purchase cards and credit cards between the

Debtors and the card issuers and all of the provisions of such agreements, including, but not limited

to, the termination, fee provisions, rights, benefits, collateral, offset and termination rights, and

remedies afforded under such agreements shall remain in full force and effect absent further order

of this Court, or with respect to any such agreement, with the issuer of the purchase cards or credit

cards.

23.    Notwithstanding anything to the contrary contained in the Motion or this Final

Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder

shall not be inconsistent with, and shall be subject to and in compliance with, the requirements

imposed on the Debtors under the terms of each interim and final order entered by this Court in

respect of the DIP Orders, including compliance with any budget or cash flow forecast in

connection therewith and any other terms and conditions thereof.  Nothing herein is intended to

modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP

Orders.

24.    Nothing in this Final Order authorizes the Debtors to accelerate any payments not

otherwise due.

25.    Nothing in this Final Order shall alter or limit any authorization, requirement or

relief contained in, or prevent Non-Debtor Affiliates BBB Canada Ltd. and Bed Bath & Beyond

Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Final Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

26.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

28.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

29.     Solely to the extent any letters of credit issued in connection with the Prepetition ABL Facility for the benefit of the Debtors are drawn, JPMorgan may apply funds from the LC Funding Account or the LC Cash Collateral Account to satisfy the ABL LC Obligations, as appropriate, without seeking further relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code and without the Debtors' further consent or further order of this Court as it relates to the funds held in the LC Funding Account or LC Cash Collateral Account.

(Page | 16)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

30.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

31.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

32.     The Debtors shall serve by regular mail a copy of this Final Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Order.

33.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

34.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## Exhibit C

**Bank Accounts**

| Account Ending (x####) | Bank Name | Legal Entity | Currency | Bank Country | Purpose |
|---|---|---|---|---|---|
| x2270 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Collection |
| x2272 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Collection |
| x5398 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Collection |
| x7105 | JPMorgan | Bed Bath & Beyond of California LLC | USD | United States | Collection |
| x7253 | JPMorgan | Buy Buy Baby, Inc. | USD | United States | Collection |
| x1675 | JPMorgan | Decorist, LLC | USD | United States | Collection |
| x1378 | JPMorgan | Harmon Stores, Inc. | USD | United States | Collection |
| x8770 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Concentration |
| x8133 | JPMorgan | Bed Bath & Beyond of California LLC | USD | United States | Concentration |
| x7625 | JPMorgan | Liberty Procurement Co. Inc. | USD | United States | Concentration |
| x2108 | JPMorgan | BBB Value Services Inc. | USD | United States | Concentration |
| x5571 | JPMorgan | BBBYTF LLC | USD | United States | Concentration |
| x6298 | JPMorgan | BBBYCF LLC | USD | United States | Concentration |
| x5103 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Concentration |
| x0794 | JPMorgan | Bed Bath & Beyond Canada L.P. | USD | Canada | Concentration |
| x4034 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Concentration |
| x1955 | JPMorgan | Bed Bath & Beyond Canada L.P. | USD | Canada | Concentration |
| x4038 | JPMorgan | Bed Bath & Beyond Canada L.P. | USD | Canada | Concentration |
| x6055 | JPMorgan | BBB Canada LP Inc. | USD | Canada | Concentration |
| x8101 | JPMorgan | BBB Canada LP Inc. | CAD | Canada | Concentration |
| x8210 | JPMorgan | BBB Canada Ltd. | USD | Canada | Concentration |
| x8101 | JPMorgan | BBB Canada Ltd. | CAD | Canada | Concentration |
| x2533 | JPMorgan | Buy Buy Baby, Inc. | USD | United States | Concentration |
| x1618 | JPMorgan | Decorist, LLC | USD | United States | Concentration |
| x1121 | JPMorgan | Harmon Stores, Inc. | USD | United States | Concentration |
| x7158 | Banco Popular | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x1428 | Truist | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x2540 | Fifth Third | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x2874 | Fifth Third | Bed Bath & Beyond of California LLC | USD | United States | Depository |
| x4807 | First Hawaiian | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x6781 | JPMorgan | Buy Buy Baby, Inc. | USD | United States | Depository |
| x5217 | JPMorgan | Buy Buy Baby, Inc. | USD | United States | Depository |

