**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE
ENTERED INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE
INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):[2]

## **Relief Requested**

1.      The Debtors seek entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  (a) authorizing, but not directing, the Debtors to (i) maintain insurance and surety coverage entered into prepetition and pay related prepetition obligations, and (ii) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course of business, and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing 28 days after the commencement of these Chapter 11 Cases (as defined herein) to consider entry of an order approving the relief requested herein on a final basis.[3]

## **Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

[3]     The relief requested herein does not apply to any claims against, or insurance policies and surety bonds of, Debtor BBB Canada Ltd. ("BBB Canada") or Bed Bath & Beyond Canada L.P. ("BBB Canada LP"), which will be addressed in BBB Canada's proceeding under the Companies' Creditors arrangement Act (Canada) R.S.C. 1985, c. C-36, as amended ("CCAA").

final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

### Background

5.      The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

6.      The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

7.      On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting

3

procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

### The Insurance Policies and Related Payment Obligations

8.      In the ordinary course of business, the Debtors maintain 50 insurance policies (collectively, the "Insurance Policies," and, each individually, an "Insurance Policy") that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). In addition to the Insurance Policies, the Debtors maintain workers' compensation policies that are reflected in **Exhibit C**, but for which relief is not sought in this Motion.[4]  These Insurance Policies provide coverage for, among other things, the Debtors' commercial property, commercial general liability, international casualty, commercial crime, cyber liability, earthquakes, director and officer liability, fiduciary liability, and terrorism.  The coverage provided under these Insurance Policies extends to all jurisdictions in which the Debtors operate their businesses, including the United States, Canada, and Puerto Rico.  The aggregate annual premium for the Insurance Policies is approximately $15 million, plus applicable taxes and surcharges.  A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[5]

---

[4]    In addition to the Insurance Policies listed on **Exhibit C**, the Debtors maintain numerous Insurance Policies with respect to, among other things, workers' compensation, employee health, dental, vision, disability, and life insurance benefits.  These policies are described, and relief is requested with respect to such policies in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

[5]    The descriptions of the Insurance Policies set forth in this Motion constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion.  The Debtors request authority to honor obligations and renew all Insurance Policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular Insurance Policy on **Exhibit C**.

9.      The Insurance Policies are annual, two- or three-year policies that renew throughout the year based on when the policy was originally purchased.  The Debtors do not believe any Insurance Policies will need to be renewed within 28 days after the Petition Date.  The Debtors estimate that, as of the Petition Date, there are approximately $3 million in premiums due on account of the Insurance Policies ("Outstanding Premiums"), from which the Insurance Broker (as defined herein) will be paid a commission.  Because all of the Insurance Policies are vital to efficiently administer the Debtors' estates during the pendency of these Chapter 11 Cases, the Debtors seek authority to honor amounts owed on account of the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies.

10.     Pursuant to certain of the Insurance Policies, the Debtors are required to pay various deductibles or retention amounts (the "Insurance Deductible(s)"), depending upon the type of claim and Insurance Policy involved.  Under such Insurance Policies, the Insurance Carriers may pay claimants and then invoice the Debtors for any Insurance Deductible.  In such situations, the Insurance Carriers may have prepetition claims against the Debtors.  The Debtors risk losing their Insurance Policies if they fail to make their Insurance Deductible payments, which would not only greatly increase the risk related to the Debtors' operations, but may cause them to violate state laws requiring them to have such policies.  To avoid this outcome, the Debtors seek authority to honor any amounts owed on account of Insurance Deductibles in the ordinary course of business.

11.     Non-Debtor affiliate Oak Insurance Company Inc. (the "Captive Insurer") is a part of the Debtors' integrated risk policy and administers certain of the Debtors' historical workers' compensation and medical stop loss policies.  The Captive Insurer is a wholly-owned subsidiary insurance provider and an integrated part of the Debtors' cash management system.  Workers' compensation premiums for the 2016–2021 policy period and medical stop loss premiums for

the 2021 policy period are held by the Captive Insurer (the "Captive Insurance Policies"). When claims arising from the Captive Insurance Policies become due and owing, the Debtors pay such claims from a disbursement account, and the Captive Insurer then transfers funds to the Debtors as reimbursement for such payments. The Debtors do not pay premiums on account of the Captive Insurance Policies.

12.     The Captive Insurer is vital to insuring parts of the business and protecting the Debtors' balance sheet, and the Debtors may violate certain contractual, regulatory, and financial requirements without the coverage it provides. As of the Petition Date, the Debtors do not believe that they owe any amounts to the Captive Insurer on account of fees, commissions, or any other prepetition obligations. Nevertheless, out of an abundance of caution, the Debtors seek authority to honor any amounts owed to the Captive Insurer to ensure uninterrupted coverage under the Insurance Policies.

