**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO PAY CERTAIN PREPETITION SECURED CLAIMS OF CRITICAL**
**LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY**
**OF CRITICAL OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"): [2]

## Relief Requested

1.     The Debtors seek entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  (a) authorizing, but not directing, the Debtors to pay Critical Lien Claims (as defined herein) in an amount not to exceed $17 million;  (b) confirming the administrative expense priority status of Critical Outstanding Orders (as defined herein); and (c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing 28 days after the commencement of these Chapter 11 Cases (as defined herein) to consider entry of an order approving the relief requested herein on a final basis. [3]

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

[3]    The relief requested herein does not apply to any claims against, or critical vendors of, Debtor BBB Canada Ltd. ("BBB Canada") or Bed Bath & Beyond Canada L.P. ("BBB Canada LP"), which will be addressed in BBB Canada's proceeding under the Companies' Creditors arrangement Act (Canada) R.S.C. 1985, c. C-36, as amended ("CCAA").

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1, 9013-2, and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5.    The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

6.    The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

7.    On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to

Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

### The Debtors' Supply Chain and the Lien Claims

8.      The Debtors' business depends on the uninterrupted flow of inventory and other goods through its supply chain and distribution network, including the purchase, importation, storage, and shipment of the Debtors' inventory and merchandise ("Merchandise").  The Debtors rely on a number of third-party warehousemen (collectively, the "Warehousemen") and various freight vendors, ocean carriers, truckers, common or contract carriers, customs brokers, and other shipping services providers (the "Shippers," and together with the Warehousemen, the "Lien Claimants") for the receipt, distribution, and delivery of the Merchandise that the Debtors sell in their stores and on their e-commerce sales platforms.  Further, certain of the Lien Claimants provide services that are necessary and critical to enhance estate value (the "Critical Lien Claimants").  Those Critical Lien Claimants willing to provide the Debtors with goods on reasonable trade terms create considerable liquidity for the Debtors' business and maintaining these trade terms is critical to the efficient administration of these Chapter 11 Cases.  The Debtors can ill-afford severe disruption to their flow of Merchandise at this critical juncture in these Chapter 11 Cases.

9.      The Debtors face incurred, but unpaid, claims for certain goods and services in which such claimants may assert potential liens.  After a thorough analysis of options, the Debtors believe that, in certain instances, the value of such goods to their estates likely far outweighs the cost of payment of the claims.  The Debtors submit that the requested relief will allow the Debtors to preserve stakeholder value by paying the prepetition claims of certain counterparties that are critical to the Debtors' operations during these Chapter 11 Cases.

I.    **Critical Lien Claimants.**

10.    The Critical Lien Claimants are generally comprised of those Lien Claimants whose continued services are deemed critical to moving inventory and Merchandise that has already been purchased to the appropriate stores for sale to maximize the value of the Debtors' estates.  More specifically, the services of various import shippers, trucking companies, and parcel shipping providers are critical to accessing the Debtors' inventory and Merchandise, which is currently in the possession of such parties.  Due to the growing prepetition balances owed to the Critical Lien Claimants, the prepetition balances likely need to be paid to ensure uninterrupted service to effectuate the sales contemplated in these Chapter 11 Cases.

11.    The Debtors' Merchandise, inventory, and other goods are stored at warehouses, including, without limitation, warehouses that are operated by Warehousemen.  Additionally, the flow of Merchandise, inventory, and other goods from the Debtors' manufacturers to (a) stock the Debtors' domestic brick and mortar stores, and (b) fulfill online orders, depends on the services provided by Shippers.  As a result, in the ordinary course of business, Shippers and Warehousemen regularly have possession of the Debtors' Merchandise, inventory, and other goods.

12.    Under certain non-bankruptcy laws, the Critical Lien Claimants may be able to assert liens on the goods in their possession to secure payment of the charges or expenses incurred in connection with the third-party shipping, storage, and other related charges (collectively, the "Critical Lien Claims").[4]  Accordingly, in the event certain of the Critical Lien Claims remain unpaid, those Critical Lien Claimants are likely to attempt to assert such possessory liens, and may

---

[4]    For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that "[a] carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  *See* U.C.C. § 7-307(a) (2003).

refuse to deliver or release goods in their possession until their claims are satisfied and their liens redeemed. The Critical Lien Claimants' retention of the Debtors' goods and supplies would disrupt the Debtors' supply chain and negatively affect the Debtors' ability to generate revenue and administer these Chapter 11 Cases.

