**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**IMPLEMENTING A PROCEDURAL PROTOCOL FOR THE**
**ADMINISTRATION OF CROSS-BORDER INSOLVENCY PROCEEDINGS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

respectfully state as follows in support of this motion (this "Motion"):

## Relief Requested

1.       The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) approving and implementing a procedural protocol, substantially in

the form attached hereto as Exhibit 1 annexed to **Exhibit A** (the "Protocol"), to facilitate a

coordinated administration of the Debtors' chapter 11 cases in the United States (the "Chapter 11

Cases") with the proceeding commenced by affiliate BBB Canada Ltd. ("BBB Canada" and,

together with Bed Bath & Beyond Canada L.P. ("BBB Canada LP"), the "Canadian Entities")[3]

under the *Companies' Creditors Arrangement Act* (Canada) (the "CCAA Proceeding") to, among

other things, establish a clear framework of general principles that will govern the cross-border

administration of the Chapter 11 Cases and the CCAA Proceeding and address certain key issues

that may arise during the Restructuring Proceedings (as defined herein), including and without

limitation:    (i) court-to-court communication; (ii) obtaining approval (by joint hearing or

otherwise) for matters requiring approval by this Court and the Ontario Superior Court of Justice

(Commercial List) (the "Canadian Court"); (iii) the retention and compensation of professionals;

(iv) the cross-border interaction between principal constituents; (v) appearances of interested

---

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"). A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

[3]    In the CCAA Proceeding, BBB Canada is seeking to have the stay of proceedings and other benefits of the Initial Order under the CCAA extended to BBB Canada LP, which is related to and caries on operations that are integral to the business of BBB Canada.

2

parties; (vi) notice and service requirements; and (vii) the reciprocal recognition of stays and injunctions issued by each Court; and (b) granting related relief.[4]

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 9029(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6003, 6004, 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Preliminary Statement

5.      On February 10, 2023, BBB Canada commenced the Canadian Proceeding in the Canadian Court in order to run an orderly wind-down of operations and liquidation of assets. Among other things, the Canadian Proceeding succeeded at liquidating inventory and at identifying buyers for 49 of the 65 store leases in Canada.  However, the CCAA Proceeding

---

[4]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Interim Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

remains ongoing.  The Canadian Court will consider the sale of certain leases as well as other matters on May 1, 2023, after which time the CCAA Proceeding will largely be finished.  However, given the timing of the commencement of these Chapter 11 Cases, there is a possibility that issues implicating both the Debtors and the Canadian Entities could arise.  Should that occur, given the accelerated timeline of these Chapter 11 Cases and the posture of the CCAA Proceeding, it is important that this Court and the Canadian Court have tools available at their disposal to jointly resolve such issues.  Given the complex, transnational nature of the Chapter 11 Cases and the CCAA Proceeding (collectively, the "Restructuring Proceedings"), it is appropriate to implement a protocol to preclude unnecessary confusion and ensure that:  (a) the Restructuring Proceedings are coordinated to avoid inconsistent or duplicative activities; (b) all parties are adequately informed of key issues concerning the Restructuring Proceedings; (c) the substantive rights of all parties are protected; and (d) the jurisdictional integrity of the Courts is preserved.  Such protocol should be enacted at the outset of these Chapter 11 Cases to ensure that a system exists whereby cross-border issues can be resolved as, and when, they arise.

6.      The Restructuring Proceedings involve the restructuring of 74 entities and affect the rights of thousands of creditors and other interested parties in the United States, Canada, and other jurisdictions.  The Debtors' Canadian business is operated by the Canadian Entities, both of whom are parties to the CCAA Proceeding.  In light of this, it is possible that matters may arise in the course of the Restructuring Proceedings that require coordination and communication between the Court and the Canadian Court.  Moreover, the Debtors may be required to seek relief jointly in this Court and the Canadian Court for certain matters.   Given these circumstances, if no administrative procedures are implemented to coordinate the activities of the Courts and other parties in connection with the Restructuring Proceedings, there is a substantial risk that the

4

Debtors' reorganization efforts and the rights and interests of creditors and other parties will be adversely affected.

