**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING**
**AGREEMENTS, (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE**
**CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS,**

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**CLAIMS, AND ENCUMBRANCES, (III) AUTHORIZING CUSTOMARY BONUSES
TO EMPLOYEES OF CLOSING STORES, AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):

**Relief Requested**

1.    The Debtors seek entry of orders, substantially in the forms attached hereto as

**Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing,

but not directing, the Debtors to assume that certain (i) Letter Agreement dated as of September 11,

2020, made by and between Bed Bath & Beyond Inc. ("BB&B") and Hilco Merchant Resources,

LLC ("Hilco" or the "Agent" or the "Consultant"), as amended and supplemented on August 26,

2022, as further amended and supplemented on February 12, 2023, as further amended and

supplemented on April 22, 2023, a copy of which is attached hereto as Schedule 1-A to **Exhibit A**,

(collectively, the "BBB Agreement") and (ii) Letter Agreement dated as of March 2, 2021, made

by and between Buy Buy Baby, Inc. ("BBB" and together with BB&B, the "Merchants") and

Hilco, as amended and supplemented on August 26, 2022, a copy of which is attached hereto as

Schedule 1-B to **Exhibit A** (collectively, the "Consulting Agreements"); (b) authorizing and

approving the continuation or initiation of 473 store closings or similar themed sales at the stores

identified as "Wave 5" on Schedule 1 to **Exhibit A** (collectively, the "Closing Stores"), with such

sales to be free and clear of all liens, claims, and encumbrances (the "Sales" or "Store Closings"),

in accordance with the terms of the store closing sale guidelines in the United States (the

"Sale Guidelines"), attached as Schedule 2 to **Exhibit A**; (c) authorizing customary bonuses to

2

non-insider Closing Store employees who remain employed for the duration of the store closing

process (the "Store Closing Bonuses"); (d) approving modifications to certain customer programs,

including the return policy and acceptance of gift-cards and loyalty certificates; and

(e) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing

28 days after the commencement of these Chapter 11 Cases (as defined herein) to consider entry

of an order approving the relief requested herein on a final basis.[2]

### Jurisdiction and Venue

2.        The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The bases for the relief requested herein are sections 105, 363, 365, and 554 of

title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the

---

[2]   Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated by reference herein.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1, and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5.      The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

6.      The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

7.      On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

## I.    The Store Closings.

8.    Over the past several years, the Debtors' have faced a challenging commercial environment brought on by increased competition, an unsuccessful foray into private label merchandise development, and the consumer shift away from shopping at brick-and-mortar stores. Given the expenses associated with a substantial brick-and-mortar presence, and the issues affecting the retail industry as a whole, a significant number of the Debtors' stores are operating at sub-optimal performance levels.

9.    In the past 12 months, the Debtors have reduced their store footprint by approximately 482 stores, leaving the Debtors with approximately 473 stores as of the Petition Date. Ultimately, the Debtors' management team and advisors determined that it is appropriate to close and wind down any remaining brick-and-mortar stores that are not sold to a buyer pursuant to the Debtors' bid procedures.  The Debtors expect all Sales at the Closing Stores to be completed in accordance with the milestones set forth in the DIP Orders (as defined herein).  The Debtors estimate that the aggregate net sales proceeds from all Sales at the remainder of the Debtors' stores will be approximately $718 million.

## II.    The Consultant.

10.    For over two years, the Debtors have engaged the Consultant to facilitate store closures for the Company.  As a result, the Consultant has significant expertise and expert knowledge of the Debtors' business, their merchandise, and their store operations.  Additionally, the Debtors and the Consultant are already party to the Consulting Agreements, which set forth the terms pursuant to which the Consultant has operated store closings for the Debtors for over two years.  In light of this and the Consultant's historic success in closing other stores for the

Debtors, the Debtors concluded in their business judgment that (a) the services of the Consultant are necessary (i) for a seamless and efficient large-scale store closing process, as is contemplated by this Motion, and (ii) to maximize the value of the saleable inventory located in the Closing Stores (as defined in the Consulting Agreements, the "Merchandise"), and the associated furniture, fixtures, and equipment (as defined in the Consulting Agreements, the "FF&E" and, together with the Merchandise, the "Store Closure Assets"), and (b) the Consultant is qualified and capable of performing the required tasks in a value-maximizing manner.  Further, the Consultant is already in the process of liquidating inventory at most of the Closing Stores.  By this Motion, the Debtors seek to assume the Consulting Agreements, allow the Consultant to continue its work as described herein uninterrupted, and to enter into additional agreements in, if necessary, on terms materially consistent with the Debtors' historic practices.

11.     The Store Closings are critical for the Debtors to efficiently administer their estates during the pendency of these Chapter 11 Cases, and assumption of the Consulting Agreements will allow the Debtors to continue to conduct the Sales and Store Closings in an efficient, controlled manner that will maximize value for the Debtors' estates.  In fact, the relief requested in this Motion overall is integral to maximizing the value of the Debtors' estates.  It will permit the Debtors to continue the Sales and commence the Store Closings in a timely manner and will establish fair and uniform store closing procedures that will maximize the benefit to the Debtors' estates.

12.     To maximize the value of the Store Closure Assets, the Consultant may determine that it will syndicate and partner with additional entities to serve as consultants (the "Additional Consultants").

6

## III.    The Consulting Agreements.

13.    Pursuant to the Consulting Agreements, the Consultant will serve as independent consultant to the Debtors in connection with the sale of the Store Closure Assets.  What follows is a summary of the material terms of the Consulting Agreements.[3]

| TERM | CONSULTING AGREEMENT |
|---|---|
| **Services Provided by Consultant** | Hilco will be retained as the Debtors' agent to conduct the Sales at certain identified Closing Stores during the Sale Term (as defined below) to, among other things: (a) provide qualified supervisors (the "Supervisors") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) assist Merchant with the creation and implementation of a customer transition program; (i) assist Merchant with determining the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; and (j) provide such other related services deemed necessary or appropriate by Merchant and Agent. |
| **Term of Sale** | As used in the Consulting Agreements, the term "Sale Term" with respect to each respective Store shall be the period commencing on such date as set forth in an applicable Work Order (the "Sale Commencement Date") and conclude no later than such date as set forth in an applicable Work Order (the "Sale Termination Date"); *provided, however,* that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date. The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term." At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant, as directed by Merchant, in accordance with Section I of the Consulting Agreements. At the conclusion |

---

[3]    The following summary chart is for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Consulting Agreements, the Consulting Agreements shall govern in all respects.  Capitalized terms used but not defined in the following summary shall have the meaning ascribed to them in the Consulting Agreements.

| Term | Consulting Agreement |
|---|---|
| | of the Sale at each Store, Agent shall photographically document the condition of each such Store.<br><br>Pursuant to the Third Amendment, the Sale Commencement Date for the Amendment 3 Stores shall be April 26, 2023, and the Sale Termination Date shall be no later than July 31, 2023; *provided, however*, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date. |
| **Expenses of Consultant** | Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's other reasonable, documented out of pocket expenses. To control expenses of the Sale, Merchant and Agent have established an aggregate budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision (including (without limitation) Supervisors' wages, travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable, at cost with no markup). The Expense Budget for the Sale is attached to each Work Order. In the event Agent desires to modify the Expense Budget attached to the Consulting Agreements after the date of the Consulting Agreements, Agent will present such modifications to Merchant for Merchant's consent, which consent may be withheld by Merchant in Merchant's sole discretion. The costs of supervision set forth in each Work Order include, among other things, industry standard deferred compensation.<br><br>All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled on every Wednesday for the prior week and shall be paid within seven (7) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by the Consulting Agreements (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty-five (45) days following the Sale Termination Date for the last Store. |
| **Compensation for Consultant** | In consideration of its services under the Consulting Agreements, Merchant shall pay Agent a "Base Fee" equal to one and one half percent (1.5%) of the Gross Proceeds of Merchandise sold at the Stores. In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following "Net Recovery Thresholds" (e.g., in each case, as calculated back to first dollar): |

| Net Recovery Threshold | Agent Incentive Fee |
|---|---|
| 43.5%-43.99% | An additional 0.875% of Net Proceeds |
| 44.0%-44.49% | An additional 1.125% of Net Proceeds |
| 44.5%-44.99% | An additional 1.375% of Net Proceeds |
| 45.0%-45.49% | An additional 1.625% of Net Proceeds |
| 45.5% and above | An additional 1.875% of Net Proceeds |

| Term | Consulting Agreement |
|---|---|
| **Conduct of Sale; Other Sale Matters** | During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of |

8

| TERM | CONSULTING AGREEMENT |
|------|---------------------|
|  | Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) apply for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including landlord approvals and consents) for the Sale, including payment of all applicable costs and expenses associated therewith; and (i) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under the Consulting Agreements.<br><br>Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.<br><br>Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent. Merchant shall have no liability to Agent's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's employment, hiring or retention of its employees, and such employees shall not be considered employees of Merchant.<br><br>All sales of Merchandise shall be made on behalf of Merchant. Agent does not have, nor shall it have, any right, title or interest in the Merchandise. All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.<br><br>"Agent shall have the right to supplement the Merchandise in the Sale at the Stores with additional goods procured by Agent which are of like kind, and no lesser quality to the Merchandise in the Sale at the Stores ("Additional Agent Goods"). The Additional Agent Goods shall be purchased by Agent as part of the Sale, and delivered to the Stores. Sales of Additional Agent Goods shall be run through Merchant's cash register systems; provided, however, that Merchant shall assist with marking, and Agent shall mark the Additional Agent Goods, using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise. Agent and Merchant shall also cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Merchant goods. Additionally, Agent shall provide signage in the Stores notifying customers that the Additional Agent Goods have been included in the Sale.<br><br>Consultant shall pay to Merchant an amount equal to seven and one-half percent (7.5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods completed during the Sale Term (the "Additional Consultant Goods Fee"), and Consultant shall retain all remaining amounts from the sale of the Additional Consultant Goods. Any |

| TERM | CONSULTING AGREEMENT |
|------|----------------------|
| | amount due from Agent to Merchant in respect of the sale of Additional Agent Goods in accordance with this Section S shall paid not later than three (3) Business Days following the parties' completion of each weekly reconciliation with respect to sales of Additional Consultant Goods sold by Consultant during the prior week (or at such other mutually agreed upon time). <br><br> Agent and Merchant intend that the transactions relating to the Additional Agent Goods are, and shall be construed as, a true consignment from Agent to Merchant in all respects and not a consignment for security purposes. Subject solely to Agent's obligations to pay to Merchant the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds. The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent. <br><br> Merchant shall insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Merchant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods. <br><br> Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code.  Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, and Agent is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties and which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Goods and Additional Agent Goods proceeds)." |
| **Insurance Obligations** | Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Agent to be named an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements. <br><br> As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and |

| TERM | CONSULTING AGREEMENT |
|---|---|
| | property in or in connection with Agent's provision of services at the Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of the Consulting Agreements provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to the Consulting Agreements, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.<br><br>The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group, LLC ("Tiger"), Gordon Brothers Retail Partners, LLC ("GBRP"), and B. Riley Retail Solutions, LLC ("B. Riley"; and together with Tiger and GBRP the "Participants") on terms and conditions mutually agreed upon between the Agent and the Participants. Per the Merchant's request, Agent and GBRP shall co-lead all aspects of the transactions contemplated by the Agreements from and after the date hereof. |
| **Indemnification by Consultant** | Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all third party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, the Consulting Agreements by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement. |
| **Indemnification by Merchant** | Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "Agent Indemnified Parties") harmless from and against all third-party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of the Consulting Agreements by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise |

| TERM | CONSULTING AGREEMENT |
|---|---|
| | actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law. |
| Agent Syndication Rights | To maximize the value of the Store Closure Assets, the Consultant may determine that it will syndicate and partner with additional entities to serve as consultants ("Additional Consultants"). The Agent has advised the Debtors, and the Debtors have consented, to its syndication of the transactions under the Consulting Agreements with Gordon Brothers Retail Partners, LLC ("GBRP"), Tiger Capital Group, LLC ("Tiger"), and B. Riley Retail Solutions, LLC ("B. Riley").  Per the Merchant's request, Agent and GBRP shall co-lead all aspects of the transactions contemplated by the Consulting Agreements. |
| | Not later than seven (7) days prior to the objection deadline related to entry of an order approving the Motion on a final basis, each of the Agent, GBRP, Tiger and B. Riley shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, any official committee of unsecured creditors appointed in these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail. |

## IV.   The Sale Guidelines.

14.   The Debtors seek approval of streamlined procedures to sell the Store Closure Assets, in each case free and clear of liens, claims, and encumbrances with proceeds thereof distributed in accordance with the Debtors' DIP orders.  As set forth below, the Sale Guidelines are substantially similar to sale guidelines approved in retail bankruptcies around the United States. The Debtors also seek approval of the Sale Guidelines to provide newspapers and other advertising media in which the Sales may be advertised with comfort that the Debtors are conducting the Sales in compliance with applicable law and with the Bankruptcy Court's approval.  The Debtors seek interim approval of the Sale Guidelines to allow the continuation and commencement of the Sales at the Closing Stores.

15.     The Debtors have determined, in the exercise of their reasonable business judgment and in consultation with their advisors, that the Sale Guidelines will provide the best and most efficient means of selling the Store Closure Assets in order to maximize their value to the estates.

**V.      Liquidation Sale Laws and Dispute Resolution Procedures.**

16.     Certain states in which the Debtors operate stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including, without limitation, state, provincial, and local laws, statutes, rules, regulations, and ordinances (collectively, the "Liquidation Sale Laws").  The Liquidation Sale Laws may establish licensing, permitting or bonding requirements, waiting periods, time limits, bulk sale restrictions, and augmentation limitations that would otherwise apply to the Store Closings.  Such requirements hamper the Debtors' ability to maximize value in selling their inventory.  Subject to the Bankruptcy Court's approval, the Debtors intend to conduct the Store Closings in accordance with the Sale Guidelines, and to the extent such guidelines conflict with the Liquidation Sale Laws, the Sale Guidelines shall control.

17.     For the purpose of orderly resolving any disputes between the Debtors and any Governmental Units (as defined in section 101(27) of the Bankruptcy Code) arising due to the Sale Guidelines and the alleged applicability of any Liquidation Sale Laws, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to implement the following dispute resolution procedures (the "Dispute Resolution Procedures"), as set forth in the Interim and Final Orders:

i.     Provided that the Sales are conducted in accordance with this Order, any Final Order, and the Sale Guidelines, the Debtors, the Consultant, and the Debtors' landlords shall be deemed to be in compliance with any requirements of all county,

13

parish, or municipal or other local government (hereinafter referred to as "Local") and State Liquidation Laws establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sales and sales of the Store Closure Assets of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); *provided*, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.    Within five (5) business days after entry of the Interim Order, the Debtors will serve by first-class mail, copies of the Interim Order, the proposed Final Order, the Consulting Agreements, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; and (d) the landlords for the Closing Stores (collectively, the "Dispute Notice Parties").

iii.   To the extent that there is a dispute arising from or relating to the Sales, the Order, the Consulting Agreements, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten (10) days following entry of the Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Charles B. Sterrett; (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq.; (c) on behalf of Hilco Merchant Resources, LLC, (i) One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847-849-0859, Attn: Hilco Merchant Resources, LLC c/o Ian S. Fredericks and Sarah Baker and (ii) Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York, Fax: 212-719-0140, Attn: Steven Fox; and (iii) Troutman Pepper Hamilton Sanders LLP, 1313 N. Market St., P.O. Box 1709, Wilmington, DE 19899-1709, Fax: 866-422-3027, Attn: Marcy McLaughlin Smith; (d) Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, and Michael Pera; and (e) Proskauer Rose LLP,

14

Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Megan R. Volin.  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "<u>Dispute Resolution Motion</u>").

iv.     In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to the Interim Order or the Final Order, as applicable, absent further order of the Bankruptcy Court.  Upon the entry of the Interim or Final Order, the Debtors and the Consultant shall be authorized to conduct the Sales pursuant to the terms of the Interim Order or the Final Order, the Consulting Agreements, and the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v.     If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

**VI.    Fast Pay Laws.**

18.     Many U.S. states in which the Debtors operate have laws and regulations that require the Debtors to pay an employee substantially contemporaneously with his or her termination (the "<u>Fast Pay Laws</u>"  and   together   with   the   Liquidation   Sale   Laws,

the "Applicable State Laws").  These laws often require payment to occur immediately or within

a period of only a few days from the date such employee is terminated.

19.    The nature of the Store Closings contemplated by this Motion will result in all

associate and store manager employees being terminated during the Store Closings.  To be clear,

the Debtors intend to pay their terminated employees as expeditiously as possible and under

normal payment procedures.  However, the Debtors' payroll systems will simply be unable to

process the payroll information associated with these terminations in a manner that will be

compliant with the Fast Pay Laws.  Under ordinary circumstances, the Debtors' payroll department

is able to coordinate delivery of final checks to coincide with an employee's final day of work

where required by applicable law.  This process requires the Debtors' payroll department to

calculate individual payments upon termination, prepare each termination payment check, obtain

authorization for each such check and then prepare each such check for mailing.  Given the number

of employees who will be terminated during the Store Closings, this process could easily take

several days, making compliance with the Fast Pay Laws burdensome to the Debtors' estates, if

not impossible.

**VII.    Lease Restrictions.**

20.    The Debtors also respectfully request a waiver of any contractual restrictions that

could otherwise inhibit or prevent the Debtors from maximizing value for creditors through the

Store Closings and Sales.  In certain cases, the contemplated Store Closings and Sales may be

inconsistent with certain provisions of leases, subleases, or other documents with respect to the

premises in which the Debtors operate, including (without limitation) reciprocal easement

agreements, agreements containing covenants, conditions, and restrictions (including, without

limitation, "go dark" provisions and landlord recapture rights), or other similar documents or provisions. Such restrictions would also hamper the Debtors' ability to maximize value in selling their inventory.

21. The Debtors also request that no entity, including, without limitation, utilities, landlords, shopping center managers and personnel, creditors, and all persons acting for or on their behalf shall interfere with or otherwise impede the conduct of the Store Closings, the Sales or institute any action against the Debtors in any court (other than in the Bankruptcy Court) or before any administrative body that in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closings, the Sales or the advertising and promotion (including through the posting of signs) of the Sales.

## VIII.  Abandonment.

22. The Debtors respectfully request that the Court authorize the abandonment of certain owned FF&E remaining in the Closing Stores. The Debtors intend to sell any marketable owned FF&E present in the Closing Stores with proceeds thereof distributed in accordance with the DIP Orders. However, the Debtors may determine that the cost associated with holding or selling that property exceeds the proceeds that will be realized from its sale, or such property may not be saleable at all. In such cases, retaining the property would be burdensome to the estate and the property would be of inconsequential value. For the avoidance of doubt, the Debtors will not sell any personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) as part of the Store Closings, and all personal identifying

17

information will be removed from any FF&E prior to abandonment of same.  Accordingly, the Debtors respectfully submit that abandonment of such property is in the best interests of their estates and request that the Court authorize them to do so where they determine in their business judgment that abandonment is the appropriate course of action.

**IX.     Store Closing Bonus Plan.**

23.     Through this Motion, the Debtors are requesting the authority, but not the obligation, to pay Store Closing Bonuses (the "Store Closing Bonus Plan") to store-level non-insider employees, who remain in the employ of the Debtors during the Sales.  The Debtors believe that the Store Closing Bonus Plan will motivate employees during the Sales and will enable the Debtors to retain those employees necessary to successfully complete the Sales.

24.     The Debtors' Store Closing Bonus Plan has been active since November 2022. Payments under the program are made exclusively to non-insiders and on the condition of employment through the date on which the respective employee's store closes. Hourly store associates are eligible to receive an additional $2.00 per hour for every hour worked during the closing period, payable in a lump sum on the associate's last paycheck following the completion of the Store Closing.  Store Managers are eligible to receive a one-time lump sum payment of $1,000, payable in a lump sum on the store manager's last paycheck following the completion of the Store Closing.  The amount of the bonuses offered under the Store Closing Bonus Plan vary depending upon a number of factors, including the employee's position with the Debtors and duration of employment.

25.    The aggregate amount of Store Closing Bonuses on account of all remaining Closing Stores is estimated to be approximately $ 1.6 million, assuming one hundred percent of the eligible employees remain employed through the duration of the Sales at every Closing Store.

26.    Providing such non-insider bonus benefits is critical to ensuring that key employees that will be affected by the reduction in the Debtors' work force due to the Store Closings will continue to provide critical services to the Debtors during the ongoing Store Closing process. For the avoidance of doubt, the Debtors do not propose to make any payment on account of Store Closing Bonuses to any insiders.

27.    In order to ensure a successful Store Closing and Sale process and maximize revenues for the benefit of the Debtors' estates, the Store Closing Bonuses incentivize store management to provide uninterrupted leadership during this challenging period, and ties payment to maintaining employment with the Debtors through the conclusion of the Sales.

28.    Accordingly, the Debtors respectfully submit that the Store Closing Bonus Plan is in the best interests of their estates and request that the Court authorize payments under the Store Closing Bonus Plan.

**X.    Customer Programs.**

29.    The Sales and Store Closings require that the Debtors make certain modifications to their customer programs to reflect new realities. Accordingly, the Debtors intend to implement the following changes in all Closing Stores, which will be clearly posted for customers at cash registers and online for the duration of the Store Closings.

- *Returns.* For the first thirty days from the date of entry of the Interim Order, the Debtors shall accept returns of merchandise sold by the Debtors in the ordinary course of business so long as the return is otherwise in compliance with the Debtors' return

policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered in the Store Closings. Returns of items sold on a "final" basis, included items sold in the Closing Stores on a "final" basis, shall not be accepted.

- ***Gift Cards, Gift Certificates, and Loyalty Certificates.*** For the first fourteen days from the date of entry of the Interim Order, the Debtors will continue to accept the Debtors' validly-issued gift certificates, gift cards, and loyalty certificates (including with respect to certificates issued in connection with the Welcome Rewards programs) issued prior to the Sale Commencement Date in their e-commerce business or in-stores in the ordinary course of business. After the expiration of the fourteen days to utilize gift certificates, gift cards, and loyalty certificates on the e-commerce platform or in-stores, all such validly issued gift certificates, gift cards, and loyalty certificates will no longer be accepted by the Debtors and deemed to have no remaining value. Notwithstanding any policy or state law to the contrary, the gift cards, gift certificates, and loyalty certificates are not redeemable for cash at any time. The Debtors will not accept coupons for discounts on future purchases issued prior to the Petition Date.

- ***Latent Defects***. The Debtors shall comply with all state and federal laws relating to implied warranties for latent defects and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales," as set forth in the Order.

<u>**Basis for Relief**</u>

I. **The Court Should Authorize the Assumption of the Consulting Agreements.**

30.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *In re Nickels Midway Pier, LLC,* 341 B.R. 486, 493 (Bankr. D.N.J. 2006) (finding that "a bankruptcy court should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment."); *see also In re HQ Glob. Holdings, Inc.,* 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's

20

decision to assume or reject an executory contract is governed by the business judgement standard

and it can only be overturned if the decision was a product of bad faith, whim or caprice).

31.     The business judgment test "requires only that the trustee [or debtor in possession]

demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-*

*Pittsburgh Steel Corp, v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.),* 72 B.R.

845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of

a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private

control of administration of the estate, and threaten a court's ability to control a case impartially.

*See Richmond Leasing Co.* v. *Capital Bank, 162* F.2d 1303, 1311 (5th Cir. 1985).

32.     Courts hearing chapter 11 cases filed by retailers have recently approved the

assumption and/or approval of similar consulting agreements.  *See, e.g., In re Christopher & Banks*

*Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (authorizing assumption of

consulting agreement); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J.

Aug. 8, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29,

2020) (same); *In re Modell's Sporting Goods, Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. June

23, 2020) (same); *In Pier 1 Imports, Inc. et al.*, No. 20-30805 (KRH) (Bankr. D.N.J. Feb. 17, 2020)

(same); *In re Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va. Feb. 6, 2018) (same); *In*

*re Vitamin World, Inc.*, No. 17-11933 (KJC) (Bankr. D. Del. Nov. 21, 2017) (same).

33.     Here, the Debtors have exercised their sound business judgment in determining to

assume the Consulting Agreements.  By continuing the engagement of the Consultant—the

Debtors' previous inventory appraiser and store closing liquidator—the Debtors determined that

they could capitalize on the knowledge of a consultant already familiar with the Debtors'

21

liquidation performance in order to ultimately deliver the best results for the Debtors.  Further, the Debtors believe that the terms set forth in the Consulting Agreements are fair and reasonable and present the best path for the Sales.  Moreover, the Consultant has extensive expertise in conducting liquidation sales and will be able to effectively oversee and implement the Sales in an efficient and cost-effective manner.

34.    The Debtors submit that they have exercised reasonable business judgment in engaging the Consultant to conduct the Store Closings and Sales.  Given the number of stores and the Consultant's in-depth knowledge of the Debtors' process of running Store Closings and Sales, as discussed above, it is unlikely the Debtors could retain a liquidator able to conduct the process as efficiently and effectively as the Consultant.  If the Consulting Agreements are not assumed on a final basis, the Sales would lose the benefit of the Consultant's oversight and might be delayed or suspended entirely, leading to loss of additional liquidity and increased administrative expense.  Accordingly, the Debtors respectfully request that the Court authorize their assumption of the Consulting Agreements.

## II.    The Debtors Have a Valid Business Justification for the Sales.

35.    Section 363(b)(1) of the Bankruptcy Code, which governs asset sales outside of a debtor's ordinary course of business, provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval.  *See, e.g., Myers* v. *Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted); *In re Abbotts Dairies, Inc.,* 788 F.2d 143, 147-48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp,* and

requiring good faith); *Comm, of Equity Sec. Holders* v. *Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In re Delaware & Hudson Ry, Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision).   When a debtor demonstrates a valid business justification for a decision, a strong presumption arises "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm, of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11, especially where the debtor is a Delaware corporation).

36.     Store closing or liquidation sales are a routine occurrence in chapter 11 cases involving retail debtors.  *See In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (authorizing procedures for store closing sales); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods, Inc., et al.,* No. 20-14179 (VFP) (same) (Bankr. D.N.J. June 23, 2020); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Avenue Stores, LLC,* No. 19-11842 (LSS) (Bankr. D. Del. Sept. 13, 2019); *In re Charming Charlie Holdings, Inc.,* No. 19- 11534 (CSS) (Bankr. D. Del. August 14, 2019); *In re Z Gallerie, LLC,* No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019).[4]

---

[4]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

37.     Sufficient business justification exists to approve the proposed Sales under section 363(b)(1).  The Debtors, with the assistance of their advisors, have determined that the Sales represent the best alternative to maximize recoveries to the Debtors' estates with respect to the Store Closure Assets and provide the Debtors with much-needed liquidity while optimizing any remaining fleet of Stores, if applicable.  There are meaningful amounts of Merchandise, in the aggregate, that will be monetized most efficiently and quickly through an orderly process conducted in consultation with an experienced liquidation firm.  Further, delay in commencing the Sales would diminish the recovery tied to monetization of the Store Closure Assets.  Many of the Closing Stores fail to generate positive cash flow and therefore are a significant drain on liquidity.  As such, the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Store Closure Assets and the termination of operations at the Closing Stores.  Further, uninterrupted and orderly Sales will allow the Debtors to timely reject leases associated with the Closing Stores and, therefore, avoid the accrual of unnecessary administrative expenses for rent and related costs.  Suspension of the Sales until entry of the Final Order may cause the Debtors to incur claims for rent at many of these stores for another month, potentially costing the estate millions of dollars each month.

**III.    The Court Should Approve the Sale Guidelines.**

38.     The Court may authorize the Debtors to consummate the Store Closings pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may

24

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

39.     As discussed herein, pursuant to section 363(b) of the Bankruptcy Code, for the purpose of conducting the Store Closings, the Debtors need only show a legitimate business justification for the proposed action. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted).

40.     In addition, the Court may authorize the Store Closings based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize any action that is essential to the continued operation of a debtor's businesses. *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (holding that a court may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's organization").

41.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is justified under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors and their advisors believe that the Sale Guidelines represent the most efficient and appropriate means of maximizing the value of the Store Closure Assets, while balancing the potentially competing concerns of landlords and other parties in interest.

42.     Furthermore, ample business justification exists to conduct the Store Closings. Prior to the Petition Date, the Debtors, with the assistance of their advisors, engaged in an extensive review of each of their stores to:  (a) identify underperforming stores; (b) consider whether the store's performance can be improved by various initiatives, including through the negotiation of lease concessions with landlords; (c) determine which stores were candidates for downsizing; (d) assess the potential to consolidate certain stores within a reasonable proximity of one another; and (e) determine what stores should be closed promptly to eliminate their ongoing negative impact on the Debtors' financial performance and to improve the Debtors' liquidity.  This process has resulted in the Debtors' decision to close all remaining stores.

43.     Further delay in consummating the Store Closings would diminish the recovery tied to monetization of the Store Closure Assets for a number of reasons, chief among them is that the Closing Stores are a drain on liquidity.  Thus, the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Store Closure Assets and the termination of operations at the Closing Stores.  Further, the swift and orderly commencement of the Store Closings will allow the Debtors to timely reject the applicable store leases, and therefore avoid the accrual of unnecessary administrative expenses for rent payment.  Delaying the Store Closings may cause the Debtors to pay postpetition rent at many of these stores.  Additionally, given the Debtors' current section 365(d)(4) deadline, there is a finite number of days that the Sales can run without obtaining further consents from landlords.

44.     Courts in this and other districts have routinely approved sale guidelines in chapter 11 cases, and numerous courts have granted retail debtors authority to implement such procedures.  *See, e.g.*, *In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr.

26

D.N.J. Feb. 8, 2021) (authorizing the debtors, pursuant to sections 105(a) and 363(b), to conduct store closings in accordance with court-approved sale guidelines); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods, Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 23, 2020) (same); *In re Dots, LLC, et al.*, No. 14-11016 (DHS) (Bankr. D.N.J. Feb. 27, 2014); (same); *In re Gemstone Solutions Group, Inc.*, No. 19-30258 (KLP) (Bankr. E.D. Va. Jan. 17, 2019) (authorizing the debtors, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to sell inventory and assets from closing stores); *In re Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va. Feb. 6, 2018) (same); *In re Vitamin World, Inc.*, No. 17-11933 (KJC) (Bankr. D. Del. Nov. 21, 2017) (same); *In re rue21, inc.,* No. 17-22045 (GLT) (Bankr. W.D. Pa. July 11, 2017) (same).[5]   The sale guidelines approved in the foregoing cases are substantially similar to the Sale Guidelines attached hereto.

**IV.    The Court Should Approve the Sale of the Store Closure Assets Free and Clear of all Liens, Encumbrances, and Other Interests under section 363(f) of the Bankruptcy Code.**

45.    The Debtors request approval to sell the Store Closure Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code.   A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) applicable non-bankruptcy law

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

permits sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).  Moreover, the Third Circuit has indicated that a debtor possesses broad authority to sell assets free and clear of liens.  See *In re TWA Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

46.     The Debtors anticipate that, to the extent there are liens on the Store Closure Assets, all holders of such liens will consent to the Sales because they provide the most effective, efficient, and time-sensitive approach to realizing proceeds for, among other things, the repayment of amounts due to such parties.  Subject to the terms of the DIP Orders, any and all liens on the Store Closure Assets sold under the Sales would attach to the remaining net proceeds of such sales with the same force, effect, and priority as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto.  Moreover, all identified lienholders have received sufficient notice and have been given sufficient opportunity to object to the relief requested.

47.     Accordingly, the Debtors submit that the sale of the Store Closure Assets satisfies the statutory requirements of section 365(f) of the Bankruptcy Code and should, therefore, be free and clear of any liens, claims, encumbrances, and other interests.

V.      **The Court Should Waive Compliance with Applicable State Laws and Approve the Dispute Resolution Procedures.**

48.     The Debtors' ability to conduct the Sales in accordance with the Sale Guidelines and without complying with Applicable State Laws is critical to the Sales' success.  Although the Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the Sales, many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales. Additionally, compliance with Fast Pay Laws would require the Debtors to pay terminated employees within a time frame that would be detrimental to the conduct of these Chapter 11 Cases, if not impossible.

49.     To eliminate the time, delay, and expense associated with the administrative procedures necessary to comply with the Applicable State Laws, the Debtors propose the Sale Guidelines as a way to streamline the administrative burdens on their estates while still adequately protecting the broad and varied interests of both landlords and applicable governmental agencies charged with enforcing any Liquidation Sale Laws that may apply to the Store Closings.  As such, the Debtors believe the Sale Guidelines mitigate any concerns that their landlords or governmental agencies may raise with respect to the Store Closings, and therefore, the below requested relief is in compliance with any applicable Liquidation Sale Laws.

50.     The Debtors submit that there is strong support for granting them the authority to not comply with the Liquidation Sale Laws, subject to the Sale Guidelines.  *First*, it is generally accepted that many state statutes and regulations provide that, if a liquidation or bankruptcy sale is court-authorized, a company need not comply with the Liquidation Sale Laws.  *See, e.g.*, Ark.

Code Ann. § 4-74-103 (exempting from the provisions of the chapter sales pursuant to any court order); Ga. Code Ann. § 10-1-393(b)(24)(C)(iv) (same); 815 ILCS 350/3 (same); La. Rev. Stat. Ann. § 51:43(1) (same); N.Y. Gen. Bus. Law § 584(a) (same); Or. Rev. Stat. Ann. § 646A.100(2)(b) ("'Going out of business sale' does not include a sale conducted by a bankruptcy trustee."); Tex. Bus. & Com. Code Ann. § 17.91(3) (exempting from subchapter sales conducted pursuant to court order). *Second*, pursuant to section 105(a) of the Bankruptcy Code, the Court has the authority to permit the Store Closings to proceed notwithstanding any contrary Applicable State Laws as it is essential to the continued operation of the Debtors' business. *Third*, this Court will be able to supervise the Store Closings because the Debtors and their assets are subject to this Court's exclusive jurisdiction. *See* 28 U.S.C. § 1334. As such, creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of the Bankruptcy Court.

51. Further, bankruptcy courts have consistently recognized, with limited exception, that federal bankruptcy law preempts state and local laws that contravene the underlying policies of the Bankruptcy Code. *See Belculfine v. Aloe (In re Shenango Group. Inc.),* 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code.... [A] state statute . . . cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd,* 112 F.3d 633 (3d Cir. 1997).

52. Courts in some jurisdictions have found that preemption of state law is not appropriate if the laws deal with public health and safety. *See Baker & Drake. Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake. Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that

30

Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure).  However, preemption is appropriate where, as is the case here, the only state laws involved concern economic regulation rather than the protection of public health and safety.  *See In re Baker & Drake. Inc.*, 35 F.3d at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

53.    Under the circumstances of these Chapter 11 Cases, enforcing the strict requirements of the Liquidation Sale Laws would undermine the fundamental purpose of section 363(b) of the Bankruptcy Code by placing constraints on the Debtors' ability to maximize estate assets for the benefit of creditors.  Accordingly, authorizing the Sales without the delays and burdens associated with obtaining various state and local licenses, observing state and local waiting periods or time limits, and/or satisfying any additional requirements with respect to advertising, sales, and similar items is necessary and appropriate.  The Debtors do not seek a general waiver of all state and local law requirements, but only those that apply specifically to retail liquidation sales.  Indeed, the requested waiver is narrowly tailored to facilitate the successful consummation of the Sales.  Moreover, the Debtors will comply with applicable state and local public health and safety laws, and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising.  Finally, the Dispute Resolution Procedures provide an ordered means for resolving any disputes arising between the Debtors and any Governmental Units with respect to the applicability of any Liquidation Sale Laws, and should therefore be approved.

31

54.     Further, courts in this district, and in other districts, have recognized that the Bankruptcy Code preempts certain state laws and have granted relief similar to that requested herein.  *See, e.g., In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (authorizing debtors to conduct store closing sales under the terms of the order and finding that "no further approval, license, or permit of any Governmental Unit shall be required"); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Z Gallerie, LLC,* No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Things Remembered, Inc.,* No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings Inc.,* No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (same).[6]

55.     Courts have also granted similar relief from Fast Pay Laws in other bankruptcy cases under similar circumstances.  *See, e.g., In re Z Gallerie, LLC,* No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (granting relief from federal, state, or local laws including "any fast pay laws" in connection with store closing sales); *In re Things Remembered, Inc.,* No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings, Inc.,* No. 17-12906 (CSS) (Bankr. D. Del. Dec. 13, 2017); *In re Golfsmith Int'l Holdings, Inc., No.* 16- 12033 (Bankr.

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

D. Del. Oct. 13, 2016) (same); *In re Vestis Retail Grp, LLC,* No. 16-10971 (LSS) (Bankr. D. Del. May 16, 2016) (same).[7]

## VI.    The Court Should Waive Compliance with Restrictions in the Debtors' Leases.

56.    Certain of the Debtors' leases governing the premises of the stores subject to the Store Closings may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing, liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code.  *See In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (deciding that enforcement of such lease restrictions would "contravene overriding federal policy requiring [the debtor] to maximize estate assets. . ."); *In re R.H. Macy and Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

(Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where the debtor sought to conduct a liquidation sale).

57.     Courts in this district and others have held that restrictive lease provisions affecting store liquidation sales in chapter 11 cases are unenforceable.  *See, e.g., In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (ordering that restrictive lease provisions shall not be enforceable in conjunction with store closings); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Z Gallerie, LLC,* No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (ordering that store closing sales be conducted without the further need for compliance with, among other things, lease provisions); *In re Things Remembered, Inc.,* No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings Inc.,* No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018).

58.     Thus, to the extent that such provisions or restrictions exist in any of the leases of the stores subject to the Store Closings, the Debtors request that the Court authorize the Debtors and the Consultant to conduct any liquidation sales without interference by any landlords or other persons affected, directly or indirectly, by the liquidation sales.

## VII.   The Court Should Approve the Abandonment of Certain Property in Connection with any Liquidation Sales.

59.     After notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (stating

34

that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim").

60.     The Debtors are seeking to sell all owned FF&E remaining in the Closing Stores. However, the Debtors may determine that the costs associated with holding or selling certain property or FF&E exceeds the proceeds that will be realized upon its sale, or that such property is not sellable at all.  In such event, the property is of inconsequential value and benefit to the estates and/or may be burdensome to retain.

61.     To maximize the value of the Debtors' assets and to minimize the costs to the estates, the Debtors respectfully request authority to abandon any of their remaining FF&E or other property located at any of the Closing Stores without incurring liability to any person or entity. The Debtors further request that the landlord of each Closing Store with any abandoned FF&E or other property be authorized to dispose of such property without liability to any third parties.

62.     Notwithstanding the foregoing, the Debtors will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) in any of the Debtors' hardware, software, computers or cash registers or similar equipment that are to be sold or abandoned.

**VIII.    The Store Closing Bonus Plan Is a Sound Exercise of the Debtors' Business Judgment and Should Be Approved.**

63.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to use property of the estate when such use has a "sound business purpose" and when the use of the property is proposed in good faith.  *See In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997); *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

64.    Courts generally require a debtor to demonstrate that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business.  *See In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983).  Once the debtor has articulated a valid business justification, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company.  *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992).  Furthermore, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  The business judgment rule shields a debtor's management from judicial second-guessing. *See Integrated Res.*, 147 B.R. at 656; *Johns-Manville*, 60 B.R. at 615–16 (noting that "the Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").  Thus, if a debtor's actions satisfy the business judgment rule, then the actions in question should be approved under section 363(b)(1).

65.    In this case, the Store Closing Bonus Plan is a sound exercise of the Debtors'

business judgment and is in the best interests of the Debtors and all their estates' stakeholders.

The store employees—along with their skills, knowledge, and hard work—are more critical now

than ever.  Through their commitment and performance, they can ensure that the Debtors continue

to maximize stakeholder value in a challenging economic environment and at a time when those

employees' positions will soon be terminated.

66.    Additionally, the total cost of the Store Closing Bonus Plan is reasonable in light

of the total revenue projected from the Sales and competitive market practice and involves

compensation structures often used in other restructuring situations to incentivize employees to

continue optimal performance despite the added stress inherent in the chapter 11 process.

67.    The maximum cost of the Store Closing Bonus Plan will be approximately 1% of

gross annual payroll for store employees and is comparable to employee incentive plans regularly

paid in other "store closing" and similar-themed sales in chapter 11 situations to incentivize

employees to continue optimal performance despite the added stress inherent in the chapter 11

process.  As such, courts have approved incentive payments similar to those completed in the Store

Closing Bonus Plan.  *See, e.g., In re Christopher & Banks Corporation, et al.*, No. 21-10269

(ABA) (Bankr. D.N.J. Feb. 8, 2021) (authorizing debtor to implement and make payments under

the store closing bonus program); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr.

D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods Inc., et al.,* No. 20-14179 (VFP)

(Bankr. D.N.J. June 24, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr.

D.N.J. July 29, 2020) (same); *In re Z Gallerie, LLC,* No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9,

2019) (authorizing up to $500,000 in store closing bonus plans); *In re Things Remembered, Inc.,*

37

No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (authorizing a $1600 per store bonus for the store managers and assistant managers to incentivize employees to complete store closings); *In re Bon-Ton Stores, Inc.,* No. 18-10248 (MFW) (Bankr. D. Del. Feb. 7, 2018) (authorizing discretionary bonus payments in an amount no more than 10 percent of payroll for store employees).

68.     The Store Bonus Program is comparable to employee incentive plans regularly paid as "expenses of sale" by liquidating agents in other "store closing" and similar-themed sales. As such, courts have approved incentive payments similar to those contemplated in the Store Bonus Program. *See, e.g.*, *In re Modell's Sporting Goods, Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 23, 2020) (authorizing store closing retention bonus program on a final basis); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Feb. 7, 2018) (authorizing store closing retention bonus program on an interim basis); *In re Rue21, Inc.*, No. 17-22045 (GLT) Bankr. W.D. Pa. June 12, 2017) (authorizing store closing retention bonus program on a final basis); *In re Goldsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) Bankr. D. Del. Oct. 13, 2016) (same); *In re Sport Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (same).

69.     Accordingly, the Debtors submit that the relief requested with respect to the Store Closing Bonus Plan is a valid exercise of the Debtors' business judgment and the approval of the Store Closing Bonus Plan is appropriate under section 363 of the Bankruptcy Code and is in the best interests of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases.

IX.     **The Store Closing Bonus Plan is Justified by the Facts and Circumstances of These Chapter 11 Cases.**

70.     Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case. *See* 11 U.S.C. § 503(c)(3). Though section 503(c)(3) is not applicable here because this Motion does not seek authorization to pay Store Closing Bonuses to insiders, if it did apply, the Store Closing Bonus Plan would be well within the "facts and circumstances" test articulated therein. Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different than the business judgment standard under section 363(b) [of the Bankruptcy Code]." *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011); *see also In re Global Home Prods., LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the key employee retention program is] intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363."); *In re Nobex Corp.*, No. 05-20050 (MFW), 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (concluding that the standard under section 503(c)(3) of the Bankruptcy Code reiterates the business judgment standard). For the reasons discussed above, a possible loss of the employees would disrupt the Debtors' ability to effectively close the Closing Stores and maximize value for the benefit of all stakeholders. Because implementation of the Store Closing Bonus Plan will incentivize store level employees to enhance the value of the Debtors' estates, the Store Closing Bonus Plan is justified by the facts and circumstances of these Chapter 11 Cases and is a sound exercise of the Debtors' business judgment. *See, e.g., In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899, *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified by the facts and circumstances of the case' under

39

section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors") (citation omitted).

**X.      The Proposed Modifications to the Debtors' Customer Programs are Appropriate.**

71.      The Courts may authorize payment of prepetition claims, such as gift card obligations, in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow for modifications of customer programs not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  See *In re United Am., Inc*., 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging that the doctrine of necessity "is a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105(a)] the court can permit pre-plan payment of a pre petition obligation when essential to the continued operation of the debtor."); see also *In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of prepetition claims" under the doctrine of necessity).

72.      Accordingly, the Court has authority to authorize the Debtors to continue and modify customer programs in the ordinary course of business, and pay prepetition claims arising

40

thereunder, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Continuing to administer the Debtors' gift card program in connection with the Store Closings is critical to preserving customer goodwill.  The Sales and Store Closings necessitate that such programs must conclude to provide finality and an efficient closing period.  The grace period between entry of the Interim Order and the date after which the Debtors will no longer accept gift cards affords customers ample opportunity to spend any remaining balances.  The Debtors submit that the notice provided through this Motion is adequate and proper under the circumstances.

## Request for Waiver of Stay

73.      To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

74.      The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## No Prior Request

75.      No prior request for the relief sought in this Motion has been made to this Court or any other court.

41

## Notice

76.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; (m) the landlords for the Closing Stores; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court interim and final orders,

in substantially the forms submitted herewith, granting the relief requested herein and such other

relief as is just and proper under the circumstances.

Dated: April 23, 2023

/s/ *Michael D. Sirota*
_____
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING AGREEMENTS, (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (III) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES OF CLOSING STORES, AND (IV) GRANTING RELATED RELIEF

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered three (3) through twenty-nine (29),

is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to assume the Consulting Agreements, (b) authorizing and approving the continuation or initiation of the Store Closings in accordance with the terms of the Consulting Agreements and the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, (c) authorizing customary bonuses to non-insider Closing Store employees who remain employed for the duration of the store closing process, (d) approving modifications to certain customer programs, including the return policy and acceptance of gift-cards and loyalty certificates, (e) scheduling a final hearing to consider approval of the Motion on a final basis, and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY FOUND AND DETERMINED THAT**:[1]

A.      The Debtors have advanced sound business reasons for assuming the Consulting Agreements and adopting the Sale Guidelines, on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing, and assuming the Consulting Agreements is a reasonable exercise of the Debtors' business judgement and in the best interest of the Debtors and their estates.

B.      The Consulting Agreements, copies which are attached to this Interim Order as **Schedule 1-A** and **Schedule 1-B**, were negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

C.      The assumption of the Consulting Agreements on an interim basis is a sound exercise of the Debtors' business judgment.

---

[1]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

D.      The Sale Guidelines, which are attached hereto as **<u>Schedule 2</u>**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets, and are in the best interest of the Debtors' estates.

E.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief approved herein.

F.      The Store Closings and Sales are in the best interest of the Debtors' estates.

G.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

H.      The Debtors have represented that they intend to neither sell nor lease personally identifiable information pursuant to the relief requested in the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

I.      The entry of this Interim Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby

**ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

2.      The Final Hearing on the Motion will be held on _____, **2023 at _____**

**(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be

actually received by the Debtor's proposed counsel on or before _____, **2023**

**at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an

order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, but not directed, to make payments under the Store

Closing Bonus Plan, as may be amended and modified from time to time.

4.      To the extent any conflict between this Interim Order, the Sale Guidelines, and the

Consulting Agreements, the terms of this Interim Order shall control over all other documents and

the Sale Guidelines shall control over the Consulting Agreements.

**I.      Authority to Assume the Consulting Agreements.**

5.      The Debtors are authorized to assume and perform under the Consulting Agreement

pursuant to sections 363 and 365 of the Bankruptcy Code, including: (a) making payments required

by the Consulting Agreement to the Consultant without the need for any application of the

Consultant or a further order of the Court, (b) allowing the sale of Additional Consultant Goods,

and (c) participating in an augmentation program, all as permitted under the Consulting

Agreement. Consultant's fees and expenses shall be paid from the gross proceeds of the Sale,

without adherence to any weekly, monthly or aggregate limitation in a debtor-in-possession

financing or cash collateral budget entered in connection with these Chapter 11 Cases, but shall be

subject to the terms of the Consulting Agreement itself, including as to any expense budget

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

attached thereto. Additionally, not later than seven (7) days after entry of this Interim Order the Debtors shall deliver to the Consultant a cash deposit in the amount of $4,000,000 as provided in the Expense Budget as security for payment of Consultant's fees and expenses earned and incurred under the Consulting Agreement (the "Sale Deposit"); any remaining balance of the Sale Deposit being held by Consultant upon completion of the Sale shall be applied by Consultant as shall be set forth in a final reconciliation of the Sale as contemplated by the Consulting Agreement.

6.      Subject to the restrictions set forth in this Interim Order, the Sale Guidelines and any Side Letters (defined below), the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreements and the Sales, and each of the transactions contemplated by the Consulting Agreements, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreements and/or the Sales prior to the date of this Interim Order, are hereby approved and ratified.

7.      The Consulting Agreements and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court; *provided, however,* that the Sale Guidelines may not be materially modified without the consent of the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent (which can be by email through counsel) and notice and a reasonable opportunity to object by the U.S. Trustee, landlords for the Closing Stores, and any statutory committee appointed in these Chapter 11 Cases.  The Debtors are hereby authorized to enter into additional agreements in connection

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

with any Closing Stores, or Sales related thereto, on terms materially consistent with the Debtors' historic practices; subject to the prior written consent (which can be by email through counsel) of the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent.

8.      Notwithstanding anything contrary in the Consulting Agreements, the Debtors and their estates shall not indemnify the Consultant for any damages arising out of the Consultant's fraud, willful misconduct, or gross negligence.

9.      To the extent the Consultant seeks to contract with Additional Consultants, the Consultant is authorized to enter into an agreement with Additional Consultants; *provided* that, Consultants provide notice thereof to the Court.

## II.     Authority to Engage in Sales and Conduct Store Closings.

10.     The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Sales at the Closing Stores in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreements, as may be modified by any Side Letters (as defined below) between the Debtors and/or the Consultant and the landlords at the Closing Stores.

11.     The Sale Guidelines are approved in their entirety on an interim basis.

12.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Sale Guidelines.

13.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Agreements or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

14.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

**III.     Conduct of the Sales.**

15.     All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and Store Closings pursuant to the Consulting Agreements, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreements.

16.     The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreements and to conduct the Sales and Store Closings without necessity of further order of this Court as provided in the Consulting Agreements and the Sale Guidelines (subject to any Side Letters), including, but not limited to, advertising the sale as a "store closing sale", "sale on everything", "everything must go", "going-out-of-business", or similar-themed sales as contemplated in the Sale Guidelines through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and

| (Page \| 10) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage, as contemplated in the Sale Guidelines.

17.     Except as expressly provided in the Consulting Agreements and the Sale Guidelines, the sale of the Merchandise and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise and FF&E), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closings or the Sales.  Breach of any such provisions in these Chapter 11 Cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Interim Order, any Side Letter, and the Sale Guidelines.  The Debtors and/or Consultant and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Consultant and any such landlords, *provided* that nothing in such Side Letters affects the provisions of this Interim Order. In the event of any conflict between the Sale Guidelines, the Consulting Agreements, any Side Letter, and this Interim Order, the terms of such Side Letter shall control. Copies of any Side Letters will be provided to the U.S. Trustee, the DIP Agent, the Prepetition

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

ABL Agent, the Prepetition FILO Agent, and/or any statutory committee of unsecured creditors at such point as to provide the reasonable opportunity to object.

18.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings, and/or (b) instituting any action or proceeding in any court (other than in the Bankruptcy Court or the Canadian Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Merchandise or FF&E or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

19.     In accordance with and subject to the terms and conditions of the Consulting Agreements, the Consultant shall have the right to use the Closing Stores and all related Closing

(Page | 12)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines (as modified by any Side Letters) and this Interim Order.

20.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreements and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreements.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state, provincial or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

21.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets and all sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances,

(Page | 13)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreements).

22.     The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among, and into, the Closing Stores in accordance with the Sale Guidelines, as applicable.  The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreements and the Sale Guidelines.

23.     Neither the Sale Guidelines, Consulting Agreements, nor this Interim Order authorize the Debtors to transfer or sell to Consultant or any other party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number) ("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not limit the Consultant's use of the Debtors'

(Page | 14)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

customer lists and mailing lists in accordance with the Consulting Agreements solely for purposes of advertising and promoting the Sales.

24.     The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.  At the conclusion of the Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer PII and that any records containing PII were shredded, erased or otherwise modified to render the PII unreadable or undecipherable.

25.     Nothing herein shall limit the Debtors' right to pause or discontinue a Sale at a Closing Store on notice to affected parties and subject to the prior written consent (which can be by email through counsel) of the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent.

26.     Nothing herein is intended to affect any rights of any applicable government unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

**IV.     Customer Programs.**

27.     For the first thirty (30) days from the date of this Interim Order, the Debtors shall accept returns of merchandise sold by the Debtors in the ordinary course prior to the commencement of any Sale; *provided*, that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not

(Page | 15)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

repurchasing the same item so as to take advantage of the sale price being offered in the Store Closings; *provided*, *further*, that (i) returns of items sold on a "final" basis, including items sold in the Closing Stores on a "final" basis pursuant to this Interim Order, shall not be accepted, and (ii) gift cards may not be returned for cash.

28.     All in-store sales in Store Closings shall be "as is" and final.  Returns related to the purchases made in Store Closings shall not be accepted, except as set forth herein.

29.     Notwithstanding anything herein, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Debtors shall accept return of any goods purchased during the Store Closings that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund; *provided*, that the consumer must return the merchandise within the applicable time period set forth herein of their purchase, the consumer must provide a receipt for the purchase to the Debtors, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors.

30.     All sales of Merchandise shall be made by cash, gift card, or gift certificate (subject to paragraph 31 below), merchandise credit, debit card, or credit card and, at Debtor's discretion, by check or otherwise in accordance with the Debtors' policies.

31.     For the first fourteen (14) days from the date of entry of this Interim Order, the Debtors shall continue to accept the Debtors' validly-issued gift certificates, gift cards, and loyalty

(Page | 16)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

certificates issued prior to the Sale Commencement Date in their e-commerce business or in-store in the ordinary course of business. After the expiration of the fourteen days to utilize gift certificates, gift cards, and loyalty certificates on the e-commerce platform or in-store, all such validly-issued gift certificates, gift cards, and loyalty certificates will no longer be accepted by the Debtors and deemed to have no remaining value. Notwithstanding any policy or state law to the contrary, the gift cards, gift certificates, and loyalty certificates are not redeemable for cash at any time.

## V.    Dispute Resolution Procedures with Governmental Units.

32.    Nothing in this Interim Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order, the Consulting Agreements, or the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of Sales Taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws,

(Page | 17)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").  Nothing in this Interim Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court or the Canadian Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order (or the CCAA or any Order of the Canadian Court).  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code or the CCAA, as applicable.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

33.     To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the

(Page | 18)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

sale of the Store Closing Assets, including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply and the Dispute Resolution Procedures shall control over any Side Letters (provided that, these Dispute Resolution Procedures shall not apply with respect to the sale of Store Closure Assets in Canadian stores, and that any such disputes shall be dealt with by the Canadian Court):

i. Provided that the Sales are conducted in accordance with this Interim Order, any Final Order, and the Sale Guidelines, the Debtors, the Consultant, and the Debtors' landlords, shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the Sales of the Store Closure Assets, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sales and sales of the Store Closure Assets (collectively, the "Liquidation Sale Laws") of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); *provided*, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii. Within five (5) business days after entry of this Interim Order, the Debtors will serve by first-class mail, copies of this Interim Order, the proposed Final Order, the Consulting Agreements, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; and (d) the landlords for the Closing Stores (collectively, the "Dispute Notice Parties").

(Page | 19)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

iii.    To the extent that there is a dispute arising from or relating to the Sales, this Interim Order, the Consulting Agreements, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten (10) days following entry of this Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Charles B. Sterrett; (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq.; (c) on behalf of Hilco Merchant Resources, LLC, (i) One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847-849-0859, Attn: Hilco Merchant Resources, LLC c/o Ian S. Fredericks and Sarah Baker and (ii) Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York, Fax: 212-719-0140, Attn: Steven Fox; and (iii) Troutman Pepper Hamilton Sanders LLP, 1313 N. Market St., P.O. Box 1709, Wilmington, DE 19899-1709, Fax: 866-422-3027, Attn: Marcy McLaughlin Smith; (d) Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, and Michael Pera; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Megan R. Volin. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv.    In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to the Interim Order or Final Order, as applicable, absent further order of the Bankruptcy Court. Upon the entry of the Interim Order or Final Order, the Bankruptcy Court grants authority for the Debtors and the Consultant to conduct the Sales pursuant to the terms of the Interim Order or the Final Order, the Consulting Agreements, and

(Page | 20)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

the Sale Guidelines (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in the Interim Order or Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v.      If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

34.      Subject to paragraphs 32 and 33 above, each and every federal, state, or local agency, departmental, or Governmental Unit with regulatory authority over the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

35.      Provided that the Sales are conducted in accordance with the terms of this Interim Order, the Consulting Agreements, and the Sale Guidelines (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Interim Order and the

(Page | 21)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

36.    Nothing in this Interim Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.  Nothing contained in this Interim Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

**VI.    Other Provisions.**

37.    To the extent the Debtors are subject to any state Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

38.    Neither the Consultant nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the

(Page | 22)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Debtors and/or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores, *provided* that any such services and/or transactions shall be approved by separate order of this Court, and *provided further* that the rights of the U.S. Trustee and all other parties in interest to object to any request that the Agent or its affiliates be permitted to provide such additional services and/or transactions are fully reserved.

39.     On a confidential basis and for professionals' "eyes only" and upon the written (which can be by email through counsel) request of the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, or the official committee of unsecured creditors, if any, the Debtors shall provide such requesting party, if any, with copies of those periodic reports and information regarding the conduct of the Sale that are prepared by the Debtors, their professionals or the Consultant and that are consistent with practices that were in place pre-petition; *provided*, that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Sales.

40.     Not later than seven (7) days prior to the objection deadline related to entry of an order approving the Motion on a final basis, the Consultant shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, any official committee of unsecured creditors appointed in

(Page | 23)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by

email, or if the email address is not available to the Debtors, then by first class mail.

41.     To the extent the Consultant seeks to contract with other parties as additional

consultants (each an "**Additional Consultant**"), and to the extent set forth in the Consulting

Agreement, the Debtors shall provide notice thereof to the Office of the United States Trustee, the

DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, and any official committee

of unsecured creditors, and such Additional Consultant shall promptly file a declaration disclosing

the information set forth in paragraph 40 of this Interim Order and, upon being contracted with, be

subject to the provisions of the Final Order.

42.     Consultant shall act solely as an independent consultant to the Debtors and shall

not be liable for any claims against the Debtors other than as expressly provided in the Consulting

Agreements (including the Consultant's indemnity obligations thereunder) or the Sale Guidelines,

with the exception of acts of gross negligence or willful misconduct and, for greater certainty, the

Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or

common employer or payor within the meaning of any legislation governing employment or labor

standards or pension benefits or health and safety or other statute, regulation or rule of law or

equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

43.     The Debtors are authorized and permitted to transfer to the Consultant personal

information in the Debtors' custody and control solely for the purposes of assisting with and

(Page | 24)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

conducting the Sale and only to the extent necessary for such purposes, *provided* that Consultant removes such personal information from the FF&E prior to the abandonment of the same.

44.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to payments made to the Consultant, which are governed by the reconciliation procedures in the Consulting Agreements.

45.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements

(Page | 25)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

46.     Nothing in this Interim Order or in the Sales Guidelines shall apply to BBB Canada ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada"), or alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Interim Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

(Page | 26)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

47.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Interim Order. without further court approval on notice to parties in interest.

48.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

49.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

50.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

51.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

52.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

53.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Order.

(Page | 27)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

54.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

55.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order

56.     Notwithstanding Bankruptcy Rule 6004(4), this Interim Order shall take effect immediately upon its entry.

57.     This Court shall retain jurisdiction with regard to all issues or disputes relating to this Interim Order or the Consulting Agreements, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests; *provided* that, notwithstanding the foregoing the Canadian Court shall retain jurisdiction with regard to all issues or disputes in respect of the Sale at the Canadian Closing Stores.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this Court or the Canadian Court, as applicable, has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

(Page | 28)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

58.     Within 30 days of conclusion of the Sale, the Debtors shall (a) file with the Court

and provide to the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent, a

summary report of the store closing process that will include (i) a list of the stores closed, (ii) gross

revenue from the store closing assets sold, and, (iii) gross revenue from FF&E sold, (iv) calculation

of fees paid to the Agent, and (v) calculation of expenses reimbursed to the Agent and (b) file with

the Court and serve on the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, and the

Prepetition FILO Agent. Trustee, any statutory committee, and any other party in interest who may

so request, a report showing payment of each of the Consultant's fees, setting forth detail and

information regarding the calculation of such fees paid to the Consultant and expenses reimbursed

to the Consultant.  Only the U.S. Trustee (and no other party) shall have 20 days after the date on

which such report is filed to object, under the standards of section 328(a) of the Bankruptcy Code,

solely as to the reasonableness of the compensation paid or expenses reimbursed to the Consultant;

*provided, however*, that with respect to any such objection: (i) the Consultant's "Base Fee" and

reimbursement of expenses shall be reviewed under the standards of section 328(a) and are found

to be reasonable as of the date hereof, and such Base Fee shall not be later deemed unreasonable

on the basis that the success of the Sale, whether on account of sales, recovery, or otherwise,

resulted in the Consultant receiving compensation, in dollar terms, that was greater than any budget

or forecast provided by the Debtors, their advisors, and/or the Consultant; and (ii) the Consultant's

"Incentive Fee" or any other fee not reflected in the Consulting Agreements, and any additional

expenses reimbursed in excess of the aggregate budget, shall not receive the same presumption

(Page | 29)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

and shall be reviewed under the standards of section 330 of the Bankruptcy Code. To the extent

an objection is filed by the U.S. Trustee and cannot be resolved, the parties shall coordinate to

have the objection to the Consultant's compensation brought before the Court at the next scheduled

omnibus hearing or such other date and time as shall be agreed by the parties.

## **Schedule 1-A**

**BB&B Consulting Agreement**



September 11, 2020

***VIA EMAIL***
Derek Dervish
Vice President – Asset Management
BED BATH & BEYOND INC.
650 Liberty Ave.
Union, NJ 07083
Email:  derek.dervish@bedbath.com

Re:      **Letter Agreement Governing Inventory Disposition**

Dear Derek:

By executing below, this letter shall serve as an agreement ("Agreement") between Hilco Merchant Resources, LLC, on the one hand ( "Agent" or a "Party"), and Bed Bath & Beyond Inc., on the other hand ("Merchant" or a "Party" and together with the Agent, the "Parties"), under which Agent shall act as the exclusive agent for the purpose of conducting a sale of certain Merchandise (as defined below) at the Merchant's stores set forth on Work Orders issued by Merchant and agreed to by Agent from time to time (each a "Store" and collectively, the "Stores") through a "Store Closing", "Everything Must Go", "Everything on Sale" or similar themed sale (the "Sale"). The Parties hereby agree that the list of Stores on a Work Order may be supplemented from time to time by written amendment to this Agreement executed in accordance with the foregoing in which case any Store added to a Work Order shall be deemed a "Store" for all purposes under this Agreement, and the Parties shall mutually agree upon any modifications to the Sale Term, Expense Budget(s), and other terms and conditions that may be necessary or appropriate in light of the additional retail store locations.

A.      **Merchandise**

For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below).  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "FF&E"); or (3) damaged or defective merchandise that cannot be sold.

B.      **Sale Term**

The initial Sale shall commence on such date as set forth in an applicable Work Order (the "Sale Commencement Date") and conclude no later than such date as set forth in an applicable Work Order (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date.  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term."  At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant

DocuSign Envelope ID: 56600375-A57A-45F9-A4C2-1225625296DB

in broom clean condition and in accordance with the lease requirements for such premises, as directed by Merchant, in accordance with Section I herein. At the conclusion of the Sale at each Store, Agent shall photographically document the condition of each such Store. To the extent that the Sale as it pertains to a particular Store is delayed or interrupted  because it is required to be closed due to  the issuance of an order, rule, or regulation by a federal, state or local government agency related to COVID-19, the Sale Termination Date as to the affected Store shall be extended by the time period for which the Sale was delayed or interrupted.

**C.**  **Project Management**

(i)  Agent's Undertakings

During the Sale Term, Agent shall, in collaboration with Merchant, (a) provide qualified supervisors (the "Supervisors") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters;   (h) assist Merchant with the creation and implementation of a customer transition program; (i) assist Merchant with determining the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (j) at Merchant's request, implement Agent's affiliate CareerFlex program for Merchant's Store level and other employees; and (k) provide such other related services deemed necessary or appropriate by Merchant and Agent.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)  Merchant's Undertakings

During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) apply for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including

landlord approvals and consents) for the Sale, including payment of all applicable costs and expenses associated therewith; (i) assist Agent with implementing the CareerFlex program for Merchant's Store level and other employees; and (j) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.

Merchant shall be responsible for providing direction to and supplies for the Stores in order to comply with federal, state and local COVID-19 related health and safety requirements, and Agent will assist with the implementation of such requirements at the Stores; provided, however, that Agent shall not be responsible to Merchant for the payment of nor liable for any fine, injury, death, or damage caused by or related to COVID-19 (collectively, "COVID-19 Losses"), unless such COVID-19 Losses were directly caused by Agent's gross negligence or willful misconduct. Agent's supervisors will provide their own personal protective equipment ("PPE") at no additional cost to Merchant. To the extent that temporary labor do not source and provide their own PPE, Agent will provide Merchant with Agent's cost (without lift or mark-up) for PPE and, if requested by Merchant, Agent will procure such PPE, and Merchant agrees to reimburse Agent for the costs associated therewith (in addition to amounts reflected in a Work Order).

The Parties expressly acknowledge and agree that Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent. The Parties further expressly acknowledge and agree that Merchant shall have no liability to Agent's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's employment, hiring or retention of its employees, and such employees shall not be considered employees of Merchant.

**D.**    **The Sale**

All sales of Merchandise shall be made on behalf of Merchant. Agent does not have, nor shall it have, any right, title or interest in the Merchandise. All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

**E.**    **Agent Fee and Expenses in Connection with the Sale**

As used in this Agreement, the following terms shall have the following meanings:

(i)    "Gross Proceeds" shall mean the sum of the gross proceeds of all sales of Merchandise made in the Store during the Sale Term, net only of sales taxes.

(ii)    "Gross Recovery Threshold" shall mean the Gross Proceeds, calculated using the "gross rings" method, divided by the Retail Price of the Merchandise sold, calculated using the "gross rings" method.

(iii)    "Merchandise File" shall mean the Merchant's books and records, as well as all files provided to Agent during due diligence.

(iv)    "Retail Price" shall mean with respect to each item of Merchandise (excluding a small amount of Merchandise classified as clearance, "web deals," "as-is" or in-store special), the lower of the lowest ticketed, marked, shelf, Merchandise File, point of sale, or other file price as reflected in Merchant's books and records for such item.

In consideration of its services hereunder, Merchant shall pay Agent a "Base Fee" equal to sixty-five one hundredths of one percent (0.65%) of the Gross Proceeds of Merchandise sold at the Stores.  In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following Gross Recovery Thresholds (e.g., in each case, as calculated back to first dollar):

| Gross Recovery Threshold | Agent Incentive Fee |
|---|---|
| 65.10% - 66.0% | An additional .20% of Gross Proceeds<br>Total Merchandise Fee of .85% of Gross Proceeds |
| 66.10% - 67.00% | An additional .10% of Gross Proceeds<br>Total Merchandise Fee of .95% of Gross Proceeds |
| Over 67.00% | An additional .10% of Gross Proceeds<br>Total Merchandise Fee of 1.05% of Gross Proceeds |

The definitive Gross Recovery Threshold shall be determined in connection with the Final Reconciliation, and once determined, the parties (as part of the Final Reconciliation) shall determine the actual amount of Agent's Incentive Fee.  Merchant shall pay any outstanding, unpaid portions of Agent's Incentive Fee in connection with the Final Reconciliation.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's other reasonable, documented out of pocket expenses.  To control expenses of the Sale, Merchant and Agent have established an aggregate budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision (including (without limitation) Supervisors' wages,  travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable, at cost with no markup).  The Expense Budget for the Sale is attached to each Work Order. In the event Agent desires to modify the Expense Budget attached hereto after the date of this Agreement, Agent will present such modifications to Merchant for Merchant's consent, which consent may be withheld by Merchant in Merchant's sole discretion. The costs of supervision set forth in each Work Order include, among other things, industry standard deferred compensation.

All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled on every Wednesday for the prior week and shall be paid within twenty-one (21) days after each such weekly reconciliation.  The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by

4

this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store.

## F.    **Indemnification**

### (i)    <u>Merchant's Indemnification</u>

Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "<u>Agent Indemnified Parties</u>") harmless from and against all third-party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

### (ii)    <u>Agent's Indemnification</u>

Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "<u>Merchant Indemnified Parties</u>") harmless from and against all third party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement.

## G.    **Insurance**

### (i)    <u>Merchant's Insurance Obligations</u>

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability

5

insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Agent to be named an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

(ii)    <u>Agent's Insurance Obligations</u>

As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to this Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

**H.    <u>Representations, Warranties, Covenants and Agreements</u>**

(i)    Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (d) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary Merchant's practices, and (e) the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Agent.

(ii)    Agent warrants, represents, covenants and agrees that (a) Agent is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Agent's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Agent and this Agreement constitutes a valid and binding obligation of Agent enforceable against Agent in accordance with its terms and conditions, and the consent of no other entity or person is required for Agent to fully perform all of its obligations herein, (c) Agent shall comply with and

DocuSign Envelope ID: 56600275-A571-45C9-A4C2-12256252950B

act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, and (e) Agent will not take any disciplinary action against any employee of Merchant.

## I.    **Furniture, Fixtures and Equipment**

Agent shall sell the FF&E in the Stores from the Stores themselves.  In consideration for selling the FF&E, Agent shall be entitled to a commission from the sale of the FF&E equal to ten percent (10.0%) of the Gross Proceeds of the sale of the FF&E.

Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within 21 days after each such weekly reconciliation.

Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with (i) the sale of FF&E, and (ii) surrendering the premises in accordance with the lease requirements for such premises, as directed by Merchant, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties. Agent shall not have the right to abandon at the Stores any unsold FF&E; provided, however, in the event Merchant desires that Agent  decommission and/or de-brand (collectively, "Decommission") any Store and/or remove any FF&E that is affixed to a Store premises, including without limitation by glue, nails or screws, such Decommission and FF&E removal shall be subject to a separate scope of work, which may include an additional fee payable to Agent in connection with such work, and budget mutually agreed upon by Merchant and Agent.

## J.    **Termination**

The following shall constitute "Termination Events" hereunder:

(a)    Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting Party;

(b)    Any representation or warranty made by Merchant or Agent is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)    the Sale at all Stores is terminated or materially interrupted or impaired for any reason other than an event of default by Agent or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default.  If this Agreement is terminated, Merchant shall be obligated to pay Agent all amounts due under this Agreement through and including the termination date.

**K.**    <u>Notices</u>

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows:  (a) To Merchant: at the address listed above, ATTN: EVP, Chief Stores Officer; (b) To Agent: c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax:  847- 849-0859, Attn: Ian S. Fredericks; or (c) such other address as may be designated in writing by Merchant or Agent.

**L.**    <u>Independent Consultant</u>

Agent's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect.  No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement.  Merchant shall have no control over the hours that Agent or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Agent is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**M.**    <u>Non-Assignment</u>

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; provided, however Merchant may use the services of Agent in Stores leased by subsidiaries of Merchant.  No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**N.**    <u>Severability</u>

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.  If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.**    <u>Governing Law, Venue, Jurisdiction and Jury Waiver</u>

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of New Jersey (without reference to the conflicts of laws provisions therein).  Merchant and Agent waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Agent against Merchant or Merchant against Agent on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and

Agent, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

**P.**    **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.**    **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**R.**    **Ethical Conduct Policy**

It is the policy of Merchant and its subsidiaries and affiliates to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act).  Agent shall not, directly or indirectly, solicit or accept from, nor offer, promise or pay to, any individual or entity (including, but not limited, to any government official any bribe, kickback or any other improper payment of money or anything else of value.  This includes, but is not limited to, any improper payment in exchange for Merchant's execution of this Agreement. Agent will also require any subcontractor (of any level) to adhere to the same standards and will appropriately monitor its subcontractors to ensure such adherence.  In addition, any individual who is employed by or who represents Merchant is prohibited from soliciting, accepting, offering, promising or paying any bribe, kickback or any other improper payment of money or anything else of value. If any such improper actions are observed, contact our Legal Department (Attention: General Counsel) at the address set forth herein and/or by telephone at 908-688-0888, so that the incident may be fully investigated.

*        *        *

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned. Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

*Sarah Baker*

AC491BAA66644E1...

By: Sarah Baker

Its: VP & AGC, Managing Member

**AGREED AND ACCEPTED as of the 11th day of ___September___, 2020:**

BED BATH & BEYOND INC.

*John Hartmann*

1E3FE0G50CA41C

By: John Hartmann

Its: EVP, COO

10

DocuSign Envelope ID: 94087879-B6C3-4EA0-B364-930E972B2F66



August 26, 2022

*VIA EMAIL*
Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc. 650
Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

Re:      **Amendment to Letter Agreements**

Derek:

Reference is made to (i) that certain letter agreement dated September 11, 2021 by and between Hilco Merchant Resources, LLC ("Agent" or a "Party") and Bed Bath & Beyond Inc. (the "BB&B" or a "Party") (as supplemented or amended, the "BB&B Agreement") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("BBB" or a "Party"; together with BB&B, the "Merchant"; collectively with BB&B and Agent, the "Parties") (as supplemented or amended, the "BBB Agreement" and together with the BB&B Agreement, the "Agreements") Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective Agreement.

The Parties hereby amend the Agreements as follows (the "Amendment"):

Section E. of the Agreements are hereby amended and modified as follows:

1. The "Base Fee" is hereby increased from sixty-five one hundredths of one percent (0.65%) to eighty one hundredths of one percent (0.80%).

2. With respect to the table outlining the "Gross Recovery Threshold" and "Agent Incentive Fee", the table is hereby amended and modified as follows:

   a. The reference to "Total Merchandise Fee of .85% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.0% of Gross Proceeds";

   b. The reference to "Total Merchandise Fee of .95% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.10% of Gross Proceeds"; and

   c. The reference to "Total Merchandise Fee of 1.05% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.20% of Gross Proceeds".

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group on terms and conditions mutually agreed upon between the Agent and

DocuSign Envelope ID: 94987879-B3C3-4EA0-B364-930E972B2E56

Tiger Capital Group.  Per the Merchant's request, Agent shall continue to lead all aspects of the transactions contemplated by the Agreements.

With respect to this Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements.

This Amendment, together the Agreements, all prior amendments or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreements.

*          *          *

2

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned. Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

*Ian S. Fredericks*

8211DF797AB4402...

By: Ian S. Fredericks

Its: President


**AGREED AND ACCEPTED as of the ___ day of August, 2022:**

BED BATH & BEYOND, INC.

*Derek B Dervish*

D65B971000BB4E0...

By: Derek B Dervish

Its: Senior Director of Asset Mgt. and Inventory Operations


BUY BUY BABY, INC.

*Derek B Dervish*

D65B971000BB4E0...

By: Derek B Dervish

Its: Senior Director of Asset Mgt. and Inventory Operations


Merchant Resources

February 12, 2023

**_VIA EMAIL_**

Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc.
650 Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

Re:    **Second Amendment to Letter Agreements**

Derek:

Reference is made to (i) that certain letter agreement dated September 11, 2020 by and between Hilco Merchant Resources, LLC ("Agent" or a "Party") and Bed Bath & Beyond Inc. ("BB&B" or a "Party") (as amended, modified, supplemented or restated and in effect from time to time, the "BB&B Agreement") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("BBB" or a "Party"; together with BB&B, the "Merchant"; collectively with BB&B and Agent, the "Parties") (as amended, modified, supplemented or restated and in effect from time to time, the "BBB Agreement"; the BB&B Agreement and BBB Agreement are collectively referred to herein as the "Agreements"). Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective BB&B Agreement or the BBB Agreement, as the context makes applicable.

The Agreements provide for, among other things, the procedures in which the Sales will be executed, and details related thereto. Accordingly, Merchant and Agent mutually desire to amend the Agreements to, inter alia, (i) provide that this letter amendment (the "Second Amendment") shall constitute a "Work Order" under the Agreements, (ii) add Harmon Stores, Inc. as a party to the Agreements, (iii) expand the scope of Stores covered by the Agreements by adding additional Stores thereunder as set forth herein and in the Exhibits annexed hereto and incorporated herein, and (iii) modify certain other terms and provisions of the Agreements, in each case on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Second Amendment, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agree that the Agreements shall be amended as set forth herein.

1.    Harmon Stores. Effective January 27, 2023, by its counter-signature hereto Harmon Stores, Inc. shall be and the same hereby is added as "Party" to the BB&B Agreement and shall be treated as "Merchant" thereunder and hereunder for all purposes.

2.    Closing Store Designations.

a)    Pursuant to this Second Amendment, Merchant hereby designates those Store locations identified in Exhibit A-1 hereto and incorporated herein (hereinafter, collectively the "Amendment 2 'Wave 3' Stores") and the Store locations identified in Exhibit A-2 (the "Amendment 2 'Wave 4' Stores") for closure through the conduct of the Sale in accordance with the terms of the Agreements, as amended hereby. The Expense Budget applicable to the conduct of the Sale at the Amendment 2 "Wave 3" Stores and Amendment 2 "Wave 4" Stores" are annexed hereto as Exhibit B-1 and Exhibit B-2, respectively, and are

incorporated herein by reference.

b)      From and after January 27, 2023, Merchant may designate one or more of the store locations identified in Exhibit A-3 hereto and incorporated herein (each an "Additional Store"; and collectively the "Additional Stores") for closure through the conduct of the Sale in accordance with the terms of the Agreements, as amended hereby. Upon Merchant's designation of an Additional Store(s) for closure under the Agreements, (i) the terms and provisions of the Agreements shall apply for all purposes with respect thereto, including (without limitation) that all such Additional Stores shall be deemed Stores for all purposes, (ii) Merchant shall designate the Sale Commencement Date and Sale Termination Date, respectively, applicable to such Additional Store(s), and (iii) Merchant and Agent shall mutually agree on an appropriate "Expense Budget" that shall be applicable to the conduct of the Sale at such Additional Store(s).  If the Additional Stores constitute all of the locations listed on Exhibit A-3, the Expense Budget for such Additional Stores is hereby annexed hereto as Exhibit B-3 and incorporated herein by reference.

3.      Permitted Sale Themes.  Anything in the Agreements to the contrary notwithstanding, subject to Merchant's prior written consent Agent shall be authorized to market and advertise the Sale in the Stores utilizing a "Going-Out-of-Business" sale theme, which theme shall be in addition to such other sale themes set forth in the Agreements.

4.      "Merchandise" Definition.  Section A of the Agreements is hereby amended by deleting the first sentence thereof in its entirety and substituting the following in its place:

"For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores, distribution centers or warehouses (collectively, the "DCs"), in transit to or from the Stores or DCs, or on-order on the Sale Commencement Date (defined below)."

5.  Agent Fee; Expenses.

a)      Section E of each Agreement is hereby amended by deleting the first full paragraph appearing on page 4 thereof in its entirety and substituting the following in its place:

"(1)  In consideration of its services hereunder, Merchant shall pay Agent a "Base Fee" equal to one and one half percent (1.5%) of the Gross Proceeds of Merchandise sold at the Stores. For purposes of calculating the Base Fee under this Agreement, "Gross Proceeds" means gross receipts from sales of Merchandise during the Sale Term, net of applicable sales taxes.

(2)  In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following "Net Recovery Thresholds" (e.g., in each case, as calculated back to first dollar):"

b)      Section E of each Agreement is hereby amended by deleting the table outlining the "Gross Recovery Threshold" and "Agent Incentive Fee" with respect to Amendment 2 'Wave 3' Stores and Amendment 2 'Wave 4' Stores and substituting the following in its place:

2

| Net Recovery Threshold | Agent Incentive Fee |
|---|---|
| 39.0%-39.49% | An additional 0.875% of Net Proceeds |
| 39.50%-39.99% | An additional 1.125% of Net Proceeds |
| 40.00%-40.49% | An additional 1.375% of Net Proceeds |
| 40.50%-40.99% | An additional 1.625% of Net Proceeds |
| 41.00% and above | An additional 1.875% of Net Proceeds |

The Agent Incentive Fee referenced above as earned in each case shall be in addition to the Base Fee and shall be calculated back to the first dollar received; provided, that Agent agrees that in no event shall the Agent Incentive Fee with respect to Amendment 2 'Wave 3' Stores and Amendment 2 'Wave 4' Stores exceed $5,000,000 in the aggregate; provided, further, that any Agent Incentive Fee with respect to any Additional Stores shall be (i) subject to the mutual agreement of Merchant and Agent and (ii) based upon a grid calculated in the same manner as the above grid.  For purposes of the Agreements, as amended hereby, "Net Recovery" shall be determined based on the Expenses of the Sale identified in Exhibit C hereto and incorporated herein by reference.

c)      Section E of each Agreement is hereby amended by deleting the last full paragraph thereof in its entirety and substituting the following in its place:

"All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent or, with respect to the Additional Goods Fee, Merchant) shall be reconciled on every Wednesday for the prior week and shall be paid within seven (7) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent or, with respect to the Additional Agent Goods Fee, Merchant and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store."

6.      FF&E Disposition.  Section I of the Agreements are hereby amended as follows:  (i) all references to 'Stores' in Section I are hereby deleted and replaced with "Stores, DCs, and corporate office(s)"; (ii) the reference to "twenty-one (21) days" is hereby deleted and replaced with (iii) "seven (7) days"; and (iii) the reference to "ten percent (10%)" is hereby deleted and replaced with "twelve and one-half percent (12.5%)".

7.      Additional Agent Goods.  Each Agreements are hereby amended by adding new Section S as follows:

"Agent shall have the right to supplement the Merchandise in the Sale at the Stores with additional goods procured by Agent which are of like kind, and no lesser quality to the Merchandise in the Sale at the Stores ("Additional Agent Goods").  The Additional Agent Goods shall be purchased by Agent as part of the Sale, and delivered to the Stores.  Sales of Additional Agent Goods shall be run through Merchant's cash register systems; provided, however, that Merchant shall assist with marking, and Agent shall mark the Additional Agent Goods, using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise.  Agent and Merchant shall also cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Merchant goods.  Additionally, Agent shall provide signage in the Stores notifying customers that the Additional Agent Goods have been included in the Sale.

3

Consultant shall pay to Merchant an amount equal to seven and one-half percent (7.5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods completed during the Sale Term (the "Additional Consultant Goods Fee"), and Consultant shall retain all remaining amounts from the sale of the Additional Consultant Goods. Any amount due from Agent to Merchant in respect of the sale of Additional Agent Goods in accordance with this Section S shall paid not later than three (3) Business Days following the parties' completion of each weekly reconciliation with respect to sales of Additional Consultant Goods sold by Consultant during the prior week (or at such other mutually agreed upon time).

Agent and Merchant intend that the transactions relating to the Additional Agent Goods are, and shall be construed as, a true consignment from Agent to Merchant in all respects and not a consignment for security purposes. Subject solely to Agent's obligations to pay to Merchant the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds. The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent.

Merchant shall insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Merchant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code. Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, and Agent is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties and which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Goods and Additional Agent Goods proceeds)."

8.    Bankruptcy Matters.  The Agreements are hereby amended by adding new Section T as follows:

"If Merchant commences one or more cases under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), Merchant shall file a motion to assume this Agreement under section 365 of the Bankruptcy Code as part of its "first day" motions, and utilize its reasonable best efforts to ensure that such motion is approved by an order that provides, among other things, as follows:  (i) the payment of all fees and reimbursement of expenses hereunder to Agent is approved without further order of the court and shall be free and clear of all liens, claims and encumbrances; (ii) all such payments of fees and reimbursement of expenses shall be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iii) approval of the transaction contemplated hereby; (iv) authorizing the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations,

4

including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (v) authorizing the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (vi) approve the sale of Additional Agent Goods in accordance with the terms and conditions hereof; and (vii) take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.  In such event, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or *forum non conveniens*.  From and after entry of the Approval Order, Agent shall conduct the Sale in accordance with the terms of the Approval Order in all material respects."

---

For the avoidance of doubt, the Agreements, as amended by the Amendment to Letter Agreement dated August 26, 2022 (the "First Amendment") and all prior Work Orders shall continue to govern the Sale at any Stores where such Sale commenced prior to the date of this Second Amendment.

Merchant and Agent mutually agree that, no later than seven (7) days after the Sale Commencement Date, Merchant shall fund an advance to the Agent in an amount equal to the sum of [**$5,500,427**] in respect of the Sale Expenses identified in the Amendment 2 "Wave 3" and "Wave 4" Stores Expense Budgets annexed hereto as Exhibit B-1 and B-2, respectively. All other accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled in accordance with Section E herein. Any portion of the Sale Deposit not used to pay amounts contemplated by the Agreements shall be returned to Merchant (or its designee) within seven (7) business days following the final reconciliation.

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group, LLC ("Tiger"), Gordon Brothers Retail Partners, LLC ("GBRP"), and B. Riley Retail Solutions, LLC ("B. Riley"; and together with Tiger and GBRP the "Participants") on terms and conditions mutually agreed upon between the Agent and the Participants. Per the Merchant's request, Agent and GBRP shall co-lead all aspects of the transactions contemplated by the Agreements from and after the date hereof.

With respect to this Second Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in Section H of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in Section H of the Agreements.

This Amendment, together the Agreements and the First Amendment, all prior amendments, Work Orders, or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreements.

*[Remainder of Page Intentionally Left Blank;
Signatures Appear Next Page]*

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned. Thank you again for this opportunity -- we look forward to the opportunity to continue working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC,
As Agent (for itself and the Participants)

By: _____

Name:    Ian S. Fredericks

Its:    President

2/12/2023

**AGREED AND ACCEPTED** as of the ___ day of February, 2023:

**MERCHANT:**

BED BATH & BEYOND, INC.

By: _____

Name: Mara Sirhal

Its:  EVP Brand President, Bed Bath & Beyond

BUY BUY BABY, INC.

By: _____

Name: Patty Wu

Its:  SVP GM

HARMON STORES, INC., with respect to this Amendment and as an additional "Merchant" under the BB&B Agreement.

By: _____

Name: Mara Sirhal

Its:  EVP Brand President, Bed Bath & Beyond

6

EXHIBIT A

[To be inserted]

Bed Bath & Beyond.2023.Wave 3

Exhibit A-1

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 35 | BBBY-US | ANNAPOLIS | 200 Harker Place Suite 200 | Annapolis | MD | 21401 | 42,446 |
| 59 | BBBY-US | HIALEAH | 1460 W 49th St | HIALEAH | FL | 33012 | 26,238 |
| 64 | BBBY-US | WILMETTE | 3232 LAKE AVE, SUITE 125 | WILMETTE | IL | 60091 | 40,000 |
| 65 | BBBY-US | FAIRFAX TOWN CENTER | 12100 FAIRFAX TOWNE CENTER | FAIRFAX | VA | 22033 | 39,669 |
| 69 | BBBY-US | BRANDON | 320 BRANDON TOWN CENTER DRIVE | BRANDON | FL | 33511 | 40,000 |
| 83 | BBBY-US | PALM DESERT | 72459 HIGHWAY 111 | PALM DESERT | CA | 92260 | 39,874 |
| 92 | BBBY-US | BOCA RATON | 20560 STATE ROAD 7 | BOCA RATON | FL | 33498 | 41,500 |
| 102 | BBBY-US | BURLINGTON | 3 ABBOTT PARK | BURLINGTON | MA | 01803 | 43,000 |
| 106 | BBBY-US | CHESAPEAKE | 1324 GREENBRIER PARKWAY | CHESAPEAKE | VA | 23320 | 40,484 |
| 118 | BBBY-US | BUCKHEAD | 1 Buckhead Loop | ATLANTA | GA | 30326 | 40,000 |
| 125 | BBBY-US | BETHEL PARK | 1700 OXFORD DRIVE | BETHEL PARK | PA | 15102 | 39,988 |
| 150 | BBBY-US | BOYNTON BEACH | 371 N. CONGRESS AVENUE | BOYNTON BEACH | FL | 33426 | 37,560 |
| 165 | BBBY-US | BLOOMINGTON | 7961 SOUTHTOWN CENTER | BLOOMINGTON | MN | 55431 | 48,820 |
| 187 | BBBY-US | GENEVA | 1584 SOUTH RANDALL ROAD | GENEVA | IL | 60134 | 35,631 |
| 190 | BBBY-US | CRYSTAL LAKE | 5786 NORTHWEST HIGHWAY | CRYSTAL LAKE | IL | 60014 | 40,000 |
| 195 | BBBY-US | COLUMBUS | 3750 EASTON MARKET | COLUMBUS | OH | 43219 | 40,000 |
| 216 | BBBY-US | VANCOUVER | 7809B Vancouver Plaza Dr #102 | VANCOUVER | WA | 98662 | 26,909 |
| 243 | BBBY-US | OLATHE | 15335 W. 119TH STREET | OLATHE | KS | 66062 | 31,000 |
| 247 | BBBY-US | ELMSFORD | 251 East Main Street | ELMSFORD | NY | 10523 | 84,450 |
| 252 | BBBY-US | BRIDGEWATER | 155 PROMENADE BOULEVARD | BRIDGEWATER | NJ | 08807 | 40,415 |
| 269 | BBBY-US | FRANCONIA | 6642 LOISDALE ROAD | SPRINGFIELD | VA | 22150 | 37,809 |
| 282 | BBBY-US | WATERFORD LAKES | 397 North Alafaya Trail | ORLANDO | FL | 32828 | 30,616 |
| 291 | BBBY-US | CORAL SPRINGS | 4631 NORTH UNIVERSITY DRIVE | CORAL SPRINGS | FL | 33067 | 30,571 |
| 296 | BBBY-US | MONTGOMERYVILLE | 1261 KNAPP ROAD | North Wales | PA | 19454 | 32,037 |
| 312 | BBBY-US | Visalia | 3125 South Mooney Blvd. | Visalia | CA | 93277 | 25,000 |
| 347 | BBBY-US | Royal Palm Beach | 540 North State Road 7 | Royal Palm Beach | FL | 33411 | 30,000 |
| 367 | BBBY-US | Spartanburg | 205 West Blackstock Road | Spartanburg | SC | 29301 | 36,137 |
| 383 | BBBY-US | Hawthorne | 14351 Hindry Avenue | Hawthorne | CA | 90250 | 40,500 |
| 389 | BBBY-US | Mays Landing | 190 Hamilton Commons | Mays Landing | NJ | 08330 | 30,000 |
| 390 | BBBY-US | Springdale | 4350 Summit Plaza Drive | Louisville | KY | 40241 | 30,116 |
| 403 | BBBY-US | Memphis | 870 South White Station Road | Memphis | TN | 38117 | 26,408 |
| 406 | BBBY-US | West Plano | 6400 West Plano Parkway, Suite 125 | Plano | TX | 75093 | 25,000 |
| 429 | BBBY-US | Temple Town Square | 2112 SW HK Dodgen Loop | Temple | TX | 76504 | 24,920 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 3

Exhibit A-1

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 460 | BBBY-US | Sunset Hills | 10770 Sunset Hills Plaza | St Louis | MO | 63127 | 36,140 |
| 461 | BBBY-US | North Fayette | 160 Quinn Drive | Pittsburgh | PA | 15275 | 28,250 |
| 467 | BBBY-US | Gateway | 459 Gateway Drive | Brooklyn | NY | 11239 | 37,734 |
| 481 | BBBY-US | Lewisville | 420 East FM 3040 Suite 300 | Lewisville | TX | 75067 | 30,000 |
| 484 | BBBY-US | Orange Park | 6001 24 Argyle Forest Blvd | Jacksonville | FL | 32244 | 25,978 |
| 505 | BBBY-US | Carlsbad | 1905 Calle Barcelona Suite 100 | Carlsbad | CA | 92009 | 28,000 |
| 517 | BBBY-US | North Little Rock | 4122 McCain Blvd | North Little Rock | AR | 72117 | 25,500 |
| 553 | BBBY-US | Bulova | 72 15 25th Avenue | East Elmhurst | NY | 11370 | 29,847 |
| 555 | BBBY-US | Wilton | 3064 Route 50 | Saratoga Springs | NY | 12866 | 18,430 |
| 588 | BBBY-US | Chicago Ridge | 9650 S Ridgeland Avenue | Chicago Ridge | IL | 60415 | 31,596 |
| 621 | BBBY-US | Southington | 835 Queen Street | Southington | CT | 06489 | 22,877 |
| 763 | BBBY-US | Raynham | 600 South Street West, Suite 13 | Raynham | MA | 02767 | 25,398 |
| 764 | BBBY-US | Park City | 1678 W Redstone Center Drive | Park City | UT | 84098 | 21,366 |
| 773 | BBBY-US | Daphne | 6850 US Highway 90 Anchor D | Daphne | AL | 36526 | 20,322 |
| 781 | BBBY-US | Poughkeepsie | 2020 South Road, Suite 3 | Poughkeepsie | NY | 12601 | 25,174 |
| 785 | BBBY-US | Wethersfield | 1065 Silas Deane Highway | Wethersfield | CT | 06109 | 35,312 |
| 788 | BBBY-US | Mt Laurel | 8 Centerton Road | Mt. Laurel | NJ | 08054 | 30,200 |
| 789 | BBBY-US | Monroeville | 3739 William Penn Highway | Monroeville | PA | 15146 | 25,312 |
| 791 | BBBY-US | Forest Park | 215 Harlem Avenue | Forest Park | IL | 60130 | 24,809 |
| 819 | BBBY-US | Carroll County | 200 Clifton Blvd | Westminster | MD | 21157 | 23,000 |
| 844 | BBBY-US | North Dartmouth | 458 State Rd, Rt 6, Suite 100 | North Dartmouth | MA | 02747 | 27,704 |
| 849 | BBBY-US | Pittsfield | 665 Merrill Rd | Pittsfield | MA | 01201 | 23,573 |
| 850 | BBBY-US | Sayville | 5131 Sunrise Highway | Bohemia | NY | 11716 | 42,000 |
| 1023 | BBBY-US | Fairfield | 2260 Kings Highway | Fairfield | CT | 06824 | 34,267 |
| 1025 | BBBY-US | Upland | 1865 North Campus Avenue, Building #15 | Upland | CA | 91784 | 33,000 |
| 1027 | BBBY-US | Williamsburg | 4900 Monticello Ave, Suite 4 | Williamsburg | VA | 23188 | 23,133 |
| 1039 | BBBY-US | Butler | 1160 Route 23 North | Kinnelon | NJ | 07405 | 23,500 |
| 1043 | BBBY-US | Morgantown | 395 Target Way | Morgantown | WV | 26501 | 26,427 |
| 1047 | BBBY-US | 4 S Ranch | 10537 4S Commons Drive, Suite 170 | San Diego | CA | 92127 | 27,045 |
| 1052 | BBBY-US | Thornton | 16531 Washington Street | Thornton | CO | 80023 | 25,175 |
| 1063 | BBBY-US | Culver City | 10822 Jefferson Blvd | Culver City | CA | 90230 | 26,419 |
| 1072 | BBBY-US | Boise | 3615 S. Federal Way | Boise | ID | 83705 | 28,000 |
| 1079 | BBBY-US | Matawan | 1121 Highway 34, Suite A | Matawan | NJ | 07747 | 25,000 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 3**
Exhibit A-1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **Store List** | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1088 | BBBY-US | Wausau | 3575 Rib Mountain Drive | Wausau | WI | 54401 | 23,064 |
| 1089 | BBBY-US | North Chattanooga | 5523 Highway 153, Suite 112 | Hixson | TN | 37343 | 24,595 |
| 1093 | BBBY-US | Dedham | 820 Providence Highway | Dedham | MA | 02026 | 30,220 |
| 1113 | BBBY-US | Ocean City | 12641 Ocean Gateway Suite 240 | Ocean City | MD | 21842 | 23,404 |
| 1131 | BBBY-US | River City | 13221 City Station Drive, Suite 125 | Jacksonville | FL | 32218 | 25,000 |
| 1132 | BBBY-US | Delray Beach | 14824 South Military Trail | Delray Beach | FL | 33484 | 25,570 |
| 1137 | BBBY-US | Las Posas | 165 S. Las Posas Rd | San Marcos | CA | 92078 | 28,305 |
| 1139 | BBBY-US | Folsom | 2385 Iron Point Rd | Folsom | CA | 95630 | 35,000 |
| 1147 | BBBY-US | Loveland | 1605 Fall River Drive | Loveland | CO | 80538 | 23,402 |
| 1151 | BBBY-US | Signal Butte | 1834 South Signal Butte Rd | Mesa | AZ | 85209 | 28,042 |
| 1174 | BBBY-US | Enfield | 20 Hazard Avenue | Enfield | CT | 06082 | 24,801 |
| 1176 | BBBY-US | Glendora | 1405 East Gladstone Street | Glendora | CA | 91740 | 30,000 |
| 1218 | BBBY-US | Iowa City | 2515 Corridor Way Suite 5 | Coralville | IA | 52241 | 23,028 |
| 1230 | BBBY-US | Lake Success | 1490 Union Turnpike | New Hyde Park | NY | 11040 | 34,363 |
| 1311 | BBBY-US | Flemington | 276 Route 202/31 | Flemington | NJ | 08822-1759 | 34,486 |
| 1343 | BBBY-US | Winchester | 2540 S. Pleasant Valley Road | Winchester | VA | 22601 | 25,960 |
| 1353 | BBBY-US | Apopka | 2239 East Semoran Blvd | Apopka | FL | 32703 | 27,860 |
| 1395 | BBBY-US | Bismarck | 1455 East Lasalle Drive | Bismarck | ND | 58503 | 22,731 |
| 1413 | BBBY-US | Liberty View | 850 Third Avenue | Brooklyn | NY | 11232 | 49,731 |
| 1431 | BBBY-US | Dulles Landing | 24670 Dulles Landing Dr Unt150 | Dulles | VA | 20166-2670 | 36,016 |
| 1436 | BBBY-US | Walla Walla | 1630 W Poplar Street | Walla Walla | WA | 99362 | 18,400 |
| 3014 | BABY-US | Henrietta | 790 Jefferson Rd., Suite 300 | Rochester | NY | 14623-3254 | 29,407 |
| 3059 | BABY-US | Port Chester | 441 Boston Post Road | Port Chester | NY | 10573-4738 | 25,000 |
| 3102 | BABY-US | Liberty View (Brooklyn) | 850 Third Avenue | Brooklyn | NY | 11232 | 23,782 |
| 3135 | BABY-US | Lewisville | 719 Hebron Parkway | Lewisville | TX | 75057 | 30,117 |
| 3142 | BABY-US | No. Charleston | 5930 Rivers Ave | North Charleston | SC | 29406 | 28,200 |
| 8002 | HARMON-US | Wayne | 1595 -1 Route 23 South | Wayne | NJ | 07470 | 6,164 |
| 8003 | HARMON-US | Valley Ridge | 580 Valley Road | Wayne | NJ | 07470 | 5,550 |
| 8004 | HARMON-US | EAST HANOVER | 392 Route 10 West | East Hanover | NJ | 07936 | 5,200 |
| 8005 | HARMON-US | West Caldwell | 36 Clinton Road | West Caldwell | NJ | 07006 | 6,674 |
| 8007 | HARMON-US | Massapequa | 806 Hicksville Road | Massapequa | NY | 11758 | 6,300 |
| 8008 | HARMON-US | Closter | 123 Ver Valen Street | Closter | NJ | 07624 | 5,200 |
| 8015 | HARMON-US | Hackensack | 370 W. Pleasant View Avenue | Hackensack | NJ | 07601 | 6,090 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 3
Exhibit A-1

| Store List |
|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 8016 | HARMON-US | Manalapan | 357 Route 9 South | Manalapan | NJ | 07726 | 8,429 |
| 8018 | HARMON-US | Succusunna | 275 State Route 10 E. STE 350 | Succasunna | NJ | 07876 | 6,000 |
| 8020 | HARMON-US | PARAMUS | 145 Route 4 West | Paramus | NJ | 07652 | 8,350 |
| 8022 | HARMON-US | Melville | 925 Walt Whitman Road, Route 110 | Melville | NY | 11747 | 8,730 |
| 8023 | HARMON-US | Totowa | 465 Route 46 West | Totowa | NJ | 07512 | 6,108 |
| 8026 | HARMON-US | New Rochelle | 77 Quaker Ridge Road | New Rochelle | NY | 10804 | 6,760 |
| 8027 | HARMON-US | Raritan | 300 US Highway 202 | Raritan | NJ | 08869 | 6,130 |
| 8028 | HARMON-US | Matawan | 359 Route 34 North | Matawan | NJ | 07747 | 6,000 |
| 8029 | HARMON-US | Plainview | 1119 Old Country Road | Plainview | NY | 11803 | 8,088 |
| 8030 | HARMON-US | Franklin | 100 D Route 23 North, Franklin Shopping Center | Franklin | NJ | 07416 | 7,200 |
| 8031 | HARMON-US | Newton | 10 B Route 206 North | Newton | NJ | 07860 | 7,500 |
| 8033 | HARMON-US | Greenbrook | 303 Route 22 East | Greenbrook | NJ | 08812 | 6,500 |
| 8035 | HARMON-US | Carlstadt | 675 Paterson Avenue | Carlstadt | NJ | 07072 | 6,500 |
| 8036 | HARMON-US | Westfield | 335 South Avenue, East | Westfield | NJ | 07090 | 8,527 |
| 8037 | HARMON-US | Hartsdale | 165-171 Central Park Avenue | Hartsdale | NY | 10530 | 6,744 |
| 8038 | HARMON-US | Yonkers | 2131 Central Park Avenue | Yonkers | NY | 10710 | 6,455 |
| 8039 | HARMON-US | Millburn | 720 Morris Turnpike | Short Hills | NJ | 07078 | 8,536 |
| 8040 | HARMON-US | Shrewsbury | 550 Broad Street - Route 35 | Shrewsbury | NJ | 07702-4139 | 7,408 |
| 8041 | HARMON-US | Westwood | 700 Broadway, Suite 32 | Westwood | NJ | 07675 | 7,060 |
| 8043 | HARMON-US | Seaview Square | 2309-200 Route 66 | Ocean | NJ | 07712 | 6,450 |
| 8044 | HARMON-US | Mineola | 530 Jericho Turnpike | Mineola | NY | 11501 | 6,750 |
| 8045 | HARMON-US | Holmdel | 2145 Highway 35 - Holmdel Plaza | Holmdel | NJ | 07733 | 5,825 |
| 8049 | HARMON-US | WOODBRIDGE | 675 Route 1 South, Suite 2 | Iselin | NJ | 08830 | 5,906 |
| 8050 | HARMON-US | Poughkeepsie | 2600 South Road | Poughkeepsie | NY | 12601 | 5,600 |
| 8052 | HARMON-US | Clifton | 390 Route 3 West | Clifton | NJ | 07013 | 6,000 |
| 8053 | HARMON-US | BRICK | 479 Route 70 East | Brick | NJ | 08723 | 5,850 |
| 8054 | HARMON-US | Morris Plains | 1711 Route 10 East | Morris Plains | NJ | 07950 | 5,600 |
| 8055 | HARMON-US | East Brunswick | 300 Route 18 East | East Brunswick | NJ | 08816 | 5,500 |
| 8056 | HARMON-US | Nanuet | 46 Rockland Plaza / Route 59 | Nanuet | NY | 10954 | 5,292 |
| 8057 | HARMON-US | Carle Place | Carle Place Commons 167 Old Country Road | Carle Place | NY | 11514 | 4,114 |
| 8058 | HARMON-US | Edgewater | 725 River Road | Edgewater | NJ | 07020 | 5,482 |
| 8059 | HARMON-US | Commack | 8 Veterans Memorial Highway | Commack | NY | 11725 | 6,600 |
| 8063 | HARMON-US | Jupiter | 17450 N ALTERNATE A1A STE 101 | JUPITER | FL | 33477 | 5,500 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

## Bed Bath & Beyond.2023.Wave 3
### Exhibit A-1

| Store List |
|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 8064 | HARMON-US | Chelsea | 675 6TH AVENUE | New York | NY | 10010-5100 | 10,500 |
| 8066 | HARMON-US | DEPTFORD | 1765 DEPTFORD CENTER ROAD | Deptford | NJ | 08096 | 5,684 |
| 8067 | HARMON-US | Liberty View | 850 Third Ave. | Brooklyn | NY | 11232 | 10,504 |
| 8068 | HARMON-US | PASADENA | 3609 E Foothill Blvd | Pasadena | CA | 91107 | 6,421 |
| 8069 | HARMON-US | Boerum Place | 245 Atlantic Ave | Brooklyn | NY | 11201 | 6,178 |
| 8070 | HARMON-US | Gillette | 977 Valley Road | Gillette | NJ | 07933 | 5,478 |
| 8071 | HARMON-US | Summerlin | 2315 Summa Drive Suite 110 | Las Vegas | NV | 89135 | 6,233 |
| 8075 | HARMON-US | WEST LOS ANGELES | 10561 West Pico Blvd | Los Angelse | CA | 90064 | 6,293 |
| 8077 | HARMON-US | Broadway | 2171 Broadway | New York | NY | 10024 | 9,685 |
| 141 | | | | | | | 22,580 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 4
Exhibit A-2

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 12 | BBBY-US | NORWALK | 542 WESTPORT AVENUE | NORWALK | CT | 06851 | 47,581 |
| 38 | BBBY-US | SAN FRANCISCO | 555 9TH STREET | SAN FRANCISCO | CA | 94103 | 73,455 |
| 44 | BBBY-US | TROY | 650 JOHN R. ROAD | TROY | MI | 48083 | 36,400 |
| 58 | BBBY-US | KING OF PRUSSIA | 224 W. DEKALB PIKE | KING OF PRUSSIA | PA | 19406 | 42,101 |
| 60 | BBBY-US | FAIRLAWN | 3750 WEST MARKET ST UNIT K | FAIRLAWN | OH | 44333 | 35,860 |
| 80 | BBBY-US | DULUTH | 3675 SATELLITE BLVD. | DULUTH | GA | 30096 | 29,820 |
| 107 | BBBY-US | INDEPENDENCE | 19950 East Jackson Drive | INDEPENDENCE | MO | 64057 | 33,056 |
| 141 | BBBY-US | ALAMO | 522 Northwest Loop 410, Suite 103 | San Antonio | TX | 78216 | 40,015 |
| 151 | BBBY-US | NORTH KANSAS | 8201 N.W. ROANRIDGE ROAD | KANSAS CITY | MO | 64151 | 35,000 |
| 176 | BBBY-US | SHAWNEE | 15400 SHAWNEE MISSION PARKWAY | SHAWNEE | KS | 66217 | 37,827 |
| 177 | BBBY-US | KNOXVILLE | 244 MORRELL ROAD | KNOXVILLE | TN | 37919 | 40,000 |
| 186 | BBBY-US | YORBA LINDA | 23041 SAVI RANCH PKWY | YORBA LINDA | CA | 92887 | 43,000 |
| 219 | BBBY-US | BRENTWOOD | 8340 Eager Road | St Louis | MO | 63144 | 37,868 |
| 222 | BBBY-US | APPLETON | 4721 WEST GRANDE MARKET DRIVE | Appleton | WI | 54913 | 30,040 |
| 231 | BBBY-US | NORMAN | 620 Ed Noble Parkway | NORMAN | OK | 73072 | 23,306 |
| 242 | BBBY-US | DAVENPORT | 4022 EAST 53rd STREET | DAVENPORT | IA | 52807 | 30,914 |
| 258 | BBBY-US | ELIZABETH | 651 KAPKOWSKI ROAD | ELIZABETH | NJ | 07201 | 41,200 |
| 265 | BBBY-US | MANDEVILLE | 3414 HIGHWAY 190 SUITE 2 | MANDEVILLE | LA | 70471 | 30,500 |
| 283 | BBBY-US | BRUNSWICK | 197 GOLDEN ISLES PLAZA | BRUNSWICK | GA | 31520 | 25,000 |
| 284 | BBBY-US | COSTA MESA | 3900 SOUTH BRISTOL STREET | SANTA ANA | CA | 92704 | 32,071 |
| 288 | BBBY-US | WESTLAND | 35615 Warren Road | WESTLAND | MI | 48185 | 25,086 |
| 290 | BBBY-US | NORMAL | 1700 EAST COLLEGE AVENUE | NORMAL | IL | 61761 | 30,200 |
| 302 | BBBY-US | Reading | 2771 Paper Mill Road Space D | Wyomissing | PA | 19610 | 30,066 |
| 303 | BBBY-US | Watchung | 1511 US Highway 22 Suite 6 | Watchung | NJ | 07069 | 39,684 |
| 314 | BBBY-US | KENNEWICK | 1220 N. Columbia Center Blvd. | Kennewick | WA | 99336 | 31,002 |
| 316 | BBBY-US | NORTH BRUNSWICK | 873 Route 1 South | North Brunswick | NJ | 08902 | 31,841 |
| 324 | BBBY-US | HAGERSTOWN | 17716 Garland Groh Boulevard | Hagerstown | MD | 21740 | 30,000 |
| 331 | BBBY-US | San Luis Obispo | 317 Madonna Road | San Luis Obispo | CA | 93405 | 35,786 |
| 335 | BBBY-US | Peoria | 4800 North University Street | Peoria | IL | 61614 | 31,250 |
| 342 | BBBY-US | Cedar Rapids | 4840 1St Avenue NE | Cedar Rapids | IA | 52402 | 25,056 |
| 348 | BBBY-US | Marlton | 740 Route 73 South | Marlton | NJ | 08053 | 29,850 |
| 356 | BBBY-US | El Paso | 1327 George Dieter Drive | El Paso | TX | 79936 | 30,000 |
| 366 | BBBY-US | Rochester | 40 25th Street SE | Rochester | MN | 55904 | 30,282 |
| 369 | BBBY-US | Okemos | 1982 West Grand River Avenue | Okemos | MI | 48864 | 30,200 |
| 379 | BBBY-US | West Wichita | 2441 N Maize Road Suite 601 | Wichita | KS | 67205 | 25,000 |
| 395 | BBBY-US | Fort Wayne | 4020 West Jefferson Blvd. | Fort Wayne | IN | 46804 | 30,439 |
| 398 | BBBY-US | Shreveport | 7070 Youree Drive | Shreveport | LA | 71105 | 30,000 |
| 399 | BBBY-US | Holland | 3050 Beeline Road Suite 30 | Holland | MI | 49424 | 19,000 |
| 401 | BBBY-US | Ramsey | 225 Interstate Shopping Center | Ramsey | NJ | 07446 | 25,000 |
| 408 | BBBY-US | Northglenn | 241 West 104th Avenue | Northglenn | CO | 80234 | 25,100 |
| 409 | BBBY-US | Elk Grove | 9145 W Stockton Blvd | Elk Grove | CA | 95758 | 28,212 |
| 415 | BBBY-US | Kildeer | 20505 N Rend Road Suite 100 | Kildeer | IL | 60047 | 35,000 |
| 420 | BBBY-US | Saginaw | 4420 Bay Road | Saginaw | MI | 48603 | 31,519 |
| 427 | BBBY-US | Gastonia | 401 Cox Road Suite 105 | Gastonia | NC | 28054 | 24,000 |
| 438 | BBBY-US | Dillon | 318 Dillon Ridge Way | Dillon | CO | 80435 | 24,000 |
| 440 | BBBY-US | Hickory | 1835 Catawba Valley Blvd SE | Hickory | NC | 28602 | 30,000 |
| 443 | BBBY-US | Fairway Plaza | 5636 Fairmont Parkway | Pasadena | TX | 77505 | 27,985 |
| 444 | BBBY-US | Lees Summit | 1648 N W Chipman Road | Lee s Summit | MO | 64081 | 28,000 |
| 446 | BBBY-US | Flint | G 3605 Miller Road | Flint | MI | 48507 | 29,120 |
| 453 | BBBY-US | Manchester | 1698 Hale Road | Manchester | CT | 06040 | 30,000 |
| 463 | BBBY-US | Bellingham | 4255 Meridian Street | Bellingham | WA | 98226 | 28,000 |
| 464 | BBBY-US | North Raleigh | 9521 Strickland Road | Raleigh | NC | 27615 | 55,688 |
| 471 | BBBY-US | Grand Junction | 2464 US Highway 6 & 50 Ste 106 | Grand Junction | CO | 81505 | 24,864 |
| 473 | BBBY-US | Cumming | 1545 Marketplace Blvd | Cumming | GA | 30041 | 20,000 |
| 478 | BBBY-US | Corvallis | 1725 NW 9th Street | Corvallis | OR | 97330 | 20,000 |
| 480 | BBBY-US | Melbourne | 1555 West New Haven Avenue | West Melbourne | FL | 32904 | 26,194 |
| 483 | BBBY-US | Lynncroft | 3160 Evans Street Suite B | Greenville | NC | 27834 | 20,094 |
| 488 | BBBY-US | Vacaville | 128 Browns Valley Parkway | Vacaville | CA | 95688 | 31,600 |
| 515 | BBBY-US | Dewitt | 3409 Erie Blvd East Suite 150 | Dewitt | NY | 13214 | 25,000 |
| 519 | BBBY-US | Beaumont | 3975 Dowlen Road | Beaumont | TX | 77706 | 20,000 |
| 520 | BBBY-US | Portage | 5930 S Westnedge Avenue | Portage | MI | 49024 | 25,000 |
| 526 | BBBY-US | Purdue | 3555 State Road 38 East | LaFayette | IN | 47905 | 21,032 |
| 532 | BBBY-US | Amherst | 1583 Niagara Falls Blvd | Amherst | NY | 14228 | 25,000 |
| 533 | BBBY-US | Rivergate | 2156 Gallatin Road North | Madison | TN | 37115 | 25,715 |
| 543 | BBBY-US | Largo | 10500 Ulmerton Road Suite 310 | Largo | FL | 33771 | 24,006 |
| 548 | BBBY-US | Houma | 1636 Martin Luther King Blvd | Houma | LA | 70360 | 18,558 |
| 552 | BBBY-US | Minnetonka | 11240 Wayzata Boulevard | Minnetonka | MN | 55305 | 34,124 |
| 554 | BBBY-US | Harrisonburg | 283 Burgess Road | Harrisonburg | VA | 22801 | 21,322 |

Bed Bath & Beyond.2023.Wave 4
Exhibit A-2

| Store List | | | | | | |
|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 565 | BBBY-US | Lincoln Square | 1932 Broadway | New York | NY | 10023 | 65,000 |
| 574 | BBBY-US | ISSAQUAH | 775 NW Gilman Blvd Suite C1 | Issaquah | WA | 98027 | 24,909 |
| 576 | BBBY-US | East Mentor | 9700 Mentor Avenue | Mentor | OH | 44060 | 24,984 |
| 580 | BBBY-US | Lake Charles | 1768 W Prien Lake Road | Lake Charles | LA | 70601 | 20,000 |
| 582 | BBBY-US | Monroe | 4239 Pecanland Mall Drive | Monroe | LA | 71203 | 20,000 |
| 584 | BBBY-US | Sangamon | 3251 S Veterans Parkway | Springfield | IL | 62704 | 21,944 |
| 587 | BBBY-US | Chico | 2101 Martin Luther King Parkway, Suite 20 | Chico | CA | 95928 | 25,000 |
| 590 | BBBY-US | Mobile | 3250 Airport Blvd Suite 100 | Mobile | AL | 36606 | 24,565 |
| 594 | BBBY-US | East Madison | 4275 Lien Road | Madison | WI | 53704 | 25,000 |
| 596 | BBBY-US | The Columns | 1081 Vann Drive Suite 107 | Jackson | TN | 38305 | 20,000 |
| 607 | BBBY-US | Ridge Park | 4766 Ridge Road | Brooklyn | OH | 44144 | 24,150 |
| 630 | BBBY-US | Roanoke | 1421 Towne Square Blvd NW | Roanoke | VA | 24012 | 22,272 |
| 757 | BBBY-US | Cranberry | 20111 Route 19 Suite 12 | Cranberry Township | PA | 16066 | 23,634 |
| 770 | BBBY-US | East Northport | 3083 Jericho Turnpike | East Northport | NY | 11731 | 33,983 |
| 778 | BBBY-US | Sherman | 3710 Town Center Street | Sherman | TX | 75092 | 18,000 |
| 779 | BBBY-US | East Columbia | 6090 Garners Ferry Road, Suite C | Columbia | SC | 29209 | 25,000 |
| 790 | BBBY-US | Las Cruces | 2200 East Lohman Avenue | Las Cruces | NM | 88001 | 23,163 |
| 801 | BBBY-US | Tupelo | 3938 N. Gloster Street Suite E. | Tupelo | MS | 38804 | 23,000 |
| 803 | BBBY-US | Texarkana | 4248 St Michael Drive | Texarkana | TX | 75503 | 20,000 |
| 804 | BBBY-US | Upper Arlington | 1717 West Lane Avenue Unit D2 | Upper Arlington | OH | 43221 | 25,624 |
| 805 | BBBY-US | Germantown | 12940 Middlebrook Road | Germantown | MD | 20874 | 28,006 |
| 807 | BBBY-US | Frye Road | 3445 West Frye Road | Chandler | AZ | 85226-5008 | 26,998 |
| 815 | BBBY-US | Valparaiso | 91 Silhavy Road | Valparaiso | IN | 46383 | 23,094 |
| 829 | BBBY-US | Newburgh | 1399 Route #300 | Newburgh | NY | 12550 | 24,600 |
| 834 | BBBY-US | Hermitage | 4646 Lebanon Pike | Hermitage | TN | 37076 | 23,085 |
| 843 | BBBY-US | West Babylon | 825 West Montauk Highway | West Babylon | NY | 11704 | 29,875 |
| 845 | BBBY-US | Victoria | 7808 Zac Lentz Parkway | Victoria | TX | 77904 | 23,000 |
| 848 | BBBY-US | Topeka | 1900 B Southwest Wanamaker Road | Topeka | KS | 66604 | 30,116 |
| 1001 | BBBY-US | Pearland | 2750 Smith Ranch Road | Pearland | TX | 77584 | 25,000 |
| 1019 | BBBY-US | Ikea Drive | 300 Ikea Drive, Suite #10 | Paramus | NJ | 07652-1253 | 60,000 |
| 1022 | BBBY-US | Alamance | 1463 University Drive | Burlington | NC | 27215 | 22,684 |
| 1034 | BBBY-US | North Attleborough | 1360 South Washington Street, Unit #4 | North Attleboro | MA | 02760 | 32,000 |
| 1040 | BBBY-US | Manahawkin | 205 Route 72 West | Manahawkin | NJ | 08050 | 22,585 |
| 1045 | BBBY-US | Alexandria | 7690 B Richmond Highway | Alexandria | VA | 22306 | 25,000 |
| 1050 | BBBY-US | Promenade Mall | 5352 East Skelly Drive | Tulsa | OK | 74135 | 29,400 |
| 1062 | BBBY-US | Paducah | 5187 Hinkleville Road, Suite B | Paducah | KY | 42001 | 23,000 |
| 1065 | BBBY-US | Joplin | 409 South Geneva Avenue | Joplin | MO | 64801 | 22,813 |
| 1074 | BBBY-US | Glenwood Springs | 115 East Meadows Dr | Glenwood Springs | CO | 81601 | 23,000 |
| 1078 | BBBY-US | Downey | 12060 Lakewood Blvd. | Downey | CA | 90242 | 30,413 |
| 1090 | BBBY-US | Leominster | 76 Orchard Hill Park Drive | Leominster | MA | 01453 | 26,708 |
| 1111 | BBBY-US | Henrietta | 720 Jefferson Rd | Rochester | NY | 14623 | 29,592 |
| 1134 | BBBY-US | Aiken | 339 Fabian Drive | Aiken | SC | 29803 | 23,000 |
| 1135 | BBBY-US | Mechanicsburg | 6416 Carlisle Pike, Suite 2700 | Mechanicsburg | PA | 17050 | 29,983 |
| 1145 | BBBY-US | BLOOMINGTON | 731 College Mall Road South | Bloomington | IN | 47401 | 25,000 |
| 1153 | BBBY-US | Topsham | 147 Bath Road Suite A170 | Brunswick | ME | 04011-1430 | 22,267 |
| 1168 | BBBY-US | Helena | 2027 Cromwell Dixon Lane | Helena | MT | 59601 | 20,000 |
| 1170 | BBBY-US | Lake Lanier | 1025 Dawsonville Highway | Gainesville | GA | 30501 | 26,674 |
| 1183 | BBBY-US | Dothan | 4863 Montgomery Highway Suite 200 | Dothan | AL | 36303 | 23,403 |
| 1193 | BBBY-US | Rainbow & Arroyo | 7175 Arroyo Crossing Parkway | Las Vegas | NV | 89113 | 35,000 |
| 1194 | BBBY-US | TriBeCa | 270 Greenwich St | New York | NY | 10007 | 32,000 |
| 1198 | BBBY-US | Bristol | 442 Pinnacle Parkway | Bristol | TN | 37620 | 23,400 |
| 1199 | BBBY-US | Beaumont | 1642 E. 2nd Street Marketplace | Beaumont | CA | 92223 | 25,000 |
| 1216 | BBBY-US | Casper | 601 SE Wyoming Blvd., Suite 1124 | Casper | WY | 82609 | 20,436 |
| 1222 | BBBY-US | Moscow | 1966 Pullman Road | Moscow | ID | 83843 | 23,683 |
| 1225 | BBBY-US | Cheyenne | 5214 Rue Terre | Cheyenne | WY | 82009 | 22,732 |
| 1239 | BBBY-US | Weatherford | 225 Adams Drive Suite 235 | Weatherford | TX | 76086 | 20,400 |
| 1242 | BBBY-US | Noblesville | 14139 Town Center Boulevard Suite 800 | Noblesville | IN | 46060 | 25,078 |
| 1247 | BBBY-US | Eastchase | 7971 Eastchase Parkway | Montgomery | AL | 36117 | 28,000 |
| 1262 | BBBY-US | SE Fort Worth | 1551 North US Hwy 287 Suite 701 | Mansfield | TX | 76063 | 23,400 |
| 1273 | BBBY-US | West Tulsa | 7410 South Olympia Avenue | Tulsa | OK | 74132 | 25,000 |
| 1275 | BBBY-US | Fort Smith | 3955 Phoenix Avenue | Fort Smith | AR | 72903 | 23,400 |
| 1278 | BBBY-US | Moore | 2150 S. Service Road | Moore | OK | 73160 | 23,400 |
| 1284 | BBBY-US | Opelika | 2746 Enterprise Drive | Opelika | AL | 36801 | 23,400 |
| 1285 | BBBY-US | Hot Springs | 1454 Higdon Ferry Rd | Hot Springs | AR | 71913 | 23,400 |
| 1294 | BBBY-US | Plaistow | 58 Plaistow Road | Plaistow | NH | 03865 | 23,050 |
| 1302 | BBBY-US | CANTON | 1810 Cumming Highway Suite 850 | Canton | GA | 30115 | 23,391 |
| 1316 | BBBY-US | Hadley | 337 Russell Street | Hadley | MA | 01035 | 26,170 |
| 1320 | BBBY-US | Amherst Crossing | 123 Route 101A #E | Amherst | NH | 03031 | 20,327 |

Bed Bath & Beyond.2023.Wave 4
Exhibit A-2

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1339 | BBBY-US | Medford | 1600 North Riverside Ave | Medford | OR | 97501 | 29,853 |
| 1342 | BBBY-US | Columbia | 205 North Stadium Blvd | Columbia | MO | 65203 | 28,122 |
| 1346 | BBBY-US | Victor | 20 Square Dr. | Victor | NY | 14564 | 28,753 |
| 1350 | BBBY-US | Clarksville | 2829 Wilma Rudolph Blvd | Clarksville | TN | 37040 | 23,632 |
| 1356 | BBBY-US | Roseville | 2480 North Fairview Avenue | Roseville | MN | 55113 | 26,500 |
| 1374 | BBBY-US | Kenosha | 7450 Green Bay Road Suite A | Kenosha | WI | 53142 | 25,000 |
| 1375 | BBBY-US | Grand Island | 3416 W State Street | Grand Island | NE | 68803 | 20,142 |
| 1387 | BBBY-US | California | 23415 Three Notch Road, Unit 9-B | California | MD | 20619 | 23,400 |
| 1404 | BBBY-US | Sioux City | 5751 Sunnybrook Drive | Sioux City | IA | 51106 | 20,009 |
| 1414 | BBBY-US | Hudson | 17 Highland Commons East | Hudson | MA | 01749 | 24,660 |
| 1417 | BBBY-US | Guilford | 1919 Boston Post Rd Suite 310 | Guilford | CT | 06437 | 20,890 |
| 1451 | BBBY-US | Clackamus | 12535 SE 82nd Ave., Suite A | Clackamas | OR | 97015 | 42,842 |
| 1901 | BBBY-US | Kip's Bay | 460 3rd Ave | New York | NY | 10016 | 23,200 |
| 149 | | | | | | | 28,007 |

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | **Store List** | | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1 | BBBY-US | SPRINGFIELD | 715 MORRIS Turnpike | SPRINGFIELD | NJ | 07081 | 47,640 |
| 8 | BBBY-US | CANOGA PARK | 6530 CANOGA AVENUE | CANOGA PARK | CA | 91303 | 42,050 |
| 20 | BBBY-US | WEST LOS ANGELES | 11854 West Olympic Boulevard | Los Angeles | CA | 90064-1100 | 63,000 |
| 24 | BBBY-US | SANTA ROSA | 2785 SANTA ROSA AVE | SANTA ROSA | CA | 95407 | 35,000 |
| 25 | BBBY-US | STUDIO CITY | 12555 VENTURA BLVD | STUDIO CITY | CA | 91604 | 29,844 |
| 26 | BBBY-US | OAKLAND | 590 2ND STREET | OAKLAND | CA | 94607 | 18,793 |
| 27 | BBBY-US | CHERRY HILL | 2130 Marlton Pike W, Suite D | Cherry Hill | NJ | 08002 | 38,012 |
| 29 | BBBY-US | FALLS CHURCH | 5810 CROSSROADS CENTER WAY | FALLS CHURCH | VA | 22041 | 36,000 |
| 31 | BBBY-US | SAN DIEGO | 1750 CAMINO DEL RIO NORTH | SAN DIEGO | CA | 92108 | 77,925 |
| 32 | BBBY-US | DEERFIELD | 96 SOUTH WAUKEGAN ROAD | DEERFIELD | IL | 60015 | 47,000 |
| 33 | BBBY-US | ROCKVILLE | 1519 ROCKVILLE PIKE | ROCKVILLE | MD | 20852 | 50,204 |
| 37 | BBBY-US | LAKE GROVE | 2045 Smith Haven Plaza | Lake Grove | NY | 11755 | 64,776 |
| 40 | BBBY-US | ALBANY | 32 WOLF ROAD | ALBANY | NY | 12205 | 38,500 |
| 42 | BBBY-US | MANHATTAN | 620 6TH AVENUE | NEW YORK | NY | 10011 | 92,025 |
| 45 | BBBY-US | HOUSTON 45 | 17355 Tomball Parkway Suite 1J | Houston | TX | 77064 | 44,998 |
| 46 | BBBY-US | DADELAND | 8380 SOUTH DIXIE HIGHWAY | MIAMI | FL | 33143 | 60,000 |
| 47 | BBBY-US | TUCSON | 4811 E. GRANT ROAD, Suite 131 | TUCSON | AZ | 85712 | 36,518 |
| 49 | BBBY-US | STERLING HEIGHTS | 12020 HALL ROAD | STERLING HEIGHTS | MI | 48313 | 42,609 |
| 51 | BBBY-US | WEBSTER | 19801 GULF FREEWAY, SUITE 1000 | WEBSTER | TX | 77598 | 53,829 |
| 52 | BBBY-US | COLUMBIA 52 | 9021 SNOWDEN RIVER PARKWAY | COLUMBIA | MD | 21046 | 40,055 |
| 53 | BBBY-US | DOWNERS GROVE | 1548 BUTTERFIELD ROAD | DOWNERS GROVE | IL | 60515 | 73,572 |
| 54 | BBBY-US | WESTLAKE | 30083 DETROIT ROAD | WESTLAKE | OH | 44145 | 29,963 |
| 55 | BBBY-US | WEST PALM BEACH | 1875 Palm Beach Lakes Blvd A05 | WEST PALM BEACH | FL | 33401 | 32,400 |
| 61 | BBBY-US | PLANO | 801 WEST 15TH STREET, SUITE D | PLANO | TX | 75075 | 43,988 |
| 63 | BBBY-US | LINCOLN PARK | 1800 N. CLYBOURN AVE., SUITE A | CHICAGO | IL | 60614 | 32,972 |
| 66 | BBBY-US | KENNESAW | 840 ERNEST BARRETT PKWY Ste170 | KENNESAW | GA | 30144 | 35,000 |
| 67 | BBBY-US | ADDISON | 13900 Dallas Parkway | DALLAS | TX | 75240 | 54,337 |
| 68 | BBBY-US | DENVER 68 | 370 S Colorado Blvd | Glendale | CO | 80246 | 44,997 |
| 82 | BBBY-US | DALLAS | 8005 Park Lane | DALLAS | TX | 75231 | 53,500 |
| 86 | BBBY-US | TULSA | 10011 East 71st Street | TULSA | OK | 74133 | 42,000 |
| 87 | BBBY-US | OVERLAND PARK | 12035 METCALF | OVERLAND PARK | KS | 66213 | 50,028 |
| 88 | BBBY-US | HOUSTON 88 | 10515 KATY FREEWAY,SUITE A | HOUSTON | TX | 77024 | 47,900 |
| 97 | BBBY-US | AUSTIN 97 | 5400 BRODIE LANE SUITE 300 | AUSTIN | TX | 78745 | 42,098 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 5**
Exhibit A-3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **Store List** | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 98 | BBBY-US | BIRMINGHAM | 1771 MONTGOMERY HIGHWAY | HOOVER | AL | 35244 | 38,297 |
| 99 | BBBY-US | CARROLLWOOD | 13123 NORTH DALE MABRY HIGHWAY | TAMPA | FL | 33618 | 35,931 |
| 101 | BBBY-US | RANCHO CUCAMONGA | 11530 4th Street Suite 120 | Rancho Cucamonga | CA | 91730 | 26,000 |
| 103 | BBBY-US | ALPHARETTA | 6050 North Point Parkway | Alpharetta | GA | 30022 | 39,999 |
| 108 | BBBY-US | ROCKFORD | 6309 EAST STATE STREET | ROCKFORD | IL | 61108 | 35,800 |
| 110 | BBBY-US | CHARLOTTESVILLE | 975A NORTH EMMET STREET | CHARLOTTESVILLE | VA | 22903 | 36,450 |
| 111 | BBBY-US | ALBUQUERQUE | 2451 San Mateo Blvd NE Suite D | ALBUQUERQUE | NM | 87110 | 30,162 |
| 114 | BBBY-US | VIRGINIA BEACH | 220 CONSTITUTION DRIVE | VIRGINIA BEACH | VA | 23462 | 37,500 |
| 116 | BBBY-US | HUMBLE | 20514 HIGHWAY 59 N. | HUMBLE | TX | 77338 | 35,000 |
| 119 | BBBY-US | CANTON | 6725 STRIP AVENUE NW | NORTH CANTON | OH | 44720 | 40,000 |
| 121 | BBBY-US | WOLFCHASE | 2810 GERMANTOWN PARKWAY | MEMPHIS | TN | 38133 | 40,000 |
| 124 | BBBY-US | CARY | 405 CROSS ROADS BOULEVARD | CARY | NC | 27518 | 43,000 |
| 126 | BBBY-US | STAFFORD | 12520 FOUNTAIN LAKE CIRCLE | STAFFORD | TX | 77477 | 36,000 |
| 127 | BBBY-US | SANTA CLARA | 5201 STEVENS CREEK BLVD. | SANTA CLARA | CA | 95051 | 40,000 |
| 128 | BBBY-US | NAPLES | 5351 N. AIRPORT ROAD | NAPLES | FL | 34109 | 44,777 |
| 129 | BBBY-US | ARLINGTON | 4000 Retail Connection Way, Suite 101 | ARLINGTON | TX | 76018 | 30,000 |
| 132 | BBBY-US | MADISON | 215 JUNCTION ROAD | MADISON | WI | 53717 | 35,345 |
| 133 | BBBY-US | NAPERVILLE | 336 S Rt 59 | NAPERVILLE | IL | 60540 | 32,744 |
| 134 | BBBY-US | HUEBNER OAKS | 11745 IH 10 WEST SUITE 750 | SAN ANTONIO | TX | 78230 | 35,009 |
| 135 | BBBY-US | REGO PARK | 96-05 QUEENS BOULEVARD | REGO PARK | NY | 11374 | 45,997 |
| 136 | BBBY-US | PORTLAND | 16800 SOUTHWEST 72nd AVENUE | TIGARD | OR | 97224 | 36,000 |
| 137 | BBBY-US | DENVER WEST VILLAGE | 14383 WEST COLFAX AVENUE | GOLDEN | CO | 80401 | 36,273 |
| 138 | BBBY-US | THOUSAND OAKS | 121 SOUTH WESTLAKE BLVD | THOUSAND OAKS | CA | 91362 | 35,000 |
| 139 | BBBY-US | OCEANSIDE | 2120 VISTA WAY | OCEANSIDE | CA | 92054 | 38,008 |
| 147 | BBBY-US | BALLWIN | 141 Highlands Boulevard Drive | Manchester | MO | 63011 | 35,000 |
| 148 | BBBY-US | MOUNTAIN BROOK | 313 SUMMIT BOULEVARD | BIRMINGHAM | AL | 35243 | 30,056 |
| 149 | BBBY-US | BRAINTREE | 400 GROSSMAN DRIVE | BRAINTREE | MA | 02184 | 35,963 |
| 154 | BBBY-US | SOUTHSIDE | 8801-1 SOUTHSIDE BOULEVARD | JACKSONVILLE | FL | 32256 | 35,000 |
| 155 | BBBY-US | AUGUSTA | 221 ROBERT C. DANIEL,JR. PKWY | AUGUSTA | GA | 30909 | 37,500 |
| 156 | BBBY-US | HENRICO | 10050 WEST BROAD STREET | GLEN ALLEN | VA | 23060 | 40,000 |
| 157 | BBBY-US | MID-RIVERS | 281 MID RIVERS MALL DRIVE | ST. PETERS | MO | 63376 | 38,843 |
| 159 | BBBY-US | EAST HANOVER | 180 ROUTE 10 WEST | EAST HANOVER | NJ | 07936 | 50,182 |
| 160 | BBBY-US | WOODBRIDGE | 675 US Highway 1S, Suite 5 | ISELIN | NJ | 08830-3125 | 34,000 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 164 | BBBY-US | OKLAHOMA CITY | 2848 NW 63rd STREET | OKLAHOMA CITY | OK | 73116 | 40,739 |
| 166 | BBBY-US | ROSEVILLE 166 | 30801 GRATOIT ROAD | ROSEVILLE | MI | 48066 | 44,500 |
| 169 | BBBY-US | WALDORF | 3270 CRAIN HIGHWAY | WALDORF | MD | 20603 | 36,424 |
| 172 | BBBY-US | NEWPORT NEWS | 12132 A JEFFERSON AVENUE | NEWPORT NEWS | VA | 23602 | 41,929 |
| 173 | BBBY-US | DUBLIN | 4882 DUBLIN BLVD | DUBLIN | CA | 94568 | 35,472 |
| 178 | BBBY-US | ST. PETERSBURG | 2060 66th Street North | St. Petersburg | FL | 33710 | 36,926 |
| 181 | BBBY-US | WILLISTON | 115 TRADER LANE | WILLISTON | VT | 05495 | 40,000 |
| 183 | BBBY-US | PASADENA | 3341 EAST FOOTHILL BLVD | PASADENA | CA | 91107 | 40,000 |
| 188 | BBBY-US | FREDERICK | 5413 URBANA PIKE | FREDERICK | MD | 21704 | 38,700 |
| 189 | BBBY-US | CHANDLER | 850 N. 54TH STREET | CHANDLER | AZ | 85226 | 32,713 |
| 192 | BBBY-US | MIDLOTHIAN | 11609 MIDLOTHIAN TURNPIKE | MIDLOTHIAN | VA | 23113 | 40,000 |
| 194 | BBBY-US | FT. COLLINS | 110 W. TROUTMAN PARKWAY | FT. COLLINS | CO | 80525 | 50,695 |
| 196 | BBBY-US | TOWSON | 1238 PUTTY HILL AVENUE Suite 1 | TOWSON | MD | 21286 | 36,990 |
| 197 | BBBY-US | AVENTURA | 19205 BISCAYNE BLVD | AVENTURA | FL | 33180 | 45,000 |
| 199 | BBBY-US | COLUMBIA 199 | 136 HARBISON BLVD | COLUMBIA | SC | 29212 | 40,800 |
| 200 | BBBY-US | N. COLORADO SPRINGS | 1790 EAST WOODMEN ROAD | COLORADO SPRINGS | CO | 80920 | 38,000 |
| 202 | BBBY-US | GRAND RAPIDS | 4901 28TH STREET, SE | GRAND RAPIDS | MI | 49512 | 40,000 |
| 204 | BBBY-US | SOLON | 6025 KRUSE DRIVE SUITE 123 | SOLON | OH | 44139 | 40,000 |
| 207 | BBBY-US | DEPTFORD | 1755 Deptford Center Road | Deptford | NJ | 08096 | 38,094 |
| 208 | BBBY-US | RENO | 4983 S VIRGINIA STREET | RENO | NV | 89502 | 35,185 |
| 211 | BBBY-US | LINCOLN | 2960 PINE LAKE ROAD SUITE A | LINCOLN | NE | 68516 | 35,000 |
| 213 | BBBY-US | JENSEN BEACH | 2450 NW FEDERAL HIGHWAY | STUART | FL | 34994 | 34,900 |
| 214 | BBBY-US | CLEARWATER | 23676 US HWY 19 NORTH | CLEARWATER | FL | 33765 | 33,330 |
| 215 | BBBY-US | MISHAWAKA | 5802 GRAPE RD, SUITE B | MISHAWAKA | IN | 46545 | 38,042 |
| 224 | BBBY-US | BRICK | 51 CHAMBERSBRIDGE ROAD | BRICK | NJ | 08723 | 35,000 |
| 225 | BBBY-US | FRESNO | 7497 N. BLACKSTONE AVENUE | FRESNO | CA | 93720 | 36,725 |
| 227 | BBBY-US | JENKINTOWN | 905 OLD YORK ROAD | JENKINTOWN | PA | 19046 | 44,280 |
| 228 | BBBY-US | LITTLE ROCK | 12309 CHENAL PARKWAY SUITE A | LITTLE ROCK | AR | 72211 | 37,813 |
| 233 | BBBY-US | ARROWHEAD | 7340 WEST BELL ROAD | GLENDALE | AZ | 85308 | 38,000 |
| 235 | BBBY-US | SARASOTA | 6567 S. TAMIAMI TRAIL | SARASOTA | FL | 34231 | 40,000 |
| 236 | BBBY-US | DAYTONA BEACH | 2500 W. INTERNTL SPEEDWAY BLVD | DAYTONA BEACH | FL | 32114 | 34,945 |
| 237 | BBBY-US | MT. PLEASANT | 1744 TOWNE CENTRE WAY | MT. PLEASANT | SC | 29464 | 34,560 |
| 245 | BBBY-US | GAINESVILLE | 6855 NEWBERRY ROAD | GAINESVILLE | FL | 32605 | 30,500 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 5**
**Exhibit A-3**

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 248 | BBBY-US | BATON ROUGE | 10505 South Mall Drive | Baton Rouge | LA | 70809 | 35,017 |
| 250 | BBBY-US | LYNNWOOD | 3115 196th Street, SW | LYNNWOOD | WA | 98036 | 30,000 |
| 251 | BBBY-US | ALLENTOWN | 1223 WHITEHALL MALL | WHITEHALL | PA | 18052 | 43,971 |
| 254 | BBBY-US | MODESTO | 3900 SISK ROAD | MODESTO | CA | 95356 | 29,926 |
| 255 | BBBY-US | MILL CREEK | 1705 Mall of Georgia Blvd, Suite 4 | BUFORD | GA | 30519 | 33,889 |
| 260 | BBBY-US | WESTBURY | 950 Merchants Concourse | WESTBURY | NY | 11590 | 54,239 |
| 261 | BBBY-US | PLEASANT HILL | 15 CRESCENT DRIVE | PLEASANT HILL | CA | 94523 | 35,877 |
| 266 | BBBY-US | EATONTOWN | 92 ROUTE 36 | EATONTOWN | NJ | 07724 | 35,750 |
| 268 | BBBY-US | ASHEVILLE | 83G South Tunnel Road | Asheville | NC | 28805 | 38,772 |
| 271 | BBBY-US | Harrisburg | 5125 Jonestown Road Suite 425 | Harrisburg | PA | 17112 | 30,054 |
| 272 | BBBY-US | KATY MILLS | 24600 Katy Fwy Suite 100 | KATY | TX | 77494 | 38,000 |
| 273 | BBBY-US | PALM BEACH GARDENS | 2410 PGA BOULEVARD | PALM BEACH GARDENS | FL | 33410 | 37,525 |
| 275 | BBBY-US | MISSION VIEJO | 25732 EL PASEO | MISSION VIEJO | CA | 92691 | 35,000 |
| 278 | BBBY-US | FAYETTEVILLE | 3816 NORTH MALL AVENUE | FAYETTEVILLE | AR | 72703 | 30,000 |
| 279 | BBBY-US | SW DENVER 279 | 7421 WEST BOWLES AVENUE STE 1 | LITTLETON | CO | 80123-3096 | 35,000 |
| 285 | BBBY-US | Fort Myers | 13499 S Cleveland Ave Suite200 | Fort Myers | FL | 33907 | 30,587 |
| 289 | BBBY-US | MIDDLETOWN | 1115 Route 35 | MIDDLETOWN | NJ | 07748 | 35,843 |
| 292 | BBBY-US | OREM | 50 West 1300 South | Orem | UT | 84058 | 37,102 |
| 293 | BBBY-US | LOUISVILLE | 996 BRECKINRIDGE LANE | LOUISVILLE | KY | 40207 | 34,953 |
| 294 | BBBY-US | SUGARHOUSE | 1169 WILMINGTON AVENUE | SALT LAKE CITY | UT | 84106 | 18,395 |
| 295 | BBBY-US | BEVERLY HILLS | 31535 Southfield Road | Beverly Hills | MI | 48025 | 41,093 |
| 298 | BBBY-US | HILTON HEAD | 1460 FORDING ISLAND ROAD ST100 | BLUFFTON | SC | 29910 | 24,710 |
| 301 | BBBY-US | Rookwood | 2719 Edmondson Road | Cincinnati | OH | 45209 | 33,375 |
| 305 | BBBY-US | ROUND ROCK | 2701-A Parker Road Suite 400 | Round Rock | TX | 78681 | 30,500 |
| 307 | BBBY-US | Roseville 307 | 1120 Galleria Blvd Suite 140 | Roseville | CA | 95678 | 49,132 |
| 309 | BBBY-US | CHARLOTTE | 9559 South Boulevard | Charlotte | NC | 28273 | 37,000 |
| 311 | BBBY-US | SIMSBURY | 532 Bushy Hill Road | Simsbury | CT | 06070 | 30,321 |
| 313 | BBBY-US | ATHENS | 1791 Oconee Connector Suite350 | ATHENS | GA | 30606 | 24,000 |
| 315 | BBBY-US | Daly City | 303 Gellert Boulevard | Daly City | CA | 94015 | 33,030 |
| 317 | BBBY-US | WINSTON-SALEM | 1020 Hanes Mall Blvd. | Winston Salem | NC | 27103 | 37,153 |
| 318 | BBBY-US | MIDLAND | 3001-A101 West Loop 250 North | Midland | TX | 79705 | 27,426 |
| 319 | BBBY-US | EUGENE | 95 Oakway Center | Eugene | OR | 97401 | 30,013 |
| 321 | BBBY-US | LAFAYETTE | 3617 Ambassador Caffery | Lafayette | LA | 70503 | 42,749 |

C:\Users\ifredericks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\7Y6OT4XM\BBB Store List Budgets_SEND
2/5/2023 11:28 PM
Store List Wave 5

Page 12

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---------|----------------|------|---------|------|-------|-----|-----------------|
| 326 | BBBY-US | WICHITA | 2750 N Greenwich Ct | Wichita | KS | 67226 | 37,922 |
| 327 | BBBY-US | JOHNSON CITY | 3211 People Street Suite 25 | Johnson City | TN | 37604 | 24,925 |
| 328 | BBBY-US | Fargo | 4340 13th Avenue SW | Fargo | ND | 58103 | 30,000 |
| 330 | BBBY-US | Fort Worth | 4931 Overton Ridge Boulevard | Ft. Worth | TX | 76132 | 35,177 |
| 333 | BBBY-US | Meridian | 1350 North Eagle Road | Meridian | ID | 83642 | 38,146 |
| 336 | BBBY-US | Newtown | 20 West Road | Newtown | PA | 18940 | 30,000 |
| 337 | BBBY-US | The Waterfront | 490 Waterfront Drive East | Homestead | PA | 15120 | 38,000 |
| 338 | BBBY-US | Broadmoor | 2180 Southgate Road | Colorado Springs | CO | 80906 | 30,529 |
| 339 | BBBY-US | Cool Springs | 545 Cool Springs Boulevard | Franklin | TN | 37067 | 40,000 |
| 341 | BBBY-US | Southlake | 2930 East Southlake Blvd. | Southlake | TX | 76092 | 30,000 |
| 349 | BBBY-US | Greenville | 1117 Woodruff Road Suite D | Greenville | SC | 29607 | 35,000 |
| 350 | BBBY-US | Danvers | 180 Endicott Street | Danvers | MA | 01923 | 36,192 |
| 352 | BBBY-US | Amarillo | 3000 Soncy Road | Amarillo | TX | 79124 | 30,000 |
| 358 | BBBY-US | Youngstown | 550 Boardman Poland Road | Youngstown | OH | 44512 | 30,000 |
| 359 | BBBY-US | Davie | 1801 S University Drive | Davie | FL | 33324 | 28,170 |
| 362 | BBBY-US | Spokane | 5628 N Division Street | Spokane | WA | 99207 | 36,692 |
| 363 | BBBY-US | Greenwood | 723 US 31 North Suite A | Greenwood | IN | 46142 | 33,208 |
| 364 | BBBY-US | Taylor | 23871 Eureka Road | Taylor | MI | 48180 | 30,350 |
| 365 | BBBY-US | Bangor | 490 Stillwater Avenue | Bangor | ME | 04401 | 27,905 |
| 368 | BBBY-US | Novi | 43610 West Oaks Drive | Novi | MI | 48377 | 33,220 |
| 370 | BBBY-US | Saw Mill | 3708 W Dublin Grandville Road | Columbus | OH | 43235 | 40,075 |
| 371 | BBBY-US | Tukwila | 400 Strander Blvd | Tukwila | WA | 98188 | 45,633 |
| 372 | BBBY-US | Warwick | 1500 Bald Hill Road Suite B | Warwick | RI | 02886 | 41,878 |
| 375 | BBBY-US | Evansville | 280 North Green River Road | Evansville | IN | 47715 | 31,675 |
| 377 | BBBY-US | Wilkes Barre | 435 Arena Hub Plaza | Wilkes-Barre | PA | 18702 | 30,057 |
| 378 | BBBY-US | Rochester Hills | 1242 South Rochester Road | Rochester Hills | MI | 48307 | 38,243 |
| 380 | BBBY-US | Salem | 265 South Broadway, Suite 4 | Salem | NH | 03079 | 25,918 |
| 384 | BBBY-US | Hollywood | 1557 Vine Street | Hollywood | CA | 90028 | 30,054 |
| 385 | BBBY-US | East Boca | 1400C Glades Road | Boca Raton | FL | 33431 | 23,232 |
| 388 | BBBY-US | Tallahassee | 1574 Governors Square Blvd. | Tallahassee | FL | 32301 | 35,000 |
| 393 | BBBY-US | Dulles | 45575 Dulles Eastern Plaza STE 154 | Dulles | VA | 20166 | 35,000 |
| 394 | BBBY-US | Yonkers | 2141 Central Park Avenue | Yonkers | NY | 10710 | 40,000 |
| 400 | BBBY-US | Destin | 4441 Commons Drive East | Destin | FL | 32541 | 34,273 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---------|----------------|------|---------|------|-------|-----|-----------------|
| 402 | BBBY-US | Greendale | 5445 South 76th Street | Greendale | WI | 53129 | 33,014 |
| 404 | BBBY-US | Frisco | 2930 Preston Road Suite 400 | Frisco | TX | 75034 | 35,000 |
| 405 | BBBY-US | Huntsville | 6888 Governors West | Huntsville | AL | 35806 | 30,000 |
| 407 | BBBY-US | Bakersfield | 5000 Stockdale Highway | Bakersfield | CA | 93309 | 30,500 |
| 412 | BBBY-US | Seal Beach | 12390 Seal Beach Blvd | Seal Beach | CA | 90740 | 27,060 |
| 414 | BBBY-US | Apple Valley | 14910 Florence Trail | Apple Valley | MN | 55124 | 30,339 |
| 417 | BBBY-US | Puyallup | 4102 D South Meridian Street | Puyallup | WA | 98373 | 32,920 |
| 418 | BBBY-US | Wilmington | 352 South College Rd Unit 10B | Wilmington | NC | 28403 | 30,405 |
| 422 | BBBY-US | Henderson | 621 Marks Street | Henderson | NV | 89014 | 29,990 |
| 424 | BBBY-US | Port Charlotte | 18700 Veterans Blvd Unit 14 | Port Charlotte | FL | 33954 | 24,971 |
| 426 | BBBY-US | Onslow | 1305 Western Blvd | Jacksonville | NC | 28546 | 23,000 |
| 428 | BBBY-US | Clive | 11101 University Ave Suite A | Clive | IA | 50325 | 35,035 |
| 430 | BBBY-US | Northwoods | 1730 N Loop 1604 E Suite 107 | San Antonio | TX | 78232 | 30,256 |
| 431 | BBBY-US | Tanasbourne | 18043 NW Evergreen Parkway | Hillsboro | OR | 97006 | 34,487 |
| 432 | BBBY-US | Exton | 108 Bartlett Avenue | Exton | PA | 19341 | 34,571 |
| 433 | BBBY-US | South Portland | 200 Running Hill Road Suite 4 | South Portland | ME | 04106 | 30,448 |
| 435 | BBBY-US | Matthews | 10530 Northeast Parkway | Matthews | NC | 28105 | 25,000 |
| 436 | BBBY-US | Aurora | 5560 South Parker Road | Aurora | CO | 80015 | 34,980 |
| 437 | BBBY-US | Anderson Station | 146 Station Drive | Anderson | SC | 29621 | 22,398 |
| 439 | BBBY-US | Crofton | 2382 Brandermill Blvd Suite102 | Gambrills | MD | 21054 | 28,000 |
| 442 | BBBY-US | Kirby | 3102 Kirby Drive | Houston | TX | 77098 | 31,000 |
| 449 | BBBY-US | Warrington | 1015 Main Street | Warrington | PA | 18976 | 33,808 |
| 450 | BBBY-US | AUBURN | 366 Southbridge Street | Auburn | MA | 01501 | 22,325 |
| 454 | BBBY-US | Fort Lauderdale | 2701 N Federal Highway | Fort Lauderdale | FL | 33306 | 34,500 |
| 456 | BBBY-US | Maple Grove | 7950 Wedgewood Lane N | Maple Grove | MN | 55369 | 29,706 |
| 462 | BBBY-US | Centerville | 6142 Wilmington Pike | Dayton | OH | 45459 | 28,105 |
| 470 | BBBY-US | Columbus Park | 5555 Whittlesey Blvd Ste 1400 | Columbus | GA | 31909 | 25,000 |
| 475 | BBBY-US | Torrance | 2595 Pacific Coast Highway | Torrance | CA | 90505 | 39,061 |
| 476 | BBBY-US | West Nashville | 7657 Highway 70 South Suite112 | Nashville | TN | 37221 | 20,060 |
| 477 | BBBY-US | Route 46 | 545 Route 46 | Totowa | NJ | 07512 | 59,847 |
| 482 | BBBY-US | Woodbury | 8250 Tamarack Village | Woodbury | MN | 55125 | 29,530 |
| 485 | BBBY-US | Best In The West | 2100 N Rainbow Blvd Suite 110 | Las Vegas | NV | 89108 | 28,337 |
| 486 | BBBY-US | Skokie | 5545 W Touhy Avenue | Skokie | IL | 60077 | 36,500 |

C:\Users\ifredericks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\7Y6OT4XM\BBB Store List_Budgets_SEND
2/5/2023 11:28 PM
Store List Wave 5

Page 14

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|
| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
| 487 | BBBY-US | Hyannis | 65 Independence Drive | Hyannis | MA | 02601 | 36,570 |
| 490 | BBBY-US | Primrose | 3308 S Glenstone Avenue | Springfield | MO | 65804 | 30,050 |
| 492 | BBBY-US | Metairie | 4410 Veterans Memorial Blvd | Metairie | LA | 70006 | 52,053 |
| 497 | BBBY-US | Mc Donough | 1898 Jonesboro Road | McDonough | GA | 30253 | 19,978 |
| 502 | BBBY-US | Corpus Christi | 4717 S Padre Island Dr Suite F | Corpus Christi | TX | 78411 | 26,300 |
| 503 | BBBY-US | Summerlin Center | 2315 Summa Drive #180 | Las Vegas | NV | 89135 | 32,064 |
| 504 | BBBY-US | Woodlands | 1560 Lake Woodlands Drive | The Woodlands | TX | 77380 | 34,929 |
| 507 | BBBY-US | Sands | 3640 Long Beach Road | Oceanside | NY | 11572 | 37,236 |
| 514 | BBBY-US | Mesquite | 2705 N Mesquite Drive | Mesquite | TX | 75150 | 25,378 |
| 518 | BBBY-US | Vero Beach | 6150 20th Street | Vero Beach | FL | 32966 | 21,843 |
| 523 | BBBY-US | Ocala | 2701 SW College Road Suite 400 | Ocala | FL | 34474 | 20,000 |
| 524 | BBBY-US | Santa Fe | 4250 Cerrillos Road Suite 1214 | Santa Fe | NM | 87507 | 25,000 |
| 525 | BBBY-US | Pensacola | 5450 N 9th Avenue | Pensacola | FL | 32504 | 28,585 |
| 529 | BBBY-US | Savannah | 7400 Abercorn Street Suite 201 | Savannah | GA | 31406 | 35,005 |
| 535 | BBBY-US | Mc Allen | 620 E Expressway 83 | Mc Allen | TX | 78503 | 31,647 |
| 538 | BBBY-US | Riverside | 3700 Tyler Street Suite 14 | Riverside | CA | 92503 | 30,248 |
| 539 | BBBY-US | Redwood City | 1950 El Camino Real | Redwood City | CA | 94063 | 25,000 |
| 540 | BBBY-US | Capitola | 3555 Clares Street Suite J | Capitola | CA | 95010 | 24,380 |
| 542 | BBBY-US | Nashua | 261 Daniel Webster HWY Unit 1 | Nashua | NH | 03060 | 37,857 |
| 544 | BBBY-US | Edmond | 412 S Bryant Avenue | Edmond | OK | 73034 | 22,000 |
| 550 | BBBY-US | Newport | 288 East Main Road | Middletown | RI | 02842 | 25,373 |
| 551 | BBBY-US | Bradenton | 825 Cortez Road West | Bradenton | FL | 34207 | 25,395 |
| 556 | BBBY-US | St. Augustine | 320 CBL Drive | St Augustine | FL | 32086 | 20,000 |
| 557 | BBBY-US | Denton | 2315 Colorado Blvd Suite 180 | Denton | TX | 76205 | 30,281 |
| 558 | BBBY-US | Chattanooga | 2040 Hamilton Place Blvd | Chattanooga | TN | 37421 | 28,000 |
| 559 | BBBY-US | Coeur d Alene | 440 W Wilbur Avenue | Coeur d Alene | ID | 83815 | 20,215 |
| 560 | BBBY-US | Morganton Road | 5075 Morganton Road Suite 9C | Fayetteville | NC | 28314 | 29,427 |
| 562 | BBBY-US | Eureka | 3300 Broadway Space #340 | Eureka | CA | 95501 | 25,759 |
| 564 | BBBY-US | Westfield | 1950 6 Greyhound Pass | Carmel | IN | 46033 | 24,350 |
| 569 | BBBY-US | Country Club Plaza | 2725 Marconi Ave | Sacramento | CA | 95821 | 24,000 |
| 571 | BBBY-US | Lakeline | 11066 Pecan Park Blvd Bldg 1 | Cedar Park | TX | 78613 | 34,361 |
| 573 | BBBY-US | Scottsdale | 7000 E Mayo Blvd Building 12 | Phoenix | AZ | 85054 | 35,000 |
| 577 | BBBY-US | San Patricio | 100 Ave San Patricio | Guaynabo | PR | 00966 | 40,500 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 579 | BBBY-US | Miami International | 10640 NW 19th Street | Miami | FL | 33172 | 28,053 |
| 585 | BBBY-US | College Station | 1430 Texas Avenue South | College Station | TX | 77840 | 24,722 |
| 589 | BBBY-US | Gulfport | 3951 Promenade Parkway | Diberville | MS | 39540 | 23,437 |
| 591 | BBBY-US | Avondale | 10060 W Mc Dowell Road | Avondale | AZ | 85323 | 25,063 |
| 592 | BBBY-US | West Ashley | 946 Orleans Road Suite E1 | Charleston | SC | 29407 | 23,683 |
| 605 | BBBY-US | Parker | 11435 Twenty Mile Road | Parker | CO | 80134 | 23,000 |
| 606 | BBBY-US | Surprise | 13723 W Bell Road | Surprise | AZ | 85374 | 25,000 |
| 611 | BBBY-US | Murfreesboro | 2615 Medical Cntr Prkwy St1200 | Murfreesboro | TN | 37129 | 25,625 |
| 615 | BBBY-US | Abilene | 3417 Catclaw Drive | Abilene | TX | 79606 | 18,043 |
| 623 | BBBY-US | Frankfort | 11165 W Lincoln Highway | Frankfort | IL | 60423 | 25,000 |
| 626 | BBBY-US | Idaho Falls | 3011 S 25th East | Idaho Falls | ID | 83406 | 20,062 |
| 632 | BBBY-US | Lubbock | 2624 W Loop 289 | Lubbock | TX | 79407 | 29,954 |
| 756 | BBBY-US | Bedford | 5 Colby Court Unit 3 | Bedford | NH | 03110 | 35,753 |
| 762 | BBBY-US | Traverse City | 3301 N US 31 South | Traverse City | MI | 49684 | 25,000 |
| 765 | BBBY-US | Fredericksburg | 3700 Plank Road | Fredericksburg | VA | 22407 | 28,977 |
| 766 | BBBY-US | Oracle | 6310 N Oracle Road | Tucson | AZ | 85704 | 31,638 |
| 768 | BBBY-US | North Cincinnati | 5800 Deerfield Road | Mason | OH | 45040 | 30,000 |
| 769 | BBBY-US | Waco | 4633 S Jack Kultgen Exwy ST102 | Waco | TX | 76706 | 25,187 |
| 771 | BBBY-US | West Omaha | 255 N 170th Street | Omaha | NE | 68118 | 30,000 |
| 772 | BBBY-US | Myrtle Beach | 2400 Coastal Grand Circle | Myrtle Beach | SC | 29577 | 25,121 |
| 774 | BBBY-US | Patterson Place | 3616 Witherspoon Blvd. Suite 103 | Durham | NC | 27707 | 33,839 |
| 775 | BBBY-US | Bethlehem | 4449 Southmont Way | Easton | PA | 18045 | 28,159 |
| 776 | BBBY-US | Redlands | 27450 Lugonia Avenue | Redlands | CA | 92374 | 28,445 |
| 777 | BBBY-US | St. George | 844 W Telegraph Street | Washington City | UT | 84780 | 22,054 |
| 780 | BBBY-US | Potomac Mills | 14101 Crossing Place | Woodbridge | VA | 22192 | 35,000 |
| 783 | BBBY-US | Riverdale | 4113 Riverdale Road | Ogden | UT | 84405 | 23,046 |
| 800 | BBBY-US | Sir Barton Way | 2321 Sir Barton Way, Suite 120 | Lexington | KY | 40509 | 35,000 |
| 808 | BBBY-US | Kissimmee | 3212 North John Young Parkway | Kissimmee | FL | 34741 | 24,897 |
| 810 | BBBY-US | Somerville | 119 Middlesex Avenue | Somerville | MA | 02145 | 38,012 |
| 812 | BBBY-US | Bend | 63455 N. Highway 97, Suite 113 | Bend | OR | 97703 | 22,859 |
| 820 | BBBY-US | Goleta | 189 North Fairview Ave | Goleta | CA | 93117 | 23,922 |
| 821 | BBBY-US | Ventura | 4040 East Main Street | Ventura | CA | 93003 | 27,718 |
| 825 | BBBY-US | Mc Kinney | 2975 Craig Drive | McKinney | TX | 75072 | 28,016 |

C:\Users\ifredericks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\7Y6OT4XM\BBB Store List Budgets_SEND
2/5/2023 11:28 PM
Store List Wave 5

Page 16

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

| | | Store List | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 832 | BBBY-US | Raleigh Triangle | 3604 Sumner Blvd, Suite 104 | Raleigh | NC | 27616 | 32,000 |
| 833 | BBBY-US | Viera | 2291 Town Center Ave, Suite 101 | Melbourne | FL | 32940 | 24,329 |
| 837 | BBBY-US | Brookfield | 14 Candlewood Lake Road | Brookfield | CT | 06804 | 37,640 |
| 838 | BBBY-US | Highlands Ranch | 9315 Dorchester Street, Suite 100 | Highlands Ranch | CO | 80129 | 23,000 |
| 839 | BBBY-US | Green Bay | 825 Pilgrim Way Suite B | Green Bay | WI | 54304 | 24,296 |
| 841 | BBBY-US | Concord | 10 Loudon Road | Concord | NH | 03301 | 23,325 |
| 1002 | BBBY-US | San Antonio | 6001 NW Loop 410 Suite #120 | San Antonio | TX | 78238 | 28,000 |
| 1011 | BBBY-US | Aberdeen | 200 Aberdeen Commons, 11088 US 15-501 Highw | Aberdeen | NC | 28315 | 22,975 |
| 1014 | BBBY-US | Moreland Avenue | 1235 Caroline Street NE | Atlanta | GA | 30307 | 23,606 |
| 1021 | BBBY-US | Omaha | 1220 South 71st Street | Omaha | NE | 68106 | 32,000 |
| 1024 | BBBY-US | Rockwall | 963 East Interstate Highway 30 | Rockwall | TX | 75087 | 23,000 |
| 1028 | BBBY-US | Lakeland | 1500 Town Center Drive | Lakeland | FL | 33803 | 30,000 |
| 1030 | BBBY-US | La Quinta | 79-110 Hwy 111 | La Quinta | CA | 92253 | 30,000 |
| 1033 | BBBY-US | Gilbert | 2793 S Market St, Suite 101 | Gilbert | AZ | 85296 | 31,957 |
| 1035 | BBBY-US | Turkey Creek | 11263 Parkside Drive, Suite 612 | Knoxville | TN | 37934 | 25,000 |
| 1044 | BBBY-US | Plymouth | 200 Colony Place | Plymouth | MA | 02360 | 25,072 |
| 1053 | BBBY-US | Crestview Hills | 2757 Town Center Blvd | Crestview Hills | KY | 41017 | 26,989 |
| 1056 | BBBY-US | Hamburg | 3701 McKinley Parkway | Blasdell | NY | 14219 | 25,000 |
| 1059 | BBBY-US | Clarence | 4401 Transit Road | Williamsville | NY | 14221 | 30,000 |
| 1069 | BBBY-US | Cypress | 25839 US Highway 290 | Cypress | TX | 77429 | 30,000 |
| 1073 | BBBY-US | Kalispell | 2411 Highway 93 North | Kalispell | MT | 59901 | 23,000 |
| 1077 | BBBY-US | Camelback | 1919 East Camelback Road, Suite #128 | Phoenix | AZ | 85016 | 22,660 |
| 1082 | BBBY-US | Franklin Park | 5135 Monroe Street | Toldeo | OH | 43623 | 32,154 |
| 1091 | BBBY-US | Rio Grande | 3201 Rt 9 South, Unit B | Rio Grande | NJ | 08242 | 22,600 |
| 1094 | BBBY-US | Akers Mills | 2955 Cobb Parkway, Suite 110 | Atlanta | GA | 30339 | 29,000 |
| 1096 | BBBY-US | Clifton | 404 State Route 3 | Clifton | NJ | 07014 | 24,080 |
| 1097 | BBBY-US | Murrieta | 24450 Village Walk Place | Murrieta | CA | 92562 | 33,000 |
| 1107 | BBBY-US | San Marcos | 1050 McKinley Place Dr, Bldg 2, Suite 220 | San Marcos | TX | 78666 | 23,000 |
| 1108 | BBBY-US | Longmont | 205 Ken Pratt Blvd., Suite 240 | Longmont | CO | 80501 | 28,028 |
| 1110 | BBBY-US | Miracle Market Place | 3301 Coral Way | Miami | FL | 33145 | 30,250 |
| 1112 | BBBY-US | Rutland | 322 Route 7 South | Rutland | VT | 05701 | 24,000 |
| 1115 | BBBY-US | Bozeman | 2155 West Cattail St | Bozeman | MT | 59718 | 19,711 |
| 1117 | BBBY-US | Conroe | 2920 Interstate 45 N. | Conroe | TX | 77303 | 24,686 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 5**
**Exhibit A-3**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | **Store List** | | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1119 | BBBY-US | Peachtree City | 1245 North Peachtree Parkway | Peachtree City | GA | 30269 | 23,401 |
| 1125 | BBBY-US | North Naples | 13585 Tamiami Trail N. Unit #6 | Naples | FL | 34110 | 25,002 |
| 1126 | BBBY-US | North Greensboro | 1618 Highwoods Blvd | Greensboro | NC | 27410 | 30,000 |
| 1127 | BBBY-US | Keizer | 6180 Ulali Drive | Keizer | OR | 97303 | 28,048 |
| 1129 | BBBY-US | Olympia | 2405 4th Avenue West | Olympia | WA | 98502 | 28,000 |
| 1130 | BBBY-US | East Vancouver | 16701 South East Mill Plain Blvd | Vancouver | WA | 98684 | 28,000 |
| 1133 | BBBY-US | Cottonwood Commons | 3601 Old Airport Road, Suite A | Albuquerque | NM | 87114 | 28,000 |
| 1138 | BBBY-US | Jacksonville Beach | 4054 South 3rd Street | Jacksonville Beach | FL | 32250 | 29,000 |
| 1142 | BBBY-US | Rogers | 2203 Promenade Boulevard, Suite 20210 | Rogers | AR | 72758 | 30,000 |
| 1143 | BBBY-US | East Colonial | 3228 East Colonial Drive | Orlando | FL | 32803 | 27,761 |
| 1149 | BBBY-US | Sioux Falls | 3800 South Louise Ave, Suite 2 | Sioux Falls | SD | 57106 | 40,843 |
| 1150 | BBBY-US | AUGUSTA | 42 Whitten Road, Suite 1 | Augusta | ME | 04330 | 25,846 |
| 1154 | BBBY-US | Petoskey | 910 Spring Street | Petoskey | MI | 49770 | 21,000 |
| 1157 | BBBY-US | Missoula | 3017 Paxson Street | Missoula | MT | 59801 | 21,641 |
| 1161 | BBBY-US | Mueller | 1201 Barbara Jordan Blvd, Suite 200 | Austin | TX | 78723 | 25,000 |
| 1162 | BBBY-US | 202 & Dobson | 837 North Dobson Road | Mesa | AZ | 85201 | 30,000 |
| 1175 | BBBY-US | Anchorage | 601 E Dimond Blvd | Anchorage | AK | 99518 | 29,486 |
| 1177 | BBBY-US | DC USA | 3100 14th Street NW | Washington | DC | 20010 | 33,940 |
| 1179 | BBBY-US | Mooresville | 627 River Highway | Mooresville | NC | 28117 | 28,000 |
| 1190 | BBBY-US | Gulf Shores | 3800 Gulf Shores Parkway, Suite 300 | Gulf Shores | AL | 36542 | 25,000 |
| 1203 | BBBY-US | Willowbrook | 7175 Kingery Highway | Willowbrook | IL | 60527 | 28,000 |
| 1207 | BBBY-US | Northgate Mall | 401 NE Northgate Way Suite 2100 | Seattle | WA | 98125 | 28,176 |
| 1209 | BBBY-US | Wesley Chapel | 5845 Wesley Grove Boulevard | Wesley Chapel | FL | 33544 | 30,000 |
| 1212 | BBBY-US | Euless | 2800 Highway 121 Suite 600 | Euless | TX | 76039 | 28,000 |
| 1227 | BBBY-US | Foxboro | 330 Patriot Place | Foxborough | MA | 02035 | 30,000 |
| 1234 | BBBY-US | Lady Lake | 546 N. Highway 441 | Lady Lake | FL | 32159 | 28,000 |
| 1237 | BBBY-US | Morehead City | 5160 Highway 70 Suite 600 | Morehead City | NC | 28557 | 20,400 |
| 1244 | BBBY-US | Portsmouth | 100 Durgin Lane | Portsmouth | NH | 03801 | 37,843 |
| 1258 | BBBY-US | Hingham | 9 Shipyard Drive | Hingham | MA | 02043 | 28,102 |
| 1259 | BBBY-US | Flowood | 760 Mackenzie Lane | Flowood | MS | 39232 | 25,000 |
| 1260 | BBBY-US | Sandy | 10433 South State Street | Sandy | UT | 84070 | 28,000 |
| 1265 | BBBY-US | Warner Robins | 3060 Watson Boulevard | Warner Robins | GA | 31093 | 20,000 |
| 1266 | BBBY-US | Bear Valley Road | 18815 Bear Valley Road | Apple Valley | CA | 92308 | 25,000 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1268 | BBBY-US | University Town Center | 111 N Cattlemen Rd | Sarasota | FL | 34243 | 35,029 |
| 1291 | BBBY-US | West El Paso | 655 Sunland Park Drive, Suite I | El Paso | TX | 79912 | 25,002 |
| 1304 | BBBY-US | Cape Coral | 1827 NE Pine Island Road | Cape Coral | FL | 33909 | 27,978 |
| 1305 | BBBY-US | Palm Springs | 5200 E. Ramon Road Building B | Palm Springs | CA | 92264 | 28,245 |
| 1307 | BBBY-US | Prescott | 3250 Gateway Blvd Ste. 508 | Prescott | AZ | 86303 | 30,078 |
| 1308 | BBBY-US | Schererville | 124 US Highway 41 | Schereville | IN | 46375 | 34,163 |
| 1309 | BBBY-US | Hamilton | 160 Marketplace Boulevard | Hamilton | NJ | 08691 | 30,704 |
| 1310 | BBBY-US | Billings | 2821 King Ave West | Billings | MT | 59102 | 35,115 |
| 1312 | BBBY-US | Collierville | 4610 Merchants Park Circle Suite 501 | Collierville | TN | 38017 | 28,307 |
| 1313 | BBBY-US | Southaven | 6400 Towne Center Loop | Southaven | MS | 38671 | 25,080 |
| 1314 | BBBY-US | Riverhead | 1440 Old Country Road Suite 300 | Riverhead | NY | 11901 | 30,031 |
| 1317 | BBBY-US | The Forum | 8262 Agora Parkway | Selma | TX | 78154 | 34,000 |
| 1321 | BBBY-US | Durango | 800 South Camino Del Rio | Durango | CO | 81301 | 25,492 |
| 1326 | BBBY-US | Pearlridge | 145 Kaonohi St | Aiea | HI | 96701 | 45,901 |
| 1327 | BBBY-US | Stroudsburg | 143 Radio Drive | Stroudsburg | PA | 18360 | 25,192 |
| 1331 | BBBY-US | LANCASTER | 2350 Lincoln Highway East Suite 100 | Lancaster | PA | 17602 | 42,923 |
| 1333 | BBBY-US | Rapid City | 1365 Eglin Street | Rapid City | SD | 57701 | 23,400 |
| 1336 | BBBY-US | BURLINGTON | 1915 Marketplace Drive | Burlington | WA | 98233 | 27,203 |
| 1338 | BBBY-US | Winter Garden | 3215 Daniels Road | Winter Garden | FL | 34787 | 28,633 |
| 1341 | BBBY-US | Christiana | 331 West Main Street | Newark | DE | 19702 | 37,500 |
| 1365 | BBBY-US | Longview | 422 W Loop 281 Suite 200 | Longview | TX | 75605 | 24,960 |
| 1367 | BBBY-US | Panama City Beach, FL | 15600 Panama City Beach Pkwy | Panama City Beach | FL | 32413 | 23,774 |
| 1372 | BBBY-US | Silverdale | 9991 Mickelberry Road NW | Silverdale | WA | 98383 | 28,900 |
| 1392 | BBBY-US | Denham Springs | 10129 Crossing Way Suite 420 | Denham Springs | LA | 70726 | 23,400 |
| 1403 | BBBY-US | Flower Mound | 6101 Long Prairie RD Suite 200 | Flower Mound | TX | 75028 | 29,967 |
| 1405 | BBBY-US | Holly Springs | 208 Grand Hill Place | Holly Springs | NC | 27540 | 23,400 |
| 1409 | BBBY-US | Tuscaloosa | 1320 McFarland Blvd E BLDG 300 | Tuscaloosa | AL | 35404 | 23,000 |
| 1422 | BBBY-US | Rehoboth Beach | 30134 Veterans Way | Rehoboth Beach | DE | 19971 | 23,550 |
| 3001 | BABY-US | ROCKVILLE | 1683 Rockville Pike | Rockville | MD | 20852-1619 | 42,296 |
| 3002 | BABY-US | Scarsdale | 1019 Central Park Ave | Scarsdale | NY | 10583 | 32,200 |
| 3003 | BABY-US | PARAMUS | 34 East Ridgewood Ave | Paramus | NJ | 07652-3613 | 63,479 |
| 3005 | BABY-US | WESTBURY | 895 East Gate Blvd | Garden City | NY | 11530-2104 | 50,000 |
| 3006 | BABY-US | Totowa | 545 Route 46 West | Totowa | NJ | 07512-1735 | 33,766 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|
| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
| 3007 | BABY-US | MANHATTAN | 3 Enterprise Ave N. Suite 3 | Secaucus | NY | 07094 | 34,532 |
| 3008 | BABY-US | SPRINGFIELD | 6398 Springfield Plaza | Springfield | VA | 22150-3431 | 28,000 |
| 3009 | BABY-US | DOWNERS GROVE | 1556 Butterfield Road | Downers Grove | IL | 60515-1003 | 35,445 |
| 3010 | BABY-US | CHERRY HILL | 1590 Kings Highway North | Cherry Hill | NJ | 08034 | 30,226 |
| 3011 | BABY-US | Utica | 13361 Hall Road, Suite 102 | Utica | MI | 48315-5884 | 32,180 |
| 3012 | BABY-US | Canton | 42595 Ford Road | Canton | MI | 48187-3381 | 32,000 |
| 3013 | BABY-US | Columbus (Easton) | 3749 Easton Market | Columbus | OH | 43219-6023 | 27,430 |
| 3015 | BABY-US | CORAL SPRINGS | 2035 N. University Drive | Coral Springs | FL | 33071-6132 | 22,865 |
| 3016 | BABY-US | Greenwood | 1230 N. US 31, Suite A | Greenwood | IN | 46142-4501 | 31,168 |
| 3017 | BABY-US | Schaumburg, IL | 580 E. Golf Road | Schaumburg | IL | 60173-4442 | 32,800 |
| 3018 | BABY-US | Austin | 5400 Brodie Lane, Suite 400 | Austin | TX | 78745-2526 | 28,730 |
| 3019 | BABY-US | Augusta, GA | 242  Robert C. Daniels Jr. Parkway | Augusta | GA | 30909-0803 | 26,735 |
| 3021 | BABY-US | Plano, TX | 2712 N. Central Expressway | Plano | TX | 75074 | 28,008 |
| 3022 | BABY-US | Chandler, AZ | 2640 W. Chandler Blvd. | Chandler | AZ | 85224 | 35,606 |
| 3023 | BABY-US | Scottsdale, AZ | 10080 N. 90th Street | Scottsdale | AZ | 85258 | 34,920 |
| 3024 | BABY-US | Carolina Pavillion, NC | 9555 South Blvd | Charlotte | NC | 28273-6901 | 31,278 |
| 3025 | BABY-US | Flagler | 8241 West Flagler Street, Suite 100 | Miami | FL | 33144 | 29,953 |
| 3026 | BABY-US | Whitehall (Allentown), PA | 1915 Whitehall Mall | Whitehall | PA | 18052-5119 | 30,322 |
| 3027 | BABY-US | Addison | 13900 Dallas Parkway | Dallas | TX | 75240-4323 | 33,586 |
| 3028 | BABY-US | Nashua | 213 Daniel Webster Highway | Nashua | NH | 03060-6600 | 30,491 |
| 3029 | BABY-US | BRANDON | 11345 Causeway Blvd | Brandon | FL | 33511-2904 | 35,150 |
| 3031 | BABY-US | Hoover | 4351 Creekside Ave. | Hoover | AL | 35244-5019 | 33,843 |
| 3033 | BABY-US | ALPHARETTA | 7121 North Point Parkway | Alpharetta | GA | 30022-8255 | 40,787 |
| 3034 | BABY-US | San Jose | 5353 Almaden Expressway Suite A 100 | San Jose | CA | 95118-3637 | 37,849 |
| 3036 | BABY-US | Colonie | 1440 Central Avenue | Colonie | NY | 12205-5118 | 37,210 |
| 3037 | BABY-US | BRIDGEWATER | 711 Route 28 | Bridgewater | NJ | 08807-2401 | 32,206 |
| 3038 | BABY-US | Brookfield | 665 Main Street | Brookfield | WI | 53005 | 32,888 |
| 3039 | BABY-US | Frisco | 2930 Preston Rd Suite 600 | Frisco | TX | 75034-9055 | 32,746 |
| 3040 | BABY-US | CRYSTAL LAKE | 5540 Northwest Hwy | Crystal Lake | IL | 60014-8016 | 27,000 |
| 3042 | BABY-US | Lexington | 2321 Sir Barton Way Suite 110 | Lexington | KY | 40509-2434 | 32,498 |
| 3043 | BABY-US | Temecula | 40438 Winchester Road | Temecula | CA | 92591 | 28,897 |
| 3044 | BABY-US | North Cincinnati (Deerfield) | 5255 Deerfield Blvd. | Mason | OH | 45040-2509 | 27,400 |
| 3046 | BABY-US | Christiana | 501 West Main St. | Newark | DE | 19702-1534 | 30,057 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| Store List | | | | | | |
|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3047 | BABY-US | Grand Rapids (Kentwood) | 4100 28th Street SE | Kentwood | MI | 49512-1904 | 34,500 |
| 3048 | BABY-US | FRESNO | 7458 N Blackstone Ave | Fresno | CA | 93720-4301 | 28,037 |
| 3049 | BABY-US | Pembroke Pines | 11360 Pines Blvd | Pembroke Pines | FL | 33026-4102 | 31,000 |
| 3050 | BABY-US | Morrisville | 3121 Market Center Drive | Morrisville | NC | 27560 | 25,000 |
| 3051 | BABY-US | Rivers Edge | 4030 East 82nd Street | Indianapolis | IN | 46250 | 26,148 |
| 3052 | BABY-US | Hurst | 1451 West Pipeline Road | Hurst | TX | 76053-4628 | 33,862 |
| 3053 | BABY-US | TULSA | 10017 East 71st Street | Tulsa | OK | 74133-3210 | 28,000 |
| 3054 | BABY-US | Fort Worth | 4648 SW Loop 820 | Fort Worth | TX | 76109 | 29,549 |
| 3055 | BABY-US | PLEASANT HILL | 3250 Buskirk Ave Suite 300A | Pleasant Hill | CA | 94523-7309 | 30,163 |
| 3056 | BABY-US | SNELLVILLE | 1670 Scenic Hwy N Suite 124 | Snellville | GA | 30078-2132 | 28,790 |
| 3057 | BABY-US | OVERLAND PARK | 12055 Metcalf Avenue | Overland Park | KS | 66213-1121 | 30,000 |
| 3058 | BABY-US | Elk Grove | 7621 Laguna Blvd | Elk Grove | CA | 95758-5061 | 31,079 |
| 3060 | BABY-US | BRAINTREE | 160 Granite St. | Braintree | MA | 02184-1747 | 33,508 |
| 3062 | BABY-US | INDEPENDENCE | 20000 East Jackson Drive | Independence | MO | 64057-1568 | 28,245 |
| 3063 | BABY-US | Encinitas | 1014 N El Camino Real | Encinitas | CA | 92024 | 27,260 |
| 3064 | BABY-US | NAPERVILLE | 324 S Route 59 | Naperville | IL | 60540-3924 | 22,903 |
| 3065 | BABY-US | Woodbury | 9160 Hudson Road | Woodbury | MN | 55125-7001 | 28,487 |
| 3066 | BABY-US | Sandy | 10230 South State Street | Sandy | UT | 84070-4115 | 32,928 |
| 3067 | BABY-US | WEBSTER | 19801 Gulf Freeway Suite 800 | Webster | TX | 77598-3802 | 30,000 |
| 3070 | BABY-US | BALLWIN | 15355A Manchester Road | Ballwin | MO | 63011-3026 | 28,150 |
| 3071 | BABY-US | Jacksonville | 8801 Southside Blvd Unit 10 | Jacksonville | FL | 32256-0796 | 25,000 |
| 3072 | BABY-US | Altamonte Springs | 130 E Altamonte Dr Suite 1000 | Altamonte Springs | FL | 32701-4324 | 27,013 |
| 3073 | BABY-US | W DesMoines | 4100 University Ave Ste 115 | West Des Moines | IA | 50266-5958 | 25,938 |
| 3074 | BABY-US | E. Colonial (Orlando) | 3206 East Colonial Drive | Orlando | FL | 32803-5121 | 25,205 |
| 3076 | BABY-US | Torrance | 3700 Torrance Blvd. | Torrance | CA | 90503-4808 | 36,566 |
| 3080 | BABY-US | Potomac Mills | 2700 Potomac Mills Circle, Suite 100 | Woodbridge | VA | 22192-4651 | 38,243 |
| 3081 | BABY-US | West Long Branch | 310 Route 36 | West Long Branch | NJ | 07764-1026 | 22,223 |
| 3083 | BABY-US | Amherst | 1261 Niagara Falls Blvd Ste 1 | Amherst | NY | 14226-1160 | 29,484 |
| 3084 | BABY-US | MISSION VIEJO | 25322 El Paseo | Mission Viejo | CA | 92691-6906 | 36,033 |
| 3086 | BABY-US | KNOXVILLE | 202 Morrell Road | Knoxville | TN | 37919-5876 | 25,000 |
| 3087 | BABY-US | ALBUQUERQUE | 2451 San Mateo Blvd NE Suite C | Albuquerque | NM | 87110-4417 | 27,839 |
| 3088 | BABY-US | Roseville | 1120 Galleria Blvd Suite 160 | Roseville | CA | 95678-1992 | 29,436 |
| 3090 | BABY-US | Maplewood | 3200 Laclede Station Suite D | St Louis | MO | 63143-3709 | 24,638 |

C:\Users\ifredericks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\7Y6OT4XM\BBB Store List  Budgets_SEND
2/5/2023 11:28 PM

Store List Wave 5

Page 21

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3091 | BABY-US | Willowbrook | 17355 Tomball Parkway Suite 1K | Houston | TX | 77064-1180 | 29,250 |
| 3092 | BABY-US | DEPTFORD | 1745 Deptford Center Road | Deptford | NJ | 08096-5662 | 24,963 |
| 3093 | BABY-US | Beachwood (Harvard Park) | 4045 Richmond Road | Warrensville Heights | OH | 44122-6048 | 25,446 |
| 3094 | BABY-US | Livingston | 530 W Mount Pleasant Avenue | Livingston | NJ | 07039-1740 | 25,356 |
| 3095 | BABY-US | YORBA LINDA | 22999 Savi Ranch Parkway | Yorba Linda | CA | 92887-3095 | 25,418 |
| 3096 | BABY-US | RANCHO CUCAMONGA | 11530 4th Street Suite 125 | Rancho Cucamonga | CA | 91730-3096 | 24,000 |
| 3097 | BABY-US | Redlands | 27651 San Bernardino Ave Ste 110 | Redlands | CA | 923745030 | 22,047 |
| 3098 | BABY-US | Tukwila | 17686 Southcenter Parkway | Tukwila | WA | 98188-3705 | 25,165 |
| 3099 | BABY-US | West Hills | 6621 Fallbrook Avenue, Unit B | West Hills | CA | 91307-3520 | 20,500 |
| 3100 | BABY-US | KENNESAW | 2555 Cobb Place Lane NW Ste 50 | Kennesaw | GA | 30144-6871 | 25,526 |
| 3101 | BABY-US | Omaha | 12204 K Plaza | Omaha | NE | 25,032 | 25,032 |
| 3103 | BABY-US | MONTGOMERYVILLE | 751 Horsham Rd Unit B1 | Landsdale | PA | 19446-6489 | 23,084 |
| 3104 | BABY-US | WICHITA | 2756 N Greenwich Ct | Wichita | KS | 67226-3104 | 14,931 |
| 3105 | BABY-US | Aurora | 6492 South Parker Road | Aurora | CO | 80016-1080 | 23,505 |
| 3106 | BABY-US | Southlake | 2901 East State Hwy 114 | Southlake | TX | 76092-6694 | 23,428 |
| 3108 | BABY-US | Daly City | 149 Serramonte Center | Daly City | CA | 94015-3108 | 22,006 |
| 3109 | BABY-US | Katy | 24600 Katy Fwy Suite 200 | Katy | TX | 77494-3109 | 23,000 |
| 3110 | BABY-US | Franklin | 2000 Mallory Lane, Suite 400 | Franklin | TN | 37067-8208 | 23,947 |
| 3111 | BABY-US | Pharr (McAllen) | 500 N Jackson Road #A2 | Pharr | TX | 78577 | 25,056 |
| 3112 | BABY-US | Summerlin | 2315 Summa Drive Suite 120 | Las Vegas | NV | 89135-1460 | 26,315 |
| 3113 | BABY-US | Dulles Landing (Chantilly) | 24670 Dulles Landing Dr., Unit 130 | Dulles | VA | 20166-2628 | 23,205 |
| 3115 | BABY-US | FAYETTEVILLE | 2716 Freedom Parkway Drive | Fayetteville | NC | 28314-3115 | 18,294 |
| 3116 | BABY-US | Dayton | 6146 Wilmington Pike | Dayton | OH | 45459-7007 | 20,082 |
| 3117 | BABY-US | Cedar Park | 5001 183A Toll Road Suite I100 | Cedar Park | TX | 78613-7937 | 26,036 |
| 3118 | BABY-US | CHULA VISTA | 1660 Millenia Ave | Chula Vista | CA | 91915 | 15,000 |
| 3119 | BABY-US | ARROWHEAD | 7375 W Bell Rd | Peoria | AZ | 85382 | 21,315 |
| 3120 | BABY-US | BATON ROUGE | 5919 Bluebonnet Blvd | Baton Rouge | LA | 70836 | 18,300 |
| 3121 | BABY-US | West Hartford | 1433 New Britain Avenue | West Haetford | CT | 06110 | 24,910 |
| 3122 | BABY-US | HUMBLE | 20416 Highway 59N | Humble | TX | 77338-3122 | 34,875 |
| 3124 | BABY-US | Beaverton | 3485 SW Cedar Hills Blvd S170 | Beaverton | OR | 97005-1309 | 17,595 |
| 3125 | BABY-US | San Antonio | 522 Northwest Loop 410, Suite 108 | San Antonio | TX | 78216-5551 | 20,086 |
| 3126 | BABY-US | STAFFORD | 12710 Fountain Lake Circle | Stafford | TX | 77477-3705 | 18,283 |
| 3128 | BABY-US | Clackamas | 12535 SE 82nd Ave., Suite B | Clackamas | OR | 97015-9734 | 16,968 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A-3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Store List** | | | | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3129 | BABY-US | Westlake (Crocker Park) | 292 Main Street | Westlake | OH | 44145-3129 | 14,400 |
| 3130 | BABY-US | WOODBRIDGE | 675 US Highway 1S, Suite 1 | Iselin | NJ | 08830-3152 | 21,794 |
| 3131 | BABY-US | Concord | 8062 Concord Mills Blvd., Suite 20 | Concord | NC | 28027-4417 | 17,920 |
| 3132 | BABY-US | Littleton | 5134 South Wadsworth Blvd. | Lakewood | CO | 80123 | 23,024 |
| 3134 | BABY-US | Tyler | 8934 S. Broadway Ave., Ste 448 | Tyler | TX | 75703-5420 | 23,595 |
| 3136 | BABY-US | Henderson | 535 N. Stephanie Street | Henderson | NV | 89014-6613 | 20,008 |
| 3137 | BABY-US | Southfield | 28512 Telegraph Road | Southfield | MI | 48034 | 25,000 |
| 3138 | BABY-US | Westminster | 9350 North Sheridan Blvd. | Westminster | CO | 80031-6304 | 25,343 |
| 3139 | BABY-US | MADISON | 201 Junction Rd | Madison | WI | 53717 | 22,192 |
| 3140 | BABY-US | Granger | 435 E. University Drive | Granger | IN | 46530 | 24,779 |
| 472 | | | | | | | 31,704 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

DocuSign Envelope ID: 535172F3-F355-4338-9D2B-0A2180F09291

EXHIBIT B

[To be inserted]

8

## Bed Bath & Beyond.2023.Wave 3
### Exhibit B-1

| Expense Budget (1) | |
|---|---|
| | |

| **Advertising** | |
|---|---:|
| Media | 348,651 |
| Signs (2) | 1,243,315 |
| Sign Walkers | 743,246 |
| Subtotal Advertising | 2,335,212 |
| | |
| **Supervision** | |
| Fees / Wages / Expenses (3) | 2,990,272 |
| Subtotal Supervision | 2,990,272 |
| | |
| Miscellaneous /Legal (4) | 30,000 |
| | |
| **Total Expenses** | 5,355,483 |

Notes:

1. This Expense Budget contemplates a sale term starting January, 26, 2023 (in 3 locations, 59,106 & 505) and starting January 28,2023 in the remaining locations and running  through March 26, 2023.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

## Bed Bath & Beyond.2023.Wave 4
### Exhibit B-2

| Expense Budget (1) |
| --- |

**Advertising**

| | |
| --- | ---: |
| Media | 597,232 |
| Signs (2) | 1,313,857 |
| Sign Walkers | 994,016 |
| Subtotal Advertising | 2,905,106 |

**Supervision**

| | |
| --- | ---: |
| Fees / Wages / Expenses (3) | 2,336,759 |
| Subtotal Supervision | 2,336,759 |

| | |
| --- | ---: |
| Miscellaneous /Legal (4) | 30,000 |

| | |
| --- | ---: |
| Total Expenses | 5,271,864 |

Notes:

1. This Expense Budget contemplates a sale term of February, 4, 2023 through
   April 9, 2023.  The Expense Budget remains subject to modification in the event
   that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.
3. Includes Deferred Compensation and Insurance.
4. Any legal expenses associated with issues raised by or disputes with landlords,
   including (without limitation) negotiations in respect of landlord side letters,
   shall be in addition to and not part of the budgeted legal expenses.

## Bed Bath & Beyond.2023.Wave 5
### Exhibit B-3

| Expense Budget (1) |
| --- |

**Advertising**

| | |
| --- | --- |
| Media | 3,533,514 |
| Signs (2) | 4,162,018 |
| Sign Walkers | 4,452,930 |
| Subtotal Advertising | 12,148,462 |

**Supervision**

| | |
| --- | --- |
| Fees / Wages / Expenses (3) | 10,967,225 |
| Subtotal Supervision | 10,967,225 |

| | |
| --- | --- |
| Miscellaneous /Legal (4) | 240,000 |

| | |
| --- | --- |
| Total Expenses | 23,355,687 |

Notes:

1. This Expense Budget contemplates a sale term of February, 4, 2023 through April 26, 2023.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

## EXHIBIT C

For purposes of calculating "Net Recovery", (1) "Expenses" of the Sale shall mean those Store-level operating expenses directly attributable to and which arise during the Sale Term, limited to the following: (a) actual Occupancy Expenses for the Stores on a per location and per diem basis, plus the portion of any percentage rent obligations allocable to the sale of Merchandise and Additional Consultant Goods during the Sale; (b) actual wages and commissions for all Store-level employees used in conducting the Sale for actual days/hours worked during the Sale Term; (c) amounts payable by Merchant for benefits for Store-level employees used in conducting the Sale (including payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits); (d) all costs and expenses associated with Agent's on-site supervisors; (e) all costs and expenses associated with advertising of the Sale, including banners, sign-walkers, and interior and exterior signs that are produced for the Sale, other promotional costs including, without limitation, email blasts, digital advertising, television, ROP, other advertising and direct mail attributable to the Sale and ordered or requested by Agent; (f) postage/overnight delivery/courier charges to and from or among the Stores to the extent relating to the Sale; (g) credit card and bank card fees, chargebacks, and discounts relating to the Sale; (h) any and all costs of moving, transferring, or consolidating Merchandise between the Stores; (i) a pro rata portion for the Sale Term of Merchant's premiums in respect of general liability, casualty, property, inventory, and other insurance policies attributable to the Merchandise, the Stores and the Distribution Centers; (j) third-party payroll processing fees associated with the Sale; (k) armored car service and security personnel; (l) Agent's (i) actual cost of capital, (ii) reasonable legal fees and expenses attributable to the Sale Term, and (iii) bank fees and wire charges; and (m) [Reserved]; and (2) "Expenses" of the Sale shall exclude "Central Service Expenses" and "Distribution Center Expenses".

As used herein, the following terms have the following meanings:

"Central Service Expenses" means costs and expenses for Merchant's Central Services.

"Central Services" means those Merchant central administrative services necessary for the conduct and support of the Sale, including, but not limited to, use or and access to Merchant's: (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities, (v) MIS and POS services, (vi) cash and inventory reconciliation, (vii) central administrative services and personnel to process and perform sales audit, banking, and other normal course administrative services customarily provided to or for the benefit of operating the Stores and Distribution Centers and including data processing and reporting, email preparation and distribution, information technology and e-commerce platform updates, functionality, and maintenance, (viii) such other central office services reasonably necessary (in the reasonable judgment of the Agent) for the Sale, and (vii) to use reasonably sized offices located at Merchant's central office facility to effect the Sale.

"Distribution Center Expenses" means the actual costs and expenses, including use and Occupancy Expenses and Distribution Center employee payroll and other obligations, of the operations of the Distribution Centers, and the actual costs and expenses (including outbound freight) related to the processing, transfer, and consolidation of Merchandise and supplies in the Distribution Centers and from the Distribution Centers to the Stores.

"Occupancy Expenses" means rent, percentage rent, common-area maintenance, landlord promotional fees, real estate and use taxes, merchant association dues and charges, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, routine repairs and maintenance, taxes and licenses, costs of all local, long-distance, and international telephone, satellite broadband connections, T-1 lines, broadband internet, and other telecommunications services, trash removal (to the extent excluded as a fixed charge component of lease obligation), snow removal, and ordinary course third-party cleanings, and pest control services.



April 22, 2023

<u>*VIA EMAIL*</u>

Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc.
650 Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

Re:     **Third Amendment to Letter Agreements**

Derek:

Reference is made to (i) that certain letter agreement dated September 11, 2020 by and between Hilco Merchant Resources, LLC ("<u>Agent</u>" or a "<u>Party</u>") and Bed Bath & Beyond Inc. ("<u>BB&B</u>" or a "<u>Party</u>") (as amended, modified, supplemented or restated and in effect from time to time, the "<u>BB&B Agreement</u>") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("<u>BBB</u>" or a "<u>Party</u>"; together with BB&B, the "<u>Merchant</u>"; collectively with BB&B and Agent, the "<u>Parties</u>") (as amended, modified, supplemented or restated and in effect from time to time, the "<u>BBB Agreement</u>"; the BB&B Agreement and BBB Agreement are collectively referred to herein as the "<u>Agreements</u>"). Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective BB&B Agreement or the BBB Agreement, as the context makes applicable.

The Agreements provide for, among other things, the procedures in which the Sales will be executed, and details related thereto. Accordingly, Merchant and Agent mutually desire to amend the Agreements to, <u>inter alia</u>, (i) provide that this letter amendment (the "<u>Third Amendment</u>") shall constitute a "Work Order" under the Agreements, (ii) expand the scope of Stores covered by the Agreements by adding additional Stores thereunder as set forth herein and in the Exhibits annexed hereto and incorporated herein, and (iii) modify certain other terms and provisions of the Agreements, in each case on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Second Amendment, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agree that the Agreements shall be amended as set forth herein.

1.      <u>Effect of Prior Amendments</u>.  For the avoidance of doubt, the Agreements, as amended by the (i) Amendment to Letter Agreement dated August 26, 2022 (the "<u>First Amendment</u>"), (ii) Amendment to Letter Agreement dated February 12, 2023 (the "<u>Second Amendment</u>"), and (iii) all prior Work Orders shall continue to govern the Sale at any Stores where such Sale commenced prior to the date of this Third Amendment. With respect to this Third Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in <u>Section H</u> of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in <u>Section H</u> of the Agreements.

2.      <u>Additional Closing Store Designations</u>.  Merchant hereby designates those Store locations identified in <u>Exhibit A</u> hereto and incorporated herein (hereinafter, collectively the "<u>Amendment 3 Stores</u>") as "Additional Stores" for closure through the conduct of the Sale in accordance with the terms of the Agreements, as amended hereby. For the avoidance of doubt, the Amendment 3 Stores shall be treated as "Stores" for all purposes under the Agreements. The "Sale Commencement Date" applicable to the

Amendment 3 Stores shall be April 26, 2023, and the "Sale Termination Date" shall be on or prior to July 31, 2023; provided, that the Parties may mutually agree in writing to extend or terminate the Sale at any Amendment 3 Store prior to the Sale Termination Date stated above.

3.      Amendment 3 Stores Expense Budget.  The Expense Budget applicable to the conduct of the Sale at the Amendment 3 Stores is annexed hereto as Exhibit B and is incorporated herein by reference. Merchant and Agent mutually agree that, no later than seven (7) days after the Sale Commencement Date applicable to the Amendment 3 Stores, Merchant shall fund an advance to the Agent in an amount equal to the sum of $4,000,000in respect of the Sale Expenses identified in Expense Budget annexed hereto as Exhibit B ("Sale Deposit").  All other accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled in accordance with Section E of the Agreements.  Any portion of the Sale Deposit not used to pay amounts contemplated by the Agreements shall be returned to Merchant (or its designee) within seven (7) business days following the final reconciliation.

4.      Permitted Sale Themes.  Anything in the Agreements to the contrary notwithstanding, but subject to entry of the Approval Order (defined below), Merchant hereby consents to Agent's marketing and advertising of the Sale in the Stores utilizing a "going-out-of-business" sale theme, which theme shall be in addition to such other sale themes set forth in the Agreements.

5.      Agent Fee.  Section E of each Agreement is hereby amended by deleting the table outlining the "Net Recovery Threshold" and "Agent Incentive Fee" with respect to Amendment 3 Stores and substituting the following in its place:

| Net Recovery Threshold | Agent Incentive Fee |
|---|---|
| 43.5%-43.99% | An additional 0.875% of Net Proceeds |
| 44.0%-44.49% | An additional 1.125% of Net Proceeds |
| 44.5%-44.99% | An additional 1.375% of Net Proceeds |
| 45.0%-45.49% | An additional 1.625% of Net Proceeds |
| 45.5% and above | An additional 1.875% of Net Proceeds |

The Agent Incentive Fee referenced above as earned in each case shall be in addition to the Base Fee and shall be calculated back to the first dollar received.  For purposes of the Agreements, as amended hereby, "Net Recovery" shall be determined based on the Expenses of the Sale identified in Exhibit C hereto and incorporated herein by reference.

5.      Bankruptcy Matters.  Section T of the Agreements is hereby amended by deleting the entirety thereof and substituting the following in its place:

"If Merchant commences one or more cases under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), not later than two (2) business days after such commencement Merchant shall file an expedited motion as part of its "first day" motions, and utilize its reasonable best efforts to ensure that such motion is approved by one or more interim and/or final order(s) (collectively, "Approval Order") that provides, among other things, as follows:  (i) approval of the transaction contemplated hereby, (ii) authorizing Merchant's conduct of the Sale at the Stores, including, without limitation, the Amendment 3 Stores, pursuant to Section 363 of the Bankruptcy Code, (iii) determining that the Sale may be conducted in the Stores without the necessity of complying with (x) state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale, and (y) notwithstanding restrictions in leases, reciprocal easement

2

agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consent, (iv) approving (x) Merchant's assumption of the Agreements under Sections 363 and 365 of the Bankruptcy Code, and (y) Agent's engagement as Merchant's consultant to provide the Services set forth in the Agreements in furtherance of Merchant's conduct of the Sale at the Stores, (v) authorizing and approving Merchant's payment of all fees and reimbursement of expenses to Agent in accordance with the terms of the Agreements, with any such payments being (x) free and clear of all liens, claims and encumbrances, and (y) without the necessity of any further court approval or compliance with any fee application or similar requirements under any applicable U.S. Trustee or similar guidelines, (vi) authorizing the sale of Additional Agent Goods in accordance with the terms and conditions of the Agreements, and (vii) authorizing the Merchant and Agent to take all further actions as are necessary or appropriate to carry out the terms and conditions of the Agreements. In such event, any legal action, suit or proceeding arising in connection with the Agreements shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or *forum non conveniens*.  From and after entry of the Approval Order, Merchant shall conduct the Sale in accordance with the terms of the Approval Order in all material respects."

---

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group, LLC ("Tiger"), Gordon Brothers Retail Partners, LLC ("GBRP"), and B. Riley Retail Solutions, LLC ("B. Riley"; and together with Tiger and GBRP the "Participants") on terms and conditions mutually agreed upon between the Agent and the Participants.  Per the Merchant's request, Agent and GBRP shall continue to co-lead all aspects of the transactions contemplated by the Agreements from and after the date hereof.

This Third Amendment, together the Agreements, the First Amendment, the Second Amendment, all prior amendments, Work Orders, or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Third Amendment except as specifically set forth in this Third Amendment or the Agreements.

*[Remainder of Page Intentionally Left Blank;
Signatures Appear Next Page]*

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to the opportunity to continue working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC,
As Agent (for itself and the Participants)

By: _____
    Name:
    Its:

*[Signatures Continued Next Page]*

4

**AGREED AND ACCEPTED as of the  22  day of April, 2023:**

**MERCHANT:**

BED BATH & BEYOND, INC.

By: _____

       Name:  David Kastin

       Its:      Executive Vice President, Chief Legal Officer

BUY BUY BABY, INC.

By: _____

       Name:  David Kastin

       Its:      Secretary

HARMON STORES, INC.

By: _____

       Name:  David Kastin

       Its:      Secretary

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| | | Store List | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1 | BBBY | Springfield | 715 Morris Turnpike | Springfield | NJ | 07081 | 47,640 |
| 8 | BBBY | Canoga Park | 6530 Canoga Avenue | Canoga Park | CA | 91303 | 42,050 |
| 20 | BBBY | West Los Angeles | 11854 West Olympic Boulevard | Los Angeles | CA | 90064-1100 | 63,000 |
| 24 | BBBY | Santa Rosa | 2785 Santa Rosa Ave | Santa Rosa | CA | 95407 | 35,000 |
| 25 | BBBY | Studio City | 12555 Ventura Blvd | Studio City | CA | 91604 | 29,844 |
| 26 | BBBY | Oakland | 590 2Nd Street | Oakland | CA | 94607 | 18,793 |
| 27 | BBBY | Cherry Hill | 2130 Marlton Pike W, Suite D | Cherry Hill | NJ | 08002 | 38,012 |
| 29 | BBBY | Falls Church | 5810 Crossroads Center Way | Falls Church | VA | 22041 | 36,000 |
| 31 | BBBY | San Diego | 1750 Camino Del Rio North | San Diego | CA | 92108 | 77,925 |
| 32 | BBBY | Deerfield | 96 South Waukegan Road | Deerfield | IL | 60015 | 47,000 |
| 33 | BBBY | Rockville | 1519 Rockville Pike | Rockville | MD | 20852 | 50,204 |
| 37 | BBBY | Lake Grove | 2045 Smith Haven Plaza | Lake Grove | NY | 11755 | 64,776 |
| 40 | BBBY | Albany | 32 Wolf Road | Albany | NY | 12205 | 38,500 |
| 42 | BBBY | Manhattan | 620 6Th Avenue | New York | NY | 10011 | 92,025 |
| 45 | BBBY | Houston 45 | 17355 Tomball Parkway Suite 1J | Houston | TX | 77064 | 44,998 |
| 46 | BBBY | Dadeland | 8380 South Dixie Highway | Miami | FL | 33143 | 60,000 |
| 47 | BBBY | Tucson | 4811 E. Grant Road, Suite 131 | Tucson | AZ | 85712 | 36,518 |
| 49 | BBBY | Sterling Heights | 12020 Hall Road | Sterling Heights | MI | 48313 | 42,609 |
| 51 | BBBY | Webster | 19801 Gulf Freeway, Suite 1000 | Webster | TX | 77598 | 53,829 |
| 52 | BBBY | Columbia 52 | 9021 Snowden River Parkway | Columbia | MD | 21046 | 40,055 |
| 53 | BBBY | Downers Grove | 1548 Butterfield Road | Downers Grove | IL | 60515 | 73,572 |
| 54 | BBBY | Westlake | 30083 Detroit Road | Westlake | OH | 44145 | 29,963 |
| 55 | BBBY | West Palm Beach | 1875 Palm Beach Lakes Blvd A05 | West Palm Beach | FL | 33401 | 32,400 |
| 61 | BBBY | Plano | 801 West 15Th Street, Suite D | Plano | TX | 75075 | 43,988 |
| 63 | BBBY | Lincoln Park | 1800 N. Clybourn Ave., Suite A | Chicago | IL | 60614 | 32,972 |
| 66 | BBBY | Kennesaw | 840 Ernest Barrett Pkwy Ste170 | Kennesaw | GA | 30144 | 35,000 |
| 67 | BBBY | Addison | 13900 Dallas Parkway | Dallas | TX | 75240 | 54,337 |
| 68 | BBBY | Denver 68 | 370 S Colorado Blvd | Glendale | CO | 80246 | 44,997 |
| 82 | BBBY | Dallas | 8005 Park Lane | Dallas | TX | 75231 | 53,500 |
| 86 | BBBY | Tulsa | 10011 East 71St Street | Tulsa | OK | 74133 | 42,000 |
| 87 | BBBY | Overland Park | 12035 Metcalf | Overland Park | KS | 66213 | 50,028 |
| 88 | BBBY | Houston 88 | 10515 Katy Freeway,Suite A | Houston | TX | 77024 | 47,900 |
| 97 | BBBY | Austin 97 | 5400 Brodie Lane Suite 300 | Austin | TX | 78745 | 42,098 |
| 98 | BBBY | Birmingham | 1771 Montgomery Highway | Hoover | AL | 35244 | 38,297 |
| 99 | BBBY | Carrollwood | 13123 North Dale Mabry Highway | Tampa | FL | 33618 | 35,931 |
| 101 | BBBY | Rancho Cucamonga | 11530 4Th Street Suite 120 | Rancho Cucamonga | CA | 91730 | 26,000 |
| 103 | BBBY | Alpharetta | 6050 North Point Parkway | Alpharetta | GA | 30022 | 39,999 |
| 108 | BBBY | Rockford | 6309 East State Street | Rockford | IL | 61108 | 35,800 |
| 110 | BBBY | Charlottesville | 975A North Emmet Street | Charlottesville | VA | 22903 | 36,450 |
| 111 | BBBY | Albuquerque | 2451 San Mateo Blvd Ne Suite D | Albuquerque | NM | 87110 | 30,162 |
| 114 | BBBY | Virginia Beach | 220 Constitution Drive | Virginia Beach | VA | 23462 | 37,500 |
| 116 | BBBY | Humble | 20514 Highway 59 N. | Humble | TX | 77338 | 35,000 |
| 119 | BBBY | Canton | 6725 Strip Avenue Nw | North Canton | OH | 44720 | 40,000 |
| 121 | BBBY | Wolfchase | 2810 Germantown Parkway | Memphis | TN | 38133 | 40,000 |
| 124 | BBBY | Cary | 405 Cross Roads Boulevard | Cary | NC | 27518 | 43,000 |
| 126 | BBBY | Stafford | 12520 Fountain Lake Circle | Stafford | TX | 77477 | 36,000 |
| 127 | BBBY | Santa Clara | 5201 Stevens Creek Blvd. | Santa Clara | CA | 95051 | 40,000 |
| 128 | BBBY | Naples | 5351 N. Airport Road | Naples | FL | 34109 | 44,777 |
| 129 | BBBY | Arlington | 4000 Retail Connection Way, Suite 101 | Arlington | TX | 76018 | 30,000 |
| 132 | BBBY | Madison | 215 Junction Road | Madison | WI | 53717 | 35,345 |
| 133 | BBBY | Naperville | 336 S Rt 59 | Naperville | IL | 60540 | 32,744 |
| 134 | BBBY | Huebner Oaks | 11745 Ih 10 West Suite 750 | San Antonio | TX | 78230 | 35,009 |
| 135 | BBBY | Rego Park | 96-05 Queens Boulevard | Rego Park | NY | 11374 | 45,997 |
| 136 | BBBY | Portland | 16800 Southwest 72Nd Avenue | Tigard | OR | 97224 | 36,000 |
| 137 | BBBY | Denver West Village | 14383 West Colfax Avenue | Golden | CO | 80401 | 36,273 |
| 138 | BBBY | Thousand Oaks | 121 South Westlake Blvd | Thousand Oaks | CA | 91362 | 35,000 |
| 139 | BBBY | Oceanside | 2120 Vista Way | Oceanside | CA | 92054 | 38,008 |
| 147 | BBBY | Ballwin | 141 Highlands Boulevard Drive | Manchester | MO | 63011 | 35,000 |
| 148 | BBBY | Mountain Brook | 313 Summit Boulevard | Birmingham | AL | 35243 | 30,056 |
| 149 | BBBY | Braintree | 400 Grossman Drive | Braintree | MA | 02184 | 35,963 |
| 154 | BBBY | Southside | 8801-1 Southside Boulevard | Jacksonville | FL | 32256 | 35,000 |
| 155 | BBBY | Augusta | 221 Robert C. Daniel,Jr. Pkwy | Augusta | GA | 30909 | 37,500 |
| 156 | BBBY | Henrico | 10050 West Broad Street | Glen Allen | VA | 23060 | 40,000 |

**Bed Bath & Beyond.2023.Wave 5**

**Exhibit A**

| Store List |
| --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 157 | BBBY | Mid-Rivers | 281 Mid Rivers Mall Drive | St. Peters | MO | 63376 | 38,843 |
| 159 | BBBY | East Hanover | 180 Route 10 West | East Hanover | NJ | 07936 | 50,182 |
| 160 | BBBY | Woodbridge | 675 Us Highway 1S, Suite 5 | Iselin | NJ | 08830-3125 | 34,000 |
| 164 | BBBY | Oklahoma City | 2848 Nw 63Rd Street | Oklahoma City | OK | 73116 | 40,739 |
| 166 | BBBY | Roseville 166 | 30801 Gratoit Road | Roseville | MI | 48066 | 44,500 |
| 169 | BBBY | Waldorf | 3270 Crain Highway | Waldorf | MD | 20603 | 36,424 |
| 172 | BBBY | Newport News | 12132 A Jefferson Avenue | Newport News | VA | 23602 | 41,929 |
| 173 | BBBY | Dublin | 4882 Dublin Blvd | Dublin | CA | 94568 | 35,472 |
| 178 | BBBY | St. Petersburg | 2060 66Th Street North | St. Petersburg | FL | 33710 | 36,926 |
| 181 | BBBY | Williston | 115 Trader Lane | Williston | VT | 05495 | 40,000 |
| 183 | BBBY | Pasadena | 3341 East Foothill Blvd | Pasadena | CA | 91107 | 40,000 |
| 188 | BBBY | Frederick | 5413 Urbana Pike | Frederick | MD | 21704 | 38,700 |
| 189 | BBBY | Chandler | 850 N. 54Th Street | Chandler | AZ | 85226 | 32,713 |
| 192 | BBBY | Midlothian | 11609 Midlothian Turnpike | Midlothian | VA | 23113 | 40,000 |
| 194 | BBBY | Ft. Collins | 110 W. Troutman Parkway | Ft. Collins | CO | 80525 | 50,695 |
| 196 | BBBY | Towson | 1238 Putty Hill Avenue Suite 1 | Towson | MD | 21286 | 36,990 |
| 197 | BBBY | Aventura | 19205 Biscayne Blvd | Aventura | FL | 33180 | 45,000 |
| 199 | BBBY | Columbia 199 | 136 Harbison Blvd | Columbia | SC | 29212 | 40,800 |
| 200 | BBBY | N. Colorado Springs | 1790 East Woodmen Road | Colorado Springs | CO | 80920 | 38,000 |
| 202 | BBBY | Grand Rapids | 4901 28Th Street, Se | Grand Rapids | MI | 49512 | 40,000 |
| 204 | BBBY | Solon | 6025 Kruse Drive Suite 123 | Solon | OH | 44139 | 40,000 |
| 207 | BBBY | Deptford | 1755 Deptford Center Road | Deptford | NJ | 08096 | 38,094 |
| 208 | BBBY | Reno | 4983 S Virginia Street | Reno | NV | 89502 | 35,185 |
| 211 | BBBY | Lincoln | 2960 Pine Lake Road Suite A | Lincoln | NE | 68516 | 35,000 |
| 213 | BBBY | Jensen Beach | 2450 Nw Federal Highway | Stuart | FL | 34994 | 34,900 |
| 214 | BBBY | Clearwater | 23676 Us Hwy 19 North | Clearwater | FL | 33765 | 33,330 |
| 215 | BBBY | Mishawaka | 5802 Grape Rd, Suite B | Mishawaka | IN | 46545 | 38,042 |
| 224 | BBBY | Brick | 51 Chambersbridge Road | Brick | NJ | 08723 | 35,000 |
| 225 | BBBY | Fresno | 7497 N. Blackstone Avenue | Fresno | CA | 93720 | 36,725 |
| 227 | BBBY | Jenkintown | 905 Old York Road | Jenkintown | PA | 19046 | 44,280 |
| 228 | BBBY | Little Rock | 12309 Chenal Parkway Suite A | Little Rock | AR | 72211 | 37,813 |
| 233 | BBBY | Arrowhead | 7340 West Bell Road | Glendale | AZ | 85308 | 38,000 |
| 235 | BBBY | Sarasota | 6567 S. Tamiami Trail | Sarasota | FL | 34231 | 40,000 |
| 236 | BBBY | Daytona Beach | 2500 W. Interntl Speedway Blvd | Daytona Beach | FL | 32114 | 34,945 |
| 237 | BBBY | Mt. Pleasant | 1744 Towne Centre Way | Mt. Pleasant | SC | 29464 | 34,560 |
| 245 | BBBY | Gainesville | 6855 Newberry Road | Gainesville | FL | 32605 | 30,500 |
| 248 | BBBY | Baton Rouge | 10505 South Mall Drive | Baton Rouge | LA | 70809 | 35,017 |
| 250 | BBBY | Lynnwood | 3115 196Th Street, Sw | Lynnwood | WA | 98036 | 30,000 |
| 251 | BBBY | Allentown | 1223 Whitehall Mall | Whitehall | PA | 18052 | 43,971 |
| 254 | BBBY | Modesto | 3900 Sisk Road | Modesto | CA | 95356 | 29,926 |
| 255 | BBBY | Mill Creek | 1705 Mall Of Georgia Blvd, Suite 4 | Buford | GA | 30519 | 33,889 |
| 260 | BBBY | Westbury | 950 Merchants Concourse | Westbury | NY | 11590 | 54,239 |
| 261 | BBBY | Pleasant Hill | 15 Crescent Drive | Pleasant Hill | CA | 94523 | 35,877 |
| 266 | BBBY | Eatontown | 92 Route 36 | Eatontown | NJ | 07724 | 35,750 |
| 268 | BBBY | Asheville | 83G South Tunnel Road | Asheville | NC | 28805 | 38,772 |
| 271 | BBBY | Harrisburg | 5125 Jonestown Road Suite 425 | Harrisburg | PA | 17112 | 30,054 |
| 272 | BBBY | Katy Mills | 24600 Katy Fwy Suite 100 | Katy | TX | 77494 | 38,000 |
| 273 | BBBY | Palm Beach Gardens | 2410 Pga Boulevard | Palm Beach Gardens | FL | 33410 | 37,525 |
| 275 | BBBY | Mission Viejo | 25732 El Paseo | Mission Viejo | CA | 92691 | 35,000 |
| 278 | BBBY | Fayetteville | 3816 North Mall Avenue | Fayetteville | AR | 72703 | 30,000 |
| 279 | BBBY | Sw Denver 279 | 7421 West Bowles Avenue Ste 1 | Littleton | CO | 80123-3096 | 35,000 |
| 285 | BBBY | Fort Myers | 13499 S Cleveland Ave Suite200 | Fort Myers | FL | 33907 | 30,587 |
| 289 | BBBY | Middletown | 1115 Route 35 | Middletown | NJ | 07748 | 35,843 |
| 292 | BBBY | Orem | 50 West 1300 South | Orem | UT | 84058 | 37,102 |
| 293 | BBBY | Louisville | 996 Breckinridge Lane | Louisville | KY | 40207 | 34,953 |
| 294 | BBBY | Sugarhouse | 1169 Wilmington Avenue | Salt Lake City | UT | 84106 | 18,395 |
| 295 | BBBY | Beverly Hills | 31535 Southfield Road | Beverly Hills | MI | 48025 | 41,093 |
| 298 | BBBY | Hilton Head | 1460 Fording Island Road St100 | Bluffton | SC | 29910 | 24,710 |
| 301 | BBBY | Rookwood | 2719 Edmondson Road | Cincinnati | OH | 45209 | 33,375 |
| 305 | BBBY | Round Rock | 2701-A Parker Road Suite 400 | Round Rock | TX | 78681 | 30,500 |
| 307 | BBBY | Roseville 307 | 1120 Galleria Blvd Suite 140 | Roseville | CA | 95678 | 49,132 |
| 309 | BBBY | Charlotte | 9559 South Boulevard | Charlotte | NC | 28273 | 37,000 |
| 311 | BBBY | Simsbury | 532 Bushy Hill Road | Simsbury | CT | 06070 | 30,321 |

**Bed Bath & Beyond.2023.Wave 5**

**Exhibit A**

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 313 | BBBY | Athens | 1791 Oconee Connector Suite350 | Athens | GA | 30606 | 24,000 |
| 315 | BBBY | Daly City | 303 Gellert Boulevard | Daly City | CA | 94015 | 33,030 |
| 317 | BBBY | Winston-Salem | 1020 Hanes Mall Blvd. | Winston Salem | NC | 27103 | 37,153 |
| 318 | BBBY | Midland | 3001-A101 West Loop 250 North | Midland | TX | 79705 | 27,426 |
| 319 | BBBY | Eugene | 95 Oakway Center | Eugene | OR | 97401 | 30,013 |
| 321 | BBBY | Lafayette | 3617 Ambassador Caffery | Lafayette | LA | 70503 | 42,749 |
| 326 | BBBY | Wichita | 2750 N Greenwich Ct | Wichita | KS | 67226 | 37,922 |
| 327 | BBBY | Johnson City | 3211 People Street Suite 25 | Johnson City | TN | 37604 | 24,925 |
| 328 | BBBY | Fargo | 4340 13Th Avenue Sw | Fargo | ND | 58103 | 30,000 |
| 330 | BBBY | Fort Worth | 4931 Overton Ridge Boulevard | Ft. Worth | TX | 76132 | 35,177 |
| 333 | BBBY | Meridian | 1350 North Eagle Road | Meridian | ID | 83642 | 38,146 |
| 336 | BBBY | Newtown | 20 West Road | Newtown | PA | 18940 | 30,000 |
| 337 | BBBY | The Waterfront | 490 Waterfront Drive East | Homestead | PA | 15120 | 38,000 |
| 338 | BBBY | Broadmoor | 2180 Southgate Road | Colorado Springs | CO | 30529 | 30,529 |
| 339 | BBBY | Cool Springs | 545 Cool Springs Boulevard | Franklin | TN | 37067 | 40,000 |
| 341 | BBBY | Southlake | 2930 East Southlake Blvd. | Southlake | TX | 76092 | 30,000 |
| 349 | BBBY | Greenville | 1117 Woodruff Road Suite D | Greenville | SC | 29607 | 35,000 |
| 350 | BBBY | Danvers | 180 Endicott Street | Danvers | MA | 01923 | 36,192 |
| 352 | BBBY | Amarillo | 3000 Soncy Road | Amarillo | TX | 79124 | 30,000 |
| 358 | BBBY | Youngstown | 550 Boardman Poland Road | Youngstown | OH | 44512 | 30,000 |
| 359 | BBBY | Davie | 1801 S University Drive | Davie | FL | 33324 | 28,170 |
| 362 | BBBY | Spokane | 5628 N Division Street | Spokane | WA | 99207 | 36,692 |
| 363 | BBBY | Greenwood | 723 Us 31 North Suite A | Greenwood | IN | 46142 | 33,208 |
| 364 | BBBY | Taylor | 23871 Eureka Road | Taylor | MI | 48180 | 30,350 |
| 365 | BBBY | Bangor | 490 Stillwater Avenue | Bangor | ME | 04401 | 27,905 |
| 368 | BBBY | Novi | 43610 West Oaks Drive | Novi | MI | 48377 | 33,220 |
| 370 | BBBY | Saw Mill | 3708 W Dublin Grandville Road | Columbus | OH | 43235 | 40,075 |
| 371 | BBBY | Tukwila | 400 Strander Blvd | Tukwila | WA | 98188 | 45,633 |
| 372 | BBBY | Warwick | 1500 Bald Hill Road Suite B | Warwick | RI | 02886 | 41,878 |
| 375 | BBBY | Evansville | 280 North Green River Road | Evansville | IN | 47715 | 31,675 |
| 377 | BBBY | Wilkes Barre | 435 Arena Hub Plaza | Wilkes-Barre | PA | 18702 | 30,057 |
| 378 | BBBY | Rochester Hills | 1242 South Rochester Road | Rochester Hills | MI | 48307 | 38,243 |
| 380 | BBBY | Salem | 265 South Broadway, Suite 4 | Salem | NH | 03079 | 25,918 |
| 384 | BBBY | Hollywood | 1557 Vine Street | Hollywood | CA | 90028 | 30,054 |
| 385 | BBBY | East Boca | 1400C Glades Road | Boca Raton | FL | 33431 | 23,232 |
| 388 | BBBY | Tallahassee | 1574 Governors Square Blvd. | Tallahassee | FL | 32301 | 35,000 |
| 393 | BBBY | Dulles | 45575 Dulles Eastern Plaza Ste 154 | Dulles | VA | 20166 | 35,000 |
| 394 | BBBY | Yonkers | 2141 Central Park Avenue | Yonkers | NY | 10710 | 40,000 |
| 400 | BBBY | Destin | 4441 Commons Drive East | Destin | FL | 32541 | 34,273 |
| 402 | BBBY | Greendale | 5445 South 76Th Street | Greendale | WI | 53129 | 33,014 |
| 404 | BBBY | Frisco | 2930 Preston Road Suite 400 | Frisco | TX | 75034 | 35,000 |
| 405 | BBBY | Huntsville | 6888 Governors West | Huntsville | AL | 35806 | 30,000 |
| 407 | BBBY | Bakersfield | 5000 Stockdale Highway | Bakersfield | CA | 93309 | 30,500 |
| 412 | BBBY | Seal Beach | 12390 Seal Beach Blvd | Seal Beach | CA | 90740 | 27,060 |
| 414 | BBBY | Apple Valley | 14910 Florence Trail | Apple Valley | MN | 55124 | 30,339 |
| 417 | BBBY | Puyallup | 4102 D South Meridian Street | Puyallup | WA | 98373 | 32,920 |
| 418 | BBBY | Wilmington | 352 South College Rd Unit 10B | Wilmington | NC | 28403 | 30,405 |
| 422 | BBBY | Henderson | 621 Marks Street | Henderson | NV | 89014 | 29,990 |
| 424 | BBBY | Port Charlotte | 18700 Veterans Blvd Unit 14 | Port Charlotte | FL | 33954 | 24,971 |
| 426 | BBBY | Onslow | 1305 Western Blvd | Jacksonville | NC | 28546 | 23,000 |
| 428 | BBBY | Clive | 11101 University Ave Suite A | Clive | IA | 50325 | 35,035 |
| 430 | BBBY | Northwoods | 1730 N Loop 1604 E Suite 107 | San Antonio | TX | 78232 | 30,256 |
| 431 | BBBY | Tanasbourne | 18043 Nw Evergreen Parkway | Hillsboro | OR | 97006 | 34,487 |
| 432 | BBBY | Exton | 108 Bartlett Avenue | Exton | PA | 19341 | 34,571 |
| 433 | BBBY | South Portland | 200 Running Hill Road Suite 4 | South Portland | ME | 04106 | 30,448 |
| 435 | BBBY | Matthews | 10530 Northeast Parkway | Matthews | NC | 28105 | 25,000 |
| 436 | BBBY | Aurora | 5560 South Parker Road | Aurora | CO | 80015 | 34,980 |
| 437 | BBBY | Anderson Station | 146 Station Drive | Anderson | SC | 29621 | 22,398 |
| 439 | BBBY | Crofton | 2382 Brandermill Blvd Suite102 | Gambrills | MD | 21054 | 28,000 |
| 442 | BBBY | Kirby | 3102 Kirby Drive | Houston | TX | 77098 | 31,000 |
| 449 | BBBY | Warrington | 1015 Main Street | Warrington | PA | 18976 | 33,808 |
| 450 | BBBY | Auburn | 366 Southbridge Street | Auburn | MA | 01501 | 22,325 |
| 454 | BBBY | Fort Lauderdale | 2701 N Federal Highway | Fort Lauderdale | FL | 33306 | 34,500 |

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| Store List |
| --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 456 | BBBY | Maple Grove | 7950 Wedgewood Lane N | Maple Grove | MN | 55369 | 29,706 |
| 462 | BBBY | Centerville | 6142 Wilmington Pike | Dayton | OH | 45459 | 28,105 |
| 470 | BBBY | Columbus Park | 5555 Whittlesey Blvd Ste 1400 | Columbus | GA | 31909 | 25,000 |
| 475 | BBBY | Torrance | 2595 Pacific Coast Highway | Torrance | CA | 90505 | 39,061 |
| 476 | BBBY | West Nashville | 7657 Highway 70 South Suite112 | Nashville | TN | 37221 | 20,060 |
| 477 | BBBY | Route 46 | 545 Route 46 | Totowa | NJ | 07512 | 59,847 |
| 482 | BBBY | Woodbury | 8250 Tamarack Village | Woodbury | MN | 55125 | 29,530 |
| 485 | BBBY | Best In The West | 2100 N Rainbow Blvd Suite 110 | Las Vegas | NV | 89108 | 28,337 |
| 486 | BBBY | Skokie | 5545 W Touhy Avenue | Skokie | IL | 60077 | 36,500 |
| 487 | BBBY | Hyannis | 65 Independence Drive | Hyannis | MA | 02601 | 36,570 |
| 490 | BBBY | Primrose | 3308 S Glenstone Avenue | Springfield | MO | 65804 | 30,050 |
| 492 | BBBY | Metairie | 4410 Veterans Memorial Blvd | Metairie | LA | 70006 | 52,053 |
| 497 | BBBY | Mc Donough | 1898 Jonesboro Road | Mcdonough | GA | 30253 | 19,978 |
| 502 | BBBY | Corpus Christi | 4717 S Padre Island Dr Suite F | Corpus Christi | TX | 78411 | 26,300 |
| 503 | BBBY | Summerlin Center | 2315 Summa Drive #180 | Las Vegas | NV | 89135 | 32,064 |
| 504 | BBBY | Woodlands | 1560 Lake Woodlands Drive | The Woodlands | TX | 77380 | 34,929 |
| 507 | BBBY | Sands | 3640 Long Beach Road | Oceanside | NY | 11572 | 37,236 |
| 514 | BBBY | Mesquite | 2705 N Mesquite Drive | Mesquite | TX | 75150 | 25,378 |
| 518 | BBBY | Vero Beach | 6150 20Th Street | Vero Beach | FL | 32966 | 21,843 |
| 523 | BBBY | Ocala | 2701 Sw College Road Suite 400 | Ocala | FL | 34474 | 20,000 |
| 524 | BBBY | Santa Fe | 4250 Cerrillos Road Suite 1214 | Santa Fe | NM | 87507 | 25,000 |
| 525 | BBBY | Pensacola | 5450 N 9Th Avenue | Pensacola | FL | 32504 | 28,585 |
| 529 | BBBY | Savannah | 7400 Abercorn Street Suite 201 | Savannah | GA | 31406 | 35,005 |
| 535 | BBBY | Mc Allen | 620 E Expressway 83 | Mc Allen | TX | 78503 | 31,647 |
| 538 | BBBY | Riverside | 3700 Tyler Street Suite 14 | Riverside | CA | 92503 | 30,248 |
| 539 | BBBY | Redwood City | 1950 El Camino Real | Redwood City | CA | 94063 | 25,000 |
| 540 | BBBY | Capitola | 3555 Clares Street Suite J | Capitola | CA | 95010 | 24,380 |
| 542 | BBBY | Nashua | 261 Daniel Webster Hwy Unit 1 | Nashua | NH | 03060 | 37,857 |
| 544 | BBBY | Edmond | 412 S Bryant Avenue | Edmond | OK | 73034 | 22,000 |
| 550 | BBBY | Newport | 288 East Main Road | Middletown | RI | 02842 | 25,373 |
| 551 | BBBY | Bradenton | 825 Cortez Road West | Bradenton | FL | 34207 | 25,395 |
| 556 | BBBY | St. Augustine | 320 Cbl Drive | St Augustine | FL | 32086 | 20,000 |
| 557 | BBBY | Denton | 2315 Colorado Blvd Suite 180 | Denton | TX | 76205 | 30,281 |
| 558 | BBBY | Chattanooga | 2040 Hamilton Place Blvd | Chattanooga | TN | 37421 | 28,000 |
| 559 | BBBY | Coeur D Alene | 440 W Wilbur Avenue | Coeur D Alene | ID | 83815 | 20,215 |
| 560 | BBBY | Morganton Road | 5075 Morganton Road Suite 9C | Fayetteville | NC | 28314 | 29,427 |
| 562 | BBBY | Eureka | 3300 Broadway Space #340 | Eureka | CA | 95501 | 25,759 |
| 564 | BBBY | Westfield | 1950 6 Greyhound Pass | Carmel | IN | 46033 | 24,350 |
| 569 | BBBY | Country Club Plaza | 2725 Marconi Ave | Sacramento | CA | 95821 | 24,000 |
| 571 | BBBY | Lakeline | 11066 Pecan Park Blvd Bldg 1 | Cedar Park | TX | 78613 | 34,361 |
| 573 | BBBY | Scottsdale | 7000 E Mayo Blvd Building 12 | Phoenix | AZ | 85054 | 35,000 |
| 577 | BBBY | San Patricio | 100 Ave San Patricio | Guaynabo | PR | 00966 | 40,500 |
| 579 | BBBY | Miami International | 10640 Nw 19Th Street | Miami | FL | 33172 | 28,053 |
| 585 | BBBY | College Station | 1430 Texas Avenue South | College Station | TX | 77840 | 24,722 |
| 589 | BBBY | Gulfport | 3951 Promenade Parkway | Diberville | MS | 39540 | 23,437 |
| 591 | BBBY | Avondale | 10060 W Mc Dowell Road | Avondale | AZ | 85323 | 25,063 |
| 592 | BBBY | West Ashley | 946 Orleans Road Suite E1 | Charleston | SC | 29407 | 23,683 |
| 605 | BBBY | Parker | 11435 Twenty Mile Road | Parker | CO | 80134 | 23,000 |
| 606 | BBBY | Surprise | 13723 W Bell Road | Surprise | AZ | 85374 | 25,000 |
| 611 | BBBY | Murfreesboro | 2615 Medical Cntr Prkwy St1200 | Murfreesboro | TN | 37129 | 25,625 |
| 615 | BBBY | Abilene | 3417 Catclaw Drive | Abilene | TX | 79606 | 18,043 |
| 623 | BBBY | Frankfort | 11165 W Lincoln Highway | Frankfort | IL | 60423 | 25,000 |
| 626 | BBBY | Idaho Falls | 3011 S 25Th East | Idaho Falls | ID | 83406 | 20,062 |
| 632 | BBBY | Lubbock | 2624 W Loop 289 | Lubbock | TX | 79407 | 29,954 |
| 756 | BBBY | Bedford | 5 Colby Court Unit 3 | Bedford | NH | 03110 | 35,753 |
| 762 | BBBY | Traverse City | 3301 N Us 31 South | Traverse City | MI | 49684 | 25,000 |
| 765 | BBBY | Fredericksburg | 3700 Plank Road | Fredericksburg | VA | 22407 | 28,977 |
| 766 | BBBY | Oracle | 6310 N Oracle Road | Tucson | AZ | 85704 | 31,638 |
| 768 | BBBY | North Cincinnati | 5800 Deerfield Road | Mason | OH | 45040 | 30,000 |
| 769 | BBBY | Waco | 4633 S Jack Kultgen Exwy St102 | Waco | TX | 76706 | 25,187 |
| 771 | BBBY | West Omaha | 255 N 170Th Street | Omaha | NE | 68118 | 30,000 |
| 772 | BBBY | Myrtle Beach | 2400 Coastal Grand Circle | Myrtle Beach | SC | 29577 | 25,121 |
| 774 | BBBY | Patterson Place | 3616 Witherspoon Blvd. Suite 103 | Durham | NC | 27707 | 33,839 |

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| Store List |
| --- |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 775 | BBBY | Bethlehem | 4449 Southmont Way | Easton | PA | 18045 | 28,159 |
| 776 | BBBY | Redlands | 27450 Lugonia Avenue | Redlands | CA | 92374 | 28,445 |
| 777 | BBBY | St. George | 844 W Telegraph Street | Washington City | UT | 84780 | 22,054 |
| 780 | BBBY | Potomac Mills | 14101 Crossing Place | Woodbridge | VA | 22192 | 35,000 |
| 783 | BBBY | Riverdale | 4113 Riverdale Road | Ogden | UT | 84405 | 23,046 |
| 800 | BBBY | Sir Barton Way | 2321 Sir Barton Way, Suite 120 | Lexington | KY | 40509 | 35,000 |
| 808 | BBBY | Kissimmee | 3212 North John Young Parkway | Kissimmee | FL | 34741 | 24,897 |
| 810 | BBBY | Somerville | 119 Middlesex Avenue | Somerville | MA | 02145 | 38,012 |
| 812 | BBBY | Bend | 63455 N. Highway 97, Suite 113 | Bend | OR | 97703 | 22,859 |
| 820 | BBBY | Goleta | 189 North Fairview Ave | Goleta | CA | 93117 | 23,922 |
| 821 | BBBY | Ventura | 4040 East Main Street | Ventura | CA | 93003 | 27,718 |
| 825 | BBBY | Mc Kinney | 2975 Craig Drive | Mckinney | TX | 75072 | 28,016 |
| 832 | BBBY | Raleigh Triangle | 3604 Sumner Blvd, Suite 104 | Raleigh | NC | 27616 | 32,000 |
| 833 | BBBY | Viera | 2291 Town Center Ave, Suite 101 | Melbourne | FL | 32940 | 24,329 |
| 837 | BBBY | Brookfield | 14 Candlewood Lake Road | Brookfield | CT | 06804 | 37,640 |
| 838 | BBBY | Highlands Ranch | 9315 Dorchester Street, Suite 100 | Highlands Ranch | CO | 80129 | 23,000 |
| 839 | BBBY | Green Bay | 825 Pilgrim Way Suite B | Green Bay | WI | 54304 | 24,296 |
| 841 | BBBY | Concord | 10 Loudon Road | Concord | NH | 03301 | 23,325 |
| 1002 | BBBY | San Antonio | 6001 Nw Loop 410 Suite #120 | San Antonio | TX | 78238 | 28,000 |
| 1011 | BBBY | Aberdeen | 200 Aberdeen Commons, 11088 Us 15-501 Highv | Aberdeen | NC | 28315 | 22,975 |
| 1014 | BBBY | Moreland Avenue | 1235 Caroline Street Ne | Atlanta | GA | 30307 | 23,606 |
| 1021 | BBBY | Omaha | 1220 South 71St Street | Omaha | NE | 68106 | 32,000 |
| 1024 | BBBY | Rockwall | 963 East Interstate Highway 30 | Rockwall | TX | 75087 | 23,000 |
| 1028 | BBBY | Lakeland | 1500 Town Center Drive | Lakeland | FL | 33803 | 30,000 |
| 1030 | BBBY | La Quinta | 79-110 Hwy 111 | La Quinta | CA | 92253 | 30,000 |
| 1033 | BBBY | Gilbert | 2793 S Market St, Suite 101 | Gilbert | AZ | 85296 | 31,957 |
| 1035 | BBBY | Turkey Creek | 11263 Parkside Drive, Suite 612 | Knoxville | TN | 37934 | 25,000 |
| 1044 | BBBY | Plymouth | 200 Colony Place | Plymouth | MA | 02360 | 25,072 |
| 1053 | BBBY | Crestview Hills | 2757 Town Center Blvd | Crestview Hills | KY | 41017 | 26,989 |
| 1056 | BBBY | Hamburg | 3701 Mckinley Parkway | Blasdell | NY | 14219 | 25,000 |
| 1059 | BBBY | Clarence | 4401 Transit Road | Williamsville | NY | 14221 | 30,000 |
| 1069 | BBBY | Cypress | 25839 Us Highway 290 | Cypress | TX | 77429 | 30,000 |
| 1073 | BBBY | Kalispell | 2411 Highway 93 North | Kalispell | MT | 59901 | 23,000 |
| 1077 | BBBY | Camelback | 1919 East Camelback Road, Suite #128 | Phoenix | AZ | 85016 | 22,660 |
| 1082 | BBBY | Franklin Park | 5135 Monroe Street | Toldeo | OH | 43623 | 32,154 |
| 1091 | BBBY | Rio Grande | 3201 Rt 9 South, Unit B | Rio Grande | NJ | 08242 | 22,600 |
| 1094 | BBBY | Akers Mills | 2955 Cobb Parkway, Suite 110 | Atlanta | GA | 30339 | 29,000 |
| 1096 | BBBY | Clifton | 404 State Route 3 | Clifton | NJ | 07014 | 24,080 |
| 1097 | BBBY | Murrieta | 24450 Village Walk Place | Murrieta | CA | 92562 | 33,000 |
| 1107 | BBBY | San Marcos | 1050 Mckinley Place Dr, Bldg 2, Suite 220 | San Marcos | TX | 78666 | 23,000 |
| 1108 | BBBY | Longmont | 205 Ken Pratt Blvd., Suite 240 | Longmont | CO | 80501 | 28,028 |
| 1110 | BBBY | Miracle Market Place | 3301 Coral Way | Miami | FL | 33145 | 30,250 |
| 1112 | BBBY | Rutland | 322 Route 7 South | Rutland | VT | 05701 | 24,000 |
| 1115 | BBBY | Bozeman | 2155 West Cattail St | Bozeman | MT | 59718 | 19,711 |
| 1117 | BBBY | Conroe | 2920 Interstate 45 N. | Conroe | TX | 77303 | 24,686 |
| 1119 | BBBY | Peachtree City | 1245 North Peachtree Parkway | Peachtree City | GA | 30269 | 23,401 |
| 1125 | BBBY | North Naples | 13585 Tamiami Trail N. Unit #6 | Naples | FL | 34110 | 25,002 |
| 1126 | BBBY | North Greensboro | 1618 Highwoods Blvd | Greensboro | NC | 27410 | 30,000 |
| 1127 | BBBY | Keizer | 6180 Ulali Drive | Keizer | OR | 97303 | 28,048 |
| 1129 | BBBY | Olympia | 2405 4Th Avenue West | Olympia | WA | 98502 | 28,000 |
| 1130 | BBBY | East Vancouver | 16701 South East Mill Plain Blvd | Vancouver | WA | 98684 | 28,000 |
| 1133 | BBBY | Cottonwood Commons | 3601 Old Airport Road, Suite A | Albuquerque | NM | 87114 | 28,000 |
| 1138 | BBBY | Jacksonville Beach | 4054 South 3Rd Street | Jacksonville Beach | FL | 32250 | 29,000 |
| 1142 | BBBY | Rogers | 2203 Promenade Boulevard, Suite 20210 | Rogers | AR | 72758 | 30,000 |
| 1143 | BBBY | East Colonial | 3228 East Colonial Drive | Orlando | FL | 32803 | 27,761 |
| 1149 | BBBY | Sioux Falls | 3800 South Louise Ave, Suite 2 | Sioux Falls | SD | 57106 | 40,843 |
| 1150 | BBBY | Augusta | 42 Whitten Road, Suite 1 | Augusta | ME | 04330 | 25,846 |
| 1154 | BBBY | Petoskey | 910 Spring Street | Petoskey | MI | 49770 | 21,000 |
| 1157 | BBBY | Missoula | 3017 Paxson Street | Missoula | MT | 59801 | 21,641 |
| 1161 | BBBY | Mueller | 1201 Barbara Jordan Blvd, Suite 200 | Austin | TX | 78723 | 25,000 |
| 1162 | BBBY | 202 & Dobson | 837 North Dobson Road | Mesa | AZ | 85201 | 30,000 |
| 1175 | BBBY | Anchorage | 601 E Dimond Blvd | Anchorage | AK | 99518 | 29,486 |
| 1177 | BBBY | Dc Usa | 3100 14Th Street Nw | Washington | DC | 20010 | 33,940 |

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| Store List | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1179 | BBBY | Mooresville | 627 River Highway | Mooresville | NC | 28117 | 28,000 |
| 1190 | BBBY | Gulf Shores | 3800 Gulf Shores Parkway, Suite 300 | Gulf Shores | AL | 36542 | 25,000 |
| 1203 | BBBY | Willowbrook | 7175 Kingery Highway | Willowbrook | IL | 60527 | 28,000 |
| 1207 | BBBY | Northgate Mall | 401 Ne Northgate Way Suite 2100 | Seattle | WA | 98125 | 28,176 |
| 1209 | BBBY | Wesley Chapel | 5845 Wesley Grove Boulevard | Wesley Chapel | FL | 33544 | 30,000 |
| 1212 | BBBY | Euless | 2800 Highway 121 Suite 600 | Euless | TX | 76039 | 28,000 |
| 1227 | BBBY | Foxboro | 330 Patriot Place | Foxborough | MA | 02035 | 30,000 |
| 1234 | BBBY | Lady Lake | 546 N. Highway 441 | Lady Lake | FL | 32159 | 28,000 |
| 1237 | BBBY | Morehead City | 5160 Highway 70 Suite 600 | Morehead City | NC | 28557 | 20,400 |
| 1244 | BBBY | Portsmouth | 100 Durgin Lane | Portsmouth | NH | 03801 | 37,843 |
| 1258 | BBBY | Hingham | 9 Shipyard Drive | Hingham | MA | 02043 | 28,102 |
| 1259 | BBBY | Flowood | 760 Mackenzie Lane | Flowood | MS | 39232 | 25,000 |
| 1260 | BBBY | Sandy | 10433 South State Street | Sandy | UT | 84070 | 28,000 |
| 1265 | BBBY | Warner Robins | 3060 Watson Boulevard | Warner Robins | GA | 31093 | 20,000 |
| 1266 | BBBY | Bear Valley Road | 18815 Bear Valley Road | Apple Valley | CA | 92308 | 25,000 |
| 1268 | BBBY | University Town Center | 111 N Cattlemen Rd | Sarasota | FL | 34243 | 35,029 |
| 1291 | BBBY | West El Paso | 655 Sunland Park Drive, Suite I | El Paso | TX | 79912 | 25,002 |
| 1304 | BBBY | Cape Coral | 1827 Ne Pine Island Road | Cape Coral | FL | 33909 | 27,978 |
| 1305 | BBBY | Palm Springs | 5200 E. Ramon Road Building B | Palm Springs | CA | 92264 | 28,245 |
| 1307 | BBBY | Prescott | 3250 Gateway Blvd Ste. 508 | Prescott | AZ | 86303 | 30,078 |
| 1308 | BBBY | Schererville | 124 Us Highway 41 | Schererville | IN | 46375 | 34,163 |
| 1309 | BBBY | Hamilton | 160 Marketplace Boulevard | Hamilton | NJ | 08691 | 30,704 |
| 1310 | BBBY | Billings | 2821 King Ave West | Billings | MT | 59102 | 35,115 |
| 1312 | BBBY | Collierville | 4610 Merchants Park Circle Suite 501 | Collierville | TN | 38017 | 28,307 |
| 1313 | BBBY | Southaven | 6400 Towne Center Loop | Southaven | MS | 38671 | 25,080 |
| 1314 | BBBY | Riverhead | 1440 Old Country Road Suite 300 | Riverhead | NY | 11901 | 30,031 |
| 1317 | BBBY | The Forum | 8262 Agora Parkway | Selma | TX | 78154 | 34,000 |
| 1321 | BBBY | Durango | 800 South Camino Del Rio | Durango | CO | 81301 | 25,492 |
| 1326 | BBBY | Pearlridge | 145 Kaonohi St | Aiea | HI | 96701 | 45,901 |
| 1327 | BBBY | Stroudsburg | 143 Radio Drive | Stroudsburg | PA | 18360 | 25,192 |
| 1331 | BBBY | Lancaster | 2350 Lincoln Highway East Suite 100 | Lancaster | PA | 17602 | 42,923 |
| 1333 | BBBY | Rapid City | 1365 Eglin Street | Rapid City | SD | 57701 | 23,400 |
| 1336 | BBBY | Burlington | 1915 Marketplace Drive | Burlington | WA | 98233 | 27,203 |
| 1338 | BBBY | Winter Garden | 3215 Daniels Road | Winter Garden | FL | 34787 | 28,633 |
| 1341 | BBBY | Christiana | 331 West Main Street | Newark | DE | 19702 | 37,500 |
| 1365 | BBBY | Longview | 422 W Loop 281 Suite 200 | Longview | TX | 75605 | 24,960 |
| 1367 | BBBY | Panama City Beach, Fl | 15600 Panama City Beach Pkwy | Panama City Beach | FL | 32413 | 23,774 |
| 1372 | BBBY | Silverdale | 9991 Mickelberry Road Nw | Silverdale | WA | 98383 | 28,900 |
| 1392 | BBBY | Denham Springs | 10129 Crossing Way Suite 420 | Denham Springs | LA | 70726 | 23,400 |
| 1403 | BBBY | Flower Mound | 6101 Long Prairie Rd Suite 200 | Flower Mound | TX | 75028 | 29,967 |
| 1405 | BBBY | Holly Springs | 208 Grand Hill Place | Holly Springs | NC | 27540 | 23,400 |
| 1409 | BBBY | Tuscaloosa | 1320 Mcfarland Blvd E Bldg 300 | Tuscaloosa | AL | 35404 | 23,000 |
| 1422 | BBBY | Rehoboth Beach | 30134 Veterans Way | Rehoboth Beach | DE | 19971 | 23,550 |
| 3001 | BABY | Rockville | 1683 Rockville Pike | Rockville | MD | 20852-1619 | 42,296 |
| 3002 | BABY | Scarsdale | 1019 Central Park Ave | Scarsdale | NY | 10583 | 32,200 |
| 3003 | BABY | Paramus | 34 East Ridgewood Ave | Paramus | NJ | 07652-3613 | 63,479 |
| 3005 | BABY | Westbury | 895 East Gate Blvd | Garden City | NY | 11530-2104 | 50,000 |
| 3006 | BABY | Totowa | 545 Route 46 West | Totowa | NJ | 07512-1735 | 33,766 |
| 3007 | BABY | Manhattan | 3 Enterprise Ave N. Suite 3 | Secaucus | NY | 07094 | 34,532 |
| 3008 | BABY | Springfield | 6398 Springfield Plaza | Springfield | VA | 22150-3431 | 28,000 |
| 3009 | BABY | Downers Grove | 1556 Butterfield Road | Downers Grove | IL | 60515-1003 | 35,445 |
| 3010 | BABY | Cherry Hill | 1590 Kings Highway North | Cherry Hill | NJ | 08034 | 30,226 |
| 3011 | BABY | Utica | 13361 Hall Road, Suite 102 | Utica | MI | 48315-5884 | 32,180 |
| 3012 | BABY | Canton | 42595 Ford Road | Canton | MI | 48187-3381 | 32,000 |
| 3013 | BABY | Columbus (Easton) | 3749 Easton Market | Columbus | OH | 43219-6023 | 27,430 |
| 3015 | BABY | Coral Springs | 2035 N. University Drive | Coral Springs | FL | 33071-6132 | 22,865 |
| 3016 | BABY | Greenwood | 1230 N. Us 31, Suite A | Greenwood | IN | 46142-4501 | 31,168 |
| 3017 | BABY | Schaumburg, Il | 580 E. Golf Road | Schaumburg | IL | 60173-4442 | 32,800 |
| 3018 | BABY | Austin | 5400 Brodie Lane, Suite 400 | Austin | TX | 78745-2526 | 28,730 |
| 3019 | BABY | Augusta, Ga | 242 Robert C. Daniels Jr. Parkway | Augusta | GA | 30909-0803 | 26,735 |
| 3021 | BABY | Plano, Tx | 2712 N. Central Expressway | Plano | TX | 75074 | 28,008 |
| 3022 | BABY | Chandler, Az | 2640 W. Chandler Blvd. | Chandler | AZ | 85224 | 35,606 |
| 3023 | BABY | Scottsdale, Az | 10080 N. 90Th Street | Scottsdale | AZ | 85258 | 34,920 |

**Bed Bath & Beyond.2023.Wave 5**
Exhibit A

| Store List |
| --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3024 | BABY | Carolina Pavillion, Nc | 9555 South Blvd | Charlotte | NC | 28273-6901 | 31,278 |
| 3025 | BABY | Flagler | 8241 West Flagler Street, Suite 100 | Miami | FL | 33144 | 29,953 |
| 3026 | BABY | Whitehall (Allentown), Pa | 1915 Whitehall Mall | Whitehall | PA | 18052-5119 | 30,322 |
| 3027 | BABY | Addison | 13900 Dallas Parkway | Dallas | TX | 75240-4323 | 33,586 |
| 3028 | BABY | Nashua | 213 Daniel Webster Highway | Nashua | NH | 03060-6600 | 30,491 |
| 3029 | BABY | Brandon | 11345 Causeway Blvd | Brandon | FL | 33511-2904 | 35,150 |
| 3031 | BABY | Hoover | 4351 Creekside Ave. | Hoover | AL | 35244-5019 | 33,843 |
| 3033 | BABY | Alpharetta | 7121 North Point Parkway | Alpharetta | GA | 30022-8255 | 40,787 |
| 3034 | BABY | San Jose | 5353 Almaden Expressway Suite A 100 | San Jose | CA | 95118-3637 | 37,849 |
| 3036 | BABY | Colonie | 1440 Central Avenue | Colonie | NY | 12205-5118 | 37,210 |
| 3037 | BABY | Bridgewater | 711 Route 28 | Bridgewater | NJ | 08807-2401 | 32,206 |
| 3038 | BABY | Brookfield | 665 Main Street | Brookfield | WI | 53005 | 32,888 |
| 3039 | BABY | Frisco | 2930 Preston Rd Suite 600 | Frisco | TX | 75034-9055 | 32,746 |
| 3040 | BABY | Crystal Lake | 5540 Northwest Hwy | Crystal Lake | IL | 60014-8016 | 27,000 |
| 3042 | BABY | Lexington | 2321 Sir Barton Way Suite 110 | Lexington | KY | 40509-2434 | 32,498 |
| 3043 | BABY | Temecula | 40438 Winchester Road | Temecula | CA | 92591 | 28,897 |
| 3044 | BABY | North Cincinnati (Deerfield) | 5255 Deerfield Blvd. | Mason | OH | 45040-2509 | 27,400 |
| 3046 | BABY | Christiana | 501 West Main St. | Newark | DE | 19702-1534 | 30,057 |
| 3047 | BABY | Grand Rapids (Kentwood) | 4100 28Th Street Se | Kentwood | MI | 49512-1904 | 34,500 |
| 3048 | BABY | Fresno | 7458 N Blackstone Ave | Fresno | CA | 93720-4301 | 28,037 |
| 3049 | BABY | Pembroke Pines | 11360 Pines Blvd | Pembroke Pines | FL | 33026-4102 | 31,000 |
| 3050 | BABY | Morrisville | 3121 Market Center Drive | Morrisville | NC | 27560 | 25,000 |
| 3051 | BABY | Rivers Edge | 4030 East 82Nd Street | Indianapolis | IN | 46250 | 26,148 |
| 3052 | BABY | Hurst | 1451 West Pipeline Road | Hurst | TX | 76053-4628 | 33,862 |
| 3053 | BABY | Tulsa | 10017 East 71St Street | Tulsa | OK | 74133-3210 | 28,000 |
| 3054 | BABY | Fort Worth | 4648 Sw Loop 820 | Fort Worth | TX | 76109 | 29,549 |
| 3055 | BABY | Pleasant Hill | 3250 Buskirk Ave Suite 300A | Pleasant Hill | CA | 94523-7309 | 30,163 |
| 3056 | BABY | Snellville | 1670 Scenic Hwy N Suite 124 | Snellville | GA | 30078-2132 | 28,790 |
| 3057 | BABY | Overland Park | 12055 Metcalf Avenue | Overland Park | KS | 66213-1121 | 30,000 |
| 3058 | BABY | Elk Grove | 7621 Laguna Blvd | Elk Grove | CA | 95758-5061 | 31,079 |
| 3060 | BABY | Braintree | 160 Granite St. | Braintree | MA | 02184-1747 | 33,508 |
| 3062 | BABY | Independence | 20000 East Jackson Drive | Independence | MO | 64057-1568 | 28,245 |
| 3063 | BABY | Encinitas | 1014 N El Camino Real | Encinitas | CA | 92024 | 27,260 |
| 3064 | BABY | Naperville | 324 S Route 59 | Naperville | IL | 60540-3924 | 22,903 |
| 3065 | BABY | Woodbury | 9160 Hudson Road | Woodbury | MN | 55125-7001 | 28,487 |
| 3066 | BABY | Sandy | 10230 South State Street | Sandy | UT | 84070-4115 | 32,928 |
| 3067 | BABY | Webster | 19801 Gulf Freeway Suite 800 | Webster | TX | 77598-3802 | 30,000 |
| 3070 | BABY | Ballwin | 15355A Manchester Road | Ballwin | MO | 63011-3026 | 28,150 |
| 3071 | BABY | Jacksonville | 8801 Southside Blvd Unit 10 | Jacksonville | FL | 32256-0796 | 25,000 |
| 3072 | BABY | Altamonte Springs | 130 E Altamonte Dr Suite 1000 | Altamonte Springs | FL | 32701-4324 | 27,013 |
| 3073 | BABY | W Desmoines | 4100 University Ave Ste 115 | West Des Moines | IA | 50266-5958 | 25,938 |
| 3074 | BABY | E. Colonial (Orlando) | 3206 East Colonial Drive | Orlando | FL | 32803-5121 | 25,205 |
| 3076 | BABY | Torrance | 3700 Torrance Blvd. | Torrance | CA | 90503-4808 | 36,566 |
| 3080 | BABY | Potomac Mills | 2700 Potomac Mills Circle, Suite 100 | Woodbridge | VA | 22192-4651 | 38,243 |
| 3081 | BABY | West Long Branch | 310 Route 36 | West Long Branch | NJ | 07764-1026 | 22,223 |
| 3083 | BABY | Amherst | 1261 Niagara Falls Blvd Ste 1 | Amherst | NY | 14226-1160 | 29,484 |
| 3084 | BABY | Mission Viejo | 25322 El Paseo | Mission Viejo | CA | 92691-6906 | 36,033 |
| 3086 | BABY | Knoxville | 202 Morrell Road | Knoxville | TN | 37919-5876 | 25,000 |
| 3087 | BABY | Albuquerque | 2451 San Mateo Blvd Ne Suite C | Albuquerque | NM | 87110-4417 | 27,839 |
| 3088 | BABY | Roseville | 1120 Galleria Blvd Suite 160 | Roseville | CA | 95678-1992 | 29,436 |
| 3090 | BABY | Maplewood | 3200 Laclede Station Suite D | St Louis | MO | 63143-3709 | 24,628 |
| 3091 | BABY | Willowbrook | 17355 Tomball Parkway Suite 1K | Houston | TX | 77064-1180 | 29,250 |
| 3092 | BABY | Deptford | 1745 Deptford Center Road | Deptford | NJ | 08096-5662 | 24,963 |
| 3093 | BABY | Beachwood (Harvard Park) | 4045 Richmond Road | Warrensville Heights | OH | 44122-6048 | 25,446 |
| 3094 | BABY | Livingston | 530 W Mount Pleasant Avenue | Livingston | NJ | 07039-1740 | 25,356 |
| 3095 | BABY | Yorba Linda | 22999 Savi Ranch Parkway | Yorba Linda | CA | 92887-3095 | 25,418 |
| 3096 | BABY | Rancho Cucamonga | 11530 4Th Street Suite 125 | Rancho Cucamonga | CA | 91730-3096 | 24,000 |
| 3097 | BABY | Redlands | 27651 San Bernardino Ave Ste 110 | Redlands | CA | 923745030 | 22,047 |
| 3098 | BABY | Tukwila | 17686 Southcenter Parkway | Tukwila | WA | 98188-3705 | 25,165 |
| 3099 | BABY | West Hills | 6621 Fallbrook Avenue, Unit B | West Hills | CA | 91307-3520 | 20,500 |
| 3100 | BABY | Kennesaw | 2555 Cobb Place Lane Nw Ste 50 | Kennesaw | GA | 30144-6871 | 25,526 |
| 3101 | BABY | Omaha | 12204 K Plaza | Omaha | NE | 68137 | 25,032 |
| 3103 | BABY | Montgomeryville | 751 Horsham Rd Unit B1 | Landsdale | PA | 19446-6489 | 23,084 |

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| Store List |
| --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3104 | BABY | Wichita | 2756 N Greenwich Ct | Wichita | KS | 67226-3104 | 14,931 |
| 3105 | BABY | Aurora | 6492 South Parker Road | Aurora | CO | 80016-1080 | 23,505 |
| 3106 | BABY | Southlake | 2901 East State Hwy 114 | Southlake | TX | 76092-6694 | 23,428 |
| 3108 | BABY | Daly City | 149 Serramonte Center | Daly City | CA | 94015-3108 | 22,006 |
| 3109 | BABY | Katy | 24600 Katy Fwy Suite 200 | Katy | TX | 77494-3109 | 23,000 |
| 3110 | BABY | Franklin | 2000 Mallory Lane, Suite 400 | Franklin | TN | 37067-8208 | 23,947 |
| 3111 | BABY | Pharr (Mcallen) | 500 N Jackson Road #A2 | Pharr | TX | 78577 | 25,056 |
| 3112 | BABY | Summerlin | 2315 Summa Drive Suite 120 | Las Vegas | NV | 89135-1460 | 26,315 |
| 3113 | BABY | Dulles Landing (Chantilly) | 24670 Dulles Landing Dr., Unit 130 | Dulles | VA | 20166-2628 | 23,205 |
| 3115 | BABY | Fayetteville | 2716 Freedom Parkway Drive | Fayetteville | NC | 28314-3115 | 18,294 |
| 3116 | BABY | Dayton | 6146 Wilmington Pike | Dayton | OH | 45459-7007 | 20,082 |
| 3117 | BABY | Cedar Park | 5001 183A Toll Road Suite I100 | Cedar Park | TX | 78613-7937 | 26,036 |
| 3118 | BABY | Chula Vista | 1660 Millenia Ave | Chula Vista | CA | 91915 | 15,000 |
| 3119 | BABY | Arrowhead | 7375 W Bell Rd | Peoria | AZ | 85382 | 21,315 |
| 3120 | BABY | Baton Rouge | 5919 Bluebonnet Blvd | Baton Rouge | LA | 70836 | 18,300 |
| 3121 | BABY | West Hartford | 1433 New Britain Avenue | West Haetford | CT | 06110 | 24,910 |
| 3122 | BABY | Humble | 20416 Highway 59N | Humble | TX | 77338-3122 | 34,875 |
| 3124 | BABY | Beaverton | 3485 Sw Cedar Hills Blvd S170 | Beaverton | OR | 97005-1309 | 17,595 |
| 3125 | BABY | San Antonio | 522 Northwest Loop 410, Suite 108 | San Antonio | TX | 78216-5551 | 20,086 |
| 3126 | BABY | Stafford | 12710 Fountain Lake Circle | Stafford | TX | 77477-3705 | 18,283 |
| 3128 | BABY | Clackamas | 12535 Se 82Nd Ave., Suite B | Clackamas | OR | 97015-9734 | 16,968 |
| 3129 | BABY | Westlake (Crocker Park) | 292 Main Street | Westlake | OH | 44145-3129 | 14,400 |
| 3130 | BABY | Woodbridge | 675 Us Highway 1S, Suite 1 | Iselin | NJ | 08830-3152 | 21,794 |
| 3131 | BABY | Concord | 8062 Concord Mills Blvd., Suite 20 | Concord | NC | 28027-4417 | 17,920 |
| 3132 | BABY | Littleton | 5134 South Wadsworth Blvd. | Lakewood | CO | 80123 | 23,024 |
| 3134 | BABY | Tyler | 8934 S. Broadway Ave., Ste 448 | Tyler | TX | 75703-5420 | 23,595 |
| 3136 | BABY | Henderson | 535 N. Stephanie Street | Henderson | NV | 89014-6613 | 20,008 |
| 3137 | BABY | Southfield | 28512 Telegraph Road | Southfield | MI | 48034 | 25,000 |
| 3138 | BABY | Westminster | 9350 North Sheridan Blvd. | Westminster | CO | 80031-6304 | 25,343 |
| 3139 | BABY | Madison | 201 Junction Rd | Madison | WI | 53717 | 22,192 |
| 3140 | BABY | Granger | 435 E. University Drive | Granger | IN | 46530 | 24,779 |

472

## Bed Bath & Beyond.2023.Wave 5
### Exhibit B

| Expense Budget (1) |
| --- |

| | Total Wave 5 |
| --- | --- |
| **Advertising** | |
| Media | 3,583,514 |
| Signs (2) | 4,162,018 |
| Sign Walkers | 4,354,800 |
| Subtotal Advertising | 12,100,332 |
| | |
| **Supervision** | |
| Fees / Wages / Expenses (3) | 11,722,250 |
| Subtotal Supervision | 11,722,250 |
| | |
| Miscellaneous /Legal (4) | 240,000 |
| | |
| Total Expenses | 24,062,582 |

Notes:

1. This Expense Budget contemplates a sale term of April, 26, 2023 through July 30, 2023.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

<u>EXHIBIT C</u>

For purposes of calculating "Net Recovery", (1) "Expenses" of the Sale shall mean those Store-level operating expenses directly attributable to and which arise during the Sale Term, limited to the following: (a) actual Occupancy Expenses for the Stores on a per location and per diem basis, plus the portion of any percentage rent obligations allocable to the sale of Merchandise and Additional Consultant Goods during the Sale; (b) actual wages and commissions for all Store-level employees used in conducting the Sale for actual days/hours worked during the Sale Term; (c) amounts payable by Merchant for benefits for Store-level employees used in conducting the Sale (including payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits); (d) all costs and expenses associated with Agent's on-site supervisors; (e) all costs and expenses associated with advertising of the Sale, including banners, sign-walkers, and interior and exterior signs that are produced for the Sale, other promotional costs including, without limitation, email blasts, digital advertising, television, ROP, other advertising and direct mail attributable to the Sale and ordered or requested by Agent; (f) postage/overnight delivery/courier charges to and from or among the Stores to the extent relating to the Sale; (g) credit card and bank card fees, chargebacks, and discounts relating to the Sale; (h) any and all costs of moving, transferring, or consolidating Merchandise between the Stores; (i) a pro rata portion for the Sale Term of Merchant's premiums in respect of general liability, casualty, property, inventory, and other insurance policies attributable to the Merchandise, the Stores and the Distribution Centers; (j) third-party payroll processing fees associated with the Sale; (k) armored car service and security personnel; (l) Agent's (i) actual cost of capital, (ii) reasonable legal fees and expenses attributable to the Sale Term, and (iii) bank fees and wire charges; and (m) [Reserved]; and (2) "Expenses" of the Sale shall exclude "Central Service Expenses" and "Distribution Center Expenses".

As used herein, the following terms have the following meanings:

"<u>Central Service Expenses</u>" means costs and expenses for Merchant's Central Services.

"<u>Central Services</u>" means those Merchant central administrative services necessary for the conduct and support of the Sale, including, but not limited to, use or and access to Merchant's:  (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities, (v) MIS and POS services, (vi) cash and inventory reconciliation, (vii) central administrative services and personnel to process and perform sales audit, banking, and other normal course administrative services customarily provided to or for the benefit of operating the Stores and Distribution Centers and including data processing and reporting, email preparation and distribution, information technology and e-commerce platform updates, functionality, and maintenance, (viii) such other central office services reasonably necessary (in the reasonable judgment of the Agent) for the Sale, and (vii) to use reasonably sized offices located at Merchant's central office facility to effect the Sale.

"<u>Distribution Center Expenses</u>" means the actual costs and expenses, including use and Occupancy Expenses and Distribution Center employee payroll and other obligations, of the operations of the Distribution Centers, and the actual costs and expenses (including outbound freight) related to the processing, transfer, and consolidation of Merchandise and supplies in the Distribution Centers and from the Distribution Centers to the Stores.

"<u>Occupancy Expenses</u>" means rent, percentage rent, common-area maintenance, landlord promotional fees, real estate and use taxes, merchant association dues and charges, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, routine repairs and maintenance, taxes and licenses, costs of all local, long-distance, and international telephone, satellite broadband connections, T-1 lines, broadband internet, and other telecommunications services, trash removal (to the extent excluded as a fixed charge component of lease obligation), snow removal, and ordinary course third-party cleanings, and pest control services.

## **<u>Schedule 1-B</u>**

**BBB Consulting Agreement**

DocuSign Envelope ID: 28C04384-591 42C9-B15E-69DCF675EFEA



March 2, 2021

***VIA EMAIL***
Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc.
650 Liberty Ave.
Union, NJ 07083
Email:  derek.dervish@bedbath.com

     Re:  **Letter Agreement Governing Inventory Disposition**

Dear Derek:

   By executing below, this letter shall serve as an agreement ("Agreement") between Hilco Merchant Resources, LLC, on the one hand ( "Agent" or a "Party"), and Buy Buy Baby, Inc., on the other hand ("Merchant" or a "Party" and together with the Agent, the "Parties"), under which Agent shall act as the exclusive agent for the purpose of conducting a sale of certain Merchandise (as defined below) at the Merchant's stores set forth on Work Orders issued by Merchant and agreed to by Agent from time to time (each a "Store" and collectively, the "Stores") through a "Store Closing", "Everything Must Go", "Everything on Sale" or similar themed sale (the "Sale"). The Parties hereby agree that the list of Stores on a Work Order may be supplemented from time to time by written amendment to this Agreement executed in accordance with the foregoing in which case any Store added to a Work Order shall be deemed a "Store" for all purposes under this Agreement, and the Parties shall mutually agree upon any modifications to the Sale Term, Expense Budget(s), and other terms and conditions that may be necessary or appropriate in light of the additional retail store locations.

**A.**  **Merchandise**

   For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below).  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "FF&E"); (3) damaged or defective merchandise that cannot be sold; or (4) gift cards (third party and Merchant branded).

**B.**  **Sale Term**

   The initial Sale shall commence on such date as set forth in an applicable Work Order (the "Sale Commencement Date") and conclude no later than such date as set forth in an applicable Work Order (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date.  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term."  At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant

DocuSign Envelope ID: 28C04384-591A-49C9-B15F-69DCF6758EEA

in broom clean condition and in accordance with the lease requirements for such premises, as directed by Merchant, in accordance with Section I herein. At the conclusion of the Sale at each Store, Agent shall photographically document the condition of each such Store. To the extent that the Sale as it pertains to a particular Store is delayed or interrupted because it is required to be closed due to the issuance of an order, rule, or regulation by a federal, state or local government agency related to COVID-19, the Sale Termination Date as to the affected Store shall be extended by the time period for which the Sale was delayed or interrupted.

C. **Project Management**

    (i)    <u>Agent's Undertakings</u>

During the Sale Term, Agent shall, in collaboration with Merchant, (a) provide qualified supervisors (the "<u>Supervisors</u>") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) assist Merchant with the creation and implementation of a customer transition program; (i) assist Merchant with determining the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (j) at Merchant's request, implement Agent's affiliate CareerFlex program for Merchant's Store level and other employees; and (k) provide such other related services deemed necessary or appropriate by Merchant and Agent.

Agent shall promptly substitute any Supervisors that Merchant finds to be unacceptable or unsuitable for any reason, in Merchant's sole discretion. Agent shall use reasonable means to ensure that the same Supervisors are assigned to Merchant's Stores for the duration of the Sale Term. In the event a Supervisor is replaced during the Sale Term, Agent will provide a new or replacement Supervisor with the same skill level as the Supervisor being replaced. Any new or replacement Supervisors assigned to Merchant's Stores during the Sale Term shall be subject to Merchant's reasonable approval. Merchant shall not be charged for any necessary training of new or replacement Supervisors. In the event that new or replacement Supervisors are not available, Agent shall reimburse Merchant for any training costs actually incurred by Merchant.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)    <u>Merchant's Undertakings</u>

During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) apply for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including landlord approvals and consents) for the Sale, including payment of all applicable costs and expenses associated therewith; (i) assist Agent with implementing the CareerFlex program for Merchant's Store level and other employees; and (j) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.

Merchant shall be responsible for providing direction to and supplies for the Stores in order to comply with federal, state and local COVID-19 related health and safety requirements, and Agent will assist with the implementation of such requirements at the Stores; provided, however, that Agent shall not be responsible to Merchant for the payment of nor liable for any fine, injury, death, or damage caused by or related to COVID-19 (collectively, "COVID-19 Losses"), unless such COVID-19 Losses were directly caused by Agent's gross negligence or willful misconduct. Agent's supervisors will provide their own personal protective equipment ("PPE") at no additional cost to Merchant. To the extent that temporary labor do not source and provide their own PPE, Agent will provide Merchant with Agent's cost (without lift or mark-up) for PPE and, if requested by Merchant, Agent will procure such PPE, and Merchant agrees to reimburse Agent for the costs associated therewith (in addition to amounts reflected in Exhibit B).

The Parties expressly acknowledge and agree that Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent. The Parties further expressly acknowledge and agree that Merchant shall have no liability to Agent's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's employment, hiring or retention of its employees, and such employees shall not be considered employees of Merchant.

**D.    <u>The Sale</u>**

All sales of Merchandise shall be made on behalf of Merchant. Agent does not have, nor shall it have, any right, title or interest in the Merchandise. All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by

3

DocuSign Envelope ID: 28C04384-591A3E9-B15E-69DCF6758EEA

check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

E.      **Agent Fee and Expenses in Connection with the Sale**

As used in this Agreement, the following terms shall have the following meanings:

(i)      "Gross Proceeds" shall mean the sum of the gross proceeds of all sales of Merchandise made in the Store during the Sale Term, net only of sales taxes.

(ii)      "Gross Recovery Threshold" shall mean the Gross Proceeds, calculated using the "gross rings" method, divided by the Retail Price of the Merchandise sold, calculated using the "gross rings" method.

(iii)      "Merchandise File" shall mean the Merchant's books and records, as well as all files provided to Agent during due diligence.

(iv)      "Retail Price" shall mean with respect to each item of Merchandise (excluding a small amount of Merchandise classified as clearance, "web deals," "as-is" or in-store special), the lower of the lowest ticketed, marked, shelf, Merchandise File, point of sale, or other file price as reflected in Merchant's books and records for such item.

In consideration of its services hereunder, Merchant shall pay Agent a "Base Fee" equal to sixty-five one hundredths of one percent (0.65%) of the Gross Proceeds of Merchandise sold at the Stores.  In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following Gross Recovery Thresholds (e.g., in each case, as calculated back to first dollar):

| Gross Recovery Threshold | Agent Incentive Fee |
|---|---|
| 65.10% - 66.0% | An additional .20% of Gross Proceeds |
| | Total Merchandise Fee of .85% of Gross Proceeds |
| 66.10% - 67.00% | An additional .10% of Gross Proceeds |
| | Total Merchandise Fee of .95% of Gross Proceeds |
| Over 67.00% | An additional .10% of Gross Proceeds |
| | Total Merchandise Fee of 1.05% of Gross Proceeds |

The definitive Gross Recovery Threshold shall be determined in connection with the Final Reconciliation, and once determined, the parties (as part of the Final Reconciliation) shall determine the actual amount of Agent's Incentive Fee.  Merchant shall pay any outstanding, unpaid portions of Agent's Incentive Fee in connection with the Final Reconciliation.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's other reasonable, documented out of pocket expenses.  To control expenses of the Sale, Merchant and Agent have established an aggregate budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision

4

DocuSign Envelope ID: 28C04384-591A-43C9-B15E-69DCF6758EEA

(including (without limitation) Supervisors' wages, travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable, at cost with no markup). The Expense Budget for the Sale is attached hereto as <u>Exhibit B</u>. In the event Agent desires to modify the Expense Budget attached hereto after the date of this Agreement, Agent will present such modifications to Merchant for Merchant's consent, which consent may be withheld by Merchant in Merchant's sole discretion. The costs of supervision set forth on <u>Exhibit B</u> includes, among other things, industry standard deferred compensation.

All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled on every Wednesday for the prior week and shall be paid within twenty-one (21) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store.

F.    <u>Indemnification</u>

(i)    <u>Merchant's Indemnification</u>

Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "<u>Agent Indemnified Parties</u>") harmless from and against all third-party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

(ii)    <u>Agent's Indemnification</u>

Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "<u>Merchant Indemnified Parties</u>") harmless from and against all third party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful

5

DocuSign Envelope ID: 38C04384-591A3D9-B15E-69D2F6758FEA

misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement.

## G.    Insurance

### (i)    Merchant's Insurance Obligations

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Agent to be named an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

### (ii)    Agent's Insurance Obligations

As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to this Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

## H.    Representations, Warranties, Covenants and Agreements

(i)    Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (d) all normal course hard markdowns on the Merchandise have been, and will

DocuSign Envelope ID: 28C04384-591A-4369-B15E-69DCF6758FEA

be, taken consistent with customary Merchant's practices, and (e) the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Agent.

(ii)     Agent warrants, represents, covenants and agrees that (a) Agent is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Agent's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Agent and this Agreement constitutes a valid and binding obligation of Agent enforceable against Agent in accordance with its terms and conditions, and the consent of no other entity or person is required for Agent to fully perform all of its obligations herein, (c) Agent shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, and (e) Agent will not take any disciplinary action against any employee of Merchant.

## I.   <u>Furniture, Fixtures and Equipment</u>

Agent shall sell the FF&E in the Stores from the Stores themselves.  In consideration for selling the FF&E, Agent shall be entitled to a commission from the sale of the FF&E equal to ten percent (10.0%) of the Gross Proceeds of the sale of the FF&E.

Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within 21 days after each such weekly reconciliation.

Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with (i) the sale of FF&E, and (ii) surrendering the premises in accordance with the lease requirements for such premises, as directed by Merchant, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties. Agent shall not have the right to abandon at the Stores any unsold FF&E; provided, however, in the event Merchant desires that Agent  decommission and/or de-brand (collectively, "Decommission") any Store and/or remove any FF&E that is affixed to a Store premises, including without limitation by glue, nails or screws, such Decommission and FF&E removal shall be subject to a separate scope of work, which may include an additional fee payable to Agent in connection with such work, and budget mutually agreed upon by Merchant and Agent.

## J.   <u>Termination</u>

The following shall constitute "Termination Events" hereunder:

(a)     Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting Party;

(b)    Any representation or warranty made by Merchant or Agent is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)    the Sale at all Stores is terminated or materially interrupted or impaired for any reason other than an event of default by Agent or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default. If this Agreement is terminated, Merchant shall be obligated to pay Agent all amounts due under this Agreement through and including the termination date.

## K.    <u>Notices</u>

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows: (a) To Merchant: at the address listed above, ATTN: EVP, Chief Stores Officer; (b) To Agent: c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847-849-0859, Attn: Ian S. Fredericks; or (c) such other address as may be designated in writing by Merchant or Agent.

## L.    <u>Independent Consultant</u>

Agent's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Agent or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Agent is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

## M.    <u>Non-Assignment</u>

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; provided, however Merchant may use the services of Agent in Stores leased by subsidiaries of Merchant. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

## N.    <u>Severability</u>

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum

DocuSign Envelope ID: 38C04384-591A32G9-B15E-69DCF6759FEA

extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.  If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.**    **Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of New Jersey (without reference to the conflicts of laws provisions therein).  Merchant and Agent waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Agent against Merchant or Merchant against Agent on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Agent, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

**P.**    **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.**    **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**R.**    **Ethical Conduct Policy**

It is the policy of Merchant and its subsidiaries and affiliates to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act).  Agent shall not, directly or indirectly, solicit or accept from, nor offer, promise or pay to, any individual or entity (including, but not limited, to any government official any bribe, kickback or any other improper payment of money or anything else of value.  This includes, but is not limited to, any improper payment in exchange for Merchant's execution of this Agreement. Agent will also require any subcontractor (of any level) to adhere to the same standards and will appropriately monitor its subcontractors to ensure such adherence.  In addition, any individual who is employed by or who represents Merchant is prohibited from soliciting, accepting, offering, promising or paying any bribe, kickback or any other improper payment of money or anything else of value. If any such improper actions are observed, contact our Legal Department

9

DocuSign Envelope ID: 28C04384-591A3C9-B15E-69DCF6758FEA

(Attention: General Counsel) at the address set forth herein and/or by telephone at 908-688-0888, so that the incident may be fully investigated.

### S.    Publicity

Agent may not discuss this Agreement or its content with the media, use the Merchant name or issue any press release or other public statement related hereto, unless authorized in writing by the Merchant. Unless otherwise authorized in writing by the Merchant, publicity prohibited hereunder shall include but not be limited to: press releases, press interviews, magazine articles, trade show displays, customer lists, web sites, social media sites, Agent success stories and present or prospective client references.

*            *            *

DocuSign Envelope ID: 28C04384-5491-43C9-B15E-69D6F6758EEA

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

*Sarah Baker*

By: Sarah Baker
Its:

**AGREED AND ACCEPTED as of the ___ day**

**of** _3/8/2021_____, **2021:**

BUY BUY BABY, INC.

*John Hartmann*

By: John Hartmann
Its:

DocuSign Envelope ID: 94887879-B3C3-4EA0-B364-930E972B2E56

**Hilco**

Merchant Resources

August 26, 2022

*VIA EMAIL*
Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc. 650
Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

Re:       **Amendment to Letter Agreements**

Derek:

Reference is made to (i) that certain letter agreement dated September 11, 2021 by and between Hilco Merchant Resources, LLC ("Agent" or a "Party") and Bed Bath & Beyond Inc. (the "BB&B" or a "Party") (as supplemented or amended, the "BB&B Agreement") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("BBB" or a "Party"; together with BB&B, the "Merchant"; collectively with BB&B and Agent, the "Parties") (as supplemented or amended, the "BBB Agreement" and together with the BB&B Agreement, the "Agreements") Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective Agreement.

The Parties hereby amend the Agreements as follows (the "Amendment"):

Section E. of the Agreements are hereby amended and modified as follows:

1.  The "Base Fee" is hereby increased from sixty-five one hundredths of one percent (0.65%) to eighty one hundredths of one percent (0.80%).

2.  With respect to the table outlining the "Gross Recovery Threshold" and "Agent Incentive Fee", the table is hereby amended and modified as follows:

    a.  The reference to "Total Merchandise Fee of .85% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.0% of Gross Proceeds";

    b.  The reference to "Total Merchandise Fee of .95% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.10% of Gross Proceeds"; and

    c.  The reference to "Total Merchandise Fee of 1.05% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.20% of Gross Proceeds".

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group on terms and conditions mutually agreed upon between the Agent and

DocuSign Envelope ID: 94987879-BC3-4E50-B364-930E972B2E56

Tiger Capital Group.  Per the Merchant's request, Agent shall continue to lead all aspects of the transactions contemplated by the Agreements.

With respect to this Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements.

This Amendment, together the Agreements, all prior amendments or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreements.

*          *          *

2

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

By:  Ian S. Fredericks

Its:  President

**AGREED AND ACCEPTED as of the ___ day of August, 2022:**

BED BATH & BEYOND, INC.

By:  Derek B Dervish

Its:  Senior Director of Asset Mgt. and Inventory Operations

BUY BUY BABY, INC.

By:  Derek B Dervish

Its:  Senior Director of Asset Mgt. and Inventory Operations

## __Schedule 2__

**Sale Guidelines**

## Sale Guidelines[1]

1.  The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2.  The Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3.  On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Consultant may solicit customers in the Closing Stores themselves.  On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.  At the conclusion of the Sale, the Consultant shall vacate the Closing Stores; *provided* that Consultant may abandon any furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking) ("FF&E") not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Consultant.  The Consultant shall notify the Merchant of its intention to abandon any FF&E at least two (2) days prior to the Termination Date.  The Merchant will have the option to remove the FF&E, at its own cost prior to the Termination Date.  Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.  For the avoidance of doubt, as of the Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

5.  The Consultant may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales.  The Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.  All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with the Consulting Agreement.

---

[1]  Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief.

6.      The Consultant shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Merchant and Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.  In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store.  In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order.  Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Consultant any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

9.      The Consultant shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Sales.  The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

10.     The Consultant shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

11.     The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

12.     Subject to the provisions of the Consulting Agreements, the Consultant shall have the right to use and sell all FF&E owned by the Merchant (the "Owned FF&E"), approved by the Merchant.  The Consultant may advertise the sale of the Owned FF&E in a manner consistent with these guidelines and the Consulting Agreement.  The purchasers of any Owned FF&E sold during the sale shall be permitted to remove the Owned FF&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Closing Store in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility, any FF&E.

2

13.  At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Merchant, Consultant and their agents and representatives shall continue to have access to the Closing Stores as provided for in the Consulting Agreements.

14.  The rights of landlords against Merchant for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

15.  If and to the extent that the landlord of any Closing Store affected hereby contends that the Merchant or Consultant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant and Consultant as follows:

If to Consultant:

Hilco Merchant Resources, LLC
One Northbrook Place
5 Revere Drive, Suite 206
Northbrook, IL 60062
Facsimile: 847- 849-0859
Attention: Hilco Merchant Resources, LLC c/o Ian S. Fredericks, Sarah Baker

with copies (which shall not constitute notice) to:

Riemer & Braunstein LLP
Times Square Tower, Suite 2506
Seven Times Square
New York, New York 10036
Attention: Steven Fox

-and-

Troutman Pepper Hamilton Sanders LLP
1313 N. Market St., P.O. Box 1709
Wilmington, DE 19899-1709
Attention: Marcy McLaughlin Smith

If to Merchant:

Bed Bath & Beyond Inc.
650 Liberty Avenue,
Union, New Jersey 07083
Attention:  Legal Department

with copies (which shall not constitute notice) to:

3

Cole Schotz P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
Attention:  Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq.
Email:  msirota@coleschotz.com
        wusatine@coleschotz.com
        fyudkin@coleschotz.com

- and -

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Derek I. Hunter
Email:  joshua.sussberg@kirkland.com
        emily.geier@kirkland.com
        derek.hunter@kirkland.com
        ross.fiedler@kirkland.com

- and -

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attention:  Charles B. Sterrett
Email: charles.sterrett@kirkland.com

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Joint Administration Requested) |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING AGREEMENTS, (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (III) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES OF CLOSING STORES, AND (IV) GRANTING RELATED RELIEF

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

The relief set forth on the following pages, numbered three (3) through twenty-seven (27),

is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an final order (this "Final Order") (a) authorizing the Debtors to assume the Consulting Agreements, (b) authorizing and approving the continuation or initiation of the Store Closings in accordance with the terms of the Consulting Agreements and the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, (c) authorizing customary bonuses to non-insider Closing Store employees who remain employed for the duration of the store closing process, (d) approving modifications to certain customer programs, including the return policy and acceptance of gift-cards and loyalty certificates, (e) scheduling a final hearing to consider approval of the Motion on a final basis, and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY**:

**FOUND AND DETERMINED THAT:**[1]

A.     The Debtors have advanced sound business reasons for assuming the Consulting Agreements and adopting the Sale Guidelines, as set forth in the Motion and at the Hearing, and assuming the Consulting Agreements is a reasonable exercise of the Debtors' business judgement and in the best interest of the Debtors and their estates.

B.     The Consulting Agreements, copies of which are attached to this Final Order as **Schedule 1-A** and **Schedule 1-B**, were negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

---

[1]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

C.     The assumption of the Consulting Agreements is a sound exercise of the Debtors' business judgment.

D.     The Sale Guidelines, which are attached hereto as **Schedule 2**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets, and are in the best interest of the Debtors' estates.

E.     The Store Closings and Sales are in the best interest of the Debtors' estates.

F.     The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.     The Debtors have represented that they intend to neither sell nor lease personally identifiable information pursuant to the relief requested in the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

H.     The entry of this Final Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby

**ORDERED THAT**:

1.     The Motion is **GRANTED** on a final basis as set forth herein.

2.     The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Final Order.

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

3.    The Debtors are authorized, but not directed, to make payments under the Store Closing Bonus Plan, as may be amended and modified from time to time.

4.    To the extent of any conflict between this Final Order, the Sale Guidelines, and the Consulting Agreements, the terms of this Final Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreements.

**I.      Authority to Assume the Consulting Agreements.**

5.    The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including: (a) making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court, (b) allowing the sale of Additional Consultant Goods, and (c) participating in an augmentation program, all as permitted under the Consulting Agreement. Consultant's fees and expenses shall be paid from the gross proceeds of the Sale, without adherence to any weekly, monthly or aggregate limitation in a debtor-in-possession financing or cash collateral budget entered in connection with these Chapter 11 Cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

6.    Subject to the restrictions set forth in this Final Order and the Sale Guidelines and any Side Letters (defined below), the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreements and the Sales, and each of the transactions contemplated by the Consulting Agreements, and any actions

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreements and/or the Sales prior to the date of this Final Order, are hereby approved and ratified.

7.     The Consulting Agreements and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, *provided, however,* that the Sale Guidelines may not be materially modified without the consent of the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent (which can be by email through counsel), and notice and a reasonable opportunity to object by the U.S. Trustee, landlords for the Closing Stores, and any statutory committee appointed in these Chapter 11 Cases. The Debtors are hereby authorized to enter into additional agreements in connection with any Closing Stores, or Sales related thereto, on terms materially consistent with the Debtors' historic practices, subject to the prior written consent (which can be by email through counsel) of the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent.

8.     Notwithstanding anything contrary in the Consulting Agreements, the Debtors and their estates shall not indemnify the Consultant for any damages arising out of the Consultant's fraud, willful misconduct, or gross negligence.

9.     To the extent the Consultant seeks to contract with Additional Consultants, the Consultant is authorized to enter into an agreement with Additional Consultants; *provided* that, Consultants provide noticed thereof to the Court.

| (Page | 8) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

## II.     Authority to Engage in Sales and Conduct Store Closings.

10.     The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue the Sales at the Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Consulting Agreements, as may be modified by any Side Letters (as defined below) between the Debtors and/or the Consultant and the landlords at the Closing Stores.

11.     The Sale Guidelines are approved in their entirety on a final basis.

12.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

13.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreements or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

14.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

## III.     Conduct of the Sales.

15.     All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and Store Closings pursuant to

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

the Consulting Agreements, including, without limitation, to conduct and advertise the sale of the

Merchandise and FF&E in the manner contemplated by and in accordance with this Final Order,

the Sale Guidelines, and the Consulting Agreements.

16.    The Debtors and Consultant are hereby authorized to take such actions as may be

necessary and appropriate to implement the Consulting Agreements and to conduct the Sales and

Store Closings without necessity of further order of this Court as provided in the Consulting

Agreements and the Sale Guidelines (subject to any Side Letters), including, but not limited to,

advertising the sale as a "store closing sale", "sale on everything", "everything must go", "going-

out-of-business", or similar-themed sales as contemplated in the Sale Guidelines through the

posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and

at enclosed mall closing locations to the extent the applicable closing location entrance does not

require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street

signage, as contemplated in the Sale Guidelines.

17.    Except as expressly provided in the Consulting Agreements and the Sale

Guidelines, the sale of the Merchandise and FF&E shall be conducted by the Debtors and the

Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant,

or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store

Closings or the Sales (including the sale of the Merchandise and FF&E), the rejection of leases,

abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with

the Store Closings or the Sales.  Breach of any such provisions in these Chapter 11 Cases in

(Page | 10)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Final Order, any Side Letter and the Sale Guidelines.  The Debtors and/or Consultant and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Consultant and any such landlords, provided that nothing in such Side Letters affects the provisions of this Final Order.  In the event of any conflict between the Sale Guidelines, the Consulting Agreement, any Side Letter, and this Final Order, the terms of such Side Letter shall control. Copies of any Side Letters will be provided to the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, and/or any statutory committee of unsecured creditors at such point as to provide the reasonable opportunity to object.

18.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or

| (Page | 11) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

otherwise impeding, the conduct of the Store Closings, and/or [(b) instituting any action or proceeding in any court (other than in the Bankruptcy Court or the Canadian Court)] or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Merchandise or FF&E or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

19.     In accordance with and subject to the terms and conditions of the Consulting Agreements, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines (as modified by any Side Letters) and this Final Order.

20.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreements and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, provided that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other

(Page | 12)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreements. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state, provincial or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

21.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets and all sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that subject to the terms of the DIP Orders, any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreements).

22.     The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among, and into, the Closing Stores in accordance with the Sale Guidelines, as applicable. The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreements and the Sale Guidelines.

(Page | 13)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

23.     Neither the Sale Guidelines, Consulting Agreements, nor this Final Order authorize the Debtors to transfer or sell to Consultant or any other party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number) ("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreements solely for purposes of advertising and promoting the Sales.

24.     The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.  At the conclusion of the Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer PII and that any records containing PII were shredded, erased or otherwise modified to render the PII unreadable or undecipherable.

25.     Nothing herein shall limit the Debtors' right to pause or discontinue a Sale at a Closing Store on notice to affected parties and subject to the prior written consent (which can be

(Page | 14)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

by email through counsel) of the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent.

## IV.    Customer Programs.

26.    For the first twenty-one (21) days from the date of the Final Order, the Debtors shall accept returns of merchandise sold by the Debtors in the ordinary course prior to the commencement of any Sale; *provided*, that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered in the Store Closings; *provided*, *further*, that (i) returns of items sold on a "final" basis, including items sold in the Closing Stores on a "final" basis pursuant to the Final Order, shall not be accepted, and (ii) gift cards may not be returned for cash.

27.    All in-store sales in Store Closings shall be "as is" and final.  Returns related to the purchases made in Store Closings shall not be accepted, except as set forth herein.

28.    Notwithstanding anything herein, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors shall accept return of any goods purchased during the Store Closings that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund; *provided*, that the consumer must return the merchandise within twenty-one (21) days of their

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

purchase, the consumer must provide a receipt for the purchase to the Debtors, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors.

29.    All sales of Merchandise shall be made by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with the Debtors' policies.

30.    The Debtors shall no longer accept gift certificates, gift cards, or loyalty certificates in their e-commerce business or in-store, and all such gift certificates, gift cards, and loyalty certificates will be deemed to have no remaining value.  Notwithstanding any policy or state law to the contrary, the gift cards, gift certificates, and loyalty certificates are not redeemable for cash at any time.

**V.    Dispute Resolution Procedures with Governmental Units.**

31.    Nothing in this Final Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The Store Closings and the Sales

(Page | 16)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax (including, but not limited to, the collection of Sales Taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws"). Nothing in this Final Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court or the Canadian Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, the CCAA (or any Order of the Canadian Court). Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code or the CCAA, as applicable. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

32.     To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement

(Page | 17)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the sale of the Store Closing Assets, including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply and the Dispute Resolution Procedures shall control over any Side Letters (provided that, these Dispute Resolution Procedures shall not apply with respect to the sale of Store Closure Assets in Canadian stores, and that any such disputes shall be dealt with by the Canadian Court):

i. Provided that the Sales are conducted in accordance with this Order, any Final Order, and the Sale Guidelines, the Debtors, the Consultant, and the Debtors' landlords, shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the Sales of the Store Closure Assets, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sales and sales of the Store Closure Assets (collectively, the "Liquidation Sale Laws") of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); *provided*, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii. Within five (5) business days after entry of this Final Order, the Debtors will serve by first-class mail, copies of this Final Order, the Consulting Agreements, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or

(Page | 18)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; and (d) the landlords for the Closing Stores (collectively, the "Dispute Notice Parties").

iii.    To the extent that there is a dispute arising from or relating to the Sales, this Final Order, the Consulting Agreements, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten (10) days following entry of this Final Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Charles B. Sterrett; (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq.; (c) on behalf of Hilco Merchant Resources, LLC, (i) One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847-849-0859, Attn: Hilco Merchant Resources, LLC c/o Ian S. Fredericks and Sarah Baker and (ii) Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York, Fax: 212-719-0140, Attn: Steven Fox; and (iii) Troutman Pepper Hamilton Sanders LLP, 1313 N. Market St., P.O. Box 1709, Wilmington, DE 19899-1709, Fax: 866-422-3027, Attn: Marcy McLaughlin Smith; (d) Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, and Michael Pera; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Megan R. Volin. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv.    In the event that a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to this Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to this Final Order, absent further order of the Bankruptcy Court. Upon the entry of this

(Page | 19)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Final Order, the Bankruptcy Court grants authority for the Debtors and the Consultant to conduct the Sales pursuant to the terms of this Final Order, the Consulting Agreements, and the Sale Guidelines (as may be modified by the side letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v. If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

33. Subject to paragraphs 31 and 32 above, each and every federal, state, or local agency, departmental, or Governmental Unit with regulatory authority over the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

34. Provided that the Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreements, and the Sale Guidelines (as may be modified by Side Letters), and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Final Order and the

(Page | 20)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

35.     Nothing in this Final Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreements, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

**VI.     Other Provisions.**

36.     To the extent the Debtors are subject to any state Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

37.     Neither the Consultant nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the

(Page | 21)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Debtors and/or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores, *provided* that any such services and/or transactions shall be approved by separate order of this Court, and *provided further* that the rights of the U.S. Trustee and all other parties in interest to object to any request that the Agent or its affiliates be permitted to provide such additional services and/or transactions are fully reserved.

38. On a confidential basis and for professionals' "eyes only" and upon the written (which can be by email through counsel) request of the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, or the official committee of unsecured creditors, if any, the Debtors shall provide such requesting party, if any, with copies of those periodic reports and information regarding the conduct of the Sale that are prepared by the Debtors, their professionals or the Consultant and that are consistent with practices that were in place pre-petition; *provided*, that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Sales.

39. Not later than seven (7) business days prior to the objection deadline related to entry of an order approving the Motion on a final basis, the Consultant shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases and the Debtors shall serve the same on the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, and any statutory committee appointed in these cases, and all

(Page | 22)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.

40. To the extent the Consultant seeks to contract with other parties as additional consultants (each an "**Additional Consultant**"), and to the extent set forth in the Consulting Agreement, the Debtors shall provide notice thereof to the Office of the United States Trustee, the DIP Agent, the Prepetition ABL Agent, the Prepetition FILO Agent, and any statutory committee appointed in these cases, and such Additional Consultant shall promptly file a declaration disclosing the information set forth in paragraph 39 of the Interim Order and, upon being contracted with, be subject to the provisions of this Final Order.

41. Consultant shall act solely as an independent consultant to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Consulting Agreements (including the Consultant's indemnity obligations thereunder) or the Sale Guidelines, with the exception of acts of gross negligence or willful misconduct and, for greater certainty, the Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any legislation governing employment or labor standards or pension benefits or health and safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

42. The Debtors are authorized and permitted to transfer to the Consultant personal information in the Debtors' custody and control solely for the purposes of assisting with and

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

conducting the Sale and only to the extent necessary for such purposes, provided that Consultant removes such personal information from the FF&E prior to the abandonment of the same.

43.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Final Order shall is deemed:  (a) an admission as to the validity amount of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to payments made to the Consultant, which are governed by the reconciliation procedures in the Consulting Agreements.

44.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related

(Page | 24)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

party to any such Insider pursuant to this Interim Order without further court approval on notice to parties in interest.

45.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

46.     Nothing in this Final Order or the Sale Guidelines shall apply to BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") or alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada. from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Final Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

47.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

48.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

49.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

50.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

51.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

52.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

53.    This Court shall retain jurisdiction with regard to all issues or disputes relating to this Final Order or the Consulting Agreements, including, but not limited to, (a) any claim or issue

(Page | 26)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests; *provided* that, notwithstanding the foregoing, the Canadian Court shall retain jurisdiction with regard to all issues or disputes in respect of the Sale at the Canadian Closing Stores.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this Court or the Canadian Court, as applicable, has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

54. Within 30 days of conclusion of the Sale, the Debtors shall (a) file with the Court and provide to the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent, a summary report of the store closing process that will include (i) a list of the stores closed, (ii) gross revenue from the store closing assets sold, (iii) gross revenue from FF&E sold, (iv) calculation of fees paid to the Agent, and (v) calculation of expenses reimbursed to the Agent, and (b) file with the Court and serve on the U.S. Trustee, the DIP Agent, the Prepetition ABL Agent, and the Prepetition FILO Agent, any statutory committee, and any other party in interest who may so request, a report showing payment of each of the Consultant's fees, setting forth detail and

(Page | 27)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief |

information regarding the calculation of such fees paid to the Consultant and expenses reimbursed to the Consultant. Only the U.S. Trustee (and no other party) shall have 20 days after the date on which such report is filed to object, under the standards of section 328(a) of the Bankruptcy Code, solely as to the reasonableness of the compensation paid or expenses reimbursed to the Consultant; *provided, however*, that with respect to any such objection: (i) the Consultant's "Base Fee" and reimbursement of expenses shall be reviewed under the standards of section 328(a) and are found to be reasonable as of the date hereof, and such Base Fee shall not be later deemed unreasonable on the basis that the success of the Sale, whether on account of sales, recovery, or otherwise, resulted in the Consultant receiving compensation, in dollar terms, that was greater than any budget or forecast provided by the Debtors, their advisors, and/or the Consultant; and (ii) the Consultant's "Incentive Fee" or any other fee not reflected in the Consulting Agreements, and any additional expenses reimbursed in excess of the aggregate budget, shall not receive the same presumption and shall be reviewed under the standards of section 330 of the Bankruptcy Code. To the extent an objection is filed by the U.S. Trustee and cannot be resolved, the parties shall coordinate to have the objection to the Consultant's compensation brought before the Court at the next scheduled omnibus hearing or such other date and time as shall be agreed by the parties.

## <u>Schedule 1-A</u>

**BB&B Consulting Agreement**

DocuSign Envelope ID: 56600275-A57A-45E9-A4C2-1225G2529EDB



September 11, 2020

**VIA EMAIL**
Derek Dervish
Vice President – Asset Management
BED BATH & BEYOND INC.
650 Liberty Ave.
Union, NJ 07083
Email:  derek.dervish@bedbath.com

    Re:  **Letter Agreement Governing Inventory Disposition**

Dear Derek:

   By executing below, this letter shall serve as an agreement ("Agreement") between Hilco Merchant Resources, LLC, on the one hand ( "Agent" or a "Party"), and Bed Bath & Beyond Inc., on the other hand ("Merchant" or a "Party" and together with the Agent, the "Parties"), under which Agent shall act as the exclusive agent for the purpose of conducting a sale of certain Merchandise (as defined below) at the Merchant's stores set forth on Work Orders issued by Merchant and agreed to by Agent from time to time (each a "Store" and collectively, the "Stores") through a "Store Closing", "Everything Must Go", "Everything on Sale" or similar themed sale (the "Sale"). The Parties hereby agree that the list of Stores on a Work Order may be supplemented from time to time by written amendment to this Agreement executed in accordance with the foregoing in which case any Store added to a Work Order shall be deemed a "Store" for all purposes under this Agreement, and the Parties shall mutually agree upon any modifications to the Sale Term, Expense Budget(s), and other terms and conditions that may be necessary or appropriate in light of the additional retail store locations.

**A.**  **Merchandise**

   For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below).  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "FF&E"); or (3) damaged or defective merchandise that cannot be sold.

**B.**  **Sale Term**

   The initial Sale shall commence on such date as set forth in an applicable Work Order (the "Sale Commencement Date") and conclude no later than such date as set forth in an applicable Work Order (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date.  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term."  At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant

in broom clean condition and in accordance with the lease requirements for such premises, as directed by Merchant, in accordance with Section I herein. At the conclusion of the Sale at each Store, Agent shall photographically document the condition of each such Store. To the extent that the Sale as it pertains to a particular Store is delayed or interrupted  because it is required to be closed due to  the issuance of an order, rule, or regulation by a federal, state or local government agency related to COVID-19, the Sale Termination Date as to the affected Store shall be extended by the time period for which the Sale was delayed or interrupted.

**C.**   **Project Management**

(i)   Agent's Undertakings

During the Sale Term, Agent shall, in collaboration with Merchant, (a) provide qualified supervisors (the "Supervisors") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters;   (h) assist Merchant with the creation and implementation of a customer transition program; (i) assist Merchant with determining the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (j) at Merchant's request, implement Agent's affiliate CareerFlex program for Merchant's Store level and other employees; and (k) provide such other related services deemed necessary or appropriate by Merchant and Agent.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)   Merchant's Undertakings

During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) apply for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including

2

landlord approvals and consents) for the Sale, including payment of all applicable costs and expenses associated therewith; (i) assist Agent with implementing the CareerFlex program for Merchant's Store level and other employees; and (j) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.

Merchant shall be responsible for providing direction to and supplies for the Stores in order to comply with federal, state and local COVID-19 related health and safety requirements, and Agent will assist with the implementation of such requirements at the Stores; provided, however, that Agent shall not be responsible to Merchant for the payment of nor liable for any fine, injury, death, or damage caused by or related to COVID-19 (collectively, "COVID-19 Losses"), unless such COVID-19 Losses were directly caused by Agent's gross negligence or willful misconduct. Agent's supervisors will provide their own personal protective equipment ("PPE") at no additional cost to Merchant. To the extent that temporary labor do not source and provide their own PPE, Agent will provide Merchant with Agent's cost (without lift or mark-up) for PPE and, if requested by Merchant, Agent will procure such PPE, and Merchant agrees to reimburse Agent for the costs associated therewith (in addition to amounts reflected in a Work Order).

The Parties expressly acknowledge and agree that Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent. The Parties further expressly acknowledge and agree that Merchant shall have no liability to Agent's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's employment, hiring or retention of its employees, and such employees shall not be considered employees of Merchant.

**D.**     **The Sale**

All sales of Merchandise shall be made on behalf of Merchant. Agent does not have, nor shall it have, any right, title or interest in the Merchandise. All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

**E.**     **Agent Fee and Expenses in Connection with the Sale**

As used in this Agreement, the following terms shall have the following meanings:

(i)     "Gross Proceeds" shall mean the sum of the gross proceeds of all sales of Merchandise made in the Store during the Sale Term, net only of sales taxes.

(ii)     "Gross Recovery Threshold" shall mean the Gross Proceeds, calculated using the "gross rings" method, divided by the Retail Price of the Merchandise sold, calculated using the "gross rings" method.

DocuSign Envelope ID: 56600375-A571-45C9-A4C2-12256252950B

(iii)    "Merchandise File" shall mean the Merchant's books and records, as well as all files provided to Agent during due diligence.

(iv)    "Retail Price" shall mean with respect to each item of Merchandise (excluding a small amount of Merchandise classified as clearance, "web deals," "as-is" or in-store special), the lower of the lowest ticketed, marked, shelf, Merchandise File, point of sale, or other file price as reflected in Merchant's books and records for such item.

In consideration of its services hereunder, Merchant shall pay Agent a "Base Fee" equal to sixty-five one hundredths of one percent (0.65%) of the Gross Proceeds of Merchandise sold at the Stores.  In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following Gross Recovery Thresholds (e.g., in each case, as calculated back to first dollar):

| Gross Recovery Threshold | Agent Incentive Fee |
|---|---|
| 65.10% - 66.0% | An additional .20% of Gross Proceeds |
| | Total Merchandise Fee of .85% of Gross Proceeds |
| 66.10% - 67.00% | An additional .10% of Gross Proceeds |
| | Total Merchandise Fee of .95% of Gross Proceeds |
| Over 67.00% | An additional .10% of Gross Proceeds |
| | Total Merchandise Fee of 1.05% of Gross Proceeds |

The definitive Gross Recovery Threshold shall be determined in connection with the Final Reconciliation, and once determined, the parties (as part of the Final Reconciliation) shall determine the actual amount of Agent's Incentive Fee.  Merchant shall pay any outstanding, unpaid portions of Agent's Incentive Fee in connection with the Final Reconciliation.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's other reasonable, documented out of pocket expenses.  To control expenses of the Sale, Merchant and Agent have established an aggregate budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision (including (without limitation) Supervisors' wages,  travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable, at cost with no markup).  The Expense Budget for the Sale is attached to each Work Order. In the event Agent desires to modify the Expense Budget attached hereto after the date of this Agreement, Agent will present such modifications to Merchant for Merchant's consent, which consent may be withheld by Merchant in Merchant's sole discretion. The costs of supervision set forth in each Work Order include, among other things, industry standard deferred compensation.

All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled on every Wednesday for the prior week and shall be paid within twenty-one (21) days after each such weekly reconciliation.  The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by

this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store.

F.      **Indemnification**

(i)      Merchant's Indemnification

Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "Agent Indemnified Parties") harmless from and against all third-party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

(ii)      Agent's Indemnification

Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all third party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement.

G.      **Insurance**

(i)      Merchant's Insurance Obligations

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability

5

insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Agent to be named as an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

(ii)    <u>Agent's Insurance Obligations</u>

As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to this Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

**H.    <u>Representations, Warranties, Covenants and Agreements</u>**

(i)    Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (d) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary Merchant's practices, and (e) the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Agent.

(ii)    Agent warrants, represents, covenants and agrees that (a) Agent is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Agent's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Agent and this Agreement constitutes a valid and binding obligation of Agent enforceable against Agent in accordance with its terms and conditions, and the consent of no other entity or person is required for Agent to fully perform all of its obligations herein, (c) Agent shall comply with and

act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, and (e) Agent will not take any disciplinary action against any employee of Merchant.

## I.    Furniture, Fixtures and Equipment

Agent shall sell the FF&E in the Stores from the Stores themselves.  In consideration for selling the FF&E, Agent shall be entitled to a commission from the sale of the FF&E equal to ten percent (10.0%) of the Gross Proceeds of the sale of the FF&E.

Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within 21 days after each such weekly reconciliation.

Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with (i) the sale of FF&E, and (ii) surrendering the premises in accordance with the lease requirements for such premises, as directed by Merchant, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties. Agent shall not have the right to abandon at the Stores any unsold FF&E; provided, however, in the event Merchant desires that Agent  decommission and/or de-brand (collectively, "Decommission") any Store and/or remove any FF&E that is affixed to a Store premises, including without limitation by glue, nails or screws, such Decommission and FF&E removal shall be subject to a separate scope of work, which may include an additional fee payable to Agent in connection with such work, and budget mutually agreed upon by Merchant and Agent.

## J.    Termination

The following shall constitute "Termination Events" hereunder:

(a)    Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting Party;

(b)    Any representation or warranty made by Merchant or Agent is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)    the Sale at all Stores is terminated or materially interrupted or impaired for any reason other than an event of default by Agent or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default.  If this Agreement is terminated, Merchant shall be obligated to pay Agent all amounts due under this Agreement through and including the termination date.

DocuSign Envelope ID: 56600275-A57U-4569-A4C2-12256252960B

**K.**    <u>Notices</u>

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows: (a) To Merchant: at the address listed above, ATTN: EVP, Chief Stores Officer; (b) To Agent: c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847- 849-0859, Attn: Ian S. Fredericks; or (c) such other address as may be designated in writing by Merchant or Agent.

**L.**    <u>Independent Consultant</u>

Agent's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Agent or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Agent is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**M.**    <u>Non-Assignment</u>

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; provided, however Merchant may use the services of Agent in Stores leased by subsidiaries of Merchant. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**N.**    <u>Severability</u>

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.**    <u>Governing Law, Venue, Jurisdiction and Jury Waiver</u>

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of New Jersey (without reference to the conflicts of laws provisions therein). Merchant and Agent waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Agent against Merchant or Merchant against Agent on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and

DocuSign Envelope ID: 56600375-4571-45C9-A4C2-12256252960B

Agent, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

**P.**   **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.   No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.**   **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**R.**   **Ethical Conduct Policy**

It is the policy of Merchant and its subsidiaries and affiliates to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act).  Agent shall not, directly or indirectly, solicit or accept from, nor offer, promise or pay to, any individual or entity (including, but not limited, to any government official any bribe, kickback or any other improper payment of money or anything else of value.  This includes, but is not limited to, any improper payment in exchange for Merchant's execution of this Agreement. Agent will also require any subcontractor (of any level) to adhere to the same standards and will appropriately monitor its subcontractors to ensure such adherence.   In addition, any individual who is employed by or who represents Merchant is prohibited from soliciting, accepting, offering, promising or paying any bribe, kickback or any other improper payment of money or anything else of value. If any such improper actions are observed, contact our Legal Department (Attention: General Counsel) at the address set forth herein and/or by telephone at 908-688-0888, so that the incident may be fully investigated.

*               *               *

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

_Sarah Baker_
AC491BAA66644E1...

By: Sarah Baker

Its: VP & AGC, Managing Member

**AGREED AND ACCEPTED as of the 11th day of ___September___, 2020:**

BED BATH & BEYOND INC.

_John Hartmann_
1E3FE9G50CA41C

By: John Hartmann

Its: EVP, COO

10

DocuSign Envelope ID: 94D87879-EBC3-4EA0-B364-930E972B2E56



August 26, 2022

*VIA EMAIL*
Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc. 650
Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

Re:    **Amendment to Letter Agreements**

Derek:

Reference is made to (i) that certain letter agreement dated September 11, 2021 by and between Hilco Merchant Resources, LLC ("Agent" or a "Party") and Bed Bath & Beyond Inc. (the "BB&B" or a "Party") (as supplemented or amended, the "BB&B Agreement") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("BBB" or a "Party"; together with BB&B, the "Merchant"; collectively with BB&B and Agent, the "Parties") (as supplemented or amended, the "BBB Agreement" and together with the BB&B Agreement, the "Agreements") Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective Agreement.

The Parties hereby amend the Agreements as follows (the "Amendment"):

Section E. of the Agreements are hereby amended and modified as follows:

1.  The "Base Fee" is hereby increased from sixty-five one hundredths of one percent (0.65%) to eighty one hundredths of one percent (0.80%).

2.  With respect to the table outlining the "Gross Recovery Threshold" and "Agent Incentive Fee", the table is hereby amended and modified as follows:

    a.  The reference to "Total Merchandise Fee of .85% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.0% of Gross Proceeds";

    b.  The reference to "Total Merchandise Fee of .95% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.10% of Gross Proceeds"; and

    c.  The reference to "Total Merchandise Fee of 1.05% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.20% of Gross Proceeds".

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group on terms and conditions mutually agreed upon between the Agent and

Tiger Capital Group.  Per the Merchant's request, Agent shall continue to lead all aspects of the transactions contemplated by the Agreements.

With respect to this Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements.

This Amendment, together the Agreements, all prior amendments or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreements.

*          *          *

2

DocuSign Envelope ID: 94D87879-B3C3-4EA0-B364-930E972B2E56

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

By:  Ian S. Fredericks
Its:  President

**AGREED AND ACCEPTED as of the ___ day of August, 2022:**

BED BATH & BEYOND, INC.

By:  Derek B Dervish
Its:  Senior Director of Asset Mgt. and Inventory Operations

BUY BUY BABY, INC.

By:  Derek B Dervish
Its:  Senior Director of Asset Mgt. and Inventory Operations

3

DocuSign Envelope ID: 5351F7E3-F355-4338-9D2B-0A2180F09291



February 12, 2023

*__VIA EMAIL__*

Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc.
650 Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

Re:      __Second Amendment to Letter Agreements__

Derek:

        Reference is made to (i) that certain letter agreement dated September 11, 2020 by and between Hilco Merchant Resources, LLC ("Agent" or a "Party") and Bed Bath & Beyond Inc. ("BB&B" or a "Party") (as amended, modified, supplemented or restated and in effect from time to time, the "BB&B Agreement") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("BBB" or a "Party"; together with BB&B, the "Merchant"; collectively with BB&B and Agent, the "Parties") (as amended, modified, supplemented or restated and in effect from time to time, the "BBB Agreement"; the BB&B Agreement and BBB Agreement are collectively referred to herein as the "Agreements"). Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective BB&B Agreement or the BBB Agreement, as the context makes applicable.

        The Agreements provide for, among other things, the procedures in which the Sales will be executed, and details related thereto. Accordingly, Merchant and Agent mutually desire to amend the Agreements to, inter alia, (i) provide that this letter amendment (the "Second Amendment") shall constitute a "Work Order" under the Agreements, (ii) add Harmon Stores, Inc. as a party to the Agreements, (iii) expand the scope of Stores covered by the Agreements by adding additional Stores thereunder as set forth herein and in the Exhibits annexed hereto and incorporated herein, and (iii) modify certain other terms and provisions of the Agreements, in each case on the terms and subject to the conditions set forth herein.

        NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Second Amendment, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agree that the Agreements shall be amended as set forth herein.

        1.        __Harmon Stores__. Effective January 27, 2023, by its counter-signature hereto Harmon Stores, Inc. shall be and the same hereby is added as "Party" to the BB&B Agreement and shall be treated as "Merchant" thereunder and hereunder for all purposes.

        2.        __Closing Store Designations__.

                a)        Pursuant to this Second Amendment, Merchant hereby designates those Store locations identified in __Exhibit A-1__ hereto and incorporated herein (hereinafter, collectively the "Amendment 2 'Wave 3' Stores") and the Store locations identified in Exhibit A-2 (the "Amendment 2 'Wave 4' Stores") for closure through the conduct of the Sale in accordance with the terms of the Agreements, as amended hereby. The Expense Budget applicable to the conduct of the Sale at the Amendment 2 "Wave 3" Stores and Amendment 2 "Wave 4" Stores" are annexed hereto as __Exhibit B-1__ and __Exhibit B-2__, respectively, and are

incorporated herein by reference.

b)      From and after January 27, 2023, Merchant may designate one or more of the store locations identified in Exhibit A-3 hereto and incorporated herein (each an "Additional Store"; and collectively the "Additional Stores") for closure through the conduct of the Sale in accordance with the terms of the Agreements, as amended hereby. Upon Merchant's designation of an Additional Store(s) for closure under the Agreements, (i) the terms and provisions of the Agreements shall apply for all purposes with respect thereto, including (without limitation) that all such Additional Stores shall be deemed Stores for all purposes, (ii) Merchant shall designate the Sale Commencement Date and Sale Termination Date, respectively, applicable to such Additional Store(s), and (iii) Merchant and Agent shall mutually agree on an appropriate "Expense Budget" that shall be applicable to the conduct of the Sale at such Additional Store(s). If the Additional Stores constitute all of the locations listed on Exhibit A-3, the Expense Budget for such Additional Stores is hereby annexed hereto as Exhibit B-3 and incorporated herein by reference.

3.      Permitted Sale Themes.  Anything in the Agreements to the contrary notwithstanding, subject to Merchant's prior written consent Agent shall be authorized to market and advertise the Sale in the Stores utilizing a "Going-Out-of-Business" sale theme, which theme shall be in addition to such other sale themes set forth in the Agreements.

4.      "Merchandise" Definition.  Section A of the Agreements is hereby amended by deleting the first sentence thereof in its entirety and substituting the following in its place:

"For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores, distribution centers or warehouses (collectively, the "DCs"), in transit to or from the Stores or DCs, or on-order on the Sale Commencement Date (defined below)."

5.      Agent Fee; Expenses.

a)      Section E of each Agreement is hereby amended by deleting the first full paragraph appearing on page 4 thereof in its entirety and substituting the following in its place:

"(1)  In consideration of its services hereunder, Merchant shall pay Agent a "Base Fee" equal to one and one half percent (1.5%) of the Gross Proceeds of Merchandise sold at the Stores. For purposes of calculating the Base Fee under this Agreement, "Gross Proceeds" means gross receipts from sales of Merchandise during the Sale Term, net of applicable sales taxes.

(2)  In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following "Net Recovery Thresholds" (e.g., in each case, as calculated back to first dollar):"

b)      Section E of each Agreement is hereby amended by deleting the table outlining the "Gross Recovery Threshold" and "Agent Incentive Fee" with respect to Amendment 2 'Wave 3' Stores and Amendment 2 'Wave 4' Stores and substituting the following in its place:

2

| Net Recovery Threshold | Agent Incentive Fee |
|---|---|
| 39.0%-39.49% | An additional 0.875% of Net Proceeds |
| 39.50%-39.99% | An additional 1.125% of Net Proceeds |
| 40.00%-40.49% | An additional 1.375% of Net Proceeds |
| 40.50%-40.99% | An additional 1.625% of Net Proceeds |
| 41.00% and above | An additional 1.875% of Net Proceeds |

The Agent Incentive Fee referenced above as earned in each case shall be in addition to the Base Fee and shall be calculated back to the first dollar received; provided, that Agent agrees that in no event shall the Agent Incentive Fee with respect to Amendment 2 'Wave 3' Stores and Amendment 2 'Wave 4' Stores exceed $5,000,000 in the aggregate; provided, further, that any Agent Incentive Fee with respect to any Additional Stores shall be (i) subject to the mutual agreement of Merchant and Agent and (ii) based upon a grid calculated in the same manner as the above grid.  For purposes of the Agreements, as amended hereby, "Net Recovery" shall be determined based on the Expenses of the Sale identified in Exhibit C hereto and incorporated herein by reference.

c)    Section E of each Agreement is hereby amended by deleting the last full paragraph thereof in its entirety and substituting the following in its place:

"All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent or, with respect to the Additional Goods Fee, Merchant) shall be reconciled on every Wednesday for the prior week and shall be paid within seven (7) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent or, with respect to the Additional Agent Goods Fee, Merchant and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store."

6.    FF&E Disposition.  Section I of the Agreements are hereby amended as follows:  (i) all references to 'Stores' in Section I are hereby deleted and replaced with "Stores, DCs, and corporate office(s)"; (ii) the reference to "twenty-one (21) days" is hereby deleted and replaced with (iii) "seven (7) days"; and (iii) the reference to "ten percent (10%)" is hereby deleted and replaced with "twelve and one-half percent (12.5%)".

7.    Additional Agent Goods.  Each Agreements are hereby amended by adding new Section S as follows:

"Agent shall have the right to supplement the Merchandise in the Sale at the Stores with additional goods procured by Agent which are of like kind, and no lesser quality to the Merchandise in the Sale at the Stores ("Additional Agent Goods").  The Additional Agent Goods shall be purchased by Agent as part of the Sale, and delivered to the Stores.  Sales of Additional Agent Goods shall be run through Merchant's cash register systems; provided, however, that Merchant shall assist with marking, and Agent shall mark the Additional Agent Goods, using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise.  Agent and Merchant shall also cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Merchant goods.  Additionally, Agent shall provide signage in the Stores notifying customers that the Additional Agent Goods have been included in the Sale.

3

Consultant shall pay to Merchant an amount equal to seven and one-half percent (7.5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods completed during the Sale Term (the "Additional Consultant Goods Fee"), and Consultant shall retain all remaining amounts from the sale of the Additional Consultant Goods. Any amount due from Agent to Merchant in respect of the sale of Additional Agent Goods in accordance with this Section S shall paid not later than three (3) Business Days following the parties' completion of each weekly reconciliation with respect to sales of Additional Consultant Goods sold by Consultant during the prior week (or at such other mutually agreed upon time).

Agent and Merchant intend that the transactions relating to the Additional Agent Goods are, and shall be construed as, a true consignment from Agent to Merchant in all respects and not a consignment for security purposes. Subject solely to Agent's obligations to pay to Merchant the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds. The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent.

Merchant shall insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Merchant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code. Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, and Agent is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties and which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Goods and Additional Agent Goods proceeds)."

8.    Bankruptcy Matters.  The Agreements are hereby amended by adding new Section T as follows:

"If Merchant commences one or more cases under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), Merchant shall file a motion to assume this Agreement under section 365 of the Bankruptcy Code as part of its "first day" motions, and utilize its reasonable best efforts to ensure that such motion is approved by an order that provides, among other things, as follows:  (i) the payment of all fees and reimbursement of expenses hereunder to Agent is approved without further order of the court and shall be free and clear of all liens, claims and encumbrances; (ii) all such payments of fees and reimbursement of expenses shall be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iii) approval of the transaction contemplated hereby; (iv) authorizing the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations,

4

including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (v) authorizing the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (vi) approve the sale of Additional Agent Goods in accordance with the terms and conditions hereof; and (vii) take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.  In such event, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or *forum non conveniens*.  From and after entry of the Approval Order, Agent shall conduct the Sale in accordance with the terms of the Approval Order in all material respects."

---

For the avoidance of doubt, the Agreements, as amended by the Amendment to Letter Agreement dated August 26, 2022 (the "First Amendment") and all prior Work Orders shall continue to govern the Sale at any Stores where such Sale commenced prior to the date of this Second Amendment.

Merchant and Agent mutually agree that, no later than seven (7) days after the Sale Commencement Date, Merchant shall fund an advance to the Agent in an amount equal to the sum of [**$5,500,427**] in respect of the Sale Expenses identified in the Amendment 2 "Wave 3" and "Wave 4" Stores Expense Budgets annexed hereto as Exhibit B-1 and B-2, respectively. All other accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled in accordance with Section E herein. Any portion of the Sale Deposit not used to pay amounts contemplated by the Agreements shall be returned to Merchant (or its designee) within seven (7) business days following the final reconciliation.

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group, LLC ("Tiger"), Gordon Brothers Retail Partners, LLC ("GBRP"), and B. Riley Retail Solutions, LLC ("B. Riley"; and together with Tiger and GBRP the "Participants") on terms and conditions mutually agreed upon between the Agent and the Participants. Per the Merchant's request, Agent and GBRP shall co-lead all aspects of the transactions contemplated by the Agreements from and after the date hereof.

With respect to this Second Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in Section H of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in Section H of the Agreements.

This Amendment, together the Agreements and the First Amendment, all prior amendments, Work Orders, or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreements.

*[Remainder of Page Intentionally Left Blank;*
*Signatures Appear Next Page]*

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned. Thank you again for this opportunity -- we look forward to the opportunity to continue working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC,
As Agent (for itself and the Participants)

By: _Ian S. Fredericks_____
8211DF797AB4402...
Name:    Ian S. Fredericks
Its:      President

2/12/2023

**AGREED AND ACCEPTED** as of the ___ day of February, 2023:

**MERCHANT:**

BED BATH & BEYOND, INC.

By: _Mara Sirhal_____
44AE07EE019D4D5...
Name: Mara Sirhal
Its:   EVP Brand President, Bed Bath & Beyond

BUY BUY BABY, INC.

By: _Patty Wu_____
77E7A5A06DA5428...
Name: Patty Wu
Its:   SVP GM

HARMON STORES, INC., with respect to this Amendment and as an additional "Merchant" under the BB&B Agreement.

By: _Mara Sirhal_____
44AE07EE019D4D5...
Name: Mara Sirhal
Its:   EVP Brand President, Bed Bath & Beyond

6

## EXHIBIT A

[To be inserted]

Bed Bath & Beyond.2023.Wave 3

Exhibit A-1

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 35 | BBBY-US | ANNAPOLIS | 200 Harker Place Suite 200 | Annapolis | MD | 21401 | 42,446 |
| 59 | BBBY-US | HIALEAH | 1460 W 49th St | HIALEAH | FL | 33012 | 26,238 |
| 64 | BBBY-US | WILMETTE | 3232 LAKE AVE, SUITE 125 | WILMETTE | IL | 60091 | 40,000 |
| 65 | BBBY-US | FAIRFAX TOWN CENTER | 12100 FAIRFAX TOWNE CENTER | FAIRFAX | VA | 22033 | 39,669 |
| 69 | BBBY-US | BRANDON | 320 BRANDON TOWN CENTER DRIVE | BRANDON | FL | 33511 | 40,000 |
| 83 | BBBY-US | PALM DESERT | 72459 HIGHWAY 111 | PALM DESERT | CA | 92260 | 39,874 |
| 92 | BBBY-US | BOCA RATON | 20560 STATE ROAD 7 | BOCA RATON | FL | 33498 | 41,500 |
| 102 | BBBY-US | BURLINGTON | 3 ABBOTT PARK | BURLINGTON | MA | 01803 | 43,000 |
| 106 | BBBY-US | CHESAPEAKE | 1324 GREENBRIER PARKWAY | CHESAPEAKE | VA | 23320 | 40,484 |
| 118 | BBBY-US | BUCKHEAD | 1 Buckhead Loop | ATLANTA | GA | 30326 | 40,000 |
| 125 | BBBY-US | BETHEL PARK | 1700 OXFORD DRIVE | BETHEL PARK | PA | 15102 | 39,988 |
| 150 | BBBY-US | BOYNTON BEACH | 371 N. CONGRESS AVENUE | BOYNTON BEACH | FL | 33426 | 37,560 |
| 165 | BBBY-US | BLOOMINGTON | 7961 SOUTHTOWN CENTER | BLOOMINGTON | MN | 55431 | 48,820 |
| 187 | BBBY-US | GENEVA | 1584 SOUTH RANDALL ROAD | GENEVA | IL | 60134 | 35,631 |
| 190 | BBBY-US | CRYSTAL LAKE | 5786 NORTHWEST HIGHWAY | CRYSTAL LAKE | IL | 60014 | 40,000 |
| 195 | BBBY-US | COLUMBUS | 3750 EASTON MARKET | COLUMBUS | OH | 43219 | 40,000 |
| 216 | BBBY-US | VANCOUVER | 7809B Vancouver Plaza Dr #102 | VANCOUVER | WA | 98662 | 26,909 |
| 243 | BBBY-US | OLATHE | 15335 W. 119TH STREET | OLATHE | KS | 66062 | 31,000 |
| 247 | BBBY-US | ELMSFORD | 251 East Main Street | ELMSFORD | NY | 10523 | 84,450 |
| 252 | BBBY-US | BRIDGEWATER | 155 PROMENADE BOULEVARD | BRIDGEWATER | NJ | 08807 | 40,415 |
| 269 | BBBY-US | FRANCONIA | 6642 LOISDALE ROAD | SPRINGFIELD | VA | 22150 | 37,809 |
| 282 | BBBY-US | WATERFORD LAKES | 397 North Alafaya Trail | ORLANDO | FL | 32828 | 30,616 |
| 291 | BBBY-US | CORAL SPRINGS | 4631 NORTH UNIVERSITY DRIVE | CORAL SPRINGS | FL | 33067 | 30,571 |
| 296 | BBBY-US | MONTGOMERYVILLE | 1261 KNAPP ROAD | North Wales | PA | 19454 | 32,037 |
| 312 | BBBY-US | Visalia | 3125 South Mooney Blvd. | Visalia | CA | 93277 | 25,000 |
| 347 | BBBY-US | Royal Palm Beach | 540 North State Road 7 | Royal Palm Beach | FL | 33411 | 30,000 |
| 367 | BBBY-US | Spartanburg | 205 West Blackstock Road | Spartanburg | SC | 29301 | 36,137 |
| 383 | BBBY-US | Hawthorne | 14351 Hindry Avenue | Hawthorne | CA | 90250 | 40,500 |
| 389 | BBBY-US | Mays Landing | 190 Hamilton Commons | Mays Landing | NJ | 08330 | 30,000 |
| 390 | BBBY-US | Springdale | 4350 Summit Plaza Drive | Louisville | KY | 40241 | 30,116 |
| 403 | BBBY-US | Memphis | 870 South White Station Road | Memphis | TN | 38117 | 26,408 |
| 406 | BBBY-US | West Plano | 6400 West Plano Parkway, Suite 125 | Plano | TX | 75093 | 25,000 |
| 429 | BBBY-US | Temple Town Square | 2112 SW HK Dodgen Loop | Temple | TX | 76504 | 24,920 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 3

Exhibit A-1

## Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 460 | BBBY-US | Sunset Hills | 10770 Sunset Hills Plaza | St Louis | MO | 63127 | 36,140 |
| 461 | BBBY-US | North Fayette | 160 Quinn Drive | Pittsburgh | PA | 15275 | 28,250 |
| 467 | BBBY-US | Gateway | 459 Gateway Drive | Brooklyn | NY | 11239 | 37,734 |
| 481 | BBBY-US | Lewisville | 420 East FM 3040 Suite 300 | Lewisville | TX | 75067 | 30,000 |
| 484 | BBBY-US | Orange Park | 6001 24 Argyle Forest Blvd | Jacksonville | FL | 32244 | 25,978 |
| 505 | BBBY-US | Carlsbad | 1905 Calle Barcelona Suite 100 | Carlsbad | CA | 92009 | 28,000 |
| 517 | BBBY-US | North Little Rock | 4122 McCain Blvd | North Little Rock | AR | 72117 | 25,500 |
| 553 | BBBY-US | Bulova | 72 15 25th Avenue | East Elmhurst | NY | 11370 | 29,847 |
| 555 | BBBY-US | Wilton | 3064 Route 50 | Saratoga Springs | NY | 12866 | 18,430 |
| 588 | BBBY-US | Chicago Ridge | 9650 S Ridgeland Avenue | Chicago Ridge | IL | 60415 | 31,596 |
| 621 | BBBY-US | Southington | 835 Queen Street | Southington | CT | 06489 | 22,877 |
| 763 | BBBY-US | Raynham | 600 South Street West, Suite 13 | Raynham | MA | 02767 | 25,398 |
| 764 | BBBY-US | Park City | 1678 W Redstone Center Drive | Park City | UT | 84098 | 21,366 |
| 773 | BBBY-US | Daphne | 6850 US Highway 90 Anchor D | Daphne | AL | 36526 | 20,322 |
| 781 | BBBY-US | Poughkeepsie | 2020 South Road, Suite 3 | Poughkeepsie | NY | 12601 | 25,174 |
| 785 | BBBY-US | Wethersfield | 1065 Silas Deane Highway | Wethersfield | CT | 06109 | 35,312 |
| 788 | BBBY-US | Mt Laurel | 8 Centerton Road | Mt. Laurel | NJ | 08054 | 30,200 |
| 789 | BBBY-US | Monroeville | 3739 William Penn Highway | Monroeville | PA | 15146 | 25,312 |
| 791 | BBBY-US | Forest Park | 215 Harlem Avenue | Forest Park | IL | 60130 | 24,809 |
| 819 | BBBY-US | Carroll County | 200 Clifton Blvd | Westminster | MD | 21157 | 23,000 |
| 844 | BBBY-US | North Dartmouth | 458 State Rd, Rt 6, Suite 100 | North Dartmouth | MA | 02747 | 27,704 |
| 849 | BBBY-US | Pittsfield | 665 Merrill Rd | Pittsfield | MA | 01201 | 23,573 |
| 850 | BBBY-US | Sayville | 5131 Sunrise Highway | Bohemia | NY | 11716 | 42,000 |
| 1023 | BBBY-US | Fairfield | 2260 Kings Highway | Fairfield | CT | 06824 | 34,267 |
| 1025 | BBBY-US | Upland | 1865 North Campus Avenue, Building #15 | Upland | CA | 91784 | 33,000 |
| 1027 | BBBY-US | Williamsburg | 4900 Monticello Ave, Suite 4 | Williamsburg | VA | 23188 | 23,133 |
| 1039 | BBBY-US | Butler | 1160 Route 23 North | Kinnelon | NJ | 07405 | 23,500 |
| 1043 | BBBY-US | Morgantown | 395 Target Way | Morgantown | WV | 26501 | 26,427 |
| 1047 | BBBY-US | 4 S Ranch | 10537 4S Commons Drive, Suite 170 | San Diego | CA | 92127 | 27,045 |
| 1052 | BBBY-US | Thornton | 16531 Washington Street | Thornton | CO | 80023 | 25,175 |
| 1063 | BBBY-US | Culver City | 10822 Jefferson Blvd | Culver City | CA | 90230 | 26,419 |
| 1072 | BBBY-US | Boise | 3615 S. Federal Way | Boise | ID | 83705 | 28,000 |
| 1079 | BBBY-US | Matawan | 1121 Highway 34, Suite A | Matawan | NJ | 07747 | 25,000 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

## Bed Bath & Beyond.2023.Wave 3
### Exhibit A-1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **Store List** | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1088 | BBBY-US | Wausau | 3575 Rib Mountain Drive | Wausau | WI | 54401 | 23,064 |
| 1089 | BBBY-US | North Chattanooga | 5523 Highway 153, Suite 112 | Hixson | TN | 37343 | 24,595 |
| 1093 | BBBY-US | Dedham | 820 Providence Highway | Dedham | MA | 02026 | 30,220 |
| 1113 | BBBY-US | Ocean City | 12641 Ocean Gateway Suite 240 | Ocean City | MD | 21842 | 23,404 |
| 1131 | BBBY-US | River City | 13221 City Station Drive, Suite 125 | Jacksonville | FL | 32218 | 25,000 |
| 1132 | BBBY-US | Delray Beach | 14824 South Military Trail | Delray Beach | FL | 33484 | 25,570 |
| 1137 | BBBY-US | Las Posas | 165 S. Las Posas Rd | San Marcos | CA | 92078 | 28,305 |
| 1139 | BBBY-US | Folsom | 2385 Iron Point Rd | Folsom | CA | 95630 | 35,000 |
| 1147 | BBBY-US | Loveland | 1605 Fall River Drive | Loveland | CO | 80538 | 23,402 |
| 1151 | BBBY-US | Signal Butte | 1834 South Signal Butte Rd | Mesa | AZ | 85209 | 28,042 |
| 1174 | BBBY-US | Enfield | 20 Hazard Avenue | Enfield | CT | 06082 | 24,801 |
| 1176 | BBBY-US | Glendora | 1405 East Gladstone Street | Glendora | CA | 91740 | 30,000 |
| 1218 | BBBY-US | Iowa City | 2515 Corridor Way Suite 5 | Coralville | IA | 52241 | 23,028 |
| 1230 | BBBY-US | Lake Success | 1490 Union Turnpike | New Hyde Park | NY | 11040 | 34,363 |
| 1311 | BBBY-US | Flemington | 276 Route 202/31 | Flemington | NJ | 08822-1759 | 34,486 |
| 1343 | BBBY-US | Winchester | 2540 S. Pleasant Valley Road | Winchester | VA | 22601 | 25,960 |
| 1353 | BBBY-US | Apopka | 2239 East Semoran Blvd | Apopka | FL | 32703 | 27,860 |
| 1395 | BBBY-US | Bismarck | 1455 East Lasalle Drive | Bismarck | ND | 58503 | 22,731 |
| 1413 | BBBY-US | Liberty View | 850 Third Avenue | Brooklyn | NY | 11232 | 49,731 |
| 1431 | BBBY-US | Dulles Landing | 24670 Dulles Landing Dr Unt150 | Dulles | VA | 20166-2670 | 36,016 |
| 1436 | BBBY-US | Walla Walla | 1630 W Poplar Street | Walla Walla | WA | 99362 | 18,400 |
| 3014 | BABY-US | Henrietta | 790 Jefferson Rd., Suite 300 | Rochester | NY | 14623-3254 | 29,407 |
| 3059 | BABY-US | Port Chester | 441 Boston Post Road | Port Chester | NY | 10573-4738 | 25,000 |
| 3102 | BABY-US | Liberty View (Brooklyn) | 850 Third Avenue | Brooklyn | NY | 11232 | 23,782 |
| 3135 | BABY-US | Lewisville | 719 Hebron Parkway | Lewisville | TX | 75057 | 30,117 |
| 3142 | BABY-US | No. Charleston | 5930 Rivers Ave | North Charleston | SC | 29406 | 28,200 |
| 8002 | HARMON-US | Wayne | 1595 -1 Route 23 South | Wayne | NJ | 07470 | 6,164 |
| 8003 | HARMON-US | Valley Ridge | 580 Valley Road | Wayne | NJ | 07470 | 5,550 |
| 8004 | HARMON-US | EAST HANOVER | 392 Route 10 West | East Hanover | NJ | 07936 | 5,200 |
| 8005 | HARMON-US | West Caldwell | 36 Clinton Road | West Caldwell | NJ | 07006 | 6,674 |
| 8007 | HARMON-US | Massapequa | 806 Hicksville Road | Massapequa | NY | 11758 | 6,300 |
| 8008 | HARMON-US | Closter | 123 Ver Valen Street | Closter | NJ | 07624 | 5,200 |
| 8015 | HARMON-US | Hackensack | 370 W. Pleasant View Avenue | Hackensack | NJ | 07601 | 6,090 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 3
Exhibit A-1

| Store List |
| --- |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 8016 | HARMON-US | Manalapan | 357 Route 9 South | Manalapan | NJ | 07726 | 8,429 |
| 8018 | HARMON-US | Succusunna | 275 State Route 10 E. STE 350 | Succasunna | NJ | 07876 | 6,000 |
| 8020 | HARMON-US | PARAMUS | 145 Route 4 West | Paramus | NJ | 07652 | 8,350 |
| 8022 | HARMON-US | Melville | 925 Walt Whitman Road, Route 110 | Melville | NY | 11747 | 8,730 |
| 8023 | HARMON-US | Totowa | 465 Route 46 West | Totowa | NJ | 07512 | 6,108 |
| 8026 | HARMON-US | New Rochelle | 77 Quaker Ridge Road | New Rochelle | NY | 10804 | 6,760 |
| 8027 | HARMON-US | Raritan | 300 US Highway 202 | Raritan | NJ | 08869 | 6,130 |
| 8028 | HARMON-US | Matawan | 359 Route 34 North | Matawan | NJ | 07747 | 6,000 |
| 8029 | HARMON-US | Plainview | 1119 Old Country Road | Plainview | NY | 11803 | 8,088 |
| 8030 | HARMON-US | Franklin | 100 D Route 23 North, Franklin Shopping Center | Franklin | NJ | 07416 | 7,200 |
| 8031 | HARMON-US | Newton | 10 B Route 206 North | Newton | NJ | 07860 | 7,500 |
| 8033 | HARMON-US | Greenbrook | 303 Route 22 East | Greenbrook | NJ | 08812 | 6,500 |
| 8035 | HARMON-US | Carlstadt | 675 Paterson Avenue | Carlstadt | NJ | 07072 | 6,500 |
| 8036 | HARMON-US | Westfield | 335 South Avenue, East | Westfield | NJ | 07090 | 8,527 |
| 8037 | HARMON-US | Hartsdale | 165-171 Central Park Avenue | Hartsdale | NY | 10530 | 6,744 |
| 8038 | HARMON-US | Yonkers | 2131 Central Park Avenue | Yonkers | NY | 10710 | 6,455 |
| 8039 | HARMON-US | Millburn | 720 Morris Turnpike | Short Hills | NJ | 07078 | 8,536 |
| 8040 | HARMON-US | Shrewsbury | 550 Broad Street - Route 35 | Shrewsbury | NJ | 07702-4139 | 7,408 |
| 8041 | HARMON-US | Westwood | 700 Broadway, Suite 32 | Westwood | NJ | 07675 | 7,060 |
| 8043 | HARMON-US | Seaview Square | 2309-200 Route 66 | Ocean | NJ | 07712 | 6,450 |
| 8044 | HARMON-US | Mineola | 530 Jericho Turnpike | Mineola | NY | 11501 | 6,750 |
| 8045 | HARMON-US | Holmdel | 2145 Highway 35 - Holmdel Plaza | Holmdel | NJ | 07733 | 5,825 |
| 8049 | HARMON-US | WOODBRIDGE | 675 Route 1 South, Suite 2 | Iselin | NJ | 08830 | 5,906 |
| 8050 | HARMON-US | Poughkeepsie | 2600 South Road | Poughkeepsie | NY | 12601 | 5,600 |
| 8052 | HARMON-US | Clifton | 390 Route 3 West | Clifton | NJ | 07013 | 6,000 |
| 8053 | HARMON-US | BRICK | 479 Route 70 East | Brick | NJ | 08723 | 5,850 |
| 8054 | HARMON-US | Morris Plains | 1711 Route 10 East | Morris Plains | NJ | 07950 | 5,600 |
| 8055 | HARMON-US | East Brunswick | 300 Route 18 East | East Brunswick | NJ | 08816 | 5,500 |
| 8056 | HARMON-US | Nanuet | 46 Rockland Plaza / Route 59 | Nanuet | NY | 10954 | 5,292 |
| 8057 | HARMON-US | Carle Place | Carle Place Commons 167 Old Country Road | Carle Place | NY | 11514 | 4,114 |
| 8058 | HARMON-US | Edgewater | 725 River Road | Edgewater | NJ | 07020 | 5,482 |
| 8059 | HARMON-US | Commack | 8 Veterans Memorial Highway | Commack | NY | 11725 | 6,600 |
| 8063 | HARMON-US | Jupiter | 17450 N ALTERNATE A1A STE 101 | JUPITER | FL | 33477 | 5,500 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 3**

Exhibit A-1

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | **Store List** | | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 8064 | HARMON-US | Chelsea | 675 6TH AVENUE | New York | NY | 10010-5100 | 10,500 |
| 8066 | HARMON-US | DEPTFORD | 1765 DEPTFORD CENTER ROAD | Deptford | NJ | 08096 | 5,684 |
| 8067 | HARMON-US | Liberty View | 850 Third Ave. | Brooklyn | NY | 11232 | 10,504 |
| 8068 | HARMON-US | PASADENA | 3609 E Foothill Blvd | Pasadena | CA | 91107 | 6,421 |
| 8069 | HARMON-US | Boerum Place | 245 Atlantic Ave | Brooklyn | NY | 11201 | 6,178 |
| 8070 | HARMON-US | Gillette | 977 Valley Road | Gillette | NJ | 07933 | 5,478 |
| 8071 | HARMON-US | Summerlin | 2315 Summa Drive Suite 110 | Las Vegas | NV | 89135 | 6,233 |
| 8075 | HARMON-US | WEST LOS ANGELES | 10561 West Pico Blvd | Los Angelse | CA | 90064 | 6,293 |
| 8077 | HARMON-US | Broadway | 2171 Broadway | New York | NY | 10024 | 9,685 |
| 141 | | | | | | | 22,580 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 4
Exhibit A-2

Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 12 | BBBY-US | NORWALK | 542 WESTPORT AVENUE | NORWALK | CT | 06851 | 47,581 |
| 38 | BBBY-US | SAN FRANCISCO | 555 9TH STREET | SAN FRANCISCO | CA | 94103 | 73,455 |
| 44 | BBBY-US | TROY | 650 JOHN R. ROAD | TROY | MI | 48083 | 36,400 |
| 58 | BBBY-US | KING OF PRUSSIA | 224 W. DEKALB PIKE | KING OF PRUSSIA | PA | 19406 | 42,101 |
| 60 | BBBY-US | FAIRLAWN | 3750 WEST MARKET ST UNIT K | FAIRLAWN | OH | 44333 | 35,860 |
| 80 | BBBY-US | DULUTH | 3675 SATELLITE BLVD. | DULUTH | GA | 30096 | 29,820 |
| 107 | BBBY-US | INDEPENDENCE | 19950 East Jackson Drive | INDEPENDENCE | MO | 64057 | 33,056 |
| 141 | BBBY-US | ALAMO | 522 Northwest Loop 410, Suite 103 | San Antonio | TX | 78216 | 40,015 |
| 151 | BBBY-US | NORTH KANSAS | 8201 N.W. ROANRIDGE ROAD | KANSAS CITY | MO | 64151 | 35,000 |
| 176 | BBBY-US | SHAWNEE | 15400 SHAWNEE MISSION PARKWAY | SHAWNEE | KS | 66217 | 37,827 |
| 177 | BBBY-US | KNOXVILLE | 244 MORRELL ROAD | KNOXVILLE | TN | 37919 | 40,000 |
| 186 | BBBY-US | YORBA LINDA | 23041 SAVI RANCH PKWY | YORBA LINDA | CA | 92887 | 43,000 |
| 219 | BBBY-US | BRENTWOOD | 8340 Eager Road | St Louis | MO | 63144 | 37,868 |
| 222 | BBBY-US | APPLETON | 4721 WEST GRANDE MARKET DRIVE | Appleton | WI | 54913 | 30,040 |
| 231 | BBBY-US | NORMAN | 620 Ed Noble Parkway | NORMAN | OK | 73072 | 23,306 |
| 242 | BBBY-US | DAVENPORT | 4022 EAST 53rd STREET | DAVENPORT | IA | 52807 | 30,914 |
| 258 | BBBY-US | ELIZABETH | 651 KAPKOWSKI ROAD | ELIZABETH | NJ | 07201 | 41,200 |
| 265 | BBBY-US | MANDEVILLE | 3414 HIGHWAY 190 SUITE 2 | MANDEVILLE | LA | 70471 | 30,500 |
| 283 | BBBY-US | BRUNSWICK | 197 GOLDEN ISLES PLAZA | BRUNSWICK | GA | 31520 | 25,000 |
| 284 | BBBY-US | COSTA MESA | 3900 SOUTH BRISTOL STREET | SANTA ANA | CA | 92704 | 32,071 |
| 288 | BBBY-US | WESTLAND | 35615 Warren Road | WESTLAND | MI | 48185 | 25,086 |
| 290 | BBBY-US | NORMAL | 1700 EAST COLLEGE AVENUE | NORMAL | IL | 61761 | 30,200 |
| 302 | BBBY-US | Reading | 2771 Paper Mill Road Space D | Wyomissing | PA | 19610 | 30,066 |
| 303 | BBBY-US | Watchung | 1511 US Highway 22 Suite 6 | Watchung | NJ | 07069 | 39,684 |
| 314 | BBBY-US | KENNEWICK | 1220 N. Columbia Center Blvd. | Kennewick | WA | 99336 | 31,002 |
| 316 | BBBY-US | NORTH BRUNSWICK | 873 Route 1 South | North Brunswick | NJ | 08902 | 31,841 |
| 324 | BBBY-US | HAGERSTOWN | 17716 Garland Groh Boulevard | Hagerstown | MD | 21740 | 30,000 |
| 331 | BBBY-US | San Luis Obispo | 317 Madonna Road | San Luis Obispo | CA | 93405 | 35,786 |
| 335 | BBBY-US | Peoria | 4800 North University Street | Peoria | IL | 61614 | 31,250 |
| 342 | BBBY-US | Cedar Rapids | 4840 1St Avenue NE | Cedar Rapids | IA | 52402 | 25,056 |
| 348 | BBBY-US | Marlton | 740 Route 73 South | Marlton | NJ | 08053 | 29,850 |
| 356 | BBBY-US | El Paso | 1327 George Dieter Drive | El Paso | TX | 79936 | 30,000 |
| 366 | BBBY-US | Rochester | 40 25th Street SE | Rochester | MN | 55904 | 30,282 |
| 369 | BBBY-US | Okemos | 1982 West Grand River Avenue | Okemos | MI | 48864 | 30,200 |
| 379 | BBBY-US | West Wichita | 2441 N Maize Road Suite 601 | Wichita | KS | 67205 | 25,000 |
| 395 | BBBY-US | Fort Wayne | 4020 West Jefferson Blvd. | Fort Wayne | IN | 46804 | 30,439 |
| 398 | BBBY-US | Shreveport | 7070 Youree Drive | Shreveport | LA | 71105 | 30,000 |
| 399 | BBBY-US | Holland | 3050 Beeline Road Suite 30 | Holland | MI | 49424 | 19,000 |
| 401 | BBBY-US | Ramsey | 225 Interstate Shopping Center | Ramsey | NJ | 07446 | 25,000 |
| 408 | BBBY-US | Northglenn | 241 West 104th Avenue | Northglenn | CO | 80234 | 25,100 |
| 409 | BBBY-US | Elk Grove | 9145 W Stockton Blvd | Elk Grove | CA | 95758 | 28,212 |
| 415 | BBBY-US | Kildeer | 20505 N Rand Road Suite 100 | Kildeer | IL | 60047 | 35,000 |
| 420 | BBBY-US | Saginaw | 4420 Bay Road | Saginaw | MI | 48603 | 31,519 |
| 427 | BBBY-US | Gastonia | 401 Cox Road Suite 105 | Gastonia | NC | 28054 | 24,000 |
| 438 | BBBY-US | Dillon | 318 Dillon Ridge Way | Dillon | CO | 80435 | 24,000 |
| 440 | BBBY-US | Hickory | 1835 Catawba Valley Blvd SE | Hickory | NC | 28602 | 30,000 |
| 443 | BBBY-US | Fairway Plaza | 5636 Fairmont Parkway | Pasadena | TX | 77505 | 27,985 |
| 444 | BBBY-US | Lees Summit | 1648 N W Chipman Road | Lee s Summit | MO | 64081 | 28,000 |
| 446 | BBBY-US | Flint | G 3605 Miller Road | Flint | MI | 48507 | 29,120 |
| 453 | BBBY-US | Manchester | 1698 Hale Road | Manchester | CT | 06040 | 30,000 |
| 459 | BBBY-US | Bellingham | 4255 Meridian Street | Bellingham | WA | 98226 | 28,000 |
| 464 | BBBY-US | North Raleigh | 9521 Strickland Road | Raleigh | NC | 27615 | 55,688 |
| 471 | BBBY-US | Grand Junction | 2464 US Highway 6 & 50 Ste 106 | Grand Junction | CO | 81505 | 24,864 |
| 473 | BBBY-US | Cumming | 1545 Marketplace Blvd | Cumming | GA | 30041 | 20,000 |
| 478 | BBBY-US | Corvallis | 1725 NW 9th Street | Corvallis | OR | 97330 | 20,000 |
| 480 | BBBY-US | Melbourne | 1555 West New Haven Avenue | West Melbourne | FL | 32904 | 26,194 |
| 483 | BBBY-US | Lynncroft | 3160 Evans Street Suite B | Greenville | NC | 27834 | 20,094 |
| 488 | BBBY-US | Vacaville | 128 Browns Valley Parkway | Vacaville | CA | 95688 | 31,600 |
| 515 | BBBY-US | Dewitt | 3409 Erie Blvd East Suite 150 | Dewitt | NY | 13214 | 25,000 |
| 519 | BBBY-US | Beaumont | 3975 Dowlen Road | Beaumont | TX | 77706 | 20,000 |
| 520 | BBBY-US | Portage | 5930 S Westnedge Avenue | Portage | MI | 49024 | 25,000 |
| 526 | BBBY-US | Purdue | 3555 State Road 38 East | LaFayette | IN | 47905 | 21,032 |
| 532 | BBBY-US | Amherst | 1583 Niagara Falls Blvd | Amherst | NY | 14228 | 25,000 |
| 533 | BBBY-US | Rivergate | 2156 Gallatin Road North | Madison | TN | 37115 | 25,715 |
| 543 | BBBY-US | Largo | 10500 Ulmerton Road Suite 310 | Largo | FL | 33771 | 24,006 |
| 548 | BBBY-US | Houma | 1636 Martin Luther King Blvd | Houma | LA | 70360 | 18,558 |
| 552 | BBBY-US | Minnetonka | 11240 Wayzata Boulevard | Minnetonka | MN | 55305 | 34,124 |
| 554 | BBBY-US | Harrisonburg | 283 Burgess Road | Harrisonburg | VA | 22801 | 21,322 |

Bed Bath & Beyond.2023.Wave 4
Exhibit A-2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Store List | | | | |

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 565 | BBBY-US | Lincoln Square | 1932 Broadway | New York | NY | 10023 | 65,000 |
| 574 | BBBY-US | ISSAQUAH | 775 NW Gilman Blvd Suite C1 | Issaquah | WA | 98027 | 24,909 |
| 576 | BBBY-US | East Mentor | 9700 Mentor Avenue | Mentor | OH | 44060 | 24,984 |
| 580 | BBBY-US | Lake Charles | 1768 W Prien Lake Road | Lake Charles | LA | 70601 | 20,000 |
| 582 | BBBY-US | Monroe | 4239 Pecanland Mall Drive | Monroe | LA | 71203 | 20,000 |
| 584 | BBBY-US | Sangamon | 3251 S Veterans Parkway | Springfield | IL | 62704 | 21,944 |
| 587 | BBBY-US | Chico | 2101 Martin Luther King Parkway, Suite 20 | Chico | CA | 95928 | 25,000 |
| 590 | BBBY-US | Mobile | 3250 Airport Blvd Suite 100 | Mobile | AL | 36606 | 24,565 |
| 594 | BBBY-US | East Madison | 4275 Lien Road | Madison | WI | 53704 | 25,000 |
| 596 | BBBY-US | The Columns | 1081 Vann Drive Suite 107 | Jackson | TN | 38305 | 20,000 |
| 607 | BBBY-US | Ridge Park | 4766 Ridge Road | Brooklyn | OH | 44144 | 24,150 |
| 630 | BBBY-US | Roanoke | 1421 Towne Square Blvd NW | Roanoke | VA | 24012 | 22,272 |
| 757 | BBBY-US | Cranberry | 20111 Route 19 Suite 12 | Cranberry Township | PA | 16066 | 23,634 |
| 770 | BBBY-US | East Northport | 3083 Jericho Turnpike | East Northport | NY | 11731 | 33,983 |
| 778 | BBBY-US | Sherman | 3710 Town Center Street | Sherman | TX | 75092 | 18,000 |
| 779 | BBBY-US | East Columbia | 6090 Garners Ferry Road, Suite C | Columbia | SC | 29209 | 25,000 |
| 790 | BBBY-US | Las Cruces | 2200 East Lohman Avenue | Las Cruces | NM | 88001 | 23,163 |
| 801 | BBBY-US | Tupelo | 3938 N. Gloster Street Suite E. | Tupelo | MS | 38804 | 23,000 |
| 803 | BBBY-US | Texarkana | 4248 St Michael Drive | Texarkana | TX | 75503 | 20,000 |
| 804 | BBBY-US | Upper Arlington | 1717 West Lane Avenue Unit D2 | Upper Arlington | OH | 43221 | 25,624 |
| 805 | BBBY-US | Germantown | 12940 Middlebrook Road | Germantown | MD | 20874 | 28,006 |
| 807 | BBBY-US | Frye Road | 3445 West Frye Road | Chandler | AZ | 85226-5008 | 26,998 |
| 815 | BBBY-US | Valparaiso | 91 Silhavy Road | Valparaiso | IN | 46383 | 23,094 |
| 829 | BBBY-US | Newburgh | 1399 Route #300 | Newburgh | NY | 12550 | 24,600 |
| 834 | BBBY-US | Hermitage | 4646 Lebanon Pike | Hermitage | TN | 37076 | 23,085 |
| 843 | BBBY-US | West Babylon | 825 West Montauk Highway | West Babylon | NY | 11704 | 29,875 |
| 845 | BBBY-US | Victoria | 7808 Zac Lentz Parkway | Victoria | TX | 77904 | 23,000 |
| 848 | BBBY-US | Topeka | 1900 B Southwest Wanamaker Road | Topeka | KS | 66604 | 30,116 |
| 1001 | BBBY-US | Pearland | 2750 Smith Ranch Road | Pearland | TX | 77584 | 25,000 |
| 1019 | BBBY-US | Ikea Drive | 300 Ikea Drive, Suite #10 | Paramus | NJ | 07652-1253 | 60,000 |
| 1022 | BBBY-US | Alamance | 1463 University Drive | Burlington | NC | 27215 | 22,684 |
| 1034 | BBBY-US | North Attleborough | 1360 South Washington Street, Unit 64 | North Attleboro | MA | 02760 | 32,000 |
| 1040 | BBBY-US | Manahawkin | 205 Route 72 West | Manahawkin | NJ | 08050 | 22,585 |
| 1045 | BBBY-US | Alexandria | 7690 B Richmond Highway | Alexandria | VA | 22306 | 25,000 |
| 1050 | BBBY-US | Promenade Mall | 5352 East Skelly Drive | Tulsa | OK | 74135 | 29,400 |
| 1062 | BBBY-US | Paducah | 5187 Hinkleville Road, Suite B | Paducah | KY | 42001 | 23,000 |
| 1065 | BBBY-US | Joplin | 409 South Geneva Avenue | Joplin | MO | 64801 | 22,813 |
| 1074 | BBBY-US | Glenwood Springs | 115 East Meadows Dr | Glenwood Springs | CO | 81601 | 23,000 |
| 1078 | BBBY-US | Downey | 12060 Lakewood Blvd. | Downey | CA | 90242 | 30,413 |
| 1090 | BBBY-US | Leominster | 76 Orchard Hill Park Drive | Leominster | MA | 01453 | 26,708 |
| 1111 | BBBY-US | Henrietta | 720 Jefferson Rd | Rochester | NY | 14623 | 29,592 |
| 1134 | BBBY-US | Aiken | 339 Fabian Drive | Aiken | SC | 29803 | 23,000 |
| 1135 | BBBY-US | Mechanicsburg | 6416 Carlisle Pike, Suite 2700 | Mechanicsburg | PA | 17050 | 29,983 |
| 1145 | BBBY-US | BLOOMINGTON | 731 College Mall Road South | Bloomington | IN | 47401 | 25,000 |
| 1153 | BBBY-US | Topsham | 147 Bath Road Suite A170 | Brunswick | ME | 04011-1430 | 22,267 |
| 1168 | BBBY-US | Helena | 2027 Cromwell Dixon Lane | Helena | MT | 59601 | 20,000 |
| 1170 | BBBY-US | Lake Lanier | 1025 Dawsonville Highway | Gainesville | GA | 30501 | 26,674 |
| 1183 | BBBY-US | Dothan | 4863 Montgomery Highway Suite 200 | Dothan | AL | 36303 | 23,403 |
| 1193 | BBBY-US | Rainbow & Arroyo | 7175 Arroyo Crossing Parkway | Las Vegas | NV | 89113 | 35,000 |
| 1194 | BBBY-US | TriBeCa | 270 Greenwich St | New York | NY | 10007 | 32,000 |
| 1198 | BBBY-US | Bristol | 442 Pinnacle Parkway | Bristol | TN | 37620 | 23,400 |
| 1199 | BBBY-US | Beaumont | 1642 E. 2nd Street Marketplace | Beaumont | CA | 92223 | 25,000 |
| 1216 | BBBY-US | Casper | 601 SE Wyoming Blvd., Suite 1124 | Casper | WY | 82609 | 20,436 |
| 1222 | BBBY-US | Moscow | 1966 Pullman Road | Moscow | ID | 83843 | 23,683 |
| 1225 | BBBY-US | Cheyenne | 5214 Rue Terre | Cheyenne | WY | 82009 | 22,732 |
| 1239 | BBBY-US | Weatherford | 225 Adams Drive Suite 235 | Weatherford | TX | 76086 | 20,400 |
| 1242 | BBBY-US | Noblesville | 14139 Town Center Boulevard Suite 800 | Noblesville | IN | 46060 | 25,078 |
| 1247 | BBBY-US | Eastchase | 7971 Eastchase Parkway | Montgomery | AL | 36117 | 28,000 |
| 1262 | BBBY-US | SE Fort Worth | 1551 North US Hwy 287 Suite 701 | Mansfield | TX | 76063 | 23,400 |
| 1273 | BBBY-US | West Tulsa | 7410 South Olympia Avenue | Tulsa | OK | 74132 | 25,000 |
| 1275 | BBBY-US | Fort Smith | 3955 Phoenix Avenue | Fort Smith | AR | 72903 | 23,400 |
| 1278 | BBBY-US | Moore | 2150 S. Service Road | Moore | OK | 73160 | 23,400 |
| 1284 | BBBY-US | Opelika | 2746 Enterprise Drive | Opelika | AL | 36801 | 23,400 |
| 1285 | BBBY-US | Hot Springs | 1454 Higdon Ferry Rd | Hot Springs | AR | 71913 | 23,400 |
| 1294 | BBBY-US | Plaistow | 58 Plaistow Road | Plaistow | NH | 03865 | 23,050 |
| 1302 | BBBY-US | CANTON | 1810 Cumming Highway Suite 850 | Canton | GA | 30115 | 23,391 |
| 1316 | BBBY-US | Hadley | 337 Russell Street | Hadley | MA | 01035 | 26,170 |
| 1320 | BBBY-US | Amherst Crossing | 123 Route 101A #E | Amherst | NH | 03031 | 20,327 |

Bed Bath & Beyond.2023.Wave 4
Exhibit A-2

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1339 | BBBY-US | Medford | 1600 North Riverside Ave | Medford | OR | 97501 | 29,853 |
| 1342 | BBBY-US | Columbia | 205 North Stadium Blvd | Columbia | MO | 65203 | 28,122 |
| 1346 | BBBY-US | Victor | 20 Square Dr. | Victor | NY | 14564 | 28,753 |
| 1350 | BBBY-US | Clarksville | 2829 Wilma Rudolph Blvd | Clarksville | TN | 37040 | 23,632 |
| 1356 | BBBY-US | Roseville | 2480 North Fairview Avenue | Roseville | MN | 55113 | 26,500 |
| 1374 | BBBY-US | Kenosha | 7450 Green Bay Road Suite A | Kenosha | WI | 53142 | 25,000 |
| 1375 | BBBY-US | Grand Island | 3416 W State Street | Grand Island | NE | 68803 | 20,142 |
| 1387 | BBBY-US | California | 23415 Three Notch Road, Unit 9-B | California | MD | 20619 | 23,400 |
| 1404 | BBBY-US | Sioux City | 5751 Sunnybrook Drive | Sioux City | IA | 51106 | 20,009 |
| 1414 | BBBY-US | Hudson | 17 Highland Commons East | Hudson | MA | 01749 | 24,660 |
| 1417 | BBBY-US | Guilford | 1919 Boston Post Rd Suite 310 | Guilford | CT | 06437 | 20,890 |
| 1451 | BBBY-US | Clackamus | 12535 SE 82nd Ave., Suite A | Clackamas | OR | 97015 | 42,842 |
| 1901 | BBBY-US | Kip's Bay | 460 3rd Ave | New York | NY | 10016 | 23,200 |
| 149 | | | | | | | 28,007 |

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

| | Store List | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1 | BBBY-US | SPRINGFIELD | 715 MORRIS Turnpike | SPRINGFIELD | NJ | 07081 | 47,640 |
| 8 | BBBY-US | CANOGA PARK | 6530 CANOGA AVENUE | CANOGA PARK | CA | 91303 | 42,050 |
| 20 | BBBY-US | WEST LOS ANGELES | 11854 West Olympic Boulevard | Los Angeles | CA | 90064-1100 | 63,000 |
| 24 | BBBY-US | SANTA ROSA | 2785 SANTA ROSA AVE | SANTA ROSA | CA | 95407 | 35,000 |
| 25 | BBBY-US | STUDIO CITY | 12555 VENTURA BLVD | STUDIO CITY | CA | 91604 | 29,844 |
| 26 | BBBY-US | OAKLAND | 590 2ND STREET | OAKLAND | CA | 94607 | 18,793 |
| 27 | BBBY-US | CHERRY HILL | 2130 Marlton Pike W, Suite D | Cherry Hill | NJ | 08002 | 38,012 |
| 29 | BBBY-US | FALLS CHURCH | 5810 CROSSROADS CENTER WAY | FALLS CHURCH | VA | 22041 | 36,000 |
| 31 | BBBY-US | SAN DIEGO | 1750 CAMINO DEL RIO NORTH | SAN DIEGO | CA | 92108 | 77,925 |
| 32 | BBBY-US | DEERFIELD | 96 SOUTH WAUKEGAN ROAD | DEERFIELD | IL | 60015 | 47,000 |
| 33 | BBBY-US | ROCKVILLE | 1519 ROCKVILLE PIKE | ROCKVILLE | MD | 20852 | 50,204 |
| 37 | BBBY-US | LAKE GROVE | 2045 Smith Haven Plaza | Lake Grove | NY | 11755 | 64,776 |
| 40 | BBBY-US | ALBANY | 32 WOLF ROAD | ALBANY | NY | 12205 | 38,500 |
| 42 | BBBY-US | MANHATTAN | 620 6TH AVENUE | NEW YORK | NY | 10011 | 92,025 |
| 45 | BBBY-US | HOUSTON 45 | 17355 Tomball Parkway Suite 1J | Houston | TX | 77064 | 44,998 |
| 46 | BBBY-US | DADELAND | 8380 SOUTH DIXIE HIGHWAY | MIAMI | FL | 33143 | 60,000 |
| 47 | BBBY-US | TUCSON | 4811 E. GRANT ROAD, Suite 131 | TUCSON | AZ | 85712 | 36,518 |
| 49 | BBBY-US | STERLING HEIGHTS | 12020 HALL ROAD | STERLING HEIGHTS | MI | 48313 | 42,609 |
| 51 | BBBY-US | WEBSTER | 19801 GULF FREEWAY, SUITE 1000 | WEBSTER | TX | 77598 | 53,829 |
| 52 | BBBY-US | COLUMBIA 52 | 9021 SNOWDEN RIVER PARKWAY | COLUMBIA | MD | 21046 | 40,055 |
| 53 | BBBY-US | DOWNERS GROVE | 1548 BUTTERFIELD ROAD | DOWNERS GROVE | IL | 60515 | 73,572 |
| 54 | BBBY-US | WESTLAKE | 30083 DETROIT ROAD | WESTLAKE | OH | 44145 | 29,963 |
| 55 | BBBY-US | WEST PALM BEACH | 1875 Palm Beach Lakes Blvd A05 | WEST PALM BEACH | FL | 33401 | 32,400 |
| 61 | BBBY-US | PLANO | 801 WEST 15TH STREET, SUITE D | PLANO | TX | 75075 | 43,988 |
| 63 | BBBY-US | LINCOLN PARK | 1800 N. CLYBOURN AVE., SUITE A | CHICAGO | IL | 60614 | 32,972 |
| 66 | BBBY-US | KENNESAW | 840 ERNEST BARRETT PKWY Ste170 | KENNESAW | GA | 30144 | 35,000 |
| 67 | BBBY-US | ADDISON | 13900 Dallas Parkway | DALLAS | TX | 75240 | 54,337 |
| 68 | BBBY-US | DENVER 68 | 370 S Colorado Blvd | Glendale | CO | 80246 | 44,997 |
| 82 | BBBY-US | DALLAS | 8005 Park Lane | DALLAS | TX | 75231 | 53,500 |
| 86 | BBBY-US | TULSA | 10011 East 71st Street | TULSA | OK | 74133 | 42,000 |
| 87 | BBBY-US | OVERLAND PARK | 12035 METCALF | OVERLAND PARK | KS | 66213 | 50,028 |
| 88 | BBBY-US | HOUSTON 88 | 10515 KATY FREEWAY,SUITE A | HOUSTON | TX | 77024 | 47,900 |
| 97 | BBBY-US | AUSTIN 97 | 5400 BRODIE LANE SUITE 300 | AUSTIN | TX | 78745 | 42,098 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

## Bed Bath & Beyond.2023.Wave 5
### Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 98 | BBBY-US | BIRMINGHAM | 1771 MONTGOMERY HIGHWAY | HOOVER | AL | 35244 | 38,297 |
| 99 | BBBY-US | CARROLLWOOD | 13123 NORTH DALE MABRY HIGHWAY | TAMPA | FL | 33618 | 35,931 |
| 101 | BBBY-US | RANCHO CUCAMONGA | 11530 4th Street Suite 120 | Rancho Cucamonga | CA | 91730 | 26,000 |
| 103 | BBBY-US | ALPHARETTA | 6050 North Point Parkway | Alpharetta | GA | 30022 | 39,999 |
| 108 | BBBY-US | ROCKFORD | 6309 EAST STATE STREET | ROCKFORD | IL | 61108 | 35,800 |
| 110 | BBBY-US | CHARLOTTESVILLE | 975A NORTH EMMET STREET | CHARLOTTESVILLE | VA | 22903 | 36,450 |
| 111 | BBBY-US | ALBUQUERQUE | 2451 San Mateo Blvd NE Suite D | ALBUQUERQUE | NM | 87110 | 30,162 |
| 114 | BBBY-US | VIRGINIA BEACH | 220 CONSTITUTION DRIVE | VIRGINIA BEACH | VA | 23462 | 37,500 |
| 116 | BBBY-US | HUMBLE | 20514 HIGHWAY 59 N. | HUMBLE | TX | 77338 | 35,000 |
| 119 | BBBY-US | CANTON | 6725 STRIP AVENUE NW | NORTH CANTON | OH | 44720 | 40,000 |
| 121 | BBBY-US | WOLFCHASE | 2810 GERMANTOWN PARKWAY | MEMPHIS | TN | 38133 | 40,000 |
| 124 | BBBY-US | CARY | 405 CROSS ROADS BOULEVARD | CARY | NC | 27518 | 43,000 |
| 126 | BBBY-US | STAFFORD | 12520 FOUNTAIN LAKE CIRCLE | STAFFORD | TX | 77477 | 36,000 |
| 127 | BBBY-US | SANTA CLARA | 5201 STEVENS CREEK BLVD. | SANTA CLARA | CA | 95051 | 40,000 |
| 128 | BBBY-US | NAPLES | 5351 N. AIRPORT ROAD | NAPLES | FL | 34109 | 44,777 |
| 129 | BBBY-US | ARLINGTON | 4000 Retail Connection Way, Suite 101 | ARLINGTON | TX | 76018 | 30,000 |
| 132 | BBBY-US | MADISON | 215 JUNCTION ROAD | MADISON | WI | 53717 | 35,345 |
| 133 | BBBY-US | NAPERVILLE | 336 S Rt 59 | NAPERVILLE | IL | 60540 | 32,744 |
| 134 | BBBY-US | HUEBNER OAKS | 11745 IH 10 WEST SUITE 750 | SAN ANTONIO | TX | 78230 | 35,009 |
| 135 | BBBY-US | REGO PARK | 96-05 QUEENS BOULEVARD | REGO PARK | NY | 11374 | 45,997 |
| 136 | BBBY-US | PORTLAND | 16800 SOUTHWEST 72nd AVENUE | TIGARD | OR | 97224 | 36,000 |
| 137 | BBBY-US | DENVER WEST VILLAGE | 14383 WEST COLFAX AVENUE | GOLDEN | CO | 80401 | 36,273 |
| 138 | BBBY-US | THOUSAND OAKS | 121 SOUTH WESTLAKE BLVD | THOUSAND OAKS | CA | 91362 | 35,000 |
| 139 | BBBY-US | OCEANSIDE | 2120 VISTA WAY | OCEANSIDE | CA | 92054 | 38,008 |
| 147 | BBBY-US | BALLWIN | 141 Highlands Boulevard Drive | Manchester | MO | 63011 | 35,000 |
| 148 | BBBY-US | MOUNTAIN BROOK | 313 SUMMIT BOULEVARD | BIRMINGHAM | AL | 35243 | 30,056 |
| 149 | BBBY-US | BRAINTREE | 400 GROSSMAN DRIVE | BRAINTREE | MA | 02184 | 35,963 |
| 154 | BBBY-US | SOUTHSIDE | 8801-1 SOUTHSIDE BOULEVARD | JACKSONVILLE | FL | 32256 | 35,000 |
| 155 | BBBY-US | AUGUSTA | 221 ROBERT C. DANIEL,JR. PKWY | AUGUSTA | GA | 30909 | 37,500 |
| 156 | BBBY-US | HENRICO | 10050 WEST BROAD STREET | GLEN ALLEN | VA | 23060 | 40,000 |
| 157 | BBBY-US | MID-RIVERS | 281 MID RIVERS MALL DRIVE | ST. PETERS | MO | 63376 | 38,843 |
| 159 | BBBY-US | EAST HANOVER | 180 ROUTE 10 WEST | EAST HANOVER | NJ | 07936 | 50,182 |
| 160 | BBBY-US | WOODBRIDGE | 675 US Highway 1S, Suite 5 | ISELIN | NJ | 08830-3125 | 34,000 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 164 | BBBY-US | OKLAHOMA CITY | 2848 NW 63rd STREET | OKLAHOMA CITY | OK | 73116 | 40,739 |
| 166 | BBBY-US | ROSEVILLE 166 | 30801 GRATOIT ROAD | ROSEVILLE | MI | 48066 | 44,500 |
| 169 | BBBY-US | WALDORF | 3270 CRAIN HIGHWAY | WALDORF | MD | 20603 | 36,424 |
| 172 | BBBY-US | NEWPORT NEWS | 12132 A JEFFERSON AVENUE | NEWPORT NEWS | VA | 23602 | 41,929 |
| 173 | BBBY-US | DUBLIN | 4882 DUBLIN BLVD | DUBLIN | CA | 94568 | 35,472 |
| 178 | BBBY-US | ST. PETERSBURG | 2060 66th Street North | St. Petersburg | FL | 33710 | 36,926 |
| 181 | BBBY-US | WILLISTON | 115 TRADER LANE | WILLISTON | VT | 05495 | 40,000 |
| 183 | BBBY-US | PASADENA | 3341 EAST FOOTHILL BLVD | PASADENA | CA | 91107 | 40,000 |
| 188 | BBBY-US | FREDERICK | 5413 URBANA PIKE | FREDERICK | MD | 21704 | 38,700 |
| 189 | BBBY-US | CHANDLER | 850 N. 54TH STREET | CHANDLER | AZ | 85226 | 32,713 |
| 192 | BBBY-US | MIDLOTHIAN | 11609 MIDLOTHIAN TURNPIKE | MIDLOTHIAN | VA | 23113 | 40,000 |
| 194 | BBBY-US | FT. COLLINS | 110 W. TROUTMAN PARKWAY | FT. COLLINS | CO | 80525 | 50,695 |
| 196 | BBBY-US | TOWSON | 1238 PUTTY HILL AVENUE Suite 1 | TOWSON | MD | 21286 | 36,990 |
| 197 | BBBY-US | AVENTURA | 19205 BISCAYNE BLVD | AVENTURA | FL | 33180 | 45,000 |
| 199 | BBBY-US | COLUMBIA 199 | 136 HARBISON BLVD | COLUMBIA | SC | 29212 | 40,800 |
| 200 | BBBY-US | N. COLORADO SPRINGS | 1790 EAST WOODMEN ROAD | COLORADO SPRINGS | CO | 80920 | 38,000 |
| 202 | BBBY-US | GRAND RAPIDS | 4901 28TH STREET, SE | GRAND RAPIDS | MI | 49512 | 40,000 |
| 204 | BBBY-US | SOLON | 6025 KRUSE DRIVE SUITE 123 | SOLON | OH | 44139 | 40,000 |
| 207 | BBBY-US | DEPTFORD | 1755 Deptford Center Road | Deptford | NJ | 08096 | 38,094 |
| 208 | BBBY-US | RENO | 4983 S VIRGINIA STREET | RENO | NV | 89502 | 35,185 |
| 211 | BBBY-US | LINCOLN | 2960 PINE LAKE ROAD SUITE A | LINCOLN | NE | 68516 | 35,000 |
| 213 | BBBY-US | JENSEN BEACH | 2450 NW FEDERAL HIGHWAY | STUART | FL | 34994 | 34,900 |
| 214 | BBBY-US | CLEARWATER | 23676 US HWY 19 NORTH | CLEARWATER | FL | 33765 | 33,330 |
| 215 | BBBY-US | MISHAWAKA | 5802 GRAPE RD, SUITE B | MISHAWAKA | IN | 46545 | 38,042 |
| 224 | BBBY-US | BRICK | 51 CHAMBERSBRIDGE ROAD | BRICK | NJ | 08723 | 35,000 |
| 225 | BBBY-US | FRESNO | 7497 N. BLACKSTONE AVENUE | FRESNO | CA | 93720 | 36,725 |
| 227 | BBBY-US | JENKINTOWN | 905 OLD YORK ROAD | JENKINTOWN | PA | 19046 | 44,280 |
| 228 | BBBY-US | LITTLE ROCK | 12309 CHENAL PARKWAY SUITE A | LITTLE ROCK | AR | 72211 | 37,813 |
| 233 | BBBY-US | ARROWHEAD | 7340 WEST BELL ROAD | GLENDALE | AZ | 85308 | 38,000 |
| 235 | BBBY-US | SARASOTA | 6567 S. TAMIAMI TRAIL | SARASOTA | FL | 34231 | 40,000 |
| 236 | BBBY-US | DAYTONA BEACH | 2500 W. INTERNTL SPEEDWAY BLVD | DAYTONA BEACH | FL | 32114 | 34,945 |
| 237 | BBBY-US | MT. PLEASANT | 1744 TOWNE CENTRE WAY | MT. PLEASANT | SC | 29464 | 34,560 |
| 245 | BBBY-US | GAINESVILLE | 6855 NEWBERRY ROAD | GAINESVILLE | FL | 32605 | 30,500 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 5**
**Exhibit A-3**

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 248 | BBBY-US | BATON ROUGE | 10505 South Mall Drive | Baton Rouge | LA | 70809 | 35,017 |
| 250 | BBBY-US | LYNNWOOD | 3115 196th Street, SW | LYNNWOOD | WA | 98036 | 30,000 |
| 251 | BBBY-US | ALLENTOWN | 1223 WHITEHALL MALL | WHITEHALL | PA | 18052 | 43,971 |
| 254 | BBBY-US | MODESTO | 3900 SISK ROAD | MODESTO | CA | 95356 | 29,926 |
| 255 | BBBY-US | MILL CREEK | 1705 Mall of Georgia Blvd, Suite 4 | BUFORD | GA | 30519 | 33,889 |
| 260 | BBBY-US | WESTBURY | 950 Merchants Concourse | WESTBURY | NY | 11590 | 54,239 |
| 261 | BBBY-US | PLEASANT HILL | 15 CRESCENT DRIVE | PLEASANT HILL | CA | 94523 | 35,877 |
| 266 | BBBY-US | EATONTOWN | 92 ROUTE 36 | EATONTOWN | NJ | 07724 | 35,750 |
| 268 | BBBY-US | ASHEVILLE | 83G South Tunnel Road | Asheville | NC | 28805 | 38,772 |
| 271 | BBBY-US | Harrisburg | 5125 Jonestown Road Suite 425 | Harrisburg | PA | 17112 | 30,054 |
| 272 | BBBY-US | KATY MILLS | 24600 Katy Fwy Suite 100 | KATY | TX | 77494 | 38,000 |
| 273 | BBBY-US | PALM BEACH GARDENS | 2410 PGA BOULEVARD | PALM BEACH GARDENS | FL | 33410 | 37,525 |
| 275 | BBBY-US | MISSION VIEJO | 25732 EL PASEO | MISSION VIEJO | CA | 92691 | 35,000 |
| 278 | BBBY-US | FAYETTEVILLE | 3816 NORTH MALL AVENUE | FAYETTEVILLE | AR | 72703 | 30,000 |
| 279 | BBBY-US | SW DENVER 279 | 7421 WEST BOWLES AVENUE STE 1 | LITTLETON | CO | 80123-3096 | 35,000 |
| 285 | BBBY-US | Fort Myers | 13499 S Cleveland Ave Suite200 | Fort Myers | FL | 33907 | 30,587 |
| 289 | BBBY-US | MIDDLETOWN | 1115 Route 35 | MIDDLETOWN | NJ | 07748 | 35,843 |
| 292 | BBBY-US | OREM | 50 West 1300 South | Orem | UT | 84058 | 37,102 |
| 293 | BBBY-US | LOUISVILLE | 996 BRECKINRIDGE LANE | LOUISVILLE | KY | 40207 | 34,953 |
| 294 | BBBY-US | SUGARHOUSE | 1169 WILMINGTON AVENUE | SALT LAKE CITY | UT | 84106 | 18,395 |
| 295 | BBBY-US | BEVERLY HILLS | 31535 Southfield Road | Beverly Hills | MI | 48025 | 41,093 |
| 298 | BBBY-US | HILTON HEAD | 1460 FORDING ISLAND ROAD ST100 | BLUFFTON | SC | 29910 | 24,710 |
| 301 | BBBY-US | Rookwood | 2719 Edmondson Road | Cincinnati | OH | 45209 | 33,375 |
| 305 | BBBY-US | ROUND ROCK | 2701-A Parker Road Suite 400 | Round Rock | TX | 78681 | 30,500 |
| 307 | BBBY-US | Roseville 307 | 1120 Galleria Blvd Suite 140 | Roseville | CA | 95678 | 49,132 |
| 309 | BBBY-US | CHARLOTTE | 9559 South Boulevard | Charlotte | NC | 28273 | 37,000 |
| 311 | BBBY-US | SIMSBURY | 532 Bushy Hill Road | Simsbury | CT | 06070 | 30,321 |
| 313 | BBBY-US | ATHENS | 1791 Oconee Connector Suite350 | ATHENS | GA | 30606 | 24,000 |
| 315 | BBBY-US | Daly City | 303 Gellert Boulevard | Daly City | CA | 94015 | 33,030 |
| 317 | BBBY-US | WINSTON-SALEM | 1020 Hanes Mall Blvd. | Winston Salem | NC | 27103 | 37,153 |
| 318 | BBBY-US | MIDLAND | 3001-A101 West Loop 250 North | Midland | TX | 79705 | 27,426 |
| 319 | BBBY-US | EUGENE | 95 Oakway Center | Eugene | OR | 97401 | 30,013 |
| 321 | BBBY-US | LAFAYETTE | 3617 Ambassador Caffery | Lafayette | LA | 70503 | 42,749 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 326 | BBBY-US | WICHITA | 2750 N Greenwich Ct | Wichita | KS | 67226 | 37,922 |
| 327 | BBBY-US | JOHNSON CITY | 3211 People Street Suite 25 | Johnson City | TN | 37604 | 24,925 |
| 328 | BBBY-US | Fargo | 4340 13th Avenue SW | Fargo | ND | 58103 | 30,000 |
| 330 | BBBY-US | Fort Worth | 4931 Overton Ridge Boulevard | Ft. Worth | TX | 76132 | 35,177 |
| 333 | BBBY-US | Meridian | 1350 North Eagle Road | Meridian | ID | 83642 | 38,146 |
| 336 | BBBY-US | Newtown | 20 West Road | Newtown | PA | 18940 | 30,000 |
| 337 | BBBY-US | The Waterfront | 490 Waterfront Drive East | Homestead | PA | 15120 | 38,000 |
| 338 | BBBY-US | Broadmoor | 2180 Southgate Road | Colorado Springs | CO | 80906 | 30,529 |
| 339 | BBBY-US | Cool Springs | 545 Cool Springs Boulevard | Franklin | TN | 37067 | 40,000 |
| 341 | BBBY-US | Southlake | 2930 East Southlake Blvd. | Southlake | TX | 76092 | 30,000 |
| 349 | BBBY-US | Greenville | 1117 Woodruff Road Suite D | Greenville | SC | 29607 | 35,000 |
| 350 | BBBY-US | Danvers | 180 Endicott Street | Danvers | MA | 01923 | 36,192 |
| 352 | BBBY-US | Amarillo | 3000 Soncy Road | Amarillo | TX | 79124 | 30,000 |
| 358 | BBBY-US | Youngstown | 550 Boardman Poland Road | Youngstown | OH | 44512 | 30,000 |
| 359 | BBBY-US | Davie | 1801 S University Drive | Davie | FL | 33324 | 28,170 |
| 362 | BBBY-US | Spokane | 5628 N Division Street | Spokane | WA | 99207 | 36,692 |
| 363 | BBBY-US | Greenwood | 723 US 31 North Suite A | Greenwood | IN | 46142 | 33,208 |
| 364 | BBBY-US | Taylor | 23871 Eureka Road | Taylor | MI | 48180 | 30,350 |
| 365 | BBBY-US | Bangor | 490 Stillwater Avenue | Bangor | ME | 04401 | 27,905 |
| 368 | BBBY-US | Novi | 43610 West Oaks Drive | Novi | MI | 48377 | 33,220 |
| 370 | BBBY-US | Saw Mill | 3708 W Dublin Grandville Road | Columbus | OH | 43235 | 40,075 |
| 371 | BBBY-US | Tukwila | 400 Strander Blvd | Tukwila | WA | 98188 | 45,633 |
| 372 | BBBY-US | Warwick | 1500 Bald Hill Road Suite B | Warwick | RI | 02886 | 41,878 |
| 375 | BBBY-US | Evansville | 280 North Green River Road | Evansville | IN | 47715 | 31,675 |
| 377 | BBBY-US | Wilkes Barre | 435 Arena Hub Plaza | Wilkes-Barre | PA | 18702 | 30,057 |
| 378 | BBBY-US | Rochester Hills | 1242 South Rochester Road | Rochester Hills | MI | 48307 | 38,243 |
| 380 | BBBY-US | Salem | 265 South Broadway, Suite 4 | Salem | NH | 03079 | 25,918 |
| 384 | BBBY-US | Hollywood | 1557 Vine Street | Hollywood | CA | 90028 | 30,054 |
| 385 | BBBY-US | East Boca | 1400C Glades Road | Boca Raton | FL | 33431 | 23,232 |
| 388 | BBBY-US | Tallahassee | 1574 Governors Square Blvd. | Tallahassee | FL | 32301 | 35,000 |
| 393 | BBBY-US | Dulles | 45575 Dulles Eastern Plaza STE 154 | Dulles | VA | 20166 | 35,000 |
| 394 | BBBY-US | Yonkers | 2141 Central Park Avenue | Yonkers | NY | 10710 | 40,000 |
| 400 | BBBY-US | Destin | 4441 Commons Drive East | Destin | FL | 32541 | 34,273 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

## Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---------|----------------|------|---------|------|-------|-----|-----------------|
| 402 | BBBY-US | Greendale | 5445 South 76th Street | Greendale | WI | 53129 | 33,014 |
| 404 | BBBY-US | Frisco | 2930 Preston Road Suite 400 | Frisco | TX | 75034 | 35,000 |
| 405 | BBBY-US | Huntsville | 6888 Governors West | Huntsville | AL | 35806 | 30,000 |
| 407 | BBBY-US | Bakersfield | 5000 Stockdale Highway | Bakersfield | CA | 93309 | 30,500 |
| 412 | BBBY-US | Seal Beach | 12390 Seal Beach Blvd | Seal Beach | CA | 90740 | 27,060 |
| 414 | BBBY-US | Apple Valley | 14910 Florence Trail | Apple Valley | MN | 55124 | 30,339 |
| 417 | BBBY-US | Puyallup | 4102 D South Meridian Street | Puyallup | WA | 98373 | 32,920 |
| 418 | BBBY-US | Wilmington | 352 South College Rd Unit 10B | Wilmington | NC | 28403 | 30,405 |
| 422 | BBBY-US | Henderson | 621 Marks Street | Henderson | NV | 89014 | 29,990 |
| 424 | BBBY-US | Port Charlotte | 18700 Veterans Blvd Unit 14 | Port Charlotte | FL | 33954 | 24,971 |
| 426 | BBBY-US | Onslow | 1305 Western Blvd | Jacksonville | NC | 28546 | 23,000 |
| 428 | BBBY-US | Clive | 11101 University Ave Suite A | Clive | IA | 50325 | 35,035 |
| 430 | BBBY-US | Northwoods | 1730 N Loop 1604 E Suite 107 | San Antonio | TX | 78232 | 30,256 |
| 431 | BBBY-US | Tanasbourne | 18043 NW Evergreen Parkway | Hillsboro | OR | 97006 | 34,487 |
| 432 | BBBY-US | Exton | 108 Bartlett Avenue | Exton | PA | 19341 | 34,571 |
| 433 | BBBY-US | South Portland | 200 Running Hill Road Suite 4 | South Portland | ME | 04106 | 30,448 |
| 435 | BBBY-US | Matthews | 10530 Northeast Parkway | Matthews | NC | 28105 | 25,000 |
| 436 | BBBY-US | Aurora | 5560 South Parker Road | Aurora | CO | 80015 | 34,980 |
| 437 | BBBY-US | Anderson Station | 146 Station Drive | Anderson | SC | 29621 | 22,398 |
| 439 | BBBY-US | Crofton | 2382 Brandermill Blvd Suite102 | Gambrills | MD | 21054 | 28,000 |
| 442 | BBBY-US | Kirby | 3102 Kirby Drive | Houston | TX | 77098 | 31,000 |
| 449 | BBBY-US | Warrington | 1015 Main Street | Warrington | PA | 18976 | 33,808 |
| 450 | BBBY-US | AUBURN | 366 Southbridge Street | Auburn | MA | 01501 | 22,325 |
| 454 | BBBY-US | Fort Lauderdale | 2701 N Federal Highway | Fort Lauderdale | FL | 33306 | 34,500 |
| 456 | BBBY-US | Maple Grove | 7950 Wedgewood Lane N | Maple Grove | MN | 55369 | 29,706 |
| 462 | BBBY-US | Centerville | 6142 Wilmington Pike | Dayton | OH | 45459 | 28,105 |
| 470 | BBBY-US | Columbus Park | 5555 Whittlesey Blvd Ste 1400 | Columbus | GA | 31909 | 25,000 |
| 475 | BBBY-US | Torrance | 2595 Pacific Coast Highway | Torrance | CA | 90505 | 39,061 |
| 476 | BBBY-US | West Nashville | 7657 Highway 70 South Suite112 | Nashville | TN | 37221 | 20,060 |
| 477 | BBBY-US | Route 46 | 545 Route 46 | Totowa | NJ | 07512 | 59,847 |
| 482 | BBBY-US | Woodbury | 8250 Tamarack Village | Woodbury | MN | 55125 | 29,530 |
| 485 | BBBY-US | Best In The West | 2100 N Rainbow Blvd Suite 110 | Las Vegas | NV | 89108 | 28,337 |
| 486 | BBBY-US | Skokie | 5545 W Touhy Avenue | Skokie | IL | 60077 | 36,500 |

C:\Users\lfredericks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\7Y6OT4XM\BBB Store List_Budgets_SEND
2/5/2023 11:28 PM

Store List Wave 5

Page 14

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 487 | BBBY-US | Hyannis | 65 Independence Drive | Hyannis | MA | 02601 | 36,570 |
| 490 | BBBY-US | Primrose | 3308 S Glenstone Avenue | Springfield | MO | 65804 | 30,050 |
| 492 | BBBY-US | Metairie | 4410 Veterans Memorial Blvd | Metairie | LA | 70006 | 52,053 |
| 497 | BBBY-US | Mc Donough | 1898 Jonesboro Road | McDonough | GA | 30253 | 19,978 |
| 502 | BBBY-US | Corpus Christi | 4717 S Padre Island Dr Suite F | Corpus Christi | TX | 78411 | 26,300 |
| 503 | BBBY-US | Summerlin Center | 2315 Summa Drive #180 | Las Vegas | NV | 89135 | 32,064 |
| 504 | BBBY-US | Woodlands | 1560 Lake Woodlands Drive | The Woodlands | TX | 77380 | 34,929 |
| 507 | BBBY-US | Sands | 3640 Long Beach Road | Oceanside | NY | 11572 | 37,236 |
| 514 | BBBY-US | Mesquite | 2705 N Mesquite Drive | Mesquite | TX | 75150 | 25,378 |
| 518 | BBBY-US | Vero Beach | 6150 20th Street | Vero Beach | FL | 32966 | 21,843 |
| 523 | BBBY-US | Ocala | 2701 SW College Road Suite 400 | Ocala | FL | 34474 | 20,000 |
| 524 | BBBY-US | Santa Fe | 4250 Cerrillos Road Suite 1214 | Santa Fe | NM | 87507 | 25,000 |
| 525 | BBBY-US | Pensacola | 5450 N 9th Avenue | Pensacola | FL | 32504 | 28,585 |
| 529 | BBBY-US | Savannah | 7400 Abercorn Street Suite 201 | Savannah | GA | 31406 | 35,005 |
| 535 | BBBY-US | Mc Allen | 620 E Expressway 83 | Mc Allen | TX | 78503 | 31,647 |
| 538 | BBBY-US | Riverside | 3700 Tyler Street Suite 14 | Riverside | CA | 92503 | 30,248 |
| 539 | BBBY-US | Redwood City | 1950 El Camino Real | Redwood City | CA | 94063 | 25,000 |
| 540 | BBBY-US | Capitola | 3555 Clares Street Suite J | Capitola | CA | 95010 | 24,380 |
| 542 | BBBY-US | Nashua | 261 Daniel Webster HWY Unit 1 | Nashua | NH | 03060 | 37,857 |
| 544 | BBBY-US | Edmond | 412 S Bryant Avenue | Edmond | OK | 73034 | 22,000 |
| 550 | BBBY-US | Newport | 288 East Main Road | Middletown | RI | 02842 | 25,373 |
| 551 | BBBY-US | Bradenton | 825 Cortez Road West | Bradenton | FL | 34207 | 25,395 |
| 556 | BBBY-US | St. Augustine | 320 CBL Drive | St Augustine | FL | 32086 | 20,000 |
| 557 | BBBY-US | Denton | 2315 Colorado Blvd Suite 180 | Denton | TX | 76205 | 30,281 |
| 558 | BBBY-US | Chattanooga | 2040 Hamilton Place Blvd | Chattanooga | TN | 37421 | 28,000 |
| 559 | BBBY-US | Coeur d Alene | 440 W Wilbur Avenue | Coeur d Alene | ID | 83815 | 20,215 |
| 560 | BBBY-US | Morganton Road | 5075 Morganton Road Suite 9C | Fayetteville | NC | 28314 | 29,427 |
| 562 | BBBY-US | Eureka | 3300 Broadway Space #340 | Eureka | CA | 95501 | 25,759 |
| 564 | BBBY-US | Westfield | 1950 6 Greyhound Pass | Carmel | IN | 46033 | 24,350 |
| 569 | BBBY-US | Country Club Plaza | 2725 Marconi Ave | Sacramento | CA | 95821 | 24,000 |
| 571 | BBBY-US | Lakeline | 11066 Pecan Park Blvd Bldg 1 | Cedar Park | TX | 78613 | 34,361 |
| 573 | BBBY-US | Scottsdale | 7000 E Mayo Blvd Building 12 | Phoenix | AZ | 85054 | 35,000 |
| 577 | BBBY-US | San Patricio | 100 Ave San Patricio | Guaynabo | PR | 00966 | 40,500 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

## Bed Bath & Beyond.2023.Wave 5
### Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 579 | BBBY-US | Miami International | 10640 NW 19th Street | Miami | FL | 33172 | 28,053 |
| 585 | BBBY-US | College Station | 1430 Texas Avenue South | College Station | TX | 77840 | 24,722 |
| 589 | BBBY-US | Gulfport | 3951 Promenade Parkway | Diberville | MS | 39540 | 23,437 |
| 591 | BBBY-US | Avondale | 10060 W Mc Dowell Road | Avondale | AZ | 85323 | 25,063 |
| 592 | BBBY-US | West Ashley | 946 Orleans Road Suite E1 | Charleston | SC | 29407 | 23,683 |
| 605 | BBBY-US | Parker | 11435 Twenty Mile Road | Parker | CO | 80134 | 23,000 |
| 606 | BBBY-US | Surprise | 13723 W Bell Road | Surprise | AZ | 85374 | 25,000 |
| 611 | BBBY-US | Murfreesboro | 2615 Medical Cntr Prkwy St1200 | Murfreesboro | TN | 37129 | 25,625 |
| 615 | BBBY-US | Abilene | 3417 Catclaw Drive | Abilene | TX | 79606 | 18,043 |
| 623 | BBBY-US | Frankfort | 11165 W Lincoln Highway | Frankfort | IL | 60423 | 25,000 |
| 626 | BBBY-US | Idaho Falls | 3011 S 25th East | Idaho Falls | ID | 83406 | 20,062 |
| 632 | BBBY-US | Lubbock | 2624 W Loop 289 | Lubbock | TX | 79407 | 29,954 |
| 756 | BBBY-US | Bedford | 5 Colby Court Unit 3 | Bedford | NH | 03110 | 35,753 |
| 762 | BBBY-US | Traverse City | 3301 N US 31 South | Traverse City | MI | 49684 | 25,000 |
| 765 | BBBY-US | Fredericksburg | 3700 Plank Road | Fredericksburg | VA | 22407 | 28,977 |
| 766 | BBBY-US | Oracle | 6310 N Oracle Road | Tucson | AZ | 85704 | 31,638 |
| 768 | BBBY-US | North Cincinnati | 5800 Deerfield Road | Mason | OH | 45040 | 30,000 |
| 769 | BBBY-US | Waco | 4633 S Jack Kultgen Exwy ST102 | Waco | TX | 76706 | 25,187 |
| 771 | BBBY-US | West Omaha | 255 N 170th Street | Omaha | NE | 68118 | 30,000 |
| 772 | BBBY-US | Myrtle Beach | 2400 Coastal Grand Circle | Myrtle Beach | SC | 29577 | 25,121 |
| 774 | BBBY-US | Patterson Place | 3616 Witherspoon Blvd. Suite 103 | Durham | NC | 27707 | 33,839 |
| 775 | BBBY-US | Bethlehem | 4449 Southmont Way | Easton | PA | 18045 | 28,159 |
| 776 | BBBY-US | Redlands | 27450 Lugonia Avenue | Redlands | CA | 92374 | 28,445 |
| 777 | BBBY-US | St. George | 844 W Telegraph Street | Washington City | UT | 84780 | 22,054 |
| 780 | BBBY-US | Potomac Mills | 14101 Crossing Place | Woodbridge | VA | 22192 | 35,000 |
| 783 | BBBY-US | Riverdale | 4113 Riverdale Road | Ogden | UT | 84405 | 23,046 |
| 800 | BBBY-US | Sir Barton Way | 2321 Sir Barton Way, Suite 120 | Lexington | KY | 40509 | 35,000 |
| 808 | BBBY-US | Kissimmee | 3212 North John Young Parkway | Kissimmee | FL | 34741 | 24,897 |
| 810 | BBBY-US | Somerville | 119 Middlesex Avenue | Somerville | MA | 02145 | 38,012 |
| 812 | BBBY-US | Bend | 63455 N. Highway 97, Suite 113 | Bend | OR | 97703 | 22,859 |
| 820 | BBBY-US | Goleta | 189 North Fairview Ave | Goleta | CA | 93117 | 23,922 |
| 821 | BBBY-US | Ventura | 4040 East Main Street | Ventura | CA | 93003 | 27,718 |
| 825 | BBBY-US | Mc Kinney | 2975 Craig Drive | McKinney | TX | 75072 | 28,016 |

C:\Users\ifredericks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\7Y6OT4XM\BBB Store List Budgets_SEND
2/5/2023 11:28 PM
Store List Wave 5

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | Store List | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 832 | BBBY-US | Raleigh Triangle | 3604 Sumner Blvd, Suite 104 | Raleigh | NC | 27616 | 32,000 |
| 833 | BBBY-US | Viera | 2291 Town Center Ave, Suite 101 | Melbourne | FL | 32940 | 24,329 |
| 837 | BBBY-US | Brookfield | 14 Candlewood Lake Road | Brookfield | CT | 06804 | 37,640 |
| 838 | BBBY-US | Highlands Ranch | 9315 Dorchester Street, Suite 100 | Highlands Ranch | CO | 80129 | 23,000 |
| 839 | BBBY-US | Green Bay | 825 Pilgrim Way Suite B | Green Bay | WI | 54304 | 24,296 |
| 841 | BBBY-US | Concord | 10 Loudon Road | Concord | NH | 03301 | 23,325 |
| 1002 | BBBY-US | San Antonio | 6001 NW Loop 410 Suite #120 | San Antonio | TX | 78238 | 28,000 |
| 1011 | BBBY-US | Aberdeen | 200 Aberdeen Commons, 11088 US 15-501 Highw | Aberdeen | NC | 28315 | 22,975 |
| 1014 | BBBY-US | Moreland Avenue | 1235 Caroline Street NE | Atlanta | GA | 30307 | 23,606 |
| 1021 | BBBY-US | Omaha | 1220 South 71st Street | Omaha | NE | 68106 | 32,000 |
| 1024 | BBBY-US | Rockwall | 963 East Interstate Highway 30 | Rockwall | TX | 75087 | 23,000 |
| 1028 | BBBY-US | Lakeland | 1500 Town Center Drive | Lakeland | FL | 33803 | 30,000 |
| 1030 | BBBY-US | La Quinta | 79-110 Hwy 111 | La Quinta | CA | 92253 | 30,000 |
| 1033 | BBBY-US | Gilbert | 2793 S Market St, Suite 101 | Gilbert | AZ | 85296 | 31,957 |
| 1035 | BBBY-US | Turkey Creek | 11263 Parkside Drive, Suite 612 | Knoxville | TN | 37934 | 25,000 |
| 1044 | BBBY-US | Plymouth | 200 Colony Place | Plymouth | MA | 02360 | 25,072 |
| 1053 | BBBY-US | Crestview Hills | 2757 Town Center Blvd | Crestview Hills | KY | 41017 | 26,989 |
| 1056 | BBBY-US | Hamburg | 3701 McKinley Parkway | Blasdell | NY | 14219 | 25,000 |
| 1059 | BBBY-US | Clarence | 4401 Transit Road | Williamsville | NY | 14221 | 30,000 |
| 1069 | BBBY-US | Cypress | 25839 US Highway 290 | Cypress | TX | 77429 | 30,000 |
| 1073 | BBBY-US | Kalispell | 2411 Highway 93 North | Kalispell | MT | 59901 | 23,000 |
| 1077 | BBBY-US | Camelback | 1919 East Camelback Road, Suite #128 | Phoenix | AZ | 85016 | 22,660 |
| 1082 | BBBY-US | Franklin Park | 5135 Monroe Street | Toldeo | OH | 43623 | 32,154 |
| 1091 | BBBY-US | Rio Grande | 3201 Rt 9 South, Unit B | Rio Grande | NJ | 08242 | 22,600 |
| 1094 | BBBY-US | Akers Mills | 2955 Cobb Parkway, Suite 110 | Atlanta | GA | 30339 | 29,000 |
| 1096 | BBBY-US | Clifton | 404 State Route 3 | Clifton | NJ | 07014 | 24,080 |
| 1097 | BBBY-US | Murrieta | 24450 Village Walk Place | Murrieta | CA | 92562 | 33,000 |
| 1107 | BBBY-US | San Marcos | 1050 McKinley Place Dr, Bldg 2, Suite 220 | San Marcos | TX | 78666 | 23,000 |
| 1108 | BBBY-US | Longmont | 205 Ken Pratt Blvd., Suite 240 | Longmont | CO | 80501 | 28,028 |
| 1110 | BBBY-US | Miracle Market Place | 3301 Coral Way | Miami | FL | 33145 | 30,250 |
| 1112 | BBBY-US | Rutland | 322 Route 7 South | Rutland | VT | 05701 | 24,000 |
| 1115 | BBBY-US | Bozeman | 2155 West Cattail St | Bozeman | MT | 59718 | 19,711 |
| 1117 | BBBY-US | Conroe | 2920 Interstate 45 N. | Conroe | TX | 77303 | 24,686 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A-3

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1119 | BBBY-US | Peachtree City | 1245 North Peachtree Parkway | Peachtree City | GA | 30269 | 23,401 |
| 1125 | BBBY-US | North Naples | 13585 Tamiami Trail N. Unit #6 | Naples | FL | 34110 | 25,002 |
| 1126 | BBBY-US | North Greensboro | 1618 Highwoods Blvd | Greensboro | NC | 27410 | 30,000 |
| 1127 | BBBY-US | Keizer | 6180 Ulali Drive | Keizer | OR | 97303 | 28,048 |
| 1129 | BBBY-US | Olympia | 2405 4th Avenue West | Olympia | WA | 98502 | 28,000 |
| 1130 | BBBY-US | East Vancouver | 16701 South East Mill Plain Blvd | Vancouver | WA | 98684 | 28,000 |
| 1133 | BBBY-US | Cottonwood Commons | 3601 Old Airport Road, Suite A | Albuquerque | NM | 87114 | 28,000 |
| 1138 | BBBY-US | Jacksonville Beach | 4054 South 3rd Street | Jacksonville Beach | FL | 32250 | 29,000 |
| 1142 | BBBY-US | Rogers | 2203 Promenade Boulevard, Suite 20210 | Rogers | AR | 72758 | 30,000 |
| 1143 | BBBY-US | East Colonial | 3228 East Colonial Drive | Orlando | FL | 32803 | 27,761 |
| 1149 | BBBY-US | Sioux Falls | 3800 South Louise Ave, Suite 2 | Sioux Falls | SD | 57106 | 40,843 |
| 1150 | BBBY-US | AUGUSTA | 42 Whitten Road, Suite 1 | Augusta | ME | 04330 | 25,846 |
| 1154 | BBBY-US | Petoskey | 910 Spring Street | Petoskey | MI | 49770 | 21,000 |
| 1157 | BBBY-US | Missoula | 3017 Paxson Street | Missoula | MT | 59801 | 21,641 |
| 1161 | BBBY-US | Mueller | 1201 Barbara Jordan Blvd, Suite 200 | Austin | TX | 78723 | 25,000 |
| 1162 | BBBY-US | 202 & Dobson | 837 North Dobson Road | Mesa | AZ | 85201 | 30,000 |
| 1175 | BBBY-US | Anchorage | 601 E Dimond Blvd | Anchorage | AK | 99518 | 29,486 |
| 1177 | BBBY-US | DC USA | 3100 14th Street NW | Washington | DC | 20010 | 33,940 |
| 1179 | BBBY-US | Mooresville | 627 River Highway | Mooresville | NC | 28117 | 28,000 |
| 1190 | BBBY-US | Gulf Shores | 3800 Gulf Shores Parkway, Suite 300 | Gulf Shores | AL | 36542 | 25,000 |
| 1203 | BBBY-US | Willowbrook | 7175 Kingery Highway | Willowbrook | IL | 60527 | 28,000 |
| 1207 | BBBY-US | Northgate Mall | 401 NE Northgate Way Suite 2100 | Seattle | WA | 98125 | 28,176 |
| 1209 | BBBY-US | Wesley Chapel | 5845 Wesley Grove Boulevard | Wesley Chapel | FL | 33544 | 30,000 |
| 1212 | BBBY-US | Euless | 2800 Highway 121 Suite 600 | Euless | TX | 76039 | 28,000 |
| 1227 | BBBY-US | Foxboro | 330 Patriot Place | Foxborough | MA | 02035 | 30,000 |
| 1234 | BBBY-US | Lady Lake | 546 N. Highway 441 | Lady Lake | FL | 32159 | 28,000 |
| 1237 | BBBY-US | Morehead City | 5160 Highway 70 Suite 600 | Morehead City | NC | 28557 | 20,400 |
| 1244 | BBBY-US | Portsmouth | 100 Durgin Lane | Portsmouth | NH | 03801 | 37,843 |
| 1258 | BBBY-US | Hingham | 9 Shipyard Drive | Hingham | MA | 02043 | 28,102 |
| 1259 | BBBY-US | Flowood | 760 Mackenzie Lane | Flowood | MS | 39232 | 25,000 |
| 1260 | BBBY-US | Sandy | 10433 South State Street | Sandy | UT | 84070 | 28,000 |
| 1265 | BBBY-US | Warner Robins | 3060 Watson Boulevard | Warner Robins | GA | 31093 | 20,000 |
| 1266 | BBBY-US | Bear Valley Road | 18815 Bear Valley Road | Apple Valley | CA | 92308 | 25,000 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1268 | BBBY-US | University Town Center | 111 N Cattlemen Rd | Sarasota | FL | 34243 | 35,029 |
| 1291 | BBBY-US | West El Paso | 655 Sunland Park Drive, Suite I | El Paso | TX | 79912 | 25,002 |
| 1304 | BBBY-US | Cape Coral | 1827 NE Pine Island Road | Cape Coral | FL | 33909 | 27,978 |
| 1305 | BBBY-US | Palm Springs | 5200 E. Ramon Road Building B | Palm Springs | CA | 92264 | 28,245 |
| 1307 | BBBY-US | Prescott | 3250 Gateway Blvd Ste. 508 | Prescott | AZ | 86303 | 30,078 |
| 1308 | BBBY-US | Schererville | 124 US Highway 41 | Schererville | IN | 46375 | 34,163 |
| 1309 | BBBY-US | Hamilton | 160 Marketplace Boulevard | Hamilton | NJ | 08691 | 30,704 |
| 1310 | BBBY-US | Billings | 2821 King Ave West | Billings | MT | 59102 | 35,115 |
| 1312 | BBBY-US | Collierville | 4610 Merchants Park Circle Suite 501 | Collierville | TN | 38017 | 28,307 |
| 1313 | BBBY-US | Southaven | 6400 Towne Center Loop | Southaven | MS | 38671 | 25,080 |
| 1314 | BBBY-US | Riverhead | 1440 Old Country Road Suite 300 | Riverhead | NY | 11901 | 30,031 |
| 1317 | BBBY-US | The Forum | 8262 Agora Parkway | Selma | TX | 78154 | 34,000 |
| 1321 | BBBY-US | Durango | 800 South Camino Del Rio | Durango | CO | 81301 | 25,492 |
| 1326 | BBBY-US | Pearlridge | 145 Kaonohi St | Aiea | HI | 96701 | 45,901 |
| 1327 | BBBY-US | Stroudsburg | 143 Radio Drive | Stroudsburg | PA | 18360 | 25,192 |
| 1331 | BBBY-US | LANCASTER | 2350 Lincoln Highway East Suite 100 | Lancaster | PA | 17602 | 42,923 |
| 1333 | BBBY-US | Rapid City | 1365 Eglin Street | Rapid City | SD | 57701 | 23,400 |
| 1336 | BBBY-US | BURLINGTON | 1915 Marketplace Drive | Burlington | WA | 98233 | 27,203 |
| 1338 | BBBY-US | Winter Garden | 3215 Daniels Road | Winter Garden | FL | 34787 | 28,633 |
| 1341 | BBBY-US | Christiana | 331 West Main Street | Newark | DE | 19702 | 37,500 |
| 1365 | BBBY-US | Longview | 422 W Loop 281 Suite 200 | Longview | TX | 75605 | 24,960 |
| 1367 | BBBY-US | Panama City Beach, FL | 15600 Panama City Beach Pkwy | Panama City Beach | FL | 32413 | 23,774 |
| 1372 | BBBY-US | Silverdale | 9991 Mickelberry Road NW | Silverdale | WA | 98383 | 28,900 |
| 1392 | BBBY-US | Denham Springs | 10129 Crossing Way Suite 420 | Denham Springs | LA | 70726 | 23,400 |
| 1403 | BBBY-US | Flower Mound | 6101 Long Prairie RD Suite 200 | Flower Mound | TX | 75028 | 29,967 |
| 1405 | BBBY-US | Holly Springs | 208 Grand Hill Place | Holly Springs | NC | 27540 | 23,400 |
| 1409 | BBBY-US | Tuscaloosa | 1320 McFarland Blvd E BLDG 300 | Tuscaloosa | AL | 35404 | 23,000 |
| 1422 | BBBY-US | Rehoboth Beach | 30134 Veterans Way | Rehoboth Beach | DE | 19971 | 23,550 |
| 3001 | BABY-US | ROCKVILLE | 1683 Rockville Pike | Rockville | MD | 20852-1619 | 42,296 |
| 3002 | BABY-US | Scarsdale | 1019 Central Park Ave | Scarsdale | NY | 10583 | 32,200 |
| 3003 | BABY-US | PARAMUS | 34 East Ridgewood Ave | Paramus | NJ | 07652-3613 | 63,479 |
| 3005 | BABY-US | WESTBURY | 895 East Gate Blvd | Garden City | NY | 11530-2104 | 50,000 |
| 3006 | BABY-US | Totowa | 545 Route 46 West | Totowa | NJ | 07512-1735 | 33,766 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5
Exhibit A-3

Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3007 | BABY-US | MANHATTAN | 3 Enterprise Ave N. Suite 3 | Secaucus | NY | 07094 | 34,532 |
| 3008 | BABY-US | SPRINGFIELD | 6398 Springfield Plaza | Springfield | VA | 22150-3431 | 28,000 |
| 3009 | BABY-US | DOWNERS GROVE | 1556 Butterfield Road | Downers Grove | IL | 60515-1003 | 35,445 |
| 3010 | BABY-US | CHERRY HILL | 1590 Kings Highway North | Cherry Hill | NJ | 08034 | 30,226 |
| 3011 | BABY-US | Utica | 13361 Hall Road, Suite 102 | Utica | MI | 48315-5884 | 32,180 |
| 3012 | BABY-US | Canton | 42595 Ford Road | Canton | MI | 48187-3381 | 32,000 |
| 3013 | BABY-US | Columbus (Easton) | 3749 Easton Market | Columbus | OH | 43219-6023 | 27,430 |
| 3015 | BABY-US | CORAL SPRINGS | 2035 N. University Drive | Coral Springs | FL | 33071-6132 | 22,865 |
| 3016 | BABY-US | Greenwood | 1230 N. US 31, Suite A | Greenwood | IN | 46142-4501 | 31,168 |
| 3017 | BABY-US | Schaumburg, IL | 580 E. Golf Road | Schaumburg | IL | 60173-4442 | 32,800 |
| 3018 | BABY-US | Austin | 5400 Brodie Lane, Suite 400 | Austin | TX | 78745-2526 | 28,730 |
| 3019 | BABY-US | Augusta, GA | 242  Robert C. Daniels Jr. Parkway | Augusta | GA | 30909-0803 | 26,735 |
| 3021 | BABY-US | Plano, TX | 2712 N. Central Expressway | Plano | TX | 75074 | 28,008 |
| 3022 | BABY-US | Chandler, AZ | 2640 W. Chandler Blvd. | Chandler | AZ | 85224 | 35,606 |
| 3023 | BABY-US | Scottsdale, AZ | 10080 N. 90th Street | Scottsdale | AZ | 85258 | 34,920 |
| 3024 | BABY-US | Carolina Pavillion, NC | 9555 South Blvd | Charlotte | NC | 28273-6901 | 31,278 |
| 3025 | BABY-US | Flagler | 8241 West Flagler Street, Suite 100 | Miami | FL | 33144 | 29,953 |
| 3026 | BABY-US | Whitehall (Allentown), PA | 1915 Whitehall Mall | Whitehall | PA | 18052-5119 | 30,322 |
| 3027 | BABY-US | Addison | 13900 Dallas Parkway | Dallas | TX | 75240-4323 | 33,586 |
| 3028 | BABY-US | Nashua | 213 Daniel Webster Highway | Nashua | NH | 03060-6600 | 30,491 |
| 3029 | BABY-US | BRANDON | 11345 Causeway Blvd | Brandon | FL | 33511-2904 | 35,150 |
| 3031 | BABY-US | Hoover | 4351 Creekside Ave. | Hoover | AL | 35244-5019 | 33,843 |
| 3033 | BABY-US | ALPHARETTA | 7121 North Point Parkway | Alpharetta | GA | 30022-8255 | 40,787 |
| 3034 | BABY-US | San Jose | 5353 Almaden Expressway Suite A 100 | San Jose | CA | 95118-3637 | 37,849 |
| 3036 | BABY-US | Colonie | 1440 Central Avenue | Colonie | NY | 12205-5118 | 37,210 |
| 3037 | BABY-US | BRIDGEWATER | 711 Route 28 | Bridgewater | NJ | 08807-2401 | 32,206 |
| 3038 | BABY-US | Brookfield | 665 Main Street | Brookfield | WI | 53005 | 32,888 |
| 3039 | BABY-US | Frisco | 2930 Preston Rd Suite 600 | Frisco | TX | 75034-9055 | 32,746 |
| 3040 | BABY-US | CRYSTAL LAKE | 5540 Northwest Hwy | Crystal Lake | IL | 60014-8016 | 27,000 |
| 3042 | BABY-US | Lexington | 2321 Sir Barton Way Suite 110 | Lexington | KY | 40509-2434 | 32,498 |
| 3043 | BABY-US | Temecula | 40438 Winchester Road | Temecula | CA | 92591 | 28,897 |
| 3044 | BABY-US | North Cincinnati (Deerfield) | 5255 Deerfield Blvd. | Mason | OH | 45040-2509 | 27,400 |
| 3046 | BABY-US | Christiana | 501 West Main St. | Newark | DE | 19702-1534 | 30,057 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| | | | | | | | Store List |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3047 | BABY-US | Grand Rapids (Kentwood) | 4100 28th Street SE | Kentwood | MI | 49512-1904 | 34,500 |
| 3048 | BABY-US | FRESNO | 7458 N Blackstone Ave | Fresno | CA | 93720-4301 | 28,037 |
| 3049 | BABY-US | Pembroke Pines | 11360 Pines Blvd | Pembroke Pines | FL | 33026-4102 | 31,000 |
| 3050 | BABY-US | Morrisville | 3121 Market Center Drive | Morrisville | NC | 27560 | 25,000 |
| 3051 | BABY-US | Rivers Edge | 4030 East 82nd Street | Indianapolis | IN | 46250 | 26,148 |
| 3052 | BABY-US | Hurst | 1451 West Pipeline Road | Hurst | TX | 76053-4628 | 33,862 |
| 3053 | BABY-US | TULSA | 10017 East 71st Street | Tulsa | OK | 74133-3210 | 28,000 |
| 3054 | BABY-US | Fort Worth | 4648 SW Loop 820 | Fort Worth | TX | 76109 | 29,549 |
| 3055 | BABY-US | PLEASANT HILL | 3250 Buskirk Ave Suite 300A | Pleasant Hill | CA | 94523-7309 | 30,163 |
| 3056 | BABY-US | SNELLVILLE | 1670 Scenic Hwy N Suite 124 | Snellville | GA | 30078-2132 | 28,790 |
| 3057 | BABY-US | OVERLAND PARK | 12055 Metcalf Avenue | Overland Park | KS | 66213-1121 | 30,000 |
| 3058 | BABY-US | Elk Grove | 7621 Laguna Blvd | Elk Grove | CA | 95758-5061 | 31,079 |
| 3060 | BABY-US | BRAINTREE | 160 Granite St. | Braintree | MA | 02184-1747 | 33,508 |
| 3062 | BABY-US | INDEPENDENCE | 20000 East Jackson Drive | Independence | MO | 64057-1568 | 28,245 |
| 3063 | BABY-US | Encinitas | 1014 N El Camino Real | Encinitas | CA | 92024 | 27,260 |
| 3064 | BABY-US | NAPERVILLE | 324 S Route 59 | Naperville | IL | 60540-3924 | 22,903 |
| 3065 | BABY-US | Woodbury | 9160 Hudson Road | Woodbury | MN | 55125-7001 | 28,487 |
| 3066 | BABY-US | Sandy | 10230 South State Street | Sandy | UT | 84070-4115 | 32,928 |
| 3067 | BABY-US | WEBSTER | 19801 Gulf Freeway Suite 800 | Webster | TX | 77598-3802 | 30,000 |
| 3070 | BABY-US | BALLWIN | 15355A Manchester Road | Ballwin | MO | 63011-3026 | 28,150 |
| 3071 | BABY-US | Jacksonville | 8801 Southside Blvd Unit 10 | Jacksonville | FL | 32256-0796 | 25,000 |
| 3072 | BABY-US | Altamonte Springs | 130 E Altamonte Dr Suite 1000 | Altamonte Springs | FL | 32701-4324 | 27,013 |
| 3073 | BABY-US | W DesMoines | 4100 University Ave Ste 115 | West Des Moines | IA | 50266-5958 | 25,938 |
| 3074 | BABY-US | E. Colonial (Orlando) | 3206 East Colonial Drive | Orlando | FL | 32803-5121 | 25,205 |
| 3076 | BABY-US | Torrance | 3700 Torrance Blvd. | Torrance | CA | 90503-4808 | 36,566 |
| 3080 | BABY-US | Potomac Mills | 2700 Potomac Mills Circle, Suite 100 | Woodbridge | VA | 22192-4651 | 38,243 |
| 3081 | BABY-US | West Long Branch | 310 Route 36 | West Long Branch | NJ | 07764-1026 | 22,223 |
| 3083 | BABY-US | Amherst | 1261 Niagara Falls Blvd Ste 1 | Amherst | NY | 14226-1160 | 29,484 |
| 3084 | BABY-US | MISSION VIEJO | 25322 El Paseo | Mission Viejo | CA | 92691-6906 | 36,033 |
| 3086 | BABY-US | KNOXVILLE | 202 Morrell Road | Knoxville | TN | 37919-5876 | 25,000 |
| 3087 | BABY-US | ALBUQUERQUE | 2451 San Mateo Blvd NE Suite C | Albuquerque | NM | 87110-4417 | 27,839 |
| 3088 | BABY-US | Roseville | 1120 Galleria Blvd Suite 160 | Roseville | CA | 95678-1992 | 29,436 |
| 3090 | BABY-US | Maplewood | 3200 Laclede Station Suite D | St Louis | MO | 63143-3709 | 24,638 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

Store List

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---------|---------------|------|---------|------|-------|-----|------------------|
| 3091 | BABY-US | Willowbrook | 17355 Tomball Parkway Suite 1K | Houston | TX | 77064-1180 | 29,250 |
| 3092 | BABY-US | DEPTFORD | 1745 Deptford Center Road | Deptford | NJ | 08096-5662 | 24,963 |
| 3093 | BABY-US | Beachwood (Harvard Park) | 4045 Richmond Road | Warrensville Heights | OH | 44122-6048 | 25,446 |
| 3094 | BABY-US | Livingston | 530 W Mount Pleasant Avenue | Livingston | NJ | 07039-1740 | 25,356 |
| 3095 | BABY-US | YORBA LINDA | 22999 Savi Ranch Parkway | Yorba Linda | CA | 92887-3095 | 25,418 |
| 3096 | BABY-US | RANCHO CUCAMONGA | 11530 4th Street Suite 125 | Rancho Cucamonga | CA | 91730-3096 | 24,000 |
| 3097 | BABY-US | Redlands | 27651 San Bernardino Ave Ste 110 | Redlands | CA | 923745030 | 22,047 |
| 3098 | BABY-US | Tukwila | 17686 Southcenter Parkway | Tukwila | WA | 98188-3705 | 25,165 |
| 3099 | BABY-US | West Hills | 6621 Fallbrook Avenue, Unit B | West Hills | CA | 91307-3520 | 20,500 |
| 3100 | BABY-US | KENNESAW | 2555 Cobb Place Lane NW Ste 50 | Kennesaw | GA | 30144-6871 | 25,526 |
| 3101 | BABY-US | Omaha | 12204 K Plaza | Omaha | NE | 68137 | 25,032 |
| 3103 | BABY-US | MONTGOMERYVILLE | 751 Horsham Rd Unit B1 | Landsdale | PA | 19446-6489 | 23,084 |
| 3104 | BABY-US | WICHITA | 2756 N Greenwich Ct | Wichita | KS | 67226-3104 | 14,931 |
| 3105 | BABY-US | Aurora | 6492 South Parker Road | Aurora | CO | 80016-1080 | 23,505 |
| 3106 | BABY-US | Southlake | 2901 East State Hwy 114 | Southlake | TX | 76092-6694 | 23,428 |
| 3108 | BABY-US | Daly City | 149 Serramonte Center | Daly City | CA | 94015-3108 | 22,006 |
| 3109 | BABY-US | Katy | 24600 Katy Fwy Suite 200 | Katy | TX | 77494-3109 | 23,000 |
| 3110 | BABY-US | Franklin | 2000 Mallory Lane, Suite 400 | Franklin | TN | 37067-8208 | 23,947 |
| 3111 | BABY-US | Pharr (McAllen) | 500 N Jackson Rd #A2 | Pharr | TX | 78577 | 25,056 |
| 3112 | BABY-US | Summerlin | 2315 Summa Drive Suite 120 | Las Vegas | NV | 89135-1460 | 26,315 |
| 3113 | BABY-US | Dulles Landing (Chantilly) | 24670 Dulles Landing Dr., Unit 130 | Dulles | VA | 20166-2628 | 23,205 |
| 3115 | BABY-US | FAYETTEVILLE | 2716 Freedom Parkway Drive | Fayetteville | NC | 28314-3115 | 18,294 |
| 3116 | BABY-US | Dayton | 6146 Wilmington Pike | Dayton | OH | 45459-7007 | 20,082 |
| 3117 | BABY-US | Cedar Park | 5001 183A Toll Road Suite I100 | Cedar Park | TX | 78613-7937 | 26,036 |
| 3118 | BABY-US | CHULA VISTA | 1660 Millenia Ave | Chula Vista | CA | 91915 | 15,000 |
| 3119 | BABY-US | ARROWHEAD | 7375 W Bell Rd | Peoria | AZ | 85382 | 21,315 |
| 3120 | BABY-US | BATON ROUGE | 5919 Bluebonnet Blvd | Baton Rouge | LA | 70836 | 18,300 |
| 3121 | BABY-US | West Hartford | 1433 New Britain Avenue | West Haetford | CT | 06110 | 24,910 |
| 3122 | BABY-US | HUMBLE | 20416 Highway 59N | Humble | TX | 77338-3122 | 34,875 |
| 3124 | BABY-US | Beaverton | 3485 SW Cedar Hills Blvd S170 | Beaverton | OR | 97005-1309 | 17,595 |
| 3125 | BABY-US | San Antonio | 522 Northwest Loop 410, Suite 108 | San Antonio | TX | 78216-5551 | 20,086 |
| 3126 | BABY-US | STAFFORD | 12710 Fountain Lake Circle | Stafford | TX | 77477-3705 | 18,283 |
| 3128 | BABY-US | Clackamas | 12535 SE 82nd Ave., Suite B | Clackamas | OR | 97015-9734 | 16,968 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

Bed Bath & Beyond.2023.Wave 5

Exhibit A-3

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---------|----------------|------|---------|------|-------|-----|-----------------|
| | | | Store List | | | | |
| 3129 | BABY-US | Westlake (Crocker Park) | 292 Main Street | Westlake | OH | 44145-3129 | 14,400 |
| 3130 | BABY-US | WOODBRIDGE | 675 US Highway 1S, Suite 1 | Iselin | NJ | 08830-3152 | 21,794 |
| 3131 | BABY-US | Concord | 8062 Concord Mills Blvd., Suite 20 | Concord | NC | 28027-4417 | 17,920 |
| 3132 | BABY-US | Littleton | 5134 South Wadsworth Blvd. | Lakewood | CO | 80123 | 23,024 |
| 3134 | BABY-US | Tyler | 8934 S. Broadway Ave., Ste 448 | Tyler | TX | 75703-5420 | 23,595 |
| 3136 | BABY-US | Henderson | 535 N. Stephanie Street | Henderson | NV | 89014-6613 | 20,008 |
| 3137 | BABY-US | Southfield | 28512 Telegraph Road | Southfield | MI | 48034 | 25,000 |
| 3138 | BABY-US | Westminster | 9350 North Sheridan Blvd. | Westminster | CO | 80031-6304 | 25,343 |
| 3139 | BABY-US | MADISON | 201 Junction Rd | Madison | WI | 53717 | 22,192 |
| 3140 | BABY-US | Granger | 435 E. University Drive | Granger | IN | 46530 | 24,779 |
| 472 | | | | | | | 31,704 |

DocuSign Envelope ID: E3F173F3-E35E-4338-9D2B-0A2189F09291

DocuSign Envelope ID: 535173F3-5355-4338-9D2B-0A2180F09291

## EXHIBIT B

[To be inserted]

## Bed Bath & Beyond.2023.Wave 3
### Exhibit B-1

| Expense Budget (1) | |
| --- | --- |

| | |
| --- | --- |
| **Advertising** | |
| Media | 348,651 |
| Signs (2) | 1,243,315 |
| Sign Walkers | 743,246 |
| Subtotal Advertising | 2,335,212 |
| | |
| **Supervision** | |
| Fees / Wages / Expenses (3) | 2,990,272 |
| Subtotal Supervision | 2,990,272 |
| | |
| Miscellaneous /Legal (4) | 30,000 |
| | |
| Total Expenses | 5,355,483 |

Notes:

1. This Expense Budget contemplates a sale term starting January, 26, 2023 (in 3 locations, 59,106 & 505) and starting January 28,2023 in the remaining locations and running through March 26, 2023. The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

DocuSign Envelope ID: 535173F3-F295-4338-9D2B-0A2180F09291

## Bed Bath & Beyond.2023.Wave 4
### Exhibit B-2

| Expense Budget (1) |
|---|

**Advertising**

| | |
|---|---:|
| Media | 597,232 |
| Signs (2) | 1,313,857 |
| Sign Walkers | 994,016 |
| Subtotal Advertising | 2,905,106 |

**Supervision**

| | |
|---|---:|
| Fees / Wages / Expenses (3) | 2,336,759 |
| Subtotal Supervision | 2,336,759 |

| | |
|---|---:|
| Miscellaneous /Legal (4) | 30,000 |

| | |
|---|---:|
| Total Expenses | 5,271,864 |

Notes:

1. This Expense Budget contemplates a sale term of February, 4, 2023 through April 9, 2023.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

DocuSign Envelope ID: 535172F3-F355-4338-9D2B-0A2180F09291

### Bed Bath & Beyond.2023.Wave 5
### Exhibit B-3

| Expense Budget (1) | |
|---|---|

| | |
|---|---:|
| **Advertising** | |
| Media | 3,533,514 |
| Signs (2) | 4,162,018 |
| Sign Walkers | 4,452,930 |
| Subtotal Advertising | 12,148,462 |
| | |
| **Supervision** | |
| Fees / Wages / Expenses (3) | 10,967,225 |
| Subtotal Supervision | 10,967,225 |
| | |
| Miscellaneous /Legal (4) | 240,000 |
| | |
| Total Expenses | 23,355,687 |

Notes:

1. This Expense Budget contemplates a sale term of February, 4, 2023 through April 26, 2023.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

## EXHIBIT C

For purposes of calculating "Net Recovery", (1) "Expenses" of the Sale shall mean those Store-level operating expenses directly attributable to and which arise during the Sale Term, limited to the following: (a) actual Occupancy Expenses for the Stores on a per location and per diem basis, plus the portion of any percentage rent obligations allocable to the sale of Merchandise and Additional Consultant Goods during the Sale; (b) actual wages and commissions for all Store-level employees used in conducting the Sale for actual days/hours worked during the Sale Term; (c) amounts payable by Merchant for benefits for Store-level employees used in conducting the Sale (including payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits); (d) all costs and expenses associated with Agent's on-site supervisors; (e) all costs and expenses associated with advertising of the Sale, including banners, sign-walkers, and interior and exterior signs that are produced for the Sale, other promotional costs including, without limitation, email blasts, digital advertising, television, ROP, other advertising and direct mail attributable to the Sale and ordered or requested by Agent; (f) postage/overnight delivery/courier charges to and from or among the Stores to the extent relating to the Sale; (g) credit card and bank card fees, chargebacks, and discounts relating to the Sale; (h) any and all costs of moving, transferring, or consolidating Merchandise between the Stores; (i) a pro rata portion for the Sale Term of Merchant's premiums in respect of general liability, casualty, property, inventory, and other insurance policies attributable to the Merchandise, the Stores and the Distribution Centers; (j) third-party payroll processing fees associated with the Sale; (k) armored car service and security personnel; (l) Agent's (i) actual cost of capital, (ii) reasonable legal fees and expenses attributable to the Sale Term, and (iii) bank fees and wire charges; and (m) [Reserved]; and (2) "Expenses" of the Sale shall exclude "Central Service Expenses" and "Distribution Center Expenses".

As used herein, the following terms have the following meanings:

"Central Service Expenses" means costs and expenses for Merchant's Central Services.

"Central Services" means those Merchant central administrative services necessary for the conduct and support of the Sale, including, but not limited to, use or and access to Merchant's: (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities, (v) MIS and POS services, (vi) cash and inventory reconciliation, (vii) central administrative services and personnel to process and perform sales audit, banking, and other normal course administrative services customarily provided to or for the benefit of operating the Stores and Distribution Centers and including data processing and reporting, email preparation and distribution, information technology and e-commerce platform updates, functionality, and maintenance, (viii) such other central office services reasonably necessary (in the reasonable judgment of the Agent) for the Sale, and (vii) to use reasonably sized offices located at Merchant's central office facility to effect the Sale.

"Distribution Center Expenses" means the actual costs and expenses, including use and Occupancy Expenses and Distribution Center employee payroll and other obligations, of the operations of the Distribution Centers, and the actual costs and expenses (including outbound freight) related to the processing, transfer, and consolidation of Merchandise and supplies in the Distribution Centers and from the Distribution Centers to the Stores.

"Occupancy Expenses" means rent, percentage rent, common-area maintenance, landlord promotional fees, real estate and use taxes, merchant association dues and charges, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, routine repairs and maintenance, taxes and licenses, costs of all local, long-distance, and international telephone, satellite broadband connections, T-1 lines, broadband internet, and other telecommunications services, trash removal (to the extent excluded as a fixed charge component of lease obligation), snow removal, and ordinary course third-party cleanings, and pest control services.



April 22, 2023

<u>**VIA EMAIL**</u>

Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc.
650 Liberty Ave.
Union, NJ 07083
Email: derek.dervish@bedbath.com

     Re:    **Third Amendment to Letter Agreements**

Derek:

     Reference is made to (i) that certain letter agreement dated September 11, 2020 by and between Hilco Merchant Resources, LLC ("<u>Agent</u>" or a "<u>Party</u>") and Bed Bath & Beyond Inc. ("<u>BB&B</u>" or a "<u>Party</u>") (as amended, modified, supplemented or restated and in effect from time to time, the "<u>BB&B Agreement</u>") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("<u>BBB</u>" or a "<u>Party</u>"; together with BB&B, the "<u>Merchant</u>"; collectively with BB&B and Agent, the "<u>Parties</u>") (as amended, modified, supplemented or restated and in effect from time to time, the "<u>BBB Agreement</u>"; the BB&B Agreement and BBB Agreement are collectively referred to herein as the "<u>Agreements</u>"). Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective BB&B Agreement or the BBB Agreement, as the context makes applicable.

     The Agreements provide for, among other things, the procedures in which the Sales will be executed, and details related thereto. Accordingly, Merchant and Agent mutually desire to amend the Agreements to, <u>inter alia</u>, (i) provide that this letter amendment (the "<u>Third Amendment</u>") shall constitute a "Work Order" under the Agreements, (ii) expand the scope of Stores covered by the Agreements by adding additional Stores thereunder as set forth herein and in the Exhibits annexed hereto and incorporated herein, and (iii) modify certain other terms and provisions of the Agreements, in each case on the terms and subject to the conditions set forth herein.

     NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Second Amendment, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agree that the Agreements shall be amended as set forth herein.

     1.    <u>Effect of Prior Amendments</u>.  For the avoidance of doubt, the Agreements, as amended by the (i) Amendment to Letter Agreement dated August 26, 2022 (the "<u>First Amendment</u>"), (ii) Amendment to Letter Agreement dated February 12, 2023 (the "<u>Second Amendment</u>"), and (iii) all prior Work Orders shall continue to govern the Sale at any Stores where such Sale commenced prior to the date of this Third Amendment. With respect to this Third Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in <u>Section H</u> of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in <u>Section H</u> of the Agreements.

     2.    <u>Additional Closing Store Designations</u>.  Merchant hereby designates those Store locations identified in <u>Exhibit A</u> hereto and incorporated herein (hereinafter, collectively the "<u>Amendment 3 Stores</u>") as "Additional Stores" for closure through the conduct of the Sale in accordance with the terms of the Agreements, as amended hereby. For the avoidance of doubt, the Amendment 3 Stores shall be treated as "Stores" for all purposes under the Agreements. The "Sale Commencement Date" applicable to the

Amendment 3 Stores shall be April 26, 2023, and the "Sale Termination Date" shall be on or prior to July 31, 2023; provided, that the Parties may mutually agree in writing to extend or terminate the Sale at any Amendment 3 Store prior to the Sale Termination Date stated above.

3.    Amendment 3 Stores Expense Budget.  The Expense Budget applicable to the conduct of the Sale at the Amendment 3 Stores is annexed hereto as Exhibit B and is incorporated herein by reference. Merchant and Agent mutually agree that, no later than seven (7) days after the Sale Commencement Date applicable to the Amendment 3 Stores, Merchant shall fund an advance to the Agent in an amount equal to the sum of $4,000,000in respect of the Sale Expenses identified in Expense Budget annexed hereto as Exhibit B ("Sale Deposit").  All other accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled in accordance with Section E of the Agreements.  Any portion of the Sale Deposit not used to pay amounts contemplated by the Agreements shall be returned to Merchant (or its designee) within seven (7) business days following the final reconciliation.

4.    Permitted Sale Themes.  Anything in the Agreements to the contrary notwithstanding, but subject to entry of the Approval Order (defined below), Merchant hereby consents to Agent's marketing and advertising of the Sale in the Stores utilizing a "going-out-of-business" sale theme, which theme shall be in addition to such other sale themes set forth in the Agreements.

5.    Agent Fee.  Section E of each Agreement is hereby amended by deleting the table outlining the "Net Recovery Threshold" and "Agent Incentive Fee" with respect to Amendment 3 Stores and substituting the following in its place:

| Net Recovery Threshold | Agent Incentive Fee |
| --- | --- |
| 43.5%-43.99% | An additional 0.875% of Net Proceeds |
| 44.0%-44.49% | An additional 1.125% of Net Proceeds |
| 44.5%-44.99% | An additional 1.375% of Net Proceeds |
| 45.0%-45.49% | An additional 1.625% of Net Proceeds |
| 45.5% and above | An additional 1.875% of Net Proceeds |

The Agent Incentive Fee referenced above as earned in each case shall be in addition to the Base Fee and shall be calculated back to the first dollar received.  For purposes of the Agreements, as amended hereby, "Net Recovery" shall be determined based on the Expenses of the Sale identified in Exhibit C hereto and incorporated herein by reference.

5.    Bankruptcy Matters.  Section T of the Agreements is hereby amended by deleting the entirety thereof and substituting the following in its place:

"If Merchant commences one or more cases under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), not later than two (2) business days after such commencement Merchant shall file an expedited motion as part of its "first day" motions, and utilize its reasonable best efforts to ensure that such motion is approved by one or more interim and/or final order(s) (collectively, "Approval Order") that provides, among other things, as follows:  (i) approval of the transaction contemplated hereby, (ii) authorizing Merchant's conduct of the Sale at the Stores, including, without limitation, the Amendment 3 Stores, pursuant to Section 363 of the Bankruptcy Code, (iii) determining that the Sale may be conducted in the Stores without the necessity of complying with (x) state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale, and (y) notwithstanding restrictions in leases, reciprocal easement

2

agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consent, (iv) approving (x) Merchant's assumption of the Agreements under Sections 363 and 365 of the Bankruptcy Code, and (y) Agent's engagement as Merchant's consultant to provide the Services set forth in the Agreements in furtherance of Merchant's conduct of the Sale at the Stores, (v) authorizing and approving Merchant's payment of all fees and reimbursement of expenses to Agent in accordance with the terms of the Agreements, with any such payments being (x) free and clear of all liens, claims and encumbrances, and (y) without the necessity of any further court approval or compliance with any fee application or similar requirements under any applicable U.S. Trustee or similar guidelines, (vi) authorizing the sale of Additional Agent Goods in accordance with the terms and conditions of the Agreements, and (vii) authorizing the Merchant and Agent to take all further actions as are necessary or appropriate to carry out the terms and conditions of the Agreements. In such event, any legal action, suit or proceeding arising in connection with the Agreements shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or *forum non conveniens*.  From and after entry of the Approval Order, Merchant shall conduct the Sale in accordance with the terms of the Approval Order in all material respects."

———————

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group, LLC ("Tiger"), Gordon Brothers Retail Partners, LLC ("GBRP"), and B. Riley Retail Solutions, LLC ("B. Riley"; and together with Tiger and GBRP the "Participants") on terms and conditions mutually agreed upon between the Agent and the Participants.  Per the Merchant's request, Agent and GBRP shall continue to co-lead all aspects of the transactions contemplated by the Agreements from and after the date hereof.

This Third Amendment, together the Agreements, the First Amendment, the Second Amendment, all prior amendments, Work Orders, or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Third Amendment except as specifically set forth in this Third Amendment or the Agreements.

*[Remainder of Page Intentionally Left Blank;*
*Signatures Appear Next Page]*

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to the opportunity to continue working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC,
As Agent (for itself and the Participants)

By:_____

Name:

Its:

*[Signatures Continued Next Page]*

DocuSign Envelope ID: 4G260173-D481-4G90-A1C6-66601986G46

**AGREED AND ACCEPTED as of the  22  day
of April, 2023:**

**MERCHANT:**

BED BATH & BEYOND, INC.

By: _____

      Name:  David Kastin
      Its:      Executive Vice President, Chief Legal Officer

BUY BUY BABY, INC.

By: _____

      Name:  David Kastin
      Its:      Secretary

HARMON STORES, INC.

By: _____

      Name:  David Kastin
      Its:      Secretary

**Bed Bath & Beyond.2023.Wave 5**
Exhibit A

| Store List |
|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 1 | BBBY | Springfield | 715 Morris Turnpike | Springfield | NJ | 07081 | 47,640 |
| 8 | BBBY | Canoga Park | 6530 Canoga Avenue | Canoga Park | CA | 91303 | 42,050 |
| 20 | BBBY | West Los Angeles | 11854 West Olympic Boulevard | Los Angeles | CA | 90064-1100 | 63,000 |
| 24 | BBBY | Santa Rosa | 2785 Santa Rosa Ave | Santa Rosa | CA | 95407 | 35,000 |
| 25 | BBBY | Studio City | 12555 Ventura Blvd | Studio City | CA | 91604 | 29,844 |
| 26 | BBBY | Oakland | 590 2Nd Street | Oakland | CA | 94607 | 18,793 |
| 27 | BBBY | Cherry Hill | 2130 Marlton Pike W, Suite D | Cherry Hill | NJ | 08002 | 38,012 |
| 29 | BBBY | Falls Church | 5810 Crossroads Center Way | Falls Church | VA | 22041 | 36,000 |
| 31 | BBBY | San Diego | 1750 Camino Del Rio North | San Diego | CA | 92108 | 77,925 |
| 32 | BBBY | Deerfield | 96 South Waukegan Road | Deerfield | IL | 60015 | 47,000 |
| 33 | BBBY | Rockville | 1519 Rockville Pike | Rockville | MD | 20852 | 50,204 |
| 37 | BBBY | Lake Grove | 2045 Smith Haven Plaza | Lake Grove | NY | 11755 | 64,776 |
| 40 | BBBY | Albany | 32 Wolf Road | Albany | NY | 12205 | 38,500 |
| 42 | BBBY | Manhattan | 620 6Th Avenue | New York | NY | 10011 | 92,025 |
| 45 | BBBY | Houston 45 | 17355 Tomball Parkway Suite 1J | Houston | TX | 77064 | 44,998 |
| 46 | BBBY | Dadeland | 8380 South Dixie Highway | Miami | FL | 33143 | 60,000 |
| 47 | BBBY | Tucson | 4811 E. Grant Road, Suite 131 | Tucson | AZ | 85712 | 36,518 |
| 49 | BBBY | Sterling Heights | 12020 Hall Road | Sterling Heights | MI | 48313 | 42,609 |
| 51 | BBBY | Webster | 19801 Gulf Freeway, Suite 1000 | Webster | TX | 77598 | 53,829 |
| 52 | BBBY | Columbia 52 | 9021 Snowden River Parkway | Columbia | MD | 21046 | 40,055 |
| 53 | BBBY | Downers Grove | 1548 Butterfield Road | Downers Grove | IL | 60515 | 73,572 |
| 54 | BBBY | Westlake | 30083 Detroit Road | Westlake | OH | 44145 | 29,963 |
| 55 | BBBY | West Palm Beach | 1875 Palm Beach Lakes Blvd A05 | West Palm Beach | FL | 33401 | 32,400 |
| 61 | BBBY | Plano | 801 West 15Th Street, Suite D | Plano | TX | 75075 | 43,988 |
| 63 | BBBY | Lincoln Park | 1800 N. Clybourn Ave., Suite A | Chicago | IL | 60614 | 32,972 |
| 66 | BBBY | Kennesaw | 840 Ernest Barrett Pkwy Ste170 | Kennesaw | GA | 30144 | 35,000 |
| 67 | BBBY | Addison | 13900 Dallas Parkway | Dallas | TX | 75240 | 54,337 |
| 68 | BBBY | Denver 68 | 370 S Colorado Blvd | Glendale | CO | 80246 | 44,997 |
| 82 | BBBY | Dallas | 8005 Park Lane | Dallas | TX | 75231 | 53,500 |
| 86 | BBBY | Tulsa | 10011 East 71St Street | Tulsa | OK | 74133 | 42,020 |
| 87 | BBBY | Overland Park | 12035 Metcalf | Overland Park | KS | 66213 | 50,028 |
| 88 | BBBY | Houston 88 | 10515 Katy Freeway,Suite A | Houston | TX | 77024 | 47,900 |
| 97 | BBBY | Austin 97 | 5400 Brodie Lane Suite 300 | Austin | TX | 78745 | 42,098 |
| 98 | BBBY | Birmingham | 1771 Montgomery Highway | Hoover | AL | 35244 | 38,297 |
| 99 | BBBY | Carrollwood | 13123 North Dale Mabry Highway | Tampa | FL | 33618 | 35,931 |
| 101 | BBBY | Rancho Cucamonga | 11530 4Th Street Suite 120 | Rancho Cucamonga | CA | 91730 | 26,000 |
| 103 | BBBY | Alpharetta | 6050 North Point Parkway | Alpharetta | GA | 30022 | 39,999 |
| 108 | BBBY | Rockford | 6309 East State Street | Rockford | IL | 61108 | 35,800 |
| 110 | BBBY | Charlottesville | 975A North Emmet Street | Charlottesville | VA | 22903 | 36,450 |
| 111 | BBBY | Albuquerque | 2451 San Mateo Blvd Ne Suite D | Albuquerque | NM | 87110 | 30,162 |
| 114 | BBBY | Virginia Beach | 220 Constitution Drive | Virginia Beach | VA | 23462 | 37,500 |
| 116 | BBBY | Humble | 20514 Highway 59 N. | Humble | TX | 77338 | 35,000 |
| 119 | BBBY | Canton | 6725 Strip Avenue Nw | North Canton | OH | 44720 | 40,000 |
| 121 | BBBY | Wolfchase | 2810 Germantown Parkway | Memphis | TN | 38133 | 40,000 |
| 124 | BBBY | Cary | 405 Cross Roads Boulevard | Cary | NC | 27518 | 43,000 |
| 126 | BBBY | Stafford | 12520 Fountain Lake Circle | Stafford | TX | 77477 | 36,000 |
| 127 | BBBY | Santa Clara | 5201 Stevens Creek Blvd. | Santa Clara | CA | 95051 | 40,000 |
| 128 | BBBY | Naples | 5351 N. Airport Road | Naples | FL | 34109 | 44,777 |
| 129 | BBBY | Arlington | 4000 Retail Connection Way, Suite 101 | Arlington | TX | 76018 | 30,000 |
| 132 | BBBY | Madison | 215 Junction Road | Madison | WI | 53717 | 35,345 |
| 133 | BBBY | Naperville | 336 S Rt 59 | Naperville | IL | 60540 | 32,744 |
| 134 | BBBY | Huebner Oaks | 11745 Ih 10 West Suite 750 | San Antonio | TX | 78230 | 35,009 |
| 135 | BBBY | Rego Park | 96-05 Queens Boulevard | Rego Park | NY | 11374 | 45,997 |
| 136 | BBBY | Portland | 16800 Southwest 72Nd Avenue | Tigard | OR | 97224 | 36,000 |
| 137 | BBBY | Denver West Village | 14383 West Colfax Avenue | Golden | CO | 80401 | 36,273 |
| 138 | BBBY | Thousand Oaks | 121 South Westlake Blvd | Thousand Oaks | CA | 91362 | 35,000 |
| 139 | BBBY | Oceanside | 2120 Vista Way | Oceanside | CA | 92054 | 38,008 |
| 147 | BBBY | Ballwin | 141 Highlands Boulevard Drive | Manchester | MO | 63011 | 35,000 |
| 148 | BBBY | Mountain Brook | 313 Summit Boulevard | Birmingham | AL | 35243 | 30,056 |
| 149 | BBBY | Braintree | 400 Grossman Drive | Braintree | MA | 02184 | 35,963 |
| 154 | BBBY | Southside | 8801-1 Southside Boulevard | Jacksonville | FL | 32256 | 35,000 |
| 155 | BBBY | Augusta | 221 Robert C. Daniel,Jr. Pkwy | Augusta | GA | 30909 | 37,500 |
| 156 | BBBY | Henrico | 10050 West Broad Street | Glen Allen | VA | 23060 | 40,000 |

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| | | Store List | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 157 | BBBY | Mid-Rivers | 281 Mid Rivers Mall Drive | St. Peters | MO | 63376 | 38,843 |
| 159 | BBBY | East Hanover | 180 Route 10 West | East Hanover | NJ | 07936 | 50,182 |
| 160 | BBBY | Woodbridge | 675 Us Highway 1S, Suite 5 | Iselin | NJ | 08830-3125 | 34,000 |
| 164 | BBBY | Oklahoma City | 2848 Nw 63Rd Street | Oklahoma City | OK | 73116 | 40,739 |
| 166 | BBBY | Roseville 166 | 30801 Gratoit Road | Roseville | MI | 48066 | 44,500 |
| 169 | BBBY | Waldorf | 3270 Crain Highway | Waldorf | MD | 20603 | 36,424 |
| 172 | BBBY | Newport News | 12132 A Jefferson Avenue | Newport News | VA | 23602 | 41,929 |
| 173 | BBBY | Dublin | 4882 Dublin Blvd | Dublin | CA | 94568 | 35,472 |
| 178 | BBBY | St. Petersburg | 2060 66Th Street North | St. Petersburg | FL | 33710 | 36,926 |
| 181 | BBBY | Williston | 115 Trader Lane | Williston | VT | 05495 | 40,000 |
| 183 | BBBY | Pasadena | 3341 East Foothill Blvd | Pasadena | CA | 91107 | 40,000 |
| 188 | BBBY | Frederick | 5413 Urbana Pike | Frederick | MD | 21704 | 38,700 |
| 189 | BBBY | Chandler | 850 N. 54Th Street | Chandler | AZ | 85226 | 32,713 |
| 192 | BBBY | Midlothian | 11609 Midlothian Turnpike | Midlothian | VA | 23113 | 40,000 |
| 194 | BBBY | Ft. Collins | 110 W. Troutman Parkway | Ft. Collins | CO | 80525 | 50,695 |
| 196 | BBBY | Towson | 1238 Putty Hill Avenue Suite 1 | Towson | MD | 21286 | 36,990 |
| 197 | BBBY | Aventura | 19205 Biscayne Blvd | Aventura | FL | 33180 | 45,000 |
| 199 | BBBY | Columbia 199 | 136 Harbison Blvd | Columbia | SC | 29212 | 40,800 |
| 200 | BBBY | N. Colorado Springs | 1790 East Woodmen Road | Colorado Springs | CO | 80920 | 38,000 |
| 202 | BBBY | Grand Rapids | 4901 28Th Street, Se | Grand Rapids | MI | 49512 | 40,000 |
| 204 | BBBY | Solon | 6025 Kruse Drive Suite 123 | Solon | OH | 44139 | 40,000 |
| 207 | BBBY | Deptford | 1755 Deptford Center Road | Deptford | NJ | 08096 | 38,094 |
| 208 | BBBY | Reno | 4983 S Virginia Street | Reno | NV | 89502 | 35,185 |
| 211 | BBBY | Lincoln | 2960 Pine Lake Road Suite A | Lincoln | NE | 68516 | 35,000 |
| 213 | BBBY | Jensen Beach | 2450 Nw Federal Highway | Stuart | FL | 34994 | 34,900 |
| 214 | BBBY | Clearwater | 23676 Us Hwy 19 North | Clearwater | FL | 33765 | 33,330 |
| 215 | BBBY | Mishawaka | 5802 Grape Rd, Suite B | Mishawaka | IN | 46545 | 38,042 |
| 224 | BBBY | Brick | 51 Chambersbridge Road | Brick | NJ | 08723 | 35,000 |
| 225 | BBBY | Fresno | 7497 N. Blackstone Avenue | Fresno | CA | 93720 | 36,725 |
| 227 | BBBY | Jenkintown | 905 Old York Road | Jenkintown | PA | 19046 | 44,280 |
| 228 | BBBY | Little Rock | 12309 Chenal Parkway Suite A | Little Rock | AR | 72211 | 37,813 |
| 233 | BBBY | Arrowhead | 7340 West Bell Road | Glendale | AZ | 85308 | 38,000 |
| 235 | BBBY | Sarasota | 6567 S. Tamiami Trail | Sarasota | FL | 34231 | 40,000 |
| 236 | BBBY | Daytona Beach | 2500 W. Interntl Speedway Blvd | Daytona Beach | FL | 32114 | 34,945 |
| 237 | BBBY | Mt. Pleasant | 1744 Towne Centre Way | Mt. Pleasant | SC | 29464 | 34,560 |
| 245 | BBBY | Gainesville | 6855 Newberry Road | Gainesville | FL | 32605 | 30,500 |
| 248 | BBBY | Baton Rouge | 10505 South Mall Drive | Baton Rouge | LA | 70809 | 35,017 |
| 250 | BBBY | Lynnwood | 3115 196Th Street, Sw | Lynnwood | WA | 98036 | 30,000 |
| 251 | BBBY | Allentown | 1223 Whitehall Mall | Whitehall | PA | 18052 | 43,971 |
| 254 | BBBY | Modesto | 3900 Sisk Road | Modesto | CA | 95356 | 29,926 |
| 255 | BBBY | Mill Creek | 1705 Mall Of Georgia Blvd, Suite 4 | Buford | GA | 30519 | 33,889 |
| 260 | BBBY | Westbury | 950 Merchants Concourse | Westbury | NY | 11590 | 54,239 |
| 261 | BBBY | Pleasant Hill | 15 Crescent Drive | Pleasant Hill | CA | 94523 | 35,877 |
| 266 | BBBY | Eatontown | 92 Route 36 | Eatontown | NJ | 07724 | 35,750 |
| 268 | BBBY | Asheville | 83G South Tunnel Road | Asheville | NC | 28805 | 38,772 |
| 271 | BBBY | Harrisburg | 5125 Jonestown Road Suite 425 | Harrisburg | PA | 17112 | 30,054 |
| 272 | BBBY | Katy Mills | 24600 Katy Fwy Suite 100 | Katy | TX | 77494 | 38,000 |
| 273 | BBBY | Palm Beach Gardens | 2410 Pga Boulevard | Palm Beach Gardens | FL | 33410 | 37,525 |
| 275 | BBBY | Mission Viejo | 25732 El Paseo | Mission Viejo | CA | 92691 | 35,000 |
| 278 | BBBY | Fayetteville | 3816 North Mall Avenue | Fayetteville | AR | 72703 | 30,000 |
| 279 | BBBY | Sw Denver 279 | 7421 West Bowles Avenue Ste 1 | Littleton | CO | 80123-3096 | 35,000 |
| 285 | BBBY | Fort Myers | 13499 S Cleveland Ave Suite200 | Fort Myers | FL | 33907 | 30,587 |
| 289 | BBBY | Middletown | 1115 Route 35 | Middletown | NJ | 07748 | 35,843 |
| 292 | BBBY | Orem | 50 West 1300 South | Orem | UT | 84058 | 37,102 |
| 293 | BBBY | Louisville | 996 Breckinridge Lane | Louisville | KY | 40207 | 34,953 |
| 294 | BBBY | Sugarhouse | 1169 Wilmington Avenue | Salt Lake City | UT | 84106 | 18,395 |
| 295 | BBBY | Beverly Hills | 31535 Southfield Road | Beverly Hills | MI | 48025 | 41,093 |
| 298 | BBBY | Hilton Head | 1460 Fording Island Road St100 | Bluffton | SC | 29910 | 24,710 |
| 301 | BBBY | Rookwood | 2719 Edmondson Road | Cincinnati | OH | 45209 | 33,375 |
| 305 | BBBY | Round Rock | 2701-A Parker Road Suite 400 | Round Rock | TX | 78681 | 30,500 |
| 307 | BBBY | Roseville 307 | 1120 Galleria Blvd Suite 140 | Roseville | CA | 95678 | 49,132 |
| 309 | BBBY | Charlotte | 9559 South Boulevard | Charlotte | NC | 28273 | 37,000 |
| 311 | BBBY | Simsbury | 532 Bushy Hill Road | Simsbury | CT | 06070 | 30,321 |

**Bed Bath & Beyond.2023.Wave 5**

**Exhibit A**

| Store List |
|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 313 | BBBY | Athens | 1791 Oconee Connector Suite350 | Athens | GA | 30606 | 24,000 |
| 315 | BBBY | Daly City | 303 Gellert Boulevard | Daly City | CA | 94015 | 33,030 |
| 317 | BBBY | Winston-Salem | 1020 Hanes Mall Blvd. | Winston Salem | NC | 27103 | 37,153 |
| 318 | BBBY | Midland | 3001-A101 West Loop 250 North | Midland | TX | 79705 | 27,426 |
| 319 | BBBY | Eugene | 95 Oakway Center | Eugene | OR | 97401 | 30,013 |
| 321 | BBBY | Lafayette | 3617 Ambassador Caffery | Lafayette | LA | 70503 | 42,749 |
| 326 | BBBY | Wichita | 2750 N Greenwich Ct | Wichita | KS | 67226 | 37,922 |
| 327 | BBBY | Johnson City | 3211 People Street Suite 25 | Johnson City | TN | 37604 | 24,925 |
| 328 | BBBY | Fargo | 4340 13Th Avenue Sw | Fargo | ND | 58103 | 30,000 |
| 330 | BBBY | Fort Worth | 4931 Overton Ridge Boulevard | Ft. Worth | TX | 76132 | 35,177 |
| 333 | BBBY | Meridian | 1350 North Eagle Road | Meridian | ID | 83642 | 38,146 |
| 336 | BBBY | Newtown | 20 West Road | Newtown | PA | 18940 | 30,000 |
| 337 | BBBY | The Waterfront | 490 Waterfront Drive East | Homestead | PA | 15120 | 38,000 |
| 338 | BBBY | Broadmoor | 2180 Southgate Road | Colorado Springs | CO | 30529 | 30,529 |
| 339 | BBBY | Cool Springs | 545 Cool Springs Boulevard | Franklin | TN | 37067 | 40,000 |
| 341 | BBBY | Southlake | 2930 East Southlake Blvd. | Southlake | TX | 76092 | 30,000 |
| 349 | BBBY | Greenville | 1117 Woodruff Road Suite D | Greenville | SC | 29607 | 35,000 |
| 350 | BBBY | Danvers | 180 Endicott Street | Danvers | MA | 01923 | 36,192 |
| 352 | BBBY | Amarillo | 3000 Soncy Road | Amarillo | TX | 79124 | 30,000 |
| 358 | BBBY | Youngstown | 550 Boardman Poland Road | Youngstown | OH | 44512 | 30,000 |
| 359 | BBBY | Davie | 1801 S University Drive | Davie | FL | 33324 | 28,170 |
| 362 | BBBY | Spokane | 5628 N Division Street | Spokane | WA | 99207 | 36,692 |
| 363 | BBBY | Greenwood | 723 Us 31 North Suite A | Greenwood | IN | 46142 | 33,208 |
| 364 | BBBY | Taylor | 23871 Eureka Road | Taylor | MI | 48180 | 30,350 |
| 365 | BBBY | Bangor | 490 Stillwater Avenue | Bangor | ME | 04401 | 27,905 |
| 368 | BBBY | Novi | 43610 West Oaks Drive | Novi | MI | 48377 | 33,220 |
| 370 | BBBY | Saw Mill | 3708 W Dublin Grandville Road | Columbus | OH | 43235 | 40,075 |
| 371 | BBBY | Tukwila | 400 Strander Blvd | Tukwila | WA | 98188 | 45,633 |
| 372 | BBBY | Warwick | 1500 Bald Hill Road Suite B | Warwick | RI | 02886 | 41,878 |
| 375 | BBBY | Evansville | 280 North Green River Road | Evansville | IN | 47715 | 31,675 |
| 377 | BBBY | Wilkes Barre | 435 Arena Hub Plaza | Wilkes-Barre | PA | 18702 | 30,057 |
| 378 | BBBY | Rochester Hills | 1242 South Rochester Road | Rochester Hills | MI | 48307 | 38,243 |
| 380 | BBBY | Salem | 265 South Broadway, Suite 4 | Salem | NH | 03079 | 25,918 |
| 384 | BBBY | Hollywood | 1557 Vine Street | Hollywood | CA | 90028 | 30,054 |
| 385 | BBBY | East Boca | 1400C Glades Road | Boca Raton | FL | 33431 | 23,232 |
| 388 | BBBY | Tallahassee | 1574 Governors Square Blvd. | Tallahassee | FL | 32301 | 35,000 |
| 393 | BBBY | Dulles | 45575 Dulles Eastern Plaza Ste 154 | Dulles | VA | 20166 | 35,000 |
| 394 | BBBY | Yonkers | 2141 Central Park Avenue | Yonkers | NY | 10710 | 40,000 |
| 400 | BBBY | Destin | 4441 Commons Drive East | Destin | FL | 32541 | 34,273 |
| 402 | BBBY | Greendale | 5445 South 76Th Street | Greendale | WI | 53129 | 33,014 |
| 404 | BBBY | Frisco | 2930 Preston Road Suite 400 | Frisco | TX | 75034 | 35,000 |
| 405 | BBBY | Huntsville | 6888 Governors West | Huntsville | AL | 35806 | 30,000 |
| 407 | BBBY | Bakersfield | 5000 Stockdale Highway | Bakersfield | CA | 93309 | 30,500 |
| 412 | BBBY | Seal Beach | 12390 Seal Beach Blvd | Seal Beach | CA | 90740 | 27,060 |
| 414 | BBBY | Apple Valley | 14910 Florence Trail | Apple Valley | MN | 55124 | 30,339 |
| 417 | BBBY | Puyallup | 4102 D South Meridian Street | Puyallup | WA | 98373 | 32,920 |
| 418 | BBBY | Wilmington | 352 South College Rd Unit 10B | Wilmington | NC | 28403 | 30,405 |
| 422 | BBBY | Henderson | 621 Marks Street | Henderson | NV | 89014 | 29,990 |
| 424 | BBBY | Port Charlotte | 18700 Veterans Blvd Unit 14 | Port Charlotte | FL | 33954 | 24,971 |
| 426 | BBBY | Onslow | 1305 Western Blvd | Jacksonville | NC | 28546 | 23,000 |
| 428 | BBBY | Clive | 11101 University Ave Suite A | Clive | IA | 50325 | 35,035 |
| 430 | BBBY | Northwoods | 1730 N Loop 1604 E Suite 107 | San Antonio | TX | 78232 | 30,256 |
| 431 | BBBY | Tanasbourne | 18043 Nw Evergreen Parkway | Hillsboro | OR | 97006 | 34,487 |
| 432 | BBBY | Exton | 108 Bartlett Avenue | Exton | PA | 19341 | 34,571 |
| 433 | BBBY | South Portland | 200 Running Hill Road Suite 4 | South Portland | ME | 04106 | 30,448 |
| 435 | BBBY | Matthews | 10530 Northeast Parkway | Matthews | NC | 28105 | 25,000 |
| 436 | BBBY | Aurora | 5560 South Parker Road | Aurora | CO | 80015 | 34,980 |
| 437 | BBBY | Anderson Station | 146 Station Drive | Anderson | SC | 29621 | 22,398 |
| 439 | BBBY | Crofton | 2382 Brandermill Blvd Suite102 | Gambrills | MD | 21054 | 28,000 |
| 442 | BBBY | Kirby | 3102 Kirby Drive | Houston | TX | 77098 | 31,000 |
| 449 | BBBY | Warrington | 1015 Main Street | Warrington | PA | 18976 | 33,808 |
| 450 | BBBY | Auburn | 366 Southbridge Street | Auburn | MA | 01501 | 22,325 |
| 454 | BBBY | Fort Lauderdale | 2701 N Federal Highway | Fort Lauderdale | FL | 33306 | 34,500 |

**Bed Bath & Beyond.2023.Wave 5**

**Exhibit A**

| Store List |
| --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 456 | BBBY | Maple Grove | 7950 Wedgewood Lane N | Maple Grove | MN | 55369 | 29,706 |
| 462 | BBBY | Centerville | 6142 Wilmington Pike | Dayton | OH | 45459 | 28,105 |
| 470 | BBBY | Columbus Park | 5555 Whittlesey Blvd Ste 1400 | Columbus | GA | 31909 | 25,000 |
| 475 | BBBY | Torrance | 2595 Pacific Coast Highway | Torrance | CA | 90505 | 39,061 |
| 476 | BBBY | West Nashville | 7657 Highway 70 South Suite112 | Nashville | TN | 37221 | 20,060 |
| 477 | BBBY | Route 46 | 545 Route 46 | Totowa | NJ | 07512 | 59,847 |
| 482 | BBBY | Woodbury | 8250 Tamarack Village | Woodbury | MN | 55125 | 29,530 |
| 485 | BBBY | Best In The West | 2100 N Rainbow Blvd Suite 110 | Las Vegas | NV | 89108 | 28,337 |
| 486 | BBBY | Skokie | 5545 W Touhy Avenue | Skokie | IL | 60077 | 36,500 |
| 487 | BBBY | Hyannis | 65 Independence Drive | Hyannis | MA | 02601 | 36,570 |
| 490 | BBBY | Primrose | 3308 S Glenstone Avenue | Springfield | MO | 65804 | 30,050 |
| 492 | BBBY | Metairie | 4410 Veterans Memorial Blvd | Metairie | LA | 70006 | 52,053 |
| 497 | BBBY | Mc Donough | 1898 Jonesboro Road | Mcdonough | GA | 30253 | 19,978 |
| 502 | BBBY | Corpus Christi | 4717 S Padre Island Dr Suite F | Corpus Christi | TX | 78411 | 26,300 |
| 503 | BBBY | Summerlin Center | 2315 Summa Drive #180 | Las Vegas | NV | 89135 | 32,064 |
| 504 | BBBY | Woodlands | 1560 Lake Woodlands Drive | The Woodlands | TX | 77380 | 34,929 |
| 507 | BBBY | Sands | 3640 Long Beach Road | Oceanside | NY | 11572 | 37,236 |
| 514 | BBBY | Mesquite | 2705 N Mesquite Drive | Mesquite | TX | 75150 | 25,378 |
| 518 | BBBY | Vero Beach | 6150 20Th Street | Vero Beach | FL | 32966 | 21,843 |
| 523 | BBBY | Ocala | 2701 Sw College Road Suite 400 | Ocala | FL | 34474 | 20,000 |
| 524 | BBBY | Santa Fe | 4250 Cerrillos Road Suite 1214 | Santa Fe | NM | 87507 | 25,000 |
| 525 | BBBY | Pensacola | 5450 N 9Th Avenue | Pensacola | FL | 32504 | 28,585 |
| 529 | BBBY | Savannah | 7400 Abercorn Street Suite 201 | Savannah | GA | 31406 | 35,005 |
| 535 | BBBY | Mc Allen | 620 E Expressway 83 | Mc Allen | TX | 78503 | 31,647 |
| 538 | BBBY | Riverside | 3700 Tyler Street Suite 14 | Riverside | CA | 92503 | 30,248 |
| 539 | BBBY | Redwood City | 1950 El Camino Real | Redwood City | CA | 94063 | 25,000 |
| 540 | BBBY | Capitola | 3555 Clares Street Suite J | Capitola | CA | 95010 | 24,380 |
| 542 | BBBY | Nashua | 261 Daniel Webster Hwy Unit 1 | Nashua | NH | 03060 | 37,857 |
| 544 | BBBY | Edmond | 412 S Bryant Avenue | Edmond | OK | 73034 | 22,000 |
| 550 | BBBY | Newport | 288 East Main Road | Middletown | RI | 02842 | 25,373 |
| 551 | BBBY | Bradenton | 825 Cortez Road West | Bradenton | FL | 34207 | 25,395 |
| 556 | BBBY | St. Augustine | 320 Cbl Drive | St Augustine | FL | 32086 | 20,000 |
| 557 | BBBY | Denton | 2315 Colorado Blvd Suite 180 | Denton | TX | 76205 | 30,281 |
| 558 | BBBY | Chattanooga | 2040 Hamilton Place Blvd | Chattanooga | TN | 37421 | 28,000 |
| 559 | BBBY | Coeur D Alene | 440 W Wilbur Avenue | Coeur D Alene | ID | 83815 | 20,215 |
| 560 | BBBY | Morganton Road | 5075 Morganton Road Suite 9C | Fayetteville | NC | 28314 | 29,427 |
| 562 | BBBY | Eureka | 3300 Broadway Space #340 | Eureka | CA | 95501 | 25,759 |
| 564 | BBBY | Westfield | 1950 6 Greyhound Pass | Carmel | IN | 46033 | 24,350 |
| 569 | BBBY | Country Club Plaza | 2725 Marconi Ave | Sacramento | CA | 95821 | 24,000 |
| 571 | BBBY | Lakeline | 11066 Pecan Park Blvd Bldg 1 | Cedar Park | TX | 78613 | 34,361 |
| 573 | BBBY | Scottsdale | 7000 E Mayo Blvd Building 12 | Phoenix | AZ | 85054 | 35,000 |
| 577 | BBBY | San Patricio | 100 Ave San Patricio | Guaynabo | PR | 00966 | 40,500 |
| 579 | BBBY | Miami International | 10640 Nw 19Th Street | Miami | FL | 33172 | 28,053 |
| 585 | BBBY | College Station | 1430 Texas Avenue South | College Station | TX | 77840 | 24,722 |
| 589 | BBBY | Gulfport | 3951 Promenade Parkway | Diberville | MS | 39540 | 23,437 |
| 591 | BBBY | Avondale | 10060 W Mc Dowell Road | Avondale | AZ | 85323 | 25,063 |
| 592 | BBBY | West Ashley | 946 Orleans Road Suite E1 | Charleston | SC | 29407 | 23,683 |
| 605 | BBBY | Parker | 11435 Twenty Mile Road | Parker | CO | 80134 | 23,000 |
| 606 | BBBY | Surprise | 13723 W Bell Road | Surprise | AZ | 85374 | 25,000 |
| 611 | BBBY | Murfreesboro | 2615 Medical Cntr Prkwy St1200 | Murfreesboro | TN | 37129 | 25,625 |
| 615 | BBBY | Abilene | 3417 Catclaw Drive | Abilene | TX | 79606 | 18,043 |
| 623 | BBBY | Frankfort | 11165 W Lincoln Highway | Frankfort | IL | 60423 | 25,000 |
| 626 | BBBY | Idaho Falls | 3011 S 25Th East | Idaho Falls | ID | 83406 | 20,062 |
| 632 | BBBY | Lubbock | 2624 W Loop 289 | Lubbock | TX | 79407 | 29,954 |
| 756 | BBBY | Bedford | 5 Colby Court Unit 3 | Bedford | NH | 03110 | 35,753 |
| 762 | BBBY | Traverse City | 3301 N Us 31 South | Traverse City | MI | 49684 | 25,000 |
| 765 | BBBY | Fredericksburg | 3700 Plank Road | Fredericksburg | VA | 22407 | 28,977 |
| 766 | BBBY | Oracle | 6310 N Oracle Road | Tucson | AZ | 85704 | 31,638 |
| 768 | BBBY | North Cincinnati | 5800 Deerfield Road | Mason | OH | 45040 | 30,000 |
| 769 | BBBY | Waco | 4633 S Jack Kultgen Exwy St102 | Waco | TX | 76706 | 25,187 |
| 771 | BBBY | West Omaha | 255 N 170Th Street | Omaha | NE | 68118 | 30,000 |
| 772 | BBBY | Myrtle Beach | 2400 Coastal Grand Circle | Myrtle Beach | SC | 29577 | 25,121 |
| 774 | BBBY | Patterson Place | 3616 Witherspoon Blvd. Suite 103 | Durham | NC | 27707 | 33,839 |

**Bed Bath & Beyond.2023.Wave 5**
Exhibit A

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 775 | BBBY | Bethlehem | 4449 Southmont Way | Easton | PA | 18045 | 28,159 |
| 776 | BBBY | Redlands | 27450 Lugonia Avenue | Redlands | CA | 92374 | 28,445 |
| 777 | BBBY | St. George | 844 W Telegraph Street | Washington City | UT | 84780 | 22,054 |
| 780 | BBBY | Potomac Mills | 14101 Crossing Place | Woodbridge | VA | 22192 | 35,000 |
| 783 | BBBY | Riverdale | 4113 Riverdale Road | Ogden | UT | 84405 | 23,046 |
| 800 | BBBY | Sir Barton Way | 2321 Sir Barton Way, Suite 120 | Lexington | KY | 40509 | 35,000 |
| 808 | BBBY | Kissimmee | 3212 North John Young Parkway | Kissimmee | FL | 34741 | 24,897 |
| 810 | BBBY | Somerville | 119 Middlesex Avenue | Somerville | MA | 02145 | 38,012 |
| 812 | BBBY | Bend | 63455 N. Highway 97, Suite 113 | Bend | OR | 97703 | 22,859 |
| 820 | BBBY | Goleta | 189 North Fairview Ave | Goleta | CA | 93117 | 23,922 |
| 821 | BBBY | Ventura | 4040 East Main Street | Ventura | CA | 93003 | 27,718 |
| 825 | BBBY | Mc Kinney | 2975 Craig Drive | Mckinney | TX | 75072 | 28,016 |
| 832 | BBBY | Raleigh Triangle | 3604 Sumner Blvd, Suite 104 | Raleigh | NC | 27616 | 32,000 |
| 833 | BBBY | Viera | 2291 Town Center Ave, Suite 101 | Melbourne | FL | 32940 | 24,329 |
| 837 | BBBY | Brookfield | 14 Candlewood Lake Road | Brookfield | CT | 06804 | 37,640 |
| 838 | BBBY | Highlands Ranch | 9315 Dorchester Street, Suite 100 | Highlands Ranch | CO | 80129 | 23,000 |
| 839 | BBBY | Green Bay | 825 Pilgrim Way Suite B | Green Bay | WI | 54304 | 24,296 |
| 841 | BBBY | Concord | 10 Loudon Road | Concord | NH | 03301 | 23,325 |
| 1002 | BBBY | San Antonio | 6001 Nw Loop 410 Suite #120 | San Antonio | TX | 78238 | 28,000 |
| 1011 | BBBY | Aberdeen | 200 Aberdeen Commons, 11088 Us 15-501 Highw | Aberdeen | NC | 28315 | 22,975 |
| 1014 | BBBY | Moreland Avenue | 1235 Caroline Street Ne | Atlanta | GA | 30307 | 23,606 |
| 1021 | BBBY | Omaha | 1220 South 71St Street | Omaha | NE | 68106 | 32,000 |
| 1024 | BBBY | Rockwall | 963 East Interstate Highway 30 | Rockwall | TX | 75087 | 23,000 |
| 1028 | BBBY | Lakeland | 1500 Town Center Drive | Lakeland | FL | 33803 | 30,000 |
| 1030 | BBBY | La Quinta | 79-110 Hwy 111 | La Quinta | CA | 92253 | 30,000 |
| 1033 | BBBY | Gilbert | 2793 S Market St, Suite 101 | Gilbert | AZ | 85296 | 31,957 |
| 1035 | BBBY | Turkey Creek | 11263 Parkside Drive, Suite 612 | Knoxville | TN | 37934 | 25,000 |
| 1044 | BBBY | Plymouth | 200 Colony Place | Plymouth | MA | 02360 | 25,072 |
| 1053 | BBBY | Crestview Hills | 2757 Town Center Blvd | Crestview Hills | KY | 41017 | 26,989 |
| 1056 | BBBY | Hamburg | 3701 Mckinley Parkway | Blasdell | NY | 14219 | 25,000 |
| 1059 | BBBY | Clarence | 4401 Transit Road | Williamsville | NY | 14221 | 30,000 |
| 1069 | BBBY | Cypress | 25839 Us Highway 290 | Cypress | TX | 77429 | 30,000 |
| 1073 | BBBY | Kalispell | 2411 Highway 93 North | Kalispell | MT | 59901 | 23,000 |
| 1077 | BBBY | Camelback | 1919 East Camelback Road, Suite #128 | Phoenix | AZ | 85016 | 22,660 |
| 1082 | BBBY | Franklin Park | 5135 Monroe Street | Toldeo | OH | 43623 | 32,154 |
| 1091 | BBBY | Rio Grande | 3201 Rt 9 South, Unit B | Rio Grande | NJ | 08242 | 22,600 |
| 1094 | BBBY | Akers Mills | 2955 Cobb Parkway, Suite 110 | Atlanta | GA | 30339 | 29,000 |
| 1096 | BBBY | Clifton | 404 State Route 3 | Clifton | NJ | 07014 | 24,080 |
| 1097 | BBBY | Murrieta | 24450 Village Walk Place | Murrieta | CA | 92562 | 33,000 |
| 1107 | BBBY | San Marcos | 1050 Mckinley Place Dr, Bldg 2, Suite 220 | San Marcos | TX | 78666 | 23,000 |
| 1108 | BBBY | Longmont | 205 Ken Pratt Blvd., Suite 240 | Longmont | CO | 80501 | 28,028 |
| 1110 | BBBY | Miracle Market Place | 3301 Coral Way | Miami | FL | 33145 | 30,250 |
| 1112 | BBBY | Rutland | 322 Route 7 South | Rutland | VT | 05701 | 24,000 |
| 1115 | BBBY | Bozeman | 2155 West Cattail St | Bozeman | MT | 59718 | 19,711 |
| 1117 | BBBY | Conroe | 2920 Interstate 45 N. | Conroe | TX | 77303 | 24,686 |
| 1119 | BBBY | Peachtree City | 1245 North Peachtree Parkway | Peachtree City | GA | 30269 | 23,401 |
| 1125 | BBBY | North Naples | 13585 Tamiami Trail N. Unit #6 | Naples | FL | 34110 | 25,002 |
| 1126 | BBBY | North Greensboro | 1618 Highwoods Blvd | Greensboro | NC | 27410 | 30,000 |
| 1127 | BBBY | Keizer | 6180 Ulali Drive | Keizer | OR | 97303 | 28,048 |
| 1129 | BBBY | Olympia | 2405 4Th Avenue West | Olympia | WA | 98502 | 28,000 |
| 1130 | BBBY | East Vancouver | 16701 South East Mill Plain Blvd | Vancouver | WA | 98684 | 28,000 |
| 1133 | BBBY | Cottonwood Commons | 3601 Old Airport Road, Suite A | Albuquerque | NM | 87114 | 28,000 |
| 1138 | BBBY | Jacksonville Beach | 4054 South 3Rd Street | Jacksonville Beach | FL | 32250 | 29,000 |
| 1142 | BBBY | Rogers | 2203 Promenade Boulevard, Suite 20210 | Rogers | AR | 72758 | 30,000 |
| 1143 | BBBY | East Colonial | 3228 East Colonial Drive | Orlando | FL | 32803 | 27,761 |
| 1149 | BBBY | Sioux Falls | 3800 South Louise Ave, Suite 2 | Sioux Falls | SD | 57106 | 40,843 |
| 1150 | BBBY | Augusta | 42 Whitten Road, Suite 1 | Augusta | ME | 04330 | 25,846 |
| 1154 | BBBY | Petoskey | 910 Spring Street | Petoskey | MI | 49770 | 21,000 |
| 1157 | BBBY | Missoula | 3017 Paxson Street | Missoula | MT | 59801 | 21,641 |
| 1161 | BBBY | Mueller | 1201 Barbara Jordan Blvd, Suite 200 | Austin | TX | 78723 | 25,000 |
| 1162 | BBBY | 202 & Dobson | 837 North Dobson Road | Mesa | AZ | 85201 | 30,000 |
| 1175 | BBBY | Anchorage | 601 E Dimond Blvd | Anchorage | AK | 99518 | 29,486 |
| 1177 | BBBY | Dc Usa | 3100 14Th Street Nw | Washington | DC | 20010 | 33,940 |

**Bed Bath & Beyond.2023.Wave 5**

**Exhibit A**

| Store List |
| --- |

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1179 | BBBY | Mooresville | 627 River Highway | Mooresville | NC | 28117 | 28,000 |
| 1190 | BBBY | Gulf Shores | 3800 Gulf Shores Parkway, Suite 300 | Gulf Shores | AL | 36542 | 25,000 |
| 1203 | BBBY | Willowbrook | 7175 Kingery Highway | Willowbrook | IL | 60527 | 28,000 |
| 1207 | BBBY | Northgate Mall | 401 Ne Northgate Way Suite 2100 | Seattle | WA | 98125 | 28,176 |
| 1209 | BBBY | Wesley Chapel | 5845 Wesley Grove Boulevard | Wesley Chapel | FL | 33544 | 30,000 |
| 1212 | BBBY | Euless | 2800 Highway 121 Suite 600 | Euless | TX | 76039 | 28,000 |
| 1227 | BBBY | Foxboro | 330 Patriot Place | Foxborough | MA | 02035 | 30,000 |
| 1234 | BBBY | Lady Lake | 546 N. Highway 441 | Lady Lake | FL | 32159 | 28,000 |
| 1237 | BBBY | Morehead City | 5160 Highway 70 Suite 600 | Morehead City | NC | 28557 | 20,400 |
| 1244 | BBBY | Portsmouth | 100 Durgin Lane | Portsmouth | NH | 03801 | 37,843 |
| 1258 | BBBY | Hingham | 9 Shipyard Drive | Hingham | MA | 02043 | 28,102 |
| 1259 | BBBY | Flowood | 760 Mackenzie Lane | Flowood | MS | 39232 | 25,000 |
| 1260 | BBBY | Sandy | 10433 South State Street | Sandy | UT | 84070 | 28,000 |
| 1265 | BBBY | Warner Robins | 3060 Watson Boulevard | Warner Robins | GA | 31093 | 20,000 |
| 1266 | BBBY | Bear Valley Road | 18815 Bear Valley Road | Apple Valley | CA | 92308 | 25,000 |
| 1268 | BBBY | University Town Center | 111 N Cattlemen Rd | Sarasota | FL | 34243 | 35,029 |
| 1291 | BBBY | West El Paso | 655 Sunland Park Drive, Suite I | El Paso | TX | 79912 | 25,002 |
| 1304 | BBBY | Cape Coral | 1827 Ne Pine Island Road | Cape Coral | FL | 33909 | 27,978 |
| 1305 | BBBY | Palm Springs | 5200 E. Ramon Road Building B | Palm Springs | CA | 92264 | 28,245 |
| 1307 | BBBY | Prescott | 3250 Gateway Blvd Ste. 508 | Prescott | AZ | 86303 | 30,078 |
| 1308 | BBBY | Schererville | 124 Us Highway 41 | Schererville | IN | 46375 | 34,163 |
| 1309 | BBBY | Hamilton | 160 Marketplace Boulevard | Hamilton | NJ | 08691 | 30,704 |
| 1310 | BBBY | Billings | 2821 King Ave West | Billings | MT | 59102 | 35,115 |
| 1312 | BBBY | Collierville | 4610 Merchants Park Circle Suite 501 | Collierville | TN | 38017 | 28,307 |
| 1313 | BBBY | Southaven | 6400 Towne Center Loop | Southaven | MS | 38671 | 25,080 |
| 1314 | BBBY | Riverhead | 1440 Old Country Road Suite 300 | Riverhead | NY | 11901 | 30,031 |
| 1317 | BBBY | The Forum | 8262 Agora Parkway | Selma | TX | 78154 | 34,000 |
| 1321 | BBBY | Durango | 800 South Camino Del Rio | Durango | CO | 81301 | 25,492 |
| 1326 | BBBY | Pearlridge | 145 Kaonohi St | Aiea | HI | 96701 | 45,901 |
| 1327 | BBBY | Stroudsburg | 143 Radio Drive | Stroudsburg | PA | 18360 | 25,192 |
| 1331 | BBBY | Lancaster | 2350 Lincoln Highway East Suite 100 | Lancaster | PA | 17602 | 42,923 |
| 1333 | BBBY | Rapid City | 1365 Eglin Street | Rapid City | SD | 57701 | 23,400 |
| 1336 | BBBY | Burlington | 1915 Marketplace Drive | Burlington | WA | 98233 | 27,203 |
| 1338 | BBBY | Winter Garden | 3215 Daniels Road | Winter Garden | FL | 34787 | 28,633 |
| 1341 | BBBY | Christiana | 331 West Main Street | Newark | DE | 19702 | 37,500 |
| 1365 | BBBY | Longview | 422 W Loop 281 Suite 200 | Longview | TX | 75605 | 24,960 |
| 1367 | BBBY | Panama City Beach, Fl | 15600 Panama City Beach Pkwy | Panama City Beach | FL | 32413 | 23,774 |
| 1372 | BBBY | Silverdale | 9991 Mickelberry Road Nw | Silverdale | WA | 98383 | 28,900 |
| 1392 | BBBY | Denham Springs | 10129 Crossing Way Suite 420 | Denham Springs | LA | 70726 | 23,400 |
| 1403 | BBBY | Flower Mound | 6101 Long Prairie Rd Suite 200 | Flower Mound | TX | 75028 | 29,967 |
| 1405 | BBBY | Holly Springs | 208 Grand Hill Place | Holly Springs | NC | 27540 | 23,400 |
| 1409 | BBBY | Tuscaloosa | 1320 Mcfarland Blvd E Bldg 300 | Tuscaloosa | AL | 35404 | 23,000 |
| 1422 | BBBY | Rehoboth Beach | 30134 Veterans Way | Rehoboth Beach | DE | 19971 | 23,550 |
| 3001 | BABY | Rockville | 1683 Rockville Pike | Rockville | MD | 20852-1619 | 42,296 |
| 3002 | BABY | Scarsdale | 1019 Central Park Ave | Scarsdale | NY | 10583 | 32,200 |
| 3003 | BABY | Paramus | 34 East Ridgewood Ave | Paramus | NJ | 07652-3613 | 63,479 |
| 3005 | BABY | Westbury | 895 East Gate Blvd | Garden City | NY | 11530-2104 | 50,000 |
| 3006 | BABY | Totowa | 545 Route 46 West | Totowa | NJ | 07512-1735 | 33,766 |
| 3007 | BABY | Manhattan | 3 Enterprise Ave N. Suite 3 | Secaucus | NY | 07094 | 34,532 |
| 3008 | BABY | Springfield | 6398 Springfield Plaza | Springfield | VA | 22150-3431 | 28,000 |
| 3009 | BABY | Downers Grove | 1556 Butterfield Road | Downers Grove | IL | 60515-1003 | 35,445 |
| 3010 | BABY | Cherry Hill | 1590 Kings Highway North | Cherry Hill | NJ | 08034 | 30,226 |
| 3011 | BABY | Utica | 13361 Hall Road, Suite 102 | Utica | MI | 48315-5884 | 32,180 |
| 3012 | BABY | Canton | 42595 Ford Road | Canton | MI | 48187-3381 | 32,000 |
| 3013 | BABY | Columbus (Easton) | 3749 Easton Market | Columbus | OH | 43219-6023 | 27,430 |
| 3015 | BABY | Coral Springs | 2035 N. University Drive | Coral Springs | FL | 33071-6132 | 22,865 |
| 3016 | BABY | Greenwood | 1230 N. Us 31, Suite A | Greenwood | IN | 46142-4501 | 31,168 |
| 3017 | BABY | Schaumburg, Il | 580 E. Golf Road | Schaumburg | IL | 60173-4442 | 32,800 |
| 3018 | BABY | Austin | 5400 Brodie Lane, Suite 400 | Austin | TX | 78745-2526 | 28,730 |
| 3019 | BABY | Augusta, Ga | 242 Robert C. Daniels Jr. Parkway | Augusta | GA | 30909-0803 | 26,735 |
| 3021 | BABY | Plano, Tx | 2712 N. Central Expressway | Plano | TX | 75074 | 28,008 |
| 3022 | BABY | Chandler, Az | 2640 W. Chandler Blvd. | Chandler | AZ | 85224 | 35,606 |
| 3023 | BABY | Scottsdale, Az | 10080 N. 90Th Street | Scottsdale | AZ | 85258 | 34,920 |

**Bed Bath & Beyond.2023.Wave 5**
Exhibit A

| Store List |
|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3024 | BABY | Carolina Pavillion, Nc | 9555 South Blvd | Charlotte | NC | 28273-6901 | 31,278 |
| 3025 | BABY | Flagler | 8241 West Flagler Street, Suite 100 | Miami | FL | 33144 | 29,953 |
| 3026 | BABY | Whitehall (Allentown), Pa | 1915 Whitehall Mall | Whitehall | PA | 18052-5119 | 30,322 |
| 3027 | BABY | Addison | 13900 Dallas Parkway | Dallas | TX | 75240-4323 | 33,586 |
| 3028 | BABY | Nashua | 213 Daniel Webster Highway | Nashua | NH | 03060-6600 | 30,491 |
| 3029 | BABY | Brandon | 11345 Causeway Blvd | Brandon | FL | 33511-2904 | 35,150 |
| 3031 | BABY | Hoover | 4351 Creekside Ave. | Hoover | AL | 35244-5019 | 33,843 |
| 3033 | BABY | Alpharetta | 7121 North Point Parkway | Alpharetta | GA | 30022-8255 | 40,787 |
| 3034 | BABY | San Jose | 5353 Almaden Expressway Suite A 100 | San Jose | CA | 95118-3637 | 37,849 |
| 3036 | BABY | Colonie | 1440 Central Avenue | Colonie | NY | 12205-5118 | 37,210 |
| 3037 | BABY | Bridgewater | 711 Route 28 | Bridgewater | NJ | 08807-2401 | 32,206 |
| 3038 | BABY | Brookfield | 665 Main Street | Brookfield | WI | 53005 | 32,888 |
| 3039 | BABY | Frisco | 2930 Preston Rd Suite 600 | Frisco | TX | 75034-9055 | 32,746 |
| 3040 | BABY | Crystal Lake | 5540 Northwest Hwy | Crystal Lake | IL | 60014-8016 | 27,000 |
| 3042 | BABY | Lexington | 2321 Sir Barton Way Suite 110 | Lexington | KY | 40509-2434 | 32,498 |
| 3043 | BABY | Temecula | 40438 Winchester Road | Temecula | CA | 92591 | 28,897 |
| 3044 | BABY | North Cincinnati (Deerfield) | 5255 Deerfield Blvd. | Mason | OH | 45040-2509 | 27,400 |
| 3046 | BABY | Christiana | 501 West Main St. | Newark | DE | 19702-1534 | 30,057 |
| 3047 | BABY | Grand Rapids (Kentwood) | 4100 28Th Street Se | Kentwood | MI | 49512-1904 | 34,500 |
| 3048 | BABY | Fresno | 7458 N Blackstone Ave | Fresno | CA | 93720-4301 | 28,037 |
| 3049 | BABY | Pembroke Pines | 11360 Pines Blvd | Pembroke Pines | FL | 33026-4102 | 31,000 |
| 3050 | BABY | Morrisville | 3121 Market Center Drive | Morrisville | NC | 27560 | 25,000 |
| 3051 | BABY | Rivers Edge | 4030 East 82Nd Street | Indianapolis | IN | 46250 | 26,148 |
| 3052 | BABY | Hurst | 1451 West Pipeline Road | Hurst | TX | 76053-4628 | 33,862 |
| 3053 | BABY | Tulsa | 10017 East 71St Street | Tulsa | OK | 74133-3210 | 28,000 |
| 3054 | BABY | Fort Worth | 4648 Sw Loop 820 | Fort Worth | TX | 76109 | 29,549 |
| 3055 | BABY | Pleasant Hill | 3250 Buskirk Ave Suite 300A | Pleasant Hill | CA | 94523-7309 | 30,163 |
| 3056 | BABY | Snellville | 1670 Scenic Hwy N Suite 124 | Snellville | GA | 30078-2132 | 28,790 |
| 3057 | BABY | Overland Park | 12055 Metcalf Avenue | Overland Park | KS | 66213-1121 | 30,000 |
| 3058 | BABY | Elk Grove | 7621 Laguna Blvd | Elk Grove | CA | 95758-5061 | 31,079 |
| 3060 | BABY | Braintree | 160 Granite St. | Braintree | MA | 02184-1747 | 33,508 |
| 3062 | BABY | Independence | 20000 East Jackson Drive | Independence | MO | 64057-1568 | 28,245 |
| 3063 | BABY | Encinitas | 1014 N El Camino Real | Encinitas | CA | 92024 | 27,260 |
| 3064 | BABY | Naperville | 324 S Route 59 | Naperville | IL | 60540-3924 | 22,903 |
| 3065 | BABY | Woodbury | 9160 Hudson Road | Woodbury | MN | 55125-7001 | 28,487 |
| 3066 | BABY | Sandy | 10230 South State Street | Sandy | UT | 84070-4115 | 32,928 |
| 3067 | BABY | Webster | 19801 Gulf Freeway Suite 800 | Webster | TX | 77598-3802 | 30,000 |
| 3070 | BABY | Ballwin | 15355A Manchester Road | Ballwin | MO | 63011-3026 | 28,150 |
| 3071 | BABY | Jacksonville | 8801 Southside Blvd Unit 10 | Jacksonville | FL | 32256-0796 | 25,000 |
| 3072 | BABY | Altamonte Springs | 130 E Altamonte Dr Suite 1000 | Altamonte Springs | FL | 32701-4324 | 27,013 |
| 3073 | BABY | W Desmoines | 4100 University Ave Ste 115 | West Des Moines | IA | 50266-5958 | 25,938 |
| 3074 | BABY | E. Colonial (Orlando) | 3206 East Colonial Drive | Orlando | FL | 32803-5121 | 25,205 |
| 3076 | BABY | Torrance | 3700 Torrance Blvd. | Torrance | CA | 90503-4808 | 36,566 |
| 3080 | BABY | Potomac Mills | 2700 Potomac Mills Circle, Suite 100 | Woodbridge | VA | 22192-4651 | 38,243 |
| 3081 | BABY | West Long Branch | 310 Route 36 | West Long Branch | NJ | 07764-1026 | 22,223 |
| 3083 | BABY | Amherst | 1261 Niagara Falls Blvd Ste 1 | Amherst | NY | 14226-1160 | 29,484 |
| 3084 | BABY | Mission Viejo | 25322 El Paseo | Mission Viejo | CA | 92691-6906 | 36,033 |
| 3086 | BABY | Knoxville | 202 Morrell Road | Knoxville | TN | 37919-5876 | 25,000 |
| 3087 | BABY | Albuquerque | 2451 San Mateo Blvd Ne Suite C | Albuquerque | NM | 87110-4417 | 27,839 |
| 3088 | BABY | Roseville | 1120 Galleria Blvd Suite 160 | Roseville | CA | 95678-1992 | 29,436 |
| 3090 | BABY | Maplewood | 3200 Laclede Station Suite D | St Louis | MO | 63143-3709 | 24,638 |
| 3091 | BABY | Willowbrook | 17355 Tomball Parkway Suite 1K | Houston | TX | 77064-1180 | 29,250 |
| 3092 | BABY | Deptford | 1745 Deptford Center Road | Deptford | NJ | 08096-5662 | 24,963 |
| 3093 | BABY | Beachwood (Harvard Park) | 4045 Richmond Road | Warrensville Heights | OH | 44122-6048 | 25,446 |
| 3094 | BABY | Livingston | 530 W Mount Pleasant Avenue | Livingston | NJ | 07039-1740 | 25,356 |
| 3095 | BABY | Yorba Linda | 22999 Savi Ranch Parkway | Yorba Linda | CA | 92887-3095 | 25,418 |
| 3096 | BABY | Rancho Cucamonga | 11530 4Th Street Suite 125 | Rancho Cucamonga | CA | 91730-3096 | 24,000 |
| 3097 | BABY | Redlands | 27651 San Bernardino Ave Ste 110 | Redlands | CA | 923745030 | 22,047 |
| 3098 | BABY | Tukwila | 17686 Southcenter Parkway | Tukwila | WA | 98188-3705 | 25,165 |
| 3099 | BABY | West Hills | 6621 Fallbrook Avenue, Unit B | West Hills | CA | 91307-3520 | 20,500 |
| 3100 | BABY | Kennesaw | 2555 Cobb Place Lane Nw Ste 50 | Kennesaw | GA | 30144-6871 | 25,526 |
| 3101 | BABY | Omaha | 12204 K Plaza | Omaha | NE | 68137 | 25,032 |
| 3103 | BABY | Montgomeryville | 751 Horsham Rd Unit B1 | Landsdale | PA | 19446-6489 | 23,084 |

**Bed Bath & Beyond.2023.Wave 5**

Exhibit A

| Store List |
|---|

| Store # | Concept/ Banner | Name | Address | City | State | Zip | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| 3104 | BABY | Wichita | 2756 N Greenwich Ct | Wichita | KS | 67226-3104 | 14,931 |
| 3105 | BABY | Aurora | 6492 South Parker Road | Aurora | CO | 80016-1080 | 23,505 |
| 3106 | BABY | Southlake | 2901 East State Hwy 114 | Southlake | TX | 76092-6694 | 23,428 |
| 3108 | BABY | Daly City | 149 Serramonte Center | Daly City | CA | 94015-3108 | 22,006 |
| 3109 | BABY | Katy | 24600 Katy Fwy Suite 200 | Katy | TX | 77494-3109 | 23,000 |
| 3110 | BABY | Franklin | 2000 Mallory Lane, Suite 400 | Franklin | TN | 37067-8208 | 23,947 |
| 3111 | BABY | Pharr (Mcallen) | 500 N Jackson Road #A2 | Pharr | TX | 78577 | 25,056 |
| 3112 | BABY | Summerlin | 2315 Summa Drive Suite 120 | Las Vegas | NV | 89135-1460 | 26,315 |
| 3113 | BABY | Dulles Landing (Chantilly) | 24670 Dulles Landing Dr., Unit 130 | Dulles | VA | 20166-2628 | 23,205 |
| 3115 | BABY | Fayetteville | 2716 Freedom Parkway Drive | Fayetteville | NC | 28314-3115 | 18,294 |
| 3116 | BABY | Dayton | 6146 Wilmington Pike | Dayton | OH | 45459-7007 | 20,082 |
| 3117 | BABY | Cedar Park | 5001 183A Toll Road Suite I100 | Cedar Park | TX | 78613-7937 | 26,036 |
| 3118 | BABY | Chula Vista | 1660 Millenia Ave | Chula Vista | CA | 91915 | 15,000 |
| 3119 | BABY | Arrowhead | 7375 W Bell Rd | Peoria | AZ | 85382 | 21,315 |
| 3120 | BABY | Baton Rouge | 5919 Bluebonnet Blvd | Baton Rouge | LA | 70836 | 18,300 |
| 3121 | BABY | West Hartford | 1433 New Britain Avenue | West Haetford | CT | 06110 | 24,910 |
| 3122 | BABY | Humble | 20416 Highway 59N | Humble | TX | 77338-3122 | 34,875 |
| 3124 | BABY | Beaverton | 3485 Sw Cedar Hills Blvd S170 | Beaverton | OR | 97005-1309 | 17,595 |
| 3125 | BABY | San Antonio | 522 Northwest Loop 410, Suite 108 | San Antonio | TX | 78216-5551 | 20,086 |
| 3126 | BABY | Stafford | 12710 Fountain Lake Circle | Stafford | TX | 77477-3705 | 18,283 |
| 3128 | BABY | Clackamas | 12535 Se 82Nd Ave., Suite B | Clackamas | OR | 97015-9734 | 16,968 |
| 3129 | BABY | Westlake (Crocker Park) | 292 Main Street | Westlake | OH | 44145-3129 | 14,400 |
| 3130 | BABY | Woodbridge | 675 Us Highway 1S, Suite 1 | Iselin | NJ | 08830-3152 | 21,794 |
| 3131 | BABY | Concord | 8062 Concord Mills Blvd., Suite 20 | Concord | NC | 28027-4417 | 17,920 |
| 3132 | BABY | Littleton | 5134 South Wadsworth Blvd. | Lakewood | CO | 80123 | 23,024 |
| 3134 | BABY | Tyler | 8934 S. Broadway Ave., Ste 448 | Tyler | TX | 75703-5420 | 23,595 |
| 3136 | BABY | Henderson | 535 N. Stephanie Street | Henderson | NV | 89014-6613 | 20,008 |
| 3137 | BABY | Southfield | 28512 Telegraph Road | Southfield | MI | 48034 | 25,000 |
| 3138 | BABY | Westminster | 9350 North Sheridan Blvd. | Westminster | CO | 80031-6304 | 25,343 |
| 3139 | BABY | Madison | 201 Junction Rd | Madison | WI | 53717 | 22,192 |
| 3140 | BABY | Granger | 435 E. University Drive | Granger | IN | 46530 | 24,779 |

472

## Bed Bath & Beyond.2023.Wave 5
### Exhibit B

| Expense Budget (1) |
| --- |

|  | Total Wave 5 |
| --- | --- |
| **Advertising** | |
| Media | 3,583,514 |
| Signs (2) | 4,162,018 |
| Sign Walkers | 4,354,800 |
| Subtotal Advertising | 12,100,332 |
| | |
| **Supervision** | |
| Fees / Wages / Expenses (3) | 11,722,250 |
| Subtotal Supervision | 11,722,250 |
| | |
| Miscellaneous /Legal (4) | 240,000 |
| | |
| Total Expenses | 24,062,582 |

Notes:

1. This Expense Budget contemplates a sale term of April, 26, 2023 through July 30, 2023.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.
3. Includes Deferred Compensation and Insurance.
4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

<u>EXHIBIT C</u>

For purposes of calculating "Net Recovery", (1) "Expenses" of the Sale shall mean those Store-level operating expenses directly attributable to and which arise during the Sale Term, limited to the following: (a) actual Occupancy Expenses for the Stores on a per location and per diem basis, plus the portion of any percentage rent obligations allocable to the sale of Merchandise and Additional Consultant Goods during the Sale; (b) actual wages and commissions for all Store-level employees used in conducting the Sale for actual days/hours worked during the Sale Term; (c) amounts payable by Merchant for benefits for Store-level employees used in conducting the Sale (including payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits); (d) all costs and expenses associated with Agent's on-site supervisors; (e) all costs and expenses associated with advertising of the Sale, including banners, sign-walkers, and interior and exterior signs that are produced for the Sale, other promotional costs including, without limitation, email blasts, digital advertising, television, ROP, other advertising and direct mail attributable to the Sale and ordered or requested by Agent; (f) postage/overnight delivery/courier charges to and from or among the Stores to the extent relating to the Sale; (g) credit card and bank card fees, chargebacks, and discounts relating to the Sale; (h) any and all costs of moving, transferring, or consolidating Merchandise between the Stores; (i) a pro rata portion for the Sale Term of Merchant's premiums in respect of general liability, casualty, property, inventory, and other insurance policies attributable to the Merchandise, the Stores and the Distribution Centers; (j) third-party payroll processing fees associated with the Sale; (k) armored car service and security personnel; (l) Agent's (i) actual cost of capital, (ii) reasonable legal fees and expenses attributable to the Sale Term, and (iii) bank fees and wire charges; and (m) [Reserved]; and (2) "Expenses" of the Sale shall exclude "Central Service Expenses" and "Distribution Center Expenses".

As used herein, the following terms have the following meanings:

"<u>Central Service Expenses</u>" means costs and expenses for Merchant's Central Services.

"<u>Central Services</u>" means those Merchant central administrative services necessary for the conduct and support of the Sale, including, but not limited to, use or and access to Merchant's:  (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities, (v) MIS and POS services, (vi) cash and inventory reconciliation, (vii) central administrative services and personnel to process and perform sales audit, banking, and other normal course administrative services customarily provided to or for the benefit of operating the Stores and Distribution Centers and including data processing and reporting, email preparation and distribution, information technology and e-commerce platform updates, functionality, and maintenance, (viii) such other central office services reasonably necessary (in the reasonable judgment of the Agent) for the Sale, and (vii) to use reasonably sized offices located at Merchant's central office facility to effect the Sale.

"<u>Distribution Center Expenses</u>" means the actual costs and expenses, including use and Occupancy Expenses and Distribution Center employee payroll and other obligations, of the operations of the Distribution Centers, and the actual costs and expenses (including outbound freight) related to the processing, transfer, and consolidation of Merchandise and supplies in the Distribution Centers and from the Distribution Centers to the Stores.

"<u>Occupancy Expenses</u>" means rent, percentage rent, common-area maintenance, landlord promotional fees, real estate and use taxes, merchant association dues and charges, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, routine repairs and maintenance, taxes and licenses, costs of all local, long-distance, and international telephone, satellite broadband connections, T-1 lines, broadband internet, and other telecommunications services, trash removal (to the extent excluded as a fixed charge component of lease obligation), snow removal, and ordinary course third-party cleanings, and pest control services.

## <u>Schedule 1-A</u>

**BBB Consulting Agreement**



March 2, 2021

***VIA EMAIL***
Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc.
650 Liberty Ave.
Union, NJ 07083
Email:  derek.dervish@bedbath.com

       Re:      **Letter Agreement Governing Inventory Disposition**

Dear Derek:

By executing below, this letter shall serve as an agreement ("Agreement") between Hilco Merchant Resources, LLC, on the one hand ( "Agent" or a "Party"), and Buy Buy Baby, Inc., on the other hand ("Merchant" or a "Party" and together with the Agent, the "Parties"), under which Agent shall act as the exclusive agent for the purpose of conducting a sale of certain Merchandise (as defined below) at the Merchant's stores set forth on Work Orders issued by Merchant and agreed to by Agent from time to time (each a "Store" and collectively, the "Stores") through a "Store Closing", "Everything Must Go", "Everything on Sale" or similar themed sale (the "Sale").  The Parties hereby agree that the list of Stores on a Work Order may be supplemented from time to time by written amendment to this Agreement executed in accordance with the foregoing in which case any Store added to a Work Order shall be deemed a "Store" for all purposes under this Agreement, and the Parties shall mutually agree upon any modifications to the Sale Term, Expense Budget(s), and other terms and conditions that may be necessary or appropriate in light of the additional retail store locations.

**A.**      **Merchandise**

For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below).  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "FF&E"); (3) damaged or defective merchandise that cannot be sold; or (4) gift cards (third party and Merchant branded).

**B.**      **Sale Term**

The initial Sale shall commence on such date as set forth in an applicable Work Order (the "Sale Commencement Date") and conclude no later than such date as set forth in an applicable Work Order (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date.  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term."  At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant

DocuSign Envelope ID: 28C04384-5901-42C9-B15E-69DCF6758FEA

in broom clean condition and in accordance with the lease requirements for such premises, as directed by Merchant, in accordance with Section I herein. At the conclusion of the Sale at each Store, Agent shall photographically document the condition of each such Store. To the extent that the Sale as it pertains to a particular Store is delayed or interrupted  because it is required to be closed due to  the issuance of an order, rule, or regulation by a federal, state or local government agency related to COVID-19, the Sale Termination Date as to the affected Store shall be extended by the time period for which the Sale was delayed or interrupted.

**C.**     **Project Management**

    (i)     Agent's Undertakings

During the Sale Term, Agent shall, in collaboration with Merchant, (a) provide qualified supervisors (the "Supervisors") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters;   (h) assist Merchant with the creation and implementation of a customer transition program; (i) assist Merchant with determining the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (j) at Merchant's request, implement Agent's affiliate CareerFlex program for Merchant's Store level and other employees; and (k) provide such other related services deemed necessary or appropriate by Merchant and Agent.

Agent shall promptly substitute any Supervisors that Merchant finds to be unacceptable or unsuitable for any reason, in Merchant's sole discretion. Agent shall use reasonable means to ensure that the same Supervisors are assigned to Merchant's Stores for the duration of the Sale Term.  In the event a Supervisor is replaced during the Sale Term, Agent will provide a new or replacement Supervisor with the same skill level as the Supervisor being replaced.  Any new or replacement Supervisors assigned to Merchant's Stores during the Sale Term shall be subject to Merchant's reasonable approval.  Merchant shall not be charged for any necessary training of new or replacement Supervisors. In the event that new or replacement Supervisors are not available, Agent shall reimburse Merchant for any training costs actually incurred by Merchant.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)     <u>Merchant's Undertakings</u>

During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) apply for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including landlord approvals and consents) for the Sale, including payment of all applicable costs and expenses associated therewith; (i) assist Agent with implementing the CareerFlex program for Merchant's Store level and other employees; and (j) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.

Merchant shall be responsible for providing direction to and supplies for the Stores in order to comply with federal, state and local COVID-19 related health and safety requirements, and Agent will assist with the implementation of such requirements at the Stores; provided, however, that Agent shall not be responsible to Merchant for the payment of nor liable for any fine, injury, death, or damage caused by or related to COVID-19 (collectively, "COVID-19 Losses"), unless such COVID-19 Losses were directly caused by Agent's gross negligence or willful misconduct.  Agent's supervisors will provide their own personal protective equipment ("PPE") at no additional cost to Merchant.  To the extent that temporary labor do not source and provide their own PPE, Agent will provide Merchant with Agent's cost (without lift or mark-up) for PPE and, if requested by Merchant, Agent will procure such PPE, and Merchant agrees to reimburse Agent for the costs associated therewith (in addition to amounts reflected in Exhibit B).

The Parties expressly acknowledge and agree that Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent. The Parties further expressly acknowledge and agree that Merchant shall have no liability to Agent's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's employment, hiring or retention of its employees, and such employees shall not be considered employees of Merchant.

**D.**     <u>**The Sale**</u>

All sales of Merchandise shall be made on behalf of Merchant.  Agent does not have, nor shall it have, any right, title or interest in the Merchandise.  All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by

check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

**E.**     **Agent Fee and Expenses in Connection with the Sale**

As used in this Agreement, the following terms shall have the following meanings:

(i)     "Gross Proceeds" shall mean the sum of the gross proceeds of all sales of Merchandise made in the Store during the Sale Term, net only of sales taxes.

(ii)     "Gross Recovery Threshold" shall mean the Gross Proceeds, calculated using the "gross rings" method, divided by the Retail Price of the Merchandise sold, calculated using the "gross rings" method.

(iii)     "Merchandise File" shall mean the Merchant's books and records, as well as all files provided to Agent during due diligence.

(iv)     "Retail Price" shall mean with respect to each item of Merchandise (excluding a small amount of Merchandise classified as clearance, "web deals," "as-is" or in-store special), the lower of the lowest ticketed, marked, shelf, Merchandise File, point of sale, or other file price as reflected in Merchant's books and records for such item.

In consideration of its services hereunder, Merchant shall pay Agent a "Base Fee" equal to sixty-five one hundredths of one percent (0.65%) of the Gross Proceeds of Merchandise sold at the Stores. In addition to the "Base Fee", Agent may also earn an "Incentive Fee" (together with the Base Fee, the "Merchandise Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following Gross Recovery Thresholds (e.g., in each case, as calculated back to first dollar):

| Gross Recovery Threshold | Agent Incentive Fee |
|---|---|
| 65.10% - 66.0% | An additional .20% of Gross Proceeds |
| | Total Merchandise Fee of .85% of Gross Proceeds |
| 66.10% - 67.00% | An additional .10% of Gross Proceeds |
| | Total Merchandise Fee of .95% of Gross Proceeds |
| Over 67.00% | An additional .10% of Gross Proceeds |
| | Total Merchandise Fee of 1.05% of Gross Proceeds |

The definitive Gross Recovery Threshold shall be determined in connection with the Final Reconciliation, and once determined, the parties (as part of the Final Reconciliation) shall determine the actual amount of Agent's Incentive Fee. Merchant shall pay any outstanding, unpaid portions of Agent's Incentive Fee in connection with the Final Reconciliation.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's other reasonable, documented out of pocket expenses. To control expenses of the Sale, Merchant and Agent have established an aggregate budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision

(including (without limitation) Supervisors' wages, travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable, at cost with no markup). The Expense Budget for the Sale is attached hereto as <u>Exhibit B</u>. In the event Agent desires to modify the Expense Budget attached hereto after the date of this Agreement, Agent will present such modifications to Merchant for Merchant's consent, which consent may be withheld by Merchant in Merchant's sole discretion. The costs of supervision set forth on <u>Exhibit B</u> includes, among other things, industry standard deferred compensation.

All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled on every Wednesday for the prior week and shall be paid within twenty-one (21) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store.

## F.    <u>Indemnification</u>

(i)    <u>Merchant's Indemnification</u>

Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "<u>Agent Indemnified Parties</u>") harmless from and against all third-party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

(ii)    <u>Agent's Indemnification</u>

Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "<u>Merchant Indemnified Parties</u>") harmless from and against all third party liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful

DocuSign Envelope ID: 38C04384-591A-3269-B15F-69DCF6758FEA

misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement.

**G.** **Insurance**

    (i)    Merchant's Insurance Obligations

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Agent to be named an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

    (ii)    Agent's Insurance Obligations

As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to this Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

**H.** **Representations, Warranties, Covenants and Agreements**

    (i)    Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (d) all normal course hard markdowns on the Merchandise have been, and will

DocuSign Envelope ID: 28C94384-591A-42C9-B15E-69DCF6758EEA

be, taken consistent with customary Merchant's practices, and (e) the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Agent.

(ii)    Agent warrants, represents, covenants and agrees that (a) Agent is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Agent's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Agent and this Agreement constitutes a valid and binding obligation of Agent enforceable against Agent in accordance with its terms and conditions, and the consent of no other entity or person is required for Agent to fully perform all of its obligations herein, (c) Agent shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, and (e) Agent will not take any disciplinary action against any employee of Merchant.

## I.    <u>Furniture, Fixtures and Equipment</u>

Agent shall sell the FF&E in the Stores from the Stores themselves.  In consideration for selling the FF&E, Agent shall be entitled to a commission from the sale of the FF&E equal to ten percent (10.0%) of the Gross Proceeds of the sale of the FF&E.

Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within 21 days after each such weekly reconciliation.

Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with (i) the sale of FF&E, and (ii) surrendering the premises in accordance with the lease requirements for such premises, as directed by Merchant, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties. Agent shall not have the right to abandon at the Stores any unsold FF&E; provided, however, in the event Merchant desires that Agent  decommission and/or de-brand (collectively, "Decommission") any Store and/or remove any FF&E that is affixed to a Store premises, including without limitation by glue, nails or screws, such Decommission and FF&E removal shall be subject to a separate scope of work, which may include an additional fee payable to Agent in connection with such work, and budget mutually agreed upon by Merchant and Agent.

## J.    <u>Termination</u>

The following shall constitute "Termination Events" hereunder:

(a)    Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting Party;

DocuSign Envelope ID: 28C04384-591A-4269-B15F-69DCF6758FEA

(b)     Any representation or warranty made by Merchant or Agent is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)     the Sale at all Stores is terminated or materially interrupted or impaired for any reason other than an event of default by Agent or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default. If this Agreement is terminated, Merchant shall be obligated to pay Agent all amounts due under this Agreement through and including the termination date.

## K.    Notices

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows: (a) To Merchant: at the address listed above, ATTN: EVP, Chief Stores Officer; (b) To Agent: c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847- 849-0859, Attn: Ian S. Fredericks; or (c) such other address as may be designated in writing by Merchant or Agent.

## L.    Independent Consultant

Agent's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Agent or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Agent is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

## M.    Non-Assignment

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; provided, however Merchant may use the services of Agent in Stores leased by subsidiaries of Merchant. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

## N.    Severability

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum

DocuSign Envelope ID: 28C94384-591A-4269-B15F-69DCF6758FEA

extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.**   **Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of New Jersey (without reference to the conflicts of laws provisions therein). Merchant and Agent waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Agent against Merchant or Merchant against Agent on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Agent, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

**P.**   **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement. All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.**   **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**R.**   **Ethical Conduct Policy**

It is the policy of Merchant and its subsidiaries and affiliates to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act). Agent shall not, directly or indirectly, solicit or accept from, nor offer, promise or pay to, any individual or entity (including, but not limited, to any government official any bribe, kickback or any other improper payment of money or anything else of value. This includes, but is not limited to, any improper payment in exchange for Merchant's execution of this Agreement. Agent will also require any subcontractor (of any level) to adhere to the same standards and will appropriately monitor its subcontractors to ensure such adherence. In addition, any individual who is employed by or who represents Merchant is prohibited from soliciting, accepting, offering, promising or paying any bribe, kickback or any other improper payment of money or anything else of value. If any such improper actions are observed, contact our Legal Department

DocuSign Envelope ID: 28C0438A-5A91-43C9-B15E-69DCF6758EEA

(Attention: General Counsel) at the address set forth herein and/or by telephone at 908-688-0888, so that the incident may be fully investigated.

## S.    Publicity

Agent may not discuss this Agreement or its content with the media, use the Merchant name or issue any press release or other public statement related hereto, unless authorized in writing by the Merchant. Unless otherwise authorized in writing by the Merchant, publicity prohibited hereunder shall include but not be limited to: press releases, press interviews, magazine articles, trade show displays, customer lists, web sites, social media sites, Agent success stories and present or prospective client references.

\*            \*            \*

DocuSign Envelope ID: 28C94384-591-43C9-B15E-69DCF6758EEA

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

By: Sarah Baker

Its:

**AGREED AND ACCEPTED as of the ___ day**

**of** _3/8/2021_____, **2021:**

BUY BUY BABY, INC.

By: John Hartmann

Its:

DocuSign Envelope ID: 94987879-B9C3-4EA0-B364-930E972B2E56

# Hilco
## Merchant Resources

August 26, 2022

**_VIA EMAIL_**
Derek Dervish
Vice President – Asset Management
Buy Buy Baby, Inc. 650
Liberty Ave.
Union, NJ 07083
Email:  derek.dervish@bedbath.com

Re:    **Amendment to Letter Agreements**

Derek:

Reference is made to (i) that certain letter agreement dated September 11, 2021 by and between Hilco Merchant Resources, LLC ("Agent" or a "Party") and Bed Bath & Beyond Inc. (the "BB&B" or a "Party") (as supplemented or amended, the "BB&B Agreement") and (ii) by that certain letter agreement dated March 2, 2021 by and between Agent and Buy Buy Baby, Inc. ("BBB" or a "Party"; together with BB&B, the "Merchant"; collectively with BB&B and Agent, the "Parties") (as supplemented or amended, the "BBB Agreement" and together with the BB&B Agreement, the "Agreements") Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the respective Agreement.

The Parties hereby amend the Agreements as follows (the "Amendment"):

Section E. of the Agreements are hereby amended and modified as follows:

1. The "Base Fee" is hereby increased from sixty-five one hundredths of one percent (0.65%) to eighty one hundredths of one percent (0.80%).

2. With respect to the table outlining the "Gross Recovery Threshold" and "Agent Incentive Fee", the table is hereby amended and modified as follows:

   a. The reference to "Total Merchandise Fee of .85% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.0% of Gross Proceeds";

   b. The reference to "Total Merchandise Fee of .95% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.10% of Gross Proceeds"; and

   c. The reference to "Total Merchandise Fee of 1.05% of Gross Proceeds" is hereby deleted and replaced with "Total Merchandise Fee of 1.20% of Gross Proceeds".

The Agent shall be authorized to syndicate the transactions contemplated by the Agreements with Tiger Capital Group on terms and conditions mutually agreed upon between the Agent and

DocuSign Envelope ID: 94987879-B3C3-4EA0-B364-930E972B2F56

Tiger Capital Group.  Per the Merchant's request, Agent shall continue to lead all aspects of the transactions contemplated by the Agreements.

With respect to this Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in section H. of the Agreements.

This Amendment, together the Agreements, all prior amendments or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreements.

*          *          *

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

*Ian S. Fredericks*
8211DF797AB4402...
By:  Ian S. Fredericks
Its:  President

**AGREED AND ACCEPTED as of the ___ day of August, 2022:**

BED BATH & BEYOND, INC.

*Derek B Dervish*
D65B971000BB4E0...
By:  Derek B Dervish
Its:  Senior Director of Asset Mgt. and Inventory Operations

BUY BUY BABY, INC.

*Derek B Dervish*
D65B971000BB4E0...
By:  Derek B Dervish
Its:  Senior Director of Asset Mgt. and Inventory Operations

## **Schedule 2**

**Sale Guidelines**

## Sale Guidelines[1]

1. The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2. The Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3. On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Consultant may solicit customers in the Closing Stores themselves. On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4. At the conclusion of the Sale, the Consultant shall vacate the Closing Stores; *provided* that Consultant may abandon any furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking) ("FF&E") not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Consultant. The Consultant shall notify the Merchant of its intention to abandon any FF&E at least two (2) days prior to the Termination Date. The Merchant will have the option to remove the FF&E, at its own cost prior to the Termination Date. Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant. For the avoidance of doubt, as of the Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

5. The Consultant may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales. The Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with the Consulting Agreement.

---

[1] Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief.

6.  The Consultant shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Merchant and Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.  In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store.  In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order.  Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Consultant any additional restrictions not contained in the applicable lease agreement.

7.  Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

8.  Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

9.  The Consultant shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Sales.  The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

10. The Consultant shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

11. The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

12. Subject to the provisions of the Consulting Agreements, the Consultant shall have the right to use and sell all FF&E owned by the Merchant (the "Owned FF&E"), approved by the Merchant.  The Consultant may advertise the sale of the Owned FF&E in a manner consistent with these guidelines and the Consulting Agreement.  The purchasers of any Owned FF&E sold during the sale shall be permitted to remove the Owned FF&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Closing Store in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility, any FF&E.

2

13.    At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Merchant, Consultant and their agents and representatives shall continue to have access to the Closing Stores as provided for in the Consulting Agreements.

14.    The rights of landlords against Merchant for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

15.    If and to the extent that the landlord of any Closing Store affected hereby contends that the Merchant or Consultant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant and Consultant as follows:

If to Consultant:

Hilco Merchant Resources, LLC
One Northbrook Place
5 Revere Drive, Suite 206
Northbrook, IL 60062
Facsimile: 847- 849-0859
Attention: Hilco Merchant Resources, LLC c/o Ian S. Fredericks, Sarah Baker

with copies (which shall not constitute notice) to:

Riemer & Braunstein LLP
Times Square Tower, Suite 2506
Seven Times Square
New York, New York 10036
Attention: Steven Fox

-and-

Troutman Pepper Hamilton Sanders LLP
1313 N. Market St., P.O. Box 1709
Wilmington, DE 19899-1709
Attention: Marcy McLaughlin Smith

If to Merchant:

Bed Bath & Beyond Inc.
650 Liberty Avenue,
Union, New Jersey 07083
Attention:  Legal Department

with copies (which shall not constitute notice) to:

3

Cole Schotz P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
Attention: Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin,
Esq.
Email: msirota@coleschotz.com
         wusatine@coleschotz.com
         fyudkin@coleschotz.com

- and -

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Derek I. Hunter
Email: joshua.sussberg@kirkland.com
         emily.geier@kirkland.com
         derek.hunter@kirkland.com
         ross.fiedler@kirkland.com

- and -

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attention: Charles B. Sterrett
Email: charles.sterrett@kirkland.com