**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) ESTABLISHING**
**PROCEDURES TO SELL CERTAIN LEASES, (II) APPROVING THE**
**SALE OF CERTAIN LEASES, AND (III) GRANTING RELATED RELIEF**

TO:    HONORABLE VINCENT F. PAPALIA
       United States Bankruptcy Judge

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

## Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) establishing procedures authorizing, but not directing, the Debtors to sell or transfer certain unexpired leases of non-residential real property (each, a "Lease"), including with any related ancillary agreement(s) thereto or through the sale of designation rights related thereto (each, a "Lease Sale"), by public auction (the "Lease Auction"), pursuant to the procedures attached as Exhibit 1 to the Order (the "Lease Sale Procedures"); (b) approving the form and manner of notices of the Lease Auction and Lease Sale Hearing attached as Exhibit 2 to the Order (the "Lease Auction and Lease Hearing Notice"); (c) approving the procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), including the notice of proposed cure amounts attached as Exhibit 3 to the Order (the "Assumption and Assignment Notice"); (d) scheduling Lease Auctions to sell the assets detailed in the Lease Sale Procedures and hearings to approve one or more Lease Sales (the "Lease Sale Hearing"); (e) approving procedures for selling certain Leases not sold at the Lease Auctions; and (f) granting related relief.[2]

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Lease Sale Procedures or the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration"), as applicable.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 363 and 365 of title 11 of the

United States Code (the "Bankruptcy Code"), rules 2002, 6004, and 6006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules

for the District of New Jersey (the "Local Rules").

## Background

5.      The Debtors are the largest home goods retailer in the United States, offering

everything from bed linens to cookware to home organization, baby care, and more.  In addition

to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond

stores and their buybuy BABY stores with locations across North America.  Headquartered in

Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs

approximately 14,000 non-seasonal employees.

6.      The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to

implement a timely and efficient process to maximize the value of the Debtors' estates for the

benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an

orderly and value-maximizing wind down of their business, while marketing a sale of all or part

of their business on a timeline consented to by their prepetition and DIP lenders.

7.      On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  On April 24, 2023, the Court entered an order [Docket No. 75] authorizing

procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

### The Lease Auctions and Lease Sale Procedures

8.     Over the past several years, the Debtors have faced a challenging commercial environment brought on by increased competition, an unsuccessful foray into private-label merchandise development, and the consumer shift away from shopping at brick-and-mortar stores. Given the expenses associated with a substantial brick-and-mortar presence, and the issues affecting the retail industry as a whole, a significant number of the Debtors' stores are operating at sub-optimal performance levels.

9.     In the past 12 months, the Debtors have reduced their store footprint by approximately 482 stores, leaving the Debtors with approximately 476 stores as of the Petition Date. In connection with commencing these Chapter 11 Cases, the Debtors' management team and advisors determined that it is appropriate to close and wind down any remaining brick-and-mortar stores (the "Store Closings"), and accordingly, pursuant to the Interim Store Closing Order,[3] the Debtors have initiated such Store Closings. Additionally, the Court has entered an order approving certain bidding procedures, which will allow the Debtors to continue their extensive prepetition sale process [Docket No. 92].[4]

---

[3]     "Interim Store Closing Order" shall mean the *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 102].

[4]     The Debtors' bidding procedures are further described in the *Debtors' Motion for Entry of an Order (I) (A) Authorizing the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Approving the Form APA, and (II) (A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* [Docket No. 29].

10.    By this Motion, the Debtors seek approval of the Lease Sale Procedures to capitalize on their lease assets (the "Lease Assets") that are not sold to a buyer pursuant to the Bidding Procedures.    Certain of the Debtors' leases that could be subject to rejection or renegotiation have significant amounts of time remaining under their term.    The Lease Sale Procedures will streamline the Debtors' efforts to capture substantial value from such leases that they may otherwise reject, and avoid additional costs related to remaining on the premises under the leases in connection with Store Closings, both of which will inure to the benefit of the Debtors' estates.

11.    The Debtors have engaged A&G Realty Partners, LLC ("A&G"), as proposed real estate advisor to the Debtors, to assist the Debtors in appraising, marketing, and negotiating the sale of their Lease Assets.    In consultation with A&G, the Debtors have determined that selling Lease Assets held by Debtors (the "Lease Sale Process") will result in the most value-maximizing outcome with respect to such Lease Assets.    Specifically, the Lease Sale Process and corresponding Lease Sale Schedule (as defined herein) will permit the Debtors to capture substantial value for their stakeholders by capitalizing on the value of their Lease Assets in coordination with the Store Closings.    Selling the Lease Assets in connection with the Store Closings is a sound exercise of the Debtors' business judgment.    In fact, failing to take every effort to sell the valuable rights tied to such Lease Assets for the maximum value upon consummation of the Store Closings and before the statutory deadline to assume or reject unexpired leases would implicate the Debtors' responsibility to maximize value for their stakeholders.

12.    The proposed Lease Sale Procedures are part of an ongoing marketing process headed by A&G to maximize the value of the Lease Assets being sold.    The Debtors, utilizing the services and expertise of A&G and their other advisors, have initiated a competitive marketing process for the sale of the Lease Assets.    Although A&G did not commence a formal marketing process until after the Petition Date, A&G had received outreach from numerous potential

counterparties inquiring about the availability of certain of the Debtors' Lease Assets prior to the Petition Date. Accordingly, as of the date hereof, A&G has engaged approximately sixty parties that are known to A&G to be institutional investors, owners of, or investors in leases similar to those being sold, or parties known to be interested in particular properties based on direct inquiries over the last few months. Given the actions undertaken as of the date hereof, the communications with existing potential bidders, and the general public awareness of these Chapter 11 Cases and related Store Closings, the Debtors fully believe that the Lease Sale Process will result in competitive, value-maximizing Lease Auctions that will inure to the benefit of all stakeholders and maximize the value of the Debtors' estates.

## I.      Summary of the Lease Sale Procedures and the Order.

### A.      The Lease Sale Schedule

13.      The Debtors are seeking approval of the Lease Sale Procedures and the following proposed timeline related thereto (the dates set forth below, the "Lease Sale Schedule") to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that allows the Debtors to consummate a sale transaction. Moreover, the Debtors, in their sound business judgment and in consultation with the Consultation Parties,[5] reserve the right to alter the timing of the Lease Sale Schedule as necessary under the circumstances, or to conduct multiple sale transactions across one or more Lease Auctions in order to maximize the value of the estates, in each case in accordance with the Bidding Procedures. The Debtors respectfully request that the Court approve the following Lease Sale Schedule.

---

[5]      "Consultation Parties" shall mean counsel to the DIP Agent, Prepetition FILO Agent, and Prepetition ABL Agent (each, an "Agent") and any official committee appointed in these Chapter 11 Cases; *provided, however*, that to the extent any Agent submits a bid for any Lease Assets, such Agent shall not be a Consultation Party with respect to (a) the evaluation and qualification of competing bids for the Lease Assets included in such Agent's bid or (b) seeking and/or obtaining information about other bids, but such Agent shall remain a Consultation Party for the other purposes set forth herein.

**The Lease Sale Schedule**

| Lease Sale Schedule | | |
|---|---|---|
| **Action** | **Description** | **Deadline** |
| Stalking Horse Deadline | The deadline by which the Debtors may choose a Stalking Horse Bidder. | **May 31, 2023, at 5:00 p.m. (prevailing Eastern Time).** |
| Bid Deadline | The deadline by which all binding Bids must be actually received. | **June 6, 2023, at 5:00 p.m. (prevailing Eastern Time).** |
| Notice of Qualified Bids | The deadline by which the Debtors shall notify the Bidders for Lease Assets whether their Bids are Qualified Bids. | **June 7, 2023, at 5:00 p.m. (prevailing Eastern Time).** |
| Lease Auction | The date and time by which the Lease Auction with respect to the Lease Sale Process, if one is needed, will be held at the offices of Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, New York, 10022. | **June 9, 2023, at 10:00 a.m. (prevailing Eastern Time)**, if needed. |
| File List of Proposed Final Lease Sales | The deadline by which the Debtors must file with the Court a list of all proposed final Lease Sales. | As soon as reasonably practicable after the conclusion of the Lease Auction (if necessary). |
| Lease Sale Objection Deadline | The deadline to object to a sale of Lease Assets on any grounds, including on account of Cure Costs. | **June 18, 2023, at 5:00 p.m., (prevailing Eastern Time).** |
| Assumption Objection Deadline | If applicable, the deadline to object to the proposed assumption and assignment and/or the Successful Bidder's proposed form of adequate assurance of future performance with respect to Lease Assets. | **June 18, 2023, at 5:00 p.m., (prevailing Eastern Time).** |
| Lease Sale Hearing | The hearing before the Court to consider approval of the Winning Bid or Winning Bids, pursuant to which the Debtors and the Successful Bidder or Successful Bidders will consummate any Lease Sales. | On or about **June 25, 2023**, or as soon thereafter as the Debtors may be heard. |

14.    The timeline contemplated by the foregoing Lease Sale Schedule is essential to maximize value for the Debtors' estates and could enable a faster emergence from chapter 11. The Debtors believe that the relief sought by this Motion appropriately balances the need to provide all parties in interest with notice and due process, afford the Debtors sufficient time to generate interest in any or all of the Lease Assets, and provide the Debtors with an expeditious process

commensurate with the Debtors' liquidity constraints.  In short, the relief sought by this Motion is the Debtors' best chance to maximize value of the Lease Assets, while simultaneously minimizing rent obligations and other occupancy-related costs with respect to the Lease Assets.  Accordingly, the Debtors believe the relief requested herein is in the best interest of the Debtors' estates, will provide interested parties with sufficient opportunity to participate in the process, and, therefore, should be approved.

### B.    <u>Key Provisions of the Lease Sale Procedures.</u>

15.    To efficiently solicit, receive, and evaluate bids in a fair and accessible manner, the Debtors have developed and proposed the Lease Sale Procedures to govern the Lease Sales.  The Lease Sale Procedures are designed to encourage all entities to put their best bids forward and to maximize the value for the Debtors' estates.  The key provisions of the Lease Sale Procedures are summarized below:[6]

(a)    **Qualified Bidders**:  Only a Qualified Bidder may participate in and make subsequent Bids at the Lease Auctions.  The Debtors shall have the right to determine, in the exercise of their business judgment in consultation with the Consultation Parties, whether a bidder is a Qualified Bidder.  A Qualified Bidder must (among other requirements set forth in the Lease Sale Procedures) (i) deliver to the Debtors by the Bid Deadline an irrevocable, good faith, and bona fide offer (a "<u>Bid</u>") to purchase all or a portion of the Lease Assets that is a Qualified Bid pursuant to the Lease Sale Procedures, as set forth on a bidder registration form, substantially in the form attached to the Lease Sale Procedures as <u>Exhibit C</u>; (ii) demonstrate the financial wherewithal to enter into the proposed transaction to the satisfaction of the Debtors; and (iii) provide, at the Debtors request, adequate assurance of future performance (which the Qualified Bidder agrees may be disseminated to affected landlords if such Qualified Bidders' Bid is determined to be a Qualified Bid), which may include, without limitation, information regarding the Qualified Bidders' financial condition such as tax returns, current financial statements, or bank accounts.  Lease Sale Procedures, § D.

(b)    **Qualified Bids**:  No bid will be a Qualified Bid unless it is made by a Qualified Bidder.  Lease Sale Procedures, § D.

---

[6]    This summary is qualified in its entirety by the Lease Sale Procedures attached as <u>Exhibit 1</u> to the Order.  To the extent there are any conflicts between this summary and the Lease Sale Procedures, the terms of the Lease Sale Procedures shall govern.

