**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Ste. 201
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Attorneys for Creditor, Salmar Properties, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF SALMAR PROPERTIES, LLC TO DEBTORS' MOTION (I) AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED LEASES, AND (B) ABANDONMENT OF ANY PERSONAL PROPERTY, EFFECTIVE AS OF THE REJECTION DATE AND (II) GRANTING RELATED RELIEF**

Salmar Properties, LLC ("Salmar"), by and through its undersigned counsel, hereby files its limited objection (the "Objection") to the Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases, (B) Abandonment of Any Personal Property Effective as of the Rejection Date, and (II) Granting Related Relief (the "Rejection Motion") [Docket No. 79], and sets forth the following:

**BACKGROUND**

1.   Salmar, as landlord, entered into a certain Retail Lease with Bed Bath & Beyond, Inc. (the "Debtor") dated December 31, 2014, as the same may have been amended, modified and/or supplemented, including without limitation by that certain First Amendment to Lease entered into as of March 16, 2016, and Rent Commencement and Expiration Date Agreement as of August 2, 2018 (collectively, the "Lease") concerning certain premises located on the second

floor (the "Premises") of the building located at 850 Third Avenue, Brooklyn, New York 11232 (the "Building"), which Premises are more particularly described in the Lease.

2. The Lease has an initial fifteen-year term. The Debtor is required to make monthly payments to Salmar pursuant to the terms of the Lease. The Lease expires in 2032. A copy of the Lease is attached to the Certification of Ian Siegel ("Siegel Cert.") at Exhibit A. Capitalized terms not defined herein shall have the meanings given to such terms in the Lease.

3. On April 23, 2023 (the "Petition Date"), the Debtors commenced these cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. On April 24, 2023, the Debtors filed the Rejection Motion.

**OBJECTION**

5. Pursuant to Section 18.1(c) of the Lease, the following shall constitute a Default under the Lease: "Tenant fails to comply with any other term of this Lease, including, without limitation Article 25, and the failure continues for thirty (30) days following Landlord's notice (the foregoing to exclude non-compliance by Tenant that is of a di [sic] minimis nature, it being agreed that Tenant shall in such event proceed in good faith in connection with same). If, however, compliance cannot, with diligence, reasonably be fully accomplished within that thirty (30) day period, Tenant shall have an additional period, provided Tenant notifies Landlord of its intention to comply (with reasonably detailed steps to be taken) and commences compliance within that thirty (30) day period and thereafter pursues compliance to completion with diligence."

6. Pursuant to Section 18.1(a) of the Lease, failure to pay when due any rent which failure continues for ten (10) days following Landlord's notice is considered a material default.

7. Pursuant to Section 3.6 of the Lease, in relevant part: "Tenant shall not…(f) conduct or permit to be conducted any auction, fire sale (except to liquidate inventory in response to an

actual fire and only if such sale is not conducted for more than forty-five (45) days), going out of business sale (except, one time only, to liquidate inventory at the end of the term of this Lease and only if such sale is not conducted for more than forty-five (45) days), bankruptcy sale (unless directed by court order), or other similar type sale in or connected with the Premises (but this provision is not intended to limit Tenant's freedom in setting its own selling prices);…"

8. Pursuant to Section 3.7(a)(i) of the Lease, in relevant part: "Unless otherwise expressly permitted, Tenant may not…install Signs advertising a fire sale, liquidation sale, distress sale, foreclosure sale, receiver's or sheriff's sale, going out of business sale, lost lease sale, or Signs of similar import."

9. Pursuant to Section 3.10(b) of the Lease, in relevant part: "Tenant shall not use, operate or sublease any part of the Premises for any of the "Prohibited Uses" as set forth in Exhibit P hereto annexed;…"

10. Pursuant to Section A(6) of Exhibit P to the Lease, the "Prohibited Uses" include: "Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, fictitious going-out-of-business sale, lost-our-lease sale or similarly advertised event;…"

11. Debtor has failed to comply with the terms of Section 3.6, clause (f), Section 3.7(a)(i), Section 3.10(b) and Exhibit P of the Lease by (i) conducting a going out of business sale or similar type sale at the Premises commencing on or about January 29, 2023, and (ii) installing Signs advertising such sale (such failures, collectively, the "Non-Compliance Items").

12. Debtor failed to cure the Non-Compliance Items on or before the date that was thirty (30) days from the date that a Notice of Default dated February 8, 2023 was given to Tenant.

13. As of May 1, 2023, the Debtor owes Salmar $818,324.92 for including but not limited to, late fees, utility charges, common area maintenance (CAM) charges and adjustments,

storage rent, and base rent. A copy of the May 1, 2023, invoice outlining all the fees owed is attached to the Siegel Cert. at Exhibit B.

