**GREENBERG TRAURIG, LLP**

Paul H. Schafhauser, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3233
Email: paul.schafhauser@gtlaw.com

*Counsel to IKEA Property, Inc.*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., et al., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**IKEA PROPERTY, INC.'S OBJECTION TO THE DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) REJECTION
OF CERTAIN UNEXPIRED LEASES AND (B) ABANDONMENT
OF ANY PERSONAL PROPERTY, EFFECTIVE AS OF THE
REJECTION DATE AND (II) GRANTING RELATED RELIEF**

TO:  THE HONORABLE VINCENT F. PAPALIA,
     UNITED STATES BANKRUPTCY JUDGE:

Ikea Property, Inc. ("Ikea") files this objection (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of any Personal Property, Effective as of the Rejection Date and (II) Granting*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Related Relief* [Dkt. No. 79] (the "Motion"). In support of its Objection to the Motion, Ikea respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. Debtor Bed Bath & Beyond Inc. ("BBB") is the tenant of nonresidential property located at 300 Ikea Drive, near Route 4 and Route 17, Paramus, New Jersey 07652 (the "Ikea Premises"), pursuant to a Lease Agreement with Ikea, as landlord, dated June 10, 2004 (as amended and supplemented, the "Lease Agreement"). In turn, BBB sublets approximately 60,000 square feet of the Ikea Premises under a certain Sublease Agreement with Christmas Tree Shops, Inc. ("CTS"), as subtenant (the "Sublease Agreement").[3] On May 5, 2023, moreover, CTS and its affiliates filed chapter 11 petitions for bankruptcy relief.[4]

2. Ikea objects to the Motion because, among other things: (i) the proposed effective date of April 30, 2023 for rejection of the Lease Agreement constitutes an impermissible request for retroactive relief to the detriment of Ikea; and (ii) even the entry of an Order allowing rejection of the Lease Agreement as of the return date of the Motion would be unwarranted and unjust because BBB has not delivered, and cannot for the foreseeable future, deliver possession of the Ikea Premises to Ikea – because the Sublease Agreement remains intact, CTS remains in possession of a substantial portion of the Ikea Premises, and CTS is now also a debtor in bankruptcy.

---

[2] Capitalized terms used in this Objection but not otherwise defined herein shall have the same meanings as ascribed to them in the Motion.

[3] Despite repeated requests, Ikea has not been provided with a copy of the Sublease Agreement. Ikea understands, however, that "Christmas Tree Shops, Inc." is the named subtenant under the Sublease Agreement. Upon information and belief, "Christmas Tree Shops, LLC" – the debtor in a bankruptcy case commenced by CTS, is either a successor entity or an affiliate of the debtor and in either event a debtor in the recently-filed bankruptcy cases involving CTS. *See In re Christmas Tree Shops, LLC*, Case No. 23-10576-TMH (Bankr. D. Del. May 5, 2023) (Horan, J.).

[4] *In re Christmas Tree Shops, LLC*, Case No. 23-10576-TMH (Bankr. D. Del. May 5, 2023) (Horan, J.).

3. The Lease Agreement cannot be deemed rejected as of April 30, 2023 because the Debtors have failed to surrender possession of the Ikea Premises to Ikea. As of the date hereof, CTS – BBB's subtenant – continues to occupy a substantial portion of the Ikea Premises pursuant to the Sublease Agreement.

4. CTS' occupancy of the Ikea Premises will also continue for now. Although the Motion seeks entry of an order rejecting the Lease Agreement, the Debtors do not seek rejection of the Sublease Agreement. Moreover, as noted, CTS and its affiliates filed chapter 11 petitions for bankruptcy relief on May 5, 2023. Therefore, BBB can no longer reject the Sublease Agreement without violating the automatic stay under Section 362(a) of the Bankruptcy Code, and CTS can continue to occupy the Ikea Premises under Section 365(h) of the Bankruptcy Code so long as it continues to pay rent to BBB.

5. In short, if the Motion were to be approved, BBB would be able to continue to collect rent under the Sublease Agreement even though it has breached the Lease Agreement and failed to surrender the Ikea Premises to Ikea. Ikea, by contrast, would suffer ongoing prejudice. Not only has BBB failed to surrender possession of the Ikea Premises to Ikea, but in light of the CTS bankruptcy, Ikea may be unable to recover possession of the Ikea Premises for the foreseeable future.

6. The Debtors, however, cannot retroactively reject the Lease Agreement to the detriment of Ikea. Ikea does not have a direct contractual relationship with CTS and will face significant legal hurdles and costs trying to evict CTS from the Ikea Premises.

