**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

# DEBTORS' MOTION FOR ENTRY OF AN ORDER
# (I) AUTHORIZING REJECTION AND TERMINATION OF LEASE
# PURSUANT TO §§ 105, 363 AND 365 AND (II) GRANTING RELATED RELIEF

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing the rejection and termination of that certain lease of non-residential real property dated as of March 5, 2009, as subsequently amended or modified, between Debtor, Harmon Stores, Inc. (the "Tenant"), and TAFT ASSOCIATES (the "Landlord") (the "Lease") governing the premises in a shopping center located at 11 Taft Road, Totowa, New Jersey (the "Premises"); (b) authorizing the Debtors and Landlord to enter into the lease termination agreement attached as Exhibit 1 to the Order (the "Lease Termination Agreement"), by which the Debtors shall reject and terminate the Lease in exchange for, among other things, (i) $3,000,000, (ii) a release of all claims held by Landlord against the Debtors, (iii) a release of Tenant's claims against the Landlord, and (iv) the Debtors' transfer to the Landlord of certain solar facilities and equipment located on the Premises (the "Solar Facilities") at the Lease at the premises, on the terms set forth in the Lease Termination Agreement; and (c) granting related relief.[2]

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration") or the Lease Termination Agreement, as applicable. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5. Under the terms of the Lease, the Landlord leased the Premises to the Debtors.

6. Debtors do not intend to assume the Lease and, therefore, the Lease will be deemed terminated, and rejected, as of the date the Order is entered.

7. After extensive arms-length negotiations, the parties entered into the Lease Termination Agreement pursuant to which the Debtors shall reject and terminate the Lease and transfer the Solar Facilities to the Landlord, on the terms set forth in the Lease Termination Agreement.

## Lease Termination Agreement—Proposed Terms

8.  As set forth more fully in Exhibit 1 to the Order, the key provisions of the Lease Termination Agreement, and the information required by Local Rule 6004-1, are summarized below:[3]

| Local Rule | Provision | Summary Description |
|---|---|---|
| 6004-1(a)(3)(A) | Property to Be Sold | As identified in the Lease Termination Agreement, including the Debtors' rights in and to the Lease are being terminated, and the property transferred shall include the Solar Facilities and any FF&E remaining in the Premises as of the Closing Date |
| 6004-1(a)(3)(B) | Closing Date | On or before May 31, 2023 |
| 6004-1(a)(3)(C) | Purchase Price | $3,000,000 cash, plus a waiver of any claims against the Debtors and the Debtors' estates |
| 6004-1(a)(3)(D) | Conditions of Sale | (a) Debtors have delivered possession of the Premises to Landlord; (b) Debtors have delivered to Landlord the keys and access codes to the Premises; and (c) An order has been entered approving the entirety of the Lease Termination Agreement. |
| 6004-1(a)(3)(E) | Deadline for Approval/Closing | Termination Date shall be no later than May 31, 2023 |
| 6004-1(a)(3)(F) | Deposit | $300,000 |
| 6004-1(a)(3)(G) | 1146(b) Tax Determination | N/A |
| 6004-1(a)(3)(I) | Lease to Assumed and Assigned | N/A. The Lease with the Landlord will be rejected and terminated. |
| 6004-1(a)(3)(J) | Credit Bidding | N/A |
| 6004-1(a)(3)(K) | Broker's Commission / Sale Agent Fee | N/A. However, to the extent any fee or commission is due to A&G Realty, the Debtors shall have sole responsibility therefor. |
| 6004-1(b)(1) | Insider Transaction | N/A |
| 6004-1(b)(2) | Agreements with Management / Key Employees | N/A |
| 6004-1(b)(3) | Waiver, Release or Satisfaction of Claims | The Lease Termination Agreement provides for certain mutual releases, including Landlord's agreement to release the Debtors and waiving any claims against the Debtors' estates, including any claims asserted in the Pre-Petition Complaint, all claims relating to the Debtors' obligations to repair and restore the Premises (the cost of which is asserted by the Landlord to be in excess of $5,000,000), all claims relating to the Debtors' unpaid rent and other charges under the Lease purported to be due. |
| 6004-1(b)(4) | Agreement to limit marketing / not solicit competing offers | Except to the extent the Debtors' fiduciary obligations require, the Debtors have agreed to proceed by way of private sale. |
| 6004-1(b)(5) | Interim Agreement with Purchaser | N/A |

---

[3] The terms described herein are for illustrative purposes only. To the extent there is any inconsistency between the terms set forth in the Lease Termination Agreement and the terms described herein, the Lease Termination Agreement shall control in all respects.

