**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

---

**Order Filed on May 17, 2023**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

## SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USE OF EXISTING BUSINESS FORMS AND RECORDS, (B) MAINTAIN EXISTING CORPORATE

**DATED: May 17, 2023**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM, (C) PAY PREPETITION BANK FEES ASSOCIATED WITH THE CASH MANAGEMENT SYSTEM, AND (D) CONTINUE PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY BALANCES; AND (III) WAIVING CERTAIN U.S. TRUSTEE REQUIREMENTS FOR A PERIOD NOT TO EXCEED THIRTY DAYS**

The relief set forth on the following pages, numbered three (3) through fourteen (14), is **ORDERED**.

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | Second Interim Order (I) Authorizing the Debtors To (A) Continue Use of Existing Business Forms and Records, (B) Maintaining Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated With The Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days* [Docket No. 18] (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Second Interim Order"): (a) authorizing the Debtors to (i) continue using their existing Business Forms and records in the ordinary course of business, (ii) maintain the Bank Accounts and operate their Cash Management System, (iii) pay prepetition Bank Fees associated with the Cash Management System, and (iv) continue performing Intercompany Transactions consistent with historical practices; (b) granting administrative expense status to postpetition intercompany balances; (c) granting an interim limited waiver of the Debtors' compliance with the deposit and investment guidelines set forth in section 345 of the Bankruptcy Code; (d) scheduling a final hearing 28 days after commencement of these Chapter 11 Cases to consider entry of an order approving the relief requested herein on a final basis, and (e) granting related relief, all as more fully set forth in the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion; and upon the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, and the Court having been advised that all formal or informal objections to the Motion have been resolved, **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on an interim basis as set forth herein.

2. The Final Hearing on the Motion will be held on **May 31, 2023 at 2:30 p.m. (Eastern Time)**. Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before **May 24, 2023 at 5:00 p.m. (Eastern Time)**. If no objections are filed to the Motion, this Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3. The Debtors are authorized, on an interim basis, and in all cases consistent with this Second Interim Order, to continue operating the Cash Management System in accordance with prepetition practices, and the ordinary course of business, honor their prepetition obligations

related thereto, and maintain existing Business Forms. The Debtors shall provide reasonable notice to the U.S. Trustee, counsel to the DIP Agent, the Prepetition ABL Agent, and counsel to any statutory committee appointed in the Chapter 11 Cases of any material changes to their Cash Management System.

4. The Debtors are hereby authorized to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date; (b) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (e) pay the Bank Fees, including any prepetition amounts, and any postpetition ordinary course Bank Fees incurred in connection with the Bank Accounts (which, absent such payment, would be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code), and to otherwise perform their obligations under the Bank Account Agreements; *provided*, that in each case, such action is taken in the ordinary course of business and consistent with historical practices. Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtors in Possession" and the corresponding bankruptcy case number on all checks.

5. To the extent set forth herein, the Debtors are authorized to, consistent with prepetition practices and this Second Interim Order, honor, perform under, and otherwise satisfy all prepetition and postpetition obligations arising under the FDMS Processing Agreements, including any payments or reimbursements owed to Payment Processing Providers in the ordinary

course of business and consistent with prepetition practices. Those FDMS Processing Agreements existing between the Debtors, the Cash Management Banks, and the Payment Processing Providers will continue to govern the postpetition cash management relationship between the Debtors, the Cash Management Bank, and the Payment Processing Providers. Subject to the applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such FDMS Processing Agreements shall remain in full force and effect without further order of this Court or, with respect to any such agreement with any Cash Management Bank and Payment Processing Provider (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise, subject to applicable bankruptcy law.

6. If any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines, the Debtors shall have thirty (30) days from the date of this Second Interim Order to come into compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines, without prejudice to the Debtors' ability to seek an additional extension or a final waiver of such requirements; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from this Court to the extent that an agreement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee).

7. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption, consistent with historical practices, and in the ordinary course, and to receive,

process, honor, and pay, solely to the extent of available funds and consistent with the interim and final orders granting relief with respect to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. [25] (the "DIP Orders"), any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be. The Bank Account Agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, and any provisions relating to offset or charge-back rights with respect to return items, shall remain in full force and effect.

8. The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, consistent with historical practice and in accordance with the terms of the DIP Orders, including, without limitation, the opening of any new bank accounts, the closing of any existing Bank Accounts, and entrance into ancillary agreements, including new deposit account control agreements related to the foregoing, as the Debtors may deem necessary and appropriate. Any new bank account opened by the Debtors shall be established at an institution that is (a) a party to a UDA with the United States Trustee for the District of New Jersey or is willing to immediately execute a UDA and (b) bound by the terms of this Second Interim Order. The Debtors shall provide notice within fifteen (15) days to the U.S.

