**GRAFF SILVERSTEIN LLP**
David Graff, Esq.
Matthew J. Silverstein, Esq.
3 Middle Patent Road
Armonk, NY 10504
Telephone: (212)-381-6055
dgraff@graffsilversteinllp.com
msilverstein@graffsilversteinllp.com

**PARSONS BEHLE & LATIMER**
Darren Neilson, Esq. (*pro hac vice* pending)
201 S Main St, #1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
DNeilson@parsonsbehle.com

*Counsel for Telegraph Marketplace Partners II, LLC*

**UNITED STATES BANKRUPTCY**
**COURT DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Joint Administration Requested) |

**MOTION TO CONFIRM ABSENCE OF AUTOMATIC STAY**

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

Creditor and landlord Telegraph Marketplace Partners II, LLC, a Utah limited liability company ("**Telegraph Partners**") respectfully state the following in support of this motion (the "**Motion**"):

### Relief Requested

1. Telegraph Partners seeks an order, substantially in the form attached hereto as **Exhibit 1**, confirming the absence of the automatic stay, or in the alternative, granting relief from the automatic stay entered in this Chapter 11 proceeding, and permitting Telegraph Partners to continue its eviction of Bed Bath & Beyond, Inc. (the "**Debtor**") currently pending before the Firth Judicial District Court for the County of Washington, State of Utah, Case Number 230500322 (the "**Eviction Complaint**").

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362(b)(10), 541(b)(2), and 365(c)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-1, and 9013-1-4 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Rules**").

### Background

5. On or about September 19, 2003, Debtor executed and entered into a lease agreement (the "**Lease Agreement**") with Telegraph Partners pursuant to which Telegraph Partners leased to the Debtors real property located at 844 Telegraph Street, Suite 2, in

Washington City, Utah (the "**Premises**"). A copy of the Lease Agreement is attached as **Exhibit A** to the Declaration of Eileen Higgins ("**Higgins Declaration**") filed concurrently herewith.

6. Under the Lease Agreement, Debtor agreed to pay monthly rent and additional rent, which amount includes base rent and "Common Area Charges," and a "reconciliation share" of Common Area Charges not covered by Debtor's month payments of Common Area Maintenance Charges during the immediately preceding calendar year (a "**Reconciliation Share**").

7. Under Section 5.1.2 (b) of the Lease Agreement, Defendant agreed to pay its Reconciliation Share within sixty (60) days following receipt from Landlord of a "CAC Reconciliation Statement."

8. Telegraph Partners delivered a CAC Reconciliation Statement to Debtor for calendar year 2022 on January 3, 2023; therefore, Debtor was required to pay its Reconciliation Share on or before March 4, 2023.  A copy of the CAC Reconciliation Statement is attached as **Exhibit B** to the Higgins Declaration.

9. Debtor failed to pay its 2022 Reconciliation Share on or before March 4, 2023, despite Telegraph Partner' repeated calls for Debtor to make such payment.  Such calls included a reference to Debtor's failure to pay its 2022 Reconciliation Share in notice of default delivered by Telegraph Partners to Debtor dated February 2, 2023, relating to Debtor's failure to timely pay rent for the month of February 2023, as well as a notice of default delivered to Debtor on March 6, 2023 (this notice was dated March 2, 2023, but not effective under the Lease Agreement until delivered to Defendant on March 6, 2023). Copies of such notices are attached as **Exhibit C** to the Higgins Declaration.

10. Under Section 18 of the Lease Agreement, notices are effective upon receipt. Accordingly, the notice of default delivered to Debtor on March 6, 2023, gave Debtor 10 days, until March 16, 2023, to cure the default.

11. Debtor failed to cure the default within the cure period.

12. Telegraph Partners delivered to Debtor a Notice of Termination of Lease dated March 31, 2023, pursuant to Section 16.1.2 (c) of the Lease Agreement, with such termination to be effective as of April 6, 2023. A copy of such notice is attached as **Exhibit D** to the Higgins Declaration.

13. As a result of the termination of the Lease Agreement, Debtor became a tenant-at-will.

14. On April 12, 2023, Telegraph Partners delivered to Debtor a "Five Day Notice To Vacate Premises or, in the alternative, Fifteen Day Notice To Vacate Premises." Once the Lease Agreement was terminated on April 6, 2023, the Debtor became a tenant-at-will. As such the Debtor was subject to a five-day notice to vacate under Utah Code Ann. § 78B-6-802(1)(b)(ii). A copy of the notice is attached as **Exhibit E** to the Higgins Declaration.

15. Debtor's five-day period to vacate the Premises expired at 11:59 p.m., on April 18, 2023.

16. After the Lease Agreement had been terminated, on April 23, 2023, the above-captioned debtors and debtors-in-possession, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended the ("**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of New Jersey.

