**UNITED STATES BANKRUPTCY COURT**

**District of New Jersey**

| | |
|---|---|
| <u>In re</u> | Chapter 11 |
| **Bed Bath & Beyond Inc., et al.,** | **Case No 23-13359 (VFP)** |
| **Debtors.** | **(Jointly Administered)** |

**SCHEDULES OF ASSETS AND LIABILITIES FOR**

**Harmon of Greenbrook II, Inc.**

**Case No: 23-13409 (VFP)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**GLOBAL NOTES, METHODOLOGY, AND SPECIFIC**
**DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF**
**ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**General**

The Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules,

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

the "Schedules and Statements") filed by Bed Bath & Beyond Inc. (the "Company") and its seventy-three debtor affiliates, as chapter 11 debtors and debtors in possession (collectively, the "Debtors") pending in the United States Bankruptcy Court for the District of New Jersey (the "Court") were prepared, pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by management of the Debtors, with the assistance of the Debtors' legal and financial advisors. The Schedules and Statements are unaudited and do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), and they are not intended to be fully reconciled to the financial statements.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors' have made every reasonable effort to ensure that the Schedules and Statements are accurate and complete based on information that was available to them at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors or omissions may have occurred. Accordingly, the Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy of completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. In no event will the Debtors, their agents, or their advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential Claim (as defined herein) against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law.

Holly Etlin, the Chief Restructuring Officer and Chief Financial Officer of the Debtors, has signed each of the Schedules and Statements. Mrs. Etlin is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mrs. Etlin has relied upon the efforts, statements, advice, and representations of various personnel of the Debtors and the Debtors' legal and financial advisors. Mrs. Etlin has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

These general notes regarding the Debtors' Schedules and Statements (the "Global Notes") comprise an integral part of the Schedules and Statements filed by the Debtors and should be referenced in connection with any review of the Schedules and Statements. If the Schedules and/or Statements differ from these Global Notes, the Global Notes shall control. Nothing contained in the Schedules and Statements shall constitute a waiver of any rights or Claims of the Debtors against any third party, or with respect to any aspect of these chapter 11 cases (the "Chapter 11 Cases").

## Global Notes and Overview of Methodology

1. **Description of Cases.** On April 23, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 24, 2023, the Court entered an order [Docket No. 75] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statement. The asset information provided herein, except as otherwise noted, represents the asset data of the Debtors as of February 25, 2023, the date of the Debtors' month end closure to their balance sheet, and the liability data of the Debtors is as of the close of business on the Petition Date.

2. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to: (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim against a Debtor ("Claim")[2] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated," or a waiver of any right to later object to any Claim on any grounds. Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, any rights or Claims of the Debtors against any third party or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific

---

[2]     For the purposes of these Global Notes, the term Claim shall have the meaning ascribed to it pursuant to section 101(5) of the Bankruptcy Code.

reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

(a) **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any Claim against any Debtors, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any Claim or assert any cause of action or defense against any party.

(b) **Recharacterization.**  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

(c) **Classifications.**  Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to object to such Claim, recharacterize, or reclassify such Claim or contract.

(d) **Claims Description.**  Any failure to designate a Claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such Claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtors reserve all their rights to dispute, or to assert offsets or defenses to, any Claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any Claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate.  Listing a Claim does not constitute an admission of liability by the Debtors.

(e) **Estimates and Assumptions.**  To prepare and file the Schedules and Statements as close to the Petition Date as possible, the Debtors were required to make commercially reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ from such estimates.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

(f)　　**Causes of Action.**  Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions, or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(g)　　**Intellectual Property Rights.**  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

(h)　　**Insiders.**  The Debtors have attempted to include payments made on or within twelve months before the Petition Date to any individual or entity who, in the Debtors' good faith belief, may be deemed an "insider."  As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor, so as to unqualifiedly dictate corporate policy and the disposition of corporate assets.  Certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date and might not be "insiders" at all, but the Debtors have included them herein out of an abundance of caution.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be,

construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, Claim, or defense, and all such rights, Claims, and defenses are hereby expressly reserved.

3. **Methodology.**

   (a)   <u>**Basis of Presentation.**</u>   For external financial reporting purposes, prior to the Petition Date, the Debtors prepared consolidated financial statements that were consolidated by the Parent Debtor, Bed Bath & Beyond Inc. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP. Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

   (b)   Additionally, the Debtors typically report financials on a banner level instead of at the legal entity level. As such, in certain instances, to the extent necessary, the assets and liabilities reflected on the Debtors' Schedules and Statements may be consolidated even further to account for the Debtors historical practices with respect to financial reporting.

   (c)   Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent as of the Petition Date or any time prior to the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

(d)    **Confidential or Sensitive Information.**  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, names and other information), or concerns for the privacy of the Debtors' creditors and clients.  The alterations will be limited to only what is necessary to protect the Debtor or the applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.  All such redacted information shall be made available as directed by orders of the Court or to the individual client or creditor scheduled, as applicable.

(e)    **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(f)    **Net Book Value.**  In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of February 25, 2023.  Market values may vary, sometimes materially, from net book values.  The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of certain property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown.

(g)    In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(h)    **Property and Equipment.**  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is, or shall be construed as, an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(i) **Inventory.** The Debtors' inventory is comprised of finished merchandise and is stated at the lower of weighted average cost and net realizable value. The calculation of cost includes merchandise purchases, the costs to bring the merchandise to distribution centers, warehousing and handling expenditures, and distributing and delivering merchandise to stores and fulfillment centers (direct and indirect). These costs include depreciation of long-lived assets utilized in acquiring, warehousing, and distributing inventory. Carrying values of inventory are analyzed and, to the extent that the cost of inventory exceeds the expected selling prices less reasonable costs to sell, provisions are made to reduce the carrying amount of the inventory. The Debtors review their inventory levels in order to identify slow-moving merchandise and uses merchandise markdowns to sell such merchandise, as needed. Since the determination of net realizable value of inventory involves both estimation and judgment with regard to market values and reasonable costs to sell, differences in these estimates could result in ultimate valuations that differ from the recorded asset. The majority of inventory purchases and commitments are made in U.S. dollars in order to limit the Debtors' exposure to foreign currency fluctuations.

(j) **Allocation of Liabilities.** The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(k) **Undetermined Amounts.** The description of an amount as "unknown," "undetermined," or "to be determined" is not intended to reflect upon the materiality of such amount.

(l) **Unliquidated Claim Amounts.** Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

(m) **Totals.** All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

(n) **Paid Claims.** Pursuant to certain orders of the Court entered in the Debtors' Chapter 11 Cases shortly after the Petition Date (collectively, the "First Day Orders"), as well as other orders of the Court, the Debtors are authorized (but not directed) to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables. Where and to

the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. Regardless of whether such Claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing Claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

(o)     **Other Paid Claims.**  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval. To the extent the Debtors pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing Claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

(p)     **Intercompany Receivables and Payables.**  Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' unaudited books and records. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, Claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany Claims, loans, and notes.

(q)     Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission of the amount and/or validity of any such intercompany receivables and payables or the validity of any netting or offset per the Debtors' books and records. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a Claim or an interest, or not allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or Claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization, or designation of intercompany accounts reported in the Schedules and Statements.

(r)  In addition, certain of the Debtors act on behalf of other Debtors.  Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation.  Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment.  The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

(s)  **Guarantees and Other Secondary Liability Claims.**  The Debtors have exercised reasonable efforts to locate and identify guarantees and other secondary liability Claims (collectively, the "Guarantees") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to review all of their contractual agreements for Guarantees.  Where such Guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors.  The Debtors may have inadvertently omitted Guarantees embedded in their contractual agreements and may identify additional Guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

(t)  **Claims of Third-Party Related Entities.**  While the Debtors have made every effort to properly classify each Claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same.  Therefore, to the extent that the Debtors have classified their estimate of Claims of a creditor as disputed, all Claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

(u)  **Excluded Assets and Liabilities.**  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation:  accrued salaries; employee benefit accruals; certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill; deferred revenue accounts; and certain other accrued liabilities.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Additionally, certain immaterial or de minimis assets and liabilities may have been excluded.

