**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION**
**AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS**
**USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE**
**<u>AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES</u>**

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at <u>https://restructuring.ra.kroll.com/bbby</u>.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this motion (the "<u>Motion</u>"):

**<u>Relief Requested</u>**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"):

(a)     authorizing the rejection and termination of:

(i)     that certain lease of non-residential real property dated as of

September 21, 2006, as subsequently amended or modified (the "<u>Woodbridge Lease</u>"), between

Debtor, Bed Bath & Beyond Inc., and PRW URBAN RENEWAL 1, LLC ("<u>PRW</u>") governing

the premises located at 1001 West Middlesex Ave., Woodbridge, NJ 07064 (the "<u>Woodbridge</u>

<u>Premises</u>"); and

(ii)     that certain lease of non-residential real property dated as of March

31, 2016, as subsequently amended or modified (the "<u>Las Vegas Lease</u>" and together with the

Woodbridge Lease, the "<u>Leases</u>"), between Debtor, Bed Bath & Beyond Inc., and PROLOGIS

USLF NV II LLC ("<u>Prologis USLF</u>" and collectively with PRW, "<u>Prologis Landlords</u>")

governing the premises located at 5835 East Ann Road, North Las Vegas, Nevada 89115, known

as "Prologis Speedway Logistics Center #1" (the "<u>Las Vegas Premises</u>" and collectively with the

Woodbridge Premises, the "<u>Premises</u>");

(b)     approving the certain Termination Agreement dated May 26, 2023 by and

among the Prologis Landlords and Bed Bath & Beyond Inc., as Tenant in each of the Leases (and

hereinafter "<u>Tenant</u>"), annexed as <u>Exhibit 1</u> to **<u>Exhibit A</u>** attached hereto (the "<u>Lease</u>

<u>Termination Agreement</u>"), by which the Debtors agree that, upon the Termination Date (as

2

defined therein), the Leases shall be deemed rejected and terminated in exchange for, among other things, (i) $3,500,000.00 (subject to offset as permitted in the Lease Termination Agreement), payable as set forth in the Lease Termination Agreement, (ii) a release of all claims held by the Prologis Landlords against each Tenant, (iii) a release of each Tenant's claims against the Prologis Landlords, and such other terms and conditions set forth in the Lease Termination Agreement;

(c)    authorizing the Debtors' transfer to the respective Prologis Landlord possession of, and title to, all material handling equipment, including but not limited to lift trucks, generators, compressors, conveyors and racking located at the respective Premises as of the date of the Lease Termination Agreement (the "MHE") as well as any solar system and its associated equipment located at the Premises (the "Solar Equipment") and any interconnection agreement for the Solar Equipment, free and clear of all liens, claims and encumbrances; and

(d)    granting related relief, including authorizing the Debtors and the Prologis Landlords to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein.[2]

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

---

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration") or the Lease Termination Agreement, as applicable.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.          Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.          The bases for the relief requested herein are sections 105(a), 363, 365, and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5.          Under the terms of the Leases, the Prologis Landlords leased the Woodbridge Premises and the Las Vegas Premises, respectively, to, in each case, Bed Bath & Beyond, Inc. as Tenant.

6.          After extensive arms-length negotiations, the parties entered into the Lease Termination Agreement pursuant to which the Debtors and the Prologis Landlords agreed that the Leases shall be deemed rejected and terminated as of May 31, 2023 (with respect to the Woodbridge Lease) and June 30, 2023 (with respective the Las Vegas Lease), in accordance with the terms set forth in the Lease Termination Agreement.

## The Lease Termination Agreement

7.          As set forth more fully in Exhibit 1 to the Order, the key provisions of the Lease Termination Agreement are summarized below:[3]

(1)          *Termination of the Leases.*  The Woodbridge Lease is terminated effective May 31, 2023, and the Las Vegas Lease is terminated June 30, 2023 (as applicable, the "Termination Date").  On the Termination Date, the Debtors will surrender the Premises to each respective Prologis Landlord.  On the Termination Date, the existing applicable Lease will be

---

[3]          The terms described in paragraphs 7 and 8 below are for illustrative purposes only.  To the extent there is any inconsistency between the terms set forth in the Lease Termination Agreement and the terms described herein, the Lease Termination Agreement shall control in all respects.

deemed terminated.  Any property remaining on the Premises after the Termination Date shall be deemed abandoned.

(2)     *Payment to the Debtors.*  Within one day after the execution of the of the Termination Agreement, the Prologis Landlords shall deliver to Cole Schotz P.C., to be held in escrow pending the Termination Date and the transfer of the MHE and Solar Equipment, a cash payment in the amount of $3,500,000.00 (the "Termination Payment").  Tenant shall have no obligation to pay any base rent or operations expenses under the Las Vegas Lease for the month of June 2023; provided Tenant shall remain obligated to pay all utilities with respect to the Las Vegas Premises through the Termination Date of the Las Vegas Lease.  Each Prologis Landlord acknowledges that it will not constitute a post-petition default if Tenant is not paying the rent due under the Leases while the application for the Bankruptcy Court Order is pending.  On the dates of the satisfaction of the conditions precedent set forth in Section 7 of the Lease Termination Agreement, $1,740,000.00 shall be released with respect to the Woodbridge Lease and $1,760,000.00 shall be released with respect to the Las Vegas Lease.

