UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                      .      Case No. 23-13359-VFP
                            .
BED BATH & BEYOND, INC., .         M.L.K. Federal Building
et al.,                     .      50 Walnut Street, 3rd Floor
                            .      Newark, NJ 07102
            Debtors.        .
                            .      May 31, 2023
. . . . . . . . . . . . .   .      2:30 p.m.


TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Taft Associates:        Lasser Hochman, LLC
                            By:  RICHARD M. ZUCKER, ESQ.
                            75 Eisenhower Parkway #102
                            Roseland, NJ  07068

TELEPHONIC APPEARANCES:

For the Debtors:            Kirkland & Ellis LLP
                            By:  EMILY E. GEIER, ESQ.
                                 CHARLES B. STERRETT, ESQ.
                            601 Lexington Avenue
                            New York, NY 10022

                            Kirkland & Ellis LLP
                            By:  JACOB E. BLACK, ESQ.
                            300 North LaSalle
                            Chicago, IL  60654


Audio Operator:             Mariela Primo

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

```
For The Committee of    Pachulski Stang Ziehl & Jones
Unsecured Creditors:    By:  BRADFORD J. SANDLER, ESQ.
                             COLIN R. ROBINSON, ESQ.
                        919 North Market Street, 17th Floor
                        Wilmington, DE  19801

                        Pachulski Stang Ziehl & Jones
                        By:  ROBERT J. FEINSTEIN, ESQ.
                        780 Third Avenue, 34th Floor
                        New York, NY  10017

                        Gibbons, P.C.
                        By:  KYLE P. McEVILLY, ESQ.
                        One Gateway Center
                        Newark, NJ  07102

For the Pre-Petition ABL  Greenberg Traurig, LLP
ABL Administrative Agent:  By:  ALAN J. BRODY, ESQ.
                          500 Campus Drive, Suite 400
                          Florham Park, NJ 07932

                        Davis Polk
                        By:  ADAM L. SHPEEN, ESQ.
                        450 Lexington Avenue
                        New York, NY 10017

For Sixth Street        Duane Morris LLP
Specialty Lending, Inc.: By:  MORRIS S. BAUER, ESQ.
                        1 Riverfront Plaza
                        1037 Raymond Boulevard, Suite 1800
                        Newark, NJ 07102

                        Proskauer Rose
                        By:  DAVID M. HILLMAN, ESQ.
                             CHARLES A. DALE, ESQ.
                             MEGAN R. VOLIN, ESQ.
                             REUVEN C. KLEIN, ESQ.
                        11 Times Square
                        New York, NY 10036

For Hilco Merchant      Troutman Pepper Hamilton Sanders LLP
Resources, LLC and      By:  JESSICA D. MIHAILEVICH, ESQ.
Gordon Brothers Retail  875 Third Avenue
Partners, LLC:          New York, NY  10022
```

- - -

1          THE COURT:  Good afternoon.  It is Wednesday, May

2    31st, 2023.  This is the United States Bankruptcy Court for the

3    District of New Jersey and we are here in the case of Bed Bath

4    & Beyond Inc., et al., Case Number 23-13359.  I have an agenda

5    of the matters that are proceeding today and I will ask that we

6    get appearances and get started with today's proceedings.

7          Starting with the debtors.

8          MS. GEIER:  Good afternoon, Your Honor.  Emily Geier

9    appearing on behalf of the debtors.

10          THE COURT:  Good afternoon.

11          MR. SANDLER:  Good afternoon, Your Honor.  Brad

12   Sandler, Pachulski Stang Ziehl & Jones, along with my

13   colleagues, Robert Feinstein and Colin Robinson on behalf of

14   the Committee.

15          THE COURT:  Good afternoon.

16          MR. McEVILLY:  Good afternoon, Your Honor.  Kyle

17   McEvilly, Gibbons, P.C., proposed special counsel to the

18   Committee.

19          THE COURT:  Okay.

20          MR. BAUER:  Good afternoon, Your Honor.  Mo Bauer,

21   Duane Morris, co-counsel to Sixth Street Specialty Lending.

22   Also on the Zoom call is David Hillman, Chad Dale, Megan Volin

23   and Reuven Klein of the Proskauer firm who is co-counsel to

24   Sixth Street.

25          THE COURT:  Okay, good afternoon.

4

1          Well, if those are the appearances we're going to

2     take for now, we could also -- if someone else wants to appear

3     on a particular matter or application, then maybe they can

4     announce their appearance.

