**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE SALE OF CERTAIN UNEXPIRED**
**LEASES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,**
**AND OTHER INTERESTS; (II) APPROVING ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

Case 23-13359-VFP    Doc 644    Filed 06/07/23    Entered 06/07/23 17:18:17    Desc Main
Document    Page 2 of 34

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for the entry of an order (the "Order"), substantially in the form

attached hereto as **Exhibit A**, (i) authorizing the Debtors to sell certain unexpired leases and

related agreements set forth on Schedule 1 attached to the Order (collectively, the "Leases") free

and clear of liens, claims, encumbrances, and other interests; (ii) approving the assumption and

assignment of the Leases to Burlington Coat Factory Warehouse Corporation and certain of its

affiliates (collectively, "Burlington") pursuant to the terms of the assumption and assignment

agreement attached to the Order as Schedule 2 (the "Assumption and Assignment Agreement");

and (iii) granting related relief.  In support of this Motion, the Debtors state as follows:

## Jurisdiction

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363, and 365

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 6004,

6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules

6004-1 and 9031-1 of the Local Rules of the United States Bankruptcy Court for the District of

New Jersey (the "Local Rules").

2

## Background

4.      The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

5.      The Debtors commenced these chapter 11 cases (these "Chapter 11 Cases") to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

6.      On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 24, 2023, the Court entered an order [Docket No. 75] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  On May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 218].

## The Leases to Be Assumed and Assigned

7.      In connection with the preparation for the filing of these cases, the Debtors, with the assistance of their legal, financial, and real estate advisors, undertook a comprehensive review and store-by-store analysis of their remaining lease portfolio and the performance of each of their

stores. Following this process, the Debtors determined that their brick-and-mortar retail stores cannot efficiently be administered during the pendency of these Chapter 11 Cases. The Debtors' lease portfolio has been, and continues to be, a significant contributing factor to their current financial challenges. To that end, the Court has entered orders, upon the motion of the Debtors, authorizing the Debtors to (i) administer a store closing process[2] and (ii) reject certain unexpired leases burdensome to the Debtors' estates.[3] Pursuant to these orders, the Debtors have initiated the process of shuttering all of their stores across the United States (each, a "Closing Store") and have rejected certain leases to preserve costs related to maintenance of such leases' related stores.

8.    Nevertheless, the Debtors also recognize that certain of their unexpired leases represent significant assets that can inure to the benefit of their estates. For this reason, the Debtors have filed a motion seeking approval of procedures (the "Lease Sale Procedures") to auction and sell certain of their valuable lease assets.[4] In order to maximize the value to their estates, the Debtors, with the assistance of their advisors including A&G Realty Partners, LLC, real estate consultant and advisor to the Debtors ("A&G"), have carefully weighed the benefits of auctioning each lease, comparing the additional costs of maintaining the lease for a few additional months against the expected value to be realized from a sale of such lease. Pursuant to the Lease Rejection

---

[2]    *See Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 102].

[3]    *See Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Effective as of the Rejection Date and (II) Granting Related Relief* [Docket No. 373] (the "Lease Rejection Order").

[4]    *See Debtors' Motion for Entry of an Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 193].

Order, the Debtors are rejecting only those unexpired leases which they believe would not result in a benefit to the estate after an auction process.

9.      The Leases proposed to be sold to Burlington, as set forth in further detail in the Assumption and Assignment Agreement, relate to seven Closing Stores throughout the United States.  The Debtors originally scheduled three such Leases, relating to stores #778, #843, and #1239, for rejection pursuant to the Lease Rejection Order and contemplated rejecting the four other Leases, relating to stores #80, #195, #471, and #3059, since the estimated costs of maintaining and auctioning such Leases outweighed the projected bid at any auction.  However, Burlington, upon seeing the Leases scheduled for rejection, reached out to the Debtors and negotiated with the Debtors and A&G to purchase the Leases for an aggregate purchase price of $1,475,000.

10.      As set more fully on <u>Schedules 1</u> and <u>2</u> to **Exhibit A**, the key provisions of the proposed Lease sales, and the information required by Local Rule 6004-1, are summarized below:

| Local Rule | Provision | Summary Description |
|---|---|---|
| 6004-1(a)(3)(A) | Property to Be Sold | As further identified in the Assumption and Assignment Agreement,[5] the assets being sold are the seven Leases set forth on <u>Schedule 1</u> to **Exhibit A** and all the Debtors' rights thereto. |
| 6004-1(a)(3)(B) | Closing Date | The date of entry of the Order. |
| 6004-1(a)(3)(C) | Purchase Price | $1,475,000 cash. |
| 6004-1(a)(3)(D) | Conditions of Sale | Among other conditions precedent, the following must occur or be true:<br>(a) Receipt of an order from the Court, which, among other things, transfers the Leases free and clear of all licensees, tenants, and/or subtenants, all license and concession agreements for all or any part of the leased premises, all assigned contracts relating to the leased premises, and all liens, claims, and encumbrances;<br>(b) Operations of a typical Burlington store at the leased premises must be permitted; |

