UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

---

Order Filed on June 9, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

---

In re:

BED BATH & BEYOND INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

### ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS OF THE LAZARD AGREEMENT, (III) WAIVING CERTAIN TIMEKEEPING REQUIREMENTS, AND (IV) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through ten (10) is ORDERED.

**DATED: June 9, 2023**

_____
Honorable Vincent F. Papalia
United States Bankruptcy Judge

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, (a) authorizing the Debtors to retain and employ Lazard Frères & Co. LLC ("Lazard") as investment banker to the Debtors effective as of the Petition Date, on the terms set forth in the Lazard Agreement attached hereto as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**; (b) approving the terms of the Lazard Agreement; (c) waiving certain timekeeping requirements pursuant to the Bankruptcy Rules, Local Rules, and the Trustee Guidelines; and (d) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the declaration of David S. Kurtz in support of the Application (the "Kurtz Declaration"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

| (Page | 3) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, and the Court having been advised that all formal and informal objections to the Motion have been resolved, **IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Lazard in accordance with the terms and conditions set forth in the Lazard Agreement, as modified herein, effective as of the Petition Date.

3.      Except as set forth herein, the Lazard Agreement, together with all annexes and exhibits thereto and all compensation set forth therein, including, without limitation, the Monthly Fee(s), the Restructuring Fee, the Sale Transaction Fee(s), the Other Sale Transaction Fee(s), the Financing Fee(s), the Work Fee, the expense reimbursement, and indemnification and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and Lazard shall be compensated, reimbursed and indemnified pursuant to section 328(a) of the Bankruptcy

| (Page \| 4) | |
| --- | --- |
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

Code in accordance with the terms of, and at the times specified in, the Engagement Letter and Indemnification Letter and this Order; provided, however: (i) the Restructuring Fee and Sale Transaction Fee set forth in paragraph 20(iii) of the Application shall each be reduced to $12,000,000; (ii) the value of any tax attributes that may be due or become due to the Debtors, including, without limitation, any net operating losses, refunds, and/or credits shall be excluded from the calculation of any fees due to Lazard under Lazard's Fee Structure; and (iii) Lazard shall not earn a fee for a transaction for which the sole purpose is to preserve net operating losses.

4.      No amounts shall be paid to Lazard absent an order of this Court approving an interim or final fee statement or application for the allowance of compensation and reimbursement of expenses filed by Lazard pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures or orders of this Court.  Notwithstanding the foregoing, the Debtors are authorized to pay the Monthly Fee to Lazard each month when required under the Engagement Letter without a prior fee application, *provided*, *however*, pursuant to the deadlines and other procedures set forth in the Administrative Fee Order (ECF No. 377). Lazard shall file monthly fee applications in the format expressly stated below in paragraph 6.

5.      Notwithstanding paragraphs 2 through 4 of this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right to respond or object to Lazard's request for compensation (including the Monthly Fee) and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy

Code, and not section 328(a) of the Bankruptcy Code. This Order and the record relating to this Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Lazard's compensation and expense reimbursement under sections 330 and 331 of the Bankruptcy Code.

6. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Lazard and the structure of Lazard's compensation pursuant to the Engagement Letter, Lazard and its professionals shall be granted a limited waiver of the information-keeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-1, the U.S. Trustee Guidelines, and any otherwise applicable orders or procedures of the Court in connection with the services to be rendered pursuant to the Engagement Letter, such that Lazard shall be required only to maintain time records of its services rendered for the Debtors in half-hour (0.5) increments, and shall be authorized to file interim fee applications and/or final fee applications without previously filing or serving monthly fee statements covering the same period. Such records shall include the services rendered to the Debtors, summary description of those services, and the identity of the professional who provided those services. These records will be presented with Lazard's applications for interim and final compensation.

