Daniel M. Stolz, Esq.
Gregory S. Kinoian, Esq.
**GENOVA BURNS, LLC.**
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone: (973) 533-0777
Fax: (973) 533-1112

- and -

Andrew K. Glenn (admitted *pro hac vice*)
Kurt A. Mayr (admitted *pro hac vice*)
Shai Schmidt (admitted *pro hac vice*)
Agustina G. Berro (admitted *pro hac vice*)
Naznen Rahman (admitted *pro hac vice*)
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Counsel to the Unsecured Noteholders Group*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
|  | ) Case No. 23-13359 (VFP) |
| BED BATH & BEYOND INC., *et al.*, | ) |
|  | ) (Jointly Administered) |
| Debtors.[1] | ) |
|  | ) |

### <u>RESERVATION OF RIGHTS OF THE UNSECURED NOTEHOLDERS GROUP</u>

The ad hoc group of certain holders of the 3.479% Senior Notes due 2024, the 4.915%

Senior Notes due 2034 and the 5.165% Senior Notes due 2044 (the "<u>Unsecured Noteholders</u>

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Group"), by and through its undersigned counsel, hereby submits this reservation of rights ("Reservation of Rights**")** with respect to the chapter 11 cases (the "Chapter 11 Cases").  In support of its Reservation of Rights, the Unsecured Noteholders Group states as follows:

## BACKGROUND

### A.  The Chapter 11 Cases.

1.      On April 23, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors are pursuing a dual-track strategy: winding down all of their stores while marketing their assets to potential third-party buyers.  The Debtors commenced the Chapter 11 Cases with committed postpetition financing (the "DIP Facility"), granting the Debtors with runway to pursue a sale transaction while in bankruptcy.

3.      On April 24, 2023, during the first day hearing, the Court granted the Debtors' motion for approval of bidding procedures that governed an expedited sale process [Docket No. 29].  The Court also granted the Debtors' motion for authority to enter into the DIP Facility [Docket No. 25] (the "DIP Motion") on an interim basis.

4.      On May 31, 2023, during the ongoing second day hearing, counsel for the Debtors stated that the Debtors intended to file a plan of reorganization shortly after final approval of the DIP Motion.  At the same hearing, counsel for the official committee of unsecured creditors (the "Committee") announced that the Committee had reached a "case settlement" (the "Case Settlement") resolving, *inter alia*, its issues with the DIP Motion.  The Committee did not describe the terms of the Case Settlement on the record.  Counsel to Unsecured Noteholders Group has requested information regarding the Case Settlement, but neither the Committee nor the Debtors have provided any details regarding the Case Settlement's terms.

**B. The Unsecured Noteholders Group's Efforts to Obtain Information.**

5.      The day after the first day hearing in these Chapter 11 Cases, on April 25, 2023, counsel for the Unsecured Noteholders Group offered to sign a confidentiality agreement (the "Confidentiality Agreement") in order to obtain access information regarding the Debtors, including financing documents necessary to investigate the claims and liens subject to the challenge period under the DIP Order.  Counsel for the Debtors never responded.

6.      Over the following weeks, the Unsecured Noteholders Group's counsel followed up with the Debtors numerous times but did not receive a draft of the Confidentiality Agreement until May 18, 2023.

7.      Unsecured Noteholders Group provided only minor comments to the Confidentiality Agreement.  However, the Debtors did not countersign the Confidentiality Agreement until June 1, 2023.

8.      Despite the existence of the Confidentiality Agreement, on June 1, 2023, counsel for the Debtors subsequently informed counsel for the Unsecured Noteholders Group that simple financing documents could not be provided without consultation by the lenders.  The Debtors have not responded to the request for basic financing documents necessary to investigate the claims and liens subject to the challenge period under the DIP Order.  Indeed, the Debtor has provided no information since the signing of the Confidentiality Agreement.

<u>**STATEMENT AND RESERVATION OF RIGHTS**</u>

9.      The Unsecured Noteholders Group owns a material amount of bonds issued by the Debtors and likely are the largest unsecured constituency in these Chapter 11 Cases.  The Unsecured Noteholders Group expressly reserves all rights with respect to the sale and the plan of reorganization and the final DIP order and the terms of the still undisclosed Case Settlement

(including any purported settlement of issues and claims subject to the challenge period under the

Interim DIP Order).  The glacial pace of the Debtor's response to the Unsecured Noteholders

Group diligence process stands in stark contrast to the Debtors' expedited proposed process to sell

the Debtor's assets and the pending filing of a plan of reorganization.  The Unsecured Noteholders

Group requires prompt responses to its requests for information and immediate access to the

Debtors' data room.  The Unsecured Noteholders Group further requests all documents shared

with the Committee to date.  If the Debtors fail to provide the requested information voluntarily

and promptly, the Unsecured Noteholders Group will seek discovery from the Debtors pursuant to

Rule 2004 of the Federal Rules of Bankruptcy Procedure.

10.      As potentially the Committee's largest constituency the Unsecured Noteholders

Group is extraordinarily frustrated by the Committee's refusal to provide important information

regarding the Case Settlement and expressly reserves all rights with respect thereto.[2]  Moreover,

even if the Committee purports to have settled its issues with the DIP Motion, the Unsecured

Noteholders Group intends to continue its investigation during the challenge period and will likely

ask for an extension of the period given the Debtor's dilatory tactics.

11.      The final DIP hearing in these Chapter 11 Cases has been yet again adjourned to

June 14, 2023.  The Unsecured Noteholders Group hereby objects to the approval of any Case

Settlement regarding the DIP financing without adequate notice and opportunity for it to be

considered by unsecured creditors before material claims in these Chapter 11 Cases can be

compromised.  Moreover, the Unsecured Noteholders Group objects to any effort to limit or impair

the challenge period under the Interim DIP order, which provides parties in interest (in addition to

---

[2] The indenture trustee for the $1 billion of outstanding unsecured notes (the "Trustee") serves on the Committee.
The Unsecured Noteholder Group has repeatedly (directly and through counsel) tried to share the perspective of true
economic stakeholders in the unsecured notes with the Trustee.  Unfortunately, the Trustee has been no more
responsive or helpful than the Debtors and the Committee.

the Committee) with a challenge period to investigate the liens, claims and conduct of the purported prepetition secured parties and the DIP lenders.

12.     We are now more than six weeks since these Chapter 11 Cases were commenced and the Unsecured Noteholders Group first offered to sign a Confidentiality Agreement.  The Unsecured Noteholders Group has been diligently requesting information from the Debtors and the Committee to no avail.  Bankruptcy requires more transparency and consensus building than the secretive process that is occurring in these Chapter 11 Cases.

WHEREFORE, the Unsecured Noteholders Group respectfully requests that the Court (i) take note of its Reservation of Rights and (ii) grant such other and further relief as the Court deems just and proper.

*[Signatures on Following Page]*

Dated: June 12, 2023
New York, New York

/s/ Daniel M. Stolz
Daniel M. Stolz, Esq.
Gregory S. Kinoian, Esq.
**GENOVA BURNS**
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Fax: (973) 533-1112
Email: DStolz@genovaburns.com

- and -

Andrew K. Glenn
Kurt A. Mayr
Shai Schmidt
Naznen Rahman
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email: aglenn@glennagre.com (admitted *pro hac vice*)
kmayr@glennagre.com (admitted *pro hac vice*)
sschmidt@glennagre.com (admitted *pro hac vice*)
aberro@glennagre.com (admitted *pro hac vice*)
nrahman@glennagre.com (admitted *pro hac vice*)

*Counsel to the Unsecured Noteholders Group*