UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DUANE MORRIS LLP**
Wendy M. Simkulak (wmsimkulak@duanemorris.com)
Roxanne J. Indelicato (rindelicato@duanemorris.com)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020

*Attorneys for the Chubb Companies*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC. *et al.*,[1]<br><br><div align="center">Debtor</div> | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>Honorable Vincent F. Papalia |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)(A) APPROVING THE AUCTION AND BIDDING PROCEDURES, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING BID DEADLINES AND AN AUCTION, (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (E) APPROVING THE FORM APA, AND (II)(A) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (C) AUTHORIZING THE SALE OF ASSETS AND (D) GRANTING RELATED RELIEF**

ACE American Insurance Company, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, Chubb Custom Insurance

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Company, Executive Risk Specialty Insurance Company, Executive Risk Indemnity Inc., Great Northern Insurance Company, Chubb Insurance Company of New Jersey, Vigilant Insurance Company, Chubb Indemnity Insurance Company, and each of their respective U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this reservation of rights (the "Reservation of Rights") to the *Debtors' Motion for Entry of an Order (I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* [Docket No. 29] (the "Sale Motion"), and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

### BACKGROUND

**A.**      **The Bankruptcy Case**

1.      On April 23, 2023 (the "Petition Date"), Bed Bath & Beyond Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court").

**B.**      **Sale Motion**

2.      On April 23, 2023, the Debtors filed the Sale Motion.

3.      Pursuant to the Sale Motion, the Debtors sought entry of (a) an order approving, *inter alia*, the Bidding Procedures,[2] the Form APA and the Assumption and Assignment Procedures; and (b) an order authorizing and approving, *inter alia*, the sale of substantially all of the Debtors' assets to the Successful Bidder and the assumption and assignment of Executory Contracts and Unexpired Leases in connection with the Sale Transaction.

4.      On April 25, 2023, the Court entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 92] (the "<u>Bidding Procedures Order</u>"), approving, *inter alia*, the Bidding Procedures, the Form APA and the Assumption and Assignment Procedures.

5.      Pursuant to the Bidding Procedures, the Debtors are seeking to sell all of their Assets (as defined in the Bidding Procedures Order) including, *inter alia*, "the Debtors' . . . insurance proceeds." *See* Bidding Procedures at I.

6.      Pursuant to the terms of the Form APA, the Debtors shall retain the Excluded Assets (as defined in the Form APA) which include, *inter alia*, "all current and prior insurance policies of any Seller *that are not Assumed Benefit Plans*, including for the avoidance of doubt all director and officer insurance policies, and all rights and benefits of any nature of Sellers with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries." *See* Form APA at § 1.2(e) (emphasis added).[3]

---

[2]      Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Sale Motion.

[3]      The Form APA defines "Assumed Benefit Plans" to include "the sponsorship of, and all rights, interests and assets associated with, the Seller Plans." *See* Form APA at § 1.1(i).  "Seller Plan" is defined to include, *inter alia*, "each . . . employee welfare benefit plan." *See* Form APA at § 1.1(qq).

7.      The Form APA further states that "Purchaser shall not cancel or otherwise reduce coverage under any 'tail' insurance policies purchased by the Acquired Entities prior to the Closing; provided that no payments shall be required of the Acquired Entities or the Purchaser Group with respect to such policies after the Closing. *See* Form APA at § 6.12(a).

8.      Pursuant to the Bidding Procedures Order, on June 12, 2023, the Debtors filed the *Notice of Selection of Stalking Horse Bidder* [Docket No. 708] (the "Stalking Horse Notice").

9.      Pursuant to the terms of the Stalking Horse Agreement, the Acquired Assets (as defined in the Stalking Horse Agreement) include "all Contracts listed on Section 2.1(e) of the Disclosure Schedules or designated as Transferred Contracts pursuant to Section 2.7." *See* Stalking Horse Agreement at § 2.1(e).  The Disclosure Schedules and list of Transferred Contracts have not been filed.

