**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al*., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION**
**AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC**

TO:    THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES
         BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1]      The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this motion (the "<u>Motion</u>"):

**<u>Relief Requested</u>**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"):

(a)      authorizing the rejection and termination of, and transfer of the Debtors'

interest in, that certain Industrial Lease dated November 8, 2021 (as and to the extent modified,

the "<u>Lease</u>"), between Debtor, Bed Bath & Beyond Inc., as tenant, and Agua Mansa Commerce

Phase I, LLC (the "<u>Landlord</u>"), as landlord, governing the premises located at 6120 Clinker

Drive, Riverside, California (the "<u>Premises</u>");

(b)      approving the certain Termination Agreement dated June 12, 2023 by and

between the Landlord and Bed Bath & Beyond Inc., as Tenant (and hereinafter "<u>Tenant</u>"),

annexed as <u>Exhibit 1</u> to **<u>Exhibit A</u>** attached hereto (the "<u>Lease Termination Agreement</u>"), by

which the Debtors agree that, upon the Effective Date (as defined therein), the Lease shall be

deemed rejected and terminated in exchange for, among other things, (i) $5,000,000.00, payable

as set forth in the Lease Termination Agreement, (ii) the cancellation of the existing standby

letter of credit, as amended, previously delivered by Tenant to the Landlord, (iii) a release of all

claims held by the Landlord against Tenant, except to the extent provided in the Lease

Termination Agreement, (iv) a release of Tenant's claims against the Landlord, and such other

terms and conditions set forth in the Lease Termination Agreement; and

(c)      granting related relief, including authorizing the Debtors and the Landlord to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein.[2]

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 365, and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

5.      Under the terms of the Lease, the Landlord leased the Premises to Bed Bath & Beyond, Inc. as Tenant.  The Premises is an industrial warehouse comprised of approximately 1,025,032 square feet.   The Lease requires the Debtors to pay rent in the approximate monthly amount of $900,000.

---

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration") or the Lease Termination Agreement, as applicable.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

6.      After extensive arms-length negotiations, the parties entered into the Lease

Termination Agreement pursuant to which the Debtors and the Landlord agreed that the Lease

shall be deemed rejected and terminated as of the Effective Date (defined as three (3) business

days after Bankruptcy Court Approval), in accordance with the terms set forth in the Lease

Termination Agreement.

7.      Critically, however, if the Debtors are unable to obtain Bankruptcy Court

Approval of the Lease Termination Agreement on or before June 30, 2023, the Landlord is

permitted to terminate the Lease Termination Agreement.

### The Lease Termination Agreement

8.      As set forth more fully in Exhibit 1 to the Order, the key provisions of the Lease

Termination Agreement are summarized below:[3]

(1)      *Termination of the Lease.*  The Lease is terminated effective as of the date
(the "Effective Date"), which is three (3) business days after the date on which an order by the
Bankruptcy Court, approving the Lease Termination Agreement in its entirety (the "Bankruptcy
Court Approval") is issued.  On the Effective Date, the Debtors will surrender the Premises to
the Landlord on an "as-is" basis.  On the Effective Date, the Lease will be terminated.[4]

(2)      *Payment to the Debtors.*  On the Effective Date, the Landlord shall pay to
the Tenant the sum of Five Million Dollars ($5,000,000.00). A deposit of $500,000.00 shall be
paid by the Landlord, within one (1) business day of the execution of this Agreement, to
Tenant's attorneys, Cole Schotz, P.C.

---

[3]      The terms described in paragraphs 8 and 9 below are for illustrative purposes only.  To the extent
there is any inconsistency between the terms set forth in the Lease Termination Agreement and the terms described
herein, the Lease Termination Agreement shall control in all respects.

