**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE**
**TERMINATION AGREEMENT WITH CP VENTURE FIVE – AV LLC**

</div>

TO:    THE HONORABLE JUDGE VINCENT F. PAPALIA,
          UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this motion (the "<u>Motion</u>"):

<div align="center"><b><u>Relief Requested</u></b></div>

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"):

(a)     authorizing the rejection and termination of, and transfer of the Debtors'

interest in, that certain lease dated June 14, 2004 (as and to the extent modified, the "<u>Lease</u>"),

between Debtor Bed Bath & Beyond Inc., as tenant, and CP Venture Five - AV LLC, as successor

in interest to Cousins Properties Incorporated (the "<u>Landlord</u>"), as landlord, governing the

premises (the "<u>Premises</u>") located at the shopping center currently known as The Avenue Viera in

Melbourne, Florida (the "<u>Shopping Center</u>");

(b)     approving the certain Termination Agreement dated June 16, 2023 by and

between the Landlord and Bed Bath & Beyond Inc., as Tenant (and hereinafter "<u>Tenant</u>"), annexed

as <u>Exhibit 1</u> to **<u>Exhibit A</u>** attached hereto (the "<u>Lease Termination Agreement</u>"), by which the

Debtors agree that, upon the Termination Date (as defined therein), the Lease shall be deemed

rejected and terminated in exchange for, among other things, (i) $265,000.00, payable as set forth

in the Lease Termination Agreement, (ii) a release and waiver of all claims held by the Landlord

against Tenant, including for unpaid rent, late fees, real estate taxes, water and sewer charges and

other additional rent now due and owing under the Lease, and (iii) a release of Tenant's claims

against the Landlord, and such other terms and conditions set forth in the Lease Termination

Agreement;

(c)     authorizing the abandonment of any FF&E or other personal property in the

Premises as of the Termination Date; and

<div align="center">2</div>

(d)     granting related relief, including authorizing the Debtors and the Landlord to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein.[2]

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 365, and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5.      Under the terms of the Lease, the Landlord leased the Premises to Bed Bath & Beyond, Inc. as Tenant.  The Premises is a retail store located in the Shopping Center.

6.      After extensive arms-length negotiations, the parties entered into the Lease Termination Agreement pursuant to which the Debtors and the Landlord agreed that the Lease

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration") or the Lease Termination Agreement, as applicable.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

shall be deemed rejected and terminated as of the Termination Date (defined as the later of (a) June 30, 2023, and (b) the date on which the Bankruptcy Court enters an order in the Bankruptcy Case approving the Lease Termination Agreement and the terms thereof).

7.      The earlier the Court approves the Lease Termination Agreement, the sooner the Debtors can avoid the ongoing payment of rent under the Lease.

**The Lease Termination Agreement**

8.      As set forth more fully in <u>Exhibit 1</u> to the Order, the key provisions of the Lease Termination Agreement are summarized below:[3]

(1)      *Termination of the Lease.*  The Lease is terminated effective as of the date (the "<u>Termination Date</u>"), which is the *later* of June 30, 2023, or the Court's approval of the Termination Agreement.  On the Termination Date, the Debtors will surrender the Premises to the Landlord.  On the Termination Date, the Lease will be terminated.

(2)      *Abandonment of FF&E and Other Personal Property.*  All personal property, including the FF&E remaining at the Premises on the Termination Date, shall be deemed abandoned by Tenant and the Landlord and their managing agents are free to use or dispose of the FF&E and such other property in their sole and absolute discretion without liability to the Debtors or any entity.

(3)      *Consideration.*  On the Termination Date, the Landlord shall (a) pay to the Tenant the sum of Two Hundred and Sixty-Five Thousand Dollars ($265,000.00), and (b) waive and release all claims relating to the Tenant's unpaid rent, late fees, real estate taxes, water and sewer charges and other additional rents now due and owing under the Lease.

(4)      *Mutual Release of Claims.*  The Landlord and each Tenant will be deemed to have granted each other mutual release of claims and causes of action, except to the extent set forth in the Lease Termination Agreement.

9.      The Landlord's agreement to offer the consideration under the Lease Termination Agreement, including the payment of $265,000, coupled with the resolution and release of claims under the Lease, justifies entry into and performance under the Lease Termination Agreement.

---

[3]      The terms described in paragraphs 8 and 9 below are for illustrative purposes only.  To the extent there is any inconsistency between the terms set forth in the Lease Termination Agreement and the terms described herein, the Lease Termination Agreement shall control in all respects.

