# EXHIBIT E

# LIST OF EXCLUSIVES

41618404.3

EXHIBIT H

LIST OF EXISTING EXCLUSIVE USE RESTRICTIONS

**REA**
- (i) Any use which emits litter or an obnoxious odor, noise, or sound which can be heard or smelled outside of any building in the Shopping Center; or other activity with may constitute a public or private nuisance;
- (ii) Any operation primarily used as a storage warehouse operation, and any assembling, manufacturing, distilling, refining, smelting, any firing, explosion or other damaging or dangerous hazards; agricultural, or mining operation;
- (iii) Any "second hand" store or "surplus" store greater than 5,000 square feet;
- (iv) Any fire sale, bankruptcy sales (unless pursuant to a court order) or auction house operation;
- (v) A bar, pub, nightclub, music hall or disco in which less than fifty percent (50%) of its space or revenue is devoted to and derived from food service;
- (vi) A bowling alley;
- (vii) A billiard or bingo parlor;
- (viii) A flea market;
- (ix) A massage parlor;
- (x) A funeral home;
- (xi) A facility for the sale of paraphernalia for use with illicit drugs;
- (xii) A facility for the sale or display of pornographic material (as determined by community standards for the area in which the Shopping Center is located);
- (xiii) An off-track betting parlor/facility;
- (xiv) A carnival, amusement park or circus;
- (xv) A gas station, car wash or auto repair or body shop;
- (xvi) A facility for the sale of new or used motor vehicles, trailers or mobile homes;
- (xvii) A facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center;
- (xviii) A skating rink;
- (xix) An arcade, pinball or computer game room;
- (xx) Service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies, laundry or dry cleaning establishments) or other non-retail uses greater than 5,000 square feet in the aggregate, except for offices and storage facilities incidental to a primary retail operation;
- (xxi) A banquet hall, auditorium or other place of public assembly;
- (xxii) Any dumping, disposal, incineration or reduction of garbage or refuse other than handling or reducing such waste if produced on the premises from authorized uses and if handled in a reasonably clean and sanitary manner;
- (xxiii) A training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers); provided, however, this prohibition shall not be applicable to onsite employee training by an occupant of the Shopping Center incidental to the conduct of its business at the Shopping Center; or
- (xxiv) A gymnasium, sports or health club or spa greater than 5,000 square feet.

**AT&T**

DocuSign Envelope ID: 00DD9FD5-6C73-42BF-A6P0-001SB9241AD0

Tenant shall have exclusive rights to sell wireless communication products and services within the Shopping Center, excluding anchor Tenants of over 10,000 square feet.

**BEST BUY**

Landlord shall not permit any person or entity other than Tenant to sell, rent, service and/or warehouse (and, if applicable, installation in motor vehicles) the following product categories: electronic equipment or appliances (including, without limitation, televisions, stereos, video recorders); major household appliances (including, without limitation, refrigerators, freezers, stoves, microwave ovens, dishwashers, washers and dryers); personal computers and peripherals, computer software; car radios, stereos, tape decks or phones; entertainment software including compact discs, music videos and prerecorded tapes; telephones, telecopy, facsimile and photocopy machines; photographic cameras or equipment; or any other related items without Tenant's prior written consent which may be granted or withheld in Tenant's sole and absolute discretion. This Article shall not apply to (i) Movies to Go for the rental of prerecorded video tapes, or (ii) the sale of video games by existing tenants or occupants of the Shopping Center in their respective locations and store configurations existing as of the date of full execution of this Lease.

**BUY BUY BABY**

Prohibited Uses. A. As to the Shopping Center, any of the following uses:
1. Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;
2. 2. Any operation primarily used as a storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;
3. Any "second hand" store, "surplus" store provided, however the foregoing restriction shall not apply to high quality second hand shops such as, for example only, Plato's Closet or Play it Again Sports (as said stores operate as of the Effective Date);
4. Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);
5. Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);
6. Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, ficticious going-out-of-business sale, lost-our-lease sale or similarly advertised event;
7. Any central laundry, dry cleaning plant, or Laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted, so long as its on-site premises are located more than 150 feet away from the Premises);
8. Any automobile, truck trailer boat, or recreational vehicle sales, leasing, display or body shop repair operation;
9. Any bowling alley or skating rink;
10. Any live performance theater, auditorium, meeting hall, sporting event, or other entertainment use (provided, however, that temporary, limited performances that are incidental to the primary use of the business operation being conducted by an occupant may be allowed (such as a book reading at a book store));
11. Any living quarters, sleeping apartments, or lodging rooms;
12. Any veterinary hospital or animal raising or boarding facilities (except as permitted below);
13. Any mortuary or funeral home;
14. Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications

by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Borders and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or massage parlor [except for therapeutic massages given in connection with the operation of a first class day spa or health club];

