| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**DAY PITNEY LLP**<br>One Jefferson Road<br>Parsippany, New Jersey 07054-2891<br>(973) 966-6300<br>Attorneys for Creditor<br>Gotham Technology Group, LLC | |
| In re:<br><br>BED BATH & BEYOND INC., et al.<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>Hearing Date: July 11, 2023 |

**MOTION OF GOTHAM TECHNOLOGY GROUP, LLC (I) TO SET AN IMMEDIATE DEADLINE FOR DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT, (II) TO COMPEL PAYMENT OF RELATED CURE COSTS OR ADMINISTATIVE CLAIMS, OR, IN THE ALTERNATIVE, (III) FOR RELIEF FROM THE AUTOMATIC STAY[1]**

Creditor Gotham Technology Group, LLC ("Gotham"), by and through its undersigned counsel, hereby moves for an Order (1) setting a deadline of July 12, 2023 for the Debtor to assume or reject an executory contract with Gotham pursuant to 11 U.S.C. § 365(d)(2); and (2) requiring the Debtor to pay the related unpaid license payments either as cure amounts due in connection with the assumption of the contract or as post-petition administrative expenses. In the alternative, Gotham seeks relief from the automatic stay to allow Gotham to terminate the contract and the underlying software license agreement pursuant to 11 U.S.C. § 362(d) (the "Motion"). In support of the Motion, Gotham states as follows:

---

[1] Pursuant to D.N.J LBR 9013-1, Gotham respectfully requests that the Court waive the requirement to file a separate memorandum of law because the legal grounds for the requested relief are straightforward and well-settled.

- 1 -

115227228.1

## I.  PARTIES AND JURISDICTION

1. Gotham is a New Jersey limited liability company that provides cloud, end user computing, datacenter, collaboration, and cybersecurity solutions, as well as managed services and permanent and temporary technical staffing. Gotham's principal office is located at 5 Paragon Drive, Suite 103, Montvale, New Jersey 07645.

2. On April 23, 2023 (the "Petition Date"), Bed Bath & Beyond Inc. ("Debtor") commenced this Chapter 11 reorganization case (the "Bankruptcy Case").

3. The Debtor continues to manage its business and assets as a debtor-in-possession.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  STATEMENT OF FACTS

Gotham's Contract with the Debtor

6. Gotham's business includes providing hardware and software support subscription services for various network products. One such product is the Palo Alto Networks, Inc. ("Palo Alto") Instant-On Network (ION) 3000, which is a network solution that transfers legacy wide area networks (WANs), enabling the user to combine underlying data transports into a unified hybrid WAN. (*See* June 20, 2023 Certification of Ken Phelan ("Phelan Cert.") ¶ 2.) In essence, the ION 3000 is a high-performing network device that provides critical infrastructure capabilities to a business's network. (*Id.*)

7. In August 2020, Gotham issued a proposal and quotation to the Debtor for hardware, installation, deployment support, data retention, firewall and wide area network

subscription services for the ION 3000 system for a term of three years, broken down into three, one-year intervals. (*Id.* ¶ 3.)

    8.    On or about September 1, 2020, the Debtor accepted the proposal and entered into a binding contract with Gotham (the "Gotham Contract") by issuing three purchase orders to Gotham. (*Id.* ¶ 4.)

    a.    Purchase Order 287514 covered the initial hardware costs and year one of the hardware support and data, firewall and software license subscription agreements and totaled $1,856,567.62 ("Year 1 PO").[2] (*Id.* ¶ 5, Ex. A.)

    b.    Purchase Order 287515 covered year two of the hardware support and data, firewall and software license subscription agreements and totaled $956,674.69 ("Year 2 PO"). (*Id.* ¶ 6, Ex. B.)

    c.    Purchase Order 287508 covered year three of the hardware support and data, firewall and software license subscription agreements and totaled $956,674.69 ("Year 3 PO"). (*Id.* ¶ 7, Ex. C.)

