**Exhibit "5"**

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD7C7A

## LEASE MODIFICATION

THIS LEASE MODIFICATION (*"Modification"*), dated as of the 1st day of April, 2021 (*"Modification Date"*) by and between NEWTOWN/BUCKS ASSOCIATES, L.P., a Pennsylvania limited partnership (*"Landlord"*), having an office at 120 Pennsylvania Avenue, Malvern, Pennsylvania 19355 and BED BATH & BEYOND INC., a New York corporation (*"Tenant"*), having an office at 650 Liberty Avenue, Union, New Jersey 07083.

### W I T N E S S E T H :

WHEREAS, Landlord and Tenant are parties to that certain Lease Agreement dated as of June 2, 2000 (as amended and/or modified thereafter, the *"Lease"*), with respect to premises (*"Premises"*) located at the Newtown Shopping Center in Newtown, Pennsylvania (*"Shopping Center"*); and

WHEREAS, Landlord and Tenant desire to modify the Lease on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Modification and other valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    The recitals hereinabove set forth are incorporated into this Modification by this reference. Capitalized terms used, but not defined herein, shall have the meanings ascribed them in the Lease.

2.    Notwithstanding anything contained in the Lease to the contrary, Landlord and Tenant hereby agree that the modifications to the Lease that are outlined in <u>Schedule A</u> hereto shall govern and control from and after the Modification Date.

3.    It is the policy of Tenant (together with its subsidiaries and affiliates, collectively, the *"Company"*) to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act). Landlord shall not, directly or indirectly, solicit or accept from, nor offer, promise or pay any individual or entity (including, but not limited, to any government official) any bribe, kickback or any other improper payment of money or anything else of value. This includes, but is not limited to, any improper payment in exchange for the Company's execution of this Modification. In addition, any individual who is employed by or who represents the Company is prohibited from soliciting, accepting, offering, promising or paying any bribe, kickback or any other improper payment of money or anything else of value. If any such improper actions are observed, Landlord shall use commercially reasonable efforts to inform the Company's Legal Department (Attention: General Counsel) by (i) notice to the address set forth in the Lease, as amended hereby or (ii) by telephoning 908-688-0888.

4.    Landlord and Tenant each warrant and represent to the other that they did not

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD1C7A

deal with any real estate broker in connection with the negotiation, execution and delivery of this Modification, except for Retail Consulting Services (*"Tenant's Broker"*). Tenant shall pay any commission due to Tenant's Broker in connection with this Modification pursuant to a separate written agreement between Tenant and Tenant's Broker. Each party agrees to indemnify, defend, and save the other harmless from and against any and all liabilities, costs, causes of action, damages and expenses, including, without limitation, attorneys' fees, with respect to or arising out of any claims made by any real estate broker, agent or finder (other than Tenant's Broker) with respect to this Modification in breach of the foregoing representation or claiming to have worked with the indemnifying party in connection with the Lease. The provisions of this Section shall survive the expiration or earlier termination of the Lease.

5.      Landlord represents and warrants to Tenant that, as of the date hereof, no third-party consents or approvals (including, without limitation, with respect to easement agreements and/or any lender or beneficiary of a deed of trust) are required in order for the terms and provisions of this Modification to be in full force and effect or, if any such consent is required, Landlord has obtained same prior to its execution hereof. The parties represent and warrant to each other that the person signing on behalf of either Landlord or Tenant, as the case may be, has the authority to do so and for this Modification to be deemed in full force and effect.

6.      Upon the written request of either party following the execution and delivery of this Modification, Landlord and Tenant shall execute an amended/restated short form lease or memorandum for recording, which shall be in form and substance as reasonably acceptable to both parties. In no event shall the amount of Rent or any other monetary terms hereof be included in any such short form lease or memorandum. Further, after the expiration or earlier termination of the Lease, Tenant agrees, upon Landlord's request, to execute and deliver a termination of such short form lease or memorandum in recordable form and this obligation shall survive expiration or termination of the Lease, which termination of memorandum shall be recorded at Tenant's cost and expense. The party requesting the recording of the amended/restated short form lease or memorandum shall record any such short form lease or memorandum at its expense.

7.      The terms and conditions of this Modification shall be binding upon, and inure to the benefit of Landlord and Tenant and their respective heirs, executors, administrators, successors and assigns. Except as specifically amended hereby, the Lease is unmodified, is hereby ratified by the parties hereto and remains in full force and effect. In the event of any conflict or inconsistency between the terms and provisions of the Lease and this Modification, the terms and provisions of this Modification shall govern and control.

8.      This Modification may be executed electronically and in one or more counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Modification to Lease. The execution and transmission of an image of any signed document or document signed by DocuSign (or a similar application) will have the same binding effect as an original bearing an original signature. No party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD1C7A

9.      All late fees/interest charges/attorney fees incurred prior to the date of this Modification are waived and Landlord hereby acknowledges that there is no monetary default by Tenant under the Lease as of the date of this Modification.

[Signature Page to Follow]

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD1C7A

IN WITNESS WHEREOF, the parties hereto have executed this Lease Modification as of the day and year first above written.

