| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>Amish R. Doshi, Esq.<br>**DOSHI LEGAL GROUP, P.C.**<br>1979 Marcus Avenue, Suite 210E<br>Lake Success, NY 11042<br>Telephone: 516-622-2335<br>E:Mail: amish@doshilegal.com<br><br>Shawn M. Christianson, Esq.<br>**BUCHALTER, P.C.**<br>425 Market Street, Suite 2900<br>San Francisco, California 94105-2491<br>Telephone: (415) 227-0900<br>Email: schristianson@buchalter.com<br><br>**Attorneys For Oracle America, Inc.** | Case No. 23-11337 (VFP)<br><br>Chapter 11<br><br>Jointly Administered<br><br>Hearing Date: June 27, 2023<br>Hearing Time: 2:00 PM<br>Objection Date: June 26, 2023 |
| In re:<br><br>**BED BATH & BEYOND, INC., et al.,**<br><br><br>**Debtors.** | JUDGE:  HON. VINCENT F PAPALIA<br><br>DOCKET NOS.  29, 708 AND 714 |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING: (1) DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)(A) APPROVING THE AUCTION AND BIDDING PROCEDURES, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING BID DEADLINES AND AN AUCTION, (D) APPROVING THE FORM AND MANNER OF  NOTICE THEREOF, (E) APPROVING THE FORM APA AND (I) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (C) AUTHORIZING THE SALE OF ASSETS, AND (D) GRANTING RELATED RELIEF; and (2) NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Oracle America, Inc., successor in interest to Sun MicroSystems, Inc., Datavantage, Inc. and RightNow Technologies, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 cases, submits this limited objection to and reservation of rights ("Rights Reservation") regarding: (1) *Debtors' Motion for Entry of An Order (1)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling*

*Bid Deadlines and An Auction, (D) Approving the Form and Manner of Notice Thereof, (E)Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets, and (D) Granting Related Relief* [Dkt. No. 29] ("Sale Motion"); and (2) *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Dkt. No. 714] ("Assumption Notice"), filed by Bed Bath & Beyond, Inc., et al. ("Debtors").

I. **INTRODUCTION**

1. In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

   a) First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

   b) Second, the Assumption Notice does not provide an adequate description of the contracts to be assumed and assigned. If Oracle is correctly construing which contracts the Debtors intend to assume and assign, Oracle's records reflect that some of the identified contracts have expired. Thus, these contracts may no longer be executory, unless the Debtors in the interim have renewed the potentially targeted contracts. This will affect whether they may be assumed and assigned. As a result, Oracle is uncertain as to which agreements are at issue, or whether the Debtors' proposed cure is accurate.

   c) Third, the sale is subject to auction and the Stalking Horse (defined below) may not be the ultimate purchaser. Therefore, Oracle is unable to determine whether the ultimate purchaser/assignee is capable of performing under the terms of the contracts which the Debtors seek to assume and assign. Until the ultimate purchaser is known, Oracle reserves its rights on this point.

  d)  Finally, the Proposed APA (defined below) may include the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses which may be contemplated by the Debtors.

  3.  Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.  FACTUAL BACKGROUND

  4.  The Debtors filed the above captioned case on April 23, 2023 ("Petition Date"). The Debtors continue to operate as debtors in possession.

  5.  On the Petition Date, the Debtors filed the Sale Motion which seeks Court authority to sell substantially all assets of the Debtors. Overstock.com, Inc. ("Stalking Horse") is identified in the Sale Motion as the stalking horse bidder.

  6.  On June 13, 2023, the Debtors filed a *Notice of Selection of Stalking Horse Bidder* [Dkt. No. 708] ("Notice")[1]. Attached as Exhibit A to the Notice is the asset purchase agreement between the Debtors and the Stalking Horse ("APA").

  7.  The APA contemplates certain information sharing between the Debtors and the Stalking Horse, which will take place for a period of two years following the Closing Date. (*See*, APA §8.2(d)).

  8.  It is unclear which services will be provided during the post-closing period. Therefore, Oracle reserves all rights in the event this provision purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time.

  9.  Since the sale apparently remains subject to an Auction to be conducted on June 28, 2023 for the Buy Buy Baby Assets, someone other than the Stalking Horse may emerge as the purchaser.

---

[1] On June 21,2023, the Court entered an *Order Authorizing the Debtors to (I) Designate Overstock.com, Inc. as the Stalking Horse Bidder and (II) Enter Into the Stalking Horse Agreement* [Dkt. No. 791].

10. Therefore, Oracle also reserves all rights regarding any subsequent asset purchase agreement which proposes to include transitional use, and which involves an as yet unknown buyer.

11. On June 13, 2023, the Debtors filed the Assumption Notice. Exhibit "A" to the Assumption Notice identifies (a) twenty-four agreements between Oracle America, Inc., and Bed Bath and Beyond, Inc. ("OAI Agreements"), with a cure amount of $1,859,328.96 for one of the OAI Agreements; and (b) two agreements between Datavantage, Inc., and Bed Bath & Beyond, Inc. ("Datavantage Agreements", together with the OAI Agreements, the "Oracle Agreements"), with a cure amount shown of $0.00.

12. If Oracle's current assessment of the designated contracts is correct, then some of the designations may pertain to non-executory agreements, which would not be susceptible to assumption and assignment.

13. Accordingly, further clarity on the targeted contracts must be provided, to allow Oracle to assess the feasibility and appropriateness of inclusion by Debtors of the Oracle Agreements in the Assumption Notice's proposed designations.

## III. ARGUMENT

### A. The Debtors May Not Assume and Assign the Oracle Agreements Absent Oracle's Consent Because the Agreements Pertain to One or More Licenses of Intellectual Property.

14. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

15. Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999),

4

*cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *See, In Re Access Beyond Technologies, Inc.,* 237 B.R. 32, 48-49 (Bankr. D. Del 1999) *citing In Re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988); In Re ANC Rental Corporation, Inc.,* 277 B.R. 226, 235 (Bankr. D. Del. 2002); *In Re Golden Books Family Entertainment, Inc.,* 269 B.R. 311, 316 (Bankr. D. Del. 2001)); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

16. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

17. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreements at this time.

    **B.    The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.**

18. The Assumption Notice does not provide sufficient information for Oracle to determine which contracts are at issue.

19. Without more specific information, Oracle is unable to determine whether it is evaluating the same agreements the Debtors seek to assume and assign.

20. As is noted above, certain Oracle Agreements may no longer be executory, for they may have expired. In addition, in some instances neither support renewals nor governing agreements are identified.

21. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreement for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

22. Under California law,[2] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

23. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

24. To clarify which Oracle contracts Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (a) identification or contract number; (b) the contract date; (c) any associated support or support renewals; and (d) the governing license agreement, if not already identified.

---

[2] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

25. This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, supported, expired or in default, and, if in payment default, the appropriate cure amount.

26. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

27. Oracle reserves its right to be heard on this issue until after the Oracle Agreements the Debtors seek to assume and assign are identified with greater specificity.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

28. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

29. The Debtors have identified a $1,859,328.96 cure amount for one of the OAI Agreements and a $0.00 cure amount for the Datavantage Agreements.

30. However, since the Debtors have failed to provide a complete description of the contracts they seek to assume and assign, Oracle is unable to determine whether the cure amount is accurate.

31. In addition, if the Debtors wish to assume and assign the Oracle Agreements which have expired, Oracle would need to determine whether reinstatement fees would be due and whether reinstatement is an option.

32. Oracle needs more information about which Oracle agreements may be assumed and assigned, in order to confirm the correct cure amount.

33. Therefore, Oracle reserves its right to be heard further regarding the cure until after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

34. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

35. The Stalking Horse may not be the ultimate purchaser as the sale is subject to auction. As of the date of filing of this Rights Reservation, a successful bidder has not been identified.

36. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser and/or the proposed assignee: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

37. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

38. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. Oracle's Agreements Do Not Authorize Simultaneous Use By The Debtors and the Stalking Horse.

39. The APA contemplates that certain services may be provided between the Debtors and the Stalking Horse.

40. Precise information about the nature of these proposed services is not provided.

41. This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreements.

42. It would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Stalking Horse.

43. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

44. Oracle reserves all rights regarding any transitional use, including under any final APA or transition services agreement, pending Oracle's further review of the same.

## IV. CONCLUSION

45. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreements, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: June 25, 2023  
       Lake Success, New York

**DOSHI LEGAL GROUP, P.C.**

*Amish R. Doshi*

Amish R. Doshi, Esq.  
1979 Marcus Avenue, Suite 210E  
Lake Success, NY 11042  
(516) 622-2335  
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.  
**BUCHALTER, P.C.**  
425 Market Street, Suite 2900  
San Francisco, California 94105-2491  
Telephone: (415) 227-0900  
Email: schristianson@buchalter.com

Peggy Bruggman, Esq.  
Alice Miller, Esq.  
**ORACLE AMERICA, INC**.  
500 Oracle Parkway  
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2022, I served a copy of *Oracle's Limited Objection To And Reservation Of Rights Regarding: (1) Debtors' Motion For Entry Of An Order (I)(A) Approving The Auction And Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines And An Auction, (D) Approving The Form And Manner Of Notice Thereof, (E) Approving The Form APA And (I) Establishing Notice And Procedures For The Assumption And Assignment Of Contracts And Leases, (B) Authorizing The Assumption And Assignment Of Assumed Contracts, (C) Authorizing The Sale Of Assets, And (D) Granting Related Relief; And (2) Notice To Contract Parties To Potentially Assumed Executory Contracts And Unexpired Leases* on the parties listed on the below service list via email containing a pdf of the document. In addition, the parties entitled to receive notice by the Court's CM-ECF system were sent an email notification of such filing by the Court's CM-ECF System.

*Amish R. Doshi*
_____

## **SERVICE LIST**

Joshua A. Sussberg, PC – Joshua.sussberg@kirkland.com
Emily E. Geier P.C. – Emily.geier@kirkland.com
Derek I. hunter, Esq. – Derek.hunter@kirkland.com
Ross J. Fiedler – Ross.fiedler@kirkland.com
Michael D. Sirota, Esq. – msirota@coleschotz.com
Warren A. Usatine, Esq. – wusatine@coleschotz.com
Felice R. Yudkin, Esq. – fyudkin@coleschotz.com
Marshall S. Huebner, Esq. – Marshall.huebner@davispolk.com
Adam L. Shpeen, Esq. – adam.shpeen@davispolk.com
Steven Z. Szanser, Esq. – steven.szanzer@davispolk.com
Michael Pera, Esq. – Michael.pera@davispolk.com
David M. Hillman, Esq. - dhillman@proskauer.com
Megan R. Volin, Esq. – mvolin@proskauer.com
Robert J. Feinstein, Esq. – rfeinstein@pszjlaw.com
Bradford J. Sandler, Esq. – bsandler@pszjlaw.com
Paul J. Labov, Esq. – plabov@pszjlaw.com
Colin Robinson, Esq. – crobinson@pszjlaw.com
Fran B. Steele, Esq. – fran.b.steele@usdoj.com
Alexandria Nikolinos, Esq. – Alexandria.nikolinos@usdoj.gov