| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1**<br>Amy E. Vulpio (No. 020581999)<br>White and Williams LLP<br>1650 Market Street, Suite 1800<br>Philadelphia, PA 19103<br>Telephone: (215) 864-6250<br>vulpioa@whiteandwilliams.com<br><br>and<br><br>Lawrence M. Schwab (Cal. Bar No. 85600)<br>Thomas M. Gaa (Cal. Bar. No. 130720)<br>Gaye N. Heck (Cal. Bar No. 170804)<br>**BIALSON, BERGEN & SCHWAB**<br>A Professional Corporation<br>830 Menlo Avenue, Suite 200<br>Menlo Park, California 94025<br>Telephone: (650) 857-9500<br>E-mail:  tgaa@bbslaw.com<br>            gheck@bbslaw.com<br><br>*Attorneys for Salesforce, Inc.* |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>**Hon. Christine M. Gravelle**<br><br>(Jointly Administered) |

**OBJECTION OF SALESFORCE.COM, INC. TO THE PROPOSED ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND CURE COSTS, <u>AND RESERVATION OF RIGHTS</u>**

Salesforce, Inc. (f/k/a salesforce.com, inc.) ("**Salesforce**") and Tableau Software

---

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

("**Tableau**"), by and through their undersigned counsel, hereby file their respective objections and reservation of rights (the "**Assumption And Assignment Objection**")[2] to entry of (I) an order (an "**Assumption Order**") the assumption and assignment of the executory contract (the "**Salesforce Contract**")[3] by and between Salesforce and the Debtors pursuant to, or in conjunction with, (A) the sale of the Debtors' assets (the "**Sale**"), (B) the applicable *Cure Notice*[4] filed by the Debtors, (C) any motion otherwise filed in the Bankruptcy Cases seeking entry of an order approving and authorizing assumption and/or assignment of the Salesforce Contract (individually, an "**Additional Assumption Motion**" and, collectively, the "**Additional Assumption Motions**"), (D) any plan(s) of reorganization (collectively, the "**Plans**") and entry of (II) any order (a "**Sale Order**") approving the Sale *but only* to the extent any such order also approves and authorizes the assumption and/or assignment of the Salesforce Contract and/or any Excluded Salesforce Contract[5] *unless* the Assumption Order and/or (2) the Sale Order, as applicable, includes the provisions and relief substantially as requested in this Assumption and Assignment Objection.

Salesforce does not object to the proposed assumption and assignment of Tableau Contract (as identified on Exhibit "A" incorporated by reference in the Ramirez Declaration, as identified below) or the Cure Costs (as set forth on the Cure Notice) *provided* any Assumption Order and/or Sale Order, as applicable, reserves Tableau's rights with respect to any Excluded

---

[2] Defined Terms used in this Assumption and Assignment Objection, but which are not specifically defined herein, shall have the meanings ascribed to them in the Ramirez Declaration filed concurrently herewith.

[3] The Salesforce Contract means (A) the agreements and orders identified on Exhibit "A" incorporated in the Ramirez Declaration filed concurrently herewith and (B) any and all additional agreements and orders that hereinafter are determined to be executory contracts that must be assumed by the Debtors pursuant to the Sale, the Cure Notice, any other motion seeking to assume and/or assign executory contracts and/or any plan of reorganization and/or assigned by the Debtors to any third party in order for the Debtors or their assigns, as applicable, to realize the same Salesforce Services as currently enjoyed by the Debtors.

[4] *See Notice to Contract Parties to Potentially Assumed Executory Contracts or Unexpired Leases* [ECF 714] (the "**Cure Notice**")

[5] *See* identification of such contracts as set forth in the Reservation of Rights asserted in this pleading.

