# EXHIBIT C

SUBLEASE

BETWEEN

BED BATH & BEYOND INC.,

and

BUY BUY BABY, INC.,

**CLACKAMAS, OREGON**

Dated as of _1/22/_, 2020

AGREEMENT OF SUBLEASE (*"Sublease"*), made as of the 22nd day of January, 2020, between BED BATH & BEYOND INC., a New York corporation, having an office at 650 Liberty Avenue, Union, New Jersey 07083 (*"BBBY"*), and BUY BUY BABY, INC., a Delaware corporation, having an office at 650 Liberty Avenue, Union, New Jersey 07083 (*"BABY"*).

## W I T N E S S E T H

**WHEREAS** by Lease Agreement dated as of January 22, 2020 (the *"BBBY Lease"*) between 12535 SE 82ND AVE LLC, a Nevada limited liability company (*"Prime Landlord"*) as landlord, and BBBY, as tenant, Prime Landlord leased to BBBY a certain retail premises containing approximately forty-two thousand eight hundred forty-two (42,842) square feet of Floor Area (the *"Premises"*) located at 12535 SE 82nd Avenue, Clackamas, Oregon (as depicted on a site plan annexed hereto as Exhibit X, the *"Landlord's Property"*), together with all appurtenances and rights relating thereto, as more particularly described in the BBBY Lease; and

**WHEREAS**, the BBBY Lease is subject to that certain Ground Lease dated August 1, 2011, by and between State of California Public Employees' Retirement System and Lexington Toy Clackamas L.P., as assigned to Prime Landlord by that certain Assignment and Assumption of Ground Lease dated November 1, 2013 (the *"Ground Lease"*), evidence of which was documented in a Memorandum of Lease filed in Clackamas County, Oregon and recorded on December 5, 2012 as Document No. 2012-080041 and an Assignment and Assumption of Ground Lease recorded on November 5, 2013 as Document No. 2013-075371.

**WHEREAS**, BBBY desires to sublease to BABY, and BABY desires to hire from BBBY, a portion of the Premises, consisting of approximately sixteen thousand nine hundred sixty-eight (16,968) square feet of Floor Area (the *"Subleased Premises"*), together with certain rights, benefits, privileges and easements appurtenant thereto, as more particularly set forth herein.

**WHEREAS**, BBBY desires to retain a portion of the Premises consisting of approximately twenty-four thousand six hundred twenty-four (24,624) square feet of Floor Area, together with certain rights, benefits, privileges and easements appurtenant thereto, as more particularly set forth herein (the *"BBBY Premises"*).

**WHEREAS**, the balance of the Premises consists of one thousand two hundred fifty (1,250) square feet of Floor Area that will be shared between BBBY and BABY and

2

makes up part of the "Shared Services" (as defined in Section 20 below).

**NOW THEREFORE**, in consideration of the mutual covenants contained herein, it is agreed as follows:

1.  Definitions. All capitalized terms not expressly defined in this Sublease shall have the meanings ascribed to them in the BBBY Lease.

2.  Subleasing of Subleased Premises. BBBY, for and in consideration of the BABY's payment of the rent and performance of the covenants contained in this Sublease, hereby subleases to BABY, and BABY hereby hires from BBBY, the Subleased Premises.

3.  Condition of Subleased Premises. On or before the "Rent Commencement Date" under the BBBY Lease (the "***Rent Commencement Date***"), BBBY shall deliver to BABY the Subleased Premises with the building and all leasehold improvements within the Subleased Premises substantially completed, it being agreed that BBBY shall not be obligated to perform any work or furnish any materials in, to or about the Subleased Premises with respect to fixturing or merchandising.

4.  Term of Sublease. The term ("***Term***") of this Sublease shall commence on the Rent Commencement Date and, unless sooner terminated as herein provided, shall expire one (1) day prior to the end of the term of the BBBY Lease, and shall include any Renewal Periods exercised by BBBY under Section 2.2.2 of the BBBY Lease.

