

June 26, 2023

David M. Hillman
Partner
d +1.212.969.3470
f 212.969.2900
DHILLMAN@PROSKAUER.COM
www.proskauer.com

**Via Email and ECF**

The Honorable Vincent F. Papalia
United States Bankruptcy Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

**Re: In re Bed Bath & Beyond Inc., Case No. 23-13359**

Dear Judge Papalia:

We represent Sixth Street Specialty Lending, LLC ("Sixth Street") in its capacity as DIP Agent, Prepetition FILO Agent, and successor Prepetition Administrative Agent (each as defined in the Final DIP Order).[1] At 1:00 a.m., the Ad Hoc Bondholder Group (the "AHG") filed a motion to vacate the Interim DIP Order and Final DIP Orders (together, the "DIP Orders") under Rule 60(b) of the Federal Rules of Civil Procedure (made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure) (the "Reconsideration Motion").[2] Although we requested an unredacted copy of the Reconsideration Motion from the AHG's counsel immediately upon filing, Sixth Street did not receive one until 7 hours later, at roughly 8:00 a.m. (and then only from the Debtors). The Court should deny the Reconsideration Motion for three threshold reasons: (1) it is barred under 11 U.S.C. § 364(e), (2) it cannot undo the Interim DIP Order because Rule 60(b) only applies, if at all, to "final" orders, or (3) it was not made within a reasonable time within the meaning of Rule 60(c). In light of the exceptional circumstances presented here, Sixth Street respectfully request that the Court hear these threshold arguments at the hearing scheduled for June 27, 2023.

## Background

The Debtors filed these Chapter 11 Cases on April 23, 2023. The next day, the Court held the First Day Hearing and entered the Interim DIP Order after considering the DIP Motion, the First Day Declaration, the Etlin DIP Declaration, the Kurtz DIP Declaration and argument made

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 729] (the "Final DIP Order").

[2] The AHG represents four creditors holding roughly $185 million (14%) of Senior Unsecured Notes totaling $1.3 billion. Reconsideration Motion at ¶ 19. It is also noteworthy that the Indenture Trustee for the Senior Unsecured Notes serves as a member of the Official Unsecured Creditors' Committee (the "Creditors' Committee"), which supported entry of Final DIP Order and opposes the Reconsideration Motion.

The Honorable Vincent F. Papalia
United States Bankruptcy Court

at the First Day Hearing. The AHG appeared at the First Day Hearing and addressed the Court, but did not oppose entry of the Interim DIP Order.

The Court held the Final DIP Hearing on June 14 to consider entry of the Final DIP Order. At the Final DIP Hearing, the AHG made clear that the only relief it sought was an extension of the Challenge Period. When asked by this Court to clarify what the AHG was seeking, the AHG's counsel stated "To be clear Judge, it's only the [extension of the] challenge period, that's it." *See* June 14 Hr'g Tr. 42-43: 25-15. Sixth Street agreed that the AHG would have the ability to seek an extension of the Challenge Period by filing a request with the Court by June 25, 2023, and such agreement was read into the Court record and memorialized and approved by the Court in the Final DIP Order. Final DIP Order ¶ 43.

The Reconsideration Motion is not a Challenge as defined in the Final DIP Order.[3] Instead, the AHG seeks to vacate the Interim DIP Order—an order that was entered 63 days ago—and the Final DIP Order. Tearing up the DIP Orders directly contravenes Section 364(e) of the Bankruptcy Code, would thrust these chapter 11 cases into chaos, likely render the Debtors' estates administratively insolvent, and would wreak havoc on the DIP financing market throughout the United States if DIP lenders who extend credit justifiably relying on the sanctity of a bankruptcy court's financing order could be faced with an unwinding of that order after already providing financing. Indeed, the relief the AHG seeks would render the protections of Section 364(e) illusory.

The Court need not reach the merits because, under the circumstances here, the Reconsideration Motion should be summarily denied because it contravenes Section 364(e), Rule 60(b) does not apply to the Interim DIP Order, and the Reconsideration Motion and is untimely. Only if the Court concludes otherwise should the merits be briefed and heard.

