**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/BBBY. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

**DECLARATION OF
CHRISTIAN TEMPKE IN SUPPORT OF ENTRY OF
AN ORDER (I) APPROVING THE SALE OF ACQUIRED ASSETS
FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS
AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER
INTO AND PERFORM THEIR OBLIGATIONS UNDER THE STALKING HORSE
PURCHASE AGREEMENT, (III) APPROVING ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS, AND (IV) GRANTING RELATED RELIEF**

I, Christian Tempke, declare as follows under penalty of perjury:

1. I am a Managing Director in the Restructuring Group of Lazard Frères & Co. LLC ("Lazard"), investment banker to the Debtors.

2. I am familiar with the negotiations during the sale process and related to the asset purchase agreement (the "Stalking Horse Purchase Agreement") with Overstock.com, Inc. ("Overstock") attached as Exhibit A to the Debtors' *Notice of Successful Bidder and Backup Bidders with Respect to the Stalking Horse Bid and June 21, 2023 Auction* [Docket No. 877] (the "Notice of Successful Bidder") filed on June 22, 2023.[2]

3. I submit this declaration (the "Declaration") in support of the entry of the Sale Order.[3] Except as otherwise indicated, I have personal knowledge of all facts in this Declaration, based on my review of the Debtors' business, involvement with the marketing and sale process with respect to the Debtors' assets, including the Acquired Assets, and information supplied to me by members of the Debtors' management team and the Debtors' other advisors.

4. Based on my experience and involvement with the sale and marketing process for the Acquired Assets (the "Marketing Process"), I believe that the Debtors conducted a thorough

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Stalking Horse Purchase Agreement, the Sale Order, the Bidding Procedures Order, or the Notice of Successful Bidder, as applicable.

[3] As used herein, "Sale Order" shall refer to the *Order (I) Approving the Sale of Acquired Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Their Obligations under the Stalking Horse Purchase Agreement, (III) Approving Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief* filed substantially contemporaneously herewith.

2

and fair Marketing Process transparently, and in good faith. The Marketing Process involved extensive efforts by the Debtors and their advisors including a comprehensive process and hard-fought arms'-length negotiations with multiple potential purchasers. The Stalking Horse Purchase Agreement represents the best value maximizing-transaction available for the Debtors' estates and the Debtors' stakeholders.

5. I am over the age of 18 years and authorized to submit this declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

### **Background and Qualifications**

6. I am a Managing Director in the Restructuring Group of Lazard. Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority. Lazard is a full-service independent investment banking firm providing financial advisory services, including with respect to mergers and acquisitions, capital raising, and restructuring advice, across a broad range of industries. Together with its predecessors and affiliates, Lazard has been advising clients around the world for more than 175 years. Lazard and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Since 1990, Lazard professionals have been involved in over 500 restructurings, representing well over $1 trillion in debtor assets.

7. Lazard provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Lazard

and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Lazard's business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including:  *In re Rockall Energy Holdings, LLC*, No. 22-90000 (MXM) (Bankr. N.D. Tex. Apr. 27, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 17, 2021); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Mar. 31, 2021); *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del. July 15, 2019); *In re Sears Holdings Corp.,* No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018); *In re Nine West Holdings, Inc.*, No. 18-10847 (SCC) (Bankr. S.D.N.Y. June 5, 2018); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio May 8, 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018); *In re GST AutoLeather*, *Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Oct. 27, 2017); *In re Gymboree Corporation*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Maxcom Telecomm., S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr.  E.D.N.Y. July 24, 2013); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del.

Nov. 3, 2011); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011).

8. I have been employed at Lazard since 2007 and specialize in advising public and private companies and creditor groups in complex financial restructurings, recapitalizations, capital raises, and sale transactions. Specifically, I have extensive experience representing companies, creditors, and other constituencies in transactions involving the sale of all or portion of a company's assets, including in the context of a chapter 11 sale process. During the course of my career, I have been involved in a variety of restructuring and recapitalization engagements, including Rockall Energy, JCPenney, Gavilan Resources, Forever 21, Toys"R"Us, Gymboree, Jones Energy, Westinghouse, LINN Energy, Stone Energy, RCS Capital, Millennium Health, RadioShack, Chassix, Momentive, Quiznos, OGX, Eastman Kodak Company, and several others. Additionally, I have submitted declarations and provided expert testimony related to those matters in a number of chapter 11 cases.

9. I have a B.A. in economics from Northwestern University. I hold a Series 24 and Series 79 Investment Banking Representative license.

### The Marketing Process

10. As described in the Kurtz Declaration,[4] leading up to the Debtors' chapter 11 filing, the Debtors engaged in an extensive and thorough prepetition marketing process in pursuit of a value-maximizing transaction for all or a portion of the Debtors' assets. Prior to the Petition Date, Lazard engaged with over 100 potential purchasers and sources of postpetition financing, in an

---

[4] As used herein, the term "Kurtz Declaration" means the *Declaration of David Kurtz in Support of the Debtors' Motion for Entry of an Order (I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* filed at Docket No. 29-1.

effort to secure a transaction for the Debtors' assets. However, the Debtors did not receive any actionable offers for an acquisition of their assets prior to the Petition Date.

