**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP** Joshua A. Sussberg, P.C. (admitted *pro hac vice*) Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
*Co-Counsel for Debtors and Debtors in Possession*

---

Order Filed on June 27, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

---

In re:

BED BATH & BEYOND INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

# ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC

The relief set forth on the following pages, numbered two (2) through five (5), is

**ORDERED**.

**DATED: June 27, 2023**

_____
**Honorable Vincent F. Papalia
United States Bankruptcy Judge**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

65548/0001-45592305v2

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

Upon the *Motion for Entry of an Order Pursuant to Sections 365 and 363 Approving the Lease Termination Agreement with Agua Mansa Commerce Phase I, LLC* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), among other things, (a) authorizing the deemed rejection and termination of the Lease, (b) approving the Lease Termination Agreement between the Debtors and the Landlord, and (c) authorizing the Debtors and Landlord to take any and all actions reasonably necessary to consummate the Lease Termination Agreement and perform all obligations contemplated therein, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

| (Page \| 3) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. Pursuant to sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and Landlord are authorized to enter into and perform under the Lease Termination Agreement, attached hereto as **Exhibit 1**, and to implement the Lease Termination Agreement and the transactions contemplated thereunder and hereunder. The Lease Termination Agreement and all of the terms and conditions thereof, including, without limitation, the rejection and termination of the Lease, the Debtors' surrender of the Premises, the consummation of the transactions contemplated thereunder and hereunder, and the releases contemplated therein, which for the avoidance of doubt includes the Landlord' release of any administrative claims (except as provided thereunder), are hereby approved in all respects.

3. Upon the Effective Date (as defined in the Lease Termination Agreement), the Debtors' rejection and termination of the Lease shall occur without any further action required by the Debtors, and the Debtors shall surrender the Premises pursuant to the terms of the Lease Termination Agreement.

4. The Debtors are authorized, pursuant to section 363(b)(1) of the Bankruptcy Code, to transfer any rights in and under the Lease and the Premises to the Landlord, pursuant to the terms of the Lease Termination Agreement, which transfer shall, pursuant to section 363(f) of the Bankruptcy Code, be free and clear of any and all liens, claims and encumbrances, with such

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.

5. The Debtors and the Landlord are authorized to take any and all actions reasonably necessary or appropriate to consummate the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.

6. The Lease Termination Agreement and each of the transactions contemplated therein were negotiated, proposed and are undertaken by the Debtors and the Landlord from arm's-length bargaining positions without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. As a result of the foregoing, the Landlord is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

7. Nothing in this Order shall alter or limit any authorization, requirement or relief contained in, or prevent BBB Canada Ltd. and Bed Bath & Beyond Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between the Order and the terms of the Initial Order, the order of the CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH AGUA MANSA COMMERCE PHASE I, LLC |

8.  The Debtors and Landlord are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry hereof.

10. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

12. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

Lease Termination Agreement

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this __13th__ day of June, 2023 by and between AGUA MANSA COMMERCE PHASE I, LLC, a Delaware limited liability company ("Landlord") and BED BATH & BEYOND INC., a New York corporation ("Tenant" or "Debtor"). (Landlord and Tenant are collectively referred to as the "Parties.")

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain Industrial Lease dated November 8, 2021 (the "Lease"), with respect to certain premises located at 6120 Clinker Drive, Riverside, California (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with affiliated debtors and debtors in possession, have filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement whereby, among other things, Landlord is restored to possession of the Premises as of the Effective Date and the parties release each other from their respective obligations under the Lease, as more particularly set forth hereinbelow;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1. Recitals. The Recitals are incorporated herein as if set forth at length.

2. Lease Termination. The Lease is terminated effective as of the date (the "Effective Date"), which is three (3) business days after the date on which an order by the Bankruptcy Court, approving this Agreement in its entirety (the "Bankruptcy Court Approval") is issued. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court Approval, on an expedited basis, including, without limitation, making application to the Bankruptcy Court to have this matter heard by the Bankruptcy Court on one of Tenant's two June calendar hearing dates (subject to the Court Calendar), such that the Effective Date shall occur prior to June 30, 2023.

