UNITED STATES BANKRUPTCY COURT DISTRICT
OF NEW JERSEY



**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP** Joshua A.
Sussberg, P.C. (admitted *pro hac vice*) Emily E. Geier, P.C.
(admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

**Order Filed on June 27, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In re:

BED BATH & BEYOND INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-13359 (VFP)(Jointly Administered)

## FINAL ORDER
## (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
## USE OF EXISTING BUSINESS FORMS AND RECORDS,
## (B) MAINTAIN EXISTING CORPORATE BANK ACCOUNTS
## AND CASH MANAGEMENT SYSTEM, (C) PAY PREPETITION
## BANK FEES ASSOCIATED WITH THE CASH MANAGEMENT
## SYSTEM, AND (D) CONTINUE PERFORMANCE OF INTERCOMPANY

**DATED: June 27, 2023**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO
POSTPETITION INTERCOMPANY BALANCES; AND (III) WAIVING CERTAIN
U.S. TRUSTEE REQUIREMENTS FOR A PERIOD NOT TO EXCEED THIRTY DAYS**

The relief set forth on the following pages, numbered three (3) through fifteen (15), is

**ORDERED**.

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records; (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days* [Docket No 18] (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order"):  (a) authorizing the Debtors to (i) continue using their existing Business Forms and records in the ordinary course of business, (ii) maintain the Bank Accounts and operate their Cash Management System, (iii) pay prepetition Bank Fees associated with the Cash Management System, and (iv) continue performing Intercompany Transactions consistent with historical practices;  (b) granting administrative expense status to postpetition intercompany balances; (c) granting an interim limited waiver of the Debtors' compliance with the deposit and investment guidelines set forth in section 345 of the Bankruptcy Code; (d) scheduling a final hearing 28 days after commencement of these Chapter 11 Cases to consider entry of an order approving the relief requested herein on a final basis, and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this

Court having found that the Debtors' notice of the Motion was appropriate under the circumstances

and no other notice need be provided; and this Court having reviewed the Motion and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and upon all of the proceedings had before

this Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY**

**ORDERED THAT**:

      1.     The Motion is **GRANTED** on a final basis as set forth herein.

      2.     The Debtors are authorized, on a final basis, and in all cases consistent with this

Final Order, to continue operating the Cash Management System in accordance with prepetition

practices, and the ordinary course of business, honor their prepetition obligations related thereto,

and maintain existing Business Forms.  The Debtors shall provide reasonable notice to the

U.S. Trustee, counsel to the DIP Agent, and counsel to the Official Committee of Unsecured

Creditors appointed in the Chapter 11 Cases (the "Committee") of any material changes to their

Cash Management System.

      3.     The Debtors are hereby authorized to:  (a) continue to use, with the same account

numbers, the Bank Accounts in existence as of the Petition Date, in the names and with the account

numbers existing immediately before the Petition Date; (b) use, in their present form, all preprinted

correspondence and Business Forms (including letterhead) without reference to the Debtors' status

as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors

as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all

usual means, including checks, wire transfers, and other debits; and (e) pay the Bank Fees, including any prepetition amounts, and any postpetition ordinary course Bank Fees incurred in connection with the Bank Accounts (which, absent such payment, would be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code), and to otherwise perform their obligations under the Bank Account Agreements; *provided*, that in each case, such action is taken in the ordinary course of business and consistent with historical practices. Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtors in Possession" and the corresponding bankruptcy case number on all checks.

4.     To the extent set forth herein, the Debtors are authorized to, consistent with prepetition practices and this Final Order, honor, perform under, and otherwise satisfy all prepetition and postpetition obligations arising under the FDMS Processing Agreements, including any payments or reimbursements owed to Payment Processing Providers in the ordinary course of business and consistent with prepetition practices.  Those FDMS Processing Agreements existing between the Debtors, the Cash Management Banks, and the Payment Processing Providers will continue to govern the postpetition cash management relationship between the Debtors, the Cash Management Bank, and the Payment Processing Providers.  Subject to the applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such FDMS Processing Agreements shall remain in full force and effect without further order of this Court or, with respect to any such agreement with any Cash Management Bank and Payment Processing Provider (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable

deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise, subject to applicable bankruptcy law.

