**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF ASSUMPTION OF CERTAIN UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on May 22, 2023 the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief*

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[Docket No. 422] (the "Lease Sale Procedures Order"),[2] attached hereto as **Exhibit A**, by which the Court, among other things, approved expedited procedures for the assumption and assignment of unexpired leases and granted related relief.

      **PLEASE TAKE FURTHER NOTICE** that, on June 26, 2023, pursuant to the Lease Sale Procedures Order, the Debtors conducted the Lease Auction with respect to certain of the Lease Assets at the offices of Kirkland & Ellis, LLP, located at 601 Lexington Avenue, New York, New York, 10022. Attendees were permitted to attend in person or through Zoom.

      **PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Lease Auction, the Debtors, in consultation with their professionals, selected Successful Bidders and Backup Bidders with respect to certain Lease Assets, as set forth in the *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1114].

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Lease Sale Procedures Order and by this written notice (this "Assumption and Assignment Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each unexpired lease set forth on **Exhibit B** attached hereto is hereby assumed and assigned, including with respect to payment of any cure costs (the "Cure Costs") in the amounts set forth on **Exhibit B** required to assume such unexpired lease, effective as of the date of entry of an order approving the sale of the applicable Lease Asset(s) or such other date as the Debtors and the Counterparties to such unexpired leases agree.

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Lease Sale Procedures Order, each Successful Bidder's Bidder A&A Agreement are attached hereto as **Exhibit C**. The terms and conditions of each Successful Bidder's Bidder A&A Agreement may be subject to change as the parties continue to negotiate the terms thereof.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable unexpired lease will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, at the request of the applicable Counterparty use commercially reasonable efforts to provide evidence thereof to such applicable Counterparty (and their counsel, if known), thereby demonstrating that the assignee of the unexpired lease has the ability to comply with the requirements of adequate assurance of future performance.

      **PLEASE TAKE FURTHER NOTICE** that objections to the proposed Cure Costs, proposed assumption and assignment, and/or to the Successful Bidder's or Backup Bidder's proposed form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") so that such objection is filed with the Court so as to be **actually received** by **July 11, 2023, at 5:00 p.m. (prevailing Eastern Time)** and serve such Assumption

---

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. 193], as applicable.

Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq, co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolinos; (c) Pachulski Stang Ziehl & Jones LLP, 780 3rd Ave #34, New York, NY 10017, Attn: Robert J. Feinstein, Bradford J. Sandler, Paul J. Labov and Colin R. Robinson, counsel to the Committee; and (d) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

**PLEASE TAKE FURTHER NOTICE** that if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at the Lease Sale Hearing scheduled for **July 18, 2023, at 2:30 p.m. (prevailing Eastern Time)**, or such other date and time as agreed to by the Debtors and the objecting party or as ordered by the Court.  If such Assumption Objection is overruled or withdrawn, or if no Assumption Objection is filed with respect to any unexpired lease, such unexpired lease shall be assumed as of the Assumption Date set forth in **Exhibit B** or such other date as the Debtors and the applicable Counterparties to such unexpired lease agree.

*[Remainder of page intentionally left blank]*

Dated:  June 30, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

65548/0001-45675923v1

## **EXHIBIT A**

**Lease Sale Procedures Order**

[Filed at Docket No. 422]

## EXHIBIT B

### Schedule of Unexpired Leases to be Assumed and Assigned

| Store Number | Assignee | Landlord | Landlord Address | Premises Address | Proposed Cure Amount | Assumption Effective Date |
|---|---|---|---|---|---|---|
| 1313 | Haverty Furniture Companies, Inc. | SOUTHAVEN TOWN CENTER II, LLC | C/O CBL & ASSOCIATES, 2030 HAMILTON PLACE, CBL CENTER, STE. 500, CHATTANOOGA, TN 37421 | 6400 Towne Center Loop, Southaven, MS, 38671 | $74.24 | July 18, 2023 |
| 86 | Golf & Tennis Pro Shop, Inc. | BVCV UNION PLAZA, LLC | ATTN: LEGAL COUNSEL, PO BOX 51298, IDAHO FALLS, ID 83405 | 10011 East 71st Street, Tulsa, OK, 74133 | $16,143.00 | July 18, 2023 |
| 3116 | Michaels Stores, Inc. | ORF V SUGAR CREEK PLAZA, LLC | 5865 NORTH POINT PARKWAY, SUITE 250, ALPHARETTA, GA 30022 | 6146 Wilmington Pike, Dayton, OH, 45459 | $50,957.00 | July 18, 2023 |
| 462 | Michaels Stores, Inc. | ORF V SUGAR CREEK PLAZA, LLC | PINNACLE LEASING & MANAGEMENT, LLC, 5865 NORTH POINT PARKWAY SUITE 250, ALPHARETTA, GA 30022 | 6142 Wilmington Pike, Dayton, OH, 45459 | $0.00 | July 18, 2023 |
| 400 | Haverty Furniture Companies, Inc. | 400PAY-PARADISE DESTIN LTD | C/O PDG MANAGEMENT INC, 2901 RIGSBY LANE, SAFETY HARBOR, FL 34695 | 4441 Commons Drive East, Destin, FL, 32541 | $25,424.00 | July 18, 2023 |
| 3055 | Mad Monk* | ROIC BUSKIRK, LLC | C/O RETAIL OPPORTUNITY INVESTMENTS CORP., ATTN: COO, 11250 EL CAMINO REAL, SUITE 200, SAN DIEGO, CA 92130 | 3250 Buskirk Ave Suite 300-A, Pleasant Hill, CA, 94523 | $26,190.00 | July 18, 2023 |
| 1107 | Ollie's Bargain Outlet, Inc. | COLE MT SAN MARCOS TX, LLC | ATTN: DAVID BENAVENTE, 2555 CAMELBACK ROAD, SUITE 400, PHOENIX, AZ 85016 | 1050 McKinley Place Drive Bldg 2 Suite 220, San Marcos, TX, 78666 | $0.00 | July 18, 2023 |
| 3097 | Barnes & Nobles Booksellers, Inc | MOUNTAIN GROVE PARTNERS, LLC | C/O MAJESTIC REALTY CO., ATTN: CHIEF FINANCIAL OFFICER, 13191 CROSSROADS PARKWAY NORTH, 6TH FLOOR, CITY OF INDUSTRY, CA 91746 | 27651 San Bernardino Avenue, Suite B, Redlands, CA, 92374 | $2,703.00 | July 18, 2023 |

6

| 524 | Barnes & Nobles Booksellers, Inc | SANTA FE MALL PROPERTY OWNER LLC | C/O SPINOSO REAL ESTATE GROUP, 112 NORTHERN CONCOURSE, ATTN: LEGAL DEPT., NORTH SYRACUSE, NY 13212 | 4250 Cerrillos Road, Suite 1214, Santa Fe, NM, 87507 | $19,137.00 | July 18, 2023 |
| 433 | Barnes &Nobles Booksellers, Inc | RUNNING HILL SP LLC | C/O NEW ENGLAND DEVELOPMENT, 75 PARK PLAZA, BOSTON, MA 02116 | 200 Running Hill Road, Suite 4, South Portland, ME, 04106 | $32,327.00 | July 18, 2023 |
| 228 | Aldi Inc | CHENAL PLACE PROPERTIES LLC | 5507 RANCH DRIVE SUITE 201, LITTLE ROCK, AR 72223 | 12309 Chenal Parkway, Suite A, Little Rock, AR, 72211 | $0.00 | July 18, 2023 |
| 178 | Haverty Furniture Companies, Inc. | CROSSWINDS ST. PETE, LLC | C/O CAMBRIDGE MANAGEMENT, 3001 WEST BIG BEAVER ROAD, SUITE 324, TROY, MI 48084 | Crosswinds Center, 2060 66th Street North, St. Petersburg, FL, 33710 | $39,604.00 | July 18, 2023 |
| 540 | Michaels Stores, Inc. | BROWN RANCH PROPERTIES | RIVERS, BOB, LANDLORD, 3555 CLARES STREET SUITE L, CAPITOLA, CA 95010 | 3555 Clares Street, Suite J, Capitola, CA, 95010 | $0.00 | July 18, 2023 |
| 3076 | A&M Properties, Inc. | EDISON TOCA001 LLC | BEAR, HEATHER, LANDLORD, EDISON PORTFOLIO OWNER LLC, OAK STREET REAL ESTATE CAPITAL, 30 N LA SALLE ST, STE 4140, CHICAGO, IL 60602-2900 | 3700 West Torrance Blvd., Torrance, CA, 90503 | $0.00 | July 18, 2023 |
| 3049 | Haverty Furniture Companies, Inc. | RK PEMBROKE PINES, LLC | 17100 COLLINS AVENUE, SUITE 225, SUNNY ISLES BEACH, FL 33160 | 1360 Pines Blvd, Pembroke Pines, FL, 33026 | $342 | July 18, 2023 |
| 1142 | Michaels Stores, Inc. | PINNACLE HILLS, LLC | PINNACLE HILLS POWER CENTER, ATTN: LAW/LEASE ADMINISTRATION DEPT., 350 N. ORLEANS STREET, SUITE 300, CHICAGO, IL 60654-1607 | 2203 Promenade Boulevard, Suite 20210, Rogers, AR, 72758 | $28,384.75 | July 18, 2023 |
| 127 | Micro Electronics, Inc. | DORICH - VIDOVICH PARTNERSHIP | VIDOVICH, JOHN, LANDLORD, 960 N SAN ANTONIO RD 114, LOS ALTOS, CA 94022 | Stephens Plaza, 5201 Stevens Creek Blvd., Santa Clara, CA, 95051 | $161,574.00 | July 18, 2023 |

7

| 1177 | Burlington Coat Factory Warehouse Corporation | DC USA OPERATING CO., LLC | STERNECK, STEVEN, LANDLORD, C/O GRID PROPERTIES INC., 2309 FREDERICK DOUGLASS BOULEVARD, NEW YORK, NY 10027 | 3100 14th Street NW, Washington, DC, 20010 | $190,420.00 | July 18, 2023 |
|---|---|---|---|---|---|---|
| 384 | Burlington Coat Factory Warehouse Corporation | SUNSET & VINE APARTMENT | 1555 N. VINE STREET, LOS ANGELES, CA 90028 | 1557 Vine Street, Hollywood, CA, 90028 | $181.00 | July 18, 2023 |
| 1094 | Burlington Coat Factory Warehouse Corporation | U.S. 41 & I 285 COMAPNY LLC | C/O OLSHAN PROPERTIES, 600 MADISON AVENUE, 14TH FLOOR, ATTN: LEGAL SERVICES, NEW YORK, NY 10022 | 2955 Cobb Parkway, Suite 110, Atlanta, GA, 30339 | $6,796.00 | July 18, 2023 |
| 1265 | Burlington Coat Factory Warehouse Corporation | CC WARNER ROBINS LLC | C/O COLLETT & ASSOCIATES LLC, 1111 METROPOLITAN AVENUE, SUITE 700, ATTN: LEASE ADMINISTRATION, CHARLOTTE, NC 28204 | 3060 Watson Boulevard, Warner Robins, GA, 31093 | $0.00 | July 18, 2023 |
| 585 | Burlington Coat Factory Warehouse Corporation | HCL TEXAS AVENUE LLC | C/O LEVCOR, INC., 7800 WASHINGTON AVENUE #800, HOUSTON, TX 77007-1046 | 1430 Texas Avenue South, College Station, TX, 77840 | $0.00 | July 18, 2023 |
| 557 | Burlington Coat Factory Warehouse Corporation | LRIGF DENTON, LLC | C/O LINCOLN PROPERTY COMPANY, AUTHORIZED PROPERTY MANAGERSHOPS AT COLORADO, 2000 MCKINNEY AVENUE, SUITE 1000, DALLAS, TX 75201 | 2315 Colorado Boulevard, Suite 180, Denton, TX, 76205 | $12,542.00 | July 18, 2023 |
| 149 | Burlington Coat Factory Warehouse Corporation | EDISON BRMA001 LLC | BEAR, HEATHER, LANDLORD, OAK STREET REAL ESTATE CAPITAL, ATTN: ASSET MANAGEMENT, 30 N. LASALLE ST., SUITE 4140, CHICAGO, IL 60602 | The Market Place at Braintree, 400 Grossman Dr., Braintree, MA, 02184 | $6,451.00 | July 18, 2023 |
| 525 | Burlington Coat Factory Warehouse Corporation | PENSACOLA CORDOVA LAND | C/O SIMON PROPERTY GROUP, 225 W. WASHINGTON STREET, INDIANAPOLIS, IN 46204-3438 | 5450 N. 9th Avenue, Pensacola, FL, 32504 | $30,897.00 | July 18, 2023 |

65548/0001-45675923v1

| 454 | Burlington Coat Factory Warehouse Corporation | BBB FT. LAUDERDALE LLC | 650 LIBERTY AVENUE, UNION, NJ 07083 | 2701 N. Federal Highway, Fort Lauderdale, FL, 33306-1423 | $0.00 | July 18, 2023 |
|---|---|---|---|---|---|---|
| 3036 | Burlington Coat Factory Warehouse Corporation | NORTHWAY MALL PROPERTIES SUB LLC | C/O OLSHAN PROPERTIES, ATTN: LEGAL SERVICES, 600 MADISON AVENUE 14TH FLOOR, NEW YORK, NY 10022 | 1440 Central Avenue, Colonie, NY, 12205 | $30,906.00 | July 18, 2023 |
| 507 | Burlington Coat Factory Warehouse Corporation | 3600 LONG BEACH ROAD, LLC | C/O LIGHTHOUSE REALTY PARTNERS, LLC, 70 EAST SUNRISE HIGHWAY, VALLEY STREAM, NY 11581-1260 | 3640 Long Beach Road, Oceanside, NY, 11572 | $1,049.38 | July 18, 2023 |
| 577 | Burlington Coat Factory Warehouse Corporation | CAPARRA CENTER ASSOCIATES, LLC | CHARNECO, HUMBERTO, LANDLORD, GALERIA SAN PATRICIO, SUITE 212 TABONUCO ST. B-5, CAPARRA HILLS, GYANABO, PR 00968 | San Patricio Plaza, 100 Ave San Patricio, Ste A10, Guaynabo, PR, 00968-2629 | $55,478.00 | July 18, 2023 |
| 1314 | Burlington Coat Factory Warehouse Corporation | BIT INVESTMENT TWENTY-SEVEN, LLC | C/O COLLIERS INTERNATIONAL LLC, ATTN: PATRICK BRESLIN, 666 5TH AVENUE, NEW YORK, NY 10103 | 1440 Old Country Road Suite 300, Riverhead, NY, 11901 | $54,611.00 | July 18, 2023 |
| 3108 | Burlington Coat Factory Warehouse Corporation | DALY CITY SERRAMONTE CENTER, LLC | LEASE 80128318, C/O REGENCY CENTERS CORPORATION, ONE INDEPENDENT DRIVE, SUITE 114, JACKSONVILLE, FL 32202-5019 | 149 Serramonte Center, Daly City, CA, 94015 | $126,816.00 | July 18, 2023 |
| 1309 | Burlington Coat Factory Warehouse Corporation | 1309P1-JDN REAL ESTATE HAMILTON, LP | DEPT. 101412-20774-36573, PO BOX 931650, CLEVELAND, OH 44913 | 160 Marketplace Boulevard, Hamilton, NJ, 08691 | $68,214.00 | July 18, 2023 |
| 777 | Burlington Coat Factory Warehouse Corporation | TELEGRAPH MARKETPLACE PARTNERS II LLC | 226 BRONLOW DRIVE, IRMO, SC 29063 | 844 W. Telegraph Street, Washington City, UT, 84780 | $0.00 | July 18, 2023 |
| 192 | Burlington Coat Factory Warehouse Corporation | BRE RC TOWNE CROSSING VA LLC | LANDLORD, SHOPCORE PROPERTIESTWO LIBERTY PLACE SUITE 3325, PHILADELPHIA, PA 19102 | Towne Crossings, 11609 Midlothian Tnpke., Midlothian, VA, 23113 | $0.00 | July 18, 2023 |

