**GREENBERG TRAURIG, LLP**

Paul H. Schafhauser, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3233
Email: paul.schafhauser@gtlaw.com

*Counsel to IKEA Property, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., et al., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**IKEA PROPERTY, INC.'S MOTION FOR ENTRY OF AN ORDER COMPELLING THE DEBTORS' PAYMENT OF CERTAIN POST-PETITION RENT AND OTHER OBLIGATIONS DUE PURSUANT TO 11 U.S.C. § 365(d)(3)**

TO:  THE HONORABLE VINCENT F. PAPALIA,
 UNITED STATES BANKRUPTCY JUDGE:

Ikea Property, Inc. ("Ikea") files this *Motion for Entry of an Order Compelling Debtors' Payment of Certain Post-Petition Rent and Other Obligations Due Pursuant to 11 U.S.C. § 365(d)(3)* (the "Motion"). In support of the Motion, Ikea represents as follows:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**PRELIMINARY STATEMENT**[2]

1. Debtor Bed Bath & Beyond Inc. ("BBB") is the tenant of nonresidential property located at 300 Ikea Drive, near Route 4 and Route 17, Paramus, New Jersey 07652 (the "Ikea Premises"), pursuant to a Lease Agreement with Ikea, as landlord, dated June 10, 2004 (as amended and supplemented, the "Lease Agreement"). In turn, BBB sublets approximately 60,000 square feet of the Ikea Premises under a certain Sublease Agreement with Christmas Tree Shops, Inc. ("CTS"), as subtenant (the "Sublease Agreement"). On May 5, 2023, CTS and its affiliates filed chapter 11 petitions for bankruptcy relief.[3]

2. On April 24, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of any Personal Property, Effective as of the Rejection Date and (II) Granting Related Relief* [Dkt. No. 79] (the "Lease Rejection Motion") seeking the entry of an order authorizing BBB to reject the Lease Agreement (*see* Lease Rejection Motion, Schedule 1, line 169) effective as of April 30, 2023. The Lease Rejection Motion did not seek to reject the Sublease Agreement.

3. On May 9, 2023, Ikea filed its objection to the Lease Rejection Motion [Dkt. No. 286] (the "Objection") because, among other things, BBB had not delivered, and could not deliver, possession of the Ikea Premises to Ikea on April 30, 2023 due to CTS' continued occupancy of a substantial portion of the Ikea Premises. Shortly after the filing of the Objection, Ikea and BBB conferred and resolved the Objection whereby BBB agreed to, among other things, pay to Ikea: (i) 50% of the rent and other charges due for May 2023 pursuant to the Lease Agreement (with the balance of the May 2023 rent being given administrative claim status); and (ii) 100% of the rent

---

[2] Capitalized terms used in this Objection but not otherwise defined herein shall have the same meanings as ascribed to them in the Motion.

[3] *In re Christmas Tree Shops, LLC*, Case No. 23-10576-TMH (Bankr. D. Del. May 5, 2023) (Horan, J.).

and other charges due pursuant to the Lease Agreement for June 2023 and all subsequent months pursuant to section 365(d)(3) of the Bankruptcy Code, provided that the CTS had not vacated the Ikea Premises.

4. On May 17, 2023, the Court entered an order [Docket No. 373] (the "Lease Rejection Order") approving the Debtors' rejection of the Lease Agreement effective as of the date CTS vacates the Ikea Premises. (Lease Rejection Order, ¶ 2). As of the date hereof, CTS continues to occupy the Ikea Premises.

5. The Debtors paid to Ikea $219,641.12 on June 1, 2023 and $218,071.29 on June 29, 2023 for post-petition rent—leaving a shortfall of $170,762.25 due and owing to Ikea for June 2023 rent under the Lease Agreement, together with the 2022 TMI Reconciliation Amount. This Motion seeks allowance and payment of an administrative claims for that unpaid rent pursuant to Section 365(d)(3) of the Bankruptcy Code.

## JURISDICTION, NATURE OF MATTER, AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This action constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought in this Motion is 11 U.S.C. § 365(d)(3).

7. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A. General Background**

8. On April 23, 2023 (the "Petition Date"), each of the above-captioned debtors (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"). The Debtors continue to operate

their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On May 5, 2023, the U.S. Trustee appointed the official committee of unsecured creditors [Dkt. No. 218]. No trustee or examiner has been appointed in these chapter 11 cases.

