EXHIBIT C PART TWO

Upon a Taking of any portion of the Premises, annual fixed rent shall be reduced by an amount equal to the product of (i) ninety percent (90%) of the annual fixed rent otherwise payable under this Lease, multiplied by (ii) a fraction, the numerator of which is the total square foot Floor Area of the Premises taken and the denominator of which is the total square feet of Floor Area of the Premises immediately prior to such Taking.

SECTION 18.5.  Both Landlord and Tenant shall have the right to participate in any condemnation proceedings.  Each shall notify the other promptly of any contemplated or threatened condemnation proceeding of which it shall become aware and shall keep the other informed of developments with respect thereto.

SECTION 18.6.  Tenant's right to recover damages as Tenant, in case of any Taking, shall not be affected, prejudiced, restricted or limited, whether or not this Lease has been terminated because of such Taking or is subject to termination; provided, however, that no such award to Tenant shall adversely affect or diminish any award to which Landlord or the holder of any mortgage to which this Lease is subject or subordinate shall be entitled, and in addition, in the event of the Taking of the whole or any part of the Premises, Tenant does not waive any right which may exist to bring a separate action against the Taking authority for the value of Tenant's trade fixtures and equipment, leasehold improvements, damages for interruption or dislocation of business in the Premises and loss of goodwill and moving and remodeling expenses.

## ARTICLE XIX

## DEFAULTS AND REMEDIES

SECTION 19.1.  If any one or more of the following events ("Events of Default") occur, then Tenant shall be deemed to be in default under this Lease:

(a)    If Tenant fails to pay any annual fixed rent, additional rent or other charges required to be paid by Tenant when the same shall become due and payable hereunder, and such failure continues for ten (10) days after written notice is sent by Landlord to Tenant informing Tenant of such failure; and/or

(b)    If Tenant fails to perform or observe any term or condition of this Lease (other than as set forth in subparagraph (a) above), and such failure continues for thirty (30) days after written notice is sent by Landlord to Tenant informing Tenant of such failure; provided, however, that if the failure set forth in Landlord's notice is such that it requires more than thirty (30) days to correct, Tenant shall not be deemed to be in default hereunder if Tenant (i) promptly and diligently commences curing the failure within thirty (30) days after written notice is sent by Landlord to Tenant informing Tenant of such failure, and (ii) diligently prosecutes the cure to completion.

## SECTION 19.2.

(a)    If an Event of Default as hereinabove specified in Section 19.1 shall occur and shall not be cured within the time period specified in Section 19.1, then Landlord may give Tenant a five (5) day notice of its intention to end the term of this Lease, and thereupon, at the expiration of said five (5) day period, this Lease shall expire as fully and completely as if that day were the date herein originally fixed for the expiration of the Term, and Tenant shall then quit and surrender the Premises to Landlord but Tenant shall continue to remain liable as hereinafter provided.

(b)    If an Event of Default shall occur and shall not have been remedied within the time and the manner hereinabove provided, then in any of such Event of Default, Landlord, without prejudice to any other right or remedy of Landlord held

hereunder or by operation of law, an notwithstanding any waiver of any breach of a condition or Event of Default hereunder, may, at its option and without further notice, re-enter the Premises or dispossess Tenant and any legal representative or successor of Tenant or other occupant of the Premises by summary proceedings or other appropriate suit, action or proceeding, and remove its effects and hold the Premises as if this Lease had not been made, and Tenant hereby expressly waives the service of notice of intention to re-enter or to institute legal proceedings to that end and any right of redemption.

(c)    If Landlord exercises its rights under this Section 19.2, then notwithstanding such Event of Default, re-entry, expiration and/or dispossession by summary proceedings or otherwise, Tenant shall continue to be liable during the full period which would otherwise have constituted the balance of the term hereof, and shall pay as liquidated damages at the same times as the annual fixed rent, additional rent and other charges become payable under the terms of this Lease, a sum equal to the annual fixed rent, additional rent and other charges reserved herein (less only the net proceeds of reletting as hereinafter provided), and Landlord may (and shall use reasonable efforts to) rent the Premises either in the name of Landlord or otherwise, reserving the right to rent the Premises for a term or terms which may be less than or exceed the period which would otherwise have been the balance of the term of this Lease without releasing Tenant from any liability, applying any monies collected, first to the reasonable expenses incurred in resuming or obtaining possession, next to the reasonable expenses incurred in restoring the Premises to a rentable condition (including, without limitation, reasonable brokerage commissions and reasonable professional fees), and then to the payment of annual fixed rent, additional rent and other charges due and to grow due to Landlord under this Lease, together with reasonable legal fees of Landlord therefor.

(d)    Notwithstanding anything contained in this Lease to the contrary, Landlord shall use reasonable efforts to mitigate Landlord's damages resulting from Tenant's default hereunder.

(e)    If Landlord commences any summary proceedings for non-payment of any installment(s) of annual fixed rent or additional rent or other charge payable under this Lease, Tenant shall not impose any counterclaim in any such proceeding unless same is mandatory or unless Tenant has an outstanding unsatisfied final and unappealable monetary judgment against Landlord for an unfulfilled obligation of Landlord under this Lease.

(f)    To the extent such waiver is not prohibited by the laws of the State of New York, Landlord and Tenant each waive the right to a trial by jury in any action or proceeding brought by either party against the other party to enforce the terms and provisions of this Lease.

