EXHIBIT C PART THREE

**EXHIBIT G**

**MEMORANDUM OF LEASE**

THIS MEMORANDUM OF LEASE is made and entered into as of the ___ day of June, 1999, by and between **3600 LONG BEACH ROAD, LLC**, a New York limited liability company with an address of 70 East Sunrise Highway, Suite 610, Valley Stream, New York 11581 ("Landlord") and **KOHL'S DEPARTMENT STORES, INC.**, a Delaware corporation with an address of N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051 ("Tenant").

W I T N E S S E T H:

WHEREAS, Landlord is the owner of certain land located in the Town of Hempstead, Nassau County, New York, which is legally described in EXHIBIT A attached hereto and is depicted on the site plan attached hereto as EXHIBIT B (the "Land");

WHEREAS, the Land has been developed as a shopping center (the "Shopping Center") commonly known as "Caldor Plaza", which is operated as an integrated shopping area whereby tenants, and their customers and invitees, of the stores and buildings located in the Shopping Center may use the parking areas and other common facilities situated thereon;

WHEREAS, pursuant to a certain Lease of even date herewith, Landlord leased to Tenant and Tenant leased from Landlord the portion of the building constructed within the Shopping Center which contains 94,421 square feet of Floor Area (as hereinafter defined) and is designated as the "Kohl's Space" on EXHIBIT B, together with all appurtenant supports, loading docks, truck ramps, compactor pads and other outward extensions (collectively, the "Premises"), upon the terms and conditions set forth in the Lease; and

WHEREAS, Landlord and Tenant wish to place notice of the Lease on record.

NOW, THEREFORE, Landlord hereby leases the Premises to Tenant, Tenant hereby leases the Premises from Landlord, and Landlord and Tenant hereby execute this Memorandum of Lease for the purpose of evidencing Tenant's interest in the Premises, TO HAVE AND TO HOLD unto Tenant upon the terms, covenants and conditions contained in the Lease, for a term of twenty (20) Lease Years, subject to five (5) separate options to extend the term for successive periods of five (5) Lease Years each.

This Memorandum of Lease is made and executed and is to be recorded in the real estate records of Nassau County, New York, for the purpose of giving notice of the Lease and the rights of the parties thereunder.

This Memorandum of Lease is subject in each and every respect to the rental and other terms, covenants and conditions contained in the Lease and is executed by Landlord and Tenant with the understanding and agreement that nothing contained herein shall in any manner alter, modify or vary the rental or other terms, covenants or conditions of the Lease.

Section 6.5 of the Lease provides that Landlord shall not, without the prior written consent of Tenant, which consent may be withheld in Tenant's sole discretion, do the following:

(a) make any change to the Premises;

(b) close, restrict or otherwise alter the entrances to the Premises;

(c) change the size, configuration and/or location of the parking areas situated within Tenant's Protected Parking Area or the location of the access drives of the Shopping Center outlined in blue on EXHIBIT B attached hereto;

(d) construct or permit any third party or tenant of the Shopping Center to construct any improvements other than within the building areas designated on EXHIBIT B attached hereto or erect any kiosks in the Shopping Center;

(e) add any land to the Shopping Center and/or grant any rights to use any of the Common Areas to other than the occupants of space in the Shopping Center and their respective employees, customers and business invitees except for the existing reciprocal easement agreement with the owner of the shopping center adjacent to the Shopping Center;

(f) construct or permit the construction of an entrance to any portion of the Shopping Center or erect and display or permit the erection and display of freestanding signage by any third party or tenant of the Shopping Center within one hundred (100) feet of the Premises; and/or

(g) reduce the parking ratio for the shopping center below the parking ratio in existence on the date hereof.

