**Exhibit 1**

**Stipulation & Consent Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (admitted *pro hac vice*)<br>Emily E. Geier, P.C. (admitted *pro hac vice*)<br>Derek I. Hunter (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>joshua.sussberg@kirkland.com<br>emily.geier@kirkland.com<br>derek.hunter@kirkland.com<br><br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>*Co-Counsel for Debtors and Debtors in Possession* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al*.,<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

### STIPULATION AND CONSENT ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH LG-BBB, LLC

The relief set forth on the following pages, numbered two (2) through five (5), is hereby

**ORDERED.**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

65548/0002-45692114v2

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | STIPULATION AND CONSENT ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH LG-BBB, LLC |

This stipulation and consent order (the "Stipulation") is made by and between LG-BBB, LLC ("Landlord") and Bed Bath & Beyond Inc., and its affiliates, as debtors and debtors in possession (the "Debtors," and together with Landlord, the "Parties"), including, as applicable, by and through their duly authorized undersigned counsel.

**WHEREAS,** on April 23, 2023 (the "Petition Date"), each of the Debtors commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS,** the Debtors' chapter 11 cases (the "Chapter 11 Cases") have been procedurally consolidated;

**WHEREAS,** as of the Petition Date, Landlord and one of the Debtors were parties to an unexpired lease (the "Lease") of nonresidential real property for retail store space at 2045 Smith Haven Plaza in Lake Grove, NY (the "Premises");

**WHEREAS**, the Parties have entered into the Lease Termination Agreement attached hereto as **Exhibit A** (the "Lease Termination Agreement"), for which the Parties seek approval hereby;

**NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION THE PARTIES HERETO ACKNOWLEDGE RECEIVING, IT IS HEREBY STIPULATED, AGREED AND ORDERED AS FOLLOWS:**

1. The recitals set forth above are hereby made an integral part of the Parties' Stipulation and are incorporated herein.

65548/0002-45692114v2

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | STIPULATION AND CONSENT ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH LG-BBB, LLC |

2. Pursuant to sections 105(a), 363(b)(1) and (f), and 365(a) of the Bankruptcy Code, the Debtors and Landlord are authorized to enter into and perform under the Lease Termination Agreement, attached hereto as **Exhibit A**, and to implement the Lease Termination Agreement and the transactions contemplated thereunder and hereunder. The Lease Termination Agreement and all of the terms and conditions thereof, including, without limitation, the rejection and termination of the Lease, the Debtors' surrender of the Premises, the consummation of the transactions contemplated thereunder and hereunder, and the releases contemplated therein, which for the avoidance of doubt includes Landlord's release of any administrative claims (except as provided thereunder), are hereby approved in all respects.

3. Upon the Termination Date (as defined in the Lease Termination Agreement), the Debtors' rejection and termination of the Lease shall occur without any further action required by the Debtors, and the Debtors shall surrender the Premises pursuant to the terms of the Lease Termination Agreement.

4. The Debtors are authorized, pursuant to section 363(b)(1) of the Bankruptcy Code, to transfer any rights in and under the Lease and the Premises to Landlord, pursuant to the terms of the Lease Termination Agreement, which transfer shall, pursuant to section 363(f) of the Bankruptcy Code, be free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | STIPULATION AND CONSENT ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH LG-BBB, LLC |

5. The Debtors, in their sole discretion, are authorized, pursuant to section 554(a) of the Bankruptcy Code, to abandon to Landlord any personal property remaining in the Premises as of the Termination Date, which shall include, without limitation, the solar array systems installed on the roof of the Premises, and Landlord and their managing agents are free to use or dispose of such abandoned property in their sole and absolute discretion without liability to the Debtors or any entity.

6. Landlord's claims for indemnification under the Lease arising from any third-party claims that may be asserted against Landlord for occurrences prior to the Termination Date, if any, are preserved to allow Landlord to seek recovery under any applicable liability insurance policy of Debtor tenant without the need for Landlord to file a proof of claim, subject to any defenses the Debtors and the Debtors' estates may have with respect thereto.

7. The Debtors and Landlord are authorized to take any and all actions reasonably necessary or appropriate to consummate the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.

8. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), upon the Court's approval of this Stipulation, the relief set forth herein shall be effective and enforceable immediately upon entry hereof.

9. The requirement set forth in Local Rule 6007-1 that the Debtors file a notice of proposed abandonment is hereby deemed satisfied by the contents of the Application and Lease Termination Agreement or otherwise waived.

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | STIPULATION AND CONSENT ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH LG-BBB, LLC |

10. The Parties acknowledge and agree that the Court shall retain jurisdiction over all disputes concerning or related to the subject matter of this Stipulation.

*[Remainder of Page Intentionally Left Blank]*

Dated: July 7, 2023

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:  msirota@coleschotz.com
  wusatine@coleschotz.com
  fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:  josuha.sussberg@kirkland.com
  emily.geier@kirkland.com
  derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

/s/ *Patrick Collins*
**FARRELL FRITZ, P.C.**
Patrick Collins, Esq.
400 RXR Plaza
Uniondale, NY 11556
Telephone: (516) 227-0700
Email: pcollins@farrellfritz.com

*Counsel for LG-BBB, LLC*

65548/0002-45692114v2

# **EXHIBIT A**

**Lease Termination Agreement**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 21st day of June, 2023 by and between LG-BBB, LLC ("Landlord") and Bed Bath & Beyond Inc. ("Tenant" or "Debtor").

### RECITALS

WHEREAS, Landlord, as successor in interest to Lake Sampson, Ltd. and Tenant, as successor in interest to Service Merchandise Company, Inc. are parties to a certain Amended and Restated Lease and Sublease Agreement, dated as of December 5, 1980, as amended from time to time (the "Lease"), covering certain premises located at 2045 Smith Haven Plaza in Lake Grove, New York (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, On April 23, 2023 (the "Petition Date") Tenant, along with its affiliated debtors and debtors in possession, filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, as of the June 16, 2023, the post-petition arrears due under Lease are: (i) $8,497.50 for May 2023 (the "May 2023 Arrears") and (ii) $58,055.68 for June 2023. Tenant represents that a check for $49,558.18 has been issued and will be delivered to Landlord (the "June 2023 Check"), leaving $8,497.50 due for June 2023 rent (the "June 2023 Arrears"). An additional $69,360.75 of rent and additional rent is due under the Lease on or before July 1, 2023 of which $60,966.25 is scheduled for payment on July 1, 2023, leaving a July 2023 balance of $8,497.50 (the "July 2023 Rent"). As used in this Agreement. the term "Remaining Post-petition Rent" means the May 2023 Arrears, the June 2023 Arrears and the July 2023 Rent, in the aggregate amount of $25,492.50.

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord to be restored to possession of the Premises as of the Termination Date, the parties to release the other and Landlord to be able to dispose of any Tenant's Property (defined below) remaining at the Premises on the Termination Date in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

### AGREEMENT

1.  Recitals. The Recitals are incorporated herein as if set forth at length.

2.  Lease Termination. The Lease is terminated effective July 31, 2023 (the "Termination Date").

3.  Consideration. Landlord shall pay to Tenant $474,507.50 -- representing the agreed upon Lease Termination Fee of $500,000 less the Remaining Post-petition Rent--upon the Termination Date, subject to satisfaction of the conditions precedent listed in paragraph 7 of this Agreement (the "Lease Termination Payment"). If the payments (i) represented by the June 2023 Rent Check or (ii) scheduled to be paid on July 1, 2023 for $60,966.25 are not made as of the Termination Date, Landlord shall be entitled to deduct such amounts not paid from the Lease termination Payment.

Case 23-13359-VFP    Doc 1237-1    Filed 07/07/23    Entered 07/07/23 15:34:31    Desc
Exhibit 1 - Stipulation and Consent Order    Page 10 of 14

DocuSign Envelope ID: B89B8FFA-A5BB-4659-BA1A-5700A6FEB5BE

4. **Landlord Release of Tenant.** For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character concerning or arising from the Lease, except that (i) Landlord does not release Tenant from obligations of Tenant arising under this Agreement and (ii) to the extent necessary to seek indemnification under any applicable liability insurance policy of Tenant, Landlord does not release Tenant from any claims for indemnification under the Lease arising from any third-party claims that may be asserted against Landlord for occurrences prior to the Termination Date.

