**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/BBBY. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

**DECLARATION OF
CHRISTIAN TEMPKE IN SUPPORT OF ENTRY OF
AN ORDER (I) APPROVING THE SALE OF ACQUIRED ASSETS
FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS
AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER
INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET
PURCHASE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

I, Christian Tempke, declare as follows under penalty of perjury:

1. I am a Managing Director in the Restructuring Group of Lazard Frères & Co. LLC ("Lazard"), investment banker to the Debtors.

2. I am familiar with the negotiations during the sale process and related to the asset purchase agreement (the "Asset Purchase Agreement") with Dream 545 Weston Canal Road, LLC ("Dream on Me") attached as Exhibit A to the Debtors' *Notice of Filing of Asset Purchase Agreement with Dream on Me Industries, Inc. Relating to BABY IP Assets* [Docket No. 1152] (the "Notice of APA") filed on June 30, 2023.[2]

3. I submit this declaration (the "Declaration") in support of the entry of the Sale Order.[3] Except as otherwise indicated, I have personal knowledge of all facts in this Declaration, based on my review of the Debtors' business, involvement with the marketing and sale process with respect to the Debtors' assets, including the Acquired Assets, and information supplied to me by members of the Debtors' management team and the Debtors' other advisors.

4. Based on my experience and involvement with the sale and marketing process for the Acquired Assets (the "Marketing Process"), I believe that the Debtors conducted a thorough and fair Marketing Process transparently, and in good faith. The Marketing Process involved

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Asset Purchase Agreement, the Sale Order, the Bidding Procedures Order, the Notice of Initial Winning Bidder, or the Notice of APA, as applicable.

[3] As used herein, "Sale Order" shall refer to the *Order (I) Approving the Sale of Acquired Assets Free and Clear of All Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform their Obligations Under the Asset Purchase Agreement, and (III) Granting Related Relief* filed contemporaneously herewith.

extensive efforts by the Debtors and their advisors including a comprehensive process and hard-fought arms'-length negotiations with multiple potential purchasers. The Asset Purchase Agreement represents the best value maximizing-transaction available for the Debtors' estates and the Debtors' stakeholders.

5. I am over the age of 18 years and authorized to submit this declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

### Background and Qualifications

6. I am a Managing Director in the Restructuring Group of Lazard. Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority. Lazard is a full-service independent investment banking firm providing financial advisory services, including with respect to mergers and acquisitions, capital raising, and restructuring advice, across a broad range of industries. Together with its predecessors and affiliates, Lazard has been advising clients around the world for more than 175 years. Lazard and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Since 1990, Lazard professionals have been involved in over 500 restructurings, representing well over $1 trillion in debtor assets.

7. Lazard provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Lazard and its senior professionals have extensive experience in the reorganization and

restructuring of distressed companies, both out-of-court and in chapter 11 cases. Lazard's business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Rockall Energy Holdings, LLC*, No. 22-90000 (MXM) (Bankr. N.D. Tex. Apr. 27, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 17, 2021); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Mar. 31, 2021); *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del. July 15, 2019); *In re Sears Holdings Corp.,* No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018); *In re Nine West Holdings, Inc.*, No. 18-10847 (SCC) (Bankr. S.D.N.Y. June 5, 2018); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio May 8, 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Oct. 27, 2017); *In re Gymboree Corporation*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Maxcom Telecomm., S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Nov. 3, 2011); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011).

8. I have been employed at Lazard since 2007 and specialize in advising public and private companies and creditor groups in complex financial restructurings, recapitalizations,

capital raises, and sale transactions. Specifically, I have extensive experience representing companies, creditors, and other constituencies in transactions involving the sale of all or portion of a company's assets, including in the context of a chapter 11 sale process. During the course of my career, I have been involved in a variety of restructuring and recapitalization engagements, including Rockall Energy, JCPenney, Gavilan Resources, Forever 21, Toys"R"Us, Gymboree, Jones Energy, Westinghouse, LINN Energy, Stone Energy, RCS Capital, Millennium Health, RadioShack, Chassix, Momentive, Quiznos, OGX, Eastman Kodak Company, and several others. Additionally, I have submitted declarations and provided expert testimony related to those matters in a number of chapter 11 cases.

9. I have a B.A. in economics from Northwestern University. I hold a Series 24 and Series 79 Investment Banking Representative license.

## The Marketing Process

10. As described in the Kurtz Declaration [4] and in my Overstock Sale Order Declaration,[5] leading up to the Debtors' chapter 11 filing, the Debtors engaged in an extensive and thorough prepetition marketing process in pursuit of a value-maximizing transaction for all or a portion of the Debtors' assets. Prior to the Petition Date, Lazard engaged with over 100 potential purchasers and sources of postpetition financing, in an effort to secure a transaction for the Debtors'

---

[4] As used herein, the term "Kurtz Declaration" means the *Declaration of David Kurtz in Support of the Debtors' Motion for Entry of an Order (I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* filed at Docket No. 29-1.

[5] As used herein, the term "Overstock Sale Order Declaration" means the *Declaration of Christian Tempke in Support of Entry of an Order (I) Approving the Sale of Acquired Assets Free and Clear of all Claims, Liens, Rights, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform their Obligations Under the Stalking Horse Purchase Agreement, (III) Approving Assumption and Assignment of Certain Executory Contracts, and (III) Granting Related Relief* filed at Docket No. 1088.

5

assets. However, the Debtors did not receive any actionable offers for an acquisition of their assets prior to the Petition Date.

