LAW OFFICES OF DOUGLAS TABACHNIK P.C.
Douglas T. Tabachnik, Esq.
63 West Main Street, Suite C
Freehold, NJ 07728-2141
(732) 780-2760
dtabachnik@dttlaw.com
Counsel to Panama City Beach Venture II

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11<br>(Jointly Administered) |
| BED BATH & BEYOND INC., et al. | Case No. 23-13359 (VFP) |
| Debtors-In-Possession.[1] _____/ | |

**LIMITED OBJECTION OF PANAMA CITY BEACH VENTURE II,
LLC TO NOTICE OF PHASE 1 LEASE AUCTION, QUALIFIED
BIDS, LEASE SALE HEARING, AND RELATED LEASE INFORMATION**

Panama City Beach Venture II, LLC ("PCB Venture"), by and through its undersigned attorneys, hereby files its limited objection and reservation of rights to Notice Of Phase 1 Lease Auction, Qualified Bids, Lease Sale Hearing, And Related Lease Information [Doc. No. 905], and Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases [Doc. No. 1114] (the "Assignment Notice") (hereinafter collectively referred to as the "Lease Sale"):

**BACKGROUND**

1. On April 23, 2023 (the "Petition Date"), each of the above-referenced debtors (collectively, the "Debtors") filed voluntary petitions for reorganization pursuant to Chapter 11 of

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey. Since the Petition Date, the Debtors have continued to manage their properties and operate their businesses as debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2. PCB Venture owns the shopping center known as the Pier Park North Shopping Center (the "PPN Shopping Center"), located at the intersection of U.S. Highway 98 and Pier Park Drive in Panama City Beach, Florida.

3. Bed Bath & Beyond, Inc. ("Bed Bath"), one of the Debtors, as Tenant, and PCB Venture, as Landlord, are parties to that certain Lease Agreement, dated as of December 6, 2012 (the "Original Lease"), as amended by that certain First Amendment to Lease between PCB Venture and Bed Bath, dated April 24, 2013, as further amended by that certain Second Amendment to Lease between PCB Venture and Bed Bath, dated December 8, 2014 (the "Second Amendment") (collectively, the "Lease") under which Bed Bath leases approximately 23,774 square feet of store area at the Shopping Center (the "Leased Premises") (the Leased Premises was deemed to consist of 23,774 square feet in § 3 of the Second Amendment). A copy of the Lease (including amendments, exhibits, and other attachments thereto) is attached hereto and made a part hereof as **Exhibit "A"**.

4. The PPN Shopping Center is a "shopping center" within the meaning of § 365(b)(3) of the Bankruptcy Code.

5. On May 25, 2023, the Debtors filed the Notice of Lease Auction and Potential Lease Sale Hearing [Doc. No. 456], in which it listed the Lease as one of the leases to be sold at auction, objections to which are due by July 11, 2023.

6. On June 23, 2023, the Debtors filed a Notice of Phase 1 Lease Auction, Qualified

Bids, Lease Sale Hearing, And Related Lease Information [Doc. No. 905], in which it listed the Lease as one of the leases to be sold at auction, objections to which are due by July 11, 2023.

7. On June 27, 2023 the Debtors filed Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases [Doc. No. 1114], in which they advised that the Phase I Lease Auction resulted in the proposed sale of the Lease to Burlington, which PCB Venture understands to be Burlington Stores. See Doc. No. 1114, p. 9, no. 62.

8. PCB Venture files this limited objection to the potential and proposed assignment or sale of the Lease to Burlington, as notified in Doc. No. 1114[2] and reserves its rights regarding any other notice of leases, auction or sale (hereinafter referred to as "Lease Sale Notices").

## CONDITIONS FOR ASSUMPTION/ASSIGNMENT OF LEASE

9. Bed Bath may not assume and assign the Lease unless, at the time of assumption, it demonstrates, among other things, adequate assurance that it will cure, or promptly cure, any monetary defaults, in addition to providing "adequate assurance of future performance" under the Lease. 11 U.S.C. § 365(b)(1).

10. With respect to leased space within a shopping center, which is applicable here, the Bankruptcy Code includes additional protections for landlords and provides that any "assignment of [the Lease] is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, *use, or exclusivity* provision, and will not breach any such provision contained in *any other lease*, financing agreement, or master agreement relating to such shopping center." 11 U.S.C. § 365(b)(3)(C) (emphasis added).

---

[2] The Assignment Notice, Doc. No. 1114, is inconsistent with the *Notice of Assumption of Certain Unexpired Leases,* Doc. No. 1157, which indicates that Havertys Furniture Companies is the proposed assignee of the Lease. Counsel for the Debtors has indicated that Doc. No. 1157 is incorrect and that Burlington is the proposed assignee, with Havertys as the backup bidder.

