Exhibit B

**EXHIBIT D-1**

**EXCLUSIVES AND RESTRICTED USES**

*[AS OF 7/10/23]*

In addition to restrictions and other encumbrances of record, Tenant is subject to the following existing exclusives and restrictions:

| | |
|---|---|
| Aspen Dental | Section 5.04 of the Lease dated August 30, 2013, provides in part:<br><br>During the Term of this Lease, so long as Tenant is open, occupying and operating the Premises in accordance with the terms and provisions of this Lease for the Permitted Use, Landlord shall not lease space (or consent to the subleasing of space to the extent Landlord has such right) in the Shopping Center, to any tenant or other occupant whose primary business (as hereinafter defined in this Section) is the Permitted Use ("Exclusive Use"); *provided, however*, the Exclusive Use (a) shall not apply to the following:  (i) those tenants listed in Exhibit M attached hereto and made a part hereof with a lease that predates the date of this Lease whose existing use clause as of the date hereof permits the Exclusive Use, and the successors, assignees and transferees of any such tenant (provided, however, that, to the extent Landlord is permitted to withhold consent to a change in use under such leases, Landlord shall not consent to any change in use under such leases that would violate the Exclusive Use); (ii) any Shopping Center tenants leasing or occupying 20,000 or more contiguous square feet of GLA operated under a single trade name; (iii) any tenant that is permitted to use its premises for the Exclusive Use by operation of law, court order, bankruptcy, or similar action with the force of law; (iv) any out lots, or any other premises not owned by Landlord as of the date hereof; or (v) areas into which the Shopping Center may be expanded in the future, unless the same shall be operated with the existing Shopping Center as a single integrated mercantile complex, in which case the Exclusives Use shall apply (subject to the other exclusions to the Exclusive Use set forth in this Section 5.04) to such areas. |
| Asurion Tech Repair & Solutions *(former trade name UBREAKIFIX)* | Section 5.04 of the Lease dated June 22, 2021, provides in part:<br><br>During the term of this Lease, provided that Tenant is not in default of the Lease and provided Tenant is operating according to the Permitted Use, in no event shall Landlord lease any space in the Shopping Center to a tenant who intends to use such space (in whole or in part) for the repair of electronics (the "Exclusive Use"). Notwithstanding the foregoing, such exclusive shall not apply to: a) any lease currently executed or any sublease within said space, except in the event such current lease or sublease requires Landlord's approval to a change in use that would violate the Exclusive Use, or b) any current or future lease larger than 5,000 square feet, except in the event such current lease requires Landlord's approval to a change in use that would violate the Exclusive Use. |
| Barnes & Noble | Section 6.1 of the Barnes & Noble Lease dated June 21, 2023, provides in part:<br>Tenant may use the Premises for the following purposes: (i) for the display and retail sale and/or rental of (a) books, magazines, periodicals, journals and newspapers in print, (b) books, magazines, periodicals, journals and newspapers on (A) tape, disk, DVD, in electronic or digital format and/or on or in any other media or on (B) any other form of media that are technological evolution of any of the items described in clause (A), (c) electronic or digital reading devices, including, without limitation, the NOOK™, together with various media and merchandise incidental thereto, audio compact discs, vinyl records and other forms of recorded music and turntables and (d) movies, TV shows and other content on video tapes and disks, DVDs and Blu-Ray discs, and calendars, games (including video games), toys and puzzles, computer software, computer games, and gift items, as well as any items that are a technological evolution of any of the items described in the preceding clauses (c) and (d); (ii) other merchandise typically sold in Tenant's other stores; and (iii) any lawful retail use, subject to both Landlord's prior written approval with respect to such use (which such approval shall not be unreasonably withheld, conditioned, or delayed), and the exclusive and prohibited uses attached to this Lease as Exhibit C and any exclusive and prohibited uses existing as of the date of any change in Tenant's use (collectively, the "**Permitted Use**").  The specific purposes described in subclauses (i)(a) and (i)(b) above are sometimes collectively referred to herein as "**Tenant's Protected Uses**".<br><br>Section 6.2 of the Barnes & Noble Lease dated June 21, 2023, provides in part:<br>Landlord represents and warrants that the Tenant's Protected Uses will not violate any agreement to which the Center or Landlord is currently bound, including exclusives granted to other tenants of the Center, which exclusives Landlord hereby represents and warrants are set forth on **Exhibit C** attached to this Lease. Landlord shall indemnify and hold Tenant harmless from any loss or liability in the event that |

| | |
|---|---|
| | the foregoing representation and warranty is not accurate including without limitation defense of any claims raised by any other tenant who has an exclusive right in conflict with the Tenant's Protected Uses. Subject to any then existing exclusives, Tenant shall be entitled to change its use of the Premises to any other lawful retail use with Landlord's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Landlord agrees that it shall from time to time provide Tenant with an updated listing of the exclusive uses affecting the Center. Landlord further represents and warrants that the Premises is in a zone which permits, as of right, the Tenant's Protected Uses, and that no variance, exemption or other deviation or exception to the local zoning ordinance shall be required to use the Premises in the manner described in this Lease. Tenant's trade name under which it may choose to operate shall be Barnes & Noble.<br><br>Section 6.3 of the Barnes & Noble Lease dated June 21, 2023, provides in part:<br>Landlord, and its successors and assigns, shall not (a) operate or permit under any circumstances to be operated within the Center any other store or Kiosk (as defined below) selling or displaying for sale or rental (i) any of the items included in Tenant's Protected Uses or (ii) vinyl recorded music (collectively, the "**Exclusive Items**"), or (b) operate or permit under any circumstances to be operated within the Center (including within a Kiosk) any separately demised newsstand or magazine rack, regardless of size.  As used herein, "**Kiosk**" shall mean any kiosk, cart, display, signage, ATM, public phone, planter, bench, pushcart or other item, whether temporary or permanent (collectively, and for convenience, the "**Kiosks**"). The Incidental Sale (as hereinafter defined) of one, all or any combination of the Exclusive Items in connection with the overall business of another operator or tenant, shall not be deemed a violation of this Section 6.3.  As used herein, "**Incidental Sale**" shall mean the lesser of (x) ten percent (10%) in the aggregate of such operator's or tenant's display area, and (y) five hundred (500) square feet in the aggregate of such operator's or tenant's display area (inclusive of allocable aisle space). Other tenants in the Shopping Center selling electronic devices shall be permitted, however, in no event shall a tenant be allowed to operate as a digital bookstore.<br><br>Section 6.4 of the Barnes & Noble Lease dated June 21, 2023, provides in part:<br>Tenant has entered into this Lease in reliance upon representations by Landlord that the Center is and will remain substantially retail in character.  Landlord agrees that it shall not permit within any other premises in the Center those Prohibited Uses set forth on **Exhibit C**. |
| Beachtown Chiropractic | Section 5.04 of the Lease dated June 29, 2018, provides in part:<br><br>Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of providing chiropractor services to the general public (the "Exclusive Use"), Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the Exclusive Use. Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, nor any tenant as to which Landlord has no control of such tenant's use of its premises and/or whose lease allows it to operate for any lawful use and/or whose permitted use otherwise allows it to operate for the Exclusive Use, or its successors and/or assigns; nor (ii) Any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving twenty percent (20%) or less of its annual gross sales from the Exclusive Use shall not be deemed in violation of this provision). |
| Bed, Bath & Beyond | Lease dated December 6, 2012, as amended by First Lease Amendment<br><br>Section 13.2.1 and 13.2.2 and 13.1.2 of the Lease provides in part:<br><br>13.2.1  Except for the existing leases with Dick's Sporting Goods and Michael's Arts & Crafts which do not contain and are not bound by, Tenant's exclusive (the "**Excepted Leases**"), Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any Related Land to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or itself, for the sale, rental or distribution, at retail or at wholesale, either singly or in any combination, of items contained in any of the following respective categories of merchandise: (a) linens and domestics; (b) bathroom items (but excluding health and beauty care items and excluding plumbing hardware); (c) housewares (excluding furniture, and major appliances or "white goods"); (d) frames and wall art (provided that a fine art gallery shall not be precluded); (e) window treatments; and/or (f) closet, shelving and storage items (which items, either singly or in any combination, are hereinafter referred to as the "**Exclusive Items**").  Notwithstanding the foregoing, any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of Exclusive Items |

| | |
|---|---|
| | within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such sales, rental and/or distribution area) not to exceed the lesser of (x) ten percent (10%) of the Floor Area of such tenant's or subtenant's premises, or (y) two thousand five hundred (2,500) square feet of Floor Area within such tenant's or subtenant's premises. [For example only, a tenant occupying premises containing a total of five thousand (5,000) square feet of Floor Area could sell Exclusive Items (either singly or in any combination) so long as the aggregate area within its entire demised premises in which any and all Exclusive Items are sold shall not exceed five hundred (500) square feet.].  Notwithstanding the foregoing, tenants under Excepted Leases (and current or future assignees or sublessees of such tenants) shall nevertheless be subject to the restrictions contained in this Section 13.2 in the event that: (i) the lease between Landlord and any such tenant requires the consent of Landlord to any assignment or subletting or to a change in the use of the applicable premises, in either case which would permit the sale, rental or distribution of the Exclusive Items; or (ii) Landlord permits or agrees to an expansion of the applicable premises for the sale, rental, or distribution of the Exclusive Items.

13.2.2  The restrictions set forth in Subsection 13.2.1 above shall not apply to a full-line national: (i) department store [for example, Wal-Mart, Macy's, Target or Kohl's], (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club], or (iii) home improvement center [for example, Home Depot or Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 80,000 square feet of Floor Area within such stores as such stores are currently operated (as of the Effective Date) or (iv) furniture store [for example, Rooms To Go or Haverty's] selling frames and wall art as an incidental part of its sale of furniture and other furniture related items and accessories and other items normally sold in  Rooms To Go and similar retail furniture stores. In addition, and notwithstanding the restrictions set forth in Section 13.2.1 above, Tenant hereby consents to the operation of a Pier 1 Import store (as same typically operates), subject to and conditioned upon the following terms: (a) the Pier 1 Imports store shall be located in that portion of the Shopping Center as is designated on Exhibit B attached hereto, (b) the lease for the Pier 1 Import store shall then be in full force and effect, and (c) the Floor Area of the Pier 1 Import store shall not exceed 10,000 square feet of Floor Area.

13.1.2  Landlord shall not lease, rent or occupy or permit to be occupied any portion of the Shopping Center or any "Related Land" (hereinafter defined) for any of the "Prohibited Uses" that pertain to the Shopping Center or the Related Land, as the case may be (as set forth in Exhibit L hereto annexed), provided, however, that as to any future Related Land, the foregoing restriction shall not apply to the extent that any Prohibited Uses are otherwise permitted under leases entered into prior to the date on which such land becomes Related Land.  As used in this Lease, the term *"Related Land"* shall mean any land contiguous or adjacent to the Shopping Center (including, without limitation, any land that would be contiguous or adjacent to the Shopping Center but for any intervening road, street, alley or highway) owned or controlled by Landlord or its Affiliate(s). |
| Cato | Section 25 of the Lease dated May 31, 2013, provides:

LESSOR agrees that, during the Term, subject to existing leases, (i) no space immediately adjacent to the Premises shall be occupied by or used for a pet shop with live animals, a veterinary clinic, a flea market, a game room, a car wash, a facility for the sale, display, leasing or repair of motor vehicles, or automatic teller machine, vending machines available to the public or business in which any of them is a part, (ii) no space within 100 feet of any exterior boundary of the Premises, as shown on Exhibit A attached hereto and incorporated herein, shall be occupied by or used for any of the following uses which require extensive parking or are otherwise incompatible with LESSEE's permitted retail use of the Premises: a bar, disco, night club, game room, amusement arcade, movie theatre, meeting hall, auditorium, school, church, or a gymnasium or health club larger than 4,000 square feet, adult club, massage parlor (other than medical massage as an incidental use, or a business offering therapeutic massages as an incidental use such as a day spa, or as a primary use if a first-class, national chain tenant such as a Massage Envy), betting parlor or gambling hall, funeral parlor, storage facility (but storage space incidental to a primary permitted use is acceptable), bowling alley, skating rink, dance hall, billiard, bingo or pool hall, or plasma collection center uses, (iii) no space in the Shopping Center shall be occupied by or used for the sale of sexually explicit materials or products (provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Borders and Barnes & Noble, as said stores currently operate) or the sale or rental of videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall  not  be  deemed  "sexually  explicit  materials  or  products"  hereunder), |

| | |
|---|---|
| | recreational drugs, medical marijuana or drug paraphernalia, and (iv) smoking shall not be permitted in contiguous or adjacent spaces. |
| CAVA *(former trade name Zoes Kitchen)* | <u>Section 5.04 of the Lease dated September 8, 2014, as amended by Section 6 of Fourth Amendment to Lease agreement dated March 24, 2022, provides in part:</u><br><br>Provided no default by Tenant is then occurring and provided Tenant is operating as a fast casual Mediterranean food restaurant whose menu includes primarily Mediterranean style specialty bowls, pita sandwiches and/or hummus (collectively, the "Exclusive Use"), during the Term of this Lease, Landlord shall not lease space in the Shopping Center to fast casual format restaurant whose menu features primarily items within the Exclusive Use.   Notwithstanding the foregoing, the Exclusive Use shall not apply to: (i) any tenant with a lease that predates the date of the Original Lease; nor (ii) any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving fifteen percent (15%) or less of its annual gross sales from sales of Exclusive Use items in a fast casual format; nor (iii) sales of any individual Exclusive Use item that Tenant ceases to sell in the Premises; nor (iv) any fast food restaurant (like Taco Bell); nor (v) any tenant occupying over 10,000 square feet; nor (vi) the Shopping Center tenant d/b/a Island Fin Poke Co., its successors and assigns, in space D-175 operating as a Hawaiian poke and ceviche restaurant. |
| Chili's Grill & Bar | <u>Section 7(b) of the Lease dated November 14, 2014, provides in part:</u><br><br>Provided Tenant is not then in default of this Lease beyond all notice and cure periods and is open and operating on the Land (subject to Permitted Closures as defined in <u>Paragraph 7I</u> below) as a typical Chili's Grill & Bar restaurant or another similar full-service, sit-down casual dining restaurant that operates with a "varied menu theme", during the Term of this Lease, except for Tenant, Landlord shall not lease or sell any portion of the Center to, or otherwise allow to operate in any portion of the Center, another full-service, sit-down casual dining restaurant consisting of 4,500 square feet or more, which both (i) serves alcoholic beverages and (ii) operates with a "varied menu theme", selling a wide variety of American and Fresh Mex (non-ethnic) type food, such as, for example purposes only (and regardless of the square footage of such restaurants): Applebee's, Amarillo Grill, Bennigan's, B.J.'s Restaurant & Brewery, Brickhouse Tavern & Tapp, Buffalo Cafe, Buffalo Wild Wings, Cheddar's, Damon's, Houlihan's, Logan's Roadhouse, Lone Star Cafe, Max & Erma's, Miller's Ale House, O'Charley's, Original Roadhouse Grill,  Red Robin, Roadhouse Grill, Ruby Tuesday's, T.G.I. Friday's and Tony Roma's.  A "varied-menu theme" restaurant shall mean a casual dining restaurant selling a wide variety of beef, fish, chicken, pastas, soups, salads and sandwiches, appetizers and desserts, together with alcoholic beverages, in a casual dining setting. A "fast-casual" dining restaurant, meaning any casual restaurant that delivers service primarily through a "counter-line" or other customer "self-order service" mechanism other than customary "sit down" table service, shall not be deemed to be a "varied-menu theme" restaurant hereunder.  A "fast food" restaurant such as a Burger King, McDonald's, Subway, Taco Bell, Wendy's shall not be deemed to be a "varied menu theme" restaurant.  For purposes hereof, any ethnic or specialty restaurant such as, by way of example only, Mexican, German, Italian, Chinese, seafood, steakhouse, chop house, chicken, barbecue or other restaurant with a specialty menu or featured food item menu, including, by way of example only, Olive Garden, Red Lobster, Outback Steakhouse, Trail Dust Steakhouse, Ryan's Steakhouse, Golden Corral, Sizzler, Cracker Barrel, Macaroni Grill, Carrabba's Italian Grill, Don Pablo's, Bonefish, and IHOP, shall not be deemed to be a "varied menu theme" restaurant.  For purposes hereof, any fine dining establishments or fine dining restaurants open only for dinner, with higher price points than Tenant, shall not be deemed to be a "varied menu theme" restaurant regardless of the menu offerings. … The exclusive in this <u>Paragraph 7(b)</u> shall not be applicable to any existing tenant or occupant or successor or assign that is permitted under existing permitted use language as set forth in such tenant's lease, to change its use, and/or to assign its Lease, without further consent from Landlord, to operate as such a prohibited restaurant. |
| Cost Plus World Market | <u>Lease dated April 22, 2014</u><br><br><u>Sections 13.2.1, 13.2.2, 13.2.3 and 13.1.2 of the Lease provides in part:</u><br><br>13.2.1 Except for Existing Leases, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any Related Land to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or itself, for the display and/or sale of pre-packaged gourmet foods; beer, wine and spirits for off-premises consumption; and/or home décor products (which items, either singly or in any combination, are hereinafter referred to as the ***"Exclusive Items"***). |

|  | Notwithstanding the foregoing, (i) any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of pre-packaged gourmet foods and/or home décor products within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such storage, sales, rental and/or distribution area), not to exceed five hundred (500) square feet of Floor Area within such tenant's or subtenant's premises; and (ii) Tenant's exclusive with respect to the sale of beer, wine and spirits for off-premises consumption shall not be permitted under any circumstances, regardless of the amount of Floor Area devoted to the sale of beer, wine and/or spirits, except (i) if a tenant has such right under an Existing Lease or (ii) such tenant is a restaurant and sells beer, wine and/or spirits for off-premises consumption as an incidental part of its business or (iii) such tenant is primarily a grocery store and sells beer, wine and/or spirits in addition to grocery items and is located only in the space designated for Dick's Sporting Goods or in the Permissible Use Area (as indicated on Exhibit B attached hereto) or (iv) such tenant is a first-class wine bar and/or first class micro-brewery type establishment (by way of example, Brew House or Brass Tap), provided such tenant in this clause (iv) is located at least 150 feet from the closest demising wall of the Premises, it being agreed that a wine or liquor store shall not be permitted except for Chan's Wine World (as it currently operates) and any store similar to Chan's Wine World.

13.2.2 As to any future Related Land, the foregoing restrictions shall not apply to the extent that any Exclusive Items are otherwise permitted under leases entered into prior to the date on which such land became Related Land. Notwithstanding the foregoing, tenants under Existing Leases (and current or future assignees or sublessees of such tenants) shall nevertheless be subject to the restrictions contained in this Section 13.2 in the event that: (i) Landlord may withhold its consent to any assignment or subletting or to a change in the use of the applicable premises, in either case which would permit the sale, rental or distribution of the Exclusive Items (unless the tenant under the Existing Lease that is being assigned or subleased had such right pursuant to Section 13.2); or (ii) Landlord may withhold its consent to an expansion of the applicable premises for the sale, rental, or distribution of the Exclusive Items.

13.2.3  The restrictions set forth in Subsection 13.2.1 above shall not apply to a full-line national: (i) department store [for example, Wal-Mart, Macy's, Target or Kohl's]; (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club]; or (iii) home improvement center [for example, Home Depot or Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 80,000 square feet of Floor Area within the Shopping Center as such stores are currently operated (as of the Effective Date) or (iv) furniture store [for example, Rooms To Go or Haverty's] or (v) a grocery store operating in accordance with the provisions of Section 13.2.1(iii) above.  In addition, and notwithstanding the restrictions set forth in Section 13.2.1 above, Tenant hereby consents to the operation of a Kirklands store (as same typically operates), subject to and conditioned upon the following terms: (a) Kirklands shall be located in that portion of the Shopping Center as is designated on Exhibit B attached hereto, (b) the lease for Kirklands shall then be in full force and effect, and (c) the Floor Area of Kirklands shall not exceed 10,000 square feet of Floor Area; and Tenant hereby consents to the operation of a Pier 1 Imports store (as same typically operates), subject to and conditioned upon the following terms: (a) Pier 1 Imports shall be located in that portion of the Shopping Center as is designated on Exhibit B attached hereto, (b) the lease for Pier 1 Imports shall then be in full force and effect, and (c) the Floor Area of Pier 1 Imports shall not exceed 10,000 square feet of Floor Area.

13.1.2  Landlord shall not lease, rent or occupy or permit to be occupied any portion of the Shopping Center or any "Related Land" (hereinafter defined) for any of the "Prohibited Uses" that pertain to the Shopping Center or the Related Land, as the case may be (as set forth in Exhibit L hereto annexed), provided, however, that as to any future Related Land, the foregoing restriction shall not apply to the extent that any Prohibited Uses are otherwise permitted under leases entered into prior to the date on which such land becomes Related Land.  As used in this Lease, the term **"Related Land"** shall mean any land contiguous or adjacent to the Shopping Center (including, without limitation, any land that would be contiguous or adjacent to the Shopping Center but for any intervening road, street, alley or highway) owned or controlled by Landlord or its Affiliate(s). |
| Dick's Sporting Goods | Lease dated October 26, 2011, as amended by First Amendment to Lease

Section 1.5 of the Lease provides in part:

(a)      Landlord warrants and agrees that, during the term of this Lease, it will not enter into any lease, license agreement or other similar agreement nor permit any other premises in the Shopping Center (the "**Restricted Property**") to be used for |

the sale, rental and/or distribution, either singly or in any combination of: (i) health, fitness and/or exercise equipment; (ii) sporting goods and sporting equipment (including, but not limited to, golf equipment and accessories); (iii) hunting, camping and fishing equipment and accessories; and/or (iv) athletic footwear (the "**Precluded Use Activity(ies)**"). In addition to the foregoing, Landlord shall be permitted one (1) Occupant within the Restricted Property operating primarily as a family shoe store in not more than nine thousand (9,000) square feet of LFA and located in the area between or inclusive of the proposed "Pier 1" and "Toys R' Us" as outlined on the Lease Plan.

(b)    Notwithstanding the foregoing Precluded Use Activity(ies) set forth in Subsection (a) above, the retail sale and/or distribution of the Precluded Use Activity(ies) shall be permitted in the lesser of (A) ten percent (10%) in the aggregate of any such Occupant's sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use) or (B) two thousand (2,000) square feet in the aggregate of such Occupant's sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use), and in addition, the foregoing Precluded Use Activity(ies) set forth in Subsection (a) above shall not apply to Ross Dress For Less, or its successors, assigns or sublessees.

(c)    Landlord further covenants and agrees that, during the term of this Lease, it will not enter into any lease, license agreement or other similar agreement nor permit any property owned or controlled by Landlord or its parent or affiliates, adjacent to, contiguous or within five (5) miles of the Shopping Center (the "**Additional Restricted Property**")to be used as a full line sporting goods store having forty thousand (40,000) square feet or more of sales floor space, such as, by way of example only, Academy, Sports Authority, Bass Pro, Cabellas, Gander Mountain or the like. The foregoing shall not be violated by Landlord, or its parent or affiliates acquiring an interest in any such land after the Effective Date as a result of its merger with or acquisition of the then-owner thereof, when an Occupant using at least forty thousand (40,000) square feet of sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use) as a full line sporting goods store is permitted on such land by any lease or other agreement in existence on the date of such merger or acquisition.

(g)    Notwithstanding anything contained herein, any retailer of over fifty thousand (50,000) square feet of LFA that may be a part of the Shopping Center and/or the Additional Restricted Property and operating a traditional full-line retail department store typically found in first class shopping centers (each of which are a "**Department Store**" and all of which, collectively, are referred to herein as the "**Department Stores**") shall not be subject to the provisions of Subsection (a) and (c), above. However, in the event Landlord, or its parent or affiliates regains control of a Department Store premises or has approval rights of any use change of a Department Store premises, then the restrictions in Subsection (a) and (c), above shall again apply to such Department Store premises; provided, however, in the event Landlord or its parent or affiliates leases or sells such Department Store premises to a Department Store for use as a Department Store, such Department Store premises shall not be subject to the restrictions in Subsection 1.5 (a) and (c), above. Notwithstanding anything contained in this Section 1.5(g), a sporting goods superstore such as Academy, Sports Authority, Bass Pro, Cabellas, Gander Mountain or the like shall not be considered a Department Store as for the above and shall not be excluded from the restrictions set forth in Subsection (a) and (c), above.

