LAW OFFICES OF LISA M. SOLOMON
Lisa M. Solomon, Esq. *(admitted pro hac vice)*
One Grand Central Place
305 Madison Avenue, Suite 4700
New York, NY 10165
(212) 471-0067; Fax 212-980-6965
Lisa.Solomon@att.net

SCARINCI & HOLLENBECK, LLC
David Edelberg, Esq.
150 Clove Road, 9th Fl.
Little Falls, New Jersey  07424
201-896-4100; Fax 201-896-8660
DEdelberg@sh-law.com

*Counsel for DC USA Operating Co., LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., et al.,[1]<br><br>Debtors. | Chapter 11 Case No. 23-13359 (VPF)<br>(Jointly Administered)<br>Hrg. Date: July 18, 2023 at 2:30 p.m.<br>Obj. Due: July 11, 2023 at 5:00 p.m. |

**LIMITED OBJECTION OF LANDLORD DC USA OPERATING CO., LLC**
**TO DEBTORS' NOTICE OF ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN UNEXPIRED LEASES AND CURE COSTS**
**AND RESERVATION OF RIGHTS**

DC USA Operating Co., LLC ("DC USA" or "Landlord"), by and through its

undersigned counsel, respectfully submits this limited objection (the "Objection") to the Debtors'

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

Notice of Assumption of Certain Unexpired Leases dated June 30, 2023 (ECF No. 1157) (the "Notice of Assumption"). In support thereof, Landlord respectfully states as follows:

## BACKGROUND

1. The above-captioned debtors (each a "Debtor," collectively the "Debtors") filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Code") on April 23, 2023 (the "Petition Date"). The Debtors' cases are being jointly administered.

2. Debtor Bed Bath & Beyond Inc., as tenant ("Debtor-Tenant"), leases certain retail space from DC USA, as landlord, pursuant to an unexpired lease of nonresidential real property dated as of February 1, 2006, as amended by Amendment to Lease dated as of November 18, 2013, as amended by Second Amendment to Lease dated as of April 30, 2016 (the "DC USA Lease" or the "Lease"), located in that certain shopping center commonly known as DC USA at the Northwest corner of 14th Street and Irving Street in Washington, D.C. (the "Shopping Center").

3. Pursuant to the Lease, a copy of which is annexed hereto as Exhibit "A," the Debtor agreed, inter alia, to honor "Existing Exclusives" granted to certain tenants in the Shopping Center pursuant to their leases as listed in Exhibit K-1 to the Lease, including the exclusive granted by Landlord to a Marshall's entity pursuant to its lease with DC USA with respect to its premises in the Shopping Center, and the Debtor agreed it shall not use the Premises or any part thereof for any "Prohibited Uses" (defined in Exhibit M) or in violation of any Existing Exclusives. Copies of Exhibits K-1 and M to the Lease are annexed hereto as Exhibits "B" and "C," respectively.

2

4. The Lease is a lease of real property in a shopping center as that term is used in §365(b)(3) of the Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5. On April 25, 2023, the Court issued its Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief (ECF No. 92)(the "Bid Procedures Order"), with respect to the sale of substantially all of the Debtors' assets.[2]

6. Pursuant to the Bid Procedures Order, on June 13, 2023, the Debtors served and filed Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases (ECF No. 714), pursuant to which the Debtors identified, inter alia, certain unexpired leases that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder following an Auction, including the DC USA Lease.

7. On June 26, 2023, pursuant to the Lease Procedures Order, the Debtors conducted the Phase I Lease Auction with respect to certain of the Debtors' Lease Assets, including the DC USA Lease.

8. At the conclusion of the Phase I Lease Auction, the Debtors selected Burlington Coat Factory Warehouse Corporation ("Burlington Corp.") as the Successful Bidder with respect to 44 of the Lease Assets, including the DC USA Lease.

9. By the Debtors' Notice of Assumption, the Debtors notified counterparties to the

---

[2] All terms used and not defined herein shall have the meanings assigned to such terms in the Court's Order (I) Establishing Procedures to Sell Certain Leases, (ii) Approving the Sale of Certain Leases and (III) Granted Related Relief (ECF. No. 422) or the Debtors' Motion for Entry of an Order (I)Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases and (III) Granted Related Relief (ECF. No. 193) or the Lease.

Lease Assets that each unexpired lease listed on Exhibit "B" thereto, including the DC USA Lease, has thereby been assumed and assigned subject to payment of cure costs (the "Debtors' Proposed Cure Costs") in the amounts listed therein, effective as of the date of entry of any order approving the sale of the applicable Lease Assets, or such other date as the Debtors and the counterparties to such unexpired leases may agree.

