BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

Kenneth M. Klemm
201 St. Charles Avenue, 36th Floor
New Orleans, Louisiana 70170
(504) 566-5258
kklemm@bakerdonelson.com

J. David Folds
901 K Street NW; Suite 900
Washington, D.C. 20001
(202) 508-3441
dfolds@bakerdonelson.com

*Attorneys for HART Miracle Marketplace LLC*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (NEWARK)

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 23-13359-VFP |
| Bed Bath & Beyond, Inc., *et al.*[1], | ) | Judge Hon. Vincent F. Papalia |
| | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |

**LIMITED OBJECTION OF HART MIRACLE MARKETPLACE, LLC
TO PROPOSED ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE**

HART Miracle Marketplace, LLC ("**Landlord**") through its undersigned counsel, respectfully submits this limited objection and reservation of rights to the *Notice to Contract Parties to Potentially Assume Executory Contracts and Unexpired Leases* [DE 714] ("**Notice**") and the *Notice of Successful and Backup Bidder With Respect to the Phase I Auction of Certain of*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

*the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [DE 1114] ("**Notice of Successful Bidder**"), and in support hereof states as follows:

## Background

1. On April 23, 2023 ("**Petition Date**"), each of the above-captioned debtors ("**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**").

2. Landlord and Bed Bath & Beyond, Inc. (the "**Debtor**") are parties to that certain Lease Agreement dated October 12, 2005 (as amended, the "**Lease**")[2] pursuant to which the Debtor, as tenant leases certain premises (the "**Premises**") at the shopping center knows as Miracle Marketplace in Miami, Florida from the Landlord and at which the Debtor operates Bed, Bath and Beyond Store No. 1110 (the "**Store**").

3. The Premises is located within a "shopping center" within the meaning of 11 U.S.C. § 365(b)(3).

4. The Debtor was not current in its payments due under the Lease as of the Petition Date.

5. On June 13, 2023, the Debtors filed the Notice, which states that, "pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors may assume and assign to the Successful Bidder the contract or agreement listed on Exhibit A to which you are a counterparty, upon approval of the Sale Transaction." [DE 714, p.2].

6. The Lease was identified in the Notice with a proposed cure amount of $82,954.85 (the "**Proposed Cure Amount**"). [DE 714, p.20].

---

[2] Upon information and belief, the Debtors and their real estate advisors have a copy of the Lease. A copy will be provided upon request.

7. Following the Phase I Auction on June 23, 2023, the Debtors filed the Notice of Successful Bidder which identified Burlington as the successful bidder for the Lease and, as with the Notice, listed the Proposed Cure Amount as $82,955.

**Limited Objection**

8. The Landlord does not object to the assumption of the Lease and the assignment of the Lease to Burlington provided that the correct cure amount is paid and all conditions of Section 365 of the Bankruptcy Code are satisfied.

9. In order to assume and/or assign a lease for nonresidential real property, a debtor must cure any monetary default outstanding at the time of assumption and provide adequate assurance of future performance under the subject lease. 11 U.S.C. § 365(b)(1).

10. When a lease is located in a shopping center, the requirement that the debtor provide adequate assurance of future performance includes adequate assurance

> [t]hat assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, financial agreement, or master agreement relating to such shopping center.

11 U.S.C. § 365(b)(3)(C).

Cure Amount

11. The Landlord objects to the proposed assumption of the Lease because the Proposed Cure Amount understates the outstanding balance due. The Debtor has identified a Proposed Cure Amount of $82,955.

12. As of July 5, 2023, the balance due under the Lease is $92,833.82. An itemization of these amounts is attached hereto as **Exhibit A**.

3

13. The Lease provides for the recovery of reasonable attorneys' fees, costs, and expenses in an action or proceeding pursuant to the Lease. Lease, Section 23.7.

14. In this Chapter 11 case, Landlord has enforced its rights under the Lease by, *inter alia*, conducting negotiations regarding the terms of the GOB sales at the outset of the case, monitoring filings regarding the proposed lease auction and assumption of leases, conferring with the Debtor regarding the proposed cure amount, participating in the Phase I auction, reviewing the Notice of Successful Bidder and, as set forth below, analyzing and asserting its rights regarding the use restrictions applicable to the Premises.

15. Through July 7, 2023, the Landlord has incurred $16,329.20 in legal fees and $115.92 in expenses in this matter. Pursuant to the Lease, Section 365 of the Bankruptcy Code, and applicable law, these amounts should be included in the cure amount.

