**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Jay L. Lubetkin
*Counsel to Mad River Development LLC*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors. | Case No. 23-13359 (VFP)<br><br>Chapter 11<br><br>Jointly Administered<br><br>Hearing Date: July 18, 2023 at 2:30 p.m. |

## VERIFIED OBJECTION TO ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

Mad River Development LLC (the "Landlord"), by and through its attorneys, Rabinowitz, Lubetkin & Tully, LLC, hereby files and serves this, its Verified Objection to the Notice of Assumption of Certain Unexpired Leases filed by Bed Bath & Beyond Inc., *et al.* (collectively, the "Debtor"), by which it objects to the assumption and assignment of its lease with the Debtor, and respectfully shows as follows:

1. The Landlord is the landlord under a lease agreement as amended with Debtor Bed Bath & Beyond Inc. dated October 29, 2004 governing the premises located at 404 Route 3 West, Clifton, New Jersey (the "Lease"). The Debtor identifies the Lease as its lease number 1096.

2. On June 16, 2023, the Landlord filed its initial Objection (Docket No. 744) to the cure amount asserted to be due and owing to the Landlord. A copy of the Lease and Amendment to Lease which govern the terms and conditions of the Debtor's occupancy of the premises and the

rights and obligations of the parties to the Lease were attached as exhibits to the initial cure Objection.

3. On June 26, 2023, the Landlord amended its cure Objection (Docket No. 1023), including additionally within the claimed cure amount the legal fees and expenses incurred in connection with the Debtor's bankruptcy proceedings. The Landlord asserts such amounts are recoverable pursuant to the provisions of the Lease.

4. Since the filing of the initial and amended cure Objections, the Landlord has incurred further fees and expenses, including those associated with the drafting and filing of the within Objection, and will incur further fees and expenses associated with the Landlord's appearance at the hearing on the proposed assumption and assignment of the Lease scheduled for July 18, 2023.

5. Based on the foregoing, the Landlord asserts that the aggregate cure obligation due and owing under the Lease is now at least $66,921.21, not the $41,869 amount set forth in the Debtor's Notice of Assumption of Certain Leases (Docket No. 1157).

6. The Landlord further shows that the premises which are the subject of the Lease are included within a shopping center, such that the provisions of 11 U.S.C. § 365(b)(3) apply to the Debtor's request to assume and assign the Lease. Additionally, 11 U.S.C. § 365(b)(1)(A) requires that the Debtor cure all defaults or provide adequate assurance of the ability to cure all defaults under the Lease in connection with assumption and assignment.

7. Similarly, 11 U.S.C. § 365(b)(1)(C) requires adequate assurance of future performance under the Lease in connection with assumption. In turn, 11 U.S.C. § 365(b)(3)(A) requires that the financial condition and operating performance of any proposed assignee shall be

"similar" to the financial condition and operating performance of the Debtor as of the time the Debtor became the lessee under the Lease.

8. The Lease was entered into between the Landlord and the Debtor as of October 29, 2004.

9. The Debtor submits the financial condition and operating performance of the proposed assignee, Burlington Coat Factory Warehouse Corporation is not "similar" to that of the Debtor as of the time the Debtor became the Lessee under the Lease.

10. Attached hereto as Exhibit "A" is the public record quarterly report (Form 10-Q) of the Debtor for the quarter ending closest in time to the relevant October 29, 2004 Lease date. Attached hereto as Exhibit "B" is the public record annual report (Form 10-K) of the Debtor for the fiscal year ending February 26, 2005, the reporting fiscal year-end closest in time to the relevant Lease date. Those reports indicate that as of the time of the execution of the Lease with the Landlord, the Debtor had approximately 2.2 billion dollars in shareholder equity and net earnings for the year of approximately 505 million dollars. At that time, the Debtor's sales were increasing at the rates of approximately 23.5% and 30.6% on three month and six month comparative bases. Also at that time, the Debtor had a market cap of approximately 13 billion dollars.

11. By the Notice of Assumption of Certain Unexpired Leases to which this Objection relates, the Debtor proposes to assume and assign the Landlord's Lease to "Burlington Coat Factory Warehouse Corporation." The proposed Assumption and Assignment Agreement which is attached to the Debtor's Notice of Assumption of Certain Unexpired Leases defines the assignee as Burlington Coat Factory Warehouse Corporation, a Florida Corporation, "or its

3

designated affiliates reflected on Schedule A" to the Assumption and Assignment Agreement. The Schedule A attached to the Assumption and Assignment Agreement is blank.

