| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**Norris, McLaughlin, PA**<br>Melissa A. Pena<br>400 Crossings Boulevard, 8th Floor<br>Bridgewater, New Jersey 08807<br>D:  917.369.8847<br>F: 908.722-0700<br>E: mapena@norris-law.com<br><br>**Chamberlain, Hrdlicka, White, Williams &<br>Aughtry, P.C.**<br> Jarrod B. Martin<br> Texas Bar No. 24070221<br> Tara T. LeDay<br> Texas Bar No. 24106701<br> 1200 Smith Street, Suite 1400<br> Houston, Texas 77002<br> D: 713.356.1280<br> F: 713.658.2553<br> E: jarrod.martin@chamberlainlaw.com<br> E: tara.leday@chamberlainlaw.com<br><br>*ATTORNEYS FOR RUSHMORE CROSSING, LLC* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>Judge:  Vincent F. Papalia<br><br>(Jointly Administered) |

### RUSHMORE CROSSING, LLC'S OBJECTION TO THE PROPOSED SALE, ASSUMPTION AND ASSIGNMENT, AND CURE AMOUNT OF REAL PROPERTY LEASE FOR PREMISES LOCATED AT 1365 EGLIN STREET, RAPID CITY, SOUTH DAKOTA [STORE NO. 105]

Rushmore Crossing, LLC ("**Rushmore**" or "**Landlord**"), creditor and party-in-

interest, and by and through its undersigned attorneys, hereby object to the sale, assumption and

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number is 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of the Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

assignment[2] of the real property lease for the premises located at 1365 Eglin Street, Rapid City, South Dakota (Store No. 105)("**Premises**"), and respectfully represents as follows:

## BACKGROUND

1.       Rushmore is the Landlord under a real property lease ("**Lease**") for the Premises, dated May 14, 2010, with Bed Bath & Beyond Inc., ("**Debtor**"). The Premises is located in a commercial shopping center ("**Shopping Center**") located at 1365 Eglin Street, Rapid City, South Dakota.

2.       On June 30, 2023, the Debtors filed a *Notice* ("**Assumption Notice**")[3] pursuant to the Lease Sale Procedures Order.[4]

3.       On May 22, 2023, the Court entered an *Order Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief.*[5]

4.       Pursuant to the Lease Sale Procedures Order, the Debtors conducted the Lease Auction with respect to certain of the Lease Assets at the Offices of Kirkland & Ellis, LLP on June 26, 2023.

5.       On June 27, 2023, the *Notice of Successful and Backup Bidder With Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases,*[6] naming Burlington Coat Factory Warehouse Corporation ("**Burlington**") as the successful bidder in the amount $12,000,000.

6.       Debtors propose to sell the Lease to Burlington pursuant to the Assumption Notice. The Debtors' proposed cure amount for Rushmore is $0.00.

---

[2] As described in *Debtors Notice of Assumption* [ECF 1114 and 1157].
[3] ECF 1157.
[4] ECF 422.
[5] *Id.*
[6] ECF 1114.

## RELIEF REQUESTED

7.      Landlord requests that any assumption and assignment of Landlord's Premises be conditioned upon the compliance with Bankruptcy Code §365(b)(3)(C) that prohibits a violation of other restrictive covenants to avoid any risk of forfeiture of certain restrictive lease covenants and other negative consequences that would ensue from a change in use of the space occupied by Debtor. Landlord further requests that Court order the correct cure amounts to be paid to it promptly upon the assumption of the Lease.

