<table>
<tr><td colspan="2">

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
John S. Mairo, Esq.
jsmairo@pbnlaw.com
--and--
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, OH  44113
(216) 583-7120
(216) 583-7121 Facsimile
Michael S. Tucker, Esq.
(*pro hac vice admission to be sought*)
mtucker@ulmer.com

*Counsel to U.S. 41 & I-285 Company LLC*

</td></tr>
<tr><td>

In re:

BED BATH & BEYOND INC., *et al.*,

Debtors.[1]

</td><td>

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

</td></tr>
</table>

**OBJECTION OF U.S. 41 & I-285 COMPANY LLC TO THE DEBTORS'
<u>NOTICE OF ASSUMPTION OF CERTAIN UNEXPIRED LEASES</u>**

U.S. 41 & I-285 Company LLC (the "**Landlord**") files this objection (the "**Objection**"),

by and through its undersigned counsel, to the Debtors' *Notice of Assumption of Certain Unexpired*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Leases* (the "**Assumption Notice**") [Docket No. 1157],[2] and respectfully represents as follows:

## THE LEASE

1.      Landlord, as successor-in-interest to U.S. 41 & I-285 Company, and Bed Bath & Beyond Inc. (the "**Tenant**") are parties to that certain Lease Agreement dated as of October 3, 2005 with respect to premises consisting of 29,000 square feet of Floor Area and located at Akers Mill Square in Atlanta, Georgia (the "**Premises**").   The Lease Agreement was amended or supplemented by a Rent Commencement and Expiration Date Agreement dated as of March 14, 2006, and Amendment to Lease Agreement dated as of May 10, 2007, a Second Amendment to Lease Agreement dated as of March 15, 2011, a Third Amendment to Lease Agreement dated as of January 30, 2019, a Fourth Amendment to Lease dated as of August 23, 2021, a letter dated April 25, 2016 and letter agreements dated July 18, 2005 and July 29, 2005.  The Lease Agreement, as modified or amended (including those modifications and amendments listed above) is hereinafter referred to as the "**Lease**".  A copy of the Lease Agreement, the First Amendment, the Second Amendment, the Third Amendment and the Fourth Amendment are attached respectively as **Exhibits A, B, C, D** and **E**.

## BACKGROUND FACTS

2.      On April 23, 2023 ("**Petition Date**"), the Debtors filed their petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

3.      The Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g., In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

4.      On May 22, 2023, the Court entered the *Order (I) Establishing Procedures to Sell*

---

[2] Terms not defined herein shall have the meanings ascribed to them in the Assumption Notice and accompanying documents.

*Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422] which, among other things, approved the expedited procedures for the assumption and assignment of unexpired leases.

5.      On June 23, 2023, the Debtors filed the *Notice of Phase 1 Lease Auction, Qualified Bids, Lease Sale Hearing, and Related Lease Asset Information* [Docket No. 905] (the "**Phase 1 Auction Notice**"), which (i) notified interested parties that the Debtors had received one or more Qualified Bids on certain Lease Assets, as set forth on Schedule 1 attached thereto, (ii) confirmed the time and place of the Phase 1 Lease Auction and set forth the Permitted Auction Attendees (as defined herein), and (iii) notified interested parties that the Debtors, in consultation with the Consultation Parties, would file a supplemental notice to the Phase 1 Auction Notice confirming whether certain Lease Assets associated with the Debtors' "buybuy BABY" banner would be included in the Phase 1 Auction.

6.      On June 27, 2023, the Debtors filed the *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Doc. No. 1114], in which they advised that the Phase I Lease Auction resulted in the proposed sale of the Lease to "Burlington". *See* Doc. No. 1114, p. 9, no. 53.

7.      The Assumption Notice was filed on June 30, 2023, and identified the Assignee of the Lease as Burlington Coat Factory Warehouse Corporation ("**Burlington**").  Pursuant to the Assumption Notice, July 11, 2023 at 5:00 pm was the Objection Deadline.

8.      Pursuant to the Assumption Notice, the Debtors listed the "Proposed Cure Amounts" for the Landlord's lease as $6,796 ("**Proposed Cure Amount**").

**OBJECTIONS**

**A.    Assignment of the Lease to Burlington Will Disrupt the Tenant Mix**

9.    The Assumption Notice fails to provide the Landlord with adequate assurance of future performance because it fails to (i) acknowledge that the assignment of the Lease to Burlington will disrupt the tenant mix at Akers Mill Square, and (ii) indicate that Burlington will be bound by Existing Exclusives.

10.    11 U.S.C. § 365(b)(3)(D) provides that for a shopping center, adequate assurance of future performance includes "that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center."

11.    As indicated in the Lease, and as generally acknowledged in the Atlanta Metropolitan Market by customers and tenants, Akers Mill Square is an upscale, first-class shopping center and Landlord is bound to maintain it as such. *See* Lease Sections 8.1.7 and 13.1.2, and as per other lease agreements the Landlord has with tenants at Akers Mill Square.

12.    Section 13.2.2 of the Lease specifically prohibits discount department stores such as Burlington.  Burlington may also violate the Prohibited Uses identified in Exhibit M to the Lease ("Prohibited Uses") at Section (41) prohibiting stores which sell "clearance" and "over stock" merchandise.

13.    The Landlord's breach of such provisions subjects the Landlord to penalties from other tenants, including significantly reduced rent and has the potential of reducing the quality of the tenant mix in the shopping center overall.

