# EXHIBIT D

## THIRD AMENDMENT TO LEASE

THIS THIRD AMENDMENT TO LEASE ("*Amendment*"), dated as of the 30th day of January, 2019 by and between U.S. 41 & I 285 COMPANY LLC, a Delaware limited liability company ("*Landlord*"), having an office at c/o Olshan Properties, 5500 New Albany Road, Suite 200, Albany, Ohio 43054 and BED BATH & BEYOND INC., a New York corporation ("*Tenant*"), having an office at 650 Liberty Avenue, Union, New Jersey 07083.

### W I T N E S S E T H :

WHEREAS, Landlord, as successor-in-interest to U.S. 41 & I 285 Company, and Tenant are parties to that certain Lease Agreement dated as of October 3, 2005 ("*Original Lease*"), with respect to premises ("*Premises*") located at Akers Mill Square in Atlanta, Georgia ("*Shopping Center*"); and

WHEREAS, the Original Lease was amended or supplemented by a Rent Commencement and Expiration Date Agreement dated as of March 14, 2006, an Amendment to Lease Agreement dated as of May 10, 2007, a Second Amendment to Lease Agreement dated as of March 15, 2011, a letter dated April 25, 2016 and letter agreements dated July 18, 2005 and July 29, 2005  (collectively, as amended, the "*Lease*"); and

WHEREAS, Landlord and Tenant desire to amend the Lease on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Amendment and other valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. The recitals hereinabove set forth are incorporated into this Amendment by this reference.  Capitalized terms used, but not defined herein, shall have the meanings ascribed them in the Lease.

2. The Section 1.1.12(c) and (d) (Fixed Rent) of the Lease is hereby deleted in its entirety and the following language shall be substituted in lieu thereof:

    (c) In the event Tenant exercises the second Renewal Option (*i.e.*, from February 1, 2022 through January 31, 2027), for the second five (5) year Renewal Period, at the rate of Three Hundred Forty-Eight Thousand Dollars ($348,000) per year (based on Twelve Dollars ($12.00) per square foot of Floor Area in the Premises); and

    (d) In the event Tenant exercises the third Renewal Option (*i.e.*, from February 1, 2027 through January 31, 2032), for the third five (5) year Renewal Period, at the rate of Four Hundred Six Thousand Dollars ($406,000) per year (based on Fourteen Dollars ($14.00) per square foot of Floor Area in the Premises)."

3. Section 1.1.28 (Permitted Use) of the Lease shall be modified to provide that the "Permitted Items" shall include the operation of "Demonstration Areas" (hereafter defined) within the Premises.  As used herein, *"Demonstration Areas"* shall mean an area or areas located within the Premises, for the purpose of demonstrating to Tenant's customers and invitees various products (including, without limitation, food and cooking products), which Demonstration Areas shall at all times be operated in full compliance with all Legal Requirements, and provided that in no event shall such areas offer training or educational services that are not related to Tenant's promotion for the sale of one or more Permitted Items.

4. The following Sections 8.1.10 shall be deemed added to Article 8 (Alterations and Improvements) of the Lease:

"8.1.10    Tenant shall be entitled to receive any and all *"Incentives"* (hereinafter defined) which Tenant may negotiate with, or derive from governmental, non-governmental, private or public utility, or other entities (each, an *"Incentive Issuer"*) pertaining to construction and/or remodeling (including without limitation Tenant's Work) of the Premises, hiring of employees, or other business operations of Tenant which would cause an owner or occupant of the Premises to be entitled to an Incentive. As used herein, the term *"Incentive"* shall include, without limitation, any cost reduction, refund, voucher, credit, tax relief, abatement, or other monetary inducement (such as, for examples only, energy efficiency incentives, property tax abatements or grants, sales tax refunds or grants, tax credits, governmental grants, utility rebates or refunds, or any other benefit or amount negotiated by, or otherwise allowed to Tenant). If any such Incentive that Tenant negotiates is required by an Incentive Issuer to be paid or credited directly to Landlord, then: (i) Landlord shall elect to take the Incentive in a lump sum, or if that is not permitted, then in the shortest number of installments possible, so as to permit Tenant to recoup the full amount of the Incentive during the Term of this Lease, and (ii) within thirty (30) days after Landlord's receipt of the Incentive, Landlord shall pay Tenant for such amount; provided however, in the event an Incentive is paid or credited to Landlord in monthly or similar periodic installments, Landlord may pay Tenant the aggregated Incentive amounts at the end of each calendar quarter. Landlord's obligations pursuant to this paragraph shall survive the expiration or earlier termination of the Lease. Notwithstanding anything herein to the contrary, if Landlord fails to pay Tenant the Incentive amount received by Landlord on or before the date required herein, then upon thirty (30) days' notice to Landlord from Tenant, Tenant shall be entitled to offset the full amount of such Incentive then outstanding against the next succeeding installment(s) of Rent then payable under the Lease. If and to the extent Tenant desires to apply for or otherwise pursue obtaining any Incentive, Landlord shall have no obligation to (x) incur any expense related to any application, consultant fees or any other costs related to the Incentive, and all such costs shall be the sole cost and expense of Tenant, or (y) otherwise perform any material action related to any such Incentive."

