# EXHIBIT E

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

## FOURTH AMENDMENT TO LEASE

23    THIS FOURTH AMENDMENT TO LEASE  ("*Fourth Amendment*"), dated as of the
_____ day of *August*, 2021 ("*Modification Date*") by and between U.S. 41 & I 285
COMPANY LLC, a Delaware limited liability company ("*Landlord*"), having an office at c/o
Olshan Properties, 5500 New Albany Road, Suite 200, Albany, Ohio 43054 and BED BATH &
BEYOND INC., a New York corporation ("*Tenant*"), having an office at 650 Liberty Avenue,
Union, New Jersey 07083.

### W I T N E S S E T H :

WHEREAS, Landlord (as successor-in-interest to U.S. 41 & I 285 Company, a New York
general partnership) and Tenant are parties to that certain Lease Agreement dated as of October 3,
2005 (the "*Original Lease*"), with respect to premises ("*Premises*") consisting of 29,000 square
feet of Floor Area and located at Akers Mill Square in Atlanta, Georgia ("*Shopping Center*"); and

WHEREAS, the Original Lease was amended or supplemented by a Rent Commencement
and Expiration Date Agreement dated as of March 14, 2006, an Amendment to Lease Agreement
dated as of May 10, 2007, a Second Amendment to Lease Agreement dated as of March 15, 2011,
a Third Amendment to Lease dated as of January 30, 2019, a letter dated April 25, 2016 and letter
agreements dated July 18, 2005 and July 29, 2005 (collectively, as amended, the "*Lease*"); and

WHEREAS, Landlord and Tenant desire to modify the Lease on the terms and conditions
hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in
this Fourth Amendment and other valuable consideration, receipt and sufficiency of which is
hereby acknowledged, the parties agree as follows:

1.     The recitals hereinabove set forth are incorporated into this Fourth Amendment by
this reference.  Capitalized terms used, but not defined herein, shall have the meanings ascribed
them in the Lease.

2.     Notwithstanding anything contained in the Lease to the contrary, Landlord and
Tenant hereby agree that the modifications to the Term, Renewal Periods and/or Rent that are
outlined in Schedule A hereto shall govern and control from and after the Modification Date.

3.     Notwithstanding anything contained in the Lease to the contrary, Landlord and
Tenant hereby agree that the modifications to certain other terms and provisions of the Lease to
the extent outlined in Schedule B hereto shall govern and control from and after the Modification
Date.

4.     Landlord hereby waives (i) any monetary default by Tenant under the Lease
existing as of the Modification Date relating to Tenant's failure to pay Rent in a timely manner as
a result of the COVID-19 pandemic or otherwise, and (ii) all late fees, interest charges, attorney
fees or other charges as a result of any monetary default existing as of the Modification Date
relating to Tenant's failure to pay Rent in a timely manner as a result of the COVID-19 pandemic
or otherwise.

5.      A. Section 1.1.42 (Tenant's Mailing Address) and Article 18 (Notice) of the Lease
shall be modified to provide that Tenant's Mailing Address is now as follows:

| | |
|---|---|
| Tenant Mailing Address: | Bed Bath & Beyond Inc.<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attention: Vice President – Real Estate |
| With a separate copy to: | Bed Bath & Beyond Inc.<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attention:  General Counsel |

1

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

|  |  |
|---|---|
| With a separate copy to: | Bed Bath & Beyond Inc.<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attention: Lease Administration |

B.      Section 1.1.20 (Landlord's Mailing Address) and Article 18 (Notice) of the Lease shall be modified to provide that Landlord's Mailing Address is now as follows:

|  |  |
|---|---|
| Landlord Mailing Address: | U.S. 41 & I 285 Company LLC<br>c/o Olshan Properties<br>5500 New Albany Road, Ste. 200<br>New Albany, Ohio 43054<br>Attn: Head of Retail |
| With a separate copy to: | U.S. 41 & I 285 Company LLC<br>c//o Olshan Properties<br>5500 New Albany Road, Ste. 200<br>New Albany, Ohio 43054<br>Attn: Legal Services |

