Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: 212-808-7800
Fax: 212-808-7897

Email:  rlehane@kelleydrye.com
jraviele@kelleydrye.com
cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Landlord, Pinnacle Hills, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x
| In re | : | Chapter 11 |
| | : | |
| BED BATH & BEYOND, INC., *et al.*, | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors | : | (Jointly Administered) |

---------------------------------------------------------------x

**OBJECTION OF PINNACLE HILLS, LLC TO DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO ASSUME AND ASSIGN LEASE FOR STORE NO. 1142**

Pinnacle Hills, LLC ("Landlord"), landlord to debtor Bed Bath & Beyond, Inc. with respect to retail premises located at the Pinnacle Hills Power Center in Rogers, Arkansas, submits its opposition to the proposed assumption and assignment of the unexpired lease of nonresidential real property of Debtors' Store No. 1142 to Michaels Stores, Inc. ("Michaels" or the "Proposed Assignee") pursuant to the Notice of Assumption of Certain Unexpired Leases [Docket No. 1157] (the "Assignment Notice") and the Debtors' Notice to Contract Parties to

1

**Error! Unknown document property name.**

Potentially Assumed Executory Contracts and Unexpired Leases [Docket No. 714] (the "Cure Notice"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors have failed to provide adequate assurance in connection with the proposed assignment of the Lease to Michaels because the proposed assignment would violate existing exclusive use clauses in leases of at least one other tenant operating in the shopping center in violation of section 365(b)(3)(C) and (D) of the Bankruptcy Code and the Debtors and Michael's have also failed to provide adequate assurance of prompt cure or future performance as otherwise required by section 365(b) of the Bankruptcy Code.

## BACKGROUND

1. On April 23, 2023, the above-captioned Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. No trustee has been appointed and Debtors are currently operating their businesses as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code. Debtors' Chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

3. On or about June 1, 2007, Landlord and debtor Bed Bath & Beyond, Inc. (the "Tenant") entered into the lease agreement for approximately 30,000 square feet of retail premises commonly known as 2203 Promenade Boulevard (the "Leased Premises") located in the Pinnacle Hills Power Center, Rogers, Arkansas (the "Shopping Center"). The lease agreement was subsequently amended by First Amendment to Lease, dated February 10, 2021, and by two exercised options to extend (as amended, the "Lease"). The term of the Lease is

2

**Error! Unknown document property name.**

scheduled to expire on January 31, 2028, with options to extend the term in favor of Tenant. The Leased Premises have been designated by Tenant as its store No. 1142.

4. Section 15 of the Lease provides the Landlord with the right to terminate the Lease in the event of an unacceptable proposed assignment. *See* Lease § 15.1.2.

5. The Pinnacle Hills Power Center is part of the Pinnacle Hills Promenade, an open-air retail development consisting of approximately 933,984 of gross leaseable area. Pinnacle Hills Promenade has 105 retail stores and restaurants, including well-known retailers such as Hobby Lobby, Dillard's, Petsmart, Pottery Barn, Gap, and JCPenny, restaurants from P.F. Chang's China Bistro, Big Orange and Twin Peaks, and the twelve-screen Malco Theatre. On January 5, 2021, Pinnacle Hills, LLC, as landlord, and Hobby Lobby Stores, Inc. ("Hobby Lobby") entered into a written Lease Agreement for approximately 61,751 square feet of retail premises located in the Pinnacle Hills Power Center (the "Hobby Lobby Lease").

