Robert L. LeHane, Esq.
Ravi Vohra, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897

Email:  rlehane@kelleydrye.com
 rvohra@kelleydrye.com
 cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for HGREIT II Edmondson Road, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

---

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BED BATH & BEYOND, INC., *et al.*, | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Hearing Date: July 18, 2023 at 2:30 p.m.** |

---

**OPPOSITION OF HGREIT II EDMONDSON ROAD, LLC TO DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO ASSUME AND ASSIGN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASE FOR STORE NO. 301**

HGREIT II Edmondson Road, LLC (the "Landlord") submits this opposition to the proposed assumption and assignment (the "Proposed Assignment") of the unexpired lease of nonresidential real property of Debtors' Store No. 301 to Dania, Incorporated d/b/a Scandinavian Designs ("Scandinavian Design") pursuant to the Notice of Assumption of Certain Unexpired Leases[1] (the "Assignment Notice"), and respectfully represents as follows:

---

[1]     Docket No. 1157.

**PRELIMINARY STATEMENT**

1. The Proposed Assignment would violate exclusive use clauses in leases of other tenants operating in the shopping center. Additionally, the Debtors' proposed cure amount is incorrect, and the Debtors and Scandinavian Design (defined below) have failed to: (i) provide any evidence regarding the similarity between the financial condition and operating performance of the Proposed Assignees and Tenant (defined below) at the time lease was executed; (ii) provide for payment of all accrued but unbilled obligations under the Lease (defined below); (iii) establish that Scandinavian Design will comply with use and exclusivity provisions of the West Elm Lease (defined below); and (iv) provide adequate assurance of future performance of indemnification obligations under the Lease. As a result, the Debtors have failed to satisfy their burden to provide the Landlord with adequate assurance in connection with the Proposed Assignment of the Bed Bath & Beyond, Inc. Lease for the retail premises located at the Rookwood Commons shopping center in Cincinnati, Ohio to Scandinavian Design.

**BACKGROUND**

2. On April 23, 2023, the above-captioned Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

3. No trustee has been appointed and the Debtors are currently operating their businesses as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code. Debtors' Chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4. On or about February 15, 1999, the Landlord, as successor-in-interest to Jeffrey R. Anderson Real Estate, Inc., and debtor Bed Bath & Beyond, Inc. (the "<u>Tenant</u>") entered into a written Lease Agreement for approximately 33,375 square feet of retail premises commonly known as 2719 Edmondson Rd (the "<u>Leased Premises</u>") located in the Rookwood

2

Commons Shopping Center, Cincinnati, Ohio. The Lease Agreement was subsequently amended by a First Amendment of Lease Agreement, dated August 25, 1999, and a Second Lease Modification, dated April 27, 2021 (the Lease Agreement, as amended and modified, is hereinafter referred to as the "Lease"). The Tenant exercised two five-year options to extend the Lease, which is currently scheduled to expire on January 31, 2024, with three options to extend the term remaining. The Leased Premises have been designated by Tenant as its store No. 301.

5. Current rent and charges under the Lease consist of (1) the monthly installment of Annual Rent of $24,030, (2) Tenant's "Pro Rata Share" of CAM Expenses of $5,599, (3) Tenant's "Pro Rata Share" of real estate taxes in the annual amount of $265,487.83, and (4) all other sums for which the Tenant may become liable.

6. In 2017, Hines Global REIT II, Inc. acquired Rookwood Pavilion and Rookwood Commons, two contiguous shopping centers that operate as a single property consisting of approximately 596,171 square feet of floor area. Rookwood has approximately 72 retail stores and restaurants, including well-known retailers such as Whole Foods, REI, Nordstrom Rack, HomeGoods, Joseph-Beth Booksellers, P.F. Chang's and J. Alexander's.

7. On or about May 29, 2019, the Landlord and Williams-Sonoma Stores, Inc., with an initial and current trade name West Elm ("West Elm"), entered into a written Lease Agreement for approximately 11,900 square feet of retail premises located in the Rookwood Commons shopping center (the "West Elm Lease").

