Robert L. LeHane, Esq.
Ravi Vohra, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897

Email:  rlehane@kelleydrye.com
rvohra@kelleydrye.com
cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Regency Centers L.P. and Daly City
Serramonte Center, LLC*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BED BATH & BEYOND, INC., *et al.,* | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Hearing Date: July 18, 2023 at 2:30 p.m.** |

---------------------------------------------------------------x

**LIMITED OBJECTION AND JOINDER OF REGENCY CENTERS L.P. AND DALY
CITY SERRAMONTE CENTER, LLC TO DEBTORS' MOTION FOR ORDER
AUTHORIZING DEBTORS TO ASSUME AND ASSIGN UNEXPIRED NON-
RESIDENTIAL REAL PROPERTY LEASES FOR STORE NOS. 3108 AND 385**

Regency Centers L.P. ("Regency") and Daly City Serramonte Center, LLC

("Daly" and, collectively, the "Landlords") submit their limited objection and joinder to the

proposed assumptions and assignments (the "Proposed Assignments") of the unexpired leases of

nonresidential real property of Debtors' Store No. 385 to Michaels Stores Inc. ("Michaels") and

Debtors' Store No. 3108 to Burlington Coat Factory Warehouse Corporation ("Burlington" and,

collectively, the "Proposed Assignees") pursuant to the Notice of Assumption of Certain Unexpired Leases[1] (the "Assignment Notice") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Landlords are not fundamentally opposed to the Proposed Assignments, but there are several problems that remain unresolved as of the filing of this Limited Objection.

2. Specifically, the Debtors' proposed cure amounts are incorrect. Further, the Debtors and the Proposed Assignees have failed to provide: (i) any evidence regarding the similarity between the financial condition and operating performance of the Proposed Assignees and Tenant (defined below) at the time lease was executed; (ii) for payment of all accrued but unbilled obligations under the Leases; and (iii) adequate assurance of future performance of indemnification obligations under the Leases. As a result, the Debtors have failed to provide adequate assurance in connection with the Proposed Assignments of the Leases of debtor Bed Bath & Beyond, Inc. with respect to retail premises located at: (i) the Serramonte Center in Daly City, California to Burlington; and (ii) the University Commons shopping center in Boca Raton, Florida to Michaels.

3. The Court should not approve the Proposed Assignments unless the multiple deficiencies described more fully below are remedied.

## BACKGROUND

4. On April 23, 2023, the above-captioned Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

5. No trustee has been appointed and Debtors are currently operating their businesses as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] Docket No. 1157.

2

Debtors' Chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6. On or about May 18, 2015, Daly and debtor Bed Bath & Beyond, Inc. (the "Tenant") entered into a written Lease Agreement (the "Serramonte Lease") for approximately 21,946 square feet of retail premises commonly known as 149 Serramonte Center #150, in Daly City, California (the "Serramonte Leased Premises"). The Serramonte Leased Premises have been designated by Tenant as its store No. 3108.

7. Current monthly rent and charges under the Serramonte Lease consist of (1) the monthly installment of Annual Rent of $555,233.80, (2) Tenant's "Fixed Share" of CAM Expenses of $7,036.77 per month; (3) real estate taxes of $5,059.68 per month, and (4) all other sums for which the Tenant may become liable.

8. On or about June 14, 2000, Uncommon LLC, successor-in-interest to Uncommon, Ltd. (owned and controlled by Regency), and the Tenant entered into a written Lease Agreement (the "Uncommon Lease" and, together with the Serramonte Lease, the "Leases") for approximately 29,260 square feet of retail premises commonly known as the University Commons, located at 1400C Glades Rd in Boca Raton, Florida (the "Uncommon Leased Premises" and, together with the Serramonte Leased Premises, the "Leased Premises"). The Uncommon Leased Premises have been designated by the Tenant as its store No. 385.

9. Current monthly rent and charges under the Uncommon Lease consist of (1) the monthly installment of Annual Rent of $628,020.00, (2) Tenant's "Pro Rata" share of CAM Expenses of $6,281.35 per month; (3) insurance charges of $2,284.48 per month, (4) real estate taxes of $8,983.04 per month, and (5) all other sums for which the Tenant may become liable.

10. Serramonte Center is a highly trafficked shopping center with over 1 million square feet of floor area. Serramonte Center has over 100 retail stores and restaurants, including well-known names such as Macy's, Crunch Fitness, TJ Maxx, Party City, Nordstrom Rack, Target, and Buffalo Wild Wings. University Commons is a shopping center adjacent to Florida Atlantic University with approximately 180,000 square feet of floor area. University Commons also has household names such as Whole Foods Market, Nordstrom Rack, Barnes & Noble, PF Chang's, and Shake Shack.

