Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: 212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
          jraviele@kelleydrye.com
          cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for SITE Centers Corp.*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND, INC., *et al.* | Case No. 23-13359 (VFP) |
| | (Jointly Administered) |
| Debtors.[1] | **Hearing Date: July 18, 2023 at 2:30 p.m.** |

**LIMITED OBJECTION OF SITE CENTERS CORPORATION TO DEBTORS'
NOTICE OF ASSUMPTION OF CERTAIN UNEXPIRED LEASES**

SITE Centers Corp. (the "Landlord"), by and through its undersigned counsel, Kelley Drye & Warren LLP, submits this limited objection (this "Objection") to the *Notice of*

---

[1] Pursuant to the information provided by the Debtors, the last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Assumption of Certain Unexpired Leases* (the "Assumption Notice")[2] filed by the above-captioned debtors (collectively, the "Debtors"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Landlord is not fundamentally opposed to the assumption and assignment of their Leases (defined below), but there are several problems with the proposed assignment that remain unresolved as of the filing of this Limited Objection.

2. First, neither the Debtors nor the Proposed Assignees (defined below) adequately provide for a cure of existing defaults under the Leases. In connection with the potential assumption of the Leases, the Debtors are required to satisfy the cure amounts set forth as detailed below and in the attached exhibits, plus any additional pecuniary losses suffered by the Landlord, including reasonable attorneys' fees. The Debtors must also cure or provide adequate assurance that they will cure all non-monetary defaults under the Leases.

3. Second, the Debtors have failed to meet their burden of demonstrating adequate assurance of future performance as required by Bankruptcy Code section 365(b)(3). Among other issues, as part of adequate assurance of future performance, the Debtors must satisfy any Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Leases. The Debtors must also (i) be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which occurred before assumption, but which were not known to the Landlord as of the date of the assumption, and (ii) continue to timely pay all rent, additional rent, and percentage rent due under

---

[2] Docket No. 1157. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

the Leases until the Leases are assumed and assigned pursuant to section 365(d)(3) of the Bankruptcy Code.

4. The Debtors and the Proposed Assignees have also failed to provide sufficient evidence regarding the similarity between the financial condition and operating performance of the Proposed Assignees and the Debtors at the time the Leases were executed, as required by section 365(b)(3) of the Bankruptcy Code.

5. The Landlord is in discussions with the Proposed Assignees and the Debtors and would prefer to resolve these issues consensually, but has filed this Limited Objection in case the parties are unable to reach agreement. In any event, the Court should not approve the Proposed Assignments (defined below) unless the deficiencies described below are remedied.

## BACKGROUND

### A. General Background

6. The Landlord is the owner or managing agent for the owners of numerous shopping centers located throughout the United States. The Debtors lease retail space from the Landlord pursuant to written leases (the "Leases") for the locations listed on **Exhibit A** (the "Leased Premises"). Each of the Leased Premises is located in a "shopping center," as that term is used in section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

7. On April 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### B. The Proposed Lease Assignments

3

8. On May 22, 2023, this Court entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Lease Sale Procedures Order").[3] Pursuant to the Lease Sale Procedures Order, on June 26, 2023, the Debtors conducted a "Phase I" auction of certain of its real property leasehold interests, including the Leases.

9. On June 27, 2023, the Debtors filed their *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* (the "Post-Auction Notice"),[4] which identified (i) Burlington Coat Factory Warehouse Corporation and/or one of its affiliates ("Burlington") as the successful bidder for the Hamilton Lease; and (ii) Macy's Retail Holdings, LLC and/or one of its affiliates ("Macy's") as the successful bidder for the Winter Garden Lease.

10. On June 30, 2023, the Debtors filed the Assumption Notice, notifying parties in interest of the Debtors' request for this Court to approve numerous lease assignments, including the proposed assignments of: (a) the Winter Garden Lease to Macy's (the "Winter Garden Lease Assignment"), for a purchase price of $1,200,000 and (b) the Hamilton Lease to Burlington (the "Hamilton Lease Assignment," and together with the Winter Garden Lease Assignment, the "Proposed Assignments").

