Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Connie Y. Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
            jraviele@kelleydrye.com
            cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Landlord, SIPOC LLC and*
*Benderson Development Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BED BATH & BEYOND, INC., *et al.*, | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Hearing Date: July 18, 2023 at 2:30 p.m.** |

---------------------------------------------------------------x

**OBJECTION OF SIPOC LLC AND BENDERSON DEVELOPMENT COMPANY, LLC**
**TO MOTION FOR ORDER AUTHORIZING DEBTORS TO**
**ASSUME AND ASSIGN LEASE FOR STORE NO. 1268**

Benderson Development Company LLC ("Benderson") as managing agent, and Sarasota Associates A-I, LLC, Sarasota Associates B-II, LLC, Sarasota Associates C-III, LLC, Sarasota Associates D-IV, LLC, Sarasota Associates E-V, LLC, Honore Associates I, LLC and DeSoto Road Associates I, LLC, known collectively for tax purposes as SIPOC, LLC (collectively, the "Landlord"), by and through their undersigned counsel, Kelley Drye & Warren LLP, submit this

objection (this "Objection") to the proposed assumption and assignment for the unexpired lease of nonresidential real property (the "Proposed Lease Assignment") between the Landlord and Bed Bath & Beyond, Inc. ("BBBY" or the "Debtor") for the Debtors' Store No. 1268 located at University Town Center in Sarasota, Florida (the "Lease" or the "Town Center Lease") to Burlington Coat Factory Warehouse Corporation and/or one of its affiliates ("Burlington" or the "Proposed Assignee") pursuant to the Notice of Assumption of Certain Unexpired Leases [Docket No. 1157] (the "Assignment Notice") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Benderson objects to the Proposed Lease Assignment on grounds that Burlington's bid at the Phase I Auction for the assumption of the Leased Premises (defined below) was not the highest and best bid and Burlington should not have been deemed the successful bidder with respect to the Town Center Lease. Rather, Benderson's bid for the termination of the Lease in the amount of $550,000 was a higher and better bid on a per location basis and would provide the estate with significantly higher value for the Town Center Lease.

2. The Landlord is also opposed to the proposed assignment of the Lease to Burlington because the Debtors and the Proposed Assignee have failed to (i) adequately provide for a cure of existing defaults; (ii) compensation of any pecuniary losses suffered by the Landlord, including reasonable attorneys' fees; (iii) provide any evidence regarding the similarity between the financial condition and operating performance of the Proposed Assignee and Tenant (defined below) at the time the Lease was executed; (iv) provide for payment of all accrued but unbilled obligations under the Lease; or (v) provide adequate assurance of future performance of indemnification obligations under the Lease. As a result, the Debtors have failed to provide adequate assurance in connection with the Proposed Assignment of the Lease.

3. The Landlord and Benderson are willing to engage in discussions with the Proposed Assignee and the Debtors and would prefer to resolve these issues consensually, but file this Objection in case the parties are unable to reach agreement. The Court should not approve the Proposed Lease Assignment to Burlington.

## BACKGROUND

4. The Landlord is the owner or managing agent for the owners of numerous shopping centers located throughout the United States including the retail space the Debtors lease pursuant to a written lease (the "Lease") for Debtors' Store No. 1268 (the "Leased Premises") at the commercial shopping center commonly located at 111 North Cattlemen Road, Sarasota, Florida 34243 ("Town Center").

5. On April 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court. Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On May 22, 2023, the Court entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Lease Sale Procedures Order").[1] Pursuant to the Lease Sale Procedures Order, on June 26, 2023, the Debtors conducted its "Phase I" auction of certain of its real property leasehold interests (the "Phase I Auction"), including the Lease.

7. On June 27, 2023, the Debtors filed their *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption*

---

[1] Docket No. 422.

3

*and Assignment of Certain Unexpired Leases* (the "Phase I Auction Notice"),[2] which identified Burlington as the successful bidder for the Lease and Benderson as the back-up bidder.

8. On June 30, 2023, the Debtors filed the Assignment Notice, requesting that certain unexpired leases be assumed and assigned to the respective successful bidder. Exhibit B to the Assignment Notice identifies the Lease as one the Debtors seek to assume and assign, including the respective cure amount.[3] The Debtors have proposed a $47,957.00 cure amount in connection with the Proposed Lease Assignment.

