| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br><br>John S. Mairo, Esq. (JSMairo@pbnlaw.com)<br>Dean M. Oswald, Esq. (DMOswald@pbnlaw.com)<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>-and-<br>1675 Broadway, Suite 1810<br>New York, New York 10019<br>(212) 265-6888<br><br>*Counsel for DPEG Fountains, LP* |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] |

Chapter: 11

Case No.: 23-13359 (VFP)

**OBJECTION BY LANDLORD DPEG FOUNTAINS, LP TO DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASE**

DPEG Fountains, LP ("Landlord"), by and through its undersigned attorneys, hereby files its objection to the *Notice of Assumption of Certain Unexpired Leases* (the "Assumption Notice") [Docket No. 1157] and, in particular, to the proposed assignment of the Lease (defined below) to Burlington Coat Factory Warehouse Corporation ("Burlington").

**BACKGROUND**

1. On April 23, 2023, the above captioned debtors (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/BBBY. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

7403991

2.       On May 25, 2023, the Debtors filed the Notice of Lease Auction and Potential Lease Sale Hearing [Docket No. 456], in which it listed the Lease as one of the leases to be sold at auction.

3.       On June 23, 2023, the Debtors filed the Notice of Phase 1 Lease Auction, Qualified Bids, Lease Sale Hearing, And Related Lease Information [Docket No. 905], in which it listed the Lease as one of the leases to be sold at auction, objections to which are due by July 11, 2023.[2]

4.       On June 27, 2023, the Debtors filed a Notice of Successful and Backup Bidder with Respect to Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases (the "Auction Notice" together with the Assumption Notice, the "Notices"). [Docket No. 1114]. The Notice provides that the Lease covering the Leased Property (defined below) is one of the leases to be assumed and assigned to Burlington for the sum of $12,000,000 (Auction Notice Ex. A, No. 69).

5.       On June 30, 2023, the Debtors filed the Notice of Assumption of Certain Unexpired Leases [Docket No. 1157].

6.       The Landlord owns real property in a shopping center located at The Fountains on the Lake, 12520 Fountain Lake Circle, Stafford, TX, 77477 (the "Shopping Center" or "Leased Property"), which has, in, part been leased to Stafford Bed Bath & Beyond, Inc. ("BBB") and operated by BBB. The Agreement of Lease, between Fountains Property Limited and BBB, amended from time to time, is attached hereto as Exhibit A and incorporated herein by reference (the "Lease"). Additionally, the Agreement of Lease, between Fountains Dunhill, LLC and Ross Dress For Less, Inc., is attached hereto as Exhibit B and incorporated herein by reference ("Ross" and the "Ross Lease").

---

[2] Debtors' counsel agreed to extend the objection deadline to noon (ET) on Thursday, July 13, 2023.

7403991

7. Sections 365(b)(1)(A), 365(b)(3) and 365(f)(2)(A) govern the obligations of a debtor seeking court authority to assume or assign a lease. BBB has failed to comply with the requirements of these sections by, among other things, failing to provide for a cure and/or adequate assurances.

8. The Leased Property is a lease of "real property in a shopping center" within the meaning of section 365(b)(3) of the Bankruptcy Code.

## **OBJECTION**

9. BBB may not assume and assign the Lease unless, at the time of assumption, it demonstrates, among other things, adequate assurance that it will cure, or promptly cure, any monetary defaults, in addition to providing "adequate assurance of future performance" under the Lease. 11 U.S.C. § 365(b)(1).

10. With respect to leased space within a shopping center, which is applicable here, the Bankruptcy Code includes additional protections for landlords and provides that any "assignment of [the Lease] is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, *use, or exclusivity* provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center." 11 U.S.C. § 365(b)(3)(C) (emphasis added).

11. When a debtor chooses to assume an unexpired lease under Bankruptcy Code Section 365, it assumes the lease *cum onere*, so that the debtor must assume all the benefits, burdens, and obligations attendant thereto. *N.LR.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984).

**A.** **Debtors Must Cure any Monetary Defaults**

12. Landlord disputes the cure amount of $0 proposed by the Debtors in the Cure

7403991

Notice. The correct amount outstanding under the Lease, including an estimate of attorney's fees incurred to date, is $10,000 (the "Cure Amount").

13. Prior to assumption and assignment, Section 365(b)(1) requires the debtor to cure any monetary defaults. In addition, Section 365(b)(1) includes compensation to landlords for sums incurred for attorneys' fees and expenses. Landlord hereby objects to assumption of the Lease listed in the Notices absent payment of attorneys' fees and expenses. *See* 11 U.S.C. §365(b)(1)(B); *LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

14. Additionally, prior to assumption and assignment, the c Debtors must also compensate Landlord for any actual pecuniary losses under the Lease. *See* 11 U.S.C. §365(b)(1)(B). As part of their pecuniary losses, Landlord is entitled to attorneys' fees in connection with the Debtors' defaults under the Lease. *In re Mid Am. Oil, Inc.*, 255 B.R. 839, 841 (Bankr. M.D. Tenn. 2000); *In re Crown Books Corp.*, 269 B.R. 12, 19 (Bankr. D. Del. 2001).

