**EXHIBIT "C"**

name, and at the expense of Landlord (if the court determines there was a breach).

SECTION 24.    **RIGHT TO MORTGAGE AND NON-DISTURBANCE**. Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any vendor's lien, mortgage or deed of trust now or hereafter affecting Landlord's interest in the Premises, as well as to any present or future ground or underlying leases (each of which lease, together with the said vendor's lien, mortgage or deed of trust is hereinafter referred to as a "lien") involving all or any part of the Shopping Center; provided, however:   (i) no default by Landlord under any such lien shall affect Tenant's rights under this Lease so long as Tenant is not in default of such obligations beyond the applicable notice and grace periods provided herein; (ii) Tenant will not be named as a party in any foreclosure or other proceedings with respect to any such lien; (iii) the holder of any such lien agrees that the insurance proceeds resulting from any fire or other casualty and the proceeds payable from any taking by eminent domain will be made available for restoration of the Premises and the Shopping Center to the extent provided in this Lease; (iv) Landlord and Tenant shall have the right to execute any amendment to this Lease which is specifically required hereunder and the holder of any such lien shall recognize and be bound thereto; and (v) the holder of any such lien will execute a non-disturbance agreement in a form reasonably satisfactory to Tenant which includes, _inter alia_, the provisions described in (i), (ii), (iii) and (iv) of this Section 24.

SECTION 25.    **TENANT ASSIGNMENT AND SUBLETTING**.

(a)  Tenant shall have the right from time to time (i) without the consent of Landlord, to concession or license a portion or portions of the Premises, but not the whole of the Premises, provided and on the condition that, such licensing or concessioning shall not include the physical demising of separate space within the Premises to such licensee or concessionaire, it being understood and agreed that the portion of the Premises so licensed or concessioned shall appear to be an integrated part of the

business being conducted in the Premises, (ii) without the consent of Landlord, to sublet a portion or portions of the Premises, provided that the sublet premises is not greater than approximately ten thousand (10,000) square feet of Floor Area, and (iii) with the consent of Landlord [which consent, provided Tenant has complied with the provisions of Section 11.(e) with respect thereto, shall not be unreasonably withheld] to sublet more than ten thousand (10,000) square feet of the Premises, but not the whole of the Premises. No such subletting, licensing or concessioning shall release Tenant from any of its obligations hereunder and all provisions of this Lease [including, without limitation, the provisions of Section 7.(a) above] shall remain in full force and effect.

(b) Except as set forth in subsections 25.(a) and 25.(c), in the event Tenant proposes to assign this Lease or sublet the whole of the Premises, it shall first give notice thereof (hereinafter called the "Assignment/Subletting Notice") to Landlord, which notice shall specify the name and address of the proposed assignee or sublessee and the entire terms of the assignment or subletting. Within thirty (30) days after receipt of an Assignment/Subletting Notice from Tenant, Landlord may elect by notice (hereinafter called the "Termination Notice") in writing to Tenant to terminate this Lease and recapture the Premises in which event this Lease shall automatically terminate on the ninetieth (90th) day (hereinafter called the "Termination Date") following Tenant's receipt of the Termination Notice with the same force and effect as if said Termination Date had been designated as the Expiration Date of this Lease and Landlord and Tenant shall upon such Termination Date be released from any and all liabilities thereafter accruing hereunder. All Fixed Rent and Additional Rent payable by Tenant hereunder shall be apportioned as of the Termination Date and Tenant shall promptly pay to Landlord any amounts so determined to be due and owing by Tenant to Landlord, and conversely Landlord shall promptly reimburse Tenant for any amounts prepaid by Tenant for periods subsequent to the Termination Date. Notwithstanding any Termination Notice given to Tenant by

Landlord within the aforesaid thirty (30) day period, Tenant shall have the right, within ten (10) days thereafter, to give Landlord notice (hereinafter called the "Recision Notice") of its recision of the Assignment/Subletting Notice and upon the receipt of the Recision Notice the Termination Notice previously given by Landlord shall be deemed null and void and Tenant shall not assign this Lease or sublet the whole of the Premises as proposed in its Assignment/Subletting Notice.  If Landlord does not exercise its right of termination within the aforesaid thirty (30) day period, Landlord shall conclusively be deemed to have consented to the proposed assignment or subletting, as the case may be, and Tenant may assign this Lease or sublet the whole of the Premises pursuant to the Assignment/Subletting Notice.

(c)    Notwithstanding the provisions of subsections 25.(a) and 25.(b) above, Tenant shall have the unrestricted right, from time to time without the consent of Landlord, to (i) assign and/or sublet the whole of the Premises to any entity controlling, controlled by, or under common control with Tenant; (ii) assign this Lease to any company which purchases all or substantially all of the assets of Tenant's parent company; (iii) assign this Lease to any company which purchases Tenant's interest in the Premises (provided that such company has also purchased the interest of all tenants in all other Bed Bath & Beyond stores located in the greater Houston area substantially simultaneously with a purchase of Tenant's interest in the Premises); and (iv) assign this Lease in conjunction with any merger, consolidation or public offering of stock involving Tenant or any entity controlling, controlled by, or under common control with Tenant.

(d)    Unless otherwise agreed to in writing by Landlord, no assignment, subletting, licensing or concessioning by Tenant shall reduce, diminish, or otherwise affect the liability of Tenant hereunder.

(e)    All assignees and sublessees shall be permitted to use the Premises (or the applicable portion thereof) for any retail purpose not specifically prohibited by the provisions of Sections 7.(c) or 23.(d) of this Lease.  Landlord hereby acknowledges that

any sublessee of all or any portion of the Premises shall, subject to Tenant's prior written approval, be entitled to all of the rights and benefits available to Tenant pursuant to the terms of this Section 25.

