**EXHIBIT "C"**

willful acts or omissions of Landlord or Landlord's employees, agents, or contractors, except to the extent Tenant has waived a claim against Landlord pursuant to Section 9.4 hereof.

**14.2. Landlord Indemnity.**

Landlord agrees to hold Tenant harmless from and indemnify and defend Tenant against any and all injury, loss, damage, liability (or any claims related to the foregoing), costs or expenses (including, without limitation, attorneys' fees, reasonable investigation and discovery costs), of whatever nature, to any person or property caused or claimed to be caused by or resulting from: (1) any occurrence within the Common Area, or any portion of the Shopping Center, on and after the Effective Date of this Lease, provided nothing contained herein shall require Landlord to indemnify Tenant against matters resulting from the negligence or willful acts or omissions of Tenant or Tenant's employees, agents or contractors, except to the extent Landlord has waived a claim against Tenant pursuant to Section 9.4 hereof, and (2) the Mechanic's Liens described in Section 23.1.2 and more specifically identified on **Exhibit I**.

## 15. USE

**15.1. Tenant's Business.**

Tenant's intended use of the Store shall be as a full line department store including, at its option, the sale of soft goods merchandise, including men's, women's and children's apparel, shoes, accessories, such as jewelry and cosmetics, health and beauty aids and related sundries, domestics and linens, housewares, art, pictures, posters, frames, artificial flora, office supplies, sporting goods, furniture and lamps, window and floor coverings, electronics, prerecorded audio and video merchandise and electronic games software and technological evolutions thereof, books, toys, party goods, pet supplies, luggage, packaged foods, including whole bean and ground coffee, and such other items as are sold in Tenant's similarly merchandised stores.

**15.2. Operation.**

Notwithstanding any provision in this Lease to the contrary, it is expressly acknowledged by Landlord that this Lease contains no express or implied covenant for Tenant to conduct business in the Store, continuously or otherwise, or (when conducting business in the Store) to operate during any particular hours or to conduct its business in any particular manner. Tenant has the sole right in its unrestricted discretion to decide whether or not to operate in the Store and in what manner to conduct operations, if any, and if the Store has more than one (1) customer door ("Excess Customer Doors"), Tenant may, at its option, close any such Excess Customer Doors and operate with only one (1) customer door.

**15.3. Protection.**

(a) Subject to Section 15.3(b) below respecting Existing Leases, without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to

Store No. 1610, "Stafford"
Fountains on the Lake
Stafford, TX
9320.1610.4

- 54 -

11/01/12
FINAL

(a) use its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the sale of apparel (except for discount department stores in excess of eighty-five thousand (85,000) square feet of Leasable Floor Area), or (c) use its premises for the sale of whole bean and ground coffee (other than Tenant, a supermarket, grocery store, or local bakery, or by Dunkin' Donuts, Caribou Coffee, Peets, Indigo, or other national or regional coffee retailer or coffee shop with up to (but not more than) 500 stores. For purposes of this Section 15.3, "Off Price Sale" shall mean the retail sale of merchandise on an every day basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's every day price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, A.J. Wright, Fallas Paredes, Nordstrom Rack, Goody's, Factory 2U, Burlington Coat, Steinmart, Filene's Basement, Gordmans and Beall's Outlet.) If any of the foregoing provisions is violated ("Protection Violation"), commencing on the first day of the Protection Violation and continuing throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at law or in equity, including injunctive relief, shall have the ongoing right, exercisable by written notice to Landlord, either to terminate this Lease or to pay Substitute Rent within fifteen (15) days after the close of each calendar month. The parties agree that the monetary damages to be suffered by Tenant as a result of a breach by Landlord (or Landlord's tenant(s)) of the provisions of this Section 15.3 are difficult to ascertain and that the payment of Substitute Rent, after negotiation, constitutes the best estimate by the parties of the amount of such damage. If Tenant elects to terminate this Lease as provided in this Section 15.3, this Lease shall terminate on a date indicated by Tenant in its notice of termination, which in no event shall be sooner than thirty (30) nor later than ninety (90) days after the date of Tenant's notice of termination. In the event of termination, Landlord shall be obligated to pay Tenant for the Unamortized Cost of Tenant's leasehold improvements in the Store, which costs Tenant agrees to specify in its notice of termination. If Tenant elects to pay Substitute Rent, (a) such payment of Substitute Rent shall be retroactive to the date any such Protection Violation commenced, and Tenant shall deduct any overpayments of Rent from Rent coming due under this Lease, and (b) at such time as all such Protection Violations cease (the "Cure Date"), Rent shall resume at the rate which would have pertained at the Cure Date had the Protection Violation not occurred. The provisions of this Section 15.3 shall apply to any subsequent Protection Violation.

(b) <u>Exceptions</u>. Notwithstanding the provisions of Section 15.3(a) above, the following exceptions shall be applicable:

(i) <u>Existing Leases</u>. The tenants and occupants operating in the Shopping Center as of the Effective Date under the Existing Leases listed on **Exhibit K** shall not be subject to the use restriction(s) set forth in Section 15.3(a) above. However, if Landlord has the right of consent to any change in use of the premises occupied by a tenant or occupant operating under an Existing Lease, Landlord shall not consent to any use in such premises in violation of the use restriction(s) set forth in Section 15.3(a) above. In the event of any violation of this provision, Tenant shall have all of the rights and remedies set forth in Section 15.3(a) in addition to any other rights, at law or in equity or under this Lease, for breach of the provisions of this Lease.

Store No. 1610, "Stafford"
Fountains on the Lake
Stafford, TX
9320.1610.4

- 55 -

11/01/12
FINAL