```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF NEW JERSEY


IN RE:                         .    Case No. 23-13359-VFP
                               .
BED BATH & BEYOND, INC.,       .    M.L.K. Federal Building
et al.,                        .    50 Walnut Street, 3rd Floor
                               .    Newark, NJ 07102
            Debtors.           .
                               .    July 11, 2023
. . . . . . . . . . . . . .    .    2:47 p.m.


         TRANSCRIPT OF DEBTORS' MOTIONS RE: SALE HEARING
             WITH RESPECT TO THE BABY IP ASSETS AND
                   MOTION TO ENLARGE TIME [786]
               BEFORE HONORABLE VINCENT F. PAPALIA
                UNITED STATES BANKRUPTCY COURT JUDGE



APPEARANCES:

For the Debtors:           Kirkland & Ellis LLP
                           By:  NOAH S. SOSNICK, ESQ.
                           601 Lexington Avenue
                           New York, NY 10022




For The Committee of       Pachulski Stang Ziehl & Jones
Unsecured Creditors:       By:  COLIN R. ROBINSON, ESQ.
                           919 North Market Street, 17th Floor
                           Wilmington, DE  19801




Audio Operator:            Mariela Primo

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

```
APPEARANCES (Cont'd):


For Dream On Me, Inc.:    Klestadt Winters Jureller
                            Southard & Stevens, LLP
                          By:  BRENDAN SCOTT, ESQ.
                          200 West 41st Street, 17th Floor
                          New York, NY  10036

For Comenity Capital      Burr & Forman, LLP
Bank:                     By:  JAMES H. HAITHCOCK, III
                          420 N. 20th Street
                          Birmingham, AL 35203

                    - - -
```

1          (At 2:47 p.m.)

2          THE COURT: Okay. Good afternoon. It is Tuesday, July 11th, 2023. This is the United States Bankruptcy Court for the District of New Jersey, and we are here in the case of Bed Bath & Beyond, Inc., 23-13359.

6          We have various matters on today's agenda. And why don't you enter your appearance on the record, sir, and we'll get started.

9          MR. SOSNICK: Right. Good afternoon, Your Honor. For the record Noah Sosnick from Kirkland & Ellis on behalf of the debtors.

12          THE COURT: Good afternoon.

13          And I guess why don't you just go ahead, and if anyone wants to comment or chime in, they'll enter their appearance. Okay?

16          MR. SOSNICK: Great. Thank you, Your Honor.

17          Your Honor, I will be taking us through today's brief agenda, which was filed yesterday at Docket No. 1277.

19          As Your Honor will note, there are only two matters going forward today. The first is the debtors' proposed sale of the intellectual property assets of the buybuy BABY business, the Dream On Me, Inc., and second is the removable extension motion. The other matters have been pushed to the July 18th hearing or have otherwise been withdrawn.

25          So starting with the first item on today's agenda,

1  the proposed sale of the buybuy BABY assets, the debtors are
2  pleased to report that, as was the case for the Bed Bath &
3  Beyond IP, the debtors have found a purchaser for the buybuy
4  BABY IPS who will keep the name alive.
5           Before I proceed further, Your Honor, the debtors
6  filed a declaration from their investment banker, Christian
7  Temke of Lazard at Docket No. 1274.  And I'd like to move Mr.
8  Temke's declaration into evidence.
9           THE COURT:  All right.  That is the declaration of
10 Christian Temke in support of the sale order being moved into
11 evidence.
12          Does anyone object or wish to cross-examine?
13          (No response.)
14          THE COURT:  Having heard no response, I will admit
15 that into evidence.
16          MR. SOSNICK:  Thank you, Your Honor.
17          As Your Honor will recall, the debtors filed the
18 bidding procedures motion on the first day of these cases and
19 had a bidding procedures order entered soon thereafter, with
20 the goal of continuing the extensive free petition marketing
21 process that the debtors have conducted.
