UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 23-13359-VFP |
| | . | |
| BED BATH & BEYOND, INC., | . | M.L.K. Federal Building |
| *et al.*, | . | 50 Walnut Street, 3rd Floor |
| | . | Newark, NJ 07102 |
| Debtors. | . | |
| | . | July 18, 2023 |
| . . . . . . . . . . . . | . | 3:00 p.m. |


TRANSCRIPT OF SALE HEARING WITH RESPECT TO PHASE I LEASES
BEFORE HONORABLE VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

| | |
|---|---|
| For the Debtors: | Kirkland & Ellis LLP |
| | By:  ROSS J. FIEDLER, ESQ. |
| | 601 Lexington Avenue |
| | New York, NY 10022 |
| | |
| | Cole Schotz, P.C. |
| | By: WARREN A. USATINE, ESQ. |
| |     DAVID M. BASS, ESQ. |
| | Court Plaza North, 25 Main Street |
| | Hackensack, New Jersey 07601 |
| | |
| For Various | Kelley Drye & Warren LLP |
| Landlords: | By:  ROBERT L. LeHANE, ESQ. |
| | 3 World Trade Center |
| | 175 Greenwich Street |
| | New York, NY 10007 |
| | |
| Audio Operator: | Mariela Primo |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

| For Michaels Stores,<br>Inc.: | Lowenstein Sandler, LLP<br>By:  PHILIP J. GROSS, ESQ.<br>One Lowenstein Drive<br>Roseland, New Jersey 07068 |
|---|---|
| For Rushmore Landing,<br>LLC: | Norris McLaughlin, P.A.<br>By:  BRUCE J. WISOTSKY, ESQ.<br>400 Crossing Boulevard, 8th Floor<br>Bridgewater, NJ 08807 |
| For DPEG Fountains, LP: | Porzio, Bromberg & Newman, P.C.<br>BY: DEAN M. OSWALD, ESQ.<br>1675 Broadway, Suite 1810<br>New York, NY 10019 |
| For Flexport, Inc.: | Cross & Simon, LLC<br>BY: KEVIN S. MANN, ESQ.<br>1105 North Market Street, Suite 901<br>Wilmington, DE 19801 |
| For DFW Lewisville<br>Partners, LP: | Porzio, Bromberg & Newman, P.C.<br>By: JOHN S. MAIRO, ESQ.<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, NJ 07962 |

APPEARANCES VIA ZOOM:

| For Michaels Stores,<br>Inc.: | White & Case, LLP<br>By:  SAMUEL P. HERSHEY, ESQ.<br>1221 Avenue of the Americas<br>New York, New York 10020 |
|---|---|
| For Rushmore Landing,<br>LLC: | Chamberlain Hrdlicka<br>By:  TARA LeDAY, ESQ.<br>      JARROD MARTIN, ESQ.<br>1200 Smith Street, Suite 1400<br>Houston, Texas 77002 |
| For Microelectronics: | Sills, Cummis & Gross, P.C.<br>By:  S. JASON TEELE, ESQ.<br>The Legal Center<br>One Riverfront Plaza<br>Newark, New Jersey 07102 |

APPEARANCES VIA ZOOM (Cont'd):

For BVCV Union Plaza          Bodner Law PLLC
LLC:                          By:  JOHN BODNER, ESQ.
                              55 Cherry Lane, Suite 101
                              Carle Place, New York 11514

For Panama City Beach         Law Office of Douglas T. Tabachnik,
Venture II, LLC:                P.C.
                              By: DOUGLAS T. TABACHNIK, Esq.
                              63 West Main Street, Suite C
                              Freehold, New Jersey 07728

For DC USA Operating          Law Offices of Lisa Solomon
Co:                           By: LISA SOLOMON, ESQ.
                              60 E 42nd St #4700
                              New York, NY 10165

For Consumer Centre           Kaplin Stewart Meloff Reiter & Stein
Paramount 1, LLC, et al:      By:  WILLIAM J. LAVANT, ESQ.
                              1800 Chapel Avenue, Suite 320
                              Cherry Hill, NJ 08002

For Almaden Plaza             Greenbaum Rowe Smith & Davis LLP
Shopping Center, Inc.,        By:  DAVID L. BRUCK & ESQ.
et al.,:                      PO Box 5600
                              Woodbridge, NJ 07095

- - -

4

1          (Proceedings commenced at 3:00 p.m.)

2          THE COURT:  Okay.  Good afternoon.  It is Tuesday,

3  July 18th, 2023.  This is the United States Bankruptcy Court

4  for the District of New Jersey, and we are here in the case of

5  Bed Bath & Beyond, Inc., *et al.*, 23-13359.  And I guess we're

6  ready to go.  I saw the notice of amended agenda that was filed

7  late last night along with notice that the contested assumption

8  and assignments were going to be treated as a status/scheduling

9  conference today.

10          So, all right, why don't you enter your appearance

11  for the record, please.

12          MR. FIEDLER:  Thank you, Your Honor.

13          Good afternoon.  Ross Fiedler of Kirkland & Ellis on

14  behalf of the debtors.  I'm joined here today by my co-counsel,

15  Warren Usatine and David Bass of Cole Schotz.  So --

16          THE COURT:  Good afternoon.

17          MR. FIEDLER:  Good afternoon, Your Honor.

18          As you mentioned, we're here today on what appeared

19  to be a much lengthier and more contested agenda than it

20  actually is.  But it is a very important one today.  As Your

21  Honor is well aware, we filed these cases to pursue what was a

22  dual track path, a wind-down of the estate simultaneous with a

23  sale of some or all of our assets either as a going concern or

24  otherwise.

25          As we made clear at the prior hearing, unfortunately,

1  the going concern buyer was not out there.  That said, most of

2  the preparation in lead up to these cases.  And the activity

3  during these cases has focused around the debtor's lease

4  portfolio and specifically monetizing the substantial value

5  provided by what we have determined to be under-market leases.

6         So to that end, at the beginning of these cases, we

7  filed a motion seeking court authorization to establish

8  procedures for the sale of our lease assets through a public

9  orderly auction process.  Your Honor approved those procedures

10  in May at Docket Number 422.  And pursuant to those procedures,

11  we set up a dual auction structure, a Phase I Lease auction in

12  June and a Phase II Lease auction in July, which is actually

13  proceeding tomorrow.

14         But the timing of these auctions was strategically

15  aligned with the going-out-of-business sales that we've been

16  conducting and that were set to conclude at the end of this

17  month.  We did file various notices providing parties in

18  interest with an opportunity to formulate and submit bids on

19  the Phase I Lease assets, specifically a notice at Docket

20  Number 456 which set forth a bid deadline on the Phase I Lease

21  assets of June 22nd and the lease auction of June 26th.

22         We did on June 26th hold a public auction at Kirkland

23  & Ellis and via video conference.  We had a court reporter

24  present to document the proceedings on the record.  And the

25  auction was very robust.  It lasted several hours.  We had

1  parties participating in good faith given an opportunity to

2  submit overbids on the leases that were up for auction.  And as

3  Your Honor may have noticed, we filed a transcript of the

4  auction at Docket Number 1397 earlier today.

5         Following the auction and in a prudent exercise of

6  the debtors' business judgment, we filed a notice at Docket

7  Number 1114 selecting and disclosing the successful bidders and

8  backup bidders with respect to just the Phase 1 Lease assets.

9  There have been minor changes to that notice which all relevant

10 parties have made aware of.  In fact, they were the ones that

11 requested them.  But that notice also set a hearing of today

12 for approval of the Lease I assets and an objection deadline of

13 July 11th.

14        I am pleased to report that today the Phase I Lease

15 auction was very successful.  With the guidance of A&G Realty

16 Partners who's the debtors real estate advisor, we were able to

17 increase the total consideration obtained from the lease assets

18 considerably over the aggregate amount of the highest bids

19 submitted prior to the bid deadline.

20        More specifically, Your Honor, we obtained successful

21 bids for 109 leases with a gross purchase price of

22 approximately $36 million.  Successful bidders have included

23 large proven retailers like Burlington Coat Factory which will

24 take 44 locations, Macy's, Michaels Stores, just to name a few,

25 and obviously a numbers of others.

1          At all times during this process, the debtors have

2   been in close coordination with the consultation parties who

3   are the DIP lenders and the UCC, both of which are supportive

4   of this process, the relief that's been requested, and the

5   substantial monetary value that it's yielded.  So in light of

6   all of that, Your Honor, it's absolutely critical that today

7   the debtors' tireless efforts in pursuing monetization of many

8   of these lease assets come to a successful close.

9          All of that being said, I think it's time to turn to

10  the agenda, and I can provide Your Honor with some context and

11  clarity around what's actually going forward today.

12          THE COURT:  Uh-huh.

13          MR. FIEDLER:  As you noted, Your Honor, we filed an

14  amended agenda at Docket Number 1395.

15          THE COURT:  Right.

16          MR. FIEDLER:  We're only going forward today on the

17  Phase I Lease sales.  All other matters have been adjourned to

18  a subsequent date, most of which I'm confident we'll be able to

19  reach resolution on in advance of the hearing.

20          But with respect to those lease sales, we're only

21  going today -- going forward today on about 50 of the 109 lease

22  sales or terminations.  For Your Honor's benefit, we identified

23  those leases on Exhibit A to the notice of uncontested matters

24  that we filed last night at Docket Number 1394 and was further

25  supplemented today at 1396.

