# EXHIBIT "A"

## AGREEMENT OF LEASE

AGREEMENT OF LEASE made as of this 21st day of September, 1984, between FARLEY REALTY CORP., a New Jersey corporation, having an office at ~~161 Brighton Avenue, Long Branch~~ 39 Glenbrook Road, New Providence, New Jersey 07974 (hereinafter called "Landlord"); and BED 'N BATH OF SHORT HILLS, INC., a New Jersey corporation in formation, having an office at 770 Morris Turnpike, Short Hills, New Jersey 07078 (hereinafter called "Tenant").

### W I T N E S S E T H :

For and in consideration of the covenants herein contained, and upon the terms and conditions herein set forth, Landlord and Tenant agree as follows:

1. DESCRIPTION. Landlord hereby leases to Tenant, and Tenant hereby hires from Landlord, the following space: Approximately 20,353 gross rentable square feet (hereinafter called "Demised Premises"), as shown on the plan or plans, initialed by the parties hereto, marked Exhibit A attached hereto and made part of this lease in the single story building located at 679 Morris Avenue, Springfield, New Jersey (hereinafter called the "Building") which is situated on that certain parcel of land (hereinafter called "Building Area") as described on Exhibit A-1 attached hereto and made part of this lease, together with the right to use in common with other tenants of the Building, their invitees, customers and employees, the Common Facilities as hereinafter defined (the Demised Premises and the right to use the Common Facilities hereinafter referred to as the "Premises"). The Building contains approximately 47,640 gross rentable square feet and as of this date the ratio of the Demised Premises to the total rentable space within the Building or 42.7(%) percent is hereinafter referred to as the Tenant's "Proportionate Share". In the event of any casualty or condemnation

reducing the Building or in the event of any increase in Building size (said increase being approved by Tenant) then the Proportionate Share shall be recalculated to reflect the ratio of the Demised Premises to the Building. "Common Facilities" shall mean all parking spaces now existing or hereafter created on the Building Area (herein "Parking Spaces") those means of ingress and egress, all other general Building facilities that service all Building tenants and the roof.

2.    DELIVERY OF POSSESSION.    Landlord agrees to deliver possession of the Demised Premises to Tenant on November 1, 1984. Landlord shall deliver possession of the Demised Premises in a condition that is "AS IS" on the date hereof, and "broom-clean" and free of all Huffman-Koos' (the current tenant) fixtures and partitions, except that the Mezzanine and stairway presently in place shall not be removed and Tenant may elect to have such other partitions to otherwise be removed by Huffman-Koos remain as Tenant designates provided, however, that if Tenant and Huffman Koos agree in writing, prior to commencement of the term hereof, as to the removal of such items, then Landlord shall have no obligation to remove any of Huffman Koos's fixtures and/or partitions. Landlord warrants that, when possession is delivered to Tenant, the structure, heating, air-conditioning, lighting, electrical, plumbing, sewer and other systems and fixtures of the Building serving or affecting the use of the Demised Premises will be leak free and in good condition and working order; and there will be sufficient utilities available, including, but not limited to, gas, water and electricity to adequately heat, light, power, ventilate and air-condition the Demised Premises. If there shall be, between the date hereof and November 1, 1984, any damage to or deterioration in or alteration of the condition of the Demised Premises or with respect to the specific requirements of this Article 2, or any breach of the warranties or failure to obtain the approvals or satisfy any other of the conditions specified in this Article 2

unless consented to or waived by Tenant, in writing, or if the Huffman-Koos shall not have vacated the Premises, Tenant may refuse delivery of possession of the Demised Premises until the condition thereof shall comply fully with all of the terms and conditions set forth in this Article 2. Tenant shall have the right to inspect the Demised Premises at any time following execution hereof for the purpose of determining which items are required to be repaired, replaced or remedied in order for Landlord to be in compliance with the representations set forth in this Paragraph 2, and submitting a punch list to Landlord with respect thereto. Prior to the commencement of the term, Tenant shall have the right to inspect the Demised Premises and submit a second punch list to Landlord setting forth all items not complied with from the first punch list, and any other matters which Landlord must repair, replace or remedy in order to comply with this Paragraph 2 and which matters arose since the submission of the first punch list. Tenant shall not be obliged to take possession of the Demised Premises until the matters set forth in both punch lists have been complied with Landlord.

3.  **TERM OF LEASE.** (a)  The term of this lease shall commence on November 1, 1984 or the date Landlord shall deliver possession of the Demised Premises to Tenant in accordance with Article 2 of this lease, and the term shall expire on the last day of January, 2005, subject, however, to the other provisions of this Article.

(b)  Notwithstanding the provisions of paragraph (a) of this Article, the obligation of Tenant to pay rent shall commence on a date 120 days from the date the Landlord has delivered possession as provided in Article 2 of this lease, or the date Tenant has opened for business, whichever is earlier (hereinafter called the "Rent Commencement Date").

(c)  If delivery of possession does not occur on November 1, 1984, the date set forth in paragraph (a) for the expiration of the term

of this lease shall be adjusted to a date which shall be the twentieth (20th) anniversary of the Rent Commencement Date. Promptly upon determining the Rent Commencement Date and the date of expiration of the lease, Landlord and Tenant agree to execute and deliver a certificate, in recordable form, setting forth such Rent Commencement Date and such date of expiration of the term of the lease.

(d)  If Landlord shall fail to deliver possession of the Demised Premises to Tenant on or before April 15, 1985, Tenant may elect to terminate this lease by giving notice to Landlord of such election within the period of 30 days after such date and, upon giving such notice, this lease shall cease and terminate.

4.  EXPENSES PRIOR TO RENT COMMENCEMENT DATE.  Tenant shall pay all charges required to be paid hereunder during the period from the delivery of possession until the Rent Commencement Date, it nonetheless being understood, notwithstanding the foregoing, that Tenant shall not be obligated for any fixed rent or real estate tax during said period.

5.  COVENANT TO PAY RENT.  Tenant agrees to pay to Landlord, in equal monthly installments in advance on the first day of each calendar month at the address of Landlord as hereinabove set forth or such other address as Landlord may designate, annual fixed rental as follows:

| Lease Years | Annual Rent |
|---|---|
| 1-5 | $124,200.00 |
| 6-10 | $142,830.00 |
| 11-15 | $164,255.00 |
| 16-Expiration of Lease Term | $199,893.00 |

The term lease year shall mean each period of twelve full consecutive calendar months commencing on the date of delivery of possession and terminating midnight of the day immediately preceding the first anniversary of the date of delivery of possession and each

succeeding twelve (12) month period thereafter. If the Rent Commencement Date shall commence on a date other than the first day of a month, the fixed rent for such fractional month shall be pro-rated and paid on the Rent Commencement Date. Notwithstanding the foregoing, Tenant shall receive a credit of $66,185.00 as a credit against the first fixed rent payments due hereunder as consideration for Tenant agreeing to install a new roof on the Building.

6. **ASSIGNMENT AND SUBLETTING.** Tenant may, at any time, assign this lease or sublet the Demised Premises or any part thereof, but only for retail or commercial purposes, and in no event for a use which is primarily warehousing. Notwithstanding the foregoing, no assignment hereunder shall be effective unless the assignee executes and delivers to Landlord an agreement specifically assuming the obligations of Tenant hereunder.

7. **TAXES.** (a) Tenant shall pay to Landlord each quarter, as additional rent, its Proportionate Share of all real estate taxes, assessments, sewer rates and water charges, as shall be imposed, assessed, levied, or which became a charge or lien upon the Premises within twenty (20) days after Landlord has rendered proper bills therefor, or not more than twenty (20) days in advance of the due date, whichever is later.

(b) Notwithstanding the provisions of Paragraph (a) of this Article, the term Taxes and the obligation of Tenant to pay Taxes shall not include any municipal, state or federal income taxes assessed against Landlord, or any municipal, state or federal capital levy, estate, succession, inheritance, or transfer taxes of Landlord, or any franchise taxes imposed upon any corporation, or any income, profits or revenue tax, assessment or charge imposed upon the rent received by Landlord under this lease. However, Taxes shall include those income or profit taxes (other than personal income taxes) levied against the Property in

substitution for or in lieu of a current tax.

(c)    All Taxes that become payable for the first and last tax years during the lease term shall be apportioned between Landlord and Tenant in such manner that Tenant shall only be obligated to pay its Proportionate Share of Taxes during, and with respect to, the lease term.

