| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>John S. Mairo, Esq.<br>jsmairo@pbnlaw.com<br>--and--<br>**ULMER & BERNE LLP**<br>1660 West 2nd Street, Suite 1100<br>Cleveland, OH  44113<br>(216) 583-7120<br>(216) 583-7121 Facsimile<br>Michael S. Tucker, Esq.<br>(*pro hac vice admission pending*)<br>mtucker@ulmer.com<br><br>*Counsel to Northway Mall Properties Sub, LLC* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**AMENDED AND SUPPLEMENTAL OBJECTION OF NORTHWAY MALL
PROPERTIES SUB LLC TO THE DEBTORS' NOTICE OF ASSUMPTION OF
<u>CERTAIN UNEXPIRED LEASES</u>**

Northway Mall Properties Sub, LLC (the "**Landlord**") hereby files this amended and

supplemental objection (the "**Objection**"), by and through their undersigned counsel, to oppose

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

the proposed assumption and assignment of its unexpired lease of nonresidential real property of Debtors' Store No. 3036 to Burlington Coat Factory Warehouse Corporation ("**Burlington**") pursuant to the Debtors' *Notice of Assumption of Certain Unexpired Leases* (the "**Assumption Notice**") [Docket No. 1157],[2] and respectfully represents as follows:

## I. INTRODUCTION

1. The Debtors have failed to provide the Landlord with adequate assurance of future performance in relation to the proposed assignment of the Lease to Burlington because the Debtors have failed to confirm that Burlington will be bound by Existing Exclusives in the Lease, and that Burlington will comply with the Amended and Restated Operation and Easement Agreement ("**OEA**") with Target. Additionally, the Debtors proposed cure amount is incorrect.

## II. THE LEASE

2. Northway Properties, LLC and Buy Buy Baby, Inc. (the "**Tenant**") entered into that certain Lease Agreement dated as of March 2010 with respect to the premises located at the Northway Mall Shopping Center in Colonie, New York (the "**Premises**"). The Lease Agreement was amended by the First Amendment to Lease dated as of May 13, 2010, a Second Amendment to Lease dated as of July 1, 2010, and a Third Amendment of Lease dated as of July 30, 2021, with the Third Amendment of Lease being executed by Northway Mall Properties Sub, LLC (the "**Landlord**"), as successor-in-interest to Northway Properties, LLC. The Lease Agreement, as modified or amended (including those modifications and amendments listed above) is hereinafter referred to as the "**Lease**". A copy of the Lease is attached as **Exhibit 1**.

3. Section 13.3 of the Lease ("Exclusives Which Tenant Must Honor") requires that the Tenant honor certain exclusives (the "**Existing Exclusives**"), which are enumerated in Exhibit

---

[2] Terms not defined herein shall have the meanings ascribed to them in the Assumption Notice and accompanying documents.

K-1 of the Lease.

4. The Existing Exclusives include a restriction in the Marshall's lease that prohibits other tenants in the Shopping Center from using more than 12,000 sq. feet of floor area for the sale or display at discount prices of brand-name clothing (the "**Marshalls Restriction**").

5. Section 12.5.2 of the Lease specifically states that "Tenant shall comply with the terms and conditions of the OEA to the extent same affects the Premises." A copy of the OEA is attached as **Exhibit 2.**

### III. BACKGROUND FACTS

6. On April 23, 2023, the Debtors filed their petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

7. The Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g., In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

8. On April 25, 2023, the Court entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 92] (the "**Bidding Procedures Order**") which, among other things, approved the Bidding Procedures and the terms of any Successful Bid, pursuant to which the Debtors may assume and assign certain executory contracts and unexpired leases to the Successful Bidder upon approval of the Sale Transaction.

9. On June 13, 2023, the Debtors filed a *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 714] (the "**Cure Notice**") which provided procedures for (i) filing objections to the proposed Cure Payments, (ii) objecting to a

proposed assignment to the Successful Bidder, or (iii) disputing the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract.

10. Landlord, along with other landlords, filed its original objection to the proposed cure amount on June 26, 2023 [Doc. 1012]. The original objection at paragraph 17 reserved Landlord's rights to amend or supplement the original objection to include objections to the adequate assurance of future performance provided by the Debtor or any proposed assignee.

