| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)** **BARCLAY DAMON LLP** Scott L. Fleischer, Esq. 1270 Avenue of the Americas, Suite 501 New York, NY 10020 Telephone: (212) 784-5810 sfleischer@barclaydamon.com Kevin M. Newman, Esq. Barclay Damon Tower 125 East Jefferson Street Syracuse, NY 13202 Telephone: (315) 413-7115 knewman@barclaydamon.com *Counsel for RPT Realty, L.P.* | |
| In re: BED BATH & BEYOND, INC., *et al.*,[1] Debtors. | Chapter 11 Case No. 23-13359 (VFP) Judge: Vincent F. Papalia (Jointly Administered) |

## OBJECTION OF LANDLORD RPT REALTY, L.P. TO LEASE REJECTION NOTICE

RPT Realty, L.P., ("Landlord"), by and through its counsel, respectfully submits this objection to the *Notice of Rejection of Certain Executory Contracts and Unexpired Leases* [Dkt. 1302] (the "Objection"). In support of this Objection, the Landlord respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The Debtors' attempt to retroactively reject the Lease as of June 30, 2023 flies in the face of the Lease Rejection Procedures Order, which explicitly provides that the rejection date

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases (collectively, the "Debtors" and each a "Debtor") and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

shall not be earlier than the date the Debtors file and serve the rejection notice.  Here, that was July 11, 2023.  If the Debtors wanted to reject the Lease effective as of June 30, 2023, they could have filed a rejection notice by that date.

2.    Instead, the Debtors purportedly accepted the Landlord's Bid, as is, following the phase 1 lease auction.  The Bid was for termination of two leases as a "package" and contemplated a July 30, 2023 termination date and the payment of July rent.  However, the proposed termination of the other lease in the package was not accepted and the Debtors claimed to surrender the Premises at the end of June, which does not comport with a July 30, 2023 Lease termination date.

3.    By not rejecting the Lease and allowing it to go into July, the Debtors maintained optionality by which they could have later tried to move forward with the Bid, continued to solicit bids from third parties, or rejected the Lease if nothing else panned out.

4.    Even if the Debtors are not held to the plain language of the Lease Rejection Procedures Order, a June 30, 3023 Lease rejection date is not supported by applicable law.

5.    The majority view nationwide is that retroactive rejections are not permitted at all. Third Circuit cases consistently point to retroactive rejections – that is, rejections effective prior to entry of a rejection order – as only being approved in narrow circumstances, if at all.  Critically, though, when retroactive lease rejections are permitted in the Third Circuit, it is to the date the motion or notice was filed, not when the premises was surrendered (if earlier than the filing).

## JURISDICTION

6.    The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

7.     On April 23, 2023 (the "Petition Date"), each of the above-referenced debtors (the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Court.

8.     Upon information and belief, the Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     The Landlord, by its predecessor-in-interest, and Debtor Bed Bath & Beyond Inc. are parties to an unexpired lease of nonresidential real property (the "Lease") for certain premises located at 5800 Deerfield Road, Mason, OH, referred to as store no. 768 (the "Premises").

10.    The Premises is located within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

11.    On April 24, 2023, the Debtors filed a motion to establish procedures governing the future rejections of unexpired non-residential real property leases and other executory contracts [Dkt. 80] (the "Lease Rejection Procedures Motion").

12.    On May 3, 2023, the Debtors filed the *Motion For Entry of an Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Dkt. No. 193] (the "Lease Auction Procedures Motion") to establish procedures under which the Debtors could assume and assign or terminate leases through a lease auction process.

13.    On May 17, 2023, the Court entered an order granting the Lease Rejection Procedures Motion [Dkt. 382] (the "Lease Rejection Procedures Order").

3

14.     On May 22, 2023 the Court entered an order granting the Lease Auction Procedures

Motion [Dkt. No. 422] (the "Lease Auction Procedures Order").

15.     On June 22, 2023, pursuant to the terms of the Lease Auction Procedures Order,

the Landlord submitted a "package" bid to terminate both the Lease and another lease through a

partial waiver of the Landlord's cure amount under each of the leases.  Attached as **Exhibit 1**

hereto is an email transmitting the bid and the attachment to that email, which collectively

constitute the "Bid".

16.     The email transmitting the Bid states: "The current bid is a 'package'; the bidder

may be willing to enter into a lease termination agreement for only one (1) of the two (2) leases if

not terminated as a group, but this determination will be dependent on developments before and/or

during the auction."  Bid, p. 1.   The revised proposed termination agreement for the Lease

contemplates a July 30, 2033 Lease termination date ("The Lease is terminated effective as of July

30, 2023") and payment of July rent unless there was an intervening rejection or termination

("unless the Lease is terminated or rejected by order of the Bankruptcy Court effective as of June

30 or earlier, Tenant shall timely pay to Landlord the Lease obligations for July 2023").  Bid, pp

5-6.

17.     On June 26, 2023, the Landlord, through a representative and undersigned counsel,

attended the phase 1 lease auction in person.  No bids besides the Landlord's Bid were received

for the Lease.  A&G Realty Partners, LLC, the Debtors' real estate consultant and advisor, solicited

$100,000 in cash for all bids that did not provide such consideration.[2]  When A&G reached the

---

[2] "MR. MATLAT: … The first property up is going to be store No. 148. That's a Bed Bath and Beyond in Birmingham, Alabama. We have a current high bid of $3,567. And the debtor would look for, to close this out today, a bid of $100,000 is going to be our suggested bid price. So it will be a $100,000 in cash to be settled, if you're a landlord … . … So you have a decision to make. You can be announced as a successful bidder if you increase your offer to a $100,000 cash on top of a full waiver of the pre-petition. … We kind of learned what we did from the first one. Is the landlord interested, for clarity and certainty, subject to the going concern sale, to make an offer of a waiver of the pre-petition plus $100,000 to be set off in cash or against post-petition?"  Auction Transcript [Dkt. 1397], pp. 18-20.

Lease, the Landlord chose not to amend the Bid to include cash (or amend it in any other way),

resulting in the Debtors calling off the auction as to the Lease.  Auction Transcript [Dkt. 1397] (as

defined below), p. 52.[3]  Relevant portions of the Auction Transcript are collectively attached hereto

as **Exhibit 2**.

18.    On June 27, 2023, the Debtors filed the *Notice of Successful and Backup Bidder*

*With Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and*

*Assignment of Certain Unexpired Leases* [Docket No. 1114] (the "Successful Bidder Notice"),

identifying certain proposed successful and backup bidders for various leases resulting from the

phase 1 lease auction.  Despite the result of the auction and the package nature and terms of the

Bid, the Successful Bidder Notice included the Landlord as the proposed successful bidder for the

Lease with a bid of $2,714.00, which was the partial credit bid waiver amount in the Bid, but the

lease for store no. 213 – the other lease in the package Bid – was not included.  Successful Bidder

Notice, p. 7.

19.    On June 28, 2023, undersigned counsel sent an email to Debtors' counsel inquiring

as to the Bid being included on the Successful Bidder Notice, and Debtors' counsel replied with a

confusing message given the Bid: "We can confirm that the Debtors have accepted the partial

credit bid on the store.  The store is a June closure and the revised LTA is acceptable to the

Debtors."  Attached collectively hereto as **Exhibit 3** are these June 28, 2023 emails.

20.    Later on June 28, 2023, Debtors' counsel sent an email to undersigned Landlords'

counsel congratulating Landlord on the winning bid but also purporting to surrender control of the

---

[3] "MR. MATLAT:  Next up is No. 768, Mason, Ohio.  And No. 768 Mason, Ohio, we have a high bid of 2,714.  MR.
FLEISCHER:  Yes, that's me, Scott Fleischer, Barclay Damon.  Landlord does not wish to bid further at this time.
MR. MATLAT:  Thank you, Scott.  Okay, next up we have …".

