**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE**
**DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION**
**AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF**
**THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN**
**CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE**
**STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING**

</div>

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases (as defined below) and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO,
AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING
THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF**

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):[2]

**Preliminary Statement**

1.     After months of arm's-length, good faith negotiations with their funded

debtholders, Bed Bath & Beyond Inc. and its affiliated Debtors commenced these Chapter 11

Cases with committed postpetition financing in the form of the DIP Facility to facilitate an

expeditious and cost-efficient process to maximize the value of their estates for the benefit of all

stakeholders.  That process had been a dual track one:  while immediately initiating an orderly

winddown of their business operations through a liquidation of their inventory and

brick-and-mortar stores, the Debtors simultaneously pursued a sale or other disposition of their

remaining assets as a going-concern or otherwise.  The Debtors' progress in advancing the

dual-track process throughout these cases has been substantial and no small feat.  That is, in large

---

[2]     Detailed descriptions of the Debtors, their business, and the facts and circumstances surrounding these Chapter 11 Cases are set forth in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 23, 2023 (the "Petition Date").

Capitalized terms used but not immediately or otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration, the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "Disclosure Statement") and the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as amended, supplemented, or modified from time to time, the "Plan") filed substantially contemporaneously herewith, as applicable.

part, due to the flexibility and attention of this Court as well as the tireless efforts of the Debtors'
management team, the Debtors' secured lenders, the Committee, the Debtors' landlord
counterparties, and other key stakeholders.

2.      Following the U.S. Trustee's appointment of the official committee of unsecured
creditors (the "Committee") on May 5, 2023 [Docket No. 218], the Debtors promptly engaged in
a robust diligence sharing process with the Committee and its advisors to educate them on the
Debtors' businesses and bring them up to speed on the developments in the cases.  Not long
thereafter, the Debtors, the Committee, and the DIP Lenders reached a comprehensive, negotiated
settlement on various issues relating to, among other things, the distribution of proceeds of the
Debtors' assets, which was memorialized in the Final DIP Order [Docket No. 729] (the "DIP
Settlement").  The DIP Settlement critically coalesced stakeholder consensus around the Debtors'
expected path to confirmation and provided an avenue for potential recovery for the Debtors'
general unsecured creditors.

3.      On top of the DIP Settlement, the Debtors' sustained efforts to monetize their assets
and recover estate property has proceeded rapidly and effectively.  Following a robust marketing
process that began prepetition and continued postpetition, as well as an auction, the Debtors
obtained approval of a sale of certain intellectual property assets of the Bed Bath & Beyond banner
to Overstock.com, Inc. for a purchase price of $21.5 million in cash consideration
[Docket No. 1117].   Additionally, the Debtors obtained approval of a sale of the intellectual
property assets of the buybuy BABY banner to Dream On Me, Inc. for approximately
$15.5 million [Docket No. 1314].  Monetization of the valuable intellectual property assets of the
Debtors' key business banners provides hope for the continued use and revitalization of the
Debtors' storied brands.  In addition to these sales, the Debtors continue to successfully monetize

3

their inventory pursuant to the relief granted in the Store Closing Order [Docket No. 641] and their under-market leasehold interests, including through the court-approved procedure to sell or dispose of their lease assets and designation rights related thereto [Docket No. 422].

4.      In conjunction with the foregoing efforts, the Debtors and their advisors advanced the drafting and negotiation of the Plan and the Disclosure Statement. And contemporaneously with the filing of this Motion, the Debtors filed the Plan and Disclosure Statement. At a high level, the Plan vests the Debtors' assets in the Wind-Down Debtors, who, at the direction of the Plan Administrator and oversight from the Oversight Committee, will be responsible for monetizing and thereafter distributing such assets to Holders of Allowed Claims in accordance with the waterfall terms of the Plan. The Plan, which is the culmination of months of good-faith, hard fought discussions between the Debtors, the DIP Lenders, and the Committee, represents the best currently available path to maximize recoveries for the Debtors' stakeholders. Critically, it is supported by the Committee and the DIP Lenders.

5.      As described above and herein, just over three months from the Petition Date, the Debtors have made substantial progress towards achieving their goals for this process. That progress has been achieved in no small part due to the breathing room provided by chapter 11. Despite such progress, much work remains to be done. And the Debtors are mindful of the expedited timeline of these Chapter 11 Cases, as mandated by the milestones agreed to in the Final DIP Order and the budget governing the funding of these cases. The Debtors believe that this timeline, while expedited, provides the Debtors the time required to facilitate a value-maximizing winddown while providing parties in interest adequate notice and opportunity to participate in the process. The Debtors' failure to meet the milestones in the Final DIP Order confers certain termination rights and enforcement remedies upon the DIP Lenders, which risk

immediate and irreparable harm to the Debtors' estates.  To that end, the Debtors have been working round-the-clock to draft the Disclosure Statement, which explains the transactions underlying the Plan as simply as possible.  The Disclosure Statement includes, among other things, a detailed description of the Debtors' prepetition operations and structure, a description of the events of the Debtors' Chapter 11 Cases, a plain-English explanation of the expected outcomes for the Debtors' clients and other stakeholders, answers frequently asked questions, and analyzes various risk factors associated with the liquidation transactions.

6.      As a result, the Debtors seek to obtain conditional approval of the adequacy of the Disclosure Statement in order to commence solicitation of votes on the Plan on the proposed schedule set forth herein and to schedule a joint hearing to consider the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan (the "Combined Hearing").  The Combined Hearing will streamline and expedite the confirmation process and save the Debtors from additional administrative expenses that a two-stage process would require.  The Debtors are confident that the costs to be saved and value thus preserved for creditors outweigh any concerns about proceeding with the final approval of the Disclosure Statement at a Combined Hearing. This approach will not only advance these cases to a successful resolution as quickly and cost-effectively as possible under the circumstances, but will also safeguard the value embedded in the Plan, all for the benefit of the Debtors' stakeholders.

7.      The Debtors remain focused on working closely and collaboratively with their key stakeholders in pursuit of approval of the Disclosure Statement and confirmation of the Plan. While in this critical time and sensitive stage, the Debtors can ill afford any interruption to the continuing engagement with their key stakeholders and the key decisions they expect to make around rejection or assignment of certain unexpired leases.  Any such interruption would greatly

hinder the Debtors' ability to consummate a Plan that maximizes recoveries for all claimholders. The Debtors therefore believe that maintaining their exclusive right to file and solicit votes on a chapter 11 plan is important to their ability to complete a value-maximizing process and achieve their remaining goals as efficiently and expeditiously as possible without the risk of the substantial additional costs and disruption that could follow an expiration of the Exclusivity Periods. Accordingly, the Debtors request an extension of the Exclusivity Periods to allow the Debtors to continue to focus on finalizing the progress to date and to preclude the costly disruption that would occur if competing plans were to be proposed. Critically, both the Committee and the DIP Lenders are supportive of the extension requested herein.

8.      For these reasons, as well as the reasons further detailed herein, the Court should (a) conditionally approve the Disclosure Statement, (b) establish the framework for the final stage of these Chapter 11 Cases, and (c) extend the Exclusivity Periods without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods.

## **Relief Requested**

9.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting the following relief:

   a.   ***Adequacy of the Disclosure Statement.***   Conditionally approving the Disclosure Statement, substantially in the form attached to the Order as Exhibit 1, as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing;

   b.   ***Combined Hearing Notice.***  Approving the form and manner of the notice of the Combined Hearing to be held by the Court to consider the adequacy of the Disclosure Statement and confirmation of the Plan (the notice of the Combined Hearing, the "Combined Hearing Notice"), substantially in the form attached to the Order as Exhibit 2;

   c.   ***Solicitation and Voting Procedures.***   Approving the procedures for (i) soliciting, receiving, and tabulating votes to accept or reject the Plan, (ii) voting to accept or reject the Plan, and (iii) filing objections to

6

confirmation of the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached to the Order as Exhibit 3;

d.    ***Non-Voting Status Notices.***  Approving (i) the form of notice applicable to Holders of Claims or Interests that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (ii) the form of notice applicable to Holders of Claims or Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (iii) the form of notice applicable to any Holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim or Interest, including the Opt-Out Form attached to each as Attachment A (each, a "Non-Voting Status Notice"), substantially in the forms attached to the Order as Exhibit 4A, Exhibit 4B, and Exhibit 4C, respectively;

e.    ***Ballots.***  Approving the forms of ballots (the "Ballots") that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan, substantially in the forms attached to the Order as Exhibit 5A, Exhibit 5B, Exhibit 5C, Exhibit 5D, and Exhibit 5E;

f.    ***Cover Letter.***  Approving the form of letter (the "Cover Letter"), substantially in the form attached to the Order as Exhibit 6, detailing how Holders of Claims entitled to vote to accept or reject the Plan may access electronic versions or request hard copies of each of the Solicitation and Voting Procedures, the Disclosure Statement, the Plan, the Order, and a Ballot, and urging those Holders to vote in favor of the Plan;

g.    ***Solicitation Packages***.  Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to Holders of Claims entitled to vote to accept or reject the Plan comply with rules 3017(d) and 2002(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

h.    ***Plan Supplement Notice.***  Approving the notice related to the filing of the Plan Supplement (the "Plan Supplement Notice"), substantially in the form attached to the Order as Exhibit 7;

i.    ***Assumption and Rejection Notices.***  Approving the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be assumed pursuant to the Plan (the "Assumption Notice"), substantially in the form attached to the Order as Exhibit 8, or rejected pursuant to the Plan (the "Rejection Notice"), substantially in the form attached to the Order as Exhibit 9;

j.    ***Shortened Notice Periods and Requirements***.  Shortening the periods and notice requirements set forth under Bankruptcy Rule 2002(b) for filing

objections to the Plan and for notice of Confirmation Hearing in accordance with Bankruptcy Rule 9006(c)(1); and

k.    ***Confirmation Timeline.*** Establishing the following dates and deadlines, subject to modification as necessary:

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | July 27, 2023 at 4:00 p.m., prevailing Eastern Time | Deadline by which objections to the conditional approval of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties (the "Disclosure Statement Objection Deadline") |
| Voting Record Date | July 28, 2023 | The date for determining (i) which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and receive Solicitation Packages in connection therewith and (ii) whether Claims have been properly assigned or transferred to any assignees pursuant to Bankruptcy Rule 3001(e) such that an assignee can vote as the Holder of a respective Claim. |
| Publication Deadline | Five (5) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The last date by which the Debtors will submit the Combined Hearing Notice in a format modified for publication. |
| Conditional Disclosure Statement Hearing | August 1, 2023 at 2:30 p.m., prevailing Eastern Time | The date of the hearing at which the Court will consider conditional approval of the adequacy of the Disclosure Statement. |
| Solicitation Deadline | Three (3) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan. |
| Plan Supplement Filing Deadline | The date that is no later than fourteen (14) days prior to the Voting Deadline | The date by which the Debtors shall file the Plan Supplement. |
| Combined Objection Deadline | September 1, 2023 at 4:00 p.m., prevailing Eastern Time | The deadline by which objections to confirmation of the Plan or final approval of the adequacy of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties. |
| Voting Deadline | September 1, 2023 at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and opt-out forms (the "Opt-Out Forms") must be properly executed, completed, and electronically submitted (or mailed, as applicable) so that they are **actually received** by Kroll Restructuring Administration LLC (the "Notice and Claims Agent"). |
| Deadline to File Certification of Balloting | September 4, 2023 | The date by which the report tabulating the voting on the Plan (the "Certification of Balloting") shall be filed with the Court. |

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Confirmation Brief Deadline | September 6, 2023 | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan. |
| Combined Reply Deadline | September 6, 2023 | The deadline by which replies to objections to confirmation of the Plan or final approval of the adequacy of the Disclosure Statement must be filed with the Court. |
| Combined Hearing Date | September 7, 2023, at 2:30 p.m., prevailing Eastern Time | The date of the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing Date"). |

10.    Additionally, the Debtors seek entry of the Order (a) extending the Debtors'

exclusive right to file a chapter 11 plan by ninety days through and including November 20, 2023[3]

(the "Filing Exclusivity Period"), and to solicit votes thereon by ninety days through and including

January 18, 2024 (the "Soliciting Exclusivity Period," and together with the Filing Exclusivity

Period, the "Exclusivity Periods"), without prejudice to the Debtors' right to seek further

extensions to the Exclusivity Periods, and (b) granting related relief.

## Jurisdiction and Venue

11.    The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11* of the United State District Court for the District

of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).

The Debtors confirm their consent to the Court entering a final order in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United

States Constitution.

---

[3]    The Filing Exclusivity Period currently expires on August 21, 2023. 90 days after August 21, 2023 is Sunday, November 19, 2023. Pursuant to Bankruptcy Rule 9006(a)(1)(C), "if the last day [of a period stated in days] is a . . . Sunday . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1), (a)(1)(C). Accordingly, the requested 90-day extension here would expire on November 20, 2023.

12.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.   The bases for the relief requested herein are sections 105, 1121(d), 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 1001, 2002, 3001, 3016, 3017, 3018, 3020, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 3018-1, and 9013-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

14.   The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  In addition to their e-commerce website, the Debtors offer merchandise through their Bed Bath & Beyond stores and their buybuy BABY stores with locations across North America.  Headquartered in Union, New Jersey, Bed Bath & Beyond Inc. is a publicly traded company that currently employs approximately 14,000 non-seasonal employees.

15.   The Debtors commenced these Chapter 11 Cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders. Through these cases, the Debtors will immediately commence an orderly and value-maximizing wind down of their business, while marketing a sale of all or part of their business on a timeline consented to by their prepetition and DIP lenders.

**Plan Overview[4]**

16.   The Plan represents a necessary step for the Debtors to resolve their Chapter 11 Cases.  In general, the Plan provides for, among other things, (i) the vesting of nearly all assets in

___

[4]   The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  In the case of any inconsistency between this Motion and the Plan, the Plan will govern.

the Wind-Down Debtors; (ii) the full and final resolution of funded debt obligations; (iii) the

designation of a plan administrator to wind down the Debtors' affairs, prosecute, continue, or settle

certain estate causes of action, pay and reconcile Claims, and administer the Plan and any

liquidating trust in an efficacious manner; and (iv) 100 percent recoveries for Holders of Allowed

Administrative Claims, Other Priority Tax Claims, and Other Secured Claims.  The compromises

under the Plan are fair and equitable, provide the best recovery to stakeholders under the

circumstances, and will enable the Debtors to achieve their goal of maximizing value of their

estates for the benefit of their creditors.  At this time, the Plan represents the best available option

for completing these Chapter 11 Cases.

17.     The Plan provides for a global compromise and settlement of all Claims, Causes of

Action, and controversies released, settled, compromised, discharged, or otherwise resolved

pursuant to the Plan.  The Plan classifies Holders of Claims and Interests into the following Classes

of Claims or Interests for all purposes, including with respect to voting and distributions under

the Plan:

| Class | Claim / Interest | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| 1 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of each Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, payment in full in Cash from the Combined Reserve or as otherwise provided in the DIP Budget, or other treatment rendering such Claim Unimpaired. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, with the consent of the DIP Agent, in full and final satisfaction of each such Allowed Other Secured Claim: (i) payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget; | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claim / Interest | Treatment | Status | Voting Rights |
|-------|------------------|-----------|--------|---------------|
| | | (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;<br><br>(iii) Reinstatement of such Claim; or<br><br>(iv) other treatment rendering such Claim Unimpaired. | | |
| 3 | DIP Claims | Each Holder of an Allowed DIP Claim, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order). The Liens securing the DIP Claims shall not be released and discharged until Payment in Full of the DIP Claims. | Impaired | Entitled to Vote |
| 4 | FILO Claims | Each Holder of an Allowed FILO Claim, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), to the extent not already indefeasibly paid in full in cash or "rolled up" or converted into DIP Obligations prior to the Effective Date, shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order). The Liens securing the FILO Claims shall not be released and discharged until Payment in Full of the FILO Claims. | Impaired | Entitled to Vote |
| 5 | Junior Secured Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed Junior Secured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims. | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), shall receive its *Pro Rata* share of (i) the Shared Proceeds Pool, *only if* such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims. | Impaired | Entitled to Vote |

| Class | Claim / Interest | Treatment | Status | Voting Rights |
|-------|-----------------|-----------|--------|---------------|
| 7 | Intercompany Claims | On the Effective Date, each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated, distributed, contributed, set off, settled, cancelled and released or otherwise addressed at the option of the Debtors; provided, that no distributions shall be made on account of any such Intercompany Claims. | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| 8 | Intercompany Interests | On the Effective Date, Intercompany Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests. | Impaired | Not Entitled to Vote (Deemed to Accept) |
| 9 | Interests in BBB | On the Effective Date, in full and final satisfaction of each Allowed Interest in BBB, each Allowed Interest in BBB shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests. | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Section 510(b) Claims | On the Effective Date, Section 510(b) Claims will be canceled, released, and extinguished, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim. The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist. | Impaired | Not Entitled to Vote (Deemed to Reject) |

18.    Based on the foregoing, the Debtors propose to solicit votes to accept or reject the Plan from Holders of Claims in Classes 3, 4, 5, and 6 (each a "Voting Class," and together, the "Voting Classes").  The Debtors do ***not*** propose to solicit votes from Holders of Claims or Interests in Classes 1, 2, 7, 8, 9, and 10 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").  Accordingly, Holders of Claims or Interests in Non-Voting Classes will not receive a Solicitation Package but instead will receive a Non-Voting Status Notice, except for Classes 7 and 8, which will receive neither a Solicitation Package nor a Non-Voting Status Notice, as discussed below.

19.     The Disclosure Statement provides adequate information with respect to the Plan

and ensures that Holders of Claims entitled to vote on the Plan will receive information of a kind

and in sufficient detail to make an informed judgment regarding acceptance or rejection of the

Plan.  The proposed schedule and procedures to confirm and consummate the Plan will move these

Chapter 11 Cases forward in a timely manner while ensuring due process and providing for the

procedural safeguards mandated under the Bankruptcy Code and the Bankruptcy Rules.

Accordingly, the Debtors respectfully submit that the relief requested in this Motion should be

approved.

### The Debtors' Solicitation and Noticing Plan

20.     The Debtors have designed a comprehensive solicitation and noticing plan that

affords all Holders of Claims and Interests the maximum notice practicable under the

circumstances and greatest opportunity, as applicable, to cast their votes or be heard in connection

with Confirmation of the Plan.  The Debtors believe the Solicitation and Noticing Procedures are

appropriately tailored to allow all parties in interest to make informed judgments about the Plan

and their treatment and rights thereunder.

21.     The Debtors request that they be authorized to distribute the Solicitation Packages

via e-mail[5] to Holders of Claims in the Voting Classes and the Non-Voting Status Notices to

Holders of Claims or Interests in the Non-Voting Classes.  As of the date hereof, the Debtors

estimate that there are approximately 445,000 Holders of Claims and Interests that will require a

Solicitation Package or Non-Voting Status Notice, as applicable.  The Debtors estimate that

---

[5]     Due to the voluminous nature of the Solicitation Packages as well as the substantial costs to be incurred in
connection with alterative servicing methods, the Debtors will distribute instructions by e-mail, in instances where
email addresses are available, including applicable links to the Debtors' case website, for each Holder to access
their personalized Solicitation Package online.

providing materials to Holders of Claims and Interests in paper and/or flash drive format would be

costly and time-intensive, thereby imposing an additional burden on the Debtors' Estates and

possibly delaying the Debtors' proposed confirmation timeline, and/or reducing stakeholders'

recoveries.

22.    Accordingly, in lieu of providing such materials in paper format and/or by flash

drive, the Debtors will e-mail Holders of Claims entitled to vote on confirmation of the Plan with

instructions on how to access electronic copies of their Ballots and the Solicitation Packages from

the Notice and Claims Agent's website.  To the extent a Holder of a Claim or Interest is not entitled

to vote on confirmation of the Plan, the Debtors will e-mail such Holders instructions on how to

access electronic copies of the applicable Non-Voting Status Notice.   Except as otherwise

indicated, upon entry of the Order, the Debtors propose that the Solicitation Package be distributed

by or on behalf of the Debtors to each Holder of a Claim in the Voting Classes:

    (a)    the Cover Letter;

    (b)    the Order (without exhibits, except for the Solicitation and Voting Procedures);

    (c)    the conditionally approved Disclosure Statement (and exhibits related thereto, including the Plan);

    (d)    the Ballot, together with detailed voting instructions (to submit electronically or by mail, as applicable);

    (e)    the Combined Hearing Notice; and

    (f)    such other materials as the Court may direct.

23.    To the extent that the Debtors' records do not contain a Holder's e-mail address,

the Debtors will provide service by mail to such Holder of a Claim or Interest of (i) the Cover

Letter, Combined Hearing Notice, and applicable Ballot if the Holder falls into the Voting Classes;

or (ii) the Notice of Non-Voting Status if the Holder falls into a Non-Voting Class.  Additionally,

any party that receives any materials in electronic format but would prefer paper format may

contact the Notice and Claims Agent and request paper copies of the corresponding materials

previously received in electronic format (to be provided at the Debtors' expense).

24.     To establish Claim amounts for the purposes of voting, the Debtors propose to

utilize the following procedures:

a.     <u>Holders of Claims Entitled to Vote</u>:  Only Holders of Claims, as of the Voting Record Date in the Voting Classes shall be entitled to vote on the Plan in respect of their Claims, subject to the procedures set forth herein.

b.     <u>Class 3 Claims</u>:  The Claims amount of Class 3 Claims for voting purposes only will be established based on the amount of the applicable positions held by such Class 3 Claim Holder, as applicable, as of the Voting Record Date, as evidenced by the applicable records provided by the DIP Agent in electronic Microsoft Excel format to the Debtors or the Notice and Claims Agent no later than one (1) business day following the Voting Record Date.

c.     <u>Class 4 Claims</u>:  The Claims amount of Class 4 Claims for voting purposes only will be established based on the amount of the applicable positions held by such Class 4 Claim Holder, as applicable, as of the Voting Record Date, as evidenced by the applicable records provided by the FILO Agent in electronic Microsoft Excel format to the Debtors or the Notice and Claims Agent no later than one (1) business day following the Voting Record Date.

d.     <u>Class 5 Claims</u>:  The Claims amount of Class 5 Claims, for voting purposes only, will be established based on the Claim amount contained in a Proof of Claim that has been timely filed by the applicable bar date (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, *however*, that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of a (i) contingent Claim or a Claim in a wholly unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Notice and Claims Agent) that is not the subject of a pending objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim, which Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, that to the extent that any Claim amount contained in a Proof of Claim is different from the Claim amount set forth in a document filed with the Bankruptcy Court that is (i) settled and/or agreed upon by the Debtors, (ii) set forth in an order of

the Bankruptcy Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes.  If a Holder of a Class 5 Claim does not timely file a Proof of Claim by the applicable bar date, such Claim shall be disallowed for voting purposes.  Furthermore, if a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall entitle the Holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules.  Finally, the Debtors shall not be required to send the Solicitation Packages to creditors whose Claims (a) are filed in the amount of $0.00, (b) are based solely on amounts scheduled by the Debtors that have already been paid in the full scheduled amount, or (c) have been scheduled in a wholly unliquidated, contingent, or disputed amount and with respect to which such creditor did not timely file a Proof of Claim.

e.  <u>2014 Senior Unsecured Notes Claims in Class 6 General Unsecured Claims</u>: The amount of 2014 Senior Unsecured Notes Claims in Class 6 General Unsecured Claims (the "<u>Class 6 2014 Senior Unsecured Notes Claims</u>") for voting purposes only will be the unpaid principal amount of the applicable positions such Holder held as of the Voting Record Date as evidenced by the records of the applicable Nominee on the applicable securities position report(s) from the Depository Trust Company ("<u>DTC</u>") or other applicable depository firm.  For voting purposes, any and all Proofs of Claim filed on account of Class 6 2014 Senior Unsecured Notes Claims shall be disregarded.

f.  <u>Class 6 General Unsecured Claims other than 2014 Senior Unsecured Notes Claims</u>:

i.  The amount of Claims in Class 6 General Unsecured  Claims other than Class 6 2014 Senior Unsecured Notes Claims, for voting purposes only, will be established based on the Claim amount contained in a Proof of Claim that has been timely filed by the applicable bar date (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, *however*, that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of a (i) contingent Claim or a Claim in a wholly unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Notice and Claims Agent) that is not the subject of a pending objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of

17

section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim, which Claim will be Allowed for voting purposes only in the liquidated amount; *provided, further,* that to the extent that any Claim amount contained in a Proof of Claim is different from the Claim amount set forth in a document filed with the Bankruptcy Court that is (i) settled and/or agreed upon by the Debtors, (ii) set forth in an order of the Bankruptcy Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes. If a Holder of a Class 6 Claim does not timely file a Proof of Claim by the applicable bar date, such Claim shall be disallowed for voting purposes. Furthermore, if a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall entitle the Holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim. Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules. Finally, the Debtors shall not be required to send the Solicitation Packages to creditors whose Claims (a) are filed in the amount of $0.00, (b) are based solely on amounts scheduled by the Debtors that have already been paid in the full scheduled amount, or (c) have been scheduled in a wholly unliquidated, contingent, or disputed amount and with respect to which such creditor did not timely file a Proof of Claim.

ii.  In the absence of any of the foregoing, the Claim shall be disallowed for voting purposes.

25.  Beneficial Holders[6] of Class 6 2014 Senior Unsecured Notes Claims will receive the Solicitation Packages and will be directed in the Disclosure Statement and their appropriate Ballots (the "Beneficial Holder Ballots") to cast a vote to accept or reject the Plan according to instructions received from their depositories, brokers, dealers, commercial banks, trust companies, or other nominees or agents and mailing agents (collectively, the "Nominees"). Nominees who hold Class 6 2014 Senior Unsecured Notes Claims as of the Voting Record Date based on the

---

[6]  A "Beneficial Holder" means a beneficial owner of Class 6 2014 Senior Unsecured Notes Claims whose claims have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominees holding through the DTC, and/or the applicable indenture trustee, as of the Voting Record Date.

securities position report provided by the DTC will be provided with a sufficient number of

Solicitation Packages (including the Beneficial Holder Ballots) for each Beneficial Holder

represented by the Nominee as of the Voting Record Date, as well as master ballots (the "Master

Ballots") for use by the Nominees to tabulate votes submitted on Beneficial Holder Ballots by

Beneficial Holders who own the Class 6 2014 Senior Unsecured Notes Claims in "street name."

26.    Furthermore, with respect to Master Ballot and Beneficial Holder Ballot

submissions for Holders of Class 6 2014 Senior Unsecured Notes Claims, the following voting

process and tabulation rules will apply:

      a.    any Nominee that is a Holder of record with respect to Class 6 2014 Senior
Unsecured Notes Claims shall vote on behalf of, or facilitate voting by,
Beneficial Holders of such Claims, as applicable, either by
(i) (a) immediately, and in any event within five (5) business days after its
receipt of the Solicitation Packages, distributing the Solicitation Packages,
including Beneficial Holder Ballots, it receives from the Notice and Claims
Agent to all such Beneficial Holders;[7] (b) providing such beneficial Holders
with a return address to send the completed Beneficial Holder Ballots;
(c) compiling and validating the votes and other relevant information of all
such Beneficial Holders on the Master Ballot; and (d) transmitting the
Master Ballot to the Notice and Claims Agent so that it is received no later
than the Voting Deadline, or (ii) if the Nominee elects to "pre-validate" the
Beneficial Holder Ballots, immediately, and in any event, within five
business days after receipt of the Solicitation Packages, distributing the
Solicitation Packages it receives from the Notice and Claims Agent to all
such Beneficial Holders, including in each package a Beneficial Holder
Ballot that it has "pre-validated,"[8] and a return envelope provided by and
addressed to the Notice and Claims Agent, so that the beneficial Holder may

---

[7]    Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary
requirements of each nominee. Each Nominee will then distribute the Solicitation Packages, as appropriate, in
accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with
their customary practices. If it is the Nominee's customary and accepted practice to submit a "voting instruction
form" to the Beneficial Holders for the purpose of recording the beneficial Holder's vote, the Nominee will be
authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

[8]    A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including its
DTC participant number and a medallion guarantee stamp (or authorized signatory list) validating the Beneficial
Holder's position as of the Voting Record Date, indicating the account number of the Beneficial Holder and the
principal amount of Class 6 2014 Senior Unsecured Notes Claims held by the Nominee for such
Beneficial Holder.

complete and return the pre-validated Beneficial Holder Ballot directly to the Notice and Claims Agent so that it is received no later than the Voting Deadline;

b.      with respect to Class 6 2014 Senior Unsecured Notes Claims, the applicable Agents/Trustees will not be entitled to vote on behalf of a Beneficial Holder; rather, each Beneficial Holder must vote his or her own Class 6 2014 Senior Unsecured Notes Claims according to instructions received from its Nominee;

c.      any Plan votes returned to a Nominee, whether in a Beneficial Holder Ballot or otherwise according to the Nominee's instructions, by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Nominee properly completes and delivers to the Notice and Claims Agent a Master Ballot that reflects the vote of such Beneficial Holders so that it is received no later than the Voting Deadline or otherwise validates the Beneficial Holder Ballot in a manner acceptable to the Notice and Claims Agent. Nominees shall retain all Beneficial Holder Ballots returned by Beneficial Holders for a period of one (1) year after the Effective Date of the Plan;

d.      if a Beneficial Holder holds a Class 6 2014 Senior Unsecured Notes Claim through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Beneficial Holder Ballot and each such Beneficial Holder should execute a separate Beneficial Holder Ballot for each block of Class 6 2014 Senior Unsecured Notes Claims, as applicable, that it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee;

e.      votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees in Class 6 2014 Senior Unsecured Notes Claims, as applicable, as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from the DTC. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

f.      if conflicting votes or "over-votes" are submitted by a Nominee pursuant to a Master Ballot, the Notice and Claims Agent will use reasonable efforts to reconcile discrepancies with the Nominees. If over-votes on a Master Ballot are not reconciled before the preparation of the voting report tabulating votes on the Plan, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position in the Class 6 2014 Senior Unsecured Notes Claims;

g.     to assist in the solicitation process, the Notice and Claims Agent may, but is not required to, contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided*, *however*, that the Notice and Claims Agent is not obligated to do so and neither the Debtors nor the Notice and Claims Agent will suffer any liability for failure to notify parties of such deficiencies;

h.     for purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of Class 6 2014 Senior Unsecured Notes Claims, although any principal amounts may be adjusted by the Notice and Claims Agent to reflect the amount of the Claim actually voted, including prepetition interest;

i.     a single Nominee may complete and deliver to the Notice and Claims Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits more than one Beneficial Holder Ballot to its Nominee, (i) the latest received Beneficial Holder Ballot received before the submission deadline imposed by the Nominee shall be deemed to supersede any prior Beneficial Holder Ballot submitted by the Beneficial Holder, and (ii) the Nominee shall complete the Master Ballot accordingly; and

j.     no fees or commissions or other remuneration will be payable to any Nominee, broker, dealer, or other person for soliciting Beneficial Holder Ballots with respect to the Plan.

27.     The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a.     except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Notice and Claims Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

b.     the Notice and Claims Agent will date-stamp all Ballots when received. The Notice and Claims Agent shall retain electronic copies of the Ballots for a

period of two (2) years from the closing of the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court;

c.    the Debtors will file the Certification of Balloting by no later than three (3) days prior to the Combined Hearing.  The Certification of Balloting shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity (each, an "Irregular Ballot"), including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged.  The Certification of Balloting shall indicate the Debtors' decision with regard to such Irregular Ballots.  Neither the Debtors nor any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Certification of Balloting nor will any of them incur any liability for failure to provide such notification, including, but not limited to, instances where a Ballot that is not a Master Ballot or pre-validated Beneficial Holder Ballot is submitted in hard-copy format;

d.    the method of delivery of Ballots to be sent to the Notice and Claims Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Notice and Claims Agent actually receives the executed Ballot;

e.    an executed Ballot is required to be submitted by the Entity submitting such Ballot.  Delivery of a Ballot to the Notice and Claims Agent by facsimile, or any electronic means other than expressly provided in the Solicitation and Voting Procedures will not be valid;

f.    no Ballot should be sent to the Debtors, the Debtors' agents (other than the Notice and Claims Agent), or the Debtors' financial or legal advisors, and, if so sent, will not be counted;

g.    if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly submitted and valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

h.    Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

i.    a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a

fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

j.      the Debtors, subject to a contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Certification of Balloting or a supplemental certification of balloting as applicable;

k.      neither the Debtors nor any other Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Certification of Balloting nor will any of them incur any liability for failure to provide such notification;

l.      unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with submissions of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

m.      in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

n.      subject to any order of the Bankruptcy Court, the Debtors reserve the right to reject any and all ballots not in proper form (including those submitted in paper format or other electronic means other than through the Debtors' case website), the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided that any such rejections will be documented in the Certification of Balloting;

o.      if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Bankruptcy Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution;

p.      if an objection to a Claim or Interest is filed, such Claim or Interest shall be treated in accordance with the procedures set forth herein;

q.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim or Interest; (ii) any Ballot cast by any Entity that does not hold a Claim in the Voting Class; (iii) any unsigned Ballot; (iv) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; (v) except for Master Ballots and pre-validated Beneficial Holder Ballots (which may be submitted via email or hard copy) any Ballot transmitted by facsimile,

23

email, hard copy, hand delivery, or any means other than the Notice and Claims Agent's E-Ballot portal; (vi) any Ballot sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' advisors (other than the Notice and Claims Agent); and (vii) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

r.      after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors or further order of the Bankruptcy Court;

s.      any claimant who has filed or purchased Claims within the same Class relating to the same purported liability ("Duplicate Claims") only be entitled to vote once on account of the Duplicate Claim in that Class, regardless of whether the Debtors have objected to such Duplicate Claim; and

t.      the Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes.

28.    The Debtors believe that the process described herein appropriately satisfies the need for broad notice in a case of this scope, without incurring excessive costs. Utilizing e-mail, rather than hard copy service where possible, to solicit Holders of Claims in the Voting Classes will result in significant cost savings that will directly inure to the benefit of the Debtors' stakeholders and enhance recoveries under the Plan. Further, service via e-mail is consistent with how the Debtors regularly communicate with their clients in the ordinary course of business.

29.    To the extent that circumstances necessitate modifications of, or amendments to, the Solicitation and Noticing Procedures, the Debtors reserve their right to supplement or amend them to further facilitate the solicitation of the Plan.

30.    Accordingly, the Debtors believe that service via e-mail is in the best interests of such Holders and maximizes recoveries under the Plan.

## Basis for Relief

**I.      The Court Should Conditionally Approve the Disclosure Statement**.

31.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

claims and interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically,

section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan. . . ."

11 U.S.C. § 1125(a)(1).

32.    Courts generally agree that the primary purpose of a disclosure statement is to

provide all material information that creditors and interest holders affected by a proposed plan

need to make an informed decision regarding whether to vote for the plan.  *See, e.g.*, *Krystal

Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp*., 337 F.3d 314, 321–22 (3d Cir. 2003)

(providing that a disclosure statement must contain "adequate information to enable a creditor to

make an informed judgment about the Plan" (internal quotations omitted)); *Century Glove,

Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee

a minimum amount of information to the creditor asked for its vote."); *In re A. H. Robins Co., Inc.*,

880 F.2d 694, 696 (4th Cir. 1989) (stating that the disclosure statement must provide "information

of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical

of holders of claims or interests of the relevant class to make an informed judgment about the

plan."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a

disclosure statement is to give the creditors the information they need to decide whether to accept

the plan."); *In re Phoenix Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general

purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired'

classes of creditors and interest holders to make an informed judgment about the proposed plan

and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan.").  Congress intended that such informed judgments are necessary to both negotiate the terms of, and vote on, a chapter 11 plan.  *See Century Glove*, 860 F.2d at 100.

33.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . . ."); *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case."); *In re Phx. Petrol. Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The determination of what is adequate information is subjective[,] made on a case-by-case basis[,] . . . [and] is largely within the discretion of the bankruptcy court."); *In re River Vill. Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

26

34.     In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts look for disclosures related to topics such as:

a.      the events that led to the filing of a bankruptcy petition;

b.      the relationship of the debtor with its affiliates;

c.      a description of the available assets and their value;

d.      the debtor's anticipated future performance;

e.      the source of information stated in the disclosure statement;

f.      the debtor's condition while in chapter 11;

g.      claims asserted against the debtor;

h.      the estimated return to creditors under a chapter 7 liquidation of the debtor;

i.      the future management of the debtor;

j.      the chapter 11 plan or a summary thereof;

k.      financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.      information relevant to the risks posed to creditors under the plan;

m.      the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.      litigation likely to arise in a nonbankruptcy context; and

o.      tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).  Disclosure regarding all topics is not necessary in every case.  *See U.S. Brass*, 194 B.R. at 424; *see also Phx.*

*Petrol.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

    **A.**    **The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code**.

    35.    The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains various categories of information that courts consider to be "adequate," including:

    a.    ***The Debtors' Business Operations and Capital Structure.***  An overview of the Debtors' corporate history, business operations, organizational structure, and prepetition capital structure, which are described in detail in Article V of the Disclosure Statement;

    b.    ***Events Leading to these Chapter 11 Cases.***  An overview of the events leading to the commencement of the Debtors' Chapter 11 Cases, which are described in detail in Article VI of the Disclosure Statement;

    c.    ***Events of the Chapter 11 Cases.***  An overview of key events in the Debtors' Chapter 11 Cases, which are described in detail in Article VII of the Disclosure Statement;

    d.    ***Notice of the Injunction, Exculpation, and Release Provisions of the Plan.***  A description of the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release, Third-Party Release, Exculpation, and Injunction, which are described in Article IV of the Disclosure Statement;

    e.    ***Risk Factors.***  Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, which are described in Article VIII of the Disclosure Statement;

    f.    ***Solicitation and Voting Procedures.***  A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan, which are described in Article IX of the Disclosure Statement;

    g.    ***Liquidation Analysis***.  An analysis of the liquidation value of the Debtors, which is described in Article X of the Disclosure Statement;

      h.      ***Confirmation of the Plan.***   Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, which are described in Article X of the Disclosure Statement;

      i.      ***Certain United States Federal Income Tax Consequences of the Plan.***   A description of certain U.S. federal income tax law consequences of the Plan, which are described in Article XI of the Disclosure Statement; and

      j.      ***Recommendation of the Debtors.***   A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan, stated in Article XII of the Disclosure Statement.

36.     Based on the foregoing, the Debtors submit, and will demonstrate at the Combined Hearing, that the Disclosure Statement contains sufficient information for a reasonable investor to make an informed judgment about the Plan and complies with section 1125 of the Bankruptcy Code. The Debtors request that the Court (a) conditionally approve the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code, for solicitation purposes only, and (b) determine (on a final basis) at the Combined Hearing that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code. As part of the brief in support of confirmation of the Plan, the Debtors will provide the necessary support for the Court to determine the adequacy of the Disclosure Statement and that the Debtors have met the requirements of section 1125 of the Bankruptcy Code.

**B.**     **The Disclosure Statement Provides Sufficient Notice of Release, Exculpation, and Injunction Provisions in the Plan**.

37.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c). Bankruptcy Rule 2002(c) similarly requires that such disclosure be provided for the notice of the time fixed for filing objections and the hearing to consider confirmation of the chapter 11 plan. Fed. R. Bankr. P. 2002(c).

