**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES**

---

      **PLEASE TAKE NOTICE** that on May 22, 2023 the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief*

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[Docket No. 422] (the "Lease Sale Procedures Order"),[2] attached hereto as **Exhibit A**, by which the Court, among other things, approved expedited procedures for the assumption and assignment of unexpired leases and granted related relief.

**PLEASE TAKE FURTHER NOTICE** that, on July 19, 2023, pursuant to the Lease Sale Procedures Order, the Debtors conducted the Lease Auction with respect to certain of the Lease Assets at the offices of Kirkland & Ellis, LLP, located at 601 Lexington Avenue, New York, New York, 10022.  Attendees were permitted to attend in person or through Zoom.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Lease Auction, the Debtors, in consultation with the Consultation Parties and in a reasonable exercise of their business judgement, selected Successful Bidders and Backup Bidders with respect to certain Lease Assets, as set forth in the *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1114].

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Lease Sale Procedures Order and by this written notice (this "Assumption and Assignment Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each unexpired lease set forth on **Exhibit B** attached hereto is hereby assumed and assigned, including with respect to payment of any cure costs (the "Cure Costs") in the amounts set forth on **Exhibit B** required to assume such unexpired lease, effective as of the date of entry of an order approving the sale of the applicable Lease Asset(s) or such other date as the Debtors and the Counterparties to such unexpired leases agree.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Lease Sale Procedures Order, each Successful Bidder's Bidder A&A Agreement are attached hereto as **Exhibit C**.  The terms and conditions of each Successful Bidder's Bidder A&A Agreement may be subject to change as the parties continue to negotiate the terms thereof.

**PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable unexpired lease will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, at the request of the applicable Counterparty use commercially reasonable efforts to provide evidence thereof to such applicable Counterparty (and their counsel, if known), thereby demonstrating that the assignee of the unexpired lease has the ability to comply with the requirements of adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed Cure Costs, proposed assumption and assignment, and/or to the Successful Bidder's or Backup Bidder's proposed form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") so that such objection is filed with the Court so as to be **actually**

---

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Debtors' Motion for Entry of an Order (I) Establishing Sales Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* [Docket No. 193], as applicable.

**received** by **July 25, 2023, at 5:00 p.m. (prevailing Eastern Time)** and serve such Assumption Objection on:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler; and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq, David M. Bass, Esq., and W. John Park, Esq., co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele and Alexandria Nikolinos; (c) Pachulski Stang Ziehl & Jones LLP, 780 3rd Ave #34, New York, NY 10017, Attn: Robert J. Feinstein, Bradford J. Sandler, Paul J. Labov and Colin R. Robinson, counsel to the Committee; and (d) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: David M. Hillman and Charles A. Dale, counsel to the DIP Agent.

       **PLEASE TAKE FURTHER NOTICE** that if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at the Lease Sale Hearing scheduled for **July 28, 2023, at 10:00 a.m. (prevailing Eastern Time)**, or such other date and time as agreed to by the Debtors and the objecting party or as ordered by the Court.  If such Assumption Objection is overruled or withdrawn, or if no Assumption Objection is filed with respect to any unexpired lease, such unexpired lease shall be assumed as of the Assumption Date set forth in **Exhibit B** or such other date as the Debtors and the applicable Counterparties to such unexpired lease agree.

*[Remainder of page intentionally left blank]*

3

Dated:  July 21, 2023                          /s/ Michael D. Sirota

---

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       joshua.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## EXHIBIT A

**Lease Sale Procedures Order**

[Filed at Docket No. 422]

**EXHIBIT B**

**Schedule of Unexpired Leases to be Assumed and Assigned**

| Store Number | Assignee | Landlord | Landlord Address | Premises Address | Proposed Cure Amount | Assumption Effective Date |
|---|---|---|---|---|---|---|
| 1 | Village Supermarket Inc | FARLEY REALTY ASSOCIATES | SCHAFFER, STEVEN, ATTORNEY, 21 PARTRIDGE LANE, LONG VALLEY, NJ 07853 | 715 Morris Avenue Springfield, NJ | $10,848.06 | July 28, 2023 |
| 214 | Scandinavian Designs | WEINGARTEN NOSTAT INC. | C/O KIMCO REALTY CORPORATION, 500 NORTH BROADWAY, SUITE 201, P.O. BOX 9010, JERICHO, NY 11753 | 23676 US Hwy 19 North Clearwater, FL | $44,824.00 | July 28, 2023 |
| 333 | Scandinavian Designs | PT-USRIF MERIDIAN, LLC | C/O PINE TREE COMMERCIAL REALTY, LLC, 40 SKOKIE BLVD. SUITE 610, NORTHBROOK, IL 60062 | 1350 North Eagle Road Meridian, ID | $0 | July 28, 2023 |
| 812 | Scandinavian Designs | 812PAY-SIMA MOUNTAIN VIEW, LLC | C/O MANAGEMENT OFFICE, 63455 N HWY 97, BEND, OR 97701 | 63455 North Highway 97 Bend, OR | $10,943.15 | July 28, 2023 |
| 1161 | Michaels | CATELLUS AUSTIN RETAIL II, LP | 4545 AIRPORT WAY, DENVER, CO 80239 | 1201 Barbara Jordan Boulevard Suite #200 Austin, TX | $0 | July 28, 2023 |

