**GRAFF SILVERSTEIN LLP**
David Graff, Esq.
Matthew J. Silverstein, Esq.
3 Middle Patent Road
Armonk, NY 10504
Telephone: (212)-381-6055
dgraff@graffsilversteinllp.com
msilverstein@graffsilversteinllp.com

**PARSONS BEHLE & LATIMER**
Darren Neilson, Esq. (*pro hac vice* pending)
201 S Main St, #1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
DNeilson@parsonsbehle.com

*Counsel for Telegraph Marketplace Partners II, LLC*

**UNITED STATES BANKRUPTCY**
**COURT DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Joint Administration Requested) |

**REPLY IN SUPPORT OF MOTION TO CONFIRM ABSENCE OF AUTOMATIC STAY**

TO: THE HONORABLE JUDGE VINVENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

Creditor and landlord Telegraph Marketplace Partners II, LLC, a Utah limited liability company ("**Telegraph Partners**") hereby submits this Reply Memorandum ("**Reply**") in support of its Motion to Confirm Absence of Automatic Stay (the "**Motion**").

In its Objection Debtors are asking the Court to throw out an unambiguous contract and provide the Debtors with additional rights never envisioned or documented in the Lease Agreement[2]. As set forth in the Motion, this is a straightforward matter in which Debtors, failed to pay rent (in both the contracted time frame and the cure time frame), and Telegraph Partners properly exercised its right to terminate the Lease Agreement prior to Debtors' Petition Date. It appears that neither party disputes the legal basis of the argument but that Debtors dispute that the termination of the Lease Agreement is invalid.

Debtors' arguments in the Reply misapply or misunderstand the Lease Agreement and do not save it from its own failures. Actions have consequences. Debtors failed to follow the plain terms of the Lease Agreement and the consequences of their in action is the termination of the Lease Agreement.

Debtors have not made any argument that would cause the Court to continue to shackle Telegraph Partners with a below market lease which was properly terminated Pre-Petition. As the Lease Agreement was properly terminated, the Lease Agreement is not property of the Debtors' Estate and not subject to the automatic stay or the sale of the Lease Agreement to Burlington as set forth under 11 U.S.C. §§ 362(b)(10), 541(b)(2), and 365(c)(3).

A.  **The Lease Agreement is Unambiguous; Debtors Defaulted on Their Rent Obligations; and Telegraph Partners Properly Terminated the Lease.**

The Lease Agreement is unambiguous as such should be interpreted by the four corners of the document. A lease agreement, like any contract, "is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.' " *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (*quoting*

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to those terms in the Motion.

*Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)). The Lease Agreement in dispute is 42 pages long (76 pages including exhibits) and contains detailed definitions as well as detailed provisions setting forth the parties' course of conduct. Furthermore, nothing in the Objection, specifically alleges that the Lease Agreement is ambiguous. Finally, each of the issues raised by both Telegraph Partners and Debtors is dealt with in the Lease Agreement.

For instance:

- § 1.1.31 "Rent" is defined as "Fixed Rent and/or Additional Rent."
- §1.1.1 "Additional Rent" is defined as "Any monies which Tenant is required to Landlord under the terms and conditions of this Lease, other than Fixed Rent." Clearly Debtors Reconciliation Share would fall under the definition of "Additional Rent."
- §5.1.2(b) sets forth Tenant's Pro Rate Share of Common Areas Charges. In summary, it states that Tenant has sixty (60) days to pay landlord any deficiency set forth in a CAC Reconciliation Statement; Landlord shall promptly deliver to Tenant relevant backup materials required by Tenant; and if Landlord fails to timely remit to Tenant the amount of overpayment, Tenant has the right to offset such amount form payment of Rents.
- § 5.1.4 sets forth Tenant's right to Audit any CAC Reconciliation Statement. In summary, Tenant has a right to audit any CAC Reconciliation Statement within three (3) after receiving such statement. If there is an error by Landlord, Landlord shall reimburse Tenant or Tenant can offset payments of Rent.
- § 16.1.1 sets forth what constitutes and "Event of Default." Section 16.1.1 sets forth cure periods for monetary defaults and nonmonetary defaults. For monetary defaults (which is defined as obligations to pay any "Rent") Tenant has ten (10) days to cure after notice of a default, and for nonmonetary defaults

- Tenants has thirty (30) days to cure. Any failure to cure a default constitutes an "Event of Default."
- § 16.1.1(c) states that "upon at least five (5) days' notice to Tenant, to terminate this Lease, whereupon Landlord shall have and retain full right to sue for and collect all unpaid Rent of any such breach…,and Tenant shall surrender and deliver the Premises to Landlord, failing which, Landlord shall have the right to initiate summary proceedings to recover possession."
- § 18 provides detailed obligations as to how Notice shall be served on either party. Important to this dispute, notice is not effective until received, and Section 18 details how Landlord is to provide Notice (both default notice and billing notices) to Tenant.

