**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**BLANK ROME LLP**
Evan J. Zucker, Esq.
1271 Avenue of the Americas
New York, N.Y. 10020
(212) 885-5000
Evan.zucker@blankrome.com

*Counsel to 1019 Central Avenue Corp.*

In re:

BED BATH & BEYOND INC., *et al.*,

                                                  Debtors.

Chapter 11
Case No. 23-13359 (VFP)
(*Jointly Administered*)

**LIMITED OBJECTION OF 1019 CENTRAL AVENUE CORP. REGARDING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES**

1019 Central Avenue Corp. (the "Landlord") hereby objects ("Objection") to the proposed cure amount related to the Lease (defined below) set forth in the above-captioned Debtors' *Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 714] (the "Cure Notice") and to the assumption and assignment of the Lease as set forth in the *Notice of Successful and Backup Bidder with Respect to the Phase 2 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired leases* [Docket No 1428] (the "Assumption Notice"), and in support of this Objection, respectfully states as follows:

**BACKGROUND**

1.      Landlord and Bob's H.C., Inc. ("Bob's"), entered into a certain lease (the "Bob's Lease") dated as of March 7, 1995, for a portion of the building, as more particularly described in the Bob's Lease, located at 1019-1059 Central Park Avenue, Scarsdale, New York (the "Premises").

The Bob's Lease was subsequently amended by a First Amendment to Agreement of Lease (the "First Amendment") dated September 28, 1995, and the Second Amendment to Agreement of Lease (the "Second Amendment") dated as of June 3, 1997.

2.      The Bob's Lease, as amended by the First Amendment and the Second Amendment, was assigned by Bob's to Bed Bath and Beyond Inc. (the "Tenant") by an Assignment and Assumption of Lease (the "Assignment of Lease") dated July 3, 1997. Thereafter, the Tenant and the Landlord entered into the Third Amendment to Agreement of Lease, dated March 13, 2015 (the "Third Amendment" and together with the Bob's Lease, the First Amendment, the Second Amendment, and the Assignment of Lease, the "Lease"). While the Landlord's Lease is with the Tenant, the Tenant operated at the Premises under the Buy Buy Baby trade name.

3.      Pursuant to the terms of the Lease, the Tenant leases from the Landlord the Premises. The term of the Lease ends on January 31, 2026.

4.       On April 23, 2023 (the "Petition Date"), Bed Bath & Beyond Inc. and 73 affiliated debtors (collectively, the "Debtors"), filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      On April 25, 2023, the Court entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. 92] ("Bid Procedures Order"), authorizing the Debtors to conduct an auction to select the party to purchase substantially all of the Debtors' assets and approving certain procedures with respect to the assumption and assignment of leases and contracts in connection therewith.

6.      On May 22, 2023, the Court entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket

No. 422] ("Lease Sale Procedures Order"). The Lease Sale Procedures Order, among other things, approves additional sale procedures related to the Debtors' potential sale of leases.

7.      Pursuant to the Bid Procedures Order and the Lease Sale Procedures Order, the Debtors filed on June 13, 2023, the Cure Notice listing executory contracts and leases that the Debtors may assume and assign to a Successful Bidder (as defined in Exhibit 1 to the Bid Procedures Order). Among the leases listed on the Cure Notice is the Lease with the Landlord.

8.      The Cure Notice provides that there are no unpaid monetary obligations due under the Lease and thus the cure amount is $0.00 (the "Proposed Cure Amount").

9.      On June 20, 2023, the Landlord timely filed an objection to the Proposed Cure Amount indicating that not lease than $3,360.00 was due and owing under the Lease. [*See* Docket No. 784]. Specifically, pursuant to Article III, section 3(d), of the Lease, the Debtors owe the Landlord fees in the amount $3,360 with respect to the rent due for April 2023.

10.      On July 20, 2023, the Debtors filed the Assumption Notice indicating that the Debtors intend to assume and assign the Lease to Dream on Me.

11.      As of the date of this Objection, however, the aggregate amount of unpaid monetary obligations due to Landlord remains not less than $3,360.00. Pursuant to Article III, section 3(d), of the Lease, the Debtors owe the Landlord fees in the amount $3,360 with respect to the rent due for April 2023.

