Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897

Email:  rlehane@kelleydrye.com
jraviele@kelleydrye.com
cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Landlord, Edison BRMA002 LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:  <br><br>BED BATH & BEYOND, INC., *et al.*  <br><br>Debtors.[1] | Chapter 11  <br><br>Case No. 23-13359 (VFP)  <br><br>(Jointly Administered)  <br><br>**Hearing Date: July 28, 2023 at 10:00 a.m.**  <br>**Objection Deadline: July 25, 2023 at 5:00 p.m.** |

**LIMITED OBJECTION OF EDISON BRMA002 LLC**
**TO MOTION FOR ORDER AUTHORIZING DEBTORS TO**
**ASSUME AND ASSIGN LEASE FOR STORE NO. 3060 (BRAINTREE II)**

Edison BRMA002 LLC (the "Landlord"), landlord to debtor Bed Bath & Beyond, Inc.,

---

[1] Pursuant to the information provided by the Debtors, the last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

by and through its undersigned counsel, Kelley Drye & Warren LLP, submits this limited objection (the "Objection") to the proposed assumption and assignment (the "Proposed Assignment") of the unexpired lease of nonresidential real property for the retail store located at 160 Granite Street, Braintree, MA (the "Lease") to Dream 545 Weston Canal Road, LLC d/b/a Dream On Me Industries, Inc. ("Dream on Me", or the "Proposed Assignee"), pursuant to the Debtors' *Notice of Assumption and Assignment of Certain Unexpired Leases* (the "Assignment Notice")[2] and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Landlord is not fundamentally opposed to the assumption and assignment of the Lease to Dream on Me, but there are several issues with the Proposed Assignment that must be resolved as of the filing of this Objection.

2. First, the proposed cure amount for the Lease is incorrect. In addition, the Debtors have not adequately provided for cure of existing defaults under the subject Lease and compensation for pecuniary losses suffered by the Landlord, including reasonable attorneys' fees. The Debtors must also cure or provide adequate assurance that the Debtors or Proposed Assignee will cure all non-monetary defaults under the Lease.

3. Second, the Debtors have failed to meet their burden of demonstrating adequate assurance of future performance as required by Bankruptcy Code section 365(b)(3). Among other issues, as part of adequate assurance of future performance, the Debtors must satisfy any Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Lease. The Debtors must also (i) comply with all

---

[2] Docket No. 1447. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Assignment Notice.

contractual obligations to indemnify and hold the Landlord harmless with regard to events which occurred before assumption, but which were not known to the Landlord as of the date of the assumption, and (ii) continue to timely pay all rent, additional rent, and percentage rent due under the Lease until the Lease is assumed and assigned pursuant to section 365(d)(3) of the Bankruptcy Code.

4. The Debtors and the Proposed Assignee have also failed to provide any evidence regarding the similarity between the financial condition and operating performance of the Proposed Assignee and Debtors at the time the Lease was executed as required by section 365(b)(3) of the Bankruptcy Code.

5. The Landlord is willing to engage in discussions with the Proposed Assignee and Debtors and would prefer to resolve these issues consensually, but is filing this Objection in case the parties are unable to reach agreement. The Court should not approve the Proposed Assignment unless the several issues described below are remedied.

## BACKGROUND

### A. General Background

6. The Landlord is the owner or managing agent for the owners of numerous shopping centers located throughout the United States. The Debtors lease retail space from the Landlord pursuant to a written lease for retail space located at 160 Granite Street, Braintree, MA 02184 (the "Leased Premises" or the "Braintree Store"). The Leased Premises is located in a "shopping center," as that term is used in section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

7. On April 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition

Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.     The Proposed Lease Assignment**

8.     On May 22, 2023, this Court entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Lease Sale Procedures Order").[3]  Pursuant to the Lease Sale Procedures Order, on July 19 2023, the Debtors conducted the "Phase II" auction of certain of its real property leasehold interests, including the Lease.

9.     On July 21, 2023, the Debtors filed their *Notice of Successful and Backup Bidder with Respect to the Phase 2 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* (the "Phase II Auction Notice"),[4] which identified the Proposed Assignee as the successful bidder for the Lease, who submitted a bid of $85,796.00.

