|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>BALLARD SPAHR LLP<br>Leslie C. Heilman<br>Laurel D. Roglen<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail:  heilmanl@ballardspahr.com<br>            roglenl@ballardspahr.com<br><br>Dustin P. Branch<br>Nahal Zarnighian<br>2029 Century Park East, Suite 1400<br>Los Angeles, CA 90067-2915<br>Telephone: (424) 204-4354<br>Facsimile: (424) 204-4350<br>E-mail:  branchd@ballardspahr.com<br>            zarnighiann@ballardspahr.com<br><br>*Counsel to CVSC, LLC, Congressional Plaza Associates, LLC, Federal Realty OP LP, and UE 675 Route 1 LLC* | |
| In re<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                                  Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**OBJECTION OF CVSC, LLC, CONGRESSIONAL PLAZA ASSOCIATES, LLC, FEDERAL REALTY OP LP, AND UE 675 ROUTE 1 LLC TO (I) NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) NOTICE OF SUCCESSFUL AND BACKUP BIDDER WITH RESPECT TO THE PHASE 2 AUCTION OF CERTAIN OF THE DEBTORS' LEASE ASSETS AND ASSUMPTION AND ASSIGNMENT OF <u>CERTAIN UNEXPIRED LEASES</u>**

CVSC, LLC, Congressional Plaza Associates, LLC, Federal Realty OP LP, and UE 675 Route 1 LLC (the "<u>Landlords</u>"), by and through their undersigned counsel, hereby file this objection (the "<u>Objection</u>") to the (I) *Notice to Contract Parties to Potentially Assumed*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Executory Contracts and Unexpired Leases* [Docket No. 714] (the "Cure Notice") and (II) *Notice of Successful and Backup Bidder with Respect to the Phase 2 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1428] (the "Phase 2 Notice"), and respectfully represent as follows:

## I. BACKGROUND

1. On April 23, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of New Jersey (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.[2]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations set forth below.

3. Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. On May 3, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 193] (the "Lease Sale Motion"),[3] pursuant to which they sought the Court's approval of procedures by which the Debtors are authorized to conduct one or more auctions for the sale of certain unexpired leases of nonresidential real property.

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").
[3] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Phase 2 Notice and accompanying documents.

5. On May 22, 2023, the Court entered the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422] (the "Lease Sale Procedures").

6. On June 13, 2023, Debtors filed the Cure Notice. The Cure Notice identifies, *inter alia*, certain unexpired leases that may be assumed and assigned in connection with the Sale to the Successful Bidder or Backup Bidder, along with the amounts, according to the Debtors' books and records, which must be paid to cure any defaults existing under such unexpired leases as of the Petition Date.

7. On July 1, 2023, the Debtors filed the *Notice of (I) Phase 2 Lease Auction and Potential Lease Sale Hearing and (II) Extension of Dates and Deadlines Related Thereto* [Docket No. 1162]

8. On July 17, 2023, the Debtors filed the *Supplemental Notice of Phase 2 Lease Auction, Qualified Bids, Lease Sale Hearing, and Related Lease Asset Information* [Docket No. 1392].

9. On July 19, 2023, pursuant to the Lease Sale Procedures Order, the Debtors conducted the Lease Auction.

10. On July 20, 2023, the Debtors filed the Phase 2 Notice, in which they advised that the Phase 2 Lease Auction resulted in the proposed sale of the Leases to the Successful Bidders and Backup Bidders.

11. The cure amounts set forth in the Cure Notice do not reflect all outstanding balances due and owing to Landlords under the Leases, or account for accrued but unbilled charges which may come due in the future. The cure amounts must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein. In addition, Landlords have requested adequate assurance of future performance information to determine that the Successful Bidders will comply with the use and exclusivity provision of the Leases and other leases in their Centers, as well as meet the

3

other requirements of Section 365(b)(3)(A) – (D) of the Bankruptcy Code. Finally, Landlords have not received a propose form of asset purchase agreement or form of sale order related to the proposed purchase of the leases and assumption and assignment of the Leases to the Successful Bidders. Pending receipt of such information, Landlords reserve all of their rights to raise objections to adequate assurance of future performance, the terms of any final asset purchase agreement, and the proposed form of Sale Order. Landlords will continue to work with the Debtors and Successful Bidders to review and resolve any issues, but in the interim, Landlords hereby file this general, limited objection and reserve their rights to raise these additional issues at or before the Sale Hearing.

## II. CURE OBJECTION

### A. The Debtors' proposed cure amounts as set forth in the Cure Notice fail to provide for the payment of all obligations due under the Leases.

12. In order to assume and assign the Leases, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code, which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph; . . . .

11 U.S.C. § 365(b)(1).

13. The Landlords' cure as compared to the proposed cure amounts set forth in the Cure Notice is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1-3, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Location | Successful Bidder | Debtors' Cure | Landlords' Cure[4] | Exhibit |
|---|---|---|---|---|---|---|
| CVSC, LLC | Cascade Village Shopping Center (Store No. 812) | Bend, OR | Scandinavian Designs | $4,761.68 | $16,873.81 | 1 |
| Congressional Plaza Associates, LLC (Buy Buy Baby) | Congressional Plaza (Store No. 3001) | Rockville, MD | Dream on Me | $71,136.34 | Agreed | N/A |
| Federal Realty OP LP (Buy Buy Baby) | Ellisburg Shopping Center (Store No. 3010) | Cherry Hill, NJ | Dream on Me | $0.00 | $106,242.84 | 2 |
| UE 675 Route 1 LLC (Buy Buy Baby) | The Plaza at Woodbridge (Store No. 3130) | Woodbridge (Iselin), NJ | Dream on Me | Unknown[5] | $67,946.69 | 3 |

i. **Year-end Adjustments and Reconciliations**

14. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed

---

[4] Except where indicated, Landlords' Cure does not include July 2023 monthly rent charges or charges arising after filing this Objection, or charges not directly billed to Landlords as of the filing of this Objection. Landlords' Cure also does not include charges that are billed directly to Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to Debtors' failure to pay, or to the extent that there are other charges that come due under the Leases after the date of this Objection, Landlords retain and reserve the right to payment of these amounts when billed in the ordinary course under the Leases (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

[5] Landlord is unable to determine which entry in the Cure Notice refers to this location.

