**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al*., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED**
**LEASES AND (B) ABANDONMENT OF ANY PERSONAL PROPERTY,**
**EFFECTIVE AS OF THE REJECTION DATE AND (II) GRANTING RELATED RELIEF**

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

## Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) authorizing the Debtors to (i) reject certain unexpired leases of non-residential real property, including any guaranties thereof and any amendments, modifications, supplements, or subleases thereto (each, a "Lease," and collectively, the "Leases") a list of which is annexed as Schedule 1 to **Exhibit A** attached hereto, and (ii) abandon certain equipment, fixtures, furniture, or other personal property that may be located at the premises (collectively, the "Personal Property"), each effective as of the Rejection Date (as defined herein); and (b) granting related relief.[2]

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2]   Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 365(a), and 554 of title 11 of the United States Code (the "Bankruptcy Code"), rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.      On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 24, 2023, the Court entered an order [Docket No. 75] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  On May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 218].

## Leases to be Rejected

6.      Throughout these Chapter 11 Cases the Debtors have conducted enterprise-wide store closing sales (the "Store Closing Sales").  To that end, the Debtors filed a motion on the Petition Date seeking authority to continue the ongoing prepetition store closing process, initiate the process of closing all remaining stores, and obtain approval of procedures for any Store Closing Sales initiated postpetition.[3]  In accordance with the relief granted by the Store Closing Order,

---

[3]      *See Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and*

the Debtors have carried out the shuttering all of their stores across the United States (each, a "Closing Store" and collectively, the "Closing Stores").  Pursuant to the relief granted by the Store Closing Order, and concurrent with the Debtors' tireless efforts to secure either going-concern or lease assignment bids, the Debtors ran Store Closing Sales in order to monetize the inventory at the Closing Stores.  By July 31, 2023, the Debtors will have finalized the Store Closing Sales and will no longer be operating any stores.

7.        The Debtors sought to maximize the value of their estates through the sale of the Debtors' assets, including their valuable Leases.  Accordingly, pursuant to the relief granted by the Lease Sale Order (as defined herein), the Debtors conducted two thorough Lease Auctions[4] to identify acceptable buyers for some or all of the Leases.  The Debtors, in a sound exercise of their business judgment, determined that it is in the best interests of the Debtors' estates to reject any Leases that do not provide value to the estates and that did not generate value in either Lease Auction, including those Leases listed on Schedule 1 to the Order.

8.        By this Motion, the Debtors seek to reject the Leases set forth in Schedule 1, to be effective as of the later of (i) the Rejection Date set forth in Schedule 1 or (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and

---

*Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 28] (the "Store Closing Motion").  On June 6, 2023, the Court entered the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 641] (the "Store Closing Order"), granting the relief sought on a final basis.

[4]        "Lease Auction" shall have the meaning set forth in the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422] (the "Lease Sale Order").

security codes, if any, are not available, but the landlord may rekey the leased premises (the "Rejection Date").  The Debtors may modify the Rejection Date set forth in Schedule 1, subject to the Court's entry of the Order, only upon seven (7)-days' notice to affected landlords. For the avoidance of doubt, the Debtors may agree with an affected landlord, through written confirmation (which can be by email through counsel), to an alternative Rejection Date earlier than the Rejection Date set forth in Schedule 1.

9.      In addition to posting the Leases on the A&G Real Estate Partners, LLC website, the Debtors have made clear at numerous hearings and in filings with the Court that, absent a viable going concern buyer, these Chapter 11 Cases would result in an enterprise-wise winddown.  As a result of the Debtors' consistent actions and transparency, the landlords have had ample notice of the Debtors' impending irrevocable and unequivocal surrender of the Closing Stores and associated abandonment of any remaining Personal Property located therein.

