**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., et al. | Case No.   23-13359 (VFP) |
| Debtor. | (Joint Administration Requested) |
| | Hearing Date: August 22, 2023 at 10am |
| | Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF MARA SIRHAL'S MOTION FOR
<u>RELIEF FROM THE AUTOMATIC STAY</u>**

MORITT HOCK & HAMROFF LLP
James P. Chou, Esq.
Marshall O. Dworkin, Esq.
1407 Broadway, 39th Floor
New York, New York  10018
jchou@moritthock.com
mdworkin@moritthock.com
Tel:  (212) 239-2000

3330633v4

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 2

    A.    Sirhal Has Been A Faithful Employee of BBBY And Has Been Consistently Promoted Because She Has Been A Successful Executive For The Company ............................... 2

    B.    BBBY's Dire Financial Position Reduced Sirhal's Role With BBBY And Harmon, Entitling Her to Resign For Good Reason. ................................................................... 4

    C.    BBBY Fails To Comply With The Severance Provision And Retaliates By Wrongly Demanding Sirhal Return Bonus Payments She Previously Earned ............................... 7

LEGAL ARGUMENT ....................................................................................................................... 9

    I.    SIRHAL WILL BE UNDULY PREJUDICED IF SHE IS NOT GRANTED RELIEF FROM THE AUTOMATIC STAY TO ASSERT COUNTERCLAIMS IN THE PROCEEDING DEBTOR HAS BRUOGHT AGAINST HER IN NEW JERSEY SUPERIOR COURT ................................................................................................... 9

CONCLUSION ................................................................................................................................ 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Continental Airlines, Inc.*,
    152 B.R. 420 (D. Del. 1993) ........................................................................................... 8

*In re Countryside Manor, Inc.*,
    188 B.R. 489 (Bankr. D. Conn. 1995) ............................................................................ 9

*Ideal Roofing & Sheet Metal Works, Inc. v. M.R. Harrison Contr. Corp.*,
    9 B.R. 2 (Bankr. S.D. Fla. 1980) .................................................................................... 9

*Massey-Ferguson, Inc. v. Central Equip. & Serv. Co., Inc.*,
    61 B.R. 986 (Bankr. N.D. Ga. 1986) .............................................................................. 9

*In re Millsap*,
    141 B.R. 732 (Bankr. D. Idaho 1992) ............................................................................ 9

*In re Pro Football Weekly, Inc.*,
    60 B.R. 824 (N.D. Ill. 1986) ....................................................................................... 8, 9

*In re Siciliano*,
    13 F.3d 748 (3d Cir. 1994) ............................................................................................. 8

*In re Wilson*,
    116 F.3d 87 (3d Cir. 1997) ............................................................................................. 8

**Statutes**

11 U.S.C. § 362(d)(1) ............................................................................................................ 7

ii

Mara Sirhal ("Sirhal"), by and through her undersigned counsel, submits this memorandum of law in support of her motion (the "Motion") for an order granting relief from the automatic stay so that she can assert compulsory counterclaims that, in part, will serve as an offset against claims the Debtor, Bed Bath & Beyond, Inc. ("BBBY" or the "Debtor") is currently prosecuting against Sirhal in the Superior Court of the State of New Jersey, Union County.

**PRELIMINARY STATEMENT**

Sirhal, the former Executive Vice President and Brand President for BBBY, respectfully requests that this Court grant her relief from the automatic stay so that she can file compulsory counterclaims in a proceeding initiated by Debtor against her in the Superior Court of New Jersey.[1] That matter is entitled *Bed Bath & Beyond, Inc. v. Mara Sirhal*, docket no. UNN-L-001291-23, and is venued in the Law Division of the Superior Court of the State of New Jersey, Union County. Sirhal's proposed counterclaims will allege, among other things, that Debtor breached its employment agreement with Sirhal by failing to pay her a severance even though she was entitled to the severance because she resigned for Good Reason. These proposed counterclaims are intertwined with Debtor's claims against her, which also relate to her employment agreement.

Sirhal will suffer undue prejudice if the Court does not grant relief from the automatic stay because she will be deprived of the full scope of her defenses in a litigation that Debtor chose to commence. Notably, Debtor filed its Complaint against Sirhal a mere two (2) days before filing its voluntary petition for Chapter 11 bankruptcy, apparently to prevent the parties' dispute from being swept into the bankruptcy proceedings, where the case might be delayed,

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is also proper pursuant to 28 U.S.C. §§ 1408 and 1409.

