**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**AMENDED JOINT CHAPTER 11 PLAN**
**OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Felice R. Yudkin, Esq. | Emily E. Geier, P.C. (*pro hac vice* pending) |
| Court Plaza North, 25 Main Street | Derek I. Hunter (*pro hac vice pending*) |
| Hackensack, New Jersey 07601 | 601 Lexington Avenue |
| (201) 489-3000 | New York, New York 10022 |
| msirota@coleschotz.com | (212) 446-4800 |
| wusatine@coleschotz.com | joshua.sussberg@kirkland.com |
| fyudkin@coleschotz.com | emily.geier@kirkland.com |
| | derek.hunter@kirkland.com |
| *Co-Counsel to the Debtors and* | |
| *Debtors in Possession* | *Co-Counsel to the Debtors and* |
| | *Debtors in Possession* |

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases are 650 Liberty Avenue, Union, New Jersey 07083.

# TABLE OF CONTENTS

**Page**

**Article I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ..........................................................................**5**
- A.    Defined Terms .................................................................................................5
- B.    Rules of Interpretation ..................................................................................19
- C.    Computation of Time ....................................................................................19
- D.    Governing Law ..............................................................................................19
- E.    Reference to Monetary Figures .....................................................................20
- F.    Controlling Document ...................................................................................20
- G.    Nonconsolidated Plan ...................................................................................20

**Article II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS** ...............................**20**
- A.    Administrative Claims and Priority Tax Claims ...........................................20
- B.    Professional Compensation ...........................................................................21
- C.    Statutory Fees ................................................................................................22
- D.    Lender Professional Fees ..............................................................................22

**Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ........................................................................................................**22**
- A.    Summary of Classification ............................................................................22
- B.    Treatment of Claims and Interests ................................................................23
- C.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ..........................................................................................27
- D.    Elimination of Vacant Classes .....................................................................27
- E.    Voting Classes; Presumed Acceptance by Non-Voting Classes ...................27
- F.    Subordinated Claims and Interests ................................................................27

**Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ........................................**27**
- A.    Liquidation Transactions ..............................................................................27
- B.    Distributable Proceeds and Waterfall Recovery. ..........................................28
- C.    WARN Reserve and Combined Reserve. ......................................................29
- D.    Cancellation of Notes, Instruments, Certificates, and Other Documents .............30
- E.    General Settlement of Claims .......................................................................30
- F.    Means for Implementation .............................................................................31
- G.    Exemption from Certain Transfer Taxes and Fees .......................................34

**Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..........................................................................................................**34**
- A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .........34
- B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ............34
- C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........35
- D.    Insurance Policies .........................................................................................36

  E.  Modifications, Amendments, Supplements, Restatements, or Other
     Agreements ........................................................................................36
  F.  Reservation of Rights..........................................................................36
  G.  Nonoccurrence of Effective Date........................................................37
  H.  Contracts and Leases Entered Into After the Petition Date .................37

**Article VI. PROVISIONS GOVERNING DISTRIBUTIONS.........................................37**
  A.  Timing and Calculation of Amounts to Be Distributed ........................37
  B.  Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........37
  C.  Tax Issues and Compliance with Tax Requirements............................38
  D.  Allocations .........................................................................................39
  E.  No Postpetition Interest on Claims .....................................................39
  F.  Setoffs and Recoupment ....................................................................39
  G.  Claims Paid or Payable by Third Parties .............................................39

**Article VII. THE PLAN ADMINISTRATOR .........................................................40**
  A.  The Plan Administrator........................................................................40
  B.  Wind-Down.........................................................................................41
  C.  Liquidating Trust. ...............................................................................42
  D.  Exculpation, Indemnification, Insurance & Liability Limitation .........44
  E.  Tax Returns.........................................................................................44
  F.  Dissolution of the Wind-Down Debtors ..............................................44
  G.  Budget and Reporting .........................................................................45

**Article VIII . RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR...........45**
  A.  Undeliverable Distribution Reserve.....................................................45
  B.  WARN Reserve and Combined Reserve .............................................46
  C.  The General Account and Distribution Reserve Account Adjustments .................47

**Article IX. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS .........................................................47**
  A.  Allowance of Claims...........................................................................47
  B.  Claims Administration Responsibilities ..............................................47
  C.  Estimation of Claims..........................................................................48
  D.  Adjustment to Claims Without Objection.............................................48
  E.  Time to File Objections to Claims .......................................................48
  F.  Disallowance of Claims ......................................................................48
  G.  Amendments to Claims .......................................................................49
  H.  No Distributions Pending Allowance ..................................................49
  I.  Distributions After Allowance .............................................................49

**Article X. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS.................................................................................................49**
  A.  Compromise and Settlement of Claims, Interests, and Controversies...................49
  B.  Release of Liens..................................................................................50
  C.  Releases by the Debtors ......................................................................50
  D.  Release by Holders of Claims or Interests ...........................................51

| | | |
|---|---|---|
| E. | Exculpation | 53 |
| F. | Injunction | 53 |
| G. | SEC | 54 |
| H. | Protection Against Discriminatory Treatment | 54 |
| I. | Recoupment | 54 |
| J. | Subordination Rights. | 54 |

**Article XI. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** ..........**55**

| | | |
|---|---|---|
| A. | Conditions Precedent to the Effective Date | 55 |
| B. | Waiver of Conditions | 55 |
| C. | Substantial Consummation | 55 |
| D. | Effect of Nonoccurrence of Conditions to the Effective Date | 55 |

**Article XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ......**56**

| | | |
|---|---|---|
| A. | Modification and Amendments | 56 |
| B. | Effect of Confirmation on Modifications | 56 |
| C. | Revocation or Withdrawal of the Plan | 56 |

**Article XIII. RETENTION OF JURISDICTION** ......**56**

**Article XIV. MISCELLANEOUS PROVISIONS** ......**58**

| | | |
|---|---|---|
| A. | Immediate Binding Effect | 58 |
| B. | Additional Documents | 59 |
| C. | Dissolution of Statutory Committees | 59 |
| D. | Payment of Statutory Fees | 59 |
| E. | Reservation of Rights | 59 |
| F. | Successors and Assigns | 59 |
| G. | Service of Documents | 59 |
| H. | Entire Agreement | 61 |
| I. | Exhibits | 61 |
| J. | Nonseverability of Plan Provisions | 61 |
| K. | Votes Solicited in Good Faith | 61 |
| L. | Waiver and Estoppel. | 61 |

## INTRODUCTION

Bed Bath & Beyond Inc. ("BBB") and its debtor affiliates, as debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors"), propose this first amended joint plan of reorganization (the "Plan") for the resolution of outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof.  Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan of reorganization for each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*2014 Notes Indenture*" means that certain Indenture dated as of July 17, 2014 (as amended, novated, supplemented, extended, or restated from time to time), by and among Bed Bath & Beyond Inc. as issuer, and The Bank of New York Mellon as trustee (the "2014 Senior Unsecured Notes Trustee").

2.    "*2014 Senior Unsecured Notes*" means, collectively: (a) the 3.479% senior unsecured notes due August 1, 2024, in the currently outstanding principle amount of $215.4 million; (b) the 4.915% senior unsecured notes due August 1, 2034, in the currently outstanding principle amount of $209.7 million; and (c) the 5.165% senior unsecured notes due August 1, 2044, in the currently outstanding principle amount of $604.8 million, each of which are governed by the 2014 Notes Indenture.

3.    "*2014 Senior Unsecured Notes Claim*" means any Claim derived from or based upon the 2014 Senior Unsecured Notes.

4.    "*ABL Agent*" means Sixth Street Specialty Lending, Inc. in its capacity as administrative agent and collateral agent under the Prepetition Credit Agreement.

5.    "*ABL Claims*" means any and all claims arising from, under or in connection with the ABL Facility including, without limitation, the ABL Obligations.

6.    "*ABL Facility*" means that certain asset-based revolving credit facility provided for under the Prepetition Credit Agreement.

7.    "*ABL Lenders*" means the asset-based revolving credit lenders party to the Prepetition Credit Agreement.

8.    "*ABL Obligations*" shall mean "Prepetition ABL Obligations" as defined in the DIP Order.

9.      "*Adequate Assurance Information*" means written evidence to demonstrate the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed.

10.      "*Administrative Claim*" means a Claim for costs or expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; and (c) all DIP Claims.

11.      "*Administrative Claims Bar Date*" means: (a) with respect to those Administrative Claims for which bar dates were established in the Bar Date Order, the applicable deadline established by the Bar Date Order; and (b) with respect to Professional Fee Claims, thirty days after the Confirmation Date.

12.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

13.      "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim or Interest Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court, or (d) a Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; *provided* that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order.  Any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after and subject to the Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest. "Allow" and "Allowing" shall have correlative meanings.

