**WHITE & CASE**

August 4, 2023

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

**Via email**

Hon. Vincent F. Papalia
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

*Re: In re Bed Bath & Beyond, Inc., et al.*, **Case No. 23-13359**

Dear Judge Papalia:

I am counsel to Michaels Stores, Inc. ("**Michaels**") in connection with the above-referenced chapter 11 cases of Bed Bath & Beyond, Inc. and its debtor affiliates (the "**Debtors**"). I write in response to the letter submitted yesterday by Pinnacle Hills, LLC (the "**Landlord**") seeking to compel production by Michaels of more than 30 leases for Michaels stores across the country (the "**Landlord's Letter**"). The Landlord's request is unduly burdensome, disproportionate to the needs of the case, and will not lead to the discovery of information relevant to either party's claims or defenses. We therefore ask that Your Honor deny the Landlord's request to compel.

By way of background, as part of their chapter 11 cases, the Debtors are negotiating hundreds of lease assignments and terminations, which are projected to generate tens of millions of dollars for their estates. One such lease (the "**BBBY Lease**") is for Store No. 1142 located in the Pinnacle Hills Promenade in Rogers, Arkansas (the "**Promenade**"), which the Debtors seek to assign to Michaels. *See* Dkt. No. 1157. The Landlord has objected to the proposed assignment to Michaels on the theory that it would allegedly violate sections 365(b)(3)(C) and (D) of the Bankruptcy Code by contravening exclusive use provisions set forth in the Landlord's lease with another tenant, Hobby Lobby Stores, Inc. ("**Hobby Lobby**"). *See* Dkt. No. 1323 (the "**Objection**"). No such provision exists in the BBBY Lease, which predated the Hobby Lobby lease by more than a decade.

In response to the Landlord's Objection, Michaels filed a reply brief (Dkt. No. 1353) (the "**Reply Brief**"), accompanied by a declaration by Todd Powers, Michaels' Senior Vice President for Real Estate and Development (Dkt. No. 1354). Mr. Powers' declaration contains only two substantive sentences, each reflecting publicly available information: one sentence noting that more than 30 Michaels stores co-exist in the same shopping center with a Hobby Lobby store, and one sentence noting that several existing stores in the Promenade sell certain of the items that are purportedly prohibited by Hobby Lobby's lease. *See* Dkt. No 1354 ¶ 4.

**WHITE & CASE**

Hon. Vincent F. Papalia, p. 2
August 4, 2023

Following the filing of Michaels' Reply Brief, the Landlord served a subpoena on Michaels containing <u>27</u> requests for the production of documents, not including subparts (the "**Document Requests**") (attached to the Landlord's Letter as <u>Exhibit A</u>).

Michaels believes that the Landlord's Objection can be resolved without any discovery, let alone the sweeping discovery the Landlord has promulgated. As the Court is aware, these issues are routinely adjudicated without the need for any discovery. Indeed, the Debtors have informed Michaels that no other landlord has served discovery on the Debtors or, to their knowledge, any of their other lease assignees. Moreover, even if discovery were appropriate (it is not), Michaels is unaware of any precedent for the staggering amount of discovery that the Landlord seeks in connection with this single proposed lease assignment, nor has the Landlord identified any.

Despite Michaels' view that discovery is unnecessary and inappropriate here, Michaels has been extremely accommodating of the Landlord's requests. Specifically, Michaels has agreed to search for and produce responsive, non-privileged documents, if any, in connection with 21 of the Landlord's 27 Document Requests (Requests Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 21, 22 and 26).[1] However, Michaels did not agree to produce documents in response to Request 4(a), which seeks copies of more than 30 Michaels leases across the country.

Federal Rule of Civil Procedure 26, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026 and 9014, provides that "Parties may obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense and ***proportional*** to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Consistent with this standard, courts in this Circuit have repeatedly held that discovery that seeks information irrelevant to a dispute should be precluded. *See, e.g.*, *Morlok v. City of Phila.*, No. 20-2973, 2022 U.S. App. LEXIS 2382, at *9 (3d Cir. Jan. 26, 2022) ("Because Rule 26 limits the scope of discovery to information relevant to claims and defenses, and the information sought is not relevant to the unjust enrichment claim, the District Court acted within its discretion to limit discovery."); *Osorio v. TCV Cmty. Servs.*, No. 22-1880, 2023 U.S. App. LEXIS 14851, at *5 (3d Cir. June 15, 2023) (affirming preclusion of discovery regarding "information that was irrelevant to the case"); *Robinson v. Horizon Blue Cross Blue Shield of N.J.*, Civil Action No. 12-2981 (ES), 2014 U.S. Dist. LEXIS 98345, at 8* (D.N.J. July 21, 2014) (holding that "the boundaries of discovery are not limitless" and "Rule 26(b) shields the discovery process from irrelevant information"); *Gutierrez v. Johnson & Johnson, Inc.*, Civil Action No.: 01-5302 (WHW), 2002 U.S. Dist. LEXIS 15418, at *10 (D.N.J. Aug. 12, 2002) ("Although the scope of discovery is broad, it is not unlimited. Discovery is not permitted where the discovery sought is irrelevant to the claims at issue . . . or where the requests are unduly burdensome.").

