| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br>Neelay Das<br>Gabriel Rostom<br><br>In Re:<br>BED BATH & BEYOND INC., et al.,<br>Debtors.[1] | FILED<br>JEANNE A. NAUGHTON, CLERK<br>AUG 0 8 2023<br>U.S. BANKRUPTCY COURT<br>NEWARK, N.J.<br>BY_____DEPUTY<br><br>Chapter 11<br>Case No. 23-13359 (VFP)<br>(Jointly Administered) |

# BED BATH AND BEYOND COMMON STOCK EQUITY INTEREST HOLDERS' OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING AND CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF, AND (II) (A) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF

The undersigned holders of equity interests in Bed Bath And Beyond's Common Stock which has traded on Nasdaq exchange under the symbol "BBBY" and now trades over the counter under the symbol "BBBYQ", hereby object (this "Objection") to the Debtors' Motion For Entry Of An Order attached as <u>Exhibit B</u> in *Amended Disclosure Statement Relating To The Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* [Docket

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

No. 1713] (the "Motion")[2], specifically objecting to the order for *(I) (A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan*, and in support of that Objection state as follows:

## PRELIMINARY STATEMENT

1.     This objection is being submitted pursuant to Local Rule D.N.J. LBR 9013-4(e). Pursuant to section 541 of the Bankruptcy Code the estate created on the petition date is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held. Pursuant to the above description Common Stock or Preferred Stock of the debtors, wherever located and by whomever held, is part of the estate. Pursuant to section 542 of the Bankruptcy Code an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of the Bankruptcy Code shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. A short seller that has borrowed shares of Common Stock or Preferred Stock of Bed Bath and Beyond would fit the above description of the entity described in section 542 of the Bankruptcy Code. In Docket No. 1728, we showed circumstantial evidence of Jake Freeman and affiliates likely borrowing and short selling Bed Bath and Beyond Common Stock shares and who were, by Jake's own admission[3], also holding *2014 Senior Unsecured Notes due in 2024* when he exited his long position in Bed Bath and Beyond Common Stock. Pursuant to section IV.I.6 of the Disclosure Statement in the Motion, claims from any creditors are disallowed from whom property is recoverable under section 542 of the Bankruptcy Code and so, claims from any creditors who have borrowed shares of Bed Bath and Beyond Common Stock or Preferred Stock are also disallowed. However, Solicitation and Voting Procedures specified in article IX of the Disclosure Statement in the Motion do not clearly specify that claims from any creditors who have borrowed

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.
[3] Jake Freeman's last Reddit post on r/bbby sub-reddit: https://www.reddit.com/r/BBBY/comments/wq4lu1/an_ode_to_bbby/

2

shares of Bed Bath And Beyond Common Stock or Preferred Stock are disallowed until/unless they return those shares, even though section IV.I.6 of the Disclosure Statement in the Motion implies that. Moreover, section IV.D *Cancellation of Existing Securities, Notes, Instruments, Certificates, and Other Documents* of the Disclosure Statement in the Motion states the following: *On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan, allowing the 2014 Senior Unsecured Notes Trustee to exercise its charging lien in accordance with the 2014 Notes Indenture, or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Liquidation Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed canceled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the Wind-Down Debtors, as applicable, any non-Debtor affiliates shall be deemed satisfied in full, canceled, released, discharged, and of no force or effect; provided that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order.* The above provision of cancellation of existing securities specified in section IV.D of the Disclosure Statement in the Motion is a contradiction of the requirements specified in section IV.I.6 of the Disclosure Statement in the Motion, since it allows the 2014 Senior Unsecured Notes Trustee to exercise its charging lien in accordance with the 2014 Notes Indenture, without ensuring that any Common Stock or Preferred Stock

