**GREENBERG TRAURIG, LLP**

Paul H. Schafhauser, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3233
Email:  paul.schafhauser@gtlaw.com

*Counsel to IKEA Property, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., et al., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**IKEA PROPERTY, INC.'S OBJECTION TO THE DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) REJECTION
OF CERTAIN UNEXPIRED LEASES AND (B) ABANDONMENT
OF ANY PERSONAL PROPERTY, EFFECTIVE AS OF THE
REJECTION DATE AND (II) GRANTING RELATED RELIEF**

TO:   THE HONORABLE VINCENT F. PAPALIA,
      UNITED STATES BANKRUPTCY JUDGE:

Ikea Property, Inc. ("Ikea") files this objection (this "Objection") to the *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of any Personal Property, Effective as of the Rejection Date and (II) Granting*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

*Related Relief* [Dkt. No. 1613] (the "Motion") filed by the above-captioned debtors (collectively, the "Debtors").  In support of this Objection, Ikea respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. Debtor Bed Bath & Beyond Inc. ("BBB") is the tenant of nonresidential property located at 300 Ikea Drive, near Route 4 and Route 17, Paramus, New Jersey 07652 (the "Ikea Premises"), pursuant to a Lease Agreement with Ikea, as landlord, dated June 10, 2004 (as amended and supplemented, the "Lease Agreement").

2. On May 17, 2023, this Court entered an agreed order [Dkt. No. 373] (the "Lease Rejection Order") establishing the date on which the Lease Agreement will be deemed rejected. Specifically, Paragraph 2 of the Lease Rejection Order states that any proposed rejection date of the Lease Agreement will not be effective until Christmas Tree Shops, Inc. ("CTS"), as sublessee to BBB, vacates the Ikea Premises. (*See* Lease Rejection Order, ¶ 2).

3. BBB and Ikea agreed to the inclusion of this language in the order as part of their resolution to Ikea's prior objection [Dkt. No. 286] (the "First Objection") to the Debtors' first motion seeking entry of an order, among other things, authorizing rejection of the Lease Agreement effective as of April 30, 2023 [Dkt. No. 79] (the "First Lease Rejection Motion"). The Lease Rejection Order became final on May 31, 2023.

4. In contradiction to the Lease Rejection Order and the agreement between Ikea and BBB, the Debtors filed the Motion seeking entry of an order approving the rejection of the Lease Agreement effective as of July 31, 2023, despite the fact that CTS remains in the Ikea Premises and is expected to remain there until at least August 14, 2023, if not beyond then, based on communications received from CTS.

---

[2] Capitalized terms used in this Objection but not otherwise defined herein shall have the same meanings as ascribed to them in the Motion.

2

5. Ikea objects to the Motion because, among other things: (i) the Court already entered an order – i.e., the Lease Rejection Order – establishing the date on which the Lease Agreement will be deemed rejected and there are no "extraordinary circumstances" justifying modification of that order; (ii) even if the Lease Rejection Order could be modified, the proposed effective date of July 31, 2023 for rejection of the Lease Agreement constitutes an impermissible request for retroactive relief to the detriment of Ikea; and (iii) even an order allowing rejection of the Lease Agreement as of the return date of the Motion would be unwarranted and unjust because BBB has not delivered possession of the Ikea Premises to Ikea – because CTS remains in possession of a substantial portion of the Ikea Premises.

6. Until CTS vacates the Ikea Premises, BBB remains responsible for paying postpetition rent, including rent for August 2023 (which remains due and owing), all other sums due and owing under the Lease Agreement (including damages to the Ikea Premises for which BBB is responsible), and all other obligations under the Lease Agreement as required under the Lease Rejection Order.

7. For these reasons and those stated below, the Motion should be denied.

## BACKGROUND

### A. General Background

8. On April 23, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On May 5, 2023, the U.S. Trustee appointed the official committee of unsecured creditors [Dkt. No. 218]. No trustee or examiner has been appointed in these chapter 11 cases.

**B.    Ikea Premises, the Lease Agreement and the Sublease Agreement**

10.    BBB is the tenant of the Ikea Premises pursuant to the Lease Agreement. In turn, BBB sublets approximately 60,000 square feet of the Ikea Premises under a certain Sublease Agreement with CTS, as subtenant (the "Sublease Agreement").

