UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|                          |   |                           |
|--------------------------|---|---------------------------|
|                          | . | Case No. 23-13359-VFP     |
| IN RE:                   | . | Ch. 11                    |
|                          | . |                           |
| BED BATH & BEYOND, INC., | . | M.L.K. Federal Building   |
| et al.,                  | . | 50 Walnut Street, 3rd Floor |
|                          | . | Newark, NJ 07102          |
|           Debtors.       | . |                           |
|                          | . | July 28, 2023             |
| . . . . . . . . . . . .  | . | 10:14 a.m.                |

TRANSCRIPT OF SALE HEARING WITH RESPECT TO PHASE I and II
LEASES AND MOTIONS TO FILE UNREDACTED LEASES UNDER SEAL
BEFORE HONORABLE VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  ROSS J. FIEDLER, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022

                          Cole Schotz, P.C.
                          By:  DAVID M. BASS, ESQ.
                          Court Plaza North, 25 Main Street
                          Hackensack, NJ 07601

For Various               Kelley Drye & Warren, LLP
Landlords:                By:  RAVI VOHRA, ESQ.
                          3 World Trade Center
                          175 Greenwich Street
                          New York, NY 10007


Audio Operator:           Mariela Primo

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

2

```
APPEARANCES (Cont'd):

For Northway Mall          Porzio Bromberg & Newman, P.C.
Properties Sub LLC         By:  JOHN S. MAIRO, ESQ.
and other Landlords:       100 Southgate Parkway
                           P.O. Box 1997
                           Morristown, NJ 07962


For Burlington Stores:     Womble Bond Dickinson
                           By:  WOJCIECH F. JUNG, ESQ.
                           950 Third Avenue, Suite 2400
                           New York, NY 10022


For Dream On Me:           Klestadt Winters Jureller Southard &
                             Stevens, LLP
                           By:  SEAN C. SOUTHARD, ESQ.
                           200 West 41st Street, 17th Floor
                           New York, NY 10036-7203


For Rockwall Crossing,     McManimon Scotland Baumann
SC, LP:                    By:  SARI B. PLACONA, ESQ.
                           75 Livingston Avenue,
                           Roseland, NJ 07068


For Enid Two, LLC:         Wilentz Goldman & Spitzer
                           By:  DAVID H. STEIN, ESQ.
                           90 Woodbridge Center Drive, Suite 900
                           Woodbridge, NJ 07095-0958


For Michaels Stores,       Lowenstein Sandler, LLP
Inc.:                      By:  PHILIP J. GROSS, ESQ.
                           One Lowenstein Drive
                           Roseland, New Jersey 07068


                           White & Case, LLP
                           By:  SAMUEL P. HERSHEY, ESQ.
                           1221 Avenue of the Americas
                           New York, New York 10020

TELEPHONIC APPEARANCES:

For Various                Kelley Drye & Warren, LLP
Landlords:                 By:  JENNIFER RAVIELE, ESQ.
                           333 West Wacker Drive, 26th Floor
                           Chicago, IL 60606
```

TELEPHONIC APPEARANCES (Cont'd):

```
For Rockwall Crossing      Ferguson Braswell Fraser Kubasta, P.C.
SC, LP:                    By:  RACHAEL L. SMILEY, ESQ.
                           2500 Dallas Parkway, Suite 600
                           Plano, TX 75093


For Northway Mall          Ulmer & Berne, LLP
Properties Sub LLC         By:  MICHAEL TUCKER, ESQ.
and other Landlords:       1660 West 2nd Street, Suite 1100
                           Cleveland, OH 44113-1406
```

- - -

1          THE COURT:  It is Friday, July 28th, 2023.  This is

2  the United States Bankruptcy Court for the District of New

3  Jersey.  We are here on the Bed, Bath & Beyond, Inc. matter,

4  23-13359.

5          There is a number of matters on the calendar, but I

6  understand there's been a lot of developments.  And rather than

7  me trying to even list them or begin to summarize them, why

8  don't we just get your appearance and proceed.

9          MR. FIEDLER:  Of course, thank you, Your Honor.  Ross

10  Fiedler for the record, Kirkland & Ellis, on behalf of the

11  debtors.  I'm joined here today by my co-counsel David Bass of

12  Cole Schotz.

13          THE COURT:  Good morning.

14          MR. FIEDLER:  Your Honor, last night we filed an

15  agenda at Docket Number 1583.  As you'll note, all that is

16  going forward today are various lease sales and consensual

17  lease termination agreements that the debtors reached following

18  the conclusion of their public lease auction process.

19          THE COURT:  Right.

20          MR. FIEDLER:  All other matters have been resolved.

21  There's one matter that's been adjourned to Monday which we'll

22  address then.  But as Your Honor will recall, we were here ten

23  days ago seeking approval of various lease sales coming out of

24  the Phase I lease auction that took place at the end of June.

25  Many of those deals were approved by Your Honor with a number

1    of them deferred to a later date given certain filed objections

2    which I'll get to in a moment.  But the day after that hearing

3    on July 19th, the debtors held the Phase II lease auction which

4    was the final phase of our lease auction process.

5         Like the first auction, we had a court reporter

6    present and several hours of robust participation by landlords

7    and third parties alike.  Following that auction, the debtors,

8    in consultation with the consultation parties, filed a notice

9    at Docket 1428 selecting and designating successful bidders and

10   backup bidders with respect to the Phase II leases.

11        There have been minor changes to that notice.  All

12   parties have been made aware of that.  But I'm pleased to

13   report that the Phase II lease auction was successful.  We have

14   a number of accretive lease sales and consensual lease

15   termination agreements that we're putting in front of Your

16   Honor today.  And so, Your Honor, with the conclusion of the

17   Phase II lease auction, as well as the going out of business

18   sales which are set to conclude the beginning of next week,

19   this is largely, you know, the end of our lease optimization

20   efforts in these Chapter 11 cases.

21        And so, to give Your Honor just some perspective on

22   that, we started this case with nearly 1,000 locations, a few

23   hundred of those were rejected on day one given our immediate

24   commencement of a wind-down and the need to avoid additional

25   rent costs.  But as the dust settled, you know, on the

1  remaining leases, our public lease auction process, as well as

2  other lease optimization initiatives have resulted in just less

3  than 200 deals generating nearly $70 million in cash proceeds.

4  That is a major source of recovery for our stakeholders and

5  it's mission critical that we get these sales successfully

6  closed without additional dark costs for the estate.

7          And so, Your Honor, we're here seeking approval of

8  those Phase II lease auction sales.  A few of them are deferred

9  to Monday.  But we're also seeking approval of a number of the

10 Phase I's that were deferred to today.

11         You know, as Your Honor will recall, there were a

12 number of objections to the Phase I's.  Many of those

13 objections were purely cure costs and adequate assurance based

14 on the assignee's financial ability to perform.  Those

15 objections have been resolved.  But there were a slew of other

16 objections that dealt with tenant mix, exclusive use provisions

17 which were grounded in, you know, the legal argument relating

18 to 365(b) of the Bankruptcy Code.

19         With those, I'm happy to report that we've resolved

20 substantially all of those objections thanks to the tireless

21 efforts of the landlords and assignees.  There are, I believe,

22 six outstanding objections that will be heard at some time in

23 August absent a resolution on those matters.  Given Your

24 Honor's comments at last hearing, we were able to secure

25 waivers of August rent or other arrangements such that the

1  debtors are not incurring those August rent obligations.

2         For Your Honor's benefit, last night we filed a

3  notice at Docket Number 1582 listing all of the matters that

4  are going forward today.  There are 57 locations listed in that

5  notice, all of which are proceeding today on a consensual

6  basis.  And, you know, when I say consensual, we're resolved on

7  all of these matters, but we are putting the finishing touches

8  on orders that we'll submit to Your Honor for approval, as well

9  as some agreed upon cure costs that are still being reconciled.

