**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**WOMBLE BOND DICKINSON (US) LLP**
Ericka F. Johnson
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4337
Email: ericka.johnson@wbd-us.com

**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: kpeguero@jw.com

Michael Held (TX Bar No. 09388150)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-5859
Email: mheld@jw.com

Jennifer F. Wertz (TX Bar No. 24072822)
100 Congress Ave., Suite 1100
Austin, TX 78701
Telephone: (512) 236-2247
Email: jwertz@jw.com

*Counsel for Burlington Coat Factory Warehouse Corporation*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtor.[1] | Chapter: 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

.

**BURLINGTON STORES, INC.'S OMNIBUS REPLY TO OBJECTIONS TO BURLINGTON'S ASSIGNMENT AND ASSUMPTION OF LEASES AND ANY CURE AMOUNTS RELATED THERETO**

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA,
UNITED STATES BANKRUPTCY JUDGE:

Burlington Coat Factory Warehouse Corporation ("Burlington") states as follows (this "Reply") in response to the objections and supplemental objections filed by DPEG Fountains, LP ("DPEG") regarding Store No. 126 ("Stafford") [Docket Nos. 1340, 1344, 1933]; and Daly City Serramonte Center, LLC ("Daly City") regarding Store No. 3108 ("Serramonte") [Docket Nos. 1328, 1929]] (collectively, the "Objections").

**Preliminary Statement**

1. Burlington—a nationally recognized off-price retailer and Fortune 500 company is the successful bidder for forty-four (44) Bed, Bath, and Beyond and buybuy BABY (collectively, BBB") Lease Assets. Burlington's bid of $12 million dollars was the single largest bid and comprises nearly a third of the value the above-captioned debtors and debtors in possession (collectively, the "Debtors") garnered as a result of their efforts to monetize certain unexpired leases of nonresidential real property, including any ancillary agreements thereto (collectively, the "Leases"), or designation rights related thereto (collectively, the "Lease Assets") through a robust auction process ("Auction"). Burlington's bid was a package or "block" bid for forty-four (44) of the Debtors' Leases. The aggregate of all individual bids for the Leases was nearly $5 million less than Burlington's $12 million bid. The Debtors' estates depend on the substantial value generated from the Lease Asset sale process.

2

2. Following a consensual hearing, on July 28, 2023, this Court approved a pair of Orders selling forty-one (41) of the Leases to Burlington.[2] The Debtors withdrew one Lease from the bid package, resulting in an adjustment to the purchase price.

3. Landlords for the two remaining Leases (collectively, the "Landlords"), eager to recapture their under-market leases, have objected to Burlington's assumption of the Stafford and Daly City Leases. If sustained, the Objections will diminish the ultimate recovery to all stakeholders, while resulting in a windfall to the Landlords. Through the Objections, the Landlords ask this Court to strain the meaning of Bankruptcy Code sections 365(b)(3)(C) and (D) to the illogical conclusion that the Bankruptcy Code saddles the Leases with later-in-time restrictions between Landlords and third parties, diminishing the value of the Leases in myriad ways. The Landlords' proposed interpretation turns a blind eye to the fundamental purpose of the Bankruptcy Code and basic contract and commercial real estate law on its head.

4. For these reasons, and as more fully set forth herein, and within the *Debtors' Omnibus Reply in Support of Debtors' Motion for Entry of an Order (I) Establishing Bidding Procedures, (II) Approving the Sale of Certain Real Property and Leases, and (III) Granting Related Relief* (the "Debtors' Omnibus Reply") [Docket No. ___], which Burlington adopts and incorporates to the extent not inconsistent with the positions taken herein, Burlington requests that this Court overrule the Objections and approve the assumption and assignment of the Leases.

---

[2] The pair of orders authorizing the sale to Burlington are the *Order (I) Authorizing the sale of Certain Unexpired Leases Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Approving Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief* [Docket No. 1746] and the *Order (I) Authorizing the sale of Certain Unexpired Leases Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Approving Assumption and Assignment of Certain Unexpired Leases; and (III) Granting Related Relief* [Docket No. 1747].

## **REPLY**

**I.    Use and Exclusivity Restrictions Not Contained in the Leases, or Related to Some Unarticulated and Undefined Standard of Tenant Mix Not Specified in the Leases, are Unenforceable.**

5.      The central question is whether Bankruptcy Code sections 365(b)(3)(C) and (D) require the Court to consider exclusivity and tenant mix provisions not contained in the Leases at issue. The short answer is no—the exclusivity and tenant mix provisions that sections 365(b)(3)(C) and (D) protect must be rooted in the terms of the Leases. Sections 365(b)(3)(C) and (D) are designed to further the purposes of the Bankruptcy Code and the Court should interpret them in harmony with section 365(f). *See United Hospital Center, Inc. v. Richardson*, 757 F.2d 1445, 1451 (4th Cir. 1985) (explaining that it is the court's task to "'interpret the words of the [the statute] in light of the purposes of [the Legislature] sought to serve,' and to arrive at a construction which is 'most harmonious' with the statutory scheme and general purpose….Should there be come inconsistency between the two statutes or sections of a single statute, courts, in construing the statues, so far as it is possible, should seek to steer a 'middle course that vitiates neither provision but implements to the fullest extent possible the directives of each.'") (internal citations omitted).

