UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)
Neelay Das
4682 Chabot Dr #10236
Pleasanton, CA 94588-2747

Email: neelay.bbby.njb@gmail.com

-and-

Gabriel Rostom
63 Rue de la Folie Regnault
75011 PARIS – France

Tel : +33756942880

FILED
JEANNE A. NAUGHTON, CLERK

AUG 28 2023

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____DEPUTY

In Re:

BED BATH & BEYOND INC., et al.,

Debtors.[3]

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

**CERTIFICATION OF NEELAY DAS IN SUPPORT OF BED BATH AND BEYOND COMMON STOCK EQUITY INTEREST HOLDERS' MOTION, PURSUANT TO 11 U.S.C. § 105(a), FED. R. CIV. P. 60(b), AND FED. R. BANKR. P. 9024, FOR AN ORDER VACATING THE ORDER (I) (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH**

1. I, Neelay Das, Bed Bath and Beyond Common Stock Equity Interest Holder, in the above captioned case, submit this Certification in support of *Bed Bath*

---

[3] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

4

*And Beyond Common Stock Equity Interest Holders' Motion, Pursuant To 11 U.S.C. § 105(A), Fed. R. Civ. P. 60(B), And Fed. R. Bankr. P. 9024, For An Order Vacating The Order (I) (A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan, (C) Approving The Forms Of Ballots And Notices In Connection Therewith* filed by me on August 28, 2023. Unless otherwise stated in this Certification, all matters set forth in this Certification are based on my personal knowledge, my review of relevant documents, publicly available information, or my views.

2. The Solicitation And Notice Procedures specified in Exhibit 3 of Docket No. 1716 that were approved pursuant to the order entered via that docket include, in Exhibit 4B, a *Notice Of Non-Voting Status To Holders Of Impaired Claims And Interests Deemed To Reject The Plan* that has been distributed[4] to Bed Bath and Beyond Common Stock Equity Interest Holders via their broker/dealers includes, as Attachment A the Release Opt-Out Form. That Release Opt-Out Form includes the following text: *Please note that Holders of publicly traded securities in <u>Class 8 (Interests in BBB) do not require a Unique Opt-Out ID to submit an opt-out election through the Public Securities Opt-Out Portal</u>.* However, per section III.C of the Disclosure Statement [Docket No. 1713] and III.A of the Plan [Docket No. 1712] holders of Interests in BBB are classified under class 9. This misrepresentation of the classification for holders of Interests in BBB in the distributed Release Opt-Out Forms is misleading and confuses such holders into believing that the Release Opt-Out Form doesn't pertain to their class, which in turn causes them not to fill out the Release Opt-Out Form, even if they wanted to. **Thereby this issue meets the requirements of 11 U.S.C. § 105(a), FED. R. CIV. P. 60(b), AND FED. R. BANKR. P. 9024 pursuant to which the order (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH should be vacated.**

3. Pursuant to section 541 of the Bankruptcy Code the estate created on the petition date is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held. Pursuant to the above description Common Stock or Preferred Stock of the debtors,

---

[4] An example of such a distributed notice is available here:
https://www.proxydocs.com/0/001/930/337/bbby__7184809__impaired_nonvoting_notice_12.pdf

wherever located and by whomever held, is part of the estate. This is consistent with the Final NOL order approved by this court in Docket no. 587, where Common Stock and Preferred Stock has been recognized as valuable property of the Debtors' estates. Pursuant to section 542 of the Bankruptcy Code an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of the Bankruptcy Code shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. A short seller that has borrowed shares of Common Stock or Preferred Stock of Bed Bath and Beyond would fit the above description of the entity described in section 542 of the Bankruptcy Code. In Docket No. 1728, we showed evidence from which inference could be drawn of Jake Freeman and affiliates borrowing and short selling Bed Bath and Beyond Common Stock shares as a hedge against their 2014 Senior Unsecured Notes holdings that were due to mature in 2024 and who were, by Jake's own admission[5], also holding those notes when he exited his long position in Bed Bath and Beyond Common Stock. Now, we have more direct evidence of holders of above notes using BBBY stock short positions as a hedge against their notes holdings, from a Twitter spaces call with Jake Freeman hosted by Rob Alzmann[6], where in a snippet[7] starting at time 30 minutes 56 seconds into the call, Rob brings up the strategy of using short positions as a hedge against bond notes holdings to which Jake responds by explaining how such a hedge would work without actually commenting on whether or not he or his affiliates were using that strategy. Pursuant to section IV.I.6 of the Disclosure Statement, claims from any creditors are disallowed from whom property is recoverable under section 542 of the Bankruptcy Code and so, claims from any creditors who have borrowed shares of Bed Bath and Beyond Common Stock or Preferred Stock are also disallowed. Furthermore pursuant to section IX.A of the disclosure statement holders whose claims have been disallowed are not entitled to vote to accept or reject the Plan. However, Solicitation and Voting Procedures specified in article IX of the Disclosure Statement do not clearly specify that claims

