UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
Alan S. Maza
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
Phone: (212) 336-1100
Email: Mazaa@sec.gov

**UNITED STATES BANKRUPTCY COURT
DISRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 23-13359 (VFP) |
| **BED BATH & BEYOND INC., et al.,** | |
| | **Jointly Administered** |
| Debtors. | Objection Deadline: September 1, 2023 |
| | Hearing Date: September 12, 2023 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**LIMITED OBJECTION OF THE U.S. SECURITIES AND EXCHANGE
COMMISSION TO FINAL APPROVAL OF THE DEBTORS' DISCLOSURE
STATEMENT AND CONFIRMATION OF THE CHAPTER 11 PLAN OF
REORGANIZATION OF
<u>BED BATH AND BEYOND AND ITS DEBTOR AFFILIATES</u>**

The U.S. Securities and Exchange Commission ("SEC" or "Commission"), a statutory party to these proceedings,[1] and the federal agency responsible for enforcement of the federal securities laws, objects to the final approval of the Debtors' disclosure statement and confirmation of the Chapter 11 Plan of Reorganization ("Plan") of Bed Bath and Beyond, Inc. and its debtor affiliates (collectively, "BBB" or the "Debtors"). The Plan incorporates nonconsensual non-debtor third party releases in contravention of the Bankruptcy Code, and the Court

---

[1] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]" 11 U.S.C. § 1109(a).

1

lacks jurisdiction to approve those nonconsensual releases with respect to public shareholders, holders of unsecured notes, and holders of subordinated claims who fail to opt out of the releases. In support of its limited objection, the SEC respectfully states as follows:[2]

## INTRODUCTION

As a general matter, non-debtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. Such releases have special significance for public investors because they enable non-debtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal and state securities laws, which would *not* be discharged or released had the non-debtors filed their own bankruptcy cases. *See* 11 U.S.C. §523(a)(19) (denying discharge to an individual Chapter 7 or Chapter 11 debtor for debts arising from violations of federal and state securities laws). This concern is implicated here, where the Debtors are seeking to bar public shareholders, holders of public unsecured notes, and holders of subordinated claims from asserting claims against the released parties.

While such releases may be allowed in the Third Circuit in "extraordinary cases," no extraordinary facts are present here. In *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 212 (3d Cir. 2000), the Court explained that the bankruptcy court must conclude that the release is fair to the releasing party and necessary to the reorganization and must make specific factual findings to support

---

[2] Unless separately defined herein, capitalized terms have the meanings ascribed to them in the Plan.

2

those conclusions. Here, the Debtors are liquidating their businesses, undermining any argument that the releases are necessary to a reorganization. In the absence of such extraordinary circumstances, courts in this Circuit have held that third party releases of non-debtors may be allowed if they are consensual. For example, in *Emerge Energy Servs. LP,* No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. 2019), the Court denied confirmation of the plan where third party releases were not consensual, because the plan sought to bind creditors and interest holders who did not return a ballot or opt-out form. The Court explained that "if there is appropriate bankruptcy justification for the release in the absence of affirmative consent, a debtor may proceed under *Continental*." *Id*.; *See also In re Washington Mutual, Inc*., 442 B.R. 314, 352 (Bankr. D. Del. 2011); *In re Zenith Electronics Corp*., 241 B.R. 92, 111 (Bankr. D. Del. 1999)); *cf. In re Purdue Pharma* L.P., 69-F.4th 55, __, 2023 WL 3700458 at *19-20 (2d Cir. May 30, 2023) (holding that the bankruptcy court had statutory authority to impose nonconsensual third-party releases, but noting the heightened potential for abuse posed by such releases and setting forth seven factors for bankruptcy courts to consider before imposing such releases), *cert. granted sub nom Harrington v. Purdue Pharma, L.P.,* 2023 WL 5116031 (Aug. 10, 2023).

