| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>John S. Mairo, Esq.<br>(jsmairo@pbnlaw.com)<br>-and-<br>1675 Broadway, Suite 1810<br>New York, New York 10019<br>(212) 265-6888<br>Dean M. Oswald, Esq.<br>(dmoswald@pbnlaw.com)<br>(admitted *pro hac vice*)<br><br>*Counsel for DPEG Fountains, LP* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

## JOINT STIPULATED FACTS

DPEG Fountains, LP ("DPEG"), and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their respective counsel, hereby jointly submit the below stipulated facts which are not in dispute.

1. DPEG is the landlord for the shopping center located at The Fountains on the Lake ("Fountains Shopping Center"), 12520 Fountain Lake Circle, Stafford, TX, 77477.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

7450889

2. The Fountains Shopping Center is a "shopping center" for purposes of section 365 of the Bankruptcy Code.

3. DPEG has leased certain space at the Fountains Shopping Center to Bed Bath & Beyond Inc., ("BBB") pursuant to an Agreement of Lease dated April 10, 1996 between a predecessor in interest to DPEG and a predecessor in interest to BBB (the "Lease"). A true and correct copy of the Lease, as amended, is attached hereto as Exhibit A.

4. On December 5, 2012, Fountains Dunhill, LLC, as a predecessor in interest to DPEG, and Ross Dress for Less, Inc. ("Ross"), as tenant, entered into a written lease agreement for approximately 25,000 square feet of retail premises located in the Fountains Shopping Center (the "Ross Lease"). A true and correct copy of the Ross Lease is attached as Exhibit B to the Objection (Docket No. 1344-2).

5. Prior to Ross and the predecessor landlord entering into the Ross Lease, Ross and BBB entered into a letter agreement dated August 17, 2012 (the "BBB-Ross Letter Agreement"), which provides, in relevant part, as follows:

> Reference is made to the Shopping Center, for which Ross Dress For Less, Inc., a Virginia corporation ("***Ross***"), is negotiating a lease (the "***Ross Lease***") for approximately Twenty Five Thousand Thirty One (25,031) square feet of leasable floor area in the Shopping Center (the "Ross Premises"), and Bed Bath & Beyond Inc., a New York corporation ("BBB"), has executed a lease (the "***BBB Lease***") for approximately Thirty Five Thousand (35,000) square feet of leasable floor area in the Shopping Center (the "***BBB Premises***").
>
> Notwithstanding the "exclusive use" provisions contained in the BBB Lease, BBB and Ross hereby agree that only the following restrictions shall apply with respect to the Ross premises so long as both the BBB Lease and the Ross Lease remain in effect:
>
> Neither Ross, nor any assignee(s) of the Ross Lease, nor any sublessee(s) of all or any portion of the Ross Premises, shall operate in the Ross Premises primarily as a home furnishings store. A "***home furnishings store***" shall be defined as a store selling an assortment of home-related merchandise, which may include linens and domestics, bathroom items, housewares, frames and wall art, window treatments, closet, shelving and storage items, area rugs, wall and floor coverings, furniture,

decorative accessories, seasonal items relating to the home, and/or health and beauty care items. The foregoing provision, and the exclusive use provisions in the BBB Lease, shall lapse in the event that the BBB Premises ceases to be used primarily as a home furnishings store for more than nine consecutive months (which cessation is not attributable to such periods of time which (i) result from alterations or renovations being performed in and to the BBB Premises, (ii) are caused by damage or destruction, eminent domain proceedings or actions, or events of force majeure, or (iii) arise during active lease negotiations and any related construction periods for the assignment or sublet of the BBB Premises to an assignee or subtenant(s) which will operate primarily as a home furnishings store).

6. BBB did not agree in the BBB-Ross Letter Agreement to be bound by any exclusive

to be contained in the Ross Lease (as defined in the BBB-Ross Letter Agreement).

7. Section 15.3.(a) of the Ross Lease provides as follows:

Subject to Section 15.3(b) below respecting Existing Leases, without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the sale of apparel (except for discount department stores in excess of eighty-five thousand (85,000) square feet of Leasable Floor Area), or (c) use its premises for the sale of whole bean and ground coffee (other than Tenant, a supermarket, grocery store, or local bakery, or by Dunkin' Donuts, Caribou Coffee, Peets, Indigo, or other national or regional coffee retailer or coffee shop with up to (but not more than) 500 stores. For purposes of this Section 15.3 "Off Price Sale" shall mean the retail sale of merchandise on an every day basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from the retailer's every day price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, A.J. Wright, Fallas Paredes, Nordstrom Rack, Goody's, Factory 2U, Burlington Coat, Steinmart, Filene's Basement, Gordmans and Beall's Outlet)…

If any of the foregoing provisions is violated ("Protection Violation"), commencing on the first day of the Protection Violation and continuing throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at law or in equity, including injunctive relief, shall have the ongoing right, exercisable by written notice to Landlord, either to terminate this Lease or to pay Substitute Rent…

Ross Lease §15.3.(a).

