**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

BECKER, GLYNN, MUFFLY, CHASSIN &
HOSINSKI LLP
Alec P. Ostrow, Esq. (admitted *pro hac vice*)
Walter E. Swearingen, Esq.
299 Avenue, 16th Floor
New York, NY  10171
Phone: (212) 888-3033
aostrow@beckerglynn.com
wswearingen@beckerglynn.com

*Attorneys for 200-220 West 26 LLC*

| | |
|---|---|
| In re: | Case No.:  23-13359 (VFP) |
| BED BATH & BEYOND INC., *et al.*, | Chapter:  11 |
| Debtors. | (Jointly Administered) |

## OBJECTION OF 200-220 WEST 26 LLC TO FINAL APPROVAL
## OF DISCLOSURE STATEMENT AND TO CONFIRMATION
## OF AMENDED JOINT CHAPTER 11 PLAN

The objection (the "Objection") of 200-220 West 26 LLC ("200-220 West 26") to the

final approval of the Amended Disclosure Statement Relating to the Amended Joint Chapter 11

Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates  [ECF No. 1713] (the "Disclosure

Statement"), and the confirmation of the Amended Joint Chapter 11 Plan of Bed Bath & Beyond

Inc. and Its Debtor Affiliates [ECF No. 1712] (the "Plan"), by its attorneys, respectfully sets

forth the following:

### Introduction and Summary of Objection

1.      200-220 West 26 is the landlord of the premises leased by Buy Buy Baby Inc.

("Buy Buy Baby"), one of the jointly administered debtors, located at 200-220 West 26th Street,

New York, New York.  The obligations of Buy Buy Baby under the lease were guaranteed by

Bed Bath & Beyond Inc. ("BBBY").   This lease has been rejected by the Debtors and the

rejection has been approved by this Court.  200-220 West 26 has filed proofs of claim against

Buy Buy Baby and BBBY and will file an additional proof of claim against Buy Buy Baby for

rejection damages prior to the deadline for doing so.

2.    200-220 West 26 objects to the Disclosure Statement and the Plan because the

Plan provides for what has been described as "de facto substantive consolidation" even though

the Plan and Disclosure Statement expressly state that no substantive consolidation is provided.

The reason the Plan provides for "de facto substantive consolidation" is that the unsecured

claims against all of the Debtors – all 74 of them – are classified in a single class and receive the

same treatment under the Plan, irrespective of the Debtors against which the claims are asserted.

In essence, the assets and liabilities of the Debtors have been pooled for purposes of distribution.

3.    The Disclosure Statement contains no information regarding the separate assets

and liabilities of each Debtor and whether a creditor with a claim against one or more particular

Debtors will be harmed or benefited from this pooling of assets for distribution.  This does not

allow 200-220 West 26 to make an informed decision whether to accept or reject the Plan.

4.    Because the Plan pools the assets and liabilities of all the Debtors for purposes of

distribution while at the same time purporting to preserve the separate identities of the Debtors

for other purposes, including avoidance actions, such as constructive fraudulent transfer actions

in which one related Debtor paid the debt owed by a different related Debtor ("Wrong Debtor

Paid Avoidance Actions"), the Plan represents an abuse and has not been proposed in good faith.

5.    As a result, the Court should not grant final approval to the Disclosure Statement

and should deny confirmation of the Plan.

4895-4532-7228 v.1

### The Relevant Plan Provisions

6.      Article I.G of the Plan, which is entitled "Nonconsolidated Plan," provides as

follows:  "Although for purposes of administrative convenience and efficiency the Plan has been

filed as joint plan for each of the Debtors and presents together Classes of Claims against, and

Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the

Debtors."

7.      Article III.B of the Plan, which is entitled, "Treatment of Claims and Interests"

contains the formal classification and treatment provisions of the Plan.  Subparagraph 6 contains

the classification and treatment of Class 6, and provides as to classification, "Class 6 consists of

all General Unsecured Claims."  Article I.A, subparagraph 77 defines "General Unsecured

Claim" to mean "any Claim other than (a) an Administrative Claim, (b) an Other Secured Claim,

(c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a FILO Claim, (f) a Junior Secured

Claim, (g) an Intercompany Claim, (h) a DIP Claim, or (i) an ABL Claim . . . ."  Article I.A,

subparagraph 27 defines "Claim" by reference to section 101(5) of the Bankruptcy Code.

