BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
Daniel N. Brogan (NJ I.D. #042592012)
Gregory W. Werkheiser (pro hac vice admission to be requested)
1313 North Market Street, Ste. 1201
Wilmington, DE 19801
(302) 442-7010
E-Mail:  dbrogan@beneschlaw.com
         gwerkheiser@beneschlaw.com

*Attorneys for MSC Mediterranean Shipping Company SA*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>Jointly Administered<br><br>**Re: Dkt. No. 1712** |

**MSC MEDITERRANEAN SHIPPING COMPANY SA'S
(I) NOTICE OF ASSERTION OF SETOFF AND RECOUPMENT RIGHTS
AND (II) LIMITED OBJECTION TO AMENDED JOINT CHAPTER 11
PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

MSC Mediterranean Shipping Company SA ("MSC"), by its undersigned counsel, hereby files this (a) notice (the "Setoff Assertion Notice") of assertion and preservation of its right to setoff and/or recoup against, as applicable, the property, obligations, claims, liabilities, causes of action, and/or receivables due from or against, as applicable, the Debtors, the Wind-Down Debtors, any Exculpated Party, and any Released Party and (b) limited objection (the "Limited Objection") to the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor*

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

23204377 v3

*Affiliates* [Dkt. No. 1712] (as amended, modified, or supplemented from time to time, the "Plan"),[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). In support hereof, MSC respectfully states as follows:

## BACKGROUND

A.     **Overview of the Commercial Relationship**

1. MSC is a foreign corporation duly organized and existing under the laws of Switzerland, with a principal place of business located at 12-14 Chemin Rieu CH-1208, Geneva, Switzerland. MSC operates as an ocean carrier and common carrier of goods for hire on ocean-going vessels between, *inter alia*, United States ports and foreign ports.

2. For several years prior to the Debtors' commencement of their ongoing bankruptcy proceedings in this Court, MSC and Bed Bath & Beyond Inc. ("BBBI"), on behalf of itself and certain of its Debtor and non-Debtor direct and indirect subsidiaries (collectively with BBBI, the "BBB Parties") entered into contractual relationships (together with all exhibits, appendices, schedules, and supplements, each as amended from time to time, the "Carrier Agreements") pursuant to which the BBB Parties requested MSC to provide, and MSC did provide, ocean-going container shipping services and related services (collectively, the "Services"). The Carrier Agreements include:

- The Ocean Carrier Agreement (19-524WW), dated July 1, 2019, as amended;

- The Ocean Carrier Agreement (21-418WW), dated May 1, 2021, as amended; and

- The Ocean Carrier Agreement (22-418WW), dated May 1, 2022, as amend.

---

[2]     Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Plan.

2

3. Under the terms of the Carrier Agreements, the BBB Parties agreed to pay MSC at the agreed upon rates and charges for the transportation services provided thereunder. In addition, the BBB Parties agreed under the terms of the Carrier Agreements to compensate MSC in the event that during the applicable terms of such Carrier Agreements they failed to satisfy certain minimum quantity commitments ("MQCs") concerning the volume of cargo to be tendered to MSC for shipment. By providing MSC with MQCs under the Carrier Agreements, the BBB Parties received certain benefits, including the more favorable rates made available to them under the Carrier Agreements.

4. As the Debtors have stated in the amended disclosure statement accompanying their Plan [Dkt. No. 1713] (the "Disclosure Statement") and elsewhere in connection with these chapter 11 cases, in recent years the Debtors have experienced a number of financial and operational setbacks. According to the Debtors, their various business reversals thwarted their efforts to implement a long-term restructuring and resulted in the Debtors' commencing these chapter 11 cases to implement an orderly liquidation of their businesses and assets. *See, e.g.,* Disclosure Statement, 49-55.

5. As of the Petition Date (as defined herein), Debtor BBBI was indebted to MSC under the Carrier Agreements in an aggregate amount not less than $2,008,218.43. Certain other BBB Parties also are indebted to MSC under one or more of the Carrier Agreements in amounts ranging from approximately $7,053.50 to $1,879,515.93.

B. **Procedural Background**

6. The Debtors commenced their chapter 11 cases in this Court by the filing of their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), on April 23, 2023 (the "Petition Date").

