# Exhibit A

# United States Bankruptcy Court, District of New Jersey (Newark)

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | |
|---|---|---|---|
| ☒ Bed Bath & Beyond Inc. (Case No. 23-13359) | ☐ Alamo Bed Bath & Beyond Inc. (Case No. 23-13360) | ☐ BBB Canada LP Inc. (Case No. 23-13361) | ☐ BBB Value Services Inc. (Case No. 23-13362) |
| ☐ BBBY Management Corporation (Case No. 23-13363) | ☐ BBBYCF LLC (Case No. 23-13364) | ☐ BBBYTF LLC (Case No. 23-13365) | ☐ bed 'n bath Stores Inc. (Case No. 23-13396) |
| ☐ Bed Bath & Beyond of Annapolis, Inc. (Case No. 23-13366) | ☐ Bed Bath & Beyond of Arundel Inc. (Case No. 23-13367) | ☐ Bed Bath & Beyond of Baton Rouge Inc. (Case No. 23-13368) | ☐ Bed Bath & Beyond of Birmingham Inc. (Case No. 23-13369) |
| ☐ Bed Bath & Beyond of Bridgewater Inc. (Case No. 23-13370) | ☐ Bed Bath & Beyond of California Limited Liability Company (Case No. 23-13371) | ☐ Bed Bath & Beyond of Davenport Inc. (Case No. 23-13372) | ☐ Bed Bath & Beyond of East Hanover Inc. (Case No. 23-13373) |
| ☐ Bed Bath & Beyond of Edgewater Inc. (Case No. 23-13374) | ☐ Bed Bath & Beyond of Falls Church, Inc. (Case No. 23-13375) | ☐ Bed Bath & Beyond of Fashion Center, Inc. (Case No. 23-13376) | ☐ Bed Bath & Beyond of Frederick, Inc. (Case No. 23-13377) |
| ☐ Bed Bath & Beyond of Gaithersburg Inc. (Case No. 23-13378) | ☐ Bed Bath & Beyond of Gallery Place L.L.C. (Case No. 23-13379) | ☐ Bed Bath & Beyond of Knoxville Inc. (Case No. 23-13380) | ☐ Bed Bath & Beyond of Lexington Inc. (Case No. 23-13381) |
| ☐ Bed Bath & Beyond of Lincoln Park Inc. (Case No. 23-13382) | ☐ Bed Bath & Beyond of Louisville Inc. (Case No. 23-13383) | ☐ Bed Bath & Beyond of Mandeville Inc. (Case No. 23-13384) | ☐ Bed, Bath & Beyond of Manhattan, Inc. (Case No. 23-13397) |
| ☐ Bed Bath & Beyond of Opry Inc. (Case No. 23-13385) | ☐ Bed Bath & Beyond of Overland Park Inc. (Case No. 23-13386) | ☐ Bed Bath & Beyond of Palm Desert Inc. (Case No. 23-13387) | ☐ Bed Bath & Beyond of Paradise Valley Inc. (Case No. 23-13388) |
| ☐ Bed Bath & Beyond of Pittsford Inc. (Case No. 23-13389) | ☐ Bed Bath & Beyond of Portland Inc. (Case No. 23-13390) | ☐ Bed Bath & Beyond of Rockford Inc. (Case No. 23-13391) | ☐ Bed Bath & Beyond of Towson Inc. (Case No. 23-13392) |
| ☐ Bed Bath & Beyond of Virginia Beach Inc. (Case No. 23-13393) | ☐ Bed Bath & Beyond of Waldorf Inc. (Case No. 23-13394) | ☐ Bed Bath & Beyond of Woodbridge Inc. (Case No. 23-13395) | ☐ Buy Buy Baby of Rockville, Inc. (Case No. 23-13398) |
| ☐ Buy Buy Baby of Totowa, Inc. (Case No. 23-13399) | ☐ Buy Buy Baby, Inc. (Case No. 23-13400) | ☐ BWAO LLC (Case No. 23-13401) | ☐ Chef C Holdings LLC (Case No. 23-13402) |
| ☐ Decorist, LLC (Case No. 23-13403) | ☐ Deerbrook Bed Bath & Beyond Inc. (Case No. 23-13404) | ☐ Harmon of Brentwood, Inc. (Case No. 23-13405) | ☐ Harmon of Caldwell, Inc. (Case No. 23-13406) |
| ☐ Harmon of Carlstadt, Inc. (Case No. 23-13407) | ☐ Harmon of Franklin, Inc. (Case No. 23-13408) | ☐ Harmon of Greenbrook II, Inc. (Case No. 23-13409) | ☐ Harmon of Hackensack, Inc. (Case No. 23-13410) |
| ☐ Harmon of Hanover, Inc. (Case No. 23-13411) | ☐ Harmon of Hartsdale, Inc. (Case No. 23-13412) | ☐ Harmon of Manalapan, Inc. (Case No. 23-13413) | ☐ Harmon of Massapequa, Inc. (Case No. 23-13414) |
| ☐ Harmon of Melville, Inc. (Case No. 23-13415) | ☐ Harmon of New Rochelle, Inc. (Case No. 23-13416) | ☐ Harmon of Newton, Inc. (Case No. 23-13417) | ☐ Harmon of Old Bridge, Inc. (Case No. 23-13418) |
| ☐ Harmon of Plainview, Inc. (Case No. 23-13419) | ☐ Harmon of Raritan, Inc. (Case No. 23-13420) | ☐ Harmon of Rockaway, Inc. (Case No. 23-13421) | ☐ Harmon of Shrewsbury, Inc. (Case No. 23-13422) |
| ☐ Harmon of Totowa, Inc. (Case No. 23-13423) | ☐ Harmon of Wayne, Inc. (Case No. 23-13424) | ☐ Harmon of Westfield, Inc. (Case No. 23-13425) | ☐ Harmon of Yonkers, Inc. (Case No. 23-13426) |
| ☐ Harmon Stores, Inc. (Case No. 23-13427) | ☐ Liberty Procurement Co. Inc. (Case No. 23-13428) | ☐ Of a Kind, Inc. (Case No. 23-13429) | ☐ One Kings Lane LLC (Case No. 23-13430) |
| ☐ San Antonio Bed Bath & Beyond Inc.(Case No. 23-13431) | ☐ Springfield Buy Buy Baby, Inc. (Case No. 23-13432) | | |

**Claim Number: 12612**

Modified Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

MSC Mediterranean Shipping Company SA
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor     Mediterranean Shipping Company; MSC

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

c/o Benesch, Friedlander, Coplan & Aronoff LLP
Attn: Gregory W. Werkheiser
1313 N. Market St., Suite 1201

Wilmington
DE
19801

Contact phone  302-442-7010
Contact email  gwerkheiser@beneschlaw.com

Where should payments to the creditor be sent? (if different)

Attn: Vera Bykova, Legal Counsel
12-14 Chemin Rieu

1208 Geneva

Switzerland

Contact phone  +41 22 703 9150
Contact email  vera.bykova@msc.com

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known)_____

Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☐ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7. How much is the claim?**

$ 2,008,218.43   . Does this amount include interest or other charges?

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Shipping and related services; associated interest, fees & charges.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:  Cargo

**Basis for perfection:** Maritime, statutory, common law and contract lien rights

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ____TBD____

**Amount of the claim that is secured:** $ ____TBD____

**Amount of the claim that is unsecured:** $ ____TBD____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ____TBD____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☑ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☑ Other. Specify subsection of 11 U.S.C. § 507(a)$_{(6)}^{507(a)(i)}$ that applies. | $ ____TBD____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| | | |
|---|---|---|
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $ _____ |

| | |
|---|---|
| **14. Is all or part of the claim being asserted as an administrative expense claim?** | ☐ No<br><br>☑ Yes. **Indicate the amount of your claim for costs and expenses of administration of the estates pursuant to 503(b), other than section 503(b)(9), or 507(a)(2). Attach documentation supporting such claim. If yes, please indicate when this claim was incurred:** |

| | |
|---|---|
| ☑ **On or prior to June 27, 2023:** | $ _____ TBD |
| ☐ **After June 27, 2023:** | $ _____ |
| **Total Administrative Expense Claim Amount:** | $ _____ TBD |

**THIS SECTION SHOULD ONLY BE USED BY CLAIMANTS ASSERTING AN ADMINISTRATIVE EXPENSE CLAIM ARISING AGAINST ONE OF THE ABOVE DEBTORS FOR POSTPETITION ADMINISTRATIVE CLAIMS. THIS SECTION SHOULD NOT BE USED FOR ANY CLAIMS THAT ARE NOT OF A KIND ENTITLED TO PRIORITY IN ACCORDANCE WITH 11 U.S.C. §§ 503(B) AND 507(A)(2); PROVIDED, HOWEVER; THIS SECTION SHOULD NOT BE USED FOR CLAIMS PURSUANT TO SECTION 503(B)(9) OF THE BANKRUPTCY CODE.**

---

**Part 3:    Sign Below**

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |

_____    07/06/2023

Signature

**Name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Paolo Magnani |
| | First name          Middle name          Last name |
| Title | Exec. V.P. |
| Company | Identify the corporate servicer as the company if the authorized agent is a servicer.<br>MSC Mediterranean Shipping Company (USA) Inc. |
| Address | 420 Fifth Avenue |
| | Number          Street |
| | New York          NY          10018 |
| | City          State          ZIP Code |
| Contact phone | 212 764 4800          Email          paolomagnani@msc.com |

**Additional Noticing Addresses (if provided):**

**Additional Address 1**

| | |
|---|---|
| Name: | MSC Mediterranean Shipping Company SA |
| Address1: | Attn: Vera Bykova, Legal Counsel |
| Address2: | 12-14 Chemin Rieu |
| Address3: | |
| Address4: | |
| City: | 1208 Geneva |
| State: | |
| Postal Code: | |
| Country: | Switzerland |

Contact Phone: +41 22 703 9150
Contact Email: vera.bykova@msc.com

---

**Additional Address 2**

Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

- [x] Yes
- [ ] No

--------------------------------------------------------------------------------------------------------------

Attachment Filename:

MSC - Bed Bath Beyond Inc POC Final.pdf

**KROLL**

# United States Bankruptcy Court, District of New Jersey (Newark)

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | |
|---|---|---|---|
| ¨ Bed Bath & Beyond Inc. (Case No. 23-13359) | ¨ Alamo Bed Bath & Beyond Inc. (Case No. 23-13360) | ¨ BBB Canada LP Inc. (Case No. 23-13361) | ¨ BBB Value Services Inc. (Case No. 23-13362) |
| ¨ BBBY Management Corporation (Case No. 23-13363) | ¨ BBBYCF LLC (Case No. 23-13364) | ¨ BBBYTF LLC (Case No. 23-13365) | ¨ bed 'n bath Stores Inc. (Case No. 23-13396) |
| ¨ Bed Bath & Beyond of Annapolis, Inc. (Case No. 23-13366) | ¨ Bed Bath & Beyond of Arundel Inc. (Case No. 23-13367) | ¨ Bed Bath & Beyond of Baton Rouge Inc. (Case No. 23-13368) | ¨ Bed Bath & Beyond of Birmingham Inc. (Case No. 23-13369) |
| ¨ Bed Bath & Beyond of Bridgewater Inc. (Case No. 23-13370) | ¨ Bed Bath & Beyond of California Limited Liability Company (Case No. 23-13371) | ¨ Bed Bath & Beyond of Davenport Inc. (Case No. 23-13372) | ¨ Bed Bath & Beyond of East Hanover Inc. (Case No. 23-13373) |
| ¨ Bed Bath & Beyond of Edgewater Inc. (Case No. 23-13374) | ¨ Bed Bath & Beyond of Falls Church, Inc. (Case No. 23-13375) | ¨ Bed Bath & Beyond of Fashion Center, Inc. (Case No. 23-13376) | ¨ Bed Bath & Beyond of Frederick, Inc. (Case No. 23-13377) |
| ¨ Bed Bath & Beyond of Gaithersburg Inc. (Case No. 23-13378) | ¨ Bed Bath & Beyond of Gallery Place L.L.C. (Case No. 23-13379) | ¨ Bed Bath & Beyond of Knoxville Inc. (Case No. 23-13380) | ¨ Bed Bath & Beyond of Lexington Inc. (Case No. 23-13381) |
| ¨ Bed Bath & Beyond of Lincoln Park Inc. (Case No. 23-13382) | ¨ Bed Bath & Beyond of Louisville Inc. (Case No. 23-13383) | ¨ Bed Bath & Beyond of Mandeville Inc. (Case No. 23-13384) | ¨ Bed, Bath & Beyond of Manhattan, Inc. (Case No. 23-13397) |
| ¨ Bed Bath & Beyond of Opry Inc. (Case No. 23-13385) | ¨ Bed Bath & Beyond of Overland Park Inc. (Case No. 23-13386) | ¨ Bed Bath & Beyond of Palm Desert Inc. (Case No. 23-13387) | ¨ Bed Bath & Beyond of Paradise Valley Inc. (Case No. 23-13388) |
| ¨ Bed Bath & Beyond of Pittsford Inc. (Case No. 23-13389) | ¨ Bed Bath & Beyond of Portland Inc. (Case No. 23-13390) | ¨ Bed Bath & Beyond of Rockford Inc. (Case No. 23-13391) | ¨ Bed Bath & Beyond of Towson Inc. (Case No. 23-13392) |
| ¨ Bed Bath & Beyond of Virginia Beach Inc. (Case No. 23-13393) | ¨ Bed Bath & Beyond of Waldorf Inc. (Case No. 23-13394) | ¨ Bed Bath & Beyond of Woodbridge Inc. (Case No. 23-13395) | ¨ Buy Buy Baby of Rockville, Inc. (Case No. 23-13398) |
| ¨ Buy Buy Baby of Totowa, Inc. (Case No. 23-13399) | ¨ Buy Buy Baby, Inc. (Case No. 23-13400) | ¨ BWAO LLC (Case No. 23-13401) | ¨ Chef C Holdings LLC (Case No. 23-13402) |
| ¨ Decorist, LLC (Case No. 23-13403) | ¨ Deerbrook Bed Bath & Beyond Inc. (Case No. 23-13404) | ¨ Harmon of Brentwood, Inc. (Case No. 23-13406) | ¨ Harmon of Caldwell, Inc. (Case No. 23-13406) |
| ¨ Harmon of Carlstadt, Inc. (Case No. 23-13407) | ¨ Harmon of Franklin, Inc. (Case No. 23-13408) | ¨ Harmon of Greenbrook II, Inc. (Case No. 23-13409) | ¨ Harmon of Hackensack, Inc. (Case No. 23-13410) |
| ¨ Harmon of Hanover, Inc. (Case No. 23-13411) | ¨ Harmon of Hartsdale, Inc. (Case No. 23-13412) | ¨ Harmon of Manalapan, Inc. (Case No. 23-13413) | ¨ Harmon of Massapequa, Inc. (Case No. 23-13414) |
| ¨ Harmon of Melville, Inc. (Case No. 23-13415) | ¨ Harmon of New Rochelle, Inc. (Case No. 23-13416) | ¨ Harmon of Newton, Inc. (Case No. 23-13417) | ¨ Harmon of Old Bridge, Inc. (Case No. 23-13418) |
| ¨ Harmon of Plainview, Inc. (Case No. 23-13419) | ¨ Harmon of Raritan, Inc. (Case No. 23-13420) | ¨ Harmon of Rockaway, Inc. (Case No. 23-13421) | ¨ Harmon of Shrewsbury, Inc. (Case No. 23-13422) |
| ¨ Harmon of Totowa, Inc. (Case No. 23-13423) | ¨ Harmon of Wayne, Inc. (Case No. 23-13424) | ¨ Harmon of Westfield, Inc. (Case No. 23-13425) | ¨ Harmon of Yonkers, Inc. (Case No. 23-13426) |
| ¨ Harmon Stores, Inc. (Case No. 23-13427) | ¨ Liberty Procurement Co. Inc. (Case No. 23-13428) | ¨ Of a Kind, Inc. (Case No. 23-13429) | ¨ One Kings Lane LLC (Case No. 23-13430) |
| ¨ San Antonio Bed Bath & Beyond Inc. (Case No. 23-13431) | ¨ Springfield Buy Buy Baby, Inc. (Case No. 23-13432) | | |

Modified Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| 1. | Who is the current creditor? | |
|---|---|---|
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| 2. | Has this claim been acquired from someone else? | ☐ No<br>☐ Yes. From whom? |
|---|---|---|

| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | | Contact phone _____ | Contact phone _____ |
| | | Contact email _____ | Contact email _____ |

| 4. | Does this claim amend one already filed? | ☐ No<br>☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on ____ / ____ / ____<br>MM  /  DD  /  YYYY |
|---|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☐ No<br>☐ Yes. Who made the earlier filing? _____ |
|---|---|---|

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____ |
|---|---|---|

| 7. | How much is the claim? | $_____ . Does this amount include interest or other charges?<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information. |
|---|---|---|

| 9. **Is all or part of the claim secured?** | ☐ No |
|---|---|

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                                        $_____

**Amount of the claim that is secured:**          $_____

**Amount of the claim that is unsecured:**   $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed
☐ Variable

| 10. **Is this claim based on a lease?** | ☐ No |
|---|---|

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

| 11. **Is this claim subject to a right of setoff?** | ☐ No |
|---|---|

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No |
|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check one:*

|  | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| | | |
|---|---|---|
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No | |
| | ☐ **Yes.** Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $ _____ TBD |

| | | |
|---|---|---|
| **14. Is all or part of the claim being asserted as an administrative expense claim?** | ☐ No | |
| | ☐ **Yes.** Indicate the amount of your claim for costs and expenses of administration of the estates pursuant to 503(b), other than section 503(b)(9), or 507(a)(2). Attach documentation supporting such claim.  If yes, please indicate when this claim was incurred: | |
| | ☐ On or prior to June 27, 2023: | $ _____ TBD |
| | ☐ After June 27, 2023: | $ _____ TBD |
| | Total Administrative Expense Claim Amount: | $ _____ TBD |

THIS SECTION SHOULD ONLY BE USED BY CLAIMANTS ASSERTING AN ADMINISTRATIVE EXPENSE CLAIM ARISING AGAINST ONE OF THE ABOVE DEBTORS FOR POSTPETITION ADMINISTRATIVE CLAIMS. THIS SECTION SHOULD NOT BE USED FOR ANY CLAIMS THAT ARE NOT OF A KIND ENTITLED TO PRIORITY IN ACCORDANCE WITH 11 U.S.C. §§ 503(B) AND 507(A)(2); PROVIDED, HOWEVER; THIS SECTION SHOULD NOT BE USED FOR CLAIMS PURSUANT TO SECTION 503(B)(9) OF THE BANKRUPTCY CODE.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   07/06/2023
                          MM / DD / YYYY

_____
Signature

**Name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Paolo | | Magnani |
| | First name | Middle name | Last name |
| Title | Exec. V.P., MSC Mediterranean Shipping Company (USA) Inc. | | |
| Company | duly authorized agent for MSC Mediterranean Shipping Company SA | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 420 Fifth Avenue | | |
| | Number          Street | | |
| | New York | NY | 10018 |
| | City | State | ZIP Code |
| Contact phone | +1 212 764 4800 x 41674 | Email | paolomagnani@msc.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | Jointly Administered |

**ADDENDUM TO PROOF OF CLAIM OF**
**MSC MEDITERRANEAN SHIPPING COMPANY SA**

MSC Mediterranean Shipping Company SA (the "Claimant"), hereby files this addendum

to its proof of claim (the "Claim") or "Proof of Claim") and, in support thereof, states as follows:

**BASIS FOR PROOF OF CLAIM**

1.      Bed Bath & Beyond Inc. ("BBBI") and its debtor affiliates listed in Column #1 of

**Exhibit A** hereto (the "19-524WW Contract Debtor Parties") are indebted to Claimant pursuant

to that certain Ocean Carrier Agreement (19-524WW), dated July 1, 2019, by and between

Claimant and BBBI on behalf of itself and the 19-524WW Contract Debtor Parties (as amended,

supplemented, extended, restated, or otherwise modified from time to time, the "19-524WW

OCA").  A true and correct copy of the 19-524WW OCA (without its associated rate schedules,

which are Claimant's proprietary information and confidential) is attached hereto as **Exhibit B**

and is incorporated herein by reference.

2.      BBBI and its debtor affiliates listed in Column #2 of **Exhibit A** hereto (the "21-

418WW Contract Debtor Parties") are indebted to Claimant pursuant to that certain Ocean

Carrier Agreement (21-418WW), dated May 1, 2021, by and between Claimant and BBBI on

---

[1]      The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete
list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be
obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.
The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service
address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

behalf of itself and the 21-418WW Contract Debtor Parties (as amended, supplemented, extended, restated, or otherwise modified from time to time, the "21-418WW  OCA"). A true and correct copy of the 21-418WW OCA (without its associated rate schedules, which are Claimant's proprietary information and confidential) is attached hereto as **Exhibit C** and is incorporated herein by reference.

3.      BBBI and its debtor affiliates listed in Column #3 of **Exhibit A** hereto (the "22-418WW Contract Debtor Parties," and together with the 19-524WW Contract Debtor Parties and the 21-418WW Contract Debtor Parties, the "Debtor Obligors") are indebted to Claimant pursuant to that certain Ocean Carrier Agreement (22-418WW)*, dated May 1, 2022, by and between Claimant and BBBI on behalf of itself and the 22-418WW Contract Debtor Parties (as amended, supplemented, extended, restated, or otherwise modified from time to time, the "22-418WW  OCA," and together with the 19-524WW OCA and the 21-418WW OCA, the "Carrier Agreements"). A true and correct copy of the 22-418WW OCA (without its associated rate schedules, which are Claimant's proprietary information and confidential) is attached hereto as **Exhibit D** and is incorporated herein by reference.

4.      On April 23, 2023 (the "Petition Date), the Debtor Obligors and certain of their affiliates filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq*., the "Bankruptcy Code").

5.      By the Proof of Claim and this Addendum (including its Exhibits), Claimant asserts any and all claims that Claimant may hold against any and all Debtor Obligors arising under or relating to the Carrier Agreements, any Bills of Lading issued under or in connection with such Carrier Agreements, any and all related documents, and otherwise under applicable law.  Specifically, under the Carrier Agreements and the Bills of Lading issued pursuant thereto

Claimant from time to time at the request of the Debtor Obligors provided ocean going cargo shipping and related services to or for the benefit of the Debtor Obligors in consideration of their payment and performance of the Debtor Obligors' obligations under the applicable Carrier Agreements and related Bills of Lading.

6.      As of the Petition Date, each of the 19-524WW Contract Debtor Parties was indebted to Claimant under the 19-524WW OCA and associated Bills of Lading in an amount not less than $7,053.50 (exclusive of accruing fees, including, without limitation, attorneys' fees, costs, expenses, and other charges allowable under the Bankruptcy Code). Invoices evidencing the basis for foregoing amount owed by 19-524WW Contract Debtor Parties are summarized in the schedule attached hereto as **Exhibit E**, which is incorporated herein by reference.[2]

7.      As of the Petition Date, each of the 21-418WW Contract Debtor Parties was indebted to Claimant under the 21-418WW OCA and associated Bills of Lading in an amount not less than $121,649.00 (exclusive of accruing fees, including, without limitation, attorneys' fees, costs, expenses, and other charges allowable under the Bankruptcy Code). Invoices evidencing the basis for foregoing amount owed by 21-418WW Contract Debtor Parties are summarized in the schedule attached hereto as **Exhibit E**, which is incorporated herein by reference.

8.      As of the Petition Date, each of the 22-418WW Contract Debtor Parties was indebted to Claimant under the 22-418WW OCA and associated Bills of Lading in an amount not less than $1,879,515.93 (exclusive of accruing fees, including, without limitation, attorneys' fees, costs, expenses, and other charges allowable under the Bankruptcy Code). Invoices

---

[2]      Copies of the invoices identified in Exhibit E are voluminous and, accordingly, are not attached hereto. Although copies of such invoices should already be in the possession of the Debtors, Claimant will make copies of such invoices available upon reasonable request.

evidencing the basis for foregoing amount owed by 22-418WW Contract Debtor Parties are summarized in the schedule attached hereto as **Exhibit E**, which is incorporated herein by reference.

       9.     Further, following the Petition Date, representatives of the Debtor Obligors accepted delivery of the following shipping containers and their associated contents, which were then still in Claimant's possession, custody or control:

| Container Type | Container | Bill of Lading | Port of Load | Port of Discharge |
|---|---|---|---|---|
| 40HC | MSDU6729350 | MEDUIF639229 | NHAVA SHEVA | LONG BEACH |
| 40HC | SEGU6970644 | MEDUIF639229 | NHAVA SHEVA | LONG BEACH |
| 40DV | MSDU4161960 | MEDUIU040784 | NHAVA SHEVA | LONG BEACH |
| 40DV | INBU5373665 | MEDUIF903815 | NHAVA SHEVA | LONG BEACH |

Claimant agreed to release the foregoing shipping containers and their contents based on the representations of the Debtor Obligors that Claimant would be paid in full for all amounts owed to Claimants in respect of the foregoing shipping containers and their contents. Claimant is still verifying whether it has received the agreed upon payment from the Debtor Obligors in for the release of the foregoing containers and their contents. To the extent that Claimant has not been paid by the Debtor Obligors on account of Claimant's release to the Debtor Obligors of the foregoing containers and their contents, Claimant is entitled to and hereby asserts the following for all such amounts that remain due and owing to Claimant: (a) a priority administrative expense claim pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code; (b) and any and all maritime, statutory, common law and contractual liens in favor of Claimant as to the containers, the contents thereof, and any and all proceeds of the foregoing.

       10.    In addition to the amounts set forth above generated under the Carrier Agreements, under Section 24(A) of each of the Carrier Agreements the Debtor Obligors, as applicable, agreed to indemnify and hold harmless, and to pay all losses and damages incurred

by Claimant and its related parties as identified therein from all manner of liabilities, damages, fines, penalties, losses, costs and expenses as more fully set forth in the applicable Carrier Agreement.  Although Claimant is not currently aware of any claims it may hold under Section 24 of the Carrier Agreements or any other sections of the Carrier Agreements requiring indemnification or reimbursement of fees and expenses, it hereby reserves its right to amend this claim to reflect any such amounts or claims.

11.     The Carrier Agreements are executory contracts under 11 U.S.C. § 365.  To the extent that any Debtor Obligor rejects a Carrier Agreement, Claimant anticipates that there will be damages related to such rejection.  Claimant hereby reserves its rights to update and modify the Proof of Claim and this Addendum to reflect any such rejection damages, which may include, among other things, costs and attorneys' fees.

## RESERVATION OF RIGHTS

12.     Claimant reserves the right to: (a) amend, supplement or otherwise modify this Proof of Claim and Addendum at any time, including after the applicable bar date, and in any manner; and (b) file additional proofs of claim for any additional claim(s), which may be based on the same or additional documents or grounds of liability, including, without limitation, administrative expense claims for obligations under either Carrier Agreement that accrued postpetition or other damages related to the failure of any Debtor Obligor to pay the sums due under same, or arising from the rejection of either Carrier Agreement.

13.     The filing of this Proof of Claim is not and shall not be deemed or construed as: (a) a waiver or release by Claimant of any rights against any person, entity, or property, including, but not limited to, any and all rights of contribution from non-debtor third parties; (b) a consent by Claimant to the jurisdiction of this Court or any other court with respect to

proceedings, if any, commenced in any case otherwise involving Claimant; (c) a waiver or release of Claimant's right to a jury trial, or Claimant's consent to trial by jury conducted by this Court, as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related thereto, notwithstanding the designation or not of such matters as core proceedings pursuant to 28 U.S.C. § 157 or otherwise; (d) a waiver or release of Claimant's right to have, or to assert that, any and all final orders in any and all matters or proceedings be entered only after *de novo* review by the United States District Court; (e) a waiver of Claimant's right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto, or other proceeding which may be commenced in the Bankruptcy Case or otherwise involving Claimant; (f) an election of remedies or choice of law; (g) a waiver or release of, or any limitation on, Claimant's right to assert that any portion of the claims asserted herein are entitled to treatment as priority claims or as administrative claims under sections 503(b) and 507(a) of the Bankruptcy Code; (h) an admission of any kind; or (i) a waiver of any rights, claims, actions or defenses, setoffs, recoupments or other matters as to which Claimant is entitled under any agreements, at law, in equity, or otherwise, regardless of whether expressly referenced herein but expressly including its rights as a holder of administrative claims for services provided postpetition under either Carrier Agreement and the ability to setoff such amounts against amounts arising postpetition under other agreements between Claimant and any Debtor Obligor.

## Exhibit A

| COLUMN #1 | COLUMN #2 | COLUMN #3 |
|---|---|---|
| **Debtors on OCA 19-524ww, dated 1 JULY 2019, as amended** | **Debtors on OCA 21-418ww, dated 1 May 2021, as amended** | **Debtors on OCA 22-418ww, dated 1 May 2022, as amended** |
| Bed Bath & Beyond Inc. | Bed Bath & Beyond Inc. | Bed Bath & Beyond Inc. |
| Bed Bath & Beyond of California, LLC | Buy Buy Baby, Inc. | Liberty Procurement Co., Inc. |
| Buy Buy Baby Inc. | Harmon Stores, Inc. | Buy Buy Baby, Inc. |
| Harmon Stores, Inc. | | Harmon Stores, Inc. |
| Liberty Procurement Co., Inc. | | BBB Canada LP Inc. |
| One Kings Lane LLC | | |

22972911 v1

## NANTUCKET DISTRIBUTING CO., LLC SERVICE CONTRACT
### SVC 19-524WW

**(AMN 2)**
**TERMS AND CONDITIONS**

THIS SERVICE CONTRACT ("Contract"), made and entered into as of the 01st July, 2019 by and between Bed Bath & Beyond Inc., with its principal offices at 650 Liberty Avenue Union, NJ 07083 United States of America and its affiliates as listed in Appendix A (hereinafter collectively referred to as "Shipper"), and MSC Mediterranean Shipping Company SA, with its principal offices at Chemin Rieu 12-14, Geneva 1208, Switzerland (hereinafter called "Carrier").

## 1. DEFINITIONS

"Bill of Lading" means the Carrier's bill of lading or sea waybill as the case may be.

"Carriage of Goods by Sea Act" or "COGSA" means the Carriage of Goods by Sea Act, set forth in the note following 46 U.S.C. Sec. 30701.

"Carrier" means MSC Mediterranean Shipping Company SA

"Consignee" means the person entitled to take delivery of the Goods and named on the Bill of Lading as such.

"Container" means an ISO standard container. The term includes dry cargo, refrigerated and flat rack containers.

"Contract" shall mean this Service Contract, including all appendices attached hereto and such other documents as are expressly named herein, all of which are expressly incorporated herein by this reference.

"Customary Freight Unit" means any physical unit of cargo not shipped in a package, including machinery and vehicles (whether new or used) and shall have the meaning given to it by the jurisprudence of the Maritime Law of the United States.

"Freight Charges" means the remuneration payable to Carrier for the carriage of Goods under this Contract.

"Goods" means the merchandise, articles and commodities specified or identified in this Service Contract or the appendices annexed hereto and include the packing, the packaging material and container not supplied by or on behalf of Carrier.

"MQC" shall mean Minimum Quantity Commitment specified in this Contract.

"Package" means a material unit containing Shipper's Goods, notwithstanding its weight, dimension or volume. Notwithstanding anything to the contrary, the loaded Container shall not be considered to be or construed as the package or unit.

"Port-to-Door" means through transportation of a Container and its contents from a foreign port to a domestic facility of Shipper.

"Port-to-Port" means transportation of a Container and its contents from a foreign port to a domestic port.

"Shipper" means Nantucket Distributing Co., LLC and its affiliates listed in Appendix A (whether in the capacity as the consignor, consignee or owner of the Goods) and anyone authorized to act on their behalf.

"Sub-Contractor" means owners and operators of vessels (other than Carrier), stevedores, terminal, warehouse, road and rail transport operators, motor carriers and any independent contractor employed by a Carrier in the performance of the carriage and any sub-sub-contractor thereof.

"Vessel," means the vessel named in the Bill of Lading, and any feeder vessel, lighter or barge used by or on behalf of a Carrier in connection with any seaborne leg of the carriage.

Initial capitalization on terms defined is not required in the use of any of the foregoing defined terms.

## 2. APPLICATION

A.  The provisions of this Contract are applicable to all services requested by Shipper and provided by Carrier during the term of the Contract, and to all shipments duly tendered by Shipper and accepted by Carrier and may continue to apply even if Shipper's MQC has been satisfied, upon mutual agreement.

Sensitivity: Internal

B.  Shipper may add to or diminish the amount covered hereunder by notice to Carrier and amendment of this Contract at any time.  Consent to such amendment shall not be unreasonably withheld.

