UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Fran B. Steele, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: fran.b.steele@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Case No. 23-13359(VFP) |
| | : | *Jointly Administered* |
| BED BATH & BEYOND INC., *et al*,[1] | : | Chapter 11 |
| | : | |
| Debtors. | : | Honorable Vincent F. Papalia |
| | : | |
| | : | Hearing: September 12, 2023 at 2:30 p.m. |

**LIMITED OBJECTION OF THE UNITED STATES TRUSTEE TO THE AMENDED JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

The United States Trustee ("U.S. Trustee") by and through counsel, in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby submits this limited objection ("Objection") to confirmation of the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. And Its Debtor Affiliates.* ("Amended Joint Plan") (ECF No. 1712), and respectfully states as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number May be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

1

## JURISDICTION

1. This Court has jurisdiction to hear the above-referenced Limited Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under section 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor and comment on plans and disclosure statements filed in Chapter 11 cases.

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding the above-referenced Objection.

## BACKGROUND

5. On April 23, 2023 ("Petition Date"), Bed Bath & Beyond Inc., and the related Debtor Affiliates ("Debtors") filed voluntary petitions for relief under the Bankruptcy Code. *See* ECF No. 1.

6. On April 24, 2023, the Court entered an *Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 75.

7. Pre-petition, the Debtors operated as a home furnishing retailer in the United States, Canada, Mexico, and Puerto Rico offering products from bed linens to cookware to electric appliances, home organization, baby care, and other items. *See* ECF No. 10

8. On May 5, 2023, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("Committee"). *See* ECF No. 218.

9. On August 2, the Court entered an *Order (A) Conditionally Approving Disclosure Statement, (B) Approving the solicitation and Notice Procedures with respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in connection with therewith, (D) Scheduling a Combined Disclosure Statement approval and Plan Confirmation Hearing.* *See* ECF No. 1716.

10. On August 1, 2023, the Debtors filed the Amended Joint Plan. *See* ECF No. 1712.

11. As a result of discussions between the U.S. Trustee and the Debtors, the Debtors have agreed to amend the Amended Joint Plan. The Amended Joint Plan will include modifications to the definition of Exculpated Parties, modifications to the Exculpation Clause, modifications to the Injunction Clause, modifications to the Exculpation, Indemnification, Insurance & Liability Limitation Clause, a modification to the definition of Releasing Party and a modification to the Release by Holders of Claims or Interests Clause.

12. The Debtors have agreed to modify the "Releasing Parties" to delete as a Releasing Party "(f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan." *See* ECF No. 1712, p. 17. In addition, the Debtors have agreed that a Third-Party release will not be deemed to have been granted by those Holders of Claims whose ballots are returned to the Debtors marked undeliverable.

13. The U.S. Trustee files this limited objection on the basis that the Third-Party Release is overbroad and impermissible in that it contains as a Releasing Party "(g) all Holders of Claims or Interest who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan." *Id*.

**OBJECTION**

I. **Confirmation of the Plan**

14. A chapter 11 plan cannot be confirmed unless the Court finds the plan complies with the provisions of 11 U.S.C. § 1129(a). *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000). Even where there are no objections to a plan, a court must find that the debtor fulfilled the requirements of Section 1129(a). *In re Friese*, 103 B.R. 90, 91 (Bankr. S.D.N.Y. 1989). A plan proponent bears the burden of proof with respect to each and every element of section 1129(a). *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001).

15. The Amended Joint Plan defines "Released Party" and "Releasing Party" as follows:

> "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.
>
> "*Releasing Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors,

managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

*See* ECF No. 1712, p. 16, para. 129 & 130.

16.    The section of the Amended Joint Plan entitled "Release by Holders of Claims or Interests" provides as follows:

> As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility

Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims and Causes of Action related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Without limiting the foregoing, from and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that is given the opportunity to opt out of the releases contained in this Article X.D and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that opted out of (or otherwise did not participate in) the releases contained in this Article X.D may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. For the avoidance of doubt, the terms of this paragraph shall not apply to the Plan Administrator. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XIII of the Plan, the

> Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.
>
> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.
>
> Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

*See id.* at p. 51, Article X, D.

