**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OBJECTION TO THE MOTION OF**
**PHYLLIS EICHNER TO TERMINATE THE AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this objection (this "Objection") to the *Notice of Motion for Relief from Automatic Stay* and *Brief*

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

*in Support of Motion for Automatic Relief on Behalf of Phyllis Eichner* [Docket No. 1925] (the "Motion"), filed by Phyllis Eichner (the "Movant").[2]  In support of this Objection, the Debtors state as follows:

**Preliminary Statement**

1.      Movant, an unsecured creditor holding a contingent, unliquidated litigation claim against the Debtors, seeks relief from the automatic stay to prosecute a prepetition personal injury-related lawsuit filed in New Jersey state court (the "State Court Action") against Debtor Bed Bath & Beyond Inc. ("BBB") and certain non-Debtor defendants.[3]  The Movant relies on a rote recitation of factors purporting to show "cause" and the incorrect contention that the Movant can "proceed against available insurance" without prejudice to the Debtors' estates.  Motion at 3-5. The Movant's argument is without merit and should be denied.

2.      Congress was clear that debtors—even large ones like BBB—require a "breathing spell" from prepetition litigation while they navigate the bankruptcy process.  The automatic stay affords debtors a much-needed respite to develop, confirm, and consummate a plan of reorganization, while protecting other creditors from a race by their peers to procure judgments outside the bankruptcy court.  The law does not recognize exceptions for litigation claimants; nor does it credit arguments that their claims seek to collect solely on insurance proceeds (notwithstanding the existence of attendant litigation costs and other prejudices to debtors). Rather, *all* unsecured creditors, like the Movant, must establish "extraordinary circumstances" to lift the stay and skip the line of other litigants patiently waiting for the restructuring to conclude.

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

[3]    The State Court Action names Dan Nguyen, Hamilton Commons TEI Equities, LLC, Stanley Access Technologies, and various Doe defendants as non-Debtor co-defendants (together, the "Co-Defendants").

The Movant does not come close to meeting the heavy burden of lifting the automatic stay and prioritizing the Movant's claim ahead of other prepetition litigation claimants.

3.      ***First***, the Movant's request to prosecute the claims in the State Court Action solely to collect on the proceeds of the Debtors' insurance policies fails for two reasons.  As a preliminary matter, the Debtors simply do not have insurance coverage against which the Movant can recover. The Debtors sought and obtained this Court's approval to maintain their prepetition insurance coverage as part of their first day relief.[4]  Attached to the Insurance Motion was an exhibit detailing each of the Debtors' insurance policies that would continue through the pendency of the Debtors' chapter 11 cases (the "Chapter 11 Cases").  *See* Insurance Motion, Exhibit C.  Although the Debtors do carry a commercial general liability insurance policy, policy number GL4062767 (the "Insurance Policy"), insured by Safety National Casualty Corporation ("Safety National"), the Insurance Policy includes a self-insured retention provision (the "SIR") in the amount of $1 million.  Thus, if the Movant were permitted to prosecute the State Court Action and obtain a judgment, Safety National would not cover defense costs below the SIR amount.  As discussed further herein, the Debtors believe that the Movant would not exhaust the SIR[5] and the Debtors would be liable for all defense costs and judgment, if any.  This is a textbook example of prepetition litigation the automatic stay is designed to prevent.

4.      Further, the Debtors will incur significant administrative costs and be forced to dedicate valuable, scarce resources to defend against the State Court Action.  BBB's participation

---

[4]     *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (III) Granting Related Relief* [Docket No. 20] (the "Insurance Motion"); *Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (III) Granting Related Relief* [Docket No. 374].

