**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq.
Elisa M. Hyder, Esq. (admitted *pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
Email: wmsimkulak@duanemorris.com
Email: ehyder@duanemorris.com

*Counsel for the Chubb Companies*

**IFRAH PLLC**
George R. Calhoun, V, Esq. (admission *pro hac vice* pending)
1717 Pennsylvania Ave., NW
Suite 650
Washington DC 20006
Telephone: (202) 524-4147
Email: george@ifrahlaw.com

*Counsel for Federal*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**OBJECTION OF THE CHUBB COMPANIES TO AMENDED JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

ACE American Insurance Company, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, Chubb Custom Insurance Company, Executive Risk Specialty Insurance Company, Executive Risk Indemnity Inc., Great Northern Insurance Company, Chubb Insurance Company of New Jersey, Vigilant Insurance Company, Chubb Indemnity Insurance Company, ESIS, Inc. and each of their respective U.S.-based affiliates and successors (collectively, and solely in their capacities as insurers and/or third party administrators of one or more of the above-captioned debtors, the "Chubb Companies"),[2] by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1712] (the "Plan"),[3] and in support of the Objection the Chubb Companies respectfully state as follows:

## BACKGROUND

### A.     The Bankruptcy Case

1.   On April 23, 2023 (the "Petition Date"), Bed Bath & Beyond Inc. ("BB&B") and certain of its affiliates (collectively, and together with BB&B, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court").

2.   On July 20, 2023, the Debtors filed the original version of the Plan [Docket No. 1429].

---

[2]     Certain of the historical Federal Insurance Company ("Federal") insurance policies and related claims are administered by Brandywine Holdings Corp. ("Brandywine"). Federal and Brandywine are represented by the Ifrah PLLC firm solely with respect to those policies. Duane Morris LLP does not represent Brandywine, and Ifrah PLLC does not represent any of the other Chubb Companies in this matter.

[3]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

2

3.  On July 21, 2023, the Debtors filed a disclosure statement, since amended, in support of a Plan that provides for the transfer of the Debtors' assets to wind-down entities supervised by a Plan Administrator.

4.  On August 1, 2023, the Debtors filed the Plan and the *Amended Disclosure Statement Related to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1713] (the "Disclosure Statement"). Pursuant to the proposed Plan, a Plan Administrator will monetize the Debtors' assets and distribute them based on priority. Critically, certain claims are directed to pursue possible insurance recoveries, rather than payment from the estate.

5.  On August 2, 2023, the Court entered the *Order (I) (A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in Connection Therewith, (D) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Certain Dates and Deadlines with Respect Thereto, and (E) Granting Related Relief, and (II) (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief* [Docket No. 1716], which, among other things, conditionally approved the Disclosure Statement subject to final approval and scheduled a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan.

**B.   The Insurance Program**

6.  Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "BB&B Policies") to the Debtors as named insureds.

3

7. Pursuant to the BB&B Policies and any agreements related thereto (collectively, the "BB&B Insurance Program"), the Chubb Companies provide, *inter alia*, certain property, international, package, umbrella, global accident and sickness, excess marine, excess casualty, accident blanket, accident, commercial fire, cargo, directors' and officers' liability, fiduciary liability, special coverage, excess, workers' compensation, WorldNet, crime, automobile, export package, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the BB&B Insurance Program (the "BB&B Obligations").

8. The BB&B Insurance Program also includes, but is not limited to, certain documents pursuant to which ESIS, Inc. provides certain claims handling services to one or more of the Debtors and/or their affiliates or predecessors (collectively, the "ESIS Documents"), and the BB&B Obligations include, but are not limited to, amounts arising under and/or in connection with the ESIS Documents.

9. Prior to the Petition Date, the Chubb Companies also issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Cost Plus Policies") to Cost Plus, Inc. ("Cost Plus"), a non-Debtor former subsidiary of BB&B, as named insured.

10. Prior to the Petition Date, the Chubb Companies, Cost Plus, and/or BB&B also entered into certain written agreements in connection with the Cost Plus Policies (as renewed,

4

amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Cost Plus Insurance Agreements").

11. Pursuant to the Cost Plus Policies and the Cost Plus Insurance Agreements (collectively, the "Cost Plus Insurance Program," and together with the BB&B Insurance Program, the "Insurance Programs"),[4] the Chubb Companies provide, *inter alia*, certain workers' compensation, automobile liability, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Cost Plus Insurance Program (the "Cost Plus Obligations").

12. Pursuant to the Cost Plus Insurance Program, BB&B guarantees and is obligated to pay to the Chubb Companies certain of the Cost Plus Obligations (collectively, the "Guaranteed Obligations," and together with the BB&B Obligations, the "Obligations").[5]

13. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

14. Certain of the Obligations are by a letter of credit and a paid loss deposit fund and may also be secured by other letters of credit, other paid loss deposit funds, trusts, escrows, surety bonds, cash collateral, or other amounts.

