**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING OF PLAN SUPPLEMENT**

**PLEASE TAKE FURTHER NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") hereby file this plan supplement (the "<u>Plan Supplement</u>") in support of the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*, filed contemporaneously herewith (the "<u>Plan</u>").

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.   The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

**PLEASE TAKE FURTHER NOTICE** that this Plan Supplement includes the current drafts of the following documents as may be modified, amended, or supplemented from time to time in accordance with the Plan:

- **Exhibit A**:  List of Members of Oversight Committee and Plan Administrator

- **Exhibit B**: Plan Administrator Agreement; and

- **Exhibit C**: Schedule of Assumed Executory Contracts and Unexpired Leases.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.  If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in the Plan Supplement remain subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto. The Debtors reserve the right to alter, amend, modify, or supplement any document in this Plan Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect, the Debtors will file a redline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that Debtors will seek confirmation of the Plan at the Confirmation Hearing scheduled for **September 12, 2023, at 2:30 p.m.** prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan occurred on **September 1, 2023, at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"); *provided* that any objection to the Plan Supplement may be raised at the Confirmation Hearing.

| *Debtors* |
|:---:|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin; and David Kastin |

| *Counsel to the Debtors* | *Counsel to the Debtors* |
|---|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C.,<br>Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn: Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Esq., Warren A. Usatine,<br>Esq., and Felice R. Yudkin, Esq. |
| *Counsel to the Committee* | |
| **Pachulski Stang Ziehl & Jones LLP**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn: Robert J. Feinstein and Bradford J. Sandler | |
| *United States Trustee* | |
| **Office of The United States Trustee**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102,<br>Attn: Fran Steele, John Schanne, and Alexandria Nikolinos | |

     **PLEASE TAKE FURTHER NOTICE** that copies of the Plan and all other documents filed in these chapter 11 cases are available free of charge by: (a) visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/bbby and/or (b) by calling (833) 332-9937 (U.S. / Canada Toll-Free), or, for international callers, +1 (646) 440-4757 (International). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: September 7, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            emily.geier@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**Exhibit A**

**List of Members of Oversight Committee and Plan Administrator**

[*Forthcoming*]

## **Exhibit B**

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement ("Agreement") is made on this _____ day of September, 2023, by and between Bed Bath & Beyond, Inc. and its affiliated debtors (collectively, the "Debtors" or the "Wind-Down Debtors") and Michael I. Goldberg (the "Plan Administrator") (collectively "the Parties").[2]  This Agreement shall become effective on the Effective Date.

## RECITALS:

A.      On April 23, 2023 (the "Petition Date"), the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").[3]

B.      Since the Petition Date, the Debtors have continued to manage their affairs as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      On May 5, 2023, the Office of the United States Trustee appointed a statutory committee in the Bankruptcy Case (the "Committee").

D.      On August 1, 2023, the Debtors filed the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond, Inc. and its Debtor Affiliates* (the "Plan").  The Plan and supplements thereto appoint a Plan Administrator who, as of the Effective Date, has the powers and duties set forth in the Plan, this Agreement, and the order confirming the Plan (the "Confirmation Order").[4]

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the Parties hereto agree as follows:

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Debtors' Plan of Reorganization, as may be amended, supplemented, or modified from time to time.

[3] The Debtors' jointly administered cases are captioned *In re Bed Bath & Beyond, Inc., et al,* Case No. 23-13359-VFP.

[4] As set forth below, in the event of a conflict between the Plan and this Agreement, the terms of the Plan shall control, and in the event of a conflict between the Plan and/or this Agreement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control.

# ARTICLE I

## ACCEPTANCE OF POSITION

**1.1**    **Acceptance.**

By signing this Agreement, Michael I. Goldberg accepts his appointment as the Plan Administrator and agrees to observe and perform the duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, the Confirmation Order, and any other applicable orders of the Bankruptcy Court, and applicable law.

