**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF HOLLY ETLIN IN SUPPORT**
**OF (I) FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND (II)**
**CONFIRMATION OF THE AMENDED JOINT CHAPTER 11 PLAN**
**OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES**

Pursuant to 28 U.S.C. § 1746, I, Holly Etlin, hereby declare as follows under penalty of perjury:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

KE 99371705

**Background and Qualifications**

1. I am the Chief Financial Officer and Chief Restructuring Officer of Bed Bath & Beyond, Inc., a corporation organized under the laws of New York and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). I have served as a financial advisor to the Debtors since late December 2022, and in February 2023, I was appointed as Interim Chief Financial Officer of the Debtors. On April 22, 2023, I was also appointed as Chief Restructuring Officer and Chief Financial Officer of the Debtors.

2. I am a Partner & Managing Director of the financial advisor to the Debtors, AlixPartners, LLP ("AlixPartners"), where I have worked since 2007. I have more than 30 years of experience in providing turnaround services for companies in the retail industry and have frequently been appointed as Interim CEO, Interim CFO and Chief Restructuring Officer of these businesses. I am admitted to the American College of Bankruptcy and the International Insolvency Institute and am a Certified Turnaround Professional (CTP) and Certified Insolvency Reorganization Advisor (CIRA).

3. I am generally familiar with the Debtors' operations, business and financial affairs, and books and records. Except where specifically noted, the statements in this Declaration are based on: (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant documents provided to me by other members of the Debtors' management and the Debtors' professional advisors, (c) information provided to me by, or discussions with, other members of the Debtors' management team or its professional advisors, and/or (d) my opinion based upon my experience. If called as a witness, I would testify competently to the facts set forth in this Declaration.

4. I am over the age of 18 and authorized to submit this declaration (this "Declaration") in support of (i) approval of the Disclosure Statement on a final basis and

(ii) confirmation of the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1712] (as may be amended, supplemented, or modified from time to time, the "Plan").[2] If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## The Disclosure Statement

5. I believe the Disclosure Statement contains "adequate information" for creditors to evaluate the Plan.

6. The Disclosure Statement includes a description of:

- the Debtors' DIP Facility and Plan;

- the solicitation and voting procedures;

- the Debtors' corporate history, structure, and business overview, including the Debtors' prepetition capital structure;

- events leading to the chapter 11 filings;

- a summary of material developments and events in the chapter 11 cases;

- certain risk factors that may be considered in connection with the Plan and Disclosure Statement;

- an overview of the requirements for confirmation of the Plan; and

- certain federal tax consequences of the Plan.

---

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the *Order (I) (A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in Connection Therewith, (D) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Certain Dates and Deadlines with Respect Thereto, and (E) Granting Related Relief, and (II) (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief* [Docket No. 1716] (the "Conditional Disclosure Statement Order"), as applicable.

### **The Plan**

**I.     Background.**

7. I believe the Plan is the product of good-faith, arm's-length negotiations between the Debtors, the FILO Lenders and DIP Lenders, the Creditors' Committee, and other key stakeholder constituencies.

8. I believe, based on my experience and consultation from legal counsel, that the Plan satisfies the requirements of Confirmation. Notably, I have been advised that the Plan is proposed in good faith, is feasible, and is in the best interests of the Debtors' creditors.

9. The Plan is the result of considerable collaboration among the Debtors, their advisors and legal counsel, and their stakeholders, in an effort to maximize the economic return to creditors under the facts and circumstances underlying the case. Additionally, the Plan provides for an orderly liquidation of the Debtors' estates and wind down of their operations, assuring that the Debtors' assets are distributed timely and efficiently. Further, in connection with their advisors, the Debtors have determined that all Holders of Claims and Interests in all Impaired classes will likely recover at least as much under the Plan as they would in a hypothetical chapter 7 liquidation.

10. Thus, the Plan embodies a value-maximizing settlement and provides a meaningful recovery to as many of the Debtors stakeholders as is possible in these circumstances.

**II.    The Plan Satisfies the Requirements of Confirmation.**

11. I have been advised of the applicable standards under which a chapter 11 plan may be confirmed. For the reasons detailed below, and with the consultation and guidance of the Debtors' advisors and legal counsel, I believe, to the best of my knowledge, that the Plan satisfies the applicable Bankruptcy Code requirements for confirmation of a plan. I have set forth the

reasons for such belief below, except where such compliance is apparent on the face of the Plan and related documents.

