**ARMSTRONG TEASDALE LLP**
Jeffrey A. Wurst (*admitted pro hac vice*)
Paige Guarino (N.J. Bar No. 399392022)
7 Times Square, 44th Floor,
New York, NY 10036
Telephone: (212) 209-4443
jwurst@atllp.com
*Counsel to Nordstrom, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND, INC., et al., | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF NORDSTROM, INC. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED LEASES AND (B) ABANDONMENT OF ANY PERSONAL PROPERTY, EFFECTIVE AS OF THE REJECTION DATE AND (II) GRANTED RELATED RELIEF [DKT. 1613]**

Nordstrom, Inc. ("Nordstrom"), by and through its attorney, Armstrong Teasdale LLP, hereby submits its Objection of Nordstrom, Inc. to the Debtor Bed Bath & Beyond, Inc.'s ("BBB") Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of any Personal Property, Effective as of the Rejection Date and (II) Granted Related Relief [Dkt. 1613] and respectfully states as follows:

### I.    PRELIMINARY STATEMENT AND BACKGROUND

Nordstrom is the operator of a chain of leading high-end department stores including stores it operates under its trade name Nordstrom Rack. Cundiff Decl., ¶ 1.

BBB was the fee owner and operator of a shopping center located in Addison, Texas known as the Gallery on the Parkway (the "Shopping Center"). Cundiff Decl., ¶ 3. In 2013, BBB, as

Landlord, and Nordstrom, as Tenant, entered into a written lease agreement (the "Nordstrom Lease")[1] whereby BBB leased to Nordstrom approximately 39,000 square feet of floor area in the Shopping Center (the "Leased Premises"), where Nordstrom continues to operate a Nordstrom Rack store. Cundiff Decl., ¶ 3. Upon information and belief, in recent years, in addition to Nordstrom Rack, the Mall was occupied by three other retail stores: Bed Bath & Beyond, Buy Buy Baby and another then-affiliate of BBB. The Nordstrom Lease was for a term of ten years with options for four successive five-year terms, for a total of thirty years if all options were exercised. Cundiff Decl., ¶ 3, Ex. A.

On or about December 2019, BBB entered into a sale-leaseback (the "Sale-Leaseback") with one or more affiliates of Oak Street Real Estate Capital, LLC ("Oak Street"), pursuant to which BBB conveyed its fee interest in and to the Shopping Center to an Oak Street affiliate and entered into a lease (the "Leaseback") with the Oak Street affiliate as landlord and BBB as tenant. Cundiff Decl., ¶ 6. Nordstrom's Lease remained in effect at the time of the Leaseback, and Nordstrom's use of the Leased Premises has remained continuous and visible at the Shopping Center since the Nordstrom Lease was executed in 2013. Cundiff Decl., ¶ 4. The Leaseback occurred more than six years after the Nordstrom Lease was entered into, and is subject to the preexisting Nordstrom Lease.

At all times since the creation of the Leaseback, Nordstrom has remained in continuous possession of the Leased Premises and continues to perform under the Nordstrom Lease. Neither BBB nor Oak Street has opposed or contested Nordstrom's right to do so. Cundiff Decl., ¶ 5.

On July 28, 2023, the Debtor filed and served *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases and (B) Abandonment of any Personal*

---

[1] A copy of excerpts of the Nordstrom Lease is annexed to the Declaration of Elliot Cundiff (the "Cundiff Decl.") submitted together with this objection. The facts presented in this Objection are taken from the Cundiff Declaration.

*Property, Effective as of the Rejection Date and (II) Granted Related Relief* (the "Rejection Motion") [Dkt. 1613]. The Rejection Motion does not identify Nordstrom as a "Non-Debtor Counterparty" to a lease to be rejected, nor is the Nordstrom Lease designated in Schedule 1 as a Lease that will be rejected. *See* Dkt. 1613. However, the Motion does purport to reject "Subleases related to the Leases." *Id*.

