**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' (I) OMNIBUS OBJECTION TO CERTAIN TAX CLAIMS AND (II) MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and thorough their undersigned counsel, hereby submit this omnibus objection and motion (the "Omnibus Objection") for entry of an Order substantially in form submitted herewith and attached as **Exhibit B** (the "Proposed Order") pursuant to sections 105, 502, and 505 of title 11 of the United States Code (the ("Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-2 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), (i) determining market values to establish the bases upon which to compute taxes for tax year 2023 as to the Claims (defined below) and to stay state proceedings and (ii) modifying or reducing the claims listed on **Schedule A** attached to the Proposed Order based on the determination of assessed value of the Debtors' property. In support of the Omnibus Objection, the Debtors submit the Declaration of John W. Lammert attached hereto as **Exhibit A** (the "Lammert Declaration") and filed contemporaneously herewith, and respectfully state as follows:

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Omnibus Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 502, and 505 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-2.

**Relief Requested**

4. By this Omnibus Objection, the Debtors request an order (i) determining market values to establish the bases upon which to compute taxes for tax year 2023 as to the Claims (defined below) and to stay state proceedings and (ii) modifying or reducing the claims listed on Schedule A attached to the Proposed Order based on the determination of assessed value of the Debtors' property, pursuant to sections 105, 502, and 505 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-2.

**Background**

**A.    The Bankruptcy Cases**

5. On April 23, 2023, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their business and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) [Docket No. 75].

7. On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 218].

8. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] and the

*Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 1713].

### B.  The Claims and the Property Tax Disputes

9.  On May 31, 2023, the Court entered an Order setting a claims bar date for the filing of claims against the Debtors' estates [Docket No. 584] (the "Bar Date Order"). Pursuant to the Bar Date Order, governmental units must submit proofs of claim by October 20, 2023.

10.  As detailed on Schedule A to the Proposed Order, numerous Texas taxing authorities (the "Texas Authorities") filed proofs of claim in the Chapter 11 Cases asserting claims for *ad valorem* property taxes related to the Debtors' property (the "Claims").

11.  The property (the "Property") which is subject to this Omnibus Objection and serves as the basis for the Claims is comprised of personal property located at the Debtors' former store locations, as set forth on the Exhibit 1 to the Lammert Declaration (the "Assessment Schedule"). The Property includes both business personal property and inventory.

12.  Each of the Claims provides an "estimated" *ad valorem* tax amount for the tax year 2023 with respect to the Property associated with each Claim.

13.  The Debtors and their advisors have reviewed and analyzed the Claims and certain of the Debtors' property tax assessments. Based on that review, the Debtors determined that the amounts asserted in the Claims for "estimated" 2023 tax assessments are overstated and the assessors have asserted a fair market value higher than that indicated from the Debtors' sales and third-party research of other sales of fixtures and inventory in the market.

### C.  Valuation of the Debtors' Property

14.  In assessing the Property and quantifying the Claims for the tax year 2023, the various taxing assessors were required to determine the fair market value of the Property (as such term is defined by Texas state statute, the "Fair Market Value"). Fair Market Value contemplates

current market prices and values as of the assessment date of such property. Pursuant to Texas Tax Code Section 23.01, taxable property is required to be "appraised at its market value as of January 1" of the applicable tax year, the "market value of property shall be determined by the application of generally accepted appraisal methods and techniques," and "each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." Tex. Tax Code § 23.01. As set forth in the Texas Administrative Code, market value is defined as:

> [t]he price at which a property would transfer for cash or its equivalent under prevailing market conditions if:
>
> (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;
>
> (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and
>
> (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

34 Tex. Admin. Code § 9.4251.

15. Accordingly, the Fair Market Value attributed to the Property must contemplate a hypothetical arm's-length sales transaction for the Property as if such property were offered for sale on the open market between a prudent, voluntary seller and an equally prudent, voluntary buyer, both of whom are well-informed about the property. The taxing assessors are specifically required to implement and apply this definition of Fair Market Value in assessing taxable property within their jurisdiction.

16. The taxing assessors did not apply the correct definition of Fair Market Value in assessing the Property as to the Claims resulting in an overstated amount of the claims by the Texas

Authorities. Instead, the values identified on the Assessment Schedule as "Revised Assessed Value" represent the correct Fair Market Value under applicable non-bankruptcy law (the "Revised Fair Market Values").

17. The Debtors with the assistance of their advisors used both sales of retail inventory, furniture, fixtures and equipment at the Debtor's stores ("Debtor Sales Data") together with information provided by a third-party firm ("Third-Party Research Data") to approximate the Fair Market Value of the Property as allowed by applicable non-bankruptcy law as of the date the values were to be assessed. These two sources provide a representative assessment of the Fair Market Value of the Debtors' Property.

