**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and thorough their undersigned counsel, hereby submit this motion (the "Motion") for entry of an Order substantially in form submitted herewith and attached as **Exhibit B** (the "Proposed Order") pursuant to sections 105 and 505 of title 11 of the United States Code (the ("Bankruptcy Code") to establish the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in Bell County and Potter-Randall County (the "Texas Counties") and to stay state proceedings. In support of the Motion, the Debtors submit the Declaration of John W. Lammert attached hereto as **Exhibit A** (the "Lammert Declaration") and filed contemporaneously herewith, and respectfully state as follows:

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 505 of the Bankruptcy Code.

## Relief Requested

4. By this Motion, the Debtors request an order the determining market values to establish the bases upon which to compute taxes for tax year 2023 for the Debtors' property in the

Texas Counties and to stay state proceedings pursuant to sections 105 and 505 of the Bankruptcy Code.

## Background

A.  **The Bankruptcy Cases**

5.  On April 23, 2023, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their business and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure [Docket No. 75].

7.  On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 218].

8.  Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] and the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 1713].

B.  **The Property Tax Disputes**

9.  The property (the "Property") which is subject to this Motion is comprised of personal property located at the Debtors' former store locations in the Texas Counties, as set forth on the Exhibit 1 to the Lammert Declaration (the "Assessment Schedule"). The Property includes both business personal property and inventory.

10. The Debtors have received the Texas Counties' asserted fair market value for the Property for the tax year 2023 (the "Asserted FMV").

11. The Debtors and their advisors have reviewed and analyzed the Asserted FMV and certain of the Debtors' property tax assessments. Based on that review, the Debtors determined that the Asserted FMV for the Property is overstated, and the assessors have asserted a fair market value higher than that indicated from the Debtors' sales and third-party research of other sales of fixtures and inventory in the market.

C. **Valuation of the Debtors' Property**

12. In assessing the Property for the tax year 2023, the various taxing assessors were required to determine the fair market value of the Property (as such term is defined by Texas state statute, the "Fair Market Value"). Fair Market Value contemplates current market prices and values as of the assessment date of such property. Pursuant to Texas Tax Code Section 23.01, taxable property is required to be "appraised at its market value as of January 1" of the applicable tax year, the "market value of property shall be determined by the application of generally accepted appraisal methods and techniques," and "each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." Tex. Tax Code § 23.01. As set forth in the Texas Administrative Code, market value is defined as:

> [t]he price at which a property would transfer for cash or its equivalent under prevailing market conditions if:
>
> (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;
>
> (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

65548/0001-46076477v1

> (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

34 Tex. Admin. Code § 9.4251.

13. Accordingly, the Fair Market Value attributed to the Property must contemplate a hypothetical arm's-length sales transaction for the Property as if such property were offered for sale on the open market between a prudent, voluntary seller and an equally prudent, voluntary buyer, both of whom are well-informed about the property. The taxing assessors are specifically required to implement and apply this definition of Fair Market Value in assessing taxable property within their jurisdiction.

14. The taxing assessors did not apply the correct definition of Fair Market Value in assessing the Property resulting in an overstated Property value for 2023 by the Texas Counties. Instead, the values identified on the Assessment Schedule as "Revised Assessed Value" represent the correct Fair Market Value of the Property under applicable non-bankruptcy law (the "Revised Fair Market Values").

15. The Debtors with the assistance of their advisors used both sales of retail inventory, furniture, fixtures and equipment at the Debtors' stores ("Debtor Sales Data") together with information provided by a third-party firm ("Third-Party Research Data") to approximate the Fair Market Value of the Property as allowed by applicable non-bankruptcy law as of the date the values were to be assessed. These two sources provide a representative assessment of the Fair Market Value of the Debtors' Property.

