# Exhibit A

**Lammert Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al*., | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

# DECLARATION OF JOHN W. LAMMERT IN SUPPORT OF DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS

I, JOHN W. LAMMERT, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Executive Vice President of Assessment Technologies, Ltd. ("ATL"). I have held this position with ATL since October of 2001 and currently manage the firm's Bankruptcy Tax Practice. I have been involved with the valuation of complex properties during my entire tenure with the firm.

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion to Determine Tax Liability and Stay Proceedings* (the "Motion").[2] I have reviewed the Motion and am familiar with the contents thereof and the relief sought therein.

3. ATL was retained by the Debtors to provide *ad valorem* tax services. As part of these services, ATL agreed to, among other things, verify the methodology used to determine the property values assigned by the various Texas counties in which the Debtors have Property, identify instances whereby the methodology would result in over-assessment, over-valuation, and excessive taxation by Texas counites, and seek appropriate reductions, as warranted by applicable law, for any such excess.

4. ATL's professional staff has represented clients throughout the United States and is familiar with the Texas Counties' tax statutes governing Fair Market Value (as statutorily defined) and the underlying valuation methodology addressed by the Motion.

5. I have been personally involved in ATL's review of the methodology applied by, and documents provided to and by, the Texas Counties. In this regard, I have overseen the review

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

of the Property and the methodology applied by the Texas Counties, identifying areas where the Texas Counties methodology, as applied to these specific assets, would generate excessive Fair Market Values. From this, I have identified assets that should be reduced or disputed based upon (i) the records maintained by the Debtors in the ordinary course of business; (ii) other materials generated in connection with ATL's review of the Debtors' assets and Fair Market Value; (iii) the Debtors' sales data in connection with going out of business sales, and (iv) information provided by a third-party firm Property Tax Research Services ("PTRS").

6. Based on all of the information obtained through the above-described process, I have determined that the Texas Counties' methodology employed in arriving at the purported Market Values of the Property is erroneous. Here, the Texas Counties purported to arrive at Fair Market Values on the basis absent consideration of the sales of Property at the stores together with information or sales from the marketplace. The assessments therefore do not reflect the Fair Market Value. By omitting actual sales data to estimate an open market, arm's-length sales prices, the Texas Counties' analyses, and conclusions were flawed.

7. The hypothetical well-informed buyer contemplated by the statutory definition of "Market Value" under Texas law would consider and deal with each of the above-listed factors differently than did the Texas Counties. ATL has concluded that the methodology, if any, used by the Texas Counties resulted in an overvaluing of the Property.

8. The analytical process employed by ATL to determine the correct Fair Market Values consistent with respective Texas Counties' definition of Fair Market Value, are detailed below. These methods are consistent with the respective state valuation standards.

3

**Valuation of Debtors' Property**

9. In assessing the Property and quantifying the taxes for the tax year 2023, the various taxing assessors were required to determine the Fair Market Value of the Property (as such term is defined by Texas state statute). Fair Market Value contemplates current market prices and values as of the assessment date of such property. Pursuant to Texas Tax Code Section 23.01, taxable property is required to be "appraised at its market value as of January 1" of the applicable tax year, the "market value of property shall be determined by the application of generally accepted appraisal methods and techniques," and "each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." Tex. Tax Code § 23.01. As set forth in the Texas Administrative Code, market value is defined as:

> [t]he price at which a property would transfer for cash or its equivalent under prevailing market conditions if:
>
> (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;
>
> (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and
>
> (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

10. Accordingly, the Fair Market Value attributed to the Property must contemplate a hypothetical arm's-length sales transaction for the Property as if such property were offered for sale on the open market between a prudent, voluntary seller and an equally prudent, voluntary buyer, both of whom are well-informed about the property. The taxing assessors are specifically required to implement and apply this definition of Fair Market Value in assessing taxable property within their jurisdiction.

11. The Texas Counties did not apply the correct definition of Fair Market Value, or conducted no valuation at all, which resulted in an improper determination of the Fair Market Value of the Property. ATL used both sales of retail inventory, furniture, fixtures and equipment at the Debtor's stores ("Debtor Sales Data") together with information provided by PTRS ("Third-Party Research Data") to approximate the Fair Market Value of the Property as allowed by applicable non-bankruptcy law as of the date the values were to be assessed. These two sources provide a representative assessment of the Fair Market Value of the Debtors' Property.

12. Debtor Sales Data - As of January 1, 2023, the Debtors had 1,020 stores, including 834 Bed Bath & Beyond stores, 132 buybuy BABY stores, and 54 stores under the names Harmon, Harmon Face Values or Face Values. The Debtors have undergone a store closing process for a large number of stores, selling all assets and inventory in place. As of the date of the Petition Date, the store count in the United States was reduced to just 360 Bed Bath & Beyond locations and 120 buybuy BABY stores. Data from the Debtors' sales of store assets were collected from records provided by the Debtors and included sales from stores which are the subject of the Motion and other stores throughout the Debtors' portfolio. The Debtors submit that the sales prices derived from the Debtor Sales Data approximates the Fair Market Value definition, considering a willing buyer and seller.

13. Third-Party Research Data – ATL also reviewed inventory schedules produced by PTRS. The inventory schedules produced by PTRS are developed to reflect typical discounts on inventory in different markets. The information obtained by PTRS is derived from questionnaires with companies in the industry, sales and financial information from various companies, and other resources. From this data, the results are divided into various property types and include items such

5

as freight, damaged goods, discounts/markdowns, price match, private label, slow moving items, rebates, returns, obsolete, scrap and bulk discounts.

14. From these two sources, the Debtors' have estimated the Fair Market Value of the Property at the Debtor's store locations as of January 1, 2023. Those values are set forth as "Revised Fair Market Values" in the Assessment Schedule attached as Exhibit 1 to this Declaration.

15. For the above reasons, I believe the Debtors should be granted the relief requested in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: September 11, 2023                            Assessment Technologies, Ltd.

By: _____
Name: John W. Lammert
Title: Executive Vice President

6

**Exhibit 1**

**Assessment Schedule**

65548/0001-46076477v1

# Exhibit 1

| JURISDICTION (ASSESSING AUTHORITY) | STORE NO. | PROPERTY ADDRESS | PARCEL NO. | TAX YEAR | ASSESSING AUTHORITIES FAIR MARKET VALUE | REVISED FAIR MARKET VALUE |
|---|---|---|---|---|---|---|
| **Bell County Appraisal District** | 1253 | 201 East Central Texas Expressway | 405003 | 2023 | $ 653,582 | $ 150,501 |
| | 429 | 2112 Southwest HK Dodgen Loop | 238464 | 2023 | $ 737,441 | $ 165,298 |
| **Potter-Randall County Appraisal District** | 352 | 3000 Soncy Road | 239573 | 2023 | $ 1,321,202 | $ 181,618 |