**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

# DEBTORS' MOTION FOR
# ENTRY OF AN ORDER (I) APPROVING THE
# SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE
# MEXICO JV PARTNER, (II) AUTHORIZING THE DEBTORS TO PERFORM ALL
# OF THEIR OBLIGATIONS THEREUNDER, AND (III) GRANTING RELATED RELIEF

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

TO: THE HONORABLE JUDGE VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing (i) entry into that certain settlement agreement attached as Exhibit 1 to the Order (the "JV Settlement Agreement") by and among Bed Bath & Beyond Mexico S. de R.L. de C.V. ("Joint Venture"), Controladora Patos, S.A. de C.V. ("Mexico JV Partner" and together with Joint Venture, the "Non-Debtor Parties"), and the Debtors and their affiliates (collectively, the "Company Parties" and together with the Non-Debtor Parties, the "Parties"), and (ii) the Debtors to perform all of their obligations thereunder; and (b) granting related relief.[2]

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed Bath & Beyond Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "First Day Declaration") or the JV Settlement Agreement, as applicable. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in greater detail in the First Day Declaration and incorporated by reference herein.

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 9019, 2002, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5. Joint Venture is owned equally by the Mexico JV Partner and Bed Bath & Beyond, Inc.'s wholly owned non-debtor subsidiary, BBB Mexico L.L.C., pursuant to that certain investment agreement dated as of May 14, 2008 (as amended, supplemented, or otherwise modified from time to time in accordance with its terms, and all agreements entered into in connection therewith, the "Joint Venture Agreement").

6. In connection with the Joint Venture Agreement, the parties executed that certain trademark license agreement dated May 14, 2008, as subsequently amended and restated by the first amended and restated trademark license agreement dated January 1, 2019, which expired on its terms on January 1, 2020, among, Debtor Liberty Procurement Co., Inc., as licensor, and Joint Venture, as licensee (the "Prior License").

7. In connection with the Debtors' process to sell all, substantially all, or a portion of their assets pursuant to the Court-approved bidding procedures [Docket No. 92], the Company Parties, with the assistance of their advisors, marketed for sale their equity interest in the Joint Venture. No party, other than the Mexico JV Partner, submitted an indication of interest or binding offer, for the Company's equity interest in the Joint Venture.

3

8. On June 28, 2023, Overstock acquired certain intellectual property assets (as defined in the Overstock Sale Order[3], the "Acquired Assets") of the Debtors free and clear of all interests, including all liens, claims, and encumbrances.

9. The Debtors and Non-Debtor Parties have various claims against one another. The Debtors have, for example, a claim for an account receivable owed by the Joint Venture to the Debtors in the amount of approximately $4,098,547 for inventory previously supplied by the Debtors to the Joint Venture. On the other hand, the Joint Venture asserts certain claims for not less than $15 million against the Debtors for purported failure to honor certain obligations related to certain supplier and other arrangements between the Parties.

10. After extensive arms-length negotiations, the Parties entered into the JV Settlement Agreement pursuant to which the Parties agree to a mutual release of claims, the Company Parties agree to deem the JV Interests cancelled upon receipt of the Settlement Payment; the Non-Debtor Parties agree to make a payment to the Company Parties in the amount of $850,000, and the Debtors agreed to facilitate entry into a new trademark license agreement between Overstock and Mexico JV Partner, all on the terms set forth in the JV Settlement Agreement.

## JV Settlement Agreement—Proposed Terms

11. As set forth more fully in Exhibit 1 to the Order, the key provisions of the JV Settlement Agreement, and the information required by Local Rule 6004-1, are summarized below:[4]

---

[3] On June 28, 2023, the Court entered its *Order (I) Approving the Sale of Acquired Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Their Obligations Under the Stalking Horse Purchase Agreement, (III) Approving Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief* [Docket No. 1117] (the "Overstock Sale Order").

[4] The terms described herein are for illustrative purposes only. To the extent there is any inconsistency between the terms set forth in the JV Settlement Agreement and the terms described herein, the JV Settlement Agreement shall control in all respects.

