PASHMAN STEIN WALDER & HAYDEN, P.C.
Joseph C. Barsalona II, Esq.
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 488-8200
Email:     jbarsalona@pashmanstein.com

-and-

SHIPMAN & GOODWIN LLP
Eric S. Goldstein, Esq.
Jessica M. Signor, Esq.
One Constitution Plaza
Hartford, Connecticut 06103
Telephone: (860) 251-5000
Email:     egoldstein@goodwin.com
           jsignor@goodwin.com

*Attorneys for Gartner, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., et al. | Case No. 23-13359 (VFP) |
| Debtors.¹ | (Jointly Administered) |

**MOTION OF GARTNER, INC. FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to 11 U.S.C. § 503(b), Gartner, Inc. ("Gartner") moves for the allowance of an administrative expense claim in the amount of $15,333.47, for the unpaid pro-rata, post-petition fees incurred by Bed Bath & Beyond Inc. (the "Debtor" and its affiliated debtors,

---

1 The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

collectively, the "Debtors") for subscription-based research and related services related to human resources for the month of August, 2023. Subsequent to the Petition Date (defined below), the Debtor continued to use the Services (defined below) provided under the Human Resources Service Agreement (defined below). Accordingly, Gartner is entitled to an administrative expense claim for the pro-rata, post-petition subscription-based fees arising from the continued use of services during the period of August 1 through August 31, 2023.[2]

In support of its Motion, Gartner relies on the Declaration of Paul Kindred (the "Kindred Certification"), which is annexed hereto as **Exhibit 1**, and further states as follows:

I. **JURISDICTION, VENUE, AND STATUTORY PREDICATES**

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). Gartner confirms its consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order in connection with the Motion consistent with Article III of the United States Constitution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by this Court.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408-1409.

3. The statutory basis for the relief requested herein is 11 U.S.C. § 503(b).

---

[2] Gartner reserves all of its rights to file an additional administrative expense claim covering the period of April 23, 2023 through July 31, 2023, and thereafter, and for services rendered on a post-petition basin under any other agreements that Gartner may have with any of the Debtors.

**II.    FACTUAL BACKGROUND**

    **A.    The Human Resources Service Agreement**

4.    Gartner and the Debtor are parties to that certain Human Resources Service Agreement dated on or about December 30, 2021 (the "Human Resources Service Agreement"). Pursuant to the Human Resources Service Agreement, Gartner provided the Debtor with a two-term subscription from January 1, 2022 to December 31, 2022 and January 1, 2023 to December 31, 2023, respectively, for subscription-based research and related services relating to Gartner for Chief Human Resource Officers services, as set forth in greater detail therein (the "Services"). A true and accurate copy of the Human Resources Service Agreement is annexed as **Exhibit A** to the Kindred Certification.

5.    The annual membership fee for the Human Resources Service Agreement for January 1, 2023 through December 31, 2023, is $171,300, plus applicable New Jersey tax, which Gartner bills annually in advance. *See* Ex. A, at 2.

6.    On May 3, 2023, Gartner issued the Debtor Invoice No. 1201134 for the term of April 2023 to December 2023, which covered part of the second term of the Human Resources Service Agreement in the amount of $138,001.20 (the "Human Resource Invoice"). A true and accurate copy of the Human Resource Invoice is annexed to the Kindred Certification as **Exhibit B.**

    **B.    The Bankruptcy Case**

7.    On April 23, 2023 (the "Petition Date"), the Debtors each filed petitions under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their business and managing their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3

8. On September 11, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "Plan") (ECF No. 2160). Pursuant to the terms of the Plan, on "the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, assumed and assigned, or included in a Rejection Notice shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code". (ECF No. 2160, Art. V, § A.)

9. The Human Resources Service Agreement was not addressed in the Plan, previously rejected, assumed, assumed and assigned, or included in a rejection notice; thus, as of the Effective Date (as defined in the Plan), the Human Resources Service Agreement will be deemed rejected.

    C. **The Debtor's Failure to Pay Post-Petition Amounts With Continued Usage of the Services**

10. On a post-petition basis, the Debtor has continued to access and use the Services provided under the Human Resources Service Agreement but has failed to pay for same. Annexed as **Exhibit C** to the Kindred Certification is a true and accurate copy of the report showing the Debtor's usage of the Services from April 23, 2023 to August 31, 2023.

11. For example, from August 1 through August 31, 2023, the Debtor accessed documents included as part of the Services on ten (10) occasions. The Debtor also had active users with logins utilizing the Services during the applicable period. Annexed as **Exhibit D** to the Kindred Certification is a spreadsheet showing the date and document accessed during August 2023 under the Human Resources Service Agreement. (*Id*. ¶ 12; Ex. D.)

