UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., et al | Case No. 23-13359 (VFP) |
| | (Jointly Administered) |
| Debtors | |

**BRIEF
OF CREDITOR F3 METALWORX, INC. IN SUPPORT OF MOTION FOR THE
ALLOWANCE AND PAYMENT OF POST-PETITION STORAGE CHARGES OF
$23,437 THROUGH OCTOBER 2023 AS AN ADMINISTRATIVE EXPENSE AND FOR
PAYMENT OF $3,750 PER MONTH AS A CONTINUING ORDINARY COURSE
ADMINISTRATIVE EXPENSE**

Of Counsel and On The Brief:
Merrill M. O'Brien, Esq.

O'Brien Thornton LLC
160 Park Street
Montclair, NJ  07042
T: 973-886-8853
F: 973-354-8029
obrien@obrienthornton.com
     and
Joseph A. Anesta, Esq.
Cameron & Mittleman LLP
301 Promenade Street
Providence, RI 02908
T: 401-331-5700
F: 401-331-5787
janesta@cm-law.com
*Attorneys for Creditor F3 Metalworx, Inc.*

**Introduction**

Creditor F3 Metalworx, Inc. ("F3") moves for the allowance and payment of post-petition storage charges of $23,437 through October 2023, pursuant to a storage contract which the debtor Bed Bath & Beyond, Inc. ("BBB") has neither rejected nor assumed. BBB has stored 125 pallets of its shelving equipment known as Valance Bands which BBB utilizes as needed for fit-up of BBB's retail leaseholds. BBB has sold many of its 360 leases during its post-petition Chapter 11 and is believed to continue to market its remaining leases.

The F3/BBB Storage Contract is an enforceable, executory contract which has benefitted the debtor's estate, thereby entitling F3 to the requested relief, including an Order requiring BBB to make future ordinary course payments at the contract rate of $3,750 per month.

**Statement of Facts**

The facts set forth in the 9/25/2023 Declaration of Jason S. Paglia ("Paglia Dec.") are incorporated by reference and are summarized herein. In his 12/14-15/2021 emails, BBB's Scott Csordos solicited and accepted F3's offer of the following warehouse services at the stated charges for 20 truckloads of pallets of BBB's Valance Bands.

- Pallet build and shrink wrap- $11 Per Pallet
- Order Processing- $8.50 per order
- Storage $30.00/Pallet per month
- Banding- $9.00 per pallet if requested
- Palletized Truckload in/out- $400.00
- Labels- $1.00 Each

Paglia Dec. Exs. A and B. From 12/21/2021 – 1/5/2022, BBB shipped the Valance Bands to a warehouse commissioned by F3 to store the Bands until F3 could make the space needed for the storage of the Bands in the F3 warehouse. See bills of lading, Paglia Dec. Ex. C. F3 has invoiced BBB for the stored Valance Bands at the agreed monthly rate of $3,750, without dispute. Paglia Dec. Ex. D, and para. 12.

1

On 8/3/2023, BBB's counsel emailed F3's counsel stating, "Your client may resell or recycle the products as they wish. The Company will not be accepting any of the shipments." Paglia Dec. Ex. F. On the same day, BBB's Manager – Store Set Up, Tom Campbell, emailed the following requests directly to F3's President Paglia, with a specific reference to "paid valance band inventory":

> Can you or one of your representatives answer the following questions so we will be able to better assist with the inventory.
> - Address where material is currently located?
> - Is there a pallet count and an inventory count for the valance bands?
> - Are the valance bands already packaged in cardboard boxes?
> - 

Paglia Dec. Ex. G. On 8/7/2023, Paglia provided the answers to Tom Campbell's questions, and closed the email asking Mr. Campbell to "please let me know next steps and your overall thoughts." Paglia Dec. Ex. H. Mr. Campbell never responded. Paglia Dec. para. 16.

