**Exhibit 9**

**Michaels' Letter Submitted to the Court on September 25, 2023**



| Kenneth A. Rosen | One Lowenstein Drive |
| Of Counsel | Roseland, New Jersey 07068 |

**T**: (973) 597-2548
**F**: (973) 597-2549
**E**: krosen@lowenstein.com

September 25, 2023

<u>VIA E-MAIL</u>
Honorable Michael B. Kaplan, Chief U.S.B.J.
Honorable Vincent F. Papalia, U.S.B.J.
United States Bankruptcy Court for the District of New Jersey
Newark, NJ 07102

Re:   In re Bed Bath & Beyond, Inc., *et al.*
      Case No. 23-13359 (VFP)
      Proposed Sale and Assignment Order – Rogers, Arkansas Store #1142 – to Michaels Stores

Dear Chief Judge Kaplan and Judge Papalia:

We, together with White & Case LLP, as co-counsel to Michaels,[1] write in reply to the Landlord's objection to Michaels' proposed form of order and related letter dated September 23, 2023, which request that the Court (i) permit the Debtors to exercise their fiduciary out to accept Hobby Lobby's bid or, in the alternative, (ii) strike certain provisions regarding, among other things, Michaels' good faith from the proposed order approving the sale and assignment of the Lease to Michaels. Both of those arguments lack merit.

    I.    **Michaels' Bid Was, and Remains, Highest and Best**

Michaels submitted the highest and best—indeed, only—bid for the Lease at the Court-approved auction. The Landlord argues that Michaels' bid was not the "highest and best" because the Landlord and Hobby Lobby have made purportedly greater untimely, non-compliant bids after the auction. This argument fails for at least three reasons.

*First*, the Landlord did not object to the assignment to Michaels on the grounds that Michaels was not the highest and best bid. *See* Aug. 30 Transcript at 111:7–10 (finding, after confirming with the objecting parties, that "the objections that are the focus of today's hearing relate exclusively to the tenant mix and exclusive use provisions in the leases and only those grounds, 365(b)(3)(C) and (D), as acknowledged by the parties"). The Landlord cannot raise it now.

*Second*, the Landlord's and Hobby Lobby's untimely bids are not "Qualified Bids" under the Procedures Order and therefore, by definition, cannot be highest and best. *See* Procedures Order § D. The Landlord has never offered, and cannot offer, any excuse for its failure to bid on the Lease at the auction. And Hobby Lobby's conduct is even more egregious, having waited until after the Court held an evidentiary hearing and approved the sale and assignment to Michaels before submitting a competing bid. The Court should reject the Landlord's invitation to overrule the Procedures Order by ruling these untimely and non-compliant bids "highest and best."

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in Michaels' letter dated September 22, 2023.

Even assuming that the Debtors could have entertained the Landlord's improper bid prior to the sale hearing pursuant to the Debtors' fiduciary out, the fiduciary out is not a remedy for a bidder who failed to (i) attend the auction, (ii) make a bid prior to the sale hearing, and/or (iii) appear at the sale hearing where the Court approved the highest and best bidder. Nor is it a remedy to overturn a court's ruling in order to cure a bidder's failures. Finality and the integrity of the Court-approved sale process are important policy considerations that must be weighed against use of a fiduciary out to upset a bid after the close of an auction, much less approval of a lease sale and assignment at a sale hearing.

***Third***, a condition of the Procedures Order is that each qualified bidder participating at an auction is required to confirm on the record at the auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its qualified bid is a good-faith *bona fide* offer. *See* Procedures Order § I.iv. Indeed, in accordance with the Procedures Order, at the auction and in connection with its bid, each bidder attested that it had not engaged in collusive bidding. *See* Docket No. 1397 (June 26, 2023 Auction Transcript), at 10:9 –11:5; Procedures Order § I.iv (terms of lease auction); *see also* Procedures Order Ex. C, Bidder Registration Form § i. Even if they were eligible to bid (and they are not), neither the Landlord nor Hobby Lobby satisfies these requirements. As demonstrated in Michaels' prior letter, the Landlord and Hobby Lobby were colluding about wresting the Lease from Michaels almost immediately after the auction concluded.

