| | |
|---|---|
| **THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> *Caption in Compliance with D.N.J. LBR 9004-1(b)* <br> **BRYAN CAVE LEIGHTON PAISNER LLP** <br> Brigid K. Ndege, Esq. (NJ Bar No. 55032014) <br> 161 North Clark Street, Suite 4300 <br> Chicago, Illinois 60601 <br> (312) 602-5104 <br> brigid.ndege@bclplaw.com <br><br> -and- <br><br> Jarret P. Hitchings, Esq. <br> One Wells Fargo Center <br> 301 S. College Street, Suite 2150 <br> Charlotte, North Carolina 28202 <br> (704) 749-8965 <br> jarret.hitchings@bclplaw.com <br><br> *Counsel to Ben Rosenzweig and Marjorie L. Bowen* <br><br> **KRIEGER KIM & LEWIN LLP** <br> Nick Lewin, Esq. <br> 350 Fifth Avenue, 77th Floor <br> New York, New York 10118 <br> (212) 390-9559 <br> Nick.Lewin@KKLllp.com <br><br> *Counsel to Shelly Lombard* | |

In re:

BED BATH & BEYOND INC., *et al.*,[1]

Debtors.

Case No. 23-13359 (VFP)

Chapter 11
(Jointly Administered)

Hearing Date: October 24, 2023 at 10:00 a.m.

## BEN ROSENZWEIG, MARJORIE L. BOWEN, AND SHELLY LOMBARD'S MOTION FOR ENTRY OF AN ORDER ALLOWING THE ADVANCEMENT AND PAYMENT OF DEFENSE COSTS PURSUANT TO THE DEBTORS' D&O INSURANCE POLICY

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

Ben Rosenzweig, Marjorie L. Bowen, and Shelly Lombard ("Movants"), by and through their undersigned counsel, hereby submit this motion (this "Motion"), pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-4 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") for entry of an order authorizing the disbursement of insurance proceeds by Zurich American Insurance Company ("Zurich" or the "Insurer") under Side A of the Directors & Officers Liability Insurance Policy No. 8702221-00 (the "D&O Policy") issued by Zurich to debtor Bed Bath & Beyond, Inc ("BBBY") to fund Defense Cost, Inquiry Costs and other Loss (as each term is defined in the D&O Policy) incurred in connection with certain confidential matters noticed in accordance with the D&O Policy. In support of this Motion, Movants respectfully state as follows:

**Jurisdiction, Venue and Statutory Predicates**

1.     On April 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors continue to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner. On May 5, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). *See* Docket No. 218.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding

1

within the meaning of 28 U.S.C. § 157(b)(2), and Movants confirm their consent to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory and other bases for the relief requested in this Motion are sections 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-4.

**Relevant Background**

**A.    The Debtors and the Movants**

5.  The Debtors are the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more. The Debtors commenced these chapter 11 cases to commence an orderly and value-maximizing wind down of their business, including through a sale of all or part of their business.

6.  Prior to the Petition Date, Movant Rosenzweig served as a director of BBBY. Mr. Rosenzweig was appointed to the BBBY board of directors (the "BBBY Board") on or about March 24, 2022 and served until his resignation on and effective December 20, 2022.

7.  Similarly, prior to the Petition Date, Movant Bowen was appointed to the BBBY Board on or about March 24, 2022 and served until her resignation on and effective February 11, 2023.

8.  Prior to the Petition Date, Movant Lombard was appointed to the BBBY Board on or about March 24, 2022.

**B.     The D&O Policy**[2]

9.      In the ordinary course of business, the Debtors obtained director and officer liability insurance in order to protect the company's directors and officers, the pertinent portion of which is commonly referred to as Side A coverage,[3] and in addition for purposes of potential corporate liabilities (generally, the "D&O Insurance").

10.     For the policy period running from September 15, 2021 to September 2022 (the "Policy Period"), the Debtors maintained the D&O Policy issued by Zurich with an aggregate limit of liability of $10,000,000. A copy of the D&O Policy is attached hereto as **Exhibit A**.

11.     The D&O Policy is a "claims-made" policy[4] covering the Policy Period. The D&O Policy provides Side A, Side B,[5] and Side C[6] coverage, as more fully set forth in the policy. The D&O Policy contains a "Payment Priority" provision that states as follows:

> If the Loss due and owing by the Underwriter exceeds the then-remaining Limit of Liability applicable to such Loss, the Underwriter shall pay such Loss, subject to the applicable Limits of Liability, in the following priority: 1. ***First, the Underwriter shall pay Loss covered under Insuring Clause A [Side A]***; 2. Second, the Underwriter shall pay Loss covered under Insuring Clause B, Insuring Clause C and Insuring Clause E; 3. Third, the Underwriter shall pay Loss covered under Insuring Clause D.

D&O Policy at V.L.

---

[2] Any description of the D&O Policy in this Motion is qualified in its entirety by the express terms of the D&O Policy and any conflict between such description and the terms of the D&O Policy shall be resolved in favor of the D&O Policy.

