IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:                      .    Case No. 23-13359-VFP
                            .
BED BATH & BEYOND, INC.,    .    Clarkson S. Fisher U.S.
*et al.*,                   .    Courthouse
                            .    402 East State Street
            Debtors.        .    Trenton, NJ 08608
                            .
                            .    October 3, 2023
. . . . . . . . . . . .    .    2:04 p.m.


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MICHAEL B. KAPLAN AND VINCENT P. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGES


TELEPHONIC APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          By:  ROSS J. FIEDLER, ESQ.
                               EMILY GEIER, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022

For Hobby Lobby           Gibbons P.C.
Stores, Inc.:             By:  ROBERT K. MALONE, ESQ.
                          One Gateway Center
                          Newark, NJ 07102


For Pinnacle Hills,       Kelley Drye & Warren LLP
LLC:                      By:  ROBERT L. LEHANE, ESQ.
                          3 World Trade Center
                          175 Greenwich Street
                          New York, NY 10007


Audio Operator:           Kiya Martin

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (CONTINUED):

For Michaels Stores,          Lowenstein Sandler LLP
Inc.:                         By:  PHILLIP J. GROSS, ESQ.
                              One Lowenstein Drive
                              Roseland, NJ 07068

                              White & Case LLP
                              By:  SAMUEL P. HERSHEY, ESQ.
                              1221 Avenue of the Americas
                              New York, NY 10020

                    - - -

3

1          (Proceedings commenced at 2:30 p.m.)

2          JUDGE KAPLAN:  Good afternoon, everyone.  This is

3  Judge Kaplan.  And we will start our hearing on Bed Bath &

4  Beyond, return to the Arkansas lease issues.

5          We are joined as well by Judge Papalia who should be

6  watching and participating.

7          JUDGE PAPALIA:  I am.

8          JUDGE KAPLAN:  Okay, great.

9          Let me have appearances for the record on behalf of,

10 first we'll start with the debtor.

11         MS. GEIER:  Good afternoon, Your Honor.

12         Emily Geier from Kirkland & Ellis on behalf of the

13 debtors.  With me is my associate, Ross Fiedler.

14         JUDGE KAPLAN:  All right.  On behalf of Hobby Lobby?

15         MR. MALONE:  Good afternoon, Your Honor.

16         Robert Malone, Gibbons P.C. here on behalf of Hobby

17 Lobby Stores, Inc.

18         JUDGE KAPLAN:  All right.  On behalf of Pinnacle?

19         MR. LEHANE:  Good afternoon, Your Honor.

20         Robert LeHane, Kelly Drye & Warren on behalf of

21 Pinnacle Hills, LLC, the landlord.

22         JUDGE KAPLAN:  Great.  Thank you.

23         On behalf of Michaels?  Did we lose anybody?

24         MR. GROSS:  Good afternoon, Your Honor.

25         Phillip Gross, Lowenstein & Sandler, co-counsel for

4

1  Michaels.  And White & Case should be joining.  We may be

2  having some difficulty.  Let me reach out to them to see what's

3  going on there.  Apologies.

4          JUDGE KAPLAN:  No problem.

5          While that goes on, anyone else wish to enter

6  appearances?

7                  (No audible response)

8          JUDGE KAPLAN:  Okay.  So you've all have done your

9  best to make a horrible night last night watching the Giants

10 even worse by having to read pages and pages of voluminous

11 briefings, so through this morning.  In any event, Judge

12 Papalia and I have been discussing what's the best direction.

13 And I understand that Michaels is prepared to put on -- they

14 had a demonstrative exhibit, a PowerPoint, there's been

15 briefing.

16         In an effort possibly to short-circuit it for today,

17 both Judge Papalia and I were inclined to carry this matter for

18 a very short period.  I'm looking at October 12th which is next

19 week, Thursday of next week.  And in the interim, the Court

20 would direct the debtor, the landlord, and Hobby Lobby to

21 provide the communications and the disclosures that are

22 required under the sale proceeding, I guess the procedure order

23 at Document 422.

24         And, specifically, we're referring to Section J in

25 which the debtors shall also notify the bankruptcy court of the

1 backup bidders, if any -- I'm sorry.

2        "The debtors in consultation with the consultation

3 parties shall ascertain whether the successful bidders and the

4 backup bidders are insiders of one or more of the debtors,

5 whether each applicable sale represents an arms-length

6 transaction between the parties made without fraud or

7 collusion, and where there has been any attempt by either party

8 to take any unfair advantage of the other so that a successful

9 bidder or backup bidder may be deemed to be purchasing the

10 lease asset in good fair pursuant to 11 U.S.C. Section 363(m)."

