| |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br><br>Jeffrey Kurtzman, Esquire (JK-7689)<br>**KURTZMAN STEADY, LLC**<br>101 N. Washington Avenue, Suite 4A<br>Margate, NJ 08402<br>kurtzman@kurtzmansteady.com<br>Telephone: (215) 839-1222<br><br>Attorneys for Tamarack Village Shopping Center, A Limited Partnership | |
| In re:<br><br>BED BATH & BEYOND INC., et al.<br><br>        Debtors. | Case No. 23-13359 (VFP)<br><br>Chapter 11<br><br>(Jointly Administered) |

**MOTION OF TAMARACK VILLAGE SHOPPING CENTER, A LIMITED PARTNERSHIP FOR ALLOWANCE AND PAYMENT OF <u>ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)</u>**

TO:    HONORABLE VINCENT F. PAPALIA,
         UNITED STATES BANKRUTPCY JUDGE:

Tamarack Village Shopping Center, A Limited Partnership ("Tamarack" or "Claimant"), by and through its undersigned counsel, hereby moves for entry of an order, substantially in the form attached hereto, granting the allowance and requiring immediate payment of Tamarack's post-petition claim in the amount of $77,491 resulting from the breach by Bed Bath & Beyond Inc., a New York corporation ("Bed Bath & Beyond" or the "Debtor") of a certain Lease Agreement, as amended (the "Lease") which governs the Debtor's possession, use and obligations related to premises in a shopping center owned by the Claimant in Woodbury, Minnesota, pursuant to 11 U.S.C. §§365(d)(3) and 503(b)(1)(A), and in support hereof respectfully represents as follows:

3968936.v1

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue of the Debtor's case in this district is proper pursuant to 28 U.S.C. § 1408.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). This Court has the constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have constitutional authority to enter a final order or a judgment in this matter, Claimant consents to entry of a final order or judgment.

3. Relief is requested herein pursuant to 11 U.S.C. §§365(d)(3) and 503(b)(1)(A).

4. On December 31, 2001, Claimant and Bed Bath & Beyond entered into a Lease Agreement, under the terms of which Claimant leased nonresidential, commercial property in the shopping center known as Tamarack Village located in Woodbury, Minnesota. (the "Lease"). Pursuant to the Lease, the term was to expire January 31, 2026. A true and correct copy of the Lease and amendments is attached as **Exhibit A** to the Declaration of Peter Barott (herein "Barott Decl." or "Barott Declaration") submitted herewith.

5. On April 23, 2023, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. The Debtor conducted going out of business sales from many of their retail locations, including the location leased from Claimant, winding down its operations overall and going through a Court approved process for rejecting leases.

7. Claimant filed a proof of claim for unpaid prepetition rent, rejection damages and an administrative priority expense claim for a prorated portion of real estate taxes accrued post-petition under the Lease (if this request is granted, Claimant will amend the Claim to remove the priority claim component).

8.     Debtor paid the base rent and common area maintenance charges coming due under the Lease during the case until the time they exercised rejection of the Lease. However, Debtor did not pay the ad valorem taxes due on May 25, 2023 under the Lease as "additional rent." Attached to the Barott Declaration as **Exhibit B** is a true and correct copy of the invoice to Debtors which was delivered on May 23, 2023 and, pursuant to Section 4.3.2(b) of the Lease, was due and payable within 30 days of the date of Debtor's receipt of the invoice.

## RELIEF REQUESTED

9.     Claimant respectfully requests an order allowing Claimant an administrative expense claim for ad valorem taxes in the amount of $77,491 that constitutes "additional rent" under its lease with Debtor. The Lease was rejected on June 30, 2023 by the Debtors' notice dated June 27, 2023 as authorized by that certain Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief (Doc. No. 382).

## ARGUMENT AND AUTHORITIES

**I.     Debtor's Obligation for Real Estate Taxes Are Entitled to Administrative Priority Pursuant to 11 U.S.C. §365(d)(3)**

10.    Section 365(d)(3) of the Bankruptcy Code requires a trustee to timely perform the obligations of the debtor under any unexpired lease of nonresidential real property until assumption or rejection. In other words, if the obligations under the lease become due following the petition date, but prior to the rejection of the lease, the obligations are payable immediately. *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 211 (3rd Cir. 2001). Claims for rent obligations arising post-petition are classified as "administrative" claims, which are entitled to prioritized treatment under the bankruptcy code and must be paid in full in order for a debtor to confirm a plan of reorganization. *Id.* (citing § 365).

