| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| In re:<br><br>BED BATH & BEYOND INC., *et al*.,<br><br>     Debtors.[1] |

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY AND PLAN INJUNCTION TO ALLOW MOVANT TO CONTINUE PENDING LITIGATION AGAINST THE DEBTOR AND RECOVER SOLELY AGAINST DEBTOR'S INSURER, WAIVING THE PROVISIONS OF FED. R. BANKR. P. 4001 (a) (3) AND FOR RELATED RELIEF**

 

**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
DAVID H. STEIN, ESQ.
Telephone: (732) 636-8000
Attorneys for Victoria Foster

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

#14081963.1 182074.001

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................................1

BACKGROUND FACTS ...........................................................................................................1

FOSTER'S PERSONAL INJURIES AND THE.........................................................................1

DEBTOR'S INSURANCE FOR FOSTER'S CLAIMS...............................................................1

THE AUTOMATIC STAY AND THE PLAN INJUNCTION....................................................3

LEGAL ARGUMENT..................................................................................................................4

    A.    The Automatic Stay Should Be Terminated to Permit Foster to Continue the State Court Action................................................................................................4

    B.    The Automatic Stay Should Be Terminated Pursuant to 11 U.S.C. § 362(d)(1) For Cause....................................................................................................5

    C.    The Automatic Stay Should Be Terminated Pursuant to 11 U.S.C. § 362(d)(2) Because the Debtor Lacks an Equity in the Policy and the Policy Is Not Necessary to an Effective Reorganization ................................................6

    D.    Waiver of the Fourteen Day Stay Provision of Fed. R. Bankr. P. 4001(a)(3) .........................................................................................................9

CONCLUSION............................................................................................................................10

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Acands, Inc. v. Travelers Cas. & Sur. Co.,
    435 F.3d 252 (3d Cir. 2006) ........................................................................................... 4

Califano v. Yamasaki,
    442 U.S. 682 (1979) ......................................................................................................... 8

First Fid. Bank v. McAteer,
    985 F.2d 114 (3d Cir. 1993) ............................................................................................. 4

Gammon, Inc. v. Lemelson,
    442 F. Supp. 211 (D.N.J. 1977) ....................................................................................... 8

In re Abeinsa Holding, Inc.,
    2016 WL 5867039 (Bankr. D. Del. Oct. 6, 2016) ............................................................ 6

In re Amiel Restaurant Partners, LLC,
    510 B.R. 744 (Bankr. D.N.J. 2014) .................................................................................. 4

In re Indian Palms Assocs., Ltd.,
    61 F.3d 197 (3d Cir. 1995) ............................................................................................... 6

In re Louisiana Word Exposition, Inc.,
    832 F.2d 1391 (5th Cir. 1987) .......................................................................................... 4

In re Mid-Atl. Handling Sys., LLC,
    304 B.R. 111 (Bankr. D.N.J. 2003) .................................................................................. 5

In re Mireskandari,
    2019 WL 2011102 (Bankr. D.N.J. May 6, 2019) ............................................................ 5

Matter of Edgeworth,
    993 F.2d 51 (5th Cir. 1993) .............................................................................................. 4

Matter of Newark Airport/Hotel Ltd. P'ship,
    156 B.R. 444 (Bankr. D.N.J.), aff'd sub nom. FGH Realty Credit Corp. v Newark
    Airport/Hotel Ltd. P'ship, 155 B.R. 93 (D.N.J. 1993) ..................................................... 7

Sec. & Exch. Comm'n v. Warren,
    583 F.2d 115 (3d Cir. 1978) ............................................................................................. 8

United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,
    484 U.S. 365 (1988) ......................................................................................................... 7

#14081963.1 182074.001

# TABLE OF AUTHORITIES (cont'd)

**PAGE**

**Statutes**

11 U.S.C. § 1141(d) (3) (A) ................................................................................................. 7

11 U.S.C. § 362(a) (1) ........................................................................................................ 3

11 U.S.C. § 362(d) ............................................................................................................. 4

