VENTURA COUNTY TAX COLLECTOR
Mary Barnes, Deputy Tax Collector
800 South Victoria Avenue
Ventura, California 93009-1290
Telephone:  (805) 654-3775
E-mail:   mary.barnes@ventura.org

*In Pro Se Priority Creditor*
*Ventura County Tax Collector*

U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ

2023 OCT 16  A 10: 32

JEANNE A. NAUGHTON
BY: _____
DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>**HEARING DATE AND TIME:**<br>**October 24, 2023, at 10:00 a.m. (ET)** |

**RESPONSE OF VENTURA COUNTY TAX COLLECTOR TO BED BATH & BEYOND INC.'S MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS AS TO CERTAIN CALIFORNIA TAXING AUTHORITIES (DKT. NOS. 2181 THROUGH 2181-3)**

TO VINCENT F. PAPALIA UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The last four digits of debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the debtors in these Chapter 11 cases and each such debtor's tax identification number may be obtained on the website of the debtors' claims and noticing agent at htttpss://restructuring.ra.kroll.com/bbby. The location of debtor Bed Bath & Beyond Inc.'s principal place of business and the debtors' service address in these Chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

## INTRODUCTION

1. Debtor Bed Bath & Beyond Inc. et al. ("Debtor") has filed a motion ("the Motion") to determine tax liability and stay proceedings as to certain California taxing authorities, including Ventura County, requesting that this Court determine the fair market value of the property at issue to be what the Debtor currently claims to be the appropriate amount for the tax year 2023 (conveniently reducing the assessments by approximately 90 percent), and that all related administrative or state proceedings related to the valuation of the property and related deadlines be stayed by this Court. Priority Creditor Ventura County Tax Collector ("Ventura County") objects to the Motion on the basis that: 1) the Court should exercise its discretion and abstain from hearing the Motion; 2) the Debtor has failed to overcome the presumption that the assets were correctly valued by the Ventura County Assessor, which based its assessment on information submitted by the Debtor itself under penalty of perjury; and 3) Title 11, section 505(a)(2)(C) of the United States Code precludes the requested relief because the Debtor failed to appeal the assessment and the time to do so has passed. Accordingly, Ventura County requests that this Court deny the motion and uphold its priority proof of claims for unpaid personal property taxes in full.

/ / /

/ / /

## BACKGROUND

**A.    THE CLAIMS AT ISSUE**

2.    Ventura County filed a Priority Proof of Claim in the amount of $8,819.85 with the Claims Agent Kroll on September 21, 2023, and was assigned Claim number 17574. (Declaration of Mary Barnes ("Barnes Decl."), ¶ 7.) This was based on the following:

   a. Bed Bath & Beyond of CA LLC; Bed Bath & Beyond #821, Property Number 2007017-0001; located at 4040 East Main Street, Ventura CA 93003, total assessed value of $305,000, 2023 tax assessment of $3,145.77.

   b. Bed Bath & Beyond of CA LLC; Bed Bath & Beyond #138, Property Number 2007017-0004: located at 121 South Westlake Blvd., Thousand Oaks CA 91362, total assessed value of $542,300, 2023 tax assessment of $5,674.08.

(*Ibid.*).

**B.    CALIFORNIA PROPERTY TAX LAW HAS A COMPLEX SET OF RULES AND PROCEDURES TO ASSURE PROPER VALUATION, AND UNIFORMITY OF APPLICATION OF THESE LAWS IS AN ESSENTIAL STATE POLICY**

3.    The California Constitution requires uniformity of taxation of property in California, except as provided in that Constitution or by Federal Law. (Cal. Const., art. XIII, § 1.)

4.    There are several steps for property taxation in California: assessment, equalization, computation, and collection, all designed to achieve as closely as

3

possible the mandated uniformity. (Declaration of Araceli Baikoushev ("Baikoushev Decl."), ¶ 3.) The California Constitution establishes public offices to administer these steps and provide interrelated functions in the property tax system. (*Ibid.*) The assessment and equalization functions are governed by numerous standards, procedures, and protections to ensure fair and uniform application of local property tax assessments, and the computation and collection functions are mainly ministerial. (*Ibid.*)

5. California Code of Regulations, title 18 contains state tax regulations promulgated by the California State Board of Equalization ("SBE"). They are available on the internet at https://www.boe.ca.gov/proptaxes/prop-tax-rules.htm. It is notable that, with regard to business personal property taxes, the assessment is made based upon information supplied by the taxpayer. (Baikoushev Decl., ¶ 4; Cal. Rev. & Tax. Code, § 441.)

