| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| Neelay Das<br>4682 Chabot Dr #10236<br>Pleasanton, CA 94588-2747<br><br>Email: neelay.bbby.njb@gmail.com<br><br><br><br>*Stockholder* | Gabriel Rostom<br>63 Rue de la Folie Regnault<br>75011 PARIS – France<br><br>Tel : +33756942880<br><br><br><br>*Stockholder* |
| In Re:<br><br>BED BATH & BEYOND INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

# EMERGENCY MOTION OF COMMON STOCK EQUITY INTEREST HOLDERS FOR STAY AND ASSOCIATED RELIEF PENDING APPEAL PURSUANT TO FED. R. BANKR. P. 8013(d) AND 8007

## INTRODUCTION

1.  Neelay Das and Gabriel Rostom, the undersigned holders (the "Stockholders") of Common Stock equity interests in 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) (the "Debtor Corporation"), which has traded on the Nasdaq exchange under the symbol "BBBY" and has traded over the counter under the symbol "BBBYQ" as recently as 09/29/2023, file this Emergency Motion (the "Emergency Motion"), pursuant to Fed. R. Bankr. P. 8013(d) and 8007, respectfully requesting the entry of an order to stay pending appeal the portion of this Court's

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

Order Confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan Confirmation Order") entered on September 14, 2023 as *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2172] (the "Final Approval And Confirmation Order"), hereby attached as Exhibit B to attached Exhibit III, Motion For Certification Of Direct Appeal and to specifically enjoin, pending appeal of the Final Approval And Confirmation Order, the Debtors, transfer agent and/or registrars contracted/employed by them and the United States Securities And Exchange Commission (the "SEC") from canceling, releasing, extinguishing, terminating registration of or restricting shareholder access to the Certificates for Shares and the records of the interests of Common Stock Equity Interest Holders in the Common Stock of the Debtor Corporation and revert[2] any actions that might have already been taken to that effect. The Stockholders respectfully request at a minimum, the entry of an order to stay the Plan Confirmation Order and enjoin the Debtors, transfer agent and/or registrars contracted/employed by them and the SEC from canceling, releasing, extinguishing, terminating registration of or restricting shareholder access to the Certificates for Shares and the records of the interests of Common Stock Equity Interest Holders in the Common Stock of the Debtor Corporation and revert any actions that might have already been taken to that effect, until this emergency motion has been fully adjudicated. During the Plan Confirmation Hearing and Motions Hearing held on September 12, 2023 at 2:30 pm E.T., the Stockholders' arguments against the Confirmation of the Debtors Chapter 11 Plan based on the turnover requirement for stock held in the debtor corporation pursuant to sections 542 and 541 of the Bankruptcy Code not being met in the Stockholders' *Motion To Vacate The Order (I) (A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan, (C) Approving The Forms Of Ballots And Notices In Connection Therewith* [Docket No. 2068] (the "Motion To Vacate"), treated as an Objection by the Court, were overruled on the merits pursuant to the Court's Final Approval And Confirmation Order. The Stockholders filed a Notice of Appeal [Docket No. 2305] on September 28, 2023 appealing the Final Approval And Confirmation Order.

---

[2] Eg: Actions taken to terminate registration of securities via filing SEC Form 15-12G can be reverted by withdrawing the Certification on Form 15 pursuant to Rule 12g-4(b) of The Securities Exchange Act Of 1934 using the procedure described on the following website: https://www.sec.gov/page/edgar-how-do-i-correct-withdraw-or-delete-filing#section3

