## Exhibit H

**Proposed Order**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
|---|---|
| Neelay Das 4682 Chabot Dr #10236 Pleasanton, CA 94588-2747  Email: neelay.bbby.njb@gmail.com    *Stockholder* | Gabriel Rostom 63 Rue de la Folie Regnault 75011 PARIS – France  Tel : +33756942880    *Stockholder* |
| In Re:  BED BATH & BEYOND INC., et al.,  Debtors.[1] | Chapter 11  Case No. 23-13359 (VFP)  (Jointly Administered) |

## ORDER GRANTING EMERGENCY MOTION OF COMMON STOCK EQUITY INTEREST HOLDERS FOR STAY AND ASSOCIATED RELIEF PENDING APPEAL PURSUANT TO FED. R. BANKR. P. 8013(d) AND 8007

The relief set forth on the following pages is hereby **ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

This matter coming before the Court on the *Emergency Motion Of Common Stock Equity Interest Holders For Stay And Associated Relief Pending Appeal Pursuant To Fed. R. Bankr. P. 8013(D) And 8007* (the "Motion") filed by Neelay Das and Gabriel Rostom, holders (the "Stockholders") of Common Stock equity interests in 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.); the Court having reviewed the Motion and any objections to the Motion; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 8007 and 8013(d), (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (d) notice of the Motion and the Hearing was sufficient under the circumstances;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED;

2.      The effectiveness of portion of this Court's Order Confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan Confirmation Order") entered on September 14, 2023 as *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2172] (the "Final Approval And Confirmation Order") is hereby stayed pending resolution of the Stockholders' Appeal for which Notice of Appeal was docketed at Docket No. 2305;

3.      The Debtors, transfer agent and/or registrars contracted/employed by them and the United States Securities And Exchange Commission are hereby enjoined from canceling, releasing, extinguishing, terminating registration of or restricting shareholder access to the Certificates for Shares and the records of the interests of Common Stock Equity Interest Holders in the Common Stock of the Debtor Corporation and shall revert any actions that might have already been taken to that effect; and

4.      This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation or enforcement of this Order.

## Exihibit III

**Motion For Certification Of Direct Appeal**

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| Neelay Das<br>4682 Chabot Dr #10236<br>Pleasanton, CA 94588-2747<br><br>Email: neelay.bbby.njb@gmail.com<br><br><br><br>*Stockholder* | Gabriel Rostom<br>63 Rue de la Folie Regnault<br>75011 PARIS – France<br><br>Tel : +33756942880<br><br><br><br>*Stockholder* |
| In Re:<br><br>BED BATH & BEYOND INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**MOTION OF COMMON STOCK EQUITY INTEREST HOLDERS FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

Neelay Das and Gabriel Rostom, the undersigned holders (the "Stockholders") of Common Stock equity interests in 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.), which has traded on Nasdaq exchange under the symbol "BBBY" and has traded over the counter under the symbol "BBBYQ" as recently as 09/29/2023, file this motion (the "Motion") respectfully requesting the entry of an order certifying this Court's *Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order") for direct appeal to the United States Court of Appeals for the Third

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Circuit. See 28 U.S.C. §158(d)(2)(A)-(B). In support of the Motion, the Stockholders respectfully state as follows:

## INTRODUCTION

1.     This case concerns the nationally important bankruptcy petition of Bed Bath and Beyond filed on 04/23/2023, the majority of whose publicly traded common stock was owned by tens of thousands of retail investors as of 09/29/2023, where an order Approving the Disclosure Statement on a Final Basis and Confirming the Second Amended Joint Chapter 11 Plan has been issued that presents multiple important and unsettled questions of law, involves matters of public importance and involves a question of law requiring resolution of conflicting decisions.

2.     During the corresponding Plan Confirmation Hearing and Motions Hearing held on September 12, 2023 at 2:30 pm E.T., while discussing the Stockholders' turnover argument for stock in the debtor corporation borrowed by claimants, in the *Motion To Vacate The Order (I) (A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan, (C) Approving The Forms Of Ballots And Notices In Connection Therewith* [Docket No. 2068] (the "Motion To Vacate"), which was considered as an Objection by the Court, Judge Kaplan commented "I, frankly, couldn't find any authority for the proposition that authorized stock of a debtor corporation is property of the estate and the debtor corporation as opposed to the party holding the stock". Tr., Sep. 12, 2023, at 56:2-5.

3.     Bloomberg news reported[2] recently that Hedge Funds Cut Stock Leverage at Fastest Pace Since 2020 Crash, as Wall Street prime brokers said that their clients ramped up short selling. This is happening amidst US corporate bankruptcies reaching the highest level since 2010, per a Reuters news report[3]. Abusive short selling in corporations' publicly traded stock accelerates corporate bankruptcies by destroying billions of dollars in shareholder value, crippling investor confidence and restricting the corporations' access to public capital markets needed in order to effectuate a turnaround.

4.     The debtors did not elect to be treated as small business debtors in the Chapter 11 Voluntary Petition [Docket No. 1] and specifically confirmed in section I.P.s. of the Proposed Confirmation Order, *see* Docket No. 2162, p. 31, that was copied over to the Confirmation Order that they did not elect to be treated as small business debtors. Pursuant to section 1125(f)(3) of the Bankruptcy Code the

---

[2] https://www.bloomberg.com/news/articles/2023-09-25/hedge-funds-cut-stock-leverage-at-fastest-pace-since-2020-crash
[3] https://www.reuters.com/markets/us/us-corporate-bankruptcies-highest-level-since-2010-2023-05-09/

Conditional Approval of a Disclosure Statement is available only in a small business case and yet the Debtors filed for Conditional Approval of their Disclosure Statement while requesting Shortened Notice Period and Requirements, see Docket No. 1438, which was also approved erroneously by this Court, *see* Docket No. 1716, and acceptance or rejection of the plan was solicited based on that erroneously conditionally approved Disclosure Statement before Final Approval of the Disclosure Statement, in violation of section 1125(b) of the Bankruptcy Code. This conflicts with judicial precedent. *see In re Haskell-Dawes, Inc.*, 188 BR 520 - Bankr. Court, ED Pennsylvania 1995.

