Creditor, Treasurer/Tax Collector for the
County of San Diego
1600 Pacific Highway, Room 162 (Attn: BK Desk)
San Diego, California 92101-2469
Telephone (619) 531-5261 Fax: (619) 531-6005
Email: william.jernigan@sdcounty.ca.gov

U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ
2023 OCT 17 A 11: 20
JEANNE A. NAUGHTON
BY: _____ CLERK

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re:

BED BATH & BEYOND INC., et al.,

    Debtors,

Case No.: 23-13359 (VFP)

Chapter 11

**SAN DIEGO COUNTY TREASURER-TAX COLLECTOR'S RESPONSE TO DEBTOR'S SECOND OMNIBUS OBJECTION TO CERTAIN TAX CLAIMS AND OPPOSITION TO MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS**

Date: October 24, 2023
Time: 10:00 a.m. (ET)
Judge: Honorable Vincent F. Papalia
Courtroom: 3B

Respondent Creditor, County of San Diego Treasurer-Tax Collector ("SDTTC"), hereby responds to the Notice of Debtors' (I) Second Omnibus Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings.

## I. INTRODUCTION

The Debtors request a determination by the Court concerning their property tax liabilities respecting various taxing authorities, including SDTTC, pursuant to Section 505(a) of the Bankruptcy Code. The Debtors contend, without evidence, that the assessment values of their properties and tax liabilities are excessive and inaccurate.

23-13359 (VFP)

However, Debtors appear to rely on their post lien date sales to value their property rather than an accepted valuation methodology under California Law.

Section 505 of the Bankruptcy Code is discretionary, and Creditor, SDTTC asks that the court abstain from entertaining Debtors' motion. Property tax assessment in California is complex, and a New Jersey Court would be required to apply substantive California law on issues that are intended to be decided by a local Assessment Appeals Board ("AAB") under the California Constitution, placing the uniformity of assessment at great risk. In addition, the burden to the court would be tremendous given the amount of properties at issue and the requirement under California law that taxes be based on the situs of the property. Finally, there is a substantial burden to the County, as all of its appraiser staff and their legal advisor, Office of County Counsel, are located exclusively in California.

The Debtors Motion does not comport with the purpose and objectives established under Section 505(a) of the Bankruptcy Code, and Debtors' have not overcome the presumptive validity of SDTTC's claim. SDTTC respectfully requests the Court deny this Motion, in its entirety. Should the Court decline to abstain from hearing this matter, the County hereby objects to the Debtors' introduction of any evidence at the hearing on the Motion, including, without limitation, the "appraisal", and other evidence which could not have been considered pursuant to applicable nonbankruptcy law.

## II.   STATEMENT OF FACTS

1. On April 23, 2023 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On May 10, 2023, SDTTC timely filed Proof of Claim number 606 for unsecured tax bills: 23-004952, 23-004953, 23-004954, 23-004965, 23-004966 and 23-004967, in the amount of $629.07. (*See* Claim No. 606). On, June 5, 2023, SDTTC timely filed an Amended Proof of Claim number 5491 to also include the following tax bills: 23-049627, 23-049623, 23-049609, 23-049584, 23-049460, 23-049438 and 23-049194 in the

amount of $25,781.54. (*See* Claim No. 5491) (Collectively the "Unsecured Priority Tax Claim"). The Proof of Claim is presumptively valid. Fed R. Bankr., Rule 3001, subd. (f).

3. As of January 1, 2023, Debtors operated several locations in the County of San Diego. (Declaration of Robert Vaughn ¶ 6).

4. The Assessor is required to annually assess taxable business personal property as of the lien date (January 1st). Business Personal Property includes all "Equipment out on lease, rent, or conditional sale to others" used in the operation of a business. Business Personal Property is reported to the Assessor annually on a form known as the Business Property Statement (Form 571-L). (Vaughn Decl. ¶ 3).

