| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>MANDELBAUM BARRETT PC<br>3 Becker Farm Road, Suite 105<br>Roseland, New Jersey 07068<br>Ph.: 973-736-4600<br>Fax: 973-736-4670<br>Vincent J. Roldan<br>vroldan@mblawfirm.com<br><br>Attorneys for Taxing Districts Collected by Randall County | Case No. 23-13359 (VFP)<br><br>Chapter 11 |
| In re<br><br>Bed Bath & Beyond, Inc.<br><br>       Debtor. | |

**OPPOSITION RESPONSE OF THE TAXING DISTRICTS COLLECTED BY RANDALL COUNTY TO DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS**
(Relates to Document No. 2157)

  The Taxing Districts Collected by Randall County (collectively the "Respondents" or the "Taxing Entities") hereby oppose the Debtors' Motion to Determine Tax Liability and Stay Proceedings (hereinafter, "Motion") for the reasons set forth herein, and request that this Court deny Debtors' Motion or exercise its discretionary power to abstain from hearing this matter.

## I.   INTRODUCTION

  1.   On September 11, 2023, Debtors Bed Bath & Beyond, Inc., ("Debtors") Motion to Determine Tax Liability and Stay Proceedings, seeking relief under 11 USC § 505. Specifically, Debtors request that this Court determine market values upon which to compute taxes for the years 2023 as to the Claims and to stay state proceedings in Texas. Although Section 505(a) of the

1

Bankruptcy Code permits a bankruptcy court to determine the amount of a tax, it does not require the bankruptcy court to do so. In this case, the Court should abstain from such matters and allow the state courts to proceed.

2. Respondents are the holders of a secured *ad valorem* tax claim secured by liens on property located within Texas and owned by Debtors. Such claim was filed with Kroll Restructuring Administration on April 28, 2023 and is claim #59 (the "Tax Claim")[1]. Debtors' Motion rests upon an alleged improper valuation of property located at the Debtors store locations in Texas (the "Property"), but the Respondents do not participate in the valuation process. As such, the Debtors have not brought the proper parties before the Court, so the Debtors' Motion should be denied. In the alternative, Respondents respectfully request that the Court exercise its authority of permissive abstention. Respondents will show that the factors articulated in *In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001) weigh in favor of permissive abstention as set forth in 28 U.S.C. § 1334(c)(1).

3. At the time the Motion was filed, the appraised values for 2023 were complete and final unless a Notice of Protest was filed under Texas state law on or before May 15, 2023. Respondents are generally prohibited from valuing property or participating in the administrative process as discussed in more detail herein. Therefore, the Respondents lack information to sufficiently determine whether protests were timely filed.

## II. OBJECTION TO MOTION TO DETERMINE TAX LIABLITY

**Debtors Do Not Have the Proper Party Before the Court for an Action Under 11 USC §505**

---

[1] The Tax Claim includes not only 2023 estimated ad valorem property taxes, but also the 2022 actual taxes. At the time the Motion was filed, the tax assessments were already delinquent and owing for the 2022 tax year. Further, Debtor had not properly disputed said 2022 tax assessments pursuant to provisions of the Texas Property Tax Code. Debtors' claim objections only address the 2023 portion of the Tax Claim.

4. Debtors' Motion relies upon alternative valuations for property upon which Respondents collect taxes. As the valuation of property is not within the scope of Respondents' statutory duties, Debtors have not brought the proper parties before the Court. Respondents generally do not have control over or access to the renditions (the Debtor's annual report of assets held on January 1, 2023), which may have been previously submitted by Debtors, or the appraisal district valuations that Debtors dispute. Respondents are simply "responsible for collecting property taxes for a taxing unit." See Tex. Tax Code § 1.04(15). Only upon adjudication pursuant to the Texas Property Tax Code may the amounts collected by Respondents be revised. *See* Tex. Tax Code § 25.25, and Chapters 41 and 42.

