| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Robert J. Feinstein<br>Bradford J. Sandler<br>Paul J. Labov<br>Colin R. Robinson<br>Edward A. Corma<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>crobinson@pszjlaw.com<br>ecorma@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

### OBJECTION OF THE PLAN ADMINISTRATOR TO MOTION OF HRTC I, LLC FOR LEAVE TO FILE A LATE ADMINISTRATIVE CLAIM

Michael Goldberg, as plan administrator (the "Plan Administrator"),[2] files this objection (this "Objection") to the *Motion of HRTC I, LLC for Leave to File a Late Administrative Claim* [Docket No. 2397] (the "Motion") filed by HRTC I, LLC ("HRTC") and respectfully requests

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] The Plan Administrator has been appointed pursuant to the Debtors' Plan, as defined herein. The Plan Administrator is responsible for and has the authority to administer certain post-confirmation responsibilities under the Plan on behalf of the Reorganized Debtors.

denial of the Motion. In support of this Objection, the Plan Administrator respectfully states as follows:

### Introduction

1. In the Motion, HRTC's counsel acknowledges that the failure to file HRTC's administrative claim (the "Administrative Claim") by the applicable bar date was due to their own negligence, as set forth below:

> However, the bar dates for administrative claims, including the date applicable to "counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected" (July 21, 2023) did not get calendared. (Hilton Decl. ¶ 5.) The reason is because the Lead Counsel failed to note the date when he reviewed the Bar Date order and when he forwarded the order to staff he did not properly instruct staff on how to calendar the administrative claims bar date which, at the time, was not a confirmed date but rather was dependent on future events, i.e., whether the HRTC I Lease would be assumed, assumed and assigned, or rejected.

Motion ¶ 6.

2. Allowing a late-filed claim merely because a party's counsel has misread or neglected to read a bar date notice, which was not only mailed but also published, would not only risk creating an avalanche of late-filed claims, but it would vitiate the entire purpose of having a bar date.

3. Excusable neglect is subject to a high standard, based on a policy that favors finality and the ability to rely upon the body of claims filed on or before the bar date. To allow a late-filed claim based on excusable neglect is extraordinary relief, and in the case of an administrative claim, such relief would prejudice unsecured creditors by making it more difficult for them to obtain a recovery.

4. The facts and circumstances described in the Motion do not rise to the level required to satisfy the excusable neglect standard. HRTC has not met its burden of proof that it is entitled to the extraordinary relief of a late filed claim. Accordingly, the Motion should be denied.

## Background

5. On April 23, 2023, each of the above-captioned debtors (the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code. During these chapter 11 cases, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are procedurally consolidated and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). No party has requested the appointment of a trustee or examiner in these chapter 11 cases. On May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 218].

6. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order"). Pursuant to the Bar Date Order, "counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected—shall be required to file Administrative Claims no later than July 21, 2023." Bar Date Order ¶ 6.

DOCS_DE:245370.3 08728/003

7. The Bar Date Order also approved the form of bar date notice. Written notice of the applicable bar dates was mailed to, among others, all known creditors and other known holders of claims against the Debtors as of the date of the entry of the Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors, and to all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. In addition to mailing such actual notice, the Debtors also published notice of the applicable bar dates in *The New York Times* (National Edition).

8. On September 11, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2160] (the "Plan").[3] On September 14, 2023, the Court entered an Order confirming the Plan (the "Confirmation Order") [Docket No. 2172].

9. On September 29, 2023 (the "Effective Date"), the Debtors filed the *Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates and (II) Occurrence of Effective Date* [Docket No. 2311]. Pursuant to the Plan, on the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for purposes of resolving certain claims, performing claims reconciliation, and objecting to claims in accordance with the terms of the Plan Administrator Agreement.

**Argument**

10. HRTC cannot meet its burden to show the excusable neglect required in order to obtain relief from the Bar Date. The reason for the failure to file a timely claim, as set forth in the

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Motion, amounts to a failure to record the applicable bar date contained in the notices that were mailed and published. As discussed below, numerous courts have held that attorney mistake, without sufficient follow-up, is an insufficient ground to permit a late-filed claim. Accordingly, the Motion should be denied.

