| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>MANDELBAUM BARRETT PC<br>3 Becker Farm Road, Suite 105<br>Roseland, New Jersey 07068<br>Ph.: 973-736-4600<br>Fax: 973-736-4670<br>Vincent J. Roldan<br>vroldan@mblawfirm.com<br><br>Attorneys for Tax Appraisal District of Bell County, Texas | Case No. 23-13359 (VFP)<br><br>Chapter 11 |
| In re<br><br>Bed Bath & Beyond, Inc.<br><br>       Debtor. | |

**OBJECTION OF TAX APPRAISAL DISTRICT OF BELL COUNTY, TEXAS TO DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS and REQUEST FOR ABSTENTION**
*Responding to Doc #2157*

**TAX APPRAISAL DISTRICT OF BELL COUNTY, TEXAS (hereinafter "Bell"),** as and for its *Objection to Debtors' Motion to Determine Tax Liability and Stay Proceedings and Request for Abstention* **(hereinafter, the "Motion")**, respectfully represents as follows:

**BELL'S RESPONSES TO DEBTORS' ALLEGATIONS**

1. Bell confirms its consent to the Court entering a final order in connection with the Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

1

2. The Debtors challenge the assessed values of the business and personal property in their former Bell County, Texas stores. Bell asserts that the methodology asserted by the Debtors in the Motion is erroneous and not in compliance with the requirements under the Texas Property Code. The Debtors assert, on their Exhibit 1, proposed fair market values significantly below the fair market values they themselves provided to Bell in April 2023 on their required rendition forms.

3. The renditions were furnished by the Debtors' VP of Tax at the time. Now, a short time later, an outside for-profit company is asserting that the values provided by the Debtors' VP of Tax are substantially erroneous, although Debtors offer nothing but vague allegations without proof. Bell accepted the rendered value on one account and increased the rendered value by a mere 1.14% of the second account. Yet, the Debtors challenge their own values.

4. In paragraph 12 of the Motion, the Debtors cite certain Texas Tax Code Sections setting forth that, in assessing the Property for the tax year 2023, the various taxing assessors were required to determine the fair market value of the Property, "appraised at its market value as of January 1 of the applicable tax year", and "determined by the application of generally accepted appraisal methods and techniques". The Debtors, however, omit a relevant portion of Texas Tax Code Section 23.01(b) from their assertions, being: "If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards ***must*** (emphasis added) comply with the Uniform Standards of Professional Appraisal Practice. The same or similar appraisal methods and techniques ***shall*** (emphasis added) be used in appraising the same or similar kinds of property. Further, Bell admits the definition of market value as contained in paragraph 12 of the Motion. Although the definition is the same under both statutes, the proper statute citation is Texas Tax Code §104(7) not Texas Administrative Code

4856-5592-4360, v. 1

§9.4251, which pertains to Arbitration of Appraisal Review Board Determinations. Bell would show that "Appraised value" is also a defined term in *Texas Tax Code §104(8)* - "the value of property determined under the appraisal methods and procedures of Tax Code, Chapter 23". Further, the Texas Constitution, Article VIII Section 1(a) provides that "taxation shall be equal and uniform. Section (b) provides that all tangible real and personal property in the State, unless exempt as required or permitted by said Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

5. In paragraph 13 of the Motion, the Debtors again omit a crucial part of the fair market requirement – that the Property be exposed with a ***reasonable time*** (emphasis added) for the seller to find a purchaser. As to inventory, *Texas Tax Code §23.12* is applicable. ". (a) Except as provided by Sections 23.121, 23.1241, 23.124, and 23.127, the market value of an inventory is the price for which it would sell as a unit to a purchaser who would continue the business. (b) The chief appraiser shall establish procedures for the equitable and uniform appraisal of inventory for taxation. In conjunction with the establishment of the procedures, the chief appraiser shall: (1) establish, publish, and adhere to one procedure for the determination of the quantity of property held in inventory without regard to the kind, nature, or character of the property comprising the inventory; and (2) apply the same enforcement, verification, and audit procedures, techniques, and criteria to the discovery, physical examination, or quantification of all inventories without regard to the kind, nature, or character of the property comprising the inventory. (c) In appraising an inventory, the chief appraiser shall use the information obtained pursuant to Subsection (b) of this section and shall apply generally accepted appraisal techniques in computing the market value as defined in Subsection (a) of this section.

