**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
John S. Mairo, Esq.
(jsmairo@pbnlaw.com)

**RIMÔN PC**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
(310) 525-5859
(213) 375-3811 Facsimile
Jacquelyn H. Choi, Esq.
(*pro hac vice admission pending*)
jacquelyn.choi@rimonlaw.com

*Counsel to County of Santa Clara, County of Los Angeles, County of Fresno and County of Riverside*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date and Time**: October 24, 2023 at 10:00 a.m. (ET) |

**OBJECTION OF COUNTY OF SANTA CLARA, COUNTY OF LOS ANGELES, COUNTY OF FRESNO AND COUNTY OF RIVERSIDE TO DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS AS TO CERTAIN CALIFORNIA TAXING AUTHORITIES**

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

1

The County of Santa Clara ("Santa Clara"), County of Los Angeles ("LA"), County of Fresno ("Fresno") and County of Riverside ("Riverside") (collectively, the "Counties"), by and through their undersigned counsel, respectfully submit this objection (the "Objection") to *Debtors' Motion To Determine Tax Liability And Stay Proceedings As To Certain California Taxing Authorities* (the "Motion") [Docket No. 2181], and in support thereof, respectfully represent, as follows: [2]

## PRELIMINARY STATEMENT

1.     In the Motion, the Debtors seek Court authority to determine market values to establish the bases upon which to compute taxes for the 2023 tax year in connection with the Debtors' personal property located within seventeen (17) different counties across forty-nine (49) different locations throughout the State of California.  The Debtors allege that, with the assistance of their advisors, they used sales of retail furniture, fixtures, equipment, and leasehold improvements at the Debtors' stores ("Debtor Sales Data") to approximate the Fair Market Value of the Property as allowed by applicable non-bankruptcy law as of the date the values were to be assessed and that such source provides a representative assessment of the Fair Market Value of the Debtors' Property.  *See* Motion ¶ 16.

2.     The Debtors contend that the "Assessing Authorities 2023 Fair Market Value" for the Property as provided in the Assessment Schedule is "overstated".  *Id.* at ¶¶ 9, 11 & 15.  The Debtors urge this Court to determine the market values for the Property based upon their expert's opinion whose Revised Fair Market Values are proposed in Exhibit 1 (Assessment Schedule) to the Declaration of John W. Lammert (the "Lammert Declaration").  In total, the Assessment Schedule's "Assessing Authorities 2023 Fair Market Value" of the Property is $33,193,638.00,

---

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as ascribed to them in the Motion.

whereas the Debtors' Revised Fair Market Values for the Property is $2,598,559.00. Stated differently, the Debtors boldly assert, with little substance, that the fair market value of the Property is "overstated" by nearly $30.6 million or by over 92%.

3.      As a procedural matter, although the Debtors' Motion constitutes a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure, the *Affidavit of Service* [Docket No. 2392] filed with the Court reveals that the Debtors did not properly serve the Motion in accordance with state and federal laws. For this reason, it's not clear whether all of the California Counties affected by this Motion received proper notice in order to defend their interests in a timely fashion.

4.      If the Court moves beyond the defective service of the Motion, Section 505(a)(2)(C) of the Bankruptcy Code provides, in relevant part that, "[t]he court may not so determine – the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." 11 U.S.C. § 505(a)(2)(C). With respect to Santa Clara's interests, this Court lacks jurisdiction under Section 505(a)(2)(C) to determine this dispute because the deadline by which Debtors were required to file an appeal with the local Assessment Appeals Board has expired.[3] *See* Cal. Rev. & Tax. Code § 1603. Thus, with respect to Santa Clara's interests, this Court lacks jurisdiction over the Debtors' Motion pursuant to Section 505(a)(2)(C) of the Bankruptcy Code.

5.      If the Court looks beyond the defective service of the Motion and the exception to Section 505 of the Bankruptcy Code with respect to Santa Clara's interests, the Counties believe

---

[3] In California, the general deadline to file an appeal with the local Assessment Appeals Board is September 15, 2023 if the local assessor provided timely notice to the taxpayer. See Cal. Rev. & Tax. Code § 1603(b)(1). However, this deadline is extended to November 30, 2023 if the local assessor did not provide certain notice to the taxpayer. See Cal. Rev. & Tax. Code § 1603(b)(3).

7491532

the abstention factors strongly favor the Court permissively abstaining from hearing the Motion. While Section 505(a)(1) of the Bankruptcy Code allows a bankruptcy court to determine a debtor's tax liabilities, the statute is discretionary ("may" versus "must").  Furthermore, "in the interest of justice, or in the interest of comity with State courts or respect for State law," the applicable factors for discretionary abstention under 28 U.S.C. § 1334(c)(1) weigh heavily in favor of having this Court permissively abstain.  The factors include: the complexity of the tax issue; the need to administer the bankruptcy case in an orderly and efficient manner; whether adjudicating the issue will create a substantial burden on the court's docket; whether significant time is needed to reach a decision; whether the debtor's asset and liability structure warrants a ruling; and the potential prejudice to the debtor, taxing authorities, and creditors.

6.      The Counties submit that abstention is appropriate because the Motion requires a "fact intensive review." Contrary to the Debtors' suggestion, it is clear that Fair Market Value is only a starting point in the complex procedure of equalization that has been created by the California State Board of Equalization.  California's mechanism for valuing and disputing property assessments is in place and should be allowed to proceed.  Furthermore, any decision by this Court on the valuation/tax issues presented could affect the uniformity of assessment of taxes imposed on other taxpayers throughout the State of California.

7.      In the event this Court does not abstain, the Counties respectfully request that the Court deny the Motion because the Debtors have failed to carry their burden for primarily four reasons.  First, the law presumes that Assessors (defined below) have properly performed their duties under California law.  Second, the Debtors failed to properly assess the Property's Fair Market Value as of January 1, 2023 (the "January 1 Lien Date").  Third, the Debtors' interpretation and application of Fair Market Value is fundamentally flawed because the sales took place in a

4

distressed sale environment during Debtors' going out of business sales. In short, sales of assets from a distressed or liquidation environment are not valid indicators of fair market value under California law's definition of "fair market value" because the buyer has the ability to take advantage of the exigencies of the seller while the Debtors are forced to sell their inventory at artificially low prices. Fourth, although California employs three (3) primary valuation methods to value business personal property (the comparative sales approach, the income approach, and the cost approach), the Debtors' reliance on its own "Debtor Sales Data" is not a valid or recognized valuation method under California law.

8.       In summary, the Motion fails to present evidence sufficient to overcome the statutory presumption that the California Counties correctly valued the Property in question. The Lammert Declaration does not assist the trier of fact because he does not present reliable or credible evidence of Fair Market Value by his reliance on the Debtor Sales Data. *See* Rule 702 of the Federal Rules of Evidence.[4]   In short, nothing in the Lammert Declaration satisfies local assessment standards under California law. Accordingly, if this Court is not inclined to abstain from hearing this matter, the Motion must be denied in its entirety.

## BACKGROUND FACTS

9.       On April 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

10.       On September 11, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2160] (the "Second

---

[4]   Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case".

7491532

Amended Plan").

11.    On September 14, 2023, this Court entered *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172].

12.    On September 15, 2023, the Debtors filed *Debtors' Motion To Determine Tax Liability And Stay Proceedings As To Certain California Taxing Authorities* [Docket No. 2181] (the Motion).  The Debtors seek Court authority "to establish the property market values based upon which to compute taxes for tax year 2023 for the Debtors property" involving a total of seventeen (17) California counties.

