<table>
<tr><td>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

MANDELBAUM BARRETT PC
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Ph.:  973-736-4600
Fax: 973-736-4670
Vincent J. Roldan
vroldan@mblawfirm.com

Attorneys for Texas Taxing Authorities

</td><td>

Case No. 23-13359 (VFP)

Chapter 11

</td></tr>
<tr><td colspan="2">

In re

Bed Bath & Beyond, Inc.

                              Debtor.

</td></tr>
</table>

**TEXAS TAXING AUTHORITIES' (I) RESPONSE TO OMNIBUS OBJECTION TO CERTAIN TAX CLAIMS AND OBJECTION TO MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS; AND (II) REQUEST FOR ABSTENTION**

TO:   THE HONORABLE VINCENT F. PAPALIA,
        UNITED STATES BANKRUPTCY JUDGE,

The **Texas Taxing Authorities**,[1] by and through their counsel, hereby file this (I) Response

to Omnibus Objection to Certain Tax Claims and Objection to Motion to Determine Tax Liability

and Stay Proceedings; and (II) Request for Abstention and would respectfully show as follows:

---

[1] For purposes of this pleading, the Texas Taxing Authorities are defined as the following Texas ad valorem tax entities represented by the Linebarger Goggan Blair & Sampson, LLP law firm: Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, City of El Paso, Fort Bend County WCID #02, Fort Bend County, City of Frisco, Grayson County, Gregg County, Harris County, Hidalgo County, Jefferson County, Lewisville Independent School District, City of McAllen, McLennan County, City of Mesquite, Montgomery County, Nueces County, Parker CAD (for the collection of taxes only), Rockwall CAD (for the collection of taxes only), San Marcos CISD, Smith County, Tarrant County, Tom Green CAD (for the collection of taxes only) and Victoria County.  And individually, the "**Texas Taxing Authority**".

1

### Preliminary Statement

1.      The above-captioned debtors ("**Debtors**") are requesting an order from this Court (i) determining market values to establish the basis upon which to compute taxes for tax year 2023 as to the Texas Taxing Authorities' claims and to stay state proceedings and (ii) modify or reduce the Texas Taxing Authorities' claims based on the determination of assessed value of the Debtors' property, pursuant to sections 105, 502, and 505 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-2.

2.      The Texas Taxing Authorities will show that the county appraisal districts that have exclusive authority under Texas law to assess value of personal property are necessary parties to the relief sought by the Debtors and are not before this Court.

3.      The Texas Taxing Authorities will show that the valuation methodology relied upon by the Debtors is flawed and inconsistent with Texas law.

4.      Lastly, the Texas Taxing Authorities will show this Court that the factors articulated in *ANC Rental Corp. v. Dallas County (In re ANC Rental Corp.)* 316 B.R. 153 (Bankr.D.Del. 2004) weigh in favor of permissive abstention as set forth in 28 U.S.C. § 1334(c)(1).

### Relief Requested

5.      The Texas Taxing Authorities request this Court enter an order denying the Debtors' requested relief in the Omnibus Objection to Certain Tax Claims and Motion to Determine Tax Liability and Stay Proceedings (collectively, the "**Omnibus Objection**"). or, in the alternative, abstain from hearing the merits of the Omnibus Objection.

### Jurisdiction and Venue

6.      The United States Bankruptcy Court for the District of New Jersey has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The Texas Taxing Authorities confirm

2

their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, to the entry of a final order by the Court in connection with this Omnibus Objection.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Factual Background

7.    On April 23, 2023 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United State Bankruptcy Court for the District of New Jersey.

8.    By Order dated April 24, 2023, all of the above referenced cases were ordered to be jointly administered in Case No. 23-13359; *Bed Bath & Beyond, Inc*., in the United States Bankruptcy Court for the District of New Jersey. [Docket No. 75].

9.    The Texas Taxing Authorities are tax assessor-collectors for their taxing jurisdictions in Texas and are holders of secured ad valorem tax claims secured by statutory liens on all of the Debtors' business personal property located within the respective Texas Taxing Authority's jurisdiction.  The Texas Taxing Authorities timely filed their secured proofs of claim (the "Tax Claims") listed in Exhibit A for tax years 2022 and 2023 for taxes owed by the Debtors and secured by the Debtors' business personal property, including the Debtors' inventory (the "**Property**").

10.    At the hearing on confirmation of the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**") held on September 12, 2023, Debtors' counsel announced on the record that the Debtors were paying the 2022 taxes in the coming days.   Debtors have since paid a portion of the ad valorem taxes owed to the Texas Taxing Authorities and the parties continue to reconcile the

3

amount of prepetition statutory penalties and interest, and post-petition statutory interest that remains owed by the Debtors.  To date however, the remaining amounts have not been paid.

11.     The Plan was confirmed on September 14, 2023.  [Docket No. 2172].

12.     The Effective Date of the Plan occurred on September 29, 2023. [Docket No. 2311].

## Texas Ad Valorem Tax System

13.     Throughout the Omnibus Objection, the Debtors blur the clearly distinct statutory functions of the tax assessor-collector such as the Texas Taxing Authorities, which only calculate and collect a tax, and the appraisal districts, which only grant property exemptions and appraise property for valuation purposes.  Either the Debtors truly do not understand Texas property tax law or they are intentionally trying to conflate the functions of value appraisals and tax assessment.  This obfuscates the fact that the proper parties for any determination of the fair market value of the Debtors' property, the many different appraisal districts involved, are not before this Court.  In any event, it seems a review of the Texas appraisal and ad valorem taxation process would be helpful to all parties.

