UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors, | (Jointly Administered) |

**DECLARATION OF JENNIFER FRUGÉ IN SUPPORT OF OBJECTION OF COUNTY OF SANTA CLARA, COUNTY OF LOS ANGELES, COUNTY OF FRESNO AND COUNTY OF RIVERSIDE TO DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS AS TO CERTAIN CALIFORNIA TAXING AUTHORITIES**

I, **Jennifer Frugé**, pursuant to 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my information, knowledge, and belief:

1. I am over the age of eighteen and I could and would testify competently in a court of law regarding the contents of this declaration.

2. My education and professional experience are as follows:

    a. Bachelor of Science in Accounting, California State University, Stanislaus, December 1999

    b. 6 years as an Auditor-Appraiser with the County of San Joaquin, California, and 17 years as an Auditor-Appraiser with the County of Fresno, California, for a total of 23 years' experience as an Auditor-Appraiser in California.

    c. Advanced Appraisal Certification with the California State Board of Equalization.

3. I am employed by the County of Fresno as Auditor-Appraiser III. I have been employed by the County of Fresno for 17 years, and for that entire time my job has been to assess the value of various types of taxable property in the County of Fresno,

---

DECLARATION OF JENNIFER FRUGÉ    Case No. 23-13359 (VFP)

Document    Page 2 of 8

State of California. I am familiar with the different valuation methods and principles required and permitted by California law, and the factors and circumstances under which each valuation method is appropriate. I have personal knowledge of all facts stated in this Declaration, except for those asserted on information and belief, which facts I believe to be true.

4. I offer this Declaration in support of the Objection of County of Santa Clara, County of Los Angeles, County of Fresno and County of Riverside to Debtors' Motion to Determine Tax Liability And Stay Proceedings As To Certain California Taxing Authorities (the "Objection") filed in the bankruptcy case of In re Bed Bath & Beyond, Inc., et al. (Case No. 23-13359) (VFP) (collectively, the "Debtors").

5. I have custody and control of the Assessor's business records and documents relating to this matter. To the best of my knowledge, those records were prepared in the ordinary course of the Assessor's business at or near the time of the act, condition, or event of which they are related. Such records were prepared in the ordinary course of business by a person employed by the Assessor who has personal knowledge to make a record of such event. I have personally reviewed the files as it pertains to the Debtors prior to submitting this Declaration.

6. I am informed that on April 23, 2023 (the "Petition Date"), the Debtors filed for chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of New Jersey.

7. A Business Property Statement, prepared on behalf of Bed Bath & Beyond, Inc. was filed for the January 1, 2023, at 12:01 am lien date, pertaining to the Bed Bath & Beyond store located at 7497 North Blackstone Avenue, Fresno, CA (APN 303-670-01). The County of Fresno's Assessor relied on that Business Property Statement and the representations made therein, as well as other information and analysis, in reaching a valuation conclusion.

8. A Business Property Statement, prepared on behalf of Buy Buy Baby, was filed for the January 1, 2023, at 12:01 am lien date, pertaining to the Buy Buy Baby store located at 7458 North Blackstone Avenue, Fresno, CA (APN 303-650-40). The County of Fresno's Assessor relied on that Business Property Statement and the representations made therein, as well as other information and analysis, in reaching a valuation conclusion.

9. The 2023 assessment for Debtor's Fresno Locations were each calculated using the information provided by Debtors, including the historical cost, acquisition year, category, and supply quantities. That information is obtained from the Business Property Statements describe above, which are signed under penalty of perjury. Under these circumstances, and relying on Debtor's Business Property Statements, the County of Fresno Assessor applied the "Cost Approach" method for valuation.

10. The 2023 Full Cash Value Assessment of the Personal Property and Trade Fixture Improvement for the Bed, Bath & Beyond located at 7497 N Blackstone Ave (APN – 303-670-01) was:
    a. Trade Fixtures Improvement:    $860,800
    b. Personal Property:    $302,100
       Total:    $1,162,900
    I reviewed these taxable values and they are correct.

