| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>MANDELBAUM BARRETT PC<br>3 Becker Farm Road, Suite 105<br>Roseland, New Jersey 07068<br>Ph.: 973-736-4600<br>Fax: 973-736-4670<br>Vincent J. Roldan<br>vroldan@mblawfirm.com<br><br>Attorneys for McCreary Entities | Case No. 23-13359 (VFP)<br><br>Chapter 11 |
| In re<br><br>Bed Bath & Beyond, Inc.<br><br>　　　　　　　　　Debtor. | |

**OBJECTION OF (1) BOWIE CENTRAL APPRAISAL DISTRICT; (2) THE COUNTY OF BRAZOS, TEXAS; (3) THE COUNTY OF DENTON, TEXAS; (4) THE COUNTY OF GUADALUPE, TEXAS; (5) THE COUNTY OF HAYS, TEXAS; (6) MCLENNAN CENTRAL APPRAISAL DISTRICT; (7) MIDLAND CENTRAL APPRAISAL DISTRICT; (8) CENTRAL APPRAISAL DISTRICT OF TAYLOR COUNTY; (9) CITY OF WACO AND WACO INDEPENDENT SCHOOL DISTRICT; (10) THE COUNTY OF WILLIAMSON, TEXAS TO DEBTORS' (I) OMNIBUS OBJECTION TO CERTAIN TAX CLAIMS AND (ii) MOTION TO DETERMINE TAX LIABILITY AND STAY <u>PROCEEDINGS and REQUEST FOR ABSTENTION</u>**
*Responding to Doc #2156*

(1) BOWIE CENTRAL APPRAISAL DISTRICT; (2) THE COUNTY OF BRAZOS, TEXAS; (3) THE COUNTY OF DENTON, TEXAS; (4) THE COUNTY OF GUADALUPE, TEXAS; (5) THE COUNTY OF HAYS, TEXAS; (6) MCLENNAN CENTRAL APPRAISAL DISTRICT; (7) MIDLAND CENTRAL APPRAISAL DISTRICT; (8) CENTRAL APPRAISAL DISTRICT OF TAYLOR COUNTY; (9) CITY OF WACO AND WACO INDEPENDENT SCHOOL DISTRICT; (10) THE COUNTY OF WILLIAMSON, TEXAS **(hereinafter "McCreary entities"),** as and for their *Objection to Debtors' (I) Omnibus Objection to Certain*

1

*Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings and Request for Abstention* **(hereinafter, the "Motion")**, respectfully represent as follows:

## RESPONSES TO DEBTORS' ALLEGATIONS

1. The McCreary entities confirm their consent to the Court entering a final order in connection with the Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The Debtors challenge the assessed values of the business and personal property in certain of their former Texas stores. They also challenge the resulting 2023 tax claims. The Debtors complain that the claims on file contain estimated amounts. This is true. The actual 2023 figures only became available in October 2023, per Texas law. The figures for some of the McCreary entities are not yet available. As the actual data becomes available, amended claims will be filed for actual assessed amounts. The Debtors agreed as part of the confirmation order to allow the Texas Taxing Entities to amend their claims for this reason.

3. The Debtors propose erroneous valuation methodology in their Motion, methods not in compliance with the requirements found in the Texas Property Code. The Debtors propose revised fair market values significantly below the fair market values they themselves provided to the jurisdictions in April 2023 on their required rendition forms.

4. The McCreary entities deny that the claimed amounts are overstated and that the assessors have asserted inaccurate fair market values. The assessed values are adapted from renditions furnished to the appraisal districts by the Debtors' VP of Tax. Now, a short time later, an outside for-profit company asserts that the values provided by the Debtors' VP of Tax are substantially erroneous, although Debtors offer nothing but vague allegations without proof.

