Auditor-Controller-Treasurer-Tax Collector for the
County of San Luis Obispo
1055 Monterey St., Suite D-290 (Attn: Justin Cooley)
San Luis Obispo, California 93408
Telephone (805) 781-5852
Email: jcooley@co.slo.ca.us

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No.: 23-13359 (VFP) |
| BED BATH & BEYOND INC., et al., | Chapter 11 |
| Debtors, | **SAN LUIS OBISPO COUNTY TREASURER-TAX COLLECTOR'S RESPONSE TO DEBTOR'S SECOND OMNIBUS OBJECTION TO CERTAIN TAX CLAIMS AND OPPOSITION TO MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS** |
|  | Date:  October 24, 2023 |
|  | Time: 10:00 a.m. (ET) |
|  | Judge: Honorable Vincent F. Papalia |
|  | Courtroom: 3B |

Respondent Creditor, County of San Luis Obispo Treasurer-Tax Collector

("SLOTTC"), hereby responds to the Notice of Debtors' (I) Second Omnibus Objection

to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings.

## I.    INTRODUCTION

The Debtors request a determination by the Court concerning their property tax

liabilities respecting various taxing authorities, including SLOTTC, pursuant to Section

505(a) of the Bankruptcy Code.  The Debtors contend, without evidence, that the

assessment values of their properties and tax liabilities are excessive and inaccurate.

1    However, Debtors appear to rely on their post lien date sales to value their property rather

2    than an accepted valuation methodology under California Law.

3        Section 505 of the Bankruptcy Code is discretionary, and Creditor, SLOTTC asks

4    that the court abstain from entertaining Debtors' motion.  Property tax assessment in

5    California is complex, and a New Jersey Court would be required to apply substantive

6    California law on issues that are intended to be decided by a local Assessment Appeals

7    Board ("AAB") under the California Constitution, placing the uniformity of assessment

8    at great risk.  In addition, the burden to the court would be tremendous given the amount

9    of properties at issue and the requirement under California law that taxes be based on the

10   situs of the property.  Finally, there is a substantial burden to the County, as all of its

11   appraiser staff and their legal advisor, Office of County Counsel, are located exclusively

12   in California.

13       The Debtors' Motion does not comport with the purpose and objectives established

14   under Section 505(a) of the Bankruptcy Code, and Debtors have not overcome the

15   presumptive validity of SLOTTC's claim.  SLOTTC respectfully requests the Court deny

16   this Motion, in its entirety. Should the Court decline to abstain from hearing this matter,

17   the County hereby objects to the Debtors' introduction of any evidence at the hearing on

18   the Motion, including, without limitation, the "appraisal", and other evidence which

19   could not have been considered pursuant to applicable non-bankruptcy law.

20   **II.    STATEMENT OF FACTS**

21       1.    On April 23, 2023 (the "Petition Date"), the Debtors filed a voluntary

22   petition for relief under Chapter 11 of Title 11 of the United States Code (the

23   "Bankruptcy Code").

24       2.    On or about July 17, 2023, SLOTTC timely filed a Proof of Claim for

25   unsecured tax bill 2023/24 800,028,061 (Case No. 23-13371) in the amount of

26   $17,362.76 (the "Unsecured Priority Tax Claim"; see attached).  The Proof of Claim is

27   presumptively valid.  Fed R. Bankr., Rule 3001, subd. (f).

28       3.    As of January 1, 2023, Debtors operated one retail store location in the

2

1   County of San Luis Obispo.  (Declaration of James J. Mallon ¶ 6.)

2       4.     The Assessor is required to annually assess taxable business personal

3   property as of the lien date (January 1st).  Business Personal Property includes all

4   "Equipment out on lease, rent, or conditional sale to others" used in the operation of a

5   business.  Business Personal Property is reported to the Assessor annually on a form

6   known as the Business Property Statement (Form 571-L).  (Mallon Decl. Decl. ¶ 3.)

7       5.     Form 571-L constitutes an official request from the Assessor for the

8   taxpayer to declare all assessable business property situated in the county which the

9   taxpayer owned, claimed, possessed, controlled, or managed on the tax lien date, and that

10   the taxpayer signs (under penalty of perjury). Failure to file the statement during the time

11   provided in section 441 of the Revenue and Taxation Code will compel the Assessor to

12   estimate the value of such property from other information in the Assessor's possession

13   and add a penalty of 10 percent of the assessed value as required by section 463 of the

14   Revenue and Taxation Code. (Mallon Decl. ¶ 4.)

15       6.     On or about May 11, 2023, Debtors filed their 2023 571-L business property

16   statement with the Assessor, with the statement signed true, correct, and complete by

17   their VP of Tax. (Mallon Decl. ¶ 7.)  The Assessor assessed the property exactly as it was

18   reported by Debtors.  (*Id.*)

19       7.     SLOTTC is responsible for the collection of ad valorum taxes assessed

20   against real property and personal property located in the County of San Luis Obispo.