| Account Ending (x####) | Bank Name | Legal Entity | Currency | Bank Country | Purpose |
|---|---|---|---|---|---|
| x4918 | Key Bank | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x1380 | Key Bank | Bed Bath & Beyond of California LLC | USD | United States | Depository |
| x0412 | Scotia Bank | Bed Bath & Beyond Canada L.P. | USD | Canada | Depository |
| x5118 | Scotia Bank | Bed Bath & Beyond Canada L.P. | CAD | Canada | Depository |
| x5612 | Scotia Bank | Bed Bath & Beyond Canada L.P. | USD | Canada | Depository |
| x1118 | Scotia Bank | Bed Bath & Beyond Canada L.P. | CAD | Canada | Depository |
| x9951 | Union Bank | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x9985 | Union Bank | Bed Bath & Beyond of California LLC | USD | United States | Depository |
| x9977 | Union Bank | Harmon Stores, Inc. | USD | United States | Depository |
| x0987 | US Bank | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x0995 | US Bank | Bed Bath & Beyond of California LLC | USD | United States | Depository |
| x1843 | US Bank | Harmon Stores, Inc. | USD | United States | Depository |
| x2262 | Wells Fargo | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x5454 | Wells Fargo | Bed Bath & Beyond Inc. | USD | United States | Depository |
| x1160 | Wells Fargo | Bed Bath & Beyond of California LLC | USD | United States | Depository |
| x6135 | Wells Fargo | Buy Buy Baby, Inc. | USD | United States | Depository |
| x4056 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Disbursement |
| x4692 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Disbursement |
| x3528 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Disbursement |
| x1769 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Disbursement |
| x7509 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Disbursement |
| x8295 | JPMorgan | Bed Bath & Beyond Inc. | CAD | Canada | Disbursement |
| x8509 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Disbursement |
| x7633 | JPMorgan | Liberty Procurement Co. Inc. | USD | United States | Disbursement |
| x2116 | JPMorgan | BBB Value Services Inc. | USD | United States | Disbursement |
| x2509 | JPMorgan | BBBY Management Corporation | USD | United States | Disbursement |
| x6329 | JPMorgan | Bed Bath & Beyond Canada L.P. | USD | Canada | Disbursement |
| x5101 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Disbursement |
| x6337 | JPMorgan | Bed Bath & Beyond Canada L.P. | USD | Canada | Disbursement |

| Account Ending (x####) | Bank Name | Legal Entity | Currency | Bank Country | Purpose |
|---|---|---|---|---|---|
| x5104 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Disbursement |
| x5105 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Disbursement |
| x4035 | JPMorgan | Bed Bath & Beyond Canada L.P. | CAD | Canada | Disbursement |
| x1971 | JPMorgan | Bed Bath & Beyond Canada L.P. | USD | Canada | Disbursement |
| x9895 | JPMorgan | Buy Buy Baby, Inc. | USD | United States | Disbursement |
| x2574 | JPMorgan | Buy Buy Baby, Inc. | USD | United States | Disbursement |
| x1527 | JPMorgan | Harmon Stores, Inc. | USD | United States | Disbursement |
| x1576 | JPMorgan | Harmon Stores, Inc. | USD | United States | Disbursement |
| x6638 | JPMorgan | Bed Bath & Beyond Inc. | USD | United States | Escrow |
| x4400 | Wells Fargo | Oak Insurance Company Inc. | USD | United States | Intercompany Transactions |
| x8056 | JPMorgan | Oak Insurance Company Inc. | USD | United States | Intercompany Transactions |
| x0968 | JPMorgan | BBB Mexico LLC | USD | Mexico | Intercompany Transactions |
| x8867 | Morgan Stanley | Liberty Procurement Co. Inc. | USD | United States | Investment |
| x96 G2 | UBS | Liberty Procurement Co. Inc. | USD | United States | Investment |
| x6679 | UBS | Liberty Procurement Co. Inc. | USD | United States | Investment |
| x57 G2 | UBS | BBB Value Services Inc. | USD | United States | Investment |