13.     Certain of the Insurance Policies are subject to audits during or following expiration of their respective policy periods (the "Insurance Policy Audits"), which may result in an adjustment of the premiums owed on account thereof. As of the Petition Date, there are no Insurance Policy Audits presently being undertaken.[6] However, out of an abundance of caution, the Debtors seek authority to honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business.

14.     Continuation of the Insurance Policies and entry into new Insurance Policies is essential to the administration of these Chapter 11 Cases. Moreover, in many instances, insurance

---

[6]     As discussed in the Wages Motion, the Debtors' workers compensation program is subject to regular audits (the "Workers' Compensation Audits"), which may result in an adjustment of the premiums owed on account thereof. Workers' Compensation Audits for prepetition premium payments will not conclude until after the Petition Date. As a result, the aggregate amount of the Debtors' obligations arising from the Workers' Compensation Audits is not known at this time.

coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities. The United States Trustee for the District of New Jersey (the "U.S. Trustee") also requires that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors request authority to maintain their existing Insurance Policies, pay prepetition obligations related thereto, and enter into new Insurance Policies in the ordinary course of business.

### The Debtors' Insurance Broker and Claim Administrator

15.     The Debtors retain the services of an insurance broker and claims servicer to help manage their portfolios of risk. The Debtors obtain the majority of their Insurance Policies, including their commercial property, commercial general liability, international casualty, commercial crime, director and officer liability, workers' compensation, and fiduciary liability through their insurance broker, Willis Towers Watson ("WTW" or the "Insurance Broker"). The Insurance Broker performs many services for the Debtors to help them obtain comprehensive insurance coverage for their operations in a cost-effective manner, including, managing renewal data, marketing the Insurance Policies with respect to negotiating policy terms, provisions, and premiums, handling claims, and providing ongoing support throughout the applicable policy periods.

16.     The Debtors pay the Insurance Broker a fee for insurance advisory services through statements of work. The Insurance Broker also collects commission payments from the insurance carriers, payable as part of the premiums paid on the Insurance Policies, for services rendered on account of the Debtors' cyber liability, commercial property, and business travel accident Insurance Policies, among others. WTW also receives a quarterly fee for managing the Captive Insurer, which includes a reimbursement, if any, for taxes paid by the Insurance Broker on behalf of the Captive Insurer. As of the Petition Date, the Insurance Broker is owed a commission on

account of the commercial property policies, which will be paid from the Outstanding Premiums. The Debtors seek authority to honor the amount owed to the Insurance Broker to ensure uninterrupted coverage under their Insurance Policies during the course of these Chapter 11 Cases.

17.     Additionally, WTW is the exclusive broker of record with respect to the Debtors' director and officer Insurance Policies (the "D&O Policies").  In this capacity, WTW is authorized, at the Debtors' direction, to negotiate changes with respect to the Debtors' existing D&O Policies and to procure new D&O Policies for the Debtors.  Prior to the Petition Date, WTW assisted the Debtors with procuring new director and officer runoff policies.  The Debtors pay WTW an annual fee in connection with these services, as well as a commission, payable as part of the premiums paid on the D&O Policies.  As of the Petition Date, the Debtors do not believe that they owe any amounts to WTW on account of fees, commissions, or any other prepetition obligations in connection with the D&O policies.  Nevertheless, out of an abundance of caution, the Debtors seek authority to honor any amounts owed to WTW to ensure uninterrupted coverage under their D&O Policies.

18.     The Debtors also maintain the services of CorVel Corporation (the "Claim Administrator") to manage workers' compensation and general liability claims.  As of the Petition Date, the Debtors owe approximately $100,000 to the Claim Administrator on account of fees and other prepetition obligations.  The Debtors seek authority to honor any amounts owed to the Claim Administrator to ensure uninterrupted management of workers' compensation and general liability claims during the course of these Chapter 11 Cases.

**The Debtors' Surety Bond Program**

19.     In the ordinary course of business, the Debtors are required to provide surety bonds (the "Surety Bonds") to certain third parties, often governmental units, or other public agencies, to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program").

8

A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as

**Exhibit D**.[7]

20.     The Debtors currently maintain 10 Surety Bonds, in the aggregate amount of

approximately $11.2 million, consisting of four tax bonds, one stay of execution bond, three

mechanics lien release bonds, one construction bond, and one customs bond in the United States.