13.     Collectively, the Debtors estimate approximately $17 million of Critical Lien Claims are due and owing as of the Petition Date or will become due and owing on an interim basis pending entry of the Final Order. Accordingly, the Debtors seek authorization, but not direction, to continue to satisfy amounts incurred on account of certain Critical Lien Claimants (including any prepetition amounts that may be outstanding) in the ordinary course of business on a postpetition basis. The Debtors intend to pay undisputed and valid prepetition Critical Lien Claims that are necessary and critical to enhance estate value only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs, including the expenses and delay of contesting asserted liens, to their estates.

## II.     Customary Trade Terms.

14.     Subject to the Court's approval, the Debtors intend to pay Critical Lien Claims only to the extent necessary and critical to enhance estate value. In return for paying the Critical Lien Claims, the Debtors will use commercially reasonable efforts to condition payment of the Critical Lien Claims upon each claimant's agreement to supply goods and services on terms that are acceptable to the Debtors in light of customary industry practices (the "Customary Trade Terms"). The Debtors reserve the right to require, at their discretion, that the Customary Trade Terms condition to payment be made in writing. The Debtors further seek authority to require more favorable trade terms from any Critical Lien Claimant as a condition to payment of any prepetition claim. The Debtors have designated a core group of executives, advisors, and employees who

have experience in the Debtors' businesses and Chapter 11 Cases to review, assess, and potentially

recommend any payment on account of a Critical Lien Claim.

15.    In addition, the Debtors request that if any party accepts payment pursuant to the

relief requested by this Motion and thereafter does not continue to provide goods or services on

Customary Trade Terms, then:  (a) such payment may be deemed to be an improper postpetition

transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors

in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such party

shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding

postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize

and apply any payment made pursuant to the relief requested by this Motion to such outstanding

postpetition balance and such supplier will be required to repay to the Debtors such paid amounts

that exceed the postpetition obligations then outstanding without the right of any setoffs, claims,

provisions for payment of any claims, or otherwise.

**III.    Payment of Outstanding Orders.**

16.    Prior to the Petition Date and in the ordinary course of business, the Debtors may

have ordered goods that will not be delivered until after the Petition Date (collectively,

the "Outstanding Orders").  To avoid becoming general unsecured creditors of the Debtors' estates

with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may

recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute

purchase orders postpetition.  To prevent any disruption to the Debtors' business operations, and

given that goods delivered after the Petition Date are afforded administrative expense priority

under section 503(b) of the Bankruptcy Code, the Debtors seek an order (a) granting administrative

expense priority under section 503(b) of the Bankruptcy Code to all undisputed and valid

obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders that

the Debtors determine are necessary and critical to enhance estate value (collectively, "Critical

Outstanding Orders"), and (b) authorizing the Debtors to satisfy such obligations in the ordinary

course of business.

## Basis for Relief

**I.    The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

17.    Courts have recognized that it is appropriate to authorize the payment of prepetition

obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Ionosphere Clubs,*

*Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong*

*World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398

(S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*,

273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several

legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment

of prepetition claims as provided herein.

18.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment

of prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere*

*Clubs Inc.*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a

debtor to honor prepetition claims where supported by an appropriate business justification); *see*

*also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a

contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed,

courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled

by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.

19.     Furthermore, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity is "a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105(a)] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *see also In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity); *Ionosphere*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

20.     Allowing the Debtors to pay the Critical Lien Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11—preserving going concern value and maximizing the value of property available to satisfy creditors.  *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999).  Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the

Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

21.    The relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the Critical Lien Claims in the initial days of these cases without disrupting the Debtors' operations will maintain the integrity of the Debtors' supply chain, facilitate the sale of the Debtors' Merchandise, and allow the Debtors to efficiently administer these Chapter 11 Cases.  Failure to pay the Critical Lien Claims could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates.  Where, as here, debtors have shown that the payment of prepetition secured claims with valid possessory liens is critical to maximize the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to Lien Claimants.  *See*, *e.g.*, *In re BlockFi Inc*, No. 22-19361 (MBK) (Bankr. D.N.J Nov. 30, 2022) (authorizing payment of certain prepetition and postpetition lien claims); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re Extraction Oil and Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. July 13, 2020) (same); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Mar. 30, 2020); *In re Dura Auto. Sys., LLC*, No. 19-12378 (KBO) (Bankr. D. Del. Nov. 19, 2019); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same).[5]