7.    Thus, the terms of the Protocol are designed to achieve four core goals.  ***First***, the Protocol is designed to harmonize and coordinate activities in the Restructuring Proceedings held before this Court and the Canadian Court, thereby promoting the orderly and efficient administration of the Restructuring Proceedings.  Such coordination is essential and will, *inter alia*, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith, and avoid duplication of efforts.  ***Second***, the Protocol is designed to (a) honor the independence and integrity of the Courts and (b) promote international cooperation and respect for comity among the Courts, the Debtors (including the Canadian Entities), and other creditors and interested parties.  ***Third***, the Protocol is designed to facilitate the fair, open, and efficient administration of the Restructuring Proceedings for the benefit of all creditors and other interested parties of the Debtors, wherever located.  ***Fourth***, the Protocol is designed to implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Restructuring Proceedings.  To that end, the Protocol provides for: (a) appropriate notice to all key constituencies of matters arising in the Restructuring Proceedings; (b) an opportunity for all parties in interest to be heard in both Courts; (c) maximum efficiency (e.g., reducing costs and duplicative efforts) and an orderly administration of the proceedings; and (d) the express preservation of all parties' substantive rights

### Background

8.    The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in

Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

9.      The Debtors commenced these Chapter 11 Cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders. Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

10.     On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

### Overview of the Material Terms of the Protocol[5]

11.     The salient provisions of the Protocol are summarized as follows:

      a.      Comity; Judicial Independence.  This Court shall have sole and exclusive jurisdiction and power over the conduct of the Chapter 11 Cases and the hearing and determination of matters arising in the Chapter 11 Cases.  The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the CCAA Proceeding and the hearing and determination of matters arising therein.  By approving and implementing the Protocol, neither this Court, the Canadian Court, the Debtors, nor any creditors or

---

[5]    This section is only intended to provide a summary of the material terms of the Protocol.  As such, the discussion contained herein is qualified in its entirety by reference to the Protocol and should not be relied upon for a comprehensive discussion of the Protocol, a copy of which is annexed as Exhibit 1 to **Exhibit A** attached hereto. To the extent that there are any inconsistencies between this summary and the Protocol, the Protocol shall govern.

interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

b.    <u>Cooperation</u>.  To harmonize and coordinate the administration of the Restructuring Proceedings[6], this Court and the Canadian Court may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.

(i)    This Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural matter relating to the Restructuring Proceedings.

(ii)    If the issue of the proper jurisdiction of either Court to determine an issue is raised by an interested party in either of the Restructuring Proceedings or a written request for a Joint Hearing is made with respect to any relief sought in either Court, the Courts may consult with one another to determine an appropriate process by which the issue of jurisdiction will be determined. Such process shall be subject to submissions by the Debtors, the U.S. Trustee, the Creditors' Committee, the Estate Representatives, the Monitor of the Canadian Entities, as appointed by the Canadian Court, and any interested party prior to any determination on the issue of jurisdiction or Joint Hearing request being made by either Court, and such issue of jurisdiction or Joint Hearing request shall be decided prior to the adjudication of the matter in the Court such matter was originally brought.

(iii)    This Court and the Canadian Court may, but are not obligated to, coordinate activities in the Restructuring Proceedings such that the subject matter of any particular action, suit, request, application, contested matter, or other proceeding is determined in a single Court.

(iv)    This Court and the Canadian Court may conduct joint hearings (each, a "<u>Joint Hearing</u>") with respect to any matter relating to the conduct, administration, determination, or disposition of any aspect of the Chapter 11 Cases or the CCAA Proceeding, including the interpretation or implementation of this Protocol, where both Courts consider such a Joint Hearing to be necessary or advisable.

c.    <u>Recognition of Stay of Proceedings</u>.  This Court shall recognize the validity of the stay of proceedings and actions against or respecting the Canadian Entities, their property and the current and former directors and officers of the Canadian Entities under the CCAA and the Initial Order (the "<u>Canadian</u>

---

[6]    Capitalized terms not otherwise defined herein shall be ascribed the meaning set forth in the Protocol.

Stay"). The Canadian Court shall recognize the validity of the stay of proceedings and actions against or respecting the Debtors and their property under section 362 of the Bankruptcy Code (the "U.S. Stay"). In implementing the terms of this paragraph, this Court and the Canadian Court may communicate with one another regarding the interpretation, extent, scope and applicability of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay, and the Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay.

d.     Retention and Compensation of Professionals. The Protocol generally preserves the independent jurisdiction of each Court over (i) any estate representatives appointed by such Court (collectively, the "Estate Representatives") and (ii) the retention and compensation of professionals in the respective Restructuring Proceedings. For example, under the terms of the Protocol, this Court generally will have sole and exclusive jurisdiction over (x) any Estate Representatives appointed in the Chapter 11 Cases, including any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "U.S. Representatives") and (y) the retention and compensation of any professionals retained by the Debtors, other than the CCAA Professionals (defined below). Likewise, the Protocol provides that the Canadian Court generally will have sole and exclusive jurisdiction over the retention and compensation of any professional retained in the CCAA Proceeding (collectively, the "CCAA Professionals"). The Debtors will include the identity and the amount of payments with respect to the CCAA Professionals in the Debtors' monthly operating reports. Nothing in the Protocol creates any fiduciary duty, duty of care or other duty owed by any representatives that they would not otherwise have had in the absence of the Protocol.