(c)     **Bids for Individual Lease Assets or Combinations of Lease Assets**: A Qualified Bid must consist of a bidder registration form, substantially in the form attached to the Lease Sale Procedures as <u>Exhibit C</u>, which must detail which of the Lease Assets up for sale the Qualified Bidder proposes to be assumed and assigned and provides for the payment of all Cure Costs related to such Lease Assets. The Lease Sale Procedures contemplate that a single bidder or group of bidders may purchase all or a portion of the Lease Assets. If a bidder or group of bidders submits an offer for a combination of assets, such bidder or group of bidders must indicate (i) if it would be willing to purchase any of such assets if not sold as a group and, if so, (ii) a schedule indicating the Bid as to any individual or sub-group of assets that such bidder would purchase. The Debtors, in consultation with the Consultation Parties, reserve the right to determine whether to auction any Lease Assets as part of a group or individually up through and including at the Lease Auctions or to conduct a Lease Auction of any Lease Asset both individually and as part of a group in order to determine which option maximizes value of the assets. Lease Sale Procedures, § D(i)(b).

(d)     **Committed Financin**g: A Qualified Bid must contain documentation acceptable to the Debtors (in the Debtors' business judgment in consultation with the Consultation Parties) evidencing that the Qualified Bidder has financial resources or committed financing sufficient to close the transaction within twenty (20) days after the Lease Auction. Lease Sale Procedures, § D(i)(d).

(e)     **Deposit**: Contemporaneous with the submission of a Qualified Bid, a Qualified Bidder shall tender an earnest money deposit of ten percent (10.0%) of the proposed purchase price. Lease Sale Procedures, § D(ii).

(f)     **Markup of Assignment and Assumption Agreement**: A Qualified Bid must include an executed form of the assignment and assumption agreement that may not deviate substantially from the terms of the form assignment and assumption agreement attached as <u>Exhibit A</u> to the Lease Sale Procedures, as well as a "redline" to the form assignment and assumption agreement; *provided* that any landlord bidding on a Lease Asset related to a property which such landlord owns shall instead provide with its Qualified Bid an executed form of the lease termination agreement that may not deviate substantially from the terms of the form lease termination agreement, substantially in the form attached hereto as <u>Exhibit B</u>, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties. Lease Sale Procedures, § D(i)(a).

(g)     **Due Diligence**: Any Qualified Bidder may request diligence from the Debtors, and the Debtors, in consultation with the Consultation Parties, may grant or deny any such request that they deem to be unreasonable. The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder. All due diligence must be completed prior to the submission of any bid. Lease Sale Procedures, § G.

(h)     **No Contingencies**: A Qualified Bid must contain no contingencies to the validity, effectiveness, and/or binding nature of the bid, including without limitation,

contingencies for due diligence and inspection or financing of any kind.  Lease Sale Procedures, § D(i)(c).

(i)    **Irrevocability**:  A Qualified Bid, if determined to be the Successful Bid or Backup Bid, will be irrevocable for a period of thirty (30) days after the conclusion of the Lease Auction.  Lease Sale Procedures, § D(i)(f).

(j)    **As-Is, Where-Is**:  All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer the assets to the Successful Bidder and the Successful Bidder shall accept the assets "AS IS, WHERE IS, WITH ALL FAULTS."  Lease Sale Procedures, § N.

(k)    **Initial Overbid**:  Any Qualified Bidder may submit successive bids in minimum increments, which will be determined by the Debtors, in consultation with the Consultation Parties, at each Lease Auction depending on the total dollar value of the Lease Assets being sold at the Lease Auction.  The minimum increments may be different with respect to each asset or group of assets being auctioned.  Lease Sale Procedures, § I(iii)(c).

(l)    **Closing**:  The closing of the sale of the Lease Assets will occur no later than twenty (20) days after the Lease Auction, unless otherwise extended by the Debtors, in consultation with the Consultation Parties.  Lease Sale Procedures, § K.

16.    Most importantly, the Lease Sale Procedures recognize the Debtors' fiduciary obligations to maximize value for the benefit of their estates, and, as such, do not impair the Debtors' ability to consider all potential bids and preserve the Debtors' right to modify the Lease Sale Procedures as necessary or appropriate to maximize value for the Debtors' estates.

**B.    Breakup Fee.**

17.    The Lease Sale Procedures contemplate that the Debtors will be authorized, but not obligated, to, in their business judgment and in consultation with the Consultation Parties, (a) select no more than one Qualified Bidder to act as a stalking horse bidder (a "Stalking Horse Bidder") in connection with any Lease Auction of any Lease Asset or group thereof and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, provide a breakup fee (the "Breakup Fee") in an amount not to exceed three percent (3%) of the proposed purchase price. The Debtors, in consultation with the Consultation Parties, may choose a Stalking Horse Bidder by May 31, 2023 and will inform the court if a Stalking Horse Bidder has been selected and any

terms thereto at the hearing to approve the Lease Sale Procedures.  The Debtors submit that the opportunity to enter into respective Stalking Horse Agreements that provide the Breakup Fee will allow the Debtors to achieve a price floor and set an amount that will encourage bidders to submit bids and participate at the Lease Auctions, thereby maximizing value for the Debtors' estates.

18.    Upon entry of a Stalking Horse Agreement, the Debtors will file and serve notice of the proposed Stalking Horse Agreement on the master service list maintained in these cases no later than two business days after execution of the Stalking Horse Agreement.  The notice will include the amount of the Breakup Fee, if any, any modifications or amendments to the Lease Sale Procedures, a summary of the Stalking Horse Agreement, a copy of the Stalking Horse Agreement, and a copy of a proposed order approving the Stalking Horse Agreement.  The Stalking Horse Bidder will be deemed to be a Qualified Bidder and the Stalking Horse Bidder's bid will be deemed a Qualified Bid.

### C.    Procedures for Unsold Property.

19.    It is possible that the Debtors will receive no bids on certain Lease Assets prior to the close of the Lease Auction or that the highest or otherwise best bid at the Lease Auction will not, in the Debtors' business judgment in consultation with the Consultation Parties, maximize the value of the Lease Asset(s) being sold.  In either case, the Debtors, in consultation with the Consultation Parties, reserve their right to not accept a bid for the sale of such Lease Asset(s) submitted at the Lease Auction and, following the Lease Auction, any interested parties may submit to A&G a bid related to any such unsold Lease Asset(s) (the "Remaining Lease Assets"). In order to avoid wasting estate resources on repetitive processes, the Debtors request that the following procedures be implemented in connection with the sale of each Remaining Lease Asset

(the "<u>Subsequent Lease Sale Procedures</u>").[7]   The Debtors propose the Subsequent Lease Sale

Procedures as an alternative to those set forth in Local Rules 6004-1, 6004-2, and 6004-3 and

submit that the requirements of such rules be waived with respect to any sale undertaken by the

Debtors pursuant to the Subsequent Lease Sale Procedures.   For the avoidance of doubt, the

Subsequent Lease Sale Procedures will only be used for the sale of Remaining Lease Assets, which

will be fully marketed as described herein.

   a.   With regard to the sales or transfers of Remaining Lease Assets in any
        individual transaction or series of related transactions to a single buyer or
        group of related buyers:

        i.    subject to the procedures set forth herein, the Debtors are authorized
              to consummate such transaction(s) without further order of the
              Court if the Debtors determine in the reasonable exercise of their
              business judgment, in consultation with the Consultation Parties,
              that such sales or transfers are in the best interests of their estates
              and the sale price is higher or otherwise better than any bid received
              at the Lease Auction, if applicable;

        ii.   the Debtors, subject to the consent of the DIP Lenders (which
              consent shall not be unreasonably conditioned, withheld, or
              delayed), are authorized, but not directed, to conduct one or more
              public auctions for any of the Remaining Lease Assets (each,
              a "<u>Subsequent Lease Auction</u>");

        iii.  the Debtors may require that a potential purchaser of Remaining
              Lease Assets provide adequate assurance of future performance
              (which such potential purchaser agrees may be disseminated to
              affected landlords), which may include, without limitation,
              information regarding such potential bidder's financial condition
              such as tax returns, current financial statements, or bank accounts;

        iv.   any such transactions shall be deemed final and fully authorized by
              the Court and free and clear of Liens, with such Liens attaching only
              to the sale proceeds with the same validity, extent, and priority as
              immediately prior to the sale or transfer;[8]

        v.    the Debtors shall cause, at least ten (10) days prior to the proposed
              closing date of such sale or effectuating such transfer, written notice

---

[7]   The Subsequent Lease Sale Procedures shall not apply to any sales or transfers of assets that involve a sale to an
      "insider" of the Debtors as such term is defined in section 101(31) of the Bankruptcy Code.

[8]   The sale of any Lease Assets free and clear of any Liens shall not apply to any sale of non-Debtor property.

of such sale or transfer substantially in the form attached as Exhibit 5 to the Order (each notice, a "Subsequent Lease Sale Notice") to be served on: (A) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (B) counsel to any official committee appointed in these Chapter 11 Cases; (C) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen and Steven Szanzer, counsel to the Prepetition ABL Agent; (D) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent; (E) the indenture trustee to the Debtors' Senior Unsecured Notes; (F) the United States Attorney's Office for the District of New Jersey; (G) the office of the attorneys general for the states in which the Debtors operate; (H) the Internal Revenue Service; (I) the United States Securities and Exchange Commission; (J) any party that has requested notice pursuant to Bankruptcy Rule 2002; (K) any Qualified Bidder who placed a bid on such property at the Lease Auction; and (L) the applicable Counterparties (collectively, the "Subsequent Lease Sale Notice Parties");

vi.    the content of the Subsequent Lease Sale Notice shall consist of: (A) an identification of the Remaining Lease Assets being sold or transferred; (B) an identification of the purchaser of the Remaining Lease Assets; (C) the purchase price to be paid for the Remaining Lease Assets; (D) the marketing or sales process, including any commissions to be paid to third parties, used to sell or auction the assets; and (E) the significant terms of the sale or transfer agreement;

vii.   in the event a sale or transfer of Remaining Lease Assets is to be made by a Subsequent Lease Auction, the Debtors shall cause, in lieu of the notice described in paragraph 20(a)(vi) hereof, a Subsequent Lease Sale Notice of the following information is to be given to the Notice Parties: (A) the time and place of such Subsequent Lease Auction; and (B) an identification of the assets to be auctioned, at least ten (10) days prior to the Lease Auction;

viii.  if, within ten (10) days after receipt of such Subsequent Lease Sale Notice by any of the Notice Parties, (A) no written objections are filed with the Court, and (B) the Debtors do not receive any competing bids for any of the Remaining Lease Assets being sold (a "Competing Bid"), the Debtors are authorized to immediately consummate such sale or transfer;

ix.    if any Notice Party files a written objection to any such sale or transfer with the Court within ten (10) days after receipt of such Subsequent Lease Sale Notice, the applicable Remaining Lease Asset shall only be sold or transferred upon either the consensual resolution of the objection by the parties or further order of the Court after notice and a hearing; and

x.    if the Debtors receive a Competing Bid, the Debtors, in consultation with the Consultation Parties, will evaluate such Competing Bid and provide another Subsequent Lease Sale Notice, in accordance with the Subsequent Lease Sale Procedures.

**III.    Summary of the Lease Sale and Lease Auction Notice Procedures.**

20.    The Debtors propose the following notice procedures to be implemented in connection with the Lease Sale Procedures.

**A.    <u>Notice of Lease Sale, Lease Auction, and Lease Sale Hearing.</u>**

21.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21 days' notice of the Lease Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time, and place of a Lease Auction and Lease Sale Hearing, and the deadline for filing any objections to the relief requested. The Debtors propose that the deadline for objecting to approval of a proposed Lease Sale be seven days prior to the Lease Sale Hearing.

22.    Within three business days of the entry of the Order or as soon thereafter as practicable, the Debtors shall cause each Lease Auction and Lease Hearing Notice to be served upon the Notice Parties (as defined herein). Each Lease Auction and Lease Hearing Notice will indicate that copies of this Motion and any future sale documents, if applicable, can be obtained on the website of the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, https://restructuring.ra.kroll.com/bbby (the "Case Website").

23.    Similarly, within three business days after entry of the Order, or as soon as practicable thereafter, the Debtors will place a publication version of each Lease Auction and Lease Hearing Notice for one day in *The New York Times* (National Edition) and post it onto the Case Website.

24.    Each Lease Auction and Lease Hearing Notice will include, among other things, the proposed date, time, and place of any Lease Auction and Lease Sale Hearing and the deadline for filing any objections to the relief requested in this motion, and will therefore, comply with

Bankruptcy Rule 2002(c).  The Debtors submit that the methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed Lease Sales of the Lease Assets.