14. To date, the Debtor still has personal property at the Premises, including but not limited to equipment, computers, and "high-end" racking. Thus, the Debtor is still in possession of the Premises. Therefore, Salmar currently has no ability to relet the Premises. Thus, the Debtors must remove their property and leave the Premises in "broom-swept" condition.[1] Until the Debtors remove their property and leave the Premises in "broom-swept" condition, Salmar is entitled to be compensated for all its contract rent due post-petition.

15. The proposed order to the Rejection Motion seeks for the Lease to be rejected effective as of the later of (i) the Rejection Date set forth in Schedule 1, or (ii) the date upon which the Debtors surrender the premises to the landlord via delivery of the keys, key codes, or security codes, as applicable, to the respective landlords of the Closing Stores (defined in the Motion)(the "Rejection Date").

16. The proposed order also seeks for the Debtors to abandon their personal property at, among other locations, the Premises and Building. While Section 19.1(h) of the Lease provides that "Landlord shall use all reasonable efforts to relet the Premises or any portion thereof," it is impossible to mitigate its damages when the Debtor's property remains at the Premises. Further, Salmar was informed that the Debtors want to remove their personal property at the Premises and therefore, such property is not being "abandoned" at least as it applies to Salmar's Premises.

17. The Debtors seeks rejection of the Salmar Lease effective April 23, 2023. While Salmar does not object to the Lease being rejected, it does object to the retroactive date of April 23, 2023 since the Debtors still remain in "possession" of the Premises. Salmar requests for the

---

[1] Section 24.1 of the Lease requires the Premises be "vacant, broom clean and in good order and condition…"

4885-5102-7555, v. 1

Debtor to remove its personal property at the Premises and Building immediately and for the rejection date to be deemed as of the date of removal and only after the Premises is delivered "broom-swept." Salmar must be paid rent from the petition date until the rejection date since the Debtors are still benefitting from the Lease by maintaining possession. The amount of rent, costs and fees owed under the Lease from the petition date until an order rejecting the Lease is entered.[2]

18. Salmar objects to the retroactive rejection of the Lease to April 23, 2023.

19. The determination of the effective date for the rejection of the Lease is highly significant under Section 365(d)(3) of the Bankruptcy Code, which provides, in pertinent part, as follows:

> The Trustee shall timely perform *all* the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title… (emphasis added).

20. Thus, the Debtor is *obligated* to pay Salmar its contractual rent under the Lease through the date that the Lease is rejected, personal property removed and the Premises broom-swept.

21. Section 365(a) of the Bankruptcy Code provides, where relevant, that:

> …the trustee, subject to court's approval, may assume or reject any executory contract or unexpired lease of the debtor (emphasis added).

22. Most courts have held that the clear language of Section 365(a) necessitates a finding that the rejection of an unexpired lease is effective only upon court approval. In re Revco D.S., Inc., et al., 109 B.R. 264 (Bankr. N.D. Ohio 1989), is considered to be the leading case in that regard. See also In re Federated Dep't Stores, Inc., et al., 131 B.R. 808 (Bankr. S.D. Ohio 1991).

---

[2] Salmar shall provide a certification of post-petition amounts owed once the rejection date is determined.

23. In the <u>Revco</u> case, the Bankruptcy Court ruled that rejection was effective only upon entry of the order approving the rejection thereby declining the debtor's invitation to make rejection retroactive. Similarly, the Bankruptcy Court in <u>In re Chi-Chi's Inc., et al.</u>, 305 B.R 396 (Bankr. D. De. 2004), when confronted with a debtor's request to deem rejection of its leases to be retroactively effective as of the petition date, declined to do so where possession of the premises had not been surrendered to the landlords. <u>Id</u>. at 339. Critically, the Debtors still remain in possession of the Property and Salmar must be paid its rent until the Lease is rejected, personalty removed and the Premises is clean.

24. Salmar reserves its rights regarding its general unsecured claims whether arising pre-petition or as a result of the rejection under Section 365(g) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Salmar respectfully requests that this Court deny the Rejection Motion, or in the alternative, requests that any order granting the Rejection Motion provide that: (i) Salmar shall be paid all post-petition rent until date of removal of the Debtors' personal property from the Premises and the Premises is broom-swept; and (ii) the Debtor is deemed to have surrendered possession of the Premises as of the date of removal of the Premises and it is broom-swept.

Respectfully Submitted,

**MCMANIMON, SCOTLAND & BAUMANN, LLC**
*Attorneys for Creditor, Salmar Properties, LLC*

    */s/ Anthony Sodono, III*
    Anthony Sodono, III

Dated: May 9, 2023