7. Instead of allowing Ikea to now reject the Lease Agreement with the Sublease Agreement with CTS intact, the present situation must be corrected by BBB in CTS' bankruptcy proceedings. Based on the equities of the present situation, the rejection date of the Lease Agreement can only occur on the date when BBB unequivocally and fully surrenders the Ikea

Premises to Ikea, which requires CTS to also surrender possession of (or be evicted from) the Ikea Premises to Ikea.

8. For these reasons and those provided below, the rejection date of the Lease Agreement cannot occur until BBB delivers possession of the Ikea Premises to Ikea, and until that event occurs, Ikea is entitled to postpetition rent under Section 365(d)(3) of the Bankruptcy Code.

## BACKGROUND

A. **General Background**

9. On April 23, 2023 (the "Petition Date"), each of the above-captioned debtors (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. On May 5, 2023, the U.S. Trustee appointed the official committee of unsecured creditors [Dkt. No. 218]. No trustee or examiner has been appointed in these chapter 11 cases.

B. **Ikea Premises, the Lease Agreement and the Sublease Agreement**

11. Ikea is the owner of the Ikea Premises under which BBB is a tenant pursuant to the Lease Agreement.

12. Under the Lease Agreement, BBB is required to pay monthly rent, plus additional costs, charges and expenses, in the amount of approximately $145,000 throughout 2023. Under the Lease, BBB is required to continue to pay rent, plus additional costs, charges and expenses, during the remainder of the Term, which expires on October 3, 2041.

13. On April 17, 2023, Ikea notified BBB through a demand notice that if BBB failed to pay the sum of $218,807.86, consisting of unpaid rent, additional rent, common area maintenance charges, and taxes, an event of default would exist under the Lease Agreement. To

4

date, BBB has not paid these outstanding amounts and has also failed to pay rent due for May 2023.

14. In connection with BBB's occupancy of the Ikea Premises, BBB, as sublandlord, entered into the Sublease Agreement with CTS as subtenant. As of the date hereof, CTS remains in possession and currently occupies a substantial portion of the Ikea Premises.

15. On May 5, 2023, CTS and its affiliates filed chapter 11 petitions for relief under chapter 11 of the Bankruptcy Code. *In re Christmas Tree Shops, LLC*, Case No. 23-10576-TMH (Bankr. D. Del. May 5, 2023) (Horan, J.).

### C. The Motion

16. On April 24, 2023, the Debtors filed the Motion seeking entry of an order authorizing BBB to reject the Lease Agreement (*see* Motion, Schedule 1, line 169) effective as of the later of (a) the date on which BBB surrenders possession of the Ikea Premises or (b) April 30, 2023. The Motion does not seek to reject the Sublease Agreement.

17. Since the filing of the Motion, Ikea has made many efforts to confer with the Debtors and CTS regarding rejection of the Lease Agreement and CTS' continued occupancy of the Ikea Premises.

18. To date, the Debtors have provided little information on the Motion, except to make clear that they did not seek rejection of the Sublease Agreement as part of the Motion – and rejection of the Sublease Agreement has now become more difficult because of CTS's recent filing of its own bankruptcy case. As a result, Ikea, which has not recovered possession of the Ikea Premises from BBB, has been left with no choice but to file this Objection so that its lawful rights are protected and preserved.

**OBJECTION**

19. Ikea objects to the Motion because the proposed rejection date of the Lease Agreement is impermissible unless and until (i) CTS vacates (or is evicted from) the Ikea Premises and (ii) BBB, upon CTS's surrender of possession of that portion of the Ikea Premises that it occupies, duly surrenders possession of the entire Ikea Premises to Ikea. Unless and until that occurs, Ikea is entitled to recover, among other things, postpetition rent under Section 365(d)(3) of the Bankruptcy Code.

**A.    The Proposed Lease Rejection Date of April 30, 2023 is Impermissible.**

20. Bankruptcy courts are instructed to be reluctant to grant retroactive relief. *See In re Federal-Mogul Global Inc.*, 222 Fed. Appx. 196, 201 (3d Cir. 2007) (*citing In re Elder-Beerman Stores Corp.*, 201 B.R. 759, 764 (Bankr. S.D. Ohio 1996)). Indeed, a majority of courts rule that a debtor "effectively rejects a lease when the bankruptcy court enters an order authorizing rejection" – not before then. *See In re New Valley Corp.*, No. Civ.A. 98-982, 2000 WL 1251858, at *15 (D.N.J. Aug. 31, 2000); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (Bankr. D. Colo. 2003) (providing that a request for *nunc pro tunc* relief on a motion to reject an unexpired real property lease "is the exception to the general rule that rejection is effective upon entry of the order").