4

| Local Rule | Provision | Summary Description |
|---|---|---|
| 6004-1(b)(6) | Release of Sale Proceeds | N/A |
| 6004-1(b)(7) | Limitation on Pursuing Avoidance Action Claims | N/A |
| 6004-1(b)(8) | Successor Liability | N/A. Though Landlord releases Debtors and their successors and Tenant releases Landlord's successors. |
| 6004-1(b)(9) | Sale of Property Free and Clear of Leasehold Interest, License or Other Right | The Debtors shall transfer the Solar Facilities free and clear of all liens, claims and encumbrances. Moreover, the Debtors' leasehold interest shall be terminated and the Debtors are abandoning any interest in any FF&E remaining at the Premises free and clear of all liens, claims and encumbrances. |
| 6004-1(b)(10) | 6004(h) and 6006(d) Waivers | In order to meet the Termination Date deadline required by the Lease Termination Agreement, the Debtors have requested the waiver of any stay imposed by Bankruptcy Rules 6004(h) and 6006(d). |

9. This transaction is intended to be private; however, the Debtors reserve all rights to accept higher and better offers up until the hearing on the Motion.

**Basis for Relief Requested**

**I.   Approval of Transaction**

10. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

11. The sale of a debtor's property should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper (In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club,* 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.,* 124 B.R. 169, 176 (D. Del. 1991). The

5

*Delaware & Hudson Railway* court held that once a court is satisfied that there is a sound business reason, "the court must also determine that the [debtor] has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.*

12. The Debtors propose to terminate the Lease and transfer the Solar Facilities to the Landlord and have concluded that such termination and transfer, as set forth in the Lease Termination Agreement, is supported by a number of sound business reasons. The payment terms represent fair market value of the Solar Facilities and Lease and the Lease Termination Agreement also includes a waiver of all rent, whether due prior to the Petition Date, or to the extent payable under sections 365(d)(3) or 503(b) of the Bankruptcy Code, thereby avoiding any administrative expenses that would otherwise be asserted against the Debtors' estates. In addition, the Landlord has agreed to release any rejection damage claim.

13. For the reasons noted above, the immediate termination of the Lease, transfer of the Solar Facilities, and closing under the Lease Termination Agreement is supported by sound business reasons and is in the best interests of the Debtors' estates. Accordingly, the Debtors request approval under section 363(b) of the Bankruptcy Code of the Lease Termination Agreement and transaction with the Landlord.

**II.    Transfer of Property is Free and Clear of All Liens, Claims, and Encumbrances**

14. The Landlord is only willing to complete the transfer of the Solar Facilities if those are sold free and clear of all liens, claims, and encumbrances. Accordingly, the Debtors are seeking authorization to transfer the Solar Facilities free and clear of all liens, claims, and encumbrances to maximize value.

15. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this

> section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

16. Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the transfer of the Solar Facilities free and clear of all liens, claims, and encumbrances. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.,* 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.,* 322 F.3d 283, 289 (3d Cir. 2003).

17. The Debtors submit that it is appropriate to transfer the Solar Facilities on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) of the Bankruptcy Code are satisfied with respect to such transfer. In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Such

lienholders that do not object to a transfer should be deemed to have consented.[4] *See FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.),* 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot,* 94 B.R. at 345 (same).

18. Furthermore, the Debtors propose that any liens, claims, and encumbrances asserted against the Solar Facilities be transferred to and attach to the proceeds of such transfer in the same order of priority and with the same validity, force and effect that such creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto. *See Folger Adam,* 209 F.3d at 259; *In re Elliot,* 94 B.R. at 345; *In re Circus Time, Inc.,* 5 B.R. 1, 7 (Bankr. D. Me. 1979).  Therefore, the Debtors may transfer the Solar Facilities free and clear of all liens, claims, and encumbrances on the terms set forth in the Lease Termination Agreement.