Trustee, counsel to the DIP Agent, the Prepetition ABL Agent, and counsel to any statutory committee of the opening of such account or closing of any Bank Account; *provided* that such opening or closing shall be timely indicated on the Debtors' monthly reports.

9. The relief granted in this Second Interim Order is extended to any new bank account opened by the Debtors in the ordinary course of business and consistent with historical practice after the date hereof, in accordance with the terms of the DIP Orders, including, without limitation, the LC Cash Collateral Account, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank. The Debtors are further authorized, but not directed, to open the LC Cash Collateral Account at JPMorgan Chase Bank, N.A. for the purpose of cash collateralize their payment and/or reimbursement obligations under any outstanding letters of credit issued under the Prepetition ABL Facility (the "ABL LC Obligations") and to execute any appropriate documentation to grant the Prepetition ABL Agent a first priority lien on all cash on deposit in the LC Cash Collateral Account to secure the ABL LC Obligations.

10. All Cash Management Banks that are provided with notice of this Second Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

11. The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, consistent with historical practices and the Cash Management System, without the need for further order of this Court for: (a) all checks drawn on the Debtors' Bank Accounts which are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items

8

deposited in one of Debtors' Bank Accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as Bank Fees, including service charges, for the maintenance of the Cash Management System.

12. The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

13. Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, of which items the Debtors shall promptly notify the Cash Management Banks, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Second Interim Order (a) at the direction of the Debtors; (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Second Interim Order.

14. Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15. The Debtors are authorized to continue the Intercompany Transactions in the ordinary course of business.

16. All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions are authorized hereunder, subject to paragraph 16 hereof, and postpetition obligations under any Bank Account Agreements are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted under the DIP Order, including, without limitation, DIP Superpriority Claims and DIP Liens, Adequate Protection Claims, or Adequate Protection Liens (each as defined in the DIP Orders).

17. In connection with the Intercompany Transactions, the Debtors shall continue to maintain accurate and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, distinguished between prepetition and postpetition transactions, and properly recorded on intercompany accounts and shall make such records available to the U.S. Trustee, any statutory committee appointed in these Chapter 11 Cases, counsel to Prepetition ABL Agent, and counsel to the DIP Agent upon request.

18. Nothing contained in the Motion or this Second Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not

exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

19. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Second Interim Order.

20. Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of which entity pays those disbursements.

21. Notwithstanding the relief granted in this Second Interim Order and any actions taken pursuant to such relief, nothing in this Second Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Second Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Second Interim Order is not intended and should not be

construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

22. The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with Banks Fees or Processor Fees.

23. he Debtors are authorized, but not directed, pursuant to section 364(b) of the Bankruptcy Code, to continue utilizing any existing corporate credit card or purchase card arrangements, including, but not limited to, any purchase cards issued by PNC Bank, National Association, in the ordinary course of business and consistent with prepetition practices, including by paying any obligations outstanding with respect thereto, whether or not such obligations were outstanding on or before the Petition Date. Those agreements existing between the Debtors and the card issuers governing any existing corporate credit card or purchase card arrangements, including any deposit agreement with PNC Bank, National Association, shall continue to govern the postpetition relationship with respect to the purchase cards and credit cards between the Debtors and the card issuers and all of the provisions of such agreements, including, but not limited to, the termination, fee provisions, rights, benefits, collateral, offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of this Court, or with respect to any such agreement, with the issuer of the purchase cards or credit cards.

24. Notwithstanding anything to the contrary contained in the Motion or this Second Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the

requirements imposed on the Debtors under the terms of each interim and final order entered by this Court in respect of the DIP Orders, including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

25. Nothing in this Second Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

26. Nothing in this Second Interim Order shall alter or limit any authorization, requirement or relief contained in, or prevent Non-Debtor Affiliates BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any order granted thereunder, and to the extent of any inconsistency between this Second Interim Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

27. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Second Interim Order in accordance with the Motion.

29. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Second Interim Order shall be effective and enforceable immediately upon entry hereof.

30. Solely to the extent any letters of credit issued in connection with the Prepetition ABL Facility for the benefit of the Debtors are drawn, JPMorgan may apply funds from the LC Funding Account or the LC Cash Collateral Account to satisfy the ABL LC Obligations, as appropriate, without seeking further relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code and without the Debtors' further consent or further order of this Court as it relates to the funds held in the LC Funding Account or LC Cash Collateral Account.

31. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

32. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

33. The Debtors shall serve by regular mail a copy of this Second Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Second Interim Order.

34. Any party may move for modification of this Second Interim Order in accordance with Local Rule 9013-5(e).

35. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Second Interim Order.