## Basis for Relief

**A. Under the Bankruptcy Code, A Terminated Lease Pre-Petition is not Property of the Estate and Cannot Be Pulled Back into the Estate.**

Courts have identified three sections of the Bankruptcy Code concerning the significant safeguards provided to lessors of nonresidential real property—§§ 362(b)(10), 541(b)(2), and 365(c)(3)—all of which were added by the 1984 amendments to the Bankruptcy Code.

Section 362(a) generally provides an automatic stay of actions against the debtor. However, § 362(b)(10) specifically excludes from the stay "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated

term of the lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. § 362(b)(10); *see In re T.A.C. Grp.*, 294 B.R. 199, 202 (Bankr. D. Mass. 2003) ("[T]he debtor's interest in a terminated lease is not protected by the automatic stay"); *In re Neville*, 118 B.R. 14, 18 (Bankr. E.D.N.Y. 1990) ("The language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of non-residential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title."). "Terminated by the expiration of the stated term" language in § 362(b)(10) has not been limited simply to instances where the calendar date specified as the end of the lease term has passed. Rather, the exception has been held to apply in instances where a lease has been effectively terminated under applicable nonbankruptcy law prior to the expiration of its stated term. *See In re Policy Realty Corp.*, 242 B.R. 121, 127-28 (S.D.N.Y. 1999) (holding that even where landlords have accelerated the lease term, the § 362(b)(10) exception to the automatic stay prevented the stay from applying); *see also Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 320 (7th Cir. 1995) (explaining that the Bankruptcy Code "draw[s] no meaningful distinction between 'unexpired' and 'terminated'" in context of § 365).

Section 541 of the Bankruptcy Code provides for an expansive definition of property of the estate as of the petition date. One exception is "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case." 11 U.S.C. § 541(b)(2); *see In re T.A.C. Grp.*, 295 B.R. at 202 ("A lease that has been terminated prior to the filing of a bankruptcy petition is not property of the estate . . . .").

Finally, Section 365 of the Bankruptcy Code allows the Debtor to assume an unexpired lease. However, Section 365(c)(3) prohibits the assumption by the debtor if "such lease is of

nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). Once a lease has been terminated, the bankruptcy court cannot revive it, even by its equitable powers, despite the debtor's present ability to cure any default. *Neville*, 118 B.R. at 18. Concomitantly, where a debtor is unable to assume a lease pursuant to Section 365(a), there is cause for relief from the automatic stay. *See C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.),* 422 B.R. 746, 758-59 (B.A.P. 10th Cir. 2010); *Rich-Taubman Assocs. v. Masterworks, Inc. (In re Masterworks, Inc.)*, 94 B.R. 262, 265 (Bankr. D. Conn. 1988) (stating that the debtor has the burden of proof to show that it could assume the lease); *see also Memphis-Friday's*, 88 B.R. at 843. If the debtor cannot cure the default under the lease because the lease has been terminated, the lease cannot be assumed by the debtor. As one court commented, "[a]lthough the reasoning . . . is not always explicit, courts appear to focus on a debtor's existing contractual right to cure and revive the contract, thus making termination incomplete and giving the debtor a sufficient interest in the contract to assume. It follows that if there is an assumable lease under § 365 which is property of the estate, it is subject to the automatic stay provisions of § 362(a)." *C.W. Mining Co.,* 422 B.R. at 758-59 (footnote omitted).

   **B.** **Under Utah Law, the Lease Agreement Terminated and Is Therefore Not Part of the Debtor's Estate.**

   Common to §§ 362(b)(10), 541(b)(2), and 365(c)(3) is whether the commercial lease was terminated prepetition under applicable nonbankruptcy law. *see C.W. Mining*, 422 B.R. at 755 (looking to Utah law to interpret the terms of the contract); *Pyramid Operating Auth., Inc. v. Memphis (In re Pyramid Operating Auth., Inc.)*, 144 B.R. 795, 809 (Bankr. W.D. Tenn. 1992) (looking to Tennessee contract law); *Memphis-Friday's*, 88 B.R. at 834 (same); *Air Vectors Assocs. v. New York Dept. of Transp. (In re Air Vectors Assocs.)*, 53 B.R. 668, 685 (Bankr. S.D.N.Y 1985) (looking at New York contract law); *accord In re Southcoast Express, Inc.*, 337 B.R. 739, 743 (Bankr. D. Mass. 2006) ("The cases from this circuit . . . favor looking to state law to determine when the lease was terminated as opposed to looking at the end date of the lease.")

Section 23.26 of the Lease Agreement states that "[t]his Lease shall be governed by, construed, and enforced in accordance with the laws of the State in which the Premises are located." *See* Exhibit A, Pg. 42 of Lease Agreement of Higgins Declaration. The Premises is in the State of Utah and therefore Utah law shall apply.