(v)  **Liens.**  The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics',

materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment.

**(w)**     **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

**(x)**     **Setoffs**.  The Debtors may incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, loan transactions, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their customers and/or suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

**(y)**     **Contingent Assets**.  The Debtors believe that they may possess certain Claims and Causes of Action against various parties.  Additionally, the Debtors may possess contingent Claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action against third parties as assets in their Schedules and Statements.  The Debtors reserve all of their rights with respect to any Claims, Causes of Action, or avoidance actions they may have, and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such Claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such Claims.

**(z)**     Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.  Refer to each Statement, Part 3, Question 7, for lawsuits commenced prior to the relevant Petition Date in which the Debtor was a plaintiff.

**(aa)**    **Executory Contracts**.  Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.  The Debtors have excluded nondisclosure agreements entered into in connection with these Chapter 11 Cases to avoid any potential breach of such nondisclosure agreements.  Additionally, certain contracts may have expired after the Petition Date, in which case the Debtors have noted such expiration next to the applicable contract in Schedule G.

**(bb)**    **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an

amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.

**(cc)**    <u>**Fiscal Year.**</u>    Each Debtor's most recent fiscal year ended on February 25, 2023. The Debtors operate on a 4-4-5 calendar for financial reporting, and the date on which the fiscal year ends can change annually.

**(dd)**    <u>**Umbrella or Master Agreements.**</u>    Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.  The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

**(ee)**    <u>**Credits and Adjustments.**</u>    The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed in the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, or other adjustments, including, but not limited to, the right to modify the Schedules, assert Claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a postpetition basis.

**(ff)**    <u>**Payments.**</u>    The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses.  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

<u>**Specific Schedule Disclosures**</u>

**1.    Schedule A/B – Assets – Real and Personal Property.**

**(a)**    *Part 3 – Accounts Receivable.*

(i)    *Item 11.*  Due to the volume of the Debtors' financial records with respect to accounts receivable, and the Debtors' inability to break out accounts receivable that are more than ninety days old, the entire amount of accounts receivable is disclosed in the aggregate in part "c."

     **(b)**     *Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.*

          (i)     *Items 39-55.*  In an effort to reduce the volume of the disclosures that would be otherwise applicable, the Debtors are disclosing their fixed assets at the category level.

     **(c)**     *Part 8 – Machinery, Equipment, and Vehicles.*

          (i)     *Item 47.*  The Debtors own certain automobiles that have been fully depreciated and carry a net book value of $0.  These assets have not been listed in the Schedules.

     **(d)**     *Part 10 – Intangibles and Intellectual Property.*

          (i)     *Item 61.*  Although the Debtors made diligent efforts to attribute each internet domain name to its rightful Debtor, in certain instances, the Debtors were unable to identify the current legal entity to which the internet domain name belonged.  As such, the Debtors attributed those internet domain names to Debtor Bed Bath & Beyond Inc. on the Schedule.

     **(e)**     *Part 11 – All Other Assets.*

          (i)     *Item 73.*  The Debtors' insurance policies apply to each Debtor entity, but in an effort to reduce the volume of the disclosures that would be otherwise applicable, the Debtors are only disclosing their insurance policies on Bed Bath & Beyond Inc.'s Schedule A/B.

**2.**    **Schedule D – Creditors Who Have Claims Secured by Property.**

     **(a)**     *Part 1 – List Creditors Who Have Secured Claims.*

          (i)     The Debtors' creditors holding secured funded debt Claims are listed only on Debtor Bed Bath & Beyond, Inc.'s Schedule D, and not on the Schedule D of each of the subsidiary Debtors.

**3.**    **Schedule E/F – Creditors Who Have Unsecured Claims.**

     **(a)**     *Part 1 – Creditors with Priority Unsecured Claims.*

          (i)     **Priority Tax Claims:**  Pursuant to the *Interim Order (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief* [Docket No. 94] (the "Interim Taxes Order"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition.  Accordingly, any unsecured priority Claims based upon prepetition tax accruals may have been paid or may be paid pursuant to the Interim Taxes Order or pursuant to further Court order.  Therefore, the Debtors have listed the taxing authorities with a contingent, undetermined, or $0 amount.

The Debtors have made a reasonable effort to list all known taxing authorities.  However, the Debtors acknowledge the possibility that information related to material tax accruals may be discovered subsequent to the filing of the Schedules and Statements.  The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available, should the Debtors deem it appropriate.

(ii)    **Employee Claims:**    Furthermore, pursuant to the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [Docket No. 388] (the "Wages Order") the Debtors received final authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business.  The Debtors believe that any non-insider employee Claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority Claim, have been or will be satisfied, and such satisfied amounts are not listed.

The listing of a Claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such Claim or any portion thereof is entitled to priority status.

Except as otherwise agreed pursuant to a stipulation or order entered by the Court, the Debtors reserve their rights to dispute or challenge the validity or immunity from avoidance of any Claim purported to be granted to a creditor listed on Schedule E/F.  Moreover, although the Debtors have scheduled Claims of various creditors, the Debtors reserve all rights to dispute or challenge any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.

**(b)**    *Part 2 – Creditors with Nonpriority Unsecured Claims.*  The liabilities identified on Schedule E/F, Part 2, are derived from the Debtors' books and records.  The Debtors have made a reasonable attempt to verify their unsecured obligations, although the actual amount of Claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claims or the correct amount of all unsecured Claims.

As noted in paragraph 3(b) above, the Debtors generally allocate individual liabilities to particular banners.  In most cases, it would be a time consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation.  Instead, Schedule E/F, Part 2, reflects the liability as recorded in the Debtors' books and records.

Schedule E/F, Part 2, contains information regarding certain compensation related Claims of current and former employees of the Debtors, with such Claims being listed as both "contingent" and "unliquidated." In scheduling such Claims, the Debtors make no representation or assertion as to the validity of such Claims, and the Debtors reserve all rights, Claims, and defenses in connection therewith.

Schedule E/F, Part 2, contains information regarding material pending litigation involving the Debtors. The amounts for these potential Claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include Claims that may arise in connection with the rejection of any executory contract or unexpired lease, if any, that may be or have been rejected.

In many cases, the Claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a Claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such Claim.

The Debtors have included payables liabilities in Schedule E/F reflecting amounts recorded in their books and records as of approximately May 25, 2023. As of the date hereof, the Debtors may not have received all invoices for payables, expenses, and other liabilities that accrued prior to the Petition Date, and continue to reconcile their books and records for the determination of prepetition liabilities. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligation, to amend Schedules D and E/F if and as they receive additional prepetition invoices.

**Customer Gift Cards.** With respect to gift cards, the Debtors cannot ascertain the identity of the vast majority of the holders of such gift cards or whether such cards are still in existence. Therefore, the Debtors have not included any holders of gift cards on the Schedules. The Debtors estimate that as of the Petition Date, approximately $350 million of gift cards were outstanding, and this amount is not specifically identified on the Schedules.

4. **Schedule H – Codebtors.**

    **(a)**   *Item 2.* Similar to the treatment of Schedule D, Guarantees with respect to the Debtors' secured funded debt obligations are listed on Debtor Bed Bath & Beyond Inc.'s Schedule H, and not on the Schedule H of each of the subsidiary Debtors.

## <u>Specific Statement Disclosures</u>

1.  **Statement, Part 10, Question 19.** As part of their historical practice, the Debtors maintain safes at all of their stores.  Generally, however, the Debtors do not maintain safety deposit boxes otherwise.  Given the volume of the Debtors' stores, and thereby the volume of the Debtors' safes, in an effort to reduce the volume of disclosures that would be otherwise applicable, the Debtors have not included this information on the Statements.

2.  **Statement, Part 13, Question 26.** The Debtors provide certain parties, such as banks, factors, auditors, potential investors, vendors, and financial advisors, with financial statements.  The Debtors do not maintain complete lists or other records tracking such disclosures.  Therefore, the Debtors have not provided full lists of these parties in Part 13, Question 26 of the Statements.