(3)     *Transfer of Property at the Premises*.  As additional consideration for the Termination Payment, effective on the respective Termination Date, Tenant shall transfer to the respective Prologis Landlord possession of, and title to, all MHE as well as the Solar Equipment and any interconnection agreement for the Solar Equipment, free and clear of all liens, claims and encumbrances.  Moreover, any furniture, fixtures and equipment ("FF&E") remaining at the Premises after the applicable Termination Date is deemed abandoned and the Prologis Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to the Debtors or any entity.

(4)     *Mutual Release of Claims.*  The Prologis Landlords and each Tenant will be deemed to have granted each other mutual releases of all claims and causes of action.

8.     Moreover, to the extent applicable, and the information required by Local Rule

6004-1, is summarized below:

| Local Rule | Provision | Summary Description |
|---|---|---|
| 6004-1(a)(3)(A) | Property to Be Sold | As identified in the Lease Termination Agreement, including the Debtors' rights in and to the Leases are being terminated, and the property transferred shall include MHE, the Solar Equipment and any FF&E remaining in the Premises as of the Termination Date. |
| 6004-1(a)(3)(B) | Closing Date | The Leases shall terminate, and the Tenant shall surrender possession of the Premises, on the applicable Termination Date. |
| 6004-1(a)(3)(C) | Purchase Price | $3,500,000 in cash, together with the release and waiver of any claims against the Debtors and the Debtors' estates as provided in the Landlord Release of Tenant (Section 4 of the Termination Agreement) |
| 6004-1(a)(3)(D) | Conditions of Sale | As applicable on the applicable Termination Date, (a) Tenant has delivered possession of the applicable Premises to the applicable Prologis Landlord; (b) Tenant has delivered to applicable Prologis Landlord the keys and access codes to the applicable Premises; and (c) an order |

| **Local Rule** | **Provision** | **Summary Description** |
|---|---|---|
| | | has been entered approving the entirety of the Lease Termination Agreement. |
| 6004-1(a)(3)(E) | Deadline for Approval/Closing | Termination Date of May 31, 2023 (with respect to Woodbridge Lease) and June 30, 2023 (with respect to Las Vegas Lease).  Tenant is required to surrender the respective Premises on such dates. |
| 6004-1(a)(3)(F) | Deposit | The entire consideration ($3,500,000) shall be held in escrow by Cole Schotz and released on the applicable respective Termination Date to the Debtors. |
| 6004-1(a)(3)(G) | 1146(b) Tax Determination | N/A |
| 6004-1(a)(3)(I) | Lease to Assumed and Assigned | N/A.  The Leases with the Prologis Landlords will be rejected and terminated. |
| 6004-1(a)(3)(J) | Credit Bidding | N/A |
| 6004-1(a)(3)(K) | Broker's Commission / Sale Agent Fee | N/A.  However, to the extent any fee or commission is due, the Debtors shall have sole responsibility therefor. |
| 6004-1(b)(1) | Insider Transaction | N/A |
| 6004-1(b)(2) | Agreements with Management / Key Employees | N/A |
| 6004-1(b)(3) | Waiver, Release or Satisfaction of Claims | The Lease Termination Agreement provides for certain mutual releases, including the Prologis Landlords' agreement to release Tenant and waive any claims against the Debtors' estates (as affiliates of Tenant), including all claims relating to the obligation to perform any repair or replacement work to any part of the Premises or any fixtures, fittings or improvements therein except for material damage resulting from Tenant's move out which shall be repaired at Tenant's expense. |
| 6004-1(b)(4) | Agreement to limit marketing / not solicit competing offers | The Debtors have agreed not to market the Leases and are required to remove the Leases from any lease sale procedures or sale process. |
| 6004-1(b)(5) | Interim Agreement with Purchaser | N/A |
| 6004-1(b)(6) | Release of Sale Proceeds | N/A |
| 6004-1(b)(7) | Limitation on Pursuing Avoidance Action Claims | N/A |
| 6004-1(b)(8) | Successor Liability | N/A.  Though the Prologis Landlords have agreed to release the Tenant and their successors and Tenant releases the Prologis Landlords' successors. |
| 6004-1(b)(9) | Sale of Property Free and Clear of Leasehold Interest, License or Other Right | The Debtors shall transfer the MHE and Solar Equipment free and clear of all liens, claims and encumbrances.  Moreover, the Debtors' leasehold interest shall be terminated, and the Debtors are abandoning any interest in any FF&E remaining at the Premises. |
| 6004-1(b)(10) | 6004(h) and 6006(d) Waivers | In order to meet the Termination Date deadlines required by the Lease Termination Agreement, the Debtors have requested the waiver of any stay imposed by Bankruptcy Rules 6004(h) and 6006(d). |

9.    The Prologis Landlords' agreement to pay the Termination Payment, coupled

with the resolution and release of any and all claims, justifies entry into and performance under

the Lease Termination Agreement.  For the reasons that follow, the Debtors further believe that

approval of the Lease Termination Agreement is in the best interest of their estates.