5          MS. MIKHAILEVICH:  Sorry, Your Honor.  I meant to

6     speak up by Jessica Mikhailevich from Troutman Pepper on behalf

7     of Hilco Merchant Resources and Gordon Brothers Retail

8     Partners.

9          THE COURT:  Okay.

10         MR. BRODY:  And, Your Honor, Alan Brody, Greenberg

11    Traurig, on behalf of JPMorgan Chase, the ABL lender.  Also on

12    the phone is my co-counsel from Davis Polk, Adam Shpeen.

13         THE COURT:  Okay.  Good afternoon.

14         MR. STERRETT:  Good afternoon, Your Honor.  Charlie

15    Sterrett of Kirkland & Ellis on behalf of the debtors and I'm

16    here with my colleague, Jacob Black who will also be appearing.

17         THE COURT:  Okay.

18         So, maybe now we'll proceed the way I just suggested

19    and if anyone else wants to appear with respect to a particular

20    matter, we'll go ahead and hear them at the time.

21         But why doesn't the debtor start with its

22    presentations?

23         MS. GEIER:  Fantastic.  Good afternoon, Your Honor.

24    Again, Emily Geier from Kirkland & Ellis on behalf of the

25    debtors.  Thank you for allowing us to appear by Zoom today.

1  Hopefully it didn't cause too many logistical issues on your

2  end.  We will try to do this judiciously throughout.

3          But I just wanted to give you a brief update on the

4  case progress before we jump into the agenda.  As Your Honor is

5  aware, we have our final DIP hearing scheduled for next week on

6  June 6th.  The debtors and the parties including the DIP

7  lenders and the Committee have made significant progress I'd

8  say in working to settle those outstanding DIP issues so

9  fingers crossed, we hope to have a fully-consensual hearing for

10 Your Honor next week which we believe will pave the way for a

11 consensual plan process, as well.  We expect to turn to getting

12 a plan on file in short order right after DIP approval.  My

13 colleague will be presenting the bar date motion today and

14 that's the first step in getting all of that squared away in a

15 very short time frame that we have.

16         On the sale process side, we provide an update that

17 the debtors are actively engaged with a number of interested

18 parties.  The deadline to designate a stalking horse bidder is

19 currently set for tomorrow, June 1st, but there is a chance

20 that we may come back to Your Honor with a modest extension of

21 certain of the dates to allow time for additional negotiations

22 if necessary if we decide that that makes sense.  The sale

23 hearing is then currently set for June 21.

24         So, that is all I have in the way of update, Your

25 Honor.  I am happy to answer any questions you may have.

1  Otherwise, I will turn it over to my colleague, Mr. Sterrett.

2          THE COURT:  Well, I do have just a couple of --

3          MS. GEIER:  Sure.

4          THE COURT:  -- small questions.  One is you're

5  talking about the stalking horse deadline for tomorrow that you

6  might ask for an extension.  So, does that mean at the moment

7  there are no stalking horse bidders?

8          MS. GEIER:  We are engaged with discussions with a

9  number of interested parties for the potential stalking horse

10 role.  This is really if we deem necessary for additional time

11 to get the documents all squared away and set, make sure that

12 we had the necessary time to make sure that we get the most

13 value that we want out of this process, so it's really that

14 question that will determine whether we proceed with that

15 extension or not.

16         THE COURT:  Okay.  All right, and then how about

17 generally just the other aspect of it, you know, the sale of

18 assets and going out of business sales and the like, how is

19 that going?

20         MS. GEIER:  Yes, Your Honor.  The store closing

21 process has been proceeding as expected generally.  There was

22 -- it's been sort of a quick up tick.  There was a lot of

23 activity when we first filed.  That activity has, you know,

24 remained sustained and has been proceeding sort of not exactly

25 the time frame that we would expect and hope to see just to

1  make sure that we are dual tracking that process, as well.  As

2  part of the sale process there's also interested parties and

3  various individual assets and the like so we are sort of dual

4  quadruple tracking all of those at the same time.

5          THE COURT:  Right.  Okay.  So, generally, according

6  to plan, is that a fair summary?