---

[5]   For the avoidance of doubt, the Debtors do not seek authority to assume and assign the Leases with respect to store #834 pursuant to this Motion. *See also Debtors' Application in Lieu of Motion in Support of Entry of Stipulation and Consent Order (I) Modifying Lease Rejection Order, (II) Restating Lease, and (III) Approving Assumption and Assignment of Lease*, filed contemporaneously herewith.

| Local Rule | Provision | Summary Description |
|---|---|---|
| | | (c) Burlington must be afforded appropriate time to obtain any required approvals and permits and to perform work and install its prototypical signs necessary to open in the leases premises without having any Leases terminated by landlords for recapture on assignment, closure, sublet, vacancy, or continuous operation; and<br>(d) There must be a current certificate of occupancy for the premises. |
| 6004-1(a)(3)(E) | Deadline for Approval/Closing | The date of entry of the Order. |
| 6004-1(a)(3)(F) | Deposit | N/A |
| 6004-1(a)(3)(G) | 1146(b) Tax Determination | N/A |
| 6004-1(a)(3)(I) | Lease to Assumed and Assigned | The Leases set forth on Schedule 1 to **Exhibit A**. |
| 6004-1(a)(3)(J) | Credit Bidding | N/A |
| 6004-1(a)(3)(K) | Broker's Commission / Sale Agent Fee | N/A.  However, to the extent any fee or commission is due to A&G Realty, the Debtors shall have sole responsibility therefor. |
| 6004-1(b)(1) | Insider Transaction | N/A |
| 6004-1(b)(2) | Agreements with Management / Key Employees | N/A |
| 6004-1(b)(3) | Waiver, Release or Satisfaction of Claims | Burlington waives any contribution claims under section 503 of the Bankruptcy Code related to such Lease sales. |
| 6004-1(b)(4) | Agreement to limit marketing / not solicit competing offers | Except to the extent the Debtors' fiduciary obligations require, the Debtors have agreed to proceed by way of private sale. |
| 6004-1(b)(5) | Interim Agreement with Purchaser | N/A |
| 6004-1(b)(6) | Release of Sale Proceeds | N/A |
| 6004-1(b)(7) | Limitation on Pursuing Avoidance Action Claims | N/A |
| 6004-1(b)(8) | Successor Liability | N/A. |
| 6004-1(b)(9) | Sale of Property Free and Clear of Leasehold Interest, License or Other Right | The Debtors shall transfer the Leases free and clear of all licenses, concession agreements, other tenancies, liens, claims, and encumbrances. |
| 6004-1(b)(10) | 6004(h) and 6006(d) Waivers | In order to meet the closing date deadline required by the Assumption and Assignment Agreement, the Debtors have requested the waiver of any stay imposed by Bankruptcy Rules 6004(h) and 6006(d). |

This transaction is intended to be private; however, the Debtors reserve all rights to accept higher and better offers up until the hearing on the Motion.

11.    Assuming and assigning the Leases to Burlington will provide much needed liquidity to the Debtors and avoid further rent payments and other administrative costs associated with the Leases.   Although the Leases are being sold outside the scope of the Lease Sale Procedures, the Debtors believe that the sale is in the best interest of the Debtors' estates since the Leases were proposed to be rejected otherwise and the sale price of $1,475,000 is no worse than

any other offer projected to be received at an auction.  The transfer of the Leases to Burlington will provide immediate liquidity and eliminate go-forward costs associated with these Closing Stores.

12.    Accordingly, the Debtors seek entry of an order authorizing the Debtors to assume the Leases and assign the rights and obligations under the Leases to Burlington and granting such other and further relief as is just and proper.

<u>**Basis for Relief**</u>

I.    **Assumption and Assignment of the Leases Reflects a Sound Exercise of the Debtors' Business Judgment.**

13.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Further, § 365(f)(2) of the Bankruptcy Code states that the debtor may assign an unexpired lease if such lease is assumed under section 365(a) and "adequate assurance of future performance" is provided by the assignee.  11 U.S.C. § 365(f)(2); *see also In re Midwest Portland Cement Co.*, 174 Fed. Appx. 34, 35 (3d Cir. 2006).

14.    The decision to assume or reject an unexpired lease is a matter within the "business judgment" of the debtor.  *See NLRB v. Bildisco & Bildisco* (*In re Bildisco*), 682 F.2d 72, 79 (3d Cir. 1982); *see also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).  The business judgment standard is satisfied if assumption of an unexpired lease would benefit the estate.  *See In re Farmland Indus., Inc.*, 294 B.R. 903, at 913 (Bankr. W.D. Mo. 2003) (finding that the debtor must show merely that "the action to be taken will benefit the estate").  Indeed, when applying the "business judgment" standard in connection with a decision under section 365 of the Bankruptcy Code, courts show great deference to a debtor's business decisions.  *See e.g.*, *In re Armstrong World Indus.* 348 B.R.