7. In the event that Lazard seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter during the pendency of these

| (Page \| 6) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

cases, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Lazard's own fee applications, both interim and final, and such invoices and time records shall be subject to any United States Trustee Guidelines and in compliance with the Local Bankruptcy Rules, and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

8.     The Indemnification Provisions set forth in the Indemnification Letter are approved, subject during the pendency of these cases to the following:

a.     Lazard shall not be entitled to indemnification, contribution, or reimbursement set forth in the Indemnification Letter, unless such indemnification, contribution, or reimbursement is approved by the Court as consistent with the terms of the Indemnification Letter;

b.     notwithstanding any provision of the Application and the Indemnification Letter to the contrary, the Debtors shall have no obligation to indemnify any Indemnified Person (as defined in the Indemnification Letter), or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith, fraud or self-dealing to which the Debtors have not consented; (ii) for a contractual dispute in which it is judicially determined (the determination having become final) that such Indemnified Person has breached such Indemnified Person's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible notwithstanding *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith, fraud, or unconsented self-dealing, but determined by this Court, after notice and a hearing, to be a claim or expense for which

6

| | |
|---|---|
| (Page \| 7) | |
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

such Indemnified Person should not receive indemnification, contribution, or reimbursement under the terms of the Indemnification Letter, as modified by this Order;

    c.    if, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing the Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Indemnification Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, and/or reimbursement by any Indemnified Persons, and is not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Persons; and

    d.    any limitations on any amounts to be contributed by Lazard in the case of a judicial determination of an Indemnified Person's gross negligence, willful misconduct, bad faith, fraud, or self-dealing to which the Debtors have not consented shall be eliminated from the Indemnification Letter. The Indemnified Parties shall retain any rights they may have to contribution at common law.

    9.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Lazard uses the services of independent contractors, subcontractors, or employees of affiliates or subsidiaries (collectively, the "Contractors") in these cases, (i) pass through the cost of such Contractors at the same rate that Lazard pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for Lazard; (iv) file with this Court such disclosures required by

| (Page | 8) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

Bankruptcy Rule 2014; and (v) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these cases.

10.    To the extent the Debtors wish to expand the scope of Lazard's services beyond those services set forth in or contemplated by the Engagement Letter or this Order (and as to which additional compensation would otherwise be payable), the Debtors shall file notice of any proposed additional services and any underlying engagement agreement with the Court and serve such notice on the U.S. Trustee, counsel for the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within ten days of the Debtors filing such notice, such additional services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

11.    None of the fees payable to Lazard under the Engagement Letter shall constitute a "bonus" or fee enhancement under applicable law.

12.    The Debtors shall use their best efforts to avoid any duplication of services provided by Lazard and any of the Debtors' other retained professionals in these chapter 11 cases.

13.    Lazard shall not seek reimbursement of any fees or expenses arising from the defense of its fee applications in the above-captioned cases.

14.    To the extent that there may be any inconsistency between the terms of the Application, the Kurtz Declaration, the Lazard Agreement, and this Order, the terms of this Order shall govern.

| (Page | 9) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. Caption of Order: | 23-13359 (VFP) |
| | Order (I) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Lazard Agreement, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

15.     The Debtors and Lazard are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

16.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

17.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

**March Engagement Letter**

# LAZARD

Lazard Frères & Co. LLC
300 N. LaSalle Street
23rd Floor
Chicago, IL 60654
(312) 407-6600

As of March 21, 2023

Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, NJ 07083

Attention:    Sue Gove
              Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Bed Bath & Beyond Inc. ("BBBY") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company") regarding the engagement of Lazard as sole investment banker to the Company in connection with any Financing, Exchange, Sale Transaction, and/or Restructuring (each as defined herein and each a "Transaction", and collectively, the "Transactions") on the terms and conditions set forth herein.  By signing this Agreement, we hereby accept our appointment as investment banker under the terms hereof.

This Agreement supersedes the engagement agreement between Lazard and the Company (the "Prior Engagement Letter") dated January 15, 2023 (except that Lazard shall remain entitled to any accrued fees and expenses pursuant to the Prior Engagement Letter).