10.     Pursuant to the terms of the Stalking Horse Agreement, the "Buyer acknowledges that, upon Closing, all *nontransferable insurance coverage* provided in relation to any Seller and the Acquired Assets that is maintained by such Seller or its Affiliates (whether such policies are maintained with third party insurers or with such Seller or its Affiliates) shall cease to provide any coverage to Buyer and the Acquired Assets and no further coverage shall be available to Buyer or the Acquired Assets under any such policies." *See* Stalking Horse Agreement at § 8.5 (emphasis added).

11.     Pursuant to the foregoing provisions, it is unclear if the Stalking Horse Bidder seeks an assignment of other transfer of the Insurance Program (as defined herein) or any portion of it (including any coverage thereunder).

12.     Pursuant to the Bidding Procedures Order, on June 13, 2023, the Debtors filed the *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases*

[Docket No. 714] (the "Contract Assumption Notice") identifying certain contracts and leases

that the Debtors may assume and assign to a Successful Bidder in connection with a Sale

Transaction, if one occurs.  None of the Policies (defined herein) are listed on the Contract

Assumption Notice.

13.     Under the terms of the Bidding Procedures Order, the Debtors may modify the

Contract Assumption Notice by filing a Supplemental Assumption Notice up until two business

days prior to the closing of the Sale Transaction. *See* Bidding Procedures Order ¶ 19(c).

14.     As of the date hereof, a Successful Bidder has not yet been identified.

**C.     The Insurance Program**

15.     Prior to the Petition Date, the Chubb Companies issued certain insurance policies

(as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the

"Policies") to the Debtors as named insureds.

16.     Under the Policies and any agreements related thereto (collectively, the

"Insurance Program,"[4] the Chubb Companies provide, *inter alia*, certain property, international,

package, umbrella, global accident and sickness, excess marine, excess casualty, accident

blanket, accident, commercial fire, cargo, directors' and officers' liability, fiduciary liability,

special coverage, excess, workers' compensation, WorldNet, crime, automobile, export package,

and certain other insurance for specified policy periods subject to certain limits, deductibles,

retentions, exclusions, terms and conditions, as more particularly described therein, and the

insureds, including one or more of the Debtors, are required to pay to the Chubb Companies

certain amounts including, but not limited to, insurance premiums (including audit premiums),

---

[4]     The description of the Insurance Program set forth herein is not intended to, and shall not be deemed to
amend, modify or waive, any of the terms or conditions of the Insurance Program.  Reference is made to the
Insurance Program for a complete description of its terms and conditions.

deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (the "Obligations").

17.    The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

18.    While the Contract Assumption Notice does not list the Insurance Program or any portion thereof, the Bidding Procedures Order and the Form APA contemplate the sale or transfer of all or a portion of the Insurance Program (and/or coverage thereunder). The Chubb Companies, therefore, object to any Sale Transaction to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, a portion thereof, and/or any coverage thereunder.

19.    The Chubb Companies assert that (A) the Insurance Program must be assumed and assigned, if at all, as a whole, and, in order to be entitled to any of the benefits of the Insurance Program, the Successful Bidder must remain liable for the Obligations thereunder; (B) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, the Insurance Program cannot be assigned or otherwise transferred without the consent of the Chubb Companies, and such consent has not been sought or given; (C) without altering the foregoing, to the extent that the Debtors intend to transfer any of the Insurance Program, or any rights, proceeds, or coverage thereunder to the Successful Bidder, the Chubb Companies seek clarification that the Chubb Companies are not responsible for determining which entity, as between the Debtors and the Successful Bidder, is entitled to coverage under the Insurance Program; and (D) because the Successful Bidder has not yet been identified, the Chubb Companies cannot determine whether the Successful Bidder intends to seek assignment of the

Insurance Program, the Chubb Companies lack adequate assurance of future performance under the Insurance Program by the Successful Bidder.