[4]      As set forth in the Lease Termination Agreement, certain furniture, fixtures and equipment
("FF&E") and other personal property owned by Ryder Integrated Logistics ("Ryder") remain in the Premises. The
Lease Termination Agreement does not affect the disposition of any such FF&E or other personal property owned
by Ryder at the Premises. Any rights, remedies and defenses that either Landlord or Tenant have against Ryder with
respect to the Premises are expressly reserved. The continued presence of FF&E and other personal property in the
Premises shall not affect (i) the termination of the Lease in accordance with the Lease Termination Agreement, or
(ii) Ryder's ownership of the FF&E and personal property or the obligations or rights of Ryder to remove the FF&E
and other personal property from the Premises, which shall be determined between Landlord and Ryder or a court
having jurisdiction over Landlord and Ryder where the Premises are located.

(3)      *Rent Abatement*.  (i) If the Effective Date occurs before June 30, 2023, the pro-rated, post-Effective Date portion of June 2023 rent and charges will be returned to the Tenant, it being the intent of the parties that the Tenant's rent obligations under the Lease (and any adjustments, reconciliations or credits with respect thereto) will cease as of the Effective Date; and (ii) if the Effective Date occurs after June 30, 2023, Tenant shall have no obligation to pay rent and charges for the period from July 1, 2023 to the Effective Date, provided, however that this abatement of rent and other charges shall be null and void if the Lease Termination Agreement is terminated under Section 3 thereof.

(4)      *Cancellation of Letter of Credit*. Following the Effective Date, the Landlord shall cooperate with Tenant in the cancellation of the existing standby letter of credit, including the return of the original letter of credit to the issuing bank within three (3) business days of the Effective Date.

(5)      *Mutual Release of Claims.*  The Landlord and each Tenant will be deemed to have granted each other mutual release of claims and causes of action, except to the extent set forth in the Lease Termination Agreement.

9.      Moreover, to the extent applicable, and the information required by Local Rule

6004-1, is summarized below:

| **Local Rule** | **Provision** | **Summary Description** |
|---|---|---|
| 6004-1(a)(3)(A) | Property to Be Sold | As identified in the Lease Termination Agreement, including the Debtors' rights in and to the Lease are being terminated as of the Effective Date. |
| 6004-1(a)(3)(B) | Closing Date | The Lease shall terminate, and the Tenant shall surrender possession of the Premises, on the Effective Date. |
| 6004-1(a)(3)(C) | Purchase Price | $5,000,000 in cash, together with the release and waiver of claims against the Debtors and the Debtors' estates as provided in the Landlord Release of Tenant (Section 4 of the Lease Termination Agreement) |
| 6004-1(a)(3)(D) | Conditions of Sale | On the Effective Date, (a) Tenant has delivered possession of the Premises to the Landlord; (b) Tenant has delivered to the Landlord the keys and access codes to the Premises; (c) Tenant shall have delivered to Landlord a certification that Tenant has satisfied, and the date(s) on which Tenant did satisfy, the requirements of items (a) and (b) above, and (d) an order has been entered approving the entirety of the Lease Termination Agreement, which order shall contain a finding that Landlord is a "good faith" purchaser under Bankruptcy Code section 362(m) and not be subject to a stay pursuant to Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure. |
| 6004-1(a)(3)(E) | Deadline for Approval/Closing | Bankruptcy Court Approval prior to June 30, 2023, failing which Landlord can termination the Lease Termination Agreement. |
| 6004-1(a)(3)(F) | Deposit | 10%, or $500,000. |
| 6004-1(a)(3)(G) | 1146(b) Tax Determination | N/A |
| 6004-1(a)(3)(I) | Lease to Assumed and Assigned | N/A.  The Lease with the Landlord will be rejected and terminated. |