For the reasons that follow, the Debtors further believe that approval of the Lease Termination Agreement is in the best interest of their estates.

**Basis for Relief Requested**

**A.      Rejection and Termination of the Lease Is Supported by Sound Business Reasons.**

10.      Section 365(a) of the Bankruptcy Code provides that a debtor "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval.

11.      Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Matter of Taylor*, 103 B.R. 511, 517 (D.N.J. 1989), *aff'd in part, rev'd, in part*, 913 F.2d 102 (3d Cir. 1990) (citing *Sharon Steel Corp. v. Nat'l Gas Distribs. Corp.*, 812 F.2d 36, 39-40 (3d Cir. 1989). *See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *City of Covington v. Covington Landing L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995).

12.      Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. *See, e.g., In re Balco Equities, Ltd., Inc.*, 323 B.R. 85, 98-99 (Bankr. S.D.N.Y. 2005); *cf Phar-Mor, Inc. v. Strouss Bldg.*, 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor.... Courts should generally defer

5

to a debtor's decision whether to reject an executory contract."); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[a] court will ordinarily defer to the business judgment of the debtor's management").

13.     The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See In re W & L Assocs., Inc.,* 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do not consider the 'business judgment test' to be a strict standard to meet."); *In re Metro Transp. Co.*, 87 B.R. 338, 343 (Bankr. E.D. Pa. 1988) ("We reiterate that the 'business judgment test' is not a 'strict standard to meet.'"); *In re Hardie,* 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989) (court should not disturb the debtor's decision to reject an executory contract unless "the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.").

14.     The Debtors respectfully submit that entry into the Lease Termination Agreement and rejection and termination of the Lease represents a fair and reasonable compromise that is in the best interest of the Debtors' estates and within the Debtors' sound business judgment.  Entry into the Lease Termination Agreement will inure to the benefit of the Debtors' estates in a number of ways.  For example, approval of the Lease Termination Agreement will result in the payment of $265,000 to the Debtors and will result in the waiver and release of any and all claims of the Landlord under the Lease.  After consulting with their advisors, including their real estate advisors, the Debtors believe the consideration to be received from the Landlord, including the $265,000 payment, represents fair value for the Lease and that no better offer currently exists or likely would be secured through further marketing, particularly after considering that the Debtors would be required to pay additional administrative rent at the Premises during any marketing period.  In

addition, approval of the Lease Termination Agreement will result in the elimination of claims that

the Landlord might otherwise have against the Debtors' estates.   Accordingly, rejection is

appropriate under the terms of the Lease Termination Agreement.

**B.      To the Extent Applicable, the Transfer of the Debtors' Interest in the Lease and Premises is a Sound Exercise of the Debtors' Business Judgment and Should Be Approved**

15.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and

a hearing, may use, sell or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides in relevant part

that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title."  11 U.S.C. § 105(a).

16.      The sale of a debtor's property should be authorized pursuant to section 363 of the

Bankruptcy Code if a sound business purpose exists for doing so.  *See, e.g., Meyers v. Martin*

*(In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper*

*(In re Schipper),* 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.,*

788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986);

*In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club,* 128 B.R. 396

(W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.,* 124 B.R. 169, 176 (D. Del. 1991).  The

*Delaware & Hudson Railway* court held that once a court is satisfied that there is a sound business

reason, "the court must also determine that the [debtor] has provided the interested parties with

adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is

proceeding in good faith." *Id.*

17.      Here, to the extent section 363 applies, the Landlord is acquiring any further rights

in and to the Lease and Premises that the Debtors' estates have in exchange for, *inter alia*, a

payment of $265,000.  In addition to this payment, the Landlord is waiving and releasing all further claims against the Debtors' estates.

18.     For the reasons noted above, the immediate termination of the Lease and closing under the Lease Termination Agreement is supported by sound business reasons and is in the best interests of the Debtors' estates.  Accordingly, to the extent applicable, the Debtors request approval under section 363(b) of the Bankruptcy Code to permit the Landlord to acquire the estates' rights in and to the Lease and the Premises in accordance with the terms of the Lease Termination Agreement.