15. Any so-called "head shop", or other establishment primarily selling or exhibiting drug-related paraphernalia;
16. Any bar, tavern, or other establishment selling alcoholic beverages for on- or off premises consumption provided, however, this prohibition shall not include (i) any restaurant otherwise allowed pursuant to Item 35 of this Exhibit M provided such restaurant's annual gross revenues from the sale of alcoholic beverages does not exceed 50% of such restaurant's annual gross revenues and (ii) a first class wine or liquor store provided (x) such use is located outside of the building shown as "Sports Authority" on Exhibit B hereto and (y) not more than five thousand (5,000) square feet or Floor Area in the Shopping Center in the aggregate, shall be devoted to such use:
17. Any catering or banquet hall;
18. Any flea market, amusement or video arcade, pool or billiard hall, night club, discotheque, or dance hall;
19. Any training or education facility, including but not limited to: beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center; provided, however, this prohibition shall not include first class test preparation or other similar educational facilities such as Kaplan or Sylvan Learning Center (as such businesses operate as of the Effective Date) provided (i) such use is located outside of the building shown as "Sports Authority" on Exhibit B hereto and (ii) not more than five thousand (5,000) square feet of Floor Area in the Shopping Center in the aggregate, shall be devoted to such use;
20. Any gambling facility or operation, including but not limited to: off-track or sports betting parlor; table games such as black-jack or poker; slot machines; video poker/blackjack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not apply to governmental sponsored gambling activities, or charitable gambling activities, so long as such governmental and/or charitable activities arc incidental to the business operation being conducted by the Occupant;
21. Any unlawful use;
22. Any pawn shop, check-cashing store, gun shop, or tattoo parlor;
23. Any church or other place of religious worship;
24. Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube oil change service, tire center or gasoline or service station or facility;
25. Any carnival, amusement park or circus.
26. Any medical clinics;
27. Any supermarket, except that an upscale, boutique-type food store of the type normally operated in the Des Moines metropolitan area (such as, by way of example, Zagara 's, Whole Foods, Fresh Fields, or Wild Oats), provided, that such store shall not occupy more

than the greater of 27,000 square feet of Floor Area or the Floor Area of the premises shown as 'Whole Foods" on Exhibit B hereto, anti shall be located outside of the building shown as "Sports Authority" on Exhibit B hereto (except that an upscale, boutique-type food store shall be permitted to be located within the Premises);

28. Any office use, other than: (x) office space used in connection with and ancillary to a permitted retail use hereunder; and (y) medical offices (but not clinics or labs) or retail offices providing services commonly found in similar first-class shopping centers in the Des Moines metropolitan area (for example, financial services, real estate brokerage, insurance agency, banking, travel agency), provided (i) such use is located outside of the building shown as "Sports Authority" on Exhibit B hereto and (ii) not more than ten thousand (I 0,000) square feet of Floor Area in the Shopping Center in the aggregate, shall be devoted to such use;
29. Any hotel/motel;
30. Any daycare center;
31. Any veterinary office, except as may be incidental to a permitted full-line pet and pet supply store operating in at least 15,000 square feet of Floor Area and located at least 100 feet away from the Premises (except that a full-line pet and pet supply store shall be permitted to be located within the Premises); such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from in front of the Premises; no pet or pet supply store shall be located within 100 feet of the Premises;
32. Any children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's");
33. Any karate center;
34. Any movie theater;
35. Any restaurant Serving meals for on- or off-premises consumption except that such use may be permitted provided such use is located outside of the building shown as "Sports Authority" on Exhibit B hereto and (ii) not more than ten thousand ( 10,000) square feet of Floor Area in the Shopping Center in the aggregate, shall be devoted to such use;
36. Any beauty parlor or nail salon, except that such use may permitted provided (i) such use is located outside of the building shown ns "Sports Authority" on Exhibit B hereto and (ii) not more than three thousand (3,000) square feet of floor Area in the Shopping Center in the aggregate, shall be devoted lo such use;
37. Any health spa, exercise facility or similar type business except that such use may be pemited provided (i) such use is located outside of the building shown as "Sports Authority" on Exhibit B hereto and (ii) not more than five thousand (5,000) square feet of Floor Area in the Shopping Center in the aggregate, shall be devoted to such use; or
38. Any store primarily selling merchandise which is classed as "odd lot," "closeout," "clearance," "discontinued," "cancellation," "second," "factory reject," "sample," "floor model," "demonstrator," "obsolescent," "over stock," "distressed," "bankruptcy," "fire sale" or "damaged", such as, for example, "Grossman's Bargain Outlet", "Contractor's Warehouse", "Big Lots", "Liquidation World", or "Odd Job"; the retailer commonly known as "Christmas Tree Shops" shall be deemed not to violate the foregoing restriction.

B. As to Related Land, any of the uses listed in Items I, 2, **4,** 5, 14, 15, 21, 22, and 25 above. Landlord shall not lease, rent or occupy or permit to be occupied any portion of the Shopping Center or any "Related Land" (hereinafter defined) for any of the "Prohibited Uses" that pertain to the Shopping Center or the Related Land, as the case may be (as set forth in Exhibit M hereto annexed), provided, however, that as to any future Related Land, the foregoing restriction shall not apply to the extent that any Prohibited Uses are otherwise permitted under leases entered into prior to the date on which such land becomes Related Land. Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or itself, for the sale, rental or distribution, at retail or at

wholesale, either singly or in any combination, of items contained in any of the following respective categories of merchandise: (a) infant, juvenile and children's furniture and equipment (including, without limitation, infant, juvenile and children's: cribs, beds, mattresses, bedding, changing tables, gliders, rockers (including coordinating ottomans), high chairs, lamps, walkers, play yards, play pens, car seats, booster seats, cradles, carriages, strollers, toy and clothing chests, swings, or any other furniture or equipment similar to the foregoing enumerated items) (collectively, "Restricted Furniture"); (b)

clothing, layettes, apparel, shoes and/or accessories for infants, juveniles and children 0-4 years in age; and maternity clothing (collectively, "Restricted Clothing"); and (c) merchandise, products and services targeted for use by or for infants, juveniles and children 0-4 years in age (including, without limitation, infant, juvenile and children's: toys, books, food, formula, indoor and/or outdoor play and recreational equipment, audio and video cassettes or equipment, safety items, feeding items, nursing items, health and beauty care items, drug remedies, diapers, wipes, bathroom items (including, without limitation, personal care devices and other bathroom appliances, accessories and toiletries). Notwithstanding the foregoing, any tenant or subtenant in the Shopping Center shall have the right to utilize its respective premises for the sale, rental