    9.    In conjunction with the acceptance of the Gotham proposal, in around September 2020, the Debtor entered into an End User Agreement/Maintenance Agreement with Palo Alto ("Debtor/Palo Alto Agreement") relating to products including, but not limited to, software-as-a-service, cloud-delivered security services, hardware, and software (including the ION 3000). (*Id.* ¶ 4.)

    10.    For each of the purchase orders, Gotham issued a corresponding invoice for payment. (*Id.* ¶¶ 5-7.) The debtor timely paid the invoices for the Year 1 PO and Year 2 PO. (*Id.* ¶¶ 5-6.) This Motion concerns the Year 3 PO and resulting invoice.

11. On August 27, 2022, Gotham issued to the Debtor Invoice GTGQ27250, which corresponds with the Year 3 PO and totals the agreed upon $956,674.69 (plus taxes). (*Id.* ¶ 8, Ex. D.) The Year 3 Invoice confirms that it governs the one year period commencing on the anniversary of the initial installation of the networking hardware. (*Id.*)

12. The Debtor failed to timely pay the Year 3 Invoice. (*Id.* ¶ 9.)

The Gotham Contract Amendment

13. As of February 2023, the Debtor had still not paid the Year 3 Invoice despite continuing to utilize the hardware, data, firewall and subscription services under the Gotham Contract. As a result, on February 28, 2023, Gotham sent a demand letter for immediate payment, including associated late fees. (*Id.* ¶ 10, Ex. E.)

14. Gotham and the Debtor thereafter engaged in negotiations to amend the Gotham Contract. (*Id.* ¶ 11.)

15. On March 13, 2013, Gotham and the Debtor entered into a Letter Agreement Regarding Invoice GTGQ27250 (the "Letter Agreement"). (Phelan Cert. Ex. F.)

16. Among other matters, the Letter Agreement modified the payment terms for the third year of the Gotham Contract. Specifically, the new payment terms were:

a. The amount due for the first six months of the applicable contract period was agreed to be $400,000, which was payable on March 17, 2023.

b. The amount due for the second six months of the applicable contract period was agreed to be $600,000, which was payable in four equal installments of $150,000 each on March 24, 2023, March 31, 2023, April 7, 2023, and April 14, 2023.

(*Id.* Ex. F at § 2(a)-(b).)

17. Gotham and the Debtor agreed that if the Debtor failed to make any of the payments under the Letter Agreement, in addition to any other rights and remedies under the

---

[2] The purchase orders reflect a three-year service period of October 2020 through October 2023,

- 4 -

Gotham Contract, Gotham would have the right to (i) demand immediate payment of all future installments, (ii) suspend performance under the ("Debtor/Palo Alto Agreement"), and (iii) immediately terminate the Debtor's license. (*Id.* Ex. F.)

18.     The Debtor attempted to make the final $150,000 installment due April 14, 2023 (the "Final Payment"), but the Debtor's check was returned unpaid. (*Id.* ¶ 13.)

19.     To date, the Debtor has failed to make the Final Payment. (*Id.* ¶ 14.)

20.     On a prorated basis, the second six (6) months under the Letter Agreement can be broken down into $100,000 per month from February 27, 2023 through August 27, 2023. Under this breakdown, the Debtor has paid through approximately July 11, 2023, and still owes $150,000 for the time period of July 12, 2023 through August 27, 2023.

21.     Upon information and belief, the Debtor continues to utilize the ION 3000 hardware and data, firewall and subscription services under the Gotham Contract. (*Id.* ¶ 15.) Gotham understands this networking device and associate software to be critical to the networking infrastructure of the Debtor, as it admitted in § 1 of the Letter Agreement. (*See id.* Ex. F at § 1.)