**LANDLORD:**

NEWTOWN/BUCKS ASSOCIATES, L.P.,
a Pennsylvania limited partnership

By:  JRL Properties, Inc., its general partner

By: _____
Name: Adam R. Loew
Title: President

**TENANT:**

BED BATH & BEYOND INC.,
a New York corporation

By: John Hartmann
14E2FE9C50CA41C..
Name:  John Hartmann
Title:     EVP, Chief Operating Officer

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD1C7A

## SCHEDULE A

The Lease is hereby amended to reflect that:

1.      The current Term of the Lease will be extended for ten (10) years and will now expire on January 31, 2032.

2.      For the period commencing on February 1, 2022 and ending on January 31, 2032, Fixed Rent shall be paid at the rate of Eighteen and 02/100 Dollars ($18.02) per square foot of Floor Area or Five Hundred Forty Thousand Six Hundred and 00/100 Dollars ($540,600.00) per annum (it being understood that such Fixed Rent shall be paid in equal monthly installments of Forty-Five Thousand Fifty and 00/100 Dollars [$45,050.00]).

3.      Tenant shall continue to retain its right and option to further extend the Term for the two (2) remaining Renewal Periods set forth in Section 2.2.2 of the Lease, on the terms set forth therein, except that the second (2nd) Renewal Period, if exercised, will occur during the period from February 1, 2032 through January 31, 2037 (the *"Second Renewal Period"*); and the third (3rd) Renewal Period, if exercised, will occur during the period from February 1, 2037 through August 14, 2041 (the *"Third Renewal Period"*); provided, however:  (i) during the Second Renewal Period, Fixed Rent shall equal Five Hundred Ninety-Four Thousand Six Hundred Sixty ($594,660.00) per annum; and (ii) during the Third Renewal Period, Fixed Rent shall equal Six Hundred Fifty-Four Thousand One Hundred Twenty-Six Dollars ($654,126.00) per annum.

4.      Landlord shall pay to Tenant the sum of Four Hundred Thousand and 00/100 ($400,000.00) Dollars (*"Tenant Allowance"*) in consideration for Tenant's construction of "Landlord's Special Improvements" (defined below) and to be applied towards costs and expenses of Tenant's construction, refixturing and/or renovation of Tenant's store (including, without limitation, the installation of a solar array system on the roof of the Premises, hard and soft costs and expenses, signage, third party and reasonable in-house labor costs incurred in conjunction therewith, and technology expenses and equipment [e.g., large display monitors, wifi connectivity, etc.]) (collectively, the *"Renovation Work"*).  All Renovation Work shall be subject to the terms and provisions of the Lease (including, without limitation, Article 8 thereof) and shall be performed in accordance with all applicable governmental laws, codes, ordinances, and regulations.  Landlord shall pay the Tenant Allowance to Tenant within thirty (30) days after Tenant's receipt of a fully executed copy of this Modification, failing which Tenant shall have the right to offset such unpaid amount against Rent payable by Tenant under the Lease, together with interest at the Lease Interest Rate from the date such remittance is due until reimbursement or full satisfaction by credit.  The Tenant Allowance is an offset (and not an inducement) for Tenant's construction, on behalf of Landlord, of the Renovation Work.  As used herein, the *"Landlord's Special Improvements"* shall mean those portions of the Renovation Work which are being offset by the Tenant Allowance (which Landlord's Special Improvements, together with any replacements thereof, when completed shall be the property of Landlord, subject to use by Tenant of same during the Term of, and in accordance with, this Lease).  Landlord alone shall

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD1C7A

be entitled to depreciate the Landlord's Special Improvements as an asset for tax purposes, and Tenant shall not recognize income with respect to the Tenant Allowance. Tenant shall be responsible for and herewith agrees to pay all costs of the Renovation Work in excess of the Tenant's Allowance, and the Renovation Work (except for Landlord's Special Improvements), together with any replacements thereof, shall be and remain the property of Tenant throughout the Term, and Tenant alone shall be entitled to the benefits of ownership thereof, including, without limitation, depreciation of same as an asset for tax purposes. Tenant shall endeavor to use the Tenant Allowance by that date which is eighteen (18) months after Tenant's receipt of the Tenant Allowance.

5.    Subject to applicable governmental laws, rules and regulations and other tenants' leases in the Shopping Center as of the Modification Date (each a *"Current Tenant"*), Landlord hereby consents to Tenant: (a) using no more than four (4) parking stalls directly in front of the Premises for curbside pickup for Tenant's customers (*"Curbside Pickup Area"*); and (b) installing signs designating the Curbside Pickup Area (*"Curbside Pickup Signs"*). The Curbside Pickup Signs will be substantially similar to the signs depicted on Schedule B, attached hereto and made a part hereof. In the event that Tenant's use of the Curbside Pickup Area and/or the installation of the Curbside Pickup Signs violates a Current Tenant's lease and Landlord is advised of such violation by the applicable Current Tenant, then Landlord shall use commercially reasonable efforts to obtain such Current Tenant's consent to same. In the event Landlord is unable to obtain such consent after using such commercially reasonable efforts, then Tenant shall promptly discontinue its use of the Curbside Pickup Area and/or remove any Curbside Pickup Signs, as applicable.

DocuSign Envelope ID: EE7DC2DD-7DB8-4065-9644-B3555DDD1C7A

## SCHEDULE B