Tableau Contract (as set forth in the Reservation of Rights).[8]

## RELIEF REQUESTED

Salesforce seeks entry of an Assumption Order (or the Sale Order, as applicable) protecting its rights and interests that includes the following provisions and relief:

**A.** Findings of fact stating that: (1) the Salesforce Contract includes several related agreements that, taken together, provide the Debtors with a comprehensive set of services and these agreements constitute an integrated executory contract for purposes of assumption and assignment of such contract pursuant to 11 U.S.C. §365; (2) the Salesforce Contract constitutes an executory contract subject to assumption pursuant to the pending Sale and Assumption Motion, the Sale, the Cure Notice, any other motion seeking authority to assume and/or assign any executory contract to which Salesforce is a counterparty (an "**Additional Assumption Motion**") and/or any plans of reorganization (collectively, the "**Plans**"); (3) an aggregate monetary default (the "**Salesforce Cure Amount**") exists pursuant to the Salesforce Contract, which includes (i) not less than US$4,892,474.12 that is due and owing, but unpaid, as of June 14, 2023 (the "**Current Monetary Default**") and (ii) such further monetary default amounts (the "**Future Monetary Default**") that may accrue from and after June 14, 2023 through the date the assumption of the Salesforce Contract becomes effective (the "**Effective Assumption Date**") and (iii) any and all monetary defaults (collectively, the "**Additional Salesforce Contract Monetary Defaults**") that may accrue through the Effective Assumption Date, but which remain unpaid as of that date, with respect to any and all agreements and orders not currently is listed on the Cure Notice but which hereafter are identified as executory contracts that may be assumed and assigned (the "**Additional Salesforce Contracts**").[9]

---

[8] *See* identification of such contracts as set forth in the Reservation of Rights asserted in this pleading).

[9] *See* the *Reservation of Rights* concerning such contracts.

B. The requirement that, as a condition of approving and authorizing the assumption of the Salesforce Contract, the Debtors shall: (1) provide Salesforce with specific information identifying any and all agreements and orders (including the executory contract to which Salesforce is a counterparty that currently is listed in the Cure Notice and the Additional Salesforce Contracts) that may be assumed pursuant to the Sale, the Cure Notice, any Additional Assumption Motion or any Plans; (2) serve Salesforce with a revised Cure Notice (the "**Revised Cure Notice**") listing (i) all agreements and orders constituting that are designated for assumption and/or assignment (including, without limitation, the Salesforce Contract and the Additional Salesforce Contracts) and (ii) the specific monetary defaults the Debtors contend must be cured with respect to each such executory contracts to which Salesforce is a counterparty that may be assumed and/or assigned, and (3) pay not less than the aggregate monetary defaults with respect to such contracts through the Effective Assumption Date;

C. The requirement that, in the event the Salesforce Contract and/or the Tableau Contract are not assumed, the Court shall enter an order (a "**Rejection Order**") (1) approving the rejection of such contracts, as applicable, (2) specifying the date such rejection shall be effective (the "**Effective Rejection Date**"), (3) terminating the automatic stay imposed by 11 U.S.C. §362 (the "**Stay**") as it pertains to such contract(s), (4) authorizing, but not requiring, Salesforce to terminate the Salesforce Contract and/or the Tableau Contract, as applicable, without further order of the Court, and (5) terminating any and all obligations of Salesforce and/or Tableau, as applicable, to provide any services to the Debtors or any Salesforce Transition Services (as referenced in subparagraph E, below), from and after the Effective Rejection Date and (6) ordering all such relief shall be effective on the Effective Rejection Date without (i) Salesforce being required to file a separate motion seeking termination of the Stay or (ii) the Court entering any order (other than the Rejection Order);

D.    The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtors and their respective bankruptcy estates (collectively, the "**Bankruptcy Estates**") shall pay all amounts due with respect to all services and/or goods (the "**Salesforce Administrative Expense**") provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (1) the Effective Assumption Date or (2) in the event the Salesforce Contract is rejected, through the Effective Rejection Date.