5.  Rental.

    (a)  From and after the Rent Commencement Date, BABY covenants and agrees to pay to BBBY, in lawful money of the United States, base rent (***"BABY Fixed Rent"***) equal to forty percent (40%) of any and all amounts of Fixed Rent due and payable under the BBBY Lease, which amount shall be subject to the "Tenant Offset" defined in Section 4.1.2 of the BBBY Lease; it being agreed that BABY shall be entitled to forty percent (40%) of its share thereof. All installments of BABY Fixed Rent shall be due and payable to BBBY three (3) Business Days (hereinafter defined) prior to the date upon which the corresponding installment of Fixed Rent is due and payable by BBBY to Prime Landlord under the BBBY Lease. As used herein, the term "***Business Days***" shall mean all days except Saturdays, Sundays, and days on which banks located within the State in which the Shopping Center is located are required or permitted to be closed.

3

(b) In addition to the BABY Fixed Rent, BABY covenants and agrees to pay to BBBY, from and after the Rent Commencement Date, the following amounts as additional rent hereunder (*"BABY Additional Rent"*):

(i) forty percent (40%) of all amounts payable by BBBY pursuant to Section 4.3 of the BBBY Lease for Taxes on the Landlord's Property, minus the amounts Prime Landlord is obligated to pay for the Outparcel Pro Rata Share of Taxes or otherwise;

(ii) forty percent (40%) of all amounts incurred by BBBY pursuant to Section 5.1 of the BBBY Lease for the maintenance of the Exterior Areas, minus the amounts (if any) Prime Landlord is obligated to pay for the Outparcel Pro Rata Share of Exterior Areas Charges or otherwise;

(iii) forty percent (40%) of all amounts incurred by BBBY pursuant to Article 9 of the BBBY Lease for the repairs, maintenance and replacement of the Landlord's Property and the Premises as set forth in Article 9, minus the amounts (if any) (A) Prime Landlord is obligated to pay for, or contribute to, same, (B) maintenance, repairs and replacements relating only to the BBB Premises; and (C) maintenance, repairs and replacements relating only to the Subleased Premises;

(iv) one hundred percent (100%) of all amounts incurred by BBBY pursuant to Article 9 of the BBBY Lease and Section 11 of this Sublease for the repairs, maintenance and replacements affecting only the Subleased Premises;

(v) forty percent (40%) of all amounts incurred by BBBY for obtaining and maintaining all policies of insurance BBBY maintains pursuant to Article 10 of the BBBY Lease;

(vi) forty percent (40%) of all amounts payable by BBBY for Tenant's Insurance Pro Rata Share pursuant to Section 10.3.3 of the BBBY Lease;

(vi) forty percent (40%) of all sums expended by BBBY in connection with the maintenance, repair and replacement of the Shared Services pursuant to Section 20 of this Sublease; and

(vii) forty percent (40%) of all other Rent, charges and costs payable, or incurred, by BBBY under the BBBY Lease.

(c) With respect to each amount of the BABY Additional Rent described Section 5(b) above, BABY shall pay same within five (5) Business Days after

4

being billed by BBBY therefor (it being agreed that each such bill delivered to BABY shall be accompanied by reasonable information in support of the applicable sums expended by BBBY). Notwithstanding the foregoing, with respect to any such item of BABY Additional Rent that is payable in installments in accordance with the BBBY Lease, BABY shall make all payments thereof three (3) days Business Days prior to the date upon which the corresponding installment of Additional Rent is due and payable by BBBY to Prime Landlord under the BBBY Lease.

(d) (i) All of the amounts payable by BABY pursuant to this Sublease, including, without limitation, BABY Fixed Rent, the BABY Additional Rent and the "Construction Contribution" (defined in Section 6 below) (collectively, *"Rental"*) shall constitute rent under this Sublease and shall be payable to BBBY or its designee at such address as BBBY shall from time to time direct in writing. If the commencement or expiration of the term of this Sublease is other than the first or last day of a month, as the case may be, the monthly installments of BABY Fixed Rent and BABY Additional Rent payable hereunder for any such month shall be prorated on a per diem basis based on the actual number of days in such month.