### **The Reconsideration Motion Is a Blatant End Run Around Section 364(e)**

The Reconsideration Motion should be denied because it is an improper attempt to circumvent Section 364(e) of the Bankruptcy Code. That section provides:

> *[t]he reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.*

---

[3] *See* Final DIP Order ¶ 43 (defining "Challenge" as "a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' stipulations").

2

The Honorable Vincent F. Papalia
United States Bankruptcy Court

The AHG never sought a stay of the DIP Orders and good faith is supported by the uncontroverted evidence as reflected in each DIP Order at paragraph N(iii).[4] Moreover, each DIP Orders further provides at ¶ 35 very clear language on the consequences of an attempt to modify or vacate such orders:

> *Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. The DIP Secured Parties and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Bankruptcy Court or any other court, the DIP Secured Parties and Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.* ***Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim (including the DIP Roll-Up Obligations) or priority authorized or created hereby*** *(emphasis added).*

In reliance on the Interim DIP Orders and the protections of Section 364(e), the DIP Lenders advanced $40 million to the Debtors, and the Prepetition FILO Lenders agreed to allow $36 million of Cash Collateral be used to fund three critical Reserves (including funding for WARN Costs and other prepetition unsecured claims) and consented to the use of millions of dollars of Cash Collateral to fund administrative costs and expenses in the Approved Budget. In exchange for these financial accommodations, these DIP Lenders and Prepetition FILO Lenders received (among other things) DIP Liens on the DIP Collateral to secure the DIP Obligations (which includes the New Money Amount and the DIP Roll-Up Obligations, including the $54 million Emergency Rescue Loan on eve of the Petition Date) and Adequate Protection Liens on DIP Collateral securing Adequate Protection Obligations.

Through the Reconsideration Motion, the AHG now seeks to do precisely what Congress expressly prohibits in section 364(e)—undo the validity of debt and liens granted under the DIP Orders. It is well-settled that the overall policy behind section 364 is to encourage lenders to provide financing to debtors by offering them incentives for their risk taking. *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1488 (9th Cir. 1987).

The AHG tries to skirt the fundamental protections of section 364(e) and states that "this Court has authority to provide the relief requested" because section 364(e) is "only applies (in

---

[4] Paragraph N(iii) of each DIP Order provides "[t]he terms and conditions of the DIP Facility (including the conversion of the Roll-Up Amount into DIP Roll-Up Obligations) and the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties with the assistance and counsel of their respective advisors. Use of Cash Collateral and the credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Secured Parties and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code."

The Honorable Vincent F. Papalia
United States Bankruptcy Court

certain instances to appeals" and not reconsideration motions. *See* Reconsideration Motion ¶39. For support, the AHG cites in *In re Ellingsen MacLean Oil Co.*, 65 B.R 358 (W.D. Mich. 1986), where an unstayed *appeal* of a DIP order was dismissed by two appellate courts under section 364(e). The dispute did not involve any attempted use of Rule 60(b) to gut section 364(e).

The Seventh Circuit Court of Appeals, however, squarely addressed this issue and held that section 364(e) applies to a Rule 60(b) reconsideration motion because, as common sense dictates, the "bankruptcy court's modification of its own orders poses the same risks as does reversal on appeal." *Kham & Nate's Shoes No. 2, Inc.*, 908 F.2d at 1355–56. The rationale for rejecting this argument makes sense—the policy behind section 364(e) strongly implicates its applicability when the order in question is challenged in the bankruptcy court after the lender has relied on the order's protections. As the Seventh Circuit aptly noted, "if creditors fear the rug will be pulled out from under them, they will be hesitant to lend." *Id.* The AHG's interpretation of section 364(e) is also demonstrably at odds with Third Circuit precedent, which has consistently held section 364(e) "seeks to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction . . ." *Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 561 (3d Cir. 1994) *quoting In Matter of EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982). The AHG tactic here is nothing short of a "gotcha" argument that seeks to elevate form over substance; which a court of equity should forcefully reject. Whether by appeal or a Rule 60(b) motion, the result is the same—the relief sought would eviscerate the rights of the lenders.