11. The Debtors filed these chapter 11 cases with the goal of continuing their prepetition marketing efforts and entering into a value-maximizing transaction (or transactions) for the benefit of all stakeholders. Accordingly, the Debtors, with the support of their key creditor constituencies, filed the Bidding Procedures Motion which established the parameters for the postpetition marketing process. Upon entry of the Bidding Procedures Order, the Debtors and Lazard continued their efforts to market all or a portion of the Debtors' assets on a postpetition basis in accordance with the Bidding Procedures Order. The Debtors and their advisors worked tirelessly to seek both going-concern and intellectual property bids for the Bed Bath & Beyond businesses. Ultimately, the Debtors were unable to generate any actionable offers for a going-concern transaction for the Bed Bath & Beyond segment; however, the Debtors were able to obtain offers for a potential sale of the intellectual property and e-commerce assets, including the Acquired Assets.

12. The Marketing Process for the Acquired Assets was an extensive, far-reaching, and months-long process in which the Debtors and their advisors sought strategic and financial investors to effectuate a value-maximizing transaction. During the course of the marketing efforts, Lazard engaged with over 170 potential buyers for the Bed Bath & Beyond assets and over 80 NDAs were executed. Further, the Debtors also consulted with, noticed, and updated key stakeholders and parties-in-interest about important occurrences of the Marketing Process, including but not limited to: the identity of the bidders; key terms of the bids; and time frame for

6

receiving possible Qualified Bids. The Marketing Process was comprehensive and transparent and conducted in accordance with the court-approved Bidding Procedures.

13. On June 12, 2023, following several weeks of hard-fought, arm's-length negotiations, the Debtors entered into the Stalking Horse Purchase Agreement with Overstock. I understand that Overstock is an online furniture and home furnishings retailer and technology-focused innovator, which is listed on Nasdaq under the ticker "OSTK," is an Exchange Act public reporting company, and a large accelerated filer. I further understand, based on Overstock's public disclosures, that, as of March 31, 2023, Overstock's balance sheet lists approximately $375 million in cash and cash equivalents, approximately $34 million in long term debt, approximately $887 million in total assets, and approximately $640 million in positive shareholder equity. I understand that Overstock's market capitalization as of the date hereof is in excess of $1 billion.

14. After careful evaluation, and upon consultation with the Consultation Parties, on June 13, 2023, the Debtors filed the *Notice of Selection of Stalking Horse Bidder* [Docket No. 708], with the Stalking Horse Purchase Agreement attached as <u>Exhibit A</u> thereto.

15. After receiving the Stalking Horse Purchase Agreement, the Debtors and their advisors continued their efforts to obtain additional Qualified Bids which—under the Bidding Procedures—would trigger an Auction with respect to certain of the Acquired Assets. The Debtors, in consultation with the Consultation Parties and in accordance with the Bidding Procedures, revised the Bid Deadline on multiple occasions to elicit higher or otherwise better offers for the Acquired Assets.

16. The Debtors received various other Qualified Bids with respect to certain discrete assets encompassed in the Stalking Horse Purchase Agreement ahead of the Bid Deadline. In accordance with the Bidding Procedures, and as set forth in the Notice of Successful Bidder, on

June 21, 2023, the Debtors conducted Auctions with respect to (i) certain intellectual property assets associated with the Debtors' Wamsutta Brand (the "Wamsutta Assets") and (ii) the Debtors' ownership rights in and to the domain name BEYOND.com (the "Beyond.com Asset"). Following the conclusion of these Auctions, the Debtors, in consultation with the Consultation Parties, selected Overstock as the Successful Bidder as to the Acquired Assets, including the Wamsutta Assets and the Beyond.com Asset. The Debtors intend to effectuate the Stalking Horse Purchase Agreement in order to consummate the value-maximizing transaction therein (the "Sale Transaction").

### The Sale Transaction

17. Pursuant to the Stalking Horse Purchase Agreement, the Debtors and Overstock agreed in principle to a sale of the Bed Bath & Beyond Assets, on terms set forth in the Stalking Horse Purchase Agreement. The Stalking Horse Purchase Agreement provides for a purchase price (the "Purchase Price") of $21,500,000.00 in cash consideration.

18. The Stalking Horse Purchase Agreement contemplates the purchase of the Acquired Assets, free and clear of any liens or encumbrances and the assumption of liabilities associated with the Acquired Assets, to the extent known to Overstock. The Stalking Horse Purchase Agreement also contemplates the assumption and assignment to Overstock of a limited number of executory contracts associated with the Acquired Assets.

19. It is my understanding that Overstock was selected as the Successful Bidder without collusion or fraud of any kind, in good faith, and from arm's-length bargaining positions. Based on my knowledge and interactions, I believe that Overstock has proceeded in good faith in all respects in connection with this proceeding. I am not aware of any side deals or other arrangements that would evidence a lack of good faith. Further, I have no knowledge of Overstock engaging in

any improper action or inaction that would cause or permit the Stalking Horse Purchase Agreement or the Sale Transaction to be avoided or justify the imposition of any costs or damages.

20. Further, to my knowledge Overstock is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between Overstock and the Debtors.

## **Conclusion**

21. Accordingly, I believe that the Debtors engaged in a robust marketing process and the Sale Transaction is an important next step in the Debtors' restructuring efforts. It is therefore my opinion that the Sale Transaction and the terms of the Stalking Horse Purchase Agreement reflect the highest and best bid for the Acquired Assets. Accordingly, I respectfully submit that the Court should approve the Sale Transaction.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: June 27, 2023  
New York, New York

By: */s/ Christian Tempke*  
Name: Christian Tempke  
Title: Managing Director  
Lazard Frères & Co. LLC  
*Investment Banker and Financial Advisor to the Debtors and Debtors-in-Possession*