3. Consideration. Landlord shall (a) pay to Tenant the sum of Five Million Dollars ($5,000,000.00). A deposit of $500,000.00 shall be paid by Landlord, within one (1) business day of the execution of this Agreement, to Tenant's attorneys, Cole Schotz, P.C., who shall hold such deposit in escrow. Landlord hereby directs Cole Schotz, P.C. as escrow agent, to release such deposit to Tenant on the date of the issuance of the Bankruptcy Court Approval. If the Bankruptcy Court Approval is not granted on or before June 30, 2023, absent further written agreement of the Parties, Landlord shall have the right to terminate this Agreement, at any time before the

Bankruptcy Court Approval is issued, in which event the deposit shall be returned to Landlord. The balance of the consideration shall be paid by Landlord to Tenant on the Effective Date.

4. <u>Landlord Release of Tenant</u>. For valuable consideration, and the mutual covenants and agreements contained herein, as of the Effective Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant and each of its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by, relating to or arising from the Lease, save and except for (a) the rights created or reserved by this Agreement, and (b) any of Tenant's indemnification and defense obligations set forth in the Lease with respect to third party claims for personal injury, loss of life or property damage based on the use and occupancy of the Premises prior to the Effective Date and claims for environmental damages for which Tenant is responsible under applicable law. Notwithstanding the foregoing, (i) if the Effective Date occurs before June 30, 2023, the pro-rated, post-Effective Date portion of June 2023 rent and charges will be returned to Tenant, it being the intent of the parties that Tenant's rent obligations under the Lease (and any adjustments, reconciliations or credits with respect thereto) will cease as of the Effective Date; and (ii) if the Effective Date occurs after June 30, 2023, Tenant shall have no obligation to pay rent and charges for the period from July 1, 2023 to the Effective Date, provided, however that this abatement of rent and other charges shall be null and void if this Agreement is terminated under Section 3 above.

5. <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, as of the Effective Date, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including,

without limitation, any and all claims evidenced by, relating to or arising from the Lease (including any adjustments, reconciliations and credits).

6. <u>Waiver</u>. The Parties hereto acknowledge that the release provisions set forth in Sections 4 and 5 above are intended as a full settlement and compromise of each, every and all claims of every kind and nature relating to the Lease as aforesaid and each of the parties hereto expressly waive any and all rights which they may have under Section 1542 of the Civil Code of the State of California pertaining to the Lease and the Premises, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

7. <u>Acknowledgment</u>. Each of the Parties hereto acknowledge, understand, and agree that by execution of this Agreement, each party and its partners, officers, directors, agents, trustees, beneficiaries, and employees do not admit any liability of any nature whatsoever. This Agreement is made entirely as a compromise and for the purpose of terminating the Lease and settling and extinguishing the respective claims, acts, damages, demands, rights of action or causes of action of the Parties hereto.

8. <u>Condition of Premises</u>. On the Effective Date, Tenant shall deliver to Landlord possession of the Premises in their "as-is" condition. Tenant shall have no obligation to perform any repair or replacement work to any part of the Premises or any fixtures, fittings or improvements therein.

9. <u>Existing Letter of Credit</u>. Following the Effective Date, Landlord shall cooperate with Tenant in the cancellation of the existing standby letter of credit, as amended, previously delivered by Tenant under Article 7 of the Lease, including the return of the original letter of credit to the issuing bank within three (3) business days of the Effective Date.

10. <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Effective Date:

(a) Tenant has delivered possession of the Premises to Landlord;

(b) Tenant has delivered to Landlord the keys and access codes to the Premises;

(c) Tenant shall have delivered to Landlord a certification that Tenant has satisfied, and the date(s) on which Tenant did satisfy, the requirements of Sections 10(a) and (b) hereof; and

(d) An order has been entered by the Bankruptcy Court approving the entirety of this Agreement, which order shall contain a finding that Landlord is a "good faith" purchaser under Bankruptcy Code section 362(m) and not be subject to a stay pursuant to Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

11. <u>Tenant Representations, Warranties and Covenants</u>. Tenant represents and warrants to Landlord that:

(a) All utility services relating to the Premises directly billed to Tenant, if any, which are consumed in or which service the Premises shall be terminated by Tenant prior to the Effective Date and charges for such utility services have been paid in full through the date upon which Tenant terminated such utility service;

(b) To the best of Tenant's actual knowledge, there are no outstanding contracts for the supply of labor or material to the Premises as of the date hereof, and, as of the Effective Date, no work will have been done, or materials delivered, in, about or to the Premises which have not been fully paid for and for which a mechanic's lien could be asserted and/or foreclosed;

(c) To the best of Tenant's actual knowledge, there are not any actions, suits, or proceedings pending or threatened before any governmental department, commission, board, bureau, agency or instrumentally that would affect the Premises or the right to occupy or utilize it.