5.      The Debtors are hereby granted a limited waiver of the Debtors' compliance with the deposit and investment guidelines set forth in section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines on the basis that:  (a) the Debtors have confirmed that (i) the balance of the Debtors' Bank Account with First Hawaiian Bank will be swept on a daily basis to a UDA-compliant Bank Account, (ii) the Debtors' store connected to such Bank Account is scheduled to close by June 30, 2023, and (iii) the Debtors will close such Bank Account once the liquidation process with respect to such store is complete; (b) the Debtors have confirmed that (i) the balance of the Debtors' Bank Account with Banco Popular de Puerto Rico will be swept on a daily basis to a UDA-compliant Bank Account, (ii) the Debtors' store connected to such Bank Account is scheduled to close by June 30, 2023, and (iii) the Debtors will close such Bank Account once the liquidation process with respect to such store is complete; and (c) the Debtors have confirmed that (i) the Debtors control three Bank Accounts within Canada (the "Canadian Accounts") which are insured by the Canadian Deposit Insurance Corporation (the "CDIC"), (ii) the balance of each Canadian Account does not exceed the CDIC insured amount, (iii) the Debtors are to receive a refund to one of the Canadian Accounts from the Canadian Revenue Agency, and (iv) once such refund is deposited in the applicable Canadian Account, the funds of each Canadian Account, if any, will be transferred to a UDA-compliant Bank Account and the Canadian Accounts will be closed.  Notwithstanding this limited waiver, the U.S. Trustee reserves its rights to seek further relief from this Court with respect to the Debtors' compliance with section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines.

6.    The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption, consistent with historical practices, and in the ordinary course, and to receive, process, honor, and pay, solely to the extent of available funds and consistent with the interim and final orders granting relief with respect to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 25] (the "DIP Orders"), any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.  The Bank Account Agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, and any provisions relating to offset or charge-back rights with respect to return items, shall remain in full force and effect.

7.    The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, consistent with historical practice and in accordance with the terms of the DIP Orders, including, without limitation, the opening of any new bank accounts, the closing of any existing Bank Accounts, and entrance into ancillary agreements, including new deposit account control agreements related to the foregoing, as the Debtors may deem necessary and appropriate.  Any new bank account opened by the Debtors shall be

established at an institution that is (a) a party to a UDA with the United States Trustee for the

District of New Jersey or is willing to immediately execute a UDA and (b) bound by the terms of

this Final Order.  The Debtors shall provide notice within five (5) days to the U.S. Trustee, counsel

to the DIP Agent, the Prepetition and counsel to the Committee of entry into any new ancillary or

deposit control agreements, the opening of a new bank account, or the closing of any Bank

Account; *provided* that such opening or closing shall be timely indicated on the Debtors' monthly

reports.

8.       The relief granted in this Final Order is extended to any new bank account opened

by the Debtors in the ordinary course of business and consistent with historical practice after the

date hereof, in accordance with the terms of the DIP Orders, including, without limitation, the LC

Cash Collateral Account, which account shall be deemed a Bank Account, and to the bank at which

such account is opened, which bank shall be deemed a Cash Management Bank.  The Debtors are

further authorized, but not directed, to open the LC Cash Collateral Account at JPMorgan Chase

Bank, N.A. for the purpose of cash collateralize their payment and/or reimbursement obligations

under any outstanding letters of credit issued under the Prepetition ABL Facility (the "ABL LC

Obligations") and to execute any appropriate documentation to grant the Prepetition ABL Agent a

first priority lien on all cash on deposit in the LC Cash Collateral Account to secure the ABL LC

Obligations.

9.       All Cash Management Banks that are provided with notice of this Final Order shall

not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before

the Petition Date for which the Debtors specifically issue stop payment orders in accordance with

the documents governing such Bank Accounts.

10.     The Cash Management Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, consistent with historical practices and the Cash Management System, without the need for further order of this Court for:  (a) all checks drawn on the Debtors' Bank Accounts which are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' Bank Accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as Bank Fees, including service charges, for the maintenance of the Cash Management System.

11.     The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

12.     Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, of which items the Debtors shall promptly notify the Cash Management Banks, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors; (b) in a good-faith

belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

13.    Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14.    The Debtors are authorized to continue the Intercompany Transactions in the ordinary course of business, subject to the provisions hereof.