| 1365 | Burlington Coat Factory Warehouse Corporation | LONGVIEW PLAZA, LTD. | MORRIS CAPITAL PARTNERS, LLC, 200 CARROLL STREET SUITE 130, LONGVIEW, TX 76107 | 422 W. Loop 281 Suite 200, Longview, TX, 75605 | $10,683.00 | July 18, 2023 |
| 126 | Burlington Coat Factory Warehouse Corporation | DPEG FOUNTAINS, LP | FOR THE BENEFIT OF ARGENTIC REAL ESTATE FINANCE LLC, 1455 HIGHWAY 6, SUITE B, SUGAR LAND, TX 77478 | The Fountains on the Lake, 12520 Fountain Lake Circle, Stafford, TX, 77477 | $0.00 | July 18, 2023 |
| 1002 | Burlington Coat Factory Warehouse Corporation | A-S 156 HQSC, L.P. | C/O NEWQUEST PROPERTIES, 8827 W. SAM HOUSTON PARKWAY N, #200, ATTN: STEVEN D. ALVIS, HOUSTON, TX 77040 | 6001 North West Loop 410 Suite #120, San Antonio, TX, 78238 | $0.00 | July 18, 2023 |
| 769 | Burlington Coat Factory Warehouse Corporation | BV WACO CENTRAL TEXAS MARKETPLACE LLC | 2194 SNAKE RIVER PARKWAY, SUITE 300, IDAHO FALLS, ID 83402 | 4633 S Jack Kultgen Expressway, Suite 102, Waco, TX, 76706 | $30,787.00 | July 18, 2023 |
| 589 | Burlington Coat Factory Warehouse Corporation | THE PROMENADE D'IBERVILLE, LLC | C/O CBL & ASSOCIATES MANAGEMENT INC., 2030 HAMILTON PLACE BLVD., STE. 500, CHATTANOOGA, TN 37421 | 3951 Promenade Parkway, D'Iberville, MS, 39540 | $0.00 | July 18, 2023 |
| 542 | Burlington Coat Factory Warehouse Corporation | DELTA & DELTA REALTY TRUST | DELTA MB LLC, 875 EAST STREET, TEWKSBURY, MA 07876 | 261 Daniel Webster Highway Unit 1, Nashua, NH, 03060 | $0.00 | July 18, 2023 |
| 1175 | Burlington Coat Factory Warehouse Corporation | PAPF DIMOND, LLC | 101 LARKSPUR LANDING CIRCLE, SUITE 120, LARKSPUR, CA 94939 | 601 E. Dimond Boulevard, Anchorage, AK, 99515 | $40,445.00 | July 18, 2023 |
| 1409 | Burlington Coat Factory Warehouse Corporation | GKT SHOPPES AT LEGACY PARK, L.L.C. | C/O TKG MANAGEMENT, INC., 211 N. STADIUM BOULEVARD SUITE 201, COLUMBIA, MO 65203 | 1320 McFarland Blvd E Bldg 300, Suite 330, Tuscaloosa, AL, 35404 | $3,258.29 | July 18, 2023 |
| 591 | Burlington Coat Factory Warehouse Corporation | 3503 RP AVONDALE MCDOWELL, L.L.C. | KITE REALTY GROUP TRUST, ATTN: LEGAL DEPARTMENT, 30 SOUTH MERIDIAN STREET, SUITE 1100, INDIANAPOLIS, IN 46204 | 10060 W. McDowell Road, Avondale, AZ, 85323 | $77,172.28 | July 18, 2023 |

65548/0001-45675923v1

| 385 | Michaels Stores, Inc. | UNCOMMON, LLC | C/O REGENCY CENTERS CORPORATION, ONE INDEPENDENT DRIVE, SUITE 114, ATTN: LEGAL DEPT., JACKSONVILLE, FL 32022 | University Commons, 1400C Glades Road, Boca Raton, FL, 33431 | $0.00 | July 18, 2023 |
| 1110 | Burlington Coat Factory Warehouse Corporation | HART MIRACLE MARKETPLA LLCCE LLC | C/O URBAN RETAIL PROPERTIES, LLC, 925 S. FEDERAL HIGHWAY #700, BOCA RATON, FL 33432 | The Miracle Marketplace 3301 Coral Way, Miami, FL, 33145 | $82,955.00 | July 18, 2023 |
| 3025 | Burlington Coat Factory Warehouse Corporation | FLAGLER S.C., LLC | 500 NORTH BROADWAY SUITE 201, P.O. BOX 9010, JERICHO, NY 11753 | 8241 West Flagler Street Suite 100, Miami, FL, 33144 | $39,041.00 | July 18, 2023 |
| 1143 | Burlington Coat Factory Warehouse Corporation | ARC CLORLFL001, LLC | 650 FIFTH AVENUE30TH FLOOR, NEW YORK, NY 10019 | Colonial Landing 3228 East Colonial Drive, Orlando, FL, 32803 | $21,966.00 | July 18, 2023 |
| 1367 | Haverty Furniture Companies, Inc. | PANAMA CITY BEACH VENTURE II, LLC | C/O CASTO SOUTHEAST REALTY SERVICES LLC, 5391 LAKEWOOD RANCH BLVD. SUITE 100, SARASOTA, FL 34240 | 15600 Panama City Beach Parkway, #840, Panama City Beach, FL, 32413 | $5,280.85 | July 18, 2023 |
| 1268 | Haverty Furniture Companies, Inc. | SARASOTA ASSOCIATES A-L LLC | SIPOC TIC, 7978 COOPER CREEK BLVD., SUITE 100, ATTN: LEGAL DEPT., UNIVERSITY PARK, FL 34201 | 111 North Cattlemen Road, Sarasota, FL, 34243 | $47,957.00 | July 18, 2023 |
| 556 | Burlington Coat Factory Warehouse Corporation | BRIXMOR GA COBBLESTONE VILLAGE AT ST. AUGUSTINE LL | C/O BRIXMOR PROPERTY GROUP, 450 LEXINGTON AVENUE, 13TH FLOOR, ATTN: GENERAL COUNSEL, NEW YORK, NY 10170 | 320 CBL Drive, St. Augustine, FL, 32086-5165 | $0.00 | July 18, 2023 |
| 55 | Burlington Coat Factory Warehouse Corporation | CLPF - MARKETPLACE, LLC | 75 PARK PLAZA THIRD FLOOR, BOSTON, MA 02116 | 1875 Palm Beach Lakes Blvd., Suite A05, West Palm Beach, FL, 33401 | $738.00 | July 18, 2023 |

65548/0001-45675923v1

| 1011 | Burlington Coat Factory Warehouse Corporation | ABERDEEN COMMONS ASSOCIATES LLC | SANTANA, DOMINIQUE, ASST LEASE ADMINISTRATOR, C/O ROSEN EQUITIES, LLC, ATTN: LEASE ADMINISTRATION, 40 EAST 69TH STREET, FOURTH FLOOR, NEW YORK, NY 10021 | 200 Aberdeen Commons, 11088 US 15-501 Highway, Aberdeen, NC, 28315 | $0.00 | July 18, 2023 |
|---|---|---|---|---|---|---|
| 1237 | Burlington Coat Factory Warehouse Corporation | ITAC 192 LLC | BRODYCO, 530 SE GREENVILLE BOULEVARD SUITE 200, GREENVILLE, NC 27858 | 5160 Highway 70 Suite 600, Morehead City, NC, 28557 | $15,054.00 | July 18, 2023 |
| 1096 | Burlington Coat Factory Warehouse Corporation | MAD RIVER DEVELOPMENT LLC | 240 PARAMUS ROAD, P.O. BOX 707, RIDGEWOOD, NJ 07450 | 404 State Route 3 West, Clifton, NJ, 07014 | $41,869.11 | July 18, 2023 |
| 301 | Dania, Incorporated d/b/a Scandinavian Designs | 301PAY-ROOKWOOD COMMONS, LLC | 3805 EDWARDS ROAD, SUITE 700, CINCINNATI, OH 45209 | 2719 Edmondson Road, Cincinnati (Rookwood), OH, 45209 | $79.00 | July 18, 2023 |
| 3086 | Burlington Coat Factory Warehouse Corporation | THE CENTRE AT DEANE HILL, GP | C/O BARNHART COMMERCIAL MANAGEMENT, LLC, 750 HAMMOND DRIVE, NE BUILDING 10-250, ATLANTA, GA 30328-6116 | 202 Morrell Road, Knoxville, TN, 37919 | $16,347.00 | July 18, 2023 |
| 1403 | Michaels Stores, Inc. | IVT HIGHLANDS AT FLOWER MOUND, LP | C/O INVENTRUST PROPERTY MANAGEMENT, LLC, ATTN: LEGAL, LEASING & PROPERTY MANAGEMENT, BLDG. 40118, 3025 HIGHLAND PARKWAY, SUITE 350, DOWNERS, IL 60515 | 6101 Long Prairie Road, Suite 200, Flower Mound, TX, 75028 | $1,510.00 | July 18, 2023 |
| 318 | Burlington Coat Factory Warehouse Corporation | AGREE LIMITED PARTNERSHIP | AGREE REALTY CORPORATION, 70 E. LONG LAKE ROAD, BLOOMFIELD HILLS, MI 48304 | Midland Plaza, 3001-A101 West Loop 250 North, Midland, TX, 79705 | $26,939.00 | July 18, 2023 |
| 3118 | Michaels Stores, Inc. | MCV23 LLC | C/O SUDBERRY PROPERTIES INC., 5465 MOREHOUSE DRIVE #260, SAN DIEGO, CA 92111 | 1660 Millenia Ave, Chula Vista, CA, 91915 | $0.00 | July 18, 2023 |

12

| 1044 | Burlington Coat Factory Warehouse Corporation | COLONY PLACE PLAZA, LLC | C/O SAXON PARTNERS LLC, 174 COLONY PLACE, PLYMOUTH, MA 02360 | 200 Colony Place, Plymouth, MA, 02360 | $0.00 | July 18, 2023 |
|---|---|---|---|---|---|---|
| 3131 | Barnes & Nobles Booksellers, Inc | RPAI KING'S GRANT II LIMITED PARTNERSHIP | C/O RPAI US MANAGEMENT LLC, 2021 SPRING ROAD SUITE 200, OAK BROOK, IL 60523 | 8062 Concord Mills Blvd, Suite 20, Concord, NC, 28027 | $0.00 | July 18, 2023 |
| 1338 | Macy's Retail Holdings, LLC | COLE MT WINTER GARDEN FL, LLC | C/O COLE REAL ESTATE INVESTMENTS, ATTN: ASSET MANAGER, 2325 E. CAMELBACK ROAD, SUITE 1100, PHOENIX, AZ 85016 | 3215 Daniels Road, Winter Garden, FL, 34787 | $3,390.00 | July 18, 2023 |
| 1405 | Burlington Coat Factory Warehouse Corporation | KRG NEW HILL PLACE, LLC | 30 SOUTH MERIDIAN STREET, SUITE 1100, INDIANAPOLIS, IN 46204 | 208 Grand Hill Place, Holly Springs, NC, 27540 | $0.00 | July 18, 2023 |
| 544 | Burlington Coat Factory Warehouse Corporation | 544 PAY-WEINGARTEN NO STAT, INC | P.O. BOX 201692, HOUSTON, TX 77216-1692 | 412 S. Bryant Avenue, Edmond, OK, 73034 | $0.00 | July 18, 2023 |
| 1024 | Burlington Coat Factory Warehouse Corporation | ROCKWALL CROSSING LTD | 2100 WEST 7TH STREET, FORT WORTH, TX 76107-2306 | 963 East Interstate Highway 30, Rockwall, TX, 75087 | $0.00 | July 18, 2023 |
| 1014 | Burlington Coat Factory Warehouse Corporation | BELL EDGEWOOD, LLC ET AL | C/O BELL PARTNERS, INC., 300 NORTH GREENE STREET, SUITE 1000, GREENSBORO, NC 27401 | 1235 Caroline Street NE, Atlanta, GA, 30307 | $0.00 | July 18, 2023 |
| 1333 | Burlington Coat Factory Warehouse Corporation | COLE MT RAPID CITY SD (I) LLC | C/O CIM GROUP, 2398 E CAMELBACK ROAD 4TH FLOOR, PHOENIX, AZ 85016 | 1365 Eglin Street, Rapid City, SD, 57701 | $0.00 | July 18, 2023 |
| 3112 | Michaels Stores, Inc. | THE SHOPS AT SUMMERLIN SOUTH, LP | C/O THE HOWARD HUGHES CORPORATION, ONE GALLERIA TOWER, 13355 NOEL ROAD, 22ND FLOOR, DALLAS, TX 75240 | 2315 Summa Drive, Suite #120, Summerlin, NV, 89135 | $0.00 | July 18, 2023 |
| 503 | Michaels Stores, Inc. | THE SHOPS AT SUMMERLIN SOUTH, LP | C/O THE HOWARD HUGHES CORPORATION, 10845 GRIFFITH PEAK DRIVE #160, ATTN: LEGAL DEPARTMENT, LAS VEGAS, NV 89135 | 2315 Summa Drive #180, Las Vegas, NV, 89135 | $0.00 | July 18, 2023 |

65548/0001-45675923v1

| 650 | Western Carriers Inc. | PRW URBAN RENEWAL 1, LLC | FAEGRE DRINKER BIDDLE & REATH LLP ATTN: BRIAN P. MORGAN 1177 AVENUE OF THE AMERICAS 41ST FLOOR NEW YORK, NY 10036 | 3 Enterprise Avenue North, Secaucus, New Jersey | $0.00 | July 18, 2023 |
| 677 | Flexport, Inc. | DFS LEWISVILLE PARTNERS GP | WINSTEAD PC c/o PHILLIP LAMBERSON 500 WINSTEAD 22728 N. HARWOOD St. Dallas, TX 75201 | 2900 S. Valley Parkway, Lewisville, Texas 75067 | $0.00 | July 18, 2023 |

65548/0001-45675923v1

# **EXHIBIT C**

**Successful Bidders A&A Agreements**

**<u>EXHIBIT C-1</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between _____ ("Assignor") and ___Bel Air Properties___ ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.    Payment of Purchase Price. Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of _____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.

3.    Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.    No Further Liability of Assignor. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5.      Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.      Compliance With Law.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.      Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.      Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.      No Reliance.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.      Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.      Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____


**ASSIGNEE:**
Bel Air Properties

By_____
Name____David H. Leung_____
Its_____President_____

**<u>Schedule A</u>**

**Description of Lease Asset(s)**

# **LEGAL DESCRIPTION**

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Torrance and described as follows:**

Parcel 1:

Parcel 1 of Parcel Map No. 21798, in the City of Torrance, County of Los Angeles, State of California, as per map filed in Book 234, Pages 79 through 81 inclusive of parcel Maps, in the office of the County recorder of said county.

Except therefrom all minerals, oil, gas, petroleum, and other hydrocarbon substances in or under said land, without, however, the right of entry on any portion of the surface of said land, except the well sites located thereon, to explore and drill for, develop, or remove said substances, but with the full right to explore and drill for, develop, and remove any or all such substances from said well sites and from any other portion of said land which is 500 feet or more below the ground surface, and also with the full right to drill under or through said land from said well sites or from any other location or locations off of said land to or through any point or points 500 feet or more below the ground surface for the exploration, development, and removal of any or all such substances, all as particularly described in paragraphs 1 through 6 inclusive, under the heading "Exceptions and Reservations" on pages 1 through 8, inclusive in the deed from del and estate company, recorded April 3, 1964 as Instrument No. 2470, in Book D-2420, Page 189 of Official Records, in the office of said County Recorder; and further, to the extent (if any) not previously excepted in said deed excepting and reserving to grantor, its successors and assigns, the full right, 500 feet or more below the ground surface only, to explore, drill and redrill for, develop, remove, and do all things necessary or desirable to remove, by primary, secondary, or other enhanced recovery methods, any and all such substances from any portion of said land which is below 500 feet below the surface thereof, including the full right to drill under and through, or under, or through, said land from any location or locations outside said land to or through any point or points 500 feet or more below the surface thereof to explore, drill and redrill for, develop, remove, and do all things necessary or desirable to remove, by primary, secondary, or other enhanced recovery methods, minerals, oil, gas, petroleum, and other hydrocarbon substances in or under said land or other land, as reserved by deed recorded June 16, 1981 as Instrument No. 81- 596779 of Official Records.

Also except therefrom all oil well pumps, oil well pumping equipment, drill equipment, tanks, pipe lines, and all structures, equipment, and facilities whether or not affixed to the real property located upon, under, or within said well sites above referred to, together with all of the easements and all pipe and pipe line facilities and all utility lines and utility facilities located within or under the land within any of the easements excepted and reserved under the deed from Del and Estate Company, recorded April 3, 1964 as Instrument No. 2470, in Book D-2420, Page 189 of Official Records.

Parcel 2:

A permanent, non-exclusive easement and right of way for access to and use of public, quasi-public, or private sanitary sewer lines and other physical structures, and equipment and facilities appurtenant thereto, over, along, and across that portion of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California, as per map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the Office of the County Recorder of said County, being a 10.00 foot wide strip of land, the centerline of which is described as follows:

Beginning at a point in the Westerly line of said Lot 1, distant North 07°49'50" West 30.29 feet from the Southwest corner of said Lot; thence South 89°56'00" East 156.34 feet to the true point of beginning; thence North 60°04'00" East 105.00 feet; thence North 00°04'00" East 393.00 feet; thence North 73°52'00" East 31.95 feet to a point in that certain course in the Northerly line of that certain easement of

Cigna Hotel associates II recorded August 20, 1987 as Instrument No. 87-1333703 of Official Records, described as having a bearing and length of "South 44°56'00" East 28.14 feet". The sidelines of said 10.00 foot wide strip are to be prolonged or shortened so as to terminate Northerly in said above-mentioned Northerly line and southerly in a line having a bearing of North 14°56'00" west that passes through said true point of beginning.