**B.    Ikea Premises, the Lease Agreement and the Sublease Agreement**

10. Ikea is the owner of the Ikea Premises under which BBB is a tenant pursuant to the Lease Agreement.

11. Under the Lease Agreement, BBB is required to pay monthly rent, plus additional costs, charges and expenses, in the amount of approximately $220,000 each month throughout 2023. Under the Lease Agreement, BBB is required to continue to pay rent, plus additional costs, charges and expenses, during the remainder of the Term, which expires on October 3, 2041.

12. On April 17, 2023, Ikea notified BBB through a demand notice that if BBB failed to pay the sum of $218,807.86, consisting of unpaid rent, additional rent, common area maintenance charges, and taxes, an event of default would exist under the Lease Agreement.

13. In connection with BBB's occupancy of the Ikea Premises, BBB, as sublandlord, entered into the Sublease Agreement with CTS as subtenant. As of the date hereof, CTS remains in possession and currently occupies a substantial portion of the Ikea Premises.

14. On May 5, 2023, CTS and its affiliates filed chapter 11 petitions for relief under chapter 11 of the Bankruptcy Code. *In re Christmas Tree Shops, LLC*, Case No. 23-10576-TMH (Bankr. D. Del. May 5, 2023) (Horan, J.).

**C.    BBB's Rejection of the Lease Agreement**

15. On April 24, 2023, the Debtors filed the Lease Rejection Motion seeking the entry of an order authorizing BBB to reject the Lease Agreement (*see* Lease Rejection Motion, Schedule

4

1, line 169) effective as of April 30, 2023. The Lease Rejection Motion did not seek to reject the Sublease Agreement.

16. On May 9, 2023, Ikea filed the Objection because, among other things, BBB had not delivered, and could not deliver, possession of the Ikea Premises to Ikea on April 30, 2023 due to CTS' continued occupancy of a substantial portion of the Ikea Premises. Shortly after the filing of the Objection, Ikea and BBB conferred and resolved the Objection by agreeing to the following terms:

  a. Ikea's "stub rent" for the time period from the Petition Date through April 30, 2023 pursuant to section 503(b)(1) of the Bankruptcy Code would be deemed an allowed administrative expense claim;

  b. On May 12, 2023, the Debtors would pay to Ikea 50% of the rent and other charges due for May 2023 pursuant to the Lease Agreement;

  c. The remaining 50% of rent and other charges due pursuant to the Lease Agreement for May 2023 would be deemed an allowed administrative expense claim;

  d. The Debtors would pay rent and other charges due pursuant to the Lease Agreement to Ikea for June 2023 and for all subsequent months pursuant to section 365(d)(3) of the Bankruptcy Code provided that the CTS had not vacated the premises.

17. On May 17, 2023, the Court entered an order [Docket No. 373] (the "Lease Rejection Order") approving the Debtors' rejection of the Lease effective as of the date that CTS vacates the Ikea Premises. (Lease Rejection Order, ¶ 2). As of the date hereof, CTS continues to occupy the Ikea Premises.

18. Ikea has followed up several times with BBB, through counsel, regarding the need to pay the outstanding amounts due to Ikea for June 2023 rent. To date, however, Ikea has continued to fail to pay such rent.[4]

---

[4] On or about June 28, 2023, BBB forwarded payment for July 2023 rent. Such payment, however, did not include the remaining balance due for June 2023.

### D. Unpaid Post-Petition Rent

19. The Debtors have enjoyed the benefits of the Lease Agreement and use of the Ikea Premises since the Petition Date, yet Ikea has received only a portion of the required post-petition administrative expenses. As of the date hereof, a total of $170,762.25 remains due and owing to Ikea from the Debtors for unpaid post-petition obligations pursuant to section 365(d)(3) of the Bankruptcy Code. While the Debtors have made two payments to Ikea post-petition, there remains an unpaid balance in the amount of $170,762.25 (the "Unpaid Post-Petition Rent"). The Unpaid Post-Petition Rent is broken down below, which includes certain amounts that became due to Ikea on June 6, 2023 pursuant to the Lease Agreement after reconciling certain common area maintenance charges made in 2022 (the "2022 TMI Reconciliation Amount"):

| Item | Amount |
| --- | --- |
| May Rent | $ 218,448.94 |
| June Rent | $ 219,641.12 |
| July Rent | $ 218,071.29 |
| 2022 TMI Reconciliation Amount | $ 61,537.78 |
| **Subtotal:** | $ 717,699.13 |
| Debtor Payment – June 1, 2023 | $ (219,641.12) |
| Debtor Payment – July 1, 2023 | $ (218,071.29) |
| May Rent (50% of $218,448.94)[5] | $ (109,224.47) |
| **Grand Total:** | $ 170,762.25 |

### RELIEF REQUESTED

20. Ikea respectfully requests that the Court enter an order allowing and compelling payment of the Unpaid Post-Petition Rent pursuant to section 365(d)(3) of the Bankruptcy Code.