**SECTION 19.3.** As used herein, the term "Default Rate" shall mean the lesser of (i) the Prime Rate (as hereinafter defined) plus two percent (2%) per annum or (ii) the maximum rate of interest permitted under applicable law; provided, however, with respect to late payments of annual fixed rent, the term "Default Rate" shall mean the lesser of (x) the Prime Rate (as hereinafter defined) plus four percent (4%) per annum or (y) the maximum rate of interest permitted under applicable law.  As used herein, "Prime Rate" shall mean the base rate on corporate loans at large U.S. money center commercial banks as published from time to time by *The Wall Street Journal,* adjusted with each change in such published rate.

**SECTION 19.4**.

(a)    If Landlord fails to perform or observe any of the obligations on Landlord's part to be performed or observed pursuant to this Lease, and such failure continues for thirty (30) days after written notice thereof is sent by Tenant to Landlord informing Landlord of such failure, then Landlord shall be deemed to be in default under this Lease; provided, however, that if the failure set forth in Tenant's notice is such that it requires more than thirty (30) days to correct, Landlord shall not be deemed to be in default hereunder if (i) Landlord (A) promptly and diligently commences curing the failure within thirty (30) days after written notice is sent by Tenant to Landlord informing Landlord of such failure; and (B) diligently prosecutes the cure to completion following the expiration of the original thirty (30) day period set forth herein or (ii) Landlord obtains injunctive relief from a court of appropriate jurisdiction staying its obligation to proceed. Upon such default by Landlord, Tenant may, in addition to any remedies available to it at law or in equity, perform the same for and on behalf of Landlord, the cost of which performance, upon the proper payment thereof, together with all interest and penalties necessarily paid in connection therewith and any and all other damages incurred by Tenant as a result of any such default, shall be paid to Tenant by Landlord upon demand, with interest thereon at the Default Rate from the date of each expenditure and/or incurrance or, at the continuing option of Tenant, the same may (in whole or in part), with interest as aforesaid, be deducted from annual fixed rent (not to exceed twenty-five percent (25%) of the monthly installment of annual fixed rent) or any other charge which may be due or become due thereafter and, if the remaining portion of the Term is not sufficient to enable Tenant to recover such amount over such remaining Term, then Tenant shall have the right to extend the Term upon the same terms and conditions until such amount is recovered in full by Tenant. If the default involves the failure of Landlord to pay monies due to Tenant under this Lease, interest shall accrue on such past due sums from and after the expiration of the thirty (30) day cure period set forth above at the Default Rate, and such sums may be deducted from annual fixed rent and other charges to the extent permitted above.

(b)    Notwithstanding the foregoing provisions of this Section and regardless of whether an event of Landlord's default shall have occurred, such curative action by Tenant may be taken without any notice if Tenant, in its good faith opinion, reasonably believes: (i) it would be materially injured by failure to take rapid action; or (ii) the condition complained of constitutes an emergency. Tenant shall use commercially reasonable efforts to give Landlord such notice by telephone or by facsimile or other form of electronic transmission as is reasonably practicable under the circumstances.

(c)    In order to effectuate the curing of any failure referred to in paragraphs (a) and (b) of this Section 19.4, Landlord shall take any and all action (including, without limitation, the execution of appropriate documents) necessary in order to assign, to the extent permitted by law, to Tenant the right to take action to effectuate such curing for and on behalf of Landlord.

(d)    If a court finally determines that Tenant has improperly exercised its self-help and/or offset rights under subparagraphs (a) and/or (b) of this Section 19.4, Tenant shall have thirty (30) days after receipt of notice of such final judgment to pay to Landlord any sums found by such court to be due from Tenant to Landlord, together with interest on such sums at the Default Rate before Landlord shall have the right to declare a termination of this Lease.

## ARTICLE XX

### TENANT'S USE OF PREMISES

SECTION 20.1.  Tenant may use the Premises for any commercial retail use permitted under applicable zoning ordinances; provided, however, Tenant shall not use the Premises for any use that will violate the restrictive use covenants set forth in EXHIBIT J attached hereto and made a part hereof.  Neither the foregoing language nor any other language contained in this Lease shall be construed to obligate Tenant to operate a store within the Premises.

SECTION 20.2.

(a)    If Tenant shall cease to operate (i.e, open the Premises for business to the general public) within the Premises for a period of nine (9) consecutive months and such cessation of operations is not due to an Excusable Event (as hereinafter defined), Landlord shall have the option to terminate this Lease (the "Termination Option") on the terms and conditions set forth in this Section 20.2.  As used in this Section 20.2, the term "Excusable Event" shall mean that (i) the Premises is being repaired or restored following a fire or other casualty or following a condemnation of a portion of the Premises, (ii) Tenant is in the process of remodeling the Premises, (iii) Landlord is in default of its obligations under this Lease, or (iv) Tenant is unable to operate from the Premises due to force majeure, as set forth in Section 27.11 hereof.

(b)    Subject to the terms and conditions of this Section 20.2, Landlord shall exercise the Termination Option by delivering to Tenant written notice of its election to exercise the Termination Option at any time following the expiration of said nine (9) month period.

(c)    This Lease shall terminate on the date which occurs sixty (60) days after the effective date of Landlord's exercise of the Termination Option (the "Termination Date") as if this Lease were to expire on the Termination Date by the lapse of time.  Tenant shall surrender the Premises to Landlord on the Termination Date in the condition required by Section 17.1 hereof.   .