Section 7.2 of the Lease provides that Landlord shall not, without the prior written consent of Tenant, at any time permit any occupant of space in the Shopping Center to: (i) conduct or permit any bankruptcy sale unless directed by order of a court of bankruptcy or other court of competent jurisdiction or any fire or "going out of business" sale; (ii) use, or permit to be used, the sidewalks adjacent to such occupant's space, or any other portion of the Common Areas for the sale or display of any merchandise or for any other business, occupation, or undertaking; (iii) use, or permit to be used, any sound broadcasting system or amplifying device which can be heard outside of such space, except systems or devices located within such spaces which are intended for hearing within such spaces and are not audible more than 25 feet outside of such spaces; or (iv) use or permit the use of any portion of such space for any of the uses set forth in EXHIBIT I attached hereto.

Section 7.3 of the Lease provides that no sign, symbol or advertisement shall be placed or maintained on or adjacent to the exterior walls (including both interior and exterior surfaces of windows) of, or above, any building or structure in the Shopping Center, except signs complying with a general sign criteria attached hereto as EXHIBIT H.

Section 16.5 of the Lease provides that so long as Tenant is operating a specialty department store within the Premises and is not itself violating the restrictions in this Section 16.5, no space within the Shopping Center shall be used by any occupant to operate a retail operation in which more than twenty percent (20%) of the Floor Area of the premises of the occupant (including the Floor Area of the aisles adjacent to the space where such merchandise is displayed) is used for the display and sale of clothing commonly referred to as close outs, manufacturer's overruns, other retailer's returned or excess inventory or manufacturer's seconds or imperfect merchandise.

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Memorandum of Lease as of the day, month and year first above written.

**LANDLORD:**

3600 LONG BEACH ROAD, LLC, a New York limited liability company

By: _____
Name: _____
Title: _____

**TENANT:**

KOHL'S DEPARTMENT STORES, INC., a Delaware corporation

By: _____
Name: _____
Title: _____

**STATE OF NEW YORK** )
                     ) SS
**COUNTY OF NASSAU**  )

Personally came before me this ____ day of June, 1999, the above-named _____, to me known to be the _____ of 3600 Long Beach Road, LLC, a New York limited liability company, to me known to be the persons who executed the foregoing instrument and acknowledged the same.

_____
Notary Public,

My Commission Expires: _____

**STATE OF WISCONSIN**   )
                        ) SS
**COUNTY OF WAUKESHA**  )

Personally came before me this ____ day of June, 1999, the above-named _____, to me known to be the _____ of Kohl's Department Stores, Inc., a Delaware corporation, to me known to be the person who executed the foregoing instrument and acknowledged the same.

_____
Notary Public,

My Commission Expires: _____

This instrument was drafted by
and after recording mail to:

Alan J. Salle
Kohl's Department Stores, Inc.
N56 W17000 Ridgewood Drive
Menomonee Falls, Wisconsin 53051

**EXHIBIT H**

**SIGN CRITERIA**

1. Any occupant of the Shopping Center occupying less than twenty-five thousand (25,000) square feet of Floor Area may have only one (1) identification sign placed on the exterior of the building it occupies; provided, however, that if any such occupant is located at the corner of a building, then such occupant may have an identification sign on each side of such corner. Any occupant occupying at least twenty-five thousand (25,000) square feet of Floor Area may have more than one identification sign placed on the exterior of the building it occupies.

2. No occupant identification sign attached to the exterior of a building shall be:

    a. placed on canopy roofs extending above the building roof, placed on penthouse walls, or placed so as to project above the parapet, canopy or top of the wall upon which it is mounted;

    b. placed at any angle to the building; provided, however, the foregoing shall not apply to any sign located under a sidewalk canopy if such sign is at least eight (8) feet above the sidewalk;

    c. painted on the surface of any building;

    d. flashing, moving or audible signs;

    e. signs employing exposed raceways, exposed neon tubes, exposed ballast boxes, or exposed transformers; or

    f. paper or cardboard signs, temporary signs (exclusive of contractor signs), stickers or decals; provided, however, the foregoing shall not prohibit the placement at the entrance of each occupant's space a small sticker or decal, indicating hours of business, emergency telephone numbers, acceptance of credit cards, and other similar bits of information.