5. **Tenant Release of Landlord.** For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, members, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character concerning or arising from the Lease, except that Tenant does not release Landlord from obligations of Landlord arising under this Agreement.

6. **Scope of Release.** In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the parties being released from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7. **Conditions Precedent.** As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

    (a)    Tenant has delivered possession of the Premises to Landlord;

    (b)    Tenant has delivered to Landlord the keys and access codes to the Premises;

    (c)    An order has been entered by the Bankruptcy Court approving the entirety of this Agreement and such order is not subject to any stay.

    (d)    Tenant has executed this Agreement on or before June 21, 2023.

8. **Furniture, Fixtures and Equipment (FF&E).** Any FF&E and other personal property of Tenant remaining at the Premises (collectively "Tenant's Property"), including the solar array system installed on the roof of the Premises, after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the Tenant's Property in their sole and absolute discretion without any liability to the Debtor or any entity.

9. Obligations Pending Termination Date. Prior to the Termination Date, Tenant shall remain responsible for performance of all obligations under the Lease, except that (i) Tenant's obligation to pay rent and additional rent shall be satisfied by the offsetting of the Remaining Post-petition Rent against the Lease Termination Fee as described in paragraph 3 of this Agreement; and (ii) Tenant shall deliver to Landlord possession of the Premises in their as-is condition and Tenant shall have no obligation to perform any repair or replacement work to any part of the Premises or any fixtures, fittings or improvements therein. Without limiting the foregoing, Tenant shall maintain, through the Termination Date, its existing occurrence-based property, casualty and general liability insurance coverage as required under the Lease. Tenant agrees that Tenant shall not make any material change with respect to the condition of the Premises between the date hereof and the Termination Date that has not been approved in writing by Landlord.

10. "No Shop." Tenant shall promptly move the Bankruptcy Court for approval of this Agreement. From the execution of this Agreement through the Effective Date, Tenant and its affiliates, and their respective officers, managers, directors, and employees, shall not:

(a) directly or indirectly, make, solicit, initiate or encourage submission of proposals or offers from any person or entity relating to an assignment of the Lease, or

(b) participate in any discussions or negotiations regarding, furnish any information with respect to, assist or participate in, or facilitate in any other manner any efforts or attempt by any person or entity to do or seek any of the foregoing,

it being the intent of the parties that neither (a) the assignment of the Lease, nor (b) any details broad or specific regarding the terms of this offer, be "shopped" pending Bankruptcy Court approval of this Agreement. Immediately after the signing of this Agreement, Tenant shall instruct its representatives, advisors and agents (specially A&G Realty and JLL) not to market the Lease or the Premises, or participate in any negotiations with or furnish any information regarding the Lease or the Premises to, any third party, on behalf of Tenant or its affiliates and the Lease shall be removed from the list of assets subject to the Bidding Procedures and Lease Sale Procedures in effect in Tenant's bankruptcy case.

11. Authority to Settle. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

12. Entire Agreement. This Agreement contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

13. Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without

DocuSign Envelope ID: B89B8FFA-A5BB-4659-BA1A-5700A6EEB5BE

Case 23-13359-VFP    Doc 1237-1    Filed 07/07/23    Entered 07/07/23 15:34:31    Desc
Exhibit 1 - Stipulation and Consent Order    Page 12 of 14

any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

14. *Attorneys' Fees*. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

15. *Counterparts*. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

16. *Governing Law.* This Agreement shall be governed by and construed under the laws of the State of New York, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

17. *Jurisdiction.* The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

18. *Miscellaneous*.

(a) The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b) This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c) Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d) Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e) Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

    (f)  The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

LG BBB, LLC
By: _____
Print Name: John Usdan
Its: Manager

BED BATH & BEYOND INC.
By: _____Wade Haddad_____
Print Name: _____
Its: _____

AGREED AND CONSENTED TO:

C&B REALTY #2, LLC
By: _____
Print Name: John Usdan
Its: Manager