11. The Debtors filed these chapter 11 cases with the goal of continuing their prepetition marketing efforts and entering into a value-maximizing transaction (or transactions) for the benefit of all stakeholders. Accordingly, the Debtors, with the support of their key creditor constituencies, filed the Bidding Procedures Motion which established the parameters for the postpetition marketing process. Upon entry of the Bidding Procedures Order, the Debtors and Lazard continued their efforts to market all or a portion of the Debtors' assets on a postpetition basis in accordance with the Bidding Procedures Order. The Debtors and their advisors worked tirelessly to seek both going-concern and intellectual property bids for the Debtors' buybuy BABY business. Ultimately, the Debtors were unable to generate any actionable offers for a going-concern transaction for the buybuy BABY segment; however, the Debtors were able to obtain actionable offers for a potential sale of intellectual property assets, including the Acquired Assets.

12. The Marketing Process for the Acquired Assets was an extensive, far-reaching, and months-long process in which the Debtors and their advisors sought strategic and financial investors to effectuate a value-maximizing transaction. During the course of the marketing efforts, Lazard engaged with over 170 potential buyers for the Debtors' assets, including the buybuy BABY assets, and over 80 NDAs were executed. Further, the Debtors also consulted with, noticed, and updated key stakeholders and parties-in-interest about important occurrences of the Marketing Process, including but not limited to: the identity of the bidders; key terms of the bids; and time

frame for receiving possible Qualified Bids. The Marketing Process was comprehensive and transparent and conducted in accordance with the court-approved Bidding Procedures.

13. The Debtors, in consultation with the Consultation Parties and in accordance with the Bidding Procedures, extended the Bid Deadline and Auction date on multiple occasions, including with respect to a potential going-concern transaction (a "BABY Going-Concern Transaction"), to provide parties with additional time to conduct diligence and secure financing. Ahead of the Bid Deadline, the Debtors received numerous Qualified Bids for the Acquired Assets, which triggered an Auction with respect to such assets pursuant to the Bidding Procedures. While the Debtors also received preliminary indications of interest with respect to a BABY Going-Concern Transaction, the Debtors ultimately did not receive any actionable going-concern bids.

14. In accordance with the Bidding Procedures, and as set forth in the Notice of APA, on June 28, 2023, the Debtors conducted an Auction (the "BABY IP Auction") with respect to the Acquired Assets. Following the conclusion of the BABY IP Auction, as set forth in the Notice of Initial Winning Bidder,[6] the Debtors, in consultation with the Consultation Parties, selected Dream on Me as the Initial Winning Bidder, subject to topping by a higher or otherwise better Bid in connection with a BABY Going-Concern Transaction. After the Baby IP Auction, in consultation with the Consultation Parties, the Debtors further extended the Auction date for a potential BABY Going-Concern Transaction from June 29 to July 7 to provide potential interested parties for a BABY Going-Concern Transaction with additional time to finalize their bids.[7] The Debtors continued to engage with potentially interested parties around the terms of a BABY Going-

---

[6] As used herein, "Notice of Initial Winning Bidder" shall refer to the *Notice of (I) Initial Winning Bidder and Backup Bidder with Respect to the June 28, 2023 Auction for BABY IP Assets and (II) Amendment of Certain Dates and Deadlines Related to the Debtors' Bidding Procedures* filed at Docket No. 1124.

[7] *See* Notice of Initial Winning Bidder.

7

Concern Transaction. However, no party submitted an actionable Bid for a BABY Going-Concern Transaction. Accordingly, the Debtors, in consultation with the Consultation Parties, determined not to conduct an Auction for a potential BABY Going-Concern Transaction. On July 6, 2023, the Debtors selected Dream on Me as the Successful Bidder and Everyday Health Media LLC ("EHM") as the Backup Bidder, as set forth in the *Notice of Cancellation of buybuy BABY Going-Concern Auction* filed at Docket No. 1208. I believe, based on the representations made by both Dream on Me and EHM, that both parties are willing and able to consummate the transaction contemplated by their respective asset purchase agreements on the terms set forth therein. The Debtors intend to effectuate the Asset Purchase Agreement in order to consummate the value-maximizing transaction therein (the "Sale Transaction").

## The Sale Transaction

15. Pursuant to the Asset Purchase Agreement, the Debtors and Dream on Me agreed in principle to a sale of the Acquired Assets, on terms set forth in the Asset Purchase Agreement. The Asset Purchase Agreement provides for a purchase price (the "Purchase Price") of $15,500,000.00 in cash consideration.

16. The Asset Purchase Agreement contemplates the purchase of the Acquired Assets, free and clear of any liens or encumbrances and the assumption of liabilities associated with the Acquired Assets, to the extent known to Dream on Me. The Asset Purchase Agreement does not contemplate the assumption and assignment to Dream on Me of any executory contracts or unexpired leases associated with the Acquired Assets.

17. It is my understanding that the Debtors selected Dream on Me as the Successful Bidder in good faith and without collusion or fraud of any kind from arm's-length bargaining positions. Based on my knowledge and interactions, I believe that Dream on Me has transacted

8

with the Debtors in good faith in connection with this proceeding. Further, to my knowledge Dream on Me is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between Dream on Me and the Debtors.

## **Conclusion**

18. Accordingly, I believe that the Debtors engaged in a robust marketing process and the Sale Transaction is an important next step in the Debtors' restructuring efforts. It is therefore my opinion that the Sale Transaction and the terms of the Asset Purchase Agreement reflect the highest and best bid for the Acquired Assets. Accordingly, I respectfully submit that the Court should approve the Sale Transaction.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

| | |
|---|---|
| Dated: July 10, 2023<br>New York, New York | By: */s/ Christian Tempke*<br>Name: Christian Tempke<br>Title: Managing Director<br>Lazard Frères & Co. LLC<br>*Investment Banker and Financial Advisor to the Debtors and Debtors-in-Possession* |