11. When a debtor chooses to assume an unexpired lease under Bankruptcy Code Section 365, it assumes the lease *cum onere,* so that the debtor must assume all the benefits, burdens, and obligations attendant thereto. N.LR.B. v. Bildisco and Bildisco, 465 U.S. 513, 531-21 (1984).

12. In this instance, the Lease clearly states, in §§ 13.3.1 and 13.3.2, that Bed Bath, as Tenant, "shall honor certain exclusives granted by Landlord to certain other tenants in the Shopping Center pursuant to the terms of leases which have been executed prior to the Effective Date" and "certain exclusives granted by Landlord to certain other tenants in the Shopping Center pursuant to the terms of leases which are executed from and after the Effective Date." (collectively, the existing and future exclusive use provisions shall be referred to as the "Exclusive Use Provisions"). A copy of the Exclusive Use Provisions is attached hereto as **Exhibit "B."**

13. Any assignee must also not violate any of the Prohibited Uses, a copy of which is attached hereto as **Exhibit "C."**

14. Any proposed assignee will be a replacement co-tenant and must satisfy Article 22 of the Lease for replacement co-tenants, which requires that the replacement tenant be a national or regional tenant (as defined therein) typically found in first-class shopping centers and occupying at least eighty-five (85%) of the Floor Area of the tenant whom they are replacing.

15. Section 15.1.1 of the Lease further states that Tenant may assign its interest in the Lease "subject to all of the terms and conditions of [the] Lease," which includes the use restrictions.

16. Several of the Exclusive Use Provisions contain restrictions which could be violated, based on Burlington's typical retail use, were Burlington allowed to assume the Lease.

4

**RELIEF REQUESTED**

17. By this Limited Objection, PCB Venture requests adequate assurance that any proposed assignee, including Burlington, will not breach or violate any Exclusive Use Provisions, including the ones detailed below.

18. First, Exhibit K-1 of the Lease refers to PCB Venture's lease with The Fresh Market (the "Fresh Market Lease"). Section 5.2 of Fresh Market Lease provides that, except for "Incidental Sales," and other specific carveouts which do not apply to Burlington, "Landlord covenants that no portion of the Shopping Center . . . shall be used . . . for the sale of any Grocery Items for off-premises consumption." "Incidental Sales" and "Grocery Items" are defined in Fresh Market Lease as follows:

> Grocery Items means foodstuffs and drinks including, without limitation, any or all of the following: (i) dairy products, (ii) produce, (iii) coffee, tea and candies, (iv) nuts, snack mixes, and other bulk food items, (v) bakery products, (vi) meat, (vii) seafood, (viii) liquor, beer, wine and/or other alcoholic beverages, (ix) deli meats and cheeses, sushi, and convenient meal solutions, (x) vitamins, herbs and supplements, and (xi) cut flowers and live plants.
>
> Incidental Sales means all or any of the following: (a) sales of Grocery Items aggregately conducted from no more than the lesser of (i) ten percent (10%) of the applicable user's floor space or (ii) five hundred (500) square feet of such user's floor space (such measurements to include any and all display case/shelf areas and one-half (1/2) of any adjacent aisle spaces). . .

19. Burlington's website lists "Food & Pantry" as one of its store departments. *See* https://www.burlington.com/about/departments/. As the Lease encompasses approximately 23,774 square feet, Burlington would be required, as a condition to assume the Lease, to utilize no more than 500 square feet of its floor space at the Leased Premises for Grocery Items. Neither Bed Bath nor Burlington has provided assurance that Burlington will comply with this provision if it assumes the Lease.

20. Second, Exhibit K-1 of the Lease refers to the PCB Venture's lease with Ulta (the

5

"Ulta Lease"). Section 5.4 of the Ulta Lease provides:

> Tenant shall have the exclusive right ("Tenant's Exclusive") to conduct any portion of Tenant's Protected Uses in the Shopping Center, and all other tenants or other occupants of any portion of the Shopping Center shall be prohibited from engaging in any portion of Tenant's Protected Uses for so long as Tenant is operating any portion of Tenant's Protected Uses in the Premises (excepting Permitted Closures).

21. Section 5.4 of the Ulta lease goes on to define "Tenant's Protected Uses," in part, as: "the retail sale of cosmetics, fragrances, health and beauty products and accessories, hair care products and accessories; personal care appliances; skin care products, and body care products."

22. The Lease includes an incidental-sales carveout exception which excepts: "incidental sales (i.e., less than five hundred (500) square feet total of such tenant's premises is used to sell any of the products that comprise Tenant's Protected Uses)."