<u>Section 1.2(h) of the Lease provides:</u>

Landlord covenants that no kiosk or obstruction (other than landscaping and/or curbing required by Legal Requirements) shall be placed in the No-Build Areas.

<u>Section 1.4 of Lease provides in part:</u>

The Shopping Center shall not be used… (g) for any restaurant or establishment selling food prepared on premises for consumption on or off premises (other than cafes incidental to an Occupant's primary use) located within two hundred (200) lineal feet of the Demised Premises.

| Dr. Vape It | <u>Section 5.04 of the Lease dated October 23, 2014, provides in part:</u><br><br>Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of the retail sale of electronic cigarettes and E-liquids ("Exclusive Use"), Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the Exclusive Use. Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns; nor (ii) Any premises in the Shopping Center consisting of ten thousand (10,000) or more square feet; nor (iii) |

| | |
|---|---|
| | Any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving twenty percent (20%) or less of its annual Gross Sales from sales of Exclusive Use items shall not be deemed in violation of this provision). |
| Five Below | Section 7.3 of the Lease dated December 22, 2017, provides in part:<br><br>Provided that Tenant is not in an Event of Default and the Premises is open and operating for the retail sale of pre-teen and teen oriented variety and general merchandise at price points that are primarily $10 and less… Landlord shall not lease, rent, occupy or permit to be occupied or used, any space in the Shopping Center for a similar business to Tenant's whose primary use is the sale of pre-teen and teen oriented variety and general merchandise at price points that are primarily $10 and less ("Exclusive Items"); provided, however, the exclusive use rights in this Section 7.3 shall be reinstated upon the cure of any Event of Default or re-opening, although any tenant who has entered into a lease while the exclusive use right set forth in this Section 7.3 is not in effect shall be permitted to continue such use after the cure of any Event of Default or re-opening for business as the case may.  For purposes of this Section 7.3 the term primary use is the use of more than thirty percent (30%) of an occupant's sales floor area for the sale/display of Exclusive Items.  The provisions of this Section 7.3 shall not be construed to prohibit (a) any existing tenant situated within the Shopping Center which has, as of the Effective Date, the right to handle and sell such items (or is not prohibited under the terms of its lease from selling such items), from handling and selling those certain items, and Landlord agrees not to amend any lease to permit additional rights for the sale of such items beyond the extent permitted in such tenants' lease, and Landlord agrees not to permit any such existing tenant to assign such lease or sublease its premises to a user who would violate the exclusive set forth herein, so long as Landlord has the right to consent or approve of any such assignment or subletting under such existing lease, (b) any retailer of one (1) principal category of merchandise such as an electronics store, book store, toy store, clothing store, video rental store, health and beauty aids store, convenience store, or any other retail operation that devotes a majority (i.e., more than 35%) of its sales floor area to the sale of one (1) principal category of merchandise, (c) any tenant in the Shopping Center who leases 18,000 square feet or more of contiguous space operating under one trade name, and (d) any user operating in a "dollar price point" format  (i.e. a majority of the items (over 75%) in the store are at price points of $2 or less), so long as such user is not located adjacent to the Premises.<br><br>Section 7.4 of the Lease dated December 22, 2017 provides in part:<br><br>Landlord shall not lease, rent, occupy or permit to be occupied or used, any space in the Shopping Center located immediately adjacent to the Premises as a medical office or medical facility. |
| The Fresh Market | Section 5.2 (Use Restrictions) of the Lease dated December 22, 2014 provides in part:<br><br>**Prohibited/Incompatible Uses.**  Tenant covenants and warrants that no portion of the Premises shall be used or occupied at any time for any Prohibited Use. Landlord covenants and warrants that no other portion of the Shopping Center shall be used for any Prohibited Use or any Incompatible Use. Notwithstanding the foregoing, however, this Section 5.2 shall not apply to any Pre-Existing Tenant.<br><br>**Prohibited Use(s)** means: churches or places of worship; schools or any training or educational facilities within the Shopping Center catering primarily to students or trainees rather than retail customers; day care centers; Common Area sales or solicitations (except by tenants on the sidewalk in front of their stores which do not unreasonably interfere with pedestrian access or passage and except as set forth in Chan's Wine World lease which permits Chan's Wine World to present events occasionally (no more than six times per year) in the special events area in the area of the Shopping Center between Kirkland's and Pier One); gun stores (other than as an incidental part of any sporting goods store or as an incidental part of any department store such as Wal-Mart or Target); banquet facilities; peepshows; adult book or adult video store, or for the sale, rental, or exhibition of pornographic material (but such restriction shall not restrict the incidental sale of books, magazines and other publications containing such materials by a national bookstore of the type normally located in first-class shopping centers in the State of Florida (such as, for example, Barnes & Noble or Books-A-Million) nor the incidental sale or rental of videos containing such materials by a national video store of the type normally located in first-class shopping centers in the State of Florida (such as, for example, Blockbuster or West Coast Video); head shops; video game arcades; bingo |

parlors; bars, taverns, or night clubs; off-track betting parlors; mobile home parks or trailer courts; car washes; motor vehicle rentals and/or sales; motor vehicle maintenance, repair and/or parts supply shops; carnivals, amusement parks or circuses; bowling alleys; ice rinks; roller skating rinks; call centers or other second or third shift office users; urgent care facility; any other medical services use which is inconsistent with a first class shopping center in the City of Panama City or Panama City Beach, FL (but not prohibiting medical uses which are typically found in first class shopping centers such as those which are being operated, as of the Lease Date, under the trade names Aspen Dental or Blue Cross/Blue Shield or Visionworks, all of which may be deemed to be Permitted Consumer Offices hereunder so long as any such use also meets the requirements of subsection (ii) and subsection (iii) of the definition of "Permitted Consumer Office" set forth in Section 1.31 hereof); Army Navy, or government "surplus" stores, fire or bankruptcy sales or auction house operations; "second hand" or consignment stores (other than of the type operating in first-class shopping centers under the trade name Play It Again Sports, as such store is operated as of the Lease Date, or upscale antique shops); "dollar" stores or similar low-cost, single/maximum price-point stores; check cashing or payday loan/advance business (but not excluding federally or state chartered banks or savings and loans which may be deemed to be Permitted Consumer Offices hereunder so long as any such use also meets the requirements of subsection (ii) and subsection (iii) of the definition of "Permitted Consumer Office" set forth in Section 1.31 hereof); pawn shops; laundromats, central laundries, or dry cleaning plants; mortuaries or funeral homes; hotels, motels, apartments or other short or long-term residences; public or private nuisances; noises or sounds that are objectionable due to intermittence, beat, frequency, shrillness or loudness; obnoxious odors; noxious, toxic, caustic, or corrosive fuels or gases, dust, dirt, or flyash or similar materials in any excessive quantity; unusual fires, explosions, or other damaging or dangerous hazards; warehouse, assembly, manufacture, distillation, refining, smelting, agriculture, or mining operations; labor camps, junkyards, stockyards, or animal raising operations; operations involving the dumping, disposal, incineration or reduction of garbage or refuse.

**Incompatible Use** means: (i) restaurants located within two hundred feet (200') of the Premises; (ii) movie theaters located within five hundred feet (500') of the Premises; (iii) health clubs or gyms located within three hundred fifty feet (350') of the Premises; provided, however, exercise facilities which occupy less than three thousand (3,000) square feet of total floor area (such as karate or martial arts centers and exercise facilities which are being operated, as of the Lease Date, under the trade names Orange Theory and Pure Barre) shall be permitted as long as they are located at least two hundred fifty feet (250') from the Premises; (iv) spas, massage facilities, beauty parlors and/or nail salons located within one hundred fifty feet (150') of the Premises; (v) office uses other than Permitted Consumer Offices; (vi) pet and/or pet supply stores located adjacent to the Premises; and (vii) any children's entertainment or activity facility (such as "Discovery Zone" or "Chuck E. Cheese's") located within two hundred feet (200') of the Premises.

**Pre-Existing Tenants** means those Shopping Center tenants (and their successors and assigns) listed as such on Exhibit E-1 attached hereto who are operating only in the locations and for the uses expressly set forth in such Exhibit E-1. For the avoidance of doubt, the term "Pre-Existing Tenants" includes those Shopping Center tenants listed on Exhibit E-1 which, pursuant to their respective leases listed thereon, have not yet opened for business.

**Permitted Consumer Office** means office uses that (i) cater to the public and are normally found in retail centers, such as realtors, financial services or insurance offices, (ii) are located at least one hundred fifty feet (150') from the Premises and (iii) occupy, in the aggregate, no more than ten thousand (10,000) square feet of total floor area.

**(b) Exclusive Uses.** On and after the Lease Date, to the extent not prohibited by applicable laws, and except for Pre-Existing Tenants, Permitted Stores, and Incidental Sales of Grocery Items for off-premises consumption, Landlord covenants that no portion of the Shopping Center other than the Premises, nor any portion of the RTG Parcel (as such term is defined in the REA), shall be used as a grocery store and/or supermarket, or for the sale of any Grocery Items for off-premises consumption (collectively hereinafter, "Tenant's Exclusives"). Notwithstanding the exclusion of Pre-Existing Tenants from the foregoing covenant, however, to the extent that any such tenant's or occupant's lease provides a conditional right, subject to Landlord's prior approval, to operate for any use which would otherwise violate Tenant's Exclusives, Landlord shall not grant such approval. Notwithstanding the foregoing, however, Tenant's Exclusives shall not apply during any Lapse Period, nor shall Tenant's Exclusives prohibit any non-exclusive rights which Landlord grants to another tenant in writing during any Lapse Period and of which Tenant received prior written notice during such Lapse Period and such non-exclusive rights

granted during the Lapse Period of which Tenant was noticed shall continue even if the Lapse Period terminates as provided in the next sentence. Upon Tenant's resuming operations within the Premises for the sale of Grocery Items for off-premises consumption, any Lapse Period shall terminate and Tenant's Exclusives shall once again be applicable (subject to the limitations of the previous sentence).

**Grocery Items** means foodstuffs and drinks including, without limitation, any or all of the following: (i) dairy products, (ii) produce, (iii) coffee, tea and candies, (iv) nuts, snack mixes, and other bulk food items, (v) bakery products, (vi) meat, (vii) seafood, (viii) liquor, beer, wine and/or other alcoholic beverages, (ix) deli meats and cheeses, sushi, and convenient meal solutions, (x) vitamins, herbs and supplements, and (xi) cut flowers and live plants.

**Pre-Existing Tenants** means those Shopping Center tenants (and their successors and assigns) listed as such on Exhibit E-1 attached hereto who are operating only in the locations and for the uses expressly set forth in such Exhibit E-1. For the avoidance of doubt, the term "Pre-Existing Tenants" includes those Shopping Center tenants listed on Exhibit E-1 which, pursuant to their respective leases listed thereon, have not yet opened for business.

**Permitted Stores** means Permitted Bakery, Permitted Candy Store, Permitted Coffee Shop and Permitted Nutrition Center.

**Permitted Bakery** means a bakery restaurant located at least two hundred feet (200') from the Premises (i) which operates primarily as a quick service restaurant such as those which are operated as of the Lease Date under the trade names Panera Bread or Atlanta Bread Co. or Village Inn, or a similar type restaurant which sells bread, cake and/or pastries as part of its restaurant business, (ii) which occupies no more than four thousand five hundred (4,500) square feet of total floor area and (iii) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) above) are limited to Incidental Sales.

**Permitted Candy Store** means a candy store located at least two hundred feet (200') from the Premises (i) which primarily sells candy, (ii) which occupies no more than one thousand five hundred (1,500) square feet of total floor area, and (iii) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) above) are limited to Incidental Sales.

**Permitted Coffee Shop** means a coffee shop located at least two hundred feet (200') from the Premises (i) which primarily sells liquid coffee or other beverages by the cup, (ii) whose sale of coffee beans does not exceed twenty percent (20%) of total sales from such location, (iii) which occupies no more than two thousand four hundred (2,400) square feet of total floor area, and (iv) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) and (ii) above) are limited to Incidental Sales.

**Permitted Nutrition Center** means a nutrition center (i) which primarily sells vitamins, supplements and/or herbs for health purposes, (ii) which occupies no more than two thousand (2,000) square feet of total floor area, and (iii) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) above) are limited to Incidental Sales.

**Incidental Sales** means all or any of the following: (a) sales of Grocery Items aggregately conducted from no more than the lesser of (i) ten percent (10%) of the applicable user's floor space or (ii) five hundred (500) square feet of such user's floor space (such measurements to include any and all display case/shelf areas and one-half (1/2) of any adjacent aisle spaces); (b) sales of "take out" or "carry out" food or drink prepared for immediate consumption, including sales of food or drink prepared for immediate consumption obtained from a drive through.

| | |
|---|---|
| Great Clips | <u>Section 5.04 of the Lease dated September 24, 2013, provides in part:</u><br><br>Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises as a "Great Clips" (or similar) unisex family hair salon, Landlord agrees that it shall not lease space in the Shopping Center to any salon brand owned and operated by Regis Corp, Hair Cuttery, Fantastic Sam's, or Sports Clips (individually and collectively, "Restricted Tenant"). Except as otherwise provided below, Landlord shall enforce the Restricted Tenant prohibition against other tenants in the Shopping Center using all reasonable legal means. Notwithstanding, the forgoing Restricted Tenant prohibition shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, its successors and/or assigns, provided however, Landlord shall not permit or agree to the change of a permitted use by any such existing tenant or its successors and/or assigns to that of a Restricted Tenant if Landlord has the right, by virtue of the provisions of such |

| | |
|---|---|
| | existing lease, to withhold such permission or agreement; nor (ii) Any premises in the Shopping Center consisting of ten thousand (10,000) or more square feet. |
| Hand & Stone | Section 5.04 of the Lease dated September 8, 2017, provides in part:<br><br>Provided that at all times after the Effective Date of the Lease Tenant is in compliance with the terms and provisions of the Lease and is operating for the Permitted Use, Landlord agrees that after the Effective Date of the Lease it shall not enter into any new lease with, or permit any assignment or sublet of an existing lease (to the extent Landlord has the right to approve any such assignment or sublet and to the extent Landlord has control over such existing tenant's permitted use or any changes to such permitted use) to Massage Envy or to any similar future tenant for premises in the Shopping Center for the principal and primary purpose of providing the following services in a spa setting on a **membership basis**: massage, waxing, hair removal and facial services ("Tenant's Exclusive Use").  Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) any Shopping Center tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, nor (ii) any tenant or occupant of a premises in the Shopping Center whose GLA is ten thousand (10,000) square feet or greater, their successors and assigns. |
| IHOP | Section 5.04 of the Lease dated May 6, 2014, provides in part:<br><br>Provided Tenant is open, occupying and operating the Premises as a typical IHOP restaurant and is not in default under this Lease beyond any applicable cure period, Landlord agrees that it shall not lease or sell any portion of: (i) the Outparcels of the Shopping Center (Outparcel A, B, C D and E as shown on the Site Plan attached hereto as Exhibit A) or the multi tenant building to the east of Outparcel A (Building E as shown on the Site Plan) to any future tenant or purchaser for the primary and principal purpose of a full service breakfast restaurant;  or to any of the following competitors of tenant: Shoney's, Denny's, Cracker Barrel, Bob Evans, Perkins, Cocos, Friendly's, MiMi's, Village Inn, Big Boy, Huddle House, Aunt Sarah's, Waffle House, Golden Corral, The Broken Egg, First Watch, Another Broken Egg Cafe, or The Egg and I, or (ii) the Shopping Center to any future tenant or purchaser for use as any of the following competitors of Tenant: Shoney's, Denny's, Cracker Barrel, Bob Evans, Perkins, Cocos, Friendly's, MiMi's, Village Inn, Big Boy, Huddle House, Aunt Sarah's  Waffle House, or Golden Corral, The Broken Egg, First Watch, Another Broken Egg Cafe or The Egg and I (collectively, the "Exclusive Use"). Notwithstanding the foregoing, the Exclusive Use shall not apply to: (i)The Rooms To Go outparcel which is not part of the Shopping Center; nor (ii) Any Shopping Center or Outparcel tenant with a lease that predates the date of Tenant's Lease, or such tenant's successors and/or assigns; provided, however, Landlord shall not permit or agree to the change of a permitted use by any such tenant or its successors and/or assigns to a use which violates Tenant's Exclusive Use if Landlord has the right, by virtue of the provisions of such existing lease, to withhold such permission or agreement. |
| Island Fin Poke | Section 5.04 of the Island Fin Poke Lease dated September 27, 2021, provides in part:<br><br>During the term of this Lease, provided that Tenant is not in default of the Lease and provided Tenant is operating according to the Permitted Use, in no event shall Landlord lease any space in the Shopping Center to a tenant who intends to use such space (in whole or in part) for a restaurant whose primary business (defined as 10% or more of revenue) is the sale of poke or ceviche (the "Exclusive Use"). Notwithstanding the foregoing, such exclusive shall not apply to any lease currently executed or any sublease within said space. |
| Jersey Mike's Subs | Section 5.04 of the Lease dated August 5, 2015, provides in part:<br><br>Provided and for so long as Tenant remains free of default under the Lease beyond any applicable cure or grace period, and remains continuously open and operating as required under the Lease for at least Tenant's Minimum Hours of Operation and is operating as a Jersey Mike's Subs restaurant primarily for the Core Component [sale of hot and cold submarine sandwiches and deli sandwiches] of Tenant's Permitted Use, then Landlord agrees that after the Effective Date of the Lease, Landlord shall not enter into any new lease with any new tenant for premises within the Shopping Center having a use clause stating that such tenant shall be permitted to operate as a restaurant operating primarily for the sale of hot and cold submarine sandwiches and deli sandwiches (collectively, the "Exclusive Use"), including but not limited to the following such tenants: Firehouse Subs, Jimmy Johns, Larry's Giant Subs, Lenny's Subs, Scholtzsky's Deli, Subway, Tom and Chee, and Which Wich. Notwithstanding, the Exclusive Use shall not apply to: (i) Any tenant in the Shopping Center with a lease than predates the Effective Date of this Lease, its successors and/or assignees; nor to (ii) Any tenant deriving twenty percent (20%) or |

| | |
|---|---|
| | less of its annual gross sales from sales of items within the Core Component of Tenant's Exclusive Use; nor to (iii) Any tenant in Shopping Center Building B or Building C with a premises 10,000 square feet or greater. |
| Kirkland's | Section 1.1 (Exclusive Use) of the Lease dated November 27, 2012, provides in part:<br><br>Except as otherwise set forth herein, Landlord agrees not to lease, let, use or permit to be used, any portion of the Center now or at any time during the Lease Term or any extension thereof to any entity or other party that operates or makes use of its premises for sale of wall décor and/or lighting ("Tenant's Exclusive Use").  Other tenants and occupants of the Center may sell such items if the sale of such items does not constitute a primary use (i.e., such items are sold in the lesser of fifteen percent (15%) of a tenant's or occupant's premises or wall space).  Notwithstanding anything herein to the contrary, Tenant's Exclusive Use shall not apply to either (a) the retail store of any regional or national retailer occupying more than 12,000 square feet of Rentable Area in the Center or (b) a Pier 1 Imports retail store operated under the lease for same between Landlord and Pier 1 Imports as of the Effective Date so long as such retail store sells substantially the same items as those sold at typical, national retail stores operating under the name of Pier 1 Imports. Tenant's Exclusive Use right shall be a covenant that binds Landlord and shall be a restriction upon the Center that runs with the land. |
| Mattress Firm | Section 5.04 of the Lease dated February 20, 2013 provides in part:<br><br>Provided Tenant is not in default under this Lease beyond applicable notice and cure periods, and subject to the limitations set forth below, Landlord shall not enter into to any new lease with any future tenant having a use clause stating that such tenant shall be permitted to open and operate for the primary and principal purpose of the retail sale of mattresses or waterbeds (collectively, the "Exclusive Use").  For purposes of this Section 5.04, the term "primary use" as used herein shall mean more than twenty percent (20%) of a tenant's gross sales are derived from the retail sale of mattresses or waterbeds. Notwithstanding the foregoing, the Exclusive Use shall not apply to: (i) Any tenant of the Shopping Center with a lease that predates the Effective Date of this Lease, their successors, assignees, subtenants, and transferees, except to the extent Landlord has control of such pre-existing tenant's permitted use, Landlord shall not take any action adverse to Tenant's Exclusive Use; nor (ii) The parcel of land designated on the Site Plan as "Not Part of Shopping Center"; nor (iii) Any tenant of occupant deriving twenty percent (20%) or less of its gross sales at the Shopping Center from the sale of mattresses and/or waterbeds; nor (iv) Any full-line furniture store (such as Haverty's); nor (v) Any tenant or occupant of a premises consisting of 20,000 square feet or more. |
| The Men's Wearhouse | Lease dated December 19, 2012<br><br>Section 20.04 of the Lease provides in part:<br><br>During the term of this Lease, so long as Tenant is operating the Premises solely for the use set forth in Section 4.01 hereof, Landlord shall not lease space in the Shopping Center to any tenant that uses a majority of its premises for the display and sale at retail of men's ready to wear suits, casual attire, accessories and shoes, or who uses their premises for the rental of men's formalwear and related accessories and shoes (the "Exclusive Use").  This provision shall not apply to the following: (i) any tenant or occupant that occupies at least fifteen thousand (15,000) square feet; (ii) any tenant that is permitted to use its premises for the Exclusive Use by operation of law, court order, bankruptcy, or similar action, (iii) any store owned or operated by Tenant, or Tenant's parent, affiliate, subsidiary, franchisee, franchisor, or franchisee of Tenant's franchisor, or (iv) TJ Maxx, Marshall's, or Ross Dress For Less.<br><br>Section 4.01(a) of the Lease provides in part:<br><br>Landlord will not lease space immediately adjacent to the Premises for a food use or for any other use that generates strong odors or smells detectable outside of such premises, provided such restriction shall not prevent Landlord for leasing such adjacent space to a yogurt shop or an ice cream shop or such other food use similar thereto that does not generates strong odors or smells detectable outside of such premises. |
| Michael's | Section 16.4 of the Lease dated October 27, 2011 provides in part:<br><br>Limitation on Use.  Neither Landlord nor any entity controlled by Landlord will use, lease (or permit the use, leasing or subleasing of) or sell any space in or portion of the Shopping Center (other than the Premises) or any property contiguous to the Shopping Center (including, without limitation, any property that would be |

| | |
|---|---|
| | contiguous or adjacent to the Shopping Center but for any intervening road, street, alley or highway) owned or controlled now or at any time hereafter by Landlord or any affiliate of Landlord, to (i) any store that operates in a manner which is similar to or substantially the same as Tenant's Primary Business (as hereinafter defined), including by way of example, but not limited to, Garden Ridge, A.C. Moore, Ben Franklin, Joanne Fabrics, Joanne Etc, Hobby Lobby, Old America, Waccamaw/Home Place, Pat Catans, and MJDesigns, or (ii) any store rendering picture framing services.  This Section 16.4.1 shall not apply to any lessee whose lease was fully executed on the Effective Date hereof and is identified on Exhibit I as an "Existing Lease Not Subject to Tenant's Exclusive;" provided, however, that this exception shall not apply if (i) Landlord permits or agrees to an expansion of the premises for any such permitted use which violates Tenant's exclusive, or (ii) Landlord permits or agrees to the change of a permitted use by any such lessee or its successors or assigns, or (iii) Landlord permits or agrees to  an assignment or sublease of such existing lease if Landlord may avoid the granting of such permission, or (iv) Landlord has the right, by virtue of the provisions of the existing lease, to cause said lessee to honor the exclusive granted to Tenant by giving said existing lessee notice of this exclusive or otherwise.<br><br>As used in this Lease, the term "Tenant's Primary Business" shall mean the sale of arts and crafts, art supplies, craft supplies, picture frames or picture framing services, framed art, artificial flowers and/or plants, artificial floral and/or plant arrangements, holiday themed décor, decorations and costumes, wedding or party goods (except apparel), scrapbooking/memory book store, or a store selling scrapbooking/memory book supplies, accessories, and/or decorations, or providing classes on any of the foregoing or any combination of the foregoing categories.<br><br>Lease Modification Agreement No. 2, dated March 27, 2013 provides in part:<br><br>Notwithstanding anything in this Lease to the contrary, Tenant hereby waives the exclusive use restrictions set forth in this Section 16.4.1 for the operation of a typical retail store by Ross Dress for Less, Inc. ("Ross"), as is operated by Ross as of the date of this Agreement, provided that for so long as this Lease is in effect neither Ross, nor any assignee(s) of the Ross lease, nor any sublessee(s) of all or any portion of the Ross premises shall operate in the Ross premises primarily as an Arts and Crafts store (as defined below), and no portion of the Ross premises shall be used for picture framing services.  As used herein, Arts and Crafts Store means a store selling arts and crafts, art supplies, craft supplies, picture frames, framed art, artificial flowers and/or plants, artificial floral and/or plant arrangements, holiday themed décor, decorations and costumes, wedding goods (except apparel), party goods, scrapbooking/memory books, or scrapbooking/memory book supplies, accessories, and/or decorations or other papercrafting (e.g. making greeting cards, gift bags, tags, and other related or similar items) supplies, accessories and/or decorations associated with the foregoing, or providing classes on any of the foregoing or any combination of the foregoing categories.<br><br>This waiver is made for the sole and exclusive benefit of Ross and its related corporate affiliates for so long as it conducts business in the Shopping Center as a typical retail store of the type operated by Ross and its related corporate affiliates as of the date of this Agreement.  The provisions of this Section 16.4.1 of Exhibit C to the Lease shall not be deemed waived or modified in any way except as expressly provided herein.<br><br>Exhibit J of the Lease dated October 27, 2011 PROHIBITS in part:<br><br>temporary or seasonal stores which sell holiday (including without limitation, Christmas and/or Halloween) themed décor, decorations, costumes, artificial Christmas trees, Christmas lights, Christmas ornaments, and/or holiday themed party goods including without limitation, the following stores: Spirit Halloween stores, Always Christmas stores, and similar operations<br><br>restaurant or food use in-line with the Premises if within 150 feet of the perimeter of the Premises and in no event shall the Leasable Square Feet in the Shopping Center devoted to restaurants or food uses exceed ten percent (10%) of the Leasable Square Feet of the Shopping Center<br><br>non-retail use (which shall not prohibit in the Shopping Center such uses commonly referred to as "quasi-retail" or "service retail" such as a travel agency, real estate office, insurance agency, accounting service, etc., so long as same do not exceed ten percent (10%) of the Leasable Square Feet of the Shopping Center) |
| Orangetheory Fitness | Section 5.04 of the Lease dated May 30, 2017 provides in part:<br><br>Provided that at all times after the Effective Date of this Lease Tenant remains |