10. The Existing Exclusives in the DC USA Lease clearly contain restrictions that could be violated based on Burlington's typical retail use, were Burlington allowed by this Court to assume the Lease.

## OBJECTION

### I. THE DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE

11. DC USA is entitled to adequate assurance of future performance of the proposed Burlington entity tenant-assignee under §365(f)(2)(B) of the Code. As the DC USA Lease is a shopping center lease, the Debtors must meet the heightened restrictions applicable to the assumption and assignment of leases for shopping centers, to "protect the rights of the lessors and the center's other tenants." *In re Great Atlantic & Pacific Tea Co., Inc.*, 472 B.R. 666, 676 (S.D.N.Y. 2012)(*citing In re Joshua Slocum, supra*, 922 F.2d at 1086). This requires that the Debtors satisfy the provisions of §365(b)(3), which requires adequate assurance of:

(i) the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, *as of the time the debtor became the lessee* (11 U.S.C. §365(b)(3)(A))(emphasis added);

(ii) that any percentage rent due under the lease will not decline substantially (11 U.S.C. §365(b)(3)(B));

4

(iii) that assumption and assignment of the lease *is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision in any other lease* (11 U.SS.C. § 365(b)(3)(C))(emphasis added); and

(iv) that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center  (11 U.S.C. §365(b)(3)(D)).

12. In assuming a contract, the debtors must do so *cum onere*, with all the burdens as well as the benefits. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984)("[s]hould the debtor in possession elect to assume the executory contract , . . . it assumes the contract *cum onere*"); *In re Fleming Companies, Inc.*, 499 F.3d 300, 308 (3d Cir. 2007)(citations omitted).  As movants, the Debtors bear the ultimate burden of persuasion regarding satisfaction of the requirements of §365 of the Code and in proving adequate assurance of future performance with respect to all of the terms of the Lease. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143, 147 (Bankr. D. Conn. 1995).

13. The Debtors' Notice of Assumption does not take into consideration that the assignment of the Lease to Burlington, if Burlington operates in the Premises consistent with its other retail operations, exposes Landlord to significant risk in connection with Burlington's violation of the Existing Exclusives contained in the Lease.  The Lease clearly and unambiguously states that the Tenant shall honor the Existing Exclusives listed in Exhibit K-1 to the Lease.  Pursuant to the Existing Exclusive as to Marshall's (*see* Exhibit "B" annexed hereto) and the assignment provisions of the Lease, Tenant is prohibited from assigning its Lease to any entity that shall use the Premises for "the sale or display of apparel and related accessories in more than fifteen thousand (15,000) square feet of floor area and/or the sale or display of shoes, footwear and related accessories in more than seven thousand five hundred (7,500) square feet of

5

floor area." If the Lease is assigned to an entity that operates in violation of any of the Existing Exclusives, including the Marshall's Existing Exclusive, the Debtor will be in violation of the Lease and thereby cause DC USA to be in breach with any tenant, including Marshall's, whose exclusive has been breached and cause irreparable harm to Landlord.[3]

14. Pursuant to e-mail correspondence between DC USA's undersigned counsel and the Debtors' counsel on June 30, 2023, DC USA was advised that Burlington intends to operate at the Premises consistent with its other retail locations. On the Burlington website, Burlington describes its business and retail operations as follows:

> Burlington Stores began in 1972 as a family run business, with one store in Burlington, New Jersey. In those early days, serving the customer was about delivering a broad selection of off-price coats and outerwear. Our name was Burlington Coat Factory, and it was an immediate success. We started opening more stores across the U.S. and *expanded our product assortment to include ladies' sportswear, men's active wear and children's apparel*, staying true to our off-price model. In the ensuing four decades, our product selection has grown to include baby, home, beauty and our name changed to Burlington Stores to reflect the breadth of our product offerings.

(emphasis added). *See* Burlington's website, "Our History-Burlington."