16. As of July 10, 2023, the correct cure amount is:

| | |
|---|---|
| $92,833.82 | per Exhibit A |
| $16,329.20 | legal fees |
| $115.92 | expenses |
| **$109,278.94** | |

17. Accordingly, the Landlord submits that approval of the assumption and assignment of the Lease should be conditioned upon payment of $109,278.94 as the cure amount (the "**Correct Cure Amount**") pursuant to 11 U.S.C. § 365(b)(1)(A). In addition, the Debtor or its assignee should be required to pay any additional amounts that come due, or are incurred (including additional attorneys' fees), but remain unpaid through the effective date of assumption of the Lease.

Section 365(b)(3)(C)

18. As noted above, the Premises are within a shopping center known as Miracle Marketplace in which the Landlord leases various parcels to a variety of tenants. A number of the

leases at Miracle Marketplace, including the Lease, contain co-tenancy provisions, exclusivity provisions, and/or use restrictions.

19. The Lease provides that the Debtor shall comply with any current or future use restrictions contained in other leases in the shopping center. Lease, Section 13.3, attached hereto as **Exhibit B**.

20. The proposed assignment of the Lease to Burlington could violate the provisions of the Landlord's existing lease with Marshall's at Miracle Marketplace.

21. The Marshall's lease places limitations on the amount of space at Miracle Marketplace that may be "used for the sale or display of apparel at off-price within individual stores or departments of larger stores." Violation of this provision would trigger remedies for Marshall's. See Schedule B, Section 4 of Marshall's lease, attached hereto as **Exhibit C**.

22. Burlington has identified itself as an "off price" department store retailer. To the extent that Burlington may use the Premises for the sale or display of off-price apparel, the assignment of the Lease to Burlington could violate the existing restriction under the Landlord's lease with Marshall's and therefore fail to comply with Section 365(b)(3)(C).

23. Accordingly, any assignment of the Lease to Burlington must be conditioned upon the provision of adequate assurance that the assumption and assignment of the Lease will not violate the restrictions in the Landlord's lease with Marshall's at Miracle Marketplace. This adequate assurance could be in the form of a binding agreement that off-price apparent will not be sold or displayed by Burlington, an indemnification from Burlington, an agreement with Marshall's or other adequate assurance that the use of the Premises will not violate the terms of the existing leases at Miracle Marketplace.

**Reservation of Rights**

24. Landlord further reserves the right to amend and/or supplement this objection to make such other and further objections as may be appropriate prior to the hearing on the assumption and assignment of the Lease.

WHEREFORE, Landlord respectfully requests that the Court sustain this limited objection and grant the following relief:

(1) Conditioning assumption of the Lease on payment of the Correct Cure Amount of $109,278.94 plus any other amounts accruing under the Lease between the date of this filing and the date that the Lease is actually assumed or assumed and assigned;

(2) Conditioning assumption on the Debtor satisfying the requirement to provide adequate assurance of future performance, including that the assignment of the Lease shall not violate the provisions of any other lease at Miracle Marketplace; and

(3) Granting any other further relief that the Court may deem appropriate.

Dated: July 11, 2023

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

By: s/ Kenneth M. Klemm
Kenneth M. Klemm
NJ Bar No: 033451990
201 St. Charles Avenue, 36th Floor
New Orleans, Louisiana 70170
Tel: (504) 566-5258
kklemm@bakerdonelson.com