12. The Landlord objects to the assumption and assignment of its Lease with the Debtor on the following bases:

(a) The proposed cure amount identified in the Notice of Assumption of Certain Unexpired Leases lists the cure amount as $41,869.11. As set forth above, the actual cure amount is no less than $66,921.21. Any assumption and assignment of the Lease must be accompanied by the payment to the Landlord of the cure amount of at least that amount;

(b) The Landlord objects to the assumption and assignment of its Lease to Burlington Coat Factory Warehouse Corporation to the extent that the Assumption and Assignment Agreement includes the proposed language "or its designated affiliates reflected on Schedule A." The absence of any provided financial information relating to an unidentified affiliate who may in the discretion of the Debtor or the proposed assignee be the ultimate assignee, precludes the Debtor from establishing that the financial condition and operating performance of the proposed assignee is "similar" to the financial condition and operating performance of the Debtor as of Lease extension, as 11 U.S.C. § 365(b)(3)(A) requires.

(c) The Landlord objects to the proposed assumption and assignment of its Lease to Burlington Coat Factory Warehouse Corporation unless the Lease is also guaranteed by Burlington Stores, Inc. No financial information has been provided regarding Burlington Coat Factory Warehouse Corporation. In fact, despite the

4

Debtor promising in its Notice of Successful and Backup Bidder (Docket No. 1114) to provide evidence of the proposed assignee's financial wherewithal within 3 business days (by Friday June 30, 2023) of the filing of that Notice, as of July 6, 2023, nothing respecting the financial condition of the proposed assignee had been provided to the Landlord. In response to Landlord's counsel's follow up communications with Debtor's counsel on July 6, 2023, the Landlord was given only the latest 10-Q and 10-K from "Burlington Stores, Inc.," the holding company for the proposed assignee and 20 other affiliates. Thus, the Landlord still has no financial information respecting Burlington Coat Factory Warehouse Corporation, and the Debtor has thus not sustained its burden under 11 U.S.C. § 365(b)(2)(A).

(d)  The Landlord objects to the assumption and assignment of its Lease to Burlington Coat Factory Warehouse Corporation because the financial condition and operating performance of the proposed assignee is not "similar" to that of the Debtor as of the execution of the Lease. The 10-K for Burlington Stores, Inc. for the fiscal year ending January 28, 2023, identifies the proposed assignee as one of twenty-one separate subsidiaries of the public company Burlington Stores, Inc. That list of subsidiaries is attached hereto as Exhibit "C." That 10-K, together with the 10-Q for Burlington Stores, Inc. for the quarter ending April 29, 2023 are the only documents provided to the Landlord to enable the Landlord to assess the financial condition and operating performance of the proposed assignee. Because those documents do not separately identify the financial condition or operating performance of the proposed assignee, "Burlington Coat Factory Warehouse

5

Corporation," without submitting additional information, the Debtor has not satisfied its burden as to adequate assurance or similar financial condition. Thus, if the assumption and assignment is approved over the Landlord's objection, the Landlord respectfully requests entry of a Bankruptcy Court Order requiring any assignment of its Lease to Burlington Coat Factory Warehouse Corporation to indicate the assignment is to both Burlington Coat Factory Warehouse Corporation and Burlington Stores, Inc., the public company that owns the twenty-one subsidiaries which are listed on Exhibit "C" attached hereto, and which public company has a market cap as of the drafting of this Objection of approximately 10.5 billion dollars.

(e)   The Landlord objects to the assumption and assignment of its Lease to Burlington Coat Factory Warehouse Corporation because the financial condition of it, and its affiliate, and the operating performance of it, and its affiliate, Burlington Stores, Inc., is not similar to that of the Debtor as of the execution of the Lease with the Landlord. By way of comparison, Burlington Stores, Inc. has a market cap of approximately 10.5 billion dollars, whereas the Debtor's market cap at the relevant time was approximately 13 billion dollars, an almost 20% differential. Burlington Stores, Inc. has 794 million dollars of shareholder equity while the Debtor had 2.2 billion dollars of shareholder equity at the time of Lease execution, an almost 65% differential. Burlington Stores, Inc. has net income of 230 million dollars, which evidences a decline of approximately 43% from the prior year, while the Debtor at the time of Lease execution had net income of approximately 505 million dollars, and which evidenced an increase from the

prior year of 26%. Thus, the Debtor's income was improving at the time of Lease execution and Burlington Stores, Inc.'s income is declining. Even further, the Debtor's income was more than twice that of the proposed assignee's holding company. Moreover, these numbers do not reflect an appropriate inflation adjustment, which given the more than 53% increase in inflation between 2004 and now, exacerbates the stark differences between the financial condition of the Debtor at the time of Lease execution and that of the proposed assignee. Certainly, the proposed assignee's financial condition is not similar to that of the Debtor at the time of Lease execution.