## OBJECTION TO PROPOSES SALE AND ASSUMPTION AND ASSIGNMENT

8.   Section 365(b)(1) of the Bankruptcy Code provides as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such lease or contract, the trustee—
>
> (a) Cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (b) Compensates, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (c) Provides adequate assurance of future performance under such contract or lease.[7]

9.      When a debtor in possession elects to assume an executory contract or unexpired lease under Bankruptcy Code Section 365, it assumes the contract or lease, so that the debtor in possession must assume all the benefits, burdens and obligations attendant thereto.[8] The rationale

---

[7] 11 U.S.C. § 365(b)(1).
[8] *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-21 (1984); *In re Klein Sleep Products, Inc.* 78 F.3d 18, 24 (2d Cir. 1996); *In re Jamesway Corp.* 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996).

behind Section 365(b) is to ensure that the contracting parties receive the benefit of their bargain

if a lease or contract is assumed.[9]

10.    Section 365(f)(2) of the Bankruptcy Code provides as follows:

The trustee may assign an executory contract or unexpired lease of the debtor only
if---

(A) The trustee assumes such contract or lease in accordance with the provisions
with the provisions of this section; and

(B) Adequate assurance of future performance by the assignee of such contract or
lease is provided, whether or not there has been a default under such contract
or lease.[10]

11.    Congress enacted special protections for landlords of shopping centers. Pursuant to

Section 365(b)(3) of the Bankruptcy Code, shopping center landlords are afforded the following

special protections:

(3) For the purposes of paragraph (1) of this subsection and paragraph
(2)(B) of subsection (f), adequate assurance of future performance of
a lease of real property in a shopping center includes adequate
assurance---

(A) of the source of rent and other consideration due under such
lease, and in the case of an assignment, that the financial
condition and operating performance of the proposal
assignee and its guarantors, if any, shall be similar to the
financial condition and operating performance of the debtor
and its guarantors, if any, as of the time the debtor became
the lessee under the lease;

(B) That any percentage rent due under such lease will not
decline substantially;

(C) *That assumption or assignment of such lease is subject to
all the provisions thereof, including (but not limited to)
provisions such as a radius, location, use, or exclusivity
provision, and will not breach any such provision*

---

[9] In re Ionosphere Clubs, Inc., 85 F. 3d 992, 999 (2d Cir. 1996). *See also Matter of U.L. Radio Corp.,* 19 B.R. 537,
541 (Bankr. S.D.N.Y. 1982)("If a trustee is to assume a contract or lease, the courts will have to insure that the trustee's
performance under the contract or lease gives the other contracting party the full benefit of the bargain.")
[10] 11 U.S.C. §365(f)(2).

4

*contained in any other lease… relating to such shopping center; and*

(D) That assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.[11]

12.     The term "adequate assurance of future performance" is not statutorily defined, but courts have determined that "whether 'adequate assurance of future performance' has been provided is determined by the facts and circumstances of each case.[12] As movants, the Debtors bear the ultimate burden of persuasion regarding satisfaction of the requirements under Bankruptcy Code Section 365 and proving adequate assurance of future performance in connection with the potential assumption and assignment of a lease.[13]

13.     Because the Bankruptcy Code does not define "shopping center," courts have interpreted the term on a case-by-case basis.[14] "*Congress described a shopping center as 'often a carefully planned enterprise, and though it consists of numerous individual tenants, the center is planned as a single unit.'*"[15] The multi-factor test set forth by the Third Circuit in Joshua Slocum is regularly used by courts in determining whether premises are a "shopping center" under Section 365(b)(3)." In re Ames Dept. Stores, Inc., 348 B.R. 91, 95 (Bankr. S.D.N.Y. 1996), citing Joshua Slocum, 922 F.2d at 1087-88. 10. Bankruptcy courts making a determination of whether premises are a "shopping center" consider whether a majority of the following factors are present: (1) a combination of leases; (2) all leases held by a single landlord; (3) all tenants engaged in the

---

[11] 11 U.S.C. § 365(b)(3)(emphasis supplied). "Section 365(b)(3) imposes heightened restrictions on the assumption and assignment of leases for shopping centers… to protect the rights of the lessors and the center's other tenants."*Androse Associates of Allaire, LLC v. Great Atlantic & Pacific Tea Co., Inc. (In re Great Atlantic & Pacific Tea Co., Inc.),* 472 B.R. 666, 676 (S.D.N.Y. 2012)(emphasis supplied), *citing In re Joshua Slocum Ltd.,* 922 F.2d 1081, 1086 (3d Cir. 1990) ("*Androse v. A&P*").