14.    The assignment or sale of the Lease to Burlington, which could be considered a surplus store or discount retailer, would violate the terms of the Lease, and therefore, it would be in violation of 11 U.S.C. § 365(b)(3)(C) and (D).  Additionally, there is no assurance that

Burlington will not otherwise violate the Existing Exclusives.

**B.      Insufficient Cure Amount**

15.      Prior to any assumption or assignment of unexpired leases in these bankruptcy cases, the Debtors are required by section 365(b)(1) of the Bankruptcy Code to provide adequate assurance (a) that the Debtors will promptly cure all defaults under the unexpired leases to be assumed and assigned and (b) of the future performance of a proposed assignee under the terms of any unexpired leases sought to be assumed and assigned.

16.      As of June 20, 2023, the Debtors' Proposed Cure Amount, including attorney fees, is understated as follows:

| Property Name | Debtor | Debtor Proposed Cure Amounts | Lease Cure Amount | Attorneys' Fees | Total Cure Amount |
|---|---|---|---|---|---|
| Akers Mill Square | Bed Bath & Beyond Inc. | $6,796.00 | $6,796.00 | $2,500.00 | $9,296.00 |

Thus, before the Debtors may assume and assign the Lease to Burlington, they must provide adequate assurance that they will pay the Total Cure Amount and that Burlington will be able to perform under the Lease and not in violation of it in the future.

17.      In addition, the Debtors remain responsible for all accrued or accruing charges under the Lease and must pay such charges when they come due under the Lease, or confirm that such amounts will be timely paid by Burlington.  The Debtors must assume and assign the Lease subject to its terms, and Burlington must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease.  Any final assumption and assignment or confirmation order should clearly state that Burlington will assume the obligations under the Lease and pay them when due, regardless of whether they relate to the period prior to, or after, the assumption and assignment.  Furthermore, any provision in an

assumption and assignment or confirmation order that purports to release the Debtors of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease, and that such obligations shall become the obligations of Burlington.

18.    Some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  Subject to the terms of the Lease, the Debtors pay fixed minimum rent, along with (where applicable) a pro-rata share of expenses such as real property taxes, insurance, utilities, tenant operating contributions ("**CTOC**"), fees, annual percentage rent, and the like.  Certain charges, such as CTOC and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred.  To the extent the estimated payments exceed actual charges; the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years may not yet be complete.  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Because these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time, but upon assumption and assignment all of those obligations shall become obligations of Burlington.

19.    Finally, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any claims resulting from injury or damages to persons or property occurring in or about the Premises. Any assumption and assignment of the Lease must be subject

to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when any claim arose.[3] Nothing in any assumption and assignment or confirmation order should preclude the Landlord from pursuing Burlington, its insurance, or any other party that may be liable under the Lease, and the Landlord specifically reserves its rights to pursue such rights irrespective of any amounts claimed herein.

20.      Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption.  To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid promptly upon the assumption or assumption and assignment of the Lease.  The Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption of the Lease to deal with any disputes that remain unresolved after such period.

21.      The Landlord reserves the right to amend and/or supplement this Objection on any basis, including, without limitation, by adding and supplementing objections to the Debtor's proposed cure amounts and by adding or supplementing objections to the adequate assurance of future performance provided by the Debtors or any proposed assignee(s).

---

[3] Any ability to assume the Lease is subject to the protections provided by Section 365(b) and (f).  Therefore, any assumption must be in accordance with all provisions of the Lease.

WHEREFORE, the Landlord respectfully requests that this Court enter an Order sustaining this Objection, denying the assumption of the Lease by the Debtors and the assignment of the Lease to Burlington, or otherwise granting relief consistent with this Objection, and granting the Landlord such other and further relief to which it may be entitled under applicable law or in equity.


Dated: July 11, 2023                                        **PORZIO BROMBERG & NEWMAN, P.C.**

                                            By: */s/ John S. Mairo*
                                                John S. Mairo, Esq.
                                                100 Southgate Parkway
                                                Morristown, NJ 07962-1997
                                                (973) 538-4006
                                                (973) 538-5146 Facsimile
                                                jsmairo@pbnlaw.com


                                                --and--


                                            **ULMER & BERNE LLP**
                                            1660 West 2nd Street, Suite 1100
                                            Cleveland, OH 44113
                                            (216) 583-7120
                                            (216) 583-7121 Facsimile
                                            Michael S. Tucker, Esq.
                                            *(pro hac vice admission to be sought)*
                                            mtucker@ulmer.com

                                            *Counsel for U.S. 41 & I-285 Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2023, I caused a true and correct copy of the foregoing document to be served by electronic means through the CM/ECF system to all registered participants in this case and by e-mail on the parties identified on the Service List.

*/s/ John S. Mairo*
John S. Mairo

**Service List**

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Joshua A. Sussberg, P.C.,
Emily E. Geier, P.C.,
Derek I. Hunter, and
Ross J. Fiedler
Email: joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com
ross.fiedler@kirkland.com

Cole Schotz P.C.
Michael D. Sirota, Esq.
Warren A. Usatine, Esq., and
Felice R. Yudkin, Esq.
25 Main Street Hackensack
New Jersey 07601
email: msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attn: David M. Hillman
DHillman@proskauer.com
Charles A. Dale
cdale@proskauer.com

Office of the United States Trustee
Andrew R.Vara, U.S. Trustee, Regions 3 & 9
Fran B. Steele, Esq.
Fran.B.Steele@usdoj.gov
Alexandria Nikolinos
alexandria.nikolinos@usdoj.gov

Pachulski Stang Ziehl & Jones LLP
Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
780 Third Avenue, 34th Floor
New York, NY 10017
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com