5.    Anything contained in Exhibit M to the contrary notwithstanding and provided such use is in compliance with applicable Legal Requirements, Tenant and any Affiliate of Tenant shall have the right to conduct events within the Premises for its customers and invitees, which shall include without limitation product demonstrations, instruction sessions and promotional events (each a *"Demonstration Event"*), provided that any Demonstration Event shall support and promote Tenant's sale, at retail, of one or more Permitted Items.

6.    On or before that date which is ninety (90) days following the date hereof, Landlord shall, at Landlord's sole cost and expense, install one additional cart corral within the parking lot area in front of the Premises in the location designated as *"Proposed BBB Cart Corral Location"* on the attached Exhibit 1 for the exclusive use of Tenant's customers. Such cart corral shall be of the type and style as indicated on Exhibit 2 attached hereto. Upon Landlord's commencement of the installation of the aforesaid cart corral, Landlord shall use diligent efforts to promptly complete such work and shall use reasonable efforts to ensure that said work does not interfere with the normal conduct of any business operations of Tenant in the Premises. The attached Exhibit 1 is solely for the purpose of identifying the location of the "Proposed BBB Cart Corral Location" and the Hobby Lobby Premises (defined hereafter) and shall not be deemed Tenant's consent to any other matter thereon.

7.    On or before that date which is ninety (90) days following the date hereof, Landlord shall, at Landlord's sole cost and expense, repair and renovate Tenant's three exterior illuminated channel letter signs located on the exterior of the Premises as shown and as described on Exhibit 3 attached hereto and made a part hereof (such work as shown and described on Exhibit 3 is the *"Signage Work"*). Landlord shall retain Atlas Sign Industries (having an office at 1077 West Blue Heron Blvd West Palm Beach, FL 33404) to perform the Signage Work. The Signage Work shall include, but not be limited to, the following: (a) remanufacture of the existing white acrylic channel letter faces and installation of such new white acrylic channel letter faces, (b) removal of the existing fluorescent channel letter illumination contained within

each letter, and installation of new LED lighting within the channel letters to provide materially similar letter face illumination as that provided by the existing fluorescent, (c) cleaning and refinishing of the metal channel letters and (d) completion of related work required for the renovation of the signs including disconnection and connection to existing power supply. In the event of a conflict between the preceding sentence and the requirements set forth on Exhibit 3, Exhibit 3 shall control. Upon Landlord's commencement of the Signage Work, Landlord shall use diligent efforts to promptly complete such work and shall use reasonable efforts to ensure that said work does not interfere with the normal conduct of any business operations of Tenant in the Premises. Notwithstanding anything herein to the contrary, at all times during the performance of the Signage Work, Landlord shall ensure that at least one (1) identification sign of Tenant is on the exterior of the Premises.

8. Notwithstanding anything in the Lease to the contrary, Tenant hereby consents to the following: so long as Hobby Lobby is operating in the premises shown on Exhibit 1 of this Amendment as "Proposed Hobby Lobby" (the *"Hobby Lobby Premises"*), as a typical Hobby Lobby store, the exclusive rights granted to Tenant with respect to the sale of frames and wall art (as more particularly described in the Lease) shall not apply to Hobby Lobby's operations at the Hobby Lobby Premises.

9. It is the policy of Tenant and its subsidiaries and affiliates (collectively, *"the Company"*) to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act). No individual who is employed by or who represents the Company, and no individual or entity that contracts with the Company or otherwise performs services on behalf of the Company, is permitted to solicit, accept, offer, promise or pay any bribe, kickback or any other improper payment of money, products or services. This includes, but is not limited to, any improper payment in exchange for (i) the Company's execution of this Amendment, (ii) any action taken by such individual on behalf of the Company, or (iii) any action taken by a third party. If any such improper actions are observed, contact our Legal Department (Attention: General Counsel) at Tenant's notification address and/or by telephone at 908-688-0888, so that the incident may be fully investigated.

10. Landlord and Tenant each warrant and represent to the other that they did not deal with any real estate broker in connection with the negotiation, execution and delivery of this Amendment. Each party agrees to indemnify, defend, and save the other harmless from and against any and all liabilities, costs, causes of action, damages and expenses, including, without limitation, attorneys' fees, with respect to or arising out of any claims made by any real estate broker, agent or finder with respect to this Amendment in breach of the foregoing representation or claiming to have worked with the indemnifying party in connection with the Lease. The provisions of this Section shall survive the expiration or earlier termination of the Lease.

11. Landlord represents and warrants to Tenant that, as of the date hereof, no third-party consents or approvals (including, without limitation, with respect to the COREA or any lender or beneficiary of a deed of trust) are required in order for the terms and provisions of this Amendment to be in full force and effect, except for the consent of Wells Fargo Bank, N.A., as Master Servicer, whose consent is appended hereto.