6.      It is the policy of Tenant (together with its subsidiaries and affiliates, collectively, the *"Company"*) to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act). Landlord shall not, directly or indirectly, solicit or accept from, nor offer, promise or pay any individual or entity (including, but not limited, to any government official) any bribe, kickback or any other improper payment of money or anything else of value. This includes, but is not limited to, any improper payment in exchange for the Company's execution of this Fourth Amendment. In addition, any individual who is employed by or who represents the Company is prohibited from soliciting, accepting, offering, promising or paying any individual or entity (including, but not limited, to any government official) any bribe, kickback or any other improper payment of money or anything else of value. If any such improper actions are observed, Landlord shall inform the Company's Legal Department (Attention: General Counsel) by (i) notice to the address set forth in the Lease, as amended hereby or (ii) by telephoning 908-688-0888.

7.      Landlord and Tenant each warrant and represent to the other that they did not deal with any real estate broker in connection with the negotiation, execution and delivery of this Fourth Amendment, except for Retail Consulting Services (*"Tenant's Broker"*) and Mall Properties, Inc. d/b/a Olshan Properties (*"Landlord's Broker"*). Tenant shall pay any commission due to Tenant's Broker in connection with this Fourth Amendment pursuant to a separate written agreement between Tenant and Tenant's Broker. Landlord shall pay any commission or fee due to Landlord's Broker in connection with this Fourth Amendment pursuant to a separate written agreement between Landlord and Landlord's Broker. Each party agrees to indemnify, defend, and save the other harmless from and against any and all liabilities, costs, causes of action, damages and expenses, including, without limitation, attorneys' fees, with respect to or arising out of any claims made by any real estate broker, agent or finder (other than Tenant's Broker or Landlord's Broker) with respect to this Fourth Amendment in breach of the foregoing representation or claiming to have worked with the indemnifying party in connection with the Lease. The provisions of this Section shall survive the expiration or earlier termination of the Lease.

8.      Landlord represents and warrants to Tenant that, as of the date hereof, no third-party consents or approvals (including, without limitation, with respect to easement agreements and/or any lender or beneficiary of a deed of trust) are required in order for the terms and provisions of this Fourth Amendment to be in full force and effect, except for the consent of Wells Fargo Bank, N.A., as Master Servicer for COMM 2014-LC15, whose consent is appended hereto. Landlord hereby confirms that it has satisfied or will satisfy all conditions contained in the consent letter within the time period required therein. The parties represent and warrant to each other that the person signing on behalf of either Landlord or Tenant, as the case may be, has the authority to do so and for this Fourth Amendment to be deemed in full force and effect.

9.      Upon the request of either party following the execution and delivery of this Fourth Amendment, Landlord and Tenant shall execute an amended/restated short form lease or

7865908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

memorandum for recording, which shall be in form and substance as reasonably acceptable to both parties.  In no event shall the amount of Rent or any other monetary terms hereof be included in any such short form lease or memorandum.  Further, after the expiration or earlier termination of the Lease, Tenant agrees, upon Landlord's request, to execute and deliver a termination of such short form lease or memorandum in recordable form and this obligation shall survive expiration or termination of the Lease.  Tenant shall record any such short form lease or memorandum at Tenant's expense.

10.     The terms and conditions of this Fourth Amendment shall be binding upon, and inure to the benefit of Landlord and Tenant and their respective heirs, executors, administrators, successors and assigns.  Except as specifically amended hereby, the Lease is unmodified, is hereby ratified by the parties hereto and remains in full force and effect.  In the event of any conflict or inconsistency between the terms and provisions of the Lease and this Fourth Amendment, the terms and provisions of this Fourth Amendment shall govern and control.

11.     This Fourth Amendment may be executed electronically and in one or more counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Fourth Amendment to Lease.  The execution and transmission of an image of any signed document or document signed by DocuSign (or a similar application) will have the same binding effect as an original bearing an original signature.  No party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

[Signature Page to Follow]

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

IN WITNESS WHEREOF, the parties hereto have executed this Fourth Amendment to Lease as of the day and year first above written.