6. The Hobby Lobby Lease, at section 7.3, provides that Hobby Lobby is granted an exclusive right in the Pinnacle Hills Promenade "to sell art supplies, craft supplies, fabrics, photo frames, frames, framed art, wall art, and wall decor." *See* Hobby Lobby Lease § 7.3. The Hobby Lobby Lease also provides explicit tenant remedies in the event Landlord violates Hobby Lobby's exclusivity provision:

> 7.5. Violations of Prohibited Uses or Tenant's Exclusive. If Landlord or other Shopping Center tenants violate the Prohibited Uses or Tenant's Exclusive (excluding Permitted Tenants), Landlord and Tenant agree that Tenant's actual damages are difficult to ascertain and Tenant may abate and retain fifty percent (50%) of Minimum Rent for the time period the violation exists. Notwithstanding the preceding sentence, in the event another tenant of the Shopping Center violates the Prohibited Uses or Tenant's Exclusive (excluding Permitted Tenants) without Landlord's consent (referred to herein as a "Rogue Tenant"), Tenant shall not abate Minimum Rent provided Landlord, at Landlord's sole expense, promptly initiates and diligently pursues all commercially reasonable remedies, including without limitation legal action through final appeal, to evict the Rogue Tenant or otherwise cause the Rogue Tenant to cease violations of the Prohibited Uses or

**Error! Unknown document property name.**

Tenant's Exclusive.

*See* Hobby Lobby Lease § 7.5.

7. On May 3, 2023, Debtors filed their motion to establish procedures for the sale of leases,[1] which was granted by order on May 22, 2023 (the "Sale Procedures Order").[2] Pursuant to the Sale Procedures Order, on June 30, 2023, the Debtors filed the Assignment Notice. Exhibit B to the Assignment Notice identifies the Lease as one the Debtors seek to assume and assign to assignee Michaels Stores, Inc ("Michaels"). Michaels is a leading arts and crafts retailer, which competes with Hobby Lobby Stores Inc.[3]

## **OBJECTION**

### I. **THE CURE AMOUNT PROPOSED BY THE DEBTORS IS INCORRECT**

8. Landlord disputes the cure amount proposed by the Debtors in the Cure Notice. The correct amount outstanding under the Lease, including an estimate of attorney's fees incurred to date, is set forth below in the column entitled Landlord Cure Amount (the "Landlord Cure Amount"):

| Store No. | Mall Name | Location | Landlord | Landlord Cure Amount |
|---|---|---|---|---|
| 1142 | Pinnacle Hills Power Center | Rogers, AR | Pinnacle Hills, LLC | $46,521.47 |

9. Prior to assumption and assignment, the Debtors are required to cure all outstanding defaults under the Lease pursuant to section 365(b)(1) of the Bankruptcy Code.

---

[1] Docket No. 193.
[2] Docket No. 422.
[3] *See* https://www.cnbc.com/2021/03/03/crafts-retailer-michaels-to-be-bought-by-apollo-global-for-5-billion.html; https://www.reuters.com/article/us-michaels-compans-ipo/crafts-retailer-michaels-raises-473-million-in-ipo-idUSKBN0F203120140627

4

Pursuant to the Lease, the Debtors are obligated to pay regular installments of fixed monthly rent, as well as monthly payment of real estate taxes, utility charges, and any other amounts, sums, charges, liabilities and obligations which the Tenant assumes or agrees to pay.

10. Moreover, prior to assumption and assignment, the Debtors must also compensate Landlord for any actual pecuniary losses under the Lease. *See* 11 U.S.C. §365(b)(1)(B). As part of their pecuniary losses, Landlord is entitled to attorneys' fees in connection with the Debtors' defaults under the Lease. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Mid Am. Oil, Inc.*, 255 B.R. 839, 841 (Bankr. M.D. Tenn. 2000); *In re Crown Books Corp.*, 269 B.R. 12, 19 (Bankr. D. Del. 2001).

11. To the extent that rent, attorney's fees, interest, or other charges continue to accrue, and/or Landlord suffers other pecuniary losses with respect to the Lease, Landlord hereby reserves their rights to amend the Landlord Cure Amount to reflect such additional amounts or to account for year-end adjustments (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Lease. As such, the Debtors or their assignee(s) must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts are or were incurred.

12. It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Industries, Inc.,* 109 B.R. 797, 802 (Bankr. W.D.Tenn. 1990); *In re Memphis-Fridays Associates,* 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762, F.2d 1303, 1309 (5th Cir. 1990).