8. The West Elm Lease, at section 1.1.j.2, provides that:

> During any time when Tenant is regularly operating in the Premises principally for the sale of lifestyle furniture, furnishings and accessories in accordance with the Permitted Use and no Event of Default exists and remains uncured, Landlord will not enter into a lease in the Shopping Center to any tenant whose use primarily consists of the sale of lifestyle furniture, furnishings and

accessories, such as (by way of example) the manner in which stores are operated under the trade name CB2, EQ3, Room & Board, Bo Concepts, or Design Within Reach as of the date of this Lease.

9. The same section also provides explicit tenant remedies in the event the Landlord violates West Elm's exclusivity provision:

> . . . for so long as such violation exists, Minimum Rent and Percentage Rental shall be reduced by one-half, but there shall be no adjustment to the Annual Breakpoint. In addition, should such violation continue for a period in excess of twelve (12) consecutive months, Tenant shall have the right to terminate this Lease by written notice to Landlord at any time thereafter (but prior to cessation of such violation), in which event Landlord shall reimburse Tenant for its net book value of its leasehold improvements.

10. On May 3, 2023, the Debtors filed their motion to establish procedures for the sale of leases,[2] which was granted by order on May 22, 2023 (the "Sale Procedures Order").[3] Pursuant to the Sale Procedures Order, on June 30, 2023, the Debtors filed the Assignment Notice. Exhibit B to the Assignment Notice identifies the Lease as one the Debtors seek to assume and assign to assignee Scandinavian Design. Scandinavian Design and its sister brand, Dania Furniture, are modern purveyors of a global network of modern furnishings.[4]

## OBJECTION

### I. THE CURE AMOUNT PROPOSED BY THE DEBTORS IS INCORRECT

11. The Landlord disputes the cure amount proposed by the Debtors in the Cure Notice. The correct amounts outstanding under the Lease, including an estimate of attorneys' fees incurred to date, are as follows (the "Landlord-Proposed Cure Amounts"):

---

[2] Docket No. 193.

[3] Docket No. 422.

[4] *See* https://scandinaviandesigns.com/pages/about-us-1.

| Store No. | Mall Name | Location | Debtors' Proposed Cure Amount | Landlord-Proposed Cure Amount |
|---|---|---|---|---|
| 301 | Rookwood Commons | Cincinnati, OH | $79.00 | $288,607.10 |

12. Prior to assumption and assignment, the Debtors are required to cure all outstanding defaults under the Lease pursuant to section 365(b)(1) of the Bankruptcy Code. Pursuant to the Lease, the Debtors are obligated to pay regular installments of fixed monthly rent, as well as monthly payment of real estate taxes,[5] utility charges, and any other amounts, sums, charges, liabilities and obligations which the Tenant assumes or agrees to pay.

13. Moreover, prior to assumption and assignment, the Debtors must also compensate the Landlord for any actual pecuniary losses under the Lease. *See* 11 U.S.C. §365(b)(1)(B). As part of their pecuniary losses, the Landlord is entitled to attorneys' fees in connection with the Debtors' defaults under the Lease. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *In re Mid Am. Oil, Inc.*, 255 B.R. 839, 841 (Bankr. M.D. Tenn. 2000); *In re Crown Books Corp.*, 269 B.R. 12, 19 (Bankr. D. Del. 2001).

14. To the extent that rent, attorneys' fees, interest, or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Lease, the Landlord hereby reserves its rights to amend the Landlord-Proposed Cure Amounts to reflect such additional amounts or to account for year-end adjustments (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Lease. As

---

[5] The Lease provides for the billing of real estate and other taxes in arrears. Section 4.2.2(b) of the Lease provides that the "Landlord shall submit to Tenant a copy of the bill for Taxes . . . a computation of Tenant's Pro Rata Share of such Taxes and proof of the payment of Taxes for the previous payment period, as well as copies of all notices concerning assessments, tax rates, and changes thereto. Tenant shall pay Landlord in the amount required by . . . Subsection 4.2.2 within thirty (30) days after receipt of such bill (but in no event earlier than the fifteenth (15th) day prior to the date on which such Taxes would become delinquent)."