11. On May 3, 2023, the Debtors filed their motion to establish procedures for the sale of leases, which was granted by order on May 22, 2023 (the "Sale Procedures Order"). Pursuant to the Sale Procedures Order, on June 30, 2023, the Debtors filed the Assignment Notice. Exhibit B to the Assignment Notice identifies the Leases as ones the Debtors seek to assume and assign to Burlington and Michaels. Burlington is an American national off-price department store retailer. Michaels is a chain retailer carrying art & hobby supplies plus home décor.

## OBJECTION

### I. THE CURE AMOUNT PROPOSED BY THE DEBTORS IS INCORRECT

12. The Landlords dispute the cure amount proposed by the Debtors in the Cure Notice. The correct amounts outstanding under the Lease, including an estimate of attorneys' fees incurred to date, are as follows (the "Landlord-Proposed Cure Amounts"):

| Store No. | Mall Name | Location | Debtors' Proposed Cure Amount | Landlord-Proposed Cure Amount |
|---|---|---|---|---|
| 3108 | Serramonte Center | Daly City, CA | $126,816.00 | $154,590.00 |
| 385 | University Commons | Boca Raton, FL | $0.00 | $20,000.00 |

13. Prior to assumption and assignment, the Debtors are required to cure all outstanding defaults under the Leases pursuant to section 365(b)(1) of the Bankruptcy Code. Pursuant to the Leases, the Debtors are obligated to pay regular installments of fixed monthly rent, as well as monthly payment of real estate taxes, utility charges, and any other amounts, sums, charges, liabilities and obligations which the Tenant assumes or agrees to pay.

14. Moreover, prior to assumption and assignment, the Debtors must also compensate the Landlords for any actual pecuniary losses under the Leases. *See* 11 U.S.C. §365(b)(1)(B). As part of their pecuniary losses, the Landlords are entitled to attorneys' fees in connection with the Debtors' defaults under the Lease. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Mid Am. Oil, Inc.*, 255 B.R. 839, 841 (Bankr. M.D. Tenn. 2000); *In re Crown Books Corp.*, 269 B.R. 12, 19 (Bankr. D. Del. 2001).

15. To the extent that rent, attorneys' fees, interest, or other charges continue to accrue, and/or the Landlords suffer other pecuniary losses with respect to the Leases, the Landlords hereby reserves their rights to amend the Landlord-Proposed Cure Amounts to reflect such additional amounts or to account for year-end adjustments (the "<u>Adjustment Amounts</u>"), which have not yet been billed or have not yet become due under the terms of the Leases. As such, the Debtors or the Proposed Assignees must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts are or were incurred.

## II. DEBTORS MUST DEMONSTRATE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE IN ORDER TO ASSUME AND ASSIGN THE LEASE

16. Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Bankruptcy Code section 365(f)(2)(B) provides that a trustee or debtor-in-

possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

17.     While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

18.     The initial burden of presentation as to adequate assurance falls upon Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The Sea Harvest court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080.

19.     It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002), aff'd sub nom. *Ramco-Gershenson*

6

*Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, *that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that *assumption or assignment of such lease is subject to all the provisions thereof, including* (but not limited to) provisions such as a radius, location, *use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will *not disrupt any tenant mix or balance* in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added).

20. Before 1984, Bankruptcy Code sections 365(b)(3)(C) and (D) provided that an assignment of a shopping center lease must not "substantially" breach any use or exclusivity provision or "substantially" disrupt any tenant mix or balance in a shopping center. In 1984, however, the legislature approved amendments to section 365 of the Bankruptcy Code to afford further protection for landlords and tenants in shopping centers. *Bankruptcy Amendments and Federal Judgeship Act of 1984*, Pub. L. No. 98-353. Among these protections was the deletion of the word "substantially" from Bankruptcy Code section 365(b)(3).

21. Consistent with the legislative purpose, the Debtor bears the burden of proof to demonstrate the proposed assignee's ability to provide the landlord with adequate

assurance of future performance. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983); *see also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991).

22. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-149 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986).

23. As discussed, Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in Bankruptcy Code section 365(b)(3).

### A.    The Leases are for Real Property in Shopping Centers

24. It cannot be seriously disputed that the Leases are for "real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-1087 (3d Cir. 1990); *In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, the Landlords are entitled to the protections afforded shopping center landlords under Bankruptcy Code section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 298 (3d Cir. 2000).