**OBJECTION**

**I.    The Cure Amounts Proposed by the Debtors Are Incorrect.**

11. Section 365(b)(1)(A) of the Bankruptcy Code provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that

---

[3]    Docket No. 422.

[4]    Docket No. 1114.

4

it will promptly cure those defaults, it cannot assume the lease. *See* 11 U.S.C. § 365(b)(1)(A). As one court has noted, "[s]ection 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001).

12.     Pursuant to the Leases, the Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance ("CAM") costs and expenses, real estate taxes, and assessments. In addition, in order for the Lease Assignment to be approved, all outstanding defaults under the Leases must be cured, and the Landlord must be compensated for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B). Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *see also In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14–15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

13.     The Landlord disputes the cure amounts proposed by the Debtors in connection with the assumption and assignment of the Leases. The correct cure amounts for the Leases are set forth on **Exhibit A**, attached hereto, in the "Landlord Cure Amount" column, which includes an estimate of attorneys' fees incurred to date.

14.     To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Leases, the Landlord hereby reserve its right to amend the Landlord Cure Amounts to reflect such

5

additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2022 and 2023, which have not yet been billed or have not yet become due under the terms of the Leases (the "Adjustment Amounts"). The Debtors must be responsible to satisfy all accrued but unbilled obligations under the Leases, including the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred. The Landlord further reserve its right to amend the cure amounts to include additional amounts that continue to accrue, including non-monetary obligations, and any other obligations that arise and/or become known to the Landlord prior to the assumption and assignment of the Leases.

### II. The Debtors and/or the Proposed Assignees Have Failed to Provide Evidence of Adequate Assurance of Future Performance Under the Leases.

15. In addition to the curing of any default, the Lease Assignment is also conditioned upon providing the Landlord with adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) of the Bankruptcy Code provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2)(B).

16. It is well established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum*, Ltd., 922 F.2d at 1086. Accordingly, section 365(b)(3) of the Bankruptcy Code provides, in pertinent part:

> [A]dequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance —
>
> (a) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its

6

    guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

    (b) that any percentage rent due under such lease will not decline substantially;

    (c) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

    (d) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

    17. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Ctr., Inc.*, 100 B.R. 147, 148–149 (Bankr. D.Conn. 1989). Indeed, courts have required a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393–394 (Bankr. M.D. Fla. 1986); *see also In the Matter of CM Sys., Inc.*, 64 B.R. 363, 364–65 (Bankr. M.D. Fla. 1986). As discussed below, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in section 365(b)(3).

    A. *The Debtors have failed to establish that the financial condition and operating performance of the Proposed Assignees is similar to the financial condition and operating performance of the Debtors at the time the Leases were executed.*

    18. The Debtors bear the burden of proving adequate assurance of future performance in connection with the assumption of the Leases. *See In re F.W. Rest. Assoc., Inc.*,

7

190 B.R. 143 (Bankr. D. Conn. 1995); *see also In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

19.    Here, however, the Debtors have failed to provide any financial information as to the financial condition of Bed Bath & Beyond, Inc. ("BBBY"), the tenant under the Leases, in order to provide a "benchmark" against which the proposed assignee's financial condition and operating history can be measured. *See* 11 U.S.C. § 365(b)(3)(A). Additionally, the Landlord has not been provided with sufficient financial information about the Proposed Assignees that would allow the Landlord to compare to the financial condition and operating performance of the Proposed Assignees with that of BBBY at the time BBBY became the lessee under the Leases, as required by section 365(b)(3)(A) of the Bankruptcy Code. Accordingly, unless and until the Landlord is provided with such information, the Debtors may not assume and assign the Leases.

B.    *The Debtors have failed to account for the future payment of CAM expense adjustments.*

20.    Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C). As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing*:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the . . . estate from any liability for any breach of such . . . lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993); *see also In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (stating that adequate assurance is "necessary to protect the rights of the

non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.").

21. As a matter of law, however, a debtor is not entitled to the benefits and protections of section 365(k) of the Bankruptcy Code where the debtor does not assume and assign the lease *cum onere* — with all benefits and burdens. *See, e.g.*, *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between a debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of section 365(k). *See id.* at 81.