## OBJECTION

### I. BENDERSON WAS THE HIGH BIDDER FOR THE LEASE

9. The Landlord objects to the proposed Lease Assignment on grounds that Burlington's bid at the Phase I Auction for the assumption of the Leased Premises (defined below) was not the highest and best bid and Burlington should not have been deemed the successful bidder with respect to the Town Center Lease. Specifically, Mark Chait, Benderson's Executive Director, Leasing – Southeast, attended the auction in person and presented a bid for the termination of Lease in the amount of $550,000. Although Burlington refused to allocate the purchase price of $12,000,000 over the 44 leases included in its bid, Benderson's bid is clearly higher than Burlington's on a per lease basis. As a result, Burlington's bid is not higher and better than the Benderson bid for the Town Center Lease. Benderson is a creditor of the Debtors with standing to object to the Debtors' failure to accept the highest and best bid for the Town Center Lease.

---

[2] Docket No. 1114.

[3] The Assumption Notice incorrectly states that the Town Center Lease will be assigned to Haverty Furniture Companies, Inc., which is in direct contradiction with the results of the Phase 1 Auction Notice. The Phase 1 Auction Notice lists Burlington as the successful bidder for the Town Center Lease. The Landlord has reached out to Debtors and confirmed that this is an incorrect notation that will be corrected on the record. For all intents and purposes, Burlington shall be deemed to be the Proposed Assignee of the Town Center Lease.

4

## II. THE CURE AMOUNT PROPOSED BY THE DEBTORS IS INCORRECT

10. The Landlord disputes the cure amount proposed by the Debtors in the Assignment Notice. The correct amounts outstanding under the Lease, including an estimate of attorneys' fees incurred to date, are as follows (the "Landlord Cure Amount"):

| Store No. | Mall Name | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|---|
| 1268 | The West District at UTC | Sarasota, Florida | $47,957.00 | $147,338.06 |

11. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume the lease. As one court has noted, "[s]ection 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord In re Valley View Shopping Ctr., L.P.,* 260 B.R. 10, 25 (Bankr. D. Kan. 2001).

12. Pursuant to the Lease, the Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance ("CAM") costs and expenses, real estate taxes, and assessments. In addition, in order for the Proposed Lease Assignment to be approved, all outstanding defaults under the Lease must be cured, and the Landlord must be compensated for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B). Attorneys' fees due under the Lease are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *see also In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14–15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn.

5

1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

13. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Lease, the Landlord hereby reserve its right to amend the Landlord Cure Amount to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2022 and 2023, which have not yet been billed or have not yet become due under the terms of the Lease (the "Adjustment Amounts"). The Debtors must be responsible to satisfy all accrued but unbilled obligations under the Lease, including the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts were incurred. The Landlord further reserve its right to amend the cure amount to include additional amounts that continue to accrue, including non-monetary obligations, and any other obligations that arise and/or become known to the Landlord prior to assumption and assignment of the Lease.

## II. DEBTORS MUST PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

14. In addition to the curing of any default, the Proposed Lease Assignment is also conditioned upon providing the Landlord with adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) of the Bankruptcy Code provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

15. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have

concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

16. The initial burden of presentation as to adequate assurance falls upon the Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The Sea Harvest court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Lease and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080.

17. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd.*, 922 F.2d at 1086. Accordingly, section 365(b)(3) of the Bankruptcy Code provides, in pertinent part:

> [A]dequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance —
>
> (a) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

7

   (b) that any percentage rent due under such lease will not decline substantially;

   (c) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

   (d) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

18. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Ctr., Inc.,* 100 B.R. 147, 148–149 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, Matter of Haute Cuisine, Inc., 58 B.R. 390, 393–394 (Bankr. M.D. Fla. 1986); *see also In the Matter of CM Sys., Inc.*, 64 B.R. 363, 364–65 (Bankr. M.D. Fla. 1986).

19. As discussed below, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in section 365(b)(3).

   **A.** **The Leased Premises are in a Shopping Center**

20. It cannot be seriously disputed that the Lease is for "real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-1087 (3d Cir. 1990); *In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, the Landlords are entitled to the protections afforded shopping center landlords under Bankruptcy Code section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 298 (3d Cir. 2000).

8

  **B.** **Debtors Failed to Establish the Financial Condition and Operating Performance of Burlington is Similar to the Financial Condition and Operating Performance of the Debtors at the Time the Lease Was Executed**

  21. The Debtors bear the burden of proving adequate assurance of future performance in connection with the assumption of the Lease. *See In re F.W. Rest. Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *see also In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

  22. Here, however, the Debtors have failed to provide any financial information as to the financial condition of Bed Bath & Beyond, Inc., the tenant under the Lease, in order to provide a "benchmark" against which the proposed assignee's financial condition and operating history can be measured. *See* 11 U.S.C. § 365(b)(3)(A). Additionally, the Landlord has not been provided with sufficient financial information about the Proposed Assignee that would allow the Landlord to compare to the financial condition and operating performance of the Proposed Assignee with that of BBBY at the time BBBY became the lessee under the lease, as required by section 365(b)(3)(A) of the Bankruptcy Code. Accordingly, unless and until the Landlord is provided with such information, the Debtors may not assume and assign the Lease.