15. Furthermore, to the extent that rent, attorney's fees, interest, or other charges continue to accrue, and/or Landlord suffers other pecuniary losses with respect to the Lease, the Landlord reserves the right to amend the Cure Amount to reflect such additional amounts or to account for year-end adjustments (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Lease. As such, the Debtors or their assignee(s) must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts are or were incurred.

7403991

16. Thus, Landlord objects to the assumption of the Lease absent payment of all cure amounts owed thereunder through the effective date of assumption, including any amounts that will become due or be invoiced on or hereafter, such as attorneys' fees and costs. *See* Lease, §18(d) (requiring BBB to pay Landlord's expenses, including attorneys' fees).

**B.    Debtors Must Demonstrate Adequate Assurance of Future Performance in Order to Assume and Assign the Lease.**

17. Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

18. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlords with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code Section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

19. The initial burden of presentation as to adequate assurance falls upon the Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989).

7403991

20. There should be no dispute whether the Lease is for "real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-1087 (3d Cir. 1990); *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, Landlord is entitled to the protections afforded shopping center landlords under Bankruptcy Code Section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000).

21. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002), aff'd sub nom. R*amco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003). Bankruptcy Code Section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance.

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt

6

7403991

any tenant mix or balance in such shopping center.

22. Before 1984, Sections 365(b)(3)(C) and (D) of the Bankruptcy Code provided that an assignment of a shopping center lease must not "substantially" breach any use or exclusivity provision or "substantially" disrupt any tenant mix or balance in a shopping center. In 1984, however, the legislature approved amendments to Section 365 of the Bankruptcy Code to afford further protection for landlords and tenants in shopping centers. *Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353*. Among these protections was the deletion of the word "substantially" from Section 365(b)(3) of the Bankruptcy Code.

23. Consistent with the legislative purpose, the debtor bears the burden of proof to demonstrate the proposed assignee's ability to provide the landlord with adequate assurance of future performance. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y, 1983); *see also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991).

24. Here, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in Bankruptcy Code Section 365(b)(3), and the proposed assignment would violate exclusive use provisions in other tenant leases and disrupt the tenant mix and balance in the Landlord's shopping center.

C. **Debtors' Assignment to Burlington Violates Landlord's Rights in the Ross Lease.**

25. Assignment of the Lease to Burlington is premised on Burlington's demonstration of adequate assurance of future performance, and Burlington's use and occupancy of the Leased Property is "subject to … use, or exclusivity provisions … contained in **any other lease** … relating to the shopping center." *See* 11 U.S.C. § 365(b)(3)(C). Because a proper tenant mix is an essential ingredient of all shopping centers, this legislative purpose will be given effect even where the Debtors' own lease contains no effective exclusives or other use restrictions. *See Federated Dep't*

7

7403991

*Stores*, 135 B.R. at 945.

26. Here, the assignment to Burlington violates Section 365(b)(3). Specifically, the Ross Lease clearly states in § 15.3(a), that Ross, as tenant:

> Subject to Section 15.3(b) below respecting Existing Leases, without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the sale of apparel (except for discount department stores in excess of eighty-five thousand (85,000) square feet of Leasable Floor Area), or (c) use its premises for the sale of whole bean and ground coffee (other than Tenant, a supermarket, grocery store, or local bakery, or by Dunkin' Donuts, Caribou Coffee, Peets, Indigo, or other national or regional coffee retailer or coffee shop with up to (but not more than) 500 stores. For purposes of this Section 15.3 "Off Price Sale" shall mean the retail sale of merchandise on an every day basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from the retailer's every day price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, A.J. Wright, Fallas Paredes, Nordstrom Rach, Goody's, Factory 2U, **Burlington Coat**, Setinmart, Filene's Basement Goodmans and Beall's Outlet)…

A copy of the Protection Provision in its entirety is attached hereto as Exhibit "C" (emphasis added).

27. Thus, the operation of a Burlington store within the shopping center would breach the exclusivity provision in the Ross Lease in violation of Section 365(b)(3)(C) of the Bankruptcy Code and the proposed assignment cannot be approved. *See In re Three A's Holdings*, LLC, 364 B.R. 550, 561 (Bankr. D. Del. 2007) ("Because the BDOA has standing to press its objection, and the Court having ruled that the proposed assumption and assignment would violate the use restrictions contained in the CC & Rs, the request of the Debtors and the Designation Rights

8

7403991

Purchaser for authority to assume and assign the Lease to Walgreens will be denied.").