(f)   In addition to Tenant's other rights set forth in this Section 25, a collateral assignment of Tenant's interest in this Lease by Tenant to one or more Institutional Lenders (as hereinafter defined), as collateral security for an indebtedness or other obligation of Tenant, the Parent Corporation or any affiliated company, shall be permitted and Landlord shall execute all documentation reasonably requested by Tenant or any such Institutional Lender (which shall be in form and content reasonably acceptable to Landlord) in connection therewith.   As used herein, "Institutional Lender" shall mean a state or federally regulated bank, savings and loan association, insurance company, pension fund, credit union, REIT, a state or federally regulated lender or any other nationally or regionally recognized lender.

(g)   Notwithstanding anything contained herein to the contrary, Tenant shall have the right, without Landlord's consent, to grant to Bed Bath & Beyond Inc. (herein called the "Parent Corporation") or to any entity controlling, controlled by or under common control with Tenant or the Parent Corporation a license to operate all of Tenant's business operations at the Premises, without the Parent Corporation having assumed any liability for the performance of Tenant's obligations under this Lease.

(h)   If Tenant assigns Tenant's interest in this Lease and so notifies Landlord, then Landlord, when giving notice to said assignee or any future assignee in respect of any default, shall also give a copy of such notice to the original Tenant named herein (hereinafter referred to as "Original Tenant"), and no notice of default shall be effective until a copy thereof is so given to Original Tenant.   Original Tenant shall have the same period after receipt of such notice to cure such default as is given to Tenant therefor under this Lease.   If this Lease terminates because of a default of such assignee, Landlord shall promptly give to Original Tenant notice thereof; and Original Tenant shall have the option,

exercisable by the giving of notice by Original Tenant to Landlord within ten (10) days after receipt by Original Tenant of Landlord's notice, to cure any such default [but only if such default is of a monetary nature or is otherwise reasonably susceptible of cure by Original Tenant, and, if such is not the case, Original Tenant shall not be obligated to cure such default as a condition to the exercise by Original Tenant of Original Tenant's rights set forth in this subsection 25.(h)] and become Tenant under a new lease for the remainder of the Term of this Lease (including any Renewal Periods) upon all of the terms and conditions as then remain under this Lease, and such new lease shall commence on the date of termination of this Lease, except that if Landlord delivers to Original Tenant, together with Landlord's notice, a release as to all future liability under this Lease, Original Tenant shall not have the foregoing option.

(i)    In the event Tenant subleases the entire Premises for a term of at least five (5) years to a person or entity which has (or to a person or entity whose obligations under such sublease are guaranteed by a person or entity which has), as of the effective date of such sublease, a net worth of at least Five Million ($5,000,000.00) Dollars (with the instrument of sublease in such a case being hereinafter referred to as ·a "Qualified Sublease", and with the subtenant in such a case hereinafter referred to as the "Qualified Subtenant") then, notwithstanding any other provisions of this Lease:

(i)    Upon Tenant's request, Landlord agrees that it shall execute a Non-Disturbance Agreement (hereinafter, an "NDA") among Landlord, Tenant and Qualified Subtenant pursuant to which Landlord agrees (A) when giving notice to Tenant in respect of any default, to also give a copy of such notice to Qualified Subtenant, and no notice of default shall be effective until a copy thereof is so given to Qualified Subtenant, and (B) in the event this Lease is terminated because of such Tenant default, Qualified Subtenant shall have the option, exercisable by the giving of notice by Qualified Subtenant to Landlord within ten (10) days after receipt by Qualified Subtenant of notice from Landlord that the Lease has

been terminated, to cure any such default [but only if such default is of a monetary nature or is otherwise reasonably susceptible of cure by Qualified Subtenant, and, if such is not the case, Qualified Subtenant shall have no obligation to cure such default as a condition to the exercise by Qualified Subtenant of any of Qualified Subtenant's rights set forth in this Subsection 25.(i)], and become Tenant under a new lease for the remainder of the term of Qualified Sublease (including any Renewal Periods) upon all of the same terms and conditions as then remain under this Lease (and the Rent payable by Qualified Subtenant under the terms of such direct lease shall be the Rent payable by Tenant to Landlord under the terms of this Lease); and

(ii) From and after the effective date of the Qualified Sublease, all non-disturbance agreements obtained by Landlord in accordance with the provisions of Section 24 above shall afford Qualified Subtenant the same rights and protection as are afforded to Tenant thereunder.

SECTION 26.   NOTICE.   Whenever a notice is required or permitted in this Lease, it shall mean a written notice (i) sent by certified mail, return receipt requested, addressed to Landlord at Landlord's Mailing Address with a copy to Stephen M. Block, Esq., c/o Brown, Parker & Leahy, L.L.P.; 1200 Smith Street, Suite 3600; Houston, Texas 77002 or to Tenant at Tenant's Mailing Address with copies to (A) Allan N. Rauch, Esq., c/o Bed Bath & Beyond Inc., 715 Morris Avenue, Springfield, New Jersey 07081, and (B) Edward M. Schotz, Esq., c/o Cole, Schotz, Meisel, Forman & Leonard, P.A., Court Plaza North, 25 Main Street, P.O. Box 800, Hackensack, New Jersey 07602-0800, or to such other person or other address as may, from time to time, be specified by either party in a written notice to the other party; or (ii) a written notice delivered to the addresses stated above by Fedex or other recognized overnight delivery service with charges prepaid and which obtains a receipt for any such delivery.   All notices given in accordance with the provisions of this Section shall be effective upon receipt at the address of the addressee.