22          And as my colleague, Mr. Fiedler, explained at the
23 prior sale hearing, the debtors have, in consultation with the
24 consultation parties, amended and extended the deadlines of the
25 marketing process on numerous occasions, all in an effort to

1  maximize the value of any potential sale transaction.
2          As the marketing process unfolded, it became clear
3  that different parties were interested in the Bed Bath & Beyond
4  assets and the buybuy BABY assets.  You know, there were
5  different parties who were interested in each package.
6          And within that latter category of the buybuy BABY
7  assets, certain parties were interested in a going concern
8  transaction, while others were exclusively interested in
9  acquiring the IP assets.
10         Ultimately, as the buybuy BABY auction approached,
11 the debtors received a number of qualified bids for parties
12 interested in acquiring the IP assets.  And certain parties had
13 also expressed some degree of interest in a going concern
14 transaction, but the debtors did not receive any qualified bids
15 on a going concern transaction ahead of the scheduled auction.
16         As a result, the debtors, in consultation with the
17 consultation parties, decided to bifurcate the auctions.  So
18 the auction for the IP assets was held on June 28th, and a
19 going concern auction was scheduled for June 29th.
20         The IP auction on the 28th was very competitive and
21 successful.  Ultimately, the debtors selected Dream On Me,
22 Inc., as the initial winning bidder, at a bid of $15.5 million
23 and Everyday Health Media was selected as the backup bidder.
24         And during the auction and in the notice filed soon
25 thereafter, the debtors made it clear that Dream On Me's

6

winning bid would be subject to an otherwise higher or better offer in connection with the going concern option scheduled for the following day.

After the IP auction ended, to give parties another opportunity to submit actionable, qualified bids for a going concern transaction, the debtors moved the going concern auction back by another week to July 7th.  However, and crucially, no party submitted a qualified bid for a going concern transaction.  As such, the debtors and the consultation parties determined to cancel the going concern auction and proceed with the proposed transaction before you today.

And so, Your Honor, while it is unfortunate that we were unable to secure a sale of buybuy BABY as a going concern, we are here today seeking approval of the sale of the IP assets.  The sale maximizes value for the debtors' estates.  It is supported by all parties in interest and will allow the buybuy BABY name to continue.  The process which led to the sale was conducted in good faith, from arms' length, and was well-tailored to maximize value.

I would also like to quickly add, Your Honor, like at the last sale hearing, certain contract counter parties and landlords filed objections or limited objections related to the amounts listed as potential cure obligations on the notice filed at Docket No. 714.  And as was the case with the overstock sale hearing, the debtors are not assuming or

1 assigning any contracts or leases in connection with the Dream
2 On Me transaction today.
3     Now, pursuant to the terms of the APA, there is a 45-
4 day window in which the parties may agree to a list of
5 contracts that may be assumed or assigned to the purchaser.
6 And to the extent that the parties do decide to assume and
7 assign some contracts, the debtors will file a notice of those
8 contracts and will send another objection deadline for those
9 cure amounts.
10     But nothing is being assumed and assigned today, and
11 so for that reason, we are not going to proceed on any cure
12 objections today.
13     THE COURT: Okay. So I just was wondering how that
14 all fits in with the transfer contracts under the -- under the
15 purchase agreement. There's a number of -- is that what you're
16 referring to?
17     MR. SOSNICK: So, my understanding, Your Honor, is
18 that that transferred contracts provision in the contract is
19 there to accommodate any contracts that will be assumed and
20 assigned during that period.
21     THE COURT: During this 45-day period?
22     MR. SOSNICK: Yeah, that's correct, although counsel
23 for the purchaser is here and can correct me if that's
24 incorrect.
25     MR. SCOTT: Your Honor, Brendan Scott, Klestadt

1  Winters Jureller Southard & Stevens, on behalf of Dream.
2         That's my understanding, there are -- currently no
3  contracts have been selected to be transferred contracts, but
4  we do have the 45-day period to complete diligence and select
5  those if we wish to do so.