1          So we're proceeding today only on those leases

2  because they're uncontested.  I think about 49 of them have no

3  objection, and about two of them have some minor cure disputes

4  that we think can be handled after the order has been entered

5  by Your Honor, obviously, subject to and without prejudice to

6  the landlords' cure objections that have been filed.

7          I am happy to report, though, that the value of the

8  lease sale exceeds any disputed cure by a good amount.  And so

9  we're essentially in the money on all of those leases with cure

10 disputes that will be pushed to Monday.

11         So there are remaining leases that are subject to

12 objection.  Some of those relate to adequate assurance; other

13 relate to use restriction and exclusivity provisions and other

14 leases, some that may be in Bed Bath leases.  That's all going

15 to be pushed to July 24th, along with the cure disputes, as

16 well.

17         THE COURT:  Can you just do the numbers for that for

18 me?  In other words, you said Phase I had 109 leases sold and

19 51 are going forward today, which in my math leaves 58 open or

20 as to which there are objections.  But --

21         MR. FIEDLER:  So --

22         THE COURT:  -- the number of matters as to -- on the

23 agenda as to which there are objections is in excess of that as

24 best as I can tell.

25         MR. FIEDLER:  Yeah.  So let me provide some clarity

1  on that.  We have certain lease sales that are package bids.

2  For example, Burlington Coat Factory I think has taken 44

3  locations.  We only have objections on 20 of those, I believe.

4  And so the other 24 are uncontested, but they're going to be

5  pushed to Monday, as well, just for efficiency purposes.

6         THE COURT:  Okay.  So,  in other words, with the

7  Burlington one, even though 24 are in the clear or roughly 24

8  are on the clear, they're all getting pushed so the number is

9  really not 51 but it's more for that make it 75?

10         MR. FIEDLER:  Right.  And then there's a few with --

11  you know, the Michaels deal, I believe, one or two remain

12  contested.  And so the leftover of the Michaels are unopposed,

13  and so those can go in the category of uncontested, as well.

14  But there are certain ones that are being pushed to Monday just

15  for efficiency purposes.

16         THE COURT:  All right.  So I think this is a good

17  point for me to say one of the reasons why I wanted to treat

18  this as a status scheduling conference today was because we did

19  receive so many objections, and we were trying to get a handle

20  on what was going forward and what wasn't.

21         And there were a lot of requests for witnesses to

22  appear in person, by Zoom, and all that.  And there were, it

23  looked to me to be significantly more than 50 objections.  And

24  even if it were 50, that's just too many to deal with in an

25  afternoon hearing especially with witnesses.  So I thought it

1  was appropriate as to those.  And maybe you agree, and that's

2  what I'm being told is that as to those, we need to just deal

3  with them hopefully by the 24th.  But at some point, I want to

4  hear what the proposal is as to how to deal with those.

5       MR. FIEDLER:  Yeah.  And I think we are hopeful we'll

6  reach a resolution on a number of those.  But we are prepared

7  and will be filing a reply on Thursday in response to the

8  contested objections that are going forward on Monday.  And so

9  we're happy to proceed that way.  We did file that notice of

10 uncontested matters to give Your Honor a sense of what remains

11 going forward today.  But we're happy to provide you with

12 another notice to make that even clearer if that's acceptable.

13      THE COURT:  Well, at some point, I definitely need an

14 understanding of, A, which are the contested ones that I have

15 to be ready to deal with on Monday and, B, what the procedure

16 is going to be to conduct those contested hearings.  In other

17 words, if there's going to -- if people want witnesses and

18 there's more than a couple of them, it could start to take some

19 significant time.  And we just need to figure out how to

20 address that.

21      MR. FIEDLER:  Understood.  I think, Your Honor, the

22 only matter that has potential witnesses and declarations that

23 have been submitted is the Hobby Lobby lease with respect to

24 the Michaels deal.  All of the others I think we can proceed

25 without witnesses, without declarations, and we're prepared to

1  go forward on the papers.

2          Most of this is just legal argument, and so we don't

3  think any of the facts are in dispute.  And so we're prepared

4  to go forward on our reply on Monday with respect to the

5  contested matters.

6          THE COURT:  On a reply on Thursday for a hearing on

7  Monday.

8          MR. FIEDLER:  Correct, Your Honor.

9          THE COURT:  Okay.

10         MR. FIEDLER:  Yeah.

11         THE COURT:  All right.

12         MR. FIEDLER:  And to the extent there are ones that

13  need to be pushed to a subsequent date, we're happy to do that

14  if we don't have enough time on Monday to handle all of the

15  contested matters.

16         THE COURT:  Okay.

17         MR. FIEDLER:  But as I mentioned, it's really

18  imperative that we close out as many of these as we can today.

19  The estate is relying on the dollars that have been gained

20  here.  It's been no small feat, and it's hugely thanks to A&G

21  Realty who ran a robust process, all of the landlords and third

22  parties that have participated, that have negotiated these

23  assignment agreements and really got us to where we are today.

24         So with that said, Your Honor, unless you have any

25  questions or anyone else in the courtroom or on the phone would

1 like to be heard, I know Mr. LeHane would like to be heard.

2 I'm happy to leave it at that.  And then we are planning to

3 submit orders approving a number of these lease sale and lease

4 terminations following the hearing.

5          THE COURT:  Okay.  Well, I'll certainly hear from

6 anyone that wants to be heard before we proceed any further.

7          MR. FIEDLER:  Okay.  The last point I do want to make

8 and I probably buried the lead with this is the debtors have

9 reached an agreement on the terms of a plan with the UCC and

10 the DIP lenders.  And we are prepared to file that plan and

11 disclosure statement either today or within 24 hours.  We will

12 be seeking short notice to have a conditional disclosure

13 statement approval hearing on or around August 1, Your Honor.

14 So --

15          THE COURT:  August 1?

16          MR. FIEDLER:  Yes.

17          THE COURT:  So August 1.  If you file it today, today

18 is the -- okay.  I understand.

19          MR. FIEDLER:  And the reason for the short notice,

20 obviously, is we have reached consensus with the key

21 stakeholders in the case around the terms of the plan.

22          THE COURT:  All right.

23          MR. FIEDLER:  Okay.

24          THE COURT:  I'll consider it, but I'll also consider

25 what others may have to say, as well.

13

1          MR. FIEDLER:  Understood.  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. LeHANE:  Good afternoon, Your Honor.  Robert

4  LeHane, Kelley Drye & Warren on behalf of a number of

5  landlords.

6          THE COURT:  Good afternoon.

7          MR. LeHANE:  Your Honor, the landlords are Oak Street

8  Real Estate Fund, Brookfield Properties Retail, Regency

9  Centers, Hines, Site Centers, Kite Realty Group, and Benderson

10  Development Company.

11          And, first of all, Your Honor, I agree completely

12  with Mr. Fiedler's comments with respect to the process that's

13  been run.  And Your Honor may recall we were here on the first

14  few days of the case back in May, and we were at the approval

15  hearing on the lease procedures and we said they're not perfect

16  but we totally understand what the debtor has to accomplish

17  here.

18          And all of our clients are not only landlords but

19  creditors to this company, and they want to see the value of

20  these assets maximized.  And it's been a very well run process,

21  and we've had a great deal of cooperation.  Our clients also

22  participated on the creditors' committee.  So we've been deeply

23  involved throughout, Your Honor.  It's been a tremendous lift.

24          THE COURT:  I appreciate that.  I do remember that,

25  and I appreciate you saying that.

1        MR. LeHANE:  Right.  And I don't believe there's been

2   a Chapter 11 case with this much real estate moved since Sears

3   or Toys R Us, so it's a very significant amount of work that's

4   been done.

5        And with respect to our specific clients and this

6   process, we filed a number of objections, Your Honor, on behalf

7   of those clients that had leases that were subject to

8   assumption and assignment.  And some of those were what we

9   would call cautionary assumption and assignment, adequate

10  assurance in the sense of making sure the numerical math under

11  the leases is performed going forward and the cure amounts are

12  all squared away.

13       There were also, though, a number of those that were

14  actually substantive objections.  So our objections were filed

15  at Docket Number 1320 for Brook Oak Street, 1323 for

16  Brookfield.  That's the Pinnacle Hills location in Rogers,

17  Arkansas, a proposed assignment to Michaels that Mr. Fiedler

18  made reference to.

19       At 1324, it was another objection on behalf of Oak

20  Street Real Estate.  At 1326, the Hines Realty Group objected

21  to a proposed assignment in Cincinnati at the Rookwood

22  premises.  That I want to talk a little bit about because it's

23  got a similar legal situation as the Michaels Rogers, Arkansas

24  assignment.

25       At 1328, we filed objections for Regency Centers.  At

1  1329, we filed objections for Site Centers.  At 1330, we filed

2  objections for Kite Realty Group.  Three locations were

3  initially involved.  We believe two of those are resolved, but

4  the third one has a legal issue that is almost identical to the

5  issue with the Michaels at Rogers, Arkansas and the

6  Scandinavian Designs assignment in Cincinnati, Ohio.  Same

7  legal issues, but a different set of facts.