(d)    The Tenant shall, at its own cost and expense, have the right to appeal to the proper municipal authorities any such tax levied upon all or any portion of the Premises and any such reduction shall, after Tenant deducts its reasonable costs to include attorneys' fees to be allocated to Tenant in an amount equal to its Proportionate Share with the balance being allocated to Landlord. Landlord agrees to cooperate with Tenant in any such appeal, and execute any documents required in connection therewith. Tenant shall, during the pending of such proceedings, pay so much of the taxes which are being appealed as to prevent a lien be in placed upon the Demised Premises by the municipal taxing authority.

(e)    Notwithstanding anything contained herein to the contrary, to the extent any tenant's installation results in a disproportionate increase in the real estate taxes assessed against the Premises said increase shall be the obligation of the tenant whose installation occasioned said increase.

8.    PARTITIONS AND FIXTURES. Any and all alterations, additions, improvements and fixtures (other than the usual trade fixtures) which may be made or installed by either the Landlord or the Tenant upon the Demised Premises and which in any manner are attached to the floors, walls or ceilings (including without limitation any linoleum or other floor covering of similar character which may be cemented or otherwise adhesively affixed to the floor) shall remain upon the Demised Premises and at the termination of this lease shall be surrendered with the Demised Premises as a part thereof without disturbance, molestation

alterations, additions, improvements and fixtures shall be deemed Tenant's property during the term of the Lease.

9.  SIGNS.  Tenant may erect, at its expense, which shall be subject only to the requirements of applicable municipal laws, ordinances and regulations, a pylon for use by Tenant in conjunction with its operations in the Demised Premises.  The location, dimension, design and all other matters relating to such pylon shall be in the sole discretion of Tenant.  Tenant may, at its expense, erect signs on the Demised Premises subject only to requirements of applicable governmental laws, ordinances and regulations which are to be complied with by Tenant at its expense.  Landlord agrees to cooperate with Tenant in respect of obtaining the approval of any governmental authorities and, if necessary, to execute and deliver any applications required by such governmental authorities for permits to construct and maintain such signs.

10.  REPAIRS, ALTERATIONS AND ADDITIONS.  Tenant agrees, at its expense, to keep the Demised Premises in good working order, condition and repair, and to make all necessary repairs and replacements in respect of the Demised Premises, including structural repairs.  Tenant shall have the right to make, at its expense, all additions, alterations and repairs to the Demised Premises as Tenant shall deem desirable for the conduct of its business, provided that in the case of structural alterations, Tenant first obtains the approval of Landlord, which approval Landlord agrees not to unreasonably withhold or delay.  Upon vacating the Demised Premises, Tenant may, but shall not be obligated to, remove any additions or alterations which have been placed by Tenant in or upon the Demised Premises.  Landlord will apply for, or join with Tenant in applying for, all necessary permits to be obtained from governmental authorities for any work to be performed by Tenant in or to the Demised Premises and will promptly execute such consents and

alterations as such over the term hereof as it may require. Tenant agrees that all alterations, additions and repairs in and to the Demised Premises shall be made in accordance with all requirements of law and legal regulations and in such manner as not to weaken the structure of the Demised Premises or Premises.

Without limiting the foregoing, Landlord hereby approves the installation by Tenant in the side of the Building facing Morris Turnpike of windows in the number and size as Tenant shall deem desirable, subject to the last sentence of the foregoing paragraph. Also without limiting the foregoing, Tenant shall also have the right to have constructed and installed in the Building a (i) wall dividing the Demised Premises from the remainder of the Building; and (ii) a vestibule, and shall be reimbursed by Landlord for fifty (50%) percent of the costs thereof upon a tenant occupying the space adjacent to the Demised Premises.

Tenant shall cause all Common Facilities' repairs to be made and Tenant shall pay its Proportionate Share of all repairs to the Common Facilities. Landlord shall reimburse Tenant to the extent Tenant has incurred expenses in connection with repairs to the Common Facilities in excess of its Proportionate Share.

11.   UTILITIES.   Landlord shall not be obligated to pay for water, gas, electricity or other utilities used or consumed by Tenant in the Demised Premises.

Tenant shall have, and Landlord hereby grants Tenant, the right to elect to install and operate water, gas, electricity and other utility systems that shall service only the Demised Premises, or to otherwise separate service to the Demised Premises from any water, gas, electricity or other utility system serving the Premises. In the event Tenant so elects, it shall be obligated to pay only those utility charges serving the Demised Premises pursuant to such installation or separation

in accordance with contracts or arrangements made with respect thereto by Tenant with the utility providing the respective separate service. Tenant may elect to receive separate service with respect to one or all of the aforementioned or other utility services serving the Premises. In the event Tenant does not so elect, Tenant shall pay water, gas, electricity and all other utility charges for all service provided to the Premises until such time as any portion of the Premises other than the Demised Premises shall have been rented to any person other than Tenant. In such latter event, Tenant and such other tenant may agree concerning the allocation between them of water, gas or other utility charges to take effect upon the delivery of possession to such other person of that portion of the Premises demised thereto or a reasonable time thereafter. In the event Tenant and such other person cannot agree to such allocation with respect to every utility service, Tenant shall, to the extent possible, install separate systems or separate its system from that serving the remainder of the Building for all utility services with respect to which no allocation agreement has been reached as if Tenant had elected to do so pursuant to the first sentence of this paragraph, or alternatively, at its option cause consumption to be measured by survey conducted by an engineer (or engineers) acceptable to Tenant and all parties sharing such service whose decision shall be final and binding. If all such parties cannot agree on any such engineer, the American Arbitration Association in the closest location to the Premises may be asked by any party to designate such an engineer. Landlord shall require any other tenant to agree to permit a survey of any in-common service. At such time as Tenant, in its sole discretion shall decide that any agreement concerning the allocation or joint separation of any particular utility service is not being adhered to satisfactorily or is impracticable and a new or modified arrangement cannot be agreed upon, Tenant may install a separate system or otherwise separate service with respect to that utility to the effect

that only the Demised Premises shall be served thereby or elect to survey said utility as provided above.

12.   COMPLIANCE WITH LAWS.   Landlord agrees that, upon the date possession is delivered to Tenant, the Demised Premises shall be fit and suitable for occupancy by Tenant for the use contemplated by this lease and shall comply with all statutes, laws, ordinances, rules, orders, regulations and requirements of federal, state and municipal governments and agencies having jurisdiction (hereinafter called "Requirements of Law") and Tenant shall not be required to take any action or make any expenditure to effect such compliance.   After delivery of possession, Tenant shall, at its expense, comply with all Requirements of Law applicable to the Demised Premises, provided the necessity for such compliance results from the use and occupancy of the Demised Premises by Tenant.   Tenant shall have the right, upon giving notice to Landlord, to contest any obligations imposed upon Tenant pursuant to the provision of this Article, and to defer compliance during pendency of such contest, provided that the failure of Tenant to so comply will not subject Landlord to prosecution or criminal penalty.   Landlord agrees to comply with all Requirements of Law except those requirements of Law which Tenant is obligated to comply with pursuant to the provisions of this Article.

Tenant shall be obligated to arrange and provide for the removal of snow from the Premises and landscaping.   Landlord hereby represents and warrants to Tenant that it has not received any notices of violations of Requirements of Law, that it is not aware of any structural defects in the Building (exclusive of the roof), and that it has not received any notices of violations of the requirements of any insurance company affecting the Building.   This representation and warranty shall be deemed in effect as of the date of execution of this Lease and as of the commencement of the term of this Lease.

13.   LIABILITY INSURANCE.   (a)   Tenant shall maintain in respect of the Demised Premises and Common Facilities public liability insurance with excess coverage to limits of at least $5,000,000.00 combined single limits, in responsible companies qualified to do business in the State of New Jersey, insuring Tenant and Landlord as an additional insured, against injury to persons or damage to property as aforesaid.

(b)   Tenant shall deposit with Landlord certificates of insurance to be carried by Tenant as aforesaid on or before the date of delivery of possession and, thereafter, replacement policies within ten (10) days prior to the expiration of such insurance.   Tenant shall have the right to maintain such insurance under a blanket insurance policy or policies which policy or policies can cover other property or parts thereof owned, leased or operated by Tenant or affiliates of Tenant, as well as the Demised Premises.   All such policies shall provide no less than ten (10) days notice of cancellation to Landlord.