11. Pursuant to the Cure Notice, the Debtors listed the "Proposed Cure Amount" for the Landlord's lease as $30,905.55 ("**Proposed Cure Amount**").

12. On June 23, 2023, the Debtors filed the *Notice of Phase 1 Lease Auction, Qualified Bids, Lease Sale Hearing, and Related Lease Asset Information* [Docket No. 905] (the "**Phase 1 Auction Notice**"), which (i) notified interested parties that the Debtors had received one or more Qualified Bids on certain Lease Assets, as set forth on Schedule 1 attached thereto, (ii) confirmed the time and place of the Phase 1 Lease Auction and set forth the Permitted Auction Attendees (as defined herein), and (iii) notified interested parties that the Debtors, in consultation with the Consultation Parties, would file a supplemental notice to the Phase 1 Auction Notice confirming whether certain Lease Assets associated with the Debtors' "buybuy BABY" banner would be included in the Phase 1 Auction.

13. On June 27, 2023, the Debtors filed the *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Doc. No. 1114], in which they advised that the Phase I Lease Auction resulted in the proposed sale of the Lease, among other leases, to "Burlington". *See* Doc. No. 1114, p. 9, no. 60.

14. The Assumption Notice was filed on June 30, 2023, and identified the Assignee of

4

the Lease as Burlington. Exhibit C-3 attached to the Assumption Notice was the proposed Assumption and Assignment Agreement to be entered into by and between the Debtors and Burlington. Pursuant to that Agreement, Burlington was agreeing "to pay, perform, and discharge **all** of the Assignor's obligations and duties with respect to" the Lease. (emphasis added).

IV.    **OBJECTION**

15.    The Debtors may not assume and assign the Lease unless, at the time of assumption, they demonstrate, among other things, adequate assurance that it will cure, or promptly cure, any monetary defaults, in addition to providing "adequate assurance of future performance" under the Lease. 11 U.S.C. § 365(b)(1).

16.    With respect to leased space within a shopping center, which is applicable here, the Bankruptcy Code includes additional protections for landlords and provides that any "assignment of [the Lease] is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location**, *use, or exclusivity* provision**, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center." 11 U.S.C. § 365(b)(3)(C) (emphasis added).

17.    When a debtor chooses to assume an unexpired lease under Bankruptcy Code Section 365, it assumes the lease *cum onere*, so that the debtor must assume all the benefits, burdens, and obligations attendant thereto. *N.LR.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984).

   A.    **Debtors Must Cure any Monetary Defaults**

18.    Prior to assumption and assignment, Section 365(b)(1) requires the debtor to cure any monetary defaults. In addition, Section 365(b)(1) includes compensation to landlords for sums incurred for attorneys' fees and expenses. Landlord hereby objects to assumption of the Lease listed

5

in the Notices absent payment of attorneys' fees and expenses. *See* 11 U.S.C. §365(b)(1)(B); *LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

19. Additionally, prior to assumption and assignment, the Debtors must also compensate Landlord for any actual pecuniary losses under the Lease. *See* 11 U.S.C. §365(b)(1)(B). As part of their pecuniary losses, Landlord is entitled to attorneys' fees in connection with the Debtors' defaults under the Lease. *In re Mid Am. Oil, Inc.*, 255 B.R. 839, 841 (Bankr. M.D. Tenn. 2000); *In re Crown Books Corp.*, 269 B.R. 12, 19 (Bankr. D. Del. 2001).

20. As of July 17, 2023, the Debtors' Proposed Cure Amount, including attorney fees, are understated as follows:

| Property Name | Debtor | Debtor Proposed Cure Amounts | Lease Cure Amount | Attorneys' Fees | Total Cure Amount |
|---|---|---|---|---|---|
| Northway Mall Properties Sub, LLC | Buy Buy Baby, Inc. | $30,906.00 | $42,415.59 | $2,500.00 | $44,915.59 |

A summary of the Lease Cure Amount was attached as Exhibit A to the original objection and an updated copy was provided to Debtors' counsel on July 18, 2023.[3] Thus, before the Debtors may assume and assign the Leases, they must provide adequate assurance that they will pay these amounts and that any proposed assignee will be able to perform under the Leases in the future.