Premises as of June 30, 2023 at 11:59 p.m. local time and declaring that the Debtors would not

pay rent for July 2023.  Attached as **Exhibit 4** hereto is this June 28, 2023 email.

21.      On July 3, 2023, undersigned counsel to the Landlord replied to Debtors' counsel

citing issues with the Debtors' purported acceptance of the Landlord's bid through the Successful

Bidder Notice.  Attached as **Exhibit 5** hereto is this July 3, 2023 email.

22.      On July 6, 2023, after undersigned counsel to the Landlord followed up on the July

3 email, Debtors' counsel replied "You win. We no longer consider RPT bid for the Mason OH

location as a successful bid."  Attached as **Exhibit 6** hereto is this July 6, 2023 email.

23.      Since then, undersigned counsel to the Landlord had been asking Debtors' counsel

to file a notice of withdrawal of the Successful Bidder Notice as to the Lease or otherwise file

something on the docket confirming the Debtors would not attempt to move forward with the Bid.

During that period, the Debtors maintained their optionality, including to solicit bids from others

given the lack of a lease rejection.

24.      On July 11, 2023 – the day of the objection deadline to the Successful Bidder Notice

and well after the purported surrender of the Premises, while initially stating they accepted the Bid

– the Debtors filed the Rejection Notice [Dkt. 1302].  The Rejection Notice provides that the

"Debtors mistakenly included the [Lease]" on the Successful Bidder Notice, "which is hereby

deemed amended to exclude the [Lease] from the [Successful Bidder Notice]."  Rejection Notice,

p. 2.

25.      On July 18, 2023, the Debtors filed the *Notice of Auction Transcript* [Dkt. 1397],

which includes the transcript of the phase 1 lease auction held on June 26, 2023 (the "Auction

Transcript").

## OBJECTION

*A*      *The Lease Rejection Procedures Order Prohibits a June 30, 2023 Rejection Date*

26.      The Lease Rejection Procedures Order provides that "the Rejection Date for a lease

of non-residential real property rejected pursuant to these Rejection Procedures *shall not occur*

*earlier than the date the Debtors filed and served the applicable Rejection Notice*."  Lease

Rejection Procedures Order, 3(d) (emphasis added).[4]

27.      The language could not be more clear – the earliest possible rejection date for the

Lease is July 11, 2023, the date of filing of the Rejection Notice.

28.      For additional context, the Bid (i) contemplated a July 30, 2023 Lease termination

date, (ii) required the payment of July rent under the Lease, and (iii) was a package bid for the

Lease and another lease of the Landlord. Bid, pp. 1-2, 5-6.  Despite these terms and the Bid not

being accepted at the auction, the Debtors attempted to deem a non-severable part of the Bid as

successful but on different terms that perhaps they thought would benefit them – no payment of

July rent, what appeared to be a June 30, 2023 lease termination date, and not accepting the

termination bid for the Landlord's other lease despite the Bid being a package.  This is all while

Debtors' counsel, following a post-auction inquiry, replied that the lease termination agreement in

the Bid was accepted as is.  *See* Ex. 2, p. 1 ("… the Debtors have accepted the partial credit bid on

---

[4] The full text of sec. 3(d) of the Lease Rejection Procedures Order is as follows: "d. ***No Objection Timely Filed***. If no objection to the rejection of any Contract is timely filed, the Debtors shall file a Rejection Order under a certificate of no objection. Each Contract listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the applicable Rejection Counterparty agrees; provided, however, that the Rejection Date for a rejection of a lease of non-residential real property shall not occur until the later of (i) the Rejection Date set forth in the Rejection Notice and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises; provided, further, that the Rejection Date for a lease of non-residential real property rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice."

the store … and the revised LTA is acceptable to the Debtors.").

29.     The Debtors easily could have included the Lease on a rejection notice by June 30, 2023, which would have allowed them to reject the Lease by that date provided they surrendered pursuant to the terms of the Lease Rejection Procedures Order.

30.     Instead, the Debtors preserved their optionality and ran the risk that the Landlord would raise issues with their purported acceptance of the Bid as the calendar flipped into July.  If another bidder came along before the hearing on the Successful Bidder Notice and they wanted to pursue them for example, they could have done so.[5]  Even though the Debtors didn't occupy the space by selling merchandise in July, the delayed rejection date still provided the Debtors with flexibility that must come with the attendant cost under Bankruptcy Code section 365(d)(3).

31.     The failure to file a rejection notice before the end of June – in fact 11 days into July, and not even immediately after being alerted to the Bid acceptance issues for that matter – is fatal to the Debtors' argument for a June 30, 2023 Lease rejection date.

32.     The Debtors and Landlord knew the rules of the game – here, the Lease Rejection Procedures Order and Lease Auction Procedures – and must be bound by them.  The Lease Rejection Procedures Order prohibits a June 30, 2023 Lease rejection date by requiring the earliest possible Lease rejection date to be July 11, 2023.  The Court does not need to look any further.

---

[5] As long as it was before an order entered rejecting or terminating the Lease.

B     *Even if the Lease Rejection Procedures Order is Not Deemed to Prohibit a June 30, 2023 Rejection Date, Applicable Law Does Not Permit It*

33.      If the Court does not hold the Debtors to the Lease Rejection Procedures Order and undertakes a case law analysis of whether a retroactive rejection of the Lease to June 30, 2023 would be appropriate, applicable law provides that July 11, 2023 – the date of filing of the Rejection Notice – is the appropriate rejection date.

34.      Courts in the Third Circuit have permitted nunc pro tunc lease rejections in narrow circumstances, but importantly, in any such scenario the lease rejection notice or motion must have been filed by the proposed lease rejection date.  The Bankruptcy Court for the District of Delaware has set forth this limitation explicitly.  *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (emphasis added) (while section 365(a) "makes court approval a condition precedent to the effectiveness of a trustee's rejection of a nonresidential lease, and thus, the date of court approval controls, … the bankruptcy court has discretion to approve a rejection of a nonresidential lease … retroactive *to the motion filing date*, when principles of equity so dictate."); *In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (In the context of a fee application review, the Court weighed in on nunc pro tunc rejection attempts during the case.  "Normally, the effective date of a rejection is the date the Order is entered. … Rejection has been allowed nunc pro tunc to the date the Motion is filed or the premises is surrendered, *whichever is later*, only in certain circumstances. … Notwithstanding that standard, on numerous occasions the Debtors have sought nunc pro tunc rejection of leases, in some instances effective before the motion was filed. … [and] we recently advised counsel for the Debtors that their actions in this case do not rise to a level required for nunc pro tunc rejection") (emphasis added), citing *In re CCI Wireless, LLC*, 279 B.R. 590 (Bankr. D. Colo. 2002) ("holding that a Court, 'when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the *motion filing date*'")

9

(emphasis added); *TW, Inc. v. Angelastro (In re TW, Inc.)*, 2004 U.S. Dist. LEXIS 671, *5 (D. Del. Jan. 14, 2004) ("A bankruptcy court may 'when principles of equity so dictate … approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the *motion filing date*.'") (emphasis added), quoting *Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995).