38.    Article IV of the Disclosure Statement describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release, Third-Party Release, Exculpation, and Injunction.  Further, the relevant language in Article X of the Plan is in bold font, making it conspicuous to anyone who reads it, and the Combined Hearing Notice states in clear and bolded text that the Plan contains release, exculpation, and injunction provisions, including the Third-Party Release.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined by the Plan, and the Combined Hearing Notice complies with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the injunction under the Plan.

II.    **The Court Should Approve the Confirmation Timeline and Related Forms**.

A.    **The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline**.

39.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a).    Additionally, Bankruptcy Rule 3017(c) provides that, before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan.  *See* Fed. R. Bankr. P. 3017(c).  Pursuant to Local Rule 3018-1(a), the ballots also must be

returned to "the attorney for the chapter 11 plan proponent or to an entity authorized by the court not later than 7 days before the confirmation hearing." D.N.J. LBR 3018-1(a).

40.     The Debtors request that the Court exercise its authority under Local Rule 3018-1 and Bankruptcy Rules 3017(c), 3017(d) and 3018(a) to establish, subject to the Court's availability, (i) the Voting Record Date as **July 28, 2023**; (ii) the Solicitation Deadline as within **three (3) business days following entry of the Order** (or as soon as reasonably practicable thereafter); and (iii) the Voting Deadline as **September 1, 2023 at 4:00 p.m.**, prevailing Eastern Time. Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

41.     The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims entitled to vote on the Plan as part of the Solicitation Deadline, the Court require that all Holders of Claims entitled to vote on the Plan complete and submit their Ballots so that they are **actually received** by the Notice and Claims Agent on or before the Voting Deadline. Similarly, Holders of Claims or Interests who wish to opt out of the Third-Party Release on their Ballot or Non-Voting Status Notice must complete and submit an electronic Opt-Out Form through

the E-Ballot Portal (as defined below) or Public Securities Opt-Out Portal (as defined below) so that it is **actually** **received** by the Notice and Claims Agent on or before the Voting Deadline.

42.     The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan at least twenty-eight days to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline, consistent with the requirements of the applicable Bankruptcy Rules.[9]  Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the Holders of Claims in the Voting Classes and the deadline for Holders of Claims in the Voting Classes to vote to accept or reject the Plan.

### B.     The Court Should Approve the Forms of the Ballots.

43.     Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).   In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots.  Although based on Official Form B 314, the Ballots have been modified to (a) address the particular circumstances of these Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in the Voting Classes. The proposed Ballots for the Voting Classes are annexed to the Order as Exhibit 5A, Exhibit 5B, Exhibit 5C, Exhibit 5D, and Exhibit 5E.  The Debtors respectfully submit that the form of the Ballots complies with Bankruptcy Rule 3018(c) and should therefore be approved.

---

[9]     *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  Nonetheless, the Debtors request authority to extend the Voting Deadline in their sole discretion and without further order of the Court.

**C.     The Court Should Approve the Form and Distribution of the Solicitation
Packages to Holders of Claims Entitled to Vote on the Plan**.

44.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of

allowed claims and/or equity interests upon approval of a disclosure statement, including the

court-approved plan and disclosure statement and notice of the time within which acceptances and

rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

45.     In accordance with this requirement, the Debtors propose to send the Solicitation

Packages to provide Holders of Claims in the Voting Classes with the information they need to be

able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before

the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed by

e-mail, where available, through the Notice and Claims Agent to such Holders of Claims in the

Voting Classes.

46.     Each Solicitation Package will include the following materials, as applicable:

    a.     the conditionally approved Disclosure Statement (and exhibits thereto,
including the Plan), substantially in the form attached to the Order as
Exhibit 1;

    b.     the Order granting the relief requested herein (without exhibits, except for
as otherwise listed in this paragraph 46);

    c.     the Combined Hearing Notice, substantially in the form attached to the
Order as Exhibit 2;

    d.     a copy of the Solicitation and Voting Procedures, substantially in the form
attached to the Order as Exhibit 3;

    e.     the applicable form(s) of Ballot, substantially in the forms of the Ballots
attached to the Order as Exhibit 5A, Exhibit 5B, Exhibit 5C, Exhibit 5D,
and Exhibit 5E, together with detailed voting instructions and instructions
on how to submit or return the Ballot;

    f.     the Cover Letter, substantially in the form attached to the Order as Exhibit 6,
which describes the contents of the Solicitation Package and urges Holders
of Claims in the Voting Classes to vote to accept the Plan; and

g.    any additional documents that the Court has ordered to be made available.

47.    To the extent a Holder of a Claim in the Voting Classes does not have an e-mail address on file with the Debtors, the Debtors will mail such Holder of a Claim the applicable Ballot, Combined Hearing Notice, and Cover Letter detailing how Holders of Claims entitled to vote to accept or reject the Plan may access electronic versions or request hard copies of the remaining materials within the Solicitation Package.  Further, any party that receives any materials in electronic format but would prefer paper format may contact the Notice and Claims Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).  Distribution in this manner will translate to significant monetary savings that will benefit the Debtors' stakeholders and enhance recoveries under the Plan.

48.    Bankruptcy courts have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs. *See, e.g.*, *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. June 28, 2019) (authorizing the debtors to mail to the voting classes instructions detailing how to access electronic versions or request hard copies of the confirmation order, the disclosure statement, and any letters recommending acceptance of the plan); *In re Voyager Digital Holdings,* No. 22-10943 (MEW) (Bankr. S.D.N.Y. Jan. 13, 2023) (authorizing the debtors to distribute solicitation packages by e-mail to holders of account holder claims); *In re The Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. Apr. 22, 2021) (authorizing the debtors to provide holders of claims with a QR Code to access solicitation documents electronically instead of mailing paper copies, except for the cover letter, applicable ballot, and confirmation hearing notice, which were mailed); *see also In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. Jun 10, 2021) (authorizing the debtors to distribute solicitation documents other than the cover letter, ballot, and confirmation hearing notice

34

in electronic format); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Nov. 6, 2020) (authorizing the debtors to distribute solicitation documents other than the cover letter, ballot, and confirmation hearing notice in electronic format). Accordingly, the Debtors believe that their proposed notice and service procedures are in the best interest of the Debtors and their stakeholders and maximize recoveries under the Plan.

49.    Additionally, the Debtors will provide complete electronic copies of the Solicitation Package (excluding the Ballots) to the U.S. Trustee and all parties on the 2002 List as of the Voting Record Date. The Debtors will not provide Solicitation Packages, Non-Voting Status Notices, or other solicitation materials to: (i) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (ii) any party to whom notice of the Motion was sent but was subsequently returned as undeliverable without a forwarding address by the Voting Record Date; (iii) Holders in Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests); or (iv) Holders of Claims or Interests that have requested not to receive notice. For purposes of serving the Solicitation Packages, Non-Voting Notices, and the Combined Hearing Notices, the Notice and Claims Agent is authorized to rely on the address information maintained by the Debtors and provided to the Notice and Claims Agent as of the Voting Record Date.

50.    The Debtors also request a waiver of (i) any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned; and (ii) any obligation for the Debtors or the Notice and Claims Agent to conduct any additional research for updated

addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

51.     The Debtors respectfully request that the Notice and Claims Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in: (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the conditionally approved Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan.

52.     Given the attendant timing considerations associated with tabulating Ballots, the Debtors request authorization to accept Ballots and Opt-Out Forms solely via electronic, online transmissions through a customized online balloting portal on the Debtors' case website (the "E-Ballot Portal").  The Debtors also request authorization to collect Opt-Out Forms from holders of publicly traded securities through a separate online portal (the "Public Securities Opt-Out Portal").  Instructions for electronic, online transmission of Ballots are set forth on the form of Ballot and Opt-Out Form.  Parties entitled to vote or Opt-Out must cast an electronic Ballot or Opt-Out Form and electronically sign and submit a Ballot or Opt-Out Form instantly by utilizing the E-Ballot Portal or Public Securities Opt-Out Portal, as applicable (which allow a Holder to submit an electronic signature).  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this

manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

53.     All votes to accept or reject the Plan must be cast through the E-Ballot Portal except for votes from Nominees and Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims. All Ballots must be properly executed, completed, and submitted through the Notice and Claims Agent's online balloting portal, which can be accessed by visiting https://restructuring.ra.kroll.com/bbby/, clicking on the "Submit E- Ballot" section of the website, and completing the Ballot in accordance with the applicable voting instructions so that the Ballots are **actually received** by the Notice and Claims Agent no later than the Voting Deadline; *provided, however*, that the Beneficial Holder Ballot and Master Ballot may be returned by mail or by e-mail as described on the Ballots. **Hard copy Ballots and Opt-Out Forms will not be accepted for any Ballots except for hard copy Beneficial Holder Ballots and Master Ballots**. **In addition, electronic Ballots and Opt-Out Forms will not be accepted by facsimile or other electronic means (other than through the E-Ballot Portal and Public Securities Opt-Out Portal)**.

        **D.     The Court Should Approve the Combined Hearing Notice**.

54.     The Combined Hearing Notice includes the following: (a) instructions as to how to view or obtain copies of the conditionally approved Disclosure Statement (including the Plan and the other Exhibit attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice and Claims Agent's and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Combined Objection Deadline; and (e) notice of the Combined Hearing Date and information related thereto. The Debtors will serve the Combined Hearing Notice on all known Holders of Claims or Interests and the 2002 List (regardless of

whether such parties are entitled to vote on the Plan) by no later than three (3) business days following entry of the Order (or as soon as reasonably practicable thereafter).

55.    Bankruptcy Rule 2002(*l*) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(*l*).  Therefore, in addition to the foregoing distribution of the Combined Hearing Notice, the Debtors will publish the Publication Notice in the *New York Times* (National Edition) within five (5) business days following the entry of the Order, or as soon as practicable thereafter.  The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Combined Objection Deadline, and the Combined Hearing to parties who did not otherwise receive notice thereof by mail. Additionally, service of the Combined Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**E.    The Court Should Approve the Plan Supplement Notice.**

56.    The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed by the Debtors no later than fourteen (14) days prior to the Voting Deadline or such later date as may be approved by the Court on notice to parties in interest.[10]   The Plan Supplement will include the following materials in connection with confirmation, as applicable:  (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the identity and terms of any documentation, including a wind-down trust agreement, establishing the rights and compensation of the Plan Administrator; (c) any transition services agreement between a Purchaser and the Debtors (as may be applicable); and (d) any other

---

[10]    *See* Plan at Art. I.A.

necessary documentation related to any Asset Sale Transaction or other Liquidation Transactions in accordance with Article IV of the Plan.

57.     To ensure that all Holders of Claims or Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.    Accordingly, the Plan Supplement Notice should be approved.

### F.     The Court Should Approve the Form of Notices to Non-Voting Classes.

58.     As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages and, instead, the Debtors propose that such parties receive a Non-Voting Status Notice.    Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims or Interests in Non-Voting Classes:

| Class | Status | Treatment |
|---|---|---|
| Class 1 and Class 2 | Unimpaired—Deemed to Accept | Will receive a notice, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |
| Class 9 and Class 10 | Impaired—Deemed to Reject | Will receive a notice, substantially in the form attached to the Order as Exhibit 4B, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims or Interests that are subject to a pending objection filed by the Debtors are not entitled to vote the disputed portion of their Claim or Interest.  As such, Holders of such Claims or Interests will receive a notice, substantially in the form attached to the Order as Exhibit 4C. |

59.     In light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors will not provide the Holders in Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with the solicitation.

60.     Each Non-Voting Status Notice will include, among other things:  (a) instructions as to how to view or obtain copies of the conditionally approved Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice and Claims Agent and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article X of the Plan, and a form for opting out of the Third-Party Release provided by Article X.D of the Plan; (c) notice of the Combined Objection Deadline; (d) instructions on how the Opt-Out Form can be submitted electronically through the Notice and Claims Agent's E-Ballot Portal or Public Securities Opt-Out Portal, as applicable, and (e) notice of the Combined Hearing Date and information related thereto.

61.     The Debtors believe that the mailing of Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.

**G.     The Court Should Approve Notices to Contract and Lease Counterparties**.

62.     Article V.A of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed rejected by the Debtors or Wind-Down Debtors, as applicable, without the need for any further notice to or action, order, or approval of the Court, unless such Executory Contract and Unexpired Lease:  (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the date the Court enters an Order approving the Plan and adequacy of the Disclosure Statement on a final basis (the "Confirmation Date"); (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another

40

third party, as applicable, in connection with the any sale transaction that is the subject of a pending

motion as of the Confirmation Date; (d) is a contract, instrument, release, indenture, or other

agreement or document entered into in connection with the Plan; (e) is a D&O Liability Insurance

Policy; or (f) is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases as

of the Confirmation Date for rejection effective on a date that occurs after the Effective Date.

63.     To ensure that counterparties to Executory Contracts and Unexpired Leases receive

notice of the assumption or rejection of their Executory Contract or Unexpired Lease, if any,

pursuant to the Plan, the Debtors will mail the Assumption Notice or the Rejection Notice, as

applicable and appropriate, within the time periods specified in the Plan.   Accordingly, the

Rejection Notice and the Assumption Notice should be approved.

**III.    The Court Should Approve the Solicitation and Voting Procedures**.

64.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under subsection (e)
> of this section, that hold at least two-thirds in amount and more than
> one-half in number of the allowed claims of such class held by
> creditors, other than any entity designed under subsection (e) of this
> section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

65.     Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or

rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed

by the creditor or equity security holder or an authorized agent, and conform to the appropriate

Official Form." Fed. R. Bankr. P. 3018(c).  Pursuant to Local Rule 3018-1(c), "the Ballot recipient

must retain the Ballots for two years from the closing of the case."   D.N.J. LBR 2018-1(c).

Consistent with these requirements, the Debtors propose using the Solicitation and Voting

Procedures, which include specific voting and tabulation requirements and procedures as set forth below.

      **A.**      **Completion of Ballots**.

      66.      To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Solicitation and Voting Procedures provide that the Debtors will not count a Ballot if it is, among other things, illegible, submitted by a Holder of a Claim or Interest that is not entitled to vote on the Plan, incomplete, is submitted in hard copy format, or is submitted in electronic format other than through the Debtors' E-Ballot Portal (*i.e.*, by facsimile or e-mail). Further, subject to any contrary order of the Bankruptcy Court, the Debtors may waive any defects or irregularities as to a particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Certification of Balloting. Additionally, as required by Local Rule 3018-1(c), the Notice and Claims Agent will retain all paper copies of Ballots and all solicitation-related correspondence for two years following the Effective Date, whereupon the Notice and Claims Agent may destroy and/or otherwise dispose of such materials.

      **B.**      **General Ballot Tabulation and Voting Procedures**.

      67.      The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes. The Debtors believe that the proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Debtors submit that the Solicitation and Voting Procedures are in the best interests of the

Debtors' Estates, Holders of Claims or Interests, and other parties in interest, and that good cause

supports the relief requested herein.

      68.     The Debtors respectfully request that the Notice and Claims Agent be authorized

(to the extent not authorized by another order of the Court) to assist the Debtors in:  (a) distributing

the Solicitation Package; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject

the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of

Claims or Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the

Ballots, the Solicitation Packages, and all other documents and matters related thereto, including

the procedures and requirements for voting to accept or reject the Plan and for objecting to

confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors

regarding the Plan.  To assist in the solicitation process, the Debtors request that the Court grant

the Notice and Claims Agent the authority to contact parties who submit incomplete or otherwise

deficient Ballots to make a reasonable effort to cure such deficiencies, *provided* that neither the

Debtors nor the Notice and Claims Agent is required to contact such parties to provide notification

of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them

incur any liability for failure to provide such notification.  The Debtors request that the Court give

authorization to the Debtors and/or their Notice and Claims Agent, as applicable, to determine all

questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation

or withdrawals of Ballots, which determination will be final and binding.  The Solicitation and

Noticing Procedures and the authorization of the Notice and Claims Agent's assistance therewith

comply with Bankruptcy Rule 3018(c) and should be approved.

IV.    **The Court Should Approve the Procedures for Confirming the Plan and Approving the Disclosure Statement on a Final Basis**.

A.    **The Combined Hearing Date**.

69.    Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and provides that parties-in-interest can object to confirmation.  11 U.S.C. § 1128.  Bankruptcy Rule 3017(a) also requires that the court "hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders, and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Fed. R. Bankr. P. 3017(a).  Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan.  Fed. R. Bankr. P. 3017(c).  Further, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary."  Fed. R. Bankr. P. 2002(b).

70.    Moreover, section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan.  11 U.S.C. § 105(d)(2)(B)(vi) (providing that "the court, on its own motion or on the request of a party in interest . . . may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.").

44

71.    In addition, the Bankruptcy Rules support approval of the Combined Hearing as a matter of efficiency. *See, e.g.*, Fed. R. Bankr. P. 1001 (providing that the Bankruptcy Rules should be employed "to secure the just, speedy, and inexpensive determination of every case and proceeding."). And approving the Combined Hearing will (a) conserve judicial and estate resources by minimizing the costs associated with preparing for and attending multiple hearings, (b) enable the Plan to be confirmed as expeditiously as possible, (c) provide better recoveries to Holders of Claims and Interests than would otherwise be available after multiple hearings, and (d) not be unjust under these facts and circumstances.

72.    Courts in this and other districts have previously allowed combined hearings on approval of disclosure statements and confirmation of plans in chapter 11 cases. *See, e.g.*, *In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. Jul. 15, 2021) [Docket No. 408]; *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) (Bankr. D.N.J. Oct. 8, 2020) [Docket No. 762]; *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. Sep. 16, 2020) [Docket No. 461]; *In re Mountain Creek Resort, Inc.*, No. 17-19899 (SLM) (Bankr. D.N.J. Dec. 12, 2019) [Docket No. 1098]; *In re New England Motor Freight, Inc.*, No. 19-12809 (JKS) (Bankr. D.N.J. Nov. 14, 2019) [Docket No. 1008].

73.    In accordance with Bankruptcy Rules 1001, 2002, and 3017 and section 1128 of the Bankruptcy Code, the Debtors request that the Court establish **September 7, 2023 at 2:30 p.m.**, prevailing Eastern Time as the Combined Hearing Date. The Debtors submit that a combined hearing will streamline and expedite the confirmation process, which will inure directly to the benefit of the Debtors' estates and their creditors by hastening the implementation of the Plan and limiting the amount of time the Debtors remain in chapter 11. A combined hearing will spare the Debtors from additional administrative expenses associated with a two-stage process and

promote judicial efficiency and economy.  The Debtors propose that the Combined Hearing may be continued from time to time with permission of the Court without further notice other than by such continuance being announced in open court or by a notice of reset being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.

**B.      The Court Should Approve the Procedures for Filing Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan**.

74.      Bankruptcy Rule 2002 requires no less than twenty-eight days' notice to all holders of claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan or final approval of a disclosure statement.  Fed. R. Bankr. P. 2002(b), (d).

75.      Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  Bankruptcy Rule 3017(a) provides that "[o]bjections to the disclosure statement shall be filed and served on the debtor, the trustee, any committee appointed under the Code, and any other entity designated by the court, at any time before the disclosure statement is approved or by an earlier date as the court may fix."  Fed. R. Bankr. P. 3017(a).  Accordingly, under both Bankruptcy Rules 3020(b)(1) and 3017(a) the Court is authorized to fix a time within which objections to the confirmation of a plan or the adequacy of a disclosure statement must be filed.

76.      The Debtors request that the Court establish **September 1, 2023 at 4:00 p.m.**, prevailing Eastern Time as the Combined Objection Deadline.

77.      The Debtors also request that the Court direct the manner in which parties in interest may object to confirmation of the Plan or final approval of the Disclosure Statement.  The Combined Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

    a.        be in writing;

     b.      conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court;

     c.      state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan, Disclosure Statement, or related materials, that would resolve such objection; and

     d.      be filed with the Court and served upon the notice parties so as to be **<u>actually received</u>** on or before the Combined Objection Deadline.

78.    The Debtors believe that the Combined Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Combined Hearing.

### C.    The Court Should Approve the Deadline for Filing the Certification of Balloting.

79.    Local Rule 3018-1(b) requires that "the ballot recipient must file Local Form Certification of Balloting not later than 3 days before the confirmation hearing."  D.N.J. LBR 3018-1(b).  The Debtors therefore respectfully request that the court set **<u>September 4, 2023</u>** as the deadline to file the Certification of Balloting.

### D.    The Court Should Approve the Consequences of Not Confirming or Consummating the Plan.

80.    The Debtors reserve the right to revoke or withdraw the Plan before the Combined Hearing and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (a) the Plan will be null and void in all respects; (b) any settlement or compromise not previously approved by Final Order of the Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan shall

47

(i) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (ii) prejudice in any manner the rights of any Debtor or any other Entity, or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

> **E.      The Court Should Approve the Debtors' Request to Extend the Exclusivity Periods in Accordance with the Terms Herein.**

81.      A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code.  Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where, as here, the debtor has filed a chapter 11 plan and is soliciting votes on such plan.  "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."  *In re Burns and Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005).  In these Chapter 11 Cases, the Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will expire on August 21, 2023,[11] and October 20, 2023, respectively, absent further order of the Court.

82.      Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).  Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in

---

[11]      As noted above, the Debtors respectfully submit this date has been automatically extended by virtue of the Plan filed contemporaneously herewith, but the Debtors have sought the relief requested by this Motion out of an abundance of caution.

this context "in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").  Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

83.    Courts within the Third Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods.  These factors include the following:

a.    the size and complexity of the case;

b.    the existence of good faith progress;

c.    the necessity of sufficient time to negotiate and prepare adequate information;

d.    whether creditors are prejudiced by the extension;

e.    whether the debtor is paying its debts as they become due;

f.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

g.    whether the debtor has made progress negotiating with creditors;

h.     the length of time a case had been pending;

i.      whether the debtor is seeking an extension to pressure creditors; and

j.      whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean*

*Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664 (identifying the above factors and

noting that courts generally rely on the same factors to determine whether exclusivity should be

extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

84.     Importantly, not all of these factors are relevant to every case and courts use only

the relevant subset of the above factors to determine whether cause exists to grant an exclusivity

extension in a particular chapter 11 case. *See, e.g., Express One*, 194 B.R. at 100 (identifying four

of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United*

*Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause"

to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435

(Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend

exclusivity).

85.     Furthermore, courts routinely grant a debtor's first request for an extension of the

debtor's exclusivity period. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Texas 2004)

("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of

exclusivity lasts."); *see also In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is

true that during the initial 120-day period in which debtors have an exclusive right to file a plan of

reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden

of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has

been satisfied.").

86.    Since the Petition Date, the Debtors have engaged with their stakeholders and their advisors, including the Committee and the DIP Lenders, in an effort to reach consensus on the terms of a value-maximizing close to these Chapter 11 Cases.  An extension of the Exclusivity Periods will further permit the Debtors to engage with their stakeholders and seek further consensus, thereby providing the Debtors with adequate time to evaluate their options and complete their winddown initiatives while these cases are administered as efficiently as possible for the benefit of the Debtors' stakeholders and other parties in interest.

87.    The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein.  Each of the relevant factors weighs in favor of an extension of the Exclusivity Periods, as follows:

- *The Debtors' Chapter 11 Cases Are Large and Complex.*  One need look no further than the docket to conclude that these Chapter 11 Cases are complex.  As of the date hereof, over 1,000 items have been filed on the docket.  Further, these Chapter 11 Cases involve over seventy Debtor entities with thousands of employees.  The Debtors continue to operate in a number of stores across the United States.  Since commencing these cases, the Debtors have undertaken significant efforts to winddown their businesses, including closing hundreds of stores, which has demanded substantial attention from the Debtors' management and advisors.

- *The Debtors Have Made Good Faith Progress Towards Exiting Chapter 11.*  The Debtors have already hit key milestones necessary for their exit from chapter 11, including the completion and filing of their schedules and statements, the passing of a claims bar date, the negotiation and implementation of the DIP Facility and resolution of objections related thereto, the closing of hundreds of stores, the sale of hundreds of leasehold interests, the sale of their intellectual property assets, and the filing of the Plan and Disclosure Statement.  Additionally, as discussed in greater detail above, the Debtors are actively working to advance a Plan that maximizes recoveries for all stakeholders.

- *An Extension of the Exclusivity Periods Will Not Prejudice Creditors.*  The Debtors are requesting an extension of the Exclusivity Periods in order to maintain focus on completing their winddown initiatives and to allow the process to continue unhindered by competing plans.  The Debtors seek to protect their exclusive ability to propose a chapter 11 plan and to maintain flexibility so competing plans do not derail the Debtors' chapter 11 process.

51

Extending the Exclusivity Periods will benefit creditors by avoiding the drain on estate assets attendant to the potential proposal of a competing chapter 11 plan. All stakeholders will benefit from that continued stability and predictability, which comes only with the Debtors being the sole potential plan proponents. Moreover, throughout these Chapter 11 Cases and as described in greater detail above, the Debtors have had ongoing and transparent communications with their major creditor groups, including through ongoing dialogue with their largest vendors and the production of thousands of pages of documents in response to requests submitted by the Committee and the DIP Lenders. Ultimately, extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest.

- *These Cases Are Fewer Than Four Months Old.* The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes fewer than four months after the Petition Date. As discussed above, during this short time, the Debtors have accomplished a great deal and continue to work diligently with all stakeholders. The Debtors focused their efforts in the first 120 days of these Chapter 11 Cases on ensuring a soft landing into chapter 11, marketing their assets as part of a going concern transaction or otherwise, implementing the winddown of their stores and inventory, and marketing their lease assets for sale. These efforts required the Debtors' full and undivided attention, and the Debtors are now prepared to shift their focus toward generating additional support for a value-maximizing transaction.

- *An Extension Will Not Prejudice Creditors.* The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. All creditor groups or their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these Chapter 11 Cases, and these parties have continued to engage in discussions with respect to the formulation of the Debtors' proposed Plan.

88.    An objective analysis of the relevant factors demonstrates that the Debtors are doing everything necessary to facilitate a successful conclusion to these Chapter 11 Cases. Further, courts in this jurisdiction have granted similar relief. *See*, *e.g.*, *In re Nat'l Realty Investment Advisors, LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. October 5, 2022) [Docket No. 903] (extending exclusivity periods by 120 days); *In re LTL Mgmt. LLC*, No. 21-30589 (MBK) (Bankr. D.N.J. Feb. 7, 2022) [Docket No. 1405] (extending exclusivity periods by three months); *In re Diocese of Camden, New Jersey*, No. 20-21257 (JNP) (Bankr. D.N.J. May 12, 2021) [Docket

No. 628] (extending exclusivity periods by 90 days); *In re L'Occitane, Inc.*, No. 21-10632 (MBK)

(Bankr. D.N.J. May 24, 2021) [Docket No. 327] (extending exclusivity periods by 90 days);

*In re Modell's Sporting Goods, Inc.*, No 20-14179 (VFP) (Bankr. D.N.J. July 10, 2020)

[Docket No 495] (extending filing exclusivity period 120 days and solicitation exclusivity period

115 days).[12]  Accordingly, the Debtors respectfully submit that sufficient cause exists to extend

the Exclusivity Periods as provided herein.

## Non-Substantive Modifications

89.    The Debtors request authorization to make non-substantive changes to the

Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Packages, Non-Voting Status

Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan

Supplement Notice, Assumption and Rejection Notices, and any related documents without further

order of the Court, including changes to correct typographical and grammatical errors, if any, and

to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the

Solicitation Packages before distribution.

## Waiver of Memorandum of Law

90.    The Debtors respectfully request that the Court waive the requirement to file a

separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon

which the Debtors rely is set forth herein, and the Motion does not raise any novel issues of law.

## Reservation of Rights

91.    Notwithstanding anything to the contrary herein, nothing contained in this Motion

or any actions taken pursuant to any order granting the relief requested by this Motion is intended

or should be construed as (a) an admission as to the validity of any particular claim against the

---

[12]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request of the Debtors' counsel.

Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a

promise or requirement to pay any particular claim, (d) an implication or admission that any

particular claim is of a type specified or defined in this Motion or any order granting the relief

requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease

pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any

other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a

concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that

may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved

to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants

the relief sought herein, any payment made pursuant to the Court's order is not intended and should

not be construed as an admission as to the validity of any particular claim or a waiver of the

Debtors' rights to subsequently dispute such claim.

## No Prior Request

92.      No prior request for the relief sought in this Motion has been made to this or any

other court.

## Notice

93.      The Debtors will provide notice of this Motion to the following parties and/or their

respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the agents under the

Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto;

(e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the

Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the

United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service;

(i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the

Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel

thereto; (*l*) the Debtors' Canadian Counsel; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: July 21, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
               wusatine@coleschotz.com
               fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       joshua.sussberg@kirkland.com
               emily.geier@kirkland.com
               derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**ORDER (I) (A) CONDITIONALLY
APPROVING THE ADEQUACY OF THE
DISCLOSURE STATEMENT, (B) APPROVING
THE SOLICITATION AND NOTICE PROCEDURES
WITH RESPECT TO CONFIRMATION OF THE PLAN,
(C) APPROVING THE FORMS OF BALLOTS AND NOTICES
IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED
DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION
HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT
THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING
THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
<u>OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF</u>**

The relief set forth on the following pages, numbered five (5) through twenty-one (21), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

Upon the *Debtors' Motion for Entry of an Order (I) (A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in Connection Therewith, (D) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Certain Dates and Deadlines with Respect Thereto, and (E) Granting Related Relief, and (II) (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") pursuant to sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3001, 3016, 3017, 3018, 3020, 6004, and 9006, and Local Rules 3018-1 and 9013-1:    (a) approving: (i) the adequacy of the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "Disclosure Statement") on a conditional basis; (ii) the Solicitation and Voting Procedures; (iii) the Non-Voting Status Notices, including the

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Disclosure Statement, or Plan as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

Opt-Out Form; (iv) the Ballots; (v) the Cover Letter; (vi) the Combined Hearing Notice; (vii) the

Plan Supplement Notice; (viii) the Assumption and Rejection Notices; (ix) the Certification of

Balloting; (x) the manner and form of the Solicitation Packages and the materials contained

therein; (xi) shortening notice periods and requirements; and (xii) the dates and deadlines related

thereto, including, but not limited to, the Publication Deadline, the Solicitation Deadline, the Plan

Supplement Filing Date, the Combined Objection Deadline, the Voting Deadline, the deadline to

file the Certification of Balloting, the Confirmation Brief Deadline, the Combined Reply Deadline,

and the Combined Hearing Date; (b) extending the Debtors' exclusive right to file a chapter 11

plan by ninety days through and including November 20, 2023 (the "Filing Exclusivity Period"),

and to solicit votes thereon by ninety days through and including January 18, 2024 (the "Soliciting

Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"),

without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods; and

(c) granting related relief, all as more fully set forth in the Motion; and upon the First Day

Declaration; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

*Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey,

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

## I.      Conditional Approval of the Disclosure Statement.

2.      The Disclosure Statement, attached hereto as **Exhibit 1**, is conditionally approved as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

section 1125(a)(1) of the Bankruptcy Code.  Any objections to the adequacy of the information contained in the Disclosure Statement are expressly reserved for consideration at the Combined Hearing.

3.       The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims and Interests and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

**II.      Approval of the Timeline and Materials for Soliciting Votes.**

**A.      Approval of Certain Dates and Deadlines with Respect to the Plan and Disclosure Statement.**

4.       The Confirmation Timeline is hereby approved (subject to modification as necessary):

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | July 27, 2023 at 4:00 p.m., prevailing Eastern Time | Deadline by which objections to the conditional approval of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties (the "<u>Disclosure Statement Objection Deadline</u>") |
| Voting Record Date | July 28, 2023 | The date for determining (i) which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and receive Solicitation Packages in connection therewith and (ii) whether Claims have been properly assigned or |

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

| Event or Deadline | Date and Time | Description |
|---|---|---|
| | | transferred to any assignees pursuant to Bankruptcy Rule 3001(e) such that an assignee can vote as the Holder of a respective Claim. |
| Publication Deadline | Five (5) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The last date by which the Debtors will submit the Combined Hearing Notice in a format modified for publication. |
| Conditional Disclosure Statement Hearing | August 1, 2023 at 2:30 p.m., prevailing Eastern Time | The date of the hearing at which the Court will consider conditional approval of the adequacy of the Disclosure Statement. |
| Solicitation Deadline | Three (3) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan. |
| Plan Supplement Filing Deadline | The date that is no later than fourteen (14) days prior to the Voting Deadline | The date by which the Debtors shall file the Plan Supplement. |
| Combined Objection Deadline | September 1, 2023 at 4:00 p.m., prevailing Eastern Time | The deadline by which objections to confirmation of the Plan or final approval of the adequacy of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties. |
| Voting Deadline | September 1, 2023 at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and opt-out forms (the "Opt-Out Forms") must be properly executed, completed, and electronically submitted (or mailed as applicable) so that they are **actually received** by Kroll Restructuring Administration LLC (the "Notice and Claims Agent"). |
| Deadline to File Certification of Balloting | September 4, 2023 | The date by which the report tabulating the voting on the Plan (the "Certification of Balloting") shall be filed with the Court. |

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Confirmation Brief Deadline | September 6, 2023 | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan. |
| Combined Reply Deadline | September 6, 2023 | The deadline by which replies to objections to confirmation of the Plan or final approval of the adequacy of the Disclosure Statement must be filed with the Court. |
| Combined Hearing Date | September 7, 2023, 2:30 p.m., prevailing Eastern Time | The date of the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing Date"). |

5.     The Solicitation Deadline provides sufficient time for Holders of Claims entitled to vote on the Plan to make informed decisions with respect to voting on the Plan.  The Debtors may adjourn the Combined Hearing Date and any related dates and deadlines from time to time, without notice to the parties-in-interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with the Court and serving such notice on the 2002 List.

**B.     Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan.**

6.     The Solicitation Packages to be transmitted on or before the Solicitation Deadline to those Holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, shall include the following, the form of each of which is hereby approved:

a.     the conditionally approved Disclosure Statement (and exhibits thereto, including the Plan), substantially in the form attached hereto as **Exhibit 1**;

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

b.      the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 2**;

c.      this Order (without exhibits, except for the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 3**);

d.      the applicable forms of Ballot, substantially in the forms of the Ballots attached to hereto as **Exhibit 5A**, **Exhibit 5B**, **Exhibit 5C**, **Exhibit 5D**, and **Exhibit 5E**, as applicable, together with detailed voting instructions and instructions on how to submit or return the Ballot;

e.      the Cover Letter, substantially in the form attached hereto as **Exhibit 6**; and

f.      any additional documents that the Court has ordered to be made available.

7.      The Solicitation Packages provide the Holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Local Rules.

8.      The Debtors shall distribute Solicitation Packages to all Holders of Claims entitled to vote on the Plan on or before the Solicitation Deadline, or as soon as reasonably practicable thereafter.   Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

(Page | 10)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

9.      The Debtors are authorized to cause the Solicitation Packages to be distributed in electronic format by e-mail through the Notice and Claims Agent to Holders of Claims in the Voting Classes; *provided*, *however*, that the Debtors are authorized to cause the Solicitation Packages to be distributed in paper format through the Notice and Claims Agent to Holders of Class 6 2014 Senior Unsecured Notes Claims.

10.     The form of letter (the "Cover Letter"), attached hereto as **Exhibit 6**, describing the contents of the Solicitation Packages and detailing how Holders of Claims entitled to vote to accept or reject the Plan may access electronic versions or request hard copies of each of the Solicitation Packages and how a Ballot is approved.

11.     The Debtors are authorized to cause the Non-Voting Status Notices to be distributed in electronic format by e-mail through the Notice and Claims Agent to Holders of Claims and Interests in the Non-Voting Classes.

12.     The Debtors are authorized to cause the Cover Letter, Ballot, and Combined Hearing Notice, or a Non-Voting Status Notice to be mailed through the Notice and Claims Agent to a Holder of a Claim or Interest in a Voting Class or Non-Voting Class, as applicable, to the

(Page | 11)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

extent the e-mail addresses for such Holders are unavailable as of the date the Debtors file the Motion.

13.    Any party that receives any materials in electronic format but would prefer paper format may contact the Notice and Claims Agent to request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

14.    The Notice and Claims Agent is authorized to assist the Debtors in:  (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the conditionally approved Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors or interest Holders regarding the Plan and/or the conditionally approved Disclosure Statement.

(Page | 12)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

15.     On or before the Solicitation Deadline, the Debtors (through the Notice and Claims Agent) shall provide complete Solicitation Packages (other than Ballots) to the U.S. Trustee and to all parties on the 2002 List as of the Voting Record Date.

16.     The Notice and Claims Agent is authorized to accept Ballots and Opt-Out Forms via electronic online transmissions through an online balloting portal maintained by the Notice and Claims Agent on the Debtors' case website (the "E-Ballot Portal"). The Debtors also request authorization to collect Opt-Out Forms from holders of publicly traded securities through a separate online portal (the "Public Securities Opt-Out Portal"). The encrypted data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. Ballots and Opt-Out Forms submitted via the E-Ballot Portal or the Public Securities Opt-Out Portal shall be deemed to contain a signature. E-Ballots shall be the sole method by which a creditor may submit a Ballot. Ballots submitted by mail, hand delivery, overnight courier, e-mail, facsimile, or other electronic means shall be deemed invalid.

17.     All votes to accept or reject the Plan must be cast through the E-Ballot Portal except for votes from Nominees and Beneficial Holders of 2014 Senior Unsecured Notes Claims in

(Page | 13)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

Class 6.  All Ballots must be properly executed, completed, and submitted according to their applicable voting instructions so that the Ballots are **actually received** by the Notice and Claims Agent no later than the Voting Deadline; *provided*, *however*, that the Beneficial Holder Ballot and Master Ballot may be returned by mail or by e-mail as described on the Ballots.  Hard copy Ballots and Opt-Out Forms will not be accepted for any Ballots except for hard copy Beneficial Holder Ballots and Master Ballots.  In addition, electronic Ballots and Opt-Out Forms will not be accepted by facsimile or other electronic means (other than through the E-Ballot Portal and Public Securities Opt-Out Portal).

### C.    Approval of the Combined Hearing Notice.

18.    The Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 2**, filed by the Debtors and served upon parties in interest in these Chapter 11 Cases on or before the Solicitation Deadline constitutes adequate and sufficient notice of the hearing to consider final approval of the adequacy of the Disclosure Statement, approval of the Plan, the manner in which a copy of the Plan could be obtained, and the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

(Page | 14)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

19.    The Debtors shall publish the Combined Hearing Notice (in a format modified for publication) one time in the *New York Times* (National Edition) by no later than five (5) business days following entry of this Order (or as soon as reasonably practicable thereafter).

**D.    Approval of Notice of Filing of the Plan Supplement.**

20.    The Debtors are authorized to send notice of the filing of the Plan Supplement substantially in the form attached hereto as **<u>Exhibit 7</u>** on the Plan Supplement Filing Deadline or as soon as reasonably practicable thereafter.