| 1258 | LL:  Hingham Launch | HINGHAM LAUNCH PROPERTY LLC | C/O SAMUELS & ASSOCIATES, 136 BROOKLINE AVENUE, BOSTON, MA 02115 | Lincoln Street (3A) & Shipyard Hingham, MA | $29,468.34 | July 28, 2023 |
|---|---|---|---|---|---|---|
| 3001 | Dream on Me | CONGRESSIONAL PLAZA ASSOCIATES, LLC | C/O FEDERAL REALTY INVESTMENT TRUST, ATTN: LEGAL DEPARTMENT, 909 ROSE AVENUE, SUITE 200, NORTH BETHESDA, MD 20852 | 683 Rockville Pike Rockville, MD | $71,190.97 | July 28, 2023 |
| 3002 | Dream on Me | 1019 CENTRAL AVENUE CORPORATION | C/O GINSBURG DEVELOPMENT COMPANIES, 100 SUMMIT LAKE DRIVE, SUITE 235, VALHALLA, NY 10595 | 1019 Central Park Avenue Scarsdale, NY | $0 | July 28, 2023 |
| 3003 | Dream on Me | KMO-361 (PARAMUS) LLC | FUSS, MICHELLE, LEGAL ASSISTANT, C/O OLSHAN PROPERTIES, ATTN: LEASE ADMINISTRATION, 600 MADISON AVENUE 14TH FLOOR, NEW YORK, NY 10022 | Route 17 North Paramus, NJ | $74,625.58 | July 28, 2023 |
| 3005 | Raymour & Flanigan | R&F GARDEN CITY, LLC | 7248 MORGAN ROAD, LIVERPOOL, NY 13088 | 895 East Gate Boulevard Garden City East, NY | $8,525.92 | July 28, 2023 |

| 3008 | Dream on Me | SPRINGFIELD PLAZA, LLC | C/O RAPPORT COMPANIES, 8405 GREENSBORO DRIVE, 8TH FLOOR, MCLEAN, VA 22102-5121 | 6398 Springfield Plaza Springfield, VA | $388.00 | July 28, 2023 |
| 3010 | Dream on Me | FEDERAL REALTY INVESTMENT TRUST | 909 ROSE AVENUE SUITE 202, NORTH BETHESDA, MD 20852 | 1590 Kings Highway North Cherry Hill, NJ | $21,242.15 | July 28, 2023 |
| 3029 | Scandinavian Designs | 3029P2-BRE DDR LAKE BRANDON VILLAGE LLC | DEPT 320569-21434-55716, PO BOX 951982, CLEVELAND, OH 44193 | 11345 Causeway Blvd Brandon, FL | $21,488.47 | July 28, 2023 |
| 3037 | Dream on Me | ENID TWO, LLC | CARLSON, MATT ,LANDLORD ATTORNEY, C/O LYNNE R. UIBERALL, 5 TAMARACK DRIVE, LIVINGSTON, NJ 07039 | 711 Route 28 Bridgewater, NJ | $58,427.78 | July 28, 2023 |
| 3046 | Dream on Me | CTC PHASE II, LLC | 2 RIGHTER PARKWAY SUITE 301, WILMINGTON, DE 19803 | 501 West Main St Newark, DE | $24,693.75 | July 28, 2023 |

| 3060 | Dream on Me | EDISON BRMA002 LLC | BEAR, HEATHER ,LANDLORD, OAK STREET, INVESTMENT GRADE NET LEASE FUND SERIES 2021-1, C/O OAK STREET REAL ESTATE CAPITAL, ATTN: ASSET MGMT 30 N. LASALLE ST., SUITE 4140, CHICAGO, IL 60602 | 160 Granite Street Braintree, MA | $10,796.30 | July 28, 2023 |
|---|---|---|---|---|---|---|
| 3063 | Scandinavian Designs | ENCINITAS TOWN CENTER ASSOCIATES I, LLC | C/O ZELMAN RETAIL PARTNERS, INC., 2400 E. KATELLA AVENUE SUITE 760, ANAHEIM, CA 92806 | 1014 N. El Camino Real Encinitas, CA | $30,496.13 | July 28, 2023 |
| 3083 | Dream on Me | JEMAL'S BOULEVARD L.L.C. | ZAMIAS SERVICES INC., 1219 SCALP AVENUE, JOHNSTOWN, PA 15904 | 1261 Niagara Falls Boulevard, #1 Amherst, NY | $518.16 | July 28, 2023 |
| 3121 | Dream on Me | SERITAGE SRC FINANCE LLC | C/O SERITAGE GROWTH PROPERTIES, ATTN CHIEF LEGAL OFFICER & CORPORATE SECRETARY, 500 FIFTH AVE., SUITE 1530, NEW YORK, NY 10110 | 1445 New Britain Avenue West Hartford, CT | $20,205.18 | July 28, 2023 |

| 3130 | Dream on Me | UE 675 ROUTE 1 LLC | 210 ROUTE 4 EAST, PARAMUS, NJ 07652 | 675 U.S. 1 Woodbridge Township, NJ | $64,446.69 | July 28, 2023 |

**EXHIBIT C-1**

## ACQUISITION OF DESIGNATION RIGHTS AGREEMENT

This ACQUISITION OF DESIGNATION RIGHTS AGREEMENT (the "Agreement"), dated as of July 12, 2023, is by and between Bed Bath & Beyond, Inc. ("Seller") and Michaels Stores, Inc. ("Purchaser"). For the avoidance of doubt, in the event that the Purchaser exercises the right to designate a Lease(s) (as defined below) for assumption and assignment to the Purchaser itself or an affiliate and the Purchaser delivers a Lease Assumption Notice (as defined below) to the Seller, except as set forth herein, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Purchaser after consummation of the assignment of such contract by the Debtors to the Purchaser.