1. **Debtors' Defaulted and Telegraph Partners Properly Terminated the Lease.**

Below is a condensed timeline of events for the Court's convenience:

- September 19, 2003 – Lease Agreement effective date.
- January 3, 2023 – CAC Reconciliation Statement is delivered to Debtors including a flash drive with all back-up documentation (See Exhibit B to Motion), triggering sixty (60) day window for Debtors to pay.
- March 6, 2023 – Debtors receive notice of default for failure to pay Reconciliation Share (See Exhibit C to Motion, including receipt of mail dated March 6, 2023), triggering ten-day cure period for a monetary default.
- March 12, 2023 – Debtors request insurance invoices and tenant roster from Telegraph Partners (See Exhibit A to Objection).
- March 12, 2023 – Telegraph Partners provides Debtors with requested information (See Exhibit A to Objection).

- March 13, 2023 – Debtors send Telegraph Partners an email stating "Please note that all invoices and inquires should be forwarded to leasepayable@bedbath.com" (See Exhibit A to Objection).
- March 13, 2023 – Telegraph Partners respond requesting further clarification of Debtors previous emails and requests Debtors to specify what documents Debtors are requesting (See Exhibit A to Objection).
- March 20, 2023 – Debtors request all "backup documents" by email (See Exhibit A to Objection).
- March 20, 2023 – Telegraph Partners sends Debtors the request documents (See Exhibit A to Objection).
- March 31, 2023 – Telegraph Partners notifies Debtors that they have terminated the Lease Agreement for failure to pay Rents and exercise § 16.1.1(c) of the Lease Agreement requiring the Debtors to vacate no later than April 6, 2023 (See Exhibit D to Motion).
- April 6, 2023 – Debtors "allegedly" submit their Reconciliation Share.
- April 10, 2023 – Telegraph Partners received Debtors Reconciliation Share.
- April 19, 2023 – After Debtors refused to vacate the Premise, Telegraph Partners initiated an unlawful detainer action to remove Debtors pending before the Firth Judicial District Court for the County of Washington, State of Utah, Case Number 230500322.
- April 23, 2023 – Debtors filed for bankruptcy protection.

2. **The Notice of Default was Proper**.

Debtors statement that the Notice of Default dated March 2, 2023, but received by Debtors on March 6, 2023 was premature and therefore not valid is untrue.  As mentioned above, Section 18 of the Lease Agreement states that "[a]ll notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) as the address of

the addressee." Exhibit B of the Motion contains both the notice of default as well as the receipt of delivery which is stamped March 6, 2023. As such, the Notice of Default was effective March 6, 2023, two days after the sixty-day deadline to pay its Reconciliation Share.

### 3. Debtors Right to Audit Did Not Alter Their Obligation to Pay Their Reconciliation Share.

The Lease Agreement gave Debtors the right to audit any CAC Reconciliation Statement (limited to the prior three years) as set forth in § 5.1.4 of the Lease Agreement. If there is a dispute as to the amounts owed, the Lease Agreement set forth a detailed procedure wherein Debtors could audit the CAC Reconciliation Statement. This built in audit feature demonstrates the parties understanding that the payment of their Reconciliation Share is not contingent upon Debtors analysis of the CAC Reconciliation Statement or any documentation backing up to the same.

Furthermore, Debtors had over sixty days to review the CAC Reconciliation Statement and back-up documentation as Telegraph Partners mailed them all of the documentation in accordance with Lease Agreement including the proper notice requirements in January 2, 2023. Rather than review the documents sent, Debtors sat on their hands and at the last moment on March 20, 2023 (after the cure deadline had past), requested back-up documentation by email. It should be noted that Debtors request for documentation by email is in direct contradiction to Section 18 of the Lease Agreement and Telegraph Partners had no obligation to email the documents. Notwithstanding this, Telegraph Partners email the requested documents the same day they were requested.

Debtors attempt to shoehorn their "audit" of the CAC Reconciliation Statement as non-monetary default (thus given them access to the longer 30-day cure period) simply misapplies or misunderstands the contract. Debtors default was for non-payment of Rents, thus triggering the shorter 10-day cure period. Debtors were not in default for failure to audit the CAC Reconciliation Statement and to argue otherwise makes no sense. Given the default was directly linked to the non-payment of Rents, Debtors only had 10 days to cure, and they did not.

**Conclusion**

For the foregoing reasons, Telegraph Partners respectfully request that the Court approve the Motion and confirm that Telegraph Partners properly terminated Debtor's lease on April 6, 2023, prior to the Debtor's bankruptcy. As such, the Lease Agreement falls outside of the Debtor's estate and is not subject to the automatic stay. Debtor requests an order with the Court allowing the Debtor to continue is unlawful detainer action against Debtor.

| | |
|---|---|
| Dated: July 21, 2023 | Respectfully submitted, |
| | /s/ David Graff |
| | David Graff<br>GRAFF SILVERSTEIN LLP<br>3 Middle Patent Road<br>Armonk, NY 10504<br>Phone: (212)-381-6055 |
| | **Counsel to** *Telegraph Marketplace Partners II, LLC* |