**OBJECTION**

12.      Section 365(b)(1) of the Bankruptcy Code provides as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default.

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

13.     Thus, section 365(b)(1) of the Bankruptcy Code provides that a debtor may not assume an unexpired lease unless it cures all defaults (or provides adequate assurance that defaults will be promptly cured).  *See, e.g., In re Newpage Corp.*, 517 B.R. 508, 514 (Bankr. D. Del. 2014) ("[B]efore a trustee or debtor in possession may assume a contract pursuant to § 365 of the Bankruptcy Code, it must cure all defaults, assure future performance, and make the other contracting party whole."); *In re Fleming Cos., Inc.*, No. 03-10945 (MFW), 2006 WL 2320974, at *1 (Bankr. D. Del. Aug. 9, 2006) (recognizing the "entitlement to an administrative claim for the amount necessary to cure the defaults that existed at the time the [contract or lease] was assigned."); *see also In re McLean Indus., Inc.*, 96 B.R. 440, 449 n. 11 (Bankr. S.D.N.Y. 1989) ("assumption creates a post-petition liability and requires cure of pre-petition and post-petition defaults").

14.     In order to assume and assign the Lease, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the Lease, including, without limitation, any and all defaults with respect to insurance requirements under the Lease, real estate taxes and other charges, amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Lease that remain undetermined as of the date hereof (the "Unliquidated Obligations").

For example, the Debtors are not entitled to assume the Lease by merely curing arrearages in rent. Instead, the Debtors must cure or provide adequate assurance of promptly curing all liquidated cure amounts and other Unliquidated Obligations under the Lease, including, without limitation, their current and future obligations to maintain the Premises and make repairs and replacements, as a condition to the assumption and assignment of the Lease.[1] *See* 11 U.S.C. § 365(b)(1).

15.     The Landlord objects to the Proposed Cure Amount and the assignment of the Lease as set forth in the Assignment Notice. Any order approving the assumption of the Lease, should make clear that all liquidated cure amounts must be paid at or prior to assumption and all Unliquidated Obligations under the Lease shall survive, regardless of whether such Unliquidated Obligation could be argued to have existed, occurred, or accrued prior to the assumption of the Lease.

16.     Based on currently available information, not less than $3,360.00 must be paid to the Landlord at or prior to closing to cure these and other defaults under the Lease. Such liquidated cure claims are comprised of unpaid prepetition rent and related charges. This cure is in addition to the Unliquidated Obligations or other cure amounts that may become due and owing after the date hereof and prior to the time the Lease is actually assumed, or any amounts that are currently unknown or undetermined by the Landlord. The Landlord reserves its right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for year-end adjustments not yet billed or due under the terms of the Lease, amounts that become due and owing after the date hereof and prior to the time the Lease is actually assumed, and the amounts that the Landlord becomes aware of after the date hereof.

---

[1] The Landlord has not inspected the Premises. As a result, the Landlord is not yet able to fully ascertain the magnitude of the maintenance and repair-related Unliquidated Obligations.

## RESERVATION OF RIGHTS

17.     The Landlord expressly reserves all rights under the Lease with respect to any and all obligations of the Debtors, including the right to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Premises, unsatisfied liens on the Premises created by the Debtors and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors.

18.     The Landlord further reserves all rights to raise further objections, as necessary or appropriate under the circumstances.

## CONCLUSION

WHEREFORE, the Landlord hereby requests that any order approving the assumption of the Lease be consistent with this Objection and (i) require the curing, at or prior to closing, of all monetary and non-monetary defaulted under the Lease as set forth in this Objection, (ii) grant the other relief requested herein, and (iii) grant the Landlord such other or further relief as is just and appropriate under the circumstances.

Dated:  July 24, 2023
        New York, New York

**BLANK ROME LLP**

 */s/ Evan J. Zucker*
Evan J. Zucker
1271 Avenue of the Americas
New York, New York 10020
Telephone:     (212) 885-5000
Facsimile:     (212) 885-5001
Email:         Evan.Zucker@BlankRome.com

*Counsel to 1019 Central Avenue Corp.*