10.     On June 30, 2023, the Debtors filed the Assignment Notice, notifying parties in interest of the Debtors' request for this Court to approve numerous lease assignments, including the assignment of the Lease to the Proposed Assignee.

**OBJECTION**

**I.     THE CURE AMOUNT PROPOSED BY THE DEBTORS IS INCORRECT**

11.     The Landlord disputes the cure amount proposed by the Debtors in the Assignment Notice in connection with the assumption and assignment of the Lease. The correct amount outstanding under the Lease, including an estimate of attorney's fees incurred to date, is set forth below (the "Landlord Cure Amount"):

---

[3]     Docket No. 422.
[4]     Docket No. 1428.

| Store No. | Location | Landlord | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|---|
| 3060 | Braintree, MA | EDISON BRMA002 LLC | $10,796.30 | $51,925.40 |

12. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume the lease. As one court has noted, "[s]ection 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord In re Valley View Shopping Ctr., L.P.,* 260 B.R. 10, 25 (Bankr. D. Kan. 2001).

13. Pursuant to the Lease, the Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance ("CAM") costs and expenses, real estate taxes, and assessments. In addition, in order for the Proposed Assignment to be approved, all outstanding defaults under the Lease must be cured, and the Landlord must be compensated for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B). Attorneys' fees due under the Lease is compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *see also In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14–15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

14. To the extent that rent, attorney's fees, interest, or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Lease, the

Landlord reserves its right to amend the Landlord Cure Amount to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2022 and 2023, which have not yet been billed or have not yet become due under the terms of the Lease (the "Adjustment Amounts").  As such, the Debtors must be responsible to satisfy all accrued but unbilled obligations under the Lease, including the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts were incurred.  The Landlord further reserves its right to amend all cure amounts to include additional amounts that continue to accrue, including non-monetary obligations, and any other obligations that arise and/or become known to the Landlord prior to assumption and assignment of the Lease.

**II.    DEBTORS MUST PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE TO ASSUME AND ASSIGN THE LEASE**

15.    In addition to the curing of any default, the Proposed Assignment is also conditioned upon providing the Landlord with adequate assurance of future performance.  11 U.S.C. § 365(b)(1)(C).  Section 365(f)(2)(B) of the Bankruptcy Code provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."  *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

16.    While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case.  *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009).  The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection

from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

17. The initial burden of presentation as to adequate assurance falls upon Debtors. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The Sea Harvest court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, supra, 868 F.2d at 1080.

18. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002), aff'd sub nom. *Ramco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003). Accordingly, section 365(b)(3) of the Bankruptcy Code provides, in pertinent part:

> [A]dequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance —
>
> > (a) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
> >
> > (b) that any percentage rent due under such lease will not decline substantially;

7

> (c) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (d) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

19. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Ctr., Inc.,* 100 B.R. 147, 148–149 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393–394 (Bankr. M.D. Fla. 1986); *see also In the Matter of CM Sys., Inc.*, 64 B.R. 363, 364–65 (Bankr. M.D. Fla. 1986).

20. As discussed below, the Debtors have not satisfied their burden with respect to many of the elements of adequate assurance of future performance set forth in section 365(b)(3).

A. **The Lease is for Real Property in a Shopping Center**

21. It cannot be seriously disputed that the Lease is for "real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-1087 (3d Cir. 1990); *In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, the Landlord is entitled to the protections afforded shopping center landlords under Bankruptcy Code section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 298 (3d Cir. 2000).

>   **B.**    **Debtors Failed to Establish the Financial Condition and Operating Performance of Dream on Me is Similar to the Financial Condition and Operating Performance of the Debtors at the Time the Lease was Executed**

22. The Debtors bear the burden of proving adequate assurance of future performance in connection with assumption of the Lease. *See In re F.W. Rest. Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *see also In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

23. Here, however, the Debtors have failed to provide any financial information as to the financial condition of Buy Buy Baby, Inc. ("BBB"), the tenant under the lease, in order to provide a "benchmark" against which the Proposed Assignee's financial condition and operating history can be measured. *See* 11 U.S.C. § 365(b)(3)(A). Additionally, the Landlord has not been provided with sufficient financial information about the Proposed Assignee that would allow the Landlord to compare to the financial condition and operating performance of the Proposed Assignee with that of BBB at the time BBB became the lessee under the Lease, as required by section 365(b)(3)(A) of the Bankruptcy Code. Accordingly, unless and until the Landlord is provided with such information, the Debtors may not assume and assign the Lease.