5

minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2022 may not yet have been billed under the Leases, and such charges that are accruing for 2023 will not be billed until 2024). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.

      ii.    **Attorneys' Fees, Costs, and Interest**

15.    The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

16.    The Debtors (or any assignee) take the Leases *cum onere*—subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of its Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords

6

are entitled to the full benefit of the bargain under their Leases with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352-55 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

17. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or any successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. In re Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex

7

Entm't Corp., et al., 01 Civ. 8946 (RWS), 2002 U.S. Dist. LEXIS 6186 at *25 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

### iii. The Cure Amounts Serve Only As Estimates.

18. Landlords can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this limited Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

### iv. The Debtors Or Any Assignee Must Pay Undisputed Cure Amounts Immediately.

19. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for any Lease, the undisputed portion of the cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

### III. LIMITED OBJECTION TO SALE AND ASSUMPTION AND ASSIGNMENT AND RESERVATION OF RIGHTS

    A.    **The Debtors must demonstrate adequate assurance of future performance to assume and assign the Leases to a proposed purchaser.**

    20.    The Debtors may not assume and assign the Leases unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. See In re Rachels Indust, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); see also Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. See, e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

    21.    In this case, the Leases are shopping center leases and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Leases under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

9

- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

22. This heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). Sun TV and Appliances, Inc., 234 B.R. at 370. In connection with the heightened adequate assurance requirement for shopping center leases, courts also require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance. Matter of Haute Cuisine, Inc., 58 B.R. at 394.

### B. Any assumption and assignment must comply with terms of the Leases.

23. Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

24. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

25. BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

26. Section 365(f)(1) does not modify or override Section 365(b). Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.), 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)). Any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance. Landlords currently have no reason to believe that the Successful Bidder intends to use the Premises other than in conformity with all applicable use and exclusivity provisions. Nonetheless, to the extent that the Successful Bidder does not intend to comply with the use or other provisions of the Leases, Landlords reserve their rights to object to any such issues at the Sale Hearing.

**C.  Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations, and any indemnification obligations.**

27. The Lease Sale Motion provides that, at the Sale Hearing, the Debtors will seek entry of a sale order approving the sale free and clear of all liens, claims and liabilities, including as they relate to unexpired leases.  (Lease Sale Motion, ¶¶ 56-58)  Any sale "free and clear" must exclude all obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, or are accruing, but which have not yet been billed.  Debtors and/or the Successful Bidder continue to be responsible for <u>all</u> unbilled charges as they come due under the Leases, and Debtors and/or the proposed purchaser must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods.  Any assumption and assignment of the Leases cannot cut off Landlords' rights to recover unbilled charges that have accrued, or are accruing, under the Leases.  This is impermissible in the context of the assumption and assignment of the Leases, and the Landlords request that any final sale or assumption and assignment order ensure that their right to payment of these charges is preserved.

28. Moreover, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents.  Any final order must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose.  In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any such claims that relate to the period prior to any assumption and assignment of the Leases.  These charges and obligations must survive the assumption and assignment of the Leases, and any order should be clear that the ultimate purchaser will inherit the responsibility

for all unbilled charges that may come due under the Leases, as well as the indemnity obligations existing under the Leases.

### D.  Assumption and Amendment Agreement

29.  Landlords request that, as a condition to any order approving assumption and assignment of Landlords' Leases, any assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to Landlords under the provisions of Landlords' Leases.  A form of Assumption and Amendment Agreement will be made available upon request.

### IV.  JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

30.  To the extent consistent with the objections expressed herein, Landlords join in the objections of other landlords.  Additionally, this Objection is without prejudice to Landlords' ability to raise further objections at the Sale Hearing.

### V.  CONCLUSION

The Landlords respectfully request that any sale or assumption and assignment order (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, (iii) order compliance with all Lease provisions, additional security to Landlords, as necessary, to satisfy adequate assurance requirements, and that any assignee enter into a short form Assumption and Amendment Agreement; and (iv) grant the other relief requested herein.

Dated: July 25, 2023  
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*  
Leslie C. Heilman, Esquire  
Laurel D. Roglen, Esquire  
BALLARD SPAHR LLP  
919 N. Market Street, 11th Floor  
Wilmington, DE 19801  
Telephone: (302) 252-4465  
Facsimile: (302) 252-4466  
E-mail:  heilmanl@ballardspahr.com  
             roglenl@ballardspahr.com

        and

Dustin P. Branch, Esquire
Nahal Zarnighian, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: (424) 204-4354
Facsimile: (424) 204-4350
E-mail: branchd@ballardspahr.com
       zarnighiann@ballardspahr.com

*Counsel to CVSC, LLC, Congressional Plaza Associates, LLC, Federal Realty OP LP, and UE 675 Route 1 LLC*