10.      The Leases, including any subleases thereto (such subleases, the "Subleases"), provide no benefit to the Debtors' estates or these Chapter 11 Cases.  Ultimately, the last Bed Bath & Beyond store location is shutting its doors permanently by the end of this month.  As an enterprise that is going to cease to exist in its prepetition form, and because the Debtors were unable to realize value in the form of assumption and assignment of their leasehold interests, the Debtors must now reject all remaining store leases.  The Debtors have filed several rejection notices in accordance with the *Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 382] to substantially accomplish that goal.  For the avoidance of doubt and to ensure that all affected parties are afforded unabbreviated notice and opportunity to be heard, the Debtors seek by this Motion to reject the Leases at which there remains a subtenant, and any related Subleases.  It would

be an inefficient use of estate resources if the Debtors were required to continue serving as nothing

other than a "middleman" for its Subleases.  Rent collected from the Subleases does not alone

justify assuming any Lease on economic grounds and as an enterprise approaching its final days

of operation, serving this administrative function does not make commercial sense for the Debtors'

stakeholders.

11.     Absent rejection, the Debtors would be obligated to pay rent under the Leases even

though they will have ceased operations at, and will no longer be in possession of, such store

locations.  As of the Rejection Date, the Debtors will have, to the best of their ability, vacated the

Closing Stores related to the Leases sought to be rejected by this Motion.  The presence of the

Subleases does not affect this.

12.     Accordingly, in an effort to reduce unnecessary postpetition rent and administrative

costs, and in furtherance of the winddown of the Debtors' estates, the Debtors have determined

that it is in the best interests of their estates to reject the Leases set forth on Schedule 1, effective

as of the Rejection Date.

**Personal Property to Be Abandoned**

13.     To reduce postpetition administrative costs and in the exercise of the Debtors'

sound business judgment, the Debtors believe that the abandonment of any Personal Property,

owned by the Debtors and located within the premises set forth on Schedule 1 to the Order, as of

the Rejection Date is appropriate and in the best interests of the Debtors, their estates, and their

creditors.

**The Subleases**

14.     While the termination of a sublease is automatic upon the rejection of a prime lease,

for the avoidance of doubt, by this Motion, the Debtors expressly seek to reject all Subleases

related to the Leases set forth on Schedule 1.  This belt-and-suspenders approach should provide

6

clarity and notice to all relevant parties.  The Debtors, for their part, will have ceased all store-level

operation enterprise-wide, vacated all premises in which they previously operated stores, and

abandoned any unrecovered Personal Property located therein as of the Rejection Date.  All of the

Debtors' stores will close at the end of July and all attention will turn to administering the

winddown of the estates.  It is an inefficient use of resources to divert a subset of the Debtors'

remaining employees to administer a middleman function in the context of the Leases where a

subtenant remains in place paying some or all of the associated rent.  Accordingly, the Debtors do

not believe that it would be value-maximizing to their estates to continue to incur all of the direct

and incidental costs and fees associated with the Leases in order to continue with the Subleases.

Such a non-accretive drain of resources to preserve a non-core source of revenue would be

antithetical to good business judgment.  For that reason, the Debtors reject the Subleases pursuant

to section 365 of the Bankruptcy Code.

15.    Further, many of the Subleases identified on <u>Schedule 1</u> are by and among the

Debtors, on one hand, and buybuy BABY or another liquidating chapter 11 debtor, Christmas Tree

Shops, LLC[5] or certain of its affiliates (collectively, the "<u>Liquidating Subtenants</u>"), on the other

hand.  As a result, Subleases with Liquidating Subtenants will generate no free cash flow for the

Debtors, and will only serve to expose the Debtors to needlessly mounting administrative claims.

As a result, rejection of the Subleases is a sound exercise of business judgment and should be

approved as of the Rejection Date.

---

[5]    The Christmas Tree Shops, LLC debtors' cases are currently pending in the jointly administered case, styled
*In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del.).  The Debtors have consulted with the
Christmas Tree Shops, LLC debtors regarding the filing of this Motion and the rejection of the Leases.