1

while at the same time foreclosing Sirhal's otherwise usual right to pursue counterclaims. If successful, Sirhal's counterclaims, at a minimum, would serve as a complete setoff for the damages sought by Debtor. Thus, in stark contrast, relief from the automatic stay will not prejudice or cause Debtor to incur any immediate financial obligation to Sirhal. If Sirhal is awarded damages outright, she will still have to recover that award through the bankruptcy process. Critically, under New Jersey's rules addressing compulsory counterclaims—*i.e.* R. 4:30A—Sirhal risks losing her right to assert her cognizable claims against Debtor if they are not asserted as counterclaims in the state court action. Bankruptcy Courts have regularly granted litigation defendants relief from the automatic stay when they risk losing claims against a debtor in states that have compulsory counterclaim rules, such as New Jersey. In short, there is no prejudice to Debtor to permit Sirhal relief from the stay to assert counterclaims. For these reasons as discussed more fully below, Sirhal's Motion for relief from the automatic stay should be granted.

## STATEMENT OF FACTS

**A. Sirhal Has Been A Faithful Employee of BBBY And Has Been Consistently Promoted Because She Has Been A Successful Executive For The Company**

On or about December 14, 2020, BBBY employed Sirhal as Senior Vice President, General Manager for Harmon Face Values ("Harmon"), a company owned by BBBY. *See* Sirhal Cert. ¶ 3.[2] Soon after, she was promoted and given dual roles: Senior Vice President, General Merchandise Manager, Health/Beauty/Consumables with Bed Bath & Beyond, Inc., and Senior Vice President, General Manager at Harmon. *See id*. Acknowledging her success and loyalty, BBBY and Sirhal executed the Recognition Award Agreement on May 16, 2022, through which she received a Recognition Award (the "Recognition Award") of $106,250.00, provided that, if

---

[2] References to "Sirhal Cert." refer to the July 31, 2023, Certification of Mara Sirhal which has been submitted in support of and accompanies this Motion.

2

she resigned within one year, she would be required to repay BBBY a prorated portion of the Recognition Award. *See id*. ¶ 4.

In and around June 2022, Sirhal signed a new employment agreement (the "Employment Agreement") with BBBY to become BBBY's Executive Vice President, Chief Merchandising Officer and General Manager, Harmon. *See id*., ¶ 5; Exhibit B to Ex. 1. Before executing the Employment Agreement, Sirhal had no opportunity to review BBBY's books and records, nor did she have a full understanding of its financial situation at the time she was offered the Employment Agreement by BBBY's former CEO, Mark Tritton. The Employment Agreement provided, in part, that Sirhal would receive a $220,000 lump sum cash payment as a signing bonus ("Signing Bonus") and could retain the Signing Bonus if she did not resign prior to the first anniversary of the Employment Agreement's Effective Date (*i.e.*, before June 28, 2023), or if she resigned prior to the first anniversary for "Good Reason." *Id*. The Employment Agreement defined "Good Reason" as, among other things, a "material diminution in Executive's duties, authority or responsibilities of employment." *Id*.[3] BBBY did not initially offer Sirhal the Signing Bonus, but she negotiated the amount when she discovered that her predecessor to the role of Chief Merchandising Officer, Joe Hartsig, was compensated significantly more than the compensation BBBY was offering her for the same role. The Signing Bonus constituted the balance between BBBY's initial compensation offer and the amount Mr. Hatsig was earning upon his departure. Had BBBY offered Sirhal compensation that was in parity with Mr. Hartsig's compensation, she never would have negotiated the Signing Bonus. *See id*.

---

[3] While the Employment Agreement included certain notice requirements for establishing Good Reason, those notice provisions were futile and/or excusable for Sirhal, as explained below.

3

3330633v4

The Employment Agreement also stated that if Sirhal were to resign from Harmon for Good Reason then, among other things, she would be entitled to a cash severance (the "Severance Provision") equal to, in the aggregate, one (1) times the sum of her Base Salary and target Annual Bonus, subject to all applicable tax and withholdings and payable in equal installments over twelve (12) months from the separation date. *See* Sirhal Cert., ¶ 6; Exhibit B to Ex. 1 at ¶ 5(c)(ii). The Employment Agreement was subsequently amended, effective August 31, 2022, by the First Amendment to Employment Agreement (the "First Amendment"), which promoted her to become the Company's Executive Vice President and Brand President for BBBY. *See* Sirhal Cert., ¶ 7; Exhibit C to Ex. 1. As a result, her base salary and annual bonus increased, and she began to report directly to BBBY's Chief Executive Officer, Susan Gove ("Gove").