14.      "*Asset Sale Transaction*" means the sale or sales, either as a going-concern or in a liquidation, of some or all of the Debtors' assets under this Plan or as otherwise authorized by order of the Bankruptcy Court or the Bankruptcy Code.

15.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the debtors in possession, the Estates, or other appropriate parties in interest have asserted or may assert under sections 502, 510, 542, 544, 545, or 547

through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law including, for the avoidance of doubt, Preference Actions.

16.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

17.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey, or any other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Jersey.

18.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

19.     *"Bar Date Order"* means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II)Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, and (IV) Approving Notice Thereof, and (V) Granting Related Relief* entered at Docket No. 584.

20.     "*BBB*" means Bed Bath & Beyond Inc.

21.     "*Bidding Procedures*" means the *Bidding Procedures for the Submission, Receipt, and Analysis of Bids in Connection with the Sale of the Debtors' Assets* attached as Exhibit 1 to the *Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief*, as amended or modified [Docket No. 92].

22.     "*Business Day*" means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)).

23.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

24.     "*Causes of Action*" mean any action, Claim, cross claim, third party claim, damage, judgment, cause of action, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, interest, guaranty, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment and any claim arising from any contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any right to object to or otherwise contest Claims or Interests; (d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

25.     "*Chapter 11 Cases*" means when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

26.     "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, and any Cause of Action or liability asserted against a Debtor.

27.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors).

28.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

29.     "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

30.     "*Combined Reserve*" shall mean the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the terms of the Final DIP Order, in the aggregate amount of $15 million less any amounts paid from the Combined Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date.

31.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan.

32.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

33.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

34.     "*Confirmation Order*" means an order of the Bankruptcy Court, acceptable to the Debtors, the DIP Agent, the FILO Agent, and the Creditors' Committee, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

35.     "*Consummation*" means the occurrence of the Effective Date.

36.     "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

37.     "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

38.     "*Cure Obligations*" means all (a) Cure Claims and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

39.    "*Cure/Assumption Objection Deadline*" means the date that is 14 days after filing of the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement and service of the Cure Notice; provided, that if any Executory Contract or Unexpired Lease is added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Wind-Down Debtors is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be 14 days after service of the amended Schedule of Assumed Executory Contracts and Unexpired Leases with such modification (or such other time period as the Debtors set (subject to Bankruptcy Court approval) if the Debtors seek a limited notice period prior to the date of the Confirmation Hearing).

40.    "*Cure Notice*" means a notice of a proposed amount to be paid and/or obligation to be performed on account of a Cure Obligation in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include: (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; (c) Adequate Assurance Information; and (d) procedures for resolution by the Bankruptcy Court of any related disputes.

41.    "*D&O Claims*" means any and all Causes of Action of the Debtors or Wind-Down Debtors, as applicable, against a D&O Party.

42.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "*tail policy*") of any of the Debtors for current or former directors', managers', and officers' liability.

43.    "*D&O Party*" means all current and former directors, officers, or managers of the Debtors in their respective capacities as such.

44.    "*Debtors*" means, collectively:  Bed Bath & Beyond Inc.; Alamo Bed Bath & Beyond Inc.; BBB Canada LP Inc.; BBB Value Services Inc.; BBBY Management Corporation; BBBYCF LLC; BBBYTF LLC; Bed Bath & Beyond of Annapolis, Inc.; Bed Bath & Beyond of Arundel Inc.; Bed Bath & Beyond of Baton Rouge Inc.; Bed Bath & Beyond of Birmingham Inc.; Bed Bath & Beyond of Bridgewater Inc.; Bed Bath & Beyond of California Limited Liability Company; Bed Bath & Beyond of Davenport Inc.; Bed Bath & Beyond of East Hanover Inc.; Bed Bath & Beyond of Edgewater Inc.; Bed Bath & Beyond of Falls Church, Inc.; Bed Bath & Beyond of Fashion Center, Inc.; Bed Bath & Beyond of Frederick, Inc.; Bed Bath & Beyond of Gaithersburg Inc.; Bed Bath & Beyond of Gallery Place L.L.C.; Bed Bath & Beyond of Knoxville Inc.; Bed Bath & Beyond of Lexington Inc.; Bed Bath & Beyond of Lincoln Park Inc.; Bed Bath & Beyond of Louisville Inc.; Bed Bath & Beyond of Mandeville Inc.; Bed Bath & Beyond of Opry Inc.; Bed Bath & Beyond of Overland Park Inc.; Bed Bath & Beyond of Palm Desert Inc.; Bed Bath & Beyond of Paradise Valley Inc.; Bed Bath & Beyond of Pittsford Inc.; Bed Bath & Beyond of Portland Inc.; Bed Bath & Beyond of Rockford Inc.; Bed Bath & Beyond of Towson Inc.; Bed Bath & Beyond of Virginia Beach Inc.; Bed Bath & Beyond of Waldorf Inc.; Bed Bath & Beyond of Woodbridge Inc.; bed 'n bath Stores Inc.; Bed, Bath & Beyond of Manhattan, Inc.; Buy Buy Baby of Rockville, Inc.; Buy Buy Baby of Totowa, Inc.; Buy Buy Baby, Inc.; BWAO LLC; Chef C Holdings LLC; Decorist, LLC; Deerbrook Bed Bath & Beyond Inc.; Harmon of Brentwood, Inc.; Harmon of Caldwell, Inc.; Harmon of Carlstadt, Inc.; Harmon of Franklin, Inc.; Harmon of Greenbrook II, Inc.; Harmon of Hackensack, Inc.; Harmon of Hanover, Inc.; Harmon of Hartsdale, Inc.; Harmon of Manalapan, Inc.; Harmon of Massapequa, Inc.; Harmon of Melville, Inc.; Harmon of New Rochelle, Inc.; Harmon of Newton, Inc.; Harmon of Old Bridge, Inc.; Harmon of Plainview, Inc.; Harmon of Raritan, Inc.; Harmon of Rockaway, Inc.; Harmon of Shrewsbury, Inc.; Harmon of Totowa, Inc.; Harmon of Wayne, Inc.; Harmon of Westfield, Inc.; Harmon of Yonkers, Inc.; Harmon Stores, Inc.; Liberty Procurement Co. Inc.; Of a Kind, Inc.; One Kings Lane

LLC; San Antonio Bed Bath & Beyond Inc.; Springfield Buy Buy Baby, Inc., the debtors and debtors in possession in the Chapter 11 Cases.

45.    "*DIP Agent*" means Sixth Street Specialty Lending, Inc. as administrative agent under the DIP Credit Agreement.

46.    "*DIP Claims*" means, any and all Claims derived from, based upon, or secured by, the DIP Documents including, without limitation, the DIP Obligations.

47.    "*DIP Collateral*" shall have the meaning ascribed to such term in the Final DIP Order.

48.    "*DIP Credit Agreement*" means that certain Senior Secured Super-priority Debtor-in-Possession Term Loan Credit Agreement (as it may be amended, restated, supplemented, or otherwise modified from time to time), dated as of April 24, 2023, by and among the Debtors, the DIP Lenders, and the DIP Agent.

49.    "*DIP Documents*" means the DIP Credit Agreement and any other agreements and documents executed in connection with or related thereto.

50.    "*DIP Facility*" means that certain $240,000,000.00 postpetition debtor-in-possession financing facility available under the DIP Credit Agreement.

51.    "*DIP Lenders*" means collectively the Lenders (as defined in the DIP Credit Agreement) party to the DIP Credit Agreement.

52.    "*DIP Obligations*" shall have the meaning set forth in the Final DIP Order.

53.    "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

54.    "*Disclosure Statement*" means the *Disclosure Statement Relating to the Joint Plan of Reorganization of Bed Bath & Beyond Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan.

55.    "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

56.    "*Disputed*" means a Claim or an Interest or any portion thereof: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order; and (c) with respect to which a party in interest has Filed a Proof of Claim, a Proof of Interest, or otherwise made a written request to a Debtor for payment.

10

57.    "*Distributable Proceeds*" means subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve.

58.    "*Distribution Agent*" means the Wind-Down Debtors or any Entity the Wind-Down Debtors select to make or facilitate distributions to be made pursuant to the Plan.

59.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court; provided, that the Distribution Record Date shall not apply to publicly held securities.

60.    "*Distribution Reserve Accounts*" means the Combined Reserve, the Undeliverable Distribution Reserve, and the WARN Reserve.

61.    "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtors, with the consent of the DIP Agent and Creditors' Committee, on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article XI.A have been satisfied or waived (in accordance with Article XI.B); and (c) the Plan is declared effective.