Application of Rule 26's limitation on discovery is necessary here. There are only two issues relevant to this dispute: (i) whether the assignment of the BBBY Lease to Michaels breaches that

---

[1] Michaels does not concede the relevance or admissibility of such documents and reserves all objections and defenses, including the right to serve responses and objections to any specific request. Additionally, Michaels' production is subject to its agreement with the Landlord regarding the modification and limitation of certain requests.

WHITE & CASE

Hon. Vincent F. Papalia, p. 3
August 4, 2023

lease and (ii) whether the assignment to Michaels disrupts the tenant mix and balance at the Promenade. The Landlord's Letter focuses on the second issue: tenant mix and balance.

The *only* document relevant to that issue is the BBBY Lease. The Bankruptcy Code provides that the assignment of the debtor's lease in a shopping center should "not disrupt any tenant mix or balance *in such shopping center*." 11 U.S.C. § 365(b)(3)(D) (emphasis added). Accordingly, courts have held that tenant mix and balance must be interpreted not based on "undefined notions of tenant mix" but rather based solely on the landlord's rights under the applicable lease with the debtor—here, the BBBY Lease. *In re Toys "R" Us, Inc.*, 587 B.R. 304, 310 (Bankr. E.D. Va. 2018) (approving lease assignment where objecting landlord "pointed to no provisions *in the [debtor's] Lease* or any applicable master agreement relating to tenant mix and balance that would prohibit the assignment of the Lease") (emphasis added); *In re Ames Dep't Stores, Inc.*, 121 B.R. 160, 165 (Bankr. S.D.N.Y. 1990) (finding that the text and legislative history of section 365(b)(2)(D) focus on the debtor's lease at issue, and holding that "the Lease itself freely permitting assignment and subletting, it is plain that [the] assignment [] will not violate section 365(b)(3)(D).").[2]

Thus, under the plain language of section 365(b)(3)(D) and applicable case law, the terms of the 30+ other leases that the Landlord seeks to compel Michaels to produce are irrelevant to considerations of tenant mix and balance in the Promenade. Indeed, the Landlord still has not made clear how these leases might be relevant, even in the Landlord's Letter. Moreover, production of these 30+ leases will be extremely burdensome. These leases contain highly confidential, commercially sensitive terms that would require careful review and redaction. The Landlord is well aware of this fact, given that, when Michaels asked for the Hobby Lobby lease, the Landlord at first refused, then produced the Hobby Lobby lease with heavy redactions. The review and redaction process in connection with these 30+ Michaels leases would be arduous. This review would need to be performed by Michaels employees who are familiar with the commercial sensitivities regarding these leases, with significant internal oversight and approval. Requiring Michaels to undertake this exercise as to 30+ leases that are irrelevant to any party's claims or defenses is unduly burdensome and disproportionate to the needs of the case.

The Landlord's claim that Michaels "opened the door to [this] discovery" by referencing publicly available information regarding the co-existence of certain Michaels and Hobby Lobby stores is meritless. To the contrary, the Landlord first put these facts at issue in its Objection, where it argued that "[t]he operation of a second retailer selling primarily arts and crafts supplies, i.e., Michaels, at [the] Promenade, rather than a store that does not conflict with the primary use of any existing tenants, will disrupt the carefully planned tenant mix and balance currently in place at [the] Promenade." Objection ¶ 28. Indeed, the Landlord continues to make this argument, asserting in the Landlord's Letter that "Hobby Lobby is Michaels' chief competitor in the specialty arts and crafts retail industry." *See* Landlord's Letter at 1. To be clear, Michaels is happy to argue solely with regard to the terms of the BBBY Lease, as the case law interpreting section 365 requires. But if the Landlord intends to continue to make arguments regarding tenant

---

[2] For the avoidance of doubt, whether the assignment of the BBBY Lease to Michaels complies with section 365(b)(2)(C) is also a matter of pure contractual and statutory interpretation requiring no fact discovery.

Hon. Vincent F. Papalia, p. 4
August 4, 2023

**WHITE & CASE**

composition at the Promenade and Michaels' purported relationship to Hobby Lobby, Michaels must be able to identify publicly available facts to rebut these points without opening itself to burdensome, disproportionate and irrelevant discovery of highly sensitive third-party leases.

\*    \*    \*

Accordingly, Michaels respectfully asks the Court to deny the Landlord's request to compel Michaels to review, redact and produce 30+ leases not at issue in this dispute.

Sincerely,

*/s/ Samuel P. Hershey*
Samuel P. Hershey
**White & Case LLP**


Cc:    Gregory Pesce (via email)
       Laura Baccash (via email)
       Kenneth Rosen (via email)
       Philip Gross (via email)
       Ross Fiedler (via email)
       David Bass (via email)
       Robert Lehane (via email)
       William Gyves (via email)

AMERICAS 124629065