3

Equity Securities borrowed by the Notes holders and recoverable under section 542 of the Bankruptcy Code, are turned over before those securities are canceled. The above provision also does not account for any Common Stock or Preferred Stock Equity Securities, recoverable under section 542 of the Bankruptcy Code and borrowed by other creditors who have submitted claims, before those securities are canceled, thereby leaving the possibility open for the requirements specified in section IV.I.6 of the Disclosure Statement in the Motion not being met, if and when those claims are satisfied. As a result, the Disclosure Statement in the Motion does not meet the requirement, for conditional approval, of providing adequate information to each holder of a claim or interest that is solicited, pursuant to sections 1125(a)(1) and 1125(f)(3) of the Bankruptcy Code. It is a well known fact that as of 2023-07-14 there was a very large open short interest of 79,329,896 shares in Bed Bath And Beyond Common Stock that trades over the counter under the symbol "BBBYQ", as published by FINRA[4] based on reports it collects from member firms, which shows the very likely possibility of at least those many shares of Bed Bath And Beyond Common Stock being borrowed and not returned on the Effective Date or the Distribution Date, before those securities are canceled pursuant to the above described procedures in section IV.D of the Disclosure Statement in the Motion and section IV.D of the *Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* [Docket No. 1712](the "Plan")[5], thereby violating the terms of section 542 of the Bankruptcy Code. This also shows that the Plan discriminates unfairly against holders of Interests in BBB who have been classified under fully impaired Class 9, because it denies them any opportunity of recouping returns on their investment resulting from the appreciation in the value of Bed Bath And Beyond Common Stock that would inevitably result from the above several tens of millions, if not hundreds of millions of shares sold short being bought back and returned pursuant to section 542 of the Bankruptcy Code, before those securities are canceled, while at the same time potentially allowing distributions to creditors with claims even though they may have borrowed above shares, which are property of the estate pursuant to section 541 of the Bankruptcy code and may have not returned them, in violation of

---

[4] Data available at the following website using the symbol filter BBBYQ:
https://www.finra.org/finra-data/browse-catalog/equity-short-interest/data
[5] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

sections IV.I.6 of the Disclosure Statement in the Motion and IX.F of the Plan. The above facts make the Plan unconfirmable because of requirements of sections 1129(a)(3) and 1129(b)(1) of the Bankruptcy Code not being met.

2. The undersigned holders of equity interests in Bed Bath And Beyond's Common Stock raise the above issues now so that Debtors may resolve the situation by changing sections IX.A, IV.D in the Disclosure Statement in the Motion, as in the attached Exhibit 1 and by changing section IV.D in the Plan, as in the attached Exhibit A. The change highlighted versions of the above exhibits compared to the Motion and the Plan are attached as Exhibit 2 and Exhibit C, respectively. These exhibits are being attached in lieu of an Alternate Proposed Order pursuant to Local Rule D.N.J. LBR 9013-4(e). We respectfully request that the *Order (I) (A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan* issued in Docket No. 1716 be vacated, absent these changes being made or changes to the equivalent effect being made in Debtors' Amended Disclosure Statement [Docket No. 1713] and Amended Joint Chapter 11 Plan [Docket No. 1712].

## BACKGROUND

3. On April 23, 2023 (the "Petition Date") the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

4. The Debtors remain in possession of their assets and continue to manage their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. While looking for help with legal representation to e-file the first version of our objection letter to the Conditional Approval of the Disclosure Statement we sent it to the counsel for the US Trustee and the letter was not signed because we were still hoping to get legal representation before we filed. That letter was shared by the counsel for the US Trustee with the court and was briefly discussed in the court hearing held on the Conditional Approval of The Disclosure Statement held on August 1, 2023, but was not ultimately considered since the letter was not signed. After being contacted via email by the case administrator, requesting for a signed

version of the objection letter, we sent in an updated signed version of the letter, which was docketed in Docket No. 1728. However, since the letter did not meet all the requirements pursuant to Local Rule D.N.J. LBR 9013-4 it seems that the objections in the letter have not been considered. So, we are filing this updated objection letter pursuant to Local Rule D.N.J. LBR 9013-4(e). We are still self-represented pro se, as we have not yet found a lawyer who doesn't have a conflict, although we are waiting for feedback from one or more law firms who may be interested in representing us. So, we respectfully request the court to please consider our objection letter considering the objection deadline pursuant to Local Rule D.N.J. LBR 9013-4(e) and the need for urgency in addressing the above valid issues that we bring up in this objection letter, in order to ensure that the Disclosure Statement is conditionally approvable and the Chapter 11 Plan is confirmable without any undue delays.