11.    Under the Lease Agreement, BBB is required to pay monthly rent, plus additional costs, charges and expenses, in the amount of approximately $220,000 throughout 2023 and to continue to pay rent, plus additional costs, charges and expenses, during the remainder of the Term, which expires on October 3, 2041.

12.    On April 17, 2023, Ikea notified BBB through a demand notice that if BBB failed to pay the sum of $218,807.86, consisting of unpaid rent, additional rent, common area maintenance charges, and taxes, an event of default would exist under the Lease Agreement. To date, BBB has not paid these outstanding amounts and has also failed to pay rent due for August 2023.

**C.    The CTS Bankruptcy and Lease Rejection Order**

13.    On April 24, 2023, the Debtors filed the First Lease Rejection Motion seeking entry of an order authorizing BBB to reject the Lease Agreement (*see* Motion, Schedule 1, line 169) effective as of the later of (a) the date on which BBB surrenders possession of the Ikea Premises or (b) April 30, 2023.

14.    On May 5, 2023, CTS and its affiliates filed chapter 11 petitions for relief under chapter 11 of the Bankruptcy Code. *In re Christmas Tree Shops, LLC*, Case No. 23-10576-TMH (Bankr. D. Del.) (Horan, J.) (the "CTS Bankruptcy").

15.    On May 9, 2023, Ikea filed its First Objection to the First Lease Rejection Motion because, among other things, BBB had not delivered, and could not deliver, possession of the Ikea

Premises to Ikea on April 30, 2023 due to CTS' continued occupancy of a substantial portion of the Ikea Premises.

16. Shortly after filing, Ikea and BBB conferred and resolved the First Objection by agreeing to the following terms:

   a. Ikea's "stub rent" for the time period from the Petition Date through April 30, 2023 pursuant to section 503(b)(1) of the Bankruptcy Code would be deemed an allowed administrative expense claim;

   b. On May 12, 2023, the Debtors would pay to Ikea 50% of the rent and other charges due for May 2023 pursuant to the Lease Agreement;

   c. The remaining 50% of rent and other charges due pursuant to the Lease Agreement for May 2023 would be deemed an allowed administrative expense claim; and

   d. The Debtors would pay rent and other charges due pursuant to the Lease Agreement to Ikea for June 2023 and for all subsequent months pursuant to section 365(d)(3) of the Bankruptcy Code provided that the CTS had not vacated the premises.

17. On May 17, 2023, the Court entered the Lease Rejection Order, which included agreed upon language between Ikea and BBB as described in Paragraph 16.d. Specifically, the Lease Rejection Order provides that rejection of the Lease Agreement is effective as of the date that CTS vacates the Ikea Premises. (Lease Rejection Order, ¶ 2).

18. As of the date hereof, CTS continues to occupy the Ikea Premises. CTS has informed Ikea that it may vacate the Ikea Premises on or about August 14, 2023. Based on previous motions filed by CTS in the CTS Bankruptcy, CTS, in that event, would seek to have the court deem the Sublease Agreement rejected effective as of August 14, 2023. *See* CTS Bankruptcy [Dkt. No. 471, ¶ 18] (seeking approval to reject leases "as of the later of (a) the date upon which the Debtors surrender the premises to the landlord via delivery of the keys, key codes, or security codes, as applicable, to the respective landlords of the Closing Stores or (ii) July 31, 2023 . . . .")

19. The Debtors have filed the Motion seeking entry of an order authorizing BBB to reject the Lease Agreement (*see* Motion, Schedule 1, line 23-24) effective as of July 31, 2023

notwithstanding Paragraph 2 of the Lease Rejection Order. In conjunction with the Motion, BBB mailed to Ikea a letter asserting that it was surrendering possession of the Ikea Premises as of July 31, 2023, but BBB did not deliver possession of the Ikea Premises to Ikea.

### D. **Outstanding Postpetition Obligations Under the Lease Agreement**

20.     To date, the Debtors have not paid to Ikea the rent obligations required to be paid under the Lease Agreement for August 2023.