10         You will note in that notice there are about 41

11  locations that are being assigned to Burlington.  Those are

12  part of a general lease package of assignments to Burlington

13  which will result in about $12 million to the estate subject to

14  any adjustments that need to be made.  Those are extremely

15  important and represent a substantial portion of the proceeds

16  we're looking to gather as a result of this process.  And so

17  it's imperative that we close on those as soon as we can and

18  we're prepared to go forward on those 41 on a consensual basis

19  today.

20         So, as I said --

21         THE COURT:  The six where there are remaining

22  objections, I'm pretty sure at least one of them relates to

23  Burlington, right?  Is it more than one?

24         MR. FIEDLER:  That's right.  There's two that relate

25  to Burlington that need to go into August absent a resolution.

1  And then there is one that is also the subject of another

2  motion to confirm the absence of the stay that's going forward

3  on Monday.  So, 41 --

4            THE COURT:  And then the other three?

5            MR. FIEDLER:  What's that?

6            THE COURT:  What's the other three?  There was, you

7  said there were six objections.

8            MR. FIEDLER:  The other three, I should have them in

9  my notes.  They relate to, you know, other assignees.  I think

10  one is a Michaels lease which is the Hobby Lobby issue.  It's

11  in Arkansas.  And then there's two others that I can get Your

12  Honor's confirmation on if I just consult --

13            THE COURT:  I'm just trying to get a handle on what

14  is open and --

15            MR. FIEDLER:  Yeah, and our intention is to submit

16  another notice that lets you know what's going forward on

17  Monday and then what we have to defer until August and we're

18  still working out scheduling with the other parties on how

19  we're going to handle the August ones.

20            THE COURT:  Okay.

21            MR. FIEDLER:  So, you know, that's all that remains.

22  I'm happy to answer any questions Your Honor has.  If there are

23  no questions and no one else would like to be heard, we are

24  prepared to go forward with entry of the order and believe, you

25  know, all of these lease sales are a valid exercise of the

1  debtors' business judgment and will result in substantial

2  proceeds for the estate.

3       THE COURT:  Okay.  So, the notice of matters

4  scheduled for hearing on July 28th was at Docket 1582.  It was

5  filed yesterday evening at looks like 9:40 about, and so I

6  don't know whether everyone has had an opportunity to review

7  that in full, but I certainly accept the representations, but I

8  -- that were made by the debtor here today, but I would also

9  welcome and invite anyone that has any comments on any of those

10 41 in particular that are in that notice.  Hopefully, by now

11 everyone's had the ability to look at that notice and I'll hear

12 from anyone else that wants to be heard now.  Okay.

13       MS. RAVIELE:  Good morning, Your Honor, may I be

14 heard?

15       THE COURT:  Okay.  Jennifer Raviele?

16       MS. RAVIELE:  Yes, Your Honor, thank you.  Good

17 morning, Your Honor, Jennifer Raviele of Kelley Drye & Warren

18 on behalf of several landlords.  First, we just want to

19 acknowledge we understand that coordinating this lease sale

20 process has been an extremely complicated task for the debtors

21 and we really appreciate their effort.  We know how hard

22 they've been working to get all the assignees and the landlords

23 on the same page.  We've been working tirelessly with them to

24 resolve as many of our clients' lease assignments as possible

25 and reconciling the cure amount.

1        In that regard, I just wanted to note and confirm the

2   status of certain of our clients' leases.  We did see the

3   notice that was filed on the docket.  We have, like I said, a

4   number of leases that we could separate into two groups, some

5   that are not going forward today for various reasons and others

6   that are.  I'll start with the leases that should not be going

7   forward today.  They were not listed on the agenda filed at

8   Docket 1582 and we just want to confirm that they will

9   definitively not be assigned at today's hearing.

10        So, I'll list them.  There are six.  It's Store

11  Number 301, Rookwood Commons in Cincinnati, Ohio, proposed

12  assignment to Scandinavian Designs, Store Number 1142, Pinnacle

13  Hills in Rogers, Arkansas, proposed assignment to Michaels,

14  Store Number 3060, 160 Granite Street, Braintree, Mass.,

15  proposed assignment to Dream On Me, Store Number 3076 in

16  Torrance, California, proposed assignment to A&M Properties,

17  Store Number 3108, Serramonte Center, Daly City, Florida, and

18  Store Number 3131, Pavilion at King's Grant, Concord, North

19  Carolina, proposed assignment to Barnes & Noble.

20        THE COURT:  So, Mr. Fiedler, those are the same, you

21  have those same?  Ms. Raviele wants to confirm that those are

22  not going forward today.

23        MR. FIEDLER:  Confirmed and we've been in contact

24  with the Kelley Drye Firm and appreciate their efforts, yeah.

25        THE COURT:  All right.

1          MR. FIEDLER:  Those are not going forward today.

2          THE COURT:  It was confirmed that those six are not

3 going forward today.  But we do have --

4          MS. RAVIELE:  Great.

5          THE COURT:  -- motions to seal I know that relate to

6 some of those, but we'll get to those after.  And now there's

7 someone in the courtroom that is standing up to be heard, Mr.

8 Mairo, and I just would have him heard now and then we'll get

9 to people on the Zoom.  Okay.

10          MR. MAIRO:  Thank you, Your Honor.  For the record,

11 John Mairo of Porzio Bromberg & Newman on behalf of Northway

12 Mall Properties Sub LLC, U.S. 41 and 285 Company, LLC and

13 KMO-361.  Those are three landlords.  And I believe on Zoom is

14 my co-counsel Michael Tucker from Ulmer & Berne.  I just want

15 to, I guess, reiterate that we appreciate the efforts that the

16 debtors' representatives have been going through to try to

17 resolve these different issues and I want to address three of

18 the leases that were on the schedule of resolved matters and

19 just advise Your Honor, so we're all on the same page where

20 it's at.

21          First, was the landlord Northway Mall Properties Sub

22 LLC.  That's in Colonie, New York.  The store number is 3036.

23 The filed objections are 1012 and 1433.  On the document that

24 we've been looking at, that 1582, Your Honor, it's on Page 6 of

25 7.  It's Store 3036.  The cure amount has been agreed to of the

1    44,915.59.  There is a letter agreement that we're working on

2    with the assignee Burlington and we're hopeful that we'll be

3    able to come to terms on that letter agreement.  And it's also

4    subject to an agreeable order.

5              Then the next one, Acres, this is in Atlanta,

6    Georgia.  This is Store 1094.  We filed an objection which is

7    Docket Number 1310.  On that 1582 pleading that was filed last

8    night, it's on Page 4 of 7.  And that, similarly, we agreed to

9    the cure amount of 9,296 and it is being assigned to

10   Burlington, but it also is subject to us agreeing to final

11   terms of an order.

12             THE COURT:  Final terms of?

13             MR. MAIRO:  Of an order.

14             THE COURT:  Okay.

15             MR. MAIRO:  Okay.  And then KMO is the last landlord

16   that's on the list.  This is in a location in Paramus, New

17   Jersey.  It's Store Number 3003.  And this is on that 1582

18   document, Your Honor, it's on Page 6 of 7 and, again it's --

19             THE COURT:  Very helpful.

20             MR. MAIRO:  Yes, sure.  It's Store Number 3003.  And

21   the assignee on that one is Dream On Me.  We have an agreement

22   in principle, including the cure amount, but that, as well, is

23   subject to us agreeing to a final order embodying that

24   agreement.

25             THE COURT:  Okay.  So, that seems to be confirm all,

13

1  as well.