6.      Bankruptcy Code section 365(f) renders contractual "anti-assignment clauses…unenforceable in bankruptcy." 11 U.S.C. § 365(f). The intention of section 365(f) is that "subject only to certain statutory safeguards, the value of a debtor's leases should go to the debtor's creditors, and that leases can be sold to achieve that end—with or without landlord consent." *In re Ames Dep't Stores. Inc.,* 348 B.R. 91, 98 (Bankr. S.D.N.Y. 2006).

7.      Here, the Objections under sections 365(b)(3)(C) and (D) not only render section 365(f)(3)'s waiver of anti-assignment provisions meaningless, but also seek to impose new and more stringent anti-assignment provisions than those contained in the actual Leases. In other

words, the Landlords argue that section 365(f) (designed to waive anti-assignments provisions) should be ignored, and sections 365(b)(3)(C) and (D) should be interpreted to impose new **greater** and more stringent anti-assignment rights applicable solely in the bankruptcy context. The Landlords' proposed interpretation turns sections 365(b)(3) (C) and (D) into a sword rather than a shield—a sword that bestows upon the Landlords a commercially competitive advantage that allows them to actually improve their position to the detriment of the Debtors' estates. Indeed, in many cases, the same Landlords that oppose Burlington's assumption of the Leases have either (a) negotiated to bring Burlington in at a higher rate post-rejection, (b) negotiated with similar off-price retailers for the same space, and/or (c) currently lease to Burlington in other shopping centers with similar tenant combinations.

8. The Landlords' argument has been rejected by courts in other jurisdictions. The Fourth Circuit Court of Appeals has explained that the purpose of section 365(b)(3)(C) "is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are <u>spelled out in the lease with the debtor-tenant</u>." *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004) (emphasis added) (citing *In re Ames Dep't Stores*, Inc. 121 B.R. 160, 165 n.4 (Bankr. S.D.N.Y. 1990)). This provision is "intended to protect the landlord's economic expectations rather than those of the other tenants." *In re Martin Paint Stores*, 199 B.R. 258, 262 (Bankr. S.D.N.Y. 1996). "Its intent is not to bestow upon landlords new contractual rights but rather to preserve contract provisions at risk of being stricken as de facto anti-assignment clauses under the provisions of 11 U.S.C § 365(f)." *In re Toys "R" Us, Inc.*, 587 B.R. 304, 309–310 (Bankr. E.D. Va. 2018) (quoting *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004)).

9. The Bankruptcy Court for the Eastern District of Virginia's opinion in *Toys "R" Us* is squarely on point and highly instructive. *Toys*, 587 B.R. at 309–310. In *Toys* (and here),

5

nothing in the four corners of the lease between the landlord and *Toys* prohibited assignment to Burlington. *Id*. at 308–309.  The landlord nevertheless sought to block *Toys'* proposed assignment of the lease to Burlington on the basis of exclusive use provisions the landlord had granted to a subsequent tenant under that tenant's lease. *Id*. at 307.  The *Toys* court rejected that interpretation because the lease in question contained no provision requiring compliance with the exclusive use provision.  *Id*. at 310–311.  The *Toys* court alternatively found that the assignment would not breach the exclusivity provision because the court's order would render the landlord "without the capacity to prevent Burlington's intended use," noting that the exclusivity provision only applied if the landlord "ha[d] the capacity" to prevent a tenant from selling off-price apparel.  *Id*. at 310.

10. The *Toys* court's interpretation comports with the fundamental contractual and commercial leasing principle that outside of bankruptcy, the Debtors would have been able to assign the Leases to Burlington pursuant to their terms, subject only to any later-in-time or future exclusive or use restrictions upon which BBB had explicitly agreed to be bound.  The Debtors should be permitted to do the same here, particularly under the circumstances in which the Burlington bid is in the best interest of these estates.

11. For these reasons and the reasons set forth in the Debtors' Omnibus Reply, the Objections should be overruled.

## II. Adequate Assurance and Other Objections.

12. As is evident from Burlington's consolidated financial statements, available at https://www.burlingtoninvestors.com, Burlington has the financial wherewithal to meet all future obligations under the Leases. In fact, the principals involved with each respective Landlord are currently parties to one or more lease with Burlington or an affiliate.

| | |
|---|---|
| Dated: August 25, 2023 | **WOMBLE BOND DICKINSON (US) LLP**<br><br>/s/ *Ericka F. Johnson*<br>Ericka F. Johnson (NJ #032162007)<br>1313 N. Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4337<br>Email: ericka.johnson@wbd-us.com<br><br>**JACKSON WALKER LLP**<br>Kristhy M. Peguero (TX Bar No. 24102776)<br>1401 McKinney Street, Suite 1900<br>Houston, TX 77010<br>Telephone: (713) 752-4200<br>Email: kpeguero@jw.com<br><br>Michael Held (TX Bar No. 09388150)<br>2323 Ross Avenue, Suite 600<br>Dallas, TX 75201<br>Telephone: (214) 953-5859<br>Email:  mheld@jw.com<br><br>Jennifer F. Wertz (TX Bar No. 24072822)<br>100 Congress Ave., Suite 1100<br>Austin, TX 78701<br>Telephone: (512) 236-2247<br>Email: jwertz@jw.com<br><br>*Co-Counsel for Burlington Stores, Inc.* |