---

[5] Jake Freeman's last Reddit post on r/bbby sub-reddit: https://www.reddit.com/r/BBBY/comments/wq4lu1/an_ode_to_bbby/
[6] Twitter spaces call with Jake Freeman hosted by Rob Alzmann complete recording: https://twitter.com/i/spaces/1YqJDqgRmjExV
[7] Twitter spaces call snippet with Jake Freeman discussing use of short transactions to hedge bond note holdings: https://drive.google.com/file/d/1DIYWV0LjInbUIcUhOZjOrYlSvAA-TYza/view?usp=sharing

from any creditors who have borrowed shares of Bed Bath And Beyond Common Stock or Preferred Stock are disallowed until/unless they return those shares, even though section IV.I.6 of the Disclosure Statement implies that. Moreover, section IV.D *Cancellation of Existing Securities, Notes, Instruments, Certificates, and Other Documents* of the Disclosure Statement states the following: *On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan, allowing the 2014 Senior Unsecured Notes Trustee to exercise its charging lien in accordance with the 2014 Notes Indenture, or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Liquidation Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed canceled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the Wind-Down Debtors, as applicable, any non-Debtor affiliates shall be deemed satisfied in full, canceled, released, discharged, and of no force or effect; provided that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order.* The above provision of cancellation of existing securities specified in section IV.D of the Disclosure Statement is a contradiction of the requirements specified in section IV.I.6 of the Disclosure Statement, since it allows the 2014 Senior Unsecured Notes Trustee to exercise its charging lien in accordance with the 2014 Notes Indenture, without ensuring that any Common Stock or Preferred Stock Equity

7

Securities borrowed by the Notes holders and recoverable under section 542 of the Bankruptcy Code, are turned over before those securities are canceled. The above provision also does not account for any Common Stock or Preferred Stock Equity Securities, recoverable under section 542 of the Bankruptcy Code and borrowed by other creditors who have submitted claims, before those securities are canceled, thereby leaving the possibility open for the requirements specified in section IV.I.6 of the Disclosure Statement not being met, if and when those claims are satisfied. **As a result, the Disclosure Statement does not meet the requirement, for conditional approval, of providing adequate information to each holder of a claim or interest that is solicited, pursuant to sections 1125(a)(1) and 1125(f)(3) of the Bankruptcy Code. Thereby this issue meets the requirements of 11 U.S.C. § 105(a), FED. R. CIV. P. 60(b), AND FED. R. BANKR. P. 9024 pursuant to which the order (A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT should be vacated.** It is a well known fact that as of 2023-08-15 there was a very large open short interest of 76,597,194 shares in Bed Bath And Beyond Common Stock that trades over the counter under the symbol "BBBYQ", as published by FINRA[8] based on reports it collects from member firms, which shows the very likely possibility of at least those many shares of Bed Bath And Beyond Common Stock being borrowed and not returned on the Effective Date or the Distribution Date, before those securities are canceled pursuant to the above described procedures in section IV.D of the Disclosure Statement and section IV.D of the *Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* [Docket No. 1712](the "Plan")[9], thereby violating the terms of section 542 of the Bankruptcy Code. **The Plan also does not satisfy the condition, pursuant to section 1129(b)(2) of the Bankruptcy Code, that it be be fair and equitable with respect to the classes, because on one hand, in violation of sections 1129(b)(2)(A)(i)(I) and 1129(b)(2)(B)(i) of the Bankruptcy Code, it potentially allows distributions to creditors with claims even though they may have unreturned borrowed shares of Bed Bath and Beyond Common Stock, which are recoverable property of the estate pursuant to sections 541 and 542 of the**