Although the Debtors may claim that the inclusion of an opt-out provision renders the releases consensual with respect to public shareholders, holders of unsecured notes, and holders of subordinated claims, silence does not constitute "consent" to third party releases. Here, the nonconsensual character of the releases is especially troubling because they apply to parties—public shareholders and holders of

3

subordinated claims—who are not receiving any consideration and are not entitled to vote on the Plan. While holders of approximately $1 billion in public unsecured notes are entitled to vote, they are receiving only a minimal distribution of no more than 2.5%, or about $25 million, and will nonetheless be bound by the third-party releases unless they opt out. The Plan also contains a burdensome and inappropriate provision requiring the bankruptcy court to rule on the validity of opt out claims prior to a plaintiff filing suit. In any event, the Court lacks jurisdiction to approve the non-debtor third party release.

Accordingly, the releases should be deleted from the Plan, or, alternatively, the Plan should be amended to state that the releases will not bind public shareholders, holders of unsecured notes, and holders of subordinated claims.

## BACKGROUND

Bed Bath & Beyond Inc. ("BBB") and its affiliates (collectively, the "Debtors" or "BBB") operated as the largest home goods retailer in the United States. On April 23, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of New Jersey. As of the Petition Date, the Debtors' capital structure consisted of approximately $1 billion in public notes, $791 million in institutional debt obligations and 739 million shares of publicly traded common stock. BBB was previously publicly traded on the NASDAQ under the symbol BBBY. On May 3, 2023, BBB stock was suspended from trading on the NASDAQ and now trades Over-The-Counter.

On July 21, 2023, the Debtors filed a disclosure statement, since amended, in support of a Plan that provides for the transfer of the Debtors' assets to wind-down entities supervised by a Plan Administrator. The Plan Administrator will monetize the assets and distribute them based on priority. The Plan provides that the holders of the unsecured notes will receive a maximum of 2.5% on their allowed claims, and subordinated claimants will receive no distribution and are deemed to reject the Plan. Equity will be cancelled and the public shareholders are also deemed to reject the Plan. (*Amended Disclosure Statement, Docket #1713* at 8-9).

The Plan contains third-party releases in favor of: (a) the Debtors' ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the retained professionals in the bankruptcy case and numerous other released parties with no connection to the bankruptcy cases. The list of released parties is extensive and the releases are for any and all claims and causes of action and a wide range of other obligations. (*Amended Plan, Docket #1712* at 16, 51-52).

The only way a shareholder, unsecured noteholder, or subordinated claimant can avoid being bound to this expansive release is to return an opt-out form to the Debtors. The Disclosure Statement offers no evidence that the releases are necessary to the Debtors' reorganization, fair to the releasing parties, or integral to the Plan. The Plan also contains a provision requiring any person who opts out of or otherwise does not participate in the releases to seek a final order from the bankruptcy court determining that their opt-out was valid before pursuing their claims outside of the bankruptcy court. This requirement, which is inconsistent with the Federal Rules of

5

Case 23-13359-VFP    Doc 2086    Filed 08/29/23    Entered 08/29/23 20:37:34    Desc Main
Document    Page 6 of 15

Civil Procedure, appears designed to chill the right of any party opting out to pursue independent claims against third parties.

### DISCUSSION

I. **The Releases are not consensual and do not satisfy the standard to be approved as non-consensual releases.**

A. **The Releases are not consensual**

The Releases here are not consensual because the Plan deems consent to the Releases to be established based on the failure to opt out. In the SEC's view, in order for releases to be considered consensual, parties should *opt in* to the release to be bound. *See, e.g., Emerge Energy*, 2019 WL 7634308*, at \*18* ("the Court cannot on the record before it find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release. ***Carelessness, inattentiveness, or mistake are three reasonable alternative explanations.***") (emphasis added); *Washington Mutual*, 442 B.R. at 355 ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found releases consensual and binding only on creditors and interest holders voting to accept the plan); *cf. In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan). Thus, neither failing to return an opt-out form, nor abstaining from voting, nor voting to reject a plan but failing to opt out of the releases constitutes "consent." *But see In re Indianapolis Downs*, LLC, 486 B.R. 286, 304-6 (Bankr. D. Del. 2013) (in nonpublic company case that sets forth the minority view among published opinions in this district, nondebtor releases deemed

6

consensual with respect to impaired creditors who abstained from voting on the Plan, and those who voted to reject the Plan and did not otherwise opt out of the releases. Creditors that were deemed to reject the Plan were not subject to the releases.).