8. Section 15.3.(b) of the Ross Lease provides as follows:

3

7450889

    (b) Exceptions. Notwithstanding the provisions of Section 15.3(a) above, the following exceptions shall be applicable:

    (i) Existing Leases. The tenants and occupants operating in the Shopping Center as of the Effective Date under the Existing Leases listed on Exhibit K shall not be subject to the use restriction(s) set forth in Section 15.3(a) above. However, if Landlord has the right of consent to any change in use of the premises occupied by a tenant or occupant operating under an Existing Lease, Landlord shall not consent to any use in such premises in violation of the use restriction(s) set forth in Section 15.3(a) above. In the event of any violation of this provision, Tenant shall have all of the rights and remedies set forth in Section 15.3(a) in addition to any other rights, at law or in equity or under this Lease, for breach of the provisions of this Lease.

Ross Lease §15.3.(b).

    9.    Bed Bath & Beyond, Inc. is listed among the Existing Tenants on Exhibit K to the Ross Lease.

    10.    Section 1(i) of the Lease defines the "Permitted Use" to include "any other lawful retail use not specifically prohibited by the provisions of Sections 7. (c) and 23. (d) of this Lease."

    11.    Section 7(a) of the Lease provides as follows: "The Premises may be used and occupied for the Permitted Use."

    12.    The ordinary operation of a Burlington store by Burlington is not prohibited by the provisions of Section 7(c) of the Lease.

    13.    Section 23(d)(iii) of the Lease provides that any "Future Exclusive shall not relate to the sale, rental or distribution of apparel or apparel accessories."

    14.    Sections 25(b) and (c) of the Lease provides:

(b) Except as set forth in subsections 25.(a) and 25. (c) , in the event Tenant proposes to assign this Lease or sublet the whole of the Premises, it shall first give notice thereof (hereinafter called the "Assignment/Subletting Notice") to Landlord, which notice shall specify the name and address of the proposed assignee or sublessee and the entire terms of the assignment or subletting. Within thirty (30) days after receipt of an Assignment/Subletting Notice from Tenant, Landlord may elect by notice (hereinafter called the "Termination Notice") in writing to Tenant to terminate this Lease and recapture the Premises in which event this Lease shall automatically terminate on the ninetieth (90th) day (hereinafter called the "Termination Date") following Tenant's receipt of the Termination Notice with the

7450889

same force and effect as if said Termination Date had been designated as the Expiration Date of this Lease and Landlord and Tenant shall upon such Termination Date be released from any and all liabilities thereafter accruing hereunder. All Fixed Rent and Additional Rent payable by Tenant hereunder shall be apportioned as of the Termination Date and Tenant shall promptly pay to Landlord any amounts so determined to be due and owing by Tenant to Landlord, and conversely Landlord shall promptly reimburse Tenant for any amounts prepaid by Tenant for periods subsequent to the Termination Date. Notwithstanding any Termination Notice given to Tenant by Landlord within the aforesaid thirty (30) day period, Tenant shall have the right, within ten (10) days thereafter, to give Landlord notice (hereinafter called the "Recision Notice") of its recision of the Assignment/Subletting Notice and upon the receipt of the Recision Notice the Termination Notice previously given by Landlord shall be deemed null and void and Tenant shall not assign this Lease or sublet the whole of the Premises as proposed in its Assignment/Subletting Notice. If Landlord does not exercise its right of termination within the aforesaid thirty (30) day period, Landlord shall conclusively be deemed to have consented to the proposed assignment or subletting, as the case may be, and Tenant may assign this Lease or sublet the whole of the Premises pursuant to the Assignment/Subletting Notice.

(c) Notwithstanding the provisions of subsections 25. (a) and 25.(b) above, Tenant shall have the unrestricted right, from time to time without the consent of Landlord, to (i) assign and/or sublet the whole of the Premises to any entity controlling, controlled by, or under common control with Tenant; (ii) assign this Lease to any company which purchases all or substantially all of the assets of Tenant's parent company; (iii) assign this Lease to any company which purchases Tenant's interest in the Premises (provided that such company has also purchased the interest of all tenants in all other Bed Bath & Beyond stores located in the greater Houston area substantially simultaneously with a purchase of Tenant's interest in the Premises); and (iv) assign this Lease in conjunction with any merger, consolidation or public offering of stock involving Tenant or any entity controlling, controlled by, or under common control with Tenant.

15.     The assignment to Burlington will not violate any of the "Existing Exclusives"

identified on Exhibit G to the Lease.

7450889

Dated: August 30, 2023

| **COLE SCHOTZ P.C.** | **PORZIO, BROMBERG & NEWMAN, P.C.** |
|---|---|
| By:  /s/ Warren A. Usatine<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>(admitted *pro hac vice*)<br>Emily E. Geier, P.C.<br>(admitted *pro hac vice*)<br>Derek I. Hunter (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>joshua.sussberg@kirkland.com<br>emily.geier@kirkland.com<br>derek.hunter@kirkland.com<br><br>*Co-Counsel for Debtors and Debtors in Possession* | By :  /s/ John S. Mairo<br>John S. Mairo, Esq.<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>JSMairo@pbnlaw.com<br><br>-and-<br><br>Dean M. Oswald, Esq.<br>(admitted *pro hac vice*)<br>1675 Broadway, Suite 1810<br>New York, New York 10019<br>(212) 265-6888<br>DMOswald@pbnlaw.com<br><br>*Counsel for DPEG Fountains, LP* |

`

7450889