Consequently, all General Unsecured Claims against all Debtors, including 200-220 West 26's

claims against Buy Buy Baby and BBBY are classified in Class 6.

8.      Article III.B subparagraph 6 of the Plan provides the following treatment for the

General Unsecured Claims against all 74 Debtors:

> . . . each Holder of an Allowed General Unsecured Claim shall
> receive its *Pro Rata* share of (i) the Shared Proceeds Pool, *only if*
> such proceeds are available after all senior Claims (other than the
> DIP Claims and FILO Claims) are paid in full and (ii) any
> remaining Distributable Proceeds available after payment in full of
> all senior Claims.

It should be noted that the Disclosure Statement at page 8 projects the recovery of Class 6 at 0%

to 2.5%.

4895-4532-7228 v.1

9.       Article IV.F subparagraph 7 of the Plan, entitled "Preservation of Causes of Action," provides in relevant part:

> Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, in accordance with section 1123(b) of the Bankruptcy Code, on the Effective Date, all Causes of Action shall automatically vest in the Wind-Down Debtors, and the Plan Administrator shall have the right and authority to investigate, commence, prosecute, or settle, as appropriate, any of the Non-Released Claims, whether arising before or after the Petition Date.

Article I.A subparagraph 25 defines "Causes of Action" to include "(d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code."

## Requirements of a Disclosure Statement

7.       Section 1125(b) of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan after the commencement of a bankruptcy case "unless, at the time of or before such solicitation, there is transmitted to [the holder of a claim] the plan or a summary of the plan and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" to mean sufficient information that would enable a typical creditor "to make an informed judgment about the plan."

8.       As the Third Circuit has stated, "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *accord Kristal Cadillac-Olds GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003)  The type of

information courts consider in determining whether there is adequate information, stated by then-

Bankruptcy Judge, now-Circuit Judge R. Guy Cole, includes the following:

> 1. The circumstances that gave rise to the filing of the bankruptcy petition;
>
> 2. A complete description of the available assets and their value;
> 3. The anticipated future of the debtor;
>
> 4. The sources of the information provided in the disclosure statement;
>
> 5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;[1]
>
> 6. The condition and performance of the debtor while in Chapter 11;
>
> 7. Information regarding claims against the estate;
>
> 8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;
>
> 9. The accounting and valuation methods used to produce the financial information in the disclosure statement;
>
> 10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;
>
> 11. A summary of the plan of reorganization;
>
> 12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;
>
> 13. The collectability of any accounts receivable;
>
> 14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

---

[1] In light of the Third Circuit's decision in *Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 101 (3d Cir. 1988), which holds that a disclosure statement provides a floor of relevant information, not a ceiling, such a disclaimer may no longer be appropriate.

4895-4532-7228 v.1

15.  Information relevant to the risks being taken by the creditors and interest holders;

16.  The actual or projected value that can be obtained from avoidable transfers;

17.  The existence, likelihood and possible success of non-bankruptcy litigation;

18.  The tax consequences of the plan; and

19.  The relationship of the debtor with affiliates.

*In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *accord In re Budd Co.*, 550 B.R. 407, 412-13 (Bankr. N.D. Ill. 2016); *In re Phoenix Petroleum Co.,* 278 B.R. 385, 393 n.6 (Bankr. E.D. Pa. 2001); *In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996).

9.      With regard to a plan involving multiple debtors, in a reorganization case under the Bankruptcy Act, the Supreme Court held that it was error to confirm a plan of reorganization that had, in effect, consolidated a publicly held parent and its two wholly owned subsidiaries, which had each issued publicly traded bonds, into a new corporation and, without proper apportionment, issued securities to the creditors of each entity.  *Consolidated Rock Prods. Co. v. Du Bois*, 312 U.S. 510-14 (1941).   The Court reasoned that: "In the first place, there must be a determination of what assets are subject to the payment of the respective claims.  This obvious requirement was not met."  *Id.* at 520.  There is nothing in the Bankruptcy Code that has abrogated this rule.  As the Supreme Court has stated on several occasions: "We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."  *Pa. Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 563 (1990); *accord Hamilton v. Lanning*, 560 U.S. 505, 517 (2010); *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 454 (2007)); *see Kelly v. Robinson*, 479 U.S. 36, 47 (1986) ("Just last

6

Term we declined to hold that the new Bankruptcy Code silently abrogated another exception

created by courts construing the old Act.") (citing *Midlantic Nat'l Bank v. N.J. Dep't of Env't*

*Prot.*, 474 U.S. 494 (1986)).