7. On May 31, 2023, the Court entered the Order [Dkt. No. 584] (the "Bar Date Order") fixing July 7, 2023 (the "General Claims Bar Date") as the deadline for most creditors, other than governmental units, to file proofs of claim against the Debtors. On July 6, 2023, MSC timely filed proofs of claim against BBBI and the other BBB Parties (the "Proofs of Claim"). Pursuant to the Proofs of Claim, MSC claimed against the applicable Debtors for, among other things, all amounts that were owed to MSC under the Carrier Agreements as of the Petition Date.[3] MSC's Proofs of Claim also reserved in full and disclaimed any waiver of MSC's setoff and recoupment rights against the applicable Debtors. *See, e.g.,* Addendum to MSC-BBBI Claim ¶ 13.

8. On August 2, 2023, the Court entered an Order [Dkt. No. 1716] (the "Solicitation Procedures Order"), *inter alia,* (a) authorizing the Debtors to solicit acceptances of the Plan, (b) conditionally approving the Disclosure Statement, and (c) scheduling a hearing for the Court to consider confirmation of the Plan and final approval of the Disclosure Statement to occur on September 12, 2023, at 2:30 p.m. (prevailing Eastern Time) (the "Combined Hearing"). In addition, the Solicitation Procedures Order fixed September 1, 2023, at 4:00 p.m. (prevailing Eastern Time), as the deadline for, among other things, parties in interest (x) to file objections to confirmation of the Plan, and (y) "opt out" of the Third-Party Release set forth in Article X.D of the Plan.

9. On August 30, 2023, MSC timely submitted forms opting-out of the Plan's Third-Party Release for each of its Proofs of Claim using the Balloting Agent's electronic portal.

---

[3] For the Court's reference, MSC's Proof of Claim against BBBI, which is representative of the other Proofs of Claim MSC has filed, is attached hereto as **Exhibit A** (the "MSC-BBBI Claim").

4

**C.    Debtors' Allegations Against MSC**

10.    Shortly after the Petition Date, Debtor BBBI, represented by the law firm Huth Reynolds LLP, transmitted a demand letter to MSC, dated April 28, 2023.  In this initial demand letter, Debtor BBBI accused MSC of certain violations of the Shipping Act, 46 U.S.C. §§ 40101-40104, arising from MSC's purported failure to fulfill its service commitments and assessment of demurrage and detention charges – allegations that MSC disputes in their entirety.  In subsequent communications, Debtor BBBI and its counsel have continued to pursue such allegations against MSC and have threatened litigation against MSC if their settlement demands are not acceded to by MSC.  Without getting into the specifics of the parties' communications, Debtor BBBI has asserted that it is entitled to recover tens of millions of dollars in damages from MSC.

**D.    Relevant Portions of Debtors' Plan**

11.    Certain components of the Debtors' Plan give rise to the necessity for MSC to file this Setoff Assertion Notice and Limited Objection.  Specifically, while Article X.C of the Plan provides for sweeping releases by the Debtors and their estates of Causes of Action (the "Debtor Release") and Article X.D of the Plan provides for a far-reaching Third-Party Release (the "Third-Party Release"), carved-out from both categories of the Plan's releases are a group of Causes of Action that the Plan defines as "Non-Released Claims". *See* Plan Art. X.C ("Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing Debtor release will release, compromise, impair, or in any way affect any Non-Released Claims, including the D&O Claims.") & Art. X.D ("Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.").

23204377 v3

12. The Plan defines "Non-Released Claims" to include a sub-category of Causes of Action, the Plan defines as "Shipping and Price Gouging Claims". *See* Plan Art. I.A.97. According to the Plan, "Shipping and Price Gouging Claims" are

> collectively, those Claims and Causes of Action of the Debtors, their Affiliates, and any successors or assigns (a) relating to the "fail[ure] to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property," including pricing practices in accordance with 46 U.S. Code § 41102(c) and/or (b) brought under federal maritime law, including, without limitation, the Shipping Act of 1984, 46 U.S.C. §§ 40101 – 41309, the Ocean Shipping Reform Act of 2022, and any similar laws, and in accordance with the 46 C.F.R. §§ 500 – 599.