C.  The terms and conditions of this Contract shall at all times govern all responsibilities of Carrier in connection with or arising out of the acceptance and carriage of Shipper's Goods.  The terms and conditions of any Bill of Lading issued by Carrier shall also apply to the acceptance and carriage of Shipper Goods, but to the extent they conflict in any way with any term or condition of this Contract, this Contract shall govern.

D.  The provisions of this Contract are applicable without regard to the nationality of the Vessel, Carrier, its sub-contractors, Shipper or any other interested person.

G.  For the purpose of this Contract, Carrier is deemed to be in charge of the Goods from the time it has taken over the Goods from the Shipper, or a person acting on its behalf until the time it has delivered the Goods, by handing over the Goods to Consignee or Shipper; or in cases where Shipper does not receive the Goods from Carrier, by placing them at the disposal of Consignee or Shipper in accordance with the Contract.

3.  TERM OF CONTRACT

This Contract shall be effective and shall be for a term of 52 weeks as set forth in Appendix D, unless earlier terminated as provided below, or extended by agreement of the parties hereto (the "Parties").

4.  TERMINATION

A.  This Contract is subject to early termination only as follows:

(1)  by either Party effective immediately for any material breach hereof by the other Party which remains uncured thirty (30) days after notice from the aggrieved Party to the offending Party, specifying the nature of the breach; or if it will take more than thirty (30) days to cure the breach, the cure has not commenced within thirty (30) days or is not diligently pursued thereafter; or

(2)  by either Party effective upon ten (10) days' notice if a Force Majeure condition as defined herein is declared by the other Party and continues unabated for a period exceeding twenty (20) consecutive days.

B.  If this Contract is required to be filed with the Federal Maritime Commission ("FMC"), Carrier shall promptly notify the FMC of early termination in the manner required by that agency.

C.  Upon the termination or expiration of the Contract, each Party shall promptly assist the other with removal of all Goods and other owned or leased materials, products and equipment then within its care, custody or control. Each Party shall bear the actual and reasonable expenses incurred in fulfilling its obligations hereunder. In the event of early termination for breach, the obligation of the non-breaching Party with respect to MQC shall be reduced to the amount shipped as of termination.

D.  The Parties intend that the contractual arrangement be continuous in nature until such time as the Contract terminates or is terminated by one or both of the Parties. In the event that no agreement is reached this Contract shall be terminated.

E.  Termination or expiration of the Contract shall not relieve or release either Party from any rights, liabilities, or obligations that have previously accrued under law or the terms of the Contract.

5.  GOODS

The Goods to which this Contract applies are all those commodities and materials specified or described in Appendix D annexed hereto.

6.  PORTS OF ORIGIN

The Ports of Origin to which this Contract applies are specified or described in Appendix D annexed thereto.

7.  PORTS OF DESTINATION

The Ports of Destination to which this Contract applies are specified or described in Appendix D annexed thereto.

8. LOADING PORTS, DISCHARGE PORTS AND INTERMODAL PORTS

The Loading Ports, Discharge Ports and Intermodal Ports to which this Contract applies are specified or described in Appendix B annexed thereto.

9. MINIMUM QUANTITY COMMITMENT; FORECASTS

A. Shipper agrees to tender to Carrier, and Carrier agrees to accept from Shipper, the minimum quantity commitment (hereinafter MQC) specified in this Contract. Shipments shall be deemed within the scope of this Contract and shall be counted toward the MQC if made by Shipper or by an authorized agent on behalf of Shipper.

For purposes of calculating the MQC the following FEU Equivalent conversion table will apply:

| | | |
|---|---|---|
| 20' container | 0.5 | FEU – or 1 TEU |
| 40' container | 1.0 | FEU – or 2 TEUs |
| 40' H/C container | 1.125 | FEU |

B. Forecasts. In order to facilitate load planning, Shipper will provide Carrier with regular thirty (30) day rolling forecasts by origin and destination.

C. MQC: see Appendix D

10. SERVICE COMMITMENT

A. Shipper Obligations

As stated in Section 9, Shipper will provide adequate forecasts to Carrier that will allow for accurate load planning. Shipper agrees to give ten (10) days booking notice before CY closing wherever practicable but no less than, eight (8) days, to the Carrier for any Contract shipments.

B. Carrier Obligations

(1) Subject to the second sentence of Section 10(A), Carrier will use best efforts to satisfy the scope and level of the Shipper's forecasted requirements, including without limitation the number of sailings, space allocated per sailing, Containers adequate and appropriate for ocean transportation, transit times, and lanes served.

(2) If Containers are booked at least eight (8) days prior to the scheduled departure date for the particular voyage, Carrier agrees to accept the number of shipments set forth in the sub-MQC, if any. Carrier may, at its option, accept more than said sub-MQC of containers, but shall not be obligated to do so.

C. Service Failure - Carrier

If the Carrier fails to carry the quantities specified above for any consecutive 3-month period the annual MQC shall, at the option of the Shipper, be reduced by the amount of the shortfall during said period. This shall be the Shipper's sole and exclusive remedy in the event Carrier fails to meet its obligations to carry the Shipper's MQC under this Contract.

D. Discontinuance of Service.

In the event Carrier should discontinue service to or from any origin or destination port set forth in this Contract, Shipper and Carrier shall negotiate in good faith an amendment of the Contract reflecting the resulting change in service. If agreement on such an amendment cannot be reached, then the MQC may, at the option of the Shipper, be reduced accordingly, and the Contract amended to reflect the reduction. In the event Shipper should make material sourcing changes to or from any origin or destination port set forth herein, Shipper and Carrier shall negotiate in good faith an amendment to this Contract reflecting the resulting quantity change. If agreement cannot be reached, then the MQC may, at the option of the Carrier, be reduced and the Contract amended accordingly.

11. BILLS OF LADING

A. Each shipment received pursuant to this Contract shall be evidenced by a Bill of Lading signed by Carrier showing the kind, quantity and condition of commodities. Such Bill of Lading or receipt shall be rebuttable evidence of receipt of such commodities by Carrier in apparent good order and condition unless such commodities are not readily observable (contents and condition of contents of packages unknown) or as may be otherwise noted on the face of such receipt.

B. Carrier's duties and responsibilities under this Contract shall commence when Carrier takes possession and control of the Goods or upon execution of such Bill of Lading by Carrier, whichever occurs first, and shall end when Carrier delivers the Goods.

C.  As indicated on the Bill of Lading pursuant to Section 12, contracts may be "Port-to-Door" or "Port-to-Port" shipments. All Bills of Lading shall be "Combined Transport Bills of Lading" to the named destination and Carrier shall be liable to Shipper for loss or damage in accordance with the terms of this Contract regardless of any separate contracts entered into by Carrier with any sub-contractors.

D.  To the extent any term or condition of such Bill of Lading or receipt conflicts in any way with any term or condition of this Contract, this Contract shall govern.

## 12.  RATES, ACCESSORIAL CHARGES & SURCHARGES

A.  As complete compensation for the services provided by Carrier pursuant to this Contract, Carrier agrees to charge and Shipper agrees to pay the rates and charges specified in Appendix B (attached hereto and made a part hereof).  No modifications or adjustments to such rates and charges shall be valid unless contained in a written and duly executed amendment to this Contract, which has been filed with the FMC.

B.  The rates and charges included in this Contract are all-inclusive and shall be the entire cost of the transportation provided.  No assessorial or arbitrary charges or surcharges of any kind that would affect the cost of the services performed hereunder, including but not limited to any general rate increase, peak season surcharge, terminal handling charge, currency adjustment charge, equipment charge, or any other surcharge that are not specifically included in Appendix B shall apply to the shipments tendered by Shipper under this Contract.  Charges and surcharges included in any tariff incorporated in this Contract shall not apply to the shipments tendered hereunder, unless separately agreed to by Shipper in an amendment to this Contract.

C.  In addition to the rates and charges specified in Appendix B, shipments tendered hereunder shall be subject to the Bunker Recovery Charge (BRC) and Low Sulphur Charge (LSC) listed in the Carrier's tariff and subject to China Low Sulphur Component (CLS) which shall be fixed for the duration of the contract, applicable to carriage between the relevant port of loading and the port of destination and in effect at the time of shipment.

D.  The provisions of Carrier's tariffs shall not apply to the transportation performed under this Contract unless such tariffs are specifically identified and incorporated in the appendices of this Contract.  If any tariff incorporated in this Contract is revised or reissued by Carrier during the term of this Contract, and such modification or reissuance would result in any increased cost to Shipper, then the tariff provision(s) that would result in such increased cost to Shipper shall be inapplicable to the transportation services performed hereunder unless separately agreed to in writing by shipping in an instrument other than a Bill of Lading.  Any tariff provision incorporated that conflicts with any provision of this Contract shall be superseded by the Contract.

E.  The rates and charges set forth in Appendix B (attached hereto and made a part hereof) are valid and fixed for the entire term of the Contract and Carrier shall not invoice Shipper for any amount that is not expressly authorized by this Contract, apart from new mandatory fees or surcharges imposed by governmental agencies subsequent to the execution of this Contract, over which Carrier has no control.

## 13.  PAYMENT; PROCEDURE

A.  Carrier shall submit invoices to Shipper on a weekly basis in the Shipper's standard format. Payment on undisputed amounts will be issued by the Shipper payable to the Carrier within Thirty (30) Calendar days after the invoice date. Shipper shall notify Carrier of any disputed items within fifteen (15) days of receipt of any invoice. Carrier will issue a corrected invoice or notify Shipper that the disputed items are valid within Thirty (30) Calendar days.

B.  Carrier agrees to maintain, in accordance with the law and reasonable commercial standards such records as may be necessary to adequately reflect the accuracy of Carrier freight bills under this Contract.

C.  Save for lien in case of general average and salvage, Carrier shall not hold any of Shipper's Goods, refuse any booking, or withhold any Service solely on account of a dispute with Shipper.

D.  Time Limits; Overcharge and Undercharge Claims.  Carrier shall have two (2) years from date of shipment to file a civil action to recover Freight Charges, including, but not limited to, undercharge claims relating to shipments transported pursuant to this Contract.  Shipper shall have two (2) years from the date of delivery to file a civil action to recover overcharge claims except that Shipper's claims for duplicate payments may be corrected at any time.

## 14.  LIABILITY FOR LOSS, DAMAGE OR DELAY

A.  For shipments to or from a port in the United States, Carrier agrees that it assumes the liability of a common carrier for actual loss, subject to the limitations and defences set forth in the Carriage of Goods by Sea Act ("COGSA"), namely $500 per Package or, in case of goods not shipped in Packages, per Customary Freight Unit, such liability to exist from the time of the receipt of said Goods by Carrier until proper delivery has been made, and such liability shall exist regardless of any separate contracts entered into by Carrier with any sub-contractors.

B.  The measure of damage for loss of or damage to the immature of the Goods, plus freight as well as duty and insurance, if paid; or, in absence of such invoice, the sound market value of the Goods at the place and at the time they are delivered or should have been delivered.

C.  Save in the event the damage is caused by Shipper's fault or negligence, Carrier shall also be liable for Shipper's documented actual and reasonable expenses incurred in mitigation of damage, including inspection, sorting, segregating, refurbishing, repackaging and re-shipping.

D.  Nothing in this Contract shall prejudice any right of recourse as between Carrier and its sub-contractors.

E.  Except in the event of a General Average act or circumstance (whether General Average has been formally declared or not), neither Carrier, nor any servant or agent of Carrier, shall be entitled to the benefit of any otherwise applicable limitation of liability if it is proven that the loss or damage resulted from an act or omission of Carrier, or its agents, done with the intent to cause such loss or damage or recklessly that such loss or damage would probably result.

F.  Goods that have been tendered to Carrier intact and in compliance with all applicable laws and regulations and are released in damaged form or lost subsequent to such tender shall be presumed to have been damaged or lost by Carrier.  Such presumption shall be subject to rebuttal only by "clear and convincing" evidence presented to the contrary by Carrier.

G.  Carrier's liability and indemnity obligations under this Section shall in no way be limited by the policy limits of any insurance Carrier is required to carry by law or this Contract.

H.  All damaged Goods are to be handled by Shipper, and Shipper is entitled to handle it in any way desired, provided that due credit for the value of salvageable Goods (less the costs of the salvage) is given to the Carrier. It is the Shipper's responsibility to arrange with the Consignee all rights necessary to perform the salvage. Subject to the foregoing, Carrier has no salvage rights in any such damaged Goods.

I.  If a Shipper-stuffed Container is delivered by Carrier without the origin seal intact, such delivery shall be presumptive evidence that any loss occurred while the Goods were in the possession and control of Carrier.   Delivery with an intact seal shall not relieve Carrier from liability if it is proven that the loss or damage occurred while the Goods were in the possession and control of Carrier.

15.  CLAIMS AND TIME BAR

A.  Subject to clause 24(D)(4) Carrier shall be discharged from all liabilities for loss, damage or delay whatsoever unless suit is brought (filed) within 1 year after the delivery of the Goods or the date when the Goods should have been delivered. The Parties may mutually agree to extend the time to bring suit.

B.  Claims based on a concealed loss or damage reported to Carrier within 15 days of the date of delivery to Shipper, shall be treated by Carrier as though an exception notation had been made on the delivery receipt at the time of delivery.

16.  CARRIER'S CONTAINERS

A.  Carrier's Containers offered to Shipper for loading of the Goods to be transported are to be in good condition, properly securable, clean, odor-free, dry, weather-proof and free of contamination and infestation.  All chassis and other equipment provided for Shipper's use will be in good operating condition. All such equipment shall be subject to inspection for suitability and cleanliness by Shipper, its agents, or its haulers, and unsuitable equipment may be rejected. Any costs resulting from the rejection or repositioning of any Carrier-supplied equipment will be for the account of Carrier unless due to a Shipper act or omission.

B.  If Carrier's Containers are used by Shipper for pre-carriage, or on-carriage or unpacked at Shipper's premises, Shipper is responsible for returning the empty Containers, within ten (10) working days. Should a Container not be returned within the aforesaid time, Shipper shall be liable for detention charges.

C.  Detention for Container shall be calculated for category as follows:

(1)  Port to Port, Container Yard to Container Yard, and Container Freight Station to Container Yard shipments (Imports). The detention time starts when the Container is picked up at the port of entry and stops when the container is returned to the same port.

(2)  Port to Door and Door to Door Shipments (Imports) - The detention time starts when Carrier or Carrier's drayage agent notifies the consignee the Container is available to deliver to the consignee's door and stops when Carrier or Carrier's drayage agent is notified via email or facsimile the Container is empty and returned to the port.  Missed delivery appointments due to sole fault of Carrier or its drayage agent nullify detention start time.

D.  Shipper shall be liable for any loss of or damage to Carrier's Containers and other equipment while in the custody of Shipper or anyone acting on Shipper's behalf, ordinary wear and tear excepted.

17.  SHIPPER'S DESCRIPTION

Subject to clause 11 (A), the Shipper's description of the Goods stuffed in a sealed Container by Shipper, or on its behalf, shall be binding on Carrier, and the description declared by Shipper on the front of the Bill of Lading, packing list or any particulars of any letter of credit and/or import license and/or sales Contract and/or invoice or order number and/or details of any Contract shall be presumptive evidence of it contents, subject to rebuttal through any available evidence.  The Carrier shall not modify or in anyway change the description or contents of the Bill of Lading.

18.  FORCE MAJEURE

A.  Force Majeure as used herein shall mean and include, without limitation, strikes, accidents, lockouts, acts of God, public enemy, terrorism, terrorist acts, government authorities, fire, marine and/or ground disasters, embargoes, riots, civil commotions, or laws, regulations, acts, or any other event whatsoever beyond the reasonable control of the affected Party.

B.  If either Party is prevented from performing any or all of its obligations under this Contract due to Force Majeure conditions, it shall notify the other Party promptly, but in any event within ten (10) calendar days, of the existence of such circumstances and of the nature and extent of their effect on its ability to perform its contractual obligations.  The Parties shall be excused from their respective obligations under this Contract to the extent of and for the duration of the disability, and upon cessation of the disability, all contractual obligations shall be reinstated, except that the MQC will be reduced on a pro rata basis for the period (by working day) of the disability.

C.  If the Carrier should assert a Force Majeure condition as an additional defense to its liability for loss or damage, as provided in Section 14, it is understood and agreed that the Carrier shall have the burden of proving that the condition is the sole cause of the loss and that the Carrier is free from any negligence.

19.  SHIPMENT RECORDS

A.  Carrier shall maintain original signed service contracts, amendments, and their associated records in an organized, readily accessible or retrievable manner for a period of five (5) years from the termination of this Contract. In addition, to the shipment records required to be maintained under 46 CFR Part 530.15, Carrier shall also maintain copies of Bills of Lading, manifest data and EDP reports, Shipper's statements of cargo shipped under this Contract, written communications issued by Carrier regarding such statements, freight receipts, Force Majeure correspondence and notices, and any correspondence concerning Shipper's or Carrier's failure to perform which affects Shipper's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices.  Upon request from Carrier, Shipper shall promptly submit to Carrier information and documents sufficient to verify the quantity and nature of Cargo shipped under this Contract.  Shipping documents provided by Shipper governing individual shipments under this Contract and all copies thereof should bear a notation showing the service Contract number of this Contract.  The designation by Shipper of Cargo as Contract Cargo by affixing the Contract number on the shipping documents provided by Shipper shall be made at the time of the issuance of the Bill of Lading and shall be conclusive. This Contract shall remain enforceable even if Shipper or its agent fails to provide this information.

B.  Carrier shall use commercially reasonable efforts to provide, or cause its designated technology provider to provide, EDI 315 ocean shipment status and to cooperate in the development of electronic data sharing initiatives of Shipper.

20.  INSPECTION OF THE GOODS

The Carrier and/or any person to whom Carrier has sub-contracted the carriage or any person authorized by Carrier shall be entitled, but is under no obligation, to open any Container or Package at any time and to inspect the Goods. If by order of the authorities at any place a Container must be opened for inspection, Carrier shall be liable for any loss or damage incurred as a result of any opening, unpacking, inspection or repacking, solely to the extent such loss or damage arises from Carrier's wrongful actions or negligence in handling the Goods, and specifically excluding loss or damage resulting directly from the actions of such authorities or their agents or employees.

21.  SURVEYS

In the event of a loss, damage or delay claim Carrier may conduct a marine survey, if desired, as soon as reasonably possible from the date of notice of a claim. Carrier may designate a representative to accompany the marine surveyor during the survey, but no Carrier's representative is required to be present during the survey.

22.  DANGEROUS GOODS

At the time of shipment of dangerous Goods, Shipper shall, in compliance with the regulations governing the carriage of such Goods, have the same properly packed, distinctly marked and labelled and notify Carrier in writing of their proper description, nature and the precautions to be taken.

23. NOTIFICATIONS AND DELIVERY

A. Shipper is to be notified of the arrival of the Goods and shall take commercially reasonable steps to take prompt delivery of the Goods.

B. Refusal by Shipper to take delivery of the Goods, within 30 days after receiving actual notice of the availability of the Goods for delivery, shall constitute a waiver by Shipper to Carrier of all and any claims whatsoever relating to the Goods or the Carriage. Shipper shall be liable for any losses, damages, expenses and liabilities incurred and sustained by Carrier arising from such refusal, including but not limited to, the return of the Goods to their place of origin.

24. INDEMNITY

A. Subject to clause 24 (D) hereunder, Carrier shall indemnify, defend and hold Shipper, its affiliates and their respective officers, directors, employees, agents, subcontractors, and assigns, harmless from and against all manner of liabilities, damages, fines, penalties, losses, costs and expenses (including reasonable attorneys' fees, settlements and judgments) that Shipper may incur as a consequence of claims being raised directly against Shipper by any third party in respect of the personal injury to or death of any person (including, without limitation, injury to or death of employees of Carrier or Shipper), or loss of or damage to any property (including, without limitation, damage to property of each Party, except loss of or damage to Goods which is governed  by the terms and conditions of the Bill of Lading) due to the Carrier's negligent acts or omissions or those of its employees, personnel, subcontractors or agents occurring in connection with the performance of this Contract.

B. Shipper agrees to indemnify, defend and hold harmless Carrier, its officers, directors, agents, subcontractors, assigns and employees against and from any and all damages, liabilities, fines, losses, costs and expenses (including reasonable attorneys' fees, settlements and judgments) that Carrier may incur as a consequence of claims being raised directly against Carrier by any third party due to any breach by Shipper of any of the representations, warranties or covenants of Shipper set forth in this Contract.

C. The provisions of this Section shall survive the termination or expiration of this Contract.

D. The following Bill of Lading provisions, as modified and set forth below in this subsection, are incorporated to this Contract:

**(1) SUBCONTRACTING AND INDEMNITY**

(1)(a)The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the carriage, including liberty to further sub-contract. No such subcontracting will relieve Carrier of any of its obligations or liabilities hereunder.

(1)(b)The Shipper undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or subcontractor of the Carrier which imposes or attempts to impose upon any of them or any Vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the carriage of the Goods whether or not arising out of negligence on the part of such person. If any such claim or allegation should nevertheless be made, the Shipper agrees to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and subcontractor shall have the benefit of all terms and conditions of whatsoever nature contained herein, as if such terms and conditions were expressly for their benefit. In entering into this Contract, the Carrier, to the extent of such terms and conditions, does so on its own behalf and also as agent and trustee for such servants, agents and subcontractors.

(1)(c)The Shipper further warrants that no claim or allegation in respect of the Goods shall be made against the Carrier which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the carriage of the Goods other than in accordance with the terms and conditions of this Contract, whether or not arising out of negligence or misdelivery on the part of the Carrier.

**(2) CARRIER'S RESPONSIBILITY**

**(2)(a) Delivery to Customs or Port Authorities** – Where any law or regulation applicable at the Port of Discharge or Place of Delivery provides that delivery of the Goods to the Shipper shall be effected by the customs or port authorities at the Port of Discharge or Place of Delivery, notwithstanding anything to the contrary herein, delivery of the Goods by the Carrier to such customs or port authorities shall be deemed to be lawful delivery of the Goods by the Carrier to the Shipper or Consignee and the Carrier shall not be liable for any loss of or damage to the Goods which occurs for any reason whatsoever, other than the fault of Carrier or as otherwise expressly provided herein, after delivery of the Goods by the Carrier to the customs or port authorities.

**(3) COMPENSATION AND LIABILITY PROVISIONS**

(3)(a)The Shipper agrees and acknowledges that the Carrier has no knowledge of the value of the Goods. Higher compensation for loss or damage than that provided for in this Contract may be claimed only when, with the written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked "Declared Value" on the front of a Bill of Lading and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the limits provided in this Contract. In such a case, any partial loss or damage shall be adjusted pro rata on the

basis of such Declared Value.

(3)(b) When any claim is paid by the Carrier to the Shipper, the Carrier shall be automatically subrogated to all rights of the Shipper against any third party. The Shipper shall sign an acceptable subrogation receipt, release and indemnity when requested by the Carrier.

## (4) SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES

Except as provided expressly herein, including Section 10, the Carrier does not promise or undertake to load, carry or discharge the Goods on or by any particular Vessel, date or time. In no event shall the Carrier be liable for consequential damages or for any delay in scheduled departures or arrivals of any Vessel or other conveyances used to transport the Goods by sea or otherwise.

## (5) MERCHANT-PACKED CONTAINERS

If a Container has not been packed by or on behalf of the Carrier:

(5)(a) The Shipper shall inspect the Container for suitability for carriage of the Goods before packing it.

(5)(b)The Carrier shall not be liable for loss of or damage to the Goods caused by:

(i) the manner in which the Goods have been packed, stowed, stuffed or secured in the Container, or

(ii) the unsuitability of the Goods for carriage in the Container supplied or for carriage by Container between the Ports or Places specified herein, or

(iii) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Shipper at or prior to the time when the Container was packed, or

(iv) packing refrigerated Goods that are not properly pre-cooled to the correct temperature for carriage or before the refrigerated Container has been properly pre-cooled to the correct carrying temperature.

(5)(c) The Shipper is responsible for the packing and sealing of all Shipper-packed Containers and, if a Shipper-packed Container is delivered by the Carrier with an original seal as affixed by the Shipping or customs or security control intact, or the Carrier can establish bona fide circumstances in which the original seal was replaced, the Carrier may rebut any claim for loss or damage by adequate showing.

## (6) CARRIER'S LIEN

The Carrier, its servants shall have lien on the Goods and any document relating thereto in case of lien for salvage or general average but shall not have any lien on the Goods or any such document for freight due to Carrier. Notwithstanding the above, Carrier shall use its best endeavors to send the written request for general average and salvage contribution as soon as practically possible from said event.

## (7) OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK

(7)(a) Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Shipper unless it is specifically stipulated on the front hereof that the Containers or Goods will be carried under deck. If carried on deck, the Carrier shall not be required to note, mark or stamp on the Bill of Lading any statement of such on-deck carriage. Save as provided in clause (7)(b) such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of Goods for the purpose of the Hague Rules or the COGSA or any compulsorily applicable legislation and shall be carried subject to such Rules or Act, whichever is applicable.

(7)(b) Goods which are out of gauge and/or are stowed on or in open top containers, flatracks or platforms, and which are stated on the front hereof to be carried on deck, and all livestock whether carried on deck or under deck, are carried without any responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and the Hague Rules or the COGSA shall not apply.

## (8) GENERAL AVERAGE AND SALVAGE

General Average shall be adjusted, stated and settled at any port or place at the Carrier's option according to York - Antwerp Rules 1994 except Rule XXII and, as to matters not therein provided for, according to the laws and usages at any port or place at the Carrier's option. General Average on a Vessel not operated by the Carrier shall be adjusted according to the requirements of the operator of that Vessel, but subject to the terms of this Contract. Average agreement or bond and such cash deposit (payable at Carrier's option in United States currency) as the Carrier may require as additional security for the contribution of the Goods and salvage and special charges thereon, shall be furnished before delivery or forwarding.

In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Shipper shall, jointly and severally, contribute with the Carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods, as determined by an independent general average adjuster duly appointed

by the Carrier, and his determination as to liability for or of average contribution and computation for the same shall be final
and binding on all parties to the venture. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and
in the same manner as if such salvaging ship or ships belonged to strangers. Such deposit as the Carrier or its agents may deem
sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made
by the Goods, Shipper, consignees or owners of the Goods to the Carrier before delivery.

26.  NON-EXCLUSIVE CONTRACT

It is understood and agreed between the Parties hereto that this is a non-exclusive Contract and that Carrier shall be free
to accept Goods for transportation from shippers other than Shipper and that Shipper shall be free to tender Goods for transportation to
carriers other than Carrier.

27.  INDEPENDENT CONTRACTOR

A. The Carrier shall perform the services hereunder as an independent Contractor and shall have exclusive control and
direction of the persons operating equipment, loading or unloading, or otherwise engaged in providing transportation services.  The Carrier
assumes full responsibility for the acts and omissions of such persons.

B. The Shipper is the beneficial owner of the Goods and is entering into this Contract as an independent contractor and in
no event shall be considered an agent of the Carrier whether under this Contract or the Carrier's Bill of Lading. Notwithstanding anything
to the contrary, the Shipper signing this remains fully responsible for the complete performance of this Contract, including but not limited
to freight and other charges due and owing from affiliates, subsidiaries or third parties, regardless of whether these parties are entitled to
use the Contract.

28.  ASSIGNMENT (NON-ASSIGNABILITY)

The rights and obligations of this Contract hereunder are personal to Carrier and Shipper and this Contract shall not be
assignable or otherwise transferable by either Party, in whole or in part, without the written consent of the other Party, except that Shipper
shall be entitled to assign or transfer this Contract to a parent or controlled subsidiary and Carrier shall be entitled to assign or transfer
its receivables to any bank or lending institution without the other party's written consent.

29.  NOTICES

Notices hereunder shall be given by U.S. mail, postage prepaid or by express courier, to the Parties at the following
addresses:

To SHIPPER:

Bed Bath & Beyond Inc.
650 Liberty Avenue, Union, NJ 07083
United States of America
Attn: Jeff Macak

To CARRIER:

Mediterranean Shipping Company (USA) Inc.
420, 5th Avenue
(At 37th Street) – 8th Floor
New York, N.Y. 10018-2702
United States of America
Attn: Luca Vignale

30.  APPENDICES

Attached hereto and expressly made a part hereof are various appendices.  Subsequent to the execution hereof by Shipper
and Carrier, further addenda may be added hereto and shall also become a part hereof. Each addendum shall be executed by an
authorized officer of each party and dated.

31.  GOVERNING LAW

It is the intention of the Parties that the provisions of this Contract shall be construed and enforced according to the laws of
the United States and the laws of the State of New York to the extent that they are not inconsistent with applicable federal laws. Carrier
consents to the exclusive jurisdiction of the United States District Court for the Southern District of New York, and waives any objection
thereto on the basis of personal jurisdiction or venue.

32.  CONFIDENTIALITY

As part of the business relationship between Carrier and Shipper, Carrier may be in or come into possession of information or data, which constitute trade secrets, know-how, confidential information or are otherwise considered secret by Shipper (hereinafter called "Confidential Information").  In consideration of the receipt of such information and potential business, Carrier agrees to a) maintain such information in the utmost of confidence; b)  share such Confidential Information with its officers, employees, subcontractors and agents, only on a need-to-know basis, ensuring that they are bound by terms of confidentiality substantially similar to these c)  use such solely in connection with such business relationship; and to take all measures necessary to protect such information. Notwithstanding the above, the obligations under this clause shall not apply to:

A.  Information that, at the time of disclosure is, or after disclosure become part of the public domain other than as a consequence of a breach of this Contract;

B.  Information that was known or otherwise available to a Party prior to its disclosure to the other Party;

C.  Information that is independently developed by either Party;

D.  Information required to be disclosed by Carrier for a shipment transported by Carrier on a vessel operated by another ocean common carrier, provided that such other carrier agrees to terms of confidentiality substantially similar to these; or

E.  Information required by law such as a competition authority or by request of a Government or agency possessing such authority.

This clause 32 shall apply mutatis mutandis in favour of the Carrier.

33.  SEVERABILITY

If any phrase, clause, sentence, or other provision contained in this Contract violates any applicable statute, ordinance, rule or law, such phrase, clause, sentence or provision shall be ineffective to the extent of such violations without invalidating any other provision of this Contract.

34.  ENTIRE CONTRACT

This Contract and the attached Appendices represent the entire understanding of the parties and cannot be amended except in writing signed by both Parties.  All prior discussions, understandings, negotiations and Contracts are merged herein.  All prior oral or written Contracts between the parties are hereby cancelled.

35.  ESSENTIAL TERMS AND ITS PUBLICATION

The essential terms applicable to this Contract, as defined by law, have been summarized in the Appendices attached hereto, which will serve as the Essential Terms document to be published in tariff format and filed with the FMC by Carrier, if this Contract is subject to FMC jurisdiction.

36.  C-TPAT COMPLIANCE:

Shipper and Carrier (the Parties) agree to participate in and comply with the Customs Trade Partnership Against Terrorism ("C-TPAT") program and guidelines applicable to ocean carriers, importers and exporters.   To the extent that the C-TPAT guidelines applicable to ocean carriers, importers and exporters are amended during the term of this Contract, the Parties agree to inform each other of such changes and to update their respective policies, procedures and practices to remain compliant with the amended guidelines.  If either Party believes that it cannot comply with any initial or amended C-TPAT guidelines applicable to it, then it shall promptly inform the other Party of the particular guideline(s) that cannot be followed and the Parties shall confer with each other to establish a reasonable period of time for the non-compliant Party becoming compliant with such guideline(s). If either Party is unable or unwilling to comply with the C-TPAT guidelines for their respective businesses within an acceptable period of time, which time period shall be determined within the compliant Party's sole discretion, then the compliant Party shall have the right to terminate this Contract immediately.

37. ETHICAL CONDUCT POLICY

It is the policy of Shipper, and its affiliates specified in Appendix A (if any upon mutual agreement), to conduct all its business transactions in accordance with the highest ethical standards: No individual who is employed by or who represents Shipper is permitted to solicit, accept or pay any bribe, kickback or any other improper payment of money, products or services in exchange for (i) Shipper's execution of this Contract, (ii) any action taken by such individual on behalf of Shipper, or (iii) any action taken by Carrier. If any such improper actions are observed, please contact Shipper's Legal Department (Attention: General Counsel) at 908-688-0888 so that the incident may be fully investigated and appropriate remedial action taken.

38. SEAWAY BILL OF LADING

Carrier shall at request of Shipper, evidence shipments under the Contract by seaway bill of lading. In the event of a conflict between the terms and conditions of the Contract and the terms and conditions of the seaway bill of lading, the terms and conditions of the Contract shall prevail.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives as of the date first above written.

**(AMN 2)**

Shipper: Bed Bath & Beyond Inc.