17. For the reasons set forth below, the inclusion of "(g) all Holders of Claims or Interest who vote to reject the Plan and who do not affirmatively opt out of the releases" in the defined term "Releasing Party" should be stricken.

### i. The Definition of "Releasing Party" is Over Broad

18. The Amended Joint Plan provides for third-party releases for the benefit of the Released Parties. *See* ECF No. 1712, p. 51, Article X, D. The Non-Debtor Third-Party Releases are referred to as "consensual" but the definition of "Releasing Party" includes anyone that does not affirmatively opt-out of the releases. Specifically, it includes "(g) all Holders of Claims or Interest who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan." *Id.* at p. 17. The U.S. Trustee submits that those parties who fall under subsection (g) are not agreeing to consensual third-party releases and, thus, including them in the definition

of "Releasing Party" is contrary to applicable case law, including the standards set forth in *Washington Mutual*, as discussed further below.

19. In *Continental Airlines*, the Third Circuit determined that fairness requires, among other things, a showing that sufficient consideration was given to creditors whose claims were to be released and that such consideration renders the plan feasible. 203 F.3d at 213-14. The Third Circuit further noted that the success of the plan must be based on the releases, and that there is an identity of interest between the debtor and the non-debtor so that the debtor would likely bear the costs of the litigation against the non-debtor. *See id*. at 216.

20. In *Genesis Health*, the Court evaluated whether a non-consensual release fit the "hallmarks" discussed in *Continental* by considering whether: (i) the nonconsensual release was necessary to the success of the reorganization; (ii) the releasees provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release. In other words, to establish the necessity of such releases, the court declared that the debtors were required to demonstrate that the success of its reorganization was related to such non-consensual releases and the releasees provided a "critical financial contribution" that was necessary to render the plan feasible. *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607 (Bankr. D. Del. 2001).

21. In *Washington Mutual*, the Court held that "any third-party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases." *Washington Mutual*, 442 B.R. at 355. The Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not

8

return a ballot (or are not entitled to vote in the first place.)". *Id*. (emphasis added). "*Failing to return a ballot is not a sufficient manifestation of consent to a third party release*." *Id*. (emphasis added), citing *In re Zenith Electronics Corp*., 241 B.R. at 111.

22. While the Court in *In re Indianapolis Downs*, LLC 486 B.R. 286 (Bankr. D. Del. 2013) reached a different conclusion regarding the need for affirmative consent to third party releases, the Court pointed out that, in that case, unlike the present, "the third party release provision does not apply to any party that is deemed to reject the Plan." *Id.* at 305.

23. The Court in *Spansion* also reached a different conclusion than *Washington Mutual* and the other cases cited above with respect to affirmative consent, but only with respect to releases given by unimpaired classes who were "being paid in full." 426 B.R. at 144. In fact, in *Spansion*, the Court held that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan did not pass muster under applicable law, and therefore, "the proposed nonconsensual Third Party Release does not pass muster under Continental." *See id*. at 145, *citing Continental Airlines*, 203 F.3d 203.

24. Accordingly, based on the above, the Third-Party Release should not apply to those Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases.

    **ii.    The Requirement that Parties who Opt Out Obtain a Final Order before Bringing a Claim Against a Released Party is Inappropriate**

25. The Amended Joint Plan provides that any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that is given the opportunity to opt out of the releases contained in this Article X, D and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party. *See* ECF No. 1712, p. 51, Article X, D.

26. Furthermore, the Amended Plan provides that any Entity that opted out may not assert any claim or other Cause of Action against any Released Party without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. *See id*. at p. 52. The U.S. Trustee submits this provision represents an inappropriate burden on the claim holder and should be deleted from the Amended Plan.

II.    **Reservation of Rights**

27. The U.S. Trustee leaves the Debtors to meet their burden and reserves all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection.

## CONCLUSION

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny confirmation of the Joint Amended Plan and grant such other relief as the Court deems just and proper.

Respectfully submitted,
ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: */s/ Fran B. Steele*
    Fran B. Steele
    Trial Attorney

Dated: September 5, 2023