[5]     Movant has filed a claim asserting a contingent unliquidated amount equal to $500,000, half of the SIR under the Insurance Policy.

would require counsel to BBB to expend enormous time and resources preparing for, attending, and defending any trial in the State Court Action.  This preparation and the trial itself would result in significant costs to the Debtors' estates.  The burden of these proceedings is multiplied by the Debtors' skeletal remaining workforce, which was pared down to precisely enough employees to guide the Debtors through the upcoming confirmation of their chapter 11 plan and the wind down thereafter.  The Debtors' remaining employees, the Debtors' Chief Restructuring Officer, and ultimately, a liquidating trust to be created under the Debtors' chapter 11 plan, would improperly be forced to divert their attention away from administering these Chapter 11 Cases and an orderly liquidation of the Debtors' estates to, instead, focus their time, energy, and resources on a trial of indeterminate length and complexity.  Any time spent involved in litigation or money spent by the Debtors in paying defense costs or resolving disputes with the Movant or the Co-Defendants would reduce recoveries available for other creditors.  The time and expense that would be required to litigate the State Court Action would result in substantial costs to the Debtors' estate that have been stayed pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code").

5.    **_Second_**, the Movant has not identified any cognizable harm that would be suffered if the stay is not lifted.  Instead, the Movant simply states that the Movant will "be prejudiced . . . [as] her claims will remain pending and uncertain for an unknown period of time." Motion at 5.  This assertion is incorrect for multiple reasons, including that the Movant could simply sever BBB and continue against any of the Co-Defendants.  Further, the Movant is well aware of the Court's conditional approval of the Debtors' disclosure statement on August 1, 2023, and the scheduling of the combined hearing on final approval thereof and confirmation of the Debtors' chapter 11 plan on September 12, 2023.  The Movant has timely filed a proof of claim to preserve the Movant's claim and—just like every other prepetition litigation claimant—must now

allow such claim to be adjudicated through the claims administration process.  The Movant will not be prejudiced, nor has the Movant shown they would sustain meaningful, extraordinary harm, by waiting until the end of these Chapter 11 Cases to litigate the State Court Action.

6.      **Third**, if the Motion is granted, only the Movant stands to benefit, while the automatic stay would continue to prohibit other constituents from pursuing their claims outside this Court (as defined herein).  As a result, if granted, the Motion would invite others to seek similar relief.  Courts recognize the risk of opening the proverbial "floodgates" to similarly situated creditors.  *See, e.g.*, *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) ("*Finally*, granting relief [from the automatic stay] could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case." (emphasis in original)).  Indeed, two other lift-stay motions have been filed, and several other potential movants have contacted Debtors' counsel.  The Debtors are entering a critical phase of these Chapter 11 Cases following plan confirmation as parties in interest work collaboratively towards emergence. Re-activating years-old state court litigation for out-of-the-money claimants at this juncture would detract from these efforts.

7.      Movant's request for relief is nothing more than a "me first" demand that the Movant's claim should be prioritized over the claims of all other general unsecured creditors.  Such individual demands do not satisfy a creditor's burden to establish "cause" justifying relief from the automatic stay, as discussed in greater detail herein.  *See In re UNR Indus., Inc.*, 54 B.R. 263, 265 (Bankr. N.D. Ill. 1985).  Rather, the Movant is in the same position as many of the Debtors' litigation creditors, and the Movant should abide by the same rules.  Further, a court in this district has denied relief in similar a case where a debtor would be forced to bear its own defense costs in

connection with litigating a prepetition claim.[6]    Movant has not established "extraordinary circumstances," let alone cause, to lift the automatic stay.    Based on the reasons set forth herein, and the Debtors' desire to develop a global and equitable resolution for all claims entitled to share in the Debtors' estates, the Debtors request that the Motion be denied.

### Background

8.    On July 19, 2021, the Movant filed a complaint against BBB and the Co-Defendants in the Superior Court of New Jersey, Atlantic County, initiating the State Court Action, styled *Phyllis Eichner v. Bed, Bath & Beyond Inc., et al.*, Case No. ATL-L-2254-21.    *See* Motion, Exhibit A.    The State Court Action is based on the injuries the Movant alleged to have sustained from an automatic door while on BBB's premises.    *See generally id.*

9.    On April 23, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").    By operation of section 362 of the Bankruptcy Code, the automatic stay enjoined all persons from, among other things, commencing or continuing judicial action against any of the Debtors that was or could have been initiated before the Petition Date. *See* 11 U.S.C. § 362(a)(1).    Consequently, the State Court Action was stayed.