---

[4] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

[5] The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

5

15. One or more of the Chubb Companies, including, but not limited to, Federal Insurance Company, has been notified of certain tort claims against one or more of the Debtors and has been associating in the defense of such claims pursuant to certain insurance policies issued in 2004 and 2005.

    C.    **The Plan**

16. Pursuant to the Plan, a Plan Administrator will monetize the Debtors' assets and distribute them based on priority. Following confirmation of the Plan, the Debtors will continue to exist as the "Wind-Down Debtors" for the purposes of: (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided in the Plan, (d) establishing and, to the extent not already funded, funding the Distribution Reserve Accounts, (e) enforcing and prosecuting claims, interests, rights, and privileges under all Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreements, if any, (h) liquidating all assets of the Wind-Down Debtors, and (i) otherwise administering the Plan in an efficacious manner consistent with the Plan.

17. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

18. Alternatively, the Plan allows for transfer of the Wind-Down Debtors' assets to a Liquidating Trust, but the Plan provides few, if any, details concerning such a trust. *See* Art. at VII.C.

19. The Plan purports to provide for the assumption of the Debtors' insurance policies, but without providing for the cure of the Debtors' defaults thereunder or otherwise addressing the Debtors' insurance obligations.

20. With respect to insurance policies generally, the Plan provides:

> All of the Debtors' insurance policies (including, for the avoidance of doubt, the D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

Plan at Art. V.D.

21. With respect to the D&O Liability Insurance Policies, the Plan further provides:

> After the Effective Date, the Plan Administrator shall not terminate or otherwise reduce the coverage under the D&O Liability Insurance Policies in effect on the Effective Date, with respect to conduct occurring prior thereto, and all officers, directors, trustee, managers, and members of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, (i) nothing in this paragraph shall in any way affect the Plan Administrator's ability to assert the Non-Released Claims or any other applicable claims that are not otherwise released pursuant to the Plan and are properly asserted against the D&O Liability Insurance Policies, or access the proceeds of the D&O Liability Insurance Policies for any losses on account of such Non-Released Claims or such other claims.

*Id*.

22. The Plan also contains provisions that contemplate the payment of certain claims by the Debtors' insurers. *See, e.g.*, Plan at Art. VI.G.2-3 (stating that distributions under the Plan shall not be made on account of an allowed claim payable pursuant to one of the Debtors' insurance policies until the holder of such claim "has exhausted all remedies with respect to such insurance policy" and that distributions to holders of allowed claims shall be in accordance with the provisions of any applicable insurance policy).

23. Moreover, the Plan contemplates that only the Wind Down Debtors and certain others shall have authority to file and prosecute objections to claims or to settle claims. *See* Plan at Art. IX.B. Specifically, the Plan provides:

> Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, *shall have the sole authority to File and prosecute objections to Claims*, and *the Wind-Down Debtors shall have the sole authority*, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

*Id.* (emphasis added).

24. The Plan also specifies that the Plan does not operate as "release" of any claims against insurers but makes no reference to the Debtors' obligations under their insurance policies. *See* Plan at Art. VI.G.3.

25. Finally, Article X.D of the Plan provides, in relevant part, that, before claimants can bring certain claims against any Released Party, such claimants must, among other things, obtain a final order from the Court specifically authorizing such claimants to bring their claim(s)

8

and, further, that the Court shall have "sole and exclusive jurisdiction" to determine whether any claim is "colorable":

> … From and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that opted out of (or otherwise did not participate in) the releases contained in this Article X.D may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. For the avoidance of doubt, the terms of this paragraph shall not apply to the Plan Administrator. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XIII of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Plan at Art. X.D.

## OBJECTION

26.  The Chubb Companies object to the Plan[6] on the bases that (A) the Plan attempts to improperly alter or otherwise modify the terms of the Insurance Programs in several ways,

---

[6] This Objection focuses on the objections to the Plan. As for the Disclosure Statement, the Chubb Companies assert that Section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited the plan and a disclosure statement containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code, which has been approved by the Bankruptcy Court after notice and a hearing. *See* 11 U.S.C. § 1125(b). A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S.C. § 1125(a). Courts consistently refuse to approve disclosure statements that lack the information that a "hypothetical reasonable investor" would require to make an informed decision about the proposed plan. *See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *In re Route 202 Corp.*, 37 B.R. 367, 375 76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re E. Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982); *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981). In this case, the Chubb Companies cannot determine with any certainty

including, the purported impermissible release of obligations under the Insurance Programs, the expansion of coverage under the D&O Liability Insurance Policies, and potential restrictions on the handling and administration of insured claims; and (B) the Plan fails to provide that workers' compensation claims and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course of business, as required by applicable state law.