# ARTICLE II

## THE PLAN ADMINISTRATOR

**2.1**    **General Powers, Rights and Responsibilities.**

On the Effective Date, the Plan Administrator, subject only to the authority delegated to the Oversight Committee under the Plan,  shall retain and have all the rights, powers and duties of a trustee in bankruptcy and become the exclusive representative of the Wind-Down Debtors.  The powers and duties of the Plan Administrator shall include all rights, powers and duties to carry out the Plan as specially set forth in the Plan, including, without limitation or further order of the Bankruptcy Court, the following:

(a)    to invest Cash in accordance with Section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations owed by the Debtors or incurred by the Plan Administrator in connection with the wind-down of the Wind-Down Debtors in accordance with the Plan;

(b)    to receive, manage, invest, supervise, and protect the Wind-Down Debtors' assets, including paying taxes and/or other obligations incurred in connection with administering the Assets;

(c)      to engage attorneys, accountants, consultants, agents, employees and all professional or other persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(d)      to pay the reasonable fees and expenses for the attorneys, accountants, consultants, agents, employees and all professional or other persons engaged by the Plan Administrator and to pay all other fees and expenses in connection with administering the Plan and for winding down the affairs of the Debtors in accordance with the Plan;

(e)      to execute and deliver all documents, and take all actions, necessary to consummate the Plan and liquidate the Wind-Down Debtors' assets;

(f)      to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining assets;

(g)      to coordinate the storage and maintenance of the Wind-Down Debtors' books and records (the "Books and Records"), and to abandon and cause to be destroyed any such Books and Records that the Plan Administrator reasonably believes are no longer necessary to winding down the affairs of the Debtors;

(h)      to oversee compliance with the Wind-Down Debtors' accounting, finance and reporting obligations, which compliance may be based on the reliance of the Plan Administrator's accountants or other professionals;

(i)      to prepare any and all required reports and financial statements, including required U.S. Trustee reports, until such time as a final decree has been entered or otherwise not required under applicable law or by Court Order;

(j)      to oversee the filing of final tax returns, audits, and other dissolution documents, if required, and pay all taxes of the Wind-Down Debtors;

(k)      to perform any additional actions and pay any additional fees, costs and expenses as necessary to carry out the wind-down and administration of the Wind-Down Debtors;

(l)      to make distributions as contemplated under the Plan;

(m)      to pay all reasonable fees, expenses, debts, costs, charges and liabilities of the Wind-Down Debtors;

(n)      to object to Claims against the Debtors or Wind-Down Debtors;

(o)      to compromise and settle Claims against the Wind-Down Debtors in accordance with the Plan;

(p)      to act on behalf of the Wind-Down Debtors in all legal and administrative proceedings and contested matters (including, without limitation, any Causes of Action), pending as of the Effective Date or that may be commenced in the Bankruptcy Court or in any other court or tribunal, regardless of wheresoever located, and all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any legal or administrative proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving assets of the Wind-Down Debtors that could arise or be asserted at any time whether under any law, including, without limitation, under the Bankruptcy Code, or in equity, unless otherwise specifically waived or relinquished in the Plan;

(q)      to investigate, commence, prosecute and settle all Causes of Action belonging to the Wind-Down Debtors in any court or tribunal with subject matter jurisdiction over such action(s);

(r)      to implement and/or enforce all provisions of the Plan; and

(s)      to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan.

**2.2** **Authority to Object to Claims and Equity Interests and to Settle Disputed Claims.**

From and after the Effective Date, the Plan Administrator, on behalf of the Wind-Down Debtors, shall be solely authorized, with respect to those Claims or Interests which are not Allowed hereunder or by Court order, to object to any Claims or Equity Interests filed against any of the Wind-Down Debtors and to compromise and settle Disputed Claims against the Wind-Down Debtors.

**2.3** **Distributions.**

Following the Effective Date, distributions shall be made by the Plan Administrator in accordance with the Plan.