    **A.    The Plan Satisfies the Applicable Provisions of the Bankruptcy Code — Section 1129(a)(1).**

12.    I understand that section 1129(a)(1) of the Bankruptcy Code requires a chapter 11 plan to comply with all applicable provisions of the Bankruptcy Code. As set forth below, I believe the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

    **1.    Proper Classification of Claims and Interests — Section 1122.**

13.    It is my understanding that section 1122 of the Bankruptcy Code requires that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

14.    I believe that each of the Claims and Interests in each particular class under the Plan is substantially similar to the other Claims and Interests in that class. In general, the Plan's classification scheme follows the Debtors' capital structure, thereby taking into account the relative priority among Claims and Interests, including the relative priority between secured and unsecured claims, and with debt and equity classified separately. Other aspects of the classification scheme reflect the different legal or factual circumstances of each class.

15.    I believe that the Claims or Interests assigned to each particular class described above are substantially similar to the other Claims or Interests in each such class and the distinctions among classes are based on valid business, factual, and legal distinctions.

16. Under Article III of the Plan, Claims and Interests are classified as follows:

| | |
|---|---|
| Class 1 | Other Priority Claims |
| Class 2 | Other Secured Claims |
| Class 3 | DIP Claims |
| Class 4 | FILO Claims |
| Class 5 | Junior Secured Claims |
| Class 6 | General Unsecured Claims |
| Class 7 | Intercompany Claims |
| Class 8 | Intercompany Interests |
| Class 9 | Interests in BBB |
| Class 10 | Section 510(b) Claims |

17. The Claims and Interests assigned to each Class listed above are substantially similar to the other Claims and Interests in that Class. There is also a reasonable basis for each instance of separate classification of Claims and Interests under the Plan, and there is no unfair discrimination between or among Classes of Claims or Interests. Namely, the Plan separately classifies Claims and Interests because each Holder of such Claims or Interests may hold (or may have held) rights in the Debtors' estates legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience results from such separate classification.

18. For the foregoing reasons, I believe that the Plan satisfies section 1122 of the Bankruptcy Code.

### 2. Specification of Classes, Impairment, and Treatment — Section 1123(a)(1)–(3).

19. I understand that sections 1123(a)(1), (2), and (3) of the Bankruptcy Code require that a chapter 11 plan specify in detail the classification of claims or interests, whether such claims or interests are unimpaired by the plan, and the treatment of each class of claims or interests that is impaired. Article III of the Plan specifies in detail the classification of Claims and Interests, whether such Claims and Interests are Impaired, and the treatment that each Class of Claims and

Interests will receive under the Plan. Accordingly, I believe the Plan fully complies with and satisfies sections 1129(a)(1)–(3) of the Bankruptcy Code.

### 3. Equal Treatment of Similarly Situated Claims and Interests — Section 1123(a)(4).

20. I understand that section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same rights and treatment to each holder of claims or interest as other holders of allowed claims or interests within such holders' respective class. It is my understanding that the Plan provides the same treatment for each Claim or Interest of a particular class, except where the Holder of such Claim or Interest has agreed to a less favorable treatment. I believe that the Plan satisfies this requirement because each Holder of Allowed Claims or Interests will receive the same rights and treatment as all other Holders of Allowed Claims or Interests within the same class.

### 4. Means for Implementation — Section 1123(a)(5).

21. I believe that the Plan provides adequate means for implementation as required under section 1123(a)(5) of the Bankruptcy Code, including, among other things, (a) the sources of consideration for Plan Distributions; (b) the cancellation of notes, instruments, certificates, and other existing securities; (c) the vesting of assets in the Wind-Down Debtors; (d) the authorization for the Debtors or the Wind-Down Debtors, as applicable, to take corporate actions necessary to effectuate the Plan; and (e) the preservation of certain Causes of Action.

### 5. Prohibition of Issuance of Non-Voting Stock — Section 1123(a)(6).

22. I am advised that section 1123(a)(6) of the Bankruptcy Code requires that a corporate debtor's chapter 11 plan provide for the inclusion in the reorganized debtor's charter (if any) of a prohibition against the issuance of non-voting equity securities and related protections for Holders of preferred shares. As the Debtors are winding down, the Plan does not provide for

7

the issuance of non-voting equity securities or preferred interests. Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

### 6. Selection of Officers and Directors — Section 1123(a)(7).

23. Article IV.F of the Plan discharges all of the Debtors' officers and managers from their duties effective as of the Effective Date without any further action. In addition, Article IV.F of the Plan provides that the Plan Administrator, subject to the authority of the Oversight Committee, shall be appointed as the sole officer of the Wind-Down Debtors and shall succeed to the powers, duties, and privileges of the Wind-Down Debtors' officers. The manner for selection of the Plan Administrator is set forth in the Plan and Plan Supplement. The selection of Michael I. Goldberg as the Plan Administrator is consistent with the interests of Holders of Claims and Interests and public policy. A description of the Plan Administrator's role and compensation was included in the Plan Supplement.