However, the Nordstrom Lease is **not** a sublease as it predates the Leaseback by more than six years, does not contain any term or condition indicating it is a sublease, nor was any amendment undertaken to make the Nordstrom Lease into a sublease. Cundiff Decl., ¶ 7.

On July 30, 2023, the Court issued its *Order Shortening Time Period for Notice* [Dkt. 1676], which required that objections to the Rejection Motion be filed and served by August 11, 2023 (the "Objection Deadline"), and scheduling a hearing on the Rejection Motion for August 16, 2023 (the "Rejection Motion Hearing"). Subsequently, the Debtors, Nordstrom, and Oak Street (on behalf of the Landlord) entered into two stipulations as to Nordstrom, the Landlord and Oak Street: (a) extending Objection Deadline until September 8, 2023; and (b) adjourning the Rejection Motion Hearing until September 12, 2023 (c) and clarifying that rent should be paid directly to Oak Street as landlord. [Dkts,. 1893, 2076].

## II.     OBJECTION

### A.     Oak Street Remains Bound by the Nordstrom Lease.

It is undisputed that the Nordstrom Lease predates the Leaseback. Further, it is undisputed that Nordstrom remained in open and visible possession of the Leased Premises when the Leaseback occurred and therefore BBB's sale of the Shopping Center in 2019 did not disturb the existing Nordstrom Lease.

It is settled law that a purchaser of property takes that property subject to rights that run with the land and leasehold rights that existed at the time of the purchase.[2] Under Texas law, it is well settled that a purchaser of a property subject to a pre-existing lease is bound by the terms of that lease. *See, e.g., Cantile v. Vanity Fair Properties*, 505 S.W.2d 654, 658 (Tex. Ct. App. – San Antonio 1973) ("It is elementary that the sale of the reversion by the landlord does not, itself, bring about a termination of the lease."); *Zale Corp. v. Decorama, Inc.*, 470 S.W.2d 406, 409 (Tex. Civ. App. 1971) ("Possession of the property by a tenant at the time premises are conveyed puts the vendee on notice of the terms under which the tenant is holding, and this notwithstanding such is not of record."); *Wilson v. Beck*, 286 S.W. 315 (Tex. Ct. App. – Dallas 1926) ("The sale by Mrs. Miller of the reversion to Phillips did not terminate the tenancy of McDonald or deprive him of any rights under the lease. McDonald was…the tenant of Phillips.); 49 Tex. Jur. 3d Landlord and Tenant Section 50 ("In the absence of a contrary provision in the lease, a sale of the reversion by the landlord does not affect the tenant's rights."); *Miller v. Compton*, 185 S.W.2d 754, 756 (Tex. Civ. App. 1945) ("the established rule is that a sale of the reversion by the landlord does not terminate the tenancy or affect the tenant's rights or obligations. The tenant being in possession at the time of the sale, the purchaser is deemed to have had notice of his rights under the lease, and hence may not claim the standing of an innocent purchaser. The lessee or tenant becomes in contemplation of law the tenant of the purchaser, and may attorn to the latter.")

Here, the Nordstrom Lease was in existence at the time of the sale and Leaseback, and consistent with applicable law, the Nordstrom Lease runs with the land and operates as a direct lease with Oak Street notwithstanding any rejection of the Leaseback by BBB. The Nordstrom

---

[2] The Nordstrom Lease provides that the "Lease shall be construed according to the laws of the State in which Premises is located." Here, the Shopping Center is located in Texas, which similar to other states, recognizes that a purchaser of property takes the property subject to preexisting leases. Cundiff Decl., ¶ 3, Ex. A.

Lease is not a sublease, as it predates the Leaseback by at least six years, and no lease amendment exists which converted the Nordstrom Lease to a sublease. Therefore, to the extent the Leaseback or the Nordstrom Lease (to the extent, if at all, the Debtor still holds any interest in it) is rejected, any such order must clarify that it does not limit or impact Nordstrom's rights under the Nordstrom Lease as to Oak Street or any of its successors or assigns.