18. Debtor Sales Data - As of January 1, 2023, the Debtors had 1,020 stores, including 834 Bed Bath & Beyond stores, 132 buybuy BABY stores, and 54 stores under the names Harmon, Harmon Face Values or Face Values. The Debtors have undergone a store closing process for a large number of stores, selling all assets and inventory in place. As of the date of the Petition Date, the store count in the United States was reduced to just 360 Bed Bath & Beyond locations and 120 buybuy BABY stores. Data from the Debtors' sales of store assets were collected from records provided by the Debtors and included sales from stores which are the subject of this Omnibus Objection and other stores throughout the Debtors' portfolio. The Debtors submit that the sales prices derived from the Debtor Sales Data approximates the Fair Market Value definition, considering a willing buyer and seller.

19. Third-Party Research Data – The Debtors with the assistance of their advisors also reviewed inventory schedules produced by Property Tax Research Services ("PTRS"). The inventory schedules produced by PTRS are developed to reflect typical discounts on inventory in different markets. The information obtained by PTRS is derived from questionnaires with

6

companies in the industry, sales and financial information from various companies, and other resources. From this data, the results are divided into various property types and include items such as freight, damaged goods, discounts/markdowns, price match, private label, slow moving items, rebates, returns, obsolete, scrap and bulk discounts.

20. Based on the Debtor Sales Data and Third-Party Research Data, the Debtors have estimated the value of the inventory and furniture, fixtures and equipment at the Debtors' store locations as of January 1, 2023. Those values are the Revised Fair Market Values set forth in the Assessment Schedule attached to the Lammert Declaration.

**Relief Requested Should be Granted**

A. **The Court Has Authority to Determine the Market Value of the Debtors' Property for the Purpose of Establishing Tax Liability and to Stay State Proceedings**

21. Section 505(a)(l) of the Bankruptcy Code provides that:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of *any tax,* any fine or penalty relating to a tax, or any addition to tax, *whether or not previously assessed, whether or not paid, and whether or not contested* before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(l) (emphasis added).

22. Courts, including the Third Circuit, have interpreted section 505(a) as a "jurisdictional statute" that confers on the bankruptcy court the broad authority to determine the amount or legality of any tax claims. *See In re Custom Distrib. Servs., Inc.,* 224 F.3d 235, 239-40 (3d Cir. 2000); *In re Venture Stores, Inc.,* 54 Fed. Appx. 721, 723 (3d Cir. 2002). Congress provided bankruptcy courts with this broad power under section 505 of the Bankruptcy Code to promote prompt and centralized estate administration, and to avoid requiring the estate to "litigate the tax or assessment in several state jurisdictions." *In re Indianapolis Downs, LLC,* 462 B.R. 104, 112

(Bankr. D. Del. 2011) (quoting *In re Cable & Wireless USA, Inc.,* 331 B.R. 568, 575 (Bankr. D. Del. 2005).

23. This broad authority includes the power to determine property and *ad valorem* taxes like the kind addressed by this Omnibus Objection. *See*, *e.g.*, *In re Majestic Star Casino, LLC*, 457 B.R. 327, 362-64 (Bankr. D. Del. 2011) (determining disputed valuation for property tax purposes), *aff'd*, Civ. No. 11–1060–LPS, 2013 WL 6504624 (D. Del. Dec. 10, 2013); *In re Cont'l Airlines, Inc.*, 138 B.R. 430, 433 (Bankr. D. Del. 1992) (describing Bankruptcy Code's "broad grant of jurisdiction" to bankruptcy courts to determine tax liabilities under section 505), *rev'd on other grounds,* 149 B.R. 76 (D. Del. 1993), *aff'd in part, rev'd in part*, 8 F.3d 811 (3d Cir. 1993) (unpublished table decision); *In re Dura Auto. Sys. Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. June 24, 2008) [Docket No. 3482] (granting an order determining adjustments to amounts owed to tax authorities). This Court, therefore, has the authority to determine the value of the Property for tax purposes to adjudicate the proper 2023 claim amounts of the Claims.

24. Bankruptcy Code section 505(a)(l)'s broad grant of tax determination authority is subject to only three express exceptions set out in Bankruptcy Code section 505(a)(2), none of which apply here. *First*, section 505(a)(2)(A) of the Bankruptcy Code prevents the Court from re-adjudicating taxes that were already contested and finally adjudicated in a court of competent jurisdiction prior to the commencement of the case. 11 U.S.C. § 505(a)(2)(A). None of the tax liabilities the Debtors seek to have determined here have been adjudicated or contested to date.