16. Debtor Sales Data - As of January 1, 2023, the Debtors had 1,020 stores, including 834 Bed Bath & Beyond stores, 132 buybuy BABY stores, and 54 stores under the names Harmon, Harmon Face Values or Face Values. The Debtors have undergone a store closing process for a large number of stores, selling all assets and inventory in place. As of the date of the Petition Date,

the store count in the United States was reduced to just 360 Bed Bath & Beyond locations and 120 buybuy BABY stores. Data from the Debtors' sales of store assets were collected from records provided by the Debtors and included sales from stores which are the subject of this Motion and other stores throughout the Debtors' portfolio. The Debtors submit that the sales prices derived from the Debtor Sales Data approximates the Fair Market Value definition, considering a willing buyer and seller.

17. Third-Party Research Data – The Debtors with the assistance of their advisors also reviewed inventory schedules produced by Property Tax Research Services ("PTRS"). The inventory schedules produced by PTRS are developed to reflect typical discounts on inventory in different markets. The information obtained by PTRS is derived from questionnaires with companies in the industry, sales and financial information from various companies, and other resources. From this data, the results are divided into various property types and include items such as freight, damaged goods, discounts/markdowns, price match, private label, slow moving items, rebates, returns, obsolete, scrap and bulk discounts.

18. Based on the Debtor Sales Data and Third-Party Research Data, the Debtors have estimated the value of the inventory and furniture, fixtures and equipment at the Debtors' store locations in the Texas Counties as of January 1, 2023. Those values are the Revised Fair Market Values set forth in the Assessment Schedule attached to the Lammert Declaration.

**Relief Requested Should be Granted**

19. Section 505(a)(l) of the Bankruptcy Code provides that:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of *any tax,* any fine or penalty relating to a tax, or any addition to tax, *whether or not previously assessed, whether or not paid, and whether or not contested* before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

6

11 U.S.C. § 505(a)(l) (emphasis added).

20. Courts, including the Third Circuit, have interpreted section 505(a) as a "jurisdictional statute" that confers on the bankruptcy court the broad authority to determine the amount or legality of any tax claims. *See In re Custom Distrib. Servs., Inc.,* 224 F.3d 235, 239-40 (3d Cir. 2000); *In re Venture Stores, Inc.,* 54 Fed. Appx. 721, 723 (3d Cir. 2002). Congress provided bankruptcy courts with this broad power under section 505 of the Bankruptcy Code to promote prompt and centralized estate administration, and to avoid requiring the estate to "litigate the tax or assessment in several state jurisdictions." *In re Indianapolis Downs, LLC,* 462 B.R. 104, 112 (Bankr. D. Del. 2011) (quoting *In re Cable & Wireless USA, Inc.,* 331 B.R. 568, 575 (Bankr. D. Del. 2005).

21. This broad authority includes the power to determine property and *ad valorem* taxes like the kind addressed by this Motion. *See*, *e.g.*, *In re Majestic Star Casino, LLC*, 457 B.R. 327, 362-64 (Bankr. D. Del. 2011) (determining disputed valuation for property tax purposes), *aff'd*, Civ. No. 11–1060–LPS, 2013 WL 6504624 (D. Del. Dec. 10, 2013); *In re Cont'l Airlines, Inc.*, 138 B.R. 430, 433 (Bankr. D. Del. 1992) (describing Bankruptcy Code's "broad grant of jurisdiction" to bankruptcy courts to determine tax liabilities under section 505), *rev'd on other grounds,* 149 B.R. 76 (D. Del. 1993), *aff'd in part, rev'd in part*, 8 F.3d 811 (3d Cir. 1993) (unpublished table decision); *In re Dura Auto. Sys. Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. June 24, 2008) [Docket No. 3482] (granting an order determining adjustments to amounts owed to tax authorities). This Court, therefore, has the authority to determine the value of the Property for tax purposes to adjudicate the proper 2023 tax claim amounts.

22. Bankruptcy Code section 505(a)(l)'s broad grant of tax determination authority is subject to only three express exceptions set out in Bankruptcy Code section 505(a)(2), none of which apply here. *First*, section 505(a)(2)(A) of the Bankruptcy Code prevents the Court from

re-adjudicating taxes that were already contested and finally adjudicated in a court of competent jurisdiction prior to the commencement of the case. 11 U.S.C. § 505(a)(2)(A). None of the tax liabilities the Debtors seek to have determined here have been adjudicated or contested to date.