| | **Effective Date** |
|---|---|
| **Effective Date** | The Effective Date of all terms contained in the Settlement and Definitive Documents shall be the later of the date upon which (i) the Bankruptcy Court enters the Settlement Order, and (ii) the Definitive Documents are fully executed. |
| **Settlement Payment** | Non-Debtor Parties' payment to BBBY on the Effective Date, in the amount of $850,000. |
| **JV Interests** | The JV Interests shall be deemed cancelled upon receipt of the Settlement Payment. |
| **Trademark License Agreement** | Upon entry into the Settlement Agreement, Mexico JV Partner, as licensee, and Overstock, as licensor, shall execute a one-year trademark license agreement in a form agreeable to the Parties. |
| **Chapter 11 Plan** | The Non-Debtor Parties shall support confirmation of any of the Debtors' proposed chapter 11 plan(s), including all exhibits, supplements, and amendments thereto (the "Plan"). For the avoidance of doubt, the Non-Debtor Parties agree to be bound by the releases, exculpation, injunction, and discharge provisions provided in the Plan, and shall not object to the Plan, or, if applicable, withdraw any objection to the Plan, and shall not opt out of or otherwise object to the release provisions therein. |
| **Mutual Releases** | Without limitation, the Non-Debtor Parties and the Company Parties, release each other, as well as their respective predecessors, successors, assigns, and their past, present and future officers, directors, affiliates, employees, agents, servants, and representatives from any and all liabilities, rights, claims, demands, obligations, damages (including claims for or award of costs and/or expenses, court costs and attorneys' fees), losses, causes of action in law or in equity arising from the Joint Venture Agreement, the Prior License, or the Controversies prior to the Effective Date. |
| **Conditions Precedent** | The terms of this Term Sheet shall be dependent upon entry of the Settlement Order in form and substance acceptable to the Parties, as well as any other mutually-agreeable conditions. |
| **Expenses** | Expenses borne by any Party in connection with this Term Sheet, the Settlement Agreement, or any of the Definitive Documents shall be borne by such party. |

### Basis for Relief Requested

**I.   The JV Settlement Agreement Should be Approved Pursuant to Section 105(a) and Bankruptcy Rule 9019(a).**

12. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that, "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

13. "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); *see also, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994) (discussing the utility of settlement vis-à-vis judicial economy). The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, in order to "minimize litigation and expedite the administration of the bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)); *see also, e.g.*, *In re Penn. Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990).

14. Whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Ameen*, No. 94–33056, 2008 WL 5955351, at *2 (Bankr. D.N.J. Nov. 6, 2008) (quoting *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997)). In exercising that discretion, the

Third Circuit has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also, e.g.*, *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243 (D. Del. 1998). The proponent of a settlement is not required to demonstrate the settlement is the "'best possible compromise' available, it only needs to be above 'the lowest point in the range of reasonableness.'" *In re Annunziata*, No. 17-1864, 2018 WL 1091291, at *5 (D.N.J. Feb. 28, 2018) (quoting *In re Wash. Mut., Inc.*, 442 B.R. 314, 327–28 (Del. Banla. 2011)).

15.    The Debtors respectfully submit that entry into the JV Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates and within the Debtors' sound business judgment.  As set forth above, the JV Settlement Agreement is the product of hard-fought, good-faith negotiations among the Parties, embodying a resolution that is beneficial to both sides.  Indeed, entry into the JV Settlement Agreement will inure to the benefit of the Debtors' estates in a number of ways.  **First**, approval of the JV Settlement Agreement will allow the Debtors to settle any and all claims with the Non-Debtor Parties. Litigating the controversies would be complex given the international component; would likely cost a significant amount of time, resources, and money for a group of Debtors that can ill-afford additional administrative expenses; and is not certain to produce to the estates a value higher than the proposed settlement amount.  **Second**, approval of the JV Settlement Agreement will result in the payment of the Settlement Payment to the Debtors, which will immediately benefit the estates and their stakeholders in a case where every dollar matters.  **Third**, despite the Company's best efforts to sell its stake in the Joint Venture, the Debtors unfortunately did not receive a value-

maximizing indication of interest or binding offer from any third-party other than the Mexico JV Partner. **Finally**, the JV Settlement Agreement critically enjoys the support of the DIP Lenders and the Creditors' Committee.

16. For the foregoing reasons, and for the reasons set forth below, the Debtors respectfully submit that the JV Settlement Agreement satisfies the standards for approval under applicable law and that the Court should therefore approve the JV Settlement Agreement pursuant to Bankruptcy Rule 9019.

### Request of Waiver of Stay

17. To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

### Waiver of Memorandum of Law

18. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

19. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any

particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

20. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

21. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the United States Trustee for the District of New Jersey; (b) the Committee[5]; (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the DIP Agent and counsel thereto; (e) Davis Polk & Wardwell, LLP, and Greenberg Traurig, LLP, in their capacity as counsel to the Prepetition ABL Agent; (f) the indenture trustee to the Debtors' Senior Unsecured Notes; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the U.S. Securities and Exchange Commission;

---

[5] On May 5, 2023, the United States Trustee for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 218].

(j) the attorneys general in the states where the Debtors conduct their business operations; (k) the monitor in the CCAA proceeding and counsel thereto; (*l*) the Debtors' Canadian Counsel; (m) the Non-Debtor Parties; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: September 15, 2023

/s/ *Michael Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
         wusatine@coleschotz.com
         fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:   (212) 446-4900
Email:    joshua.sussberg@kirkland.com
         emily.geier@kirkland.com
         derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*