12. By way of further example, between August 1 and August 31, 2023, the Debtor had no fewer than three (3) calls scheduled with Gartner to discuss navigating the

4

uncertainty the Debtors' employees are experiencing during these bankruptcy cases. (*Id.* ¶ 13; Ex. C.)

13. Moreover, as evidenced by its ongoing use of the Services, such Services are beneficial to the Debtor's ongoing effort to operate during the Debtors' bankruptcy cases; indeed, such Services address a wide range of strategic information related to human resource issues. (*Id.* ¶ 14.)

14. To date, the Debtors have not paid any portion of the Human Resource Invoice, including that pro-rata portion covering August 1 through August 31, 2023. (*Id.* ¶ 14.)

### III. RELIEF REQUESTED

15. Gartner hereby requests the allowance of $15,333.47 representing the pro-rata, post-petition amounts due under the Human Resources Services Agreement as an administrative expense for the period of August 1 through August 31, 2023, under 11 U.S.C. § 503(b)(1)(A) because such amounts were an "actual, necessary cost and expenses of preserving the estate."

### IV. ARGUMENT

16. Section 503(b) provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." "[T]o qualify for administrative priority, an expense 'must arise from a [post-petition] transaction with the debtor-in-possession' and the expense 'must be beneficial to the debtor-in-possession in the operation of the business.'" *In re Marcal Paper Mills*, 650 F.3d 311, 314-15 (3d Cir. 2011) (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999)).

17. Here, Gartner meets the two-prong test to establish an administrative expense claim under 11 U.S.C. § 503(b)(1)(A). The first prong must be read in the context of the United States Supreme Court's explanation of a bankruptcy estate's obligations under an executory contract prior to making an election to assume or reject:

> If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.

*N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984) (citations omitted). "[A]dministrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection." *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010). Courts outside of this district have similarly held that debtors must pay as an administrative expense the reasonable value of services rendered under executory contracts pending rejection. *See, e.g., In re MEI Diversified, Inc.*, 106 F.3d 829, 832 (8th Cir. 1997) (holding that insurer "is entitled to 'administrative expense priority for the pro rata share of the premium, during the period in which the estate received benefits from the [insurance] contract'"); *In re Home Interiors & Gifts, Inc.*, No. 08-31961-11-BJH, 2008 WL 4772102, at *5–10 (Bankr. N.D. Tex. Oct. 9, 2008) (holding that the creditor was entitled to an allowed administrative expense claim to compensate it for the debtor's post-petition use of the creditor's marks under a prepetition license agreement); *In re Gamma Fishing Co., Inc.*, 70 B.R. 949, 953–55 (Bankr. S.D. Cal. 1987) (holding that the pro-rata portion of unpaid premium from a prepetition insurance contract was entitled to administrative expense priority). Moreover, bankruptcy courts in this circuit have also applied the *Bildisco* "reasonable value of services" standard holding that

6

there is a "presumption that the contract rate is reasonable." *In re Smurfit-Stone Container Corp.*, 425 B.R. at 741. Thus, the continued use of services provided under an executory contract constitutes a post-petition transaction qualifying for administrative expense treatment. *Id.*

18. Here, pending the rejection of the Human Resources Service Agreement, the Debtor continues to use the Services on a post-petition basis but fails to pay for them. (Kindred Certification ¶¶ 11-13,16.) The Debtor accessed the Services for its benefit and the benefit of the other Debtors and the Debtors' employees during the period from August 1 through August 31, 2023. (*See id.* ¶ 11; Exs. C-D.) In particular, during this period, the Debtor accessed documents, included in the Services on ten (10) occasions. (*See id.* ¶ 12.) Also, during this period, the Debtor had active users with logins utilizing the Services. (*See id.*) Moreover, there were no fewer than three (3) calls scheduled with Gartner to discuss navigating the uncertainty the Debtors' employees are experiencing during these bankruptcy cases. (*See id.* ¶ 13.) For example, the Debtors' Chief People Officer and the Debtors' Head of Human Resources for Retail and Supply Chain had calls scheduled with Gartner in August 2023. In addition, Gartner has supported the Debtor with staying current with human resource trends, navigating reductions in work force, navigating crises, and preparing their employees for what is to come. (*See id.* ¶¶ 11-12; Ex. C.)