F3 has not received a Rejection Notice, as referenced in paragraph 117 of the 9/14/2023 Order approving BBB's Plan and Disclosure Statement, ECF Doc. 2172. To F3's knowledge the BBB/F3 Storage Contract does not appear on any schedule of Rejected Executory Contracts and Unexpired Leases filed by BBB. Paglia Dec. para. 4. BBB's Notice and Claims Agent, Kroll Restructuring Administration LLC ("Kroll"), has informed F3's counsel that Kroll has no record of any communications with F3 regarding the F3/BBB storage contract, and that Kroll will only be addressing the pre-petition claims in F3's BBB claim #12397 in the processes outlined in BBB's Plan and Disclosure Statement.

The storage fees quoted to BBB's Scott Csordos are reasonable for the storage services BBB contracted for, and continues to receive. The storage contract has allowed BBB to keep its Valance Bands accessible during BBB's attempt to maximize the value of its leaseholds during its reorganization efforts. (BBB's Amended Disclosure Statement filed 7/31/2023, Doc 1690, p.

2

43, indicates that as of its Petition Date BBB operated 360 stores.)  The storage contract also allows BBB to avoid the storage charges BBB was incurring with Caliber Golbal.  Paglia Dec. paras. 17-18.

BBB's Second Amended Joint Chapter 11 Plan, filed 9/14/2023, Doc 2172, allows BBB until "the Effective Date" or thereafter, to assume or reject the F3/BBB storage contract.  See Plan Article V.  The Effective Date has not yet occurred.  See Plan Definition 62, Doc 2172, page 87 (Plan page 11).

## LEGAL ARGUMENT

### Jurisdiction

The Court has jurisdiction over this contested matter. 28 U.S.C. §§ 1334(b) & 157(b)(2)(B) (giving bankruptcy courts jurisdiction over the allowance of claims asserted against the estate), and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Court may enter a final order on issues integral to allowance of claims. Stern v. Marshall, 564 U.S. 462, 499 (2011).

### POINT I
### F3 METALWORX IS ENTITLED TO THE ALLOWANCE AND PAYMENT OF POST-PETITION STORAGE FEES AS AN ADMINISTRATIVE EXPENSE.

**A. The F3/BBB Storage Contract Is An Enforceable, Executory Contract.**

BBB's Scott Csordos solicited, and received, an offer from F3's Shaun Coletta to store 20 truckloads of BBB's Valance Bands, because Caliber Global's storage services were failing BBB. Paglia Dec. paras. 7-12, Exs. A-C.  F3's Coletta provided pricing.  BBB accepted the offer, and then shipped the Bands to the storage facility F3 provided.  *Id.*  Thus, the facts establish an offer to store at specified prices, acceptance, and performance.

3

"Where parties agree on essential terms and manifest an intention to be bound by such terms, an enforceable contract is created." In re The Score Board, Inc., 238 B.R. 585, 590–91 (D.N.J.,1999) citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). "[T]he manifestation of mutual assent is usually had by an offer and an acceptance either in words or by conduct." Id., citing Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953), and Weichert, 128 N.J. at 436. BBB's delivery to F3, and F3's acceptance of and invoicing for, 125 pallets of BBB's Valance Bands irrefutably confirms the parties' mutual assent. Paglia Dec.

The F3/BBB storage contract falls within the "Countryman" definition of "executory contract" because it is characterized by reciprocal obligations continuing into the future. "[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (C.A.3 (Pa.),1989), quoting Countryman, *Executory Contracts in Bankruptcy, Part 1,* 57 Minn.L.Rev. 439, 460 (1973). F3 agreed to provide storage services and warehouse space at specified prices, BBB agreed to pay those specified prices and delivered its Bands for storage, and F3 has provided and continues to provide the requested storage services. Neither party has completed its obligation to the other under the storage contract. Performance remains due by both parties. Paglia Dec.