## II.    Michaels Has Acted in Good Faith

As an initial matter, no party disputes that Michaels' participation at the auction was in complete good faith: Michaels complied with all requirements under the Procedures Order, and submitted the highest and best (indeed, only) bid. The Landlord's arguments concerning Michaels' actions ***after*** the auction—which are the sole focus of the Landlord's objection—fail. Michaels' conduct during and after the auction did not constitute bad faith because its conduct did not "involve fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (citing *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978); *see also Taylor v. Lake (In re Cada Invs.)*, 664 F.2d 1158, 1162 (9th Cir. 1981) ("Courts have generally appeared willing to set aside confirmed sales that were 'tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction.'")). Instead, Michaels complied with the "requirement that a purchaser act in good faith ... [which] speaks to the integrity of [its] conduct in the course of the sale proceedings." *Id.*

Indeed, Michaels' actions after the auction have been entirely in reaction to the **Landlord's** improper conduct: first, increasing its bid to $850,000 to counter the Landlord's untimely and non-compliant bid, and second, agreeing to increase its bid in order to make the Debtors' estates whole for anticipated litigation costs in an amount up to $150,000 to counter the Landlord's litigation tactics (which this Court agreed were overbroad and unduly burdensome). *See* Aug. 11, 2023 Discovery Dispute Hearing Transcript, at 26:22–25. Michaels cannot be guilty of bad faith for defending the results of a Court-approved auction from the Landlord's attempts to undermine those results.

Finally, contrary to the Landlord's letter, the Debtors have always sought a good faith finding on account of the sale and assignment to Michaels. *See* Debtors' Motion [Docket No. 193] at ¶ 54 ("The Debtors submit that any Successful Bidder will be deemed a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code…"); Procedures Order § J ("At each Lease Sale Hearing, the Debtors shall make a record of these findings and any order approving the Lease Sales shall include such [good faith] findings in order to approve the sale to the Successful Bidder(s) or Backup Bidder(s), pursuant to 11 U.S.C. § 363(m)."). Additionally, in its bid, Michaels warranted and represented that its bid was a "good faith, bona fide, irrevocable offer to purchase the Lease Asset(s)." *See* Michaels' Bidder and Registration Form § e (dated June 22, 2023). And in the sale and assignment agreement specific to the Lease, the

section 363(m) finding is a condition precedent to Michaels' purchase. *See* Michaels Proposed Order Ex. 1, Assumption and Assignment Agreement § 7. There were no objections by any party—including the Landlord—to the good faith finding that Michaels sought.

### III. Sanctioning the Landlord's and Hobby Lobby's Actions Would Threaten the Integrity of This and Future Bankruptcy Auctions

Secret bidding after the close of an auction, particularly from parties who knew about the auction and had the opportunity to submit a bid at the auction (like the Landlord), gives the secret bidder an unfair advantage and hurts a debtor's ability to get the most value for its assets because (a) bidders are not assured of the finality and integrity of an auction and (b) secret bidding outside of an auction undermines competitive bidding. A bid deadline and the close of bidding at an auction promotes finality, especially in cases where time is of the essence, such as here where the Debtors could not continue to pay rent related to the leases at issue, including the Lease. By permitting untimely bids, courts allow late bidders to subvert the judicial process by both disregarding the importance of time constraints to the success of an auction and piggybacking on the information that other parties assembled instead of fostering competition among bidders in an open, transparent environment. *See In re Stanley Engineering Corp.*, 164 F.2d 316, 319 (3d Cir. 1947) (explaining that "nothing will more certainly tend to discourage and prevent bidding than a judicial determination that the highest bidder may be deprived of the advantage of his accepted bid by an offer of another person, subsequently made, to bid higher on resale"); *In re Sunland, Inc.*, 507 B.R. 753, 760 n.4 (Bankr. D.N.M. 2014) (citing *In re Bigler, LP*, 443 B.R. 101, 112 (Bankr. S.D. Tex. 2010) (explaining that "an unimpeachably-conducted auction based on clear procedures may not be reopened solely for the reason of a higher bid after the close of the auction")).

What the Court decides in this case will be relied on in future cases. This Court should join the long line of precedent that supports placing the integrity of the bankruptcy auction process over the ability of a debtor to achieve limited, improved recoveries at the cost of fairness, transparency, and finality.

\* \* \* \* \*

For all of these reasons, the Hobby Lobby bid should be rejected, and the proposed sale and assignment order submitted by Michaels, including the findings related to good faith and highest and best bid, should be approved in its entirety. Michaels reserves the right to respond to the Landlord's other additions and deletions to provisions of Michaels' proposed sale order.

Michaels requests immediate entry of its proposed order memorializing the Bench Ruling. In light of the delays associated with entry of such order, Michaels further requests that it be effective and enforceable immediately upon entry notwithstanding Bankruptcy Rules 6004(h) or 6006(d), or in the alternative, that the Court significantly limit any such potential stay period associated therewith to a matter of days.

Sincerely,

*/s/ Kenneth A. Rosen*
Kenneth A. Rosen, Esq.


cc:   Kelley Drye Warren (via email)
      White & Case (via email)
      Kirkland & Ellis (via email)
      Cole Schotz (via email)