[3] Side A coverage applies to coverage for Claims directly against an individual insured person for which the Debtors do not or cannot indemnify such person as provided under the terms of the policy. Side A coverage is not available to the Debtors and is therefore not property of the Debtors' estates.

[4] Generally speaking, a "claims-made" policy is an agreement by the insurer to indemnify the insured against all Claims (as defined therein) made during the policy period (or some other specified period) for Wrongful Acts (as defined therein) committed or attempted prior to the policy expiration (or within some other specified period).

[5] Side B coverage generally applies to claims by the Debtors for reimbursement of Loss that the Debtors are required or permitted to pay in connection with the indemnification of an Insured Person for covered Claims.

[6] Side C coverage generally applies to any loss for Securities Claims first made against the Debtors in their own right.

3

12.     Thus, any payment of losses arising from a covered claim against an Insured Person, including but not limited to a past, present, or future director or officer of the Debtors, has priority over a covered claim against the Debtors themselves. Subject to its other terms, conditions, limitations and exclusions, the D&O Policy further provides that the Insurer will pay on a current basis (*i.e.* no later than ninety (60) days after receipt of invoices) all reasonable and necessary Defense Costs for which the Primary Policy provides coverage. *See* D&O Policy at V.D and V.F.

13.     The D&O Policy further confirms the intent of the contracting parties that the D&O Policy "is intended to protect and shall benefit the Insured Persons." *See* D&O Policy at End. #19.

### C.    Movants' Covered Claims

14.     On or about May 9, 2023, each of the Movants received notice of a non-public, confidential matter directed to Movants and relating to their time on the BBBY Board which will give rise to Defense Costs, Inquiry Costs and other potential Loss which are covered under the D&O Policy (generally, the "Confidential Demand").

15.     The Debtors, Zurich and the Movants agree that the Confidential Demand made to the Movants is the type of action that triggers a right to coverage under the D&O Policy. In addition, there is no dispute that the Movants are Insured Persons (as defined in the D&O Policy) under the D&O Policy. Accordingly, Zurich has agreed to advance Defense Costs, Inquiry Costs and other Loss to the Movants under the D&O Policy pursuant to the D&O Policy's terms, conditions and exclusion subject to its reservation of rights and upon entry of an order of the Bankruptcy Court permitting such advancements.

16.     Because these required advancement funds are available via Side A coverage, Movants respectfully request the Court lift the automatic stay, to the extent it applies, to allow Zurich to make such payments. Movants have consulted with the Debtors and the Plan

Administrator appointed for the Debtors under their confirmed chapter 11 plan, and each has agreed to relief requested herein.

**Relief Requested**

17. By this Motion, Movants seek entry of order, substantially in the form attached hereto as **Exhibit B**, lifting the automatic stay to authorize the disbursement of insurance proceeds under Side A of the D&O Policy to fund Defense Costs, Inquiry Costs and other Loss incurred in connection with matters tendered by Movants under the D&O Policy.

**Basis for Requested Relief**

**I.    The Automatic Stay Does Not Apply**

18. Section 362(a) of the Bankruptcy Code prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541 of the Bankruptcy Code provides that the "estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

19. It is well-settled that insurance policies of the debtor are property of the estate and covered by the automatic stay provision of the Bankruptcy Code. *See, e.g.*, *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004). Nevertheless, courts have distinguished between ownership of a policy and ownership of the *proceeds* of a policy, especially when, as is here, the policy includes an express priority of payments provision requiring that the proceeds be paid to directors and officers Side A coverage ahead of any entity or corporate coverage under Side B or Side C. *See Allied Digital*, 306 B.R. at 511–12; *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 21 (Bankr. E.D.N.Y. 1999) (holding that if the entity coverage is hypothetical and fails to provide

5

some palpable benefit to the estate, it cannot be used by a trustee to lever himself into a position of first entitlement to policy proceeds); *see also Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 216 (3d Cir. 2000) (stating that the "proceeds from a[n] insurance policy should be evaluated separately from the debtor's interest in the policy itself"); *Contractor Creditor's Committee v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir. 1987) (holding that proceeds from Directors and Officers liability insurance policy held by bankrupt corporation were not property of bankruptcy estate); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463–64 (S.D.N.Y. 2004) (holding that even if the directors and officers policies themselves might be estate property, individual insured have a right to use the insurance policies' proceeds to cover their defense and settlement costs in litigation).

20. In determining whether specific proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509; *see also In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (stating the respective rights of debtors and nondebtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under appliable state law."). Courts frequently hold that insurance policies, such as the D&O Policy, containing a priority of payments provision favoring director and officer claims over those of the corporate entity indicate that the debtor's interest in the distributed policy proceeds is subordinated to those of the directors and officers and for that reason are not part of the debtor's estate. *See In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) (finding an "Order of Payments" clause giving first priority to claims from directors and officers as evidence that certain policy proceeds are not to be considered property of the estate).