11        That's (j).  And under Section (l) Disclosures,

12 "Qualified bidders shall disclose to the debtors all

13 communications with other qualified bidders following the

14 submission of a qualified bid until the sale of the lease asset

15 is consummated."

16        So the disclosures required by these two sections are

17 not -- they shouldn't be too unwieldy.  It should help develop

18 the record.  I would direct that they be supplied by close of

19 business Monday, October 9th.  That's plenty of time for what

20 should amount to pushing a button or two on the screen and

21 emailing and printing, making it available.  It will help the

22 Court in making appropriate findings and rulings on this

23 matter.  And it will hopefully address certain of the issues.

24        The Court will certainly hear objections that are

25 there on the 12th.  This is not intended to undercut

6

1  objections.  It's simply to have a fuller record.  Along the

2  same lines that led Judge Papalia and I to direct that there be

3  a new auction, that there were concerns about efforts that were

4  not part of the record, communications and actions and

5  agreements.  I think it's appropriate that there be these

6  disclosures and then we can more promptly rule on the merits of

7  the resulting sale.

8          Judge Papalia, anything you wish to weigh in on?

9          JUDGE PAPALIA:  Well, I think, Judge Kaplan, when you

10  were listing the parties who have to make those disclosures,

11  I'm not sure you said Pinnacle which --

12          JUDGE KAPLAN:  That's right.  I'm directing, it's

13  Hobby Lobby, Pinnacle, that's the focal point, obviously.  If

14  there were communications between Michaels and Hobby Lobby or

15  Michaels and Pinnacle, they should be disclosed, as well

16          MR. MALONE:  Concerning, Your Honor, just so we have

17  the clarification, should be all parties meaning if there was

18  anything from Michaels to those parties, as well, correct?

19          JUDGE KAPLAN:  Correct.  That's what I just tried to

20  make clear.  Yes.

21          MR. MALONE:  And it's communications with respect to

22  the bidding or even communications as far as what's the cure

23  amount or things that are maybe tenant fit-up, things of that

24  nature, which I think are outside the bidding?

25          JUDGE KAPLAN:  Well, Section (l) of the disclosures

1  is pretty broad.  It says "Qualified bidders shall disclose to

2  the debtors all communications with other qualified bidders

3  following the submission of a qualified bid until the sale of

4  the lease asset is consummated."

5          I don't want to refine what's there.

6          MR. MALONE:  Well, the reason why I ask for that,

7  Your Honor, is two-fold.  One, it's no secret that our biggest

8  competitor (indiscernible) is Michaels.  And Michaels could do

9  anything they could, whether it be at this hearing or another

10 hearing, to try to hurt Hobby Lobby.

11         If I'm going to submit all communications that may

12 even be about how we're going to go into the lease, made tenant

13 fit-ups, I think that should be in camera.  It should be under

14 confidentiality.  They should not see it.  If the Court needs

15 to satisfy itself as to that there was no funny business going

16 on, there was no collusion, that's one thing.  But to be

17 handing that off to our biggest competitor as to how we may

18 handle leases going forward or anything else, I think that is

19 not part of what is ever contemplated in a 353 sale of assets.

20         This is too important to my client to be revealing

21 how the soup is made to its biggest competitor in the

22 marketplace, Michaels.

23         JUDGE KAPLAN:  Let me hear from others on that.

24         Mr. Hershey, you have your hand raised.

25         MR. HERSHEY:  Yeah.  Can Your Honor hear and see me?

1              JUDGE KAPLAN:  Yes.

2              MR. HERSHEY:  Okay, great.  Good afternoon, Your

3    Honor.

4              Sam Hershey from White & Case on behalf of Michaels.

5              Your Honor, Michaels completely agrees with what the

6    Court has provided.  I mean, look, if Mr. Malone and his client

7    weren't prepared to bid on this lease because they didn't want

8    to follow the procedures in the order the Court entered, they

9    shouldn't have been on the lease.  The procedures are in the

10   order.  They should follow them.  We followed them.  Every

11   other party that bid on every other lease followed them.  They

12   should follow them, too.

13             Moreover, there's nothing, there's no competitive

14   secret hidden in or I can even imagine that would be in these

15   communications.  And to the extent there is, if there's

16   actually confidential proprietary information that Mr. Malone

17   is concerned about, then perhaps he can show it to Your Honor

18   and Your Honor can make a decision whether it really qualifies

19   under that rubric.