11. Courts in this jurisdiction have held that a lessor is entitled to an administrative expense under the same provision for "any charge" in a lease "enforceable under state law." *In re MUMA Servs., Inc.,* 279 B.R. 478, 487-89 (Bankr. D. Del. 2002). Further, District of New Jersey bankruptcy courts have held that real estate taxes can be considered "administrative expenses" payable at the time they are due. *See e.g., Matter of Henry*, 173 B.R. 878, 881 (Bankr. D.N.J. 1993) (finding that accrued post-petition real estate taxes are characterized as administrative expenses); *In re Sea Garden Motel and Apartments*, 195 B.R. 294, 300 (Bankr. D.N.J. 1996) (concluding that $95,000 in post-petition real estate taxes and water and sewage charges constitute administrative expenses that are required to be paid in full); *In re Pelican Pool & Ski Center, Inc.*, No. 05-22983 (DHS), 2009 WL 2244573, at *5 (D.N.J. July 27, 2009) (defining outstanding real estate taxes and CAM charges billed after the petition but before acceptance or rejection as administrative expenses). In the Third Circuit, such administrative expenses become "due" for the purposes of Section 365(d)(3) at the time of *billing*. *See In re Pelican*, 2009 WL 2244573, at *13 (adopting *In re Montgomery* and recognizing "billing approach").

12. Under Minnesota law, which controls the lease at issue here, "parties are free to contract to whatever terms they agree, provided that those terms are not prohibited by law." *Persigehl v. Ridgebrook Inv. Ltd. P'ship*, 858 N.W.2d 824, 832 (Minn. Ct. App. 2015). A lease is a contract and is construed according to ordinary contract rules of interpretation. *York Apartments v. Jelinek*, No. C7-97-148, 1997 WL 658939, at *5 (Minn. Ct. App. Oct. 21, 1997). Where parties freely enter into a binding lease agreement which includes an "additional-rent" clause referencing real estate taxes, the landlord may rightfully collect or bill "additional" rent as needed to reimburse itself for the expense. *Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 452 (Minn. 1980).

13. In general, a party to a contract must perform substantially according to its terms—meaning that failure to strictly adhere to every aspect of a provision does not necessarily render the clause or contract itself unenforceable. *See York Apartments v. Jelinek*, 1997 WL 658939, at *5 ("Substantial performance means performance of all the essentials necessary to the full accomplishment of the purposes" of the contract."). In fact, the Doctrine of Substantial Performance, recognizes that

> "the law does not mandate in all cases strict and literal compliance with all procedural requirements. Technical defects in compliance which do not reflect bad faith, undermine the purpose of the procedures, or prejudice the rights of those intended to be protected by the procedures will not suffice to overturn governmental action, particularly where, as here, substantial commitments have been made."

*Manco of Fairmont, Inc. v. Town Bd. of Rock Dell Twp.*, 583 N.W.2d 293, 295 (Minn. Ct. App. 1998) (citing *City of Minneapolis v. Wurtele,* 291 N.W.2d 386, 391 (Minn. 1980). This Doctrine has been applied in numerous contexts, on a case-by-case basis, including in cases involving commercial leases under Minnesota and other Eighth Circuit jurisdictions. *See Apache Plaza, Ltd. v. Midwest Sav. Ass'n*, 456 N.W.2d 729, 730-731 (Minn. Ct. App. 1990) (discussing a jury instruction concerning breach of contract and substantial performance as applied to a commercial lease dispute wherein the lessee had substantially performed its obligations); *see also Commercial Resource Grp., LLC v. J.M. Smucker Co.*, 753 F.3d 790, 794 (stating that "under the doctrine of substantial performance, a party is relieved of exact compliance with the terms of the lease if the breach of the lease terms is non-material" in the context of a slight delay to performance of a commercial lease). In addition, a party's words and conduct may evidence an intent to be bound by the terms of a contract regardless of performance or subjective intent. *Norwest Bank Minn. N., N.A. v. Beckler*, 663 N.W.2d 571, 578 (Minn. Ct. App. 2003) ("[W]ords

are not the only medium of expression. The conduct of the parties is also to be looked at since it often conveys as clearly as words a promise or an assent to a promised promise.").

14. In the present case, Section 4.3 of the Lease provides that Tamarack will pay the applicable annual real estate taxes due on the property "before any fine, penalty, interest or cost may be added thereto for nonpayment thereof." Barott Decl. at Ex. A. Under the same section, Tamarack is required to provide to Bed, Bath & Beyond ("Debtor") "a copy of the bill for Taxes issued by the applicable taxing authority, a computation of Tenant's Pro Rata Share of such Taxes and proof of the payment of Taxes for the previous payment period." *Id*. Debtor has thirty days after receipt of this notice to pay the outstanding amount. *Id.* The pro-rata share of Real Estate Taxes Tamarack paid on behalf of Debtor for the first half of 2023, was $77,491. *Id.* at ¶ 11.

15. On May 23, 2023, Tamarack provided Debtor an invoice for Debtor's pro-rata share, after Debtor had filed its Chapter 11 bankruptcy petition, but before any acceptance or rejection of the lease. *Id.* at Ex. B. Unfortunately, Tamarack's managing agent failed to include a "copy of the bill for Taxes" in its notice to Debtor. *Id.* at ¶ 12. This mistake was inadvertent. Tamarack, in most instances before this notice, had provided a copy of the bill for Taxes but did not generally provide proof of payment as outlined under Section 4.3 of the Lease. *Id.* at ¶ 12-14. *Id*., e.g. at Ex. D. Debtor never objected to the Tamarack's failure to strictly comply with the Lease by failing to provide proof of payment. *Id.* at ¶ 14. Debtor paid all previous pro-rata shares of its real estate taxes in every year since the signing of the original lease in 2001. *Id.* at ¶15.