11 U.S.C. § 362(d) (1) ....................................................................................................... 5

11 U.S.C. § 362(d) (2) ....................................................................................................... 6

11 U.S.C. § 362(g) (2) ....................................................................................................... 5

11 U.S.C. §362(a) (3) ........................................................................................................ 3

**Rules**

Fed. R. Bankr. P. 4001 (a) (3) .................................................................................... i, 9, 10

R. 4:10-2(b) ....................................................................................................................... 2

**Other Authorities**

https://restructuring.ra.kroll.com/bbby ................................................................................ i

## INTRODUCTION

Victoria Foster ("**Foster**") suffered substantial personal injuries from a pressure cooker purchased by her mother at a Bed, Bath & Beyond retail store. Foster filed a lawsuit styled as Foster v. Bed Bath & Beyond, Inc., et al. in the Superior Court of New Jersey, Law Division, Essex County, under Docket Number L-2348-21, (the **"State Court Action"**), prior to the commencement of this bankruptcy case. Foster now seeks relief from the Automatic Stay to continue the State Court Action and to recover solely against the Debtor's insurer, and respectfully submits the following:

## BACKGROUND FACTS

On April 23, 2023 (the "**Petition Date**"), the Debtor Bed, Bath & Beyond, Inc. (the "**Debtor**") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in this Court, thereby commencing this bankruptcy case.

On September 14, 2023, this Court entered its "*Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates*" [ECF 2172] ("**Confirmation Order**") confirming the "*Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates*" [ECF 1712] (as confirmed, the "**Plan**").

## FOSTER'S PERSONAL INJURIES AND THE DEBTOR'S INSURANCE FOR FOSTER'S CLAIMS

Prior to the Petition Date, the Debtor was engaged in the business of operating retail stores throughout the United States, including in the State of New Jersey, and advertised, marketed, promoted, distributed and sold a wide range of consumer goods, including pressure cookers.

-1-

Prior to July 11, 2020, Foster's mother purchased a pressure cooker at one of the Debtor's retail locations (the "***Pressure Cooker***").  On July 11, 2020, Foster suffered substantial personal injuries from her use of the Pressure Cooker.

On or about March 23, 2021, Foster commenced the State Court Action against the Debtor and multiple third parties to recover damages resulting from her personal injuries.  On March 29, 2022, Foster filed a First Amended Complaint in the State Court Action, which remains operative. See Certification of Frank V. Cesarone dated October 11, 2023 (the "Cesarone Cert.") at ¶¶ 4 and 5, Exhibit A.

Prior to the Petition Date, Foster propounded interrogatories upon the Debtor in connection with the State Court Action.  Interrogatory number 13 required information as follows:

> 13. Pursuant to R. 4:10-2(b), state whether there are any insurance agreements including excess policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.
>
> If the answer is "yes", attach a copy of each insurance agreement or policy, or in the alternative state: (a) number; (b) name and address of insurer or issuer; (c) inception and expiration dates; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; (g) medical payment limits; (h) name and address of person who has custody and possession thereof; and (i) where and when each policy or agreement can be inspected and copied."

On or about October 31, 2022, the Debtor responded to interrogatory number 13. Although the Debtor did not produce a copy of any insurance policies, the Debtor wrote as follows:

> **(a) Policy No. #: GL 4062767;**
>
> **(b) Safety National Casualty Corp.;**
>
> **(c) 03/01/2020 to 03/01/2021;**
>
> **(d) Objection; this request is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without**

-2-

> **waiver of objection, this defendant is insured under the aforesaid policy;**
>
> **(e), (f) & (g) $3 million combined bodily injury and property damage;**
>
> **(h) Bed Bath & Beyond Inc.;**
>
> **(i) Will be made available for inspection upon reasonable request.**

Since answering this interrogatory, and despite committing to making the referenced insurance policy (the "***Policy***") available for inspection upon reasonable request, the Debtor has refused to make the policy available to Foster. As the Debtor has disclosed the existence of the Policy but has failed and refused to produce a copy of it, Foster reserves her rights to seek to compel production of the Policy. See Cesarone Cert., ¶ 6, Exhibit B.