6. The claims at issue here are based upon such information that Debtor provided to the County on May 4, 2023, signed under penalty of perjury by the VP of Tax of Bed Bath & Beyond of CA LLC. (Baikoushev Decl., ¶ 9.) With the exception of older personal computers and LAN equipment that were added back that amounted to approximately $85 in value, the Ventura County Assessor's Office based its tax assessment values on this information provided by the Debtor. (*Id.* at ¶ 10.)

7. There is a great deal of quality control built into the system to assure appropriate and uniform application of California property tax assessment principles. At the assessment level, this is assured by the SBE. (*Id.* at ¶ 2.) When a dispute arises, further protections are built into the system by providing for competent and independent assessment appeals boards. (*Id.* at ¶¶ 5-6.)

8. The SBE promulgates property tax rules that are binding statewide in order to ensure consistent application of California property tax laws. (*Id.* at ¶ 2; Cal. Gov. Code, § 15606, subd. (c).) The SBE also has a statutory duty to publish information that will promote uniformity in appraisal practices and in assessed values throughout the state. (*See* Cal. Rev. & Tax. Code, § 401.5.)

9. If a taxpayer such as Debtor disagreed with an assessment, the appropriate procedure would be to file an assessment appeal. (Baikoushev Decl., ¶ 5.) Under California Revenue and Taxation Code, section 1603, a reduction in the assessment roll cannot be made unless the taxpayer files a timely written petition with the assessment appeals board. (*Id.* at ¶ 5.)

10. Article XIII, section 16 of the California Constitution establishes assessment appeals boards or county boards of equalization in each county. These tribunals are mandated to hear and determine valuation disputes between assessors and taxpayers. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1344-1345; Cal. Rev. & Tax. Code, § 1610.8.) All counties

5

maintain such boards. These boards ensure that all real and personal property within the County are assessed fairly and according to applicable California law. (Baikoushev Decl., ¶ 6.)

11. After a determination by the local assessment appeals board, either party may file an action in state superior court to seek judicial review. (*Id.* at ¶ 7.) The application for the assessment appeal and denial of relief by the assessment appeals board is a prerequisite to judicial review of a property tax assessment. (*Stenocord Corp. v. City and County of San Francisco* (1970) 2 Cal.3d 984, 990.) With respect to judicial relief, it is not the task of a state court in California to determine the appropriate value of the property. Where a court invalidates an assessment appeals board decision, the remedy is to remand the matter to the assessment appeals board for further hearings consistent with the court decision. (*Heavenly Valley, supra,* 84 Cal.App.4th at p. 1343; see also Baikoushev Decl., ¶ 7.)

## THE COURT SHOULD ABSTAIN FROM HEARING THIS DISPUTE OVER LOCAL PROPERTY TAX ASSESSMENTS

12. Debtor moves the court to hear these appeals pursuant to Bankruptcy Code section 505(a), but the court is not obligated to hear the matters. Both title 28 of the United States Code, section 1334(c) and title 11 of the United States Code, section 505(a)(1), grant this court the authority to abstain from hearing a section 505 proceeding. (*See In re Sarfani, Inc.* (Bankr. N.D. Miss. 2015) 527

6

B.R. 241, 250-251.)

13. Many courts have found abstention to be appropriate when uniformity of assessment is at issue. (See, e.g., *Central Valley AG Enterprises v. United States* (9th Cir. 2008) 531 F.3d 750, 764 [recognizing that uniformity of assessment is a basis for abstention]; *In re New Haven Projects Ltd. Liability Co.* (2d. Cir. 2000) 225 F.3d 283, 288 [same]; *In re Cable & Wireless USA, Inc.* (Bankr. D. Del. 2005) 331 B.R. 568, 577-578 ["Each tax authority must enjoy and apply a uniformity of assessment within its tax jurisdiction"]; *In re ANC Rental Corp.* (Bankr. D. Del. 2004) 316 B.R. 153, 159 [abstention is often used where uniformity of assessment is an issue]; *In re Metromedia Fiber Network, Inc.* (Bankr. S.D.N.Y. 2003) 299 B.R. 251, 284 ["Ad Valorem property taxation is governed by local law, and there is compelling local interest in 'uniformity of assessment' in fairly allocating the local tax burden"].) Additionally, it would be prejudicial to California counties to have a New Jersey bankruptcy court determine the state tax issues implicated in the 505 Motion. (See *In re ANC Rental Corp., supra*, 316 B.R. at p. 159 [finding that a local taxing authority in Texas would "be significantly prejudiced by having the taxes at issue determined by a Delaware court"].)

14. In *In re Metromedia Fiber Network, Inc., supra*, 299 B.R. 251, the court exercised discretionary abstention under 28 U.S.C. § 1334(c)(1) and 11 U.S.C.