2.  The Stockholders now ask this Court for a stay of the Plan Confirmation Order and associated relief pending appellate review of the Final Approval And Confirmation Order. Immediate action is necessary because, as stated in the *Affidavit Of Neelay Das In Support Of The Emergency Motion Of Common Stock Equity Interest Holders For Stay And Associated Relief Pending Appeal Pursuant To Fed. R. Bankr. P. 8013(D) And 8007* (the "Das Affidavit"), which is hereby attached as Exhibit I, it is apparent that Debtors have started canceling the Stockholders' shares and/or manipulating the shareholder records and changing the transfer agent first to Mellon Investor Services, LLC, which was acquired in 2012 by Computershare from The Bank of New York Mellon ("BNY Mellon"), the 2014 Senior Unsecured Notes Trustee and then eventually they plan to change the transfer agent to Wells Fargo Shareowner Services, which changed to EQ Shareowner Services since 2017 after being acquired by Equiniti and it is also the transfer agent used by BNY Mellon[3], the 2014 Senior Unsecured Notes Trustee. This appears to be part of cancellation of the shares of Stockholders following the occurrence of the Effective Date to allow the 2014 Senior Unsecured Notes Trustee to exercise its charging lien on that property pursuant to Section 11.01(a) of the 2014 Notes Indenture[4], even before the date on which distributions will be made, in direct violation of section II.M *Cancellation of Securities and Agreements* of the Final Approval And Confirmation Order, which states that Stockholders' shares will be canceled on the later of the Effective Date or the date on which Distributions are made, as the Distribution date cannot be before the the Administrative Claims Bar Date of 10/13/2023[5], pursuant to the absolute priority rules specified in section 507(a)(2) of the Bankruptcy Code. The Stockholders will be irreparably harmed if their shares in the Debtor Corporation are canceled, released, extinguished or their registration is terminated before all the shares are turned over, pursuant to sections 542 and 541 of the Bankruptcy Code, as they will sustain incalculable damages due to deprivation of their rights to sell their shares at the considerably appreciated price per share that will eventually result from short sellers with open short positions for at least 81.74 million shares[6], having to buy back those shares to close out their positions as the corresponding shares get recalled by the shares lenders. Also, the Stockholders will likely suffer irreparable harm if

---

[3] Following BNY Mellon Investor Relations website specifies that EQ Shareowner Services (f/k/a Wells Fargo Shareowner Services) is there Transfer Agent: https://www.bnymellon.com/us/en/investor-relations/investor-contacts.html
[4] 2014 Notes Indenture is available here: https://www.sec.gov/Archives/edgar/data/886158/000157104914003037/t1401314_ex4-1.htm
[5] Administrative Claims Bar Date is fourteen (14) days following the Effective Date. See Notice Of (I) Entry Of The Order (A) Approving The Disclosure Statement On A Final Basis And (B) Confirming the Second Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates And (II) Occurrence Of Effective Date [Docket No. 2311]
[6] On 09/15/2023 an open short interest of 81,740,485 BBBYQ shares was reported by FINRA from data collected from member firms, at the following website: https://www.finra.org/finra-data/browse-catalog/equity-short-interest/data

estate assets are distributed in accordance with the Plan Confirmation Order (this can occur imminently within days, immediately following the Administrative Claims Bar Date of 10/13/2023, pursuant to the absolute priority rules specified in section 507(a)(2) of the Bankruptcy Code), prior to a determination of the appeal, because it is likely that the appeal will then be challenged as equitably moot.

3. The debtors did not elect to be treated as small business debtors in the Chapter 11 Voluntary Petition [Docket No. 1] and specifically confirmed in section I.P.s. of *Findings Of Fact, Conclusions Of Law, And Order (I) Approving The Disclosure Statement On A Final Basis And (II) Confirming The Second Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* (the "Proposed Final Approval And Confirmation Order"), *see* Docket No. 2162, p. 31, that was copied over to the Final Approval And Confirmation Order that they did not elect to be treated as small business debtors. Pursuant to section 1125(f)(3) of the Bankruptcy Code the Conditional Approval of a Disclosure Statement is available only in a small business case and yet the Debtors filed for Conditional Approval of their Disclosure Statement while requesting Shortened Notice Period and Requirements, *see* Docket No. 1438, which was also approved erroneously by this Court, *see* Docket No. 1716, and acceptance or rejection of the plan was solicited based on that erroneously conditionally approved Disclosure Statement before Final Approval of the Disclosure Statement, in violation of section 1125(b) of the Bankruptcy Code. This substantially harmed the Movants, by preventing them from filing timely objections that could be considered by the Court, as described in paragraph 2 of the Movants' *Reply In Support Of The Application For Order Shortening Time With Respect To The Motion Of Bed Bath And Beyond Common Stock Equity Interest Holders' Motion, Pursuant To 11 U.S.C. § 105(A), Fed. R. Civ. P. 60(B), And Fed. R. Bankr. P. 9024 For An Order Vacating The Order (I)(A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan, (C) Approving The Forms And Ballots And Notices In Connection Therewith* [Docket No. 2125], which in turn prevented robust litigation of the threshold legal issues that the Movants presented in their Motion to Vacate parts of the order conditionally approving the disclosure statement and those issues could have been otherwise discussed during the hearing on the Final Approval of the Disclosure Statement before approving solicitation on the acceptance or rejection of the Plan based on the disclosure statement.