5.      Direct appeal to the Third Circuit is necessary to obtain the legal clarity required for there to be any hope of the Chapter 11 plan being fair and equitable with respect to classes pursuant to section 1129(b)(2) of the Bankruptcy Code. The questions presented are threshold legal issues, involve a question of law requiring resolution of conflicting decisions and resolving them promptly and authoritatively will only serve to facilitate a successful resolution of this proceeding and potentially set judicial precedent to address the publicly important matter of abusive short selling in publicly traded stock of corporations. Indeed, these considerations are exactly the ones that Congress said require bankruptcy courts to certify a direct appeal to the court of appeals when moved to do so by a party.

## PRELIMINARY STATEMENT

6.      On April 23, 2023 ("Petition Date"), Bed Bath & Beyond Inc., and the related Debtor Affiliates ("Debtors") filed voluntary petitions for relief under the Bankruptcy Code, where they did not elect to be treated as small business debtors. *See* Docket No. 1.

7.      On April 24, 2023, the Court entered an Order Directing Joint Administration of Chapter 11 Cases. See Docket No. 75.

8.      Pre-petition, the Debtors operated as a home furnishing retailer in the United States, Canada, Mexico, and Puerto Rico offering products from bed linens to cookware to electric appliances, home organization, baby care, and other items. See Docket No. 10.

9.      On August 1, 2023, the Debtors filed the Amended Joint Plan. See Docket No. 1712.

10.      On August 2, 2023, the Court entered an *Order (A) Conditionally Approving Disclosure Statement, (B) Approving the solicitation and Notice Procedures with respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in connection with therewith, (D) Scheduling a Combined*

*Disclosure Statement approval and Plan Confirmation Hearing* (the "Conditional DS Order"). See Docket No. 1716.

11.     On August 28, 2023, the Stockholders moved to vacate parts (A)-(C) of the Conditional DS Order pursuant to 11 U.S.C. § 105(a), FED. R. CIV. P. 60(b), and FED. R. BANKR. P. 9024 because of multiple unaddressed objections. The first objection was that a mistake in the Release Opt-Out Form attachment in the *Notice Of Non-Voting Status To Holders Of Impaired Claims And Interests Deemed To Reject The Plan* that was distributed[4] prior to the September 1, 2023 plan voting deadline, which was also the deadline to submit the Release Opt-Out Forms, was misleading the Stockholders before the imminent Release Opt-Out Forms submission deadline. The second objection was that the Disclosure Statement did not not meet the requirement, for conditional approval, of providing adequate information to the claimants, pursuant to sections 1125(a)(1) and 1125(f)(3) of the Bankruptcy Code, that the claims from claimants who were holding borrowed shares of Bed Bath and Beyond Common Stock, which per the Stockholders' interpretation of section 541 of the Bankruptcy Code constitute property of the Debtors' estate, are disallowed and made them ineligible to vote on the acceptance of the Chapter 11 plan, pursuant to sections IV.I.6 of the Disclosure Statement and IX.F of the Debtors' Chapter 11 Plan and section 542 of the Bankruptcy code. The third objection was that by on one hand potentially allowing distributions to claimants with disallowed claims and on the other hand not providing for turnover of borrowed Common Stock pursuant to section 542 of the Bankruptcy code, before it was canceled, the plan was not fair and equitable with respect to the classes in accordance with section 1129(b) of the Bankruptcy code, which in turn made the plan unconfirmable because of requirements of sections 1129(a)(3) and 1129(b)(1) of the Bankruptcy Code not being met. The Stockholders also contemporaneously filed an Application For Order Shortening Time [Docket No. 2069] with the Motion to Vacate to request a hearing on that on the only available hearing date of August 29, 2023 before the Release Opt-out Forms submission deadline of September 1, 2023. That application was denied due to the impracticality of scheduling a hearing on less than 24 hours notice and a hearing on the Motion To Vacate treated as an objection was scheduled for September 12, 2023, which was the same date and time as the Hearing on the final approval of Debtors' Disclosure Statement and Confirmation of their Plan, where the Motion To Vacate was treated as an objection, See Docket No. 2084, p. 2.

---

[4] An example of such a distributed notice is available here:
https://www.proxydocs.com/0/001/930/337/bbby__7184809__impaired_nonvoting_notice_12.pdf

4

12.     On September 7, 2023 Debtors' Counsel e-mailed Mr. Das that the Stockholders shall not be included in the definition of "Releasing Parties" as that term is defined under the Plan [Docket No. 1712]. Also, from the *Limited Objection To The Amended Joint Chapter 11 Plan* [Docket No. 2123] filed by the United States Trustee ("U.S. Trustee") the Stockholders came to know that as a result of discussions between the U.S. Trustee and the Debtors, the Debtors had agreed to modify the "Releasing Parties" definition to delete as a Releasing Party "(f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan." See Docket No. 1712, p. 17. This resolved the first objection in the Stockholders' Motion To Vacate.