5. Form 571-L constitutes an official request from the Assessor for the taxpayer to declare all assessable business property situated in the county which the taxpayer owned, claimed, possessed, controlled, or managed on the tax lien date, and that the taxpayer signs (under penalty of perjury). Failure to file the statement during the time provided in section 441 of the Revenue and Taxation Code will compel the Assessor to estimate the value of your property from other information in the Assessor's possession and add a penalty of 10 percent of the assessed value as required by section 463 of the Revenue and Taxation Code. (Vaughn Decl. ¶ 3).

6. On or about May 4, 2023, Debtors filed their 2023 571-L business property statements with the Assessor, with the statements signed true, correct, and complete by their VP of Tax. (Vaughn Decl. ¶ 7). The Assessor assessed the property exactly as it was reported by Debtors. (*Id.*)

7. SDTTC is responsible for the collection of ad valorum taxes assessed against real property and personal property located in the County of San Diego. *See* Cal. Rev. & Tax. Code §2903.

8. SDTTC issued thirteen tax bills issued for fiscal year 2023 for the personal property and fixtures located within the various different locations operated by Debtors based on the Assessor's valuation. (*See* Claim Nos. 606 and 5491). These tax bills represent SDTTC's Unsecured Priority Tax Claim.

9. Debtors incurred the tax liabilities claimed due pursuant to California Revenue & Taxation Code §§ 2191.3, 2191.4 and 2193. (Vaughn Decl. ¶ 7).

10. The 2023 tax bills are entitled to priority under section 507(a)(8) because it was last due and payable without penalty within one year before the date the Debtors filed the instant petition.

### III. COMPLEXITY OF CALIFORNIA PROPERTY TAX PROCEDURE

The basis for assessment of all real and personal property in California is the California Constitution. Specifically, all property tax assessments are established by the provisions of either article XIII or article XIII A (the constitutional article adopted following the passage of Proposition 13). The California Constitution requires uniformity of taxation of all property in California (Cal. Const., art. XIII, § 1) and requires that all property be assessed in the county, city, and district in which it is situated. Cal. Const., art. XIII, § 14.

There are several steps for property taxation in California all of which are governed by numerous standards, procedures, and protections to ensure fair and uniform application of local property tax assessments. The vast majority of the Legislature's enactments with respect to ad valorem assessment are found in the California Revenue and Taxation Code (hereinafter "R&T Code"). In addition, The State Board of Equalization ("BOE") is mandated to prescribe rules and regulations to govern local boards of equalization when equalizing and county assessors when assessing in compliance with the rulemaking procedures adopted by the California Office of Administrative Law. Pursuant to that mandate, the BOE has adopted various Property Tax Rules which are contained in Title 18 of the California Code of Regulations. These rules can be found at https://www.boe.ca.gov/proptaxes/ahcont.htm (last visited October 11, 2023) (hereinafter and cited to as "Property Tax Rules").[1]

---

[1] Section 15606, subdivision (c) of the Government Code authorizes that the State Board of Equalization ("SBE") will "prescribe rules and regulations to govern local boards of equalization when equalizing…"

Finally, local Assessors additionally rely on the Assessors' Handbook, which "is a series of manuals developed by the staff of the [BOE] in an open process. The objective of the Assessors' Handbook is to give county assessors, their staff, and other interested parties an understanding of the principles of property assessment and real and personal property appraisal for property tax purposes. Additionally, the Assessors' Handbook presents the BOE staff's interpretation of rules, laws, and court decisions on property assessment." (*See* https://www.boe.ca.gov/proptaxes/ahcont.htm, last visited October 11, 2023).

### A. Assessment of Personal Property

The standard of valuation prescribed by the Legislature is that "[all] taxable property shall be assessed at its full cash value." Cal. Rev. & Tax. Code, § 401. "Full cash value," as defined in section 110 of the R&T Code, "means the amount at which property would be taken in payment of a just debt from a solvent debtor." Cal. Rev. & Tax. Code, § 110. "It provides, in other words, for an assessment at the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other." *De Luz Homes, Inc. v. County of San Diego*, 45 Cal. 2d 546, 562 (Cal. 1955). Therefore, the definition of fair market value does not include the sales transactions by a debtor in bankruptcy. Notably, the net earnings to be capitalized are not those of the present owner of the property, but those that would be anticipated by a prospective purchaser. "*Id.*

Assessors generally estimate value by analyzing market data on sales of similar property, replacement costs, and income from the property (*see* 1 Bonbright, Valuation of Property, pp. 113-266; American Institute of Real Estate Appraisers, The Appraisal of Real Estate, pp. 75-85; Fisher, Real Estate in California, p. 157), and since no one of these methods alone can be used to estimate the value of all property, the assessor, subject to requirements of fairness and uniformity, may exercise his discretion in using one or more of them. *Utah Const. Co. v. Richardson*, 187 Cal. 649, 652-653 (Cal.