5. The Texas Property Tax Code is a classic example of a "pervasive regulatory scheme" evidencing a legislative intent to vest the appraisal district with exclusive jurisdiction. *See Jim Wells County vs. El Paso Production Oil and Gas Company*, 189 S.W.3d 861, 871 (Tex. App. Hous. [1st Dist.], 2006, pet. denied). One of the Texas Legislature's primary purposes in enacting the Property Tax Code was to establish a system that yields fair and uniform valuations across the taxing units. *Id*. To accomplish this purpose, the Texas Legislature established a centralized appraisal district for every county (the "Appraisal Districts") and charged the Appraisal Districts with the exclusive responsibility for appraising property in the district for *ad valorem* tax purposes for each taxing unit that imposed *ad valorem taxes*. *Id*.; Tex. Tax Code § 6.01. In contrast, the Respondents, tax collecting units, only levy taxes, collect taxes, or issue refunds - they do not value property for tax purposes.[2] Tex. Tax Code §6.23; 42.43. The Respondent tax collecting units

---

[2] Lubbock Central Appraisal District, a respondent herein, serves the dual purposes of appraising property and collecting taxes. However, it's appearance in this bankruptcy via the claim filed by Lubbock Central Appraisal District was filed solely in its role as the tax collector via interlocal contracts with the taxing units of Lubbock County, Texas. While acting in the collector role, Lubbock Central Appraisal District, stands in the shoes of the taxing units and has no more authority concerning appraisals than any other taxing unit pursuant to Texas law.

have nothing to do with setting the tax value, and indeed are prohibited by law from even employing an appraiser to conduct such valuations. *Id*. § 1.15.

6. The Appraisal Districts are indispensable parties to any action regarding the determination of the value of the property subject to the Tax Claim, however they have not been properly brought before this court. The Appraisal Districts have not filed claims, entered appearances, consented to jurisdiction, or been served with a complaint.

7. The Respondents have no authority under Texas law to determine or establish the value of the Property. The Texas Property Tax Code makes clear, for good reason, that there is an unassailable wedge between the Appraisal District and the taxing authorities regarding the appraisal process: i) "A taxing unit may not employ any person for the purposes of appraising property for taxation purposes except to the extent necessary to perform a contract under Section 6.05(b) of this code." Tex. Tax Ann. § 1.15; ii) "A taxing unit may not intervene in or in any other manner be made a party, whether as defendant or otherwise, to an appeal of an order of the appraisal review board determining a taxpayer protest under Subchapter C, Chapter 41, if the appeal was brought by the property owner." Tex. Tax Ann. § 42.031(b); and iii) Under Section 6.01(b) of the Texas Property Tax Code an Appraisal District, is "…responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." To further illustrate, a member of the governing body or officer or employee of a taxing unit commits a Class A misdemeanor if the person directly or indirectly communicates with the chief appraiser or another employee of the appraisal district in which the taxing unit participates for the purpose of influencing the value at which property is appraised unless the person owns or leases the property that is the subject of the communication. Tex. Tax Ann. § 6.155.

8. To the extent that the property valuations requested by the Debtors result in reduced values, the Respondents are required by Texas law to base the tax levies on such reduced values and, to the extent taxes have already been paid on higher values, issue refunds to the Debtors based on the reduced values. In other words, the role of the Taxing Entities, with respect to the determination of taxes, is limited to the ministerial duty of implementing the changes required by Texas law based on the values determined by the proper court using the system outlined in the Texas Tax Code.

**Debtors Must File Adversary Proceedings to Bring a Proper Action Under 505**

9. The Debtors filed this Motion as well as an omnibus objection to multiple tax claims where the tax liability is based on the taxation of separate and distinct property. As indicated in detail herein, the Taxing Entities do not have the authority or the ability to determine, litigate, or negotiate the values set by the individual Appraisal Districts in each county. As such each individual Appraisal District charged with valuing the Property is a necessary and proper party to actions brought under §505 when dealing with Texas property. The Appraisal Districts are not parties to the bankruptcy and have not consented to jurisdiction. The only way to properly obtain jurisdiction of the Appraisal Districts is to file an adversary proceeding under Federal Rules of Bankruptcy Procedure 7003. In order to do so, the Debtors would need to file adversary proceedings against both taxing entities included in this Motion as well as 30 separate adversary proceedings against the 30 separate Appraisal Districts listed in the omnibus objection filed at Document #2156.