**I.     HRTC Cannot Demonstrate Excusable Neglect**

11.     HRTC has not demonstrated any excusable neglect. Bankruptcy Rule 9006(b) allows a party to request an extension of time when a failure to act timely was the result of "excusable neglect." Fed. R. Bank. P. 9006(b). A finding of excusable neglect under Bankruptcy Rule 9006 is premised on the equities of the case and is a requirement for allowing a late-filed claim. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 399 (1993). *Pioneer* sets forth a two-part test requiring a demonstration of neglect and that such neglect was excusable. *Id.* In determining whether excusable neglect exists, courts consider the relevant circumstances and weigh the following factors: "(1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant and; (4) whether the movant acted in good faith." *In re US Airways, Inc.*, No. 04-13819-SSM, 2005 Bankr. LEXIS 2696, at *22–23 (Bankr. E.D. Va. Nov. 21, 2005) (citing *Pioneer*, 507 U.S. at 394–95). "The burden of proving 'excusable neglect' is on the creditor seeking to extend the bar date." *Id.* at *23 (citing *In re Nutri\*Bevco*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990)). HRTC has failed to satisfy the requirements of establishing excusable neglect, and accordingly the Motion should be denied.

**A.     The Lack of a Basis for Delay Makes Excusable Neglect Impossible**

12.     In order to be entitled to an enlargement of time, the movant "must demonstrate some justification for the issuance of an extension." *Pioneer,* 507 U.S. at 403 (citing Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1165 (3d ed.); *see also Donald v. Cook County Sheriff's Dept.*,

5

95 F.3d 548, 558 (7th Cir. 1996) (finding that the lower court's enlargement of time without a motion or showing of excusable neglect was in error). As noted by the Fourth Circuit in *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996), a case analyzing the excusable neglect standard in the context of a failure to file a timely notice of appeal, "[t]he most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file the notice of appeal within thirty days." *Id.* "'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Id.* Mere oversight or "administrative failure" does not satisfy the requirement. *Id.* (citing *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985)). Accordingly, the most important component of excusable neglect is the basis for the failure to comply, and the movant must put forth some extenuating circumstance. *See Pioneer*, 507 U.S. at 403. HRTC has failed to do so.

13.     Courts have routinely denied motions to allow late filed claims under similar circumstances. In *KMart*, the Seventh Circuit found there had been no error when the bankruptcy court declined to find excusable neglect where the proof of claim had been filed one day after the bar date as a result of a mistake. *In re KMart Corp.*, 381 F.3d 709, 712 (7th Cir. 2004). In that case, the claimholder's attorney had delegated the filing of the claim to an office clerk. *Id.* The office clerk mailed the claim, but, at the post office, checked the box for second day delivery instead of next day delivery. *Id.* Counsel did not "make any follow-up phone calls to ensure that the proof of claim was timely received." *Id.* Counsel discovered the mistake and, three months after the bar date, filed the motion to allow, arguing that the "reason for the delay . . . was nothing more than an innocent mistake." *Id.* at 715. The Seventh Circuit found that the bankruptcy court did not commit clear error when it found there was no evidence of excusable neglect and it

expressed agreement with other "bankruptcy and district courts—the delay in filing [the] proof of claim was entirely within [counsel's] control. Put more directly, it was her own fault." *Id.*

14. The bankruptcy court for the Southern District of New York, ruling on similar facts, likewise found there had been no excusable neglect where counsel failed to follow up on a late filed claim. In *Musicland*, the attorney for a claimholder had prepared a proof of claim but, due to an apparent "miscommunication between [the attorney's] staff and [the attorney]," the claim was not filed. *In re Musicland Holding Corp.*, 356 B.R. 603, 609 (Bankr. S.D.N.Y. 2006). Upon discovering the mistake approximately a month after the claims bar date, the attorney filed a motion to allow a late claim, arguing that the delay in filing was the result of excusable neglect. *Id.* The court denied the motion, noting that "there is no evidence that counsel took any of the several available steps to confirm the filing of the claim," in particular that counsel made "no follow-up calls" and that counsel "never checked" whether the claim appeared on the electronic claims register. *Id.* at 609. *See also In re Enron Corp.*, 419 F.3d 115 (2d Cir. 2005) (citations omitted) ("[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule, and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary case, lose under the *Pioneer* test."); *In re Nortel Networks Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017) (citations omitted) (citing *Enron* approvingly and noting that "other courts have, for the most part, adopted a similar hard line to applying *Pioneer* that emphasizes the reason for the delay"); *In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 16 (Bankr. D. Del. 2010) (applying *Pioneer* and ruling that a five-month delay in filing a claim weighed against the claimholder).

15. HRTC asserts no facts that explain the reason why it failed to file a proof of claim other than oversight or administrative failure. Ultimately, the neglect described in the Motion was

7

not "excusable," as set forth by the Bankruptcy Code, and is quite contrary to the situation in *Pioneer*, which depended heavily on the fact that the notice was outside the ordinary course. *See In re Rose's Stores, Inc.*, 165 B.R. 410, 412 (E.D.N.C. 1994) (citing *Pioneer*). There is nothing out of the ordinary in this situation; HRTC simply lost track of the applicable bar date. Such a basis cannot constitute excusable neglect and should not reduce the recovery of parties who timely filed claims.