4856-5592-4360, v. 1

6. The Debtors state that use of sales data from applicable store, and unrelated stores, and third party discount value sites are appropriate measures of value. These items are not pertinent and contradict the Texas Tax Code requirements of appraisal.

7. The Debtors assert that bringing the valuation to the Bankruptcy Court under 11 U.S.C. §505 will result in an expeditious judicial determination. Bell disputes this assertion. Discovery as well as a separate evidentiary hearing for each taxing jurisdiction will be necessary. The Texas administrative process is not cumbersome. In fact, the Debtors have been availing themselves of same since May 2023 without prejudice to themselves. The Texas Counties will, conversely, be severely prejudiced, especially financially, if these matters are heard in New Jersey.

8. The value of the Property has already been properly established in accordance with the requirements of the Texas Tax Code and the 2023 tax amounts have been properly assessed.

### BELL REQUESTS THAT THE COURT EXERCISE PERMISSIVE ABSTENTION

9. Under 11 U.S.C. §505(a)(1) the Court **may** (emphasis added) determine tax liability. The Court is not mandated to do so. *In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001), *In re Beisel,* 195 B.R. 378, 379 (Bankr.S.D.Ohio 1996) ("The bankruptcy court's ability to abstain is premised on Congress' use of the word "*may*" in §505."). Further, under 28 U.S.C. §1334(c)(1), "except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11". The factors frequently cited by the courts in deciding whether to abstain include the complexity of the tax issues to be decided, the need to

4

administer the bankruptcy case in an orderly and efficient manner, the burden on the bankruptcy court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the taxing authority. *In re Hunt*, 95 B.R. at 445.

10. While the tax issues in this matter are not complex, they are fact specific to each store and taxing jurisdiction. Texas has a streamlined established statutory process for a taxpayer to challenge taxable values. Having the matter heard in New Jersey will not expedite administration of the estate and will burden the Court. This matter will require lengthy discovery and numerous separate trials before the Court. It is more efficient for the Debtors to continue to avail themselves of the appeals process in each Texas jurisdiction, although it is antithetical for the Debtors to challenge their own asserted values. Further, requiring the Texas taxing jurisdictions to address this matter in New Jersey is burdensome and costly to the state entities involved here. Government resources should be conserved not exploited.

11. Another touchstone of the abstention inquiry is the substantive law governing the material issues. When bankruptcy issues are at the core of a dispute, it would not make sense for a bankruptcy court to abstain from deciding those matters over which it has particular expertise. Here, Texas tax law is the substantive law. Although the Court is capable of making a determination in this matter, the Court would be required to conduct a fact-intensive appraisal process under Texas law. Texas has venues better suited for the determinations at hand. Further, it is imperative to the integrity of the Texas ad valorem taxing system that uniformity of assessment be maintained as required by the Texas Constitution Article VIII Section 1(a) - "taxation shall be equal and uniform".

12. Another consideration in abstention is the impact on the Debtor. *In re Smith, 122 B.R. 130, 133-134 (Bankr. M.D.Fla. 1990)*. The *Smith* court declined to exercise its discretion

because doing so would not assist the debtor with a fresh start. The Court may abstain from making a § 505(a) valuation if the impact of abstention on the general administration of the estate, and on the Debtor, is minimal or nonexistent. *In re American Motor Club, Inc.*, 139 B.R. 578, 581 (Bankr. E.D.N.Y. 1992). The Debtors herein are not in need of a fresh start. They have liquidated. They have confirmed a Plan. They are holding the proceeds of the sales. The Debtors will not be prejudiced by paying their rightfully due taxes.

## TEXAS BUSINESS PERSONAL PROPERTY TAX TIMELINE

13. On January 1st of each year, a tax lien attaches to property to secure the payment of all taxes, penalties and interest ultimately imposed for the year on the property. *Texas Tax Code §32.01.* Said tax lien takes priority over most other liens. *Texas Tax Code §32.04, 32.05.*

14. A taxpayer is required to render for taxation, by April 15 of each year, to each appraisal district in which the taxpayer, as of January 1, owns tangible personal property used for the production of income. *Texas Tax Code Chapter 22.* The Debtors submitted a rendition for each of the Bell accounts as detailed below.