13.    On September 15, 2023, the Debtors filed *Debtors' (I) Second Omnibus Objection To Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings* [Docket No. 2180] (the "Second Motion") which affects nine (9) other California counties who appear to have filed proofs of claim prior to the filing of the Debtors' Second Motion.[5]

### SUMMARY OF ARGUMENT

14.    As a threshold matter, the Court should deny the Motion because service upon the California Counties was defective.  Next, as to Santa Clara's interests, this Court lacks jurisdiction over the Debtors' Motion pursuant to Section 505(a)(2)(C) of the Bankruptcy Code.  If the Court looks beyond the defective service of the Motion and the exception to Section 505(a) of the Bankruptcy Code with respect to Santa Clara's interests, the Counties respectively request that the Court exercise its discretion to permissively abstain from hearing this Motion pursuant to 28

---

[5]   The deadline for governmental units to file proofs of claim does not expire until on or around October 20, 2023. Therefore, to the extent one or more of the Counties have not filed their proofs of claim as of the date of the filing of this Objection, those Counties reserve their right to do so.

7491532

U.S.C. § 1334(c)(1) as the relevant factors strongly favor abstention. In the event the Court does not abstain, the Counties believe the Motion should be denied in its entirety as to **_all_** California Counties because the Debtors have failed to carry their burden. Finally, in the event the Court does not deny or abstain from hearing the Motion based on the Objection (and the accompanying declarations submitted by the Counties[6]), the Counties respectfully request that the Court: (i) authorize the exchange of discovery and/or information; (ii) establish a briefing schedule and that an evidentiary hearing be set with respect to the disputed valuation issues; and (iii) establish a common procedure for all objectors and/or responders who possess common interests in law or fact in the interest of judicial efficiency and economy.

## ARGUMENT

### I.   THE MOTION MUST BE DENIED BECAUSE THE DEBTORS DID NOT COMPLY WITH STATE AND FEDERAL SERVICE RULES

15.    The Debtors' Motion constitutes a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP"). *See e.g., Whelan v. United States of America (In re Whelan),* 213 B.R. 310, 313 (Bankr. W.D. La. 1997) ( "a motion brought pursuant to the provisions of section 505(a) is a contested matter"); *In re Vale,* 180 B.R. 1017, 1020 (Bankr. N.D. Ind. 1994) (a "§ 505(b) motion is a contested matter falling within the scope of Fed.R.Bk.P. 9014"). The existence of an underlying unresolved dispute is the hallmark of a contested matter. *See United States v. Laughlin (In re Laughlin),* 210 B.R. 659, 661 n. 2 (B.A.P. 1st Cir. 1997) ("it is the existence of an unresolved dispute and a motion seeking relief, rather than formal opposition to the relief sought, that identify a contested matter"). In order for the Debtors to prosecute the Motion, FRBP 9014(a) mandates that certain procedures must be followed in a contested matter

---

[6] Specifically, the declarations of: (i) John Sleeman for Santa Clara; (ii) Calvin Chien for LA; (iii) Belinda Landig for LA; (iv) Jennifer Fruge for Fresno; and (v) Jennifer Lemley for Riverside.

7491532

pending before the Court.  For example, FRBP 9014(b) specifically requires that service of the

Motion shall be effectuated in a manner provided for service of a summons and complaint pursuant

to FRBP 7004, as follows:

> (b) Service. The motion shall be served in the manner provided for
> service of summons and complaint by Rule 7004 and within the time
> determined under Rule 9006(d).

16.    Furthermore, according to FRBP 7004(b)(6), which governs service by first class

mail upon a municipal or governmental organization, the Debtors were required to serve the

Motion upon the person or office authorized by state law to receive service of process on behalf

of the California Counties.  Pursuant to California Code of Civil Procedure ("C.C.P.") Section

416.50 (which governs service of process upon a municipal or governmental organization),

California law provides that:

> (a) A summons may be served on a public entity by delivering a
> copy of the summons and of the complaint to the ***clerk, secretary,
> president, presiding officer, or other head of its governing body***;
> (b) As used in this section, "public entity" includes the state and any
> office, department, division, bureau, board, commission, or agency
> of the state, the Regents of the University of California, a county,
> city, district, public authority, public agency, and any other political
> subdivision or public corporation in this state (emphasis added).

17.    Here, the *Affidavit of Service* filed in connection with the Motion reveals that the

Debtors did not comply with the above-referenced service rules mandated under state and federal

law with respect to the Counties.  The Debtors' blanket service upon the assessor, the tax collector

or even the assessment appeals board does not constitute proper service because these officials do

not serve as the "clerk, secretary, president, officer, or other head of its governing body" under

C.C.P. Section 416.50.  *See Affidavit of Service* [Docket No. 2392], Exhibit "B", p. 24.  The

Counties express some concern that some California Counties may not have received any notice

of the Motion.  The "fundamental requisite of due process of law is the opportunity to be heard".

7491532

*Grannis v. Ordean*, 234 U.S. 385, 393, 34 S.Ct. 779, 783 (1914) (citation omitted).  "This right to

be heard has little reality or worth unless one is informed that the matter is pending and can choose

for himself whether to appear or default, acquiesce or contest".  *See Mullane v. Central Hanover*

*Bank & Trust, Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950) (holding, in part, that due process

requires reasonable notice and opportunity for hearing appropriate to the pending matter which is

to be provided finality).

18.     With a minimal amount of effort – the same amount of effort that the Debtors were

willing to exert for determining the Fair Market Value for the Property in question – the Debtors

could have very easily identified the appropriate party to serve and provided each of the California

Counties with proper notice.  Based upon the Debtors' disregard for the applicable service rules,

the Motion should be denied.

**II.     WITH RESPECT TO SANTA CLARA'S INTERESTS, THIS COURT
LACKS JURISDICTION TO DETERMINE THE MOTION BECAUSE THE
DEADLINE TO FILE AN APPEAL WITH THE LOCAL ASSESSSMENT
APPEALS BOARD HAS EXPIRED PURSUANT TO SECTION 505(a)(2)(C)
OF THE BANKRUPTCY CODE.**

19.     Section 505(a)(2)(C) of the Bankruptcy Code provides, in relevant part that, "[t]he

court may not so determine – the amount or legality of any amount arising in connection with an

ad valorem tax on real or personal property of the estate, if the applicable period for contesting or

redetermining that amount under applicable nonbankruptcy law has expired". 11 U.S.C. §

505(a)(2)(C).  With respect to Santa Clara's interests, this Court lacks jurisdiction under Section

505(a)(2)(C) to determine this dispute because the deadline by which Debtors were required to file

an appeal with the local Assessment Appeals Board expired on September 15, 2023.  *See* Cal. Rev.

& Tax. Code § 1603.  In California, the general deadline to file an appeal with the local Assessment

Appeals Board is September 15, 2023 – if the local assessor provided timely notice to the

taxpayer. *See* Cal. Rev. & Tax. Code § 1603(b)(1). However, this deadline is extended to

November 30, 2023 if the local assessor did not provide certain notice to the taxpayer. *See* Cal.

Rev. & Tax. Code § 1603(b)(3).

20.     After diligent review, Santa Clara did not locate any information with regard to

the commencement of any appeal by the Debtors with the local Assessment Appeals Board. Thus,

this Court lacks jurisdiction over the Debtors' Motion pursuant to Section 505(a)(2)(C) of the

Bankruptcy Code. Even if this Court did possess the jurisdiction to determine the 2023 taxes in

issue (which it does not), this Court should exercise its discretion to permissively abstain from

such a determination under 28 U.S.C. § 1334(c)(1).