14.     The Texas Tax Code sets forth the responsibilities of the governmental entities that perform property tax appraisals, hear challenges to those appraisals, set the tax rates and collect the taxes.  Pursuant to Texas law, on January 1 of each tax year, a tax lien attaches and is automatically perfected on the property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property.  Tex. Tax Code § 32.01 *et seq*. The calculation of a property owner's ad valorem tax liability begins with an appraisal of the value of the property owner's real and personal property by the appraisal district for the county in which the subject property is located.  Tex. Tax Code § 6.01 *et seq*.  "One of the [Texas] Legislature's primary

4

purposes in enacting the Property Tax Code was to establish a system that yields fair and uniform valuations across the taxing units." *Jim Wells County vs. El Paso Production Oil and Gas Company,* 189 S.W.3d 861, 871 (Tex. App. Hous. [1st Dist.], 2006, pet. denied). "To accomplish this purpose, the Legislature abolished the appraisal authority of the taxing units, established a centralized appraisal district for every county, and charged the appraisal districts with the **exclusive responsibility** 'for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district.'" *Id* (emphasis added) (quoting Tex. Tax Code § 6.01).   Put simply, only the appraisal districts can assess the value of property in Texas, not the Texas Taxing Authorities. *See* Tex. Tax Code §1.15.

15.    Under Texas law, a person is required to render for taxation all tangible personal property used for the production of income that the person owns.  Tex. Tax Code § 22.01(a). To render property, a person is to provide a rendition statement (the "**Rendition**") that includes various pieces of information including a description of the property, the property's location and the property owner's good faith estimate of the market value of the property as of January 1 or the historical cost when new and the year of acquisition of the property.  *Id*.  The Rendition must be delivered to the appraisal district's chief appraiser after January 1 and not later than April 15. *Id.* § 22.23(a).  In this case,  Renditions were filed by or on behalf of the Debtors as more fully discussed below.

16.    As required by the Texas Tax Code, all taxable property is appraised at its market value as of January 1. *Id.* § 23.01(a).  The appraisal districts issue appraisals of real and personal property using methodologies prescribed by the Texas Tax Code, which requires the appraisal district to determine the value of property "by the application of generally accepted appraisal methods and techniques and "each property shall be appraised based upon the individual

5

characteristics that affect the property's market value." *Id.* 23.01(b).  With respect to personal property, by May 1, or as soon thereafter as practicable, the chief appraiser is required to deliver a clear and understandable written notice to the property owner of the appraised value of the property. *Id.* § 25.19(a). By May 15 or as soon as thereafter as practicable, the chief appraiser of each appraisal district shall prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each. *Id.* § 25.01(a). The chief appraiser is then required to submit the completed appraisal records to the appraisal review board (the "ARB") for review and determination of protests. *Id.* § 25.22(a).  Among the many duties of the ARB is the determination of protests regarding value initiated by property owners. *Id.* § 41.01(a)(1). The property owner is entitled to protest before the ARB a number of actions, including the determination of the appraised value of the owner's property or the unequal appraisal of the owner's property. *Id.* § 41.41(a).  To protest the assessed value, the property owner must file a written notice of the protest ("**Value Protest**") with the ARB having authority to hear the matter protested not later than May 15 or the 30th day after the date that notice to the property owned was delivered to the property owner. *Id.* § 41.44(a).  After filing the Value Protest, the property owner is entitled to a hearing before the ARB wherein the property owner may provide evidence. *Id.* § 41.45(a)-(b).  The ARB hearing a Value Protest shall determine the protest and make its decision by written order. *Id.* § 41.47(a).

17.    The property owner is then entitled to appeal an order of the ARB determining the value of the property. *Id.* § 42.01(a).  To appeal the ARB's order, the party must file a petition for review with the district court within 60 days after the party received notice that a final order has been entered from which an appeal may be had. *Id.* § 42.21(a).  **A petition for review must be brought against the appraisal district**. *Id.* § 42.21(b) (emphasis added). Not later than the 45th

6

day after the date an appeal is finally determined, the chief appraiser shall correct the appraisal roll

and other records to reflect the final determination of the appeal and certify the change to the tax

assessor for each taxing unit. *Id.* § 42.41(a).

18.    As shown in the preceding paragraphs, the appraisal of the Debtors' property is

completely outside the statutory authority of the Texas Taxing Authorities.  The taxing units such

as the Texas Taxing Authorities are only responsible for assessing taxes, multiplying the appraised

value by the applicable tax rate, and issuing tax bills.  *Id.* §§ 6.23, 31.01, *et seq*.  The taxing units

are not authorized to make the appraisals on which the property owner's tax liability is based and

indeed are prohibited by law from even employing an appraiser to conduct such valuations.  *Id.* §

1.15.   The appraisal districts and the tax units are distinct political subdivisions with unique and

exclusive statutory duties and those roles may not be interchanged under Texas law.  *Wilson v.*

*Galveston County Cent. Appraisal Dist.*, 713 S.W.2d 98 (Tex. 1986).