11. The 2023 Full Cash Value Assessment of the Personal Property and Trade Fixture Improvement for the Buy Buy Baby located at 7458 N Blackstone (APN – 303-650-40) was:
    a. Trade Fixtures Improvement:    $702,200
    b. Personal Property:    $56,800
       Total:    $759,000
    I reviewed these taxable values, and they are correct.

12. I have reviewed the declaration of John W. Lammert in Support of Debtor's Motion ("Lammert Declaration") and am familiar with its contents.

DECLARATION OF JENNIFER FRUGÉ    Case No. 23-13359 (VFP)

13. The valuation set forth in the Lammert Declaration is incorrect for several reasons, including that:

    a. It is not clear that valuation set forth in the Lammert Declaration was reached by qualified professionals, and the Lammert Declaration does not assert that its valuation complies with any recognized set of professional standards. Beyond a general assertion that the author has been "involved" in valuing complex properties and that Assessment Technologies, Ltd. ("ATL") has "professional staff" who are familiar with "the California Counties' tax statutes the Lammert Declaration does not appear to explain how the author is qualified to reach these valuations. For example, it is not clear that the valuation set forth in the Lammert Declaration valuation was performed by any professional certified or licensed by a credible body to ensure adherence to ethical and performance standards, for example a Certified Public Accountant ("CPA") license, or a certification from the American Society of Appraisers ("ASA").

    b. The Lammert Declaration concludes that the Counties applied the incorrect definition of "fair market value," because the end result of their valuation is different from that reached by the Lammert Declaration. But that difference is explained by the *method* of valuation applied, not by the *definition* of fair market value. The standard appraisal methods recognized by USPAP, ASA, and State Board of Equalization are: the Cost Approach, the Sales Comparison Approach to Value, and the Income Approach. The County of Fresno's Assessor applied the Cost Approach to conduct a mass appraisal of the whole operating business to determine the Fair Market Value as of January 1, 2023, at 12:01 am, lien date. It does not appear that the valuation method employed by the Lammert Declaration is a recognized or approved appraisal method, and the Lammert Declaration does not say what recognized valuation method it did apply. The Lammert Declaration also does not explain why the Cost Approach would be inappropriate under the circumstances presented here.

DECLARATION OF JENNIFER FRUGÉ            Case No. 23-13359 (VFP)

c. The value for which property is sold at a forced sale under non-market conditions is not "fair market value." According to the Lammert Declaration, its Fair Market Value conclusion is based on the "sales data" in connection with going out of business sales. The Lammert Declaration fails to explain the manner in which this sale was conducted and "a going out of business sale" is not a defined or generally accepted term. However, as a general rule the sales price of property that is sold at a forced auction is not "fair market value." (See California State Board of Equalization's Laws Regulations and Annotations, section 848.0003.)

d. The Lammert Declaration's valuation also appears to rely on improper comparable data. The Lammert Declaration does not say when the sales figures it claims are comparable arose. But in order to be relevant and representative of fair market value, in California comparable sales must occur with 90 days of the valuation date. At paragraph 9, the Lammert Declaration identifies the correct valuation date as January 1, 2023, at 12:01 a.m. The County's valuation of debtor's taxable assets therefore contemplated the value of Debtor's taxable assets, in the County of Frenso, in an open market under conditions in which neither the buyer or seller could take advantages of exigencies, on January 1, 2023, at 12:01 a.m. The Lammert Declaration does not say when the going out of business sales from which its "Debtor Sales Data" is drawn occurred. However, Debtors did not file for bankruptcy until April 23, 2023, so it appears likely that at least some of their comparable sales data arose more than 90 days from the January 1, 2023, valuation date. Comparable sales more than 90 days old are too old for the data to be relevant from an assessment standpoint. California Revenue and Tax Code section 402.5 requires that when valuing property by comparison to the sale of other property, the sales being compared must be sufficiently near in time, location, and character. Near in time means not more than 90 days after the valuation date. (Rev. & Tax. Code, § 402.5.)