5. In paragraph 14 of the Motion, the Debtors cite certain Texas Tax Code Sections setting forth that, in assessing the Property for the tax year 2023, the various taxing assessors were required to determine the fair market value of the Property, "appraised at its market value as of January 1 of the applicable tax year" and "determined by the application of generally accepted appraisal methods and techniques".  The Debtors, however, omit a relevant portion of Texas Tax Code Section 23.01(b) from their assertions, being: "If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards ***must*** (emphasis added) comply with the Uniform Standards of Professional Appraisal Practice.  The same or similar appraisal methods and techniques ***shall*** (emphasis added) be used in appraising the same or similar kinds of property.  Further, the Debtors' asserted definition of market value is correct; however, the proper statute citation is Texas Tax Code §104(7) not Texas Administrative Code §9.4251, which pertains to Arbitration of Appraisal Review Board Determinations.  The McCreary entities would further show that "Appraised value" is also a defined term in *Texas Tax Code §104(8)* - "the value of property determined under the appraisal methods and procedures of Tax Code, Chapter 23" and the Texas Constitution, Article VIII Section 1(a) provides that "taxation shall be equal and uniform.  Section (b) provides that all tangible real and personal property in the State, unless exempt as required or permitted by said Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

6. In paragraph 15 of the Motion, the Debtors again omit a crucial part of the fair market requirement – that the Property be exposed with a ***reasonable time*** (emphasis added) for the seller to find a purchaser.  As to inventory, *Texas Tax Code §23.12* is applicable.  ". (a) Except as provided by Sections 23.121, 23.1241, 23.124, and 23.127, the market value of an

3

inventory is the price for which it would sell as a unit to a purchaser who would continue the business.  (b) The chief appraiser shall establish procedures for the equitable and uniform appraisal of inventory for taxation. In conjunction with the establishment of the procedures, the chief appraiser shall: (1) establish, publish, and adhere to one procedure for the determination of the quantity of property held in inventory without regard to the kind, nature, or character of the property comprising the inventory; and (2) apply the same enforcement, verification, and audit procedures, techniques, and criteria to the discovery, physical examination, or quantification of all inventories without regard to the kind, nature, or character of the property comprising the inventory. (c) In appraising an inventory, the chief appraiser shall use the information obtained pursuant to Subsection (b) of this section and shall apply generally accepted appraisal techniques in computing the market value as defined in Subsection (a) of this section.

7. The Debtors state that use of sales data from applicable stores, unrelated stores, and third-party discount value sites are appropriate measures of value.  These figures are not pertinent and contradict the Texas Tax Code requirements regarding appraisal.

8. The Debtors assert that bringing the valuation to the Bankruptcy Court under 11 U.S.C. §505 will result in an expeditious judicial determination.  The McCreary entities dispute this assertion.  Discovery as well as a separate evidentiary hearing for each taxing jurisdiction will be necessary, placing a significant burden on the Court.  The Texas administrative process is not cumbersome.  In fact, the Debtors have been availing themselves of same since May 2023 without prejudice to themselves.  The Texas Counties will, conversely, be severely prejudiced, especially financially, if these matters are heard in New Jersey.

4863-6987-4056, v. 1

9. The value of the Property has already been properly established in accordance with the requirements of the Texas Tax Code and the 2023 tax amounts have been properly assessed.

## REQUEST FOR THE COURT TO EXERCISE PERMISSIVE ABSTENTION

10. Under 11 U.S.C. §505(a)(1) the Court **may** (emphasis added) determine tax liability. The Court is not mandated to do so. *In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001), *In re Beisel,* 195 B.R. 378, 379 (Bankr.S.D.Ohio 1996) ("The bankruptcy court's ability to abstain is premised on Congress' use of the word "*may*" in §505."). Further, under 28 U.S.C. §1334(c)(1), "except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11". The factors frequently cited by the courts in deciding whether to abstain include the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the bankruptcy court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the taxing authority. *In re Hunt*, 95 B.R. at 445.