21   *See* Cal. Rev. & Tax. Code §2903.

22       8.     SLOTTC issued a tax bill for fiscal year 2023 for the personal property,

23   leasehold improvements and fixtures located within the location operated by Debtors

24   based on the Assessor's valuation. (Mallon Decl. ¶ 8; see Unsecured Priority Tax

25   Claim.) This tax bill represents SLOTTC's Unsecured Priority Tax Claim.

26       9.     Debtors incurred the tax liabilities claimed due pursuant to California

27   Revenue & Taxation Code §§ 2191.3, 2191.4 and 2193. (Mallon Decl. ¶ 9.)

28

10.    The 2023 tax bills are entitled to priority under section 507(a)(8) because it was last due and payable without penalty within one year before the date the Debtors filed the instant petition.

## III.    COMPLEXITY OF CALIFORNIA PROPERTY TAX PROCEDURE

The basis for assessment of all real and personal property in California is the California Constitution. Specifically, all property tax assessments are established by the provisions of either article XIII or article XIII A (the constitutional article adopted following the passage of Proposition 13). The California Constitution requires uniformity of taxation of all property in California (Cal. Const., art. XIII, § 1) and requires that all property be assessed in the county, city, and district in which it is situated. Cal. Const., art. XIII, § 14.

There are several steps for property taxation in California, all of which are governed by numerous standards, procedures, and protections to ensure fair and uniform application of local property tax assessments.  The vast majority of the state Legislature's enactments with respect to ad valorem assessment are found in the California Revenue and Taxation Code (hereinafter "R&T Code").  In addition, The State Board of Equalization ("BOE") is mandated to prescribe rules and regulations to govern local boards of equalization when equalizing, and county assessors when assessing, in compliance with the rulemaking procedures adopted by the California Office of Administrative Law.  Pursuant to that mandate, the BOE has adopted various Property Tax Rules which are contained in Title 18 of the California Code of Regulations.  These rules can be found at https://www.boe.ca.gov/proptaxes/ahcont.htm (last visited October 13, 2023) (hereinafter and cited to as "Property Tax Rules").[1]

Finally, local Assessors additionally rely on the Assessors' Handbook, which

> "is a series of manuals developed by the staff of the [BOE] in an open
> process. The objective of the Assessors' Handbook is to give county

---

[1] Section 15606, subdivision (c) of the Government Code authorizes that the State Board of Equalization ("SBE") will "prescribe rules and regulations to govern local boards of equalization when equalizing..."

4

1    assessors, their staff, and other interested parties an understanding of the

2    principles of property assessment and real and personal property appraisal

3    for property tax purposes. Additionally, the Assessors' Handbook presents

4    the BOE staff's interpretation of rules, laws, and court decisions on property

5    assessment." (See https://www.boe.ca.gov/proptaxes/ahcont.htm, last

6    visited October 13, 2023).

7    **A. <u>Assessment of Personal Property</u>**

8    The standard of valuation prescribed by the Legislature is that "[all] taxable

9    property shall be assessed at its full cash value." Cal. Rev. & Tax. Code, § 401. "Full

10    cash value," as defined in section 110 of the R&T Code, "means the amount at which

11    property would be taken in payment of a just debt from a solvent debtor." Cal. Rev. &

12    Tax. Code, § 110.  "It provides…for an assessment at the price that property would bring

13    to its owner if the property were offered for sale on an open market under conditions in

14    which neither buyer nor seller could take advantage of the exigencies of the other." *De*

15    *Luz Homes, Inc. v. County of San Diego*, 45 Cal. 2d 546, 562 (Cal. 1955). Therefore, the

16    definition of fair market value does not include the sales transactions by a debtor in

17    bankruptcy. Notably, the net earnings to be capitalized are not those of the present owner

18    of the property, but those that would be anticipated by a prospective purchaser. *Id.*

19    Assessors generally estimate value by analyzing market data on sales of similar

20    property, replacement costs, and income from the property (see 1 Bonbright, Valuation of

21    Property, pp. 113-266; American Institute of Real Estate Appraisers, The Appraisal of

22    Real Estate, pp. 75-85; Fisher, Real Estate in California, p. 157), and since no one of

23    these methods alone can be used to estimate the value of all property, the assessor,

24    subject to requirements of fairness and uniformity, may exercise his discretion in using

25    one or more of them (see *Utah Const. Co.* v. *Richardson*, 187 Cal. 649, 652-653 (Cal.