The Debtors maintain one general customs bond with U.S. Customs and Border Protection

(the "CBP Agency") to assure the CBP Agency of the Debtors' ability to pay any applicable duties,

penalties, or obligations, including any anti-dumping duties they may incur with respect to their

imports.

21.     When a party that transacts with the Debtors requests a bond and the Debtors

determine that they have better operational uses for cash and do not wish to provide the cash and

cash equivalents necessary to satisfy such request, they may pursue a surety bond.  In such

situations, sureties provide, upfront, the full amount of the requested cash and cash equivalents to

the requesting party on behalf of the Debtors, in exchange for a fee from the Debtors and an amount

of collateral to secure the bond issuance on the Debtors' behalf.  The issuance of a surety bond

shifts the risk of the Debtors' nonperformance or nonpayment from an obligee (such as a

government agency) to a surety.

22.     To preserve estate value during these Chapter 11 Cases, the Debtors must maintain

the existing Surety Bond Program, including paying bond premiums and related fees as they come

due, providing the sureties (collectively, the "Sureties") with collateral, renewing or potentially

---

[7]     The descriptions of the Surety Bonds set forth in this Motion constitute a summary only.  The actual terms of the
Surety Bonds and related agreements will govern in the event of any inconsistency with the description in this
Motion.  The Debtors request authority to honor obligations and renew all surety bonds, as applicable, regardless
of whether the Debtors inadvertently fail to include a particular surety bond on **Exhibit D**.

acquiring additional bonding capacity as needed in the ordinary course of business, and executing

other agreements, as appropriate, in connection with the Surety Bond Program.  Failing to provide,

maintain, or timely replace their Surety Bonds may prevent the Debtors from complying with their

federal law obligations, and consequently prevent them from undertaking essential functions, such

as shipping goods.

23.    The premiums for the Surety Bonds are generally determined on a one- to six-year

basis and are paid by the Debtors when the bonds are issued and upon renewal.  The aggregate

annual premium for the Surety Bonds currently maintained by the Debtors is approximately

$47,500.

24.    In addition, Sureties often require the Debtors to sign an agreement promising to

pay the surety in the event the bond is called.  Unlike an insurance policy, if a surety incurs a loss

on a surety bond, it is entitled to recover the full amount of that loss from the principal

(the Debtors).  To that end, the Debtors are party to indemnity agreements (each an "Indemnity

Agreement", and collectively, the "Indemnity Agreements") with certain of the Sureties that set

forth each Surety's rights to recover from the Debtors.  Pursuant to the Indemnity Agreements, the

Debtors agree to indemnify the relevant Surety from any loss, charge, claim, demand, cost,

liability, or expense which such Surety may incur on account of the issuance of any bonds on

behalf of the Debtors.  Additionally, each Indemnity Agreement allows the applicable Surety to

request collateral from the Debtors from time to time.  Pursuant to the Indemnity Agreements, as

of the Petition Date, the Debtors maintain approximately $16.1 million in standing letters of credit

issued by JPMorgan Chase Bank, N.A. as collateral in respect of the Surety Bond Program.

25.    WTW provides surety bond brokerage services to the Debtors and manages the

Surety Bond Program, and Aon Reed Stenhouse Inc. ("Aon," together with WTW, the "Surety

Bond Brokers") provided surety bond brokerage services to the Debtors in connection with their general customs bonds with the Canada Border Services Agency (the "CBSA"). The Surety Bond Brokers are paid a commission for their services related to surety bond coverage in connection with the Debtors' Surety Bond Program, which is payable as part of the premiums paid on the Surety Bond Program. As of the Petition Date, the Debtors do not believe that any amounts are owed to the Surety Bond Brokers on account of prepetition obligations associated with the Surety Bond Program. Nevertheless, out of an abundance of caution, the Debtors seek authority to honor any amounts owed to the Surety Bond Brokers in the ordinary course of business to ensure the Surety Bond Program remains uninterrupted postpetition.

**Basis for Relief**

I. **Continuation of the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee Guidelines.**

26. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee Guidelines"). Accordingly, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all obligations related to the Insurance Policies and the Surety Bond Program and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies and Surety Bond Program as needed, in their judgment, without further order of the Court.