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

II.    **Failure to Make Timely Payment of the Critical Lien Claims Would Threaten the Debtors' Ability to Operate and May Subject the Debtors' Assets to the Perfection of Liens.**

22.    As noted above, the Debtors seek authority to pay only Critical Lien Claimants who the Debtors believe are entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim, the payment of which is necessary and critical to enhance estate value.    Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[6]  As a result, the Debtors anticipate that certain of the Critical Lien Claimants may assert or perfect liens, simply refuse to turn over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the extent those Critical Lien Claimants have possession of the Debtors' inventory, equipment, or products, mere possession or retention would disrupt the Debtors' operations.

23.    Furthermore, paying the Critical Lien Claims should not impair unsecured creditor recoveries in these Chapter 11 Cases.  In instances where the amount owed to a Critical Lien Claimant is less than the value of the goods that could be held to secure a Shipper or Warehousemen claim, such parties may be fully secured creditors of the Debtors' estates.  In such instances, payment now only provides such parties with what they might be entitled to receive later in the Chapter 11 Cases, only without any interest costs that might otherwise accrue during these Chapter 11 Cases.  Conversely, all creditors will benefit from the seamless transition of the

---

[6]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

Debtors' operations into bankruptcy and the ultimate delivery and sale of inventory on the Debtors' stores and e-commerce channels.

24.     Where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to certain lien claimants under similar circumstances. *See*, *e.g.*, *In re BlockFi Inc*, No. 22-19361 (MBK) (Bankr. D.N.J Nov. 30, 2022) (authorizing payment of certain lienholder claims); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re Extraction Oil and Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. July 13, 2020) (same); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Mar. 30, 2020) (same); *In re Dura Auto. Sys., LLC*, No. 19-12378 (KBO) (Bankr. D. Del. Nov. 19, 2019) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (same).

## III.    The Court Should Confirm that Critical Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.

25.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority).  Thus, the granting of the relief sought herein with respect to the Critical Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

26.     If such relief is not granted, the Debtors will experience a loss of revenue, all to the detriment of the Debtors' estates and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Critical Outstanding Orders and should authorize the Debtors to pay the Critical Outstanding Orders in the ordinary course of business.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

27.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

28.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  Payment of the Critical Lien Claims is

vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Request of Waiver of Stay

29.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

### Waiver of Memorandum of Law

30.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

31.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity, or secured or administrative priority status, of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the

Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### No Prior Request

32.     No prior request for the relief sought in this Motion has been made to this or any other court.

### Notice

33.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

## INTERIM ORDER(I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION SECURED CLAIMS OF CRITICAL LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF CRITICAL OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered four (4) through ten (10), is

**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order(I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim (this "Interim Order") (a) authorizing the Debtors to pay certain prepetition Critical Lien Claims, (b) confirming the administrative expense priority status of Critical Outstanding Orders, (c) scheduling a final hearing to consider approval of the Motion on a final basis, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, **2023 at** _____ **(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____, **2023 at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors hereby are authorized, but not directed, in the reasonable exercise of their business judgment to (i) honor, pay, or otherwise satisfy in accordance with this Interim Order, on a case-by-case basis, all or part of prepetition amounts on account of Critical Lien Claims in an amount not to exceed $17 million pending entry of the Final Order, subject to the terms and conditions of this Interim Order; and are authorized, but not directed, to (ii) pay all undisputed amounts related to the Critical Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

4.      The Debtors are authorized, but not directed, to condition payment of the Critical Lien Claims upon the holder of such Critical Lien Claim agreeing to Customary Trade Terms and if any such holder accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with Customary Trade Terms, then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

5.    The Debtors reserve the right to require, at their discretion, that the Customary Trade Terms condition to payment be made in writing.  The Debtors further reserve the right to require additional favorable trade terms with any Critical Lien Claimant as a condition to payment of any Critical Lien Claim; *provided* that the Debtors' failure to request such an acknowledgement shall not be, and shall not be deemed to be, a waiver of the Debtors' rights hereunder.

6.    Any party that accepts payment from the Debtors on account of all or a portion of any Critical Lien Claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order, and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.  Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order, the Debtors shall provide such Critical Lien Claimants with a copy of this Interim Order (unless previously provided to such Critical Lien Claimants).