## Basis for Relief

12.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). To this end, courts have found that comity in cross-border insolvency proceedings is a principle of "due regard both to international duty and convenience . . . ." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1985). In *In re Ionica, PLC*, 241 B.R. 829 (Bankr. S.D.N.Y. 1999), the Bankruptcy Court found that "the Second Circuit has often underscored the importance of extending comity in foreign bankruptcy

proceedings . . . emphasizing that 'deference to foreign insolvency proceedings will, in many cases, facilitate 'equitable, orderly and systematic' distribution of the debtor's assets.'" *Id.* (quoting *Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1048 (2d Cir. 1996)).

13.    In the Debtors' case, having two parallel proceedings with jurisdictional issues such as intercompany creditors and intercompany, cross-border debt further substantiates the need for a cross-border protocol.  Such a protocol will help protect the rights of the Debtors, as well as the rights of creditors and other interested parties in the United States, Canada, and other countries.

14.    A number of courts have authorized similar protocols for managing cross-border insolvency proceedings, including courts in this circuit.  *See*, *e.g.*, *In re DCL Holdings (USA), INC.*, No. 22-11319 (JKS) (Bankr. D. Del. Dec. 22, 2022); *In re LATAM Airlines Group S.A.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. Sept. 1, 2020); *In re Payless Holdings LLC*, No. 19-40883 (KAS) (Bankr. E.D. Mo. Feb. 26, 2019); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 31, 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Sept. 21, 2017); *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. Nov. 29, 2016); *In re Soundview Elite Ltd.*, No. 13-13098 (REG) (Bankr. S.D.N.Y. Dec. 30, 2014); *In re Northstar Aerospace (USA) Inc.*, No. 12-11817 (MFW) (Bankr. D. Del. June 15, 2012); *In re Trident Microsystems, Inc.*, No. 12-10069 (CSS) (Bankr. D. Del. Jan. 25, 2012); *In re Graceway Pharmaceuticals, LLC*, No. 11-13036 (PJW) (Bankr. D. Del. Oct. 25, 2011); *In re Bear Island Paper Company, L.L.C.*, No. 10-31202 (DOT) (Bankr. E.D. Va. Mar. 25, 2010); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. May 7, 2010); *In re AbitibiBowater Inc.*, No. 09-11296 (Bankr. D. Del. July 27, 2009); *In re Masonite Corp.*, No. 09-10844 (PJW) (Bankr.

D. Del. Apr. 14, 2009); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 26, 2006);

*In re PSINet Inc.*, No. 01-13213 (REG) (Bankr. S.D.N.Y. Jul. 7, 2001).[7]

15.     The Protocol establishes necessary and appropriate means for communication
between the Courts and will facilitate the requisite level of coordination with respect to
cross-border matters arising in these proceedings.   In addition, the purely procedural and
administrative nature of the Protocol proposed herein, does not adversely affect any party's
substantive rights.   It would be imprudent to delay the implementation of the basic administrative
procedures and protections provided under the Protocol given the necessarily accelerated pace of
these Chapter 11 Cases and the importance of having the Protocol in place should any issues arise.
It is critical, therefore, that the Protocol be implemented immediately to ensure administrative
coordination to the fullest extent possible.

16.     In light of the foregoing, approval of the Protocol will prove beneficial to the
administration of the Chapter 11 Cases and the CCAA Proceeding, which, in turn, will inure to the
benefit of all stakeholders, whether located in the United States, Canada, or elsewhere.
Accordingly, the Debtors respectfully submit that this Motion should be approved.

## **Request of Waiver of Stay**

17.     To the extent that the relief sought in the Motion constitutes a use of property under
section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under
Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find
that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request to the Debtors' proposed counsel.

in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## **Waiver of Memorandum of Law**

18.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## **No Prior Request**

19.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## **Notice**

20.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
                 wusatine@coleschotz.com
                 fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       josuha.sussberg@kirkland.com
                 emily.geier@kirkland.com
                 derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

## <u>ORDER APPROVING THE CROSS-BORDER PROTOCOL</u>

The relief set forth on the following pages, numbered two (2) through three (3), is

**ORDERED**.

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER APPROVING THE CROSS-BORDER PROTOCOL |

Upon the *Debtors' Motion for Entry of an Order Implementing A Procedural Protocol for the Administration of Cross-Border Insolvency Proceedings* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to approve and implement a procedural protocol to facilitate a coordinated administration of Restructuring Proceedings in the United States and Canada (the "Protocol"), all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on a basis as set forth herein.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER APPROVING THE CROSS-BORDER PROTOCOL |

2.      The Protocol annexed as **Exhibit 1** hereto is approved in all respects.

3.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

4.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

5.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

7.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

8.      Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>Exhibit 1</u>

**Proposed Cross-Border Protocol and Guideline**

## CROSS-BORDER RESTRUCTURING PROTOCOL

**Between the United States Bankruptcy Court for the District of New Jersey**
**(Case No. 23-13359 (VFP)) and the Ontario Superior Court of Justice (Commercial List)**
**(Court File No. CV-23-00694493-00CL)**

This cross-border insolvency protocol (the "**Protocol**") shall govern the conduct of all parties in interest in the Restructuring Proceedings (as defined below).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "**Guidelines**") attached hereto as Schedule "A" are hereby incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall govern.