25.    The Debtors request that such notice be deemed sufficient and proper notice of the Lease Sales with respect to known interested parties.

### B.    Lease Sale Objections.

26.    Parties objecting to approval of a proposed Lease Sale must file a written objection (each, a "Lease Sale Objection") so that such Lease Sale Objection is filed with the Court and served so as to be **actually received** by **June 18 2023, at 5:00 p.m. (prevailing Eastern Time)** and serve such Lease Sale Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

### C.    Notice of Successful Bidder.

27.    As soon as reasonably practicable after the conclusion of a Lease Auction, the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder(s) (the "Post-Auction Notice"), identifying the applicable Successful Bidder(s), Lease Asset(s), and key terms of the agreement, substantially in the form attached to the Order as Exhibit 4.

**IV.    Summary of the Assumption Procedures.**

28.    The Debtors propose the procedures set forth below for notifying counterparties (the "Counterparties") to executory contracts and unexpired leases (the "Contracts") of proposed cure amounts in the event the Debtors determine, in consultation with the Consultation Parties, to assume and assign such contracts or leases in connection with a sale, liquidation, or other disposition.

**A.    Assumption and Assignment Procedures.**

29.    On a date no later than five days prior to the Lease Sale Hearing, the Debtors shall file with the Court the Assumption and Assignment Notice attached to the Order as Exhibit 3 (the "Assumption and Assignment Notice") to assume one or more Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:  (i) the Contract or Contracts to be assumed; (ii) the names and addresses of the Counterparties to such Contracts; (iii) the identity of the proposed assignee of such Contracts (the "Assignee"), if applicable; (iv) the effective date of the assumption for each such Contract (the "Assumption Date"); (v) the proposed cure amount (the "Cure Costs"), if any for each such Contract; (vi) a description of any material amendments to the Contract made outside of the ordinary course of business; and (vii) the deadlines and procedures for filing objections to the Assumption and Assignment Notice (as set forth below).

30.    The Debtors will cause the Assumption and Assignment Notice to be served by first class mail, email, or fax upon:  (i) the Contract Counterparties affected by the Assumption and Assignment Notice at the address set forth in the notice provision of the applicable Contract (and their counsel, if known) and (ii) upon the Notice Parties.  To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will, at the request of the applicable lease counterparty, use commercially reasonable efforts to provide evidence thereof to such applicable lease counterparty (and their counsel, if known) thereby demonstrating that the assignee

of the lease has the ability to comply with the requirements of adequate assurance of future performance.

31.     Parties objecting to proposed Cure Costs or to a proposed assumption and assignment and/or to a Successful Bidder's proposed form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") so that such Assumption Objection is filed with the Court and **actually received** by **June 18 2023, at 5:00 p.m. (prevailing Eastern Time)** and serve such Assumption Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel for any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen and Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent (collectively, the "Notice Parties").  If no objection to the assumption of any Contract is timely filed, each Contract shall be assumed as of the Assumption Date set forth in the applicable Assumption and Assignment Procedures or such other date as the Debtors and the counterparty or Counterparties to such Contract(s) agree and the proposed cure amount shall be binding on all Counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes; *provided*, *however* that the Assumption Date for a lease of non-residential real property shall not occur earlier than the date the Debtors filed and served the applicable Assumption and Assignment Notice.

32.     If the Assumed Contract Counterparty does not file and serve an Assumption Objection or supplemental Assumption Objection in a manner that is consistent with the requirements set forth herein, and absent a subsequent order of the Court in connection with such objection establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or any other document, and (b) the Assumed Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assumed Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Assumed Contract against the Debtors or the Successful Bidder, or the property of any of them.

33.     The inclusion of an Assumed Contract on the Notice of Assumption and Assignment will not:  (a) obligate the Debtors to assume any Assumed Contract listed thereon or the Successful Bidder to take assignment of such Assumed Contract;  or (b) constitute any admission or agreement of the Debtors that such Assumed Contract is an executory contract.  Only those Assumed Contracts that are included on a schedule of assumed and acquired contracts attached to a final assignment and assumption agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such assignment and assumption agreement) will be assumed and assigned to the applicable Successful Bidder.  No Assumed Contract shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder.

34.     With regard to Contracts to be assigned, pursuant to section 363(f) of the Bankruptcy Code, the assignment of any Contract shall:  (a) be free and clear of (i) all liens (and any liens shall attach to the proceeds in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether

arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims, and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Contract(s) (but only in connection with the assignment by the Debtor to the Assignee)), and (b) constitutes a legal, valid, and effective transfer of such Contract(s) and vests the applicable Assignee with all rights, titles, and interests to the applicable Contract(s).  For the avoidance of doubt, all provisions of the applicable assigned Contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such Contract by the Debtors to the Assignee.

### Basis for Relief

## I.   The Lease Sale Procedures are Fair, Designed to Maximize the Value Received for the Lease Assets, and an Exercise of the Debtors' Business Judgment.

35.   Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in disposing of an estate's assets.  *See, e.g.*, *In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3–4 (Bankr. W.D. Mo. 2010) (holding that section 363 of the Bankruptcy Code permits the debtor to sell their assets if a sound business purpose exists); *In re Channel One Commc'ns, Inc.*, 117 BR 493 (Bankr. E.D. Mo. 1990) (same); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification.'") (citations omitted); *see also In re Farmland Indus., Inc.*, 294 B.R 855, 881 (Bankr. W.D. Mo. 2003) (holding that courts in this district are reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code"); *In re Integrated Res.,*

*Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

36.    The paramount goal in any proposed disposition of property of the estate is to maximize the proceeds received by the estate.  *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (citations omitted).

37.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions.  *See, e.g.*, *In re Integrated Res., Inc.*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

38.    The Debtors believe that the Lease Sale Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offer available for the Lease Assets offered for sale.  The Lease Sale Procedures will allow the Debtors to conduct the Lease Sales in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Lease Assets and who can demonstrate the

ability to close the transaction. In particular, the Lease Sale Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

39.     At the same time, the Lease Sale Procedures provide the Debtors with a robust, final opportunity to consider competing bids and select the highest or otherwise best offer related to the Lease Sales, while preserving the Debtors' right to not sell any particular Lease Asset that the Debtors, in consultation with the Consultation Parties, do not believe would maximize the value of the asset on the terms received at a Lease Auction. As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair and reasonable in light of the circumstances and at or above market-value.

40.     The Debtors submit that the Lease Sale Procedures will encourage competitive bidding and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Accordingly, for all of the foregoing reasons, the Debtors believe that the Lease Sale Procedures: (a) will encourage robust bidding for the Lease Assets; (b) are consistent with other procedures previously approved by courts in this and other districts; and (c) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings and should be approved.

## II.     The Breakup Fee Has a Sound Business Purpose and Should be Approved.

41.     The Debtors are also seeking authority, but not direction, to offer customary Breakup Fees to potential Stalking Horse Bidders. The use of a stalking horse in a public auction process for dispositions pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Official Comm. of Unsecured Creditors v. Interforum*

*Holding LLC*, 2011 WL 2671254, *1 (E.D. Wis. July 7, 2011); *see also AgriProcessors, Inc. v. Fokkena (In re Tama Beef Packing, Inc.)*, 321 B.R. 496, 497–98 (B.A.P. 8th Cir. 2005).  As a result, stalking horse bidders often require breakup fees as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Interforum Holding*, 2011 WL 2671254, at *1 (citations omitted).  Thus, the use of breakup fees has become an established practice in chapter 11 cases.

42.    Indeed, breakup fees are a normal and, in many cases, necessary, component of significant dispositions conducted under section 363 of the Bankruptcy Code.  "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value." *In re Integrated Res., Inc.*, 147 B.R. 650, 659–60 (S.D.N.Y. 1992) (emphasis added).  Specifically, breakup fees may be necessary to convince a white knight bidder to enter the bidding by providing some form of compensation for the risks that it is undertaking. *Id.* at 660–61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence.").

43.    The Debtors believe that the ability to offer the Breakup Fee should they, in consultation with the Consultation Parties, deem it necessary and appropriate, is in the best interests of the Debtors' estates and their creditors, as the Stalking Horse Bidder will establish a floor for further bidding that may increase the consideration for the Lease Sales.  If a Breakup Fee is paid, it likely will be because the Debtors received higher or otherwise superior Qualified Bids for a Lease Asset or group thereof.  In short, the proposed Breakup Fee is fair and reasonable under

the circumstances because they constitute a "fair and reasonable percentage of the proposed

purchase price" and are "reasonably related to the risk, effort, and expenses of the prospective

purchaser." *In re Integrated Res., Inc.*, 147 B.R. at 662 (approving a breakup fee of 1.6 percent of

the proposed purchase price); *see also Tama Beef*, 321 B.R. at 498 (noting that breakup fees are

"usually limited to one to four percent of the purchase price").

44.     Similar breakup fees have been approved by this Court in other complex chapter 11

cases. *See, e.g.*, *In re Alliant Techs., L.L.C.*, No. 21-19748 (JKS) (Bankr. D.N.J. Jan. 21, 2022)

[Docket No. 101] (approving bidding procedures and bidding protections including an expense

reimbursement payable to the stalking horse bidder); *In re RTW Retailwinds, Inc.*, No. 20-18445

(JKS) (Bankr. D.N.J. Aug. 8, 2020) [Docket No. 192] (approving bidding procedures and bidding

protections including a break-up fee payable to the stalking horse bidder); *In re SLT Holdco, Inc.*,

No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) [Docket No. 72] (same); *In re New England

Motor Freight, Inc.*, No. 19-12809 (JKS) (Bankr. D.N.J. April 8, 2019) [Docket No. 427] (same);

*In re Aceto Corp.*, No. 19-13448 (VFP) (Bankr. D.N.J. Mar. 19, 2019) [Docket No. 174] (same).

Accordingly, the Debtors should be granted the authority, but not direction, to offer the Breakup

Fee.

**III.     The Lease Sales Should Be Approved as an Exercise of Sound Business Judgment.**

45.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and

a hearing, may use, sell or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  A sale of a debtor's assets should be authorized pursuant to section

363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction.  *See,

e.g., In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) ("Under Section 363, the debtor in possession

can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also

In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *Comm, of Equity Sec. Holders v. Lionel*

*Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc's, Inc.*,

179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

46.     Once the Debtors articulate a valid business justification, "[t]he business judgment

rule 'is a presumption that in making the business decision the directors of a corporation acted on

an informed basis, in good faith, and in the honest belief that the action was in the best interests of

the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted);

*In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr.

29, 2014) ("If a valid business justification exists, then a strong presumption follows that the

agreement at issue was negotiated in good faith and is in the best interests of the estate.") (citations

omitted); *Integrated Res*., 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16

(Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management

decisions").

### A.     A Sound Business Purpose Exists for the Lease Sales.

47.     As set forth above, the Debtors have a sound business justification for the Lease

Sales.  First, the Debtors believe the Lease Sales will maximize the Lease Assets' value through a

competitive marketing process.  The Lease Sales will be subject to competing bids, enhancing the

Debtors' ability to receive the highest or otherwise best value for the Lease Assets.  Consequently,

the ultimately successful bid or bids, after being subject to a further "market check" in the form of

the Auction, will constitute, in the Debtors' business judgment, the highest or otherwise best offer

for the Lease Assets and will provide a greater recovery for their estates than any known or

practicably available alternative.  *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001

WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not

require an auction procedure . . . the auction procedure has developed over the years as an effective

means for producing an arm's length fair value transaction."); *see also In re Wintz Cos.*, 219 F.3d

807, 813 (8th Cir. 2000) (holding that an auction procedure for the disposition of the debtor's

property can be structured to "maximize the value of estate property"). Further, the Debtors, in consultation with the Consultation Parties, are reserving their rights to not enter into a Lease Sale if the Debtors, in consultation with the Consultation Parties, believe in their business judgment that entry into any such sale will not maximize the value of the Lease Asset(s) being considered.