21. When *nunc pro tunc* relief is requested, a bankruptcy court must first weigh the equities before it authorizes such rejection. *See New Valley Corp.*, 2000 WL 1251858, at *15; *see also In re Thinking Machs. Corp.,* 67 F.3d 1021, 1028 (1st Cir. 1995); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010). When doing so, the burden is on the moving party – *i.e.*, the Debtors in this case – to demonstrate that such relief is appropriate. *See In re TW, Inc.*, No. Civ. 03-533, 2004 WL 115521, at *2 (D. Del. Jan. 14, 2004) ("An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only

after a balancing of the equities in a particular case. *It is the burden of the moving party to show that relief, of this character, is appropriate.*") (emphasis added).

22. In instances where a debtor fails to properly surrender leased premises before the proposed rejection date, the equities strongly favor denying retroactive relief. *See In re TW, Inc.*, 2004 WL 115521, at *2 (affirming the bankruptcy court's denial of retroactive relief, and noting in doing so as follows: "In the present case, the bankruptcy court placed emphasis on the fact that possession of the Premises was not properly surrendered and that fault, in this regard, indisputably rested with the debtor. *Unlike circumstances where possession has been surrendered prior to the petition date, a landlord without actual possession may face a greater risk and greater uncertainty as to whether the lease will ultimately be rejected.*") (emphasis added).

23. If a subtenant remains in possession of leased premises, retroactive relief is inappropriate; the appropriate date for rejection is when the debtor actually returns possession of the property to the debtor, which includes removing the subtenants. *See In re Amicus Wind Down Corp.*, Bankr. Case No. 11-13167, 2012 WL 604143, at *2-3 (Bankr. D. Del. Feb. 24, 2012) (finding that, absent state court eviction proceedings, the debtors could not unilaterally surrender the subtenant's possessory rights in the leased premises); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (declining to find that the debtors had surrendered the premises where subtenants remained in the premises and instead concluding that "[t]he more appropriate date is the day the Debtors surrendered the premises to the Landlords, and the Landlords were able to enter into agreements with the current tenants")).

24. Here, the balance of the equities favors Ikea, and the Debtors should not be entitled to reject the Lease Agreement as of April 30, 2023 – or, for that matter, at any time until Ikea has recovered possession of the Ikea Premises. The Debtors have not yet surrendered possession of the the Ikea Premises to Ikea. CTS continues to possess a substantial portion of the Ikea Premises

7

under the Sublease Agreement, too. *See Amicus Wind Down*, 2012 WL 604143, at *2-3; *Chi-Chi's, Inc.*, 305 B.R. at 399.  Therefore, the Debtors have failed to duly surrender possession of the Ikea Premises to Ikea.

25. Prior to filing this Objection and well before CTS filed its own bankruptcy petition, Ikea repeatedly attempted to raise the status of the Sublease Agreement with the Debtors, but to no avail.  At this point, particularly since the Debtors elected not to reject the Sublease Agreement as part of the Motion, CTS' continued occupancy of the Ikea Premises, together with the ramifications of CTS's recent bankruptcy filing, must be BBB's problem.

26. The Debtors have enjoyed the benefit of the Sublease and should bear any burden that results from Sublease Agreement, including the present situation.  BBB can remedy the situation by seeking relief in CTS' bankruptcy proceeding by either filing (ii) a motion for an order authorizing CTS to abandon the Ikea Premises or to relinquish its possessory interest in the Ikea Premises or (ii) a motion to lift the automatic stay to allow the Debtors to commence an eviction proceeding against CTS with respect to the Ikea Premises under New Jersey law.

27. If the Debtors were permitted to reject the Lease Agreement as of April 30, 2023 – or at any time while CTS is in possession of the Ikea Premises – the result would be wholly inequitable.  As mentioned above, the Debtors are not rejecting the Sublease Agreement through the Motion, which will allow for BBB to collect rent under the Sublease Agreement even though it has breached the Lease Agreement and failed to surrender the Ikea Premises to Ikea.  Now that CTS is a debtor in bankruptcy, the automatic stay prevents the Debtors from rejecting the Sublease Agreement and CTS could, if it so chose, occupy the Ikea Premises for the term of the Sublease Agreement pursuant to Section 365(h) of the Bankruptcy Code.

28. For its part, Ikea lacks privity of contract with CTS and thus is not as well-situated as BBB to seek relief with respect to the Sublease Agreement. *See Marino v. Mendez,* 243, N.J.