### III. Good Faith of Landlord Under Section 363(m) of the Bankruptcy Code.

19. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal,

---

[4] The Debtors note that they have shared an outline of the terms of the parties' agreement with the Debtors' secured lenders who have not raised any objection to the proposed transaction.

> unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.,* 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *see also Cinicola v. Scharffenberger,* 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate Real Property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.,* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

20. The Lease Termination Agreement was a negotiated, arm's-length transaction, in which the Landlord acted in good faith and in compliance with the *Abbotts Dairies* standards. The Landlord is also an independent third-party buyer and is not an "insider" or "affiliate" as defined in section 101 of the Bankruptcy Code. The Debtors thus request that the Court find that the Landlord purchased the Solar Facilities in good faith within the meaning of section 363(m) of the Bankruptcy Code.

9

### IV. A Private Transaction Is Appropriate.

21. Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code (and D.N.J. LBR 6004-1(c) and 6004-5 each contemplate private sales). Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by *private sale* or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added); *see Berg v. Scanlon (In re Alisa P'ship),* 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

22. Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding sales under section 363 of the Bankruptcy Code, a debtor may conduct a private sale if a good business reason exists. *See*, *e.g.*, *In re MF Global, Inc.,* 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015 ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty, Inc.,* 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.,* 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.,* 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.,* 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

23. The Debtors submit that the proposed private transaction with the Landlord in accordance with the Lease Termination Agreement is appropriate in light of the facts and circumstances of these Chapter 11 Cases. Specifically, a long and complicated sale process with bid procedures and an auction is unlikely to net the estates a significant appreciable benefit through

10

a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process.

24.     As a result, the transaction with the Landlord allows the Debtors to maximize the value of the Lease and Solar Facilities and provides a significant benefit to the Debtors' estates. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the Landlord's offer is the highest and best offer for the Lease and Solar Facilities at this time, the Debtors request that the Court approve the proposed private transaction with the Landlord in accordance with the Lease Termination Agreement.

**V.     Rejection of the Leases Is Supported by Sound Business Reasons.**

25.     Section 365(a) of the Bankruptcy Code provides that a debtor "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval.

26.     Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Matter of Taylor*, 103 B.R. 511, 517 (D.N.J. 1989), *aff'd in part, rev'd, in part*, 913 F.2d 102 (3d Cir. 1990) (citing *Sharon Steel Corp. v. Nat'l Gas Distribs. Corp.*, 812 F.2d 36, 39-40 (3d Cir. 1989). *See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *City of Covington v. Covington Landing L.P.*, 71 F.3d. 1221, 1226 (6th Cir. 1995).

27. Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. *See, e.g., In re Balco Equities, Ltd., Inc.*, 323 B.R. 85, 98-99 (Bankr. S.D.N.Y. 2005); *cf Phar-Mor, Inc. v. Strouss Bldg.*, 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor…. Courts should generally defer to a debtor's decision whether to reject an executory contract."); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[a] court will ordinarily defer to the business judgment of the debtor's management").

28. The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re W & L Assocs., Inc.,* 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do not consider the 'business judgment test' to be a strict standard to meet."); *In re Metro Transp. Co.*, 87 B.R. 338, 343 (Bankr. E.D. Pa. 1988) ("We reiterate that the 'business judgment test' is not a 'strict standard to meet.'"); *In re Hardie,* 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989) (court should not disturb the debtor's decision to reject an executory contract unless "the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.").

29. Here, the Lease Termination Agreement provides for the rejection and termination of the Lease effective as of one business day after the date on which the Court enters and order approving the Lease Termination Agreement. Rejection here is supported by sound business reasons because the Landlord supports the rejection and will waive all outstanding rent claims and release rejection claims against the estates as part of the transaction. Accordingly, rejection is appropriate under the terms of the Lease Termination Agreement.

### Request of Waiver of Stay

30. To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

### Waiver of Memorandum of Law

31. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

32. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants

the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

33.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

34.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the United States Trustee for the District of New Jersey; (b) the Committee[5]; (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent and counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (*l*) the Debtors' Canadian Counsel; (m) the Landlord; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

---

[5]    On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 218].

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: May 11, 2023

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
 wusatine@coleschotz.com
 fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: josuha.sussberg@kirkland.com
 emily.geier@kirkland.com
 derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*