"Under Utah's unlawful detainer statute, a tenant at will is 'guilty of an unlawful detainer if the tenant ... remains in possession of the premises after the expiration of a notice [to quit the premises] of not less than five calendar days.' Utah Code Ann. § 78B-6-802(1)(b)(ii) " *Martin v. Kristensen*, 450 P.3d 66, 74 (Utah Ct. App. 2019).

Utah law allows a lender to remove any holdover tenant quickly and efficiently. Utah's supreme court has explained, the unlawful detainer statute operates as "a mechanism for quickly and clearly resolving conflicts over lawful possession of property between landowners and tenants." *Osguthorpe v. Wolf Mountain Resorts, LC* , 2010 UT 29, ¶ 22, 232 P.3d 999 ; *see also Bichler v. DEI Sys., Inc.* , 2009 UT 63, ¶ 29, 220 P.3d 1203 (stating that "one of the primary purposes of the unlawful detainer statute is to provide a speedy resolution on the issue of possession"). It does this through expedited proceedings, *see id.* § 78B-6-810. These provisions are "evidence of a strong desire by the legislature to create a mechanism pursuant to which owners can be restored to possession of their property." *Osguthorpe* , 2010 UT 29, ¶ 23, 232 P.3d 999.

Under Utah law, "[w]hen a lease provides that if a party to the lease is in default then the other party may terminate the lease after giving notice of the default, the notice must plainly indicate the nature of the default or breach and give reasonable notice that failure to cure the default within the time allowed may lead to termination." *Bentley v. Potter*, 694 P.2d 617, 620 (Utah 1984).

In the case at hand, Telegraph Partners provided Debtor with a clear notice of default for failure to pay Debtor's 2022 Reconciliation Share, altering the Debtor to its default and providing Debtor time to cure its default. *See* Exhibit C to Higgins Declaration. Despite

receiving this notice, Debtor failed to cure. On March 31, 2023, Telegraph Partners terminated the Lease Agreement effective April 6, 2023, for nonpayment.

As Debtor's lease was terminated some 17 days prior to Debtor's petition date, Debtor no longer had an interest in the lease and therefore the Lease Agreement falls outside of Debtor's bankruptcy estate under 11 U.S.C. § 541(b)(2). Furthermore, the automatic stay is inapplicable to Telegraph Partners under 11 U.S.C § 362(b)(10). Finally, Debtor is unable to assume the terminated lease under 11 U.S.C. § 365(c)(3).

## Waiver of Memorandum of Law

Telegraph Partners respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Conclusion

Telegraph Partners properly terminated Debtor's lease on April 6, 2023, prior to the Debtor's bankruptcy. As such, the Lease Agreement falls outside of the Debtor's estate and is not subject to the automatic stay. Telegraph Partners requests an order with the Court allowing Telegraph Partners to continue is unlawful detainer action against Debtor.

Dated: May 29, 2023

Respectfully submitted,
/s/ David Graff

David Graff
GRAFF SILVERSTEIN LLP
3 Middle Patent Road
Armonk, NY 10504
Phone: (212)-381-6055

**Counsel to** *Telegraph Marketplace Partners II, LLC*

# EXHIBIT 1

## Proposed Order

**GRAFF SILVERSTEIN LLP**
David Graff, Esq.
Matthew J. Silverstein, Esq.
3 Middle Patent Road
Armonk, NY 10504
Telephone: (212)-381-6055
dgraff@graffsilversteinllp.com
msilverstein@graffsilversteinllp.com

**PARSONS BEHLE & LATIMER**
Darren Neilson, Esq. (*pro hac vice* pending)
201 S Main St, #1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
DNeilson@parsonsbehle.com

*Counsel for Telegraph Marketplace Partners II, LLC*

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[2] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Joint Administration Requested) |

<u>**ORDER CONFIRMING ABSENCE OF AUTOMATIC STAY**</u>

The relief set forth on the following pages, [numbered two (2) through _____], is

**ORDERED.**

Upon Telegraph Marketplace Partners II, LLC's Motion to Confirm the Absence of the

Automatic Stay, under Bankruptcy Code Section 105(a), 362(b)(10), 541(b)(2), and 365(c)(3) for

---

[2] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

confirmation of the absence of the automatic stay as to certain property as hereinafter set forth, and for cause shown, it is

ORDERED that the automatic stay is inapplicable, and movant is permitted to resume and prosecute to conclusion its currently pending action before the Firth Judicial District Court for the County of Washington, State of Utah, Case Number 230500322 concerning the movant's rights in the following real property: 844 Telegraph Street, Suite 2, Washington, Utah, 84780.

It is further ORDERED that the movant may join the Debtor and any trustee appointed in this case as defendants in its action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this order on the debtor, any trustee and any other party who entered an appearance on the motion.

_____
U.S.D.J