3.  **Statement, Part 13, Question 27.** The Debtors inventory product at their various store locations and distribution centers on a rolling basis.  In an effort to reduce the volume of disclosures that would be otherwise applicable, the Debtors have omitted such frequent cycle counts conducted by the stores and distribution centers.

4.  **Statement, Part 13, Question 29.** The Debtors' records are incomplete as to dates of appointment or resignation for former directors and officers.  The Debtors cannot ascertain the identity of all former directors and officers, but the Debtors have made reasonable efforts to list all known former directors and officers.

*     *     *     *     *

**Harmon of Greenbrook II, Inc.**                                     **Case Number:    23-13409 (VFP)**

## Schedule A/B: Assets — Real and Personal Property

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

   ☑ No. Go to Part 2.

   ☐ Yes. Fill in the information below.

| General description | Type of account (if applicable) | Last 4 digits of account # (if applicable) | Current value of debtor's interest |
|---|---|---|---|
| 2. **Cash on hand** | | | |
| 2.1 | | | |
| 3. **Checking, savings, money market, or financial brokerage accounts (Identify all)** | | | |
| 3.1 | | | |
| 4. **Other cash equivalents (Identify all)** | | | |
| 4.1 | | | |

5. **Total of Part 1.**

   Add lines 2 through 4. Copy the total to line 80.

Harmon of Greenbrook II, Inc.                                        Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| Part 2: | Deposits and prepayments |
|---------|--------------------------|

6.   **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.

☐ Yes. Fill in the information below.

| General description | Current value of debtor's interest |
|---------------------|------------------------------------|

7.   **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

   7.1 _____    _____

8.   **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

   Description, including name of holder of prepayment

   8.1 _____    _____

9.   **Total of Part 2**

   Add lines 7 through 8. Copy the total to line 81.                    _____

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

## Schedule A/B: Assets — Real and Personal Property

| Part 3: | Accounts receivable |
|---|---|

10.  **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

| General description | Face or requested amount | Doubtful or uncollectable | Current value of debtor's interest |
|---|---|---|---|

11.  Accounts receivable

11a. 90 days old or less: _____ - _____ = _____

11b. Over 90 days old: _____ - _____ = _____

11c. All accounts receivable: _____ - _____ = _____

12.  **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

**Specific Notes**

For intercompany balances, see Attachment Schedule A/B, Part 3, Question 11 - Intercompany Balances

**Attachment Schedule A/B, Part 3, Question 11 - Intercompany Balances**
**Balances as of February 25, 2023**

| Banner Name | Intercompany Banner Name | Receivable | Payable | Grand Total |
|---|---|---:|---:|---:|
| **Bed Bath & Beyond** | Bed Bath & Beyond | $(1,081,998,329) | $ - | $ (1,081,998,329) |
| | buybuy Baby | $ 707,672,672 | $(1,007,421,646) | $ (299,748,974) |
| | Harmon Stores | $ 796,480,050 | $ (333,463,720) | $ 463,016,330 |
| | Decorist | $ 27,747,069 | $ (6,050,383) | $ 21,696,686 |
| | VSI | $ (191,904,445) | $ (427,327,034) | $ (619,231,480) |
| | Oak Insurance Company | $ 13,616,109 | $ (8,994,561) | $ 4,621,548 |
| | Real Estate Companies | $ (13,668,269) | $ - | $ (13,668,269) |
| | Divested Companies | $ 45,155,342 | $ (34,561,423) | $ 10,593,919 |
| | Bed Bath Beyond Canada | $ (69,206,194) | $ 24,421,392 | $ (44,784,802) |
| | buybuy Baby Canada | $ (30,827,083) | $ 74,144,995 | $ 43,317,912 |
| **Bed Bath & Beyond Total** | | **$ 203,066,923** | **$(1,719,252,380)** | **$ (1,516,185,458)** |
| **buybuy Baby** | Bed Bath & Beyond | $ 1,219,832,485 | $(1,109,279,015) | $ 110,553,470 |
| | Harmon Stores | $ (51,557,657) | $ (28,178,145) | $ (79,735,802) |
| | VSI | $ 225,228,084 | $ (5,886,732) | $ 219,341,352 |
| | Divested Companies | $ 8,221,419 | $ (8,632) | $ 8,212,787 |
| | Bed Bath Beyond Canada | $ 5,555,547 | $ 235,503 | $ 5,791,050 |
| | buybuy Baby Canada | $ (3,686,124) | $ (3,698) | $ (3,689,821) |
| **buybuy Baby Total** | | **$ 1,403,593,754** | **$(1,143,120,719)** | **$ 260,473,035** |
| **Harmon Stores** | Bed Bath & Beyond | $ 41,292,607 | $ (264,737,500) | $ (223,444,893) |
| | buybuy Baby | $ 274,556,623 | $ (1,700,281) | $ 272,856,342 |
| | Decorist | $ 56,523 | $ (47,459) | $ 9,064 |
| | VSI | $ (6,190,531) | $ (1,542,128) | $ (7,732,659) |
| | Divested Companies | $ 138,516,441 | $ (77,067) | $ 138,439,375 |
| | Bed Bath Beyond Canada | $ 3,037 | $ (0) | $ 3,037 |
| **Harmon Stores Total** | | **$ 448,234,700** | **$ (268,104,434)** | **$ 180,130,266** |
| **Decorist** | Bed Bath & Beyond | $ (18,146,665) | $ (3,548,518) | $ (21,695,182) |
| | Harmon Stores | $ 47,459 | $ (56,523) | $ (9,064) |
| | VSI | $ 4,040 | $ - | $ 4,040 |
| **Decorist Total** | | **$ (18,095,166)** | **$ (3,605,041)** | **$ (21,700,207)** |
| **VSI** | Bed Bath & Beyond | $ 776,477,812 | $ (157,246,331) | $ 619,231,480 |
| | buybuy Baby | $ (162,037,916) | $ (57,303,436) | $ (219,341,352) |
| | Harmon Stores | $ 10,111,289 | $ (2,311,181) | $ 7,800,108 |
| | Decorist | $ - | $ (4,040) | $ (4,040) |
| | Divested Companies | $ (4,712,617) | $ - | $ (4,712,617) |
| **VSI Total** | | **$ 619,838,567** | **$ (216,864,988)** | **$ 402,973,579** |
| **Oak Insurance Company** | Bed Bath & Beyond | $ (4,621,548) | $ - | $ (4,621,548) |
| **Oak Insurance Company Total** | | **$ (4,621,548)** | **$ -** | **$ (4,621,548)** |
| **Real Estate Companies** | Bed Bath & Beyond | $ 13,680,581 | $ (9,000) | $ 13,671,581 |
| | Divested Companies | $ 2,000 | $ - | $ 2,000 |
| **Real Estate Companies Total** | | **$ 13,682,581** | **$ (9,000)** | **$ 13,673,581** |
| **Divested Companies** | Bed Bath & Beyond | $ 1,122,170,213 | $ (36,657,897) | $ 1,085,512,316 |
| | buybuy Baby | $ (7,645,942) | $ (990,749) | $ (8,636,691) |
| | Harmon Stores | $ (757,342,207) | $ - | $ (757,342,207) |
| | VSI | $ 4,388,288 | $ - | $ 4,388,288 |
| | Divested Companies | $ 362,636,084 | $ - | $ 362,636,084 |
| | Bed Bath Beyond Canada | $ (1,309,331) | $ - | $ (1,309,331) |
| | buybuy Baby Canada | $ 8,294 | $ - | $ 8,294 |
| **Divested Companies Total** | | **$ 722,905,398** | **$ (37,648,646)** | **$ 685,256,752** |
| **Bed Bath Beyond Canada** | Bed Bath & Beyond | $ (59,091,644) | $ 88,222,508 | $ 29,130,864 |
| | buybuy Baby | $ (201,124) | $ (2,748) | $ (203,872) |
| | Harmon Stores | $ 0 | $ - | $ 0 |
| | Divested Companies | $ 5,019 | $ - | $ 5,019 |
| | Bed Bath Beyond Canada | $ 8,093,564 | $ - | $ 8,093,564 |
| | buybuy Baby Canada | $ 51,185,250 | $ (88,219,760) | $ (37,034,510) |
| | BBB Canada LTD | $ 7,928 | $ - | $ 7,928 |
| | BBB Canada LP Inc. | $ 1,007 | $ - | $ 1,007 |
| **Bed Bath Beyond Canada Total** | | **$ (0)** | **$ 0** | **$ 0** |
| **buybuy Baby Canada** | Bed Bath & Beyond | $ (72,880,172) | $ 43,603,446 | $ (29,276,726) |
| | buybuy Baby | $ (82,822) | $ (562,186) | $ (645,009) |
| | Bed Bath Beyond Canada | $ 72,962,822 | $ (43,041,260) | $ 29,921,562 |
| | BBB Canada LP Inc. | $ 172 | $ - | $ 172 |
| **buybuy Baby Canada Total** | | **$ 0** | **$ 0** | **$ 0** |
| | | **$ 3,388,605,209** | **$(3,388,605,208)** | **$ 0** |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