<strong><u>Basis for Relief Requested</u></strong>

**A.      Rejection and Termination of the Leases Is Supported by Sound Business Reasons.**

10.     Section 365(a) of the Bankruptcy Code provides that a debtor "may assume or

reject any executory contract or unexpired lease of the debtor" subject to the court's approval.

11.     Courts routinely approve motions to assume, assume and assign, or reject

executory contracts or unexpired leases upon a showing that the debtor's decision to take such

action will benefit the debtor's estate and is an exercise of sound business judgment.  *See*

*In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of

assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Matter*

*of Taylor*, 103 B.R. 511, 517 (D.N.J. 1989), *aff'd in part, rev'd, in part*, 913 F.2d 102 (3d Cir.

1990) (citing *Sharon Steel Corp. v. Nat'l Gas Distribs. Corp.*, 812 F.2d 36, 39-40 (3d Cir. 1989).

*See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d

1095, 1099 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the trustee

or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the

inventory of executory contracts of the debtor and decide which ones it would be beneficial to

adhere to and which ones it would be beneficial to reject."); *NLRB v. Bildisco and Bildisco*, 465

U.S. 513, 523 (1984); *City of Covington v. Covington Landing L.P.*, 71 F.3d. 1221, 1226 (6th

Cir. 1995).

12.     Courts generally will not second-guess a debtor's business judgment concerning

the assumption or rejection of an executory contract or unexpired lease.  *See, e.g., In re Balco*

*Equities, Ltd., Inc.*, 323 B.R. 85, 98-99 (Bankr. S.D.N.Y. 2005); *cf Phar-Mor, Inc. v. Strouss*

*Bldg.*, 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is

7

'favorable' or 'unfavorable' is left to the sound business judgment of the debtor…. Courts

should generally defer to a debtor's decision whether to reject an executory contract.");

*In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[a] court will ordinarily defer to

the business judgment of the debtor's management").

13.    The "business judgment" test is not a strict standard; it merely requires a showing

that either assumption or rejection of the executory contract or unexpired lease will benefit the

debtor's estate. *See In re W & L Assocs., Inc.,* 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do

not consider the 'business judgment test' to be a strict standard to meet."); *In re Metro Transp.*

*Co.*, 87 B.R. 338, 343 (Bankr. E.D. Pa. 1988) ("We reiterate that the 'business judgment test' is

not a 'strict standard to meet.'"); *In re Hardie,* 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989) (court

should not disturb the debtor's decision to reject an executory contract unless "the decision is so

unreasonable that it could not be based on sound business judgment, but only on bad faith or

whim.").

14.    The Debtors respectfully submit that entry into the Lease Termination Agreement

and rejection and termination of the Leases represents a fair and reasonable compromise that is

in the best interest of the Debtors' estates and within the Debtors' sound business judgment.

Entry into the Lease Termination Agreement will inure to the benefit of the Debtors' estates in a

number of ways. For example, approval of the Lease Termination Agreement will result in the

payment of the Termination Payment to the Debtors. After consulting with their real estate

advisors, the Debtors believe the Termination Payment represents fair value for the Leases and

related personal property and that no better offer currently exists or likely would be secured

through further marketing, particularly after considering that the Debtors would be required to

pay substantial additional administrative rent at the respective Premises during any marketing

period.  In addition, approval of the Lease Termination Agreement will result in the elimination

of claims that the Prologis Landlords might otherwise have against the Debtors' estates.

Rejection and termination here is also supported by sound business reasons because the Prologis

Landlords support the rejection and will resolve all outstanding rent claims and release rejection

claims against the estates as part of the transaction in accordance with the terms of the Lease

Termination Agreement.  Accordingly, rejection is appropriate under the terms of the Lease

Termination Agreement.

**B.    The Transfer of the MHE and Solar Equipment at the Premises is a Sound Exercise of the Debtors' Business Judgment and Should Be Approved**

15.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of

the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides in relevant

part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title."  11 U.S.C. § 105(a).

16.    The sale of a debtor's property should be authorized pursuant to section 363 of the

Bankruptcy Code if a sound business purpose exists for doing so.  *See, e.g., Meyers v. Martin*

*(In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper*

*(In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.,*

788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir.

1986); *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club,*

128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.,* 124 B.R. 169, 176 (D.