7          MS. GEIER:  Yes, Your Honor, absolutely.

8          THE COURT:  All right.  Okay, those were my initial

9  questions.  And why don't we proceed with the agenda?

10          MS. GEIER:  Okay, fantastic.  I'll turn it over to my

11  colleague, Mr. Sterrett for the agenda.

12          MR. SANDLER:  Your Honor, before we begin may I be

13  heard very briefly, for more than anything, some late-breaking

14  news?

15          THE COURT:  Hello?

16          MR. SANDLER:  Your Honor?

17          THE COURT:  I see you and I hear you, but it seems

18  like you're not connected somehow.

19          MR. SANDLER:  Okay, let's see if this works.  Can you

20  hear me now?

21          THE COURT:  Yes, I hear you and see you fine.

22          MR. SANDLER:  Okay, fantastic.  For the record, Your

23  Honor, Brad Sandler, Pachulski Stang Ziehl & Jones, and I

24  appreciate certainly what Ms. Geier said.  Just to -- you know,

25  we're kind of new to this party representing the Committee, the

1   seven-member Committee Your Honor, was formed I guess about

2   three weeks ago or so, maybe a little bit more than that

3   selected Pachulski as its counsel, thereafter selected A&M as

4   his financial advisor.  And the Committee members have lost

5   well over a billion dollars in these cases so needless to say,

6   yes, there's a lot at stake here.

7          Appreciating that these cases ended up in bankruptcy

8   after a long, very highly public, windy and, you know, arguably

9   questionable path, the Committee once it got up to speed began

10  engaging with the debtors and the lenders with most of the

11  engaged being the (indiscernible) lenders predominantly because

12  of, you know, the Committee was cognizant of the Court's ruling

13  at the first day hearing regarding the roll up and whatnot.

14  All of that engagement paid off as none of the operational

15  motions today are contested by the Committee.  So to Ms.

16  Geier's point, there's been a lot of work done behind the

17  scenes.

18          As to the DIP, the Committee saw a lot of issues with

19  the interim DIP order and decided to pursue really a dual track

20  approach, one that would lead to a fully contested DIP hearing,

21  in fact, we have depositions scheduled over the next few days,

22  the other one that would lead to an amicable resolution, at

23  least with the DIP lenders.

24          The last few weeks there have been substantial

25  discussions, in particular, as I said, with the FILO lenders,

1 some of which were very intense, extremely intense as you can

2 imagine, but I'm pleased to report to Your Honor that the

3 Committee and the FILO lenders as of today have reached a case

4 settlement in principal between them.  We will, of course,

5 provide the terms of the settlement to the other parties and

6 while there's wood to chop to document the settlement, the

7 settlement will unite the entire capital structure.  It should

8 minimize friction cost within the capital structure and,

9 frankly, maximize value to the economic stakeholders.

10          So, I do want to give thanks to Messrs. Hillman and

11 Dale for their continual professionalism throughout our

12 negotiations and their efforts in getting us to this point.

13 And with that positive news, Your Honor, I will pause to see if

14 you have any questions.  Otherwise, when we see you at the

15 final DIP hearing, we'll go through the specifics with you.

16          THE COURT:  Mr. Sandler, I certainly appreciate that

17 there is considerable, substantial effort that is going into

18 presenting all these agreed-upon orders to me, especially now

19 that you're speaking about the DIP order and that you have an

20 agreement in principal on that.  I recognize fully how

21 difficult that must be and how hard people are working to get

22 to those points and it is greatly appreciated.

23          More than that, it seems necessary in this kind of

24 fast-paced proceeding and the way the whole process started,

25 everything had to happen very, very quickly.  And if you get

10

1  involved in extended litigation, that usually slows things down

2  quite a bit.  So, on every level I appreciate those efforts,

3  and I'm sure -- I'm certain that they will continue in good

4  faith among all the parties, I have no doubt.  And as I say,

5  the proof is in the pudding because up to now all these orders

6  have been presented without objection or in consent and I know

7  that that's not easy so much appreciated all the way around.

8         MR. SANDLER:  Thank you, Your Honor.

9         MR. STERRETT:  With that, Your Honor, Charlie

10  Sterrett of Kirkland & Ellis on behalf of the debtor, I'll

11  launch into the agenda here.  I saw Emily went off, muted.