136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or lease is appropriate under section 365(a)."); *In re Troll Commc'ns, LLC*, 385 B.R. 110, 118 (Bankr. D. Del. 2008).

15.     The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").  Thus, if the debtor's business judgment has been exercised reasonably, a court should approve the assumption and assignment of an unexpired lease. *See, e.g.*, *Group of Inst'l Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550-51 (1943).  Here, the Debtors have determined in their business judgment that it is in their best interests to assume and assign the Leases to Burlington.

16.     Assuming and assigning the Leases will benefit the Debtors, their estate, and their creditors, because the Debtors' estates will not carry any ongoing obligations under the Leases.  Additionally, Burlington's offer to buy the Leases has prevented the Debtors from rejecting the Leases and otherwise incurring additional claims or expenses, including rejection damages, that the Debtors' estate would be responsible to pay.  Furthermore, the sale of the Leases will provide the Debtors with much-needed liquidity to continue operating their business in the ordinary course and administering these Chapter 11 Cases.

## II.    Assumption and Assignment of the Leases Satisfies the Bankruptcy Code.

17.     Once a court finds a debtor has exercised its sound business judgment in determining whether to assume an unexpired lease, it must then evaluate whether such assumption

and subsequent assignment meets the requirements under Bankruptcy Code section 365(f)(2).  *See Cinicola v. Scharffenberger*, 248 F.3d 110, 117 (3d. Cir. 2001).

18.     Section 365(f)(2) provides that a debtor can assume an unexpired lease if the debtor assumes such lease under section 365(b) and the assignee provides adequate assurances of future performance.  11 U.S.C. § 365(f)(2)(B); *Cinicola*, 248 F.3d at 117.  Section 365(b)(1)(A) of the Bankruptcy Code provides that a debtor can assume an unexpired lease if the debtor first cures or provides adequate assurance that the assignee will promptly cure, any defaults in the contract. 11 U.S.C. § 365(b)(1)(A); s*ee Cinicola*, 248 F.3d at 119.

19.     Pursuant to section 365(b)(1)(A) of the Bankruptcy Code, the Debtors evaluated the amounts necessary to cure any applicable defaults under the Leases and have proposed to pay such cure amounts to the counterparties to the Leases (collectively, the "Landlords") out of the proceeds received by Debtors at closing.  The cure amounts listed on Schedule 1 to **Exhibit A** accurately reflect the numbers contained in the Debtors' books and records.  In the event that any Landlord timely object to the cure amounts listed (a "Cure Objection"), and the Debtors and the Landlord are unable to resolve such Cure Objection, the Court will resolve the Cure Objection after notice and a hearing.  Once a Cure Objection, if any, has been resolved and a cure amount determined, the Debtors reserve the right to reject such Lease.  Accordingly, the Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code are satisfied.

20.     Further, Burlington will adequately assure the Landlords of future performance under the Leases.  As courts have found no single standard of adequate assurance to be dispositive, the form of adequate assurance instead depends on the facts and circumstances of each case.  *See Winters Nursery v. Color Spot Holdings*, No. 18-1246, 2018 WL 3996938, at *8 (Bankr. D. Del. 2018) (stating that adequate assurance "will fall considerably short of an absolute guarantee of

performance"). A party may demonstrate adequate assurance by showing that it is financially capable of performing under the agreement. *See Cinicola*, 248 F.3d at 117. Here, the Debtors have provided the Landlords evidence of Burlington's adequate assurance of future performance, and, accordingly, the Debtors and Burlington have satisfied those requirements for assumption and assignment as set forth under section 365(f)(2)

**III. The Sale of the Leases Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.**

21.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

22.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Debtors' Lease Assets free and clear of all liens, claims, rights, interests, charges, or encumbrances ("Interests"), except with respect to any Interests that may be assumed liabilities under a successful bidder's (or purchaser's) assignment and assumption agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

23.     Because the Debtors expect that, in addition to potentially satisfying the other requirements set forth in section 363(f) of the Bankruptcy Code, either the holder of the applicable Interest will consent and/or such applicable holder could be compelled in a legal or equitable proceedings to accept a monetary satisfaction of its Interest, approving the sale of the Leases free

and clear of all adverse interests is warranted.  Moreover, the Debtors submit that any such Interests will be adequately protected by either being paid in full at the time of closing by the Debtors, or by having it attach to the net proceeds of the sales, subject to any claims and defenses the Debtors may possess with respect thereto.  The Debtors accordingly request authority to convey the Leases free and clear of all Interests.[6]

### Reservation of Rights

24.    The Debtors reserve their rights to, subject to the terms of the Assumption and Assignment Agreement:  (a) amend Schedule 1 to **Exhibit A** at any time prior to the hearing; (b) adjourn the determination with regard to specific Leases at any time prior to the Court's hearing to consider the relief requested by this Motion; and (c) seek authority to reject any of the Leases prior to entry of an order of the Court approving the assumption and assignment of the Leases.