*Description of Services:*

1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations and financial projections;

    (b)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

    (c)    Assisting in the determination of a target capital structure for the Company;

DocuSign Envelope ID: BA2B75A3-C008-4FCE-AA35-EDEDF24E3253
Case 23-13359-VFP    Doc 676    Filed 06/09/23    Entered 06/09/23 16:37:46    Desc Main
Document    Page 12 of 33

Page 2

(d)     Assisting in the determination of a range of values for the Company on a going concern basis;

(e)     Assisting in analyzing potential liability management transactions or other capital structure or strategic alternatives, including any Sale Transaction, Restructuring, Exchange and/or Financing;

(f)     Evaluating the financial terms of any proposed Transaction;

(g)     Advising the Company on tactics and strategies for negotiating with the Stakeholders and/or Transaction counterparties;

(h)     Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Transaction;

(i)     Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Transaction;

(j)     Advising and assisting the Company in evaluating any potential Financing, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

(k)     Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Transaction;

(l)     Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

(m)     Attending meetings of the Board of Directors of BBBY (or other Company subsidiary, as required) with respect to matters on which we have been engaged to advise hereunder;

(n)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(o)     Providing the Company with other financial restructuring advice.

Lazard's investment banking services hereunder shall not include serving as a dealer-manager in connection with any Exchange. Any provision of dealer-manager services would be subject to Lazard's agreement to so act and to the execution of a separate agreement between the parties or an amendment to this agreement, in either case containing terms and conditions to be mutually agreed by the parties addressing such services, including an additional dealer-manager fee.

*Fees:*

2.    As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)    A monthly fee of $200,000 (the "Monthly Fee"), payable on the first day of each month beginning April 1, 2023 until the earliest of completion of a Restructuring, completion of a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, or the termination of Lazard's engagement pursuant to Section 10.  One half of the Monthly Fees paid in respect of any months after June 2023 shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable; *provided*, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b)    A fee equal to $15,000,000 payable upon the consummation of any Restructuring (the "Restructuring Fee"); *provided*, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan; *provided*, further, that in the event that Lazard is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and a plan of reorganization is not consummated, Lazard shall return such fee to the Company (less any Monthly Fees that have accrued).

(c)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to $15,000,000.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above (including, for the avoidance of doubt, a sale of substantially only BUY BUY BABY, INC. or its subsidiaries), the Company shall pay Lazard a fee (the "Other Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I hereto; *provided*, *however*, to the extent that the buyer in the Sale Transaction also provided any "debtor-in-possession financing" and it uses all or any portion of such "debtor-in-possession" financing as consideration paid by it in such Sale Transaction (for example, as a "credit bid"), Lazard shall credit 50% of the Financing Fees earned and paid in connection with the "debtor-in-possession" financing that the buyer uses as consideration against the

applicable Other Sale Transaction Fee.

(iii) Any Sale Transaction Fee or Other Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction. One half of any Other Sale Transaction Fees paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable; *provided, however,* that any Other Sale Transaction Fee paid with respect to a Sale Transaction involving the sale of substantially only BUY BUY BABY, INC. or its subsidiaries, shall be fully credited against any Restructuring Fee or Sale Transaction Fee payable.

(d)    A fee, payable upon consummation of a Financing (each, a "Financing Fee"), equal to the applicable percentages of gross principal amounts as follows based on the type of Financing (including, without limitation, any debtor-in-possession or exit financing): (i) 1.0% of any senior secured debt financing, plus (ii) 2.0% of any junior secured, last-out, unsecured, subordinated or FILO debt financing, plus (iii) 3.0% of any equity, equity-linked or equity-stapled or similarly bundled equity financing (including, but not limited to, preferred or common equity, convertible debt, debt bundled or stapled with equity or equity-linked financing, options, warrants, or other rights to acquire interests) ("Equity Offering"), *provided,* however, that with respect to any debtor-in-possession financing involving the "roll-up" of Existing Obligations, the percentage(s) used to calculate the Financing Fee payable on account of the portion(s) of the debtor-in-possession Financing constituting amounts "rolled-up" shall be reduced by one half. To the extent that the type of Financing issued (including any "stapled" or similarly bundled securities) would qualify as more than one of the types of Financings listed above, the highest applicable fee percentage shall apply). For any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the earlier of execution of a commitment letter or a definitive agreement with respect to the Financing; *provided,* that to the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect thereto, Lazard shall return such fee to the Company (less any Monthly Fees that have accrued). One half of any Financing Fees paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable, *provided,* however, that only 25% of any Financing Fees paid in connection with the February 2023 Transaction (as defined below) shall be credited against any Restructuring Fee or Sale Transaction Fee payable. Notwithstanding the fee set forth in Section 2(d)(iii) above with respect to an Equity Offering), it is agreed that (i) the Financing Fee payable with respect to the Equity Offering announced on or about February 6, 2023 (the "February 2023 Transaction") shall be equal to 2% of the equity capital provided in each installment (*i.e.,* $4,737,000 of such Financing Fee will be payable upon the receipt of $236,850,000 of equity capital provided at the initial closing and remaining amounts equal to 2.0% of any subsequent installments will be payable upon the funding of such installments thereafter, in both instances prior to the OID); provided that the maximum