    A.    **The Insurance Program and the Obligations Thereunder Are Indivisible.**

20.    The Chubb Companies are currently unable to determine with any certainty which portions, if any, of the Insurance Programs constitute Assumed Benefit Plans under the Form APA.

21.    To the extent that the Debtors purport to assign or transfer only a portion of the Insurance Program (but not the entirety of such Insurance Program) to the Successful Bidder, such a potential split of the Insurance Program is improper.

22.    The Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Hldgs., Inc. (In re Physiotherapy Hldgs., Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

23.    Accordingly, any assumption and assignment or other transfer of the Insurance Program must be in its entirety, and the Chubb Companies therefore object to the Sale Transaction and the assumption and assignment or other transfer of the Insurance Program to the

extent that any Successful Bidder is permitted to pick and choose certain Policies,[5] for assignment, and to the extent that any Sale Transaction otherwise contemplates an improper split of the Insurance Program.

24.    Additionally, it is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder.  *See Tompkins* ex. rel. *A.T. v. Troy Sch. Dist.*, 199 Fed. App'x 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Tr. Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted));

---

[5]    The Chubb Companies specifically reserve the right to contest the assignment of any individual Policy.

*Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS

56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract

and disavow another aspect of the contract in order to avoid its consequences. . . ."); *see also In*

*re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and

cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt

the burdens.  He cannot accept one and reject the other.'") (internal citations omitted); *In re*

*Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may

not merely accept the benefits of a contract and reject the burdens to the detriment of the other

party.").

    25.    It is also well-established that courts cannot alter terms of contracts, and must

instead enforce them as written.  *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th

Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the

terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir.

1997) (noting that a debtor's estate has "no greater rights in property than those held by the

debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*,

484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing

terms of a contract or add new terms or conditions to which the parties do not appear to have

assented, write into the contract something which the parties have omitted or take away

something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*,

06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that

"insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL

589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous

there is no room for interpretation or construction and the courts must enforce those terms as

written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan.

21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted

to go so far as to allow the Court to rewrite contracts or create new contractual rights between

the Debtor and a third party").

26.     Accordingly, in order to be entitled to any of the benefits of the Insurance

Program, the Successful Bidder must also remain liable for the obligations thereunder.

**B.      The Insurance Program Cannot Be Assigned or Otherwise Transferred
Without the Prior Written Consent of the Chubb Companies, Which Has
Not Been Sought or Given.**

27.     To the extent that the Debtors seek to assign or otherwise transfer the Insurance

Program in connection with the Sale Transaction, such assignment cannot occur without the

express written consent of the Chubb Companies.

28.     Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts

and unexpired leases and provides the basis by which a debtor may assume and assign said

contracts.

29.     Section 365(f)(1), which allows assignment of a contract or lease despite a

prohibition, restriction, or condition in the contract to the contrary, is not without limits.  Section

365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1)

("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent.

Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly

subject to any alternative rule provided in Section 365(c).").

30.     Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory

contract if applicable law excuses the counterparty from accepting performance from or

rendering performance to an entity other than the debtor and such party does not consent to the

assumption or assignment.  11 U.S.C. § 365(c)(1)(A) and (B).

31.    Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the

[counterparty] would have to consent to an assignment of the [executory] contract to a third

party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . .

cannot assume that contract" and, by extension, assign it.  *In re West Elecs. Inc.*, 852 F.2d 79,

83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1)

limitation on the assumption of executory contracts applies whenever the contract is 'subject to

a legal prohibition against assignment' to a third party and the non-debtor party to the contract

does no consent to assignment.").