| Local Rule | Provision | Summary Description |
|---|---|---|
| 6004-1(a)(3)(J) | Credit Bidding | N/A |
| 6004-1(a)(3)(K) | Broker's Commission / Sale Agent Fee | N/A.  However, to the extent any fee or commission is due, the Debtors shall have sole responsibility therefor. |
| 6004-1(b)(1) | Insider Transaction | N/A |
| 6004-1(b)(2) | Agreements with Management / Key Employees | N/A |
| 6004-1(b)(3) | Waiver, Release or Satisfaction of Claims | The Lease Termination Agreement provides for certain mutual releases, including the Landlord' agreement to release Tenant and waive claims relating to the Lease against the Debtors' estates, except for (a) the rights created or reserved by the Lease Termination Agreement, and (b) any of Tenant's indemnification and defense obligations set forth in the Lease with respect to third party claims for personal injury, loss of life or property damage based on the use and occupancy of the Premises prior to the Effective Date and claims for environmental damages for which Tenant is responsible under applicable law. |
| 6004-1(b)(4) | Agreement to limit marketing / not solicit competing offers | The Debtors have agreed to a "No-Shop" provision, pursuant to which the Debtors have agreed not to market the Lease or the Premises or participate in any negotiations with or furnish any information regarding the Lease or the Premises to, any third party, on behalf of Tenant or its affiliates. |
| 6004-1(b)(5) | Interim Agreement with Purchaser | N/A |
| 6004-1(b)(6) | Release of Sale Proceeds | N/A |
| 6004-1(b)(7) | Limitation on Pursuing Avoidance Action Claims | N/A |
| 6004-1(b)(8) | Successor Liability | N/A.  Though the Landlord have agreed to release the Tenant and their successors and Tenant releases the Landlord' successors. |
| 6004-1(b)(9) | Sale of Property Free and Clear of Leasehold Interest, License or Other Right | The Debtors' leasehold interest and all of the Debtors' rights in and to the Lease and the Premises shall be terminated. |
| 6004-1(b)(10) | 6004(h) and 6006(d) Waivers | In order to meet the Effective Date deadlines required by the Lease Termination Agreement, and the conditions precedent set forth therein, the Debtors are requesting the waiver of any stay imposed by Bankruptcy Rules 6004(h) and 6006(d). |

10.     The Landlord' agreement to offer the consideration under the Lease Termination

Agreement, including the payment of $5,000,000, coupled with the resolution and release of

claims under the Lease, justifies entry into and performance under the Lease Termination

Agreement.  For the reasons that follow, the Debtors further believe that approval of the Lease

Termination Agreement is in the best interest of their estates.

### Basis for Relief Requested

**A.      Rejection and Termination of the Lease Is Supported by Sound Business Reasons.**

11.      Section 365(a) of the Bankruptcy Code provides that a debtor "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval.

12.      Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Matter of Taylor*, 103 B.R. 511, 517 (D.N.J. 1989), *aff'd in part, rev'd, in part*, 913 F.2d 102 (3d Cir. 1990) (citing *Sharon Steel Corp. v. Nat'l Gas Distribs. Corp.*, 812 F.2d 36, 39-40 (3d Cir. 1989). *See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *City of Covington v. Covington Landing L.P.*, 71 F.3d. 1221, 1226 (6th Cir. 1995).

13.      Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  *See, e.g., In re Balco Equities, Ltd., Inc.*, 323 B.R. 85, 98-99 (Bankr. S.D.N.Y. 2005); *cf Phar-Mor, Inc. v. Strouss Bldg.*, 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor….  Courts should generally defer to a debtor's decision whether to reject an executory contract.");

*In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[a] court will ordinarily defer to the business judgment of the debtor's management").

14.     The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See In re W & L Assocs., Inc.,* 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do not consider the 'business judgment test' to be a strict standard to meet."); *In re Metro Transp. Co.*, 87 B.R. 338, 343 (Bankr. E.D. Pa. 1988) ("We reiterate that the 'business judgment test' is not a 'strict standard to meet.'"); *In re Hardie,* 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989) (court should not disturb the debtor's decision to reject an executory contract unless "the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.").

15.     The Debtors respectfully submit that entry into the Lease Termination Agreement and rejection and termination of the Lease represents a fair and reasonable compromise that is in the best interest of the Debtors' estates and within the Debtors' sound business judgment.  Entry into the Lease Termination Agreement will inure to the benefit of the Debtors' estates in a number of ways.  For example, approval of the Lease Termination Agreement will result in the payment of $5,000,000 to the Debtors and will result in the cancellation of a $9+ million letter of credit in favor of the Landlord.  After consulting with their real estate advisors, the Debtors believe the consideration to be received from the Landlord, including the $5,000,000 payment, represents fair value for the Lease and that no better offer currently exists or likely would be secured through further marketing, particularly after considering that the Debtors would be required to pay additional administrative rent (exceeding $900,000 per month) at the Premises during any marketing period.  In addition, approval of the Lease Termination Agreement will

result in the elimination of claims that the Landlord might otherwise have against the Debtors'

estates. Accordingly, rejection is appropriate under the terms of the Lease Termination

Agreement.