**C.      A Private Transaction Is Appropriate.**

19.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code (and D.N.J. LBR 6004-1(c) and 6004-5 each contemplate private sales).  Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by ***private sale*** or by public auction."  Fed. R. Bankr. P. 6004(f)(1) (emphasis added); *see Berg v. Scanlon (In re Alisa P'ship),* 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

20.     Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding sales under section 363 of the Bankruptcy Code, a debtor may conduct a private sale if a good business reason exists.  *See*, *e.g.*, *In re MF Global, Inc.,* 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015 ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty, Inc.,* 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.,* 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.,* 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a

bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.,* 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

21.    The Debtors submit, again to the extent section 363 of the Bankruptcy Code is applicable, that proceeding by way of private sale with the Landlord in accordance with the Lease Termination Agreement is appropriate in light of the facts and circumstances of these Chapter 11 Cases. Specifically, a long and complicated sale process with bid procedures and an auction is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process, including the ongoing payment of rent to the Landlord. Moreover, as noted above, no other party has expressed a willingness to pay more than $265,000, and satisfy any cure relating to any defaults, for the Debtors' right, title and interest in the Lease and the Premises. By proceeding with the transactions outlined in the Lease Termination Agreement, the Debtors are avoiding any ongoing liability to the Landlord (after June 30, 2023) and receiving $265,000.

22.    As a result, the transactions with the Landlord allow the Debtors to maximize the value of the Lease and provides a significant benefit to the Debtors' estates. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the Landlord's offer is the highest or best offer for the Lease at this time, the Debtors request that the Court approve the proposed private transactions with the Landlord in accordance with the Lease Termination Agreement.

**D.    Abandonment of Personal Property Remaining in the Leased Premises Should be Approved by the Court.**

23.    The Lease Termination Agreement provides that any personal property, including any FF&E, remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and its managing agents are free to use or dispose of the FF&E in their sole and absolute discretion without liability to the Debtors or any entity.

24.    The Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied with respect to the abandonment of the FF&E.  Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate."   11 U.S.C. § 554(a).   Before authorizing abandonment of property, a bankruptcy court must find either: (i) the property is burdensome to the estate or (ii) the property is both of inconsequential value and inconsequential benefit to the estate.  *See*, *e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986), *reh'g denied*, 475 U.S. 1091 (1986).

25.    Although the Debtors will continue through the Termination Date removing personal property at the Premises, including all inventory, certain personal property, *i.e.*, the FF&E, may remain at the Premises as of the Termination Date.  To the extent such personal property, including the FF&E, remains it is (a) of limited to no value or benefit to the Debtors' estates and/or (b) burdensome insofar as the costs of removal and storage of such property is likely to exceed the net proceeds realizable from their sale.

26.    Rule 6007-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules") requires that notice of a proposed abandonment, among other things, describe the property to be abandoned.  The Debtors submit that given the description of the personal property provided herein and the *de minimis* nature of such property, the requirements of the Local

Rules have been satisfied.  Alternatively, to the extent the Court finds such information does not meet the requirements of Local Bankruptcy Rule 6007-1, the Debtors respectfully request that the Court waive such requirements with respect to this Motion.

### Request of Waiver of Any Stay

27.    The sooner the Debtors can close on the transactions contemplated by the Termination Agreement, the sooner their significant rent obligation will cease (or abate). Accordingly, the Debtors seek a waiver of the fourteen-day stay periods under Bankruptcy Rule 6004(h) and 6006(d).

### The Requirements of Local Rule 6007-1 are Satisfied

28.    The Debtors respectfully submit that all information required pursuant to Local Rule 6007-1 is encompassed in the Motion and Lease Termination Agreement.  Accordingly, the Debtors request that the Court waive the requirement to file any separate notice pursuant to Local Rule 6007-1.

### Waiver of Memorandum of Law

29.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

30.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief

requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### No Prior Request

31.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Notice

32.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the United States Trustee for the District of New Jersey; (b) the Committee[4]; (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent and counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the

---

[4]    On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 218].

monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; (m) the

Landlord; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need

be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in

substantially the forms submitted herewith, granting the relief requested herein and such other

relief as is just and proper under the circumstances.