and/or distribution of Exclusive Items within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such sales, rental and/or distribution area) not to exceed the lesser of (A) five percent (5%) of the Floor Area of such tenant's or subtenant's premises, or (B) two thousand (2,000) square feet of Floor Area within such tenant's or subtenant's premises; provided, however, in no event shall any tenant or subtenant have the right to sell more than one thousand (1,000) square feet of Floor Area within such tenant's or subtenant's premises for the sale of Restricted Furniture. In addition to the foregoing, Landlord shall not lease, rent or occupy or permit any other tenant or occupant of the Shopping Center or Related Land to operate a (x) hair cutting salon specializing primarily to a clientele of infants, juveniles or children; (y) photo studio specializing primarily to a clientele of infants, juveniles or children; and/or (z) development, learning or fitness center specializing primarily to a clientele of infants, juveniles and children 0-4 years in age similar to a Gymboree, My Gym or Little Gym. With respect to Related Land, Landlord shall not lease, rent or occupy, or permit to be leased, rented or occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or itself, any premises in the Related Land for the operation of a Direct Competitor.

**COST PLUS**
No part of the Shopping Center shall be used for office or residential purposes or as a theater, auditorium, meeting hall, school, church or other place of public assembly, "flea market," gymnasium, health club, dance hall, billiard or pool hall, massage parlor, video game arcade, bowling alley, skating rink, car wash, facility for the sale, leasing or repair of motor vehicles, night club or adult book or adult video store (which are defined as stores at least ten percent (10%) of the inventory of which is not available for sale or rental to children under 15 years old because such inventory explicitly deals with or depicts human sexuality). No restaurant shall be permitted in the Shopping Center within two hundred (200) feet of the main entrance of the Store.

**FAMOUS FOOTWEAR**
Landlord covenants, warrants and agrees that it has not and shall not, throughout the term hereof, lease space in the Exclusive Use Area to another tenant that devotes more than twenty percent (20%) of its gross leasable area to the sale of shoes or other footwear, nor shall Landlord permit any tenant or occupant of the Exclusive Use Area to use more than twenty percent (20%) of its gross leasable area for the sale of shoes or other footwear. Notwithstanding the foregoing, this Section 11 shall not apply to any tenant that occupies less than 2,000 square feet in the Exclusive Use Area.

**FIVE BELOW**
7.3 As of the date hereof and for so long as Tenant is operating under its Permitted Use (subject

to the Permitted Closures (defined below)), Landlord shall not lease, rent, occupy or permit to be occupied or used, any space in the Shopping Center principally for the sale of teen and pre-teen oriented variety and general merchandise at price points that are primarily $10 and less (the "Exclusive Items" and Tenant's "Exclusive Use"); provided, however, Tenant's exclusive right set forth in this Section 7.3 shall be reinstated upon Tenant's re-opening for the Permitted Use, although any tenant who has entered into a lease while Tenant's exclusive right set forth in this Section 7.3 hereunder is not in effect shall be permitted to continue such use after the after re-opening for the Permitted Use. The provisions of this Section shall not be construed to prohibit: (i) any existing tenant situated within the Shopping Center which has, as of the Effective Date, the right to handle and sell such items, from handling and selling those certain items, but only to the extent permitted in such tenants' lease and Landlord agrees not to amend any lease to permit additional rights for the sale of such items or otherwise consent to an assignment, sublease or similar transfer that would permit additional rights for the sale of such items; (ii) any tenant occupying 20,000 square feet or more of contiguous space under one trade name from selling those items that such tenant normally and customarily sells in a majority of its other locations; or (iii) a tenant who sells such Exclusive Items on an incidental basis of less than the lesser of (i) fifteen percent (15%) of the sales space within its premises, and (ii) seven hundred fifty (750) square feet of space therefor. If a store opens or operates in the Shopping Center that violates Tenant's Exclusive, then (except for a Rogue Tenant (defined below) until the time period set forth below), upon 10 days' prior notice to Landlord, (a) monthly installments of Fixed Rent shall be automatically reduced by fifty percent (50%) until such violation ceases, and (b) if such violation continues for a period of 60 days, Tenant, at Tenant's option, shall have the right to terminate this Lease by providing written notice to Landlord within 30 days after the expiration of such 60 day period. If Tenant exercises its right to terminate provided in (b), upon termination, both parties shall be released from all future obligations under this Lease except those provisions that expressly survive the termination of this Lease. If Tenant does not exercise its right to terminate provided in (b) within eighteen (18) months after the violation, Tenant shall be deemed to have waived its right to terminate as provided in (b) and Tenant shall resume payment of full Fixed Rent. The remedies heretofore set forth are cumulative and are in addition to all other legal and equitable remedies to which Tenant is entitled. The reduction of Fixed Rent as provided in this Section is not an offset or abatement of Rent, but is the negotiated and agreed upon Fixed Rent amount for the Premises if the occurrences set forth in this Section arise. Notwithstanding anything above to the contrary, and so long as Landlord inserts Tenant's exclusive use rights in all future lease and other occupancy agreements in the Shopping Center and agrees not to amend any existing (as of the Effective Date) lease to permit additional rights for the sale of such items or otherwise consent to an assignment, sublease or similar transfer that would permit additional rights for the sale of such items, in the event another tenant at the Shopping Center, who is subject to Tenant's exclusive, breaches the restriction set forth in violation of the provisions of its lease (a "Rogue Tenant"), Tenant shall not be entitled to avail itself of the remedies set forth above for a period of one hundred twenty (120) days so long as Landlord shall promptly proceed diligently and in good faith to pursue the enforcement of Tenant's rights and cause such violation to be cured, including litigation. In the event such violation continues for a period of one hundred twenty (120) days, Tenant shall then be entitled to the remedies set forth above; provided, however, that in the event such violation continues for a two (2) year period, Tenant shall either (x) terminate this Lease by providing Landlord with written notice thereof within sixty (60) days after the expiration of such two (2) year period, or (y) return to paying full Fixed Rent hereunder 7.4 As of the date hereof and during the Term of this Lease, Landlord shall not lease, rent, occupy or permit to be occupied or used, any space in the Shopping Center for the following uses (collectively, "Restricted Uses"): (a) bowling alley; (b) arcade; (c) tavern or bar, unless such use is incidental to a restaurant use; (d) health club, spa or gymnasium, however one (1) of these three (3) uses is permitted
so long as the use is not more than 4,000 s/f, is not located within two hundred feet (200') of any demising wall of the Premises, and, if a spa, is a nationally recognized and reputable spa and does not provide or offer illegal, illicit services, or massages of a sexual nature; (e) night club or