### III.    ARGUMENT

#### A. THE COURT SHOULD SET AN IMMEDIATE DEADLINE FOR THE DEBTOR TO ASSUME OR REJECT THE GOTHAM CONTRACT.

22.     This aspect of Gotham's Motion is governed by 11 U.S.C. § 365, which provides that the Debtor may assume or reject executory contracts prior to confirmation of a plan of reorganization. 11 U.S.C. § 365(a), (d)(2). However, the Court, "on the request of any party to such a contract . . . may order the trustee to determine within a specified period of time whether to assume or reject such contract[.]. 11 U.S.C. § 365(d)(2).

---

but the ultimate subscription period was ultimately August 27, 2020 through August 27, 2023.

23. The Gotham Contract, as modified by the Letter Agreement, is an executory contract for purposes of 11 U.S.C. § 365. "The Third Circuit follows the general rule that intellectual property licenses, including copyright licenses, are executory contracts within the meaning of 11 U.S.C. § 365(c) under the Countryman test." *In re Valley Media, Inc.*, 279 B.R. 105, 135 (Bankr. D. Del. 2002) (footnote omitted) (*citing In re Golden Books Family Entertainment, Inc.,* 269 B.R. 300, 308 (Bankr. D. Del.2001); *In re Access Beyond Tech., Inc.,* 237 B.R. 32, 43 (Bankr. D. Del. 1999).

24. To date, the Debtor has not decided whether to assume or reject the Gotham Contract.

25. In exercising its discretion to set a deadline for assumption or rejection, the Court must balance the Debtor's interest against Gotham's interests. *In re Physician Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001).

26. What constitutes a "reasonable time" to assume or reject an executory contract is within the discretion of the Court based on the facts and circumstances of the case. *In re G-I Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D.N.J. 2004); *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002)). In its analysis, courts consider several facts, including:

> (1) The nature of the interests at stake; (2) the balance of the hurt to the litigants; (3) the good to be achieved; (4) the safeguards afforded those litigants; and (5) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary.

*Id.* (citing *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (Bankr. D.N.J. 1986).

27. The circumstances of this case are unique. The Gotham Contract is a short term agreement that will expire by its terms on August 27, 2023. The Debtor should know by the return date of this Motion if it intends to assume or reject the Gotham Contract. Allowing the

- 6 -

Debtor to defer its decision until after the term ends would permit the Debtor to obtain all of the benefits of the Gotham Contract without affirming its agreement to be bound by its terms.

28. In a near perfect alignment, under a pro-rated basis, the payments the Debtor has made under the Letter Agreement cover through approximately July 11, 2023 – the return date of this Motion. The cure amount required to assume the contract is the Final Payment amount of $150,000. However, there is no detriment to the Debtor or the estate in paying a cure amount in full because that amount would be due to Gotham in any event as a post-petition expense of administration for the remainder of the contract period, i.e. July 12, 2023 through August 27, 2023.

29. There is virtually no risk of a situation in which the Debtor assumes the Gotham Contract and then breaches, resulting in an administrative priority claim instead of a prepetition claim, because the Gotham Contract is set to expire a matter of weeks after payment. Thus, the current situation is to be distinguished from the typical case where delaying a decision on assumption or rejection can protect the estate from incurring potentially costly administrative claims.

30. Put simply, the Debtor needs the Palo Alto software and support to continue operating its network, so for as long as the Debtor is operating it will continue to reap the benefits under the Gotham Contract at the expense of Gotham.

31. Gotham believes the Debtor would not be able to safely and efficiently operate its network without the hardware, software, and support services being provided, which means that the Debtor needs the Gotham Contract in order to preserve and maximize the value of the estate and continue its operations. With those operations generating revenue for the estate, it follows

- 7 -

that the Debtor should pay Gotham for providing the services that allow it to continue operating and generating money.

32. Gotham, on the other hand, would be prejudiced if the Debtor is not forced to immediately assume or reject the Gotham Contract. Specifically, Gotham would be forced to continue to provide post-petition hardware, software, and support services to the Debtor without having been paid for the balance of the contract term and may incur continuing financial obligations vis-à-vis its suppliers of the data, firewall and subscription services.