E.    The requirement that, in the event the (1) the Debtors sell, convey and/or transfer some or all of their assets and/or business operation(s) (the "**Transaction**") to any third party (the "**Buyer**") pursuant to the Sale Order or other order entered by the Court and (2) the Debtors and/or Buyers request that any services be provided by Salesforce or Tableau, as applicable (the **"Transition Services"**) be provided to the Debtors, their Bankruptcy Estates and/or the Buyer in connection with, or subsequent to approval of, the Transaction, pursuant to (i) an agreement by and between the Debtors (as debtors in possession) or other authorized representative of the Bankruptcy Estates and the Buyer (a "**Transition Services Agreement**") or (ii) a Court order, the Debtors and their Bankruptcy Estates shall be obligated pay any and all amounts that are due and owing (the "**Transition Services Claim**") with respect to such Transition Services provided from and after Petition Date to the Effective Rejection Date; *provided, further, that* (3) the Court enter an order specifying that (i) the obligation to provide such Transition Services shall terminate on the Effective Rejection Date of the Salesforce Contract and/or Tableau Contract, as applicable, *unless* Salesforce or Tableau, in its sole discretion, agrees to provide Transition Services after the Effective Rejection Date to the Debtors, any representative of the Bankruptcy Estates, or the Buyer, as applicable, on such terms and conditions as required by Salesforce or Tableau, (ii) the Buyer or other specified person is responsible for payment of all amounts due and owing for the Transition Services provided after the Effective Rejection Date (the "**Post-**

**Rejection Services Obligation**") and (iii) payment of the Post-Rejection Services Obligation does not constitute a waiver or release of Salesforce's or Tableau's rights to payment of the Transition Services Claim or derogate Salesforce's right to assert a right to payment of all amounts due with respect to any and all services and/or goods provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (1) the Effective Assumption Date or (2) the Effective Rejection Date;

  F. Approval of the Reservation of Rights (as set forth hereinafter); and

  G. Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

  This Assumption Objection is based on the matters set forth herein, the *Declaration of Kevin Ramirez in Support of the Limited Objection of Salesforce, Inc. To The Proposed Assumption of Certain Executory Contracts and Cure Costs, And Reservation of Rights* (the "**Ramirez Declaration**") filed in support hereof, the files and the records in this case, and such other and further evidence as may be submitted at or before the trial on this matter.

  Salesforce requests that the Court take judicial notice of the pleadings filed in this case and the facts set forth in the Court's orders, findings of fact and conclusions of law pursuant to Rule 201 of the Federal Rules of Evidence (as incorporated by Rule 9017 of the Federal Rules of Bankruptcy Procedure).

## BACKGROUND

1. Salesforce is a Delaware corporation, and, among other activities, it provides on-demand customer relationship management and software application services (collectively, the "**Salesforce Services**") to its business customers (individually, a "**Salesforce Customer**" and, collectively, "**Salesforce Customers**"). *See* Ramirez Declaration at ¶2.

2. Tableau (which was acquired by Salesforce in 2019), among other activities, provides data analysis and other services (collectively, the "**Tableau Services**") to its business customers (individually, a "**Tableau Customer**" and, collectively, the "**Tableau**

**Customers**"). Salesforce acts on behalf of Tableau with respect to the Tableau Transactions with the Tableau Customers, related Obligations (as identified below) and claims related to the Tableau Services and Tableau Customers that are subject to this declaration. *See* Ramirez Declaration at ¶2.

## THE SALESFORCE CONTRACT

3. Prior to April 23, 2023, the Debtors entered into those certain Order Forms (the "**Order Forms**"),[10] which are governed by their applicable *Master Subscription Agreements* (the "**MSAs**" and, together with the Order Forms, collectively the "**Salesforce Contract**").[11] Pursuant to the Salesforce Contract: (i) the Debtors ordered certain Salesforce Services and became obligated to pay in full the aggregate amounts due pursuant to this contract with respect to such services; (ii) Salesforce became obligated to provide the Salesforce Services to the Debtors; (iii) Salesforce has provided such services to the Debtors; and (iv) the Debtors accepted and utilized, and continue to accept and utilize, the Salesforce Services provided pursuant to the Salesforce Contract. *See* Ramirez Declaration at ¶9.

## THE TABLEAU CONTRACT

4. Prior to April 23, 2023, the Debtors entered into that certain Order Form (the "**Order Form**"),[12] which is governed by the applicable *End User License Agreement* (the "**EULA**" and, together with the Order Form, collectively the "**Tableau Contract**").[13] Pursuant to the Tableau Contract: (i) the Debtors ordered certain Tableau Services and became obligated to pay in full the aggregate amounts due pursuant to this contract with

---

[10] The Cure Amount Summary is attached hereto as <u>Exhibit A</u> and is incorporated by reference here in as if fully set forth.