(ii) If BBBY shall receive a refund of any amounts from the Prime Landlord with respect to the Subleased Premises pursuant to the terms of the BBBY Lease, or a credit against sums thereafter payable under the BBBY Lease, BBBY shall promptly notify BABY and refund or credit to BABY the portion thereof, if any, which shall have been paid by BABY hereunder.

(iii) BABY shall promptly pay the Rental as and when the same shall become due and payable without setoff, notice, offset or deduction of any kind whatsoever and, in the event of BABY's failure to pay same when due, BBBY shall have all of the rights and remedies provided for in the BBBY Lease or at law or in the equity in the case of nonpayment of rent, including, without limitation, the payment of any late charge in accordance with Section 16.3 of the BBBY Lease or other interest payment due thereon. BABY's obligation to pay Rental shall survive the expiration or sooner termination of this Sublease.

(iv) If any Rental shall not be paid within ten (10) days after the same is due hereunder, such unpaid Rental shall bear interest at the Lease Interest Rate from the date on which such Rental was originally due until the date when paid.

6. <u>BABY Construction Contribution</u>. It is hereby agreed that BABY shall not be responsible for performing any work to the Subleased Premises (other than fixturing and merchandising its store) and BBBY shall perform all of the "Tenant's Work" as defined in Section 3.1 of the BBBY Lease and procure and install all signage permitted

5

by Section 7.1 of the BBBY Lease, all at BBBY's sole cost and expense, subject to the following sentence. BABY shall reimburse to BBBY forty percent (40%) of the costs and expenses incurred by BBBY in connection with its construction of Tenant's Work (other than fixturing and merchandising for the BBBY Premises) and BABY's signage (collectively, the *"Construction Contribution"*) within thirty (30) days after receipt of evidence of the costs thereof from BBBY, and BABY shall be entitled to the benefit of forty percent (40%) of the Tenant Offset set forth in Section 4.1.2 of the BBBY Lease.

7. Use. BABY shall use and occupy the Subleased Premises for the operation of a "Buy Buy Baby" store and for no other purpose. BABY shall have the right, at its expense, to maintain up to four (4) parking spaces to be labeled for use by pregnant women or parents with young children or such other similar specialized parking.

8. Subordination to and Incorporation of the BBBY Lease.

(a) This Sublease and all of the BABY's rights hereunder are and shall remain in all respects subject and subordinate to (i) all of the terms, conditions and provisions of the BBBY Lease, a true and complete copy of which has been delivered to and reviewed by BABY, (ii) any and all amendments or modifications to the BBBY Lease or supplemental agreements relating thereto hereafter made between the Prime Landlord and BBBY, and (iii) any and all matters to which the tenancy of BBBY, as tenant under the BBBY Lease, is or may be subordinate (including, without limitation, the Ground Lease). The foregoing provisions shall be self-operative and no further instrument of subordination shall be necessary to effectuate such provisions.

(b) Except as otherwise expressly provided in this Sublease, BABY assumes and shall keep, observe and perform every term, provision, covenant and condition on BBBY's part pertaining to the Subleased Premises that are required to be kept, observed and performed pursuant to the BBBY Lease and which arises or accrues during the term of this Sublease, and shall otherwise comply with all of the obligations under the BBBY Lease with respect to the Shopping Center.

(c) Except as otherwise expressly provided in this Sublease, the terms, provisions, and conditions contained in the BBBY Lease are incorporated in this Sublease by reference, and are made a part hereof as if herein set forth at length, provided that: (i) BBBY shall not be obligated to perform the obligations of the Prime Landlord under the BBBY Lease, and no representation, covenant, or warranty made by the Prime Landlord in the BBBY Lease shall be deemed to have been made by BBBY for the benefit of BABY under this Sublease, and (ii) BABY shall be substituted for the "Tenant" under the BBBY Lease only with respect to matters relating to or concerning the Subleased Premises. BABY acknowledges and agrees that to the extent any right or

6

obligation of BABY shall be expressly addressed in this Sublease, such terms and provisions herein shall control over any provision with respect to such right or obligation in the BBBY Lease.