For these reasons, Section 364(e) and the terms of the DIP Orders require that the Reconsideration Motion be denied.

### **Rule 60(b) Does Not Apply To The Interim DIP Order And The Reconsideration Motion Is Not Timely Under Rule 60(c) In Any Case**

As a threshold matter, Rule 60(b) permits the Court to relieve a party from "a *final* judgment, order, or proceeding." Fed R. Civ. P. 60(b) (emphasis added). The Interim DIP Order is, by definition, not a final order that falls within the scope of Rule 60(b). For that reason alone, the Reconsideration Motion should be denied as it relates to the Interim DIP Order. *See Kham & Nate's Shoes No. 2., Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990) ("Rule 60(b) . . . applies only to final decisions."); *In re Island View Crossing II, L.P.*, 604 B.R. 181, 193 n.6 (Bankr. E.D. Pa. 2019).

Even if Rule 60(b) were to apply in this context, the AHG is still not entitled to relief. The AHG acknowledges that the relief it seeks is "extraordinary" (Reconsideration Motion at ¶11), and "a party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances that justify reopening the judgment." *Folk v. Prime Care Medical*, 2023 WL 3720903 at *1 (3d Cir. 2023) (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008); *see also In re Nortel Networks, Inc.*, 664 Fed.Appx. 157, 158–59 (3d Cir. 2016) (explaining that in bankruptcy proceedings, "[t]o be entitled to relief under Rule 60(b)(6), [a party] must show 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur") (quoting *Cox v. Horn*, 757 F.3d 113, 115 (3d Cir. 2014)). Reconsideration "is to be

4

The Honorable Vincent F. Papalia
United States Bankruptcy Court

granted only when exceptional circumstances prevented the moving party from seeking redress through the usual channels." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir. 2007) ("Relief under this rule is exceedingly rare as relief requires an intrusion into the sanctity of a final judgment.") (internal citations omitted).

Rule 60(b) motions must be made within a "reasonable time." Fed. R. Civ. P. 60(c). "What constitutes a reasonable time depends on a case-by-case examination of the circumstances and includes factors such as finality, reason for delay, the practical ability for the litigant to learn of the ground relied upon earlier, and potential prejudice to other parties." *In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x 242, 246 (3d Cir. 2010) (*citing Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986).

To begin with, the Reconsideration Motion is premised on an allegation that the Debtors did not need DIP financing. This allegation is based on the AHG's counsel's (mis)interpretation of certain financial information. The Reconsideration Motion relies on the declaration of Andrew K. Glenn (Dkt. No 982-2), the lead lawyer representing the AHG.

The AHG's premise directly contradicts the sworn and uncontroverted testimony from Holly Etlin (Dkt 37), a Partner & Managing Director at AlixPartners, LLP, the Chief Financial Officer and Chief Restructuring Officer of Bed Bath & Beyond, Inc. and a seasoned expert with more than 30 years of experience in providing turnaround services for companies in the retail industry.

It also directly contracts the sworn and uncontroverted testimony of David Kurtz (Dkt. 36), the Vice Chairman and the Global Head of the Restructuring Group of Lazard with more than 30 years of investment banking and financial advisory experience to financially distressed companies.

Putting aside the merits of the AHG's position[5], it is clear that the AHG's arguments are based on the amount of cash the Debtors had on hand as of the First Day Hearing. That information could have been elicited by the AHG 63 days ago at the First Day Hearing before the Interim DIP Order was entered. The AHG's counsel was present at the First Day Hearing and declined the opportunity to examine Ms. Etlin and Mr. Kurtz about anything, including the Debtors' cash on hand as of that date. The AHG made the strategic judgment to remain silent. Instead, the AHG's counsel said only this:

> [W]e want to work collaboratively with the debtor. We want to maximize value. We want to be [ ] constructive to get to a resolution that works for all stakeholders. . . . [N]o objections today on an interim basis obviously . . . we do reserve rights to the final hearing. Particular would note that, you know, we may have issue with a certain incremental collateral or liens on avoidance actions going to the DIP. . . . So, you know, we look forward to working with the Court and the debtors' representatives to find the best

---

[5] Sixth Street understands that the Debtors will address the merits and the flawed analysis of the AHG's counsel.