12. <u>Reservation of Rights as to Ryder</u>. The parties acknowledge that certain furniture, fixtures and equipment ("FF&E") and other personal property owned by Ryder Integrated Logistics ("Ryder") remain in the Premises. This Agreement does not affect the disposition of any such FF&E or other personal property owned by Ryder at the Premises. Any rights, remedies and defenses that either Landlord or Tenant have against Ryder with respect to the Premises are expressly reserved. The continued presence of FF&E and other personal property in the Premises shall not affect (i) the termination of the Lease in accordance with this Agreement, or (ii) Ryder's ownership of the FF&E and personal property or the obligations or rights of Ryder to remove the FF&E and other personal property from the Premises, which shall be determined between Landlord and Ryder or a court having jurisdiction over Landlord and Ryder where the Premises are located.

13. <u>Obligations Pending Effective Date</u>. Prior to the Effective Date, except as provided in Section 4 above, Tenant shall remain responsible for performance of all obligations under the Lease. Without limiting the foregoing, Tenant shall maintain, through the Effective Date, its existing occurrence-based property, casualty and general liability insurance coverage with respect to the use and occupancy of the Premises prior to the Effective Date. Debtor agrees that no material change shall occur with respect to the condition of the Premises between the date hereof and the Effective Date that has not been approved in writing by Landlord.

14. <u>Right of Entry/Investigation</u>. Prior to the Effective Date, and subject to confidentiality agreements as may be appropriate, Landlord and Landlord's representatives will have the right to enter and conduct any investigations that Landlord requires to the Premises. Landlord will make best commercial and reasonable efforts to avoid disturbing in place occupants, if any. Landlord will keep the Premises free and clear of any mechanic's or material man's liens arising out of any such entry and investigations.

15. <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

16. <u>"No Shop."</u> From the execution of this Agreement through the Effective Date, Tenant and its affiliates, and their respective officers, managers, directors, and employees, shall not:

 (a) directly or indirectly, make, solicit, initiate or encourage submission of proposals or offers from any person or entity relating to an assignment of the Lease, or

 (b) participate in any discussions or negotiations regarding, furnish any information with respect to, assist or participate in, or facilitate in any other manner any effort or attempt by any person or entity to do or seek any of the foregoing,

it being the intent of the parties that neither (a) the assignment or disposition of the Lease, nor (b) any details broad or specific regarding the terms of this offer, be "shopped" pending Bankruptcy Court Approval. Immediately after the signing of this Agreement, Tenant shall instruct its representatives, advisors and agents (specially A&G Realty and JLL) not to market the Lease or the Premises, or participate in any negotiations with or furnish any information regarding the Lease or the Premises to, any third party, on behalf of Tenant or its affiliates.

17. <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

18. <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

19. <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

20. <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile transmission, electronic mail (including .pdf or any electronic signature complying with the U.S. Federal ESIGN Act of 2000, California's Uniform Electronic Transactions Act [<u>Cal. Civil Code § 1633.1</u> *et seq*.] or other applicable law) or other transmission method, and any counterpart so delivered shall be deemed to be duly and validly delivered and be valid and effective for all purposes.

21. <u>Governing Law</u>.  This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

22. <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, *forum non conveniens*, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

23. <u>Miscellaneous</u>.

(a) The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b) This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c) Landlord shall have the right to assign its interest hereunder at any time after full execution thereof to any affiliate or related party.

(d) Landlord and Tenant shall split equally all customary recording, filing and escrow fees, if any.

(e) Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(f) Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(g) Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the negotiation, preparation and consummation of this Agreement.

(h) The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**LANDLORD**:

AGUA MANSA COMMERCE PHASE I, LLC,
a Delaware limited liability company

By: Agua Mansa Commerce Holdings, LLC,
    a Delaware limited liability company,
    its sole member

    By: PR II Agua Mansa Commerce, LLC,
        a Delaware limited liability company,
        its sole member

        By: PRISA II LHC, LLC,
            a Delaware limited liability company,
            its sole member

            By: _/s/ Douglas Roberts_____
            Name: Douglas Roberts
            Title: Vice President

**TENANT**:

BED BATH & BEYOND INC.,
a New York corporation

By: _/s/ Wade Haddad_____

    Its: _____

-8-