15.    All postpetition payments or other transfers from a Debtor to another Debtor under any postpetition Intercompany Transactions, which this Court has authorized hereunder subject to paragraph 16 hereof, and any postpetition obligations under any Bank Account Agreements are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted under the DIP Order, including, without limitation, DIP Superpriority Claims and DIP Liens, Adequate Protection Claims, or Adequate Protection Liens (each as defined in the DIP Orders).

16.    In connection with the Intercompany Transactions, the Debtors shall continue to maintain accurate and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, distinguished between prepetition and

postpetition transactions, and properly recorded on intercompany accounts and shall make such records available to the U.S. Trustee, the Committee, and counsel to the DIP Agent upon request. Notwithstanding the foregoing or anything to the contrary herein, nothing contained in this Final Order shall authorize the Debtors to:  (i) enter into any postpetition loan transactions between and among the Debtors and the Non-Debtor Affiliates; (ii) enter into any Intercompany Transactions accounted for as equity contributions; and (iii) set off prepetition Intercompany Claims against postpetition Intercompany Claims between and among the Debtors and the Non-Debtor Affiliates.

17.    Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

18.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

19.    Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of which entity pays those disbursements.

20.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' or other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to

pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or other party in interest's rights to subsequently dispute such claim.

21.    The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with Banks Fees or Processor Fees.

22.    The Debtors are authorized, but not directed, pursuant to section 364(b) of the Bankruptcy Code, to continue utilizing any existing corporate credit card or purchase card arrangements, including, but not limited to, any purchase cards issued by PNC Bank, National Association, in the ordinary course of business and consistent with prepetition practices, including by paying any obligations outstanding with respect thereto, whether or not such obligations were outstanding on or before the Petition Date. Those agreements existing between the Debtors and the card issuers governing any existing corporate credit card or purchase card arrangements, including any deposit agreement with PNC Bank, National Association, shall continue to govern the postpetition relationship with respect to the purchase cards and credit cards between the

12

Debtors and the card issuers and all of the provisions of such agreements, including, but not limited

to, the termination, fee provisions, rights, benefits, collateral, offset and termination rights, and

remedies afforded under such agreements shall remain in full force and effect absent further order

of this Court, or with respect to any such agreement, with the issuer of the purchase cards or credit

cards.

23.     Notwithstanding anything to the contrary contained in the Motion or this Final

Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder

shall not be inconsistent with, and shall be subject to and in compliance with, the requirements

imposed on the Debtors under the terms of each interim and final order entered by this Court in

respect of the DIP Orders, including compliance with any budget or cash flow forecast in

connection therewith and any other terms and conditions thereof.  Nothing herein is intended to

modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP

Orders.

24.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not

otherwise due.

25.     Nothing in this Final Order shall alter or limit any authorization, requirement or

relief contained in, or prevent Non-Debtor Affiliates BBB Canada Ltd. and Bed Bath & Beyond

Canada L.P. (collectively, "BBB Canada") from taking any action authorized pursuant to, or

required by, the CCAA, the Initial Order in respect of BBB Canada (the "Initial Order") issued by

the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in

respect of BBB Canada pursuant to the Companies' Creditors Arrangement Act (Canada) or any

Order granted thereunder, and to the extent of any inconsistency between the Final Order and the

terms of the Initial Order or any other order of the CCAA Court or the CCAA, the order of the

CCAA Court or the CCAA, as applicable, shall govern with respect to BBB Canada.

26.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents

of the Motion or otherwise deemed waived.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Final Order in accordance with the Motion.

28.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final

Order shall be effective and enforceable immediately upon entry hereof.

29.     Solely to the extent any letters of credit issued in connection with the Prepetition

ABL Facility for the benefit of the Debtors are drawn, JPMorgan may apply funds from the LC

Funding Account or the LC Cash Collateral Account to satisfy the ABL LC Obligations, as

appropriate, without seeking further relief from the automatic stay pursuant to section 362(d) of

the Bankruptcy Code and without the Debtors' further consent or further order of this Court as it

relates to the funds held in the LC Funding Account or LC Cash Collateral Account.

30.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

31.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

32.     The Debtors shall serve by regular mail a copy of this Final Order and the Motion

on all parties required to receive such service pursuant to Local Rule 9013-5(f) within

two (2) business days after the entry of this Order.

33.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

34.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.