Parcel 3:

A permanent, non-exclusive easement and right of way for access to and use of public, quasi-public, or private sanitary sewer lines and other physical structures, and equipment and facilities appurtenant thereto, over, along, and across that portion of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California, as per map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the Office of the County Recorder of said County, being a 15.00 foot wide strip of land, the Northerly line of which is described as follows:

Beginning at a point in the Westerly prolongation of that certain course in the general Northerly line of said Lot 1, shown on said map as having a bearing and length of "North 89°56'00" West 720.45 feet", distant North 89°56'00" West 42.10 feet from the Westerly terminus thereof; thence along said prolongation, said line and its Easterly prolongation, South 89°56'00" East 841.50 feet to the Southwesterly prolongation of that certain course in said general Northerly line, shown on said map as having a bearing and length of "South 45°40'28" West 64.00 feet"; thence along said prolongation and said course, North 45°40'28" East 143.95 feet to the Westerly line of Lot 3 of said Tract No. 45010.

Parcel 4:

A permanent, non-exclusive easement and right of way for access to and use of public, quasi-public, or private storm drain lines and other physical structures, and equipment and facilities appurtenant thereto, consisting of a storm drain easement located beneath the surface and an above-ground storm drain easement each as described as follows:

Storm drain:

Those portions of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California as per Map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the Office of the County Recorder of said County, being (2) two strips of land, Strip No. 1 being 10.00 feet in width, lying 5.00 feet on each side of the following described centerline, and Strip No. 2 being 15.50 feet wide, the Northerly line being described as follows:

Strip No. 1:

Beginning at a point in the Westerly line of said Lot 1, distant North 07°49'50" West 24.66 feet from the Southwest corner of said lot; thence North 47°43'10" East 54.51 feet to the beginning of a tangent curve concave Westerly having a radius of 22.50 feet; thence Northerly along said curve through a central angle of 59°01'40", an arc distance of 23.18 feet; thence North 11°18'30" West 109.79 feet to the beginning of a tangent curve concave Southeasterly having a radius of 22.50 feet; thence Northeasterly along said curve, through a central angle of 101°22'30", an arc distance of 39.81 feet; thence South 89°56'00" east 170.40 feet to the beginning of a tangent curve; thence South 89°56'00" East 170.40 feet to the beginning of a tangent curve, concave Northwesterly having a radius of 22.50 feet; thence Northeasterly along said curve through a central angle of 90°00'00", an arc distance of 35.34 feet; thence North 00°04'00" East 205.72 feet to the beginning of a concave curve concave Southeasterly having a radius of 22.50 feet; thence Northeasterly along said curve through a central angle of 90°00'00", an arc distance of 35.34 feet to a point hereinafter referred to as point "A".

The sidelines of said strip are to be prolonged or shortened so as to terminate Westerly in the Westerly line of said lot 1.

Strip No. 2:

Beginning at the aforementioned point "A"; thence North 00°04'00" East 10.50 feet to a point in the westerly prolongation of that certain course in the general Northerly line shown on said map as having a bearing and length of "North 89°56'00" West 720.45 feet", said point being the true point of beginning; thence along said prolongation and along said course, South 89°56'00" seconds East 266.50 feet.

Surface drainage:

That portion of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California, as per map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the Office of the County Recorder of said County, described as follows:

Beginning at the Southwest corner of said Lot; thence South 89°56'00" East 68.50 feet along the Southerly line of said Lot 1; thence North 11°18'30" West 165.03 feet; thence South 89°56'00" East 116.16 feet; thence North 00°04'00" East 34.50 feet; thence South 89°56'00" East 100.00 feet; thence North 00°04'00" East 253.62 feet; thence North 45°04'00" East 39.74 feet to the Southeasterly terminus of that certain course in the general Northerly line of said Lot, shown on said map as having a bearing and length of "South 44°56'00" East 28.14 feet"; thence along said course, North 44°56'00" West 28.14 feet; thence South 45 degrees 04 minutes 00 seconds West 58.98 feet; thence South 00°04'00" West 193.41 feet; thence South 89°56'00" East 4.50 feet; thence South 00°04'00" West 39.50 feet; thence North 89°56'00" West 116.00 feet; thence South 00°04'00" West 36.50 feet; thence North 89°56'00" West 120.05 feet; thence South 11°18'30" East 106.64 feet; thence South 47°43'10" West 23.42 feet to the Westerly line of said lot 1; thence along said line, South 07°49'50" East 67.10 feet to the point of beginning.

Parcel 5:

A permanent, non-exclusive easement and right of way for a multiple-lane roadway with paving, curbs, gutters, landscaping and drainage facilities, vehicular pedestrian ingress and egress, loading dock facilities, and utilities over, under, along, upon, and across that portion of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California, as per Map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the Office of the County Recorder of said County, described as follows:

Beginning at the most Easterly corner of said lot 1, said corner being also the Southwesterly corner of Lot 3 of said Tract No. 45010; thence along the Southerly line of said Lot 1, North 89°56'00" West 41.01 feet to the Southwesterly corner of that certain 63.50 foot and variable width easement of the Cigna Hotels Associates-II as per Document recorded on November 19, 1987 as Instrument No. 87-1847537 of Official Records, in the Office of said County Recorder; thence along the Southwesterly line of said easement, North 14°32'34" West 16.66 feet to the beginning of a non-tangent curve concave Southwesterly having a radius of 174.50 feet, a radial line to said curve bears North 59°20'59" East, and Northwesterly along said curve through a central angle of 13°40'31", an arc distance of 41.65 feet, and North 44°19'32" West 6.32 feet, to the intersection of said Southwesterly line with a non-tangent curve, concave Southerly having a radius of 35.00 feet, a radial line to said curve bears North 19°24'41" East, said curve being in the Southerly line of that certain 26.50 foot and variable width easement of the Cigna Hotel Associates-II as per document recorded on August 20, 1987 as Instrument No. 87-1333703 of Official Records; thence Westerly along said line and said curve, through a central angle of 63°40'54", an arc distance of 68.90 feet to the beginning of a reverse curve, concave Northwesterly having a radius of 246.50 feet and Southwesterly along said curve through a central angle of 17°31'36", an arc distance of 75.41, North 89°56'00" West 630.83 feet, South 00°04'00" West 26.50 feet, North 89°56'00" West 200.80 feet, South 45°04'00" West 19.09 feet, North 89°56'00" West 33.14 feet, North 44°56'00" West 37.49 feet, North 00°04'00" East 26.98 feet, North 45°04'00" East 32.89 feet and North 00°04'00" East 9.66 feet; thence North 00°04'00" East 90.88 feet; thence North 89°56'00" West 42.00 feet to the beginning of a tangent curve concave Southeasterly having a radius of 10.00 feet; thence Southwesterly along said curve, through a central angle of 90°00'00", an arc distance of 15.71 feet; thence South 00°04'00" West 39.00

feet; thence North 89°56'00" West 60.67 feet; thence North 00°04'00" East 64.00 feet; thence North 89°56'00" West 14.97 feet; thence North 00°04'00" East 25.00 feet to the Southerly terminus of that certain course in the general westerly line of said lot 1, shown on said map of Tract No. 45010 as having a bearing and length of "North 07°49'50" West 25.22 feet" to the most Northerly Northwesterly corner of said Lot; thence Easterly along the various courses in the Northerly of said lot to the Southwesterly line of said lot 3; thence Southeasterly along said Southwesterly line to the point of beginning.

Parcel 6:

A permanent, non-exclusive easement and right of way for a multiple-lane roadway with paving, curbs, gutters, landscaping and drainage facilities, vehicular and pedestrian ingress and egress and utilities over, under, along, upon, and across that portion of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California as per Map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the Office of the County Recorder of said County, described as follows: beginning at the Northwest corner of that certain parcel of land deeded to the Marriott Corporation, recorded on April 2, 1982 as Instrument No. 82-347877 of Official Records of said County, said parcel described as parcel "A" in that certain Certificate of Compliance recorded on April 2, 1982 as Instrument No. 82-347876 of Official Records; thence along the Westerly line of said parcel, South 00°04'00" West 26.50 feet to the true point of beginning; thence continuing along said Westerly line, South 00°04'00"seconds West 370.50 feet to the Northerly line of that certain 54.50 foot easement parcel described in that certain grant of easement recorded on April 2, 1982 as Instrument no. 82-347879 of Official Records; thence along said Northerly line, North 89°56'00" west 14.66 feet to the beginning of a non-tangent curve concave Northwesterly having a radius of 35.00 feet, a radial line to said point bears South 30°57'53" East; thence Northeasterly along said curve through a central angle of 64°58'07", an arc distance of 39.69 feet; thence North 05°56'00" West 203.23 feet to the Beginning of a tangent curve concave easterly having a radius of 522.00 feet; thence Northerly along said curve, through a central angle of 06°00'00", an arc distance of 54.66 feet; thence North 00°04'00" east 45.17 feet to the beginning of a tangent curve concave Southwesterly having a radius of 35.00 feet; thence Northwesterly along said curve through a central angle of 900°00'00", an arc distance of 54.98 feet; thence South 89°56'00" East 57.00 feet to the true point of beginning.

Parcel 7:

A permanent, non-exclusive easement and right of way for roadway purposes, to connect the Marriott Parcel B Street easement to the east with Hawthorne boulevard on the West.

Said easement is described as follows:

That portion of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California as per map recorded in Book 1100, Pages 27 through 32 inclusive of maps, in the office of the County Recorder of said County, lying Southerly of the following described line:

Beginning at a point in that certain Easterly line of said lot 1, shown on said map as having a bearing and length of "North 00°04'00" East 451.50 feet", distant North 00°04'00" east 54.50 feet from the Southerly terminus; thence parallel with the Southerly line of said Lot 1, North 89°56'00" West 476.89 feet to the beginning of a tangent curve concave Northerly having a radius of 25.00 feet; thence Southerly along said curve through a central angle of 28°58'22", an arc distance of 12.64 feet to the Easterly line of Hawthorne boulevard (156.00 feet wide) as shown on said map.

Parcel 8:

A permanent, non-exclusive easements and rights of way for fire lane purposes to provide access for fire and emergency vehicles, said easement being described as follows:

Those portions of Lot 1 of Tract No. 45010, in the City of Torrance, County of Los Angeles, State of California as per Map recorded in Book 1100, Pages 27 through 32 inclusive of Maps, in the Office of the County Recorder of said County, described as follows:

Strip No. 1:

A 20.00 foot wide strip of land, the northerly line being that certain course in Lot 1, shown on said map as having a bearing and length of "South 89°53'45" East 189.90 feet". the sidelines of said strip are to be prolonged or shortened so as to terminate Westerly in the Westerly line of said Lot 1 and Easterly in a line drawn Southerly at right angles to said certain course through the Easterly terminus of said course.

Strip No. 2:

A 20.0 foot wide strip of land, beginning at a point in the Southerly line of that certain easement for ingress and egress described in Exhibit "C" in easement Agreement recorded August 20, 1987 as Instrument No. 87-1333703 of Official Records, said point being located in that course of said easement described in said document as having a bearing and length of "North 89°56'00" West 33.14 feet", distant South 89°56'00" East 8.54 feet from the Westerly terminus thereof; thence South 00°04'00" West 215.21 feet; thence North 89°56'00" West 20.00 feet; thence North 00°04'00" East 226.67 feet to a point in the Southerly line of said easement; thence along said line, South 44°56'00" East 16.21 feet and South 89°56'00" East 8.54 feet to the point of beginning.

Parcel 9:

A permanent, non-exclusive easement and right of way for roadway purposes, and to maintain the land on which the oxford amie avenue easement is located, said easement being described as follows:

That portion of Parcel 1 of Parcel Map No. 20688, in the City of Torrance, County of Los Angeles, State of California, as per Map recorded filed in Book 224, Pages 30 through 32 inclusive of parcel maps, in the Office of the County Recorder of said County, lying within those certain roadway easements, for Oxford/Ctx Associates, per document recorded April 14, 1989 as Instrument No. 89-589553, Kelt California, Inc., per document recorded May 26, 1989 as Instrument No. 89-861738, and Cigna Hotel Associates-II, per document recorded November 19, 1987 as Instrument No. 87-1847537, all of Official Records, as shown on said map.

APN:  7366-019-100

(End of Legal Description)

MAP

THE MAP(S) CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCEL(S) SET OUT ON THE MAP(S) MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART TITLE OF CALIFORNIA, INC. AND STEWART TITLE GUARANTY COMPANY ASSUME NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAP(S).

**<u>EXHIBIT C-2</u>**

DocuSign Envelope ID: 5AB58C8B-55A7-4427-8C5B-4C86C7212983

# ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between Bed Bath & Beyond Inc. ("Assignor") and Barnes & Noble Booksellers, Inc ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

        (a)     Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

        (b)     Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.      Payment of Purchase Price. Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of $25,000.00 (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.

3.      Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.      No Further Liability of Assignor. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5. <u>Further Assurances</u>. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6. <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s). Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7. <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9. <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10. <u>No Reliance</u>. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11. <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12. <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

DocuSign Envelope ID: 5AB58C8B-55A7-4427-8C5B-4C69C721?983

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**BED BATH & BEYOND INC.**

By_____
Name_____
Its_____

**ASSIGNEE:**
**BARNES & NOBLE BOOKSELLERS, INC.**

By_____
Name: James Daunt
Its: Chief Executive Officer

DocuSign Envelope ID: 5AB58C8B-55A7-4427-8C5B-4C8567212083

Schedule A

Lease Dated March 17, 2014, for certain Bed Bath & Beyond Premises at Mountain Grove Shopping Center, Redlands, California - BBB -#3097

Bid conditional on no recapture if dark for 12m from date of assignment, nor recapture for assignment of the lease.

Bid conditioned on any options having been served.

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between Bed Bath & Beyond Inc. ("Assignor") and Barnes & Noble Booksellers, Inc ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)      Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.      Payment of Purchase Price.  Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of $25,000.00 (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.

3.      Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.      No Further Liability of Assignor.  From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5. <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6. <u>"As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7. <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8. <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9. <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10. <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11. <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12. <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

DocuSign Envelope ID: 5C0686F5-B886-4C59-9C86-A3AE6777A467

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.


**ASSIGNOR:**
**BED BATH & BEYOND INC.**

By_____
Name_____
Its_____


**ASSIGNEE:**
**BARNES & NOBLE BOOKSELLERS, INC.**

By_____
Name: James Daunt
Its: Chief Executive Officer

DocuSign Envelope ID: 0C0686E7-B886-4C59-9C86-43AE6777A467

Schedule A

Lease Dated August 14, 2015, for certain Bed Bath & Beyond Premises at Santa Fe Place
Shopping Center, Santa Fe, New Mexico - BBB #524

Bid conditional on no recapture if dark for 12m from date of assignment, nor recapture for assignment of the
lease.

Bid conditioned on any options having been served.

**<u>EXHIBIT C-3</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This **ASSIGNMENT AND ASSUMPTION AGREEMENT** (the "Agreement"), dated as of _____, **2023**, is by and between ~~New York corporation~~ **BED BATH AND BEYOND INC.,** a New York corporation ("Assignor") and ~~BURLINGTON COAT FACTORY WAREHOUSE~~ **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** ("Assignee").  For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the ~~Debtors~~Assignor to the Assignee.

### RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto ~~(~~, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned ~~Asset(s)"~~Assets" or the "Leases" and individually an "Assigned Asset" or "Lease~~(s)"~~")") with respect to the premises set forth on Schedule A (the "Premises") ~~, pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures")~~ subject to approval by the Court in the Chapter 11 Cases, and the entry of a court order which includes the terms of Assignee's bid for such Assigned Assets (the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

### AGREEMENT

1.     **Assignment and Assumption.**

(a)     Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned ~~Asset(s).~~Assets.

(b)     Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned ~~Asset(s).~~Assets which arise from and after the date of entry of the Court Order and which relate to periods from and after the date of entry of the Court Order.

2.    Payment of Purchase Price.  Assignee shall, on the date ~~hereof~~of entry of the Court Order, deliver the purchase price for the Assigned ~~Asset(s)~~Assets in the aggregate amount of _____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  ~~If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.~~

~~3.    Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).~~

3.    Assumption of Liabilities.  All defaults or other obligations of the Assignor arising or accruing prior to the date of entry of the Court Order (including, but not limited to, fees, charges, adjustments, or reconciliations for taxes, insurance, CAM, and other charges, whether billed or unbilled, due or not due (each a "True-Up Charge") regardless of whether such True-Up Charge relates to a period of time prior to the assignment of such Assigned Asset(s), but without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. 365(b)(2)) shall be cured by the Assignor on or before the date of entry of the Court Order and the Assignee shall have no liability or obligation arising or accruing under the Assigned Assets prior to the date of entry of the Court Order.  Assignee shall assume all obligations with respect to the Assigned Assets arising from and after the date of entry of the Court Order.