---

[5] As noted above, under the parties' agreement, 50% of rent and other charges due pursuant to the Lease Agreement for May 2023 will be deemed an allowed administrative expense claim.

6

A.  **Section 365(d)(3) of the Bankruptcy Code Mandates that the Debtor Promptly Pay All Post-Petition Rent and Obligations Arising Under the Lease Agreement.**

21. Section 365(d)(3) of the Bankruptcy Code is unambiguous—a debtor in possession "shall timely perform all of the obligations of the debtor . . . arising from and after the order for relief under any expired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3); *see In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms."); *In re Pelican Pool & Ski Ctr., Inc.*, No. 05-22983 (DHS), 2009 WL 2244573, at *11 (D.N.J. July 27, 2009) (recognizing same); *In re Pac-West TeleComm, Inc.*, 377 B.R. 119, 123 (Bankr. D. Del. 2007).

22. The purpose of section 365(d)(3) of the Bankruptcy Code is to ensure immediate payment of lease obligations so that a landlord is not providing the leased premises to the debtor but not being compensated. *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr. E.D. Pa. 1987) (summarizing legislative history of section 365(d)(3)). It operates to prevent landlords from becoming involuntary creditors of the bankruptcy estates. *See In re Handy Andy Home Imp. Centers, Inc.*, 196 B.R. 87, 95 (Bankr. N.D. Ill. 1996).

23. Therefore, section 365(d)(3) of the Bankruptcy Code requires the Debtors to pay all post-petition obligations under the Lease Agreement, pursuant to its terms. Indeed, even obligations under the Lease Agreement that arise post-petition but relate to prepetition activity must be "timely" paid by the debtor under section 365(d)(3) of the Bankruptcy Code. *See In re Pac-W. Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) (compelling the payment of reconciliation amounts owed to a landlord for pre-petition charges because such amounts became due under the lease post-petition); *see Pelican Pool & Ski Ctr., Inc.*, 2009 WL 2244573, at *16

(awarding landlord administrative expense claims for reconciliation charges that became due post-petition). The Debtors' obligations under section 365(d)(3) of the Bankruptcy Code are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code. *See In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 817 (3d Cir. 2010) ("[Section] 365(d)(3) is best understood as an exception to the general procedures of § 503(b)(1) that ordinarily apply."). Courts uphold the requirement of immediate payment—and the landlord's right to retain such payments—even when faced with an estate's later administrative insolvency. *See In re Valley Media, Inc.*, 290 B.R. 73, 77 (Bankr. D. Del. 2003).

24.    The Unpaid Post-Petition Rent constitutes amounts falling due under the terms of the Lease Agreement during the administrative period, and which are required to be timely paid. The Unpaid Post-Petition Rent includes the 2022 TMI Reconciliation Amount, which is also entitled to prompt payment under section 365(d)(3) of the Bankruptcy Code. *See Pac-W. Telecomm, Inc.*, 377 B.R. at 126; *Pelican Pool & Ski Ctr., Inc.*, 2009 WL 2244573, at *16. Accordingly, Ikea respectfully requests entry of an order compelling the Debtors to immediately make the payment of the Unpaid Post-Petition Rent as required by section 365(d)(3) of the Bankruptcy Code.

[*Remainder of page intentionally left blank*]

**WHEREFORE,** Ikea respectfully requests that this Court enter an order, substantially in the form attached hereto, (i) compelling the payment of the Unpaid Post-Petition Rent under section 365(d)(3) of the Bankruptcy Code and (ii) granting such other relief as is just and proper.

Dated: July 5, 2023                             **GREENBERG TRAURIG, LLP**

By: */s/ Paul H. Schafhauser*
Paul H. Schafhauser, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3233
Email:  paul.schafhauser@gtlaw.com

*Counsel to IKEA Property, Inc.*

### CERTIFICATE OF SERVICE

I certify that on July 5, 2023, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey on those parties registered to receive electronic notices and (ii) electronic mail on counsel to the Debtors.

By: */s/ Paul H. Schafhauser*
Paul H. Schafhauser, Esq.