(d)    Notwithstanding the foregoing, if Tenant has assigned this Lease or sublet the Premises prior to the date on which Landlord exercises the Termination Option, Landlord shall not have the right to exercise the Termination Option if the assignee or subtenant resumes operations from the Premises within twelve (12) months after the effective date of the assignment or the effective date of the sublease, as the case may be.

(e)    Notwithstanding the foregoing, if Tenant is negotiating a sublease or assignment after the expiration of the nine (9) month period described in Section 22.(a) above, Tenant may send a notice to Landlord (the "Negotiation Notice") advising Landlord of such negotiations, and if Tenant sends the Negotiation Notice to Landlord, then (i) Landlord shall not have the right to exercise the Termination Option for a period of one hundred twenty (120) days following the effective date of the Negotiation Notice, and (ii) if such negotiations result in the assignment of this Lease or the subletting of the Premises, then Landlord shall not have the right to exercise the Termination Option if the assignee or subtenant resumes operations from the Premises within twelve (12) months after the effective date of the assignment or the effective date of the sublease, as the case may be.

(f)    Tenant shall have the right to send Landlord only three (3) Negotiation Notices for each time that Tenant ceases to operate the Premises.

## ARTICLE XXI

### LEASEHOLD MORTGAGES

**SECTION 21.1.** Notwithstanding anything contained in this Lease to the contrary, Tenant is hereby given the right, without Landlord's prior consent, to mortgage its interest in this Lease, Tenant's interest in the Premises or any part thereof or property therein, and any sublease, under one or more leasehold mortgage(s) and to assign this Lease and any sublease as collateral security for such mortgages, upon the condition that all rights acquired under such mortgages shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease, and to all rights and interests of Landlord herein, none of which covenants, conditions or restrictions is or shall be waived by Landlord by reason of the right given to so mortgage such interest in this Lease, except as may be expressly provided in this Article XXI.

**SECTION 21.2.** If Tenant shall mortgage this leasehold pursuant to the provisions hereof, and if the holder(s) of any such mortgage(s) shall send to Landlord a true copy thereof, together with written notice specifying the name and address of the mortgagee(s) and the pertinent recording data with respect to such mortgage(s), Landlord agrees that so long as any such leasehold mortgage(s) shall remain unsatisfied, the following provisions shall apply:

(a)    There shall be no cancellation, surrender or modification of this Lease by joint action of Landlord and Tenant without the prior consent in writing of the leasehold mortgagee(s).  A termination of this Lease pursuant to Section 19.2 or pursuant to Section 20.2 shall not be a cancellation for purposes of this Section 21.2(a).

(b)    Landlord shall, upon serving Tenant with any notice of default, simultaneously serve a copy of such notice upon the leasehold mortgagee(s).  The leasehold mortgagee(s) shall thereupon have the same period, after service of such notice upon it, as is allowed to Tenant, to remedy or cause to be remedied the defaults complained of, and Landlord shall accept such performance by or at the instigation of the leasehold mortgagee(s) in response to any such notice of default as if the same had been performed by Tenant.

(c)    Anything herein contained notwithstanding, while such leasehold mortgage(s) remains unsatisfied, or until written notice of satisfaction is given by the holder(s) thereof to Landlord, if any default shall occur, which, pursuant to any provision of this Lease, entitles Landlord to terminate this Lease, and if before the expiration of ten (10) days from the date of service of notice of termination upon such leasehold mortgagee(s), such leasehold mortgagee(s) shall have notified Landlord of its desire to nullify such notice and shall have paid to Landlord all rent and other payments herein provided for and then in default, and shall have complied or commenced the work of complying with all of the other requirements of this Lease, if any are then in default, and shall prosecute the same to completion with reasonable diligence, then in such event Landlord shall not be entitled to terminate this Lease and any notice of termination theretofore given shall be void and of no effect.

(d)    If Landlord shall elect to terminate this Lease by reason of default of Tenant, the leasehold mortgagee(s) shall not only have the right to nullify any notice of termination by curing such default as aforesaid, but shall also have the right to postpone and extend the date for the termination of this Lease as specified by Landlord in its notice of termination for a period of not more than three (3) months, provided that such leasehold mortgagee(s) shall cure or cause to be cured any then-existing money defaults and meanwhile pay the rent and all other charges and

comply with and perform all of the other terms, conditions and provisions of this Lease on Tenant's part to be complied with and performed, and provided further that the leasehold mortgagee(s) shall forthwith take steps to acquire or sell Tenant's interest in this Lease by foreclosure of the leasehold mortgagee(s) or otherwise and shall prosecute the same to completion with due diligence.  If at the end of said three (3) month period the leasehold mortgagee(s) shall be actively engaged in steps to acquire or sell Tenant's interest herein, the time for such mortgagee(s) to comply with the provisions of this Section 21.2 shall be extended for such period as shall be reasonably necessary to complete such steps with reasonable diligence and continuity; provided that during such period the leasehold mortgagee(s) shall continue to pay the rent and other charges and perform all other terms, conditions and provisions of this Lease on Tenant's part to be complied with and performed.

(e)    Landlord agrees that the name of the leasehold mortgagee(s) may be added to the "Loss Payable Endorsement" of any and all insurance policies required to be carried by Tenant hereunder on condition that the insurance proceeds are to be applied in the manner specified in this Lease and that the leasehold mortgagee(s) or collateral documents shall so provide.