    No occupant of less than twenty-five thousand (25,000) square feet of Floor Area shall have an exterior sign which identifies leased departments and/or concessionaires operating under the occupant's business or trade name, nor shall such sign identify specific brands or products for sale or services offered within a business establishment, unless such identification is used as part of the occupant's trade name.

3. Notwithstanding anything contained herein to the contrary, Landlord and Tenant shall be permitted to place within the Common Areas directional signs or informational signs such as "Handicapped Parking", the temporary display of "grand opening" or "coming soon" or "now hiring" signs, the temporary display of leasing information and the temporary erection of one sign identifying each contractor working on a construction job.

# KOHL'S SIGN CRITERIA



6'-0" LETTER SET
120 VOLT (1) 30 AMP CIRCUIT



**EXHIBIT I**

**PROHIBITED USES**

(a) Warehouse, storage or for any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation;

(b) "Second-hand" store whose principal business is selling used merchandise, thrift shops, salvation army type stores, "goodwill" type stores, and similar businesses;

(c) Mobile home park, trailer court, labor camp, junk yard, or stock yard (except that this provision shall not prohibit the temporary use of construction trailers during any periods of construction, reconstruction or maintenance);

(d) Dumping, disposing, incinerating, or reducing of garbage (exclusive of dumpsters for the temporary storage of garbage and any garbage compactors, in each case which are regularly emptied so as to minimize offensive odors);

(e) Fire, going out of business, relocation, bankruptcy or similar sales (unless pursuant to court order);

(f) Central laundry, dry cleaning plant, or laundromat; provided, however, this restriction shall not apply to any dry cleaning facility providing on-site service oriented to pickup and delivery by the ultimate consumer, including, nominal supporting facilities;

(g) Selling or leasing new or used automobiles, trucks, trailers, or recreational vehicles;

(h) Any bowling alley, skating rink or bar (unless part of a sit down restaurant), dance hall, discotheque, night club, amusement gallery, gymnasium or video game room or off-track betting parlor;

(i) Veterinary hospital or animal raising or boarding facilities (except that this restriction shall not be deemed to preclude the operation of pet shops);

(j) Funeral home or mortuary;

(k) Any establishment which stocks, displays, sells, rents or offers for sale or rent any (i) pornographic material; or (ii) any merchandise or material commonly used or intended for use with or in consumption of any narcotic, dangerous drug or other controlled substance, including without limitation, any hashish pipe, waterpipe, bong, cilium, pipe screens, rolling papers, rolling devices, coke spoons or roach clips.

(l) Flea market;

(m) Car wash;

(n) Operation whose principal use is a massage parlor; provided this shall not prohibit massages in connection with a beauty salon or health club or athletic facility;

(o) Living quarters, sleeping apartments or lodging rooms;

(p) Tattoo parlor;

(q) Church, school, or related religious or educational facility or religious reading room;

(r) Automotive service and repair (except as an accessory use to a use otherwise permitted in the Shopping Center);

(s) General office facility other than Landlord's office located on the land and used for the purposes of managing the shopping center and any office used by any other Tenant so long as any such office is incidental to such Tenant's use of any portion of the Shopping Center;

(t) Cinema or movie theater;

(u) Amusement arcades or game rooms, or amusement centers (except as an accessory use to a use otherwise permitted in the Shopping Center); or

(v) Any restaurant located within two hundred (200) feet of the Premises.