23. Burlington's website states that Burlington has departments devoted to both "Health and Wellness" and "Beauty and Fragrance," which each contain merchandise which would potentially fall under Ulta's exclusive provisions shown above. *See* https://www.burlington.com/about/departments/. Accordingly, were Burlington to assume the Lease, it would be limited to using no more than 500 square feet of the Leased Premises for the sale of these items. Neither Bed Bath nor Burlington has provided assurances that Burlington will comply with this limitation.

24. Third, Exhibit K-1 of the Lease refers to the PCB Venture's lease with Dick's Sporting Goods (the "Dick's Sporting Lease"). Section 1.5 (a) of the Dick's Sporting Lease provides in part:

> Landlord warrants and agrees that, during the term of this Lease, it will not enter into any lease, license agreement or other similar agreement nor permit any other premises in the Shopping Center (the "**Restricted Property**") to be used for the sale, rental and/or distribution, either singly or in any combination of: (i) health, fitness and/or exercise equipment; (ii) sporting goods and sporting equipment

(including, but not limited to, golf equipment and accessories); (iii) hunting, camping and fishing equipment and accessories; and/or (iv) athletic footwear (the "**Precluded Use Activity(ies)**").

25. Section 1.5 (b) of the Dick's Sporting Lease includes an incidental use exception as follows:

> Notwithstanding the foregoing Precluded Use Activity(ies) set forth in Subsection (a) above, the retail sale and/or distribution of the Precluded Use Activity(ies) shall be permitted in the lesser of (A) ten percent (10%) in the aggregate of any such Occupant's sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use) or (B) two thousand (2,000) square feet in the aggregate of such Occupant's sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use), and in addition, the foregoing Precluded Use Activity(ies) set forth in Subsection (a) above shall not apply to Ross Dress For Less, or its successors, assigns or sublessees.

26. Burlington's website lists "Shoes" and "Health & Wellness" as two of its store departments. *See* https://www.burlington.com/about/departments/. Accordingly, were Burlington to assume the Lease, it would be limited to using no more than 2000 square feet of the Leased Premises for the sale of health equipment or athletic footwear. Neither Bed Bath nor Burlington has provided assurance that Burlington will comply with the incidental use provision if it assumes the Lease.

27. Fourth, PCB Venture's lease with PetSmart (the "PetSmart Lease"), in § 31.B, provides in part:

> From and after the date hereof and continuing throughout the Term of the Lease, Tenant shall have the exclusive right in the Project to conduct any portion of Tenant's Primary Business described in clauses (i), (ii) and (iii) of Tenant's Primary Business [which includes the sale of pet food and products] set forth in Paragraph C of the Fundamental Lease Provisions ("Tenant's Exclusive").

28. Section 31.B of the PetSmart Lease further states that other tenants or occupants of the Project may sell items included in Tenant's Exclusive (other than the retail sale of animals and/or pet services), provided such items sold are "incidental" to such tenants' or occupants'

7

primary use and the floor area dedicated to said "incidental" sales does not exceed the lesser of (i) five percent (5%) or (ii) 500 square feet.

29. Burlington's website lists "Pet" as one of its store departments. *See* https://www.burlington.com/about/departments/. Accordingly, were Burlington to assume the Lease, it would be limited to using no more than 500 square feet of the Leased Premises for the sale of pet food and products. Neither Bed Bath nor Burlington has provided assurance that Burlington will comply with this incidental use provision if it assumes the Lease.

30. Fifth, PCB Venture's Reciprocal Easement Agreement with Rooms To Go (the "Rooms To Go Easement"), in § 3.01, provides in part:

> So long as the RTG Parcel is being used for the operation of a Rooms to Go furniture store (or its successor, transferee, or assign furniture or home furnishings store), no part of the Project other than the RTG Parcel shall be leased or sold to an occupant who either (x) uses two thousand (2,000) square feet or more of its gross leasable floor area for the sale or lease of furniture, home furnishings, lighting, accessories or mattresses (collectively, subject to the exclusions set forth below, "Protected Items").

31. Burlington's website lists "Home," with a picture of furniture, as one of its store departments. *See* https://www.burlington.com/about/departments/. Accordingly, were Burlington to assume the Lease, it would be limited to using no more than 2000 square feet of the Leased Premises for the sale of furniture, home furnishings, lighting, accessories, or mattresses. Neither Bed Bath nor Burlington has provided assurance that Burlington will comply with the incidental use provision if it assumes the Lease.