<table>
<tr><td></td><td>continuously operating in the Premises for the Permitted Use, maintains Tenant's Minimum Hours of Operation, and otherwise remains free of Event of Default, then on such conditions Landlord agrees that after the Effective Date of this Lease it shall not enter into any new lease with any future retail tenant for premises in the Shopping Center having a permitted use clause that permits such retail tenant to operate for the primary purpose of a group personal training fitness studio (the "Exclusive Use'). Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any Shopping Center tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns; nor (ii) Any tenant or occupant of a premises in the Shopping Center whose GLA is ten thousand (10,000) square feet or greater, their successors and assigns; nor (iii) Any Shopping Center tenant to whom the Exclusive Use otherwise is applicable, but derives twenty percent (20%) or less of its annual gross sales from the Exclusive Use.</td></tr>
<tr><td>PetSmart</td><td>

<u>Lease dated February 21, 2013</u>:

<u>Section 31.B. of the Lease provides in part</u>:

From and after the date hereof and continuing throughout the Term of the Lease, Tenant shall have the exclusive right in the Project to conduct any portion of Tenant's Primary Business described in clauses (i), (ii) and (iii) of Tenant's Primary Business set forth in Paragraph C of the Fundamental Lease Provisions ("<u>Tenant's Exclusive</u>"). Other tenants or occupants of the Project may sell items included in Tenant's Exclusive (other than the retail sale of animals and/or pet services), provided such items sold are "incidental" to such tenants' or occupants' primary use and the floor area dedicated to said "incidental" sales does not exceed the lesser of (i) five percent (5%) or (ii) 500 square feet.  Notwithstanding anything herein to the contrary, Tenant's Exclusive shall not apply to any national (meaning operating 50 or more stores in the continental United States) or regional (meaning operating 20 or more stores in Florida, Georgia and/or Alabama) full-line grocery store occupying 20,000 square feet or more of Gross Floor Area. In addition, Tenant's Exclusive shall not apply to any tenant or occupant listed on <u>Exhibit J</u> whose rights as of the date of this Lease are not subject to Tenant's Exclusive.  The existing exclusive rights granted to tenants in existing leases are set forth in full in <u>Exhibit I</u> and Tenant hereby agrees to be bound by each such exclusive. The name of those tenants or occupants with whom Landlord is currently negotiating leases and their proposed exclusives are set forth in <u>Exhibit I</u> and Tenant hereby agrees to be bound by such exclusive provided and so long as such future exclusive satisfies the requirements set forth in Article 6.

<u>Tenant's Primary Business</u>:  The retail sale of (i) pets (including but not limited to fish, birds, reptiles, dogs, cats and other small animals), (ii) food, accessories and other products relating to pets and animals, including equestrian products and apparel related thereto, (iii) services related to pets and animals, such as grooming, indoor boarding and pet day care, animal training and obedience classes, pet adoption and veterinary services, (iv) products relating to nature and the environment, (v) educational products and services related to any of the foregoing and (vi) office and storage uses incidental to the foregoing, subject to Paragraph 6A.

<u>Section 31.A. of the Lease provides in part</u>:

Landlord and Tenant covenant and agree that none of the uses set forth in <u>Exhibit H, Part 1</u> (the "<u>Prohibited Uses</u>") shall be conducted within the Shopping Center, including the Premises, as applicable.

Exhibit H, Part 1 (in part) [<u>Note: #1 - #31 are the same as the Prohibited Uses in Exhibit __ of this Lease</u>]

32.  dry cleaner (excluding [i] one (1) dry cleaner which does not use perchloroethylene or any other Hazardous Substances and [ii] one (1) facility for drop off and pick up of clothing cleaned at another location, provided neither of the foregoing uses shall be located within a two hundred (200) foot radius of the Premises);
33.  service station or any facility storing or selling gasoline or diesel fuel in or from tanks, except one (1) gas station may be located on an Outparcel provided it is operated in accordance with applicable governmental regulations;
34.  massage parlor (excluding one (1) "Massage Envy" or similar therapeutic massage retailer operating in a first-class manner, provided such use may not be located within a two hundred (200) foot radius of the Premises);
35.  sale of alcoholic beverages, whether or not packaged (excluding [i] the sale of alcoholic beverages in conjunction with the operation of a restaurant not prohibited under this Lease, and [ii] one (1) "Bevmo" or "Total Wine" or "Wine World", provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building
</td></tr>
</table>

| | |
|---|---|
| | C180 and D100 (as shown on <u>Exhibit A</u>), and [iii] Cost Plus World Market, and [iv] one (1) upscale wine bar provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100, and [v] one (1) craft brewery provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100; |
| | 36.   cinema or theater; |
| | 37.   spa within a space immediately adjacent to the Premises; |
| | 38.   health club, gym or exercise facility excluding one (1) of five thousand (5,000) square feet or less, provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100; |
| | 39.   children's recreational facility, virtual reality, laser tag, or jump/trampoline facility, unless located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100; |
| | 40.   gun range or shooting club; |
| | 41.   drive-throughs (unless located on an Outparcel); |
| | 42.   restaurants within a two hundred (200) foot radius of the Premises; and |
| | 43.   (i) office, medical and/or professional uses located within a two hundred (200) foot radius of the Premises; and (ii) office, medical, and/or professional uses occupying, collectively, more than ten percent (10%) of the Gross Floor Area of the Shopping Center; and (iii) any single office, medical, and/or professional use occupying more than two thousand five hundred (2,500) square feet of Gross Floor Area unless located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100. |
| | To determine whether a use which is otherwise prohibited within a specified radius of the Premises is in fact in violation of such radius restriction, the measurement taken shall be the distance from the building (from the point nearest the Premises) from which such alleged Prohibited Use is occurring to the point of the Premises closest to such building. To the extent this <u>Exhibit H, Part 1</u> expressly permits any of the Prohibited Uses to be conducted by a limited number of users, existing tenants or occupants listed on <u>Exhibit J</u> shall count toward such limit. |
| Rooms To Go | <u>Section 3.01 of the Reciprocal Easement Agreement, dated April 23, 2013 provides in part:</u><br><br>So long as the RTG Parcel is being used for the operation of a Rooms to Go furniture store (or its successor, transferee, or assign furniture or home furnishings store), no part of the Project other than the RTG Parcel shall be leased or sold to an occupant who either (x) uses two thousand (2,000) square feet or more of its gross leasable floor area for the sale or lease of furniture, home furnishings, lighting, accessories or mattresses (collectively, subject to the exclusions set forth below, "<u>Protected Items</u>"), or (y) derives more than ten percent (10%) of its total sales revenue from Protected Items, provided, however, the following occupants and uses (and no others) shall be deemed to be excepted from Protected Items: (1) sales of office furniture and patio furniture, (2) Warehouse Clubs such as Costco and Sam's and Department Stores and Discount Department Stores such as J.C. Penney and Wal-Mart, (3) home goods and home accessories specialty stores similar to Bed, Bath and Beyond, Kirkland's, Pier 1, Cost Plus, Pottery Barn, Crate and Barrel, Restoration Hardware, (4) Haverty's, (5) "high end" furniture retailers, such as Z Gallerie and Ethan Allen, (6) mattress stores not located within the area depicted on the Site Plan as the "<u>No Mattress Store Area</u>", and (7) arts and crafts specialty stores such as Michaels. |
| Ross Dress For Less | <u>Lease dated August 5, 2013</u><br><br><u>Section 15.3 of the Lease provides in part:</u><br><br>Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use more than fifteen thousand (15,000) square feet of Leasable Floor Area of its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use its premises for the sale of whole bean and ground coffee, except for sales conducted by (i) Existing Tenants, (ii) supermarkets, grocery, convenience or drug stores, (iii) tenants or occupants leasing more than five thousand (5,000) square feet of Leasable Floor Area in the Shopping Center, (iv) tenants or occupants with less than one thousand (1,000) locations in the United States as of the Effective Date, (v) a retailer who obtains the majority of its revenue from the sale of donuts, bagels, bakery goods, smoothies or sandwiches; (vi) Caribou Coffee or Peet's Coffee & Tea, or (vii) specialty retailers like Dunkin' Donuts, Tim Horton's or McDonald's whose |

focus or primary use is not the sale of coffee. For purposes of this Section 15.3, "Off Price Sale" shall mean the retail sale of merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's every day price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, A.J. Wright, Fallas Paredes, Nordstrom Rack, Goody's, Factory 2U, Burlington Coat, Steinmart, Filene's Basement, Gordmans and Beall's Outlet.) Notwithstanding the foregoing, a maximum of two (2) tenants who occupy at least fifteen thousand (15,000) square feet of Leasable Floor Area in the Shopping Center other than Tenant, including Existing Tenants, shall be permitted to use their premises for the Off Price Sale of merchandise. The foregoing use restrictions shall not prohibit value price retail tenants such as Old Navy and Rue 21 nor apply to Existing Tenants as provided below. … The foregoing use restrictions shall not apply to the Existing Tenants of the Shopping Center listed on Exhibit K who are occupying their premises in the Shopping Center pursuant to leases or occupancy agreements executed prior to the Effective Date, to the extent Landlord does not have the right, pursuant to such existing lease or occupancy agreement to restrict the use of the premises of the Existing Tenant. However, if Landlord has the right of consent to any change in use of the premises occupied by an Existing Tenant or if Landlord subsequently owns or controls the premises occupied by an Existing Tenant, Landlord shall not permit any use in such premises in violation of the use restrictions set forth in this Section 15.3.

Section 3.2.1of the Lease provides in part:

(a) General.

Tenant has entered into this Lease in reliance upon representations by Landlord that the Shopping Center is and shall remain retail in character, and, further, except as provided in Section 3.2.1(b) below, no part of the Shopping Center shall be used for office or residential purposes or as a theater, auditorium, meeting hall, school, church or other place of public assembly, "flea market," mortuary, gymnasium, veterinary services or pet vaccination clinic or overnight stay pet facilities (except as an incidental use in conjunction with the operation of a pet store retailer, provided such pet store retailer is not located within two hundred (200) feet of the front and side perimeter walls of the Store), health club, dance hall, billiard or pool hall (except as an incidental use inside a permitted restaurant), massage parlor, video game arcade (other than video games ancillary to and operated within a permitted restaurant), bowling alley, skating rink, car wash, facility for the sale, display, leasing or repair of motor vehicles, night club, on-premises consumption of alcoholic beverages except as incidental to a primarily restaurant use, or except as incidental to a retailer that sells wine and/or other alcoholic beverages and offers "tasting" events from time to time for customers and Invitees (such as Total Wine or Fresh Market), Internet café, the sale of adult products or adult bookstores or adult audio/video products stores (which are defined as stores in which at least ten percent (10%) of the inventory is not available for sale or rental to children under the age of majority in the state in which the Store is located because such inventory explicitly deals with or depicts human sexuality).

No ATM or similar machine shall be permitted in the Shopping Center within one hundred (100) feet of the front and side perimeter walls of the Store, except if located wholly within the interior of another tenant's or occupant's premises.

No tenant or occupant of the Shopping Center, other than Tenant, electronics stores (such as Best Buy or GameStop), or book stores (such as Barnes and Noble), shall be permitted to use one thousand five hundred (1,500) square feet or more of Leasable Floor Area of its premises primarily for the rental or sale of prerecorded audio or video merchandise or electronic games software and technological evolutions thereof. With the exception of (i) Existing Tenants (as defined below), (ii) supermarkets, grocery, convenience or drug stores, (iii) tenants or occupants leasing more than five thousand (5,000) square feet of Leasable Floor Area in the Shopping Center, (iv) tenants or occupants with less than one thousand (1,000) locations in the United States as of the Effective Date, (v) a retailer who obtains the majority of its revenue from the sale of donuts, bagels, bakery goods, smoothies or sandwiches, (vi) Caribou Coffee or Peet's Coffee & Tea, or (vii) specialty retailers like Dunkin' Donuts, Tim Horton's or McDonald's whose focus or primary use is not the sale of coffee, Landlord shall not permit any tenant or occupant of the Shopping Center, other than Tenant, to use its premises for the sale of whole bean and ground coffee.

Further, no restaurant or other "High Intensity Parking User" (as hereinafter defined) shall be permitted in the Shopping Center within two hundred thirty (230) feet of the front and side perimeter walls of the Store. A "High Intensity Parking User" is a tenant or occupant whose use requires more than five (5) parking spaces per one

| | |
|---|---|
| | thousand (1,000) square feet of Leasable Floor Area in accordance with either customary shopping center practices or governmental regulations, whichever has a higher parking requirement.  The foregoing use restrictions are referred to herein as the "Ross Prohibited Uses."<br><br>(b)   Exceptions.<br><br>The Ross Prohibited Uses set forth in Section 3.2.1(a) above shall not apply to those tenants or occupants of the Shopping Center listed on **Exhibit K** who, in accordance with the terms of existing leases or occupancy agreements in effect on the Effective Date ("Existing Tenants"), cannot be prohibited from so operating, but only for the balance of the term(s) of such existing lease(s) or occupancy agreement(s). Landlord covenants and agrees that if Landlord has the right to consent to a change in use of the premises occupied by any such Existing Tenant, Landlord shall not consent to a change in use of the premises which violates the Ross Prohibited Uses.<br><br>Notwithstanding the prohibition on offices set forth in Section 3.2.1(a) above, retail service offices such as full service banks, real estate brokers and title companies, shall be permitted provided that (A) retail service offices in the aggregate do not exceed ten percent (10%) of the total Leasable Floor Area of the Shopping Center, (B) except for the spaces designated as "E100," or "Outparcel D" on **Exhibit B**, no single retail service office shall be greater than one thousand five hundred (1,500) square feet of Leasable Floor Area, and (C) except for an optical store (or a retail or retail service office replacement tenant therefor operating in the same space as the optical store), which may be located no closer than one hundred (100) feet of the front and side perimeter walls of the Store, no retail service offices may be located within two hundred (200) feet of the front and side perimeter walls of the Store.<br><br>Notwithstanding the prohibition on massage parlors set forth in Section 3.2.1(a) above, one (1) first-class massage service provider, such as Massage Envy, typically found in retail shopping centers similar to the Shopping Center, shall be permitted provided that such massage provider (A) shall not be larger than three thousand (3,000) square feet of Leasable Floor Area, and (B) may not be located within two hundred (200) feet of the Store.<br><br>Notwithstanding the prohibition on veterinary services or pet vaccination clinic or overnight stay pet facilities (except as an incidental use in conjunction with the operation of a pet store retailer, provided such pet store retailer is not located within two hundred (200) feet of the front and side perimeter walls of the Store) set forth in Section 3.2.1(a) above, such uses shall be permitted by PetSmart (or a replacement Anchor Tenant for PetSmart that is a pet store retailer, such as Petco), in the space occupied by PetSmart as shown on **Exhibit B**, which Tenant acknowledges is within two hundred (200') feet of the front and side perimeter walls of the Store.<br><br>Section 1.10 of the Lease (Site Plan) provides in part:<br><br>The Inline Buildings depicted on **Exhibit B**, when built, shall contain no more than one (1) story (but mezzanines having Leasable Floor Area not in excess of one-third (1/3) of the occupant's ground floor Leasable Floor Area, when not used for selling purposes, shall be permitted).  The highest point of any exterior elevation of any building in the Control Area (including architectural features and rooftop equipment) shall not exceed twenty-eight (28) feet in height (or twenty-six (26) feet in height if excluding architectural features and rooftop equipment) measured from the finished floor elevation of Tenant's Store. |
| Sally Beauty Supply | Section 5.04 of the Lease dated August 15, 2013 provides in part:<br><br>Provided no default by Tenant in the payment of Minimum Rent is occurring beyond any applicable notice and cure period and Tenant is operating its business in the Premises for the primary and principal purpose of the sale of beauty supplies, including human or synthetic hair, wigs and/or hair extensions (collectively, the "Exclusive Use"), Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the Exclusive Use. Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, its successors and/or assigns; nor (ii) Any premises in the Shopping Center consisting of ten thousand (10,000) or more square feet; nor (iii) Any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving twenty-five percent (25%) or less of its annual gross sales from the sale of Exclusive Use items, such as a beauty salon or a bath and body store, shall not be deemed in violation of this provision); nor (iv) National tenants operating stores such as or similar to Ulta and Sephora and MAC. |
| Shoe Carnival | Lease dated January 14, 2013<br><br>Section 5.01 of the Lease provides in part: |

A) As a material inducement to Tenant to enter into this Lease and during the entire Term of this Lease, provided Tenant is open and operating at the Shopping Center (excluding Permitted Closures and temporary closures for repairs and remodeling [temporary closures for remodeling not exceeding ninety (90) days in duration]), subject to the express limitations in paragraph "B" below, Tenant shall have the exclusive right within the Shopping Center to sell footwear (herein, the "Exclusive Use").

B) The Exclusive Use shall not apply to: (i) tenants with leases dated prior to November 9, 2011which have the express right to sell footwear per the terms of their lease or which have the right to operate for any lawful use (all of which are identified in Exhibit F attached to this Lease); (ii) incidental sales of footwear by (a) Bed, Bath & Beyond, (b) Pier 1 Imports or its affiliates, but not any unaffiliated assignee or subtenant under the Pier 1 Imports lease, (c) tenants occupying at least 25,000 square feet, and (d) tenants occupying less than 20,000 square feet whose primary business is the retail sale of fashion and apparel merchandise; (iii) sales of footwear by tenants occupying at least 20,000 square feet whose primary business is the retail sale of fashion and apparel merchandise (by way of example only: Ross Dress for Less; TJ Maxx; Marshall's; Bealls; Stein Mart); (iv) stand-alone out parcel tenants, provided such tenants do not operate primarily for the sale of footwear; (v) one (1) sporting goods store; (vi) one (1) specialty, full price, full service footwear retailer *and* one (1) non-branded, discount footwear retailer anywhere in the Shopping Center other than "Building E" of the Shopping Center (as designated on the Site Plan), provided in either case such tenant does not operate primarily for the sale of athletic footwear, does not occupy more than 3,200 square feet, and is located at least two hundred feet from the Premises; and (vii) tenants occupying not more than 3,200 square feet whose premises are located within "Building E" of the Shopping Center provided such tenants do not operate primarily for the sale of athletic footwear. The phrase "incidental sales" shall mean the lesser of ten (10%) percent of such tenant's sales floor area or 3,000 square feet is used for the sale/display of footwear.

Section 15.10 of the Lease provides in part:

In no event shall (a) any portion of the Shopping Center be used for the Prohibited Uses identified in Exhibit I attached to this Lease, or (b) a restaurant or any service uses (i.e., any use which does not sell merchandise at retail) be located immediately adjacent to the Premises.