15. An assignment of the Lease to Burlington for use of the Premises consistent with Burlington's other retail locations, which would encompass the sale of apparel and related accessories, without obtaining the written approval/consent/waiver of Marshall's, clearly exposes Landlord to the risk of Burlington violating the DC USA Lease and the Tenant's obligations to honor the exclusive granted to Marshall's as another tenant in the Shopping Center, and

---

[3] Under the Marshall's lease, if the Marshall's tenant's exclusive is violated, subject to the terms therein, the Marshall's tenant has the non-exclusive remedy of paying percentage rent to Landlord in lieu of fixed rent until the violation has ceased, or to terminate the Marshall's lease, or to seek injunctive relief. The differential between the fixed rent and percentage rent under the Marshall's lease in such circumstances could amount to $1 million annually and in the aggregate the loss of millions of dollars to Landlord.

accordingly, the assignment and sale of the Lease as proposed, without the written approval/consent/waiver of Marshall's, is in violation of §365(b)(3) of the Code.

16. An assignment of the Lease to Burlington, without the written approval/consent/waiver of Marshall's, further subjects Landlord to the significant risk of substantial claims by Marshall's against Landlord for violating the Marshall's co-tenancy provisions with respect to Bed Bath & Beyond, which is an "Inducement Occupant" under the Marshall's lease. Marshall's has the right to accept or reject Burlington as a "Qualified Replacement Store" for the Bed Bath & Beyond store, which replacement must be "reasonably acceptable" to Marshall's. In that regard, a "Qualified Replacement Store" must "conform to all of the requirements" contained in the Marshall's lease, including the provisions of Schedule B, paragraph 4, which specifically lists Burlington as a retailer selling multiple brands of apparel and/or related accessories at off-prices and a "direct competitor of Marshall's."[4]

17. To date, Landlord has received no information or notification that Burlington has sought Marshall's written approval/consent/waiver or that such approval/consent/waiver has been granted. Indeed, prior to the Phase I Lease Auction, for many months, Landlord and Burlington were engaged in discussions as to the leasing of the Premises and Burlington had agreed that Marshall's written approval/consent/waiver with regard to its exclusive and Burlington as a replacement co-tenant for Bed Bath & Beyond, was an express condition to such transaction. After having specifically undertaken to obtain Marshall's commitment for its

---

[4] Pursuant to Article 15 of the DC USA Lease, Landlord has the right to terminate the Lease subject to the terms therein on 15 days' notice in the event the Tenant notifies Landlord that it seeks to assign the Lease. Pursuant to Article 14, Landlord has the right to recapture the Premises in the event Tenant gives 60 days' notice that it intends to cease operations in the Premises.

7

approval/consent/waiver, Burlington told Landlord, for many months, that it was working on obtaining Marshall's written approval/consent/ waiver.  Now, Burlington comes into this Court, seeking to circumvent the approvals it had previously agreed to, thereby subjecting Landlord to significant potential liability and litigation related thereto.

18. Landlord objects to the assumption and assignment of the Lease pursuant to Code §365(b)(3) and to Burlington's bad faith conduct.  Landlord requests adequate assurance that Burlington will not breach or violate the Existing Exclusives and the co-tenancy requirement as outlined above, including but not limited to by obtaining a written approval/consent/waiver from Marshall's and conditioning any assumption and assignment subject to all of the Lease's provisions, including all use restrictions and prohibitions, exclusivity restrictions and indemnity obligations of the Tenant.

19. Furthermore, Debtor has not demonstrated that the assumption and assignment of the Lease will not disrupt any tenant mix or balance of the Shopping Center, as required by §365(b)(3)(D) of the Code.

20. In addition, adequate assurance of future performance under §365(b) of the Code requires that the Debtors prove the proposed assignee and any guarantor is similar to the financial condition and operating performance of the debtor as of the commencement of the Lease.  Debtor has not provided such adequate assurance.  DC USA further objects to the assignment of the Lease to a Burlington entity from the Debtors because the Debtors have not demonstrated the tenant-assignee or guarantor shall be the parent corporation Burlington Corp. or an entity of similar financial condition.  Nor, as of the date of the filing of this objection, has Landlord received for its consideration a proper proposed form of Assumption and Assignment

Agreement from the Debtors or Burlington. In fact, to date, the Debtors have submitted only an incomplete form of Assumption and Assignment Agreement (annexed as an exhibit to the Notice of Assumption) with an exhibit that is replete with blanks and that fails to designate the leases to be assigned and assumed as well as the proposed Burlington entity tenant-assignee.

## II. THE DEBTORS' PROPOSED CURE AMOUNT AS SET FORTH IN THE NOTICE OF ASSUMPTION IS IMPROPER AND INCORRECT

21. Section 365(b)(1) of the Code provides:

> If there has been a default in an . . . unexpired lease of the debtor, the [debtor in possession] may not assume such . . . lease unless, at the time of assumption of such . . . lease the [debtor in possession] -
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure such default;
>
> (B) compensates, or provides adequate assurance that the [debtor in possession] will promptly compensate, a party other than the debtor to such . . lease, for any actual pecuniary loss to such party resulting from such default. . .