and

J. David Folds
901 K Street NW, Suite 900
Washington, DC 20001
Tel: (202) 508-3441
dfolds@bakerdonelson.com

# Exhibit A

## Lease Ledger

### Lease Information

Bed Bath and Beyond
Corporate Office
650 Liberty Avenue
Union, New Jersey 07083

| Field | Value |
|---|---|
| Date | 7/5/2023 |
| Lease Id | bedba00m |
| Property | mir1 |
| Location | Miracle Marketplace |
| Assigned Space(s) | 0303 |
| Customer | |
| ICS Code | |
| Lease Type | Prior Standard Lease |
| Sales Category | Home Furnishings |
| Lease Term | From 03/20/2009 To 01/31/2025 |
| Lease Area | 30,250() |
| Monthly Rent | 50416.67 |
| Office Phone | |
| Fax No | |
| E-Mail | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 3/1/2021 | State Sales Tax on Deferred Rent | 4,506.94 | | 4,506.94 |
| 03/16/23 | 2022 PY RET Adjustment Billing | 82,954.85 | | 87,461.79 |
| 03/16/23 | 2022 PY RET Adjustment Billing State Rent Tax | 5,392.07 | | 92,853.86 |
| 06/01/23 | Base Rent - Retail (06/2023) | 50,416.67 | | 143,270.53 |
| 06/01/23 | State Rent Tax for Base Rent - Retail (06/2023) | 3,277.08 | | 146,547.61 |
| 06/01/23 | Water/ Sewer (06/2023) | 154.00 | | 146,701.61 |
| 06/01/23 | ach | | 53,857.77 | 92,843.84 |
| 7/1/2023 | Base Rent - Retail (07/2023) | 50,416.67 | | 143,260.51 |
| 7/1/2023 | State Rent Tax for Base Rent - Retail (07/2023) | 3,277.08 | | 146,537.59 |
| 7/1/2023 | Water/ Sewer (07/2023) | 154.00 | | 146,691.59 |
| 7/3/2023 | ach | | 53,857.77 | 92,833.82 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 92,833.82 | 92,833.82 |

# Exhibit B

Section 13.3  Exclusives Which Tenant Must Honor.

13.3.1 Tenant shall honor certain exclusives granted by Landlord to certain other tenants in the Shopping Center pursuant to the terms of leases which have been executed prior to the Effective Date (hereinafter, *"Existing Exclusives"*) [a true and complete listing and description of such Existing Exclusives being attached hereto as Exhibit K-1], and shall not sublease, occupy or use all or any portion of the Premises, or permit all or any portion of the Premises to be occupied or used in violation of any such Existing Exclusive (except as may be specifically set forth on Exhibit K-1). Landlord represents and warrants that no Existing Exclusive(s) exist other than those listed on Exhibit K-1 hereto and that Exhibit K-1 is true accurate and complete, and covenants to indemnify, defend and hold Tenant harmless from and against all loss, cost, liability or expense (including, without limitation, reasonable legal fees) incurred by Tenant by reason of the enforcement by any person or entity of such unlisted Existing Exclusive. Notwithstanding the foregoing, Tenant shall be entitled to enter into a separate agreement with any tenant or other occupant for whose benefit the existing Exclusive is granted which nullifies or modifies the corresponding Existing Exclusive with regard to the Premises.

13.3.2 Tenant shall honor certain exclusives granted by Landlord to certain other tenants in the Shopping Center pursuant to the terms of leases which are executed from and after the Effective Date (hereinafter, *"Future Exclusives"*), and shall not sublease, occupy or use the Premises (or, in the event of a sublease, any applicable portion of the Premises), or permit the Premises (or, in the event of a sublease, any applicable portion of the Premises) to be leased, occupied or used, whether by Tenant or any sublessee, assignee, licensee or other occupant, in violation of any such Future Exclusive; provided, and on the condition that:

(a) The Future Exclusive shall bind Tenant only to the extent that it restricts Tenant from operating primarily for the same primary use as that engaged in by the beneficiary of the Future Exclusive (e.g., primarily as a bookstore, an office supplies store, a sporting goods store, a toy store, etc.);

(b) Landlord shall notify Tenant of the granting of such Future Exclusive within ten (10) business days after the execution of a lease containing such Future Exclusive, and, at the time Tenant receives such notice, (i) Tenant shall not have previously entered into an assignment of this Lease or a sublease of the Premises (or any portion thereof) which specifically permits a primary use which would violate such Future Exclusive; or (ii) neither Tenant nor any assignee of this Lease or subtenant of the Premises (or any portion thereof) shall then be engaged in a primary use which would violate such Future Exclusive;

(c) the premises occupied by the tenant benefiting from such Future Exclusive shall contain at least twenty thousand (20,000) square feet of Floor Area except as follows: (i) in the case of a jewelry store, there shall be no limit as to Floor Area; (ii) in the case of an electronics store or computer store, such as CompUSA, or an office store, such as Staples or Office Max, the premises shall contain at least eighteen thousand (18,000) square feet of Floor Area; and (iii) in the case of a bridal store, such as David's Bridal, the premises shall contain at least seven thousand five hundred (7,500) square feet of Floor Area.