13. The Landlord also objects to the assumption and assignment of its Lease because of defects in the conduct of the auction that resulted in "Burlington," a company that was not identified at the auction other than by the designation "Burlington," associated with the manner in which the auction was conducted. The Debtor failed to require Burlington to allocate its bulk bid of $12,000,000, which related forty-four leases, on a separate lease by lease basis. Many auction participants objected to that failure and the Debtor refused to require an allocation. Of those forty-four leases subject to Burlington's bulk bid, twenty-five leases received no pre-auction bids from any potential assignee other than Burlington, but nineteen of those leases received pre-auction bids from both Burlington and other third parties, including in some cases, the landlord of those premises. The Lease was one of those nineteen leases. As the Landlord submits, and as substantially all of the parties who had placed pre-auction bids for those nineteen store locations will confirm, the failure of the Debtor to require Burlington to allocate its bulk bid among those nineteen stores had the effect of substantially chilling competitive bidding at the auction. By way of example only, the Landlord was prepared to bid up to 300% of its bid

actually made at the lease auction in response to bidding for its store premises on a standalone basis. However, because of the order in which the auction was conducted for the forty-four premises which were the subject of Burlington's bulk bid, which involved auctioning off the twenty-five stores on which there were no other bids first, and because of the failure to require Burlington to allocate its bid amongst all forty-four stores, by the time bidding occurred for the Landlord's Lease on a standalone basis, it was abundantly clear that no matter what amount the Landlord bid, the aggregate amount of separate lease bids could not exceed Burlington's bulk bid. Had Burlington's bulk bid been allocated on a lease by lease basis, the Landlord, and likely all other parties who placed competitive bids on other leases, would have engaged in further competitive bidding at the auction. That more intense competitive bidding likely would have resulted in the aggregate bids on a separate lease by lease basis, exceeding Burlington's bulk bid. The Landlord submits this defect in the auction process so substantially chilled competitive bidding that approval of the assumption and assignment of the forty-four leases to Burlington, which includes the Landlord's Lease, should not be sanctioned by the Court.

14. Additionally, the order of the bidding on the leases which were the subject of Burlington's bulk bid also chilled bidding. By first auctioning off the twenty-five stores where Burlington had no competition, it reduced the number of leases remaining within Burlington's bulk bid to a number which made exceeding the bulk bid highly unlikely regardless of what amounts were bid on what remained. If the more competitive leases were auctioned off first, it would have induced higher bids earlier in the auction process given the realistic potential of exceeding Burlington's bulk bid, and in which case, the bulk bid would have likely been topped.

15. The Landlord also advises that at least one competitive bidder announced during the conduct of the lease auction through counsel, R. Scott Shuker, Esq., that in response to its

inquiries regarding the availability of one of the leases that was subject to Burlington's bulk bid, it was advised that "a lease was already signed" and thus that party was told he "could not bid because a lease was already signed." The portion of the auction transcript evidencing this recitation by counsel expressing concern, and requesting the matter be investigated, is attached as Exhibit "D." The Landlord submits that the communication that a party could not bid also had the prospect of chilling competitive bidding, especially if the comment was published to others. Thus, Burlington's bulk bid should not be approved by the Court.

16. Finally, the Landlord finds it noteworthy that Debtor's counsel, Kirkland & Ellis LLP, apparently represented Burlington Coat Factory Warehouse Corporation in its July 15, 2011 Registration Statement with the SEC. A copy of the cover page of that Registration Statement is attached hereto as Exhibit "E." There is no mention of any prior representation of Burlington Coat Factory Warehouse Corporation in Kirkland & Ellis' retention pleadings on behalf of the Debtor, or any supplementary disclosure of which the Landlord is aware. Additional disclosures regarding the relationship between Debtor's counsel and Burlington, particularly given the decision not to require an allocation of Burlington's bulk bid, is appropriate before any serious consideration of approving Lease assumption and assignment to Burlington.

17. Based on the foregoing, the Landlord respectfully requests that the Bankruptcy Court deny the Debtor's request for assumption and assignment of its Lease to Burlington Coat Factory Warehouse Corporation.

9

**WHEREFORE,** Mad River Development LLC respectfully requests entry of a Bankruptcy Court Order denying the Debtor's request for approval of the assumption and assignment of its Lease to Burlington Coat Factory Warehouse Corporation.

Respectfully submitted,

**RABINOWITZ, LUBETKIN & TULLY, LLC**
*Counsel for Mad River Development LLC*

Dated: July 11, 2023

By: ___/s/ Jay L. Lubetkin_____
    JAY L. LUBETKIN

## VERIFICATION

Laury Pensa, hereby verifies pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the factual statements contained in the foregoing Verified Objection are true and correct to the best of his knowledge, information, and belief.

By: _____
LAURY PENSA

Dated: July 10, 2023