[12] *Androse v. A&P,* 472 B.R. 666, 674 (S.D.N.Y. 2012), *citing In re M. Fine Lumber Co.,* 383 B.R. 565, 572 (Bankr. E.D.N.Y. 2008).

[13] In re F.W. Restaurant Assoc., Inc., 190 B.R. 143, 147 (Bankr. D. Conn. 1995).

[14] *Androse v. A&P,* at 677.

[15] *Matter of U.L. Radio Corp*., 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982) (emphasis supplied), citing HR. Rep. No. 95-595, 95th Cong., 1st Sess., 347 (1977).

FIRMDMS\201010\000022\30943087.v1-7/11/23

commercial retail distribution of goods; (4) the presence of a common parking area; (5) the purposeful development of the premises as a shopping center; (6) the existence of a master lease; (7) the existence of fixed hours during which all stores are open; (8) the existence of joint advertising; (9) contractual interdependence of the tenants as evidenced by restrictive use provisions in their leases; (10) the existence of percentage rent provisions in the leases; (11) the right of the tenants to terminate their leases if the anchor tenant terminates its lease; (12) joint participation by the tenants in trash removal and other maintenance; (13) the existence of a tenant mix; and (14) the contiguity of the stores.[16]

### A. Rushmore Crossing, LLC is a Shopping Center for Purposes of 11 U.S.C. § 365(b)(3)

14.    Rushmore satisfies the definition of a shopping center under a majority of the *Slocum* factors. As set forth in the Declaration of Mike Sanchez ("**Sanchez Declaration**"), which is filed here in support of this Objection, the property was purposefully developed as a commercial shopping center and consists of approximately 800,000 of square feet of retail space[17]. The major tenants of the Shopping Center include Target, Ross Dress for Less, Boot Barn, Bed Bath & Beyond, Michaels, T.J. Maxx, Scheels, Shoe Carnival, Old Navy, Big Lots, Petco, Five Below, Dollar Tree, Ulta, and Sam's Club.[18] It has ample parking in accordance with all local laws and requirements.[19]

15.    Pursuant to Section 13.3.1 "Tenant shall honor certain exclusives granted by Landlord to certain tenants or occupants in the Shopping Center pursuant to the terms of the leases

---

[16] *Ames*, 348 at 95.
[17] Although the Shopping center consists of approximately 800,000 square feet, Rushmore owns approximately 339,000 square feet of retail space, including the Bed Bath & Beyond Premises.
[18] Although the Shopping Center includes the major tenants, Rushmore does not own the parcels where those Target, Ross Dress for Less, Boot Barn and Sam's Club are located but own the parcels for other tenants whose lease contain restrictions akin to the Debtor's lease. Rushmore lists the major tenants in support of the fact that the Premises is located in the Shopping Center.
[19] *See* Declaration.

which have been executed prior to the Effective Date (hereinafter, "**Existing Exclusives**")… shall not sublease, occupy or use all or any portion of the Premises to be occupied or used in violation of any such Existing Exclusive."  Rushmore granted certain exclusives to other tenants in which it agreed not to lease or sell space in the Premises or agree to any assignment or subletting to any tenant whose primary or principal use was contrary to that of the tenants' exclusive use.

16.     The proposed lease sale to Burlington violates §365(b)(3)(C) since Burlington does not intend to abide by the Existing Exclusives granted to other tenants on the Premises. §365(b)(3)(C) specifically requires that the "assumption or assignment of such lease is subject to all the provisions thereof, including…[the] exclusivity provision[s], and will not breach any such provision contained *in any other lease*… relating to such shopping center." Burlington is therefore bound by the Existing Exclusives agreed to between Rushmore and certain other tenants in the Shopping Center. The possibility of losing the current tenant and having a tenant in its place that fails to use the property in strict accordance with the requirements of the Existing Exclusives needs to be resolved before Rushmore can consent to the assumption of the lease to the successful bidder. Rushmore is concerned that the proposed new tenant will violate the Existing Exclusives as to the type of business permitted at the Premises and therefore objects to the assumption of the lease pursuant to Bankruptcy Code §365(b)(3)(C).