12. The terms and conditions of this Amendment shall be binding upon, and inure to the benefit of Landlord and Tenant and their respective heirs, executors, administrators, successors and assigns. Except as specifically amended hereby, the Lease is unmodified, is hereby ratified by the parties hereto and remains in full force and effect. In the event of any conflict or inconsistency between the terms and provisions of the Lease and this Amendment, the terms and provisions of this Amendment shall govern and control.

13. This Amendment may be executed in one or more counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Amendment. The transmission of an image of any signed original document will have the same binding effect as an original bearing an original signature. No party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

IN WITNESS WHEREOF, the parties hereto have executed this Third Amendment to Lease as of the day and year first above written.

**LANDLORD:**

U.S. 41 & I 285 COMPANY LLC,
a Delaware limited liability company

By: *[signature]*
Name: ~~Kenneth Marshall~~ ANDREA OLSHAN
Title: ~~Authorized Signatory~~

**TENANT:**

BED BATH & BEYOND INC.,
a New York corporation

By: *[signature]*
Name: Steven H. Temares
Title: Chief Executive Officer

Exhibit 1



Exhibit 2



Exhibit 3













**WELLS FARGO**

Commercial Mortgage Servicing
Three Wells Fargo
401 S. Tryon Street
MAC D1050-084, 8th floor
Charlotte, NC 28202

1/24/2019

**REVISED CONSENT LETTER**

U.S. 41 AND I-285 COMPANY LLC
C/o Olshan Properties
Attn: Michelle Fuss
5500 Albany Road East, Suite 310
New Albany, OH 43054

via email: MFUSS@OLSHANPROPERTIES.COM

Subject:
- Borrower: U.S. 41 AND I-285 COMPANY LLC
- Loan No.: 28000430
- Property: 2841-2997 COBB PARKWAY, ATLANTA, GA 303390000
- Lender: COMM 2014-LC15
- Inv. No.: 30176

Dear Borrower:

Wells Fargo Bank, N.A. ("Wells Fargo"), as Master Servicer for the above-referenced lender ("Lender"), with respect to the above-referenced loan ("Loan"), has received your request for Lender's consent to that THIRD AMENDMENT TO LEASE by and between U.S. 41 AND I-285 COMPANY LLC ("Landlord") and BED BATH & BEYOND INC. ("Tenant") for leased premises located at the Property ("Lease"). Wells Fargo has reviewed your request and hereby consents, on behalf of the Lender, subject to the satisfaction of the following conditions:

1. Lender's receipt of a fully executed copy of the THIRD AMENDMENT TO LEASE with no material changes.

2. Lender's receipt of a $500.00 lease review fee.

Please send one consolidated wire to Wells Fargo to cover all retainers and fees, in the amount of $500.00. Wells Fargo's wiring instructions are attached to this letter. If applicable, Wells Fargo will distribute any fees due to a Special Servicer.

**PLEASE INCLUDE YOUR LOAN NUMBER IN WIRE REFERENCES TO ENSURE PROPER CREDIT OF REMITTED FUNDS.**

This approval is valid for 90 days from the date hereof. In the event that the transaction does not close within this time-frame or if there are any substantive changes from the approved request, including the above condition(s), an amended request should be submitted to Wells Fargo. If the foregoing condition(s) are not satisfied, this consent shall be deemed automatically rescinded.

Notwithstanding anything contained in the Lease Agreement or in this conditional consent letter, (a) this conditional consent letter and the matters set forth herein is solely for the benefit of the above-referenced Borrower and may not be relied on by any other party (except, by the Tenant) person or entity, and (b) nothing in this conditional consent letter shall give (or be deemed to give) the Tenant any non-disturbance rights or be deemed an agreement of the Lender to give Tenant any non-disturbance rights. Neither Wells Fargo nor Lender is a party to the Lease Agreement as referenced above and bears no obligations, responsibilities or liabilities thereunder. This consent letter is expressly limited to the matters and terms described herein and shall not be deemed a consent to or a waiver of any other conditions or requirements in the Loan documents, nor shall Wells Fargo have any obligation to consent to any similar requests in the future. Wells Fargo fully reserves all of the Lender's rights and remedies under the Loan documents and at law.

Wells Fargo Bank, N.A.
Client Solutions 1-800-326-1334 8:00 am to 8:00 pm Eastern Time M – F
Fax 844-879-5855 or
commercial.servicing@wellsfargo.com
Website: www.wellsfargo.com/cms

*Together we'll go far*

If you have any questions or comments, please don't hesitate to contact me at drew.simms@wellsfargo.com or (704) 715-6529.

Sincerely,

Wells Fargo Bank, N.A.,
as Master Servicer

*Drew Simms*

Drew Simms
Vice President, Asset Manager
Commercial Mortgage Servicing

If you are interested in registering for online access to **CMSView**, please click on the registration link below. **CMSView** offers a range of servicing information and tools which allow the user to make payments, print off billing statement(s), view escrow balances, transaction information, etc.
https://www.wellsfargo.com/com/financing/real-estate/commercial-mortgage-servicing/access

2