**LANDLORD:**

U.S. 41 & I 285 COMPANY LLC,
a Delaware limited liability company

By: _____

Name: ~~Kenneth Marshall~~ Zachary Bornstein

Title: Authorized Signatory

**TENANT:**

BED BATH & BEYOND INC.,
a New York corporation

By: _____

Name:    Gregg Melnick

Title:    EVP, Chief Stores Officer

4

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

### CONSENT OF MORTGAGEE

[Attached]

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4



**Commercial Mortgage Servicing**
Three Wells Fargo
401 S. Tryon Street
MAC D1050-084, 8th floor
Charlotte, NC 28202

7/28/2021

US 41 & I-285 Company LLC                             via email: mfuss@olshanproperties.com
C/o Olshan Properties
5500 Albany Road East, Suite 310
New Albany, OH 43054
Attn: MICHELLE FUSS

Subject:    Borrower:   US 41 & I-285 Company LLC
            Loan No.:   28000430
            Property:   2841-2997 COBB PARKWAY, ATLANTA, GA 303390000
            Lender:     COMM 2014-LC15
            Inv. No.    30176

Dear Borrower:

Wells Fargo Bank, N.A. ("Wells Fargo"), as Master Servicer for the above-referenced lender ("Lender"), with respect to the above-referenced loan ("Loan"), has received your request for Lender's consent to that FOURTH AMENDMENT TO LEASE by and between US 41 & I-285 Company LLC ("Landlord") and BED BATH & BEYOND INC. ("Tenant") for leased premises located at the Property ("Lease"). Wells Fargo has reviewed your request and hereby consents, on behalf of the Lender, subject to the satisfaction of the following conditions:

1.    Lender's receipt of a fully executed copy of the FOURTH AMENDMENT TO LEASE with no material changes.

2.    Lender's receipt of a $500.00 lease review fee.

Please send one consolidated wire to Wells Fargo to cover all retainers and fees, in the amount of $500.00. Wells Fargo's wiring instructions are attached to this letter. If applicable, Wells Fargo will distribute any fees due to a Special Servicer.

**PLEASE INCLUDE YOUR LOAN NUMBER IN WIRE REFERENCES TO ENSURE PROPER CREDIT OF REMITTED FUNDS.**

This approval is valid for 90 days from the date hereof. In the event that the transaction does not close within this timeframe or if there are any substantive changes from the approved request, including the above condition(s), an amended request should be submitted to Wells Fargo. If the foregoing condition(s) are not satisfied, this consent shall be deemed automatically rescinded.

Notwithstanding anything contained in the Lease Agreement or in this conditional consent letter, (a) this conditional consent letter and the matters set forth herein is solely for the benefit of the above-referenced Borrower and Tenant. This conditional consent letter may not be relied on by any other party, person or entity. Nothing in this conditional consent letter shall give (or be deemed to give) the Tenant any non-disturbance rights or be deemed an agreement of the Lender to give Tenant any non-disturbance rights. Neither Wells Fargo nor Lender is a party to the Lease Agreement as referenced above and bears no obligations, responsibilities or liabilities thereunder.  This consent letter is expressly limited to the matters and terms described herein and shall not be deemed a consent to or a waiver of any other conditions or requirements in the Loan documents, nor shall Wells Fargo have any obligation to consent to any similar requests in the future. Wells Fargo fully reserves all of the Lender's rights and remedies under the Loan documents and at law.

Wells Fargo Bank, N.A.                                                    Together we'll go far
Client Solutions 1-800-326-1334 8:00 am to 6:00 pm Eastern Time M – F
Fax 844-879-5855 or
commercial.servicing@wellsfargo.com
Website: www.wellsfargo.com/cms



DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

If you have any questions or comments, please don't hesitate to contact me at Tyler.Ford2@wellsfargo.com or (704) 715-7164.