**Error! Unknown document property name.**

Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee -
>
> A.  cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B.  compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or Lease for any pecuniary loss to such party from such default; and
>
> C.  provides adequate assurance of future performance under such contract or lease.

13. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord, In re Valley View Shopping Center, L.P.,* 260 B.R. 10, 25 (Bankr. D. Kansas 2001).

## II. DEBTORS MUST DEMONSTRATE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE IN ORDER TO ASSUME AND ASSIGN THE LEASE

14. Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

15. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection

6

from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

16. The initial burden of presentation as to adequate assurance falls upon Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The Sea Harvest court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, supra, 868 F.2d at 1080.

17. It cannot be seriously disputed that the Lease is for "real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-1087 (3d Cir. 1990); *In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, Landlord is entitled to the protections afforded shopping center landlords under Bankruptcy Code section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 298 (3d Cir. 2000).

18. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002), aff'd sub nom. *Ramco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the

**Error! Unknown document property name.**

Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance.

    (A)    of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

    (B)    that any percentage rent due under such lease will not decline substantially;

    (C)    that ***assumption or assignment of such lease is subject to all the provisions thereof, including*** (but not limited to) provisions such as a radius, location, ***use, or exclusivity provision***, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

    (D)    that assumption or assignment of such lease will ***not disrupt any tenant mix or balance*** in such shopping center.

(Emphasis added.)

19. Before 1984, sections 365(b)(3)(C) and (D) of the Bankruptcy Code provided that an assignment of a shopping center lease must not "substantially" breach any use or exclusivity provision or "substantially" disrupt any tenant mix or balance in a shopping center. In 1984, however, the legislature approved amendments to section 365 of the Bankruptcy Code to afford further protection for landlords and tenants in shopping centers. *Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353*. Among these protections was the deletion of the word "substantially" from section 365(b)(3) of the Bankruptcy Code.

20. Consistent with the legislative purpose, the Debtor bears the burden of proof to demonstrate the proposed assignee's ability to provide the landlord with adequate assurance of future performance. *See In re TSW Stores of Nanuet, Inc., 34 B.R. 299, 308 (Bankr.*

8

S.D.N.Y, 1983)*; see also In re Federated Dept. Stores, Inc.,* 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991).

21. Adequate assurance requires a foundation that is non-speculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-149 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986).

22. Here, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in Bankruptcy Code section 365(b)(3), and the proposed assignment would violate exclusive use provisions in other tenant leases and disrupt the tenant mix and balance in the Shopping Center.

### A. Debtors Have Failed To Establish That The Assignee Will Comply With Use and Exclusivity Provisions of the Hobby Lobby Lease

23. Assignment of the Lease to Michael's is premised on Michael's demonstration of adequate assurance of future performance, and Michael's use and occupancy of the Premises is "subject to … exclusivity provisions … contained in **any other lease** … relating to the shopping center." *See* 11 U.S.C. §§ 365(b)(3)(C). Because a proper tenant mix is an essential ingredient of all shopping centers, this legislative purpose will be given effect even where the Debtor's own lease contains no effective exclusives or other use restrictions. *See Federated Dep't Stores*, 135 B.R. at 945.

24. Here, an assignment of the Lease to Michaels would breach section 19(a)(vi) of the Hobby Lobby Lease, which provides that no other tenant in the Pinnacle Hills

9

Promenade may be permitted to sell art supplies, craft supplies, fabrics, photo frames, frames, framed art, wall art, and wall decor." *See* Hobby Lobby Lease, § 7.3. Thus, the operation of a Michaels store at Pinnacle Hills Promenade would breach the exclusivity provision in the Hobby Lobby Lease in violation of section 365(b)(3)(C) of the Bankruptcy Code.

25. More importantly, in the event that the Exclusivity Provision is breached, Hobby Lobby may exercise remedies under the Hobby Lobby Lease that will cause Landlord significant harm. Specifically, Hobby Lobby withhold 50% of the rent to compensate Hobby Lobby for its damages. *See* Hobby Lobby Lease § 7.5. Thus, Landlord is at risk of significant harm in the event that the Court approves the assignment of the Lease to Michaels.