5

such, the Debtors or their assignee(s) must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts are or were incurred.

15. It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Industries, Inc.,* 109 B.R. 797, 802 (Bankr. W.D.Tenn. 1990); *In re Memphis-Fridays Associates,* 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762, F.2d 1303, 1309 (5th Cir. 1990). Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee–
> A.    cures or provides adequate assurance that the Trustee will promptly cure such default;
> B.    compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or Lease for any pecuniary loss to such party from such default; and
> C.    provides adequate assurance of future performance under such contract or lease.

16. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord, In re Valley View Shopping Center, L.P.,* 260 B.R. 10, 25 (Bankr. D. Kansas 2001).

## II. DEBTORS MUST DEMONSTRATE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE IN ORDER TO ASSUME AND ASSIGN THE LEASE

17. Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Bankruptcy Code section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

18. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

19. The initial burden of presentation as to adequate assurance falls upon Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The Sea Harvest court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's

empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080.

20. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002), aff'd sub nom. *Ramco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, *that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that *assumption or assignment of such lease is subject to all the provisions thereof, including* (but not limited to) provisions such as a radius, location, *use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will *not disrupt any tenant mix or balance* in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added).

21. Before 1984, Bankruptcy Code sections 365(b)(3)(C) and (D) provided that an assignment of a shopping center lease must not "substantially" breach any use or exclusivity provision or "substantially" disrupt any tenant mix or balance in a shopping center. In 1984, however, the legislature approved amendments to section 365 of the Bankruptcy Code

to afford further protection for landlords and tenants in shopping centers. *Bankruptcy Amendments and Federal Judgeship Act of 1984*, Pub. L. No. 98-353. Among these protections was the deletion of the word "substantially" from section 365(b)(3) of the Bankruptcy Code.

22. Consistent with the legislative purpose, the Debtor bears the burden of proof to demonstrate the proposed assignee's ability to provide the landlord with adequate assurance of future performance. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983); *see also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991).

23. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-149 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986).

24. As discussed, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in Bankruptcy Code section 365(b)(3).

    **A.**    **The Lease is for Real Property in a Shopping Center**

25. It cannot be seriously disputed that the Lease is for "real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-1087 (3d Cir. 1990); *In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, the Landlord is entitled to the protections afforded shopping

center landlords under Bankruptcy Code section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 298 (3d Cir. 2000).

        **B.**    **The Debtors Have Failed to Establish That the Financial Condition and Operating Performance of Scandinavian Design is Similar to the Financial Condition and Operating Performance of the Debtors at the Time the Lease Was Executed**

26.    The Debtors have failed to provide any financial information as to the financial condition of the Tenant under the Lease in order to provide a "benchmark" against which Scandinavian Design's financial condition and operating history can be measured. *See* 11 U.S.C. § 365(b)(3)(A). Additionally, the Landlord has not been provided with sufficient financial information about Scandinavian Design that would allow the Landlord to compare to the financial condition and operating performance of the Scandinavian Design with that of the Tenant at the time the Tenant became the lessee under the Lease, as required by Bankruptcy Code section 365(b)(3)(A). Accordingly, unless and until the Landlord is provided with such information, the Debtors may not assume and assign the Lease.

        **C.**    **The Debtors Have Failed to Establish That Scandinavian Design Will Comply With Use and Exclusivity Provisions of the West Elm Lease**

27.    Assignment of the Lease to Scandinavian Design is conditioned on Scandinavian Design's demonstration of adequate assurance of future performance and Scandinavian Design's use and occupancy of the Leased Premises is "subject to . . . exclusivity provisions . . . contained in *any other lease* . . . relating to the shopping center." *See* 11 U.S.C. § 365(b)(3)(C) (emphasis added). Because a proper tenant mix is an essential ingredient of all shopping centers, this legislative purpose will be given effect even where the Debtor's own lease

contains no effective exclusives or other use restrictions. *See Federated Dep't Stores*, 135 B.R. at 945.