### B. The Proposed Assignments Must Comply With the Terms of the Leases

25. The Proposed Assignees' uses and occupancies of the Leases are "subject to . . . exclusivity provisions . . . contained in *any other lease* . . . relating to the shopping center." *See* 11 U.S.C. § 365(b)(3)(C) (emphasis added). The Proposed Assignments must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, and tenant mix and balance. The Landlords have no reason to believe that the Proposed Assignees will use the Leased Premises other than in conformity with all applicable use and exclusivity provisions. Nonetheless, to the extent that the Proposed Assignees do not intend to comply with the use or other provisions of the Leases, the Landlords reserve their rights to object to any such issues at the sale hearing.

### C. The Debtors and Proposed Assignees Have Not Provided the Landlords with the Requisite Information

26. The Debtors have failed to provide any financial information as to the financial condition of the Tenant under the Leases in order to provide a "benchmark" against which the Proposed Assignees' financial condition and operating history can be measured. *See* 11 U.S.C. § 365(b)(3)(A). Additionally, the Landlords have not been provided with sufficient financial information about the Proposed Assignees or the identities of the entities that will be the ultimate tenants under the Leases. Accordingly, unless and until the Landlords are provided with such information, the Debtors may not assume and assign the Leases.

### D. The Debtors Have Failed to Provide for Payment of All Accrued But Not Yet Billed Amounts

27. Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ." As with most modern shopping center leases, the Leases provides for periodic payment of real estate

taxes, utility charges, and any other amounts, sums, charges, liabilities and obligations which the Tenant assumes or agrees to pay.

28. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of the Leases are "subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C), either the Debtors must make arrangement for such payment by establishment of a segregated, reserve account for that purpose or the Proposed Assignees must have responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits).

29. As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing,* 156 B.R. at 175 n.3:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) 'relieves the . . . estate from any liability for any breach of such . . . lease occurring after such assignment.' A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. See Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ('delegation of performance . . . does not discharge any duty or liability of the delegating obligor')). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc*., 209 F.3d 291, 299 (3rd Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.").

30. As a matter of law, however, a debtor is not entitled to the benefits and protections of Section 365(k) where the debtor does not assume and assign the lease *cum onere*—with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76 (3d Cir. 1999).[2] In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81.

31. For these reasons, in order to provide adequate assurance of future performance, either the Proposed Assignees or the Debtors must be responsible for all accrued but not yet billed amounts under the Lease, including amounts for real estate taxes, common area maintenance, and insurance.

### E. Debtors Have Failed to Provide Adequate Assurance of Future Performance of Indemnification Obligations

32. In addition to the monetary obligations that either Debtors or any proposed assignee must satisfy under Bankruptcy Code section 365, section 10.1 of each Lease provides that the Tenant must indemnify and hold the Landlord "harmless from and against any and all claims, actions, damages, liability and expense, including reasonable attorneys' fees arising from, among other things, loss of life, personal injury and/or property damage. There are no exclusions or limitations on such indemnification with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to the Landlords, the Debtors or any assignees until after the assignments.

---

[2] Bankruptcy Code section 365(f) requires a debtor to assume (and assign) a contract subject to all benefits and burdens thereunder. *See, e.g., In re Fleming Companies, Inc*., 499 F.3d 300, 308 (3d Cir. 2007). In this regard, to the extent Debtors seek to assign the Lease under Bankruptcy Code section 363(f) "free and clear" of the recorded conditions and restrictions that are part of the Lease, such relief is contrary to Bankruptcy Code sections 365(b)(3)(C) and (f).

33. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) the Proposed Assignees must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in the assignment agreement, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the Landlords are joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

### III. DEMAND FOR A DEPOSIT OR OTHER SECURITY

34. Section 365(l) of the Bankruptcy provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

35. In the ordinary course of their business, the Landlords require security deposits or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the proposed assumption and assignment of the Leases, the Landlords hereby make a demand for such security in one of those forms as required by section 365(l) of the Bankruptcy Code.

**JOINDER & RESERVATION OF RIGHTS**

36. To the extent consistent with the objections expressed herein, the Landlords join in the objections of other landlords. The Landlords further reserve their rights to make such other and further objections as may be appropriate based upon any new information provided by the Debtors or the Proposed Assignees or upon any different relief requested by the Debtors, or as may be developed through formal or informal discovery.

**CONCLUSION**

37. Because the Debtors have failed to sustain their burden of demonstrating adequate assurance of future performance with respect to the Proposed Assignments of the Leases, the assignment of the Leases for the Leased Premises, as proposed, should be denied.

Dated: July 12, 2023
New York, New York

*/s/ Robert L. LeHane*
Robert L. LeHane, Esq.
Ravi Vohra, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
           rvohra@kelleydrye.com
           cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Regency Centers L.P. and Daly City Serramonte Center, LLC*