22. As with most modern shopping center leases, the Leases provide for the monthly payment of "Tenant's Proportionate Share" of the CAM expenses, which are based on budgeted amounts and subject to later reconciliation based on actual expenses incurred. Here, however, paragraph 3 of each of the Debtors' proposed Assignment and Assumption Agreements seeks to bifurcate the tenant's future expense reimbursement obligations, purporting to limit the assignee's assumption of the Leases to obligations "arising from and after the Closing." *See* Assumption Notice, pp. 63–71 (the "Assignment Agreement"), at ¶ 4.

23. Since year-end expense adjustments for 2023 will not be billed until later on in the year, there is no pending default with respect to such obligations. Nevertheless, since the Assignment Agreement purports to exclude the Proposed Assignees' liability for such obligations, the Landlord is not receiving adequate assurance that those obligations will be paid when billed in the future. In order to satisfy the adequate assurance requirements of section 365(b)(1)(C), either (i) the Debtors must provide for the payment of these expenses by the establishment of a segregated reserve account for that purpose or (ii) the Proposed Assignees must assume responsibility for such

Document    Page 10 of 14

as yet unbilled obligations (and, conversely, receive the benefit of any credits), even though future billings may include expenses that accrue prior to the Closing Date under the Assignment Agreement.

24. For these reasons, in order to provide adequate assurance of future performance, the Debtors must make an adequate provision for future expense adjustments under the Leases.

    C.    *The Debtors have failed to provide adequate assurance of future performance of indemnification obligations.*

25. In addition to the monetary obligations that either the Debtors or any proposed assignee must satisfy under section 365 of the Bankruptcy Code, the Leases provide that the Debtors must indemnify and hold Landlord "harmless against all loss, liability, penalties, claims or demands of whatsoever nature" arising from, among other things, Tenant's use of the Leased Premises or breach of any provision of the Leases. There is no exclusion or limitation on such indemnification with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to Landlord, the Debtors, or any assignee until after the assignment.

26. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) the Proposed Assignees must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in the Assignment Agreement, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises

10

where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

## **RESERVATION OF RIGHTS**

27. The Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by the Debtors or the Proposed Assignees, or as may be developed through formal or informal discovery, with the respect to the relief requested in the Assignment Motion or upon any different relief requested by the Debtors. The Landlord further reserves the right to amend and/or supplement this Objection on any basis, including, without limitation, by adding or supplementing objections to the Debtors' proposed cure amount and by adding or supplementing objections to the assignment of the Leased Premises or adequate assurance of future performance information provided by the Debtors.

*[space intentionally left blank]*

## CONCLUSION

**WHEREFORE**, the Landlord respectfully requests that any order approving the Proposed Assignments be conditioned upon: (i) the Debtors and/or the Proposed Assignees satisfying the Landlord's cure amount, illustrated on **Exhibit A** hereto; and (ii) the Debtors and/or the Proposed Assignees providing the requisite adequate assurance of future performance under the Leases.

Dated: July 12, 2023

Respectfully submitted,

**KELLEY DRYE & WARREN LLP**

By: */s/ Robert L. LeHane*

Robert L. LeHane
Jennifer D. Raviele (admitted *pro hac vice*)
Connie Choe (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
       jraviele@kelleydrye.com
       cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Attorneys for SITE Centers Corp.*

## EXHIBIT A

**(Leased Premises and Cure Amounts)**

| Store No. | Assignee | Premises Address | Debtors' Cure Amount | Landlord Cure Amount |
|---|---|---|---|---|
| 1309 | Burlington Coat Factory Warehouse Corporation | 160 Marketplace Boulevard Hamilton, NJ 08691 | $68,214.00 | $133,010.11 |
| 1338 | Macy's Retail Holdings, LLC | 3215 Daniels Road Winter Garden, FL 34787 | $3,390.00 | $6,890.56 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this July 12, 2023, a copy of the foregoing Objection was served via CM/ECF on all parties registered to receive such notice in the above-captioned cases.

                                         */s/ Robert L. LeHane*
                                         Robert L. LeHane