  **C.** **Debtors Must Account for All Accrued but not yet Billed Amounts**

  23. Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C). As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing*:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the . . . estate from any liability for any breach of such . . . lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this

9

> common law rule and relieves the estate from all liability under the lease following assignment.

156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993); *see also In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (stating that adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.").

24. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of the Lease is "subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C), either the Debtors must make arrangement for such payment by establishment of a segregated, reserve account for that purpose or the Proposed Assignee must have responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits).

25. As a matter of law, however, a debtor is not entitled to the benefits and protections of section 365(k) of the Bankruptcy Code where the debtor does not assume and assign the lease *cum onere* — with all benefits and burdens. *See, e.g.*, *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between a debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of section 365(k). *See id*. at 81.

26. As with most modern shopping center leases, the Lease provides for the monthly payment of "Tenant's Proportionate Share" of the CAM expenses, which are based on budgeted amounts and subject to later reconciliation based on actual expenses incurred. Here, however, paragraph 3 of each of the Debtors' proposed Assignment and Assumption Agreements seeks to bifurcate the tenant's future expense reimbursement obligations, purporting to limit the

10

assignee's assumption of the Leases to obligations "arising from and after the Closing." *See* Assumption Notice, pp. 63–71 (the "<u>Assignment Agreement</u>"), at ¶ 4.

27. Since year-end expense adjustments for 2023 will not be billed until later on in the year, there is no pending default with respect to such obligations. Nevertheless, since the Assignment Agreement purports to exclude the Proposed Assignee's liability for such obligations, the Landlord is not receiving adequate assurance that those obligations will be paid when billed in the future. In order to satisfy the adequate assurance requirements of section 365(b)(1)(C), either (i) the Debtors must provide for the payment of these expenses by the establishment of a segregated reserve account for that purpose or (ii) the Proposed Assignees must assume responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits), even though future billings may include expenses that accrue prior to the Closing Date under the Assignment Agreement.

28. For these reasons, in order to provide adequate assurance of future performance, either the Proposed Assignee or the Debtors must be responsible for all accrued but not yet billed amounts under the Lease, including amounts for real estate taxes, common area maintenance, and insurance.

    **D.    <u>Debtors Must Provide Adequate Assurance of Indemnification Obligations</u>**

29. In addition to the monetary obligations that either Debtors or any proposed assignee must satisfy under section 365 of the Bankruptcy Code, the Lease provides that the Debtors must indemnify and hold Landlord harmless against all loss, liability, penalties, claims or demands of whatsoever nature arising from, among other things, Tenant's use of the Leased Premises or breach of any provision of the Lease. There is no exclusion or limitation on such indemnification with regard to events or incidents that may have occurred prior to any assignment,

but which are not made known to the Landlord, the Debtors or any assignee until after the assignment.

30. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) the Proposed Assignee must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in the assignment agreement, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

### III.    DEMAND FOR SECURITY

31. Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

32. In the ordinary course of their business, the Landlord requires security deposits, guaranties or letters of credit when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and operating history. In connection with the proposed assumption and assignment of the Lease, the Landlord demands security as required by section 365(l) of the Bankruptcy Code.

12

## RESERVATION OF RIGHTS

33. The Landlord reserves the right to amend and/or supplement this objection on any basis, as may be appropriate based upon any new information provided by the Debtors or the Proposed Assignee, or as may be developed through formal or informal discovery.

## CONCLUSION

**WHEREFORE,** the Landlord respectfully requests that any order denying the proposed Lease Assignment; and grant such other and further relief as may be appropriate under the circumstances.

Dated: July 12, 2023

Respectfully submitted,

**KELLEY DRYE & WARREN LLP**

By: */s/ Robert L. LeHane*

Robert L. LeHane
Jennifer D. Raviele (admitted *pro hac vice*)
Connie Y. Choe
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
jraviele@kelleydrye.com
cchoe@kelleydrye.com

*Attorneys for Landlord, SIPOC, LLC and Benderson Development Company, LLC*

**EXHIBIT A**

| Store No. | Tenant | Mall Name | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|---|---|
| 1268 | Bed Bath & Beyond, Inc. | The West District at UTC | Sarasota, FL | $47,957.00 | $147,338.06 |

2

## CERTIFICATE OF SERVICE

I hereby certify that on this July 12, 2023, a copy of the foregoing Objection was served via CM/ECF on all parties registered to receive such notice in the above-captioned cases.

                                          */s/ Robert L. LeHane*
                                          Robert L. LeHane