28. More importantly, in the event that the exclusivity provision is breached, Ross may exercise remedies under the Ross Lease that will cause Landlord significant harm. Specifically, Ross may withhold the lesser of Minimum Rent (*see* Ross Lease §1.6) or 2% of Ross's Gross Sales (as defined in the Ross Lease) during the preceding month. *See* Ross Lease § 15.3(a). Notably, Ross has already communicated with Landlord that it intends to explore its legal remedies if Debtors' assignment of the Lease to Burlington is successful. Thus, Landlord is at risk of significant harm in the event that the Court approves the assignment of the Lease to Burlington.[3]

**D.     The Proposed Assignment will Disrupt the Tenant Mix and Balance**

29. Section 365(b)(3)(D) of the Bankruptcy Code states that a shopping center lease cannot be assigned if such assignment would "disrupt any tenant mix or balance in such shopping center."[4] 11 U.S.C. § 365(b)(3)(D); *see also In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 307 (Bankr. S.D.N.Y. 1983) (applying Section 365(b)(3)(D) to reject the proposed assignment because it would cause substantial disruption to tenant mix and balance); *In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991) (rejecting assignment of the lease because of disruption of tenant mix and balance). Thus, by enacting Section 365(b)(3)(D) of the Bankruptcy Code, Congress intended for the courts to be especially solicitous in the shopping center context in ensuring that tenant mix and balance are not disrupted by any potential lease assignments, and to protect landlords and other shopping mall tenants from the damage caused by bankrupt tenants. *In re Federated Dep't Stores, Inc.*, 135 B.R. 941, 945 (Bankr. S.D. Ohio 1991); *see also Rockland*

---

[3] In the event Ross does pursue legal action against Landlord, it appears section 48 of the Lease is clear that BBB or Burlington would be liable for any attorneys' fees related to that action. *See* Lease § 48.

[4] Tenant mix, as used in section 365(b)(3)(D) of the Bankruptcy Code, relates to "the inclusion or exclusion of a store in the array or mix of mall stores," whereas tenant balance relates to "the location and relationship of tenants in the mix of mall stores." *See In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991).

7403991

*Center Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.)*, 34 B.R. 299, 303 (Bankr. S.D.N.Y. 1983) ("a good tenant mix in a shopping center benefits the landlord and the tenants as well").

30. Section 365(b)(3)(D) of the Bankruptcy Code favors minimizing disruption to carefully planned tenant mixes in shopping centers. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299 (Bankr. S.D.N.Y. 1983). The Third Circuit, in *Joshua Slocum*, carefully noted that a bankruptcy court must be sensitive to the non-debtor party and the underlying tenet that requires that the non-debtor receive the full benefit of its bargain. 922 F.2d at 1089-90.

31. The operation of a second retailer selling primarily "off price sale" goods, *i.e.*, Burlington, within the shopping center, rather than a store that does not conflict with the primary use of any existing tenants, will disrupt the carefully planned tenant mix and balance currently in place at the shopping center. Accordingly, the Court should not permit the Debtor to assign the Lease to Burlington.

E. **Additional Security for Performance of Lease Obligations.**

32. Section 365(l) of the Bankruptcy Code provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

33. In the ordinary course of their business, the Landlord requires security in the form of deposits, personal guaranties or letters of credit when leasing to certain companies based on their financial situation, corporate structure or balance sheet. In connection with the proposed assumption and assignment of the Lease, the Landlord would demand such security in one of the

forms required by Section 365(l) of the Bankruptcy Code.

## CONCLUSION

34. In sum, the Debtors cannot provide Landlord with adequate assurance as a matter of law. As such, the Court must decline to approve the assumption and assignment of the Lease to the Burlington.

35. While the Lease cannot be assigned to Burlington for the reasons set forth above, it is possible that the Debtors could find a replacement assignee that would not violate the terms of the Ross Lease or Lease with other tenant(s) in the Leased Property.

## RESERVATION OF RIGHTS

Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by Debtors or the proposed assignee or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

**WHEREFORE**, the Landlord respectfully requests that the Court enter an order denying the proposed assignment of the Lease to Burlington, and provide Landlord with any other relief the Court deems just and proper.

Dated: July 13, 2023          **PORZIO, BROMBERG & NEWMAN, P.C.**

By   */s/ John S. Mairo*
John S. Mairo, Esq.
JSMairo@pbnlaw.com
Dean M. Oswald, Esq.
DMOswald@pbnlaw.com
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
-and-
1675 Broadway, Suite 1810
New York, New York 10019
(212) 265-6888

11

7403991

*Counsel for DPEG Fountains, LP*

12

7403991

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2023, I caused a true and correct copy of the foregoing document to be served by electronic means through the CM/ECF system to all registered participants in this case and by e-mail on the parties identified on the Service List.

                                              /s/     John S. Mairo
                                                       John S. Mairo

7403991

**Counsel to the Debtors**

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Joshua A. Sussberg, P.C. Emily E. Geier P.C.,
Derek I. Hunter and Ross J. Fiedler

**Co-Counsel to the Debtors**

Cole Schotz P.C.
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Attn: Michael D. Sirota, Warren A. Usatine and
Felice R. Yudkin

**Counsel to the Committee**

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Attn: Robert J. Feinstein, Bradford J. Sandler
Paul J. Labov, Colin R. Robinson

**Counsel to the DIP Agent**

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attn: David M. Hillman and Megan R. Volin

**Office of the United States Trustee**
**For Region 3, District of New Jersey**

Office of the United States Trustee
Andrew R.Vara, U.S. Trustee, Regions 3 & 9
Attn: Fran B. Steele, Esq. and Alexandria Nikolinos

7403991