6         THE COURT: Okay. All right. That said transferred,
7  so I was thinking at least something might have been
8  transferred, but it's not the case, at least as of the moment.
9  Okay.
10        MR. SOSNICK: One final point, Your Honor. Ahead of
11 the hearing, we heard from counsel to Chubb Insurance, who had
12 requested the inclusion of the language that we added at
13 paragraph 30 of the sale order.
14        We understand there was a small scrivener's error in
15 the first sentence of that paragraph. And so I'm happy to
16 point out where that was, if you'd like.
17        THE COURT: One second.
18        MR. SOSNICK: Sure.
19        THE COURT: Okay.
20        MR. SOSNICK: So, Your Honor, in the first sentence
21 of paragraph 30, which begins, "Notwithstanding anything to the
22 contrary in the foregoing," those three words, "in the
23 foregoing," were included in error.
24        It doesn't change the meaning of the paragraph in any
25 way, but after discussions with Chubb, we decided that to avoid

any potential doubt, we would submit a revised order to chambers during or after this hearing reflecting that one change. So those three words will be removed.

THE COURT: So, in other words, it really should read, "Notwithstanding anything to the contrary"?

MR. SOSNICK: Yeah, or I guess -- right. It should be "the foregoing or" is removed. So it's "Notwithstanding anything to the contrary in the motion, the asset purchase agreement," and so on and so forth.

THE COURT: Okay. All right. So does anyone -- you're saying that it just doesn't meaning anything?

MR. SOSNICK: It's surplusage of the words "the sale order" later in the sentence. But to avoid any potential issue, we decided with Chubb that we would submit a revised form of order.

THE COURT: Well, I do have to say that I've always felt that if words have any meaning, they should be either in there or not in there. And, you know, if they don't have any meaning, you know, everyone here today understands that, but if somebody is looking at it a year from now and it's not the same people, then they might try to say "in the foregoing" means something else.

I think it's a very limited possibility, but --

MR. SOSNICK: I agree.

THE COURT: -- since you're pointing it out and

1  that's the way the parties understand it, I think it should
2  reflect what the parties understand and agree to.
3              MR. SOSNICK:  That's right.  And for that reason
4  we'll file a revised.
5              THE COURT:  All right.
6              MR. SOSNICK:  So with all that said, Your Honor,
7  unless you have any questions, we would respectfully request
8  entry of the sale order.
9              THE COURT:  Well, the Comenity filed a pretty
10 extensive objection in it, and it looks like you dealt with it
11 in paragraphs 28 and 29, and they -- I guess the Burr & Forman
12 firm and the -- they're on the Zoom, I guess; is that correct?
13             MR. HAITHCOCK:  Yes, Your Honor.  This is Jay
14 Haithcock with Burr & Forman on behalf of Comenity Capital
15 Bank.  Thank you.
16             THE COURT:  Okay.  Good afternoon.
17             So those are the -- those modifications to the -- you
18 never addressed Comenity's objections.
19             MR. HAITHCOCK:  Yes, Your Honor.  They addressed them
20 in full and we're happy to orally withdraw the objections we
21 made with the order that was filed on the docket.
22             THE COURT:  Okay.  You anticipated what I was going
23 to ask you, because I just -- I didn't see that, and when I was
24 preparing, I read it, and I thought I might have to deal with
25 it, but usually in these proceedings -- and thankfully in many

1  respects, the parties agree to things, and this is another such
2  occasion, and I'm pleased that you were able to agree.  It
3  certainly looks like a reasonable and appropriate resolution of
4  those issues to me.
5           MR. HAITHCOCK:  Thank you, Your Honor.
6           THE COURT:  Thank you.
7           THE COURT:  Well, I will say -- I can't let this pass
8  without saying that I share the disappointment in the lack of
9  bids for the going concern entity of buybuy BABY.  It's a
10 shame.  I guess both parts are now not going forward.  And that
11 is disappointing.  I had higher hopes going in, but sometimes
12 those hopes are not realized.