8          Finally, we have Benderson Development Group at

9  Sarasota, Florida, a very different type of objection that

10 remains open.  And in Torrence, California, there's an

11 objection to the assumption and assignment of that lease to a

12 one-off developer.  Your Honor --

13         THE COURT:  What docket number was that?

14         MR. LeHANE:  That was 1320.  That's the first.  It's

15 Oak Street Torrence, California.

16         THE COURT:  Oh, okay.

17         MR. LeHANE:  Your Honor, we have been working hard to

18 resolve these.  Our goal would be to resolve these all

19 consensually.  And for more of these, we usually believe there

20 is a business resolution.  And we're continuing to work on

21 that.  And there are discussions underway.

22         For Pinnacle Hills, Rogers, Arkansas, it doesn't look

23 like there's going to be a business solution, although we

24 proposed one.  And we don't know with respect to the one in

25 Cincinnati where it's another assignment that would violate an

1  exclusive and the assignment in Avondale, Arizona for Kite

2  Realty Group.

3          The point here, Your Honor, is that although Mr.

4  Fiedler referenced the Rogers, Arkansas one, there's really

5  four other locations that potentially have similar legal issues

6  with a different set of facts and potentially a different set

7  of witnesses.  And what we did yesterday in talks with the

8  debtor when we realized that this was going to be adjourned, we

9  had started filing motions to seal because the leases that

10 would be in evidence here, Your Honor, are confidential.  And

11 we've redacted them and have versions that would be appropriate

12 for the public, but we wanted to give Your Honor the benefit of

13 the unredacted leases.

14         So what we would propose with respect to those is

15 that we continue filing those and see if we coud have those

16 heard on short notice on the 24th.

17         THE COURT:  When you say "those?"

18         MR. LeHANE:  The motions to seal, Your Honor.

19         THE COURT:  Just the motions to seal.

20         MR. LeHANE:  Just the motions to seal.

21         THE COURT:  Not the underlying substantive motions?

22         MR. LeHANE:  That's correct, Your Honor.

23         And with respect to the underlying substantive

24 motions, we've had discussions with debtors' counsel and we

25 understand that they have a lot going on and a lot to

accomplish.  Our preference would be to have a hearing on those

on August 1st or after because we've just been made aware of

the witnesses that the assignee is putting forth.  We have

witnesses we may want to put forth.

And, Your Honor, this is a very important issue from

our clients' perspective.  There is a split of law between the

Fourth Circuit.  There's some Second Circuit law.  There's

nothing really recent in the Third Circuit on this issue.

Let's consider this an opportunity to make new law, perhaps,

and that's if they don't settle.  And we're going to try to

settle these issues.

I will also say this, Your Honor.  Going into August,

all of these landlords do not want to impair the estate at all

and would waive the rent in August in order to have any

proceedings continue into August.

THE COURT:  You read my mind.

MR. LeHANE:  So what we're trying to make clear here

is we're trying to give the estate the benefit that it can get

monetizing as many of these leases as possible.  But in some

cases, that's just not acceptable to the landlord.  We find we

may have a substantive hearing, and it may be one that really

does require some expiration of fact.  There's going to be

further briefing on this.  And because it's such an important

issue, we feel that Your Honor is entitled to the full briefing

of these issues.

1          We've discussed it with counsel to the debtors.  We

2    want to go back, see if we can't work on a constructive order

3    that will give Your Honor what we believe to be the appropriate

4    type of structure he understands the needs to this.

5          And by the way, Your Honor, I'm remiss because I

6    wanted to say I'd like to introduce you to my colleague, Mr.

7    William Gyves, who will be helping out on this.  I believe he's

8    looking in through Zoom on this one, so we'll be working with

9    Bill Gyves, counsel for the debtor, and counsel for the

10   assignees to try to come up with a constructive and appropriate

11   schedule for these proceedings.  But it is a large number of

12   contested assignments that if they don't get resolved, they

13   certainly could take more time that would be available in just

14   one afternoon or one hearing.

15         So we look forward to working through the rest of

16   these issues with counsel for the debtor.

17         THE COURT:  And are they the kind of issues that the

18   parties are just going to be submitting their legal papers,

19   like briefs and declarations or is there formal or informal

20   discovery involved or --

21         MR. LeHANE:  There may be discovery, Your Honor.  One

22   of them is a very legal issue.  It's a very clear issue.  I

23   don't know if it's appropriate to get into at status

24   conference, but another one, there is a more subjective and a

25   factual basis for it.  And Michaels has submitted a fact

1 witness.  We would intend to submit a fact witness, as well,

2 and it would get to what is an issue that does resolve around

3 some factual discovery.  And we're trying to determine whether

4 or not depositions are necessary, how to conduct those

5 depositions in a way that would be most efficient for everybody

6 involved.

7          THE COURT:  Well, I appreciate all that.  And I'm

8 sure you'll stipulate to things that you can stipulate to.  And

9 if it's just the legal issue that you need me to resolve and

10 you can't resolve it consensually, you'll let me know about

11 that.  And I do need to say one thing that you mentioned Bill

12 Gyves.  And I have to disclose that I worked with Bill Gyves

13 some 20-plus years ago at my old firm.  And I have dinner with

14 him occasionally, probably once or twice a year.

15          So I don't think that raises any kind of issue.  I am

16 very confident that I can be fair and impartial notwithstanding

17 that.  And I'm pretty sure it doesn't raise any kind of

18 disqualification issue anyway, but I don't want to --

19          MR. LeHANE:  Understood, Your Honor.

20          THE COURT:  -- hinder anyone from raising that issue

21 if they want to if Mr. Gyves is going to be primarily

22 intimately involved in this.  And the way I deal with that is

23 is that if there is a problem, I can have any party say, write

24 a letter or whatever saying they have a problem, one party has

25 a problem with it without identifying anyone.  You can do that,

1 and I'll take it under advisement and see how I need to deal

2 with it.

3          Or if there's no issue, which I don't think there is

4 any issue, I've had many colleagues appear before me in these

5 and other cases, but I just needed to disclose that for the

6 benefit of everyone.

7          MR. LeHANE:  No, I appreciate that.  It's one of the

8 reasons we wanted to let you know.  Mr. Gyves, as well.  So

9 with that, unless Your Honor has any more questions, we look

10 forward to trying to work through these issues and again hope

11 that we can resolve as much of this consensually as possible

12 but do feel that we will need to have some time and are looking

13 forward to hopefully a hearing the week after next, sometime

14 August 1, in that week, so.

15          THE COURT:  Okay.  Well, it's been a very busy time

16 for me.  I have -- this is all these things are here for trial

17 that's been going on for over 20 days and is going forward on

18 Wednesday and Friday of this week.  And I'm actually going to

19 have to take Monday's hearing and I needed to say that, as

20 well, remotely.  I'm not going to be here.

21          But just based on that presentation that you just

22 made, it sounds like that's not going to be an issue but I'll

23 let anybody else tell me if it may be.

24          MR. LeHANE:  Thank you very much, Your Honor.

25          THE COURT:  Thank you.

1          MR. FIEDLER:  Your Honor, Ross Fiedler of Kirkland &

2  Ellis on behalf of the debtors.  There's no issue with that

3  from our perspective.  I appreciate Mr. LeHane's comments about

4  August rent.  We are not willing to impair the estate with

5  August rent.  We are planning on being out of these stores at

6  the end of July, and so do not expect to incur any August rent.

7          And so if the schedule allows for contested hearings

8  to go past July 31st, totally fine, so long as we have a

9  commitment from the landlord to waive August rent.

10          THE COURT:  It sounds like you might have been a

11  little surprised by that.

12          MR. FIEDLER:  No.  I was expecting that.  I

13  appreciate Mr. LeHane's comments.

14          THE COURT:  Oh, you were expecting that.  Yeah,

15  because it sounds like the thing that might have been said

16  before and I hadn't heard it before either.  I thought about

17  that as an issue because of the July 31st date.  And as with so

18  many other things, you guys have dealt with it and dealt with

19  it professionally and appropriately.  And I'm very grateful for

20  that.

21          MR. FIEDLER:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          Mr. Gross?

24          MR. GROSS:  Thank you, Your Honor.

25          For the record, Philip Gross, Lowenstein Sandler.

1  Great to be back in front of Your Honor again in person.

2        THE COURT:  Yeah.  Welcome back.

3        MR. GROSS:  Thank you.

4        So, Your Honor, we're counsel for Michaels Stores,

5  Inc., together with White & Case who I think is on the Zoom

6  line or that at least should be.

7        We filed pro hacs applications for four White & Case

8  attorneys: Mr. Sam Hershey, Mr. Greg Pesce, Laura Baccash, and

9  Devin Rivero.  And they may speak after me because I think

10 they're hearing a lot of this now in real time.  We had

11 actually been assuming as of yesterday afternoon that today was

12 going to go forward on a contested basis on our lease, which

13 was why we filed our reply and our declaration last night for

14 our witness.  Our witness had flown in from Texas yesterday

15 thinking that we were going to have a contested hearing today,

16 so we were a little bit surprised I guess that this was not

17 going forward today.

18       But we certainly understand all of the comments that

19 Mr. LeHane made.  We'll obviously be reasonable and look

20 forward to working forward on a reasonable schedule.  Because

21 our witness flew in yesterday and is not available, as far as I

22 could tell, not available in person next week, to the extent we

23 don't go forward next week, I think we would ask permission for

24 our witness who really just put forward one paragraph in his

25 declaration about the tenant mix issue in the shopping center.