14.   PLATE GLASS.   Tenant shall replace, at its expense, any and all plate and other glass damaged or broken from any cause whatsoever in the Demised Premises.

15.   FIRE AND OTHER CASUALTY.   (a)   Landlord shall keep the Premises insured against loss by fire, with extended coverage to the full insurable value of the Premises (excluding the land underlying the Premises, foundations and footings, and those portions of the Premises below the surface of such land not insurable pursuant to a standard fire insurance policy, but without making any allowance for depreciation), under a policy or policies written by a responsible insurance company or by responsible insurance companies authorized to do business in the State of New Jersey, which policy or policies shall provide that payment of any loss or losses covered by such policy or policies shall be made to Landlord.

(b)   Tenant shall pay to Landlord its Proportionate Share

of the expense of such insurance within thirty (30) days after receipt of a proper bill therefor, but not more than 20 days in advance of the due date. Notwithstanding anything contained herein to the contrary, to the extent any tenant's installation or use affects a disproportionate increase in said insurance rate, said disproportionate increase shall be the obligation of the tenant whose installation or use occasioned said increase.

(c) Each insurance policy carried by Landlord insuring the Premises against loss by fire and causes covered by standard extended coverage, and each insurance policy carried by Tenant and insuring the Demised Premises and its fixtures and contents against loss by fire, water and causes covered by standard extended coverage, shall be written in a manner so as to provide that the insurance company waives all right of recovery by way of subrogation against Landlord or Tenant in connection with any loss or damage covered by such policies. Neither party shall be liable to the other for any loss or damage caused by fire, water or any of the risks enumerated in standard extended coverage insurance, provided such insurance was obtainable at the time of such loss or damage. However, if such insurance policies cannot be obtained, or are obtainable only by the payment of an additional premium charge above that charged by companies carrying such insurance without such waiver of subrogation, the party undertaking to carry such insurance shall notify the other party of such fact and such other party shall have a period of ten (10) days after the giving of such notice either to (a) place such insurance in companies which are reasonably satisfactory to the other party and will carry such insurance with waiver of such subrogation, or (b) agree to pay such additional premium if such policy is obtainable at additional cost; and if neither (a) nor (b) is done, this paragraph shall be null and void for so long as either such insurance cannot be obtained or the party in whose favor a waiver of subrogation is desired shall refuse to pay the additional premium charge. If the release of either Landlord or Tenant, as set

forth in the second sentence of the paragraph, shall contravene any law
with respect to exculpatory agreements, the liability of the party in
question shall be deemed not released but shall be deemed secondary to
the latter's insurer.

(d)   Except as provided in subparagraphs (f) and (g)
hereof, in the event of total or partial destruction of, or damage to, the
Demised Premises and/or the Building and/or the Common Facilities
and/or the Premises, by fire or any other cause, Landlord shall promptly
rebuild or restore the Demised Premises and/or the Building and/or the
Common Facilities and/or the Premises, as applicable, to the same
condition and tenantability (hereinafter called "Pre-existing Condition")
as existed immediately preceding the date on which such destruction or
damage occurred.   Notwithstanding the foregoing, Landlord shall not be
obligated to so rebuild if the use of the Demised Premises would then be a
non-conforming use under the applicable zoning ordinance; provided,
however that Tenant shall have the right to contest any determination
that such use is non-conforming, and Landlord shall cooperate with
Tenant in any such contest and execute any documents required by Tenant
to contest such determination.   If Landlord does not rebuild following
damage or destruction occuring during the periods specified in paragraphs
(f) and (g) of this Article 15 on account of the preceding sentence,
paragraphs (f) and (g) shall apply notwithstanding that such damage or
destruction shall be less than the percentages set forth therein.

(e)   If any destruction of, or damage to, the Demised
Premises, the Building, the Common Facilities or Premises is such as to
prevent, or to make economically unfeasible, the operation of the
business being conducted in the Demised Premises at such time, then the
fixed rental, Taxes and any other charges to be paid by Tenant under this
lease shall abate from the date of occurrence of such destruction or
damage to and including the date on which the damaged part thereof has

Paragraph 5 is further amended to reflect that the combined rent under Tenant's lease and the adjoining tenant's lease being contemporaneously executed herewith for years 1-20 are as follows:

| | |
|---|---|
| 1-5 | $300,000.00 |
| 6-10 | $345,000.00 |
| 11-15 | $396,000.00 |
| 16-20 | $457,000.00 |

Tenant shall be responsible for its Proportionate Share of such rent figures. The Proportionate Share shall be as set forth in the lease, until adjusted between Tenant and the adjoining tenant based upon actual measurement of the Building to be undertaken by Tenant and the adjoining tenant.

Paragraph 7(b). --Landlord shall have no obligation to contribute to the cost and expense of any tax appeal or similar proceeding described in Paragraph 7(b).

Paragraph 9. --Tenant shall obtain any and all approvals required with respect to such signs, all at its sole cost and expense, and shall be responsible for all costs, damages, losses or liability arising with respect to the erection of any signs.

Paragraph 10. --Landlord shall have no obligation for any Common Facilities Repairs. Tenant acknowledges that Landlord may proceed against Tenant for the entire cost of such Common Facilities Repairs without the obligation to proceed against the present adjoining tenant. However, if the adjoining tenant terminates its lease or if its lease is terminated, then Tenant will thereafter only be responsible for its Proportionate Share of the cost.

All alterations, additions and repairs made by Tenant (exclusive of Tenant's trade fixtures and personal property) shall remain in the Demised Premises upon termination of the term of the Lease.

All installation costs, to include but not limited to interior demising walls and windows, other than the present replacement of the roof, shall be borne solely by Tenant.

Paragraph 12. --Landlord will not be subject to any civil penalties by virtue of Tenant's failure to comply with the terms and provisions of Paragraph 12. Tenant's inspection report as set forth in Paragraph 2 will advise Landlord as to whether or not the Demised Premises comply with all applicable laws and regulations.

Paragraph 15. --Paragraph 15 is amended by the addition of the following subparagraphs:

(h) The Tenant shall also, at the Tenant's sole cost and expense, but for the mutual benefit of the Landlord, the Landlord's mortgagee, if any, and the Tenant, as their interest may appear:

Provide and keep in force boiler and machinery insurance if applicable, provided the demised premises contain equipment of the nature ordinarily covered by such a policy, in such amounts as may from time to time be reasonably required by the Landlord.

(i) If a sprinkler system shall be located in the demised premises, or portion thereof, on the demised premises, provide and keep

been rebuilt or restored to the Pre-existing Condition (hereinafter called "Rebuilding Period"). In the event of partial destruction of, or damage to, the Demised Premises, the Building or the Common Facilities, the Premises, the rental to be paid by the Tenant during the Rebuilding Period shall be the fixed rental set forth in this lease multiplied by the fraction, the numerator of which is the square foot area of the Demised Premises which is usable in the operation of the business of Tenant during the Rebuilding Period, and the denominator of which is the total square foot area of the Premises immediately preceding such destruction or damage.

(f) In the event of destruction of, or damage to, sixty (60%) percent or more of the Demised Premises during the period from and after commencement of the nineteenth (19th) lease year, either Landlord or Tenant (exercised by notice to the other party hereto within the period of 30 days after the date on which such destruction or damage occurs), may elect to terminate this lease.

(g) In the event of the destruction or or damage to sixty (60%) percent or more of the Demised Premises during the period commencing with the sixteenth (16th) lease year and ending with the eighteenth (18th) lease year, Landlord may at its election decide not to rebuild or restore said destroyed portions of the Demised Premises (said election to be exercised by notice to the Tenant within thirty [30] days after the date of the casualty) but only provided that the Landlord pay Tenant in consideration of its cancellation of said lease the sum of Eighty Thousand and 00/100 ($80,000.00) Dollars payable together with its election of cancellation furnished Tenant.

16.  CONDEMNATION. (a) If the whole of the Demised Premises is taken under the power of eminent domain for any public or quasi public improvement or use (hereinafter called "Taking"), the term of this lease shall cease and expire as of the date of vesting of title as a result of the Taking.