---

[3] Pursuant to an e-mail from Debtor's counsel on July 20, 2023, Landlord's counsel was advised that the Debtors were accepting Landlord's Lease Cure Amount including the attorney's fees, so this portion of the Objection appears to have been resolved.

21. Some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. Subject to the terms of the Lease, the Debtors pay fixed minimum rent, along with (where applicable) a pro-rata share of expenses such as real property taxes, insurance, utilities, tenant operating contributions ("**CTOC**"), fees, annual percentage rent, and the like. Certain charges, such as CTOC and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred. To the extent the estimated payments exceed actual charges; the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years may not yet be complete. In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Because these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time, and those obligations must be assumed by Burlington.

22. The Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any claims resulting from injury or damages to persons or property occurring in or about the Premises. Any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when any claim arose.[4] Nothing in any assumption or confirmation order should preclude the Landlord from pursuing the Debtors or Burlington, their insurance, or any other party that may be liable under the Lease, and the Landlord specifically reserves its rights to pursue such rights irrespective of any

---

[4] Any ability to assume the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

7

amounts claimed herein.

23. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption and assignment. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid promptly upon the assumption or assumption and assignment of the Lease. The Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption of the Lease to deal with any disputes that remain unresolved after such period.

### B. Debtors Must Demonstrate Adequate Assurance of Future Performance in Order to Assume and Assign the Lease.

24. Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

25. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlords with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code Section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal.

1980).

26. The initial burden of presentation as to adequate assurance falls upon the Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989).

27. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002), aff'd sub nom. R*amco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003). Bankruptcy Code Section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance.

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

28. Before 1984, Sections 365(b)(3)(C) and (D) of the Bankruptcy Code provided that an assignment of a shopping center lease must not "substantially" breach any use or exclusivity provision or "substantially" disrupt any tenant mix or balance in a shopping center. In 1984,

9

however, the legislature approved amendments to Section 365 of the Bankruptcy Code to afford further protection for landlords and tenants in shopping centers. *Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353*. Among these protections was the deletion of the word "substantially" from Section 365(b)(3) of the Bankruptcy Code.

29. Consistent with the legislative purpose, the debtor bears the burden of proof to demonstrate the proposed assignee's ability to provide the landlord with adequate assurance of future performance. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y, 1983); *see also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991).

30. Here, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in Bankruptcy Code Section 365(b)(3), and the proposed assignment would violate exclusive use provisions in other tenant leases and disrupt the tenant mix and balance in the Landlord's shopping center.

### C. Debtors' Assignment to Burlington Violates Landlord's Rights in the Marshalls' Lease.

31. Assignment of the Lease to Burlington is premised on Burlington's demonstration of adequate assurance of future performance, and Burlington's use and occupancy of the Leased Property is "subject to ... use, or exclusivity provisions ... contained in **any other lease** ... relating to the shopping center." *See* 11 U.S.C. § 365(b)(3)(C). Because a proper tenant mix is an essential ingredient of all shopping centers, this legislative purpose will be given effect even where the Debtors' own lease contains no effective exclusives or other use restrictions. *See Federated Dep't Stores*, 135 B.R. at 945.

32. Here, the assignment to Burlington violates Section 365(b)(3). In this case, Section 13.3 of the Lease includes the Marshalls Restriction as an "Exclusive Which Tenant Must Honor." *See Lease at Section 13.3.1 and Exhibit K-1.* Section 2(C), of the Marshall's lease, the relevant

portion of which is contained below, has a restriction that prohibits other tenants, which would include the Debtor or its assignee, from using more than 12,000 sq. feet of floor area for the sale or display at discount prices of brand-name clothing:

> **If Landlord permits any one occupant** (or any affiliate of such occupant) of the Shopping Center (exclusive of the premises currently occupied by Montgomery Ward and by Woolworth and to be occupied by Kids 'R Us for such period of time as Landlord shall not have control of the uses to which such premises may be put by reason of Landlord's existing agreements with Montgomery Ward, Woolworth and Kids 'R Us), **other than Tenant, to use more than twelve thousand (12,000) square feet of floor area for the sale or display at discount prices of brand-name clothing, then minimum rent payable pursuant hereto shall be reduced to forty percent (40%) of the amount provided for in Section 1 of ARTICLE III, and such reduction in minimum rent shall remain effective for so long as such use continues**; provided, however, that there shall be no abatement during any period in which Landlord shall be diligently enforcing any lease provisions prohibiting the foregoing activities if such enforcement in fact results in the discontinuation of the foregoing activities unless a failure to enforce a discontinuance is the result of any of the matters and events described in Subsection 2(D) below. Landlord may request in writing (the "Waiver Request") that Tenant waive the benefit of this Subsection 2(C) with regard to a specific instance cited in the Waiver Request. Tenant shall respond to the Waiver Request in writing within thirty (30) days of the date on which the Waiver Request is received by Tenant. If Tenant fails to respond within the said thirty (30) days or if Tenant waives the benefit of this Subsection 2(C), this Subsection 2(C) shall not apply to the specific instance cited in the Waiver Request. If Tenant responds and refuses to waive the benefit of this Subsection 2(C), which Tenant shall have the right to do in its sole discretion, this Subsection 2(C) shall continue to apply to the specific instance cited in the Waiver Request.

(emphasis added).

33. Additionally, Section 12.5.2 of the Lease specifically states that "Tenant shall comply with the terms and conditions of the OEA to the extent same affects the Premises." A copy of the OEA is attached as **Exhibit 2.**

34. Burlington's operations may directly violate the Existing Exclusives, including the Marshalls Restriction, and the OEA, in violation of Section 365(b)(3)(C) of the Bankruptcy Code and the proposed assignment cannot be approved. *See In re Three A's Holdings*, LLC, 364 B.R.

11

550, 561 (Bankr. D. Del. 2007) ("Because the BDOA has standing to press its objection, and the Court having ruled that the proposed assumption and assignment would violate the use restrictions contained in the CC & Rs, the request of the Debtors and the Designation Rights Purchaser for authority to assume and assign the Lease to Walgreens will be denied.")

35. More importantly, in the event that the Marshalls Restriction is breached, Marshalls may exercise remedies under the Marshalls Lease that will cause Landlord significant harm. Specifically, Marshalls may reduce the rent it has to pay by 60%. *See paragraph 32 above.* Thus, Landlord is at risk of significant harm in the event that the Court approves the assignment of the Lease to Burlington.

36. While Landlord's counsel and Debtors' counsel have been discussing these issues for over a week, no resolution has yet been reached so this Objection is being filed out of an abundance of caution. Landlord remains hopeful that an amicable resolution can be reached by which Burlington agrees to abide by <u>all</u> of the terms of the Lease, including the Existing Exclusives and the OEA.[5]

### D. The Proposed Assignment will Disrupt the Tenant Mix and Balance

37. Section 365(b)(3)(D) of the Bankruptcy Code states that a shopping center lease cannot be assigned if such assignment would "disrupt any tenant mix or balance in such shopping center." 11 U.S.C. § 365(b)(3)(D); *see also In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 307 (Bankr. S.D.N.Y. 1983) (applying Section 365(b)(3)(D) to reject the proposed assignment because

---

[5] Of additional concern is language that has been included in other orders approving lease sales which states "*Except as mandated by section 365(b)(3)(C) and (D) of the Bankruptcy Code, to the extent any Lease contains use restrictions which would otherwise prohibit Burlington from operating at the applicable lease premises in the ordinary course of its business, including any restrictions on the sale of some or all of the items and goods typically sold by Burlington, such use restriction provisions are deemed to be unenforceable anti-assignment provisions pursuant to section 365(f) of the Bankruptcy Code.*" See Doc. 1099, for example, at paragraph 10. This language cuts against any assertion that Burlington will abide by the terms of any lease assigned to it.

it would cause substantial disruption to tenant mix and balance); *In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991) (rejecting assignment of the lease because of disruption of tenant mix and balance). Thus, by enacting Section 365(b)(3)(D) of the Bankruptcy Code, Congress intended for the courts to be especially solicitous in the shopping center context in ensuring that tenant mix and balance are not disrupted by any potential lease assignments, and to protect landlords and other shopping mall tenants from the damage caused by bankrupt tenants. *In re Federated Dep't Stores, Inc.*, 135 B.R. 941, 945 (Bankr. S.D. Ohio 1991); *see also Rockland Center Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.)*, 34 B.R. 299, 303 (Bankr. S.D.N.Y. 1983) ("a good tenant mix in a shopping center benefits the landlord and the tenants as well").