35.     Put another way, the nunc pro tunc analysis does not turn on whether the lease rejection date can be before the motion is filed, but whether it can be prior to the date the order is entered, which is standard unless particular circumstances require a different outcome.  *See, e.g., Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720 (Bankr. D. Del. 2009) ("Under appropriate circumstances, this Court may enter a lease rejection order with an effective date earlier than the date the order is entered."); *In re S. Lincoln Med. Group, P.C.*, 2008 Bankr. LEXIS 468, at *6-7 (Bankr. D. Neb. Feb. 21, 2008) (citations and quotations omitted), citing 10 *Collier on Bankruptcy* P 6006.01[4]  [*7] (Alan N. Resnick et al. eds., 15th ed. rev.) ("The majority view is that the entry of the order is required to absolutely reject the contract or lease. This is the preferred view, because the other party to the lease cannot act to mitigate damages until the court order is actually entered. The minority view is that rejection is effective as of the date of the motion. *Collier's* also notes, however, that several courts which follow the majority position have adopted a compromise version in holding that the filing date of the motion can be the effective date of the rejection if the equities of the situation allow.").

36.     Additional support for this concept is provided by the Bankruptcy Court for the District of Delaware, which identified four factors to consider whether the rejection may be "effective as of *service of the motion*".  The factors include (i) a prior unequivocal surrender of the premises to the landlord, (ii) the motion being filed and served on the landlord, (ii) the motion

10

stating that the creditors committee agrees with the motion, and (iv) the debtor acknowledging it won't have the right to withdraw the motion prior to the hearing. *In re Namco Cybertainment, Inc.*, Case No. 98-173 (PJW) (Bankr. D. Del. Apr. 15, 1998) (emphasis added). A portion of the transcript of a hearing before the Honorable Peter J. Walsh, United States Bankruptcy Judge in *In re Namco Cybertainment, Inc.*, Case No. 98-173 (PJW), dated April 15, 1998 is attached hereto as **Exhibit 7**.

37. As referenced above, permitting a retroactive lease rejection, even in narrow circumstances, is not supported by all courts. Even some courts within the Third Circuit have prohibited retroactive rejections. *See, e.g.*, *In re Four Star Pizza, Inc.*, 135 B.R. 498, 501 (Bankr. W.D. Pa. 1992) (citations omitted).[6] In that same vein, some courts have held that a landlord cannot rely on anything short of a lease rejection order for certainty on a lease rejection. *See, e.g.*, *In re Amber's Stores*, 193 B.R. 819, 826-27 (Bankr. N.D. Tex. 1996).[7]

38. An emailed statement that a premises is being surrendered while at the same time accepting a bid that contemplates a July 30, 2023 termination date does not qualify as unequivocal surrender as of June 30, 2023. *See Rubloff Dev. Group, Inc. v. Kmart Corp.*, 389 B.R. 555, 559 (N.D. Ill. 2008), quoting *In re Kmart Corp.*, 2007 Bankr. LEXIS 4215, at *22 (Bankr. N.D. Ill. Nov. 20, 2007) (in affirming a Bankruptcy Court decision in which the landlord was not permitted

---

[6] "A minority of courts have held that court approval is not a condition precedent to an effective rejection and that rejection may occur prior to issues of the order approving rejection. … The majority view appears to be better reasoned. Issuance of an order by the court approving rejection of the lease is a condition precedent to effective rejection of the lease by the debtor. In addition to the plain language of § 365(a), which expressly requires a debtor to obtain prior court approval of a lease rejection, Bankruptcy Rules 6006(a) and 9014 mandate that a lessor be given reasonable notice and the opportunity to be heard prior to adjudication of its rights under the lease. The minority view effectively would render any subsequent court order approving rejection a meaningless formality."

[7] "When can the lessor rely on the rejection by the debtor and be in a position to re-lease the premises? The only logical answer is when the court enters an order rejecting the lease, because it is the only final resolution of the issue. …[T]hat is why § 365(a) makes review by the court a necessary step in the trustee's rejection. If the lessor re-leases the property prior to the court's order, then the lessor runs the risk of the court's denial of the motion and a situation where the lessor has entered into two contracts for the same lease space with two different parties."

to maintain a claim for repudiation when a lease was not actually rejected yet, the Court held "no matter how unequivocal a debtor in possession's statements are prior to the rejection becoming effective, those statements are effectively rendered equivocal because of the operation of section 365 of the Bankruptcy Code").

39.     Without filing a rejection notice by June 30, 2023, the Debtors maintained flexibility by being able to try and go forward with the Bid, solicit bids from others, or reject the Lease later if no other scenario worked out.

40.     As of June 30, 2023, the Landlord did not know what the ultimate treatment of this Lease would be.  Up until July 11, 2023 (and arguably even after that), the Debtors could have changed their mind and started conducting business at the Premises again or sought to assign the Lease to a third party.  Surely on June 30, 2023, the Landlord could not have re-let the Premises, disposed of remaining property, marketed the space, or otherwise taken full possession of the Premises without the certainty of at least a filed rejection notice, let alone a rejection order.  This is especially true given the proposed acceptance of the Bid, which contemplated a July 30, 2023 Lease termination.

41.     Under the circumstances, this was clearly an equivocal surrender and it was not until the filing of the Rejection Notice – or at the absolute earliest the Debtors could argue, which the Landlord does not agree with, upon the email from Debtors' counsel on July 6, 2023 confirming they would not move forward with the Bid – that the Debtors' intent to reject the Lease became unequivocal.

42.     Aside from the rent-related implications, there are other important considerations for the timing of the Lease rejection date.  A filed document proposing a lease rejection serves as notice to the world that, among other things, (i) the Debtors will no longer be required to maintain

insurance or indemnify the Landlord for post-rejection claims, (ii) parties in interest have a certain period of time to object, (iii) those with an interest in personal property at the Premises may assert such interests, and (iv) the Debtors are unequivocally surrendering the Premises.  The lease rejection order would then memorialize what was proposed.  If the Lease rejection date were June 30, 2023, then from July 1, 2023 forward, the Landlord would be solely responsible for issues at the Premises such as property damage, personal injury claims, or other items that would have been covered by the Debtors or their insurance policies.  This result would be inequitable given, among other things, the lack of filing of a rejection notice and purported acceptance of the Bid.

43.    The Debtors are in control of the docket and could have filed a notice under the Lease Rejection Procedures Order as late as June 30, 2023.  The fact that they did not do so and instead tried to move forward with the Bid while maintaining flexibility to solicit or accept other offers is not the Landlord's fault.  This is especially true since the Landlord promptly notified the Debtors, through counsel, of the issues with the Bid and over a week went by until the Rejection Notice was filed.  Applicable Third Circuit case law – if the Court reaches this analysis given the governing Lease Rejection Procedures Order – also requires the Lease rejection date to be July 11, 2023, the date of filing of the Rejection Notice, at the earliest.

## RESERVATION OF RIGHTS

44.    The Landlord reserves its rights to supplement this Objection and to make such other and further objections as it may deem necessary or appropriate.

**WHEREFORE**, the Landlord respectfully requests that the Court enter an order consistent with this Objection, and grant the Landlord any additional and further relief the Court deems just and proper.

Dated: July 21, 2023
   New York, New York

         **BARCLAY DAMON LLP**

         By*:*  */s/Scott L. Fleischer*
         Scott L. Fleischer, Esq.
         1270 Avenue of the Americas, Suite 501
         New York, New York 10020
         Telephone:  (212) 784-5810
         Email:  sfleischer@barclaydamon.com

         Kevin M. Newman, Esq.
         Barclay Damon Tower
         125 East Jefferson Street
         Syracuse, NY 13202
         Telephone:  (315) 413-7115
         knewman@barclaydamon.com

         *Attorneys for RPT Realty, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 21, 2023 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey.