**E.    Approval of the Form of Notices to Non-Voting Classes.**

21.    Except to the extent the Debtors determine otherwise, the Debtors are not required to provide Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes, as such Holders are not entitled to vote on the Plan.  Instead, on or before the Solicitation Deadline, or as soon as reasonably practicable thereafter, the Notice and Claims Agent shall e-mail (to the extent that email addresses are available) a Non-Voting Status Notice, including the Opt-Out Form

(Page | 15)

| | | |
|---|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* | |
| Case No. | 23-13359 (VFP) | |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF | |

attached to each notice, in lieu of Solicitation Packages, the form of each of which is hereby

approved, to those parties, outlined below, who are not entitled to vote on the Plan:

| Class | Status | Treatment |
|---|---|---|
| Class 1 and Class 2 | Unimpaired—Deemed to Accept | Will receive a notice, substantially in the form attached hereto as **Exhibit 4A**, in lieu of a Solicitation Package. |
| Class 9 and Class 10 | Impaired—Deemed to Reject | Will receive a notice, substantially in the form attached hereto as **Exhibit 4B**, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims or Interests that are subject to a pending objection filed by the Debtors are not entitled to vote the disputed portion of their Claim or Interest. As such, Holders of such Claims or Interests will receive a notice, substantially in the form attached hereto as **Exhibit 4C**. |

22.    The Debtors are not required to distribute Solicitation Packages, other solicitation

materials, or a Non-Voting Status Notice to:  (i) Holders of Claims that have already been paid in

full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course

of business pursuant to an order previously entered by this Court; or (ii) any party to whom notice

of the Motion was sent but was subsequently returned as undeliverable without a forwarding

address by the Voting Record Date; or (c) the Holders in Class 7 (Intercompany Claims) or

(Page | 16)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

Class 8 (Intercompany Interests). For purposes of serving the Solicitation Packages, Non-Voting Notices, and the Combined Hearing Notices, the Notice and Claims Agent is authorized to rely on the address information maintained by the Debtors and provided to the Notice and Claims Agent as of the Voting Record Date. The Debtors also request a waiver of (i) any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned; and (ii) any obligation for the Debtors or the Notice and Claims Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

## F. Approval of Notices to Contract and Lease Counterparties.

23. The Debtors are authorized to mail a notice of rejection or assumption of any Executory Contracts or Unexpired Leases, in the forms attached hereto as **Exhibit 8** and **Exhibit 9** respectively, to the applicable counterparties to Executory Contracts and Unexpired Leases that will be rejected or assumed pursuant to the Plan, within the time periods specified in the Plan.

(Page | 17)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

## III.    Approval of the Solicitation and Voting Procedures.

24.    The Debtors are authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Exhibit 3**, which are hereby approved in their entirety.

## IV.    Approval of Procedures for Confirming the Plan.

### A.    Approval of the Procedures for Filing Objections to the Final Approval of the Adequacy of the Disclosure Statement or Confirmation of the Plan.

25.    Objections to the final approval of the adequacy of the Disclosure Statement or confirmation of the Plan will not be considered by the Court unless such objections are timely filed and properly served in accordance with this Order and the *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures, and (II) Granting Related Relief* [Docket No. 98] (the "Case Management Order").  Specifically, all objections to the final hearing on the adequacy of the Disclosure Statement or confirmation of the Plan or requests for modifications to the Plan, if any, **must**:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service)

(Page | 18)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

and served upon the notice parties so as to be **actually** **received** on or before the Combined

Objection Deadline by each of the notice parties identified in the Combined Hearing Notice.

### B.    Approval of Consequences of Not Confirming or Consummating the Plan.

26.    If the Debtors revoke or withdraw the Plan, or if the Disclosure Statement is not

finally approved, or if Confirmation or the Effective Date does not occur, then:  (i) the Plan will

be null and void in all respects; (ii) any settlement or compromise not previously approved by

Final Order of the Court embodied in the Plan (including the fixing or limiting to an amount certain

of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory

Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed

pursuant to the Plan will be null and void in all respects; and (iii) nothing contained in the Plan

shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity,

(Page | 19)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

(b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

## V.    Approval of Extension of the Exclusivity Periods.

27.    Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Filing Exclusivity Period pursuant to section 1121(b) of the Bankruptcy Code is hereby extended 90 days through and including November 20, 2023.

28.    Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Soliciting Exclusivity Period pursuant to section 1121(c) of the Bankruptcy Code is hereby extended 90 days through and including January 18, 2024.

29.    Nothing herein shall prejudice (a) the Debtors' rights to seek further extensions of the Exclusivity Periods consistent with section 1121(d) of the Bankruptcy Code, or (b) the rights of any party in interest to object to any further extension requests.

## VI.    Miscellaneous.

30.    The Debtors are authorized to make non-substantive changes to the Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement

(Page | 20)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

Notice, Assumption and Rejection Notices, and any related documents after the entry of this Order without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan and related documents (including the appendices thereto), and any other materials in the Solicitation Packages.

31.    The Debtors' rights are reserved to modify the Plan in accordance with Article XII thereof, including the right to withdraw the Plan as to any or all Debtors at any time before the Confirmation Date.

32.    Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

33.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

34.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

(Page | 21)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359 (VFP) |
| Caption of Order: | ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF |

36.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

37.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules and the Local Rules are satisfied by such notice.

38.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

## __Exhibit 1__

## **Disclosure Statement**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## DISCLOSURE STATEMENT RELATING TO THE JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

THIS IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.    THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR CONDITIONAL APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.  THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.  THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES.    NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.    BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE VIII HEREIN.  IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN SHALL GOVERN.

THE DEBTORS URGE EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, AND CERTAIN ANTICIPATED EVENTS IN THE DEBTORS' CHAPTER 11 CASES. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS, STATUTORY PROVISIONS, OR EVERY DETAIL OF SUCH ANTICIPATED EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.  FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.    THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY PREPARED IN ACCORDANCE WITH FEDERAL, STATE, OR OTHER SECURITIES LAWS OR OTHER SIMILAR LAWS.

THE PLAN AND DISCLOSURE STATEMENT HAVE NEITHER BEEN FILED WITH, NOR APPROVED OR DISAPPROVED BY, THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE SECURITIES COMMISSION OR OTHER SIMILAR REGULATORY BODY, AND NEITHER THE SEC NOR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY BODY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR THE MERITS OF THE PLAN.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES. WHILE THE DEBTORS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES AND THEIR FUTURE RESULTS AND OPERATIONS.  THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT CONTAINS "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF UNITED STATES SECURITIES LAWS. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF, OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  YOU ARE CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS.  FORWARD-LOOKING STATEMENTS MAY INCLUDE, BUT ARE NOT LIMITED TO, STATEMENTS ABOUT THE DEBTORS':

- BUSINESS STRATEGY;

- FINANCIAL CONDITION, REVENUES, CASH FLOWS, AND EXPENSES;

- LEVELS OF INDEBTEDNESS, LIQUIDITY, AND COMPLIANCE WITH DEBT COVENANTS;

- **FINANCIAL STRATEGY, BUDGET, PROJECTIONS, AND OPERATING RESULTS;**

- **SUCCESSFUL RESULTS FROM THE DEBTORS' OPERATIONS;**

- **GENERAL ECONOMIC AND BUSINESS CONDITIONS;**

- **COUNTERPARTY CREDIT RISK;**

- **THE OUTCOME OF PENDING AND FUTURE LITIGATION;**

- **UNCERTAINTY REGARDING THE DEBTORS' FUTURE OPERATIONS; AND**

- **PLANS, OBJECTIVES, AND EXPECTATIONS.**

**THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE DEBTORS MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.**

**THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO, AND EXPRESSLY DISCLAIM ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.**

**CONFIRMATION AND CONSUMMATION OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED IN ARTICLE XI OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED OR, IF CONFIRMED, THAT SUCH MATERIAL CONDITIONS PRECEDENT WILL BE SATISFIED OR WAIVED. YOU ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING BUT NOT LIMITED TO THE PLAN AND ARTICLE VIII OF THIS DISCLOSURE STATEMENT ENTITLED "RISK**

FACTORS," BEFORE SUBMITTING YOUR BALLOT TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

SUMMARIES OF THE PLAN AND STATEMENTS MADE IN THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION CONTAINED IN AND THE DOCUMENTS ANNEXED TO THIS DISCLOSURE STATEMENT OR OTHERWISE INCORPORATED HEREIN BY REFERENCE ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THOSE DOCUMENTS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE OF THIS DISCLOSURE STATEMENT, AND THERE IS NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN ACCORDANCE WITH APPLICABLE LAW, THE DEBTORS ARE UNDER NO DUTY TO UPDATE OR SUPPLEMENT THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS AND INTERESTS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE LIQUIDATION TRANSACTIONS CONTEMPLATED THEREBY.

THIS DISCLOSURE STATEMENT IS SUBJECT TO FURTHER REVISION AND MAY BE AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED TO, AMONG OTHER THINGS, TAKE INTO ACCOUNT FURTHER SPECIFICS OF ANY LIQUIDATION TRANSACTION TO BE CONSUMMATED PURSUANT TO THE PLAN, AND TO ACCOMMODATE ADDITIONAL REQUESTS FOR DISCLOSURE.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................1

II.    PRELIMINARY STATEMENT ...........................................................1

III.   QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE
       STATEMENT AND PLAN...................................................................5

       A.   What is chapter 11?................................................................5
       B.   Why are the Debtors sending me this Disclosure Statement? .....................5
       C.   Am I entitled to vote on the Plan? .................................................6
       D.   What will I receive from the Debtors if the Plan is consummated? ...........6
       E.   What happens to my recovery if the Plan is not confirmed or does not go
            effective?....................................................................................9
       F.   If the Plan provides that I get a distribution, do I get it upon Confirmation
            or when the Plan goes effective, and what is meant by "Confirmation,"
            "Effective Date," and "Consummation?" ..................................................10
       G.   What will I receive from the Debtors if I hold an Allowed Administrative
            Claim, Priority Tax Claim, Professional Fee Claim, or a DIP Claim? ......10
       H.   Are any regulatory approvals required to consummate the Plan? .............13
       I.   Is there potential litigation related to Confirmation of the Plan?...............13
       J.   Will the final amount of Allowed General Unsecured Claims affect my
            recovery under the Plan?....................................................................13
       K.   Will there be releases and exculpation granted to parties in interest as part
            of the Plan? ....................................................................................14
       L.   What is the deadline to vote on the Plan?................................................15
       M.   How do I vote for or against the Plan? ...................................................15
       N.   Why is the Bankruptcy Court holding a Combined Hearing? ...................16
       O.   When is the Combined Hearing set to occur?..........................................16
       P.   What is the purpose of the Combined Hearing? ......................................16
       Q.   Who do I contact if I have additional questions with respect to this
            Disclosure Statement or the Plan? .........................................................16
       R.   Do the Debtors recommend voting in favor of the Plan? .........................17

IV.    THE DEBTORS' PLAN..............................................................................17

       A.   Liquidation Transactions ...................................................................17
       B.   Distributable Proceeds and Waterfall Recovery ......................................18
       C.   WARN Reserve and Combined Reserve ................................................19
       D.   Cancellation of Existing Securities, Notes, Instruments, Certificates, and
            Other Documents ...............................................................................20
       E.   General Settlement of Claims and Interests............................................21
       F.   Means of Implementation ...................................................................21
       G.   Treatment of Executory Contracts and Unexpired Leases .......................30

H.    Exemption from Certain Transfer Taxes and Fees ....................................33
I.    Procedures for Resolving Contingent, Unliquidated and Disputed Claims.33
J.    Settlement, Release, Injunction, and Related Provisions.........................36
K.    Conditions Precedent to the Effective Date ............................................41

V.    THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS
OVERVIEW .........................................................................................................43

A.    The Debtors' Corporate History .............................................................43
B.    The Debtors' Business Operations...........................................................43
C.    Prepetition Capital Structure...................................................................44

VI.   EVENTS LEADING TO THE CHAPTER 11 FILINGS....................................47

A.    Early Signs of Business Deterioration .....................................................47
B.    New Leadership's Transformation Plan. ..................................................48
C.    Holiday Season Default. ...........................................................................49
D.    Exhaustive Exploration of Strategic Alternatives....................................50

VII.  EVENTS OF THE CHAPTER 11 CASES.............................................................54

A.    First Day and Second Day Relief..............................................................54
B.    Retention of the Debtors' Professionals. ..................................................54
C.    Schedules and Statements ........................................................................54
D.    Appointment of Official Committee..........................................................55
E.    Sale Process and Bidding Procedures ......................................................55
F.    Store Closing Process ...............................................................................56
G.    Treatment of Unexpired Leases. ..............................................................56
H.    Establishment of Claims Bar Dates. ........................................................58
I.    Final Approval of DIP Financing .............................................................59
J.    Litigation Matters.....................................................................................59

VIII. RISK FACTORS ....................................................................................................59

A.    Bankruptcy Law Considerations...............................................................60
B.    Risks Related to the Wind-Down Debtors' Businesses.............................64

IX.   SOLICITATION AND VOTING PROCEDURES................................................65

A.    Holders of Claims Entitled to Vote on the Plan........................................66
B.    Voting Record Date ..................................................................................66
C.    Voting on the Plan ....................................................................................66
D.    Ballots Not Counted..................................................................................67

X.    CONFIRMATION OF THE PLAN ......................................................................67

A.    Requirements for Confirmation of the Plan..............................................67
B.    Best Interests of Creditors........................................................................68

C.      Feasibility...............................................................................69
D.      Acceptance by Impaired Classes .............................................69
E.      Confirmation Without Acceptance by All Impaired Classes....................70

XI.    CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES
OF THE PLAN ...............................................................................71

A.      Introduction.............................................................................71
B.      Certain U.S. Federal Income Tax Consequences to the Debtors..............72
C.      Certain U.S. Federal Income Tax Consequences to Certain U.S. Holders of
Allowed Class 3, Class 4, Class 5, and Class 6 Claims ............................73
D.      Certain U.S. Federal Income Tax Consequences to Certain Non-U.S.
Holders of Allowed Class 3, Class 4, Class 5, and Class 6 Claims ...........76
E.      Tax Matters Regarding the Liquidating Trust. .........................................78
F.      Information Reporting and Back-Up Withholding ...................................80

XII.   RECOMMENDATION ........................................................................81

Exhibit A ...............................................................................................83

Exhibit B ...............................................................................................84

## **EXHIBITS**

EXHIBIT A    Plan

EXHIBIT B    Disclosure Statement Order

## I.    INTRODUCTION

Bed Bath & Beyond Inc. ("Bed Bath & Beyond" or "BBB") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors" or the "Company"), submit this disclosure statement (this "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code to Holders of Claims against and Interests in the Debtors in connection with the solicitation of acceptances with respect to the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1429] (as amended, supplemented, or modified from time to time, the "Plan"), dated July 20, 2023.[2]    A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.    The Plan constitutes a separate chapter 11 plan for BBB and each of its affiliated Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS BELIEVE THAT THE COMPROMISES CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTORS' ESTATES, AND PROVIDE THE BEST RECOVERY TO CLAIM HOLDERS.    AT THIS TIME, THE DEBTORS BELIEVE THIS IS THE BEST AVAILABLE ALTERNATIVE FOR COMPLETING THE CHAPTER 11 CASES.    THE DEBTORS STRONGLY RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

## II.    PRELIMINARY STATEMENT

The Debtors were the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.    At their peak, the Debtors operated over 970 stores across all 50 states and had additional operations spanning Canada, Mexico, and Puerto Rico.    The past twelve months, however, have undoubtedly been the most difficult and turbulent in the Debtors' storied history.    From "meme stock" mania to credit agreement defaults and back again, the Debtors explored all potentially value-maximizing alternatives in an effort to turn around their business and stave off chapter 11.    All of this has come on the heels of the retail apocalypse and global pandemic that has permanently changed consumer behavior as the world knows it.

In response to both macroeconomic factors and more specific business challenges for Bed Bath & Beyond, leadership formulated and attempted to implement a turnaround plan that was designed to refocus the business on its founding principles and restore consumer confidence in this iconic retail giant.    Defying all expectations in the months prior to the filing, Bed Bath & Beyond secured credit agreement waivers and amendments and was able to access the equity markets in February and March in a last-ditch effort to avoid bankruptcy.    But, in store sales continued to decline—with fourth quarter sales falling by almost $1 billion dollars year over year—and strained vendor credit relationships which led to a lack of inventory.    And notwithstanding painstaking,

---

[2]    Capitalized terms used but not otherwise defined in this Disclosure Statement will have the meaning ascribed to such terms in the Plan.    The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.    In the case of any inconsistency between this Disclosure Statement and the Plan, the Plan will govern.

creative, and exhaustive efforts to right the ship along the way, Bed Bath & Beyond was simply unable to service its funded debt obligations while simultaneously supplying sufficient inventory to its store locations.  All of which necessitated the filing of these chapter 11 cases.

On April 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  As of the Petition Date, the Debtors had approximately $1.8 billion in total funded debt obligations.  These obligations consisted of approximately (a) $80.3 million in aggregate principal amount outstanding under the Debtors' prepetition ABL facility (*plus* $102.6 million of outstanding letters of credit); (b) $547.1 million in aggregate principal amount outstanding under the Debtors' prepetition FILO term loan facility; (c) $1.03 billion in outstanding senior unsecured notes across three separate issuances with varying maturity dates and interest rates; and (d) $61.5 million of aggregate capital lease obligations.

For the last decade, multiple large brand store-front retailers have experienced distress attributed to the loss of crucial in-store foot traffic, declining in-store sales, the growth of e-commerce giants, and a younger generation of customers who are more inclined to order items on the internet with expedited shipping options that allow for same-day delivery of items.  Bed Bath & Beyond was another major retailer that succumbed to these pressures by failing to expeditiously adapt to changing consumer shopping behavior.  By 2018, the stock had fallen to $14 per share, erasing $15 billion in value.

In addition, Bed Bath & Beyond's costs steadily increased, leading operating margins to decline from 16.5% in fiscal 2011 to less than 4% in fiscal 2018.  In early 2019, the Company reported its seventh consecutive quarter of declining same-store sales and reported its first annual loss and sales decline in its nearly three decades as a public company, with profit plunging 48% year-over-year.  Furthermore, its supply chain and method of product development and selection were outdated and supported by old systems.

Bed Bath & Beyond made a concerted effort to revitalize its brand and regain status as the go-to bed and home superstore by bringing in new leadership who pursued the creation of private-label brands and implemented growth strategies.  The Debtors' efforts ultimately proved unsuccessful, and their already precarious position was further compounded by the onset of, among other things, a global pandemic, changes in macroeconomic and industry trends, and rising costs.  Eventually, the Debtors were forced to file these chapter 11 cases.  Immediately prior to these cases, the Debtors closed over 430 locations across the United States and Canada, implementing full scale winddowns of their Canadian business and the Harmon branded stores.  In commencing these cases, the Debtors initiated a full chain wind-down, while continuing to market their businesses as a going-concern, including the buybuy Baby business.

To facilitate this process, the Debtors secured a $240 million in debtor-in-possession financing from the FILO Agent, Sixth Street Specialty Lending, Inc. ("Sixth Street"), consisting of $40 million in new money financing.  With access to committed DIP financing, the Debtors commenced these Chapter 11 Cases with the goal to maximize enterprise value for the benefit of *all* stakeholders and to continue the wind-down process already underway.

The Debtors filed a motion to establish procedures to govern an efficient, public, and flexible auction process to realize the full value of existing assets, which the Bankruptcy Court

approved on April 25, 2023 [Docket No. 92] (the "Bidding Procedures Order"). The process has entailed an orderly winddown of the Debtors' business operations through a liquidation of the Debtors' brick-and-mortar stores in conjunction with a court-approved procedure to sell or otherwise dispose of the Debtors' remaining assets through a going-concern transaction or otherwise. The Debtors' progress in advancing this dual-tracked process to date has been substantial and no small feat.

Following the U.S. Trustee's appointment of the official committee of unsecured creditors (the "Creditors' Committee") on May 5, 2023 [Docket No. 218], the Debtors promptly engaged in a robust diligence-sharing process with the Creditors' Committee and its advisors to educate them on the Debtors' business and bring them up to speed on the developments in these cases. Not long thereafter, the Debtors, the Creditors' Committee, and the DIP Lenders reached a comprehensive, negotiated settlement on various issues relating to, among other things, the distribution of proceeds of the Debtors' assets, which was memorialized in the Final DIP Order [Docket No. 729] (the "DIP Settlement"). The DIP Settlement critically coalesced stakeholder consensus around the Debtors' expected path to confirmation and provided an avenue for potential recovery for the Debtors' general unsecured creditors.

On top of the DIP Settlement, the Debtors' sustained efforts to monetize their assets and recover estate property has proceeded rapidly and effectively. Following a robust marketing process that began prepetition and continued postpetition, as well as an auction, the Debtors obtained approval on July 27, 2023 for a sale of certain intellectual property assets of the Bed Bath & Beyond banner to Overstock.com, Inc. for a purchase price of $21.5 million in cash consideration [Docket No. 1117]. Additionally, the Debtors obtained approval of a sale of the intellectual property assets of the buybuy BABY banner to Dream on Me Industries, Inc. ("Dream on Me") for approximately $15.5 million [Docket No. 1314]. Monetization of the valuable intellectual property assets of the Debtors' key business banners provides hope for the continued use and revitalization of the Debtors' storied brands.

On top of these substantial asset sales, the Debtors continue to monetize the value of their inventory pursuant to the relief granted in the Store Closing Order (as defined below) and their leasehold interests, including through the court-approved procedure to sell or dispose of their lease assets and designation rights related thereto. Overall, the Debtors' sustained monetization of their assets and unwavering asset recovery efforts are proceeding rapidly with the paramount goal of maximizing value for the benefit of all of the Debtors' stakeholders.

Pursuant to Article III.B of the Plan, Holders of Claims will receive, except to the extent that a Holder of such Allowed Claim has agreed to less favorable treatment, the following treatment in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holders' Claims and Interests:

- Holders of Other Priority Claims will receive payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget, or other treatment rendering such Claim Unimpaired.

- Holders of Other Secured Claims will receive, with the consent of the DIP Agent: (a) payment in full in Cash from the Combined Reserve or as otherwise provided for in the

3

DIP Budget; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired.

- Each Holder of an Allowed DIP Claim shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order).  The Liens securing the DIP Claims shall not be released and discharged until Payment in Full of the DIP Claims.

- Holders of Allowed FILO Claims shall receive, to the extent such Allowed FILO Claims are not already indefeasibly paid in full in cash or "rolled up" or converted into DIP Obligations prior to the Effective Date, Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order).  The Liens securing the FILO Claims shall not be released and discharged until Payment in Full of the FILO Claims.

- Each Holder of an Allowed Junior Secured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) and are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

- Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

- Each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated, distributed, contributed, set off, settled, canceled and released or otherwise addressed at the option of the Debtors; *provided*, that no distributions shall be made on account of any such Intercompany Claims.

- Intercompany Interests shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

- Allowed Interests in BBB shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests.

- Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim.  The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

The Plan provides the best available alternative for the Debtors' Estates and creditor recoveries.  If the Debtors' businesses were liquidated in a chapter 7 process, store closing

processes likely would halt, forcing locations to go dark and resulting in the termination of employees until a trustee could turn the lights back on. Even then, employees with critical institutional knowledge would have left, leaving behind a large and complex liquidation to be managed by new hires who are unfamiliar with the Debtors' businesses. The needless loss of value to creditors and the Debtors' Estates would be insurmountable. Creditors would receive lower recoveries in chapter 7 because the Debtors' Estates necessarily would bear additional costs associated with transitioning to chapter 7, retaining a chapter 7 trustee, counsel, and advisors, and administering a chapter 7 process.

The Debtors believe that the Plan maximizes stakeholder recoveries in these Chapter 11 Cases. The Debtors seek the Bankruptcy Court's approval of the Plan and urge all Holders of Claims entitled to vote to accept the Plan by returning their ballots so that the Notice and Claims Agent, Kroll Restructuring Administration LLC actually receives such ballots by the Voting Deadline, *i.e.*, September 1, 2023, at 4:00 p.m. (prevailing Eastern Time). Assuming the Plan receives the requisite acceptances, the Debtors will seek the Bankruptcy Court's approval of the Plan at the hearing scheduled for September 7, 2023 at 2:30 p.m. (prevailing Eastern Time) (the "Combined Hearing").

## III.    QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND PLAN

### A.    What is chapter 11?

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan of reorganization is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by a bankruptcy court confirming a plan provides for the treatment of the Debtors' liabilities in accordance with the terms of the confirmed plan.

### B.    Why are the Debtors sending me this Disclosure Statement?

The Debtors are seeking to obtain Bankruptcy Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. This Disclosure Statement is being submitted in accordance with these requirements.

### C.      Am I entitled to vote on the Plan?

Your ability to vote on, and your distribution under, the Plan, if any, depends on what type of Claim or Interest you hold.  Each category of Holders of Claims or Interests, as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code, is referred to as a "Class."  Each Class's respective voting status is set forth below.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | DIP Claims | Impaired | Entitled to Vote |
| 4 | FILO Claims | Impaired | Entitled to Vote |
| 5 | Junior Secured Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Reject / Accept) |
| 8 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Interests in BBB | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

### D.      What will I receive from the Debtors if the Plan is consummated?

The following chart provides a summary of the anticipated recovery to Holders of Claims and Interests under the Plan.  Any estimates of Claims and Interests in this Disclosure Statement may vary from the final amounts Allowed by the Bankruptcy Court.  Your ability to receive distributions under the Plan depends upon the ability of the Debtors to obtain Confirmation and meet the conditions necessary to consummate the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.**

| SUMMARY OF EXPECTED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest[3] | Projected Amount of Claims | Projected Recovery Under the Plan |
| 1 | Other Priority Claims | In full and final satisfaction of each Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, each Holder thereof will receive payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget or other treatment rendering such Claim Unimpaired. | $8 million | 100% |
| 2 | Other Secured Claims | In full and final satisfaction of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder thereof will receive, with the consent of the DIP Agent: (a) payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired. | $7 million | 100% |
| 3 | DIP Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed DIP Claim shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order). The Liens securing the DIP Claims shall not be released and discharged until Payment in Full of the DIP Claims. | $240 million[4] | 8% - 100% |

---

[3]   For the avoidance of doubt, Holders of Allowed FILO Claims or Allowed DIP Claims shall not receive any recovery from the Shared Proceeds Pool after Payment in Full (as defined in the Final DIP Order) of the DIP Claims and FILO Claims.

[4]   The projected amount of claims in Class 3 DIP Claims represents the principal amount of DIP Claims, exclusive of accrued and unpaid interest, fees, and other expenses and disbursements otherwise included in the DIP Claims, as of the date of entry of the Final DIP Order. The projected amount of DIP Claims has decreased during the chapter 11 cases as a result of payment of the DIP Claims.

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest[3] | Projected Amount of Claims | Projected Recovery Under the Plan |
| 4 | FILO Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), to the extent not already indefeasibly paid in full in cash or "rolled up" or converted into DIP Obligations prior to the Effective Date, each Holder of an Allowed FILO Claim shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order).  The Liens securing the FILO Claims shall not be released and discharged until Payment in Full of the FILO Claims. | $349.6 million[5] | 42.2% - 100% |
| 5 | Junior Secured Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed Junior Secured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) and are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims. | $100,000 | 0% - 2.5%[6] |
| 6 | General Unsecured Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims. | $1.8 billion - $2.4 billion | 0% - 2.5%[7] |

---

[5]   The projected amount of claims in Class 4 FILO Claims represents the principal amount of FILO Claims plus interest and fees following entry of the Interim DIP Order.  The projected amount of FILO Claims has decreased during the chapter 11 cases as a result of payment of FILO Claims.

[6]   The current estimated recovery for Class 5 Junior Secured Claims is an aggregate recovery for the Class based on Claims such Holders have against the Debtors, accounting for assumptions made with respect to collateral held by such Holders.  This estimate is based on information available as of the date hereof and subject to change.

[7]   The current projected recovery for Class 6 General Unsecured Claims is based on, and remains subject to, the expected proceeds generated by the Debtors' and Wind-Down Debtors', as applicable, efforts to monetize all remaining assets and property of the Debtors and Wind-Down Debtors.  Additionally, the current projected recovery for Class 6 General Unsecured Claims remains subject to the Sharing Mechanism, as that term is defined and described in the Plan.  This estimate is based on information available as of the date hereof and subject to change.

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest[3] | Projected Amount of Claims | Projected Recovery Under the Plan |
| 7 | Intercompany Claims | In full and final satisfaction of each Allowed Intercompany Claim, each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated, distributed, contributed, set off, settled, canceled and released or otherwise addressed at the option of the Debtors; *provided*, that no distributions shall be made on account of any such Intercompany Claims. | N/A | N/A |
| 8 | Intercompany Interests | Intercompany Interests shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests. | N/A | N/A |
| 9 | Interests in BBB | In full and final satisfaction of each Allowed Interest in BBB, each Allowed Interest in BBB shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests. | N/A | 0% |
| 10 | Section 510(b) Claims | Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim. The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist. | N/A | 0% |

**E.      What happens to my recovery if the Plan is not confirmed or does not go effective?**

In the event that the Plan is not confirmed or does not go effective, there is no assurance that the Debtors will be able to implement the Liquidation Transactions.  It is possible that any alternative may provide Holders of Claims or Interests with less than they would have received pursuant to the Plan.  For a more detailed description of the consequences of an extended chapter 11 case, or of a liquidation scenario, *see* Article X of this Disclosure Statement, entitled "*Confirmation of the Plan.*"

The Debtors believe that liquidation under chapter 7 of the Bankruptcy Code—a very possible event if the Plan is not confirmed—would result in significantly reduced creditor recoveries as compared to the Plan.  As set forth in Article X.B of this Disclosure Statement, smaller recoveries would result under a chapter 7 because of, among other things, significant additional administrative expenses associated with the appointment of a chapter 7 trustee and administration of a chapter 7 liquidation, including additional claims that may be entitled to administrative priority.

**F.**  **If the Plan provides that I get a distribution, do I get it upon Confirmation or when the Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consumation?"**

"Confirmation" of the Plan refers to approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution indicated under the Plan.  After Confirmation of the Plan by the Bankruptcy Court, there are conditions that must be satisfied or waived so that the Plan can "go effective."  Distributions to Holders of Allowed Claims can only be made on the date the Plan becomes effective—the "Effective Date"—or as soon as reasonably practicable thereafter, as specified in the Plan.  *See* Article IV.K of this Disclosure Statement, entitled "*Conditions Precedent to the Effective Date*," for a discussion of the conditions precedent to consummation of the Plan.

"Consummation" refers to "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, and means:  (1) the transfer of all or substantially all of the property proposed by the Plan to be transferred; (2) assumption by the Debtors or by the successors to the Debtors under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and (3) commencement of distributions under the Plan.  Note that Holders of certain types of Claims, such as General Unsecured Claims, may not receive any distributions until the Debtors or Wind-Down Debtors have reconciled all such Claims, which could take several months or longer following the Effective Date.

**G.**  **What will I receive from the Debtors if I hold an Allowed Administrative Claim, Priority Tax Claim, Professional Fee Claim, or a DIP Claim?**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

1.    Administrative Claims and Priority Tax Claims

Except as otherwise provided in Article II.A of the Plan and except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be made by the Administrative Claims Bar Date or in compliance with the Bar Date Order (as defined below).  **Holders of Administrative Claims that are required to, but do not timely request payment on account of Administrative Claims as set forth in the Bar Date Order or by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their estates, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date**.  Objections to such requests, if any, must be filed in compliance with the Bar Date Order.

Except with respect to Administrative Claims that are Professional Fee Claims or Allowed DIP Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid the unpaid portion of its Allowed Administrative Claim from the Combined Reserves on the latest

10

of: (a) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Wind-Down Debtors' businesses that are required for the Wind Down shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions (and no requests for payment of such Administrative Claims must be filed or served). Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim Allowed by Final Order. Holders of Allowed Administrative Claims shall receive payment in full from (a) *first*, the Combined Reserve; (ii) *second*, any excess amounts in the WARN Reserve after payment in full of all WARN Costs; (iii) *third*, the Shared Proceeds Pool; and (iv) *fourth*, any remaining Distributable Proceeds after payment in full of all Allowed DIP Claims and Allowed FILO Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

Objections to requests for payment of such Administrative Claims, if any, must be filed with the Bankruptcy Court and served on the Wind-Down Debtors and the requesting Holder no later than the Claims Objection Bar Date for Administrative Claims. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

## 2.   Professional Compensation

### (a)   Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be filed no later than forty-five (45) days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Administrative Fee Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. Notwithstanding anything to the contrary in the Plan, to the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the

Wind-Down Debtors and the Plan Administrator, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

(b)     Professional Fee Escrow Account

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates or the Plan Administrator.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind-Down Debtors as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors for distribution in accordance with the Waterfall Recovery without any further action or order of the Bankruptcy Court.

(c)     Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors or Wind-Down Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

(d)     Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtors or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Statutory Fees

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Wind-Down Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Wind-Down Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

12

4.      <u>Lender Professional Fees</u>

From and after the entry of the Confirmation Order, the Debtors or Wind-Down Debtors, as applicable, shall, without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the legal, professional, and other fees and expenses of the Prepetition Agents, Predecessor ABL Agent, and DIP Agent (the "<u>Lender Fees</u>") within three (3) business days of such parties' delivery of an invoice to the Debtors or Wind-Down Debtors, and such parties shall not be required to comply with the procedures set forth in paragraph 37 of the Final DIP Order.

**H.      Are any regulatory approvals required to consummate the Plan?**

There are no known regulatory approvals that are required to consummate the Plan. However, to the extent any such regulatory approvals or other authorizations, consents, rulings, or documents are necessary to implement and effectuate the Plan, it is a condition precedent to the Effective Date that they be obtained.

**I.      Is there potential litigation related to Confirmation of the Plan?**

Parties in interest may object to Confirmation of the Plan, which objections potentially could give rise to litigation.  See Article VIII.A of this Disclosure Statement, entitled "*Bankruptcy Law Considerations*."

If it becomes necessary to confirm the Plan over the rejection of certain Classes, the Debtors may seek confirmation of the Plan notwithstanding the dissent of such rejecting Classes. The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a plan that has been rejected by an impaired Class if it determines that the Plan satisfies section 1129(b) of the Bankruptcy Code. *See id.*

**J.      Will the final amount of Allowed General Unsecured Claims affect my recovery under the Plan?**

The Debtors estimate that Allowed General Unsecured Claims total approximately $1.8 billion - $2.4 billion.  Holders of General Unsecured Claims will receive their *Pro Rata* share of (i) the Shared Proceeds Pool, *only if* such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) and are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

In addition, Holders of General Unsecured Claims that vote to accept the Plan shall be deemed a Released Party for all purposes under the Plan.  Although the Debtors' estimate of General Unsecured Claims is the result of the Debtors' and their advisors' careful analysis of available information, General Unsecured Claims actually asserted against the Debtors may be higher or lower than the Debtors' estimate provided in the Plan, which difference could be material.

Moreover, the Debtors may, in the future, reject certain Executory Contracts and Unexpired Leases, which may result in additional rejection damages claims not accounted for in this estimate.

Furthermore, the Debtors may object to certain proofs of claim, and any such objections could ultimately cause the total amount of General Unsecured Claims to change.

Further, as of the Petition Date, the Debtors were parties to certain litigation matters that arose in the ordinary course of operating their businesses and could become parties to additional litigation in the future as a result of conduct that occurred prior to the Petition Date.  Although the Debtors have disputed, are disputing, or will dispute the amounts asserted by such litigation counterparties, to the extent these parties are ultimately entitled to a higher amount than is reflected in the amounts estimated by the Debtors in the Plan, the value of recoveries to Holders of Allowed General Unsecured Claims could change as well, and such changes could be material.

Finally, the Debtors, the Plan Administrator, the Creditors' Committee, or other parties in interest may object to certain proofs of claim, and any such objections ultimately could cause the total amount of Allowed General Unsecured Claims to change.  These changes could affect recoveries to Holders of Allowed General Unsecured Claims, and such changes could be material.

**K.    Will there be releases and exculpation granted to parties in interest as part of the Plan?**

Yes, Article X of the Plan proposes to release the Released Parties and to exculpate the Exculpated Parties.  The Debtors' releases, third-party releases, and exculpation provisions included in the Plan are an integral part of the Debtors' overall restructuring efforts and were an essential element of the negotiations between the Debtors, the DIP Lenders, and the Prepetition Secured Parties in obtaining their support for the Plan.

All of the Released Parties and the Exculpated Parties have made substantial and valuable contributions to the Debtors' restructuring through efforts to negotiate and implement the Plan, which will maximize value of the Debtors for the benefit of all parties in interest.  Accordingly, each of the Released Parties and the Exculpated Parties warrants the benefit of the release and exculpation provisions.

**IMPORTANTLY, THE FOLLOWING PARTIES ARE "RELEASED PARTIES": (A) THE ABL LENDERS; (B) THE PREDECESSOR ABL AGENT; (C) THE CREDITORS' COMMITTEE; (D) THE RETAINED PROFESSIONALS; AND (E) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (D), EACH SUCH ENTITY'S CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, CONTROL PERSONS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, PARTICIPANTS, MANAGED ACCOUNTS OR FUNDS, FUND ADVISORS, PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, INVESTMENT MANAGERS, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; AND (F) THE D&O PARTIES; *PROVIDED* THAT NO PARTY, INCLUDING A D&O PARTY, SHALL BE A**

**RELEASED PARTY WITH RESPECT TO ANY NON-RELEASED CLAIMS. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, (I) THE DEBTORS DO NOT RELEASE THE D&O PARTIES, AND (II) THE TERM "RELEASED PARTY" DOES NOT INCLUDE: (A) THE DEBTORS OR THE WIND-DOWN DEBTORS; (B) THE DIP AGENT; (C) THE DIP LENDERS; (D) THE ABL AGENT; (E) THE FILO LENDERS; OR (F) THE FILO AGENT.**

**BASED ON THE FOREGOING, THE DEBTORS BELIEVE THAT THE RELEASES AND EXCULPATIONS IN THE PLAN ARE NECESSARY AND APPROPRIATE AND MEET THE REQUISITE LEGAL STANDARD PROMULGATED BY THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT. MOREOVER, THE DEBTORS WILL PRESENT EVIDENCE AT THE COMBINED HEARING TO DEMONSTRATE THE BASIS FOR AND PROPRIETY OF THE RELEASE AND EXCULPATION PROVISIONS.  THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS THAT ARE CONTAINED IN THE PLAN ARE COPIED IN ARTICLE IV.J OF THIS DISCLOSURE STATEMENT, ENTITLED "SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS."**

L.    **What is the deadline to vote on the Plan?**

The Voting Deadline is September 1, 2023, at 4:00 p.m. (prevailing Eastern Time).

M.    *How do I vote for or against the Plan?*

Detailed instructions regarding how to vote on the Plan are contained on the ballots distributed to Holders of Claims who are entitled to vote on the Plan.  For your vote to be counted, your ballot containing your vote must be completed and signed so that it is **actually received** by the Debtors' Notice and Claims Agent by September 1, 2023, at 4:00 p.m. (prevailing Eastern Time).  To ensure that your electronic ballot is counted, please visit the Notice and Claims Agent's online voting portal at https://restructuring.ra.kroll.com/bbby (the "E-Ballot Portal"), click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your ballot; *provided*, *however*, that Holders of 2014 Senior Unsecured Notes Claims in Class 6 (the "Class 6 2014 Senior Unsecured Notes Claims") or their Nominee may only submit the respective ballot or master ballot via hard copy or electronic mail submission, as further described in the instructions on the applicable ballot and master ballot.

Holders of all other Claims will need to enter their unique ballot identification number, as indicated on each ballot.  The E-Ballot Portal is the sole manner in which ballots, other than the ballots or master ballots for Holders of Class 6 2014 Senior Unsecured Notes Claims, will be accepted.  **For the avoidance of doubt, hard copy ballots and electronic ballots will not be accepted by facsimile or electronic means (other than the online portal) for all Claims other than the Class 6 2014 Senior Unsecured Notes Claims.**  *See* Article IX of this Disclosure Statement entitled "*Solicitation and Voting Procedures*" and the Disclosure Statement Order attached hereto as **Exhibit B**.