## RECITALS

WHEREAS, Seller, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Seller has agreed to (i) sell, convey, assign, transfer and deliver to Purchaser, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Designation Rights (as defined below herein) with respect to unexpired lease(s) listed on Schedule A attached hereto (the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), (ii) take the actions set forth herein to cause the rejection of the Lease(s) identified in the subject Lease Rejection Notice(s) (as defined below herein) following the date that Purchaser delivers a Lease Rejection Notice to the Seller, and (iii) assign and Purchaser and/or an affiliate has agreed to assume Lease(s) identified in the subject Lease Assumption Notice(s) (as defined below herein) as set forth herein, pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures"), as modified herein, subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the Premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    **Designation Rights**. On the terms and conditions set forth in this Agreement, Purchaser shall have the sole, exclusive, and continuing right to select, identify and designate (on one or more occasions) which of the Leases set forth on Schedule A hereto shall be either: (i) rejected or (ii) assumed and assigned in connection with an assumption and assignment, to Purchaser and/or an affiliate (all of which rights are referred to in this Agreement as the "Designation Rights"). The sale of the Designation Rights provided for in this Agreement shall not effect a conveyance of the Leases to Purchaser and/or an affiliate except for those Leases that Purchaser will specifically designate for itself and/or an affiliate in accordance with this Agreement. Notwithstanding anything to the contrary herein, the Lease Sale Order[1] shall provide that effective upon receipt of a Lease Assumption Notice (defined herein) to the applicable Lease Counterparty under any Lease(s) identified in such Lease Assumption Notice from Seller, (a) Seller shall be authorized to transfer, convey, assign and set over to Purchaser and/or an affiliate, its successors and assigns, all of Seller's right, title, and interest in and to the Lease(s), and (b) Purchaser and/or an affiliate shall be authorized to assume and undertake to pay, perform, and discharge all of Seller's obligations and

---

[1]    To the extent that words and phrases are capitalized but undefined in this Agreement and have been defined in the *Lease Sale Procedures*, those definitions are incorporated herein by reference.

duties with respect to the Lease(s) as set forth herein. For the avoidance of doubt, the Lease Sale Order shall approve (x) the Designation Rights and (y) any potential assumption and assignment of Lease(s) set forth on <u>Schedule A</u> to the Purchaser.

2.    **Designation Period**. Purchaser's Designation Rights shall commence immediately after Court approval of the terms of this Agreement (the "<u>Sale Closing Deadline</u>") and expire thirty days (30) after the Court's entry of the Lease Sale Order (the "<u>Designation Period</u>"); *provided, however*, that the Designation Period may be extended upon mutual written agreement of Purchaser, the Seller, and a landlord or counterparty to the applicable Lease (each, a "<u>Lease Counterparty</u>").

(a)    ***Rejection of Leases***. At any time during the Designation Period, Purchaser shall have the right, which right may be exercised at any time and from time to time, to provide written notice to the Seller (each such notice, a "<u>Lease Rejection Notice</u>") of Purchaser's election to require the Seller to reject the Lease(s) identified in the Lease Rejection Notice. Following the date that Purchaser delivers a Lease Rejection Notice to the Seller, the Purchaser shall cause the rejection of the Lease(s) identified in the Lease Rejection Notice, pursuant to the *Procedures to Reject, Assume, or Assume and Assign* or the plan of reorganization in the Seller's Chapter 11 Cases.[2]  Purchaser shall not be responsible for any obligations and duties for a particular Lease that come due under the Lease after such Lease has been rejected pursuant to the terms of this Agreement. For the avoidance of doubt, after the Purchaser provides a Lease Rejection Notice to the Seller, all of the Purchaser's obligations and duties with respect to the Lease(s) identified in the applicable Rejection Notice are discharged.

(b)    ***Assumption and Assignment of Leases***. At any time during the Designation Period, Purchaser shall have the right, which right may be exercised at any time and from time to time, to provide written notice to the Seller (each such notice, a "<u>Lease Assumption Notice</u>") of Purchaser's election to assume the Lease(s) identified in the subject Lease Assumption Notice(s) and assign same to Purchaser and/or an affiliate, as set forth below or pursuant to the *Procedures to Reject, Assume, or Assume and Assign*, as applicable.