>   **C.**    **Debtors Must Account for Accrued but not yet Billed Amounts**

24. Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C). As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing*:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the . . . estate from any liability for any breach of such . . . lease occurring after such assignment." A party

9

> subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993); *see also In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (stating that adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.").

25. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of the Lease is "subject to all the provisions thereof . . . ." 11 U.S.C. § 365(b)(3)(C), either the Debtors must make arrangement for such payment by establishment of a segregated, reserve account for that purpose or the Proposed Assignee must have responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits). As a matter of law, however, a debtor is not entitled to the benefits and protections of section 365(k) of the Bankruptcy Code where the debtor does not assume and assign the lease *cum onere* — with all benefits and burdens. *See, e.g.*, *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

26. As with most modern shopping center leases, the Lease provides for the monthly payment of "Tenant's Proportionate Share" of the CAM expenses, which are based on budgeted amounts and subject to later reconciliation based on actual expenses incurred. Here, paragraph 4 of the Debtors' proposed Assignment and Assumption Agreement provides that the Assignor shall cure "all defaults or other obligations arising or accruing prior to the date of entry

10

of the Approval Order, whether billed or unbilled, due or not due." *See* Assignment Notice, pp. 20–23 (the "Assignment Agreement"), at ¶ 3.

27. For the avoidance of doubt, all defaults or obligations arising or accruing prior to the date of entry of the Approval Order (defined in the Assignment Agreement), whether billed or unbilled, due or not due, must include real estate taxes, common area maintenance, and insurance. In other words, either (i) the Proposed Assignee or the Debtors must provide for the payment of these expenses by the establishment of a segregated reserve account for that purpose or (ii) the Proposed Assignee must assume responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits), even though future billings may include expenses that accrue prior to entry of the Approval Order under the Assignment Agreement.

### D. Debtors Must Provide Adequate Assurance of Indemnification Obligations

28. In addition to the monetary obligations that either Debtors or the Proposed Assignee must satisfy under section 365 of the Bankruptcy Code, the Lease provides that the Debtors must indemnify and hold Landlord harmless against all loss, liability, penalties, claims or demands of whatsoever nature arising from, among other things, tenant's use of the Leased Premises or breach of any provision of the Lease. There is no exclusion or limitation on such indemnification with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to the Landlord, the Debtors or any assignee until after the Proposed Assignment.

29. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) the Proposed Assignee must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary

contained in the Assignment Agreement, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

### III.    DEMAND FOR ADDITIONAL SECURITY

30. Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

31. In the ordinary course of their business, the Landlord may require security deposits or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history of the proposed assignee and reserve the right to require such security in one of the forms required by section 365(l) of the Bankruptcy Code.

32. In this case, the Proposed Assignee is a newly formed company with no history of operating a retail company of any size that is simply not comparable to the Debtor at the time the Lease was entered into. As a result, the Landlord requires significant security for performance of the debtor's obligations under the Lease in the form of either (i) an unconditional unlimited parent guaranty from a financially sound entity with appropriate assets, or (ii) a significant security deposit of letter of credit of at least one year of the gross rent obligations

under the lease, and reserves the right to modify this demand as additional information about the Proposed Assignee is provided.

## **RESERVATION OF RIGHTS**

33. The Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by Debtors or the Proposed Assignee, or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

**WHEREFORE**, the Landlord requests that the Court enter an order approving the assignment of the Lease, conditioned on the applicable Order requiring (i) cure of all defaults under the Lease; and the Proposed Assignee providing (a) adequate assurance of future performance as required by section 365(b)(3) of the Bankruptcy Code and (b) a letter of credit, security deposit or unconditional parent guaranty from a solvent entity appropriate under the circumstances as required by section 365(l) of the Bankruptcy Code.

Dated: July 25, 2023               Respectfully submitted,


/s/ Robert L. LeHane_____
Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Connie Choe, Esq.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
            jraviele@kelleydrye.com
            cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Landlord, EDISON BRMA 002 LLC*