**Basis for Relief**

**I.    Rejection of the Leases Reflects the Debtors' Sound Business Judgment.**

16.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject executory contracts or unexpired leases is a matter within the "business judgment" of the debtor. *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) *aff'd*, 465 U.S. 513 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995). Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See, e.g.*, *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511–12 (Bankr. D. Del. 2003). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

17.    The Debtors' rejection of a contract or unexpired lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989). Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See, e.g., In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court

8

approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

## II.    Rejection of the Leases is in the Best Interest of the Debtors' Estates.

18.    After evaluation and analysis, the Debtors, with the assistance of their advisors, have determined that there is no net benefit that is likely to be realized from the Debtors' efforts to retain and further market the Leases, and that there is no conceivable likelihood that the Debtors will be able to realize value from the Leases.  Therefore, the Leases are otherwise a burden to the Debtors' estates and cannot be efficiently administered by the Debtors' estates during the remainder of these Chapter 11 Cases.  The Debtors have run an extensive auction process in order to identify a going concern buyer for some or all of their businesses, but no such buyer materialized.  Instead, the Debtors have maximized value by generating sales of their intellectual property and of certain Leases.  The Leases which remain are only those for which no buyer was forthcoming.  At this stage of these Chapter 11 Cases, the Debtors' sole business is efficiently administering the winddown of their estates.  The Leases, for which the market has not shown interest, simply serve no further business purpose to the Debtors or their estates in the successful administration of a winddown.

19.    The Debtors seek to reject the Leases, pursuant to section 365(a) of the Bankruptcy Code, to avoid the incurrence of any additional unnecessary expenses related to the Leases and the maintenance of the premises related thereto.  The Debtors have concluded that the cost of maintaining their interest in the Leases (including the Debtors' service as a middleman between their respective landlords and subtenants) outweighs any revenues that such stores or premises currently generate or that they are likely to generate in the near future.  Absent rejection, the Debtors believe that the Leases will continue to burden the Debtors' estates with substantial administrative expenses at a critical time when the Debtors are making concerted efforts to

maximize liquidity and preserve the Debtors' estates. Rejecting the Leases will help ease the Debtors' cash burn and increase the Debtors' liquidity.

20. For all of the foregoing reasons, the Debtors have decided, in the exercise of their sound business judgment, to reject the Leases. Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the rejection of the Leases pursuant to section 365(a) of the Bankruptcy Code.

## III. Rejection of the Leases as of the Rejection Date Is Appropriate.

21. Section 365 of the Bankruptcy Code does not specifically address whether the Bankruptcy Court may order rejection to be applied retroactively. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating that section 365 allows for retroactive rejection of nonresidential leases where the principles of equity dictate); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively"). Many courts, including this Court in these Chapter 11 Cases,[6] have held that bankruptcy courts may, in their discretion, authorize rejection retroactively to a date prior to entry of the order authorizing such rejection where the balance of equities favor such relief. *See, e.g., In re Virginia Packaging Supply Co., Inc.*, 122 B.R. 491, 493 (Bankr. E.D. Va. 1990) (allowing retroactive rejection of a lease where the debtor timely filed a motion for rejection); *see also, e.g., In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (granting retroactive rejection where equitable considerations did not weigh against it); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive

---

[6] *See Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Effective as of the Rejection Date, and (II) Granting Related Relief* [Docket No. 373] (granting retroactive rejection of certain leases of non-residential real property as of the Petition Date).

rejection date falls outside of its authority when the balance of the equities favors this solution."); *In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) *cert. denied sub nom.*, 546 U.S. 814 (2005) (affirming bankruptcy court's approval of retroactive rejection); *In re Thinking Machs., Corp.*, 67 F.3d 1021, 1028 (1st. Cir. 1995) ("[B]ankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."). In considering whether to approve retroactive rejection, courts examine a number of factors, and generally approve retroactive rejection where it promotes the purposes of section 365(a) of the Bankruptcy Code. *See In re Chi-Chi's, Inc.*, 305 B.R. at 339.

22.    In this instance, the balance of the equities favors approval of retroactive rejection of the Leases. Upon the applicable Rejection Date of the Leases identified in Schedule 1, the affected landlords will be relieved of their own obligations under the Leases, allowing them to cease performance and immediately repossess their property in accordance with applicable non-bankruptcy law.