### B. BBBY's Dire Financial Position Reduced Sirhal's Role With BBBY, Entitling Her to Resign For Good Reason.

Beginning in the Fall of 2022, however, BBBY began to face significant liquidity issues and other financial stresses. Though the First Amendment stated that Sirhal would report directly to Gove, BBBY's dire financial position diminished these opportunities and Gove began making executive decisions that significantly impacted Sirhal's role and authority without Sirhal's input or knowledge. *See* Sirhal Cert., ¶ 8. By the end of 2022, Sirhal learned and began to express concern that Gove was using questionable assumptions and figures regarding the Company while seeking debt or equity financing from potential investors. *See id*. As a result of these dire constraints, BBBY failed to timely pay discretionary bonuses to executives at the end of 2022. *See id*.

In order to placate executives' concerns about bonuses and BBBY's financial future, BBBY offered Sirhal and others a Retention Bonus (the "Retention Bonus"). *See* Sirhal Cert., ¶

4

9; Exhibit E to Ex. 1. The Retention Bonus was announced to Sirhal on February 7, 2023, but BBBY's executives only provided Sirhal a draft of the Retention Bonus agreement on the morning of February 8 and demanded that she agree to the Retention Bonus agreement by February 8 at 1:00 p.m.—approximately 4 hours—or risk losing the bonus. *See* Sirhal Cert., ¶ 9. This was not sufficient time to properly review the proposed Retention Bonus agreement with an attorney and seek clarification or propose modifications to the offer; the rushed timeframe was likely intended by BBBY to lure executives into accepting the Retention Bonus to hold them hostage to its terms and conditions. In any event, the Retention Bonus agreement stated that Sirhal would receive a cash lump sum payment of $314,000.00, and she would only be required to repay this amount if her employment with BBBY terminated under two circumstances: (1) by "the Company, for a reason *other* than Cause" or (2) "due to your death or Disability, in each case before June 8, 2023." The Retention Bonus agreement does not place any other requirements, contingencies, or obligations on Sirhal. The Retention Bonus would not need to be returned if Sirhal resigned—either for Good Reason or not. Sirhal agreed to and signed the Retention Bonus agreement, which was also reviewed and signed by Gove, a seasoned executive. *See* Sirhal Cert., ¶¶ 10-11; Exhibit E to Ex. 1.

In and around this time, however, BBBY's financial situation worsened, leading Gove to take drastic measures without including or consulting Sirhal. By the beginning of February 2023, Gove decided, without Sirhal's consultation, to close all Harmon beauty product stores in the United States, as well as hundreds of additional Bed Bath & Beyond stores across the United States. *See* Sirhal Cert. ¶ 12. Gove began reformulating BBBY's business plans and strategy without Sirhal's involvement or knowledge to entice potential investors—plans that directly impacted Sirhal's role as Brand President. *See id*. ¶ 13.

5

In early February 2023, Gove decided to lay off approximately 1,300 employees in New Jersey to avoid complying with a change in New Jersey law, which would become effective in April, mandating increased notice requirements and severance payments for laid-off employees. Sirhal voiced her concerns and objections to this policy decision to several BBBY executives. *See id*. ¶ 14. Nevertheless, Gove tasked Sirhal with notifying the employees of their termination and that BBBY would not be providing severance payments. Sirhal also had to notify Harmon employees that the entire Harmon business would be closing immediately. As a result, Sirhal became the face of the mass reduction in force and began to receive threatening emails from store managers and other former employees who were casualties of the layoffs. *See id*. ¶ 15. This caused significant emotional distress for Sirhal, who was not responsible for BBBY's financial situation or the decision to layoff these employees to avoid complying with the new law. When she raised concerns about these threats to BBBY's executives, she was questioned on her emotional stability and capability to perform her role under the stress. *See id*. ¶ 16.