62.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

63.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

64.    "*Exculpated Parties*" means collectively, and in each case in its capacity as such:  (a) the Debtors and Wind-Down Debtors; (b) the Creditors' Committee; and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former control persons, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, managed accounts or funds, management companies, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that no party that otherwise qualifies as an Exculpated Party, including a D&O Party, shall be an Exculpated Party with respect to a Non-Released Claim.

65.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

66.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

67.    "*File,*" "*Filed,*" or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

68.    "*FILO Agent*" means Sixth Street Specialty Lending, Inc. in its capacity as FILO Agent (as defined in the Prepetition Credit Agreement).

69.     "*FILO Claims*" means any and all claims arising from, under or in connection with the FILO Facility including, without limitation, the FILO Obligations.

70.     "*FILO Facility*" means that certain first-in-last-out loan facility provided for under the Prepetition Credit Agreement.

71.     "*FILO Lenders*" means the first-in-last-out loan facility lenders party to the Prepetition Credit Agreement.

72.     "*FILO Obligations*" shall mean have the meaning ascribed to it in the Prepetition Credit Agreement.

73.     "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 729].

74.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal that has been or may be taken or any petition for certiorari or any motion for a new trial, reargument, reconsideration, or rehearing that has been or may be made or filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the motion for a new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order (if any such motion has been or may be granted), or have otherwise been dismissed with prejudice; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

75.     "*General Account*" means a general account:  (a) into which shall be deposited revenues and proceeds of all assets of the Debtors, including proceeds of any Asset Sale Transaction, subject to the Final DIP Order, and Cash of the Debtors in an amount in excess of the amount required to adequately maintain the Distribution Reserve Accounts as described in Article VIII.C (provided that the General Account shall not include funds required to be deposited into the Distribution Reserve Accounts); and (b) from which payments shall be made according to the priority set forth in Article IV.B.

76.     "*General Unsecured Claim*" means any Claim other than (a) an Administrative Claim, (b) an Other Secured Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a FILO Claim, (f) a Junior Secured Claim, (g) an Intercompany Claim, (h) a DIP Claim, or (i) an ABL Claim; *provided, however*, that any Junior Secured Deficiency Claim shall be a General Unsecured Claim.  For the avoidance of doubt, General Unsecured Claims include the 2014 Senior Unsecured Notes Claims.

77.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

78.     "*Holder*" means an Entity holding a Claim or Interest, as applicable.

79.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

80.    "*Initial Sharing Threshold*" means the point in time at which the combined aggregate recoveries to Holders of Allowed Claims in Classes 3 and 4 exceeds $515,000,000.00, *plus* interest and fees on account of such Claims.

81.    "*Interchange Claims*" means any Claim or Cause of Action held by a Debtor or a Debtor's Affiliate, and any successors or assigns relating to the payment card interchange fee and merchant discount antitrust litigation.

82.    "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

83.    "*Intercompany Interest*" means, other than an Interest in BBB, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

84.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

85.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, as applicable to the Chapter 11 Cases.

86.    "*Junior Secured Claim*" means a Secured Claim that is secured by a Lien junior to the Lien securing the DIP Claims, ABL Claims, and FILO Claims.

87.    "*Junior Secured Deficiency Claim*" means any Junior Secured Claim, or portion thereof, that is not Secured.

88.    "*Lease Sale Procedures*" means the *Lease Sale Procedures for the Sale of Certain Lease Assets* attached to the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422].

89.    "*Lender Fees*" shall have the meaning set forth in Article II.D of this Plan.

90.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

91.    "*Liquidation*" means the liquidation of the Debtors on the terms of the Plan.

92.    "*Liquidation Documents*" means the Plan, the Disclosure Statement, the Plan Supplement, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder, each of which shall be acceptable to the DIP Agent, FILO Agent, and Creditors' Committee in their sole discretion.

93.    "*Liquidating Trust*" shall have the meaning ascribed to such term in Article VII.C herein.

94.    "*Liquidating Trust Assets*" means any assets transferred from the Wind-Down Debtors to the Liquidating Trust in accordance with Article VII.C herein.

95.    "*Liquidation Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably determines to be necessary to implement the Liquidation, as described in more detail in Article IV.A herein.

96.    "*Non-Released Claims*" means all Claims and Causes of Action belonging to a Debtor or its Estate including, but not limited to, the (a) D&O Claims, (b) Avoidance Actions, (c) Other Liability Claims, (d) Shipping and Price Gouging Claims, (e) Interchange Claims, and (f) Securities Claims.

97.    "*Notice and Claims Agent*" means Kroll Restructuring Administration LLC.

98.    "*Other Liability Claims*" means any Claims or causes of Action of the Debtors against professionals, excluding any professionals retained by the Debtors in their chapter 11 cases (including, for the avoidance of doubt, Kirkland & Ellis LLP and Kirkland & Ellis International LLP (including any employees or contractors thereof), Cole Schotz, AlixPartners, Lazard, and A&G Realty).

99.    "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

100.    "*Other Secured Claim*" means any Secured Claim, other than claims arising under the Prepetition Credit Facilities or the DIP Documents, that is secured by a Lien senior to the Lien securing the DIP Claims, the ABL Claims, and the FILO Claims.  For the avoidance of doubt, any Allowed Claim of the Texas Taxing Authorities (as defined in the Final DIP Order) that is a Secured Claim under applicable law shall be an Other Secured Claim.

101.    "*Oversight Committee*" shall have the meaning ascribed to such term in Article IV.F.7 of the Plan.

102.    "*Permitted Transfer*" means a transfer of all or a portion of the assets of the Wind-Down Debtors to the Liquidating Trust in accordance with Article VII.C hereof.

103.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

104.    "*Petition Date*" means April 23, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

105.    "*Plan*" means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments thereto.

106.    "*Plan Administrator*" means the person, selected by the DIP Agent, the FILO Agent, and the Creditors' Committee, and reasonably acceptable to the Debtors, to administer the Wind-Down Debtors. For the avoidance of doubt, all costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Wind Down Debtors' assets.  The identity of the Plan Administrator shall be disclosed in the Plan Supplement.

107.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code, the Bankruptcy Rules), each of which shall be acceptable to the DIP Agent, FILO Agent, and Creditors' Committee in their sole discretion, to be Filed by the Debtors no later than fourteen days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the identity and terms of any documentation, including a wind-down trust agreement, as applicable, establishing the rights and compensation of the Plan Administrator and the oversight of the

14

Oversight Committee; (c) any transition services agreement between a Purchaser and the Debtors (as applicable); and (d) any other necessary documentation related to any Asset Sale Transaction or other Liquidation Transactions in accordance with Article IV of the Plan.

108.    "*Predecessor ABL Agent*" means JPMorgan Chase Bank, N.A.

109.    "*Preference Action*" means any and all preference actions which any of the Debtors, the Estates, or other appropriate parties in interest have asserted or may assert under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law to recover preferential payments made to non-insiders of the Debtors within 90 days prior to the Petition Date.

110.    "*Prepetition Agents*" means, collectively, (a) the ABL Agent and (b) the FILO Agent.

111.    "*Prepetition Claims Bar Date*" means the dates established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim on account of prepetition claims (including claims arising under section 503(b)(9) of the Bankruptcy Code) must be Filed.

112.    "*Prepetition Collateral*" shall have the meaning ascribed to such term in the Final DIP Order.

113.    "*Prepetition Credit Agreement*" means that certain Amended and Restated Credit Agreement, dated as of August 9, 2021, (as amended, restated, supplemented, or otherwise modified from time to time) among BBB as parent borrower, the ABL Agent, the ABL Lenders, the FILO Agent, and the FILO Lenders.

114.    "*Prepetition Credit Facilities*" means, collectively, the ABL Facility and the FILO Facility.

115.    "*Prepetition Credit Facility Documents*" means the Prepetition Credit Agreement and any other documents executed in connection therewith or related thereto.

116.    "*Priority Claims Reserve*" means a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $10 million less any amounts that were paid from the Priority Claims Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date.

117.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

118.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

119.    "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

120.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid.

121.    "*Professional Fee Escrow Account*" means an interest-bearing account (to the extent commercially reasonable) in an amount equal to the total Professional Fee Reserve Amount funded by the Wind-Down Debtors on the Effective Date.

122.    "*Professional Fee Reserve Amount*" means the amount set forth in the Wind-Down Budget for all Professional fee payments through the Effective Date, including (a) amounts budgeted for prior months not yet invoiced to the Debtors and (b) any amounts for services provided in prior periods that are invoiced but not yet paid (including hold back amounts).

123.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Cases.

124.    "*Purchase Agreement*" means any asset purchase agreement, by and among the Debtors and a Purchaser, as may be amended, supplemented, or otherwise modified from time to time.

125.    "*Purchaser*" means, collectively, any purchaser under any Asset Sale Transaction, together with its or their successors and permitted assigns (including any and all of its or their wholly-owned Affiliates to which it or they assigns any of its rights or obligations).