6.      The turn over of borrowed shares of Bed Bath And Beyond Common Stock, pursuant to section 542 of the Bankruptcy Code, that is being requested as per the proposed changes in the Debtors' Amended Disclosure Statement [Docket No. 1713] and Amended Joint Chapter 11 Plan [Docket No. 1712], as part of the Alternate Proposed Order will likely lead to significant appreciation in the Price Per Share (PPS) of the common stock. Per the last SEC Form 10K filing[6] of the Debtors, out of 900,000,000 authorized shares of common stock, as of May 9, 2023  739,056,836 shares were outstanding. That leaves 160,943,164 shares remaining to be issued. So, after a turn over of borrowed shares, for example, if the PPS appreciates to $1 the issuance of the remaining 160,943,164 shares can generate proceeds of up to $160,943,164 and if the PPS appreciates to $5 the issuance of the remaining 160,943,164 shares can generate proceeds of up to $804,715,820. Those proceeds can be used to pay off creditors' claims and the equity sold in the shares offering can potentially be combined along with a debt to equity conversion, if needed, for a change in control transaction pursuant to section 382(l)(5) of the Internal Revenue Code that results in preservation of the significant Deferred Tax Assets of $1.6 billion in U.S. Federal Net Operating Losses (NOLs) that the Debtors possess per the

---

[6] https://www.sec.gov/ix?doc=/Archives/edgar/data/0000886158/000088615823000059/bbby-20230225.htm

Disclosure Statement in the Motion. This provides more options to the Debtors to achieve an expedient exit from Chapter 11 bankruptcy.

## ARGUMENT

### Judicial Precedent of Use of Section 542 of The Bankruptcy Code To Turn Over Property Of The Estate To The Debtor

7.   In United States v. Whiting Pools, Inc., 462 U.S. 198 (1983)[7] promptly after the Internal Revenue Service (IRS) seized respondent swimming pool firm's tangible personal property to satisfy a tax lien, respondent filed a petition for reorganization under the Act. The Bankruptcy Court, pursuant to § 543(b)(1), ordered the IRS to turn the property over to respondent on the condition that respondent provide the IRS with specified protection for its interests. The District Court reversed, holding that a turnover order against the IRS was not authorized by either § 542(a) or § 543(b)(1). The Court of Appeals in turn reversed the District Court, holding that a turnover order could issue against the IRS under § 542(a).

8.   In CITY OF CHICAGO, ILLINOIS v. FULTON ET AL, 592 U. S. ____ (2021)[8] the following are some excerpts from the opinion delivered by U.S. Supreme Court Justice Samuel Alito. *In the case before us, the city of Chicago (City) impounded each respondent's vehicle for failure to pay fines for motor vehicle infractions. Each respondent filed a Chapter 13 bankruptcy petition and requested that the City return his or her vehicle. The City refused, and in each case a bankruptcy court held that the City's refusal violated the automatic stay. The Court of Appeals affirmed all of the judgments in a consolidated opinion. In re Fulton, 926F. 3d 916 (CA7 2019). The court concluded that "by retaining possession of the debtors' vehicles after they declared bankruptcy," the City had acted "to exercise control over" respondents' property in violation of §362(a)(3). Id., at 924–925. We granted certiorari to resolve a split in the Courts of Appeals over whether an entity that retains possession of the property of a bankruptcy estate violates §362(a)(3). We now vacate the judgment below.* As part of the opinion Justice Alito goes on to state the following: *The better account of the two provisions is that §362(a)(3) prohibits collection efforts outside the bankruptcy proceeding that would change the status quo, <u>while §542(a) works within the bankruptcy process to draw far-flung estate property back into the hands of the debtor or trustee.</u>*

### Judicial Precedent of Use of Section 542 of The Bankruptcy Code To Consider Equity Interests As Property Of The Estate

9.   In Matter of Ostendorf, CASE NO. BK10-40072-TLS, (Bankr. D. Neb. Mar. 23, 2011) shares of Cabela's Inc. stock owned by Debtor were considered property of the Estate pursuant to section 542 of the Bankruptcy Court.

---

[7] https://supreme.justia.com/cases/federal/us/462/198/
[8] https://www.supremecourt.gov/opinions/20pdf/19-357_6k47.pdf

7

Date: 08/08/2023                                         /s/ Neelay Das
                                                         Neelay Das


Date: 08/08/2023                                         /s/ Gabriel Rostom
                                                         Gabriel Rostom

Date: 08/08/2023                                         /s/ Neelay Das
                                                         Neelay Das


Date: 08/08/2023                                         /s/ Gabriel Rostom
                                                         Gabriel Rostom