21.     In addition, under Section 9.1 of the Lease Agreement, BBB is required to maintain and repair the Ikea Premises at its sole cost and expense. In early August 2023, Ikea became aware of certain damage to the Ikea Premises, including shingles and sheathing damage, which appears to have occurred after the Petition Date. Ikea has obtained a third-party estimate that the cost of addressing the shingles and sheathing damage will total approximately $4,000.00.

22.     If and when Ikea recovers possession of the Ikea Premises, Ikea will conduct an inspection to assess the condition of the Ikea Premises and to determine whether BBB is liable for any additional damages or costs. Ikea reserves its right to amend and supplement its claim(s) against Ikea.

### OBJECTION

23.     Ikea objects to the Motion because (i) the Debtors have failed to establish "extraordinary circumstances" sufficient to modify the Lease Rejection Order; (ii) even if the Lease Rejection Oder could be modified, the proposed rejection date of the Lease Agreement is impermissible unless and until (a) CTS vacates (or is evicted from) the Ikea Premises and (b) BBB, upon CTS's surrender of possession of that portion of the Ikea Premises that it occupies, duly surrenders possession of the entire Ikea Premises to Ikea. Unless and until that occurs, Ikea is entitled to recover, among other things, postpetition rent under Section 365(d)(3) of the Bankruptcy Code, including postpetition rent for August 2023.

### A. The Debtors Failed to Raise Appropriate Relief in the Motion and Failed to Establish "Extraordinary Circumstances" for Modifying the Lease Rejection Order.

24. The Debtors impermissibly attempt to modify the Lease Rejection Order through the Motion without expressly stating their intention.[3]

25. The Lease Rejection Order provides that the Lease Agreement will be deemed rejected once CTS vacates the Ikea Premises. (Lease Rejection Order, ¶ 2). In the Motion, however, the Debtors seek to set July 31, 2023 as the effective rejection date for the Lease Agreement, despite the fact that CTS remains in possession of a substantial portion of the Ikea Premises as the date hereof and has indicated that it will not vacate the Ikea Premises until August 14, 2023 at the very earliest. The Motion must be denied because it fails to establish sufficient justification for modifying the Lease Rejection Order.

26. The Lease Rejection Order became final on May 31, 2023 after no party filed a notice of appeal to the order during the fourteen day appeal period set forth under Rule 8002(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[4]

27. A party may seek to alter or amend a final order under Rules 59 and/or 60 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Bankruptcy Rules 9023 and 9024, respectively.

28. Federal Rule 59(e) permits a party to "file a 'motion to alter or amend a judgment'" and such a motion must be filed no later than twenty-eight days "from entry of the judgment with

---

[3] (*See* Motion, Exhibit A, ¶ 3) ("**Notwithstanding any provision of the [Lease Rejection Order]**, the Leases and Subleases described in paragraph 2 are rejected pursuant to the terms of this Order.").

[4] *See In re CORFU 77, CORP*, No. 20-11460 (MEW), 2021 WL 408986, at *3 (Bankr. S.D.N.Y. Feb. 3, 2021) (holding that an agreed order authorizing the rejection of unexpired leases was "final" once the appeal period expired). Additionally, the Debtors previously consented to the Court entering a "final order" on the First Lease Rejection Motion. (First Lease Rejection Motion, ¶ 2) ("The Debtors confirm their consent to the Court entering a final order in connection with this Motion . . . .").

no possibility of extension." *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020) (quoting Fed. R. Civ. P. 60(b) and 59(e)). Federal Rule 60(b) provides alternative grounds for relief from a final order and is not subject to a strict temporal limitation like those under Federal Rule 59(e).

29. The Debtors failed to file the Motion by June 14, 2023 (i.e., the twenty-eight-day deadline established under Federal Rule 59(e)), so the Debtors may only seek to alter or modify the Lease Rejection Order through Federal Rule 60(b).

30. The Motion, however, does ***not*** seek relief under Federal Rule 60(b). Because Federal Rule 60(b) relief is the sole avenue available to modify the Lease Rejection Order, and the Debtors have not requested relief under Federal Rule 60(b), the Motion must be denied.