2          MR. FIEDLER:  That's right, Your Honor.

3          THE COURT:  Okay.

4          MR. MAIRO:  And there was one other matter, Your

5  Honor, which was put on the calendar from the July 18th to be

6  heard today, but it's not on the list.  I believe it's one of

7  the matters that, I guess, is a contested matter with respect

8  to the Burlington assignment.  My client in that matter is DPEG

9  Fountains, LP.  That was on Page 5 of 6 of the Document 1444

10 that scheduled everything from then to here, but it wasn't on

11 the document, the 1528.

12         And my understanding based upon Mr. Fiedler's

13 presentation is that's going to be heard at some point in

14 August.  And, you know, there was also reference to agreements

15 on August rent.  That was not something that we were a part of.

16 So I don't want that to be misunderstood.  And if it's going to

17 be heard in August, we certainly are willing to talk about when

18 that's going to be because we're going to maybe need to have a

19 witness available.  And I just want a little lead time for

20 that, Your Honor, and want not to be surprised that there's

21 going to be a hearing when we're not aware of.

22         THE COURT:  Yes.  Well, we definitely need to talk

23 about scheduling so everyone is aware.  I'm actually speaking

24 at the ABI conference in Pennsylvania on August 8th and 9th and

25 I have to be there on the 7th which is the Monday, Tuesday and

1  Wednesday of that week.  So just so we're aware of that and we

2  can talk about scheduling a little later.  And I'm happy to let

3  the parties if there's a lot of moving parts try to work that

4  out or we can try to work it out here, whatever makes the most

5  sense.  Okay?

6            MR. MAIRO:  Okay.

7            THE COURT:  Thank you, Mr. Mairo.

8            MR. MAIRO:  And just want confirmation, it is going

9  in August?

10            MR. FIEDLER:  Yeah.  It's going in August and

11  we're -- we will work with Mr. Mairo to figure out a time that

12  works best for him, as well as the other landlords.

13            THE COURT:  Right.

14            MR. FIEDLER:  I think we're looking probably at third

15  or fourth week of August, but we will firm that up and come

16  back to Your Honor.

17            THE COURT:  All right.  That makes some sense.  And

18  then on that, and I'm sure you've all thought of this because

19  you pretty much think of everything on these cases, but is it

20  that -- are they the same or similar issues that they should be

21  going together, they should all be traveling together or are

22  they different issues that, you know, require different

23  witnesses and facts and legal resolutions that would require

24  maybe some to go on one day and some to go on another day or

25  anything like that?

1          MR. FIEDLER:  I mean, Your Honor, I mentioned this at

2    the last hearing.  We view this as a purely legal issue and if

3    there are any facts in dispute, it's a very limited subset of

4    facts that relate to the mix of tenants at a specific shopping

5    center.  And so I think the debtors believe all this can go

6    forward on the same day because they all relate to the same

7    legal issue, but we'll take Your Honor's guidance on how you

8    want to break it up.

9          THE COURT:  Yes.  And I think I said this the other

10   time, too.  So, to the extent that they could be stipulated,

11   then you should stipulate to issues that are factual issues

12   that are not really in dispute, so --

13         MR. MAIRO:  Yes.  And, again, for the record, John

14   Mairo of Porzio Bromberg & Newman.  We heard Your Honor with

15   the idea of stipulating and that was something we did offer to

16   do at least on the factors relating to what is a shopping

17   center which I think is pretty clear.  But we weren't able to

18   get an agreement on that.  So, we submitted a certification

19   detailing the factors of a shopping center.  But, hopefully, in

20   advance of the hearing, some of those matters could be

21   stipulated to.

22         THE COURT:  Okay.  That sounds good to me.  All

23   right.  So, now we have two more, I'm sorry to the people on

24   Zoom, but now we have two more people in the courtroom that I

25   tend to give preference to because they're here in the

1  courtroom and I want to get them heard.

2       MR. STEIN:  I appreciate it, Your Honor.  David

3  Stein, Wilentz Goldman & Spitzer, appearing for the landlord

4  Enid Two which represents the property at 711 Route 28 in

5  Bridgewater.  That was one of the, and I believe it was

6  originally listed on the cure notice as Lease Number 14 for

7  that location under Phase II.  That's one of the leases that is

8  presumably going to be assigned to Dream On Me.

9       We are in the process of working on documentation

10 regarding a lease modification, agreeing on cure and some other

11 business terms and that's being prepared as we speak, and will

12 be hopefully circulated today.  We would anticipate and we

13 know, we believe that that's going to be carried to Monday and

14 then we'll just submit a consensual order to Your Honor.  So, I

15 just want to indicate that we don't anticipate that it's going

16 forward today and I'm just putting it on the record.  Thank

17 you, Your Honor.

18      THE COURT:  I think that's all already confirmed.

19      MR. STEIN:  I just wanted to be clear, that's all.

20      THE COURT:  Yes.

21      MR. STEIN:  Thank you.

22      THE COURT:  Okay.  Mr. Jung?

23      MR. JUNG:  Good morning, Your Honor, Wojciech Jung,

24 Womble Bond Dickinson, appearing for Burlington Stores.  Your

25 Honor, I just wanted to confirm for the record Burlington is

1   acquiring 44 locations.  For today's purposes, resolutions have

2   been reached with respect to 41 locations.  So, we have three

3   of them remaining.  I understand that one of them would be

4   scheduled for a hearing on Monday and the remaining two

5   disputed ones will be scheduled for end of August.  So the

6   three open locations by store numbers are 126, 777 and 3108.

7   Thank you.

8           THE COURT:  And so the one on Monday is going forward

9   as to what issues or --

10          MR. JUNG:  We also believe those are legal issues

11   that counsel addressed.

12          THE COURT:  So why is that going forward on Monday as

13   opposed to the other -- along with the other matters?

14          MR. JUNG:  I will have counsel for the debtors

15   address that, Your Honor.

16          THE COURT:  Okay.

17          MR. FIEDLER:  The landlord filed the motion to

18   confirm the absence of the stay because the landlord believes

19   the lease was terminated pre-petition.  So, it's a separate

20   legal issue.  But it is in the Burlington package and we plan

21   to address it on Monday.

22          THE COURT:  Okay.

23          MR. JUNG:  Thank you.

24          MR. SOUTHARD:  Good morning, Your Honor, Sean

25   Southard of Klestadt Winters Jureller Southard & Stevens.  We

1  represent Dream On Me Industries, as well as the entity that

2  was formed to take assignment of what are 11 leases, the

3  subject of part of today's discussion.  Recognizing that a good

4  deal of spreadsheets were exchanged over the last many days and

5  the hard work that went into that, in looking at the filing

6  that was made late last night by debtors' counsel, I just

7  wanted to point out one discrepancy that I believe exists on

8  Docket Number 1582 that we've been referencing which I believe

9  is agreed with both the landlord in question and debtors'

10 counsel, but I wanted to point that out for the record.

11         And that's Store Number 3001 in Rockville, Maryland.

12 There was a cure number of approximately 71,000 that is

13 referenced in that filing, but in fact the cure has been agreed

14 to be a zero dollar cure.

15         THE COURT:  Zero dollars, okay.  That's good.  What

16 page is that one on?

17         MR. SOUTHARD:  That is on Page 6 of 7, Your Honor.

18 And it's Number 3001, about midway down the page.

19         THE COURT:  Okay.  Zero.

20         MR. SOUTHARD:  Thank you, Your Honor.

21         THE COURT:  Oh, thank you.  Appreciate it.  All

22 right.  Mr. Mairo.