---

[8] Data available at the following website using the symbol filter BBBYQ:
https://www.finra.org/finra-data/browse-catalog/equity-short-interest/data
[9] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

8

Bankruptcy code, thereby making their claims disallowed pursuant to sections IV.I.6 of the Disclosure Statement and IX.F of the Plan, while on the other hand, in violation of section 1129(b)(2)(C)(i) of the Bankruptcy Code, it denies the holders of Interests in BBB, who have been classified under fully impaired Class 9 per the Plan and the Disclosure Statement, from receiving the true value of such interest as of the effective date after the appreciation in the value of Bed Bath And Beyond Common Stock that would inevitably result from the above several tens of millions, if not hundreds of millions of borrowed shares sold short being bought back and returned pursuant to section 542 of the Bankruptcy Code, before those securities are canceled. The above facts make the Plan unconfirmable because of requirements of sections 1129(a)(3) and 1129(b)(1) of the Bankruptcy Code not being met.

4. The above issues are being raised now so that Debtors may resolve the situation by changing class 8 reference to class 9 in the Release Opt-out forms distributed as part of *Notice Of Non-Voting Status To Holders Of Impaired Claims And Interests Deemed To Reject The Plan*, by changing sections IX.A, IV.D in the Disclosure Statement, as in the attached Exhibit 1 and by changing section IV.D in the Plan, as in the attached Exhibit A.

## JUDICIAL PRECEDENTS

**Judicial Precedent of Use of Section 542 of The Bankruptcy Code To Turn Over Property Of The Estate To The Debtor**

5. In United States v. Whiting Pools, Inc., 462 U.S. 198 (1983)[10] promptly after the Internal Revenue Service (IRS) seized respondent swimming pool firm's tangible personal property to satisfy a tax lien, respondent filed a petition for reorganization under the Act. The Bankruptcy Court, pursuant to § 543(b)(1), ordered the IRS to turn the property over to respondent on the condition that respondent provide the IRS with specified protection for its interests. The District Court reversed, holding that a turnover order against the IRS was not authorized by either § 542(a) or § 543(b)(1). The Court of Appeals in turn reversed the District Court, holding that a turnover order could issue against the IRS under § 542(a).

6. In CITY OF CHICAGO, ILLINOIS v. FULTON ET AL, 592 U. S. ____ (2021)[11] the following are some excerpts from the opinion delivered by U.S. Supreme Court Justice Samuel Alito. *In the case before us, the city of Chicago (City) impounded each respondent's vehicle for failure to pay fines for motor vehicle infractions. Each respondent filed a Chapter 13 bankruptcy*

---

[10] https://supreme.justia.com/cases/federal/us/462/198/
[11] https://www.supremecourt.gov/opinions/20pdf/19-357_6k47.pdf

9

*petition and requested that the City return his or her vehicle. The City refused, and in each case a bankruptcy court held that the City's refusal violated the automatic stay. The Court of Appeals affirmed all of the judgments in a consolidated opinion. In re Fulton, 926F. 3d 916 (CA7 2019). The court concluded that "by retaining possession of the debtors' vehicles after they declared bankruptcy," the City had acted "to exercise control over" respondents' property in violation of §362(a)(3). Id., at 924–925. We granted certiorari to resolve a split in the Courts of Appeals over whether an entity that retains possession of the property of a bankruptcy estate violates §362(a)(3). We now vacate the judgment below.* As part of the opinion Justice Alito goes on to state the following: *The better account of the two provisions is that §362(a)(3) prohibits collection efforts outside the bankruptcy proceeding that would change the status quo, <u>while §542(a) works within the bankruptcy process to draw far-flung estate property back into the hands of the debtor or trustee.</u>*

### Judicial Precedent of Use of Section 542 of The Bankruptcy Code To Consider Equity Interests As Property Of The Estate

7. The Final NOL order approved by this court in Docket no. 587, recognized Common Stock and Preferred Stock as valuable property of the Debtors' estates.

8. In Matter of Ostendorf, CASE NO. BK10-40072-TLS, (Bankr. D. Neb. Mar. 23, 2011) shares of Cabela's Inc. stock owned by Debtor were considered property of the Estate pursuant to section 542 of the Bankruptcy Court.