"Courts generally apply contract principles in deciding whether a creditor consents to a third party release." *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017)*, citing Washington Mutual, Inc.*, 442 B.R. at 352; *Emerge Energy*, 2019 WL 7634308*,* at *18. The Court in *Emerge Energy* enumerated the basic contract principles under which consent to the Release may be implied from silence:

> For the Court to infer consent from the nonresponsive creditors and equity holders, the Debtors must show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties.

*Emerge Energy*, 2019 WL 7634308*,* at *18.

None of the situations enumerated above apply here. The Debtors cannot rely on the silence of BBB's public shareholders, holders of unsecured notes and subordinated claims because the Debtors are not offering anything of benefit to these parties in exchange for the releases. Rather, they are extinguishing a right these parties may have against non-debtor third parties unless they affirmatively submit an opt-out form. This is a particularly onerous requirement to place on public investors, many of whom must rely on broker-dealer intermediaries to deliver the appropriate forms and instructions to them.

### B. The Releases do not satisfy the standard to be approved as non-consensual because they are not: (i) fair to the releasing parties; (ii) necessary to the reorganization; and (iii) supported by the facts of this case.

The Debtors cannot show that the Releases are "consensual," nor can they justify the imposition of the Releases on a non-consensual basis. The Third Circuit has indicated that allowing non-consensual non-debtor releases is an "extraordinary remedy" that should only be used sparingly. *See In re Continental Airlines*, 203 F.3d at 217.[3] The hallmarks of permissible non-consensual non-debtor releases include: (i) fairness, particularly whether the release was given in exchange for fair consideration, beyond what the class was entitled to as creditors under the Plan; (ii) necessity to the reorganization; and (iii) specific factual findings to support these conclusions. *Id.* at 214-15. Specifically, courts in this circuit have considered the following factors in determining whether non-consensual releases satisfy the "hallmarks" discussed in *Continental*: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is

---

[3] In *In re Continental Airlines*, 203 F.3d at 211, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into the Section 524(e) prohibition because they amounted to nothing more than a lockstep discharge of nondebtor liability. The Court held open the possibility that "there are circumstances under which [it] might validate a non-consensual release that is both necessary and given in exchange for fair consideration," *Id*. at 214, n. 11, but made this comment in light of releases and permanent injunctions issued in such extraordinary cases as *Robins*, *Manville*, and *Drexel*. 524(e). *See Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89 (2d Cir.1988); *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285 (2d Cir. 1992); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 143 (2d. Cir. 2005) (Second Circuit held a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. . . .")

necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. at 144-145.

When applying the *Continental* factors to the facts of this case, it is clear that the releases contravene Bankruptcy Code Section 524(e) and applicable Third Circuit law. The releases are not fair to the non-consenting parties and are not granted in exchange for consideration from the released non-debtors. Moreover, there is no evidence that the released non-debtors made any contributions to the Plan and, given the winddown of the Debtors, the Debtors cannot possibly argue that the releases are necessary for the "success" of any reorganization, as the Plan is clear that the Debtors intend to liquidate.

## II.     The Court Lacks Jurisdiction to Approve the Releases.

Bankruptcy courts are courts of limited jurisdiction. Even if the releases are intended to be limited to claims relating to the Debtors (and it is not clear that they are), that purported nexus alone is insufficient to grant the court the constitutional authority to approve the releases under *Stern v. Marshall,* 564 U.S. 462, 131 S. Ct. 2594,180 L. Ed. 2d 475 (2011). As a threshold matter, the Court must have jurisdiction over a claim in order to release and enjoin it. *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co., et. al.)*, 591 F.3d 164, 170 (3rd Cir. 2009); *In re Millennium Lab Holdings II, LLC*, 242 F.Supp.3d. 322, 327 (D. Del. 2017); *Patterson v. Mahwah Bergen Retail Group, Inc.,* 636 B.R. 641, 670-71 (E.D. Va. 2022).