### <u>Final Approval of the Disclosure Statement Should Be Denied</u>

10.     An examination of the Debtors' Disclosure Statement shows the complete

absence of any material financial information, on either a consolidated or debtor-by-debtor basis.

In particular, there is nothing approaching a "complete description of the available assets and

their value" (*Scioto* factor 2); no separate liquidation analysis with dollar values assigned to

assets (*Scioto* factor 8); no estimate of administrative expenses (*Scioto* factor  12); no estimate of

the collectability of any accounts receivable (*Scioto* factor 13); no valuations or *pro forma*

projections (*Scioto* factor 14); no estimate of the value that could be obtained from avoidance

actions (*Scioto* factor 16); and no discussion of the likelihood or probable success of non-

bankruptcy litigation (*Scioto* factor 17).  Although not every factor is relevant to every case, in

this case, there is a disqualifying dearth of financial information in the Disclosure Statement.

11.     Significantly, for a plan that pools assets and liabilities for voting and distribution

purposes without a prior or contemporaneous motion for substantive consolidation, there is a

complete absence of disclosure of the financial condition of each Debtor.  It is respectfully

submitted that in the absence of such disclosure, the creditors of any one Debtor have no idea

whether pooling the assets of all the Debtors is beneficial or harmful to such creditors.  Under

such circumstances, the creditors of these Debtors have not received adequate information within

the meaning of section 1125 of the Bankruptcy Code.

12.     Significantly, the Debtors cannot remedy the lack of disclosure prior to the

solicitation of acceptances and rejections by making the appropriate disclosures in advance of the

confirmation hearing, without providing a new solicitation period.  For these reasons, the final

approval of the Disclosure Statement should be denied.


## Improper *De Facto* Substantive Consolidation

13.     The Third Circuit has defined substantive consolidation in the following manner:

"It treats separate legal entities as if they were merged into a single survivor left with all

cumulative assets and liabilities (save for inter-entity liabilities, which are erased).  The result is

that claims of creditors against separate debtors morph to claims against the consolidated

survivor."  *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (quoting *Genesis Health*

*Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 423 (3d Cir.

2005)) (internal quotation marks omitted).

14.     Although, as stated above, the Plan expressly provides that it is not substantively

consolidating any estates, the classification of General Unsecured Claims against all Debtors in a

single class and the distribution to such class from a pool of the assets of the all the Debtors

provides material effects of substantive consolidation.  Indeed, courts have labeled plans with

similar results, *de facto* substantive consolidation.  *Buchwald Capital Advisors LLC v. JP*

*Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, Bankr. No. 06-12737 (SMB), Adv.

Nos. 07-02780, 08-01734 (SMB), 2009 WL 3806683, at *10 (Bankr. S.D.N.Y. Nov. 10, 2009);

*see In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 317 (Bankr. S.D.N.Y. 2016) (rejecting a *de*

*facto* substantive consolidation objection, when each claim against a debtor was treated as a

separate claim against the applicable debtor, the ballots were generated on a debtor-by-debtor

basis, the voting results were tabulated in the same manner, and the debtors were not pooling

their assets and liabilities, but instead providing the same recovery to the various classes as a

result of a major settlement).  Indeed, without labeling a plan as providing for improper *de facto*

substantive consolidation, the district court in *Schroeder v. New Century Liquidating Trust (In re*

*New Century TRS Holdings, Inc.)*, 407 B.R. 576, 591-92 (D. Del. 2009), reversed confirmation

of a plan that provided such results without satisfying the Third Circuit's requirements for

substantive consolidation.