Plan Art. I.A.143. Although the definition of Shipping and Price Gouging Claims does not mention MSC by name, it refers to Debtors' Causes of Action under the Shipping Act and, thus, plainly appears to encompass those Causes of Action that BBBI has threatened to bring against MSC.

13. Elsewhere in the Plan, the Debtors attempt to strip claimants of their setoff and recoupment rights while simultaneously ensuring that all such setoff and recoupment rights of the Debtors and Wind-Down Debtors are fully preserved. Specifically, Article X.F of the Plan provides, in relevant part, that "all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities" that are subject to the Plan are

> permanently enjoined and precluded, from and after the Effective Date, from … (4) ***asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from [the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties]*** or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise

6

> that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

Plan Art. X.F (hereafter, the "<u>Anti-Setoff Injunction</u>") (emphasis added).[4]

> Similarly, Article X.I of the Plan states:
>
> ***In no event shall any Holder of a Claim be entitled to recoup against any claim, right, or Cause of Action of the Debtors or the Wind-Down Debtors***, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

Plan Art. VI.F (the "<u>Anti-Recoupment Provision</u>") (emphasis added).[5]

14. Conversely, the Plan provides that "all property of the Estates shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances." Plan, Art. IV.F.2. The only exceptions to this broad vesting of estate property (which encompasses all Causes of Action not released) in the Wind-Down Debtors "free and clear" are for the Liens securing the DIP Claims and FILO Claims.

15. Further, the Plan states with respect to the setoff and recoupment rights that the Debtors and the Wind-Down Debtors may assert against MSC and all other Entities subject to the Plan:

> The Debtors or the Wind-Down Debtors, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Wind-Down Debtors may have against the claimant, but neither the failure to do

---

[4] Although less explicit than the Anti-Recoupment Provision, defined below, in its attempt to deem the assertion of setoff rights in a duly filed proof ineffective as a means for a creditor to preserve such setoff rights, it appears that the Debtors are attempting to accomplish the same result through the requirement that setoff rights must be "timely asserted … in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise."

[5] Notice how the Anti-Recoupment Provision is drafted to negate any attempt by a creditor such as MSC to preserve its recoupment rights by asserting those recoupment rights in its proof of claim.

7

so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Wind-Down Debtors of any such Claim it may have against the Holder of such Claim.

Plan Art. VI.F.

### SETOFF ASSERTION NOTICE

16.  Both the Anti-Setoff Injunction and the Anti-Recoupment Provision contain caveats to their respective attempts to extinguish creditors' setoff and recoupment rights. The Anti-Setoff Injunction mandates that setoff rights must be "timely asserted … in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise." Plan Art. X.F. The Anti-Recoupment Provision mandates that any holder of recoupment rights must provide "notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment." Plan Art. VI.F.

17.  **By this Setoff Assertion Notice, MSC hereby provides the Debtors, the Court, and all other parties in interest with notice that MSC asserts and reserves in full any and all setoff and recoupment rights that MSC has or may have, including, but not limited to any and all such setoff and recoupment rights available to MSC, or that may become available to MSC, to offset, reduce or eliminate any liability it may have to the Debtors, the Wind-Down Debtors, or any other Entity on account of any "Shipping and Price Gouging Claims," as defined in Plan Art. I.A.143.**

### PLAN CONFIRMATION OBJECTIONS

18.  MSC objects to the Plan's Anti-Setoff Injunction to the extent that the Anti-Setoff Injunction operates to negate MSC's preservation of its setoff rights by its Proofs of Claim

8

or would result in MSC's Setoff Assertion Notice contained herein being deemed insufficient to preserve in full MSC's setoff rights, including in connection with any purported Shipping and Price Gouging Claims that may be brought against MSC. "[S]ection 553 expressly preserves whatever setoff rights [a creditor] may have under state law." *In re Alta+Cast LLC*, 2004 WL 484881, at *6 (Bankr. D. Del. Mar. 2, 2004). To this end, Section 553 provides that, except as otherwise provided in §§ 362, 363 and 553, the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt." 11 U.S.C. § 553(a). The plain language of the statute therefore makes it clear that a creditor's right of setoff cannot in any way be affected by a plan or the confirmation process over the objections of parties in interest such as MSC that assert and insist upon the preservation of such rights prior to confirmation. *Id. See Citizens Bank v. Strumpf*, 516 U.S. 16, 20 (1995) (finding that "any right of setoff that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code"). *Accord United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536 (3d Cir. 1998); *Alta+Cast LLC*, 2004 WL 484881, at *6 & n.5.