By: Jeff Macak, Chief Supply Chain Officer



Carrier: MSC Mediterranean Shipping Company SA

By: Pasquale Formisano, Senior Vice President


APPENDICES

The following appendices are incorporated herein by reference and made a part hereof:

APPENDIX A – Affiliates
APPENDIX B - Rates and Services
APPENDIX B – Salvage Agreement
APPENDIX C - Essential Terms (To be Filed with FMC)

**APPENDIX A – Affiliates**

| |
|---|
| Bed Bath & Beyond Inc.<br>650 Liberty Avenue<br>Union, NJ - 07083<br>United States |
| Bed Bath & Beyond of California, LLC<br>Buying Office<br>110 Bi-County Blvd, Suite 114<br>Farmingdale, NY - 11735<br>United States |
| Bed Bath & Beyond of California, LLC<br>650 Liberty Avenue<br>Union, NJ - 07083<br>United States |
| Bed Bath & Beyond Procurement Co., Inc.<br>650 Liberty Avenue<br>Union, NJ - 07083<br>United States |
| Bed Bath & Beyond Procurement Company Incorporated<br>Buying Office<br>110 Bi-County Blvd. Suite 114<br>Farmingdale, NY - 11735<br>United States |
| Buy Buy Baby Inc.<br>650 Liberty Avenue<br>Union, NJ - 07083<br>United States |
| Buy Buy Baby Inc.<br>895 East Gate Boulevard<br>Garden City, NY - 11530<br>United States |
| Harbor Linen<br>4 Eves Drive, Suite B100<br>Marlton, NJ 08053<br>United States |
| Harbor Linen, LLC<br>2 Foster Avenue<br>Gibbsboro, NJ - 08026<br>United States |
| Harmon Stores Incorporated<br>650 Liberty Avenue<br>Union, NJ - 07083<br>United States |
| Liberty Procurement Co Inc<br>64 Leona Drive<br>Middleboro, MA - 02346<br>United States |
| Liberty Procurement Co. Inc.<br>650 Liberty Avenue<br>Union, NJ - 07083<br>United States |
| Nantucket Distributing Co., Inc.<br>64 Leona Drive<br>Middleboro, MA - 02346<br>United States |
| Nantucket Distributing Company, LLC. |

64      Leona
Middleboro, MA - 02346
United States

T-Y      Group      LLC
10800 NW 103rd St, Suite
1
Miami,     FL     -     33178
United States

Cost    Plus    Management
Services             Inc
200     Fourth     Street,
Oakland CA 94607

PersonalizationMall.com
51        Shore        Dr.
Burr   Ridge,   IL   60527
United                States

One      Kings      Lane
315 Hudson  Street,  8th
Floor
New     York,     NY    10013
United States

Sensitivity: Internal

Sensitivity: Internal

**Appendix C**
**SALVAGE AGREEMENT**

## For valuable consideration received, SHIPPER and CARRIER agree as follows:

1. If any product has not been delivered and for which a claim has been filed is located or recovered by CARRIER, regardless of whether the claim has been paid, SHIPPER must be notified immediately.

2. No product for which a claim has been filed can be sold or otherwise transferred to a salvor, jobber or any third party without CARRIER first contacting SHIPPER and obtaining authorization when SHIPPER is the owner of the goods. Nor shall any such product or goods be passed to any of CARRIER's internal salvage procedures without such notice.

3. If SHIPPER authorizes passing such product to Salvage or to any third party, CARRIER will remove all price tags, labels, brands or trademarks identifying SHIPPER or which contain any of SHIPPER's trademarks (e.g., A Step Beyond, Beyond, Beyond Indulgence) prior to such transfer or salvage. CARRIER shall be compensated at the hourly billing rate for such work performed unless CARRIER was responsible for the damage incurred.

4. In any salvage on sale of SHIPPER's product, CARRIER shall contract to include the following terms as conditions of the contract and make commercially reasonable efforts to ensure compliance therewith:

   (i) The SHIPPER's name shall not be used in any advertising or signage of any statement or phrase that might identify such product

   (ii) Any goods to be passed to Salvage shall be prominently, permanently and incurably marked in such a way that their nature as salvage goods cannot be mistaken; that is, in such a state as to prevent such goods from being returned to SHIPPER's stores as customer purchase; and

   (iii) SHIPPER expressly disclaims any and all warranties, express or implied, including, without limitation any warranties of merchantability, fitness for a particular purpose, or non-infringement of the intellectual property rights of a third party.

.
5. At the reasonable request of SHIPPER, CARRIER will destroy recovered goods where such goods represent a safety hazard to consumers.

**(AMN 2)**
ACCEPTED AND AGREED:

CARRIER: _____

Name: _____

Title: _____

Sensitivity: Internal

**APPENDIX D - ESSENTIAL TERMS**

**ESSENTIAL TERMS**

1. Effective Date and Term:  valid from July 01, 2019 to ~~31st May 2020~~ 30th June 2020 (AMN 1)

2. Name and address of Carrier:  MSC Mediterranean Shipping Company SA – 12-14 Chemin Rieu, 1208 Geneva, Switzerland

3. Name and address of Shipper:  Bed Bath & Beyond Inc. 650 Liberty Avenue, Union, NJ 07083, United States of America

4. Cargo Owner Certification: Pursuant to Federal Maritime Commission ("FMC") regulation 46 C.F.R. 530.6, Bed Bath & Beyond Inc. by execution of this Contract, certifies its status as the OWNER or Consignee of the cargo.

Bed Bath & Beyond Inc. shall be under a continuing obligation to comply with all FMC requirements and to report to the Carrier any change in its status.

If Bed Bath & Beyond Inc.fails to comply with the provisions of this section or provides incorrect certification, the Carrier may:
(i) return or make available to Bed Bath & Beyond Inc. any shipments in the possession of the Carrier at the time such failure is discovered; and
(ii) refuse any shipment, regardless of whether the Carrier has confirmed the booking;
without any liability whatsoever to Bed Bath & Beyond Inc. under this Contract.

Any and all liabilities, attorneys' fees, penalties and expenses levied against or incurred by the Carrier in connection with this section shall be for Bed Bath & Beyond Inc. account. Additionally, the Carrier may exercise a lien on the cargo and any sub-freights due and owing.

5. Origin Port Pairs (further detailed in Appendix A):

FAR EAST: FAR EAST:  China, Malaysia, Thailand, South Korea, Vietnam, Taiwan, Cambodia, Singapore, Indonesia, Myanmar, Japan, Hong Kong
INDUS: India, Pakistan, Sri Lanka
AUSTRALIA

6. Destination Port Pairs (further detailed in Appendix A):

**USA**

7. Minimum Quantity Commitment: 8800 TEUs

8. Commodities:

General Department Store Merchandise in Mixed or Straight loads:
Candles, Xmas, Diffusers, Pillars, Votive/Tapers, Giftset/Novelty, Embers, Wax Filled, Holders, Potpourri, Tealights, Dinnerware/Tabletop/Flatware, Flatware Pfaltzgraff Polish Pottery Europe Tabletop Mugs/Accessories, Ceramic Collections Dinnerware Sets Dinner Key Items, Tabletop Ensembles Kitchen Ceramics, Garden Poly, Fountains Figurines Planters Birdbth/Fdr, Mosaic Rocks/Stepping Stones Glow N Dark & Solar, Ceramic Giftware Home Decor Porcelain Gift Ceramic Gift Planters, Vases Blue&Wht Porcelain Ensembles, Wood/Poly/Gift Wind Chimes Flag/Windsox/Spinners Stained Glass Wood Ensembles, Wood Gift Poly Gift Special Purchase Souvenirs Handbags Fabric Gifts, Brass/Metal (India) Silver Plate Plantrs/Vases Copper Fireplace, Aluminium Cast Metal Metal Gifts, Housewares Kitchen Group Gadgts Cooking Cadgts Utlt Plstc Tbltp, Consumables Cuttng Brds Cutlery Sum Melamine Sum Plastics Sum Drinkwr, Window Sheers/Lace Long Length Year-Round Lined/Velvet/Suede Tieup/Roman Kitchen, Bamboo Valances Cellular Shades Rods Promo Rods Fashion, Bath/Bedding/Beach Beach Towel Bed Pillows Shr Curtain/Access, Towels Blankets Bedding Sheets/Cases, Rugs/Home D Cor Summer Rugs  Mats Rugs Scatter, Rugs Rm Size Rugs Runner Throws/Slipcovers Chair Pads Dec Pillows, Tabletop/Totes & Bags Totes&Bags Tblclth/Napkins Placemat/Rnrs Kitchen Textiles, Harvest Halloween Easter Americana Summer, Furniture White Wood Natural/Light Wood Dark/Stain Wood Dining, Metal Furniture Wckr/Ratn/Bamboo Hand Painted Chairs, Upholsterd/Leather Chests/Misc, Gift Show Dept 49 Miscellaneous Product Bad Scan Default, Lamps Stringlites Candlestick Lamps Metal-Table Lamps Glass-Table Lamps, Boxed Sets Novelty Lamps Floor Lamps Desk Lamps Ceramic-Table Lamps Shades, Luggage, Pet Plush Toys Vinyl/Rubber Rawhide Beds/Carriers, Pet Clothing Feeding Bird Food Pet Supplies Xmas, Hardware Batteries Hardware Electrical Electronics, Automotive Luggage Music & Movies Royal Tool Program, Juvenile Baby Clothing Baby Other Furniture Lamps, Dress-Up Wall Decor Baskets, Paper Goods 2/$1.00 Euro Napkin Print Sets Solid Sets Xms Euro Napkins, Xmas Sets Party Goods Seasonal Party Goods, Wrap All Occasion A.O. Wrap Closeouts Flatwrap Rollwrap, Tissue/Shred Gift Bags Bows Ribbon Cello Boxes/Tins, Xmas Wrap & Access  Bows Gift Tags Gift Bags Tissue/Shred, Boxes/Tins Rollwrap Flatwrap Ribbon Cello, Xmas Greens Stem/Bush Potted Wreath, Dec Garland Decor Tree Garland Wreath Tree/Stands, Xmas Softgoods Totes/Bags Table Linens Kitchen Linens Bath/Access, Hanukkah  Mats Throws Rugs Pillows, Holidays Valentines Thanksgiving St.Pats Americana Hanukkah Harvest, Halloween Books/Stationary Wood Resin/Acryl Metal Ceramic, Fabric/Tote Costumes Elec/Candle Paper/Accessories, Summer Goods Beach Access Patio Furniture Bbq Access Sun Glasses, Bug Repelent/Citro Patio Accessories Infltb/Swim Gear Toys/Bubbles, Fans/Ac/Heaters Coolers/Bags, Easter Assorted Wood Polyresin Metal/Tin, Ceramic/Glass Fabric/Nat Wreaths Electric Paper/Accessories Baskets, Frames Wall Frames Brass/Mixed Metal Ceramic Frames Basic Wood, Fashion Wood Acrylic/Plstc/Glass Frm Metal Frames Novelty Photo Albums, Xmas Frames/Albums, Wall D Cor Traditional Coastal Folk/Primitive Clocks, Photography Canvas/Oil Painting Plaqs/Unframed Art Mirrors Novelty Shelves, Houseware Glass & Crystal Bottles/Canistrs/Jars Bulk Beverage Bulk Stem, Boxed Beverage Boxed Stem Vases/Hurricanes Kitchen Glass, Crystal/Formal Glass Glass Ensembles Novelty/Gift, Cookware/Bakeware/Sm Elec Cookwr Sets Tea Kettles Cookware Opn, Porc/Cermic Cookware Bakewre Mtl Glss Ovenwr Food Strg Mwv Sm Appliance, Utility Housewares Laundry Closet Shop Light Bulbs Cleaning Chemicals, Utility Utility Housewares Storage, Personal

Care Gift Sets Soap/Ltn/Ap Suncare Vit/Mins Acier Pharm Tech/Maint Makeup Bar C34 Dental Care, Food Holiday Food/Candy Candy Cookies Jellies Beverages, Soup/Rice/Prepared Foods Teas/Coffee/Cocoa, Spices Crackers Xms Food/Candy, Silk Flowers Flowers Closeouts Stems/Bouquets Bushes Dried,Candle/Ring Potted Wreaths/Group Garland Crafts, Baskets Strg/Utilty Shlf/Cd/Dvd Laundry Tote Bags, Bskt Dec/Hndl Bskt Ent/Srv Bskt Natukt  Bskt Xmas, Garden/Outdoor Solar/Outdoor Light Hose/Sprinklers Access Live Plants, Seeds/Bulbs/Pot Soil Wood Decorative Metal Decorative, Planters Plant&Bug Chem/Fertl Tools/Acces Bird Fdrs/Houses, Books        Dropship        School        Specialty        Kids        Story        Cookbooks        Coffeetable, Novels Activity Dropship Random House Seasonal Craft\Decor Reference, School/Office Backpacks/Duffle Crayons Pens/Pencil Arts/Crafts, Notebooks Stationery Faux Storage Computer, Stationery Jrnl/Scrapbooking Image Arts Boxed Cards Crown Point, Cape Shore Ensembles Pads/Cubes Calendars Accessories, Toys Music/Activity Girls Toys Plush Preschool Boy's Toys, Electronic Games Board Games Puzzles Sporting Goods Seasonal Toys, Xmas Tabletop/Gift Ceramic Gift Mugs Dinnerware Sets Open Stock Dinnerware, Ceramic Ensembles Glass Ensembles Pfalt Graff Drinkware Glass Serveware, Glass/Crystal, Xmas Crd/Station Crown Point Image Arts Othr Cards Blank Notes Crackers/Access, Xmas Decor Wood Hangers Wood Gift Wood Groups Nutcrackers, Fabric Flag/Spinners Carolers Metal, Xmas Trim Glass Ornaments Glasspk Ornaments Peg Orn Box Orn Garland,Stocking Holder Stocking/Skirt, Xmas Electric Basic Lights Indoor Windowlight Outdoor, Xmas Gftware Resin Hangers Resin Tabletop Resin 9.99+ Acrylic Ceramic Gift, Nativity Music/Globes, Xmas Housewares  Storage Plastics Bake/Gadget, Impulse Items Baby Jewelry Watches Val/St Pats Register Items, Halloween Xmas Wedding Easter Film/Camera, Winter Seasonal Automotive Utility Grossman Apparel Apparel Infltbls/Snow Gear, Clothing Closeouts Grossman Yr Round Grossman Smr Socks/Shoes, Sandals Sleepwear Shirts/Tops Summer Apparel, Store Supplies Dept 89 Store, Supplies Ibm Register/Monarch Gift Cards, Invalid Upc Listing Lamp Component-Don't Ordr Do Not Order-Set Parts Dept 99 War, Christmas Lights, (Outdoor/Indoor) Including Patio Furniture, Housewares, Candy Canes, Non-Refrigerated, Photo Albums Artificial Flowers Artificial Fruit, Beach Towels Brassware Camping Equipment,Candles Candle Holders Ceramic Dinnerware,Clocks Cookware Dinnerware,Pillows Fans Festive Articles,Christmas, Hanukkah, Easter, etc.,Games Gardening Items,Glassware Hampers Indoor Furniture,Lead Crystal Vases Lights Linens,Metal Housewares Miscellaneous Housewares Napkins, Oven & BBQ Mitts Patio Furniture Uniforms,Picture Frames Placemats Potholders,Plastic ware Shadow Boxes Tablecloths,Textile Bags Thermometers Towel Warmers,Towels Wickerware Wooden Models,Strollers Toys Children Furniture,Soap Shampoo Bedding.


9. Rates, Services and Related Terms: As set forth in Rates and Service Appendix (Appendix A).

10.  Bed Bath & Beyond Inc. Service Contract Terms and Conditions

11. Records:

All requests relating to the Federal Maritime Commission ("FMC") for records should be addressed to:
MSC Mediterranean Shipping Company SA, Att: Reto Giddey, +41 22 703 8888
12-14 Chemin Rieu, 1208 Geneva, Switzerland

With a copy to:
Mediterranean Shipping Company (USA) Inc., Att: Paolo Magnani
420, 5th Avenue, New York, N.Y. 10018-270, United States

12. Affiliates: as per Appendix A

### BED BATH & BEYOND INC. SERVICE CONTRACT

**(amn 18)**    **TERMS AND CONDITIONS**

THIS SERVICE CONTRACT ("Contract"), made and entered into as of the 1st of May , 2021 by and between Bed Bath & Beyond Inc., with  its principal offices at 650 Liberty Avenue Union, NJ 07083 United States of America on behalf of  itself and its Affiliates as listed in Appendix A, attached hereto (hereinafter  collectively referred to as "Shipper"), and MSC Mediterranean Shipping Company SA, , with its principal offices at Chemin Rieu 12-14,  Geneva 1208, Switzerland (hereinafter called "Carrier") (each a "Party", collectively the "Parties").

### 1. DEFINITIONS

"Bill of Lading" means the Carrier's bill of lading or sea waybill as the case may be.

"Carriage of Goods by Sea Act" or "COGSA" means the Carriage of Goods by Sea Act, set forth in the note following 46 U.S.C. Sec. 30701.

"Carrier" means MSC Mediterranean Shipping Company SA.

"Consignee" means the person entitled to take delivery of the Goods and named on the Bill of Lading as such.

"Container" means an ISO standard 20, 40, 40HC and 45-foot container. The term includes dry cargo, refrigerated and flat rack containers.

"Contract" shall mean this Contract, including all appendices attached hereto and such other documents as are expressly named herein, all of which are expressly incorporated herein by this reference.

"Customary Freight Unit" means any physical unit of cargo not shipped in a package, including machinery and vehicles (whether new or used) and shall have the meaning given to it by the jurisprudence of the Maritime Law of the United States.

"Freight Charges" means the remuneration payable to Carrier for the carriage of Goods under this Contract as set forth herein.

"Goods" means the merchandise, articles and commodities specified or identified in this Contract and include the packing, the packaging material and container not supplied by or on behalf of Carrier.

"MQC" shall mean Minimum Quantity Commitment specified in this Contract.

"Package" means a material unit containing Shipper's Goods, notwithstanding its weight, dimension or volume.
Notwithstanding anything to the contrary, the loaded Container shall not be considered to be or construed as the package or unit, and package or unit to be the actual number of packages within the container in a non-unitized state.

"Port-to-Door" means through transportation of a Container and its contents from a foreign port to a domestic facility of Shipper.

"Port-to-Port" means transportation of a Container and its contents from a foreign port to a domestic port.

"Shipper" means Bed Bath & Beyond Inc. and its Affiliates listed in Appendix A (whether in the capacity as the consignor, consignee or owner of the Goods) and anyone authorized to act on their behalf.

"Sub-Contractor" means owners and operators of vessels (other than Carrier), stevedores, terminal, warehouse, road and rail transport operators, motor carriers and any independent contractor employed by a Carrier in the performance of the carriage or in providing services hereunder and any sub-sub-contractor thereof.

"Vessel," means the vessel named in the Bill of Lading, and any feeder vessel, lighter or barge used by or on behalf of a Carrier in connection with any seaborne leg of the carriage.

Sensitivity: Internal

The term "Affiliate" as used herein shall mean the entities listed in Schedule A.  a subsidiary or holding company of the Shipper or a subsidiary of such holding company or an entity which controls, is controlled by, or is under the common control of the Shipper. "Control" means (a) the power to directly or indirectly control the direction or management of an entity, whether by contract or otherwise; and/or (b) the ownership of more than fifty per cent (50%) of the issued share capital or beneficial ownership of an entity

Initial capitalization on terms defined is not required in the use of any of the foregoing defined terms.

2.  APPLICATION
A.  The provisions of this Contract are applicable to all services requested by Shipper and provided by Carrier during the term of the Contract, and to all shipments duly tendered by Shipper and accepted by Carrier and may continue to apply even if Shipper's MQC has been satisfied, upon mutual agreement.

B.  Shipper may add or remove one or more Affiliates covered hereunder by notice to Carrier and amendment of this Contract at any time.  Consent to such amendment shall not be unreasonably withheld.
C.  The terms and conditions of this Contract shall at all times govern all responsibilities of Shipper and Carrier in connection with or arising out of the acceptance and carriage of Shipper's Goods.  The terms and conditions of any Bill of Lading issued by Carrier shall also apply to the acceptance and carriage of Shipper Goods, but to the extent such terms and conditions conflict in any way with any term or condition of this Contract, this Contract shall govern.
D.  The provisions of this Contract are applicable without regard to the nationality of the Vessel, Carrier, its sub-contractors, Shipper or any other interested person.

3.  TERM OF CONTRACT
This Contract shall be effective beginning on the Effective Date and continuing for the Term, as both are defined in Appendix D, unless earlier terminated as provided below, or extended by agreement of the parties hereto (the "Parties").

4.  TERMINATION
A.  This Contract may be subject to early termination only as follows:
(1)  by either Party effective immediately for any material breach hereof by the other Party which remains uncured thirty (30) days after written notice from the aggrieved Party to the offending Party, specifying the nature of the breach; or if the Parties agree it will take more than thirty (30) days to cure the breach, the cure has not commenced and been diligently pursued within thirty (30) days or is not diligently pursued thereafter; or
    (2)  by either Party effective upon ten (10) days' written notice if a Force Majeure condition as defined herein is declared by the other Party and continues unabated for a period exceeding twenty (20) consecutive days.  If a force majeure event is called by Carrier, each Party   will make reasonable efforts to affect a work around plan to limit or eliminate the event prior to the event being applicable.
    (3) by Shipper in the event Carrier's licenses, permits, authorities, and/or registrations, and/or insurance required hereunder or by applicable law for its to act under this Contract are canceled, suspended, or materially negatively altered.
B.   If this Contract is required to be filed with the Federal Maritime Commission ("FMC") it shall be Carrier's sole responsibility to promptly do so, and Carrier shall promptly notify the FMC of early termination in the manner required by that agency.
C.   Upon the termination or expiration of the Contract, each Party shall promptly and reasonably assist the other with removal of all Goods and other owned or leased materials, products and equipment then within its care, custody or control belonging to the other party. Each Party shall bear the actual and reasonable expenses incurred in fulfilling its obligations to do so. In the event of early termination for breach, the obligation of the non-breaching Party, or by Shipper pursuant to sub-section 4(A)(3), with respect to MQC shall be reduced to the amount shipped as of termination.
D.   The Parties intend that the contractual arrangement be continuous in nature until such time as the Contract expires or is terminated by one or both of the Parties. In the event that no agreement is reached this Contract shall be terminated. Termination or expiration of the Contract shall not relieve or release either Party from any rights, liabilities, or obligations that have previously accrued under law or the terms of the Contract prior to the date of expiration or termination.

5.   GOODS
  The Goods to which this Contract applies are all those commodities and materials specified or described in Appendix D annexed hereto.

6.   PORTS OF ORIGIN
  The Ports of Origin to which this Contract applies are specified or described in Appendix B annexed thereto.

7.   PORTS OF DESTINATION
  The Ports of Destination to which this Contract applies are specified or described in Appendix B annexed thereto.

8.   LOADING PORTS, DISCHARGE PORTS, INTERMODAL PORTS
  The Loading Ports, Discharge Ports and Intermodal Ports to which this Contract applies are specified or described in Appendix B annexed thereto.

9.  MINIMUM QUANTITY COMMITMENT; FORECASTS

A.  Shipper agrees to tender to Carrier, and Carrier agrees to accept from Shipper, the minimum quantity commitment (hereinafter MQC) specified in this Contract at 4,240 FEUs (8,480 TEUs).  Shipments shall be deemed within the scope of this Contract and shall be counted toward the MQC if made by Shipper or by an authorized agent on behalf of Shipper.  The Carrier may accept booking requests for the requested sailing date always subject to space and equipment availability.  The Carrier shall use its reasonable endeavor reply to booking requests within seventy-two (72) hours.

For purposes of calculating the MQC the following FEU Equivalent conversion table will apply:

| | |
|---|---|
| 20' container | 0.5   FEU – or 1 TEU |
| 40' container | 1.0   FEU – or 2 TEUs |
| 40' H/C container | 1.125  FEU |

B.  Forecasts. In order to facilitate load planning, Shipper will provide Carrier with regular monthly rolling forecasts by origin and destination.  These forecasts are for information purposes only and are not binding on Shipper or Carrier.

C.  MQC: see Appendix D

10.  PARTIES OBLIGATIONS

A.  Shipper Obligations
As stated in Section 9, Shipper will provide adequate forecasts to Carrier that will allow for load planning. Shipper agrees to give ten (10) days booking notice before CY closing wherever practicable but no less than, eight (8) days, to the Carrier for any Contract shipments.

B.  Carrier Obligations
(1)  Subject to Section 10(A), Carrier will use reasonable commercial efforts to satisfy the scope and level of the Shipper's forecasted requirements,

C.  If Containers are booked at least eight (8) days prior to the scheduled departure date for the particular voyage, Carrier will use reasonable efforts to accept more than said MQC of containers, but shall not be obligated to do so.

D.  Service Failure - Carrier
If the Carrier fails to carry the quantities specified above for any consecutive 3-month period the annual MQC shall, at the option of the Shipper be reduced by the amount of the shortfall during said period. This shall be the Shipper's sole and exclusive remedy in the event Carrier fails to meet its obligations to carry the Shipper's MQC under this Contract.

E.  Discontinuance of Service.
In the event Carrier should discontinue service to or from any origin or destination port set forth in this Contract, Carrier shall provide Shipper a minimum of thirty (30) days written notice unless such discontinuance is decided within less than thirty (30) days in which case Carrier shall provide Shipper with a written notice as soon as possible, and Shipper and Carrier shall negotiate in good faith an amendment of the Contract reflecting the resulting change in service.  If agreement on such an amendment cannot be reached, then the MQC may, at the option of the Shipper, be reduced accordingly, and the Contract amended to reflect the reduction. In the event Shipper should make material sourcing changes to or from any origin or destination port set forth herein, Shipper and Carrier shall negotiate in good faith an amendment to this Contract reflecting the resulting quantity change.  If agreement cannot be reached, then the MQC may, at the option of the Carrier, be reduced and the Contract amended accordingly.

11.  BILLS OF LADING

A.  Each shipment received pursuant to this Contract shall be evidenced by a Bill of Lading signed by Carrier showing the kind, quantity and condition of commodities.  Such Bill of Lading shall be prima facie evidence of receipt of such commodities by Carrier in apparent good order and condition unless such commodities are not readily observable (contents and condition of contents of  packages unknown) or as may be otherwise noted on the face of such receipt.

B.  Carrier's duties and responsibilities under this Contract shall commence when Carrier takes possession and control of the Goods or upon execution of such Bill of Lading by Carrier, whichever occurs first, and shall end when Carrier delivers the Goods.

C.  As indicated on the face of the Bill of Lading, shipments pursuant to this Contract may be "Port-to-Door" or "Port-to-Port" shipments. All Bills of Lading shall be "Combined Transport Bills of Lading" to the named destination and Carrier shall be liable to Shipper for loss or damage in accordance with the terms of this Contract regardless of any separate contracts entered into by Carrier with any sub-contractors.

D.  To the extent any term or condition of such Bill of Lading or receipt conflicts in any way with any term or condition of this Contract, this Contract shall govern.

12.  RATES, ACCESSORIAL CHARGES & SURCHARGES

A.    As complete compensation for the services provided by Carrier pursuant to this Contract, Carrier agrees to charge, and Shipper agrees to pay the rates and charges specified in Appendix B (attached hereto and made a part hereof).  No modifications or adjustments to such rates and charges shall be valid unless contained in a written and duly executed amendment to this Contract.

B.    The rates and charges included in this Contract are all-inclusive and shall be the entire cost of the transportation provided.  No assessorial or arbitrary charges or surcharges of any kind that would affect the cost of the services performed hereunder, including but not limited to any general rate increase, peak season surcharge, terminal handling charge, currency adjustment charge, equipment charge, or any other surcharge that are not specifically included in Appendix B shall apply to the shipments tendered by Shipper under this Contract.  Charges and surcharges included in any tariff incorporated in this Contract shall not apply to the shipments tendered hereunder, unless separately agreed to by Shipper in a written amendment to this Contract.

C.    In addition to the rates and charges specified in Appendix B, shipments tendered hereunder shall be subject to the Bunker Recovery Charge (BRC) as per below bunker mechanism:

Adjustment of bunker fuel price per ton will be based on Bunkerworld calculation of a straight average over a 13-week period ending thirty (30) days prior to the adjustment date.

| Bunker Charge | Calculation Period |
|---|---|
| July  1,  2021 | March  2021  -  May  2021 |
| October  1,  2021 | June  2021-  August  2021 |
| January  1,  2022 | September  2021  -  November  2021 |
| April 1, 2022 | December 2021 - February 2022 |

| Bunker Fuel Price (MT) | WC | EC |
|---|---|---|
|  | D40' |  |
| 860.01 - 880 | 677 | 1294 |
| 840.01 - 860 | 665 | 1270 |
| 820.01 - 840 | 653 | 1246 |
| 800.01 - 820 | 641 | 1222 |
| 780.01 - 800 | 629 | 1198 |
| 760.01 - 780 | 617 | 1174 |
| 740.01 - 760 | 605 | 1150 |
| 720.01 - 740 | 593 | 1126 |
| 700.01 - 720 | 581 | 1102 |
| 680-01 - 700 | 569 | 1078 |
| 660.01 - 680 | 557 | 1054 |
| 640.01 - 660 | 545 | 1030 |
| 620.01 - 640 | 533 | 1006 |
| 600.01 - 620 | 521 | 982 |
| 580.01 - 600 | 509 | 958 |
| 560.01 - 580 | 497 | 934 |
| 540.01 - 560 | 485 | 910 |

| Bunker Fuel Price (MT) | WC | EC |
|---|---|---|
|  | D40' |  |
| 520.01 - 540 | 473 | 886 |
| 500.01 - 520 | 461 | 862 |
| 480.01 - 500 | 449 | 838 |
| 460.01 - 480 | 437 | 814 |
| 440.01 - 460 | 425 | 790 |
| 420.01 - 440 | 413 | 766 |
| 400.01 - 420 | 401 | 742 |
| 380.01 - 400 | 389 | 718 |
| 360.01 - 380 | 377 | 694 |
| 340.01 - 360 | 365 | 670 |
| 320.01 - 340 | 353 | 646 |
| 300.01 - 320 | 341 | 622 |
| 280.01 - 300 | 329 | 598 |
| 260.01 - 280 | 317 | 574 |
| 240.01 - 260 | 305 | 550 |
| 220.01 - 240 | 293 | 526 |
| 200.01 - 220 | 281 | 502 |

Bunker will be calculated using 0.5% Low Sulphur IMO and tracked using Bunkerworld.com. Customer will continue to calculate a 13-week average to determine the bunker fuel surcharge thirty (30) days prior to effective date.

**Sources for Weekly Bunker Fuel Prices:**

West Coast Bunker Fuel Price: Bunkerworld.com
East Coast Bunker Fuel Price: Bunkerworld.com

D.    The provisions of Carrier's tariffs shall not apply to the transportation performed under this Contract unless such tariffs are specifically identified and incorporated in the appendices of this Contract.  If any tariff incorporated in this Contract is revised or reissued by Carrier during the Term of this Contract, and such modification or reissuance would result in any increased cost to Shipper, then the tariff provision(s) that would result in such increased cost to Shipper shall be inapplicable to the transportation services performed hereunder unless separately agreed to in writing by the Parties r in an instrument other than a Bill of Lading.  Any tariff provision incorporated that conflicts with any provision of this Contract shall be superseded by the Contract.

E.    The rates and charges set forth in Appendix B (attached hereto and made a part hereof) are valid and fixed for the entire term of the Contract and Carrier shall not invoice Shipper for any amount that is not expressly authorized by this Contract, apart from new mandatory fees or surcharges imposed by governmental agencies subsequent to the execution of this Contract, over which  Carrier has no control, and then only upon a minimum of thirty (30) days written notice to Shipper.

13.  PAYMENT; PROCEDURE

A.  Carrier shall submit invoices to Shipper on a bi-weekly basis in the Shipper's standard format. Payment on undisputed amounts will be issued by the Shipper payable to the Carrier within thirty (30) calendar days after the invoice date. Shipper shall notify Carrier of any disputed items within fifteen (15) days of receipt of any invoice. Carrier will issue a corrected invoice or notify Shipper that the disputed items are valid within thirty (30) calendar days.

B.  Carrier agrees to maintain, in accordance with the law and reasonable commercial standards such records as may be necessary to adequately reflect the accuracy of Carrier invoices under this Contract.

C.  Save for its lien in case of general average and salvage, Carrier shall not hold any of Shipper's Goods, refuse any booking, or withhold any Service solely on account of a dispute with Shipper, and Carrier waives its rights to all other liens at law or in equity on the goods or other property of Shipper.

D.  Time Limits; Overcharge and Undercharge Claims.  Carrier shall have two (2) years from date of shipment to file a civil action to recover Freight Charges, including, but not limited to, undercharge claims relating to shipments transported pursuant to this Contract.  Shipper shall have two (2) years from the date of delivery to file a civil action to recover overcharge claims, except that Shipper's claims for duplicate payments may be corrected at any time.