10.    On June 2, 2023, the Movant filed a proof of claim asserting an unliquidated claim in the estimated amount of $500,000.00.    On August 18, 2023, the Movant filed the Motion seeking to adjudicate, liquidate, and obtain a judgment as to BBB and the Co-Defendants in the State Court Action and to attempt to recover against BBB's insurance policies.

---

[6]    *See In re National Realty Inv. Advisors, LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. Apr. 24, 2023) [Docket No. 2338] (denying claimant relief from the stay where debtor lacked insurance coverage for defending types of claims asserted in underlying state court action).

## The Debtors' Insurance Coverage

11.    The Debtors have undertaken a review of BBB's insurance coverage to determine whether the Motion could potentially be easily resolved by entering into a stipulation and consent order with the Movant to permit the Movant to pursue a recovery against insurance proceeds. Based on this review, it does not appear that the Debtors possess any meaningful insurance coverage, since the Debtors' Insurance Policy includes a SIR amount of $1 million, well below the Movant's alleged claim of $500,000.00.   Accordingly, despite the Debtors' efforts and engagement with the Movant and Safety National, the Debtors, the Movant, and Safety National could not reach an agreement on a simple solution.

## Objection

I.    **Movant Has Not Established Cause for Relief from the Automatic Stay.**

   A.    **The Automatic Stay Is a Fundamental Debtor Protection and Exceptions Are Narrowly Construed.**

12.    The automatic stay affords one of the most "fundamental debtor protections provided by the bankruptcy laws." *Midatlantic Nat. Bank v. N.J. Dept. of Env't Prot.*, 474 U.S. 494, 503 (1986) (quoting S. Rep. 95-989, 54(1978); H.R. Rep. 95–595, 340 (1977)).  "The purpose of the automatic stay is to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982).  Further, it "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990).

13.     The automatic stay expressly applies to the continuation of legal actions against a

debtor, such as the continuation of the State Court Action.  *See* 11 U.S.C. § 362(a)(1).  Lifting the

automatic stay would undermine the claims resolution process by forcing the Debtors to adjudicate

the Movant's claim in another forum.  Instead of allowing claims-related litigation and expense at

this time, the Debtors believe it is more appropriate to globally address all such similar claims as

part of an overall resolution to claims in these Chapter 11 Cases.  This approach will prevent a

race to the courthouse by similarly situated claimants that would have the dual negative effects of

(a) depleting funds in the Debtors' estates available to satisfy other claims and (b) impacting the

Debtors' ability to maximize distributions available for all similarly situated claimants.  In sum,

the claims resolution process is the appropriate vehicle for resolving the Movant's claim.

**B.     A Party Seeking Relief from the Automatic Stay Must Demonstrate "Cause."**

14.     Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief

from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code "does not

define 'cause,' leaving courts to consider what constitutes cause based on the totality of the

circumstances in each particular case."  *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (citing

*Trident Assocs. V. Metro. Life Ins. Co. (In re Trident Assocs.)*, 52 F.3d 127 (6th Cir. 1995)).

15.     Courts in this district often rely on the following factors (together, the "Sonnax

Factors") in determining whether to grant relief from the automatic stay:

(1)     whether relief would result in a partial or complete resolution of the issues;

(2)     lack of any connection with or interference with the bankruptcy case;

(3)     whether the other proceeding involves the debtor as a fiduciary;

(4)     whether a specialized tribunal with the necessary expertise has been established to
        hear the cause of action;

(5)     whether the debtor's insurer has assumed full responsibility for defending it;

(6)     whether the action primarily involves third parties;

(7)     whether litigation in another forum would prejudice the interests of other creditors;

(8)     whether the judgment claim arising from the other action is subject to equitable subordination;

(9)     whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)    whether the parties are ready for trial in the other proceeding; and

(12)    impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (applying the Sonnax Factors). "All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay." *Mid-Atlantic*, 304 B.R. at 130.