A. **The Plan Improperly Alters The Terms Of The Insurance Programs.**

27. It is a bedrock principle of bankruptcy law that the Bankruptcy Code is "not intended to expand the debtor's rights against others." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (quoting H.R. Rep. No. 595 (1978)). "Whatever limitation[s] on the debtor's property [apply] outside of bankruptcy," i.e., under state contract or property law, "appl[y] inside of bankruptcy." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) (quotation marks omitted); *see id.* ("The estate cannot possess anything more than the debtor itself did outside bankruptcy."). The Bankruptcy Code provides the debtor "with the same rights and defenses" under a prepetition contract as those held by the debtor before the bankruptcy. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004).

28. Neither the Debtors nor this Court can rewrite the Insurance Programs but rather the Insurance Programs must be enforced as written. *See, e.g.*, *In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement"); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988

---

how the Debtors propose to treat the Chubb Companies' rights and claims under the Insurance Programs and, therefore, object to the Disclosure Statement and final approval thereof on this basis.

10

F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation") (quoting, in part, *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007)); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

29. However, the Plan contains multiple provisions that purport to alter or modify the Insurance Programs and the terms and conditions thereof.

### 1. Impermissible release of obligations under the Insurance Programs.

30. Through the Plan, it appears that the Debtors seek to continue to receive the benefits of the Insurance Programs. *See, e.g.*, Plan at Arts. V.D, VI.G.[7] However, the Plan does not adequately address the continuing obligations of the Debtors or their successors under each of the Insurance Programs.

31. To the contrary, the Plan contains provisions which provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan at Art. X; *see also*

---

[7] The Chubb Companies reserve the right to object to the treatment of the BB&B Policies and/or the Cost Plus Policies and any related insurance agreements as executory if the Debtors seek to reject any such contracts.

11

Plan at Art. VII.D ("[N]otwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.").

32.  However, it is well-established that debtors and their successors cannot seek to receive the benefits of a contract without being liable for the obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v.*

*Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re 47 Hops LLC*, 2020 WL 2485808, at *4 (Bankr. E.D. Wash. May 13, 2020) ("[T]he estate representative must address any given contract in its entirety and may not forage among favorable or unfavorable components."); *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

33. Therefore, to the extent that the Debtors or their successors seek to retain the benefits of any portion of the Insurance Programs, the rights and benefits under each of the Insurance Programs cannot be split from the respective obligations thereunder.[8] The Debtors or any of their successors must also remain liable in full for all of the Debtors' Obligations arising under the Insurance Programs, regardless of when they arise.[9]

---

[8] The Chubb Companies specifically reserve the right to assert that each of the Insurance Programs must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

[9] The Plan also contemplates the potential for an "Asset Sale Transaction" that could result in, among other things, an assignment or other transfer of the Insurance Programs. If the Debtors seek to assign or otherwise transfer the Insurance Programs or any portion thereof in connection with the Plan, such assignment or transfer cannot occur without the express written consent of the Chubb Companies. Pursuant to 11 U.S.C.

13

### 2. Expansion of coverage of the D&O Liability Insurance Policies.

34. The Plan also purports to improperly expand the scope of coverage of the D&O Liability Insurance Policies by providing that "all officers, directors, trustee, managers, and members of the Debtors who served in such capacity at any time before the Effective Date *shall be entitled to the full benefits of any such policy for the full term of such policy* regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date." *See* Plan at Art. V.D (emphasis added).

35. Any coverage provided to the Debtors' directors and officers under any D&O Liability Insurance Policy is, and must remain, subject to the terms and conditions of such

---

§ 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B). Applicable non-bankruptcy law does, in fact, prohibit the assignment or transfer of insurance policies without the insurer's consent. *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet.*); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898, at ¶ 22 (Ohio Ct. App. May 24, 2010); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963). While some courts have found that that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer, *see, e.g.*, *In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012), the present case does not involve an assignment to a trust created pursuant to § 524(g). Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899). Because the Chubb Companies have not consented to any assignment or other transfer of either of the Insurance Programs, the Chubb Companies therefore object to any and all such assignments or transfers at this time. Additionally, to the extent the Debtors seek to assign or transfer the Insurance Programs pursuant to any Asset Sale Transaction, any cure amount must be evaluated at the time of assumption. As more particularly described in the Insurance Programs, the Debtors are required to pay the Obligations, and therefore, amounts may become due and owing under the Chubb Insurance Programs either prior to or after the assumption thereof. The Chubb Companies have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations. Accordingly, any cure amount must be determined at the time of assumption, and, further, as a condition for the assignment of either of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under such Insurance Program, including, without limitation, paying the Obligations as they become due. The Chubb Companies accordingly reserve all rights with respect to the foregoing.

applicable D&O Liability Insurance Policy and all of the applicable insurer's rights thereunder, including any coverage rights or defenses.