**2.4** **Transactions with Related Persons.**

Notwithstanding any other provisions of this Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the Wind-Down Debtors' assets to (a) any relative, employer, or agent (acting in their individual capacities) of the Plan Administrator or (b) any person of which any employer or agent of the Plan Administrator is an affiliate by reason of being a trustee, managing director, officer, partner, principal, or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares, or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Bankruptcy Court and determined that such transaction is fair and reasonable and no less favorable than terms available for a comparable transaction with unrelated persons; provided, however, that the Plan Administrator is not prohibited from retaining his employer as a professional in connection with the Plan Administrator's fulfillment of his duties hereunder and under the Plan.

**2.5**    <u>**Investment of Cash**</u>.

Within five (5) Business Days after the Effective Date of the Plan, the Plan Administrator will propose a cash budget (the "<u>Budget</u>") covering the first [two/four] week period.  Upon approval of such initial Budget by the FILO Agent and Oversight Committee, the Plan Administrator will be authorized to use available cash for the purposes and in the amounts set forth therein.  Before the expiration of the initial Budget, the Plan Administrator will propose a 13-week Budget.  Upon approval of such Budget (and any subsequent Budget) by the FILO Agent and Oversight Committee, the Plan Administrator the Plan Administrator will be authorized to use available cash for the purposes and in the amounts set forth therein.  Unless and until such time as the FILO Agent agrees otherwise, the Plan Administrator will provide periodic Budget and other reporting in accordance with Paragraphs 17 and 18 of the Final DIP Order.

The Plan Administrator shall invest any Cash in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (C) any other investments that may be permissible under (i) Section 345 of the Bankruptcy Code or (ii) any order of the Bankruptcy Court.  Such investments shall mature in such amounts and at such times as the Plan Administrator, in the Plan Administrator's discretion, shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Plan and this Agreement.

**2.6** **Control and Maintenance of Assets and Cash**.

Notwithstanding anything in this Agreement to the contrary, the Plan Administrator is authorized in his sole discretion to (i) move or transfer any asset or Cash among various permitted investments at any time in order to comply with the rules of independence applicable to the accounting profession and (ii) refrain from making any investment or engaging in any other activity which may be in violation of such rules. The Plan Administrator shall not be liable for any action or omission which the Plan Administrator reasonably believes to be required for compliance with the preceding sentence.

**2.7** **Compliance with Tax Withholding and Reporting Requirements**.

With respect to all payments and distributions made under the Plan, the Plan Administrator shall cause the Wind-Down Debtors to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax and reporting matters.

**2.8** **Tax Requirements for Income Generated by Disputed Claims Reserves**.

The Plan Administrator shall cause to be paid, out of the funds held in any Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Reserve. The Plan Administrator shall cause to be filed, any tax or information return related to the Reserve that is required by any federal, state, or local taxing authority.

**2.9** **Books, Records, and Tax Returns**.

The Wind-Down Debtors shall preserve for the benefit of the Wind-Down Debtors all documents and files of the Wind-Down Debtors, including electronic data hosted on remote servers, that are necessary for the prosecution of the Causes of Action and Claims resolution process. After the

Effective Date, the Plan Administrator shall be permitted, in his sole discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, provided, however, that, in the Plan Administrator's discretion, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date, notwithstanding any applicable laws, rules, or regulations that would have required the Debtor to retain such books and records.  Further, the Plan Administrator shall preserve and maintain all documents, data and information responsive to any subpoena, litigation hold, or discovery request to which the Debtor is subject on or after the Effective Date, provided that the Plan Administrator was served with a subpoena or discovery request before the time period to destroy records.

### 2.10     **Post-Confirmation Reports and Fees.**

Following the Effective Date and until the Bankruptcy Case is closed, converted or dismissed, the Plan Administrator shall comply with the reporting requirements set forth in the Plan.

### 2.11     **Reliance by Plan Administrator.**

The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that he reasonably believes to be genuine and to have been signed or presented by the proper party or parties or to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein and shall be fully protected personally in acting thereon.  The Plan Administrator may consult with and retain counsel and other professionals with respect to matters in their area of knowledge and/or experience.  Any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator.  Further, the Plan Administrator shall be entitled to rely upon the advice of

professionals in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon; provided, however, that this limitation of liability shall not release or absolve any professional for willful misconduct, fraud or gross negligence that may give rise to a claim against the Plan Administrator.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

**2.12**    **Reliance by Persons Dealing with the Plan Administrator.**

In the absence of actual knowledge to the contrary, any person dealing with the Wind-Down Debtors shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Wind-Down Debtors and the Debtor and shall have no obligation to inquire into the existence of such authority.