### B. The Debtors Have Satisfied the Applicable Provisions of the Bankruptcy Code — Section 1129(a)(2).

24. Based on consultation and guidance from legal counsel, I believe that the Plan satisfies section 1129(a)(2) of the Bankruptcy Code, which I understand requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code. I have been advised that section 1129(a)(2) encompasses both the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code, as well as the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.

25. Here, I understand that the Court conditionally approved the Disclosure Statement as containing adequate information, and the Debtors solicited and tabulated votes on the Plan in accordance with the solicitation procedures approved by the Court. I also understand that the Debtors, through their claims and noticing agent, complied with the content and delivery

requirements of the Conditional Disclosure Statement Order.  Finally, I have been advised that the Debtors transmitted the same disclosure statement to each Holder of a Claim or Interest in a particular class.

26.     I further understand the Debtors solicited votes from the Holders of Claims and Interests in Impaired classes entitled to vote under the Plan.  Holders of Claims and Interests in the classes listed in the table below are either Unimpaired under the Plan and therefore were deemed to accept the Plan or will not receive any distribution under the Plan and are therefore deemed to reject the Plan.  While the Debtors did not solicit votes from the Holders of Claims and Interests in such classes, the Debtors mailed the Combined Hearing Notice and a Notice of Non-Voting Status (including a release opt-out form) to such Holders in accordance with the Conditional Disclosure Statement Order.

| Class | Claim or Interest | Status |
|---|---|---|
| 1 | Other Priority Claims | Unimpaired |
| 2 | Other Secured Claims | Unimpaired |
| 7 | Intercompany Claims | Impaired |
| 8 | Intercompany Interests | Impaired |
| 9 | Interests in BBB | Impaired |
| 10 | Section 510(b) Claims | Impaired |

**C.     The Debtors Proposed the Plan in Good Faith — Section 1129(a)(3).**

27.     I believe that the Plan was proposed in good faith, with the legitimate and honest purpose of maximizing value for the Debtors and their estates.

28.     It is my testimony that the Plan is the result of collaborative efforts between the Debtors, their advisors and legal counsel, and their stakeholders.  I believe the Plan maximizes the economic return to the creditors in light of the totality of the facts and circumstances of the case.

**D.     Payment of Professional Fees and Expenses Is Subject to Court Approval — Section 1129(a)(4).**

29.     It is my understanding that section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, a debtor, or a person receiving distributions of property under the plan, be approved by the Court or remain subject to approval by the Court as reasonable.  The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 and 330 of the Bankruptcy Code.  Moreover, Article II.B.1 of the Plan provides that all final requests for payment of Professional Fee Claims must be filed no later than forty-five days after the Effective Date.  Accordingly, I believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**E.     The Plan Satisfies the Bankruptcy Code's Governance Disclosure Requirements (Section 1129(a)(5)).**

30.     It is my understanding that section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan; appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and to disclose the identity of insiders to be retained by the reorganized debtor and the nature of any compensation for such insider.  The Plan Supplement discloses the identities and affiliations of the Plan Administrator and members of the Oversight Committee, including their responsibilities and compensation.  Accordingly, I believe that the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.    The Plan Does Not Require Government Regulatory Approval of Rate Changes (Section 1129(a)(6)).**

31.    It is my understanding that Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and, accordingly, will not require governmental regulatory approval. As such, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**G.    The Plan Is in the Best Interests of Holders of Claims and Interests — Section 1129(a)(7).**

32.    It is my testimony that the Debtors and their advisers have considered the probable result of a hypothetical chapter 7 liquidation of the Debtors' assets in light of the fact that the Debtors are effectively liquidating their assets in chapter 11. I believe that, based on the incremental additional costs of chapter 7, and the recommendations and guidance from the Debtors' advisors, all Holders of Claims and Interests in all Impaired classes will likely recover at least as much under the Plan as they would in a hypothetical chapter 7 liquidation. The Debtors are winding down operations and liquidating all of their remaining assets and distributing such assets to their creditors, subject to the Plan. Although a chapter 7 liquidation would achieve substantially the same goal, recoveries in a chapter 7 case liquidation would be lower in light of the additional expenses that would be incurred in a chapter 7 proceeding, and other additional costs associated with a chapter 7 liquidation, including the obligation to continue to pay all unpaid expenses included in the Wind-Down Budget that the Debtors incurred prior to conversion, such as compensation for Professionals.