Here, once the Leaseback is rejected by BBB, the Debtor will cease to have any interest in the Nordstrom Lease which continues to be an effective agreement between Nordstrom as tenant, and Oak Street as owner and landlord of the Shopping Center of which the Nordstrom Lease is a part. At such time, the Nordstrom Lease will cease to be property of BBB's bankruptcy estate, and the Bankruptcy Court will lack jurisdiction to alter the rights of Nordstrom and Oak Street outside of bankruptcy. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 671, 135 S. Ct. 1932, 1940, 191 L. Ed. 2d 911 (2015). Such a ruling would be a non-core proceeding, and subject to adjudication by this Court only in an adversary proceeding and with the consent of the parties. Accordingly, any adjudication concerning the contemplated rejection of the Nordstrom Lease is improper here.

  **B. To the extent the Nordstrom Lease Can Be Rejected, Nordstrom Asserts its 365(h) Right to Possession.**

To the extent the Court determines that the Debtor has retained any interest as lessor that may be rejected, then the Nordstrom Lease would fall squarely within the scope of section 365(h)(1) which preserves Nordstrom's right to possession of the Leased Premises. 11 U.S.C. 365(h) provides in relevant part that:

> If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and…
>
> if the term of such lease has commenced, **the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of**

> **use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease** and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. 365(h)(1)(a)(ii) (emphasis added). Here, to the extent that BBB holds any interest as landlord after rejection of the Leaseback, Nordstrom is entitled to continued possession of the Leased Premises pursuant to 11 U.S.C. 365(h) because the Nordstrom Lease is: (a) an unexpired lease; (b) of real property; (c) under which the Debtor, BBB, is the Lessor; (d) the lease term commenced prepetition and is ongoing, (e) and the debtor is seeking rejection. To the extent such a determination is made, Nordstrom is invoking its right, pursuant to section 365(h)(A)(ii), to "retain its rights under [Nordstrom Lease] (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law." Nordstrom's election is consistent with applicable law. *See, e.g., In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr. S.D.N.Y. 1986) (holding that tenant-lessees were protected by § 365(h), which allowed them to remain in possession of the property for the balance of the lease term and any renewal or extension of the term that was enforceable by the lessee under 'applicable nonbankruptcy law'"); *In re Crumbs Bake Shop, Inc.,* 522 B.R. 766, 778 (Bankr. D.N.J. 2014). "365(h) is specific, as it grants a particular set of clearly stated rights to lessees of rejected leases... Congress specifically gave lessees the option to remain in possession after a lease rejection.")

### III. CONCLUSION

For the foregoing reasons, Nordstrom respectfully requests that (a) any order authorizing rejection of the Leaseback confirm that it does not impair or disturb Nordstrom's right to possession of the Leased Premises pursuant to the Nordstrom Lease which operates as a direct lease with Oak Street, or (b) to the extent the Court determines the Nordstrom Lease is capable of rejection, preserve Nordstrom's right to possession of the leased premises under 365(h).

| | |
|---|---|
| Respectfully Submitted, | */s/ Jeffrey A. Wurst* |
| Date: September 8, 2023 | **ARMSTRONG TEASDALE LLP**<br>Jeffrey A. Wurst (*admitted pro hac vice*)<br>Paige Guarino N.J. Bar No. 399392022<br><br>7 Times Square, 44th Floor,<br>New York, NY 10036<br>Telephone: (212) 209-4499<br>jwurst@atllp.com<br><br>*Counsel to Nordstrom, Inc.* |

## **CERTIFICATE OF SERVICE**

I, Jeffrey Wurst, an attorney, hereby certify that on September 8, 2023, a true and correct copy of the annexed Objection Of Nordstrom, Inc. To Debtors' Rejection Motion was filed electronically. Notice of the filing will be sent to all parties who are currently on the Court's Electronic Mail Notice List by operation of the Court's Electronic Filing System.

*/s/ Jeffrey A. Wurst*