25. *Second*, Bankruptcy Code section 505(a)(2)(B) addresses tax refunds which are not at issue in this Omnibus Objection, and therefore, this limitation does not apply.

26. *Third*, Bankruptcy Code section 505(a)(2)(C) prevents bankruptcy courts from determining the amount or legality of any *ad valorem* tax if the applicable periods to contest or seek

8

redetermination under non-bankruptcy law have expired. The time to contest 2023 tax liabilities relating to the Claims has not expired, and, thus, this exception does not apply.

27. Accordingly, the Court has the authority to make the determinations requested under section 505 of the Bankruptcy Code. The Court should exercise that authority here. Bankruptcy courts have long recognized the advantages of applying Bankruptcy Code section 505 procedures to facilitate prompt, accurate determination of contested state tax issues. *See, e.g., Continental Airlines*, 138 B.R. at 434 (noting the "relative speed" with which a tax issue could be handled in a bankruptcy court rather than in a state's appeals process); *Stevens v. IRS (In re Stevens)*, 210 B.R. 200, 202 (Bankr. M.D. Fla. 1997) ("Pursuant to the legislative history of [section] 505(a)(1), Congress clearly intended for the statute to allow bankruptcy courts to rapidly determine tax issues necessary for the efficient administration of the estate."); *In re Schmidt*, 205 B.R. 394, 397 (Bankr. N.D. Ill. 1997) ("The legislative history is indicative of Congressional intent to vest the bankruptcy courts with a fairly broad jurisdictional grant under [section] 505(a).").

28. Without the relief sought in this Omnibus Objection, the Debtors may be forced to proceed with contested matters in the local taxing jurisdictions at significant expense to the estates and which could take a substantial time to conclude. An expeditious judicial determination by this Court regarding the Fair Market Value of the Property would considerably aid the speed and effort required to administer the Debtors' Chapter 11 Cases to the benefit of the estates and their creditors.

29. Based on the above, the Debtors respectfully request that the Court exercise its authority under section 505 of the Bankruptcy Code to set the value of the Property which are the subject of the Claims to the Revised Fair Market Values set forth in the Assessment Schedule. Once

the value of the Property is established, the 2023 tax amounts set forth in the Claims should be reduced accordingly.

30. In addition, the Debtors also request that this Court stay all state and administrative proceedings while the Court addresses the tax liability determinations requested herein. As indicated above, one of the aims of section 505 of the Bankruptcy Code is to enable debtors in bankruptcy the chance to expeditiously resolve tax questions in a manner that avoids costs and cumbersome administrative proceedings. Requiring the Debtors to participate in state and administrative proceedings while prosecuting this Omnibus Objection would cause the Debtors to incur unnecessary costs. None of the Texas Authorities will be prejudiced by this relief as they will have the opportunity litigate the same issues before this Court, as intended by the Bankruptcy Code.

**B.    The Debtors' Objection to the Texas Authorities' Claims Should be Sustained**

31. When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. See *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). A proof of claim filed in accordance with section 501 of the Bankruptcy Code and the Bankruptcy Rules typically constitutes "prima facie evidence of the validity and amount of the claim." Fed R. Bankr. P. 3001(f).

32. To receive the benefit of *prima facie* validity, however, the proof of claim must "allege facts sufficient to support the claim." *Allegheny*, 954 F.2d at 167 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."). Initially, the burden of proof lies on the claimant; if the claimant supports his claim with sufficient facts or documentation, the claim is deemed *prima facie* valid. *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 697 (Bankr. D. Del. 2016) (citing *Allegheny*, 954 F.2d at 173–74); *Payne v. Lampe (In re Lampe)*, 665 F.3d 506, 514 (3d Cir. 2011).

33. A party wishing to dispute a claim that meets the burden of *prima facie* validity must produce evidence in sufficient force to negate the claim's *prima facie* validity. *Allegheny,* 954 F.2d at 173. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id.* at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id.* at 174. Ultimately, the burden of persuasion is on the claimant. *Id.*

34. The Debtors are authorized to file this Omnibus Objection to claims pursuant to Local Rule 3007-2 which provides that an "omnibus objection to claims may be filed to reduce the amount of a claim…"

35. As set forth above, the Debtors have determined that the Claims should be reduced because the 2023 claim amounts are based upon an overstatement of the value of the Property which is the basis for the 2023 claim amounts asserted. The Debtors have submitted what they assert to be the more accurate value of the Property under Texas law in the Assessment Schedule based on the Debtors Sales Data and Third-Party Research Data.

36. In addition, the Texas Authorities did not provide sufficient information to support the claims asserted for 2023. The 2023 amounts set forth in the Claims were for "estimated" amounts without sufficient information to support the estimated amounts. Indeed, some Claims even indicated that the amounts would need to be amended when the proper amount is determined under Texas law.