23. **Second**, Bankruptcy Code section 505(a)(2)(B) addresses tax refunds which are not at issue in this Motion, and therefore, this limitation does not apply.

24. **Third**, Bankruptcy Code section 505(a)(2)(C) prevents bankruptcy courts from determining the amount or legality of any *ad valorem* tax if the applicable periods to contest or seek redetermination under non-bankruptcy law have expired. The time to contest 2023 tax liabilities has not expired, and, thus, this exception does not apply.

25. Accordingly, the Court has the authority to make the determinations requested under section 505 of the Bankruptcy Code. The Court should exercise that authority here. Bankruptcy courts have long recognized the advantages of applying Bankruptcy Code section 505 procedures to facilitate prompt, accurate determination of contested state tax issues. *See, e.g., Continental Airlines*, 138 B.R. at 434 (noting the "relative speed" with which a tax issue could be handled in a bankruptcy court rather than in a state's appeals process); *Stevens v. IRS (In re Stevens)*, 210 B.R. 200, 202 (Bankr. M.D. Fla. 1997) ("Pursuant to the legislative history of [section] 505(a)(1), Congress clearly intended for the statute to allow bankruptcy courts to rapidly determine tax issues necessary for the efficient administration of the estate."); *In re Schmidt*, 205 B.R. 394, 397 (Bankr. N.D. Ill. 1997) ("The legislative history is indicative of Congressional intent to vest the bankruptcy courts with a fairly broad jurisdictional grant under [section] 505(a).").

26. Without the relief sought in this Motion, the Debtors may be forced to proceed with contested matters in the local taxing jurisdictions at significant expense to the estates and which

could take a substantial time to conclude. An expeditious judicial determination by this Court regarding the Fair Market Value of the Property would considerably aid the speed and effort required to administer the Debtors' Chapter 11 Cases to the benefit of the estates and their creditors.

27. Based on the above, the Debtors respectfully request that the Court exercise its authority under section 505 of the Bankruptcy Code to set the value of the Property to the Revised Fair Market Values set forth in the Assessment Schedule. Once the value of the Property is established, the 2023 tax amounts can be properly assessed.

28. In addition, the Debtors also request that this Court stay all state and administrative proceedings while the Court addresses the tax liability determinations requested herein. As indicated above, one of the aims of section 505 of the Bankruptcy Code is to enable debtors in bankruptcy the chance to expeditiously resolve tax questions in a manner that avoids costs and cumbersome administrative proceedings. Requiring the Debtors to participate in state and administrative proceedings while prosecuting this Motion would cause the Debtors to incur unnecessary costs. None of the Texas Counties will be prejudiced by this relief as they will have the opportunity litigate the same issues before this Court, as intended by the Bankruptcy Code.

## Waiver of Memorandum of Law

29. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

30. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a

promise or requirement to pay any particular claim, (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (e) a waiver or limitation of the Debtors', or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (f) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim.

31. The Debtors, their estates, or any successors, hereby reserve the right to amend, modify, and/or supplement this Motion. Without limiting the generality of the foregoing, the Debtors, or any successors to the Debtors, specifically reserve the right to, file additional papers in support of the Motion, or to take other appropriate actions, including to respond to any allegation or defense that may be raised in a response to the Motion or based on additional information that may be discovered upon further review by the Debtors or their successors or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

**No Previous Request**

32. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**Notice**

33. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the agents under the Debtors' prepetition secured facilities and counsel thereto; (c) the DIP Agent counsel thereto; (d) Davis Polk & Wardwell LLP, in their capacity as counsel to the

Prepetition ABL Agent; (e) the indenture trustee to the Debtors' Senior Unsecured Notes; (f) counsel for the Official Committee of Unsecured Creditors; (g) counsel to the Ad Hoc Committee of Bondholders; (h) the tax assessors in each of the Texas Counties; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: September 11, 2023

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:    josuha.sussberg@kirkland.com
           emily.geier@kirkland.com
           derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*