19. Turning to the second prong, the Debtor's estate benefited from the continued use of the Services under the Human Resources Service Agreement during the post-petition period. The Services were necessary and beneficial to the Debtor's businesses and the preservation of the value of the estate. As discussed above, the Services provide strategic information related to the Debtors' human resource department, which is dealing with

7

unprecedented upheaval and change as a result of the Debtors' bankruptcy filings and sale of substantially all of their assets. (*See id.* ¶ 14.)

20. Because the Debtor actually used the Services under the Human Resources Service Agreement post-petition and those Services were beneficial to the estate, Gartner is entitled to an administrative expense claim under § 503(b) for the value of those Services.

### B. Calculation of Administrative Expense Claim

21. As noted above, the starting point for valuing the unpaid Services rendered by Gartner under the Human Resources Service Agreement is the contractually agreed upon membership fees. *See In re Smurfit-Stone Container Corp.*, 425 B.R. at 741. To appropriately tailor the amount of the administrative expense claim, the contract amount for the Services should be pro-rated by month.

22. The Human Resource Invoice for $138,001.20 represents the contractual fees due and owing under the Human Resources Service Agreement for the Services provided to the Debtor for April 2023 through December 2023. Prorating the Human Resource Invoice on a post-petition month-by-month basis results in the following calculation:

| Date | Pro Rata Amount Owed |
|---|---|
| April 23, 2023 April 30, 2023 | $4,088.93 |
| May 2023 | $15,333.47 |
| June 2023 | $15,333.47 |
| July 2023 | $15,333.47 |
| August 2023 | $15,333.47 |
| September 2023 | $15,333.47 |
| October 2023 | $15,333.47 |

| November 2023 | $15,333.47 |
| December 2023 | $15,333.47 |

23. Based on the foregoing, Gartner is entitled to an administrative expense claim totaling $15,333.47 for the outstanding, post-petition fees due and owing under the Human Resource Invoice for the period of August 1 through August 31, 2023.

**V.    RESERVATION OF RIGHTS**

24. Pursuant to the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment under Section 503(B)(9), (II) Establishing Amended Scheduled Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving The Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* dated May 31, 2023 (the "Bar Date Order") (ECF No. 584), the Court provided that

> [A]ll persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert an Administrative Expense Claim pursuant to 503(b), other than claims arising pursuant to section 503(b)(9), or 507(a)(2), shall submit a written proof of such Claim so that it is actually received by the Notice and Claims Agent before (a) on July 7, 2023 for claims incurred through June 27, 2023, (b) for all claims arising after June 27, 2023, on the 15th day of the month following the month in which the claim arose, and (c) fourteen days following the effective date of any confirmed plan (the "Administrative Claims Bar Date"), in accordance with this Bar Date Order; provided, however, that notwithstanding anything to the contrary herein, counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected— shall be required to file Administrative Claims no later than July 21, 2023.

Bar Date Order, § 6. Gartner reserves its rights to assert a further administrative expense claim within fourteen (14) days of the Effective Date for all post-petition amounts that may

be due and owing as a result of the Debtors' continued post-petition usage of its services regardless of whether such amounts have been requested in the instant Motion.

## VI. NOTICE

25. Notice of this Motion has been given to: (i) the Debtors; (ii) the United States Trustee; and (iii) any party entitled to receive notice under Federal Rule of Bankruptcy Procedure 2002. Based on the nature of the relief requested herein, Gartner submits that no other or further notice is required.

## VII. STATEMENT REGARDING WHY SEPARATE MEMORANDUM OF LAW UNNECESSARY PURSUANT TO D.N.J. LBR 9013-1(a)(3)

26. Pursuant to D.N.J. L.B.R. 9013-1(a)(3), a separate memorandum of law is unnecessary under the circumstances as all factual and legal bases supporting the Motion and included herewith.

## VII. CONCLUSION

WHEREFORE, Gartner respectfully requests that this Court enter an order (i) granting Gartner an administrative expense claim for the outstanding, pro-rata, post-petition amounts due under the Human Resources Services Agreement for the period of August 1 through August 31, 2023 in the total amount of $15,333.47, and (ii) granting such other and further relief as this Court deems necessary, just, and proper.

Dated: September 15, 2023                Respectfully submitted,

                                             */s/ Joseph C. Barsalona II*
PASHMAN STEIN WALDER & HAYDEN, P.C.
Joseph C. Barsalona II, Esq.
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 488-8200
Email:    jbarsalona@pashmanstein.com

-and-

SHIPMAN & GOODWIN LLP
Eric S. Goldstein, Esq.
Jessica M. Signor, Esq.
One Constitution Plaza
Hartford, Connecticut 06103
Telephone: (860) 251-5000
Email: egoldstein@goodwin.com
jsignor@goodwin.com

*Attorneys for Gartner, Inc.*