**B. Both (i) BBB's Ability To Assume Or Reject The Storage Contract, And (ii) F3's Post-Petition Storage Services To BBB, Each Qualify As A Separate Benefit Which Supports Administrative Claim Status.**

Section 503(b)(1)(A) of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses ... including the actual, necessary

4

costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). In determining if an expense meets the statutory requirement of "actual" or "necessary" Courts have evaluated whether an expense "benefits" the debtor.[1]

A prodigious line of cases holds that the benefit of the debtor's being able to assume or reject an unexpired lease or executory contract provides the requisite "benefit". "If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services...." N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199 (1984) (citations omitted); *accord*, In re Trans World Airlines, Inc., 145 F.3d 124, 136 (3d Cir. (Del.) 1998) (held: Where the debtor continued to use the leased property prior to rejection, it is liable for the rental payments accruing during the period of use, and that obligation is treated as a § 503 post-petition administrative expense); Matter of Jartran, Inc., 732 F.2d 584, 588 (7th Cir. 1984) (held: the claims of creditors who are induced to supply services to a debtor-in-possession pursuant to a contract that has not been rejected are afforded administrative priority to the extent that the consideration supporting the claim was supplied during the reorganization); In re Goody's Family Clothing Inc., 610 F.3d 812, 818 (3d Cir. (Del.) 2010) (held: "We . . . note that '[w]hen third parties are induced to supply goods or services to the debtor-in-possession

---

[1] "[T]o qualify for administrative priority, an expense 'must arise from a [post-petition] transaction with the debtor-in-possession' and the expense 'must be beneficial to the debtor-in-possession in the operation of the business.'" In re Marcal Paper Mills, 650 F.3d 311, 314-15 (3d Cir. 2011) (citing In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 532-33 (3d Cir. 1999)). Contracts entered into pre-petition filing, which the contracting party continues to perform post-petition, qualify as post-petition transactions which benefit the debtor. In re Bluestem Brands, Inc., 2021 WL 3174911, at *5 (Bkrtcy.D.Del., 2021).

5

pursuant to a contract that has not been rejected, the purposes of [administrative claims] plainly require that their claims be afforded priority,'" quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976).

Thus, the Code requires that BBB pay post-petition storage charges while it decides whether to assume or reject the F3/BBB storage contract.

A second, and independent "benefit" which triggers administrative claim status for F3's post-petition charges, is the storage service itself. BBB need not actually use the Bands it is storing during the post-petition period, to establish a second benefit. The benefit BBB is actually and continuously receiving is the storage itself.

In re Patient Educ. Media, Inc., 221 B.R. 97, 103 (Bankr. S.D.N.Y. 1998) is a case directly on point. In Patient Educ., the debtor entered into a pre-petition contract for the storage of the debtor's video production equipment in a sound stage in the creditor's facility. The debtor challenged the creditor's administrative claim for post-petition storage charges arguing that the stored video equipment failed to benefit the debtor post-petition because the debtor did not use it post-petition, and the buyer of the debtor's business elected not to include the stored equipment in the purchase. *Id.*

The Court soundly rejected the argument that the storage facility failed to benefit the estate. The Court held that the debtor's equipment's continued storage in the creditor's facility constituted "actual use" of the creditor's facility in the preservation of the estate's potential value, under Section 503(b)(1)(A). *Id.,* 221 B.R. at 102–03 ("[The debtor] continued to store its set on [the creditor's] premises—and hence, [the creditor] continued to render performance"). The Court awarded administrative claim status for the creditor's post-petition storage charges at the contract rate of $5,500 per week. *Id.,* 221 B.R. at 104. For the identical reasons articulated in Patient

6

Educ., F3 is entitled to the same relief in this case, i.e., payment of the post-petition storage charges until the debtor rejects the F3/BBB storage contract.

In re Sturgis Iron & Metal Co., Inc., 420 B.R. 716, 741–42 (Bkrtcy.W.D.Mich., 2009) is another decision affirming F3's right to payment. In Sturgis, the Court rejected the argument that there is no benefit to the debtor for an equipment lease where the debtor does not use the leased equipment, and held, after a lengthy discussion of Bankruptcy Act and Code cases, and several Code sections, that the Code requires the debtor to pay the agreed charges incurred post-petition until the debtor rejects the contract.