21. Here, the specific language of the D&O Policy and its Payment Priority provision expressly requires payment first for losses arising from claims against the Insured Persons, to the extent such losses have not otherwise been paid or indemnified, even if the Debtors may be entitled to payment under the D&O Policy. As Payment Priority provision reflects and as made clear in Endorsement No. 19, the very purpose of the D&O Policy is to, first and foremost, protect the Insured Persons, such as the Movants in connection with the Confidential Demand. *Cf. Miller v. McDonald (In re World Health Alts., Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (holding, in the context of a preliminary injunction hearing, that it was likely that the proceeds of the debtor's D&O policies were not property of the estate because the priority of payments provision subordinated the debtor's coverage to that of the directors and officers, thereby rendering the debtor's coverage remote). Accordingly, the proceeds of the D&O Policy should be permitted to be distributed to fund the covered Defense Costs, Inquiry Costs and other Loss incurred by the Movants in connection with the Confidential Demand.

## II. Even if the Automatic Stay Applies, Ample Cause Exists to Lift the Stay

22. Even if the proceeds from the D&O Policy are deemed property of the estate, the Court should lift the automatic stay to permit Zurich to advance covered Defense Costs, Inquiry Costs and other Loss on behalf of the Movants, as Insured Persons, in connection with Confidential Demand. The Bankruptcy Code provides creditors and other interested parties with a mechanism for obtaining relief from the stay under section 362(d) of the Bankruptcy Code.

23. Section 362(d) provides that at the request of an interested party, the court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). "What constitutes 'cause' for the lifting of the stay pursuant to Section 362(d)(1) is not defined in the Bankruptcy Code" but "must be determined on a case by case basis based on an examination of the totality of

circumstances." *In re City of Angel, LLC*, No. 12-80461-G3-11, 2012 WL 6694075, at *3 (Bankr. S.D. Tex. Dec. 21, 2012).

24. Courts have identified various criteria in determining whether cause exists to grant relief from the automatic stay, including "interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (quoting *In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013)). In weighing the harms under Section 362(d), courts acknowledge that the central purpose of D&O policies, such as the D&O Policy in this case, is to protect individual directors and officers. *See, e.g.*, *In re Downey Fin. Corp.*, 428 B.R. at 609–11 (holding that the automatic stay should be lifted to the extent applicable because the directors and officers would otherwise suffer readily identifiable harm if they could not pay defense costs, whereas any harm to the debtor were hypothetical). Here, the totality of the circumstances weighs strongly in favor of granting relief.

25. First, the Debtors' estates will not suffer any harm or prejudice if the Court grants relief from the automatic stay with respect to the D&O Policy. Critically, the Debtor has no present contractual interest in the proceeds of the D&O Policy. Moreover, any covered claims against the Debtors under the D&O Policy would be clearly subordinate to Claims by Movants, as Insured Persons connected with the Confidential Demand by operation of the Payment Priority provisions—making any alleged prejudice entirely hypothetical.

26. Second, the Movants will suffer significant hardship if they are deprived of the ability to access the proceeds of the D&O Policy to fund the Defense Costs, Inquiry Costs and other Loss incurred in connection with the Confidential Demand. *Cf. In re Allied Digital*, 306 B.R.

at 514 (noting that without funding, the directors and officers may be prevented from conducting a meaningful defense to the claims against them and may suffer substantial and irreparable harm). This will, in turn, harm the Debtors as the Movants will have indemnification claims against the Debtors' estates for any amounts they are required to pay out-of-pocket in connection with the Confidential Demand.

27. Therefore, ample cause exists to justify the Court's grant of relief from the automatic stay (in the event it is deemed to apply) to permit Zurich to use the proceeds of the D&O Policy to advance covered Defense Costs, Inquiry Costs and other Loss on behalf of the Movants, as Insured Persons, in connection with the Confidential Demand and any related claims. Based on the above, the Movants submit that the relief requested herein is necessary and appropriate, is in the best interest of its estate and creditors, and should be granted in all respects.

### Reservation of Rights

28. Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim or cause of action against any of the Movants; (b) a waiver of the Movants' rights to dispute any claim or cause of action under applicable law or non-bankruptcy law; or (c) a waiver of the Movants' rights under the Bankruptcy Code or any other applicable law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or cause of action or a waiver of the Movants' rights in any respect.

WHEREFORE, the Movants respectfully request that the Court enter of an order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 3, 2023　　　　　　　　BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Brigid Ndege*
Brigid K. Ndege, Esq. (NJ Bar No. 55032014)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5104
brigid.ndege@bclplaw.com

-and-

Jarret P. Hitchings, Esq.
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, North Carolina 28202
(704) 749-8965
jarret.hitchings@bclplaw.com

*Counsel to Ben Rosenzweig and Marjorie L. Bowen*

KRIEGER KIM & LEWIN LLP

Nick Lewin, Esq.
350 Fifth Avenue, 77th Floor
New York, New York 10118
(212) 390-9559
Nick.Lewin@KKLllp.com

*Counsel to Shelly Lombard*