20             But the idea that all of these communications should

21   be withheld from Michaels has absolutely no basis.  And,

22   moreover, Your Honor, that's why we have protective orders.

23   That's why we have a protective order in this case so that

24   documents can be shared on an Attorneys' Eyes Only basis.  It

25   happens in literally every case proprietary information is

1  shared among solely advisors.  It's never shared with the

2  client.

3          And unless Mr. Malone is saying that he does not

4  trust White & Case and Lowenstein Sandler to keep all

5  (indiscernible) information from the client, there's no reason

6  that the attorneys who ultimately have to make the argument to

7  Your Honor on behalf of the client can't see that material.

8          The last thing I'll say, Your Honor, is that the

9  landlord sought extensive discovery from Michaels in this case.

10 The auction occurred on June 26th.  The hearing to approve the

11 auction didn't occur until August 30th, and that's because the

12 landlord was entitled to take extensive discovery and sought to

13 compel certain discovery that Michaels was not prepared to

14 produce.  And there was a hearing on that motion.  Michaels has

15 produced voluminous discovery in this case.

16          There is no basis for Mr. Malone not to have to do

17 the same and not to allow Michaels' attorneys who ultimately

18 have to make the judgment about the arguments that we're going

19 to make to see that discovery.  And, again, if there's an

20 issue, Mr. Malone can flag it, we can appear back before Your

21 Honor.  We could appear in camera before Your Honor.  But

22 there's no reason to exclude us from that process.

23          Thank you, Your Honor.

24          JUDGE KAPLAN:  All right.

25          MR. MALONE:  Your Honor, I will produce anything with

1  respect to bidding, as I said.  But I will also raise an

2  objection today that should be considered by this Court.

3  Section 363 and Your Honor talks about who has standing to

4  object as to good-faith basis.  Michaels nor its counsel have

5  any standing on the 363.  And I would refer the Court to

6  Waypoint Leasing, which is a 2019 decision out of the Southern

7  District by Judge Bernstein some guidance.

8          But they don't have standing.  It is proper for us to

9  give whatever we need to to the debtor.  That's what the order

10  says.  It doesn't say to all interested parties.  I have no

11  problem under a protective order giving it to the debtors'

12  counsel and to Your Honor.  I do have serious problems as

13  anything that's not bidding, because as I said, there has been

14  no collusive bidding here.  And it doesn't even fit the

15  definition of collusive bidding.  We're $2 million over what

16  was originally where the bids wound up.

17          So to give that information to their counsel or to

18  them, I have a real serious problem with that, Your Honor.  And

19  I think that by giving it to the Court for its own satisfaction

20  and for the debtor in evaluating the bid, the debtor is the

21  only one who can make the argument that there was collusive

22  bidding.  I think that is appropriate.  I will give whatever it

23  is as far as any other correspondence with if they think that

24  exists with respect to from the time our bid was submitted to

25  now as far as any kind of, hey, we're going to bid, don't bid,

1  do this, do that.  There is none of that.

2          I'll make that representation to the Court, but I'll

3  be more than happy to go through everyone's emails and we'll

4  make that representation.  But for them to get free discovery,

5  yeah, I ignored his email over the weekend because I wasn't

6  going to give him free discovery for an informal discovery

7  which the Court never ordered.  And I don't think that they're

8  going to set this up for other litigation, they may try to go

9  for tortious interference or something else which is outside

10 the realm of this, Your Honor.

11          I don't think we should be compelled to produce all

12 things if it's like how much of the space, what kind of tenant

13 fit-ups.  That's something that does not belong in the purview

14 of this.  It should be what communications, if any, were made

15 with respect to possible collusive bidding or suppressing the

16 bidding in this case.  I think that maybe it's a broad

17 definition, but this Court has the authority to say, look, we

18 only need what is relevant and that's the only thing that's

19 relevant to this discussion.  To give all that to our

20 quote/unquote arch enemy, I can't believe that we're even

21 talking about having a Michaels and a Hobby Lobby in the same

22 shopping plaza in the first place.

23          JUDGE KAPLAN:  All right.

24          MR. MALONE:  I don't think we should have that have

25 to be produced.

1              JUDGE KAPLAN:  Let me hear from the landlord's

2  counsel.  Mr. LeHane?

3              MR. LEHANE:  Good afternoon, Your Honor.

4              I guess our initial question, Your Honor, would be

5  what is the specific time period that we're talking about here.