16. Notably, on June 21, 2023 Debtor's attorney acknowledged that the $77,491 was due under the lease and required to be paid as an agreed portion of a proposed cure of the Lease.

Attached to the Barott Declaration as **Exhibit C** is a true and correct copy of the email correspondence wherein Debtor's attorney acknowledged it outstanding payment obligation. On June 30, 2023, Debtor rejected the lease and now refuses to repay any portion of the outstanding amount claiming that the amount never came "due" prior to rejection because of the failure by Tamarack to include a copy of the bill for Taxes.

17. While it is true that Tamarack did not strictly comply with the notice terms outlined in section 4.3 of the Lease, it did substantially perform its obligation by providing a copy of the invoiced amount and a computation of Debtor's pro-rata share to . *Id*. at Ex. B. Moreover, Debtor appeared to recognize this notice as sufficient by its email on June 21, 2023—nine days before rejection occurred. *Id*. at Ex. C. Further, the parties' respective past pattern and practice demonstrates that Debtor was fully aware of its obligation to pay its pro-rata share of real estate taxes when they came "due" upon notice from Tamarack without insisting on strict performance of the Lease. *Id*. at ¶¶ 12-14. Debtor has paid its share of real estate taxes for nearly two decades without issue without insisting on strict performance of the Lease provision. *Id.* at ¶14. This singular "technical defect" should not allow Debtor to escape its admitted obligation to pay the real estate taxes due and owing. *See Manco, ,*583 N.W.2d at 295.

18. Because Tamarack "billed" Debtor for the $77,491 post-petition but prior to rejection of the lease, Tamarack is entitled to be paid in full immediately as an "administrative expense" in accordance with well-established Third Circuit and Eighth Circuit precedent.

II. **Even if Debtor's Obligation for Real Estate Taxes are not Entitled to Administrative Priority Pursuant to 11 U.S.C. § 365(d)(3), Claimant is Entitled to an Administrative Expense Under 11 U.S.C. § 503(b)(1)(a).**

19. In addition to allowance of Debtor's obligation to pay the taxes as an administrative expense claim pursuant to Section 365(c)(3), the taxes are entitled to

administrative priority under Section 503(b)(1) as they constitute "actual, necessary costs and expenses of preserving the estate. . ." *See In re Goody's Family Clothing Inc.,* 610 F.3d 812, 818 (3rd Cir. 2010) (holding that the enactment of Section 365(c)(3) did not preempt or preclude analysis of commercial lease obligations under Section 503). The Debtor's occupancy must confer an actual benefit to the estate. *Id.* Where parties are induced to supply goods or services to the debtor in possession pursuant to a contract or lease that has not been rejected, the purposes of administrative priority plainly require that their claims be afforded priority. *Id.* (citing *In re Mammoth Mart*, 536 F.2s, 950, 954 (1st Cir. 1976)). A landlord is entitled to the value of the premises utilized by a Debtor. *Id.* (citing *In re DVI, Inc.,* 308 B.R. 703, 707-8 (Bankr. D.Del. 2004)). Absent evidence to the contrary, the lease rate is presumed to be the fair market value of the premises. *See In Re. ZB Co., Inc.*, 302 B.R. 316, 319 (Bankr.D.Del 2003) (citing *HQ Global Holdings*, 282 B.R.169, 173 (Bankr.D.Del. 2002)).

20.  As with the Debtor in *In re Goody*, Debtor benefited from the use of the Tamarack's property through operations and through potential going concern sales and the opportunity to sell the Lease. Tamarack's claim is for the first half tax payment for 2023. Debtor utilized Tamarack's premises for 68 of 181 days in the first half of 2023. As such, Debtor is at a minimum obligated to pay 37.6% of the $77,491 in real estate taxes representing a portion of the total rent for the premises. If the Court determines that the entire claim is not entitled to administrative priority under Section 365, Tamarack respectfully requests an order finding $29,136.62 be determined to be administrative expense and that the Debtor be required to immediately pay such amount.

**CONCLUSION**

WHEREFORE, claimant Tamarack Village Shopping Center, A Limited Partnership, respectfully requests that this Court grant this application for allowance and payment of administrative expense claim in the amount of $77,491.

Dated: October 12, 2023

**KURTZMAN STEADY, LLC**

By: */s/ Jeffrey Kurtzman*
Jeffrey Kurtzman, Esquire
101 N. Washington Avenue, Suite 4A
Margate, NJ 08402
Telephone: (215) 839-1222
Email: kurtzman@kurtzmansteady.com

Attorneys for Tamarack Village Shopping Center, A Limited Partnership