## THE AUTOMATIC STAY AND THE PLAN INJUNCTION

Upon the Debtor's filing of its bankruptcy case, the State Court Action was automatically stayed against the Debtor only, pursuant to section 362 of the Bankruptcy Code (the "***Stay***") which, among other things, operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a) (1). Similarly, 11 U.S.C. §362(a) (3) operates as a stay of "any act to obtain possession of property of the estate or to exercise control over property of the estate."

Pursuant to Article X, Section F. (at 53-54), the Plan enjoins certain creditors, including arguably Foster, from, *inter alia*, "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to" any claim Foster may have against the Debtor. See also Confirmation Order at ¶137 at 65 (providing for

-3-

continuation of the automatic stay and the Plan injunction to "remain in full force and effect in accordance with their terms").

Accordingly, Foster seeks to modify the Automatic Stay and the Plan injunction to be allowed to continue the State Court Action against the Debtor solely to recover against the Debtor's insurer(s). Such relief from the Automatic Stay is required since the Policy is property of the estate (although the Policy's proceeds are not property of the estate), and continued litigation may diminish future recoveries from that Policy. Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 261 (3d Cir. 2006), see, Matter of Edgeworth, 993 F.2d 51, 56 (5th Cir. 1993) (medical malpractice policy); First Fid. Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993) (credit life insurance policy); In re Louisiana Word Exposition, Inc., 832 F.2d 1391 (5th Cir. 1987) (directors and officers liability policy); In re Amiel Restaurant Partners, LLC, 510 B.R. 744 (Bankr. D.N.J. 2014) (casualty policy). Relief from the Plan injunction is required to the extent it prohibits Foster from continuing the State Court Action solely against the Debtor's insurers.

## LEGAL ARGUMENT

**A.    The Automatic Stay Should Be Terminated to Permit Foster to Continue the State Court Action**

Foster requests that the Court modify the Automatic Stay to permit her to continue the State Court Action to judgment and to enforce any judgment she receives, by execution, levy or otherwise, against the Debtor's insurer and the Policy. Foster will not seek the enforcement of any judgment against the Debtor or its assets other than the Policy.

11 U.S.C. § 362(d) provides

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

Here, Foster submits that the Court should allow this Motion pursuant to Section 362(d) (1), or alternatively, under section 362(d) (2).

**B.    The Automatic Stay Should Be Terminated Pursuant to 11 U.S.C. § 362(d) (1) For Cause**

This Court must define whether "cause" exists under section 362(d) (1) based on the totality of circumstances in each particular case because the statute does not define the term "cause." In re Mid-Atl. Handling Sys., LLC, 304 B.R. 111, 129–30 (Bankr. D.N.J. 2003). "[R]elief from the stay may be granted when it is necessary to permit litigation to be *concluded* in another forum. . . ." Id. at 130 (citations and internal quotations omitted) (emphasis in original); In re Mireskandari, 2019 WL 2011102 at *2 (Bankr. D.N.J. May 6, 2019).

> To determine whether it is necessary to allow prosecution to continue in another forum, courts consider whether: (1) relief would result in a partial or complete resolution of issues; (2) there is a connection with or interference with the bankruptcy case; (3) the other proceeding involves the debtor as a fiduciary; (4) a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) the debtor's insurer has assumed full responsibility for defending it; (6) the action primarily involves third parties; (7) litigation in another forum would prejudice the interest of creditors; (8) the judgment claim arising from the other action is subject to equitable subordination; (9) the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) stay relief would further the interests of judicial economy and lead to an expeditious and economical resolution of litigation; (11) the parties are ready for trial in the other proceeding; and (12) imposition or relief from the stay will cause significant harm to either of the parties.

In re Mid-Atl. Handling Sys., LLC, 304 B.R. at 130; In re Mireskandari, 2019 WL 011102, at *2.