7

§ 505(a)(1) where a Chapter 11 debtor sought to litigate local tax disputes in the bankruptcy court. There, a Chapter 11 debtor alleged that numerous state and local tax authorities had appraised the debtor's taxable property, subsequently assessed, and sought to collect the local property taxes based on valuations grossly in excess of the property's fair market value. (*Id.* at p. 256.) The debtor invoked the court's jurisdiction under section 505 of the Bankruptcy Code and asked the bankruptcy court to determine the fair market value of the property for tax purposes. (*Ibid.*) Quoting from the United States Supreme Court decision in *Arkansas Corp. Com'n. v. Thompson* (1941) 313 U.S. 132, 145, the court stated:

> "[T]here is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies . . . . And the policy of revising and redetermining state tax valuations . . . would be a complete reversal of our historic national policy of federal non-interference with the taxing powers of states."

(*Metromedia, supra*, 299 B.R. at p. 282.)

15. The *Metromedia* court held also that abstention under title 28 United States Code, section 1334(a)(1), was proper because, among other factors, there is a compelling local interest in uniformity of assessment. (*Metromedia, supra*, 299 B.R. at p. 283.) This is clearly an important interest for California, and in fact is

8

required by article XIII, section 1 of the California Constitution.

16. Abstention is appropriate in this case, as California has many systems in place to ensure, to the best of its ability, fair and evenhanded application of its property tax system among its many taxpayers. (Baikoushev Decl., ¶¶ 2-7.) Even within the State of California, values for tax assessments are never determined even by superior courts, but by independent boards with knowledge of and training in California's property tax system. (*Id.* at ¶¶ 6-7.) There is no need for the federal courts to interfere with this complex and well-balanced state system.

17. Debtor's only claim appears to be that the assessed tax values of Ventura County are different from what its own hired consultant opines to be the "fair market value" of the property, and that based on its own consultant's assessment, the relevant taxes should be reduced by 92.5 percent and 89.5 percent, respectively. (Doc. No. 2181-2, p. 9 [seeking to reduce the assessments for two store locations in Ventura County from $542,300 down to $40,450 (a 92.5 percent reduction), and from $305,000 down to $32,000 (an 89.5 percent reduction)].) Debtor has not presented any basis for its belief that numerous taxing authorities are using appraisal methods in violation of the many different systems of applicable law governing them. Ventura County's strong state interest in upholding its established tax system strongly supports abstention, especially in light of the paucity of information presented in support of Debtor's opposition.

### THE COURT SHOULD DENY THE MOTION BECAUSE THE DEBTOR HAS FAILED TO OVERCOME THE PRESUMPTION THAT THE ASSETS WERE CORRECTLY VALUED BY THE VENTURA COUNTY ASSESSOR, WHICH BASED ITS ASSESSMENT ON INFORMATION SUBMITTED BY THE DEBTOR ITSELF UNDER PENALTY OF PERJURY

18. With regard to Ventura County, the Motion appears to encompass the issue of determination of fair market value of personal property for state tax purposes for the 2023 tax year for two store locations. As previously noted, the suggested discounts are quite steep in each case, seeking a total reduction in assessed value from $847,300 down to $70,400, or an approximate 91 percent reduction in assessed value. (Doc. No. 2181-2, p. 9.)

19. The only evidence Debtor submits in support of these substantial reductions is the Declaration of John W. Lammert. (Doc. No. 2181-2.) But Mr. Lammert's declaration is merely a self-serving statement that his proposed reductions are correct without any evidence with respect to the particular properties at issue. In other words, Debtor is asking the court to find that the reductions are merited not because of any facts that the court can evaluate, but because Mr. Lammert says that the reductions are merited. In California, the assessor's values are entitled to a presumption of correctness, putting the burden of proof on the taxpayer. (Cal. Rev. & Tax. Code, § 167.) Mr. Lammert's statements are not sufficient to meet that burden. (*In re Cable & Wireless USA, Inc., supra*, 331 B.R. at pp. 579-580 [evidence failed to overcome presumption of

10

the validity of local tax assessments].)

20. Debtor's Motion also declines to acknowledge that the valuations used by the County were based on information provided by Debtor itself. On May 4, 2023, Debtor submitted business property statements to the County Assessor's Office, signed by its VP of Tax, under penalty of perjury, that set forth values for the taxable personal property at its locations in the County. (Baikoushev Decl., ¶ 9.) With the exception of older personal computers and LAN equipment that were added back that amounted to approximately $85 in value, the Assessor's Office based its tax assessment values on this information provided by the Debtor itself. (*Id.* at ¶ 10.)