4. The Movants are now also contemporaneously filing, along with this Emergency Motion, a *Motion Of Common Stock Equity Interest Holders For*

*Certification Of Direct Appeal To The United States Court Of Appeals For The Third Circuit* (the "Motion For Certification Of Direct Appeal"), hereby attached as Exhibit III, requesting the entry of an order certifying the Final Approval And Confirmation Order for direct appeal to the United States Court of Appeals for the Third Circuit. Courts in this circuit have applied[7] a four-factor test that along with a sliding-scale approach to balancing the stay factors, to determine whether a stay should be granted pending appeal. First, in addition to the undisputable reversible error in judgment discussed in the previous paragraph, from the arguments presented in sub-sections I. and III. of the *ARGUMENT* section in the attached Motion For Certification Of Direct Appeal (Exhibit III) it is clear that the Stockholders are likely to succeed on the merits of their appeal. Second, imminent, irreparable harm will occur to the Stockholders in the absence of a stay, as explained in paragraph 2. Third, the balance of harms favors a stay, as the importance of the issues on appeal outweighs any inconvenience of delay that the parties or any third party might claim, especially since all the DIP agreement milestones, as seen in the *Final Order (I) Authorizing The Debtors To (A) Obtain Postpetition Financing And (B) Utilize Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying The Automatic Stay, And (V) Granting Related Relief* [Docket No. 729](the "Final DIP Order") have already been met and moreover, if the Appeals Court rules in favor of turnover of shares before their cancellation, pursuant to section 542 and 541 of the Bankruptcy code any third party, eg: 2014 Senior Unsecured Notes holders, to whom these shares may be transferred to satisfy 2014 Senior Unsecured Notes Trustee's charging lien, may be able to achieve a much higher recovery than otherwise, due to the appreciated price per share resulting from closing out of short positions due to the turnover of shares. Finally, from the arguments presented in sub-section II. of the *ARGUMENT* section in the attached

---

[7] Under Federal Rule of Bankruptcy Procedure 8007, a party can move to stay the effect of a bankruptcy court order pending a resolution on appeal. See Fed. R. Bankr.P. 8007. The factors considered "overlap" the familiar ones courts look to in ruling on applications for preliminary injunctions. *See Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (observing that "similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined"). To repeat essentially what was already noted above, the following factors come into play:

<u>(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.</u>
*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). In order not to ignore the many gray shadings stay requests present, courts "balance[e] them all" and "consider the relative strength of the four factors." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir.2011) (quoting *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir.1994) (internal quotation marks omitted)); *see also* 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3954 (4th ed. 2008) ("The four factors should be balanced; thus, for example, if the balance of harms tips heavily enough in the stay applicant's favor then the showing of likelihood of success need not be as strong, and vice versa." (footnotes omitted)).
*See In re Revel AC, Inc.*, 802 F. 3d 568 - Court of Appeals, 3rd Circuit 2015

Motion For Certification Of Direct Appeal (Exhibit III) it is clear that public interest overwhelmingly favors a stay pending appeal for adjudication of the threshold issues to answer the fundamental question whether the publicly issued outstanding stock of a Debtor Corporation is subject to turnover after the commencement of a Bankruptcy case, pursuant to sections 542 and 541 of the Bankruptcy code, before the corresponding equity interests are canceled to effectuate transactions pursuant to the plan involving the underlying Debtor Corporation assets, free and clear of all liens, claims, charges, or other encumbrances. Hence, all the four factors of the four-factor test are satisfied, which warrants that the Emergency Motion should be granted.