13.     Debtors' Counsel filed the Proposed Confirmation Order document *Findings Of Fact, Conclusions Of Law, And Order (I) Approving The Disclosure Statement On A Final Basis And (II) Confirming The Second Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates* less than an hour before the September 12, 2023, 2:30 pm E.T. Plan Confirmation Hearing, where they specifically confirmed in section I.P.s. that debtors did not elect to be treated as small business debtors. *see* Docket No. 2162, p. 31.

14.     During the hearing on the Motion To Vacate, along with that on the final approval of Debtors' Disclosure Statement and Confirmation of their Plan, held on September 12, 2023, from the list of the Stockholders' unaddressed objections, Debtors' counsel Mr. Fiedler only addressed Stockholders' third objection and stated "The second point is, I think they make the argument that the plan doesn't satisfy 1129(b)(2) because it's not fair and equitable. The equity interests are being cancelled under this plan, they're not entitled to any recovery in accordance with the absolute priority rule." *see* Tr., Sep. 12, 2023, at 55:14-18. The Court couldn't "find any authority for the proposition that authorized stock of a debtor corporation is property of the estate and the debtor corporation as opposed to the party holding the stock". *see* Tr., Sep. 12, 2023, at 56:2-5. Therefore, the Court didn't understand or didn't accept the section 542 turnover argument that underlied the objection and agreeing with Mr. Fiedler's reasoning denied the objection. The Court then entered an order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates [Docket No. 2172] (the "Confirmation Order") on September 14, 2023 which stated that all unresolved objections, including Stockholders' second and third objections, were overruled on the merits in all respects.

15.     On September 28, 2023, the Movants jointly noticed their appeal of the Confirmation Order [Docket No. 2305] and, by this motion, respectfully request that

this Court certify a direct appeal to the Third Circuit. *See* 28 U.S.C. §
158(d)(2)(A)-(B) (requiring a bankruptcy court to certify an appeal if any of four
factors is present). Although certification is required when even one of the four
enumerated statutory factors is present, here, all four factors are present—namely, the
Confirmation Order involves multiple questions of law for which there is no
controlling authority; the Orders involve matters of public importance, including
whether a corporations' publicly traded stock borrowed by short sellers is subject to
turnover pursuant to section 542 of the Bankruptcy Code, after the commencement of
a bankruptcy case, so that it serves as a deterrent against abusive short selling; and an
immediate appeal of the Confirmation Order will materially advance the case. In fact,
a delay in resolving the issues therein will irreparably harm the movants, in case there
is no order and stay in place (the Movants are contemporaneously filing an
*Emergency Motion Of Common Stock Equity Interest Holders For Stay And
Associated Relief Pending Appeal Pursuant To Fed. R. Bankr. P. 8013(d) And 8007* to
get this in place, considering that the Debtors declared the plan Effective Date on
09/29/23 within hours of the Stockholders' Notice of Appeal getting docketed and
then promptly proceeded to purportedly "cancel" all shareholder shares without
recalling them, in violation of section 542 of the Bankruptcy Code and inconsistent
with their own corporate by-laws procedures for transferring shares[5]) to revert and
further prevent cancellation and extinguishment of the Stockholders' shares before a
turnover of borrowed shares pursuant to section 542 of the Bankruptcy Code and it
will hinder a prompt resolution of this proceeding, which may harm the Debtors as
well.

## **ARGUMENT**

16.    Congress enacted 28 U.S.C. § 158(d)(2)(A)-(B) to streamline the process
of bankruptcy appeals by enabling expedited access to the United States Circuit Court
of Appeals. Section 158(d)(2)(A)-(B) provides that this Court must certify a direct
appeal to the Third Circuit if it finds that any one of the following four factors is
present:

1) the order "involves a question of law as to which there is no controlling
decision of the [Third Circuit] or of the Supreme Court";

2) the order "involves a matter of public importance";

---

[5] Section 4 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws
(https://www.sec.gov/Archives/edgar/data/886158/000110465919036407/a19-10116_4ex3d1.htm): "Upon surrender to the
Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of
succession, assignment or authority to transfer, the Corporation shall issue or cause the transfer agent to issue a new certificate to the
person entitled thereto, shall cancel the old certificate and shall record such transfer upon the books of the corporation".

3)  the order "involves a question of law requiring resolution of conflicting decisions"; or

4)  "an immediate appeal from the . . . order . . . may materially advance the progress of the case."

*Id.* § 158(d)(2)(A); *see also In re Essar Steel Minn. LLC*, No. 19-cv-397, 2020 WL 3574743, at *3-4 (D. Del. July 1, 2020).

17.     The presence of any one of these factors requires certification. *See* 28 U.S.C. § 158(d)(2)(B) (providing that if a bankruptcy court "on the request of a party[] determines that a circumstance specified in [§ 158(d)(2)(A)] exists . . . then the bankruptcy court . . . *shall* make the certification described) (emphasis added); *In re: Tribune Media Co.*, No. 15-1116, 2016 WL 1451161, at *4 (D. Del. Apr. 12, 2016) ("Certification is mandatory where a single condition is satisfied under 28 U.S.C. §158(d)(2)(B)."); *In re Millennium Lab Holdings, II, LLC*, No. 15-12284-LSS, 2016 WL 155500, at *4 (Bankr. D. Del. Jan. 12, 2016) (explaining that Section 158(d)(2)(A) contains "four disjunctive criteria").

18.     Here, although only one factor is required, all four are present.

## I.      The Confirmation Order Involves Questions of Law for Which There Are No Controlling Decisions from the Third Circuit or Supreme Court.