1921); *Southern Calif. Tel. Co. v. County of Los Angeles*, 45 Cal. App. 2d 111, 116-118 Cal. App. 3d. 1941.) Significantly, with regard to personal property taxes, the assessment is made based upon information supplied by the taxpayer. (Vaughn Decl. ¶¶ 4-7).

### B. Review of Property Tax Assessment by the Assessment Appeals Board

A property owner dissatisfied with the annual assessment must first file an application for reduction with the AAB, which has authority to "equalize the values of all property on the local assessment roll by adjusting individual assessments." Cal. Const., art. XIII, § 16; Cal. Rev. & Tax. Code §1603(a). The AAB is an independent quasi-judicial constitutional body, separate, apart, and independent of the Assessor's Office. *See, e.g. Westinghouse v. County of LA*, 42 Cal. App. 3d 32, 42 fns. 6 and 7 (Cal. 1974) (explaining that "[t]he special expertise in property valuation assignable to county boards of equalization justifies their classification as judicial bodies by California Constitution article XIII, section 9...").

The functioning of the AAB is governed by sections 1601 through 1645.5 of the R&T Code and sections 301 through 326 of the Property Tax Rules. Section 1604(c) of the R&T Code requires the AAB to hear evidence and make final determination on an application for reduction of assessment of property within two (2) years of timely filing of the application. Cal. Rev. & Tax. Code §1604(c).

In appeals involving personal property and fixtures, it may be necessary for the assessor to perform an audit of the taxpayer's records to reach a final value conclusion. The Assessor would also be required to appear at the hearing to defend its valuation, only after the taxpayer met its burden, and would do so based on accepted valuation methodologies prescribed within the R&T Code. (Vaughn Decl. ¶ 14).

Subject to exceptions set by law, it is presumed that the assessor has properly performed official duties. Cal. Evid. Code § 664; 18 C.C.R. §321, subd. (a); *Texaco Producing v. County of Kern*, 66 Cal. App. 4th 1029 (Cal. 1998). The effect of this presumption is to impose upon the applicant the burden of proving that the value on the

assessment roll is not correct, or where applicable, the property in question has not been otherwise correctly assessed. Cal. Evid. Code § 660; Texaco Producing, supra, at p. 1046. The law requires that the applicant present independent evidence relevant to the full value of the property or other issue presented by the applicant. 18 C.C.R. § 321, subd. (a).

## IV.  ARGUMENT

### A.  Abstention is Proper

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court has "broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Sarfani, Inc. v. Miss. Dept. of Revenue (In re Sarfani, Inc.)*, 527 B.R. 241, 252 (Bankr. N.D. Miss. 2015). Section 505(a)(1) provides an additional basis for permissive abstention, because it provides that a court *may*, but is not required to, determine a debtor's tax liabilities. *Id.*

Bankruptcy courts' trend to abstain from hearing the majority of these cases and these particular courts have referred to the traditional abstention principles where the determination of taxes would not benefit the bankruptcy estate or the unsecured creditors, or in those particular cases where such determination would interfere with the uniformity of tax assessment associated with the specific tax jurisdiction in question.