10. Federal Rules of Bankruptcy Procedure Rule 7001(2) require that an adversary proceeding be brought to "determine the validity, priority, or extent of a lien or other interest in property…." The Taxing Entities hold statutorily created secured liens on the Debtors' business

personal property and filed a secured Tax Claim. If granted, this Motion impacts the extent of the Respondents' liens. See *SLW Captial, LLC v. Mansaray-Ruffin*, 530 F.3d 230(3rd. Cir. 2008) holding "…where the Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one." at 242.

**Debtors May Be Time-Barred from Bringing Actions Under 11 USC §505(c)**

11.     The Debtors failed to prove or even allege that they have properly filed protests with the Appraisal Districts by the deadline established under state law which has now passed. 11 USC §505(c) prohibits the Court from determining "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." See *City of Perth Amboy v. Custom Distribution Services, Inc.* 224 F.3d 235 (3rd Cir. 2000).

**Response and Objection to Motion and Lammert Declaration**

12.     The proper parties are not before this Court to address the valuation issues raised in the Declaration of John W. Lammert. The Appraisal Districts, not the taxing entities, valued the Property using the methods established under the Texas Property Tax Code, therefore, the values of the taxed properties are issues best determined under the Texas statutory process by the Appraisal Districts. The valuation suggested by Debtors is incorrect and contrary to Texas state Law and any data provided by PTRS, a third party whose employment has not been authorized by this Court, should not be admissible in this case[3].

---

[3] The Respondents note that while Assessment Technologies, Ltd was employed by the estate, the Motion and Objection along with the Lammert Declaration rely on data from third-party Property Tax Research Services, a professional not hired by the estate.

6

4890-1424-7816, v. 1

13. The data provided by PTRS is improper because it included "Debtors' sales data in connection with going out of business sales," which were held after the Debtors' bankruptcy filing. Under the Texas Tax Code, the Market Value is "the price at which a property would transfer for cash or its equivalent under prevailing market conditions" and should not be based upon bankruptcy or on a going out of business environment. Tex. Tax Code §1.04 (7). The Lammert Declaration incorrectly refers to the definition of "Market Value" as set out in the Texas Administrative Code, not the definition from the Texas Property Tax Code which follows.

> "Market value" means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if:
> (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;
> (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and
> (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

TEX. TAX CODE ANN. § 1.04(7) (West Supp. 2021).

14. The Lammert Declaration is further flawed in that it relies on valuation data from the incorrect valuation date. The Texas Tax Code specifies the valuation date as January 1st of the taxable year, which was prior to the bankruptcy filing. Tex. Tax Code §23.01. Further, §23.1 (b) requires that "each property shall be appraised based upon the individual characteristics that affect the property's market value…" The Lammert Declaration fails to provide an analysis based on each individual store, located in different markets, assessed separately, as of January 1, 2023, using pre-bankruptcy market data. In situations where the Respondents have been able to review the renditions filed by the Debtors, the Debtors own valuations of the Property as of January 1, 2023 is well above the values they are asking this Court to determine.

### III. REQUEST FOR VOLUNTARY PERMISSIVE ABSTENTION

15. The Court should exercise its discretion and abstain from hearing this Motion. In bankruptcy cases, discretionary abstention is governed by 28 U.S.C. § 1334(C)(1), which provides as follows: "…nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