**B.     Allowing A Late-Filed Claim Would Prejudice The Debtors And Their Creditors**

16.     Allowing HRTC to file the Administrative Claim at this stage would violate the Bar Date's purpose: to act as a "statute of limitations and effectively exclude such late claims in order to provide the Debtor[s] and [their] creditors with finality to the claims process and permit the Debtor[s] to make swift distributions under the Plan." *In re XO Commc'ns, Inc.*, 301 B.R. 782, 787–88 (Bankr. S.D.N.Y. 2003). Courts have generally held that bar dates further the policy of finality that the Bankruptcy Code is intended to bestow, and to allow otherwise "would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *US Airways*, 2005 Bankr. LEXIS 2696, at *24 (quoting *In re Peters*, 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988)). To grant the Motion would establish a policy that "would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension." *Id.* at *25 (quoting *In re Best Products Co.*, 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992)).

17.     Moreover, granting the relief sought in the Motion could open the door for countless other administrative claims to be filed late, thereby thwarting the very certainty that the applicable bar dates were intended to provide in these chapter 11 cases. *See In re Gantt*, 153 F.3d 720, 1998 U.S. App. LEXIS 16742, at *10 (4th Cir. 1998) (discussing the risk that treating counsel's conduct as excusable neglect would "risk opening a door that should not be opened in

fair and efficient bankruptcy administration"). Here, there are no extenuating circumstances that led to HRTC's failure to timely file a claim; rather, there is merely a failure to act on the information provided to HRTC. If the relief sought in the Motion is granted, other parties will feel emboldened to seek relief for late-filed claims even when such relief is premised on similarly weak (or non-existent) bases. To avoid such an outcome, the Court should enforce the bar dates that have already been established in these chapter 11 cases.

18.  Allowing HRTC to file the Administrative Claim would prejudice the Debtors' stakeholders. Upon expiry of the applicable bar dates, the Debtors could reasonably believe that all claimants had come forward, which would allow the Debtors to calculate their outstanding liabilities to creditors for an effective reorganization and to provide stakeholders with an understanding of general exposure to claims and administrative expenses for the purposes of negotiating the Plan. If allowed, the Administrative Claim would further dilute the funds available for certain creditors. Late-filed claims would result in reduced recoveries to those creditors who did comply with the applicable bar dates. Given the current status of these chapter 11 cases and the likely impact of granting the Motion, this factor weighs heavily against a finding of excusable neglect.

### C.  The Length Of Delay Is Unreasonable Under The Circumstances

19.  Courts have emphasized that carelessness does not rise to the level of excusable neglect and that, accordingly, a delay resulting from carelessness is not reasonable. "[W]here there is no excuse for the late filing of a proof of claim other than the carelessness of the creditor or the creditor's attorney, such neglect is not excusable." *In re Quartercall Commc'ns, Inc.*, No. 95-15090-AM, 1996 Bankr. LEXIS 2042, at *13 (Bankr. E.D. Va. May 15, 1996) (citing *In re Rose's Stores*, 165 B.R. at 410).

9

20. Under the circumstances, HRTC's length of delay is unreasonable. HRTC provides no justification to support its position, other than administrative oversight. The bankruptcy estates and the Debtors' stakeholders should not be responsible for the inaction and miscommunication of creditors or their attorneys, especially after the Debtors had discharged their duty to provide notice to the relevant parties.

21. Courts have denied requests for late-filed claims made even two weeks after the bar date. *See Rose's*, 165 B.R. at 412 (finding that a two-week delay was not excusable neglect where the creditor was aware of the bar date and provided no excuse for the failure to act). In light of such factors, the length of the delay weighs against a finding of excusable neglect.

### D.   In Light Of Other Factors, Good Faith Is Insufficient To Warrant Excusable Neglect

22. While the Plan Administrator cannot conclude that HRTC acted in bad faith, HRTC has failed to satisfy any of the other factors set forth in *Pioneer*. Even in the apparent absence of bad faith, this factor alone, in light of the weight of the other factors, is insufficient to satisfy HRTC's burden. *See Rose's*, 165 B.R. at 412 (finding that even though good faith existed, other factors weighed against a finding of excusable neglect).

*[Remainder of Page Intentionally Left Blank]*

**Conclusion**

For the foregoing reasons, the Plan Administrator respectfully objects to the Motion and requests that the Court deny the Motion.[4]

Dated: October 17, 2023

/s/ Bradford J. Sandler
Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
Edward A. Corma
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

---

[4] For the avoidance of doubt, the Plan Administrator reserves his rights to object to any other claims that have been or may be filed by HRTC on any grounds whatsoever. Moreover, should the Motion be granted, the Plan Administrator hereby reserves his rights to object to the Administrative Claim on any grounds whatsoever.