15. The chief appraiser is to mail notices of appraised value for properties other than single-family homesteads by May 1st or as soon as practicable thereafter. *Texas Tax Code §25.19.*

16. A taxpayer may protest a notice of appraised value with the established Appraisal Review Board (ARB) by May 15 or by the 30th day after notice of appraised value is delivered, whichever is later. *Texas Tax Code §41.44.*

17. The tax assessor mails tax bills on October 1, or as soon after as practical. *Texas Tax Code §31.01.*

## THE APPEALS PROCESS

18. As stated in paragraph 16 above, a taxpayer can challenge the appraised value of property by timely filing a protest with the Appraisal District. The matter then goes before an Appraisal Review Board (ARB), which is a group of citizens that hears taxpayer protests. A taxpayer can appear in person, offer evidence by affidavit, or appear telephonically or by video. A taxpayer can appoint an agent to act in its place. The process is not burdensome.

19. *Texas Tax Code §41.41* sets forth the actions that a property owner can protest before the appraisal review board. The only action applicable in this case is (1) determination of the appraised value of the owner's property. Bed Bath & Beyond filed such protests with the ARBs on all accounts on which they seek to challenge the value. Once the debtors filed their protests, the ARB set hearings on each. The debtors had the opportunity to offer evidence or argument by affidavit without personally appears and were able to appear by telephone conference call or videoconference to offer argument. *Texas Tax Code §41.45(b).* If the Debtors oppose the ruling of the ARB, they have the option to seek arbitration or to file a lawsuit with the district court within 60 days of the ARB Order. *Texas Tax Code §41A.03, 42.21.* Information regarding this is clearly available on each CAD's website and is required to be prominently displayed to taxpayers.

20. After making a determination or decision, the ARB, by written order, directs the chief appraiser to correct or change the appraisal records or the appraisal roll to conform the appraisal records or roll to the board's determination or decision. *Texas Tax Code §41.02.*

## APPRAISAL DISTRICT VS. TAX ASSESSOR/COLLECTOR

21. An appraisal district and a tax assessor/collector are separate and distinct entities with separate and distinct statutory duties. An appraisal district appraises all real and business

personal property within a county, according to the Texas Tax Code and the Uniform Standards of Professional Appraisal Practices (USPAP). The Texas Constitution Article 8, Section 14 requires the voters of a county to elect an Assessor and Collector of Taxes. The Tax Assessor-Collector has specific duties as outlined in the Texas Constitution and by state statutes, which include the collection of ad valorem taxes for the county, as well as contracting with other entities to collect their jurisdictions' taxes. While in many cases, the appraisal district does not collect ad valorem taxes, in Bell County, Texas these duties are contracted to the Tax Appraisal District. An appraisal district is a political subdivision of the state. *Texas Tax Code §6.01*

## THE BELL CLAIM

22. The Bell claim includes the tax year 2023 taxes for two (2) accounts, being Account No. 405003 for the store formerly located at 201 E. Central Texas Expy, Suite 250 in Harker Heights, Texas and Account No. 238464 for the store formerly located at 2112 SW H.K. Dodgen Loop 151, Temple, Texas.

23. Bell filed its original claim, Claim No. 146 on the Kroll claims record, on May 1, 2023 and included estimated tax numbers on said claim. Actual assessed amounts became available in October, 2023, and on October 16, 2023, Bell amended its claim, Claim No. 17870, to the actual assessed amounts.