### III.    THE COURT SHOULD EXERCISE ITS DISCRETION TO PERMISSIVELY ABSTAIN FROM HEARING THE MOTION

21.     Bankruptcy courts possess the requisite authority to abstain from hearing a motion

on a discretionary basis "in the interest of justice, or in the interest of comity with State courts or

respect for State law". 28 U.S.C. § 1334(c)(1) provides that:

> Except with respect to a case under chapter 15 of title 11, nothing in
> this section prevents a district court in the interest of justice, or in
> the interest of comity with State courts or respect for State law, from
> abstaining from hearing a particular proceeding arising under title
> 11 or arising in or related to a case under title 11.

22.     Section 505 governing determination of tax liability allows but does not require

bankruptcy courts to determine debtor's tax liabilities. *See* 11 U.S.C. § 505(a)(1); *see also, In re*

*Schwartz, 20*5 B.R. 394, 397 (Bankr. N.D. Ill. 1997)("Use of the directory 'may' not 'must' in §

505(a)(1) is indicative of the discretionary nature of the bankruptcy court's exercise of such

jurisdictional grant…Thus, the bankruptcy court may abstain from exercising its jurisdiction to

resolve disputed tax liabilities.") (citations omitted). Courts that have abstained in Section 505

matters have generally done so if a determination of the motion would require "a fact intensive

7491532

review of the value of the property and the amount of the taxes in question," or if its decision

"could affect the uniformity of assessment of . . . taxes imposed on other taxpayers". *In re Ryckman*

*Creek Resources, LLC,* 570 B.R. 483, 486 (Bankr. D. Del. 2017) (citations omitted).

23.     In the Third Circuit, bankruptcy courts generally analyze the following six (6)

factors to determine whether to exercise their authority to hear a tax issue under Bankruptcy Code

Section 505(a)(1): (1) complexity of the tax issue; (2) need to administer the bankruptcy case in

an orderly and efficient manner; (3) whether adjudicating the issue will create a substantial burden

on the court's docket; (4) whether significant time is needed to reach a decision; (5) whether the

debtor's asset and liability structure warrants a ruling; and (6) the potential prejudice to the debtor,

taxing authorities, and creditors. *See Ryckman Creek Resources,* 570 B.R. at 487.

24.     As demonstrated below, application of the above-referenced factors weigh heavily

in favor of having the Court permissively abstain from hearing this Motion.

**Factor 1: Complexity of Tax Issue**

25.     The complexity of the tax issue is best broken down in two (2) parts: (A)

California's property taxation law is complex and requires uniformity of assessment; and (B)

Debtors' failure to address necessary complexities of the tax issues.

A.  <u>California's Property Taxation Law Is Complex And Requires Uniformity Of
Assessment</u>

*i.* <u>California State Board of Equalization</u>

26.     The California Constitution provides that all property is taxable and requires

uniformity of property taxation unless otherwise provided in the Constitution or the laws of the

United States.  *See* Cal. Const., Article XIII, § 1.  To that end, the California Legislature formed

and authorized the State Board of Equalization (the "<u>Board</u>" or "<u>BOE</u>") to oversee the operation

and functioning of local boards of equalization. *See The Prudential Ins. Co. of America v. City &*

*County of San Francisco* (1987), 191 Cal.App.3d 1142, 1151.  Accordingly, "[t]he State Board of Equalization shall . . . [p]rescribe rules and regulations to govern local boards of equalization when equalizing, and assessors when assessing . . ." *Prudential,* 191 Cal.App.3d 1142 at 1151 (*citing* Cal. Gov't Code § 15606, subd. (c)).  "Toward this end, the Board is empowered to issue 'rules, regulations, instructions, and forms . . ." *Id.* (*citing* Gov. Code, § 15606, subd. (f)).  "The Board, pursuant to this authorization, has enacted administrative rules governing both local boards of equalization and tax assessors" and such rules have the force and effect of law.  *Id.* at 1151.

27.    The BOE acts in an oversight capacity to ensure compliance by county assessors with property tax laws, regulations, and assessment issues which are binding statewide.  To perform the oversight functions, the BOE's property tax division conducts periodic compliance audits of the fifty-eight (58) California county assessors' programs and develops property tax assessment policies and informational materials to guide county assessors and local assessment appeals boards.  The BOE's functions and property tax rules and regulations can be publicly found on the internet.[7]  In furtherance of promoting and establishing uniformity across the State of California, the BOE established the "Assessors' Handbook" with the objective of giving county assessors, their staff, and other interested parties an understanding of the principles of property assessment and real and personal property appraisal for property tax purposes. [8]  Additionally, the Assessors' Handbook presents the BOE's interpretation of rules, laws, and court decisions concerning property assessment and has been relied upon by the courts in interpreting valuation questions posed by the state Constitution and statutes.  *See Cox Cable San Diego, Inc. v. County of San Diego* (1986) 185 Cal.App.3d 368, 377.

28.    As set forth above, the California Constitution requires "all property subject to

---

[7]  *See* https://www.boe.ca.gov/proptaxes/proptax.htm.
[8]  The Assessors' Handbook can be found at https://www.boe.ca.gov/proptaxes/ahcont.htm.

7491532

taxation to be assessed at the same percentage of value; i.e., there must be uniformity of assessment." *Shafer v. State Bd. Of Equalization* (1985) 174 Cal.App.3d 423, 429; *see also,* Cal. Const., article XIII, § 1. "Adjustment of assessment levels of various categories of property to a uniform percentage of full value is called 'equalization.'" *Wunderlich v. County of Santa Cruz,* (2009) 178 Cal.App.4th 680, 688 (citation omitted). The BOE is charged with prescribing "rules and regulations to govern local boards of equalization when equalizing, and assessors when assessing" property. *Wunderlich,* 178 Cal.App.4th 680 at 689 (*citing,* Cal. Gov. Code, § 15606, subd. (c)). The Board is also required to "issue instructions to assessors designed to promote uniformity throughout the state and its local taxing jurisdictions in the assessment of property for the purposes of taxation." *Id.* (*citing,* Cal. Gov. Code, §§ 15606, subd. (e) and 15608).

### ii.  The Role of the Counties' Assessors

29.     The assessor (the "<u>Assessor</u>") is a constitutionally elected official whose main duty is to establish assessed property values under California law. In general, an assessor's role consists of locating all taxable property in the county, identifying ownership, establishing a taxable value for all property subject to taxation, completing an assessment roll showing the assessed values of all property and applying all legal exemptions. *See* Cal. Const., art. XI, § 1, subd. (b); *see also* Cal. Rev. & Tax. Code §§ 405, 601; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 17 ("[i]t is the duty of the county assessor to prepare the local assessment roll (§ 601 *et seq.*) and to "assess all property subject to general property taxation at its full value."). Unlike real property, business personal property taxes are based on information provided annually by business owners to the county Assessor. *See* Cal. Rev. & Tax. Code § 401. Such business personal property is reappraised annually on January 1st because businesses may have acquired new or disposed of existing personal property during the course of the year. *See*

7491532

Cal. Rev. & Tax. Code § 2192; *see also, Seegmiller v. County of Nev.* (1997) 53 Cal.App.4th 1397, 1400 ("[u]nder California law, the taxing agency's right to the taxes becomes fixed as of the lien date of the fiscal year to which they relate").