### Response and Objection to Omnibus Objection

19.    The Tax Claims filed by the Texas Taxing Authorities are for years 2022 and 2023.

The Omnibus Objection appears to be seeking relief for tax year 2023 only; however, in paragraph

five of the proposed order to the Omnibus Objection, it provides that "nothing in this Order shall

impair the rights of the Debtors to seek, pursuant to section 505 of the Bankruptcy Code, a refund

of any taxes previously paid with respect to the Property." [Docket No. 2156-3, ¶5].  To the extent

the Debtors are attempting to reserve any rights or assert a refund in regards to the partial payments

made on account of the 2022 portion of the Tax Claims, the Debtors are barred from such relief.

There is no mechanism under the Texas Tax Code that would allow the Debtors to seek a

redetermination of the 2022 tax amounts.  The time limits under the Texas Tax Code have expired

and any relief not dependent on time limits are also out of reach of the Debtors due to the fact that

the 2022 taxes became delinquent on February 1, 2023.  Section 505 of the Bankruptcy Code is abundantly clear that a motion to redetermine a tax must be brought before the expiration of the time periods at state law.[2]  Accordingly, the Debtors are barred from redeterming any 2022 tax, or any penalty and interest related to such tax, including seeking a refund from the payment of those amounts.

20.    Turning now to the 2023 portion of the Tax Claims that is at the center of the Omnibus Objection, as has already been pointed out, the Texas Taxing Authorities only assess and collect taxes, they do not determine the appraised value of property.  Throughout the Omnibus Objection, the Debtors attack the appraised value of the Property, which is beyond the control of the Texas Taxing Authorities.  The Debtors allege that the fair market value of the Property on which the Tax Claims are based is grossly inflated; however, the Texas Taxing Authorities are not the entity to determine appraised value and in fact are prohibited from doing so.  It would be grossly unfair and highly prejudicial to force the Texas Taxing Authorities to defend a value for which they are not the proper parties to perform such a function. *See In re Psychiatric Hosp*., 217 B.R. 645, 648 (Bankr.M.D.Fla. 1997) ("There is no question that this Court lacks the power to order the Tax Collector to peform a task which he has no statutory authority to perform," granting the Tax Collector's motion for summary judgement); *See also In re Airport Office Complex, Inc*., 2012 WL 5955009 at *2 (Bankr.M.D.Pa  Nov. 28, 2012) (bankruptcy court acknowledged that the taxing unit's only role is to collect taxes based on the tax rates and the value assessment set by a different government agency and therefore overruled debtor's objection to taxing unit's proofs of

---

[2] 11 U.S.C. § 505(a)(2)(C).

8

claim without prejudice to filing a new claim objection should the value of the property in question
be reassessed).

21.    Prior to the filing of the Omnibus Objection, the Debtors had already initiated Value
Protests with the various county ARBs on many of the accounts included in the Tax Claims.   Some
of those Value Protests have already been determined and ARB orders issued prior to the filing of
the Omnibus Objection, with others having been determined during the pendency of the Omnibus
Objection or set to be heard in the coming days or weeks.   Under Texas law, the next step for the
Debtors then would be to file an appeal of the ARB orders by filing their petition for review.
Instead of filing their petition for review against the appraisal districts in the applicable Texas state
district court, the Debtors filed this Omnibus Objection and merely noticed the appraisal districts
of the Omnibus Objection instead of joining the appraisal districts as an adverse party.[3]  Final
relief under state law cannot be afforded to a taxpayer who disputes value without joining the
appraisal district as a party to the cause of action.   The Debtors argue that they are within the time
limits under 11 U.S.C. § 505 to bring this Omnibus Objection since the time periods under the
Texas Tax Code have not run, in particular the 60-day deadline to file a petition for review.[4]  The
Debtors do not get to pick and choose which parts of the Texas Tax Code they want to abide by
and wholly ignore other Texas Tax Code sections, specifically, that provision that mandates that
the process for seeking value redetermination requires the appraisal district to be present as a
party.[5]   In deciding whether the Debtors' requested relief is warranted, this Court must apply

___

[3] Since the appraisal districts are separate governmental entities, the Texas Taxing Authorities do not have any
information or knowledge whether they were properly served or noticed and therefore are not waiving any rights to
assert any additional affirmative defenses.
[4] Since the Texas Taxing Authorities are not custodians of the appraisal records they cannot definitively say whether
the Omnibus Objection is timely under 11 U.S.C. § 505 and therefore reserve any and all affirmative defenses.
[5] Tex. Tax Code § 42.21 (a)-(b).

9

Texas law.  *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24-25 (2000*)* ("The basic federal rule in bankruptcy is that state law governs the substance of claims"); *See also In re Oxford Management, Inc.,* 4 F.3d 1329, 1334 (5th Cir. 1993) (providing that in the absence of controlling bankruptcy law, the substantive nature of property rights is defined by state law).  The Omnibus Objection should be overruled and denied on that basis that the proper and necessary parties to any dispute regarding the assessed fair market value of the Property are not before this Court.