---

DECLARATION OF JENNIFER FRUGÉ                                    Case No. 23-13359 (VFP)

The State of California Board of Equalization Property Tax Rules, rule number 324, subd. (d) states that the assessor "shall not consider a sale if it occurred more than 90 days after the date for which value is being estimated…." Consequently, it is improper to rely on sales data more than 90 days after January 1, 2023.

e. The value at which Debtors liquidated their property is not fair market value because they were forced to sell at artificially low prices. Revenue and Taxation Code section 110.1 states that fair market value means a price at which "neither buyer or seller could take advantage of the exigencies of the other." Bankruptcy and closing of stores are distressed/forced sales and buyer can take advantage of the seller, due to the liquation of assets. Consequently, using only debtor sales data from a going out of business sale to approximate the Fair Market Value does not reflect open market sales of similar equipment that are not in a forced sale.

f. The valuation set forth in the Lammert Declaration relies only on internal data—Debtor's own sales—and fails to consider outside data for comparison. The ASA, Valuing Machinery and Equipment – The fundamentals of Appraising Machinery and Technical Assets, 4th edition states that the basic procedure in the Sales Comparison Approach is as follows: Gather data on sales and offerings of similar properties, determine their comparability to the subject property, determine the appropriate units in comparison, organize the data into an array (or comparison chart) as appropriate, analyze and adjust the comparable data, and apply the results to the subject. The Lammert Declaration's exclusive reliance on Debtor's internal "Debtor Sales Data" to determine fair market value without comparing to outside data is not a recognized or appropriate method of valuation in any appraisal standards.

g. Additionally, the Lammert Declaration states that its underlying sales data comes from stores which are the subject of the Motion "and other stores

throughout the Debtor's portfolio." It appears to mean that ATL relied on liquidation sales at stores outside of California. California Revenue and Tax Code section 402.5 requires that when valuing property by comparison to the sale of other property, the sales being compared must be sufficiently near in time, *location*, and character. Sales values outside of California are not a reliable measure of sales prices in California.

h. The Lammert Declaration states that by "omitting actual sales data to estimate open market, arm's-length sales prices, the California Counties' analyses, and conclusions were flawed." First, the Counties could not have considered sales that had not yet occurred. Second, as stated above, sales data from a liquidation sale does not represent fair market value because at a liquidation sale the seller is under a significant exigency and the buyer has a significant advantage. Third, the valuation method which the County of Fresno used – the Cost Approach – is provided for and approved of by the California State Board of Equalization. Section 15606, subdivision (c), of the California Government Code directs the Board of Equalization to prescribe rules and regulation governing County Assessors in the performance of their duties. The California State Board of Equalization publishes "Assessor's Handbooks," which provide the guidelines for valuing taxable properties throughout the State of California. Assessor's Handbook 504 is one of those handbooks which pertains to assessment of personal property and fixtures. A true and correct copy of Assessor's Handbook 504 is attached hereto as "Exhibit 1." The Assessor's Handbooks are used in courts and are considered evidence of appropriate assessment practices. Assessor's Handbook, section 504 provides that the Cost Approach "is the method of valuation used most frequently to value personal property and business fixtures for assessment purposes because it lends itself to mass appraisal and is employed based on information provided on yearly property statements." Consequently, the Cost Approach was the appropriate

valuation method to use here.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that, to the best of my knowledge, information, and belief and after reasonable inquiry, the foregoing is true and correct.

Dated: October 16, 2023

_____

**Jennifer Frugé**

Auditor-Appraiser III

County of Fresno

---

DECLARATION OF JENNIFER FRUGÉ    Case No. 23-13359 (VFP)