11. While the tax issues in this matter are not complex, they are fact specific to each store and taxing jurisdiction. Texas has a streamlined established statutory process for a taxpayer to challenge taxable values. Having the matter heard in New Jersey will not expedite administration of the estate. This matter will require lengthy discovery and numerous separate trials before the Court. It will require at least one person from each Appraisal District to travel to New Jersey to testify, along with that Appraisal District's counsel. It is more efficient for the Debtors to continue to avail themselves of the appeals process in each Texas jurisdiction,

although it is antithetical for the Debtors to challenge their own asserted values. Further, requiring the Texas taxing jurisdictions to address this matter in New Jersey is burdensome and costly to the state entities involved here. Government resources should be conserved not exploited.

12. Another touchstone of the abstention inquiry is the substantive law governing the material issues. When bankruptcy issues are at the core of a dispute, it would not make sense for a bankruptcy court to abstain from deciding those matters over which it has particular expertise. Here, Texas tax law is the substantive law. Although the Court is capable of making a determination in this matter, the Court would be required to conduct a fact-intensive appraisal process under Texas law. Texas has venues better suited for the determinations at hand. Further, it is imperative to the integrity of the Texas ad valorem taxing system that uniformity of assessment be maintained as required by the Texas Constitution Article VIII Section 1(a) - "taxation shall be equal and uniform".

13. Another consideration in abstention is the impact on the Debtor. *In re Smith*, 122 B.R. 130, 133-134 (Bankr. M.D.Fla. 1990). The *Smith* court declined to exercise its discretion because doing so would not assist the debtor with a fresh start. The Court may abstain from making a § 505(a) valuation if the impact of abstention on the general administration of the estate, and on the Debtor, is minimal or nonexistent. *In re American Motor Club, Inc.*, 139 B.R. 578, 581 (Bankr. E.D.N.Y. 1992). The Debtors herein are not in need of a fresh start. They have liquidated. They have confirmed a Plan. They are holding the proceeds of the sales. The Debtors will not be prejudiced by paying their rightfully due taxes.

4863-6987-4056, v. 1

## TEXAS BUSINESS PERSONAL PROPERTY TAX TIMELINE

14. On January 1st of each year, a tax lien attaches to property to secure the payment of all taxes, penalties and interest ultimately imposed for the year on the property. *Texas Tax Code §32.01*. Said tax lien takes priority over most other liens. *Texas Tax Code §32.04, 32.05.*

15. A taxpayer is required to render for taxation, by April 15 of each year, to each appraisal district in which the taxpayer, as of January 1, owns tangible personal property used for the production of income. *Texas Tax Code Chapter 22*. The Debtors submitted a rendition for each tax account.

16. The chief appraiser is to mail notices of appraised value for properties other than single-family homesteads by May 1st or as soon as practicable thereafter. *Texas Tax Code §25.19.*

17. A taxpayer may protest a notice of appraised value with the established Appraisal Review Board (ARB) by May 15 or by the 30th day after notice of appraised value is delivered, whichever is later. *Texas Tax Code §41.44.*

18. The tax assessor mails tax bills on October 1, or as soon after as practical. *Texas Tax Code §31.01.*

## THE APPEALS PROCESS

19. As stated in paragraph 16 above, a taxpayer can challenge the appraised value of property by timely filing a protest with the Appraisal District. The matter then goes before an Appraisal Review Board (ARB), which is a group of citizens that hears taxpayer protests. A taxpayer can appear in person, offer evidence by affidavit, or appear telephonically or by video. A taxpayer can appoint an agent to act in its place. The process is not burdensome.

20. *Texas Tax Code §41.41* sets forth the actions that a property owner can protest before the appraisal review board. The only action applicable in this case is (1) determination of the appraised value of the owner's property. Bed Bath & Beyond filed such protests with the ARBs on all accounts on which they seek to challenge the value. Once the debtors filed their protests, the ARB set hearings on each. The debtors had the opportunity to offer evidence or argument by affidavit without personally appearing and were able to appear by telephone conference call or videoconference to offer argument. *Texas Tax Code §41.45(b)*. If the Debtors oppose the ruling of an ARB, they have the option to seek arbitration or to file a lawsuit with the district court within 60 days of the ARB Order. *Texas Tax Code §41A.03, 42.21*. Information regarding this is clearly available on each CAD's website and is required to be prominently displayed to taxpayers.