26    1921); *Southern Calif. Tel. Co.* v. *County of Los Angeles*, 45 Cal.App.2d 111, 116-118

27    Cal. App. 3d. 1941). Significantly, with regard to personal property taxes, the assessment

28    is made based upon information supplied by the taxpayer. (Mallon Decl. ¶¶ 4-7.)

**B. <u>Review of Property Tax Assessment by the Assessment Appeals Board</u>**

1

2   A property owner dissatisfied with the annual assessment must first file an

3   application for reduction with the AAB, which has authority to "equalize the values of all

4   property on the local assessment roll by adjusting individual assessments." Cal. Const.,

5   art. XIII, § 16; Cal. Rev. & Tax. Code §1603(a). The AAB is an independent quasi-

6   judicial constitutional body, separate, apart, and independent of the Assessor's Office.

7   See, e.g., *Westinghouse v. County of LA*, 42 Cal. App. 3d 32, 42 fns. 6 and 7 (Cal. 1974)

8   (explaining that "[t]he special expertise in property valuation assignable to county boards

9   of equalization justifies their classification as judicial bodies by California Constitution

10  article XIII, section 9…").

11  The functioning of the AAB is governed by sections 1601 through 1645.5 of the

12  R&T Code and sections 301 through 326 of the Property Tax Rules. Section 1604(c) of

13  the R&T Code requires the AAB to hear evidence and make a final determination on an

14  application for reduction of assessment of property within two (2) years of timely filing

15  of the application. Cal. Rev. & Tax. Code §1604(c).

16  In appeals involving personal property and fixtures, it may be necessary for the

17  assessor to perform an audit of the taxpayer's records to reach a final value conclusion.

18  The Assessor would also be required to appear at the hearing to defend its valuation, only

19  after the taxpayer met its burden, and would do so based on accepted valuation

20  methodologies prescribed within the R&T Code. (Mallon Decl. ¶ 14.)

21  Subject to exceptions set by law, it is presumed that the assessor has properly

22  performed official duties. Cal. Evid. Code § 664; 18 C.C.R. §321, subd. (a); *Texaco

23  Producing v. County of Kern*, 66 Cal. App. 4th 1029 (Cal. 1998). The effect of this

24  presumption is to impose upon the applicant the burden of proving that the value on the

25  assessment roll is not correct, or where applicable, the property in question has not been

26  otherwise correctly assessed. Cal. Evid. Code § 660; *Texaco Producing, supra*, at p.

27  1046. The law requires that the applicant present independent evidence relevant to the

28  ///

1  full value of the property or other issue presented by the applicant. 18 C.C.R. § 321,

2  subd. (a).

## IV.   ARGUMENT

### A. Abstention is Proper

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court has "broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Sarfani, Inc. v. Miss. Dept. of Revenue (In re Sarfani, Inc.)*, 527 B.R. 241, 252 (Bankr. N.D. Miss. 2015). Section 505(a)(1) provides an additional basis for permissive abstention, because it provides that a court *may*, but is not required to, determine a debtor's tax liabilities. *Id.*

Bankruptcy courts tend to abstain from hearing the majority of these cases and these particular courts have referred to the traditional abstention principles where the determination of taxes would not benefit the bankruptcy estate or the unsecured creditors, or in those particular cases where such determination would interfere with the uniformity of tax assessment associated with the specific tax jurisdiction in question.

Specifically, Bankruptcy courts have properly looked to a number of factors when deciding whether to exercise their authority under section 505, including: "the complexity of the tax issue; (2) the need to administer the bankruptcy case in an expeditious fashion; (3) the burden on the bankruptcy court's docket; (4) the length of time necessary to conduct the hearing and to render a decision thereafter; (5) the asset and liability structure of the debtor; and (6) the potential prejudice to the debtor, the taxing authority, and creditors." *In re New Haven Projects Ltd. Liability Co.*, 225 F.3d 283, 289 (2d Cir. 1999) (finding that unsecured creditors would not meaningly benefit from section 505 review and such review would frustrate the purpose of the statute). See also *In re Lyondell Chem. Co.*, 2010 Bankr. LEXIS 1271 at *6 (Bankr. S.D.N.Y. Apr. 19, 2010) (finding these factors weighed in favor of abstention); *ANC Rental Corp. v. Dallas County (In re ANC Rental Corp.)*, 316 B.R. 153, 159 (Bankr. D. Del. 2004); *In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D.N.Y. (1990) (exercising discretion to abstain based on these factors).