II.    **The Debtors Should Be Authorized to Satisfy Prepetition Obligations Required under the Insurance Policies and Surety Bond Program and to Continue Honoring Such Obligations Postpetition.**

27.    The relief requested herein is essential to the Debtors' continuation of ordinary course operations and, as such, is warranted under sections 105(a) and 363 of the Bankruptcy Code.  Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a [b]ankruptcy [c]ourt to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

28.    Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  The Debtors submit that obligations on account of the Insurance Policies and the Surety Bond Program are within the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code.  In the alternative, "[t]he [debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).  This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct." *The Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

29.     Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, pursuant to the doctrine of necessity.  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. at 824–25 (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty "can only be fulfilled by the preplan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002).  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

30.    The doctrine of necessity is satisfied here.  The nature of the Debtors' business and these Chapter 11 Cases renders it essential for the Debtors to maintain their Insurance Policies and Surety Bond Program on an ongoing and uninterrupted basis.  The non-payment of any premiums, deductibles, or related fees under the Insurance Policies or Surety Bonds could result in one or more of the Insurance Carriers or Sureties terminating or declining to renew the Insurance Policies or Surety Bonds or refusing to enter into new insurance policies or surety bonds with the Debtors. If any of the Insurance Policies or Surety Bonds lapse without renewal, the Debtors could be exposed to substantial liability or property damages, to the detriment of all parties in interest.

31.    Any interruption in insurance coverage or lapse in maintenance of a Surety Bond would expose the Debtors to a number of risks, including:  (a) the possible incurrence of direct liability for the payment of claims that otherwise would have been covered by the Insurance Policies or Surety Bonds; (b) the possible incurrence of material costs and other losses that otherwise would have been reimbursed; (c) the possible inability to obtain similar insurance coverage or surety bonds on terms as equally favorable as the present coverage; (d) the possible incurrence of higher costs for re-establishing lapsed Insurance Policies or obtaining new insurance coverage or surety bonds; and (e) the possible inability to import goods.

32.    Continuing the Surety Bond Program is also necessary to maintain the Debtors' current business operations and avoid severe disruption at this critical juncture in these Chapter 11 Cases.  Based on the Debtors' current circumstances, it is not likely that the Debtors will be able to renew, or obtain replacement of, existing bonds on terms more favorable than those offered by the Sureties.  Moreover, the process of establishing a new Surety Bond Program would be

burdensome to the Debtors, and it is doubtful that the Debtors could replace all of the Surety Bonds in time to avoid defaults or other consequences of the applicable obligations.  In short, failure to maintain the Insurance Policies and Surety Bonds could have a detrimental impact on the Debtors' business and the value of their estates.

33.    Further, the continued retention of the Surety Bond Brokers allows the Debtors and their employees to focus on their core operational matters.  The Debtors are not well-suited to bring the services provided by the Surety Bond Brokers in-house.  If the Debtors fail to make timely payments to the Surety Bond Brokers, the Debtors may lose access to the Surety Bond Brokers' valuable services, disrupting management to the detriment of all stakeholders. Accordingly, the Debtors submit that the requirements of section 363(b) of the Bankruptcy Code are satisfied.

34.    Here, the Debtors seek to continue, amend, supplement, and extend their existing Insurance Policies and Surety Bond Program, and purchase new Insurance Policies, Surety Bonds, and customs bonds as is required by applicable law, in the ordinary course of business.  As noted above, continuation of the Insurance Policies and the Surety Bond Program is essential to continuing uninterrupted operations during these Chapter 11 Cases and preserving the value of the Debtors' business, properties, and assets of the estates.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.  Moreover, in some cases, maintenance of insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  In addition, the Surety Bond Program is essential to continuing import operations.  Accordingly, in the event any of the Insurance Policies or Surety Bonds lapse or new

coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business.

35.     Courts in this district and other jurisdictions have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See, e.g., In re BlockFi Inc*, No. 22-19361 (MBK) (Bankr. D.N.J Nov. 30, 2022) (authorizing debtors to continue their insurance policies and surety bond program); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (authorizing debtors to continue their insurance policies); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 10, 2020) (same); *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) (Bankr. D.N.J. June 25, 2020) (same); *In re Carestream Health, Inc.,* No. 22-10778 (JKS) (Bankr. D. Del., Sept. 22, 2022) (authorizing debtors to continue their insurance policies and surety bond program); *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del., Nov. 18, 2021) (same); *HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Jun. 16, 2020) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. Jul. 14, 2021) (authorizing debtors to continue their insurance policies).[8]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

36.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request made to the Debtors' proposed counsel.

authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

37.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  The Debtors' ability to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business is vital to a smooth transition into chapter 11.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Request of Waiver of Stay

38.    To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested

in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

39.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

40.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**No Prior Request**

41.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

42.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; (m) the Insurance Carriers; (n) the Surety Bond Brokers; (o) the Sureties; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered four (4) through eight (8), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to (i) maintain coverage under the Insurance Policies and the Surety Bonds and pay related prepetition obligations, and (ii) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course of business, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on an interim basis as set forth herein.