7.    The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order including the following information:

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

(a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, and any statutory committee appointed in these Chapter 11 Cases every thirty (30) days beginning upon entry of this Interim Order.

8.      Nothing herein shall impair or prejudice the rights of the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, and any statutory committee appointed in these Chapter 11 Cases, which are expressly reserved, to object to any payment made pursuant to this Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or any affiliate of an insider of the Debtors, the Debtors shall to the extent reasonably practicable, provide three (3) business days' advance notice to, and opportunity to object by, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, the U.S. Trustee, and any statutory committee appointed in these Chapter 11 Cases; *provided* that if any party objects to the payments, the Debtors shall not make such payment without further Order of the Court.

9.      Nothing herein shall impair or prejudice the ability of the Debtors, the DIP Agent, the Prepetition ABL Agent, or the Prepetition FILO Agent to contest, in their discretion, the extent, perfection, priority, validity, or amounts of any claims held by any holder of a Critical Lien Claim. Neither the Debtors nor the DIP Agent, the Prepetition ABL Agent, or the Prepetition FILO Agent concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors,

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent expressly reserve all rights to contest the extent, priority, validity, or perfection or seek the avoidance of all such liens or the priority of such Critical Lien Claims.

10.    All undisputed and valid obligations related to the Critical Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided* however that the Debtors can terminate any Outstanding Orders prior to delivery and any canceled orders shall neither constitute Critical Outstanding Orders nor be afforded administrative priority.

11.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

12.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity, or secured or administrative priority status, of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a

7

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

13.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

14.    Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "<u>DIP Orders</u>"), including compliance with any

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

15.     Nothing in this Interim Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Interim Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

16.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

18.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

19.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

(Page | 10)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

22.     A true copy of this Interim Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

23.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

### FINAL ORDER(I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION SECURED CLAIMS OF CRITICAL LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF CRITICAL OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered four (4) through eight (8), is

**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (a) authorizing the Debtors to pay prepetition Critical Lien Claims, (b) confirming the administrative expense priority status of Critical Outstanding Orders, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

3

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

1.    The Motion is **GRANTED** on a final basis as set forth herein.

2.    The Debtors hereby are authorized, but not directed, in the reasonable exercise of their business judgment to (i) honor, pay, or otherwise satisfy in accordance with this Final Order, on a case-by-case basis, all or part of prepetition amounts on account of Critical Lien Claims in an amount not to exceed $17 million, subject to the conditions of this Final Order, and are authorized, but not directed, to (ii) pay all undisputed amounts related to the Critical Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

3.    The Debtors are authorized, but not directed, to condition payment of the Critical Lien Claims upon the holder of such Critical Lien Claim agreeing to Customary Trade Terms and if any such holder accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with Customary Trade Terms, then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

4.      The Debtors reserve the right to require, at their discretion, that the Customary Trade Terms condition to payment be made in writing.  The Debtors further reserve the right to require additional favorable trade terms with any Critical Lien Claimant as a condition to payment of any Critical Lien Claim; *provided* that the Debtors' failure to request such an acknowledgement shall not be, and shall not be deemed to be, a waiver of the Debtors' right hereunder.

5.      Any party that accepts payment from the Debtors on account of all or a portion of any Critical Lien Claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.  Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such Critical Lien Claimant with a copy of this Final Order (unless previously provided to such Critical Lien Claimant).

6.      Nothing herein shall impair or prejudice the ability of the Debtors, the DIP Agent, the Prepetition ABL Agent, or the Prepetition FILO Agent to contest, in their discretion, the extent, perfection, priority, validity, or amounts of any claims held by any holder of a Critical Lien Claim. Neither the Debtors nor the DIP Agent, the Prepetition ABL Agent, or the Prepetition FILO Agent concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors, DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent expressly reserve all rights to contest the extent, priority, validity, or perfection or seek the avoidance of all such liens or the priority of such Critical Lien Claims.

7.      All undisputed and valid obligations related to the Critical Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

Bankruptcy Code; *provided, however*, that the Debtors can terminate any Outstanding Orders prior to delivery and any canceled orders shall neither constitute Critical Outstanding Orders nor be afforded administrative priority.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

9.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity, or secured or administrative priority status, of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

10.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

11.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with the Court's *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* and any amended or final order entered by the Court in connection therewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

12.     Nothing in this Final Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Final Order and the terms

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief |

of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

13.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

14.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

15.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

16.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.