### A.    Background

1.    Bed Bath & Beyond, Inc. ("**BBBY**"), a company incorporated in the State of New York, is the ultimate parent company of an international enterprise that is the leading home goods retailer in the United States (the "**U.S.**"), and is a leading home goods retailer in Canada and other countries, offering everything from bed linens to cookware to electric appliances, home organization, baby care, and more. On April 23, 2023 (the "**Filing Date**"), BBBY and its direct and indirect subsidiaries listed on Schedule B hereto (collectively, the "**U.S. Debtors**") commenced cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**U.S. Court**"). On February 10, 2023, BBB Canada Ltd. ("**BBB Canada**") and Bed Bath & Beyond Canada L.P. ("**BBB LP**" and together with BBB Canada, the "**Canadian Entities**") commenced a reorganization proceeding in Canada (the "**CCAA Proceeding**" and together with the Chapter 11 Cases, the "**Restructuring Proceedings**" and the Canadian Entities together with the U.S. Debtors, the "**Parties**") by filing an application under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") with the Ontario Superior

Court of Justice (Commercial List) (the "**Canadian Court**" and together with the U.S. Court, the "**Courts**" and each individually, a "**Court**").

2.      On the first business day after the Filing Date, BBB Canada sought an order from the Canadian Court (as may be amended from time to time, the "**Initial Order**") which, *inter alia*: (a) granted the Canadian Entities relief under the CCAA; (b) appointed Alvarez & Marsal Canada Inc. as monitor of the Canadian Entities (in that capacity, the "**Monitor**"), with the rights powers, duties and limitations upon liabilities set forth in the CCAA and the Initial Order; and (c) granted a stay of proceedings in respect of the Canadian Entities.

3.      The Parties continue to operate their businesses and manage their properties as debtors-in-possession under the supervision of the Courts pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the CCAA and the Initial Order, as applicable.

4.      The Office of the United States Trustee (the "**U.S. Trustee**") has not yet appointed an official committee of unsecured creditors (a "**Creditors' Committee**") in the Chapter 11 Cases.

**B.      Purpose and Goals**

5.      While the Chapter 11 Cases and the CCAA Proceeding are full and separate proceedings pending in the U.S. and Canada, the implementation of administrative procedures and cross-border guidelines is both necessary and desirable to coordinate certain activities in the Restructuring Proceedings, protect the rights of parties thereto, ensure the maintenance of each Court's respective independent jurisdiction and give effect to any applicable doctrines, including, comity. Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Restructuring Proceedings:

> (a)      harmonize and coordinate activities in the Restructuring Proceedings before the Courts;

-3-

    (b)           promote the orderly and efficient administration of the Restructuring Proceedings to, among other things, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith and avoid duplication of effort;

    (c)           honor the independence and integrity of the Courts and other courts and tribunals of the U.S. and Canada, respectively;

    (d)           promote international cooperation and respect for comity among the Courts, the Parties, any official committee of unsecured creditors appointed by the U.S. Court (a **"Creditors' Committee"**), the U.S. Representatives (as defined below), the Canadian Representatives (as defined below) (together with the U.S. Representatives, the "**Estate Representatives**"), the U.S. Trustee, and other creditors and interested parties in the Restructuring Proceedings;

    (e)           facilitate the fair, open and efficient administration of the Restructuring Proceedings for the benefit of all of the Parties' creditors and other interested parties, wherever located; and

    (f)           implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Restructuring Proceedings.

As the Restructuring Proceedings progress, the Courts may also jointly determine that other cross-border matters that may arise in the Restructuring Proceedings should be dealt with under and in accordance with the principles of this Protocol.  Subject to the provisions of this Protocol, where an issue is to be addressed only to one Court, in rendering a determination in any cross-border matter, such Court may: (a) to the extent practical or advisable, consult with the other Court; and (b) in its sole discretion while considering principles of comity, either (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by

-4-

transferring the matter, in whole or part, to the other Court; or (iii) seek a Joint Hearing (as defined below) of both Courts.