48.    Thus, the Debtors submit that a Successful Bidder's bid, which may include a Stalking Horse Agreement, will constitute the highest or otherwise best offer for the applicable Lease Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. As such, the Debtors' determination, in consultation with the Consultation Parties, to sell the Lease Assets through a Lease Auction process and to enter into the Stalking Horse Agreement will be a valid and sound exercise of the Debtors' business judgment. The Debtors will submit evidence at the applicable Lease Sale Hearing to support these conclusions. Therefore, the Debtors request that the Court make a finding that the proposed Lease Sales are a proper exercise of the Debtors' business judgment and are rightly authorized.

**B.     The Debtors Will Provide Adequate and Reasonable Notice of the Lease Sales.**

49.    As described above, each Lease Auction and Lease Hearing Notice: (a) will be served in a manner that provides adequate notice of the date, time, and location of the Lease Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Lease Sales or the assumption and assignment of the Assumed Contracts; and (c) otherwise includes all information relevant to parties interested in or affected by the Lease Sales. Significantly, the form and manner of each Lease Auction and Lease Hearing Notice will have been approved by the Court pursuant to the Order after notice and a hearing before it is served on parties in interest.

**C.     The Lease Sales and Purchase Prices Will Reflect a Fair Market Value Sale.**

50.    It is well settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*,

526 U.S. 434, 457 (1999) (explaining that the "best way to determine value is exposure to a market"); *see also In re Wintz Cos.*, 219 F.3d 807, 813 (8th Cir. 2000) (holding that an auction procedure for the disposition of the debtor's property can be structured to "maximize the value of estate property"). The process proposed here will allow the market to set a value for any Lease Sale(s).

**D.**     **The Lease Sales Will Be Proposed in Good Faith and Without Collusion, and Any Successful Bidder Will Be a Good-Faith Purchaser.**

51.     The Debtors shall demonstrate at the Lease Sale Hearing that any Lease Sale is being proposed in good faith and will be the product of good-faith, arms'-length negotiations between the Debtors, on the one hand, and any Successful Bidder, on the other. Before proceeding with any Lease Sale, the Debtors will ensure that any Successful Bidder confirms that the Lease Sale is not be the product of collusion or bad faith. The Debtors shall demonstrate at the Lease Sale Hearing that no evidence exists to suggest that any Lease Sale will be anything but the product of arms'-length negotiations between the Debtors and any Successful Bidder, conducted under the purview of a Lease Auction.

52.     The Debtors will therefore request that the Court find that the Successful Bidder will be entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Lease Sale(s).

53.     Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

54.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Paulson*, 276 F.3d 389, 392 (8th Cir. 2002); *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same). The Debtors submit that any Successful Bidder will be deemed a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and any Stalking Horse Agreement, or any marked versions thereof, is a good-faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.[9]

55.     First, as set forth in more detail above, the consideration to be received by the Debtors pursuant to the Lease Sales will be substantial, fair, and reasonable. Second, any sale agreement with a Successful Bidder will be the culmination of a competitive Lease Auction in which the parties will presumably be represented by counsel and all negotiations will be conducted

---

[9]     The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code is appropriate for any Successful Bidder. Pursuant to the Lease Sale Procedures, a Successful Bidder will have had to present a proposal in accordance with the Lease Sale Procedures. In addition, the Debtors will not choose as the Successful Bidder or Backup Bidder (as defined in the Lease Sale Procedures) any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

on an arm's-length, good-faith basis.  Third, there will be no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Lease Sales to be avoided under section 363(n) of the Bankruptcy Code.  *In re Abbotts Dairies of Pa., Inc., supra.*  And, with respect to potential bidders, the Lease Sale Procedures are designed to ensure that no party is able to exert undue influence over the process.  Fourth, any Successful Bidder's offer will have been evaluated and approved by the Debtors in consultation with their advisors and the Consultation Parties.  Accordingly, the Debtors believe that any Successful Bidder and Stalking Horse Agreement (or marked version thereof) should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

### E.    <u>The Lease Sales Should be Approved "Free and Clear" Under Section 363(f).</u>

56.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f).

57.    Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Debtors' Lease Assets free and clear of all liens, claims, rights, interests, charges, or encumbrances ("<u>Interests</u>"), except with respect to any Interests that may be assumed liabilities under a Successful Bidder's assignment and assumption agreement.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

58.    Because the Debtors expect that, in addition to potentially satisfying the other requirements set forth in section 363(f) of the Bankruptcy Code, either the holder of the applicable Interest will consent and/or such applicable holder could be compelled in a legal or equitable proceedings to accept a monetary satisfaction of its Interest, approving the Lease Sales free and clear of all adverse interests is warranted.  Moreover, the Debtors submit that any such Interests will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sales, subject to any claims and defenses the Debtors may possess with respect thereto.  The Debtors accordingly request authority to convey the Lease Assets free and clear of all Interests, with any such interests to attach to the proceeds of the Lease Sales.[10]

### IV.    The Form and Manner of Each Lease Auction and Lease Hearing Notice Should Be Approved.

59.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Lease Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Lease Auction and the Lease Sale Hearing and the deadline for filing any objections to the relief requested herein.

60.    As noted above, within three days of entry of the Order or as soon as reasonably practicable thereafter, the Debtors will serve each Lease Auction and Lease Hearing Notice upon the Notice Parties, and also publish an abbreviated version of each Auction and Hearing Notice in *The New York Times* (National Edition) and the Case Website.

61.    The Debtors submit that notice of this Motion and the related hearing to consider entry of the Order, coupled with service of each Lease Auction and Lease Hearing Notice, and the Assumption and Assignment Procedures as provided for herein, constitutes good and adequate notice of the Lease Sales and the proceedings with respect thereto in compliance with, and

---

[10]    The Debtors do not seek authority to sell any non-Debtor property free and clear pursuant to section 363(f) of the Bankruptcy Code, but rather will assign such interests consistent with their underlying property documents.

satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, the Debtors request that the Court approve the form and manner of each Lease Auction and Lease Hearing Notice.

## V.    The Assumption Procedures Are Appropriate and Should Be Approved.

62.    As set forth above, the Lease Sales contemplate the assumption and assignment of Assumed Contracts to any Successful Bidder.  In connection with this process, the Debtors believe it is necessary to establish a process by which:  (a) the Debtors and Assumed Contract Counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such Counterparties can object to the assumption and assignment of the Assumed Contracts and/or related cure amounts.

63.    As set forth in the Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any Assumed Contract be deemed to consent to the assumption and assignment of the applicable Assumed Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Order, along with the Cure Costs identified in the Notice of Assumption and Assignment.  *See, e.g., In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

64.    The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice to the Counterparties, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.  Accordingly, the Debtors request the Court approve the Assumption and Assignment Procedures set forth in the Order.

## VI.   The Assumption and Assignment of the Contracts Should Be Approved.

### A.   The Assumption and Assignment of the Contracts Reflects the Debtors' Business Judgment.

65.   To facilitate and effectuate the Lease Sales, the Debtors are seeking authority to assign or transfer the Assumed Contracts to a Successful Bidder to the extent required by such Successful Bidder.

66.   Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g., Grp. of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 318 U.S. 523 (1943) (applying Bankruptcy Act section 77(b), predecessor to Bankruptcy Code section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code."); *In re Spirit Holding Co., Inc.*, 166 B.R. 371, 378 (Bankr. E.D. Mo. 1994) (providing that the standard for approving the assumption of an executory contract is to determine if the debtor "exercise[d] wise business judgment").

67.   Here, the Court should approve the decision to assume and assign the Assumed Contracts in connection with the Lease Sales as a sound exercise of the Debtors' business judgment.  First, the Assumed Contracts are essential to inducing the best offer for some or all of the Lease Assets.  Second, the Assumed Contracts will be assumed and assigned through the

process approved by the Court pursuant to the Order and, thus, will be reviewed by key constituents in these Chapter 11 Cases.

68.    Accordingly, the Debtors submit that the assumption and assignment of the Assumed Contracts by way of the Assumption and Assignment Procedures should be approved as an exercise of their business judgment.

## B.    Assumption and Assignment of the Unexpired Leases Satisfies the Requirements of the Bankruptcy Code.

69.    Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain."  *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

## C.    Defaults Under the Assumed Contracts Will Be Cured in Connection with the Lease Sales.

70.    The Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied because any Assumption and Assignment Agreement requires the cure of all defaults associated with, or that are required to properly assume, the Assumed Contracts.  Because the Assumption and Assignment Procedures provide a clear process by which to resolve disputes over cure amounts or other defaults, the Debtors are confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of non-Debtor parties.

### D.    Non-Debtor Parties Will Be Adequately Assured of Future Performance.

71.    Similarly, the Debtors submit that the third requirement of section 365(b) of the

Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts

and circumstances present here.  "The phrase 'adequate assurance of future performance' adopted

from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic

construction based upon the facts and circumstances of each case."  *In re U.L. Radio Corp.*,

19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982); *see In re Alipat, Inc.*, 36 B.R. 274, 277 (Bankr. E.D.

Mo. 1984).  Although no single solution will satisfy every case, "the required assurance will fall

considerably short of an absolute guarantee of performance."  *In re Prime Motor Inns, Inc.*, 166

B.R. 993, 997 (Bankr. S.D. Fla. 1994).  Among other things, adequate assurance may be given by

demonstrating the assignee's financial health and experience in managing the type of enterprise or

property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate

assurance of future performance present where a prospective assignee has financial resources and

has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood

of succeeding).

72.    The Debtors submit that the information required for any bidder to become a

Qualified Bidder satisfies any adequate assurance inquiry.  Further, the Lease Sale Procedures

provide that the Debtors may disseminate certain information of a Qualified Bidder to affected

landlords to satisfy the requirement of providing adequate assurance of future performance.

### VII.    Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.

73.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease

of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless

the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Additionally, Bankruptcy Rule 6006(d)

provides that an "order authorizing the trustee to assign an executory contract or unexpired

lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6006(d).  The Debtors request that any order approving a
Lease Sale (a "Lease Sale Order") be effective immediately upon its entry by providing that the
fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.  Absent a waiver of
such stays, the Debtors may be forced to incur additional rent and occupancy-related costs with
respect to certain Lease Assets during the fourteen-day stay periods, which costs would otherwise
be borne by a Successful Bidder if the Debtors were otherwise permitted to immediately close
upon entry of a Lease Sale Order.

74.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time
for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee
Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d)
and the Advisory Committee Notes are silent as to when a court should "order otherwise" and
eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that
the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately
"where there has been no objection to procedure."  10 Collier on Bankr. ¶ 6004.10 (15th rev. ed.
2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the
court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to
file such appeal.  *Id*.

75.    To maximize the value received for the Lease Assets, the Debtors seek to close the
Lease Sales as soon as possible after the Lease Sale Hearing.  Accordingly, the Debtors hereby
request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Waiver of Memorandum of Law

76.    The Debtors respectfully request that the Court waive the requirement to file a
separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon
which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

77.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

78.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

79.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured

Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; (m) the Counterparties; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: May 3, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:     msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:     josuha.sussberg@kirkland.com
           emily.geier@kirkland.com
           derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## ORDER (I) ESTABLISHING PROCEDURES TO SELL CERTAIN LEASES, (II) APPROVING THE SALE OF CERTAIN LEASES AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through fifteen (15), is

**ORDERED**.

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

Upon the *Debtors' Motion for Entry of an Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the proposed auction and sale procedures, attached hereto as **Exhibit 1** (the "Lease Sale Procedures"), by which the Debtors, in consultation with the Consultation Parties, will solicit and select the highest or otherwise best offer(s) for the sales or transfers (the "Lease Sales") of certain unexpired leases (the "Lease Assets"), including with any related ancillary agreement(s) thereto or through the sale of designation rights related thereto; (b) approving the form and manner of notice of each Lease Auction and Lease Sale Hearing attached hereto as **Exhibit 2** (the "Lease Auction and Lease Hearing Notice"); (c) approving the procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), including the notice of proposed cure amounts, attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"); (d) scheduling an auction or auctions to sell the assets detailed in the Lease Sale Procedures (each, an "Lease Auction") and hearings to approve one or more Sales (the "Sale Hearing"); (e) approving procedures for selling certain real property and leases not sold at a Lease Auction; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or Sales Procedures, as applicable.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

*Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED** on a final basis as set forth herein.

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to this Court at the hearing on the Motion or by stipulation filed with this Court, are overruled.