Super. 342, 347 (Law Div. 1989) ("*As between the owner of a building in which an under-tenant or subtenant resides, and the under-tenant, there is no privity of contract*. There is no agreement between those parties.") (emphasis added) (citing *Berkeley Dev. Co. v. Great Atl. & Pac. Tea Co.*, 214 N.J. Super. 227. 235 (Law Div. 1986)); *see also Wehrle v. Landsman,* 23 N.J. Super. 40, 46 (Law Div. 1952) ("A subletting creates a relationship of landlord and tenant between the tenant (here Champion) and the subtenant (here Fit-Rite and assignees), but there is no privity of contract between the landlord (here Wehrle) and the subtenant (Fit-Rite and assignees of Fit-Rite including defendant)").

29. Because BBB, not Ikea, is in privity of contract with CTS, BBB is best situated to address and resolve the issues relating to CTS's continued occupancy of the Ikea Premises pursuant to the Sublease Agreement. *See In re Amicus Wind Down Corp.*, 2012 WL 604143 at *2 ("The Debtors, not Park Tysen, are in privity of contract with the Subtenant, and the Debtors are best legally situated to resolve this situation in the New York courts.").

30. CTS has retained its possessory rights under the Sublease Agreement with BBB. BBB, in turn, has benefited from the Sublease Agreement for years. "*The Debtors enjoyed the right, and the benefit, of the Sublease, and now them must also bear any burdens that result from the Sublease, including the present situation.*" *In re Amicus Wind Down Corp.*, 2012 WL 604143 at *2 (emphasis added).

31. Any rejection date should therefore give the parties time to sort through the issues relating to the Sublease Agreement and, in all events, should be effective no sooner than the date on which BBB can properly surrender possession of the Ikea Premises, including the entire portion of the Ikea Premises now occupied by CTS. This reasoning follows suit with the Debtors' own position as outlined in Paragraph 10 of the Motion. (Motion, ¶ 10) (providing that the "Rejection

Date" will be effective as of the later of (a) the stated rejected date or (b) "the date upon which the Debtors surrender the premises to the landlord").

32. For all of these reasons, the proposed rejection date of April 30, 2023 is impermissible, and the rejection of the Lease Agreement cannot be effective unless and until (i) CTS vacates the Ikea Premises and (ii) BBB, upon CTS's surrender of possession of that portion of the Ikea Premises that it occupies, duly surrenders possession of the entire Ikea Premises to Ikea.

### B. Ikea is Entitled to Postpetition Rent and "Stub Rent."

33. Ikea is entitled to postpetition rent for the continued occupancy of the Ikea Premises by CTS and BBB for May 2022 and for all subsequent months during which BBB fails to surrender possession of the Ikea Premises to Ikea.

34. Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform all obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential property, until such lease is assumed or rejected, notwithstanding Section 503(b)(1)." 11 U.S.C. 365(d)(3). "The clear and express intent of § 365(d)(3) is to require [Debtors] to perform the lease in accordance with its terms." *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001). By failing to pay rent for May 2023 (and for all subsequent months during which BBB fails to surrender possession of the Ikea Premises to Ikea), the sum of postpetition amounts BBB owes to Ikea under the Lease Agreement equals no less than $145,076.47 (plus rent and other sums accruing after May 2023).

35. Additionally, as required by Section 503(b)(1) of the Bankruptcy Code, the Court should grant Ikea an administrative expense claim for the "stub rent" occurring from April 23, 2023 through April 30, 2023). *See In re Einstein Moomjy, Inc.*, No. 11-34723 NLW, 2012 WL 2884943, at *8 (Bankr. D.N.J. July 13, 2012).

## RESERVATION OF RIGHTS

36. Ikea files this Objection to fully preserve and reserve all of its rights, claims and remedies pertaining to the Lease Agreement, at law and equity, including, without limitation any and all claims that Ikea may have in connection with the Lease Agreement and the Debtors' rejection of the same (including, without limitation, claims for unpaid rent, additional rent, costs, fees and charges under the Lease Agreement), together with all rights and remedies that Ikea may have or assert with respect to the Ikea Premises or any occupants thereof.

**WHEREFORE**, Ikea requests that the Court enter an order consistent with this Objection and grant such other and further relief as is just and equitable.

Dated: May 9, 2023                    **GREENBERG TRAURIG, LLP**

By: */s/ Paul H. Schafhauser*
Paul H. Schafhauser, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3233
Email: paul.schafhauser@gtlaw.com

*Counsel to IKEA Property, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on May 9, 2023, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey on those parties registered to receive electronic notices, and (ii) electronic mail on counsel to the Debtors.

By: */s/ Paul H. Schafhauser*
Paul H. Schafhauser, Esq.