## Schedule A/B: Assets — Real and Personal Property

| Part 4: | Investments |
|---|---|

13. **Does the debtor own any investments?**

   ☑ No. Go to Part 5.

   ☐ Yes. Fill in the information below.

| General description | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

   Name of fund or stock:

   14.1 _____    _____    _____

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

   Name of entity:

   15.1 _____    _____    _____

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

   Describe:

   16.1 _____    _____    _____

17. **Total of Part 4**

   Add lines 14 through 16. Copy the total to line 83.                          _____

Harmon of Greenbrook II, Inc.                                    Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

18.    **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.  **Raw materials** | | | | |
| 19.1 | | | | |
| 20.  **Work in progress** | | | | |
| 20.1 | | | | |
| 21.  **Finished goods, including goods held for resale** | | | | |
| 21.1 | | | | |
| 22.  **Other Inventory or supplies** | | | | |
| 22.1 | | | | |

23.    **Total of Part 5.**

Add lines 19 through 22. Copy the total to line 84.

24.    **Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

25.    **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes.    Book Value _____    Valuation method _____    Current value _____

26.    **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

Harmon of Greenbrook II, Inc.                                        Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---------|---------|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|-------------------------------------------------------|------------------------------------------|-------------------------------------|
| 28. **Crops—either planted or harvested** | | | |
| 28.1 _____ | _____ | _____ | _____ |
| 29. **Farm animals** Examples: Livestock, poultry, farm-raised fish | | | |
| 29.1 _____ | _____ | _____ | _____ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| 30.1 _____ | _____ | _____ | _____ |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| 31.1 _____ | _____ | _____ | _____ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| 32.1 _____ | _____ | _____ | _____ |

33. **Total of Part 6.**

    Add lines 28 through 32. Copy the total to line 85.                         _____

34. **Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

  ☐ No

  ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes.    Book Value _____    Valuation method _____    Current value _____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

Harmon of Greenbrook II, Inc.                                    Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |

38.  **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

39.  **Office furniture**

39.1 _____

40.  **Office fixtures**

40.1 _____

41.  **Office equipment, including all computer equipment and communication systems equipment and software**

41.1 _____

42.  **Collectibles**

42.1 _____

43.  **Total of Part 7**

Add lines 39 through 42. Copy the total to line 86.

44.  **Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☐ Yes

45.  **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No

☐ Yes

Harmon of Greenbrook II, Inc.                                    Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| Part 8: | Machinery, equipment, and vehicles |
| --- | --- |

46.  **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |

47.  **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

47.1

48.  **Watercraft, trailers, motors, and related accessories**
     Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

48.1

49.  **Aircraft and accessories**

49.1

50.  **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

50.1

51.  **Total of Part 8**

Add lines 47 through 50. Copy the total to line 87.

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

## Schedule A/B: Assets — Real and Personal Property

| Part 9: | Real property - detail |
|---|---|

54.  **Does the debtor own or lease any real property?**

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

| Description and location of property<br>Include street address or other description such as<br>Assessor Parcel Number (APN), and type of property<br>(for example, acreage, factory, warehouse, apartment or<br>office building), if available. | Nature and extent<br>of debtor's<br>interest in<br>property | Net book value of<br>debtor's interest<br>(Where available) | Valuation method<br>used for current<br>value | Current value of<br>debtor's interest |
|---|---|---|---|---|

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

55.1 _____   _____   _____   _____   _____

56.  **Total of Part 9**

Add the current value on all Question 55 lines and entries from any additional sheets. Copy the total to line 88.

57.  **Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☐ Yes

58.  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No

☐ Yes

Harmon of Greenbrook II, Inc.                                    Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| **Part 10:** | **Intangibles and intellectual property - detail** |

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**60. Patents, copyrights, trademarks, and trade secrets**

60.1 _____  _____  _____  _____

**61. Internet domain names and websites**

61.1 _____  _____  _____  _____

**62. Licenses, franchises, and royalties**

62.1 _____  _____  _____  _____

**63. Customer lists, mailing lists, or other compilations**

63.1 _____  _____  _____  _____

**64. Other intangibles, or intellectual property**

64.1 _____  _____  _____  _____

**65. Goodwill**

65.1 _____  _____  _____  _____

**66. Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.                    _____

**67. Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**

☐ No

☐ Yes

**68. Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No

☐ Yes

**69. Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No

☐ Yes

Harmon of Greenbrook II, Inc.                                    Case Number:    23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form? Include all interests in executory contracts and unexpired leases not previously reported on this form.**

☑ No. Go to Part 12.

☐ Yes. Fill in the information below.

| General description | Current value of debtor's interest |
|---|---|

71. **Notes receivable**
    Description (include name of obligor)

    71.1 _____    _____

72. **Tax refunds and unused net operating losses (NOLs)**
    Description (for example, federal, state, local)

    72.1 _____    _____

73. **Interests in insurance policies or annuities**

    73.1 _____    _____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

    74.1 _____    _____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

    75.1 _____    _____

76. **Trusts, equitable or future interests in property**

    76.1 _____    _____

77. **Other property of any kind not already listed Examples: Season tickets, country club membership**
    Examples: Season tickets, country club membership

    77.1 _____    _____

**Harmon of Greenbrook II, Inc.**                                        **Case Number:    23-13409 (VFP)**

## Schedule A/B: Assets — Real and Personal Property

**Part 11:**       **All other assets**

78.  **Total of Part 11**

Add lines 71 through 77. Copy the total to line
90.

79.  **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☐ No

☐ Yes

Harmon of Greenbrook II, Inc.                                        Case Number:   23-13409 (VFP)

## Schedule A/B: Assets — Real and Personal Property

**Part 12:**     **Summary**

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property | Total of all property |
|---|---|---|---|
| 80.   Cash, cash equivalents, and financial assets. Copy line 5, Part 1. | $0 | | |
| 81.   Deposits and prepayments. Copy line 9, Part 2. | $0 | | |
| 82.   Accounts receivable. Copy line 12, Part 3. | $0 | | |
| 83.   Investments. Copy line 17, Part 4. | $0 | | |
| 84.   Inventory. Copy line 23, Part 5. | $0 | | |
| 85.   Farming and fishing-related assets. Copy line 33, Part 6. | $0 | | |
| 86.   Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $0 | | |
| 87.   Machinery, equipment, and vehicles. Copy line 51, Part 8. | $0 | | |
| 88.   Real property. Copy line 56, Part 9. | | $0 | |
| 89.   Intangibles and intellectual property. Copy line 66, Part 10. | $0 | | |
| 90.   All other assets. Copy line 78, Part 11. | $0 | | |
| 91.   Total. Add lines 80 through 90 for each column. | a.   $0 | b..   $0 | |

92.   **Total of all property on Schedule A/B. Lines 91a + 91b = 92.**      $0

**Harmon of Greenbrook II, Inc.**                                                                                              **Case Number:   23-13409 (VFP)**