Del. 1991).  The *Delaware & Hudson Railway* court held that once a court is satisfied that there

is a sound business reason, "the court must also determine that the [debtor] has provided the

interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.*

17.    As additional consideration for the Termination Payment, the Debtors propose to transfer the MHE and Solar Equipment to the Prologis Landlords.  In that regard, the Debtors have concluded that such a transfer is supported by a number of sound business reasons and that the transactions under the Lease Termination Agreement provide reasonably equivalent value for the transfer of the MHE and Solar Equipment (and the termination of the Debtors' interest in Leases).  In addition to the Termination Payment, the Debtors receive value in several other forms, including, without limitation (i) a waiver of rent and operating expenses under the Las Vegas Lease for June 2023 (while the Debtors are still utilizing the Las Vegas Premises), (ii) the elimination of what would have been the Debtors' obligation to pay administrative rent and other operating expenses while the Debtors sought to sell the MHE and Solar Equipment, and (iii) the Prologis Landlords' agreement that the Debtors shall have no obligation to perform any repair or replacement work to any part of the Premises or any fixtures, fittings or improvements therein (except for material damage resulting from Tenant's move out which shall be repaired at Tenant's expense).

18.    For the reasons noted above, the immediate termination of the Leases, the transfer of the MHE and Solar Equipment, and closing under the Lease Termination Agreement is supported by sound business reasons and is in the best interests of the Debtors' estates. Accordingly, in addition to transferring all of the Debtors' rights under the Leases, the Debtors request approval under section 363(b) of the Bankruptcy Code to transfer the MHE and Solar Equipment to the Prologis Landlords in accordance with the terms of the Lease Termination Agreement.

**C.    Transfer of Property is Free and Clear of All Liens, Claims, and Encumbrances**

19.    The Prologis Landlords are only willing to pay the Termination Payment if the

MHE and Solar Equipment are transferred free and clear of all liens, claims, and encumbrances.

Accordingly, the Debtors are seeking authorization to transfer the MHE and Solar Equipment

free and clear of all liens, claims, and encumbrances to maximize value.

20.    Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property
> free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to
> be sold is greater than the aggregate value of all liens on such
> property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus,

satisfaction of any of the requirements enumerated therein will suffice to warrant the transfer of

the Solar Facilities free and clear of all liens, claims, and encumbrances.  *See Citicorp*

*Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that

because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if

any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.*

*(In re Wolverine Radio Co.),* 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph,*

*Inc.,* 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).  Furthermore, a debtor possesses

broad authority to sell assets free and clear of liens.  *See In re Trans World Airlines, Inc.,* 322 F.3d 283, 289 (3d Cir. 2003).

22.     The Debtors submit that it is appropriate to transfer the MHE and Solar Equipment on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) of the Bankruptcy Code are satisfied with respect to such transfer.  In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested.  Such lienholders that do not object to a transfer should be deemed to have consented.[4]  *See FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.),* 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot,* 94 B.R. at 345 (same).

23.     Furthermore, the Debtors propose that any liens, claims, and encumbrances asserted against the MHE and Solar Equipment be transferred to and attach to the proceeds of such transfer in the same order of priority and with the same validity, force and effect that such creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.  *See Folger Adam,* 209 F.3d at 259; *In re Elliot,* 94 B.R. at 345; *In re Circus Time, Inc.,* 5 B.R. 1, 7 (Bankr. D. Me. 1979).  Therefore, the Debtors may

---

[4]      The Debtors note that they have shared an outline of the terms of the parties' agreement with the Debtors' secured lenders, which have not raised any objection to the proposed transactions set forth in the Lease Termination Agreement.

transfer the MHE and Solar Equipment free and clear of all liens, claims, and encumbrances on

the terms set forth in the Lease Termination Agreement.

**D.      Good Faith of the Prologis Landlords Under Section 363(m) of the Bankruptcy Code.**

24.      Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Third Circuit

in *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to
> the integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.,*

111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s

good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders

or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Bakalis*,

220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *see also Cinicola v. Scharffenberger,* 248 F.3d 110,

121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits

the reversal of a sale to a good faith purchaser of bankruptcy estate Real Property if a party failed

to obtain a stay of the sale."); *In re Stein & Day, Inc.,* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990)

("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a

sale on appeal unless there is a stay pending appeal.").

25.     The Lease Termination Agreement was a negotiated, arm's-length transaction, in

which the Prologis Landlords acted in good faith and in compliance with the *Abbotts Dairies*

standards.  The Prologis Landlords are independent third-party buyers and neither is an "insider"

or "affiliate" of the Debtors as defined in section 101 of the Bankruptcy Code.  The Debtors thus

request that the Court find that the Prologis Landlords acquired the Debtors' interest in the

Leases as well as the MHE and the Solar Equipment in good faith within the meaning of section

363(m) of the Bankruptcy Code.

**E.     A Private Transaction Is Appropriate.**

26.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to

section 363 of the Bankruptcy Code (and D.N.J. LBR 6004-1(c) and 6004-5 each contemplate

private sales).  Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the

ordinary course of business may be by ***private sale*** or by public auction."  Fed. R. Bankr. P.