12  I'll go ahead and get started, okay.  Well, we'll keep the good

13  news rolling here with what should be, you know, an agenda full

14  of agreement and negotiated language that resolved all the

15  formal and informal objections received by the debtors as to

16  the motions before the Court today.

17         So, I'll proceed first with an overview of the agenda

18  and then take a handful of motions before ceding the podium to

19  my colleague, Jacob Black.  So, first off will be the final

20  order on the store closing motion which was filed over a month

21  ago now.  I'll then turn the podium over to Jacob Black for the

22  bar date motion and two of our lease termination motions to be

23  heard today and then I'll bring us home with the balance of the

24  agenda, the remaining first day motions all of which will be

25  heard on an uncontested basis today.

1          Launching into the store closing motion, we filed a

2    revised form of final order at Docket Number 576 yesterday.

3    This reflects language that was agreed to by the parties

4    resolving a litany of formal and informal objections from

5    landlords, the Committee, taxing authorities and the relief

6    contained in the final order on the store closing motion

7    largely follows that granted by this Court in the interim order

8    back in April and set forth in the motion.  Unless Your Honor

9    has any questions specific to the store closing final order,

10   then we respectfully request your entry of that order.

11          THE COURT:  Well, there is one question I have.

12          MR. STERRETT:  Okay.

13          THE COURT:  And Mr. Sandler maybe should be involved

14   in this as well is that on Page 7, Paragraph 7 it says on the

15   third line provided, however, the debtor shall provide the

16   Official Committee of Unsecured Creditors the Committee with

17   two business days' notice to object to any modification,

18   amendment, supplement to the consulting agreements.  Then the

19   next sentence starts should the Committee fail to object in a

20   reasonable time.  So, my only question -- and I'm asking this

21   out of -- just for clarity and to avoid any possible question

22   mark, is the two days' business notice equal to the reasonable

23   time?

24          MR. STERRETT:  Yes, Your Honor, that's our

25   understanding of that provision.

1          THE COURT:  Okay.  All right.

2          MR. SANDLER:  And, Your Honor, I will defer to my

3  colleague Colin Robinson who worked on this motion.

4          MR. ROBINSON:  Good afternoon, Your Honor.  Colin

5  Robinson, Pachulski, Stang, Ziehl & Jones, on behalf of the

6  Official Committee of Unsecured Creditors.

7          Your Honor, the two days works both ways so yes, the

8  two days, business days, and then reasonable notice would be

9  two business days.

10         THE COURT:  Okay.  I was just wondering why it said

11 two days in one sentence, and then reasonable time in another.

12 Just being a lawyer you wonder whether that might mean two

13 different things, but I guess it doesn't.

14         MR. ROBINSON:  No, Your Honor.  As we have since the

15 beginning of the case with the debtor and other professionals

16 involved, if we give notice to something, we're pretty quick on

17 our turnaround so two business days will be fine.

18         THE COURT:  All right.  You know, now that Mr.

19 Robinson has spoken, I just want to disclose for the record

20 that Mr. Robinson and I worked together maybe at least 15 years

21 ago and haven't really worked together since and he's appeared

22 before this Court in other matters but I just always disclose

23 that.  I don't think it's anything other than a disclosure

24 issue but I just wanted to let everyone know.

25         MR. ROBINSON:  Thank you, Your Honor.

1          THE COURT:  Okay.  All right.  Well, that was my

2  question and it's in more than one place but I think now

3  reasonable time means what it says right before it.

4          MR. STERRETT:  That's right, Your Honor.

5          THE COURT:  All right.

6          MR. STERRETT:  The language reflects the

7  conversations Colin and I had over the past several weeks and

8  we've become acquainted and, you know, arm's length

9  negotiations on all the language in these orders.

10          THE COURT:  All right, so with all that and as I just

11  said and as the parties alluded to, with all the effort that

12  has gone into presenting this order and the fact that it has

13  been proceeding according to what I've heard, proceeding

14  according to plan, I have no issue at all approving this as a

15  final order.  Okay?