### Notice

25.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the United States Trustee for the District of New Jersey; (b) the Committee; (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel;

---

[6]    The Debtors do not seek authority to sell any non-Debtor property free and clear pursuant to section 363(f) of the Bankruptcy Code, but rather will assign such interests consistent with their underlying property documents.

(m) Burlington; (n) the Landlords (and their counsel, if known); and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

26.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: June 7, 2023

/s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:        msirota@coleschotz.com
                 wusatine@coleschotz.com
                 fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:        josuha.sussberg@kirkland.com
                 emily.geier@kirkland.com
                 derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE SALE OF CERTAIN UNEXPIRED
LEASES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS; (II) APPROVING ASSUMPTION AND ASSIGNMENT
OF CERTAIN UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

Upon the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) authorizing the Debtors to sell certain unexpired leases set forth on **Schedule 1** attached hereto (the "Leases") free and clear of liens, claims, encumbrances, and other interests; (ii) approving the assumption and assignment of the Leases to Burlington Coat Factory Warehouse Corporation and certain of its affiliates (collectively, "Burlington"); and (iii) granting related relief (the "Motion")[1], all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Debtors are authorized to sell the Leases set forth on **Schedule 1** to Burlington for the aggregate price of $1,475,000, and in accordance with the terms of this Order and the Assumption and Assignment Agreement attached hereto as **Schedule 2**, hereby assume and assign such Leases to the applicable Burlington entity set forth on **Schedule 1** free and clear of any and all licensees, tenants, and/or subtenants, all license and concession agreements for all or any part of the leased premises, all assigned contracts relating to the leased premises, and all liens, claims, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

3.      The Debtors shall pay the applicable cure amounts for the Leases.  Payment of the applicable cure amount by the Debtors, shall constitute the cure of all defaults arising under the Leases that are required to be cured by section 365(b)(1)(A) of the Bankruptcy Code (after giving effect to section 365(b)(2) of the Bankruptcy Code).

4.      Burlington has demonstrated adequate assurance of future performance and has satisfied the requirements set forth in section 365(b)(1)(C) of the Bankruptcy Code with respect to the Leases.  Burlington is a good faith purchaser of the Leases within the meaning of section 363(m) of the Bankruptcy Code.

5.      There shall be no rent accelerations, assignment fees, increases or any other fees charged to Burlington or the Debtors as a result of the assumption and assignment of the Leases.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

6.      Effective as of the date of entry of this Order, the assignment of the Leases by the Debtors to each applicable Burlington entity shall constitute a legal, valid, and effective transfer of such Lease notwithstanding any requirement for approval or consent by any person and vests each applicable Burlington entity with all right, title, and interest of the Debtors in and to such Lease, free and clear of all liens, claims, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

7.      Any provisions in the Leases that prohibit or condition the assignment of such Lease or allow the Landlord of such Lease to terminate, declare a breach or default, recapture, impose any penalty, condition any renewal or extension, or modify any term or condition, as a result of the assignment of such Lease constitute unenforceable anti-assignment provisions and are void and of no force and effect as against the Debtors and Burlington in connection with the assumption and assignment of the Leases.  The Leases shall remain in full force and effect, without existing defaults, subject only to payment by the Debtor of the appropriate cure amount, if any.

8.      Upon payment of the applicable cure amount, each Landlord is hereby barred and permanently enjoined from asserting against the Debtors and Burlington any default, claim, or liability existing, accrued, arising, or relating to the Leases for the period prior to the entry of this Order.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.  The provisions of this Order authorizing the assignment of the Leases shall be self-executing, and neither the Debtors nor Burlington shall be required to execute or file assignments, consents or other instruments in order to effectuate, consummate,

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

and/or implement provisions of this Order. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to effect, consummate, and/or implement the transactions contemplated by this Order. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to effectuate, consummate, and/or implement to the extent necessary the provisions of this Order.

10.     To the extent any Lease contains use restrictions which would otherwise prohibit Burlington from operating at the applicable leased premises in the ordinary course of its business, including any restrictions on the sale of some or all of the items and goods typically sold by Burlington, such use restriction provisions are deemed to be unenforceable anti-assignment provisions pursuant to section 365(f) of the Bankruptcy Code.