fee to be paid in connection with the February 2023 Transaction shall not exceed $20,000,000. For avoidance of doubt, in the event the Company does not receive any of the monthly funding installments following the initial closing date of the February 2023 Transaction, then Lazard shall not be entitled to receive payment of that portion of the Financing Fee that would otherwise be payable at such future funding date. No Financing Fee will be payable in connection with the $100,000,000 FILO financing provided by Sixth Street Partners in connection with the February 2023 Transaction.

(e)     A fee, payable upon consummation of any Exchange (each, an "Exchange Fee"), equal to 1.0% of the aggregate principal amount of Funded Debt involved in such Exchange.

(f)     For the avoidance of any doubt, and except as otherwise provided above, (i) more than one fee may be payable pursuant to clauses (c)(ii), (d) and (e) above and (ii) both a Financing Fee and an Exchange Fee may be payable with respect to the same transaction. However, notwithstanding anything to the contrary set forth above, to the extent a transaction constitutes both a Restructuring and a Sale Transaction described in subparagraph (c)(i) above, Lazard shall only be entitled to either the Restructuring Fee or the Sale Transaction Fee payable on account of such transaction (and not both).

(g)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable fees and expenses of counsel retained by Lazard. Notwithstanding anything to the contrary set forth in the Original Engagement Letter (as defined below), the Prior Engagement Letter or the DMA (as defined below), the Company agrees to reimburse us for outstanding legal expenses incurred by us in the amount of $488,122.32 upon completion of the funding of the February 2023 Transaction. For the avoidance of doubt, to the extent that the February 2023 Transaction is not ever funded to completion, the Company will not be obligated to reimburse us for the foregoing amount. As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, reimbursement, contribution and other provisions set forth in the indemnification letter between the Company and Lazard dated August 10, 2022, which remains in full force and effect (the "Indemnification Letter"), and such provisions are incorporated herein in their entirety. The Indemnification Letter is attached hereto as Exhibit A.

(h)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

_Retention in Chapter 11 Proceedings_:

DocuSign Envelope ID: DA2B75A2-C008-4ECE-AA35-EDEDF24E3253
Case 23-13359-VFP    Doc 676    Filed 06/09/23    Entered 06/09/23 16:37:46    Desc Main
Document    Page 16 of 33

Page 6

3.  In the event of the commencement of Chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction, Exchange or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Sale Transaction Fee, Other Sale Transaction Fee, Exchange Fee and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

_Other_:

4.  No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5.  The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position. The Company also agrees to use all reasonable efforts to cause any relevant third party to provide us with such information as we deem necessary for our financial review and analysis. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

6.  In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Exchange,

DocuSign Envelope ID: DA2B75A2-C008-4ECE-AA35-EDEDF24E3253
Case 23-13359-VFP    Doc 676    Filed 06/09/23    Entered 06/09/23 16:37:46    Desc Main
Document    Page 17 of 33

Page 7

Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7.  It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of our affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8.  On August 10, 2022, the parties hereto entered into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of our engagement hereunder.

9.  In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six-month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10.  Our engagement hereunder will expire on the earlier of the completion of a Restructuring or a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, and may be earlier terminated by BBBY or us only upon written notice by the Company or us to the other party at any time (and, for the avoidance of doubt, not by any other action, conduct or event), without liability or continuing obligation to the Company or us following any termination or expiration, except that (a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by BBBY or expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Transaction announced or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

11.  Lazard has been retained under this Agreement as an independent contractor to BBBY, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than BBBY. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of BBBY (in their capacities as such) is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of BBBY (in their capacities as such) in evaluating any Transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Transaction. The Company agrees that, notwithstanding any termination or expiration of our engagement, any