32.    Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance

policies without the insurer's consent.  *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200

RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported

assignment of an insurance policy that did not comply with the express terms of the insurance

policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort

Worth 2011, *no pet.*) (where an insurer's express written consent to any transfer of rights under

an insurance policy is required by the terms of the policy, failure to evidence the insurer's express

written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am.*

*Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS

1898, at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally

binding obligation to pay against [insurer]" where insureds assigned insurance contract without

insurer's consent, because to find otherwise "would place an undue risk and burden on

[insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance

policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[6]

33.     Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with.").  Therefore, the Insurance Program cannot be assigned without the prior written consent of the Chubb Companies.

---

[6]     Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust).  The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

34.    As a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Program, the Debtors and the assignee will be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies.  In the event that the Debtors do attempt to transfer all or any part of the Insurance Program in connection with the Sale Motion, any proposed assignee will also need to satisfy the Chubb Companies' extensive underwriting and financial review process, which takes substantial time to complete.

35.    Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program, the Chubb Companies object to any and all such assignments or transfers.[7]

**C.    The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and A Successful Bidder.**

36.    As of the date hereof, it is not clear exactly what, if any, portions of the Insurance Program the Debtors intend to transfer to the Successful Bidder pursuant to the Sale Motion.

37.    While it is improper, as discussed above and without waiving any of the arguments set forth above, to split the Insurance Program itself, or to split the rights under the Insurance Program from the Obligations thereunder, any transfer of only a certain (as yet

---

[7]    Additionally, to the extent the Debtors seek to assign or transfer the Insurance Program pursuant to a Sale, any cure amount must be evaluated at the time of assumption.  As more particularly described in the Insurance Program, the Debtors are required to pay the Insurance Program Obligations, and therefore, amounts may become due and owing under the Insurance Program either prior to or after the assumption thereof.  The amounts owed by the Debtors on account of the Insurance Program Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.  Accordingly, any cure amount must be determined at the time of assumption and further, as a condition for the assignment of either of the Insurance Program, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Insurance Program Obligations), whether now existing or hereafter arising, under such Insurance Program, including, without limitation, paying the Insurance Program Obligations as they become due.

unspecified) portion of the Insurance Program in connection with any Sale Transaction is likely to result in coverage disputes between the Successful Bidder and the Debtors.

38.     To the extent that the Chubb Companies agree to the assignment of the Insurance Program, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to coverage thereunder in connection with a particular claim.  Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to proceeds under the Insurance Program.

**D. Any Successful Bidder Must Provide Adequate Assurance of Future Performance.**

39.     It is currently unknown what entity, if any, will be the Successful Bidder or if the Contract Assumption Notice will be modified, and the Chubb Companies have therefore not yet been definitively advised as to whether the Successful Bidder intends to seek assignment of the Insurance Program.

40.     Pursuant to § 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance.

41.     Considering the fact that the Successful Bidder is not yet known, the Chubb Companies do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if the Successful Bidder would be capable of providing adequate assurance of future performance and whether the Successful Bidder would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb Companies are unable, at this time, to assess whether any Successful Bidder would satisfy those criteria.

42.     Accordingly, the Chubb Companies further object on the basis that the Chubb Companies do not have adequate assurance as required by § 365(f)(2) of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

43.     The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their right to assert additional objections to the Sale Motion and any Stalking Horse Selection Motion, any list or schedule or assumed contracts, assumed or assigned contracts, or cure amounts or any documents relating to any of the foregoing and/or the Sale Transaction.

WHEREFORE, the Chubb Companies object to the Sale Motion on the bases set forth herein, and reserve their rights to assert any additional objections to the Sale Motion, any list of schedule of assumed contracts, assumed and assigned contracts, or cure amounts or any documents relating to any of the foregoing and/or the Sale Transaction and to the assignment of the Insurance Program, particularly once the Successful Bidder is identified.

Dated: June 14, 2023

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Wendy M. Simkulak*

Wendy M. Simkulak, Esq.
Roxanne J. Indelicato, Esq.
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com
RIndelicato@duanemorris.com

*Counsel for the Chubb Companies*