**B.      The Transfer of the Debtors' Interest in the Lease and Premises is a Sound Exercise of the Debtors' Business Judgment and Should Be Approved**

16.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of

the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in relevant

part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title." 11 U.S.C. § 105(a).

17.      The sale of a debtor's property should be authorized pursuant to section 363 of the

Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin*

*(In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper*

*(In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.,*

788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir.

1986); *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club,*

128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.,* 124 B.R. 169, 176 (D.

Del. 1991). The *Delaware & Hudson Railway* court held that once a court is satisfied that there

is a sound business reason, "the court must also determine that the [debtor] has provided the

interested parties with adequate and reasonable notice, that the sale price is fair and reasonable

and that the purchaser is proceeding in good faith." *Id.*

18.      Here, the Landlord is acquiring any further rights in and to the Lease and

Premises that the Debtors' estates have in exchange for, *inter alia*, a payment of $5,000,000. In

addition to this payment, the Debtors receive value in several other forms, including, without

limitation (i) the elimination of what would have been the Debtors' obligation to pay administrative rent exceeding $900,000 while the Debtors sought to market the Lease and the Premises, (ii) the cancellation and return of a $9+ million letter of credit, (iii) the potential abatement of rent, and (iv) the right to surrender the Premises without additional rent despite the fact that the FF&E (owned by Ryder) will remain in the Premises as of the Effective Date.

19.    For the reasons noted above, the immediate termination of the Lease and closing under the Lease Termination Agreement is supported by sound business reasons and is in the best interests of the Debtors' estates.  Accordingly, the Debtors request approval under section 363(b) of the Bankruptcy Code to permit the Landlord to acquire the estates' rights in and to the Lease and the Premises in accordance with the terms of the Lease Termination Agreement.

**C.    Good Faith of the Landlord Under Section 363(m) of the Bankruptcy Code.**

20.    The Lease Termination Agreement requires that the Debtors obtain entry of an order that contains a finding that the Landlord is a "good faith" purchaser under Bankruptcy Code section 363(m).  *See* Lease Termination Agreement, ¶ 10(d).

21.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the

> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.,*

111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s

good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders

or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Bakalis*,

220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *see also Cinicola v. Scharffenberger,* 248 F.3d 110,

121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits

the reversal of a sale to a good faith purchaser of bankruptcy estate Real Property if a party failed

to obtain a stay of the sale."); *In re Stein & Day, Inc.,* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990)

("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a

sale on appeal unless there is a stay pending appeal.").

22.     The Debtors submit that a "good faith" finding is warranted here.  The Lease

Termination Agreement was a negotiated, arm's-length transaction, in which the Landlord acted

in good faith and in compliance with the *Abbotts Dairies* standards.  The Landlord is an

independent third-party and neither is an "insider" or "affiliate" of the Debtors as defined in

section 101 of the Bankruptcy Code.  The Debtors thus request that the Court find that the

Landlord acquired the Debtors' interest in the Lease in good faith within the meaning of section

363(m) of the Bankruptcy Code.

**D.     A Private Transaction Is Appropriate.**

23.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to

section 363 of the Bankruptcy Code (and D.N.J. LBR 6004-1(c) and 6004-5 each contemplate

private sales).  Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the

ordinary course of business may be by *private sale* or by public auction."  Fed. R. Bankr. P.

6004(f)(1) (emphasis added); *see Berg v. Scanlon (In re Alisa P'ship),* 15 B.R. 802, 802 (Bankr.

D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

24.     Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding sales

under section 363 of the Bankruptcy Code, a debtor may conduct a private sale if a good

business reason exists.  *See, e.g., In re MF Global, Inc.,* 535 B.R. 596, 605 (Bankr. S.D.N.Y.