Dated: June 19, 2023

<div style="margin-left:40%">

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
                wusatine@coleschotz.com
                fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       josuha.sussberg@kirkland.com
                emily.geier@kirkland.com
                derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

</div>

**<u>Exhibit A</u>**

**Proposed Order**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** <br> Joshua A. Sussberg, P.C. (admitted *pro hac vice*) <br> Emily E. Geier, P.C. (admitted *pro hac vice*) <br> Derek I. Hunter (admitted *pro hac vice*) <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Telephone: (212) 446-4800 <br> Facsimile: (212) 446-4900 <br> joshua.sussberg@kirkland.com <br> emily.geier@kirkland.com <br> derek.hunter@kirkland.com <br><br> **COLE SCHOTZ P.C.** <br> Michael D. Sirota, Esq. <br> Warren A. Usatine, Esq. <br> Felice R. Yudkin, Esq. <br> Court Plaza North, 25 Main Street <br> Hackensack, New Jersey 07601 <br> Telephone: (201) 489-3000 <br> msirota@coleschotz.com <br> wusatine@coleschotz.com <br> fyudkin@coleschotz.com <br> *Co-Counsel for Debtors and Debtors in Possession* | |
| In re: <br><br> BED BATH & BEYOND INC., *et al.*, <br><br>      Debtors.[1] | Chapter 11 <br><br> Case No. 23-13359 (VFP) <br><br> (Jointly Administered) |

## ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH CP VENTURE FIVE – AV LLC

The relief set forth on the following pages, numbered two (2) through five (5), is

**ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH CP VENTURE FIVE – AV LLC |

Upon the *Motion for Entry of an Order Pursuant to Sections 365 and 363 Approving the Lease Termination Agreement with CP Venture Five – AV LLC* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), among other things, (a) authorizing the deemed rejection and termination of the Lease, (b) approving the Lease Termination Agreement between the Debtors and the Landlord, (c) authorizing the abandonment of any personal property, including FF&E, remaining in the Premises as of the Termination Date, and (d) authorizing the Debtors and Landlord to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH CP VENTURE FIVE – AV LLC |

and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      Pursuant to sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and Landlord are authorized to enter into and perform under the Lease Termination Agreement, attached hereto as **Exhibit 1**, and to implement the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.  The Lease Termination Agreement and all of the terms and conditions thereof, including, without limitation, the rejection and termination of the Lease, the Debtors' surrender of the Premises, the consummation of the transactions contemplated thereunder and hereunder, and the releases contemplated therein, which for the avoidance of doubt includes the Landlord' release of any administrative claims (except as provided thereunder), are hereby approved in all respects.

3.      Upon the Termination Date (as defined in the Lease Termination Agreement), the Debtors' rejection and termination of the Lease shall occur without any further action required by the Debtors, and the Debtors shall surrender the Premises pursuant to the terms of the Lease Termination Agreement.

4.      The Debtors are authorized, pursuant to section 363(b)(1) of the Bankruptcy Code, to transfer any rights in and under the Lease and the Premises to the Landlord, pursuant to the terms of the Lease Termination Agreement, which transfer shall, pursuant to section 363(f) of the

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH CP VENTURE FIVE – AV LLC |

Bankruptcy Code, be free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.

5.      The Debtors, in their sole discretion, are authorized, pursuant to section 554(a) of the Bankruptcy Code, to abandon to the Landlord any personal property, including the FF&E, remaining in the Premises as of the Termination Date and the Landlord and their managing agents are free to use or dispose of such abandoned property in their sole and absolute discretion without liability to the Debtors or any entity.

6.      The Debtors and the Landlord are authorized to take any and all actions reasonably necessary or appropriate to consummate the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.

7.      Nothing in this Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between the Order and the terms of the Initial Order, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH CP VENTURE FIVE – AV LLC |

8.  The Debtors and Landlord are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry hereof.

10.  Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.  The requirement set forth in Local Rule 6007-1 that the Debtors file a notice of proposed abandonment is hereby deemed satisfied by the contents of the Motion and Lease Termination Agreement or otherwise waived.

12.  The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

13.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>Exhibit 1</u>

**Lease Termination Agreement**

DocuSign Envelope ID: A092B2F3-ADCE-42C8-B250-26DB95D27080

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 16th day of June, 2023 by and between CP VENTURE FIVE – AV LLC ("Landlord"), as successor in interest to Cousins Properties Incorporated, and BED BATH & BEYOND INC. ("Tenant").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated as of June 14, 2004 (as amended from time to time, the "Lease"), covering certain premises (as more particularly described in the Lease, the "Premises") located at the shopping center currently known as The Avenue Viera in Melbourne, Florida (the "Shopping Center"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), which case is proceeding as *In re Bed Bath & Beyond, Inc., et al.,* jointly administered as Case No. 23-13359 (VFP) (the "Bankruptcy Case");

WHEREAS, the Parties desire to enter into this Agreement to, among other things, restore possession of the Premises to Landlord as of the Termination Date, provide for mutual releases (as set forth herein), and grant Landlord the right to use or dispose of any equipment, fixtures, furniture or other property of Tenant remaining at the Premises as of the Termination Date, in the sole and absolute discretion of Landlord; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.    Recitals.  The Recitals are incorporated herein as if set forth at length.