discotheque; (f) any "second hand" or "surplus store" provided, however, a nationally known second hand store such as Play It Again Sam, Plato's Closet, and/or Once Upon a Child is permitted; (g) any mobile home park, trailer court, labor camp, junkyard, or stockyard; (h) any dumping, disposing, incineration, or reduction of garbage (exclusive of dumpsters and related trash removal equipment located in the rear of any building); (i) any fire sale, bankruptcy sale or auction house operation (except for sales of another class of tenant required by Law); 0) any laundromat; (k) any automobile, truck, trailer or R.V. sales, leasing, rental, cleaning, display or repair; (I) any skating rink; (m) any living quarters, sleeping apartments, or lodging rooms; (n) a veterinary hospital, animal raising facilities, or pet store selling live or dead animals (a first class pet store selling live animals and veterinary clinic associated with such first class pet store selling live animals is permitted so long as it is not located directly adjacent to the Premises); (o) any mortuary; (p) check cashing, unless such use is incidental to a bank; (q) liquor store; (r) medical office or medical facility; provided, however, one (1) urgent care facility of not more than 5,000 s/f and located no closer than 200 feet from the Premises is permitted; (s) off-track betting business; (t) billiard or pool hall; (u) adult book or adult video tape store (which are defined as stores in which greater than five percent (5%) of the inventory is not for sale to minors because of its explicit sexual nature); (v) office use; provided, however, ( 1) any office used by any tenant or occupant of the Shopping Center shall be permitted so long as such office use is incidental to such tenants' or occupants' retail use of their respective premises and (2) two office spaces may be located in the Shopping Center if neither space is located within one hundred fifty feet (150') of any demising wall of the Premises, neither space exceeds 3,500 square feet, and such office use is customarily found in other similar first-class shopping centers located in the metropolitan area in which the Premises is located; and (3) Retail Service Offices (defined below) shall be permitted subject to the restrictions set forth in the following paragraph; (w) military recruitment center, or (x) cash for gold or similar operation. The Restricted Uses shall not apply to any Shopping Center tenant ( or its permitted successor in accordance with the terms of the lease of the predecessor as the same exists as of the Effective Date) that is subject to a lease that is in effect prior to the Effective Date; however, to the extent that Landlord has a right to approve or deny another
tenant's change of use, Landlord will enforce the Restricted Uses.

Notwithstanding anything to the contrary contained herein "Retail Service Offices" (herein so called), which are defined as offices which cater to the general public and are typically found in first class shopping centers, such as banks, insurance agents, travel agents, realtors and stock brokers, shall be permitted, provided that: (A) the total aggregate leasable floor area for Retail Service Office use shall not exceed 7,000 square feet of gross leasable area of the Shopping Center, (B) no individual permitted Retail Service Office use may contain more than 3,000 square feet of leasable floor area, and (C) no Retail Service Office use shall be located within two hundred (200) feet from the Premises.

**GUITAR CENTER**

Landlord shall not permit any tenant at the Shopping Center (including Phase One or Phase Two of the Shopping Center and any future additions to the Shopping Center) to conduct any business which, in any manner engages in the sale, rental, or repair of any of the products or services set forth in Paragraph 1.8 of this Lease ("Exclusive Use"). Notwithstanding the foregoing, Landlord shall not be considered in violation of this non-compete provision to the extent of a use which violates the Exclusive Use by any tenant of the Shopping Center whose lease predates the execution of this Lease, and which preexisting lease does not require such other tenant to abide by the terms of this non-compete provision.

1.8 Permitted Use. For the purpose of the sale, rental, and repair of guitars, amplifiers, keyboards,

percussion, live sound, DJ equipment, lighting, recording, computers for music and entertainment production applications, video production/editing equipment, and other musical instruments and related products, music books and sheet music, music and video software and other accessories and items related thereto, or items which are a technological evolution of the foregoing and any other legal purpose ("Permitted Use"). (See Paragraph 6 for further provisions.) Landlord expressly represents and warrants the following: (i) Notwithstanding Exhibit C attached hereto - Restricted, Prohibited and Exclusive Uses ("Prohibited and Exclusive Uses"), Tenant shall be permitted to sell vintage and used musical instruments and gear and said sales shall not be considered a violation of this Lease, nor shall said sales be considered in violation of the Prohibited and Exclusive Uses; (ii) Tenant shall have the right to use up to 500 square feet for purposes of musical instruction and lessons, which use shall not be considered a violation of this Lease, nor shall it be considered in violation of the Prohibited and Exclusive Uses.