33. Under these unique circumstances, i.e. unpaid post-petition services for a short window of time, the equitable result is requiring the Debtor to either immediately assume or reject the Gotham Contract, as modified by the Letter Agreement.

34. Put another way, if this Court does not require the Debtor to assume or reject the Gotham Contract **now**, the contract period will quickly run its course without the remaining $150,000 being paid, which will create an administrative claim in that amount by default.

**B. THE COURT SHOULD REQUIRE THE CURE AMOUNT TO BE PAID PROMPTLY UPON ENTRY OF AN ORDER ASSUMING THE GOTHAM CONTRACT, OR, ALTERNATIVELY, SHOULD REQUIRE THE DEBTOR TO PAY SUCH AMOUNT AS AN ADMINISTRATIVE EXPENSE.**

35. As shown above, the cure amount in connection with the assumption of the Gotham Contract is $150,000. If the Gotham Contract is not immediately assumed, Gotham will have a valid administrative claim against the Debtor's bankruptcy estate for the same $150,000 for the network-critical hardware and software services and support it continues to provide, which will begin accruing on a prorated basis on July 12, 2023 and reach its full amount on the expiration of the Gotham Contract on August 27, 2023.

36. In general, "[t]he determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court." *In re HQ Glob. Holdings,*

- 8 -

*Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005).

37. Under this standard, if the Gotham Contact is not assumed, the Debtor should pay Gotham's administrative claim immediately. There is no prejudice to the Debtor resulting from an order to pay its expenses in the ordinary course of its business, and as shown above, Gotham suffers prejudice while the Debtor continues to enjoy the benefits of the agreement without paying the remaining balance.

### C. IN THE ALTERNATIVE, THE COURT SHOULD GRANT GOTHAM RELIEF FROM THE AUTOMATIC STAY TO TERMINATE THE GOTHAM CONTRACT AND THE UNDERLYING SUBSCRIPTION AGREEMENTS.

38. Section 362(d) of the Bankruptcy Code requires courts to grant relief from the automatic stay "for cause," 11 U.S.C. § 362(d)(1)

39. If the Court does not order the Debtor to immediately assume or reject the Gotham Contact, then good cause exists to lift the automatic stay. The Debtor continues to utilize the software subscriptions and support services under the Gotham Contract.

40. Without an immediate assumption and payment, Gotham will be left with no ability to mitigate its losses by terminating the contract, suspending performance of its obligations and causing the termination of the Debtor/Palo Alto Agreement. If the Debtor does not assume the contract now, it will be sending a clear message that it intends to use the services without making payment. This is an unjust result, which dictates that the Court should in the alternative grant Gotham relief from the stay so that it may terminate the Gotham Contract and cut off the services and support to the Debtor. If relief from stay is not granted now, Gotham

will have no practical ability to exercise its remedies under the Gotham Contract, as modified by the Letter Agreement, due to the imminent expiration of the remaining contract term.

41. No prior request for the relief sought in this Motion has been made to this Court or any other court.

42. Gotham respectfully requests a waiver of the 14-day stay periods under Bankruptcy Rule 6004(h) and 6006(d) for any Order entered pursuant to this Motion. Given the timing issues addressed in detail above, a waiver of the stay period is appropriate here. The contract should be assumed immediately and Gotham paid timely.

## CONCLUSION

Based on the foregoing reasons, Gotham respectfully requests that the Court enter an Order (i) setting a deadline of July 12, 2023 for the Debtor to assume or reject the Gotham Contract, as amended by the Letter Agreement; and (ii) requiring prompt payment of the related cure amount upon entry of an order approving assumption of the Gotham Contract, as amended by the Letter Agreement, or as an administrative claim in the amount of $150,000. In the alternative, the Court should grant Gotham relief from the automatic stay.

Date: June 20, 2023

*/s/ Stephen R. Catanzaro*
Stephen R. Catanzaro, Esq.
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054
scatanzaro@daypitney.com
(973) 966-6300

*Attorneys For Creditor*
Gotham Technology Group, LLC

- 10 -

115227228.1