[11] Due to the confidentiality provisions of the MSAs, a copy of the Salesforce Contract and related invoices (the "**Invoices**") are not attached to my declaration. However, subject to appropriate non-disclosure protections, a copy of the Salesforce Contract and the Invoices will be made available to the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**") in connection with this Assumption Objection.

[12] The Cure Amount Summary is attached hereto as <u>Exhibit A</u> and is incorporated by reference here in as if fully set forth.

[13] Due to the confidentiality provisions of the MSAs, a copy of the Salesforce Contract and related invoices (the "**Invoices**") are not attached to my declaration. However, subject to appropriate non-disclosure protections, a copy of the Salesforce Contract and the Invoices will be made available to the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**") in connection with this Assumption Objection.

respect to such services; (ii) Tableau became obligated to provide the Tableau Services to the Debtors; (iii) Tableau has provided such services to the Debtors; and (iv) the Debtors accepted and utilized, and continue to accept and utilize, the Tableau Services provided pursuant to the Tableau Contract.  *See* Ramirez Declaration at ¶11.

## BANKRUPTCY CASE

5.     On April 23, 2023 (the "**Petition Date**"): (A) Bed, Bath & Beyond, Inc. and the other Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "**Court**") and, thereby, commenced their individual cases under chapter 11 (collectively, the "**Bankruptcy Cases**"); and (B) on April 24, 2023, the Court entered its order directing the joint administration of the Bankruptcy Cases (but not substantively consolidating such cases).[14]

6.     On the Petition Date, the Debtors filed their motion[15] (the "**Sale and Assumption Motion**") seeking entry of an order (the "**Sales Procedures Order**") approving and authorizing, among other things: (A) certain procedures (the "**Sale Procedures**") governing the sale (the "**Sale Transaction**") of substantially all of the Debtors' assets (the "**Assets**") to the successful bidder (the "**Successful Bidder**") at an auction ("**Auction**"); (B) certain procedures governing the assumption and assignment of executory contracts and unexpired leases (the "**Assumption Procedures**"); and (C) the Sale Transaction of the Assets to the Successful Bidder and the assumption and assignment of certain executory contracts (the "**Assumed Contracts**").

---

[14] *See Order (A) Directing Joint Administration of Chapter 11 Cases And (B) Granting Related Relief* [ECF 75].

[15] *See Debtors' Motion for Entry of An Order (I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines* and An Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Approving the Form APA, and (II) (A) Establishing
Notice And Procedures for The Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets And (D) Granting Related Relief [ECF 29]

7. On April 25, 2023, the Court entered its order (the "**Sale Procedures Order**")[16] approving among other things: the Sale Procedures and the Assumption Procedures.

8. On or about June 13, 2023, pursuant to the Sale Procedures Order, the Debtors served their Cure Notice on Salesforce. The Cure Notice identifies (A) the following executory contracts that potentially may be assumed and assigned in connection with the Sale Transaction and (B) the monetary default amounts that the Debtors contend must be cured with respect to each such contract:

| # | Debtor | Counterparty | Contract Description | Cure Amount |
|---|---|---|---|---|
| 1677 | Bed Bath & Beyond Inc. | Salesforce.com, Inc. | (4-606198 SalesForce Service Cloud Renewal for 2022 | $ - |
| 1678 | Bed Bath & Beyond Inc. | Salesforce.com, Inc. | (4-606198 Q-04549814 - salesforce - Fully executed | $ - |
| 1679 | Bed Bath & Beyond Inc. | Salesforce.com, Inc. | (4-606198 Salesforce - Master Subscription Agreement - fully executed | $ 4,592,474.11 |
| 1835 | Bed Bath & Beyond Inc | Tableau Software | Tableau Subscription Renewal | $ - |

*See* Ramirez Declaration at ¶15.

9. The Cure Notice states that the deadline for filing objections to proposed assumption and assignment of the above-identified executory contracts and the Debtors' Proposed Cure Amount is June 26, 2023, at 9:00 a.m. (prevailing Eastern time) (the "**Cure Objection Deadline**"), and any such objection must be received on or before on the Cure Objection Deadline by all parties in interest identified in the Cure Notice.