   (d) The time limits set forth in the BBBY Lease for the giving of notices, making demands, performance of any act, condition or covenant, or the exercise of any right, remedy or option, are changed for the purposes of incorporation into this Sublease, by lengthening or shortening the same in each instance, as appropriate, so that notices may be given, demands made, or any act, condition or covenant performed, or any right, remedy or option hereunder exercised, by BBBY or BABY, as the case may be (and each party covenants that it will do so), within three (3) Business Days prior to the expiration of the time limit, taking into account the maximum grace period, if any, relating thereto contained in the BBBY Lease. Each party shall promptly deliver to the other party copies of all notices, requests or demands which relate to the Subleased Premises or the use or occupancy thereof after receipt of the same from the Prime Landlord, or from any governmental authority. In the case of any time limit described above that is one (1) or two (2) days after the giving of the notice applicable thereto, such notice shall be delivered personally at the address of BBBY set forth in Section 19 hereof.

   (e) BBBY shall have the same rights and remedies with respect to a breach of this Sublease by BABY as the Prime Landlord has with respect to a breach of the BBBY Lease, as if the same were more fully set forth at length herein, and BBBY shall have, with respect to BABY, this Sublease, and the Subleased Premises, all of the rights, powers, privileges and immunities as are had by the Prime Landlord under the BBBY Lease. BBBY herein shall not be responsible for any breach of the BBBY Lease by the Prime Landlord or any misrepresentation by the Prime Landlord contained therein or any non-performance or non-compliance with any provision thereof by the Prime Landlord.

   (f) Provided BABY is not then in default under this Sublease beyond applicable periods of notice and grace, BBBY covenants and agrees not to voluntarily cancel or surrender the BBBY Lease, except for a termination permitted under Article 11 of the BBBY Lease, or consent to any modification, amendment or supplement to the BBBY Lease which will materially deprive BABY of its rights under this Sublease, without the prior written consent of BABY. If the BBBY Lease is terminated for any reason whatsoever, whether by operation of law or otherwise, except through the sole default of BBBY, BBBY shall not be liable in any manner whatsoever for such termination. BBBY shall promptly forward to BABY any default or termination notice with respect to the BBBY Lease received by BBBY and this Sublease shall terminate in the event of any such termination of the BBBY Lease. A termination of the BBBY Lease

due to the default of BBBY, other than a default caused by BABY under this Sublease, shall be considered a voluntary cancellation or surrender of the BBBY Lease under this subsection 8(f).

9. <u>Quiet Enjoyment</u>. BBBY covenants that as long as BABY shall pay the Rental due hereunder and shall duly perform all the terms, covenants and conditions of this Sublease on its part to be performed and observed, BABY shall peaceably and quietly have, hold and enjoy the Subleased Premises during the term hereof without molestation or hindrance by BBBY, subject to the applicable terms, provisions and conditions of the BBBY Lease and this Sublease.

10. <u>Representations, Warranties and Covenants</u>.

(a) BBBY represents and warrants to BABY as follows as of the date of execution and delivery of this Sublease:

(i) the BBBY Lease is in full force and effect in accordance with, and subject to, all of the terms, covenants, conditions and agreements contained therein;

(ii) the BBBY Lease has not been modified, amended or supplemented as of the date of this Sublease;

(iii) BBBY has not received any notice of any default by BBBY under the BBBY Lease which default remains uncured;

(iv) BBBY holds the entire tenant's interest in the Premises under the BBBY Lease free and clear of any liens, claims, mortgages, charges or encumbrances, subleases and occupancies (other than this Sublease and the BBBY Lease), other than matters to which the tenancy of BBBY, as tenant under the BBBY Lease, is or may be subordinate; and

(v) BBBY has full right, power and authority to enter into this Sublease.