5

The Honorable Vincent F. Papalia
United States Bankruptcy Court

> possible outcome here for the [e]states and their stakeholders and we reserve our rights for the final hearing. Apr. 24, 2023 Hr'g Tr. 69:4–70:5.

Moreover, after the Interim DIP Order was entered but before the Final DIP Hearing, the AHG had nine weeks to probe the Debtors' need for DIP financing and the veracity of the sworn testimony of Ms. Etlin and Mr. Kurtz, either by serving discovery or asking for that information informally. Indeed, in his Declaration, Mr. Glenn acknowledges that he received some of the very financial information on which the Reconsideration Motion is based "from the Debtors in voluntary discovery." Docket No. 982-2 ¶ 6, Ex. 1. Although the Declaration is conspicuously silent about when this information was received, the fact is it could have been known at the First Day Hearing and every day that followed.

Notably, on May 31, an agreement in principle regarding the global case settlement (the "Settlement") was announced in open court. Even then, the AHG said not a word about the Debtors' need for DIP financing, much less any plan to seek reconsideration of the Interim DIP Order. Indeed, knowing full well that the settlement had been reached and was likely to be memorialized at the Final DIP Hearing, counsel for the AHG attended the Final DIP hearing and again said nothing about the Debtors' need for DIP financing or any possibility the AHG might seek reconsideration of the Interim DIP Orders.

The timing of the Reconsideration Motion smacks of litigation gamesmanship and is highly prejudicial. In reliance on the Interim DIP Order, the DIP Lenders advanced $40 million (on top of permitting $54 million in Emergency Rescue Loans on the eve of bankruptcy which reduced the DIP financing need on a dollar-for-dollar basis), and the Prepetition FILO Lenders agreed to allow $36 million of Cash Collateral to fund the Reserves and consented to the use of Cash Collateral to fund the Approved Budget. If the DIP Orders are vacated, the hard-fought Settlement embedded in the Final DIP Order would be unwound, the Reserves would be clawed-back, WARN Costs would be unpaid, and the Chapter 11 Cases would likely be rendered administratively insolvent raising the prospect of an imminent conversion to Chapter 7. *See Coltec Indus. V. Hobgood*, 280 F.3d 262, 276 (3d Cir. 2002) (finding prejudice where party would lose the benefit of the bargain it made, and affirming denial of Rule 60(b) motion). Moreover, "entry of an order ... vacating or otherwise modifying … any DIP Order without the prior written consent of the Required DIP Lenders" constitutes an Event of Default under the Final Order pursuant to Section 7.01(k)(iii) of the DIP Credit Agreement. For these reasons, the Reconsideration Motion is untimely and prejudicial under Rule 60(c).

\* \* \* \* \*

There is no reason to tax the Estates with the costs of full briefing on the merits. Moreover, every day the Reconsideration Motion is pending casts a cloud over the future of these cases and DIP financing market. Thus, only if the Court does not deny the Reconsideration Motion on the threshold grounds described herein at the June 27 hearing should the Court order briefing on or consider the merits. Sixth Street further requests that the Court order the AHG to reimburse Sixth Street and Estate professionals for all fees and expenses incurred in connection with the Reconsideration Motion.

The Honorable Vincent F. Papalia
United States Bankruptcy Court

          Respectfully submitted,

*David M. Hillman*

cc:    Michael Mervis, Esq.
       Maurice Bauer, Esq.
       Joshua Sussberg, Esq.
       Emily Geier, Esq.
       Michael Sirota, Esq.
       Andrew Glenn, Esq.

DUANE MORRIS LLP

*/s/ Morris S. Bauer*
Morris S. Bauer