4.    No Further Liability of Assignor.   From and after the date ~~hereof~~of entry of the Court Order, Assignor shall have no further obligations and duties with respect to the Assigned ~~Asset(s).~~Assets arising from and after the date of entry of the Court Order.

5.    Further Assurances.   At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned ~~Asset(s).~~Assets.

6.    "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned ~~Asset(s).  Without limiting the foregoing~~Assets; *provided, however*, Assignor warrants and represents:  (a) Assignor is the tenant under all of the Leases; (b) each Lease is in full force and effect; (c) the Leases, as identified in **Schedule A** are complete in listing all documents comprising the Lease(s) and there are no other agreements (written or verbal) which grant any possessory interest in and to any space situated on or in the Premises under the Lease(s) or that otherwise give rights with regard to use of the Premises under the Lease or limit the use of the Premises; and (d) there are no service contracts for any of the Assigned Assets which will bind Assignee after the date of entry of the Court Order and Assignor shall terminate any and all service contracts with respect to the Assigned Assets and the Leases prior to the date of entry of the Court Order or as soon as reasonably practicable

thereafter. Subject to the foregoing representations and warranties, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."Assets.

7.    Compliance With Law.    Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.7.    Governing Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of New YorkJersey without regard to principles of conflicts of law.

9.8.    Jurisdiction.    The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.   The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.   The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.9.    No Reliance.    EachExcept as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. InExcept as set forth herein and as stated in the Court Order, in entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.10.    Construction.    This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.   All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.   The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.11.    Execution in Counterparts.    This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.   All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, andAll such transmission will, for all purposes,counterparts, when so executed, shall be deemed to be the original constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may

receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature ~~of such Party whose~~(i.e., DocuSign or similar electronic signature ~~it reproduces,~~technology), and ~~will be binding upon~~the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered.  No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

*[Signatures appear on following page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**BED BATH & BEYOND INC.,**
a New York corporation

By: _____

Name:  Wade Haddad

Title:    SVP, Real Estate & Store Development

**ASSIGNEE:**

**BURLINGTON COAT FACTORY**
**WAREHOUSE CORPORATION,**
a Florida corporation

By: _____

Name:  Michael Shanahan

Title:  Senior Vice President, Real Estate

Federal I.D. No.:  22-1970303

2

**Schedule A**

**Description of Assigned Assets**

**[TO BE FILLED IN WITH CORRECT INFORMATION]**

| BBB STORE NO. | ASSIGNOR: [COMPANY] | LIST OF LEASE DOCUMENTS | REMAINING TERM AND OPTIONS | BURLINGTON ENTITY |
|---|---|---|---|---|
| | By _____ <br><br> Name _____ <br><br> Its _____ <br><br> **ADDRESS** | | | |
| | ASSIGNEE: [ASSIGNEE] <br><br> By _____ <br><br> Name _____ <br><br> Its _____ | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Schedule A**

**Description of Lease Asset(s)**

**<u>EXHIBIT C-4</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023 (the "Effective Date"), is by and between BED BATH & BEYOND INC., a New York corporation ("Assignor"), and FLEXPORT, INC., a Delaware corporation ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)      Assignee hereby accepts such assignment, assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s) from and after the Effective Date.

2.      Payment of Purchase Price.  Assignee shall, on the Effective Date, deliver the purchase price for the Assigned Asset(s) in the amount of Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "Purchase Price") in immediately available funds wired to the account specified by Assignor, net of the 10% deposit already submitted.

3.      Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, as of the Effective Date, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.      No Further Liability of Assignor.  From and after the Effective Date, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

1719312.1  27164

5.    <u>Further Assurances</u>.  At any time and from time to time after the Effective Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.    "<u>As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.    <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws to the extent of Assignee's obligations as Tenant under the Lease. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State where the Premises is located without regard to principles of conflicts of law.

9.    <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.    <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.    <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

1719312.1  27164

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**ASSIGNOR:**
BED BATH & BEYOND INC.,
a New York corporation

By_____
Name_____
Its_____


**ASSIGNEE:**
FLEXPORT, INC.,
a Delaware corporation

By *Bill Hansen*
    5C39BF743C6644D...
Name_____
Its_____

1719312.1  27164

**Schedule A**

**Description of Lease Asset(s)**

1.  Industrial Lease by and between DFS LEWISVILLE PARTNERS GP, a Texas general partnership, as Landlord and BED BATH & BEYOND INC., a New York corporation, as Tenant, for the property located at 2900 S. Valley Parkway, Lewisville, Texas 75067, dated January 4, 2016.

**<u>EXHIBIT C-5</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of June 22, 2023, is by and between Bed Bath & Beyond Inc. ("Assignor") and Golf & Tennis Pro Shop, Inc., a Florida Corporation ("Assignee").  For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases in form and substance acceptable to Assignee.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, free and clear of any and all liens, claims and encumbrances, other than those assumed by Assignee or otherwise permitted hereunder, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)      Subject  to the terms and conditions set forth herein and in the Assignment Order (as defined below), Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.      Payment of Purchase Price.  Assignee shall, at Closing (as hereinafter defined), deliver the purchase price for the Assigned Asset(s) in the amount of $50,000.00 plus the amount of $16,143.00 in cure costs owed by Assignor under the Lease, less the amount of $6,614.30 (the "Deposit") which has been paid by Assignee in escrow for a total purchase price of $66,143.00 (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.

3.      Assumption of Liabilities.  In addition to assuming all remaining obligations that exist after the Closing (as defined below) with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s) accruing after the Closing.

4.    No Further Liability of Assignor.  From and after the date hereof, Assignor shall have no further obligations and duties with respect to any liabilities assumed by Assignee pursuant to Section 3 of this Agreement relating to the Assigned Asset(s).

5.    Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.    Closing and Effective Date of Assignment.  The closing of the assignment (the "Closing") shall take place within one (1) business day following the satisfaction of the conditions set forth in Section 14 hereof.  If the Closing does not occur on or before September 1, 2023, this Agreement shall automatically terminate and the Deposit shall be refunded to Assignee; provided, however, that if the Closing does not occur as a result of a material breach of this Agreement by the Assignee, then the Deposit shall be paid to the Assignor as liquidated damages (the receipt of which shall be Assignor's sole and exclusive remedy with respect to any breach of this Agreement by Assignee).

7.    "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

8.    Compliance With Law.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10.    Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11.    No Reliance.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

12.    Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud,

duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.    <u>Conditions</u>.  Assignee's obligations under this Agreement are expressly conditioned upon: Assignor obtaining an order of the Bankruptcy Court (in form and substance acceptable to Assignee) (the "<u>Assignment Order</u>") (a) authorizing the assumption and assignment of the Lease pursuant to the terms set forth herein (and consistent with the provisions of the Bid Procedures Order), (b) terminating any sublease, license agreement or other agreement allowing a party other than Assignor to occupy the Premises, (c) confirming Assignee's proposed use of the Premises as a PGA TOUR Superstore does not violate any exclusive use restrictions currently in effect (or otherwise receiving such confirmation from the Landlord (as defined below)), (d) finding that there are no other amendments to the Lease other that those referenced in Schedule A, (e) requiring BVCV UNION PLAZA, LLC, the landlord under the Lease, to approve and consent to all alterations and/or alterations to the Premises, including without limitation replacement of signage identifying the tenant and any alterations necessary to secure the Premises (as defined in the Lease), including but not limited installing a door between the Premises and the shared loading area (or otherwise receiving such approval and consent from the Landlord), (f) tolling any recapture rights Landlord may have under the Lease for the cessation of business from the Premises, as long as Assignee diligently pursues any permits it may require for its improvements to the Premises (or otherwise receiving agreement from Landlord regarding same), and (g) finding that there are no currently outstanding obligations of Assignor under the Lease(s) (except for operating expense and tax adjustment)].  If one or more of the conditions set forth above in this Section 14 are not satisfied on or before September 1, 2023, for any reason other than a material breach of this Agreement by Assignee, then all escrowed funds shall be released to Assignee, and Assignee shall have no further claims against Assignor.  This Section 14 shall be applicable, notwithstanding anything in this Agreement to the contrary.

15.    <u>Pro-Rations</u>.  Ad valorem and property taxes, common area expenses, Landlord reimbursements, utilities, operating expenses, and other apportionable expenses, including all prepaid amounts under the Lease, paid or payable by Assignor with respect to the Lease as of the Closing, shall be apportioned *pro rata* on a per diem basis as of the date of the Closing (and the Purchase Price shall be adjusted upward or downward at the Closing, as applicable, based on such pro-rations).

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
 Bed Bath & Beyond Inc.

By_____
Name_____
Its_____


**ASSIGNEE:**
 Golf & Tennis Pro Shop, Inc.

By_*Matthew Prater*_____
Name___Matthew Prater_____
Its___CFO_____

**Schedule A**

**Description of Lease Asset(s)**


      That certain Lease Agreement between BVCV UNION PLAZA, LLC, successor to SOLLOCO, LC, as Landlord, and Bed Bath & Beyond Inc., as Tenant dated November 11, 2010 as amended by that certain Amendment No. 1 To Lease Agreement dated June 17, 2020 by and between BVCV UNION PLAZA, LLC, as Landlord, BED BATH & BEYOND, INC. as Tenant and that certain Amendment No. 2 To Lease Agreement dated December 14, 2021 by and between BVCV UNION PLAZA, LLC, as Landlord, BED BATH & BEYOND, INC., as Tenant for the 42,000 square foot premises located at 10011 East 71st Street, Tulsa, Oklahoma

**<u>EXHIBIT C-6</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between Bed Bath & Beyond Inc., a New York corporation ("Assignor"), and Haverty Furniture Companies, Inc., a Maryland corporation ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)      Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.      Payment of Purchase Price. Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the aggregate amount of the Bid Amount for each respective Assigned Asset as set forth on Schedule A attached hereto plus the Cure Costs (as defined below) (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. Assignor and Assignee agree that the closing date of the assumption and assignment of the Assigned Asset(s) shall occur three (3) business days after the date on which the Court's order approving the assumption and assignment of the Assigned Asset(s) becomes a final and non-appealable order. If such closing date of the assumption and assignment of the Assigned Asset(s) do(es) not occur by July 18, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after July 18, 2023.

3.      Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s) (the "Cure Costs") in the amounts not to exceed those listed on Schedule A attached hereto.

4.      No Further Liability of Assignor. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5.      Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.      "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s). Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.      Landlord Recapture Rights. To the extent any Lease permits a landlord to terminate such Lease after the applicable Premises is not open for business to the public for a certain period of time, such landlord shall not be allowed to terminate such Lease at any time Assignee is preparing to open such Premises for business to the public (including, without limitation, time spent preparing drawings, securing permits, renovating the Premises, or delays in securing labor or materials).

8.      No Subleases. The Assignee represents and warrants that all subleases and all other rights of occupancy to which any Assigned Asset was previously subject have been terminated and that each Assigned Asset is assigned free and clear of any subleases or other rights of occupancy.

9.      Compliance With Law. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

10.     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

11.     Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12.    <u>No Reliance</u>. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

14.    <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**BED BATH & BEYOND INC.,**
a New York corporation

By_____
Name_____
Its_____

**ASSIGNEE:**

**HAVERTY FURNITURE COMPANIES, INC.,**
a Maryland corporation

By _Katie Mendoleva_____
Name _Katie Mendoleva_____
Its _SVP, Strategic Dev & Real Estate_

## Schedule A

### Description of Lease Asset(s)

| ASSIGNED ASSET | BID AMOUNT | CURE COSTS | PURCHASE PRICE |
|---|---|---|---|
| Pembroke Pines, FL (3049) | $100,000.00 | $342.00 | $100,342.00 |
| Destin, FL (400) | $50,000.00 | $78,314.00 | $128,314.00 |
| Sarasota, FL (1268) | $50,000.00 | $47,957.00 | $97,957.00 |
| Panama City Beach, FL (1367) | $50,000.00 | $5,281.00 | $55,281.00 |
| St. Petersburg, FL (178) | $25,000.00 | $39,604.00 | $64,604.00 |
| Rockwall, TX (1024) | $50,000.00 | $30,785.00 | $80,785.00 |
| Holly Springs, NC (1405) | $50,000.00 | $38,326.00 | $88,326.00 |
| Southaven, MS (1313) | $25,000.00 | $74.00 | $25,074.00 |

**EXHIBIT C-7**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between Bed Bath & Beyond Inc. ("Assignor"), Macy's Retail Holdings, LLC ("Assignee") and Cole MT Winter Garden FL, LLC ("Landlord"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases") on April 23, 2023 (the "Petition Date");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume (the "Transaction") the unexpired lease between Assignor and Landlord identified on Schedule A attached hereto (the "Assigned Asset" or the "Lease") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases of the proposed form of sale order acceptable to Assignee and Assignor approving this Agreement (the "Sale Order"); and

WHEREAS, Landlord consents to the assumption by Assignor and assignment to Assignee of the Lease as set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties (the "Parties") hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption. Effective upon (i) entry of the Sale Order and (ii) payment of the Purchase Price (defined herein) (the "Closing"):

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset, including, without limitation, the right to possession of the Premises.

(b)    Except as specifically set forth in this Agreement, Assignee hereby assumes all of the terms, conditions and covenants of the Lease as tenant under the Lease effective as of the Closing.

(c)    For the avoidance of doubt and notwithstanding any other provision of this Agreement, Assignee shall not be responsible for and is not assuming any liabilities that arose prior to the Closing that remain unsatisfied as of the Closing, including, but not limited to, personal injury, third-party tort or property damage claims that accrued or arose before the Closing but may be adjudicated after the Closing.

(d)    For the avoidance of doubt and notwithstanding any other provision of this Agreement, any and all lease payments for Premises or receipts, rentals, costs, charges, fees or expenses connected with the use or operation of the Premises, including all common area costs, shall be prorated

between the parties on the date of Closing and Assignor shall bear its proportion thereof through the day prior to the date of Closing using the best available information at the time of the proration. Assignor shall be responsible for any penalties and interest payable for rent or other items under the Lease where the same are due as a result of an underpayment or late payment by Assignor prior to the date of Closing and Assignee shall be responsible for such amounts in respect of periods on or following the Closing. For purposes of calculating any proration, Assignor shall be responsible for amounts allocable to the period up to but not including the date of Closing. All such prorations shall be made on the basis of the actual number of days of the year and month which shall have elapsed as of the Closing,

2.       Payment of Purchase Price. As of the date hereof, Assignee has paid a ten percent (10%) deposit (the "Deposit") to Assignor. Assignee shall on or before the Closing deliver the purchase price for the Assigned Asset in the aggregate amount of $100,000.00 (the "Purchase Price") minus the Deposit already paid, which Purchase Price includes the amounts that came due and were required to be paid prior to the Petition Date (the "Cure Costs") solely as identified on Schedule A hereto and in the amount listed on Schedule A, in immediately available funds wired to the account specified by Assignor; provided that in the event the final Cure Costs include obligations or duties not identified on Schedule A hereto or in excess of the amounts listed on Schedule A hereto, absent written consent from Assignee to pay such additional and/or increased Cure Costs as part of its Purchase Price, Assignee may terminate this Agreement.

3.       Assumption of Liabilities. All defaults or other obligations of the Assignor arising or accruing prior to the Closing under the Lease, including, but not limited to the Cure Costs and fees, charges, adjustments, or reconciliations for taxes, insurance, CAM, and other charges, whether billed or unbilled, due or not due (each a "True-Up Charge") regardless of whether such True-Up Charge relates to a period of time prior to the assignment of the Assigned Asset, but without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code, shall be cured by the Assignor on or before the Closing or as soon thereafter as reasonably practicable (or as otherwise agreed with the counterparty to the Assigned Asset). Assignee shall have no liability or obligation arising or accruing under the Assigned Asset prior to the Closing. Assignee shall assume all obligations with respect to the Assigned Asset arising from and after the Closing. The Lease shall be transferred to, and remain in full force and effect for the benefit of, Assignee, in accordance with its terms, as modified herein and as may be amended. Upon assumption by Assignor and payment of the Cure Costs, no default shall exist and any and all prior defaults under the Lease, if any, whether monetary or non-monetary, shall be deemed cured, and Assignee shall have no liability therefore.