(f)    Landlord agrees that in the event of termination of this Lease by reason of any default by Tenant, Landlord will enter into a new Lease of the Premises with the leasehold mortgagee(s) or its nominee(s) or assignee(s) for the remainder of the term of this Lease effective as of the date of such termination, at the rent and upon the terms, provisions, covenants and agreements as contained herein and subject only to the same conditions of title as this Lease is subject to on the date of execution hereof together with any exceptions to title created by or at the behest of Tenant, and to the rights, if any, of the parties then in possession of any part of the Premises, provided:

(i)    said leasehold mortgagee(s) or its nominee(s) or assignee(s) shall make written request upon Landlord for such new lease within thirty (30) days after the date of such termination and such written request shall be accompanied by payment to Landlord of all sums due to Landlord under this Lease;

(ii)    said leasehold mortgagee(s) or its nominee(s) or assignee(s) shall pay to Landlord at the time of the execution and delivery of such new lease, any and all sums which would at the time of the execution and delivery thereof be due pursuant to this Lease but for such termination, and in addition thereto, any expenses, including reasonable attorney's fees, which Landlord shall have incurred by reason of such default;

(iii)    said mortgagee(s) or its nominee(s) or assignee(s) shall perform and observe all covenants herein contained on Tenant's part to be performed and shall further remedy any other condition which Tenant under the terminated Lease was obligated to perform under the terms of this Lease; and upon execution and delivery of such new lease and any subleases which may have theretofore been assigned and transferred by Tenant to Landlord, as security under this Lease, shall thereupon be deemed to be held by Landlord as security for the performance of all of the obligations of the tenant under the new lease;

(iv)    Landlord shall not warrant possession of the Premises to the tenant under the new lease;

(v)    such new lease shall be expressly made subject to the rights, if any, of Tenant under the terminated lease;

(vi)    the tenant under such new lease shall have the right, title and interest in and to the Premises as Tenant had under the terminated lease; and

(vii)    said leasehold mortgagee(s) or its nominee(s) or assignee(s) shall bear the cost of recording such new lease or short form thereof if it or Landlord desires recordation thereof.

(g)    Nothing herein contained shall require the leasehold mortgagee(s) or its nominee(s) or assignee(s) to cure any default of Tenant under this Lease unless such leasehold mortgagee shall choose to do so under subparagraph (b) above or shall choose to nullify any notice of termination from Landlord pursuant to subparagraphs (c) or (d), or if such leasehold mortgagee(s) elects that Landlord enter into a new lease for the Premises pursuant to the provisions of subparagraph (f) above.

(h)    Landlord shall, upon request, execute, acknowledge and deliver to each leasehold mortgage, an agreement prepared at the sole cost and expense of Tenant, in form satisfactory to such leasehold mortgagee(s), between Landlord, Tenant and leasehold mortgagee(s), agreeing to all of the provisions of this Article XXI. The term "mortgage," whenever used in this Section 21.2, shall include whatever security instruments are used in the locale of the Premises, such as, without limitation, mortgages, deeds of trust, security deeds and conditional deeds, as well as financing statements, security agreements and other documentation required pursuant to the Uniform Commercial Code, and shall also include any instruments required in connection with a sale-leaseback (or an assignment of lease and sublease) transaction.

## ARTICLE XXII

### MECHANIC'S LIENS

SECTION 22.1.    Tenant shall not permit any mechanic's, laborer's or materialman's lien to be filed at any time against the Premises or any part thereof or the Shopping Center or any part thereof by reason of work performed by or on behalf of Tenant or any agent or contractor or anyone holding the Premises through or under Tenant. If any such lien shall be filed, Tenant, upon notice thereof, shall, within fifteen (15) days of the date of receipt of notice of such filing, notify Landlord and shall within sixty (60) days after receipt of notice of such filing cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise, and Tenant shall give Landlord prompt notice of such discharge. If Tenant shall fail to cause such lien to be so discharged, then in addition to any other right or remedy which Landlord may have, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event Landlord shall be entitled, if Landlord so elects, to compel the prosecution of any action for the foreclosure of such lien by the lienor and to pay the amount of the judgment in favor of the lienor with interest, costs and allowances. Any amount so paid by Landlord and all costs and expenses (including reasonable counsel fees) incurred by Landlord in connection therewith, together with interest thereon at the Default Rate from the date of Landlord's making of the payment or incurring of the cost or expense, shall be considered additional rent and shall be promptly paid to Landlord by Tenant upon demand.

## ARTICLE XXIII

### INDEMNIFICATION

**SECTION 23.1.** Tenant shall defend, indemnify and save Landlord harmless from and against all injury, loss, claim or damage (including attorneys' fees and disbursements incurred by Landlord in conducting an investigation and preparing for and conducting a defense) arising from, related to, or in any way connected with any injury, loss, claims or damage occurring within the Premises, except to the extent that such injury, loss, claim or damage is attributable to the negligence or intentional misconduct of Landlord or its agents, servants or employees.

**SECTION 23.2.** Landlord shall defend, indemnify and save Tenant harmless from all injury, loss, claims or damage (including attorneys' fees and disbursements incurred by Tenant in conducting an investigation and preparing for and conducting a defense) arising from, related to, or in any way connected with any injury, loss, claims or damage occurring on or about the Common Areas, except to the extent that such injury, loss, claim or damage is attributable to the negligence or intentional misconduct of Tenant or its agents, servants or employees. If Tenant is maintaining the Common Areas within Tenant's Self-Maintenance Area pursuant to Section 6.6 hereof, the indemnity set forth in this Section 23.2 shall not apply with respect to events that occur within the Common Areas of Tenant's Self-Maintenance Area during the period of time that Tenant is maintaining the Common Areas within Tenant's Self-Maintenance Area pursuant to Section 6.6 hereof.