## EXHIBIT I

### PROHIBITED USES

(a) Warehouse, storage or for any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation;

(b) "Second-hand" store whose principal business is selling used merchandise, thrift shops, salvation army type stores, "goodwill" type stores, and similar businesses;

(c) Mobile home park, trailer court, labor camp, junk yard, or stock yard (except that this provision shall not prohibit the temporary use of construction trailers during any periods of construction, reconstruction or maintenance);

(d) Dumping, disposing, incinerating, or reducing of garbage (exclusive of dumpsters for the temporary storage of garbage and any garbage compactors, in each case which are regularly emptied so as to minimize offensive odors);

(e) Fire, going out of business, relocation, bankruptcy or similar sales (unless pursuant to court order);

(f) Central laundry, dry cleaning plant, or laundromat; provided, however, this restriction shall not apply to any dry cleaning facility providing on-site service oriented to pickup and delivery by the ultimate consumer, including, nominal supporting facilities;

(g) Selling or leasing new or used automobiles, trucks, trailers, or recreational vehicles;

(h) Any bowling alley, skating rink or bar (unless part of a sit down restaurant), dance hall, discotheque, night club, amusement gallery, gymnasium or video game room or off-track betting parlor;

(i) Veterinary hospital or animal raising or boarding facilities (except that this restriction shall not be deemed to preclude the operation of pet shops);

(j) Funeral home or mortuary;

(k) Any establishment which stocks, displays, sells, rents or offers for sale or rent any (i) pornographic material; or (ii) any merchandise or material commonly used or intended for use with or in consumption of any narcotic, dangerous drug or other controlled substance, including without limitation, any hashish pipe, waterpipe, bong, cilium, pipe screens, rolling papers, rolling devices, coke spoons or roach clips.

(l) Flea market;

(m) Car wash;

(n) Operation whose principal use is a massage parlor; provided this shall not prohibit massages in connection with a beauty salon or health club or athletic facility;

(o) Living quarters, sleeping apartments or lodging rooms;

(p) Tattoo parlor;

(q) Church, school, or related religious or educational facility or religious reading room;

(r) Automotive service and repair (except as an accessory use to a use otherwise permitted in the Shopping Center);

(s) General office facility other than Landlord's office located on the land and used for the purposes of managing the shopping center and any office used by any other Tenant so long as any such office is incidental to such Tenant's use of any portion of the Shopping Center;

(t) Cinema or movie theater;

(u) Amusement arcades or game rooms, or amusement centers (except as an accessory use to a use otherwise permitted in the Shopping Center); or

(v) Any restaurant located within two hundred (200) feet of the Premises.

**EXHIBIT J**

**EXCLUSIVE USE RESTRICTIONS**

The following provisions have been excerpted from Landlord's lease with Waldbaum, Inc.

**C. RESTRICTIVE COVENANTS**

So long as the Premises shall be operated as a supermarket, Lessor covenants, warrants and represents that it will not during the Term of this Lease rent or permit any space in the Shopping Center to be used as a bake shop or a food supermarket at any time and/or for the sale for off-premises consumption of fresh fruit, frozen fruit, vegetables, groceries, dairy products, meats, poultry, deli appetizers, or any food and/or food products of any nature whatsoever (the "food products") now or hereafter sold in any supermarket. This restriction shall not apply to the use of other space in the Shopping Center for the following purposes:

aa. Any occupant under the existing leases in Building "B" as same may be extended or renewed.

a. A kosher butcher shop, not to exceed 3,000 square feet of floor space, may sell kosher meats and poultry, fresh, frozen or packaged.

b. A kosher or kosher style delicatessen or restaurant not to exceed 3,000 square feet of floor space, provided same is used primarily (at least 75% of sales area) for on-premises consumption and is located in Building "B" from the southerly line of the Premises, may sell products normally sold by such a delicatessen or restaurant except for "appetizing" products sold for take-out.

c. A doughnut shop or bagel shop may sell doughnuts, bagels, milk and frozen desserts. However, the doughnuts and bagels permitted to be sold shall be limited to doughnuts and bagels prepared on the Premises or in a commissary preparing doughnuts and bagels only for this shop or a chain or franchise

group of which this shop is a unit; the sale of milk and frozen desserts permitted to be sold shall be limited to products sold only as an incidental part of the business and only from a refrigerated box not to exceed eight (8) feet in length or twenty-five (25) square feet in area.