32. Sixth, PCB Venture's Lease with Barnes & Noble ("B&N Lease"), in § 6.3, provides in pertinent part:

> Landlord, and its successors and assigns, shall not (a) operate or permit under any circumstances to be operated within the Center any other store or Kiosk (as defined below) selling or displaying for sale or rental (i) any of the items included in Tenant's Protected Uses or (ii) vinyl recorded music

8

(collectively, the "**Exclusive Items**"), or (b) operate or permit under any circumstances to be operated within the Center (including within a Kiosk) any separately demised newsstand or magazine rack, regardless of size.

33. Protected Uses include, per § 6.1 of the Lease, the display and retail sale and/or rental of:

(a) books, magazines, periodicals, journals and newspapers in print, (b) books, magazines, periodicals, journals and newspapers on (A) tape, disk, DVD, in electronic or digital format and/or on or in any other media or on (B) any other form of media that are technological evolution of any of the items described in clause (A), (c) electronic or digital reading devices, including, without limitation, the NOOK™, together with various media and merchandise incidental thereto, audio compact discs, vinyl records and other forms of recorded music and turntables and (d) movies, TV shows and other content on video tapes and disks, DVDs and Blu-Ray discs, and calendars, games (including video games), toys and puzzles, computer software, computer games, and gift items, as well as any items that are a technological evolution of any of the items described in the preceding clauses (c) and (d).

34. The B&N Lease contains an incidental carve-out exception, which permits the use of ten percent (10%) in the aggregate of the tenant's display for selling items falling within the description of Protected Uses.

35. Burlington's website lists "Electronics" as one of its store departments. *See* https://www.burlington.com/about/departments/. Accordingly, were Burlington to assume the Lease, it would be limited to using no more than ten percent (10%) in the aggregate of its space for selling items falling within the description of Protected Uses. Neither Bed Bath nor Burlington has provided assurance that Burlington will comply with the incidental use provision if it assumes the Lease.

36. In addition to the restrictions listed above, the Shopping Center is subject to numerous other Exclusive Use Provisions which could limit or restrict Burlington's operations.

37. Without adequate assurance of future performance, the operation by Burlington in

9

accordance with its normal operations could lead to violations of "provisions such as . . . use, or exclusivity provisions" and would "breach . . . such provision[s] contained in . . . other lease[s] . . . relating to [the Shopping Center]," in violation of 11 U.S.C. § 365(b)(3)(C) of the Bankruptcy Code.

38. Such violations would cause PCB Venture to be in breach with many of its current tenants and would cause irreparable damage to PCB Venture.

39. Furthermore, Debtor has not demonstrated that the assumption, assignment, or sale of the Lease will not disrupt any tenant mix or balance of the Shopping Center, as required by § 365(b)(3)(D) of the Bankruptcy Code.

### *Debtor must cure any monetary defaults*

40. Section 365(b)(1) requires the Debtor to cure any monetary defaults. The correct cure amount with respect to unpaid rent is $5,402.15. In addition, section 365(b)(1) includes compensation to landlords for sums incurred for attorneys' fees and expenses. The Leases provide for recovery of attorneys' fees and expenses. Landlords hereby object to assumption of the Leases listed in the Notice absent payment of attorneys' fees and expenses. See 11 U.S.C. §365(b)(1)(B); LJC Corp. v. Boyle, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); In re Bullock, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); In re Crown Books Corp., 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); In re BAB Enterprises, Inc., 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); In re Westview 74th St. Drug Corp., 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); In re Ribs of Greenwich Vill., Inc., 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

41. Landlords further object to the assumption of the Leases absent payment of all cure amounts owed thereunder through the effective date of assumption, including any amounts that will become due or be invoiced on or after July 10, 2023 (including, but not limited to, additional

amounts, not yet known, that accrued following July 10, 2023, such as year-end adjustments to various items including, but not limited to, real estate taxes, common area maintenance, percentage rent and insurance), as well as attorneys' fees and costs.

42.     Therefore, PCB Venture files this limited objection to the potential assignment or sale of the Lease to Burlington or any other potential assignee to the Lease if it does not comply with the Bankruptcy Code provisions or the Lease.

**WHEREFORE**, PCB Venture respectfully requests the entry of an order granting the relief described herein, conditioning the assumption and assignment upon compliance with the Exclusives and Prohibited Uses, determining that Burlington is an acceptable replacement co-tenant under the parameters of the Lease, awarding payment of any unpaid cure amount, plus attorneys' fees and costs, together with such other and further relies as is just and proper.

Dated: July 10, 2023

LAW OFFICES OF DOUGLAS TABACHNIK P.C.

By: /s/ *Douglas T. Tabachnik*
Douglas T. Tabachnik
63 West Main Street, Suite C
Freehold, NJ 07728-2141
Tel: (732) 780-2760
Email: dtabachnik@dttlaw.com
Counsel to Panama City Beach Venture II

11