| Sweet Frog Frozen Yogurt | Section 5.04 of the Lease dated March 11, 2014, as amended by Renewal Option Exercise/Amendment of Lease dated March 18, 2022 (countersigned by Tenant March 24, 2022), provides in part:<br><br>Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of the sale of frozen yogurt (the "**Exclusive Use**"), Landlord agrees that it shall not lease space in the area of the Shopping Center designated as "**Exclusive Area**" on the Site Plan to any future tenant for the primary and principal purpose of the Exclusive Use. In addition, provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of the sale of the Exclusive Use, Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the retail sale of ice cream or similar frozen desserts, other than gelato, Italian ice and smoothies (the "**Restricted Uses**"). Gelato, Italian ice, and smoothies, whether individually or in any combination thereof, shall not be considered part of the Restricted Use for purposes of this provision. Hereinafter, the Exclusive Use and the Restricted Uses set forth above are collectively referred to as "**Tenant's Use Restrictions**".<br><br>Section 5.04 of the Lease dated March 11, 2014 provides in part:<br><br>Notwithstanding, except as otherwise set forth below, Tenant's Use Restrictions shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease ("**Existing Tenant**"), whose trade name is provided on **Exhibit J** attached hereto, or its successors and/or assigns, provided however, Landlord shall not permit or agree to the change of a permitted use by any such tenant or its successors and/or assigns to a use which violates Tenant's Use Restriction if Landlord has the right, by virtue of the provisions of the existing lease, to withhold such permission or agreement; nor (ii) As to the Exclusive Use only, any Premises not located within the Exclusive Area; nor (iii) Any premises consisting of ten thousand (10,000) or more square feet; nor (iv) Any restaurant tenant or any other tenant that does not operate primarily for the purpose of Tenant's Use Restrictions (i.e., a tenant deriving ten percent (10%) or less of its annual Gross Sales from the Exclusive Use or the Restricted Uses shall not be deemed in violation of this provision). |

| Texas Roadhouse | Section 12(h) of the Lease dated June 5, 2014, provides in part: |
| --- | --- |
| | Provided Tenant is not in default of this Lease beyond any applicable cure period and is open and operating the Premises as a "Texas Roadhouse" restaurant or such other full service sit-down restaurant approved by Landlord (such approval not to be unreasonably withheld) that specializes primarily in steaks and ribs, Landlord agrees that it shall not sell, lease or otherwise allow the occupation, use or operation of any portion of the Shopping Center as a full service restaurant primarily specializing in steaks and ribs, or for the advertisement of any such restaurant while this Lease is in full force and effect (the "**Restricted Uses**"). Notwithstanding, the aforesaid Restricted Uses shall not apply to: (i) The Rooms To Go parcel adjacent to the Shopping Center (identified as "Not Part of Shopping Center" on Exhibit A attached hereto) which Landlord does not own or control); nor (ii) Any tenant of the Shopping Center with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, provided however, Landlord shall not permit or agree to the change of a permitted use or assignment of lease by any such tenant or its successors and/or assigns to a use which violates the Restricted Uses if Landlord has the right, by virtue of the provisions of the existing lease, to withhold such permission or agreement; nor (iii) Any tenant that does not operate primarily for the purpose of the Restricted Uses (i.e., a tenant deriving twenty-five percent (25%) or less of its annual Gross Sales from the sale of steaks and ribs shall not be deemed in violation of this provision); nor (iv) A Chili's Grill and Bar restaurant. |
| Ulta | Section 5.4 of the Lease dated October 13, 2016 provides in part: |
| | Tenant shall have the exclusive right ("**Tenant's Exclusive**") to conduct any portion of Tenant's Protected Uses in the Shopping Center, and all other tenants or other occupants of any portion of the Shopping Center shall be prohibited from engaging in any portion of Tenant's Protected Uses for so long as Tenant is operating any portion of Tenant's Protected Uses in the Premises (excepting Permitted Closures). Notwithstanding the foregoing, Tenant's Exclusive shall not apply to uses associated with (a) existing tenants in the Shopping Center who are as of the Effective Date entitled to sell such products and/or provide the services that are covered by Tenant's exclusive rights pursuant to their respective leases and, except to the extent Landlord has any control thereover, their respective assignees, subtenants and licensees, (b) any national retail tenant in excess of twenty-five thousand (25,000) square feet that sells the goods and/or provides the services that are covered by Tenant's exclusive rights as a part of its normal business operations, but not as its primary use, (c) incidental sales (i.e., less than five hundred (500) square feet total of such tenant's premises is used to sell any of the products that comprise Tenant's Protected Uses), (d) therapeutic massage therapy stores (such as Massage Envy or Hand & Stone); provided such operators do not sell any products that comprise Tenant's Protected Uses in excess of the incidental sales carve-out set forth in clause (c) above, (e) hair removal services, (f) cosmetic plastic surgery services, (g) a nail salon, or (h) value-oriented unisex or male-oriented hair care salons (such as, by way of example only, Sport Clips, Super Cuts, Great Clips or Fantastic Sam's). |
| | "**Tenant's Protected Uses**" shall mean (i) the retail sale of cosmetics, fragrances, health and beauty products and accessories; hair care products and accessories; personal care appliances; skin care products, and body care products; and (ii) the operation of a full service beauty salon. The term "full service beauty salon" for purposes of this Section shall be defined as the offering of any of or a combination of the following services:  hair care (including, without limitation, cutting, styling, hair treatments, highlighting, tinting, coloring, texturizing, smoothing and hair extensions); facials; esthetician services; skin care services (skin treatments for face and body); beauty treatments/services; hair removal (including, without limitation, waxing, threading and tweezing for face and body); eye lash extension services; nail services; and therapeutic massage. |
| | Section 5.3 of the Lease provides in part: |
| | The Prohibited Uses set forth in Exhibit E hereto shall be prohibited throughout the Shopping Center.   Additionally, the following "**Restricted Uses**" shall not be permitted within the area identified on the Site Plan as the Restricted Area ("**Restricted Area**"): drive-throughs; children's recreational, educational or day-care facilities; restaurants occupying more than 2,800 square feet of Gross Floor Area; schools of any kind; non-retail office uses (except small offices located within retail stores and incidental to such retail uses); health clubs or exercise facilities (except one (1) health club or exercise facility operating in not more than 3,500 square feet of Gross Floor Area); and professional uses.  It is the intent of this Section 5.3 that the Shopping Center shall be devoted to high quality retail uses and "retail" offices typically found in first-class shopping centers (e.g. real estate offices, financial services, insurance agencies and dental and medical offices) and that the parking and |

| | |
|---|---|
| | the other common facilities shall not be burdened by either excessive or protracted use. Notwithstanding the foregoing, such Prohibited Uses and Restricted Uses shall not apply to existing tenants in the Shopping Center (or their respective assignees, subtenants or licensees) who are not subject to such Prohibited Uses and Restricted Uses pursuant to their respective leases, or any renewals or extensions thereof, provided, however, if Landlord has the right to approve or consent to a change of use thereunder in connection with an assignment, subletting or otherwise, Landlord shall enforce the foregoing restrictions in exercising such right. Further notwithstanding the foregoing, such Prohibited Uses and Restricted Uses shall not apply to a replacement of The Craft Bar (the existing restaurant tenant in the premises located immediately adjacent to the Premises and identified on the Site Plan as space "C170") with another restaurant located solely within The Craft Bar premises (for example, a new restaurant tenant that replaces an existing restaurant in the space currently leased to The Craft Bar, and located solely within such space, does not violate the terms of this Section 5.3 even though such new restaurant is operated pursuant to a new lease). <br><br> Exhibit E of the Lease provided in part: <br><br> The following uses (collectively referred to as "**Prohibited Uses**" and individually as a "**Prohibited Use**") are prohibited during the Term in any portion of the Shopping Center:  a nuisance; use causing loud noises or offensive odors; any use that produces excessive noise and/or vibrations that can be heard and/or felt in the Common Areas and/or the Premises; manufacturing facility; dry cleaner (except facilities for drop off and pick up of clothing cleaned at another location); automobile repair shop or service station or any facility storing or selling gasoline or diesel fuel in or from tanks; used clothing or thrift store or liquidation outlet, except for national consignment and/or outlet stores such as Plato's Closet, Kid to Kid, Talbot's Outlet. Chico's or Gap Outlet; massage parlor (excluding a first-class therapeutic massage operation such as Massage Envy or Hand & Stone Massage); adult book shop or adult movie house; mortuary or funeral parlor; coin operated laundry; cocktail lounge, bar or tavern, except in conjunction with a restaurant permitted hereunder; night club; cinema or theater; place of recreation (including, but not limited to, bowling alley, skating rink, carnival, game arcade, swimming pool, hot tub, or gymnasium); church; professional uses; a school of any nature (including a beauty school, barber's college, reading room, place of instruction or any other operation serving primarily students or trainees rather than retail customers, provided, however, this prohibition shall not be applicable to on-site employee training by a tenant incidental to the conduct of its business at the Shopping Center); and any other use inconsistent with the operation of a high quality retail shopping center; |
| Wave Beach Store | Section 5.04 of the Wave Beach Store Lease dated February 15, 2022, provides in part: <br><br> During the Term of this Lease, provided that Tenant is not in default of the Lease and provided Tenant is operating according to the Permitted Use, in no event shall Landlord lease any space in the Shopping Center to a tenant who intends to use such space (in whole or in part) for a business whose primary business (defined as 25% or more of revenue) is the sale of souvenir related items (the "Exclusive Use"). Notwithstanding the foregoing, such exclusive shall not apply to any lease currently executed or any sublease within said space nor any tenant whose space is greater than 5,000 square feet. |
| Wine World | Section 5.04 of the Lease dated December 20, 2013 provides in part: <br><br> Provided Tenant at all times remains continuously open and operating as required under this Lease in 100% of the Premises for the Permitted Use and specifically provided Tenant operates as a retail store selling wine, liquor and beer, similar to other Wine World operations, and provided Tenant otherwise remains free of any Event of Default, then subsequent to the Effective Date of this Lease, Landlord shall not enter into any new lease with any new tenant for premises in the Shopping Center having a use clause stating that such tenant shall be permitted to operate primarily as a retail store selling wine, liquor and beer (the « Exclusive Use »), such as but not limited to Total Wine. Notwithstanding anything in this Lease to the contrary, the Exclusive Use shall not apply to : (i) The Rooms To Go outparcel which is not part of the Shopping Center; nor (ii) Any tenant with a lease that predates the date of Tenant's Lease, or such tenant's successors and/or assigns; provided, however, Landlord shall not permit or agree to the change of a permitted use by any such tenant or its successors and/or assigns to a use which violates Tenant's Exclusive Use if Landlord has the right, by virtue of the provisions of such existing lease, to withhold such permission or agreement; nor (iii) Any retail store operating primarily as a grocery store even if such grocery store sells beer, wine and/or  liquor, such as Fresh Market; nor (iv) Any retail store that operates for some |

| | other retail use but also sells beer, wine and/or liquor in conjunction with such other retail use, such as Cost Plus World Market; nor (v) Any upscale craft brewery. |
|---|---|

**Barnes & Noble - Exhibit C**

DocuSign Envelope ID: 3DF40D46-6D01-40B4-BC39-99F5F6DBFFD6

EXHIBIT C

CENTER'S EXCLUSIVES AND PROHIBITED USES

PROHIBITED USES

As used in this Lease, the term "Prohibited Uses" shall mean any of the following uses:

**As to the Premises,** any of the following uses:

1. Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse, other than odors and fumes normally emanating from the operation of a restaurant otherwise allowed hereunder;

2. Any operation primarily used as a warehouse or storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;

3. Any "second hand" store, "surplus" store or "thrift store" other than of the type operating in first-class shopping centers (such as Play It Again Sports, as such store is operated as of the Effective Date) or other than an upscale antiques' shop;

4. Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers in Landlord designated areas during periods of construction, reconstruction, or maintenance);

5. Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

6. Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, fictitious going-out-of-business sale, lost-our-lease sale or similarly advertised event (provided that if any such use is conducted by a third party in violation of its lease then Landlord's only obligation shall be to use commercially reasonable efforts to prevent the same);

7. Any central laundry, dry cleaning plant, or laundromat;

8. Any automobile, truck, trailer, boat or recreational vehicle sales, leasing display or body shop repair operation;

9. Any bowling alley or skating rink;

10. Any live performance theater, auditorium, sporting event, or other entertainment use, or any meeting hall or convention center, unless part of a hotel otherwise permitted hereunder;

11. Any living quarters, sleeping apartments, or lodging rooms;

12. Any veterinary hospital or animal raising or boarding facilities;

13. Any mortuary or funeral home or cemetery;

14. Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Borders and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder], or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed a "pornographic use" hereunder], or (z) a movie theater offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the exhibition, sale or rental of such videos by a national or regional theater operator of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, AMC or Regal or Cobb, as said theaters currently operate) shall not be deemed a "pornographic use" hereunder], or (zz) a massage parlor [except for therapeutic massages given in connection with the operation of a day spa, health club or chiropractor which may otherwise be permitted under this Exhibit D];

15. Any so-called "head shop", or other establishment primarily selling or exhibiting drug-related

B-8

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

paraphernalia;

16. Any bar, tavern, or other establishment selling alcoholic beverages for on-or-off-premises consumption, except that alcoholic beverages may be served as an incidental part of the operation of a restaurant typically operating in a first-class shopping center and operated primarily as a restaurant and not as a bar or tavern (such as TGI Fridays, Applebee's, Red Lobster, Chipotle, PF Chang's and Olive Garden) or as a part of the operation of a nationally or regionally recognized themed sports bar and grill typically operating in a first-class shopping center (such as Champs and Rock Bottom) or if the operation is an upscale wine bar such as Press 101 or an upscale craft brewery such as Brass Tap;

17. Any catering or banquet hall unless in conjunction with operation of a hotel otherwise permitted hereunder;

18. Any flea market, or any amusement or video arcade or game room (other than inside, and as an incidental part, of a restaurant otherwise allowed hereunder), pool or billiard hall, night club, discotheque, or dance hall;

19. Any training or education facility or school or telemarketing center, including but not limited to: beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers, provided, however, this prohibition shall not be applicable to on-site employee training by a tenant incidental to the conduct of its business at the Shopping Center;

20. Any gambling facility or operation, including but not limited to: off-track or sports betting parlor, table games such as black-jack or poker, slot machines, video poker/black-jack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not apply to governmental sponsored gambling activities, or charitable gambling activities, so long as such governmental and/or charitable activities are incidental to the business operation being conducted by Tenant;

21. Any unlawful use;

22. Any pawn shop, gun shop, or tattoo parlor;

23. Any church or other place of religious worship;

24. Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube oil change service, tire center or gasoline or service station or facility;

25. Any carnival, amusement park or circus;

26. Any medical clinics or medical offices including but not limited to any so-called methadone clinics, blood banks, or drug or alcohol treatment or rehabilitation centers;

27. Any office use other than office space used in connection with and incidental to a permitted retail use hereunder;

28. Any hotel/motel;

29. Any daycare center;

30. Any veterinary office;

31. Any children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's");

32. Any karate or other martial arts center;

33. Any restaurant serving meals for on-or off-premises consumption (unless specifically allowed under Tenant's Permitted Use of the Premises);

34. Any beauty parlor or nail salon (unless specifically allowed under Tenant's Permitted Use of the Premises);

35. Any health spa, exercise facility or similar type business; or

36. Any store primarily selling merchandise which is classed as "odd lot", "close out", "clearance", "discontinued", "cancellation", "second", "factory reject", "sample", "floor model", "demonstrator", "obsolescent", "over stock", "distressed", "bankruptcy", "fire sale" or "damaged", such as, for example, "Grossman's Bargain Outlet", "Contractor's Warehouse", "Big Lots", "Liquidation World", or "Odd Job.

37. All exclusives and restricted uses set forth on Exhibit D-1, attached hereto.

**As to the Shopping Center,** any of the uses set forth in numbers 1, 2, 3, 4, 5, 6, 7, 9, 13, 14, 15, 16, 17, 18, 20, 21, 23, 24, 25, 26, 27, and 28 above only.

B-9

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

## EXCLUSIVES

In addition to restrictions and other encumbrances of record, Tenant is subject to the following existing exclusives and restrictions:

| | |
|---|---|
| Aspen Dental | Section 5.04 of the Lease dated August 30, 2013 provides in part: |
| | During the Term of this Lease, so long as Tenant is open, occupying and operating the Premises in accordance with the terms and provisions of this Lease for the Permitted Use, Landlord shall not lease space (or consent to the subleasing of space to the extent Landlord has such right) in the Shopping Center, to any tenant or other occupant whose primary business (as hereinafter defined in this Section) is the Permitted Use ("Exclusive Use"); *provided, however*, the Exclusive Use (a) shall not apply to the following: (i) those tenants listed in *Exhibit M* attached hereto and made a part hereof with a lease that predates the date of this Lease whose existing use clause as of the date hereof permits the Exclusive Use, and the successors, assignees and transferees of any such tenant (provided, however, that, to the extent Landlord is permitted to withhold consent to a change in use under such leases, Landlord shall not consent to any change in use under such leases that would violate the Exclusive Use); (ii) any Shopping Center tenants leasing or occupying 20,000 or more contiguous square feet of GLA operated under a single trade name; (iii) any tenant that is permitted to use its premises for the Exclusive Use by operation of law, court order, bankruptcy, or similar action with the force of law; (iv) any out lots, or any other premises not owned by Landlord as of the date hereof; or (v) areas into which the Shopping Center may be expanded in the future, unless the same shall be operated with the existing Shopping Center as a single integrated mercantile complex, in which case the Exclusive Use shall apply (subject to the other exclusions to the Exclusive Use set forth in this Section 5.04) to such areas. |
| Beachtown Chiropractic | Section 5.04 of the Lease dated June 29, 2018 provides in part: |
| | Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of providing chiropractor services to the general public (the "Exclusive Use"), Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the Exclusive Use. Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, nor any tenant as to which Landlord has no control of such tenant's use of its premises and/or whose lease allows it to operate for any lawful use and/or whose permitted use otherwise allows it to operate for the Exclusive Use, or its successors and/or assigns; nor (ii) Any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving twenty percent (20%) or less of its annual gross sales from the Exclusive Use shall not be deemed in violation of this provision). |
| Bed, Bath & Beyond | Lease dated December 6, 2012, as amended by First Lease Amendment |
| | Section 13.2.1 and 13.2.2 and 13.1.2 of the Lease provides in part: |
| | 13.2.1  Except for the existing leases with Dick's Sporting Goods and Michael's Arts & Crafts which do not contain and are not bound by, Tenant's exclusive (the "*Excepted Leases*"), Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any Related Land to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or itself, for the sale, rental or distribution, at retail or at wholesale, either singly or in any combination, of items contained in any of the following respective categories of merchandise: (a) linens and domestics; (b) bathroom items (but excluding health and beauty care items and excluding plumbing hardware); (c) housewares (excluding furniture, and major appliances or "white goods"); (d) frames and wall art (provided that a fine art gallery shall not be precluded); (e) window treatments; and/or (f) closet, shelving and storage items (which items, either singly or in any combination, are hereinafter referred to as the "*Exclusive Items*"). Notwithstanding the foregoing, any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of Exclusive Items within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such sales, rental and/or distribution area) not to exceed the lesser of (x) ten percent (10%) of the Floor Area of such tenant's or subtenant's premises, or (y) two thousand five hundred (2,500) square feet of Floor Area within such tenant's or subtenant's premises [For example only, a tenant occupying premises containing a total of five thousand (5,000) square feet of Floor Area could sell Exclusive Items (either singly or in any combination) so long as the aggregate area within its entire demised premises in which any and all Exclusive Items are sold shall not exceed five hundred (500) square feet]. Notwithstanding the foregoing, tenants under Excepted Leases (and current or future |

B-10

DocuSign Envelope ID: 3DF40D46-6001-4D64-BC39-99F5F60BFFD6

| | |
|---|---|
| | assignees or sublessees of such tenants) shall nevertheless be subject to the restrictions contained in this Section 13.2 in the event that: (i) the lease between Landlord and any such tenant requires the consent of Landlord to any assignment or subletting or to a change in the use of the applicable premises, in either case which would permit the sale, rental or distribution of the Exclusive Items, or (ii) Landlord permits or agrees to an expansion of the applicable premises for the sale, rental, or distribution of the Exclusive Items.<br><br>13.2.2  The restrictions set forth in Subsection 13.2.1 above shall not apply to a full-line national: (i) department store [for example, Wal-Mart, Macy's, Target or Kohl's], (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club], or (iii) home improvement center [for example, Home Depot or Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 80,000 square feet of Floor Area within the Shopping Center as such stores are currently operated (as of the Effective Date) or (iv) furniture store [for example, Rooms To Go or Havertys'] selling frames and wall art as an incidental part of its sale of furniture and other furniture related items and accessories and other items normally sold in Rooms To Go and similar retail furniture stores. In addition, and notwithstanding the restrictions set forth in Section 13.2.1 above, Tenant hereby consents to the operation of a Pier 1 Import store (as same typically operates), subject to and conditioned upon the following terms: (a) the Pier 1 Imports store shall be located in that portion of the Shopping Center as is designated on <u>Exhibit B</u> attached hereto, (b) the lease for the Pier 1 Import store shall then be in full force and effect, and (c) the Floor Area of the Pier 1 Import store shall not exceed 10,000 square feet of Floor Area.<br><br>13.1.2  Landlord shall not lease, rent or occupy or permit to be occupied any portion of the Shopping Center or any "Related Land" (hereinafter defined) for any of the "Prohibited Uses" that pertain to the Shopping Center or the Related Land, as the case may be (as set forth in <u>Exhibit I</u>, hereto annexed), <u>provided, however</u>, that as to any future Related Land, the foregoing restriction shall not apply to the extent that any Prohibited Uses are otherwise permitted under leases entered into prior to the date on which such land becomes Related Land.  As used in this Lease, the term "<b><i>Related Land</i></b>" shall mean any land contiguous or adjacent to the Shopping Center (including, without limitation, any land that would be contiguous or adjacent to the Shopping Center but for any intervening road, street, alley or highway) owned or controlled by Landlord or its Affiliate(s). |
| Cato | <u>Section 25 of the Lease dated May 31, 2013 provides:</u><br><br>LESSOR agrees that, during the Term, subject to existing leases, (i) no space immediately adjacent to the Premises shall be occupied by or used for a pet shop with live animals, a veterinary clinic, a flea market, a game room, a car wash, a facility for the sale, display, leasing or repair of motor vehicles, or automatic teller machine, vending machines available to the public or business in which any of them is a part, (ii) no space within 100 feet of any exterior boundary of the Premises, as shown on <u>Exhibit A</u> attached hereto and incorporated herein, shall be occupied by or used for any of the following uses which require extensive parking or are otherwise incompatible with LESSEE's permitted retail use of the Premises: a bar, disco, night club, game room, amusement arcade, movie theatre, meeting hall, auditorium, school, church, or a gymnasium or health club larger than 4,000 square feet, adult club, massage parlor (other than medical massage as an incidental use, or a business offering therapeutic massages as an incidental use such as a day spa, or a primary use if a first-class, national chain tenant such as a Massage Envy), betting parlor or gambling hall, funeral parlor, storage facility (but storage space incidental to a primary permitted use is acceptable), bowling alley, skating rink, dance hall, billiard, bingo or pool hall, or plasma collection center uses, (iii) no space in the Shopping Center shall be occupied by or used for the sale of sexually explicit materials or products (provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Borders and Barnes & Noble, as said stores currently operate) or the sale or rental of videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed "sexually explicit materials or products" hereunder), recreational drugs, medical marijuana or drug paraphernalia, and (iv) smoking shall not be permitted in contiguous or adjacent spaces. |
| Chili's Grill & Bar | <u>Section 7(b) of the Lease dated November 14, 2014 provides in part:</u><br><br>Provided Tenant is not then in default of this Lease beyond all notice and cure periods and is open and operating on the Land (subject to Permitted Closures as defined in <u>Paragraph 7</u> below) as a typical Chili's Grill & Bar restaurant or another similar full- |

B-11

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

| | |
|---|---|
| | service, sit-down casual dining restaurant that operates with a "varied menu theme", during the Term of this Lease, except for Tenant, Landlord shall not lease or sell any portion of the Center to, or otherwise allow to operate on any portion of the Center, another full-service, sit-down casual dining restaurant consisting of 4,500 square feet or more, which both (i) serves alcoholic beverages and (ii) operates with a "varied menu theme", selling a wide variety of American and Fresh Mex (non-ethnic) type food, such as, for example purposes only (and regardless of the square footage of such restaurants): Applebee's, Amarillo Grill, Bennigan's, B.J.'s Restaurant & Brewery, Brickhouse Tavern & Tapp, Buffalo Cafe, Buffalo Wild Wings, Cheddar's, Damon's, Houlihan's, Logan's Roadhouse, Lone Star Cafe, Max & Erma's, Miller's Ale House, O'Charley's, Original Roadhouse Grill, Red Robin, Roadhouse Grill, Ruby Tuesday's, T.G.I. Friday's and Tony Roma's.  A "varied-menu theme" restaurant shall mean a casual dining restaurant selling a wide variety of beef, fish, chicken, pastas, soups, salads and sandwiches, appetizers and desserts, together with alcoholic beverages, in a casual dining setting. A "fast-casual" dining restaurant, meaning any casual restaurant that delivers service primarily through a "counter-line" or other custom-er "self-order service" mechanism other than customary "sit down" table service, shall not be deemed to be a "varied-menu theme" restaurant hereunder.  A "fast food" restaurant such as a Burger King, McDonald's, Subway, Taco Bell, Wendy's shall not be deemed to be a "varied menu theme" restaurant.  For purposes hereof, any ethnic or specialty restaurant such as, by way of example only, Mexican, German, Italian, Chinese, seafood, steakhouse, chophouse, chicken, barbecue or other restaurant with a specialty menu or featured food item menu, including, by way of example only, Olive Garden, Red Lobster, Outback Steakhouse, Trail Dust Steakhouse, Ryan's Steakhouse, Golden Corral, Sizzler, Cracker Barrel, Macaroni Grill, Carrabba's Italian Grill, Don Pablo's, Bonefish, and IHOP, shall not be deemed to be a "varied menu theme" restaurant.  For purposes hereof, any fine dining establishments or fine dining restaurants open only for dinner, with higher price points than Tenant, shall not be deemed to be a "varied-menu theme" restaurant regardless of the menu offerings. … The exclusive in this Paragraph 7(b) shall not be applicable to any existing tenant or occupant or successor or assign that is permitted under existing permitted use language as set forth in such tenant's lease, to change its use, and/or to assign its Lease, without further consent from Landlord, to operate as such a prohibited restaurant. |
| Cost Plus World Market | Lease dated April 22, 2014 |
| | Sections 13.2.1, 13.2.2, 13.2.3 and 13.1.2 of the Lease provides in part: |
| | 13.2.1 Except for Existing Leases, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any Related Land to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or itself, for the display and/or sale of pre-packaged gourmet foods, beer, wine and spirits for off-premises consumption, and/or home décor products (which items, either singly or in any combination, are hereinafter referred to as the "*Exclusive Items*"). Notwithstanding the foregoing, (i) any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of pre-packaged gourmet foods and/or home décor products within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such storage, sales, rental and/or distribution area), not to exceed five hundred (500) square feet of Floor Area within such tenant's or subtenant's premises; and (ii) Tenant's exclusive with respect to the sale of beer, wine and spirits for off-premises consumption shall not be permitted under any circumstances, regardless of the amount of Floor Area devoted to the sale of beer, wine and/or spirits, except (i) if a tenant has such night under an Existing Lease or (ii) such tenant is a restaurant and sells beer, wine and/or spirits for off-premises consumption as an incidental part of its business or (iii) such tenant is primarily a grocery store and sells beer, wine and/or spirits in addition to grocery items and is located only in the space designated for Dick's Sporting Goods or in the Permissible Use Area (as indicated on Exhibit B attached hereto) or (iv) such tenant is a first-class wine bar and/or first class micro-brewery type establishment (by way of example, Brew House or Brass Tap), provided such tenant in this clause (iv) is located at least 150 feet from the closest demising wall of the Premises, it being agreed that a wine or liquor store shall not be permitted except for Chan's Wine World (as it currently operates) and any store similar to Chan's Wine World. |
| | 13.2.2 As to any future Related Land, the foregoing restrictions shall not apply to the extent that any Exclusive Items are otherwise permitted under leases entered into prior to the date on which such land became Related Land. Notwithstanding the foregoing, tenants under Existing Leases (and current or future assignees or subleasees of such tenants) shall nevertheless be subject to the restrictions contained in this Section 13.2 in the event that: (i) Landlord may withhold its consent to any assignment or subletting or to a change in the use of the applicable premises, in either case which would permit the sale, rental or distribution of the Exclusive Items (unless the tenant under the Existing Lease that is being assigned or subleased had such right pursuant to Section |