22. Accordingly, to assume and/or assume and assign the Lease, in addition to satisfying the adequate assurance requirement under §365, the Debtor must (a) cure, or provide adequate assurance that it will promptly cure, all existing defaults under the Lease; and (b) compensate or provide adequate assurance that the Tenant will promptly compensate the Landlord for any actual pecuniary loss, including attorneys' fees, from such defaults. 11 U.S.C. §365(b)(1).

23. The Debtors have failed to pay DC USA as of the date hereof, $176,086.55 (the "Actual Cure Amount"), which amount is due and owing to Landlord under the Lease and must be paid before the Lease can be assumed and assigned, together with all charges due and/or

9

accrued under the Lease after the date hereof through the effective date of the assumption and assignment of the Lease. The Debtors must also reimburse Landlord for all of its actual pecuniary losses, including but not limited to, attorneys' fees and costs expended with regard to the Debtors' bankruptcy proceedings. An itemization of the Actual Cure Amount as of the date hereof is annexed hereto as Exhibit "D."

24. Further, the Debtors' Proposed Cure Amount, as it pertains to the DC USA Lease, does not include real estate taxes and other charges that that have accrued and/or relate to the period prior to the effective date of any assumption and assignment, but will become due under the Lease after said effective date.[5] Any order approving the assignment and assumption of the Lease, must provide, in addition to adequate assurance as aforesaid, either that any cure amount payable by the Debtors include the Taxes and any all other charges that become due and payable after the effective date of the assumption and assignment of the Lease, but that relate to the pre-assumption period, or that the assignee be responsible for such amount in addition to all amounts that accrue after the date of assumption of the Lease.

25. Additionally, there may be unknown and/or unasserted claims that may exist presently or may exist in the future against DC USA for which the Debtors may be obligated to indemnify and defend DC USA. Any order approving the assumption of the DC USA Lease, as part of adequate assurance, must permit Landlord to assert any and all such claims and for DC USA to recover from the Debtors' insurance coverage with respect to any such claims.

---

[5] Debtor's share of the real estate tax escalation for the second half of 2023 (for the period 4/1/23-9/30/23) in the amount of $136,123.96 (the "Taxes") shall become due upon Landlord billing such amount in September 2023, pursuant to the terms of the Lease. (See Landlord's bill for the first half of 2023, Exhibit "E" annexed hereto). If the assumption were approved by the Court and the effective date thereof were the Hearing Date (July 18, 2023), Debtor's pro rata share (for the period 4/1/23-7/18/23) of such taxes would be $81,079.30.

10

26. Accordingly, any Order of this Court establishing a cure amount with respect to the Lease must require, in addition to providing and proving adequate assurance, the Debtors to: (a) pay Landlord its Actual Cure Amount, (b) comply with all monetary obligations under the Lease pursuant to §365 of the Code pending the actual assumption of the Lease, and (c) ensure that the Debtors or any assignee will be expressly responsible and liable for the payment of Taxes and any other charges that come due under the Lease after the effective date of the assumption and assignment but that relate to a pre-assumption and assignment period.

### III. RESERVATION OF RIGHTS

27. Landlord hereby joins in all objections filed by other landlords herein to the extent not inconsistent with Landlord's objections herein.

28. Landlord reserves all rights to supplement this Objection prior to any final determination by the Court regarding assumption and assignment of the Lease.

WHEREFORE, DC USA respectfully requests that the Court grant the relief requested herein, conditioning the requested assumption and assignment upon compliance with the existing exclusives and prohibited uses and obtaining the written approval/consent/waiver of Marshall's, awarding payment of any unpaid cure amount including the Correct Cure Amount set forth on Exhibit "E" and Taxes prorated based upon the effective date of any assumption and assignment,

plus attorneys' fees and costs and grant such other relief as the Court deems just and proper.

Dated: July 11, 2023

        **SCARINCI & HOLLENBECK, LLC**
        150 Clove Road, 9th Fl.
        Little Falls, New Jersey  07424

        By: __/s/ David Edelberg_____
            David Edelberg

        **LAW OFFICES OF LISA M. SOLOMON**
        Lisa M. Solomon, Esq. (admitted *pro hac vice*)
        305 Madison Avenue, Suite 4700
        New York, New York 10165
        Tel. (212) 471-0067

        *Counsel for DC USA Operating Co., LLC*