(d) such Future Exclusive shall not relate to the sale, rental or distribution of soft goods, or men's, women's, and/or children's apparel or footwear (unless such Future Exclusive relates to specialized apparel, such as, for example, maternity apparel only, formalwear only, larger-sized apparel only, or uniforms only);

(e) Landlord and the tenant or occupant benefiting from the Future Exclusive shall have entered into a lease or other occupancy agreement for its premises within one (1) year after the Effective Date;

(f) the beneficiary of the Future Exclusive shall be a national or regional tenant of the Shopping Center except in the case of a jewelry store; and

(g) no Future Exclusive shall be granted for the sale of any or all of the Exclusive Items.

13.3.3 Except as expressly set forth in this Section 13.3, Tenant shall not be obligated to honor any exclusive granted by Landlord to any tenant in the Shopping Center.

# Exhibit C

(B) Landlord agrees that, from the date hereof until expiration of the term of this lease, Landlord will not permit more than thirty one thousand (31,000) square feet of space in the Project, in the aggregate (exclusive of a discount department store in excess of one hundred thousand (100,000) square feet and premises previously leased and listed on Schedule L attached hereto and any renewal or extension thereof, unless and until such spaces(s) are recaptured by the Landlord, collectively, the "Excluded Areas") to be used for the sale or display of apparel at off-price within individual stores or departments of larger stores devoting more than fifteen thousand (15,000) square feet to the sale or display of apparel at off-price. For purposes of clarification, shoes and jewelry shall not be aggregated into apparel. Except for the Excluded Areas, no other individual premises in the Project shall at any time contain more than fifteen thousand (15,000) square feet of floor area therein used or occupied for, or devoted to, the sale or display of apparel and related accessories at off-price. The foregoing restriction and computation of floor area, shall not apply to (i) the Excluded Areas, while excluded, (ii) any floor area not utilized for sales of apparel at off price (such term "off price" shall not apply to merchandise sold at discount, or below list or retail price during sales or promotions), (iii) any floor area so utilized for the sale of apparel within individual stores containing less than fifteen thousand (15,000) square feet, or departments of larger stores, which are less than fifteen thousand (15,000) square feet or (iv) a

SCHEDULE B                                     B-2
G:\Legal\SCHWARTZ\Marshalls\FL\MIAMI\CORAL GABLES\Lease 11-30-05 clean.doc

shoe store or a jewelry store. The computation of such floor area shall include one half (1/2) of all floor area in any aisles, corridors or similar spaces adjacent to or abutting any racks, gondolas, shelves, cabinets, counters or other fixtures or equipment containing or used for the sale or display of apparel and related accessories.

(C) In addition to all other remedies available to Tenant at law and in equity for a breach of the covenants contained in Paragraphs (A) and (B) of this Paragraph 4, if an occupant or tenant in the Project violates the provisions of Section 4(B) of this Schedule C through Landlord's failure to so restrict such use in such tenant's lease or occupancy agreement or Landlord's failure to exercise commercially reasonable efforts to enforce stated restrictions contained in such tenant's lease or occupancy agreement, Tenant shall be entitled to any of the following remedies on a non-exclusive basis: (i) Tenant may terminate this lease if the violation continues for more than one hundred fifty (150) consecutive days by giving thirty (30) days notice to Landlord or (ii) Tenant may seek injunctive relief to enjoin or restrain such occupant or tenant from engaging in a violation or a Prohibited Use. Notwithstanding anything to the contrary contained herein, so long as Landlord is using its best efforts to diligently enforce the restrictions contained in this Paragraph 4 against any tenant or occupant engaged in such violation, Tenant's termination right under this Paragraph 4(C) shall be stayed.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| IN RE: | Chapter 11 |
| | Case No. 23-13359-VFP |
| Bed Bath & Beyond, Inc., *et al.*, | |
| DEBTOR. | |

CERTIFICATE OF SERVICE

I do hereby certify that I have served the parties in this action listed below with a copy of the pleading(s) hereinbelow specified by mailing a copy of the same today by United States Mail, postage prepaid, to the following address(es):

Pleadings: Limited Objection of HART Miracle Marketplace, LLC to cure amount in connection with potential assumption and assignment of unexpired lease and reservation of rights.

Parties Served:   Bed Bath & Beyond Inc.
650 Liberty Avenue,
Union, New Jersey 07083

Michael D. Sirota
*via cm/ecf*

Warren A. Usatine
*via cm/ecf*

Felice R. Yudkin
*via cm/ecf*

US Trustee's Office
*via cm/ecf*

DATE OF SERVICE: July 11, 2023

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By:   /s/Savannah E. Lavender

7