17.     Rushmore asks that the Debtor engage in assignment discussions only with potential tenants that would comply with the terms of the Existing Exclusives, to avoid any risk of Rushmore's potential breach of leases with other tenants of the Shopping Center and to avoid the other negative consequences that would ensue from a change in use of the space occupied by Bed, Bath & Beyond which would violate 11 U.S.C. §365(b)(3)(C).

## <u>OBJECTION TO PROPOSED CURE AMOUNTS</u>

18.     The Assumption Notice also lists the Debtors' proposed cure amount incorrectly. The information provided below shows the Debtors' proposed cure amount and the actual cure amount for the Rushmore Lease.

| Landlord | Property | Proposed Cure Amount | Actual Cure Amount |
|---|---|---|---|
| Rushmore Crossing, LLC | 1365 Eglin Street, Rapid City, South Dakota | $0.00 | $68,348.89 |

19.     The cure amount ("**Cure Amount**") of $68,348.89 is the current amount which should be used in any final order authorizing the assumption of the Lease and/or establishing the Cure Amount, plus any additional unpaid amounts, including 2023 taxes at a per diem rate of $97.20, which accrue and remain unpaid prior to the date of assumption. This amount includes post-petition charges which remain unpaid, including any charges which may accrue prior to the date of assumption.

20.     Prior to the date of any assumption or assignment, and regardless of when those amounts accrue, pursuant to the contractual obligations of the Lease, other amounts such as common area maintenance, taxes, insurance and potentially other amounts, including any periodic adjustment of charges, may come due to Rushmore. Either any cure amount should include any unpaid amounts which accrue prior to the date of any assumption and assignment, or the Debtors or any assignee must be responsible for payment of these amounts.

21.     Any order that is entered establishing a cure amount with respect to the Leases must require the Debtors to (1) pay Rushmore their actual cure amount, (2) comply with all obligations under the Lease pursuant to 11 U.S.C. § 365(b)(3) pending the actual assumption of the Lease, (3) cure any additional defaults that may occur under the Lease between the date of this Objection and

the effective date of any assumption by the Debtors, and (4) ensure that the Debtors or any assignee will be expressly responsible and liable for the payment of any charges that come due under the Lease post-assumption and assignment, but that may relate to a pre-assumption and assignment period. In addition, any purchaser must execute a document in a form acceptable by Rushmore in which it ratifies the Lease and assumes the obligations.

### **RESERVATION OF RIGHTS**

22.     Rushmore reserves the right to amend and/or supplement this Objection to assert any additional objections regarding the ability of the proposed assignee of the Lease to assume such Lease, and in connection with any proposed showing of adequate assurance of future performance for any purchase if assigned.

WHEREFORE, Rushmore respectfully requests that (a) the Court sustain this Objection; (b) any assumption and assignment of the Lease be conditioned upon the Lease and Existing Exclusives, to avoid any risk of default by Rushmore; (c) establish the actual cure amount owed to Rushmore consistent with the Cure Amount set forth in **Exhibit A;** and (d) grant Rushmore such additional and further relief as the Court deems to be just and proper.

*[Remainder of Page Intentionally Left Blank]*

FIRMDMS\201010\000022\30943087.v1-7/11/23

Dated: July 11, 2023                    **NORRIS, MCLAUGHLIN, PA**

                                        */s/ Melissa A. Pena*
                                        Melissa A. Pena

                                        *and*

                                        **CHAMBERLAIN, HRDLICKA, WHITE,
                                            WILLIAMS & AUGHTRY, P.C.**

                                        By: */s/ Jarrod B. Martin*
                                        Jarrod B. Martin
                                        Texas Bar No. 24070221
                                        Tara T. LeDay

                                        ***Counsel for Rushmore Crossing, LLC***