Sincerely,

Wells Fargo Bank, N.A.,
as Master Servicer

*Tyler Ford*

Tyler Ford
US Contractor Resource
Commercial Mortgage Servicing

If you are interested in registering for online access to **CMSView**, please click on the registration link below. **CMSView** offers a range of servicing information and tools which allow the user to make payments, print off billing statement(s), view escrow balances, transaction information, etc.
https://www.wellsfargo.com/com/financing/real-estate/commercial-mortgage-servicing/access

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

## SCHEDULE A

The Lease is hereby amended to reflect that:

1.     **Extension of Term**. The current Term of the Lease will be extended for ten (10) years and will now expire on January 31, 2032.

2.     **Fixed Rent**. For the period commencing on February 1, 2022 and ending on January 31, 2027, Fixed Rent shall be paid at the rate of Twelve and 00/100 Dollars ($12.00) per square foot of Floor Area or Three Hundred Forty-Eight Thousand and 00/100 Dollars ($348,000.00) per annum. For the period commencing on February 1, 2027 and ending on January 31, 2032, Fixed Rent shall be paid at the rate of Thirteen and 50/100 Dollars ($13.50) per square foot of Floor Area or Three Hundred Ninety-One Thousand Five Hundred and 00/100 Dollars ($391,500.00) per annum. Landlord shall reimburse Tenant for any overpayment of Fixed Rent paid by Tenant, to the extent paid at a higher rate, prior to full execution and delivery to Tenant of this Fourth Amendment.

3.     **Renewal Option**. Notwithstanding anything to the contrary set forth in the Lease, Tenant shall have only one (1) remaining Renewal Option to further extend the Term from the date on which it would otherwise expire for one (1) remaining Renewal Period of five (5) years. The remaining Renewal Option, if exercised, will occur during the period from February 1, 2032 through January 31, 2037. Provided that a monetary Event of Default or Event of Default by Tenant arising under Section 13.1 of the Lease has not occurred and is continuing at the time Tenant exercises the remaining Renewal Option, the remaining Renewal Option shall be exercisable by notice given to Landlord at least two hundred seventy (270) days prior to the commencement of the remaining Renewal Period (such date by which the remaining Renewal Option must be exercised being May 7, 2031). In the event Tenant exercises the remaining Renewal Option (i.e., for the Renewal Period from February 1, 2032 through January 31, 2037), the Renewal Period shall be on the same terms and conditions of the Lease except that Fixed Rent shall be paid by Tenant for such Renewal Period at the rate of Fifteen and 50/100 ($15.50) Dollars per square foot of Floor Area or Four Hundred Forty-Nine Thousand Five Hundred and 00/100 Dollars ($449,500.00) per annum. Except as aforesaid, Tenant shall not have any further options or right to extend the Term of the Lease, unless otherwise agreed to in writing between the parties subsequent to the date of this Fourth Amendment.

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

## SCHEDULE B

The following provisions shall be added to, or amended within, the Lease:

1.    **Tenant Allowance.** Landlord shall reimburse Tenant the lesser of (i) Four Hundred Seventy Five Thousand and 00/100 ($475,000.00) Dollars or (ii) 50% of the total cost of Tenant's Renovation Work (as defined below) (the *"Tenant Allowance"*), in consideration for Tenant's construction of "Landlord's Special Improvements" (defined below) and to be applied towards costs and expenses of Tenant's construction, refixturing and/or renovation of Tenant's store in the Premises (including, without limitation, the installation of a solar array system on the roof of the Premises, hard and soft costs and expenses, signage, third party labor costs, but excluding Tenant's in-house labor costs, incurred in conjunction with Tenant's work, and technology expenses and equipment [e.g., large display monitors, wifi connectivity, etc.]) (collectively, the *"Renovation Work"*). All Renovation Work shall be subject to the terms and provisions of the Lease (including, without limitation, Article 8 thereof).