B. **The Proposed Assignment Will Disrupt Tenant Mix and Balance**

26. Section 365(b)(3)(D) of the Bankruptcy Code states that a shopping center lease cannot be assigned if such assignment would "disrupt any tenant mix or balance in such shopping center."[4] 11 U.S.C. § 365(b)(3)(D); s*ee also In re TSW Stores of Nanuet, Inc*., 34 B.R. 299, 307 (Bankr. S.D.N.Y, 1983) (applying section 365(b)(3)(D) to reject the proposed assignment because it would cause substantial disruption to tenant mix and balance); *In re Federated Dept. Stores, Inc.,* 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991) (rejecting assignment of the lease because of disruption of tenant mix and balance). Thus, by enacting section 365(b)(3)(D) of the Bankruptcy Code, Congress intended for the courts to be especially solicitous in the shopping center context in ensuring that tenant mix and balance are not disrupted by any potential lease assignments, and to protect landlords and other shopping mall

---

[4] Tenant mix, as used in section 365(b)(3)(D) of the Bankruptcy Code, relates to "the inclusion or exclusion of a store in the array or mix of mall stores," whereas tenant balance relates to "the location and relationship of tenants in the mix of mall stores." *See In re Federated Dept. Stores, Inc.,* 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991).

Error! Unknown document property name.

tenants from the damage caused by bankrupt tenants. *In re Federated Dep't Stores, Inc.*, 135 B.R. 941, 945 (Bankr. S.D. Ohio 1991); *see also Rockland Center Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.),* 34 B.R. 299, 303 (Bankr. S.D.N.Y. 1983) ("a good tenant mix in a shopping center benefits the landlord and the tenants as well").

27. Section 365(b)(3)(D) of the Bankruptcy Code favors minimizing disruption to carefully planned tenant mixes in shopping centers. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299 (Bankr. S.D.N.Y. 1983). The Third Circuit, in *Joshua Slocum*, carefully noted that a bankruptcy court must be sensitive to the non-debtor party and the underlying tenet that requires that the non-debtor receive the full benefit of its bargain. 922 F.2d at 1089-90.

28. The operation of a second retailer selling primarily arts and crafts supplies, i.e., Michaels, at Pinnacle Hills Promenade, rather than a store that does not conflict with the primary use of any existing tenants, will disrupt the carefully planned tenant mix and balance currently in place at Pinnacle Hills Promenade. Accordingly, the Court should not permit the Debtor to assign the Lease to Michaels.

## C. Debtors Have Failed to Establish that the Assignee Will Provide Landlord With the Benefit of Its Bargain

29. It is well-established that the proposed assignee must take the Lease subject to use provisions. 11 U.S.C. § 365(b)(3)(C). As identified above, at the time that the parties entered into the Lease, Landlord negotiated for the ability to terminate the Lease in the event of an unacceptable proposed assignment. In the Chapter 11 context, this provision would operate as an unenforceable anti-assignment provision and cannot be taken at face value. Fortunately, Landlord is afforded the protections of Section 365(b)(3)(C).

30. As the United States Court of Appeals for the Third Circuit stated:

11

> Congress has suggested that the modification of a contracting party's rights is not to be taken lightly. Rather, a bankruptcy court in authorizing assumptions and assignment of unexpired leases must be sensitive to the rights of the non-debtor contracting party . . . and the policy requiring that the non-debtor receive the full benefit of his or her bargain.

*In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990)

31. The benefit of Landlord's bargain was that it could protect itself against assignment of the Lease to an assignee proposing an unwanted use. The Debtors have the burden of establishing that the proposed use by Michaels does not contravene the benefit of Landlord's bargain with respect to exclusive use provisions, as required by section 365(b)(3)(C) of the Bankruptcy Code. Here, the Debtors have failed to do so. *See, e.g.*, *In re Three A's Holdings, LLC*, 364 B.R. 550, 560 (Bankr. D. Del. 2007).