28. The Debtors have the burden of establishing that the proposed use by the Proposed Assignee does not breach such use and exclusivity provisions applicable to the Leased Premises, as required by section 365(b)(3)(C) of the Bankruptcy Code. The Debtors have failed to do so. Where the proposed assignment is contrary to restrictive use provisions, assumption and assignment of a shopping center lease is not permitted. *See, e.g.*, *In re Three A's Holdings, LLC*, 364 B.R. 550, 560 (Bankr. D. Del. 2007).

29. Here, an assignment of the Lease to Scandinavian Design would arguably breach section 1.1.j.2 of the West Elm Lease, which provides that no other tenant at Rookwood Commons may be permitted to sell lifestyle furniture, furnishings and accessories. Thus, the operation of a Scandinavian Design store at Rookwood Commons would breach the exclusivity provision in the West Elm Lease in violation of section 365(b)(3)(C) of the Bankruptcy Code.

30. More importantly, in the event that the exclusivity provision is breached, West Elm may exercise remedies under the West Elm Lease that will cause the Landlord significant harm. Specifically, Minimum Rent and Percentage Rental (each as defined in the West Elm Lease) shall be reduced by 50% to compensate West Elm for its damages. Thus, the Landlord is at risk of significant harm if the Court approves the Proposed Assignment to Scandinavian Design.

### D. The Proposed Assignment Will Disrupt Tenant Mix and Balance

31. Section 365(b)(3)(D) of the Bankruptcy Code states that a shopping center lease cannot be assigned if such assignment would "disrupt any tenant mix or balance in such

shopping center."[6] 11 U.S.C. § 365(b)(3)(D); s*ee also In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 307 (Bankr. S.D.N.Y, 1983) (applying section 365(b)(3)(D) to reject the proposed assignment because it would cause substantial disruption to tenant mix and balance); *In re Federated Dept. Stores, Inc.,* 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991) (rejecting assignment of the lease because of disruption of tenant mix and balance). Thus, by enacting section 365(b)(3)(D) of the Bankruptcy Code, Congress intended for the courts to be especially solicitous in the shopping center context in ensuring that tenant mix and balance are not disrupted by any potential lease assignments, and to protect landlords and other shopping mall tenants from the damage caused by bankrupt tenants. *In re Federated Dep't Stores, Inc.*, 135 B.R. 941, 945 (Bankr. S.D. Ohio 1991); *see also Rockland Center Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.),* 34 B.R. 299, 303 (Bankr. S.D.N.Y. 1983) ("a good tenant mix in a shopping center benefits the landlord and the tenants as well").

32. Section 365(b)(3)(D) of the Bankruptcy Code favors minimizing disruption to carefully planned tenant mixes in shopping centers. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299 (Bankr. S.D.N.Y. 1983). The Third Circuit, in *Joshua Slocum*, carefully noted that a bankruptcy court must be sensitive to the non-debtor party and the underlying tenet that requires that the non-debtor receive the full benefit of its bargain. 922 F.2d at 1089–90.

33. The operation of a second retailer that sells furniture, furnishings and accessories (*i.e.*, Scandinavian Design) at Rookwood Commons, rather than a store that does not, disrupts the carefully planned tenant mix and balance currently in place at Rookwood Commons.

---

[6] Tenant mix, as used in section 365(b)(3)(D) of the Bankruptcy Code, relates to "the inclusion or exclusion of a store in the array or mix of mall stores," whereas tenant balance relates to "the location and relationship of tenants in the mix of mall stores." *See In re Federated Dept. Stores, Inc.,* 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991).