13          And so if I may ask, then, because I think this is an
14 appropriate time to ask where are we headed now and what are
15 the next steps, the plan and disclosure statement, or what are
16 the -- what is left to be sold?
17          I think the going out of business sales are winding
18 down.  If you could just give me, if you're prepared to, give
19 me a background on that and fill in some of the blanks.
20          MR. SOSNICK:  Sure.  So, Your Honor, the debtors are
21 currently engaging in negotiations with Sixth Street and the
22 UCC on the terms of a plan.  Those negotiations have been
23 productive.  We hope to have a plan and disclosure statement on
24 file in the coming days.
25          So, you know, notwithstanding that those sales did

1  not maybe -- the going concern sales didn't come to fruition,
2  the debtors still have a pathway to a successful exit from
3  these Chapter 11 cases.
4         And so, you know, the debtors will continue to
5  monetize the assets they have.  The lease sale process remains
6  ongoing.  As you mentioned, going out of business sales will
7  continue until the end of July.
8         And so, you know, while the debtors share your
9  disappointment, there is a path forward, and we fully intend to
10 realize that path.
11        THE COURT:  Okay.  Does anyone wish to be heard on
12 that?
13        MR. ROBINSON:  Your Honor, good afternoon, Colin
14 Robinson, Pachulski Stang Ziehl & Jones, on behalf of the
15 Official Committee of Unsecured Creditors.  Nice to see you
16 again in person, Your Honor.
17        THE COURT:  Good afternoon.  And same here.
18        MR. ROBINSON:  Your Honor, I'll start with the sale
19 of the buybuy BABY IP.
20        Your Honor, as a constitution party, the Committee
21 was engaged in what was a ver robust auction process.  And
22 while we were ultimately, like you and everyone else, a little
23 disappointed in the value, happy it came to a successful
24 conclusion.
25        I share your personal thoughts about the buybuy BABY.

1  I used to truck across the Ben Franklin Bridge to the location
2  in Cherry Hill for my three kids many moons ago, so sorry there
3  won't be a going concern for that.
4              On the process forward, Your Honor, we are engaged in
5  the plan process.  There will be a lot of work to do still
6  there, as you may suspect, and even the plan you see filed may
7  have some changes after it's filed, so -- but we'll continue to
8  work constructively with the debtor and Sixth Street as we move
9  forward.
10             THE COURT:  Well, if past is prologue, I'm sure
11 that's the way it's going to go.  And I know everybody will
12 work hard and in good faith to get the best possible result.  I
13 appreciate that.
14             MR. ROBINSON:  Thank you, Your Honor.
15             THE COURT:  Thank you.
16             So anyone else wish to be heard?
17             (No response)
18             THE COURT:  Okay.  Well, before the Court is the
19 motion by the debtors or application by the debtors to approve
20 the sale of the buybuy BABY IP assets, as all those terms are
21 defined and further specified in the motion and, more
22 importantly, the order approving the sale, which was filed
23 yesterday, the latest form of order at Docket 1275.
24             I have reviewed the order.  And really, in this case,
25 where there has been an extensive auction process, sale process

14

1  conducted by some of the most experienced and well respected
2  professionals anywhere, and this is where we came out, I am
3  certain that this sale was conducted in good faith and achieved
4  the highest and best value in the circumstances, disappointing
5  as it may be in certain respects that there was ample notice,
6  either through the Court or through the public.  Everyone knew
7  that Bed Bath & Beyond and buybuy BABY and everything else
8  related to them were for sale and this is the end result of
9  that.
10          I think it satisfies all the criteria for a 363 sale,
11 including they have obviously the consent of the secured
12 parties and also, whether it's express or implied, the
13 Unsecured Creditors Committee.  No other objections filed, or
14 objections that were filed were resolved.
15          So I will approve the sale and wish you luck going
16 forward in the continuing efforts to maximize value and it
17 looks like try to conclude the case as quickly as possible.