1          We would ask for our witness to be given permission

2   at least from the Court if he could appear remotely on Zoom for

3   cross-examination if that would be okay.  I think we've spoken

4   to Mr. LeHane.  I don't know if -- hopefully we can --

5          THE COURT:  I honestly prefer that could be in

6   person, but if the parties are okay with it, I usually defer to

7   the parties.  And you are all very experienced and you know how

8   to get the documents to everybody and deal with the logistics

9   of it.  And if that's not going forward on the 24th, so there

10  will be some more time.  I don't know how much more, but there

11  will be more time to deal with it.

12         MR. GROSS:  Yeah.  The second question that I think

13  we had was no one had told -- we were all assuming as of last

14  night that we were going to go forward.  No one had indicated

15  they wanted to depose our witness.  We would understand, you

16  know, again, it's probably three or four lines in the

17  declaration.  If there is a need for a deposition, which again

18  we don't really think there is, we would just ask that that be

19  very very limited, maybe an hour or so.  Again, it's three

20  lines just really about the current tenant mix in the facility.

21  Nothing that we think is really more than two or three

22  questions, honestly, if even that.

23         THE COURT:  Would you be saying that if you were the

24  other side?

25         MR. GROSS:  Yes.

24

1              THE COURT:  You would?  Okay.

2                          (Laughter)

3              THE COURT:  I'm not sure, but that's all right.

4              MR. GROSS:  It really --

5              THE COURT:  Two or three questions?

6              MR. GROSS:  It really is three lines.  It really --

7              THE COURT:  Beyond the instructions and all that, if

8  you understand them.  It might be more than two or three, but I

9  don't know.

10             MR. GROSS:  The second point, Your Honor, is we think

11 at the end of the day, all of the case law that we cited in our

12 reply which is I think the more recent case law on the issues

13 really at the end of the day, it's not going to be much in the

14 way, if any, factual issues.  It's really going to be legal

15 issues that we think the Court could decide based on the terms

16 of the contracts and the lease agreements that have been

17 entered into the record.

18             And, obviously, the other side will discuss that in

19 their briefing and we can talk about it whenever we're back

20 whether it's Monday or thereafter.  I just wanted to see if my

21 co-counsel had any other comments given I think a lot of this

22 is moving in real time.  I know that they had mentioned that

23 the first week in August may be a problem.  I don't know if it

24 was for them or for their witness.

25             THE COURT:  Okay.

1              MR. HERSHEY:  Yes.  Your Honor, can you hear me?

2              THE COURT:  Who is -- I don't seem to have them on my

3    -- who is speaking?

4              MR. HERSHEY:  Let me raise my hand and see if that

5    brings me.  Well, anyway, Your Honor, this is Sam Hershey from

6    White & Case.  I'm co-counsel with Mr. Gross for Michaels

7    Stores.  Can Your Honor see and hear me now, by any chance?

8              THE COURT:  I don't know why it's not showing up on

9    my screen.

10             MR. HERSHEY:  Okay.  I only have a few quick

11   comments, Your Honor, so if I may just proceed with audio and

12   hopefully the video comes up, great.  If not, I only need a

13   second.

14             THE COURT:  Okay.

15             MR. HERSHEY:  So, Your Honor, I just wanted to

16   respond to one of Mr. LeHane's points which is Michaels of

17   course is also going to try to work with the landlord to

18   resolve this dispute on the business level.  It's everybody's

19   hope that we can do that, and we'll be ready and willing to

20   engage in those discussions.  I just wanted to put this on the

21   record for Your Honor to be aware of.

22             Also, Mr. LeHane mentioned further briefing and

23   evidence.  We'll of course consider whatever proposal he makes.

24   We're not entirely sure why that's necessary given there was an

25   objection filed and there was a reply filed and now it seems

1  like we're going into surreplies and sur-surreplies.  But we'll

2  of course be reasonable and listen to his proposal.  And if

3  there's a dispute that needs Your Honor's attention, we will

4  timely bring it to your attention.

5        And that's all, Your Honor.  Thank you.

6        THE COURT:  All right.  Well, this has all been done

7  on such an expedited schedule.  I just want to be fair to

8  everyone.  And it looks like Michaels was working very quickly

9  to get stuff together.  And I want to give everyone a fair

10  chance to respond.  If you can't figure out what a fair chance

11  to deal with it is between yourselves, write me a short letter,

12  tell me what the issue is, one or two pages, and we'll resolve

13  it, the other side can respond.

14        The prior practice is how things would go anyway is

15  there will be a response certainly within 24 hours.  And I'll

16  deal with it, and I'll deal with it either just be letting you

17  know what I ruled or having a short call and ruling on the

18  call.  And that doesn't just go for depositions.  It's any

19  discovery kind of issue that comes up just a short letter to

20  the point and a quick response, and we'll deal with it.

21        MR. FIEDLER:  And I think the last issue, Your Honor,

22  that White & Case had mentioned to me earlier was I think the

23  current deadline to assume or reject expires on August 21st.

24  So if we kick the hearing beyond next week, I think we would

25  want to just confirm that the landlord is okay consensually

1  extending that.  I think we had preliminary discussions about

2  that.

3              MR. LYON:  Well, I understand the debtors will be

4  moving to extend that, and they have another 90 days available.

5  But we're not going to oppose an extension of the deadline to

6  assume or reject in order to get in the way of this process.

7              THE COURT:  All right.  So that's sounds --

8              MR. FIEDLER:  Thank you, Your Honor.  Thank you, Mr.

9  Lyon.

10             THE COURT:  -- very very reasonable as before.  And I

11 think that you'll be able to deal with it.  And if not, you'll

12 come to me.

13             MR. FIEDLER:  Absolutely.  Thank you, Your Honor.

14             THE COURT:  Thank you.

15             I see Mr. -- okay, well, there's people on that have

16 raised their hand here, but if you want to come up because

17 you're here.

18             MR. WISOTSKY:  Very very briefly.  Good afternoon,

19 Your Honor.

20             THE COURT:  I generally give people in court a little

21 bit of preference, Mr. Wisotsky.

22             MR. WISOTSKY:  Okay.  Good afternoon, Your Honor.

23             Bruce Wisotsky, Norris McLaughlin.  We are local

24 counsel for one of the objecting landlords, Rushmore Crossing,

25 LLC.  Our objection is Docket Number 1305.  And I believe on a

1  Zoom call are principal counsel for client, Jarrod Morton and

2  Tara LeDay of the Chamberlain firm in Houston, Texas.  Their

3  pro hac vice applications are pending before the Court.

4        I wasn't privy to the lists that Counsel referred to

5  of matters that are going forward today, and those are going to

6  be heard on Monday.  And I just wanted to confirm that our

7  objections were being carried to Monday.

8        MR. FIEDLER:  Confirmed, Your Honor.

9        MR. GROSS:  Thank you.

10        THE COURT:  Thank you and, yeah, and I guess same

11  thing, you'll be talking and --

12        MR. GROSS  Yes.

13        THE COURT:  -- if a hearing is needed, we're going to

14  decide on Monday how that goes forward.

15        MR. GROSS:  I believe discussions are ongoing, Your

16  Honor.

17        THE COURT:  Yeah.

18        MR. GROSS:  Thank you.

19        THE COURT:  Thank you.

20        Okay.  And Mr. Martin and Mr. LeDay, I think they're

21  done, then.

22        Okay.  Come on up.

23        MR. OSWALD:  Good afternoon, Your Honor.  My name is

24  Dean Oswald of Porzio, Bromberg & Newman.  We represent a

25  landlord, DPEG Fountains, LP, out of Stafford, Texas.  My pro

1  hac applications are currently pending.

2          THE COURT:  Uh-huh.

3          MR. OSWALD:  So our landlord has a tenant that has a

4  use exclusive provision in the shopping center, and so we were

5  hoping that if necessary we'd be able to submit a certification

6  for our client that just to the extent that we actually, our

7  landlord operates a shopping center and that the other tenant

8  is objecting to the assignment of Burlington.  They're one of

9  the 44 in that objection.

10          THE COURT:  And what are you asking me or --

11          MR. OSWALD:  We just want to make sure that we're

12  able to stipulate with the debtors and, if necessary, have our

13  client appear via Zoom for cross-examination if needed.

14          THE COURT:  Well, I'm going to say the same thing --

15          MR. OSWALD:  Yeah.

16          THE COURT:  -- I said before.  I'm not going to do

17  different things for different parties.  So it will be the

18  same.  As long as everybody's okay with it, I'm okay with it.

19          MR. OSWALD:  And if the debtors are okay with the

20  stipulations to --

21          MR. FIEDLER:  We're okay with that.

22          MR. OSWALD:  Okay, perfect.

23          THE COURT:  Okay.

24          MR. OSWALD:  Thank you.

25          THE COURT:  Thank you.

1          All right.

2          MR. MANN:  Good afternoon, Your Honor.  Kevin Mann on

3  behalf of Flexport, Inc.  I'm from the law of Cross & Simon, up

4  here from Delaware.

5          THE COURT:  Okay.

6          MR. MANN:  Ours was a contested lease.  I just wanted

7  to let the Court know that it has been resolved.  I thought

8  Counsel was going to talk about that because he represents that

9  landlord, as well.  But that's for Store No. 677.  It's not

10 actually a store.  It's a warehouse facility.  But I did want

11 to let the Court know that that has been resolved, and we'll

12 have a form of order in front of you shortly.