(b)   If (i) ten (10%) percent or more of the Demised Premises and/or (ii) ten (10) or more Parking Spaces are taken, and Landlord does not replace the portion of the Demised Premises and/or Parking Spaces so taken, then, as a result of either or both events, Tenant may elect, at its option, to terminate this lease by giving notice to Landlord of such election within 60 days after the date of vesting of title as a result of the Taking.   If Tenant does not elect to terminate this lease as aforesaid, or if this lease is not terminated or terminable pursuant to the provisions of this lease, Landlord agrees that it will, with all reasonable dispatch, at its expense, rebuild and restore the remaining portion of the Demised Premises, Building or Premises, as applicable, and all the appurtenances, equipment, utilities, facilities and installations therein and thereto to the extent possible to the same condition and tenantability (hereinafter called "Pre-Taking Condition") as existed immediately preceding the Taking in such manner that the Demised Premises and Common Facilities, shall be a complete and integrated structural, architectural and functional unit similar to, and of equal material and workmanship to, the Demised Premises and Common Facilities immediately preceding the Taking, with all such appurtenances, equipment, utilities, facilities and installations in good working order and condition so as to put the Demised Premises in proper order and condition to be used by Tenant for the same purpose as the Demised Premises were being used immediately preceding the Taking.   The plans and specifications for such rebuilding and restoring shall be first approved by Tenant, which approval Tenant agrees not to unreasonably withhold or delay, and the Demised Premises shall be rebuilt and restored in accordance with such approved plans and specifications.   Notwith-standing the foregoing, Landlord shall not be obligated to so rebuild if the use of the Demised Premises would then be a non-conforming use under the applicable zoning ordinance; provided, however that Tenant

shall have the right to contest any determination that such use is non-conforming, and Landlord shall cooperate with Tenant in any such contest and execute any documents required by Tenant to contest such determination. If Landlord does not rebuild following damage or destruction occurring during the periods specified in paragraphs (f) and (g) of this Article 15 on account of the preceding sentence, paragraphs (f) and (g) shall apply notwithstanding that such damage or destruction shall be less than the percentages set forth therein.

    (c)  If, as a result of any Taking, other than a taking of Parking Spaces, Landlord is obligated to perform certain work in the rebuilding and restoring of the Demised Premises, Building, Premises or Common Facilities, as applicable, and if the nature of such work to be done is such as to prevent, or to make economically unfeasible, the operation of the business being conducted in the Demised Premises at such time, then the fixed rental, Taxes and any other charges to be paid by Tenant under this lease shall abate from the date of the Taking to and including the date on from the date on which the Demised Premises, Building, Premises or Common Facilities, as applicable, are restored to the Pre-Taking Condition (hereinafter called "Restoration Period"), to an amount equal to the total of the aforesaid sums required to be paid for the period involved multiplied by the fraction, the numerator of which is the square foot area of the Premises, which is usable to the operation of the business of Tenant in the Demised Premises during the Restoration Period, and the denominator of which is the total square foot area of the Premises immediately preceding the Taking.

    (d)  Upon completion of the work necessary to rebuild and restore the Demised Premises, Building, Premises or Common Facilities, as aforesaid, or in the event that no work is necessary to rebuild and restore the Demised Premises, Building, Premises or Common Facilities, then, from and after the date of the Taking, the fixed rental to be paid by

Tenant shall be an amount equal to the fixed rental set forth in this lease multiplied by the fraction, the numerator of which is the square foot area of the Premises, usable to the operation of the business of Tenant in the Demised Premises, upon completion of the work, or in the event that no work is necessary, upon the date of the Taking, and the denominator of which is the total square foot area of the Premises immediately preceding the Taking.

(e)  In the event of any Taking, Landlord shall be entitled to receive the entire award without deduction for any estate hereby vested in Tenant, except that Tenant shall have, and hereby reserves, the right to make a claim, independent of any claim of Landlord, in any condemnation proceeding for, and to receive compensation for, its moving expenses, plus the value of its trade fixtures and equipment and for the improvements made to the Demised Premises, Building or Premises, by Tenant at its expense (regardless of whether or not the same shall be or become the property of Landlord under the terms of this lease).

17.  RENTAL INSURANCE.  Landlord shall as part of the insurance provided pursuant to Article 15(a) obtain rental insurance sufficient to provide Landlord with one year's worth of the rent provided for in Article 5 hereof and of the amount of taxes and insurance premiums required to be paid by Tenant hereunder in a year in the event of a casualty and Tenant shall pay the premium (or part thereof if more than one tenancy is covered) attributable to its rent so insured.

18.  EVENTS OF DEFAULT.  (a)  In the event that one or more of the following events (hereinafter called "Events of Default") shall have occurred and shall not have been remedied:

(i)  whenever Tenant shall do, or permit anything to be done, contrary to any of the terms, covenants or agreements of Tenant under this lease, or shall fail in the keeping or performance of any of the

shall fail to remedy said failure within ten (10) days of Landlord's notice if the same relates to non-payment of rent or within fifteen (15) days after the date on which Landlord shall have given to Tenant notice specifying any other failure of performance or, if any such failure of performance is not curable within such period, Tenant shall fail to commence to take steps to remedy the same within such period, or having so commenced shall thereafter fail to proceed diligently to remedy the same; or

(ii)   whenever an involuntary petition shall be filed against Tenant under any bankruptcy or insolvency laws or under the reorganization provisions of any law of like import, or a receiver of Tenant or for the property of Tenant shall be appointed without the acquiescence of Tenant and such situation or condition shall continue and shall not be removed by Tenant within 90 days after the happening of any such event; or

(iii)   whenever Tenant shall make an assignment of property of Tenant for the benefit of creditors or shall file a voluntary petition under any bankruptcy or insolvency law, or whenever any court of competent jurisdiction shall approve a petition filed by Tenant under the reorganization provisions of the United States Bankruptcy Act or under the provisions of any law of like import;

then regardless of and notwithstanding the fact that Landlord has or may have some other remedy under this lease or by virtue thereof, or in law or in equity, Landlord may give notice to Tenant (hereinafter called "Termination Notice") terminating this lease and the term of this lease specifying a date not less than 15 days thereafter, and, upon the giving of the Termination Notice, this lease and the term of this lease shall cease and expire upon the date specified in the Termination Notice, as fully and completely with the same force and effect as if the date so specified

were the date originally set forth in this lease for the expiration of this lease and the term of this lease, but Tenant shall remain liable for damages as hereinafter provided.

(b)  In the event that this lease shall be terminated as aforesaid, or by judicial proceedings, or if Tenant shall fail to pay to Landlord any installments of fixed rental payable under this lease after ten (10) days notice of such failure is given by Landlord to Tenant, Landlord may without further notice re-enter the Demised Premises and dispossess Tenant and other occupants of the Demised Premises by summary proceedings or otherwise, and remove their effects and hold the Demised Premises as if this lease had not been made.

(c)  In the event of the occurrence of any Event of Default and dispossess by summary proceedings or otherwise (i) the fixed rental payable under this lease shall become due and be paid up to the time of such dispossess; (ii) Landlord shall use its best efforts to re-let the Demised Premises for the balance of the term of this lease; (iii) Tenant shall pay to Landlord as liquidated damages, for the failure of Tenant to observe and perform the terms, covenants and agreements of Tenant under this lease, any deficiency between the fixed rental to be paid by Tenant pursuant to this lease and the amount of any rent and additional rent collected on account of the lease or leases of the Demised Premises for each month of the period which would otherwise have constituted the balance of the term of this lease.  The failure of Landlord to re-let the Demised Premises, or any part or parts thereof, shall not release or affect the liability of Tenant for damages if Landlord has used its best efforts in attempting to re-let the Demised Premises. In computing such liquidated damages, there shall be added to said deficiency such reasonable expenses as Landlord may incur in connection with re-letting the Demised Premises such as reasonable legal expenses, reasonable attorneys' fees, reasonable brokerage commissions and a

reasonable amount for keeping the Demised Premises in good order or for preparing the Demised Premises for re-letting. Such liquidated damages shall be paid by Tenant in monthly installments on the dates specified in this lease for payment of fixed rental and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Landlord to collect the amount of the deficiency for any subsequent month by a similar proceeding. Landlord, at its expense, may make such reasonable alterations, repairs, replacements and/or decorations in the Demised Premises as Landlord, in its reasonable judgment, considers advisable and necessary for the purpose of re- letting the Demised Premises, and the making of such alterations and decorations shall not operate or be construed to release Tenant from liability under the lease. In the event of a breach by Tenant of any of the covenants or provisions hereof, Landlord shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not provided for in this lease. The mention of this lease of any particular remedy shall not preclude Landlord from any other remedy at law or in equity.