38. Section 365(b)(3)(D) of the Bankruptcy Code favors minimizing disruption to carefully planned tenant mixes in shopping centers. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299 (Bankr. S.D.N.Y. 1983). The Third Circuit, in *Joshua Slocum*, carefully noted that a bankruptcy court must be sensitive to the non-debtor party and the underlying tenet that requires that the non-debtor receive the full benefit of its bargain. 922 F.2d at 1089-90.

39. The operation of a second retailer selling primarily "off price sale" goods, i.e., Burlington, within the shopping center, rather than a store that does not conflict with the primary use of any existing tenants, will disrupt the carefully planned tenant mix and balance currently in place at the shopping center. Accordingly, the Court should not permit the Debtor to assign the Lease to Burlington.

**V.** **Joinder and Reservation of Rights**

40. To the extent consistent with the objections expressed herein, the Landlord joins in with the objections raised by other landlords. The Landlord further reserves the right to amend

13

and/or supplement this Objection as may be appropriate based on any new information provided by Debtors or the proposed assignee, or as developed through formal or informal discovery.

### VI. Conclusion

41. In summary, the Debtors cannot provide Landlord with adequate assurance of future performance as a matter of law. Accordingly, the Debtors' request to assume and assign the Lease to Burlington should be denied.

WHEREFORE, the Landlords respectfully requests that this Court enter an Order sustaining this Objection, denying the proposed assumption and assignment of the Lease to Burlington, and granting the Landlord such other and further relief as it deems just and proper.

Dated: July 21, 2023              **PORZIO BROMBERG & NEWMAN, P.C.**

By: */s/ John S. Mairo*
John S. Mairo, Esq.
100 Southgate Parkway
Morristown, NJ 07962-1997
(973) 538-4006
(973) 538-5146 Facsimile
jsmairo@pbnlaw.com

--and--

**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113
(216) 583-7120
(216) 583-7121 Facsimile
Michael S. Tucker, Esq.
*(pro hac vice admission pending [Doc. 1379])*
mtucker@ulmer.com

*Counsel for Northway Mall Properties Sub, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2023, I caused a true and correct copy of the foregoing document to be served by electronic means through the CM/ECF system to all registered participants in this case and by e-mail on the parties identified on the Service List.

*/s/ John S. Mairo*
John S. Mairo

**Service List**

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Joshua A. Sussberg, P.C.,
Emily E. Geier, P.C.,
Derek I. Hunter, and
Ross J. Fiedler
Email: joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com
ross.fiedler@kirkland.com

Cole Schotz P.C.
Michael D. Sirota, Esq.
Warren A. Usatine, Esq., and
Felice R. Yudkin, Esq.
25 Main Street Hackensack
New Jersey 07601
email: msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

Davis Polk & Wardwell LLP,
450 Lexington Avenue
New York, New York 10017
Attn: Marshall S. Huebner
marshall.huebner@davispolk.com
Adam L. Shpeen
adam.shpeen@davispolk.com
Steven Z. Szanzer
steven.szanzer@davispolk.com
Michael Pera
michael.pera@davispolk.com

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attn: David M. Hillman
DHillman@proskauer.com
Megan R. Volin
MVolin@proskauer.com

Office of the United States Trustee
Andrew R.Vara, U.S. Trustee, Regions 3 & 9
Fran B. Steele, Esq.
Fran.B.Steele@usdoj.gov

Pachulski Stang Ziehl & Jones LLP
Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
780 Third Avenue, 34th Floor
New York, NY 10017
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

Overstock.com, Inc.
799 W. Coliseum Way
Midvale, UT 84047
Attention: Chief Legal Officer and Corporate Secretary
Email: gnickle@overstock.com

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Attn: Scott K. Charles
Michael S. Benn
Gordon S. Moodie
E-Mail: SKCharles@wlrk.com
MSBenn@wlrk.com
GSMoodie@wlrk.com