I further certify that on July 21, 2023, I caused a copy of the foregoing document to be served by electronic mail upon the following parties at their designated email addresses:

| | |
|---|---|
| Joshua A. Sussberg, P.C. | joshua.sussberg@kirkland.com |
| Emily E. Geier, P.C. | emily.geier@kirkland.com |
| Derek I. Hunter, Esq. | derek.hunter@kirkland.com |
| Ross J. Fiedler, Esq. | ross.fiedler@kirkland.com |
| Michael D. Sirota, Esq. | msirota@coleschotz.com |
| Warren A. Usatine, Esq. | wusatine@coleschotz.com |
| Felice R. Yudkin, Esq. | fyudkin@coleschotz.com |
| Fran B. Steele, Esq. | fran.b.steele@usdoj.gov |
| John Schanne, Esq. | john.schanne@usdoj.gov |
| Alexandria Nikolinos | alexandria.nikolinos@usdoj.gov |
| Robert J. Feinstein, Esq. | rfeinstein@pszjlaw.com |
| Bradford J. Sandler, Esq. | bsandler@pszjlaw.com |
| Paul J. Labov, Esq. | plabov@pszjlaw.com |
| Colin R. Robinson, Eq. | crobinson@pszjlaw.com |

I further certify that on July 21, 2023, I caused a copy of the foregoing document to be served by first class mail upon the following parties at their designated addresses:

Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, New Jersey 07083

*/s/Scott L. Fleischer*
Scott L. Fleischer

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 21, 2023 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey.

I further certify that on July 21, 2023, I caused a copy of the foregoing document to be served by electronic mail upon the following parties at their designated email addresses:

| | |
|---|---|
| Joshua A. Sussberg, P.C. | joshua.sussberg@kirkland.com |
| Emily E. Geier, P.C. | emily.geier@kirkland.com |
| Derek I. Hunter, Esq. | derek.hunter@kirkland.com |
| Ross J. Fiedler, Esq. | ross.fiedler@kirkland.com |
| Michael D. Sirota, Esq. | msirota@coleschotz.com |
| Warren A. Usatine, Esq. | wusatine@coleschotz.com |
| Felice R. Yudkin, Esq. | fyudkin@coleschotz.com |
| Fran B. Steele, Esq. | fran.b.steele@usdoj.gov |
| John Schanne, Esq. | john.schanne@usdoj.gov |
| Alexandria Nikolinos | alexandria.nikolinos@usdoj.gov |
| Robert J. Feinstein, Esq. | rfeinstein@pszjlaw.com |
| Bradford J. Sandler, Esq. | bsandler@pszjlaw.com |
| Paul J. Labov, Esq. | plabov@pszjlaw.com |
| Colin R. Robinson, Eq. | crobinson@pszjlaw.com |

I further certify that on July 21, 2023, I caused a copy of the foregoing document to be served by first class mail upon the following parties at their designated addresses:

Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, New Jersey 07083

                    */s/Scott L. Fleischer*
                    Scott L. Fleischer

15

# Exhibit 1

| | |
|---|---|
| **From:** | Fleischer, Scott L. |
| **Sent:** | Thursday, June 22, 2023 4:10 PM |
| **To:** | emilio@agrealtypartners.com |
| **Cc:** | 'Sussberg, Josh'; 'Geier, Emily'; 'Hunter, Derek I.'; 'Fiedler, Ross J.' |
| **Subject:** | Phase 1 Lease Auction Bid - BBBY @ (i) Deerfield Towne Center, Mason, OH and (ii) Vista Plaza, Jensen Beach, FL [IMAN-ACTIVE.FID3152051] |
| **Attachments:** | BBB - Phase 1 Lease Auction Bid Package - RPT Realty(26566944.1).pdf |

Emilio:

Please see the attached bid package containing the (i) executed bidder registration form, (ii) executed lease termination agreements, and (iii) redlined lease termination agreements reflecting comments to the form.

The bidder is prepared to enter into and consummate the transactions contemplated herein immediately upon entry by the Bankruptcy Court of an order approving the termination of the leases, and the bid is irrevocable for thirty (30) days after the conclusion of the lease auction. The current bid is a "package"; the bidder may be willing to enter into a lease termination agreement for only one (1) of the two (2) leases if not terminated as a group, but this determination will be dependent on developments before and/or during the auction.

Please confirm this constitutes a Qualified Bid and whether there are any other Qualified Bids covering these leases so the bidder knows whether it should attend the auction. Thank you.

Regards,
Scott Fleischer

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B4D0C910

## EXHIBIT C TO LEASE SALE PROCEDURES

## OFFER AND QUALIFIED BIDDER FORM

Bidder,____RPT Realty, L.P._____, hereby:

- Offers to purchase the following Lease Asset(s) for the bid set forth below, pursuant to this Offer and Qualified Bidder Form and the terms and conditions of the accompanying Lease Termination Agreement, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* subject to approval by the United States Bankruptcy Court for the District of New Jersey in the Chapter 11 Cases jointly administered under *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Lease Sale Procedures").

Bidder's offer is for the following Lease Assets at the following bids:

| LEASE ASSET | BID/PURCHASE PRICE |
|---|---|
| 1. Lease dated January 10, 2003 between Bed Bath & Beyond Inc. and RPT Realty, L.P. for Deerfield Towne Center in Mason, Ohio | Credit of $2,713.99, representing a portion of the undisputed cure amount of $47,841.75 that was agreed to by Tenant's counsel on June 21, 2023 |
| 2. Lease dated June 10, 1998 between Bed Bath & Beyond Inc. and RPT Realty, L.P. for Vista Plaza in Jensen Beach, Florida | Credit of $3,000.00, representing a portion of the undisputed cure amount of $10,462.61 |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | Credit of $5,713.99 |

**Bidder hereby warrants and represents as follows**:

(a)     Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Lease Sale Procedures, the terms and conditions of which are incorporated herein by reference.

(b)     Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c)     To the extent that the words and phrases which are capitalized in this Offer and Qualified Bidder Form have been defined in the Lease Sale Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d)     Each Bid made at a Lease Auction shall constitute a binding, irrevocable "Bid" pursuant to the Lease Sale Procedures.

(e)     Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Lease Asset(s) on an as-is, where-is basis, with no contingencies.

(f)     Bidder (a) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease Asset(s) in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease Asset(s) or the completeness of any information provided in connection therewith or the Lease Auction other than as provided in the Assumption and Assignment Agreement; (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; and (d) by submitting an Assignment and Assumption Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its bid, the Lease Sale Procedures, or any earnest money Deposit.

(g)     Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Lease Sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) Bidder acknowledges that it will comply with the Lease Sale Procedures.

(h)     Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i)     Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Lease Sale.

(j)     Identification of how the Bidder will pay the purchase price at Closing.

*[Signatures appear on following page]*

AGREED & ACCEPTED this 22nd day of June        , 2023

Company: RPT REALTY, L.P., a Delaware limited partnership
          RPT Realty,
          a Maryland real estate investment trust
By: Its General Partner
Name:
Title:    *Raymond Merk*
          EBA382FC3F7EC6... Chief Accounting Officer

*BIDDER I.D.*

Bidder's Company:    RPT REALTY, L.P.

Bidder's Address:    19 W 44TH Street; Suite 1002; New York, NY  10036

Bidder's Contact:    Timothy Collier

Bidder's Phone & Facsimile Numbers:    212-221-3027

Bidder's Email Address:    tcollier@rptrealty.com

Bidder's Tax ID Number:    ███████

*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name:    Scott Fleischer

Law Firm or Company:    Barclay Damon LLP

Address:    1270 Avenue of the Americas, Suite 501, New York, NY 10020

Phone & Facsimile Numbers: (P) 212-784-5810; (F) 212-784-5799

Email Address:    sfleischer@barclaydamon.com

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B42B0BC8

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 22nd day of June, 2023 by and between RPT Realty, L.P. ("Landlord") and Bed Bath & Beyond Inc. ("Tenant" or "Debtor", and collectively with Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated January 10, 2003 (the "Lease"), covering certain premises located at Deerfield Towne Center in Mason, Ohio (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), have filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, restoring Landlord to possession of the Premises as of the Termination Date, the Parties releasing the other, and Landlord being able to dispose of any remaining property at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows, subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals. The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination. The Lease is terminated effective as of July 30, 2023 (the "Termination Date"), on which date Landlord shall be deemed to be in full possession of the Premises.