If a Class of Claims is eligible to vote, and no Holder of Claims in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

**N.     Why is the Bankruptcy Court holding a Combined Hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Plan.

**O.     When is the Combined Hearing set to occur?**

The Bankruptcy Court has scheduled the Combined Hearing for September 7, 2023 at 2:30 p.m. (prevailing Eastern Time).  The Combined Hearing may be adjourned from time to time without further notice.

Objections to Confirmation of the Plan or final approval of the adequacy of the Disclosure Statement must be filed and served on the Debtors, and certain other parties, by no later than September 1, 2023, at 4:00 p.m. (prevailing Eastern Time) in accordance with the notice of the Combined Hearing that accompanies this Disclosure Statement and the Disclosure Statement Order attached hereto as **Exhibit B** and incorporated herein by reference.

The Debtors will publish the notice of the Combined Hearing, which will contain the deadline for objections to the Plan and the date and time of the Combined Hearing, in the national editions of the *New York Times* (National Edition) to provide notification to those persons who may not receive notice by mail.  The Debtors may also publish the notice of the Combined Hearing in such trade or other publications as the Debtors may choose.

**P.     What is the purpose of the Combined Hearing?**

The confirmation of a plan of reorganization by a bankruptcy court binds the Debtors, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest holder of a Debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code.  Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan of reorganization discharges the Debtors from any debt that arose before the confirmation of such plan of reorganization and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

**Q.     Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?**

If you have any questions regarding this Disclosure Statement or the Plan, please contact the Notice and Claims Agent:

> ***By regular mail, hand delivery, or overnight mail at:***
> Bed Bath & Beyond, Inc. Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, New York 11232

*By electronic mail at:*
BBBYInfo@ra.kroll.com
(please reference "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line)

*By telephone at:*
**(833) 570-5355 (Toll Free)**
**(646) 440-4806 (International)**

Copies of the Plan, this Disclosure Statement, and any other publicly filed documents in the Chapter 11 Cases are available upon written request to the Debtors' Notice and Claims Agent at the address above or by downloading the exhibits and documents from the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/bbby (free of charge) or the Bankruptcy Court's website at www.njb.uscourts.gov (for a fee).

**R.      Do the Debtors recommend voting in favor of the Plan?**

Yes.  The Debtors believe that the Plan provides for a larger distribution to the Debtors' creditors than would otherwise result from any other available alternative.  The Debtors believe that the Plan is in the best interest of all Holders of Claims or Interests, and that any other alternatives (to the extent they exist) fail to realize or recognize the value inherent under the Plan.

## IV.    THE DEBTORS' PLAN

As discussed in Article II of this Disclosure Statement, the Plan contemplates a wind down of the Debtors' operations.  The Debtors, the DIP Lenders, and the Creditors' Committee negotiated a value-maximizing transaction to effectuate an orderly Wind Down as set forth in the Plan.  As discussed in Article IV of the Plan, the Plan contemplates, among other things, distributions to Holders of Allowed Claims in accordance with its terms, followed by the Wind Down of the Wind-Down Debtors.

**A.      Liquidation Transactions**

On the Effective Date, or as soon as reasonably practicable thereafter, the Wind-Down Debtors shall take all actions as may be necessary or appropriate to effectuate the Liquidation Transactions, each of which shall be subject to the consent of the DIP Agent, FILO Agent, and Creditors' Committee, including, without limitation:  (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Liquidation Transactions; (e) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income

tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### B.    Distributable Proceeds and Waterfall Recovery

On or after the Effective Date, the Debtors shall make distributions on account of Allowed Claims in accordance with Article III.B of the Plan using the Distributable Proceeds.   In accordance with the Final DIP Order, (a) Distributable Proceeds of Prepetition Collateral shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority: (i) *first*, on account of Allowed FILO Claims; (ii) *second*, on account of DIP Claims; (iii) *third*, on account of Allowed Administrative Claims (other than DIP Claims) and Priority Tax Claims; (iv) *fourth*, on account of Allowed Other Secured Claims; (v) *fifth*, on account of Allowed Other Priority Claims; (vi) *sixth*, on account of any Allowed Junior Secured Claims; and (vii) *seventh*, on account of any Allowed General Unsecured Claims; and (b) Distributable Proceeds of DIP Collateral that does not constitute Prepetition Collateral shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority: (i) *first*, on account of Allowed DIP Claims; (ii) *second*, on account of Allowed FILO Claims; (iii) *third*, on account of Allowed Administrative Claims (other than DIP Claims) and Priority Tax Claims; (iv) *fourth*, on account of Allowed Other Secured Claims; (v) *fifth*, on account of Allowed Other Priority Claims; (vi) *sixth*, on account of any Allowed Junior Secured Claims; and (vii) *seventh*, on account of any Allowed General Unsecured Claims (collectively, the "Waterfall Recovery"); *provided* that the foregoing shall be subject to paragraph 60 of the Final DIP Order, which provides that: (x) prior to the Initial Sharing Threshold, 100% of the proceeds of DIP Collateral and Prepetition Collateral shall be distributed to holders of Allowed DIP Claims or Allowed FILO Claims, as applicable; (y); whereupon the Initial Sharing Threshold is reached and until the Secondary Sharing Threshold is reached, (i) 80% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 20% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (ii) 60% of the proceeds of the D&O Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 40% of the proceeds of the D&O Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable, (iii) 50% of the proceeds of the Other Liability Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Other Liability Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (iv) 50% of the proceeds of the Interchange Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Interchange Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (v) 100% of the proceeds of the Preference Actions shall be distributed to the Debtors or the applicable Successor Entity, as applicable; and (vi) 100% of the proceeds of Prepetition Collateral and DIP Collateral not enumerated in clauses (i)-(vi) of the foregoing shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable; and (z) whereupon the Secondary Sharing Threshold is reached, (i) 65% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 35% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (ii) 50% of the proceeds of the D&O Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the D&O Claims shall be distributed to the

Debtors or the applicable Successor Entity, as applicable, (iii) 50% of the proceeds of the Other Liability Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Other Liability Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (iv) 50% of the proceeds of the Interchange Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Interchange Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (v) 100% of the proceeds of the Preference Actions shall be distributed to the Debtors or the applicable Successor Entity, as applicable; and (vi) 80% of the proceeds of Prepetition Collateral and DIP Collateral not enumerated in clauses (i)-(vi) of the foregoing shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 20% of the proceeds of such claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable (the foregoing clauses (x) and (y), the "Sharing Mechanism"); *provided*, *further*, that pursuant to this Plan, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (a) the Combined Reserve or WARN Reserve as applicable, and (b) Distributable Proceeds to the extent available from the Waterfall Recovery.  For the avoidance of doubt, Holders of Allowed FILO Claims or Allowed DIP Claims shall not receive any recovery from the Shared Proceeds Pool after Payment in Full (as defined in the Final DIP Order) of the DIP Claims and FILO Claims.

## C.    WARN Reserve and Combined Reserve

On and after the Effective Date, the Plan Administrator shall administer the Combined Reserve and the WARN Reserve.

In accordance with the Final DIP Order, all funds in the Combined Reserve constitute property of the Estate, and are free and clear of all liens, claims, or encumbrances.  The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date.  If all or any portion of an Other Priority Claim, Priority Tax Claim, Administrative Claim (other than Professional Fee Claims or Allowed DIP Claims), or Allowed Other Secured Claim shall become a Disallowed Claim, then the amounts on deposit in the Combined Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Combined Reserve, shall remain in the Combined Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Combined Reserve is sufficient to ensure that all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Bankruptcy Court.

The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors, and the Plan Administrator as set forth in the Plan and Wind-Down

Budget; *provided* that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes. Any amounts remaining in the Combined Reserve after payment of all expenses of the Wind-Down Debtors and the Plan Administrator, and all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery without any further action or order of the Bankruptcy Court.

The WARN Reserve shall be used to pay WARN Costs, and, to the extent such Claims are not paid in full from the Combined Reserve, Allowed Priority Tax Claims. After payment in full of all WARN Costs and Allowed Priority Tax Claims, any amounts remaining in the WARN Reserve shall be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery, subject to the Sharing Mechanism, without any further action or order of the Bankruptcy Court.

Any contrary provision hereof notwithstanding, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (i) the Combined Reserve or WARN Reserve as applicable, and (ii) Distributable Proceeds to the extent available from the Waterfall Recovery.

D.    **Cancellation of Existing Securities, Notes, Instruments, Certificates, and Other Documents**

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Liquidation Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed canceled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the Wind-Down Debtors, as applicable, any non-Debtor affiliates shall be deemed satisfied in full, canceled, released, discharged, and of no force or effect; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order.

E.      **General Settlement of Claims and Interests**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their respective Estates, and holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down Debtors may compromise and settle Claims against the Debtors and their respective Estates and Causes of Action against other Entities.

F.      **Means of Implementation**

Any Asset Sale Transaction will be either (a) conducted pursuant to the Bidding Procedures or Lease Sale Procedures, (b) approved by the Bankruptcy Court prior to the Effective Date, or (c) otherwise authorized by the Plan.

1.      Sources of Consideration for Plan Distributions

The Plan Administrator, subject to the Sharing Mechanism, will fund distributions under the Plan from (a) the Combined Reserve; (b) the WARN Reserve; and (c) Distributable Proceeds in accordance with the Waterfall Recovery, unless, as it relates to each of the foregoing, such distributions are provided for in the DIP Budget. Distributable Proceeds will be created by, among other things, the prosecution and monetization of Non-Released Claims.

2.      Vesting of Assets

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, all property of the Estates shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released, and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable. On and after the Effective Date, the Debtors and the Wind-Down Debtors may (at the direction of the Plan Administrator) use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

3.      Wind-Down Debtors

On and after the Effective Date, if applicable, the Wind-Down Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as

reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided in the Plan, (d) establishing and, to the extent not already funded, funding the Distribution Reserve Accounts, (e) enforcing and prosecuting claims, interests, rights, and privileges under all Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreements, if any, (h) liquidating all assets of the Wind-Down Debtors, and (i) otherwise administering the Plan in an efficacious manner consistent with the Plan. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

4.    <u>Plan Administrator</u>

The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a president and chief executive officer (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order. On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole officer of the Wind-Down Debtors, and shall succeed to the rights, powers, duties, and privileges of the Wind-Down Debtors' officers. Subject only to the authority delegated to the Oversight Committee (as defined below), the Plan Administrator will replace all officers of each Debtor and will report to the Oversight Committee. Subject to the terms of the Plan, among other duties normal and customary of a director and officer responsible for winding down the affairs of a business, the Plan Administrator shall have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and Wind Down Debtors' Claims and Causes of Action.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors as further described in Article VII of the Plan. The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors and Wind-Down Debtors, including (all without further order of the Bankruptcy Court): (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Wind-Down Debtors; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (3) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (5) subject to the terms set forth in the Plan, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (7) administering and paying taxes of

the Wind-Down Debtors, including filing tax returns; (8) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (9) investigating, commencing, prosecuting, or settling the Non-Released Claims; and (10) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Wind-Down Debtors and the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be mutually agreed by the DIP Agent and the Oversight Committee. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

(a)      Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties of a trustee in bankruptcy including without limitation the powers necessary to carry out his or her responsibilities under the Plan in accordance with the Combined Reserve, and as otherwise provided in the Confirmation Order. The Plan Administrator shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(b)      Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors from the Combined Reserve upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Combined Reserve. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Combined Reserve and shall not be subject to the approval of the Bankruptcy Court.

(c)      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Combined Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Combined Reserve if such amounts relate to any actions taken under the Plan. Notwithstanding anything to the contrary in the Plan, all fees, expenses, and disbursements of the Plan Administrator, including the

23

compensation of the Plan Administrator and the payment of fees and expenses of any professionals engaged by the Plan Administrator, shall be subject to the Wind-Down Budget.

(d)     Plan Administrator Expenses

All costs, expenses and obligations incurred by the Plan Administrator in administering the Plan, the Wind-Down Debtors, or in any manner connected, incidental or related thereto, in effecting distributions from the Wind-Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid from the Combined Reserve as set forth in the Plan Supplement.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Combined Reserve.

5.     Wind-Down

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (1) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Purchase Agreements and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to Wind-Down Debtors as set forth in the Plan, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to the Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

6.     Liquidating Trust

24

Notwithstanding anything to the contrary in the Plan, the Plan Administrator may, with the consent of the DIP Agent, the FILO Agent, and the Creditors' Committee, or (following the Effective Date) with the consent of the DIP Agent, FILO Agent and Oversight Committee transfer all or any portion of the assets of the Wind-Down Debtors to a trust (the "Liquidating Trust"), which shall be a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations.  For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in Article IV.F.7 of the Plan shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Non-Released Claims transferred to the Liquidating Trust.  The Liquidating Trust shall be established for the primary purpose of liquidating the Liquidating Trust's assets, reconciling claims asserted against the Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust.  Upon the transfer of the Wind-Down Debtors' assets to the Liquidating Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust.  To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests.  Prior to any Permitted Transfer, the Plan Administrator may designate trustee(s) for the Liquidating Trust, with the consent of the DIP Agent, the FILO Agent, and the Creditors' Committee, for the purposes of administering the Liquidating Trust.  The reasonable costs and expenses of the trustee(s) shall be paid from the Liquidating Trust.  For a more detailed description of the treatment of the Liquidating Trust, *see* Article XI.E of this Disclosure Statement, entitled "*Tax Matters Regarding the Liquidating Trust.*"

### 7.    Exculpation, Indemnification, Insurance & Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Combined Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained in the Plan, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

### 8.    Tax Returns

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax

liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

### 9. Dissolution of the Wind-Down Debtors

Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

### 10. Budget and Reporting

Unless otherwise agreed to in writing by the DIP Agent, the FILO Agent, and the Debtors or Wind-Down Debtors, as applicable, commencing the second Thursday following the Effective Date and every two weeks thereafter (each such two-week period, a "Reporting Period"), until Payment in Full (as defined in the Final DIP Order) of the DIP Claims and FILO Claims, the Plan Administrator shall deliver to the DIP Agent and FILO Agent (i) an updated Wind-Down Budget; (ii) a variance report comparing actual receipts and disbursements against those forecast in the applicable Wind-Down Budget; (iii) a report on amounts distributed from the Combined Reserve and WARN Reserve during such Reporting Period; (iv) a report on the status of all claims and causes of action that the Plan Administrator, and/or Wind-Down Debtors have commenced or are authorized to commence pursuant to the Plan; and (v) a report on the claims reconciliation and objection process. At the conclusion of each Reporting Period, or more frequently if requested, the Plan Administrator shall meet with the DIP Agent, FILO Agent, and counsel thereto to discuss the reporting set forth in Article VII.G of the Plan. Any Reporting Period may be adjusted with the consent of the DIP Agent and FILO Agent.

### 11. Distribution Reserve Accounts

(a)    Combined Reserve and WARN Reserve

On and after the Effective Date, the Plan Administrator shall administer the Combined Reserve and the WARN Reserve.

In accordance with the Final DIP Order, all funds in the Combined Reserve constitute property of the Estate, and are free and clear of all liens, claims, or encumbrances. The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date. If all or any portion of an Other Priority Claim, Priority Tax Claim, Administrative Claim (other than Professional Fee Claims or Allowed DIP Claims), or Allowed Other Secured Claim shall become a Disallowed Claim, then the amounts

on deposit in the Combined Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Combined Reserve, shall remain in the Combined Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Combined Reserve is sufficient to ensure that all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Bankruptcy Court.

The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors and the Plan Administrator as set forth in the Plan and Wind-Down Budget; *provided* that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget.  In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.  Any amounts remaining in the Combined Reserve after payment of all expenses of the Wind-Down Debtors and the Plan Administrator, and all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery without any further action or order of the Bankruptcy Court.

The WARN Reserve shall be used to pay WARN Costs, and, to the extent such Claims are not paid in full from the Combined Reserve, Administrative Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, and Allowed Priority Tax Claims.  After payment in full of all Administrative Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, and Allowed Priority Tax Claims, any amounts remaining in the WARN Reserve shall be used to pay Allowed General Unsecured Claims.

(b)     The General Account and Distribution Reserve Account Adjustments

Beginning on the two-month anniversary of the Effective Date or at such other times as the Plan Administrator shall determine as appropriate, and thereafter, on each two-month interval thereafter, the Plan Administrator shall determine the amount of Cash required to adequately maintain each of the Distribution Reserve Accounts.  If after making and giving effect to any determination referred to in the immediately preceding sentence, the Plan Administrator determines that any Distribution Reserve Account contains Cash in an amount in excess of the amount then required to adequately maintain such Distribution Reserve Account, then at any such time the Plan Administrator shall transfer such surplus Cash to the General Account to be used or

distributed according to the priority set forth in Article IV.B of the Plan.  Neither the Plan Administrator nor any other party shall transfer Cash to any Distribution Reserve Account.

### 12.     Board of the Debtors

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be deemed to have resigned without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.  Subject in all respects to the terms of the Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, subject to the authority of the Oversight Committee, the Plan Administrator shall act as the sole officer of the Debtors with respect to its affairs.  Subject in all respects to the terms of the Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of any of the Debtors under the applicable laws of each applicable Debtor's state of formation; (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Debtors or the Estates before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of BBB or any of its affiliates.

### 13.     Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released, and such Liens

shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable.

14.    Preservation of Causes of Action

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, in accordance with section 1123(b) of the Bankruptcy Code, on the Effective Date, all Causes of Action shall automatically vest in the Wind-Down Debtors, and the Plan Administrator shall have the right and authority to investigate, commence, prosecute, or settle, as appropriate, any and all the Non-Released Claims, whether arising before or after the Petition Date.

The Plan Administrator shall report to and be overseen by a four-member oversight committee (the "Oversight Committee"). Each member of the Oversight Committee shall have a fiduciary obligation to the Wind Down Debtors and Holders of Allowed Claims. The Oversight Committee shall initially consist of four members to be appointed: (a) two by the Creditors' Committee; (b) one by the FILO Agent (the "FILO Appointee"); and (c) one by the FILO Agent and Creditors' Committee, which appointee shall be acceptable to the Debtors in their sole discretion (the "Fourth Member"); *provided* that, upon Payment in Full (as defined in the Final DIP Order) including payment of all accrued and unpaid Lender Fees, the FILO Appointee shall be replaced by a new member selected by the Creditors' Committee. For the avoidance of doubt, the Fourth Member shall not be replaced.

The Plan Administrator shall have the authority to release or settle any Claim or Cause of Action without the approval of the Oversight Committee where (i) the amount in controversy is equal to or less than $10 million without approval of the Oversight Committee; or (ii) the amount in controversy is more than $10 million and the settlement amount is at least 70% of the amount in controversy. For any Claim or Cause of Action where the amount in controversy is greater than $10 million and the settlement amount is less than 70%, the Plan Administrator shall have the authority to release or settle such Claims or Causes of Action upon an affirmative vote of two members of the Oversight Committee; *provided* that decisions of the Plan Administrator related to the release or settlement of, or judgment in any D&O Claim, including decisions related to any appeal thereof, shall be made by a unanimous vote of the Oversight Committee.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors preserve the Causes of Action (including all Non-Released Claims) notwithstanding the assumption or rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, on the Effective Date, any Causes of Action that a Debtor (or its Estate) may hold against any Entity shall automatically vest in and become property of the Wind Down Debtors. The Wind Down Debtors and the Plan Administrator, as applicable, through their

authorized agents or representatives, shall retain and may exclusively enforce any and all Causes of Action vested, transferred, or assigned to such entity.  The Debtors or the Plan Administrator as applicable shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

In the event that the Initial Sharing Threshold has not been achieved within 12 months after the Petition Date (and before the expiration of any applicable statute of limitations), the Plan Administrator shall investigate, analyze, and to the extent appropriate in the business judgment of the Plan Administrator, pursue all Preference Actions.

## G.    Treatment of Executory Contracts and Unexpired Leases

### 1.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, assumed and assigned, or included in a Rejection Notice shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Confirmation Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction that is the subject of a pending motion as of the Confirmation Date; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Liability Insurance Policy; or (6) is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date for rejection effective on a date that occurs after the Effective Date.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 2.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases or otherwise Rejected pursuant to the Plan shall be served with a notice of rejection of Executory Contracts and Unexpired Leases substantially in the form approved by the Bankruptcy Court pursuant to the Bankruptcy Court order approving the Disclosure Statement as soon as reasonably practicable following the filing of the Plan Supplement.  The notice of the Plan Supplement shall also be deemed appropriate notice of rejection when served on applicable parties.  Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Notice and Claims Agent by the later of the date that is thirty (30) days after (1) the entry of an

order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the Effective Date; and (3) the effective date of any rejection that occurs after the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not filed within such time shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases.  The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely filed;** *provided* **that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.**  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

> 3.    Cure of Default for Assumed Executory Contracts and Unexpired Leases

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by performance or payment of the Cure Obligation in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the Cure Obligation, (2) the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least eight (8) days before the Voting Deadline, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties and their counsel (if known).  **<u>Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure amount must be filed by the Cure/Assumption Objection Deadline.</u>**  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure amount.  To the extent that the Debtors seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned, which adequate assurance information will be provided with the Cure Notice.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the satisfaction of the Cure Obligations, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition

or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register. For the avoidance of doubt, with respect to any asserted non-monetary Cure Obligations, such Cure obligations may be cured (or resolved) by the assignee and the applicable counterparty in the ordinary course of business following the assumption and all parties reserve all rights with respect to any such asserted Cure obligations.

4.    <u>Insurance Policies</u>

All of the Debtors' insurance policies (including, for the avoidance of doubt, the D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto. After the Effective Date, the Plan Administrator shall not terminate or otherwise reduce the coverage under the D&O Liability Insurance Policies in effect on the Effective Date, with respect to conduct occurring prior thereto, and all officers, directors, trustee, managers, and members of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, (i) nothing in this paragraph shall in any way affect the Plan Administrator's ability to assert the Non-Released Claims or any other applicable claims that are not otherwise released pursuant to the Plan and are properly asserted against the D&O Liability Insurance Policies or (ii) access the proceeds of the D&O Liability Insurance Policies for any losses on account of such Non-Released Claims or such other claims.

5.    <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed (or assumed and assigned) shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

32

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

6.     Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

7.     Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Executory Contract or Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code.

8.     Contracts and Leases Entered into after the Petition Date

Contracts and leases entered into in the ordinary course of business after the Petition Date by any Debtor, including any Executory Contracts and/or Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Wind-Down Debtor in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that have not been rejected under the Plan will survive and remain unaffected by entry of the Confirmation Order, except as provided therein.

## H.     Exemption from Certain Transfer Taxes and Fees

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the Asset Sale Transaction, or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## I.     Procedures for Resolving Contingent, Unliquidated and Disputed Claims

1.     Allowance of Claims

After the Effective Date, the Plan Administrator or each of the Wind-Down Debtors, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the

33

Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

2.      Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

3.      Estimation of Claims

Before, on, or after the Effective Date, the Debtors, Plan Administrator or the Wind-Down Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors, Plan Administrator, or Wind-Down Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.      Adjustment to Claims Without Objection

The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to adjust or remove any Claim that has been paid in full or satisfied, or any Claim that has been amended or superseded; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be adjusted or removed from the Claims Register.

5.      Time to File Objections to Claims

Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

6.      Disallowance of Claims

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Plan Administrator or the Wind-Down Debtors, as applicable.  All Proofs of Claim filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Pursuant to the terms of the Bar Date Order, if Proofs of Claim are not received by the Notice and Claims Agent on or before the Prepetition Claims Bar Date, the Administrative Claims Bar Date (as required), or the Governmental Bar Date, as applicable, and except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases.  The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims not received by the Notice and Claims Agent before the Prepetition Claims Bar Date, Administrative Claims Bar Date or the Governmental Bar Date, as applicable, and not subject to an exception as set forth above; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.

7.      Amendments to Claims

On or after the Effective Date, a Claim (other than a Claim arising from the rejection of an Executory Contract or Unexpired Lease or a Claim filed by the Administrative Claims Bar Date)

35

may not be filed or amended without the prior authorization of the Bankruptcy Court, the Plan Administrator, or the Wind-Down Debtors, as applicable, and the Plan Administrator and the Wind-Down Debtors shall be authorized to update the Claims Register to remove any such new or amended Claim filed; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be adjusted or removed from the Claims Register.

<div align="center">

8.     No Distributions Pending Allowance

</div>

If an objection to a Claim or portion thereof is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Plan Administrator or Wind-Down Debtors, as applicable.

<div align="center">

9.     Distributions After Allowance

</div>

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Wind-Down Debtors shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided in the Plan.

<div align="center">

**J.     Settlement, Release, Injunction, and Related Provisions**

1.     Discharge of Claims and Termination of Interests

</div>

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the

<div align="center">

36

</div>

Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the Effective Date occurring. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator, or Wind-Down Debtors, as applicable, may compromise and settle any Claims and Causes of Action against other Entities.

### 2.  Release of Liens

**Except as otherwise specifically provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or Wind-Down Debtors; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order. The Prepetition Agents shall execute and deliver all documents reasonably requested by the Wind-Down Debtors or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Wind-Down Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.**

### 3.  Releases by the Debtors

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party other than the D&O Parties is deemed released and discharged by and on behalf of the Debtors and their respective Estates, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities, from any and all claims and Causes of Action, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors or their respective Estates, that the Debtors or their respective Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in the Debtors based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the**

37

**Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the ABL Claims, the ABL Obligations, the DIP Facility, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents, and other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, Wind-Down Debtors, or the Debtors' respective Estates asserting any claim or Cause of Action released pursuant to the Debtor release**

**Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing Debtor release will release, compromise, impair, or in any way affect any Non-Released Claims, including the D&O Claims.**

4.        Release by Holders of Claims or Interests

**As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part,**

the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations,  the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations,  the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision in the Plan notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

5.    <u>Exculpation</u>

No Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any Cause of Action or any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the DIP Facility, the Disclosure Statement, the Plan, the Plan Supplement and the Asset Sale Transactions, the pursuit of Confirmation, the pursuit of Consummation, the administration and

implementation of the Plan, including the issuance or distribution of debt, and/or securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Claims related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release or exculpate any Claim relating to any post-Effective Date obligations of any party or Entity under the Plan, the Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents, and other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing exculpation shall release, compromise, impair, exculpate or in any way affect any Non-Released Claims, including the D&O Claims.

6.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan; (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a

**Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.**

**For the avoidance of doubt, and notwithstanding the foregoing, nothing in this section shall release, compromise, impair, exculpate, or in any way affect any Non-Released Claims, including the D&O Claims.**

7.      Protection Against Discriminatory Treatment

**Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.**

8.      Recoupment

In no event shall any Holder of a Claim be entitled to recoup against any claim, right, or Cause of Action of the Debtors or the Wind-Down Debtors, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

9.      Subordination Rights

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

**K.      Conditions Precedent to the Effective Date**

1.      Conditions Precedent to the Effective Date of the Plan

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.B of the Plan):

(a)     The Confirmation Order shall have been duly entered and in full force and effect;

(b)     The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Liquidation;

(c)     The final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements, and exhibits to the Plan, shall have been executed or filed, as applicable, in form and substance consistent in all respects with the Plan, shall be acceptable to the DIP Agent, FILO Agent, and Creditors' Committee, and shall not have been modified in a manner inconsistent therewith;

(d)     The Professional Fee Escrow Account shall have been established and funded with Cash in accordance with Article II.B.2 of the Plan;

(e)     All accrued and unpaid Lender Fees shall have been paid; and

(f)     The Debtors shall have implemented the Liquidation Transactions in a manner consistent in all material respects with the Plan.

2.      Waiver of Conditions

The Debtors, with the consent of the DIP Agent, FILO Agent, and Creditors' Committee, may waive any of the conditions to the Effective Date set forth in Article XI.A of the Plan at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

3.      Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

4.      Effect of Nonoccurrence of Conditions to the Effective Date

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## V.      THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS OVERVIEW

### A.      The Debtors' Corporate History

The Bed Bath & Beyond story originates with Leonard Feinstein and Warren Eisenberg and a small chain of specialty linen and bath shops known as Bed 'n Bath.  Lenny and Warren's philosophy was simple:  offer name brands at a discount.  With one store in Springfield, New Jersey and another store in Cedarhurst, New York, the two friends embarked on a more than 50-year-long journey to develop the ultimate American titan in specialty retail.

Beginning in the 1970s and continuing through the 1980s, Warren and Lenny rode the wave of American consumerism and new retail economics.  In 1985, Bed 'n Bath opened its first superstore, paving the road for other American big-box retailers to follow suit.  The new superstore, a 20,000-square-foot outlet, offered wide-ranging inventory options and low prices across a litany of product lines, standing in stark contrast with the select offerings of department store chains.  Lenny and Warren recognized that consumers preferred a wider range of merchandise at comparably low prices.

Lenny and Warren took the Company public in June 1992, which began trading on the NASDAQ exchange under the ticker BBBY.  Bed Bath & Beyond quickly became a Wall Street sweetheart.  Bed Bath & Beyond's affordable prices, warehouse merchandising style, and conservative advertising budgets helped to secure record earnings and profits for the Company.

Bed Bath & Beyond became well known for its then-unique store philosophy of "pile it high, let it fly," with product stocked floor to ceiling throughout its stores; consumers flocked to its stores, never knowing what they may come across during their expedition through the store's aisles, ever-searching for that perfect "treasure."  Bed Bath & Beyond's philosophy focused on getting customers into their stores to drive in-person sales and revenue, even creating what has been heralded as one of the greatest retail coupons of all time.  This strategy led to financial success and propelled Bed Bath & Beyond to become one of the first superstores in the United States.

As of the Petition Date, Bed Bath & Beyond was a leading specialty home retailer in North America with 360 stores in the United States, offering customers a wide assortment of domestic merchandise and home furnishings.  Bed Bath & Beyond has been the preferred destination in the home space, particularly in key product categories, including bedding, bath, kitchen food prep, home organization, and indoor décor, and offers high quality and differentiated products, services, and solutions for the home and heart-felt life events.  These included certain life events that evoke strong emotional connections such as getting married, moving to a new home, having a baby, going to college, and decorating a room—which Bed Bath & Beyond supported through its wedding registries and mover and student life programs.

### B.      The Debtors' Business Operations

Headquartered in Union, New Jersey, the Debtors were the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more.  As of the Petition Date, the Debtors employed approximately 14,000 non-seasonal employees and operated 360 stores.

43

The Debtors offer merchandise through their Bed Bath & Beyond stores and their buy buy BABY stores across North America. In addition to its flagship in-store presence, Bed Bath & Beyond sells products through its website, BedBathandBeyond.com. A portion of any items exclusively sold online includes products that Bed Bath & Beyond does not keep in stock and has "drop-shipped" from vendors directly to customers when ordered. Aside from drop-shipped merchandise, Bed Bath & Beyond fulfills approximately 70% of online orders from the Company's fulfillment centers and fulfills approximately 30% from its stores.

### C.    Prepetition Capital Structure

The below chart depicts the Debtors' current corporate structure. Bed Bath & Beyond has 78 wholly-owned subsidiary entities, 73 of which are Debtors in these Chapter 11 Cases, including 60 real estate special purpose subsidiaries, and four joint-venture entities that are non-Debtors.



As of the Petition Date, the Debtors had approximately $1.8 billion in total funded debt obligations consisting of approximately (a) $80.3 million in aggregate principal amount outstanding under the ABL Facility (*plus* $102.6 million of outstanding letters of credit), (b) $547.1 million in aggregate principal amount outstanding under the FILO Facility, (c) $1.03 billion in outstanding Senior Unsecured Notes spread across three separate issuances with varying maturity dates and interest rates, and (d) $61.5 million of aggregate capital lease obligations:

| ($ in millions) | Maturity | Principal |
|---|:---:|---:|
| **Secured Debt Facilities** | | |
| ABL Facility | August 9, 2026 | $80.3 |
| FILO Facility | August 31, 2027 | $547.1 |
| Letters of Credit | — | $102.6 |
| Finance Leases | — | $61.5 |
| **Total Secured Debt** | | **$791.5** |
| **Unsecured Notes** | | |
| 3.749% Senior Notes due 2024 | August 1, 2024 | $215.4 |
| 4.915% Senior Notes due 2034 | August 1, 2034 | $209.7 |
| 5.165% Senior Notes due 2044 | August 1, 2044 | $604.8 |
| **Total Unsecured Debt** | | **$1,029.9** |
| **Total Funded Debt** | | **$1,821.4** |

1.      ABL and FILO Facilities

Bed Bath & Beyond Inc., as parent borrower, certain of its United States and Canadian subsidiaries, JPMorgan Chase Bank, N.A., as the prepetition ABL agent, Sixth Street, as the FILO Agent, and certain lenders, are parties to that certain Amended and Restated Credit Agreement, dated as of August 9, 2021.[8]  Over the course of the several amendments, the Prepetition Credit Agreement and the aggregate revolving commitments are permanently reduced from $1.13 billion to $300 million.  The Prepetition Credit Agreement also provides for a "first-in, last-out" term loan facility of $475 million.  The ABL Facility matures on August 9, 2026 (or on May 1, 2024 if the 2024 Notes (as defined below) are outstanding on such date).  The FILO Facility matures on August 31, 2027 (or May 1, 2024 if the 2024 Notes (as defined below) are outstanding on such date).

The Prepetition Credit Facilities are secured on a first priority basis (subject to customary exceptions) on substantially all assets (other than certain real property or equipment located in the United States that is owned by, or leased to, the Company or any of its subsidiaries exceeding a certain threshold) of Bed Bath & Beyond and its subsidiaries that are borrowers or guarantors under the Prepetition Credit Facilities.  Amounts available to be drawn from under the ABL Facility (including, in part, in the form of the issuance of letters of credit) are equal to the lesser of (i) outstanding revolving commitments under the Prepetition Credit Agreement and (ii) a borrowing base.  The term loans under the FILO Facility are also subject to a borrowing base.

---

[8]      As amended by the First Amendment to the Amended and Restated Credit Agreement, dated as of August 31, 2022, as further amended by the Second Amendment to the Amended and Restated Credit Agreement, dated as of February 7, 2023, as further amended by the Third Amendment to the Amended and Restated Credit Agreement and Waiver, dated as of March 6, 2023, as further amended by the Fourth Amendment to the Amended and Restated Credit Agreement and Waiver, dated as of March 30, 2023, as further amended by the Fifth Amendment to the Amended and Restated Credit Agreement, dated as of April 6, 2023, as further amended by the Sixth Amendment to the Amended and Restated Credit Agreement, dated as of April 20, 2023 and as may otherwise be amended, restated, supplemented, or otherwise modified from time to time (the "Prepetition Credit Agreement").

As of the Petition Date, $547.1 million in borrowings remain outstanding under the FILO Facility.

2.      Unsecured Bonds

Bed Bath & Beyond, Inc. is also obligated under the following three tranches of unsecured debt securities:

- **3.479% senior notes due 2024 (the "2024 Notes")**.   On July 17, 2014, Bed Bath & Beyond issued $300 million of 3.478% senior unsecured notes due August 1, 2024 (approximately $215.4 million of which remains outstanding as of the Petition Date).  No other Debtor guarantees or is otherwise obligated under the notes.

- **4.915% senior notes due 2034 (the "2034 Notes")**.   On July 17, 2014, Bed Bath & Beyond issued $300 million of 4.915% senior unsecured notes due August 1, 2034 (approximately $209.7 million of which remains outstanding as of the Petition Date).  No other Debtor guarantees or is otherwise obligated under the senior notes.

- **5.165% senior notes due 2044 (the "2044 Notes")**.   On July 17, 2014, Bed Bath & Beyond issued $900 million of 5.165% senior unsecured notes due August 1, 2044 (approximately $604.8 million of which remains outstanding as of the Petition Date).  No other Debtor guarantees or is otherwise obligated under the notes.

3.      Finance Leases

The Company executed the Dedicated Warehousing Agreement, dated as of July 2021, by and between Bed Bath & Beyond Inc. and Ryder and that Service Agreement, dated as of July 9, 2021 and any corresponding Statement of Works (the "DWA") to provide the Company with warehousing and logistics services at warehouse locations specific to the Frackville, Pennsylvania location.

The Company executed that certain Industrial Lease Agreement, dated as of April 2021, by and between Bed Bath & Beyond Inc. and NP New Castle, LLC (the "ILA" and together with the DWA, the "Finance Leases") for the lease of the premises with all of the related improvements, all located in Frackville, Pennsylvania for distribution, warehousing, and general office use.  As of the Petition Date, approximately $61.5 million remains outstanding under the Finance Leases.

4.      Equity Interests

As of the Petition Date, Bed Bath & Beyond has 180 shares of Preferred Stock.  Shares of Bed Bath & Beyond's common stock have traded on Nasdaq exchange under the symbol "BBBY."  As of the Petition Date, approximately 739,056,836 shares of voting common shares were outstanding.

## VI.    EVENTS LEADING TO THE CHAPTER 11 FILINGS

### A.    Early Signs of Business Deterioration

In January 2014, Bed Bath & Beyond's stock hit an all-time high of $80 per share.  That zenith, however, was quickly followed by a volatile period.  By 2018, the stock had fallen to $14 per share, erasing $15 billion in value.  Much of this diminution came as Bed Bath & Beyond struggled to keep up with its rivals, who previously invested heavily in both stores and e-commerce capabilities.  In addition, Bed Bath & Beyond's costs steadily increased, leading operating margins to decline from 16.5% in fiscal 2011 to less than 4% in fiscal 2018.  In early 2019, the Company reported its seventh consecutive quarter of declining same-store sales and reported its first annual loss and sales decline in its nearly three decades as a public company, with profit plunging 48% year-over-year.  Furthermore, its supply chain and method of product development and selection were outdated and supported by old systems.

Like many other major retailers, Bed Bath & Beyond also succumbed to macroeconomic and industry pressures, failing to expeditiously adapt to changing consumer shopping behavior.  In March 2019, in response to voiced dissatisfaction by a group of activist investors, Bed Bath & Beyond overhauled its board of directors, and CEO Steven Temares stepped down, ending his 16-year tenure.  The Company hired 30-year retail veteran Mark Tritton as CEO in 2019 and attempted to implement strategies for developing private-label brands.  Bed Bath & Beyond's new vision was a digital-first, customer-focused omnichannel retailer with a more curated, inspirational, and differentiated product collection across categories.

Unfortunately, this strategy proved to be unsuccessful.  Traffic, market share, and important customer programs, such as loyalty and registry, were impacted as the Company's infrastructure failed to support the pace of change, and the transformation strategy overwhelmed Bed Bath & Beyond's supply chain.  This self-inflicted internal disruption coincided with the unprecedented disruption of the COVID-19 pandemic, which was wreaking havoc on brick-and-mortar retailers across the globe.  In addition to imposing health and safety issues, the pandemic further exacerbated the Company's supply chain problems, serving as the driving force behind inflationary pressures that led to higher inventory costs and reductions in consumer discretionary spending.  Bed Bath & Beyond's massive shift towards private-label brands resulted in longer lead times to produce and ship to stores when compared to the more easily accessible national brands.

Despite these headwinds, in late 2020, Bed Bath & Beyond announced plans to buy back $675 million of its common stock, which included an immediate $225 million accelerated share repurchase program (the "ASR Program") and additional buybacks of up to $450 million.  The Company became increasingly aggressive about its share buyback plans and increased its total buyback target from $675 million to $825 million in December 2020, and again to $1 billion in April 2021, even though Bed Bath & Beyond's finances and overall economic trends among retail companies were weakened by the pandemic.  In November 2021, the Company confirmed that it would complete the full $1 billion ASR Program by the end of fiscal 2021, rather than over the proposed three-year period.  Bed Bath & Beyond's accelerated ASR Program caused some concerns amongst its merchandise suppliers, with vendors fearing the Company would not have

47

enough cash on hand to pay them in full, resulting in some vendors scaling back their business with Bed Bath & Beyond.