(i)    Assumption and Assignment to Purchaser or Affiliate.    At any time during the Designation Period, in the event that the Purchaser exercises the right to designate a Lease(s) for assumption and assignment to the Purchaser itself or an affiliate and the Purchaser delivers a Lease Assumption Notice to the Seller, without further Court order, on the effective date of assignment as set forth in the Lease Assumption Notice, (a) Seller shall be authorized to transfer, convey, assign and set over to Purchaser or an affiliate, as applicable, its successors and assigns, all of Seller's right, title, and interest in and to the Lease(s), and (b) Purchaser or an affiliate, as applicable, shall be authorized to assume and undertake to pay, perform, and discharge all of Seller's obligations and duties with respect to the Lease(s) as set forth herein.

3.    **Payment of Purchase Price**. Purchaser shall, on or before the effective date of the assumption and assignment of the Lease(s) (the "<u>Sale Closing</u>"), deliver the purchase price for the Lease(s) in the amount of $25,000.00 (the "<u>Purchase Price</u>") minus the amount of the deposit (*i.e.*, $2,500.00)[3] in immediately available funds wired to the account specified by Seller; *provided, however*, if the Court does

---

[2]    On May 17, 2023, the Court entered the *Order (i) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases, and (ii) Granting Related Relief* (the "<u>Procedures to Reject, Assume, or Assume and Assign</u>") [Docket No. 382].

[3]    On June 22, 2023, the Purchaser wired the deposit of $2,500.00 for the Lease Asset to the Seller. The Purchaser's wire confirmation number is 0622I1Bb7033R027476. Therefore, the Purchaser has satisfied the deposit requirement under the *Lease Sale Procedures*.

DocuSign Envelope ID: 5C689BC6-9DEC-41E5-AAE9-C251B7A4A9C2

not approve this Agreement, the Designation Rights, and/or the assumption and assignment of such Lease(s) set forth on <u>Schedule 1</u> hereto to Purchaser in accordance with the terms of this Agreement, including with respect to Purchaser's rights to exercise any renewal options or extensions under the Lease(s), this Agreement shall terminate, Seller shall return the deposit to Purchaser, and Purchaser shall not be liable for any other amounts, obligations, liabilities or duties under this Agreement or any of the Leases. The Parties acknowledge that if the assignment and assumption of the Lease(s) identified in the subject Lease Assumption Notice(s) (the "<u>Closing</u>") does not occur before thirty days (30) after the Court's entry of the Lease Sale Order, or such other date as set forth in the subject Lease Assumption Notice(s), the Lease(s) may thereafter be rejected in the Chapter 11 Cases.

(a)    <u>Removal of Leases From the Lease Sale Process.</u>  To the extent that any of the Leases listed on **<u>Schedule A</u>** attached hereto are not included in the Auction or are no longer subject to the sale process under the Lease Sale Procedures, the Seller shall return the applicable portion of Purchaser's Deposit to Purchaser the later of (i) three business days after removing any such Lease from the sale process under the Lease Sale Procedures and (ii) three business days after the Auction.

(b)    <u>Toggle to Second Choice Lease.</u>  For the (i) Summerlin and (ii) Dayton locations, there are two Leases available for assumption and assignment to a potential assignee.  With respect to the Summerlin location, in the event that Purchaser is not the Successful Bidder at the Auction for Lease Store ID 3112 (first choice lease), Purchaser will bid on Lease Store ID 503 (second choice lease).  With respect to the Dayton location, in the event that Purchaser is not the Successful Bidder at the Auction for Lease Store ID 3116 (first choice lease), Purchaser will bid on Lease Store ID 462 (second choice lease).  In each case, if Purchaser is the Successful Bidder on its first choice lease, Purchaser will not participate in the Auction with respect to its second choice lease.  Purchaser will submit a single deposit with respect to each location and if such deposit is greater than was necessary for the Lease that is purchased, the overage or excess shall be applied to reduce the remaining Purchase Price due at Closing for the other applicable Leases where the Purchaser is the Successful Bidder.

4.    **<u>Obligations under the Leases During the Designation Period</u>**.  During the Designation Period, with respect to each individual Lease, Purchaser shall assume all obligations under the Lease, including rent, real estate taxes, insurance, common area charges, maintenance and any other obligations owed by Seller to each Lease Counterparty under a particular Lease for the period commencing on and after the Sale Closing Deadline; *provided, however*, that Purchaser shall not be responsible for (i) any obligations already satisfied by the Seller, (ii) any obligations that accrued prior to the Sale Closing Deadline but had not yet come due, (iii) any obligations for a particular Lease that come due under the Lease after such Lease has been rejected pursuant to the terms of this Agreement, and (iv) any obligations covered by insurance actually carried by the Seller.

5.    **<u>Assumption of Assigned Liabilities</u>**.  In addition to assuming all obligations that become due and are required to be paid during the Designation Period with respect to the Lease(s), as limited by paragraph 4 above, to the extent that Purchaser delivers a Lease Assumption Notice(s) to the Seller, upon the effective date of the assumption and assignment of any Lease(s) identified in such Lease Assumption Notice(s) by Purchaser and/or an affiliate, Purchaser shall assume (i) all obligations under such Lease(s) that both become due and accrue after the Sale Closing with respect to the Lease(s) and (ii) cure all outstanding liabilities that were (x) due and/or (y) accrued but not yet due prior to the Sale Closing under the applicable Lease(s) with respect to the Lease(s), which cure amounts, if any, are solely limited to the amounts listed for each applicable Lease set forth on <u>Schedule A</u> hereto (the "<u>Cure Costs</u>").  Notwithstanding anything herein or in any other agreement to the contrary, any applicable Cure Costs for the Lease(s), including any amounts that had accrued but had not yet come due, if any, are solely set forth on <u>Schedule A</u> hereto, provided that any objection or dispute with respect to the Cure Costs shall be resolved in accordance with the Lease Sale Procedures.  The Lease Sale Order shall provide that upon satisfaction