23.    Pursuant to section 365 of the Bankruptcy Code, the Debtors seek to effectuate rejection of the Leases as of the Rejection Date, which, in the case of each Lease on Schedule 1 to the Order, occurs before the date an order approving rejection of the Leases has been entered by the Court. For the reasons set forth above, permitting rejection of the Leases to occur as of the Rejection Date is fair and equitable to all parties in interest, especially where the counterparties to the Leases will not be prejudiced thereby. Permitting rejection to occur as of the Rejection Date is consistent with prior rulings in this and other jurisdictions. *See, e.g.*, *In re Bed Bath & Beyond, Inc.*, No. 23-13359 (VFP) (Bankr D.N.J. May 17, 2023) (authorizing rejection of unexpired leases effective as of a specified date); *In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. Jan. 28, 2021) (same); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 10, 2020)

(same); *In re Modell's Sporting Goods, Inc.,* No. 20-12179 (VFP) (Bankr. D.N.J. Mar. 13, 2020)

(same); *In re Alex & Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. July 16, 2021) (authorizing

rejection of unexpired leases effective as of the petition date).[7]

24.    A court may permit such retroactive rejection to avoid unduly exposing a debtor's

estate to unwarranted postpetition administrative or other expenses.  If the relief requested is not

granted, the Debtors and their creditors will be burdened with unnecessary expenses.  Moreover,

the counterparties to the Leases will not be unduly prejudiced, because (a) the counterparties have

notice of the Debtors' intent to reject the applicable Leases and (b) the Debtors will have vacated

the leased premises to the extent possible and otherwise abandoned the Personal Property.  *See,*

*e.g., Bildisco & Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date);

*In re Thinking Machs. Corp.*, 67 F.3d at 1028 ("In the section 365 context . . . bankruptcy courts

may enter retroactive orders of approval, and should do so when the balance of equities

preponderates in favor of such remediation."); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (D.

Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the

effective date of rejection at least as early as the filing date of the motion to reject").

**IV.    Abandonment of Any Personal Property Located at the Closing Stores is Authorized
by Section 554(a) of the Bankruptcy Code.**

25.    Section 554(a) of the Bankruptcy Code provides that, "[a]fter notice and a hearing,

the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also In re Wilson*,

94 B.R. 886, 888 (Bankr. E.D. Va. 1989) ("It is well settled, however, that a trustee is not obligated

to accept onerous or unprofitable property surrendered as part of the estate, and may abandon

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.
Copies of these orders are available upon request to the Debtors' proposed counsel.

property that is 'burdensome' or 'of inconsequential value and benefit' under § 554 of the Code.")
(internal citations omitted).   The right to abandon property is virtually unfettered, unless:
(a) abandonment of the property will contravene laws designed to protect public health and safety;
or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l
Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant under the instant facts and
such right has already been reaffirmed in the *Final Order (I) Authorizing the Debtors to Assume
the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales,
with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances (III) Authorizing
Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket
No. 641] at ¶ 16, 21.  Accordingly, abandonment is authorized here.

26.     The Debtors submit that any Personal Property owned by the Debtors left at any of
the stores associated with the Leases is of inconsequential value to the Debtors' estates, or the
costs to the Debtors of retrieving, marketing, and reselling the Personal Property will exceed the
recoveries, if any, that the Debtors and their estates could reasonably obtain in exchange for such
property.   Accordingly, the Debtors have determined, in the exercise of their sound business
judgment, that abandonment of any Personal Property will be in the best interest of the Debtors
and their estates.

**V.      Rejection of the Leases Acts to Reject the Subleases Which Do Not Impede Rejection
as of the Rejection Date.**

27.     It is blackletter law that a debtor may assume or reject an executory contract or
unexpired lease, and that such assumption or rejection must be of the entire contract.   *In re Rickel
Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (citing *Stewart Title Guar. Co.*, 83 F.3d
at 741 (5th Cir. 1996)).  A provision authorizing the sublease of non-residential real property is
part and parcel of the entire agreement to be rejected. *See, e.g.*, *In re Magna Cum Latte, Inc.*, 2007