At this point, BBBY had few employees and even fewer stores for which Sirhal could coordinate and provide merchandise. In light of the continued diminution of the scope of her responsibilities, on March 10, 2023, Sirhal informed BBBY that she intended to resign from her employment with BBBY for Good Reason. *See id*. ¶ 17; Exhibit F to Ex. 1. The basis for her resignation was, among other things, (1) the closing of 54 Harmon freestanding stores and web business, (2) the closure of approximately 149 Bed Bath & Beyond stores, and (3) the resulting diminishment of her decision-making role and authority, particularly regarding inventory procurement and staff resources, which Gove and other executives had been usurped. *See* Exhibit F to Ex. 1. While Sirhal agreed to become Chief Merchandising Officer in June 2022 for a large, international retailer, by March 2023, BBBY had closed most of its stores—the focal

6

point of Sirhal's duties and responsibilities. This was a complete, material change in the scope of BBBY's business and Sirhal's work. Since the store closings and massive layoffs would not be rectifiable and BBBY was nearing bankruptcy, it would have been impossible for BBBY to cure and, therefore, Sirhal was excused from any notice requirement since it would have been futile. *See* Sirhal Cert. ¶ 18.

    **C. BBBY Fails To Comply With The Severance Provision And Retaliates By Wrongly Demanding Sirhal Return Bonus Payments She Previously Earned**

In response to her resignation, BBBY sent Sirhal a letter on March 16, 2023 (the "March 16 Letter"), disagreeing that Sirhal resigned for Good Reason and demanding that she repay BBBY $353,768.16, which consisted of the Retention Bonus and a portion of the Signing Bonus. *See* Sirhal Cert. ¶ 19; Exhibit G to Ex. 1. BBBY did not offer to pay her the amount owed under the Severance Provision. In response, on March 20, 2023, Sirhal's employment counsel reiterated that she resigned for Good Reason, did not owe any of the monies demanded by BBBY in the March 16 Letter, and demanded that BBBY comply with the Severance Provision and pay Sirhal: (1) her $600,000 base salary and target bonus of $450,000, (2) vest her one-time RSU award, and (iii) payment of her COBRA costs. *See* Exhibit G to Ex. 1. Throughout March and April 2023, Sirhal and her counsel attempted to resolve this matter amicably and fairly with BBBY and its counsel to avoid needless and expensive litigation. Despite Sirhal's diligent efforts, BBBY did not engage her in good faith, and never proposed or set forth a formal settlement offer to Sirhal during this time. *See* Sirhal Cert. ¶ 19.

BBBY filed a complaint (the "Complaint") against Sirhal in Union County Superior Court on April 21, 2023 at 5:40 p.m., two days before the Debtor filed its Chapter 11 Voluntary Petition on April 23, 2023. *See* Ex. 1. Notably, BBBY's counsel reached out to Sirhal's attorney at approximately 3:30 p.m. on August 21—two hours before BBBY filed the Complaint—and

7

3330633v4

sent a non-negotiable settlement offer that Sirhal was required to accept within one (1) hour or face litigation.  *See* Siral Cert. ¶ 20.  Like the Retention Bonus Agreement, this was another attempt by BBBY to pressure Sirhal into accepting an agreement and/or was a contrived attempt to claim Sirhal refused their eleventh-hour settlement offer.  Ultimately, the Complaint was not served on Sirhal until April 26, 2023.  *See* Sirhal Cert. ¶ 20.

The Complaint alleges that Sirhal violated (i) the Employment Agreement, (ii) the agreement which provided the Recognition Award,  (iii) the Retention Bonus agreement, and the implied covenant of good faith and fair dealing inherent in the Employment Agreement, the First Amendment, the Retention Bonus agreement.  In a baseless attempt to intimidate and harass, BBBY also alleged that Sirhal committed fraud in relation to the Retention Bonus and is seeking $314,000.00, plus punitive damages.  *See id.* ¶ 21.

The parties stipulated to extend deadline for Sirhal to respond to the Complaint to July 31, 2023.  In responding to the Complaint, Sirhal intends to assert counterclaims alleging that Debtor violated the Employment Agreement by failing to pay her the amount contemplated in the Severance Provision.  This amount, which is over $1 million, dwarfs the amount that Debtor is seeking and would constitute a complete setoff to Debtor's claims.  *See id*. ¶ 22.  Should Sirhal be awarded damages outright or an amount above the amount sought by Debtor, she would be prepared to enforce her judgment through the bankruptcy process or as otherwise permitted under the law.  *See id*.