126.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

127.    "*Rejection Notice*" means any applicable notice filed by the Debtors in accordance with the *Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 382], providing notice to counterparties of the Debtors' intent to reject an Executory Contract or Unexpired Lease.

128.    "*Released Party*"  means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims.  Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

129.    "*Releasing Party*" means each of the following, solely in its capacity as such:  (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases

provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

130.    "*Retained Professional*" means each of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Cole Schotz, P.C., AlixPartners, Pachulski Stang Ziehl & Jones LLP, and Alvarez & Marsal North America, LLC.

131.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Wind-Down Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan, which shall be in form and substance acceptable to each of the Debtors.

132.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

133.    "*SEC*" means the United States Securities and Exchange Commission.

134.    "*Secondary Sharing Threshold*" means the point in time at which the combined aggregate recoveries to Holders of Allowed Claims in Classes 3 and 4 exceeds $550,000,000.00, *plus* interest and fees on account of such Claims.

135.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

136.    "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

137.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

138.    "*Securities Claims*" means Claims and Causes of Action arising in connection with the issuance, redemption, purchase or sale of Debtors' debt or equity securities, including without limitation claims arising under state or federal securities laws, including without limitation the Securities Act and the Securities Exchange Act of 1934.

139.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

140.    "*Shared Proceeds Pool*" means all funds allocated to the Debtors or the applicable Successor Entity, as applicable, in accordance with the Sharing Mechanism.

141.    "*Sharing Mechanism*" shall have the meaning ascribed to such term in Article IV.B herein.

142.    "*Shipping and Price Gouging Claims*" means, collectively, those Claims and Causes of Action of the Debtors, their Affiliates, and any successors or assigns (a) relating to the "fail[ure] to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property," including pricing practices in accordance with 46 U.S. Code § 41102(c) and/or (b) brought under federal maritime law, including, without limitation, the Shipping Act of 1984, 46 U.S.C. §§ 40101 – 41309, the Ocean Shipping Reform Act of 2022, and any similar laws, and in accordance with the 46 C.F.R. §§ 500 – 599.

143.    "*Successor Entity*" means (i) the Wind-Down Debtors or (ii) any successor liquidating trust established by the Wind-Down Debtors.

144.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

145.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

146.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

147.    "*Voting Deadline*" means September 1, 2023, at 4:00 p.m. (prevailing Eastern Time).

148.    "*WARN Costs*" shall have the meaning ascribed to such term in the Final DIP Order.

149.    "*WARN Reserve*" means a reserve with the meaning ascribed to such term in the Final DIP Order in the amount of $16 million less any amounts that were paid from the WARN Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date.

150.    "*Waterfall Recovery*" shall have the meaning ascribed to such term in Article IV.B herein.

151.    "*Wind Down*" means the wind down and dissolution of the Debtors' Estates following the Effective Date as set forth in Article VII.B hereof.

152.    "*Wind-Down Budget*" means the budget to be delivered by the Debtors to the DIP Agent and FILO Agent no later than seven days prior to the Effective Date, in form and substance acceptable to the DIP Agent and FILO Agent, which shall project the Wind-Down Debtors' and Plan Administrator's receipts and disbursements, and expenditures from the Combined Reserve and WARN Reserve, as may be updated pursuant to Article VII.G; *provided* that the initial Wind-Down Budget delivered prior to the Effective Date shall also be delivered to the Creditors' Committee and shall be in form and substance acceptable to the Creditors' Committee.

153.    "*Wind-Down Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, including any liquidating trust, on or after the Effective Date.

154.    "*Wind-Down Reserve*" means a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $5 million less any amounts that were paid from the Wind-Down Reserve pursuant to and consistent with the terms of the Plan prior to the Effective Date.

## B.    Rules of Interpretation

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (3) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (4) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter have been or may thereafter be validly amended, amended and restated, supplemented, or otherwise modified; (5) unless otherwise specified, any reference to an Entity as a Holder of a Claim or Interest, includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) unless otherwise specified, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases; (14) any effectuating provisions may be interpreted by the Debtors or the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, that corporate governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

## E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## F.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## G.    Nonconsolidated Plan

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

## A.    Administrative Claims and Priority Tax Claims

Except as otherwise provided in this Article II.A. and except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be made by the Administrative Claims Bar Date or in compliance with the Bar Date Order.  **Holders of Administrative Claims that are required to, but do not timely request payment on account of Administrative Claims as set forth in the Bar Date Order or by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Wind-Down Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date**.  Objections to such requests, if any, must be Filed in compliance with the Bar Date Order.

Except with respect to Administrative Claims that are Professional Fee Claims or DIP Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claims shall be paid the unpaid portion of its Allowed

Administrative Claim from the Combined Reserve on the latest of:  (a) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; provided that Allowed Administrative Claims that arise in the ordinary course of the Wind-Down Debtors' businesses that are required for the Wind Down shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions (and no requests for payment of such Administrative Claims must be Filed or served).  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.  Holders of Allowed Administrative Claims shall receive payment in full from (a) *first*, the Combined Reserve; (ii) *second*, the Shared Proceeds Pool; and (iii) *third*, any remaining Distributable Proceeds after payment in full of all Allowed DIP Claims and Allowed FILO Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

Objections to requests for payment of such Administrative Claims, if any, must be Filed with the Bankruptcy Court and served on the Wind-Down Debtors and the requesting Holder no later than the Claims Objection Bar Date for Administrative Claims.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

**B.    Professional Compensation**

1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than forty-five (45) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.  Notwithstanding anything to the contrary herein, to the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency.

2.    Professional Fee Escrow Account

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount plus the amount of $600,000 for payment of professional fees for the 2014 Senior Unsecured Notes Trustee (the "2014 Notes Indenture Professional Fee Reserve Amount").  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and the 2014 Notes Indenture Professional Fee Reserve Amount shall be maintained in trust solely for the professionals retained by the 2014 Senior Unsecured Notes Trustee.  Such funds shall not be considered property of the Estates or the Plan Administrator.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind-Down Debtors as soon as reasonably practicable after such Professional Fee Claims are Allowed.  The amount of

professional fees paid to the professionals retained by the 2014 Senior Unsecured Notes Trustee shall be paid in Cash to such professionals by the Wind-Down Debtors as soon as reasonably practicable after the Effective Date. When all Allowed amounts owing to the Professionals and the professionals for the 2014 Senior Unsecured Notes Trustee have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors for distribution in accordance with the Waterfall Recovery without any further action or order of the Bankruptcy Court.

3.      Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; provided, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or Wind-Down Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.      Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtors or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**C.      Statutory Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Wind-Down Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Wind-Down Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**D.      Lender Professional Fees**

From and after the entry of the Confirmation Order, the Debtors or Wind-Down Debtors, as applicable, shall, without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the legal, professional, and other fees and expenses of the Prepetition Agents, Predecessor ABL Agent, and DIP Agent (the "Lender Fees") within three (3) business days of such parties' delivery of an invoice to the Debtors or Wind-Down Debtors, and such parties shall not be required to comply with the procedures set forth in paragraph 37 of the Final DIP Order.

**ARTICLE III.
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.      Summary of Classification**

Claims and Interests, except for Administrative Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the

extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

      1.      <u>Class Identification</u>

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | DIP Claims | Impaired | Entitled to Vote |
| 4 | FILO Claims | Impaired | Entitled to Vote |
| 5 | Junior Secured Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| 8 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 9 | Interests in BBB | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

      **B.**      **Treatment of Claims and Interests**

Subject to Article VI hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

      1.      <u>Class 1 – Other Priority Claims</u>

            a.      *Classification*: Class 1 consists of Other Priority Claims.

            b.      *Treatment*: In full and final satisfaction of each Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority

23

Claim agrees to a less favorable treatment, each Holder thereof will receive payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget, or other treatment rendering such Claim Unimpaired.

c.    *Voting*:  Class 1 is Unimpaired.  Holders of Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Secured Claims</u>

a.    *Classification*:  Class 2 consists of Other Secured Claims against any Debtor.

b.    *Treatment*:  In full and final satisfaction of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder thereof will receive, with the consent of the DIP Agent: (a) payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired.

c.    *Voting*:  Class 2 is Unimpaired.  Holders of Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 – DIP Claims</u>

a.    *Classification*:  Class 3 consists of all DIP Claims.

b.    *Allowance*:  The DIP Claims shall be Allowed in the aggregate face amount of the then outstanding amount under the DIP Facility, plus any unreimbursed amounts thereunder, and any accrued but unpaid interest on such unreimbursed amounts through the Effective Date, plus any fees, charges, expenses, reimbursement obligations, indemnification obligations, prepayment premiums, and other amounts due under the DIP Facility.

c.    *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed DIP Claim shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claims are Paid in Full (as defined in the Final DIP Order).  The Liens securing the DIP Claims shall not be released and discharged until Payment in Full of the DIP Claims.

d.    *Voting*:  Class 3 is Impaired.  Holders of Allowed Class 3 Claims are entitled to vote on the Plan.