31. Even if the Debtors did seek relief under Rule 60(b), the Motion fails to provide any "extraordinary circumstances" that would warrant modification of the Lease Rejection Order. Federal Rule 60(b) allows a party to seek relief from a judgment, order, or proceeding for six limited reasons, and motions relying on Rule 60(b) "are viewed as '***extraordinary relief which should be granted only where extraordinary justifying circumstances are present***.'" *Kiburz v. Sec'y, U.S. Dep't of the Navy*, 446 Fed. Appx. 434, 436 (3d Cir. 2011) (emphasis added) (quoting in part *Bohus v. Beloff*, 950 F.2d 919, 929 (3d Cir. 1991); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) ("We have explained that a showing of extraordinary circumstances involves a showing that without relief from the judgment, ***an 'extreme' and 'unexpected' hardship will result***.") (emphasis added) (citation omitted).

32. Although not stated in the Motion, Federal Rule 60(b)(6) is the only plausible provision on which the Debtors may rely to amend the Lease Rejection Order. Federal Rule 60(b)(6) authorizes relief from a final order for "any other reason that justifies relief." A party relying on Rule 60(b)(6) must show "'***extraordinary circumstances***' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (emphasis added, citations

8

omitted); *see also Morris v. Horn*, 187 F.3d 333, 341 (3d Cir. 1999) (providing that relief under Rule 60(b)(6) "'is available only in cases evidencing extraordinary circumstances.'") (quoting *Martinez-McBean v. Government of Virgin Islands*, 562 F.2d 908, 911 (3d Cir. 1977)); *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993) ("Relief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, *an extreme and unexpected hardship* would occur.") (emphasis added) (citations omitted). The Debtors have failed to present any such "extraordinary circumstances" – or any "extreme and unexpected hardship" – through their Motion.

33. The Debtors appear to argue that the retroactive lease rejection relief requested in Motion (which in turn would modify the Lease Rejection Order) would be appropriate because the Debtors' stores all closed by July 31, 2023 and the Debtors concluded marketing their non-residential real property leases for sale. (Motion, ¶¶ 6-12). In the Federal Rule 60(b) context, however, these events have not led to "extraordinary circumstances" that would warrant modifying the Lease Rejection Order. Rather, the current circumstances (i.e., all stores closing prior to CTS vacating the Ikea Premises) is the direct result of the Debtors' strategy and implementation thereof in these chapter 11 cases. The Debtors cannot now argue that they are experiencing "extreme and unexpected hardship" as a result of their own calculated actions. Therefore, the Debtors fail to establish "extraordinary circumstances" under Federal Rule 60(b)(6) to warrant modification of the Lease Rejection Order.

**B.** **Even if The Lease Rejection Order Could be Modified, the Proposed Lease Rejection Date of July 31, 2023 is Impermissible.**

34. Bankruptcy courts are instructed to be reluctant to grant retroactive relief. *See In re Federal-Mogul Global Inc.*, 222 Fed. Appx. 196, 201 (3d Cir. 2007) (*citing In re Elder-Beerman Stores Corp.*, 201 B.R. 759, 764 (Bankr. S.D. Ohio 1996)). Indeed, a majority of courts rule that

9

a debtor "effectively rejects a lease when the bankruptcy court enters an order authorizing rejection" – not before then. *See In re New Valley Corp.*, No. Civ.A. 98-982, 2000 WL 1251858, at *15 (D.N.J. Aug. 31, 2000); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (Bankr. D. Colo. 2003) (providing that a request for *nunc pro tunc* relief on a motion to reject an unexpired real property lease "is the exception to the general rule that rejection is effective upon entry of the order").

35. When *nunc pro tunc* relief is requested, a bankruptcy court must first weigh the equities before it authorizes such rejection. *See New Valley Corp.*, 2000 WL 1251858, at *15; *see also In re Thinking Machs. Corp.,* 67 F.3d 1021, 1028 (1st Cir. 1995); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010). When doing so, the burden is on the moving party – i.e., the Debtors in this case – to demonstrate that such relief is appropriate. *See In re TW, Inc.*, No. Civ. 03-533, 2004 WL 115521, at *2 (D. Del. Jan. 14, 2004) ("An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only after a balancing of the equities in a particular case. ***It is the burden of the moving party to show that relief, of this character, is appropriate.***") (emphasis added).