23         MR. MAIRO:  Your Honor, for the record, John Mairo on

24 behalf of Northway, the U.S. 41 285 Company, LLC and KMO-361

25 landlords.  When I was at the podium earlier, I mentioned that

1  we're in agreement with the cure amounts that are noted.  And I

2  think everyone's on the same page with this, but the

3  understanding is we're going to resolve whatever issues we have

4  with the order by Monday and then in August the cure amounts

5  don't include August.  So, the assignment would occur and then

6  the assignee's responsible for August rent.  Is that --

7              THE COURT:  Is that confirmed?

8              MR. MAIRO:  -- the understanding of the debtors?

9              MR. FIEDLER:  Confirmed.

10             THE COURT:  Confirmed again.  We're confirming a

11  number of things.

12             MR. MAIRO:  All right.  Thank you, Your Honor.

13             THE COURT:  I'm glad to hear it.  So then who else

14  wishes to be heard?  Anyone else wish to be heard?

15             MS. RAVIELE:  Your Honor, Jennifer Raviele of Kelley

16  Drye again.  May I be heard?

17             THE COURT:  Of course.

18             MS. RAVIELE:  Thank you, Your Honor.  There was a

19  second group of leases that I would like to address on the

20  record and those are the leases that are going forward and

21  being assigned today.  They fall into three categories, the

22  leases being assigned to Burlington, Michaels and Scandinavian

23  Designs.

24             I'll start with the leases for Burlington and there's

25  two points that I wanted to note about that.  We've agreed with

1  debtors' counsel that there will be a separate order for the

2  Kelley Drye client leases that are being assigned to Burlington

3  on a consensual basis.  And we've been working out language

4  with them.  There's also language we've requested to be added

5  to the non-Kelley Drye Burlington lease assignment order.

6  Those are issues that are working their way out in the

7  background.  I believe we'll reach a final resolution on those.

8  I just wanted to note that for the Court.

9        And for clarity, our clients' leases that will be

10  included in that order I'm going to read off the list.  It's

11  Store Number 149, 454, 591, 1268, 1309 and then 1405.  For

12  1405, that's Holly Springs, North Carolina.  I wanted to note

13  that on the agenda the cure amount is listed as 47,523.11, but

14  I believe this one should be listed as subject to further

15  reconciliation.  I'm confident that we can work on that point

16  with debtors' counsel off record, but I did just want to raise

17  it here that there's a couple things in there that may need to

18  be tweaked that are on the agenda.

19        The second group is a lease that's being assigned to

20  Michaels.  This is Store Number 385.  Again, on Docket 1582,

21  the cure amount is listed as $5,000, but we believe it should

22  say that it's subject to further reconciliation because the

23  parties are still working that out.  Also, we filed an

24  objection.  The parties are working to resolve that.  And we

25  hope that we'll get to an agreed form of order, but we're not

1  there yet.  And so we would like to reserve our rights to bring

2  this back before the Court just in case the parties cannot

3  agree on that form of order.

4        The last lease is the lease that is being assigned to

5  Scandinavian Designs.  This is Store Number 3029 in Brandon,

6  Florida.  Again, here, this is just a form of order.  We

7  haven't seen it.  We're confident we can get there, but we

8  reserve our right to the extent that the parties can't come to

9  an agreement.

10       So, that concludes the list of leases that I wanted

11  to cover on the record today.  Thank you, Your Honor.

12       THE COURT:  All right.  Is there any comments from

13  that or discrepancies with the debtor?

14       MR. FIEDLER:  No, all that sounds fine, Your Honor.

15       THE COURT:  Well, that's --

16       MR. FIEDLER:  A number of these are subject to, you

17  know, final order, so we're just working through those

18  comments.

19       THE COURT:  Right.  There's no way I can personally

20  keep up with the store numbers and associate that all to what

21  is on the docket as we're talking here, so I got to -- I have

22  to rely on all of you to confirm those items.  And so far, so

23  good, they've all been confirmed.

24       MS. RAVIELE:  Thank you, Your Honor.

25       THE COURT:  And just for the record, I'm not a -- I'm

1 not one of those people that if every right is not expressly

2 preserved at some particular time before the actual hearing or

3 dispositive date, I'm very, very reluctant generally to just

4 say people waived something by not specifically reserving

5 rights or confirming things.  So, you know, I just to the

6 extent that gives anyone any comfort, I wanted you to know

7 that.  And that said, I have no problem with people confirming

8 things on the record because I was a lawyer once too and you

9 don't want to be put in that position being surprised later on.

10 So but hopefully just maybe alleviate a bit of concern.  Okay.

11 Anyone else wish to be heard?

12         MS. PLACONA:  Your Honor, Sari Placona, McManimon

13 Scotland & Baumann.  May I be heard, please?

14         THE COURT:  Yes, of course.

15         MS. PLACONA:  I'm local counsel to a landlord in

16 Texas Rockwall Crossing, SC, LP.  My colleague, Rachael Smiley,

17 who's been admitted pro hac, is on and would just like to

18 update the Court on our discussion with debtors' counsel.

19         THE COURT:  Okay.  Ms. Smiley?

20         MS. SMILEY:  Good morning, Your Honor.

21         THE COURT:  Good morning.

22         MS. SMILEY:  Thank you, very much.  Rachael Smiley,

23 Ferguson Braswell Fraser Kubasta, on behalf of Rockwall

24 Crossing, SC, LP which is the landlord for the property in

25 Rockwall, Texas.  Landlord had an objection on file at Docket

1   Number 1289 that was grounded in 365(b)(3)(C) with respect to

2   an existing exclusivity provision that was granted to T.J.Maxx

3   in our lease.

4        We've been in discussions with the debtor and we

5   believe we're 95 percent of the way there.  Burlington, which

6   would be the assignee, has represented to us that they intend

7   to comply with that exclusivity provision which we accept.

8   However, we have not heard any independent confirmation from

9   T.J.Maxx on that.

10        So, our concern is simply that we would like to have

11  absent an independent confirmation from T.J.Maxx that they are

12  okay with what Burlington is proposing as part of the

13  compliance with that exclusivity provision, is some the

14  language in the order simply acknowledging that the Court would

15  continue to have jurisdiction to resolve a dispute should

16  T.J.Maxx decide that Burlington is not complying with the

17  exclusivity provision.

18        Basically, we just don't want T.J.Maxx to sue the

19  landlord in State Court.  We would want this Court to resolve

20  that dispute.  The debtor has not accepted our offer of

21  proposed language, but we think that would -- if it were in

22  there, that would completely resolve the issue.  So we think

23  we're basically there, but we're not fully resolved just yet.

24        THE COURT:  All right.  Let me see who's getting up.

25  So go ahead, sir.

1          MR. FIEDLER:  Your Honor, Ross Fiedler for the

2    record, of Kirland & Ellis, on behalf of the debtors.  That is

3    an issue between T.J.Maxx and the landlord.  To my

4    understanding, T.J.Maxx has not objected to the relief being

5    requested today.  Burlington has confirmed they will abide

6    within the parameters of that exclusive.  So to the extent

7    T.J.Maxx has an issue with it, they can bring that, you know,

8    in a separate forum against the landlord or however they'd like

9    to proceed, but we don't think that is appropriate for today.

10         THE COURT:  For today.  So, Ms. Smiley, does that

11   address your concern in some part or all?

12         MS. SMILEY:  Well, Your Honor, again, what landlord

13   other than the debtor which it's the debtors' burden to show

14   adequate assurance of future performance, and absent any kind

15   of an acknowledgment by T.J.Maxx that what Burlington is

16   proposing is acceptable to them, we just simply want to be able

17   to bring that and the debtor would not have to be -- the debtor

18   would not be a party to this issue.  But it would be a

19   resolution of adequate assurance of future performance by the

20   assignee.