I certify under penalty of perjury that the above is true.

Date:   08/28/2023                                  /s/ Neelay Das
                                                    Neelay Das

10

**Exhibit 1**

11

> THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS SET FORTH IN THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY.
>
> PLEASE REFER TO THE DISCLOSURE STATEMENT ORDER ATTACHED HERETO FOR A MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.

### A. Holders of Claims Entitled to Vote on the Plan

Under the provisions of the Bankruptcy Code, not all Holders of Claims and Interests against a Debtor are entitled to vote on a chapter 11 plan. The table in Article III.D of this Disclosure Statement provides a summary of the status and voting rights of each Class (and, therefore, of each Holder within such Class absent an objection to the Holder's Claim or Interest) under the Plan.

As shown in the table, the Debtors are soliciting votes to accept or reject the Plan only from Holders of Claims in Classes 3, 4, 5, and 6 (the "Voting Classes"). The Holders of Claims in the Voting Classes are Impaired under the Plan and may, in certain circumstances, receive a distribution under the Plan. Accordingly, Holders of Claims in the Voting Classes have the right to vote to accept or reject the Plan. Pursuant to the definition of the term "*Allowed*", as defined in section I.A.14 of the Plan [Exhibit A], no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. Pursuant to sections 502(d), 541 and 542 of the Bankruptcy Code, this includes any entity that has borrowed Bed Bath And Beyond equity securities that existed as of the petition date, including in Common Stock or Preferred Stock.

The Debtors are *not* soliciting votes from Holders of Claims and Interests in Classes 1, 2, 7, 8, 9, or 10. Additionally, the Disclosure Statement Order provides that certain Holders of Claims in the Voting Classes, such as those Holders whose Claims have been disallowed or are subject to a pending objection, are not entitled to vote to accept or reject the Plan.

### B. Voting Record Date

The Voting Record Date is July 28, 2023. The Voting Record Date (as defined in the Disclosure Statement Order) is the date on which it will be determined which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim.

### C. Voting on the Plan

The Voting Deadline is September 1, 2023, at 4:00 p.m. (prevailing Eastern Time). In order to be counted as votes to accept or reject the Plan, all ballots must be properly executed, completed, and delivered in accordance with the instructions on your ballot so that the ballots are **actually received** by the Debtors' Notice and Claims Agent on or before the Voting Deadline:

69

12

**Exhibit A**

13

and Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Court.

The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors, and the Plan Administrator as set forth in the Plan and Wind-Down Budget; *provided* that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes. Any amounts remaining in the Combined Reserve after payment of all expenses of the Wind-Down Debtors and the Plan Administrator, and all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery without any further action or order of the Court.

The WARN Reserve shall be used to pay WARN Costs, and, to the extent such Claims are not paid in full from the Combined Reserve, Allowed Priority Tax Claims. After payment in full of all WARN Costs and Allowed Priority Tax Claims, any amounts remaining in the WARN Reserve shall be transferred to the General Account and shall be distributed according to the priority set forth in the Waterfall Recovery, subject to the Sharing Mechanism, without any further action or order of the Court.

Any contrary provision hereof notwithstanding, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (i) the Combined Reserve or WARN Reserve as applicable, and (ii) Distributable Proceeds to the extent available from the Waterfall Recovery.

    **D.**    **Cancellation of Notes, Instruments, Certificates, and Other Documents**

Pursuant to sections 541 and 542 of the Bankruptcy Code, any entity that has borrowed Common Stock or Preferred Stock equity securities of the debtors that existed as of the petition date, shall promptly turn over those securities to the custodian or holder of those securities, prior to the effective date. Within three business days after the determination of the effective date or as soon as reasonably practicable thereafter, the Debtors or Wind-down debtors, as applicable, shall send the notice of the above obligation by first class mail and email, if available, to all parties that may have borrowed Common Stock or Preferred Stock of the debtors as of the petition date, including any broker, bank, dealer or other agent, intermediary, or nominee of a beneficial holder of Common Stock or Preferred Stock and any known registered holders of Common Stock or Preferred Stock. On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan, allowing the 2014 Senior Unsecured Notes Trustee to exercise its charging lien in accordance with the 2014 Notes Indenture, or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Liquidation Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto, and the duties

30

14

15