Assuming that the Debtors make the proper jurisdictional showing, the Court must then determine whether the released and enjoined claims fall within the Court's

"core" or "non-core" jurisdiction for purposes of 28 U.S.C. §157. *Patterson*, 636 B.R. at 668. "Core" proceedings are "proceedings arising under title 11, and proceedings arising in a case under title 11[.]" *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3rd Cir. 2005). The claims implicated by the releases are nearly limitless. As such, permanently enjoining these non-bankruptcy claims between third parties is a non-core proceeding.

The fact that plan confirmation is a core proceeding under 28 U.S.C. §157(b)(2)(L) does not render the enjoining of third-party claims under a plan a core proceeding too. In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that bankruptcy courts may violate Article III of the Constitution when adjudicating on a final basis a state law counterclaim filed by the debtor, even though 28 U.S.C. §157(b)(2)(C) expressly classifies the debtor's counterclaim as a core proceeding.[4] In *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3rd Cir. 2019), the Third Circuit Court of Appeals analyzed how *Stern* applies in the context plan confirmation when, like here, the plan contains a third-party release of state law and other non-bankruptcy claims. The *Millennium Lab* court held that a bankruptcy court does not violate the Constitution when entering a final order confirming a plan with such a release, but only in the "specific and limited" case in which the release is integral to the debtor's restructuring. *Id.* at 140; *see also In re Purdue Pharma* L.P., ---F. 4th ---,

---

[4] As recently explained by a district court judge in this District:
> "Whether the analysis is characterized as jurisdictional or a determination on the merits, it is clear to me that the permissibility of third-party releases does not end with whether the Bankruptcy Court had 'arising in' or 'arising under' jurisdiction to confirm the Plan containing them. Rather a separate analysis is required with respect to a Plan's release of claims and/or suits between third parties."

*Nat'l Union Fire Ins., Co. of Pittsburgh, PA v. Boy Scouts of America and Delaware BSA, LLC, et. al, (In re Boy Scouts of America and Delaware BSA, LLC)*, 650 B.R. 87, 124 (Bankr. D. Del. 2023).

2023 WL 3700458 at *12 (Court held that the bankruptcy court does not have constitutional authority to enter final orders on non-core matters, but the bankruptcy court can resolve claims that might impact the *res* of the estate).

In this case, the releases include much more than rights and claims created solely by federal bankruptcy law or that arise solely in a bankruptcy case. Under *Millennium Lab,* this Court lacks constitutional authority to release and enjoin such claims under the Plan unless the Court finds that doing so is integral to the Debtors' restructuring. But the Debtors have provided no evidence that the releases are integral to the restructuring of the debtor-creditor relationship. Accordingly, absent such a showing, the Court lacks the constitutional authority to approve any of the releases set forth in the Plan.

And while the Supreme Court has held that bankruptcy courts may exercise core jurisdiction over a state law claim when the claimant knowingly and voluntarily consents to adjudication in the non-Article III forum, the Debtors' shareholders and unsecured noteholders have taken no action that could be interpreted as knowing and voluntary consent to waive their Article III rights. *See Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 135 S. Ct. 1932 (2015). Shareholders have not been notified of their right to refuse adjudication by a non-Article III court, and failing to return an opt-out form is insufficient "action" to constitute consent.