15.     In the Third Circuit, the test for granting substantive consolidation is:  Either pre-

petition the debtor entities disregarded their separateness so significantly that their creditors

relied on the breakdown of entity borders and treated them as one; or post-petition their assets

and liabilities are so entangled that separating them is prohibitive and hurts all creditors.  *Owens*

*Corning*, 419 F.3d at 211.  *Owens Corning* also enunciated a set of five principles intended to

restrict the use of substantive consolidation.  These are: (1) limiting the cross-creep of liability by

respecting entity separateness; (2) the harms substantive consolidation addresses are nearly

always caused by debtors that disregard separateness (harms caused by creditors' disregard of

separateness are addressed by other remedies, such as fraudulent transfer and equitable

subordination); (3) mere benefit to the administration of the estate by simplifying case or making

post-petition accounting more convenient is insufficient to merit substantive consolidation; (4)

because substantive consolidation is extreme and imprecise, this "rough justice" must be used

rarely and as a last resort; and (5) substantive consolidation may only be used defensively to

remedy harms causes by entangled affairs, and not offensively to disadvantage creditors in the

plan process or otherwise affect their rights.  *Id.*

16.     In the present case, no disclosure and no showing have been made to satisfy either requirement or address any of the five principles set forth in *Owens Corning*.  A plan that provides for such improper *de facto* substantive consolidation should not be confirmed.  *See New Century TRS Holdings*, 407 B.R. at 591-92.

**Improper Preservation of Wrong Debtor Paid Avoidance Actions**

17.     One of the benefits of disavowing substantive consolidation in the Plan, even as the Class 6 creditors of the different Debtors receive the same treatment, is the retention, at least facially, of the ability to pursue Wrong Debtor Paid Avoidance Actions.  The theory of the fraudulent transfer action is actually both simple and standard.  The Debtor that made the transfer, by paying a debt not its own, did not satisfy any of its own antecedent debt, and received no other form of consideration in exchange for the transfer.  In the words of the relevant fraudulent transfer or voidable transaction statutes, the Debtor that paid did not receive reasonably equivalent value in exchange for the payment.  If the debtor was insolvent, undercapitalized, or incurring debts beyond its ability to pay when such debts came due, then the transfer may be avoided and recovered from the initial transferee.  *See* 11 U.S.C. §§ 544(a)-(b), 548(a)(1)(B)(ii)(I)-(III), 550(a)(1); UNIF. VOIDABLE TRANSACTIONS ACT §§ 4(a)(2)(i)-(ii), 5(a).

18.     This kind of avoidance action requires that the Debtor that paid maintains an identity wholly separate from the Debtor that owed the debt.  A unity of interest between these two debts permits a defense that an indirect benefit to the Debtor that paid constitutes reasonable equivalent value.  *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646-47 (3d Cir. 1991); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981).

4895-4532-7228 v.1

19.    An important situation in which indirect benefit is widely recognized is where

"the debtor and the third party are so related or situated that they share an 'identity of interests,'

because what benefits one will, in such case, benefit the other to some degree."   *Garrett v.*

*Falkner (In re Royal Crown Bottlers of N. Ala., Inc.)*, 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982);

*accord Armstrong v. Collins,* No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *28 (S.D.N.Y.

Mar. 24, 2010); *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 667 (S.D. Tex. 2007);

*TeleFest, Inc. v. VU-TV, Inc.*, 591 F. Supp. 1368, 1378 (D.N.J. 1984); *Reinbold v. Morton*

*Community Bank (In re Mid-Illini Hardwoods, Inc.)*, 576 B.R. 598, 607 (Bankr. C.D. Ill. 2017);

*Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt., Inc.)*, 501 B.R. 462, (Bankr.

D. Mass. 2013); *Pembroke Dev. Corp. v. Commonwealth. Sav. & Loan (In re Pembroke Dev.*

*Corp.)*, 124 B.R. 398, 400 (Bankr. S.D. Fla. 1991); *First Nat'l Bank v. Minn. Util. Contracting,*

*Inc. (In re Minn. Util. Contracting, Inc.)*, 101 B.R. 72, 85 (Bankr. D. Minn. 1989).

Of course, if the paying debtor is substantively consolidated with the owing debtor, their identity

of interests is established *a fortiori.*  Stated differently, substantive consolidation eliminates

Wrong Debtor Paid Avoidance Actions. *Moran v. Hong Kong & Shanghai Banking Corp. (in re*

*Deltacorp, Inc.)*, 179 B.R. 773, 779 (Bankr. S.D.N.Y. 1995); *Gill v. Sierra Pac. Constr., Inc. (In*

*re Parkway Calabasas Ltd.)*, 89 B.R. 832, 834, 840 (Bankr. C.D. Cal. 1988), *aff'd*, 949 F.2d

1058 (9th Cir. 1991).