19. In addition, MSC objects to the Plan's Anti-Recoupment Provision insofar as it purports to affect in any way the recoupment rights that MSC currently has or may hereafter acquire. It is well established under Third Circuit precedent that a creditor's right of recoupment under applicable law must be preserved in order to recognize that it is only the net balance of conflicting claims which is the real and just sum owing by or to the debtor. *See, e.g., MegaFoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031 (3d Cir. 1995) (ruling that a claim subject to recoupment "avoids the usual bankruptcy channels" and is permitted even in situations where the Bankruptcy Code does not permit the application of the related doctrine of setoff). *Accord Folger Adam Security. Inc. v. DeMatteis/MacGregor JV,* 209 F.3d 252,

23204377 v3

261-62 (3d Cir. 2000) (holding, in the context of a section 363 sale, that "the right of recoupment is a defense and not an interest and therefore is not extinguished by a § 363(f) sale"); *In re Revel AC, Inc.,* 2016 WL 6155903, at *12 (Bankr. D.N.J. Oct. 21, 2016) (recognizing that courts have held that recoupment obligations have survived plan discharges). Indeed, given that the Debtors' Plan provides for the Debtors' liquidation, the Debtors are not entitled to a discharge under section 1141(d)(3) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, MSC respectfully submits that the Court should (a) deny entry of the Anti-Setoff Injunction contained in the Plan (or any comparable injunction that is included in any order confirming the Plan that the Debtors may propose) unless MSC's preservation in full of its setoff rights by its Proofs of Claim and this Setoff Assertion Notice is recognized in the Plan and any confirmation order, (b) deny confirmation of the Plan unless the Anti-Recoupment Provision is stricken from the Plan in its entirety, and (c) grant MSC such other and further relief as is just and proper.

Date: August 31, 2023
Wilmington, Delaware

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

*/s/ Daniel N. Brogan*
Daniel N. Brogan (NJ I.D. #042592012)
Gregory W. Werkheiser
 (pro hac vice admission to be requested)
1313 North Market Street, Ste. 1201
Wilmington, DE  19801
(302) 442-7010
E-Mail:  dbrogan@beneschlaw.com
           gwerkheiser@beneschlaw.com

*Attorneys for MSC Mediterranean Shipping Company SA*

23204377 v3

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of August, 2023, a true and correct copy of *MSC Mediterranean Shipping Company SA's (I) Notice Of Assertion Of Setoff And Recoupment Rights And (II) Limited Objection To Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* has been electronically filed with the Court via the CM/ECF system and will be served by electronic means through the CM/ECF system to the parties listed below and to all registered CM/ECF participants.

| | |
|---|---|
| Debtors Counsel<br>Kirkland & Ellis LLP<br>Attn: Joshua A. Sussberg,<br>Attn: Emily E. Geier<br>Attn: Derek I. Hunter<br>601 Lexington Avenue<br>New York, New York 10022<br>joshua.sussberg@kirkland.com<br>emily.geier@kirkland.com<br>derek.hunter@kirkland.com | Debtors Counsel<br>Cole Schotz P.C.<br>Michael D. Sirota<br>Warren A. Usatine<br>Felice R. Yudkin<br>25 Main Street Hackensack<br>New Jersey 07601<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com |
| United States Trustee<br>Fran B. Steele, Esq.<br>Alexandria Nikolinos<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Fran.B.Steele@usdoj.gov<br>alexandria.nikolinos@usdoj.gov | Counsel to the Official Committee of Unsecured Creditors<br>Robert J. Feinstein<br>Bradford J. Sandler<br>Pachulski Stang Ziehl & Jones LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com |

    /s/ Daniel N. Brogan
    Daniel N. Brogan (NJ I.D. #042592012)

23204377 v3