14.  LIABILITY FOR LOSS, DAMAGE OR DELAY

A.  For shipments to or from a port in the United States, Carrier agrees that it assumes the liability of a common carrier for actual loss, subject to the limitations and defenses set forth in the Carriage of Goods by Sea Act ("COGSA"), namely $500 per Package, as defined herein, such liability to exist from the time of the receipt of said Goods by Carrier until proper delivery has been made, and such liability shall exist regardless of any separate contracts entered into by Carrier with any sub-contractors.

B.  The measure of damages for loss or damage shall be the invoice value of the Goods, plus freight as well as duty and insurance, if paid; or, in absence of such invoice, the sound market value of the Goods at the place and at the time they are delivered or should have been delivered.

C.  Save in the event the damage is caused by Shipper, its employees, agents or subcontractors , Carrier shall also be liable for Shipper's documented actual and reasonable expenses incurred in mitigation of damage, including inspection, sorting, segregating, refurbishing, repackaging and re-shipping

D.  Nothing in this Contract shall prejudice any right of recourse as between Carrier and its sub-contractors.

E.  Except in the event of a declared General Average act or circumstance neither Carrier, nor any servant or agent of Carrier, shall be entitled to the benefit of any otherwise applicable limitation of liability if it is proven that the loss or damage resulted from an act or omission of Carrier, or its agents, or subcontractors done with the intent to cause such loss or damage or recklessly that such loss or damage would probably result.

F.  Goods that have been tendered to Carrier intact and in compliance with all applicable laws and regulations and are released in damaged form or lost subsequent to such tender shall be presumed to have been damaged or lost by Carrier.  Such presumption shall be subject to rebuttal only by "clear and convincing" documentary evidence presented to the contrary by Carrier.

G.  Carrier's liability and indemnity obligations under this Section shall in no way be limited by the policy limits of any insurance Carrier is required to carry by law or this Contract.

H.  All damaged Goods are to be handled by Shipper, and Shipper is entitled to handle it in any way desired, provided that due credit for the value of salvageable Goods (less the costs of the salvage) is given to the Carrier if Goods are

salvaged. . It is the Shipper's responsibility to arrange with the consignee all rights necessary to perform the salvage. Subject to the foregoing, Carrier has no salvage rights in any such damaged Goods.

If a Shipper-stuffed Container is delivered by Carrier without the origin seal intact, such delivery shall be presumptive evidence that any loss occurred while the Goods were in the possession and control of Carrier.   Delivery with an intact seal shall not relieve Carrier from liability if it is proven that the loss or damage occurred while the Goods were in the possession and control of Carrier.

15.    CLAIMS AND TIME BAR

A.      Subject to clause 25, Carrier shall be discharged from all liabilities for loss, damage or delay whatsoever unless suit is brought (filed) within 1 year after the delivery of the Goods or the date when the Goods should have been already delivered. The Parties may mutually agree to extend the time to bring suit.
B.      Claims based on a concealed loss or damage reported to Carrier within 15 days of the date of delivery to Shipper, shall be treated by Carrier as though an exception notation had been made on the delivery receipt at the time of delivery.

16.    CARRIER'S CONTAINERS

A. Carrier's containers offered to Shipper for loading of the Goods to be transported are to be in good condition, properly maintained and repaired, properly securable, clean, odor-free, dry, weather-proof and free of contamination and infestation.  All chassis and other equipment provided for Shipper's use will be in good operating condition and properly maintained and repaired. All such equipment shall be subject to inspection for suitability and cleanliness by Shipper, its agents, or its haulers, and unsuitable equipment may be rejected. Any costs resulting from the rejection or repositioning of any Carrier-supplied equipment will be for the account of Carrier unless due to a Shipper act or omission.
B. If Carrier's Containers are used by Shipper for pre-carriage, or on-carriage or unpacked at Shipper's premises, Shipper is responsible for returning the empty Containers, within ten (10) working days. Should a Container not be returned within the aforesaid time, Shipper shall be liable for detention charges.

C. Detention for Container shall be calculated for category as follows:
(1) Port to Port, Container Yard to Container Yard, and Container Freight Station to Container Yard shipments (Imports). The detention time starts when the Container is picked up at the port of entry and stops when the container is returned to the same port.
(2)  Port to Door and Door to Door Shipments (Imports) - The detention time starts when Carrier or Carrier's drayage agent notifies the consignee the Container is available to deliver to the consignee's door and stops when Carrier or Carrier's drayage agent is notified via email or facsimile the Container is empty and returned to the port.  Missed delivery appointments due to sole fault of Carrier or its drayage agent postpones the detention start time accordingly.  Port or Carrier delay shall not be charged against Shipper, to the extent such delay is due to (i) a Force Majeure (as defines under clause 17) or (ii) to the Shipper.
D.  Shipper shall be liable for any loss of or damage to Carrier's Containers and other equipment while in the custody of Shipper or anyone acting on Shipper's behalf, ordinary wear and tear excepted and except if caused by Carrier or its agents or contractors, including the owner or lessor of the Container.

17. SHIPPER'S DESCRIPTION
Subject to clause 11 (A), the Shipper's description of the Goods stuffed in a sealed Container by Shipper, or on its behalf, shall be binding on Carrier, and the description declared by Shipper on the front of the Bill of Lading shall be presumptive evidence of its contents, subject to rebuttal through any available documentary evidence.  The Carrier shall not modify or in any way change the description or contents of the Bill of Lading or other document supplied by Shipper.

18. FORCE MAJEURE
A.      Force Majeure as used herein shall mean and include, without limitation, piracy, strikes, accidents, lockouts, acts of God, public enemy, terrorism, terrorist acts, government authorities, fire, marine and/or ground disasters, embargoes, riots, civil commotions, or laws, regulations, acts, or any other event whatsoever that is beyond the reasonable control of the affected Party.
B.      If either Party is prevented from performing any or all of its obligations under this Contract due to Force Majeure conditions, it shall notify the other Party promptly, but in any event within ten (10) calendar days, of the existence of such circumstances and of the nature and extent of their effect on its ability to perform its contractual obligations.  The Parties shall be excused from their respective obligations under this Contract to the extent of and for the duration of the disability, and upon cessation of the disability, all contractual obligations shall be reinstated, except that the MQC will be reduced on a pro rata basis for the period (by working day) of the disability.

C.        If the Carrier should assert a Force Majeure condition as an additional defense to its liability for loss or damage, as provided in Section 14, it is understood and agreed that the Carrier shall have the burden of proving that the condition is the cause of the loss  and that the Carrier is free from any negligence, willful misconduct, or violation of law.

## 19.  SHIPMENT RECORDS

A.  Carrier shall maintain original signed service contracts, amendments, and their associated records in an organized, readily accessible or retrievable manner for a period of five (5) years from the expiration or termination of this Contract. In addition, to the shipment records required to be maintained under 46 CFR Part 530.15, Carrier shall also maintain copies of Bills of Lading, manifest data and EDP reports, Shipper's statements of cargo shipped under this Contract, written communications issued by Carrier regarding such statements, freight receipts, Force Majeure correspondence and notices, and any correspondence concerning Shipper's or Carrier's failure to perform which affects Shipper's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices.  Upon request from Carrier, Shipper shall promptly submit to Carrier information and documents sufficient to verify the quantity and nature of Cargo shipped under this Contract.  Shipping documents provided by Shipper governing individual shipments under this Contract and all copies thereof should bear a notation showing the service Contract number of this Contract.  The designation by Shipper of Cargo as Contract Cargo by affixing the Contract number on the shipping documents provided by Shipper shall be made at the time of the issuance of the Bill of Lading and shall be conclusive. This Contract shall remain enforceable even if Shipper or its agent fails to provide this information.

Carrier shall provide, or cause its designated technology provider to provide, EDI 315 ocean shipment status information and reports meeting Shipper's requirements and to cooperate in the development of electronic data sharing initiatives of Shipper.

## 20.  INSPECTION OF THE GOODS

  The Carrier and/or any person to whom Carrier has sub-contracted the carriage or any person authorized by Carrier shall be entitled, but is under no obligation, to open any Container or Package at any time and to inspect the Goods on reasonable suspicion of a condition of mis-loading or misclassification of Goods. If by order of the authorities at any place a Container must be opened for inspection, Carrier shall be liable for any loss or damage incurred as a result of any opening, unpacking, inspection or repacking, solely to the extent such loss or damage arises from Carrier's wrongful actions or negligence in handling the Goods, and specifically excluding loss or damage resulting directly from the actions of such authorities or their agents or employees.  Should Carrier need to open any Container, it shall first notify Shipper, and thereafter reseal the Container and place the new seal number on the bill of lading and promptly provide such seal number to Shipper.  However, the replacement of the seal shall not act to limit Carrier's liability for loss or damage hereunder.

## 21.  SURVEYS

  In the event of a loss, damage or delay claim Carrier may conduct a marine survey, if desired, as soon as reasonably possible from the date of notice of a claim, Carrier may designate a representative to accompany the marine surveyor during the survey, but no Carrier's representative is required to be present during the survey.  Carrier shall provide Shipper with a copy of the survey as soon as possible after its completion,

## 22.  DANGEROUS GOODS

  At the time of shipment of dangerous Goods, Shipper shall, in compliance with the regulations governing the carriage of such Goods, have the same properly packed, distinctly marked and labelled and notify Carrier in writing of their proper description, nature and the precautions to be taken.

## 23.  NOTIFICATIONS AND DELIVERY

A.        Shipper is to be notified in writing of the arrival of the Goods and shall take commercially reasonable steps to take prompt delivery of the Goods.

B.        Refusal by Shipper to take delivery of the Goods within 30 days after receiving actual notice of the availability of the Goods being available for delivery, shall constitute a waiver by Shipper to Carrier of all and any claims whatsoever relating to the Goods or the Carriage,  Shipper shall be liable for any direct losses, damages, expenses and liabilities incurred and sustained by Carrier arising from such refusal, including but not limited to, the return of the Goods to their place of origin.

## 24.  INDEMNITY

A.        Subject to clause 25 hereunder, Carrier shall indemnify, defend  and hold Shipper, its Affiliates and their respective officers, directors, employees, agents, subcontractors, and permitted  assigns, harmless from and against all manner of liabilities, damages, fines, penalties, losses, costs and expenses (including reasonable attorneys' fees, settlements and judgments) that Shipper may incur as a consequence of claims being raised directly or indirectly  against Shipper by any third party in respect of the personal injury to or death of any person (including, without limitation, injury to or death of employees of Carrier or Shipper), or loss of or damage to any property (including, without limitation, damage to property of each Party, except loss of or damage to Goods which is governed by the terms and conditions of the Bill of Lading) due to the Carrier's negligent acts or omissions, violation of law, material breach of this Contract, or those of its employees, personnel, subcontractors or agents occurring in connection with the performance of this Contract.

B. Shipper agrees to indemnify, defend, and hold harmless Carrier, its officers, directors, agents, subcontractors, permitted assigns and employees against and from any and all damages, liabilities, fines, losses, costs and expenses (including reasonable attorneys' fees, settlements and judgments) that Carrier may incur as a consequence of claims being raised directly against Carrier by any third party due to any material breach by Shipper of this Contract.

C. The provisions of this Section shall survive the termination or expiration of this Contract.

25.   BILL OF LADING PROVISIONS

   The following Bill of Lading provisions, as modified and set forth below in this subsection, are incorporated to this Contract:

**(1) CARRIER'S RESPONSIBILITY**

**(1)(a) Delivery to Customs or Port Authorities** – Where any law or regulation applicable at the Port of Discharge or Place of Delivery provides that delivery of the Goods to the Shipper shall be effected by the customs or port authorities at the Port of   Discharge or Place of Delivery, notwithstanding anything to the contrary herein, delivery of the Goods by the Carrier to such   customs or port authorities shall be deemed to be lawful delivery of the Goods by the Carrier to the Shipper or Consignee and the  Carrier shall not be liable for any loss of or damage to the Goods which occurs for any reason whatsoever, other than the fault of  Carrier or as otherwise expressly provided herein, after delivery of the Goods by the Carrier to the customs or port authorities.

**(2) COMPENSATION AND LIABILITY PROVISIONS**

(2)(a) The Shipper agrees and acknowledges that the Carrier has no knowledge of the value of the Goods. Higher compensation   for loss or damage than that provided for in this Contract may be claimed only when, with the written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked   "Declared Value" on the front of a Bill of Lading and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the limits provided in this Contract. In such a case, any partial loss or damage shall be adjusted pro rata on the basis of such Declared Value.

(2)(b) When any claim is paid by the Carrier to the Shipper, the Carrier shall be automatically subrogated to all rights of the Shipper against any third party.

**(3) SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES**

Except as provided expressly herein, including Section 10, the Carrier does not promise or undertake to load, carry or discharge   the Goods on or by any particular Vessel, date or time, but shall use reasonable efforts to do so. In no event shall the Carrier be liable for consequential damages for any delay in scheduled departures or arrivals of any Vessel or other conveyances used to transport the Goods by sea or otherwise

**(4) MERCHANT-PACKED CONTAINERS**

If a Container has not been packed by or on behalf of the Carrier:

(4)(a) The shipper named on the Bill of Lading shall inspect the Container for suitability for carriage of the Goods before packing it

(4)(b) The Carrier shall not be liable for loss of or damage to the Goods caused by:

(i)  the manner in which the Goods have been packed, stowed, stuffed or secured in the Container, or

(ii) the unsuitability of the Goods for carriage in the Container supplied or for carriage by Container between the Ports or Places specified herein, or

(iii) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the shipper named on the Bill of Lading at or prior to the time when the Container was packed, or

(iv) packing refrigerated Goods that are not properly pre-cooled to the correct temperature for carriage or before the refrigerated Container has been properly pre-cooled to the correct carrying temperature.

(4)(c) The shipper named on the Bill of Lading is responsible for the packing and sealing of all shipper-packed Containers. Carrier shall not be liable in respect of loss or damage arising from or caused by (i) the way seal was affixed or (ii) tampered seal.

**(5) OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK**

(5)(a) Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Shipper unless it is specifically stipulated on the front hereof that the Containers or Goods will be carried under deck. If carried on deck, the Carrier  shall not be required to note, mark or stamp on the Bill of Lading any statement of such on-deck carriage. Save as provided in   clause (5)(b) such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall   participate in general average and shall be deemed to be within the definition of Goods for the purpose of COGSA or any compulsorily applicable legislation and shall be carried subject to such Rules or Act, whichever is applicable Carrier acknowledges that all such Goods shall be properly stacked and secured against the reasonable effects of transit.

(5)(b) Goods which are out of gauge and/or are stowed on or in open top containers, flat racks or platforms, and which are stated on the front hereof to be carried on deck, and all livestock whether carried on deck or under deck, are carried without any   responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the carriage  whether caused by unseaworthiness or negligence or any other cause whatsoever and the Hague Rules or the COGSA shall not  apply.

26.    INSURANCE

(a)  Carrier warrants and represents that its vessels are entered for P&I cover with P&I Associations that are members of the International Group of P&I Clubs. Carrier will upon request provide proof of entry for a particular vessel. Carrier shall also carry such bonds or other insurance as may be required by federal, state or local laws or regulations. Carrier has other insurances as required, including Chassis insurance in the US.

(b)  In addition, Carrier warrants and represents that its agent in the US has undertaken the following insurances with insurers rated at least A-, VII or higher:

  (i)  Workers' Compensation, in accordance with applicable law and in statutory amounts.

  (ii)  Employer's Liability Insurance– as per applicable policy limit.

  (iii)  General Liability Insurance with a minimum limit of liability of not less than one million dollars ($1,000,000) per occurrence providing coverage for bodily injury, property damage, advertising injury, and contractual liability.

  (iv) Business Automobile Liability with a minimum limit of one million dollars ($1,000,000) combined single limit Bodily Injury and Property Damage

  (v)  Carrier shall provide all insurance required herein so that all policies act and respond to any loss or liability of Carrier hereunder on a primary and non-contributory basis to any insurance held by Shipper. All insurance shall be written on an occurrence basis. The minimum coverage amounts set forth herein shall not act to limit or waive Carrier's liability hereunder. Shipper's failure to object to any lack of coverage, or deficiencies in such coverage, shall not act to limit or waive Carrier's obligation to secure any coverage set forth in this Agreement or required by applicable law and regulation.  Carrier shall pay all premiums, self-insured retentions, and deductibles for any of its insurance, or any claims submitted under such insurance. Failure of Carrier's insurance provider to accept a claim or to make payment for or on behalf of Carrier, will not act, limit, waive, or otherwise eliminate Carrier's responsibility for such claim, nor will Carrier's insurer's denial of any claim be considered as a valid reason for denial by Carrier or a reason for Carrier to provide a denial.

Carrier shall take no action or violate any insurance policy in a manner that would limit, waive, or eliminate coverage in any way

27.    NON-EXCLUSIVE CONTRACT

      It is understood and agreed between the Parties hereto that this is a non-exclusive Contract, and that Carrier shall be free to accept Goods for transportation from shippers other than Shipper and that Shipper shall be free to tender Goods for transportation to carriers other than Carrier.  Carrier acknowledges that, other than as is expressly provided for herein, Shipper has made no promises or guarantees of any type or kinds to the volume it will ship or to any revenue or profit to be attained by Carrier.

28.    INDEPENDENT CONTRACTOR

      A.   The Carrier shall perform the services hereunder as an independent Contractor and shall have exclusive control and direction of the persons operating equipment, loading or unloading, or otherwise engaged in providing services.  The Carrier assumes full responsibility for the acts and omissions of such persons.

      B.   The Shipper hereby certifies its status, and the status of all its Affiliates if any:
          owner of the cargo.

29.    ASSIGNMENT (NON-ASSIGNABILITY)

The rights and obligations of this Contract hereunder are personal to Carrier and Shipper and this Contract shall not be assignable or otherwise transferable by either Party, in whole or in part, without the written consent of the other Party, except that Shipper shall be entitled to assign or transfer this Contract to a parent or any Affiliate and Carrier shall be entitled to assign or transfer its receivables to any bank or lending institution so long as Carrier remains liable for the services hereunder, and such institution takes no action to prevent Shipper from getting the intended benefits of this Contract, without the other Party's written consent, such consent not to be unreasonably denied, delayed, or conditioned.

30.    NOTICES

Notices hereunder shall be given by U.S. mail, postage prepaid via registered mail, return receipt requested, or by U.S. nationally recognized overnight courier, to the Parties at the following addresses:

To SHIPPER:

Bed Bath & Beyond Inc.
650 Liberty Avenue, Union, NJ 07083
United States of America
Attn: Sr. Vice President Supply Chain

and a copy to its General Counsel at the same address

To CARRIER:

Mediterranean Shipping Company (USA) Inc.

420, 5th Avenue

(At 37th Street) – 8th Floor

New York, N.Y. 10018-2702

United States of America

Attn: Ronald Milone

31.    APPENDICES

Attached hereto and expressly made a part hereof are various appendices.  Subsequent to the execution hereof by Shipper and Carrier, further addenda may be added hereto and shall also become a part hereof. Each addendum shall be executed by an authorized officer of each party and dated and sequentially numbered.

32.    GOVERNING LAW

It is the intention of the Parties that the provisions of this Contract shall be construed and enforced according to the laws of the United States and the laws of the State of New York, without giving effect to any conflict of law provisions, to the extent that they are not inconsistent with applicable U.S. federal laws. Carrier consents to the exclusive jurisdiction of the United States District Court for the Southern District of New York, or the Supreme Court of the State of New York located in Manhattan, as applicable, and waives any objection or defense thereto including on the basis of personal jurisdiction or venue, or inconvenient forum.

33.    CONFIDENTIALITY

As part of the business relationship between Carrier and Shipper, Carrier may be in or come into possession of information or data, which constitute trade secrets, know-how, confidential or proprietary information or are otherwise considered secret by Shipper (hereinafter called "Confidential Information").  In consideration of the receipt of such information and potential business, Carrier agrees to a) maintain such information in the utmost of confidence; b) share such Confidential Information only with its officers, employees, subcontractors, insurers, legal advisors, auditors and agents, only on a need-to-know basis, ensuring that they are bound in writing by terms of confidentiality substantially similar to these c)  use such solely in connection with this business relationship with Shipper; and to take all measures necessary to protect such information. Notwithstanding the above, the obligations under this clause shall not apply to

A.  Information that, at the time of disclosure is, or after disclosure become part of the public domain other than as a consequence of a breach of this Contract.

B.  Information that was known to a Party prior to its disclosure to the other Party;

C.  Information that is independently developed by either Party without the use of any of the other Party's information.

D.  Information required to be disclosed by Carrier for a shipment transported by Carrier on a vessel operated by another ocean common carrier, provided that such other carrier agrees in writing to terms of confidentiality substantially similar to these; or

This clause 33 shall apply mutatis mutandis in favour of the Carrier.

Notwithstanding the above, Carrier shall have the right to provide information related to shipments made under this Contract to third parties, including customs, port authorities or any other supply chain intermediaries  Carrier may also provide such information to governmental authorities of proper jurisdiction pursuant to applicable law.

34.    SEVERABILITY

If any phrase, clause, sentence, or other provision contained in this Contract violates any applicable statute, ordinance, rule or law, such phrase, clause, sentence or provision shall be ineffective to the extent of such violations without invalidating any other provision of this Contract.

35.    ENTIRE CONTRACT

This Contract and the attached Appendices represent the entire understanding of the Parties on the subject matter herein and cannot be amended except in writing signed by both Parties.  All prior discussions, understandings, negotiations, and contracts, whether oral or in writing, are superseded and made null and void by this Contract.

36.    ESSENTIAL TERMS AND ITS PUBLICATION

The essential terms applicable to this Contract, as defined by law, have been summarized in the Appendices attached hereto, which will serve as the Essential Terms document to be published in tariff format and filed with the FMC by Carrier, if this Contract is subject to FMC jurisdiction.

37.    C-TPAT COMPLIANCE:

The Parties agree to participate in and comply with the United States Customs Trade Partnership Against Terrorism ("C- TPAT") program and guidelines applicable to ocean carriers, importers and exporters..  If either Party believes that it cannot comply with any initial or amended C-TPAT guidelines applicable to it, then it shall promptly inform the other Party of the particular guideline(s) that cannot be followed, and the Parties shall confer with each other to establish a reasonable period of time for the non-compliant Party becoming compliant with such guideline(s). If either Party is unable or unwilling to comply with the C-TPAT guidelines for their

respective businesses within an acceptable period of  time, which time period shall be determined within the compliant Party's sole discretion, then the compliant Party shall have the   right to terminate this Contract immediately.

38.    ETHICAL CONDUCT POLICY

It is the policy of Shipper, and its Affiliates specified in Appendix A (if any upon mutual agreement), to conduct all its business transactions in accordance with the highest ethical standards: No individual who is employed by or who represents Shipper is permitted to solicit, accept or pay any bribe, kickback or any other improper payment of money, products or services in exchange  for (i) Shipper's execution of this Contract, (ii) any action taken by such individual on behalf of Shipper, or (iii) any action taken by  Carrier. If any such improper actions are observed, please contact Shipper's Legal Department (Attention: General Counsel) at   908-688-0888 so that the incident may be fully investigated, and appropriate remedial action taken.

39.    SANCTIONS

Each Party will comply in relation to this Contract with U.S. extraterritorial sanctions laws and any other applicable sanctions and export controls laws and regulations ("Sanctions Laws"). Each Party shall not cause the other Party to violate Sanctions Laws.

Each Party  represents and warrants for itself  that it is not a person listed on the Specially Designated Nationals and Blocked Persons List of the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC), any other similar list maintained by the Council of the European Union and the State Secretariat for Economic Affairs of Switzerland or otherwise targeted by the Sanctions Laws, whether designated by name or by reason of being included in a class of persons ("Restricted Party").

The Shipper warrants that in relation to this Contact:

i.        no Restricted Party has an interest in any cargo or container shipped; and
ii.       no cargo or container shipped is subject to any restriction under Sanctions Laws

Carrier may refuse the Shipper's cargo if it has reasonable suspicion that the cargoes and/or containers are in breach of Sanctions Laws.

Either Party shall have the right to terminate this Contract with immediate effect and without any liability in case of breach of any Sanctions Laws by the other Party and without any further obligation.

40.    SEAWAY BILL OF LADING

Carrier shall at request of Shipper, evidence shipments under the Contract by seaway bill of lading. In the event of a conflict between the terms and conditions of the Contract and the terms and conditions of the seaway bill of lading, the terms and   conditions of the Contract shall prevail.

41.    AMENDMENTS AND ELECTRONIC SIGNATURE

No amendment or modification of this Agreement shall be of any force or effect unless it is in writing and executed on behalf of the Parties to this Agreement.  The Parties agree that this Agreement or any amendments may be executed via DocuSign or similar e-signature mechanism by an authorized representative.

IN WITNESS WHEREOF, the parties have caused this Contract to be executed by their duly authorized representatives as of the date first above written.

Shipper: Bed Bath & Beyond Inc.    Supply Chain


Carrier: MSC Mediterranean Shipping Company SA

By: Pasquale Formisano, Senior Vice President



APPENDICES

The following appendices are incorporated herein by reference and made a part hereof:

APPENDIX A –Affiliates
APPENDIX B - Rates and Services
APPENDIX C –Salvage Agreement
APPENDIX D - Essential Terms (To be Filed with FMC)

Sensitivity: Internal

**APPENDIX A – Affiliates**

Liberty Procurement Co, Inc.
650 Liberty Avenue
Union, NJ 07083
United States

Buy Buy Baby
650 Liberty Avenue
Union, NJ 07083
United States

Harmon Stores Inc.
650 Liberty Avenue
Union, NJ 07083
United States

Sensitivity: Internal

**Appendix B - Rates and Services**

Sensitivity: Internal

**Appendix C**
**SALVAGE AGREEMENT**

For valuable consideration received, SHIPPER and CARRIER agree as follows:

1.  If any product has not been delivered and for which a claim has been filed is located or recovered by CARRIER, regardless of whether the claim has been paid, SHIPPER must be notified immediately.

2.  No product for which a claim has been filed can be sold or otherwise transferred to a salvor, jobber or any third party without CARRIER first contacting SHIPPER and obtaining authorization when SHIPPER is the owner of the goods. Nor shall any such product or goods be passed to any of CARRIER's internal salvage procedures without such notice.

3.  If SHIPPER authorizes passing such product to Salvage or to any third party, CARRIER will remove all price tags, labels, brands or trademarks identifying SHIPPER or which contain any of SHIPPER's trademarks (e.g., A Step Beyond, Beyond, Beyond Indulgence) prior to such transfer or salvage. CARRIER shall be compensated at the hourly billing rate for such work performed unless CARRIER was responsible for the damage incurred.

4.  In any salvage on sale of SHIPPER's product, CARRIER shall contract to include the following terms as conditions of the contract and make commercially reasonable efforts to ensure compliance therewith:

    (i)    The SHIPPER's name shall not be used in any advertising or signage of any statement or phrase that might identify such product

    (ii)   Any goods to be passed to Salvage shall be prominently, permanently and incurably marked in such a way that their nature as salvage goods cannot be mistaken; that is, in such a state as to prevent such goods from being returned to SHIPPER's stores as customer purchase; and

    (iii)  SHIPPER expressly disclaims any and all warranties, express or implied, including, without limitation any warranties of merchantability, fitness for a particular purpose, or non-infringement of the intellectual property rights of a third party.

.
5.  At the reasonable request of SHIPPER, CARRIER will destroy recovered goods where such goods represent a safety hazard to consumers.

ACCEPTED AND AGREED:
CARRIER:    _____
Name:       _____
Title:      _____

Sensitivity: Internal

Sensitivity: Internal

**APPENDIX D - ESSENTIAL TERMS (To be Filed with FMC)**

**ESSENTIAL TERMS**

1. "Effective Date" and "Term":  May 1, 2021 – April 30, 2022

2. Name and address of Carrier:  MSC Mediterranean Shipping Company SA – 12-14 Chemin Rieu, 1208 Geneva, Switzerland

3. Name and address of Shipper:  Bed Bath & Beyond Inc. and its Affiliates, .650 Liberty Avenue, Union, NJ 07083, United States of America

4. Cargo Owner Certification: Pursuant to Federal Maritime Commission ("FMC") regulation 46 C.F.R. 530.6, Shipper, certifies its status as the Owner or Consignee of the cargo shipped hereunder.
   Bed Bath & Beyond Inc. shall be under a continuing obligation to comply with all FMC requirements and to report to the Carrier any change in its status.

5. Origin Port Pairs (further detailed in Appendix B): India, Sri Lanka, Pakistan, Turkey, Egypt, China, Thailand, Indonesia, Cambodia, Vietnam, Korea, Taiwan, Malaysia, Singapore, Philippines

6. Destination Port Pairs (further detailed in Appendix B): United States

7. Minimum Quantity Commitment: ~~8,480 TEUs~~  **4615 TEUS (AMN 18)**

8. Commodities:  General Department Store Merchandise in Mixed or Straight loads

9.  Rates, Services and Related Terms: As set forth in Rates and Service Appendix (Appendix B).

10. Records:
All requests relating to the Federal Maritime Commission ("FMC") for records should be addressed to:
MSC Mediterranean Shipping Company SA, Att: Reto Giddey, +41 22 703 8888
12-14 Chemin Rieu, 1208 Geneva, Switzerland

With a copy to
Mediterranean Shipping Company (USA) Inc., Att: Paolo Magnani 420,
5th Avenue, New York, N.Y. 10018-270, United States

11. Affiliates: as per Appendix A

## Amendment N° 18

Dated 5th May 2022

to the

## OCEAN CARRIER AGREEMENT
## 21-418WW
dated 1st May, 2021

between

## MSC Mediterranean Shipping Company SA
with its registered office at 12-14, Chemin Rieu,
1208 Geneva, Switzerland
("Carrier")

and

## Bed Bath & Beyond Inc.
650 Liberty Avenue Union,
NJ 07083, United States of America
("Shipper")

(both hereinafter referred to as "the Parties")

This amendment (the "Amendment") is made by MSC Mediterranean Shipping Company S.A. and Bed Bath & Beyond Inc., parties to the **OCEAN CARRIER AGREEMENT** signed in 1st May 2021 ("the Agreement").

**Appendix B** is amended as follows:

### RELAY: ADDED POL TEKIRDAG (ASYAPORT), AMENDED MQC

| Port(s) of load |
|---|
| ALIAGA,GEMLIK,ISTANBUL,IZMIR,**TEKIRDAG (ASYAPORT) (AMN 18)** |
| ALIAGA,GEMLIK,ISTANBUL,IZMIR,**TEKIRDAG (ASYAPORT) (AMN 18)** |
| MERSIN |
| MERSIN |
| ALIAGA,GEMLIK,ISTANBUL,IZMIR,**TEKIRDAG (ASYAPORT) (AMN 18)** |
| ALIAGA,GEMLIK,ISTANBUL,IZMIR,**TEKIRDAG (ASYAPORT) (AMN 18)** |
| MERSIN |
| MERSIN |
| ALIAGA,GEMLIK,ISTANBUL,IZMIR,**TEKIRDAG (ASYAPORT) (AMN 18)** |
| ALIAGA,GEMLIK,ISTANBUL,IZMIR,**TEKIRDAG (ASYAPORT) (AMN 18)** |
| MERSIN |
| MERSIN |

Sensitivity: Internal

Global MVC/TEUs:        ~~8480 TEUS~~
                        **4615 TEUS (AMN 18)**

**INDUS (DT): EXPIRED RA**

~~Effective to:~~        ~~30th April 2022~~
                        **25th April 2022 (AMN 18)**

**FAR EAST (DT), FAR EAST (PR), FAR EAST, INDUS (PR), INDUS: AMENDED MQC**

Global MVC/TEUs:        ~~8480 TEUS~~
                        **4615 TEUS (AMN 18)**

**Essential Terms**

Except as set forth in this Amendment, the Agreement is unaffected and shall continue in full force and effect in accordance with its terms. If there is conflict between this

Amendment and the Agreement or any earlier amendment, the terms of this Amendment will prevail.

**IN WITNESS** of which this Amendment has been executed on the date appearing below.

**Signatures**

...................................................          ...................................................
For and on behalf of MSC Mediterranean          For and on behalf of Bed Bath & Beyond Inc.
Shipping Company SA, by its duly authorised
agent MSC MEDITERRANEAN SHIPPING          Juan Guerrero
COMPANY (USA) INC.
...................................................
                                                ...................................................
Print name                                      Print name

...................................................          ...................................................
Position                                        Position
...................................................          SVP Supply Chain

                                                ...................................................
Date                                            Date

MSC Mediterranean Shipping Company S. A/ Bed Bath & Beyond Inc.
Amendment 1 to the Ocean Carrier Agreement 20-572WW dated 1st July 2020

Sensitivity: Internal

*BED BATH & BEYOND INC.  /MSC*                                                                                           *STRICTLY CONFIDENTIAL*

MSC Mediterranean Shipping Company S. A/ Bed Bath & Beyond Inc.
Amendment 1 to the Ocean Carrier Agreement 20-572WW dated 1st July 2020

Sensitivity: Internal

## BED BATH & BEYOND INC. SERVICE CONTRACT

**(AMN 21)**    **TERMS AND CONDITIONS**

THIS SERVICE CONTRACT ("Contract"), made and entered into as of the 1st of May , 2022 by and between Bed Bath & Beyond Inc., with  its principal offices at 650 Liberty Avenue Union, NJ 07083 United States of America on behalf of  itself and its Affiliates as listed in Appendix A, attached hereto (hereinafter  collectively referred to as "Shipper"), and MSC Mediterranean Shipping Company SA, , with its principal offices at Chemin Rieu 12-14,  Geneva 1208, Switzerland (hereinafter called "Carrier") (each a "Party", collectively the "Parties").