16.     Although the burden of proof on a motion to lift the automatic stay is a shifting one, section 362 of the Bankruptcy Code places the initial burden of proving cause to lift the stay on the Movant. 11 U.S.C. § 362(d)(1); *In re Mattera*, Case No. 05-39171, 2006 WL 4452834, at *4 (Bankr. D.N.J. Feb. 6, 2006). Movant did not make an initial showing of cause. Accordingly, the Debtors request that the Court deny the Motion.

**C.     The Movant Fails to Satisfy the Sonnax Factors.**

17.     Turning to the Sonnax Factors, the Movant fails to establish "cause" under this test, as all of the relevant factors weigh in favor of denying the Motion as set forth below. Of the twelve Sonnax Factors, nine factors weigh against lifting the stay, while three factors are inapplicable to the facts of this case. The factors that weigh against lifting the stay are:[7]

---

[7]    Although Movant asserts a personal injury claim, and as such, the Court does not have jurisdiction to liquidate such claim, *see generally* 28 U.S.C. § 157(b)(2)(B), such mandatory abstention "does not preclude denial of relief from § 362's automatic stay." *See In re Conejo Enters., Inc.*, 96 F.3d 346, 352 (citing provisions in 28 U.S.C. § 1334 that explicitly prevent the limitation of the automatic stay to core bankruptcy matters). Given the

- **Factor 1 (whether relief would result in a partial or complete resolution of the issues):** Resolution of the State Court Action is only one step toward a full resolution of the issues related to it. Even if the Movant were to prevail in the State Court Action and obtain a verdict against BBB and the Co-Defendants, such a result would likely be followed by post-trial proceedings, appeals, and potential contribution litigation amongst BBB and the Co-Defendants. Moreover, the Movant would still be required to resolve the Movant's filed claim against the Debtors in these Chapter 11 Cases through the claims administration process. Article IX.C of the Debtors' proposed *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1712] (the "<u>Plan</u>") provides that the Debtors, Plan Administrator, or the Wind-Down Debtors (each as defined in the Plan), as applicable, may litigate and estimate any claim, including the Movant's claim, "pursuant to applicable law." Thus, although litigating the State Court Action may result in the liquidation of the Movant's claim, the Debtors, Plan Administrator, or Wind-Down Debtors, as applicable, would have authority to litigate the claim if necessary, resulting in a more efficient allocation of estate resources rather than through a piecemeal defense.

- **Factor 2 (the lack of any connection with or interference with the bankruptcy case):** The "general idea is that 'cause' exists where the other proceeding bears no relation to the bankruptcy case or no relation to the purpose of the automatic stay."[8] The Movant seeks to lift the stay to pursue damages in connection with an alleged personal injury action—a claim. Claims adjudication is core to these Chapter 11 Cases. Granting the Motion would interfere with such claims adjudication processes and may force the Debtors to pay considerable defense costs and attorney's fees in defending the State Court Action.

- **Factor 3 (whether the other proceeding involves the debtor as a fiduciary):** The State Court Action does not involve BBB as a fiduciary.

- **Factor 4 (whether a specialized tribunal with the necessary expertise has been established to hear the cause of action):** The Superior Court of the State of New Jersey, Atlantic County is not a specialized tribunal.

- **Factor 5 (whether the debtor's insurer has assumed full responsibility for defending it):** After a thorough review of the Debtors' insurance coverage, the Debtors have determined that the Insurance Policy that would cover the type of claims asserted in the State Court Action contains a considerable SIR amount. The Debtors would, therefore, be required to bear the burden of litigating and defending the State Court Action and Safety National would be under no obligation to furnish a defense on behalf

---

overwhelming weight of the Sonnax Factors balancing against lifting the stay, as set forth herein, continued application of the automatic stay against the Movant is appropriate.