36. Because the Plan provides that all of the Debtors' directors and officers *shall* be entitled to the *full* benefits of any D&O Liability Insurance Policy, the Plan could be read to eliminate insurers' rights and defenses under any applicable D&O Liability Insurance Policy, regardless of its terms. Thus, Article V.D of the Plan could purport to effect a modification of terms and conditions of the D&O Liability Insurance Policies and insurers' rights thereunder. This is impermissible, and the Chubb Companies therefore further object to the Plan on this basis.

### 3. Unclear and inconsistent restrictions on handling and administration of insured claims.

37. The Plan purports to direct that potentially covered claims recover from insurance before the claimant may be eligible to be paid from the estate. The Chubb Companies would have no objection to that provision standing alone, but the Plan also attempts to fundamentally alter how and where claims are resolved, in violation of the Chubb Companies' rights under the Insurance Programs. Moreover, the Plan appears to release the Debtors and their successors from their obligations under the Insurance Programs, such as the duty to cooperate in the defense of claims.

38. For example, the Plan provides that the "Plan Administrator or the Wind-Down Debtors" shall have the "sole authority" to object to or settle claims. Plan at Art. IX.B. Such a provision directly conflicts with the Debtors' obligations under the Insurance Programs which provide the Chubb Companies with the ability to control or associate in the defense and to consent to settlements of insured claims.

39. The Plan also provides that certain claims against certain third parties, which may include claims covered by insurance, can only go forward if, among other things, the claimant first

15

obtains from the Court an order allowing the claim to go forward, and the Court shall have "sole and exclusive jurisdiction" to determine whether any claim is "colorable." *See* Plan at Art. X.D.

40. It is well-established, however, that the Plan cannot confer the Court with jurisdiction over any dispute or proceeding. *See, e.g.*, *Combustion Eng'g*, 391 F.3d at 228 ("[J]urisdiction cannot be conferred … in a plan of reorganization"); *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan."). Thus, to the extent the Plan purports to confer on the Court any jurisdiction, including any exclusive jurisdiction, this is contrary to applicable law.[10]

41. Moreover, the provisions in the Plan that potentially purport to confer exclusive jurisdiction on the Court over insured claims and that require claimants to obtain certain determinations from the Court before pursuing their claims appear to be in conflict with the provisions of the Plan that contemplate claims being paid from the available proceeds of any applicable insurance policies. *See* Plan at Art. VI.G. Those provisions also conflict with the terms and conditions of the Insurance Programs that provide the Chubb Companies with control or association rights in the defense of potentially covered claims. The Plan cannot simultaneously channel certain claims to insurers and then attempt to strip the insurers of their rights to defend against or settle those same claims.

---

[10] The Chubb Companies specifically reserve the right to assert that the Plan purports to improperly confer core and/or exclusive jurisdiction on the Court over the liquidation or estimation of contingent or unliquidated personal injury tort claims in contravention of 28 U.S.C. § 157(b)(2)(B), as well as the right to assert that the such claims must be tried in district court as opposed to this Court. *See* 28 U.S.C. §157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.").

16

42. The Chubb Companies are unable to determine based on the Plan what, if anything, will be required before they can handle and administer claims potentially covered by the Insurance Programs or what impediments the Plan may seek to impose on the Chubb Companies' rights to handle and administer claims under the Insurance Programs. The Chubb Companies therefore further object to the Plan to the extent it purports to impede or impair their rights to handle and administer claims under the Insurance Programs.

### B. The Plan Must Provide That Workers' Compensation Claims And Direct Action Claims Must Continue In The Ordinary Course.

43. The Plan does not provide for the handling of workers' compensation claims or direct action claims against the Debtors' insurers.

44. Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

45. Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and, relatedly, that the Chubb Companies may continue to do so administer, handle,

17

defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Insurance Programs and applicable non-bankruptcy law.

### RESERVATION OF RIGHTS

46. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Plan.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: September 6, 2023

Respectfully submitted,

*/s/ Wendy M. Simkulak*
**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq.
Elisa M. Hyder, Esq. (admitted *pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com
Email: EHyder@duanemorris.com

*Counsel for the Chubb Companies*

*/s/ George R. Calhoun*
**IFRAH PLLC**
George R. Calhoun, V, Esq. (admission *pro hac vice* pending)
1717 Pennsylvania Ave., NW
Suite 650
Washington DC 20006
Telephone: (202) 524-4147
Email: george@ifrahlaw.com

*Counsel for Federal*