**2.13**    **Compensation.**

The Plan Administrator shall be compensated from the Wind-Down Debtors' assets as follows:

(a)    $750 per hour for first 90 days capped at $250,000 for such 90 day period;

(b)    $35,000 per month thereafter payable on the first day of each month; and

(c)    A success fee equal to:

(i)    0.5% on the first $150 million of payments to the DIP/FILO Lenders; plus

(ii)    1.0% of the next $175 million of payments to the DIP/FILO Lenders; plus

(iii)    3.0% on all distributions greater than $325 million.

(d)     The Plan Administrator shall also be entitled to reimbursement of all reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this Agreement, including, but not limited to, telephone, travel, facsimile, courier, postage, and other similar out-of-pocket expenses.

(e)     Subject to the Budget, the fees and expenses of professionals retained by the Plan Administrator on and after the Effective Date, may be paid by the Plan Administrator within thirty (30) days of receipt or presentment of monthly, detailed invoices in respect of their services and expenses, or on such other terms as the Plan Administrator and the applicable professional may agree to, without the need for further Bankruptcy Court approval.  Such post-Effective Date professionals shall provide the Plan Administrator with monthly, detailed invoices in respect of their services and expenses, or as otherwise set forth in any engagement or employment agreement.  Notwithstanding the foregoing, if the Plan Administrator objects in writing to the payment of any compensation, such disputed amount shall not be paid prior to the earlier of the resolution of such dispute by agreement or by the Bankruptcy Court.  The Plan Administer shall file notices with the Bankruptcy Court every three (3) months reflecting payments to professionals.

**2.14     Conflicts.**

Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of his duties under the Plan Administrator Agreement, the issue shall first be brought to the attention of the Oversight Committee, and then to the Bankruptcy Court for consideration, if bringing to the Bankruptcy Court's attention is deemed appropriate by either the Plan Administrator or the Oversight Committee.

**2.15**    **Windup and Closing Case.**

Once (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, (c) all Causes of Action have been resolved, and (d) all assets have been reduced to Cash or abandoned, the Plan Administrator shall effect a final distribution of all the Wind-Down Debtors' assets (after reserving sufficient Cash to pay all unpaid fees and expenses of administration of the Plan and all fees and expenses reasonably expected to be incurred in connection with the final distribution) to holders of allowed Claims in accordance with the Plan.

After the Wind-Down Debtors' assets and affairs have been fully administered, the Plan Administrator shall file the final account and report with the Bankruptcy Court.  At such time, the Plan Administrator shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

**2.16**    **No Agency Relationship.**

The Plan Administrator shall not be deemed to be the agent for any creditors in connection with the funds held or distributed pursuant to the Plan.  The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence, willful misconduct or intentional fraud.  The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Wind-Down Debtors against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions are deemed to constitute gross negligence, willful misconduct or intentional fraud based on an unappealable Final Order of the Bankruptcy Court.  The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been

signed or presented by the proper party or parties, and by accepting this appointment and in consideration for same, shall have no personal liability to any person or entity, except to the extent his or her actions are deemed to constitute gross negligence, willful misconduct or intentional fraud based on an unappealable Final Order of the Bankruptcy Court.  The Plan Administrator may rely upon information previously generated by the Debtors and such additional information provided to him or her by former employees or professionals of the Debtors.

### 2.17    Liquidating Trust.

As more set forth in the Plan, the Plan Administrator may, with the consent of the DIP Agent, the FILO Agent, and the Oversight Committee, create a liquidating trust ("Liquidating Trust") and transfer all or any portion of the assets of the Wind-Down Debtors to the Liquidating Trust.