33.    Moreover, as described in the Disclosure Statement, the Plan provides that certain estate Causes of Action will be preserved by the Wind-Down Debtors. Pursuant to the terms of the Waterfall Recovery and Sharing Mechanism, the proceeds of any such Causes of Action may be distributed to the applicable Successor Entity for the benefit of Holders of General Unsecured

Claims. I understand that, in the event of a liquidation under chapter 7, Holders of General Unsecured Claims would not have received any recovery. Notably, no party (even those that are impaired) sought to convert these cases to cases under chapter 7, indicating that they agree with the Debtors' assessment.

      **H.**     **Voting Requirements — Section 1129(a)(8).**

34. I understand that the Bankruptcy Code generally requires that each class of claims or interests must either accept the plan or be unimpaired under the plan. I understand that, because the Plan has not been accepted by Class 6 and the Deemed Rejecting Classes,[3] the Debtors seek Confirmation under section 1129(b), solely with respect to Class 6 and the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code. I believe that although section 1129(a)(8) has not been satisfied with respect to Class 6 and the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to Class 6 and the Deemed Rejecting Classes and, thus, satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

      **I.**     **Priority Cash Payments — Section 1129(a)(9).**

35. I understand that Section 1129(a)(9) of the Bankruptcy Code requires that, "except to the extent that the holder of a particular claim has agreed to a different treatment," a plan must provide for all holders of allowed administrative expense claims to be paid in full in cash on the effective date and for all holders of allowed priority claims to be paid in full in cash (depending on the specific type of claim, either on the effective date of a plan or over time with interest). I have been advised that Article II of the Plan provides that all Allowed Administrative Claims will be paid in full from (i) first, the Combined Reserve, (ii) second, the Shared Proceeds Pool, and (iii)

---

[3] As used herein, the term "Deemed Rejecting Classes" shall mean Class 8, Class 9, and Class 10.

12

any remaining Distributable Proceeds after payment in full of all Allowed DIP Claims and Allowed FILO Claims. In addition, the Plan provides that Allowed Priority Tax Claims will be treated in accordance with section 1129(a)(9)(c) of the Bankruptcy Code.

### J. At Least One Impaired Class of Claims Accepted the Plan — Section 1129(a)(10).

36. I understand that the Bankruptcy Code requires that if any class of claims is impaired under the plan, then at least one class of impaired claims must accept the plan, without including any acceptance of the plan by any insider. I have been advised that Holders of Claims in Class 3 and Class 4, which are Impaired under the Plan, voted to accept the Plan. I have been further advised that the Debtors did not identify any Holders of Claims in Class 5, and accordingly, Class 5 shall be deemed eliminated from the Plan for voting purposes.

### K. The Plan Is Feasible — Section 1129(a)(11).

37. I believe that the Plan is feasible. Through the Plan, there will be an orderly liquidation and wind down of the Debtors' operations and timely distributions to Holders of Allowed Claims in accordance with the Plan, the Bankruptcy Code, and applicable law. Rather than unnecessarily elongate these cases through a conversion to chapter 7, the Plan provides closure and assurance that the assets of the Debtors' Estates are being distributed in an efficient and value maximizing manner subject to the Debtors' obligations under the Plan and without the need for any additional liquidity. Based on my review of the Debtors' financial information and the Plan, I believe that the Combined Reserve contains sufficient funding to fully satisfy all Allowed Administrative Claims and Priority Tax Claims on the Effective Date. Thus, it is my testimony that the Debtors will be able to meet their obligations under the Plan.

L.  **The Plan Provides for Payment of All Fees — Section 1129(a)(12).**

38. It is my testimony that Article II.C of the Plan includes an express provision requiring payment of all fees under 28 U.S.C. § 1930 in compliance with the Bankruptcy Code.