37. Based on the foregoing, the Debtors respectfully request that the Court enter the Proposed Order reducing the Claims once the Property is properly valued in accordance with the Debtors request for relief under section 505 of the Bankruptcy Code and Texas law.

**Responses to this Omnibus Objection**

38.     Filing and Service of Responses: To contest this Omnibus Objection, a claimant must file and serve a written response (the "Response"), so that it is actually received by the Clerk of the Court and the parties listed in the following paragraph no later than **October 17, 2023** (the "Response Deadline").  Claimants should locate their names and claims on **Schedule A** to the Proposed Order and carefully review the Proposed Order and the corresponding schedule. All Responses must address the grounds upon which the Debtors objects to a particular claim.  If Responses are received, a hearing to consider the Omnibus Objection (the "Hearing") may be held on **October 24, 2023,** at **10:00 a.m.** (ET), before the Honorable Vincent F. Papalia, United States Bankruptcy Judge, in Courtroom #3B of the United States Bankruptcy Court for the District of New Jersey, Martin Luther King Jr. Federal Building, 50 Walnut Street, Third Floor, Newark, New Jersey 17102.

39.     Every Response must be filed and served so as to be actually received by the Response Deadline by counsel for the Debtors, Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601, Attn: Warren A. Usatine, Esq. and Felice R. Yudkin, Esq.

40.     Contents of Responses: Every Response to this Omnibus Objection must contain, at a minimum, the following:

    (a) a caption with the name of the Court, the Debtors' name and case number, the title of this Omnibus Objection, and the name of the responding claimant;

    (b) a concise statement setting forth the reasons why a particular claim should not be reduced for the reasons set forth in this Omnibus Objection, including, but not limited to, the specific factual and legal bases upon which the claimant will rely in opposing this Omnibus Objection at the Hearing;

    (c) the claim number(s), if any, to which your Response is directed, and all documentation or other evidence of the claim in question, to the extent not already included with the claimant's proof of claim, upon which the claimant will rely in opposing this Omnibus Objection at the Hearing;

  (d) the name, address, and telephone number of the person(s) (who may be the claimant or a legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the claim on behalf of the claimant; and the name, address, and telephone number of the person(s) (who may be the claimant or a legal representative) to whom the Debtors should serve any reply to the Response.

41. <u>Adjournment of Hearing</u>: The Debtors reserve the right to adjourn the Hearing on any disputed claim included in this Omnibus Objection at or prior to the Hearing.

## Waiver of Memorandum of Law

42. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Omnibus Objection does not raise any novel issues of law.

## Reservation of Rights

43. Notwithstanding anything to the contrary herein, nothing contained in this Omnibus Objection or any actions taken pursuant to any order granting the relief requested by this Omnibus Objection is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Omnibus Objection or any order granting the relief requested by this Omnibus Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Omnibus Objection are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek

avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim.

44. The Debtors, their estates, or any successors, hereby reserve the right to object in the future to the Claims on any other grounds, and to amend, modify, and/or supplement this Omnibus Objection. A separate hearing will be scheduled on any subsequently filed objections. Without limiting the generality of the foregoing, the Debtors, or any successors to the Debtors, specifically reserve the right to, file additional papers in support of the Omnibus Objection, or to take other appropriate actions, including to (a) respond to any allegation or defense that may be raised in a response filed in accordance with the Omnibus Objection by or on behalf of any of the claimants or other interested parties; (b) object further to any disputed claim for which a claimant provides (or attempts to provide) additional documentation or substantiation; and (c) object further to any disputed claim based on additional information that may be discovered upon further review by the Debtors or their successors or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

### Separate Contested Matters

45. Each of the Claims objected to by the Debtors constitutes a separate contested matter under Bankruptcy Rule 9014. The Debtors respectfully request that any order entered by the Court with respect to an objection asserted in this Omnibus Objection shall be deemed a separate order with respect to each claim.

### No Previous Request

46. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**Notice**

47. The Debtors will provide notice of this Omnibus Objection to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the agents under the Debtors' prepetition secured facilities and counsel thereto; (c) the DIP Agent counsel thereto; (d) Davis Polk & Wardwell LLP, in their capacity as counsel to the Prepetition ABL Agent; (e) the indenture trustee to the Debtors' Senior Unsecured Notes; (f) counsel for the Official Committee of Unsecured Creditors; (g) counsel to the Ad Hoc Committee of Bondholders; (h) the Texas Authorities; (i) the tax assessors in each of the counties associated with the Texas Authorities; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: September 11, 2023

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
              wusatine@coleschotz.com
              fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:    josuha.sussberg@kirkland.com
              emily.geier@kirkland.com
              derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*