> This court is well satisfied that the Bankruptcy Code's elimination of the *Copeland* fiction warrants the conclusion it has reached in this opinion—i.e., that the bankruptcy estate, being now the recognized successor to the debtor's leasehold rights immediately upon the commencement of the case, must also now pay under Section 503(b)(1)(A) the agreed upon rent due the lessor as an actual and necessary expense of preserving the estate's rights under the lease.

Id. 420 B.R. at 756. Consistent with the comprehensive analysis set forth in Sturgis, section 503(b)(1)(A) renders BBB's post-petition charges under the F3/BBB storage contract an allowed administrative claim in the precise amount BBB agreed to pay, i.e., $3,750 per month; there is no part of the Code which allows the debtor to pay *less* than the agreed charges which must be paid as an administrative expense while BBB decides whether to assume or reject. *Id.*

To the extent the debtor argues that section 365 does not address the F3/BBB storage contract, Sturgis makes clear that the requirement to pay post-petition charges stems from 503(b)(1)(A) on its own, and not from the treatment of equipment leases set forth in section 365. Sturgis, 420 B.R. at 754–6. Furthermore, section 365(m) makes section 365 applicable to the F3/BBB storage contract because the storage contract falls within the description of "any rental agreement to use real property". 11 USCA § 365(m). BBB transported its Valance Bands from the Caliber warehouse to a specific warehouse which F3 provided, agreeing to pay a rate of rent,

7

i.e., storage charges, which is determined primarily by the amount of space, i.e., real property, whjch BBB's 125 pallets occupy. See Paglia Dec. Exs. A and B. The F3/BBB storage contract has all the elements of an "agreement to use real property" as stated in 11 USCA § 365(m).

Accordingly, BBB is also required to pay the post-petition storage charges pursuant to 11 U.S.C. § 365(d)(3) which states, "[N]otwithstanding" the administrative expense procedure of § 503(b)(1), debtors "shall timely perform all the obligations ... under any unexpired lease of nonresidential real property" that arise between the petition-date and the time the lease is assumed or rejected. This is additional reason the Court should grant the requested relief. [2]

F3's burden of proof in establishing the "benefit" to the estate is by a preponderance. In re Drexel Burnham Lambert Grp. Inc., 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991). All of the above cited cases provide compelling authority that the "benefit" to the estate which entitles F3 to the requested relief is *either* (i) BBB's continued ability to assume or reject the contract, *or* (ii) the continued service of storing of BBB's property. The benefit does not "have to be substantial" to qualify. In re Women First, 332 B.R. at 121. As stated in In re Energy Future Holdings Corp., 990 F.3d 728, 741–48 (C.A.3 (Del.), 2021):

> "Although the amount to be allowed as an administrative expense must be measured in dollars and cents ... the question whether the estate has been benefited cannot be so narrowly confined." Matter of TransAmerican Nat. Gas Corp., 978 F.2d 1409, 1420 (5th Cir. 1992). That is because the concept of "necessary costs" in the 503(b)(1)(A) context is broader than one of absolute requirement, and "less readily calculable benefits, such as the ability to conduct business as usual," can qualify. *Id.* at 1416; *see also* Pennsylvania Dep't of Envt'l Res. v. Tri-State Clinical Labs., Inc., 178 F.3d 685, 689-90 (3d Cir. 1999) (providing that "usual and necessary costs should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible") (internal quotation marks and citation omitted). The benefit analysis—a judicial gloss on the underlying statutory concept of what is necessary—must reflect this

---

[2] F3 reserves its rights to collect its unpaid pre-petition storage charges under 11 USCA § 365(m) from the Claims Agent in accordance with the Plan, after BBB decides whether to assume or reject.

broader conception of necessity. See Matter of H.L.S. Energy Co., Inc., 151 F.3d 434, 438 (5th Cir. 1998).