6  The landlord never submitted any bids at any auctions.  We were

7  involved in settlement discussions with the debtors.  And as

8  far as Hobby Lobby's biding, my understanding is that was

9  somewhere around September 12th.  So I'm trying to figure out

10  the exact time frame without waiving any other rights that Your

11  Honor is referring to for communications that would go to the

12  issues here.

13              We certainly agree that there is no basis for

14  Michaels to have any complaint or seek discovery or be entitled

15  to any discovery given what unfolded after the status

16  conference, which from our point of view was a very clear and

17  clean auction as described in the debtors' reply to Michaels'

18  objection.

19              But with all that in mind, Your Honor, I do want to

20  understand the scope and the specific time period you're

21  talking about.  If it's discussions between the landlord and

22  Hobby Lobby as a bidder, they submitted a bid I believe

23  somewhere around September 12th, although I'm not sure the

24  exact date.  I do want to understand what the request is from

25  the Court.

1              JUDGE KAPLAN:  Well, the disclosures speak, and I'll

2    let Judge Papalia if he wants to weigh in.

3              JUDGE PAPALIA:  Yeah.

4              JUDGE KAPLAN:  The disclosure requirement under (l)

5    speaks of following the submission of a qualified bid.  So that

6    to me sets the time frame.

7              MR. LEHANE:  The landlord never submitted any bids

8    per se at either auction.

9              JUDGE KAPLAN:  I mean obviously, Hobby Lobby did.  So

10   we could work off that bid.

11             Judge Papalia?

12             JUDGE PAPALIA:  Yeah.  I mean, for example, in

13   Paragraph 37 of the Michaels' objection, it says there's

14   evidence of prior interactions between the landlord and Hobby

15   Lobby prior to the reopened auction which was produced in

16   discovery with the sale and assignment hearing and citing to

17   Exhibit 13 in that connection.

18             So as I understand the record, there were some

19   discussions between the landlord and Hobby Lobby even before

20   the August 30th hearing and going back to the reopened auction.

21   So my thought would be the reopened auction and -- which I

22   don't even know when it was conducted, but the reopened auction

23   through the present.  That's what mine would be.

24             And I think also that as to the relevancy, I mean it

25   needs to relate to the bidding process and, for example,

14

1  consideration for making a bid.  I think those kinds of

2  communications are relevant, and I'm not sure what

3  confidentiality issues they may raise.  I just don't know

4  because they're supposed to be disclosed to the debtors under

5  this order anyway.

6          And now we have this dispute which I will say is not

7  the same but it's certainly not completely dissimilar to the

8  reasons we gave for reopening the auction that we were

9  concerned that nondisclosed information may have resulted in

10 repressing the bid and specifically the agreement by Michaels

11 to compensate up to $150,000 but also the new round of bidding,

12 so that would be --

13         MR. MALONE:  I have no problem producing anything

14 that results to the bid.  What I'm talking about is if there's

15 communication with respect to what's the cure amount or the

16 form of order or things that are outside what tenants, who

17 we're going to put in there, from Hobby Lobby.  There may have

18 been discussions as to our designee.  I don't know.  But I

19 don't think that those go to the issue of the highest and best

20 of good faith.

21         JUDGE KAPLAN:  And I think, Mr. Malone, those could

22 be --

23         MR. MALONE:  And I have no problem producing it to

24 Your Honors --

25         JUDGE KAPLAN:  -- those could be addressed by

1  redaction.  Proprietary information --

2        MR. MALONE:  Redaction or I don't want to -- I would

3  rather produce them in camera.  And if you say they're

4  relevant, we'll deal with it accordingly.  I don't think it

5  should be a redaction because, quite honestly, there have been

6  unsubstantiated things that really get my blood boiling made

7  irresponsible by White & Case and Lowenstein.

8        For example, I was special counsel for the NOLs to

9  the Committee and they're trying to infer that I was somehow

10 working behind the scenes with Hobby Lobby and was tipping them

11 off or whatever.  I represented Hobby Lobby years ago, years

12 ago at Drinker Biddle.  I have not represented them since I've

13 walked in the door at Gibbons and July 1st of 2019.  And I've

14 had no communication with them until they called me.  I find it

15 irresponsible --

16        JUDGE KAPLAN:  All right.  Mr. Malone --

17        MR. MALONE:  -- by counsel to make these allegations.

18        JUDGE KAPLAN:  -- we're far afield.

19        MR. MALONE:  But this is what I mean.  They're

20 throwing spaghetti against the wall hoping something sticks.