Pursuant to 11 U.S.C. § 362(g) (2), the burden to resist lifting of the Automatic Stay rests entirely with the Debtor. This statute "by its burden shifting, seems almost . . . to ask 'why

-5-

shouldn't the stay be lifted'" rather than asking "why should the court lift the stay." In re Abeinsa Holding, Inc., 2016 WL 5867039, at *3 (Bankr. D. Del. Oct. 6, 2016).

Here, the Debtor cannot meet its burden of resisting the Motion. The relevant factors cited above are 5, 6, 10 and 12. All of these factors weigh heavily towards granting the Motion. The Debtor has conceded the Policy provides coverage. That coverage is the exclusive source of payment to Foster - indeed, Foster does not assert a claim seeking recovery from other assets of the estate (factor 5). There are multiple defendants in the State Court Action, including multiple unknown parties who participated in the actionable activities for which Foster seeks recovery (factor 6). Stay relief would further the interests of judicial economy by facilitating the prompt resolution of the State Court Action in the Superior Court (factor 10). Finally, the Debtor cannot meet its burden of demonstrating any harm if the stay is modified, because the Debtor will suffer minimal, if any, harm if its insurer and third parties are forced to defend the State Court Action in in the Superior Court (factor 12).

**C.     The Automatic Stay Should Be Terminated Pursuant to 11 U.S.C. § 362(d) (2) Because the Debtor Lacks an Equity in the Policy and the Policy Is Not Necessary to an Effective Reorganization**

"The classic test for determination under section 362(d) (2) focuses on a comparison between the total liens against the property and the property's current value." In re Indian Palms Assocs., Ltd., 61 F.3d 197, 206 (3d Cir. 1995). Here, Foster will recover only from the policy proceeds. The Debtor has no interest in the Policy proceeds, so there cannot be equity in the Policy. Although the Debtor has failed and refused to produce a copy of the Policy, upon information and belief, the Debtor is not entitled to a refund or rebate of any portion of the premiums it paid unless it cancels or terminates the Policy. Also upon information and belief, the Debtor has not terminated or canceled the Policy and the Debtor has no right to any insurance proceeds in excess of the amounts necessary to pay Foster (if any), as there is no ability of the

-6-

Debtor to access the policy proceeds under any circumstances for its own use. Instead, upon information and belief, only Foster and similarly situated tort claimants have any right or claim to any of the policy proceeds. Thus, there is no equity for the Debtor in the Policy above the amounts owed to Foster.

Similarly, the Policy is not necessary to an effective reorganization. The burden is on the Debtor to demonstrate that "if there is conceivably to be an effective reorganization, [the Policy] will be needed for it; but that the property is essential for an effective reorganization that is in prospect." United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375–76 (1988) (emphasis omitted); Matter of Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 449 (Bankr. D.N.J.), aff'd sub nom. FGH Realty Credit Corp. v Newark Airport/Hotel Ltd. P'ship, 155 B.R. 93 (D.N.J. 1993). Here the Plan has been confirmed. The Plan makes clear *no* reorganization is in prospect, because by its terms, the Plan is a liquidating Plan, in which the Debtor liquidates rather than reorganizes. See, e.g., Plan Art. I, §92 (defining "Liquidation"), §94 (defining "Liquidating Trust"), §96 (defining "Liquidation Transactions"), Art. IV, § A. (requiring the Debtors to take all actions to liquidate), Art. VII, §B (requiring the Plan Administrator to implement the Plan), § C. (establishing Liquidating Trust and requiring it to liquidate assets), Nowhere does the Plan, either directly or by fair implication, provide that the Policy is necessary or is "essential" for any liquidation that is in prospect; the Policy, which only provides coverage in the past, is not essential to any liquidation of the Debtor's assets.