21. In addition, Debtor incorrectly tries to use the purported values from the sales of assets as part of its store closing process to determine the purported correct assessment. The Lammert Declaration states, "Data from the Debtors' sales of store assets were collected from records provided by the Debtors and included sales from stores which are the subject of the Motion and other stores throughout the Debtors' portfolio. The Debtors submit that the sales prices derived from the Debtor Sales Data approximates the Fair Market Value definition, considering a willing buyer and seller." (Doc. No. 2181-2, ¶ 12.) Lammert goes on to say that "From this source, the Debtors have estimated the Fair Market Value of the Property" as set forth in Exhibit 1 to his declaration. (*Id.*

at ¶ 13.) In Exhibit 1, Mr. Lammert asserts that Ventura County's two tax assessments, which were based on information submitted by the Debtor itself, should be reduced from $542,300 down to $40,450 (a 92.5 percent reduction), and from $305,000 down to $32,000 (an 89.5 percent reduction), respectively. (Doc. No. 2181-2, p. 9.) However, sales of assets from bankruptcy estates are not indicative of appropriate California tax assessment values due to exigencies often surrounding such sales. (See California State Board of Equalization, Assessor's Handbook Section 504, p. 140 [available at: https://www.boe.ca.gov/proptaxes/pdf/ah504.pdf] ["Sales of assets from a bankruptcy estate should not necessarily be considered valid indicators of market value under the definition of Revenue and Taxation Code section 110. The buyer of property from a bankrupt's estate has the ability to take advantage of the exigencies of the seller. Frequently, the trustee's desire to liquidate the assets in an abbreviated period of time further impinges on the concept of 'open market transaction'"].) Courts have also recognized that sales from bankruptcy estates are not competent to set fair market values. (See, e.g., *In re Cable & Wireless USA, Inc.*, supra, 331 B.R. at pp. 579-580 [use of bankruptcy sale to value assets is "fundamentally flawed"].)

22. The Debtor has failed to overcome the presumption that the tax assessment is correct, and as such the Motion should be denied.

## SECTION 505(a)(2)(C) PRECLUDES THE MOTION'S REQUESTED RELIEF BECAUSE THE DEBTOR FAILED TO APPEAL THE ASSESSMENT AND THE DEADLINE TO DO SO HAS PASSED

23. Section 505(a)(2)(C) states expressly that the Court "may not" determine "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." (11 U.S.C. § 505(a)(2)(C).)

24. The tax bills issued to Debtor clearly state that if an assessee disagrees with the assessment on the tax bill, it must file an appeal no later than September 15, 2023. (Barnes Decl., ¶ 5; see also *id.*, Ex. A.) The tax bill includes information to facilitate such appeals, including address, telephone and website information. (*Ibid.*) Debtor notably chose not to properly appeal these assessments by the deadline, even though it was well aware such taxes would be assessed (by having submitted to the Assessor's office its 2023 business property statement). (Baikoushev Decl., ¶ 9.) Debtor had a clear opportunity to file a proper appeal of these taxes if it believed it did not owe the assessments, and chose not to do so. The deadline to do so has now passed. As such, pursuant to Section 505(2), this Court should not entertain Debtor's untimely challenge to the assessments at issue.

///

## JOINDER OF ARGUMENTS SUBMITTED BY OTHER CALIFORNIA TAXING ENTITIES

25. Ventura County understands that Debtor is concurrently challenging the assessed values of numerous other California taxing entities. (*See* Doc. No. 2180 [contesting liability in nine different counties] and Doc. No. 2181 [contesting liability in 17 different counties]). Thus, to the extent the issues overlap, Ventura County expressly joins and incorporates by reference all arguments made by these other California counties in opposition to this Motion.

## RESERVATION OF RIGHTS

26. Ventura County reserves its rights to amend, modify, or supplement this response, or to provide any additional information should the Court so request.

## CONCLUSION

27. The Court should abstain from hearing the Motion. If the Court chooses to hear the Motion, the Court should deny the Motion for the reasons stated above.

## ADDITIONAL INFORMATION

28. Address to which Debtor must return any reply to this response:

> Mary Barnes
> Deputy Tax Collector
> Ventura County Tax Collector
> 800 S. Victoria Avenue
> Ventura, CA 93009-1290
> Phone: (805) 654-3775
> Email: Mary.Barnes@ventura.org

/ / /

29. Claims involved (for Business Personal Property): Claim number 17574, in the amount of $8,819.85.

Dated: October 12, 2023

By: *Mary Barnes*
MARY BARNES
Deputy Tax Collector

In Pro Se, Ventura County Tax Collector