## JURISDICTION AND VENUE

5.  The Court has jurisdiction over this Emergency Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 8007 and 8013(d) and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

6.  On April 23, 2023 ("Petition Date"), Bed Bath & Beyond Inc., and the related Debtor Affiliates ("Debtors") filed voluntary petitions for relief under the Bankruptcy Code, where they did not elect to be treated as small business debtors. *See* Docket No. 1.

7.  On April 24, 2023, the Court entered an Order Directing Joint Administration of Chapter 11 Cases. See Docket No. 75.

8.  Pre-petition, the Debtors operated as a home furnishing retailer in the United States, Canada, Mexico, and Puerto Rico offering products from bed linens to cookware to electric appliances, home organization, baby care, and other items. See Docket No. 10.

9.  On August 1, 2023, the Debtors filed the Amended Joint Plan. See Docket No. 1712.

10. On August 2, 2023, the Court entered an *Order (A) Conditionally Approving Disclosure Statement, (B) Approving the solicitation and Notice Procedures with respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in connection with therewith, (D) Scheduling a Combined Disclosure Statement approval and Plan Confirmation Hearing* (the "Conditional DS Order"). See Docket No. 1716.

6

11. On August 28, 2023, the Stockholders moved to vacate parts (A)-(C) of the Conditional DS Order pursuant to 11 U.S.C. § 105(a), FED. R. CIV. P. 60(b), and FED. R. BANKR. P. 9024 because of multiple unaddressed objections. The first objection was that a mistake in the Release Opt-Out Form attachment in the *Notice Of Non-Voting Status To Holders Of Impaired Claims And Interests Deemed To Reject The Plan* that was distributed[8] prior to the September 1, 2023 plan voting deadline, which was also the deadline to submit the Release Opt-Out Forms, was misleading the Stockholders before the imminent Release Opt-Out Forms submission deadline. The second objection was that the Disclosure Statement did not not meet the requirement, for conditional approval, of providing adequate information to the claimants, pursuant to sections 1125(a)(1) and 1125(f)(3) of the Bankruptcy Code, that the claims from claimants who were holding borrowed shares of Bed Bath and Beyond Common Stock, which per the Stockholders' interpretation of section 541 of the Bankruptcy Code constitute property of the Debtors' estate, are disallowed and made them ineligible to vote on the acceptance of the Chapter 11 plan, pursuant to sections IV.I.6 of the Disclosure Statement and IX.F of the Debtors' Chapter 11 Plan and section 542 of the Bankruptcy code. The third objection was that by on one hand potentially allowing distributions to claimants with disallowed claims and on the other hand not providing for turnover of borrowed Common Stock pursuant to section 542 of the Bankruptcy code, before it was canceled, the plan was not fair and equitable with respect to the classes in accordance with section 1129(b) of the Bankruptcy code, which in turn made the plan unconfirmable because of requirements of sections 1129(a)(3) and 1129(b)(1) of the Bankruptcy Code not being met. The Stockholders also contemporaneously filed an Application For Order Shortening Time [Docket No. 2069] with the Motion to Vacate to request a hearing on that on the only available hearing date of August 29, 2023 before the Release Opt-out Forms submission deadline of September 1, 2023. That application was denied due to the impracticality of scheduling a hearing on less than 24 hours notice and a hearing on the Motion To Vacate treated as an objection was scheduled for September 12, 2023, which was the same date and time as the Hearing on the final approval of Debtors' Disclosure Statement and Confirmation of their Plan, where the Motion To Vacate was treated as an objection, See Docket No. 2084, p. 2.

12. On September 7, 2023 Debtors' Counsel e-mailed Mr. Das that the Stockholders shall not be included in the definition of "Releasing Parties" as that term is defined under the Plan [Docket No. 1712]. Also, from the *Limited Objection To The*

---

[8] An example of such a distributed notice is available here:
https://www.proxydocs.com/0/001/930/337/bbby__7184809__impaired_nonvoting_notice_12.pdf

7

*Amended Joint Chapter 11 Plan* [Docket No. 2123] filed by the United States Trustee ("U.S. Trustee") the Stockholders came to know that as a result of discussions between the U.S. Trustee and the Debtors, the Debtors had agreed to modify the "Releasing Parties" definition to delete as a Releasing Party "(f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan." See Docket No. 1712, p. 17. This resolved the first objection in the Stockholders' Motion To Vacate.