19.     This Court's Order denying the second and third objections in the Stockholders' Motion To Vacate involves questions for which there are no controlling decisions of the Third Circuit or the Supreme Court. "A 'controlling decision' of the Third Circuit for the purposes of §158(d)(2)(A)(i) is one that admits of no ambiguity in resolving the issue." *In re Conex Holdings, LLC*, 534 B.R. 606, 611 (D. Del. 2015). The Third Circuit has never addressed similar questions of law in corporate restructuring or bankruptcy filing, which present novel and hotly debated legal issues of national significance.

20.     An appeal of the Confirmation Order will involve the following questions of law for which there is no controlling authority: (1) Whether authorized and outstanding stock of a debtor corporation is property of the estate after the commencement of a Bankruptcy case, pursuant to section 541 of the Bankruptcy Code. (2) If the answer to the first question above is yes, then the next question is whether authorized and outstanding stock of a debtor corporation considered as property of the estate is of consequential value or benefit to the estate, so that it is subject to turnover pursuant to section 542 of the Bankruptcy Code. If the answers to the above questions is in the affirmative the Second Amended Joint Chapter 11 Plan of the Debtors confirmed in the Confirmation Order fails the fair and equitable test of

section 1129(b)(2) of the Bankruptcy Code because of reasons described in paragraph 11 in this Motion and the arguments presented by Debtors' Counsel Mr. Fiedler in the September 12, 2023 hearing, as quoted in paragraph 14 did not address those, since he did not present any argument to refute the fact that the Debtors' Chapter 11 plan allows distribution of proceeds to claimants whose claims are disallowed because they hold stock in the debtor corporation that is subject to section 542 turnover. The argument by Debtors' Counsel Mr. Fiedler in the September 12, 2023 hearing that this issue is addressed by canceling all common stock shares[6] without recalling the shares is a violation of section 542 of the Bankruptcy Code and section 107(f) in old Title 11 (1964 ed.) that current Bankruptcy Code is based on, and is inconsistent with the Debtor Corporation's own by-laws procedures for transferring shares, as explained in paragraph 23 below, discussing the second question above.

1) **Whether authorized and outstanding stock of a debtor corporation is property of the estate after the commencement of a Bankruptcy case, pursuant to section 541 of the Bankruptcy Code:**

21.    Section 1 of ARTICLE VI–SHARES of the Debtor Corporation's Amended and Restated By-Laws[7] states that Outstanding Stock shares of the Debtor Corporation are typically issued as Certificates For Shares, which can then be deposited at the transfer agent, which in turn transfers them electronically to DTC (Depository Trust Company), specifically Cede & Co.[8] that processes transfers of stock certificates on their behalf, via DWAC[9], for trading via brokerages, while the Certificates are physically held at the transfer agent. These Certificates are evidence of Stockholders' rights, which are specified in the Prospectus Supplement[10] of each Common Stock offering and include voting rights, dividend rights in the Debtor Corporation and upon its liquidation, dissolution or winding up, the rights to receive ratably its net assets available after the payment of all debts and other liabilities and subject to any liquidation preference of any then outstanding preferred stock. Section 4 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws specifies the procedure for transfer of shares between shareholders of record where "Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession,

---

[6] Debtors' Counsel MR. FIEDLER: "The second point is, I think they make the argument that the plan doesn't satisfy 1129(b)(2) because it's not fair and equitable. The equity interests are being cancelled under this plan, they're not entitled to any recovery in accordance with the absolute priority rule."(Tr., Sep. 12, 2023, at 55:14-18)

[7] https://www.sec.gov/Archives/edgar/data/886158/000110465919036407/a19-10116_4ex3d1.htm

[8] https://en.wikipedia.org/wiki/Cede_and_Company

[9] https://www.investopedia.com/terms/d/dwac.asp

[10] An example of Stockholders' rights specified in the Prospectus Supplement of a Common Stock offering is available here: https://www.sec.gov/Archives/edgar/data/886158/000119312523084693/d468823d424b5.htm#tx468823_6

assignment or authority to transfer, the Corporation shall issue or cause the transfer agent to issue a new certificate to the person entitled thereto, shall cancel the old certificate and shall record such transfer upon the books of the corporation". Section 5 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws states that "Each certificate for shares to be canceled shall be marked "CANCELED" across the face thereof by the Secretary, with the date of cancellation, and the transaction shall be immediately recorded in the certificate book opposite the memorandum of issue. The canceled certificate should be inserted thereafter in the certificate book." Section 7 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws states about any Uncertificated Shares that may be issued by the Corporation that "The Board of Directors may in its discretion authorize the issuance of shares which are not represented by certificates and provide for the registration and transfer thereof on the books and records of the Corporation or any transfer agent or registrar so designated". Section 8 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws states about Shareholder Records that "The names and addresses of the persons to whom shares are issued, and the number of shares and the dates of issue and any transfer thereof, whether in certificated or uncertificated form, shall be entered on records kept for that purpose. The stock transfer records and the blank stock certificates shall be kept by the transfer agent, or by the treasurer, or such other officer as shall be designated by the Board of Directors for that purpose".

22.　The Report of Senate Finance Committee on the Bankruptcy Code shows that §541(a)(1)'s scope is broad as the estate is comprised of all legal or equitable interest of the debtor in property and includes all forms of property specified in section 110(a) of old title 11 (1964 ed.).[11] The property specified in section 110(a)(5)[12], which when elaborated upon by section 107(f)[13] of old title 11 (1964 ed.)