Specifically, Bankruptcy courts have properly looked to a number of factors when deciding whether to exercise their authority under section 505, including: "the complexity of the tax issue; (2) the need to administer the bankruptcy case in an expeditious fashion; (3) the burden on the bankruptcy court's docket; (4) the length of time necessary to conduct the hearing and to render a decision thereafter; (5) the asset and liability structure of the debtor; and (6) the potential prejudice to the debtor, the taxing authority, and creditors." *In re New Haven Projects Ltd. Liability Co.*, 225 F. 3d 283, 289 (2d Cir. 1999) (finding that unsecured creditors would not meaningfully benefit from section 505 review and such review would frustrate the purpose of the statute). *See also In re Lyondell Chem. Co.*, 2010 Bankr. LEXIS 1271 at *6 (Bankr. S.D.N.Y. Apr. 19,

2010)(finding these factors weighed in favor of abstention); *ANC Rental Corp. v. Dallas County (In re ANC Rental Corp.)*, 316 B.R. 153, 159 (Bankr. D. Del. 2004); *In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D.N.Y. (1990) (exercising discretion to abstain based on these factors).

### 1. California Property Tax Law is Complex and Equalization Should be in the Hands of the Local Assessment Appeals Board.

As detailed in Section III above, California property tax law is extremely complex. Debtors attempt to ignore this complexity and ask the court to take an approach to valuation that is not consistent with California law, which the court must apply if it were to consider the 505 motion. *See* CM *Reed Almeda 1-3062, LLC v. Harris Cnty. (In re CM Reed Almeda 1-3062, LLC)*, 2017 Bankr. LEXIS 1155, *24-25 (BAP 9th Cir. 2017).

There are three major appraisal approaches for estimating value (cost, comparative sales, and income). The nature of the property, its market, and the availability of data will normally indicate which approach(es) is most applicable.  This is supported by Property Tax Rule 3, which states, in part: In estimating value as defined in section 2, the assessor shall consider one or more of the following [approaches to value], as may be appropriate for the property being appraised. 18 C.C.R. § 3. Moreover, Property Tax Rule 324 requires that the taxpayer appealing an assessment value "shall be bound by the same principles of valuation that are legally applicable to the assessor." 18 C.C.R. § 324.  Although Debtors discuss fair market value in their motion, Debtors make no reference to any other principles governing valuation in California. (*See* Lambert Decl. ¶¶ 1-14.) There is simply no basis for the court to analyze the debtors' tax liability differently simply because Debtors filed bankruptcy. *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000).

There is an efficient review process available to Debtors within each of the local taxing authorities jurisdiction, and "it seems most appropriate that the debtor in chapter 11 proceed with the systems already in place" for determining its state tax liability, "rather than substituting this court for that process." *In re the Village at Oakwell Farms, Ltd.*, 428 B.R. 372, 375 (Bankr. W.D. Tex. 2010). This is particularly so when the debtor

is asking a New Jersey bankruptcy court to determine California tax issues; "why should this court "start from scratch" when there is a more efficient tribunal that can determine the valuation issues under applicable state law? "*In re CM Reed Almeda 1-3062, LLC*, 2017 Bankr. LEXIS at *24-25; *see also In re Altegrity, Inc.*, 544 B.R. 772, 778 (Bankr. D. Del. 2016) (Delaware bankruptcy court abstained from determining debtor's Oklahoma tax liability, because debtor was already pursuing relief before Oklahoma Tax Commission).

2. Uniformity of Assessment is at Stake

Many courts have found abstention to be appropriate when uniformity of assessment is at issue. *Central Valley Ag Enterprises*, 531 F. 3d 750, 764 (9th Cir. 2008) (recognizing that uniformity of assessment is a basis for abstention); *In re New Haven Products Ltd. Liability Co.*, 225 F. 3d at 288 (same); *In re Cable & Wireless USA, Inc.*, 331 B.R. 568, 577-78 (Bankr. D. Del. 2005) ("Each tax authority must enjoy and apply a uniformity of assessment within its tax jurisdiction."); *In re ANC Rental Corp.*, 316 B.R. 163, 159 (Bankr. D. Del. 2004) (abstention is often used where uniformity of assessment is an issue); *Metromedia Fiber Network, Inc. v. Various State and Local Taxing Authorities (In re Metromedia Fiber, Inc.)*, 299 B.R. 251, 281 (Bankr. S.D.N.Y. 2003). Additionally, it would be prejudicial to California counties to have a New Jersey bankruptcy court determine the state tax issues implicated in the 505 Motion. *In re ANC Rental Corp.*, 316 B.R. at 159 (finding that a local taxing authority in Texas would "be significantly prejudiced by having the taxes at issue determined by a Delaware court.")