16. Further, 11 USC §505(a) provides that this Court has the discretion to decline to hear Debtors' Motion. See 11 U.S.C. §505(a) (stating that "the court may determine the amount or legality of any tax…" (emphasis added)). *See* also *In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001) ("The bankruptcy court's ability to abstain is premised on Congress' use of the word 'may' in § 505."); *In re New Haven Projects Ltd. Liability Co.* 225 F.3d 283, 288 (2nd Cir. 2000) ("we interpret the verb 'may' in 11 U.S.C. §505(a)(1) as vesting the bankruptcy court with discretionary authority to redetermine a debtor's taxes."); *In re Breakwater Shores Partners, L.P.,* 2012 WL 1155773, at *2 (Bankr. E.D. Tex. Apr. 5, 2012) ("the exercise of jurisdiction under § 505 is discretionary with this Court."); *In re Gordon*, 2011 WL 3878356, at *5 (Bankr. S.D. N.Y. Aug. 30, 2011) (As the verb "may" indicates, the Court's ability to determine a debtor's tax liability is discretionary."); *In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D. N.Y. 1990) (§505 is discretionary, and "the Court may decline to review a debtor's tax liability.").

17. Bankruptcy courts consider a number of factors in determining whether to abstain, including, but not limited to, "the complexity of the tax issues to be decided; the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the bankruptcy court's docket, the length of time required for trial and decision, the asset liability structure of the debtor, and the prejudice to the taxing authority." *See In re Luongo*, 259 F.3d at 330; *See also In re New Haven Projects,* 225 F.3d at 289. These factors weigh in favor of abstention in this case.

### A. **Complexity of Tax Issues To Be Decided**

18.     Complex tax issues are involved in this case due to the complex nature of the property and the requirements of Texas law. The issues to be decided are fact intensive and only involve issues of state law. *See In re Vanguard Natural Resources, LLC*, 603 B.R. 310, 320 (Bankr. S.D. Tex. 2019) ("Courts have generally abstained from hearing §505 requests, when the tax issue is fact intensive"). The tax determination in this case would require the Court to hear each motion separately, in over 30 separate hearings, based on the individual facts of each. The Court would be required to value property located throughout the state of Texas, which would be a significant and time-consuming undertaking for the Court. Moreover, determining the precise value, based on Texas law, of such property would require the Court to consider numerous complex issues under Texas law pertaining to retail property. While the Respondents do not doubt the Court's ability to understand complex tax issues, tax litigation in various Texas courts would be far more expeditious when heard by courts regularly tasked with the process. Hearing each individual Texas-based valuation would be a burdensome judicial determination requiring considerable time and effort by the Bankruptcy Court.

19.     As noted above, the Texas Property Tax Code evidences the Texas Legislature's intent to provide a clear and concise system that results in fair and consistent property valuations for *ad valorem* property taxes throughout the numerous appraisal districts in each county.   Tex. Tax Code § 6.01. Moreover, the Respondent Taxing Entities are limited to the collection of taxes and issuance of any applicable refunds. Tex. Tax Code §6.23; 42.43. By abstaining from Debtors' Motion, the state-law appointed parties, appraisal districts, will properly determine valuation.

20.     In April of each year, Texas tax appraising authorities issue appraisals of the Debtors' property, using generally accepted appraisal methods and techniques. Tex. Tax Code § 23.01. The chief appraiser for each authority is then required to submit the completed appraisal

records to the appraisal review board (the "ARB") for review and determination of protests. *Id*. § 25.22(a). Among the many duties of the ARB is the determination of protests initiated by property owners. *Id*. § 41.01(a)(1). The property owner is entitled to protest before the ARB a number of actions, including the determination of the appraised value of the owner's property or the unequal appraisal of the owner's property. *Id*. § 41.41(a). Debtors' valuation protests on property included in Respondent's claims, if previously filed, may be timely returned to courts in Texas for consideration. *See* 11 USC § 108(a). Yet, Respondents have no control over this process or the resulting valuations.

### B. Need To Administer the Bankruptcy Estate in an Orderly and Efficient Manner

21. Retaining these state court matters would not assist in administering the bankruptcy case in an orderly and efficient manner. Debtors have failed to demonstrate that a tax determination by the Bankruptcy Court would grant a more orderly, efficient, and prompt resolution. The Debtors have filed this Motion and an omnibus objection against other Texas taxing entities. In reality, each tax claim is based on the valuation performed by separate Appraisal Districts on separate property. Each valuation of the property subject to each tax claim is fact intensive and will need to be heard separately. Additionally, each valuation hearing will require separate expert reports, discovery, and testimony resulting in separate, lengthy evidentiary hearings. Based on this Motion and the additional objections to claims, at least 30 different hearings, with full blown discovery and testimony in each would be required if the Court retains jurisdiction Should the Court abstain, each matter can be held, virtually simultaneously, in the proper Texas state court, resulting in a more efficient administration of the bankruptcy estate.