24. Calculation of the claim amount is a simple mathematical formula. The appraised value of property is multiplied by the established tax rate for the applicable jurisdiction. The applicable 2023 tax rates, per $100.00 of value, for the Accounts are:

Account 405003:

Bell County – 0.291400
City of Harker Heights – 0.525000
Killeen I.S.D. – 0.850100
Central Texas College - 0.082500

Account 238464:

Bell County – 0.291400
City of Temple – 0.613000
Temple I.S.D. – 1.148900
Temple College – 0.201700

Bell County WCID#6 – 0.024700  
Clearwater UWCD – 0.002372  
Road District – 0.021100  
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-  
Total rate – 1.797172

Taxable value - $653,582.00  
Assessed 2023 tax - $11,746.00

Clearwater UWCD – 0.002372  
Temple Health & Bioscience – 0.014211  
Road District – 0.021100  
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-  
Total rate – 2.292683

Taxable value - $737,441.00  
Assessed 2023 tax - $16,907.19

The Debtors have not challenged the tax rates.

## THE KILLEEN STORE

25. Pursuant to the statutory timeline, the tax liens attached to the property on January 1, 2023 and are first in priority to all other liens existing on this specific property. Upon the sale, the lien transferred to the proceeds. The Debtors submitted their required renditions to Bell. Both are dated April 11, 2023 and signed under penalty of prosecution for Tampering With a Government Record by Debtors' Vice President of Tax at that time, Toni-Anne Andrisano. On said form, Ms. Andrisano states that as of a December 31, 2022 Inventory, one day prior to the required valuation date of January 1, 2023, the Killeen store had $627,503.00 in inventory, valued at cost. She also provides an itemized listing of furniture and fixtures, indicating the acquisition date, age, asset ID number, asset description, cost, and depreciated value. She does the same for signs and computer equipment. She states the depreciated value of said assets is $29,226.00 for the furniture and fixtures, $6,232.00 for signs, and $3,215.00 for computer equipment. The aggregate value of the taxable property, per the Debtors' rendition, is **$666,176.00**. Bell assessed the taxable value at a **LOWER** figure of **$653,582.00**.

26. By way of comparison, the Debtors' taxable property value for the Killeen store has been steadily decreasing over the past eight (8) years as follows:

2017 - $1,322,227.00

2018 - $1,088,447.00

9

2019 - $1,082,060.00

2020 - $701,979.00

2021 - $686,065.00

2022 - $681,275.00

2023 - $653,582.00

The past valuations are an indication that there is no discrepancy in the 2023 valuation.

27. Despite Bell determining a lower taxable value than rendered by the Debtors, the Debtors protested the established value three (3) months later on July 12, 2023 by submitting a "Property Owner's Notice of Protest". This form is used by a property owner to protest the appraised value of property with the appraisal review board (ARB) pursuant to Texas Tax Code §41.41. The stated reason on the form is "incorrect appraised (market) value and/or value is unequal compared with other properties". The protest form is signed by a Vicki Hanks and dated July 10, 2023. Ms. Hanks works for Assessment Technologies, Ltd., the entity that is asserting that the valuations are improper. On said form, she does not state any opinion of the property's value or any facts relating thereto. She requests an in-person hearing with the ARB. As of the filing of this objection, the undersigned does not have subsequent information regarding the ARB hearing.

28. The Debtors support their pending Motion with the affidavit of John Lammert of Assessment Technologies, Ltd. In his affidavit, attached to the Motion, John Lammert states he has identified assets that should be reduced or disputed based upon the records maintained by the Debtors in the ordinary course of business. He does not specifically identify those records. As previously stated, the renditions which the Debtors submitted constitute records maintained by the Debtors in the ordinary course of business and those renditions reflect a lower taxable value

on the Killeen store and a taxable value only 1.14% higher on the Temple store. Mr. Lammert also states that he has relied on other materials, also not specifically identified, and the Debtors' sales data, which is irrelevant to valuation as of the required date of January 1, 2023 and the statutory definition of fair market value. He further relies on a third-party for-profit firm Property Tax Research Services, also irrelevant to the determination. Use of the sale data is erroneous because the sales occurred after January 1, 2023 and at least some of the sales were not based on arms-length transactions between the Debtors and the purchasers. By the end of the liquidation process, the sales were likely "fire sales", aimed at moving the remaining merchandise out of the stores. Further, there is no indication how much merchandise remained upon the store closing or whether said merchandise was redirected to a warehouse for further sale or other disposition. The Debtors have furnished NO documents in support of their assertions. They have simply made vague, unsubstantiated allegations by an outside company that is a for-profit company focused on reducing commercial property taxes. The renditions were submitted at or about the date the Debtors filed their bankruptcy petitions and were submitted by the Debtors themselves, through their Vice-President of Tax who presumably would be familiar with the company assets and the values thereof. Further, not once does Mr. Lammert reference the requirement that appraisal district use Uniform Standards of Professional Appraisal Practice be used.