30.      Each year, businesses with business personal property having an aggregate cost $100,000.00 or more must file a business property statement ("<u>Business Property Statement</u>"), under penalty of perjury.  *See* Cal. Rev. & Tax. Code § 441(a). The Business Property Statement provides a basis for determining property assessments for fixtures and equipment and is filed with the relevant Assessor on an annual basis between the January 1 Lien Date and by 5:00 p.m. on April 1st.  *Id.*  The Business Property Statement shall show all taxable property owned, claimed, possessed, controlled, or managed by the person filing it and shall disclose such information as of 12:01 on the January 1 Lien Date.  *Id.* at §§ 442 and 448.  If the business owner fails to file the Business Property Statement with the relevant Assessor on a timely basis, the Assessor will be compelled to estimate the value of the property from other information in the Assessor's possession and add a penalty of ten percent (10%) of the assessed value.  *See* Cal. Rev. & Tax. Code § 463.

31.      In addition, there are strict standards governing a local appraiser employed by the Assessor.  An appraiser cannot perform its duties unless he or she obtains a valid appraiser's or advanced appraiser's certificate issued by the Board and such appraiser maintains certain educational and/or experience requirements and passes a written examination.  *See* Cal. Rev. & Tax. Code §§ 670-671.

### iii.    <u>The Assessment Appeals Board (the "AAB")</u>

32.      The California Constitution provides that "[t]he Legislature shall pass all laws necessary to carry out the provisions of this article."  Cal. Const., article XIII, § 33.  "Pursuant to

this constitutional command, the California Legislature has statutorily established a three-step process for handling challenges to property tax assessments and refund requests." *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1307.  "The first step is the filing of an application under Revenue and Taxation Code section 1603, subdivision (a)", for a reduction on the local roll. *Id*.  "The second step, which occurs after payment of the tax, is the filing of an administrative refund claim under section 5097, subdivision (a)".  *Id*.  "The third and final step in the process is the filing of an action in superior court pursuant to section 5140".  *Id*.

33.     Moreover, under the California Constitution, assessment appeals boards or county boards of equalization are established in each county.  *See* Cal. Const., art. XIII, § 16. Specifically, Article XIII, Section 16 of the California Constitution authorizes the AAB to operate as a constitutional quasi-judicial hearing body for property tax disagreements between taxpayers and assessor offices.  *See Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1307.  These tribunals are mandated to hear and determine valuation disputes between assessors and taxpayers and members of AABs must meet competency requirements in real estate, accounting, appraisal or taxation.  *See* Cal. Rev. & Tax. Code § 1624.

34.     Under California law, AABs are authorized to make factual determinations, interpret property tax law and regulations, and apply the law and regulations to the appeals before them. Thus, AABs essentially function as the "trial court" for property tax disputes in California with the goal of ensuring that all real and personal property within the county are assessed fairly and accurately in accordance with California law.  There are also strict guidelines imposed in an effort to preserve the AABs independence and integrity because no person can be eligible to serve on the AAB if such person has been employed by the Assessor's office within three (3) years prior to his or her appointment.  *See* Cal. Rev. & Tax. Code § 1624.1.

35.     In summary, the AAB exercises quasi-judicial powers and its mission is to render

fair and impartial decisions regarding various tax disputes. The AAB possesses no general

authority to value property located within the California county, only to determine the appropriate

value when an appeal is filed by taxpayers.  In reviewing a property tax assessment, the court must

presume the Assessor properly performed his or her duty and that the assessment was both

regularly and correctly made.  *See Chevron USA, Inc. v. County of Kern* (2014)*, 230 Cal. App. 4th*

1315, 1331 ("[t]he burden is on the taxpayer to prove the property was improperly assessed")

(citation omitted).  When the taxpayer claims a valid valuation method was applied improperly,

"the court may overturn the assessment appeals board's decision only if there is no substantial

evidence in the administrative record to support it."  *Id.*

36.     Importantly, the AAB is not to be confused with the County Assessor or even the

tax collector.  *See* Cal. Const., art. XIII, § 16.  Again, the Assessor's role is to establish accurate

and fairly assessed property values throughout the County.  *See* Cal. Const., art. XIII, § 1.  On the

other hand, the tax collector's duties involve the collection of property taxes.  *See* Cal. Rev. & Tax.

Code §§ 2602 and 27400, *et seq.*

37.     Furthermore, an application for reduction in the regular year value of an

assessment on the current local roll may be filed by the taxpayer during the regular filing period

for that year.  *See* Cal. Rev. & Tax. Code § 1603.  In California, with respect to the 2023 tax year,

the general deadline to file an appeal with the local Assessment Appeals Board is September 15,

2023 if the local assessor provided timely notice to the taxpayer.  *See* Cal. Rev. & Tax. Code §

1603(b)(1).  However, this deadline is extended to November 30, 2023 if the local assessor did not

provide certain notice to the taxpayer.  *See* Cal. Rev. & Tax. Code § 1603(b)(3).  Thus, with the

exception of Santa Clara, the Debtors have until November 30, 2023 to file an application with the

16

Counties for a proposed reduction in assessments related to the 2023 taxes.  Here, the Debtors have

not disclosed that they filed requisite applications for reduction of the 2023 regular assessments

with respect to the Counties and the Counties are not aware of any pending appeal(s).  Therefore,

the Debtors' request" to stay state proceedings pursuant to sections 105 and 505 of the Bankruptcy

Code" is wholly irrelevant.  *See* Motion, ¶ 4.

### iv.  State Court's Judicial Review

38.     As set forth above, the California Legislature has statutorily established a three-

step process for handling challenges to property tax assessments and refund requests:  (i) the filing

of an application under Revenue and Taxation Code section 1603; (ii) the filing of an

administrative refund claim under section 5097, subdivision (a); and (iii) the filing of an action in

the superior court pursuant to Section 5140 of the California Revenue and Taxation Code.  *See*

*Steinhart*, 47 Cal.4th at 1307.  If the California State Court invalidates a decision rendered by the

AAB, the matter must be remanded to the AAB for further hearings consistent with the State

Court's decision.  *See Heavenly Valley v. El Dorado County Board Of Equalization* (2000) 84

Cal.App.4th 1323, 1348.

### B.  Debtors' Failure To Address Necessary Complexities of the Tax Issues.

39.     The Debtors challenge the valuation methodology applied by the California

Counties in assessing the Property's Fair Market Value.  In a conclusory fashion unsubstantiated

by any relevant evidence, the Debtors contend that: (i) the California Counties failed to apply the

correct definition of Fair Market Value; (ii) the California Counties' definition of Fair Market

Value is "overstated"; (iii) the methodology employed by the California Counties' in arriving at

the Fair Market Value is "erroneous"; and (iv) the California Counties failed to consider the sale

of Property at each of the stores which resulted in an "overvaluing" of the Property.  *See* Motion,

¶¶ 6, 7, 11 and 15.

40.     The Counties submitted ample evidence in the form of supporting declarations filed by each of the Counties' experienced appraisers confirming that the Counties properly assessed the Fair Market Value associated with the Debtors' Property in accordance with the prescribed rules and regulations implemented by the BOE and as required under Section 110 of the California Revenue and Taxation Code.   For example, the Counties correctly applied the statutory definition of "fair market value" (*i.e.,* the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other) as of the January 1 Lien Date.   *See* Cal. Rev. & Tax. Code § 110.   Moreover, the evidence confirms that each of the Counties utilized the "cost approach" to value the Property described in the Motion under California law.