22.     If the Texas Taxing Authorities are forced to defend the assessed values set by the various appraisal districts, the Texas Taxing Authorities would point out that the Debtors' valuation methodology is flawed and inconsistent with Texas law.  Under Texas law, all taxable property is to be appraised at its fair market value as of January 1 by applying generally accepted appraisal methods and techniques and "each property shall be appraised based upon the individual characteristics that affect the property's market value."[6]  Although the Debtors allege that their revised fair market values as set forth in the Lammert Declaration are the correct appraised values as of January 1, the statements in the Omnibus Objection and the Lammert Declaration would prove otherwise. [7]  Further, these statements and Declaration are completely inconsistent with the sworn renditions filed by or on behalf of the Debtors with the various appraisal districts.  It would appear from the Omnibus Objection that the Debtors are using the liquidation values from the store closings (which concluded in the Summer of 2023) as a basis for their opinion of the fair market value of the Property.  For instance, paragraph 5 of the Lammert Declaration provides "I have identified assets that should be reduced or disputed based upon…(iii) the Debtors' **sales data in**

---

[6] *Id*. § 23.01(a)-(b).
[7] The Lammert Declaration is merely his opinion of  the fair market value of the Property, which is not supported by generally accepted appraisal methods and techniques based upon the individual characteristics of the Property located at each store.

4861-4075-9432, v. 1

**connection with going out of business sales**." [Docket No. 2156-2, ¶5] (emphasis added). Liquidation values are not the proper appraisal methodology under Texas law and the Bankruptcy courts must apply the state substantive law when determining value. *Raleigh*, 530 U.S. at 24-5 ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of credtior's entitlements, but are limited to what the Bankruptcy Code itself provides"); *See also See In re Cable & Wirelss USA, Inc*., 331 B.R. 568, 579-80 (Bankr.D.Del. 2005) (using bankruptcy sales as a method to determine a property's fair market value is "fundamentally flawed" and more weight is given to the appraisal methods utilized by the local and state tax assessors)*; In re Quality Beverage Co*., 170 B.R. 310, 313 (Bankr.S.D.Tex. 1994) (Conditions arising after January 1 may not be considered in establishing the market value of property in Texas) (citing *Kirby v. Transcontinental Oil Co*., 33 S.W.2d 472 (Tex.Civ.App. – Waco 1930, writ ref'd).  Further, to the exent that the sales of inventory is taken into consideration in determining the fair market value of property, Texas law is clear that "the market value of an inventory is the price for which it would sell **as a unit to a purchaser who would continue the business**." Tex. Tax Code § 23.12(a) (emphasis added).  Here, the Debtors are not selling the units to a purchaser who will continue the business, rather, the Debtors conducted going out of business sales at each of their stores. Accordingly, the Omnibus Objection should be overruled and denied on that basis that the Debtors are using the wrong assessment methodology when trying to determine the fair market value of the Property.

23.     Further evidence that the Debtors are using liquidation values to arrive at what they think is the fair market value of the Property lies within the Renditions filed by the Debtors. Renditions were filed by or on behalf of the Debtors with the appropriate appraisal districts and these renditions contained the Debtors' statement of value as of January 1.  The values the Debtors

11

listed in their Renditions are substantially higher than what the Debtors now allege in this Omnibus

Objection. The revised fair market values listed as Exhibit 1 to the Lammert Declaration are

slashed on average by at least eighty percent (80%) of the values they listed in their sworn

Renditions.   In many instances, the appraisal districts accepted the Debtors' rendered value and

set the appraised value at that amount or well within the range of the Debtors' rendered valuations.

24.      The Debtors further object to the Tax Claims on the basis that the 2023 tax amounts

are estimated and do not have sufficient information to support the estimated amounts.  The ad

valorem tax liens attached to the Property on January 1 to secure payment of the taxes for tax year

2023 and because the Debtors incurred the tax liability on that date, the taxes are considered a pre-

petition debt, even if the amount of the claim is undetermined.  *Midland Cent. Appraisal Dist. v.*

*Midland Indus. Serv. Corp (In re Midland Indus. Serv. Corp.)*, 35 F.3d 164, 166 (5th Cir. 1994)*.*

The ad valorem taxes are not known until later in the year once the tax roll is certified and becomes

final.  Accordingly, since the Debtors incurred the tax liability on January 1, the Texas Taxing

Authorities routinely file estimated claim amounts using the base tax of the previous year in order

to comply with any applicable claim bar dates. Once the taxes are certified, the tax claims are

amended to reflect the final values and tax amounts.  The Debtors were aware of this process and

included agreed language in the confirmation order allowing the Texas Taxing Authorities to

amend their claims once the taxes were final.  The last sentence of paragraph 141 of the Plan

provides that the "Texas Taxing Authorities may amend their respective proofs of claim once the

current year's ad valorem taxes are actually assessed without further agreement with the Debtors

or Wind-Down Debtors, or as applicable, or leave of the Bankruptcy Court."  [Docket no. 2172].

The certified tax amounts are typically available in October and November.  Accordingly, the

Texas Taxing Authorities are beginning the process of amending their Tax Claims.  The Omnibus

Objection should be overruled and denied on that basis that the Debtors incurred the 2023 tax liability on January 1 even if the amount of the claim is undetermined until later in the year.

25.    Based upon the preceding paragraphs, it is clear the Debtors have not overcome the prima facie validity of the Tax Claims nor have they provided any evidence to rebut the presumption that the Tax Claims are correct. *See In re Cable & Wireless USA, Inc*., 331 B.R. at 579 ("property assessments made by the proper tax authority are presumed correct") (citing *In re A WB Assocs., G.P*., 144 B.R. 270, 278-79 (Bankr.E.D.Pa. 1992)    Accoringly, the Omnibus Objection should be overruled and denied.