21. After making a determination or decision, the ARB, by written order, directs the chief appraiser to correct or change the appraisal records or the appraisal roll to conform the appraisal records or roll to the board's determination or decision. *Texas Tax Code §41.02.*

## **APPRAISAL DISTRICT VS. TAX ASSESSOR/COLLECTOR**

22. An appraisal district and a tax assessor/collector are separate and distinct entities with separate and distinct statutory duties. An appraisal district appraises all real and business personal property within a county, according to the Texas Tax Code and the Uniform Standards of Professional Appraisal Practices (USPAP). The Texas Constitution Article 8, Section 14 requires the voters of a county to elect an Assessor and Collector of Taxes. The Tax Assessor-Collector has specific duties as outlined in the Texas Constitution and by state statutes, which include the collection of ad valorem taxes for the county, as well as contracting with other entities to collect their jurisdictions' taxes. While in many cases, the appraisal district does not

collect ad valorem taxes, in Bowie, Midland, and Taylor Counties, the Appraisal District does also collect the taxes. An appraisal district is a political subdivision of the state. *Texas Tax Code §6.01*

### DEBTOR'S OBJECTIONS TO THE ENUMERATED CLAIMS SHOULD BE ABATED PENDING DETERMINATION OF THE TAX APPRAISAL VALUES OF THE APPLICABLE TAXABLE PROPERTY

23. Calculation of each claim amount is a simple mathematical formula. The appraised value of property is multiplied by the established tax rates for the applicable jurisdiction. The applicable 2023 tax rates, per $100.00 of value are set forth on the attached Exhibit A. The debtors have not challenged the tax rates.

### RENDITIONS

24. A rendition is a form on which a business is required to provide the appraisal district with the description, location, cost and acquisition dates for business personal property it owns. The appraisal district uses the information to help estimate the market value of the property for taxation purposes. An owner of tangible personal property that is used for the production of income is required to "render" by each April 15th to each Appraisal District in which the owner owns such property. If a person or business was in business on January 1st of a tax year, they owe taxes for the year. Rendered property includes furniture, fixtures, equipment, machinery, computers, and inventory held for sale. The rendition is then analyzed by the Appraisal District along with other information it collects on similar businesses to develop an estimated value of the property.

25. The Debtors' Vice President of Tax submitted the Bowie store's rendition in mid-April 2023. She stated that the value of inventory, at cost, plus depreciated furniture, fixtures, signs, and computer equipment was $663,136.00. <u>This is the taxable value assessed by Bowie</u>.

9

The Debtors subsequently protested the value they had provided; the ARB did not change the value.

26. The Debtors' Vice President of Tax submitted the Brazos store's rendition in mid-April 2023. She stated that the value of inventory, at cost, plus depreciated furniture, fixtures, signs, and computer equipment was $980,945.00. The Debtors have a pending protest, scheduled for hearing on October 24, 2023. Brazos' taxable value is only 0.3% higher than rendered by the Debtors, being $983,811.00.

27. As to Denton, Guadalupe, and Hays Counties, the undersigned do not have access to the rendered values. The taxable values set by each applicable CAD are reflected on the attached Exhibit A. The largest Denton account is a distribution center, not a store location.

28. The Debtors' VP of Tax submitted a rendition for the Midland store. The assessed value is $1,347,908.00. The Debtors submitted a protest form and an ARB hearing was held August 7, 2023. The ARB found that the appraised value was not excessive and that the appraisal records should not be changed.

29. The rendition to Taylor was also submitted by Debtors' Vice President of Tax, dated April 11, 2023, received April 19, 2023. She provided a total rendered value of $611,431.00. The CAD adjusted the total valuation to $633,520.00 – a 3.4% difference.