1.  <u>California Property Tax Law is Complex and Equalization Should be in the
Hands of the Local Assessment Appeals Board.</u>

As detailed in Section III above, California property tax law is extremely complex. Debtors now attempt to ignore this complexity and ask the court to take an approach to valuation that is not consistent with California law, which the court must apply if it were to consider the 505 motion. See *CM Reed Almeda 1-3062, LLC v. Harris Cnty. (In re CM Reed Almeda 1-3062, LLC)*, 2017 Bankr. LEXIS 1155, *24-25 (BAP 9th Cir. 2017).

There are three major appraisal approaches for estimating value (cost, comparative sales, and income). The nature of the property, its market, and the availability of data will normally indicate which approach(es) is most applicable. This is supported by Property Tax Rule 3, which states in part: "In estimating value as defined in section 2, the assessor shall consider one or more of the following [approaches to value], as may be appropriate for the property being appraised." 18 C.C.R. § 3. Moreover, Property Tax Rule 324 requires that the taxpayer appealing an assessment value "shall be bound by the same principles of valuation that are legally applicable to the assessor." 18 C.C.R. § 324. Although Debtors discuss fair market value in their motion, Debtors make no reference to any other principles governing valuation in California. See Lambert Decl. ¶¶ 1-14. There is simply no basis for the court to analyze Debtors' tax liability differently simply because Debtors filed bankruptcy. See *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000).

There is an efficient review process available to Debtors within each of the local taxing authorities' jurisdictions, and "it seems most appropriate that the debtor in chapter 11 proceed with the systems already in place" for determining its state tax liability, "rather than substituting this court for that process." *In re the Village at Oakwell Farms, Ltd.*, 428 B.R. 372, 375 (Bankr. W.D. Tex. 2010). This is particularly so when the debtor is asking a New Jersey bankruptcy court to determine California tax issues; "why should this court 'start from scratch' when there is a more efficient tribunal that can determine the valuation issues under applicable state law?" *In re CM Reed Almeda 1-3062, LLC*, 2017 Bankr. LEXIS at *24-25; see also *In re Altegrity, Inc.*, 544 B.R. 772, 778 (Bankr.

8

1  D. Del. 2016) (Delaware bankruptcy court abstained from determining debtor's

2  Oklahoma tax liability, because debtor was already pursuing relief before Oklahoma Tax

3  Commission).

4      2. Uniformity of Assessment is at Stake

5      Many courts have found abstention to be appropriate when uniformity of

6  assessment is at issue. *Central Valley Ag Enterprises*, 531 F.3d 750, 764 (9th Cir. 2008)

7  (recognizing that uniformity of assessment is a basis for abstention); *In re New Haven*

8  *Products Ltd. Liability Co.*, 225 F.3d at 288 (same); *In re Cable & Wireless USA, Inc.*,

9  331 B.R. 568, 577-78 (Bankr. D. Del. 2005) ("Each tax authority must enjoy and apply a

10  uniformity of assessment within its tax jurisdiction."); *In re ANC Rental Corp.*, 316 B.R.

11  163,159 (Bankr. D. Del. 2004) (abstention is often used where uniformity of assessment

12  is an issue); *Metromedia Fiber Network, Inc. v. Various State and Local Taxing*

13  *Authorities (In re Metromedia Fiber, Inc.)*, 299 B.R. 251, 281 (Bankr. S.D.N.Y. 2003).

14  Additionally, it would be prejudicial to California counties to have a New Jersey

15  bankruptcy court determine the state tax issues implicated in the 505 Motion. *In re ANC*

16  *Rental Corp.*, 316 B.R. at 159 (finding that a local taxing authority in Texas would "be

17  significantly prejudiced by having the taxes at issue determined by a Delaware court.")