2. The Final Hearing on the Motion will be held on _____, 2023 at _____ **(Eastern Time)**. Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____, 2023 **at 4:00 p.m. (Eastern Time)**. If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3. The Debtors shall serve a copy of the Motion and this Interim Order on each Insurance Carrier and Surety listed on **Exhibits C and D** to the Motion within two (2) business days after the date this Interim Order is entered.

4. The Debtors are hereby authorized, but not directed, and in each case in accordance with the ordinary course of business and this Order, to:

(a) continue the Insurance Policies, including without limitation those Insurance Policies identified on **Exhibit C** to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed on account of the Insurance Deductibles, the insurance premiums, and amounts owed to the Captive Insurer, the Claim Administrator, and the Insurance Broker under the Insurance Policies, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(b) maintain the Surety Bond Program, including without limitation those Surety Bonds identified on **Exhibit D** to the Motion, without interruption, including the payment of premiums, performance under any Indemnity Agreement (including posting collateral as security), provision of additional

4

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

or new surety bonds to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, and execution of other agreements in connection with the Surety Bond Program, and pay any prepetition or postpetition obligations related to the Surety Bond Program, including any amounts owed to the Surety Bond Brokers, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(c)     with the consent of the Prepetition ABL Agent (as the term is defined in the DIP Orders, referenced below), such consent not to be unreasonably withheld, renew, amend, supplement, extend, or purchase insurance policies or surety bonds to the extent that the Debtors determine that such action is in the best interest of their estates; and

(d)     honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business;

*provided* that, with respect to paragraph 4(a)–(d) above, nothing in this Order authorizes the Debtors to pay any amounts before such amounts are due, including, but not limited to, amounts related to the Insurance Policies and Surety Bond Program.

5.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

6.     Notwithstanding anything to the contrary herein, nothing contained in the Motion or this Order, and no action taken pursuant to such relief requested or granted (including any

| (Page | 6) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

payment made in accordance with this Order), is intended as or shall be construed or deemed to be: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim. The rights of all parties in interest are expressly reserved.

7.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Insurance Policies and/or the Surety Bond Program to the extent payment thereof is authorized pursuant to the relief granted herein and to the extent authorized by this Interim Order.

8.    Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in

| (Page \| 7) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

9.      Nothing in this Interim Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Interim Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

10.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

11.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

12.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

13.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

16.     A true copy of this Interim Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

17.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit B**

### **Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE
ENTERED INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE
INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

The relief set forth on the following pages, numbered four (4) through eight (8), is

**ORDERED.**

(Page | 3)

| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (a) authorizing the Debtors to (i) maintain coverage under the Insurance Policies and the Surety Bonds and pay related prepetition obligations, and (ii) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course of business, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors shall serve a copy of the Motion and this Final Order on each Insurance

Carrier and Surety listed on Exhibits C and D to the Motion within two (2) business days after the

date this Final Order is entered.

3.      The Debtors are hereby authorized, but not directed, and in each case in accordance

with the ordinary course of business and this Final Order, to:

(a)      continue the Insurance Policies, including without limitation those Insurance Policies identified on Exhibit C to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed on account of the Insurance Deductibles, the insurance premiums, and amounts owed to the Captive Insurer, the Claim Administrator, and the Insurance Broker under the Insurance Policies, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(b)      maintain the Surety Bond Program, including without limitation those Surety Bonds identified on Exhibit D to the Motion, without interruption, including the payment of premiums, performance under any Indemnity Agreement (including posting collateral as security), provision of additional or new surety bonds to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, and execution of other agreements in connection with the Surety Bond Program, and pay any prepetition or postpetition obligations related to the Surety Bond Program, including any amounts owed to the Surety Bond Brokers, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

4

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

(c)     with the consent of the Prepetition ABL Agent (as that term is defined in the DIP Orders, referenced below), such consent not to be unreasonably withheld, renew, amend, supplement, extend, or purchase insurance policies or surety bonds to the extent that the Debtors determine that such action is in the best interest of their estates; and

(d)     honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business;

*provided* that, with respect to paragraph 4(a)–(d) above, nothing in this Final Order authorizes the Debtors to pay any amounts before such amounts are due, including, but not limited to, amounts related to the Insurance Policies and Surety Bond Program.

4.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5.     Notwithstanding anything to the contrary herein, nothing contained in the Motion or this Final Order, and no action taken pursuant to such relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or

5

| | |
|---|---|
| (Page \| 6) | |
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim. The rights of all parties in interest are expressly reserved.

6.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Insurance Policies and/or the Surety Bond Program to the extent payment thereof is authorized pursuant to the relief granted herein and to the extent authorized by this Final Order.