**C.      Comity and Independence of the Courts**

6.      The approval and implementation of this Protocol shall neither divest nor diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction of the subject matter of the Chapter 11 Cases and the CCAA Proceeding, respectively.  By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Parties, the Estate Representatives nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the U.S. or Canada.

7.      The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the Chapter 11 Cases and the hearing and determination of matters arising in the Chapter 11 Cases. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the CCAA Proceeding and the hearing and determination of matters arising in the CCAA Proceeding.

8.      In accordance with the principles of comity and independence recognized herein, nothing contained herein shall be construed to:

(a)      increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the U.S. or Canada, including the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" basis;

(b)      require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the U.S.;

(c)      require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada or the laws of the applicable Province therein;

-5-

(d)     require the Parties, the Monitor, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

(e)     authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

(f)     preclude the Parties, the Monitor, the Estate Representatives, the U.S. Trustee, or any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the U.S., Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts, provided that notwithstanding the foregoing, nothing herein shall provide any Creditors' Committee with standing in the CCAA Proceeding, subject to further order of the Canadian Court.

9.      Subject to the terms hereof, the Parties, the Estate Representatives and their respective employees, members, agents and professionals shall respect and comply with the independent, non-delegable duties imposed upon them by the Bankruptcy Code, the CCAA, the Initial Order, or other applicable laws and orders of the Courts, as applicable.

**D.     Cooperation**

10.     To assist in the efficient administration of the Restructuring Proceedings and in recognizing that a Party may be a creditor of another Party's estate, each of the Parties and its respective Estate Representatives shall, where appropriate: (a) cooperate with the others in connection with actions taken in both the U.S. Court and the Canadian Court; and (b) take any other appropriate steps to coordinate the administration of the Restructuring Proceedings for the benefit of the Parties' respective estates and stakeholders.

-6-

11.     To harmonize and coordinate the administration of the Restructuring Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.  In furtherance of the foregoing:

(a)     The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural matter relating to the Restructuring Proceedings.

(b)     If the issue of the proper jurisdiction of either Court to determine an issue is raised by an interested party in either of the Restructuring Proceedings or a written request for a Joint Hearing is made with respect to any relief sought in either Court, the Courts may consult with one another to determine an appropriate process by which the issue of jurisdiction will be determined.  Such process shall be subject to submissions by the Parties, the U.S. Trustee, the Estate Representatives, the Monitor and any interested party prior to any determination on the issue of jurisdiction or Joint Hearing request being made by either Court, and such issue of jurisdiction or Joint Hearing request shall be decided prior to the adjudication of the matter in the Court such matter was originally brought.

(c)     The Courts may, but are not obligated to, coordinate activities in the Restructuring Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

(d)     The U.S. Court and the Canadian Court may conduct joint hearings (each, a "**Joint Hearing**") with respect to any matter relating to the conduct, administration, determination, or disposition of any aspect of the Chapter 11 Cases or the CCAA Proceeding, including, the interpretation or implementation of this Protocol, where

both Courts consider such a Joint Hearing to be necessary or advisable.  With respect to any Joint Hearing, unless otherwise ordered or agreed to by the Courts, the following procedures will be followed:

(i)     A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court.

(ii)    Notices, submissions, motions or applications by any party (collectively, the "**Pleadings**") that are or become the subject of a Joint Hearing shall be made or filed initially only to the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any Joint Hearing, the party submitting such Pleadings to one Court shall file courtesy copies with the other Court.  In any event, Pleadings in respect of relief sought from both Courts shall be filed with both Courts.

(iii)   Any party intending to rely on any written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any Joint Hearing or application (collectively, the "**Evidentiary Materials**") shall file or otherwise submit such materials to both Courts in advance of the Joint Hearing.  To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

(iv)    If a party has not previously appeared in or attorned or does not wish to attorn to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the Joint Hearing without, by the

-8-

mere act of such filings or appearance, being deemed to have attorned to the

jurisdiction of the Court in which such material is filed, so long as it does

not request in its materials or submissions any affirmative relief from such

Court.

(v) The Judge of the U.S. Court and the Justice of the Canadian Court who will

preside over the Joint Hearings shall be entitled to communicate with each

other in advance of any Joint Hearing, with or without counsel being

present, to: (a) establish guidelines for the orderly submission of Pleadings,

Evidentiary Materials, and other papers and for the rendering of decisions

by the Courts; and (b) to address any related procedural, administrative or

preliminary matters.

(vi) The Judge of the U.S. Court and the Justice of the Canadian Court who

preside over any Joint Hearing, shall be entitled to communicate with each

other during or after any Joint Hearing, with or without counsel present, for

the purposes of: (a) determining whether consistent rulings can be made by

both Courts; (b) coordinating the terms upon the Courts' respective rulings;

and (c) addressing any other procedural or administrative matters.