**I.    Important Dates and Deadlines.**

3.    The following dates and deadlines are hereby approved (and may be adjourned from time to time by the Debtors in consultation with the Consultation Parties):

4.    **Stalking Horse Deadline**:    **May 31, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline by which the Debtors, in consultation with the Consultation Parties, may choose a Stalking Horse Bidder.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

5.    **Bid Deadline**:  **June 6, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline by which all binding Bids must be actually received pursuant to the Lease Sale Procedures.

6.    **Notice of Qualified Bid Deadline**:  **June 7, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the date and time by which the Debtors shall notify the Bidders for Lease Assets whether their Bids are Qualified Bids.

7.    **Lease Auction**:  **June 9, 2023, at 10:00 a.m. (prevailing Eastern Time)**, is the date and time by which the Lease Auction, if needed, will be held at the offices of Kirkland & Ellis LLP, located at:  601 Lexington Avenue, New York, New York 10022.  The Debtors shall send written notice of the date, time, and place of such Auction to the Qualified Bidders no later than two business days before such Lease Auction, and file a notice of the date, time, and place of the Lease Auction with the Court no later than two business days before such Lease Auction and post such notice on the Debtors' Case Website:  https://restructuring.ra.kroll.com/bbby.  The Debtors, in consultation with the Consultation Parties, may modify the date, time, and place of the Lease Auction by providing written notice to Qualified Bidders and filing a notice with the Court so long as such notice is no later than two days before such Lease Auction.

8.    **File List of Proposed Final Lease Sale(s)**:  **As soon as reasonably practicable after the conclusion of the Lease Auction (if necessary)**, as the deadline by which the Debtors must file with the Court a list of all proposed final Lease Sales.

9.    **Lease Sale Objection Deadline**:  if applicable, **June 18, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline to object to any Lease Sale.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

10.     **Assumption Objection Deadline**:  **if applicable, June 18, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline to object to the proposed assumption and assignment and/or to the Successful Bidder's proposed form of adequate assurance of future performance with respect to Lease Assets.

11.     **Lease Sale Hearing**:  **June 25, 2023**, as the date by which the Debtors shall seek approval from this Court to designate the Successful Bidders in connection with any Lease Sales.

**II.     Lease Auctions and Lease Sales Procedures.**

12.     The Lease Sale Procedures, attached as **Exhibit 1** hereto, are incorporated herein and are hereby approved in their entirety, and the Lease Sale Procedures shall govern the submission, receipt, and analysis of all bids related to any Lease Sales.  Any party desiring to submit a bid shall comply with the Lease Sale Procedures and this Order.  The Debtors, in consultation with the Consultation Parties, are authorized to take any and all actions necessary to implement the Lease Sale Procedures.

13.     If the Debtors do not receive a Qualified Bid as to a particular Lease Asset by the applicable Bid Deadline, the Lease Auction shall be cancelled as to such asset.  If the Debtors receive one or more Qualified Bids, the Debtors will conduct a Lease Auction in accordance with the Lease Sale Procedures.

14.     At any Lease Auction, each Qualified Bidder will be entitled, but will not be obligated, to submit overbids and, to the extent a Qualified Bidder has a valid and perfected lien on the Lease Assets included in its bid, will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims within the meaning of section 363(k) of the Bankruptcy Code.

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

15.    At or following any Lease Auction, the Debtors, in consultation with the Consultation Parties, may:  (a) select, in their business judgment, pursuant to the Lease Sale Procedures, (i) the highest or otherwise best bid as the Successful Bidder and (ii) the second highest or otherwise second best bid as the Backup Bidder; and (b) reject any bid (regardless of whether such bid is a Qualified Bid) that, in the Debtors' business judgment, is (i) inadequate, insufficient, or not the highest or best bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Lease Sale Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest.  For the avoidance of doubt, the Debtors are not required to name a Successful Bidder for any given Lease Asset or group thereof and may elect, in consultation with the Consultation Parties, to not sell such asset to the highest or otherwise best bidder.

16.    The Breakup Fee is approved on the terms set forth in the Lease Sale Procedures and the Debtors are authorized, but not directed, to incur and pay the Breakup Fee in an exercise of their business judgment, in consultation with the Consultation Parties, without further action or order by this Court; *provided*, *that*, for the avoidance of doubt, the amount of the Breakup Fee shall not exceed three percent (3%) of any proposed Stalking Horse Bidder Purchase Price.

**III.    Lease Auction and Lease Hearing Notice.**

17.    The Lease Auction and Lease Hearing Notice, substantially in the form attached hereto as **Exhibit 2**, is approved.  Within three business days of the entry of this Order, or as soon thereafter as reasonably practicable, the Debtors shall cause each Lease Auction and Lease Hearing Notice to be served upon the Notice Parties.  Each Lease Auction and Lease Hearing Notice will

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

indicate that copies of this Motion and any future sale documents, if applicable, can be obtained on the Case Website.

18.    Within three business days after entry of this Order, or as soon as practicable thereafter, the Debtors shall place a publication version of each Lease Auction and Lease Hearing Notice for one day in *The New York Times* (National Edition) and post it onto the Case Website. Such notice shall be deemed sufficient and proper notice of the Lease Sales with respect to known interested parties.

19.    Parties objecting to approval of any proposed Lease Sale must file a written objection (each, a "Lease Sale Objection") so that such Lease Sale Objection is filed with the Court and served so as to be **actually received** by **June 18 2023, at 5:00 p.m. (prevailing Eastern Time)** and serve such Sale Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn:  Adam Shpeen and Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

## IV.   Assumption and Assignment Procedures.

20.   The Assumption and Assignment Procedures below are hereby approved and shall be the procedures by which the Debtors will notify counterparties (the "Assumed Contract Counterparties") to executory contracts and unexpired leases (the "Contracts") of proposed cure amounts in the event the Debtors determine, in consultation with the Consultation Parties, to assume and assign such Contracts in connection with a sale, liquidation, or other disposition.

21.   On a date no later than five days prior to the applicable Lease Sale Hearing, the Debtors shall file with the Court a notice in the form included in the Assumption and Assignment Procedures attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice") to assume one or more Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:  (i) the Contract or Contracts to be assumed; (ii) the names and addresses of the counterparties to such Contracts; (iii) the identity of the proposed assignee of such Contracts (the "Assignee"), if applicable; (iv) the effective date of the assumption for each such Contract (the "Assumption Date"); (v) the proposed cure amount (the "Cure Costs"), if any for each such Contract; (vi) a description of any material amendments to the Contract made outside of the ordinary course of business; and (vii) the deadlines and procedures for filing objections to the Assumption and Assignment Notice (as set forth below).

22.   The Debtors will cause the Assumption and Assignment Notice to be served by first class mail, email, or fax upon:  (i) the Counterparties affected by the Assumption and Assignment Notice at the address set forth in the notice provision of the applicable Contract (and their counsel, if known) and (ii)  the Notice Parties.  To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will, at the request of the applicable lease

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

counterparty, use commercially reasonable efforts to provide evidence thereof to such applicable lease counterparty (and their counsel, if known) thereby demonstrating that the assignee of the lease has the ability to comply with the requirements of adequate assurance of future performance.

23.     Parties objecting to the proposed Cure Costs or a proposed assumption and assignment and/or to a Successful Bidder's proposed form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") so that such Assumption Objection is filed with the Court and **actually received** by **June 18 2023, at 5:00 p.m. (prevailing Eastern Time)** and serve such Assumption Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen and Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

24.     If no objection to the assumption of any Contract is timely filed, each Contract shall be assumed as of the Assumption Date set forth in the applicable Assumption and Assignment Procedures or such other date as the Debtors and the counterparty or counterparties to such Contract(s) agree and the proposed cure amount shall be binding on all counterparties to such

(Page | 10)

| Debtors: | BED BATH & BEYOND INC., *et al*. |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

Contract and no amount in excess thereof shall be paid for cure purposes; *provided*, *however* that the Assumption Date for a lease of non-residential real property shall not occur earlier than the date the Debtors filed and served the applicable Assumption and Assignment Notice.

25. If the Assumed Contract Counterparty does not file and serve an Assumption Objection or supplemental Assumption Objection in a manner that is consistent with the requirements set forth herein, and absent a subsequent order of the Court in connection with such objection establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Assumption and Assignment Notice (or Supplemental Assumption and Assignment Notice) shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or any other document, and (b) the Assumed Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assumed Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Assumed Contract against the Debtors or the applicable Successful Bidder, or the property of any of them.

26. The inclusion of an Assumed Contract on the Assumption and Assignment Notice will not:  (a) obligate the Debtors to assume any Assumed Contract listed thereon or a Successful Bidder to take assignment of such Assumed Contract; or (b) constitute any admission or agreement of the Debtors that such Assumed Contract is an executory contract.  Only those Assumed Contracts that are included on a schedule of assumed and acquired contracts attached to a final assignment and assumption agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such assignment and assumption agreement) will be assumed and assigned to the applicable Successful Bidder.  No Assumed Contract shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder.

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

27.     For the avoidance of doubt, all provisions of the applicable assigned Contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such Contract by the Debtors to the Assignee.

## V.     Procedures for Unsold Property.

28.     If the Debtors receive no bids on certain properties prior to the close of the Lease Auction or the highest or otherwise best bid at such Lease Auction will not (in the Debtors' business judgment and in consultation with the Consultation Parties) maximize the value of the Lease Asset(s) being sold, the Debtors shall follow the following procedures (the "Subsequent Lease Sale Procedures") to sell the unsold Lease Assets (the "Remaining Lease Assets"):

    a.     With regard to the sales or transfers of Remaining Lease Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers:

        i.     subject to the procedures set forth herein, the Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment, in consultation with the Consultation Parties, that such sales or transfers are in the best interests of their estates and the sale price is higher or otherwise better than any bid received at the Lease Auction, if applicable;

        ii.     the Debtors, subject to the consent of the DIP Lenders (which consent shall not be unreasonably conditioned, withheld, or delayed), but not directed, to conduct one or more public auctions for any of the Remaining Lease Assets (each, a "Subsequent Lease Auction");

        iii.     the Debtors may require that a potential purchaser of Remaining Lease Assets provide adequate assurance of future performance (which such potential purchaser agrees may be disseminated to affected landlords), which may include, without limitation, information regarding such potential bidder's financial condition such as tax returns, current financial statements, or bank accounts;

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

iv.    any such transactions shall be deemed final and fully authorized by the Court and free and clear of Liens, with such Liens attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale or transfer;[2]

v.    the Debtors shall cause, at least ten (10) days prior to the proposed closing date of such sale or effectuating such transfer, written notice of such sale or transfer substantially in the form attached as **Exhibit 5** to this Order (each notice, a "Subsequent Lease Sale Notice") to be served on: (A) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (B) counsel to any official committee appointed in these Chapter 11 Cases; (C) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen and Steven Szanzer, in their capacity as counsel to the Prepetition ABL Agent; (D) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, in their capacity as counsel to the DIP Agent; (E) the indenture trustee to the Debtors' Senior Unsecured Notes; (F) the United States Attorney's Office for the District of New Jersey; (G) the office of the attorneys general for the states in which the Debtors operate; (H) the Internal Revenue Service; (I) the United States Securities and Exchange Commission; (J) any party that has requested notice pursuant to Bankruptcy Rule 2002; (K) any Qualified Bidder who placed a bid on such property at the Lease Auction; and (L) the applicable Lease counterparties (collectively, the "Subsequent Lease Sale Notice Parties");

vi.    the content of the Subsequent Lease Sale Notice shall consist of: (A) an identification of the Remaining Lease Assets being sold or transferred; (B) an identification of the purchaser of the assets; (C) the purchase price to be paid for the Remaining Lease Assets; (D) the marketing or sales process, including any commissions to be paid to third parties, used to sell or auction the assets; and (E) the significant terms of the sale or transfer agreement;

vii.    in the event a sale or transfer of Remaining Lease Assets is to be made by a Subsequent Lease Auction, the Debtors shall cause, in lieu of the notice described in paragraph 28(a)(vi) hereof, a Subsequent Lease Sale Notice of the following information is to be given to the Notice Parties: (A) the time and place of such

---

[2]    The sale of any Lease Assets free and clear of any Liens shall not apply to any sale of non-Debtor property.