## Schedule D: Creditors Who Have Claims Secured by Property

1. **Do any creditors have claims secured by debtor's property?**

   ☑ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☐ Yes. Fill in all of the information below.

| **Part 1:** | **List Creditors Who Have Secured Claims** |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.**

| Creditor's Name and Mailing Address, E-mail Address & An Account Number | Co-Interest | Insider | Co-Debtor | Date Claim was Incurred, Property Description, Lien & Co-Interest Creditor | C U D | Amount of Claim | Value of Collateral |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **2.** | ☐ | ☐ | ☐ | | ☐ ☐ ☐ | $0 | |
| | | | | | Total: | $0 | |

**Harmon of Greenbrook II, Inc.**                                                **Case Number:   23-13409 (VFP)**

## Schedule D: Creditors Who Have Claims Secured by Property

**Amount of Claim**

3.  **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**                    **$0**

**Harmon of Greenbrook II, Inc.**                                   **Case Number:    23-13409 (VFP)**

## Schedule D: Creditors Who Have Claims Secured by Property

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Name and Mailing Address | Part 1 Line on which the Related Creditor was Listed | Last 4 Digits of Account Number for this Entity |
|---|---|---|
| NONE | | |

**Harmon of Greenbrook II, Inc.**

**Case Number:   23-13409 (VFP)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 1: | List All Creditors with PRIORITY Unsecured Claims |
|---|---|

1. **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**

   ☑ No. Go to Part 2.

   ☐ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Offset | Total Claim | Priority Amount |
|---|---|---|---|---|---|---|---|
| **2.**   NONE | | ☐ | ☐ | ☐ | ☐ | | |
| | | | | | **Total:** | UNDETERMINED | UNDETERMINED |

Harmon of Greenbrook II, Inc.                                               Case Number:   23-13409 (VFP)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 1:**      **List All Creditors with PRIORITY Unsecured Claims**

**Total: All Creditors with PRIORITY Unsecured Claims**                              UNDETERMINED   UNDETERMINED

**Harmon of Greenbrook II, Inc.**

**Case Number:   23-13409 (VFP)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

3.   **List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Intercompany** | | | | | | | |
| 3.1  SEE ATTACHMENT SCHEDULE A/B, PART 3, QUESTION 11 - INTERCOMPANY BALANCES | UNKNOWN<br><br>ACCOUNT NO.: NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | |

Intercompany Total: _____

**Harmon of Greenbrook II, Inc.**                                    Case Number:   23-13409 (VFP)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

Total: All Creditors with NONPRIORITY Unsecured Claims

**Harmon of Greenbrook II, Inc.**                                    Case Number:    23-13409 (VFP)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---------|---------------------------------------------------|

4.    List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Creditor's Name, Mailing Address Including Zip Code | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **4.** 1    NONE | | |

**Harmon of Greenbrook II, Inc.**                                    Case Number:    **23-13409 (VFP)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 4:**     **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5.     **Add the amounts of priority and nonpriority unsecured claims.**

<u>Total of claim amounts</u>

| | | |
|---|---|---|
| 5a. | **Total claims from Part 1** | 5a.     $0 |
| 5b. | **Total claims from Part 2** | 5b.   **+**    $0 |
| 5c. | **Total of Parts 1 and 2** | 5c.     $0 |
| | Lines 5a + 5b = 5c. | |

**Harmon of Greenbrook II, Inc.**

**Case Number:   23-13409 (VFP)**

## Schedule G: Executory Contracts and Unexpired Leases

1.  **Does the debtor have any executory contracts or unexpired leases?**

    ☑ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

    ☐ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

2.  **List all contracts and unexpired leases**

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2.          NONE | | | ☐ | | NOT AVAILABLE |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

## Schedule G: Executory Contracts and Unexpired Leases

**TOTAL NUMBER OF CONTRACTS:  0**

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

## Schedule H: Codebtors

1.  **Does the debtor have any codebtors?**

    ☑ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

    ☐ Yes

2.  **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.**

    Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1 | Column 2 | Applicable Schedules | | |
|---|---|---|---|---|
| **Codebtor Name and Mailing Address** | **Creditor Name** | **D** | **E/F** | **G** |
| 2.  1 | | ☐ | ☐ | ☐ |

**Total Number of Co-Debtor / Creditor rows: 0**

**Fill in this information to identify the case:**

Debtor Name:    Harmon of Greenbrook II, Inc.

United States Bankruptcy Court for the:    District of New Jersey

Case Number (if known):    23-13409 (VFP)

☐ Check if this is an amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals                    12/15

| Part 1: | Summary of Assets |
|---|---|

1. **Schedule A/B: Assets–Real and Personal Property**  (Official Form 206A/B)

    1a. **Real property:**

        Copy line 88 from Schedule A/B ........................................................................    $0

    1b. **Total personal property:**

        Copy line 91A from Schedule A/B ...................................................................    $0

        +

    1c. **Total of all property:**

        Copy line 92 from Schedule A/B ...................................................................    $0

| Part 2: | Summary of Liabilities |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property**  (Official Form 206D)

    Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D   ..............................    $0

3. **Schedule E/F: Creditors Who Have Unsecured Claims**   (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**

        Copy the total claims from Part 1 from line 6a of Schedule E/F   ................................................    $0

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**

        Copy the total of the amount of claims from Part 2 from line 6b of Schedule E/F   .....................................    $0

        +

4. **Total liabilities**

    Lines 2 + 3a + 3b   ...................................................................................................................    $0

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name: | Harmon of Greenbrook II, Inc. |
| United States Bankruptcy Court for the: | District of New Jersey |
| Case Number (if known): | 23-13409 (VFP) |

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents.  This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and Signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- [X] Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)
- [X] Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)
- [X] Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)
- [X] Schedule G:  Executory Contracts and Unexpired Leases (Official Form 206G)
- [X] Schedule H: Codebtors (Official Form (206H)
- [X] Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)
- [ ] Amended Schedule _____
- [ ] Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

| | | | |
|---|---|---|---|
| **Executed on:** | May 30, 2023 | **Signature:** | /s/ Holly Etlin |

Holly Etlin, Chief Restructuring Officer
**Name and Title**

**UNITED STATES BANKRUPTCY COURT**

**District of New Jersey**

| | |
|---|---|
| <u>In re</u> ) | Chapter 11 |
| ) | |
| **Bed Bath & Beyond Inc., et al.,** ) | **Case No 23-13359 (VFP)** |
| **Debtors.** ) | **(Jointly Administered)** |
| ) | |

**STATEMENT OF FINANCIAL AFFAIRS FOR**

**Harmon of Greenbrook II, Inc.**

**Case No: 23-13409 (VFP)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**GLOBAL NOTES, METHODOLOGY, AND SPECIFIC**
**DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF**
**ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

## <u>General</u>

The Schedules of Assets and Liabilities (collectively, the "<u>Schedules</u>") and the Statements of Financial Affairs (collectively, the "<u>Statements</u>" and, together with the Schedules,

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

the "Schedules and Statements") filed by Bed Bath & Beyond Inc. (the "Company") and its seventy-three debtor affiliates, as chapter 11 debtors and debtors in possession (collectively, the "Debtors") pending in the United States Bankruptcy Court for the District of New Jersey (the "Court") were prepared, pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by management of the Debtors, with the assistance of the Debtors' legal and financial advisors. The Schedules and Statements are unaudited and do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), and they are not intended to be fully reconciled to the financial statements.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors' have made every reasonable effort to ensure that the Schedules and Statements are accurate and complete based on information that was available to them at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors or omissions may have occurred. Accordingly, the Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy of completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. In no event will the Debtors, their agents, or their advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential Claim (as defined herein) against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law.