6004(f)(1) (emphasis added); *see Berg v. Scanlon (In re Alisa P'ship),* 15 B.R. 802, 802 (Bankr.

D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

27.     Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding sales

under section 363 of the Bankruptcy Code, a debtor may conduct a private sale if a good

business reason exists.  *See*, *e.g.*, *In re MF Global, Inc.,* 535 B.R. 596, 605 (Bankr. S.D.N.Y.

2015 ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty,*

*Inc.,* 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale

conducted by a chapter 11 debtor); *In re Condere Corp.,* 228 B.R. 615, 629 (Bankr. S.D. Miss.

1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient

business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.,*

178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a

bankruptcy court in determining whether a private sale should be approved.  The court should

exercise its discretion based upon the facts and circumstances of the proposed sale.");

*In re Wieboldt Stores, Inc.,* 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

28.    The Debtors submit that proceeding by way of private sale with the Prologis Landlords in accordance with the Lease Termination Agreement is appropriate in light of the facts and circumstances of these Chapter 11 Cases.  Specifically, a long and complicated sale process with bid procedures and an auction is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process, including the ongoing payment of rent to the Prologis Landlords.

29.    As a result, the transactions with the Prologis Landlords allow the Debtors to maximize the value of the Leases, the MHE and Solar Equipment and provides a significant benefit to the Debtors' estates.  Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the Prologis Landlords' offer is the highest or best offer for the Leases, the MHE and Solar Equipment at this time, the Debtors request that the Court approve the proposed private transactions with the Prologis Landlords in accordance with the Lease Termination Agreement.

**F.    Abandonment of Personal Property Remaining in the Leased Premises Should be Approved by the Court.**

30.    The Lease Termination Agreement provides that any FF&E remaining at the Premises after the applicable Termination Date is deemed abandoned and the Prologis Landlords and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to the Debtors or any entity.

31.     The Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied with respect to the abandonment of the FF&E.  Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Before authorizing abandonment of property, a bankruptcy court must find either: (i) the property is burdensome to the estate or (ii) the property is both of inconsequential value and inconsequential benefit to the estate.  *See*, *e.g.*, *Midlantic Nat'l bank v. N.J. Dep't of Envtl. Prot*., 474 U.S. 494, 497 (1986), *reh'g denied*, 475 U.S. 1091 (1986).

32.     Although the Debtors will remove all personal property other than the MHE and the Solar Equipment, including all inventory at the Premises, certain personal property, *i.e.*, the FF&E, may remain at each of the Premises after the Termination Date.  To the extent such personal property remains it is (a) of limited to no value or benefit to the Debtors' estates and/or (b) burdensome insofar as the costs of removal and storage of such property is likely to exceed the net proceeds realizable from their sale.

33.     Rule 6007-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules") requires that notice of a proposed abandonment, among other things, describe the property to be abandoned.  The Debtors submit that given the description of the personal property provided herein and the *de minimis* nature of such property, the requirements of the Local Rules have been satisfied.  Alternatively, to the extent the Court finds such information does not meet the requirements of Local Bankruptcy Rule 6007-1, the Debtors respectfully request that the Court waive such requirements with respect to this Motion.

16

### Request of Waiver of Stay

34.    To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

### The Requirements of Local Rule 6007-1 Are Satisfied

35.    The Debtors respectfully submit that all information required pursuant to Local Rule 6007-1 is encompassed in the Motion and Lease Termination Agreement.  Accordingly, the Debtors request that the Court waive the requirement to file any separate notice pursuant to Local Rule 6007-1.

### Waiver of Memorandum of Law

36.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

37.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common

17

law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights

of all parties are expressly reserved to contest the extent, validity, or perfection or seek

avoidance of all such liens.  If the Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended and should not be construed as an admission as to

the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute

such claim.

## No Prior Request

38.    No prior request for the relief sought in this Motion has been made to this Court

or any other court.

## Notice

39.    The Debtors will provide notice of this Motion to the following parties and/or

their respective counsel, as applicable:  (a) the United States Trustee for the District of New

Jersey; (b) the Committee[5]; (c) the agents under the Debtors' prepetition secured facilities and

counsel thereto; (d) the DIP Agent and counsel thereto; (e) Davis Polk & Wardwell, LLP, and

Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the

indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's

Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities

and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct

their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the

Debtors' Canadian Counsel; (m) the Prologis Landlords; and (n) any party that has requested

---

[5]    On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official
committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No.
218].

notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: May 30, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

## **Exhibit A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

### ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES

The relief set forth on the following pages, numbered two (2) through six (6), is

**ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES |

Upon the *Motion for Entry of an Order Pursuant to Sections 365 and 363 Approving the Lease Termination Agreement with PRW Urban Renewal 1, LLC, and Prologis USLF NV II LLC and Authorizing the Accompanying Sale and Transfer of Property Located at the Premises* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), among other things, (a) authorizing the deemed rejection and termination of the Leases, (b) approving the Lease Termination Agreement between the Debtors and the Prologis Landlords, (c) authorizing the transfer of certain property at the Premises, including the MHE and Solar Equipment free and clear of all liens, claims and encumbrances, (d) authorizing the abandonment of any FF&E remaining at the Premises as of the Termination Date, and (e) authorizing the Debtors and Landlord to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES |

the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      Pursuant to sections 105(a), 363(b)(1) and (f), 365(a) and 554(a) of the Bankruptcy Code, the Debtors and Landlord are authorized to enter into and perform under the Lease Termination Agreement, attached hereto as **Exhibit 1**, and to implement the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.  The Lease Termination Agreement and all of the terms and conditions thereof, including, without limitation, the rejection and termination of the Leases, the Debtors' surrender of the Premises, the consummation of the transactions contemplated thereunder and hereunder, and the releases contemplated therein, which for the avoidance of doubt includes the Prologis Landlords' release of any administrative claims (except as provided thereunder), are hereby approved in all respects.

3.      Upon the applicable Termination Date (as defined in the Lease Termination Agreement), the Debtors' rejection and termination of the Leases shall occur without any further

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES |

action required by the Debtors, and the Debtors shall surrender the applicable Premises pursuant to the terms of the Lease Termination Agreement.

4.      The Debtors are authorized, pursuant to section 363(b)(1) of the Bankruptcy Code, to transfer the MHE and the Solar Equipment, together with the Debtors' interest in the Lease, pursuant to the terms of the Lease Termination Agreement, which transfer shall, pursuant to section 363(f) of the Bankruptcy Code, be free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.

5.      The Debtors, in their sole discretion, are authorized, pursuant to section 554(a) of the Bankruptcy Code, to abandon to the Prologis Landlords any personal property, including the FF&E, remaining in the Premises as of the applicable Termination Date and the Prologis Landlords and their managing agents are free to dispose of such abandoned property in their sole and absolute discretion without liability to the Debtors or any entity.

6.      The Debtors and the Prologis Landlords are authorized to take any and all actions reasonably necessary or appropriate to consummate the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.

7.      Nothing in this Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES |

(collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between the Order and the terms of the Initial Order, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

8.      The Debtors and Landlord are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     The requirement set forth in Local Rule 6007-1 that the Debtor file a notice of proposed abandonment is hereby deemed satisfied by the contents of the Motion and Lease Termination Agreement or otherwise waived.

12.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH PRW URBAN RENEWAL 1, LLC, AND PROLOGIS USLF NV II LLC AND AUTHORIZING THE ACCOMPANYING SALE AND TRANSFER OF PROPERTY LOCATED AT THE PREMISES |

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

Lease Termination Agreement

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 26th day of May, 2023 by and between PRW URBAN RENEWAL 1, LLC, a New Jersey limited liability company ("PRW") and PROLOGIS USLF NV II LLC, a Delaware limited liability company ("Prologis USLF") (collectively, "Landlord") and BED BATH & BEYOND INC., a New York corporation ("Tenant" or "Debtor").

## RECITALS

WHEREAS, PRW and Tenant have entered into a Lease dated September 21, 2006, as amended by that certain First Amendment to Lease Agreement dated December 1, 2008, that certain Second Amendment to Lease Agreement dated July 31, 2009, that certain Third Amendment to Lease Agreement dated October 18, 2010, that certain Fourth Amendment to Lease Agreement dated January 26, 2021, pursuant to which PRW leased to Tenant certain premises consisting of approximately 607,417 square feet located at 1001 West Middlesex Ave., Woodbridge, NJ 07064 (the "Woodbridge Premises"), such lease, as heretofore modified, being herein referred to as the "Woodbridge Lease";

WHEREAS, Prologis USLF and Tenant have entered into a Lease dated March 31, 2016, as amended by that certain First Amendment to Lease Agreement dated October 20, 2017 and that certain Second Amendment to Lease Agreement dated December 5, 2017, pursuant to which Prologis USLF leased to Tenant certain premises consisting of approximately 164,125 square feet located at 5835 East Ann Road, North Las Vegas, Nevada 89115, known as "Prologis Speedway Logistics Center #1", (the "Las Vegas Premises"), such lease, as heretofore modified, being herein referred to as the "Las Vegas Lease");

WHEREAS, the Las Vegas Premises and the Woodbridge Premises may be collectively referred to herein as the "Premises";

WHEREAS, the Las Vegas Lease and the Woodbridge Lease may be collectively referred to as the "Leases";

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, wherein among other things, Landlord is restored to possession of the Premises as of the applicable Termination Date and the parties release each other as provided herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals. The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination. The Woodbridge Lease is terminated effective May 31, 2023, and the Las Vegas Lease is terminated June 30, 2023 (as applicable, the "Termination Date").