16          MR. STERRETT:  Thank you, Your Honor.

17          THE COURT:  Thank you.

18          MR. STERRETT:  I'm going to next cede the podium to

19  my colleague, Jacob Black, who will take us through the bar

20  date motion and the two lease termination motions before the

21  Court today.  I'll return to take us through the balance of

22  first day motions that remain which includes taxes, lien

23  claimants and NOL, so I'll be back, but I'm ceding to Jacob

24  Black.

25          THE COURT:  All right.  I'm glad to hear it.

1          MR. STERRETT:  Thank you.

2          THE COURT:  All right.

3          MR. BLACK:  Good afternoon, Your Honor.  Jacob Black

4  with Kirkland & Ellis on behalf of the debtors.

5          THE COURT:  Good afternoon.

6          MR. BLACK:  I'll be proceeding with Items 2 through 4

7  on the agenda as Mr. Sterrett said.  Agenda Item Number 2 is

8  the bar date motion filed at Docket Number 295.  The debtors

9  have received no formal objections to the bar date motion and

10  I've worked through various informal comments with parties

11  including the United States Trustee, the Unsecured Creditors

12  Committee, landlords and DIP lenders.  The revised form of

13  agreed-upon order reflecting the informal comments was filed

14  last night at Docket Number 569.

15          Rather than get into the specifics of the bar dates,

16  Your Honor, I'll represent that bar date orders are routinely

17  granted by this Court and are required by Section 502 of the

18  Bankruptcy Code.  Unless Your Honor has any specific questions

19  on the proposed bar dates or other parties would like to

20  comment, we respectfully request entry of the revised order as

21  filed.

22          THE COURT:  All right, I do have a couple of small

23  similar kind of questions.  For example, on Page 8, Paragraph

24  C, claimants submitting the proof of claims through non-

25  electronic means who wish to receive a proof of receipt of the

1  proof of claims must also include with their proof of claim a

2  copy of their proof of claim in a self-addressed, stamped

3  envelope.  So, just a couple of things on that, and they're

4  really just details.  The parties that electronically transmit,

5  they would get a receipt automatically?  Is that how it works?

6        MR. BLACK:  My understanding is that if they submit

7  it electronically, then yeah, that's automatic.

8        THE COURT:  All right, because, you know, I thought

9  it would be people that submit electronically would also want

10 to have proof or acknowledgment of receipt just like people who

11 file by conventional means.  And then I didn't quite see in the

12 order but I believe it's in the notice, the order doesn't

13 really say where you would file by conventional means but

14 that's in the notice of the bar date and that's basically it.

15       MR. BLACK:  That's correct, Your Honor.

16       THE COURT:  All right.  I thought I tagged it and

17 then -- okay, here it is, Paragraph 12.  It says the debtor

18 shall cause the bar date notice and proof of claim forms to be

19 served within two business days of entry of this bar date order

20 by e-mail or first class mail as applicable.  And I wasn't sure

21 how as applicable, what that actually meant is what I'm saying.

22       MR. BLACK:  If we don't have an e-mail address, then

23 we would use the physical mailing address but to save costs, we

24 prefer to use the e-mail address wherever we have one.

25       THE COURT:  So, some people might only get it by

1  e-mail?

2        MR. BLACK:  That's correct, Your Honor.

3        THE COURT:  Okay.  Did those people acknowledge their

4  willingness to accept something that significant and official

5  by e-mail?

6        MR. BLACK:  No, Your Honor.  It's my understanding

7  that this is mostly to save costs for the estate as we're

8  looking at a wind down.

9        THE COURT:  Okay.  All right, I'm going to ask if the

10  Creditors Committee, I guess you don't have any issue with it

11  because you indicated consent to this.  I don't know if that

12  would be Mr. Robinson or Mr. Sandler.

13        MR. ROBINSON:  Your Honor, Colin Robinson again for

14  the Committee.  No, the Committee is okay with that provision,

15  Your Honor.  I've seen that traditionally in the last few years

16  in larger cases like this, especially liquidating cases where

17  you have thousands upon thousands of creditors and there's

18  pretty extensive e-mail lists and so we have no issue with

19  that.

20        THE COURT:  Okay.  All right, well, if the Creditors

21  Committee is okay with that for their constituents, then I'm

22  okay with it and I don't have any other comments to the order,

23  Mr. Black.

24        MR. BLACK:  Thank you, Your Honor.

25        THE COURT:  Anyone else wish to comment or be heard?

1          (No audible response)

2          THE COURT:  All right, like the prior orders, this

3  has obviously been vetted through the Committee and other

4  parties-in-interest and everyone is okay with it and I looked

5  at it myself.  I had a couple of small comments as I indicated,

6  but with that understanding, I'm good with this order, as well.