11.     Notwithstanding any term of the Leases to the contrary, any extension, renewal option, or other rights contained in any Lease that purports to be personal only to a Debtor or Debtors or to a named entity in such Lease or to be exercisable only by a Debtor or Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the applicable Burlington entity, in accordance with the terms of such Lease. The Debtors have timely exercised any applicable extension or renewal options under the Leases, and the Leases are all in full force and effect. The Debtors have not previously rejected any of the Leases and the Debtors' period to assume or reject the Leases has not otherwise expired.

12.     Burlington's assumption of liabilities under the Leases shall be limited to obligations arising from and after the Closing Date (as defined in the Assumption and Assignment

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

Agreement, attached hereto as **Schedule 2**). With respect to any provision of any Lease providing for calculation of rent based on a percentage of annual sales, for the annual period in which the Closing Date occurs, Burlington shall only be responsible for the prorated portion of percentage rent attributable to the period after the Closing Date calculated on a per diem basis.

13. Notwithstanding any provision of the Leases (including any related reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement (each, an "REA") or any ground or master lease (each, a "Master Lease")) to the contrary, including a covenant of continuous operation or a "go dark" provision, Burlington shall not be required to operate its business from the leased premises for a reasonable period of time after the entry of this Order, in order to perform alterations and remodeling which shall be done in a manner consistent with the terms of the Lease and to replace and modify existing signage to the extent necessary to operate at the premises under as a Burlington store and consistent with its business operations and the terms of the Leases. Notwithstanding any provision of the Leases to the contrary (including any related REA or Master Lease), to the extent any Landlord's consent is required for any such alteration or signage modification, such Landlord's consent thereto shall not be unreasonably withheld, conditioned, or delayed. If such alterations or signage modifications are consistent with Burlington's other locations, such consent shall not be required provided that Burlington complies with applicable law.

14. The Landlords shall cooperate in good faith and use commercially reasonable efforts to execute and deliver, upon the request of Burlington, any instruments, applications, consents, or other documents that may be required by any public or quasi-public authority or other

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

party or entity, for the purpose of obtaining any permits, approvals, or other necessary documents required for alteration, installation of signage, opening, and operating the premises associated with the Leases; *provided* that the Landlords do not incur any out of the ordinary material out-of-pocket costs as a result of such cooperation.

15.     Notwithstanding anything to the contrary in this Order or the Assumption and Assignment Agreement, attached hereto as **Schedule 2**, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant this Order.

16.     Nothing in this Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any Order granted thereunder, and to the extent of any inconsistency between the Order and the terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Encumbrances, and Other Interests; (II) Approving the Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief |

18.    In the event of any inconsistencies between this Order, the Motion, and the Assumption and Assignment Agreement, this Order shall govern.

19.    Notwithstanding Bankruptcy Rules 6004(h) or 6006(d), or any other Bankruptcy Rule or Local Rule, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

20.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

22.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Schedule 1</u>**

**Leases to Be Assumed and Assigned**

## Schedule 1

## Leases to Be Assumed and Assigned

| Store Number | Debtor Entity | Landlord | Landlord Address | Premises Address | Purchaser Entity | Purchase Price | Cure Amount |
|---|---|---|---|---|---|---|---|
| 80 | Bed Bath & Beyond Inc. | DULUTH (GWINNETT) SSR, LLC | C/O RIVERCREST REALTY ASSOCIATES, LLC, 8816 SIX FORKS ROAD, SUITE 201, RALEIGH, NC 27615 | 3675 Satellite Blvd., Duluth, GA, 30096 | Burlington Coat Factory Warehouse Corporation | $225,000 | $22,508 |
| 195 | Bed Bath & Beyond Inc. | Easton Market Limited Liability Company | 3300 Enterprise Parkway , Attn: Senior VP of Leasing, Beachwood, OH, 44122 | 3750 Easton Market, Colum bus, OH, 43219 | Burlington Coat Factory of Texas, Inc. | $225,000 | $0 |
| 471 | Bed Bath & Beyond Inc. | GRAND MESA CENTER, L.L.C. | C/O THF REALTY, INC., 2127 INNERBELT BUSINESS CENTER DRIVE, SUITE 200, ST. LOUIS, MO 63114 | 2464 US Highway 6 & 50, Suite 106, Grand Junction, CO, 81505 | Burlington Coat Factory Warehouse Corporation | $125,000 | $28,375 |
| 778 | Bed Bath & Beyond Inc. | JMCR SHERMAN LLC | 4550 TRAVIS STREET, SUITE 250, DALLAS, TX 75205 | 3710 Town Center Street, Sherm an, TX, 75092 | Burlington Coat Factory of Texas, L.P. | $225,000 | $0 |
| 843 | Bed Bath & Beyond Inc. | MLO GREAT SOUTH BAY LLC | C/O OLSHAN PROPERTIES, 5500 NEW ALBANY ROAD, EAST SUITE 310, NEW ALBANY, OH 43054 | 825 West Montauk Highway , West Babylon, NY, 11704 | Burlington Coat Factory of Texas, Inc. | $225,000 | $162,106 |
| 1239 | Bed Bath & Beyond Inc. | WEATHERFORD DUNHILL LLC | 3100 MONTICELLO, SUITE 300, DALLAS, TX 75205 | 225 Adam s Drive Suite 235, Weatherford, TX, 76086 | Burlington Coat Factory of Texas, L.P. | $225,000 | $0 |
| 3059 | Bed Bath & Beyond Inc. | ML-MJW PORT CHESTER SC OWNER LLC | C/O M & J WILKOW PROPERTIES, LLC, ATTN: MARC WILKOW, PRESIDENT, 20 S. CLARK STREET, STE. 3000, CHICAGO, IL 60603 | 441 Boston Post Road, Port Chester, NY, 10573 | Burlington Coat Factory of Texas, Inc. | $225,000 | $31,300 |