DocuSign Envelope ID: DA2B75A2-C008-4ECE-AA35-EDEDF24E3253

advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein (including the Prior Engagement Letter and the engagement letters between the Company and Lazard dated as of August 10, 2022 (the "Original Engagement Letter")); provided, however, that this Agreement does not supersede the Dealer Manager Agreement between the parties dated October 18, 2022 (the "DMA") (and amounts may become payable pursuant thereto following the date hereof) and Lazard remains entitled to the amounts incurred in connection with the Prior Engagement Letter, the Original Engagement Letter and the DMA prior to the date hereof; and, provided, further, that no amounts paid pursuant to the Original Engagement Letter, the Prior Engagement Letter or the DMA will be credited against any amounts payable pursuant to this Agreement. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

*Definitions:*

15. The term "Exchange" shall mean, collectively, any transaction, arrangement, or series of transactions or arrangements involving any Funded Debt which takes the form of an extension of term, reduction, repayment, settlement, prepayment, refinancing, or repurchase of, or other

DocuSign Envelope ID: DA2B75A2-C008-4ECE-AA35-EDEDF24E3253

exchange of cash for, all or a portion of the Funded Debt, a conversion of all or a portion of the Funded Debt to equity, equity-linked, or debt securities, instruments, or obligations, or an exchange of equity, equity-linked, or debt securities, instruments or obligations for all or a portion of the Funded Debt.

16. The term "Funded Debt" shall mean, collectively, (i) the Company's existing "ABL Facility," 2024 Notes, 2034 Notes, and 2044 Notes and (ii) the FILO debt.

17. The term "Financing" shall mean any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, and including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

18. The term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity or other securities; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions. An Exchange shall not in and of itself constitute a Restructuring.

19. The term "Sale Transaction" shall mean any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders pursuant to a Restructuring); (c) any other purchase, acquisition, agreement or commitment to sell, directly or indirectly, by a buyer or buyers (including, without limitation, any liquidator that participates in a sale process) of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party. For purposes hereof, any sale of newly issued securities (including securities held in treasury) shall be deemed a Financing and not a Sale Transaction.

DocuSign Envelope ID: DA2B75A2-C008-4ECE-AA35-EDEDF24E3253
Case 23-13359-VFP    Doc 676    Filed 06/09/23    Entered 06/09/23 16:37:46    Desc Main
Document    Page 20 of 33

Page 10

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

David S. Kurtz
Vice Chairman

AGREED TO AND ACCEPTED
as of the date first written above:

BED BATH & BEYOND INC., on behalf of itself
and its controlled subsidiaries

By._____

Sue Gove
Chief Executive Officer

## SCHEDULE I

The following table outlines the Other Sale Transaction Fee schedule. The total fee shall be equal to the applicable percentage of the Aggregate Consideration set forth below, and for any transaction involving an Aggregate Consideration between the thresholds set forth below, the fee shall be determined by interpolating between the two closest percentages.

| Aggregate Consideration Threshold | Applicable Fee % |
|---|---|
| ($ in millions) | |
| $25 | 2.65% |
| $100 | 2.15% |
| $200 | 1.85% |
| $300 | 1.75% |
| $400 | 1.65% |
| $500 | 1.60% |
| $600 | 1.55% |
| $700 | 1.45% |
| $800 | 1.40% |
| $900 | 1.35% |
| $1,000 | 1.30% |
| $2,000 | 1.25% |
| $3,000 | 1.15% |
| $4,000+ | 1.05% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by a third party. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable.  For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, (ii) in the case of a "credit bid" or other contribution or exchange of Existing Obligations, the value of such Existing Obligations shall be the face value, and (iii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing

price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock.  Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by a third party.  If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## Exhibit 2

**April Amendment**

# LAZARD

Lazard Frères & Co. LLC
300 N. LaSalle Street
23rd Floor
Chicago, IL 60654
(312) 407-6600

As of April 22, 2023

Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, NJ 07083

Attention:     Holly Etlin
               Chief Restructuring Officer and Chief Financial Officer

Dear Ms. Etlin:

This letter (this "Amendment") amends the engagement agreement between Lazard Frères & Co. LLC ("Lazard") and Bed Bath & Beyond Inc. ("BBBY") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company") dated as of March 21, 2023 (the "March Engagement Agreement") and confirms the understanding and agreement between Lazard and the Company regarding the terms of Lazard's continued engagement as investment banker to the Company. Capitalized terms used but not defined in this Amendment shall have the meanings ascribed to them in the March Engagement Agreement (and references to the March Engagement Agreement therein shall be deemed to include this Amendment).