2015 ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty,*

*Inc.,* 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale

conducted by a chapter 11 debtor); *In re Condere Corp.,* 228 B.R. 615, 629 (Bankr. S.D. Miss.

1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient

business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.,*

178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a

bankruptcy court in determining whether a private sale should be approved.  The court should

exercise its discretion based upon the facts and circumstances of the proposed sale.");

*In re Wieboldt Stores, Inc.,* 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to

transfer assets by private sale).

25.     The Debtors submit that proceeding by way of private sale with the Landlord in

accordance with the Lease Termination Agreement is appropriate in light of the facts and

circumstances of these Chapter 11 Cases.  Specifically, a long and complicated sale process with

bid procedures and an auction is unlikely to net the estates a significant appreciable benefit

through a substantially increased sale price in light of the costs and expenses for running a

competitive bid and sale process, including the ongoing payment of rent to the Landlord, which

exceeds $900,000 per month.  Without the agreements set forth in the Lease Termination

Agreement, the Debtors cannot immediately surrender the Premises free of the FF&E owned by

Ryder and would potentially be forced to pay administrative rent during such time it took Ryder

to remove the FF&E from the Premises (which the Debtors believe could take several months).

By proceeding with the transactions outlined in the Lease Termination Agreement, the Debtors

are avoiding any ongoing liability to the Landlord (which is backed by a $9+ million letter of

credit) and receiving $5,000,000.

26.     As a result, the transactions with the Landlord allow the Debtors to maximize the

value of the Lease and provides a significant benefit to the Debtors' estates.  Because a private

sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the

Landlord's offer is the highest or best offer for the Lease at this time, the Debtors request that the

Court approve the proposed private transactions with the Landlord in accordance with the Lease

Termination Agreement.

## Request of Waiver of Any Stay

27.     The Lease Termination Agreement requires that the Debtors obtain entry of an

order that is not subject to a stay pursuant to Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure.  *See* Lease Termination Agreement at ¶10(d).  Moreover, the sooner the

Debtors can close, the sooner their significant rent obligation will cease (or abate).  Accordingly,

the Debtors seek a waiver of the fourteen-day stay periods under Bankruptcy Rule 6004(h) and

6006(d).

## Waiver of Memorandum of Law

28.     The Debtors respectfully request that the Court waive the requirement to file a

separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon

which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**Reservation of Rights**

29.     Notwithstanding anything to the contrary herein, nothing contained in this Motion

or any actions taken pursuant to any order granting the relief requested by this Motion is

intended or should be construed as (a) an admission as to the validity of any particular claim

against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any

grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or

admission that any particular claim is of a type specified or defined in this Motion or any order

granting the relief requested by this Motion, (e) a request or authorization to assume any

agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or

limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or

any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common

law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights

of all parties are expressly reserved to contest the extent, validity, or perfection or seek

avoidance of all such liens.  If the Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended and should not be construed as an admission as to

the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute

such claim.

**No Prior Request**

30.     No prior request for the relief sought in this Motion has been made to this Court

or any other court.

**Notice**

31.     The Debtors will provide notice of this Motion to the following parties and/or

their respective counsel, as applicable:  (a) the United States Trustee for the District of New

Jersey; (b) the Committee[5]; (c) the agents under the Debtors' prepetition secured facilities and

counsel thereto; (d) the DIP Agent and counsel thereto; (e) Davis Polk & Wardwell, LLP, and

Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the

indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's

Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities

and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct

their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the

Debtors' Canadian Counsel; (m) the Landlord; and (n) any party that has requested notice

pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

---

[5]        On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official
committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No.
218].