2.    Lease Termination.  The Lease is terminated effective as of the later of (a) June 30, 2023, and (b) the date on which the Bankruptcy Court enters an order in the Bankruptcy Case approving this Agreement and the terms hereof (as applicable, the "Termination Date").

3.    Consideration.  Landlord shall (a) pay to Tenant the sum of $265,000, and (b) waive and release all claims relating to Tenant's unpaid rent, late fees, real estate taxes, water and sewer charges and other additional rents now due and owing under the Lease.

4.    Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant and the other Debtors, and each of its and their respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every

type, kind, nature, description or character, arising out of or related to the Lease, the Premises or the Shopping Center, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, that the foregoing shall not release Tenant's insurers from liability for any insured claims arising prior to the Termination Date for which Tenant would be liable pursuant to the terms of ARTICLE 10 of the Lease, which insured claims shall survive the termination of the Lease; provided further that nothing contained in this paragraph 4 shall release Tenant of any of its obligations under this Agreement or Landlord's right to enforce this Agreement.

5.    <u>Tenant Release of Landlord</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, Tenant, on behalf of itself and the other Debtors, does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, partners, investors, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, arising out of or related to the Lease, the Premises or the Shopping Center, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, that the foregoing shall not release Tenant's insurers from liability for any insured claims arising prior to the Termination Date for which Tenant would be liable pursuant to the terms of ARTICLE 10 of the Lease, which insured claims shall survive the termination of the Lease; provided further that nothing contained in this paragraph 5 shall release Landlord of any of its obligations under this Agreement or Tenant's right to enforce this Agreement.

6.    <u>Scope of Releases</u>.  In this connection, each of Landlord and Tenant hereby agrees, represents and warrants that it realizes and acknowledges that factual matters now unknown to it may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and each party further agrees, represents and warrants that the foregoing releases have been negotiated and agreed upon in light of that realization and that, except as otherwise expressly stated above, each party nevertheless hereby intends to release, discharge, and acquit the other party hereto from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7.    <u>Conditions Precedent</u>.  As conditions precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Tenant has delivered possession of the Premises to Landlord;

(b)    Tenant has delivered to Landlord the keys and access codes to the Premises; and

(c)    An order has been entered in the Bankruptcy Case by the Bankruptcy Court approving the entirety of this Agreement.

DocuSign Envelope ID: A092B2E8-ADCE-42C8-B250-2E9B95D27090

8.    Furniture, Fixtures and Equipment ("FF&E").  Any FF&E, and any other property of Tenant, remaining at the Premises after the Termination Date is deemed abandoned by Tenant and all of the Debtors' right, title and interest to, and possession of, such FF&E and any such other property of Tenant remaining at the Premises, shall, at the option of Landlord, be vested in Landlord pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all liens, claims and encumbrances, and the Landlord and their managing agents are free to use or dispose of the FF&E and such other property in their sole and absolute discretion without liability to Tenant, any of the other Debtors, or any other entity, including, without limitation, any of Tenant's lenders.

9.    Authority to Settle.  Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

10.    Entire Agreement.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

11.    Advice of Counsel.  Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

12.    Attorneys' Fees.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees from the other party.

13.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto, or any signatures made and delivered via a digital signature platform such as DocuSign, shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

14.    Governing Law.  This Agreement shall be governed by and construed under the laws of the State of Florida, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

DocuSign Envelope ID: A092B2E3-A0CE-42C8-B250-26DB95D27080

15.    <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

16.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**CP VENTURE FIVE – AP LLC**,
a Delaware limited liability company

By: _Eric S. Smookler_
_____
CC6752C2DDD2442

Print Name: Eric S. Smookler
_____

Its: Vice President
_____


**BED BATH & BEYOND INC.**,
a New York corporation

By: _Wade Haddad_
_____
39C2464B1AAD429

Print Name: Wade Haddad
_____

Its: SVP Real Estate and Construction
_____