Permitted Use. Paragraph 1.8 of the Lease is hereby modified to include lessons and instruction of musical instruments.

**JASON'S DELI**
Landlord agrees that Landlord shall not lease or permit the leasing or subleasing of or sale of any space in the Shopping Center during the term of this Lease and any extensions thereof to any person or entity who will utilize the space, or any part thereof, as a delicatessen or other restaurant. Notwithstanding anything contained herein to the contrary, this provision shall not apply to any space in the Shopping Center leased to anchor or major tenants. The term "anchor or major tenants" shall mean any tenant leasing 10,000 square feet or more space in the Shopping Center.

**LESLIES POOL**
Excluding Best Buy, SportMart, Marshall's, World Market and Borders, Tenant will have the exclusive right to sell swimming pools, swimming pool supplies, spas, spa supplies and related services at this property. Landlord represents and warrants to Tenant that Tenant's use, while operating a store for the sale of Swimming pool and spa supplies, swimming pools, spas and patio furniture, will not be in violation of any exclusives or other agreements which Landlord may have with other lessees.

**MARSHALLS**
Landlord agrees that as long as any retail sales activity shall be conducted in the Demised Premises the Shopping Center shall not be used (a) for any non-retail purposes (repairs, alterations and offices incidental to retailing, and banks and small loan offices, not being deemed non-retail), or (b) for any entertainment purposes such as a bowling alley, skating rink, cinema, bar, nightclub, discotheque, amusement gallery, poolroom, health club, massage parlor, sporting event, sports or game facility, off-track betting club (c) or for any establishment which sells or displays pornographic materials or (d) for any establishment which sells or displays used merchandise or second hand goods. No restaurants or establishments selling food prepared on premises for consumption on or off premises shall be located in the Shopping Center, except (a) restaurants may be located in the Future Build Area as shown on the Lease Plan, (b) up to a maximum of 8,000 square feet in the aggregate of restaurants may be located to the west of the Demised Premises, provided that no such restaurant is located closer than 200 feet to the demising wall of the Demised Premises, and (c) up to a maximum of 8,000 square feet in the aggregate of restaurants (excluding restaurants located in the Future Build Area) may be located to the north of the Demised Premises, provided that no such restaurant shall be located closer than 300 feet to the front door of the Demised Premises.

Landlord agrees that, during the term of this lease, no other premises in the Shopping Center shall at any time contain more than fifteen thousand (15,000) square feet of floor area therein used or occupied for, or devoted to, the sale or display of soft goods (as defined by the trade from time to

time), including in the: computation of such floor area one-half (1/2) of all floor area in any aisles, corridors or similar spaces adjacent to or abutting any racks, gondolas, shelves, cabinets, counters or other fixtures or equipment containing or used for the sale or display of soft goods.

**OFFICE DEPOT**

Tenant's Exclusive: (i) educational and school supplies; and (ii) the sale, resale or remanufacturing of ink and/or toner, either separately, new or into used cartridges. Furthermore, as of the date of this First Amendment and continuing through the end of the Lease Term, the portion of Tenant's Exclusive relating to "cellular telephones and telecommunications equipment and related devices" shall not apply to: (y) the 3,100 square foot premises shown on Exhibit A and currently occupied by AT&T Wireless, or (z) a retailer occupying at least 20,000 square feet of floor area within the 39,530 square foot premises shown on Exhibit A and currently occupied by Best Buy.

Subject to the rights of the existing Occupants of the Water Tower Place Shopping Center, to the extent those exclusives bind the EJ Development Parcel, the following restrictions shall apply to the use and occupancy of the EJ Development Parcel:

1. Landlord shall not permit any other tenant or occupant of the EJ Development Parcel, or grant or give consent with respect to any other existing or potential tenants or Occupants of the EJ Development Parcel, to the extent such consent may be legally withheld, other than Tenant, to: (i) use more than the lesser of five percent (5%) of its floor area, or one thousand (1,000) square feet of floor area (in the aggregate), for the sale, leasing, distribution or display of office or school supplies, office furniture, office machines and other office or school related equipment, computers, computer hardware, software and related equipment; cellular telephones and telecommunications equipment and related devices (including personal digital assistance ["PDA"] and the like), or "'copy/print services" (as hereinafter defined) or (ii) be primarily engaged in the sale, leasing, distribution or display of any of the items set forth in (i) above. No portion of any real property located on University Avenue between 22nd Street and Interstate 35 in which Landlord or any of the principals, members or owners of Landlord or any entity affiliated with Landlord or under Landlord's control (collectively, "Landlord Related Parties"), now or may subsequently be acquired or leased by Landlord (or any Landlord Related Parties) shall be leased or occupied by or conveyed to any other party for an office supply store or a copy/print service center. Further, the exclusive granted by this Section shall also not apply to the Clocktower Square Shopping Center, located at 2800 and 2900 University A venue, West Des Moines, Iowa, which is owned in part by principals of Landlord. "Copy/print services" is herein defined as a facility or center (whether in-store or free standing) providing any one or more of the following products and/or services: (a) photocopying and facsimile and printing services, such as reproduction and printing services including full, self, coin and color copying, graphic design, desktop publishing, scanning, faxing and imaging services and binding, collating and finishing of documents; (b) mail services, including mailbox rental or mailing; or ( c) shipping, labeling and packaging services.