## THE CURE AMOUNT

10. Salesforce submits that: (A) the list of executory contracts identified on the *Cure Notice* as executory contracts that potentially may be assumed and assigned in connection with the Sale Transaction is incomplete (because it fails to include all Order Forms to which Salesforce and the Debtors are the counterparties that, together with the MSA, constitute the integrated Salesforce Contract governing the Salesforce Services) and fails to correctly state

---

[16] *See, Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and An Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [ECF 92] (the "**Sale Procedures Order**").

-9-

the monetary default (*i.e.*, the Cure Costs) that must be cured as a condition of the assumption of the Salesforce Contract as listed on Salesforce's records;[17] (B) the Salesforce Contract that governs the Salesforce Services is correctly identified on Salesforce's Cure Amount Summary (which is attached as Exhibit "A", to the Ramirez Declaration); and (C) as of June 14, 2023, Salesforce's records show that the monetary default due and owing pursuant to the Salesforce Contract in an amount not less than **$4,892,474.12** (the "**Salesforce Contract Cure Amount**").  *See* Ramirez Declaration at ¶17.

11. Tableau submits that: (A) the executory contract identified as the Tableau Contract on the *Cure Notice* does not accurately identify the executory contracts to which Tableau and the Debtors are counterparties; (B) the Tableau Contract is correctly identified on Exhibit "A" to the Cure Amount Summary; and (C) Tableau's records show that the Debtors have paid all fees due pursuant to the Tableau Contract and, accordingly, the balance owed is $0.00 (the "**Tableau Contract Cure Amount**").  *See* Ramirez Declaration at ¶18.

12. Because the Cure Notice does not correctly identify all the Potentially Assumable Contracts to which Salesforce and/or Tableau are counterparties, it is possible that the Salesforce Contract Cure Amount and/or the Tableau Contract Cure Amount may be increased once all executory contracts to be assumed are determined by Salesforce and the Debtors.[19]  *See* Ramirez Declaration at ¶19.

## GROUNDS FOR THE RELIEF REQUESTED
### The Salesforce Contract Constitutes an Integrated Contract That Must Be Assumed in Its Entirety

13. Pursuant to the U.S. Bankruptcy Code, a debtor-in-possession has the power, with court approval, to assume or reject any executory contract or unexpired lease.  11 U.S.C. §365(b)(1)(A).  As a practical matter, a commercial relationship often includes several

---

[17] Accordingly, the Salesforce Assumption and Assignment Objection requests the Debtors provide further information concerning the executory contract they propose may be assumed pursuant to the Plan.

[19] By the Salesforce Assumption and Assignment Objection, Salesforce reserves all rights with respect to each executory contract not identified in the Cure Notice but that, ultimately, the Debtors seek to assume and/or assign pursuant to the Sale and Assumption Motion, any other motion, or any plan of reorganization.

-10-

agreements that, taken together, constitute an integrated contract. The threshold issue for a court in determining whether to approve the assumption of an executory contract is to identify all of the agreements that constitute the "executory contract" at issue. *Lewis Bros. Bakeries, Inc. v. Interstate Brands Corp. (In re Interstate Bakeries Corp.),* 751 F.3d 955, 961 (8th Cir.2014) (To determine the applicability of §365, the Court "must first identify what constitutes the agreements at issue.")

14. If, as is the situation with respect to the Salesforce Contract, several agreements between the parties exist "it is well-settled that state law governs whether the agreements are separate or indivisible for purposes of §365." *In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (applying New York state law); *In re Adelphia Bus. Solutions, Inc.*, 322 B.R. 51, 55 (Bankr. S.D.N.Y. 2005) (applying Missouri state law); *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th 541, 548, 237 Cal. Rptr. 3d 256, 261 (Ct. App. 2018) (applying California law).

15. In determining whether a series of agreements constitute an integrated contract or separate contracts, the intention of the parties is the first and foremost factor considered by a court. *See e.g., Pirinate Consulting Corp, LLC v. C.R. Meyer & Sons, Co. (In re Newpage Corporation)*, 2017 WL 571478 (Bankr. Del., Feb. 13, 2017); *In re Buffets Holdings, Inc.,* 387 B.R. 115, 120 (Bankr. D. Del. 2008). This determination is made by analyzing the plain language of the Master Agreement between the parties. *Carlisle Corp. v. Uresco Const. Materials, Inc.*, 823 F. Supp. 271, 274 (M.D. Pa. 1993); *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th at 548, 237 Cal. Rptr. 3d at 261 (Ct. App. 2018) *citing* (*Goodman v. Severin* (1969) 274 Cal.App.2d 885, 895, 79 Cal.Rptr. 555.) "[T]o determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself." *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231 (4th Cir.