(b) BABY hereby warrants and represents to BBBY that BABY has full right, power and authority to enter into this Sublease.

8

11. <u>Utilities Services; Maintenance, Repairs and Replacements.</u>

(a) During the term of this Sublease, BABY shall be solely responsible for and shall pay the cost of utilities services (including, without limitation, electricity, gas, water, sanitary sewer, alarm and telecommunications) consumed in the Subleased Premises.

(b) During the term of this Sublease, BABY shall perform, at its sole cost and expense, all maintenance, repairs and replacements to the interior, non-structural elements of the Subleased Premises and its signage, in the manner required by Articles 7 and 9 of the BBBY Lease, and such other portions of work required to be made with respect to the Subleased Premises and/or solely for the benefit of BABY as is otherwise agreed to between BBBY and BABY.

12. <u>Enforcement of BBBY Lease.</u> If the Prime Landlord shall default in any of its obligations to BBBY with respect to the Subleased Premises, BBBY shall not, except as and to the extent hereinafter set forth, be obligated to bring any action or proceeding or to take any steps to enforce BBBY's rights against Prime Landlord other than, upon the written request of BABY, making a demand upon the Prime Landlord to perform its obligations under the BBBY Lease with respect to the Subleased Premises. If following the making of such demand and the expiration of any applicable grace period granted to the Prime Landlord under the BBBY Lease, the Prime Landlord shall fail to perform its obligations under the BBBY Lease, then BABY shall have the right to take such action in its own name and BABY shall keep BBBY apprised of its activities in connection with such action. If (a) any such action against the Prime Landlord in BABY's name is barred by reason of lack of privity, non-assignability or otherwise, and (b) the failure of Prime Landlord to perform its obligations under the BBBY Lease has, or may have, a materially adverse effect upon the Subleased Premises or BABY's permitted use thereof, then subject to and upon the following terms, BABY may bring such action in BBBY's name and BBBY shall execute all documents reasonably required in connection therewith, provided that (i) the same is without cost and expense to BBBY, (ii) BABY shall first provide a written indemnification to BBBY in a form reasonably satisfactory to BBBY, (iii) BABY is not in then default under this Sublease, and (iv) BABY shall furnish to BBBY a cash deposit or other security in amount, form and substance reasonably satisfactory to the BBBY securing BBBY against all liability for damages, interest, penalties and expenses (including reasonable attorneys' fees and expenses) resulting from or incurred in connection with such contest.

13 <u>Assignment, Subletting and Encumbrances.</u>

9

(a) Without the prior written consent of BBBY, which consent may be granted or withheld in BBBY's sole and absolute discretion for any reason or no reason whatsoever, BABY shall not (i) assign this Sublease (by operation of law or otherwise), (ii) sublease all or any part of the Subleased Premises, (iii) mortgage, pledge, hypothecate or otherwise encumber its interest in this Sublease or the Subleased Premises or any interest therein, or (iv) grant any concession, license or otherwise permit the Subleased Premises to be used or occupied by anyone other than BABY. Any assignment, sublease, mortgage, pledge, hypothecation or other encumbrance of or under this Sublease without such prior written consent shall be invalid and without force and effect. The sale, transfer, assignment or hypothecation of a "Controlling Interest" (herein defined) in the stock of BABY, however accomplished and whether in a single transaction or in a series of related or unrelated transactions, shall be deemed an assignment of this Sublease. As used herein, "*Controlling Interest*" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities or rights, by contract, or otherwise.

(b) Any <u>assignment</u> of this Sublease, if consented to by BBBY, shall be subject to and conditioned upon compliance with the following terms and conditions:

(i) By written instrument or assignment and assumption, the assignee shall assume and agree to perform and to comply with all of the terms, conditions and agreements of this Sublease on the part of BABY to be kept, performed and observed and to become jointly and severally liable with the assignor for such performance and compliance; and

(ii) A duplicate original of such instrument, in form satisfactory to BBBY, duly acknowledged and executed by the assignor and the assignee, shall be delivered to BBBY within five (5) days following the date of execution thereof.