4.       No Further Liability of Assignor. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset.

5.       Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

6.       "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset; provided, however, Assignor warrants and represents: (a) Assignor is the tenant under all of the Lease; (b) the Lease is in full force and effect; (c) the Lease, as identified on Schedule A, is complete in listing all documents comprising the Lease and there are no other agreements (written or verbal) which grant any possessory interest in and to any space situated on or in the Premises under the Lease or that otherwise give rights with regard to use of the Premises under the Lease or limit the use of the Premises; and

(d) there are no service contracts for any of the Assigned Asset which will bind Assignee after the Closing and Assignor shall terminate any and all service contracts with respect to the Lease prior to Closing or as soon as reasonably practicable thereafter. Subject to the foregoing representations and warranties, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Premises. If the Premises is not in substantially the same condition as it was on _____, 2023 and the cost to repair the Premises to its prior commercially operational condition exceeds twenty-five percent (25%) of the allocated Purchase Price for the Lease for the Premises previously submitted by Assignee to Assignor, then Assignee shall have the right, in Assignee's sole discretion, to either: (i) remove the Assigned Asset from this transaction if the Premises has not been restored to its prior commercially operational condition within seven (7) days after such notice is received by the Assignor, and the Assignor and Assignee shall cooperate in good faith to come to an adjustment of the Purchase Price; or (ii) proceed with the Closing on the Assigned Asset.

7.    Sale Order. Each party's obligation under this Agreement is expressly subject to and conditioned upon the entry of the Sale Order by the Bankruptcy Court in form and substance reasonably satisfactory to both parties, that shall, among other things, (a) approve, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Assignor of this Agreement, (ii) the transfer and assignment of the Assigned Asset to Assignee on the terms set forth herein and free and clear of all liens, encumbrances, security interests, pledges, claims and/or other interests, and (iii) the performance by Assignor of its obligations under this Agreement; (b) authorize and empower Assignor to assign to Assignee the Lease; (c) order that, notwithstanding Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, the Sale Order shall take effect immediately upon entry; (d) order that there shall be no rent accelerations, assignment fees, increases or other fees charged or chargeable to Assignee as a result of the sale and assignment of the Lease; (e) establish the Cure Costs as the amount necessary to cure all defaults under the Lease; (f) authorize Landlord to execute and deliver, upon the reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approval of other necessary documents required for the alteration, opening and operating of the Premises by Assignee; (g) authorize the rejection of all license and concession agreements pursuant to which Assignor has granted any party a license, access or right to use all or any portion of the Premises for any purpose whatsoever; (h) find that Assignee is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, not a successor of Assignor, and grant Assignee the protections of section 363(m) of the Bankruptcy Code; (i) find that Assignee shall have no liability or responsibility for any liabilities or other obligations of the Assignor arising under or related to the Assigned Asset other than as expressly set forth in this Agreement, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity; (j) find that the assignment contemplated by this Agreement shall not be avoided pursuant to section 363(n) of the Bankruptcy Code; (k) find that all tenant contributions due and owing under the Lease have been paid in full; and (l) find that all exclusives and use restrictions contained in the Lease benefitting the Assignor continue in full force and effect, notwithstanding any closures or cessations in business operations by Assignee or Assignor.

To the extent such Sale Order is not approved by the Court, neither Assignee nor Assignor shall have any obligations under this Agreement or, solely with respect to Assignee, the entire Purchase Price, including the Deposit, shall be returned to Assignee within five (5) business days of the Court's denial or any other event that makes the entry of such Sale Order impossible, provided that Assignee (a) shall negotiate the terms of the Sale Order and modifications of the Lease (if any) with Landlord in good faith and (b) participate in the hearing to approve the Sale Order, if applicable; *provided* that such participation may be through remote attendance.

8.    Assignor's Delivery of Documents. Assignor shall deliver to Assignee each of the following: (i) an executed counterpart of this Agreement; (ii) all applicable state, county and municipal transfer declarations and any other required governmental certificates, provided that Assignor shall use

commercially reasonable efforts to obtain and deliver such documentation to Assignee; (iii) if Assignor has any assignable rights under any Non-Disturbance Agreement, Reciprocal Easement Agreement, or any other agreement with respect to each Premises, an executed copy of such assignment of such rights, subject to the consent of such assignment from the applicable counterparty which Assignor shall take reasonable steps to obtain; (iv) Assignor's leasing file containing all documents, plans, correspondence and writings relating to the Lease, including originals if available; and (v) all other documents (including assignments of operating agreements affecting the Premises and closing statements), affidavits, instruments and writings reasonably required to be executed and delivered by Assignor at or prior to the entry of the Sale Order or otherwise required by law or reasonably requested by Assignee, if not previously delivered.

9.    No Holdover.  Assignor shall fully vacate the Assigned Asset no later than three (3) days prior to the hearing to approve the Transaction. In the event Assignor fails to fully vacate the Assigned Asset as provided herein, Assignee shall have no obligation pursuant to the Lease(s) to pay any further rent, additional rent, or percentage rent unless and until Assignee complies with this Agreement.

10.    Customary Modification to Lease. Notwithstanding anything to the contrary herein or the Lease, Landlord waives its right to terminate the Lease in accordance with Article 14 so long as Assignee opens to the public within 365 days of the Closing. For the avoidance of doubt, Assignee shall not be required to continuously operate its business from the Premises within 365 consecutive days of the Closing (the "Modification"). If this Modification is not approved by Landlord and/or set forth in the Sale Order, Assignee shall have the right, in its sole discretion, to terminate this Agreement with respect to the Assigned Asset and shall not be liable for any other amounts, obligations, liabilities or duties under this Agreement or the Assigned Asset.

11.    Compliance With Law. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

12.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

13.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

14.    No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

15.    Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

16.    <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR**:
Bed Bath & Beyond Inc.

By: _____
Name: _____
Title:_____

STATE OF _____    )
                            ) SS.
COUNTY OF _____       )

And now before me, the undersigned Notary Public in and for the said County, in the State aforesaid, personally appeared _____, who acknowledged himself/herself to be the [TITLE] of _____, a _____, and he/she, being authorized to do so, has executed the foregoing instrument for the uses and purposes therein set forth.  This is an acknowledgement certificate.  No oath or affirmation was administered to the signer with regard to this notarial act.

GIVEN under my hand and notarial seal this _____ day of June, 2023.

_____
Notary Public
My Commission Expires: _____

**ASSIGNEE:**

Macy's Retail Holdings, LLC

By: _____

Name: Charles P. DiGiovanna

Title: Vice President

STATE OF OHIO               )

                                 ) SS.

COUNTY OF HAMILTON    )

And now before me, the undersigned Notary Public in and for the said County, in the State aforesaid, personally appeared Charles P. DiGiovanna, who acknowledged himself/herself to be the Vice President of Macy's Retail Holdings, LLC, an Ohio limited liability company, and he/she, being authorized to do so, has executed the foregoing instrument for the uses and purposes therein set forth. This is an acknowledgement certificate. No oath or affirmation was administered to the signer with regard to this notarial act.

GIVEN under my hand and notarial seal this 21st day of June, 2023.

_____

Notary Public

My Commission Expires: MATTHEW A. WHITLOW, Attorney At Law

NOTARY PUBLIC - STATE OF OHIO

My commission has no expiration date

Sec. 147.03 R.C.

**LANDLORD**:

Cole MT Winter Garden FL, LLC

By: _____

Name: _____

Title:_____

STATE OF _____          )

                                                    ) SS.

COUNTY OF _____          )

And now before me, the undersigned Notary Public in and for the said County, in the State aforesaid, personally appeared _____, who acknowledged himself/herself to be the [TITLE] of _____, a _____, and he/she, being authorized to do so, has executed the foregoing instrument for the uses and purposes therein set forth. This is an acknowledgement certificate. No oath or affirmation was administered to the signer with regard to this notarial act.

GIVEN under my hand and notarial seal this ____ day of June, 2023.

_____

Notary Public

My Commission Expires: _____

## SCHEDULE A

### Description of Assigned Asset

| Store No. | Center Name | Address | Description of Lease | Cure Costs |
|---|---|---|---|---|
| 1338 | Winter Garden Village | 3251 Daniels Road, Winter Garden, Florida 34787 | • Lease Agreement, dated as of August 10, 2010<br>• Memorandum of Lease made as of August 10, 2010 and recorded in Book 10090, Page 8616 | $3,390.45 |

## **EXHIBIT C-8**

## ACQUISITION OF DESIGNATION RIGHTS AGREEMENT

This ACQUISITION OF DESIGNATION RIGHTS AGREEMENT (the "Agreement"), dated as of June 22, 2023, is by and between Bed Bath & Beyond, Inc. ("Seller") and Michaels Stores, Inc. ("Purchaser"). For the avoidance of doubt, in the event that the Purchaser exercises the right to designate a Lease(s) (as defined below) for assumption and assignment to the Purchaser itself or an affiliate and the Purchaser delivers a Lease Assumption Notice (as defined below) to the Seller, except as set forth herein, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Purchaser after consummation of the assignment of such contract by the Debtors to the Purchaser.

## RECITALS

WHEREAS, Seller, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Seller has agreed to (i) sell, convey, assign, transfer and deliver to Purchaser, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Designation Rights (as defined below herein) with respect to unexpired lease(s) listed on Schedule A attached hereto (the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), (ii) take the actions set forth herein to cause the rejection of the Lease(s) identified in the subject Lease Rejection Notice(s) (as defined below herein) following the date that Purchaser delivers a Lease Rejection Notice to the Seller, and (iii) assign and Purchaser and/or an affiliate has agreed to assume Lease(s) identified in the subject Lease Assumption Notice(s) (as defined below herein) as set forth herein, pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures"), as modified herein, subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the Premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1. **Designation Rights**. On the terms and conditions set forth in this Agreement, Purchaser shall have the sole, exclusive, and continuing right to select, identify and designate (on one or more occasions) which of the Leases set forth on Schedule A hereto shall be either: (i) rejected or (ii) assumed and assigned in connection with an assumption and assignment, to Purchaser and/or an affiliate (all of which rights are referred to in this Agreement as the "Designation Rights"). The sale of the Designation Rights provided for in this Agreement shall not effect a conveyance of the Leases to Purchaser and/or an affiliate except for those Leases that Purchaser will specifically designate for itself and/or an affiliate in accordance with this Agreement. Notwithstanding anything to the contrary herein, the Lease Sale Order[1] shall provide that effective upon receipt of a Lease Assumption Notice (defined herein) to the applicable Lease Counterparty under any Lease(s) identified in such Lease Assumption Notice from Seller, (a) Seller shall be authorized to transfer, convey, assign and set over to Purchaser and/or an affiliate, its successors and assigns, all of Seller's right, title, and interest in and to the Lease(s), and (b) Purchaser and/or an affiliate shall be authorized to assume and undertake to pay, perform, and discharge all of Seller's obligations and

---

[1] To the extent that words and phrases are capitalized but undefined in this Agreement and have been defined in the *Lease Sale Procedures*, those definitions are incorporated herein by reference.

duties with respect to the Lease(s) as set forth herein.  For the avoidance of doubt, the Lease Sale Order shall approve (x) the Designation Rights and (y) any potential assumption and assignment of Lease(s) set forth on <u>Schedule A</u> to the Purchaser.

2.    **Designation Period**.  Purchaser's Designation Rights shall commence immediately after Court approval of the terms of this Agreement (the "<u>Sale Closing Deadline</u>") and expire thirty days (30) after the Court's entry of the Lease Sale Order (the "<u>Designation Period</u>"); *provided, however*, that the Designation Period may be extended upon mutual written agreement of Purchaser, the Seller, and a landlord or counterparty to the applicable Lease (each, a "<u>Lease Counterparty</u>").

(a)    ***Rejection of Leases***.  At any time during the Designation Period, Purchaser shall have the right, which right may be exercised at any time and from time to time, to provide written notice to the Seller (each such notice, a "<u>Lease Rejection Notice</u>") of Purchaser's election to require the Seller to reject the Lease(s) identified in the Lease Rejection Notice.  Following the date that Purchaser delivers a Lease Rejection Notice to the Seller, the Purchaser shall cause the rejection of the Lease(s) identified in the Lease Rejection Notice, pursuant to the *Procedures to Reject, Assume, or Assume and Assign* or the plan of reorganization in the Seller's Chapter 11 Cases.[2]  Purchaser shall not be responsible for any obligations and duties for a particular Lease that come due under the Lease after such Lease has been rejected pursuant to the terms of this Agreement.  For the avoidance of doubt, after the Purchaser provides a Lease Rejection Notice to the Seller, all of the Purchaser's obligations and duties with respect to the Lease(s) identified in the applicable Rejection Notice are discharged.

(b)    ***Assumption and Assignment of Leases***.  At any time during the Designation Period, Purchaser shall have the right, which right may be exercised at any time and from time to time, to provide written notice to the Seller (each such notice, a "<u>Lease Assumption Notice</u>") of Purchaser's election to assume the Lease(s) identified in the subject Lease Assumption Notice(s) and assign same to Purchaser and/or an affiliate, as set forth below or pursuant to the *Procedures to Reject, Assume, or Assume and Assign*, as applicable.

(i)    <u>Assumption and Assignment to Purchaser or Affiliate</u>.    At any time during the Designation Period, in the event that the Purchaser exercises the right to designate a Lease(s) for assumption and assignment to the Purchaser itself or an affiliate and the Purchaser delivers a Lease Assumption Notice to the Seller, without further Court order, on the effective date of assignment as set forth in the Lease Assumption Notice, (a) Seller shall be authorized to transfer, convey, assign and set over to Purchaser or an affiliate, as applicable, its successors and assigns, all of Seller's right, title, and interest in and to the Lease(s), and (b) Purchaser or an affiliate, as applicable, shall be authorized to assume and undertake to pay, perform, and discharge all of Seller's obligations and duties with respect to the Lease(s) as set forth herein.

3.    **Payment of Purchase Price**.  Purchaser shall, on or before the effective date of the assumption and assignment of the Lease(s) (the "<u>Sale Closing</u>"), deliver the purchase price for the Lease(s) in the amount of $406,042.79 (the "<u>Purchase Price</u>") minus the amount of the deposit (*i.e.*, $40,604.28) in immediately available funds wired to the account specified by Seller; *provided, however*, if the Court does not approve this Agreement, the Designation Rights, and/or the assumption and assignment of such Lease(s) set forth on <u>Schedule 1</u> hereto to Purchaser in accordance with the terms of this Agreement, including with respect to Purchaser's rights to exercise any renewal options or extensions under the Lease(s), this Agreement shall terminate, Seller shall return the deposit to Purchaser, and Purchaser shall not be liable for

---

[2]    On May 17, 2023, the Court entered the *Order (i) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases, and (ii) Granting Related Relief* (the "<u>Procedures to Reject, Assume, or Assume and Assign</u>") [Docket No. 382].

any other amounts, obligations, liabilities or duties under this Agreement or any of the Leases. The Parties acknowledge that if the assignment and assumption of the Lease(s) identified in the subject Lease Assumption Notice(s) (the "Closing") does not occur before thirty days (30) after the Court's entry of the Lease Sale Order, or such other date as set forth in the subject Lease Assumption Notice(s), the Lease(s) may thereafter be rejected in the Chapter 11 Cases.

(a)      Removal of Leases From the Lease Sale Process.  To the extent that any of the Leases listed on **Schedule A** attached hereto are not included in the Auction or are no longer subject to the sale process under the Lease Sale Procedures, the Seller shall return the applicable portion of Purchaser's Deposit to Purchaser the later of (i) three business days after removing any such Lease from the sale process under the Lease Sale Procedures and (ii) three business days after the Auction.

(b)      Toggle to Second Choice Lease.  For the (i) Summerlin and (ii) Dayton locations, there are two Leases available for assumption and assignment to a potential assignee.  With respect to the Summerlin location, in the event that Purchaser is not the Successful Bidder at the Auction for Lease Store ID 3112 (first choice lease), Purchaser will bid on Lease Store ID 503 (second choice lease).  With respect to the Dayton location, in the event that Purchaser is not the Successful Bidder at the Auction for Lease Store ID 3116 (first choice lease), Purchaser will bid on Lease Store ID 462 (second choice lease).  In each case, if Purchaser is the Successful Bidder on its first choice lease, Purchaser will not participate in the Auction with respect to its second choice Lease.  Purchaser will submit a single deposit with respect to each location and if such deposit is greater than was necessary for the Lease that is purchased, the overage or excess shall be applied to reduce the remaining Purchase Price due at Closing for the other applicable Leases where the Purchaser is the Successful Bidder.

4.      **Obligations under the Leases During the Designation Period**.  During the Designation Period, with respect to each individual Lease, Purchaser shall assume all obligations under the Lease, including rent, real estate taxes, insurance, common area charges, maintenance and any other obligations owed by Seller to each Lease Counterparty under a particular Lease for the period commencing on and after the Sale Closing Deadline; *provided, however,* that Purchaser shall not be responsible for (i) any obligations already satisfied by the Seller, (ii) any obligations that accrued prior to the Sale Closing Deadline but had not yet come due, (iii) any obligations for a particular Lease that come due under the Lease after such Lease has been rejected pursuant to the terms of this Agreement, and (iv) any obligations covered by insurance actually carried by the Seller.