**SECTION 23.3.** Anything in this Lease to the contrary notwithstanding, Landlord and Tenant each hereby waives any and all rights of recovery, claim, action or cause-of action, against the other, its agents (including partners, both general and limited), officers, directors, shareholders or employees, for any loss or damage that may occur to the Premises, or any improvements thereto, or the Shopping Center, or any improvements thereto, or any property of such party therein, by reason of fire, the elements, or any other cause which could be insured against under the terms of standard fire and extended coverage insurance policies, regardless of cause or origin, including negligence of the other party hereto, its agents, officers or employees, and covenants that no insurer shall hold any right of subrogation against such other party.

## ARTICLE XXIV

### MEMORANDUM OF LEASE

**SECTION 24.1.** If requested by Tenant, Landlord shall execute and deliver a memorandum of lease in the form attached hereto as EXHIBIT G in order to give notice of this Lease; provided, however, that the relations between Landlord and Tenant with respect to the Premises shall be governed solely by the provisions of this Lease and not by any such memorandum of lease. The cost of recording such memorandum of lease shall be paid by Tenant.

## ARTICLE XXV

### ESTOPPEL CERTIFICATES

**SECTION 25.1.** Upon request of Landlord or Tenant, the other party, within twenty (20) days of the date of such written request, agrees to execute and deliver to the party requesting, without charge, a written statement (a) ratifying this Lease; (b) certifying that this Lease is in full force and effect, if such is the case, and has not been modified, assigned, supplemented or amended, except as shall be stated; (c) certifying that all conditions and agreements under this Lease to be satisfied and performed have been satisfied and performed, except as shall be stated; (d) reciting the amount of advance

rental, if any, paid by Tenant and the date to which rental has been paid; and (e) confirming such other provisions as are reasonably requested by such party.

## ARTICLE XXVI

### BROKERAGE

SECTION 26.1. Landlord represents and warrants that Landlord has not dealt with any broker or finder with regard to this Lease or the transaction contemplated hereby other than Ripco Real Estate Corporation ("Broker") and Landlord shall indemnify, defend and hold Tenant harmless from and against any claim for brokerage commission or finder's fees asserted by any person, firm or corporation claiming to have been engaged by Landlord. Tenant represents and warrants to Landlord that Tenant has not dealt with any broker or finder with regard to this Lease or the transaction contemplated hereby other than Broker and Tenant shall indemnify, defend and hold Landlord harmless for and against any claim for brokerage commission or finder's fees asserted by any person, firm or corporation other than Broker claiming to have been engaged by Tenant. Landlord shall cause the commissions due Broker to paid in accordance with Landlord's agreement with Broker.

## ARTICLE XXVII

### MISCELLANEOUS

SECTION 27.1. It is the intention of the parties to create the relationship of Landlord and Tenant and no other relationship whatsoever and nothing herein shall be construed to constitute the parties hereto partners or joint venturers, or to render either party hereto liable for any of the debts or obligations of the other party.

SECTION 27.2. There are no oral agreements or understandings between the parties hereto affecting this Lease and this Lease supersedes and cancels any and all previous negotiations, arrangements, agreements and understandings between Landlord and Tenant and none thereof shall be used to interpret or construe this Lease. This Lease cannot be changed or terminated orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

SECTION 27.3. The failure of either party hereto to insist upon strict performance of any of the terms, provisions, conditions or covenants herein shall not be deemed a waiver of any subsequent or continuing breach of the terms, provisions, conditions or covenants herein contained. The receipt by either party from the other of any payment, or the acceptance of performance of anything required by this Lease to be performed, with knowledge of the breach of a term, provision, condition or covenant of this Lease, shall not be deemed a waiver of such breach.

SECTION 27.4. Each provision hereof shall be deemed both a covenant and a condition and shall run with the Land.

SECTION 27.5. This Lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the respective legal representatives, successors and assigns of the parties hereto.

SECTION 27.6. The expression "the Term" wherever used in this Lease shall be deemed to refer not only to the initial Term but to any and all extensions and renewals thereof as well.

**SECTION 27.7.**  As used in this Lease, the word "mortgage" shall be deemed to include a deed of trust and the word "mortgagee" shall be deemed to include the trustee or beneficiary of a deed of trust.

**SECTION 27.8.**  This Lease may be executed in several counterparts, each of which shall be deemed an original, and such counterparts shall constitute but one and the same instrument.

**SECTION 27.9.**  Any notice, demand, consent, approval, statement or request given, served, made or obtained or required to be given, served, made or obtained hereunder shall be in writing and shall be sent by mailing the same by registered or certified mail, return receipt requested, postage prepaid, or by Federal Express or similar overnight delivery service addressed, if to Landlord, as follows: 3600 Long Beach Road, LLC, 70 East Sunrise Highway, Suite 610, Valley Stream, New York 11581, with a copy, similarly sent to, Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, East Meadow, New York 11554, Attention: Wayne G. Edwards, Esq., and if to Tenant, as follows: Kohl's Department Stores, Inc., N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051, Attention: Chairman, with a copy, similarly sent, to Kohl's Department Stores, Inc., N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051, Attention: General Counsel; or to such other address or addresses or person or persons as either party may hereafter designate by like notice. Any such notice, demand, consent, approval, statement or request shall be deemed to have been given, served, made or obtained when deposited in the United States mail or delivered to the overnight delivery service addressed in the manner hereinabove provided.