  d. A restaurant and/or luncheonette primarily for on-premises consumption may sell prepared foods, sandwiches and beverages for off-premise consumption as an incident to its principal business, including a "Bagel Nosh" type of restaurant.

  e. The Shopping Center may include stores not exceeding 3,000 square feet of floor space each of which may sell take-out foods, prepared, processed or packaged on the premises for off-premise consumption, such as Chinese food, pizza, chicken, fish, frankfurters, hamburgers and the like, but excluding any "appetizing store" or the sale of appetizing products for off-premise consumption;

  f. A Carvel, Baskin-Robbins, or ice-cream parlor type of store, selling ice cream and soft ice cream (loose or packaged), ice cream novelties and products, frozen desserts and beverages or yogurt, frozen yogurt, tofutti or similar store, ie. "Everything Yogurt", TGBY", etc.

  g. The Shopping Center may include fast-food and limited menu restaurants of the McDonald's, Wendy's, Burger King's, or Fish & Chips type and they may sell their normal products.

  h. A fish store for fresh, frozen or non-appetizing cooked fish, located in Building "B" may sell fresh, frozen or non-appetizing cooked fish.

  i. The Shopping Center may include a wine and liquor store.

  j. The Shopping Center may include a pizzeria.

  k. A department, discount department, junior department, variety, home improvement, health and beauty aid or drug store may each sell any of the food products (except fresh or frozen fruit or vegetables, fresh or frozen meat, poultry or deli

appetizers) from a total in each store of not more than 3,000 square feet or 10% of the floor area of the respective store, whichever is less. As applied to this subparagraph k., the prohibition against the sale of fresh fruit shall not apply to gift packages of fruit or fruit and other items not prohibited.

    l. A pet shop or a pet food store in the Shopping Center may sell dog food, cat food, cat litter, bird food and any other pet food and pet-related products.

    m. A candy store or stationery store may sell candy, confections, nuts, pretzels, cookies baked off the premises, ice cream, jams and jellies, potato chips, gum and other miscellaneous food products typically sold in candy and stationery stores.

    n. A health food store, provided no fresh or frozen fruits or vegetables or fresh or frozen meat products are sold.

* * *

32. **LESSOR'S ADDITIONAL REPRESENTATIONS AND COVENANTS**

    c. Lessor represents that, no premises at the Shopping Center shall be used for any of the purposes stated in paragraph 4 of Schedule "X" attached hereto, except for the flea market tenant in Building "B" for the term of such flea market tenant's lease as the same may be renewed or extended.

* * *

**SCHEDULE "X"**

To Lease between Nathan L. Serota
and Waldbaum, Inc., Oceanside, New York Premises

* * *

4.  As a car wash; bowling alley; pool hall; billiard parlor, massage parlor; establishment for the sale of pornographic materials; discotheque (or other dance hall) or bar; skating rink; off-track betting parlor; funeral parlor; gas station; theatre of any kind, sporting event or other sports facility, amusement park, amusement center, carnival; meeting hall; auditorium or any other like place of public assembly; game room; hospital; non-supervised laundromat; swimming pool establishment; any establishment selling any motor vehicles, boats, planes, trailers, mobile homes or other method of transport (new or used); flea market nor for use as manufacturing factory, industrial use, warehouse, processing or rendering plant except in connection with the operation of the supermarket at the premises.

The following provisions have been excerpted from Landlord's lease with Pergament Home Centers

**ARTICLE 28**

**RESTRICTIVE COVENANT**

28.1 Landlord covenants and agrees, throughout the Term, that so long as the Premises continue to be used, open and operating for business as a home improvement center that Landlord shall not lease, use, nor permit to be used, any portion of the Shopping Center other than the Premises for a business whose principal and primary purpose is as a hardware store, garden shop and home improvement center; it being covenanted and agreed that Tenant shall have the exclusive right in the Shopping Center to sell the products set forth in Exhibit "F" hereto annexed and made a part hereof except for minimal and incidental sales thereof by other tenants and occupants in the Shopping Center. A temporary or interim closing of the Premises for purposes such as alterations, restoration or by reason of

strikes, lock-outs, boycotts or other causes beyond Tenant's reasonable control and which is intended to be temporary in nature only shall not be deemed such a closing of the Premises so as to otherwise permit the use of any other portion of the Shopping Center for such restricted purpose as above set forth and such restriction shall continue to apply during the reasonable period of any such interim or temporary closing.