B-12

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

| | |
|---|---|
| | 13.2); or (ii) Landlord may withhold its consent to an expansion of the applicable premises for the sale, rental, or distribution of the Exclusive Items.<br><br>13.2.3  The restrictions set forth in Subsection 13.1 above shall not apply to a full-line national: (i) department store [for example, Wal-Mart, Macy's, Target or Kohl's], (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club], or (iii) home improvement center [for example, Home Depot or Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 80,000 square feet of Floor Area within the Shopping Center as such stores are currently operated (as of the Effective Date) or (iv) furniture store [for example, Rooms To Go or Haverty's] or (v) a grocery store operating in accordance with the provisions of Section 13.2.1(iii) above.   In addition, and notwithstanding the restrictions set forth in Section 13.2.1 above, Tenant hereby consents to the operation of a Kirkland's store (as same typically operated), subject to and conditioned upon the following terms: (a) Kirkland's shall be located in that portion of the Shopping Center as is designated on <u>Exhibit B</u> attached hereto, (b) the lease for Kirkland's shall then be in full force and effect, and (c) the Floor Area of Kirkland's shall not exceed 10,000 square feet of Floor Area; and Tenant hereby consents to the operation of a Pier 1 Imports store (as same typically operated), subject to and conditioned upon the following terms: (a) Pier 1 Imports shall be located in that portion of the Shopping Center as is designated on <u>Exhibit B</u> attached hereto, (b) the lease for Pier 1 Imports shall then be in full force and effect, and (c) the Floor Area of Pier 1 Imports shall not exceed 10,000 square feet of Floor Area.<br><br>13.1.2  Landlord shall not lease, rent or occupy or permit to be occupied any portion of the Shopping Center or any "Related Land" (hereinafter defined) for any of the "Prohibited Uses" that pertain to the Shopping Center or the Related Land, as the case may be (as set forth in <u>Exhibit I</u>, hereto annexed), <u>provided, however</u>, that as to any future Related Land, the foregoing restriction shall not apply to the extent that any Prohibited Uses are otherwise permitted under leases entered into prior to the date on which such land becomes Related Land.  As used in this Lease, the term "*Related Land*" shall mean any land contiguous or adjacent to the Shopping Center (including, without limitation, any land that would be contiguous or adjacent to the Shopping Center but for any intervening road, street, alley or highway) owned or controlled by Landlord or its Affiliate(s). |
| Dick's Sporting Goods | <u>Lease dated October 26, 2011, as amended by First Amendment to Lease</u><br><br><u>Section 1.5 of the Lease provides in part:</u><br><br>(a)      Landlord warrants and agrees that, during the term of this Lease, it will not enter into any lease, license agreement or other similar agreement nor permit any other premises in the Shopping Center (the "**Restricted Property**") to be used for the sale, rental and/or distribution, either singly or in any combination of: (i) health, fitness and/or exercise equipment, (ii) sporting goods and sporting equipment (including, but not limited to, golf equipment and accessories), (iii) hunting, camping and fishing equipment and accessories; and/or (iv) athletic footwear (the "**Precluded Use Activity(ies)**").   In addition to the foregoing, Landlord shall be permitted one (1) Occupant within the Restricted Property operating primarily as a family shoe store in not more than nine thousand (9,000) square feet of LFA and located in the area between or inclusive of the proposed "Pier 1" and "Toys R" Us" as outlined on the Lease Plan.<br><br>(b)      Notwithstanding the foregoing Precluded Use Activity(ies) set forth in Subsection (a) above, the retail sale and/or distribution of the Precluded Use Activity(ies) shall be permitted in the lesser of (A) ten percent (10%) in the aggregate of any such Occupant's sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use) or (B) two thousand (2,000) square feet in the aggregate of such Occupant's sales floor area (which shall include an allocable portion of the aisle space adjacent to such sales floor area of such use), and in addition, the foregoing Precluded Use Activity(ies) set forth in Subsection (a) above shall not apply to Ross Dress For Less, or its successors, assigns or sublessees.<br><br>(c)      Landlord further covenants and agrees that, during the term of this Lease, it will not enter into any lease, license agreement or other similar agreement nor permit any property owned or controlled by Landlord or its parent or affiliates, adjacent to, contiguous or within five (5) miles of the Shopping Center (the "**Additional Restricted Property**") to be used as a full line sporting goods store having forty thousand (40,000) square feet or more of sales floor space, such as, by way of example only, Academy, Sports Authority, Bass Pro, Cabellas, Gander Mountain or the like. The Foregoing shall not be violated by Landlord, or its parent or affiliates acquiring an interest in any such land after the Effective Date as a result of its merger with or acquisition of the then-owner thereof, when an Occupant using at least forty thousand (40,000) square feet of sales floor area (which shall include an allocable portion of the |

B-13

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

| | |
|---|---|
| | aisle space adjacent to such sales floor area of such use) as a full line sporting goods store is permitted on such land by any lease or other agreement in existence on the date of such merger or acquisition.<br><br>(g)    Notwithstanding anything contained herein, any retailer of over fifty thousand (50,000) square feet of LFA that may be a part of the Shopping Center and/or the Additional Restricted Property and operating a traditional full-line retail department store typically found in first class shopping centers (each of which are a "**Department Store**" and all of which, collectively, are referred to herein as the "**Department Stores**") shall not be subject to the provisions of Subsection (a) and (c), above.  However, in the event Landlord, or its parent or affiliates regains control of a Department Store premises or has approval rights of any use change of a Department Store premises, then the restrictions in Subsection (a) and (c), above shall again apply to such Department Store premises; provided, however, in the event Landlord or its parent or affiliates leases or sells such Department Store premises to a Department Store for use as a Department Store, such Department Store premises shall not be subject to the restrictions in Subsection 1.5 (a) and (c), above.  Notwithstanding anything contained in this Section 1.5(g), a sporting goods superstore such as Academy, Sports Authority, Bass Pro, Cabellas, Gander Mountain or the like shall not be considered a Department Store as for the above and shall not be excluded from the restrictions set forth in Subsection (a) and (c), above.<br><br>Section 1.2(h) of the Lease provides:<br><br>Landlord covenants that no kiosk or obstruction (other than landscaping and/or curbing required by Legal Requirements) shall be placed in the No-Build Areas.<br><br>Section 1.4 of Lease provides in part:<br><br>The Shopping Center shall not be used... (g) for any restaurant or establishment selling food prepared on premises for consumption on or off premises (other than cafes incidental to an Occupant's primary use) located within two hundred (200) lineal feet of the Demised Premises. |
| Dr. Vape It | Section 5.04 of the Lease dated October 23, 2014 provides in part:<br><br>Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of the retail sale of electronic cigarettes and E-liquids ("Exclusive Use"), Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the Exclusive Use. Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, nor (ii) Any premises in the Shopping Center consisting of ten thousand (10,000) or more square feet, nor (iii) Any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving twenty percent (20%) or less of its annual Gross Sales from sales of Exclusive Use items shall not be deemed in violation of this provision). |
| Five Below | Section 7.3 of the Lease dated December 22, 2017 provides in part:<br><br>Provided that Tenant is not in an Event of Default and the Premises is open and operating for the retail sale of pre-teen and teen oriented variety and general merchandise at price points that are primarily $10 and less... Landlord shall not lease, rent, occupy or permit to be occupied or used, any space in the Shopping Center for a similar business to Tenant's whose primary use is the sale of pre-teen and teen oriented variety and general merchandise at price points that are primarily $10 and less ("Exclusive Items"); provided, however, the exclusive use rights in this Section 7.3 shall be reinstated upon the cure of any Event of Default re-re-opening, although any tenant who has entered into a lease while the exclusive use right set forth in this Section 7.3 is not in effect shall be permitted to continue such use after the cure of any Event of Default or re-opening for business as the case may. For purposes of this Section 7.3 the term primary use is the use of more than thirty percent (30%) of an occupant's sale floor area for the sale/display of Exclusive Items.  The provisions of this Section 7.3 shall not be construed to prohibit (a) any existing tenant situated within the Shopping Center which has, as of the Effective Date, the right to handle and sell such items (or is not prohibited under the terms of its lease from selling such items), from handling and selling those certain items, and Landlord agrees not to amend any lease to permit additional rights for the sale of such items beyond the extent permitted in such tenants' lease, and Landlord agrees not to permit any such existing tenant to assign such lease or sublease its premises to a user who would violate the exclusive set forth herein, so long as Landlord has the right to consent or approve of any such assignment or subletting under such existing lease, (b) any retailer of one (1) |

4552859-8 13370.001000
#4552859v6<ATLANTA> - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

|  |  |
|---|---|
|  | principal category of merchandise such as an electronics store, book store, toy store, clothing store, video rental store, health and beauty aids store, convenience store, or any other retail operation that devotes a majority (i.e., more than 33%) of its sales floor area to the sale of one (1) principal category of merchandise, (c) any tenant in the Shopping Center who leases 18,000 square feet or more of contiguous space operating under one trade name, and (d) any user operating in a "dollar price point" format (i.e. a majority of the items (over 75%) in the store are at price points of $2 or less), so long as such user is not located adjacent to the Premises.<br><br>Section 7.4 of the Lease dated December 22, 2017 provides in part:<br><br>Landlord shall not lease, rent, occupy or permit to be occupied or used, any space in the Shopping Center located immediately adjacent to the Premises as a medical office or medical facility. |
| The Fresh Market | Section 5.2 (Use Restrictions) of the Lease dated December 22, 2014 provides in part:<br><br>**Prohibited/Incompatible Uses.** Tenant covenants and warrants that no portion of the Premises shall be used or occupied at any time for any Prohibited Use. Landlord covenants and warrants that no other portion of the Shopping Center shall be used for any Prohibited Use or any Incompatible Use. Notwithstanding the foregoing, however, this Section 5.2 shall not apply to any Pre-Existing Tenant.<br><br>**Prohibited Use(s)** means: churches or places of worship; schools or any training or educational facilities within the Shopping Center catering primarily to students or trainees rather than retail customers; day care centers; Common Area sales or solicitations (except by tenants on the sidewalk in front of their stores which do not unreasonably interfere with pedestrian access or passage and except as set forth in Chan's Wine World lease which permits Chan's Wine World to present events occasionally (no more than six times per year) in the special events area in the area of the Shopping Center between Kirkland's and Pier One); gun stores (other than as an incidental part of any sporting goods store or as an incidental part of any department store such as Wal-Mart or Target); banquet facilities; peepshows; adult book or adult video store, or for the sale, rental, or exhibition of pornographic material (but such restriction shall not restrict the incidental sale of books, magazines and other publications containing such materials by a national bookstore of the type normally located in first-class shopping centers in the State of Florida (such as, for example, Barnes & Noble or Books-A-Million) nor the incidental sale or rental of videos containing such materials by a national video store of the type normally located in first-class shopping centers in the State of Florida (such as, for example, Blockbuster or West Coast Video); head shops; video game arcades; tango parlors; bars, taverns, or night clubs; off-track betting parlors; mobile home parks or trailer courts; car washes; motor vehicle rentals and/or sales; motor vehicle maintenance, repair and/or parts supply shops; carnivals; amusement parks or circuses; bowling alleys; ice rinks; roller skating rinks; call centers or other second or third shift office users; urgent care facility; any other medical services use which is inconsistent with a first class shopping center in the City of Panama City or Panama City Beach, FL (but not prohibiting medical uses which are typically found in first class shopping centers such as those which are being operated, as of the Lease Date, under the trade names Aspen Dental or Blue Cross/Blue Shield or Visionworks, all of which may be deemed to be Permitted Consumer Offices hereunder so long as any such use also meets the requirements of subsection (ii) and subsection (iii) of the definition of "Permitted Consumer Office" set forth in Section 1.31 hereof); Army Navy, or government "surplus" stores, fire or bankruptcy sales or auction house operations; "second hand" or consignment stores (other than of the type operating in first-class shopping centers under the trade name Play It Again Sports, as such store is operated as of the Lease Date, or upscale antique shops); "dollar" stores or similar low-cost, single/maximum price-point stores; check cashing or payday loan/advance business (but not excluding federally or state chartered banks or savings and loans which may be deemed to be Permitted Consumer Offices hereunder so long as any such use also meets the requirements of subsection (ii) and subsection (iii) of the definition of "Permitted Consumer Office" set forth in Section 1.31 hereof); pawn shops; laundromats; central laundries, or dry cleaning plants, mortuaries or funeral homes; hotels, motels, apartments or other short or long-term residences; public or private nuisances; noises or sounds that are objectionable due to intermittence, beat, frequency, shrillness or loudness; obnoxious odors; noxious, toxic, caustic, or corrosive fuels or gases; dust, dirt, or flyash or similar materials in any excessive quantity; unusual fires, explosions, or other damaging or dangerous hazards; warehouse, assembly, manufacture, distillation, refining, smelting, agriculture, or mining operations; labor camps; junkyards; stockyards, or animal raising operations, operations involving the dumping, disposal, incineration or reduction of garbage or refuse.<br><br>**Incompatible Use** means: (i) restaurants located within two hundred feet (200') of the Premises, (ii) movie theaters located within five hundred feet (500') of the Premises, (iii) health clubs or gyms located within three hundred fifty feet (350') of |

4552659-8 13370.001000
#4552659v6°ATLANTA° - Barnes & Noble, Panama City Beach, FL - Lease (§ 8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

the Premises; provided, however, exercise facilities which occupy less than three thousand (3,000) square feet of total floor area (such as karate or martial arts centers and exercise facilities which are being operated, as of the Lease Date, under the trade names Orange Theory and Pure Barre) shall be permitted as long as they are located at least two hundred fifty feet (250') from the Premises, (iv) spas, massage facilities, beauty parlors and/or nail salons located within one hundred fifty feet (150') of the Premises; (v) office uses other than Permitted Consumer Offices, (vi) pet and/or pet supply stores located adjacent to the Premises, and (vii) any children's entertainment or activity facility (such as "Discovery Zone" or "Chuck E. Cheese's") located within two hundred feet (200') of the Premises.

**Pre-Existing Tenants** means those Shopping Center tenants (and their successors and assigns) listed as such on Exhibit E-1 attached hereto who are operating only in the locations and for the uses expressly set forth in such Exhibit E-1. For the avoidance of doubt, the term "Pre-Existing Tenants" includes those Shopping Center tenants listed on Exhibit E-1 which, pursuant to their respective leases listed thereon, have not yet opened for business.

**Permitted Consumer Office** means office uses that (i) cater to the public and are normally found in retail centers, such as realtors, financial services or insurance offices, (ii) are located at least one hundred fifty feet (150') from the Premises and (iii) occupy, in the aggregate, no more than ten thousand (10,000) square feet of total floor area.

**(b) Exclusive Uses.** On and after the Lease Date, to the extent not prohibited by applicable laws, and except for Pre-Existing Tenants, Permitted Stores, and Incidental Sales of Grocery Items for off-premises consumption, Landlord covenants that no portion of the Shopping Center other than the Premises, nor any portion of the RTO Parcel (as such term is defined in the REA), shall be used as a grocery store and/or supermarket, or for the sale of any Grocery Items for off-premises consumption (collectively hereinafter, "Tenant's Exclusives"). Notwithstanding the exclusion of Pre-Existing Tenants from the foregoing covenant, however, to the extent that any such tenant's or occupant's lease provides a conditional right, subject to Landlord's prior approval, to operate for any use which would otherwise violate Tenant's Exclusives, Landlord shall not grant such approval. Notwithstanding the foregoing, however, Tenant's Exclusives shall not apply during any Lapse Period, nor shall Tenant's Exclusives prohibit any non-exclusive rights which Landlord grants to another tenant in writing during any Lapse Period and of which Tenant received prior written notice during such Lapse Period and such non-exclusive rights granted during the Lapse Period of which Tenant was noticed shall continue even if the Lapse Period terminates as provided in the next sentence. Upon Tenant's resuming operations within the Premises for the sale of Grocery Items for off-premises consumption, any Lapse Period shall terminate and Tenant's Exclusives shall once again be applicable (subject to the limitations of the previous sentence).

**Grocery Items** means foodstuffs and drinks including, without limitation, any or all of the following: (i) dairy products, (ii) produce, (iii) coffee, tea and candies, (iv) nuts, snack mixes, and other bulk food items, (v) bakery products, (vi) meat, (vii) seafood, (viii) liquor, beer, wine and/or other alcoholic beverages, (ix) deli meats and cheeses, sushi, and convenient meal solutions, (x) vitamins, herbs and supplements, and (xi) cut flowers and live plants.

**Pre-Existing Tenants** means those Shopping Center tenants (and their successors and assigns) listed as such on Exhibit E-1 attached hereto who are operating only in the locations and for the uses expressly set forth in such Exhibit E-1. For the avoidance of doubt, the term "Pre-Existing Tenants" includes those Shopping Center tenants listed on Exhibit E-1 which, pursuant to their respective leases listed thereon, have not yet opened for business.

**Permitted Stores** means Permitted Bakery, Permitted Candy Store, Permitted Coffee Shop and Permitted Nutrition Center.

**Permitted Bakery** means a bakery restaurant located at least two hundred feet (200') from the Premises (i) which operates primarily as a quick service restaurant such as those which are operated as of the Lease Date under the trade names Panera Bread or Atlanta Bread Co. or Village Inn, or a similar type restaurant which sells bread, cake and/or pastries as part of its restaurant business, (ii) which occupies no more than four thousand five hundred (4,500) square feet of total floor area and (iii) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) above) are limited to Incidental Sales.

**Permitted Candy Store** means a candy store located at least two hundred feet (200') from the Premises (i) which primarily sells candy, (ii) which occupies no more than one thousand five hundred (1,500) square feet of total floor area, and (iii) whose sale

B-16

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

| | |
|---|---|
| | of Grocery Items for off-premises consumption (other than sales described in (i) above) are limited to Incidental Sales. <br><br> **Permitted Coffee Shop** means a coffee shop located at least two hundred feet (200') from the Premises (i) which primarily sells liquid coffee or other beverages by the cup, (ii) whose sale of coffee beans does not exceed twenty percent (20%) of total sales from such location, (iii) which occupies no more than two thousand four hundred (2,400) square feet of total floor area, and (iv) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) and (iii) above) are limited to Incidental Sales. <br><br> **Permitted Nutrition Center** means a nutrition center (i) which primarily sells vitamins, supplements and/or herbs for health purposes, (ii) which occupies no more than two thousand (2,000) square feet of total floor area, and (iii) whose sale of Grocery Items for off-premises consumption (other than sales described in (i) above) are limited to Incidental Sales. <br><br> **Incidental Sales** means all or any of the following: (a) sales of Grocery Items aggregately conducted from no more than the lesser of (i) ten percent (10%) of the applicable user's floor space or (ii) five hundred (500) square feet of such user's floor space (such measurements to include any and all display case/shelf areas and one-half (1/2) of any adjacent aisle spaces); (b) sales of "take out" or "carry out" food or drink prepared for immediate consumption, including sales of food or drink prepared for immediate consumption obtained from a drive through. |
| Great Clips | <u>Section 5.04 of the Lease dated September 24, 2013 provides in part:</u> <br><br> Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises as a "Great Clips" (or similar) unisex family hair salon, Landlord agrees that it shall not lease space in the Shopping Center to any salon brand owned and operated by Regis Corp, Hair Cuttery, Fantastic Sam's, or SportsClips (individually and collectively, "Restricted Tenant"). Except as otherwise provided below, Landlord shall enforce the Restricted Tenant prohibition against other tenants in the Shopping Center using all reasonable legal means. Notwithstanding, the forgoing Restricted Tenant prohibition shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, its successors and/or assigns, provided however, Landlord shall not permit or agree to the change of a permitted use by any such existing tenant or its successors and/or assigns to that of a Restricted Tenant if Landlord has the right, by virtue of the provisions of such existing lease, to withhold such permission or agreement, nor (ii) Any premises in the Shopping Center consisting of ten thousand (10,000) or more square feet. |
| Hand & Stone | <u>Section 5.04 of the Lease dated September 8, 2017 provides in part:</u> <br><br> Provided that at all times after the Effective Date of the Lease Tenant is in compliance with the terms and provisions of the Lease and is operating for the Permitted Use, Landlord agrees that after the Effective Date of the Lease it shall not enter into any new lease with, or permit any assignment or sublet of an existing lease (to the extent Landlord has the right to approve any such assignment or sublet and to the extent Landlord has control over such existing tenant's permitted use or any changes to such permitted uses) to Massage Envy or to any similar future tenant for premises in the Shopping Center for the principal and primary purpose of providing the following services in a spa setting on a **membership basis**: massage, waxing, hair removal and facial services ("Tenant's Exclusive Use"). Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) any Shopping Center tenant with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, nor (ii) any tenant or occupant of a premises in the Shopping Center whose GLA is ten thousand (10,000) square feet or greater, their successors and assigns. |
| IHOP | <u>Section 5.04 of the Lease dated May 6, 2014 provides in part:</u> <br><br> Provided Tenant is open, occupying and operating the Premises as a typical IHOP restaurant and is not in default under this Lease beyond any applicable cure period, Landlord agrees that it shall not lease or sell any portion of: (i) the Outparcels of the Shopping Center (Outparcel A, B, C D and E as shown on the Site Plan attached hereto as <u>Exhibit A</u>) or the multi tenant building to the east of Outparcel A (Building E as shown on the Site Plan) to any future tenant or purchaser for the primary and principal purpose of a full service breakfast restaurant, or to any of the following competitors of tenant: Shoney's, Denny's, Cracker Barrel, Bob Evans, Perkins, Cocos, Friendly's, MiMi's, Village Inn, Big Boy, Huddle House, Aunt Sarah's, Waffle House, Golden Corral, The Broken Egg, First Watch, Another Broken Egg Cafe, or The Egg and I, or (ii) the Shopping Center to any future tenant or purchaser for use as any of the following competitors of Tenant: Shoney's, Denny's, Cracker Barrel, Bob Evans, Perkins, Cocos, Friendly's, MiMi's, Village Inn, Big Boy, Huddle House, Aunt |