Landlord shall reimburse the Tenant Allowance to Tenant in two installments as follows:

(1)    Two Hundred Thirty Seven Thousand Five Hundred and 00/100 ($237,500.00) Dollars of the Tenant Allowance shall be paid within thirty (30) days after satisfaction of all of the following items: (i) Landlord has received a notarized certificate from an officer of Tenant that (x) provides the estimated general budget for the Renovation Work, and (y) indicates the full estimated amount of the intended cost of the Renovation Work to be undertaken by Tenant, and (ii) Tenant has notified Landlord in writing that it has commenced the Renovation Work (and Tenant has in fact commenced the Renovation Work); and

(2)    The remaining portion of the Tenant Allowance shall be paid within thirty (30) days following satisfaction of all of the following: (a) Substantial Completion of the Renovation Work as certified by Tenant's architect, (b) Landlord's receipt of submission by Tenant of a notarized certificate from an officer of Tenant that (i) sets forth the total amount of funds spent by Tenant on the Renovation Work, and (ii) confirms that all Renovation Work has been Substantially Completed and paid for by Tenant, (c) Landlord's receipt of a final unconditional lien waiver from Tenant's general contractor with respect to the Renovation Work, and (d) if and only to the extent required by applicable Legal Requirements in connection with Tenant's performance of the Renovation Work, Tenant has obtained a certificate of occupancy (or local equivalent) (conditional or final) for the Premises (provided, however, if Tenant is required by applicable Legal Requirements in connection with Tenant's performance of the Renovation Work to obtain such certificate of occupancy and despite Tenant's diligent efforts to obtain same such certificate of occupancy is not available for any reason other than Tenant's failure to perform the Renovation Work in compliance with Legal Requirements, then such certificate shall not be a requirement of Tenant receiving the remaining portion of the Tenant Allowance).

If Landlord does not pay the Tenant Allowance to Tenant within such thirty (30) day period, as applicable, then Tenant shall have the right to offset such unpaid amount against Fixed Rent payable by Tenant under the Lease, together with interest at the Lease Interest Rate from the date such remittance is due until reimbursement or full satisfaction by credit. The Tenant Allowance is an offset (and not an inducement) for Tenant's construction, on behalf of Landlord, of the Renovation Work (the *"Landlord's Special Improvements"*) (which Landlord's Special Improvements, together with any replacements thereof, when completed shall be the property of Landlord, subject to use by Tenant of same during the Term of, and in accordance with, this Lease). Landlord alone shall be entitled to depreciate the Landlord's Special Improvements as an asset for tax purposes, and Tenant shall not recognize income with respect to the Tenant Allowance. Tenant shall be responsible for and herewith agrees to pay all costs of the Renovation Work in excess of the Tenant's Allowance, and the Renovation Work (except for Landlord's Special Improvements), together with any replacements thereof, shall be and remain the property of Tenant throughout the Term, and Tenant alone shall be entitled to the benefits of ownership thereof, including, without limitation, depreciation of same as an asset for tax purposes.

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

2.    <u>Curbside Pickup</u>. Subject to applicable Legal Requirements, the COREA, and other tenants' leases in the Shopping Center as of the Modification Date (each a *"Current Tenant"*), Landlord hereby consents to Tenant: (a) using no more than four (4) parking stalls in a location to be mutually approved by Landlord and Tenant for curbside pickup for Tenant's customers (*"Curbside Pickup Area"*); and (b) installing signs designating the Curbside Pickup Area (*"Curbside Pickup Signs"*). In the event that Tenant's use of the Curbside Pickup Area and/or the installation of the Curbside Pickup Signs violates a Current Tenant's lease or is found to violate any Legal Requirements or the COREA (any such restriction being referred to herein as a *"Curbside Space Restriction"*) and Landlord is advised of such violation by the applicable Current Tenant, COREA party or any governmental authority, then Landlord shall use commercially reasonable efforts to obtain such Current Tenant's or other party's consent to same and for purposes of this Fourth Amendment "commercially reasonable efforts" means that Landlord merely has to request such Current Tenant's or other party's consent, which request may be verbal, and use reasonable efforts to resolve any conflict with a Curbside Space Restriction at no cost to Landlord whatsoever. In the event Landlord is unable to obtain such consent after requesting same as aforesaid or resolve any such conflict at no cost to Landlord whatsoever, then Tenant shall, at its sole cost and expense, promptly discontinue its use of the Curbside Pickup Area and/or remove any Curbside Pickup Signs and restore the parking stalls to their condition prior to Tenant's installing the Curbside Pickup Signs, as applicable. Landlord has the right to grant a curbside pickup area to other tenants of up to four (4) parking stalls for each other tenant as Landlord reasonably determines provided such curbside parking area for such other tenants shall not be located in any area within one hundred (100) feet of Tenant's Premises.