**D. Debtors Must Provide for Payment of All Accrued but not yet Billed Amounts**

32. Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof…" As with most modern shopping center leases, article 5(b) of the Lease provides for monthly payment of real estate taxes, utility charges, and any other amounts, sums, charges, liabilities and obligations which the Tenant assumes or agrees to pay.

33. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of the Lease "is subject to all the provisions thereof…" (11 U.S.C. § 365(b)(3)(C)), either Debtors must make arrangement for such payment by establishment of a segregated, reserve account for that purpose or the proposed assignee must have responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits).

**Error! Unknown document property name.**

34. As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing, supra*, 156 B.R. at 175 fn.3:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. See Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

35. *See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3rd Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.")

36. As a matter of law, however, the Debtors are not entitled to the benefits and protections of Section 365(k) where the debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76 (3d Cir. 1999).[5] In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled

---

[5] Bankruptcy Code section 365(f) requires a debtor to assume (and assign) a contract subject to all benefits and burdens thereunder. *See, e.g., In re Fleming Companies, Inc.*, 499 F. 3d 300, 308 (3rd Cir. 2007). In this regard, to the extent Debtors seek to assign the Lease under Bankruptcy Code section 363(f) "free and clear" of the recorded conditions and restrictions that are part of the Lease (Exhibit N), such relief is contrary to Bankruptcy Code section 365(b)(3)(C) and (f).

13

Error! Unknown document property name.

to the protections of Section 365(k). *Id.* at 81. Either Michaels or the Debtors must be responsible for all accrued but not yet billed amounts under the Lease, including amounts for real estate taxes, common area maintenance, and insurance regardless of whether they accrued before or after the assignment.

### E. **Debtors Must Provide Adequate Assurance of Indemnification Obligations**

37. In addition to the monetary obligations that either Debtors or any proposed assignee must satisfy under section 365 of the Bankruptcy Code, the Lease provides that the Tenant must indemnify and hold Landlord "harmless from any and all claims, losses, expenses, costs, lawsuits, actions, administrative proceedings, damage, orders, judgments, penalties, and liabilities of any nature… reasonable attorneys' fees and compliance costs" arising from, among other things, Tenant's use of the Leased Premises or breach of any provision of the Lease. *See* Lease at Article 12.4.7. There is no exclusion or limitation on such indemnification with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to Landlord, the Debtors or any assignee until after the assignment.

38. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) Michaels must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in the assignment agreement, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the

14

Leased Premises where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

### III. DEMAND FOR SECURITY

39. Section 365(l) of the Bankruptcy provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

40. In the ordinary course of their business, Landlord requires security deposits, guaranties or letters of credit when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the proposed assumption and assignment of the Lease, Landlord reserves the right to demand such security as may be appropriate under the circumstances.

### RESERVATION OF RIGHTS

Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by Debtors or the proposed assignee or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

**WHEREFORE**, the Landlord requests that the Court enter an order (i) denying the proposed assignment of the Lease to Michaels; or (ii) alternatively, if the Court decides to approve the assignment of the Lease, that the applicable Order prevent any other tenant in the Shopping Center from asserting that the assignment of the Lease to Michaels is a basis to declare a default, reduce the rent or otherwise modify the terms or terminate any other lease in the Shopping Center.

**Error! Unknown document property name.**

|  |  |
|---|---|
| Dated: July 12, 2023 | Respectfully submitted,<br>/s/ Robert L. LeHane<br>Robert L. LeHane, Esq.<br>Jennifer D. Raviele, Esq.<br>Connie Choe, Esq.<br>**KELLEY DRYE & WARREN LLP**<br>3 World Trade Center<br>175 Greenwich Street<br>New York, NY 10007<br>Tel: 212-808-7800<br>Fax: 212-808-7897<br>Email: rlehane@kelleydrye.com<br>         jraviele@kelleydrye.com<br>         cchoe@kelleydrye.com<br><br>-and-<br><br>One Jefferson Road<br>Parsippany, NJ 07054<br>Tel: 973-503-5900<br><br>*Counsel for Landlord, Pinnacle Hills, LLC* |

**Error! Unknown document property name.**