Accordingly, the Court should not approve the Proposed Assignment of the Lease to Scandinavian Design.

### E. The Debtors Have Failed to Provide for Payment of All Accrued But Not Yet Billed Amounts

34. Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ." As with most modern shopping center leases, the Lease provides for periodic payment of real estate taxes, utility charges, and any other amounts, sums, charges, liabilities and obligations which the Tenant assumes or agrees to pay.

35. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of the Lease "is subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C), either the Debtors must make arrangement for such payment by establishment of a segregated, reserve account for that purpose or the proposed assignee must have responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits).

36. As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing, supra*, 156 B.R. at 175 n.3:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) 'relieves the . . . estate from any liability for any breach of such . . . lease occurring after such assignment.' A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. See Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ('delegation of performance . . . does not discharge any duty or liability of the delegating obligor')). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and

relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3rd Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.").

37. As a matter of law, however, a debtor is not entitled to the benefits and protections of Section 365(k) where the debtor does not assume and assign the lease *cum onere*—with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76 (3d Cir. 1999).[7] In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Bankruptcy Code section 365(k). *Id.* at 81.

38. For these reasons, in order to provide adequate assurance of future performance, either Scandinavian Design or the Debtors must be responsible for all accrued but not yet billed amounts under the Lease, including amounts for real estate taxes, common area maintenance, and insurance.

### F. The Debtors Have Failed to Provide Adequate Assurance of Future Performance Of Indemnification Obligations

39. In addition to the monetary obligations that either the Debtors or any proposed assignee must satisfy under Bankruptcy Code section 365, section 12.4.7 of the Lease provides that the Tenant must indemnify and hold the Landlord "harmless from any and all

---

[7] Bankruptcy Code section 365(f) requires a debtor to assume (and assign) a contract subject to all benefits and burdens thereunder. *See, e.g., In re Fleming Companies, Inc*., 499 F.3d 300, 308 (3d Cir. 2007). In this regard, to the extent Debtors seek to assign the Lease under Bankruptcy Code section 363(f) "free and clear" of the recorded conditions and restrictions that are part of the Lease, such relief is contrary to Bankruptcy Code sections 365(b)(3)(C) and (f).

claims, losses, expenses, costs, lawsuits, actions, administrative proceedings, damage, orders, judgments, penalties, and liabilities of any nature . . . including, without limitation, reasonable attorneys' fees . . . arising from, among other things, the Tenant's breach of any of its representations, warranties, covenants or other obligations in section 12.4 of the Lease relating to environmental matters. There is no exclusion or limitation on such indemnification with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to the Landlord, the Debtors or any assignee until after the Proposed Assignment is approved.

40. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) Scandinavian Design must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in the assignment agreement, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of an assignment. Such claims for indemnity could include claims for violations of Environmental Laws (as defined in the Lease).

### III. DEMAND FOR A DEPOSIT OR OTHER SECURITY

41. Section 365(l) of the Bankruptcy provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

42. In the ordinary course of their business, the Landlord requires security deposits or guarantees when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the Proposed Assignment of the Lease, the Landlord hereby makes a demand for such security in one of those forms as required by section 365(l) of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

43. The Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by Debtors or the proposed assignee or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

**CONCLUSION**

44. Because the Debtors have failed to sustain their burden of demonstrating adequate assurance of future performance with respect to the proposed assignment of the Lease, the Proposed Assignment of the Lease should be denied. Alternatively, if the Court determines that the Proposed Assignment of the Lease is to go forward, the Landlord asks the Court to place protective language in the order granting the assignment. This order shall provide that no tenant can use their respective exclusive use provisions to reduce their rent or terminate their leases.

Dated: July 12, 2023
New York, New York

*/s/ Robert L. LeHane*
Robert L. LeHane, Esq.
Ravi Vohra, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: 212-808-7800
Fax: 212-808-7897
Email: rlehane@kelleydrye.com
rvohra@kelleydrye.com
cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for HGREIT II Edmondson Road, LLC*