18          MR. SOSNICK:  Thank you, Your Honor.
19          THE COURT:  Thank you.
20          MR. SOSNICK:  Your Honor, I will now turn to the
21 second and final item on today's agenda, which is the debtors'
22 removal extension motion --
23          THE COURT:  Right.
24          MR. SOSNICK:  -- which was filed at Docket No. 786.
25 The debtors seek entry of an order enlarging the time in which

15

1 the debtors may file notices of removal with respect to any
2 actions that are subject to removal under 28 U.S.C. 1452 and
3 Bankruptcy Rule 9027 by 120 days to November 21st, 2023.
4        The motion is unopposed, and the debtors have not
5 previously requested an extension of the deadline to file
6 notices for removal.
7        And so unless Your Honor has any questions, the
8 debtors respectfully request entry of the order attached to the
9 motion filed at Docket No. 786.
10        THE COURT:  I do have one question or comment, is
11 that, as we normally do, we look for the certificate of service
12 on this.  And, you know, for whatever reason, we weren't able
13 to find it.  And I don't know if that's because it's not
14 readily available from a search of what all the affidavits of
15 service that have been filed or it wasn't filed and needs to be
16 filed or what.
17        Are you familiar with that or --
18        MR. SOSNICK:  I'm not, admittedly.  Your Honor, my
19 understanding was that, you know, certificate of service was
20 filed.  To the extent it wasn't, we can -- you know, we're
21 happy to rectify that in any way that you propose.
22        THE COURT:  Right.  So here's what happens with that,
23 right, with the certificate of service.  A certificate of
24 service, right, obviously doesn't have to be filed
25 simultaneously with the service.

1            It could say, for example, on July 11th that on July
2   20th or July 22nd, Kroll served the removal motion, if that's
3   what they did.
4            MR. SOSNICK:  My understanding is that is what they
5   did.  And so, if I understand your comments, we can then file a
6   certificate of service saying that we at that time served the
7   motion in accordance with the terms thereof.
8            THE COURT:  All right.  And then I think in any
9   event, the motion was filed in time.  It certainly was filed in
10  time.  I think it's still in time.
11           MR. SOSNICK:  Yeah.
12           THE COURT:  So that's what you need.
13           MR. SOSNICK:  Yeah.
14           THE COURT:  But on these motions, I do -- and your
15  notice provision indicated you served all the other parties to
16  the actions that, in fac, you knew about and I really require
17  that, because sometimes don't do that, and that doesn't seem
18  fair to me when that's what's asked.
19           But they're still almost never opposed, and I always
20  grant them.  But I do want to see that people were served.
21           MR. SOSNICK:  Totally understood.  Totally
22  understood.
23           THE COURT:  That's a rather important aspect of what
24  we do here.  So that was my one -- otherwise, it's completely
25  fine and, you know, certainly the debtor has been -- and its

1  professionals have been very busy attending to a number of
2  tasks and removal -- an extension of the removal period would
3  be and is easily justified, so I have no problem with it.  I
4  just want to have notice.
5           MR. SOSNICK:  Understood, Your Honor.  And to the
6  extent that we haven't filed that, we will file it.
7           THE COURT:  Okay.  Great.  All right.  I think that
8  covers the matters on the agenda.
9           MR. SOSNICK:  That's all the debtors have for today.
10          THE COURT:  Anyone else have anything that they wish
11 to be heard on?
12                    (No response)
13          THE COURT:  All right.  Well, as has happened in the
14 past, you've made things easier on me than maybe I deserve, but
15 I'm glad to accept it, and I appreciate the parties' efforts to
16 get to all these resolutions with another hearing coming a week
17 today on other matters.  Okay.
18          So that's it.  Thanks very much.
19          MR. SOSNICK:  Thank you, Your Honor.
20          THE COURT:  Good luck going forward.  Thanks very
21 much.
22                    * * * * *
23
24
25

# **C E R T I F I C A T I O N**

      I, LORI KNOLLMEYER, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Lori Knollmeyer

LORI KNOLLMEYER

J&J COURT TRANSCRIBERS, INC.    DATE:  July 17, 2023