13         THE COURT:  Oh, that's great.

14         MR. MANN:  Yep.

15         THE COURT:  It didn't make it to the amended list of

16 --

17         MR. MANN:  It is the last one on the list, but --

18         THE COURT:  Oh, it made it?  It made it.  Oh, okay.

19         MR. MANN:  But we did -- in the hallway before coming

20 in here, we worked out the final details.

21         THE COURT:  That's one thing that was lost for sure.

22 Well, for sure during COVID and even with parties appearing

23 less in court.  The hallway when I was coming up was a good

24 place to resolve things, but --

25         MR. MANN:  That's why I came up here today, Your

1  Honor.

2           THE COURT:  Well, there you go.

3           MR. MANN:  All right.  Thank you very much.

4           THE COURT:  All right.  Thank you very much.

5           MR. MANN:  Yes.

6           THE COURT:  I appreciate it.

7           MR. MAIRO:  And, Your Honor, just for the record,

8  John Mairo of Porzio Bromberg & Newman.

9           THE COURT:  Good afternoon, Mr. Mairo.

10          MR. MAIRO:  Good afternoon, Your Honor, representing

11  DFW Lewisville Partners, LP, that was just referenced by Mr.

12  Mann.  I let my colleague, Mr. Oswald, deal with a different

13  landlord.  That's why he came up a minute ago.

14          THE COURT:  Right.

15          MR. MAIRO:  I just want to clarify in terms of the

16  deal that we have reached with Flexport, we've agreed to the

17  proposed order.  There was an issue about the cure amount.

18  We've agreed to $80,000 that will get built into the order, as

19  well as DFW and Flexport has agreed to the terms of the lease

20  amendment.

21          The only remaining issue with that is just one of the

22  exhibits to the lease amendment is just the form letter of

23  credit.  We just kind of ran out of time to just have that

24  agreed to, so that's the only remaining issue.  And I guess the

25  other thing that we'll build into the order is that we learned

1  just at the very end that the actual name of the landlord is

2  different.  It's a different successor in interest.  And,

3  similarly, the tenant, Bed Bath, is a different successor in

4  interest.  So we'll just build those changes in.

5           THE COURT:  All right.  Well, it sounds like it's all

6  acceptable and did that make it on to the list or is that a new

7  one?

8           MR. MAIRO:  It's on the list as an uncontested, but I

9  just wanted to advise the Court that we really agreed to

10 everything, and those are the terms.

11          THE COURT:  All right.  Great.

12          MR. MAIRO:  Thank you, Your Honor.

13          THE COURT:  Thank you, as well.

14          All right.  I see Mr. Teele has his hand up.

15          Mr. Teele?

16          MR. TEELE:  Good afternoon, Your Honor.  Jason Teele,

17 Sills, Cummis & Gross on behalf of Microelectronics.

18          Your Honor, my client was the successful bidder to

19 take an assignment of the debtors' lease in Santa Clara,

20 California, which is listed on the  list of uncontested matters

21 that are going forward today.

22          And I just wanted to make a request since I did have

23 an email exchange with Mr. Bass yesterday concerning the form

24 of order that I'd be able to see the updated order prior to it

25 being submitted to the Court after this hearing.

1          MR. BASS:  Yes.

2          THE COURT:  What?

3          MR. BASS:  That's okay, Your Honor.

4          THE COURT:  Did you hear that?  That's okay,

5     Mr. Teele.

6          MR. TEELE:  Yes, sir, I did.  And thank you very

7     much.

8          THE COURT:  All right.  Thank you.

9          And now Mr. Baudner?

10         MR. BAUDNER:  Good afternoon, Your Honor.

11         THE COURT:  Good afternoon.

12         MR. BODNER:  John Bodner, Bodner Law, local counsel

13    to BVCV Union Plaza, LLC.  We're a landlord, and we filed an

14    objection at Docket Number 1240 to the assignment of the lease

15    to Golf & Tennis Pro Shop.

16         We've been tracking the docket, and we've seen some

17    of the filings involving Mr. LeHane's clients and Pinnacle and

18    Michaels.  And we believe the legal issue referenced is a --

19         THE COURT:  Mr. Bodner, you're fading in and out a

20    little bit.  Can you just speak up or pick up the phone or

21    something?

22         MR. BODNER:  Your Honor, can you hear me now?

23         THE COURT:  A little better, yeah.

24         MR. BODNER:  All right.  I apologize, Your Honor.

25         THE COURT:  All right.

1          MR. BODNER:  We just wanted to let the Court know

2    that the legal issue in our objection we believe is a similar

3    legal issue to the issue in Mr. LeHane's objections going back

4    and forth between Pinnacle and Michaels and other parties, so

5    we just wanted to let Your Honor know there are other landlords

6    with that legal issue that are implicated.

7          THE COURT:  Okay.  Well, I guess one of the things

8    that the parties need to talk about is how that all works out.

9    And to the extent there's different facts that might influence

10   or inform the legal decision, I think you have to be prepared

11   to address those facts with your own witnesses.

12          However, if it's just going to be, for lack of a

13   better term, a piggyback argument, you can certainly join in

14   the arguments.  But I leave that up to you.  I can't tell you

15   how to do that.  I can only tell you that you should proceed as

16   you deem fit in representing your client's interests.

17          MR. BODNER:  Thank you, Your Honor.  We just wanted

18   to let the Court know just there are other landlords out there

19   with the issue, and we'll discuss.  Thank you.

20          THE COURT:  Oh, I appreciate it.  I understand.  I

21   understand that.  Thank you.

22          MR. FIEDLER:  Your Honor, Ross Fiedler, Kirkland &

23   Ellis, on behalf of the debtors.

24          I think the approach that Mr. LeHane laid out was the

25   same approach that was taken in the briefing in Toys R Us.  And

1 it's acceptable to the debtors so long as we have confirmation

2 that the other landlords who have raised as Mr. Bodner said

3 substantially similar legal issues agree that August rent is

4 going to be waived, as well.  We can't put the estate in a

5 position to incur that.

6         THE COURT:  Did you hear that, Mr. Bodner?

7         MR. BODNER:  Yeah.  I'm not authorized to do that

8 now, but I'll go back and discuss with my lead counsel and my

9 client.

10         THE COURT:  It seems like a reasonable, practical,

11 and in some sense necessary way to address the issue so -- but

12 your client will do what they think is right.  I think

13 reasonableness sometimes is even better than strictly adhering

14 to some legal precept, and maybe this is one of those cases.

15         Okay.

16         MR. FIEDLER:  Thank you, Your Honor.

17         THE COURT:  Thank you.

18         All right.  Anyone else wish to be heard?

19         Mr. Tabachnik?

20         MR. TABACHNIK:  Thank you, Your Honor.

21         Two things.  First of all, we have some confusion on

22 the record that needs clarification.  I represent Panama City

23 Beach Venture II, the objection filed at Docket Number 1281.

24 And our lease is referenced on two different schedules of

25 leases to be sold, one located at Docket Number 114 on Page 10

1  and again on Docket Number 1157 at Page 11, Page 11 out of 119

2  pages that we are.

3          And in the one instance we are noticed for leases

4  being noticed to be sold to Burlington.  We're not sure which

5  Burlington entity.  I think that we've been told in emails and

6  so forth, but there apparently are a number of Burlington

7  entities and we'll get to that in a minute.

8          On Docket Number 1157, the proposed purchaser of the

9  lease in question, which is Store No. 1367 for the record, is

10 Havertys Furniture.  So one of those has to be right and one

11 has to be wrong.  And having conflicting documents also makes

12 it difficult because we can't assess the wherewithal of the

13 prospective purchaser to comply with the obligations of the

14 lease as it pertains to the shopping center owned by our

15 client.  And so that's clouding our discussions a little bit.

16         I think that the parties continue to work.  We were a

17 little surprised that this matter is now being kicked to next

18 week, a date on which I am actually traveling and unavailable.

19 And if we have to, it would be given the length of this

20 hearing, it's quite possible that I am not going to be able to

21 be in a place where I can conduct a hearing, certainly not a

22 contested matter as we were prepared to go forward today.

23         And so we'd like to -- it looks like some matters are

24 going to have to be carried beyond the 24th as it is because of

25 some of the contested matters in which witnesses are going to

1  be required.  And taking a cue from the discussion with

2  Mr. Bodner, I certainly will chime in and subscribe and join in

3  every other landlord's objection that says things similar to

4  the objections that we raised and just not to leave anything

5  out.

6          But we do need clarification as to which is the party

7  that's going to be acquiring or proposed to acquire our

8  client's lease and then to get the appropriate assurances,

9  adequate ability to comply with the provisions of the lease.

10 And that again goes to not only the financial wherewithal to do

11 so but also the composition vis-a-vis the restrictions that we

12 have to comply with vis-a-vis our other tenants, the other

13 tenants in the shopping center.

14         So as an administrative matter, though, I did want to

15 address the 24th and if our matters needs to be -- chances are

16 a number of these are going to have to be carried anyway, so

17 maybe we just put to the bottom of the list after some of those

18 that are covered on the 24th which it looks like they're going

19 to consume that day in any event.