(c) Notwithstanding the foregoing provisions of this Article, Tenant shall not be deemed to be in default under this lease solely by virtue of clauses (ii) and (iii) of subsection (a) of this Article 18 or solely because Tenant has ceased or suspended its use of the Demised Premises for any reason so long as the rental payments provided for in this lease are made by Tenant or on behalf of Tenant within the time specified in subsections (a) and (b) of this Article **18**, and provided Tenant has otherwise complied with the terms and provisions of this lease and continues to do so.

19. SUBORDINATION. Landlord represents and warrants to Tenant that there are no liens or encumbrances affecting the Demised Premises or the Premises as of the date of this lease (hereinafter called

Existing Liens) except as attached hereto as Exhibit C. Landlord agrees to deliver a Non-Disturbance Agreement (as hereinafter defined) to Tenant (i) in respect of the Existing Liens, simultaneously with the execution and delivery of this lease, and (ii) in respect of any liens or encumbrances affecting the Demised Premises or the Premises, created after the date of this lease and before the date of commencement of the term of the Lease, prior to such liens or encumbrances becoming effective (such liens and encumbrances, together with the Existing Liens, being hereinafter called Prior Liens). This lease shall become subject and subordinate to (a) any renewal, replacement or extension of any Prior Lien, and (b) any liens or encumbrances created on or after the date of the delivery of the Demised Premises, or any renewal, replacement or extension thereof (such liens or encumbrances, and such renewal, replacement or extension thereof or of any Prior Lien, being hereinafter called Subsequent Liens); provided (x) the Subsequent Liens are held by an Institution (as hereinafter defined), (y) if the Subsequent Liens secure a debt, such Subsequent Liens shall contain provisions for amortization in amounts sufficient to liquidate such debt during the term thereof, and (z) a Non-Disturbance Agreement shall have first been entered into in respect of any Subsequent Lien. The term "Non-Disturbance Agreement" as used in this Article shall mean an agreement in recordable form between Tenant and the holder of any Prior Lien or any Subsequent Lien which shall provide in substance that, as long as no Event of Default exists under this lease, such holder will not  name or join Tenant as a party-defendant or otherwise in any suit, action or proceeding to enforce, nor will this lease be terminated or otherwise affected by enforcement of, any rights given to such holder pursuant to the terms, covenants or agreements contained in any Prior Lien or any Subsequent Lien, or any other documents held by such holder, or any rights given to such holder as a matter of law, and such holder shall make available to

Landlord the proceeds of insurance referred to in Article 15 of this lease and the proceeds of condemnation awards as referred to in Article 16 for restoration as provided in said Article. The term "Institution as used in this lease shall mean a commercial bank, savings bank, savings and loan association, insurance company, pension fund, real estate investment trust, or public in quasi-public agency, authority or corporation. Tenant agrees, from time to time, upon demand, to execute any and all instruments as may be required to evidence such subordination without obligation or expense to Landlord.

20. USE. The Demised Premises may be used and occupied as and for any retailing purpose for the sale of any other goods and services, as may be lawfully allowed or for office use, but may not be used for warehousing or for an activity, retail or otherwise, that results in any unreasonable odors or noises.

Landlord recognizes that Tenant is to have an exclusive right to sell the following items on the Premises: linens, domestics, home furnishings and bath accessories, including but not limited to sheets, towels, bedspreads, comforters, pillows, pillow covers and shower curtains, as well as kitchenware, such as utensils, cookware, bakeware, dishes, glassware and other items commonly sold from time to time by bed 'n bath and/or Linens, Etc. stores in which Tenant's current principals are presently involved or, if they are no longer involved in stores of this nature, such as are commonly sold by stores carrying similar lines of merchandise. Landlord shall not lease any portion of the Premises to any person unless the lease to such person shall expressly prohibit sales of the aforesaid items on other than an inconsequential and incidental basis, or such person shall otherwise agree in writing to comply with this paragraph.

21. COVENANT AGAINST LIENS. If, because of any act of Tenant, any mechanic's or other lien, charge or order for the payment of

expense, cause the same to be discharged of record, by bond or otherwise, within 30 days after notice to Tenant of the filing of such lien.

22.  MEMORANDUM OF LEASE.  Upon request of either party to this lease, Landlord and Tenant agree to execute and deliver a short form lease or memorandum of this lease, in recordable form, containing any information required by the recording statutes of the state in which the Demised Premises are located and such other information, except for the fixed rental and additional rental, as Landlord or Tenant may request.

23.  ESTOPPEL CERTIFICATES.  (a)  Landlord shall, without charge at any time and from time within ten days after request by Tenant, certify by written instrument, in recordable form, to any assignee of this lease, sublessee of the Demised Premises, or any other person, firm or corporation specified by Tenant:

(i)  whether or not this lease is unmodified and in full force and effect (and, if there have been modifications, whether or not the same is in full force and effect as modified and stating the modifications);

(ii)  whether or not there are any defaults by Tenant under this lease;

(iii)  the dates, if any, to which the rental and other charges under this lease have been paid in advance; and

(iv)  whether or not Landlord has delivered possession of the Demised Premises to Tenant in accordance with the provisions of this lease, and whether or not Landlord has completed all work required to be performed by Landlord under this lease.

(b)  Tenant shall, without charge at any time and from time to time within ten days after request by Landlord, certify by written instrument, in recordable form, to any mortgagee, assignee of any mortgage or purchaser, or any other person, firm or corporation specified

by Landlord:

        (i)   whether or not this lease is unmodified and in full force and effect (and, if there have been modifications, whether or not the same is in full force and effect as modified and stating the modifications);

        (ii)   whether or not there are any defaults by Landlord under this lease;

        (iii)   the dates, if any, to which the rental and other charges under this lease have been paid in advance; and

        (iv)   whether or not Landlord has delivered possession of the Demised Premises to Tenant in accordance with the provisions of this lease, and whether or not Landlord has completed all work required to be performed by landlord under this lease.

    24. BROKERS. Tenant represents and warrants to Landlord that Tenant has not dealt nor negotiated with any broker or brokers, except CROSS-BROWN, in connection with this lease. Landlord represents and warrants to Tenant that Landlord has not dealt nor negotiated with any broker or brokers, except CROSS-BROWN, in connection with this lease, and Landlord agrees to pay the commissions of such broker or brokers, if any, in accordance with separate agreement.

    25. TERMINATION OPTION (KICK-OUT). The Tenant shall have the right to terminate the lease effective the last day of January following the expiration of ten (10) years from the Rent Commencement Date (the "termination date"), by giving at least one (1) year prior written notice to Landlord, sent by certified mail or registered mail, return receipt requested. In consideration for the right to terminate the lease as hereinabove provided, Tenant shall pay Landlord Ninety Thousand and 00/100 ($90,000.00) Dollars in six (6) equal installments of Fifteen Thousand and 00/100 ($15,000.00) Dollars, the first payment due on the February 1 next following said termination date and the remaining

installments on the first day of the next five (5) succeeding months.

26.  WAIVER.  No waiver of any provision of this lease shall be effective unless in writing signed by the waiving party.  One or more waivers or breach of any covenant or condition by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same or any other covenant or condition, and the consent or approval by Landlord of any act by Tenant requiring the consent or approval of Landlord shall not be construed to waive or render unnecessary the consent or approval of Landlord of any subsequent similar act by Tenant.

27.  INTERPRETATION.  Wherever in this lease the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders.  The Article headings used herein are for reference and convenience only.  The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meanings.  Whenever the Landlord's or Tenant's consent shall be required under this lease, it is understood that such consent shall not be unreasonably withheld, and such consent shall be deemed given after the lapse of ten (10) days from the request for such consent, unless given prior thereto.

28.  ENTIRE AGREEMENT.  No oral statement or prior written matter shall have any force or effect.  Landlord and Tenant agree that they are not relying on any representations or agreements other than those contained in this lease.  This lease shall not be modified or amended except by written agreement executed and delivered by Landlord and Tenant.

29.  SURRENDER OF DEMISED PREMISES.  Upon the expiration of the term of this lease, Tenant shall surrender the Demised Premises to Landlord in as good order and condition as existed on the date of the delivery of possession of the Demised Premises, except for reasonable wear and tear, damage by fire and other causes.