3.      Consideration. Landlord shall credit Tenant $2,713.99, representing a portion of the undisputed cure amount of $47,841.75 that was agreed to by Tenant's counsel on June 21, 2023.

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however,

Tenant shall not be released from claims by Landlord for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date; provided further, however, that unless the Lease is terminated or rejected by order of the Bankruptcy Court effective as of June 30 or earlier, Tenant shall timely pay to Landlord the Lease obligations for July 2023.

5.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, Landlord shall not be released from claims by Tenant for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date.

6.      As further consideration for the releases in this Agreement, the Parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.      In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases in this Agreement have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the parties released in this Agreement from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.      <u>Furniture, Fixtures and Equipment (FF&E) and Personal Property</u>. Any FF&E or other personal property remaining at the Premises as of the Termination Date is deemed abandoned, and the Landlord and their managing agents are free to dispose of the FF&E and personal property in their sole and absolute discretion without liability to the Debtors or any third party.

10.      <u>Authority to Settle</u>. Each of the Parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the Parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.      <u>Advice of Counsel</u>. Each of the Parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.      <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.      <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.      <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Ohio, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B42A0500

16.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    Miscellaneous.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the Parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the Parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the Parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Because this Agreement was drafted with the participation of all Parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the Parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

*[Signatures appear on following page]*

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B447C8C0

     IN WITNESS HEREOF, the Parties have duly executed this Agreement as of the date and year first written above.

**RPT REALTY, L.P.,**
**a Delaware limited partnership**

By: RPT Realty,
     a Maryland real investment trust
     Its General Partner

By: _Raymond Merk_____
Its: Chief Accounting Officer
_____

**BED BATH & BEYOND INC.**

By: _____

Print Name:

Its:

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 22nd day of June, 2023 by and between RPT Realty, L.P. ("Landlord") and Bed Bath & Beyond Inc. ("Tenant" or "Debtor", and collectively with Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated June 10, 1998 (the "Lease"), covering certain premises located at Vista Plaza in Jensen Beach, Florida (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), have filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, restoring Landlord to possession of the Premises as of the Termination Date, the Parties releasing the other, and Landlord being able to dispose of any remaining property at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows, subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals. The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination. The Lease is terminated effective as of July 30, 2023 (the "Termination Date"), on which date Landlord shall be deemed to be in full possession of the Premises.

3.      Consideration. Landlord shall credit Tenant $3,000.00, representing a portion of the undisputed cure amount of $10,462.61.

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however,

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B4D5C66E

Tenant shall not be released from claims by Landlord for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date; provided further, however, that unless the Lease is terminated or rejected by order of the Bankruptcy Court effective as of June 30 or earlier, Tenant shall timely pay to Landlord the Lease obligations for July 2023.

5.    Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, Landlord shall not be released from claims by Tenant for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date.

6.    As further consideration for the releases in this Agreement, the Parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.    In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases in this Agreement have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the parties released in this Agreement from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.    Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Tenant has delivered possession of the Premises to Landlord;

(b)    Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.      Furniture, Fixtures and Equipment (FF&E) and Personal Property. Any FF&E or other personal property remaining at the Premises as of the Termination Date is deemed abandoned, and the Landlord and their managing agents are free to dispose of the FF&E and personal property in their sole and absolute discretion without liability to the Debtors or any third party.

10.      Authority to Settle. Each of the Parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the Parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.      Advice of Counsel. Each of the Parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.      Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.      Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.      Governing Law. This Agreement shall be governed by and construed under the laws of the State of Florida, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B4D2CC69

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the Parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the Parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the Parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Because this Agreement was drafted with the participation of all Parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the Parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

*[Signatures appear on following page]*

DocuSign Envelope ID: 92D5A2EF-9799-4E7E-A6B1-9B67B4D4C6E9

IN WITNESS HEREOF, the Parties have duly executed this Agreement as of the date and year first written above.

**RPT REALTY, L.P.,**
**a Delaware limited partnership**

By: RPT Realty,
    a Maryland real investment trust
    Its General Partner

By: _Raymond Merk_

Its: Chief Accounting Officer

**BED BATH & BEYOND INC.**

By: ____

Print Name:

Its:

**DocuSign**

## Certificate Of Completion

Envelope Id: 92D5A2EF97994E7EA6B19B67B420AC9C

Subject: BBB - Bidder Registration Form - RPT Realty(26563424.1).pdf, BBB - Form...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 13 | Signatures: 3 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Sophia Loveless |
| AutoNav: Enabled | | 20750 Civic Center Drive |
| EnvelopeId Stamping: Enabled | | Suite 310 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | Southfield , MI  48076 |
| | | sloveless@rptrealty.com |
| | | IP Address: ▮▮▮▮▮ |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Sophia Loveless | Location: DocuSign |
| 6/22/2023 3:07:58 PM | sloveless@rptrealty.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Raymond Merk<br>rmerk@rptrealty.com<br>Chief Accounting Officer<br>RPT Realty L.P.<br>Security Level: Email, Account Authentication (None) | Raymond Merk<br>E8A382FC3F7E40B...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: ▮▮▮▮▮ | Sent: 6/22/2023 3:12:14 PM<br>Viewed: 6/22/2023 3:13:22 PM<br>Signed: 6/22/2023 3:13:59 PM |

Electronic Record and Signature Disclosure:
   Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/22/2023 3:12:14 PM |
| Certified Delivered | Security Checked | 6/22/2023 3:13:22 PM |
| Signing Complete | Security Checked | 6/22/2023 3:13:59 PM |
| Completed | Security Checked | 6/22/2023 3:13:59 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

Status: Completed

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this ——22nd day of— June, 2023
by and between ——————————————RPT Realty, L.P. ("Landlord") and Bed Bath & Beyond Inc. ("Tenant" or "Debtor", and collectively with Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated ——————January 10, 2003 (the "Lease"),
covering certain premises located at ——Deerfield Towne Center in Mason, Ohio (the "Premises"), on the terms
and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), haves filed a voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, restoring Landlord is restored to possession of the Premises as of the Termination Date, the pParties releasinge the other, and Landlord is being able to dispose of any remaining equipment property at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows, subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.    Recitals. The Recitals are incorporated herein as if set forth at length.

2.    Lease Termination. The Lease is terminated effective as of July 30, 2023 (the "Termination
Date"), on which date Landlord shall be deemed to be in full possession of the Premises.

3.    Consideration. Landlord shall pay to Tenant $———————————.credit Tenant $2,713.99, representing a portion of the undisputed cure amount of $47,841.75 that was agreed to by Tenant's counsel on June 21, 2023.

4.    Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts,

compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, Tenant shall not be released from claims by Landlord for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date; provided further, however, that unless the Lease is terminated or rejected by order of the Bankruptcy Court effective as of June 30 or earlier, Tenant shall timely pay to Landlord the Lease obligations for July 2023.

5.    Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, Landlord shall not be released from claims by Tenant for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date.

6.    As further consideration for theis Rreleases in this Agreement, the pParties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the pParties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.    In this connection, the pParties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the pParties further agree, represent and warrant that theis Rreleases in this Agreement haves been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released

~~P~~parties released in this Agreement from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.      Furniture, Fixtures and Equipment (FF&E) and Personal Property. Any FF&E or other personal property remaining at the Premises ~~after~~as of the Termination Date is deemed abandoned, and the Landlord and their managing agents are free to dispose of the FF&E and personal property in their sole and absolute discretion without liability to the Debtors or any ~~entity~~third party.