Around this time, Bed Bath & Beyond became part of the "meme-stock" movement started on Reddit boards and social media websites and fueled by disclosure of investment firm RC Ventures LLC's 9.8% stake in Bed Bath & Beyond. Ryan Cohen, known "meme investor" and head of RC Ventures LLC, sought to turn Bed Bath & Beyond into another GameStop or AMC meme-stock beneficiary. RC Ventures LLC sent a letter criticizing the Company's strategy, pushing for strategic changes, including selling off its buy buy BABY banner, and exploring a sale of the entire company. Weeks later, Bed Bath & Beyond came to an agreement with the activist firm, agreeing to add three directors of RC Ventures LLC's choosing to the Board.

While lower traffic affected Bed Bath & Beyond's ability to capture in-store sales, the Company was also operating under the unprecedented supply chain conditions that impacted global trade in 2021 and early 2022. The Company also implemented changes to its domestic distribution strategy—the network through which product is delivered to stores. The distribution strategy was not equipped for these changes to the upstream supply chain, nor resilient in the face of the pandemic-related issues that occurred at the Port of Los Angeles, which severely affected many companies. As a result, Bed Bath & Beyond was unable to achieve sufficient levels of inventory to meet demand over the important 2021 holiday season, leading to frustrated customers and sharp declines in sales. During the third quarter of 2021, an estimated $100 million of sales were not fulfilled due to out-of-stocks and in the fourth quarter of 2021, an estimated $175 million of sales were not delivered. By the end of 2021, Bed Bath & Beyond reported net losses of $559.6 million, a decrease of approximately 14.8% compared to fiscal year 2020.

Vendors and licensees grew concerned by the pace and scale of changes the Company was undergoing. The Company's cash position forced management to limit the "open-to-buy"—which enables merchandisers to replenish inventory. After successive quarters of earnings misses and failing to meet targets, continuing share price decreases, and spiraling expenses, Mark Tritton was excused on June 29, 2022, and board member Sue Gove was named the interim CEO and subsequently appointed as permanent CEO.

**B.    New Leadership's Transformation Plan.**

Under Gove's leadership, Bed Bath & Beyond realigned its executive leadership team to reflect a pivot in strategic priorities and completed a 20% reduction of its corporate and supply chain operations workforce. The Company took swift actions in its efforts to rebalance and improve inventory, including adjusting merchandise allocations to lead with customer preference, bringing back popular national brands, and introducing new, emerging direct-to-consumer brands. Bed Bath & Beyond exited one-third of its private-label brands and substantially reduced the breadth and depth of inventory across the remaining two-thirds private-label brands. The Company worked closely with supplier and vendor partners to ensure customers had access to a strong assortment of their favorite brands across both store and digital channels, even hosting a supplier event in Fall 2022 to both build new relationships and reinforce existing ones.

The Company initiated incremental store closures in its Bed Bath & Beyond banner with the ultimate goal of operating approximately 360 profitable stores, in addition to the approximately

120 buy buy BABY stores across the United States. The Company closed unprofitable and marginally profitable stores and exited out of the Canadian market. Furthermore, the Company began implementing significant selling, general, and administrative expense reductions to right-size its cost structure and took steps to further reduce its capital spending.

In the midst of implementing these transformation plans, in August 2022, a little over five (5) months after taking a stake in the company, RC Ventures LLC took advantage of a rally in Bed Bath & Beyond's stock price and announced the sale of its 9.5 million shares (or approximately 11.8% of then-outstanding shares). The share value decreased 20% after Cohen revealed his plan to sell his stake and plummeted an additional 35% in after-hours trading once securities filings confirmed RC Ventures LLC's divesture.[9]

### C.    Holiday Season Default.

By December 2022, the Company's stores were nearly 35% out of stock, and sales fell nearly 50% from the same period one year prior. As a result, Bed Bath & Beyond triggered multiple events of default under its financing facilities, and, in December 2022, JPMorgan, in its capacity as prepetition ABL agent, delivered two notices to the Company that added additional reserve amounts, lowered the advance rate (the "Reserve Notices"), and required the Company to provide weekly certifications of its borrowing base.

In January 2023, due to the "roll-forward" of the Company's inventory base following the holiday sales season, the Debtors had borrowed in excess of the permitted borrowing base under the Prepetition Credit Agreement. As the Company worked through this issue, in mid-January, the Company failed to timely deliver the weekly borrowing base certificates and other related deliverables required under the Prepetition Credit Agreement and failed to comply with a fixed charge coverage ratio for the four-fiscal-quarter period ended November 26, 2022 (the "Events of Default"). Because of the liquidity situation and the continued decline in inventory level, the Company found itself in the position of a nearly $200 million overadvance under its Prepetition ABL Facility.

On January 23, 2023, advisors to JPMorgan informed the Debtors that, as a result of the ongoing Events of Default, a cash dominion period (the "Cash Dominion Period") had occurred, and JPMorgan delivered the applicable dominion notices. On January 25, 2023, JPMorgan sent a notice of acceleration and default interest (the "Acceleration Notice") to the Debtors as a result of the ongoing Events of Default. The Acceleration Notice notified the Debtors that: (i) the principal amount of the Prepetition Credit Facilities, together with accrued interest thereon, a FILO premium and all fees and other obligations under the Prepetition Credit Agreement, were due and payable immediately, (ii) the Debtors were required to cash collateralize letters of credit, and (iii) the interest rates under the Prepetition Credit Agreement were raised by 2%.

---

[9]    Later, Bed Bath & Beyond, Cohen, and the late CFO Gustavo Arnal were named in a $1.2 billion shareholder class-action securities fraud complaint. The complaint alleged the defendants "engaged in a fraudulent scheme to artificially inflate the price of BBBY publicly traded stock" by "blatantly" misrepresenting "the value and profitability of BBBY" and making false and misleading Securities and Exchange Commission filings.

### D.     Exhaustive Exploration of Strategic Alternatives

#### 1.     Early Efforts:  FILO Facility, Exchange Offer, and August ATM

On August 31, 2022, Bed Bath & Beyond secured financing commitments for more than $500 million, including its newly expanded $1.13 billion Prepetition ABL Facility and the new $375 million FILO Facility.  The FILO Facility was part of Bed Bath & Beyond's strategy to increase its liquidity to re-engage with former vendors and suppliers.  To implement Bed Bath & Beyond's refocus on national brands and win back lost customers, the Company needed to repair the strained relationships with its vendors.

On October 18, 2022, Bed Bath & Beyond developed a series of prospective debt exchange transactions designed to strengthen its balance sheet by addressing a 2024 debt maturity and seeking to delever its long-term unsecured debt.  The Company believed these transactions would provide a comprehensive solution that offered the best path forward for the future of the Company.

Bed Bath & Beyond offered to exchange its 2024 Notes, 2034 Notes, and 2044 Notes (collectively, the "Existing Notes") for New Secured Notes[10] (collectively, the "Exchange Offers").  Holders of the 2024 Notes would have the option to exchange their 2024 Notes for New Second Lien Non-Convertible Notes, or New Second Lien Convertible Notes while Holders of the 2034 Notes and the 2044 Notes would have the option to exchange for New Third Lien Convertible Notes.

The original deadline for participating in the Exchange Offers was November 15, 2022, which was extended multiple times.  Ultimately, after failing to satisfy certain applicable conditions, Bed Bath & Beyond terminated the Exchange Offers on January 5, 2023.  None of the tendered Existing Notes were accepted, no consideration was paid, and all Existing Notes were promptly returned or credited back to their respective holders.

In August 2022, the Company also entered into an open market sale agreement with Jefferies LLC, as sales agent, to offer and sell up to 12,000,000 shares of common stock in an at-the-market (or "ATM") offering program generating aggregate gross proceeds of approximately $115 million from the program, which were used for general corporate purposes, including to drive immediate strategic priorities such as rebalancing the Company's assortment and inventory and reducing debt.

#### 2.     Heightened Corporate Governance

The Company appointed one independent and disinterested director—Carol Flaton—as disinterested director to Bed Bath & Beyond Inc. and two independent and disinterested directors—Pamela Corrie and Jonathan Foster—as disinterested directors or managers, as applicable, to the boards of directors or managers, as applicable, of certain of its direct and indirect

---

[10]    The New Secured Notes include 3.693% Senior Second Lien Secured Non-Convertible Notes due 2027 (the "New Second Lien Non-Convertible Notes"), new 8.821% Senior Second Lien Secured Convertible Notes due 2027 (the "New Second Lien Convertible Notes"), and new 12.000% Senior Third Lien Secured Convertible Notes due 2029 (the "New Third Lien Convertible Notes" or the "New Third Lien Secured Notes" and, together with the New Second Lien Non-Convertible Notes and the New Second Lien Convertible Notes, collectively the "New Secured Notes").

subsidiaries (the "Subsidiary Disinterested Directors" and together with Carol Flaton, the "Disinterested Directors").  The Board and each subsidiary board appointed the Disinterested Directors and vested them with the authority to, among other things:  (i) review and act upon any matters pertaining to the restructuring in which a conflict exists between the Company and its shareholders, creditors, affiliates, or the Company's directors and officers (the "Conflict Matters"); (ii) investigate and determine whether any matter arising in the restructuring constitutes a Conflict Matter; and (iii) conduct all investigations and analyses related to the Conflict Matters.

### 3.    Prepetition Marketing Efforts

Beginning in December 2022, Lazard Frères & Co. LLC ("Lazard") commenced a process to solicit interest in a going concern sale transaction that could be effectuated in chapter 11, as well as to solicit interest in providing postpetition financing.  Lazard initially reached out to a group of potential financial and strategic investors who are experienced in investing in the retail sector, operational turnarounds and/or distressed situations and held meetings with certain of those investors in late December 2022.    This initial group was comprised of approximately twenty (20) investors, nine of which had executed nondisclosure agreements ("NDAs") by the second week of January 2023.  Those parties included various financial sponsors, strategic buyers, and money center banks.  Several of the parties contacted could have potentially been acquirors of some or all of the Company's businesses, as well as providers of postpetition financing to fund a going concern reorganization.

In mid-January 2023, efforts to identify a potential plan sponsor and investors to provide postpetition financing intensified, the universe of potential investors that Lazard engaged with expanded, and diligence continued.  The Company also received unsolicited inbounds from potential third-party financing sources who had some level of interest in potentially providing postpetition financing.  By the end of the month, it became apparent that the process was unlikely to yield a plan sponsor that would facilitate a going-concern reorganization.  By that time, Lazard had engaged with approximately sixty (60) potential investors to solicit interest in serving as a plan sponsor, acquiring some or all of the Debtors' assets or businesses, or providing postpetition financing, and thirty (30) of those parties had executed NDAs.

### 4.    February 2023 Equity Raise

In connection with the Debtors' evaluation of strategic and financial alternatives, Hudson Bay Capital Management, LP ("Hudson Bay") expressed interest in providing the Debtors with substantial equity financing in light of the Company's depressed share price and continued trading volatility.  After extensive and difficult negotiations with Hudson Bay and the Prepetition Secured Lenders, the Debtors closed an underwritten public offering of (i) shares of the Series A convertible preferred stock (the "Preferred Stock"), (ii) warrants to purchase shares of Series A Convertible Preferred Stock (the "Preferred Stock Warrants") and (iii) warrants to purchase Common Stock on February 7, 2023 (collectively, the "Offering").

The Company received gross proceeds of approximately $225 million on the closing date of the Offering and had the opportunity to receive up to an additional approximately $800 million of gross proceeds upon the forced exercise of the Preferred Stock Warrants.  Between February 7, 2023 and March 27, 2023, holders of the Preferred Stock Warrants exercised their

rights for aggregate gross proceeds to the Company of $135,014,000.  In total, the Company received approximately $360,000,000 of aggregate gross proceeds in connection with the Offering.

Concurrently, the Debtors and the Prepetition Secured Lenders entered into a waiver and amendment to the Amended Credit Agreement (the "Second Amended Credit Agreement"), pursuant to which the Prepetition Secured Lenders agreed to (i) waive the outstanding Events of Default under the credit facilities; and (ii) rescind the implementation of Acceleration Notice and the default interest owed on outstanding obligations.  The Second Amended Credit Agreement also extended the Cash Dominion Period until all obligations were paid in full and all outstanding commitments were terminated and decreased the total revolving commitment from approximately $1.13 billion to $565 million and provided for an increase of $100 million in the FILO facility (the "FILO Upsize") from $375 million to $475 million.

While the Company had viewed the amount of potential proceeds from the Offering as sufficient to implement its transformation plan, unfortunately, under the terms of the Second Amended Credit Agreement, the Debtors were required to use the net proceeds from the initial closing of the Offering and the FILO Upsize to repay outstanding revolving loans under the Debtors' Prepetition ABL Facility, including repayment of the nearly $200 million overadvance. At this point, the Company's sales had dropped 60% on a comparable store basis, resulting in substantial ongoing losses from operation.  Therefore, the remaining Offering proceeds went to cover operational losses rather than to restoring inventory levels.

The Company needed real runway to turn around its inventory and liquidity position, which the Offering ultimately did not provide.  The Offering had the effect of diluting the Company's common stock and reducing the share price, quickly jeopardizing the Company's ability to meet the conditions, including maintaining a minimum share price, to force the exercise of the Preferred Stock Warrants in the future and continue to raise capital per the terms of the Preferred Stock Warrants.  In an effort to maintain access to the liquidity provided by the Preferred Stock Warrants, on March 14, 2023, the Debtors amended its Preferred Stock Warrants to temporarily adjust the minimum price threshold to $1.00 until April 3, 2023.  This amendment was intended to further facilitate up to $100 million of additional funding in April 2023, for a cumulative total of $460 million.  But the stock continued to slide, and the Debtors had no certainty they would continue to maintain access to the liquidity provided by the Preferred Stock Warrant.  In response, on March 30, 2023—after raising an aggregate of $360 million in connection with the Offering—the Debtors terminated the Offering.

### 5.  B. Riley ATM Offering

Concurrently with the exchange of the remaining Preferred Stock Warrants, the Company entered into a sales agreement with B. Riley Securities, Inc., as sales agent, to offer and sell up to $300 million of shares of its common stock from time to time through an ATM (the "B. Riley ATM Program").  In addition to the B. Riley ATM Program, B. Riley Principal Capital II, LLC entered into a common-stock purchase agreement and a registration rights agreement (collectively, the "Committed Equity Facility") with the Company for the offer and sale of additional shares of common stock.  The net proceeds from the B. Riley ATM Program were used to prepay outstanding revolving loans under the Debtors' Prepetition ABL Facility and to cash

collateralize outstanding letters of credit, which resulted in new credit under the Debtors' Prepetition ABL Facility.

Additionally, on April 5, 2023, the Debtors entered into a new vendor consignment program (the "Consignment Program") with ReStore Capital ("ReStore"). Under the Consignment Program, ReStore agreed to purchase up to $120 million, on a revolving basis at any given time, of prearranged merchandise from the Debtors' key suppliers to supplement inventory levels already sold at Bed Bath & Beyond and buy buy BABY. The Debtors hoped this capital-light solution would help them to strengthen their merchandise availability and fulfill their customer demands. Unfortunately, this Consignment Program was not implemented due to additional lender constraints.

While the Offering and the B. Riley ATM Program provided much-needed cash infusions to temporarily avert a chapter 11 filing in February and March 2023, the Debtors' cash burn prevented them from implementing their anticipated long-term operational restructuring while satisfying their restrictive debt obligations. The Debtors once again found themselves in an untenable liquidity position, necessitating the commencement of these Chapter 11 Cases.

6.      DIP Financing and Administration of the Wind-Down Process

The Debtors' management team and advisors determined that it was appropriate to close and wind down all 475 then-remaining brick-and-mortar stores. To fund the additional costs associated with the administration of an orderly wind down, the Debtors recommenced a marketing process to solicit proposals for debtor-in-possession financing. These efforts culminated in the DIP Facility, which will fund the Debtors' working capital needs and the chapter 11 process.

Sixth Street, together with any other parties that may become a party to the DIP Credit Agreement, agreed to provide the DIP Facility. While the Debtors approached numerous potential providers of debtor-in-possession financing, no viable third-party postpetition financing sources were available to the Debtors. In the absence of workable third-party financing proposals, and in light of the requirement under the Prepetition Credit Agreement to secure the support of both Sixth Street and the ABL Lenders for any postpetition financing, the Debtors pushed the DIP Lenders to reach consensus on a combined proposal. Following round-the-clock, hard-fought negotiations, the Debtors and the DIP Lenders agreed upon the terms of a debtor-in-possession financing in the form of senior secured postpetition financing on a superpriority basis under (1) a new money single draw term loan facility consisting of up to $40 million, and (2) a roll-up of Prepetition FILO Secured Obligations in the amount of $200 million.

Critically, the liquidity provided by the DIP Facility provides the Debtors' customers, vendors, and employees with comfort that the Debtors will continue to operate in the ordinary course of business during these Chapter 11 Cases. Moreover, the DIP Facility provides for several reserves that will be used to fund costs associated with (a) allowed undisputed and unpaid administrative expense claims; (b) the orderly wind-down of the Debtors' businesses; and (c) obligations arising under the Worker Adjustment and Retraining Notification Act and state law equivalents. Absent the creation of such funds, the Debtors' pathway to a successful emergence from the Chapter 11 Cases would be uncertain.

The Debtors are committed to achieving the highest or otherwise best bid for some or all of the Debtors' assets by marketing their assets pursuant to the Bidding Procedures, and, if necessary, conducting an auction for any of their assets. The Debtors expect that all sales at the closing stores will be completed and the properties vacated by June 30, 2023, generating aggregate net sales proceeds of approximately $718 million.

## VII.    EVENTS OF THE CHAPTER 11 CASES

### A.    First Day and Second Day Relief.

On the Petition Date, after each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Petitions"), the Debtors filed various motions (the "First Day Motions") designed to facilitate the administration of the Chapter 11 Cases and minimize disruption to the Debtors' operations, by, among other things, easing the strain on the Debtors' relationships with employees, vendors, and customers following the commencement of the Chapter 11 Cases. A brief description of each of the First Day Motions and the evidence in support thereof is set forth in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10], filed on the Petition Date. As of the date hereof, the Bankruptcy Court has entered final orders authorizing the relief sought in each of the First Day Motions.

The First Day Motions, Petitions, and all entered orders for relief in the Chapter 11 Cases, can be viewed free of charge at https://restructuring.ra.kroll.com/bbby.

### B.    Retention of the Debtors' Professionals.

To assist the Debtors in carrying out their duties as debtors in possession and to otherwise represent the Debtors' interests in the Chapter 11 Cases, the Debtors filed applications requesting that the Bankruptcy Court authorize the Debtors to retain and employ the following advisors pursuant to sections 327, 328, and 363 of the Bankruptcy Code, as applicable: (a) Kirkland & Ellis, LLP and Kirkland & Ellis International LLP, as co-counsel to the Debtors; (b) Cole Schotz P.C., as co-counsel to the Debtors; (c) Lazard Frères & Co. LLC, as investment banker to the Debtors; (d) AP Services, LLC, as restructuring advisor to the Debtors; (e) A&G Realty Partners, LLC, as real estate consultant and advisor to the Debtors; (f) Jones Lang LaSalle Americas, Inc., as real estate advisors and consultant to the Debtors; and (g) Kroll Restructuring Administration, LLC, as administrative advisor to the Debtors. Concurrently with the application requesting authorization to retain AP Services, LP, the Debtors sought entry of an order designating Holly F. Etlin, Partner and Managing Director of AlixPartners, LLP, as the Debtors' Chief Restructuring Officer and Chief Financial Officer. The Bankruptcy Court entered orders approving the retention of these advisors from June 2, 2023 through June 15, 2023 [Docket Nos. 605, 606, 615–617, 676, 730].

### C.    Schedules and Statements

On April 23, 2023, the Debtors filed a motion [Docket No. 9] seeking entry of an order granting an extension of time through and including May 30, 2023, to file their schedules of assets

and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs (collectively, the "Schedules and Statements"). On April 25, 2023, the Bankruptcy Court entered a final order approving this extension motion [Docket No. 99]. On May 30, 2023, the Debtors filed their Schedules and Statements [Dockets No. 499–568; 570–73].

### D.    Appointment of Official Committee

On May 5, 2023, the U.S. Trustee filed the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 218], notifying parties in interest that the U.S. Trustee had appointed a statutory committee of unsecured creditors in the Chapter 11 Cases. The Debtor held a meeting of creditors pursuant to section 341 of the Bankruptcy Code on June 5, 2023. The Creditors' Committee selected Pachulski Stang Ziehl & Jones LLP to serve as its legal counsel and Alvarez and Marsal North America LLC as financial advisor. The Creditors' Committee currently consists of seven members: Ryder Integrated Logistics, Inc.; Bank of New York Mellon; Intersoft Data Labs Inc.; KDM P.O.P. Solutions Group; Shark Ninja Operating LLC; Lenox Corporation; and SITE Centers Corp.

### E.    Sale Process and Bidding Procedures

The Debtors, with the assistance of Lazard, conducted a marketing process for all or substantially all of their assets that began in December 2022. In total, Lazard contacted approximately 100 potential investors, over 50 of which executed NDAs. These selected counterparties included various financial sponsors, strategic buyers, and money center banks that could have become potential acquirers of some or all of the Debtors' businesses and/or providers of postpetition financing. Ultimately, however, the Debtors found themselves in an untenable liquidity position that necessitated the commencement of these Chapter 11 Cases.

Pursuant to the Bidding Procedures Order, the Debtors filed a notice on June 13, 2023, selecting Overstock.com, Inc. as the Stalking Horse Bidder (as defined in the Bidding Procedures). The deadline for interested parties to submit binding Qualified Bids (as defined in the Bidding Procedures) to participate in the Auction (as defined in the Bidding Procedures) was June 16, 2023 at 12:00 p.m. (prevailing Eastern Time). The Auction (as defined in the Bidding Procedures) for the intellectual property assets associated with the Debtors' Wamsutta brand (the "Wamsutta Asset") and the ownership rights in and to the domain name BEYOND.com (the "Beyond.com Asset") took place on June 21, 2023 at 10:00 a.m. (prevailing Eastern Time) at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022. The Debtors subsequently filed a notice identifying Overstock.com, Inc. as the Successful Bidder for the Wamsutta Asset and the Beyond.com Asset on June 22, 2023 and announced their intention to seek approval of the sale transaction with Overstock.com, Inc. at a sale hearing before the Honorable Judge Papalia at the United States Bankruptcy Court for the District of New Jersey on June 27, 2023 at 2:30 p.m. (prevailing Eastern Time). At the hearing, the Bankruptcy Court considered approval of the winning bid and consummation of the sale and, on June 28, 2023, entered an order approving the sale transaction [Docket No. 1117].

On June 28, 2023, the Debtors conducted an Auction (the "BABY IP Auction") at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022, solely with respect to the intellectual property assets related to the Debtors' buy buy BABY brand

(the "BABY IP Assets").  On June 29, 2023, the Debtors filed a notice, which provided for, among other things, (a) the selection of Dream on Me as the initial winning bidder of the BABY IP Assets, (b) the execution of an asset purchase agreement, attached thereto, between the Debtors and Dream on Me, and (c) the date of a sale hearing at which the Bankruptcy Court would examine the contemplated sale of BABY IP Assets to Dream on Me.  On July 11, 2023, the Bankruptcy Court approved the sale BABY IP Assets to Dream on Me for approximately $15.5 million [Docket No. 1314].

On July 19, 2023, the Debtors filed a notice, disclosing entry into an asset purchase agreement with Harmon Retail Holdings, LLC (the "Harmon APA"), which contemplates the sale of the intellectual property, customer lists, goodwill, royalties, and general intangible assets relating to the Debtors' Harmon and Face Values brands (the "Harmon Assets") for $200,000 in cash [Docket No. 1415].  The Debtors will seek entry of an order from the Bankruptcy Court authorizing the Debtors' entry into the Harmon APA in the immediate near-term.

## F.    Store Closing Process

On June 7, 2023, the Bankruptcy Court granted the Debtors' store closing motion on a final basis and approved a continuance of store closures in accordance with customary store-closing procedures, subject to the auction and sale process, assumption of the consulting agreements, customary store closing bonuses up to $1.6 million, and modifications to certain customer programs [Docket No. 641] (the "Store Closing Order").  On the Petition Date, the Debtors announced their intention to close the 473 stores (or "Wave 5") identified on Exhibit A attached to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Story Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 28].

## G.    Treatment of Unexpired Leases.

In the period leading up to the Petition Date, the Debtors determined that it was appropriate to close and wind down any remaining brick-and-mortar stores and, accordingly, began to analyze their unexpired leases to determine how best to maximize value from such leases.  On May 17, 2023, the Bankruptcy Court entered an order authorizing the rejection of approximately 476 unexpired leases [Docket No. 373].  Additionally, on May 17, 2023, the Bankruptcy Court entered an order approving certain procedures solely for the rejection of executory contracts and unexpired leases [Docket No. 382] (the "Rejection Procedures").  Pursuant to the Rejection Procedures and certain other individual motions, the Debtors have, as of the date hereof, rejected an additional 559 unexpired leases.

On May 22, 2023, the Bankruptcy Court entered an order establishing procedures (the "Lease Sale Procedures") whereby the Debtors could sell certain of their non-residential real property lease assets (the "Lease Assets") through an auction process [Docket No. 422] (the "Lease Sale Procedures Order").  The Lease Sale Procedures authorized the Debtors to conduct two separate auctions for Lease Assets, the Phase 1 Lease Auction and Phase 2 Lease Auction,

respectively.  The Debtors, with the assistance of A&G, marketed hundreds of Lease Assets for the Phase 1 Lease Auction and negotiated with countless potentially interested parties.

Pursuant to the Lease Sale Procedures Order and related materials, the deadline by which the Debtors could select a Stalking Horse Bidder (as defined in the Lease Sale Procedures) was June 20, 2023 at 5:00 p.m. (prevailing Eastern Time) for the Phase 1 Lease Auction and was July 10, 2023 at 5:00 p.m. (prevailing Eastern Time) for the Phase 2 Lease Auction.  The deadline for interested parties to submit binding Qualified Bids (as defined in the Lease Sale Procedures) was June 22, 2023 at 5:00 p.m. (prevailing Eastern Time) to participate in the Phase 1 Lease Auction and was July 13, 2023 at 5:00 p.m. (prevailing Eastern Time) to participate in the Phase 2 Lease Auction.  The Phase 1 Lease Auction took place on June 26, 2023 at 10:00 a.m. (prevailing Eastern Time), and the Phase 2 Lease Auction took place on July 19, 2023 at 10:00 a.m. (prevailing Eastern Time) at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.  The Debtors filed a notice on June 24, 2023 reflecting their decision to proceed with the auction of certain lease assets associated with the Debtors' "buy buy BABY" banner (the "<u>BABY Lease Assets</u>") at the Phase 1 Lease Auction.  The Debtors reserved their rights to condition the sale of any BABY Lease Asset on the outcome of the auction for "buy buy BABY" assets, which took place on June 28, 2023 at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.  On June 27, 2023, the Debtors filed a notice identifying the Successful Bidder and Backup Bidder (both as defined in the Lease Sale Procedures) with respect to certain Lease Assets included in the Phase 1 Lease Auction [Docket No. 1114].  A hearing before the Bankruptcy Court to consider approval of any proposed Lease Sale (as defined in the Lease Sale Procedures) took place on July 18, 2023 with respect to the Phase 1 Lease Auction, and an additional hearing to consider adjourned matters will take place on July 28, 2023.

On July 20, 2023, the Debtors filed a notice identifying the Successful Bidder and Backup Bidder (both as defined in the Lease Sale Procedures) with respect to certain Lease Assets included in the Phase 2 Lease Auction [Docket No. 1428].  A hearing to consider approval of any proposed Lease Sale with respect to the Phase 2 Lease Auction will take place July 28, 2023.

The Debtors have also sought to assign certain unexpired leases outside the scope of the Lease Sale Procedures.  On May 23, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Assume and Assign Certain Unexpired Leases* [Docket No. 428], seeking to assign nine unexpired leases to World Market, LLC, which the Bankruptcy Court approved on June 15, 2023 [Docket No. 731].  On June 7, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of Certain Unexpired Leases Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Approving Assumption and Assignment of Unexpired Leases; and (III) Granting Related Relief* [Docket No. 644], seeking to sell seven (7) unexpired leases to Burlington Coat Factory Warehouse Corporation and certain of its affiliates, which the Bankruptcy Court approved on June 27, 2023 [Docket No. 1099].[11]

---

[11]   The Debtors sought to assign one of the eight leases to Burlington Coat Factory Warehouse Corporation through the *Debtors' Application in Lieu of Motion in Support of Entry of Stipulation and Consent Order (I) Modifying Lease Rejection Order, (II) Reinstating Lease, and (III) Approving Assumption and Assignment of Lease* [Docket No. 646].

## H.    Establishment of Claims Bar Dates.

On May 31, 2023, the Bankruptcy Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order").  The Bar Date Order sets forth bar dates by which certain entities holding Claims against Debtors that arose (or that are deemed to have arisen) prior to the Petition Date must file Proofs of Claim.  The Bar Date Order established the following bar dates:

- **Claims Bar Date**:  establishing **July 7, 2023** as the last date for each entity, except as otherwise provided in the Bar Date Order, to file a Proof of Claim based on a prepetition claim, including requests for payment under section 503(b)(9) of the Bankruptcy Code against any Debtor (the "Claims Bar Date");

- **Governmental Bar Date**:  establishing **October 20, 2023** as the last date or each governmental unit to file a Proof of Claim against any Debtor (the "Governmental Bar Date");

- **Rejection Damages Bar Date**:  solely as to claims arising from the Debtors' rejection of executory contracts and unexpired leases, **establishing the later of (a) the Claims Bar Date or the Governmental Bar Date**, as applicable; **(b) any date the Bankruptcy Court may set in the applicable order authorizing rejection of any executory contract or unexpired lease, and if no such date is provided, the date that is thirty (30) days following the date of entry of an order authorizing such rejection; and (c) the date that is thirty (30) days following the effective date of such rejection of the applicable executory contract or unexpired lease of the Debtors** as the last date by which each claimant holding a claim based upon such rejection must file a Proof of Claim against any Debtor (the "Rejection Damages Bar Date");

- **Amended Schedules Bar Date**:  in the event that the Debtors amend their Schedules, **establishing the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, and (b) the date that is thirty (30) days from the date on which the Debtors serve notice of the amendment to the Schedules,** as the last date by which each claimant holding a claim affected by such amendment must file a Proof of Claim against any Debtor (such later date, the "Amended Schedules Bar Date"); and

- **Administrative Claims Bar Date**:  solely as to administrative expense claims asserted against the Debtors pursuant to section 503(b) of the Bankruptcy Code (the "Administrative Claims"), other than Professional Fee Claims, DIP Claims, and Administrative Claims arising pursuant to sections 503(b)(9) or 507(a)(2) of the Bankruptcy Code, **establishing the earlier of (a) (i) July 7, 2023, if such Administrative Claim was incurred through June 27, 2023; (ii) the**

**fifteenth (15th) day of the month following the month in which an Administrative Claim arose, if such Administrative Claim was incurred after June 27, 2023; and (iii) July 21, 2023, solely for Administrative Claims asserted by counterparties to unexpired leases of non-residential real property, which leases have not been assumed, assumed and assigned, or rejected, whether such Administrative Claims were incurred before or after June 27, 2023, and (b) fourteen (14) days following the Effective Date** as the last date by which each claimant holding such Administrative Claim must file a Proof of Claim against any Debtors (such applicable date, the "Administrative Claims Bar Date").

## I.    Final Approval of DIP Financing

On June 15, 2023, the Bankruptcy Court entered an order [Docket No. 729] approving, on a final basis, the relief requested in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief.*

On June 26, 2023, an ad hoc group of bondholders filed a motion to reconsider and vacate the DIP Orders (the "Motion to Reconsider") [Docket No. 982] pursuant to rule 60(b) of the Federal Rules of Civil Procedure. The DIP Lenders filed a letter opposing the Motion to Reconsider [Docket No. 1053], and the Debtors filed an objection to the Motion to Reconsider [Docket No. 1081]. In response, the Bankruptcy Court agreed to conduct an evidentiary hearing on June 28, 2023, at which the Bankruptcy Court would hear testimony and consider the arguments of counsel. Following an all-day hearing, the Bankruptcy Court issued its ruling denying the Motion to Reconsider with prejudice [Docket No. 1131].

## J.    Litigation Matters

In the ordinary course of business, the Debtors are parties to certain lawsuits, legal proceedings, collection proceedings, and claims arising out of their business operations. The Debtors cannot predict with certainty the outcome of these lawsuits, legal proceedings, and claims.

With certain exceptions, the filing of the Chapter 11 Cases operates as a stay with respect to the commencement or continuation of litigation against the Debtors that was or could have been commenced before the commencement of the Chapter 11 Cases. In addition, the Debtors' liability with respect to litigation stayed by the commencement of the Chapter 11 Cases generally is subject to discharge, settlement, and release upon confirmation of a plan under chapter 11, with certain exceptions. Therefore, certain litigation Claims against the Debtors may be subject to discharge in connection with the Chapter 11 Cases.

## VIII.  RISK FACTORS

Holders of Claims should read and consider carefully the risk factors set forth below before voting to accept or reject the Plan. Although there are many risk factors discussed below, these

factors should not be regarded as constituting the only risks present in connection with the Debtors' businesses or the Plan and its implementation.

### A.      Bankruptcy Law Considerations

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect distributions available to Holders of Allowed Claims under the Plan but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Plan or necessarily require a re-solicitation of the votes of Holders of Claims in such Impaired Classes.

1.      <u>Parties in Interest May Object to the Plan's Classification of Claims and Interests</u>

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.      <u>The Conditions Precedent to the Effective Date of the Plan May Not Occur</u>

As more fully set forth in Article XII of the Plan, the Effective Date is subject to a number of conditions precedent.  If such conditions precedent are not met or waived, the Effective Date will not take place.

3.      <u>The Debtors May Fail to Satisfy Vote Requirements</u>

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Debtors may seek to pursue another strategy to wind down the Estates.  There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

4.      <u>The Debtors May Not Be Able to Secure Confirmation of the Plan</u>

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the Bankruptcy Court that:  (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of claims and equity interests

within a particular class under such plan will not be less than the value of distributions such Holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determines that this Disclosure Statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation are not met.  If a chapter 11 plan is not confirmed by the Bankruptcy Court, it is unclear whether the Debtors will be able to reorganize their business and what, if anything, Holders of Allowed Claims against them would ultimately receive on account of such Allowed Claims.

Confirmation of the Plan is also subject to certain conditions as described in Article XII of the Plan.  If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims will receive on account of such Allowed Claims.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation.  Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Class junior to such non-accepting Class, than the treatment currently provided in the Plan.  Such a less favorable treatment could include a distribution of property with a lesser value than currently provided in the Plan or no distribution whatsoever under the Plan.

5.    Nonconsensual Confirmation

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the Proponents' request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es).  The Debtors believe that the Plan satisfies these requirements, and the Debtors may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.  In addition, the pursuit of nonconsensual Confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

6.    Continued Risk Upon Confirmation

There is no guarantee that a chapter 11 plan reflecting the Plan will achieve the Debtors' stated goals.  In addition, at the outset of the Chapter 11 Cases, the Bankruptcy Code will give the Debtors the exclusive right to propose the Plan and will prohibit creditors and others from proposing a plan. The Debtors will have retained the exclusive right to propose the Plan upon filing their petitions for chapter 11 relief.  If the Bankruptcy Court terminates that right, however,

or the exclusivity period expires, there could be a material adverse effect on the Debtors' ability to achieve confirmation of the Plan in order to achieve the Debtors' stated goals.

Furthermore, even if the Debtors' debts are reduced and/or discharged through the Plan, the Debtors may need to raise additional funds through public or private debt or equity financing or other various means to fund the Debtors' business after the completion of the proceedings related to the Chapter 11 Cases.  Adequate funds may not be available when needed or may not be available on favorable terms.

       7.      The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in a chapter 11 plan because of (a) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time rather than reorganizing or selling in a controlled manner affecting the business as a going concern, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, and including Claims resulting from the rejection of Unexpired Leases and other Executory Contracts in connection with cessation of operations.

       8.      The Chapter 11 Cases Could Result in a "Structured Dismissal"

If the Confirmation or Consummation of the Plan does not occur, (a) the Plan shall be null and void in all respects other than as set forth in the Plan, (b) the Plan shall be deemed a motion seeking dismissal of these Chapter 11 Cases in accordance with the applicable provisions and priority scheme of the Bankruptcy Code, and (c) nothing contained in the Plan or this Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

       9.      The Debtors May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is subject to an objection.  Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

10.    Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

11.    Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Plan

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained in this Disclosure Statement. Moreover, the Debtors cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

12.    Releases, Injunctions, and Exculpations Provisions May Not Be Approved

Article X of the Plan provides for certain releases, injunctions, and exculpations, including a release of liens and third-party releases that may otherwise be asserted against the Debtors, Wind-Down Debtors, or Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan.

The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties is necessary to the success of the Debtors' reorganization because the Released Parties and Exculpated Parties have made significant contributions to the Debtors' reorganizational efforts and have agreed to make further contributions, but only if they receive the full benefit of the Plan's release and exculpation provisions. The Plan's release and exculpation provisions are an inextricable component of the Plan and the significant deleveraging and financial benefits that they embody.

13.    The Total Amount of Allowed Unsecured Claims May Be Higher than Anticipated by the Debtors

With respect to Holders of Allowed General Unsecured Claims, the claims filed against the Debtors' estates may be materially higher than the Debtors have estimated.

14.    <u>The Total Amount of Allowed Administrative and Priority Claims
May Be Higher than Anticipated by the Debtors</u>

The amount of Cash the Debtors ultimately receive prior to and following the Effective Date may be lower than anticipated.  Additionally Allowed Administrative Claims and Allowed Priority Claims may be higher than anticipated.  Accordingly, there is a risk that the Debtors will not be able to pay in full in cash all Administrative Claims and Priority Claims on the Effective Date as is required to confirm a chapter 11 plan of reorganization.

15.    <u>Certain Tax Implications of the Plan</u>

Holders of Allowed Claims should carefully review Article XI of this Disclosure Statement, entitled "*Certain United States Federal Income Tax Consequences of the Plan*," to determine how the tax implications of the Plan and the Chapter 11 Cases may adversely affect the Wind-Down Debtors and Holders of certain Claims.

**B.    Risks Related to the Wind-Down Debtors' Businesses**

1.    <u>The Debtors May Not Be Able to Generate Sufficient Cash to
Service All of Their Indebtedness</u>

The Debtors' ability to make scheduled payments depends on the Debtors' financial condition and operating performance, which are subject to prevailing economic, industry, and competitive conditions and to certain financial, business, legislative, regulatory, and other factors beyond the Debtors' control.  The Debtors may be unable to maintain a level of cash flow from operating activities sufficient to permit the Debtors to pay the principal, premium, if any, and interest on their indebtedness.