DocuSign Envelope ID: 5C589BC5-9DEC-41E5-AAE9-C2517B7A4A9C2

of the Cure Costs, each Lease Counterparty shall be barred from asserting any additional amount other than the Cure Costs set forth on <u>Schedule A</u> hereto, including any other amounts, liabilities or claims with respect to its Lease(s) that arose, accrued, or came due on or before entry of the Lease Sale Order.  In the event the final Cure Costs include obligations and duties not identified on <u>Schedule A</u> hereto or in excess of the amounts listed on <u>Schedule A</u> hereto, absent written consent from Purchaser to assume and pay such additional and/or increased Cure Costs, the Purchaser may terminate this Agreement if Purchaser is otherwise the successful bidder and the Seller shall return the Purchaser's deposit to the Purchaser within a reasonable amount of time.

6.    **No Further Liability of Seller**.  From and after the Sale Closing, except as provided herein, Seller shall have no further obligations and duties with respect to the Lease(s).

7.    **Further Assurances**.  At any time and from time to time after the date hereof, at the request of Purchaser, and without further consideration, Seller shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Purchaser may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Purchaser the Seller's rights to the Lease(s).

8.    **"As Is Where Is" Transaction**.  Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s).  Without limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Lease(s).  Purchaser further acknowledges that the Purchaser has conducted an independent inspection and investigation of the physical condition of the Lease(s) and all such other matters relating to or affecting the Lease(s) as Purchaser deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Purchaser is doing so based upon such independent inspections and investigations.  Accordingly, Purchaser will accept the Lease(s) "AS IS" and "WHERE IS."

9.    **No Holdover**.  Seller shall fully vacate the Lease(s) identified in <u>Schedule A</u> hereto no later than five (5) days prior to the Sale Closing.  In the event Seller fails to fully vacate such Lease(s) as provided herein, Purchaser shall have no obligation to the Seller during the Designation Period, including the obligation to pay any rent, additional rent, or percentage rent, unless and until Seller complies with this Agreement. If the Seller has not vacated the Premises related to any Designated Lease during the required time, the Seller shall be solely responsible for any and all obligations related to the applicable Lease(s), including payment of any amounts due thereunder until the Lease(s) are assumed and assigned to Purchaser or rejected in accordance with this Agreement.

10.    **Lease Sale Order**.  A condition precedent to any obligations of the Parties under this Agreement shall be entry by the Court of the Lease Sale Order approving this Agreement in form and substance acceptable to the Purchaser and Seller in all respects.  To the extent that (i) a Lease Counterparty informally objects or files an objection to this Agreement or the proposed Lease Sale Order and such objection can not be resolved prior to the Lease Sale Hearing and the Purchaser determines it does not want to proceed or (ii) such Lease Sale Order is not approved by the Court, the Purchaser shall not have any obligations under this Agreement or under the Leases set forth on Schedule A and the entire Purchase Price shall be returned to Purchaser, including any deposit, within five (5) business days of either event set forth in (i) and (ii) or any other event that makes the entry of such Lease Sale Order impossible.

11.    **Customary Modifications to Lease(s).**  Notwithstanding anything to the contrary herein, if certain customary modifications to the Lease(s) (which may include one or a combination of the Lease(s) set forth on <u>Schedule A</u> hereto) in connection with the occupancy and operation of Purchaser at the applicable Premises are not approved by the applicable Lease Counterparty and/or set forth in the Lease

Sale Order authorizing any assignment of such Lease(s) to Purchaser, including modifications with respect to, among other provisions, requirements in connection with use, continuous operations, increased deposit, rent or other obligations related to assignment, signage for, improvements to, and buildout of the Premises, unless waived in writing by Purchaser in its sole discretion, this Agreement shall terminate, Seller shall return the deposit to Purchaser, and Purchaser shall not be liable for any amounts, obligations, liabilities or duties under this Agreement or any of the Lease(s).

12.    **Compliance With Law**.  Purchaser hereby agrees to comply with all applicable laws. Purchaser agrees to indemnify and hold Seller harmless for any violation or alleged violation of this section.