13

WL 3231633, at *4 (Bankr. S.D. Tex. Oct. 30, 2007) (finding that where a sublease was tied to a master lease the rejection of the master lease terminated the sublease).  In this Circuit and others, numerous courts to have considered this issue have held that the rejection of a prime lease of non-residential real property acts also to reject any sublease pertaining thereto.  *Chatlos Systems, Inc. v. Kaplan*, 147 B.R. 96, 100 (D. Del. 1992) (When a lease is rejected pursuant to section 365(d)(4) of the Bankruptcy Code, "any subleases under that primary lease must also be deemed rejected since the sublessees rights in the property extinguish with those of the sublessor."); *see also*, *In re Elephant Bar Restaurant, Inc.*, 195 B.R. 353, 357 (Bankr W.D. Pa. 1996); *accord In re The Great Atlantic & Pacific Tea Co.*, 543 B.R. 43, 54 (Bankr. S.D.N.Y. 2016) ("As a sublessee, [subtenant] has no possessory interest to preserve following the debtor's rejection of the prime lease.") (internal citations omitted); *In re Dial-A-Tire, Inc.*, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (finding rejection of a lease must result in the sublease being deemed rejected as well); *In re New Meatco Provisions, LLC*, No. 2:13-bk-22155-PC, 2013 WL 3760129, *1, 6 (Bankr. C.D. Cal. July 16, 2013) (holding that the fact that the subtenant might still have occupied a portion of the premises does not change the court's conclusion that extraordinary circumstances existed warranting retroactive rejection).

28.      The Debtors submit that all counterparties to the Lease and Sublease are on notice of the pendency of these Chapter 11 Cases and have received notice of the Debtors' intent to close all stores and either reject or otherwise sell their rights under the Leases.  Here, notwithstanding a two-phased auction process, no buyer of the Leases on <u>Schedule 1</u> came forward and the Debtors are left with no choice but to reject the Leases as they wind down their operations.  Allowing the Subleases to continue, and denying the Debtors the ability to reject the Leases on account of the Subleases, would force the Debtors to incur substantial administrative expenses at a critical

juncture during the wind down of operations.  The Debtors have acted dutifully to cease operations in the leased stores, but the Debtors do not have any more control over any subtenants than the relevant landlord would.  Any costs incurred by landlords or subtenants are rightly viewed as rejection damages to be addressed through the proofs of claim process.  Accordingly, the presence of the Subleases does not act to impede rejection of the Leases in any way.

### No Prior Request

29.    No prior request for the relief sought in this Motion has been made to this or any other court.

### Notice

30.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the United States Trustee for the District of New Jersey; (b) the Committee; (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission; (j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (l) the Debtors' Canadian Counsel; (m) the lessors and any subtenants of the Leases listed on Schedule 1 to **Exhibit A**; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: July 28, 2023

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email: msirota@coleschotz.com
    wusatine@coleschotz.com
    fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email: joshua.sussberg@kirkland.com
    emily.geier@kirkland.com
    derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Order**

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

</td></tr>
</table>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## ORDER (I) AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED LEASES AND (B) ABANDONMENT OF ANY PERSONAL PROPERTY, EFFECTIVE AS OF THE REJECTION DATE AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through seven (7), is

**ORDERED**.

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Effective as of the Rejection Date and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to reject the Leases set forth on **Schedule 1** attached hereto, effective as of the Rejection Date, (b)  authorizing the Debtors to abandon any Personal Property located at any such store locations, effective as of the Rejection Date, and (c) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief |

herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a basis as set forth herein.

2.      Pursuant to section 365 of the Bankruptcy Code, the Leases and Subleases, if applicable, identified on **Schedule 1** attached hereto are hereby rejected, to be effective as of the later of (i) the Rejection Date set forth in **Schedule 1** or (ii) the date upon which the Debtors surrender the premises to the landlord via delivery of the keys, key codes, or security codes, as applicable, to the respective landlords, but only to the extent such keys, key codes, or security codes are in possession of the Debtors, which surrender shall be deemed to have occurred notwithstanding the continued occupancy of any non-Debtor subtenant party (the "Rejection Date").