## **LEGAL ARGUMENT**

**I. SIRHAL WILL BE UNDULY PREJUDICED IF SHE IS NOT GRANTED RELIEF FROM THE AUTOMATIC STAY TO ASSERT COUNTERCLAIMS IN THE PROCEEDING DEBTOR HAS BRUOGHT AGAINST HER IN NEW JERSEY SUPERIOR COURT**

A party in interest may obtain relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based upon the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

"The purpose of the automatic stay provision is to afford the debtor a 'breathing spell' by halting the collection process. It enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994). This policy is ***not*** implicated where a party-in-interest's request for relief is "defensive in nature." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993). In determining whether to lift a stay to permit a defendant to prosecute compulsory counterclaims in a litigation initiated by the debtor, courts have considered: (a) if the proposed counterclaimant will be "prejudiced"; (b) if the court "does not foresee any hardships" on the debtor if the "claims are adjudicated in one proceeding; and (c) if the proposed counterclaimant has a "probability of prevailing." *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986).

The totality of the circumstances here are decidedly in favor of allowing Sirhal to pursue her counterclaims which will, in part, offset the claims asserted by Debtor against her. Denying relief from the automatic stay will have the fundamentally unfair effect of denying Sirhal her full range of defenses against the litigation brought by Debtor. If her counterclaims are successful, they would be a complete defense to the Debtor's claims against her and would not result in

9

Debtor incurring any immediate financial obligation to Sirhal. If the Court were to award Sirhal damages in the matter, she would still be required to recover those damages through the bankruptcy process or as otherwise permitted by law.

Additionally, because the counterclaims are compulsory in nature pursuant to New Jersey's entire controversy doctrine, *R*. 4:30A, they could be forever lost unless litigated in the state proceeding. The loss of these claims would be highly prejudicial to Sirhal. Indeed, granting relief from the automatic stay in these circumstances would be consistent with the relief granted by numerous other courts facing similar circumstances. *See, e.g., In re Countryside Manor, Inc.*, 188 B.R. 489 (Bankr. D. Conn. 1995) (granting relief from automatic stay because counterclaim "clearly qualifies as an offset of a mutual debt" and the "administration of justice, convenience of the parties and judicial economy are better served by having all the claims and counterclaims resolved by the same court—in this instance, the state court"); *In re Millsap*, 141 B.R. 732, 733 (Bankr. D. Idaho 1992) (creditor entitled, "in most instances as a matter of right," to relief from stay to assert compulsory counterclaim in debtor-initiated non-bankruptcy proceeding); *Pro Football Weekly, supra*, 60 B.R. 826 (modifying stay to permit creditor to prosecute counterclaim in district court where stay prejudices creditor through inability to pursue compulsory counterclaim); *Massey-Ferguson, Inc. v. Central Equip. & Serv. Co., Inc.*, 61 B.R. 986, 988 (Bankr. N.D. Ga. 1986) (creditor granted relief from stay to assert counterclaim as setoff against debtor); *Ideal Roofing & Sheet Metal Works, Inc. v. M.R. Harrison Contr. Corp.*, 9 B.R. 2, 3 (Bankr. S.D. Fla. 1980) (same). This Court should reach the same decision.

Debtor will not suffer any prejudice by litigating Sirhal's proposed counterclaims in the very litigation Debtor initiated. Upon information and belief, BBBY intentionally kept this litigation out of this Court's jurisdiction because it filed the Complaint two (2) days before filing

3330633v4

its voluntary petition in this matter. While Debtor could have pursued its claims against Sirhal in the bankruptcy proceedings, Debtor instead made the strategic decision to maintain this litigation in state court to intimidate Ms. Sirhal with the prospect of drawn-out litigation, and the potential that it could use the automatic stay as a sword to prevent Sirhal from asserting her own claims against Debtor. Such gamesmanship should not be rewarded by the Court. While it is likely premature for this Court to determine Sirhal's "probability of prevailing," on her counterclaims, the facts set forth herein raise cognizable claims and issues that Sirhal should have an opportunity to litigate and pursue.

## CONCLUSION

For the reasons set forth above, the Court should grant Sirhal's Motion for relief from the automatic stay to assert counterclaims against Debtor in the New Jersey state court action.

Dated: New York, New York
       July 31, 2023

Respectfully submitted,

**MORITT HOCK & HAMROFF LLP**

By:_____
James P. Chou, Esq.
Marshall O. Dworkin, Esq.
1407 Broadway, Suite 3900
New York, NY 10018
(212) 239-2000
jchou@moritthock.com
mdworkin@moritthock.com
*Attorneys for Defendant Mara Sirhal*

11

3330633v4