4.    <u>Class 4 – FILO Claims</u>

      a.    *Classification*:  Class 4 consists of all FILO Claims.

      b.    *Allowance*:  The FILO Claims shall be Allowed in the aggregate amount of $349.6 million plus accrued but unpaid interest, fees and all other amounts due under the Prepetition Credit Agreement.

      c.    *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), to the extent not already indefeasibly paid in full in cash or "rolled up" or converted into DIP Obligations prior to the Effective Date, each Holder of an Allowed FILO Claim shall receive Distributable Proceeds in accordance with the Waterfall Recovery (subject to the Sharing Mechanism) until such Claim is Paid in Full (as defined in the Final DIP Order).  The Liens securing the FILO Claims shall not be released and discharged until Payment in Full of the FILO Claims.

      d.    *Voting*:  Class 4 is Impaired.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – Junior Secured Claims</u>

      a.    *Classification*:  Class 5 consists of all Junior Secured Claims.

      b.    *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed Junior Secured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

      c.    *Voting*:  Class 5 is Impaired.  Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – General Unsecured Claims</u>

      a.    *Classification*:  Class 6 consists of all General Unsecured Claims.

      b.    *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed General Unsecured Claim shall receive its *Pro Rata* share of (i) the Shared Proceeds Pool, *only if* such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims.

      c.    *Voting*:  Class 6 is Impaired.  Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

7.      Class 7 – Intercompany Claims

        a.      *Classification*:  Class 7 consists of all Intercompany Claims.

        b.      *Treatment*: In full and final satisfaction of each Allowed Intercompany Claim, each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated, distributed, contributed, set off, settled, cancelled and released or otherwise addressed at the option of the Debtors; provided, that no distributions shall be made on account of any such Intercompany Claims.

        c.      *Voting*:  Class 7 is either Unimpaired, and the Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired or the Holders of Allowed Class 6 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.      Class 8 – Intercompany Interests

        a.      *Classification*:  Class 8 consists of all Intercompany Interests.

        b.      *Treatment*:  Intercompany Interests shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

        c.      *Voting*:  Class 8 is Impaired, and Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

9.      Class 9 – Interests in BBB

        a.      *Classification*:  Class 9 consists of all Interests in BBB.

        b.      *Treatment*:  In full and final satisfaction of each Allowed Interest in BBB, each Allowed Interest in BBB shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests.

        c.      *Voting*:  Class 9 is Impaired.  Holders of Interests in BBB are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

10.     Class 10 – Section 510(b) Claims

        a.      *Classification*:  Class 10 consists of all Section 510(b) Claims.

        b.      *Treatment*:  Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or

effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim. The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

c.  *Voting*:  Class 10 is Impaired.  Holders of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**C.  Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims and Interests.  The Debtors reserve the right to modify the Plan, with the consent of the DIP Agent, FILO Agent, and Creditors' Committee, in accordance with Article XII hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**D.  Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.  Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

**F.  Subordinated Claims and Interests**

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.
MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.  Liquidation Transactions**

On the Effective Date, or as soon as reasonably practicable thereafter, the Wind-Down Debtors shall take all actions as may be necessary or appropriate to effectuate the Liquidation Transactions, each of which shall be subject to the consent of the DIP Agent, FILO Agent, and Creditors' Committee, including, without limitation:  (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Liquidation Transactions; (e) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

## B.    Distributable Proceeds and Waterfall Recovery.

On or after the Effective Date, the Debtors shall make distributions on account of Allowed Claims in accordance with Article III.B herein using the Distributable Proceeds.  In accordance with the Final DIP Order, (a) Distributable Proceeds of Prepetition Collateral shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority: (i) *first*, on account of Allowed FILO Claims; (ii) *second*, on account of DIP Claims; (iii) *third*, on account of Allowed Administrative Claims (other than DIP Claims) and Priority Tax Claims; (iv) *fourth*, on account of Allowed Other Secured Claims; (v) *fifth*, on account of Allowed Other Priority Claims; (vi) *sixth*, on account of any Allowed Junior Secured Claims; and (vii) *seventh*, on account of any Allowed General Unsecured Claims; and (b) Distributable Proceeds of DIP Collateral that does not constitute Prepetition Collateral shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority: (i) *first*, on account of Allowed DIP Claims; (ii) *second*, on account of Allowed FILO Claims; (iii) *third*, on account of Allowed Administrative Claims (other than DIP Claims) and Priority Tax Claims; (iv) *fourth*, on account of Allowed Other Secured Claims; (v) *fifth*, on account of Allowed Other Priority Claims; (vi) *sixth*, on account of any Allowed Junior Secured Claims; and (vii) *seventh*, on account of any Allowed General Unsecured Claims (collectively, the "Waterfall Recovery"); *provided* that the foregoing shall be subject to paragraph 60 of the Final DIP Order, which provides that: (x) prior to the Initial Sharing Threshold, 100% of the proceeds of DIP Collateral and Prepetition Collateral shall be distributed to holders of Allowed DIP Claims or Allowed FILO Claims, as applicable; (y); whereupon the Initial Sharing Threshold is reached and until the Secondary Sharing Threshold is reached, (i) 80% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 20% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (ii) 60% of the proceeds of the D&O Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 40% of the proceeds of the D&O Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable, (iii) 50% of the proceeds of the Other Liability Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Other Liability Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (iv) 50% of the proceeds of the Interchange Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Interchange Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (v) 100% of the proceeds of the Preference Actions shall be distributed to the Debtors or the applicable Successor Entity, as applicable; and (vi) 100% of the proceeds of Prepetition Collateral and DIP Collateral not enumerated in clauses (i)-(vi) of the foregoing shall be distributed to Holders of Allowed

FILO Claims or Allowed DIP Claims, as applicable; and (z) whereupon the Secondary Sharing Threshold is reached, (i) 65% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 35% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (ii) 50% of the proceeds of the D&O Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the D&O Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable, (iii) 50% of the proceeds of the Other Liability Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Other Liability Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (iv) 50% of the proceeds of the Interchange Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Interchange Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (v) 100% of the proceeds of the Preference Actions shall be distributed to the Debtors or the applicable Successor Entity, as applicable; and (vi) 80% of the proceeds of Prepetition Collateral and DIP Collateral not enumerated in clauses (i)-(vi) of the foregoing shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 20% of the proceeds of such claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable (the foregoing clauses (x) and (y), the "Sharing Mechanism"); *provided*, *further*, that pursuant to this Plan, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (a) the Combined Reserve or WARN Reserve as applicable, and (b) Distributable Proceeds to the extent available from the Waterfall Recovery.  For the avoidance of doubt, Holders of Allowed FILO Claims or Allowed DIP Claims shall not receive any recovery from the Shared Proceeds Pool after Payment in Full (as defined in the Final DIP Order) of the DIP Claims and FILO Claims.

> ### C.    WARN Reserve and Combined Reserve.

On and after the Effective Date, the Plan Administrator shall administer the Combined Reserve and the WARN Reserve.

In accordance with the Final DIP Order, all funds in the Combined Reserve constitute property of the Estate, and are free and clear of all liens, claims, or encumbrances.  The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date.  If all or any portion of an Other Priority Claim, Priority Tax Claim, Administrative Claim (other than Professional Fee Claims or Allowed DIP Claims), or Allowed Other Secured Claim shall become a Disallowed Claim, then the amounts on deposit in the Combined Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Combined Reserve, shall remain in the Combined Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Combined Reserve is sufficient to ensure that all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Court.

The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors, and the Plan Administrator as set forth in the Plan and Wind-Down Budget; *provided* that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of

records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes. Any amounts remaining in the Combined Reserve after payment of all expenses of the Wind-Down Debtors and the Plan Administrator, and all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery without any further action or order of the Court.

The WARN Reserve shall be used to pay WARN Costs, and, to the extent such Claims are not paid in full from the Combined Reserve, Allowed Priority Tax Claims. After payment in full of all WARN Costs and Allowed Priority Tax Claims, any amounts remaining in the WARN Reserve shall be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery, subject to the Sharing Mechanism, without any further action or order of the Court.

Any contrary provision hereof notwithstanding, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (i) the Combined Reserve or WARN Reserve as applicable, and (ii) Distributable Proceeds to the extent available from the Waterfall Recovery.

### D.    Cancellation of Notes, Instruments, Certificates, and Other Documents

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Liquidation Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the Wind-Down Debtors, as applicable, any non-Debtor Affiliates shall be deemed satisfied in full, cancelled, released, discharged, and of no force or effect; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order.