36. In instances where a debtor fails to properly surrender leased premises before the proposed rejection date, the equities strongly favor denying retroactive relief. *See In re TW, Inc.*, 2004 WL 115521, at *2 (affirming the bankruptcy court's denial of retroactive relief, and noting in doing so as follows: "In the present case, the bankruptcy court placed emphasis on the fact that possession of the Premises was not properly surrendered and that fault, in this regard, indisputably rested with the debtor. ***Unlike circumstances where possession has been surrendered prior to the petition date, a landlord without actual possession may face a greater risk and greater uncertainty as to whether the lease will ultimately be rejected***.") (emphasis added).

37. If a subtenant remains in possession of leased premises, retroactive relief is inappropriate; the appropriate date for rejection is when the debtor actually returns possession of

the property to the debtor, which includes removing the subtenants. *See In re Amicus Wind Down Corp.*, Bankr. Case No. 11-13167, 2012 WL 604143, at *2-3 (Bankr. D. Del. Feb. 24, 2012) (finding that, absent state court eviction proceedings, the debtors could not unilaterally surrender the subtenant's possessory rights in the leased premises); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (declining to find that the debtors had surrendered the premises where subtenants remained in the premises and instead concluding that "[t]he more appropriate date is the day the Debtors surrendered the premises to the Landlords, and the Landlords were able to enter into agreements with the current tenants").

38. Here, the balance of the equities heavily favors Ikea, and the Debtors should not be entitled to reject the Lease Agreement as of July 31, 2023 – or, for that matter, at any time until Ikea has recovered possession of the Ikea Premises. As a threshold matter, the Debtors previously agreed to the Lease Rejection Order, which provides for relief markedly different from that which the Debtors now ask this Court to grant. In any event, the Debtors have not yet surrendered possession of the Ikea Premises to Ikea, and CTS continues to possess a substantial portion of the Ikea Premises under the Sublease Agreement, too. *See Amicus Wind Down*, 2012 WL 604143, at *2-3; *Chi-Chi's, Inc.*, 305 B.R. at 399. Therefore, the Debtors have failed to duly surrender possession of the Ikea Premises to Ikea.

39. If the Debtors were permitted to reject the Lease Agreement as of July 31, 2023 – or at any time while CTS remains in possession of the Ikea Premises – the result would be wholly inequitable. For its part, Ikea lacks privity of contract with CTS and thus is not as well-situated as BBB to seek relief with respect to the Sublease Agreement. *See Marino v. Mendez,* 243, N.J. Super. 342, 347 (Law Div. 1989) ("***As between the owner of a building in which an under-tenant or subtenant resides, and the under-tenant, there is no privity of contract***. There is no agreement between those parties.") (emphasis added) (citing *Berkeley Dev. Co. v. Great Atl. & Pac. Tea Co.*,

11

214 N.J. Super. 227. 235 (Law Div. 1986)); *see also Wehrle v. Landsman,* 23 N.J. Super. 40, 46 (Law Div. 1952) ("A subletting creates a relationship of landlord and tenant between the tenant (here Champion) and the subtenant (here Fit-Rite and assignees), but there is no privity of contract between the landlord (here Wehrle) and the subtenant (Fit-Rite and assignees of Fit-Rite including defendant)").

40. Because BBB, not Ikea, is in privity of contract with CTS, BBB is best situated to address and resolve the issues relating to CTS' continued occupancy of the Ikea Premises pursuant to the Sublease Agreement. *See In re Amicus Wind Down Corp.*, 2012 WL 604143 at *2 ("The Debtors, not Park Tysen, are in privity of contract with the Subtenant, and the Debtors are best legally situated to resolve this situation in the New York courts.").

41. CTS has retained its possessory rights under the Sublease Agreement with BBB. BBB, in turn, has benefited from the Sublease Agreement for years. "***The Debtors enjoyed the right, and the benefit, of the Sublease, and now them must also bear any burdens that result from the Sublease, including the present situation***." *In re Amicus Wind Down Corp.*, 2012 WL 604143 at *2 (emphasis added). Any rejection date should therefore give the parties time to sort through the issues relating to the Sublease Agreement and, in all events, should be effective no sooner than the date on which BBB can properly surrender possession of the Ikea Premises, including the entire portion of the Ikea Premises now occupied by CTS.