21         So, it would be an issue with respect to Burlington

22   and T.J.Maxx and the landlord.  But we would just simply like

23   the Court to, this Court to be able to decide that and not a

24   State Court in Texas for efficiency sake.  I mean, this is an

25   issue that was created in the Bankruptcy Court and we just

1 would like to confirm that the Bankruptcy Court, if that were

2 to happen, would resolve that.

3           THE COURT:  Okay.  I think that's what counsel for

4 the debtor just said and that it's okay with them that that

5 issue be resolved in the State Court as it's between, you know,

6 your client and T.J. Maxx, is that right?

7           MR. FIEDLER:  That's right, Your Honor.

8           THE COURT:  So, that's why I was asking if you're

9 wholly there or in substantial part there.  This was all

10 confirmed and I'm not going to say I need to decide an issue

11 between two non-debtor parties if that's what your concern is,

12 Ms. Smiley.

13           MS. SMILEY:  I mean, if the Court believes it should

14 not decide that issue, then, obviously, we accept what the

15 Court (indiscernible).

16           THE COURT:  Yes.  Two non-debtor parties in Texas,

17 I'm not sure that that's appropriate for this Court to resolve,

18 but, you know, it doesn't sound like it's an issue.  So, I

19 don't want to create an issue where there is none.

20           UNIDENTIFIED ATTORNEY:  Your Honor, if I may --

21           MS. SMILEY:  Okay.

22           UNIDENTIFIED ATTORNEY:  -- on behalf of the

23 Committee.  Just to clarify, I think you're talking past each

24 other.  I believe Ms. Smiley wants you to hear this and the

25 debtors want the State Court --

1          THE COURT:  Oh, she wants me to hear.

2          UNIDENTIFIED ATTORNEY:  -- to hear it.  Yes.

3          THE COURT:  Oh.

4          MS. SMILEY:  Yeah, Your Honor, to be clear, and I

5   don't believe there's going to be a dispute in the future.

6   What the landlord wants to do is eliminate the risk that

7   T.J.Maxx could make this an issue in the future if they believe

8   Burlington is not complying.  If T.J.Maxx were to have an issue

9   in the future, we would just like Your Honor to decide whether

10  or not adequate assurance of future performance is continuing

11  to be honored if a dispute arises rather than T.J.Maxx's

12  recourse being in front of the State Court in Texas or wherever

13  (indiscernible).

14          MR. FIEDLER:  Your Honor, if I may.

15          THE COURT:  Okay.  I understand now.  I'm sorry.  I

16  misunderstood.

17          MR. FIEDLER:  Yeah, so adequate assurance is a

18  finding we believe that can be made today.  As Your Honor had

19  mentioned, if there's a dispute as between non-debtor parties,

20  T.J.Maxx has its contractual rights to pursue that in another

21  forum.  But I don't think it's appropriate for the Court to

22  decide to hear some future dispute as between non-debtor

23  parties within the Bankruptcy Court.

24          THE COURT:  Okay.  But so just because I apparently

25  misunderstood before, I did misunderstand before, I guess I'm

1 just wondering what it is that Ms. Smiley is asking me for

2 today because if you -- I'm not sure what it is that I can do

3 today on this issue because it's not really squarely before me

4 as far as I know.  But maybe I'm not up to speed on that.

5        MS. SMILEY:  Your Honor, what the landlord is asking

6 for is simply clarification in the order that this Court would

7 retain jurisdiction to resolve an issue that arose with respect

8 to 365(b)(3)(C).

9        THE COURT:  Well, I'll resolve the issues that are

10 appropriately before me and within my jurisdiction, but I'm not

11 going to say right now that without T.J.Maxx here that I can,

12 and giving them an opportunity to be heard on it, letting them,

13 you know, assert whatever they believe is appropriate in the

14 context, I just, I'm not going to do that as a kind of advisory

15 or declaratory ruling on the spot here today as a general

16 matter and then more particularly without that other party

17 being here.  I just don't think that's fair.  So I'm not going

18 to, I'm just not going to do that.

19        MS. SMILEY:  That's under --

20        THE COURT:  I'm not ruling on it.  I'm not saying

21 that -- I'm just saying I'm not deciding it today if that's

22 what you were asking me, I don't think that's appropriate.

23        MR. FIEDLER:  Thank you, Your Honor.

24        THE COURT:  Okay, Ms. Smiley?  Do you have anything

25 else?

1          MS. SMILEY:  No, understood, Your Honor.  There is

2 language in the order that, obviously, the Court retains

3 jurisdiction with respect to any issues arising under the

4 order.  So, you know, we would like to have something more

5 specific just as comfort, but we understand, obviously, the

6 Court's position on that.

7          THE COURT:  I think, this is kind of an offshoot as

8 to what I was saying before is that nobody's waiving any rights

9 other than what is specifically set forth in orders and is

10 being resolved today.  I'm not at all going to decide that

11 issue one way or another today, okay?

12          MS. SMILEY:  Thank you, Your Honor.

13          THE COURT:  Thank you.  Thank you, Ms. Smiley.

14 Anyone else wish to be heard?  Mr. Vohra.

15          MR. VOHRA:  Good morning, Your Honor, Ravi Vohra from

16 Kelley Drye & Warren LLP on behalf of certain movants.  They

17 are Items Number 2 and 3 on the agenda filed last night, the

18 motion to seal for Daly City and for HGREIT.

19          THE COURT:  Okay.  Good morning.  Well, I was, before

20 we got to the motions to seal, I was going to just address the

21 assignments and approvals so that we can move past that and

22 then -- because I do have a couple questions on the motions to

23 seal, but I think we need to just finish off the lease

24 assignments and terminations, reconciliations, et cetera, okay.

25 So you'll --

1          MR. VOHRA:  Fair, Your Honor.

2          THE COURT:  So, you'll be there, you'll get your

3    chance in a moment.  All right.  Anyone else wish to be heard

4    on the lease assignments?

5                    (No audible response)

6          THE COURT:  All right.  I, you know, again, this has

7    been throughly marketed, vetted and discussed among the parties

8    and I'm, again, appreciative of all the efforts that have been

9    made by not just the debtor and the Committee and the lenders,

10   but also the landlords and the respective assignees and all of

11   the various parties.  If there's consensus on anything and

12   there's been consensus on many things, but there's consensus

13   that everyone is working together to try to resolve as many

14   issues as they can and if they can't in good faith, then the

15   Court's got to resolve them and that's also fine.

16          But as far as approving these transactions, it's hard

17   to think of more appropriate or better examples of proper

18   exercise of business judgment thoroughly vetted, as I said,

19   before.  And so I will approve them as to the 41 of 44 that are

20   on 1582.  All right.

21          MR. FIEDLER:  Your Honor, those 41 of 44, that's just

22   as it relates to Burlington.  I believe there's 57 on the

23   notice, so it would be all 57 that we're seeking approval.

24          THE COURT:  All 57 then on the notice.

25          MR. FIEDLER:  Great.  Thank you, Your Honor.

1          THE COURT:  All right.  Thank you.  All right.  So

2     then I guess as to the -- I don't know if we're really

3     proceeding according to that agenda anymore in a sense or are

4     we or should we just move to the motions to seal?

5          MR. FIEDLER:  I think we go to the motions to seal,

6     Your Honor.

7          THE COURT:  All right.  So, Mr. Vohra, there's

8     several motions to seal and I think they're mostly from you,

9     but also from Michaels there's a motion to seal.

10          MR. VOHRA:  Correct.

11          THE COURT:  So why don't we proceed?

12          MR. VOHRA:  Sure.  Good morning, again, Your Honor,

13     Ravi Vohra, Kelley Drye & Warren on behalf of movants Daly City

14     Serramonte, LLC and HGREIT II Edmonson Road, LLC.  Your Honor,

15     before I proceed on those sealing motions, Item Number 4 on the

16     agenda which is Kite's motion to seal, we will not be

17     proceeding with that motion today.  And we could either file

18     the motion withdraw that sealing motion or if I could move

19     orally to withdraw that from the docket, we just, we aren't

20     proceeding with that motion because I believe the parties are

21     close to settling.