### III. The Plan Provision requiring Parties who Opt Out to Seek Permission to Sue Non-Debtors is Unnecessary and Designed to Deter Future Actions Preserved under the Plan

The Plan requires those who opt out from the release to seek a final order from the bankruptcy court determining that their opt-out was valid prior to pursuing

their claims outside of the bankruptcy court. This provision serves to deter actions against non-debtors and is inconsistent with Fed. R. Civ. P. 8(c)(1), which specifically lists "release" as an affirmative defense to be pled by the released party in a responsive pleading. *See* Fed. R. Civ. P. 8(c)(1); *Sada 2400 OGDEN, Ltd. Liab. Co. v. 2400 OFDEN Ave.,* 2021 U.S. Dist. LEXIS 38678, at *1 (N.D. Ill. Mar. 2, 2021)(plaintiff need not anticipate and negate a release in her pleading; to successfully assert the affirmative defense of release, a defendant must show that the release is valid and that the release covers the claims at issue in the case). *See also In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D.N.C. 2000) citing *Stucker v. Cardinal Building Materials, Inc. (In re Stucker),* 153 B.R. 219, 222 (Bankr.N.D.Ill.1993) (discharged debtors have several options when faced with a creditor who files suit to collect a judgment on a pre-petition debt in state court including asserting the bankruptcy discharge as an affirmative defense)

Moreover, the bankruptcy court should not be the sole arbiter of the appropriateness of a cause of action involving non-bankruptcy claims against non-debtors. *Cf. In re Hepburn,* 27 B.R. 135, 136–37 (Bankr.E.D.N.Y.1983) (Bankruptcy court would not decide a landlord-tenant dispute because "except that the debtor's discharge in bankruptcy absolves her of the debt for rent, the landlord is entitled to whatever his remedies would be in the courts of New York State, absent bankruptcy, for breach of a lease."); *In re Iannacone*, 21 B.R. 153, 155 (Bankr. D. Mass. 1982) (non-bankruptcy court may determine question of dischargeability of debt under 11 USC Section 523 in suit brought by creditor post-bankruptcy)

This provision represents an inappropriate burden on plaintiffs who took the prescribed step to except causes of action. Accordingly, the Debtors should delete this requirement from the Plan.

Finally, because the Debtors are liquidating, the Plan should be amended to delete any references to a discharge pursuant to Bankruptcy Code section 1141(d)(3). Section 1141(d)(3) precludes the grant of a discharge to a debtor where a plan provides for the liquidation of all, or substantially all, of the property of the estate, the debtor does not engage in business after consummation of the plan, and the debtor would be denied a discharge under section 727(a) (because the Debtor is not an individual). 11 U.S.C.A. § 1141(d).

## **CONCLUSION**

For all of the foregoing reasons, the SEC requests that the Court deny approval of the Plan unless the Plan is amended to provide that: (i) either (a) public shareholders, holders of unsecured notes, and holders of subordinated claims are not bound by the releases; (b) the releases are deleted from the Plan; or (c) public shareholders, holders of unsecured notes, and holders of subordinated claims be required to opt in to the Releases in order to be bound; (ii) the provision requiring any entity to seek bankruptcy court authorization before pursuing a claim does not apply to equity holders, holders of unsecured notes, and holders of subordinated claims; and (iii) the Plan is amended to comply with Bankruptcy Code section 1141(d)(3).

Dated: New York, New York
August 29, 2023

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

By: /s/ Alan Maza
Alan Maza
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
Phone: (212) 336-1100
Mazaa@sec.gov

Of Counsel: Alistaire Bambach
Morgan Bradylyons

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of August, 2023, a true and correct copy of the foregoing Objection was furnished to all ECF Participants via the CM/ECF system, and further, served by email upon the following:

<u>Debtors' Counsel</u>
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., Derek I. Hunter, Ross J. Fiedler

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attn: Charles B. Sterrett

Cole Schotz P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq.

<u>Counsel to the Official Committee of Unsecured Creditors</u>
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn: Robert J. Feinstein and Bradford J. Sandler

<u>Office of the U.S. Trustee</u>
UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF THE UNITED STATES TRUSTEE ANDREW R. VARA UNITED STATES TRUSTEE, REGIONS 3 & 9
One Newark Center, Suite 2100
Newark, NJ 07102
Attn: Fran Steele, John Schanne,

                                        /s/ Alan S. Maza
                                        Alan S. Maza