20.    The Plan, by expressly disavowing substantive consolidation, while pooling

liabilities and assets for purposes of voting and distribution, is attempting to obtain an improper

benefit from an inequitable result.  Woe unto the creditors who got paid from the wrong set of

assets pre-petition, but it does not matter at all if these creditors get paid from the same set of

assets post-petition.  This is an abuse of the bankruptcy system and should not be permitted.

**Specific Objections to Confirmation**

21.     <u>Improper Classification</u>:  Because claims against different Debtors with potentially different liquidation values are classified in the same class, the Plan has placed substantially dissimilar claims in the same class in violation of section 1122(a) of the Bankruptcy Code.  *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060 (3d Cir. 1987) (forbidding the placement of dissimilar claims in the same class).  Therefore, the Plan does comply with the application provisions of the Bankruptcy Code and does not satisfy the requirement of confirmation in section 1129(a)(1) of the Bankruptcy Code.

22.     <u>Improper *De Facto* Substantive Consolidation</u>:  Because the Plan improperly provides for *de facto* substantive consolidation without satisfying the requirements of *Owens Corning*, it does not comply with the applicable provisions of the Bankruptcy Code and does not satisfy the requirement of confirmation in section 1129(a)(1) of the Bankruptcy Code.

23.     <u>Solicitation Without a Finally Approved Disclosure Statement</u>:  Because the Court should not grant final approval of the Disclosure Statement, for the reasons stated above, and therefore, the solicitation of acceptances and rejections occurred without a disclosure statement containing adequate information within the meaning of section 1125 of the Bankruptcy Code, the proponent of the Plan has not complied with the applicable provisions of the Bankruptcy Code, and the Plan does not satisfy the requirement of confirmation in section 1129(a)(2) of the Bankruptcy Code.

24.     <u>Improper Preservation of Wrong Debtor Paid Avoidance Actions</u>:  Because the Plan pools assets and liabilities for purposes of voting and distribution while at the same time preserving the separate identities of the Debtor for the purpose of preserving Wrong Debtor Paid

avoidance actions, the Plan was not proposed in good faith and does not satisfy the requirement

of confirmation in section 1129(a)(3) of the Bankruptcy Code.

25.    <u>Failure to Satisfy the Best Interest Test</u>:  Because there is no demonstration of

what each creditor in Class 6 would receive if the particular Debtor against which such creditor's

claim is asserted were liquidated under chapter 7 of the Bankruptcy Code on the effective date of

the Plan, the Plan does not satisfy the requirement of confirmation in section 1129(a)(7) of the

Bankruptcy Code.


**WHEREFORE**, 200-220 West 26 respectfully requests that the Court sustain this

Objection, decline to grant final approval to the Disclosure Statement, deny confirmation of the

Plan, and grant 200-220 West 26 such other and further relief as is just.

Dated:  August 30, 2023

<div style="margin-left:40%">

BECKER, GLYNN, MUFFLY, CHASSIN &
HOSINSKI LLP


By:   <u>s/Walter E. Swearingen</u>
Walter E. Swearingen
Alec P. Ostrow (admitted *pro hac vice*)
299 Avenue, 16th Floor
New York, NY  10171
Phone: (212) 888-3033
wswearingen@beckerglynn.com
aostrow@beckerglynn.com


*Attorneys for 200-220 West 26 LLC*

</div>

## CERTIFICATION OF SERVICE

I hereby certify that in accordance with the Notice the forgoing Objection is being served contemporaneously with its filing with the Court upon the following designated parties via ECF or email:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn.:   Joshua A. Sussberg
          Emily E. Geier
          Derek I. Hunter
          Ross J. Fiedler

Cole Schotz P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Attn.:   Michael D. Sirota
          Warren A. Usatine
          Felice R. Yudkin

Office of the United States Trustee
For the District of New Jersey
One Newark Center, Suite 2100
Newark, New Jersey 07102
Attn.:  Fran B. Steele
          Alexandria Nikolinos

Pachulski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Attn.:   Robert J. Feinstein
          Bradford J. Sandler

I hereby certify under penalty of perjury that the foregoing is true and correct.

Dated:  August 30, 2023           BECKER, GLYNN, MUFFLY, CHASSIN &
                                  HOSINSKI LLP

                                  By: ___s/Walter E. Swearingen_____
                                  Walter E. Swearingen

4895-4532-7228 v.1