1. DEFINITIONS

"Bill of Lading" means the Carrier's bill of lading or sea waybill as the case may be.

"Carriage of Goods by Sea Act" or "COGSA" means the Carriage of Goods by Sea Act, set forth in the note following 46 U.S.C. Sec. 30701.

"Carrier" means MSC Mediterranean Shipping Company SA.

"Consignee" means the person entitled to take delivery of the Goods and named on the Bill of Lading as such.

"Container" means an ISO standard 20, 40, 40HC and 45-foot container. The term includes dry cargo, refrigerated and flat rack containers.

"Contract" shall mean this Contract, including all appendices attached hereto and such other documents as are expressly named herein, all of which are expressly incorporated herein by this reference.

"Customary Freight Unit" means any physical unit of cargo not shipped in a package, including machinery and vehicles (whether new or used) and shall have the meaning given to it by the jurisprudence of the Maritime Law of the United States.

"Freight Charges" means the remuneration payable to Carrier for the carriage of Goods under this Contract as set forth herein.

"Goods" means the merchandise, articles and commodities specified or identified in this Contract and include the packing, the packaging material and container not supplied by or on behalf of Carrier.

"MQC" shall mean Minimum Quantity Commitment specified in this Contract.

"Package" means a material unit containing Shipper's Goods, notwithstanding its weight, dimension or volume.
Notwithstanding anything to the contrary, the loaded Container shall not be considered to be or construed as the package or unit, and package or unit to be the actual number of packages within the container in a non-unitized state.

"Port-to-Door" means through transportation of a Container and its contents from a foreign port to a domestic facility of Shipper.

"Port-to-Port" means transportation of a Container and its contents from a foreign port to a domestic port.

"Shipper" means Bed Bath & Beyond Inc. and its Affiliates listed in Appendix A (whether in the capacity as the consignor, consignee or owner of the Goods) and anyone authorized to act on their behalf.

"Sub-Contractor" means owners and operators of vessels (other than Carrier), stevedores, terminal, warehouse, road and rail transport operators, motor carriers and any independent contractor employed by a Carrier in the performance of the carriage or in providing services hereunder and any sub-sub-contractor thereof.

"Vessel," means the vessel named in the Bill of Lading, and any feeder vessel, lighter or barge used by or on behalf of a Carrier in connection with any seaborne leg of the carriage.

The term "Affiliate" as used herein shall mean the entities listed in Schedule A.  a subsidiary or holding company of the Shipper or a subsidiary of such holding company or an entity which controls, is controlled by, or is under the common control of the Shipper. "Control" means (a) the power to directly or indirectly control the direction or management of an entity, whether by contract or otherwise; and/or (b) the ownership of more than fifty per cent (50%) of the issued share capital or beneficial ownership of an entity

Initial capitalization on terms defined is not required in the use of any of the foregoing defined terms.

2.  APPLICATION
    A.            The provisions of this Contract are applicable to all services requested by Shipper and provided by Carrier during the term of the Contract, and to all shipments duly tendered by Shipper and accepted by Carrier.  Once MQC is met, the Carrier may send a written notice to the Shipper in order to renegotiate the Rates. If Carrier does so, the Rates will continue to apply until an agreement on new rates is reached by the Parties. If no agreement is reached within thirty (30) days from notice sent by Carrier, either Party shall be entitled to immediately terminate the Agreement by sending a written notice to the other Party.


    B.  Shipper may add or remove one or more Affiliates covered hereunder by written notice to Carrier and amendment of this Contract at any time.  Consent to such amendment shall not be unreasonably withheld.
    C.  The terms and conditions of this Contract shall at all times govern all responsibilities of Shipper and Carrier in connection with or arising out of the acceptance and carriage of Shipper's Goods.  The terms and conditions of any Bill of Lading issued by Carrier shall also apply to the acceptance and carriage of Shipper Goods, but to the extent such terms and conditions conflict in any way with any term or condition of this Contract, this Contract shall govern.
    D.  The provisions of this Contract are applicable without regard to the nationality of the Vessel, Carrier, its sub-contractors, Shipper or any other interested person.


3.  TERM OF CONTRACT
This Contract shall be effective beginning on the Effective Date and continuing for the Term, as both are defined in Appendix D, unless earlier terminated as provided below, or extended by agreement of the parties hereto (the "Parties").


4.  TERMINATION
A.  This Contract may be subject to early termination only as follows:
    (1)  by either Party effective immediately for any material breach hereof by the other Party which remains uncured thirty (30) days after written notice from the aggrieved Party to the offending Party, specifying the nature of the breach; or if the Parties agree it will take more than thirty (30) days to cure the breach, the cure has not commenced and been diligently pursued within thirty (30) days or is not diligently pursued thereafter; or
    (2)  by either Party effective upon ten (10) days' written notice if a Force Majeure condition as defined herein is declared by the other Party and continues unabated for a period exceeding twenty (20) consecutive days.  If a force majeure event is called by Carrier, each Party   will make reasonable efforts to effect a work around plan to limit or eliminate the event prior to the event being applicable.
    (3) by Shipper in the event Carrier's licenses, permits, authorities, and/or registrations, and/or insurance required hereunder or by applicable law for it to act under this Contract are canceled, suspended, or materially negatively altered.
B.   If this Contract is required to be filed with the Federal Maritime Commission ("FMC") it shall be Carrier's sole responsibility to promptly do so, and Carrier shall promptly notify the FMC of early termination in the manner required by that agency.
C.   Upon the termination or expiration of the Contract, each Party shall promptly and reasonably assist the other with removal of all Goods and other owned or leased materials, products and equipment then within its care, custody or control belonging to the other party. Each Party shall bear the actual and reasonable expenses incurred in fulfilling its obligations to do so. In the event of early termination for breach, the obligation of the non-breaching Party, or by Shipper pursuant to sub-section 4(A)(3), with respect to MQC shall be reduced to the amount shipped as of termination.
D.   The Parties intend that the contractual arrangement be continuous in nature until such time as the Contract expires or is terminated by one or both of the Parties. In the event that no agreement is reached this Contract shall be terminated. Termination or expiration of the Contract shall not relieve or release either Party from any rights, liabilities, or obligations that have previously accrued under law or the terms of the Contract prior to the date of expiration or termination.

5.   GOODS
  The Goods to which this Contract applies are all those commodities and materials specified or described in Appendix D annexed hereto.

6.   PORTS OF ORIGIN
  The Ports of Origin to which this Contract applies are specified or described in Appendix B annexed thereto.


7.   PORTS OF DESTINATION
  The Ports of Destination to which this Contract applies are specified or described in Appendix B annexed thereto.

8.   LOADING PORTS, DISCHARGE PORTS, INTERMODAL PORTS

The Loading Ports, Discharge Ports and Intermodal Ports to which this Contract applies are specified or described in Appendix B annexed thereto.

9.    MINIMUM QUANTITY COMMITMENT; FORECASTS
      A.    Shipper agrees to tender to Carrier, and Carrier agrees to accept from Shipper, the minimum quantity commitment (hereinafter MQC) specified in this Contract at 5200 FEUs (10,400 TEUs) in monthly installments of 433 FEU's. Shipments shall be deemed within the scope of this Contract and shall be counted toward the MQC if made by Shipper or by an authorized agent on behalf of Shipper.  The Carrier may accept booking requests for the requested sailing date always subject to space and equipment availability.  The Carrier shall use its reasonable endeavor reply to booking requests within seventy-two (72) hours.

For purposes of calculating the MQC the following FEU Equivalent conversion table will apply:

| | |
|---|---|
| 20' container | 0.5  FEU – or 1 TEU |
| 40' container | 1.0  FEU – or 2 TEUs |
| 40' H/C container | 1.125  FEU |

      B.    Forecasts. In order to facilitate load planning, Shipper will provide Carrier with regular monthly rolling forecasts by origin and destination.  These forecasts are for information purposes only and are not binding on Shipper or Carrier.

      C.    MQC: see Appendix D

10.    PARTIES OBLIGATIONS
      A.    Shipper Obligations
As stated in Section 9, Shipper will provide adequate forecasts to Carrier that will allow for load planning. Shipper agrees to give ten (10) days booking notice before CY closing wherever practicable but no less than, eight (8) days, to the Carrier for any Contract shipments.

      B.    Carrier Obligations
          i    Subject to Section 10(A), Carrier will use reasonable commercial efforts to satisfy the scope and level of the Shipper's forecasted requirements,

      C.    If Containers are booked at least eight (8) days prior to the scheduled departure date for the particular voyage, Carrier will use reasonable efforts to accept more than said MQC of containers but shall not be obligated to do so.

      D.    Service Failure - Carrier
If the Carrier fails to carry the quantities specified above for any consecutive 3-month period the annual MQC shall, at the option of the Shipper be reduced by the amount of the shortfall during said period. This shall be the Shipper's sole and exclusive remedy in the event Carrier fails to meet its obligations to carry the Shipper's MQC under this Contract.

      E.    Discontinuance of Service.
In the event Carrier should discontinue service to or from any origin or destination port set forth in this Contract, Carrier shall    provide Shipper a minimum of thirty (30) days written notice unless such discontinuance is decided within less than thirty (30) days in which case Carrier shall provide Shipper with a written notice as soon as possible, and Shipper and Carrier shall negotiate in good faith an amendment of the Contract reflecting the resulting change in service.  If agreement on such an amendment cannot be reached, then the MQC may, at the option of the Shipper, be reduced accordingly, and the Contract amended to reflect the reduction. In the event Shipper should make material sourcing changes to or from any origin or destination port set forth herein, Shipper and Carrier shall negotiate in good faith an amendment to this Contract reflecting the resulting quantity change.  If agreement cannot be reached, then the MQC may, at the option of the Carrier, be reduced and the Contract amended accordingly.

11.    BILLS OF LADING
      A.    Each shipment received pursuant to this Contract shall be evidenced by a Bill of Lading signed by Carrier showing the kind, quantity and condition of commodities.  Such Bill of Lading shall be prima facie evidence of receipt of such commodities by Carrier in apparent good order and condition unless such commodities are not readily observable (contents and condition of contents of packages unknown) or as may be otherwise noted on the face of such receipt.

      B.    Carrier's duties and responsibilities under this Contract shall commence when Carrier takes possession and control of the Goods or upon execution of such Bill of Lading by Carrier, whichever occurs first, and shall end when Carrier delivers the Goods.

      C.    As indicated on the face of the Bill of Lading, shipments pursuant to this Contract may be "Port-to-Door" or "Port-to-Port" shipments. All Bills of Lading shall be "Combined Transport Bills of Lading" to the named destination and Carrier

shall be liable to Shipper for loss or damage in accordance with the terms of this Contract regardless of any separate contracts entered into by Carrier with any sub-contractors.

D.        To the extent any term or condition of such Bill of Lading or receipt conflicts in any way with any term or condition of this Contract, this Contract shall govern.

12.    RATES, ACCESSORIAL CHARGES & SURCHARGES
A.        As complete compensation for the services provided by Carrier pursuant to this Contract, Carrier agrees to charge, and Shipper agrees to pay the rates and charges specified in Appendix B (attached hereto and made a part hereof).  No modifications or adjustments to such rates and charges shall be valid unless contained in a written and duly executed amendment to this Contract.
B.        The rates and charges included in this Contract are all-inclusive and shall be the entire cost of the transportation provided.  No assessorial or arbitrary charges or surcharges of any kind that would affect the cost of the services performed hereunder, including but not limited to any general rate increase, peak season surcharge, terminal handling charge, currency adjustment charge, equipment charge, or any other surcharge that are not included in Appendix B shall apply to the shipments tendered by Shipper under this Contract, unless mutually agreed upon by the Parties. If mutual agreement is not reached either Party may terminate this Agreement without penalty by giving the other Party thirty (30) days written notice.

Provided, however, that in the event this Contract is amended to reduce any rates or charges set forth in Appendix B, the preceding sentence shall be void and all of the rates set forth in Appendix B shall be subject to any rate increase published in the governing tariff that becomes effective on or after the effective date of such amendment.

C.        Notwithstanding any provision herein to the contrary whatsoever, where the Carrier is subject to extra or increased costs in the performance of this Contract which (i) arise from facts or circumstances which were not within the reasonable contemplation of the Parties at the time this Contract was made, and (ii) are raised by a third party, subcontractor or company used by the Carrier in the performance of this Contract, the Carrier shall be entitled to add the extra or additional costs to the total costs invoiced to the Shipper and they shall apply as if the said extra or additional costs had always formed part of this Contract. The Carrier shall, if requested, provide documents in support of the extra or additional costs.

D.        In addition to the rates and charges specified in Appendix B, shipments tendered hereunder shall be subject to the MSC bunker formula/calculation and quarterly reviewed

E.        The rates and charges set forth in Appendix B (attached hereto and made a part hereof) are valid and fixed for the entire term of the Contract and Carrier shall not invoice Shipper for any amount that is not expressly authorized by this Contract, apart from new mandatory fees or surcharges imposed by governmental agencies subsequent to the execution of this Contract, over which  Carrier has no control, and then only upon a minimum of thirty (30) days written notice to Shipper.

13.    PAYMENT; PROCEDURE
A.    Carrier shall submit invoices to Shipper on a bi-weekly basis in the Shipper's standard format. Payment on undisputed amounts will be issued by the Shipper payable to the Carrier within thirty (30) calendar days after the invoice date. Shipper shall notify Carrier of any disputed items within fifteen (15) days of receipt of any invoice. Carrier will issue a corrected invoice or notify Shipper that the disputed items are valid within thirty (30) calendar days.
B.    Carrier agrees to maintain, in accordance with the law and reasonable commercial standards such records as may be necessary to adequately reflect the accuracy of Carrier invoices under this Contract.
C.    Save for its lien in case of general average and salvage, Carrier shall not hold any of Shipper's Goods, refuse any booking, or withhold any Service solely on account of a dispute with Shipper, and Carrier waives its rights to all other liens at law or in equity on the goods or other property of Shipper.
D.    Time Limits; Overcharge and Undercharge Claims.  Carrier shall have two (2) years from date of shipment to file a civil action to recover Freight Charges, including, but not limited to, undercharge claims relating to shipments transported pursuant to this Contract.  Shipper shall have two (2) years from the date of delivery to file a civil action to recover overcharge claims, except that Shipper's claims for duplicate payments may be corrected at any time.

14.    LIABILITY FOR LOSS, DAMAGE
A.    For shipments to or from a port in the United States, Carrier agrees that it assumes the liability of a common carrier for actual loss, subject to the limitations and defenses set forth in the Carriage of Goods by Sea Act ("COGSA"), namely $500 per Package, as defined herein, such liability to exist from the time of the receipt of said Goods by Carrier until proper delivery has been made, and such liability shall exist regardless of any separate contracts entered into by Carrier with any sub-contractors.

Sensitivity: Internal

B. The measure of damages for loss or damage shall be the invoice value of the Goods, plus freight as well as duty and insurance, if paid; or, in absence of such invoice, the sound market value of the Goods at the place and at the time they are delivered or should have been delivered.

C. Save in the event the damage is caused by Shipper, its employees, agents or subcontractors , Carrier shall also be liable for Shipper's documented actual and reasonable expenses incurred in mitigation of damage, including inspection, sorting, segregating, refurbishing, repackaging and re-shipping

D. Nothing in this Contract shall prejudice any right of recourse as between Carrier and its sub-contractors.

E. Except in the event of a declared General Average act or circumstance neither Carrier, nor any servant or agent of Carrier, shall be entitled to the benefit of any otherwise applicable limitation of liability if it is proven that the loss or damage resulted from an act or omission of Carrier, or its agents, or subcontractors done with the intent to cause such loss or damage or recklessly that such loss or damage would probably result.

F. Goods that have been tendered to Carrier intact and in compliance with all applicable laws and regulations and are released in damaged form or lost subsequent to such tender shall be presumed to have been damaged or lost by Carrier.  Such presumption shall be subject to rebuttal only by "clear and convincing" documentary evidence presented to the contrary by Carrier.

G. Carrier's liability  obligations under this Section shall in no way be limited by the policy limits of any insurance Carrier is required to carry by law or this Contract.

H. All damaged Goods are to be handled by Shipper, and Shipper is entitled to handle it in any way desired, provided that due credit for the value of salvageable Goods (less the costs of the salvage) is given to the Carrier if Goods are salvaged. . It is the Shipper's responsibility to arrange with the consignee all rights necessary to perform the salvage. Subject to the foregoing, Carrier has no salvage rights in any such damaged Goods.


If a Shipper-stuffed Container is delivered by Carrier without the origin seal intact, such delivery shall be presumptive evidence that any loss occurred while the Goods were in the possession and control of Carrier.   Delivery with an intact seal shall not relieve Carrier from liability if it is proven that the loss or damage occurred while the Goods were in the possession and control of Carrier.


15.    CLAIMS AND TIME BAR

A.        Subject to clause 25, Carrier shall be discharged from all liabilities for loss, damage or delay whatsoever unless suit is brought (filed) within 1 year after the delivery of the Goods or the date when the Goods should have been already delivered. The Parties may mutually agree to extend the time to bring suit.

B.        Claims based on a concealed loss or damage reported to Carrier within 15 days of the date of delivery to Shipper, shall be treated by Carrier as though an exception notation had been made on the delivery receipt at the time of delivery.


16.    CARRIER'S CONTAINERS

A. Carrier's containers offered to Shipper for loading of the Goods to be transported are to be in good condition, properly maintained and repaired, properly securable, clean, odor-free, dry, weather-proof and free of contamination and infestation.  All chassis and other equipment provided for Shipper's use will be in good operating condition and properly maintained and repaired. All such equipment shall be subject to inspection for suitability and cleanliness by Shipper, its agents, or its haulers, and unsuitable equipment may be rejected. Any costs resulting from the rejection or repositioning of any Carrier-supplied equipment will be for the account of Carrier unless due to a Shipper act or omission.

B. If Carrier's Containers are used by Shipper for pre-carriage, or on-carriage or unpacked at Shipper's premises, Shipper is responsible for returning the empty Containers, within 7 calendar days free time per diem at destination. . Should a Container not be returned within the aforesaid time, Shipper shall be liable for detention charges.    Chassis will not be included in the above free time, and will be per Carrier's tariff.

C. Detention for Container shall be calculated for category as follows:
(1) Port to Port, Container Yard to Container Yard, and Container Freight Station to Container Yard shipments (Imports). The detention time starts when the Container is picked up at the port of entry and stops when the container is returned to the same port.
(2) Port to Door and Door to Door Shipments (Imports) - The detention time starts when the container is picked up from the terminal and is returned empty to the same.  In the event a terminal does not allow scheduled pick-up or return   of a container, then demurrage and/or detention will not apply to the succeeding days.  Missed delivery appointments due to sole fault of Carrier or its drayage agent postpones the detention start time accordingly.  Port or Carrier delay shall not be charged against Shipper, to the extent such delay is due to (i) a Force Majeure (as defines under clause 17) or (ii) to the Shipper.

D.  Shipper shall be liable for any loss of or damage to Carrier's Containers and other equipment while in the custody of Shipper or anyone acting on Shipper's behalf, ordinary wear and tear excepted and except if caused by Carrier or its agents or contractors, including the owner or lessor of the Container.

17.  SHIPPER'S DESCRIPTION

Subject to clause 11 (A), the Shipper's description of the Goods stuffed in a sealed Container by Shipper, or on its behalf, shall be binding on Carrier, and the description declared by Shipper on the front of the Bill of Lading shall be presumptive evidence of its contents, subject to rebuttal through any available documentary evidence.  The Carrier shall not modify or in any way change the description or contents of the Bill of Lading or other document supplied by Shipper.

18.  FORCE MAJEURE

A.        Force Majeure as used herein shall mean and include, without limitation, piracy, strikes, accidents, lockouts, acts of God, public enemy, terrorism, terrorist acts, government authorities, fire, marine and/or ground disasters, embargoes, riots, civil commotions, or laws, regulations, acts, or any other event whatsoever that is beyond the reasonable control of the affected Party.

B.        If either Party is prevented from performing any or all of its obligations under this Contract due to Force Majeure conditions, it shall notify the other Party promptly, but in any event within ten (10) calendar days, of the existence of such circumstances and of the nature and extent of their effect on its ability to perform its contractual obligations.  The Parties shall be excused from their respective obligations under this Contract to the extent of and for the duration of the disability, and upon cessation of the disability, all contractual obligations shall be reinstated, except that the MQC will be reduced on a pro rata basis for the period (by working day) of the disability.

C.        If the Carrier should assert a Force Majeure condition as an additional defense to its liability for loss or damage, as provided in Section 14, it is understood and agreed that the Carrier shall have the burden of proving that the condition is the cause of the loss  and that the Carrier is free from any negligence, willful misconduct, or violation of law.

19.  SHIPMENT RECORDS

A.  Carrier shall maintain original signed service contracts, amendments, and their associated records in an organized, readily accessible or retrievable manner for a period of five (5) years from the expiration or termination of this Contract. In addition, to the shipment records required to be maintained under 46 CFR Part 530.15, Carrier shall also maintain copies of Bills of Lading, manifest data and EDP reports, Shipper's statements of cargo shipped under this Contract, written communications issued by Carrier regarding such statements, freight receipts, Force Majeure correspondence and notices, and any correspondence concerning Shipper's or Carrier's failure to perform which affects Shipper's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices.  Upon request from Carrier, Shipper shall promptly submit to Carrier information and documents sufficient to verify the quantity and nature of Cargo shipped under this Contract.  Shipping documents provided by Shipper governing individual shipments under this Contract and all copies thereof should bear a notation showing the service Contract number of this Contract.  The designation by Shipper of Cargo as Contract Cargo by affixing the Contract number on the shipping documents provided by Shipper shall be made at the time of the issuance of the Bill of Lading and shall be conclusive. This Contract shall remain enforceable even if Shipper or its agent fails to provide this information.

Carrier shall provide, or cause its designated technology provider to provide, EDI 315 ocean shipment status information and reports meeting Shipper's requirements and to cooperate in the development of electronic data sharing initiatives of Shipper.

20.  INSPECTION OF THE GOODS

The Carrier and/or any person to whom Carrier has sub-contracted the carriage or any person authorized by Carrier shall be entitled, but is under no obligation, to open any Container or Package at any time and to inspect the Goods on reasonable suspicion of a condition of mis-loading or misclassification of Goods. If by order of the authorities at any place a Container must be opened for inspection, Carrier shall be liable for any loss or damage incurred as a result of any opening, unpacking, inspection or repacking, solely to the extent such loss or damage arises from Carrier's wrongful actions or negligence in handling the Goods, and specifically excluding loss or damage resulting directly from the actions of such authorities or their agents or employees.  Should Carrier need to open any Container, it shall first notify Shipper, and thereafter reseal the Container and place the new seal number on the bill of lading and promptly provide such seal number to Shipper.  However, the replacement of the seal shall not act to limit Carrier's liability for loss or damage hereunder.

21.  SURVEYS

In the event of a loss, damage or delay claim Carrier may conduct a marine survey, if desired, as soon as reasonably possible from the date of notice of a claim, Carrier may designate a representative to accompany the marine surveyor during the survey, but no Carrier's representative is required to be present during the survey.  Carrier shall provide Shipper with a copy of the survey as soon as possible after its completion.

22.  DANGEROUS GOODS

At the time of shipment of dangerous Goods, Shipper shall, in compliance with the regulations governing the carriage of such Goods, have the same properly packed, distinctly marked and labelled and notify Carrier in writing of their proper description, nature and the precautions to be taken.

23.  NOTIFICATIONS AND DELIVERY

> A.        Shipper is to be notified in writing of the arrival of the Goods and shall take commercially reasonable steps to take prompt delivery of the Goods.
>
> B.        Refusal by Shipper to take delivery of the Goods within 30 days after receiving actual notice of the availability of the Goods being available for delivery, shall constitute a waiver by Shipper to Carrier of all and any claims whatsoever relating to the Goods or the Carriage,  Shipper shall be liable for any direct losses, damages, expenses and liabilities incurred and sustained by Carrier arising from such refusal, including but not limited to, the return of the Goods to their place of origin.

24.  INDEMNITY

> A.  Subject to clause 25 hereunder, Carrier shall indemnify, defend  and hold Shipper, its Affiliates and their respective officers, directors, employees, agents, subcontractors, and permitted  assigns, harmless from and against all manner of liabilities, damages, fines, penalties, losses, costs and expenses (including reasonable attorneys' fees, settlements and judgments) that Shipper may incur as a consequence of claims being raised directly or indirectly  against Shipper by any third party in respect of the personal injury to or death of any person (including, without limitation, injury to or death of employees of Carrier or Shipper), or loss of or damage to any property (including, without limitation, damage to property of each Party, except loss of or damage to Goods which is governed by the terms and conditions of the Bill of Lading) due to the Carrier's negligent acts or omissions, violation of law, material breach of this Contract, or those of its employees, personnel, subcontractors or agents occurring in connection with the performance of this Contract.
>
> B.  Shipper agrees to indemnify, defend, and hold harmless Carrier, its officers, directors, agents, subcontractors, permitted assigns and employees against and from any and all damages, liabilities, fines, losses, costs and expenses (including reasonable attorneys' fees, settlements and judgments) that Carrier may incur as a consequence of claims being raised directly against Carrier by any third party due to Shipper's negligent acts or omissions, violation of law, material breach of this Contract, or those of its employees, personnel, subcontractors or agents occurring in connection with the performance of this Contract.
>
> C.  The provisions of this Section shall survive the termination or expiration of this Contract.

25.  BILL OF LADING PROVISIONS
   The following Bill of Lading provisions, as modified and set forth below in this subsection, are incorporated to this Contract:

**(1) CARRIER'S RESPONSIBILITY**
**(1)(a) Delivery to Customs or Port Authorities** – Where any law or regulation applicable at the Port of Discharge or Place of Delivery provides that delivery of the Goods to the Shipper shall be effected by the customs or port authorities at the Port of  Discharge or Place of Delivery, notwithstanding anything to the contrary herein, delivery of the Goods by the Carrier to such  customs or port authorities shall be deemed to be lawful delivery of the Goods by the Carrier to the Shipper or Consignee and the  Carrier shall not be liable for any loss of or damage to the Goods which occurs for any reason whatsoever, other than the fault of  Carrier or as otherwise expressly provided herein, after delivery of the Goods by the Carrier to the customs or port authorities.

**(2) COMPENSATION AND LIABILITY PROVISIONS**
(2)(a) The Shipper agrees and acknowledges that the Carrier has no knowledge of the value of the Goods. Higher compensation  for loss or damage than that provided for in this Contract may be claimed only when, with the written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked   "Declared Value" on the front of a Bill of Lading and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the limits provided in this Contract. In such a case, any partial loss or damage shall be adjusted pro rata on the basis of such Declared Value.
(2)(b) When any claim is paid by the Carrier to the Shipper, the Carrier shall be automatically subrogated to all rights of the Shipper against any third party.

**(3) SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES**
Except as provided expressly herein, including Section 10, the Carrier does not promise or undertake to load, carry or discharge  the Goods on or by any particular Vessel, date or time, but shall use reasonable efforts to do so. In no event shall the Carrier be liable for consequential damages for any delay in scheduled departures or arrivals of any Vessel or other conveyances used to transport the Goods by sea or otherwise

**(4) MERCHANT-PACKED CONTAINERS**
If a Container has not been packed by or on behalf of the Carrier:
(4)(a) The shipper named on the Bill of Lading shall inspect the Container for suitability for carriage of the Goods before packing it

(4)(b) The Carrier shall not be liable for loss of or damage to the Goods caused by:
(i)  the manner in which the Goods have been packed, stowed, stuffed or secured in the Container, or
(ii) the unsuitability of the Goods for carriage in the Container supplied or for carriage by Container between the Ports or Places specified herein, or
(iii)the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the shipper named on the Bill of Lading at or prior to the time when the Container was packed, or
(iv) packing refrigerated Goods that are not properly pre-cooled to the correct temperature for carriage or before the refrigerated Container has been properly pre-cooled to the correct carrying temperature.
(4)(c) The shipper named on the Bill of Lading is responsible for the packing and sealing of all shipper-packed Containers. Carrier shall not be liable in respect of loss or damage arising from or caused by (i) the way seal was affixed or (ii) tampered seal.
**(5) OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK**
(5)(a) Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Shipper unless it is specifically stipulated on the front hereof that the Containers or Goods will be carried under deck. If carried on deck, the Carrier  shall not be required to note, mark or stamp on the Bill of Lading any statement of such on-deck carriage. Save as provided in  clause (5)(b) such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall   participate in general average and shall be deemed to be within the definition of Goods for the purpose of COGSA or any compulsorily applicable legislation and shall be carried subject to such Rules or Act, whichever is applicable Carrier acknowledges that all such Goods shall be properly stacked and secured against the reasonable effects of transit.
(5)(b) Goods which are out of gauge and/or are stowed on or in open top containers, flat racks or platforms, and which are stated on the front hereof to be carried on deck, and all livestock whether carried on deck or under deck, are carried without any  responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the carriage  whether caused by unseaworthiness or negligence or any other cause whatsoever and the Hague Rules or the COGSA shall not  apply.


26.    INSURANCE
(a)  Carrier warrants and represents that its vessels are entered for P&I cover with P&I Associations that are members of the International Group of P&I Clubs. Carrier will upon request provide proof of entry for a particular vessel. Carrier shall also carry such bonds or other insurance as may be required by federal, state or local laws or regulations. Carrier has other insurances as required, including Chassis insurance in the US.
(b)  In addition, Carrier warrants and represents that its agent in the US has undertaken the following insurances with insurers rated at least A-, VII or higher:
(i)  Workers' Compensation, in accordance with applicable law and in statutory amounts.
(ii) Employer's Liability Insurance– as per applicable policy limit.
(iii)  General Liability Insurance with a minimum limit of liability of not less than one million dollars ($1,000,000) per occurrence providing coverage for bodily injury, property damage, advertising injury, and contractual liability.
(iv)Business Automobile Liability with a minimum limit of one million dollars ($1,000,000) combined single limit Bodily Injury and Property Damage
(v) Carrier shall provide all insurance required herein so that all policies act and respond to any loss or liability of Carrier hereunder on a primary and non-contributory basis to any insurance held by Shipper. All insurance shall be written on an occurrence basis. The minimum coverage amounts set forth herein shall not act to limit or waive Carrier's liability hereunder. Shipper's failure to object to any lack of coverage, or deficiencies in such coverage, shall not act to limit or waive Carrier's obligation to secure any coverage set forth in this Agreement or required by applicable law and regulation.  Carrier shall pay all premiums, self-insured retentions, and deductibles for any of its insurance, or any claims submitted under such insurance. Failure of Carrier's insurance provider to accept a claim or to make payment for or on behalf of Carrier, will not act, limit, waive, or otherwise eliminate Carrier's responsibility for such claim, nor will Carrier's insurer's denial of any claim be considered as a valid reason for denial by Carrier or a reason for Carrier to provide a denial.
Carrier shall take no action or violate any insurance policy in a manner that would limit, waive, or eliminate coverage in any way


27.    NON-EXCLUSIVE CONTRACT
It is understood and agreed between the Parties hereto that this is a non-exclusive Contract, and that Carrier shall be free to accept Goods for transportation from shippers other than Shipper and that Shipper shall be free to tender Goods for transportation to carriers other than Carrier.  Carrier acknowledges that, other than as is expressly provided for herein, Shipper has made no promises or guarantees of any type or kinds to the volume it will ship or to any revenue or profit to be attained by Carrier.


28.    INDEPENDENT CONTRACTOR
A.   The Carrier shall perform the services hereunder as an independent Contractor and shall have exclusive control and direction of the persons operating equipment, loading or unloading, or otherwise engaged in providing services.  The Carrier assumes full responsibility for the acts and omissions of such persons.
B.   The Shipper hereby certifies its status, and the status of all its Affiliates if any:
owner of the cargo.