[8]  *In re Adams*, 27 B.R. 582, 585 (D. Del. 1983); *see also In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 835 (Bankr. S.D.N.Y. 1980) (stating that "'causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. . . . [and] should not be stayed'") (quoting H.R. No. 95–595, 343–44 (1977); *cf.* S. Rep. No. 95–989, 95th Cong., 2d Sess. (1978)).

of the Debtors. This factor alone weighs heavily against lifting the stay, as doing so could result in the *immediate* diversion of estate assets away from the pool of assets available for all other, similarly situated unsecured creditors.

- **Factor 7 (whether litigation in another forum would prejudice the interests of other creditors):** Litigating Movant's claim in state court and away from the claims resolution process would prejudice the interests of other creditors by diverting the Debtors' time, attention, and resources at a critical juncture in these Chapter 11 Cases and by elevating the interests of certain creditors over others. As discussed, the Debtors would be required to retain counsel and expend significant resources litigating Movant's claim in state court. Further, the claim pending in the prepetition litigation is merely that—a claim. The Movant is not entitled to finality or certainty with respect to resolution of their claim ahead of other creditors.

- **Factor 10 (the interests of judicial economy and the expeditious and economical resolution of litigation):** The interests of judicial economy weigh in favor of resolving the Movant's claim through the centralized claims resolution process, which will resolve the vast majority of claims in these chapter 11 cases. Lifting the stay to allow the Movant's claim to proceed outside of the Debtors' claims resolution process will impede the Debtors' and this Court's ability to streamline the claims process, which courts have recognized as grounds to continue the stay.[9] Because of the possibility of a prolonged lawsuit (including post-trial proceedings, appeals, and contribution litigation), the interests of judicial economy and the expeditious and economical resolution of the State Court Action weighs heavily against lifting the stay.

- **Factor 11 (whether the parties are ready for trial in the other proceeding):** The parties are not prepared for trial in the State Court Action, as there is significant discovery the parties must undergo. In fact, as evidence of the early stages of this litigation, the Movant identifies a lapsed insurance policy of the Debtors in the Motion, *see* Motion, Exhibit B, rather than the Debtors' extant Insurance Policy. To become ready for trial, BBB will be required to expend significant time and resources litigating and defending the State Court Action. Under these circumstances, the Debtors believe that this factor weighs against lifting the automatic stay.

- **Factor 12 (the impact of the stay on the parties and the balance of harms):** The only harm the Movant will suffer is that of delay. By contrast, the Debtors will face substantial prejudice if forced to defend against this litigation while in the midst of their confirmation process and working towards the plan effective date, as the Debtors would be diverting valuable resources to defending a claim that should be more properly dealt with through the claims administration process.

---

[9]    *See In re Residential Cap. LLC*, No. 12-12020 MG, 2012 WL 3555584, at *5 (Bankr. S.D.N.Y. Aug. 16, 2012) ("[movant]'s damages claims should be heard in this Court as part of the claims allowance process").

18.     The remaining Sonnax Factors, as listed below, are inapplicable:

- Factor 6 (whether the action primarily involves third parties);

- Factor 8 (whether the judgment claim arising from the other action is subject to equitable subordination); and

- Factor 9 (whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor).

19.     In light of the overwhelming majority of the Sonnax Factors weighing against lifting the automatic stay, the Movant cannot satisfy the standard for lifting the stay and the Court should therefore deny such relief.

## <u>Conclusion</u>

20.     Granting the Motion to lift the stay and proceed with the State Court Action at this time would consume significant time and resources and detract from the Debtors' complex chapter 11 efforts, which are rapidly nearing their completion.  This is contrary to the principles underlying the Bankruptcy Code.  Because Movant cannot establish that "cause" exists to lift the stay, the Motion should be denied.

WHEREFORE, for the reasons set forth herein, the Debtors request that the Court deny the

Motion.

Dated: September 5, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       joshua.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*