## ARTICLE III

## RELEASES AND INDEMNIFICATION; INSURANCE

### 3.1    Releases; Indemnification.

The Plan Administrator, each of his respective designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective functions as outlined in the Plan, this Agreement and the order confirming the Plan other than for acts or omissions resulting from willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court.  The Plan Administrator may, in connection with the performance of his respective functions, and in his sole and absolute discretion, consult with attorneys, accountants, financial advisors and other professionals and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys or other professionals. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult

with attorneys, accountants, financial advisors or other professionals or agents, and his determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court.    The Wind-Down Debtors shall indemnify, defend and hold harmless the Plan Administrator from and against all liabilities, losses, damages, obligations, claims, fees, charges, fines, costs and expenses, including, but not limited to attorneys' fees and expenses arising out of or due to such actions or omissions, or consequences of such actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan, the Confirmation Order, and/or this Agreement (collectively, the "Performance Obligations"); provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court.

**3.2**    **Insurance.**

Subject to the Budget, the Plan Administrator shall be authorized to obtain and pay for out of the Wind-Down Debtors' assets all insurance coverage he believes is reasonably necessary for himself, his agents, representatives, professionals, or other independent contractors, the Debtor, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Wind-Down Debtors and (ii) the liabilities, duties, and obligations of the Wind-Down Debtors or the Plan Administrator, and his agents, representatives, professionals, or other independent contractors under this Agreement, and any other indemnified parties, in the form of an errors and omissions policy or otherwise, the latter of which insurance coverage may, at the sole option of the Plan Administrator, remain in effect for a reasonable period (not to exceed six (6) years) after the termination of this Agreement.

# ARTICLE IV

## TERMINATION AND RESIGNATION

### 4.1    Term of Service.

The Plan Administrator shall serve until the earliest of (a) the completion of all the Plan Administrator's duties, responsibilities and obligations under the Plan and this Agreement, (b) dissolution of the Wind-Down Debtors in accordance with the Plan, and (c) the Plan Administrator's death, incapacitation, resignation, or removal for cause.

### 4.2    Resignation.

The Plan Administrator may resign at any time upon 30 days written notice delivered to the Oversight Committee.  The Oversight Committee shall select a successor Plan Administrator and file a Notice of Appointment of Successor Plan Administrator on the Bankruptcy Court's docket for the Wind-Down Debtors.

### 4.3    Removal of the Plan Administrator for Good Cause.

The Oversight Committee may remove the Plan Administrator only for good cause by filing an appropriate motion with the Bankruptcy Court upon at least thirty (30) days' prior notice.  For purposes of both this provision, good cause means:

(a)    theft, dishonesty, intentional fraud or willful misconduct, including intentional falsification of any employment or other records;

(b)    gross negligence in the performance of any material duties under the Plan, which is (i) repeated or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure, and (ii) injurious to the Wind-Down Debtors; or

(c)    the arrest, indictment or conviction (including any plea of guilty or no contest) for any felony or other crime involving dishonesty or moral turpitude.

If there is a dispute between the Plan Administrator and the Oversight Committee whether good cause exists for removal, and such dispute is not consensually resolved within thirty (30) days thereafter (or such other time period as may be agreed by both the Plan Administrator and the Oversight Committee), such dispute will be resolved by the Bankruptcy Court.  For the avoidance of doubt, during the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall continue to discharge the rights, obligations, and duties of the Plan Administrator set forth in the Plan and this Agreement.

**4.4** **Continuity; Appointment of Successor Plan Administrator.**

(a)      The death, incapacity, resignation, or removal of the Plan Administrator for good cause shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Plan Administrator.  In the event of a vacancy by reason of death, incapacity or removal of the Plan Administrator for good cause or prospective vacancy by reason of resignation or removal for good cause, the successor Plan Administrator shall be appointed pursuant to the terms set forth in the Plan.

(b)      The successor Plan Administrator, without any further act, shall become vested with all the rights, powers, and duties of the Plan Administrator; provided, however, that no Plan Administrator shall be liable for the acts or omissions of any prior or later Plan Administrator.  Every successor Plan Administrator appointed hereunder shall execute, acknowledge, and deliver to the Bankruptcy Court, the Wind-Down Debtors, and the Oversight Committee an instrument accepting such appointment subject to the terms and provisions hereof.