M.  **The Plan Satisfies the Requirements for Confirmation of Plan Over Nonacceptance of Impaired Classes — Section 1129(b).**

39. To the best my knowledge, the Plan distributes value to Holders of Claims and Interest in the priorities set forth in the Bankruptcy Code, and no Holder of a junior Claim or Interest will receive a recovery on account of such junior Claim or Interest until all senior Claims are paid in full. It is my understanding that (a) Class 3 and Class 4 voted to accept the Plan and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Interests in the Deemed Rejecting Classes and Class 6. As such, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

III. **The Principal Purpose of the Plan is Not the Avoidance of Taxes or Securities Law as Required Under Section 1129(d) of the Bankruptcy Code.**

40. The Plan has not been filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended. Moreover, no party that is a governmental unit, or any other entity, has requested that the Bankruptcy Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

IV. **The Releases, Exculpation, and Injunctions in the Plan are Appropriate.**

A.  **The Debtor Release is Appropriate and in the Best Interests of the Debtors' Estates**

41. I understand that Article X.C. of the Plan sets forth the Debtors' releases (the "<u>Debtor Release</u>"). I believe that the Debtor Release is appropriate, justified, and integral component of the Plan. ***First***, each Released Party has made a substantial contribution to the

Debtors' Estates. The Released Parties played an integral role in the formulation of the Plan and contributed to the Plan not only by expending significant time and resources analyzing and negotiating the terms thereof. ***Second***, the Debtor Release is essential to the success of the Debtors' Plan because it constitutes an integral term of the Plan. Indeed, absent the Debtor Release, it is highly unlikely the Debtors would have been able to build the extraordinary level of consensus with respect to the Plan and the transactions contemplated thereby. And ***third***, the Debtor Release is narrowly tailored, excluding all Non-Released Claims (which I understand comprise a significant portion of all Claims and Causes of Action held by the Estates). Accordingly, I believe that the Debtor Release is fair, equitable, and in the best interests of the Debtors' Estates.

    **B.**    **The Third-Party Release Is Appropriate and Complies with the Bankruptcy Code.**

42.    Article X.D. of the Plan contains a third-party release provision (the "Third-Party Release"). Based on my consultation with legal counsel, I understand that the Third-Party Release is a consensual release. I understand that all parties in interest had the opportunity to opt out of the Third-Party Release through a Ballot or Opt-Out form, both of which unambiguously and conspicuously quoted the entirety of the Third-Party Release. Thus, I believe all affected parties were on notice of the Third-Party Release and were provided ample opportunity to opt-out of such release, and therefore the Third-Party release is consensual as to all creditors and interest holders who did not opt-out or object. Further, I believe that the Third-Party Release is essential to the success of the Plan, is in the best interests of the Debtors and their stakeholders and is provided in exchange for the Released Parties' valuable consideration. As a result, I believe that the Third-Party Release is consensual, fair, and equitable under the circumstances of these chapter 11 cases.

### C. The Exculpation Provision Is Appropriate.

43. Based on my experience and discussions with counsel, it is my belief that the exculpation provision described in Article X.E. of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length discussions with key constituents, and is appropriate limited in scope. The Exculpated Parties played a critical role in negotiating, formulating, and implementing the Disclosure Statement, the Plan, and related documents. I understand that the inclusion of the Exculpation provision was a critical component of the negotiations over the terms of the Plan. In short, I believe the Exculpation represents an integral piece of the overall settlement embodied in the Plan. Accordingly, under the circumstances, I believe that it is appropriate for the Court to approve the Exculpation provision.

### D. The Injunction Provision is Appropriate.

44. The injunction provision set forth in Article X.F. of the Plan (the "Injunction Provision") implements the Plan's discharge, release, and exculpation provisions by permanently enjoining all Entities from commencing or maintaining any action against the Debtors, the Wind-Down Debtors, the Plan Administrator, the Released Parties, or the Exculpated Parties on account of, or in connection with, or with respect to, any such Claims or Interests discharged, released, exculpated, or settled under the Plan.

45. I believe that the Injunction Provision is a necessary part of the Plan because it enforces the discharge, release, and exculpation provisions that are crucially important to the Plan. Further, the injunction provision provided for in the Plan is narrowly tailored to achieve its purpose. As such, I believe the Injunction Provision should be approved.

**V.      Good Cause Exists to Waive the Stay of the Confirmation Order.**

46. I understand that certain Bankruptcy Rules provide for the stay of an order confirming a chapter 11 plan, but that such a stay may be waived upon court order after a showing of good cause.

47. Given the complexity of the Plan and the various transactions implicated by the Plan, the Debtors may take certain steps to effectuate the Plan in anticipation of and to facilitate the occurrence of the Effective Date so that the Effective Date can occur as soon as needed. Accordingly, I believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: September 7, 2023

By: */s/ Holly Etlin*
Name: Holly Etlin
Title: Chief Restructuring Officer and Chief Financial Officer
Bed Bath & Beyond Inc.