The contract rate is presumed to set the reasonable value of the benefit. In re Dant & Russell, Inc., 853 F.2d at 707; In re Thompson, 788 F.2d at 563; 4 *Collier* ¶ 503.06[6][c][ii], at 503–40. The fact that BBB had not yet rejected the F3 storage contract, is additional proof of its value to the debtor's reorganization.

In addition, the Paglia Declaration establishes that the agreed charge of $3,750 per month is the fair value of the benefit to the estate, Paglia Dec. para. 17, as does BBB's agreement that $30 per pallet per month is a appropriate charge, Paglia Dec. Exs. A and B. See In re Aerospace Technologies, Inc., 199 B.R. 331, 339–40 (Bkrtcy.M.D.N.C.,1996) ("It is well established that providing storage for property of the estate constitutes 'preserving the estate' within the meaning of § 503(b)(1)(A) and that post-petition storage costs therefore may be granted administrative expense priority. *See In re Great Northern Forest Products, Inc.,* 135 B.R. 46, 59 (Bankr.W.D.Mich.1991). *see also* 3 L. KING, COLLIER ON BANKRUPTCY ¶ 503.06, at 503–24 (15th ed. rev.1991) (describing the actual and necessary expenditures eligible for § 503(b)(1)(A) priority status as including 'expenditures of the trustee in operating the business of the estate, *for storage of property,* for rent....'.) "The contract rate is presumed to set the reasonable value." In re Patient Educ. Media, Inc., *supra*, 221 B.R. 97, 104 (Bkrtcy.S.D.N.Y.,1998).

C. **BBB's Counsel's 8/3/2023 Email Does Not Effect A Rejection Of The F3/BBB Storage Contract.**

BBB's counsel's 8/3/2023 email stating, "Your client may resell or recycle the products as they wish. The company will not be accepting any of the shipments," Paglia Dec. Ex. F, does not operate as a rejection of the F3/BBB storage contract, or an effective abandonment of BBB's

9

Valence Bands. BBB obtained a specific Order Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases, entered 5/17/2023, Doc 382, which states "No Contract shall be deemed rejected absent entry of an applicable Rejection Order," at page 4. F3 has received no Rejection Order and no Rejection Notice, pursuant to this Order.

In addition, 11 U.S.C. § 363 governing use, sale, or lease of the debtor's property, § 365 governing assumption or rejection of executory contracts, and § 554 governing abandonment of the property of the estate, all require "notice and a hearing" and "the court's approval" before the debtor is permitted to use, sell, lease, or abandon its property, or reject its executory contract. 11 U.S.C. § 363, 365, 554. To date, BBB has not rejected the F3/BBB storage contract, or obtained the Court's approval to abandon its Valence Bands.

In addition, 11 U.S.C. 541 renders the Valance Bands the debtor's property, and the Automatic Stay, 11 U.S.C. 362, prohibits any action regarding the Bands without relief from the Stay. Because BBB has not yet assumed or rejected the F3/BBB storage contract, the Court should order BBB to pay the post-petition storage charges, and to stay current on the monthly storage charges going forward.

## **Conclusion**

For the reasons stated above, pursuant to §§ 503(b)(1)(A) and 507(a) of the Bankruptcy Code, this Court should enter an Order allowing and requiring payment of post-petition storage charges of $23,437 through October 2023, to creditor F3 Metalworx, Inc., and requiring BBB to make future ordinary course payments at the contract rate of $3,750 per month.

                                    Respectfully submitted,

Dated: September 28, 2023         s/Merrill O'Brien
                                    O'Brien Thornton LLC
                                    obrien@obrienthornton.com
                                    160 Park Street

Montclair, NJ  07042
973-886-8853
Joseph A. Anesta, Esq.
Cameron & Mittleman LLP
janesta@cm-law.com
301 Promenade Street
Providence, RI 02908
T: 401-331-5700