21 And it really is a witch-hunt, Your Honor.

22        JUDGE KAPLAN:  You are to produce what you are

23 required to, what is relevant under the bid procedures order.

24 As to other communications, I have no problem if you want to

25 submit them under seal, submit them to chambers and the Court

1  will weigh in.

2           As to the date for when we're going to start with the

3  reachback period, my understanding is that there were

4  disclosures.  There was discovery during the contested matter

5  in front of Judge Papalia.  What Judge Papalia referenced in

6  the certification was already produced.  What we're talking

7  about are documents, additional documents that have not been

8  produced.

9           Let's have a starting date.  Judge Papalia, I would

10 think August 30th going forward.

11          MR. HERSHEY:  Your Honor, could I -- I'm sorry, can I

12 briefly address that point --

13          JUDGE KAPLAN:  Yes.

14          MR. HERSHEY:  -- of the starting date?

15          So, Your Honor, the landlord was a qualified bidder

16 as of June 30th, right, and the procedure order speaks to

17 communications with qualified bidders.  We took discovery I

18 want to say it must have been in July, I want to say.  And we

19 got documents through that date of discovery.  We should get

20 the documents since then.

21          And we can't be talking about a large number of

22 documents.  I mean we're talking about communications being two

23 parts.  I'm going to guess at most 100 emails, 150, the kind of

24 thing that a law firm like mine or Mr. Malone's reviews during

25 lunch.  I mean there's no burdensome argument here.  And I

1  think the Court needs to have comfort that Hobby Lobby and a

2  qualified bidder, the landlord, were not having collusive

3  communications.  And there's just no reason to cut out that

4  middle period when those communications might have been taking

5  place, certainly not a burdensome reason.

6         So if it shows nothing, it shows nothing.  But

7  there's no reason not to collect them.

8         JUDGE KAPLAN:  All right.  I'll let anybody else

9  weigh in.

10        MR. MALONE:  Your Honor?

11        JUDGE KAPLAN:  Yes.

12        MR. MALONE:  I guess is this also going to binding on

13 Michaels, as well, to produce any documents, et cetera?

14        JUDGE KAPLAN:  Yes.

15        MR. HERSHEY:  Yes, 100 percent.

16        MR. MALONE:  You said it's prior to the status

17 conference, as well?

18        JUDGE KAPLAN:  Right.

19        MR. MALONE:  Between the debtors and Michaels.

20        JUDGE KAPLAN:  I don't --

21        MR. MALONE:  I have not been -- I was employed since

22 I guess September 11.  I thought we were talking about this

23 auction going forward.  I think now we're retreading over old

24 ground, but I will check with my client.  I can make a

25 representation to the Court that there have been no

1  communication that would be of the nature of collusive bidding

2  between us and any other party -- I said that in my email to

3  the Court, and I stand by that email -- since the time I've

4  been involved in this case.

5          (Indiscernible) were making sure that the price of

6  the auction assets to the debtor are going to be repressed

7  (indiscernible) but the opposite in this case.

8          JUDGE KAPLAN:  Right.

9          MR. MALONE:  So I think we're on this witch hunt

10  about collusive bidding.  I mean we have to look at the

11  definition of what is collusive bidding before we go and spend

12  attorney time and my client's money and everything else as to

13  what has to be produced here.  Again, we're going to cooperate

14  with the Court, but again I think this is a fishing expedition

15  by Michaels, our biggest competitor, to try to get whatever

16  information they can.

17          I can say right now Mr. LeHane has not shared with me

18  any of the discovery that was taken in the underlying case.

19  The only thing I know about the underlying case which is what's

20  been filed with the bankruptcy court.  I have no insight, I

21  have none of the discovery that Mr. Hershey or anybody else may

22  have produced to Mr. LeHane in this case.  So I have no idea

23  what was produced with respect to what was even produced to the

24  debtor at this point in time.

25          So we came in here with clean hands.  We started the

1 bidding procedure.  Our bid came in first on September 12th,

2 and the second one was on September 15.  That's when we started

3 bidding.

4          JUDGE KAPLAN:  All right.

5          MR. MALONE:  We did not submit a bid or have any kind

6 of talking people out of bidding before that time.

7          JUDGE KAPLAN:  All right.

8          JUDGE PAPALIA:  Mr. Malone, since we're talking about

9 the I guess witch hunts and things like that, I think it's

10 appropriate for me then to say another president said trust bit

11 verify.  So it's certainly --

12          MR. MALONE:  I'm old enough to remember that.

13          JUDGE PAPALIA:  -- no one thinks that you are not

14 telling the truth to the best of your knowledge.  But, A, in

15 every case the defendant or the party defending the claim says,

16 no, we didn't do it.  But then you take discovery to make sure

17 that's the case or it's not the case.