Similarly, the Plan injunction should be modified to permit Foster to continue the State Court Action and to recover solely against the Debtor's insurers. As a threshold matter, it is unclear whether and how the injunction works. 11 U.S.C. § 1141(d) (3) (A) provides that where, as here, the Plan Provides for the liquidation of all or substantially all of the property of the estate,

-7-

the Plan does not discharge a Debtor. The Plan injunction provides the Debtor with precisely the same outcome as would exist if the Plan discharged the Debtor. Thus, the effects, if any, of the discharge injunction are unclear at best, because the Plan injunction effects a discharge of the Debtor, thereby conflicting with the unambiguous and unconditional denial of a discharge to the Debtor and violating the Bankruptcy Code. See, Califano v. Yamasaki, 442 U.S. 682, 705 (1979) (federal courts retain their equitable power to issue injunctions but only absent a clear command by Congress otherwise).

Assuming *arguendo* that the Plan injunction is effective against Foster according to its terms, the Court, nevertheless, should modify it as requested. "Motions to dissolve an injunction are addressed to the sound discretion of the [court]." Sec. & Exch. Comm'n v. Warren, 583 F.2d 115, 121 (3d Cir. 1978) "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." Id. (quotation omitted). The Court can also consider whether the injunction "works extreme and unnecessary hardship upon" Foster. Id; see also, Gammon, Inc. v. Lemelson, 442 F. Supp. 211, 216 (D.N.J. 1977) (issuing court retains the authority to modify the terms of injunctions) (citations and internal quotations omitted).

Here, again assuming that the Plan injunction is enforceable against Foster, then Foster submits that the Court should exercise its discretion to modify the Plan injunction. If enforceable against Foster, the Plan injunction constitutes and extreme and unnecessary hardship upon Foster because it prohibits Foster from continuing the State Court Action in order to recover from the Debtor's insurers. Conversely, the only hardship to the Debtor in modifying the Plan injunction would be that the Debtor would need to devote time cooperating with its insurer(s) to defend the State Court Action, a harm which is dwarfed by the harm which will be suffered by Foster if she cannot recover from the Debtor's insurers.

In sum, there is obvious and significant need for the Plan injunction to be modified to permit Foster to recover solely from the Debtor's insurers, while there would be little, if any, harm to the Debtor arising from the proposed modification. The harm to Foster arising from continuation of the Plan injunction is both extreme (it arguably prohibits her from <u>any</u> recovery in this case because the Debtor failed to schedule Foster as a creditor and to provide her with timely notice of its bankruptcy proceeding) and unnecessary (there is no material harm to the Debtor, much less any harm to Debtor which would outweigh the harm to Foster from continuation of the injunction). Accordingly, Foster submits that modification of the Automatic Stay and the Plan injunction are both warranted.

**D.     Waiver of the Fourteen Day Stay Provision of Fed. R. Bankr. P. 4001(a)(3)**

In the event that the Bankruptcy Court grants relief from the Automatic Stay, this Court has the discretion to balance the equities and enter an order waiving the fourteen (14) day stay provisions as contained in Fed. R. Bankr. P. 4001 (a) (3). In examining the relative hardships, the Movant has suffered extensive personal injuries and will likely suffer irreparable harm since her sole source of recovery is available insurance proceeds, which could diminish in value. Accordingly, it is respectfully requested that the Court waive the fourteen (14) day stay provisions of Fed. R. Bankr. P. 4001 (a) (3) so that Movant may seek to recover her claims against any available insurance policies without delay and to avoid the continuing and irreparable harm being visited upon her.

-9-

## CONCLUSION

For the foregoing reasons, Foster respectfully requests that the Court enter an Order modifying the Automatic Stay and Plan injunction to allow Foster to continue the State Court Action to judgment, to enforce any judgment she receives in the State Court Action against the Debtor's insurer and the Policy, whether by execution, levy, collection or otherwise, to waive the 14 day stay provided by Fed. R. Bankr. P. 4001(a) (3) and granting such other and further relief as the Court may deem equitable and just under the circumstances.

DATED: October 13, 2023

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Attorneys for Victoria Foster

By:    */s/ David H. Stein*
       DAVID H. STEIN, ESQ.

#14081963.1 182074.001