13.  Debtors' Counsel filed the Proposed Confirmation Order document *Findings Of Fact, Conclusions Of Law, And Order (I) Approving The Disclosure Statement On A Final Basis And (II) Confirming The Second Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* less than an hour before the September 12, 2023, 2:30 pm E.T. Plan Confirmation Hearing, where they specifically confirmed in section I.P.s. that debtors did not elect to be treated as small business debtors. *see* Docket No. 2162, p. 31.

14.  During the hearing on the Motion To Vacate, along with that on the final approval of Debtors' Disclosure Statement and Confirmation of their Plan, held on September 12, 2023, from the list of the Stockholders' unaddressed objections, Debtors' counsel Mr. Fiedler only addressed Stockholders' third objection and stated "The second point is, I think they make the argument that the plan doesn't satisfy 1129(b)(2) because it's not fair and equitable. The equity interests are being cancelled under this plan, they're not entitled to any recovery in accordance with the absolute priority rule." *see* Tr., Sep. 12, 2023, at 55:14-18. The Court couldn't "find any authority for the proposition that authorized stock of a debtor corporation is property of the estate and the debtor corporation as opposed to the party holding the stock". *see* Tr., Sep. 12, 2023, at 56:2-5. Therefore, the Court didn't understand or didn't accept the section 542 turnover argument that underlied the objection and agreeing with Mr. Fiedler's reasoning denied the objection. The Court then entered an order *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2172] on September 14, 2023 which stated that all unresolved objections, including Stockholders' second and third objections, were overruled on the merits in all respects.

15.  On September 28, 2023, the Movants jointly noticed their appeal of the Final Approval And Confirmation Order [Docket No. 2305] and are now contemporaneously along with this motion, filing on an expedited basis a *Motion Of Common Stock Equity Interest Holders For Certification Of Direct Appeal To The United States Court Of Appeals For The Third Circuit*, hereby attached as Exhibit III,

8

to respectfully request that this Court certify a direct appeal to the Third Circuit. *See* 28 U.S.C. § 158(d)(2)(A)-(B) (requiring a bankruptcy court to certify an appeal if any of four factors is present).

## REQUESTED RELIEF

16. The Stockholders respectfully request the entry of an order to stay pending appeal the portion of this Court's Order Confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan Confirmation Order") entered on September 14, 2023 as *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2172] (the "Final Approval And Confirmation Order"), hereby attached as Exhibit B to attached Exhibit III, Motion For Certification Of Direct Appeal and to specifically enjoin, pending appeal of the Final Approval And Confirmation Order, the Debtors, transfer agent and/or registrars contracted/employed by them and the SEC from canceling, releasing, extinguishing, terminating registration of or restricting shareholder access to the Certificates for Shares and the records of the interests of Common Stock Equity Interest Holders in the Common Stock of the Debtor Corporation and revert[9] any actions that might have already been taken to that effect. The Stockholders respectfully request at a minimum, the entry of an order to stay the Plan Confirmation Order and enjoin the Debtors, transfer agent and/or registrars contracted/employed by them and the SEC from canceling, releasing, extinguishing, terminating registration of or restricting shareholder access to the Certificates for Shares and the records of the interests of Common Stock Equity Interest Holders in the Common Stock of the Debtor Corporation and revert any actions that might have already been taken to that effect, until this emergency motion has been fully adjudicated.

17. A proposed order granting the above requested relief is attached as Exhibit II.

## ARGUMENT

### I. Request for Stay Pursuant to Fed. R. Bankr. P. 8007

18. Bankruptcy Rule 8007 provides that a party may move for "a stay of a judgment, order or decree of the bankruptcy court pending appeal; . . . " Fed. R. Bankr. P. 8007(a)(1)(A). It further states that "the bankruptcy court may . . . issue any

---

[9] Eg: Actions taken to terminate registration of securities via filing SEC Form 15-12G can be reverted by withdrawing the Certification on Form 15 pursuant to Rule 12g-4(b) of The Securities Exchange Act Of 1934 using the procedure described on the following website: https://www.sec.gov/page/edgar-how-do-i-correct-withdraw-or-delete-filing#section3

other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007(e)(2).