---

[11] "Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act §70a(6) [section 110(a)(6) of former title 11]), and all other forms of property currently specified in section 70a of the Bankruptcy Act §70a [section 110(a) of former title 11]..." See S. Rep. No. 95-989, p. 82 (1978) (Report of Senate Finance Committee)

[12] 11 U. S. C. § 110 (a) (5) (1964 ed.). property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered

[13] 11 U. S. C. § 107(f) (1964 ed.). (1) For the purposes of, and exclusively applicable to, this subdivision: (a) "debtor" shall mean a face-amount certificate company as defined in section 80a-4 of Title 15; (b) "face-amount certificate" shall mean a face-amount certificate as defined in section 80a-2 of Title 15; (c) "depositary" is a person or State agency with whom securities or other property of a debtor is deposited or to whom property of a debtor is transferred, in trust or otherwise, pursuant to the requirements of a State law or an agreement by the debtor providing for the distribution of such property or its proceeds to creditors or security holders of the debtor in the event of the insolvency of the debtor or under other specified circumstances; (d) "deposit creditor" Is a creditor who, under the provisions of a State law or agreement providing for a deposit with or transfer to a depositary, has rights as to the securities or property so deposited or transferred which exceed the rights of a general creditor; and (e) "State agency" is an official or agency of a State designated to act as depositary or to distribute property or the proceeds of property held by a depositary.

exactly matches the description of authorized and outstanding stock of Debtor Corporation specified in the previous paragraph from the Debtor Corporation's By-Laws and section 107(f) of old title 11 (1964 ed.) also describes how that property is subject to turnover, which is now covered by section 542 of current title 11. The Debtor Corporation meets the requirements for classifying as a face-amount certificate company pursuant to 15 U.S.C. § 80a–4 since it has issued 2014 Unsecured Notes that are outstanding and so, section 107(f) of old title 11 (1964 ed.) is applicable to it. Also, since, as described in the previous paragraph, the authorized and outstanding stock confers stockholders with rights to Debtor Corporation's operations and assets, which in other words is a legal and equitable interest in Debtor Corporation's assets, it is part of the Estate pursuant to §541(a)(1). Also, §541(b)(8) specifies, using a double negative clause, that securities that were sold by the Debtor Corporation are property of the estate, which would include authorized and outstanding stock of the Debtor Corporation.[14]

2) **Whether authorized and outstanding stock of a debtor corporation considered as property of the estate is of consequential value or benefit to the estate, so that it is subject to turnover pursuant to section 542 of the Bankruptcy Code:**

23.    In order for the Debtors to be able to amalgamate, sell or liquidate the Debtor Corporation's assets free and clear of all liens, claims, charges, or other encumbrances the authorized and outstanding stock is subject to turnover pursuant to section 542 of the Bankruptcy Code, so that there is no outstanding lien on the property. That is why it is of consequential benefit to the estate and hence turnover

---

(2) Every deposit or transfer of securities or other property made by or on behalf of a debtor with or to any depositary for the benefit or protection of or to secure the holder of any security sold by or on behalf of the debtor on or after January 1, 1941, shall be voidable as against the trustee of such debtor if the property of the estate is insufficient for the full payment and discharge of all claims on account of all face-amount certificates sold by or on behalf of the debtor, and such deposit or transfer and every lien created thereby shall thereupon be avoided by the trustee subject to the provisions of paragraph (3) of this subdivision.

(3) In the event any deposit or transfer described in paragraph (2) of this subdivision shall be avoided the trustee shall segregate the property received by the trustee from the depositary and charge the same with the costs and expenses of maintenance and liquidation and distribute the net proceeds thereof to the creditors who would have been entitled thereto under the provisions of the law or agreement providing for the deposit or transfer of the property and each such creditor shall thereafter be entitled to dividends from the estate only after all creditors of the same rank shall have received the same percentage.

[14] §541(b)(8) states:

"(b)Property of the estate does not include—

　　(8)subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where—

　　　　(A)the tangible personal property is in the possession of the pledgee or transferee;

　　　　(B)the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and

　　　　(C)neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b);"

requirements of section 542 of the Bankruptcy Code are applicable to it. Also, sections 107(f)(2) and 107(f)(3) of old title 11 (1964 ed.)[15] specify that the rights conferred by authorized and outstanding stock of the Debtor Corporation to stockholders is voidable to satisfy the claims of creditors in a liquidation scenario like the one pursuant to Debtors' Chapter 11 plan, but before that property is liquidated it must be transferred by the depository to the Trustee. In other words, in the context of this case, to "cancel" the equity interests as Debtors' Counsel Mr. Fiedler purported during the September 12, 2023 hearing to be happening pursuant to Debtors' Chapter 11 plan, the Debtors must first recall and receive the corresponding securities or shares from the depository Cede & Co. (DTC subsidiary) and then those shares must be transferred back to the Debtor Corporation and then canceled pursuant to Sections 4 and 5 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws, as described in the previous section. This is also consistent with the turnover requirements of section 542 of the Bankruptcy Code. However, what Debtors' Counsel Mr. Fiedler seems to be alluding to is that for "canceling" shares the Debtors' intend to just execute section 5 of ARTICLE VI–SHARES of the Debtor Corporation's By-Laws to mark the Certificate of Shares "CANCELED" without first executing section 4 of same ARTICLE VI–SHARES of the Debtor Corporation's By-Laws to transfer those shares from DTC back to the Debtor/Trustee, in violation of turnover requirements of section 542 of the Bankruptcy Code and sections 107(f)(2) and 107(f)(3) of old title 11 (1964 ed.), while abusing the custody of the Certificate of Shares held at the transfer agent, corresponding to shares which were previously transferred to brokerages via Cede & Co. (DTC). In fact, this is exactly what the Debtors purport to have done on the deemed effective date of September 29, 2023 (*see* 09/29/2023 SEC Form 8K filing[15]), in violation of the above statutes. Furthermore, pursuant to part II.M. of the Confirmation Order (see Docket No. 2172, p. 43), cancellation of Stockholders' shares is not due until the later of the Effective Date or the date on which distributions are made. The *Notice Of (I) Entry Of The Order (A) Approving The Disclosure Statement On A Final Basis And (B) Confirmingthe Second Amended Joint Chapter 11 Plan Of Bed Bath & Beyond Inc. And Its Debtor Affiliates And (II) Occurrence Of Effective Date* [Docket No. 2311] states that the Administrative Claims Bar Date is fourteen (14) days following the Effective Date and considering, pursuant to section 507(a)(2) of the Bankruptcy Code, the highest priority of Administrative Expense claims, amongst allowed claims