County Assessors are required to attend and present evidence at a hearing on the appeal of an assessment. They should not be required to travel out of state, unrepresented by County Counsel, to present evidence in a New Jersey bankruptcy proceeding. A valuation hearing in New Jersey would be very burdensome on the Assessor. Assessor staff is located exclusively in the County of San Diego within the State of California. Assessor staff only appear in administrative proceedings before the Assessment Appeals Board, which are not formal court proceedings. (Vaughn Decl. ¶¶ 16-17). The County's

legal advisor is the County Counsel, and Senior Deputy County Counsel, Laura E. Dolan is the specific legal advisor to the Assessor. Ms. Dolan is not barred in New Jersey and is unable to represent the Assessor at a valuation hearing in a New Jersey court. (*Id.*)

Uniformity of Assessment is of the utmost importance to the Assessor and required under the California Constitution. This uniformity will be placed at risk should an out of state court, rather than our local Assessment Appeals Board, make a valuation determination at a hearing without the Assessor present, and based on valuation methods that are not accepted under the R&T Code. (Vaughn Decl. ¶ 18).

### 3. The Court's Consideration of the 505 Motion Will Unnecessarily Burden the Court

Debtors failed to present any evidence to demonstrate that the court's consideration of their 505 Motion would result in a more efficient administration of this estate. In fact, Debtors ignore the tremendous burden a 505 determination would place on the court's docket. Debtors are not just contesting the tax liability in a single County, Debtors are contesting tax liability in 26 separate and distinct counties. (*See* Doc. No. 2180 [contesting liability in nine different counties] and Doc. No. 2181 [contesting liability in 17 different counties]). In addition, some of the counties, including SDTTC, have numerous property tax bills at issue.

California property tax law does not permit the bulk valuation of property across counties. Instead, the California Constitution requires that all property be assessed in the county, city, and district in which it is situated. Cal. Const., art. XIII, § 14. Therefore, each counties' assessment should be determined at a separate and distinct evidentiary hearing. It is unclear how 27 separate hearings in a New Jersey Bankruptcy Court on California property tax issues promotes the purpose of section 505. Given this court's other commitments, there is no reason to believe that it could hear and determine the issues Debtors have raised more efficiently than the local AABs, which are designed exclusively for this purpose. Moreover, because the R&T Code requires that the hearing take place within two years, there is not a risk of delay.

Debtors have not set forth any argument or evidence as to how this court's Section 505(a)(1) determination would benefit other creditors or result in the efficient administration of this case. Instead, it appears that Debtors are attempting to circumvent state property tax law and avoid paying priority tax claims, thereby benefiting only the Debtors (and not the creditors).

### B. Debtors Valuation Does Not Comply with Property Tax Rules

Even if the Court were to determine the valuation of Debtors' property under section 505, Debtor has not met their burden. As explained above, the property owner has the burden of proving that the assessor has improperly valued the property, and Debtors are bound by same methods of valuation as Assessor. Debtors cannot meet this burden because their appraisal completely ignores the approaches to value accepted under California law. (*See* Lambert Decl. ¶¶ 1-14.)

Rather than asking this court to apply state law, as the court is required to do, Debtors appear to be arguing that the valuation methods prescribed under the laws of California are erroneous. (*See* Lambert Decl. ¶ 5 [blanketly attacking the valuation methods used across the state of California]). Debtors then attempt to circumvent state law by lumping all the assessments of their property across jurisdictions together and asking this court to consider its post lien date sales during Debtors' insolvency. (*See* Lambert Decl. ¶¶ 6-13; Vaughn Decl. ¶¶ 3,15).

Contrary to Debtors' argument, "full cash value," as defined in section 110 of the R&T Code, "means the amount at which property would be taken in payment of a just debt from a *solvent* debtor." Cal. Rev. & Tax. Code §110 (*emphasis added*). It does not include sales Debtor made after the lien date under exigent circumstances. Per the Assessor's Handbook 504 p. 130, sales of assets from a bankruptcy estate should not necessarily be considered valid indicators of market value under the definition of Revenue and Taxation Code section 110. (See Assessors' Handbook 504, p. 50, 130 [recognizing that the buyer of property from a bankrupt's estate has the ability to take advantage of the exigencies of the seller.]).