### C. Burden on the Bankruptcy Court's Docket

22. The Court's docket is sufficiently stressed with the numerous matters that are required to be decided in this venue. Respondents are aware of other Objections and Motions filed

10

by Debtors', asserting similar disputes, with each case presenting its own nuances and body of law applicable to each jurisdiction. The court in *In re CM Reed Almeda 1-3062, LLC* abstained from adjudicating section 505 issues for property located in Texas, stating that, "because there is a review process available to the Debtor in Texas, 'it seems most appropriate that the debtor in chapter 11 proceed with the systems already in place' for determining its state tax liability, 'rather than substituting this court for that process.' 2016 WL 3563148 at *9 (*quoting In re the Village at Oakwell Farms, Ltd.*, 428 B.R.372, 375 (Bankr. W.D. Tex. 2010); *See also In re Elantic Telecom, Inc.*, 2005 WL 3781715, Case No. 04-36897-DOT (Bankr. E.D. Va. Dec. 2, 2005) (bankruptcy court abstained in part because tax issue was a local issue better resolved by the state); *Lyondell Chem. Co.*, 2010 WL 1544411, at *2 (Bankr .S.D. N.Y. Apr. 19, 2010) (New York bankruptcy court abstained from determining debtor's tax liability with respect to an oil refinery in Texas, where debtor preserved its rights to proceed in state tax proceedings).

### D. Length of Time Required for Decision

23.  It would be unreasonable to presume that the Court could easily hear all of Debtors' Objections and Motions, regarding millions of dollars in property, located in numerous varied Counties in Texas, in a speedy and expeditious manner. Further, the Court would be required to provide a written opinion on each for the benefit of the Responents' right to appellate review.

### E. Asset Liability Structure of Debtor

24.  The Debtors have already confirmed a plan of liquidation and have reserved funds sufficient to pay the 2023 Texas tax claims in full. Debtors and Respondents agreed to a holdback amount, which was approved by the Order Confirming the Second Amended Joint Chapter 11 Plan (Document No. 2172). Under Texas law, Debtors should pay the portions of the taxes which are

11

not in dispute when due and continue to hold funds sufficient for payment of the balance in a reserve fund until a judicial determination has been made.

### F. Prejudice that Could Result to the Taxing Entities

25. Respondents, in their capacity as the entities collecting taxes, do not have jurisdiction to address the valuation issues raised in the Objection to Claim and Motion; which are exclusive statutory duties of the appraisal districts. The Court's abstention in this matter will not result in prejudice to Debtors, who may still obtain judicial review of the assessments in Texas. Debtors must show that their valuation methodology is consistent with Texas law, which the Court must apply if it were to consider the relief requested. *In re CM Reed Almeda 1-3062*, LLC 2016 WL 3563148 at *9. (Debtors' Revised Fair Market Values and Revised Assessed Values were improperly calculated and understated, as they failed to consider the value of the property to a successor entity in the business). Evidence of value must be "sufficient to permit the court to arrive at a valuation that fits within the generous standards afforded appraisal districts by Texas law." *In re Fairchild,* 124 B.R. at 498. Respondents, as tax collecting units, are not privy to the appraisal and valuation information, and do not have the resources or training necessary to defend the appraisal done by the appraisal districts.