29. The 2023 taxes due are $11,746.00. This includes taxes due to: Bell County; Central Texas College; Bell County Road; Killeen Independent School District; City of Harker Heights; Clearwater Underground Water Conservation District; Bell County WCID #6. The taxes are due without penalty or interest no later than January 31, 2024 and become delinquent on February 1, 2024.

11

## THE TEMPLE STORE

30. Bell also received Bed Bath & Beyond's 2023 Business Personal Property Rendition of Taxable Property for its Temple, Texas store on April 18, 2023. The rendition was also completed and signed by Toni-Anne Andrisano, Bed Bath and Beyond's Vice President of Tax at that time. She signed, affirming that the information was true and accurate to the best of her knowledge with the knowledge that making a false statement on the form could result in her being found guilty of a Class A misdemeanor or state jail felony under Texas Penal Code Section 37.10 "Tampering With Governmental Record". On said form, dated April 11, 2023, Ms. Andrisano states that as of a December 31, 2022 Inventory, the Temple store had **$701,492.00** in inventory, valued at cost. She also provides an itemized listing of furniture and fixtures, indicating the acquisition date, age, asset ID number, asset description, cost, and depreciated value. She does the same for signs and computer equipment. She states the depreciated value of the furniture and fixtures is $20,277.00, $5,990.00 for signs, and $1,285.00 for computer equipment, bringing the total value of taxable property to $729,044.00. Bell assessed the taxable value at a slightly higher figure than asserted by the Debtors, being **$737,441.00.** Bell's taxable value on this account has also declined each year for the past eight (8) years as follows:

2017 - $1,360,306.00

2018 - $1,163,640.00

2019 - $1,154,836.00

2020 - $889,429.00

2021 - $784,161.00

2022 - $760,306.00

2023 - $737,441.00

4856-5592-4360, v. 1

A separate but identical "Property Owner's Notice of Protest" form was submitted by Vicki Hanks for the Temple store. John Lammert, also of Assessment Techologies, Ltd submitted a one (1) page affidavit to Bell in August, 2023, requesting the taxable value for the Temple store be reduced to $200,373.00 without documentation or substantiation and indicated that he did not intend to appear at the ARB hearing.

31. The 2023 taxes owed are $16,907.19. This includes taxes due to: Bell County; Temple College; Bell County Road; Temple Health and Bioscience District; Temple Independent School District; City of Temple; Clearwater Underground Water Conservation District.

## BELL'S POSITION AND REQUESTS FOR RELIEF

32. (a) The Court should deny the Motion for lack of proof and incorrect assertions of law.

(b) The Court should abstain from hearing this Motion.

(c) If the Court does not abstain, the Court should enter scheduling orders for discovery and trial dates for each taxing entity.

33. Bell hereby incorporates any and all additional arguments asserted by the other Texas Taxing Authorities.

## CONCLUSION

WHEREFORE, Bell respectfully requests that the Debtors' Motion be denied. Alternatively, Bell requests that the Court abstain from hearing the Motion, or if the Court does not abstain, enter scheduling orders. Bell further requests that the Court order such other and further relief to which it demonstrates itself entitled herein.

Dated: Roseland, NJ
October 17, 2023

                                        MANDELBAUM BARRETT PC

                                        By: /s/ Vincent J. Roldan

Vincent J. Roldan
3 Becker Farm Road
Roseland, NJ 07068
(973) 736-4600

and

*/s/ Julie Anne Parsons*
Julie Anne Parsons
Texas State Bar No. 00790358
McCREARY, VESELKA, BRAGG & ALLEN, P.C.
P. O. Box 1269
Round Rock, TX 78680-1269
Telephone: (512) 323-3200
Fax: (512) 323-3205
Email:  jparsons@mvbalaw.com

*Counsel for Tax Appraisal District of Bell County Texas*

4856-5592-4360, v. 1