41.     Although the Debtors purposely downplay the intricacies and complexity of the tax and assessment issues underling the Motion, the tax issues raised in the Debtors' Motion are extremely complex.   A determination of the disputes in this case would require this Court to undertake a fact-intensive analysis concerning, among other things, the appropriate valuation method utilized in each of the Debtors' Property at the forty-nine (49) different store locations involving an undisclosed number of personal property located within seventeen (17) different counties situated throughout the State of California.   At a minimum, this Court would be called upon to address, among other disputes, the following complex tax issues associated with each of the 49 locations:

    (i)   Did each of the California Counties correctly apply the correct definition of Fair Market value under California law?

    (ii)   Was the asserted Fair Market Value asserted by each of the California Counties "overstated?"

(iii) What was the appraisal methodology utilized by each of the California Counties under California law?

(iv) Did the Debtors correctly apply one of the proper valuation methods for valuing business personal property under California law?

(v) Is the Debtor Sales Data a recognized or valid valuation methodology employed in the State of California?

(vi) What was the Debtors' revised value for each and every business personal property, including, furniture, fixtures, equipment and leasehold improvements associated with the Debtors' forty-nine store locations?

(vii) What was the Counties' asserted value for each and every business personal property, including, furniture, fixtures, equipment and leasehold improvements associated with the Debtors' forty-nine store locations?

(viii) What was the total sum of personal property taxes in question for each of Debtors' Property?

(ix) In which of the California Counties did the Debtors timely submit a Business Property Statement under penalty of perjury?

(x) What are the exact dates associated with the sales with respect to the information contained in the Debtor Sales Data?

(xi) In which of the Counties did the Debtors timely commence an appeal and for which locations?

42.     Numerous courts have abstained from hearing Section 505 requests when the tax issue is fact intensive. *See e.g., Ryckman Creek Resources,* 570 B.R. 483 at 483 (court would exercise its discretion to permissively abstain from hearing a complex, fact-intensive issue regarding propriety of taxing authority's valuation of debtors' real property for assessment purposes); *In re ANC Rental Corp. v. Dallas County (In re ANC Rental Corp.),* 316, B.R. 153, 159

(Bankr. D. Del. 2004) (bankruptcy court abstained from hearing chapter 11 debtors' section 505 motion, where claims involved fact-intensive issue regarding value of property in question, which impacted on uniformity of assessment of property taxes on other taxpayers in Texas, and where plan had already been confirmed, such that debtors' claims did not affect court's need to administer bankruptcy case); *In re Beisel,* 195 B.R. 378 at 380 (court abstained from hearing section 505 motion after finding that it was fact-intensive and inconsistent interpretations of the tax laws would be detrimental to both the taxing authority and future taxpayers); *cf. In re Indianapolis Downs, LLC*, 462 B.R. 104, 114-15 (Bankr. D. Del. 2011) (in determining tax under Section 505, court notes tax issue raised "not complex", "not involve valuation at all", only "using traditional tools of statutory interpretation" and "uniformity of assessment is not a significant issue as there are only two Racinos in Indiana and they are both parties to this proceeding.").

43.    Given that California law governing business personal property taxation is complex, the BOE, acting in an oversight capacity, has ensured mandatory compliance by all California county assessors which become binding statewide.  Contrary to the Debtors' assertion that an "expeditious judicial determination" can be rendered by this Court, Fair Market Value is only a starting point in the complex procedure of equalization that has been created by the California State Board of Equalization.  Here, the parties' tax dispute underlying the Motion would undoubtedly involve the Court's fact-intensive analysis and is extremely complex.  Therefore, this factor weighs strongly in favor of abstention.

### Factor 2: The Need To Administer The Bankruptcy Case In an Orderly and Efficient Manner

44.    The tax issues raised in the Motion will not affect this Court's need to administer the Debtors' bankruptcy case in an orderly and efficient manner because the proposed determination of the Debtors' Motion is not a condition to confirmation of the plan given that the

Debtors' Second Amended Plan was confirmed on September 14, 2023.  *See* Docket No. 2172

Stated otherwise, the relief sought in the Debtors' Motion does not impact the Debtors' Second

Amended Plan but is merely the Debtors' desire to obtain certainty on a tax obligation.  Thus, there

is no need to expeditiously resolve this instant tax dispute to ensure an efficient and orderly

administration of the Debtors' bankruptcy cases.  Accordingly, this second factor weighs neither

in favor of nor against abstention.  *See Ryckman Creek Resources,* 570 B.R. at 488 (court

determined that this factor was neither in favor of nor against abstention because the debtor's tax

liability motion was not a condition to confirmation of the plan); *ANC Rental*, 316 B.R. at 159

(noting tax claims proceeding "do not affect the Court's need to administer the bankruptcy case in

an orderly and efficient manner because a plan has already been confirmed."); *cf. In re Indianapolis

Downs, LLC*, 462 B.R. at 115 (noting a ruling on tax motion "will materially aid the [d]ebtor in

structuring its plan of reorganization, which in turn will likely impact the entire creditor body").

### Factor 3: Whether Adjudicating the Issue Will Create a Substantial Burden on the Court's Docket

45.     The Counties have been advised that the Bankruptcy Court for the District of New

Jersey possesses a rather heavy bankruptcy case load, including the recently filed *Rite Aid* Chapter

11 proceedings.  Thus, this factor undoubtedly weighs in favor of abstention.

### Factor 4: Whether Significant Time is Needed to Reach a Decision

46.     The Debtors complain that "the Debtors may be forced to proceed with contested

matters in the local taxing jurisdictions at significant expense to the estates and which could take

a substantial time to conclude".  The Debtors further opine that "[a]n expeditious judicial

determination by this Court regarding the Fair Market Value of the Property would considerably

aid the speed and effort required to administer the Debtors' Chapter 11 Cases to the benefit of the

estates and their creditors".  *See* Motion ¶ 26.

7491532

47.     Again, the Debtors clearly downplay the complexity and the amount of time required for the Debtors and each of the California Counties to submit their evidence by suggesting that the Court can streamline the essential elements of each party's appraisal methodology, reasoning, and conclusions.  However, realistically, a significant amount of time will be required to present the evidence needed to assess the value of each of the Debtors' Property.  For instance, this Court will be required to hear evidence describing the condition of the Debtors' personal property and assets in addition to the proper methodology for valuing each of those properties. Unlike other Section 505 cases, the issue to be determined here is not simply whether the tax is due, but whether each of the California Counties used the proper method for determining the total amount of taxes due and owing by the Debtors.  This Court will surely be required to hold evidentiary hearings for each of the seventeen (17) California Counties (in addition to the nine (9) additional Counties affected by the Second Motion), and all parties will be required to present expert testimony to ascertain the Property's Fair Market Value.   Therefore, this factor weighs heavily in favor of abstention.  *See In re Majestic Star Casino, LLC*, 457 B.R. 327 (Bankr. D. Del. 2011) (court conducted a 3-day evidentiary hearing with 7 witnesses and numerous exhibits, when only 2 riverboat casinos were being valued for *ad valorem* purposes).

**Factor 5: Whether the Debtor's Asset and Liability Structure Warrants a Ruling**

48.     This matter involves approximately seventy (75) jointly-affiliated Debtors with complex asset and liability structures.  Such complexity weighs in favor of abstention.  *See Ryckman Creek Resources,* 570 B.R. at 488; *ANC Rental,* 316 B.R. at 159.

**Factor 6: The Potential Prejudice to the Debtors, Taxing Authorities and Creditors**

49.     There is a proper forum established under California law to address this tax dispute (namely, the AAB), which remains available to the Debtors.  *See* Cal. Const., art. XIII, § 16.  There

is an efficient and uniform process in place to facilitate review, and appellate consideration where appropriate. The Debtors have conducted (and continue to conduct), extensive business throughout the State of California while the California Counties conduct no business in New Jersey. Thus, the Debtors should be prohibited from complaining that California is an inconvenient forum when Debtors have voluntarily chosen to do business there for many years.