### **Request for Abstention**

26.    Pleading in the alternative, should such be necessary, the Texas Taxing Authorities move this Court to exercise its power of discretionary abstention.  Bankruptcy courts routinely abstain from deciding the merits of a motion to redetermine tax liability, recognizing that the processes for contesting valuation through state administrative procedures and the local courts are better positioned to resolve the disputes.   Discretionary abstention in bankruptcy cases is governed by 28 U.S.C. §1334(c)(1), which provides, in pertinent part, the following:

> "…nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title."

Even where mandatory abstention under 28 U.S.C. §1334(c)(2) is inapplicable, the bankruptcy court may abstain from both core and non-core matters when abstention best serves the interests of justice, judicial economy or comity with the state courts.   *See In re Republic Reader's Service, Inc*., 81 B.R. 422, 425 (Bankr.S.D.Tex. 1987) ("The intent of Congress is that abstention must play a far more significant role in limiting those matters, which although properly brought within the

13

reach of jurisdiction under Title 11, are nonetheless best left for resolution to a state or other nonbankruptcy forum").

27.     Bankruptcy courts abstain from hearing property tax disputes when the interests for which section 505 was enacted would not be furthered.  11 U.S.C. § 505 was enacted to serve two primary purposes.  The first purpose "is to protect the creditors from the dissipation of the estate assets occurring from the failure of the debtor to protest the tax.  The second is to afford an alternative forum, the bankruptcy court, to allow prompt administration of the estate which would be otherwise threatened if the estate had to litigate the tax or assessment in several state jurisdictions." *In re Cable & Wireless U.S.A., Inc*., 331 B.R. at 575; *see also In re Altegrity, Inc*., 544 B.R. 772, 778 (Bankr.D.Del. 2016) (two primary purposes of the enactment of section 505 are "to help a debtor obtain a prompt resolution of a tax claim…" and to protect "creditors from dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest"); *In re New Haven Projects LLC*, 225 F.3d 283, 290 (2nd Cir. 2000) ("Section 505 was enacted to protect creditors from the prejudice caused by an ailing debtor's failure to contest tax assessments" and not to "afford debtors a second bite at the apple at the expense of outside creditors").`

28.     In regards to the first purpose, the creditors in the instant case are protected by the Debtors' pending value protests filed with the ARB, the ability to file a petition for review for those accounts where the ARB has issued its order and by other relief provided under the Texas Tax Code. The Debtors have filed their Value Protests and litigated those protests with the ARB. These are not the actions of an inept or financially constrained debtor whose other creditors need the relief offered under section 505.  In regards to the second purpose, there has been no evidence presented by the Debtors that the state process would not provide a prompt resolution of the tax

14

disputes.  Rather, the Texas state process would be more efficient given that the proper parties, the

appraisal districts, would be able to participate in the judicial process whereas here, the Texas

Taxing Authorities will have to seek discovery from the appraisal districts for each account

included in the Tax Claims.  The court then has to conduct an evidentiary hearing for each account

in order to determine the appropriate fair market value.  This is the antithesis of a prompt

administration of the tax disputes.

29.    "The bankruptcy court's ability to abstain is premised on Congress' use of the word

'may' in § 505." *In re Luongo* 259 F.3d 323, 330 (5th Cir. 2001); *See also In re Altegrity, Inc*.,

544 B.R. at 777 ("While section 505(a)(1) provides the jurisdictional nexus to decide the Tax

Dispute, it also vests the Court with discretion to abstain from determining a tax liability").  In the

case of *In re CM Reed Almeda 1-3062, LLC,* the court abstained from determining a debtor's tax

liability owed to Harris County, stating that "[s]ection 505(a)(1) permits, but does not require, the

bankruptcy court to determine a debtor's tax liability.  It provides that the 'court *may* determine

the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to a tax,'

whether or not such tax has been previously assessed or paid." 2016 WL 3563148, at *3

(Bankr.D.Nev. May 31, 2016), *aff'd*, 2017 WL 1505215 (9th Cir. BAP April 26, 2017) (emphasis

in the original).  As the bankruptcy court pointed out, the discretionary aspect of this statute has

been noted by several courts.  *Id.* at FN 71,  (citing *Central Valley AG Enterprises v. United States*,

531 F.3d 750, 764 (9th Cir. 2008) (§ 505(a)(1) "is a permissive empowerment" rather than a

"mandatory directive."); *In re New Haven Projects Ltd. Liability Co*., 225 F.3d at 288 ("we

interpret the verb 'may' in 11 U.S.C. § 505(a)(1) as vesting the bankruptcy court with discretionary

authority to redetermine a debtor's taxes."); *In re Breakwater Shores Partners, L.P*., No. 10-61254,

2012 WL 1155773, at *2 ("the exercise of jurisdiction under § 505 is discretionary with this

15

Court."); *In re Gordon*, No. 09-16230-AJG, 2011 WL 3878356, at *5 (Bankr.S.D.N.Y. Aug. 30, 2011) ("As the verb 'may' indicates, the Court's ability to determine a debtor's tax liability is discretionary."); *In re Galvano*, 116 B.R. 367, 372 (Bankr.E.D.N.Y. 1990) ( §505 is discretionary, and "the Court may decline to review a debtor's tax liability").