30. The McLennan rendition, again submitted by the Debtors' VP of Tax, reflects a rendered value by the Debtors totaling $1,098,693.00. McLennan CAD assessed a value of $1,017,490.00, which is <u>7.4% LOWER THAN VALUE ASSERTED BY DEBTORS</u>. Despite these facts, the Debtors protested the valuation administratively. On or about July 13, 2023, John Lammert of Assessment Technologies, Ltd. signed a "Joint Motion Agreed Disposition Without Waiver of Appeal" with the McLennan County Appraisal District in which he <u>AGREED</u> to

4863-6987-4056, v. 1

resolve the value protest for the total assessed value of $1,017,490.00. One (1) to two (2) days thereafter, he signed a notarized affidavit of value asserting that value should be only $190,118.00.

31. The Debtors support their pending Motion with said affidavit of John Lammert. In his affidavit attached to the Motion, John Lammert states he has identified assets that should be reduced or disputed based upon the records maintained by the Debtors in the ordinary course of business. He does not specifically identify those records. As previously stated, the renditions which the Debtors submitted constitute records maintained by the Debtors in the ordinary course of business. A majority of the assessed values are the same value as rendered by the Debtors, lower than the rendered values, or only slightly higher than the rendered values. The "Joint Motion Agreed Disposition Without Waiver of Appeal" with the McLennan County Appraisal District in which Mr. Lammert AGREED to resolve the value protest for the total assessed value of $1,017,490.00 is another business record of the Debtors as he is their appointed agent in this tax challenge. Mr. Lammert also states that he has relied on other materials, also not specifically identified, and the Debtors' sales data, which is irrelevant to valuation as of the required date of January 1, 2023 and the statutory definition of fair market value. He further relies on a third-party for-profit firm Property Tax Research Services, also irrelevant to the determination. Use of the sale data is erroneous because the sales occurred after January 1, 2023 and at least some of the sales were not based on arms-length transactions between the Debtors and the purchasers. By the end of the liquidation process, the sales were likely "fire sales", aimed at moving the remaining merchandise out of the stores. Further, there is no indication how much merchandise remained upon the store closings or whether said merchandise was redirected to a warehouse for further sale or other disposition. The Debtors have furnished NO documents in support of their

4863-6987-4056, v. 1

assertions. They have simply made vague, unsubstantiated allegations by an outside company that is a for-profit company focused on reducing commercial property taxes. The renditions were submitted at or about the date the Debtors filed their bankruptcy petitions and were submitted by the Debtors themselves, through their Vice-President of Tax who presumably would be familiar with the company assets and the values thereof. Further, not once does Mr. Lammert reference the requirement that appraisal district use Uniform Standards of Professional Appraisal Practice be used. Based on Mr. Lammert's significantly different assertions within two (2) days as to the McLennan value, the McCreary entities assert that his sworn statements should be taken with a grain of salt.

### THE MCCREARY ENTITIES' POSITION AND REQUESTS FOR RELIEF

32. (a) The Court should deny the Motion for lack of proof and incorrect assertions of law.

(b) The Court should abstain from hearing this Motion.

(c) If the Court does not abstain, the Court should abate the claims objections and enter scheduling orders for discovery and trial dates for each taxing entity on the valuation issue.

33. The McCreary entities hereby incorporate any and all additional arguments asserted by the other Texas Taxing Authorities.

### PRAYER

WHEREFORE, the McCreary entities respectfully request that the Debtors' Motion be denied. Alternatively, the McCreary entities request that the Court abstain from hearing the Motion, or if the Court does not abstain, abate the claims objections and enter scheduling orders. The McCreary entities further request that the Court order such other and further relief to which they demonstrate themselves entitled herein.

Dated: Roseland, NJ

October 17, 2023

        MANDELBAUM BARRETT PC

        By: /s/ Vincent J. Roldan
        Vincent J. Roldan
        3 Becker Farm Road
        Roseland, NJ 07068
        (973) 736-4600

        and

        */s/ Julie Anne Parsons*
        Julie Anne Parsons
        Texas State Bar No. 00790358
        McCREARY, VESELKA, BRAGG & ALLEN, P.C.
        P. O. Box 1269
        Round Rock, TX 78680-1269
        Telephone: (512) 323-3200
        Fax: (512) 323-3205
        Email:  jparsons@mvbalaw.com

        *Counsel for The McCreary Entities*