18      Further, County Assessors are required to attend and present evidence at a hearing

19  on the appeal of an assessment. They should not be required to travel out of state,

20  unrepresented by County Counsel, to present evidence in New Jersey bankruptcy

21  proceedings. A valuation hearing in New Jersey would be very burdensome on the

22  Assessor. Assessor staff is located exclusively in the County of San Luis Obispo within

23  the State of California. Assessor staff only appear in administrative proceedings before

24  the Assessment Appeals Board, which are not formal court proceedings. (Mallon Decl.

25  ¶¶ 16-17.) The County's legal advisor is the County Counsel, and Deputy County

26  Counsel Ann Duggan is the specific legal advisor to the Assessor. Ms. Duggan is not

27  barred in New Jersey and is unable to represent the Assessor at a valuation hearing in a

28  New Jersey court. *Id.*

1    Uniformity of Assessment is of the utmost importance to the Assessor and required

2    under the California Constitution.  This uniformity will be placed at risk should an out of

3    state court, rather than our local Assessment Appeals Board, make a valuation

4    determination at a hearing without the Assessor present, and based on valuation methods

5    that are not accepted under the R&T Code.  (Mallon Decl. ¶ 18.)

6       3.  The Court's Consideration of the 505 Motion Will Unnecessarily Burden the

7          Court

8        Debtors failed to present any evidence to demonstrate that the court's consideration

9    of their 505 Motion would result in a more efficient administration of this estate.  In fact,

10   Debtors ignore the tremendous burden a 505 determination would place on the court's

11   docket.  Debtors are not just contesting the tax liability in a single County, Debtors are

12   contesting tax liability in 26 separate and distinct counties.  See Doc. No. 2180

13   (contesting liability in nine different counties) and Doc. No. 2181 (contesting liability in

14   17 additional different counties).  In addition, some of the counties, have numerous

15   property tax bills at issue.

16       California property tax law does not permit the bulk valuation of property across

17   counties.  Instead, the California Constitution requires that all property be assessed in the

18   county, city, and district in which it is situated. Cal. Const., art. XIII, § 14.   Therefore,

19   each county's assessment should be determined at a separate and distinct evidentiary

20   hearing.  It is unclear how 27 separate hearings in a New Jersey Bankruptcy Court on

21   California property tax issues promotes the purpose of section 505.  Given this court's

22   other commitments, there is no reason to believe that it could hear and determine the

23   issues Debtors have raised more efficiently than the counties' local AABs, which are

24   designed exclusively for this purpose.  Moreover, because the R&T Code requires that

25   the hearing take place within two years, there is not a risk of delay.

26       Debtors have not set forth any argument or evidence as to how this court's Section

27   505(a)(1) determination would benefit other creditors or result in the efficient

28   administration of this case.  Instead, it appears that Debtors are attempting to circumvent

10

1   state property tax law and avoid paying priority tax claims, thereby benefiting only the

2   Debtors (and unreasonably burdening the creditors).

3   **B. Debtors Valuation Does Not Comply with Property Tax Rules**

4    Even if the Court were to determine the valuation of Debtors' property under section

5   505, Debtors have not met their burden. As explained above, the property owner has the

6   burden of proving that the assessor has improperly valued the property, and Debtors are

7   bound by same methods of valuation as the Assessor. Debtors cannot meet this burden

8   because their appraisal completely ignores the approaches to value accepted under

9   California law. (See Lambert Decl. ¶¶ 1-14.)

10   Rather than asking this court to apply state law, as the court is required to do, Debtors

11  appear to be arguing that the valuation methods prescribed under the laws of California

12  are erroneous. (See Lambert Decl. ¶ 5 [blanketly attacking the valuation methods used

13  across the state of California].) Debtors then attempt to circumvent state law by lumping

14  all the assessments of their property across jurisdictions together and asking this court to

15  consider its post lien date sales during Debtors' insolvency. (See Lambert Decl. ¶¶ 6-13;

16  Mallon Decl. ¶¶ 3,15.)

17   Contrary to Debtors' argument, "full cash value," as defined in section 110 of the

18  R&T Code, "means the amount at which property would be taken in payment of a just

19  debt from a *solvent* debtor." Cal. Rev. & Tax. Code §110 (*emphasis added*). It does not

20  include sales Debtor made after the lien date under exigent circumstances. Per the

21  Assessor's Handbook, sales of assets from a bankruptcy estate should not necessarily be

22  considered valid indicators of market value under the definition of Revenue and Taxation

23  Code section 110. See Assessors' Handbook 504, p. 50, 130 (recognizing that the buyer

24  of property from a bankrupt's estate has the ability to take advantage of the exigencies of

25  the seller).