7.      Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection

| (Page \| 7) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

8.      Nothing in this Final Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any order granted thereunder, and to the extent of any inconsistency between the Final Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

9.      Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

10.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

11.      The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

12.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

13.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

15.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## Exhibit C

### Insurance Policies

| Type of Policy | Insurance Carrier | Policy Number | Policy Term | Premium (per annum) |
|---|---|---|---|---|
| Aboveground / Underground Storage Tank | LIBERTY SURPLUS INSURANCE CORPORATION | IRONTX13537000 | 10/5/2022 - 10/5/2023 | $7,516 |
| BUSINESS TRAVEL ACCIDENT | FEDERAL INSURANCE COMPANY | 6477-42-38 | 3/1/2021 - 3/1/2024 | $14,834 |
| California Earthquake - Per Occurrence & Annual Aggregate - Excess of $15,000,000 Primary (10%) | General Security Indemnity Company of Arizona | PE703111 | 3/1/2023 - 3/1/2024 | $120,000 |
| California Earthquake - Per Occurrence & Annual Aggregate - Excess of $15,000,000 Primary (40%) | Mercer Insurance Company | ARH00001876 | 3/1/2023 - 3/1/2024 | |
| California Earthquake - Per Occurrence & Annual Aggregate - Excess of $15,000,000 Primary (50%) | Old Republic Union Insurance Company | ORARIM001568-00 | 3/1/2023 - 3/1/2024 | |
| COMMERCIAL AUTOMOBILE LIABILITY | SAFETY NATIONAL CASUALTY CORPORATION | CA6675897 | 3/1/2023 - 3/1/2024 | $72,701 |
| COMMERCIAL CRIME | NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA (AIG) | 01-545-44-03 | 9/15/2022 - 9/15/2023 | $32,571 |
| COMMERCIAL GENERAL LIABILITY | SAFETY NATIONAL CASUALTY CORPORATION | GL4062767 | 3/1/2023 - 3/1/2024 | $227,526 |
| COMMERCIAL GENERAL LIABILITY - CANADA | AIG INSURANCE COMPANY OF CANADA | GL99331319 | 3/1/2023 - 3/1/2024 | $32,000 |
| COMMERCIAL GENERAL LIABILITY - MEXICO | AIG | 35-RCG-10007760-01 | 3/1/2023 - 3/1/2024 | $36,847 |
| COMMERCIAL PROPERTY | FACTORY MUTUAL INS. CO. | 11111095 | 3/1/2023 - 3/1/2024 | $2,107,651 |
| COMMERCIAL PROPERTY - CANADA | FACTORY MUTUAL INS. CO. | 1111094 | 3/1/2023 - 3/1/2024 | $70,224 |
| CYBER LIABILITY | SYNDICATE 2623 / 623 AT LLOYD'S OF LONDON (BEAZLEY) | W30462220201 | 9/15/2022 - 9/15/2023 | $393,750 |
| DIRECTORS & OFFICERS LIABILITY | ZURICH AMERICAN INSURANCE COMPANY | DOC 8702221-00 | 9/15/2021 - 9/15/2023 | $1,612,789 |
| DIRECTORS & OFFICERS LIABILITY - EXCESS SIDE A / DIC D&O $10M xs $60M | CONTINENTAL INSURANCE COMPANY (CNA) | 652462160 | 9/15/2022 - 9/15/2023 | $290,841 |
| DIRECTORS & OFFICERS LIABILITY - EXCESS SIDE A / DIC D&O $10M xs $70M | ENDURANCE AMERICAN INSURANCE COMPANY (SOMPO) | ADX30024976900 | 9/15/2022 - 9/15/2023 | $290,841 |
| DIRECTORS & OFFICERS LIABILITY - EXCESS SIDE A / DIC D&O $10M xs $80M | ZURICH AMERICAN INSURANCE COMPANY | DOC 8678196-00 | 9/15/2022 - 9/15/2023 | $402,400 |
| DIRECTORS & OFFICERS LIABILITY - FIRST EXCESS TRADITIONAL $10M xs $10M | ARCH INSURANCE COMPANY | DOX1000445-00 | 9/15/2021 - 9/15/2023 | $1,006,000 |