12.     Notwithstanding the terms of paragraph 11 above, this Protocol recognizes that the

U.S. Court and the Canadian Court are independent courts.  Accordingly, although the Courts will

seek to cooperate and coordinate with each other in good faith, each Court shall be entitled at all

times to exercise its independent jurisdiction and authority with respect to: (a) matters presented

to and properly before such Court; and (b) the conduct of the parties appearing in such matters.

13.     Notwithstanding the foregoing, or anything to the contrary herein, in the interest of cooperation and coordination of these proceedings, each Court shall recognize and consider all privileges applicable to communications between counsel and parties, including those contemplated by the common interest doctrine or like privileges, which would be applicable in each respective Court.  Such privileges in connection with communications shall be applicable in both Courts with respect to all parties to these proceedings having any requisite common interest.

14.     Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 29 herein.

**E.      Recognition of Stay of Proceedings**

15.     The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against or respecting the U.S. Debtors and their property under section 362 of the Bankruptcy Code (the "**U.S. Stay**").  In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding the: (a) interpretation, extent, scope and applicability of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay; and (b) the enforcement of the U.S. Stay in Canada.

16.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against or respecting the Canadian Entities, their property and the current and former directors and officers of the Canadian Entities under the CCAA and the Initial Order (the "**Canadian Stay**"). In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding: (a) the interpretation, extent, scope and applicability of the Canadian Stay and any

orders of the Canadian Court modifying or granting relief from the Canadian Stay; and (b) the enforcement of the Canadian Stay in the U.S.

17.      Nothing contained herein shall affect or limit the Parties' or other parties' rights to assert the applicability or non-applicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located. Subject to the terms hereof: (a) any motion with respect to the application of the stay of proceedings issued by the Canadian Court in the CCAA Proceeding shall be heard and determined by the Canadian Court; and (b) any motion with respect to the application of the stay under section 362 of the Bankruptcy Code shall be heard and determined by the U.S. Court.

**F.      Retention and Compensation of Representatives and Professionals**

18.      The Monitor, its officers, directors, employees, counsel, agents, and any other professionals retained therefor, wherever located (collectively, the "**Monitor Parties**") and any other estate representatives in the CCAA Proceeding, including Canadian counsel for the Canadian Entities and any restructuring officer of the Canadian Entities appointed under the CCAA (collectively with the Monitor Parties. the "**Canadian Representatives**") shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including: (a) the Canadian Representatives' appointment and tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Parties and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters related to the Canadian Representatives arising in the CCAA Proceeding under the CCAA or other applicable Canadian law.  Additionally, the Canadian Representatives: (x) shall not be required to seek approval of their retention in the U.S. Court for services rendered in or in connection with the CCAA Proceedings; (y) shall be compensated for their services solely in accordance with the CCAA, the Initial Order

and other applicable laws of Canada or orders of the Canadian Court; and (z) shall not be required to seek approval of their compensation in the U.S. Court.

19.    The Monitor Parties shall be entitled to the protections of section 306 of the Bankruptcy Code and the same protections and immunities in the U.S. as those granted to them under the CCAA, the Initial Order and any other order of the Canadian Court.  In particular, except as otherwise provided in any subsequent order entered in the CCAA Proceeding, the Monitor Parties shall incur no liability or obligations as a result of the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the Initial Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or willful misconduct.

20.    Any estate representative appointed in the Chapter 11 Cases, including without limitation, any restructuring officer appointed under section 363 of the Bankruptcy Code and any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "**U.S. Representatives**") shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including: (a) the U.S. Representatives' appointment and tenure in office; (b) the retention and compensation of the U.S. Representatives; (c) the U.S. Representatives' liability, if any, to any person or entity, including the Parties and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters related to the U.S. Representatives arising in the Chapter 11 Cases under the Bankruptcy Code or other applicable laws of the U.S.  Additionally, the U.S. Representatives and their counsel and other professionals retained therefor (in all cases, whether in Canada or U.S.): (x) shall not be required to seek approval of their retention in the Canadian Court; (y) shall be compensated for their services to the U.S. Debtors solely in accordance with the Bankruptcy Code

and other applicable laws of the U.S. or orders of the U.S. Court; and (z) shall not be required to seek approval of their compensation in the Canadian Court.

21.    Any professionals retained by or with the approval of the Canadian Entities for activities performed in Canada or in connection with the CCAA Proceeding, including, in each case, counsel, financial advisors, accountants, consultants and experts (collectively, the "**Canadian Professionals**") shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Accordingly, the Canadian Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the Initial Order any other applicable Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.