(Page | 13)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

Subsequent Lease Auction; and (B) an identification of the assets to be auctioned, at least ten (10) days prior to the Lease Auction;

viii. if, within ten (10) days after receipt of such Subsequent Lease Sale Notice by any of the Notice Parties, (A) no written objections are filed with the Court, and (B) the Debtors do not receive any competing bids for any of the Remaining Lease Assets being sold (a "Competing Bid"), the Debtors are authorized to immediately consummate such sale or transfer;

ix. if any Subsequent Lease Sale Notice Party files a written objection to any such sale or transfer with the Court within ten (10) days after receipt of such Subsequent Lease Sale Notice, the applicable Remaining Lease Asset(s) shall only be sold or transferred upon either the consensual resolution of the objection by the parties or further order of the Court after notice and a hearing; and

x. if the Debtors receive a Competing Bid, the Debtors, in consultation with the Consultation Parties, will evaluate such Competing Bid and provide another Subsequent Lease Sale Notice, in accordance with the Subsequent Lease Sale Procedures.

## VI. Miscellaneous.

29. The failure to include or reference a particular provision of the Lease Sale Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Lease Sale Procedures.

30. The Debtors are authorized to establish an escrow account (the "Escrow Account") to accept deposits from Qualified Bidders and may pay any reasonable fees related to such account. Any deposits made by Qualified Bidders into the Escrow Account shall not be property of the Debtors' estates.

31. Notwithstanding anything to the contrary contained in the Motion, this Order, or the Lease Sale Procedures, any Lease Sales effected pursuant hereto or thereto, and any relief or authorization granted herein shall not be inconsistent with, and shall be subject to and in

(Page | 14)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

compliance with, the requirements imposed on the Debtors under the terms of any interim and final orders entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 25] (the "DIP Motion" and such orders in respect thereto, the "DIP Orders") or the DIP Credit Agreement (as defined in the DIP Motion) and any rights, terms, or conditions set forth therein.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

32.     In the event of any inconsistencies between this Order and the Motion, this Order shall govern.  In the event of any inconsistencies between this Order and the Lease Sale Procedures, the Lease Sale Procedures shall govern.

33.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion or otherwise deemed waived.

34.     The Debtors, in consultation with the Consultation Parties, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

35.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

36.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

(Page | 15)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief |

by such notice, including with respect to any Lease Sale entered pursuant to the Subsequent Lease

Sale Procedures.

37.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

38.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

**Proposed Lease Sale Procedures**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## LEASE SALE PROCEDURES FOR THE SALE OF CERTAIN LEASE ASSETS

On [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "Lease Sale

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

Procedures Order")[2] by which the Court approved the following procedures.  These Lease Sale Procedures set forth the process by which the Debtors are authorized to conduct one or more auctions (each, a "Lease Auction") for the sale or transfer (the "Lease Sales") of certain unexpired leases (collectively, the "Lease Assets"), including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto.

### A.    Lease Assets.

The Debtors are seeking to sell all of their Lease Assets, or any portion thereof, pursuant to these Lease Sale Procedures.  These Lease Assets include, but are not limited to, approximately 475 unexpired non-residential leases, free and clear of all liens, claims, interests, or other encumbrances.

### B.    Solicitation Process; Distribution of Lease Sale Procedures.

For any sale of Lease Assets in these chapter 11 cases (these "Chapter 11 Cases") subject to a Lease Sale Process, the above-captioned debtors and debtors in possession (the "Debtors"), A&G Realty Partners, LLC ("A&G"), or any such other agent of the Debtors shall, at the Debtors' direction, distribute these Lease Sale Procedures to any potential interested bidders.  The Debtors, in consultation with the Consultation Parties,[3] may elect to exclude any Lease Asset from these Lease Sale Procedures and sell such Lease Asset at either a private or public sale, subject to Bankruptcy Court approval of any alternative sale method.  Furthermore, the Debtors, in consultation with the Consultation Parties, may determine whether to proceed with a sale of any Lease Asset.

### C.    Eligibility of Bidders to Participate in a Lease Auction.

In order to be eligible to bid for the sale of any Lease Asset in these Chapter 11 Cases subject to a Lease Sale Process or otherwise participate in a Lease Auction (as defined below), each bidder must be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bidder (as defined below).

### D.    Qualification of Bidders.

Each Qualified Bid (as defined below) must be made by a Qualified Bidder.  In order to be considered for status as a "Qualified Bidder" and to have a Qualified Bid, a bidder must:

---

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sales Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. [●]], as applicable.

[3]    "Consultation Parties" shall mean counsel to the DIP Agent, Prepetition FILO Agent, and Prepetition ABL Agent (each, an "Agent") and any official committee appointed in these Chapter 11 Cases; *provided, however*, that to the extent any Agent submits a bid for any Lease Assets, such Agent shall not be a Consultation Party with respect to (a) the evaluation and qualification of competing bids for the Lease Assets included in such Agent's bid or (b) seeking and/or obtaining information about other bids, but such Agent shall remain a Consultation Party for the other purposes set forth herein.

(i)     Deliver to A&G Realty Partners, LLC, c/o Emilio Amendola, 445 Broadhollow Road, Suite 410, Melville, NY 11747; email: emilio@agrealtypartners.com; Tel: (631) 465-9507; Fax: (631) 420-4499; with copy to the Debtors' counsel, Kirkland & Ellis LLP, c/o Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler, 601 Lexington Avenue, New York, NY 10022; email: joshua.sussberg@kirkland.com, emily.geier@kirkland.com, derek.hunter@kirkland.com, ross.fiedler@kirkland.com; Tel: (212) 446-4800; Fax: (212) 446-4900; so as to be received before **5:00 p.m. (prevailing Eastern Time) on June 6, 2023** (the "Bid Deadline"), a written offer to purchase the Lease Assets at issue (a "Qualified Bid") that:

    (a)    Consists of an executed form of the assignment and assumption agreement for sale that may not deviate substantially from the terms of the form assignment and assumption agreement, substantially in the form attached hereto as **Exhibit A**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties, that provides for the purchase of the Lease Asset(s) being sold (such bidder's executed assignment and assumption agreement, the "Bidder A&A Agreement"); *provided* that any landlord bidding on a Lease Asset related to a property which such landlord owns shall instead provide with its Qualified Bid an executed form of the lease termination agreement that may not deviate substantially from the terms of the form lease termination agreement, substantially in the form attached hereto as **Exhibit B**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties. Any bidder may propose to purchase more than one Lease Asset. The assignment and assumption agreement shall be marked to reflect differences as to the Lease Assets proposed to be purchased;

    (b)    Consists of a completed bidder registration form, substantially in the form attached hereto as **Exhibit C**, which must detail which of the Lease Assets up for sale the Qualified Bidder proposes to be assumed and assigned and provides for the payment of all Cure Costs related to such Lease Assets by the Qualified Bidder. A single bidder or group of bidders may purchase all or a portion of the Lease Assets. If a bidder or group of bidders submits an offer for a combination of Lease Assets, such bidder or group of bidders must indicate (i) if it would be willing to purchase any of such assets if not sold as a group and, if so, (ii) a schedule indicating the Bid as to any individual or sub-group of assets that such bidder would purchase. The Debtors, in consultation with the

Consultation Parties, reserve the right to determine whether to auction any assets as part of a group or individually up through and including at an Auction or to conduct an Auction of any Lease Asset both individually and as part of a group in order to determine which option maximizes value of the assets;

(c)     Contains no contingencies to the validity, effectiveness, and/or binding nature of the bid, including without limitation, contingencies for due diligence and inspection (other than as set forth in **Exhibit A**) or financing of any kind;

(d)     Contains documentation acceptable to the Debtors, in consultation with the Consultation Parties, evidencing that the bidder has financial resources sufficient to close the transaction within twenty (20) days after the Lease Auction which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and financially sound financial institution or investment fund, and the identity of contact persons at the entity issuing such commitment letter;

(e)     Demonstrates, to the Debtors' satisfaction, in consultation with the Consultation Parties, that the bidder has the legal capacity to consummate the transaction it is proposing; and

(f)     Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the transactions contemplated in the Bidder A&A Agreement immediately upon entry by the Bankruptcy Court of an order approving the sale of Lease Assets to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (defined below) or Backup Bid (defined below), will then be irrevocable for a period of thirty (30) days after the conclusion of the Lease Auction;

(ii)     Contemporaneous with the submission of a Bid, tender an earnest money deposit of ten percent (10.0%) of the proposed purchase price for the sale of the Lease Assets (the "Qualified Bidder Deposit") by cashier's or certified check or wire transfer of immediately available funds, which deposit shall be held in an interest bearing escrow account in accordance with the terms of the Bidder A&A Agreement.[4]     A Qualified Bidder Deposit will be refunded only if (a) the bid

---

[4]     For the avoidance of doubt, these funds are not property of the Debtors' estates.

corresponding to the Qualified Bidding Deposit is rejected; or (b) the bid corresponding with the Qualified Bidder Deposit is not approved by the Bankruptcy Court.  The Debtors reserve the right to hold each Qualified Bidder Deposit until five (5) days after the closing of a Lease Sale of the applicable Lease Assets, but the Debtors may refund the full Qualified Bid Deposit any time after the applicable Lease Sale Hearing.  The provisions of this subparagraph D(ii) shall apply to Qualified Bidders and controls notwithstanding any conflicting provisions in the Bidder A&A Agreement.

(iii)    If the Debtors request adequate assurance of future performance, a Qualified Bidder must provide such assurance (which the Qualified Bidder agrees may be disseminated to affected landlords if such Qualified Bidders' Bid is determined to be a Qualified Bid), which may include, without limitation, information regarding the Qualified Bidders' financial condition such as tax returns, current financial statements, or bank accounts.

**E.    <u>Rejection of "Qualified Bid" Status for Non-Conforming Bids</u>.**

The determination as to which bids qualify shall be determined by the Debtors, in consultation with the Consultation Parties.  The Debtors, in consultation with the Consultation Parties, shall have the right to reject bids as non-conforming bids; *provided*, *however*, the Debtors shall have the right to negotiate with any bidder with respect to clarification of any bid. Notwithstanding anything to the contrary herein, any bid submitted by any of the Agents or their respective designees shall be a Qualified Bid.

**F.    <u>Breakup Fee.</u>**

Upon entry of the Lease Sale Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment in consultation with the Consultation Parties, to (a) select one or more Qualified Bidders to act as a stalking horse bidder (a "<u>Stalking Horse Bidder</u>") in connection with a Lease Auction and (b) in connection with any staking horse agreement with a Stalking Horse Bidder, provide for a breakup fee (the "<u>Breakup Fee</u>") in an amount not to exceed three percent (3%) of the proposed Purchase Price.

**G.    <u>Due Diligence</u>.**

Any Qualified Bidder may request diligence from the Debtors, and the Debtors, in consultation with the Consultation Parties, may grant or deny the request.  The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder.  All due diligence shall be completed prior to the applicable Bid Deadline.

H.    **Bid Deadline**.

All Qualified Bids must be submitted to A&G, with copy to Debtors' counsel in accordance with paragraph D(i), so as to be actually received not later than **June 6, 2023, at 5:00 p.m. (prevailing Eastern Time)**.

I.    **Terms of Lease Auctions**.

In the event that one or more Qualified Bids are submitted in accordance with these Lease Sale Procedures, the Debtors will conduct an auction sale of the Lease Assets (a "Lease Auction") on the following terms:

(i)    **Time, Date and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction**.  Each Auction will take place at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.  An Auction will be conducted on **June 9, 2023, at 10:00 a.m. (prevailing Eastern Time)**.  The Debtors will send written notice of the date, time, and place of each Lease Auction to the Qualified Bidders no later than two business days before such Lease Auction, and file a notice of the date, time, and place of each Lease Auction with the Court no later than two business days before such Lease Auction and post such notice on the Debtors' Case Website:  https://restructuring.ra.kroll.com/bbby.  The Debtors, in consultation with the Consultation Parties, may modify the date, time, and place of each Lease Auction by providing written notice to Qualified Bidders and filing a notice with the Court so long as such notice is no later than two days before the Lease Auction.