Holly Etlin, the Chief Restructuring Officer and Chief Financial Officer of the Debtors, has signed each of the Schedules and Statements. Mrs. Etlin is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mrs. Etlin has relied upon the efforts, statements, advice, and representations of various personnel of the Debtors and the Debtors' legal and financial advisors. Mrs. Etlin has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

2

These general notes regarding the Debtors' Schedules and Statements (the "Global Notes") comprise an integral part of the Schedules and Statements filed by the Debtors and should be referenced in connection with any review of the Schedules and Statements. If the Schedules and/or Statements differ from these Global Notes, the Global Notes shall control. Nothing contained in the Schedules and Statements shall constitute a waiver of any rights or Claims of the Debtors against any third party, or with respect to any aspect of these chapter 11 cases (the "Chapter 11 Cases").

## Global Notes and Overview of Methodology

1. **Description of Cases.** On April 23, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 24, 2023, the Court entered an order [Docket No. 75] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statement. The asset information provided herein, except as otherwise noted, represents the asset data of the Debtors as of February 25, 2023, the date of the Debtors' month end closure to their balance sheet, and the liability data of the Debtors is as of the close of business on the Petition Date.

2. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to: (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim against a Debtor ("Claim")[2] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated," or a waiver of any right to later object to any Claim on any grounds. Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, any rights or Claims of the Debtors against any third party or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific

---

[2]    For the purposes of these Global Notes, the term Claim shall have the meaning ascribed to it pursuant to section 101(5) of the Bankruptcy Code.

reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

(a)  **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any Claim against any Debtors, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any Claim or assert any cause of action or defense against any party.

(b)  **Recharacterization.**  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

(c)  **Classifications.**  Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to object to such Claim, recharacterize, or reclassify such Claim or contract.

(d)  **Claims Description.**  Any failure to designate a Claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such Claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtors reserve all their rights to dispute, or to assert offsets or defenses to, any Claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any Claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate.  Listing a Claim does not constitute an admission of liability by the Debtors.

(e)  **Estimates and Assumptions.**  To prepare and file the Schedules and Statements as close to the Petition Date as possible, the Debtors were required to make commercially reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ from such estimates.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

(f) **Causes of Action.** Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions, or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(g) **Intellectual Property Rights.** Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

(h) **Insiders.** The Debtors have attempted to include payments made on or within twelve months before the Petition Date to any individual or entity who, in the Debtors' good faith belief, may be deemed an "insider." As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor, so as to unqualifiedly dictate corporate policy and the disposition of corporate assets. Certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date and might not be "insiders" at all, but the Debtors have included them herein out of an abundance of caution.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be,

construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, Claim, or defense, and all such rights, Claims, and defenses are hereby expressly reserved.

3.  **Methodology.**

(a)   **Basis of Presentation.**   For external financial reporting purposes, prior to the Petition Date, the Debtors prepared consolidated financial statements that were consolidated by the Parent Debtor, Bed Bath & Beyond Inc. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP. Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

(b)   Additionally, the Debtors typically report financials on a banner level instead of at the legal entity level. As such, in certain instances, to the extent necessary, the assets and liabilities reflected on the Debtors' Schedules and Statements may be consolidated even further to account for the Debtors historical practices with respect to financial reporting.

(c)   Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent as of the Petition Date or any time prior to the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

6

(d)    **Confidential or Sensitive Information.**  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, names and other information), or concerns for the privacy of the Debtors' creditors and clients.  The alterations will be limited to only what is necessary to protect the Debtor or the applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.  All such redacted information shall be made available as directed by orders of the Court or to the individual client or creditor scheduled, as applicable.

(e)    **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(f)    **Net Book Value.**  In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of February 25, 2023.  Market values may vary, sometimes materially, from net book values.  The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of certain property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown.

(g)    In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(h)    **Property and Equipment.**  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is, or shall be construed as, an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

**(i)**    **Inventory.**  The Debtors' inventory is comprised of finished merchandise and is stated at the lower of weighted average cost and net realizable value.  The calculation of cost includes merchandise purchases, the costs to bring the merchandise to distribution centers, warehousing and handling expenditures, and distributing and delivering merchandise to stores and fulfillment centers (direct and indirect).    These costs include depreciation of long-lived assets utilized in acquiring, warehousing, and distributing inventory.  Carrying values of inventory are analyzed and, to the extent that the cost of inventory exceeds the expected selling prices less reasonable costs to sell, provisions are made to reduce the carrying amount of the inventory.  The Debtors review their inventory levels in order to identify slow-moving merchandise and uses merchandise markdowns to sell such merchandise, as needed.  Since the determination of net realizable value of inventory involves both estimation and judgment with regard to market values and reasonable costs to sell, differences in these estimates could result in ultimate valuations that differ from the recorded asset.  The majority of inventory purchases and commitments are made in U.S. dollars in order to limit the Debtors' exposure to foreign currency fluctuations.

**(j)**    **Allocation of Liabilities.**  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

**(k)**    **Undetermined Amounts.**    The description of an amount as "unknown," "undetermined," or "to be determined" is not intended to reflect upon the materiality of such amount.

**(l)**    **Unliquidated Claim Amounts.**    Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

**(m)**    **Totals.**  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

**(n)**    **Paid Claims.**  Pursuant to certain orders of the Court entered in the Debtors' Chapter 11 Cases shortly after the Petition Date (collectively, the "First Day Orders"), as well as other orders of the Court, the Debtors are authorized (but not directed) to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables.  Where and to

the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. Regardless of whether such Claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing Claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

(o) **Other Paid Claims.** To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval. To the extent the Debtors pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing Claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

(p) **Intercompany Receivables and Payables.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' unaudited books and records. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, Claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany Claims, loans, and notes.

(q) Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission of the amount and/or validity of any such intercompany receivables and payables or the validity of any netting or offset per the Debtors' books and records. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a Claim or an interest, or not allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or Claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization, or designation of intercompany accounts reported in the Schedules and Statements.

(r)    In addition, certain of the Debtors act on behalf of other Debtors.  Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation.  Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment.  The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

(s)    **Guarantees and Other Secondary Liability Claims.**  The Debtors have exercised reasonable efforts to locate and identify guarantees and other secondary liability Claims (collectively, the "Guarantees") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to review all of their contractual agreements for Guarantees.  Where such Guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors.  The Debtors may have inadvertently omitted Guarantees embedded in their contractual agreements and may identify additional Guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

(t)    **Claims of Third-Party Related Entities**.  While the Debtors have made every effort to properly classify each Claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same.  Therefore, to the extent that the Debtors have classified their estimate of Claims of a creditor as disputed, all Claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

(u)    **Excluded Assets and Liabilities.**  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation:  accrued salaries; employee benefit accruals; certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill; deferred revenue accounts; and certain other accrued liabilities.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Additionally, certain immaterial or de minimis assets and liabilities may have been excluded.

(v)    **Liens.**  The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics',

materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment.

**(w)**    **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

**(x)**    **Setoffs**.  The Debtors may incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, loan transactions, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their customers and/or suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

**(y)**    **Contingent Assets**.  The Debtors believe that they may possess certain Claims and Causes of Action against various parties.  Additionally, the Debtors may possess contingent Claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action against third parties as assets in their Schedules and Statements.  The Debtors reserve all of their rights with respect to any Claims, Causes of Action, or avoidance actions they may have, and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such Claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such Claims.

**(z)**    Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.  Refer to each Statement, Part 3, Question 7, for lawsuits commenced prior to the relevant Petition Date in which the Debtor was a plaintiff.

**(aa)**    **Executory Contracts**.  Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.  The Debtors have excluded nondisclosure agreements entered into in connection with these Chapter 11 Cases to avoid any potential breach of such nondisclosure agreements.  Additionally, certain contracts may have expired after the Petition Date, in which case the Debtors have noted such expiration next to the applicable contract in Schedule G.

**(bb)**    **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an

amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.

**(cc)** <u>**Fiscal Year.**</u>  Each Debtor's most recent fiscal year ended on February 25, 2023. The Debtors operate on a 4-4-5 calendar for financial reporting, and the date on which the fiscal year ends can change annually.