DocuSign Envelope ID: FC80E642-520A-4BB6-A147-D7F2CCDACF6F

3.     Consideration. Landlord shall pay to Tenant, as consideration for this Agreement, the sum of $3,500,000.00 (the "Termination Payment"). Furthermore, as additional consideration for the Termination Payment, effective on the respective Termination Date, Tenant shall transfer to the respective Landlord possession of, and title to, all material handling equipment, including but not limited to lift trucks, generators, compressors, conveyors and racking located at the respective Premises as of the date hereof (the "MHE") as well as any solar system and its associated equipment located at the Premises (the "Solar Equipment") and any interconnection agreement for the Solar Equipment, free and clear of all liens, claims and encumbrances.  Tenant shall have no obligation to pay any base rent or operations expenses under the Las Vegas Lease for the month of June 2023; provided Tenant shall remain obligated to pay all utilities with respect to the Las Vegas Premises through the Termination Date of the Las Vegas Lease. Landlord acknowledges that it will not constitute a post-petition default if Tenant is not paying the rent due under the Lease while the application for the Bankruptcy Court Order is pending. The total consideration of $3,500,000.00 shall be paid within one business day after the date hereof by Landlord to Tenant's attorneys, Cole Schotz, P.C., who shall hold such sum in escrow. Landlord hereby directs Cole Schotz, P.C. as escrow agent, to release the consideration to Tenant as follows:

    a.   on the date of the satisfaction of the conditions precedent set forth in Section 7 below with respect to the Woodbridge Lease, the sum of $1,740,000.00; and

    b.   on the date of the satisfaction of the conditions precedent set forth in Section 7 below with respect to the Las Vegas Lease, the sum of $1,760,000.00.

Landlord and Tenant acknowledge that such partial release of the Termination Payment does not constitute an allocation of the Termination Payment between the various Premises.

If Tenant holds over in the Las Vegas Premises beyond June 30, 2023, then such holdover will be governed by Section 27.9 of the Las Vegas Lease except the holdover rent shall be calculated on a per diem basis for the period of such holdover and any amount due shall be deducted from the payment due under Section 3b above and delivered by Tenant's attorneys, Cole Schotz, P.C., to Landlord promptly after Tenant vacates the Las Vegas Premises.  Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease and Tenant shall allow Landlord reasonable access to the Premises for such purpose, and (b) Tenant shall not market the Lease, and shall remove the Lease from any lease sale procedures or sale process.

4.     Landlord Release of Tenant.  Subject to Tenant's timely surrender of the Premises on the Termination Date in the condition required herein, Tenant's transfer of the MHE and Solar Equipment to the respective Landlord as provided herein, and the conditions precedent as set forth in Section 7 below, and for valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length with respect to the Leases, including, without limitation, any and all claims evidenced by the Lease.

5.      Tenant Release of Landlord. Subject to Landlord's payment of the Termination Fee and the conditions precedent as set forth in Section 7 below, and for valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlords, and their respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, avoidance actions under Chapter 5 of the Bankruptcy Code, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses, and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Leases.

6.      Extent of Release. In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that the Releases in Sections 4 and 5 hereof have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7.      Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the applicable Termination Date:

(a)      Tenant has delivered possession of the Premises to applicable Landlord;

(b)      Tenant has delivered to the applicable Landlord the keys and access codes to the Premises;

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement (the "Bankruptcy Court Order").

8.      Condition of Premises. On the applicable Termination Date, Tenant shall deliver to the applicable Landlord possession of the applicable Premises in broom-clean and good condition, but otherwise in its as-is condition, with all inventory property removed except for the MHE, Solar Equipment, and any FFE as provided below. Tenant shall have no obligation to perform any repair or replacement work to any part of the Premises or any fixtures, fittings or improvements therein except for material damage resulting from Tenant's move out which shall be repaired at Tenant's expense. Any furniture, fixtures and equipment ("FF&E") remaining at the Premises after the applicable Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to the Debtor or any entity.  Tenant will execute such documents and provide such additional cooperation as may be required in order to facilitate and effect the transfer of the Solar Equipment to Landlord as of the Termination Date, including but not limited to the execution of the GATS System Change Form attached hereto as Exhibit A.

9.      Authority to Settle. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each

DocuSign Envelope ID: FC805642-520A-4BB6-A147-DZF2GCDACF6F

such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

10.    Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

11.    Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

12.    Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

13.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

14.    Governing Law. This Agreement shall be governed by and construed under the laws of the State of New Jersey, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

15.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

16.    Miscellaneous.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

17.    <u>Escrow Provisions</u>.

(a)    Cole Schotz P.C. hereby agrees that the Termination Payment shall be held by Cole Schotz P.C., in escrow and disbursed in accordance with the terms and conditions of this Agreement. Cole Schotz P.C. shall deposit the Termination Payment in its attorney trust account. If, as of the date of the release of any part of the Termination Payment in accordance with this Agreement, the conditions precedent shall not have been satisfied with respect to the applicable location, Cole Schotz P.C. shall continue to hold the Termination Payment until (i) the satisfaction of the conditions precedent with respect to the applicable location (ii) delivery to Cole Schotz P.C. of mutual instructions by Landlord and Tenant, or (iii) ordered by the Bankruptcy Court (in which event Cole Schotz P.C. shall disburse the same in accordance with such Bankruptcy Court order).