7          MR. BLACK:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          MR. BLACK:  I'll move on to Agenda Item Number 3

10  which is the Taft rejection and termination motion which was

11  filed at Docket Number 306.  This motion seeks authorization

12  for the rejection and termination of a lease which I'll refer

13  to today as the Taft lease governing premises in a shopping

14  center located at 11 Taft Road, Totowa, New Jersey.

15          And the motion also seeks authorization for the

16  debtors and the landlord to enter into the lease termination

17  agreement attached as Exhibit 1 to the proposed order by which

18  the debtor shall reject and terminate the lease in exchange

19  for, among other things, a payment by the landlord to the

20  tenant of $3 million of release of all claims held by the

21  landlord against the debtors and a release of the tenant's

22  claims against the landlord.

23          And, finally, the debtors transfer to the landlord of

24  certain solar facilities and equipment located on the premises.

25  The debtors aren't aware of any objections to this motion and

18

1  believe that the lease termination agreement including the sale

2  terms are supported by sound business reasons.

3        If Your Honor has no questions, the debtors request

4  entry of an order authorizing the relief requested with one

5  change from the as filed order which the debtors will make in a

6  revised order shortly after this hearing.  That change will

7  correct the lease counter party from Robert A. Wilson to Taft

8  Associates which is down at the last page of Exhibit 1 to the

9  proposed order, Page 16 of 16.

10        THE COURT:  Okay, but you'll be submitting a revised

11  order on that?

12        MR. BLACK:  Yes, shortly after this hearing.

13        THE COURT:  All right.  Well, counsel here in court

14  has risen and come to the podium so please identify yourself

15  and who you represent.

16        MR. ZUCKER:  Thank you, your Honor.  May it please

17  the Court?  Richard Zucker from the firm of Lasser Hochman,

18  LLC, representing Taft Associates.

19        We have no objection to the entry of the revised

20  order.  There were a couple of things I want to just put on the

21  record and that is that the attachment to the lease termination

22  agreement, Exhibit A, is going to be revised and I think that

23  was just dealt with.

24        Secondly, there needs to be a bill of sale that needs

25  to be signed by both Bed Bath & Beyond and by Harmon Stores.

19

1   And the form of that document, as I understand it, has been

2   agreed upon by the parties.  It has not yet been signed,

3   however, at least to our knowledge, by either debtor, Bed Bath

4   & Beyond, or Harmon Stores.

5           And the last item relates to the SREC and Solar Asset

6   Management agreement which needs to be signed by Mr. Ekert

7   (phonetic) who is a consultant to the debtors and that needs to

8   be signed on behalf of Sun Performance, LLC.  And, again, the

9   form of that agreement has been agreed upon between counsel for

10  the debtors and Taft Associates.

11          THE COURT:  Okay, Mr. Black, do you have any comment

12  or --

13          MR. BLACK:  That all sounds correct to me.

14          THE COURT:  Okay, thank you.

15          MR. ZUCKER:  Thank you, Your Honor.

16          THE COURT:  Thank you, Mr. Zucker.

17          MR. ZUCKER:  I appreciate it.

18          THE COURT:  All right.

19          So, again, based on not just the consent of the

20  parties but also the terms that are proposed and substantial

21  funds that will be paid to the estate, the releases and rent

22  relief, it certainly seems like an appropriate exercise of the

23  debtors' business judgment, and I will approve the lease

24  termination agreement.

25          UNIDENTIFIED SPEAKER:  Thank you, Judge.

1          MR. BLACK:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. BLACK:  I'll move on to Agenda Item Number 4

4    which is the debtors' Beverly Hills lease termination motion

5    filed at Docket Number 429.  The Beverly Hills lease rejection

6    motion seeks entry of an order that authorizes the rejection

7    and termination of a lease governing the premises in a shopping

8    center located at 31535 Southfield Road, Beverly Hills,

9    Michigan.  I'll refer to this lease today as the Beverly Hills

10   lease.

11         That motion also seeks approval of the lease

12   termination agreement which was not attached to the motion as

13   filed but was subsequently filed at Docket Number 447 by which

14   the debtors agree that upon the termination date which is July

15   31st the Beverly Hills lease shall be deemed rejected and

16   terminated in exchange for, among other things, the landlord's

17   termination payment to the debtors of 170,000 subject to offset

18   of June and July rent and estimated taxes and the mutual

19   release of claims between the tenant, Bed Bath & Beyond Inc.