## **Schedule 2**

**Assignment and Assumption Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (the "Agreement"), dated as of **June 2, 2023**, is by and between **BED BATH AND BEYOND INC.**, a New York corporation ("Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on Schedule A (the "Premises") subject to approval by the Court in the Chapter 11 Cases (the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

## AGREEMENT

1. <u>Assignment and Assumption</u>. Effective as of the date the Bankruptcy Court enters an order pursuant to 11 U.S.C. 363(b) approving the assumption and assignment contemplated by this Agreement, and such order becomes final (the "Closing Date"), and upon payment of the Purchase Price as set forth below:

(a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Assets.

(b) Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned Assets.

(c) For the avoidance of doubt and notwithstanding any other provision of this Agreement, Assignee agrees it is responsible, on a prorated basis, for the costs of rent with respect to the Assigned Assets for the rental period from and after the Closing Date (for clarity, this includes the Closing Date). To the extent the Assignor has paid any rent costs with respect to any Premises prior to the Closing Date for the period from and after the Closing Date, Assignee shall reimburse Assignor for such amounts paid within seven (7) days of the later to occur of: (I) the Closing Date; or (II) the date Assignor provides Assignee with documentation reasonably sufficient to establish Assignor's payment

of such rent cost.

2.      <u>Assigned Assets</u>.  The Parties will work together in good faith and with diligent efforts to obtain the issuance of one or more Court Orders for all of the Assigned Assets.

3.      <u>Payment of Purchase Price</u>.  Assignee shall, on the Closing Date, deliver the purchase price for the Assigned Assets in the aggregate amount of **$1,650,000.00** (the "<u>Purchase Price</u>") in immediately available funds wired to the account specified by Assignor.  The Parties acknowledge that if the assumption and assignment of the Assigned Assets (the "<u>Closing</u>") does not occur on the date of the final Court Order the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above.

4.      <u>Assumption of Liabilities</u>.  All defaults or other obligations of the Assignor arising or accruing prior to the Closing Date (including, but not limited to, fees, charges, adjustments, or reconciliations for taxes, insurance, CAM, and other charges, whether billed or unbilled, due or not due (each a "<u>True-Up Charge</u>") regardless of whether such True-Up Charge relates to a period of time prior to the assignment of such Assigned Asset(s), but without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. 365(b)(2)) shall be cured by the Assignor on or before the Closing Date or as soon thereafter as reasonably practicable (or as otherwise agreed with the counterparty to such Assigned Asset), and the Assignee shall have no liability or obligation arising or accruing under the Assigned Assets prior to the Closing Date.  Assignee shall assume all obligations with respect to the Assigned Assets arising from and after the Closing Date.

5.      <u>No Further Liability of Assignor</u>.  From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Assets arising from and after the Closing Date.

6.      <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Assets.

7.      <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Assets; *provided, however*, Assignor warrants and represents:  (a) Assignor is the tenant under all of the Leases; (b) each Lease is in full force and effect; (c) the Leases, as identified in **Schedule A** are complete in listing all documents comprising the Lease(s) and there are no other agreements (written or verbal) which grant any possessory interest in and to any space situated on or in the Premises under the Lease(s) or that otherwise give rights with regard to use of the Premises under the Lease or limit the use of the Premises; and (d) there are no service contracts for any of the Assigned Assets which will bind Assignee after the Closing and Assignor shall terminate any and all service contracts with respect to the Assigned Assets and the Leases prior to Closing or as soon as reasonably practicable thereafter.  Subject to the foregoing representations and warranties, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Assets. If a Premises is not in substantially the same condition as it was on April 21, 2023 and the cost to repair such Premises to its prior commercially operational condition exceeds **twenty-five percent (25%)** of the allocated Purchase Price for the Lease for such Premises previously submitted by Assignee to Assignor, then Assignee shall have the right, in Assignee's sole discretion, to either: (i) remove such Assigned Asset(s) from this transaction if such Premises has not

been restored to its prior commercially operational condition within seven (7) days after such notice is received by the Assignor, and the Assignor and Assignee shall cooperate in good faith to come to an adjustment of the Purchase Price; or (ii) proceed with Closing on such Assigned Asset(s).