As previously discussed and agreed, Lazard has entered into this Amendment to reflect certain modifications to the fee structure (i) in connection with services provided prior to the date hereof related to obtaining "debtor-in-possession" financing, commencing and preparing sale and winddown processes, and related restructuring matters and (ii) in the event that the Company obtains Bankruptcy Court approval for, and effectuates, a wind down of the Company, a liquidation and going out of business sales for all of the Company's stores, and a sale of the Company's other assets, including the intellectual property (a "Wind Down"). For the avoidance of doubt, the March Engagement Agreement remains in full operation and effect (including that Lazard shall remain entitled to any accrued fees and expenses pursuant to the March Engagement Agreement), other than to the extent the terms of the March Engagement Agreement are expressly superseded by this Amendment.[1]

1. In connection with entry into this Amendment and prior to the commencement of chapter 11 proceedings, it was agreed, and Lazard received, a fee equal to $4,000,000 (the "Work Fee"), which was earned and paid in connection with services that Lazard provided related to obtaining "debtor-in-possession" financing, commencing and preparing sale and winddown processes, and related restructuring matters. It was further agreed that the Work Fee (A) was earned regardless of the occurrence of a Wind Down, and (B) replaced any Financing Fees that

---

[1] The March Engagement Agreement and this Amendment together constituting the terms of Lazard's continued engagement as investment banker to the Company, as may be further amended as needed.

# LAZARD

Lazard Frères & Co. LLC
300 N. LaSalle Street
23rd Floor
Chicago, IL 60654
(312) 407-6600

would be earned and payable under the March Engagement Agreement on account of the $240 million of "debtor-in-possession" financing provided by Sixth Street Specialty Lending, Inc., as administrative agent, and the lenders party thereto (the "Sixth Street DIP"), and Lazard shall not be entitled to any additional Financing Fees under the March Engagement Agreement with respect to that same financing.

2.    In the event of a Wind Down, then, in lieu of the fees set forth in Section 2 of the March Engagement Agreement, and as consideration for the services to be provided, the Company shall pay Lazard the following fees:

a.    A monthly fee of $200,000 (the "Monthly Fee"), payable on the first day of each month beginning April 1, 2023 until the termination of Lazard's engagement pursuant to the March Engagement Agreement.  One half of the Monthly Fees paid in respect of any months after June 2023 shall be credited (without duplication) against any Sale Transaction Fee or Other Sale Transaction Fee (each as defined below) payable; *provided*, that such credit shall only apply to the extent that the Sale Transaction Fee or Other Sale Transaction Fee is paid to Lazard in full, subject only to giving effect to the monthly credit described herein, and the Sale Transaction Fee or Other Sale Transaction Fee is approved in its entirety by the Bankruptcy Court.

b.    (i) If the Company consummates one or a series of Sale Transactions on a going-concern basis (as such term is used in U.S. generally accepted accounting principles) incorporating all or any portion of the assets of BUY BUY BABY, INC.), Lazard shall be paid a fee (the "Sale Transaction Fee") based on the Aggregate Consideration in such Sale Transaction(s) equal to (A) 2.25% of such Aggregate Consideration, *plus* (B) 2.5% of any Aggregate Consideration in excess of $500 million; *provided*, *however*, that a sale of all or any portion of BUY BUY BABY, INC. on a going-concern basis (as such term is used in U.S. generally accepted accounting principles) that results in Aggregate Consideration of less than $300 million shall constitute an Other Sale Transaction, and Lazard's fees for such sale shall be calculated pursuant to clause (ii) below, and not pursuant to this clause (i).