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: June 14, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      josuha.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**Exhibit A**

Proposed Order

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</td><td></td></tr>
<tr><td colspan="2">

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
*Co-Counsel for Debtors and Debtors in Possession*

</td></tr>
<tr><td>

In re:

BED BATH & BEYOND INC., *et al.*,

     Debtors.[1]

</td><td>

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

</td></tr>
</table>

## ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC

The relief set forth on the following pages, numbered two (2) through five (5), is

**ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

Upon the *Motion for Entry of an Order Pursuant to Sections 365 and 363 Approving the Lease Termination Agreement with Agua Mansa Commerce Phase I, LLC* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), among other things, (a) authorizing the deemed rejection and termination of the Lease, (b) approving the Lease Termination Agreement between the Debtors and the Landlord, and (c) authorizing the Debtors and Landlord to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual

---

[2]        Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. Pursuant to sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and Landlord are authorized to enter into and perform under the Lease Termination Agreement, attached hereto as **Exhibit 1**, and to implement the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.  The Lease Termination Agreement and all of the terms and conditions thereof, including, without limitation, the rejection and termination of the Lease, the Debtors' surrender of the Premises, the consummation of the transactions contemplated thereunder and hereunder, and the releases contemplated therein, which for the avoidance of doubt includes the Landlord' release of any administrative claims (except as provided thereunder), are hereby approved in all respects.

3. Upon the Effective Date (as defined in the Lease Termination Agreement), the Debtors' rejection and termination of the Lease shall occur without any further action required by the Debtors, and the Debtors shall surrender the Premises pursuant to the terms of the Lease Termination Agreement.

4. The Debtors are authorized, pursuant to section 363(b)(1) of the Bankruptcy Code, to transfer any rights in and under the Lease and the Premises to the Landlord, pursuant to the terms of the Lease Termination Agreement, which transfer shall, pursuant to section 363(f) of the Bankruptcy Code, be free and clear of any and all liens, claims and encumbrances, with such

65548/0001-45560753v1

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.

5.      The Debtors and the Landlord are authorized to take any and all actions reasonably necessary or appropriate to consummate the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.

6.      Nothing in this Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between the Order and the terms of the Initial Order, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

7.      The Debtors and Landlord are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

8.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry hereof.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

11.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

Lease Termination Agreement

65548/0001-45560753v1

DocuSign Envelope ID: 65AB84F6-6C0B-43DB-8C5B-D9317 9FA60B2

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this ___13th___ day of June, 2023 by and between AGUA MANSA COMMERCE PHASE I, LLC, a Delaware limited liability company ("Landlord") and BED BATH & BEYOND  INC., a New York corporation ("Tenant" or "Debtor"). (Landlord and Tenant are collectively referred to as the "Parties.")

### RECITALS

WHEREAS, Landlord and Tenant entered into a certain Industrial Lease dated November 8, 2021 (the "Lease"), with respect to certain premises located at 6120 Clinker Drive, Riverside, California (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with affiliated debtors and debtors in possession, have filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement whereby, among other things, Landlord is restored to possession of the Premises as of the Effective Date and the parties release each other from their respective obligations under the Lease, as more particularly set forth hereinbelow;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject to an order of the Bankruptcy Court approving this Agreement:

### AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.  The Lease is terminated effective as of the date (the "Effective Date"), which is three (3) business days after the date on which an order by the Bankruptcy Court, approving this Agreement in its entirety (the "Bankruptcy Court Approval") is issued. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court Approval, on an expedited basis, including, without limitation, making application to the Bankruptcy Court to have this matter heard by the Bankruptcy Court on one of Tenant's two June calendar hearing dates (subject to the Court Calendar), such that the Effective Date shall occur prior to June 30, 2023.

3.      Consideration.  Landlord shall (a) pay to Tenant the sum of Five Million Dollars ($5,000,000.00). A deposit of $500,000.00 shall be paid by Landlord, within one (1) business day of the execution of this Agreement, to Tenant's attorneys, Cole Schotz, P.C., who shall hold such deposit in escrow.  Landlord hereby directs Cole Schotz, P.C. as escrow agent, to release such deposit to Tenant on the date of the issuance of the Bankruptcy Court Approval. If the Bankruptcy Court Approval is not granted on or before June 30, 2023, absent further written agreement of the Parties, Landlord shall have the right to terminate this Agreement, at any time before the

Bankruptcy Court Approval is issued, in which event the deposit shall be returned to Landlord. The balance of the consideration shall be paid by Landlord to Tenant on the Effective Date.