2. No portion of the Shopping Center shall be used or occupied for any of the following purposes: theater; movie theater, auditorium, meeting hall, library or reading room or other place of assembly; automobile sales or repairs; bowling alley, pool hall or skating rink; bar serving alcoholic beverages ( except as an incident to a full kitchen restaurant operation); funeral parlor; massage parlor; hotel or lodging facilities; gun range; off track betting establishment (except incidental sales of state lottery tickets); a so-called "flea market" or other operation selling used goods ( except excluding antiques, estate merchandise, "upscale merchandise" or consignment merchandise); any business or use which emits offensive odors, fumes, dust or vapor, or constitutes a public or private nuisance, or emits loud noise or sounds which are objectionable, or which creates a fire, explosive or other hazard; manufacturing facility; warehouse ( except incidental to a retail operation); adult book store or similar store selling or exhibiting pornographic materials as a substantial part of its business; night club, discotheque or dance hall.

3. Except where shown on the Site Plan attached to the Lease as EXHIBIT B, the following shall be prohibited at any location in the Shopping Center within one hundred feet ( 100') of the closest

demising wall of the Premises: any sports or entertainment facility (including, without limitation, a gymnasium, health club, racquet club, physical fitness facility).

4. The following shall be prohibited at any location in the Shopping Center within one hundred feet (100') of the closest demising wall of the Premises: restaurant (excluding ice cream parlors); amusement center, arcade, virtual reality, laser tag or game room; or school (including, without limitation, trade school or class sessions, but excepting incidental customer training in the use of computer hardware or software sold by Tenant or by any other Occupant of the Shopping Center permitted to engage in such sales).

5. Landlord covenants and agrees that no portion of the Shopping Center shall be used for offices excepting (i) offices incidental to retail uses, and (ii) offices providing services to the general public and customarily found in similar shopping centers (e.g., banking for finance services, real estate or securities brokerage services, financial or tax planning services, accounting, insurance or legal services, optical, medical or dental services or travel agencies).

**ROSS**

Ross Prohibited Uses: Tenant has entered into this Lease in reliance upon representations by Landlord that Landlord's Parcel is and shall remain retail in character, and, further, no part of Landlord's Parcel shall be used for office (except as provided in Section 3.2.1 (b)(i) below) or residential purposes, or as a theater, auditorium, meeting hall, schoo4 church or other place of public assembly, "flea market," mortuary, pet store retailers, veterinary services or pet vaccination clinic or overnight stay pet facilities (except as provided in Section 3.2.l(b)(ii) below), health club/gymnasium (except as provided in Section 3.2.1 (b )(iii) below), dance hall, billiard or pool hall, massage parlor, video game arcade, bowling alley, skating rink, car wash, facility for the sale, display, leasing or repair of motor vehicles, night club, on-premises consumption of alcoholic beverages except as incidental to a primarily restaurant use, including any night club, bar, sports bar, or any restaurant where the on premises consumption of alcohol exceeds forty percent (40%) of gross sales (and which shall include Buffalo Wild Wings, Elephant Bar and BJ's Brewhouse regardless of the percentage sale of alcohol, and other similar establishments), except that such use shall be permitted in the premises identified on Exhibit Bas "North Facing Retail" so long as the public entrance to such use is facing the north, facility offering gambling to the public (including any so called Internet cafe that offers gambling to the public, off track betting facility, casino or gaming facility), provided that the incidental sale of lottery tickets shall be permitted, and the sale of adult products or adult bookstores or adult audio/video products stores (which are defined as stores in which at least ten percent (10%) of the inventory is not available for sale or rental to children under the age of majority in the state in which the Store is located because such inventory explicitly deals with or depicts human sexuality). No ATM or similar machine shall be permitted in Landlord's Parcel within one hundred (100) feet of the front and side perimeter walls of the Store, except if located wholly within the interior of another tenant's or occupant's premises. Landlord shall not permit the sale of whole bean or ground coffee in Landlord's Parcel by a nationally known specialty coffee retailer, having (i) one thousand (1,000) stores or more, and (ii) leasing or occupying up to five thousand (5,000) square feet of Leasable Floor Area. Further, no restaurant or other "High Intensity Parking User" (as hereinafter defined) shall be permitted in Landlord's Parcel within three hundred (300) feet of the front and side perimeter walls of the Store, except that restaurants shall be permitted in the premises identified on Exhibit Bas "North Facing Retail" so long as the public entrance to any such use is facing the north. A "High Intensity Parking User" is a tenant or occupant whose use requires more than five (5) parking spaces per one thousand (1,000) square feet of Leasable Floor Area in accordance with either customary shopping center practices or governmental regulations, whichever has a higher parking requirement.