2007).

16. Where multiple agreements are intended to comprise one contract or transaction, a party may not sever them for purposes of assumption or rejection. "[A]ll of the contracts that comprise an integrated agreement must be either assumed or rejected, since they all make up one contract." *In re LG Philips Displays USA, Inc.,* No. 06–10245(BLS), 2006 WL 1748671, at *4 (Bankr. D. Del. June 21, 2006).

17. In the matter before this Court, the MSA that comprises part of the integrated Salesforce Contract, expressly provides that the governing law is California state law.[20] Salesforce submits that, pursuant to the applicable California law, the Salesforce Services are provided pursuant to the Order Forms and the MSA, and these agreements are intended to provide the Debtors with a comprehensive set of services and functionality. In short, Salesforce submits that all of the agreements identified as the Salesforce Contract constitute an integrated contract under California law.

18. Accordingly, Salesforce submits that, in order for the Debtors (or any assignees in the event of Salesforce Contract is assigned by the Debtors) to utilize the same Salesforce Services (*i.e.,* after assumption of the Salesforce Contract) as the Debtors have utilized until now, the Debtors must assume and assign the entire Salesforce Contract (*i.e.*, all of the agreements that have been identified on Exhibit "A", to the Ramirez Declaration). Simply put: the entire Salesforce Contract – that is, all of the agreements identified on Exhibit "A" to the Ramirez Declaration – constitute an integrated executory contract that must be assumed in its entirety by the Debtors.

19. Salesforce, further, submits that the Cure Notice is deficient because it fails to

---

[20] *See* §12.9 of the MSA. As previously noted, due to the confidentiality provisions of the MSAs, a copy of the Salesforce Contract is not attached to my declaration. However, subject to appropriate non-disclosure protections, a copy of the Salesforce Contract will be made available to the Debtors and the Committee.

identify accurately the integrated Salesforce Contract that must be assumed *in toto*. Accordingly, Salesforce requests that the Court enter an Assumption Order that includes findings of fact that (A) the Salesforce Contract, for purposes of assumption pursuant to 11 U.S.C. §365, is an integrated contract that is comprised of all the agreements identified on Exhibit "A" to the Ramirez Declaration as the Salesforce Contract must be assumed and assigned.

### All Defaults Under an Assumed Contract Must Be Cured

20. Where (as in the case before the Court) the debtor has defaulted on an executory contract, the Bankruptcy Code prohibits the debtor from assuming the contract unless the debtor:

> (A)   cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . .
>
> (B)   compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)   provides adequate assurance of future performance under such contract or lease.

*See* 11 U.S.C. §365(b)(1)(A).

21. "Once an assumption order is entered, the creditor must perform in accordance with the terms of the assumed agreements. . . In other words, *the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement.*". *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (3rd Cir. 2003) (emphasis added); *In re Columbia Gas System Inc.,* 50 F.3d 233, 238–39 (3d Cir.1995) ("the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate. . . .").

22. Salesforce submits that, with respect to the Salesforce Contract, the Debtors are obligated to cure all monetary defaults – that is, the Salesforce Cure Amount (in the amount of $4,892,474.12) -- in full as a condition of assumption of the Salesforce Contract pursuant to 11

U.S.C. §365(b)(1)(A).

23. Salesforce admits, in contrast, that its records show that all amounts due pursuant to the Tableau Contract (as identified on the Account Summary attached as Exhibit "A" to the Ramirez Declaration) have been paid. Accordingly, no additional monies must be paid with respect to the Tableau Contract *unless* additional executory contracts to which Tableau is a counterparty are identified for assumption.

## **RESERVATION OF RIGHTS**

24. Salesforce does not object to assumption of the Salesforce Contract *per se* provided the Assumption Order includes the provisions and relief requested by the Assumption and Assignment Objection.