(c) Any <u>subletting</u> of the Subleased Premises or any part thereof, if consented to by BBBY, shall be subject to and conditioned upon compliance with the following terms and conditions:

(i) The sublease shall provide that it is subject and subordinate to all of the provisions of this Sublease and all of the rights of BBBY hereunder;

(ii) The sublease shall expressly provide that the sublessee shall use and occupy the Subleased Premises being sublet only for the permitted use set forth herein and for no other use whatsoever; and

10

(iii) A duplicate original of the sublease, duly executed by sublessor and sublessee, shall be delivered to BBBY within five (5) days following the date of its execution.

(d) If this Sublease is assigned, or if the Subleased Premises or any part thereof is sublet or occupied by a party other than BABY, whether or not BABY shall have been granted any required consent, BBBY may, after default by BABY, collect rent and other charges from such assignee, BABY or other occupant, and apply the net amount collected to Rental and other charges herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed to be a waiver of the requirements of this Section 13. The consent by BBBY to an assignment or subletting may be granted or withheld in BBBY's sole and absolute discretion and shall not in any way be construed to relieve BABY from obtaining consent to any further assignment or subletting. No assignment or subletting shall, in any way, release, relieve or modify the liability of BABY under this Sublease and BABY shall be and remain liable under all of the terms, conditions, and covenants hereof.

(e) BBBY and BABY each acknowledge and agree as follows:

(i) that this Sublease and all rights of BABY hereunder are in all respects made and shall continue to be subject and subordinate to the BBBY Lease and, as applicable, the Ground Lease; it being acknowledged and agreed that this provision is self-operative, but BABY shall, within ten (10) days of Prime Landlord's request, execute any instrument reasonably requested by Prime Landlord to evidence or confirm the same; and

(ii) provided that Prime Landlord has entered into a Recognition Agreement with respect to this Sublease in accordance with Section 15.5 of the BBBY Lease, if the BBBY Lease shall terminate or expire, this Sublease shall nonetheless continue in full force and effect and BABY shall attorn to the Prime Landlord as a direct lease between Prime Landlord and BABY.

14. <u>Indemnification and Waiver</u>. Except as otherwise provided in Sections 10.1.1 and 10.1.2 of the BBBY Lease, BABY covenants to defend and indemnify BBBY and hold BBBY harmless from and against any and all claims, actions, damages, loss, liability and expense, including reasonable attorneys' fees (collectively, "Damages"), (x) in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Subleased Premises, or any part thereof, or (y) occasioned wholly or in part by any act or omission of BABY and/or its agents, employees or contractors, except to the extent such claims, actions, damages, liability and expense are caused by the acts or omissions of BBBY and/or its agents,

11

employees or contractors. The provisions of this Section 14 shall survive the expiration or earlier termination of this Sublease.

15. <u>Alterations</u>. BABY shall make no structural or exterior alterations, installations, additions or improvements (collectively, "***Structural/Exterior Alterations***") in or about the Subleased Premises or the Exterior Areas without the prior written consent of BBBY in each instance, which consent may be granted or withheld in BBBY's absolute and sole discretion. Any Structural/Exterior Alterations consented to by BBBY shall be performed by BABY at its sole cost and expense and in compliance with all Legal Requirements and the provisions of the BBBY Lease and Ground Lease.

16. <u>Insurance</u>. BBBY hereby agrees that it shall maintain for the benefit of BBBY, BABY and Prime Landlord such policies of insurance (and in such form) as are required to be obtained by Tenant under the BBBY Lease, and BABY shall reimburse BBBY for its share of all premiums and/or deductibles relating to such policies. At BBBY's option during the Term of this Sublease, BABY shall maintain such policies with respect to the Subleased Premises at its sole cost and expense.