5.      **Assumption of Assigned Liabilities**.  In addition to assuming all obligations that become due and are required to be paid during the Designation Period with respect to the Lease(s), as limited by paragraph 4 above, to the extent that Purchaser delivers a Lease Assumption Notice(s) to the Seller, upon the effective date of the assumption and assignment of any Lease(s) identified in such Lease Assumption Notice(s) by Purchaser and/or an affiliate, Purchaser shall assume (i) all obligations under such Lease(s) that both become due and accrue after the Sale Closing with respect to the Lease(s) and (ii) cure all outstanding liabilities that were (x) due and/or (y) accrued but not yet due prior to the Sale Closing under the applicable Lease(s) with respect to the Lease(s), which cure amounts, if any, are solely limited to the amounts listed for each applicable Lease set forth on Schedule A hereto (the "Cure Costs"). Notwithstanding anything herein or in any other agreement to the contrary, any applicable Cure Costs for the Lease(s), including any amounts that had accrued but had not yet come due, if any, are solely set forth on Schedule A hereto, provided that any objection or dispute with respect to the Cure Costs shall be resolved in accordance with the Lease Sale Procedures.  The Lease Sale Order shall provide that upon satisfaction of the Cure Costs, each Lease Counterparty shall be barred from asserting any additional amount other than the Cure Costs set forth on Schedule A hereto, including any other amounts, liabilities or claims with respect to its Lease(s) that arose, accrued, or came due on or before entry of the Lease Sale Order.  In the event the final Cure Costs include obligations and duties not identified on Schedule A hereto or in excess of the

amounts listed on <u>Schedule A</u> hereto, absent written consent from Purchaser to assume and pay such additional and/or increased Cure Costs, the Purchaser may terminate this Agreement if Purchaser is otherwise the successful bidder and the Seller shall return the Purchaser's deposit to the Purchaser within a reasonable amount of time.

6.      **No Further Liability of Seller**.  From and after the Sale Closing, except as provided herein, Seller shall have no further obligations and duties with respect to the Lease(s).

7.      **Further Assurances**.  At any time and from time to time after the date hereof, at the request of Purchaser, and without further consideration, Seller shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Purchaser may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Purchaser the Seller's rights to the Lease(s).

8.      **"As Is Where Is" Transaction**.  Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s).  Without limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Lease(s).  Purchaser further acknowledges that the Purchaser has conducted an independent inspection and investigation of the physical condition of the Lease(s) and all such other matters relating to or affecting the Lease(s) as Purchaser deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Purchaser is doing so based upon such independent inspections and investigations.  Accordingly, Purchaser will accept the Lease(s) "AS IS" and "WHERE IS."

9.      **No Holdover**.  Seller shall fully vacate the Lease(s) identified in <u>Schedule A</u> hereto no later than five (5) days prior to the Sale Closing.  In the event Seller fails to fully vacate such Lease(s) as provided herein, Purchaser shall have no obligation to the Seller during the Designation Period, including the obligation to pay any rent, additional rent, or percentage rent, unless and until Seller complies with this Agreement. If the Seller has not vacated the Premises related to any Designated Lease during the required time, the Seller shall be solely responsible for any and all obligations related to the applicable Lease(s), including payment of any amounts due thereunder until the Lease(s) are assumed and assigned to Purchaser or rejected in accordance with this Agreement.

10.      **Lease Sale Order**.  A condition precedent to any obligations of the Parties under this Agreement shall be entry by the Court of the Lease Sale Order approving this Agreement in form and substance acceptable to the Purchaser and Seller in all respects.  To the extent that (i) a Lease Counterparty informally objects or files an objection to this Agreement or the proposed Lease Sale Order and such objection can not be resolved prior to the Lease Sale Hearing and the Purchaser determines it does not want to proceed or (ii) such Lease Sale Order is not approved by the Court, the Purchaser shall not have any obligations under this Agreement or under the Leases set forth on Schedule A and the entire Purchase Price shall be returned to Purchaser, including any deposit, within five (5) business days of either event set forth in (i) and (ii) or any other event that makes the entry of such Lease Sale Order impossible.

11.      **Customary Modifications to Lease(s).**  Notwithstanding anything to the contrary herein, if certain customary modifications to the Lease(s) (which may include one or a combination of the Lease(s) set forth on <u>Schedule A</u> hereto) in connection with the occupancy and operation of Purchaser at the applicable Premises are not approved by the applicable Lease Counterparty and/or set forth in the Lease Sale Order authorizing any assignment of such Lease(s) to Purchaser, including modifications with respect to, among other provisions, requirements in connection with use, continuous operations, increased deposit, rent or other obligations related to assignment, signage for, improvements to, and buildout of the Premises, unless waived in writing by Purchaser in its sole discretion, this Agreement shall terminate, Seller shall

return the deposit to Purchaser, and Purchaser shall not be liable for any amounts, obligations, liabilities or duties under this Agreement or any of the Lease(s).

12.     **Compliance With Law**.  Purchaser hereby agrees to comply with all applicable laws. Purchaser agrees to indemnify and hold Seller harmless for any violation or alleged violation of this section.

13.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

14.     **Jurisdiction.**  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

15.     **No Reliance**.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

16.     **Construction.**  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

17.     **Execution in Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SELLER:**
**BED BATH & BEYOND, INC.**

By_____
Name_____
Its_____


**PURCHASER:**
**MICHAELS STORES, INC.**

By_____*Michael F Diamond*_____
Name__Michael Diamond_____
Its_____Executive Vice President – Chief
Financial Officer_____

**Schedule A**

**Description of Lease Asset(s)**

| LEASES | |
|---|---|
| 1. **Lease #:** | Store #988; Store ID: 540 |
| Name, State, and Zip: | Capitola, CA 95062 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |
| 2. **Lease #:** | Store #568; Store ID: 1338 |
| Name, State, and Zip: | Winter Garden, FL 34787 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $3,390.45 |
| 3(a). **Lease #:** | Store #82; Store ID: 3112 |
| Name, State, and Zip: | Summerlin, NV 89135 |
| Banner Name: | BuyBuy Baby |
| Cure Amount: | $45,000.00 |
| 3(b). **Lease #:** | Store ID: 503 |
| Name, State, and Zip: | Summerlin, NV 89135 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $45,000.00 |
| *Purchaser will bid on 3(b) at the Auction solely in the event that it is not the Successful Bidder on 3(a) above.* | |
| 4. **Lease #:** | Store #23; Store ID: 385 |
| Name, State, and Zip: | East Boca, FL 33486 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |
| 5. **Lease #:** | Store #684; Store ID: 1014 |
| Name, State, and Zip: | Moreland Avenue, GA 30307 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |
| 7. **Lease #:** | Store #220; Store ID: 544 |
| Name, State, and Zip: | Edmond, OK 73034 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $29,968.38 |
| 8(a). **Lease #:** | Store #1083; Store ID: 3116 |

| Name, State, and Zip: | Dayton - Washington, OH 45459 |
|---|---|
| Banner Name: | BuyBuy Baby |
| Cure Amount: | $51,174.29 |
| 8(b). **Lease #:** | Store ID: 462 |
| Name, State, and Zip: | Dayton - Washington, OH 45459 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |

*Purchaser will bid on 8(b) at the Auction solely in the event that it is not the Successful Bidder on 8(a) above.*

| 9. **Lease #:** | Store #624; Store ID: 1161 |
|---|---|
| Name, State, and Zip: | Mueller, TX 78723 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |
| 10. **Lease #:** | Store #1067; Store ID: 3118 |
| Name, State, and Zip: | Chula Vista, CA 91915 |
| Banner Name: | BuyBuy Baby |
| Cure Amount: | $0.00 |
| 11. **Lease #:** | Store #595; Store ID: 1142 |
| Name, State, and Zip: | Rogers, AR 72758 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |
| 12. **Lease #:** | Store #850; Store ID: 1403 |
| Name, State, and Zip: | Flower Mound, TX 75028 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $1,509.67 |

**<u>EXHIBIT C-9</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of June 20, 2023, is by and between Bed Bath & Beyond, Inc. ("Assignor") and Micro Electronics, Inc. ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee. Assignor and Assignee may be referred to herein as a "Party" or collectively, as the "Parties".

## RECITALS

**WHEREAS**, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

**WHEREAS**, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease listed on Schedule A attached hereto (the "Assigned Asset" or the "Lease"), and all amendments to such Lease, with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") and this Agreement, subject to approval by the Court in the Chapter 11 Cases.

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

    (a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset.

    (b)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset.

2.    Payment of Purchase Price. Assignee shall, within fourteen (14) days of the entry of an order by the Court approving this Agreement and the assumption and assignment of the Lease to Assignee (the "Closing Date") or such earlier date as the Parties may agree, deliver the purchase price for the Lease in the amount of $100,000.00 (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. If the assumption and assignment of the Lease does not occur within three (3) business days of the Closing Date for any reason other than a default by Assignee (the "Outside Closing Date"), Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Lease on and after the Outside Closing Date. Assignor shall provide Assignee with a statement of such amounts actually paid within ten (10) business days after the Outside Closing Date. Assignee shall pay such amounts within five (5) business days of its receipt of such statement.

9725116 v1

3.      Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Lease, including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease in an amount not to exceed $300,000.00 unless otherwise agreed in writing between Assignor and Assignee; provided, however, that Assignee is not assuming, and shall not be liable for, any costs, claims, judgments, or other liabilities that have arisen or may in the future arise from that certain litigation captioned, *Davaco, Inc. v. Bed Bath & Beyond, Inc. and Dorcich Vidovich*, pending in the Superior Court of California, Santa Clara County, under docket number 22-CV-408712.

4.      No Further Liability of Assignor. From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Lease.

5.      Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to transfer, convey, and assign to Assignee Assignor's rights to the Lease.

6.      "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Lease. Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset and all such other matters relating to or affecting the Assigned Asset as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset, Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease "AS IS" and "WHERE IS."

7.      Compliance With Law. Assignee hereby agrees to comply with all applicable laws governing the Lease. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section from and after the Closing Date.

8.      Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.      Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

-2-

11.     <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.     <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name _____
Its _____


**ASSIGNEE:**
**Micro Electronics, Inc.**

By_____
Name _Brad J Kramer_____
Its _Asst Treasurer, CFO, Co-COO__

-3-

## SCHEDULE A
### (Premises and Lease Description)

Store No.      127

Premises:      5201 Stevens Creek Boulevard, Santa Clara, CA 95051

Lessee:      Bed Bath & Beyond, Inc.

Lessor:      Dorcich-Vidovich

Associated Lease Documents:

1.  Lease Agreement dated as of March 28, 1996
2.  Rent Commencement and Expiration Date Agreement dated as of October 8, 1996
3.  Lease Modification dated as of March 5, 2021

**<u>EXHIBIT C-10</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between Bed Bath & Beyond Inc. ("Assignor") and Ollie's Bargain Outlet, Inc. ("Assignee" and, together with the Assignor (or, as applicable, Assignor, the "Parties" and each, a "Party"). For the avoidance of doubt, all provisions of the applicable assigned contract(s), including any provision limiting future assignment, shall, subject to the terms and conditions of this Agreement, be binding on the applicable Assignee after consummation of the assumption, assignment and sale of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), have filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359, et. al. (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases");

WHEREAS, on May 22, 2023, the Court entered that certain *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* in the Chapter 11 Cases [Dkt. No. 422] (the "Bid Procedures Order") providing for procedures for the assignment and sale of certain leases by the Debtors, including certain procedures, terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") approved by the Bid Procedures Order; and

WHEREAS, Assignor has agreed to assign and sell and Assignee has agreed to assume and purchase the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the leased premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the Lease Sale Procedures and the terms and conditions of this Agreement, subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the Premises and the mutual agreements herein contained, the Parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Subject to the terms and conditions of this Agreement, Assignor shall assume, sell, transfer, convey, assign and set over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)    Subject to the terms and conditions of this Agreement, Assignee hereby assumes and undertakes to pay, perform, and discharge the Maximum Cure Claims together with all of Assignor's obligations and duties with respect to the Assigned Asset(s) arising or accruing on or after the Closing Date.

2.    Payment of Purchase Price. Assignee shall, on the Closing Date, deliver the purchase price for the Assigned Asset(s) in the amounts set forth on Schedule A to this Agreement (the "Purchase Price") in immediately available funds wired (or sent by other agreed upon electronic funds transfer) to the account specified by Assignor(s). If the Closing does not occur within five (5) business days after the entry of the Sale Order, or for any Lease where the Assignee has been named a qualified back-up bidder and timely written notice has been given by Assignor that it intend to proceed to a Closing on the Assignee's bid with respect to such Lease, five (5) business days after Assignee has received such notice of Assignor's intent to close (or

DocuSign Envelope ID: 3ED75CF5-5109-4719-A018-69D62F566739

such later date(s) as the Assignor and Assignee may agree in writing) due solely to Assignee's wrongful refusal or inability to close on the sale of the Assigned Asset(s) by such date, Assignee will be liable for and will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after the date Closing was required to occur through the actual date of Closing.

3.    Assignee's Assumption of Cure Claims.  In addition to the Purchase Price, the Assignee hereby agrees to pay the actual amounts necessary to cure all defaults existing as of the Closing Date with respect to the Assigned Asset(s) as such cure amounts are determined pursuant to the Bid Procedures Order (or any further notice or order of the Court pertaining to such cure amounts) by final order of the Court or as agreed upon by the Assignee and the applicable counterparty(ies) of each such Lease(s) (each a "Cure Claim" and collectively, the "Cure Claims"), up to the maximum cure amount to be paid by Assignee for each such Lease as set forth on Schedule A hereto (each a "Maximum Cure Claim" and, collectively, the "Maximum Cure Claims"), provided, however that the Assignor shall be responsible for the payment of any and all defaults under any Lease relating to obligations of the Assignor arising prior to Closing that Assignor was required to perform under section 365(d)(3) of the Bankruptcy Code and such cure obligations shall not be Cure Claims for which the Assignee will be responsible under this Agreement (nor shall any such cure obligations of any Assignor be included in the calculation of the Maximum Cure Claim that may be payable by the Assignee with respect to such Lease).  The listing of Maximum Cure Claims on Schedule A hereto shall not be an admission by the Assignee or Assignor that the Maximum Cure Claims, or any portion thereof, is due and owing by any applicable Assignor.  To the extent that the actual Cure Claim under any Lease, or any unresolved cure claim timely asserted by any counterparty to Lease prior to Closing, exceeds the Maximum Cure Claim for such Lease, except as Assignee may otherwise agree in writing, Assignee shall not be required to purchase and take assignment of (and shall be excused from purchasing and taking assignment of) such Lease pursuant to this Agreement (and regardless of whether the actual Cure Claim or any alleged cure claim under any other Lease identified on Schedule A is less than the Maximum Cure Claim for any such Lease as set forth on Schedule A) and the refusal of Assignee to purchase and take assignment of any such Lease(s) shall not excuse the Assignor from proceeding to Closing with respect to all other Assigned Asset(s).  Other than the Maximum Cure Claims (if any), Assignee shall have no other liability for any claims against or obligations of the Assignor arising under or with respect to the Assigned Asset(s) prior to Closing (the "Unassumed Pre-Closing Obligations"). Following the Closing, the Assignee shall provide prompt payment of any Cure Claim to any counterparty of any Lease(s) sold and assigned to Assignee under this Agreement (up to the Maximum Cure Claim for such Lease).

4.    Sale Free and Clear.  With the exception of Assignee's obligation to pay the Purchase Price, any Cure Claims it is required to pay hereunder (up to the Maximum Cure Claim(s)) and any obligations arising under the Lease(s) following the Closing, the Assigned Asset(s) will be assumed, assigned and sold to the Assignee free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, any liens or security interests of any creditor of any of the Debtors, any reclamation claims and any other claims, liens, encumbrances or rights held or asserted by any person or entity whatsoever with respect to any of the Assigned Asset(s), or any type of successor liability as to trade creditors, unemployment, income, property, sales or other taxes, or otherwise (collectively, "Claims and Liens"), it being understood that all such Claims and Liens are not being assumed by, nor shall they become an obligation of, the Assignee.

5.    No Further Liability of Assignor for Obligations Arising After the Closing Date.  Aside from the Unassumed Pre-Closing Obligations (which shall remain obligations of the Assignor(s)), Assignor shall have no further obligations and duties with respect to the Assigned Asset(s) arising or accruing after the Closing.

6.  <u>Bid on Assigned Assets Severable by Lease</u>.  Assignee's agreement to purchase the Assigned Asset(s) shall be deemed a separate offer and agreement with respect to each Lease identified in Schedule A to this Agreement.  The terms of each such Agreement shall be the terms of the instant Agreement between the applicable Assignor and the Assignee with respect to such Lease, together the terms of the Purchase Price (and related deposit amount) and Maximum Cure Claim associated with such Lease, as set forth on Schedule A hereto.