**SECTION 27.10.**  The term "Landlord" as used in this Lease means only the owner or owners at the time in question of the Shopping Center, and in the event of any transfer or conveyance of title to the Shopping Center, the seller's respective successors or assigns shall be deemed to be "Landlord" hereunder.  The term "Tenant" as used in this Lease means only the owner or owners at the time in question of Tenant's interest in this Lease, and in the event of any transfer or assignment of such interest, the assignee or transferee shall be deemed to be "Tenant" hereunder, but Kohl's Department Stores, Inc. shall not be thereby released from any of its obligations hereunder.

**SECTION 27.11.**  If Landlord or Tenant is delayed or prevented from performing any of their respective obligations during the Term because of strikes, lockouts, labor troubles, inability to procure materials (Tenant shall use commercially reasonable efforts to substitute similar or like material), failure of power, governmental restrictions, casualty or reasons of a like nature not the fault of the party delayed in the performance of such obligation, then the period of such delays shall be deemed added to the time herein provided for the performance of any such obligation and the defaulting party shall not be liable for losses or damages caused by such delays; provided, however, that this Section shall not apply to the payment of any sums of money required to be paid by Tenant hereunder or any obligation of Landlord or Tenant that can be satisfied by the payment of money.

**SECTION 27.12.**  The undersigned officers of Tenant hereby warrant and certify to Landlord that Tenant is duly authorized to conduct business in the state in which the Premises is located.  The undersigned officers of Tenant hereby further warrant and certify to Landlord that they, as such officers, are authorized and empowered to bind Tenant to the terms of this Lease by their signatures hereto.

**SECTION 27.13.**  The undersigned individuals signing on behalf of Landlord hereby warrant and certify to Tenant that Landlord is duly authorized to conduct business in the state in which the Premises is located.  The undersigned individuals signing on behalf of Landlord hereby further warrant and certify to Tenant that they, as such officers, partners,

Case 23-13359-VFP    Doc 1232-5    Filed 07/07/23    Entered 07/07/23 13:18:40    Desc
Exhibit C Part Two    Page 12 of 25

or authorized agents, are authorized and empowered to bind Landlord to the terms of this Lease by their signatures hereto.

**SECTION 27.14**.  The laws of the State in which the Premises are located shall govern the validity, performance and enforcement of this Lease.  The invalidity or unenforceability of any provision of this Lease shall not affect or impair any other provision.

**SECTION 27.15**.  Upon any dispute between Landlord and Tenant under this Lease, the prevailing party shall be entitled to recover from the non-prevailing party reasonable attorneys' fees, taxable costs and expenses incurred in contesting such dispute.

**SECTION 27.16**.  The rule of construction to the effect that an instrument shall be construed against its draftsman shall not apply to this Lease and shall not negate or invalidate any provision of this Lease.

**SECTION 27.17**.  Landlord agrees not to name the Shopping Center during the term of this Lease and prior to the Rent Commencement Date, the Shopping Center shall cease to be referred to as "Caldor Plaza".

**SECTION 27.18**.  Concurrently with Tenant's execution of this Lease, Tenant shall provide Landlord with a Guaranty executed by Kohl's Corporation in the form attached hereto as EXHIBIT K.

**SECTION 27.19**.  Except as specifically provided below, neither Landlord nor Landlord's officers, directors, shareholders, members, partners, employees or agents shall have any corporate or personal liability with respect to any of the terms, covenants, conditions, and provisions of this Lease, and Tenant shall look solely to the interest of Landlord and Landlord's successors and assigns in the Shopping Center (including, without limitation, the rents, income, insurance proceeds, condemnation awards and other proceeds therefrom) for the satisfaction of each and every remedy of Tenant under this Lease; provided, however, the foregoing shall not in any way impair, limit or prejudice the right of Tenant:

(a)    to pursue equitable relief in connection with any term, covenant or condition of this Lease, including a proceeding for a temporary restraining order, a preliminary injunction, a permanent injunction or specific performance;

(b)    to recover from Landlord all damages and costs on account of, or in connection with, insurance or condemnation proceeds which are not applied or used in accordance with the terms of this Lease;

(c)    to recover from Landlord all losses suffered, liabilities incurred or costs imposed arising out of or in connection with, or on account of, Landlord's breach of its obligation to carry insurance or fund its self-insurance obligation pursuant to Section 11.3;

(d)    to recover from Landlord all damages and costs arising out of or in connection with, or on account of, a breach by Landlord of its obligations under Section 16.2 and Section 26.1;

(e)    to recover from Landlord all damages and costs arising out of or in connection with, or on account of, the misapplication of funds paid to Landlord on account of Common Area Expenses or real estate taxes; and

G:\LEGAL\NEWSITES\OCEANSIDE\LEASE4.WPD
06/04/99

34

(f)     to recover from Landlord all damages and costs as a result of any fraud or misrepresentation by Landlord in connection with any term, covenant or condition in this Lease.

**IN WITNESS WHEREOF**, the parties hereto have caused this Lease to be signed as of the day and year first above written.