28.2 Landlord further covenants and agrees, throughout the Term, that no part of the Shopping Center shall be used for any of the following purposes: a car wash; bowling alley; pool hall; massage parlor; establishment for the sale of pornographic materials; discotheque (or other dance hall) or bar (other than a bar accessory to a restaurant); skating rink; off-track betting parlor; funeral parlor; gas station; amusement park, carnival; meeting hall; auditorium or other like place of public assembly; game room; hospital; non-supervised laundromat; swimming pool establishment; nor for use as manufacturing factory, industrial use, warehouse, processing or rendering plant.

* * *

## EXHIBIT "F"
## (EXCLUSIVE ITEMS)

Lumber or Paneling
Paint
Garden Center Supplies
Wall Paper
Wall Covering
Flooring
Indoor or Outdoor Carpeting
Electric Light Fixtures or Supplies
Hardware
Plumbing Fixtures or Supplies
Bathroom Fixtures
Outdoor or Patio Furniture
Lawn or Garden Care Products or Supplies
Gas or Electric Barbecues
Portable Heaters or Humidifiers
Storm or Wood Doors
Kitchen Cabinets
Ceiling Tiles and Insulation

**EXHIBIT K**

**GUARANTY OF LEASE**

For value received and in consideration for, and as an inducement to Landlord (as hereinafter defined) to enter into the Lease (as hereinafter defined), the undersigned, Kohl's Corporation, a Wisconsin corporation ("Guarantor"), and parent corporation of Kohl's Department Stores, Inc. ("Tenant"), hereby unconditionally and irrevocably guarantees the full and complete payment and performance of all obligations of Tenant now or hereafter arising under that certain Lease of even date herewith (the "Lease"), entered into by and between 3600 Long Beach Road, LLC, a New York limited liability company ("Landlord"), as landlord, and Tenant, as tenant, and any extensions, renewals and amendments to the Lease.

This Guaranty is an absolute, primary, and continuing guaranty of payment and performance and is independent of Tenant's obligations under the Lease. Guarantor shall be primarily liable, jointly and severally, with Tenant and any other guarantor of Tenant's obligations under the Lease.

Guarantor waives any right to require Landlord to (a) join Tenant with Guarantor in any suit arising under this Guaranty, (b) proceed against or exhaust any security given to secure Tenant's obligations under the Lease, or (c) pursue or exhaust any other remedy in Landlord's power. Landlord may, without notice or demand and without affecting Guarantor's liability hereunder, from time to time, compromise, extend or otherwise modify any or all of the terms of the Lease. Guarantor hereby waives all demands for performance, notices of performance, and notices of acceptance of this Guaranty.

The liability of Guarantor under this Guaranty will not be affected by (i) the release or discharge of Tenant from, or impairment, limitation or modification of, Tenant's obligations under the Lease in any bankruptcy, receivership, or other debtor relief proceeding, whether state or federal and whether voluntary or involuntary; (ii) the rejection or disaffirmance of the Lease in any such proceeding; or (iii) the cessation from any cause whatsoever of the liability of Tenant under the Lease. Guarantor shall pay to Landlord all reasonable costs incurred by Landlord in enforcing this Guaranty (including, without limitation, reasonable attorneys' fees and expenses).

All obligations and liabilities to the undersigned pursuant to this Guaranty shall be binding upon the successors and assigns of the undersigned. This Guaranty may be relied upon and enforced by Landlord, its successors and assigns.

Dated this _____ day of June, 1999.