4352859-9 13370.001000
#4352859v9<ATLANTA> - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 30F40D46-6001-4064-BC39-99F5F60BFFD6

| | |
|---|---|
| | Sarah's Waffle House, or Golden Corral, The Broken Egg, First Watch, Another Broken Egg Cafe or The Egg and I (collectively, the "Exclusive Use"). Notwithstanding the foregoing, the Exclusive Use shall not apply to: (i)The Rooms To Go outparcel which is not part of the Shopping Center; nor (ii) Any Shopping Center or Outparcel tenant with a lease that predates the date of Tenant's Lease, or such tenant's successors and/or assigns; provided, however, Landlord shall not permit or agree to the change of a permitted use by any such tenant or its successors and/or assigns to a use which violates Tenant's Exclusive Use if Landlord has the right, by virtue of the provisions of such existing lease, to withhold such permission or agreement. |
| Island Fin Poke | Section 5.04 of the Island Fin Poke Lease dated September 27, 2021 provides in part: <br><br> During the term of this Lease, provided that Tenant is not in default of the Lease and provided Tenant is operating according to the Permitted Use, in no event shall Landlord lease any space in the Shopping Center to a tenant who intends to use such space (in whole or in part) for a restaurant whose primary business (defined as 10% or more of revenue) is the sale of poke or ceviche (the "Exclusive Use"). Notwithstanding the foregoing, such exclusive shall not apply to any lease currently executed or any sublease within said space. |
| Jersey Mike's Subs | Section 5.04 of the Lease dated August 5, 2015 provides in part: <br><br> Provided and for so long as Tenant remains free of default under the Lease beyond any applicable cure or grace period, and remains continuously open and operating as required under the Lease for at least Tenant's Minimum Hours of Operation and is operating as a Jersey Mike's Subs restaurant primarily for the Core Component [sale of hot and cold submarine sandwiches and deli sandwiches] of Tenant's Permitted Use, then Landlord agrees that after the Effective Date of the Lease, Landlord shall not enter into any new lease with any new tenant for premises within the Shopping Center having a use clause stating that such tenant shall be permitted to operate as a restaurant operating primarily for the sale of hot and cold submarine sandwiches and deli sandwiches (collectively, the "Exclusive Use"), including but not limited to the following such tenants: Firehouse Subs, Jimmy Johns, Larry's Giant Subs, Lenny's Subs, Schultzsky's Deli, Subway, Tom and Chee, and Which Wich. Notwithstanding, the Exclusive Use shall not apply to: (i) Any tenant in the Shopping Center with a lease than predates the Effective Date of this Lease, its successors and/or assignees; nor to (ii) Any tenant deriving twenty percent (20%) or less of its annual gross sales from sales of items within the Core Component of Tenant's Exclusive Use, nor to (iii) Any tenant in Shopping Center Building B or Building C with a premises 10,000 square feet or greater. |
| Kirkland's | Section 1.1 (Exclusive Use) of the Lease dated November 27, 2012 provides in part: <br><br> Except as otherwise set forth herein, Landlord agrees not to lease, let, use or permit to be used, any portion of the Center now or at any time during the Lease Term or any extension thereof to any entity or other party that operates or makes use of its premises for sale of wall décor and/or lighting ("Tenant's Exclusive Use"). Other tenants and occupants of the Center may sell such items if the sale of such items does not constitute a primary use (i.e., such items are sold in the lesser of fifteen percent (15%) of a tenant's or occupant's premises or wall space). Notwithstanding anything herein to the contrary, Tenant's Exclusive Use shall not apply to either (a) the retail store of any regional or national retailer occupying more than 12,000 square feet of Rentable Area in the Center or (b) a Pier 1 Imports retail store operated under the lease for space between Landlord and Pier 1 Imports as of the Effective Date so long as such retail store sells substantially the same items as those sold at typical, national retail stores operating under the name of Pier 1 Imports. Tenant's Exclusive Use right shall be a covenant that binds Landlord and shall be a restriction upon the Center that runs with the land. |
| Mattress Firm | Section 5.04 of the Lease dated February 20, 2013 provides in part: <br><br> Provided Tenant is not in default under this Lease beyond applicable notice and cure periods, and subject to the limitations set forth below, Landlord shall not enter into to any new lease with any future tenant having a use clause stating that such tenant shall be permitted to open and operate for the primary and principal purpose of the retail sale of mattresses or waterbeds (collectively, the "Exclusive Use"). For purposes of this Section 5.04, the term "primary use" as used herein shall mean more than twenty percent (20%) of a tenant's gross sales are derived from the retail sale of mattresses or waterbeds. Notwithstanding the foregoing, the Exclusive Use shall not apply to: (i) Any tenant of the Shopping Center with a lease that predates the Effective Date of this Lease, their successors, assignees, subtenants, and transferees, except to the extent Landlord has control of such pre-existing tenant's permitted use, Landlord shall not take any action adverse to Tenant's Exclusive Use; nor (ii) The parcel of land |

4552639-8 13370.001000
#4552639x6#<ATLANTA> - Barnes & Noble Panama City Beach, FL - Lease (y8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

| | |
|---|---|
| | designated on the Site Plan as "Not Part of Shopping Center"; nor (iii) Any tenant of occupant deriving twenty percent (20%) or less of its gross sales at the Shopping Center from the sale of mattresses and/or waterbeds; nor (iv) Any full-line furniture store (such as Haverty's); nor (v) Any tenant or occupant of a premises consisting of 20,000 square feet or more. |
| The Men's Wearhouse | Lease dated December 19, 2012<br><br>Section 20.04 of the Lease provides in part:<br><br>During the term of this Lease, so long as Tenant is operating the Premises solely for the use set forth in Section 4.01 hereof, Landlord shall not lease space in the Shopping Center to any tenant that uses a majority of its premises for the display and sale at retail of men's ready to wear suits, casual attire, accessories and shoes, or who uses their premises for the rental of men's formalwear and related accessories and shoes (the "Exclusive Use"). This provision shall not apply to the following: (i) any tenant or occupant that occupies at least fifteen thousand (15,000) square feet; (ii) any tenant that is permitted to use its premises for the Exclusive Use by operation of law, court order, bankruptcy, or similar action; (iii) any store owned or operated by Tenant, or Tenant's parent, affiliate, subsidiary, franchisee, franchisor, or franchisee of Tenant's franchisor; or (iv) TJ Maxx, Marshall's, or Ross Dress For Less.<br><br>Section 4.01(a) of the Lease provides in part:<br><br>Landlord will not lease space immediately adjacent to the Premises for a food use or for any other use that generates strong odors or smells detectable outside of such premises, provided such restriction shall not prevent Landlord for leasing such adjacent space to a yogurt shop or an ice cream shop or such other food use similar thereto that does not generate strong odors or smells detectable outside of such premises. |
| Michael's | Section 16.4 of the Lease dated October 27, 2011 provides in part:<br><br>Limitation on Use. Neither Landlord nor any entity controlled by Landlord will use, lease (or permit the use, leasing or subleasing of) or sell any space in or portion of the Shopping Center (other than the Premises) or any property contiguous to the Shopping Center (including, without limitation, any property that would be contiguous or adjacent to the Shopping Center but for any intervening road, street, alley or highway) owned or controlled now or at any time hereafter by Landlord or any affiliate of Landlord, to (i) any store that operates in a manner which is similar to or substantially the same as Tenant's Primary Business (as hereinafter defined), including by way of example, but not limited to, Garden Ridge, A.C. Moore, Ben Franklin, Joanne Fabrics, Joanne Etc, Hobby Lobby, Old America, Waccamaw/Home Place, Pat Catans, and MJDesigns, or (ii) any store rendering picture framing services. This Section 16.41 shall not apply to any lessee whose lease was fully executed on the Effective Date hereof and is identified on Exhibit I as an "Existing Lease Not Subject to Tenant's Exclusive," provided, however, that this exception shall not apply if (i) Landlord permits or agrees to an expansion of the premises for any such permitted use which violates Tenant's exclusive, or (ii) Landlord permits or agrees to the change of a permitted use by any such lessee or its successors or assigns, or (iii) Landlord permits or agrees to an assignment or sublease of such existing lease if Landlord may avoid the granting of such permission, or (iv) Landlord has the right, by virtue of the provisions of the existing lease, to cause said lessee to honor the exclusive granted to Tenant by giving said existing lessee notice of this exclusive or otherwise.<br><br>As used in this Lease, the term "Tenant's Primary Business" shall mean the sale of arts and crafts, art supplies, craft supplies, picture frames or picture framing services, framed art, artificial flowers and/or plants, artificial floral and/or plant arrangements, holiday themed décor, decorations and costumes, wedding or party goods (except apparel), scrapbooking/memory book store, or a store selling scrapbooking/memory book supplies, accessories, and/or decorations, or providing classes on any of the foregoing or any combination of the foregoing categories.<br><br>Lease Modification Agreement No. 2, dated March 27, 2013 provides in part:<br><br>Notwithstanding anything in this Lease to the contrary, Tenant hereby waives the exclusive use restrictions set forth in this Section 16.4.1 for the operation of a typical retail store by Ross Dress for Less, Inc. ("Ross"), as is operated by Ross as of the date of this Agreement, provided that for so long as this Lease is in effect neither Ross, nor any assignee(s) of the Ross lease, nor any sublessee(s) of all or any portion of the Ross premises shall operate in the Ross premises primarily as an Arts and Crafts store (as defined below), and no portion of the Ross premises shall be used for picture framing services. As used herein, Arts and Crafts Store means a store selling arts and crafts, art supplies, craft supplies, picture frames, framed art, artificial flowers and/or plants, |

4552659-8 13370.001000
#4552659v6#ATLANTA - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

| | |
|---|---|
| | artificial floral and/or plant arrangements, holiday themed décor, decorations and costumes, wedding goods (except apparel), party goods, scrapbooking/memory books, or scrapbooking/memory book supplies, accessories, and/or decorations or other paper crafting (e.g. making greeting cards, gift bags, tags, and other related or similar items) supplies, accessories and/or decorations associated with the foregoing, or providing classes on any of the foregoing or any combination of the foregoing categories.<br><br>This waiver is made for the sole and exclusive benefit of Ross and its related corporate affiliates for so long as it conducts business in the Shopping Center as a typical retail store of the type operated by Ross and its related corporate affiliates as of the date of this Agreement.  The provisions of this Section 16.4.1 of Exhibit C to the Lease shall not be deemed waived or modified in any way except as expressly provided herein.<br><br><u>Exhibit J of the Lease dated October 27, 2011 PROHIBITS in part:</u><br><br>temporary or seasonal stores which sell holiday (including without limitation, Christmas and/or Halloween) themed décor, decorations, costumes, artificial Christmas trees, Christmas lights, Christmas ornaments, and/or holiday themed party goods including without limitation, the following stores: Spirit Halloween stores, Always Christmas stores, and similar operations<br><br>restaurant or food use in-line with the Premises if within 150 feet of the perimeter of the Premises and in no event shall the Leasable Square Feet in the Shopping Center devoted to restaurants or food uses exceed ten percent (10%) of the Leasable Square Feet of the Shopping Center<br><br>non-retail use (which shall not prohibit in the Shopping Center such uses commonly referred to as "quasi-retail" or "service retail" such as a travel agency, real estate office, insurance agency, accounting service, etc., so long as same do not exceed ten percent (10%) of the Leasable Square Feet of the Shopping Center) |
| Orangetheory Fitness | <u>Section 5.04 of the Lease dated May 30, 2017 provides in part:</u><br><br>Provided that at all times after the Effective Date of this Lease Tenant remains continuously operating in the Premises for the Permitted Use, maintains Tenant's Minimum Hours of Operation, and otherwise remains free of Event of Default, then on such conditions Landlord agrees that after the Effective Date of this Lease it shall not enter into any new lease with any future retail tenant for premises in the Shopping Center having a permitted use clause that permits such retail tenant to operate for the primary purpose of a group personal training fitness studio (the "Exclusive Use"). Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any Shopping Center tenant with a lease that predate the date of Tenant's Lease, or its successors and/or assigns, nor (ii) Any tenant or occupant of a premises in the Shopping Center whose GLA is ten thousand (10,000) square feet or greater, their successors and assigns; nor (iii) Any Shopping Center tenant to whom the Exclusive Use otherwise is applicable, but derives twenty percent (20%) or less of its annual gross sales from the Exclusive Use. |
| PetSmart | <u>Lease dated February 21, 2013:</u><br><br><u>Section 31.B. of the Lease provides in part:</u><br><br>From and after the date hereof and continuing throughout the Term of the Lease, Tenant shall have the exclusive right in the Project to conduct any portion of Tenant's Primary Business described in clauses (i), (ii) and (iii) of Tenant's Primary Business set forth in Paragraph C of the Fundamental Lease Provisions ("Tenant's Exclusive"). Other tenants or occupants of the Project may sell items included in Tenant's Exclusive (other than the retail sale of animals and/or pet services), provided such items sold are "incidental" to such tenants' or occupants' primary use and the floor area dedicated to said "incidental" sales does not exceed the lesser of (i) five percent (5%) or (ii) 500 square feet.  Notwithstanding anything herein to the contrary, Tenant's Exclusive shall not apply to any national (meaning operating 50 or more stores in the continental United States) or regional (meaning operating 20 or more stores in Florida, Georgia and/or Alabama) full-line grocery store occupying 20,000 square feet or more of Gross Floor Area. In addition, Tenant's Exclusive shall not apply to any tenant or occupant listed on Exhibit I whose rights as of the date of this Lease are not subject to Tenant's Exclusive. The existing exclusive rights granted to tenants in existing leases are set forth in full in Exhibit I, and Tenant hereby agrees to be bound by each such exclusive. The name of those tenants or occupants with whom Landlord is currently negotiating leases and their proposed exclusives are set forth in Exhibit I and Tenant hereby agrees to be bound by such exclusive provided and so long as such future exclusive satisfies the requirements set forth in Article 6. |

4352859-8 13370.001000
#4352859v6«ATLANTA» - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 3OF40D46-6001-4064-BC39-99F5F80BFFD6

| | |
|---|---|
| | <u>Tenant's Primary Business</u>:  The retail sale of (i) pets (including but not limited to fish, birds, reptiles, dogs, cats and other small animals), (ii) food, accessories and other products relating to pets and animals, including equestrian products and apparel related thereto, (iii) services related to pets and animals, such as grooming, indoor boarding and pet day care, animal training and obedience classes, pet adoption and veterinary services, (iv) products relating to nature and the environment, (v) educational products and services related to any of the foregoing and (vi) office and storage uses incidental to the foregoing, subject to Paragraph 6A.<br><br><u>Section 31.A. of the Lease provides in part</u>:<br><br>Landlord and Tenant covenant and agree that none of the uses set forth in <u>Exhibit H, Part 1</u> (the "<u>Prohibited Uses</u>") shall be conducted within the Shopping Center, including the Premises, as applicable.<br><br><u>Exhibit H, Part 1</u> (in part) [*Note: #1 - #31 are the same as the Prohibited Uses in Exhibit I of this Lease*]<br><br>32.    dry cleaner (excluding [i] one (1) dry cleaner which does not use perchloroethylene or any other Hazardous Substances and [ii] one (1) facility for drop off and pick up of clothing cleaned at another location, provided neither of the foregoing uses shall be located within a two hundred (200) foot radius of the Premises);<br>33.    service station or any facility storing or selling gasoline or diesel fuel in or from tanks, except one (1) gas station may be located on an Outparcel provided it is operated in accordance with applicable governmental regulations;<br>34.    massage parlor (excluding one (1) "Massage Envy" or similar therapeutic massage retailer operating in a first-class manner, provided such use may not be located within a two hundred (200) foot radius of the Premises);<br>35.    sale of alcoholic beverages, whether or not packaged (excluding [i] the sale of alcoholic beverages in conjunction with the operation of a restaurant not prohibited under this Lease, and [ii] one (1) "Bevmo" or "Total Wine" or "Wine World", provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100 (as shown on <u>Exhibit A</u>), and [iii] Cost Plus World Market, and [iv] one (1) upscale wine bar provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100, and [v] one (1) craft brewery provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100;<br>36.    cinema or theater;<br>37.    spa within a space immediately adjacent to the Premises;<br>38.    health club, gym or exercise facility excluding one (1) of five thousand (5,000) square feet or less, provided such use must be located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100;<br>39.    children's recreational facility, virtual reality, laser tag, or jump/trampoline facility, unless located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100;<br>40.    gun range or shooting club;<br>41.    drive-throughs (unless located on an Outparcel);<br>42.    restaurants within a two hundred (200) foot radius of the Premises; and<br>43.    (i) office, medical and/or professional uses located within a two hundred (200) foot radius of the Premises; and (ii) office, medical, and/or professional uses occupying, collectively, more than ten percent (10%) of the Gross Floor Area of the Shopping Center; and (iii) any single office, medical, and/or professional use occupying more than two thousand five hundred (2,500) square feet of Gross Floor Area unless located on an Outparcel or in the In-Line Buildings located northwest of the drive aisle between building C180 and D100.<br><br>To determine whether a use otherwise prohibited within a specified radius of the Premises is in fact in violation of such radius restriction, the measurement taken shall be the distance from the building (from the point nearest the Premises) from which such alleged Prohibited Use is occurring to the point of the Premises closest to such building. To the extent this <u>Exhibit H, Part 1</u> expressly permits any of the Prohibited Uses to be conducted by a limited number of users, existing tenants or occupants listed on <u>Exhibit I</u> shall count toward such limit. |
| Rooms To Go | <u>Section 3.01 of the Reciprocal Easement Agreement, dated April 23, 2013 provides in part</u>:<br><br>So long as the RTG Parcel is being used for the operation of a Rooms To Go furniture store (or its successor, transferee, or assign furniture or home furnishings store), no part of the Project other than the RTG Parcel shall be leased or sold to an occupant who either (x) uses two thousand (2,000) square feet or more of its gross leasable floor area for the sale or lease of furniture, home furnishings, lighting, accessories or |

B-21

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

| | |
|---|---|
| | mattresses (collectively, subject to the exclusions set forth below, "Protected Items"), or (y) derives more than ten percent (10%) of its total sales revenue from Protected Items; provided, however, the following occupants and uses (and no others) shall be deemed to be excepted from Protected Items: (1) sales of office furniture and patio furniture, (2) Warehouse Clubs such as Costco and Sam's and Department Stores and Discount Department Stores such as J.C. Penney and Wal-Mart, (3) home goods and home accessories specialty stores similar to Bed, Bath and Beyond, Kirkland's, Pier 1, Cost Plus, Pottery Barn, Crate and Barrel, Restoration Hardware, (4) Haverty's, (5) "high end" furniture retailers, such as Z Gallerie and Ethan Allen, (6) mattress stores not located within the area depicted on the Site Plan as the "No Mattress Store Area", and (7) arts and crafts specialty stores such as Michaels. |
| Ross Dress For Less | Lease dated August 5, 2013 |
| | Section 1.5.3 of the Lease provides in part: |
| | Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use more than fifteen thousand (15,000) square feet of Leasable Floor Area of its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use its premises for the sale of whole bean and ground coffee, except for sales conducted by (i) Existing Tenants, (ii) supermarkets, grocery, convenience or drug stores, (iii) tenants or occupants leasing more than three thousand (3,000) square feet of Leasable Floor Area in the Shopping Center, (iv) tenants or occupants with less than one thousand (1,000) locations in the United States as of the Effective Date, (v) a retailer who obtains the majority of its revenue from the sale of donuts, bagels, bakery goods, smoothies or sandwiches; (vi) Caribou Coffee or Peet's Coffee & Tea, or (vii) specialty retailers like Dunkin' Donuts, Tim Horton's or McDonald's whose focus or primary use is not the sale of coffee. For purposes of this Section 1.5.3, "Off Price Sale" shall mean the sale of merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's every day price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, A.J. Wright, Filene's Paredes, Nordstrom Rack, Goody's, Factory 2U, Burlington Coat, Steinmart, Filene's Basement, Gordmans and Bealls Outlet.) Notwithstanding the foregoing, a maximum of two (2) tenants who occupy at least fifteen thousand (15,000) square feet of Leasable Floor Area in the Shopping Center other than Tenant, including Existing Tenants, shall be permitted to use their premises for the Off Price Sale of merchandise. The foregoing use restrictions shall not prohibit value price retail tenants such as Old Navy and Rue 21 nor apply to Existing Tenants as provided below. … The foregoing use restrictions shall not apply to the Existing Tenants of the Shopping Center listed on Exhibit K who are occupying their premises in the Shopping Center pursuant to leases or occupancy agreements executed prior to the Effective Date, to the extent Landlord does not have the right, pursuant to such existing lease or occupancy agreement to restrict the use of the premises of the Existing Tenant. However, if Landlord has the right of consent to any change in use of the premises occupied by an Existing Tenant or if Landlord subsequently owns or controls the premises occupied by an Existing Tenant, Landlord shall not permit any use in such premises in violation of the use restrictions set forth in this Section 1.5.3. |
| | Section 3.2.1 of the Lease provides in part: |
| | (a)  General. |
| | Tenant has entered into this Lease in reliance upon representations by Landlord that the Shopping Center is and shall remain retail in character, and, further, except as provided in Section 3.2.1(b) below, no part of the Shopping Center shall be used for office or residential purpose or as a theater, auditorium, meeting hall, school, church or other place of public assembly, "flea market," mortuary, gymnasium, veterinary services or pet vaccination clinic or overnight stay pet facilities (except as an incidental use in conjunction with the operation of a pet store retailer, provided such pet store retailer is not located within two hundred (200) feet of the front and side perimeter walls of the Store), health club, dance hall, billiard or pool hall (except as an incidental use inside a permitted restaurant), massage parlor, video game arcade (other than video games ancillary to and operated within a permitted restaurant), bowling alley, skating rink, car wash, facility for the sale, display, leasing or repair of motor vehicles, night club, on-premises consumption of alcoholic beverages except as incidental to a primarily restaurant use, or except as incidental to a retailer that sells wine and/or other alcoholic beverages and offers "tasting" events from time to time for customers and invitees (such as Total Wine or Fresh Market), Internet café, the sale of adult products or adult bookstores or adult audio/video products stores (which are defined as stores in which at least ten percent (10%) of the inventory is not |

B-22

DocuSign Envelope ID: 3DF40D46-6001-40B4-BC39-99F5F80BFFD6

available for sale or rental to children under the age of majority in the state in which the Store is located because such inventory explicitly deals with or depicts human sexuality).

No ATM or similar machine shall be permitted in the Shopping Center within one hundred (100) feet of the front and side perimeter walls of the Store, except if located wholly within the interior of another tenant's or occupant's premises.

No tenant or occupant of the Shopping Center, other than Tenant, electronics stores (such as Best Buy or GameStop), or book stores (such as Barnes and Noble), shall be permitted to use one thousand five hundred (1,500) square feet or more of Leasable Floor Area of its premises primarily for the rental or sale of prerecorded audio or video merchandise or electronic games software and technological evolutions thereof. With the exception of (i) Existing Tenants (as defined below), (ii) supermarkets, grocery, convenience or drug stores, (iii) tenants or occupants leasing more than five thousand (5,000) square feet of Leasable Floor Area in the Shopping Center, (iv) tenants or occupants with less than one thousand (1,000) locations in the United States as of the Effective Date, (v) a retailer who obtains the majority of its revenue from the sale of donuts, bagels, bakery goods, sandwiches or sandwiches, (vi) Caribou Coffee or Peet's Coffee & Tea, or (vii) specialty retailers like Dunkin' Donuts, Tim Horton's or McDonald's whose focus or primary use is not the sale of coffee, Landlord shall not permit any tenant or occupant of the Shopping Center, other than Tenant, to use its premises for the sale of whole bean and ground coffee.

Further, no restaurant or other "High Intensity Parking User" (as hereinafter defined) shall be permitted in the Shopping Center within two hundred thirty (230) feet of the front and side perimeter walls of the Store. A "High Intensity Parking User" is a tenant or occupant whose use requires more than five (5) parking spaces per one thousand (1,000) square feet of Leasable Floor Area in accordance with either customary shopping center practices or governmental regulations, whichever has a higher parking requirement. The foregoing use restrictions are referred to herein as the "Ross Prohibited Uses."

(b)    Exceptions.

The Ross Prohibited Uses set forth in Section 3.2.1(a) above shall not apply to those tenants or occupants of the Shopping Center listed on **Exhibit K** who, in accordance with the terms of existing leases or occupancy agreements in effect on the Effective Date ("Existing Tenants"), cannot be prohibited from so operating, but only for the balance of the term(s) of such existing lease(s) or occupancy agreement(s). Landlord covenants and agrees that if Landlord has the right to consent to a change in use of the premises occupied by any such Existing Tenant, Landlord shall not consent to a change in use of the premises which violates the Ross Prohibited Uses.

Notwithstanding the prohibition on offices set forth in Section 3.2.1(a) above, retail service offices such as full service banks, real estate brokers and title companies, shall be permitted provided that (A) retail service offices in the aggregate do not exceed ten percent (10%) of the total Leasable Floor Area of the Shopping Center, (B) except for the spaces designated as "E100," or "Outparcel D" on **Exhibit B**, no single retail service office shall be greater than one thousand five hundred (1,500) square feet of Leasable Floor Area, and (C) except for an optical store (or a retail or retail service office replacement tenant therefor operating in the same space as the optical store), which may be located no closer than one hundred (100) feet of the front and side perimeter walls of the Store, no retail service offices may be located within two hundred (200) feet of the front and side perimeter walls of the Store.

Notwithstanding the prohibition on massage parlors set forth in Section 3.2.1(a) above, one (1) first-class massage service provider, such as Massage Envy, typically found in retail shopping centers similar to the Shopping Center, shall be permitted provided that such massage provider (A) shall not be larger than three thousand (3,000) square feet of Leasable Floor Area, and (B) may not be located within two hundred (200) feet of the Store.