3.    <u>**Modifications to Prohibited Uses**</u>.

Notwithstanding the prohibition set forth in Item (3) of <u>Exhibit M</u> of the Lease (prohibiting any "second hand" store or surplus store), Tenant hereby consents to Landlord leasing premises within the Shopping Center to stores of the type commonly found in other shopping centers similar in quality to the Shopping Center in the Atlanta metropolitan area which offer new merchandise as well as good quality second hand merchandise, such as, without limitation, Second N Charles, Play It Again Sports, Platos Closet and Gamestop, provided such business is operated in compliance with the other provisions of the Lease.

Notwithstanding the prohibition set forth in Item (11) of <u>Exhibit M</u> of the Lease (prohibiting any living quarters, sleeping apartments, or lodging rooms), Tenant hereby consents to high quality multifamily apartments being constructed and located within the Buildable Area of the Eastern Parcel of the Shopping Center provided that: (i) all parking for the aforesaid residential development shall be located within the Eastern Parcel, (ii) substantially all of such apartment units shall be rented at market rates (it being understood that there may be affordable housing mandated by governmental authority having jurisdiction), and (iii) all Common Areas Charges, Insurance Charges, and Taxes associated with such multifamily apartment buildings and related use shall be separately accounted for and shall be excluded from Tenant's Pro Rata Share of Common Areas Charges (including Insurance Charges) and Taxes billed to Tenant.

Notwithstanding the prohibition set forth in Item (17) of <u>Exhibit M</u> of the Lease (prohibiting any catering or banquet hall), a catering or banquet hall shall be permitted but only as a part of a hotel use that is permitted under Item (32) of <u>Exhibit M</u> of the Lease (as amended by this Fourth Amendment). Separate catering or banquet hall facilities that are not affiliated with a hotel shall continue to be prohibited.

Item (28) of <u>Exhibit M</u> of the Lease (prohibiting medical offices, with certain limited exceptions as set forth therein) is hereby amended to provide that medical urgent care facilities as commonly found in strip shopping centers in the Atlanta metropolitan area and other similar high quality medical care or wellness type facilities (collectively, the *"Medical Retail Facilities"*) shall not be deemed to be medical clinics (which are prohibited by Item (27) of <u>Exhibit M</u>) but shall be classified as medical offices for purposes of the Lease. Notwithstanding anything in Item (28) of <u>Exhibit M</u> to the contrary, medical offices must be located at least one hundred (100) feet away from the Premises, <u>provided that</u> the foregoing shall not restrict a medical office from being located within any Outparcel, <u>subject to the limitation</u>, <u>however</u>, that if a medical office is located within any Outparcel, the main customer entry to any such Outparcel building that is within two hundred (200) feet of the Premises shall not face the Premises or the parking field in front of the Premises. In addition, not more than twenty thousand (20,000) square feet of Floor Area of Medical Retail

Schedule B

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

Facilities in the aggregate shall be permitted within the Shopping Center excluding the Eastern Parcel. Notwithstanding the foregoing or anything else to the contrary in the Lease, (i) within Building B (as shown on Exhibit 1 hereto), there shall be no restriction on the maximum square footage of any such Medical Retail Facility or medical office within the area of Building B that is two hundred (200) feet or more away from the Premises, and (ii) there shall be no restriction on the size of or quantity of Medical Retail Facilities or medical offices within the Eastern Parcel.