20         THE COURT:  All right.  So I think the first order of

21 business is, and debtors' counsel are conferring, is to clarify

22 for Mr. Tabachnik who --

23         MR. BASS:  It's (indiscernible).

24         THE COURT:  Who is it?

25         MR. BASS:  There was an error on the notice of

1  assumption at 1157 that Mr. Tabachnik is speaking about, but it

2  was properly reflected on the notice of successful bidders as

3  Burlington proposed --

4          MR. TABACHNIK:  I'm sorry.  I'm not hearing that,

5  Your Honor.

6          THE COURT:  So it was Burlington.  It was a

7  typographical error on 1157.  Was that the docket number?  So

8  it's Burlington.

9          MR. TABACHNIK:  All right.  So they're going to

10  correct 1157.  And which Burlington entity exactly?

11          MR. BASS:  I'll provide Mr. Tabachnik that specific

12  information afterwards.  But, Mr. Tabachnik and I had several

13  discussions that it's a Burlington lease, and so I will provide

14  him with the details before I jump to the office.

15          THE COURT:  It sounds like there might be minor

16  differences between a lot of these names anyway, so Mr. Bass is

17  just saying he'll give you the exact information offline the

18  next time you talk.

19          MR. TABACHNIK:  That would be great. I know he's been

20  talking with my colleague, Ryan Davis, down in Florida to get

21  these things resolved.

22          And it matters because what we find is that the

23  financial information is a little bit muddled since the

24  information has been presented to us are consolidated

25  financials.  And consolidated financials don't give us the

1  ability to ascertain the financial status of the individual

2  entity that is contained within those consolidated financials

3  and whether or not there are cross-corporate guarantees.  But I

4  think that we've discussed that and we can do that offline.

5         For present purposes, I think if we get the

6  clarification that we need, it's great to hear on the record

7  that 1157 is wrong.  That gives us some degree of comfort to at

8  least know which way we're going.  And then to deal with the

9  24th which is a date that is problematic for me as it is for

10  Your Honor.

11         THE COURT:  Yeah.  It's not going to be a problem

12  because we're not going to be having the hearings on the

13  contested ones on the 24th.  So it's not a problem --

14         MR. TABACHNIK:  Okay.

15         THE COURT:  -- for you.

16         MR. TABACHNIK:  Okay.  Thank you, Your Honor.  That's

17  --

18         THE COURT:  It will be adjourned to another date if

19  you haven't resolved it by then.

20         MR. FIEDLER:  Your Honor, just --

21         MR. TABACHNIK:  Thank you.

22         MR. FIEDLER:  -- one point.  We are prepared to go

23  forward on a number of the contested matters on Monday.  To the

24  extent --

25         THE COURT:  Oh, you are?

1           MR. FIEDLER:  To the extent there are issues

2    substantially similar to the ones raised by Mr. LeHane, we're

3    happy to push those to a later date that we can agree upon so

4    long as we get coordination from the landlords on the August

5    rent issue.  But we want to get these done as quickly as we

6    can.  And so there are a number that we're prepared to go ahead

7    on on Monday.

8           And if it will be helpful to Your Honor, we could

9    provide a status update on Friday via a notice to give you a

10   sense of what remains that's contested and would be going

11   forward on Monday.

12          THE COURT:  Right.  Would it be --

13          MR. TABACHNIK:  And just --

14          THE COURT:  Would it be a difficult thing for you to

15   do to just give that preliminary list right now as to where it

16   stands as between ones that are in we'll call it the LeHane

17   category or -- it's not a defined term yet, but it may be.

18          And I don't know, I'm not sure if there's still a

19   third category.  I'm not sure.  Is there that category that

20   have those kinds of issues, the LeHane kind of issues or -- and

21   then the ones that you're prepared to go forward on and then I

22   don't know if there's another category?

23          MR. FIEDLER:  Can I take a brief moment to consult

24   with the Cole Schotz folks?

25          THE COURT:  Sure.

1          MR. FIEDLER:  Okay.

2          MR. TABACHNIK:  While he's doing that, Your Honor, if

3    I may?  Doug Tabachnik again.

4          We don't have authority to waive August rent at this

5    hearing and certainly don't think that it's appropriate to hold

6    that up as a lever.  We were prepared to go today on our matter

7    as a contested matter, and if the debtor for its convenience

8    needs to push things out, that's fine.  But doing this without

9    -- unilaterally is problematic.  And so you're going to run

10   into these issues.  But we can't say on behalf of our client

11   that we're allowing the rent issue to hold up a scheduling

12   matter.  It shouldn't be that way.

13         THE COURT:  All right.  Well, no one's asking you to

14   agree to that today.  I said what I said.  You heard what I

15   said before.  You'll consider it, and if you don't want to do

16   it, you don't want to do it and we'll address it accordingly in

17   connection with scheduling.  That won't be an issue.  We'll

18   figure it out.

19         MR. TABACHNIK:  Thank you, Your Honor.

20         THE COURT:  All right.  I'm not sure, there's two

21   more people that have their hands up and I'm not sure whether I

22   should move to them before we hear on the issue on the 24th,

23   because obviously if Mr. Tabachnik's client falls in the

24   category of things that are going to be decided on the 24th, he

25   needs a different date.

42

1          Right?  Is that right, Mr. Tabachnik?

2          MR. TABACHNIK:  That's correct, Your Honor.  Thank

3   you.

4          MR. USATINE:  Good afternoon, Your Honor.  Warren

5   Usatine, Cole Schotz, on behalf of the debtors.

6          THE COURT:  Good afternoon.

7          MR. USATINE:  There are certain objections that are

8   tenant mix related, the issue that Mr. LeHane highlighted for

9   Your Honor; that are adequate assurance of performance of the

10  prospective assignee related; and then there's cure disputes.

11         THE COURT:  So there's three categories.

12         MR. USATINE:  Some of them are all three.

13         THE COURT:  Right.

14         MR. USATINE:  Okay.  Some of them are not mix related

15  and are only adequate assurance.  Some of them are adequate

16  assurance and cure, okay.  Our position is if we're going to

17  hear the mix related issues on the 1st per the schedule that

18  Mr. LeHane is proposing with details to be filled in around

19  discovery and things like that, all of the ones that have mix

20  as a component of the objection can be heard that day.

21         If it's adequate assurance too, we'll deal with

22  those.  If it's cure, we hope to be able to resolve those.

23  Really, these are creditworthy -- we really hope to be able to

24  resolve those.  The cure deficiencies with very few exceptions

25  are not major deltas.  We're going to do the work.  We hope to

43

1  resolve them.

2          But if, however, what we propose on the 24th, Your

3  Honor, is if it's only adequate assurance or only cure or only

4  adequate assurance and cure and not the tenant mix related

5  issues that Mr. LeHane highlighted, we'd like to go forward

6  with those on the 24th.  The universe is actually -- there's a

7  lot of them that have tenant mix components, probably 20 or so.

8  The other 30 or so-ish, right, are either adequate assurance or

9  cure or a combination of those two, and we'd like to either

10 resolve them or have them heard on the 24th.  That's what we're

11 proposing.

12         THE COURT:  Okay.  So, Mr. Tabachnik, I'm sorry, you

13 were in which category?

14         MR. TABACHNIK:  Well, we really got --

15         THE COURT:  You had the tenant mix issue?

16         MR. TABACHNIK:  They're really part of -- they're

17 really all part of the same, right.  The tenant mix goes to use

18 of the premises and whether or not the proposed tenant is going

19 to comply with the restrictions that are contained not only in

20 the use -- permitted uses that are contained in the lease as to

21 what they are but the prohibited uses that tie into the other

22 20 or 25 leases from the other tenants in the property so that

23 the tenant coming in doesn't throw the landlord into default or

24 out of compliance with the leases he has to comply -- abide

25 with with his other tenants.

44

1           So that goes to adequate assurance because it says,

2    we're asking them to say they're going to comply with the

3    prohibited use provisions contained in the lease which also

4    needs to respect the uses of the other tenants and the

5    property.  I mean it --

6           THE COURT:  It sounds like you're in the mix

7    category, though, too.

8           MR. USATINE:  Yeah.  He's in the mix category.

9    You're right.  It's exclusives, it's use restrictions, it's

10   that -- when I say adequate assurance as a separate category,

11   we're talking about the financial wherewithal.

12          THE COURT:  Financial.

13          MR. TABACHNIK:  Well, we were also looking for

14   information on that.  We haven't really gotten that.  But, yes,

15   they're kind of like it's separate.  That's true; I agree.  By

16   the way --

17          THE COURT:  No, but --

18          MR. TABACHNIK:  -- to my view of thinking, the mix

19   issue is probably something, just thinking off the top of my

20   head here, but I don't know that we need evidentiary hearings

21   on that.  That's the kind of thing that could probably be

22   resolved in a conference.  This is what we've got, this is what

23   we have to deal with, are they going to comply, can they

24   comply.  That's not something that I think you need to really

25   encumber an evidentiary hearing on.  It's really more of

1  something sitting down at a table and going through the chart.

2       THE COURT:  Well, I think what's being proposed is to

3  sit down at the table and go through it and try to reach an

4  agreement.  But from what I heard as to the Michaels and

5  similar issues is that there's, according to Mr. LeHane,

6  different views and different circuits, different facts that

7  are being put in, competing certifications that are being put

8  in, and no law in the Third Circuit.  So they want an

9  evidentiary hearing on it.  And if they want an evidentiary

10 hearing on it, I think they're entitled to it if there are

11 disputed facts that need to be addressed.