30. REPRESENTATIONS OF LANDLORD. Landlord represents and warrants to Tenant that Landlord is the owner of the Premises and the Premises are free of all easements, covenants and restrictions, that would prohibit or impair Tenant's use of the Demised Premises as provided for herein; that the curb cuts on Morris Avenue and Morris Turnpike are in compliance with the law; that the capacity of Landlord to execute and deliver this lease is not impaired by any restriction of law or otherwise; that the Premises and the Demised Premises may be lawfully used by Tenant for the purposes specified in this lease; and that there are no condemnation proceedings pending.

31. QUIET ENJOYMENT. Landlord covenants and agrees that, so long as Tenant pays the rental reserved in this lease and performs and observes all of the other covenants and provisions of this lease, Tenant shall quietly enjoy the Demised Premises as provided in this lease.

32. NOTICES. Any notice or demand which under the terms of this lease or under any statute must or may be given or made by Landlord to Tenant or by Tenant to Landlord shall be in writing, and shall be given or mailed by certified mail, return receipt requested, addressed as follows:

To Landlord: FARLEY REALTY CORP.
~~c/o Francis X. Farley, Esq.~~
~~187 Brighton Avenue~~
~~West End Professional Building~~
~~Long Branch, N.J.   07740~~

39 Glenbrook Road
New Providence,
New Jersey 079

With Copy To: JOSEPH MIRNE, ESQ.
Sunset Professional Building
3200 Sunset Avenue
Ocean Township, N.J.   07712

To Tenant: BED 'N BATH OF SHORT HILLS, INC.
770 Morris Turnpike
Short Hills, N.J.   07078

With Copy To: MARTIN E. DOLLINGER, P.A.
365 West Passaic Street
Rochelle Park, N.J.   07662

33. RIGHTS OF SUCCESSORS AND ASSIGNS. The covenants, conditions and agreements contained in this lease shall bind and inure to

the benefit of Landlord and Tenant, and their respective successors and assigns, but neither Landlord nor Tenant shall be bound or liable under this lease unless and until this lease shall have been executed and delivered by both Landlord and Tenant.

34.  PARTIAL INVALIDITY.  If any of the provisions of this lease, or the application thereof to any person or circumstances, shall to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provisions of this lease shall be valid and enforceable to the fullest extent permitted by law.

35.  PRECONDITION.  This lease is subject to Tenant obtaining the following on or before the Rent Commencement Date:

(a)  a building permit for Tenant's installations, if necessary; and

(b)  all necessary final and non-appealable governmental approvals to permit the partitioning of the Demised Premises from the remainder of the Building, to permit a use of the Building by more than one tenant, and the approval of necessary loading and unloading facilities on the Morris Turnpike side in the area now showing parking spaces adjacent to the Demised Premises or alternatively through the front door.

36.  NO PERSONAL LIABILITY.  Notwithstanding anything to the contrary provided in this Lease, it is specifically understood and agreed, such agreement being a primary consideration for the execution of this Lease by Lessor, that there shall be absolutely no personal liability on the part of Lessor, its successors, assigns or any mortgagee in possession (for the purposes of this paragraph, collectively referred to as "Lessor"), with respect to any of the terms, covenants and conditions of this Lease, and that Lessee shall look solely to the equity of Lessor in the

Building for the satisfaction of each and every remedy of Lessee in the event of any breach by Lessor of any of the terms, covenants and conditions of this Lease to be performed by Lessor, such exculpation of liability to be absolute and without any exceptions whatsoever.

IN WITNESS WHEREOF, the undersigned have caused this Agreement of Lease to be executed this 21st _____ day of September, 1984.

FARLEY REALTY CORP., Landlord

BY: _____

BED 'N BATH OF SHORT HILLS, INC.
Tenant

BY: ~~WARREN EISENBERG,~~
~~LEONARD FEINSTEIN, Vice~~-President
with no personal liability

ATTEST:

_____
MARTIN E. DOLLINGER
Assistant Secretary

## LEASE MODIFICATION

THIS AGREEMENT made the _____ day of _____ 1986, between FARLEY REALTY CORP., a New Jersey corporation (herein-after referred to as "Landlord"), whose address is 39 Glenbrook Road, New Providence, New Jersey 07974; and BED 'N BATH OF SHORT HILLS, INC. (hereinafter referred to as "Tenant"), with offices at 715 Morris Avenue, Springfield, New Jersey 07081.

## W I T N E S S E T H:

WHEREAS, Landlord and Tenant entered into a lease dated September 21, 1984, as modified October 4, 1984, November 14, 1985 and May ___, 1986 (hereinafter collectively referred to as the "Lease"), covering premises in the building located at 715 Morris Avenue, Springfield, New Jersey (hereinafter referred to as the "Demised Premises"); and

WHEREAS, Landlord and Tenant now wish to further modify the above-described Lease.

NOW, THEREFORE, Landlord and Tenant agree as follows:

1.   Landlord hereby consents to the construction, by Tenant, at its sole cost and expense, of 4,674 square feet of Additional Space (hereinafter referred to as the "Additional Space") adjacent to the Demised Premises in accordance with the plans and specifications of Richard Botelli, A.I.A. of Botelli Associates, dated August 8, 1986, bearing Project No. 8603, which plans and specifications have been previously approved by Landlord.

2.   From and after completion of the Additional Space (hereinafter referred to as the "Commencement Date") through the remainder of the Lease Term, Tenant's total square footage in Paragraph 1 of the Lease shall be amended to reflect the addition of the 4,674 square feet but the Proportionate Share with respect to Tenant obligations shall not change but Tenant shall be entirely responsible for the following:

(A)   All repairs to said Additional Space.

(B)   One hundred (100%) percent of any tax increases attributable to the Additional Space.  If a separate valuation is not reasonably available to Landlord, then Landlord shall, in good faith and using its reasonable determination, ascertain the taxes which are attributable to the Additional Space as that portion of the taxes attributable to the improvements on the tax lot inclusive of the Additional Space (but excluding land) which the value of the Additional Space bears to the value of the improvements on the tax lot inclusive of the Additional Space (but excluding land).

(C)   One hundred (100%) percent of the increased cost of fire insurance attributable to the Additional Space.  If such increase is not reasonably available to Landlord, then Landlord shall in good faith and using its reasonable determination, ascertain the insurance attributable to the

10/7/86

Additional Space as that proportion of the insurance for the
Building that the full insurable value of the Additional Space,
as determined by Landlord's insurance carrier, bears to the full
insurable value of the Building inclusive of the Additional
Space as determined by Landlord's insurance carrier.  In the
event of a casualty wherein the Lease is not terminated,
Landlord agrees to rebuild the Additional Space.

    3.  From and after the Commencement Date, Paragraph
20 shall be amended to reflect that Tenant may use the Addi-
tional Space for any purpose to include warehousing.

    4.  Tenant agrees to hold Landlord harmless regarding
any claims for costs associated with the construction of the
Additional Space including any claims for broker's commissions.

    5.  Except as modified herein, the Lease covering the
Premises dated September 21, 1984, as modified October 4, 1984,
November 14, 1985 and May __, 1986, shall remain in full force
and effect, and Landlord and Tenant shall be bound by all of the
terms and conditions thereof.

    IN WITNESS WHEREOF, Landlord and Tenant have hereunto
set their hands and seals the date and year first above written,
and acknowledge the one to the other that they possess the
requisite authority to enter into this transaction and to sign
this Agreement.

                  FARLEY REALTY CORP., Landlord


                  BY:_____


                  BED 'N BATH OF SHORT HILLS, INC.,
                    Tenant


                  BY:_____
                    Warren Eisenberg, President

## THIRD AMENDMENT OF LEASE AGREEMENTS

THIS THIRD AMENDMENT OF LEASE AGREEMENTS (the *"Amendment"*) is dated as of December _19_, 2019, by and between FARLEY REAL ESTATE ASSOCIATES, LLC, a New Jersey limited liability company (the *"Landlord"*) having an office c/o Diane Reeves, 21 Partridge Lane, Long Valley, New Jersey 07853, and BED BATH & BEYOND INC., a New York corporation, as successor in interest to BED 'N BATH OF SHORT HILLS, INC. (the *"Tenant"*) having an office at 650 Liberty Avenue, Union, New Jersey 07083.

### RECITALS:

A.    Landlord is the fee owner of certain real property located in the County of Union, State of New Jersey, together with improvements (the *"Building"*) constructed thereon (collectively, the *"Property"*), commonly known as 715 Morris Turnpike (formerly known as 679 Morris Avenue) in Springfield, New Jersey.