10.      Authority to Settle. Each of the ~~p~~Parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the ~~p~~Parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the ~~p~~Parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the ~~p~~Parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.      Advice of Counsel. Each of the ~~p~~Parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.      Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the pParties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.     Governing Law. This Agreement shall be governed by and construed under the laws of the State of New YorkOhio, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.     Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.     Miscellaneous.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the pParties hereto.

(b)     This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)     Each of the pParties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the pParties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)     Each of the pParties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)     The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all pParties hereto and their counsel. Because this Agreement was drafted with the participation of all pParties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the pParties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the pParties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the ~~p~~Parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]RPT REALTY, L.P.,**
**a Delaware limited partnership**

By: _____ RPT Realty,
_____ a Maryland real investment trust
_____ Its General Partner

~~Print Name:~~ By: _____

Its: _____

**[TENANT]BED  BATH & BEYOND INC.**

By: _____

Print Name:

Its:

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this ⸻ 22nd day of June, 2023 by and between ⸻ RPT Realty, L.P. ("Landlord") and Bed Bath & Beyond Inc. ("Tenant" or "Debtor", and collectively with Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated ⸻ June 10, 1998 (the "Lease"), covering certain premises located at ⸻ Vista Plaza in Jensen Beach, Florida (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), haves filed a voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, restoring Landlord is restored to possession of the Premises as of the Termination Date, the pParties releasinge the other, and Landlord is being able to dispose of any remaining equipment property at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows, subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals. The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination. The Lease is terminated effective as of July 30, 2023 (the "Termination Date"), on which date Landlord shall be deemed to be in full possession of the Premises.

3.      Consideration. Landlord shall pay to Tenant $⸻.credit Tenant $3,000.00, representing a portion of the undisputed cure amount of $10,462.61.

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore

or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, Tenant shall not be released from claims by Landlord for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date; provided further, however, that unless the Lease is terminated or rejected by order of the Bankruptcy Court effective as of June 30 or earlier, Tenant shall timely pay to Landlord the Lease obligations for July 2023.

5.    Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease; provided, however, Landlord shall not be released from claims by Tenant for contribution or indemnification for claims by third parties for personal injury or property damage that accrued on or prior to the Termination Date.

6.    As further consideration for theis Rreleases in this Agreement, the pParties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the pParties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.    In this connection, the pParties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the pParties further agree, represent and warrant that theis Rreleases in this Agreement haves been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released Pparties released in this Agreement from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.     Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)     Tenant has delivered possession of the Premises to Landlord;

(b)     Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.     Furniture, Fixtures and Equipment (FF&E) and Personal Property. Any FF&E or other personal property remaining at the Premises afteras of the Termination Date is deemed abandoned, and the Landlord and their managing agents are free to dispose of the FF&E and personal property in their sole and absolute discretion without liability to the Debtors or any entitythird party.

10.     Authority to Settle. Each of the pParties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the pParties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the pParties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the pParties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     Advice of Counsel. Each of the pParties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.     Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each

of the pParties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.     Governing Law. This Agreement shall be governed by and construed under the laws of the State of New YorkFlorida, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.     Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.     Miscellaneous.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the pParties hereto.

(b)     This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)     Each of the pParties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the pParties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)     Each of the pParties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)     The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all pParties hereto and their counsel. Because this Agreement was drafted with the participation of all pParties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the pParties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the pParties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the ~~p~~Parties have duly executed this Agreement as of the date and year first written above.

**~~[LANDLORD]~~RPT REALTY, L.P.,
a Delaware limited partnership**

By:_____ RPT Realty,
_____ a Maryland real investment trust
_____ Its General Partner

~~Print Name:~~___ By:_____

Its:_____

**~~[TENANT]~~BED  BATH & BEYOND INC.**

By:_____

Print Name:

Its:

# Exhibit 2

                                                      Page 1

 1          Auction - In Re: Bed Bath and Beyond Inc.

 2

 3                    Case No. 23-13359

 4                    Docket No. 422

 5

 6

 7      Moderated by Mike Matlat, A&G Realty Partners

 8                 Monday, June 26, 2023

 9                     10:11 a.m.

10

11

12              Via Zoom Videoconference

13                 Kirkland & Ellis LLP

14            601 Lexington Avenue, Floor 50

15                 New York, NY 10022

16

17

18

19

20   Reported by:   Chanyri Figueroa Monsanto

21   JOB NO.:        5978965

22

23

24

25

Page 18

1    Lewisville, Texas.  And the auction is now closed with

2    respect to that property and the landlord can reserve

3    his rights and do whatever he wants to do.  You guys

4    can leave, 677, Lewisville, Texas.

5                    UNKNOWN SPEAKER:  Thank you.

6                    MR. MATLAT:  Okay.  Now we're going to

7    go through some retail locations.  What we're going to

8    do on these, there's an opportunity right now to go

9    one round on these particular locations.  For clarity

10   and confirmation, I'm going to announce the store

11   number, the city and the state, the current high bid,

12   and then I'm going to announce what the suggested

13   purchase price would be.  And provided we hit that,

14   then the auction will be closed with respect to that

15   property.  So if you're laying in the weeds waiting to

16   bid on other properties as a qualified bidder, pay

17   attention, because we're going to go by it.  There's

18   not going to be a second bite at the apple.

19                    The first property up is going to be

20   store No. 148.  That's a Bed Bath and Beyond in

21   Birmingham, Alabama.  We have a current high bid of

22   $3,567.  And the debtor would look for, to close this

23   out today, a bid of $100,000 is going to be our

24   suggested bid price.  So it will be a $100,000 in cash

25   to be settled, if you're a landlord, against

Page 19

1  post-petition rent, in exchange of a full waiver if

2  you're a landlord.

3                 So is our qualified bidder for No. 148

4  on the phone or present?  No. 148, Birmingham,

5  Alabama?

6                 MR. FOLDS:  This is David Folds.  I

7  represent the landlord.

8                 MR. MATLAT:  What was that?

9                 MR. FOLDS:  Sorry.  This is David

10  Folds.  I represent the landlord for the property.

11                 MR. MATLAT:  Hey David, how are you?

12                 MR. FOLDS:  Good.

13                 MR. MATLAT:  Okay.  So you have a

14  decision to make.  You can be announced as a

15  successful bidder if you increase your offer to a

16  $100,000 cash on top of a full waiver of the

17  pre-petition.

18                 MR. FOLDS:  I'm not prepared to do that

19  at this time.

20                 MR. MATLAT:  Okay.  Then what the

21  debtor is going to do is they will sit on your bid.

22  We'll continue to market the property if it's a July

23  GOB store, and we have our second auction coming up in

24  July, and we'll continue to market it, you know,

25  through then.  So I'm going to close the door --

```
                                                      Page 20
 1                    MR. FOLDS:  Does that mean this
 2       property is being deferred to the second auction and
 3       you're finished with it for today?
 4                    MR. MATLAT:  At this point, sir, yes,
 5       and you're released from today.
 6                    MR. FOLDS:  Okay.  I've got other
 7       properties, so I'll stay on, but thank you very much.
 8                    MR. MATLAT:  You're welcome.
 9                    Okay.  No. 3031.  That's Hoover,
10       Alabama.  We have a current high bid of $9,863.  Do we
11       have somebody on the phone who qualified or present?
12       Buy Buy Baby, 3031, Hoover, Alabama.
13                    MS. ROGLEN:  Yes.  This is Laurel
14       Roglen from Ballard Spahr.  That's one of our client
15       locations.
16                    MR. MATLAT:  Okay.  We kind of learned
17       what we did from the first one.  Is the landlord
18       interested, for clarity and certainty, subject to the
19       going concern sale, to make an offer of a waiver of
20       the pre-petition plus $100,000 to be set off in cash
21       or against post-petition?
22                    MS. ROGLEN:  Can I have time to consult
23       with my client?
24                    MR. MATLAT:  Yeah.
25                    MS. ROGLEN:  Thank you.
```

Page 52

1    Albuquerque.  Oh, that's not you though; right?

2                    MS. ROGLEN:  It is.  That one's me,

3    too.