2.    <u>The Debtors Will Be Subject to the Risks and Uncertainties
Associated with the Chapter 11 Cases</u>

For the duration of the Chapter 11 Cases, the Debtors' ability to continue as a going concern, will be subject to the risks and uncertainties associated with bankruptcy.  These risks include the following:  (a) the ability to develop, confirm, and consummate the liquidation transactions specified in the Plan or an alternative transaction; (b) the ability to obtain Bankruptcy Court approval with respect to motions filed in the Chapter 11 Cases from time to time; (c) the ability to maintain relationships with suppliers, service providers, customers, employees, vendors, and other third parties; (d) the ability to maintain contracts that are critical to the Debtors' operations; (e) the ability of third parties to seek and obtain Bankruptcy Court approval to terminate contracts and other agreements with the Debtors; (f) the ability of third parties to seek and obtain Bankruptcy Court approval to terminate or shorten the exclusivity period for the Debtors to propose and confirm a chapter 11 plan, to appoint a chapter 11 trustee, or to convert the Chapter 11 Cases to chapter 7 proceedings; and (g) the actions and decisions of the Debtors' creditors and other third parties who have interests in the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

These risks and uncertainties could affect the Debtors' businesses and operations in various ways.  For example, negative events associated with the Chapter 11 Cases could adversely affect

the Debtors' relationships with suppliers, service providers, customers, employees, and other third parties, which in turn could adversely affect the Debtors' operations and financial condition. Also, the Debtors will need the prior approval of the Bankruptcy Court for transactions outside the ordinary course of business, which may limit the Debtors' ability to respond timely to certain events or take advantage of certain opportunities. Because of the risks and uncertainties associated with the Chapter 11 Cases, the Debtors cannot accurately predict or quantify the ultimate impact of events that occur during the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

3.    The Wind-Down Debtors May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Cases

The Debtors are currently subject to or interested in certain legal proceedings, which may adversely affect the Debtors. In the future, the Wind-Down Debtors may become party to litigation. In general, litigation can be expensive and time-consuming to bring or defend against. Such litigation could result in settlements or judgments that could significantly affect the Wind-Down Debtors' financial results. It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation that the Wind-Down Debtors may become party to, nor the final resolution of such litigation. The impact of any such litigation on the Wind-Down Debtors' businesses and financial stability, however, could be material.

4.    The Loss of Key Personnel Could Adversely Affect the Debtors' Operations

The Debtors' operations are dependent on a relatively small group of key management personnel, including the Debtors' executive officers. The Debtors' recent liquidity issues and the Chapter 11 Cases have created distractions and uncertainty for key management personnel and employees. As a result, the Debtors may experience increased levels of employee attrition. The Debtors may be unable to find acceptable replacements with comparable skills and experience, and the loss of such key management personnel could adversely affect the Debtors' ability to operate their businesses. In addition, a loss of key personnel or material erosion of employee morale could have a material adverse effect on the Debtors' ability to meet customer and counterparty expectations, thereby adversely affecting the Debtors' businesses and the results of operations.

5.    Results of Wind-Down Sales May Not Meet Projections

The Wind-Down sales may fail to meet projections due to the uncertainty of consumer demand and various macroeconomic conditions. Decreased demand for retail and consumer goods during the Wind Down and over the next month would impact sales at the Debtors' remaining stores, which, in turn, would negatively impact the ability of the Debtors to sell inventory and complete the Wind Down.

## IX.   SOLICITATION AND VOTING PROCEDURES

This Disclosure Statement is being distributed to the Holders of Claims in those Classes that are entitled to vote to accept or reject the Plan. The procedures and instructions for voting and

related deadlines are set forth in the exhibits annexed to the Disclosure Statement Order, which is attached hereto as **Exhibit B**.

**THE DISCLOSURE STATEMENT ORDER IS INCORPORATED HEREIN BY REFERENCE AND SHOULD BE READ IN CONJUNCTION WITH THIS DISCLOSURE STATEMENT AND IN FORMULATING A DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN.**

> **THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS**
> **SET FORTH IN THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY**.
> PLEASE REFER TO THE DISCLOSURE STATEMENT ORDER ATTACHED HERETO FOR A
> MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.

### A.    Holders of Claims Entitled to Vote on the Plan

Under the provisions of the Bankruptcy Code, not all Holders of Claims and Interests against a Debtor are entitled to vote on a chapter 11 plan.  The table in Article III.D of this Disclosure Statement provides a summary of the status and voting rights of each Class (and, therefore, of each Holder within such Class absent an objection to the Holder's Claim or Interest) under the Plan.

As shown in the table, the Debtors are soliciting votes to accept or reject the Plan only from Holders of Claims in Classes 3, 4, 5, and 6 (the "Voting Classes").  The Holders of Claims in the Voting Classes are Impaired under the Plan and may, in certain circumstances, receive a distribution under the Plan.  Accordingly, Holders of Claims in the Voting Classes have the right to vote to accept or reject the Plan.

The Debtors are ***not*** soliciting votes from Holders of Claims and Interests in Classes 1, 2, 7, 8, 9, or 10.  Additionally, the Disclosure Statement Order provides that certain Holders of Claims in the Voting Classes, such as those Holders whose Claims have been disallowed or are subject to a pending objection, are not entitled to vote to accept or reject the Plan.

### B.    Voting Record Date

**The Voting Record Date is July 28, 2023**.  The Voting Record Date (as defined in the Disclosure Statement Order) is the date on which it will be determined which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim.

### C.    Voting on the Plan

**The Voting Deadline is September 1, 2023, at 4:00 p.m. (prevailing Eastern Time)**.  In order to be counted as votes to accept or reject the Plan, all ballots must be properly executed, completed, and delivered in accordance with the instructions on your ballot so that the ballots are **actually** **received** by the Debtors' Notice and Claims Agent on or before the Voting Deadline:

66

---

**DELIVERY OF BALLOTS**

**To submit your ballot[12] via the Notice and Claims Agent's online portal, please visit https://restructuring.ra.kroll.com/bbby.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your ballot.  Hard copy ballots will not be accepted, and electronic ballots will not be accepted by facsimile or electronic means (other than the online portal) for all Claims other than the Class 6 2014 Senior Unsecured Notes Claims.**

**Holders of Class 6 2014 Senior Unsecured Notes Claims, or their Nominees, may only submit the respective ballot or master ballot via hard copy or electronic mail submission, as further described in the instructions on the applicable ballot and master ballot.**

---

### D.  Ballots Not Counted

**No ballot will be counted toward Confirmation if, among other things**:  (1) any ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim; (2) any ballot cast by any Entity that does not hold a Claim in a Voting Class; (3) any ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00); (4) any unsigned ballot or ballot lacking an original signature (for the avoidance of doubt, a ballot submitted via the Notice and Claims Agent online balloting portal shall be deemed an original signature); (5) any ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (6) any ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein.  **Please refer to the Disclosure Statement Order for additional requirements with respect to voting to accept or reject the Plan.**

---

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE NOTICE AND CLAIMS AGENT AT**

**(833) 570-5355 (Toll Free)**
**(646) 440-4806 (International)**

**ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE SOLICITATION ORDER WILL NOT BE COUNTED.**

---

## X.  CONFIRMATION OF THE PLAN

### A.  Requirements for Confirmation of the Plan

Among the requirements for Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code are:  (1) the Plan is accepted by all Impaired Classes of Claims, or if rejected by

---

[12]    Beneficial Holders of Claims must follow the instructions provided to them by their Nominees on how to submit their ballots.

an Impaired Class, the Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting Impaired Class; (2) the Plan is feasible; and (3) the Plan is in the "best interests" of Holders of Claims and Interests.

At the Combined Hearing, the Bankruptcy Court will determine whether the Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that: (1) the Plan satisfies, or will satisfy, all of the necessary statutory requirements of chapter 11; (2) the Debtors have complied, or will have complied, with all of the necessary requirements of chapter 11; and (3) the Plan has been proposed in good faith.

## B.      Best Interests of Creditors

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or an equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the debtors liquidated under chapter 7.

The Debtors believe that the Plan will satisfy the best interests test because, among other things, the recoveries expected to be available to Holders of Allowed Claims and Interests under the Plan will be greater than the recoveries expected to be available in a chapter 7 liquidation, as discussed more fully below.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of their collateral. If any assets remain in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to be paid. After accounting for administrative expenses, unsecured creditors (including any secured creditor deficiency claims) are paid from the sale proceeds of any unencumbered assets and any remaining sale proceeds of encumbered assets in excess of any secured claims, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, interest holders receive the balance that remains, if any, after all creditors are paid.

All or substantially all of the assets of the Debtors' business will be liquidated through the Asset Sale Transaction, and the Plan effects a Wind Down of the Debtors' remaining assets not otherwise acquired in the Asset Sale Transaction. Although a chapter 7 liquidation would achieve the same goal, the Debtors believe that the Plan provides a greater recovery to Holders of Claims than a chapter 7 liquidation would. Liquidating the Debtors' Estates under the Plan likely provides Holders of Claims with a larger, more timely recovery, primarily due to expected materially lower realized sale proceeds in chapter 7.

A chapter 7 liquidation beginning on what would have been the Effective Date would provide less recovery for creditors than the Plan. The delay of the chapter 7 trustee becoming

familiar with the assets could easily cause bids already obtained to be lost, and the chapter 7 trustee will not have the technical expertise and knowledge of the Debtors' businesses that the Debtors had when they proposed to sell their assets and commence the Wind Down.  Moreover, the distributable proceeds under a chapter 7 liquidation will be lower because of the chapter 7 trustee's fees and expenses.

Sale proceeds in chapter 7 would likely be significantly lower particularly in light of the time delay associated with the chapter 7 trustee's learning curve for these assets.  In addition to the expected material reduction in sale proceeds, recoveries would be further reduced (in comparison with the Plan) due to the expenses that would be incurred in a chapter 7 liquidation, including added expenses for wind down costs and costs incurred by the chapter 7 trustee and any retained professionals in familiarizing themselves with the Debtors' assets, and these specific Chapter 11 Cases, in order to complete the administration of the Estates. *See, e.g.*, 11 U.S.C. § 326(a) (providing for compensation of a chapter 7 trustee up to three percent of the value of the assets); 11 U.S.C. 503(b)(2) (providing administrative expense status for compensation and expenses of a chapter 7 trustee and such trustee's professionals).

The Debtors' Estates would continue to be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for Professionals), which may constitute Allowed Claims in any chapter 11 case.  Moreover, the conversion to chapter 7 would also require entry of a new bar date for filing claims that would be more than ninety (90) days following conversion of the case to chapter 7.  See Fed. R. Bankr. P. 1019(2); 3002(c).  Thus, the amount of Claims ultimately filed and Allowed against the Debtors could materially increase, thereby further reducing creditor recoveries versus those available under the Plan.

In light of the foregoing, the Debtors submit that a chapter 7 liquidation would result in materially reduced sale proceeds, increased expenses, delayed distributions, and the prospect of additional claims that were not asserted in the Chapter 11 Cases.  Accordingly, the Debtors believe that the Plan provides an opportunity to bring the highest return for creditors.

## C.    Feasibility

The Bankruptcy Code requires that a chapter 11 plan provide for payment in full of all administrative and priority claims unless holders of such claim consent to other treatment.  Each Holder of an Allowed Other Priority Claim will receive payment in full in Cash or other treatment rendering such claim Unimpaired, unless such Holder agrees to less favorable treatment.  The Debtors therefore believe that the Plan is feasible.

## D.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, except as described in the following section, that each class of claims or equity interests impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.[13]

---

[13]    A class of claims is "impaired" within the meaning of section 1124 of the Bankruptcy Code unless the plan (a) leaves unaltered the legal, equitable and contractual rights to which the claim or equity interest entitles the holder of such claim or equity

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by Holders of at least two-thirds in a dollar amount and more than one-half in a number of Allowed claims in that class, counting only those claims that have *actually* voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually cast their ballots in favor of acceptance.

## E.   Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; *provided*, *however*, the plan has been accepted by at least one (1) impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan Proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Plan, the Debtors reserve the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Supplement document, including the right to amend or modify the Plan or any Plan Supplement document to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

### 1.   No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. The test does not require that the treatment be the same or equivalent, but that treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. A plan could treat two (2) classes of unsecured creditors differently without unfairly discriminating against either class.

### 2.   Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in the class. As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in the class.

The Debtors submit that if the Debtors "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and

---

interest or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

satisfies the "fair and equitable" requirement.  With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank.  The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## XI.    CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.    Introduction

The following discussion summarizes certain United States ("U.S.") federal income tax consequences of the implementation of the Plan to the Debtors, the Wind-Down Debtors, and certain Holders of Claims.  This summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the U.S. Treasury Regulations promulgated thereunder (the "Treasury Regulations"), judicial decisions and published administrative rules, and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof (collectively, "Applicable Tax Law").  Changes in the rules or new interpretations of the rules may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.  Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below.  The Debtors have not requested, and do not intend to request, any ruling or determination from the IRS or any other taxing authority with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or the courts.  No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This summary does not address foreign, state, local, or non-income tax consequences of the Plan (*e.g.*, U.S. federal gift or estate tax or the 3.8% Medicare tax on net investment income), nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a Holder in light of its individual circumstances or to a Holder that may be subject to special tax rules (such as Persons who are related to the Debtors within the meaning of the Tax Code, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, pass-through entities, beneficial owners of pass-through entities, trusts, governmental authorities or agencies, dealers and traders in securities, subchapter S corporations, persons using a mark-to-market method of accounting, and Holders of Claims who are themselves in bankruptcy).  Furthermore, this summary assumes that a Holder of a Claim holds only Claims in a single Class and holds a Claim only as a "capital asset" (within the meaning of section 1221 of the Tax Code).  This summary also assumes that the various debt and other arrangements to which any of the Debtors are a party will be respected for U.S. federal income tax purposes in accordance with their form, and that the Claims constitute interests in the Debtors "solely as a creditor" for purposes of section 897 of the Tax Code.  This summary does not discuss differences in tax consequences to Holders of Claims that act or receive consideration in a capacity other than any other Holder of a Claim of the same Class or Classes, and the tax consequences for such Holders may differ materially from that described below.  This summary also does not address the U.S. federal income tax consequences to Holders that are not Holders of Class 3, Class 4, Class 5, or Class 6 Claims.

For purposes of this discussion, a "U.S. Holder" is a Holder of a Claim that is: (1) an individual who is a citizen or resident of the United States for U.S. federal income tax purposes; (2) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (A) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one (1) or more United States persons have authority to control all substantial decisions of the trust or (B) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person. For purposes of this discussion, a "non-U.S. Holder" is any Holder of a Claim that is not a U.S. Holder and not a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity. Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are Holders of Claims should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE FEDERAL, STATE, LOCAL, AND NON-U.S. INCOME, ESTATE, AND OTHER TAX CONSEQUENCES OF THE PLAN.**

### B.    Certain U.S. Federal Income Tax Consequences to the Debtors

#### 1.    Asset Sale Transaction

The Plan provides for an Asset Sale Transaction. Pursuant to an Asset Sale Transaction, Debtors would recognize gain or loss upon the transfer in an amount equal to the difference between the fair market value of the assets sold and the Debtors' tax basis in such assets. To the extent any gains are recognized, such gains may be able to be offset, in whole or in part, by the Debtors' available tax attributes. As of the end of the 2022 fiscal year, the Debtors had approximately $1.6 billion of U.S. federal net operating losses (the "NOLs") and $143 million of disallowed business interest carryovers under section 163(j) of the Tax Code (the "163(j) Carryovers"). If the Debtors were to recognize gain in connection with an Asset Sale Transaction and such gain could not be entirely offset with available NOLs, 163(j) Carryovers, and other tax attributes, a cash tax liability could arise. The Debtors do not currently anticipate that a cash tax liability is likely to arise in connection with an Asset Sale Transaction, but that expectation depends on, among other things, the Debtors' determination that their tax attributes, and ability to claim losses in connection with sales of specific assets for an amount less than their tax basis, is not subject to limitation pursuant to section 382 of the Tax Code.

### 2. Cancellation of Debt and Reduction of Tax Attributes

In general, absent an exception, a taxpayer will realize and recognize cancellation of indebtedness income ("CODI") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of CODI, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (i) the amount of any cash (*i.e.*, the Distribution Proceeds) and (ii) the fair market value of any consideration (*i.e.*, the Liquidating Trust Assets underlying the Liquidating Trust Units), in each case, given in satisfaction of such indebtedness at the time of the exchange.

Under section 108 of the Tax Code, however, a Debtor will not be required to include any amount of CODI in gross income if the Debtor is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. Instead, as a result of such exclusion, the Debtor must reduce its tax attributes by the amount of CODI excluded from gross income pursuant to section 108 of the Tax Code. Such reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined. In general, tax attributes will be reduced in the following order: (a) NOLs and NOL carryovers; (b) general business credit carryovers; (c) capital loss carryovers; (d) tax basis in assets (but not below the amount of liabilities to which the Debtor will remain subject immediately after the discharge); (e) passive activity loss and credit carryovers; and (f) foreign tax credit carryovers. Alternatively, the Debtor may elect first to reduce the basis of its depreciable assets pursuant to section 108(b)(5) of the Tax Code. Any excess CODI over the amount of available tax attributes will generally not give rise to U.S. federal income tax and will generally have no other U.S. federal income tax impact.

### C. Certain U.S. Federal Income Tax Consequences to Certain U.S. Holders of Allowed Class 3, Class 4, Class 5, and Class 6 Claims

The following discussion assumes that the transactions contemplated by the Plan will occur. Holders of Claims and Interests are urged to consult their tax advisors regarding the tax consequences of the Plan.

### 1. U.S. Federal Income Tax Consequences for Holders of Allowed Class 3, Class 4, Class 5, and Class 6 Claims

Pursuant to the Plan, in exchange for full and final satisfaction, settlement, release and discharge of the Allowed Class 3, Class 4, Class 5, and Class 6 Claims, each Holder thereof will receive Cash and/or beneficial interests in the Liquidating Trust formed pursuant to Article VII.C of the Plan (such interests, the "Liquidating Trust Units").

Additionally, as further discussed below in Section E, the Debtors expect (and the Liquidating Trust documents shall provide) that the trustee(s) of the Liquidating Trust(s) will treat any Liquidating Trust as a grantor trust of which the applicable Holders of Allowed Claims, among others, are the grantors. Each U.S. Holder of an Allowed Claim receiving Liquidating Trust Units should accordingly be treated as having (a) received its share of the Liquidating Trust Assets from the Debtors and (b) contributed such assets to the Liquidating Trust in exchange for Liquidating Trust Units.

73

Each such U.S. Holder will be treated as exchanging such Allowed Class 3, Class 4, Class 5, or Class 6 Claim in a taxable exchange under section 1001 of the Tax Code for Cash and/or Liquidating Trust Units. Accordingly, subject to the rules regarding accrued but untaxed interest as discussed below, each U.S. Holder of such Claim should recognize gain or loss equal to the difference between (1) the amount of Cash and/or the fair market value of the Liquidating Trust Assets underlying the Liquidating Trust Units received, as applicable, in exchange for such Allowed Claim, and (2) such Holder's adjusted basis, if any, in such Allowed Claim.

Generally, the gain or loss recognized by a U.S. Holder with respect to an Allowed Class 3, Class 4, Class 5, or Class 6 Claim will be a capital gain or loss unless the Allowed Claim was acquired at a market discount (as discussed below) and depending on whether and the extent to which the Holder previously claimed a bad debt deduction. Any such capital gain or loss generally should be long-term if the U.S. Holder's holding period in the Allowed Claim is more than one (1) year and otherwise should be short-term. Under current U.S. federal income tax law, certain non-corporate U.S. Holders are eligible for preferential rates of U.S. federal income tax on long-term capital gains.

A U.S. Holder of an Allowed Class 3, Class 4, Class 5, or Class 6 Claim who recognizes capital losses as a result of the distributions under the Plan will be subject to limits on the use of such capital losses. For a non-corporate U.S. Holder, capital losses may be used to offset any capital gains (without regard to holding periods) and ordinary income to the extent of the lesser of (x) $3,000 ($1,500 for married individuals filing separate returns) or (y) the excess of the capital losses over the capital gains. A non-corporate U.S. Holder may carry over unused capital losses and apply them against future capital gains and a portion of their ordinary income in later years. For corporate U.S. Holders, capital losses may only be used to offset capital gains. A corporate U.S. Holder that has more capital losses than may be used in a tax year may carry back unused capital losses to the three (3) years preceding the capital loss year or may carry over unused capital losses for the five (5) years following the capital loss year.

A U.S. Holder of such Allowed Claims should obtain a tax basis in its share of each of the Liquidating Trust Assets received (if any) equal to the fair market value of such U.S. Holder's share of each of the Liquidating Trust Assets as of the date such property is treated as having been distributed to the U.S. Holder pursuant to the Plan. The holding period for the beneficial interest in these assets should begin on the day following the Effective Date.

2.      Accrued but Untaxed Interest

To the extent that any amount received by a U.S. Holder of a surrendered Allowed Class 3, Class 4, Class 5, or Class 6 Claim is attributable to accrued but untaxed interest on the debt instruments constituting the surrendered Allowed Claim, the receipt of such amount should be taxable to the U.S. Holder as ordinary interest income (to the extent not already taken into income by the U.S. Holder). Conversely, a U.S. Holder of an Allowed Claim may be able to recognize a deductible loss (or, possibly, a write off against a reserve for worthless debts) to the extent that any accrued interest previously was included in the U.S. Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this point.

74

If the fair value of the consideration is not sufficient to fully satisfy all principal and interest on an Allowed Class 3, Class 4, Class 5, or Class 6 Claim, the extent to which such consideration will be attributable to accrued interest is unclear.  Under the Plan, the aggregate consideration to be distributed to U.S. Holders of Allowed Class 3, Class 4, Class 5, and Class 6 Claims will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to unpaid interest that accrued on these Allowed Claims, if any.  Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes, while certain Treasury Regulations treat payments as allocated first to any accrued but unpaid interest.  The IRS could take the position that the consideration received by the U.S. Holder should be allocated in some way other than as provided in the Plan.  U.S. Holders of Allowed Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNTAXED INTEREST.**

3.    Market Discount

Under the "market discount" provisions of the Tax Code, some or all of any gain realized by a U.S. Holder of an Allowed Class 3, Class 4, Class 5, or Class 6 Claim who exchanges the Allowed Claim for an amount on the Effective Date may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Allowed Claim.  In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the U.S. Holder's adjusted tax basis in the debt instrument immediately after such acquisition is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, by at least a de minimis amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a U.S. Holder on the taxable disposition of an Allowed Class 3, Class 4, Class 5, or Class 6 Claim that had been acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Claim was considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

To the extent that the Allowed Claims that were acquired with market discount are exchanged in a tax-free transaction for other property, any market discount that accrued on the Allowed Claims (*i.e.*, up to the time of the exchange) but was not recognized by the U.S. Holder is carried over to the property received therefor and any gain recognized on the subsequent sale, exchange, redemption, or other disposition of the property is treated as ordinary income to the extent of the accrued, but not recognized, market discount with respect to the exchanged debt instrument.

4.      Ownership of Liquidating Trust Units

The U.S. federal income tax obligations of U.S. Holders of Allowed Claims receiving Liquidating Trust Units are not dependent on the Liquidating Trust distributing any Cash or other proceeds.  U.S. Holders of such Claims will be required to report on their U.S. federal income tax returns their share of the Liquidating Trust's items of income, gain, loss, deduction, and credit in the year recognized by the Liquidating Trust.  This requirement may result in such U.S. Holders being subject to tax on their allocable share of the Liquidating Trust's taxable income prior to receiving any cash distributions from the Liquidating Trust.  In general, a distribution of Cash by the Liquidating Trust will not be separately taxable to a holder of a beneficial interest in the Liquidating Trust since the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the Cash was earned or received by the Liquidating Trust).

5.      Distribution Reserve Accounts and Delayed Distributions

The Plan provides that certain distributions may be delayed while contingent, unliquidated, or disputed Claims are addressed.  Pending the resolution of such Claims, a portion of the property to be received by Holders of Claims or Interests may be deposited into the various Claim distribution accounts and "liquidating trusts" as described in the Plan (including the Combined Reserve, the WARN Reserve, and the General Account).  The property that is subject to delayed distribution will be subject to "disputed ownership fund" treatment under section 1.468B-9 of the Treasury Regulations as further discussed below in Section E.

**D.      Certain U.S. Federal Income Tax Consequences to Certain Non-U.S. Holders of Allowed Class 3, Class 4, Class 5, and Class 6 Claims**

The following discussion includes only certain U.S. federal income tax consequences of the Plan to non-U.S. Holders.  The discussion does not include any non-U.S. tax considerations. The rules governing the U.S. federal income tax consequences to non-U.S. Holders are complex. Each non-U.S. Holder should consult its own tax advisor regarding the U.S. federal, state, local and non-U.S. tax consequences of the consummation of the Plan to such non-U.S. Holder.

Whether a non-U.S. Holder realizes gain or loss on the exchange and the amount of such gain or loss is generally determined in the same manner as set forth above in connection with U.S. Holders.

1.      Gain Recognition

Other than with respect to any amounts received that are attributable to accrued but untaxed interest (or OID, if any), any gain realized by a non-U.S. Holder on the exchange of its Allowed Class 3, Class 4, Class 5, or Class 6 Claim pursuant to the Plan generally will not be subject to U.S. federal income taxation unless (a) the non-U.S. Holder is an individual who was present in the United States for 183 days or more during the taxable year in which the transactions contemplated by the Plan occur and certain other conditions are met or (b) such gain is effectively connected with the conduct by such non-U.S. Holder of a trade or business in the United States (and if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such non-U.S. Holder in the United States).

If the first exception applies, to the extent that any gain is taxable, the non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during the taxable year of the exchange. If the second exception applies, the non-U.S. Holder generally will be subject to U.S. federal income tax (and possibly withholding tax) with respect to any gain realized on the exchange if such gain is effectively connected with the non-U.S. Holder's conduct of a trade or business in the United States in the same manner as a U.S. Holder. In order to claim an exemption from withholding tax, such non-U.S. Holder will be required to provide a properly executed IRS Form W-8ECI (or such successor form as the IRS designates). In addition, if such a non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30% (or such lower rate provided by an applicable treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

2.    Accrued Interest

Subject to the discussion of FATCA below, payments to a non-U.S. Holder that are attributable to accrued but untaxed interest with respect to Claims generally will not be subject to U.S. federal income or withholding tax, *provided* that the withholding agent has received or receives, prior to payment, appropriate documentation (generally, IRS Form W-8BEN or W-8BEN-E) establishing that the non-U.S. Holder is not a U.S. person, unless:

(a)    the non-U.S. Holder actually or constructively owns 10% or more of the total combined voting power of all classes of the applicable Debtor's stock entitled to vote;

(b)    the non-U.S. Holder is a "controlled foreign corporation" that is a "related person" with respect to the applicable Debtor (each, within the meaning of the Tax Code);

(c)    the non-U.S. Holder is a bank receiving interest described in section 881(c)(3)(A) of the Tax Code; or

(d)    such interest is effectively connected with the conduct by the non-U.S. Holder of a trade or business within the United States (in which case, provided the non-U.S. Holder provides a properly executed IRS Form W-8ECI (or successor form) to the withholding agent, the non-U.S. Holder (x) generally will not be subject to withholding tax, but (y) will be subject to U.S. federal income tax in the same manner as a U.S. Holder (unless an applicable income tax treaty provides otherwise), and a non U.S. Holder that is a corporation for U.S. federal income tax purposes may also be subject to a branch profits tax with respect to such non-U.S. Holder's effectively connected earnings and profits that are attributable to the accrued interest at a rate of 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty)).

A non-U.S. Holder that does not qualify for the exemption from withholding tax with respect to accrued but untaxed interest that is not effectively connected income generally will be subject to withholding of U.S. federal income tax at a 30% rate (or at a reduced rate or exemption from tax under an applicable income tax treaty) on any payments that are attributable to accrued but untaxed interest.  For purposes of providing a properly executed IRS Form W-8BEN or W-8BEN-E, special procedures are provided under applicable Treasury Regulations for payments through qualified foreign intermediaries or certain financial institutions that hold customers' securities in the ordinary course of their trade or business.  As described above in more detail under the heading "*Accrued but Untaxed Interest*," the aggregate consideration to be distributed to holders of Allowed Class 3, Class 4, Class 5, and Class 6 Claims will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to unpaid interest that accrued on these Claims, if any.

### 3.      FATCA

Under the Foreign Account Tax Compliance Act ("FATCA"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account holders and investors or be subject to withholding at a rate of 30% on the receipt of "withholdable payments."  For this purpose, "withholdable payments" are generally U.S. source payments of fixed or determinable, annual or periodical income.  FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding.

Withholding with respect to the gross proceeds of a disposition of any stock, debt instrument, or other property that can produce U.S.-source dividends or interest has been eliminated under proposed Treasury Regulations, which can be relied on until final Treasury Regulations become effective.

Each non-U.S. Holder should consult its own tax advisor regarding the possible impact of these rules on such non-U.S. Holder's exchange of its Claim.

### E.      Tax Matters Regarding the Liquidating Trust.

The Plan provides that, among other things, under certain circumstances, assets may be transferred by the Debtors to a Liquidation Trust in order to facilitate the sale of such assets and the disposition of the proceeds thereof to Holders of Claims.  Such assets may either be subject to:

### 1.      Liquidating Trust Treatment

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of any Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly.  For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the

Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust. If the IRS were to challenge successfully the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax). For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the trustee(s) of the Liquidating Trust, and the holders of Claims receiving interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the

Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit).  Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items.  The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

2.     Disputed Ownership Fund Treatment

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account.  Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

F.     **Information Reporting and Back-Up Withholding**

The Debtors and Wind-Down Debtors will withhold all amounts required by law to be withheld from any distributions made under the Plan.  The Debtors and Wind-Down Debtors will comply with all applicable reporting requirements of the Tax Code.  In general, information reporting requirements may apply to distributions or payments made to a Holder of a Claim under the Plan.  Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan unless, in the case of a U.S. Holder, such U.S. Holder provides a properly executed IRS Form W-9 and, in the case of Non-U.S. Holder, such Non-U.S. Holder provides a properly executed applicable IRS Form W-8 (or otherwise establishes such Non-U.S. Holder's eligibility for an exemption).  Backup withholding is not an additional tax but is, instead, an advance payment that may entitle the Holder to a refund from the IRS to the extent it results in an overpayment of tax, *provided* that the required information is timely provided to the IRS.

In addition, from an information reporting perspective, the Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.  Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND**

**INCOME TAX SITUATION AND DOES NOT ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS THAT ARE NOT HOLDERS OF CLASS 3, CLASS 4, CLASS 5, OR CLASS 6 CLAIMS.  ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR NON-U.S. TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## XII.    RECOMMENDATION

In the opinion of the Debtors, the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtors' creditors than would otherwise result in any other scenario.  Accordingly, the Debtors recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation of the Plan.

Respectfully submitted, as of the date first set forth above,

BED BATH & BEYOND INC.
(on behalf of itself and all other Debtors)

Dated:  July 21, 2023

/s/ *Holly Etlin*
Holly Etlin
Chief Restructuring Officer
Bed Bath & Beyond Inc.

Prepared by:

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Plan of Reorganization**

**[Filed at Docket No. 1429]**

## <u>Exhibit B</u>

**Disclosure Statement Order**

*[Omitted]*

**Exhibit 2**

**Combined Hearing Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF COMBINED HEARING ON THE**
**DISCLOSURE STATEMENT, CONFIRMATION OF THE**
**PLAN FILED BY THE DEBTORS, AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

supplemented from time to time, the "<u>Plan</u>");[2] (b) conditionally approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "<u>Combined Hearing</u>") will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)**, or such other time that the Bankruptcy Court determines, before the Honorable Judge Vincent F. Papalia, in the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

> <u>**PLEASE BE ADVISED**</u>: THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

## <u>CRITICAL INFORMATION REGARDING VOTING ON THE PLAN</u>

**Voting Record Date**. The voting record date is **<u>July 28, 2023</u>** (the "<u>Voting Record Date</u>"), which is the date for determining which certain Holders of Claims are entitled to vote on the Plan.

**Voting Deadline**. The deadline for voting on the Plan is on **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Voting Deadline</u>"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **<u>actually</u> <u>received</u>** by the Debtors' notice and claims agent Kroll Restructuring Administration LLC (the "<u>Notice and Claims Agent</u>") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote**.

## <u>CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN</u>

**Objection Deadline**. The deadline for filing objections to the Plan or adequacy of the Disclosure Statement is **<u>September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)</u>** (the "<u>Combined Objection Deadline</u>"). All objections to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "<u>General Order</u>") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "<u>Supplemental Commentary</u>") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, upon the following parties so as to be **<u>actually</u> <u>received</u>** on or before the Combined Objection Deadline:

---

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

| Debtors |
|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin; and David Kastin |

| Counsel to the Debtors | Counsel to the Debtors |
|---|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C.,<br>Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn:  Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn:  Michael D. Sirota, Esq., Warren A. Usatine,<br>Esq., and Felice R. Yudkin, Esq. |

| Counsel to the Committee |
|---|
| **Pachulski Stang Ziehl & Jones LLP**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn:  Robert J. Feinstein and Bradford J. Sandler |

| United States Trustee |
|---|
| **Office of The United States Trustee**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102,<br>Attn: Fran Steele, John Schanne, and Alexandria Nikolinos |

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE X OF THE PLAN ONLY IF YOU (A) DO NOT VOTE TO ACCEPT THE PLAN AND (B) RETURN A BALLOT CHECKING THE BOX TO "OPT OUT" FROM THE THIRD-PARTY RELEASES.  SUBJECT TO ANY FINAL ORDER OF THE BANKRUPTCY COURT TO THE CONTRARY, REGARDLESS OF WHETHER THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE A RIGHT TO OPT OUT OF THE RELEASES, IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, OR (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR VOTE TO REJECT THE PLAN AND, IN EITHER CASE, FAIL TO CHECK THE BOX TO "OPT OUT" FROM THE THIRD PARTY RELEASES, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**.  The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received the materials in electronic format, or via email or in flash drive), please feel free to contact the Debtors' Notice and Claims Agent, by:  (a) calling the Notice and Claims Agent at (888) 570-5355 (U.S./Canada, Toll Free) or +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at

BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond, Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.  Please be advised that the Claims, Noticing, and Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Filing the Plan Supplement**.  The Debtors will file the Plan Supplement (as defined in the Plan) on or before the date that is fourteen (14) days prior to the Combined Hearing and will serve notice on all Holders of Claims entitled to vote on the Plan, which will:  (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

---

### BINDING NATURE OF THE PLAN

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

---

Dated: [_____], 2023

/s/
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:        msirota@coleschotz.com
                 wusatine@coleschotz.com
                 fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:        joshua.sussberg@kirkland.com
                 emily.geier@kirkland.com
                 derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit 3

**Solicitation and Voting Procedures**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**SOLICITATION AND VOTING PROCEDURES**

</div>

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement Relating to the*

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]     Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan, Disclosure Statement, or the *Debtors' Motion for Entry of an Order (I) (A) Conditionally Approving the Adequacy*

*Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined in the Order); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

(i)      **The Voting Record Date.**

The Bankruptcy Court has approved **July 28, 2023** as the record date for purposes of determining which Holders of Claims in Class 3, Class 4, Class 5, and Class 6 (each a "Voting Class," and together the "Voting Classes") are entitled to vote to accept or reject the Plan and receive Solicitation Packages in connection therewith and (ii) whether Claims have been properly assigned or transferred to any assignees pursuant to Bankruptcy Rule 3001(e) such that an assignee can vote as the Holder of a respective Claim.

(ii)     **The Voting Deadline.**

The Bankruptcy Court has approved **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** as the voting deadline for the Plan (the "Voting Deadline"). The Debtors may extend the Voting Deadline, in their discretion, without further order of the Bankruptcy Court. To be counted as votes to accept or reject the Plan, all ballots (the "Ballots"), other than pre-validated Beneficial Holder Ballots and Master Ballots for 2014 Senior Unsecured Notes Claims in Class 6 General Unsecured Claims ("Class 6 2014 Senior Unsecured Notes Claims") (in substantially the forms attached to the Order as Exhibit 5D and Exhibit 5E, respectively), must be executed, completed, and electronically submitted through the Notice and Claims Agent's online balloting portal, which can be accessed by visiting https://restructuring.ra.kroll.com/bbby/, clicking on the "Submit E- Ballot" section of the website, and completing the Ballot pursuant to the instructions set forth on the applicable Ballot so that they are **actually received** by Kroll Restructuring Administration LLC (the "Notice and Claims Agent") no later than the Voting Deadline.

**Other than with respect to Class 6 2014 Senior Unsecured Notes Claims, the online balloting portal is the sole manner in which Ballots will be accepted. Hard copy Ballots will not be accepted, and electronic Ballots will not be accepted by facsimile or electronic means (other than the online portal)**.

(iii)    **Form, Content, and Manner of Notices.**

1.       The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

- the Cover Letter;

- the Order (without exhibits, except for the Solicitation and Voting Procedures);

- the Disclosure Statement (and exhibits thereto, including the Plan);

- a Ballot, together with detailed voting instructions (to submit electronically);

- the Combined Hearing Notice (as defined in the Order); and

---

*of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in Connection Therewith, (D) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Certain Dates and Deadlines with Respect Thereto, and (E) Granting Related Relief, and (II) (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief* (the "Disclosure Statement Motion"), as applicable.

- such other materials as the Bankruptcy Court ordered to be made available.

2.    Distribution of the Solicitation Package.

The Debtors shall serve, or cause to be served, electronic copies of the Solicitation Package to Holders of Claims in the Voting Classes; *provided* that the Solicitation Package will be provided in paper format to Nominees[3] and Beneficial Holders[4] of Class 6 2014 Senior Unsecured Notes Claims.  In addition, these Solicitation and Voting Procedures, the Disclosure Statement, the Plan, the Order, and all pleadings filed with the Bankruptcy Court shall be made available on the Debtors' case website, https://restructuring.ra.kroll.com/bbby; *provided*, *further*, that any party that would prefer paper format may contact the Notice and Claims Agent by: calling the Notice and Claims Agent at (833) 570-5355 (Toll-free from US/Canada) or +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.

The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  In addition, the Debtors shall distribute, or cause to be distributed, within three (3) business days following entry of the Order (or as soon as reasonably practicable thereafter), the Solicitation Package to all Holders of Claims in the Voting Classes who are entitled to vote, as described in Section (iv).1 below; *provided* that except for Nominees and Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims, in lieu of providing the Solicitation Package materials in paper format and/or by flash drive, the Debtors will e-mail Holders of Claims entitled to vote on confirmation of the Plan with instructions on how to access electronic copies of their Ballots and the Solicitation Packages from the Notice and Claims Agent's website.  To the extent a Holder of a Claim or Interest is not entitled to vote on confirmation of the Plan, the Debtors will e-mail such Holders instructions on how to access electronic copies of the applicable Non-Voting Status Notice pursuant to 3017(d).  To the extent that the Debtors' records do not contain a Holder's e-mail address, the Debtors will provide service by mail to such Holder of a Claim or Interest of (i) the Cover Letter, Combined Hearing Notice, and applicable Ballot if the Holder falls into a Voting Class; or (ii) the Notice of Non-Voting Status if the Holder falls into a Non-Voting Class.  Additionally, any party that receives any materials in electronic format but would prefer paper format may contact the Notice and Claims Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

The Debtors will not distribute Solicitation Packages or other solicitation materials to (i) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court, (ii) any party to whom notice of the Motion was sent but was subsequently returned as undeliverable without a forwarding address by the Voting Record Date; or (iii) the Holders in Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests).

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or multiple Debtors) is entitled to vote once on account of such Claim.