13.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

14.    **Jurisdiction.**  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

15.    **No Reliance**.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

16.    **Construction.**  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

17.    **Execution in Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

DocuSign Envelope ID: 5C689BC5-9DEC-41E5-AAE9-C2E1B7AAA9C2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SELLER:**
**BED BATH & BEYOND, INC.**

By_____
Name_____
Its_____


**PURCHASER:**
**MICHAELS STORES, INC.**

By  *Todd Powers*_____
Name    Todd Powers_____
Its_____SVP – Real Estate and Development

DocuSign Envelope ID: 5C639BC5-9DEC-41E5-AAE9-C251B7AAA9C2

**Schedule A**

**Description of Lease Asset(s)**

| LEASES | |
|---|---|
| 1. **Lease #:** | Store #624; Store ID: 1161 |
| Name, State, and Zip: | Mueller, TX 78723 |
| Banner Name: | Bed Bath & Beyond |
| Cure Amount: | $0.00 |

**<u>EXHIBIT C-2</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of
_____, 2023, is by and between _____ ("Assignor") and Dream 545 Weston Canal
Road, LLC ("Assignee").  For the avoidance of doubt, all provisions of the applicable assigned contract,
including any provision limiting future assignment, shall be binding on the applicable Assignee after
consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession (collectively, the
"Debtors"), has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States
Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy
Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond,
Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired
lease(s) listed on Schedule A attached hereto, including rights under any agreements ancillary thereto or
executed in connection therewith (the "Leases"), together with (i) all of Assignor's right, title and interest
in and to any security deposit or other sum standing to the credit of Assignor in connection with such Leases
and (ii) all furniture, fixtures and equipment located at the stores subject of such Leases (collectively, as set
forth in (i) and (ii) above, together with the Leases, the "Assigned Asset(s)") with respect to the premises
set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures
for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the
Chapter 11 Cases by entry of an order reasonably acceptable to Assignee (the "Approval Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein
contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its
successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)      Assignee hereby assumes and undertakes to pay, perform, and discharge all of
Assignor's obligations and duties with respect to the Assigned Asset(s) solely to the extent arising on or
after the date of entry of the Approval Order (other than the Cure Costs described below) (the "Assumed
Liabilities").

2.      Payment of Purchase Price.  Assignee shall, within one (1) business day after the date of
entry of the Approval Order, deliver the purchase price for the Assigned Asset(s) in the amount of -
$50,000.00, plus the aggregate amount of cure costs (the "Cure Costs") required to be paid under Section
365 of the Bankruptcy Code not to exceed those amounts set forth on the Debtors' *Notice to Contract
Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Dkt. No. 714] with respect to
the Leases (the "Purchase Price"), less any deposit previously provided to Assignor, in immediately
available funds wired to the account specified by Assignor.

3.      Assumption of Liabilities. Assignee shall assume the Assumed Liabilities. For the
avoidance of doubt, all defaults or other obligations of the Assignor arising or accruing prior to the date of

entry of the Approval Order, whether billed or unbilled, due or not due, shall be cured by the Assignor on or before the date of entry of the Approval Order, and the Assignee shall have no liability or obligation arising or accruing under the Assigned Assets prior to the date of entry of the Approval Order.

4.    No Further Liability of Assignor.  From and after the date of entry of the Approval Order, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s) arising from and after the date of entry of the Approval Order.

5.    Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.    "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s); provided that Assignor warrants and represents as of the date of entry of the Approval Order that (a) Assignor is the tenant under the Leases; (b) each Lease is in full force and effect; (c) the Leases, as identified on Schedule A, are complete in listing all documents comprising the Leases and there are no other agreements granting any possessory interest in and to any space on the Premises subject of the Leases to any party other than Assignor or otherwise limiting the use by Assignee thereof; (d) on and after the date of entry of the Approval Order, there will be no service contracts for any of the Assigned Assets which will bind Assignee.  Subject to the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s);

7.    Compliance With Law.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.    Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.    No Reliance.  Except as expressly set forth herein, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party except as expressly set forth herein or in the Approval Order.

11.    Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud,

duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

      12.   <u>Execution in Counterparts</u>.  This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____

**ASSIGNEE:**
**DREAM 545 WESTON CANAL ROAD,
LLC**

By_____
Name: Mark Serure
Its Manager

## Schedule A

**Description of Assigned Assets**

**Store Number and Location**          **List of Lease Documents**

3046 Christiana, DE
3006 Totowa, NJ
3010 Cherry Hill, NJ
3003 Paramus, NJ
3130 Woodbridge, NJ
3037 Bridgewater, NJ
3092 Deptford, NJ
3005 Westbury, NY
3002 Scarsdale, NY
3083 Amherst, NY
3121 West Hartford, CT
3060 Braintree, MA
3001 Rockville, MD
3008 Springfield, VA

**<u>EXHIBIT C-3</u>**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between _____ ("Assignor") and Dania, Incorporated d/b/a Scandinavian Designs ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.    Payment of Purchase Price. Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of _____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2023, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2023.

3.    Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.    No Further Liability of Assignor. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5.       Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.       "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.       Compliance With Law.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.       Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.       Jurisdiction.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.      No Reliance.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.      Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.      Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

By_____
Name_____
Its_____


**ASSIGNEE:**
**DANIA, INCORPORATED,**

By_____
Name Robert McVay
Its General Counsel

**<u>Schedule A</u>**

**Description of Lease Asset(s)**

## **EXHIBIT C-4**



**VILLAGE SUPER MARKET, INC.**
**EXECUTIVE OFFICES**
**733 MOUNTAIN AVENUE, SPRINGFIELD, NEW JERSEY 07081**
**(973) 467-2200**

July 13, 2023

**Via Overnight and Electronic Mail (**emilio@agrealtypartners.com**)**
A&G Realty Partners, LLC
c/o Emilio Amendola
445 Broadhollow Road, Suite 410
Melville, NY 11747

> **RE:** **Bed Bath & Beyond Inc.,** *et al.***,**
> **United States Bankruptcy Court, District of New Jersey**
> **Case No. 23-13359 (VFP)**

Dear Mr. Amendola:

Village Super Market, Inc., or its designee ("Buyer") hereby offers to purchase the following assets from the debtor or its affiliate who is the tenant under the Springfield, NJ Lease (defined below) ("Seller"), on the terms and subject to the conditions set forth in this letter, including Exhibit A hereto. Such transaction will be subject to the approval of the court presiding over the Chapter 11 cases of Seller and its affiliates pending in the US Bankruptcy Court, District of New Jersey (jointly administered under Case No. 23-13359) (the "Court").