3.      Notwithstanding any provision of the *Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief* [Docket No. 373], the Leases and Subleases described in paragraph 2 are rejected pursuant to the terms of this Order.

4.      The Debtors shall not be liable for any additional administrative expenses arising after the Rejection Date with respect to the Leases.

5.      The Debtors may modify the Rejection Date set forth in **Schedule 1** by providing seven (7)-days' notice to affected landlords.

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief |

6.      The Debtors may agree with an affected landlord, through written confirmation (which can be by email through counsel), to an alternative Rejection Date earlier than the date set forth in **Schedule 1**.

7.      Nothing herein shall limit the Debtors' right to remove a Lease from **Schedule 1** prior to the Rejection Date on notice to affected parties, and to counsel to the DIP lenders.

8.      The Debtors do not waive any claims that they may have against any counterparty to the Leases, whether such claims arise under, are related to the rejection of, or are independent of the Leases.

9.      Nothing herein shall prejudice any party's rights to assert that the Leases are not, in fact, executory within the meaning of section 365 of the Bankruptcy Code.

10.      The Debtors are authorized to abandon any Personal Property free and clear of all liens, claims, encumbrances, interests, and rights of third parties.

11.      Any Personal Property of the Debtors located at the premises subject to the Leases is deemed abandoned, as of the Rejection Date free and clear of all liens, claims, encumbrances, interests, and rights of third parties.  The counterparties to the Leases may dispose of Personal Property of the Debtors in their sole and absolute discretion and without further notice or order of this Court without liability to the Debtors or third parties so long as the premises have been vacated by the Debtors.  No right of counterparties to the Leases shall extinguish the right of subtenants under the Subleases in their own personal property that is not property of the estate.

12.      Nothing herein shall prejudice the rights of the Debtors to argue that any of the Leases were terminated prior to the Petition Date, or that any claim for damages arising from the

(Page | 5)

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief |

rejection of the Leases is limited to the remedies available under any applicable termination provision of such lease, sublease, or contract, as applicable, or that any such claim is an obligation of a third party, and not that of the Debtors or their estates.

13.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

14.     Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the

*Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors To (A) Obtain*

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief |

*Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

15.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Order without further court approval on notice to parties in interest.

16.     Nothing in this Order authorizes the Debtors to accelerate any payments not otherwise due.

17.     Nothing in the Motion or this Order shall be deemed or construed as an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code, and all such rights are reserved.

18.     Nothing contained in the Motion or this Order is intended or should be construed to create an administrative priority claim.

19.     Notwithstanding anything to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of Any Personal Property, Each Effective as of the Rejection Date and (II) Granting Related Relief |

20.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

23.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Schedule 1**

Schedule 1

Leases

| No. | Non-Debtor Counterparty | Counterparty Address | Contract Description | Store # | Location Address | Rejection Effective Date | Abandoned Personal Property |
|---|---|---|---|---|---|---|---|
| 1. | DDR Creekside LP | 3000 Enterprise Parkway, Beachwood, OH 44122 | Multi Store Lease | 307 | 1120 Galleria Blvd, Roseville, CA 75678 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 2. | DDR Creekside LP | 3000 Enterprise Parkway, Beachwood, OH 44122 | Multi Store Lease | 3088 | 1120 Galleria Blvd, Roseville, CA 75678 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 3. | DDR Creekside LP | 3000 Enterprise Parkway, Beachwood, OH 44122 | Multi Store Lease | 6371 | 1120 Galleria Blvd, Roseville, CA 75678 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 4. | Oak Street Investment Grade Net Lease Fund Series 2021-2 LLC c/o Oak Steet Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 67 | 13900 Dallas Parkway, Addison, TX 75240 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 5. | Oak Street Investment Grade Net Lease Fund Series 2021-2 LLC c/o Oak Steet Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 3027 | 13900 Dallas Parkway, Addison, TX 75240 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 6. | Oak Street Investment Grade Net Lease Fund Series 2021-2 LLC c/o Oak Steet Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 6399 | 13900 Dallas Parkway, Addison, TX 75240 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 7. | Oak Street Investment Grade Net Lease Fund Series 2021-2 LLC c/o Oak Steet Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | Nordstrom | 13900 Dallas Parkway, Addison, TX 75240 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |

| No. | Non-Debtor Counterparty | Counterparty Address | Contract Description | Store # | Location Address | Rejection Effective Date | Abandoned Personal Property |
|---|---|---|---|---|---|---|---|
| 8. | Edison JAFL001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 154 | 8801-1 Southside Blvd, Jacksonville, FL 32256 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 9. | Edison JAFL001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 3071 | 8801 Southside Blvd Unit #10, Jacksonville, FL 32256 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 10. | Edison JAFL001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 7084 | 8801-1 Southside Blvd, Jacksonville, FL 32256 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 11. | Edison JAFL001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | PetSmart | 8801-1 Southside Blvd, Jacksonville, FL 32256 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 12. | ICO Commercial | 2333 Town Center Dr, Suilte 300, Sugar Land, TX 77478 | Multi Store Lease | 45 | 17355 Tomball Pkwy Suite J1, Houston, TX 77064 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 13. | ICO Commercial | 2333 Town Center Dr, Suilte 300, Sugar Land, TX 77478 | Multi Store Lease | 3091 | 17355 Tomball Pkwy Suite 1K, Houston, TX 77064 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 14. | ICO Commercial | 2333 Town Center Dr, Suilte 300, Sugar Land, TX 77478 | Multi Store Lease | 6370 | 17355 Tomball Pkwy Suite 1H, Houston, TX 77064 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 15. | BVA Deerbrook SPE LLC c/o Big V Properties | 176 N Main St Suite 210, Florida, NY 10921 | Multi Store Lease | 116 | 20514 Highway 59 N, Humble, TX 77338 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |

| No. | Non-Debtor Counterparty | Counterparty Address | Contract Description | Store # | Location Address | Rejection Effective Date | Abandoned Personal Property |
|---|---|---|---|---|---|---|---|
| 16. | BVA Deerbrook SPE LLC c/o Big V Properties | 176 N Main St Suite 210, Florida, NY 10921 | Multi Store Lease | 6253 | 20416 Highway 59 N Suite A, Humble, TX 77338 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 17. | Edison DEVJ001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 207 | 1755 Deptford Center Rd, Deptford, NJ 08096 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 18. | Edison DEVJ001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 3092 | 1755 Deptford Center Rd, Deptford, NJ 08096 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 19. | Edison DEVJ001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 7080 | 1755 Deptford Center Rd, Deptford, NJ 08096 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 20. | Edison DEVJ001 LLC c/o Oak Street Real Estate Capital | 30 Lasalle St Suite 4140, Chicago, IL 60602 | Multi Store Lease | 8066 | 1755 Deptford Center Rd, Deptford, NJ 08096 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 21. | ROIC California LLC c/o Retail Opportunity Investments Corporation | 11250 El Camino Real, Suite 200, San Diego, CA 92130 | Multi Store Lease | 3099 | 6621 Fallbrook Avenue, Unit B, West Hills, CA 91307 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 22. | ROIC California LLC c/o Retail Opportunity Investments Corporation | 11250 El Camino Real, Suite 200, San Diego, CA 92130 | Multi Store Lease | 6381 | 6621 Fallbrook Avenue, Unit A, West Hills, CA 91307 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |
| 23. | Ikea Property, Inc. | 420 Alan Wood Rd., Conshohocken, PA 19428 | Multi Store Lease | 1019 | 300 Ikea Drive, Paramus, NJ 07652 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |

| No. | Non-Debtor Counterparty | Counterparty Address | Contract Description | Store # | Location Address | Rejection Effective Date | Abandoned Personal Property |
|---|---|---|---|---|---|---|---|
| 24. | Ikea Property, Inc. | 420 Alan Wood Rd., Conshohocken, PA 19428 | Multi Store Lease | 7029 | 300 Ikea Drive, Paramus, NJ 07652 | July 31, 2023 | Miscellaneous FF&E and/or retail fixtures |