### E.    General Settlement of Claims

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the

best interests of the Debtors, their respective Estates, and holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down Debtors may compromise and settle Claims against the Debtors and their respective Estates and Causes of Action against other Entities.

### F.    Means for Implementation

Any Asset Sale Transaction will be either (a) conducted pursuant to the Bidding Procedures or Lease Sale Procedures, (b) approved by the Bankruptcy Court prior to the Effective Date, or (c) otherwise authorized by the Plan.

### 1.    Sources of Consideration for Plan Distributions

The Plan Administrator, subject to the Sharing Mechanism, will fund distributions under the Plan from (a) the Combined Reserve; (b) the WARN Reserve; and (c) Distributable Proceeds in accordance with the Waterfall Recovery, unless, as it relates to each of the foregoing, such distributions are provided for in the DIP Budget.  Distributable Proceeds will be created by, among other things, the prosecution and monetization of Non-Released Claims.

### 2.    Vesting of Assets

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, all property of the Estates shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable. On and after the Effective Date, the Debtors and the Wind-Down Debtors may (at the direction of the Plan Administrator) use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 3.    Wind-Down Debtors

On and after the Effective Date, if applicable, the Wind-Down Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible; (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) establishing and, to the extent not already funded, funding the Distribution Reserve Accounts; (e) enforcing and prosecuting claims, interests, rights, and privileges under all Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreements, if any, (h) liquidating all assets of the Wind-Down Debtors, and (i) otherwise administering the Plan in an efficacious manner consistent with the Plan.  The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

### 4.    Plan Administrator

As set forth below, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a president and chief executive officer (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order.  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole officer of the Wind-Down Debtors, and shall succeed to the rights, powers, duties and privileges of the Wind-Down Debtors' officers.  Subject only to the authority delegated to the Oversight Committee, the Plan Administrator will replace all officers of each Debtor and will report to the Oversight Committee.  Subject to the terms of the Plan, among other duties normal and customary of a director and officer responsible for winding down the affairs of a business, the Plan Administrator shall have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and Wind Down Debtors' Claims and Causes of Action.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors as further described in Article VII hereof.  The Plan Administrator shall have the authority to sell, liquidate, or otherwise dispose of any and all of the Wind-Down Debtors' assets without any additional notice to or approval from the Bankruptcy Court.

5.    Board of the Debtors

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be deemed to have resigned without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.  Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, subject to the authority of the Oversight Committee, the Plan Administrator shall act as the sole officer of the Debtors with respect to its affairs.  Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall:  (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of any of the Debtors under the applicable laws of each applicable Debtor's state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Debtors or the Estates before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of BBB or any of its affiliates.

6.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable.

7.    Preservation of Causes of Action

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, in accordance with section 1123(b) of the Bankruptcy Code, on the Effective Date, all Causes of Action shall automatically vest in the Wind-Down Debtors, and the Plan Administrator shall have the right and authority to investigate, commence, prosecute, or settle, as appropriate, any and all the Non-Released Claims, whether arising before or after the Petition Date.

The Plan Administrator shall report to and be overseen by a four-member oversight committee (the "Oversight Committee").  Each member of the Oversight Committee shall have a fiduciary obligation to the Wind Down Debtors and Holders of Allowed Claims.  The Oversight Committee shall initially consist of four members to be appointed: (a) two by the Creditors' Committee; (b) one by the FILO Agent (the "FILO Appointee"); and (c) one by the FILO Agent and Creditors' Committee, which appointee shall be acceptable to the Debtors in their sole discretion (the "Fourth Member"); *provided* that, upon Payment in Full (as defined in the Final DIP Order) including payment of all accrued and unpaid Lender Fees, the FILO Appointee shall be replaced by a new member selected by the Creditors' Committee.  For the avoidance of doubt, the Fourth Member shall not be replaced.

The Plan Administrator shall have the authority to release or settle any Claim or Cause of Action without the approval of the Oversight Committee where (i) the amount in controversy is equal to or less than $10 million without approval of the Oversight Committee; or (ii) the amount in controversy is more than $10 million and the settlement amount is at least 70% of the amount in controversy.  For any Claim or Cause of Action where the amount in controversy is greater than $10 million and the settlement amount is less than 70%, the Plan Administrator shall have the authority to release or settle such Claims or Causes of Action upon an affirmative vote of two members of the Oversight Committee; *provided* that decisions of the Plan Administrator related to the release or settlement of, or judgment in any D&O Claim, including decisions related to any appeal thereof, shall be made by a unanimous vote of the Oversight Committee.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors preserve the Causes of Action (including all Non-Released Claims) notwithstanding the assumption or rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, on the Effective Date,

33

any Causes of Action that a Debtor (or its Estate) may hold against any Entity shall automatically vest in and become property of the Wind Down Debtors. The Wind Down Debtors and the Plan Administrator, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all Causes of Action vested, transferred, or assigned to such entity. The Debtors or the Plan Administrator as applicable shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

In the event that the Initial Sharing Threshold has not been achieved within 12 months after the Petition Date (and before the expiration of any applicable statute of limitations), the Plan Administrator shall investigate, analyze, and to the extent appropriate in the business judgment of the Plan Administrator, pursue all Preference Actions.

### G.    Exemption from Certain Transfer Taxes and Fees

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the Asset Sale Transaction, or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, assumed and assigned, or included in a Rejection Notice shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Confirmation Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction that is the subject of a pending motion as of the Confirmation Date; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Liability Insurance Policy; or (6) is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date for rejection effective on a date that occurs after the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases or otherwise Rejected pursuant to the Plan shall be served with

a notice of rejection of Executory Contracts and Unexpired Leases substantially in the form approved by the Bankruptcy Court pursuant to the Bankruptcy Court order approving the Disclosure Statement as soon as reasonably practicable following the filing of the Plan Supplement.  The notice of the Plan Supplement shall also be deemed appropriate notice of rejection when served on applicable parties.  Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Notice and Claims Agent by the later of the date that is thirty (30) days after (1) the entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the Effective Date; and (3) the effective date of any rejection that occurs after the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases.  The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely filed; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.**  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

### C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by performance or payment of the Cure Obligation in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the Cure Obligation, (2) the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least 8 days before the Voting Deadline, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties and their counsel (if known).  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure amount must be Filed by the Cure/Assumption Objection Deadline.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure amount.  To the extent that the Debtors seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned, which adequate assurance information will be provided with the Cure Notice.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the satisfaction of the Cure Obligations, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and

assigned shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register. For the avoidance of doubt, with respect to any asserted non-monetary Cure Obligations, such Cure obligations may be cured (or resolved) by the assignee and the applicable counterparty in the ordinary course of business following the assumption and all parties reserve all rights with respect to any such asserted Cure obligations.

### D.    Insurance Policies

All of the Debtors' insurance policies (including, for the avoidance of doubt, the D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto. After the Effective Date, the Plan Administrator shall not terminate or otherwise reduce the coverage under the D&O Liability Insurance Policies in effect on the Effective Date, with respect to conduct occurring prior thereto, and all officers, directors, trustee, managers, and members of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, (i) nothing in this paragraph shall in any way affect the Plan Administrator's ability to assert the Non-Released Claims or any other applicable claims that are not otherwise released pursuant to the Plan and are properly asserted against the D&O Liability Insurance Policies, or access the proceeds of the D&O Liability Insurance Policies for any losses on account of such Non-Released Claims or such other claims.

### E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed (or assumed and assigned) shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### F.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

## G.    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Executory Contract or Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code.

## H.    Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into in the ordinary course of business after the Petition Date by any Debtor, including any Executory Contracts and/or Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Wind-Down Debtor in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that have not been rejected under the Plan will survive and remain unaffected by entry of the Confirmation Order, except as provided therein.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided herein, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VI of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.    Delivery of Distributions

a.    Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VI, or Interests shall be made to Holders of record as of the Distribution Record Date by the Wind-Down Debtors or Plan Administrator:  (1) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Wind-Down Debtors after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Wind-Down Debtors have not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors and the Wind-

Down Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

All Distributions on account of Allowed DIP Claims, Allowed ABL Claims, and Allowed FILO Claims shall be made to or at the direction of the DIP Agent or Prepetition Agents, as applicable for further distribution to the DIP Lenders, ABL Lenders, and FILO Lenders, as applicable, in accordance with the Prepetition Credit Agreement and the Plan, and shall be deemed completed when made to or at the direction of the applicable DIP Agent or Prepetition Agent. As soon as practicable following any delivery of distributions to the DIP Agent or Prepetition Agents on account of Allowed DIP Claims, Allowed ABL Claims, and/or Allowed FILO Claims, the applicable DIP Agent or Prepetition Agent shall arrange to deliver any such distributions to the DIP Lenders, ABL Lenders, and/or FILO Lenders, as applicable, in accordance with the Final DIP Order, Prepetition Credit Agreement, and the Plan. For the avoidance of doubt, the DIP Agent and Prepetition Agents shall have no liability to any party for actions taken in accordance with this Plan or in reliance upon information provided to it in accordance with this Plan, and the Wind-Down Debtors shall reimburse the DIP Agent and Prepetition Agents for any reasonable and documented fees and expenses (including reasonable and documented fees and expenses of its counsel and agents), incurred on or after the Effective Date.