42. For all of these reasons, the proposed rejection date of July 31, 2023 is impermissible, and the rejection of the Lease Agreement cannot be effective unless and until (i) CTS vacates the Ikea Premises and (ii) BBB, upon CTS's surrender of possession of that portion of the Ikea Premises that it occupies, duly surrenders possession of the entire Ikea Premises to Ikea.

C. **Ikea is Entitled to Postpetition Rent and Reimbursement of Damages and Costs Associated with Postpetition Repairs to Ikea Premises.**

43. Ikea is entitled to postpetition rent for the continued occupancy of the Ikea Premises by CTS and BBB for August 2023 and for all subsequent months during which BBB fails to surrender possession of the Ikea Premises to Ikea.

44. Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform all obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential property, until such lease is assumed or rejected, notwithstanding Section 503(b)(1)." 11 U.S.C. 365(d)(3). "The clear and express intent of § 365(d)(3) is to require [Debtors] to perform the lease in accordance with its terms." *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001). By failing to pay rent for August 2023 (and for all subsequent months during which BBB fails to surrender possession of the Ikea Premises to Ikea), the sum of postpetition amounts BBB owes to Ikea under the Lease Agreement equals no less than $219,260.87 (plus rent and other sums accruing after August 2023).

45. In addition, Debtors must pay all costs associated with repairing the postpetition damage to the Ikea Premises pursuant to section 365(d)(3) of the Bankruptcy Code, including but not limited to the sum of $4,000.00 estimated to be incurred by Ikea to repair the shingles and sheathing damage. *See In re National Refractories & Minerals Corp.*, 297 B.R. 614, 619 (Bankr. N.D. Cal. 2003).

D. **Ikea Should be Permitted to Remove from Title to the Ikea Premises the Memoranda Regarding the Lease Agreement and Sublease Agreement, and BBB Should be Required to Remove, Satisfy and/or Discharge Any and All other Liens or Encumbrances With Respect to the Ikea Premises and Cooperate with Ikea Toward that End.**

46. In the event the Court grants the Motion and enters an order effecting rejection of the Lease Agreement, regardless of whether the effective date is July 31, 2023 or some later date,

Ikea requests that any such order include language that would permit, upon rejection of the Lease Agreement, Ikea to record in Bergen County, New Jersey any documents (and take any other actions) necessary to remove from title to the Ikea Premises all memoranda relating to the Lease Agreement and Sublease Agreement. Toward that end, Ikea proposes that any such order include the following language:

> Upon entry of this Order, Ikea is permitted to record in Bergen County, New Jersey any documents, and take another other action, necessary to remove from title to the Ikea Premises all memoranda relating to the Lease Agreement and Sublease Agreement. In addition, the Debtors shall be required to promptly remove, satisfy and/or discharge any and all other liens or encumbrances with respect to the Ikea Premises and cooperate with Ikea to effectuate the removal and discharge of all such liens or encumbrances.

47. The added language will provide Ikea with sufficient authority, prevent unnecessary legal fees and costs disputing with county officials whether these chapter 11 cases and CTS' bankruptcy cases prevent such actions, and provide Ikea with possession of the Ikea Premises free of the encumbrances of the Lease Agreement and Sublease Agreement.

## **RESERVATION OF RIGHTS**

48. Ikea files this Objection to fully preserve and reserve all of its rights, claims and remedies pertaining to the Lease Agreement, at law and equity, including, without limitation any and all claims that Ikea may have in connection with the Lease Agreement and the Debtors' rejection of the same (including, without limitation, claims for unpaid rent, additional rent, costs, fees and charges under the Lease Agreement), together with all rights and remedies that Ikea may have or assert with respect to the Ikea Premises or any occupants thereof.

**WHEREFORE**, Ikea requests that the Court enter an order consistent with this Objection and grant such other and further relief as is just and equitable.

Dated: August 10, 2023　　　　　　　　　　**GREENBERG TRAURIG, LLP**

By: */s/ Paul H. Schafhauser*
　　Paul H. Schafhauser, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3233
Email: paul.schafhauser@gtlaw.com

*Counsel to IKEA Property, Inc.*

### CERTIFICATE OF SERVICE

I certify that on August 10, 2023, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey on those parties registered to receive electronic notices, and (ii) electronic mail on counsel to the Debtors.

By: */s/ Paul H. Schafhauser*
　　Paul H. Schafhauser, Esq.