22          THE COURT:  Okay.  Well, I mean, if you want to

23     withdraw the motion, all you have to do is file a notice of

24     withdrawal on the docket and --

25          MR. VOHRA:  Okay.  We will do that then following the

1  hearing.

2           THE COURT:  One second, one second.

3           MR. FIEDLER:  Apologies, Your Honor, I missed which

4  location is that?

5           THE COURT:  Kite.  Which location is that, Mr. Vohra?

6           MR. VOHRA:  Give me one second, Your Honor.  It is --

7  it was the motion to seal filed at Docket Number 1499 on the

8  agenda.  I cannot see the location.  I don't have it off the

9  top of my head.  Oh, it's, sorry, Holly Springs and Avondale.

10          MR. FIEDLER:  Great.  Thank you, Your Honor.

11          THE COURT:  Farmingdale.

12          MR. FIEDLER:  Yes.

13          THE COURT:  That's -- okay.  So, like I said, as far

14 as procedurally, if you want to withdraw that motion, there's

15 no problem.  Just file a notice of withdrawal and that's it.

16          MR. VOHRA:  Great.  We will do that, Your Honor.

17          THE COURT:  Okay.

18          MR. VOHRA:  Now back to Items 2 and 3 which are Daly

19 City Serramonte, LLC's and HGREIT II Edmondson Road, LLC's

20 motions to seal.  First, we'd like to thank Your Honor for

21 granting our applications to shorten time on the underlying

22 motions to seal which were filed at Docket Numbers 1532 and

23 1520.

24          THE COURT:  Okay.

25          MR. VOHRA:  For the record, Your Honor, the orders

1  and related documents were served on the parties and in the

2  methods indicated in both orders which were entered at Docket

3  Numbers 1559 and 1561 yesterday.

4          THE COURT:  Okay.

5          MR. VOHRA:  Docket Number --

6          THE COURT:  But go ahead, I'm sorry.

7          MR. VOHRA:  Sorry, go ahead.  Your Honor, Docket

8  Number 1520 is HGREIT's motion to seal and Docket Number 1532

9  is Daly City's motion to seal.  We filed the sealing motions in

10 connection with the two client declarations accompanying the

11 sealing motions.

12          The two declarations are from client representatives

13 Chris Buchtien of HGREIT and Ernst Bell of Daly City.  They

14 were filed in anticipation of the contested hearings on the

15 assignment -- on the assumption and assignment of the Bed Bath

16 lease for, Number 1, Store 301 at Rookwood Commons to

17 Scandinavian Designs and the assumption and assignment of Bed

18 Bath lease for Store 3108 at Serramonte Center to Burlington.

19          Attached to the Buchtien declaration is the lease

20 HGREIT entered into with West Elm which contains exclusive use

21 provisions that prohibit HGREIT from leasing space out to

22 lifestyle furniture stores.  Attached to the Bell declaration

23 is a lease Daly City entered into with Ross Dress for Less

24 which expressly prohibits Daly City from leasing space out to

25 Burlington.

1          HGREIT and Daly City request authority to file

2   unredacted copies of the West Elm and Ross Dress for Less

3   leases under seal and to file redacted versions of the same

4   leases on a docket upon entry of the sealing orders.  The West

5   Elm and Ross Dress For leases constitute commercial information

6   that may be protected from disclosure under Bankruptcy Code

7   Section 107(b).

8          And, here, Your Honor, HGREIT and Daly City seek

9   protection under Section 107(b) because disclosure of either

10  the West Elm lease or the Ross Dress for Less lease would be

11  detrimental to the tenants' businesses.  And that's for two

12  reasons, Your Honor.  I guess one reason for each of them, but

13  Scandinavian Designs, the proposed assignee for the HGREIT

14  location, is a direct competitor of West Elm.

15         And then, again, Your Honor, at Serramonte Center,

16  Ross Dress for Less, the current tenant in that shopping

17  center, is a direct competitor of Burlington.  And, indeed,

18  Burlington is expressly mentioned in the exclusive use

19  provision.  And so disclosure of any commercially sensitive

20  information in those leases may be detrimental to their

21  businesses in light of those facts.

22         Accordingly, we would respectfully request that the

23  Court enter the proposed sealing orders filed at Dockets 1520

24  and 1532.  Now I believe Your Honor had some questions which I

25  am happy to entertain.

34

1          THE COURT:  All right.  There were no objections

2  filed and I don't know if there's any party that cares to be

3  heard or wishes to be heard on the sealing motions.

4          MR. FIEDLER:  No opposition, Your Honor.

5          THE COURT:  Okay.  So, thank you.  So, here's my

6  issue, okay.  I am bound by the law that really says that

7  there's a presumption of not sealing documents that are filed

8  with the Bankruptcy Court unless they are truly commercial

9  information or protected information.  And I guess my concern

10  is one is legal and one is more practical.

11          Legally, I'm just not sure, actually, I am kind of

12  sure that it can't be that the entire lease is confidential and

13  proprietary and that exposing it somehow is a -- might create a

14  competitive disadvantage or advantage for anyone.  But even

15  putting that aside and shifting a bit to the practical nature

16  of it is that as I read the objections and I believe they were

17  publically filed, is that they -- the objections quote the

18  lease.

19          So, if the lease is quoted, at least certain

20  sections, obviously, not the entire lease, but the relevant

21  sections are quoted, why -- on what basis would I properly seal

22  them and the entire lease and why would I seal the entire lease

23  if they're being subjected to the public docket anyway?  And

24  then, more practically, what -- if and when we have these

25  hearings, if the document is sealed and there's other people in

1  the courtroom, then theoretically those people, we have to mark

2  the record, we have to tell those people to leave and then some

3  of these appear, issues appear to cross over.

4          So, I just besides the legal issue that I'm dealing

5  with which is the presumption that the documents filed with the

6  court are publically available, and I'm not trying to, believe

7  me, I want -- I understand that certain terms might be

8  confidential.  But I'm just wondering what the basis is for me

9  to seal the entire lease or leases, particularly when they

10  are -- there are -- particularly as to the specific provisions

11  that are at issue and that are cited in publically filed

12  documents.

13          MR. VOHRA:  Fair, Your Honor, thank you.  And those

14  are very fair questions.  In response to your legal question,

15  the relief we seek is actually twofold.  So, we're requesting

16  that the entire unredacted lease for West Elm and Ross Dress

17  for Less be filed under seal, but then in those proposed orders

18  we also seek the authority to file redacted versions of those

19  leases.

20          So, you're absolutely correct.  We filed objections

21  and we filed client declarations that are on the public record

22  which cites the specific provisions in both leases.  And so

23  what we're proposing is that we redact any commercially

24  sensitive information with those leases with respect to the

25  amount of rent that either tenant is paying, any percentage

1   rent that may be owed and other commercially sensitive

2   provisions of those leases and then file the redacted versions

3   of those leases on the public docket.

4        The practical question that Your Honor had is

5   something we're happy to work with the debtors offline as to

6   how and maybe those redacted leases could become the exhibits

7   that we would ultimately rely on because, in essence, we really

8   just need the exclusive use provisions.  And so I just wanted

9   to clarify that the relief is twofold.  It's not that we're

10  just wishing just to file leases under seal for them to never

11  come to the light of day in court.  But we'd like to file

12  redacted versions of those leases.