29.    ASSIGNMENT (NON-ASSIGNABILITY)

The rights and obligations of this Contract hereunder are personal to Carrier and Shipper and this Contract shall not be assignable or otherwise transferable by either Party, in whole or in part, without the written consent of the other Party, except that Shipper shall be entitled to assign or transfer this Contract to a parent or any Affiliate and Carrier shall be entitled to assign or transfer its receivables to any bank or lending institution so long as Carrier remains liable for the services hereunder, and such institution takes no action to prevent Shipper from getting the intended benefits of this Contract, without the other Party's written consent, such consent not to be unreasonably denied, delayed, or conditioned.

30.    NOTICES

Notices hereunder shall be given by U.S. mail, postage prepaid via registered mail, return receipt requested, or by U.S. nationally recognized overnight courier, to the Parties at the following addresses:

To SHIPPER:

Bed Bath & Beyond Inc.
650 Liberty Avenue, Union, NJ 07083
United States of America
Attn: Sr. Vice President Supply Chain

and a copy to its General Counsel at the same address

To CARRIER:
Mediterranean Shipping Company (USA) Inc.
420, 5th Avenue
(At 37th Street) – 8th Floor
New York, N.Y. 10018-2702
United States of America
Attn: Ronald Milone

31.    APPENDICES

Attached hereto and expressly made a part hereof are various appendices.  Subsequent to the execution hereof by Shipper and Carrier, further addenda may be added hereto and shall also become a part hereof. Each addendum shall be executed by an authorized officer of each party and dated and sequentially numbered.

32.    GOVERNING LAW

It is the intention of the Parties that the provisions of this Contract shall be construed and enforced according to the laws of the United States and the laws of the State of New York, without giving effect to any conflict of law provisions, to the extent that they are not inconsistent with applicable U.S. federal laws. Carrier consents to the exclusive jurisdiction of the United States District Court for the Southern District of New York, or the Supreme Court of the State of New York located in Manhattan, as applicable, and waives any objection or defense thereto including on the basis of personal jurisdiction or venue, or inconvenient forum.

33.    CONFIDENTIALITY

As part of the business relationship between Carrier and Shipper, Carrier may be in or come into possession of information or data, which constitute trade secrets, know-how, confidential or proprietary information or are otherwise considered secret by Shipper (hereinafter called "Confidential Information").  In consideration of the receipt of such information and potential business, Carrier agrees to a) maintain such information in the utmost of confidence; b) share such Confidential Information only with its officers, employees, subcontractors, insurers, legal advisors, auditors and agents, only on a need-to-know basis, ensuring that they are bound in writing by terms of confidentiality substantially similar to these c)  use such solely in connection with this business relationship with Shipper; and to take all measures necessary to protect such information. Notwithstanding the above, the obligations under this clause shall not apply to

A.    Information that, at the time of disclosure is, or after disclosure become part of the public domain other than as a consequence of a breach of this Contract.
B.    Information that was known to a Party prior to its disclosure to the other Party;
C.    Information that is independently developed by either Party without the use of any of the other Party's information.
D.    Information required to be disclosed by Carrier for a shipment transported by Carrier on a vessel operated by another ocean common carrier, provided that such other carrier agrees in writing to terms of confidentiality substantially similar to these; or

This clause 33 shall apply mutatis mutandis in favour of the Carrier.

Notwithstanding the above, Carrier shall have the right to provide information related to shipments made under this Contract to third parties, including customs, port authorities or any other supply chain intermediaries.  Carrier may also provide such information to governmental authorities of proper jurisdiction pursuant to applicable law.

34.    SEVERABILITY

If any phrase, clause, sentence, or other provision contained in this Contract violates any applicable statute, ordinance, rule or law, such phrase, clause, sentence or provision shall be ineffective to the extent of such violations without invalidating any other provision of this Contract.

35.    ENTIRE CONTRACT

This Contract and the attached Appendices represent the entire understanding of the Parties on the subject matter herein and cannot be amended except in writing signed by both Parties.  All prior discussions, understandings, negotiations, and contracts, whether oral or in writing, are superseded and made null and void by this Contract.

36.    ESSENTIAL TERMS AND ITS PUBLICATION

The essential terms applicable to this Contract, as defined by law, have been summarized in the Appendices attached hereto, which will serve as the Essential Terms document to be published in tariff format and filed with the FMC by Carrier, if this Contract is subject to FMC jurisdiction.

37.    C-TPAT COMPLIANCE:

The Parties agree to participate in and comply with the United States Customs Trade Partnership Against Terrorism ("C- TPAT") program and guidelines applicable to ocean carriers, importers and exporters...  If either Party believes that it cannot comply with any initial or amended C-TPAT guidelines applicable to it, then it shall promptly inform the other Party of the particular guideline(s) that cannot be followed, and the Parties shall confer with each other to establish a reasonable period of time for the non-compliant Party becoming compliant with such guideline(s). If either Party is unable or unwilling to comply with the C-TPAT guidelines for their respective businesses within an acceptable period of   time, which time period shall be determined within the compliant Party's sole discretion, then the compliant Party shall have the   right to terminate this Contract immediately.

38.    ETHICAL CONDUCT POLICY

It is the policy of Shipper, and its Affiliates specified in Appendix A (if any upon mutual agreement), to conduct all its business transactions in accordance with the highest ethical standards: No individual who is employed by or who represents Shipper is permitted to solicit, accept or pay any bribe, kickback or any other improper payment of money, products or services in exchange   for (i) Shipper's execution of this Contract, (ii) any action taken by such individual on behalf of Shipper, or (iii) any action taken by  Carrier. If any such improper actions are observed, please contact Shipper's Legal Department (Attention: General Counsel) at   908-688-0888 so that the incident may be fully investigated, and appropriate remedial action taken.

39.    SANCTIONS

Each Party will comply in relation to this Contract with U.S. extraterritorial sanctions laws and any other applicable sanctions and export controls laws and regulations ("Sanctions Laws"). Each Party shall not cause the other Party to violate Sanctions Laws.

Each Party  represents and warrants for itself  that it is not a person listed on the Specially Designated Nationals and Blocked Persons List of the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC), any other similar list maintained by the Council of the European Union and the State Secretariat for Economic Affairs of Switzerland or otherwise targeted by the Sanctions Laws, whether designated by name or by reason of being included in a class of persons ("Restricted Party").

The Shipper warrants that in relation to this Contact:
i.        no Restricted Party has an interest in any cargo or container shipped; and
ii.        no cargo or container shipped is subject to any restriction under Sanctions Laws

Carrier may refuse the Shipper's cargo if it has reasonable suspicion that the cargoes and/or containers are in breach of Sanctions Laws.

Either Party shall have the right to terminate this Contract with immediate effect and without any liability in case of breach of any Sanctions Laws by the other Party and without any further obligation.

40.    SEAWAY BILL OF LADING

Carrier shall at request of Shipper, evidence shipments under the Contract by seaway bill of lading. In the event of a conflict between the terms and conditions of the Contract and the terms and conditions of the seaway bill of lading, the terms and   conditions of the Contract shall prevail.

41.    AMENDMENTS AND ELECTRONIC SIGNATURE

No amendment or modification of this Agreement shall be of any force or effect unless it is in writing and executed on behalf of the Parties to this Agreement.  The Parties agree that this Agreement or any amendments may be executed via DocuSign or similar e-signature mechanism by an authorized representative.

IN WITNESS WHEREOF, the parties have caused this Contract to be executed by their duly authorized representatives as of the date first above written.

Shipper: Bed Bath & Beyond Inc.

By:

Name: Juan Guerrero

Carrier: MSC Mediterranean Shipping Company SA

By:

Name:: Pasquale Formisano, Senior Vice President

APPENDICES
The following appendices are incorporated herein by reference and made a part hereof:

APPENDIX A –Affiliates
APPENDIX B - Rates and Services
APPENDIX C –Salvage Agreement
APPENDIX D - Essential Terms (To be Filed with FMC)

**APPENDIX A – Affiliates**

Liberty Procurement Co, Inc.
650 Liberty Avenue
Union, NJ 07083
United States

Buy Buy Baby
650 Liberty Avenue
Union, NJ 07083
United States

Harmon Face Values

Bed Bath & Beyond Canada LLC.

Bed Bath and Beyond Mexico.

Sensitivity: Internal

**Appendix B - Rates and Services**

**Appendix C**
**SALVAGE AGREEMENT**

For valuable consideration received, SHIPPER and CARRIER agree as follows:

1.    If any product has not been delivered and for which a claim has been filed is located or recovered by CARRIER, regardless of whether the claim has been paid, SHIPPER must be notified immediately.

2.    No product for which a claim has been filed can be sold or otherwise transferred to a salvor, jobber or any third party without CARRIER first contacting SHIPPER and obtaining authorization when SHIPPER is the owner of the goods. Nor shall any such product or goods be passed to any of CARRIER's internal salvage procedures without such notice.

3.    If SHIPPER authorizes passing such product to Salvage or to any third party, CARRIER will remove all price tags, labels, brands or trademarks identifying SHIPPER or which contain any of SHIPPER's trademarks (e.g., A Step Beyond, Beyond, Beyond Indulgence) prior to such transfer or salvage. CARRIER shall be compensated at the hourly billing rate for such work performed unless CARRIER was responsible for the damage incurred.

4.    In any salvage on sale of SHIPPER's product, CARRIER shall contract to include the following terms as conditions of the contract and make commercially reasonable efforts to ensure compliance therewith:

    (i)    The SHIPPER's name shall not be used in any advertising or signage of any statement or phrase that might identify such product

    (ii)    Any goods to be passed to Salvage shall be prominently, permanently and incurably marked in such a way that their nature as salvage goods cannot be mistaken; that is, in such a state as to prevent such goods from being returned to SHIPPER's stores as customer purchase; and

    (iii)    SHIPPER expressly disclaims any and all warranties, express or implied, including, without limitation any warranties of merchantability, fitness for a particular purpose, or non-infringement of the intellectual property rights of a third party.

.
5.    At the reasonable request of SHIPPER, CARRIER will destroy recovered goods where such goods represent a safety hazard to consumers.

ACCEPTED AND AGREED:
CARRIER:      _____
Name:        _____
Title:         _____

Sensitivity: Internal

**APPENDIX D - ESSENTIAL TERMS (To be Filed with FMC)**

<u>**ESSENTIAL TERMS**</u>

1. "Effective Date" and "Term":  May 1, 2022 – ~~April 30, 2023~~ **22nd May 2023 (AMN 21)**

2. Name and address of Carrier:  MSC Mediterranean Shipping Company SA – 12-14 Chemin Rieu, 1208 Geneva, Switzerland

3. Name and address of Shipper:  Bed Bath & Beyond Inc. and its Affiliates, .650 Liberty Avenue, Union, NJ 07083, United States of America

4. Cargo Owner Certification: Pursuant to Federal Maritime Commission ("FMC") regulation 46 C.F.R. 530.6, Shipper, certifies its status as the Owner or Consignee of the cargo shipped hereunder.
   Bed Bath & Beyond Inc. shall be under a continuing obligation to comply with all FMC requirements and to report to the Carrier any change in its status.

5. Origin Port Pairs (further detailed in Appendix B): India, Sri Lanka, Pakistan, Turkey, Egypt, China, Thailand, Indonesia, Cambodia, Vietnam, Korea, Taiwan, Malaysia, Singapore, Philippines

6. Destination Port Pairs (further detailed in Appendix B): United States

7. Minimum Quantity Commitment: ~~9,732 TEUs~~ **9874 TEUs (AMN 4)**

8. Commodities:  General Department Store Merchandise in Mixed or Straight loads

9. Rates, Services and Related Terms: As set forth in Rates and Service Appendix (Appendix B).

10. Records:
All requests relating to the Federal Maritime Commission ("FMC") for records should be addressed to:
MSC Mediterranean Shipping Company SA, Att: Reto Giddey, +41 22 703 8888
12-14 Chemin Rieu, 1208 Geneva, Switzerland

With a copy to
Mediterranean Shipping Company (USA) Inc., Att: Paolo Magnani 420,
5th Avenue, New York, N.Y. 10018-270, United States

11. Affiliates: as per Appendix A

**Amendment Nº 21**

Dated 11th April 2023

to the

**OCEAN CARRIER AGREEMENT
22-418WW**
dated 1st May, 2022

between

**MSC Mediterranean Shipping Company SA**
with its registered office at 12-14, Chemin Rieu,
1208 Geneva, Switzerland
("Carrier")

and

**Bed Bath & Beyond Inc.**
650 Liberty Avenue Union,
NJ 07083, United States of America
("Shipper")

(both hereinafter referred to as "the Parties")

This amendment (the "Amendment") is made by MSC Mediterranean Shipping Company S.A. and Bed Bath & Beyond Inc., parties to the **OCEAN CARRIER AGREEMENT** signed in 1st May 2021 ("the Agreement").

**I.      Section 41 is amended as follows:**

(a) No amendment or modification of this Agreement shall be of any force or effect unless it is in writing and executed on behalf of the Parties to this Agreement.  The Parties agree that this Agreement or any amendments may be executed via DocuSign or similar e-signature mechanism by an authorized representative.

(b) Any amendments to the Agreement proposed by the Carrier may be entered into and signed by an e-mail confirming acceptance of the terms and conditions. When the Shipper has confirmed its acceptance of the amendment contained in or attached to the e-mail then the amendment shall become binding as if it had been signed in person by the Shipper.

(c) The Carrier shall exercise reasonable care in its dealings and communications with the Shipper but is not otherwise obliged to verify or investigate the authority of the person signing by e-mail, or the authenticity of an e-mail signing an amendment that has apparently been sent by the Shipper.

(d) Shipper hereby warrants that the person agreeing to the amendment has the authority to bind the Shipper.

II.      **Appendix B** is amended as follows:

Page 1 of 3

MSC Mediterranean Shipping Company S. A/ Bed Bath & Beyond Inc.
Amendment 1 to the Ocean Carrier Agreement 20-572WW dated 1st July 2020

Sensitivity: Internal

*BED BATH & BEYOND INC.  /MSC* *STRICTLY CONFIDENTIAL*

### INDUS: Extended until 22-May-2023

| | | | |
|---|---|---|---|
| Rate Agreement No.: | R83622030002938 | Customer: | BED BATH AND BEYOND, INC. |
| SVC No: | 22-418WW | Code: | US160599 |
| Effective from: | 01st May 2022 | Address: | 650 Liberty Avenue |
| Effective to: | ~~30th April 2023~~ | | UNION, UNITED STATES |
| | **22nd May 2023 (AMN 21)** | | NEW JERSEY |
| Scope MVC/TEUs: | 2628 TEUS | | ZIP/Postal code: 07083 |

### FAR EAST TO USA (TEMP): Extended until 22-May-2023

(AMN 1)

| | | | |
|---|---|---|---|
| Rate Agreement No.: | R83622050001238 | Customer: | BED BATH AND BEYOND, INC. |
| SVC No: | 22-418WW-000 | Code: | US160599 |
| Effective from: | 18th May 2022 | Address: | 650 Liberty Avenue |
| Effective to: | ~~31st July 2022~~ | | UNION, UNITED STATES |
| | ~~31st August 2022 (AMN 4)~~ | | NEW JERSEY |
| | ~~30th September 2022 (AMN 5)~~ | | ZIP/Postal code: 07083 |
| | ~~31st December 2022 (AMN 7)~~ | | |
| | ~~31st January 2023 (AMN 12)~~ | | |
| | ~~28th February 2023 (AMN 14)~~ | | |
| | ~~31st March 2023 (AMN 17)~~ | | |
| | ~~30th April 2023 (AMN 19)~~ | | |
| | **22nd May 2023 (AMN 21)** | | |
| Scope MVC/TEUs: | ~~4 6~~502 TEUS (AMN 4) | | |

### FAR EAST TO USA: Extended until 22-May-2023

| | | | |
|---|---|---|---|
| Rate Agreement No.: | R83622030002924 | Customer: | BED BATH AND BEYOND, INC. |
| SVC No: | 22-418WW | Code: | US160599 |
| Effective from: | 01st May 2022 | Address: | 650 Liberty Avenue |
| Effective to: | ~~30th April 2023~~ | | UNION, UNITED STATES |
| | **22nd May 2023 (AMN 21)** | | NEW JERSEY |
| Scope MVC/TEUs: | 6502 TEUS | | ZIP/Postal code: 07083 |

### RELAY: Extended until 22-May-2023

| | | | |
|---|---|---|---|
| Rate Agreement No.: | R83622030003016 | Customer: | BED BATH AND BEYOND, INC. |
| SVC No: | 22-418WW | Code: | US160599 |
| Effective from: | 01st May 2022 | Address: | 650 Liberty Avenue |
| Effective to: | ~~30th April 2023~~ | | UNION, UNITED STATES |
| | **22nd May 2023 (AMN 21)** | | NEW JERSEY |
| Scope MVC/TEUs: | 744 TEUS | | ZIP/Postal code: 07083 |

### Essential Terms

Except as set forth in this Amendment, the Agreement is unaffected and shall continue in full force and effect in accordance with its terms. If there is conflict between this Amendment and the Agreement or any earlier amendment, the terms of this Amendment will prevail.

**IN WITNESS** of which this Amendment has been executed on the date appearing below.

Page 2 of 3

MSC Mediterranean Shipping Company S. A/ Bed Bath & Beyond Inc.
Amendment 1 to the Ocean Carrier Agreement 20-572WW dated 1st July 2020

Sensitivity: Internal

*BED BATH & BEYOND INC.  /MSC*                        *STRICTLY CONFIDENTIAL*

## Signatures

...............................................
For and on behalf of MSC Mediterranean
Shipping Company SA, by its duly authorised
agent MSC MEDITERRANEAN SHIPPING
COMPANY (USA) INC.
...............................................

Print name

...............................................
Position
...............................................

Date

...............................................
For and on behalf of Bed Bath & Beyond Inc.


Juan Guerrero

...............................................
Print name

...............................................
Position
SVP Supply Chain

...............................................
Date

Page 3 of 3

MSC Mediterranean Shipping Company S. A/ Bed Bath & Beyond Inc.
Amendment 1 to the Ocean Carrier Agreement 20-572WW dated 1st July 2020

Sensitivity: Internal

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| NYC1904005229T | 5/22/2019 | $7,053.50 | Detention |
| 100000170339N | 2/23/2021 | $700.00 | Detention |
| 100000170336N | 2/27/2021 | $1,550.00 | Detention |
| 100000170337N | 2/27/2021 | $1,550.00 | Detention |
| 100000170335N | 2/27/2021 | $3,100.00 | Detention |
| 100000021173Z | 3/12/2021 | $54.00 | Chassis Per Diem |
| 100000021174Z | 3/12/2021 | $108.00 | Chassis Per Diem |
| 100000032684Z | 4/13/2021 | $18.00 | Chassis Per Diem |
| 100000032680Z | 4/13/2021 | $126.00 | Chassis Per Diem |
| 100000035063Z | 4/16/2021 | $18.00 | Chassis Per Diem |
| 100000035067Z | 4/16/2021 | $36.00 | Chassis Per Diem |
| 100000035061Z | 4/16/2021 | $72.00 | Chassis Per Diem |
| 100000035062Z | 4/16/2021 | $72.00 | Chassis Per Diem |
| 100000048659Z | 5/25/2021 | $18.00 | Chassis Per Diem |
| 100000048657Z | 5/25/2021 | $126.00 | Chassis Per Diem |
| 100000048658Z | 5/25/2021 | $144.00 | Chassis Per Diem |
| 100000048660Z | 5/25/2021 | $144.00 | Chassis Per Diem |
| 100000052418Z | 6/2/2021 | $144.00 | Chassis Per Diem |
| 100000072300Z | 7/12/2021 | $108.00 | Chassis Per Diem |
| MEDUI2623458 | 8/17/2021 | $2,490.00 | Freight |
| 100000109902Z | 9/29/2021 | $18.00 | Chassis Per Diem |
| 100000110712Z | 9/30/2021 | $144.00 | Chassis Per Diem |
| 100000112495Z | 10/4/2021 | $18.00 | Chassis Per Diem |
| 100000113875Z | 10/6/2021 | $162.00 | Chassis Per Diem |
| 100000119573Z | 10/12/2021 | $54.00 | Chassis Per Diem |
| 100000119525Z | 10/12/2021 | $252.00 | Chassis Per Diem |
| 100000119526Z | 10/12/2021 | $252.00 | Chassis Per Diem |
| 100000121882Z | 10/18/2021 | $18.00 | Chassis Per Diem |
| 100000123768Z | 10/21/2021 | $342.00 | Chassis Per Diem |
| 100000123767Z | 10/21/2021 | $360.00 | Chassis Per Diem |
| 100000123769Z | 10/21/2021 | $360.00 | Chassis Per Diem |
| 100000123841Z | 10/21/2021 | $360.00 | Chassis Per Diem |
| 100000126683Z | 10/25/2021 | $378.00 | Chassis Per Diem |
| 100000126684Z | 10/25/2021 | $378.00 | Chassis Per Diem |
| 100000126685Z | 10/25/2021 | $378.00 | Chassis Per Diem |
| 100000126623Z | 10/25/2021 | $396.00 | Chassis Per Diem |
| 100000128277Z | 10/30/2021 | $72.00 | Chassis Per Diem |
| 100000128279Z | 10/30/2021 | $72.00 | Chassis Per Diem |
| 100000128274Z | 10/30/2021 | $108.00 | Chassis Per Diem |
| 100000128107Z | 10/30/2021 | $126.00 | Chassis Per Diem |
| 100000128280Z | 10/30/2021 | $126.00 | Chassis Per Diem |
| 100000128978Z | 11/3/2021 | $396.00 | Chassis Per Diem |
| 100000129078Z | 11/3/2021 | $396.00 | Chassis Per Diem |
| 100000137867Z | 11/10/2021 | $234.00 | Chassis Per Diem |
| 100000137992Z | 11/10/2021 | $342.00 | Chassis Per Diem |
| 100000139265Z | 11/11/2021 | $306.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000140516Z | 11/15/2021 | $252.00 | Chassis Per Diem |
| 100000140441Z | 11/15/2021 | $306.00 | Chassis Per Diem |
| 100000141754Z | 11/16/2021 | $360.00 | Chassis Per Diem |
| 100000141755Z | 11/16/2021 | $360.00 | Chassis Per Diem |
| 100000142441Z | 11/17/2021 | $288.00 | Chassis Per Diem |
| 100000142430Z | 11/17/2021 | $468.00 | Chassis Per Diem |
| 100000143110Z | 11/18/2021 | $360.00 | Chassis Per Diem |
| MEDUMW599317 | 11/21/2021 | $2,000.00 | Freight |
| 100000144837Z | 11/22/2021 | $324.00 | Chassis Per Diem |
| 100000144843Z | 11/22/2021 | $324.00 | Chassis Per Diem |
| 100000144835Z | 11/22/2021 | $342.00 | Chassis Per Diem |
| 100000144832Z | 11/22/2021 | $378.00 | Chassis Per Diem |
| 100000144841Z | 11/22/2021 | $396.00 | Chassis Per Diem |
| 100000144842Z | 11/22/2021 | $396.00 | Chassis Per Diem |
| 100000144844Z | 11/22/2021 | $450.00 | Chassis Per Diem |
| 100000147374Z | 11/26/2021 | $396.00 | Chassis Per Diem |
| 100000146911Z | 11/26/2021 | $450.00 | Chassis Per Diem |
| 100000148247Z | 11/29/2021 | $324.00 | Chassis Per Diem |
| 100000147556Z | 11/29/2021 | $432.00 | Chassis Per Diem |
| 100000149228Z | 11/30/2021 | $342.00 | Chassis Per Diem |
| 100000149022Z | 11/30/2021 | $378.00 | Chassis Per Diem |
| 100000150381Z | 12/2/2021 | $400.00 | Chassis Per Diem |
| 100000150293Z | 12/2/2021 | $432.00 | Chassis Per Diem |
| 100000151513Z | 12/3/2021 | $250.00 | Chassis Per Diem |
| 100000151370Z | 12/3/2021 | $400.00 | Chassis Per Diem |
| 100000152641Z | 12/6/2021 | $300.00 | Chassis Per Diem |
| 100000153449Z | 12/7/2021 | $325.00 | Chassis Per Diem |
| 100000154346Z | 12/8/2021 | $300.00 | Chassis Per Diem |
| 100000155023Z | 12/9/2021 | $375.00 | Chassis Per Diem |
| 100000155196Z | 12/10/2021 | $560.00 | Chassis Per Diem |
| 100000155197Z | 12/10/2021 | $576.00 | Chassis Per Diem |
| 100000157404Z | 12/14/2021 | $702.00 | Chassis Per Diem |
| 100000159758Z | 12/20/2021 | $250.00 | Chassis Per Diem |
| 100000161397Z | 12/21/2021 | $216.00 | Chassis Per Diem |
| 100000161709Z | 12/21/2021 | $300.00 | Chassis Per Diem |
| 100000161621Z | 12/21/2021 | $350.00 | Chassis Per Diem |
| 100000162350Z | 12/22/2021 | $200.00 | Chassis Per Diem |
| 100000162078Z | 12/22/2021 | $234.00 | Chassis Per Diem |
| 100000162356Z | 12/22/2021 | $250.00 | Chassis Per Diem |
| 100000162987Z | 12/23/2021 | $425.00 | Chassis Per Diem |
| 100000163297Z | 12/28/2021 | $198.00 | Chassis Per Diem |
| 100000165998Z | 1/4/2022 | $275.00 | Chassis Per Diem |
| 100000165828Z | 1/4/2022 | $500.00 | Chassis Per Diem |
| 100000165717Z | 1/4/2022 | $550.00 | Chassis Per Diem |
| 100000167713Z | 1/7/2022 | $425.00 | Chassis Per Diem |
| 100000167474Z | 1/7/2022 | $750.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
| --- | --- | --- | --- |
| 100000168544Z | 1/10/2022 | $475.00 | Chassis Per Diem |
| 100000169083Z | 1/13/2022 | $725.00 | Chassis Per Diem |
| 100000169082Z | 1/13/2022 | $750.00 | Chassis Per Diem |
| 100000170249Z | 1/14/2022 | $550.00 | Chassis Per Diem |
| 100000173599Z | 1/21/2022 | $550.00 | Chassis Per Diem |
| 100000173600Z | 1/21/2022 | $675.00 | Chassis Per Diem |
| 100000173604Z | 1/21/2022 | $700.00 | Chassis Per Diem |
| 100000173605Z | 1/21/2022 | $700.00 | Chassis Per Diem |
| 100000172729Z | 1/21/2022 | $725.00 | Chassis Per Diem |
| 100000172732Z | 1/21/2022 | $750.00 | Chassis Per Diem |
| 100000173231Z | 1/21/2022 | $1,314.00 | Chassis Per Diem |
| 100000174690Z | 1/24/2022 | $250.00 | Chassis Per Diem |
| 100000174427Z | 1/24/2022 | $575.00 | Chassis Per Diem |
| 100000174437Z | 1/24/2022 | $625.00 | Chassis Per Diem |
| 100000180330Z | 1/25/2022 | $300.00 | Chassis Per Diem |
| 100000181015Z | 1/25/2022 | $1,458.00 | Chassis Per Diem |
| 100000181658Z | 1/26/2022 | $774.00 | Chassis Per Diem |
| 100000182417Z | 1/28/2022 | $1,100.00 | Chassis Per Diem |
| 100000187664Z | 2/1/2022 | $450.00 | Chassis Per Diem |
| 100000187428Z | 2/1/2022 | $1,500.00 | Chassis Per Diem |
| 100000188331Z | 2/2/2022 | $125.00 | Chassis Per Diem |
| 100000189945Z | 2/8/2022 | $100.00 | Chassis Per Diem |
| 100000189935Z | 2/8/2022 | $125.00 | Chassis Per Diem |
| 100000189948Z | 2/8/2022 | $150.00 | Chassis Per Diem |
| 100000189925Z | 2/8/2022 | $175.00 | Chassis Per Diem |
| 100000190241Z | 2/8/2022 | $325.00 | Chassis Per Diem |
| 100000190243Z | 2/8/2022 | $375.00 | Chassis Per Diem |
| 100000190245Z | 2/8/2022 | $450.00 | Chassis Per Diem |
| 100000189995Z | 2/8/2022 | $475.00 | Chassis Per Diem |
| 100000195483Z | 2/15/2022 | $126.00 | Chassis Per Diem |
| 100000196727Z | 2/15/2022 | $200.00 | Chassis Per Diem |
| 100000196590Z | 2/15/2022 | $225.00 | Chassis Per Diem |
| 100000196595Z | 2/15/2022 | $250.00 | Chassis Per Diem |
| 100000196748Z | 2/15/2022 | $275.00 | Chassis Per Diem |
| 100000195686Z | 2/15/2022 | $325.00 | Chassis Per Diem |
| 100000196027Z | 2/15/2022 | $375.00 | Chassis Per Diem |
| 100000195482Z | 2/15/2022 | $378.00 | Chassis Per Diem |
| 100000196028Z | 2/15/2022 | $425.00 | Chassis Per Diem |
| 100000196029Z | 2/15/2022 | $525.00 | Chassis Per Diem |
| 100000196030Z | 2/15/2022 | $550.00 | Chassis Per Diem |
| 100000197074Z | 2/17/2022 | $72.00 | Chassis Per Diem |
| 100000197075Z | 2/17/2022 | $108.00 | Chassis Per Diem |
| 100000197718Z | 2/17/2022 | $125.00 | Chassis Per Diem |
| 100000197717Z | 2/17/2022 | $150.00 | Chassis Per Diem |
| 100000197719Z | 2/17/2022 | $150.00 | Chassis Per Diem |
| 100000197708Z | 2/17/2022 | $175.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000197638Z | 2/17/2022 | $300.00 | Chassis Per Diem |
| 100000200899Z | 2/18/2022 | $125.00 | Chassis Per Diem |
| 100000200911Z | 2/18/2022 | $175.00 | Chassis Per Diem |
| 100000200820Z | 2/18/2022 | $350.00 | Chassis Per Diem |
| 100000201183Z | 2/21/2022 | $54.00 | Chassis Per Diem |
| 100000201182Z | 2/21/2022 | $198.00 | Chassis Per Diem |
| 100000201712Z | 2/21/2022 | $275.00 | Chassis Per Diem |
| 100000203207Z | 2/22/2022 | $375.00 | Chassis Per Diem |
| 100000203499Z | 2/23/2022 | $234.00 | Chassis Per Diem |
| 100000204013Z | 2/23/2022 | $325.00 | Chassis Per Diem |
| 100000203356Z | 2/23/2022 | $342.00 | Chassis Per Diem |
| 100000204254Z | 2/24/2022 | $162.00 | Chassis Per Diem |
| 100000204228Z | 2/24/2022 | $252.00 | Chassis Per Diem |
| 100000204857Z | 2/24/2022 | $350.00 | Chassis Per Diem |
| 100000204234Z | 2/24/2022 | $360.00 | Chassis Per Diem |
| 100000204781Z | 2/24/2022 | $550.00 | Chassis Per Diem |
| 100000204724Z | 2/24/2022 | $600.00 | Chassis Per Diem |
| 100000205126Z | 2/25/2022 | $270.00 | Chassis Per Diem |
| 100000206425Z | 2/28/2022 | $375.00 | Chassis Per Diem |
| 100000208617Z | 3/2/2022 | $400.00 | Chassis Per Diem |
| 100000210339Z | 3/8/2022 | $25.00 | Chassis Per Diem |
| 100000210333Z | 3/8/2022 | $50.00 | Chassis Per Diem |
| 100000210153Z | 3/8/2022 | $175.00 | Chassis Per Diem |
| 100000210180Z | 3/8/2022 | $175.00 | Chassis Per Diem |
| 100000210146Z | 3/8/2022 | $200.00 | Chassis Per Diem |
| 100000210162Z | 3/8/2022 | $200.00 | Chassis Per Diem |
| 100000216910Z | 3/22/2022 | $125.00 | Chassis Per Diem |
| 100000216906Z | 3/22/2022 | $175.00 | Chassis Per Diem |
| 100000216909Z | 3/22/2022 | $175.00 | Chassis Per Diem |
| 100000216925Z | 3/22/2022 | $175.00 | Chassis Per Diem |
| 100000216525Z | 3/22/2022 | $200.00 | Chassis Per Diem |
| 100000216757Z | 3/22/2022 | $200.00 | Chassis Per Diem |
| 100000216947Z | 3/22/2022 | $200.00 | Chassis Per Diem |
| 100000216752Z | 3/22/2022 | $375.00 | Chassis Per Diem |
| 100000216749Z | 3/22/2022 | $475.00 | Chassis Per Diem |
| 100000216765Z | 3/22/2022 | $500.00 | Chassis Per Diem |
| 100000216313Z | 3/22/2022 | $1,602.00 | Chassis Per Diem |
| 100000223641Z | 3/28/2022 | $200.00 | Chassis Per Diem |
| 100000223648Z | 3/28/2022 | $200.00 | Chassis Per Diem |
| 100000223669Z | 3/28/2022 | $200.00 | Chassis Per Diem |
| 100000223650Z | 3/28/2022 | $225.00 | Chassis Per Diem |
| 100000223656Z | 3/28/2022 | $225.00 | Chassis Per Diem |
| 100000223599Z | 3/28/2022 | $400.00 | Chassis Per Diem |
| 100000223512Z | 3/28/2022 | $525.00 | Chassis Per Diem |
| 100000223513Z | 3/28/2022 | $675.00 | Chassis Per Diem |
| 100000223501Z | 3/28/2022 | $1,600.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|-----|--------------|------------------|------|
| 100000223099Z | 3/28/2022 | $2,350.00 | Chassis Per Diem |
| 100000226032Z | 3/29/2022 | $25.00 | Chassis Per Diem |
| 100000226029Z | 3/29/2022 | $50.00 | Chassis Per Diem |
| 100000225562Z | 3/29/2022 | $75.00 | Chassis Per Diem |
| 100000225616Z | 3/29/2022 | $75.00 | Chassis Per Diem |
| 100000225617Z | 3/29/2022 | $75.00 | Chassis Per Diem |
| 100000226039Z | 3/29/2022 | $75.00 | Chassis Per Diem |
| 100000225649Z | 3/29/2022 | $100.00 | Chassis Per Diem |
| 100000225619Z | 3/29/2022 | $125.00 | Chassis Per Diem |
| 100000226027Z | 3/29/2022 | $125.00 | Chassis Per Diem |
| 100000225615Z | 3/29/2022 | $150.00 | Chassis Per Diem |
| 100000225892Z | 3/29/2022 | $150.00 | Chassis Per Diem |
| 100000227547Z | 3/30/2022 | $750.00 | Chassis Per Diem |
| 100000228812Z | 3/31/2022 | $75.00 | Chassis Per Diem |
| 100000228813Z | 3/31/2022 | $75.00 | Chassis Per Diem |
| 100000228815Z | 3/31/2022 | $125.00 | Chassis Per Diem |
| 100000417139Z | 4/4/2022 | $350.00 | Chassis Per Diem |
| 100000230553Z | 4/4/2022 | $425.00 | Chassis Per Diem |
| 100000417138Z | 4/4/2022 | $550.00 | Chassis Per Diem |
| 100000417137Z | 4/12/2022 | $450.00 | Chassis Per Diem |
| 100000225316R | 4/14/2022 | $2,190.00 | Rail Detention |
| 100000225318R | 4/14/2022 | $3,165.00 | Rail Detention |
| 100000225320R | 4/14/2022 | $3,945.00 | Rail Detention |
| 100000225325R | 4/14/2022 | $5,115.00 | Rail Detention |
| 100000225275R | 4/14/2022 | $6,525.00 | Rail Detention |
| 100000225317R | 4/14/2022 | $7,500.00 | Rail Detention |
| 100000225321R | 4/14/2022 | $13,785.00 | Rail Detention |
| 100000417136Z | 4/18/2022 | $25.00 | Chassis Per Diem |
| 100000417135Z | 4/18/2022 | $250.00 | Chassis Per Diem |
| 100000417134Z | 4/28/2022 | $450.00 | Chassis Per Diem |
| 100000417133Z | 5/2/2022 | $325.00 | Chassis Per Diem |
| 100000252871Z | 5/4/2022 | $225.00 | Chassis Per Diem |
| 100000417131Z | 5/5/2022 | $675.00 | Chassis Per Diem |
| 100000417132Z | 5/5/2022 | $675.00 | Chassis Per Diem |
| 100000256395Z | 5/9/2022 | $400.00 | Chassis Per Diem |
| 100000259473Z | 5/11/2022 | $375.00 | Chassis Per Diem |
| 100000417130Z | 5/16/2022 | $900.00 | Chassis Per Diem |
| 100000417123Z | 5/17/2022 | $175.00 | Chassis Per Diem |
| 100000417129Z | 5/23/2022 | $280.00 | Chassis Per Diem |
| 100000417128Z | 5/31/2022 | $455.00 | Chassis Per Diem |
| MEDUTE942387 | 6/5/2022 | $2,976.00 | Freight |
| 100000417121Z | 6/9/2022 | $35.00 | Chassis Per Diem |
| 100000417122Z | 6/9/2022 | $70.00 | Chassis Per Diem |
| 100000285986Z | 6/15/2022 | $70.00 | Chassis Per Diem |
| 100000417127Z | 7/1/2022 | $665.00 | Chassis Per Diem |
| 100000417126Z | 7/1/2022 | $840.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
| --- | --- | --- | --- |
| 100000417120Z | 7/5/2022 | $140.00 | Chassis Per Diem |
| 100000298523Z | 7/8/2022 | $35.00 | Chassis Per Diem |
| 100000298649Z | 7/8/2022 | $35.00 | Chassis Per Diem |
| 100000298709Z | 7/8/2022 | $35.00 | Chassis Per Diem |
| 100000298858Z | 7/8/2022 | $35.00 | Chassis Per Diem |
| 100000298931Z | 7/8/2022 | $35.00 | Chassis Per Diem |
| 100000298859Z | 7/8/2022 | $70.00 | Chassis Per Diem |
| 100000298685Z | 7/8/2022 | $105.00 | Chassis Per Diem |
| 100000298705Z | 7/8/2022 | $105.00 | Chassis Per Diem |
| 100000298861Z | 7/8/2022 | $105.00 | Chassis Per Diem |
| 100000298233Z | 7/8/2022 | $140.00 | Chassis Per Diem |
| 100000298692Z | 7/8/2022 | $175.00 | Chassis Per Diem |
| 100000417125Z | 7/8/2022 | $630.00 | Chassis Per Diem |
| 100000305970Z | 7/19/2022 | $35.00 | Chassis Per Diem |
| 100000407192Z | 7/19/2022 | $35.00 | Chassis Per Diem |
| 100000306149Z | 7/19/2022 | $70.00 | Chassis Per Diem |
| 100000305969Z | 7/19/2022 | $105.00 | Chassis Per Diem |
| 100000306152Z | 7/19/2022 | $105.00 | Chassis Per Diem |
| 100000306293Z | 7/19/2022 | $175.00 | Chassis Per Diem |
| 100000306288Z | 7/19/2022 | $385.00 | Chassis Per Diem |
| 100000306181Z | 7/19/2022 | $455.00 | Chassis Per Diem |
| 100000306207Z | 7/19/2022 | $1,225.00 | Chassis Per Diem |
| 100000306209Z | 7/19/2022 | $1,365.00 | Chassis Per Diem |
| 100000417118Z | 7/19/2022 | $1,750.00 | Chassis Per Diem |
| 100000417119Z | 7/19/2022 | $1,750.00 | Chassis Per Diem |
| 100000263653R | 7/20/2022 | $495.00 | Rail Detention |
| 100000307194Z | 7/20/2022 | $210.00 | Chassis Per Diem |
| 100000309476Z | 7/21/2022 | $420.00 | Chassis Per Diem |
| 100000309466Z | 7/21/2022 | $455.00 | Chassis Per Diem |
| 100000311851Z | 7/22/2022 | $70.00 | Chassis Per Diem |
| 100000312252Z | 7/22/2022 | $175.00 | Chassis Per Diem |
| 100000311856Z | 7/22/2022 | $210.00 | Chassis Per Diem |
| 100000417124Z | 7/22/2022 | $2,525.00 | Chassis Per Diem |
| 100000315251Z | 7/26/2022 | $140.00 | Chassis Per Diem |
| 100000315367Z | 7/26/2022 | $140.00 | Chassis Per Diem |
| 100000315368Z | 7/26/2022 | $140.00 | Chassis Per Diem |
| 100000315249Z | 7/26/2022 | $175.00 | Chassis Per Diem |
| 100000314806Z | 7/26/2022 | $210.00 | Chassis Per Diem |
| 100000315122Z | 7/26/2022 | $1,645.00 | Chassis Per Diem |
| 100000417117Z | 7/26/2022 | $2,065.00 | Chassis Per Diem |
| 100000265287R | 7/27/2022 | $660.00 | Rail Detention |
| 100000265444R | 7/27/2022 | $660.00 | Rail Detention |
| 100000265553R | 7/27/2022 | $1,215.00 | Rail Detention |
| 100000265517R | 7/27/2022 | $1,410.00 | Rail Detention |
| 100000265522R | 7/27/2022 | $1,410.00 | Rail Detention |
| 100000416035Z | 7/28/2022 | $35.00 | Chassis Per Diem |