**ARTICLE V**

**MISCELLANEOUS PROVISIONS**

### 5.1    Descriptive Headings and Pronouns.

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  The use of his, her, its, and other pronouns, whether in the singular or plural form, are used interchangeably and intended for ease of reference.

### 5.2    Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to the rules of conflict of laws of the State of New Jersey or any other jurisdiction.

### 5.3    Counterparts; Effectiveness.

This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

### 5.4    Severability; Validity.

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

### 5.5    Notices.

Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmed delivery by a standard overnight carrier or when delivered by hand.

**5.6**    **Relationship to Plan**.

The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan and/or the Confirmation Order, the provisions of the Plan and Confirmation Order shall control.

**5.7**    **Amendments**.

This Agreement may be amended or modified by the Plan Administrator and the Oversight Committee as necessary to implement the provisions of the Plan and Confirmation Order and to facilitate the administration of the Wind-Down Debtors consistent with the Plan and Confirmation Order, and to maximize the recovery of the Holders of Allowed Claims; provided that any material amendments shall be subject to the approval of the Bankruptcy Court.

**5.8**    **No Agency**.

Nothing in this Agreement shall constitute or be deemed to constitute an agency, partnership, or joint venture between the Parties hereto or constitute or be deemed to constitute any Party the agent or employee of the other Party for any purpose whatsoever, and neither Party shall have authority or power to bind the other Party or to contract in the name of, or create a liability against, the other Party in any way or for any purpose.

**5.9**    **Retention of Jurisdiction.**

As provided in the Plan, the Bankruptcy Court shall retain jurisdiction over the Wind-Down Debtors to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

**5.10**    **No Assignment.**

Neither Party hereto may assign any of its rights or obligations hereunder to any other person, without the prior written consent of both Parties, and approval by the Bankruptcy Court.

**5.11**    **Commencement Date.**

This Agreement shall become effective on the Effective Date of the Plan.

**IN WITNESS WHEREOF**, the Parties have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers at of the date first above written.

By:                                              By:

_____       _____

Michael I. Goldberg, in his capacity as the
*Plan Administrator of the Wind-Down Debtors*
*of Bed Bath & Beyond, Inc. and its affiliated*
*debtors, and not in any individual capacity*

**<u>Exhibit C</u>**

**Schedule of Assumed Executory Contracts and Unexpired Leases**

**Schedule of Assumed Executory Contracts**

| Debtor Entity | Counterparty | Description of Contract | Cure Cost |
|---|---|---|---|
| Bed Bath & Beyond Inc. | ADP, Inc. | National Account Services – Master Services Agreement dated January 1, 2002 | $0.00 |
| Bed Bath & Beyond Inc. | Huth Reynolds LLP | Engagement Letter dated March 23, 2023 | $0.00 |
| Bed Bath & Beyond Inc. | Deloitte Tax LLP | Tax Engagement Letter dated May 23, 2023 | $0.00 |
| Bed Bath & Beyond Inc. | Ryan, LLC | Master Services Agreement (including accompanying Statements of Work) dated December 2, 2022 | $0.00 |
| Bed Bath & Beyond Inc. | Grant McCarthy Group, LLC | Engagement Letter dated March 1, 2011 | $0.00 |
| Bed Bath & Beyond Inc. | Grant McCarthy Group, LLC | Engagement Letter dated September 14, 2022 | $0.00 |
| Bed Bath & Beyond Inc. | Grant McCarthy Group, LLC | Engagement Letter dated September 14, 2022 | $0.00 |
| Bed Bath & Beyond Inc. | Grant McCarthy Group, LLC | Engagement Letter dated January 24, 2023 | $0.00 |
| Bed Bath & Beyond Inc. | AT Tax Advisory | Property Tax Consulting Service Agreement dated May 10, 2023 | $0.00 |
| Bed Bath & Beyond Inc. | Sandler Travis & Rosenberg, P.A. | Engagement Letter dated July 19, 2019 | $0.00 |