18          So that is -- you know, to me, that means that in my

19 opinion, the communications between Hobby Lobby and Pinnacle

20 and the debtor or anyone else that relate to the bidding on the

21 lease should be disclosed and the date, it should be I guess

22 there was discovery that was produced by Pinnacle through I

23 don't know what date, Mr. LeHane.  But it should be updated.

24 That's what it should be.  And those are the issues that we

25 need to address.

1        Parties want findings of good faith made under the

2   sale and assignment.  And it bears repeating here what I said

3   last time is that I was not comfortable making a good-faith

4   finding with respect to a, quote, second auction because, A, it

5   wasn't disclosed that there was a second auction and, B, it

6   wasn't disclosed that there was a letter agreement with

7   Michaels that provided for reimbursement of fees to defeat the

8   Pinnacle objection.  And without finding it for certain, if you

9   look at the record, it appears that Hobby Lobby made a higher

10  bid after that happened or someone did, and that bid was not

11  expected.

12        So just to put a point on it, those are the reasons

13  that I had an inability to make the good-faith finding.  I

14  thought I was clear on that the last time, but if I wasn't, I'm

15  trying to be as clear as I possibly can here.  And what's good

16  for the goose is good for the gander.  I think that also has to

17  be shown here that the Hobby Lobby bid was in good faith and

18  that there was no collusion.  I don't know how that turns out,

19  but what I do know is it was $100,000 and now it's $2.1

20  million.  That is an increased bid by quite a bit.

21        MR. MALONE:  And with all due respect, Your Honor,

22  that answers the question of collusive bidding if --

23        JUDGE PAPALIA:  Almost.

24        MR. MALONE:  -- if under 363(n), collusive bidding

25  means you're suppressing what would go to the estate.  That's

1  the reason why a trustee or debtor are the only parties that

2  can object to collusive bidding because they're not getting the

3  fair market value of the asset.  This probably well exceeds the

4  fair market value of this asset.

5          JUDGE PAPALIA:  I don't know.  I always thought the

6  best indicator of fair market value was what somebody was

7  willing to pay for it in an arms-length transaction, but maybe

8  I'm wrong on that.

9          JUDGE KAPLAN:  Well --

10         JUDGE PAPALIA:  But in any event, the key word that I

11 heard in what you said was "almost."  And it might be almost,

12 but it's not all the way there.  We want to get all the way

13 there one way or another, okay.

14         JUDGE KAPLAN:  And to get us there all the way, I'm

15 going to just set a date following the Court's hearing.  I

16 think your hearing was on the 30th August?

17         MR. MALONE:  Yes.

18         JUDGE KAPLAN:  So that will be the starting date.

19 There's no need to go back to June.

20         MR. MALONE:  Thank you, Your Honor.

21         JUDGE KAPLAN:  And we will defer additional argument

22 and PowerPoints because they may change until October 12th.

23         MR. LEHANE:  Your Honor?

24         JUDGE KAPLAN:  Yes.

25         MR. LEHANE:  One point on that date.  I only bring

1  this up because just based on the pleadings that were just

2  submitted by Michaels and the debtors, there's now a complete

3  inconsistency as when this supposed fee arrangement arose or

4  what caused it to happen.  Michaels claims that the landlord's

5  settlement forced it to agree to that.  And the debtors'

6  pleading would indicate that Michaels sent a draft fee

7  arrangement letter to the debtors on August 7th.

8        So we don't have any discovery because to date as

9  between Michaels and the debtors that's been considered

10  privileged prior to this.  Again, we started from the viewpoint

11  of it should be a fresh start going forward.  We agree with

12  frankly the debtors' papers in reply to Michaels' objections

13  that this discovery is totally unwarranted.

14        But if it's going to go back and try to reexamine who

15  was operating in good faith or behaving in good faith,

16  Michaels' contentions that somehow a landlord entering into

17  settlement discussions with a debtor in connection with a

18  perfectly valid and legitimate objection is unwarranted or

19  untimely or bad faith, those are the type of arguments that are

20  basically not founded in truth and are stretching these

21  discussions.