19. A party must move first in the bankruptcy court for a stay. *See* Fed. R. Bank. P. 8007. As previously described, an oral request for a stay pending appeal was denied without any specific reasons stated on the record. Thus, the request is being made here and now.

## II. The Relevant Factors for Stay Pending Appeal

20. In the Third Circuit, the determination of whether to grant a stay pending appeal pursuant to Rule 8007 is based on the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). In order not to ignore the many gray shadings stay requests present, courts "balance[e] them all" and "consider the relative strength of the four factors." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir.2011) (quoting *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir.1994) (internal quotation marks omitted)); *see also* 16A Charles Alan Wright et al., *Federal Practice and Procedure § 3954* (4th ed. 2008) ("The four factors should be balanced; thus, for example, if the balance of harms tips heavily enough in the stay applicant's favor then the showing of likelihood of success need not be as strong, and vice versa." (footnotes omitted)).
*See In re Revel AC, Inc.*, 802 F. 3d 568 - Court of Appeals, 3rd Circuit 2015. Here, the Stockholders are entitled to a stay because the factors strongly weigh in their favor.

### 1) There Is A Strong Likelihood That The Stockholders Will Succeed On The Merits Of Their Appeal

21. In addition to the undisputable reversible error in judgment discussed in paragraph 3, from the arguments presented in sub-sections I. and III. of the ARGUMENT section in the attached Motion For Certification Of Direct Appeal (Exhibit III) it is clear that the Stockholders are likely to succeed on the merits of their appeal. Furthermore, 28 U.S.C. § 158(d)(2)(A)-(B) provides that this Court must certify a direct appeal to the Third Circuit if it finds that any one of the four factors

pursuant to 28 U.S.C. § 158(d)(2)(A) are present, whereas here all four factors are met.

### 2) The Stockholders Will Suffer Irreparable Injury If The Stay Is Not Granted

22. Imminent, irreparable harm will occur to the Stockholders in the absence of a stay, as explained in paragraph 2. Irreparable harm under Bankruptcy Rule 8007 exists where "there is a significant risk that [the movant] will experience harm that cannot be adequately compensated by money damages." *In re Hudson's Coffee, Inc.*, 2008 WL 4837285, at *3 (Bankr. D.N.J. 2008) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102-03 (3d Cir. 1988)). A party is irreparably harmed where damages are impossible to ascertain such that there is no other way short of a stay to maintain the status quo. *See Commercial Radio Institute. Inc. v. W. Pa. Christian Broad. Co.*, 428 F. Supp. 1054, 1057 (W.D. Pa. 1977). Because failure to obtain a stay may be the end of an appellant's appeal, thereby resulting in irreparable injury, "there is a concomitant obligation on the courts to consider such stay application thoroughly and with full appreciation of the consequences of a denial." *Trone v. Roberts Farms, Inc. (In re Roberts Farms. Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981).

23. As explained in paragraph 2, The Stockholders will be irreparably harmed if their shares in the Debtor Corporation are canceled, released, extinguished or their registration is terminated before all the shares are turned over, pursuant to sections 542 and 541 of the Bankruptcy Code, as they will sustain incalculable damages due to deprivation of their rights to sell their shares at the considerably appreciated price per share that will eventually result from short sellers with open short positions for at least 81.74 million shares, having to buy back those shares to close out their positions as the corresponding shares get recalled by the shares lenders. Also, the Stockholders could potentially suffer irreparable harm if estate assets are distributed in accordance with the Plan Confirmation Order (this can occur imminently within days, immediately following the Administrative Claims Bar Date of 10/13/2023, pursuant to the absolute priority rules specified in section 507(a)(2) of the Bankruptcy Code), prior to a determination of the appeal, because it is likely that the appeal will then be challenged as equitably moot.

24. Moreover, the Third Circuit has explained the doctrine of equitable mootness as "prevent[ing] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract."*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001). Courts recognize where, as here, "the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable

11

harm requirement is satisfied." *Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC)*, 465 B.R. 18, 36 (D. Del. 2011) (finding risk of equitable mootness supported issuance of stay) (quoting *Williams v. Republic (In re Cujas)*, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007)) (emphasis added). Courts also recognize that a loss of one's entire interest in real property is irreparable harm. See *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 631 (E.D. Pa. 2013)("In this case, defendants' continued occupancy of the store, after the termination of the Franchise Agreement, has caused, and will continue to cause, irreparable harm because 7–Eleven may no longer make productive use of its property."); *see also Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 n. 14 (3d Cir. 2011).