---

[15] "As a result of the Confirmed Plan becoming effective, all of the Company's equity interests, consisting of outstanding shares of common stock and Series A Convertible Preferred Stock of the Company and related rights to receive or purchase shares of common stock, were cancelled on the Effective Date without consideration and have no value." *See SEC Form 8K filed on 09/29/2023 by the Debtor Corporation:* https://www.sec.gov/ix?doc=/Archives/edgar/data/0000886158/000119312523247428/d579010d8k.htm

in this case, the date on which distributions are made can not occur before the Administrative Claims Bar Date, which is fourteen (14) days following the Effective Date. So, Stockholders' shares were purportedly canceled on the Effective Date, before the date on which distributions will be made in direct violation of the Confirmation Order.

24.    Thus, certification is appropriate because extant governing precedent does not provide sufficient clarity on the specific questions of law here. *See Conex Holdings*, 534 B.R. at 611 (a decision is controlling where it "admits of no ambiguity in resolving the issue"). Bankruptcy courts regularly certify for appeal, and circuit courts regularly accept certification of orders where there is no controlling decision. *See, e.g., Perlin v. Hitachi Cap. Am. Corp.*, 497 F.3d 364, 3967 (3d Cir. 2007) (accepting certification of creditor's appeal of bankruptcy court order denying motion to dismiss Chapter 7 case as bad faith filing); *see also Tidewater Fin. Co. v. Kennedy*, 531 F.3d 312315 (4th Cir. 2008); *Ad Hoc Grp. of Timber Noteholders v. The Pac. Lumber Co. (In re Scotia Pac. Co. LLC)*, 508 F.3d 214 (5th Cir. 2007). This Court should likewise certify the direct appeal here.

## II.    The Order Involves Matters of Public Importance.

25.    Certification of a direct appeal also is warranted because the second and third objections in the Movants' Motion To Vacate involve matters of public importance. The inquiry for this factor focuses on whether the matter on appeal "involves important legal issues or important practical ramifications." *In re Qimonda AG*, 470 B.R. 374, 386 (E.D. Va. 2012); *see also In re Nortel Networks Corp.*, No. 09-10138, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010) (matter is of public importance if the issue on appeal "transcend[s] the litigants and involve[s] a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case"). Courts have assessed the importance of a matter's practical ramifications by looking to the number of debtors affected, the monetary value of the case, and the prominence of the case. *See, e.g., In re Ransom*, 380 B.R. 809 (9th Cir. 2007) (granting certification of issue because of number of debtors potentially affected); *Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm.* (In re Pac. Lumber Co.), 584 F.3d 229, 242-43 (5th Cir. 2009) (noting prominence of the case to the citizens of California, of Humboldt County, and of the town of Scotia and by the plan's effect on "one of the nation's most ecologically diverse forests . . . ." and that "[s]uch issues . . . when considered in the context of reorganizing nearly a billion dollars total debt and over $700 million of the [appellants'] secured debt, deserved certification and an opportunity for direct

appeal"); *Arrow Oil & Gas, Inc. v. SemCrude, L.P.*, 407 B.R. 112, 118, 139 (Bankr. D. Del. 2009) (certifying appeal *sua sponte* upon recognizing that the issues implicated "not less than $57 million").

26.     Here, the "public importance" factor is easily met. Fundamentally, this case is about whether the publicly issued outstanding stock of a Debtor Corporation is subject to turnover after the commencement of a Bankruptcy case, pursuant to sections 542 and 541 of the Bankruptcy code, before the corresponding equity interests are canceled to effectuate transactions pursuant to the plan involving the underlying Debtor Corporation assets, free and clear of all liens, claims, charges, or other encumbrances. The answer to that question will reverberate far beyond this case, as it is of public importance to hundreds of thousands, if not millions of investors holding outstanding stock of Debtor Corporations after the commencement of a bankruptcy case, with respect to prospects of any recovery on their investment via fair value of outstanding stock and will also change the risk calculus for short sellers engaging in borrowing and abusively short selling the stock of such Debtor Corporations, driving them to bankruptcy in many cases. The answer to the above question is of public importance to creditors of Debtor Corporations, as well, who maintain short positions in the outstanding stock of the Debtor Corporation as a hedge against their investment, as this abusive hedging strategy which allows an alternate path to the creditors of possibly reaping higher returns than their investment by not having to close out their short positions, when the Debtor Corporation goes into liquidation, will no longer be viable if the shares of outstanding stock borrowed for their short positions are subject to turnover. The answer to the above question is of public importance to all Debtor Corporations currently facing the prospect of filing a Bankruptcy petition due to abusive short selling in their outstanding stock, as it may potentially serve as a deterrent against that practice thereby increasing their prospects of raising capital in public markets to effectuate a turnaround.