### C. Debtors Have Not Produced Sufficient Evidence to Negate the Prima Facie Validity of the Tax Collector's Claim

It is well settled that the timely filing of a Proof of Claim is prima facie evidence of the validity and amount of the claim pursuant to Federal Rule of Bankruptcy Procedure 3001(f). *See also, In re Mid-American Waste Sys.*, 284 B.R. 53, 65 (Bankr. Del. 2002); Once a proof of claim is properly executed and filed "it is a debtor who bears the initial burden of going forward to produce evidence sufficient to negate the prima facie validity of the filed claim." *In re Desert Village Ltd. P'ship*, 321 B.R. 443, 446 (Bankr. N.D. Ohio 2004) (emphasis added) (citing *Morton v. Morton (In re Morton)*, 298 B.R. 301, 307 (B.A.P. 6th Cir. 2003); *see In re Allegheny International, Inc.*, 954 F. 2d 167, 176 (3d Cir. 1992) (burden shifts to objector to produce sufficient evidence to negate the prima facie validity of the filed claim); *In re Planet Hollywood International*, 274 B.R. 391, 394 (D.Del. 2001). "This evidence must be a probative force equal to that of the creditor's proof of claim." *In re Hinkley*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986), aff'd., 89 B.R. 608, aff'd., 879 F.2d 859. Stated another way, "the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Rally*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). Only when "the debtor has met that burden, the burden of going forward shifts back to the creditor, and the creditor bears the ultimate burden of persuasion." *Morton*, 298 B.R. at 307.

Moreover, where a claim is based on statute, not a writing, a taxing agency is not required to attach documentation to its proof of claim in order to retain the presumption of validity. *In re Los Angeles Intl. Airport Hotel Assoc.*, 106 F. 3d 1479, 1480 (9th Cir. 1997). A debtor taxpayer disputing a tax claim in bankruptcy has the burden of proving it does not owe the tax. *Raleigh v. Illinois Dept. of Revenue*, 530 US 15, 21-26 (2000).

Accordingly, SDTTC retains the presumption of validity, and the burden remains with the Debtor to present evidence that the tax claim is invalid, paid or otherwise inapplicable. *See In re Bryant Tool & Mfg., Inc.*, 16 B.R. 723 *(Bankr. S.D. Fla. 1982); In re Vic Snyder, Inc.*, 50 B.R. 631 (Bankr. E.D. Pa. 1985); *In re Lanza*, 51 B.R. 125 (Bankr.

D.N.J. 1985); *In re Lipetzky*, 66 B.R. 648 (Bankr. D. Mont. 1986); *In re Brickell Inv. Corp.*, 85 B.R. 164. (Bankr. S.D. Fla. 1988). In the case of tax claims, burden of proof and persuasion is upon debtor taxpayer and Bankruptcy Rule 3001(f) was held not to shift the burden of proof to the taxing agency. *In re Cobb*, 135 B.R. 640 (Bankr. D. Neb. 1992).

## CONCLUSION

Debtors' 505 Motion involves only state law issues. Resolution of those issues is more complex than asserted by the debtor, and administration of the bankruptcy estate would not be affected if the court were to abstain. There are no "core" bankruptcy matters to be severed, and the evidentiary hearing required to determine the 505 Motion would place a burden on the court's docket. As a result, the court shall abstain from determining any of the other tax years at issue in the Motion to Determine Tax Liability Pursuant to 11 U.S.C. § 505. Its exercise of jurisdiction under 11 U.S.C. § 505(a)(1) is permissive, and the court should find that abstention appropriate in the interests of comity under 28 U.S.C. § 1334(c)(1).

DATED: October 16, 2023

CREDITOR COUNTY OF SAN DIEGO
TREASURER-TAX COLLECTOR

By: /s/ *William Jernigan*
William Jernigan
Supervisor, Special Functions
Treasurer-Tax Collector