### G. Additional Factors Weighing in Favor of Abstention

26. Several courts have held that in instances where the uniformity of local assessment is at issue, it is proper for bankruptcy courts to abstain from hearing the matter. "As noted by Harris County, many courts have found abstention to be appropriate when uniformity of assessment is at issue." *In re CM Reed Almeda 1-3062, LLC,* 2016 WL 3563148, at *10. Uniform and Equal valuation of property is founded in the Texas Constitution. Tex. Const. art. VIII, §1. "In the context of section 505, abstention is often used where the uniformity of assessment is an issue." *ANC Rental Corp. v. Dallas County,* 316 B.R. 153, 159 (Bankr. D. Del. 2004); *In re Metromedia Fiber*

*Network*, 299 B.R. 251, 281 - 283 (Bankr. S.D. N.Y. 2003) (fair allocation of the cost of government among the tax base must be a product of local decision making and depends more on uniform standards for assessing value than on an ideal calculation). If the Property is valued using a different method than other similarly situated property, it could create havoc and set precedent for valuing such property into the future. When a Bankruptcy Court redetermines taxes pursuant to 11 U.S.C. § 505, it must apply substantive applicable non-bankruptcy law. *In re Fairchild Aircraft Corp.,* 124 B.R. 488, 492-93 (Bankr. W.D. Tex. 1991); *Metromedia Fiber Network*, 299 B.R. at 270. This encompasses not only the law concerning the method of valuation but also the type of evidence that may be considered. "Each tax authority must enjoy and apply a uniformity of assessment within its tax jurisdiction." *In re Cable & Wireless U.S.A., Inc.,* 331 B.R. 568, 578 (Bankr. D. Del. 2005).

27. It is clear that where uniformity of assessment is at issue, Bankruptcy Courts may exercise their right to abstain within their discretion. *In re New Haven Projects Ltd. Liability Co.,* 225 F.3d 283 at 287-88; *In re Metromedia Fiber Network*, 299 B.R. 251; United States v. Paolo, No. C.A. 08-482ML, 2009 WL 2208094, at *4 (D.R.I. July 23, 2009) (abstention is appropriate where no bankruptcy purpose served which would outweigh the importance of uniformity of assessment).

28. Another factor courts consider when deciding whether to exercise their power of permissive abstention is whether the proceeding filed in bankruptcy court involves forum shopping by one of the parties. In the case of *In re Republic Reader's Service, Inc.,* the court stated that another factor when considering abstention is:

> whether the proceeding was filed in bankruptcy court for the purpose of forum shopping in order to gain some adversarial advantage rather than for the reason that the proceeding is so related to the estate that failure to adjudicate the proceeding within a

bankruptcy forum would cause harm to or impede efficient administration of the estate. All courts should attempt to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping.

*In re Republic Reader's Service, Inc.,* 81 B.R. at 428; *See also In re Coho Energy, Inc.*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004). In applying this factor to the instant case, abstention is warranted. The determination of the value of the properties is in no way "so related to the estate that failure to adjudicate the proceeding within a bankruptcy forum would impede the efficient administration of the estate."

29. For these reasons, Respondents request the Court to exercise its power of discretionary abstention.

## RESERVATION OF RIGHTS

30. Respondents reserve their rights to present supplemental information and arguments as might become available after the filing of this Response, including joining and adopting arguments raised by other respondents, to Debtors' Objection and Motion.

## PRAYER

WHEREFORE, The Taxing Districts Collected by Randall County respectfully request this Court deny the Debtors' Motion or in the alternative exercise discretionary abstention as governed by 28 U.S.C. § 1334(C)(1) and grant them any other such relief as appropriate.

Dated:  Roseland, NJ
October 17, 2023

                                          MANDELBAUM BARRETT PC

                                          By: /s/ Vincent J. Roldan
                                          Vincent J. Roldan

3 Becker Farm Road
Roseland, NJ 07068
(973) 736-4600

and

PERDUE BRANDON FIELDER
COLLINS & MOTT, LLP

/s/ *Melissa E. Valdez*
Melissa E. Valdez (pro hac vice)
Texas State Bar No. 24051463
1235 North Loop West, Suite 600
Houston, Texas 77008
Telephone: (713) 862-1860
Facsimile: (713) 862-1429
Email: Houstonbk@pbfcm.com

***Attorneys for the Taxing Districts Collected by Randall County***