50.    There is zero actual evidence to suggest that this Court would provide a more optimal outcome for the Debtors and/or that the Debtors will encounter prejudicial impact by allowing the local taxing authorities to handle these matters. On the other hand, significant prejudice will be imputed to the Counties if this Court were to decide to exercise jurisdiction over the underlying the tax disputes as the entire local entourage involved in the assessment and the taxes in issue would need to appear before this Court. The proposed costs associated with travel by California Counties' appraisers and their staff to New Jersey would be costly, time-consuming and highly inconvenient and they would be disadvantaged by having to present their expertise before the New Jersey Bankruptcy Court.

51.    Accordingly, this final factor also weighs in favor of abstention. *See e.g., Ryckman Creek Resources,* 570 B.R. at 489 (court held there was no potential prejudicial impact on the debtors by allowing the local tax authority to handle this matter and thus exercised its discretion and abstained from determining the disputed tax liability under section 505(a)(1)); *In re ANC,* 316 B.R. at 159 (court abstained from hearing section 505 motion after determining that tax authorities would be "significantly prejudiced" by having the taxes at issue determined by a Delaware court); *Building Tech. Corp. v. City of Hannibal (In re Building Tech. Corp.),* 167 B.R. 853, 858 (Bankr. S.D. Ohio 1994) (court abstained from review of valuation by city and county taxing authorities after concluding there would be serious prejudice to taxing authorities in

23

establishing valuation of Missouri real property assets in Ohio bankruptcy court).

52.    As set forth above, in the context of Section 505, abstention is often granted where uniformity of assessment is an issue.    *See e.g., In re ANC Rental Corp.,* 316 B.R. at 159; *In re Metromedia Fiber Network, Inc. v. Various State and Local Taxing Auth. (In re Metromedia Fiber Network, Inc.),* 299 B.R. 251, 281 (Bankr. S.N.Y. 2003); *In re AWB Assocs., G.P.,* 144 B.R. 270, 276 (Bankr. E.D. Pa. 1992) ("[a]bstention from deciding a tax adjudication question under Section 505 is only appropriate under a showing that uniformity of assessment is of significant importance") (citations omitted).   The California "Constitution requires all property subject to taxation to be assessed at the same percentage of . . . value; i.e., there must be uniformity of assessment." *Shafer v. State Bd. of Equalization* (1985)*,* 174 Cal.App.3d 423, 429.   Here, the tax dispute involves the value of the Debtors' Property upon which the tax is based and the taxable Property's relation to California. Thus, resolution of this dispute will affect the uniformity of assessment of property taxes imposed on other taxpayers who possess personal property in California.   As the *ANC Rental* Court expressly recognized, this is a compelling reason to abstain. *See ANC Rental Corp.,* 316 B.R. at 159.

53.    Although bankruptcy courts may be routinely called upon to determine the value of a variety of types of property in many different locations, determining the appropriate method for assessing the debtors' properties, as well as reassessing the value of that property, are issues best decided under the local law applicable here by the local adjudicative bodies.   *See Ryckman Creek Resources,* 570 B.R. at 487-488.

54.    *In Metromedia Fiber Network*, a case with strikingly similar facts, the chapter 11 debtors initiated adversary proceedings against various state and local taxing entities and individual officers representing those entities, alleging that defendants appraised, assessed, and

24

sought to collect ad valorem taxes based on valuations of debtors' taxable property that grossly

exceeded property's fair market value and seeking determination of property's fair market value.

While numerous states were involved in the debtors' Section 505 proceedings, the court gave

deference to property taxation at the state and local level by abstaining and stating:

> [A]bstention is appropriate 'where uniformity of assessment is of
> significant importance' to the [] respective taxing schemes…Local
> property taxation is inherently and quintessentially local in the sense
> that a fair allocation of the cost of government amongst the universe
> of local taxpayers is and must be a product of local political,
> legislative, executive and administrative decision making. The
> fundamental objective of taxation at the state and local level must
> be to apportion the tax burden equitably in accordance with the local
> political decision-making process. Where some form or definition
> of market value is the touchstone for assessment, fair allocation
> among the tax base may depend more on the application to all
> affected taxpayers of uniform standards for assessing value than on
> an economist's ideal calculation of fair market value. . . .

299 B.R. at 282 (internal citations omitted).

55.    Abstention in this matter will not leave the Debtors without an alternative remedy.

Upon consideration of all of the aforementioned factors, the Counties respectfully request that this

Court exercise its discretion under 28 U.S.C. § 1334(c)(1) and permissively abstain from

determining the parties' disputed tax liability.

## IV.    THE COURT MUST DENY THE MOTION BECAUSE DEBTORS HAVE FAILED TO CARRY THEIR BURDEN

### A.    California Law Presumes That Assessors Have Properly Performed Their Duties

56.    Under California law, the law presumes that an assessor has performed his or her

duty and has assessed all properties fairly and on an equal basis.  *See* Cal. Code. Regs., tit. 18, §

321.  The taxpayer has the burden of proving otherwise.  *See e.g., Chevron USA, Inc.,*  230

Cal.App.4th 1315 at 1331 ("[t]he burden is on the taxpayer to prove the property was improperly

assessed") (citation omitted); *Best v. Los Angeles County* (1964) 228 Cal.App.2d 655, 657 ("[i]n

25

the proceeding before the board of equalization the burden was upon the taxpayers to show that the assessments were improper (citation omitted). 'It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them, and, consequently, that their assessments are both regularly and correctly made'" (citation omitted).

57.     Similarly, bankruptcy courts give full and faith credit to the law of the state upon which the tax is based. *See e.g., In re AWB Assocs., G.P.,* 144 B.R. 270 at 278 ("[t]he valuation of property for purposes of determining property taxes must be consistent with state law principles, as the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law"); *Mocco and Village Townhouse Estates, Inc. v. City of Jersey City (In re Mocco),* 222 B.R. 440, 454 (Bankr. D. N.J. 1998) ("[i]n exercising its statutory authority to determine the amount of legality of any tax, bankruptcy court must give full faith and credit to substantive law of state to answer ultimate question of whether taxes are legally due and owing" (citation omitted); *Arkansas Corp. Commission v. Thompson,* 313 U.S. 132, 142 (1941) ("manifestly, whether or not taxes are 'legally due and owing' to a state depends upon the valid laws of the state"). Therefore, this Court should give weight to the appraisal methods utilized by each of the California Counties' Assessors and local appraisers in the context of this proceeding.

58.     For example, in *AWB Associates,* the bankruptcy court specifically held that property located in New Jersey was subject to the substantive law of New Jersey and that property assessments made by the property tax authority are "presumed" correct. *See In re AWB Assoc.,* 144 B.R. 270 at 278-279.  Moreover, the Supreme Court articulated that "there is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies". *Arkansas Corp.,*

313 U.S. 132 at 145.

59.    Also, in *Metromedia Fiber Network*, a very similar factual case, in deciding to

abstain the court noted:

> The problem with the debtor's 'streamlined,' unified approach to
> determining the 'fair market value' of all their Taxable Property in
> multiple taxing jurisdictions using a single methodology or
> combination of methodologies is that the resulting uniform
> valuation may produce results which are highly anomalous and
> discriminatory vis-à-vis other similarly situated taxpayers in the
> various jurisdictions.   Moreover, all of the [taxing authorities]
> employ their own individualized schemes and methodologies for
> allocating the burden of taxation amongst all the taxpayers in their
> respective jurisdictions…Any uniform valuation of the debtors'
> Taxable Property determined by this Court is bound to be at variance
> with state or local methodologies mandated by local law or practice,
> and with assessment valuation by the [taxing authorities] of other
> taxpayer properties within their respective jurisdictions, producing
> disparate and discriminatory results.
>
> Uniformity in the laws governing bankruptcies is constitutionally
> mandated in Article I, Section 8, Clause 4; but uniformity in taxation
> is not.   Nothing in the Constitution or the Bankruptcy Code entitles
> a debtor to uniform property tax determinations in differing tax
> jurisdictions, and nothing in federal law entitles the federal courts to
> impose uniform taxation schemes or methodologies on state and
> local governments.