30.    In deciding whether courts should exercise their power of abstention, the court in *In re Luongo* held, "…where bankruptcy issues predominate and the Code's objectives will potentially be impaired, bankruptcy courts should generally exercise jurisdiction. Conversely, absent any bankruptcy issues or implications of the Code's objectives, it is usually appropriate for the bankruptcy court to decline or relinquish jurisdiction." 259 F.3d 323, 332 (5th Cir. 2001).  In the instant case, there are no bankruptcy issues or implications of the Code's objectives.  The Debtors are asking this Court to adjudicate post-confirmation, post-effective date state law issues where there are already pending Value Protests and a mechanism to determine appraisal disputes regarding the exact same issues.  Further, because the Plan has been confirmed and the Effective Date occurred there are no bankruptcy objectives to be furthered.

31.    There are six factors usually considered when determining whether to abstain in a proceeding seeking relief under 11 U.S.C. § 505(a).  Those factors are (1) the complexity of the tax issues to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time required for trial and decision; (5) the asset and liability structure of the debtor; and (6) prejudice to the debtor and the potential prejudice to the taxing authority.  *In re ANC Rental Corp.*, 316 B.R. at 159 (citing *In re Beisel*, 195 B.R. 378, 380 (Bankr.S.D.Ohio 1996)); *See also In re Luongo*, 259 F.3d at 330. Each of these factors weigh in favor of the Texas Taxing Authorities.

16

32.     First, the issues to be decided are fact intensive and involve solely issues of state law. *See In re ANC Rental Corp.*, 316 B.R. at 159 (court abstained from hearing a Texas tax dispute because it would require the court to "undertake a fact intensive review of the value of the property and the amount of the taxes in questions.")   The Texas Taxing Authorities do not assess values or maintain valuation records, nor are they a party to the valuation appeals, so evidence on these matters must be sought from the appraisal districts who are not before this Court.   While this Court has extensive experience in adjudicating value and tax issues with a fair degree of frequency, this Court would have to familiarize itself with the appraisal methods utilized by the Texas appraisal districts in valuing the Debtors' Property in multiple different counties across Texas and for several dozen accounts.   *See In re Quality Bev. Co*., 170 B.R. at 313 ("When a bankruptcy court values property for purposes of determining a debtor's tax burden, its valuation must be consistent with state law.").   In contrast, the ARBs and Texas state courts have the requisite familiarity with the Texas Tax Code and the practices of the appraisal districts to resolve the Debtors' dispute regarding the fair market value of the Property. *See In re Ryckman Creek Res., LLC*, 570 B.R. 483, 487-88 (Bankr.D.Del. 2017) ("Although bankruptcy courts are routinely called upon to determine the value of a variety of types of property in many different locations, determining the appropriate method for assessing the Debtors' property, as well as reassessing the value of that property, are issues best decided under the local law applicable here by the local adjudicative bodies").   This factor weighs in favor of abstention.

33.     Second, adjudicating this purely state law matter would not assist in administering the bankruptcy case in an orderly and efficient manner.   The Debtors have already confirmed the Plan and the Effective Date has occurred.   In *In re Cain*, the court stated,

> Although Congress extended jurisdiction to the bankruptcy court to determine the debtors' personal tax liability under Section 505(a)(1), the debate in the House of Representatives leading to the passage of this section clearly shows that, when there is no need for a determination of the amount of the tax for estate administration purposes, Congress did not intend or foresee that the bankruptcy court would be the forum for this litigation.

142 B.R. 785, 788 (Bankr.W.D.Tex. 1992). *See also In re Vanguard Natural Resources,* 603 B.R.

310, 322 (Bankr.S.D.Tex. 2019)("Generally, there is no need to expeditiously resolve a tax dispute

to ensure an efficient and orderly administration of a case where the plan has been confirmed, the

tax claim has been provided for in the plan, and the plan has gone effective").  In the *Vanguard*

case, this Court declined to abstain from adjudicating section 505 issues brought by the Debtor

against the State of Wyoming.  However, the facts in that case are distinguishable from the instant

case because in *Vanguard,* the Debtor was in the early stages of its second bankruptcy case.  The

court held that "[i]n light of Vanguard's second filing, the Court, in line with Code's objectives,

must ensure the efficient administration and equitable distribution of the estate for the benefit of

creditors, while protecting Vanguard's right to a fresh start").  *Id*. at 325; *In re ANC Rental*, 316

B.R. at 159 (court abstained since the plan was confirmed and the Texas tax dispute did not affect

the orderly and efficient administration of the bankruptcy case).  Much like the *Vanguard* case, in

the instant matter, the Plan has been confirmed, the tax claims have been provided for and their

treatment negotiated in the Plan, and the Plan has gone effective.  This factor weighs strongly in

favor of abstention.