26  **C. Debtors Have Not Produced Sufficient Evidence to Negate the Prima**
    **Facie Validity of the Tax Collector's Claim**

27

28   It is well settled that the timely filing of a Proof of Claim is prima facie evidence of

    the validity and amount of the claim pursuant to Federal Rule of Bankruptcy Procedure

11

1  3001(f). See also, *In re Mid-American Waste Sys.*, 284 B.R. 53, 65 (Bankr. Del. 2002).

2  Once a proof of claim is properly executed and filed "it is a debtor who bears the initial

3  burden of going forward to produce evidence sufficient to negate the prima facie validity

4  of the filed claim." *In re Desert Village Ltd. P'ship*, 321 B.R. 443, 446 (Bankr. N.D.

5  Ohio 2004) (emphasis added) (citing *Morton v. Morton (In re Morton)*, 298 B.R. 301,

6  307 (B.A.P. 6th Cir. 2003); see *In re Allegheny International, Inc.*, 954 F.2d 167, 176 (3d

7  Cir. 1992) (burden shifts to objector to produce sufficient evidence to negate the prima

8  facie validity of the filed claim); *In re Planet Hollywood International*, 274 B.R. 391, 394

9  (D.Del. 2001). "This evidence must be a probative force equal to that of the creditor's

10  proof of claim." *In re Hinkley*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986), aff'd., 89 B.R.

11  608, aff'd., 879 F.2d 859. Stated another way, "the objecting party must come forth with

12  evidence which, if believed, would refute at least one of the allegations essential to the

13  claim." *In re Rally*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). Only when "the debtor has

14  met that burden, the burden of going forward shifts back to the creditor, and the creditor

15  bears the ultimate burden of persuasion." *Morton*, 298 B.R. at 307.

16  Moreover, where a claim is based on statute, not a writing, a taxing agency is not

17  required to attach documentation to its proof of claim in order to retain the presumption

18  of validity. *In re Los Angeles Intl. Airport Hotel Assoc.*, 106 F. 3d 1479, 1480 (9th Cir.

19  1997). A debtor taxpayer disputing a tax claim in bankruptcy has the burden of proving

20  it does not owe the tax. *Raleigh v. Illinois Dept. of Revenue*, 530 US 15, 21-26 (2000).

21  Accordingly, SLOTTC retains the presumption of validity and the burden remains

22  with the Debtors to present evidence that the tax claim is invalid, paid, or otherwise

23  inapplicable. See *In re Bryant Tool & Mfg., Inc.*, 16 B.R. 723 (*Bankr. S.D. Fla.* 1982); *In

24  re Vic Snyder, Inc.*, 50 B.R. 631 (Bankr. E.D. Pa. 1985); *In re Lanza*, 51 B.R. 125 (Bankr.

25  D.N.J. 1985); *In re Lipetzky*, 66 B.R. 648 (Bankr. D. Mont. 1986); *In re Brickell Inv.

26  Corp.*, 85 B.R. 164. (Bankr. S.D. Fla. 1988). In the case of tax claims, burden of proof

27  and persuasion is upon debtor taxpayer and Bankruptcy Rule 3001(f) was held not to shift

28  ///

1   the burden of proof to the taxing agency. *In re Cobb*, 135 B.R. 640 (Bankr. D. Neb.

2   1992).

3                                **CONCLUSION**

4          Debtors' 505 Motion involves only state law issues.  Resolution of those issues is

5   more complex than asserted by Debtors, and administration of the bankruptcy estate

6   would not be affected if the court were to abstain.  There are no "core" bankruptcy

7   matters to be severed, and the evidentiary hearing required to determine the 505 Motion

8   would place a burden on the court's docket.  As a result, the court should abstain from

9   determining any of the other tax years at issue in the Motion to Determine Tax

10  Liability Pursuant to 11 U.S.C. § 505.  This Court's exercise of jurisdiction under 11

11  U.S.C. § 505(a)(1) is permissive, and the Court should find that abstention is appropriate

12  in the interests of comity under 28 U.S.C. § 1334(c)(1).

13

14
     DATED: October 16, 2023                CREDITOR COUNTY OF SAN LUIS OBISPO
15                                          TREASURER-TAX COLLECTOR

16
                                            By: _____
17                                                Justin Cooley
18                                                Deputy Director

19

20

21

22

23

24

25

26

27

28