| Type of Policy | Insurance Carrier | Policy Number | Policy Term | Premium (per annum) |
|---|---|---|---|---|
| DIRECTORS & OFFICERS LIABILITY - FOURTH EXCESS TRADITIONAL $10M xs $40M | STATE NATIONAL INSURANCE COMPANY, INC. (CANOPIUS) | EXN CUA10302-02 | 9/15/2021 - 9/15/2023 | $517,870 |
| DIRECTORS & OFFICERS LIABILITY - LEAD EXCESS SIDE A / DIC D&O $10M XS $50M | NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA | 01-560-82-01 | 9/15/2022 - 9/15/2023 | $397,370 |
| DIRECTORS & OFFICERS LIABILITY - SECOND EXCESS TRADITIONAL $10M xs $20M | ARGONAUT INSURANCE COMPANY | MLX4244273-2 | 9/15/2021 - 9/15/2023 | $716,775 |
| DIRECTORS & OFFICERS LIABILITY - THIRD EXCESS TRADITIONAL $10M xs $30M | BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY | 47-EPC-317509-01 | 9/15/2021 - 9/15/2023 | $605,625 |
| DIRECTORS & OFFICERS LIABILITY RUNOFF | See D&O policies above | Pending | Pending | $1,700,139 |
| EXCESS CYBER LIABILITY- $10M p/o $50M xs $50M | ALLIANZ GLOBAL RISKS US INSURANCE COMPANY | USF00567322 | 9/15/2022 - 9/15/2023 | $197,911 |
| EXCESS CYBER LIABILITY- $10M p/o $50M xs $50M | SCOTTSDALE INSURANCE COMPANY (NATIONWIDE) | XMS2209325 | 9/15/2022 - 9/15/2023 | $206,672 |
| EXCESS CYBER LIABILITY- $10M p/o $50M xs $50M | ZURICH AMERICAN INSURANCE COMPANY | SPR 1817199-03 | 9/15/2022 - 9/15/2023 | $198,011 |
| EXCESS CYBER LIABILITY- $10M xs $10M | AXIS SURPLUS INSURANCE COMPANY | P-001-000687862-02 | 9/15/2022 - 9/15/2023 | $315,000 |
| EXCESS CYBER LIABILITY- $10M xs $20M | SAFETY SPECIALTY INSURANCE COMPANY | CY 6675430 | 9/15/2022 - 9/15/2023 | $283,500 |
| EXCESS CYBER LIABILITY- $10M xs $30M | ARCH SPECIALTY INSURANCE COMPANY | NPL0067185-01 | 9/15/2022 - 9/15/2023 | $255,150 |
| EXCESS CYBER LIABILITY- $10M xs $40M | STARR SURPLUS LINES INSURANCE COMPANY | 1000634935221 | 9/15/2022 - 9/15/2023 | $229,635 |
| EXCESS CYBER LIABILITY- $5M p/o $50M xs $50M | AIG SPECIALTY INSURANCE COMPANY | 01-571-05-67 | 9/15/2022 - 9/15/2023 | $103,336 |
| EXCESS CYBER LIABILITY- $5M p/o $50M xs $50M | ALLIED WORLD SPECIALTY INSURANCE COMPANY | 0312-0170 | 9/15/2022 - 9/15/2023 | $99,005 |
| EXCESS CYBER LIABILITY- $5M p/o $50M xs $50M | BERKLEY ASSURANCE COMPANY | BCRS2-2000083-03 | 9/15/2022 - 9/15/2023 | $103,336 |
| EXCESS CYBER LIABILITY- $5M p/o $50M xs $50M | CERTAIN UNDERWRITERS AT LLOYD'S - SYNDICATE 1183 (VALIDUS) | B6044FIP4675622 | 9/15/2022 - 9/15/2023 | $103,336 |
| EXCESS LIABILITY - $10M p/o $20M xs $10M | NAVIGATORS INSURANCE COMPANY (HARTFORD) | NY23RXSZ04CVBIV | 3/1/2023 - 3/1/2024 | $180,900 |
| EXCESS LIABILITY - $10M p/o $20M xs $10M | ENDURANCE AMERICAN INSURANCE COMPANY (SOMPO) | XSC30001545003 | 3/1/2023 - 3/1/2024 | $180,900 |
| EXCESS LIABILITY - $10M xs $30M | ACE PROPERTY & CASUALTY INSURANCE COMPANY (CHUBB) | XCQ G71496405 005 | 3/1/2023 - 3/1/2024 | $115,000 |
| EXCESS LIABILITY - $10M xs $40M | NATIONAL CASUALTY COMPANY (NATIONWIDE) | ECO2300052 | 3/1/2023 - 3/1/2024 | $121,329 |