22.    Any professionals retained by or with approval of the U.S. Debtors for activities performed in the U.S., Mexico, or in connection with the Chapter 11 Cases, including, in each case, counsel, financial advisors, accountants, consultants and experts (collectively, the "**U.S. Professionals**") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the U.S. Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the U.S. or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention of compensation in the Canadian Court.

**G.    Appearances**

23.    Upon any appearance or filing, as may be permitted or provided for by the rules of the applicable Court, the Parties, their creditors and other interested parties in the Restructuring Proceedings, including any Creditors' Committee, the Estate Representatives and the U.S. Trustee, shall be subject to the personal jurisdiction of the Canadian Court or the U.S. Court, as applicable, with respect to the particular matters as to which they appear before that Court.

## H.    Notices

24.    Notice of any Pleading or paper filed in one or both of the Restructuring Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile, email or other electronic forms of communication) to the following: (a) creditors and interested parties, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur and orders of the applicable Court; and (b) to the extent not otherwise entitled to receive notice under clause (a) of this paragraph, to counsel to the (i) the Parties; (ii) the Monitor; (iii) the U.S. Trustee; (b) the U.S. Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Parties' prepetition secured facilities and counsel thereto; (d) the DIP Agents and their respective counsel thereto; (e) the indenture trustee to the Parties' Senior Unsecured Notes (as defined in the First Day Declaration);; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the U.S. Debtors conduct their business operations; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur.  In addition to the foregoing, upon request by either Court, the Parties shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of any orders, decisions, opinions, or similar papers issued by the other Court in the Restructuring Proceedings.

25.    When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notices shall be provided in the manner and to the parties referred to in paragraph 24 above.

-14-

## I.        Effectiveness; Modification

26.       This Protocol shall become effective only upon its approval by both the U.S. Court and the

Canadian Court.

27.       This Protocol may not be supplemented, modified, terminated, or replaced in any manner

except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.

Notice of any legal proceedings to supplement, modify, terminate, or replace this Protocol shall be

given in accordance with the notice provisions set forth in paragraph 24 above.

## J.        Procedure for Resolving Disputes Under This Protocol

28.       Disputes relating to the terms, intent, or application of this Protocol may be addressed by

interested parties to the U.S. Court, the Canadian Court, or both Courts upon notice in accordance

with the notice provisions outlined in paragraph 24 above.  In rendering a determination in any

such dispute, the Court to which the issue is addressed: (a) shall consult with the other Court; and

(b) may, in its sole and exclusive discretion, either:  (i) render a binding decision after such

consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole

or in part, to such other Court; or (iii) seek a Joint Hearing of both Courts in accordance with

paragraph 11 above. Notwithstanding the foregoing, in making a determination under this

paragraph, each Court shall give due consideration to the independence, comity, and inherent

jurisdiction of the other Court established under existing law.

29.       In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in

their sole discretion, provide advice or guidance to the other Court with respect to legal issues in

accordance with the following procedures:

> (a)       the U.S. Court or the Canadian Court, as applicable, may determine that such advice
>
>            or guidance is appropriate under the circumstances;

(b)     the Court issuing such advice or guidance shall provide it to the other Court in writing;

(c)     copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 24 hereof; and

(d)     the Courts may jointly decide to invite the Parties, the Estate Representatives (including the Monitor), the U.S. Trustee, the Creditors' Committee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court, provided that notwithstanding the foregoing, nothing herein shall provide any Creditors' Committee with standing in the CCAA Proceeding, subject to further order of the Canadian Court.

30.     For clarity, the provisions of paragraph 29 hereof shall not be construed so as to restrict the ability of either Court to confer as provided in paragraph 11, above, whenever such Court deems it appropriate to do so.

**K.     Preservation of Rights**

31.     Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall: (a) prejudice or affect the powers, rights, claims, and defenses of the Parties and their respective estates, any Creditors' Committee, the Estate Representatives, the U.S. Trustee, or any of the Parties' creditors under applicable law, including the Bankruptcy Code and the CCAA, and the orders of the Courts; or (b) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the U.S.

**SCHEDULE A**

**GUIDELINES APPLICABLE TO COURT-TO-COURT COMMUNICATIONS IN
CROSS-BORDER CASES**

THE AMERICAN LAW INSTITUTE

———

TRANSNATIONAL INSOLVENCY:
COOPERATION AMONG
THE NAFTA COUNTRIES

PRINCIPLES OF
COOPERATION AMONG
THE
NAFTA COUNTRIES

**Guidelines Applicable to Court-to-Court Communications in
Cross-Border Cases**

*As Adopted and Promulgated*
BY
THE AMERICAN LAW INSTITUTE
AT WASHINGTON, D.C.