(ii)    **Permitted Attendees at Lease Auctions**.  Unless otherwise ordered or directed by the Bankruptcy Court, only representatives of the Debtors, the Consultation Parties, the Office of the United States Trustee for the District of New Jersey, any statutory committee appointed in these Chapter 11 Cases, any landlord with an interest in the Lease Assets set for a Lease Auction, any other parties invited specifically by the Debtors, and any Qualified Bidders (and the professionals for each of the foregoing) shall be entitled to attend a Lease Auction; *provided that*, only Qualified Bidders shall be entitled to bid at a Lease Auction.

(iii)    **Lease Auction Bid Submission Procedures**.  Lease Auction bidding shall be subject to the following procedures:

(a)    For a Qualified Bid to be considered and in order for a Qualified Bidder to further bid at a Lease Auction, Qualified Bidders must appear in person at the Lease Auction, or through a duly authorized

6

representative, unless alternative arrangements are agreed upon in advance by the Debtors.

(b)     Only Qualified Bidders shall be entitled to make any subsequent bids at a Lease Auction.

(c)     Bidding will commence with the announcement of the highest and best Qualified Bid with respect to each Lease Asset or group thereof, which shall be determined by the Debtors in their business judgment in consultation with the Consultation Parties.  Any Qualified Bidder may then submit successive bids in minimum increments, which will be determined by the Debtors, in consultation with the Consultation Parties, at each Lease Auction depending on the total dollar value of the Lease Assets being sold (the "Minimum Overbid Amount").  The Minimum Overbid Amount may be different with respect to each asset or group of assets being auctioned.

(d)     If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective bid at the applicable Lease Auction.

(e)     Each successive bid submitted by any bidder at a Lease Auction must contain an actual cash purchase price that exceeds the then existing highest bid by at least the Minimum Overbid Amount.

(f)     At commencement of each Lease Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing such Lease Auction, including time periods available to all Qualified Bidders to submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

(iv)   **No Collusion.**  Each Qualified Bidder participating at a Lease Auction will be required to confirm on the record at the Lease Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

(v)    **Selection of Successful Bid.**  Each Lease Auction shall continue until there is only one bid remaining to purchase a certain portion or all of the Lease Assets that the Debtors determine in consultation with the Consultation Parties, subject to Bankruptcy Court approval, is the highest and/or best Qualified Bid (such bid,

the "Successful Bid" and such bidder, the "Successful Bidder"). For the avoidance of doubt, if there are any Qualified Bids for different portions of the Lease Assets, there may be multiple Successful Bidders. In making this decision, the Debtors, in consultation with the Consultation Parties, shall consider the amount of the purchase price, the form of consideration being offered, the contents of the Bidder A&A Agreement, the likelihood of such Qualified Bidder's ability to close the transaction, the timing thereof, and the net benefit to the Debtors' estates. The Debtors, in consultation with the Consultation Parties, reserve the right to select the Successful Bid, even if it is not the highest bid. The Debtors, in consultation with the Consultation Parties, reserve the right to not select any Successful Bid or Successful Bidder with respect to any Lease Asset or group thereof. The Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Bidder A&A Agreement. Prior to the applicable Sale Hearing, the Successful Bidder shall complete and execute a final and revised Bidder A&A Agreement, as necessary to conform to the terms of each Lease Auction, and all other agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "Successful Bidder Sale Documents"). The Successful Bid shall be irrevocable for a period of thirty (30) days after the conclusion of the applicable Lease Auction.

(vi)    **Selection of Backup Bidder.** The bidder of the second highest and best bid for a portion or all of the Lease Assets, as determined by the Debtors in consultation with the Consultation Parties, may be deemed a backup bidder (such bidder the "Backup Bidder" and such bid the "Backup Bid"). For the avoidance of doubt, if there are Qualifying Bids for different portions of the Lease Assets, there may be multiple Backup Bidders. If the Debtors, in consultation with the Consultation Parties, so designate a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute an assignment and assumption agreement in form and substance reasonably acceptable to the Debtors, in consultation with the Consultation Parties, memorializing, among other things, the amount of the Backup Bid (the "Backup Bidder A&A Agreement"). Upon the failure of the Successful Bidder to timely consummate its purchase of the Lease Assets, pursuant to the terms of the Successful Bidder Sale Documents, the Debtors, in consultation with the Consultation Parties, shall be empowered to effect the sale pursuant to the Backup Bidder A&A Agreement, without further order from the Bankruptcy Court. The Backup Bidder A&A Agreement shall be irrevocable for a period of thirty (30) days after the conclusion of the applicable Lease Auction.

(vii)    **Irrevocability of Bids; Rejection of Bids.** A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not

selected as the Backup Bidder.  Unless determined by the Debtors, in consultation with the Consultation Parties, to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive bids at a Lease Auction shall be deemed rejected at the conclusion of such Lease Auction.

**J.   Sale Hearing.**

The Bankruptcy Court shall hold a Lease Sale Hearing (i) on **June 25, 2023, at [●]:00 [a./p.]m. (prevailing Eastern Time)**, to approve the Lease Sale of the Lease Assets, if any. Each Lease Sale Hearing will be held at the United States Bankruptcy Court for the District of New Jersey.  At each Lease Sale Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s), if any.  The Debtors shall also notify the Bankruptcy Court of the Backup Bidder(s), if any.   The Debtors, in consultation with the Consultation Parties, shall ascertain whether the Successful Bidder(s) and the Backup Bidder(s) are insiders of one or more of the Debtors, whether each applicable Sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that a Successful Bidder or Backup Bidder may be deem to be purchasing the Lease Assets in good faith pursuant to 11 U.S.C. § 363(m).  At each Lease Sale Hearing, the Debtors shall make a record of these findings and any order approving the Lease Sales shall include such findings in order to approve the sale to the Successful Bidder(s) or Backup Bidder(s), pursuant to 11 U.S.C. § 363(m).  Each Lease Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at such Lease Sale Hearing or the Debtors', in consultation with the Consultation Parties, filing notice of a rescheduled Lease Sale Hearing with the Court.

**K.   Closing.**

The closing of the sale of the Lease Assets will occur no later than twenty (20) days after each applicable Lease Auction, unless otherwise extended by the Debtors, in consultation with the Consultation Parties, in accordance with the terms of the Successful Bidder Sale Documents or the assignment and assumption agreement of the entity otherwise authorized by the Bankruptcy Court to purchase the Lease Assets, as applicable.

**L.   Disclosures.**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the Lease Assets is consummated.

**M.   Commissions.**

The Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of A&G.  All commissions, fees, or expenses for agents, other than A&G, may be paid by bidders at such bidder's discretion.  In no case shall any commissions, fees, or expenses be deducted from the proceeds of the sale of the Lease Assets or an agreed Successful Bid.

**N.**    **No Representation; Qualified Bidder's Duty to Review.**

The Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Lease Assets, including, but not limited to, any warranties or representations as to habitability, merchantability, fitness for a particular purpose, title, zoning, tax consequences, latent or patent physical or environmental condition, utilities, operating history or projections, valuation, governmental approvals, the compliance of the Lease Assets with governmental laws (including, without limitation, accessibility for handicapped persons), the truth, accuracy or completeness of any documents related to the Lease Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Lease Assets.  All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Lease Assets "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Bankruptcy Court's order approving the Lease Sale.  All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties, statements, representations, or information pertaining to the Lease Assets or relating thereto (including specifically, without limitation, information regarding the Lease Assets distributed with respect to such real estate) made or furnished by the Debtors or any real estate broker or agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Bankruptcy Court's order approving the Lease Sale.

**O.**    **Reservation of Rights.**

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Lease Sale Procedures in their business judgment in any manner that will best promote the goals of these Lease Sale Procedures, or impose, at or prior to any Lease Auction, additional customary terms and conditions on Lease Sales, including, without limitation:  (a) extending the deadlines set forth in these Lease Sale Procedures; (b) adjourning such Lease Auction at the applicable Lease Sale Hearing; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting such Lease Auction; (d) canceling such Lease Auction; and (e) rejecting any or all Bids or Qualified Bids.  Nothing in these Lease Sale Procedures shall abrogate the fiduciary duties of the Debtors.

**I.**    **Consent to Jurisdiction.**

All Qualified Bidders at each Lease Auction shall be deemed (i) to have consented to the jurisdiction of the Court and (ii) to have waived any right to a jury trial in connection with any disputes relating to such Lease Auction and the construction and enforcement of these Lease Sale Procedures.

**X.**    **Return of Qualified Bidder Deposit.**

The Qualified Bidder Deposit of a Successful Bidder shall be applied to the purchase price of such transaction at closing.  The Qualified Bidder Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors and shall

be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is five business days after the close of the Sales, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder (or Backup Bidder, as applicable) fails to consummate a proposed transaction because of a breach of, or default or failure to perform under, any Successful Bidder Sale Documents or the terms of these Sales Procedures by such Successful Bidder (or Backup Bidder, as applicable), the Qualified Bidder Deposit shall be released to the Debtors and the Debtors shall not have any obligation to return the Qualified Bidder Deposit deposited by such Successful Bidder (or Backup Bidder, as applicable).  Such Qualified Bidder Deposit released to the Debtors may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## Y.    **Fiduciary Out.**

Nothing in these Lease Sale Procedures shall require the Debtors' management or board of directors to take any action, or to refrain from taking any action, with respect to these Lease Sale Procedures, to the extent the Debtors' management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

# **EXHIBIT A**

**ASSUMPTION AND ASSIGNMENT AGREEMENT**

# ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between _____ ("Assignor") and _____ ("Assignee").  For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.　　　Assignment and Assumption.

(a)　　　Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)　　　Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.　　　Payment of Purchase Price.  Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of _____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.

3.　　　Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.　　　No Further Liability of Assignor.  From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5.      <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.      <u>"As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s). Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.      <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.      <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.      <u>Jurisdiction.</u>   The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.     <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.     <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____


**ASSIGNEE:**
**[ASSIGNEE]**

By_____
Name_____
Its_____

## Schedule A

**Description of Lease Asset(s)**

## <u>EXHIBIT B</u>

## LEASE TERMINATION AGREEMENT

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this ___ day of _____, 2023 by and between _____ ("Landlord") and _____ ("Tenant" or "Debtor").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated _____ (the "Lease"), covering certain premises located at _____ (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date, the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.   The Lease is terminated effective _____ (the "Termination Date").

3.      Consideration.  Landlord shall pay to Tenant $ _____.

4.      Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.       <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.       As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.       In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.       <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)       Tenant has delivered possession of the Premises to Landlord;

(b)       Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)       An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.       <u>Furniture, Fixtures and Equipment (FF&E)</u>. Any FF&E remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to the Debtor or any entity.

10.    <u>Authority to Settle</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u>  This Agreement shall be governed by and construed under the laws of the State of New York, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By:_____

Print Name:_____

Its:_____


**[TENANT]**

By:_____

Print Name:_____

Its:_____

## EXHIBIT C

**BIDDER REGISTRATION FORM**

## EXHIBIT C TO LEASE SALE PROCEDURES

## OFFER AND QUALIFIED BIDDER FORM

Bidder, _____, hereby:

- Offers to purchase the following Lease Asset(s) for the bid set forth below, pursuant to this Offer and Qualified Bidder Form and the terms and conditions of the accompanying Assumption and Assignment Agreement, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* subject to approval by the United States Bankruptcy Court for the District of New Jersey in the Chapter 11 Cases jointly administered under *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Lease Sale Procedures").

Bidder's offer is for the following Lease Assets at the following bids:

| LEASE ASSET | BID/PURCHASE PRICE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | |

**Bidder hereby warrants and represents as follows**:

(a) Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Lease Sale Procedures, the terms and conditions of which are incorporated herein by reference.

(b) Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c) To the extent that the words and phrases which are capitalized in this Offer and Qualified Bidder Form have been defined in the Lease Sale Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d) Each Bid made at a Lease Auction shall constitute a binding, irrevocable "Bid" pursuant to the Lease Sale Procedures.

(e) Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Lease Asset(s) on an as-is, where-is basis, with no contingencies.