**(dd)** <u>**Umbrella or Master Agreements.**</u>  Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.  The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

**(ee)** <u>**Credits and Adjustments.**</u>  The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed in the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, or other adjustments, including, but not limited to, the right to modify the Schedules, assert Claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a postpetition basis.

**(ff)** <u>**Payments.**</u>  The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses.  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

<u>**Specific Schedule Disclosures**</u>

1. **Schedule A/B – Assets – Real and Personal Property.**

   **(a)** *Part 3 – Accounts Receivable.*

       (i)    *Item 11.*  Due to the volume of the Debtors' financial records with respect to accounts receivable, and the Debtors' inability to break out accounts receivable that are more than ninety days old, the entire amount of accounts receivable is disclosed in the aggregate in part "c."

**(b)**    *Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.*

(i)    *Items 39-55.*  In an effort to reduce the volume of the disclosures that would be otherwise applicable, the Debtors are disclosing their fixed assets at the category level.

**(c)**    *Part 8 – Machinery, Equipment, and Vehicles.*

(i)    *Item 47.*  The Debtors own certain automobiles that have been fully depreciated and carry a net book value of $0.  These assets have not been listed in the Schedules.

**(d)**    *Part 10 – Intangibles and Intellectual Property.*

(i)    *Item 61.*  Although the Debtors made diligent efforts to attribute each internet domain name to its rightful Debtor, in certain instances, the Debtors were unable to identify the current legal entity to which the internet domain name belonged.  As such, the Debtors attributed those internet domain names to Debtor Bed Bath & Beyond Inc. on the Schedule.

**(e)**    *Part 11 – All Other Assets.*

(i)    *Item 73.*  The Debtors' insurance policies apply to each Debtor entity, but in an effort to reduce the volume of the disclosures that would be otherwise applicable, the Debtors are only disclosing their insurance policies on Bed Bath & Beyond Inc.'s Schedule A/B.

**2.    Schedule D – Creditors Who Have Claims Secured by Property.**

**(a)**    *Part 1 – List Creditors Who Have Secured Claims.*

(i)    The Debtors' creditors holding secured funded debt Claims are listed only on Debtor Bed Bath & Beyond, Inc.'s Schedule D, and not on the Schedule D of each of the subsidiary Debtors.

**3.    Schedule E/F – Creditors Who Have Unsecured Claims.**

**(a)**    *Part 1 – Creditors with Priority Unsecured Claims.*

(i)    **Priority Tax Claims:**  Pursuant to the *Interim Order (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief* [Docket No. 94] (the "Interim Taxes Order"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition.  Accordingly, any unsecured priority Claims based upon prepetition tax accruals may have been paid or may be paid pursuant to the Interim Taxes Order or pursuant to further Court order.  Therefore, the Debtors have listed the taxing authorities with a contingent, undetermined, or $0 amount.

13

The Debtors have made a reasonable effort to list all known taxing authorities. However, the Debtors acknowledge the possibility that information related to material tax accruals may be discovered subsequent to the filing of the Schedules and Statements. The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available, should the Debtors deem it appropriate.

(ii) **Employee Claims:** Furthermore, pursuant to the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [Docket No. 388] (the "Wages Order") the Debtors received final authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtors believe that any non-insider employee Claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority Claim, have been or will be satisfied, and such satisfied amounts are not listed.

The listing of a Claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such Claim or any portion thereof is entitled to priority status.

Except as otherwise agreed pursuant to a stipulation or order entered by the Court, the Debtors reserve their rights to dispute or challenge the validity or immunity from avoidance of any Claim purported to be granted to a creditor listed on Schedule E/F. Moreover, although the Debtors have scheduled Claims of various creditors, the Debtors reserve all rights to dispute or challenge any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.

**(b)** *Part 2 – Creditors with Nonpriority Unsecured Claims.* The liabilities identified on Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors have made a reasonable attempt to verify their unsecured obligations, although the actual amount of Claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claims or the correct amount of all unsecured Claims.

As noted in paragraph 3(b) above, the Debtors generally allocate individual liabilities to particular banners. In most cases, it would be a time consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation. Instead, Schedule E/F, Part 2, reflects the liability as recorded in the Debtors' books and records.

14

Schedule E/F, Part 2, contains information regarding certain compensation related Claims of current and former employees of the Debtors, with such Claims being listed as both "contingent" and "unliquidated." In scheduling such Claims, the Debtors make no representation or assertion as to the validity of such Claims, and the Debtors reserve all rights, Claims, and defenses in connection therewith.

Schedule E/F, Part 2, contains information regarding material pending litigation involving the Debtors. The amounts for these potential Claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include Claims that may arise in connection with the rejection of any executory contract or unexpired lease, if any, that may be or have been rejected.

In many cases, the Claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a Claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such Claim.

The Debtors have included payables liabilities in Schedule E/F reflecting amounts recorded in their books and records as of approximately May 25, 2023. As of the date hereof, the Debtors may not have received all invoices for payables, expenses, and other liabilities that accrued prior to the Petition Date, and continue to reconcile their books and records for the determination of prepetition liabilities. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligation, to amend Schedules D and E/F if and as they receive additional prepetition invoices.

**Customer Gift Cards.** With respect to gift cards, the Debtors cannot ascertain the identity of the vast majority of the holders of such gift cards or whether such cards are still in existence. Therefore, the Debtors have not included any holders of gift cards on the Schedules. The Debtors estimate that as of the Petition Date, approximately $350 million of gift cards were outstanding, and this amount is not specifically identified on the Schedules.

4. **Schedule H – Codebtors.**

(a) *Item 2.* Similar to the treatment of Schedule D, Guarantees with respect to the Debtors' secured funded debt obligations are listed on Debtor Bed Bath & Beyond Inc.'s Schedule H, and not on the Schedule H of each of the subsidiary Debtors.

## <u>Specific Statement Disclosures</u>

1. **Statement, Part 10, Question 19.**  As part of their historical practice, the Debtors maintain safes at all of their stores.  Generally, however, the Debtors do not maintain safety deposit boxes otherwise.  Given the volume of the Debtors' stores, and thereby the volume of the Debtors' safes, in an effort to reduce the volume of disclosures that would be otherwise applicable, the Debtors have not included this information on the Statements.

2. **Statement, Part 13, Question 26.**  The Debtors provide certain parties, such as banks, factors, auditors, potential investors, vendors, and financial advisors, with financial statements.  The Debtors do not maintain complete lists or other records tracking such disclosures.  Therefore, the Debtors have not provided full lists of these parties in Part 13, Question 26 of the Statements.

3. **Statement, Part 13, Question 27.**  The Debtors inventory product at their various store locations and distribution centers on a rolling basis.  In an effort to reduce the volume of disclosures that would be otherwise applicable, the Debtors have omitted such frequent cycle counts conducted by the stores and distribution centers.

4. **Statement, Part 13, Question 29.**  The Debtors' records are incomplete as to dates of appointment or resignation for former directors and officers.  The Debtors cannot ascertain the identity of all former directors and officers, but the Debtors have made reasonable efforts to list all known former directors and officers.

*      *      *      *      *

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| Part 1: | Income |
| --- | --- |

### 1. Gross Revenue from business

☑ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
| --- | --- | --- |
| From _____ to _____<br>MM/DD/YYYY        MM/DD/YYYY | ☐ Operating a business<br>☐ Other _____ | _____ |

**Harmon of Greenbrook II, Inc.**                                      **Case Number:   23-13409 (VFP)**

| Part 1: | Income |
|---------|--------|

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| From _____ to _____<br>MM/DD/YYYY        MM/DD/YYYY | _____ | _____ |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575 (this amount may be adjusted on 04/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment).