(b)    Landlord and Tenant acknowledge that Cole Schotz P.C. is acting solely as a stakeholder at their request and for their convenience, that Cole Schotz P.C. shall not be liable to either of the parties for any action or omission on its part taken or made in good faith, and not in disregard of this Agreement. Landlord and Tenant shall indemnify and hold Cole Schotz P.C. harmless from and against all liabilities (including reasonable attorneys' fees, expenses and disbursements) incurred in connection with the performance of Cole Schotz P.C. duties hereunder, except with respect to actions or omissions taken or made by Cole Schotz P.C. in bad faith, in disregard of this Agreement or involving negligence on the part of Cole Schotz P.C.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**TENANT:**

**LANDLORD:**

**BED BATH & BEYOND INC.,**
a New York Corporation

DocuSigned by:

By: _Wade Haddad_
39C24848 1AAD429

Name: Wade Haddad

Title: SVP Real Estate and Construction

**PRW URBAN RENEWAL 1, LLC**
a New Jersey limited liability company,
an urban renewal entity

By: Authorized Person

_____
Scott Gregory, Head of Operations, East Region
of Prologis, Inc., a Maryland corporation

**PROLOGIS USLF NV II LLC**,
a Delaware limited liability company

By: Authorized Person

_____
Megan Creecy-Herman, Head of Operations,
West Region of Prologis, Inc., a Maryland
corporation

**COLE SCHOTZ P.C.**, as to the provisions of
Section 17 only.

By: _____

Name: L. JOHN PARK
Title: MEMBER.

65548/0002-45416886v6

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

| TENANT: | LANDLORD: |
|---|---|

**BED BATH & BEYOND INC.,**
a New York Corporation

By: _____

Name: _____

Title: _____

**PRW URBAN RENEWAL 1, LLC**
a New Jersey limited liability company,
an urban renewal entity

By: Authorized Person

_____
Scott Gregory, Head of Operations, East Region
of Prologis, Inc., a Maryland corporation

**PROLOGIS USLF NV II LLC,**
a Delaware limited liability company

By: Authorized Person

_____
Megan Creecy-Herman, Head of Operations,
West Region of Prologis, Inc., a Maryland
corporation

**COLE SCHOTZ P.C.,** as to the provisions of
Section 17 only.

By: _____
Name: _____
Title: _____

**<u>EXHIBIT A</u>**

**GATS System Change Form**



# GATS Ownership Transfer Request

Please complete all fields applicable to this transfer request. Incomplete requests will be rejected.

| | |
|---|---|
| GATS System Name: | |
| GATS Unit ID: | |
| Current GATS Account Name: | Bed Bath & Beyond |
| GATS Account to be Transferred to: | |
| System Address: | |
| State Certification Number(s): | |

## *Change in System Ownership*

Per the agreement made between the Buyer and Seller, the Buyer is entitled to the following. **Please check off one of the following selections.**

x    **Change in System and REC Ownership** – The buyer purchased the system and is entitled to all the attributes including the renewable energy credit (RECs) located at this address.

**Change in System Ownership only** – The buyer purchased the system but the renewable energy credit (RECs) were not part of this purchase agreement. (Additional documentation may be required as proof)

**Change in REC Ownership only** – A buyer is only entitled to the renewable energy credit (RECs) (Additional documentation may be required as proof)

**Change in Ownership due to death/or trust** (Additional documentation may be required as proof)

DocuSign Envelope ID: FC80E6412-520A-4BB6-A147-DZF2CCDAGF6F

| SELLER | BUYER |
|---|---|
| Name: _____ <br> Bed Bath & Beyond Inc <br> (Printed) | Name: _____ <br> (Printed) |
| Email Address: _____ <br> robert.eckhardt@bedbath.com | Email Address: _____ |
| Phone Number: _____ <br> 908-855-4649 | Phone Number: _____ |
| Signature: _____ | Signature: _____ |
| Date: _____ | Date: _____ |
| Closing Date: _____ | |

I, as the GATS Subscriber, recognize and accept that PJM EIS is relying on the truth, accuracy, and completeness of the certifications herein, attest that all statements are accurate, and recognize and accept that I have a continuing duty to notify PJM EIS if and when the certifications, herein made, cease to be accurate or complete.

GATS Subscriber Name[1]: _____

(Printed)

GATS Subscriber Signature: _____

Date: _____

---

Please email this form to the GATS Administrator.
Email: GATSAdmin@pjm-eis.com

**NOTE:** Form will only be accepted if completed in its entirety and legibly.
**The GATS Administrators reserve the right to request any additional documentation**
**regarding the Transfer Ownership Request**
**All changes will be effective once reviewed by the GATS Administrator.**

---

[1] GATS Subscriber Name refers to the GATS Subscriber that is submitting the form and whose GATS Account that the system should be transferred to.