20   and the landlord, 31535 Southfield Road, LLC.

21         The debtors believe that entry into this lease is

22   supported by sound business reasons including the receipt of

23   the termination payment and the mutual releases which resolve

24   the dispute over whether the lease was terminated pre-petition.

25         If Your Honor has no further questions, the debtors

1  request entry of an order authorizing the relief requested with

2  one caveat which is that the debtors are going to file a

3  revised order attaching to execute a lease termination

4  agreement shortly after this hearing.

5          THE COURT:  Okay, does anyone else wish to be heard

6  on this application?

7          MR. ROBINSON:  Your Honor, it's Colin Robinson again

8  for the Committee and this statement really applies to, this

9  one and the last one, the Committee along with the Committee's

10 professionals were able to work with the debtors'

11 professionals, Jones Lang LaSalle, ANG to get information on

12 both lease terminations and found both economics of both deals

13 because I know you've already approved the one but we did find

14 the economics quite acceptable.  And same goes for this one,

15 Your Honor, the Beverly Hills property in Michigan and the

16 Committee had no issue with both terminations.

17         THE COURT:  Okay, appreciate that and really, for

18 those reasons I find also that this is an appropriate exercise

19 of the debtors' business judgment and sound business reasons to

20 do it and so I'll approve this lease termination as well.

21         MR. BLACK:  Thank you, Your Honor.

22         THE COURT:  Thank you, Mr. Black.

23         UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

24         MR. BLACK:  I'll now turn the podium over to my

25 colleague, Mr. Sterrett, who will address the remainder of

22

1  today's agenda.

2          THE COURT:  Okay.

3          MR. STERRETT:  Good afternoon, Your Honor.  Charlie

4  Sterrett again of Kirkland & Ellis on behalf of the debtor.

5  I'm back.  So,, the remainder of the agenda consists of first

6  day motions, final orders similar to what we began with final

7  orders on taxes, lien claimants and NOL.  These reflect

8  comments from the Committee and other parties-in-interest but

9  predominantly Committee comments in line with those that we

10  pulled out from the store closing order and looked at it so,

11  you know, notice rights, reporting obligations and updating

12  notice information for the Committee in each of these orders.

13  We filed revised forms over the last few days so taking them in

14  turn.

15          With respect for the taxes order, the final relief

16  largely tracks that which was set forth in the interim order

17  approved by this Court in April.  We filed the revised form on

18  Friday at Docket Number 457 reflecting the Committee's comments

19  and the slight, you know, modification to the definition of

20  taxes to ensure that the debtors have the relief necessary as

21  requested under the taxes motion going forward without having

22  to return to court.  So, unless Your Honor has any questions

23  with respect to the final taxes order, we respectfully request

24  your entry of that order.

25          THE COURT:  All right.  Well, this one, you know,

23

1 actually, this one applies to both the taxes and the lien order

2 and in both of them in Paragraph 2 in both of them it says that

3 you have to provide notice to the Committee prior to making any

4 payment three business days' notice as to the taxes and fees

5 and then as to the liens it's two business days' notice of any

6 amount in excess of 100,000 and in both cases it says in the

7 event there's an objection, no disputed payment may be made

8 until the Committee's objection is resolved.

9        And I'm just wondering whether in that instance -- I

10 mean I don't know what the -- it looks like it's big numbers.

11 Does this contemplate that if the number is 200,000 or 250,000

12 of which 100,000 may be paid is not disputed but 150 is

13 disputed, that the 100,000 can be paid or is it just that

14 nothing can be paid until the dispute is resolved?

15        MR. ROBINSON:  Your Honor, I'll jump in there.  Colin

16 Robinson for the Committee.  I think, Your Honor, until the

17 dispute overall is resolved, we would have no amount paid.

18 That being said, Your Honor, I think we'd be reasonable and

19 practical and take it on a case-by-case basis if we could work

20 out a resolution with the debtors the payment where a portion

21 should be paid, we'll consent and tell the debtor that.  But

22 until we get a resolution to that effect, we would seek to have

23 the whole payment withheld.