8.      Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to principles of conflicts of law.

9.      Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds  of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     No Reliance.  Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

11.     Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.     Execution in Counterparts.  This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered.  No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

*[Signatures appear on following page]*

3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**BED BATH & BEYOND INC**.,
a New York corporation

By: _Wade Haddad_
Name:   Wade Haddad
Title:    SVP, Real Estate & Store Development

**ASSIGNEE:**
**BURLINGTON COAT FACTORY**
**WAREHOUSE CORPORATION**,
a Florida corporation

By:_____
Name:__Michael Shanahan_____
Title:__Senior Vice President, Real Estate_____
Federal I.D. No.:__22-1970303_____

4

DocuSign Envelope ID: 6308DD60-6D18-44D0-8C58-4145C4DEED65

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**BED BATH & BEYOND INC**.,
a New York corporation

By: _____
Name:  Wade Haddad
Title:    SVP, Real Estate & Store Development

**ASSIGNEE:**
**BURLINGTON COAT FACTORY**
**WAREHOUSE CORPORATION**,
a Florida corporation

By: _____
Name:  Michael Shanahan
Title:  Senior Vice President, Real Estate
Federal I.D. No.:  22-1970303

## Schedule A

### Description of Assigned Assets

| Store # | Street | City | State | Zip | Sq Ft | Lease Date | Description of Lease | Burlington Tenant Entity |
|---|---|---|---|---|---|---|---|---|
| 80 | 3675 Satellite Boulevard | Duluth | GA | 30096 | 29,820 | 11/23/07 | • Lease Agreement, dated as of November 23, 2007<br>• Memorandum of Lease dated 11/23/2007<br>• 1st Lease Amendment dated 1/5/2009<br>• 2nd Lease Amendment dated 1/14/2013<br>• Decline Right of First Refusal dated 6/28/2016<br>• 3rd Lease Amendment dated 8/2/2017<br>• Lease Modification dated 6/11/2019 | Burlington Coat Factory Warehouse Corporation, a Florida corporation |
| 195 | 3750 Easton Market | Columbus | OH | 43219 | 40,000 | 4/2/97 | • Lease Agreement, dated as of April 2, 1997<br>• Recorded Memorandum of Lease dated 4/2/1997<br>• Rent Commencement and Expiration Date Agreement dated 8/14/1998<br>• Ulta Consent dated 12/16/2009<br>• Letter Agreement dated 3/29/2010<br>• Nordstrom Rack Consent dated 5/15/2012<br>• Renewal Option dated 7/22/2013<br>• Bass Pro Consent Letter dated 10/1/2015<br>• Kirkland Letter Agreement dated 3/30/2016<br>• TJX Consent dated 6/14/2017<br>• First Amendment to lease dated 7/27/2017<br>• Ross Letter Agreement dated 1/16/2018<br>• Second Amendment to Lease dated 11/16/2018<br>• Cost Plus Letter Agreement dated 2/23/2020<br>• Pick Up Space Agreement dated 1/24/2021<br>• Third Amendment dated 2/22/2021 | Burlington Coat Factory of Texas, Inc., a Florida corporation |
| 471 | 2464 US Highway 6 & 50 Ste 106 | Grand Junction | CO | 81505 | 24,864 | 6/29/01 | • Lease Agreement, dated as of June 29, 2001<br>• Rent Commencement and Expiration Date Agreement, dated as of September 9, 2022<br>• First Amendment to Lease Agreement, dated as of September 11, 2001<br>• Second Amendment to Lease Agreement, dated as of October 31, 2022<br>• Letter dated July 24, 2012, exercising the first renewal Option<br>• Letter dated July 24, 2017, exercising the second Renewal Option | Burlington Coat Factory Warehouse Corporation, a Florida corporation |
| 778 | 3710 Town Center Street | Sherman | TX | 75092 | 18,000 | | • Lease Agreement Dated October 2, 2003<br>• First Amendment to Lease Dated September 15, 2014<br>• Rent Commencement and Expiration Date Agreement dated August 16, 2004<br>• Bath & Body Works Waiver dated May | Burlington Coat Factory of |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 10/2/2003 | • 14, 2018<br>• Amended Memorandum of Lease dated September 15, 2014<br>• Buff City Soap Consent Letter dated September 15, 2022 | Texas, L.P.,<br>a Florida limited partnership |