(ii) If the Company consummates one or a series of Sale Transactions not covered by clause (i) above (including a sale of any of the Company's intellectual property assets), Lazard shall be paid a fee (the "Other Sale Transaction Fee") equal to (A) 1.75% of Aggregate Consideration less than or equal to $175 million, *plus* (B) 2.25% of Aggregate Consideration in excess of $175 million but less than or equal to $225 million, *plus* (C) 2.5% of Aggregate Consideration in excess of $225 million; *provided*, *however*, that the Other Sale Transaction Fee received by Lazard shall be no less than $3,000,000 in connection with one or a series of Sale Transactions not covered by clause (i) above (including for any sale of any of the Company's intellectual property assets) that is greater than or equal to $150 million.

(iii) For purposes of clauses (i) and (ii) above, Sale Transactions shall not include

# LAZARD

Lazard Frères & Co. LLC
300 N. LaSalle Street
23rd Floor
Chicago, IL 60654
(312) 407-6600

any transaction pursuant to a liquidation process conducted by any person other than Lazard and involving only asset sales of any working capital assets, fixtures, real estate, or lease designation rights. For the avoidance of doubt, the foregoing shall not be deemed to exclude any such assets from the calculation of Aggregate Consideration if they are involved in a Sale Transaction.

(iv) To the extent that the Aggregate Consideration received in connection with one or a series of Sale Transactions (measured on a combined basis) (i) is less than or equal to $250 million, Lazard shall credit a portion of the Work Fee calculated in an amount equal to 75% of any Sale Transaction Fee or Other Sale Transaction Fee payable up to a maximum aggregate $3 million credit, or (ii) exceeds $250 million, Lazard shall credit a portion of the Work Fee calculated in an amount equal to 50% of any Sale Transaction Fee or Other Sale Transaction Fee payable up to a maximum aggregate $3 million credit.

c. A fee, payable upon the earlier of execution of a commitment letter or a definitive agreement with respect to any Financing other than the Sixth Street DIP (each, a "Financing Fee"), calculated in the manner set forth in the first two sentences of Section 2(d) of the March Engagement Agreement.

d. For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b) and (c) above.

e. In addition to any fees that may be payable to Lazard, and regardless of whether any Transaction occurs, the Company shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services, and other expenditures) and the reasonable fees and expenses of counsel retained by Lazard.

f. As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, reimbursement, contribution and other provisions set forth in the indemnification letter between the Company and Lazard dated August 10, 2022, which remains in full force and effect (the "Indemnification Letter"), and such provisions are incorporated herein in their entirety. The Indemnification Letter is attached hereto as Exhibit A.

g. All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

3. This Amendment and any claim related directly or indirectly to this Amendment shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted, or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf

# LAZARD

Lazard Frères & Co. LLC
300 N. LaSalle Street
23rd Floor
Chicago, IL 60654
(312) 407-6600

of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding.  The Company waives all right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort, or otherwise) related to or arising out of this Amendment.

If the foregoing Amendment is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRÈRES & CO. LLC

By: _David S Kurtz_____

David S. Kurtz
Vice Chairman


AGREED TO AND ACCEPTED
as of the date first written above:

BED BATH & BEYOND INC., on behalf of itself
and its controlled subsidiaries

By: _Holly Etlin_____

Holly Etlin
Chief Restructuring Officer and Chief Financial Officer

## <u>Exhibit 3</u>

**Indemnification Letter**

DocuSign Envelope ID: F4F278D4-C2DB-4F95-BF63-B83582D9C6E6

# LAZARD

Lazard Frères & Co. LLC
300 N. LaSalle Street
23rd Floor
Chicago, IL 60654
(312) 407-6600

As of August 10, 2022

Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, NJ

Ladies and Gentlemen:

    In connection with our engagement to advise and assist Bed Bath & Beyond Inc. and its controlled subsidiaries (collectively, "you") with the matters set forth in the engagement letter of even date herewith, you and we are entering into this letter agreement.  It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our current or future affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable, out-of-pocket legal and other expenses (including the reasonable, out-of-pocket cost of any investigation and preparation) promptly after receipt of invoices with reasonable descriptions thereof; provided that no Indemnified Person shall be entitled to any such reimbursement to the extent that such expenses are found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted from such Indemnified Person's bad faith, willful misconduct or gross negligence.  You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted from such Indemnified Person's bad faith, willful misconduct or gross negligence.  Notwithstanding anything to the contrary in this agreement, to the extent that an Indemnified Person is found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to be not entitled to indemnification in respect of a loss, claim, damage, liability or expense in accordance with the previous sentence, such Indemnified Person will promptly repay to you (i) any indemnification payments made by you under this agreement with respect thereto and (ii) any expenses previously reimbursed by you under this agreement that were attributable thereto.  You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of