4.    <u>Landlord Release of Tenant</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, as of the Effective Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant and each of its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by, relating to or arising from the Lease, save and except for (a) the rights created or reserved by this Agreement, and (b) any of Tenant's indemnification and defense obligations set forth in the Lease with respect to third party claims for personal injury, loss of life or property damage based on the use and occupancy of the Premises prior to the Effective Date and claims for environmental damages for which Tenant is responsible under applicable law. Notwithstanding the foregoing, (i) if the Effective Date occurs before June 30, 2023, the pro-rated, post-Effective Date portion of June 2023 rent and charges will be returned to Tenant, it being the intent of the parties that Tenant's rent obligations under the Lease (and any adjustments, reconciliations or credits with respect thereto) will cease as of the Effective Date ; and (ii) if the Effective Date occurs after June 30, 2023, Tenant shall have no obligation to pay rent and charges for the period from July 1, 2023 to the Effective Date, provided, however that this abatement of rent and other charges shall be null and void if this Agreement is terminated under Section 3 above.

5.    <u>Tenant Release of Landlord</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, as of the Effective Date, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including,

without limitation, any and all claims evidenced by, relating to or arising from the Lease (including any adjustments, reconciliations and credits).

6. <u>Waiver</u>. The Parties hereto acknowledge that the release provisions set forth in Sections 4 and 5 above are intended as a full settlement and compromise of each, every and all claims of every kind and nature relating to the Lease as aforesaid and each of the parties hereto expressly waive any and all rights which they may have under Section 1542 of the Civil Code of the State of California pertaining to the Lease and the Premises, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

7. <u>Acknowledgment</u>. Each of the Parties hereto acknowledge, understand, and agree that by execution of this Agreement, each party and its partners, officers, directors, agents, trustees, beneficiaries, and employees do not admit any liability of any nature whatsoever. This Agreement is made entirely as a compromise and for the purpose of terminating the Lease and settling and extinguishing the respective claims, acts, damages, demands, rights of action or causes of action of the Parties hereto.

8. <u>Condition of Premises</u>. On the Effective Date, Tenant shall deliver to Landlord possession of the Premises in their "as-is" condition. Tenant shall have no obligation to perform any repair or replacement work to any part of the Premises or any fixtures, fittings or improvements therein.

9. <u>Existing Letter of Credit</u>. Following the Effective Date, Landlord shall cooperate with Tenant in the cancellation of the existing standby letter of credit, as amended, previously delivered by Tenant under Article 7 of the Lease, including the return of the original letter of credit to the issuing bank within three (3) business days of the Effective Date.

10. <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Effective Date:

(a)     Tenant has delivered possession of the Premises to Landlord;

(b)     Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)     Tenant shall have delivered to Landlord a certification that Tenant has satisfied, and the date(s) on which Tenant did satisfy, the requirements of Sections 10(a) and (b) hereof; and

(d)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement, which order shall contain a finding that Landlord is a "good faith" purchaser under Bankruptcy Code section 362(m) and not be subject to a stay pursuant to Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

11.     <u>Tenant Representations, Warranties and Covenants</u>. Tenant represents and warrants to Landlord that:

     (a)     All utility services relating to the Premises directly billed to Tenant, if any, which are consumed in or which service the Premises shall be terminated by Tenant prior to the Effective Date and charges for such utility services have been paid in full through the date upon which Tenant terminated such utility service;

     (b)     To the best of Tenant's actual knowledge, there are no outstanding contracts for the supply of labor or material to the Premises as of the date hereof, and, as of the Effective Date, no work will have been done, or materials delivered, in, about or to the Premises which have not been fully paid for and for which a mechanic's lien could be asserted and/or foreclosed;

     (c)     To the best of Tenant's actual knowledge, there are not any actions, suits, or proceedings pending or threatened before any governmental department, commission, board, bureau, agency or instrumentally that would affect the Premises or the right to occupy or utilize it.