The following uses shall be permitted in Landlord's Parcel: (i) Retail Service Offices. Retail Service Offices, which are defined as offices which cater to the general public and are typically found in shopping centers, such as banks, insurance agents, travel agents, realtors, stock brokers, and dental or medical offices, shall be permitted in Landlord's Parcel provided that: (A) the total

aggregate Leasable Floor Area permitted for such use shall not exceed ten percent (10%) of the Leas able Floor Area of Landlord's Parcel, (B) no individual Retail Service Office use may contain more than two thousand five hundred (2,500) square feet of Leasable Floor Area, and (C) no individual Retail Service Office shall be located within one hundred fifty (150) feet of the front and side perimeter walls of the Store (provided that notwithstanding the foregoing one hundred fifty (150) foot radius restriction, Retail Service Offices shall be permitted to operate anywhere within the area identified on Exhibit B as "North Facing Retail" so long as the public entrance to any such use is facing the north). Notwithstanding anything the foregoing and anything contained in Section 3.2.1 (a) above, Landlord shall be permitted to use the premises identified on Exhibit B as "Landlord's Office" for general office use by the Landlord entity only for the conduct of Landlord's business of operating the Landlord's Parcel. (ii) Pet Store Retailer. A nationally or regionally recognized pet store (and veterinary services (including vaccination clinics) or overnight-stay pet facilities ancillary to such pet store use) shall be permitted in Landlord's Parce4 provided that such pet store retailer is not located within one hundred fifty (150) feet from the front and side perimeter walls of the Store (provided that notwithstanding the foregoing one hundred fifty (150) foot radius restriction, such pet store retailer shall be permitted to operate anywhere within the area identified on Exhibit B as "North Facing Retail" so long as the public entrance to any such use is facing the north). (iii) Health Club/ Gymnasium. One (1) health club or fitness center shall be permitted in Landlord's Parcel provided that such use is (A) operating in more than five thousand (5,000) square feet of Leasable Floor Area, and (B) not located within one hundred fifty (150) feet from the front and side perimeter walls of the Store (provided that notwithstanding the foregoing one hundred fifty (150) foot radius restriction, Retail Service Offices shall be permitted to operate anywhere within the area identified on Exhibit B as "North Facing Retail" so long as the public entrance to any such use is facing the north). (iv) Existing Tenants. The Ross Prohibited Uses set forth in Section 3.2.1 (a) are subject to the rights of the Existing Tenants listed on Exhibit L – Existing Tenants, who, in accordance with the terms of existing leases or occupancy agreements in effect on the Effective Date cannot be prohibited from so operating, for the balance of the term(s) of such existing lease(s) or occupancy agreement(s) and any renewal or extension terms. Landlord covenants and agrees that if Landlord has the right to consent to a change in use of the premises occupied by any such Existing Tenant(s), Landlord shall not consent to a change in use which violates the Ross Prohibited Uses set forth in Section 3.2.1 (a)."

Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Landlord's Parcel (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of Landlord's Parcel to (a) use its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use more than fifteen thousand (15,000) square feet of Leasable Floor Area of its premises for the sale of apparel ( except for discount department stores in excess of eighty five thousand (85,000) square feet of Leasable Floor Area). For purposes of this Section 15.3, "Off Price Sale" shall mean the retail sale of merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's everyday price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, A.J. Wright, Pallas Paredes, Nordstrom Rack, Goody's, Factory 2U, Burlington Coat, Stein-mart, Filene's Basement, Gordmans and Beall's Outlet.)"

**ULTA**
Tenant's Protected Uses: (i) the retail sale of cosmetics, fragrances, health and beauty products and accessories, hair care products and accessories; personal care appliances; skin care products, and body care products; and (ii) the operation of a full service beauty salon. The term "full service beauty salon" for purposes of this Section shall be defined as the offering of any of or a combination of the following services: hair care (including, without limitation, cutting, styling, hair treatments, highlighting, tinting, coloring, texturizing, smoothing and hair extensions); facials; esthetician

services; skin care services (skin treatments for face and body); beauty treatments/services; hair removal (including, without limitation, waxing, threading and tweezing for face and body); eye lash extension services; nail services; and therapeutic massage. Tenant's Exclusive: Tenant shall have the exclusive right to conduct any portion of Tenant's Protected Uses in the Shopping Center, and all other tenants or other occupants of any portion of the Shopping Center shall be prohibited from engaging in any portion of Tenant's Protected Uses for so long as Tenant is operating any portion of Tenant's Protected Uses in the Premises (excepting Permitted Closures). Notwithstanding the foregoing, Tenant's Exclusive shall not apply to uses associated with (a) any existing tenant (and, except to the extent Landlord has any control thereover, its assignees, subtenants and licensees) which is open and operating at the Shopping Center as of the Effective Date, but only to the extent such tenant is entitled to conduct Tenant's Protected Uses in the Shopping Center pursuant to its lease as of the Effective Date; (b) any national or regional retail tenant operating in excess of twenty thousand (20,000) square feet in the Shopping Center, provided that such tenant conducts Tenant's Protected Uses as a part of its normal business operations but not as its primary use; or (c) incidental sales (i.e., not more than the lesser of 5% of an occupant's total premises and (a) 500 square feet with respect to premises that are 10,000 square feet or less and (b) 1,000 square feet for larger premises is used for the conduct of any portion of Tenant's Protected Uses).

The following uses are prohibited or restricted during the Term in any portion of the Shopping Center to the extent set forth below (collectively, the "Use Restrictions"):

(a) drive-throughs (except for drive-throughs in the "Permitted Drive-Thru Area" shown on the Site Plan); children's recreational, educational or day care facility; restaurants within two hundred (200) feet of the entrance door of the Premises; the sale or display of merchandise on the sidewalk within one hundred (100) feet of the entrance door to the Premises ( except for first class Shopping Center sidewalk sales of up to 3 days each calendar quarter on the sidewalk directly in front of the retailers storefront, provided that they do not interfere with access to or visibility of the Premises or Tenant's storefront or signs), as well as general Shopping Center prohibited uses set forth on Exhibit E-1 ; and

(b) the use restrictions or prohibitions that exist as of the Effective Date under leases, declarations of covenants or restrictions or other agreements or documents in effect as of the Effective Date which affect any portion of the Shopping Center to the extent set forth in Exhibit E-2 (the "Existing Prohibited Uses"), which Landlord represents and warrants to Tenant are true and complete verbatim extracts from such instruments; and

(c) the exclusive use rights that exist as of the Effective Date under leases, declarations of covenants or restrictions or other agreements or documents in effect as of the Effective Date which affect any portion of the Shopping Center to the extent set forth in Exhibit E-3 (the "Existing Exclusives"), which Landlord represents and warrants to Tenant are true and complete verbatim extracts from such leases and the name of the tenant or party which each exclusive use right benefits.