25. With respect to any and all other executory contracts and/or unexpired leases to which Salesforce is a counterparty other than the Salesforce Contract (as identified on Exhibit "A" to the Ramirez Declaration) (*i.e.*, an Additional Salesforce Contract), Salesforce hereby expressly reserves (the "**Salesforce Reservation of Rights**") all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to any or all such contracts including, without limitation, (a) the right to object to the assumption and/or assignment by the Debtors of any such contract, (b) the right to payment of all monetary defaults and the cure of all non-monetary defaults that exist with respect to each such contract, (c) the right to assert any Cure Costs due and owing with respect to any such contract(s) that hereinafter are designated for assumption and assignment by the Debtors, and/or (d) the right to have the assignment of any such contract specifically conditioned on the Court finding, based on competent evidence, that the actual assignee of such contract is capable of performing all terms and conditions of such Excluded Contract including, without limitation, payment of all amounts that will come due and owing subsequent to any such assignment.

26. Salesforce does not object to assumption of the Tableau Contract identified on Exhibit "A" incorporated by reference in the Ramirez Declaration.

27. With respect to any and all other executory contracts and/or unexpired leases to which Tableau is a counterparty other than the Tableau Contract (as identified on Exhibit "A" to the

-14-

Ramirez Declaration) (*i.e.*, an Additional Tableau Contract), Tableau hereby reserves (the "**Tableau Reservation of Rights**") all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to any or all such contracts including, without limitation, (a) the right to object to the assumption and/or assignment by the Debtors of any such contract, (b) the right to payment of all monetary defaults and the cure of all non-monetary defaults that exist with respect to each such contract, (c) the right to assert any Cure Costs due and owing with respect to any contract(s) that hereinafter are designated for assumption and assignment by the Debtors, and/or (d) the right to have the assignment of any such contract specifically conditioned on the Court finding, based on competent evidence, that the actual assignee of such contract is capable of performing all terms and conditions of such contract including, without limitation, payment of all amounts that will come due and owing subsequent to any such assignment.

WHEREFORE, if the Court determines to approve assumption of the Salesforce Contract, an Additional Salesforce Contract and/or an Additional Tableau Contract, Salesforce and Tableau request entry of an Assumption Order (and, Sale Order if applicable) protecting Salesforce's rand Tableau's rights and interests by including the following findings of facts and relief:

**A.** Findings of fact stating that: (1) the Salesforce Contract includes several related agreements that, taken together, provide the Debtors with a comprehensive set of services and these agreements constitute an integrated executory contract for purposes of assumption and assignment of such contract pursuant to 11 U.S.C. §365; (2) the Salesforce Contract constitutes an executory contract subject to assumption; (3) the Salesforce Cure Amount that must be paid as a condition of the assumption of the Salesforce Contract includes (i) not less than US$4,892,474.12 that is due and owing, but unpaid, as of June 14, 2023 and (ii) such Future Monetary Default that may accrue from and after June 14, 2023 through the Effective Assumption Date and (iii) any Additional Salesforce Contract Monetary Default that may accrue through the Effective Assumption Date, but which remain unpaid as of that date, with respect to

-15-

any and all Additional Salesforce Contracts and/or Additional Tableau Contracts that hereafter are assumed.

  B. The requirement that, as a condition of approving and authorizing the assumption of the Salesforce Contract, the Debtors shall: (1) provide Salesforce with specific information identifying any and all agreements and orders (including the executory contract to which Salesforce is a counterparty that currently is listed in the Cure Notice) that may be assumed pursuant to the Sale, the Cure Notice, any Additional Assumption Motion or Plans; (2) serve Salesforce with a Revised Cure Notice as requested in this pleading;

  C. The requirement that, in the event the Salesforce Contract and/or the Tableau Contract are not assumed, the Court shall enter a Rejection Order (1) approving the rejection of the Salesforce Contract and/or the Tableau Contract, as applicable, (2) specifying the Effective Rejection Date, (3) terminating the Stay as it pertains to such contract(s), (4) authorizing, but not requiring, termination of the Salesforce Contract and/or the Tableau Contract) without further order of the Court, and (5) terminating any and all obligations of Salesforce and/or Tableau, as applicable, to provide any services tor goods to the Debtors or any Transition Services from and after the Effective Rejection Date and (6) authorizing all such relief shall be effective on the Effective Rejection Date without (i) Salesforce being required to file a separate motion seeking termination of the Stay or (ii) the Court entering any order (other than the Rejection Order);

  D. The requirement that, pursuant 11 U.S.C. §§503 and 507, the Bankruptcy Estates shall pay all amounts due with respect to all services and/or goods provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (1) the Effective Assumption Date or (2) in the event the Salesforce Contract is rejected, through the Effective Rejection Date.