17. <u>Destruction by Fire or Other Casualty; Condemnation</u>.

(a) If the Subleased Premises or the Shopping Center are partially or totally damaged or destroyed by fire or other casualty, BABY shall have no right to terminate this Sublease and this Sublease shall not be terminated by reason of such casualty unless the BBBY Lease is terminated by BBBY or the Prime Landlord pursuant to the provisions of the BBBY Lease. BBBY shall give BABY prompt notice of any such termination. Any termination provided for in this paragraph shall be effective on a date specified in such notice, which date shall be not less than three (3) or more than thirty (30) days after such notice is given.

(b) If the BBBY Lease is terminated as the result of a Taking, this Sublease shall likewise terminate.

18. <u>Broker</u>. Each party warrants and represents to the other party hereto that it has not dealt with any brokers in connection with this Sublease. Each party hereby indemnifies and holds the other party hereto harmless from any and all loss, damage, claim, liability, cost or expense (including, but not limited to, reasonable attorneys' fees, expenses and court costs) arising out of or in connection with any breach of the foregoing warranty and representation. The provisions of this Article shall survive the expiration or earlier termination of this Sublease.

19. <u>Notices</u>. Subject to the further provisions of this Article 19, whenever it is provided herein that any notice, demand, request, consent, approval or other communication ("*Notice*") shall or may be given to either of the parties by the other, it shall be in writing and, any Legal Requirement to the contrary notwithstanding, shall not be effective for any purpose unless same shall be given by registered or certified mail, postage prepaid, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, if to BBBY, addressed to BBBY at the address first set forth above, with copies of notices to BBBY also given to General Counsel, Bed Bath & Beyond Inc., 650 Liberty Avenue, Union, New Jersey 07083, and if to BABY, at the address first set forth above, with copies of notices to BABY also given to General Counsel, Buy Buy Baby, Inc., 650 Liberty Avenue, Union, New Jersey 07083, and with respect to both BBBY and BABY, to such other person or other address as may, from time to time, be specified by either party in a written notice to the other party. All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

20. <u>Loading Facilities; Trash Compactor</u>.

(a)  BABY shall have the co-exclusive right, together with the then occupant of the BBBY Premises from time to time (the *"Adjacent Tenant"*), to utilize the exterior loading facilities, the trash container pad and the trash compactor serving the Premises (*"Shared Services"*) on a "24 hour a day", "365 days a year" basis. BABY shall not interfere with the commercially reasonable use of the Shared Services by the Adjacent Tenant.

(b)  BBBY hereby agrees that it shall maintain and operate for the benefit of BBBY (as the current Adjacent Tenant) and BABY all portions of the Shared Services required to be maintained by BBBY under the BBBY Lease (including, without limitation, Article 9 thereof), and BABY shall reimburse BBBY for its share of any such costs and expenses incurred by BBBY (including, without limitation, expenses for the actual removal of the trash located within the Shared Services), except that, subject to Articles 10 and 11 of the BBBY Lease, BABY shall be responsible to repair any damage to the Shared Services which is occasioned by the act or omission of BABY, its employees, agents, delivery services or other contractors.

(c)  BBBY shall (x) cause each new sublease relating to the BBBY Premises to require the Adjacent Tenant thereunder at all times to honor BABY's license with respect to the Shared Services as herein described and cooperate reasonably with BABY in connection with BABY's and the Adjacent Tenant's respective trash and loading activities within the Shared Services. BBBY shall enforce the aforementioned requirements contained in each such new sublease as same affect the Shared Services and BABY's use thereof in connection with its normal loading activities.

13

(d) BABY shall honor the Adjacent Tenant's license with respect to Shared Services as herein described and cooperate reasonably with Adjacent Tenant in connection with BABY's and the Adjacent Tenant's respective trash and loading activities within the Shared Services.