7.  <u>Contingent Bid with respect to Edmond Lease</u>.  Assignee's offer and agreement to purchase the Lease identified on Schedule A hereto for 544 – 412 S. Bryant Avenue, Edmond, Oklahoma (the "<u>Edmond Lease</u>") is contingent upon the waiver or expiration of the Lease's exclusivity provision in favor of Eckerd's limiting the sale of cosmetics, health and beauty aids and related items to 1,000 square feet of the retail floor area.  The foregoing contingency is limited solely to the Edmond Lease and no other Lease or Assigned Asset(s) identified on Schedule A hereto shall be affected thereby.

8.  <u>Payment and Return of Purchase Price Deposit</u>.  Assignor acknowledge that Assignee has paid a cash deposit (the "<u>Deposit</u>") representing 10 percent of the initial proposed Purchase Price that Assignee would pay for the purchase of the Assigned Asset(s) as set forth in Schedule A to the form of Agreement submitted by Assignee in connection with its bid on such assets (the "<u>Bid Package</u>").  To the extent that the Assignee does not purchase and take assignment of any Lease referenced in Schedule A to the form of Agreement included in its Bid Package (whether because such bid was not named the winning bid, or a backup bid, the Court refused to approve the sale/assignment of such Lease or the Assignee was excused from taking assignment of such Lease because the Cure Claim for such Lease exceeded the Maximum Cure Claim for such Lease), the Assignor shall return the Deposit associated with such Lease within thirty-five (35) days after the auction date (and, in any event, no later than sixty (60) days after Assignee's submission of its Bid Package).

9.  <u>Expiration of Offer</u>.  Except as may hereafter be agreed by Assignee, Assignee's offer to purchase any Lease identified in Schedule A hereto pursuant to this Agreement shall expire: (a) for any Lease not named as a winning bid or backup bid by the Debtors, immediately upon the conclusion of the auction and the naming of the winning and backup bidders for such Lease (and in any event, no later than sixty (60) days from the date of submission of Assignee's Bid Package); (b) for any Lease for which Assignee has been named a backup bidder, upon the earlier of the closing of the sale/assignment for such Lease to another bidder and thirty (30) days after the auction with respect to such Lease (and, in any event, no later than sixty(60) days from the submission of Assignee's Bid Package).  Nothing herein shall prevent Assignee from extending in writing the term/duration of its offer/bid for any Lease included in its Bid Package pursuant to this Agreement or from seeking performance of the Assignor hereunder.

10.  <u>Closing; Conditions to Obligations to Close</u>.

(a)    On the Closing Date:

(i)    Assignor shall have obtained and delivered the Sale Order to the Assignee.

(ii)    Assignee shall wire (or send by other agreed upon electronic funds transfer) to Assignor the Purchase Price, less the amount of the Deposit; and

(iii)    Assignor shall countersign this Agreement, reflecting the final Purchase Price with respect to each Lease being sold and assigned to the Assignee.

(b)    Assignor shall have performed (or shall provide adequate assurance that it will promptly perform) all of its obligations arising under section 365(d)(3) of the Bankruptcy Code through the Closing Date;

3

(c)      (i) the Court shall have entered an order in a form reasonably acceptable to the Assignee and Assignor, upon due and proper notice to all Parties entitled to notice (including, without limitation, all counterparties to the Lease(s)), in accordance with the requirements of the Bankruptcy Code (including sections 363 and 365 of the Bankruptcy Code), the Federal Rules of Bankruptcy Procedure, and any applicable local rules of bankruptcy procedure and orders of the Court (1) approving (a) this Agreement and the execution, delivery and performance by Assignor of this Agreement and the other instruments and agreements contemplated hereby; and (b) the assumption, assignment and sale of all of the Assigned Asset(s) by Assignor to Assignee free and clear of all Claims and Liens, (2) determining that Assignee is a good faith purchaser entitled to all the protections of section 363(m) of the Bankruptcy Code, (3) determining that the sale of the Assigned Asset(s) to Assignee pursuant to this Agreement satisfies the requirements of section 363(f) of the Bankruptcy Code, (4) authorizing and approving the assumption and assignment of the Assigned Asset(s), upon Closing, (5) determining that such assumption and assignment of the Assigned Asset(s) is in compliance with the applicable provisions of section 365 of the Bankruptcy Code and that the: (a) Assignor and Assignee have provided adequate assurance of the prompt payment of all Cure Claims (up to the amount of the Maximum Cure Claim) pursuant to sections 365(b)(1)(A)-(B) of the Bankruptcy Code;  and (b) the Assignee has provided adequate assurance of future performance under sections 365(b)(1)(c), 365(f)(2)(A)-(B) and, where applicable, 365(b)(3)(A)-(D) of the Bankruptcy Code, and (6) providing that the applicable Closing will occur in accordance with the terms and conditions hereof and any other order necessary to close the sale, assumption and assignment of the Assigned Asset(s) (such order, the "Sale Order"), (ii) no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date, and (iii) the Sale Order shall not be subject to any challenges that challenge the Assignee's good faith; and

(d)      The Sale Order shall be entered on or before July 21, 2023 or such later date as may be agreed in writing by the Assignor and Assignee;

(e)      The closing of the transactions contemplated by this Agreement (the "Closing") shall occur on a mutually agreed upon date between the Assignor and Assignee on or before five (5) business days after the entry of the Sale Order or such later date as may be agreed to in writing by the Assignor and Assignee (the "Closing Date"); and

(f)      Each delivery contemplated by this Agreement to be delivered to the Assignee at or prior to the Closing shall be delivered.

11.      No Frustration of Closing Conditions.  Neither Assignor nor Assignee may rely on the failure of any condition to their respective obligations to consummate the transactions contemplated hereby, to be satisfied if such failure was caused by such Party's (or its affiliates') failure to use its reasonable best efforts to satisfy the conditions to the consummation of the transactions contemplated hereby or by any other breach of this Agreement.

12.      Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

13.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s) except that each applicable Assignor holds a leasehold interest as a lessee in each Lease being sold and assigned to Assignee hereunder and that each such Lease is an unexpired non-residential lease of real property pursuant to section 365 of the Bankruptcy Code.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an

independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

14.    <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

15.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

16.    <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>No Reliance</u>. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

18.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

19.    <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces and will be binding upon such Party. This Agreement may be executed by electronic signature (including via DocuSign) on the signature page of this Agreement, and each Party agrees that the electronic signatures of the Parties on the signature page of this Agreement are intended to authenticate this Agreement and to have the same force and effect as manual signatures. As used herein, electronic signature shall mean and refer to any electronic symbol or process attached to or logically associated with the signature page of this Agreement and executed and adopted by a Party with the intent to sign this Agreement pursuant to the Uniform Electronic Transactions Act as adopted by the State of New Jersey, as the same may be amended from time to time.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.


**ASSIGNOR:**

**BED BATH & BEYOND INC.**

By_____

Name_____

Its_____


**ASSIGNEE:**

**OLLIE'S BARGAIN OUTLET, INC.**

By_____

Name: Robert Helm

Title:  Chief Financial Officer


*Signature Page to Assumption and Assignment Agreement*

DocuSign Envelope ID: 3ED75CE5-5109-4719-9018-6DD62F566738

## Schedule A

### Description of Lease Asset(s)

| Lease Number | Lease Address | Lease Purchase Price | Maximum Cure Amount |
|---|---|---|---|
| 490 | 3308 S. Glenstone Ave<br>Springfield, MO | $10,000.00 | $0.00 |
| 1011 | 200 Aberdeen Commons<br>Aberdeen, NC | $10,000.00 | $0.00 |
| 318 | 3001-A101 West Loop 250 North<br>Midland, TX | $10,000.00 | $26,938.57 |
| 1107 | 1050 McKinley Place Drive<br>San Marcos, TX | $10,000.00 | $0.00 |
| 544 | 412 S. Bryant Avenue<br>Edmond, OK | $10,000.00 | $0.00 |

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between ~~—————————————~~ Bed Bath & Beyond Inc. ("Assignor") and ~~—————————————~~ Ollie's Bargain Outlet, Inc. ("Assignee" and, together with the Assignor (or, as applicable, Assignor, the "Parties" and each, a "Party")).  For the avoidance of doubt, all provisions of the applicable assigned contract(s), including any provision limiting future assignment, shall, subject to the terms and conditions of this Agreement, be binding on the applicable Assignee after consummation of the assumption, assignment and sale of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession~~, has~~ (collectively, the "Debtors"), have filed ~~a~~ voluntary petition s for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359, et. al. (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); ~~and~~

WHEREAS, on May 22, 2023, the Court entered that certain *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* in the Chapter 11 Cases [Dkt. No. 422] (the "Bid Procedures Order") providing for procedures for the assignment and sale of certain leases by the Debtors, including certain procedures, terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") approved by the Bid Procedures Order; and

WHEREAS, Assignor has agreed to assign and sell and Assignee has agreed to assume and purchase the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the leased premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the Lease Sale Procedures ~~for the Sale of Certain Lease Assets~~ (the "~~Lease Sale Procedures~~")and the terms and conditions of this Agreement, subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the ~~p~~Premises and the mutual agreements herein contained, the ~~p~~Parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Subject to the terms and conditions of this Agreement, Assignor ~~hereby sells, transfers, conveys,~~shall assume, sell, transfer, convey, assigns and set~~s~~ over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)    Subject to the terms and conditions of this Agreement, Assignee hereby assumes and undertakes to pay, perform, and discharge the Maximum Cure Claims together with all of Assignor's obligations and duties with respect to the Assigned Asset(s) arising or accruing on or after the Closing Date.

2.    Payment of Purchase Price.  Assignee shall, on the Closing ~~d~~Date ~~hereof~~, deliver the purchase price for the Assigned Asset(s) in the amounts ~~of~~ ~~—————————————~~set forth on Schedule A to this Agreement (the "Purchase Price") in immediately available funds wired (or sent by other agreed upon electronic funds transfer) to the account specified by Assignor(s).  If the ~~assumption and assignment~~Closing does not occur within five (5) business days after the entry of the Sale Order, or for any Lease where the Assignee has been named a qualified back-up bidder and timely written notice has been given by Assignor that it intend to proceed to a Closing on the Assignee's bid with respect to such Lease, five (5) business days

after Assignee has received such notice of Assignor's intent to close (or such later date(s) as the Assignor and Assignee may agree in writing) due solely to Assignee's wrongful refusal or inability to close on the sale of the Assigned Asset(s) ~~do(es) not occur by _____, 2023~~ by such date, Assignee will be liable for and will additionally reimburse Assignor for all amounts that came due, were required to be paid, or were in fact paid in connection with the Assigned Asset(s) on and after ~~_____, 2023~~ the date Closing was required to occur through the actual date of Closing.

~~3. Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).~~

3. Assignee's Assumption of Cure Claims. In addition to the Purchase Price, the Assignee hereby agrees to pay the actual amounts necessary to cure all defaults existing as of the Closing Date with respect to the Assigned Asset(s) as such cure amounts are determined pursuant to the Bid Procedures Order (or any further notice or order of the Court pertaining to such cure amounts) by final order of the Court or as agreed upon by the Assignee and the applicable counterparty(ies) of each such Lease(s) (each a "Cure Claim" and collectively, the "Cure Claims"), up to the maximum cure amount to be paid by Assignee for each such Lease as set forth on Schedule A hereto (each a "Maximum Cure Claim" and, collectively, the "Maximum Cure Claims"); provided, however that the Assignor shall be responsible for the payment of any and all defaults under any Lease relating to obligations of the Assignor arising prior to Closing that Assignor was required to perform under section 365(d)(3) of the Bankruptcy Code and such cure obligations shall not be Cure Claims for which the Assignee will be responsible under this Agreement (nor shall any such cure obligations of any Assignor be included in the calculation of the Maximum Cure Claim that may be payable by the Assignee with respect to such Lease). The listing of Maximum Cure Claims on Schedule A hereto shall not be an admission by the Assignee or Assignor that the Maximum Cure Claims, or any portion thereof, is due and owing by any applicable Assignor. To the extent that the actual Cure Claim under any Lease, or any unresolved cure claim timely asserted by any counterparty to Lease prior to Closing, exceeds the Maximum Cure Claim for such Lease, except as Assignee may otherwise agree in writing, Assignee shall not be required to purchase and take assignment of (and shall be excused from purchasing and taking assignment of) such Lease pursuant to this Agreement (and regardless of whether the actual Cure Claim or any alleged cure claim under any other Lease identified on Schedule A is less than the Maximum Cure Claim for any such Lease as set forth on Schedule A) and the refusal of Assignee to purchase and take assignment of any such Lease(s) shall not excuse the Assignor from proceeding to Closing with respect to all other Assigned Asset(s). Other than the Maximum Cure Claims (if any), Assignee shall have no other liability for any claims against or obligations of the Assignor arising under or with respect to the Assigned Asset(s) prior to Closing (the "Unassumed Pre-Closing Obligations"). Following the Closing, the Assignee shall provide prompt payment of any Cure Claim to any counterparty of any Lease(s) sold and assigned to Assignee under this Agreement (up to the Maximum Cure Claim for such Lease).

4. Sale Free and Clear. With the exception of Assignee's obligation to pay the Purchase Price, any Cure Claims it is required to pay hereunder (up to the Maximum Cure Claim(s)) and any obligations arising under the Lease(s) following the Closing, the Assigned Asset(s) will be assumed, assigned and sold to the Assignee free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, any liens or security interests of any creditor of any of the Debtors, any reclamation claims and any other claims, liens, encumbrances or rights held or asserted by any person or entity whatsoever with respect to any of the Assigned Asset(s), or any type of successor liability as to trade creditors, unemployment, income, property, sales or other taxes, or otherwise (collectively, "Claims and

Liens"), it being understood that all such Claims and Liens are not being assumed by, nor shall they become an obligation of, the Assignee.

5.    4. No Further Liability of Assignor. From and after the date hereof for Obligations Arising After the Closing Date. Aside from the Unassumed Pre-Closing Obligations (which shall remain obligations of the Assignor(s)), Assignor shall have no further obligations and duties with respect to the Assigned Asset(s) arising or accruing after the Closing.

6.    Bid on Assigned Assets Severable by Lease. Assignee's agreement to purchase the Assigned Asset(s) shall be deemed a separate offer and agreement with respect to each Lease identified in Schedule A to this Agreement. The terms of each such Agreement shall be the terms of the instant Agreement between the applicable Assignor and the Assignee with respect to such Lease, together the terms of the Purchase Price (and related deposit amount) and Maximum Cure Claim associated with such Lease, as set forth on Schedule A hereto.

7.    Contingent Bid with respect to Edmond Lease. Assignee's offer and agreement to purchase the Lease identified on Schedule A hereto for 544 – 412 S. Bryant Avenue, Edmond, Oklahoma (the "Edmond Lease") is contingent upon the waiver or expiration of the Lease's exclusivity provision in favor of Eckerd's limiting the sale of cosmetics, health and beauty aids and related items to 1,000 square feet of the retail floor area. The foregoing contingency is limited solely to the Edmond Lease and no other Lease or Assigned Asset(s) identified on Schedule A hereto shall be affected thereby.

8.    Payment and Return of Purchase Price Deposit. Assignor acknowledge that Assignee has paid a cash deposit (the "Deposit") representing 10 percent of the initial proposed Purchase Price that Assignee would pay for the purchase of the Assigned Asset(s) as set forth in Schedule A to the form of Agreement submitted by Assignee in connection with its bid on such assets (the "Bid Package"). To the extent that the Assignee does not purchase and take assignment of any Lease referenced in Schedule A to the form of Agreement included in its Bid Package (whether because such bid was not named the winning bid, or a backup bid, the Court refused to approve the sale/assignment of such Lease or the Assignee was excused from taking assignment of such Lease because the Cure Claim for such Lease exceeded the Maximum Cure Claim for such Lease), the Assignor shall return the Deposit associated with such Lease within thirty-five (35) days after the auction date (and, in any event, no later than sixty (60) days after Assignee's submission of its Bid Package).

9.    Expiration of Offer. Except as may hereafter be agreed by Assignee, Assignee's offer to purchase any Lease identified in Schedule A hereto pursuant to this Agreement shall expire: (a) for any Lease not named as a winning bid or backup bid by the Debtors, immediately upon the conclusion of the auction and the naming of the winning and backup bidders for such Lease (and in any event, no later than sixty (60) days from the date of submission of Assignee's Bid Package); (b) for any Lease for which Assignee has been named a backup bidder, upon the earlier of the closing of the sale/assignment for such Lease to another bidder and thirty (30) days after the auction with respect to such Lease (and, in any event, no later than sixty(60) days from the submission of Assignee's Bid Package). Nothing herein shall prevent Assignee from extending in writing the term/duration of its offer/bid for any Lease included in its Bid Package pursuant to this Agreement or from seeking performance of the Assignor hereunder.

10.    Closing; Conditions to Obligations to Close.

(a)    On the Closing Date:

(i)    Assignor shall have obtained and delivered the Sale Order to the Assignee.

(ii)     Assignee shall wire (or send by other agreed upon electronic funds transfer) to Assignor the Purchase Price, less the amount of the Deposit; and

(iii)     Assignor shall countersign this Agreement, reflecting the final Purchase Price with respect to each Lease being sold and assigned to the Assignee.