LANDLORD:

**3600 LONG BEACH ROAD, LLC**, a New York limited liability company

By: _____
Name: DANIEL PEROTA
Title: Authorized Agent

TENANT:

**KOHL'S DEPARTMENT STORES, INC.**, a Delaware corporation

By: _____
William S. Kellogg
Chairman

APPROVED
AJS

APPROVED
VFP

**EXHIBIT A**

**LEGAL DESCRIPTION OF THE LAND**

All that certain plot, piece or parcel of land situate at Oceanside, Town of Hempstead, Nassau County, New York, being more particularly described as follows:

Beginning at a point on the northerly side of Daly Boulevard distant 110.86 feet westerly from the westerly end of a curve that connects the northerly side of Daly Boulevard with the westerly side of Long Beach Road. Said curve having a radius of 66.00 feet and a length of 65.00 feet.

Running Thence from said point of beginning the following two (2) courses and distances along said Daly Boulevard;

(1)    Southerly and Westerly on the arc of said circular curve bearing to the right, having a radius of 389.00 feet and a length of 21.80 feet;

(2)    North 79 degrees 27 minutes 01 seconds West 630.53 feet;

Thence North 22 degrees 24 minutes 51 seconds East, a distance of 1025.29 feet;

Thence South 74 degrees 45 minutes 17 seconds East, a distance of 284.61 feet;

Thence South 04 degrees 37 minutes 32 seconds West, a distance of 88.50 feet;

Thence South 67 degrees 35 minutes 09 seconds East, a distance of 462.58 feet;

Thence South 22 degrees 24 minutes 51 seconds West, a distance of 529.90 feet;

Thence North 67 degrees 35 minutes 09 seconds West, a distance of 155.00 feet;

Thence South 22 degrees 24 minutes 51 seconds West, a distance of 233.12 feet;

Thence South 07 degrees 19 minutes 11 seconds West, a distance of 81.62 feet to the point or place of beginning.

EXHIBIT B

SITE PLAN

(Copy Attached)

G:\LEGAL\NEWSITES\OCEANSIDE\LEASE4.WPD
05/04/99

B-1







**EXHIBIT C**

**DESCRIPTION OF TENANT'S WORK**

The following is a list of alterations and modifications to the Premises that Tenant may make following the effective date of the assumption of the Lease to convert the Premises to a Kohl's building:

Interior Modifications

Completely retrofit interior of the building to conform to standard Kohl's interior finish, including, among other things, replacement of dry wall, floor coverings, ceilings, lighting, duct work, and sprinkler heads.

Exterior Modifications

Installation of additional air conditioning equipment if deemed necessary by Tenant.

Relocating and adding entrances to the building.

Recladding of exterior facade of the building to conform to typical Kohl's exterior.

Creation of storefront entrance feature with typical Kohl's entry features.

Addition of screen walls for truck docks and dumpsters.

Site Modifications

Addition of landscaping in front of the building.

Provided that the curb line in front of the Premises is maintained in its current location, relocation of sidewalks and curbing in front of the building to make room for landscaping.

Replacement of building signs and pylon sign panels subject to Tenant obtaining all necessary governmental approvals at its own cost and expense and as long as Tenant does not alter or amend the site plan or the parking plan.

Resurfacing of parking areas within Tenant's Protected Parking Area provided the resurfacing does not adversely affect drainage within the Shopping Center and provided that Tenant feathers in the blacktop so it blends together with existing pavement.

Addition of lighting fixtures to increase illumination of the parking areas.

**EXHIBIT D**

**INTENTIONALLY OMITTED**

G:\LEGAL\NEWSITES\OCEANSIDELEASE4.WPD
06/04/99                                         D-1

## EXHIBIT E

### SUBORDINATION, NON-DISTURBANCE AND
### ATTORNMENT AGREEMENT

**THIS AGREEMENT** made as of this _____ day of _____, 19__, by
and between _____ ("Lender") and **KOHL'S
DEPARTMENT STORES, INC.**, a Delaware corporation ("Tenant").

### R E C I T A L S:

A.    Tenant has entered into a certain Lease (the "Lease") dated June ___, 1999
for certain premises located in the Town of Hempstead, Nassau County, New York, and
legally described in Exhibit A attached hereto and made a part hereof (the "Premises").

B.    Lender is the mortgagee under a Mortgage and Security Agreement (the
"Mortgage"), between _____ ("Landlord") and
Lender, dated _____, 19__ and recorded in the real estate records of Nassau
County, New York in Liber _____, Page _____, encumbering the Premises and a
specific Assignment of Leases and Rents dated _____, 19__ and recorded in the
real estate records of Nassau County, New York in Liber _____, Page _____ (the
"Assignment") assigning the Lease. Both the Mortgage and the Assignment secure a loan
or loans from Lender to Landlord.

C.    Each party hereto has requested the other party to enter into this Agreement.

### A G R E E M E N T S:

**NOW, THEREFORE**, in consideration of the above Recitals and the agreements of
the parties set forth below, and for One Dollar ($1.00) and other good and valuable
consideration, the parties hereto agree as follows:

1.    The Lease and each and every term and condition thereof, and any
extensions, renewals, replacements or modifications thereof, and all of the right, title and
interest of Tenant in and to the Premises are and shall be subject and subordinate to the
Mortgage and to all of the terms and conditions contained therein, all advances made or
to be made thereunder, and to any renewals, modifications, supplements, replacements,
consolidations, increases and extensions thereof.