KOHL'S CORPORATION, a Wisconsin corporation

By: _____
Name: _____
Title: _____

G:\LEGAL\NEWSITES\OCEANSIDE\LEASE4.WPD
06/04/99

K-1

"ORIGINAL"

## GUARANTY OF LEASE

For value received and in consideration for, and as an inducement to Landlord (as hereinafter defined) to enter into the Lease (as hereinafter defined), the undersigned, Kohl's Corporation, a Wisconsin corporation ("Guarantor"), and parent corporation of Kohl's Department Stores, Inc. ("Tenant"), hereby unconditionally and irrevocably guarantees the full and complete payment and performance of all obligations of Tenant now or hereafter arising under that certain Lease of even date herewith (the "Lease"), entered into by and between 3600 Long Beach Road, LLC, a New York limited liability company ("Landlord"), as landlord, and Tenant, as tenant, and any extensions, renewals and amendments to the Lease.

This Guaranty is an absolute, primary, and continuing guaranty of payment and performance and is independent of Tenant's obligations under the Lease. Guarantor shall be primarily liable, jointly and severally, with Tenant and any other guarantor of Tenant's obligations under the Lease.

Guarantor waives any right to require Landlord to (a) join Tenant with Guarantor in any suit arising under this Guaranty, (b) proceed against or exhaust any security given to secure Tenant's obligations under the Lease, or (c) pursue or exhaust any other remedy in Landlord's power. Landlord may, without notice or demand and without affecting Guarantor's liability hereunder, from time to time, compromise, extend or otherwise modify any or all of the terms of the Lease. Guarantor hereby waives all demands for performance, notices of performance, and notices of acceptance of this Guaranty.

The liability of Guarantor under this Guaranty will not be affected by (i) the release or discharge of Tenant from, or impairment, limitation or modification of, Tenant's obligations under the Lease in any bankruptcy, receivership, or other debtor relief proceeding, whether state or federal and whether voluntary or involuntary; (ii) the rejection or disaffirmance of the Lease in any such proceeding; or (iii) the cessation from any cause whatsoever of the liability of Tenant under the Lease. Guarantor shall pay to Landlord all reasonable costs incurred by Landlord in enforcing this Guaranty (including, without limitation, reasonable attorneys' fees and expenses).

All obligations and liabilities to the undersigned pursuant to this Guaranty shall be binding upon the successors and assigns of the undersigned. This Guaranty may be relied upon and enforced by Landlord, its successors and assigns.

Dated this 10th day of June, 1999.

KOHL'S CORPORATION, a Wisconsin corporation

By: _____
Name: William S. Kellogg
Title: Chairman

APPROVED AJS

APPROVED PEP

G:\LEGAL\NEWSITES\OCEANSIDE\LEASE4.WPD
06/04/99

State of New York
County of Nassau

Index No. 6/18   Year 19 99

Memorandum of Lease between

3600 Long Beach Road, LLC, a New York limited liability company

and

KOHL's Department Stores, Inc., a Delaware corporation

MEMORANDUM OF LEASE

**CERTILMAN BALIN ADLER & HYMAN, LLP**
*Attorney(s) for*   Landlord 3600 Long Beach Road, LLC
*Office and Post Office Address, Telephone*
THE FINANCIAL CENTER AT MITCHEL FIELD
90 MERRICK AVENUE
EAST MEADOW, NEW YORK 11554
(516) 296-7000

PLEASE RETURN ORIGINAL RECORDED DOCUMENT TO:

To    KOHL'S
      Corporate Offices
      N56W17000
      Ridgewood Drive
      Menomonee Falls, Wisconsin 53051
      Att: Alan J. Salle, Esq.

Service of a copy of the within is hereby admitted.

Dated: ................................. 19........

Attorney(s) for

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on                     19

☐ NOTICE OF SETTLEMENT

that an order                                          of which the within is a true copy
will be presented for settlement to the HON.           one of the judges of the
within named Court, at
on                        19    at           M.
Dated,
                              Yours, etc.

                              CERTILMAN BALIN ADLER & HYMAN, LLP