Notwithstanding the prohibition on veterinary services or pet vaccination clinic or overnight stay pet facilities (except as an incidental use in conjunction with the operation of a pet store retailer, provided such pet store retailer is not located within two hundred (200) feet of the front and side perimeter walls of the Store) set forth in Section 3.2.1(a) above, such uses shall be permitted by PetSmart (or a replacement Anchor Tenant for PetSmart that is a pet store retailer, such as Petco), in the space occupied by PetSmart as shown on **Exhibit B**, which Tenant acknowledges is within two hundred feet (200') of the front and side perimeter walls of the Store.

Section 1.10 of the Lease (Site Plan) provides in part:

The Inline Buildings depicted on **Exhibit B**, when built, shall contain no more than

B-23

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

| | one (1) story (but mezzanines having Leasable Floor Area not in excess of one-third (1/3) of the occupant's ground floor Leasable Floor Area, when not used for selling purposes, shall be permitted).  The highest point of any exterior elevation of any building in the Control Area (including architectural features and rooftop equipment) shall not exceed twenty-eight (28) feet in height (or twenty-six (26) feet in height if excluding architectural features and rooftop equipment) measured from the finished floor elevation of Tenant's Store. |
|---|---|
| Sally Beauty Supply | Section 5.04 of the Lease dated August 15, 2013 provides in part: |
| | Provided no default by Tenant in the payment of Minimum Rent is occurring beyond any applicable notice and cure period and Tenant is operating its business in the Premises for the primary and principal purpose of the sale of beauty supplies, including human or synthetic hair, wigs and/or hair extensions (collectively, the "Exclusive Use"), Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the Exclusive Use. Notwithstanding, Tenant's Exclusive Use shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease, its successors and/or assigns; nor (ii) Any premises in the Shopping Center consisting of ten thousand (10,000) or more square feet; nor (iii) Any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving twenty-five percent (25%) or less of its annual gross sales from the sale of Exclusive Use items, such as a beauty salon or a bath and body store, shall not be deemed in violation of this provision); nor (iv) National tenants operating stores such as or similar to Ulta and Sephora and MAC. |
| Shoe Carnival | Lease dated January 14, 2013 |
| | Section 5.01 of the Lease provides in part: |
| | A)  As a material inducement to Tenant to enter into this Lease and during the entire Term of this Lease, provided Tenant is open and operating at the Shopping Center (excluding Permitted Closures and temporary closures for repairs and remodeling [temporary closures for remodeling not exceeding ninety (90) days in duration]), subject to the express limitations in paragraph "B" below, Tenant shall have the exclusive right within the Shopping Center to sell footwear (herein, the "Exclusive Use"). |
| | B)  The Exclusive Use shall not apply to: (i) tenants with leases dated prior to November 9, 2011 which have the express right to sell footwear per the terms of their lease or which have the right to operate for any lawful use (all of which are identified in Exhibit F attached to this Lease); (ii) incidental sales of footwear by (a) Bed, Bath & Beyond, (b) Pier 1 Imports or its affiliates, but not any unaffiliated assignee or subtenant under the Pier 1 Imports lease, (c) tenants occupying at least 25,000 square feet, and (d) tenants occupying less than 20,000 square feet whose primary business is the retail sale of fashion and apparel merchandise; (iii) sales of footwear by tenants occupying at least 20,000 square feet whose primary business is the retail sale of fashion and apparel merchandise (by way of example only: Ross Dress for Less, TJ Maxx, Marshall's, Bealls, Stein Mart); (iv) stand-alone out parcel tenants, provided such tenants do not operate primarily for the sale of footwear; (v) one (1) sporting goods store, (vi) one (1) specialty, full price, full service footwear retailer and one (1) non-branded, discount footwear retailer anywhere in the Shopping Center other than "Building E" of the Shopping Center (as designated on the Site Plan), provided in either case such tenant does not operate primarily for the sale of athletic footwear, does not occupy more than 3,200 square feet, and is located at least two hundred feet from the Premises; and (vii) tenants occupying not more than 3,200 square feet whose premises are located within "Building E" of the Shopping Center provided such tenants do not operate primarily for the sale of athletic footwear. The phrase "incidental sales" shall mean the lesser of ten (10%) percent of such tenant's sales floor area or 3,000 square feet is used for the sale/display of footwear. |
| | Section 15.10 of the Lease provides in part: |
| | In no event shall (a) any portion of the Shopping Center be used for the Prohibited Uses identified in Exhibit I attached to this Lease, or (b) a restaurant or any service uses (i.e., any use which does not sell merchandise at retail) be located immediately adjacent to the Premises. |
| Sweet Frog Frozen Yogurt | Section 5.04 of the Lease dated March 11, 2014, as amended by Renewal Option Exercise/Amendment of Lease dated March 18, 2022 (countersigned by Tenant March 24, 2022), provides in part: |
| | Provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of the sale of frozen yogurt (the "**Exclusive Use**"), Landlord agrees that it shall not lease space in the area of the Shopping Center designated as "**Exclusive Area**" on the Site Plan |

4552859-8 13370.001000
#4552859v8^ATLANTA^ - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6D01-4064-BC39-99F5F60BFFD6

| | |
|---|---|
| | to any future tenant for the primary and principal purpose of the Exclusive Use. In addition, provided no Event of Default by Tenant is occurring and Tenant is continuously operating its business in the Premises for the primary and principal purpose of the sale of the Exclusive Use, Landlord agrees that it shall not lease space in the Shopping Center to any future tenant for the primary and principal purpose of the retail sale of ice cream or similar frozen desserts, other than gelato, Italian ice and smoothies (the "**Restricted Uses**"). Gelato, Italian ice, and smoothies, whether individually or in any combination thereof, shall not be considered part of the Restricted Use for purposes of this provision. Hereinafter, the Exclusive Use and the Restricted Uses set forth above are collectively referred to as "**Tenant's Use Restrictions**". <br><br> Section 5.04 of the Lease dated March 11, 2014, provides in part: <br><br> Notwithstanding, except as otherwise set forth below, Tenant's Use Restrictions shall not apply to: (i) Any tenant with a lease that predates the date of Tenant's Lease ("**Existing Tenant**"), whose trade name is provided on **Exhibit J** attached hereto, or its successors and/or assigns, provided however, Landlord shall not permit or agree to the change of a permitted use by any such tenant or its successors and/or assigns to a use which violates Tenant's Use Restriction if Landlord has the right, by virtue of the provisions of the existing lease, to withhold such permission or agreement, nor (ii) As to the Exclusive Use only, any Premises not located within the Exclusive Area; nor (iii) Any premises consisting of ten thousand (10,000) or more square feet, nor (iv) Any restaurant tenant or any other tenant that does not operate primarily for the purpose of Tenant's Use Restrictions (i.e., a tenant deriving ten percent (10%) or less of its annual Gross Sales from the Exclusive Use or the Restricted Uses shall not be deemed in violation of this provision). |
| Texas Roadhouse | Section 12(b) of the Lease dated June 5, 2014, provides in part: <br><br> Provided Tenant is not in default of this Lease beyond any applicable cure period and is open and operating the Premises as a "Texas Roadhouse" restaurant or such other full service sit-down restaurant approved by Landlord (such approval not to be unreasonably withheld) that specializes primarily in steaks and ribs, Landlord agrees that it shall not sell, lease or otherwise allow the occupation, use or operation of any portion of the Shopping Center as a full service restaurant primarily specializing in steaks and ribs, or for the advertisement of any such restaurant while this Lease is in full force and effect (the "**Restricted Uses**"). Notwithstanding, the aforesaid Restricted Uses shall not apply to: (i) The Rooms To Go parcel adjacent to the Shopping Center (identified as "Not Part of Shopping Center" on **Exhibit A** attached hereto) which Landlord does not own or control), nor (ii) Any tenant of the Shopping Center with a lease that predates the date of Tenant's Lease, or its successors and/or assigns, provided however, Landlord shall not permit or agree to the change of a permitted use or assignment of lease by any such tenant or its successors and/or assigns to a use which violates the Restricted Uses if Landlord has the right, by virtue of the provisions of the existing lease, to withhold such permission or agreement, nor (iii) Any tenant that does not operate primarily for the purpose of the Restricted Uses (i.e., a tenant deriving twenty-five percent (25%) or less of its annual Gross Sales from the sale of steaks and ribs shall not be deemed in violation of this provision), nor (iv) A Chili's Grill and Bar restaurant. |
| UBREAKIFIX | Section 5.04 of the UBREAKIFIX Lease dated June 22, 2021 provides in part: <br><br> During the term of this Lease, provided that Tenant is not in default of the Lease and provided Tenant is operating according to the Permitted Use, in no event shall Landlord lease any space in the Shopping Center to a tenant who intends to use such space (in whole or in part) for the repair of electronics (the "Exclusive Use"). Notwithstanding the foregoing, such exclusive shall not apply to: a) any lease currently executed or any sublease within said space, except in the event such current lease or sublease requires Landlord's approval to a change in use that would violate the Exclusive Use, or b) any current or future lease larger than 5,000 square feet, except in the event such current lease requires Landlord's approval to a change in use that would violate the Exclusive Use. |
| Ulta | Section 5.4 of the Lease dated October 13, 2016 provides in part: <br><br> Tenant shall have the exclusive right ("**Tenant's Exclusive**") to conduct any portion of Tenant's Protected Uses in the Shopping Center, and all other tenants or other occupants of any portion of the Shopping Center shall be prohibited from engaging in any portion of Tenant's Protected Uses for so long as Tenant is operating any portion of Tenant's Protected Uses in the Premises (excepting Permitted Closures). Notwithstanding the foregoing, Tenant's Exclusive shall not apply to uses associated with (a) existing tenants in the Shopping Center who are as of the Effective Date entitled to sell such products and/or provide the services that are covered by Tenant's |

4552659-8 13370.001000
#4552659v6\<ATLANTA\> - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

exclusive rights pursuant to their respective leases and, except to the extent Landlord has any control thereover, their respective assignees, subtenants and licensees, (b) any national retail tenant in excess of twenty-five thousand (25,000) square feet that sells the goods and/or provides the services that are covered by Tenant's exclusive rights as a part of its normal business operations, but not as its primary use, (c) incidental sales (i.e., less than five hundred (500) square feet total of such tenant's premises is used to sell any of the products that comprise Tenant's Protected Uses), (d) therapeutic massage therapy stores (such as Massage Envy or Hand & Stone); provided such operators do not sell any products that comprise Tenant's Protected Uses in excess of the incidental sales carve-out set forth in clause (c) above, (e) hair removal services, (f) cosmetic plastic surgery services, (g) a nail salon, or (h) value-oriented unisex or male-oriented hair care salons (such as, by way of example only, Sport Clips, Super Cuts, Great Clips or Fantastic Sam's).

"**Tenant's Protected Uses**" shall mean (i) the retail sale of cosmetics, fragrances, health and beauty products and accessories, hair care products and accessories, personal care appliances, skin care products, and body care products; and (ii) the operation of a full service beauty salon. The term "full service beauty salon" for purposes of this Section shall be defined as the offering of any of or a combination of the following services: hair care (including, without limitation, cutting, styling, hair treatments, highlighting, tinting, coloring, texturizing, smoothing and hair extensions); facials; esthetician services; skin care services (skin treatments for face and body); beauty treatments/services; hair removal (including, without limitation, waxing, threading and tweezing for face and body); eye lash extension services; nail services; and therapeutic massage.

Section 5.3 of the Lease provides in part:

The Prohibited Uses set forth in Exhibit E hereto shall be prohibited throughout the Shopping Center. Additionally, the following "**Restricted Uses**" shall not be permitted within the area identified on the Site Plan as the Restricted Area ("**Restricted Area**"): drive-through; children's recreational, educational or day-care facilities; restaurants occupying more than 2,800 square feet of Gross Floor Area; schools of any kind; non-retail office uses (except small offices located within retail stores and incidental to such retail uses); health clubs or exercise facilities (except one (1) health club or exercise facility operating in not more than 3,500 square feet of Gross Floor Area); and professional uses. It is the intent of this Section 5.3 that the Shopping Center shall be devoted to high quality retail uses and "retail" offices typically found in first-class shopping centers (e.g. real estate offices, financial services, insurance agencies and dental and medical offices) and that the parking and the other common facilities shall not be burdened by either excessive or protracted use. Notwithstanding the foregoing, such Prohibited Uses and Restricted Uses shall not apply to existing tenants in the Shopping Center (or their respective assignees, subtenants or licensees) who are not subject to such Prohibited Uses and Restricted Uses pursuant to their respective leases, or any renewals or extensions thereof; provided, however, if Landlord has the right to approve or consent to a change of use thereunder in connection with an assignment, subletting or otherwise, Landlord shall enforce the foregoing restrictions in exercising such rights. Further notwithstanding the foregoing, such Prohibited Uses and Restricted Uses shall not apply to a replacement of The Craft Bar (the existing restaurant tenant in the premises located immediately adjacent to the Premises and identified on the Site Plan as space "C170") with another restaurant located solely within The Craft Bar premises (for example, a new restaurant tenant that replaces an existing restaurant in the space currently leased to The Craft Bar, and located solely within such space, does not violate the terms of this Section 5.3 even though such new restaurant is operated pursuant to a new lease).

Exhibit E of the Lease provided in part:

The following uses (collectively referred to as "**Prohibited Uses**" and individually as a "**Prohibited Use**") are prohibited during the Term in any portion of the Shopping Center: a nuisance; use causing loud noises or offensive odors; any use that produces excessive noise and/or vibrations that can be heard and/or felt in the Common Areas and/or the Premises; manufacturing facility; dry cleaner (except facilities for drop off and pick up of clothing cleaned at another location); automobile repair shop or service station or any facility storing or selling gasoline or diesel fuel in or from tanks; used clothing or thrift store or liquidation outlet, except for national consignment and/or outlet stores such as Plato's Closet, Kid to Kid, Talbot's Outlet Chico's or Gap Outlet; massage parlor (excluding a first-class therapeutic massage operation such as Massage Envy or Hand & Stone Massage); adult book shop or adult movie house; mortuary or funeral parlor; coin operated laundry; cocktail lounge, bar or tavern, except in conjunction with a restaurant permitted hereunder; night club; cinema or theater; place of recreation (including, but not limited to, bowling alley, skating rink, carnival, game arcade, swimming pool, hot tub, or gymnasium); church; professional uses; a school of any nature (including a beauty school, barber's college, reading room, place of instruction or any other operation serving primarily students or trainees

4552059-8 13370.001000
#4552059v8^ATLANTA^ - Barnes & Noble Panama City Beach, FL - Lease (v8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

| | |
|---|---|
| | rather than retail customers, provided, however, this prohibition shall not be applicable to on-site employee training by a tenant incidental to the conduct of its business at the Shopping Center), and any other use inconsistent with the operation of a high quality retail shopping center; |
| Wave Beach Store | Section 5.04 of the Wave Beach Store Lease dated February 15, 2022, provides in part: <br><br> During the Term of this Lease, provided that Tenant is not in default of the Lease and provided Tenant is operating according to the Permitted Use, in no event shall Landlord lease any space in the Shopping Center to a tenant who intends to use such space (in whole or in part) for a business whose primary business (defined as 25% or more of revenue) is the sale of souvenir related items (the "Exclusive Use"). Notwithstanding the foregoing, such exclusive shall not apply to any lease currently executed or any sublease within said space nor any tenant whose space is greater than 5,000 square feet. |
| Wine World | Section 5.04 of the Lease dated December 20, 2013 provides in part: <br><br> Provided Tenant at all times remains continuously open and operating as required under this Lease in 100% of the Premises for the Permitted Use and specifically provided Tenant operates as a retail store selling wine, liquor and beer, similar to other Wine World operations, and provided Tenant otherwise remains free of any Event of Default, then subsequent to the Effective Date of this Lease, Landlord shall not enter into any new lease with any new tenant for premises in the Shopping Center having a use clause stating that such tenant shall be permitted to operate primarily as a retail store selling wine, liquor and beer (the «Exclusive Use»), such as but not limited to Total Wine. Notwithstanding anything in this Lease to the contrary, the Exclusive Use shall not apply to : (i) The Rooms To Go outparcel which is not part of the Shopping Center; nor (ii) Any tenant with a lease that predates the date of Tenant's Lease, or such tenant's successors and/or assigns; provided, however, Landlord shall not permit or agree to the change of a permitted use by any such tenant or its successors and/or assigns to a use which violates Tenant's Exclusive Use if Landlord has the right, by virtue of the provisions of such existing lease, to withhold such permission or agreement; nor (iii) Any retail store operating primarily as a grocery store even if such grocery store sells beer, wine and/or liquor, such as Fresh Market; nor (iv) Any retail store that operates for some other retail use but also sells beer, wine and/or liquor in conjunction with such other retail use, such as Cost Plus World Market; nor (v) Any upscale craft brewery. |
| Zoes Kitchen | Section 5.04 of the Lease dated September 8, 2014 provides in part: <br><br> Provided no default by Tenant is then occurring and provided Tenant is operating as a fast casual restaurant featuring a menu which includes kabobs, Mediterranean style pita sandwiches, and hummus (collectively, the "Exclusive Use"), during the Term of this Lease, Landlord shall not lease space in the Shopping Center to the following fast-casual restaurants operating under the listed trade names: Panera, Cosi, Fadi's, Piperi, Little Greek, Corner Bakery, Tunkis, Roti, Garbanzos, Daphnes, McAlister's Deli, Chicken Salad Chick, Urban Cookhouse, Newk's, Lyfe Kitchen, Protein Bar, ModMarket, Tender Greens or Jason's Deli (collectively, the "Restricted Tenants") or to any other restaurant whose menu features the following items: kabobs, Mediterranean style pita sandwiches or hummus, for sale in a fast-casual format (the "Exclusive Use").  Notwithstanding, the Exclusive Use shall not apply to: (i) any tenant with a lease that predates the date of Tenant's Lease; nor (ii) any tenant that does not operate primarily for the purpose of the Exclusive Use (i.e., a tenant deriving fifteen percent (15%) or less of its annual gross sales from sales of Exclusive Use items in a fast casual format; nor (iii) sales of any individual Exclusive Use item that Tenant ceases to sell in the Premises; nor (iv) any fast food restaurant (like Taco Bell); nor (v) any tenant occupying over 10,000 square feet. <br><br> Section 6 of the Fourth Amendment of Lease Agreement dated March 24, 2022, provides: <br><br> Effective upon the commencement of Tenant's Work Period [*for Tenant's CAVA Remodel Work*] Section 5.04 of the Original Lease, captioned Exclusive Use, shall be deemed modified to delete the first paragraph thereof and replace it with the following: "Provided no default by Tenant is then occurring and provided Tenant is operating as a fast casual Mediterranean food restaurant whose menu includes primarily Mediterranean style specialty bowls, pita sandwiches and/or hummus (collectively, the "Exclusive Use"), during the Term of this Lease, Landlord shall not lease space in the Shopping Center to any other fast-casual format restaurant whose menu features primarily items within the Exclusive Use.  Notwithstanding the foregoing, the Exclusive Use shall not apply to: (i) any tenant with a lease that predates the date of the Original Lease; nor (ii) any tenant that does not operate primarily for the purpose |

B-27

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F60BFFD6

| | of the Exclusive Use (i.e., a tenant deriving fifteen percent (15%) or less of its annual gross sales from sales of Exclusive Use items in a fast casual format; nor (iii) sales of any individual Exclusive Use item that Tenant ceases to sell in the Premises; nor (iv) any fast food restaurant (like Taco Bell); nor (v) any tenant occupying over 10,000 square feet; nor (vi) the Shopping Center tenant d/b/a Island Fin Poke Co., its successors and assigns, in space D-175 operating as a Hawaiian poke and ceviche restaurant." |
|---|---|

B-28

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

**Bed, Bath & Beyond – Exhibit L**

Exhibit L

Prohibited Uses

As used in this Lease, the term "***Prohibited Uses***" shall mean any of the following uses:

A.    As to the Shopping Center, including the Premises (except as otherwise set forth below), any of the following uses:

(1)    Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;

(2)    Any operation primarily used as a storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;

(3)    Any "second hand" store, "surplus" store other than the type operating in first-class shopping centers (such as Play It Again Sports, as such store is operated on the Effective Date);

(4)    Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);

(5)    Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(6)    Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, fictitious going-out-of-business sale, lost-our-lease sale or similarly advertised event (provided that if any such use is conducted by a third party in violation of the tenant's lease, then Landlord's only obligation shall be to use commercially reasonable efforts to prevent the same);

(7)    Any central laundry, dry cleaning plant, or laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted, so long as its on-site premises are located more than 150 feet away from the Premises);

(8)    Any automobile, truck, trailer, boat, or recreational vehicle sales, leasing, display or body shop repair operation;

(9)    Any bowling alley or skating rink;

(10)    Any live performance theater, auditorium, meeting hall, sporting event, or other similar intensive parking entertainment uses;

(11)    Any living quarters, sleeping apartments, or lodging rooms;

(12)    Any veterinary hospital or animal raising or boarding facilities (except to the extent permitted below and except as permitted in conjunction with the operation of a pet store such as PetCo or PetSmart or other similar pet store occupying more than 9,000 square feet);

(13)    Any mortuary or funeral home;

(14)    Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Books A Million and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder], or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or massage parlor [except for therapeutic massages given in connection with the operation of a day spa or health club or chiropractor which may otherwise be permitted under this Exhibit L];

(15)    Any so-called "head shop", or other establishment primarily selling or exhibiting drug-related paraphernalia;

(16)    Any bar, tavern, or other establishment selling alcoholic beverages for on- or off-premises consumption; provided, however, (i) Tenant shall be permitted to sell, on an incidental basis, alcoholic beverages for off-premises

B-29

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

consumption and on-premises tastings, subject to applicable Legal Requirements and (ii) the foregoing shall not prohibit a first-class wine bar, wine or liquor store, and/or first class micro-brewery type establishment (by way of example, Total Wine, Wine World, Brew House or Brass Tap), provided same are located at least 150 feet from the closest demising wall of the Premises.

(17)      Any catering or banquet hall;

(18)      Any flea market, amusement or video arcade (except the foregoing shall not prohibit videos games as an incidental part of another tenant's business operation), pool or billiard hall, night club, discotheque, or dance hall, provided the foregoing shall not prohibit a Dave & Buster's type amusement operation so long as same is located in the "**Permissible Use Area**" designated on Exhibit B;

(19)      Any training or education facility, including but not limited to:  beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers, provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center;

(20)      Any gambling facility or operation, including but not limited to:  off-track or sports betting parlor; table games such as black-jack or poker; slot machines; video poker/black-jack/keno machines or similar devices, or bingo hall.  Notwithstanding the foregoing, this prohibition shall not apply to governmental sponsored gambling activities, or charitable gambling activities, so long as such governmental and/or charitable activities are incidental to the business operation being conducted by the Occupant;

(21)      Any unlawful use;

(22)      Any pawn shop, check-cashing store, gun shop, or tattoo parlor except one first class check cashing store such as Amscot shall be permitted;

(23)      Any church or other place of religious worship;

(24)      Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube oil change service, tire center or gasoline or service station or facility, except to the extent located on an "**Outparcel**" (as indicated on Exhibit B hereto) other than the "**Restricted Outparcel**" (as indicated on Exhibit B hereto) and except in conjunction with the operation of a typical warehouse club such as Costco or a grocery store such as Publix but only if such facility is located in front of the warehouse club or grocery store or if the warehouse club or grocery store is located in "**Future Pad**" (as indicated on Exhibit B hereto), only if such facility is located no closer to the Premises than Outparcel E;

(25)      Any carnival, amusement park or circus;

(26)      Any medical clinics except that medical offices and medical clinics of the type operated in first class shopping centers, of not more than 7,500 square feet in the aggregate, may be located within the Allowed Area (as indicated on Exhibit B hereto) (provided that in no event shall any so-called methadone clinics, blood banks, or drug or alcohol treatment or rehabilitation centers be located within the Shopping Center);

(27)      Any supermarket or boutique-type food store (such as, by way of example, Zagara's, Whole Foods, Fresh Fields, or Wild Oats), provided that the foregoing shall not prohibit such store within the "**Permissible Use Area**" (as indicated on Exhibit B hereto) except that an upscale, boutique-type food store shall be permitted to be located within the Premises or within the premises shown on Exhibit B as "Dick's" or within the Permissible Use Area);

(28)      Any office use, other than: (x) office space used in connection with and ancillary to a permitted retail use hereunder, and (y) retail or medical offices providing services commonly found in similar first-class shopping centers in the Panama City, Florida metropolitan area (for example, financial services, real estate brokerage, insurance agency, banking, travel agency), provided that such uses are located at least 150 feet away from the Premises, and not more than fifteen thousand (15,000) square feet of Floor Area in the Shopping Center, in the aggregate, shall be devoted to such uses;

(29)      hotel/motel;

(30)      daycare center except one (1) daycare center shall be permitted in the Shopping Center, provided such daycare center shall contain no more than 4,500 square feet of Floor Area and shall be located only on an Outparcel (other than the "Restricted Outparcel");

(31)      veterinary office, except as may be incidental to a permitted full-line pet and pet supply store operating in at least 9,000 square feet of Floor Area and located at least 100 feet away from the Premises (except that a full-line pet and pet supply store shall be permitted to be located within the Premises); such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from in front of the Premises; no pet or pet supply store shall be located within 100 feet of the Premises;

(32)      children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's"), provided that the foregoing shall not prohibit such facility within the "Permissible Use Area";

(33)      karate center;

B-30

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

(34)    movie theater, provided that the foregoing shall not prohibit such use within the "Permissible Use Area";

(35)    restaurant serving meals for on- or off-premises consumption, provided the foregoing shall not prohibit such use if same is located at least 150 feet from the closest demising wall of the Premises;

(36)    beauty parlor or nail salon, provided the foregoing shall not prohibit such use if same is located at least 100 feet from the closest demising wall of the Premises;

(37)    health spa, exercise facility or similar type business, provided that the foregoing shall not prohibit such store or business within the "Permissible Use Area"; or

(38)    a store primarily selling merchandise which is classed as "odd lot," "close out," "clearance," "discontinued," "cancellation," "second," "factory reject," "sample, "floor model," "demonstrator," "obsolescent," "over stock," "distressed," "bankruptcy," "fire sale" or "damaged", such as, for example, "Grossman's Bargain Outlet", "Contractor's Warehouse", "Big Lots", "Liquidation World", or "Odd Job"; provided that the retailers commonly known as "Christmas Tree Shops" and "Costco" and similar warehouse clubs shall be deemed not to violate the foregoing restriction.