Item (30) of Exhibit M of the Lease is hereby amended to provide as follows: (i) the area limitation of 15,000 square feet of Floor Area in the aggregate for any such retail office use (including financial services, real estate brokerage, insurance agency, banking or travel agency) shall not apply to the Eastern Parcel, and (ii) there shall be no limitation on the number of office buildings within the Eastern Parcel, provided that all office buildings shall comply with the conditions for such buildings set forth in Item (30) of Exhibit M with respect to office building parking and Common Areas Charges, Insurance Charges and Taxes associated with such office building. Subject to the foregoing, office buildings may be located anywhere within the Buildable Area designated on the Eastern Parcel.

Item (32) of Exhibit M of the Lease is hereby amended and restated to prohibit any hotel use, other than a single hotel located within the Eastern Parcel, provided that (i) all parking for such use shall be located within the Eastern Parcel, (ii) such hotel is an upscale national brand hotel and is not an "extended stay" type hotel, and (iii) all Common Areas Charges, Insurance Charges and Taxes associated with such hotel building and hotel use shall be separately accounted for and shall be excluded from Tenant's Pro Rata Share of Common Areas Charges (including Insurance Charges) and Taxes billed to Tenant. Subject to the foregoing, the hotel may be located anywhere within the Buildable Area designated on the Eastern Parcel.

Notwithstanding anything to the contrary set forth in this Section 3, if and to the extent any of the above modifications to the Prohibited Uses under the Lease would modify the Lease in a manner that is currently prohibited (as of the Modification Date) by another lease of premises at the Shopping Center between Landlord and a Current Tenant, then the relaxation/modification of such Prohibited Uses or imposition of additional conditions relating thereto contained in this Fourth Amendment which are prohibited shall not apply with respect to such existing lease between Landlord and such Current Tenant.

4.   **Site Plan / Exhibit 1**. Attached hereto as Exhibit 1 is a leasing plan showing the location of particular items at the Shopping Center which were inadvertently not shown on the Site Plan attached as Exhibit B to the Amendment to Lease dated May 10, 2007 (the "**Site Plan**"). As used in the Lease, the following items shall be depicted as follows: (i) the Eastern Parcel wherever referenced in the Lease shall be that area of land that is part of the Shopping Center and identified on the attached Exhibit 1 as the "Eastern Parcel", (ii) all references in the Lease to spaces labeled as "J1", "K1" or the 17,804 square foot space located between J1 and K1 at the Shopping Center, or similar language, shall refer to that area denoted as the "J/K Area" as shown on the attached Exhibit 1, (iii) all references in the Lease to "Building A", "Building B" and/or "Building C" at the Shopping Center shall refer respectively to "Building A", "Building B" and "Building C" as shown on Exhibit 1, and (iv) with respect to the Eastern Parcel, all references in the Lease to the "Buildable Area" of the Eastern Parcel shall mean the "Buildable Area within the Eastern Parcel" as shown on Exhibit 1. The Buildable Area of the remainder of the Shopping Center (excluding the Eastern Parcel) shall remain as designated on the Site Plan. The attached Exhibit 1 is solely for the purpose of identifying the location of the foregoing items at the Shopping Center and shall not be deemed Tenant's consent to any other matter thereon.

5.   **Minimum Parking Requirements**. With respect to parking required for an office building, hotel use or multifamily residential apartment use, the minimum parking required for such uses under the Lease shall be equal to the number of parking spaces required by applicable Legal Requirements on the Eastern Parcel, without variance, for such uses; provided, however, that if Landlord desires to satisfy such minimum parking requirement by obtaining a variance from the applicable governmental authority, then Landlord shall be permitted to do so as long as the parking for any of the above uses is contained wholly within the Eastern Parcel and there is no decrease in the amount of parking Landlord is required to maintain under the Lease for the remainder of the Shopping Center (excluding the Eastern Parcel).

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

6.      **Eastern Parcel**.  Notwithstanding anything to the contrary set forth in the Lease, Tenant's Pro Rata Share of Common Areas Charges (including Insurance Charges) and Taxes shall exclude any such Common Areas Charges, Insurance Charges and Taxes with respect to the Eastern Parcel.

7863908 v10

DocuSign Envelope ID: 0E0E8B14-0C81-40FE-B7B2-6EB1A726E5D4

**EXHIBIT 1**



Exhibit 1

7863908 v10