12      So I agree with you it would be very nice to try to

13 resolve them at a table.  And it was very clear to me that that

14 is going to continue on that path as well as the path of

15 potentially not resolving it.  And it may be resolved to cure

16 and the financial adequate assurance, but you can't resolve the

17 tenant mix, so then that still means it goes with the whole

18 tenant mix category and issues that should be resolved

19 together.  I should be consistent about it.  So --

20      MR. USATINE:  With the only caveat, Your Honor, that

21 if the landlord wants to have their tenant mix related issues

22 heard on Mr. LeHane's schedule, they have to do what

23 Mr. LeHane's clients are doing which is waive August rent.  And

24 if they're not willing to do that, then you're going to hear

25 from us that we need to have it heard on the 24th because we

1  have no choice.

2          THE COURT:  All right.  Well, they don't have

3  authority to do that right now.  And I'm not sure --

4          MR. USATINE:  Yeah.  We're going to keep speaking

5  with them and hopefully they will have authority to do that.

6          THE COURT:  Yeah.

7          MR. TABACHNIK:  Yeah.  But what we can't do is have a

8  schedule hold us -- have that be held hostage to travel plans

9  that we can't change.  That's just -- we didn't choose that we

10 couldn't do it today.  That wasn't our choice.  We were ready

11 to go.

12         THE COURT:  I try to be as fair and reasonable as I

13 can with scheduling.  Mr. Tabachnik, and you say you're not

14 available on the 24th.  We'll deal with it and we'll --

15         MR. USATINE:  Or we'll go right now.

16         THE COURT:  No.  We're not ready to go.

17         MR. USATINE:  I mean if Mr. Tabachnik can't make the

18 24th, he --

19         THE COURT:  Well, I said we weren't going right now.

20         MR. USATINE:  Okay.

21         THE COURT:  So we're not going right now.  And

22 anyway, it sounds like it's a tenant mix issue, so --

23         MR. GROSS:  I just wanted to clarify for Mr. Usatine

24 that August -- we want to discuss scheduling afterwards.

25 August 1st does not work for our client as a hearing date.

1              THE COURT:  What was that, Mr. Gross?

2              MR. GROSS:  August 1st does not work, just that

3  particular date.  I know Mr. Usatine said August 1st.  I just

4  wanted to be clear we need to discuss scheduling after the

5  hearing.

6              MR. USATINE:  It doesn't have to be the 1st,

7  (indiscernible).

8              THE COURT:  Okay.

9              MR. USATINE:  As long as your clients are willing to

10 waive August rent, it doesn't have to be the 1st.

11             MR. GROSS:  You're talking -- I'm representing the

12 assignee.

13             MR. USATINE:  I'm sorry.  As long as the landlord

14 whose store is affected by your --

15             MR. GROSS:  Right.  Our dispute, the landlord is

16 willing to waive.  Correct.

17             MR. USATINE:  That goes for anybody else.

18             THE COURT:  I think that -- isn't that issue resolved

19 as between you and Mr. LeHane's client?

20             MR. GROSS:  Yeah.  I was just talking about the date.

21 I want to make sure that we haven't agreed on a hearing date

22 yet.  That's all.

23             THE COURT:  All right.  So Mr. Bruck has his hand up.

24             MR. BRUCK:  Yes.  Good afternoon, Your Honor.

25             So I have two landlords, and my point was just to

1  confirm that -- one of them is the Almaden Plaza Shopping

2  Center.  And just to confirm that there is a lease termination

3  assignment that the terms of which have been agreed to by the

4  debtor and my client and that we'll be submitting signed

5  documents within the next day or so.

6          The other landlord that I have is a client called

7  Triple B Viejo, and it has a Bed Bath store in San Jose.  We

8  have filed an objection to the cure amount.  But this

9  particular landlord is part of the Phase II sale, so I am just

10 confirming that that is not one of the objections which will be

11 heard on the 24th.

12         THE COURT:  My understanding is that's correct, Mr.

13 Bruck.

14         MR. BRUCK:  Thank you, Your Honor.

15         THE COURT:  And debtors' counsel are nodding their

16 heads, so.

17         MR. FIEDLER:  Correct, Your Honor.

18         MR. BRUCK:  Great, thank you.

19         THE COURT:  All right.  Mr. Abramowitz?  You see why

20 we couldn't do an evidentiary hearing today?  And there's too

21 many things to deal with on just even on scheduling, so okay.

22         Mr. Abramowitz?

23         MR. ABRAMOWITZ:  (No audible response).

24         THE COURT:  Mr. Abramowitz?  It looks like you have

25 yourself muted.

1          You know what, while Mr. Abramowitz is figuring out

2     his microphone, another person has their hand up.  Mr. Lavant?

3          MR. LAVANT:  Good afternoon, Your Honor.

4          William J. Lavant.  I have two objections pending for

5     different clients, but they are both related to what appear to

6     be computational errors in the cure figures.  And I wanted the

7     debtors' counsel to confirm to me that one of them which is for

8     Main Street at Exton II, filed as Document 1047, isn't going to

9     be addressed today.  I believe it's being held for the second

10    auction.  Is that correct?

11         MR. FIEDLER:  That's not being addressed today.  I'm

12    not certain about whether it's going forward with an auction,

13    but it's not being addressed today, Your Honor.

14         THE COURT:  Yeah, it's definitely not being addressed

15    today.  That I know.  But --

16         MR. LAVANT:  That's excellent.  If I may ask very

17    quickly about the other one.  It is for Paramount Consumer

18    Centre 1 through 7 except for (indiscernible).  I have no idea

19    how these get that way, but that is one where my client did the

20    cure figure plus 100,000 and we have been having trouble trying

21    to reconcile the number.

22         In fact, right before I got on this call, I traded

23    emails with Mr. Park at Cole Schotz and I hope to have that

24    resolved.  I wondered if debtors' counsel had any further

25    updates.

1            MR. BASS:  Your Honor, David Bass, Cole Schotz, for

2  the record.

3            That is among the uncontested matters today.  That is

4  going forward as a lease termination agreement.  I believe we

5  have a signed agreement with the West Long Branch landlord, a

6  whole bunch of folks that Mr. Lavant just mentioned.  And I'll

7  be in coordination with him after this hearing because I was

8  under the impression we are terminating the lease so really the

9  cure issue would be moot.

10           But I'll make sure that we're all in agreement that

11 they're acquiring the debtors' interest in the lease and that

12 one will be submitted as an order approving a lease termination

13 agreement.

14           MR. LAVANT:  I probably shouldn't say this, but I

15 think my client owes about $66,000 because the guys from A&G

16 convinced them to bid 100,000 plus the arrears.  And if you

17 netted out, it comes out to about $66,000.

18           THE COURT:  But I'm not sure what we're doing here.

19           MR. LAVANT:  It is a lease termination.

20           THE COURT:  That's a discussion you need to have with

21 Mr. Bass or --

22           MR. LAVANT:  Yeah.  I'm just trying to spur it along

23 because it strikes me as being a simple matter of arithmetic,

24 but I think I've gotten what I want.  Yes, it is a landlord by

25 back of the leasehold.

1          MR. FIEDLER:  Your Honor, we're happy to address that

2     after the hearing.

3          THE COURT:  Yeah.  It's just not --

4          MR. FIEDLER:  The additional money coming into the

5     estate will pay for the extra time we're spending right now --

6          THE COURT:  Yeah, right.

7          MR. FIEDLER:  -- on issues that could be pushed over.

8          THE COURT:  Well, we're not going to get into the

9     nitty-gritty of the negotiations at this hearing, so.

10          MR. LAVANT:  Very well.  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          All right.  Now Mr. Abramowitz is no longer here, so

13     I'm not sure what happened.  Maybe he didn't need to speak

14     anymore.

15          But can I just ask someone, can you just call him,

16     Mr. Bass?  Do you know Arthur's number, just to call him

17     because I feel badly he was not -- and anyway, Ms. Solomon is

18     raising her hand.

19          Ms. Solomon?

20          MS. SOLOMON:  Thank you, Your Honor.

21          This is Lisa Solomon on behalf of DC USA Operating

22     Co.  My client has filed an objection.  They're a landlord.

23     And their objection can be found at Docket Number 1295.

24          The objection has been subject of some discussions

25     with debtors' counsel, and we are proceeding to work out some

52

1  of the issues.  One issue that remains open, Your Honor, is an

2  issue with regard to other tenants in the shopping center and

3  the effect that the proposed assignment and assumption will

4  have upon the landlord and the landlord's obligations to those

5  other tenants.

6          And I wanted to get clarification because there's

7  been discussion back and forth at the conference today with

8  regard to what's proposed to be heard on the 24th versus some

9  matters that are going to be heard on the 1st or thereafter.

10 And --

11         THE COURT:  So I'm sorry, go ahead, Ms. Solomon.

12         MS. SOLOMON:  Well, whether this -- it's a legal

13 issue and whether it's proposed that it will be heard on the

14 24th or whether it's being proposed to be heard at some later

15 time.  I think it's part of the adequate assurance.  It goes to

16 the issue of the use of the premises and compliance with the

17 terms of the lease as well as the harm that will befall my

18 client if an assignment and assumption is approved to an entity

19 and the entity here is one of the Burlington entities, if that

20 will put my client in default with regard to its obligations to

21 other tenants in the same shopping center.

22         THE COURT:  Well, it sounds like, Ms. Solomon, the

23 way I understood it and I'm looking to debtors' counsel to

24 confirm, is that what's going forward on the 24th is cure

25 objections and adequate assurance of future performance based

1  on finances, not based on tenant mix.  and it sounds pretty

2  clearly like your issue is based on tenant mix.  So that's not

3  going forward on Monday, the 24th.