B.    By Agreement of Lease dated September 21, 1984, as same may have been amended from time to time (the *"BBSH Lease"*) Landlord's predecessor in interest, Farley Realty Corp. (*"FRC"*) leased to Bed 'N Bath of Short Hills, Inc. (*"BBSH"*) approximately 20,353 gross rentable square feet of space (the *"BBSH Premises"*) in the Building.

C.    By Assignment of Lease dated October 4, 1996, BBSH assigned all of its right, title and interest in and to the BBSH Lease to Tenant.

D.    By Lease dated September 21, 1984, as same may have been amended from time to time, (the *"Oliver's Lease"*), FRC leased to Mandie Lynn, Inc. (d/b/a "Oliver's") approximately 27,287 gross rentable square feet of space (the *"Oliver's Premises"*) in the Building, as more fully described in the Oliver's Lease.

E.    By Assignment of Lease dated February 11, 1988, the Oliver's Lease was assigned to B&B Textile Corporation (now known as Tenant).

F.    Accordingly, Tenant occupies the entire Building pursuant to the BBSH Lease and the Oliver's Lease. The BBSH Premises and the Oliver's Premises are sometimes herein referred to as the *"Premises"*.

G.    By that certain Extension and Amendment of Leases dated October 4, 1996, Landlord and Tenant amended the BBSH Lease and the Oliver's Lease (collectively, so as amended, the *"Leases"*).

H.    Tenant exercised its first Renewal Option, such that the Terms of the Leases were scheduled to expire on January 31, 2016.

I.      By that certain Second Extension and Amendment of Leases dated as of February 4, 2015, Landlord and Tenant further amended the Leases.

J.      For purposes of functionally continuing forward with their Landlord/Tenant relationship, the parties herein recite their agreement and understanding that the entire Premises is being leased pursuant to the terms of the September 21, 1984 BBSH Lease which shall hereinafter be referred to as the "Lease".

K.      Landlord and Tenant desire to further amend the Lease as more particularly hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Amendment and for other valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Section 15 of the Lease entitled "FIRE AND OTHER CASUALTY" is hereby deleted in its entirety and replaced with the following provisions in lieu thereof:

### 15. FIRE AND OTHER CASUALTY

(a) Tenant at its sole cost shall keep the Building as well as any and all other structures and/or improvements on  the property commonly known as 715 Morris Turnpike, Springfield, New Jersey 07081 which is designated on the Official Tax Map of the Municipality as Block 501, Lot 2 insured against loss by fire, with extended coverage to the full insurable value of the Building and other improvements  (excluding the land underlying the Building, foundations and footings, and those portions of the Building below the surface of such land not otherwise insurable pursuant to a standard fire insurance policy, and without making any allowance for depreciation) under a policy or policies written  by a responsible insurance company or by responsible insurance companies authorized to do business in the State of New Jersey, which policy or policies shall provide that payment of any loss or losses covered by such policy or policies shall be made to Landlord.  The insurance required to be maintained by Tenant pursuant to this Section shall not have a deductible exceeding Ten  Thousand Dollars ($10,000 ) without Landlord's prior consent; in the event of a casualty, Tenant shall be directly responsible to Landlord for reimbursement of the amount of any deductible maintained pursuant hereto.

(b) Tenant shall name Landlord on such policy as both an additional insured and loss payee.

(c) Each insurance policy carried by Tenant insuring the Building and other improvements  against loss by fire and causes covered by extended coverage, and each insurance policy carried by Tenant and insuring the Building and its fixtures and contents against loss by fire, water and causes covered by extended coverage, shall be written in a manner so as to provide that the insurance company waives all right of recovery by way of subrogation against Landlord or Tenant in connection with any loss or damage covered by such policies.  Neither party shall be liable to the other for any loss or damage caused by fire, water or any of the risks enumerated in an extended coverage insurance, provided such insurance was obtainable at the time of such loss

2

or damage. However, if such insurance policies cannot be obtained, or are obtainable only by the payment of an additional premium charge above that charged by companies carrying such insurance without such waiver of subrogation, the party undertaking to carry such insurance shall notify the other party of such fact and such other party shall have a period of ten (10) days after the giving of such notice either to (a) place such insurance in companies which are reasonably satisfactory to the other party and will carry such insurance with waiver of such subrogation or (b) agree to pay such additional premium if such policy is obtainable at additional cost. If the release of either Landlord or Tenant, as set forth in the second sentence of this paragraph, shall contravene any law with respect to exculpatory agreements, the liability of the party in question shall be deemed not released but shall be deemed secondary to the latter's insurer. Tenant shall provide to Landlord duly executed certificates evidencing the insurance coverage described herein.

(d)    Except as provided in subparagraph (f) hereof, in the event of total or partial destruction of, or damage to, the Demised Premises and/or the Building and/or the Common Facilities and/or the Premises, by fire or any other cause, Landlord shall use the proceeds from such insurance being carried by the Tenant and shall promptly rebuild or restore the Demised Premises and/or the Building and/or the Common Facilities and/or the Premises, as applicable, to the same condition and tenantability (hereinafter called *"Pre-existing Condition"*) as existed immediately preceding the date on which such destruction or damage occurred. Notwithstanding the foregoing, Landlord shall not be obligated to so rebuild if the use of the Demised Premises would then be a non-conforming use under the applicable zoning ordinance; provided, however, that Tenant shall have the right to contest any determination that such use is non-conforming, and Landlord shall cooperate with Tenant in any such contest and execute any documents required by Tenant to contest such determination. If Landlord does not rebuild following damage or destruction occurring during the periods specified in paragraph (f) of this Article 15 on account of the preceding sentence, paragraph (f) shall apply notwithstanding that such damage or destruction shall be less than the percentages set forth therein.

(e)    If any destruction of, or damage to, the Demised Premises, the Building, the Common Facilities or Premises is such as to prevent, or to make economically unfeasible, the operation of such business being conducted in the Demised Premises at such time, then the fixed rental, Taxes and any other charges to be paid by Tenant under this Lease shall abate from the date of occurrence of such destruction or damage to and including the date on which the damaged part thereof has been rebuilt or restored to the Pre-existing Condition (hereinafter called *"Rebuilding Period"*). In the event the casualty was caused by Tenant or its licensees, invitees or agents, no portion of the rent shall be abated during the period of re-construction unless Landlord is receiving loss of rent insurance pursuant to Paragraph 17 of the Lease. In the event of partial destruction of, or damage to, the Demised Premises, the Building or the Common Facilities, the Premises, the rental to be paid by the Tenant during the Rebuilding Period shall be the fixed rental set forth in this Lease multiplied by the fraction, the numerator of which is the square foot area of the Demised Premises which is usable in the operation of the business of Tenant during the Rebuilding Period, and the denominator of which is the total square foot area of the Premises immediately preceding such destruction or damage.

3

(f)     In the event of destruction of, or damage to, sixty (60%) percent or more of the Building during the last two (2) years of the then current term, either Landlord or Tenant (exercised by notice to the other party hereto within the period of 30 days after the date on which such destruction or damage occurs), may elect to terminate this Lease, provided, however Landlord shall retain the insurance proceeds in an amount not to exceed the full replacement value of the the Building and other improvements and the Common Facilities, provided, however, that Tenant may void Landlord's termination of the Lease by agreeing to exercise the next available Renewal Option, if any, in which event, Landlord shall proceed to repair and restore the Building and Common Facilities, as required under this Lease.

(g)     Tenant shall also at its sole cost and expense provide loss of rental insurance coverage to the Landlord up to a maximum period of one (1) year, naming the Landlord as both an additional insured and loss payee with respect to any casualty wherein the Tenant is relieved from paying rent pursuant to subsection (e) above.

2.     It is the policy of Tenant and its subsidiaries and affiliates (collectively, *"the Company"*) to conduct all its business transactions in accordance with the highest ethical standards and all applicable laws (including but not limited to the U.S. Foreign Corrupt Practices Act). No individual who is employed by or who represents the Company, and no individual or entity that contracts with the Company or otherwise performs services on behalf of the Company, is permitted to solicit, accept, offer, promise or pay any bribe, kickback or any other improper payment of money, products or services. This includes, but is not limited to, any improper payment in exchange for (i) the Company's execution of this Amendment, (ii) any action taken by such individual on behalf of the Company, or (iii) any action taken by a third party. If any such improper actions are observed, contact our Legal Department (Attention: General Counsel) at Tenant's notification address and/or by telephone at 908-688-0888, so that the incident may be fully investigated.