4                    MR. MATLAT:  Two Albuquerque

5    properties.

6                    MR. FIEDLER:  Same response?

7                    MR. MATLAT:  Same response, consulting.

8                    Next up is No. 768, Mason, Ohio.  And

9    No. 768 Mason, Ohio, we have a high bid of 2,714.

10                   MR. FLEISCHER:  Yes, that's me, Scott

11   Fleischer, Barclay Damon.  Landlord does not wish to

12   bid further at this time.

13                   MR. MATLAT:  Thank you, Scott.

14                   Okay, next up we have No. 3128,

15   Clackamas, Oregon.  It's a Buy Buy Baby.

16                   Mr. Goldberg, are you with us today?

17                   MR. GOLDBERG:  I am.  Hi Mike.  How are

18   you?

19                   MR. MATLAT:  Pretty good.

20                   MR. GOLDBERG:  On behalf of the

21   landlord, at this moment we're prepared to make a cash

22   offer, absolute cash offer, $20,636, a waiver of all

23   pre-petition amounts, and a waiver of the

24   post-petition amounts, which we believe are $79,364.

25                   So in our view, that meets your

Page 230

```
 1              CERTIFICATE OF DEPOSITION OFFICER

 2                   I, CHANYRI FIGUEROA, the officer before whom

 3      the foregoing proceedings were taken, do hereby

 4      certify that any witness(es) in the foregoing

 5      proceedings, prior to testifying, were duly sworn;

 6      that the proceedings were recorded by me and

 7      thereafter reduced to typewriting by a qualified

 8      transcriptionist; that said digital audio recording of

 9      said proceedings are a true and accurate record to the

10      best of my knowledge, skills, and ability; that I am

11      neither counsel for, related to, nor employed by any

12      of the parties to the action in which this was taken;

13      and, further, that I am not a relative or employee of

14      any counsel or attorney employed by the parties

15      hereto, nor financially or otherwise interested in the

16      outcome of this action.

17

18

19                              CHANYRI FIGUEROA

20                      Notary Public in and for the

21                              State of New York

22

23

24

25
```

Page 231

1                      CERTIFICATE OF TRANSCRIBER

2               I, MOLLY MCCOLM, do hereby certify that this

3       transcript was prepared from the digital audio

4       recording of the foregoing proceeding, that said

5       transcript is a true and accurate record of the

6       proceedings to the best of my knowledge, skills, and

7       ability; that I am neither counsel for, related to,

8       nor employed by any of the parties to the action in

9       which this was taken; and, further, that I am not a

10      relative or employee of any counsel or attorney

11      employed by the parties hereto, nor financially or

12      otherwise interested in the outcome of this action.

13

14

15                                      MOLLY MCCOLM

16

17

18

19

20

21

22

23

24

25

# Exhibit 3

| | |
|---|---|
| **From:** | Sloman, Michael A. <michael.sloman@kirkland.com> |
| **Sent:** | Wednesday, June 28, 2023 11:43 AM |
| **To:** | Fleischer, Scott L.; Fiedler, Ross J. |
| **Cc:** | #BBBY-K&E Lease Team; *WUsatine@coleschotz.com; Bass, David; Park, John; Mike Matlat; Todd Eyler |
| **Subject:** | RE: Phase 1 Auction Results - Store 768 [IMAN-ACTIVE.FID3152051] |

Scott,

We can confirm that the Debtors have accepted the partial credit bid on the store. The store is a June closure and the revised LTA is acceptable to the Debtors.

Please let us know of any other questions.

**Michael Sloman**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
T +1 212 898 5422  M +1 917 847 2784
F +1 212 446 4900

michael.sloman@kirkland.com

---

**From:** Fleischer, Scott L. <SFleischer@barclaydamon.com>
**Sent:** Wednesday, June 28, 2023 10:11 AM
**To:** Fiedler, Ross J. <ross.fiedler@kirkland.com>; Sloman, Michael A. <michael.sloman@kirkland.com>
**Cc:** #BBBY-K&E Lease Team <BBBY_KE_Lease_Team@kirkland.com>
**Subject:** Phase 1 Auction Results - Store 768 [IMAN-ACTIVE.FID3152051]

Ross, Michael,

At the auction, the bid for store no. 768 – BBBY at Deerfield Towne Center in Mason, OH – was not accepted because it was a pre-petition credit bid and the landlord did not make a cash offer of $100k (or anything for that matter). However, the notice of successful bidder (p. 7) lists the landlord as the successful bidder for $2,714, its partial credit bid amount – excerpt below.

Please confirm the debtors' intent and whether this is a June or July closure and, if it's a successful bid, whether the lease termination agreement has been accepted as revised in the bid package. Thank you.

| No. | Store # | Banner | Location Address | Successful Bidder | Successful Bid | Backup Bidder | Backup Bid |
|---|---|---|---|---|---|---|---|
| 22. | 768 | BBB | 5800 Deerfield Road Mason, OH | LL: RPT | $2,714 | | |

# Scott L. Fleischer

Counsel

1270 Avenue of the Americas • Suite 501 • New York, NY 10020
D: (212) 784-5810 • F: (212) 784-5799 • C: (646) 630-0458
E: SFleischer@barclaydamon.com

**www.barclaydamon.com** • **vCard** • **Profile**

This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# Exhibit 4

| | |
|---|---|
| **From:** | Bass, David <DBass@coleschotz.com> |
| **Sent:** | Wednesday, June 28, 2023 11:09 PM |
| **To:** | tcollier@rptrealty.com; Fleischer, Scott L. |
| **Cc:** | BBBY_KE_Lease_Team@kirkland.com; emilio@agrep.com; Mike Matlat; todd@agrep.com; Usatine, Warren; Park, John |
| **Subject:** | BBB - Store 768 Mason OH [IWOV-CSDOCS.FID2477406] |

Congratulations on your winning bid!  As you know, the hearing to approve the lease termination agreement is July 18th.  That notwithstanding, this shall confirm that Tenant will be relinquishing control of the Premises and surrendering to Landlord possession and control of the Premises as of June 30, 2023, at 11:59 p.m. local time.  As such, Tenant will not be paying rent for July 2023.  Please note that the return of the keys is impracticable, and, as such, Tenant agrees that Landlord shall be permitted to re-key the Premises at 11:59 p.m. local time on June 30, 2023.  Please be aware that all alarms will be discontinued as of June 30, 2023, at 11:59 p.m. local time.

Below is the information you will need to transfer the utility(s) back into Landlord's name.

| Account | | Meter | |
|---|---|---|---|
| MIDAMERICAN ENERGY SERVICES | 0417 | Electric | 0779 |
| DUKE ENERGY | 1355 | Electric | 0779 |
| DUKE ENERGY | 1355 | Natural Gas | 1689 |
| DUKE ENERGY PAYMENT PROCESSING | 1355 | Natural Gas | 1689 |

**DAVID BASS**
MEMBER

OFFICE  646.563.8932
CELL  201.927.5668
EMAIL  dbass@coleschotz.com

Court Plaza North | 25 Main Street | Hackensack, NJ 07601

NEW JERSEY  NEW YORK  DELAWARE  MARYLAND  TEXAS  FLORIDA
VCARD | BIO | COLESCHOTZ.COM

Legal Practice Assistant: Karen Jeffreys | 201.489.3000 x 5089 | kjeffreys@coleschotz.com

* * * * * *
This e-mail message from Cole Schotz P.C. is private and may contain privileged information. If you are not the intended recipient, please do not read, copy or use it or disclose it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system.