3.    Resolution of Disputed Claims for Voting Purposes; Resolution Event.

a.    If a Claim in a Voting Class is subject to an objection that is filed with the Bankruptcy Court on or prior to seven (7) days before the Voting Deadline:  (i) the Debtors shall cause

---

[3]   A "Nominee" is a broker, bank, or other nominee, or the agent of a broker, bank, or other nominee for Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims.

[4]   A "Beneficial Holder" is a beneficial owner of Class 6 2014 Senior Unsecured Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company ("DTC") or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

the applicable Holder to be served with the *Notice of Non-Voting Status with Respect to Disputed Claims* substantially in the form annexed as <u>Exhibit 4C</u> to the Order; and (ii) the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein.

b.    If a Claim in a Voting Class is subject to an objection that is filed with the Bankruptcy Court less than seven (7) days prior to the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Bankruptcy Court, unless the Bankruptcy Court orders otherwise.

c.    A "<u>Resolution Event</u>" means the occurrence of one or more of the following events no later than two (2) business days prior to the Voting Deadline:

   i.    an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

   ii.    an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a);

   iii.    a stipulation or other agreement is executed between the Holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

   iv.    the pending objection is voluntarily withdrawn by the objecting party.

d.    No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Notice and Claims Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package to the relevant Holder.

4.    <u>Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan</u>.

a.    Certain Holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive the *Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan*, substantially in the form annexed as <u>Exhibit 4A</u> to the Order.  Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (***excluding*** Ballots), as well as how they may opt out of the Third-Party Release through the customized online balloting portal on the Debtors' case website (the "<u>E-Ballot Portal</u>").

b.    Certain Holders of Claims or Interests who are not entitled to vote because they are either deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of Non-Voting Status to Holders of Impaired Claims and Interests Deemed to Reject the Plan*, substantially in the form annexed as <u>Exhibit 4B</u> to the Order.  Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (***excluding*** Ballots), as well as how they may opt out of the Third-Party Release through the Notice and Claims Agent's E-Ballot Portal or opt-out portal designated for holders of publicly traded securities (the "<u>Public Securities Opt-Out Portal</u>").

c.    Certain Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their claims and will receive the *Notice of Non-Voting Status with Respect to Disputed Claims* substantially in the form annexed as <u>Exhibit 4C</u> to the Order.  Such notice will instruct these Holders as to how they may obtain copies of the documents

contained in the Solicitation Package (*excluding* Ballots), as well as how they may opt out of the Third-Party Release through the Notice and Claims Agent's E-Ballot Portal.

5.    Notices in Respect of Executory Contracts and Unexpired Leases.

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice to Contract Parties to Potentially Assumed Executory Contracts*, substantially in the form attached as Exhibit 8 to the Order, or a *Notice of Rejection of Executory Contracts and Unexpired Leases*, substantially in the form attached as Exhibit 9, to the Order may file an objection to the Debtors' proposed assumption, rejection, or cure amount, as applicable. Such objections must: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be **actually received** on or before **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** as set forth in the applicable notice of assumption or rejection.

**(iv)    Voting and Tabulation Procedures.**

1.    Holders of Claims Entitled to Vote.

Only (a) Holders of DIP Claims in Class 3 who are reflected on the DIP Agent's books and records as of the Voting Record Date, (b) Holders of FILO Claims in Class 4 who are reflected on the FILO Agent's books and records as of the Voting Record Date, (c) Holders of Junior Secured Claims in Class 5, and (d) Holders of General Unsecured Claims in Class 6 shall be entitled to vote with regard to such Claims.

2.    Establishing Claim Amounts for Voting Purposes.

**Class 3 Claims.** The Claims amount of Class 3 Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Class 3 Claim Holder, as applicable, as of the Voting Record Date, as evidenced by the applicable records provided by the DIP Agent in electronic Microsoft Excel format to the Debtors or the Notice and Claims Agent no later than one (1) business day following the Voting Record Date.

**Class 4 Claims.** The Claims amount of Class 4 Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Class 4 Claim Holder, as applicable, as of the Voting Record Date, as evidenced by the applicable records provided by the FILO Agent in electronic Microsoft Excel format to the Debtors or the Notice and Claims Agent no later than one (1) business day following the Voting Record Date.

**Class 5 Claims.** The Claims amount of Class 5 Claims, for voting purposes only, will be established based on the Claim amount contained in a Proof of Claim that has been timely filed by the applicable bar date (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, *however*, that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of a (i) contingent Claim or a Claim in a wholly unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Notice and Claims Agent) that is not the subject of a pending objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim, which Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, that to the extent that any Claim amount contained in a Proof of Claim is different from the Claim amount set forth in a document filed with the Bankruptcy Court that is (i) settled and/or agreed upon by the Debtors, (ii) set forth in an order of the Bankruptcy Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes. If a Holder of a Class 5 Claim does not timely file a Proof

of Claim by the applicable bar date, such Claim shall be disallowed for voting purposes. Furthermore, if a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall entitle the Holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim. Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules. Finally, the Debtors shall not be required to send the Solicitation Packages to creditors whose Claims (a) are filed in the amount of $0.00, (b) are based solely on amounts scheduled by the Debtors that have already been paid in the full scheduled amount, or (c) have been scheduled in a wholly unliquidated, contingent, or disputed amount and with respect to which such creditor did not timely file a Proof of Claim.

**Class 6 Claims Other than Class 6 2014 Senior Unsecured Notes Claims.** The Claims amount of Class 6 Claims for Class 6 Claims other than Class 6 2014 Senior Unsecured Notes Claims, for voting purposes only, will be established based on the Claim amount contained in a Proof of Claim that has been timely filed by the applicable bar date (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided, however*, that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of a (i) contingent Claim or a Claim in a wholly unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Notice and Claims Agent) that is not the subject of a pending objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim, which Claim will be Allowed for voting purposes only in the liquidated amount; *provided, further*, that to the extent that any Claim amount contained in a Proof of Claim is different from the Claim amount set forth in a document filed with the Bankruptcy Court that is (i) settled and/or agreed upon by the Debtors, (ii) set forth in an order of the Bankruptcy Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes. If a Holder of a Class 6 Claim does not timely file a Proof of Claim by the applicable bar date, such Claim shall be disallowed for voting purposes. Furthermore, if a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall entitle the Holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim. Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules. Finally, the Debtors shall not be required to send the Solicitation Packages to creditors whose Claims (a) are filed in the amount of $0.00, (b) are based solely on amounts scheduled by the Debtors that have already been paid in the full scheduled amount, or (c) have been scheduled in a wholly unliquidated, contingent, or disputed amount and with respect to which such creditor did not timely file a Proof of Claim.

**Class 6 2014 Senior Unsecured Notes Claims.** Claim amounts for voting purposes for Holders of Class 6 2014 Senior Unsecured Notes Claims will be established by reference to the books and records of the applicable indenture trustee, or, as the case may be, in the amount of such Claims held by each Beneficial Holder through its Nominee as of the Voting Record Date as evidenced by the securities position report(s) from the DTC or other applicable depository firm. For the purposes of tabulating votes, each Beneficial Holder shall be deemed (regardless of whether such Beneficial Holder includes interest and/or fees in the amount voted on its Ballot) to have voted only the principal amount of its Class 6 2024 Senior Unsecured Notes Claim(s).

3.    Voting and Ballot Tabulation Procedures.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a.    except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Notice and Claims Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

b.     the Notice and Claims Agent will date-stamp all Ballots when received.  The Notice and Claims Agent shall retain electronic copies of the Ballots for a period of two (2) years from the closing of the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court;

c.     the Debtors will file the Certification of Balloting by no later than three (3) days prior to the Combined Hearing.  The Certification of Balloting shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity (each an "Irregular Ballot"), including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged.  The Certification of Balloting shall indicate the Debtors' decision with regard to such Irregular Ballots.  Neither the Debtors nor any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Certification of Balloting nor will any of them incur any liability for failure to provide such notification, including, but not limited to, instances where a Ballot that is not a Master Ballot or pre-validated Beneficial Holder Ballot is submitted in hard copy format;

d.     the method of delivery of Ballots to be sent to the Notice and Claims Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Notice and Claims Agent actually receives the executed Ballot;

e.     an executed Ballot is required to be submitted by the Entity submitting such Ballot.  Delivery of a Ballot to the Notice and Claims Agent by facsimile, or any electronic means other than expressly provided in these Solicitation and Voting Procedures will not be valid;

f.     no Ballot should be sent to the Debtors, the Debtors' agents (other than the Notice and Claims Agent), or the Debtors' financial or legal advisors, and, if so sent, will not be counted;

g.     if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly submitted and valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

h.     Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

i.     a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

j.     the Debtors, subject to a contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Certification of Balloting or a supplemental certification of balloting as applicable;

k.     neither the Debtors nor any other Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Certification of Balloting nor will any of them incur any liability for failure to provide such notification;

l.      unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with submissions of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

m.      in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

n.      subject to any order of the Bankruptcy Court, the Debtors reserve the right to reject any and all Ballots not in proper form (including those submitted in paper format or other electronic means other than through the Debtors' case website), the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Certification of Balloting;

o.      if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Bankruptcy Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution;

p.      if an objection to a Claim or Interest is filed, such Claim or Interest shall be treated in accordance with the procedures set forth herein;

q.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim or Interest; (ii) any Ballot cast by any Entity that does not hold a Claim in the Voting Class; (iii) any unsigned Ballot; (iv) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; (v) except for Master Ballots and pre-validated Beneficial Holder Ballots (which may be submitted via email or hard copy) any Ballot transmitted by facsimile, email, hard copy, hand delivery, or any means other than the Notice and Claims Agent's E-Ballot portal; (vi) any Ballot sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' advisors (other than the Notice and Claims Agent);  and (vii) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

r.      after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors or further order of the Bankruptcy Court;

s.      any claimant who has filed or purchased Claims within the same Class relating to the same purported liability ("Duplicate Claims") only be entitled to vote once on account of the Duplicate Claim in that Class, regardless of whether the Debtors have objected to such Duplicate Claim; and

t.      the Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes.

4.      Master Ballot Solicitation, Voting, and Tabulation Procedures

In addition to the foregoing, generally applicable voting and ballot tabulation procedures, the following procedures shall apply to Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims who hold and will vote their position through a Nominee.

a.      the Notice and Claims Agent shall distribute or cause to be distributed through the applicable Nominees the appropriate number of copies of Beneficial Holder Ballots to Holders of Class 6 2014 Senior Unsecured Notes Claims as of the Voting Record Date;

b.      Nominees identified by the Notice and Claims Agent as Entities through which beneficial Holders hold their Class 6 2014 Senior Unsecured Notes Claims will be provided with (i) Solicitation Packages for each Beneficial Holder represented by the Nominee as of the Voting Record Date, which will contain, among other things, a Beneficial Holder Ballot for each Beneficial Holder, and (ii) Master Ballot for the Nominee;

c.      any Nominee that is a Holder of record with respect to Class 6 2014 Senior Unsecured Notes Claims shall vote on behalf of, or facilitate voting by, Beneficial Holders of such Claims, as applicable, either by (i) (a) immediately, and in any event within five business days after its receipt of the Solicitation Packages, distributing the Solicitation Packages, including Beneficial Holder Ballots, it receives from the Notice and Claims Agent to all such Beneficial Holders[5]; (b) providing such Beneficial Holders with a return address to send the completed Beneficial Holder Ballots; (c) compiling and validating the votes and other relevant information of all such Beneficial Holders on the Master Ballot; and (d) transmitting the Master Ballot to the Notice and Claims Agent so that it is received no later than the Voting Deadline, or (ii) if the Nominee elects to "pre-validate" the Beneficial Holder Ballots, immediately, and in any event, within five business days after receipt of the Solicitation Packages, distributing the Solicitation Packages it receives from the Notice and Claims Agent to all such Beneficial Holders, including in each package a Beneficial Holder Ballot that it has "pre-validated,"[6] and a return envelope provided by and addressed to the Notice and Claims Agent, so that the Beneficial Holder may complete and return the pre-validated Beneficial Holder Ballot directly to the Notice and Claims Agent so that it is received no later than the Voting Deadline;

d.      with respect to Class 6 2014 Senior Unsecured Notes Claims, the applicable Agents/Trustees will not be entitled to vote on behalf of a Beneficial Holder; rather, each Beneficial Holder must vote his or her own Class 6 2014 Senior Unsecured Notes Claims according to instruction received from its Nominee;

e.      any Plan votes returned to a Nominee, whether in a Beneficial Holder Ballot or otherwise according to the Nominee's instructions, by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Nominee properly completes and delivers to the Notice and Claims Agent a Master Ballot that reflects the vote of such Beneficial Holders so that it is received no later than the Voting Deadline or otherwise validates the Beneficial

---

[5]     Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each nominee.  Each Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices. If it is the Nominee's customary and accepted practice to submit a "voting instruction form" to the Beneficial Holders for the purpose of recording the Beneficial Holder's vote, the Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

[6]     A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including its DTC participant number and a medallion guarantee stamp validating the Beneficial Holder's position as of the Voting Record Date, indicating the account number of the Beneficial Holder and the principal amount of Class 6 2014 Senior Unsecured Notes Claims, held by the Nominee for such Beneficial Holder.

Holder Ballot in a manner acceptable to the Notice and Claims Agent. Nominees shall retain all Beneficial Holder Ballots returned by Beneficial Holders for a period of one year after the Effective Date of the Plan;

f.   if a Beneficial Holder holds a Class 6 2014 Senior Unsecured Notes Claim through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Beneficial Holder Ballot and each such Beneficial Holder should execute a separate Beneficial Holder Ballot for each block of Class 6 2014 Senior Unsecured Notes Claims that it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee;

g.   votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees in Class 6 2014 Senior Unsecured Notes Claims, as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from the DTC. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

h.   if conflicting votes or "over votes" are submitted by a Nominee pursuant to a Master Ballot, the Notice and Claims Agent will use reasonable efforts to reconcile discrepancies with the Nominees. If over votes on a Master Ballot are not reconciled before the preparation of the voting report tabulating votes on the Plan, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over vote, but only to the extent of the Nominee's position in Class 6 2014 Senior Unsecured Notes Claims;

i.   to assist in the solicitation process, the Notice and Claims Agent may, but is not required to, contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; provided, however, that the Notice and Claims Agent is not obligated to do so and neither the Debtors nor the Notice and Claims Agent will suffer any liability for failure to notify parties of such deficiencies;

j.   for purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of its Class 6 2014 Senior Unsecured Notes Claims, although any principal amounts may be adjusted by the Notice and Claims Agent to reflect the amount of the Claim actually voted, including prepetition interest;

k.   a single Nominee may complete and deliver to the Notice and Claims Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits more than one Ballot to its Nominee, (i) the latest received Beneficial Holder Ballot received before the submission deadline imposed by the Nominee shall be deemed to supersede any prior Beneficial Holder Ballot submitted by the Beneficial Holder, and (ii) the Nominee shall complete the Master Ballot accordingly; and

l.   no fees or commissions or other remuneration will be payable to any Nominee, broker, dealer, or other person for soliciting Beneficial Holder Ballots with respect to the Plan.

(v)    **Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, Rejection Notice, and any related documents without further order of the Bankruptcy Court, including changes to correct typographical and

11

grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

*       *       *       *       *

## Exhibit 4A

**Unimpaired Non-Voting Status Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF
UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

PLEASE TAKE FURTHER NOTICE THAT because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a Holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to the Plan or final approval of the adequacy of the Disclosure Statement is **September 1, 2023  at 4:00 p.m.  (prevailing Eastern Time)** (the "Combined Objection Deadline"). Any objection to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, upon the following parties so as to be **actually** **received** on or before the Combined Objection Deadline.

| Debtors |
|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin |

| *Counsel to the Debtors* | *Counsel to the Debtors* |
|---|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn:  Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn:  Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq. |

---

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

| *Counsel to the Committee* |
|---|
| **Pachulski Stang Ziehl & Jones LLP** |
| 780 Third Avenue, 34th Floor |
| New York, New York 10017 |
| Attn:  Robert J. Feinstein and Bradford J. Sandler |
| *United States Trustee* |
| **Office of The United States Trustee** |
| One Newark Center, 1085 Raymond Boulevard, Suite 2100 |
| Newark, New Jersey 07102 |
| Attn: Fran Steele, John Schanne, and Alexandria Nikolinos |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the Notice and Claims Agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada, Toll-Free) or +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE THAT ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**IF YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE, PLEASE COMPLETE, SIGN, AND DATE THE RELEASE OPT-OUT FORM ATTACHED AS ATTACHMENT A AND SUBMIT IT PROMPTLY THROUGH THE ONLINE E-BALLOT PORTAL ACCORDING TO THE INSTRUCTIONS SET FORTH ON THE RELEASE OPT-OUT FORM.**

**THE RELEASE OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. PREVAILING EASTERN TIME.**

**YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICING AND CLAIMS AGENT.**

Dated: [_____], 2023

/s/ _____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## <u>Attachment A</u>

**Release Opt-Out Form**

## OPTIONAL:  RELEASE OPT-OUT FORM

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a holder of a Claim that is not entitled to vote on the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "Plan"). **You are deemed to grant the Third-Party Release set forth below unless you affirmatively opt out by completing and returning this form in accordance with the directions herein or file an objection to the Third-Party Release with the Bankruptcy Court on or before September 1 2023 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.

**If you choose to opt out of the Third-Party Release set forth in Article X.D of the Plan, please promptly complete, sign, and date this Op-Out Form and electronically submit it** to Kroll Restructuring Administration LLC's  (the "Notice and Claims Agent") online voting portal (the "E-Ballot Portal") at https://restructuring.ra.kroll.com/Bbby.  Holders may only submit their Opt-Out Form through the Notice and Claims Agent's E-Ballot Portal, which can be accessed by visiting  https://restructuring.ra.kroll.com/bbby/, clicking on the "Submit E- Ballot" section of the website, and completing the Opt-Out Form in accordance with the applicable instructions.  Paper copies of this Opt-Out Form that are returned to the Debtors or the Notice and Claims Agent will not be counted and electronic copies that are submitted by facsimile or electronic means (other than the online E-Ballot Portal) will not be accepted.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**

**Unique Opt-Out ID#: _____**

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE").  IF THE OPT-OUT FORM IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt-out form, please contact the Notice and Claims Agent immediately by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Opt-Out Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.

**Article X.D of the Plan provides for a third-party release (the "Third-Party Release"):**

**As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany**

transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

\*        \*        \*

**Under the Plan**, "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

3

**Under the Plan**, "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

**Important information regarding the Third-Party Release:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN ONLY IF YOU (A) TIMELY SUBMIT THE FORM BELOW OR (B) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES **CONTAINED IN ARTICLE X OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.**  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**OPTIONAL RELEASE ELECTION.  YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN IF YOU CHECK THE BOX BELOW:**

> ☐ **By checking this box, you elect to opt OUT of the Third-Party Release**

**Certifications.**

By signing this Opt-Out Form, the undersigned certifies:

(a) that, as of the Voting Record Date, either:  (i) the undersigned is a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan or (ii) the undersigned is an authorized signatory of a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan;

(b) that the Holder has received a copy of the *Notice of Non-Voting Status to Holders of Unimpaired Claims or Interests Deemed to Accept the Plan* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has submitted the Release Opt-Out Form with respect to all of its Claims or Interests; and

(d) that no other Opt-Out Form with respect to these Claims or Interests has been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

If your address or contact information has changed, please note the new information here.

***IF YOU HAVE MADE THE OPTIONAL OPT-OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND SUBMIT IT *PROMPTLY* BY THE METHOD BELOW.**

> By electronic, online submission:
>
> To submit your Opt-Out Form via the online E-Ballot Portal, please visit https://restructuring.ra.kroll.com/bbby/, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Form.
>
> **IMPORTANT NOTE:  You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**
>
> **Unique Opt-Out ID#: _____**
>
> The E-Ballot Portal is the sole manner in which Opt-Out Forms will be accepted.  Opt-Out Forms submitted in hard copy format, or in electronic format by facsimile or email will not be counted.

---

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE THE VOTING DEADLINE.**

---

**Exhibit 4B**

**Impaired Non-Voting Status Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF NON-VOTING STATUS TO HOLDERS OF
### IMPAIRED CLAIMS AND INTERESTS DEEMED TO REJECT THE PLAN

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

supplemented from time to time, the "<u>Plan</u>");[2] (b) conditionally approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

      **PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a Holder of a Claim or Interest (as currently asserted against the Debtors) that is receiving no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

      **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the adequacy of the Disclosure Statement (the "<u>Combined Hearing</u>") will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

      **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Combined Objection Deadline</u>"). Any objection to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "<u>General Order</u>") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "<u>Supplemental Commentary</u>") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be **actually** **received** on or before the Combined Objection Deadline.

| *Debtors* | |
|---|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin | |
| *Counsel to the Debtors* | *Counsel to the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C.,<br>Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn: Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Esq., Warren A. Usatine,<br>Esq., and Felice R. Yudkin, Esq. |

---

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

| *Counsel to the Committee* |
|:---:|
| **Pachulski Stang Ziehl & Jones LLP** |
| 780 Third Avenue, 34th Floor |
| New York, New York 10017 |
| Attn:  Robert J. Feinstein; Bradford J. Sandler; Paul J. Labov; and Colin R. Robinson |

| *United States Trustee* |
|:---:|
| **Office of The United States Trustee** |
| One Newark Center, 1085 Raymond Boulevard, Suite 2100 |
| Newark, New Jersey 07102 |
| Attn:  Fran Steele, John Schanne, and Alexandria Nikolinos |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free) or +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**PLEASE TAKE FURTHER NOTICE THAT <u>ARTICLE X</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND <u>ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE</u>.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

IF YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE, PLEASE COMPLETE, SIGN, AND DATE THE RELEASE OPT-OUT FORM ATTACHED AS **ATTACHMENT A** AND SUBMIT IT PROMPTLY THROUGH THE DEBTORS' CASE WEBSITE ACCORDING TO THE INSTRUCTIONS SET FORTH ON THE RELEASE OPT-OUT FORM.

THE RELEASE OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. PREVAILING EASTERN TIME.

YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

Dated: [_____], 2023

_/s/_ _____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted _pro hac vice_)
Emily E. Geier, P.C. (admitted _pro hac vice_)
Derek I. Hunter (admitted _pro hac vice_)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       joshua.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

_Co-Counsel for Debtors and_
_Debtors in Possession_

**<u>Attachment A</u>**

**Release Opt-Out Form**

## OPTIONAL:  RELEASE OPT-OUT FORM

You are receiving this opt-out form (the "Opt-Out Form") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "Plan").  **You are deemed to grant the Third-Party Release set forth below unless you affirmatively opt out by completing and returning this form in accordance with the directions herein or file an objection to the Third-Party Release with the Bankruptcy Court <u>on or before</u> September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS OPT-OUT FORM.

**If you choose to opt out of the Third-Party Release set forth in Article X.D of the Plan, please promptly complete, sign, and date this Opt-Out Form and electronically submit it** to Kroll Restructuring Administration LLC's (the "Notice and Claims Agent") online voting portal (the "E-Ballot Portal") or the opt-out portal designated for holders of publicly traded securities (the "Public Securities Opt-Out Portal") at https://restructuring.ra.kroll.com/bbby.  Holders may only submit their Opt-Out Form through the Notice and Claims Agent's online E-Ballot Portal or Public Securities Opt-Out Portal, which can be accessed by visiting https://restructuring.ra.kroll.com/bbby/, clicking on the "Submit E- Ballot" or "Public Securities Opt-Out" section of the website, and completing the Opt-Out Form in accordance with the applicable instructions.  Paper copies of this Opt-Out Form that are returned to the Debtors or the Notice and Claims Agent will not be counted and electronic copies that are submitted by facsimile or electronic means (other than the online Ballot Portal) will not be accepted.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**

**Unique Opt-Out ID#:  _____**

**Please note that Holders of publicly traded securities in <u>Class 8 (Interests in BBB)</u> do not require a Unique Opt-Out ID to submit an opt-out election through the Public Securities Opt-Out Portal.**

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE").  IF THE OPT-OUT FORM IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt-out form, please contact the Notice and Claims Agent immediately by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S. /Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Opt-Out Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.

<u>Article X.D of the Plan provides for a third-party release (the "Third-Party Release"):</u>

As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of

executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

\*       \*       \*

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with

respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

**Under the Plan**, "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

**Important information regarding the Third-Party Release:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN <u>ONLY IF</u> YOU (A) TIMELY SUBMIT THE FORM BELOW OR (B) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES **CONTAINED IN ARTICLE X OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.**  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**<u>OPTIONAL RELEASE ELECTION</u>.  YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN <u>IF</u> YOU CHECK THE BOX BELOW:**

> ☐  **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Release**

**<u>Certifications.</u>**

By signing this Opt-Out Form, the undersigned certifies:

> (a)  that, as of the Voting Record Date, either:  (i) the undersigned is a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan or (ii) the undersigned is an authorized signatory of a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan;

(b)  that the Holder has received a copy of the *Notice of Non-Voting Status to Holders of Unimpaired Claims or Interests Deemed to Reject the Plan* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

(c)  that the undersigned has submitted the Release Opt-Out Form with respect to all of its Claims or Interests; and

(d)  that no other Opt-Out Form with respect to these Claims or Interests has been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-Out Forms are hereby revoked.

| Name of Holder: | |
|---|---|
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

If your address or contact information has changed, please note the new information here.

**IF YOU HAVE MADE THE OPTIONAL OPT-OUT ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND SUBMIT IT *PROMPTLY* BY THE METHOD BELOW.**

> By electronic, online submission:
>
> To submit your Opt-Out Form via the online E-Ballot Portal, please visit https://restructuring.ra.kroll.com/bbby, click on the "Submit E-Ballot" or "Public Securities Opt-Out" section of the website (as applicable) and follow the instructions to submit your Opt-Out Form.
>
> **IMPORTANT NOTE:  You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**
>
> **Unique Opt-Out ID#: _____**
>
> **Please note that holders of publicly traded securities in Class 8 (Interests in BBB) do not require a Unique Opt-Out ID to submit an opt-out election through the Public Securities Opt-Out Portal.**
>
> The E-Ballot Portal and Public Securities Opt-Out Portal are the sole manner in which Opt-Out Forms will be accepted.  Opt-Out Forms submitted in hard copy format, or in electronic format by facsimile or email will not be counted.

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE
THIS OPT-OUT FORM ON OR BEFORE THE VOTING DEADLINE.**

**Please note that if you are a Holder of Class 8 (Interests in BBB) and hold a position in one of the securities described in the chart below through DTC or another similar securities depository, you may not submit an opt-out election through the "Submit E-Ballot" section of the website and must click on the "Public Securities Opt-Out" link located on the left-hand navigation panel of the Debtors' restructuring website at https://restructuring.ra.kroll.com/bbby/ to submit an electronic version of your Opt-Out Form.**

| DESCRIPTION | CUSIP/ISIN |
|---|---|
| Common Stock | 075896100 / US0758961009 |
| Warrant | 075896118 / US0758961181 |
| Series A Convertible Preferred Stock | 075896209 / US0758962098 |

## <u>Exhibit 4C</u>

**Notice to Disputed Claim Holders**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIMS**

        **PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended,

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

| Debtors | |
|---|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin | |
| *Counsel to the Debtors* | *Counsel to the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C.,<br>Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn:  Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn:  Michael D. Sirota, Esq., Warren A. Usatine,<br>Esq., and Felice R. Yudkin, Esq. |
| *Counsel to the Committee* | |
| **Pachulski Stang Ziehl & Jones LLP**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn:  Robert J. Feinstein; Bradford J. Sandler; Paul J. Labov; and Colin R. Robinson | |
| *United States Trustee* | |
| **Office of The United States Trustee**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102<br>Attn:  Fran Steele, John Schanne, and Alexandria Nikolinos | |

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

PLEASE TAKE FURTHER NOTICE THAT you are receiving this notice because you are the Holder of a Claim that is subject to a pending objection by the Debtors.  **You are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before a date that is two (2) business days before the Voting Deadline** (each, a "Resolution Event"):

2

1.  an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

2.  an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

3.  a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

4.  the pending objection to such Claim is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the adequacy of the Disclosure Statement (the "Combined Hearing") will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

**PLEASE TAKE FURTHER NOTICE THAT** if a Resolution Event occurs, then no later than two (2) business days thereafter, the Notice and Claims Agent shall distribute a ballot, which must be returned to the Notice and Claims Agent through the E-Ballot portal no later than the Voting Deadline, which is on **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Notice and Claims Agent in accordance with the instructions provided above.

---

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE X OF THE PLAN USING THE ENCLOSED RELEASE OPT OUT FORM, AS ATTACHMENT A, OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE THIRD-PARTY RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

Dated: [_____], 2023

/s/
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## Attachment A

**Release Opt-Out Form**

## OPTIONAL:  RELEASE OPT-OUT FORM

You are receiving this opt out form (the "<u>Opt-Out Form</u>") because you are or may be a holder of a Claim that is not entitled to vote on the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "<u>Plan</u>").  **You are deemed to grant the Third-Party Release set forth below unless you affirmatively opt out by completing and returning this form in accordance with the directions herein or file an objection to the Third-Party Release with the Bankruptcy Court <u>on or before</u> September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS OPT-OUT FORM.

**If you choose to opt out of the Third-Party Release set forth in Article X.D of the Plan, please promptly complete, sign, and date this Opt-Out Form and electronically submit it** to Kroll Restructuring Administration LLC's (the "<u>Notice and Claims Agent</u>") online voting portal (the "<u>E-Ballot Portal</u>") at <u>https://restructuring.ra.kroll.com/Bbby</u>.  Holders may only submit their Opt-Out Form through the Notice and Claims Agent's E-Ballot Portal, which can be accessed by visiting <u>https://restructuring.ra.kroll.com/bbby/</u>, clicking on the "Submit E- Ballot" section of the website, and completing the Opt-Out Form in accordance with the applicable instructions.  Paper copies of this Opt-Out Form that are returned to the Debtors or the Notice and Claims Agent will not be counted and electronic copies that are submitted by facsimile or electronic means (other than the online Ballot Portal) will not be accepted.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**

**Unique Opt-Out ID#: _____**

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>VOTING DEADLINE</u>").  IF THE OPT-OUT FORM IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt-out form, please contact the Notice and Claims Agent immediately by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at <u>BBBYInfo@ra.kroll.com</u> with a reference to "In re: Bed Bath & Beyond Inc. - Opt-Out Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.

<u>**Article X.D of the Plan provides for a third-party release (the "Third-Party Release"):**</u>

**As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany**

transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

<p style="text-align:center">*        *        *</p>

**Under the Plan**, "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

<p style="text-align:center">2</p>

**Under the Plan,** "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

**Important information regarding the Third-Party Release:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN ONLY IF YOU (A) TIMELY SUBMIT THE FORM BELOW OR (B) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES **CONTAINED IN ARTICLE X OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.** THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**OPTIONAL RELEASE ELECTION.  YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN IF YOU CHECK THE BOX BELOW:**

---
☐  **By checking this box, you elect to opt OUT of the Third-Party Release**
---

**Certifications.**

By signing this Opt-Out Form, the undersigned certifies:

    (a) that, as of the Voting Record Date, either:  (i) the undersigned is a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan or (ii) the undersigned is an authorized signatory of a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan;

    (b) that the Holder has received a copy of the *Notice of Non-Voting Status to Holders of Unimpaired Claims or Interests Deemed to Accept the Plan* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

    (c) that the undersigned has submitted the Release Opt-Out Form with respect to all of its Claims or Interests; and

(d)  that no other Opt-Out Form with respect to these Claims or Interests has been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

If your address or contact information has changed, please note the new information here.

***IF YOU HAVE MADE THE OPTIONAL OPT-OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND SUBMIT IT *PROMPTLY* BY THE METHOD BELOW.**

---

By electronic, online submission:

To submit your Opt-Out Form via the online E-Ballot Portal, please visit https://restructuring.ra.kroll.com/bbby/, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Opt-Out Form.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**

**Unique Opt-Out ID#: _____**

The E-Ballot Portal is the sole manner in which Opt-Out Forms will be accepted.  Opt-Out Forms submitted in hard copy format, or in electronic format by facsimile or email will not be counted.

---

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE THE VOTING DEADLINE.**

**<u>Exhibit 5A</u>**

**Form of Ballot for Holders of
Class 3 DIP Claims and Class 4 FILO Claims**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

**CLASS 3-DIP CLAIMS AND CLASS 4-FILO CLAIMS**

</div>

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023, AT 4:00 P.M., (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE").**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND SUBMIT *PROMPTLY* BY THE METHOD BELOW.**

By electronic, online submission:

To submit your Ballot via the online E-Ballot Portal, please visit https://restructuring.ra.kroll.com/bbby, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized Ballot:**

**Unique E-Ballot ID#_____**

The E-Ballot Portal is the sole manner in which Ballots will be accepted. Ballots submitted in hard copy format, or in electronic format by facsimile or email will not be counted.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, Class 5, and Class 6 (each a "Voting Class," and together, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in the particular Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan would then be binding on all Holders of Allowed Claims in the Voting Classes, among others.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (the "Ballot") because you are the Holder (as defined below) of a DIP Claim and FILO Claim as of **July 28, 2023** (the "Voting Record Date").  **For additional discussion of the treatment of your Claims under the Plan and the rights of Holders of DIP Claims and FILO Claims under the Plan, please read the Disclosure Statement.**

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kroll Restructuring Administration LLC (the "Notice and Claims Agent"), at no charge by:  (i) accessing the Debtors' restructuring

website at https://restructuring.ra.kroll.com/bbby; (ii) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (iii) calling (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International); or (iv) emailing BBBYInfo@ra.kroll.com and referencing "In re Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line; or (b) by visiting the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, please contact the Notice and Claims Agent *immediately* at the address, telephone number, or email address set forth above.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims and Interests.  To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Notice and Claims Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

<u>Item 1</u>.    **Amount of Class 3 DIP Claims and Class 4 FILO Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of both a Class 3 DIP Claim and Class 4 FILO Claim in the following aggregate principal amount:

| |
|---|
| Amount of Class 3 DIP Claims:  $_____ |
| Amount of Class 4 FILO Claims:  $_____ |

<u>Item 2</u>.    **Recovery.**

- **Class 3**: Pursuant to <u>Article III</u> of the Plan, each Holder of an Allowed DIP Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim:

  (i)  Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order).  The Liens securing the DIP Claims shall not be released and discharged until Payment in Full of the DIP Claims.

- **Class 4**: Pursuant to <u>Article III</u> of the Plan, each Holder of an Allowed FILO Claim shall receive in full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), to the extent not already indefeasibly paid in full in cash or "rolled up" or converted into DIP Obligations prior to the Effective Date:

4

(i) Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claim is Paid in Full (as defined in the Final DIP Order).  The Liens securing the FILO Claims shall not be released and discharged until Payment in Full of the FILO Claims.

**Item 3.**    **Vote on Plan.**

The Holder of the Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

**Class 3 DIP Claims and Class 4 FILO Claims:**

☐   **<u>ACCEPT</u>** (vote FOR) the Plan          ☐   **<u>REJECT</u>** (vote AGAINST) the Plan

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1, above, and this Item 3 for both Class 3 DIP Claims and Class 4 FILO Claims.**</u>

**Item 4.**    **Certifications.**

By signing this Ballot the undersigned certifies that:

1.    they are (a) the Holder of a (i) Class 3 DIP Claim and (ii) Class 4 FILO Claim being voted, or (b) the authorized signatory for an entity that is a Holder of such Claim;

2.    the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.    the undersigned has cast the same vote with respect to all of its Class 3 DIP Claims and Class 4 FILO Claims, as applicable, in connection with the Plan; and

4.    (a) no other Ballot with respect to the same Class 3 DIP Claims and Class 4 FILO Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Class 3 DIP Claims and Class 4 FILO Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

| Name of Holder: | |
|---|---|
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the holder) |
| Title: | |
| Address: | |
| | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

---

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE
THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

*[Remainder of page intentionally left blank; continued to next page.]*

6

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of certain Holders of Class 3 DIP Claims, Class 4 FILO Claims, Class 5 Junior Secured Claims, and Class 6 General Unsecured Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon the Holders if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This Ballot contains voting options with respect to the Plan.

4.  To vote, you MUST:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Notice and Claims Agent's online voting portal as described more fully below.

5.  **Use of Online Ballot Portal**.  To ensure that your electronic Ballot is counted, please visit the Notice and Claims Agent's online voting portal at https://restructuring.ra.kroll.com/bbby (the "E-Ballot Portal"), click on the "Submit E- Ballot" section of the website, and follow the instructions to submit your Ballot.  You will need to enter your Unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted.  **Hard copy Ballots will not be accepted, and electronic Ballots will not be accepted by facsimile or electronic means (other than the online portal)**.  Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

6.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will NOT be counted unless the Debtors otherwise determine.

7.  To vote, you MUST deliver your completed Ballot so that it is **ACTUALLY RECEIVED** by the Notice and Claims Agent on or before the Voting Deadline by one of the methods described above.  The Voting Deadline is **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

8.  Any Ballot received by the Notice and Claims Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

9.  Delivery of a Ballot reflecting your vote to the Notice and Claims Agent will be deemed to have occurred only when the Notice and Claims Agent actually receives the Ballot (for the avoidance of doubt, a Ballot submitted via the Ballot Portal shall be deemed to contain a signature).  In all cases, you should allow sufficient time to assure timely submission.

10.  If you submit multiple Ballots to the Notice and Claims Agent, ONLY the last properly submitted Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s).

11.  You must vote all of your Class 3 DIP Claims and Class 4 FILO Claims either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims within Class 3 or Class 4, the Debtors may direct the Notice and Claims Agent to aggregate the Claims of any particular Holder within Class 3 or Class 4 for the purpose of counting votes.

12. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

13. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

14. <u>SIGN AND DATE</u> your Ballot.[2]  Please provide your name and mailing address in the space provided on this Ballot if it is different from that set forth on the Ballot or if no address is presented on the Ballot.