1.     The sole and exclusive right to designate the assignee of the Lease for premises known as 715 Morris Turnpike, Springfield, NJ 07081 between Seller and Farley Realty Associates (the "Springfield, NJ Lease"). Such rights are referred to herein as the "Designation Rights".

2.     The purchase price for the Designation Rights shall be the sum of the following: (i) cash in the amount of $111,000.00; (ii) other amounts payable by Buyer from and after the Closing of the sale of the Designation Rights pursuant to a form of asset purchase agreement ("APA") mutually acceptable to Buyer and Seller, and containing provisions in the rider attached hereto as Exhibit A.

3.     This offer is subject to the following conditions:

a.     Approval of the APA by an order of the Court in form and substance satisfactory to Buyer which has not been reversed or stayed prior to closing (the "Approval Order"). The Approval Order shall include (i) approval to extend the time to assume or reject the Springfield, NJ Lease for a period equal to 210 days after the Petition Date, (ii) the relevant terms in Exhibit A, (iii) a finding that Buyer is a good faith purchaser, (iv) retention of jurisdiction by the Court over

Mr. Emilio Amendola
A&G Realty Partners, LLC
Page 2

proceedings to assume and assign the Springfield, NJ Lease if the Buyer delivers a Lease Assumption Notice, and (v) other terms customary in transactions of this nature.

b.    Buyer's financial statements are publicly available and should be consulted to assess Buyer's ability to establish adequate assurance.

c.        Buyer's bidder registration form is attached.

d.    This proposal expires if not accepted by Seller by 5:00 p.m. on July 20, 2023.

Please advise of the wire instructions for transfer of the deposit. If you have any questions please contact the undersigned. Thank you.

Very truly yours,

**Village Super Market, Inc.**

John J. Sumas
Co-President
John.sumas@wakefern.com

Enclosures

cc:  Kirkland & Ellis LLP, c/o Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, and Ross J. Fiedler, 601 Lexington Avenue, New York, NY 10022
joshua.sussberg@kirkland.com, emily.geier@kirkland.com, derek.hunter@kirkland.com, ross.fiedler@kirkland.com



"Helping Families Live Better"

## VILLAGE SUPER MARKET, INC.

## EXHIBIT A

1. **Real Estate Designation Rights.**

   Buyer  shall acquire from the Seller, and Seller hereby sells, conveys and transfers to, Buyer the exclusive rights to acquire or to market and sell or assign through the Designation Period (as defined below), and to designate the ultimate  buyer or assignee of, all of the Seller's right, title and interest in and to the Lease, and all Seller's rights under the Lease.

**2. The Parties Respective Obligations During Designation Period.**

   (a) Seller's Obligations.

   (1) Subject to the Buyer's (or its designee's) obligation to reimburse Seller for rent, additional rent, insurance, and other amounts payable under the Lease,  and to perform all of Seller's obligations under the Lease after Closing, from and after Closing  and until the date of consummation of the  assumption and assignment, or rejection of the Lease, Seller shall not enter into, extend, modify, amend, reject or otherwise terminate the Lease, or any material agreement with respect to the Premises covered by the Lease, or hypothecate or pledge its interest in the Lease, without the prior written consent of Buyer.

   (2)     Seller shall act promptly and diligently in accordance with directions received by Buyer with respect to scheduling and prosecuting a motion to assume and assign the Lease to Buyer or Buyer's designee ("Assumption Motion"), or to reject the Lease ("Lease Rejection Action"). Seller shall take action to file and prosecute an Assumption Motion within three business days of receipt of a notice to  make an Assumption Motion, and one Business Day after receipt of a notice to take a Lease Rejection Action. Any direction to Seller to file and Assumption Motion shall be given at least 30 days prior to the expiration of the Designation Period.

   (3) Seller shall provide Buyer as and when received with true and correct copies of  any notices, demands or court filings received by Seller concerning the Lease or the Leased premises. Seller shall not issue any notices, or file any pleadings, with respect to the Lease without the prior written consent of Buyer.

   (4) When occupancy expenses under the Lease are reimbursed to Seller,  Seller shall forthwith pay such amounts to the lessor under the Lease; provided, however,  Buyer ( or its designee) shall not be obligated to fund as a Occupancy Expense any amount in respect of an extraordinary repair or maintenance of  the Leased premises, unless the need for such repair or maintenance arises from gross negligence or willful misconduct on the part of  Buyer during the Designation Period.  Seller shall provide Buyer as and when received with invoices form the lessor, and will render  invoices  to Buyer  in support of the occupancy expenses incurred after Closing and during the Designation Period. Such invoices shall not be rendered to Buyer more frequently than weekly with respect to the Lease,  and shall be accompanied by all supporting documentation reasonably necessary to allow Buyer to determine the propriety of the amount charged for such

invoices. Buyer shall have seven (7) Business Days of delivery of an Occupancy Expense invoice from Seller to make payment of the amounts reflected therein to Seller or directly to the landlord, at 's option, or to dispute the validity of such invoice ("Occupancy Expense Payment Period"), provided, however, that Buyer shall be required to make payments of occupancy expenses no more frequently than twice monthly.