2.    Minimum Distributions

Holders of Allowed Claims entitled to distributions of $100 or less shall not receive distributions, and each such Claim shall be discharged pursuant to Article X and its Holder is forever barred pursuant to Article X from asserting that Claim against the Wind-Down Debtors or their property.

3.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Wind-Down Debtors or the Plan Administrator, as applicable, have determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the applicable Wind-Down Debtors or the Plan Administrator, as applicable, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

**C.    Tax Issues and Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtors, Wind-Down Debtors or the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Wind-Down Debtors or the Plan Administrator, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Wind-Down Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

38

Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including the Combined Reserve, the WARN Reserve, and the General Account) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

### D.    Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

### E.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, except as provided in the Final DIP Order and DIP Documents, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

### F.    Setoffs and Recoupment

The Debtors or the Wind-Down Debtors, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Wind-Down Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Wind-Down Debtors of any such Claim it may have against the Holder of such Claim.

### G.    Claims Paid or Payable by Third Parties

1.    <u>Claims Paid by Third Parties</u>

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or Wind-Down Debtor, such Holder shall be barred from asserting such Claim against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims Filed with respect to an Executory Contract or Unexpired Lease that received payment in full on account of such Claim from a party that is not a Debtor or Wind-Down Debtor; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Wind-Down Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or Wind-Down Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing

the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.  <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove the applicable portion of such Claim; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register.

3.  <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything herein to the contrary (including, without limitation, Article VII), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**THE PLAN ADMINISTRATOR**

**A.    The Plan Administrator**

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors and Wind-Down Debtors, including (all without further order of the Bankruptcy Court):  (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Wind-Down Debtors (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (3) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (7) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (8) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (9) investigating commencing, prosecuting, or settling the Non-Released Claims; and (10) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Wind-Down Debtors and the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be mutually agreed by the DIP Agent and the Oversight Committee.  Upon its appointment, the successor Plan Administrator, without any

further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

1.    Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties of a trustee in bankruptcy including without limitation the powers necessary to carry out his or her responsibilities under this Plan and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.    Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors from the Combined Reserve upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Combined Reserve.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Combined Reserve and shall not be subject to the approval of the Bankruptcy Court.

3.    Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Combined Reserve.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Combined Reserve if such amounts relate to any actions taken hereunder.  Notwithstanding anything to the contrary herein, all fees, expenses, and disbursements of the Plan Administrator, including the compensation of the Plan Administrator and the payment of fees and expenses of any professionals engaged by the Plan Administrator, shall be subject to the Wind-Down Budget.

4.    Plan Administrator Expenses

All costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Wind-Down Debtors, or in any manner connected, incidental or related thereto, in effecting distributions from the Wind-Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid from the Combined Reserve as set forth in the Plan Supplement.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Combined Reserve.

**B.    Wind-Down**

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Purchase Agreements and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor. From and after the Effective Date, except with respect to Wind-Down Debtors as set forth herein, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

## C.    Liquidating Trust.

Notwithstanding anything to the contrary herein, the Plan Administrator may, with the consent of the DIP Agent, the FILO Agent, and the Creditors' Committee, or (following the Effective Date) with the consent of the DIP Agent, FILO Agent and Oversight Committee transfer all or any portion of the assets of the Wind-Down Debtors to a trust (the "Liquidating Trust"), which shall be a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations. For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in Article IV.F.7 herein shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Non-Released Claims transferred to the Liquidating Trust. The Liquidating Trust shall be established for the primary purpose of liquidating the Liquidating Trust's assets, reconciling claims asserted against the Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust. Upon the transfer of the Wind-Down Debtors' assets to the Liquidating Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust. To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests. Prior to any Permitted Transfer, the Plan Administrator may designate trustee(s) for the Liquidating Trust, with the consent of the DIP Agent, the FILO Agent, and the Creditors' Committee, for the purposes of administering the Liquidating Trust. The reasonable costs and expenses of the trustee(s) shall be paid from the Liquidating Trust.

1.     Liquidating Trust Treatment

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of any Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly.  For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to challenge successfully the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the trustee(s) of the Liquidating Trust, and the holders of Claims receiving interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g.,

income, gain, loss, deduction and credit). Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

2.      Disputed Ownership Fund Treatment

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). For a detailed description of the treatment of the Liquidating Trust, *see* Article XI.E of the Disclosure Statement, entitled "*Tax Matters Regarding the Liquidating Trust*."

D.      **Exculpation, Indemnification, Insurance & Liability Limitation**

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Combined Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

E.      **Tax Returns**

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

F.      **Dissolution of the Wind-Down Debtors**

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction. The Plan Administrator,

however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

### G.    Budget and Reporting

Unless otherwise agreed to in writing by the DIP Agent, the FILO Agent, and the Debtors or Wind-Down Debtors, as applicable, commencing the second Thursday following the Effective Date and every two weeks thereafter (each such two-week period, a "Reporting Period"), until Payment in Full (as defined in the Final DIP Order) of the DIP Claims and FILO Claims, the Plan Administrator shall deliver to the DIP Agent and FILO Agent (i) an updated Wind-Down Budget; (ii) a variance report comparing actual receipts and disbursements against those forecast in the applicable Wind-Down Budget; (iii) a report on amounts distributed from the Combined Reserve and WARN Reserve during such Reporting Period; (iv) a report on the status of all claims and causes of action that the Plan Administrator, and/or Wind-Down Debtors have commenced or are authorized to commence pursuant to the Plan; and (v) a report on the claims reconciliation and objection process.  At the conclusion of each Reporting Period, or more frequently if requested, the Plan Administrator shall meet with the DIP Agent, FILO Agent, and counsel thereto to discuss the reporting set forth in this Article VII.G.  Any Reporting Period may be adjusted with the consent of the DIP Agent and FILO Agent.

### ARTICLE VIII.
### RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR

### A.    Undeliverable Distribution Reserve

1.    Deposits

If a distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VIII.B.2 of this Plan.

2.    Forfeiture

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within three months after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Plan Administrator, the Wind-Down Debtors, or their respective properties or assets.  In such cases, any Cash or other property held by the Wind-Down Debtors in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Wind-Down Debtors, notwithstanding any federal or state escheat laws to the contrary, and shall promptly be transferred

to the General Account to be distributed according to the priority set forth in Article IV.B without any further action or order of the Court.

      3.    <u>Disclaimer</u>

The Plan Administrator and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder; provided that in his or her sole discretion, the Plan Administrator may periodically publish notice of unclaimed distributions.

      4.    <u>Distribution from Reserve</u>

Within fifteen (15) Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution, the Plan Administrator shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, to the General Account.

### B.    WARN Reserve and Combined Reserve

On and after the Effective Date, the Plan Administrator shall administer the Combined Reserve and the WARN Reserve.

In accordance with the Final DIP Order, all funds in the Combined Reserve constitute property of the Estate, and are free and clear of all liens, claims, or encumbrances.  The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date.  If all or any portion of an Other Priority Claim, Priority Tax Claim, Administrative Claim (other than Professional Fee Claims or Allowed DIP Claims), or Allowed Other Secured Claim shall become a Disallowed Claim, then the amounts on deposit in the Combined Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Combined Reserve, shall remain in the Combined Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Combined Reserve is sufficient to ensure that all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Court.

The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors, and the Plan Administrator as set forth in the Plan and Wind-Down Budget; provided that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget.  In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.  Any amounts remaining in the Combined Reserve after payment of all expenses of the Wind-Down Debtors and the Plan Administrator, and all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the General Account and

shall be distributed according to the priority set forth in the Waterfall Recovery without any further action or order of the Court.

The WARN Reserve shall be used to pay WARN Costs, and, to the extent such Claims are not paid in full from the Combined Reserve, Allowed Priority Tax Claims.  After payment in full of all WARN Costs and Allowed Priority Tax Claims, any amounts remaining in the WARN Reserve shall be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery, subject to the Sharing Mechanism, without any further action or order of the Court.