13       THE COURT:  I see.  Okay.  That wasn't clear to me

14  and that really does address my concerns.  I just I don't want

15  to create a, as much as I want to observe the law, I don't want

16  to create a practical issue, as well.  So, it sounds like that

17  would address it.  Any comments from anyone else on this issue?

18             (No audible response)

19       THE COURT:  So, I guess is that in the form of order,

20  because I might have missed that?

21       MR. VOHRA:  I believe it is, Your Honor.  If it

22  isn't, we will upload revised orders to that effect.  But I do

23  believe that --

24       MR. FIEDLER:  Your Honor, I believe Michaels' counsel

25  would like to be heard.

1          THE COURT:  Yes, yes, but I was just -- I'm finishing

2   up with --

3          MR. FIEDLER:  Understood.

4          THE COURT:  I'm really looking for the form of order

5   is what I'm really doing.  Can we get that?  Can someone show

6   me the form of order?  Brian, can you -- thanks.  All right.

7   And so, Mr. Hershey?

8          MR. HERSHEY:  Yes, Your Honor, thank you.  Sam

9   Hershey from White & Case on behalf of Michaels Stores.  We

10  have a sealing motion, as well, in the agenda which is Agenda

11  Number 5.  I just wanted to comment now because I think it's

12  relevant to what Your Honor just said.  We did submit the

13  entire lease that we attached to our reply declaration under

14  seal.

15         The reason we did that is it's not our lease, it's

16  the lease for the store being assigned to us.  So it's a lease

17  between Bed, Bath & Beyond and the landlord and we didn't think

18  that we had authority to redact the lease and pick and choose

19  what provisions to redact, so we just put the whole thing under

20  seal.  We're more than happy to work with the debtors and with

21  the landlord to make redactions to that lease and submit it in

22  a form that's acceptable to the parties for that lease.

23         THE COURT:  That's perfect.

24         MR. FIEDLER:  Makes sense, yeah.

25         THE COURT:  That's exactly what I would like to

1 happen.

2         MR. HERSHEY:  Thank you, Your Honor.

3         MR. VOHRA:  And, Your Honor, sorry, just to turn back

4 to Items 2 and 3 which we were addressing, I pulled up the

5 order for at least one of the motions to seal, the Daly City

6 motion to seal.  And that provision is not in the order.  It

7 was in the -- requested in the motion.  And so what we will do

8 is upload revised orders following the hearing today.  That

9 will not only if Your Honor is so willing to grant the sealing

10 motions, but then also authorize us to file the redacted

11 versions of those leases publically on the docket.

12         THE COURT:  That's the form of order that I saw

13 didn't quite say what you said, so that's why I was waiving it.

14         MR. VOHRA:  Right, Your Honor.

15         THE COURT:  Okay.

16         MR. GROSS:  And, Your Honor, if I may be heard?

17         THE COURT:  Yes, of course.

18         MR. GROSS:  This is Philip Gross, as well for

19 Michaels.  Just to echo what Mr. Hershey said, we will work

20 with the debtors after the hearing to submit a further redacted

21 lease and we would also modify the proposed order.

22         THE COURT:  Okay.  Great.  And so, and this is really

23 a question for all of you.  Since these matters are going to be

24 proceeding together presumably sometime in the second or third

25 week of August, is there any issue with everyone participating

1 and being aware of the redacted and unredacted portions of the

2 leases or is it going to at some point move into areas that

3 might be considered confidential that other parties wouldn't --

4 one party would not want another party to hear?

5 　　　　　MR. FIEDLER:  I mean, Your Honor, the debtors' view

6 is that all that's at issue here is the exclusive use provision

7 which, as you mentioned, was in the landlord's objection.  So,

8 we don't think there will be a need to seal the courtroom or do

9 anything else that relates to confidentiality.  But we'll, of

10 course, address that if folks are trying to bring in, you know,

11 confidential information like rent, rent numbers and the like.

12 　　　　　THE COURT:  But I don't think it needs to.

13 　　　　　MR. FIEDLER:  I agree.

14 　　　　　THE COURT:  I think my sense is that it won't be a

15 problem at all.  But I'm just trying to anticipate it so that

16 we don't delay things because we're on a fast schedule, so --

17 　　　　　MR. FIEDLER:  I don't think it would be an issue.

18 　　　　　THE COURT:  I don't think it's going to be an issue

19 either, I agree.  Okay.  Great.  So, I'm going to be looking,

20 Mr. Gross or Mr. Hershey, does your order also reflect what we

21 talked about today or you're just going to work on that and

22 then submit a revised order?

23 　　　　　MR. GROSS:  Your Honor, Philip Gross for the record.

24 Our order also does not yet reflect the fact that we will

25 submit a redacted form of the lease under a revised order, but

1 we would revise the proposed order and submit a revised

2 proposed order to that effect --

3          THE COURT:  Right.

4          MR. GROSS:  (indiscernible) the Court.

5          THE COURT:  That's great.  Okay.  So --

6          MR. GROSS:  Thank you, Your Honor.

7          THE COURT:  Right, because it was -- I know we have a

8 standard form of order sealing on the court's, you know, on the

9 court's website and may not be the greatest form that is

10 available.  So, a little revising wouldn't hurt, okay?

11          MR. GROSS:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13          MR. VOHRA:  Thank you, Your Honor.  I think before

14 Michaels was heard, I think I technically need to finish my

15 presentment, right.  So, Your Honor, we would respectfully

16 request pending entry of the revised orders that the Court

17 grant both sealing motions and authorize unredacted copies of

18 the leases to be filed on the docket under seal and redacted

19 copies of the leases to be filed publically.  Thank you, Your

20 Honor.

21          THE COURT:  Thank you and granted.

22          MR. GROSS:  And, Your Honor, we're sparing the Court

23 all the formalities, we would ask for the same relief with

24 respect to the proposed order attached to our sealing motion at

25 Docket Number 1385.

1          THE COURT:  Okay.  All right.  There you go.  That's

2     granted, also.

3          MR. GROSS:  Thank you, Your Honor.

4          THE COURT:  Thank you.  All right.  So, let's see,

5     are we concluded with our agenda or was there more?  We have to

6     discuss scheduling, but --

7          MR. FIEDLER:  I believe that's it with respect to the

8     agenda and we'll take Your Honor's lead on scheduling.

9          THE COURT:  Yes.  So, the way I'm seeing it and

10    hearing it right now is that we're on, on Monday on the

11    confirming the stay is not effect matter and another matter?

12         MR. FIEDLER:  There are a few other lease sales that

13    we expect to be consensual on Monday that we'll be seeking Your

14    Honor's approval of, but otherwise nothing else going forward

15    on Monday.  And then Tuesday, of course, we have the

16    conditional disclosure statement hearing.

17         THE COURT:  All right.  And that issue on the

18    confirming the stay is, there's no anticipation of witnesses I

19    don't think, but I don't know.  I just want to confirm that.

20         MR. FIEDLER:  Not from the debtors, Your Honor.

21         THE COURT:  All right.  And from the --

22         MR. FIEDLER:  I don't believe from the movant, as

23    well.  I don't know if counsel's on the line, but I don't

24    believe they --

25         THE COURT:  I saw -- I thought counsel was on the

1  line, but I don't see them anymore.  Darren Neilson, is that

2  his name?

3           MR. FIEDLER:  That is, Your Honor.

4           THE COURT:  Yes.  I don't see him.  So, there's just

5  going to be legal argument?

6           MR. FIEDLER:  Yes, Your Honor.

7           THE COURT:  And is that fully briefed?

8           MR. FIEDLER:  We will be filing a sur-reply today.

9  We filed an initial reply and counsel filed a reply to that.  I

10 think counsel put in a declaration or two, so there are factual

11 issues to be addressed, but I don't think there will be

12 witnesses at the hearing.