**Exhibit E**

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000317239Z | 7/28/2022 | $210.00 | Chassis Per Diem |
| 100000317354Z | 7/28/2022 | $280.00 | Chassis Per Diem |
| 100000417116Z | 7/28/2022 | $2,240.00 | Chassis Per Diem |
| 100000266296R | 7/29/2022 | $660.00 | Rail Detention |
| 100000266298R | 7/29/2022 | $660.00 | Rail Detention |
| 100000266455R | 7/29/2022 | $660.00 | Rail Detention |
| 100000266297R | 7/29/2022 | $825.00 | Rail Detention |
| 100000266367R | 7/29/2022 | $1,215.00 | Rail Detention |
| 100000267983R | 8/3/2022 | $825.00 | Rail Detention |
| 100000267985R | 8/3/2022 | $1,650.00 | Rail Detention |
| 100000267984R | 8/3/2022 | $2,235.00 | Rail Detention |
| 100000321158Z | 8/3/2022 | $35.00 | Chassis Per Diem |
| 100000321593Z | 8/3/2022 | $35.00 | Chassis Per Diem |
| 100000321634Z | 8/3/2022 | $35.00 | Chassis Per Diem |
| 100000419571Z | 8/3/2022 | $35.00 | Chassis Per Diem |
| 100000419572Z | 8/3/2022 | $35.00 | Chassis Per Diem |
| 100000321430Z | 8/3/2022 | $105.00 | Chassis Per Diem |
| 100000419573Z | 8/3/2022 | $105.00 | Chassis Per Diem |
| 100000321407Z | 8/3/2022 | $140.00 | Chassis Per Diem |
| 100000321715Z | 8/3/2022 | $140.00 | Chassis Per Diem |
| 100000321716Z | 8/3/2022 | $210.00 | Chassis Per Diem |
| 100000321178Z | 8/3/2022 | $245.00 | Chassis Per Diem |
| 100000321286Z | 8/3/2022 | $245.00 | Chassis Per Diem |
| 100000321314Z | 8/3/2022 | $245.00 | Chassis Per Diem |
| 100000321660Z | 8/3/2022 | $245.00 | Chassis Per Diem |
| 100000321661Z | 8/3/2022 | $245.00 | Chassis Per Diem |
| 100000321318Z | 8/3/2022 | $280.00 | Chassis Per Diem |
| 100000321632Z | 8/3/2022 | $280.00 | Chassis Per Diem |
| 100000321163Z | 8/3/2022 | $315.00 | Chassis Per Diem |
| 100000321800Z | 8/3/2022 | $315.00 | Chassis Per Diem |
| 100000321251Z | 8/3/2022 | $350.00 | Chassis Per Diem |
| 100000321317Z | 8/3/2022 | $455.00 | Chassis Per Diem |
| 100000322088Z | 8/8/2022 | $35.00 | Chassis Per Diem |
| 100000322270Z | 8/8/2022 | $315.00 | Chassis Per Diem |
| 100000270660R | 8/10/2022 | $165.00 | Rail Detention |
| 100000270751R | 8/10/2022 | $165.00 | Rail Detention |
| 100000270661R | 8/10/2022 | $330.00 | Rail Detention |
| 100000326830Z | 8/11/2022 | $35.00 | Chassis Per Diem |
| 100000326835Z | 8/11/2022 | $35.00 | Chassis Per Diem |
| 100000326928Z | 8/11/2022 | $35.00 | Chassis Per Diem |
| 100000326439Z | 8/11/2022 | $70.00 | Chassis Per Diem |
| 100000326703Z | 8/11/2022 | $70.00 | Chassis Per Diem |
| 100000326744Z | 8/11/2022 | $70.00 | Chassis Per Diem |
| 100000326831Z | 8/11/2022 | $70.00 | Chassis Per Diem |
| 100000326832Z | 8/11/2022 | $70.00 | Chassis Per Diem |
| 100000326679Z | 8/11/2022 | $105.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000326747Z | 8/11/2022 | $105.00 | Chassis Per Diem |
| 100000326748Z | 8/11/2022 | $140.00 | Chassis Per Diem |
| 100000326927Z | 8/11/2022 | $140.00 | Chassis Per Diem |
| 100000326883Z | 8/11/2022 | $210.00 | Chassis Per Diem |
| 100000445806Z | 8/11/2022 | $210.00 | Chassis Per Diem |
| 100000326568Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000326680Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000326704Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000326882Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000326918Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000368154Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000382548Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000429490Z | 8/11/2022 | $245.00 | Chassis Per Diem |
| 100000326498Z | 8/11/2022 | $280.00 | Chassis Per Diem |
| 100000326685Z | 8/11/2022 | $280.00 | Chassis Per Diem |
| 100000326737Z | 8/11/2022 | $280.00 | Chassis Per Diem |
| 100000326443Z | 8/11/2022 | $315.00 | Chassis Per Diem |
| 100000326444Z | 8/11/2022 | $315.00 | Chassis Per Diem |
| 100000326729Z | 8/11/2022 | $315.00 | Chassis Per Diem |
| 100000326745Z | 8/11/2022 | $315.00 | Chassis Per Diem |
| 100000326566Z | 8/11/2022 | $350.00 | Chassis Per Diem |
| 100000326445Z | 8/11/2022 | $455.00 | Chassis Per Diem |
| 100000329126Z | 8/12/2022 | $35.00 | Chassis Per Diem |
| 100000328672Z | 8/12/2022 | $105.00 | Chassis Per Diem |
| 100000329120Z | 8/12/2022 | $210.00 | Chassis Per Diem |
| 100000328890Z | 8/12/2022 | $245.00 | Chassis Per Diem |
| 100000328515Z | 8/12/2022 | $280.00 | Chassis Per Diem |
| 100000328673Z | 8/12/2022 | $280.00 | Chassis Per Diem |
| 100000329787Z | 8/12/2022 | $315.00 | Chassis Per Diem |
| 100000331265Z | 8/16/2022 | $35.00 | Chassis Per Diem |
| 100000330849Z | 8/16/2022 | $105.00 | Chassis Per Diem |
| 100000331204Z | 8/16/2022 | $105.00 | Chassis Per Diem |
| 100000350662Z | 8/16/2022 | $105.00 | Chassis Per Diem |
| 100000331267Z | 8/16/2022 | $140.00 | Chassis Per Diem |
| 100000359538Z | 8/16/2022 | $140.00 | Chassis Per Diem |
| 100000350663Z | 8/16/2022 | $245.00 | Chassis Per Diem |
| 100000330912Z | 8/16/2022 | $280.00 | Chassis Per Diem |
| 100000331056Z | 8/16/2022 | $280.00 | Chassis Per Diem |
| 100000331063Z | 8/16/2022 | $490.00 | Chassis Per Diem |
| 100000332156Z | 8/17/2022 | $490.00 | Chassis Per Diem |
| 100000332195Z | 8/17/2022 | $630.00 | Chassis Per Diem |
| 100000334410Z | 8/18/2022 | $490.00 | Chassis Per Diem |
| 100000334525Z | 8/18/2022 | $490.00 | Chassis Per Diem |
| 100000334431Z | 8/18/2022 | $525.00 | Chassis Per Diem |
| 100000334833Z | 8/19/2022 | $70.00 | Chassis Per Diem |
| 100000334975Z | 8/19/2022 | $70.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000334760Z | 8/19/2022 | $140.00 | Chassis Per Diem |
| 100000334834Z | 8/19/2022 | $210.00 | Chassis Per Diem |
| 100000334837Z | 8/19/2022 | $245.00 | Chassis Per Diem |
| 100000336581Z | 8/23/2022 | $35.00 | Chassis Per Diem |
| 100000336109Z | 8/23/2022 | $70.00 | Chassis Per Diem |
| 100000336577Z | 8/23/2022 | $105.00 | Chassis Per Diem |
| 100000368152Z | 8/23/2022 | $210.00 | Chassis Per Diem |
| 100000442099Z | 8/23/2022 | $210.00 | Chassis Per Diem |
| 100000336222Z | 8/23/2022 | $245.00 | Chassis Per Diem |
| 100000336376Z | 8/23/2022 | $245.00 | Chassis Per Diem |
| 100000336550Z | 8/23/2022 | $350.00 | Chassis Per Diem |
| 100000407182Z | 8/24/2022 | $210.00 | Chassis Per Diem |
| 100000338449Z | 8/24/2022 | $525.00 | Chassis Per Diem |
| 100000338671Z | 8/24/2022 | $525.00 | Chassis Per Diem |
| 100000338903Z | 8/25/2022 | $140.00 | Chassis Per Diem |
| 100000338904Z | 8/25/2022 | $140.00 | Chassis Per Diem |
| 100000338901Z | 8/25/2022 | $175.00 | Chassis Per Diem |
| 100000338902Z | 8/25/2022 | $175.00 | Chassis Per Diem |
| 100000343845Z | 8/26/2022 | $245.00 | Chassis Per Diem |
| 100000339910Z | 8/26/2022 | $280.00 | Chassis Per Diem |
| 100000340256Z | 8/26/2022 | $630.00 | Chassis Per Diem |
| 100000339865Z | 8/26/2022 | $1,015.00 | Chassis Per Diem |
| 100000341360Z | 8/29/2022 | $70.00 | Chassis Per Diem |
| 100000341367Z | 8/29/2022 | $105.00 | Chassis Per Diem |
| 100000341414Z | 8/29/2022 | $315.00 | Chassis Per Diem |
| 100000342650Z | 8/30/2022 | $210.00 | Chassis Per Diem |
| 100000342594Z | 8/30/2022 | $385.00 | Chassis Per Diem |
| 100000344130Z | 9/1/2022 | $35.00 | Chassis Per Diem |
| 100000344209Z | 9/1/2022 | $70.00 | Chassis Per Diem |
| 100000344176Z | 9/1/2022 | $210.00 | Chassis Per Diem |
| 100000344038Z | 9/1/2022 | $245.00 | Chassis Per Diem |
| 100000373046Z | 9/1/2022 | $245.00 | Chassis Per Diem |
| 100000344108Z | 9/1/2022 | $280.00 | Chassis Per Diem |
| 100000344069Z | 9/1/2022 | $420.00 | Chassis Per Diem |
| 100000345789Z | 9/2/2022 | $315.00 | Chassis Per Diem |
| 100000345792Z | 9/2/2022 | $350.00 | Chassis Per Diem |
| 100000345791Z | 9/2/2022 | $385.00 | Chassis Per Diem |
| 100000345811Z | 9/2/2022 | $525.00 | Chassis Per Diem |
| 100000345775Z | 9/2/2022 | $840.00 | Chassis Per Diem |
| 100000347526Z | 9/7/2022 | $70.00 | Chassis Per Diem |
| 100000351020Z | 9/13/2022 | $105.00 | Chassis Per Diem |
| 100000351021Z | 9/13/2022 | $105.00 | Chassis Per Diem |
| 100000351082Z | 9/13/2022 | $140.00 | Chassis Per Diem |
| 100000351315Z | 9/13/2022 | $175.00 | Chassis Per Diem |
| 100000351095Z | 9/13/2022 | $210.00 | Chassis Per Diem |
| 100000351101Z | 9/13/2022 | $210.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000351317Z | 9/13/2022 | $210.00 | Chassis Per Diem |
| 100000351103Z | 9/13/2022 | $245.00 | Chassis Per Diem |
| 100000350938Z | 9/13/2022 | $350.00 | Chassis Per Diem |
| 100000351096Z | 9/13/2022 | $385.00 | Chassis Per Diem |
| 100000350905Z | 9/13/2022 | $455.00 | Chassis Per Diem |
| 100000350949Z | 9/13/2022 | $455.00 | Chassis Per Diem |
| 100000350975Z | 9/13/2022 | $560.00 | Chassis Per Diem |
| 100000350844Z | 9/13/2022 | $595.00 | Chassis Per Diem |
| 100000351014Z | 9/13/2022 | $665.00 | Chassis Per Diem |
| 100000350843Z | 9/13/2022 | $700.00 | Chassis Per Diem |
| 100000350755Z | 9/13/2022 | $910.00 | Chassis Per Diem |
| 100000350960Z | 9/13/2022 | $1,015.00 | Chassis Per Diem |
| 100000351287Z | 9/13/2022 | $1,190.00 | Chassis Per Diem |
| 100000350801Z | 9/13/2022 | $1,225.00 | Chassis Per Diem |
| 100000350802Z | 9/13/2022 | $1,260.00 | Chassis Per Diem |
| 100000350803Z | 9/13/2022 | $1,260.00 | Chassis Per Diem |
| 100000350804Z | 9/13/2022 | $1,260.00 | Chassis Per Diem |
| MEDUI9705704 | 9/14/2022 | $625.00 | Freight |
| 100000353787Z | 9/14/2022 | $35.00 | Chassis Per Diem |
| 100000353896Z | 9/14/2022 | $245.00 | Chassis Per Diem |
| 100000355625Z | 9/15/2022 | $1,470.00 | Chassis Per Diem |
| 100000355965Z | 9/15/2022 | $1,470.00 | Chassis Per Diem |
| MEDUVE684356 | 9/17/2022 | $250.00 | Freight |
| 100000357805Z | 9/20/2022 | $35.00 | Chassis Per Diem |
| 100000357807Z | 9/20/2022 | $35.00 | Chassis Per Diem |
| 100000357900Z | 9/20/2022 | $35.00 | Chassis Per Diem |
| 100000357803Z | 9/20/2022 | $105.00 | Chassis Per Diem |
| 100000357730Z | 9/20/2022 | $455.00 | Chassis Per Diem |
| 100000357754Z | 9/20/2022 | $665.00 | Chassis Per Diem |
| 100000357758Z | 9/20/2022 | $665.00 | Chassis Per Diem |
| 100000357755Z | 9/20/2022 | $735.00 | Chassis Per Diem |
| 100000357759Z | 9/20/2022 | $735.00 | Chassis Per Diem |
| 100000357756Z | 9/20/2022 | $770.00 | Chassis Per Diem |
| 100000357834Z | 9/20/2022 | $770.00 | Chassis Per Diem |
| 100000357858Z | 9/20/2022 | $840.00 | Chassis Per Diem |
| 100000357724Z | 9/20/2022 | $1,505.00 | Chassis Per Diem |
| 100000359612Z | 9/21/2022 | $770.00 | Chassis Per Diem |
| 100000359485Z | 9/21/2022 | $980.00 | Chassis Per Diem |
| 100000359026Z | 9/21/2022 | $1,365.00 | Chassis Per Diem |
| 100000359867Z | 9/21/2022 | $1,400.00 | Chassis Per Diem |
| 100000360576Z | 9/22/2022 | $35.00 | Chassis Per Diem |
| 100000360569Z | 9/22/2022 | $70.00 | Chassis Per Diem |
| 100000360732Z | 9/22/2022 | $105.00 | Chassis Per Diem |
| 100000360736Z | 9/22/2022 | $245.00 | Chassis Per Diem |
| 100000360511Z | 9/22/2022 | $1,260.00 | Chassis Per Diem |
| 100000360493Z | 9/22/2022 | $1,470.00 | Chassis Per Diem |

Exhibit E

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000361749Z | 9/23/2022 | $175.00 | Chassis Per Diem |
| 100000361756Z | 9/23/2022 | $175.00 | Chassis Per Diem |
| 100000361938Z | 9/23/2022 | $210.00 | Chassis Per Diem |
| 100000361751Z | 9/23/2022 | $245.00 | Chassis Per Diem |
| 100000361655Z | 9/23/2022 | $1,715.00 | Chassis Per Diem |
| 100000362938Z | 9/26/2022 | $700.00 | Chassis Per Diem |
| MEDUPV406558 | 9/27/2022 | $30,867.00 | Freight |
| MEDUMF539362 | 9/29/2022 | $22,014.00 | Freight |
| 100000364201Z | 9/29/2022 | $70.00 | Chassis Per Diem |
| 100000364532Z | 9/29/2022 | $70.00 | Chassis Per Diem |
| 100000368137Z | 9/29/2022 | $70.00 | Chassis Per Diem |
| 100000364238Z | 9/29/2022 | $175.00 | Chassis Per Diem |
| 100000364375Z | 9/29/2022 | $175.00 | Chassis Per Diem |
| 100000364562Z | 9/29/2022 | $245.00 | Chassis Per Diem |
| 100000365496Z | 9/29/2022 | $280.00 | Chassis Per Diem |
| 100000364283Z | 9/29/2022 | $420.00 | Chassis Per Diem |
| 100000364289Z | 9/29/2022 | $420.00 | Chassis Per Diem |
| 100000365505Z | 9/29/2022 | $455.00 | Chassis Per Diem |
| 100000364542Z | 9/29/2022 | $875.00 | Chassis Per Diem |
| 100000364196Z | 9/29/2022 | $1,015.00 | Chassis Per Diem |
| 100000364198Z | 9/29/2022 | $1,155.00 | Chassis Per Diem |
| 100000364141Z | 9/29/2022 | $1,435.00 | Chassis Per Diem |
| 100000364229Z | 9/29/2022 | $1,435.00 | Chassis Per Diem |
| 100000364106Z | 9/29/2022 | $1,925.00 | Chassis Per Diem |
| 100000364137Z | 9/29/2022 | $2,030.00 | Chassis Per Diem |
| 100000365927Z | 9/30/2022 | $105.00 | Chassis Per Diem |
| 100000365929Z | 9/30/2022 | $105.00 | Chassis Per Diem |
| 100000373028Z | 9/30/2022 | $140.00 | Chassis Per Diem |
| 100000365933Z | 9/30/2022 | $210.00 | Chassis Per Diem |
| 100000365808Z | 9/30/2022 | $455.00 | Chassis Per Diem |
| 100000373029Z | 9/30/2022 | $525.00 | Chassis Per Diem |
| 100000368177Z | 10/5/2022 | $140.00 | Chassis Per Diem |
| 100000373008Z | 10/5/2022 | $175.00 | Chassis Per Diem |
| 100000368174Z | 10/5/2022 | $385.00 | Chassis Per Diem |
| 100000368197Z | 10/5/2022 | $385.00 | Chassis Per Diem |
| 100000368200Z | 10/5/2022 | $385.00 | Chassis Per Diem |
| 100000368202Z | 10/5/2022 | $385.00 | Chassis Per Diem |
| 100000368199Z | 10/5/2022 | $420.00 | Chassis Per Diem |
| 100000368201Z | 10/5/2022 | $420.00 | Chassis Per Diem |
| 100000368203Z | 10/5/2022 | $420.00 | Chassis Per Diem |
| 100000368198Z | 10/5/2022 | $455.00 | Chassis Per Diem |
| 100000368211Z | 10/5/2022 | $1,120.00 | Chassis Per Diem |
| 100000368209Z | 10/5/2022 | $1,190.00 | Chassis Per Diem |
| 100000368210Z | 10/5/2022 | $1,190.00 | Chassis Per Diem |
| 100000368180Z | 10/5/2022 | $1,435.00 | Chassis Per Diem |
| MEDUI9950383 | 10/8/2022 | $625.00 | Freight |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000373152Z | 10/13/2022 | $35.00 | Chassis Per Diem |
| 100000373319Z | 10/13/2022 | $105.00 | Chassis Per Diem |
| 100000373151Z | 10/13/2022 | $140.00 | Chassis Per Diem |
| 100000373191Z | 10/13/2022 | $140.00 | Chassis Per Diem |
| 100000373641Z | 10/13/2022 | $140.00 | Chassis Per Diem |
| 100000373680Z | 10/13/2022 | $140.00 | Chassis Per Diem |
| 100000373154Z | 10/13/2022 | $175.00 | Chassis Per Diem |
| 100000373292Z | 10/13/2022 | $175.00 | Chassis Per Diem |
| 100000373324Z | 10/13/2022 | $315.00 | Chassis Per Diem |
| 100000373326Z | 10/13/2022 | $315.00 | Chassis Per Diem |
| 100000373644Z | 10/13/2022 | $315.00 | Chassis Per Diem |
| 100000373223Z | 10/13/2022 | $420.00 | Chassis Per Diem |
| 100000373226Z | 10/13/2022 | $455.00 | Chassis Per Diem |
| 100000373228Z | 10/13/2022 | $490.00 | Chassis Per Diem |
| 100000373640Z | 10/13/2022 | $490.00 | Chassis Per Diem |
| 100000373645Z | 10/13/2022 | $490.00 | Chassis Per Diem |
| 100000373221Z | 10/13/2022 | $525.00 | Chassis Per Diem |
| 100000373314Z | 10/13/2022 | $525.00 | Chassis Per Diem |
| 100000373651Z | 10/13/2022 | $525.00 | Chassis Per Diem |
| 100000373652Z | 10/13/2022 | $525.00 | Chassis Per Diem |
| 100000373189Z | 10/13/2022 | $560.00 | Chassis Per Diem |
| 100000373190Z | 10/13/2022 | $560.00 | Chassis Per Diem |
| 100000373224Z | 10/13/2022 | $560.00 | Chassis Per Diem |
| 100000373231Z | 10/13/2022 | $560.00 | Chassis Per Diem |
| 100000373315Z | 10/13/2022 | $560.00 | Chassis Per Diem |
| 100000373230Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373316Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373317Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373318Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373320Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373648Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373650Z | 10/13/2022 | $630.00 | Chassis Per Diem |
| 100000373323Z | 10/13/2022 | $665.00 | Chassis Per Diem |
| 100000373647Z | 10/13/2022 | $665.00 | Chassis Per Diem |
| 100000373225Z | 10/13/2022 | $700.00 | Chassis Per Diem |
| 100000373233Z | 10/13/2022 | $700.00 | Chassis Per Diem |
| 100000373322Z | 10/13/2022 | $700.00 | Chassis Per Diem |
| 100000373222Z | 10/13/2022 | $735.00 | Chassis Per Diem |
| 100000373255Z | 10/13/2022 | $840.00 | Chassis Per Diem |
| 100000373415Z | 10/13/2022 | $1,155.00 | Chassis Per Diem |
| 100000373396Z | 10/13/2022 | $1,750.00 | Chassis Per Diem |
| 100000373399Z | 10/13/2022 | $1,750.00 | Chassis Per Diem |
| 100000373063Z | 10/13/2022 | $1,785.00 | Chassis Per Diem |
| 100000373397Z | 10/13/2022 | $1,855.00 | Chassis Per Diem |
| 100000373398Z | 10/13/2022 | $1,855.00 | Chassis Per Diem |
| 100000373206Z | 10/13/2022 | $1,960.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| MEDUVE684448 | 10/16/2022 | $250.00 | Freight |
| 100000375378Z | 10/17/2022 | $35.00 | Chassis Per Diem |
| 100000375380Z | 10/17/2022 | $175.00 | Chassis Per Diem |
| 100000374842Z | 10/17/2022 | $210.00 | Chassis Per Diem |
| 100000374844Z | 10/17/2022 | $245.00 | Chassis Per Diem |
| 100000374845Z | 10/17/2022 | $280.00 | Chassis Per Diem |
| 100000375345Z | 10/17/2022 | $385.00 | Chassis Per Diem |
| 100000375346Z | 10/17/2022 | $385.00 | Chassis Per Diem |
| 100000375354Z | 10/17/2022 | $385.00 | Chassis Per Diem |
| 100000374874Z | 10/17/2022 | $805.00 | Chassis Per Diem |
| 100000374881Z | 10/17/2022 | $1,015.00 | Chassis Per Diem |
| 100000374744Z | 10/17/2022 | $1,855.00 | Chassis Per Diem |
| 100000374745Z | 10/17/2022 | $2,100.00 | Chassis Per Diem |
| 100000377780Z | 10/19/2022 | $105.00 | Chassis Per Diem |
| 100000377271Z | 10/19/2022 | $245.00 | Chassis Per Diem |
| 100000377860Z | 10/19/2022 | $245.00 | Chassis Per Diem |
| 100000377279Z | 10/19/2022 | $280.00 | Chassis Per Diem |
| 100000377192Z | 10/19/2022 | $385.00 | Chassis Per Diem |
| 100000377273Z | 10/19/2022 | $490.00 | Chassis Per Diem |
| 100000377749Z | 10/19/2022 | $490.00 | Chassis Per Diem |
| 100000377285Z | 10/19/2022 | $630.00 | Chassis Per Diem |
| 100000377752Z | 10/19/2022 | $735.00 | Chassis Per Diem |
| 100000377287Z | 10/19/2022 | $840.00 | Chassis Per Diem |
| 100000377216Z | 10/19/2022 | $910.00 | Chassis Per Diem |
| 100000377217Z | 10/19/2022 | $910.00 | Chassis Per Diem |
| 100000377215Z | 10/19/2022 | $945.00 | Chassis Per Diem |
| 100000374404Z | 10/19/2022 | $1,470.00 | Chassis Per Diem |
| 100000379087Z | 10/20/2022 | $35.00 | Chassis Per Diem |
| 100000378956Z | 10/20/2022 | $70.00 | Chassis Per Diem |
| 100000378991Z | 10/20/2022 | $140.00 | Chassis Per Diem |
| 100000378992Z | 10/20/2022 | $140.00 | Chassis Per Diem |
| 100000378958Z | 10/20/2022 | $175.00 | Chassis Per Diem |
| 100000379243Z | 10/20/2022 | $490.00 | Chassis Per Diem |
| 100000379286Z | 10/20/2022 | $595.00 | Chassis Per Diem |
| 100000378892Z | 10/20/2022 | $805.00 | Chassis Per Diem |
| 100000379916Z | 10/21/2022 | $1,715.00 | Chassis Per Diem |
| MEDUF1248295 | 10/22/2022 | $125.00 | Freight |
| MEDUPV461009 | 10/25/2022 | $24,237.00 | Freight |
| 100000382596Z | 10/28/2022 | $35.00 | Chassis Per Diem |
| 100000382766Z | 10/28/2022 | $35.00 | Chassis Per Diem |
| 100000382770Z | 10/28/2022 | $35.00 | Chassis Per Diem |
| 100000382888Z | 10/28/2022 | $35.00 | Chassis Per Diem |
| 100000382894Z | 10/28/2022 | $35.00 | Chassis Per Diem |
| 100000383026Z | 10/28/2022 | $35.00 | Chassis Per Diem |
| 100000382597Z | 10/28/2022 | $70.00 | Chassis Per Diem |
| 100000382686Z | 10/28/2022 | $70.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|-----|--------------|------------------|------|
| 100000383025Z | 10/28/2022 | $105.00 | Chassis Per Diem |
| 100000383030Z | 10/28/2022 | $105.00 | Chassis Per Diem |
| 100000383039Z | 10/28/2022 | $105.00 | Chassis Per Diem |
| 100000382661Z | 10/28/2022 | $175.00 | Chassis Per Diem |
| 100000382660Z | 10/28/2022 | $210.00 | Chassis Per Diem |
| 100000382765Z | 10/28/2022 | $280.00 | Chassis Per Diem |
| 100000382767Z | 10/28/2022 | $350.00 | Chassis Per Diem |
| 100000382769Z | 10/28/2022 | $350.00 | Chassis Per Diem |
| 100000382607Z | 10/28/2022 | $385.00 | Chassis Per Diem |
| 100000382761Z | 10/28/2022 | $385.00 | Chassis Per Diem |
| 100000382763Z | 10/28/2022 | $385.00 | Chassis Per Diem |
| 100000382604Z | 10/28/2022 | $420.00 | Chassis Per Diem |
| 100000382606Z | 10/28/2022 | $420.00 | Chassis Per Diem |
| 100000382608Z | 10/28/2022 | $455.00 | Chassis Per Diem |
| 100000382656Z | 10/28/2022 | $700.00 | Chassis Per Diem |
| 100000382648Z | 10/28/2022 | $770.00 | Chassis Per Diem |
| 100000382654Z | 10/28/2022 | $945.00 | Chassis Per Diem |
| 100000382739Z | 10/28/2022 | $1,155.00 | Chassis Per Diem |
| 100000382740Z | 10/28/2022 | $1,155.00 | Chassis Per Diem |
| 100000382741Z | 10/28/2022 | $1,715.00 | Chassis Per Diem |
| 100000382742Z | 10/28/2022 | $1,785.00 | Chassis Per Diem |
| 100000382554Z | 10/28/2022 | $2,345.00 | Chassis Per Diem |
| 100000382553Z | 10/28/2022 | $2,415.00 | Chassis Per Diem |
| 100000382555Z | 10/28/2022 | $2,415.00 | Chassis Per Diem |
| 100000382556Z | 10/28/2022 | $2,415.00 | Chassis Per Diem |
| 100000384253Z | 11/1/2022 | $35.00 | Chassis Per Diem |
| 100000385810Z | 11/1/2022 | $35.00 | Chassis Per Diem |
| 100000385710Z | 11/1/2022 | $1,330.00 | Chassis Per Diem |
| 100000385664Z | 11/1/2022 | $2,450.00 | Chassis Per Diem |
| 100000385665Z | 11/1/2022 | $2,450.00 | Chassis Per Diem |
| 100000385662Z | 11/1/2022 | $2,485.00 | Chassis Per Diem |
| 100000385663Z | 11/1/2022 | $2,485.00 | Chassis Per Diem |
| 100000385666Z | 11/1/2022 | $2,555.00 | Chassis Per Diem |
| 100000386573Z | 11/1/2022 | $2,590.00 | Chassis Per Diem |
| 100000385667Z | 11/1/2022 | $2,730.00 | Chassis Per Diem |
| 100000387040Z | 11/2/2022 | $175.00 | Chassis Per Diem |
| MEDUV9114566 | 11/8/2022 | $13,925.00 | Freight |
| MEDUO3054253 | 11/9/2022 | $2,600.00 | Freight |
| MEDUZB773113 | 11/9/2022 | $6,000.00 | Freight |
| MEDUV9011697 | 11/9/2022 | $18,957.00 | Freight |
| MEDUV9036884 | 11/9/2022 | $19,072.00 | Freight |
| MEDUID944605 | 11/11/2022 | $6,000.00 | Freight |
| 100000392351Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392449Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392625Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392686Z | 11/11/2022 | $35.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000392698Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392701Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392702Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392762Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392764Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392765Z | 11/11/2022 | $35.00 | Chassis Per Diem |
| 100000392349Z | 11/11/2022 | $70.00 | Chassis Per Diem |
| 100000392352Z | 11/11/2022 | $70.00 | Chassis Per Diem |
| 100000392601Z | 11/11/2022 | $70.00 | Chassis Per Diem |
| 100000392627Z | 11/11/2022 | $70.00 | Chassis Per Diem |
| 100000392628Z | 11/11/2022 | $70.00 | Chassis Per Diem |
| 100000392685Z | 11/11/2022 | $70.00 | Chassis Per Diem |
| 100000392605Z | 11/11/2022 | $105.00 | Chassis Per Diem |
| 100000392766Z | 11/11/2022 | $105.00 | Chassis Per Diem |
| 100000392772Z | 11/11/2022 | $105.00 | Chassis Per Diem |
| 100000407179Z | 11/11/2022 | $105.00 | Chassis Per Diem |
| 100000392355Z | 11/11/2022 | $140.00 | Chassis Per Diem |
| 100000392358Z | 11/11/2022 | $140.00 | Chassis Per Diem |
| 100000392631Z | 11/11/2022 | $140.00 | Chassis Per Diem |
| 100000392652Z | 11/11/2022 | $140.00 | Chassis Per Diem |
| 100000392356Z | 11/11/2022 | $175.00 | Chassis Per Diem |
| 100000392400Z | 11/11/2022 | $175.00 | Chassis Per Diem |
| 100000392653Z | 11/11/2022 | $175.00 | Chassis Per Diem |
| 100000392689Z | 11/11/2022 | $175.00 | Chassis Per Diem |
| 100000392752Z | 11/11/2022 | $175.00 | Chassis Per Diem |
| 100000392767Z | 11/11/2022 | $175.00 | Chassis Per Diem |
| 100000392399Z | 11/11/2022 | $210.00 | Chassis Per Diem |
| 100000392401Z | 11/11/2022 | $210.00 | Chassis Per Diem |
| 100000392768Z | 11/11/2022 | $245.00 | Chassis Per Diem |
| 100000392350Z | 11/11/2022 | $315.00 | Chassis Per Diem |
| 100000392770Z | 11/11/2022 | $385.00 | Chassis Per Diem |
| 100000392773Z | 11/11/2022 | $420.00 | Chassis Per Diem |
| 100000392769Z | 11/11/2022 | $455.00 | Chassis Per Diem |
| 100000392493Z | 11/11/2022 | $490.00 | Chassis Per Diem |
| 100000392385Z | 11/11/2022 | $1,015.00 | Chassis Per Diem |
| 100000392386Z | 11/11/2022 | $1,190.00 | Chassis Per Diem |
| 100000392389Z | 11/11/2022 | $1,330.00 | Chassis Per Diem |
| 100000392361Z | 11/11/2022 | $1,470.00 | Chassis Per Diem |
| 100000392378Z | 11/11/2022 | $1,610.00 | Chassis Per Diem |
| 100000392362Z | 11/11/2022 | $1,715.00 | Chassis Per Diem |
| 100000392337Z | 11/11/2022 | $2,800.00 | Chassis Per Diem |
| MEDUJF429511 | 11/12/2022 | $6,125.00 | Freight |
| MEDUTW146137 | 11/12/2022 | $42,866.00 | Freight |
| MEDUV9154497 | 11/14/2022 | $1,300.00 | Freight |
| MEDUV9154513 | 11/14/2022 | $1,300.00 | Freight |
| MEDUIY945582 | 11/14/2022 | $9,402.00 | Freight |