22        What has happened more recently and as described at

23  length in the debtors' reply to Michaels' objections, there was

24  a fulsome and robust auction as directed by the Court and we

25  all agreed to proceed with that auction looking forward and not

23

1  looking back.  So obviously, we'll do as the Court directs, but

2  we don't think we should be limited with respect to now seeking

3  documents from Michaels that go beyond that August 30th date if

4  we're going to have to produce documents from August 30th

5  forward.

6          MR. HERSHEY:  Your Honor, let me just say, we --

7          JUDGE KAPLAN:  Mr. Hershey?

8          MR. HERSHEY:  Yeah.  Michaels has absolutely no

9  problem producing documents from an earlier date.  In fact, we

10 think it's appropriate.  Mr. LeHane in his declaration said

11 there was a second auction that occurred from August 21st to

12 August 30th.  I don't know exactly what he's referring to, but

13 it seems relevant.

14         So we'll go back and we'll produce on two conditions.

15 The first is there shouldn't be asymmetric production dates,

16 right.  If Mr. LeHane wants to go back to August 7th, we will

17 absolutely comply, but he and Hobby Lobby have to as well.  It

18 just should be equal.  And the --

19         JUDGE KAPLAN:  No, I'm actually not going to let you

20 --

21         MR. LEHANE:  We already produced.

22         JUDGE KAPLAN:  I'm not going to let you all bring us

23 all down this rabbit hole.  We're going to stop on August 30th.

24 The facts are there.  We know of the letter.  Frankly, I

25 believe with Judge Papalia and I who had the feeling that we

24

1  were going to be moving forward with a new auction and that

2  would only be what was relevant.

3          We'll go back to August 30th as a precaution to have

4  the best record.  I can find you all at argument to go back to

5  any date going back a year if we really pressed it.  Let's stop

6  with August 30th.

7          MR. HERSHEY:  Understood, Your Honor.

8          JUDGE KAPLAN:  Thank you.

9          Ms. Geier?

10         MS. GEIER:  Thank you, Your Honor.  I just wanted to

11 speak very briefly on behalf of the debtors.

12         The debtors recognize and appreciate that the debtors

13 are the overall beneficiaries of any transaction approved here

14 and the hard work being done by the Court and all the parties.

15 It's very much appreciated.

16         I just wanted to note a couple of things for the

17 record.  I don't expect it to change any of the rulings and

18 we're happy to participate, comply with any discovery that you

19 would like to see from the debtors, as well.  But I do have one

20 request that goes with those notes.

21         The first thing that just to clarify for the record

22 that there was a bid from Hobby Lobby.  The first exchange that

23 the debtors had with Hobby Lobby was and that they had

24 submitted on September 12th which was rejected by the debtors.

25 A revised bid was submitted on September 15th.  It took several

1 days to discuss that bid among the consultation parties.  And

2 so when we reached out to chambers on September 20th is sort of

3 when I think is the date that we realized we needed to take

4 action and move forward on it.

5        While the debtors are confident that we obtained the

6 highest and best bid and the parties did make representations

7 on the record to this effect, I would say that the landlord

8 sort of -- the landlord's withdrawal from the process before

9 the hearing never to reenter again from the debtors'

10 perspective, although on a technical basis, they're a qualified

11 bidder, we weren't really thinking of them as a bidder but as a

12 consultation party in the sense that they were in fact

13 consenting to one transaction and not to another.

14        I don't think that that's a gross advantage, right,

15 between two or that it's necessarily relevant, but I just

16 wanted to share the debtors' perspective on how we were looking

17 at that.

18        I say all this to say there is in the background a

19 potential and has bene referred to by Michaels, a potential

20 substantial contribution claim down the line.  While we respect

21 and completely understand the need to obtain this discovery to

22 work through these issues, we would respectfully request that

23 the Court clarify that to the extent that a substantial

24 contribution claim is made, that none of the costs from this

25 date to that date would be part of that claim simply because

26

1  from the debtors' perspective, we are very confident as to

2  where we landed.

3          And while we do need to run this to (indiscernible)

4  to reach findings and a final conclusion, I just want to make

5  sure that the debtors aren't harmed by that in the form of

6  dollar amounts.

7          JUDGE KAPLAN:  All right.  Mr. Malone, you had your

8  hand up.

9          MR. MALONE:  Yes, Your Honor.   Mine was more on

10 housekeeping.  I think it was back and forth whether this would

11 be a Zoom hearing or an in-person. I would just request that

12 this next hearing on the 12th be an in-person hearing.  Maybe

13 I'm old school, but it's a lot easier to argue, cross-examine,

14 and that nature.