25.    Absent a stay, the Stockholders face imminent danger of being bound by a Plan, approved in violation of section 1125(b) of the Bankruptcy Code and inconsistent with Due Process[10], that improperly strips them of their equity interests without an opportunity to obtain an appellate court's review of the underlying decision. This risk of mootness and the immediate abrogation of the Stockholders' rights in equity is without a doubt irreparable harm. For these reasons, the Stockholders request this Court to issue the requested stay and associated relief.

**3) A Stay Would Not Substantially Harm Other Parties In The Litigation**

26.    In contrast to the imminent, irreparable harm faced by the Stockholders, the Debtors and the third parties will suffer no permanent harm if this Court grants the stay and associated relief requested herein, pending appeal. All the DIP agreement milestones, as seen in the Final DIP Order have already been met and moreover, if the Appeals Court rules in favor of turnover of shares before their cancellation, pursuant to section 542 and 541 of the Bankruptcy code any third party, eg: 2014 Senior Unsecured Notes holders, to whom these shares may be transferred to satisfy 2014 Senior Unsecured Notes Trustee's charging lien, may be able to achieve a much higher recovery than otherwise, due to the appreciated price per share resulting from closing out of short positions due to the turnover of shares. The stay and associated relief requested herein would simply maintain the status quo with respect to the Stockholders' equity interests prior to the Plan Effective Date, pending the final determination of the Appeal, while simply protecting the Stockholders from any potential dispossession and mootness arguments. Accordingly, the harm facing the Stockholders far outweighs any minimal harm that the Debtors and the third parties may face. Moreover, the Stockholders are contemporaneously filing on an expedited basis a *Motion Of Common Stock Equity Interest Holders For Certification Of Direct*

---

[10] *See* Paragraph 3.

*Appeal To The United States Court Of Appeals For The Third Circuit* to minimize any delay in the appeals process.

**4) A Stay Is In The Public Interest**

27. From the arguments presented in sub-section II. of the ARGUMENT section in the attached Motion For Certification Of Direct Appeal (Exhibit III) it is clear that public interest overwhelmingly favors a stay pending appeal for adjudication of the threshold issues to answer the fundamental question whether the publicly issued outstanding stock of a Debtor Corporation is subject to turnover after the commencement of a Bankruptcy case, pursuant to sections 542 and 541 of the Bankruptcy code, before the corresponding equity interests are canceled to effectuate transactions pursuant to the plan involving the underlying Debtor Corporation assets, free and clear of all liens, claims, charges, or other encumbrances.

28. The stay is also supported by the strong public policy in favor of correct application of the law. *See Ams. United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990) (noting that "[t]he public interest lies in the correct application [of the law]"). Moreover, a stay preserves the ability to redress harm through appellate review. *See AT&T Co. v. Winback & Conserve Program. Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.").

## NOTICE

29. Proper notice has been provided pursuant to Fed. R. Bankr. P. 8013(d)(2)(C) to the parties set forth in the Certification of Service attached to the Das Affidavit (Exhibit I). The Certification of Service attached to the Das Affidavit specifies how opposing counsel, parties-in-interest and any unrepresented parties were notified regarding this Emergency Motion, before it was filed, pursuant to Fed. R. Bankr. P. 8013(d)(3).

## CONCLUSION

26. All the four factors relied upon by Courts in the Third Circuit for the determination of whether to grant a stay pending appeal pursuant to Rule 8007 have been satisfied. For the foregoing reasons, Movants respectfully request that this Court grant the relief requested in the *REQUESTED RELIEF* section via entering the Proposed Order attached as Exhibit II.

Respectfully submitted,

Date: 10/13/2023

*/s/ Neelay Das/*

Neelay Das

Date: 10/13/2023

*/s/ Gabriel Rostom/* (Oct 13, 2023 17:48 GMT+2)

Gabriel Rostom