27.     That said, the resolution of that question just in the context of this case will impact the fair recovery for several tens of thousands of shareholders of the Debtor Corporation who were likely sitting on cumulative losses of nearly $140 million this year alone as of the petition date due to 99% plunge in the share price this year, while short sellers were sitting on potential returns of $1.3 billion since January 2021 share price peak[16]. From the above it is clear that the Confirmation Order involves issues that transcend the litigants. Majority of the several tens of thousands of shareholders of the Debtor Corporation are retail investors, who are not high net

---

[16] This data is from the following Bloomberg article:
https://www.bloomberg.com/news/articles/2023-04-24/bed-bath-fallout-makes-a-billion-for-shorts-retail-traders-lose

worth individuals. *See In re Qimonda AG*, 470 B.R. at 387 ("[A] court may find a matter to be of public importance if it could impact a large number of jobs or other vital interests in a community.") (quoting Collier on Bankruptcy ¶ 5.06[4][b]). At issue, ultimately, is the recovery of a sum of not less than $140 million. *See Arrow Oil & Gas, Inc. v. SemCrude, L.P.*, 407 B.R. 112, 118, 139 (Bankr. D. Del. 2009) ("At issue, ultimately, is a sum of not less than $57 million. The Court has little doubt that this decision will be appealed.").

28.     Because bankruptcy courts frequently confront the question whether to approve Reorganization/Liquidation plans that cancel equity interests, without the benefit of controlling authority on whether the stock held by the equity interest holders is subject to turnover pursuant to sections 542 and 541 of the bankruptcy code before the cancellation of the equity interests that it evidences, resolution of these issues will "advance the cause of jurisprudence to a degree that is usually not the case." *In re Essar Steel Minn. LLC*, 2020 WL 3574743, at *6 (finding public importance factor met where legal issue—the extent of bankruptcy court authority to enforce discharge in a confirmation order—involved "fundamental bankruptcy protections").

29.     There thus is ample evidence that the Court's Orders involve matters of public importance, both legally and in terms of practical ramifications. Certification of a direct appeal is warranted on this basis.

## III.   The Confirmation Order Involves A Question Of Law Requiring Resolution Of Conflicting Decisions.

30.     The debtors did not elect to be treated as small business debtors in the Chapter 11 Voluntary Petition [Docket No. 1] and specifically confirmed in section I.P.s. of the Proposed Confirmation Order, *see* Docket No. 2162, p. 31, that was copied over to the Confirmation Order that they did not elect to be treated as small business debtors. Pursuant to section 1125(f)(3) of the Bankruptcy Code the Conditional Approval of a Disclosure Statement is available only in a small business case and yet the Debtors filed for Conditional Approval of their Disclosure Statement while requesting Shortened Notice Period and Requirements, *see* Docket No. 1438, which was also approved erroneously by this Court, *see* Docket No. 1716, and acceptance or rejection of the plan was solicited based on that erroneously conditionally approved Disclosure Statement before Final Approval of the Disclosure Statement, in violation of section 1125(b) of the Bankruptcy Code. This conflicts with judicial precedent. "Notably, the procedures added in § 1121(e) and § 1125(f), which provide small businesses with the ability to accelerate the timetable that normally

applies in Chapter 11, apply only to debtors which elect to be considered small businesses."*see In re Haskell-Dawes, Inc.*, 188 BR 520 - Bankr. Court, ED Pennsylvania 1995. This substantially harmed the Movants, preventing them from filing timely objections that could be considered by the Court, as described in paragraph 2 of the Movants' *Reply In Support Of The Application For Order Shortening Time With Respect To The Motion Of Bed Bath And Beyond Common Stock Equity Interest Holders' Motion, Pursuant To 11 U.S.C. § 105(A), Fed. R. Civ. P. 60(B), And Fed. R. Bankr. P. 9024 For An Order Vacating The Order (I)(A) Conditionally Approving The Adequacy Of The Disclosure Statement, (B) Approving The Solicitation And Notice Procedures With Respect To Confirmation Of The Plan, (C) Approving The Forms And Ballots And Notices In Connection Therewith* [Docket No. 2125], which in turn prevented robust litigation of the threshold legal issues that the Movants presented in their Motion to Vacate parts of the order conditionally approving the disclosure statement and those issues could have been otherwise discussed during the hearing on the Final Approval of the Disclosure Statement before approving solicitation on the acceptance or rejection of the Plan based on the disclosure statement. So, on this basis the Final Approval of the Disclosure Statement and the Solicitation Procedures that were executed in violation of the requirements of section 1125(b) of the Bankruptcy Code should have been denied in the Confirmation Order, but it was not.

31.    There thus is ample evidence that the Court's Confirmation Order involves a question of law requiring resolution of conflicting decisions. Certification of a direct appeal is warranted on this basis.