299 B.R. at 283.

60.    Accordingly, this Court is required to "presume" that the Counties properly

applied California law in assessing the value of the Debtors' Property.

B.    The Debtors' Failed To Properly Assess The Property As Of The January 1
Lien Date

61.    In California, the Assessor assesses all taxable property in his county on the lien

date.  *See* Cal. Rev. & Tax. Code § 405(a) ("[a]nnually, the assessor shall assess all the taxable

property in his county, except state-assessed property, to the persons owning, claiming, possessing,

or controlling it on the lien date");  *see also, Seegmiller,* 53 Cal.App.4th at 1400 (assessor must

27

assess all taxable property in the county to the person who owns, possesses, claims, or controls it on the lien date).

62.      Similarly, under California law, "all tax liens attach annually as of 12:01 a.m. on the first day of January preceding the fiscal year for which the taxes are levied". *See* Cal. Rev. & Tax. Code § 2192); *see also, California Computer Products, Inc. v. County of Orange* (1980) 107 Cal.App.3d 731, 737 ("[i]t is an equally well settled principle of the law of taxation that the tax must be determined in accordance with the law in effect when the right to the tax vested").

63.      The Debtors correctly disclose that taxable property is required to be appraised under California law at fair market value as of the January 1 Lien Date of the applicable tax year. *See* Motion, ¶ 13.  The Debtors further disclose that as of January 1, 2023, the Debtors had 1,020 stores but after the "Debtors have gone undergone a store closing process for a large number of stores, selling all assets and inventory in place", the store count in the United States was reduced to just 360 as of the Petition Date. *Id.* at *Id.* at ¶ 17.  However, the Debtors' reliance on undisclosed "Debtor Sales Data" obtained sometime after January 1, 2023, in conjunction with Debtors' store closings is problematic. *Id.* at ¶ 16.  It is unclear when those sales actually occurred.  The Motion is completely devoid of critical information, such as, the timing of the sale, the type of sale and the manner in which it was conducted.

64.      If, in this case, the Debtors relied on sales data between the January 1 Lien Date and the Petition Date of April 23, 2023 (or thereafter), any sales data conducted more than ninety (90) days after the January 1 Lien Date cannot be considered.  *See* Cal. Rev. & Tax. Code § 402.5; *see also, State of California Board of Equalization Property Tax Rules*, Rule Number 324, subd. (d) (the assessor "shall not consider a sale if it occurred more than 90 days after the date for which value is being estimated . . .").  Consequently, it is simply improper to rely on sales data more than

7491532

ninety (90) days after January 1, 2023.  Moreover, under California Revenue and Taxation Code

Section 402.5, comparable sales shall be "sufficiently alike in respect to character, size, situation,

usability, zoning, or other legal restriction."  If the Debtors performed the comparative sales

analysis, the Debtor's Motion fails to identify and disclose the differences between the Debtors'

Property and comparable properties that could affect their respective market values.

65.    Additionally, the Debtors profess that the Debtor Sales Data was derived not only

from sales from stores which are the subject of this Motion but "other stores throughout Debtors'

portfolio".  *See* Motion, ¶ 17.  This means that the Debtors relied on sales at stores outside of

California.  However, sales values outside of California are not a reliable measure of sales prices

in California, which is one of the most—if not the most—expensive markets in the nation.  Thus,

the Debtor Sales Data is simply not comparable or credible.

66.    Moreover, case law makes clear that a sale or disposal of property *after* the lien

date does not affect the property owner's tax liability for the ensuing tax year.  *See e.g., Fujitsu*

*Microelectronics v. Assessment Appeals Bd. of the County of San Diego* (1997) 55 Cal.App.4[th]

1120, 1125 (forced sale of property at a sacrificial price after lien date has no bearing on property's

value on lien date); *In re ATA Airlines, Inc.,* No. 08-03675-BHL-11, 2010 WL 3955574, at *5

(Bankr. S.D. Ind. Oct. 4, 2010).  Accordingly, the Debtors' Motion should be denied for Debtors'

failure to assess the value of the Property on the January 1 Lien Date.

C.  The Debtors Did Not Apply "Fair Market Value" Under California Law

67.    The Debtors correctly identify the California statute defining "fair market value",

which is defined as:

> Except as is otherwise provided in Section 110.1, "full cash value"
> or "fair market value" means the amount of cash or its equivalent
> that property would bring if exposed for sale in the open market
> ***under conditions in which neither buyer nor seller could take***

> ***advantage of the exigencies of the other***, and both the buyer and the seller have knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used, and of the enforceable restrictions upon those uses and purposes.

*See* Cal. Rev. & Tax. Code § 110 (emphasis added).

68.     Notably missing from the Debtors' valuation analysis is the fact that Debtors completely ignore one of the most significant elements set forth in the California statute, namely, that fair market value constitutes cash (or its equivalent) if property was sold "***under conditions in which neither buyer nor seller could take advantage of the exigencies of the other***".  *Id.* (emphasis added).  Here, the Debtors rely on sales data from its "going out of business" sale which appears to have been commenced prior to its slide into bankruptcy.  Thus, the Debtors sold their assets in a distressed sales environment.  Although it is unclear, to the extent the Debtors also relied on sales data derived from its bankruptcy sales, "[s]ales of assets from a bankruptcy estate should not necessarily be considered valid indicators of market value under the definition of Revenue and Taxation Code section 110.  The buyer of property from a bankrupt's estate has the ability to take advantage of the exigencies of the seller.  Frequently, the trustee's desire to liquidate the assets in an abbreviated period of time further impinges on the concept of 'open market transaction.'"  *See* Assessors' Handbook, Section 504 (Assessment of Personal Property and Fixtures), p. 130.

69.     In the circumstances presented here, the Debtors' evidence completely ignores the important "exigency" element set forth in California's definition of "fair market value", which is a fundamental flaw in Debtor's valuation analysis.  By erroneously relying on the Debtors' distressed sales, the Debtors ignore other more reliable comparable sales where the buyer is not able to take advantage of the exigencies of the seller.

70.     Moreover, "[v]alue, for property tax purposes, is *market value"*.  *See California*

*State Board of Equalization,* Assessment of Personal Property and Fixtures (October 2002),

Chapter 1, p. 19. "This is the price (the amount of money) that a property will bring when it is

sold in an open market. It is a dollar amount determined by the utility of the property, as manifested

through the purchasing power of those who are interested in acquiring it, the relative scarcity of

the commodity, and the difficulty involved in overcoming this scarcity. In other words, value

(market value) is determined by supply and demand." *Id.*

71.     In a benchmark decision, the California Supreme Court defined the term market

value as used in the context of property tax assessment:

> It provides, in other words, for an assessment at the price that
> property would bring to its owner if it were offered for sale on an
> open market under conditions in which neither buyer nor seller
> could take advantage of the exigencies of the other. It is a measure
> of desirability translated into money amounts . . . and might be called
> the market value of property for use in its present condition.