     34.    The third and fourth factors also favor abstention.  The Texas Taxing Authorities

are not aware of this Court's docket and thus cannot definitively weigh the burden the proceeding

would have upon it.  However, the Texas Taxing Authorities are aware of other proceedings

brought by the Debtors against other Texas and California taxing units asserting similar causes of

action, with each case presenting its own nuances and body of law applicable to each jurisdiction. There will be discovery requests and the trial is expected to be fact intensive. The Court would be required to determine the correct appraisal methodology to determine the Property's fair market value. *See In re Ryckman Creek Res., LLC*, 570 B.R. at 488 (court abstained stating "[u[nlike other 505 cases, the issue to be determined here is not simply whether the tax is due, but whether the County used the proper method for determining what tax is due. An evidentiary hearing will surely require both parties to present expert testimony to ascertain the fair market value of the assets"). Further, there is no guarantee that parties to this proceeding will not appeal this Court's ruling. Instead of burdening this Court's docket, there already exists a state law forum to protest values, which the Debtors have already availed themselves of, and a statutory framework for appealing the values.[8]  The court in *In re CM Reed Almeda 1-3062, LLC* abstained from adjudicating section 505 issues for property located in Harris County stating that, "because there is a review process available to the Debtor in Texas, 'it seems most appropriate that the debtor in chapter 11 proceed with the systems already in place' for determining its state tax liability, 'rather than substituting this court for that process.' 2016 WL 3563148 at *9 (*quoting In re the Village at Oakwell Farms, Ltd.*, 428 B.R.372, 375 (Bankr.W.D.Tex. 2010); *See also  In re Elantic Telecom, Inc.*, 2005 WL 3781715, Case No. 04-36897-DOT ( Bankr. E.D. Va. Dec. 2, 2005) (bankruptcy court abstained in part because tax issue was a local issue better resolved by the state); *Lyondell Chem. Co.*, 2010 WL 1544411, at *2 (Bankr.S.D.N.Y. Apr. 19, 2010) (New York bankruptcy court abstained from determining debtor's tax liability with respect to an oil refinery in Harris County, Texas where

---

[8] If this Court were to abstain and the Debtors continue to pursue their remedies under state law, any reduction in the values will result in a correct ion to the appraisal rolls and those reduced values are statutorily binding on theTexas Taxing Authorities.  This would result in the reduction of taxes without the Debtors having to force the Texas Taxing Authorities to change their tax rolls as that change would be automatic upon the upload of the corrected appraisal rolls.

debtor preserved its rights to proceed in state tax proceedings).  Based upon the foregoing, these factors weigh in favor of abstention.

35.      The fifth factor, the asset and liability structure of the Debtors, does not weigh in favor or against abstention.  However, the asset and liability structure of the Debtors would be significant if the Debtors were in the process of negotiating and confirming a plan of reorganization wherein a determination of the Tax Claims could affect the structure of the plan and address any feasibility issues.  Given that the amount of the Tax Claims in this case are just a mere drop in the bucket in the magnitude of the Debtors' assets and liabilities, an adjudication of the Tax Claims in this Court is not needed.  Further, the Plan has been confirmed and the Effective Date has passed.

36.      The last factor - the prejudice to the Debtors and the potential prejudice to the Texas Taxing Authorities - weighs heavily in favor of abstention. First, it would impose a substantial burden on the Texas Taxing Authorities to have to litigate this case in New Jersey where the issues to be decided will be fact intensive resulting in lengthy evidentiary hearings.  This Court will have to conduct separate valuation hearings for each account, involving multiple counties each with their own set of experts and discovery needs.  By contrast, there is no prejudice to the Debtors since they already have tax agents, like Lammert, that have been working on their behalf by filing Value Protests and presenting evidence at the ARB hearings.  *See In re Ryckman Creek Resources*, 570 B.R. at 489 ("There is no potential prejudicial impact on the Debtors by allowing the local tax authority to handle this matter, but there may be prejudice imputed to the County if I exercise authority over these issues"); *In re ANC Rental Corp.*, 316 B.R. at 159 ("[t]he [Texas] Tax Authorities would be significantly prejudiced by having the taxes at issue determined by a Delaware court").  Second, the Texas Taxing Authorities in their capacity as the entities collecting taxes, do not have jurisdiction to address the valuation issues raised in the Omnibus Objection;

20

which are exclusive statutory duties of the appraisal districts.  Because the appraisal districts,

which are the proper parties to any valuation dispute, are not before this Court, the Texas Taxing

Authorities are highly prejudiced to litigate the fair market values of the Property when they are

statutorily prohibited from performing such function. Third, the Debtors are using the wrong

appraisal methodology.  The Debtors have to show that their valuation methodology is consistent

with Texas law, which this Court must apply if it were to consider the relief requested. *In re CM*

*Reed Almeda 1-3062, LLC* 2016 WL 3563148 at *9.

          37.      Several courts have held that in instances where the uniformity of local assessment

is at issue, it is proper for bankruptcy courts to abstain from hearing the matter.  *See In re CM Reed*

*Almeda 1-3062, LLC*, 2016 WL 3563148, at *10;  *In re ANC Rental Corp.,* 316 B.R. at 159;  *In re*

*Metromedia Fiber Network*, 299 B.R. 251, 281 - 283 (Bankr.S.D.N.Y. 2003) (fair allocation of the

cost of government among the tax base must be a product of local decision making and depends

more on uniform standards for assessing value than on an ideal calculation).  If the Property is

valued using a different method than other similarly situated property, it could create havoc and

set precedent for valuing such property into the future.  When a Bankruptcy Court redetermines

taxes pursuant to 11 U.S.C. § 505, it must apply substantive applicable non-bankruptcy law. *In re*