| Type of Policy | Insurance Carrier | Policy Number | Policy Term | Premium (per annum) |
|---|---|---|---|---|
| EXCESS LIABILITY - $25M xs $50M | The Continental Insurance Company (CNA) | 7036878697 | 3/1/2023 - 3/1/2024 | $157,104 |
| EXCESS LIABILITY - $25M xs $75M | NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA (AIG) | BE 033093306 | 3/1/2023 - 3/1/2024 | $86,636 |
| EXCESS WORKERS' COMPENSATION - OH, WA | SAFETY NATIONAL CASUALTY CORPORATION | PS4045803 | 3/1/2023 - 3/1/2024 | $33,101 |
| FIDUCIARY LIABILITY | HUDSON INSURANCE COMPANY (EUCLID) | SFD31211875-01 | 9/15/2022 - 9/15/2023 | $45,342 |
| FIDUCIARY LIABILITY - $5M xs $5M | GREAT AMERICAN INSURANCE COMPANY | FDX3120873 | 9/15/2022 - 9/15/2023 | $40,240 |
| INTERNATIONAL CASUALTY - MASTER | THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA (AIG) | WS11018636 | 3/1/2023 - 3/1/2024 | $19,211 |
| LEAD UMBRELLA - $10M | XL INSURANCE AMERICA, INC. | US00064899LI23A | 3/1/2023 - 3/1/2024 | $442,900 |
| MARINE CARGO | AFFILIATED FM INSURANCE COMPANY | CUSA0042402 | 3/1/2023 - 3/1/2024 | $74,126 |
| SPECIAL RISKS | NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA | 05-970-31-39 | 3/1/2021 - 3/1/2024 | $22,685 |
| TERRORISM | UNDERWRITERS AT LLOYD'S, LONDON (HISCOX) | UTS2521352.23 | 3/1/2023 - 3/1/2024 | $3,075 |
| WORKERS' COMPENSATION & EMPLOYERS LIABILITY - AOS | SAFETY NATIONAL CASUALTY CORPORATION | LDS4045802 | 3/1/2023 - 3/1/2024 | $783,746 |
| WORKERS' COMPENSATION & EMPLOYERS LIABILITY - RETRO | SAFETY NATIONAL CASUALTY CORPORATION | | | |

3

Case 23-13359-VFP    Doc 20    Filed 04/23/23    Entered 04/23/23 12:12:41    Desc Main
Document      Page 42 of 42

## Exhibit D

## Surety Bond Program

| Type of Bond | Surety | Bond Number | Bond Amount | Premium | Effective Date | Expiration Date | Obligee |
|---|---|---|---|---|---|---|---|
| Tax | Arch Insurance Company | SU 1168134 | $14,670 | $147 | 7/30/2020 | 7/30/2023 | State of Nevada - Nevada Department of Taxation |
| Tax | Arch Insurance Company | SU1168136 | $1,000,000 | $10,000 | 8/25/2020 | 8/25/2023 | GOBIERNO DE PUERTO RICO, DEPARTMENTO DE HACIENDA |
| Tax | Arch Insurance Company | SU 1168141 | $1,178,834 | $11,788 | 2/17/2023 | 2/17/2025 | State of Nevada - Nevada Department of Taxation |
| Tax | Arch Insurance Company | SU 1168142 | $23,156 | $196 | 4/30/2021 | 4/30/2023 | DIRECCION ESTATAL DE RECAUDACION DEL SERVICIO DE ADMINISTRACION TRIBUTARIA DEL ESTADO DE QUINTANA ROO, COMPETENTE PARA |
| Stay | Hartford Fire Insurance Company | 20BSBIH5309 | $602,006 | $10,025 | 3/23/2020 | 3/23/2023 | The State of Washington Department of Revenue |
| U.S. Customs | Roanoke Insurance Group Inc. | 22C001FVO | $8,000,000 | $13,281 | 9/6/2022 | 9/5/2023 | U.S. Customs and Border Protection |
| Mechanics Lien | Travelers Casualty and Surety Company of America | 106520443 | $11,625 | $100 | 7/13/2022 | 7/13/2028 | CENTER LINE ELECTRIC, INC |
| Mechanics Lien | Travelers Casualty and Surety Company of America | 106558185 | $25,000 | $125 | 7/29/2022 | 7/29/2028 | State of California |
| Mechanics Lien | Travelers Casualty and Surety Company of America | 106558203 | $7,930 | $100 | 8/18/2022 | 8/18/2028 | UNLIMITED ENVIRONMENTAL, INC |
| Construction | Travelers Casualty and Surety Company of America | 106808620 | $277,297 | $1,664 | 12/4/2022 | 12/3/2027 | CLERK OF THE COURT OF KINGS COUNTY, NY |
| Total Bond Amount: **$11,140,518** | | | | | | | |
| Total Premium Amount: **$47,426** | | | | | | | |