May 16, 2000



The Executive Office
The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600 • Telecopier: (215) 243-1636
E-mail: ali@ali.org • Website: http://www.ali.org

© The American Law Institute – www.ali.org

2

© The American Law Institute – www.ali.org

**Guidelines**
**Applicable to Court-to-Court Communications**
**in Cross-Border Cases**

*Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

The Guidelines at this time contemplate application only between Canada and the United States because of the very different rules governing communications with and among courts in Mexico. Nonetheless, a Mexican Court might choose to adopt some or all of these Guidelines for communications by a sindico with foreign administrators or courts.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's

© The American Law Institute – www.ali.org

consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an authorized Representative of the foreign Court on such terms as the Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and

© The American Law Institute – www.ali.org

should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

## Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a)     Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b)     Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(c)     Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

## Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a)     Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)     The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c)     Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties

5

© The American Law Institute – www.ali.org

in both Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d)    The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

## Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a)    Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)    The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c)    Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d)    The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

## Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a)    Each Court should be able to simultaneously hear the proceedings in the other Court.

6

© The American Law Institute – www.ali.org

(b)      Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

(c)      Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)      Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)      Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

## Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

## Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident

© The American Law Institute – www.ali.org

Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

### Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

© The American Law Institute – www.ali.org

**Guideline 17**

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

© The American Law Institute – www.ali.org

**SCHEDULE B**

**LIST OF DEBTOR SUBSIDIARIES**

**U.S. Debtor Subsidiaries**

Bed Bath & Beyond Inc.
Alamo Bed Bath & Beyond Inc.
BBB Canada LP Inc.
BBB Value Services Inc.
BBBY Management Corporation
BBBYCF LLC
BBBYTF LLC
Bed Bath & Beyond of Annapolis, Inc.
Bed Bath & Beyond of Arundel Inc.
Bed Bath & Beyond of Baton Rouge Inc.
Bed Bath & Beyond of Birmingham Inc.
Bed Bath & Beyond of Bridgewater Inc.
Bed Bath & Beyond of California Limited Liability Company
Bed Bath & Beyond of Davenport Inc.
Bed Bath & Beyond of East Hanover Inc.
Bed Bath & Beyond of Edgewater Inc.
Bed Bath & Beyond of Falls Church, Inc.
Bed Bath & Beyond of Fashion Center, Inc.
Bed Bath & Beyond of Frederick, Inc.
Bed Bath & Beyond of Gaithersburg Inc.
Bed Bath & Beyond of Gallery Place L.L.C.
Bed Bath & Beyond of Knoxville Inc.
Bed Bath & Beyond of Lexington Inc.
Bed Bath & Beyond of Lincoln Park Inc.
Bed Bath & Beyond of Louisville Inc.
Bed Bath & Beyond of Mandeville Inc.
Bed Bath & Beyond of Manhattan, Inc.
Bed Bath & Beyond of Opry Inc.
Bed Bath & Beyond of Overland Park Inc.
Bed Bath & Beyond of Palm Desert Inc.
Harmon of Shrewsbury, Inc.
Harmon of Totowa, Inc.
Harmon of Wayne, Inc.
Harmon of Westfield, Inc.
Harmon of Yonkers, Inc.
Harmon Stores, Inc.
Liberty Procurement Co. Inc.
Of a Kind, Inc.
One Kings Lane LLC
San Antonio Bed Bath & Beyond Inc.
Springfield Buy Buy Baby, Inc.

Bed Bath & Beyond of Paradise Valley Inc.
Bed Bath & Beyond of Pittsford Inc.
Bed Bath & Beyond of Portland Inc.
Bed Bath & Beyond of Rockford Inc.
Bed Bath & Beyond of Towson Inc.
Bed Bath & Beyond of Virginia Beach Inc.
Bed Bath & Beyond of Waldorf Inc.
Bed Bath & Beyond of Woodbridge Inc.
bed 'n bath Stores Inc.
Buy Buy Baby of Rockville, Inc.
Buy Buy Baby of Totowa, Inc.
Buy Buy Baby, Inc.

BWAO LLC
Chef C Holdings LLC
Decorist, LLC
Deerbrook Bed Bath & Beyond Inc.
Harmon of Brentwood, Inc.
Harmon of Caldwell, Inc.
Harmon of Carlstadt, Inc.
Harmon of Franklin, Inc.
Harmon of Greenbrook II, Inc.
Harmon of Hackensack, Inc.
Harmon of Hanover, Inc.
Harmon of Hartsdale, Inc.
Harmon of Manalapan, Inc.
Harmon of Massapequa, Inc.
Harmon of Melville, Inc.
Harmon of Newton, Inc.
Harmon of New Rochelle, Inc.
Harmon of Old Bridge, Inc.
Harmon of Plainview, Inc.
Harmon of Raritan, Inc.
Harmon of Rockaway, Inc.