(f) Bidder (a) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease Asset(s) in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease Asset(s) or the completeness of any information provided in connection therewith or the Lease Auction other than as provided in the Assumption and Assignment Agreement; (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; and (d) by submitting an Assignment and Assumption Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its bid, the Lease Sale Procedures, or any earnest money Deposit.

(g) Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Lease Sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) Bidder acknowledges that it will comply with the Lease Sale Procedures.

(h) Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i) Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Lease Sale.

(j) Identification of how the Bidder will pay the purchase price at Closing.

*[Signatures appear on following page]*

AGREED & ACCEPTED this _____ day of _____, 2023

Company: _____

By:_____
Name:
Title:


*BIDDER I.D.*

Bidder's Company: _____

Bidder's Address:_____

Bidder's Contact:_____

Bidder's Phone & Facsimile Numbers:_____

Bidder's Email Address: _____

Bidder's Tax ID Number:_____


*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name:_____

Law Firm or Company: _____

Address:_____

Phone & Facsimile Numbers:_____

Email Address: _____

## **Exhibit 2**

**Lease Auction and Lease Hearing Notice**

## **Exhibit 2**

**Lease Auction and Lease Hearing Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al*., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF BID DEADLINE AND POTENTIAL SALE HEARING

**PLEASE TAKE NOTICE** that on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain*

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "<u>Lease Sale Procedures Order</u>"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "<u>Lease Auction</u>") for the sale of certain unexpired leases, including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto (the "<u>Lease Assets</u>").

**PLEASE TAKE NOTICE** that the Debtors are soliciting offers for the sale, liquidation, or other disposition of certain of the Debtors' Lease Assets consistent with the Lease Sale Procedures approved by the Court by entry of the Lease Sale Procedures Order.  **<u>All interested bidders should carefully read the Lease Sale Procedures and Lease Sale Procedures Order.</u>** To the extent that there are any inconsistencies between this notice and the Lease Sale Procedures or Lease Sale Procedures Order, the Lease Sale Procedures or Lease Sale Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Lease Sale Procedures, the Debtors will conduct a Lease Auction of certain of the Debtors' Lease Assets **on or about June 9, 2023, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022 (or at any other location as the Debtors may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Lease Sale(s) at the hearing scheduled to commence on or before **June 25, 2023, at [●] [a./p.].m. (prevailing Eastern Time)** (the "<u>Lease Sale Hearing</u>") before the Honorable Vincent F. Papalia, at the Court, Courtroom 3B, Martin Luther King Jr. Federal Building, 50 Walnut Street, 3rd Floor, Newark, NJ 07102.

**PLEASE TAKE FURTHER NOTICE** that objections to approval of the proposed Lease Sale, the proposed assumption and assignment, and/or to the Successful Bidder's proposed form of adequate assurance of future performance must file a written objection (each, a "<u>Lease Sale Objection</u>") so that such objection is filed with the Court so as to be **<u>actually received</u>** by **June 18, 2023, at 5:00 p.m., (prevailing Eastern Time)** and serve such Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

---

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sales Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. [●]], as applicable.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A LEASE SALE ON OR BEFORE THE TRANSACTION OBJECTION DEADLINE IN ACCORDANCE WITH THE LEASE SALE PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH LEASE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE SUCCESSFUL BIDDER.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Lease Sale Procedures Motion, Lease Sale Procedures, and the Lease Sale Procedures Order, as well as all related exhibits, including the form purchase agreement, are available:  (a) upon request to Kroll Restructuring Administration LLC (the notice and claims agent retained in these Chapter 11 Cases) by calling (833) 332-9937 (toll free) or, for international callers, +1 (646) 440-4757; (b) by visiting the website maintained in these Chapter 11 Cases at https://restructuring.ra.kroll.com/bbby; or (c) for a fee via PACER by visiting http://www.njb.uscourts.gov.

Dated: May [●], 2023

/s/
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

## **Exhibit 3**

**Assumption and Assignment Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF ASSUMPTION OF CERTAIN UNEXPIRED LEASES

      **PLEASE TAKE NOTICE** that on [●], 2023 the United States Bankruptcy Court for the
District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain*

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of
the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the
website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The
location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these
chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "Lease Sale Procedures Order"), attached hereto as **Exhibit A**,[2] by which the Court, among other things, approved expedited procedures for the assumption and assignment of unexpired leases and granted related relief.

**PLEASE TAKE NOTICE** that pursuant to the Lease Sale Procedures Order and by this written notice (this "Assumption and Assignment Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each unexpired lease set forth on **Exhibit B** attached hereto is hereby assumed and assigned, including with respect to payment of any cure costs (the "Cure Costs") in the amounts set forth on **Exhibit B** required to assume such unexpired lease, effective as of the date (the "Assumption Date") set forth in **Exhibit B** or such other date as the Debtors and the Counterparties to such unexpired leases agree.

**PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable unexpired lease will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, at the request of the applicable Counterparty use commercially reasonable efforts to provide evidence thereof to such applicable Counterparty (and their counsel, if known), thereby demonstrating that the assignee of the unexpired lease has the ability to comply with the requirements of adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed Cure Costs, proposed assumption and assignment, and/or to the Successful Bidder's proposed form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") so that such objection is filed with the Court so as to be **actually received** by **June 18, 2023, at 5:00 p.m., (prevailing Eastern Time)** and serve such Assumption Objection on: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

**PLEASE TAKE FURTHER NOTICE** that if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at a Lease Sale hearing, or such other date and time as agreed to by the Debtors and the objecting party or as ordered by the Court. If such Assumption Objection is overruled or withdrawn, or if no Assumption Objection is filed with respect to any unexpired lease, such unexpired lease shall be assumed as of the

---

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sales Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. [●]], as applicable.

Assumption Date set forth in **Exhibit B** or such other date as the Debtors and the applicable Counterparties to such unexpired lease agree.

*[Remainder of page intentionally left blank]*

Dated: May [●], 2023

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       josuha.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

# **EXHIBIT A**

**Lease Sale Procedures Order**

## **EXHIBIT B**

**Schedule of Unexpired Leases to be Assumed and Assigned**

## **Exhibit 4**

**Post-Auction Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF SUCCESSFUL AND BACKUP BIDDER WITH RESPECT**
**TO THE AUCTION OF CERTAIN OF THE DEBTORS' LEASE ASSETS**
**AND ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES**

On [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

*the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "Lease Sale Procedures Order"),[2] attached hereto as **Exhibit A**, by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "Lease Auction") for the sale or transfer (the "Lease Sales") of certain unexpired leases (collectively, the "Lease Assets"), including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, pursuant to the Lease Sale Procedures Order, the Debtors conducted the Lease Auction with respect to certain of the Lease Assets at the offices of Kirkland & Ellis, LLP, located at 601 Lexington Avenue, New York, New York, 10022.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Lease Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Lease Assets listed on **Exhibit B** attached hereto.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider approval of the sale, liquidation, or other disposition of the Lease Assets to the Successful Bidders at the Lease Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held before the Honorable Vincent F. Papalia, at the Court, Courtroom 3B, Martin Luther King Jr. Federal Building, 50 Walnut Street, 3rd Floor, Newark, NJ 07102, **on June 25, 2023 at [●]:00 [a./p.].m. (prevailing Eastern Time)** (the "Lease Sale Hearing").

**PLEASE TAKE FURTHER NOTICE**, that at the Lease Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid pursuant to an order (the "Lease Sale Order"). Unless the Court orders otherwise or as agreed to by the applicable parties, the Lease Sale Hearing shall be an evidentiary hearing on matters relating to the Lease Sale and there will be no further bidding at the Lease Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the Lease Sale following entry of a Lease Sale Order because of the breach or failure on the part of the Successful Bidder, the Debtors shall promptly file a supplemental notice on or before the Lease Sale Closing Deadline, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable unexpired lease, as applicable, will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, within three business days or sooner provide evidence thereof to such applicable lease counterparty (and their counsel, if known) thereby demonstrating that the assignee of the lease has the ability to comply with the requirements of adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that parties objecting to the proposed assumption and assignment, proposed cure amount, and/or to the Successful Bidder's proposed form of

---

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sales Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. [●]], as applicable.

adequate assurance of future performance must file a written objection (each, a "Lease Sale Objection") so that such objection is filed with the Court by **June 18, 2023, at 5:00 p.m., (prevailing Eastern Time)** and serve such Lease Sale Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolimos; (c) counsel to any official committee appointed in these Chapter 11 Cases; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam Shpeen, Steven Szanzer, counsel to the Prepetition ABL Agent; and (e) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

**PLEASE TAKE FURTHER NOTICE** that, if a Lease Sale Objection is timely filed and not withdrawn or resolved, such objection will be heard at the Lease Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this Post-Auction Notice is subject to the terms and conditions of the Lease Sale Procedures Motion and the Lease Sale Procedures Order, with such Lease Sale Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Lease Sale Procedures Motion, the Lease Sale Procedures Order, this Notice, and any other related documents are available:  (a) upon request to Kroll Restructuring Administration LLC (the notice and claims agent retained in these Chapter 11 Cases) by calling (833) 332-9937 (toll free) or, for international callers, +1 (646) 440-4757; (b) by visiting the website maintained in these Chapter 11 Cases at https://restructuring.ra.kroll.com/bbby;  or  (c) for  a  fee  via  PACER  by  visiting http://www.njb.uscourts.gov.

Dated: May [●], 2023

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com


*Proposed Co-Counsel for Debtors and
Debtors in Possession*

<u>**Exhibit A**</u>

**Bidding Procedures Order**

**Exhibit B**

**Successful and Backup Bidder List**

| Lease Asset(s) | Lease Counterparty | Successful Bidder | Type of Agreement [Assignment Agreement/Lease Termination Agreement] | Backup Bidder | Proposed Breakup Fee | Price | Cure |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

## <u>Exhibit 5</u>

**Subsequent Lease Sale Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF SALE OF CERTAIN OF THE**
**DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND**
**ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief*

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[Docket No. [●]] (the "Lease Sale Procedures Order"),[2] attached hereto as **Exhibit A**, by which the Court approved procedures for sale of certain unexpired leases, including with any related ancillary agreement(s) thereto or through the sale of designation rights related thereto (collectively, the "Leases"), including those Leases not otherwise sold at a Lease Auction.

**PLEASE TAKE FURTHER NOTICE** that, that on [●], 2023, the Court entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Lease Sale Order"), attached hereto as **Exhibit B**, by which the Court approved the Lease Sale of certain Lease Assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Lease Sale Procedures Order, unless, prior to [●], 2023 (a) a written objection (an "Objection") is filed with the Court and served in the manner provided for in the Lease Sale Procedures Order or (b) the Debtors receive a competing bid (a "Competing Bid") for some or all of the Lease Assets listed on **Exhibit C** attached hereto, that the Debtors, in their sole discretion, determine is a higher or otherwise better bid, the Lease Asset(s) listed on **Exhibit C** attached hereto will be sold free and clear of all liens, claims, encumbrances or interests pursuant to, among other provisions, section 363 of title 11 of the United States Code, in accordance with the Lease Sale Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, if an Objection is timely filed and served in accordance with the Lease Sale Procedures Order, the Debtors and the objecting party will use good faith efforts to resolve the Objection.  If the Debtors and the objecting party are unable to consensually resolve the Objection, the Debtors shall not proceed with the sale of the Lease Asset(s) that is/are the subject of the Objection pursuant to the Lease Sale Procedures but may seek Court approval of the proposed transaction.

**PLEASE TAKE FURTHER NOTICE** that, if a Competing Bid is received by the Debtors in accordance with the Lease Sale Procedures Order, the Debtors will evaluate such Competing Bid and provide another Subsequent Lease Sale Notice, in accordance with the Lease Sale Procedures Order.

*[Remainder of page intentionally left blank]*

---

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. [●]], as applicable.

Dated: May [●], 2023

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:        msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:        josuha.sussberg@kirkland.com
           emily.geier@kirkland.com
           derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Lease Sale Procedures Order**

## **Exhibit B**

**Lease Sale Order**

**Exhibit C**

**Lease Asset(s) to be Sold**

| Lease Assets(s) to be Sold | Name and Address of Purchaser | Proposed Purchase Price and Commissions to Third Parties | Location of Leases to be Sold | Location of Lease Sale (if different than location of Leases) |
|---|---|---|---|---|
| | | | | |