☑ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1    NONE | | | ☐ Secured debt<br>☐ Unsecured loan repayment<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | **TOTAL** | $0 | |

| | **TOTAL** | $0 |
|---|---|---|

**Harmon of Greenbrook II, Inc.**                              **Case Number:   23-13409 (VFP)**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575 (this amount may be adjusted on 04/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment).  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|-------------------------------------------------------|-------|--------|--------------------|
| 4.1     NONE |  |  |  |

|  | TOTAL | $0 |  |

|  | TOTAL | $0 |  |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date Action was Taken | Value of Property |
|---|---|---|---|
| 5.1    NONE | | | $0 |

|  |  |
|---|---|
| **TOTAL** | **$0** |

**Harmon of Greenbrook II, Inc.**                                            **Case Number:   23-13409 (VFP)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|---|---|---|---|---|
| 6.1 NONE | | | | $0 |

|  | **TOTAL** | **$0** |
|---|---|---|

**Harmon of Greenbrook II, Inc.**                                          **Case Number:    23-13409 (VFP)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

### 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within 1 year before filing this case.

☑ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---------------------------------|----------------------|-----------------------------|----------------|
| 7.1    NONE | | | |

**Harmon of Greenbrook II, Inc.**                                                                    **Case Number:   23-13409 (VFP)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|------------------------------|------------------------|-----------------------|------|-------------------------|-------|
| 8.1    NONE | | | | | |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|--------------------------------------------|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relationship to Debtor | Description of the Gifts or Contributions | Dates Given | Value |
|------------------------------|-----------------------------------|-------------------------------------------|-------------|-------|

9.1   NONE

Harmon of Greenbrook II, Inc.                                    Case Number:    23-13409 (VFP)

| Part 5: | Certain Losses |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of Property | How Loss Occurred | Amount of Payments Received | Date of Loss | Property Value |
|---|---|---|---|---|
| | | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |

10.1    NONE

TOTAL

**Harmon of Greenbrook II, Inc.**                                                                 **Case Number:   23-13409 (VFP)**

| Part 6: | Certain Payments or Transfers |
|---|---|

## 11. Payments related to bankruptcy

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor? | If not Money, Describe any Property Transferred | Dates | Total Amount or Value |
|---|---|---|---|---|---|
| 11.1    NONE | | | | | $0 |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| **Part 6:** | Certain Payments or Transfers |
|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of Trust or Device | Trustee | Describe any Property Transferred | Dates Transfers were Made | Total Amount / Value |
|---|---|---|---|---|
| 12.1      NONE | | | | $0 |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

### 13. Transfers not already listed on this statement

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☑ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|
| 13.1   NONE | | | $0 |

|  |  |  | **TOTAL** | **$0** |
|---|---|---|---|---|

Harmon of Greenbrook II, Inc.                                    Case Number:   23-13409 (VFP)

| Part 7: | Previous Locations |
|---|---|

### 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of Occupancy |
|---|---|
| 14.1    NONE | From: _____ To: _____ |

**Harmon of Greenbrook II, Inc.**                                  **Case Number:    23-13409 (VFP)**

| Part 8: | Health Care Bankruptcies |
|---|---|

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|
| 15.1   NONE | | | | ☐ Electronic<br>☐ Paper |

**Harmon of Greenbrook II, Inc.**                    **Case Number:   23-13409 (VFP)**

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. _____

  Does the debtor have a privacy policy about that information?
  ☐ No
  ☐ Yes

**Harmon of Greenbrook II, Inc.**                                   **Case Number:    23-13409 (VFP)**

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☐ Yes.  Fill in below:

Describe: _____        EIN: _____

Has the plan been terminated?
☐ No
☐ Yes

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18. 1    NONE | | | | |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
| --- | --- |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
| --- | --- | --- | --- |
| 19.1    NONE | | | ☐ No<br>☐ Yes |

**Harmon of Greenbrook II, Inc.**                                                    **Case Number:   23-13409 (VFP)**

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |
|---|---|

### 20. Off-premises storage

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20.1     NONE | | | | ☐ No<br>☐ Yes |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|----------|--------------------------------------------------------------------|

### 21. Property held for another

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|--------------------------|--------------------------|-----------------------------|-------|
| 21.1    NONE | | | |

**Harmon of Greenbrook II, Inc.**                                      **Case Number:   23-13409 (VFP)**

| **Part 12:** | **Details About Environmental Information** |

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Provide details below.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|
| 22.1    NONE | | | |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23.1   NONE | | | |

**Harmon of Greenbrook II, Inc.**                                                                                   **Case Number:   23-13409 (VFP)**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 24.1  NONE | | | |

**Harmon of Greenbrook II, Inc.**                                          **Case Number:    23-13409 (VFP)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 25. Other businesses in which the debtor has or has had an interest

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☑ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| | | *Do not include SSN or ITIN* | |
| 25.1 | | | |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and Address | | Dates of Service | | | |
|---|---|---|---|---|---|
| 26a. 1 | GUSTAVO ARNAL - CHIEF FINANCIAL OFFICER<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | From: | 4/23/2021 | To: | 9/2/2022 |
| 26a. 2 | HOLLY ETLIN - CHIEF FINANCIAL OFFICER<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | From: | 2/7/2023 | To: | 4/23/2023 |
| 26a. 3 | LAURA CROSSEN - CHIEF FINANCIAL OFFICER<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | From: | 9/2/2022 | To: | 2/7/2023 |

**Harmon of Greenbrook II, Inc.**                                                    **Case Number:   23-13409 (VFP)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |

### 26. Books, records, and financial statements

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service | | | |
|---|---|---|---|---|
| 26b.1   KPMG LLP<br>3 CHESTNUT RIDGE ROAD<br>MONTVALE, NJ 07645 | From: | 4/23/2021 | To: | 4/23/2023 |

**Harmon of Greenbrook II, Inc.**                                      **Case Number:   23-13409 (VFP)**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1  HOLLY ETLIN - CHIEF FINANCIAL OFFICER<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:    23-13409 (VFP)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and Address |
|---|
| 26d.1    NONE |

**Harmon of Greenbrook II, Inc.**                                      **Case Number:    23-13409 (VFP)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1   NONE | | | | |

**Harmon of Greenbrook II, Inc.**                                                    **Case Number:   23-13409 (VFP)**

---

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**28.  List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Positition and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1  DAVID KASTIN<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | SECRETARY | |
| 28.2  HARMON STORES, INC.<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | SHAREHOLDER | 100.00% |
| 28.3  HOLLY ETLIN<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | CHIEF RESTRUCTURING OFFICER | |
| 28.4  LAURA CROSSEN<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | CURRENT BOARD MEMBER | |
| 28.5  SUSIE KIM<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | TREASURER | |
| 28.6  TONI-ANNE ANDRISANO<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | ASSISTANT SECRETARY | |
| 28.7  WADE HADDAD<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | VICE PRESIDENT | |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|------------------|--------------------------------|----------------------------------------|
| 29.1  GREGG MELNICK<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | EVP, CHIEF STORES OFFICER | From: _____  To: _____ |
| 29.2  GUSTAVO ARNAL<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | TREASURER | From: _____  To: _____ |
| 29.3  MARA SIRHAL<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | BOARD MEMBER | From: _____  To: _____ |
| 29.4  MARA SIRHAL<br>650 LIBERTY AVENUE<br>UNION, NJ 07083 | PRESIDENT | From: _____  To: _____ |

**Harmon of Greenbrook II, Inc.**                                                      **Case Number:   23-13409 (VFP)**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 30. Payments, Distributions, or Withdrawals Credited or Given to Insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and Address of Recipient and Relationship to Debtor | Amount | Dates | Reason for Providing the Value |
|---|---|---|---|
| 30.1    NONE | | | |

|  | TOTAL | $0 |
|---|---|---|

**Harmon of Greenbrook II, Inc.**                                                    **Case Number:   23-13409 (VFP)**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**31.  Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31. I   BED BATH & BEYOND INC. | EIN:    11-2250488 |

Harmon of Greenbrook II, Inc.                                    Case Number:   23-13409 (VFP)

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32. I    NONE | EIN: |

**Harmon of Greenbrook II, Inc.**                                    **Case Number:   23-13409 (VFP)**

| **Part 14:** | **Signature and Declaration** |

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:** _____ May 30, 2023 _____

**Signature:** _/s/ Holly Etlin_____        Holly Etlin, Chief Restructuring Officer_____

                                                              **Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X] No

[ ] Yes