24        THE COURT:  All right.  Well, of course I'm saying it

25 because taxes and liens tend to accrue interest at high rates

24

1  and, you know, I think to the extent you can avoid some of

2  those, even a portion of them is probably not a bad idea.  But,

3  again, I'm sure that, you know, as is evidenced by the

4  presentation of all these agreed-upon orders, that the parties

5  will work together to come to a reasonable resolution.  And I

6  think that representation is and should be enough unless

7  someone else has a comment or an issue with that.

8                    (No audible response)

9          THE COURT:  Okay, as I say, I reviewed these motions

10 and I did jump ahead a little bit and went to the lien motion

11 as well and I do recognize, as I said before, the effort that

12 has gone into getting to this point and they certainly look

13 like well-negotiated, reasonable resolutions of all these

14 issues.  So, unless somebody has anything else, I'm prepared to

15 approve both of those orders regarding payment of taxes and

16 fees and liens.

17          MR. ROBINSON:  Thank you, Your Honor.

18          THE COURT:  Thank you.

19          MR. STERRETT:  Thank you, Your Honor.  That brings us

20 to the last item for today which is the final order on the NOL

21 motion, the net operating loss motion.  This one reflects the

22 least substantive comments of the bunch today and that includes

23 just updating the notice information.

24          So, the debtors' professionals were engaged with

25 Committee professionals to determine whether more significant

1 changes were necessary in this motion, excuse me, in the final

2 order on this motion and determined that in the meantime at

3 this point no further large, sweeping changes were necessary

4 and can be sought through separate motion if necessary so that

5 was the reasoning on the delay behind the NOL order.  And a

6 final agreed form of order on this motion was submitted to the

7 Court on Monday at Docket Number 490.

8          THE COURT:  All right, does anyone else wish to be

9 heard on this motion?

10                    (No audible response)

11          THE COURT:  Okay, I've reviewed this one, as well,

12 and you'll be happy that I don't have any questions on this one

13 at all but I do appreciate the significance of this.  There's a

14 lot of, in addition to creditors including bond holders and

15 shareholders who are very interested in this case and, you

16 know, notice and opportunity to be heard is very important to

17 all of them and I think this motion, as well as the other

18 motions we've approved accomplish that.

19          And, again, I want to thank everyone involved, the

20 debtor, the Committee, the lenders, the ad hoc Bondholders

21 Committee, all parties involved, the government agencies

22 involved for the collaborative and cooperative effort that has

23 been evident in this case throughout and really, it's to my

24 benefit, but that's a small part of it.

25          I think it's of tremendous benefit to the entire

1   process and that's who is going to end up being -- hopefully

2   getting a better result and a better return is as a result of

3   all these procedures and orders that are being put into place

4   in sales that will allow the debtor to maximize the value.  And

5   as Ms. Geier said at the beginning, I guess with a quick plan

6   process, that also saves a lot of time and money.  So, again,

7   thanks very much to all.

8         And I was informed just before coming out that

9   there's another order shortening time requested regarding the

10  lease termination and I will get to that as soon as I get back

11  to chambers.  You know, I usually don't have a problem signing

12  those because I assume and I think I correctly assume not only

13  did the landlord and the debtor agree, but also the Creditors

14  Committee signed off and probably the banks and everyone else

15  so I think shortening the notice on those is not a big issue at

16  all.

17        All right, unless there's anyone else that wishes to

18  be heard, I think that covers things for today and we're back

19  in about a week.

20        MR. STERRETT:  That's all that remains on the

21  debtors' agenda.  That's right.

22        THE COURT:  Thanks very much.  We'll see you on June

23  6th.

24        ALL ATTORNEYS:  Thank you, Your Honor.

25        THE COURT:  Thank you.  I appreciate it.  Bye-bye.

1          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

2          THE COURT:  Have a good afternoon.

3                        *  *  *  *  *

4                  **C E R T I F I C A T I O N**

5          I, MARY POLITO, court-approved transcriber, certify

6   that the foregoing is a correct transcript from the official

7   electronic sound recording of the proceedings in the

8   above-entitled matter, and to the best of my ability.

9

10  /s/ Mary Polito

11  MARY POLITO

12  J&J COURT TRANSCRIBERS, INC.      DATE:  June 6, 2023

13

14

15

16

17

18

19

20

21

22

23

24

25