| 834 | 4646 Lebanon Pike | Hermitage | TN | 37076 | 23,035 | 06/18/04 | • Lease Agreement dated June 18, 2004<br>• Lease Agreement dated 6/18/2004<br>• Recorded Memorandum of Lease dated 6/18/2004<br>• Recorded SNDA dated 6/18/2004<br>• Ross Consent dated 6/23/2004<br>• PetSmart Consent dated 12/14/2004<br>• Rent Commencement and Expiration Agreement dated 2/2/2005<br>• Publix Consent dated 4/2/2008<br>• Picture This Gallery Consent dated 12/17/2008<br>• Physicians Urgent Care Consent dated 8/9/2010<br>• State Farm Consent dated 9/26/2011<br>• Workout Anytime Consent dated 1/28/2013<br>• First Amendment to Lease dated 5/29/2014<br>• Recorded Amended Memorandum of Lease dated 5/29/2014<br>• Recorded SNDA dated 1/25/2017<br>• Dental Practice Consent dated 6/20/2018<br>• Second Amendment to Lease dated 4/19/2018<br>• Second Amendment to memorandum of Lease dated 4/19/2018<br>• Exercise Facility Consent dated 4/30/2019<br>• Farmers Insurance Consent dated 9/9/2019<br>• SNDA dated 8/19/2022 | Burlington Coat Factory Warehouse Corporation, a Florida corporation |
| 843 | 825 West Montauk Highway | West Babylon | NY | 11704 | 29,875 | 10/5/2004 | • Lease Agreement dated October 5, 2004<br>• Rent Commencement and Expiration Agreement dated 6/24/2004<br>• Jo-Ann Stores Waiver dated 7/28/2004<br>• Recorded SNDA Fleet Bank dated 10/5/2004<br>• Recorded Memo of Lease dated 5/9/2005<br>• Tenant Allowance Letter Agreement dated 6/15/2005<br>• Modification and Consent Agreement dated 6/29/2009<br>• Chick fil A Waiver dated 3/7/2018<br>• Bank of America Estoppel dated 1/14/2022 | Burlington Coat Factory of Texas, Inc.,<br>a Florida corporation |
| 1239 | 225 Adams Drive Suite 235 | Weatherford | TX | 76086 | 20,400 | 8/17/2007 | • Lease Agreement dated August 17, 2007<br>• Recorded Memo of Lease dated 8/17/2007<br>• Michaels Letter Agreement dated 7/11/2007<br>• Rent Commencement and Expiration Date Agreement dated 6/24/2008<br>• Delivery Date Notice dated 1/7/2008<br>• Delivery Date Certification dated 4/21/2008<br>• Consent for Landlord's Development of Outparcels dated 9/18/2009<br>• TJ Maxx Waiver Letter dated 9/20/2011<br>• Consent for Landlord's Development of Outparcels dated 6/20/2013 | Burlington Coat Factory of Texas, L.P.,<br>a Florida limited partnership |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | <ul><li>Revised Consent for Landlord's Development of Outparcels dated 6/19/2014</li><li>First Amendment to Lease dated 10/31/2014</li><li>Tuesday Morning Consent dated 2/21/2017</li><li>Recorded Amendment to Memorandum of Lease date 9/7/2018</li><li>Second Amendment dated 9/7/2018</li><li>JC Penney OEA Agreement dated 2/21/2007</li><li>JC Penney OEA Supplemental Agreement dated 2/21/2007</li></ul> | |
| 3059 | 441 Boston Post Road | Port Chester | NY | 10573-4738 | 25,000 | 2/17/2011 | <ul><li>Lease Agreement dated 2/17/2011</li><li>Recorded Memorandum of Lease dated 2/17/2011</li><li>Subtenant Recognition Agreement dated 2/28/2011</li><li>Rent Commencement and Expiration Date Agreement dated 10/20/2011</li><li>Ulta Consent dated 1/9/2012</li><li>Urgent Care Consent dated 1/15/2014</li><li>Ground Lease dated 7/10/1978</li><li>Agreement and Amendment to Lease dated 4/4/1979</li><li>Agreement and Second Amendment to Lease dated 2/1/1980</li><li>Second Lease Amendment dated 8/1/1981</li><li>Letter Agreement dated 12/21/1981</li><li>Letter Agreement dated 2/26/1982</li><li>Lease Amendment dated 4/1/1986</li><li>Seventh Amendment to Lease dated 9/15/1988</li><li>Letter Agreement dated 12/11/1991</li><li>Ninth Amendment to Lease dated 12/15/1998</li><li>Letter Agreement dated 7/26/1999</li><li>Eleventh Amendment to Lease dated 9/29/1999</li><li>Letter Agreement dated 1/6/2006</li><li>Letter Agreement dated 6/14/2006</li><li>Letter Agreement dated 2/27/2007</li></ul> | Burlington Coat Factory of Texas, Inc., a Florida corporation |