DocuSign Envelope ID: F4F278D4-C2DB-4F95-BE63-B83F82D9C6E6

competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted from such Indemnified Person's bad faith, willful misconduct or gross negligence.  If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and indemnification is permitted under applicable law with respect to at least one such claim, you agree that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is held unenforceable or is otherwise unavailable (other than due to a failure to meet the standard of care set forth in the preceding paragraph), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations.  You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services.  Your reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

We or the relevant Indemnified Person shall notify you in writing (email will suffice) promptly after receipt by an Indemnified Person of actual notice of the commencement of any claim, action, proceeding or investigation with respect to which reimbursement or indemnification may be sought hereunder; provided that the omission so to notify you will not (a) relieve you from any liability which you may have on account of this agreement, except to the extent you have been actually materially prejudiced by such omission and (y) will not in any event relieve you from any other obligation or liability that you may have to any Indemnified Person otherwise than under this agreement. You shall be entitled to participate in any such claim, action, proceeding or investigation.  You shall also be entitled to assume the defense of any such claim, action, proceeding or investigation with counsel reasonably satisfactory to us.  If you have so assumed the defense of any claim, action, proceeding or investigation, each Indemnified Person shall have the right to participate in such claim, action, proceeding or investigation and to retain its own counsel but, except as provided below, you shall not be responsible for any costs, fees or expenses of any such separate counsel. Notwithstanding the foregoing, you may not assume the defense and we or the Indemnified Persons shall have the right to employ separate counsel in the defense of such claim, action, proceeding or investigation with you bearing the reasonable, out-of-pocket legal and other expenses of such separate counsel, if (i) you have failed to assume the defense and retain counsel in a timely manner or you have retained counsel that is not reasonably acceptable to us, (ii) you do not diligently defend the claim, action, proceeding or

investigation after assuming defense thereof, (iii) the use of counsel chosen by you to represent such Indemnified Person would be inappropriate due to actual or potential conflicts of interest or (iv) you have provided prior written authorization to such Indemnified Person to employ separate counsel at your expense.  Notwithstanding the foregoing, if any claim, action, proceeding or investigation seeks non-monetary relief or includes a criminal or quasi-criminal claim, we may, by written notice to you, assume the exclusive right to defend and resolve such matter with the costs of such defense and resolution to be at your expense.  Notwithstanding any provision herein, in no event shall you be responsible for the fees, costs or expenses of more than one counsel (plus one local counsel in any jurisdiction where necessary) for all Indemnified Persons in connection with any claim, action, proceeding or investigation unless an Indemnified Person has been advised by its own counsel that there exist actual or potential conflicting interests between such Indemnified Person and another Indemnified Person subject to the same Indemnification Claim, including the availability of one or more legal defenses which are different from or additional to those available to the other Indemnified Person.  The Company shall be liable for any settlement of any Indemnification Claim made with the Company's prior written consent (which shall not be unreasonably withheld, conditioned or delayed).

No Indemnified Person may, without your prior written consent (which will not be unreasonably withheld, conditioned or delayed), agree to the settlement of any claim, action, proceeding or investigation for which indemnity will be sought hereunder.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation.  No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.  This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof).  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts.  You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable.  You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with this agreement or our engagement.

*[Signature page follows.]*

DocuSign Envelope ID: F4F27BD4-C2D8-4F95-BE63-B83F82D9C6E6

This agreement shall remain in effect indefinitely, notwithstanding any termination of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _David A Kurtz_

David Kurtz
Vice Chairman

AGREED TO AND ACCEPTED
as of the date first
above written:

BED BATH & BEYOND INC., on behalf of itself
and its controlled subsidiaries

By: _Sue Gove_
DocuSigned by:
66C86A6868324E1...

Sue Gove
Interim Chief Executive Officer