12.     <u>Reservation of Rights as to Ryder</u>. The parties acknowledge that certain furniture, fixtures and equipment ("FF&E") and other personal property owned by Ryder Integrated Logistics ("Ryder") remain in the Premises. This Agreement does not affect the disposition of any such FF&E or other personal property owned by Ryder at the Premises. Any rights, remedies and defenses that either Landlord or Tenant have against Ryder with respect to the Premises are expressly reserved. The continued presence of FF&E and other personal property in the Premises shall not affect (i) the termination of the Lease in accordance with this Agreement, or (ii) Ryder's ownership of the FF&E and personal property or the obligations or rights of Ryder to remove the FF&E and other personal property from the Premises, which shall be determined between Landlord and Ryder or a court having jurisdiction over Landlord and Ryder where the Premises are located.

13.     <u>Obligations Pending Effective Date</u>. Prior to the Effective Date, except as provided in Section 4 above, Tenant shall remain responsible for performance of all obligations under the Lease. Without limiting the foregoing, Tenant shall maintain, through the Effective Date, its existing occurrence-based property, casualty and general liability insurance coverage with respect to the use and occupancy of the Premises prior to the Effective Date. Debtor agrees that no material change shall occur with respect to the condition of the Premises between the date hereof and the Effective Date that has not been approved in writing by Landlord.

14.     <u>Right of Entry/Investigation</u>. Prior to the Effective Date, and subject to confidentiality agreements as may be appropriate, Landlord and Landlord's representatives will have the right to enter and conduct any investigations that Landlord requires to the Premises. Landlord will make best commercial and reasonable efforts to avoid disturbing in place occupants, if any. Landlord will keep the Premises free and clear of any mechanic's or material man's liens arising out of any such entry and investigations.

15.    <u>Authority to Settle</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

16.    <u>"No Shop."</u>  From the execution of this Agreement through the Effective Date, Tenant and its affiliates, and their respective officers, managers, directors, and employees, shall not:

(a)    directly or indirectly, make, solicit, initiate or encourage submission of proposals or offers from any person or entity relating to an assignment of the Lease, or

(b)    participate in any discussions or negotiations regarding, furnish any information with respect to, assist or participate in, or facilitate in any other manner any effort or attempt by any person or entity to do or seek any of the foregoing,

it being the intent of the parties that neither (a) the assignment or disposition of the Lease, nor (b) any details broad or specific regarding the terms of this offer, be "shopped" pending Bankruptcy Court Approval.  Immediately after the signing of this Agreement, Tenant shall instruct its representatives, advisors and agents (specially A&G Realty and JLL) not to market the Lease or the Premises, or participate in any negotiations with or furnish any information regarding the Lease or the Premises to, any third party, on behalf of Tenant or its affiliates.

17.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

18.    <u>Advice of Counsel</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

DocuSign Envelope ID: 65AB84F6-6C0B-43DB-9C5B-D9347 9FA60B2

19.     Attorneys' Fees.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

20.     Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile transmission, electronic mail (including .pdf or any electronic signature complying with the U.S. Federal ESIGN Act of 2000, California's Uniform Electronic Transactions Act [Cal. Civil Code § 1633.1 *et seq.*] or other applicable law) or other transmission method, and any counterpart so delivered shall be deemed to be duly and validly delivered and be valid and effective for all purposes.

21.     Governing Law.  This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

22.     Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, *forum non conveniens*, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

23.     Miscellaneous.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)     This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)     Landlord shall have the right to assign its interest hereunder at any time after full execution thereof to any affiliate or related party.

(d)     Landlord and Tenant shall split equally all customary recording, filing and escrow fees, if any.

(e)     Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(f)      Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(g)      Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the negotiation, preparation and consummation of this Agreement.

(h)      The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**LANDLORD**:

AGUA MANSA COMMERCE PHASE I, LLC,
a Delaware limited liability company

By: Agua Mansa Commerce Holdings, LLC,
    a Delaware limited liability company,
    its sole member

    By: PR II Agua Mansa Commerce, LLC,
        a Delaware limited liability company,
        its sole member

        By: PRISA II LHC, LLC,
            a Delaware limited liability company,
            its sole member

            By: _____
            Name: Douglas Roberts
            Title: Vice President

**TENANT**:

BED BATH & BEYOND INC.,
a New York corporation

By: _____

    Its: _____