(Note: See Whole Foods 2$_{nd}$ Amendment for Use exceptions granted to Ulta.)

**VALLEY WEST UNIFORM**

Landlord agrees not to lease space within the Shopping Center to similar businesses whose primary business is selling women's or men's uniform apparel and accessories. Exclusivity shall not apply to existing Shopping Center tenants including Best Buy, Borders, Sports Authority, Cost Plus World Market, Marshalls, or any other tenant over whom Landlord does not have the right to restrict usage.

**WHOLE FOODS**

**7.1.(b) Restrictive Covenant.** Except as prohibited by applicable Laws, Landlord shall not permit in any other portion of the Development,

(i) Any restaurant (including, without limitation any natural foods restaurant such as O'Naturals), salad bar, delicatessen, any other business that sells any prepared foods (including, without limitation, pizza, salad, sandwiches or soups) for on or off premises consumption, bar or cocktail

lounge, coffee store and/or coffee bar, or juice and/or smoothie bar. (ii) Any salon (or other business) that provides hair treatments (haircuts, hair coloring, permanents, etc.), manicures, facials, massages or similar services.
(iii) The sale of produce, meat, poultry, seafood, dairy, cheese, cereals, grains, fruits and vegetables, frozen foods, grocery products, bulk foods, gourmet foods, bakery goods, alcoholic beverages (including beer and wine), body care products, cosmetics, health care items, beauty aids, plants, flowers, vitamins, medicinal herbs, naturopathic or homeopathic remedies, nutritional supplements, coffee beans, smoothies and/or fresh fruit drinks, ice cream, frozen yogurt and/or gelato.
(iv) Any use that would impair Tenant's ability to obtain and/or maintain a license to sell alcoholic beverages (including wine and beer) for on- or off-premises consumption from the Demised Premises.
(v) Any children's recreational facility or day-care facility.
**(c) Exceptions to Restrictive Covenant - General.** Notwithstanding the foregoing, the provisions of Section 7 .1 (b) shall not:
(i) Prohibit Landlord from leasing premises in the Development located outside of the Critical Zone to restaurants that are not natural foods restaurants (such as O'Naturals).
(ii) Prohibit Landlord from leasing premises in the Development that are located more than two hundred (200) feet from the Demised Premises to salons (or other businesses) that provide hair treatments (haircuts, hair coloring, permanents, etc.), manicures, facials, massages or similar services.
(iii) Prohibit Landlord from leasing premises in the Development that are located more than three hundred (300) feet from the Demised Premises to a children's recreational facility or daycare facility.
(iv) Prohibit "incidental sales" of any of the prohibited items described in Section 7 .1 (b)(iii) by any tenant or occupant in the Development. For purposes of the foregoing, a tenant or occupant shall be deemed to be conducting "incidental sales" of such prohibited items only if the aggregate floor area in such tenant's or occupant's premises devoted to the display of such items ( other than those items the sale of which is completely prohibited as provided below) does not exceed the lesser of (1) three percent (3%) of the Rentable Area of such tenant's or occupant's premises, or (2) 200 square feet. Notwithstanding the foregoing, however, the sale of the following (even if such sales be considered only "incidental sales") by any tenant or occupant in the Development is expressly prohibited (1) wine and/or beer for off premises consumption, (2) meat, poultry and/or seafood for off premises consumption, (3) cheese, (4) vitamins, (5) naturopathic and/or homeopathic remedies, and (6) nutritional supplements.

PROHIBITED USES
1. any movie theater, bowling alley, dance hall or discotheque;
2. schools of any nature (including, without limitation any cooking school or cooking classes, beauty school, barber college, reading room, place of instruction, or any other operation serving primarily students or trainees rather than retail customers);
3. any church, synagogue or other religious facility;
4. any gasoline or service station, automotive service or repair business;
5. any facility for the sale, lease or rental of automobiles, trucks, motorcycles, recreational vehicles, boats or other vehicles;
6. any manufacturing facility;
7. any dry cleaner with on-site dry cleaning equipment;
8. any retail operation in which more than twenty (20%) percent of the sales area of such operation is used for the display and/or sale of clothing or goods commonly referred to as close outs, manufacturer's overruns, or excess inventory or manufacturer's seconds or imperfect merchandise, unless retail operation is of the Nordstrom Rack or Saks Off $5_{th}$ variety;
9. any thrift store, pawn shop, or salvation army type store; provided, however, upscale secondhand fashion stores are permissible;
10. any discount retailer (such as, without limitation, "dollar" stores such as Family Dollar);

11. any mortuary or funeral parlor;
12. any coin operated laundry;
13. any children's recreational, educational or day-care facility;
14. any health club, health spa, fitness center, weight room, gymnasium or the like with GLA in excess of 5,000 square feet;
15. any medical marijuana dispensary; or
16. any use inconsistent with the customary character of a first-class retail shopping center (such as, without limitation, any massage parlor, "head" shop, adult book shop or adult movie house, or tattoo or piercing parlor).

**GREENBERG'S JEWELERS:** Tenant shall be granted the exclusive right to operate a jewelry business within the Center.