  E. The requirement that, in the event the (1) shall enter into a Transaction (as

-16-

identified in this pleading) with any Buyer pursuant to a Sale or other order entered by the Court and (2) the Debtors and/or Buyers request that Salesforce or Tableau provide any Transition Services in connection with, or subsequent to approval of, the Transaction, pursuant to (i) a Transition Services Agreement or (ii) a Court order, the Debtors and their Bankruptcy Estates shall be obligated pay any and all amounts due pursuant to a Transition Services Claim with respect to such Transition Services provided from and after Petition Date to the Effective Rejection Date; *provided that* (3) the Court enter an order specifying that (i) the obligation to provide such Transition Services shall terminate on the Effective Rejection Date applicable to the Salesforce Contract and/or Tableau Contract *unless* Salesforce or Tableau, as applicable, in their sole discretion, agrees to provide Transition Services after the Effective Rejection Date, (ii) the Buyer is responsible for payment of all amounts due and owing for the Transition Services provided after the Effective Rejection Date (*i.e.,* a Post-Rejection Services Obligation) and (iii) payment of the Post-Rejection Services Obligation does not constitute a waiver or release of Salesforce's or Tableau's rights to payment of the Transition Services Claim pursuant to 11 U.S.C. §503 and 507 or derogate Salesforce's right to assert a right to payment of all amounts due with respect to any and all services and/or goods provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (1) the Effective Assumption Date or (2) the Effective Rejection Date;

    F. The requirement that, in the event the (1) shall enter into a Sale Transaction with any Buyer pursuant to a Sale Order or order entered by the Court and (2) the Debtors and/or Buyers request that Salesforce or Tableau provide any Transition Services pursuant to (i) a Transition Services Agreement or (ii) a Court order, the Debtors and their Bankruptcy Estates shall be obligated pay any and all amounts due pursuant to a Transition Services Claim with respect to such Transition Services provided from and after Petition Date to the Effective

Rejection Date; *provided that* (3) the Court enter an order specifying that (i) the obligation to provide such Transition Services shall terminate on the Effective Rejection Date applicable to the Salesforce Contract and/or Tableau Contract *unless* Salesforce or Tableau, as applicable, in their sole discretion, agrees to provide Transition Services after the Effective Rejection Date, (ii) the Buyer is responsible for payment of all amounts due and owing for the Transition Services provided after the Effective Rejection Date (*i.e.,* a Post-Rejection Services Obligation) and (iii) payment of the Post-Rejection Services Obligation does not constitute a waiver or release of Salesforce's or Tableau's rights to payment of the Transition Services Claim pursuant to 11 U.S.C. §503 and 507 or derogate Salesforce's right to assert a right to payment of all amounts due with respect to any and all services and/or goods provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (1) the Effective Assumption Date or (2) the Effective Rejection Date;

       G.    Approval of the Salesforce Reservation of Rights and the Tableau Reservation of Rights; and

       H.    Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

Dated: June 25, 2023                              Respectfully submitted,

                                                          WHITE AND WILLIAMS LLP

                                                          */s/ Amy E. Vulpio*
                                                          Amy E. Vulpio (No. 020581999)
                                                          White and Williams LLP
                                                          1650 Market Street, Suite 1800
                                                          Philadelphia, PA 19103
                                                          Telephone: (215) 864-6250
                                                          vulpioa@whiteandwilliams.com

    -and-

BIALSON, BERGEN & SCHWAB,
A Professional Corporation
Thomas M. Gaa, Esq.
Gaye N. Heck, Esq.
830 Menlo Avenue, Suite 201
Menlo Park, CA 94025
Telephone: (650) 857-9500
Fax: (650) 494-2738
E-mail: Tgaa@bbslaw.com

*Attorneys for Creditor Salesforce, Inc., and Tableau Software*