(e) Subject to the foregoing, BBBY shall be permitted to grant to the Adjacent Tenant a co-exclusive license to utilize the Shared Services on a "24-hour a day", "365 days a year" basis for the Adjacent Tenant's normal loading and trash removal activities in the same manner (and subject to the same corresponding terms and conditions described above) as BABY's right to utilize the Shared Services as described above.

21. <u>No Waivers</u>. Failure by either party in any instance to insist upon the strict performance of any one or more of the obligations of the other party under this Sublease, or to exercise any election herein contained, shall in no manner be or be deemed to be a waiver by such party of any defaults or breaches hereunder or of any of its rights and remedies by reason of such defaults or breaches, or a waiver or relinquishment for the future of the requirement of strict performance of any and all of the defaulting party's obligations hereunder. Further, no payment by BABY or receipt by BBBY of a lesser amount than the correct amount of Rental due hereunder shall be deemed to be other than a payment on account, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed to effect of evidence an accord and satisfaction, and BBBY may accept any checks or payments as made without prejudice to BBBY's right to recover the balance or pursue any other remedy in this Sublease or otherwise provided at law or in equity.

22. <u>Miscellaneous</u>.

(a) This Sublease shall be governed by and construed in accordance with the law of the State in which the Shopping Center is located without regard to the conflicts of law principles thereof.

(b) The section headings in this Sublease are inserted only as a matter of convenience for reference and are not to be given any effect in construing this Sublease.

(c) If any of the provisions of this Sublease or the application thereof to any person or circumstance shall, to any extent, be held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Sublease shall not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.

14

   (d) All of the terms and provisions of this Sublease shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns.

   (e) All prior negotiations and agreements relating to this Sublease and the Subleased Premises are merged into this Sublease. This Sublease may not be amended, modified or terminated, in whole or in part, nor may any of the provisions be waived, except by a written instrument executed by the party against whom enforcement of such amendment, modification, termination or waiver is sought and unless the same is permitted under the terms and provisions of the BBBY Lease.

   (f) This Sublease shall have no binding force and effect and shall not confer any rights or impose any obligations upon either party unless and until both parties have executed and delivered same.

   (g) This Sublease and all the obligations of BABY to pay Rental and perform all of its other covenants and agreements hereunder shall in no way be affected, impaired, delayed or excused because BBBY or Prime Landlord are unable to fulfill any of their respective obligations hereunder, either explicit or implicit, if BBBY or Prime Landlord is prevented or delayed form so doing by reason of strikes or labor trouble or by accident, adjustment of insurance or by any cause whatsoever reasonably beyond BBBY's or Prime Landlord's control.

   (h) Each and every right and remedy of BBBY under this Sublease shall be cumulative and in addition to every other right and remedy herein contained or now or hereafter existing at law or in equity, by statute or otherwise.

   (i) At any time and from time to time BABY shall, within ten (10) days after a written request by BBBY, execute, acknowledge and deliver to BBBY a written statement certifying (i) that this Sublease has not been modified and is in full force and effect or, if modified, that this Sublease is in full force and effect as modified, and specifying such modifications, (ii) the dates to which the BABY Fixed Rent and BABY Additional Rent and other charges have been paid, (iii) that to the best of BABY's knowledge, no default exists under this Sublease or, if any do exist, the nature of such default, and (iv) as to such other matters as BBBY may reasonably request.

   (j) This Sublease may be executed in one or more counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Sublease. The transmission of an image of any signed original document will have the same binding effect as an original bearing an original signature. No party may

15

raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

[Signature Page to Follow]

IN WITNESS WHEREOF, the parties hereto have duly executed this Sublease as of the day and year first above written.

**BED BATH & BEYOND INC.**,
a New York corporation

By: _____
Name:  Mark J. Tritton
Title:    President and Chief Executive Officer

**BUY BUY BABY, INC.**,
a Delaware corporation

By: _____
Name:  Glen P. Cary
Title:    President

17

# EXHIBIT X

# SITE PLAN

(attached)



SITE PLAN