(b)     Assignor shall have performed (or shall provide adequate assurance that it will promptly perform) all of its obligations arising under section 365(d)(3) of the Bankruptcy Code through the Closing Date;

(c)     (i) the Court shall have entered an order in a form reasonably acceptable to the Assignee and Assignor, upon due and proper notice to all Parties entitled to notice (including, without limitation, all counterparties to the Lease(s)), in accordance with the requirements of the Bankruptcy Code (including sections 363 and 365 of the Bankruptcy Code), the Federal Rules of Bankruptcy Procedure, and any applicable local rules of bankruptcy procedure and orders of the Court (1) approving (a) this Agreement and the execution, delivery and performance by Assignor of this Agreement and the other instruments and agreements contemplated hereby; and (b) the assumption, assignment and sale of all of the Assigned Asset(s) by Assignor to Assignee free and clear of all Claims and Liens, (2) determining that Assignee is a good faith purchaser entitled to all the protections of section 363(m) of the Bankruptcy Code, (3) determining that the sale of the Assigned Asset(s) to Assignee pursuant to this Agreement satisfies the requirements of section 363(f) of the Bankruptcy Code, (4) authorizing and approving the assumption and assignment of the Assigned Asset(s), upon Closing, (5) determining that such assumption and assignment of the Assigned Asset(s) is in compliance with the applicable provisions of section 365 of the Bankruptcy Code and that the: (a) Assignor and Assignee have provided adequate assurance of the prompt payment of all Cure Claims (up to the amount of the Maximum Cure Claim) pursuant to sections 365(b)(1)(A)-(B) of the Bankruptcy Code; and (b) the Assignee has provided adequate assurance of future performance under sections 365(b)(1)(c), 365(f)(2)(A)-(B) and, where applicable, 365(b)(3)(A)-(D) of the Bankruptcy Code, and (6) providing that the applicable Closing will occur in accordance with the terms and conditions hereof and any other order necessary to close the sale, assumption and assignment of the Assigned Asset(s) (such order, the "Sale Order"), (ii) no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date, and (iii) the Sale Order shall not be subject to any challenges that challenge the Assignee's good faith; and

(d)     The Sale Order shall be entered on or before July 21, 2023 or such later date as may be agreed in writing by the Assignor and Assignee;

(e)     The closing of the transactions contemplated by this Agreement (the "Closing") shall occur on a mutually agreed upon date between the Assignor and Assignee on or before five (5) business days after the entry of the Sale Order or such later date as may be agreed to in writing by the Assignor and Assignee (the "Closing Date"); and

(f)     Each delivery contemplated by this Agreement to be delivered to the Assignee at or prior to the Closing shall be delivered.

11.     No Frustration of Closing Conditions.  Neither Assignor nor Assignee may rely on the failure of any condition to their respective obligations to consummate the transactions contemplated hereby, to be satisfied if such failure was caused by such Party's (or its affiliates') failure to use its reasonable best efforts to satisfy the conditions to the consummation of the transactions contemplated hereby or by any other breach of this Agreement.

12.     5.  Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other

DocuSign Envelope ID: 3ED75CE5-5109-4719-9018-69D62F566738

instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

13.    6. "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s) except that each applicable Assignor holds a leasehold interest as a lessee in each Lease being sold and assigned to Assignee hereunder and that each such Lease is an unexpired non-residential lease of real property pursuant to section 365 of the Bankruptcy Code.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

14.    7. Compliance With Law.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

15.    8. Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

16.    9. Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    10. No Reliance.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

18.    11. Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

19.    12. Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.  This Agreement may be executed by electronic signature (including via DocuSign) on the signature page of this Agreement, and each Party agrees that the electronic signatures of the Parties on the signature page of this Agreement are intended to authenticate this Agreement and to have the same force and effect as manual signatures.  As used herein, electronic signature shall mean and refer to any electronic symbol or process attached to or logically

associated with the signature page of this Agreement and executed and adopted by a Party with the intent to sign this Agreement pursuant to the Uniform Electronic Transactions Act as adopted by the State of New Jersey, as the same may be amended from time to time.

DocuSign Envelope ID: 3ED7F0F5-5109-4719-9018-69D62F566739

*[Different first page link-to-previous setting changed from on in original to off in modified.].*

IN WITNESS WHEREOF, the ~~p~~Parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

~~[COMPANY]~~**BED BATH & BEYOND INC.**

By_____
Name_____
Its_____

~~ASSIGNEE:~~

~~[~~ASSIGNEE~~]~~:

**OLLIE'S BARGAIN OUTLET, INC.**

By_____
Name: Robert Helm
~~Its~~_____
Title:  Chief Financial Officer

*[Link-to-previous setting changed from on in original to off in modified.].*

## Schedule A

### Description of Lease Asset(s)

| Lease Number | Lease Address | Lease Purchase Price | Maximum Cure Amount |
|---|---|---|---|
| 490 | 3308 S. Glenstone Ave Springfield, MO | $10,000.00 | $0.00 |
| 1011 | 200 Aberdeen Commons Aberdeen, NC | $10,000.00 | $0.00 |
| 318 | 3001-A101 West Loop 250 North Midland, TX | $10,000.00 | $26,938.57 |
| 1107 | 1050 McKinley Place Drive San Marcos, TX | $10,000.00 | $0.00 |
| 544 | 412 S. Bryant Avenue Edmond, OK | $10,000.00 | $0.00 |

*[Link-to-previous setting changed from on in original to off in modified.].*

**<u>EXHIBIT C-11</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of June 22, 2023, is by and between _____ ("Assignor") and Aldi Inc. or its designee ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases; and.

WHEREAS, Assignee intends to occupy and use the Premises for operation of the Assignee's prototypical "Aldi Food Market" retail grocery store and other uses as are incidental to the operation of a retail grocery store or for any other lawful retail purposes allowed by the Lease (the "Intended Use");

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.     Assignment and Assumption.  On the Effective Date (defined hereafter),

(a)     Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)     Except as may be agreed in writing by the Landlord or as provided in the Sale Order (as defined below), Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s); provided, however, the Assignee shall not be responsible for and does not assume any responsibility for any personal injury or property damage claims that accrued or arose before the Effective Date.

2.     Payment of Purchase Price.  Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of  $100,000.00 (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  To the extent Assignor has already paid rent and/or other charges due and owing under the Lease for the month in which the Closing (defined below) occurs or for subsequent months, Assignee and Assignor shall adjust on a per diem basis for the same at Closing. Except as otherwise agreed by Assignee in writing, Assignee shall not be responsible for payment of rent and other charges that first come due pursuant to the Lease prior to the Effective Date.

3.      <u>Closing and Effective Date of Assignment</u>.  Unless otherwise agreed to in writing by Assignee, the closing of the assignment of the Assigned Assets (the "Closing") shall take place on the later of (i) one (1) business day following Bankruptcy Court Approval and entry of an order by the Bankruptcy Court approving the assumption and assignment of the Assigned Assets to Assignee (the "Sale Order"), provided there is no stay pending appeal, and (ii) the date agreed to by Assignor and Assignee in writing.

4.      <u>Assumption of Liabilities</u>.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s); provided, however, Assignee shall not be responsible for and does not assume any liability or responsibility whatsoever for any personal injury or property damages claim that accrued or arose before the Effective Date.

5.      <u>Sale Order Conditions</u>.  The obligations of Assignee to consummate the Closing hereunder is expressly subject to and conditioned upon the entry of the Sale Order by the Bankruptcy Court under sections 363 and 365 of the Bankruptcy Code in form and substance reasonably satisfactory to Assignee.  At a minimum, the Sale Order shall:

(a)      <u>General Conditions</u>.  (i) authorize and approve the sale and assignment of the Assigned Assets by Assignor to Assignee free and clear of all mortgages, liens, liabilities, claims, encumbrances, and interests in accordance with the terms of this Agreement under sections 105(a) and 363(f) of the Bankruptcy Code, (ii) contain a finding that Assignor and Assignee have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and also finding that Assignee is not a "successor in interest" of Assignor, (iii) order that, notwithstanding Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, the Sale Order shall take effect immediately upon entry, (iv) order that there shall be no rent accelerations, assignment fees, increases or other fees charged or chargeable to Assignee as a result of the sale and assignment of the Assigned Assets, (v) include an exhibit stating that the entirety of the documents comprising the Assigned Assets is the same as those documents provided by Assignor to Assignee prior to the Effective Date, (vi) order that the Landlord shall cooperate and expeditiously execute and deliver, upon the reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approvals or other necessary documents required for the alteration, opening and operating of the Premises by Assignee, and (vii) authorize the rejection of all license and concession agreements pursuant to which Assignor has granted any party a license, access or right to use all or any portion of the Premises for any purpose whatsoever.

(b)      <u>Lease Specific Conditions</u>.  (i) notwithstanding anything to the contrary contained in the Lease, any reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement (each an "<u>REA</u>"), any ground or master lease (each a "<u>Master Lease</u>") or local law, (i) authorize Assignee to perform alterations, remodel, and to replace and modify existing signage with signage consistent with such signage utilized by Assignee at other locations for the store concept Assignee will operate at the Premises notwithstanding any provision in the Lease, REA, any Master Lease, or local law to the contrary, (ii) find that the Intended Use is an authorized use under the terms of the Assigned Assets and order that the Assigned Assets are being sold and assigned to Assignee free and clear of any use restrictions or limitations contained in the Assigned Assets, any REA, any Master Lease, or any other lease agreement or document to the contrary, and any such restriction or limitation is expressly unenforceable as against the Assignee, (iii) order that terms and provisions in the Lease such as "going dark" prohibitions, alteration restrictions, use restrictions, recapture provisions, clauses which impose a fee or a penalty or a profit sharing upon assignment, clauses which seek to increase the rent or impose a penalty or to modify or terminate a lease, a Master Lease, or REA as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or prohibit assignment, rights

of first refusal or purchase option provisions in favor of third parties, continuous operating covenants, covenants that any user of the Premises conveyed by the Lease operate under the name of the Assignor and/or operate with a use similar to Assignor's use, and similar provisions contained in any REA or any Master Lease, shall not restrict, limit or prohibit the sale and assignment of the Assigned Assets to Assignee, and declare and find such clauses to be anti-assignment clauses within the meaning of sections 365(f) of the Bankruptcy Code, and (iv) order that extension and renewal options contained in the Lease which purport to be personal only to Assignor or any predecessor in interest of Assignor or to be exercisable only by Assignor or any predecessor in interest of Assignor constitute an unenforceable restriction on assignment and may be freely exercised by Assignee to its full extent.

6.      No Further Liability of Assignor.  From and after the Effective Date with respect to the Assigned Assets, except as provided herein or in the Sale Order, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

7.      Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

8.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

9.      Possession.  On the Effective Date, the Assignor agrees to deliver Assignee vacant possession of the Premises, with all personal property of any tenant or occupant removed and otherwise in broom clean condition, unless otherwise agreed to in writing by Assignor and Assignee.

10.     Compliance With Law.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section with respect to the Assigned Assets being conveyed by Assignor.

11.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

12.     Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

13.     No Reliance.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained

to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

14.    <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

15.    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____

**ASSIGNEE:**
**Aldi Inc.**

By_____
Name Eric Riegger_____
Its_____
VP Finance and Administration

## <u>Schedule A</u>

**Description of Lease Asset(s)**

Store #228 – Lease for property located at 12309 Chenal Parkway, Suite A, Little Rock, AR

**<u>EXHIBIT C-12</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between  MCV23 LLC ("Assignor") and Dania, Incorporated d/b/a Scandinavian Designs ("Assignee").  For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)     Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)     Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.      Payment of Purchase Price.  Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of $50,000  (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.

3.      Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.      No Further Liability of Assignor.  From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5.      <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.      <u>"As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s). Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.      <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.      <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.      <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.     <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.     <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____


**ASSIGNEE:**
**Dania, Incorporated,**
**d/b/a Scandinavian Designs**

By_____
Name: Robert McVay
Its General Counsel

## Schedule A

**Description of Lease Asset(s)**

## EXHIBIT C-13

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between **BED BATH & BEYOND INC.**, a New York corporation ("Assignor") and **WESTERN CARRIERS, INC.**, a Delaware corporation ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") approved pursuant to that certain Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases and (III), and Granting Related Relief [Docket No. 422] ("the Lease Sale Procedures Order"),[1] subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    As of the Assignment Date (as hereinafter defined), Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s) including all items set forth in Section 8.

(b)    As of the Assignment Date, Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.    Payment of Purchase Price. In consideration of the assignment and assumption set forth hereof, Assignee shall pay to Assignor the sum of $10,500,000.00. On the date hereof, a deposit of $1,050,000 shall be paid by Assignee to Assignor's attorneys, Cole Schotz, P.C., who shall hold such deposit in escrow. Assignee hereby directs Cole Schotz, P.C. as escrow agent, to release such deposit to Assignor on the date of the issuance of the Bankruptcy Court Approval. The balance of the consideration shall be paid by Assignee to Assignor one business day after the issuance of the Bankruptcy Court Approval (the "Assignment Date").

---

[1] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Lease Sale Procedures Order or the Lease Sale Procedures, as applicable.

3.      Lease Sale Procedures.  The Lease Sale Procedures are incorporated herein by reference and Assignee expressly agrees that this Agreement shall be subject to a Lease Auction (in accordance with the timing of the Phase 1 Lease Auction) and the right of Assignor to accept a higher or better Bid for the Assigned Asset(s).  Assignor agrees that the first bid at any Lease Auction must be at least $11,000,000.00, but that thereafter the size of the bid increment and the nature and conduct of the Lease Auction shall be at the discretion of Assignor in accordance with the Lease Sales Procedures.  If this Agreement is terminated because Assignor enters into an Alternative Transaction,[2] Assignor shall pay to Assignee a Break-Up Fee[3] upon the consummation of such Alternative Transaction.

4.      Assumption of Liabilities.  Assignee shall assume obligations with respect to the Assigned Asset(s) accruing after the Assignment Date.  If the Assignment Date is other than the first day of a month, when rent payment is due under the Lease, then on the Assignment Date rent shall be apportioned between Assignor and Assignee such that, on the Assignment Date, Assignor shall receive, in addition to the consideration payable by Assignee under Section 2 hereof, a credit for any rent that has been paid by Assignor for the Assignment Date and any period thereafter.

5.      No Further Liability of Assignor.  From and after the Assignment Date, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

6.      Further Assurances.  At any time and from time to time after the Assignment Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).  Assignor represents that:

(a)      it has full authority to enter into this Agreement;

(b)      as of the effective date of this Assignment, to the actual knowledge of Assignor, Assignor has not received notice from the landlord under the Lease alleging that an uncured default by Assignor exists under the Lease; and

(c)      the Lease, as amended, is in full force and effect.

7.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

8.      Furniture, Fixtures and Equipment ("FF&E").  All of the Assignor's right, title and interest to, and possession of, any FF&E remaining at the Premises on the Assignment Date shall be vested in Assignee free and clear of any all liens and claims, including, without limitation, all racking systems, material handling equipment, forklifts, charging stations, furniture, and Assignee is free to dispose of the

---

[2] "Alternative Transaction" shall mean the approval by the Court of a sale or sales of a material portion of the Assigned Assets to an assignee other than Assignor.

[3] The "Break-Up Fee," within the meaning of the Lease Sale Procedures Order, shall be fixed at the sum of $315,000.00, representing an amount equal to 3.0% of the sum of the Purchase Price.

FF&E in their sole and absolute discretion without liability to Assignor.  As of the Assignment Date, Assignor hereby transfers to Assignee, free and clear of all liens, claims and encumbrances, possession of, and title to, all solar facilities and equipment located at the Property, including the solar panels, racking system, combiner boxes, cable, disconnects and central inverters (the "Solar Facilities").  Assignor will execute such documents and provide such additional cooperation as may be required in order to facilitate and effect the transfer of the Solar Facilities to Assignee as of the Assignment Date, including but not limited to the execution of the GATS System Change Form attached hereto as <u>Exhibit A</u>.

9.    <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

10.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to principles of conflicts of law.

11.    <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12.    <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

14.    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**BED BATH & BEYOND INC.,**

a New York corporation


By: _____
Name:
Its:


**ASSIGNEE:**

**WESTERN CARRIERS, INC.,**

a Delaware corporation

By: _____
Name: Marc Cohen
Its: Executive Vice President

## Schedule A

### Description of Lease Asset(s)

Lease dated December 9, 2010 PRW URBAN RENEWAL 1, LLC, a New Jersey limited liability company ("PRW") and BED BATH & BEYOND INC., a New York corporation, as amended by that certain First Amendment to Lease dated March 1, 2012 and by that certain Second Amendment to Lease dated March 29, 2013, pursuant to which PLD leased to BBBY certain premises consisting of approximately 191,688 square feet located at 3 Enterprise Avenue North, Secaucus, New Jersey.