2.    Lender agrees that in the event of foreclosure of the Mortgage, or other
enforcement of the terms and conditions of the Mortgage or the exercise by Lender of its
rights under the Assignment, or if Lender comes into possession or acquires title to the
Premises as a result of foreclosure or the threat thereof, or as a result of any other means,
such action shall not result in either a termination of the Lease or a diminution or
impairment of any of the rights granted to Tenant in the Lease or in an increase in any of
Tenant's obligations under the Lease, including but not limited to provisions in the Lease
dealing with condemnation, fire and other casualties.

3.    Tenant agrees with Lender that if the interest of Landlord in the Premises
shall be transferred to Lender by reason of foreclosure or other proceedings, or by any
other manner, or in the event of a foreclosure sale of the Premises to any other person,
firm, or corporation, then in any of said events, Tenant shall be bound to Lender or such
purchaser, grantee or other successor to Landlord's interest ("Successor Landlord") under
all of the terms, covenants and conditions of the Lease for the balance of the term
remaining and any extensions or renewals thereof which may be effected in accordance
with any option therefor in the Lease, with the same force and effect as if the Successor

G:\LEGAL\NEWSITES\OCEANSIDE\LEASE4.WPD
08/04/99                                                      E-1

Landlord were the landlord under the Lease. Tenant does hereby agree to attorn to the Successor Landlord.

4.    At such time that Successor Landlord succeeds to the interest of Landlord under the Lease, Successor Landlord shall be bound to Tenant under all of the terms, covenants and conditions of the Lease for the balance of the term remaining and any extensions or renewals thereof which may be effected in accordance with any option therefor in the Lease; provided, however, Tenant agrees that a Successor Landlord shall not be:

(a)    personally liable for any act or omission of any prior landlord under the Lease;

(b)    bound by any base rent or additional rent which Tenant may have paid for more than the current or next succeeding month to any prior landlord; or

(c)    obligated to perform any work in the Premises or any part thereof, other than such work which is required to be performed by Landlord under the Lease.

5.    Tenant will notify Lender of any default of Landlord under the Lease which Tenant believes would entitle it to cancel the Lease or abate the base rent or additional rent payable thereunder, and agrees that no notice of cancellation thereof nor any such rent abatement shall be effective against Lender unless Lender has received the notice aforesaid and has failed to cure the default within the longer of thirty (30) days after such notice or such period of time following such notice as Landlord has to cure the default which gives rise to such alleged right of cancellation or abatement ("Lender Cure Period"). All such notices shall be in writing and shall be deemed to have been given when delivered personally or when deposited in the United States mail, certified or registered, postage prepaid, addressed as follows:

6.    Provided Landlord has irrevocably and unconditionally directed Tenant to comply with such demand, Tenant shall, upon Lender's demand therefor, thereafter pay directly to Lender all amounts thereafter payable by Tenant to Landlord under the Lease.

7.    This Agreement shall bind and inure to the benefit of the parties hereto, their successors and assigns. As used herein, the term "Tenant" shall include Tenant, its successors and assigns as permitted under the Lease; the words "foreclosure" and "foreclosure sale" as used herein shall be deemed to include the acquisition of Landlord's estate in the Premises by voluntary deed (or assignment) in lieu of foreclosure, and the word "Lender" shall include the Lender specifically named herein and any of its successors and assigns, including any Successor Landlord.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the month, day and year first above written.

**LENDER**:

_____

By: _____
   Name: _____
   Title: _____

Attest: _____
   Name: _____
   Title: _____

**TENANT**:

**KOHL'S DEPARTMENT STORES, INC.,**
a Delaware corporation

By: _____
   Name: _____
   Title: _____

STATE OF _____ )
                   ) SS
COUNTY OF _____ )

    Personally came before me this ____ day of _____, 19__, the above-named _____ and _____, to me known to be the _____ and _____ of _____, to me known to be the persons who executed the foregoing instrument and acknowledged the same.

_____
Notary Public,

My Commission Expires: _____

STATE OF WISCONSIN )
                   ) SS
COUNTY OF WAUKESHA )

    Personally came before me this ____ day of _____, 19__, the above-named _____, to me known to be the _____ of Kohl's Department Stores, Inc., to me known to be the person who executed the foregoing instrument and acknowledged the same.

_____
Notary Public,

My Commission Expires: _____

G:\LEGAL\NEWSITE\ROCEANSIDE\LEASE4.WPD
06/04/99

E-3

This instrument was drafted by
and after recording mail to:

Alan J. Salle
Kohl's Department Stores, Inc.
N56 W17000 Ridgewood Drive
Menomonee Falls, Wisconsin 53051

G:\LEGAL\NEWSITES\OCEANSIDE\LEASE4.WPD
05/04/99

E-4

**EXHIBIT F**

**PERMITTED ENCUMBRANCES**

1.   General real estate taxes not yet due or payable.

2.   Declaration of Covenants and Restrictions in Liber 5766 page 225.

3.   Telephone Easement in Liber 7747 page 164.

4.   Electric and Gas Easement in Liber 8016 page 422.

5.   Drainage Easement in Liber 8087 page 134.

6.   Drainage Easement in Liber 7669 page 42.

7.   Restrictions in Liber 7756 page 242.

8.   Declaration of Reciprocal Easement in Liber 10197 page 663.

9.   Encroachment of traffic light pole along easterly line.

10.  Variations between fence and northerly record line.