B.      As to Related Land, any of the uses listed in Items 1, 2, 4, 5, 14, 15, 21, 22, and 25 above.

4352859-8 13370.001000
#4352859v8<ATLANTA> - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 30F40D46-6001-4064-BC39-99F5F80BFFD6

Cost Plus World Market – Exhibit L

Exhibit L

Prohibited Uses

As used in this Lease, the term "**Prohibited Uses**" shall mean any of the following uses:

A.    As to the Shopping Center, including the Premises (except as otherwise set forth below), any of the following uses:

(1)    Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;

(2)    Any operation primarily used as a storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;

(3)    Any "second hand" store, "surplus" store other than the type operating in first-class shopping centers (such as Play It Again Sports, as such store is operated on the Effective Date);

(4)    Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);

(5)    Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(6)    Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, fictitious going-out-of-business sale, lost-our-lease sale or similarly advertised event (provided that if any such use is conducted by a third party in violation of the tenant's lease, then Landlord's only obligation shall be to use commercially reasonable efforts to prevent the same);

(7)    Any central laundry, dry cleaning plant, or laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted, so long as its on-site premises are located more than 150 feet away from the Premises);

(8)    Any automobile, truck, trailer, boat, or recreational vehicle sales, leasing, display or body shop repair operation;

(9)    Any bowling alley or skating rink;

(10)    Any live performance theater, auditorium, meeting hall, sporting event, or other similar intensive parking entertainment uses;

(11)    Any living quarters, sleeping apartments, or lodging rooms;

(12)    Any veterinary hospital or animal raising or boarding facilities (except to the extent permitted below and except as permitted in conjunction with the operation of a pet store such as PetCo or PetSmart or other similar pet store occupying more than 9,000 square feet);

(13)    Any mortuary or funeral home;

(14)    Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Books A Million and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder], or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or massage parlor [except for therapeutic massages given in connection with the operation of a day spa or health club or chiropractor which may otherwise be permitted under this Exhibit L];

(15)    Any so-called "head shop", or other establishment primarily selling or exhibiting drugs related paraphernalia;

(16)    Any bar, tavern, or other establishment selling alcoholic beverages for on- or off-premises consumption; provided, however, (i) Tenant shall be permitted to sell, on an incidental basis, alcoholic beverages for off-premises

B-32

4352639-6 13370.001000
#4352639v6\ATLANTA> - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 30F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-4064-BC39-99F5F80BFFD6

consumption and on-premises tastings, subject to applicable Legal Requirements and (ii) the foregoing shall not prohibit a first-class wine bar, wine or liquor store, and/or first class micro-brewery type establishment (by way of example, Total Wine, Wine World, Brew House or Brass Tap), provided same are located at least 150 feet from the closest demising wall of the Premises.

(17)    Any catering or banquet hall;

(18)    Any flea market, amusement or video arcade (except the foregoing shall not prohibit videos games as an incidental part of another tenant's business operation), pool or billiard hall, night club, discotheque, or dance hall, provided the foregoing shall not prohibit a Dave & Buster's type amusement operation so long as same is located in the "**Permissible Use Area**" designated on Exhibit B;

(19)    Any training or education facility, including but not limited to:  beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers, provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center;

(20)    Any gambling facility or operation, including but not limited to:  off-track or sports betting parlor; table games such as black-jack or poker; slot machines; video poker/black-jack/keno machines or similar devices; or bingo hall.  Notwithstanding the foregoing, this prohibition shall not apply to governmental sponsored gambling activities, or charitable gambling activities, so long as such governmental and/or charitable activities are incidental to the business operation being conducted by the Occupant;

(21)    Any unlawful use;

(22)    Any pawn shop, check-cashing store, gun shop, or tattoo parlor except one first class check cashing store such as Amscot shall be permitted;

(23)    Any church or other place of religious worship;

(24)    Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube or oil change service, tire center or gasoline or service station or facility, except to the extent located on an "**Outparcel**" (as indicated on Exhibit B hereto) other than the "**Restricted Outparcel**" (as indicated on Exhibit B hereto) and except in conjunction with the operation of a typical warehouse club such as Costco or a grocery store such as Publix but only if such facility is located in front of the warehouse club or grocery store or if the warehouse club or grocery store is located in "**Future Pad**" (as indicated on Exhibit B hereto), only if such facility is located no closer to the Premises than Outparcel E;

(25)    Any carnival, amusement park or circus;

(26)    Any medical clinics except that medical offices and medical clinics of the type operated in first class shopping centers, of not more than 7,500 square feet in the aggregate, may be located within the Allowed Area (as indicated on Exhibit B hereto) (provided that in no event shall any so-called methadone clinics, blood banks, or drug or alcohol treatment or rehabilitation centers be located within the Shopping Center);

(27)    Any supermarket or boutique-type food store (such as, by way of example, Zagara's, Whole Foods, Fresh Fields, or Wild Oats), provided that the foregoing shall not prohibit such store within the "**Permissible Use Area**" (as indicated on Exhibit B hereto) except that an upscale, boutique-type food store shall be permitted to be located within the Premises or within the premises shown on Exhibit B as "Dick's" or within the Permisable Use Area);

(28)    Any office use, other than: (x) office space used in connection with and ancillary to a permitted retail use hereunder, and (y) retail or medical offices providing services commonly found in similar first-class shopping centers in the Panama City, Florida metropolitan area (for example, financial services, real estate brokerage, insurance agency, banking, travel agency), provided that such uses are located at least 150 feet away from the Premises, and not more than fifteen thousand (15,000) square feet of Floor Area in the Shopping Center, in the aggregate, shall be devoted to such uses;

(29)    hotel/motel;

(30)    daycare center except one (1) daycare center shall be permitted in the Shopping Center, provided such daycare center shall contain no more than 4,500 square feet of Floor Area and shall be located only on an Outparcel (other than the "Restricted Outparcel");

(31)    veterinary office, except as may be incidental to a permitted full-line pet and pet supply store operating in at least 9,000 square feet of Floor Area and located at least 100 feet away from the Premises (except that a full-line pet and pet supply store shall be permitted to be located within the Premises); such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from in front of the Premises; no pet or pet supply store shall be located within 100 feet of the Premises;

(32)    children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's"), provided that the foregoing shall not prohibit such facility within the "Permisable Use Area";

(33)    karate center;

B-33

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

(34)    movie theater, provided that the foregoing shall not prohibit such use within the "Permissible Use Area";

(35)    restaurant serving meals for on- or off-premises consumption, provided the foregoing shall not prohibit such use if same is located at least 150 feet from the closest demising wall of the Premises;

(36)    beauty parlor or nail salon, provided the foregoing shall not prohibit such use if same is located at least 100 feet from the closest demising wall of the Premises;

(37)    health spa, exercise facility or similar type business, provided that the foregoing shall not prohibit such use or business within the "Permissible Use Area"; or

(38)    a store primarily selling merchandise which is classed as "odd lot," "close out," "clearance," "discontinued," "cancellation," "second," "factory reject," "sample," "floor model," "demonstrator," "obsolescent," "over stock," "distressed," "bankruptcy," "fire sale" or "damaged", such as, for example, "Grossman's Bargain Outlet", "Contractor's Warehouse", "Big Lots", "Liquidation World", or "Odd Job"; provided that the retailers commonly known as "Christmas Tree Shops" and/or "and That!" and "Costco" and similar warehouse clubs shall be deemed not to violate the foregoing restriction.

B.    As to Related Land, any of the uses listed in Items 1, 2, 4, 5, 14, 15, 21, 22,  and 25 above.

B-34

4352859-8 13370.001000
#4352859v8<ATLANTA> - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 3DF40D46-6001-4064-BC39-99F5F80BFFD6

**Exhibit A – Site Plan from Dick's Sporting Goods (LMA #1)**



B-35

4552859-8 13370.001000
#452859v6©ATLANTA© - Barnes & Noble Panama City Beach, FL - Lease (v 8 - Landlord's comments)

DocuSign Envelope ID: 30F40D46-6001-4064-BC39-99F5F60BFFD6

Rooms To Go – Schedule C to Reciprocal Easement Agreement, dated April 23, 2013

## SCHEDULE C

Site Plan



C-1

**Bed, Bath & Beyond – Exhibit L**

Exhibit L

Prohibited Uses

As used in this Lease, the term "***Prohibited Uses***" shall mean any of the following uses:

A.        As to the Shopping Center, including the Premises (except as otherwise set forth below), any of the following uses:

(1)        Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;

(2)        Any operation primarily used as a storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;

(3)        Any "second hand" store, "surplus" store other than the type operating in first-class shopping centers (such as Play It Again Sports, as such store is operated on the Effective Date);

(4)        Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);

(5)        Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(6)        Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, fictitious going-out-of-business sale, lost-our-lease sale or similarly advertised event (provided that if any such use is conducted by a third party in violation of the tenant's lease, then Landlord's only obligation shall be to use commercially reasonable efforts to prevent the same);

(7)        Any central laundry, dry cleaning plant, or laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted, so long as its on-site premises are located more than 150 feet away from the Premises);

(8)        Any automobile, truck, trailer, boat, or recreational vehicle sales, leasing, display or body shop repair operation;

(9)        Any bowling alley or skating rink;

(10)        Any live performance theater, auditorium, meeting hall, sporting event, or other similar intensive parking entertainment use;

(11)        Any living quarters, sleeping apartments, or lodging rooms;

(12)        Any veterinary hospital or animal raising or boarding facilities (except to the extent permitted below and except as permitted in conjunction with the operation of a pet store such as PetCo or PetSmart or other similar pet store occupying more than 9,000 square feet);

(13)        Any mortuary or funeral home;

(14)        Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Books A Million and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or massage parlor [except for therapeutic massages given in connection with the operation of a day spa or health club or chiropractor which may otherwise be permitted under this Exhibit L];

(15)        Any so-called "head shop", or other establishment primarily selling or exhibiting drug-related paraphernalia;

(16)        Any bar, tavern, or other establishment selling alcoholic beverages for on- or off-premises

consumption; provided, however, (i) Tenant shall be permitted to sell, on an incidental basis, alcoholic beverages for off-premises consumption and on-premises tastings, subject to applicable Legal Requirements and (ii) the foregoing shall not prohibit a first-class wine bar, wine or liquor store, and/or first class micro-brewery type establishment (by way of example, Total Wine, Wine World, Brew House or Brass Tap), provided same are located at least 150 feet from the closest demising wall of the Premises.

(17)    Any catering or banquet hall;

(18)    Any flea market, amusement or video arcade (except the foregoing shall not prohibit videos games as an incidental part of another tenant's business operation), pool or billiard hall, night club, discotheque, or dance hall; provided the foregoing shall not prohibit a Dave & Buster's type amusement operation so long as same is located in the "*Permissible Use Area*" designated on <u>Exhibit B</u>;

(19)    Any training or education facility, including but not limited to:  beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center;

(20)    Any gambling facility or operation, including but not limited to:  off-track or sports betting parlor; table games such as black-jack or poker; slot machines; video poker/black-jack/keno machines or similar devices; or bingo hall.  Notwithstanding the foregoing, this prohibition shall not apply to governmental sponsored gambling activities, or charitable gambling activities, so long as such governmental and/or charitable activities are incidental to the business operation being conducted by the Occupant;

(21)    Any unlawful use;

(22)    Any pawn shop, check-cashing store, gun shop, or tattoo parlor except one first class check cashing store such as Amscot shall be permitted;

(23)    Any church or other place of religious worship;

(24)    Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube oil change service, tire center or gasoline or service station or facility, except to the extent located on an "*Outparcel*" (as indicted on <u>Exhibit B</u> hereto) other than the "*Restricted Outparcel*" (as indicated on <u>Exhibit B</u> hereto) and except in conjunction with the operation of a typical warehouse club such as Costco or a grocery store such as Publix but only if such facility is located in front of  the  warehouse club or grocery store or if the warehouse club or grocery store is located in "*Future Pad*" (as indicated on <u>Exhibit B</u> hereto), only if such facility is located no closer to the Premises than Outparcel E;

(25)    Any carnival, amusement park or circus;

(26)    Any medical clinics except that medical offices and medical clinics of the type operated in first class shopping centers, of not more than 7,500 square feet in the aggregate, may be located within the Allowed Area (as indicated on <u>Exhibit B</u> hereto) (provided that in no event shall any so-called methadone clinics, blood banks, or drug or alcohol treatment or rehabilitation centers be located within the Shopping Center);

(27)    Any supermarket or boutique-type food store (such as, by way of example, Zagara's, Whole Foods, Fresh Fields, or Wild Oats), provided that the foregoing shall not prohibit such store within the "*Permissible Use Area*" (as indicated on <u>Exhibit B</u> hereto) except that an upscale, boutique-type food store shall be permitted to be located within the Premises or within the premises shown on <u>Exhibit B</u> as "Dick's" or within the Permissible Use Area);

(28)    Any office use, other than: (x) office space used in connection with and ancillary to a permitted retail use hereunder; and (y) retail or medical offices providing services commonly found in similar first-class shopping centers in the Panama City, Florida metropolitan area (for example, financial services, real estate brokerage, insurance agency, banking, travel agency), <u>provided</u> that such uses are located at least 150 feet away from the Premises, and not more than fifteen thousand (15,000) square feet of Floor Area in the Shopping Center, in the aggregate, shall be devoted to such uses;

(29)    hotel/motel;

(30)    daycare center except one (1) daycare center shall be permitted in the Shopping Center, provided such daycare center shall contain no more than 4,500 square feet of Floor Area and shall be located only on an Outparcel (other than the "Restricted Outparcel");

(31)    veterinary office, except as may be incidental to a permitted full-line pet and pet supply store operating in at least 9,000 square feet of Floor Area and located at least 100 feet away from the Premises (except that a full-line pet and pet supply store shall be permitted to be located within the Premises); such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from in front of the Premises;  no pet or pet supply store shall be located within 100 feet of the Premises;

(32)    children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's"), provided that the foregoing shall not prohibit such facility within the "Permissible Use Area";

(33)     karate center;

(34)     movie theater, provided that the foregoing shall not prohibit such use within the "Permissible Use Area";

(35)     restaurant serving meals for on- or off-premises consumption, provided the foregoing shall not prohibit such use if same is located at least 150 feet from the closest demising wall of the Premises;

(36)     beauty parlor or nail salon, provided the foregoing shall not prohibit such use if same is located at least 100 feet from the closest demising wall of the Premises;

(37)     health spa, exercise facility or similar type business, provided that the foregoing shall not prohibit such store or business within the "Permissible Use Area"; or

(38)     a store primarily selling merchandise which is classed as "odd lot," "close out," "clearance," "discontinued," "cancellation," "second," "factory reject," "sample," "floor model," "demonstrator," "obsolescent," "over stock," "distressed," "bankruptcy," "fire sale" or "damaged", such as, for example, "Grossman's Bargain Outlet", "Contractor's Warehouse", "Big Lots", "Liquidation World", or "Odd Job"; provided that the retailers commonly known as "Christmas Tree Shops" and "Costco" and similar warehouse clubs shall be deemed not to violate the foregoing restriction.

B.       As to Related Land, any of the uses listed in Items 1, 2, 4, 5, 14, 15, 21, 22, and 25 above.

**Cost Plus World Market – Exhibit L**

Exhibit L

Prohibited Uses

As used in this Lease, the term "***Prohibited Uses"*** shall mean any of the following uses:

A.      As to the Shopping Center, including the Premises (except as otherwise set forth below), any of the following uses:

(1)      Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;

(2)      Any operation primarily used as a storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;

(3)      Any "second hand" store, "surplus" store other than the type operating in first-class shopping centers (such as Play It Again Sports, as such store is operated on the Effective Date);

(4)      Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);

(5)      Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(6)      Any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation, fictitious going-out-of-business sale, lost-our-lease sale or similarly advertised event (provided that if any such use is conducted by a third party in violation of the tenant's lease, then Landlord's only obligation shall be to use commercially reasonable efforts to prevent the same);

(7)      Any central laundry, dry cleaning plant, or laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted, so long as its on-site premises are located more than 150 feet away from the Premises);

(8)      Any automobile, truck, trailer, boat, or recreational vehicle sales, leasing, display or body shop repair operation;

(9)      Any bowling alley or skating rink;

(10)      Any live performance theater, auditorium, meeting hall, sporting event, or other similar intensive parking entertainment use;

(11)      Any living quarters, sleeping apartments, or lodging rooms;

(12)      Any veterinary hospital or animal raising or boarding facilities (except to the extent permitted below and except as permitted in conjunction with the operation of a pet store such as PetCo or PetSmart or other similar pet store occupying more than 9,000 square feet);

(13)      Any mortuary or funeral home;

(14)      Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Books A Million and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Blockbuster or West Coast Video, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or massage parlor [except for therapeutic massages given in connection with the operation of a day spa or health club or chiropractor which may otherwise be permitted under this Exhibit L];

(15)      Any so-called "head shop", or other establishment primarily selling or exhibiting drug-related paraphernalia;

(16)      Any bar, tavern, or other establishment selling alcoholic beverages for on- or off-premises consumption; provided, however, (i) Tenant shall be permitted to sell, on an incidental basis, alcoholic beverages for

off-premises consumption and on-premises tastings, subject to applicable Legal Requirements and (ii) the foregoing shall not prohibit a first-class wine bar, wine or liquor store, and/or first class micro-brewery type establishment (by way of example, Total Wine, Wine World, Brew House or Brass Tap), provided same are located at least 150 feet from the closest demising wall of the Premises.

(17)    Any catering or banquet hall;

(18)    Any flea market, amusement or video arcade (except the foregoing shall not prohibit videos games as an incidental part of another tenant's business operation), pool or billiard hall, night club, discotheque, or dance hall; provided the foregoing shall not prohibit a Dave & Buster's type amusement operation so long as same is located in the "*Permissible Use Area*" designated on Exhibit B;

(19)    Any training or education facility, including but not limited to:  beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center;

(20)    Any gambling facility or operation, including but not limited to:  off-track or sports betting parlor; table games such as black-jack or poker; slot machines; video poker/black-jack/keno machines or similar devices; or bingo hall.  Notwithstanding the foregoing, this prohibition shall not apply to governmental sponsored gambling activities, or charitable gambling activities, so long as such governmental and/or charitable activities are incidental to the business operation being conducted by the Occupant;

(21)    Any unlawful use;

(22)    Any pawn shop, check-cashing store, gun shop, or tattoo parlor except one first class check cashing store such as Amscot shall be permitted;

(23)    Any church or other place of religious worship;

(24)    Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube oil change service, tire center or gasoline or service station or facility, except to the extent located on an "*Outparcel*" (as indicted on Exhibit B hereto) other than the "*Restricted Outparcel*" (as indicated on Exhibit B hereto) and except in conjunction with the operation of a typical warehouse club such as Costco or a grocery store such as Publix but only if such facility is located in front of  the  warehouse club or grocery store or if the warehouse club or grocery store is located in "*Future Pad*" (as indicated on Exhibit B hereto), only if such facility is located no closer to the Premises than Outparcel E;

(25)    Any carnival, amusement park or circus;

(26)    Any medical clinics except that medical offices and medical clinics of the type operated in first class shopping centers, of not more than 7,500 square feet in the aggregate, may be located within the Allowed Area (as indicated on Exhibit B hereto) (provided that in no event shall any so-called methadone clinics, blood banks, or drug or alcohol treatment or rehabilitation centers be located within the Shopping Center);

(27)    Any supermarket or boutique-type food store (such as, by way of example, Zagara's, Whole Foods, Fresh Fields, or Wild Oats), provided that the foregoing shall not prohibit such store within the "*Permissible Use Area*" (as indicated on Exhibit B hereto) except that an upscale, boutique-type food store shall be permitted to be located within the Premises or within the premises shown on Exhibit B as "Dick's" or within the Permissible Use Area);

(28)    Any office use, other than: (x) office space used in connection with and ancillary to a permitted retail use hereunder; and (y) retail or medical offices providing services commonly found in similar first-class shopping centers in the Panama City, Florida metropolitan area (for example, financial services, real estate brokerage, insurance agency, banking, travel agency), provided that such uses are located at least 150 feet away from the Premises, and not more than fifteen thousand (15,000) square feet of Floor Area in the Shopping Center, in the aggregate, shall be devoted to such uses;

(29)    hotel/motel;

(30)    daycare center except one (1) daycare center shall be permitted in the Shopping Center, provided such daycare center shall contain no more than 4,500 square feet of Floor Area and shall be located only on an Outparcel (other than the "Restricted Outparcel");

(31)    veterinary office, except as may be incidental to a permitted full-line pet and pet supply store operating in at least 9,000 square feet of Floor Area and located at least 100 feet away from the Premises (except that a full-line pet and pet supply store shall be permitted to be located within the Premises); such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from in front of the Premises;  no pet or pet supply store shall be located within 100 feet of the Premises;

(32)    children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's"), provided that the foregoing shall not prohibit such facility within the "Permissible Use Area";

(33)    karate center;

(34)    movie theater, provided that the foregoing shall not prohibit such use within the "Permissible Use Area";

(35)    restaurant serving meals for on- or off-premises consumption, provided the foregoing shall not prohibit such use if same is located at least 150 feet from the closest demising wall of the Premises;

(36)    beauty parlor or nail salon, provided the foregoing shall not prohibit such use if same is located at least 100 feet from the closest demising wall of the Premises;

(37)    health spa, exercise facility or similar type business, provided that the foregoing shall not prohibit such store or business within the "Permissible Use Area"; or

(38)    a store primarily selling merchandise which is classed as "odd lot," "close out," "clearance," "discontinued," "cancellation," "second," "factory reject," "sample," "floor model," "demonstrator," "obsolescent," "over stock," "distressed," "bankruptcy," "fire sale" or "damaged", such as, for example, "Grossman's Bargain Outlet", "Contractor's Warehouse", "Big Lots", "Liquidation World", or "Odd Job"; provided that the retailers commonly known as "Christmas Tree Shops" and/or "and That!" and "Costco" and similar warehouse clubs shall be deemed not to violate the foregoing restriction.

B.    As to Related Land, any of the uses listed in Items 1, 2, 4, 5, 14, 15, 21, 22, and 25 above.

**Exhibit A - Site Plan from Dick's Sporting Goods (LMA #1)**



**Rooms To Go – Schedule C to Reciprocal Easement Agreement, dated April 23, 2013**

<u>SCHEDULE C</u>

Site Plan