4           Is that correct, Counsel?

5           MR. USATINE:  That's correct.  And I was going to --

6  when I was approaching the podium before was to summarize just

7  that.  So that's for the 24th.  It's only financial adequate

8  assurance issues and cure.  Anything mix, exclusivity, use

9  restriction related, even if they have the other objections

10 attached to them, we're going to try to find a later date.  It

11 can be August 1st or a different date in August if all

12 landlords are willing to waive the August rent.

13          What I was going to approach to put on the radar,

14 Your Honor, is if we're going to hear from whether it's

15 Mr. Tabachnik's client or others that say we're not willing to

16 waive August rent, then I think we may need to have those

17 issues heard in July, right, whether it's the 28th, 31st.  I

18 mean we don't have the ability to put those issues over and

19 then expose the estate to an August 1st rent payment --

20          THE COURT:  Okay.

21          MR. USATINE:  -- for reasons that Your Honor have

22 already observed, so.

23          THE COURT:  All right.

24          MR. USATINE:  So we're going to work with the

25 landlords and see if we can get that same concession that Mr.

1  LeHane's clients have proposed.  It certainly allows us to

2  present these issues in a much more orderly way.  But if we

3  can't, then we can't.

4          THE COURT:  Well, maybe I can help.  Mr. Filgueiras,

5  on the week of August -- well, it's really July 31st and August

6  1st, 2nd, 3rd, and 4th, do we have any of those -- I think that

7  we don't have the trial days that week.  Is that right?

8          THE CLERK:  That's correct.  You have Wednesday

9  available.

10         THE COURT:  Wednesday is available?

11         THE CLERK:  The 2nd, yeah.

12         THE COURT:  Yeah.  And what I would say is if the

13 parties are in a position to get it done, which it sounds like

14 they're going to be, we'll get it done that first week in

15 August.  So we're talking about -- wait, I'm sorry.  It's four

16 days in August we're talking about.

17         MR. USATINE:  And we will be out of the locations as

18 of the 31st.  So it's not like we're still going to be

19 occupying.

20         MR. BASS:  And, Your Honor, if I may, considering the

21 practical implications, if a landlord opposed the assignment

22 based on those issues and won, the lease would be rejected and

23 they would not be getting any August rent.  The only other

24 possible outcome, though, is in some of the cases there may be

25 a backup bidder and then it's an issue of whether or not the

1 backup bidder is acceptable.

2 　　　　But if you are fighting this and there's no backup

3 bidder, then for all practical purposes, the lease would be

4 rejected and you would get no rent anyways, which is one of the

5 reasons why I think it's more than eminently reasonable for

6 landlords to waive the August rent, especially in the absence

7 of a backup bidder.

8 　　　　THE COURT:  Actually, I hadn't thought of that, but

9 that's also correct.  But it's de minimis anyway.  It's going

10 to be de minimis, so I certainly encourage the parties to try

11 to get past that.  And, like I said, I'm committed to getting

12 it resolved the week of, really it's the week of July 31st, but

13 by August 4th.  So today is July 18th.  I mean we're talking

14 about a couple -- a little bit more than a couple of weeks.

15 That's pretty expedited if you ask me.

16 　　　　So let's all be reasonable and get this done with the

17 least amount of kind of side issues as we can and focus on the

18 merits and get it done as quickly as we can.  That would be my

19 recommendation, my strong recommendation.  And Ms. Solomon

20 appears to have her hand up again.  Is that right, Ms. Solomon?

21 　　　　MS. SOLOMON:  I'm sorry, Your Honor.  I didn't catch

22 that.

23 　　　　THE COURT:  Yes.  Okay.  All right.  So, Mr. Bass,

24 did you hear from Mr. Abramowitz?

25 　　　　MR. BASS:  I did speak with Mr. Abramowitz.  I don't

 1 know if he had cut off before Mr. Usatine had raised the issue

 2 of using Monday for only -- for non-mix issues.  He represents

 3 one of the proposed assignees, the PGA, I don't remember the

 4 exact name for that entity.  But that is subject to an

 5 objection from Mr. Bodner's client.  It's a mix issue.

 6        And so he just wanted to make sure if we were

 7 proceeding on those particular issues, which we're not, that we

 8 file a list identifying them on Thursday.

 9        THE COURT:  Okay.

10        MR. BASS:  But it's a moot issue.

11        THE COURT:  Okay.  Great.

12        And, Ms. Solomon, I'm sorry, did you say you

13 retracted your hand because it's still up?

14        MS. SOLOMON:  Oh, Your Honor, I apologize for that.

15        THE COURT:  Okay.  All right.  So that leaves us with

16 the sale hearing with respect to the Phase I Leases that are

17 not objected to.  Is that right?

18        MR. FIEDLER:  We're finally there, Your Honor.

19        THE COURT:  That was easy.

20                    (Laughter)

21        MR. FIEDLER:  So I think what we would propose, I

22 mean those are uncontested.  If other parties would like to be

23 heard, I'll defer to Your Honor.  But unless Your Honor has any

24 questions, we're going to submit some orders to Your Honor's

25 chambers to be approved right after the hearing for all of the

1  --

2          THE COURT:  I'll take that subtlety.

3          MR. FIEDLER:  Okay.

4          THE COURT:  And I will get it done as soon as it

5  comes in.  Is there anyone else that wishes to be heard?

6                    (No audible response)

7          THE COURT:  All right.  Certainly, it's clear that to

8  the extent people have objections, they have been raised and

9  are being dealt with.  The people that don't have objections

10  are maybe not happy but are okay with the proposed assignments.

11  And there's certainly more than sufficient evidence in the

12  record to support the assumptions and the assignments as proper

13  exercises of business judgment, properly noticed, properly

14  marketed, so they will be approved and the order entered today.

15          MR. FIEDLER:  Thank you, Your Honor.  I appreciate

16  it.

17          THE COURT:  Okay.

18          All right.  I think that's it.  It sounds like

19  there's a housekeeping matter.

20          MR. FIEDLER:  Just we previewed the consensual plan

21  that we'll be filing either today or tomorrow and the request

22  for August 1st or some date that works for Your Honor around

23  then.  I just wanted to ask Your Honor if you had any questions

24  about that or if we're fine to leave that where it is.

25          THE COURT:  So here's the way I view those.  You're

1  talking about a motion on short notice for conditional approval

2  of a combined disclosure statement and plan.  Is that --

3          MR. FIEDLER:  That's correct, Your Honor.

4          THE COURT:  -- what's on tap?

5          MR. FIEDLER:  Yeah.

6          THE COURT:  So the way I see that is that although

7  perhaps not expressly provided for in the Bankruptcy Code, it's

8  something that can be done.  And I see the kind of period

9  between when the disclosure statement and plan are filed and

10 when that first hearing is as an opportunity to object to the

11 adequacy of the disclosure in any event.

12         And so I don't mind giving a little bit of time for

13 that.  And the time period that you're suggesting, so today is

14 the 18th and you're suggesting a hearing on August 1st which

15 would be exactly two weeks.  And that's I think with this group

16 of sophisticated and experienced counsel is plenty of time to

17 address those kind of objections.

18         But I do consider adequacy -- what I'm saying to you

19 is that I do consider the adequacy of the disclosure at that

20 time, as well.  And if past is prologue, I've asked that the

21 disclosure statement be amended to the extent appropriate if

22 there's legitimate disclosure type objections.

23         MR. FIEDLER:  Understood, Your Honor.

24         THE COURT:  All right.

25         All right.  So there we are.  I think we're finished,

1 and again thanks for everyone who is here and on the phone.

2 You know what, I'm just thinking of something.  We are going

3 forward on the 24th.  And I told you earlier that I will not be

4 here on the 24th.

5          MR. FIEDLER:  Right.

6          THE COURT:  So the thought is that -- I will do it

7 remotely, but the thought is that I would be able to decide all

8 those issues, cure and/or financial adequate assurance on the

9 papers and argument.

10          MR. FIEDLER:  Correct, Your Honor.  And even for the

11 tenant mix, I think as you've heard from a number of landlords,

12 these are really just legal issues, but all of which we can

13 decide on the papers.

14          THE COURT:  All right.  But I thought we had clarity

15 on that.

16          MR. FIEDLER:  Yeah.

17                    (Laughter)

18          THE COURT:  Don't mix that up because you just agreed

19 with Mr. Tabachnik.

20          MR. FIEDLER:  But, yes, on Monday we can go forward

21 on the papers, yes.

22          THE COURT:  But not on tenant mix.

23          MR. FIEDLER:  Not on tenant mix.

24          THE COURT:  And even if it includes cure and adequate

25 assurance, we're not going forward on it because it also

60

1  includes tenant mix.

2          MR. FIEDLER:  Correct.

3          THE COURT:  We have clarity, I hope.

4          All right.  Thanks very much.

5          MR. FIEDLER:  Great.  Thank you, Your Honor.

6          THE COURT:  Thanks very much.  We'll see you on

7  Monday.

8              (Proceedings adjourned at 4:18 p.m.)

9                        * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T I O N**

I, DIPTI PATEL, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Dipti Patel

DIPTI PATEL, CET-997

J&J COURT TRANSCRIBERS, INC.      DATE:  July 20, 2023