3.     Landlord represents and warrants to Tenant that, as of the date hereof, no third-party consents or approvals (including, without limitation, with respect to any lender or beneficiary of a deed of trust) are required in order for the terms and provisions of this Amendment to be in full force and effect.

4.     The terms and conditions of this Amendment shall be binding upon, and inure to the benefit of Landlord and Tenant and their respective heirs, executors, administrators, successors and assigns. Except as specifically amended hereby, the Lease is unmodified, is hereby ratified by the parties hereto and remains in full force and effect. In the event of any conflict or inconsistency between the terms and provisions of the Lease and this Amendment, the terms and provisions of this Amendment shall govern and control.

5.     This Agreement may be executed in one or more counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Amendment to Lease. The transmission of an image of any signed original of this Amendment will have the same binding effect as an original bearing an original signature. No party may raise the use of a

facsimile machine or other image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of this Amendment.  At the request of either party, the parties will confirm signatures by signing and delivering an original document.

IN WITNESS WHEREOF, the parties hereto have executed this Third Amendment of Lease Agreements as of the day and year first above written.

**LANDLORD:**

Farley Real Estate Associates, LLC
a New Jersey limited liability company

By: *Diane F. Reeves*
*Managing Member Farley Realty Assn. LLC*

**TENANT:**

Bed Bath & Beyond Inc.
a New York corporation

By: _____
*Mark Tritton*
*Chief Executive Officer*

5

*Covid rent abatement*

# FOURTH AMENDMENT OF LEASE AGREEMENTS

THIS FOURTH AMENDMENT OF LEASE AGREEMENTS (the *"Amendment"*) is dated as of May    , 2020, by and between FARLEY REAL ESTATE ASSOCIATES, LLC, a New Jersey limited liability company (the *"Landlord"*) having an office c/o Diane Reeves, 21 Partridge Lane, Long Valley, New Jersey 07853, and BED BATH & BEYOND INC., a New York corporation, as successor in interest to BED 'N BATH OF SHORT HILLS, INC. (the *"Tenant"*) having an office at 650 Liberty Avenue, Union, New Jersey 07083.

## RECITALS:

A.      Landlord is the fee owner of certain real property located in the County of Union, State of New Jersey, together with improvements (the *"Building"*) constructed thereon (collectively, the *"Property"*), commonly known as 715 Morris Turnpike (formerly known as 679 Morris Avenue) in Springfield, New Jersey.

B.      By Agreement of Lease dated September 21, 1984, as same may have been amended from time to time (the *"BBSH Lease"*) Landlord's predecessor in interest, Farley Realty Corp. (*"FRC"*) leased to Bed 'N Bath of Short Hills, Inc. (*"BBSH"*) approximately 20,353 gross rentable square feet of space (the *"BBSH Premises"*) in the Building.

C.      By Assignment of Lease dated October 4, 1996, BBSH assigned all of its right, title and interest in and to the BBSH Lease to Tenant.

D.      By Lease dated September 21, 1984, as same may have been amended from time to time, (the *"Oliver's Lease"*), FRC leased to Mandie Lynn, Inc. (d/b/a "Oliver's") approximately 27,287 gross rentable square feet of space (the *"Oliver's Premises"*) in the Building, as more fully described in the Oliver's Lease.

E.      By Assignment of Lease dated February 11, 1988, the Oliver's Lease was assigned to B&B Textile Corporation (now known as Tenant).

F.      Accordingly, Tenant occupies the entire Building pursuant to the BBSH Lease and the Oliver's Lease. The BBSH Premises and the Oliver's Premises are sometimes herein referred to as the *"Premises"*.

G.      By that certain Extension and Amendment of Leases dated October 4, 1996, Landlord and Tenant amended the BBSH Lease and the Oliver's Lease (collectively, so as amended, the *"Leases"*).

H.      Tenant exercised its first Renewal Option, such that the Terms of the Leases were scheduled to expire on January 31, 2016.

I.      By that certain Second Extension and Amendment of Leases dated as of February 4, 2015, Landlord and Tenant further amended the Leases.

J.      By that certain Third Amendment to Leases dated as of December 19, 2019, Landlord and Tenant further amended the Leases.

K.      For purposes of functionally continuing forward with their Landlord/Tenant relationship, the parties herein recite their agreement and understanding that the entire Premises is being leased pursuant to the terms of the September 21, 1984 BBSH Lease which shall hereinafter be referred to as the "Lease".

L.      Due to the COVID19 pandemic crisis, wherein many commercial tenants are requesting rent relief as a result of forced closures or restrictions requiring social distancing and store occupancy, Landlord and Tenant desire to further amend the Lease for a specific four (4) month period (April-July, 2020) only as expressly and specifically as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Amendment and for other valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      RENT ABATEMENT:   Due to the COVID-19 pandemic crisis, for the 4-month period of April, May, June and July 2020, Monthly Base Rent of $50,688.91 shall be decreased by 50% ($25,344.46), in accordance with the following schedule:

April 2020 –  (previously paid 20% - $10,137.78)
Balance due:                                                        $15,206,68

May 2020 – 50% Monthly Base Rent:                    $25,344.46

June 2020 – 50% Monthly Base Rent:                   $25,344.46

July 2020 – 50% Monthly Base Rent:                    $25,344.46

2.   EXTENSION OF TERM:   For each month rent is abated due to the COVID-19 pandemic crisis, one (1) month shall be added to the remaining term of the Lease. Therefore, the current Option 2 term shall expire April 30, 2021 instead of January 30, 2021. In addition, the additional option years per the Lease will be similarly extended as follows:

- Option 3 Renewal Period will commence on May 1, 2021 and expire on April 30, 2026
- Option 4 Renewal Period will commence on May 1, 2026 and expire on April 30, 2031
- Option 5 Renewal Period shall commence on May 1, 2031 and expire on April 30, 2036

Base Rent shall be as set forth in the Lease for the rest of the Option 2 Period commencing August 1, 2020 (i.e. $50,688.91) and as set forth in all other Option years without abatement or deferral, unless mutually agreed in writing by the parties in a subsequent amendment.

3.      NNN/REAL ESTATE TAXES:   All NNNs due under the Lease shall be paid in full and on a timely basis. If not paid timely, Tenant shall reimburse Landlord for all late charges or interest accrued.  Pursuant to Paragraph 7 of the Lease, Tenant shall continue to pay to Landlord its 100% proportionate share of all real estate taxes including 2nd Quarter taxes due May 1st, in the amount of $50,566, plus accrued interest commencing May 11, 2020 to the date of payment charged by the municipality.

4.      INSURANCE:   Per the THIRD AMENDMENT, Tenant shall continue to pay directly and provide proof of same to Landlord all of the insurance coverages as set forth in Paragraph 15 of the Lease as amended in the THIRD AMENDMENT.

5.      Landlord represents and warrants to Tenant that, as of the date hereof, no third-party consents or approvals (including, without limitation, with respect to any lender or beneficiary of a deed of trust) are required in order for the terms and provisions of this Amendment to be in full force and effect.

6.      The terms and conditions of this Amendment shall be binding upon and inure to the benefit of Landlord and Tenant and their respective heirs, executors, administrators, successors and assigns.  Except as specifically amended hereby, the Lease is unmodified, is hereby ratified by the parties hereto and remains in full force and effect.  In the event of any conflict or inconsistency between the terms and provisions of the Lease and this Amendment, the terms and provisions of this Amendment shall govern and control.

7.      This Agreement may be executed in one or more counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one Amendment to Lease.  The transmission of an image of any signed original of this Amendment will have the same binding effect as an original bearing an original signature.  No party may raise the use of a facsimile machine or other image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of this Amendment.  At the request of either party, the parties will confirm signatures by signing and delivering an original document.

DocuSign Envelope ID: B11DF528-D71D-4665-A831-9A5D5BC847C6

IN WITNESS WHEREOF, the parties hereto have executed this Fourth Amendment of Lease Agreements as of the day and year first above written.

**LANDLORD:**

Farley ~~Real Estate~~ Realty Associates, LLC
a New Jersey limited liability company

By: _Diane F. Reeves_
    _Managing Member_

**TENANT:**

Bed Bath & Beyond Inc.
a New York corporation

By: _John Hartmann_
    John Hartmann
    Executive Vice President
    & Chief Operation Officer