# **<u>Exhibit 5</u>**

| | |
|---|---|
| **From:** | Fleischer, Scott L. |
| **Sent:** | Monday, July 3, 2023 11:08 AM |
| **To:** | Bass, David |
| **Cc:** | BBBY_KE_Lease_Team@kirkland.com; emilio@agrep.com; Mike Matlat; todd@agrep.com; Usatine, Warren; Park, John; tcollier@rptrealty.com |
| **Subject:** | RE: BBB - Store 768 Mason OH [IWOV-CSDOCS.FID2477406] [IMAN-ACTIVE.FID3152051] |
| **Attachments:** | Phase 1 Lease Auction Bid - BBBY @ (i) Deerfield Towne Center, Mason, OH and (ii) Vista Plaza, Jensen Beach, FL [IMAN-ACTIVE.FID3152051]; BBB - Phase 1 Lease Auction Bid Package - RPT Realty(26566944.1).pdf; Bed Bath & Beyond 2022 RE Taxes Paybale 2023 Invoice 1st Instl.pdf |

David,

At the phase 1 lease auction, the landlord's bid of a partial credit bid waiver for a pre-petition amount was not accepted when there was no follow-up offer of cash.  We were thus surprised to see it listed on the notice of successful bidders; I understand the June 30 store closure seemingly prompted the decision.  However, there are issues with the debtors' purported "acceptance" of the landlord's bid, including:

1. The bid was for two leases as a "package" and was not severable absent landlord consent.
2. The lease termination agreements provided for a termination date of July 30, 2023.
3. Section 4 of the lease termination agreements required the payment of July 2023 lease obligations by the debtors unless the lease was terminated or rejected by court order effective as of June 30 or earlier.

In addition, and irrespective of whether the lease is eventually terminated or rejected, there is an open post-petition amount for partially unpaid real estate taxes billed on May 18, 2023 (post-petition).  Attached is the support showing the $72,365.58 total, and a payment of $27,338.11 was subsequently made leaving a balance of $45,027.47.  As you know, we're in a billing date jurisdiction so the accrual period is irrelevant and such amount must be paid under section 365(d)(3).

Please confirm whether the debtors will be filing a revised notice of successful bidders or otherwise withdrawing it as to this lease, and let me know if you'd like to discuss.  Thank you.

Scott

# Exhibit 6

| | |
|---|---|
| **From:** | Bass, David <DBass@coleschotz.com> |
| **Sent:** | Thursday, July 6, 2023 7:13 PM |
| **To:** | Fleischer, Scott L. |
| **Cc:** | BBBY_KE_Lease_Team@kirkland.com; emilio@agrep.com; Mike Matlat; todd@agrep.com; Usatine, Warren; Park, John; tcollier@rptrealty.com |
| **Subject:** | RE: BBB - Store 768 Mason OH [IMAN-ACTIVE.FID3152051] [IWOV-CSDOCS.FID2477406] |

Scott – You win.  We no longer consider RPT bid for the Mason OH location as a successful bid.  We will include the lease in a rejection notice, with a rejection date of 6/30, since we sent you notice surrendering possession on that date.

**DAVID BASS**
MEMBER

OFFICE 646.563.8932
CELL    201.927.5668
EMAIL  dbass@coleschotz.com

Court Plaza North | 25 Main Street | Hackensack, NJ 07601

NEW JERSEY  NEW YORK  DELAWARE  MARYLAND  TEXAS  FLORIDA
VCARD | BIO | COLESCHOTZ.COM

Legal Practice Assistant: Karen Jeffreys | 201.489.3000 x 5089 | kjeffreys@coleschotz.com

**From:** Fleischer, Scott L. <SFleischer@barclaydamon.com>
**Sent:** Thursday, July 6, 2023 6:14 PM
**To:** Bass, David <DBass@coleschotz.com>
**Cc:** BBBY_KE_Lease_Team@kirkland.com; emilio@agrep.com; Mike Matlat <mike@agrep.com>; todd@agrep.com; Usatine, Warren <WUsatine@coleschotz.com>; Park, John <JPark@coleschotz.com>; tcollier@rptrealty.com
**Subject:** RE: BBB - Store 768 Mason OH [IWOV-CSDOCS.FID2477406] [IMAN-ACTIVE.FID3152051]

CAUTION: External Message

David,

I'm following up on the below email in an effort to avoid having to object to the notice of successful bidders.  Please advise.  Thank you.

Scott

# Scott L. Fleischer

Counsel

1270 Avenue of the Americas  •  Suite 501 • New York, NY 10020
D: (212) 784-5810 • F: (212) 784-5799 • C: (646) 630-0458
E: SFleischer@barclaydamon.com

**www.barclaydamon.com**  •  **vCard**  •  **Profile**

This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

# Exhibit 7

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


IN RE:                          )
                                )
NAMCO CYBERTAINMENT, INC.,      ) Case No. 98-173 (PJW)
                                )
                Debtor.         )


                        United States Bankruptcy Court
                        Courtroom No. 2
                        Sixth Floor
                        824 North Market Street
                        Wilmington, Delaware  19801

                        Wednesday, April 15, 1998
                        4:00 p.m.


BEFORE:   HONORABLE PETER J. WALSH
          United States Bankruptcy Judge



          TRANSCRIPT OF PROCEEDINGS


_____

                WILCOX & FETZER
     1330 King Street - Wilmington, Delaware  19801
                    (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters

15          THE COURT:  Okay.  Well, it does seem

16   to me that where it is patently clear that the lease is

17   going to be rejected that as a matter, some equity

18   relief ought to be granted.

19          And I think the role that I am

20   inclined to adopt--and I'm not going to apply it in

21   this case because for the reasons I mentioned--I

22   believe that if the premises are surrendered with an

23   unequivocal statement to the landlord that the debtor

24   is abandoning and thereafter the debtor files a motion

35

1    to reject, then I believe that it would be equitable to

2    allow the rejection date to be effective on the date

3    that that motion is served, provided that the motion

4    contains a representation that the committee agrees

5    with the motion; because if that representation were in

6    the motion, then I can't conceive of the circumstances

7    under which the motion would be denied.

8                    And if a landlord wants--I'm sorry.

9    If the debtor wants a rejection date prior to the

10   hearing date, then to the extent it seeks that date,

11   then a part of my rule would be that the debtor cannot

12   change its mind.

13                   So, if you want a rejection date

14   prior to the hearing, it seems to me that it could be

15   done in the circumstances where (a) prior to the filing

16   of the motion, the keys were surrendered, the premises

17   surrendered with an unequivocal statement to the

18   landlord of abandonment; (b) the motion is served and

19   filed on the landlord; (c) the motion states that the

20   committee agrees with the motion; and (d) that the

21   debtor acknowledges that it will not have the right to

22   withdraw that motion prior to the hearing.  Given those

23   situation--given those factors, I would permit the

24   rejection effective as of service of the motion.

36

1          You don't have those facts in this

2  case.  So, I wouldn't apply the rule in this case.

3          However, it does seems to me that

4  there was an objection deadline of April 6th, 1998.

5  Nobody objected to the rejection.  And it certainly

6  seems to me that a rejection date of April 6 would be

7  appropriate under these circumstances.  So, I'll sign

8  an order authorizing the rejection as of April 6.