<center><b>PLEASE RETURN YOUR BALLOT PROMPTLY</b></center>

<b>IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570-5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.</b>

---

<center><b>THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).</b>

<b>THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE THIS
BALLOT ON OR BEFORE THE VOTING DEADLINE.</b></center>

---

[2]    If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Notice and Claims Agent, the Debtors, the Debtors' counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

<center>8</center>

## **<u>Exhibit 5B</u>**

**Form of Ballot for Holders of
Class 5 Junior Secured Claims**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

**CLASS 5-JUNIOR SECURED CLAIMS**

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023, AT 4:00 P.M., (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE").**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND SUBMIT *PROMPTLY* BY THE METHOD BELOW.**

By electronic, online submission:

To submit your Ballot via the online E-Ballot Portal, please visit https://restructuring.ra.kroll.com/bbby, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized Ballot:**

**Unique E-Ballot ID#_____**

The E-Ballot Portal is the sole manner in which Ballots will be accepted. Ballots submitted in hard copy format, or in electronic format by facsimile or email will not be counted.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, Class 5, and Class 6 (each a "Voting Class," and together, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in the particular Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan would then be binding on all Holders of Allowed Claims in the Voting Classes, among others.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (the "Ballot") because you are the Holder (as defined below) of a Class 5 Junior Secured Claim as of **July 28, 2023** (the "Voting Record Date").  **For additional discussion of the treatment of your Claims under the Plan and the rights of Holders of Class 5 Junior Secured Claims under the Plan, please read the Disclosure Statement.**

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kroll Restructuring Administration LLC (the "Notice and Claims Agent"), at no charge by:  (i) accessing the Debtors' restructuring

3

website at https://restructuring.ra.kroll.com/bbby; (ii) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (iii) calling (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International); or (iv) emailing BBBYInfo@ra.kroll.com and referencing "In re Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line; or (b) by visiting the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, please contact the Notice and Claims Agent *immediately* at the address, telephone number, or email address set forth above.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims and Interests. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Notice and Claims Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

<u>Item 1</u>.    **Amount of Class 5 Junior Secured Claims**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Class 5 Junior Secured Claim in the following aggregate principal amount:

> Amount of Class 5 Junior Secured Claims: $_____

<u>Item 2</u>.    **Recovery.**

- **Class 5**: Pursuant to <u>Article III</u> of the Plan, each Holder of an Allowed Junior Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim:

  (i)   its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) and are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

<u>Item 3</u>.    **Vote on Plan.**

The Holder of the Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

> ☐   <u>**ACCEPT**</u> (vote FOR) the Plan          ☐   <u>**REJECT**</u> (vote AGAINST) the Plan

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above. Furthermore, please note that your vote to accept or reject the Plan on account of your Class 5- Junior Secured Claim will also be applied to your Junior Secured Deficiency Claim, which will be tabulated as a Class 6 – General Unsecured Claim.</u>**

**Item 4.** **Important information regarding the Third-Party Release.**[2]

**YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN SET FORTH BELOW, UNLESS YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE BOX BELOW AND SUBMITTING THIS BALLOT BY THE VOTING DEADLINE.**

**Article X.D of the Plan provides for a third-party release (the "Third-Party Release"):**

> As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or

---

[2]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

Under the Plan, "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

<p align="center">*      *      *</p>

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**<u>OPTIONAL RELEASE ELECTION</u>. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW:**

| |
|---|
| ☐ **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Release** |

<u>Item 5</u>. **Certifications.**

By signing this Ballot the undersigned certifies that:

1. they are (a) the Holder of a Class 5 Junior Secured Claim being voted, or (b) the authorized signatory for an entity that is a Holder of such Claim;

<p align="center">6</p>

2.  the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.  the undersigned has cast the same vote with respect to all of its Class 5 Junior Secured Claims, as applicable, in connection with the Plan; and

4.  (a) no other Ballot with respect to the same Class 5 Junior Secured Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Class 5 Junior Secured Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than the holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

---

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE
THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

*[Remainder of page intentionally left blank; continued to next page.]*

8

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of certain Holders of Class 3 DIP Claims, Class 4 FILO Claims, Class 5 Junior Secured Claims, and Class 6 General Unsecured Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon the Holders if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This Ballot contains voting options with respect to the Plan.

4.  To vote, you MUST:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Notice and Claims Agent's online voting portal as described more fully below.

5.  **Use of Online Ballot Portal**.  To ensure that your electronic Ballot is counted, please visit the Notice and Claims Agent's online voting portal at https://restructuring.ra.kroll.com/bbby (the "E-Ballot Portal"), click on the "Submit E- Ballot" section of the website, and follow the instructions to submit your Ballot.  You will need to enter your Unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted.  **Hard copy Ballots will not be accepted, and electronic Ballots will not be accepted by facsimile or electronic means (other than the online portal)**.  Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

6.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will NOT be counted unless the Debtors otherwise determine.

7.  To vote, you MUST deliver your completed Ballot so that it is **ACTUALLY RECEIVED** by the Notice and Claims Agent on or before the Voting Deadline by one of the methods described above.  The Voting Deadline is **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

8.  Any Ballot received by the Notice and Claims Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

9.  Delivery of a Ballot reflecting your vote to the Notice and Claims Agent will be deemed to have occurred only when the Notice and Claims Agent actually receives the Ballot (for the avoidance of doubt, a Ballot submitted via the Ballot Portal shall be deemed to contain a signature).  In all cases, you should allow sufficient time to assure timely submission.

10. If you submit multiple Ballots to the Notice and Claims Agent, ONLY the last properly submitted Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s).

11. You must vote all of your Class 5 Junior Secured Claims either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims within Class 5, the Debtors may direct the Notice and Claims Agent to aggregate the Claims of any particular Holder within Class 5 for the purpose of counting votes.

12. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

13. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

14. <u>SIGN AND DATE</u> your Ballot.[3]  Please provide your name and mailing address in the space provided on this Ballot if it is different from that set forth on the Ballot or if no address is presented on the Ballot.

<div align="center">

**PLEASE RETURN YOUR BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570-5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

</div>

---

<div align="center">

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

</div>

---

[3]   If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Notice and Claims Agent, the Debtors, the Debtors' counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## Exhibit 5C

**Form of Ballot for Holders of
Class 6 General Unsecured Claims**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

**CLASS 6-GENERAL UNSECURED CLAIMS**

</div>

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS BALLOT
MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE
*ACTUALLY RECEIVED* BY THE NOTICE AND
CLAIMS AGENT BY SEPTEMBER 1, 2023, AT 4:00 P.M.,
(PREVAILING EASTERN TIME) (THE "VOTING DEADLINE").**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND SUBMIT
*PROMPTLY* BY THE METHOD BELOW.**

By electronic, online submission:

To submit your Ballot via the online E-Ballot Portal, please visit
https://restructuring.ra.kroll.com/bbby, click on the "Submit E-Ballot" section
of the website, and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:   You will need the following information to
retrieve and submit your customized Ballot:**

**Unique E-Ballot ID#_____**

The E-Ballot Portal is the sole manner in which Ballots will be accepted.
Ballots submitted in hard copy format, or in electronic format by facsimile or
email will not be counted.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, Class 5, and Class 6 (each a "Voting Class," and together, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in the particular Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan would then be binding on all Holders of Allowed Claims in the Voting Classes, among others.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (the "Ballot") because you are the Holder (as defined below) of a Class 6 General Unsecured Claim as of **July 28, 2023** (the "Voting Record Date").  **For additional discussion of the treatment of your Claims under the Plan and the rights of Holders of Class 6 General Unsecured Claim under the Plan, please read the Disclosure Statement.**

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kroll Restructuring Administration LLC (the "Notice and Claims Agent"), at no charge by:  (i) accessing the Debtors' restructuring

website at https://restructuring.ra.kroll.com/bbby; (ii) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (iii) calling (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International); or (iv) emailing BBBYInfo@ra.kroll.com and referencing "In re Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line; or (b) by visiting the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, please contact the Notice and Claims Agent *immediately* at the address, telephone number, or email address set forth above.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims and Interests. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Notice and Claims Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

Item 1.    **Amount of Class 6 General Unsecured Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 6 General Unsecured Claims in the following aggregate principal amount:

> Amount of Class 6 General Unsecured Claims: $_____
>
> Debtor:_____

Item 2.    **Recovery.**

• **Class 6**: Pursuant to Article III of the Plan, each Holder of an Allowed Class 6 General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim:

   (i)    its *Pro Rata* share of (i) the Shared Proceeds Pool, *only if* such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

Item 3.    **Vote on Plan.**

The Holder of the Claims against the Debtors set forth in Item 1 votes to (please check one):

> ☐  **ACCEPT** (vote FOR) the Plan          ☐  **REJECT** (vote AGAINST) the Plan

**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1, above, and this Item 3.**

<u>Item 4</u>.    **Important information regarding the Third-Party Release.**[2]

**AS A "<u>RELEASING PARTY</u>" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN SET FORTH BELOW, UNLESS YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE BOX BELOW AND SUBMITTING THIS BALLOT BY THE VOTING DEADLINE.**

**<u>Article X.D of the Plan provides for a third-party release (the "Third-Party Release"):</u>**

**As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED**

---

[2]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

Under the Plan, "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

<div align="center">*      *      *</div>

IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN **ONLY IF** YOU CHECK THE BOX BELOW:

| |
|---|
| ☐  By checking this box, you elect to opt **OUT** of the Third-Party Release |

**Item 5.**    **Certifications.**

By signing this Ballot the undersigned certifies that:

1.    they are (a) the Holder of a Class 6 General Unsecured Claim being voted, or (b) the authorized signatory for an entity that is a Holder of such Claim;

2.    the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.    the undersigned has cast the same vote with respect to all of its Class 6 General Unsecured Claims, as applicable, in connection with the Plan; and

4.    (a) no other Ballot with respect to the same Class 6 General Unsecured Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Class 6 General Unsecured Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the holder) |
| Title: | |
| Address: | |
| | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE
THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

*[Remainder of page intentionally left blank; continued to next page.]*

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of certain Holders of Class 3 DIP Claims, Class 4 FILO Claims, Class 5 Junior Secured Claims, and Class 6 General Unsecured Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon the Holders if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This Ballot contains voting options with respect to the Plan.

4.  To vote, you <u>MUST</u>:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Notice and Claims Agent's online voting portal as described more fully below.

5.  **<u>Use of Online Ballot Portal</u>**.  To ensure that your electronic Ballot is counted, please visit the Notice and Claims Agent's online voting portal at https://restructuring.ra.kroll.com/bbby (the "E-<u>Ballot Portal</u>"), <u>click on the</u> "Submit E- Ballot" section of the website, and follow the instructions to submit your Ballot.  You will need to enter your Unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted.  **Hard copy Ballots will not be accepted, and electronic Ballots will not be accepted by facsimile or electronic means (other than the online portal)**.  Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

6.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine.

7.  To vote, you <u>MUST</u> deliver your completed Ballot so that it is **ACTUALLY RECEIVED** by the Notice and Claims Agent on or before the Voting Deadline by one of the methods described above.  The Voting Deadline is **<u>September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)</u>**.

8.  Any Ballot received by the Notice and Claims Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

9.  Delivery of a Ballot reflecting your vote to the Notice and Claims Agent will be deemed to have occurred only when the Notice and Claims Agent actually receives the Ballot (for the avoidance of doubt, a Ballot submitted via the Ballot Portal shall be deemed to contain a signature).  In all cases, you should allow sufficient time to assure timely submission.

10.  If you submit multiple Ballots to the Notice and Claims Agent, <u>ONLY</u> the last properly submitted Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s).

11.  You must vote all of your Class 6 General Unsecured Claims either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims within Class 6, the Debtors may direct the Notice and Claims Agent to aggregate the Claims of any particular Holder within Class 6 for the purpose of counting votes.

12.  This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

13. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

14. <u>SIGN AND DATE</u> your Ballot.[3]  Please provide your name and mailing address in the space provided on this Ballot if it is different from that set forth on the Ballot or if no address is presented on the Ballot.

**<u>PLEASE RETURN YOUR BALLOT PROMPTLY</u>**

**<u>IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570-5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.</u>**

---

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

---

[3]    If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Notice and Claims Agent, the Debtors, the Debtors' counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## Exhibit 5D

**Class 6 – 2014 Senior Unsecured Notes Claims (Beneficial Holder Ballot)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

**CLASS 6 - 2014 SENIOR UNSECURED NOTES CLAIMS**

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the
Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website
of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath
& Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty
Avenue, Union, New Jersey 07083.

**PLEASE READ – TO BE COUNTED, YOUR VOTE MUST BE SUBMITTED ACCORDING TO INSTRUCTIONS, INCLUDING DEADLINE FOR SUBMISSION, PROVIDED BY YOUR NOMINEE. THE DEADLINE FOR YOUR NOMINEE'S SUBMISSION OF A MASTER BALLOT INCLUDING YOUR VOTE (OR YOUR SUBMISSION OF A BENEFICIAL HOLDER BALLOT THAT HAS BEEN "PRE-VALIDATED" BY YOUR NOMINEE) IS SEPTEMBER 1, 2023, at 4:00 P.M. (PREVAILING EASTERN TIME)**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES (AS MAY BE AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLAN" AND THIS BALLOT, THE "BALLOT")[2] INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE X OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL.

- THIS BALLOT, IF "PRE-VALIDATED" BY YOUR NOMINEE (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT), MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS THAT IT IS **ACTUALLY RECEIVED** BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "NOTICE AND CLAIMS AGENT") BEFORE **4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 1, 2023** (THE "VOTING DEADLINE"). IF YOUR NOMINEE DID NOT PROVIDE YOU A "PRE-VALIDATED" BENEFICIAL HOLDER BALLOT, YOU MUST CAST YOUR VOTE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS, INCLUDING YOUR NOMINEE'S INTERNAL VOTING DEADLINE SO THAT YOUR NOMINEE HAS SUFFICIENT TIME TO RECEIVE YOUR VOTE AND ENTER IT INTO A MASTER BALLOT AND SUBMIT SUCH MASTER BALLOT SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY THE VOTING DEADLINE.

- IF YOU HAVE GENERAL QUESTIONS ABOUT THE SOLICITATION PROCESS OR SOLICITATION MATERIALS, OR IF YOU REQUIRE ADDITIONAL OR REPLACEMENT SOLICITATION DOCUMENTS, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570 5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES OR VOTING INSTRUCTIONS, INCLUDING ANY QUESTIONS ABOUT HOW TO SUBMIT YOUR VOTE, PLEASE CONTACT YOUR NOMINEE (AS DEFINED BELOW).

- IF A BENEFICIAL HOLDER[3] HOLDS CLASS 6 CLAIMS THROUGH ONE OR MORE NOMINEES,[4] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 6 CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

[3]   "Beneficial Holder" is a beneficial owner of Class 6 2014 Senior Unsecured Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company and/or the applicable indenture trustee, as of the Voting Record Date.

[4]   "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 6 2014 Senior Unsecured Notes Claims, or such firm's agent, on behalf of a Beneficial Holder.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE X OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the Plan, attached as Exhibit A to the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, Class 5, and Class 6 (each a "Voting Class," and together, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one half in number of Claims in the particular Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Liquidation Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan would then be binding on all Holders of Allowed Claims in the Voting Classes, among others.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Ballot because your Nominee has identified you as a Beneficial Holder of a 2014 Senior Unsecured Notes Claim in Class 6 as of **July 28, 2023** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH CLAIM(S).**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class 6 under the Plan*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 1, 2023.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1**: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of Claim(s) in Class 6 as set forth below (your "Claims").  If you do not know the amount of your 2014 Senior Unsecured Notes Claims in Class 6 as of the Voting Record Date, please contact your Nominee for this information.  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand |

3

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

| | | | |
|---|---|---|---|
| | column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted.<br><br>Please note that you are voting all of your Claims in Class 6 either to accept or reject the Plan. You may not split your vote in Class 6. If you do not indicate that you either accept or reject the Plan in Class 6 by checking the applicable box below, your vote in Class 6 will not be counted. If you indicate that you both accept and reject the Plan for Class 6 by checking both boxes below, your vote in will not be counted.<br><br>The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor. Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.<br><br>The Beneficial Holder of the Claim(s) in Class 6 set forth below votes to (*please check <u>one and only one box per applicable Voting Claim or Interest</u>*): | | |

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 6 | 2014 Senior Unsecured Notes Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2. Important Information Regarding Releases under the Plan.**[5]

Article X.D. of the Plan provides for a third-party release (the "**<u>Third-Party Release</u>**"):

> **As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of**

---

[5]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

Under the Plan, "*Releasing Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members,

<p style="text-align:center">4</p>

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

---

employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE X.D. OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF:  (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; <u>AND</u> (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.

☐    **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Release.**

**Item 3.  Certification of Claims in Class 6 Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in Class 6 identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  **To be clear, if any Beneficial Holder holds Claims in Class 6 through one or more Nominees, such Beneficial Holder must identify all Claims in Class 6 held through its own name and/or each Nominee in the following table and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

6

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF CLASS 6

| Account Number of Other Claims Voted in Class 6 | Name of Owner[6] | Principal Amount of Other Claims Voted in Class 6 | CUSIP of Other Claims Voted in Class 6 | Plan Vote of Other Claims Voted (accept or reject) |
|---|---|---|---|---|
| **Class 6 – 2014 Senior Unsecured Notes Claims** | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

---

[6]    **Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.**

7

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.      as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in Class 6 set forth in Item 1;

b.      the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.      the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in Class 6;

e.      the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

f.      the Beneficial Holder understands and acknowledges that the Claims and Noticing Agent may verify the amount of the Claims in Class 6 set forth in Item 1 held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its Claims in Class 6 set forth in Item 1 and by returning an executed Ballot the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Claims and Noticing Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Notice and Claims Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control; and

g.      the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 5.  Beneficial Holder Information and Signature.**

Name of Beneficial Holder:_____

(*print or type*)

DTC Participant Number:_____

Signature:_____

Name of Signatory:_____

(*if other than Beneficial Holder*)

Title: _____

Address:_____

_____

_____

Date Completed:_____

Email Address:_____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 1, 2023.**

<u>**IF YOU RECEIVED A PRE-VALIDATED BALLOT AND A RETURN ENVELOPE ADDRESSED TO THE NOTICE AND CLAIMS AGENT,**</u> **PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY THE VOTING DEADLINE.**

<u>**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE**</u>**, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS REGARDING COMPLETION OR SUBMISSION OF THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT YOUR NOMINEE.  IF YOU HAVE GENERAL QUESTIONS ABOUT THE SOLICITATION PROCESS OR SOLICITATION MATERIALS, OR IF YOU REQUIRE ADDITIONAL OR REPLACEMENT SOLICITATION DOCUMENTS CALL THE NOTICE AND CLAIMS AGENT AT (833) 570 5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

9

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

## VOTING INSTRUCTIONS

1.  As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2.  The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.  To ensure that your vote is counted, you must:  (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received, so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Claims and Noticing Agent by the Voting Deadline**.  If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> by the Voting Deadline.  Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

    **The Notice and Claims Agent will not accept beneficial ballots by facsimile or other electronic means (other than by email at BBBYBallots@ra.kroll.com (with "Bed Bath & Beyond Ballot Submission" in the subject line) for pre-validated Beneficial Holder Ballots and Master Ballots only).** If you are directed by your Nominee to submit the Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Ballot to your Nominee, including all certifications.

4.  The time by which a Ballot or Master Ballot including your vote is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is September 1, 2023, at 4:00 p.m., prevailing Eastern Time**.

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, Beneficial Holders should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Notice and Claims Agent.

6.  The Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Notice and Claims Agent.

7.  If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

9.      The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

10.     Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

11.     You must vote your entire Claim in Class 6 either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan as to Class 6 will not be counted as a vote to accept or reject the Plan as to that Class.

12.     Any Ballot that is properly completed, executed, and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

13.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

14.     If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot. Please complete and return each Ballot you receive.

15.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim may be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

---

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please call the Notice and Claims agent at (833) 570-5355 (U.S./Canada, toll free) or +1 (646) 440-4806 (international) or email BBBYInfo@ra.kroll.com and reference "In re: Bed Bath & Beyond inc. - Solicitation Inquiry" in the subject line.**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

11

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Exhibit A**

***Please check one box below to indicate the CUSIP/ISIN to which this Beneficial Ballot pertains.  If you check more than one box below you risk having your vote invalidated.***

| | **BOND DESCRIPTION** | **CUSIP / ISIN** |
|---|---|---|
| | **Class 6 (2014 Senior Unsecured Notes Claims)** | |
| ☐ | 3.749% Senior Unsecured Notes Due August 1, 2024 | CUSIP 075896AA8 / ISIN US075896AA80 |
| ☐ | 4.915% Senior Unsecured Notes Due August 1, 2034 | CUSIP 075896AB6 / ISIN US075896AB63 |
| ☐ | 5.165% Senior Unsecured Notes Due August 1, 2044 | CUSIP 075896AC4 / ISIN US075896AC47 |

**<u>Exhibit 5E</u>**

**Class 6 2014 Senior Unsecured Notes Claims (Master Ballot)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

**CLASS 6 - 2014 SENIOR UNSECURED NOTES CLAIMS**

</div>

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY SEPTEMBER 1, 2023, at 4:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>VOTING DEADLINE</u>")**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES (AS MAY BE AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "<u>PLAN</u>" AND THIS BALLOT, THE "<u>MASTER BALLOT</u>")[2] INCLUDED WITH THIS MASTER BALLOT <u>BEFORE</u> COMPLETING THIS MASTER BALLOT.  THIS MASTER BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE X OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL.

- THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **<u>ACTUALLY RECEIVED</u>** BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "<u>NOTICE AND CLAIMS AGENT</u>") BEFORE **4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 1, 2023** (THE "<u>VOTING DEADLINE</u>").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570 5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE X OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the Plan, attached as Exhibit A to the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, Class 5 and Class 6 (each a "Voting Class," and together, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one half in number of Claims in the particular Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Liquidation Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan would then be binding on all Holders of Allowed Claims in the Voting Classes, among others.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Master Ballot because you are the Nominee (as defined below) of a Beneficial Holder[3] of a 2014 Senior Unsecured Notes Claim in Class 6 General Unsecured Claims ("Class 6 2014 Senior Unsecured Notes Claims) as of **July 28, 2023** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders' Class 6 2014 Senior Unsecured Notes Claims to transmit to the Notice and Claims Agent the votes of such Beneficial Holders in respect of their Class 6 2014 Senior Unsecured Notes Claims to accept or reject the Plan.  The CUSIP numbers (the "CUSIP") for Class 6 2014 Senior Unsecured Notes Claims entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto.  THE VOTES ON THIS BALLOT FOR BENEFICIAL HOLDERS OF CLAIMS IN CLASS 6 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 6 CLAIM.**

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot.  This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) the Beneficial Holder ballots provided to you with this Master Ballot (a "Beneficial Holder Ballot"), and to collect votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 1, 2023.**

---

[3]    "Beneficial Holder" is a beneficial owner of Class 6 2014 Senior Unsecured Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company ("DTC") or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐   is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of the Claims listed in Item 2 below, and is the record holder of such bonds;

☐   is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below; or

☐   has been granted a proxy (an original of which is submitted herewith) from a broker, bank, or other nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial owners of the Claims described in Item 2.

**Item 2.  Class 6 2014 Senior Unsecured Notes Claims Vote on Plan and Item 2.  Releases.**

The undersigned transmits the following votes and releases of Beneficial Holders of Claims against the Debtors in Class 6 as set forth below and certifies that the following Beneficial Holders of the Classes of Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan in the Voting Class will not be counted.  If the Beneficial Holder has checked the box on Item 2 of the Beneficial Holder Ballot pertaining to the releases by Holders of Claims, as detailed in Article X.D of the Plan, please place an X in the Item 3 column of the Voting Class below.  The full text of Article X.D is duplicated in the Master Ballot Instructions.

4

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

| CUSIP AS INDICATED ON EXHIBIT A ATTACHED HERETO | | | |
|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder Who Voted in this Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br><br>Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. | **Item 3**<br><br>If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below. |
| | | **Accept the Plan** / **or** / **Reject the Plan** | |
| **Class 6 2014 Senior Unsecured Notes Claims** | | | |
| 1. | $ | | |
| 2. | $ | | |
| 3. | $ | | |
| 4. | $ | | |
| 5. | $ | | |
| 6. | $ | | |
| **TOTALS** | $ | | |

5

**Item 3. Certification as to Transcription of Information from Item 3 of the Beneficial Ballots as to Claims in the Voting Class Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 3 of each Beneficial Ballot received from a Beneficial Holder. Please use additional sheets of paper if necessary.

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 3 of the Beneficial Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | | | |
|---|---|---|---|---|---|
| | Account Number of Other Claims Voted | DTC Participant Name and Number of Other Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted | Plan Vote of Other Claims Voted (accept or reject) |
| | **Class 6 –2014 Senior Unsecured Notes Claims** | | | | |
| 1. | | | $ | | |
| 2. | | | $ | | |
| 3. | | | $ | | |
| 4. | | | $ | | |
| 5. | | | $ | | |
| 6. | | | $ | | |
| 7. | | | $ | | |
| 8. | | | $ | | |
| 9. | | | $ | | |
| 10. | | | $ | | |

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Item 4.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.      it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims in the Voting Class listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.      it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.      it has been authorized by each such Beneficial Holder to vote on the Plan;

4.      it has properly disclosed:  (a) the number of Beneficial Holders who completed Ballots; (b) the respective amounts of the Claims in the Voting Class as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) each such Beneficial Holder's certification as to other Claims voted; and (e) the customer account or other identification number for each such Beneficial Holder; and

5.      it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee:            _____
                                                           (Print or type)

DTC Participant Number:  _____

Name of Proxy Holder or Agent
for Nominee (if applicable):
                                            _____
                                                           (Print or type)

Signature:                          _____


Name of Signatory:         _____

Title:                                 _____

Address:                           _____

                                            _____

                                            _____

Date Completed:             _____

Email Address:                _____

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING EASTERN TIME, ON SEPTEMBER 1, 2023.**

**PLEASE COMPLETE AND DATE THE MASTER BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, OR BY EMAIL (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY THE VOTING DEADLINE.**

---

**By first class mail or overnight courier to:**

Bed Bath & Beyond Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, New York 11232.

**If you would like to coordinate hand delivery of your Master Ballot, please email BBBYBallots@ra.kroll.com (with "Bed Bath & Beyond Master Ballot" in the subject line) at least 24 hours in advance of arrival at the Kroll address above and provide the anticipated date and time of delivery.**

---

**OR**

---

**By electronic mail:**

Submit your Master Ballot via electronic mail to BBBYBallots@ra.kroll.com with "In re Bed Bath & Beyond Inc. - Master Ballot" in the subject line.

**IMPORTANT NOTE:  For any ballot cast via electronic mail, a format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard pdf file) and the received date and time in the Notice and Claims Agent's inbox will be used as a timestamp for receipt.**

Nominees that cast a Master Ballot via electronic mail should NOT also submit a paper Master Ballot.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570-5355 (U.S./CANADA, TOLL FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY E-MAIL TO BBBYBALLOTS@RA.KROLL.COM WITH A REFERENCE TO "IN RE BED BATH & BEYOND INC - MASTER BALLOT" IN THE SUBJECT LINE).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

## VOTING INSTRUCTIONS

1.   As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.   The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one Class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.   You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballots) and the Solicitation Package to all Beneficial Holders of Class 6 2014 Senior Unsecured Notes Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Notice and Claims Agent, a Master Ballot that reflects the vote of such Beneficial Holders by 4:00 p.m., prevailing Eastern Time, on September 1, 2023, or otherwise validate the Ballot in a manner acceptable to the Notice and Claims Agent.

     If you are transmitting the votes of any Beneficial Holders of Claims in the Voting Class, you may either:

     (a)   "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 6 2014 Senior Unsecured Notes Claims for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Notice and Claims Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Ballot and including its DTC participant name and DTC participant number, indicating the account number of the Beneficial Holder and the principal amount of the Class 6 2014 Senior Unsecured Notes Claims held by the Nominee for such Beneficial Holder, applying a medallion guarantee stamp to the ballot (or providing a list of the Nominee's authorized signatories) to certify the principal amount of the Class 6 2014 Senior Unsecured Notes Claims owned by the Beneficial Holder as of the Voting Record Date, and then forwarding the Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Ballot and returns the Ballot directly to the Notice and Claims Agent. A list of the Beneficial Holders to whom "pre-validated" Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

     (b)   Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 6 2014 Senior Unsecured Notes Claims for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Notice and Claims Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Notice and Claims Agent. The Nominee should advise the Beneficial Holders

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Notice and Claims Agent so that the Master Ballot is **actually received** by the Notice and Claims Agent on or before the Voting Deadline.

4. With regard to any Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Notice and Claims Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date. You may be ordered to produce the Ballots to the Debtors or the Bankruptcy Court.

5. The time by which a Ballot is **actually received** by the Notice and Claims Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is September 1, 2023, at 4:00 p.m., prevailing Eastern Time**.

6. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order. In all cases, Nominees should allow sufficient time to ensure timely delivery. No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Notice and Claims Agent.

7. If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

8. If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10. The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim in the Debtors' Chapter 11 Cases.

11. Please be sure to sign and date your Master Ballot. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Notice and Claims Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

12. If you are both the Nominee and the Beneficial Holder of any of the Class 6 2014 Senior Unsecured Notes Claims and you wish to vote such Claims in Class 6, you may return a Master Ballot for such Claims in Class 6 and you must vote all of your Claims in the Voting Class to either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot, other than a Master Ballot with the votes of multiple Holders, that partially rejects and partially accepts the Plan will not be counted.

13. The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the

10

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

identification of the Beneficial Holder of the Claim; (b) any Ballot or Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d) any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

14.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim may be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

The following additional rules shall apply to Master Ballots:

15.     Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims in the Voting Class as of the Record Date, as evidenced by the record and depository listings;

16.     Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the amount of the Claims in the Voting Class held by such Nominee as of the Record Date, as reflected in the securities position report provided by The Depository Trust Company;

17.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Notice and Claims Agent will attempt to reconcile discrepancies with the Nominee;

18.     To the extent that overvotes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Notice and Claims Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the relevant Claims in the Voting Class; and

19.     For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Notice and Claims Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding the Third-Party Release Under the Plan**:[4]

**Article X.D. of the Plan provides for a third-party release (the "Third-Party Release"):**

**As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and**

---

[4]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Master Ballot.

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party,

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the

---

including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

Under the Plan, "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

12

[CUSIPs / ISINs as indicated on Exhibit A attached hereto]

third-party release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR IF YOU NEED ADDITIONAL COPIES OF THE ENCLOSED MATERIALS, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT (833) 570-5355 (U.S./CANADA, TOLL-FREE) OR +1 (646) 440-4806 (INTERNATIONAL) OR EMAIL BBBYINFO@RA.KROLL.COM AND REFERENCE "IN RE: BED BATH & BEYOND INC. - SOLICITATION INQUIRY" IN THE SUBJECT LINE.

**PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY**

13

**[CUSIPs / ISINs as indicated on Exhibit A attached hereto]**

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, the Beneficial Holder votes submitted on this Master Ballot may be invalidated:*

| | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| **Class 6 (2014 Senior Unsecured Notes Claims in Class 6 General Unsecured Claims)** | | |
| ☐ | 3.749% Senior Unsecured Notes Due August 1, 2024 | CUSIP 075896AA8 / ISIN US075896AA80 |
| ☐ | 4.915% Senior Unsecured Notes Due August 1, 2034 | CUSIP 075896AB6 / ISIN US075896AB63 |
| ☐ | 5.165% Senior Unsecured Notes Due August 1, 2044 | CUSIP 075896AC4 / ISIN US075896AC47 |

## **Exhibit 6**

**Cover Letter**



**[●], 2023**

RE:     **In re Bed Bath & Beyond Inc., _et al._,**
         **Chapter 11 Case No. 23-13359 (VFP) (Jointly Administered)**

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") on April 23, 2023.

You have received this letter and the enclosed materials because you are entitled to vote on the _Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates_ (as modified, amended, or supplemented from time to time, the "Plan").[2]  On [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"):  (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the Plan; (b) conditionally approving the _Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates_ [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined in the Order); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

This Cover Letter is part of your Solicitation Package, which was approved by the Bankruptcy Court for distribution to Holders of Claims in connection with the solicitation of votes to accept or reject the Plan.  Please review these materials carefully and follow instructions contained therein.  The Solicitation Package consists of the following:

- this letter;

- the Order (without exhibits, except for the Solicitation and Voting Procedures);

- the Disclosure Statement (and exhibits thereto, including the Plan);

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

- a Ballot, together with detailed voting instructions (to submit electronically);

- the Combined Hearing Notice (as defined in the Order); and

- such other materials as the Bankruptcy Court ordered to be made available.

The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions, however, please feel free to contact Kroll Restructuring Administration LLC, the noticing and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (888) 773-0375 (U.S./Canada, Toll Free) or +1 (646) 440-4371 (International), (b) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232, or (c) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line. You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.  Please be advised that the Notice and Claims Agent is authorized to answer questions about, and provide additional copies of, the solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

Bed Bath & Beyond Inc. (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept or reject the Plan.  The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims and Interests, and all other parties in interest.  The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, might result in smaller distributions (or no distributions) on account of Claims asserted in these Chapter 11 Cases.

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**

**THE DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

---

Sincerely,

_/s/_ _____

Name: Holly Etlin

Title:  Chief Restructuring Officer and Chief Financial Officer

**<u>Exhibit 7</u>**

**Plan Supplement Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**NOTICE OF FILING OF PLAN SUPPLEMENT**

</div>

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement Relating to the*

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

*Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

PLEASE TAKE FURTHER NOTICE THAT as contemplated by the Plan and the Order, the Debtors filed the Plan Supplement with the Bankruptcy Court on [●], 2023 [Docket No. [●]]. The Plan Supplement contains the following documents each as defined in the Plan: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the identity and terms of any documentation, including a wind-down trust agreement, establishing the rights and compensation of the Plan Administrator; (c) any transition services agreement between a Purchaser and the Debtors (as applicable); and (d) any other necessary documentation related to any Asset Sale Transaction or other Liquidation Transactions in accordance with Article IV of the Plan.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to the Plan or adequacy of the Disclosure Statement is **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline"). All objections to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, upon the following parties so as to be **actually received** on or before the Combined Objection Deadline:

| Debtors | |
|---|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin | |
| *Counsel to the Debtors* | *Counsel to the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn: Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq. |

| *Counsel to the Committee* |
|---|
| **Pachulski Stang Ziehl & Jones LLP** |
| 780 Third Avenue, 34th Floor |
| New York, New York 10017 |
| Attn:  Robert J. Feinstein and Bradford J. Sandler |

| *United States Trustee* |
|---|
| **Office of The United States Trustee** |
| One Newark Center, 1085 Raymond Boulevard, Suite 2100 |
| Newark, New Jersey 07102 |
| Attn:  Fran Steele, John Schanne, and Alexandria Nikolinos |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by:  (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada, Toll Free) or +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

---

Dated: [_____], 2023

<div style="margin-left: 45%;">

/s/
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

</div>

**<u>Exhibit 8</u>**

**Notice of Assumption of Executory Contracts and Unexpired Leases**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE TO CONTRACT PARTIES
TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS**

    **PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT,** on [●], 2023, the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* [Docket No. [●] (the "Assumed Contract Schedule") with the Bankruptcy Court as part of the *Plan Supplement for the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*, as contemplated under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumed Contract Schedule. Therefore, you are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE THAT**, on the Effective Date, the Wind-Down Debtors will assume the contracts (the "Assumed Contracts") listed on the Assumed Contract Schedule, attached hereto as **Schedule A**, one of more of which you are a counterparty. The Assumed Contract Schedule can also be viewed on the Debtors' case website (https://restructuring.ra.kroll.com/bbby).

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Schedule A**. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan (an "Assumption Objection") must be filed with the Bankruptcy Court on or before fourteen (14) days after the service of the Assumed Contracts Schedule.[3] Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

---

[2]   Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

[3]   *Provided* that if any Executory Contract or Unexpired Lease is added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Wind-Down Debtors is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be fourteen (14) days after service of the amended Schedule of Assumed Executory Contracts and Unexpired Leases with such modification (or such other time period as the Debtors set (subject to Bankruptcy Court approval) if the Debtors seek a limited notice period prior to the date of the Confirmation Hearing).

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure amounts, your objection (a "Cure Objection") must:  (i) be in writing; (ii) state with particularity the basis of the objection and, if the objection pertains to the proposed Cure amounts, state the correct cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (iii) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be **actually received** on or before **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Cure/Assumption Objection Deadline"), on counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn:  Joshua A. Sussberg (jsussberg@kirkland.com), Emily E. Geier (emily.geier@kirkland.com), Derek I. Hunter (derek.hunter@kirkland.com), and Ross J. Fiedler (ross.fiedler@kirkland.com); and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), and Felice R. Yudkin (fyudkin@coleschotz.com).

| Debtors | |
|---|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin | |
| *Counsel to the Debtors* | *Counsel to the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn:  Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn:  Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq. |
| *Counsel to the Committee* | |
| **Pachulski Stang Ziehl & Jones LLP**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn:  Robert J. Feinstein and Bradford J. Sandler | |
| *United States Trustee* | |
| **Office of The United States Trustee**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102<br>Attn:  Fran Steele, John Schanne, and Alexandria Nikolinos | |

**PLEASE TAKE FURTHER NOTICE** that if no objection to is filed by the Cure/Assumption Objection Deadline, then: **(i) you will be deemed to have stipulated that the Cure amounts as determined by the Debtors are correct; (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assumed Contract; and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assumption**.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection or Assumption Objection that otherwise complies with these procedures yet remains unresolved as of the commencement of the Combined Hearing shall be heard at the Combined Hearing or a later date to be fixed by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that notwithstanding anything herein, the mere listing of any Assumed Contract on the Assumed Contract Schedule does not require or guarantee that such Assumed Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors with respect to such Assumed Contract are reserved.  Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assumed Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors to designate any Assumed Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that nothing herein:  (i) alters in any way the prepetition nature of the Assumed Contracts or the validity, priority, or amount of any claims of a counterparty to any Assumed Contract against the Debtors that may arise under such Assumed Contract; (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assumed Contract against the Debtors that may arise under such Assumed Contract.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS, NOTICING, AND SOLICITATION AGENT.**

---

*[Remainder of page intentionally left blank]*

Dated: [_____], 2023

_/s/_ _____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted _pro hac vice_)
Emily E. Geier, P.C. (admitted _pro hac vice_)
Derek I. Hunter (admitted _pro hac vice_)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

_Co-Counsel for Debtors and_
_Debtors in Possession_

**<u>Exhibit 9</u>**

**Notice of Rejection of Executory Contracts and Unexpired Leases**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<div align="center">

**NOTICE REGARDING EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO THE PLAN**

</div>

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT**, on [●], 2023, the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumed Contract Schedule") with the Bankruptcy Court as part of the *Plan Supplement for the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. [●]] (the "Plan Supplement"), as contemplated under the Plan. All Executory Contracts and Unexpired Leases that are not being assumed or assumed and assigned pursuant to the Assumed Contract Schedule are automatically rejected as of the Effective Date. The determination to reject those Executory Contracts and Unexpired Leases that are not on the Assumed Contract Schedule is subject to revision.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE REJECTED PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[3]**

---

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing) will commence on **September 7, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

**PLEASE TAKE FURTHER NOTICE THAT** unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Notice and Claims Agent (as defined below) and served on the Debtors or Wind-Down Debtors, as applicable, no later than the later of (a) any date the Bankruptcy Court may fix in the applicable order authorizing such rejection and, if no such date is provided, the date that is **thirty (30) calendar days** after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or (b) the date that is thirty (30) days following the effective date of such rejection of an applicable executory contract or unexpired lease. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed released, and be subject to the permanent injunction set forth in Article X of the Plan, including any Claims against any Debtor listed on the Debtors' schedules as unliquidated, contingent, or disputed. All**

---

[2]   Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

[3]   Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Rejection Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

Allowed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims against the applicable Debtor in accordance with Article III.B of the Plan.

      **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan or adequacy of the Disclosure Statement is **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline").  Any objection to the relief sought at the Combined Hearing **must**: (i) be in writing; (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served upon the following parties in accordance with the General Order and the Supplemental Commentary, so as to be **actually received** on or before the Combined Objection Deadline:

| *Debtors* | |
|---|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin | |
| *Counsel to the Debtors* | *Counsel to the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn:  Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn:  Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq. |
| *Counsel to the Committee* | |
| **Pachulski Stang Ziehl & Jones LLP**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn:  Robert J. Feinstein and Bradford J. Sandler | |
| *United States Trustee* | |
| **Office of The United States Trustee**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102<br>Attn:  Fran Steele, John Schanne, and Alexandria Nikolinos | |

      **PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the rejection of the Executory Contract(s) and Unexpired Lease(s) and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the Combined Hearing will be heard at the Combined Hearing or a later date as fixed by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

---

Dated: [_____], 2023

/s/
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:     msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:     joshua.sussberg@kirkland.com
           emily.geier@kirkland.com
           derek.hunter@kirkland.com


*Co-Counsel for Debtors and*
*Debtors in Possession*