(5)      Seller shall promptly provide Buyer after request with all due diligence materials and information as  shall reasonably be requested in connection with the Lease, including, without limitation, existing real property surveys, environmental reports, real estate tax and utility records, complete copies of the subject leases and any abstracts prepared with respect thereto,

(b) Buyer's Designation Period Obligations.

(1) On a per diem basis during the period between the Closing and the earlier of the following:

(a) the entry of a Bankruptcy Court order approving the Assumption Motion, and the Closing of the assumption and assignment of the Lease to Buyer or it's designee,

(b) the entry of a Bankruptcy Court order approving the rejection and/or termination of the Lease (provided that if an Order entered in the Case permits rejection of a lease without a court order, then the first Business Day after rejection of the Lease has been accomplished),

Buyer (or its designee) shall either pay directly to lessor, or reimburse or advance to Seller all occupancy expenses with respect to the Lease.

(2) On entry of a Bankruptcy Court Order approving the assumption and assignment of the Lease to Buyer or its designee( an "Assignment Order"),  Seller shall promptly pay all Cure Costs required to be paid pursuant to such Assignment Order. "Cure Costs" shall mean all amounts to be paid to the lessor under such Real Property Lease to cure, satisfy or discharge all amounts due to such lessor for pecuniary loss, as agreed by Buyer or the Lessor or determined by a final and non-appealable order of the Court.  The Approval Order authorizing Seller to enter into and perform this Agreement shall provide that Buyer is a party in interest entitled to appear and be heard with respect to any dispute with lessor over Cure Costs, and in connection with any other matter related to the Lease during the Case.

(3) Access. During the Designation Period, Seller agrees to cooperate with Buyer to allow Buyer access to the premsie on reasonable advance notice.

(4) Buyer shall provide the evidence necessary to allow Seller obtain entry of an Assignment Order, including anything reasonably requested by the lessor in connection therewith.

(c) Designation Period.

(1) Buyer shall have the exclusive right to direct Seller to assume and assign, or reject the Lease, for the period commencing on the date of the issuance and entry of the Approval Order through and including 210 days after the Petition Date (the "Designation  Period"). The Approval

Order shall expressly extend the period within which the Seller may assume or reject the Lease for the entire Designation Period. Any and all proceeds realized by Buyer upon the sale, termination or other disposition of the Lease shall be the sole and exclusive property of Buyer.

(2) (a) Lease Assumption Notice. At any time at least 30 days prior to the expiration of the Designation Period, Buyer shall have the right, which right may be exercised at any time and from time to time in Buyer's sole and absolute discretion, to provide notice to the Seller (a "Lease Assumption Notice") of Buyer's election to require the Seller to assume the Lease and assign same to Buyer or a designee identified by in such Lease Assumption Notice. Within seven (7) days following the date upon which Buyer delivers a Lease Assumption Notice to Seller, Seller shall, at no additional cost or expense to Buyer, take all reasonable actions (including, without limitation, actions required under Section 365 of the Bankruptcy Code) to assume and assign the Lease to Buyer or the designee identified by Buyer under such Lease Assumption Notice. (b) Lease Termination Notice. At any time prior to the expiration of the Designation Period, Buyer shall have the right, which right may be exercised at any time and from time to time in Buyer's sole and absolute discretion, to provide notice to the Seller (a "Lease Termination Notice") of Buyer's election to require the Seller to reject and/or terminate the Lease, and terminate and surrender same to the lessor thereof. Seven (7) business days following the date upon which Buyer delivers a Lease Termination Notice to Seller and the landlord (the "Leased Property Termination Date"), Buyer shall have no further obligation or liability with respect to the Lease (including any obligation to continue to pay occupancy expenses with respect thereto) and Seller shall thereafter be solely responsible for all amounts payable or other obligations or liabilities that may be owed in connection with such Lease after the Leased Property Termination Date.

(3) Without limiting the generality of the foregoing, upon receipt of a Lease Assumption Notice or Lease Termination Notice, as applicable, Seller shall use its best efforts to obtain the entry of an order of the Court approving the assumption or termination of the Lease in accordance with the applicable notice. As used herein, the term "best efforts" shall not require Seller to pay any funds or assume any claims, but shall require Seller to expend or incur reasonable fees, costs and expenses for the payment of attorneys and other professionals whose services may reasonably be required by in connection with the prosecution of any motion seeking the entry of any such assumption and assignment, or termination (as applicable) order.

(4) Any and all prepaid expenses (including, without limitation, security deposits, tax and insurance escrows or similar impounds held by the lessor under the Lease) shall be the property of Buyer or its designee in the event of entry of an Assignment Order; or of Seller in the event of occurrence of a Leased Property Termination Date.