C.    **The General Account and Distribution Reserve Account Adjustments**

Beginning on the two-month anniversary of the Effective Date or at such other times as the Plan Administrator shall determine as appropriate, and thereafter, on each two-month interval thereafter, the Plan Administrator shall determine the amount of Cash required to adequately maintain each of the Distribution Reserve Accounts.  If after making and giving effect to any determination referred to in the immediately preceding sentence, the Plan Administrator determines that any Distribution Reserve Account contains Cash in an amount in excess of the amount then required to adequately maintain such Distribution Reserve Account, then at any such time the Plan Administrator shall transfer such surplus Cash to the General Account to be used or distributed according to the priority set forth in Article IV.B hereof.  Neither the Plan Administrator nor any other party shall transfer Cash to any Distribution Reserve Account.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    **Allowance of Claims**

After the Effective Date, the Plan Administrator or each of the Wind-Down Debtors, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.    **Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Estimation of Claims

Before, on, or after the Effective Date, the Debtors, Plan Administrator or the Wind-Down Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors, Plan Administrator or Wind-Down Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### D.    Adjustment to Claims Without Objection

The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to adjust or remove any Claim that has been paid in full or satisfied, or any Claim that has been amended or superseded; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be adjusted or removed from the Claims Register.

### E.    Time to File Objections to Claims

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

### F.    Disallowance of Claims

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Plan Administrator or the Wind-Down Debtors, as applicable.  All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

48

Pursuant to the terms of the Bar Date Order, if Proofs of Claim are not received by the Notice and Claims Agent on or before the Prepetition Claims Bar Date, the Administrative Claims Bar Date (as required), or the Governmental Bar Date, as applicable, and except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases.  The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims not received by the Notice and Claims Agent before the Prepetition Claims Bar Date, Administrative Claims Bar Date or the Governmental Bar Date, as applicable, and not subject to an exception as set forth above; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.

### G.    Amendments to Claims

On or after the Effective Date, a Claim (other than a Claim arising from the rejection of an Executory Contract or Unexpired Lease or a Claim filed by the Administrative Claims Bar Date) may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Plan Administrator or the Wind-Down Debtors, as applicable, and the Plan Administrator and the Wind-Down Debtors shall be authorized to update the Claims Register to remove any such new or amended Claim Filed; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be adjusted or removed from the Claims Register.

### H.    No Distributions Pending Allowance

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Plan Administrator or Wind-Down Debtors, as applicable.

### I.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Wind-Down Debtors shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

### ARTICLE X.
### SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and

49

treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the Effective Date occurring.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator, or Wind-Down Debtors, as applicable, may compromise and settle any Claims and Causes of Action against other Entities.

**B.      Release of Liens**

**Except as otherwise specifically provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or Wind-Down Debtors; *provided* that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order.  The Prepetition Agents shall execute and deliver all documents reasonably requested by the Wind-Down Debtors or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Wind-Down Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.**

**C.      Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party other than the D&O Parties is deemed released and discharged by and on behalf of the Debtors and their respective Estates, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities, from any and all claims and Causes of Action, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors or their respective Estates, that the Debtors or their respective Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in the Debtors based on or relating to, or in any**

50

manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the ABL Claims, the ABL Obligations, the DIP Facility, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents, and other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, Wind-Down Debtors, or the Debtors' respective Estates asserting any claim or Cause of Action released pursuant to the Debtor release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing Debtor release will release, compromise, impair, or in any way affect any Non-Released Claims, including the D&O Claims.

D.    Release by Holders of Claims or Interests

As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors

and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims and Causes of Action related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Without limiting the foregoing, from and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that is given the opportunity to opt out of the releases contained in this Article X.D and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that opted out of (or otherwise did not participate in) the releases contained in this Article X.D may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. For the avoidance of doubt, the terms of this paragraph shall not apply to the Plan Administrator. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XIII of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing;

and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

E.    Exculpation

No Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any Cause of Action or any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the DIP Facility, the Disclosure Statement, the Plan, the Plan Supplement and the Asset Sale Transactions, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of debt, and/or securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Claims related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release or exculpate any Claim relating to any post-Effective Date obligations of any party or Entity under the Plan, the Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents, and other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing exculpation shall release, compromise, impair, exculpate or in any way affect any Non-Released Claims, including the D&O Claims.

F.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or

**liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.**

**For the avoidance of doubt, and notwithstanding the foregoing, nothing in this section shall release, compromise, impair, exculpate or in any way affect any Non-Released Claims, including the D&O Claims.**

G.    **SEC**

Notwithstanding any language to the contrary in the Disclosure Statement, Plan and/or Plan Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-debtor person or non-debtor entity in any forum.

H.    **Protection Against Discriminatory Treatment**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    **Recoupment**

In no event shall any Holder of a Claim be entitled to recoup against any claim, right, or Cause of Action of the Debtors or the Wind-Down Debtors, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    **Subordination Rights.**

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination

rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

**A.    Conditions Precedent to the Effective Date**

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.B hereof):

1.    The Confirmation Order shall have been duly entered and in full force and effect;

2.    The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Liquidation;

3.    The final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements and exhibits to the Plan, shall have been executed or Filed, as applicable, in form and substance consistent in all respects with the Plan, shall be acceptable to the DIP Agent, FILO Agent, and Creditors' Committee, and shall not have been modified in a manner inconsistent therewith;

4.    The Professional Fee Escrow Account shall have been established and funded with Cash in accordance with Article II.B.2 of the Plan.

5.    All accrued and unpaid Lender Fees shall have been paid.

6.    The Debtors shall have implemented the Liquidation Transactions in a manner consistent in all material respects with the Plan.

**B.    Waiver of Conditions**

The Debtors, with the consent of the DIP Agent, FILO Agent, and Creditors' Committee, may waive any of the conditions to the Effective Date set forth in Article XI.A of the Plan at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C.    Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**D.    Effect of Nonoccurrence of Conditions to the Effective Date**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any

other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.      Modification and Amendments

Subject to the limitations contained in the Plan, the Debtors reserve the right, with the consent of the DIP Agent, FILO Agent, and Creditors' Committee to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, with the consent of the DIP Agent, FILO Agent, and Creditors' Committee, to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### B.      Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.      Revocation or Withdrawal of the Plan

The Debtors reserve the right, with the consent of the DIP Agent, FILO Agent, and Creditors' Committee, to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.　　　　decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.　　　　resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims or other Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.　　　　ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.　　　　adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

6.　　　　enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases,  and other agreements or documents created in connection with the Plan; *provided* that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court;

7.　　　　enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.　　　　grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.　　　　issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.　　　　hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article X of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) anything that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan and the Confirmation Order; or (d) related to section 1141 of the Bankruptcy Code;

11.　　　　enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.    adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

13.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any Non-Released Claims, including the D&O Claims.

15.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Entity's rights arising from or obligations incurred in connection with the Plan;

16.    hear and determine matters concerning local, state, federal, and foreign taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

17.    enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.    enforce all orders previously entered by the Bankruptcy Court; and

19.    hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or the Judicial Code.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XIII, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors shall be

as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

### B.      Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan, which shall be acceptable to the DIP Agent, FILO Agent, and Creditors' Committee. The Debtors or the Wind-Down Debtors, as applicable, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.      Dissolution of Statutory Committees

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

### D.      Payment of Statutory Fees

All fees and applicable interest payable pursuant to section 1930 of the Judicial Code and 31 U.S.C. § 3717, as applicable, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Wind-Down Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### E.      Reservation of Rights

Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Claims or Interests.

### F.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### G.      Service of Documents

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| **Bed Bath & Beyond Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attention: David Kastin | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Derek I. Hunter<br>and<br><br>**Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota, Esq. Warren A. Usatine, Esq., and Felice R. Yudkin, Esq. |
| **Counsel to the Predecessor ABL Agent** | **Counsel to the FILO Lenders** |
| **Davis Polk & Wardwell LLP**<br>450 Lexington Avenue<br>New York, New York 10017<br>Attention: Marshall S. Huebner and Adam L. Shpeen | **Proskauer Rose LLP**<br>11 Times Square<br>New York, New York 10036-8299<br>Attention: David Hillman and Charles A. Dale |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| **Pachulski Stang Ziehl & Jones**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attention:  Robert J. Feinstein and Bradford J. Sandler | Office of the United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard, Suite 2100<br>Newark, NY 07102 |

After the Effective Date, the Wind-Down Debtors shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Wind-Down Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### H.    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### I.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/bbby or the Bankruptcy Court's website at https://www.njb.uscourts.gov.

### J.    Nonseverability of Plan Provisions

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Wind-Down Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

### K.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Wind-Down Debtors will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

### L.    Waiver and Estoppel.

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

BED BATH & BEYOND INC. (on behalf of itself and all other Debtors)

Dated:  July 31, 2023

/s/ *Holly Etlin*

Holly Etlin
Chief Restructuring Officer and Chief Financial
Officer of Bed Bath & Beyond Inc.