13          THE COURT:  Okay.  All right.  So, when -- I'm sure

14 you're going to be speaking with Mr. Neilson during the course

15 of the weekend.

16          MR. FIEDLER:  Yes, we will be coordinating.

17          THE COURT:  Yes, because I did read something where I

18 thought that one you were also trying to resolve, but maybe

19 that one did not get resolved.

20          MR. FIEDLER:  We were hoping it would be resolved on

21 a commercial level, but I believe the parties have reached a

22 stalemate on that and so we'll be going forward on Monday,

23 absent some sort of resolution this weekend which I don't

24 expect to happen.

25          THE COURT:  All right.  And that one's governed by

1  Utah Law --

2          MR. FIEDLER:  Correct.

3          THE COURT:  -- as to the extent State Law governs?

4          MR. FIEDLER:  Correct.

5          THE COURT:  Okay.

6          MR. FIEDLER:  All rights reserved.

7          THE COURT:  All rights reserved, confirmed and

8  confirmed.  All right.  So, because I know that from other

9  cases not involving Utah, not involving Utah, I know that there

10 are very peculiar or specific laws to -- as relates to, you

11 know, the issues that I think are involved here, the notice of

12 termination, whether you need a -- like in New Jersey, for

13 example, typically need a judgment of possession to terminate a

14 lease, maybe some exceptions.  But I just I'm not sure whether

15 that was an issue in what I reviewed so far or what has been

16 submitted so far.

17         But I guess what I'm saying and maybe you could tell

18 Mr. Neilson this is I'd like to know what the Utah, to the

19 extent it hasn't been provided already, what the Utah Law is on

20 the issue of termination of the lease, you know, legal

21 proceedings and how they affect that, the right of possession

22 or the continued possession as whatever -- to whatever extent

23 that is involved.  So --

24         MR. FIEDLER:  Understood.  We'll be prepared to

25 address that, Your Honor.

1          THE COURT:  All right.  And just please let Mr.

2  Neilson know what my comments were so that I want it to be fair

3  and on an even keel.

4          MR. FIEDLER:  We will, understood.

5          THE COURT:  All right.  So, the hearing is Monday and

6  you're going to be filing papers when?

7          MR. FIEDLER:  Most likely today.

8          THE COURT:  Most likely today.  So should we have it

9  at 10 o'clock or should we have it a little later or is 11

10 o'clock even or --

11          MR. FIEDLER:  I believe we set it for 10, but

12 whatever works for Your Honor, we're happy to accommodate.

13          THE COURT:  Yes.  Because here's the real world,

14 right.  My wife and I are watching our grandchildren this

15 weekend, so I may not have a lot of time to review this over

16 the weekend.  So, why don't we say 11 o'clock?

17          MR. FIEDLER:  Perfect.

18          THE COURT:  All right.

19          MR. FIEDLER:  Assuming that's good for Mr. Neilson

20 who I'll connect with after the hearing.

21          THE COURT:  Yes.

22          MR. FIEDLER:  But that works for the debtors.

23          THE COURT:  Where is Mr. Neilson?

24          MR. FIEDLER:  I don't know.

25          THE COURT:  It's probably a little better for him --

1          MR. FIEDLER:  Do you know?

2          THE COURT:  -- if he's in Utah.

3          UNIDENTIFIED SPEAKER:  He's in Utah.

4          MR. FIEDLER:  He's in Utah.  So, he'll be flying in.

5          THE COURT:  Oh, so it's better.

6          MR. FIEDLER:  Yeah.

7          THE COURT:  Yes, he would be happy with even later,

8    I'm sure.  Okay.  So, we'll say that, we'll just say that for

9    11 so when you, you know, you tell him that, you tell him what

10   else I said and it will be all out there for everyone to

11   address.

12          MR. FIEDLER:  Okay.

13          THE COURT:  All right?

14          MR. FIEDLER:  Will do, Your Honor.

15          THE COURT:  Thank you.  Again, thanks to all for

16   their efforts, the debtor, the Creditors' Committee, the

17   landlords, the tenants, the -- everyone, appreciate it and I

18   hope everyone has a good weekend.  And we'll see you, or at

19   least some of you, on Monday and then we need to talk about the

20   scheduling of the more plenary hearings we'll call them.  How

21   about that?

22          MR. FIEDLER:  Right.

23          THE COURT:  All right.  So, you said the second or

24   third week of August?

25          MR. FIEDLER:  I believe third or fourth.  I

46

1 understand --

2          THE COURT:  Oh, third or fourth?

3          MR. FIEDLER:  -- Your Honor has commitments on the --

4 during the second week, is that right?

5          THE COURT:  Yes.  You know what, I was going full

6 weeks.

7          MR. FIEDLER:  Oh, okay, yeah.

8          THE COURT:  Yes, yes, yes, yes.  So, are you saying

9 the -- my commitment is on the -- is the first full week, but

10 the second week of August, the 7th, 8th and 9th.  So were you

11 talking about the weeks that start on the 14th and 21st?

12          MR. FIEDLER:  I was, Your Honor.

13          THE COURT:  All right.

14          MR. FIEDLER:  We will discuss with all the parties

15 that are involved and we'll get back to you on what we think is

16 a consensual form of scheduling and if that works for Your

17 Honor, we'll proceed that way.

18          THE COURT:  Yes.  And, as you know, my trusted

19 courtroom deputy is on top of the schedule and he'll -- you

20 should talk to him, of course, obviously, about the dates.  But

21 we don't think it's going to take more than a day, though,

22 either.

23          MR. FIEDLER:  I don't believe it will take more than

24 a day, no, Your Honor.

25          THE COURT:  Okay.  Great.  So, then we don't need to

 1 | set the dates now.
 2 |         MR. FIEDLER:  Not --
 3 |         THE COURT:  I don't need to give you any dates now.
 4 |         MR. FIEDLER:  Not presently, no.
 5 |         THE COURT:  No.  You know on Tuesdays and Thursdays,
 6 | I have hearings every Tuesday and Thursday in the morning, so
 7 | that's some guidance.  And then we have a trial on August,
 8 | there's one exception to that.  We have a trial on August 15th.
 9 | And then so that switched the motion days to the 16th and the
10 | 17th.  So, maybe we're looking at the next week a little
11 | better.
12 |         MR. FIEDLER:  Okay.
13 |         THE COURT:  Yes.
14 |         MR. FIEDLER:  We'll be in contact.
15 |         THE COURT:  Yes.  Okay?
16 |         MR. FIEDLER:  All right.
17 |         THE COURT:  Great.
18 |         MR. FIEDLER:  Thanks, so much, Your Honor.
19 |         THE COURT:  Thank you.
20 |         MR. FIEDLER:  We really appreciate it.
21 |         THE COURT:  Thank you.  Have a good weekend.
22 |         MR. FIEDLER:  Same to you.
23 |         UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
24 |         THE COURT:  Bye-bye.  Mr. Bass is sending order after
25 | order at all hours, right?

1        MR. BASS:  I already apologized to Mr. Filgueiras,

2 so --

3        THE COURT:  No apologies.  No apologies, just an

4 observation that I made.  Thank you, very much.  Bye-bye.

5        MR. BASS:  Thank you.

6                    * * * * *

7              **C E R T I F I C A T I O N**

8        I, KELLI R. PHILBURN, court-approved transcriber,

9 certify that the foregoing is a correct transcript from the

10 official electronic sound recording of the proceedings in the

11 above-entitled matter, and to the best of my ability.

12

13 /s/ Kelli R. Philburn

14 KELLI R. PHILBURN

15 J&J COURT TRANSCRIBERS, INC.      DATE:  August 16, 2023

16

17

18

19

20

21

22

23

24

25