Exhibit E

| BOL | Invoice Date | Outstanding amt# | TYPE |
|-----|--------------|------------------|------|
| MEDUI5821281 | 11/15/2022 | $375.00 | Freight |
| MEDUO2050179 | 11/16/2022 | $125.00 | Freight |
| 100000395268Z | 11/17/2022 | $35.00 | Chassis Per Diem |
| 100000395808Z | 11/17/2022 | $70.00 | Chassis Per Diem |
| 100000398125Z | 11/22/2022 | $35.00 | Chassis Per Diem |
| 100000398126Z | 11/22/2022 | $35.00 | Chassis Per Diem |
| 100000398127Z | 11/22/2022 | $35.00 | Chassis Per Diem |
| 100000398128Z | 11/22/2022 | $35.00 | Chassis Per Diem |
| 100000398008Z | 11/22/2022 | $350.00 | Chassis Per Diem |
| 100000398048Z | 11/22/2022 | $385.00 | Chassis Per Diem |
| MEDUV9107933 | 11/27/2022 | $9,363.00 | Freight |
| MEDUV9095401 | 11/27/2022 | $18,726.00 | Freight |
| MEDUI5810052 | 11/28/2022 | $875.00 | Freight |
| MEDUZD154361 | 11/30/2022 | $6,125.00 | Freight |
| MEDUPV468087 | 11/30/2022 | $59,944.00 | Freight |
| 100000400459Z | 11/30/2022 | $490.00 | Chassis Per Diem |
| MEDUJF502580 | 12/3/2022 | $6,000.00 | Freight |
| MEDUX3925062 | 12/3/2022 | $6,125.00 | Freight |
| MEDUIY895670 | 12/3/2022 | $9,104.00 | Freight |
| MEDUO2356964 | 12/4/2022 | $6,325.00 | Freight |
| MEDUO2357053 | 12/4/2022 | $6,366.38 | Freight |
| MEDUZB577944 | 12/4/2022 | $8,500.00 | Freight |
| MEDUZB577969 | 12/4/2022 | $8,625.00 | Freight |
| MEDUV9095252 | 12/11/2022 | $9,331.00 | Freight |
| MEDUV9095187 | 12/11/2022 | $18,912.00 | Freight |
| MEDUQ9028596 | 12/13/2022 | $675.00 | Freight |
| MEDUV9217336 | 12/14/2022 | $7,495.00 | Freight |
| MEDUV9154232 | 12/14/2022 | $7,495.00 | Freight |
| 100000407220Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407223Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407232Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407237Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407286Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407295Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407302Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407366Z | 12/15/2022 | $35.00 | Chassis Per Diem |
| 100000407263Z | 12/15/2022 | $70.00 | Chassis Per Diem |
| 100000407267Z | 12/15/2022 | $70.00 | Chassis Per Diem |
| 100000407293Z | 12/15/2022 | $70.00 | Chassis Per Diem |
| 100000407355Z | 12/15/2022 | $70.00 | Chassis Per Diem |
| 100000407234Z | 12/15/2022 | $105.00 | Chassis Per Diem |
| 100000407264Z | 12/15/2022 | $105.00 | Chassis Per Diem |
| 100000407265Z | 12/15/2022 | $105.00 | Chassis Per Diem |
| 100000407292Z | 12/15/2022 | $140.00 | Chassis Per Diem |
| 100000407249Z | 12/15/2022 | $175.00 | Chassis Per Diem |
| 100000407251Z | 12/15/2022 | $175.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000407253Z | 12/15/2022 | $175.00 | Chassis Per Diem |
| 100000407255Z | 12/15/2022 | $175.00 | Chassis Per Diem |
| 100000407222Z | 12/15/2022 | $210.00 | Chassis Per Diem |
| 100000407250Z | 12/15/2022 | $210.00 | Chassis Per Diem |
| 100000407254Z | 12/15/2022 | $210.00 | Chassis Per Diem |
| 100000407294Z | 12/15/2022 | $210.00 | Chassis Per Diem |
| 100000407252Z | 12/15/2022 | $350.00 | Chassis Per Diem |
| 100000409461Z | 12/16/2022 | $70.00 | Chassis Per Diem |
| MEDUJF794047 | 12/18/2022 | $7,683.00 | Freight |
| 100000312871R | 12/19/2022 | $1,995.00 | Rail Detention |
| 100000312869R | 12/19/2022 | $2,775.00 | Rail Detention |
| MEDUV9217245 | 12/19/2022 | $6,240.00 | Freight |
| MEDUO2354126 | 12/19/2022 | $6,366.38 | Freight |
| MEDUO2303818 | 12/19/2022 | $7,707.00 | Freight |
| MEDUO2260117 | 12/20/2022 | $26,619.00 | Freight |
| 100000412015Z | 12/22/2022 | $3,450.00 | Chassis Per Diem |
| MEDUPV514831 | 12/26/2022 | $12,685.16 | Freight |
| MEDUPV507652 | 12/26/2022 | $38,260.21 | Freight |
| MEDUO2350314 | 12/28/2022 | $6,366.38 | Freight |
| MEDUO2407734 | 12/28/2022 | $7,715.00 | Freight |
| MEDUO2400390 | 12/28/2022 | $8,980.00 | Freight |
| MEDUO2308619 | 12/28/2022 | $47,140.66 | Freight |
| 100000413353Z | 12/28/2022 | $35.00 | Chassis Per Diem |
| 100000413746Z | 12/28/2022 | $175.00 | Chassis Per Diem |
| MEDUO2400499 | 12/30/2022 | $8,855.00 | Freight |
| 100000415376Z | 12/30/2022 | $175.00 | Chassis Per Diem |
| 100000415380Z | 12/30/2022 | $175.00 | Chassis Per Diem |
| 100000415396Z | 12/30/2022 | $210.00 | Chassis Per Diem |
| MEDUPV523170 | 1/2/2023 | $17,672.00 | Freight |
| MEDUPV523188 | 1/2/2023 | $17,672.00 | Freight |
| 100000416089Z | 1/4/2023 | $175.00 | Chassis Per Diem |
| 100000415953Z | 1/4/2023 | $210.00 | Chassis Per Diem |
| 100000416383Z | 1/4/2023 | $490.00 | Chassis Per Diem |
| MEDUQ9028711 | 1/6/2023 | $22,188.00 | Freight |
| MEDUO3887801 | 1/7/2023 | $4,200.00 | Freight |
| MEDUV9238332 | 1/7/2023 | $12,525.00 | Freight |
| MEDUV9238324 | 1/7/2023 | $12,525.00 | Freight |
| MEDUO2545418 | 1/7/2023 | $26,155.00 | Freight |
| MEDUO2408914 | 1/8/2023 | $8,839.00 | Freight |
| MEDUO2303743 | 1/8/2023 | $14,181.00 | Freight |
| MEDUOL095223 | 1/10/2023 | $4,566.00 | Freight |
| MEDUV9238316 | 1/10/2023 | $6,240.00 | Freight |
| MEDUOL945229 | 1/11/2023 | $5,625.00 | Freight |
| MEDUO2648980 | 1/11/2023 | $12,625.00 | Freight |
| MEDUOL945237 | 1/11/2023 | $14,176.00 | Freight |
| MEDUZF000844 | 1/12/2023 | $1,165.00 | Freight |

Exhibit E

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| MEDUZD637670 | 1/12/2023 | $4,717.00 | Freight |
| MEDUO4018034 | 1/12/2023 | $6,750.00 | Freight |
| MEDUO2376814 | 1/12/2023 | $12,682.00 | Freight |
| MEDUQ9150648 | 1/13/2023 | $4,200.00 | Freight |
| 100000419825Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000419828Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000419829Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000419852Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000419893Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000421582Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000422397Z | 1/13/2023 | $35.00 | Chassis Per Diem |
| 100000419850Z | 1/13/2023 | $70.00 | Chassis Per Diem |
| 100000421580Z | 1/13/2023 | $70.00 | Chassis Per Diem |
| 100000423584Z | 1/13/2023 | $70.00 | Chassis Per Diem |
| 100000427701Z | 1/13/2023 | $70.00 | Chassis Per Diem |
| 100000419824Z | 1/13/2023 | $105.00 | Chassis Per Diem |
| 100000419826Z | 1/13/2023 | $105.00 | Chassis Per Diem |
| MEDUO4045581 | 1/14/2023 | $4,325.00 | Freight |
| MEDUQ9113562 | 1/14/2023 | $4,325.00 | Freight |
| MEDUO3910215 | 1/14/2023 | $8,400.00 | Freight |
| MEDUO3910231 | 1/14/2023 | $12,975.00 | Freight |
| MEDUO4045573 | 1/14/2023 | $12,975.00 | Freight |
| MEDUO3910223 | 1/14/2023 | $12,975.00 | Freight |
| MEDUUV772097 | 1/14/2023 | $25,200.00 | Freight |
| MEDUUV772089 | 1/14/2023 | $25,950.00 | Freight |
| MEDUQ9274398 | 1/16/2023 | $1,300.00 | Freight |
| MEDUOL883123 | 1/16/2023 | $1,331.00 | Freight |
| MEDUOL883024 | 1/16/2023 | $1,678.00 | Freight |
| MEDUPH192387 | 1/16/2023 | $3,215.00 | Freight |
| MEDUQ9274406 | 1/16/2023 | $4,025.00 | Freight |
| 100000428467Z | 1/16/2023 | $70.00 | Chassis Per Diem |
| 100000429486Z | 1/16/2023 | $70.00 | Chassis Per Diem |
| 100000436569Z | 1/16/2023 | $70.00 | Chassis Per Diem |
| 100000436570Z | 1/16/2023 | $70.00 | Chassis Per Diem |
| 100000437756Z | 1/16/2023 | $70.00 | Chassis Per Diem |
| MEDUO4154565 | 1/18/2023 | $1,300.00 | Freight |
| MEDUZD896243 | 1/18/2023 | $1,300.00 | Freight |
| MEDUZD839391 | 1/18/2023 | $1,300.00 | Freight |
| MEDUZF109207 | 1/18/2023 | $1,300.00 | Freight |
| MEDUZD847865 | 1/18/2023 | $1,425.00 | Freight |
| MEDUZD839383 | 1/18/2023 | $1,425.00 | Freight |
| MEDUZD891830 | 1/18/2023 | $2,600.00 | Freight |
| MEDUO4154557 | 1/18/2023 | $2,600.00 | Freight |
| MEDUO2440503 | 1/18/2023 | $6,341.00 | Freight |
| MEDUO2462663 | 1/18/2023 | $6,341.00 | Freight |
| MEDUO2437111 | 1/18/2023 | $7,707.00 | Freight |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| MEDUPV558002 | 1/18/2023 | $8,589.00 | Freight |
| MEDUPV530357 | 1/18/2023 | $17,672.00 | Freight |
| 100000423070Z | 1/18/2023 | $140.00 | Chassis Per Diem |
| 100000423123Z | 1/18/2023 | $140.00 | Chassis Per Diem |
| 100000427698Z | 1/19/2023 | $105.00 | Chassis Per Diem |
| MEDUO2665224 | 1/20/2023 | $26,475.00 | Freight |
| 100000424184Z | 1/20/2023 | $35.00 | Chassis Per Diem |
| 100000424181Z | 1/20/2023 | $315.00 | Chassis Per Diem |
| MEDUO2377887 | 1/21/2023 | $6,483.00 | Freight |
| MEDUZD816423 | 1/22/2023 | $1,165.00 | Freight |
| MEDUO4293009 | 1/25/2023 | $1,300.00 | Freight |
| MEDUZD961427 | 1/25/2023 | $1,300.00 | Freight |
| MEDUZD964991 | 1/25/2023 | $1,300.00 | Freight |
| MEDUZD965063 | 1/25/2023 | $2,600.00 | Freight |
| MEDUZD965022 | 1/25/2023 | $2,600.00 | Freight |
| MEDUO4429215 | 1/25/2023 | $6,500.00 | Freight |
| MEDUO2580837 | 1/25/2023 | $8,573.00 | Freight |
| MEDUPV567748 | 1/25/2023 | $8,682.00 | Freight |
| MEDUO2665091 | 1/25/2023 | $8,823.00 | Freight |
| MEDUO4164531 | 1/25/2023 | $13,175.00 | Freight |
| MEDUO4164549 | 1/25/2023 | $16,625.00 | Freight |
| MEDUO4178952 | 1/25/2023 | $18,685.00 | Freight |
| 100000425948Z | 1/25/2023 | $35.00 | Chassis Per Diem |
| 100000319252R | 1/26/2023 | $330.00 | Rail Detention |
| 100000319253R | 1/26/2023 | $825.00 | Rail Detention |
| 100000319254R | 1/26/2023 | $825.00 | Rail Detention |
| MEDUZD843401 | 1/26/2023 | $3,200.00 | Freight |
| MEDUZF097790 | 1/26/2023 | $3,325.00 | Freight |
| MEDUOL883073 | 1/26/2023 | $3,453.00 | Freight |
| MEDUZF097741 | 1/26/2023 | $6,650.00 | Freight |
| MEDUZD626244 | 1/26/2023 | $6,650.00 | Freight |
| MEDUQ9152164 | 1/27/2023 | $3,199.38 | Freight |
| MEDUZD625600 | 1/27/2023 | $3,200.00 | Freight |
| MEDUZD843930 | 1/27/2023 | $3,200.00 | Freight |
| MEDUO2767269 | 1/27/2023 | $5,025.00 | Freight |
| MEDUO2784645 | 1/27/2023 | $5,025.00 | Freight |
| MEDUO2831586 | 1/27/2023 | $8,825.00 | Freight |
| MEDUO4134948 | 1/27/2023 | $16,000.00 | Freight |
| MEDUO4134955 | 1/27/2023 | $16,000.00 | Freight |
| MEDUZD826646 | 1/28/2023 | $3,325.00 | Freight |
| MEDUX4296414 | 1/29/2023 | $1,300.00 | Freight |
| MEDUV9366844 | 1/29/2023 | $1,300.00 | Freight |
| MEDUV9366901 | 1/29/2023 | $1,360.00 | Freight |
| MEDUV9366927 | 1/29/2023 | $2,720.00 | Freight |
| 100000427736Z | 1/30/2023 | $70.00 | Chassis Per Diem |
| 100000427782Z | 1/30/2023 | $70.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000427785Z | 1/30/2023 | $70.00 | Chassis Per Diem |
| 100000427735Z | 1/30/2023 | $140.00 | Chassis Per Diem |
| MEDUO2545392 | 1/31/2023 | $7,055.00 | Freight |
| 100000428511Z | 1/31/2023 | $175.00 | Chassis Per Diem |
| 100000428526Z | 1/31/2023 | $175.00 | Chassis Per Diem |
| 100000428527Z | 1/31/2023 | $175.00 | Chassis Per Diem |
| 100000428528Z | 1/31/2023 | $175.00 | Chassis Per Diem |
| MEDUO2851162 | 2/1/2023 | $7,691.00 | Freight |
| 100000428957Z | 2/1/2023 | $210.00 | Chassis Per Diem |
| MEDUQ9338813 | 2/3/2023 | $2,685.00 | Freight |
| MEDUO2723403 | 2/3/2023 | $5,041.00 | Freight |
| MEDUO4293348 | 2/3/2023 | $16,000.00 | Freight |
| MEDUOL845775 | 2/3/2023 | $16,500.00 | Freight |
| 100000429616Z | 2/3/2023 | $35.00 | Chassis Per Diem |
| 100000429949Z | 2/3/2023 | $980.00 | Chassis Per Diem |
| MEDUO2852699 | 2/5/2023 | $4,500.00 | Freight |
| MEDUO2919092 | 2/5/2023 | $5,025.00 | Freight |
| MEDUO2871756 | 2/5/2023 | $12,050.00 | Freight |
| 100000431641Z | 2/9/2023 | $175.00 | Chassis Per Diem |
| 100000431359Z | 2/9/2023 | $455.00 | Chassis Per Diem |
| MEDUDI429280 | 2/11/2023 | $8,750.00 | Freight |
| MEDUQ9338870 | 2/13/2023 | $3,199.38 | Freight |
| MEDUO2852517 | 2/14/2023 | $4,500.00 | Freight |
| MEDUO2852483 | 2/14/2023 | $4,625.00 | Freight |
| MEDUO2872218 | 2/14/2023 | $18,450.00 | Freight |
| 100000434152Z | 2/15/2023 | $875.00 | Chassis Per Diem |
| MEDUV9367073 | 2/17/2023 | $1,310.00 | Freight |
| MEDUZF450221 | 2/17/2023 | $3,131.00 | Freight |
| MEDUPV590948 | 2/18/2023 | $13,700.00 | Freight |
| MEDUU9070183 | 2/22/2023 | $3,325.00 | Freight |
| MEDUZD971905 | 2/22/2023 | $3,325.00 | Freight |
| MEDUDI416519 | 2/22/2023 | $9,600.00 | Freight |
| MEDUDI418572 | 2/22/2023 | $32,500.00 | Freight |
| MEDUU9187995 | 2/23/2023 | $3,200.00 | Freight |
| MEDUU9188068 | 2/24/2023 | $3,325.00 | Freight |
| MEDUDI429165 | 2/24/2023 | $20,475.00 | Freight |
| MEDUIF112185 | 2/25/2023 | $4,500.00 | Freight |
| MEDUZF450239 | 2/26/2023 | $3,053.00 | Freight |
| MEDUO4751659 | 2/28/2023 | $8,525.00 | Freight |
| MEDUIF172874 | 3/1/2023 | $10,050.00 | Freight |
| MEDUIF254375 | 3/1/2023 | $14,550.00 | Freight |
| MEDUO4915288 | 3/3/2023 | $1,000.00 | Freight |
| MEDUZF450213 | 3/3/2023 | $3,053.00 | Freight |
| MEDUUJ057220 | 3/3/2023 | $16,000.00 | Freight |
| MEDUIF337220 | 3/4/2023 | $6,050.00 | Freight |
| MEDUO2894410 | 3/5/2023 | $15,200.00 | Freight |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| MEDUIF315408 | 3/10/2023 | $2,700.00 | Freight |
| MEDUIF315499 | 3/10/2023 | $2,700.00 | Freight |
| MEDUIF315473 | 3/10/2023 | $3,150.00 | Freight |
| MEDUIF315481 | 3/10/2023 | $3,999.00 | Freight |
| MEDUIF058453 | 3/10/2023 | $5,150.00 | Freight |
| MEDUIF227157 | 3/10/2023 | $9,650.00 | Freight |
| MEDUIF255562 | 3/10/2023 | $9,650.00 | Freight |
| MEDUIF451773 | 3/11/2023 | $3,025.00 | Freight |
| MEDUO5020583 | 3/12/2023 | $1,250.00 | Freight |
| MEDUIF007716 | 3/12/2023 | $4,025.00 | Freight |
| MEDUO2991620 | 3/12/2023 | $11,675.00 | Freight |
| 100000445635Z | 3/14/2023 | $280.00 | Chassis Per Diem |
| 100000442191Z | 3/15/2023 | $210.00 | Chassis Per Diem |
| 100000442192Z | 3/15/2023 | $210.00 | Chassis Per Diem |
| 100000442193Z | 3/15/2023 | $210.00 | Chassis Per Diem |
| 100000442195Z | 3/15/2023 | $210.00 | Chassis Per Diem |
| 100000447692Z | 3/15/2023 | $315.00 | Chassis Per Diem |
| 100000443842Z | 3/15/2023 | $350.00 | Chassis Per Diem |
| 100000442134Z | 3/15/2023 | $1,225.00 | Chassis Per Diem |
| 100000442135Z | 3/15/2023 | $1,225.00 | Chassis Per Diem |
| 100000442136Z | 3/15/2023 | $1,225.00 | Chassis Per Diem |
| 100000442137Z | 3/15/2023 | $1,260.00 | Chassis Per Diem |
| 100000442714Z | 3/16/2023 | $245.00 | Chassis Per Diem |
| 100000442717Z | 3/16/2023 | $245.00 | Chassis Per Diem |
| 100000445628Z | 3/16/2023 | $350.00 | Chassis Per Diem |
| 100000442574Z | 3/16/2023 | $385.00 | Chassis Per Diem |
| MEDUIF536698 | 3/18/2023 | $2,575.00 | Freight |
| MEDUIF536714 | 3/18/2023 | $3,025.00 | Freight |
| 100000443910Z | 3/20/2023 | $385.00 | Chassis Per Diem |
| 100000443869Z | 3/20/2023 | $455.00 | Chassis Per Diem |
| 100000443923Z | 3/20/2023 | $700.00 | Chassis Per Diem |
| 100000444277Z | 3/21/2023 | $1,015.00 | Chassis Per Diem |
| MEDUIF256032 | 3/22/2023 | $14,100.00 | Freight |
| 100000444951Z | 3/23/2023 | $140.00 | Chassis Per Diem |
| 100000444908Z | 3/23/2023 | $280.00 | Chassis Per Diem |
| 100000444874Z | 3/23/2023 | $420.00 | Chassis Per Diem |
| 100000444875Z | 3/23/2023 | $420.00 | Chassis Per Diem |
| 100000444946Z | 3/23/2023 | $455.00 | Chassis Per Diem |
| 100000445017Z | 3/23/2023 | $455.00 | Chassis Per Diem |
| 100000444941Z | 3/23/2023 | $490.00 | Chassis Per Diem |
| 100000444943Z | 3/23/2023 | $490.00 | Chassis Per Diem |
| 100000444939Z | 3/23/2023 | $525.00 | Chassis Per Diem |
| 100000444940Z | 3/23/2023 | $525.00 | Chassis Per Diem |
| 100000444942Z | 3/23/2023 | $525.00 | Chassis Per Diem |
| 100000445010Z | 3/23/2023 | $665.00 | Chassis Per Diem |
| 100000444890Z | 3/23/2023 | $1,435.00 | Chassis Per Diem |

| BOL | Invoice Date | Outstanding amt# | TYPE |
|---|---|---|---|
| 100000444935Z | 3/23/2023 | $1,470.00 | Chassis Per Diem |
| MEDUIF468413 | 3/26/2023 | $3,150.00 | Freight |
| MEDUU9638757 | 3/27/2023 | $1,000.00 | Freight |
| MEDUU9638237 | 3/27/2023 | $3,750.00 | Freight |
| MEDUU9595171 | 3/31/2023 | $5,000.00 | Freight |
| MEDUIF452912 | 4/4/2023 | $3,150.00 | Freight |
| MEDUO5614450 | 4/8/2023 | $1,000.00 | Freight |
| MEDUO5376225 | 4/8/2023 | $1,250.00 | Freight |
| MEDUIF452235 | 4/8/2023 | $3,525.00 | Freight |
| MEDUIF524611 | 4/8/2023 | $3,525.00 | Freight |
| MEDUZJ514161 | 4/13/2023 | $1,110.00 | Freight |
| MEDUO5357217 | 4/17/2023 | $2,110.00 | Freight |
| MEDUIU073686 | 5/10/2023 | $2,703.00 | Freight |
| MEDUIF903815 | 5/10/2023 | $3,650.00 | Freight |
| MEDUIU040784 | 5/10/2023 | $3,650.00 | Freight |
| 100000450081Z | 5/11/2023 | $1,610.00 | Chassis Per Diem |
| 100000450079Z | 5/11/2023 | $1,750.00 | Chassis Per Diem |
| 100000450998Z | 5/15/2023 | $35.00 | Chassis Per Diem |
| 100000450590Z | 5/15/2023 | $210.00 | Chassis Per Diem |
| 100000451291Z | 5/15/2023 | $210.00 | Chassis Per Diem |
| 100000451284Z | 5/15/2023 | $280.00 | Chassis Per Diem |
| 100000450256Z | 5/15/2023 | $455.00 | Chassis Per Diem |

**$2,008,218.43**

**Total for OCA 19-524WW (7/1/2019 - 6/30/2020):**     **$7,053.50**

**Total for OCA 21-418WW (5/1/2021 - 4/30/2022):**     **$121,649.00**

**Total for OCA 22-418WW (5/1/2022 - 5/22/2023):**     **$1,879,515.93**

Electronic Proof of Claim Confirmation:  3335-1-XIDYZ-871165681

Claim Electronically Submitted on (UTC) :  2023-07-06T22:09:05.653Z

Submitted by:  MSC Mediterranean Shipping Company SA
                gwerkheiser@beneschlaw.com

**KROLL**