15         We've seen in other cases like BlockFi where people's

16 arguments get interrupted because of the connectivity of the

17 Zoom.  That sometimes occurs.  It's very important because I'm

18 sure this is probably going to go up on appeal, and I think a

19 clean record needs to be made.

20         I would also ask that my witnesses located in

21 Oklahoma City could appear by Zoom but that the parties, the

22 principal parties here, the lawyers appear in person on October

23 12th.

24         JUDGE KAPLAN:  All right.  Mr. Hershey, and then

25 we'll get back to that.

1          MR. HERSHEY:  Yes, Your Honor.

2          We have no issue with appearing in person, and we're

3    happy to do so.  So that's the first thing.

4          The second thing is in terms of Ms. Geier's statement

5    about our substantial contribution claim, it would be

6    completely inappropriate for the court to make an advisory

7    opinion today about the scope of that claim.  We haven't even

8    filed a motion yet.  When we do if Ms. Geier has an objection

9    based on the dates that we assert, she can being it then.  But

10   it's just inappropriate to request an advisory opinion on that

11   matter now.

12         JUDGE KAPLAN:  All right.  Thank you.

13         We will have the hearing in, we're going to schedule

14   it in lovely Trenton -- sorry, folks -- on the 12th at 1 p.m.

15   We will have remote access for those who want to participate

16   remotely.  We'll do it as a hybrid.  But --

17         MR. HERSHEY:  Hybrid would be fine with me, Your

18   Honor.

19         JUDGE KAPLAN:  -- give everybody the opportunity who

20   want to come to Trenton to come and make argument.  I am not

21   going to rule and I'm sure Judge Papalia's not going to rule on

22   the scope of a substantial contribution motion that's not been

23   made.  I understand the argument.  The law in our Circuit is

24   pretty detailed on substantial contribution, and we'll all be

25   guided by the Circuit law on it when the time comes.

1          Judge Papalia and I will flip a coin to see who loses

2    and who has to hear it.  Beyond that, I think we're pretty much

3    done.  Just to clarify, the disclosures should be produced by

4    close of business on the 9th.  Any objections or any further

5    submissions based on those disclosures, not -- they only have

6    to pertain to the disclosures, not additional argument.  You've

7    all briefed everything enough.  But as to anything that's been

8    disclosed that raises a concern, have it in by 1:00 on the

9    11th.  1 p.m. on the 11th.

10          JUDGE PAPALIA:  Just one other housekeeping matter

11   that I think is just procedural or a timing issue is that we're

12   saying the disclosures have to be made by 10/9.  But if there's

13   going to be in-camera submissions or other things relating to

14   confidentiality, it would just seem to me that you can't -- you

15   need to have that before the 9th because you don't know just

16   yet.  And then what happens on the 9th, do you not produce

17   anything or just produce what's not subject to any possible

18   confidentiality issue?  And then when does it get produced

19   after the issue is resolved?

20          So I thought it would make sense to have the

21   confidentiality or relevance issues resolved before the 9th so

22   there's a full disclosure on the 9th.  That's where I'm coming

23   from.

24          JUDGE KAPLAN:  All good points.  Anything that's

25   going to be submitted to chambers can be submitted by the 6th.

1 And as far as chambers, provide it to my chambers.  I don't

2 know, Judge Papalia, where you're going to be.  I'll get

3 anything over to you if need be.

4           JUDGE PAPALIA:  At a doctor and physical therapy in

5 all likelihood, but --

6           JUDGE KAPLAN:  So have it all forwarded to our

7 chambers.  So anything that a party wants to keep under seal or

8 for proprietary reasons does not wish to disclose, have it

9 provided to chambers by the 6th.  We'll take a look at it

10 probably over the weekend.  And the Court's actually closed on

11 the 9th because it's Columbus Day.  But that doesn't stop you

12 all from making your disclosures.  If there's a problem, the

13 Court will reach out to the parties.

14           All right.  See you next week.  Take care, folks.

15           COUNSEL:  Thank you, Your Honor.

16           (Proceedings adjourned at 2:43 p.m.)

17                     *  *  *  *  *

18

19

20

21

22

23

24

25

30

# **C E R T I F I C A T I O N**

1

2            I, DIPTI PATEL, court approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  electronic sound recording of the proceedings in the above-

5  entitled matter and to the best of my ability.

6

7

8  /s/ Dipti Patel

9  DIPTI PATEL, CET-997

10  J&J COURT TRANSCRIBERS, INC.    DATE:  October 4, 2023

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25