**IV.    Certification Will Materially Advance the Progress of the Case.**

32.    The Movants are contemporaneously filing an *Emergency Motion Of Common Stock Equity Interest Holders For Stay And Associated Relief Pending Appeal Pursuant To Fed. R. Bankr. P. 8013(d) And 8007* (the "Emergency Motion For Stay"), along with this Motion, to request a stay pending appeal of the Confirmation Order and immediate reversal of any actions taken by the Debtor Corporation to cancel Common Stock Equity Holders' shares and to enjoin pending appeal any such further actions. If that Motion is granted Debtors will be enjoined from substantial consummation of the Chapter 11 plan. If that Motion is denied the Movants will be subject to irreparable harm if the Debtors continue their actions to cancel Common Stock Equity Holders' shares pending the resolution of the issue and so, in that scenario, the Movants intend to subsequently file their Emergency Motion For Stay in the District Court or the Third Circuit Court of Appeals on Direct Appeal, wherever

the appeal is pending. Certification will materially advance the progress of the case because a resolution by the Third Circuit reversing the Confirmation Order either fully or in part would unblock the Debtors, in case Movants' Emergency Motion For Stay was granted and likely result in, pursuant to a further Amended Debtors' Chapter 11 plan, turnover of all Common Stock Equity Holders' shares before they are canceled, in case the Movants' Emergency Motion For Stay was granted or alternatively it would stop the ongoing harm to Movants if their Emergency Motion For Stay was denied.

33.    The Effective Date of the Debtors' Chapter 11 plan confirmed by the Confirmation Order occurred on 09/29/2023. Certification of the Direct Appeal to the Third Circuit will Materially Advance the Progress of the case by facilitating a resolution of the issues before the Chapter 11 plan has been substantially consummated, which is a possibility especially if the Movants' Emergency Motion For Stay is denied. Section 1127(b) of the Bankruptcy Code on its face bars modification of a chapter 11 plan after it has been substantially consummated. Moreover, "[c]ourts have routinely rejected attempts by plan proponents to circumvent section 1127(b) and change the plan merely by calling the requests a motion to modify the confirmation order, or a motion for reconsideration or to modify a plan-related document, or any application that nonetheless affects rights under the plan, such as a motion to clarify or a motion to classify claims." Collier on Bankruptcy at ¶ 1127.03[2][a] (citations omitted). Some courts have even ruled that "serial" (successive) chapter 11 filings are not permitted and that a second plan may not modify the first plan in the absence of "unanticipated changed circumstances" that were unknown at the time the prior plan was substantially consummated and substantially affected the debtor's ability to implement the prior plan. *See, e.g., Elmwood Dev. Co. v. General Elec. Pension Trust (In re Elmwood Dev. Co.)*, 964 F.2d 508, 512 (5th Cir. 1992); *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 867 (7th Cir. 1989); *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 489-90 (Bankr. S.D. Tex. 2013); *In re Woodson*, 213 B.R. 404, 405 (Bankr. M.D. Fla. 1997); *In re Northampton Corp.*, 39 B.R. 955, 956 (Bankr. E.D. Pa. 1984), aff'd, 59 B.R. 963 (E.D. Pa. 1984); *see also In re Garsal Realty, Inc.*, 98 B.R. 140, 150 (Bankr. N.D.N.Y. 1990) (a second chapter 11 case was not an attempt to modify the previous plan contrary to section 1127(b) because the new debt did not exist until after substantial consummation of the earlier plan)).

34.    Movants and other Common Stock Equity Interest Holders in the same class, who have been deemed to reject the Debtors' Confirmed Chapter 11 Plan and were not eligible to vote to accept or reject the Plan are not considered as Releasing

Parties, pursuant to the plan. The issues on appeal are novel and momentous, and their resolution by the Third Circuit will determine the parties' future litigation and settlement efforts. *See, e.g., Weber v. U.S. Trustee*, 484 F.3d 154, 158 (2d Cir. 2007) (explaining that where a bankruptcy court's ruling "will essentially determine the result of future litigation, the parties adversely affected by the ruling . . .will not give up until [it] becomes clear . . . that the ruling has the approval of the court of appeals"). So long as the fundamental legitimacy of Debtors' Chapter 11 Plan's provision of cancellation of Common Stock Equity Interest Holders shares without first subjecting them to Bankruptcy Code Section 542 turnover remains in dispute, there is a cloud over these proceedings that will undoubtedly influence the parties at the bargaining table. In any case, the pendency of an outcome-determinative issue creates a wide gulf in the parties' respective assessments. Because direct appeal to the Third Circuit is the quickest pathway to removing that cloud, certification is warranted. *See In re Specialty Prods. Holding Corp.*, 2014 WL 545780, at *2 (aiding the parties in reaching the figures necessary for settlement "is a matter of great public importance which will materially advance the progress of the litigation at bar"); *In re Int'l Mgmt. Assocs., LLC*, No. 09-MP-601, 2009 WL 6498191, at *4 (Bankr. N.D. Ga. Dec. 1, 2009) (*sua sponte* certifying order for direct appeal where resolution of an issue "would materially advance the prospects of settlement").

35.     Indeed, there are many judicial efficiency reasons for direct appeal to the Third Circuit. Cf. id. ("If the City were ultimately found to be ineligible for chapter 9 protection, refusal to grant CalPERS leave to appeal would result in wasted litigation and expense of unnecessary bankruptcy proceedings."); In re Purdue Pharma, L.P., 635 B.R. 26, 115 (S.D.N.Y. 2021) (invalidating third-party releases on appeal and acknowledging that it would have been better to decide the issue sooner as the ruling would "almost certainly lead to the undoing of a carefully crafted plan that would bring about many wonderful things").

## CONCLUSION

36.     Certification is mandatory when any one of four factors are present. Here, all four factors are met. For the foregoing reasons, Movants respectfully request that this Court certify a direct appeal to the Third Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)-(B).

Respectfully submitted,

17

Date:    10/13/2023

Neelay Das

Date:    10/13/2023

Gabriel Rostom (Oct 13, 2023 17:50 GMT+2)

Gabriel Rostom