*See De Luz Homes Inc. v. County of San Diego* (1955) 45 Cal.2d 546, 561-562.

72.     Additionally, "[i]In order to use the sale of the assessed property or like property

to determine the property's value for tax assessment purposes, the sale must be a normal, fair,

arm's-length transaction between parties who are willing, but not forced to sell or buy". *In re*

*Cable & Wireless USA, Inc.,* 331 B.R. 568, 578 (Bankr. D. Del. 2005). As set forth above, in the

financially distressed sale environment, such sales do not meet the willing seller test because there

is an element of compulsion in the sales transaction, even if it is an auction sale. As the court in

*Cable Wireless* recognized, the terms "fair market value" means "neither panic value, auction

value, speculative value, nor a value fixed by depressed or inflated prices. In fact, a market may

be established only where there are willing sellers and buyers in substantial numbers". 331 B.R.

568 at 579 (citation omitted).

73.     In a strikingly similar case entitled *In re Electronic Theatre Restaurants, Inc.,* 85

31

7491532

B.R. 45 (Bankr. N.D. Ohio 1988), the parties were in dispute as to the proper appraisal method to be utilized in establishing a value for the subject real properties.  The method utilized by the debtor to determine fair market value was the value established by a liquidation valuation of the property.  *See Electronic Theatre Restaurants,* 85 B.R. 45 at 48.  Relying on Texas law, the City of Houston argued that fair market value was to be derived at public sale, and not through a forced or auction sale.  As such, the Texas municipality argued that the appraisal method used by the debtor was in derogation of Texas property law which read in pertinent part:

> Value. The term 'true and full value,' wherever used shall be held to mean fair market value, in cash, at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at public sale, and not at forced or auction sale ... Texas Property Tax Code, Art. 7149, § 20)

*Id.*

74.      In light of the above-referenced definition accorded to fair market value under Texas law, the bankruptcy court in *Electronic Theatre* held that the assessment valuation utilized by the City of Houston would be accepted under Section 505(a).  *Id.*

75.      In summary, the sale of assets from a distressed or liquidation environment are not necessarily considered valid indicators of market value under California law's definition of "fair market value" because the buyer has the ability to take advantage of the exigencies of the seller while the Debtors are forced to sell their inventory at artificially low prices.  Therefore, the Motion should be denied for Debtors' failure to apply the Fair Market Value as prescribed under California law.

### D.  The Debtors Reliance On Its Own "Debtor Sales Data" Is Not A Recognized Method of Valuation Under California Law

76.      The Debtors' evidence and the information gleaned from the Lammert Declaration is inadequate in many respects.  First, the Debtors' reliance on its own "Debtor Sales Data" to

determine fair market value without comparing to outside data is not a recognized method of valuation in any appraisal standards. Second, the Debtors do not disclose an adequate explanation for the validity of the conclusions set forth in the Lammert Declaration.

77.    In California, there are three primary valuations methods used to value properties: the comparative sales approach, the income approach, and the cost approach. *See* Assessors' Handbook, Section 504 (Assessment of Personal Property and Fixtures), p. 50. As set forth in each of the Counties' supporting declarations filed in support of this Objection, each of the Assessors' experts correctly utilized the "cost approach" to value the Property described in the Motion under California law.

78.    When valuing business property, as is the case in the present matter, the cost approach is the most reliable. As set forth in the Assessors' Handbook published by the BOE, certain guidelines for performing assessment valuations are disclosed. *See* Assessors' Handbook, Section 504 (Assessment of Personal Property and Fixtures). With respect to business personal property valuations, the BOE instructs all persons valuing California business properties that the cost approach" is the method of valuation used most frequently to value personal property and business fixtures for assessment purposes because it lends itself to mass appraisal and is employed based on information provided on yearly property statements." *Id.* at p. 50. This is entirely consistent with the instructions set forth in California Code of Regulations, title 18, section 6(a). In this case, the Assessors correctly utilized the cost approach to value the Property in issue.

79.    Moreover, in utilizing the cost approach to determine values as of January 1, 2023, the Assessors also relied on cost figures gleaned from the Debtors' Business Property Statement filed with the Assessors under penalty of perjury. The Assessors had—and still have— no reason to believe that those cost figures were falsely issued and the Debtors do not challenge

33

such information.

80.    Additionally, in performing a cost approach to valuation, an appraiser is required to break down the values between personal property, fixtures, and structures.  *See* Cal. Const., art. XIII, section 13; *see also,* Cal. Rev. & Tax. Code §§ 602 and 607 and Cal. Code Reg., title 18, § 461.  Again, the Counties' evidence reveals that each of the appraisers did that for purposes of valuing the Property as of January 1, 2023.  On the other hand, the Debtors' evidence is completely devoid of any information indicating that Debtors segregated those assets and valued them separately in accordance with California law.

81.    In conclusion, the Court should find that the Debtor Sales Data is not a recognized method of valuation under California law and that the Counties' use of the cost approach was and continues to be the appropriate valuation method in light of the Motion.

## RESERVATION OF RIGHTS

82.    Nothing in this Objection shall constitute a waiver of the Counties' proof of claim(s), whether filed or unfiled.  Without limiting the generality of the foregoing, the Counties expressly reserve their right to amend, modify or supplement this Objection, and to file further pleadings and/or joinder(s) in opposition to the Motion as expressly permitted herein and as may be appropriate in the course and scope of this proceeding.

## CONCLUSION

WHEREFORE**,** for the reasons set forth herein, the Counties respectfully request:

(i)    That the Court deny the Motion due to defective service;

(ii)   That, as to Santa Clara's interests, this Court lacks jurisdiction over the Debtors' Motion pursuant to Section 505(a)(2)(C) of the Bankruptcy Code;

(iii)  If the Court looks beyond the defective service of the Motion and the exception to

Section 505(a) of the Bankruptcy Code with respect to Santa Clara's interests, that

the Court exercise its discretion to permissively abstain from hearing the Motion

under 28 U.S.C. § 1334(c)(1);

(iv)    If the Court does not abstain, that the Court deny the entire Motion as to **_all_**

California Counties because the Debtors did not meet their burden; and

(v)    Grant such other and further relief it deems appropriate, including, if the Court is

**_not_** inclined to deny or abstain from hearing the Motion, the Counties respectfully

request that (1) the Court authorize the exchange of discovery and/or information;

(2) the Court establish a briefing schedule and that an evidentiary hearing be set

with respect to the disputed valuation issues; and (3) the Court establish a common

procedure for all objectors and/or responders who possess common interests in law

or fact in the interest of judicial efficiency and economy.

Dated: October 17, 2023                    **PORZIO BROMBERG & NEWMAN, P.C.**

                                           _/s/ John S. Mairo_
                                           John S. Mairo
                                           100 Southgate Parkway
                                           P.O. Box 1997
                                           Morristown, New Jersey 07962-1997
                                           Telephone: (973) 889-4107
                                           Facsimile: (973) 538-5146
                                           Email: jsmairo@pbnlaw.com

                                               -and –

                                           Jacquelyn H. Choi (_pro hac vice pending_)
                                           **RIMÔN, P.C.**
                                           2029 Century Park East, Suite 400N
                                           Los Angeles, CA 90067
                                           Telephone: (310) 525-5859
                                           Facsimile: (310) 525-5859
                                           Email: jacquelyn.choi@rimonlaw.com

7491532

*Attorneys for County of Santa Clara, County of Los Angeles, County of Fresno and County of Riverside*

7491532