*Fairchild Aircraft Corp*., 124 B.R. 488, 492-93 (Bankr. W.D. Tex. 1991); *Metromedia Fiber*

*Network*, 299 B.R. at 270.  This encompasses not only the law concerning the method of valuation

but also the type of evidence that may be considered.  "Each tax authority must enjoy and apply a

uniformity of assessment within its tax jurisdiction."   *In re Cable & Wireless U.S.A., Inc*., 331

B.R. at 578.   It is clear that where uniformity of assessment is at issue, Bankruptcy Courts may

exercise their right to abstain within their discretion.  *In re New Haven Projects Ltd. Liability Co.,*

225 F.3d 283 at 287-88; *In re Metromedia Fiber Network,* 299 B.R. 251; *United States v. Paolo*,

No. C.A. 08-482ML, 2009 WL 2208094, at *4 (D.R.I. July 23, 2009) (abstention appropriate where no bankruptcy purpose served which would outweigh the importance of uniformity of assessment). The valuation methodology relied upon by the Debtors as listed in the Omnibus Objection and the Lammert Declaration casts serious doubt that their alleged revised 2023 fair market values are correct, which would create havoc to the uniformity of assessment within the jurisdictions of the Texas Taxing Authorities. In *In re Northbrook Partners LLP,* the bankruptcy court abstained from adjudicating the Debtor's tax dispute with the state of Minnesota because of the prejudice that would result to the taxing unit from an unequal appraisal. 245 B.R. at 104, 120-21 (Bankr.D.Minn. 2000). The court found that determining the ad valorem tax in the bankruptcy case would undermine the uniformity of assessment in two ways: (1) adjudicating this in the bankruptcy court may produce a result that is inconsistent with established jurisprudence and (2) other property owners may elect the same strategies "after seeing the Debtor dodge the presumptive process and forum." *Id.* For these reasons, the Texas Taxing Authorities request the Court to exercise its power of discretionary abstention.

38.    Another factor courts consider when deciding whether to exercise their power of permissive abstention is whether the proceeding filed in bankruptcy court involves forum shopping by one of the parties. In the case of *In re Republic Reader's Service, Inc.*, the court stated that another factor when considering abstention is:

> whether the proceeding was filed in bankruptcy court for the purpose of forum shopping in order to gain some adversarial advantage rather than for the reason that the proceeding is so related to the estate that failure to adjudicate the proceeding within a bankruptcy forum would cause harm to or impede efficient administration of the estate. All courts should attempt to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping.

81 B.R. at 428; *See also In re Coho Energy, Inc.*, 309 B.R. 217, 222 (Bankr.N.D.Tex.

2004). In applying this factor to the instant case, abstention is warranted.    The

determination of the value of the Property is in no way "so related to the estate that failure

to adjudicate the proceeding within a bankruptcy forum would impede the efficient

administration of the estate."    As mentioned already, the Plan has been confirmed and the

Effective Date passed so if this Court abstained in this matter, there would be no

impediment to the efficient administration of the estate.

### Reservation of Rights

39.    The Texas Taxing Authorities are aware of other taxing units that are the subject of

a pending Omnibus Objection and are similarly situated to the Texas Taxing Authorities. The

Texas Taxing Authorities expressly join and incorporate any and all arguments and defenses

asserted by the other taxing units or affected parties.  The Texas Taxing Authorities further reserve

the right to supplement their response, including any affirmative defenses, to the Omnibus

Objection should additional information become available to the Texas Taxing Authorities.

### Conclusion

40.    Given that the Debtors chose to and have been pursuing relief through the

applicable nonbankruptcy tax protest proceedings, it is not a burden to ask them to continue to do

so, and no bankruptcy purpose would be served by adjudicating these issues in the bankruptcy

court.  It would be inequitable for the Debtors to have two bites at the apple by allowing the

Omnibus Objection to proceed in bankruptcy court, while also staying the state tax proceedings.

For the various grounds articulated herein, the Omnibus Objection should be overruled and denied

or, in the alternative, that the Court abstain from adjudicating the allegations raised in the Omnibus

Objection.

23

41.     The Texas Taxing Authorities respectfully request that the hearing on the Omnibus Objection currently set for October 24, 2023 at 10:00 a.m. (ET) be set as a status conference only so the parties can agree to a form of scheduling order.

WHEREFORE, PREMISES CONSIDERED, the Texas Taxing Authorities respectfully request this Court to enter an order overruling the Omnibus Objection to Certain Tax Claims and denying the Motion to Determine Tax Liability and Stay Proceedings, or, in the alternative, exercise its power of abstention from determining the merits of the above, and for such other and further relief, at law or in equity, as is just.

Dated:  Roseland, NJ
October 17, 2023

MANDELBAUM BARRETT PC

By: /s/ Vincent J. Roldan
Vincent J. Roldan
3 Becker Farm Road
Roseland, NJ 07068
(973) 736-4600

and

LINEBARGER GOGGAN
BLAIR & SAMPSON, LLP

/s/  Tara L. Grundemeier
Tara L. Grundemeier
Texas State Bar No. 24036691
4828 Loop Central Drive; Suite 600
Houston, Texas 77081
(713) 844-3478- *Telephone*
(713) 844-3503 – *Telecopier*
tara.grundemeier@lgbs.com

Counsel for Texas Taxing Authorities

4861-4075-9432, v. 1