Creditor COUNTY OF SONOMA TAX COLLECTOR
585 Fiscal Drive, Suite 100
Santa Rosa, California 95403
Telephone No.: (707)565-2281
E-mail: erick.roeser@sonoma-county.org

U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ

2023 OCT 18  P 2: 39

JEANNE A. HAUGHTON

BY:_____ CLERK

## IN THE UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>BED BATH & BEYOND, INC., *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>Date: October 24, 2023<br>Time: 10:00 a.m.<br>Courtroom: 3B |

**RESPONSE OF CREDITOR SONOMA COUNTY TAX COLLECTOR TO DEBTORS' SECOND OMNIBUS OBJECTION TO TAX CLAIMS AND OPPOSITION TO MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS AS TO CERTAIN CALIFORNIA TAXING AUTHORITIES**

### I. INTRODUCTION

1. Debtors Bed Bath & Beyond, Inc., et al., ("Bed Bath & Beyond") have filed a Motion to determine tax liability and stay proceedings as to certain California taxing authorities ("the Motion") requesting: (i) a reduction in claims; (ii) a determination of tax liability; and (iii) determination of assessed value and market value on property. Creditor Sonoma County Treasurer-Tax Collector ("Sonoma County"), objects to the Motion on the grounds that: (1) the Court should exercise its discretion and abstain from hearing the Motion; (2) the Motion is unsupported and does not provide Sonoma County with notice of its basis; and (3) the Motion does not present evidence sufficient to overcome the statutory presumption that the Sonoma County Assessor correctly valued the properties in question, the evidence does support the Sonoma County Assessor's valuations, and Bed Bath & Beyond and its advisors have not followed California law in their valuations. Debtors impermissibly rely on post-lien sales to value their property as opposed to the accepted valuation methodology that is to be used under

1

California law. Sonoma County asks this Court to abstain from entertaining Debtors' motion. Should this Court decline to abstain from hearing this matter, Sonoma County contends that Debtors' Motion does not comply with the purposes and objectives of Bankruptcy Code section 505(a) and Debtors have not overcome the presumptive validity of the County of Sonoma's claim. Sonoma County respectfully contends that its claims are correct as submitted and should not be changed.

**II.**

**BACKGROUND**

**CALIFORNIA PROPERTY TAX LAW HAS A**

**COMPLEX SET OF RULES AND PROCEDURES TO ASSURE**

**PROPER VALUATION, AND UNIFORMITY OF APPLICATION**

**OF THESE LAWS IS AN ESSENTIAL STATE POLICY**

2. The California Constitution requires uniformity of taxation of property in California, except as otherwise provided in that Constitution or by Federal Law. (Cal. Const., art. XIII, § 1.)

3. There are several steps for property taxation in California: assessment, equalization, computation, and collection, all designed to achieve as closely as possible the mandated uniformity. The California Constitution establishes public offices to administer these steps and provide interrelated functions in the property tax system. The assessment and equalization functions are governed by numerous standards, procedures, and protections to ensure fair and uniform application of local property tax assessments, and the computation and collection functions are mainly ministerial. Moreover, in many instances California tax appraisal requires methods and techniques that may differ from those of other states or appraisal for non-tax purposes. These may either be for political reasons or to ensure that all taxpayers throughout the state are treated in a similar manner.

4. The Sonoma County Assessor is responsible for the collection of ad valorem taxes assessed against real and personal property. (Cal. Rev. & Tax. Code, §2903.) Property may be assessed by one of three approaches: the income approach; the comparable sales approach; or the

2

reproduction and replacement approach. (Cal. Code Regs., tit. 18, §§ 2-8.) California Code of Regulations, title 18 contains state tax regulations promulgated by the State Board of Equalization. The various property tax rules adopted by the State Board of Equalization in Title 18 of the California Code of regulations can be found here: https://www.boe.ca.gov/proptaxes/ahcont.htm. With regard to business personal property taxes, the assessment is made based upon information supplied by the taxpayer. In California, Business personal property is reported to the Assessor annually on a Business Property Statement form. The claims challenged here are based upon the information that Bed Bath & Beyond provided on this form under penalty of perjury to Sonoma County. The assessed value is determined by applying relevant factors derived from the United States Government Bureau of Labor Statistics and market surveys to the information provided by the taxpayer. (See Assessor's Handbook ("AH") 504, Assessment of Personal Property and Fixtures, https://www.boe.ca.gov/proptaxes/pdf/ah504.pdf .) This information is compiled by the California State Board of Equalization in a reference called AH 581, Equipment Index Factors and Percent Good Factors, https://www.boe.ca.gov/proptaxes/pdf/ah58121.pdf. In assessing the property, county assessors use this reference, or a very similar reference compiled by the California Assessors' Association that is based upon it. The County of Sonoma assessor assessed the property of Debtors for tax purposes precisely as it was reported by Debtors.

5. There is a great deal of quality control built into the system to assure appropriate and uniform application of California property tax assessment principles. At the assessment level, this is assured by the California State Board of Equalization ("SBE"). When a dispute arises, further protections are built into the system by providing for competent and independent assessment appeals boards.

6. The SBE is a statewide agency created by the California Constitution, and one of its primary duties is to ensure fair and uniform application of the California property tax system. No person may perform local tax appraisal duties unless that person is

3

certified by the SBE. (Cal. Rev. & Tax. Code, § 670.) To obtain and maintain such a certificate, an appraiser must complete certain educational and/or experience requirements and pass a written examination. Cal. Rev. & Tax. Code, § 670; Cal. Code Regs., tit. 18, § 283.)

7. In addition to certifying appraisers, the SBE promulgates property tax rules that are binding statewide in order to ensure consistent application of California property tax laws. (Cal. Gov. Code,§ 15606, subd. (c).) The SBE also has a statutory duty to publish information that will promote uniformity in appraisal practices and in assessed values throughout the state. (Cal. Rev. & Tax. Code, § 401.5.) In furtherance of its mission, the SBE publishes a multi-volume reference known as the Assessors' Handbook. It also publishes market data to facilitate consistent appraisal practices, such as the AH 581, Equipment Index Factors and Percent Good Factors.

8. If a taxpayer such as Bed Bath & Beyond disagrees with an assessment, the appropriate procedure would be to file an assessment appeal with the Assessment Appeals Board, which has authority to "equalize the values of all property on the local assessment roll by adjusting individual assessments." Cal. Const., art. XIII, § 16; Cal. Rev. & Tax. Code §1603(a). Notably, the Assessment Appeals Board is an independent quasi-judicial constitutional body, separate, apart, and independent of the Assessor's Office. *See, e.g. Westinghouse v. County of LA*, 42 Cal. App. 3d 32, 42 fns. 6 and 7 (Cal. 1974). Under California Revenue and Taxation Code, section 1603, a reduction in the assessment roll cannot be made unless the taxpayer files a timely written petition with the assessment appeals board. The form of the written application is prescribed by the SBE. (Cal.Gov. Code,§ 15606, subd. (d).)

9. Article XIII, section 16 of the California Constitution establishes assessment appeals boards or county boards of equalization in each county. These tribunals are mandated to hear and determine valuation disputes between assessors and taxpayers. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1344-45; Cal. Rev. & Tax. Code,§ 1610.8.) These boards ensure that all real and personal property within the County are assessed fairly and according to applicable California law.

4

10. Local assessment appeals boards are independent of both local assessors and the SBE, and there are substantial notice, hearing, and other due process requirements applicable to assessment appeals board hearings. (Assessment Appeals Manual.)

11. After a determination by the local assessment appeals board, either party may file an action in state superior court to seek judicial review. The application for the assessment appeal and denial of relief by the assessment appeals board is a prerequisite to judicial review of a property tax assessment. With respect to judicial relief, it is not the task of a state court in California to determine the appropriate value of the property. Where a court invalidates an assessment appeals board decision, the remedy is to remand the matter to the assessment appeals board for further hearings consistent with the Court decision. (*Heavenly Valley v. El Dorado County Bd. Of Equalization, supra*, 84 Cal.App.4th at p. 1344.)

## III

## THE COURT SHOULD EXERCISE DISCRETION UNDER TITLE 28, UNITED STATES CODE, SECTION 1334(c)(l) AND TITLE 11, UNITED STATES CODE, SECTION SOS(a)(l) TO ABSTAIN FROM HEARING THIS CONTESTED MATTER

12. Bed Bath & Beyond moves the Court to hear the instant Motion pursuant to Bankruptcy Code sections 105 and 505, but the Court is not obligated to hear the matters. Both title 28 of the United States Code, section 1334(c) and title 11 of the United States Code, section 505(a)(l), grant this Court the authority to abstain from hearing a section 505 proceeding. Bankruptcy courts routinely abstain from hearing state law claims in instances similar to the instant one, where the determination of taxes would not benefit the bankruptcy estate or the unsecured creditors, or where such determination would interfere with the uniformity of tax assessment associated with the specific tax jurisdiction in question. The County of Sonoma respectfully contends that this Court should exercise jurisdiction over this matter for the same reasons set forth by the courts in cases such as *In re Cable & Wireless USA, Inc.*(Bankr. D.Del. 2005) 331 B.R. 568 ("*Cable & Wireless*") *In re ANC Rental Corporation* (Bankr. D.Del. 2004)

316 B.R. 153 (*"ANC Rental"*); and *In re New Haven Projects Ltd. Liability Co.,* 225 F.3d 283,

289 (2d Cir. 1999) (finding that unsecured creditors would not meaningly benefit from section

505 review and such review would frustrate the purpose of the statute.)

13. In *Cable & Wireless, supra,* 331 B.R. 568 (Bankr. D.Del. 2005) the Court

abstained because of the variations among the various taxing authorities and because, like

here, the appraiser did not overcome the prima facie validity of each of the tax claims.

(331 B.R. at pp. 577-580.)

14. In *ANC Rental, supra,* the Court put forth a six factor test for determining

whether to abstain. (316 B.R. at p. 159.) Under that test, Sonoma County believes that

the Court will come to the conclusion here, too, that abstention is warranted. The factors

and their application in this proceeding:

1) The complexity of the tax issues. Here, the issues presented in the instant Motion

are indeed complex, and there is simply no basis for the court to analyze the debtors' tax liability

differently simply because Debtors filed bankruptcy. *See Raleigh v. Illinois Dep't of Revenue,* 530

U.S. 15, 20 (2000).

2) The need to administer the bankruptcy case in an orderly manner.

In the instant matter, the Debtors are asking this Court to re-determine a large number of

independent tax liabilities, which will necessitate substantial work for the Court, and that will

impact the Court's ability to orderly administer and proceed with the case.

3) The burden on the bankruptcy court's docket. The Debtors' motion

would require the Court to spend extra time to hear presentations of evidence and

argument on valuation of property in 26 different jurisdictions and then apply those

methods to the evidence. As the California Constitution Article XIII, § 14 requires that all

property be assessed in the county, city, and district in which it is situated, each counties'

assessment must be determined at a separate and distinct evidentiary hearing. Debtors have not

set forth any argument or evidence as to how this Court entertaining and ruling on Debtors'

Motion would benefit other creditors or result in the efficient administration of this case.  Rather,

6

it appears as though that Debtors are attempting to circumvent state property tax laws and avoid

paying priority tax claims, thereby benefiting only the Debtors themselves, and not creditors.

Given this Court's other commitments, there is no reason to believe that it could hear and

determine the issues Debtors have raised more efficiently than the local Assessment Appeals

Boards, which are designed exclusively for this purpose. The additional burden on the Court's

docket favors abstention.

4) The length of time required for trial and decision. Debtors' Motion in the

instant case will likely take considerable time to resolve, thereby favoring

abstention.

5) The asset and liability structure of the debtor. It appears that Debtors have

complex asset and liability structures, which argue in favor of abstention.

6) The prejudice to the debtor and the potential prejudice to the taxing

authority. In *ANC Rental*, the Court stated: "the Taxing Authorities would be significantly

prejudiced by having the taxes at issue determined by a Delaware Court. This weighs in

favor of abstention as well." (*ANC Rental, supra*, 316. B.R. at p. 159.) The same holds

true here. Moreover, there has been no competent showing that the taxes were incorrectly

assessed, and therefore there is no prejudice to Bed Bath & Beyond if the Court abstains. In

short, the six part test militates in favor of the Court's abstention.

15. The case *In re Metromedia Fiber Network, Inc.* (Bankr. S.D.New York 2003) 299

B.R. 251 ("Metromedia"), also argues for abstention on the general grounds of comity with

respect to state and local tax matters. In this case, the Court exercised discretionary abstention

under (28 U.S.C.§ 1334(c)(l) & 11 U.S.C. § 505(a)(l)) where a Chapter 11 debtor sought to

litigate local tax disputes in the bankruptcy court. The Chapter 11 debtor in that case, similar to

the arguments made by Bed, Bath & Beyond in the instant Motion, alleged that numerous state

and local tax authorities had appraised the debtor's taxable property, subsequently assessed, and

sought to collect the local property taxes based on valuations grossly in excess of the property's

fair market value. The debtor invoked the Court's jurisdiction under section 505 of the

Bankruptcy Code and asked the bankruptcy Court to determine the fair market value of the property for tax purposes. (*Metromedia, supra.*, 299 B.R. at 256.)

16. The *Metromedia* Court examined the legislative history of section 505, which specifically cited the United States Supreme Court decision under Bankruptcy Act section 2a(2A) in *Arkansas Corp. Com. v. Thompson*, (1941) 313 U.S. 132, 145, 61 S. Ct. 888, 85 L.Ed. 1244 as follows:

> "[T]here is nothing in the history of bankruptcy or
> reorganization to support the theory that Congress intended to
> set the federal courts up as super-assessment tribunals over
> state taxing agencies .... And the policy of revising and
> redetermining state tax valuations ... would be a complete
> reversal of our historic national policy of federal noninterference
> with the taxing powers of states.

(*Metromedia, supra,*.299 B.R. at 282.)

17. The *Metromedia* Court explained further that although section 505 granted the federal courts the power to revisit state and local tax determinations, *Arkansas Corp. Commission* continued to be good law supporting abstention and continued to be followed where uniformity of assessment was of significant importance to the government taxing schemes. *(Metromedia, supra,* 299 B.R. at 281, citing *In re New Haven Projects Ltd. Liability Co.* (2d Cir. 2000) 225 F.3d 283, 288.) As stated in the *Metromedia* opinion:

> "As under the Bankruptcy Act [former] section 2a(2A),
> *Arkansas Corp. Comm'n v. Thompson*, 313 U.S. 132, 61 S.Ct.
> 888, 85 L.Ed. 1244 (1941), remains good law to permit
> abstention where uniformity of assessment is of significant
> importance."

(*Metromedia, supra,* 299 B.R. at 281, quoting, Revision Notes and Legislative Reports. 1978 Acts.)

8

18. *The Metromedia* Court held also that abstention under title 28 United States Code, section 1334(a)(1), was proper because, among other factors, there is a compelling local interest in uniformity of assessment. (*Metromedia,* 299 B.R. at 283.) This is clearly an important interest for California, and in fact is required by article XIII, section I of the California Constitution. (Cal. Const., art. XIII, § 1 ["Unless otherwise provided by this Constitution or the laws of the United States[,] ... [a]ll property is taxable and shall be assessed at the same percentage of fair market value."].) In summation, the Court stated:

"That is not to say that there is no occasion when a bankruptcy court should exercise the power conferred under section 505 of the Bankruptcy Code. A proceeding under Section 505 may be appropriate in many circumstances where a taxing authority has acted in a manner which is arbitrary and capricious, discriminatory, or violative of state or local statutes or rules, or where the taxpayer/ debtor has no practical redress for wrongdoing at the local or state level.

"However, no such allegations are made in these adversary proceedings. The debtors simply assert that their local property taxes are too high because the defendants have assessed the debtors' Taxable Property using methodologies which do not take into account the recent drastic decline in profitability and capital value in the communications business. Barring some form of misconduct on the part of the defendant assessing and taxing authorities, which is not alleged here, the economic consequences of overcapacity and market devaluation in the communications industry must be addressed at the local level." (*Metromedia,* 299 B.R. at p. 283.)

9

The important principle of uniformity of assessment will be placed at risk should an out of state court, rather than the local Assessment Appeals Board, make a valuation determination at a hearing without the Assessor being present, based on valuation methods that are not accepted under the Revenue &Taxation Code.

19. Abstention is appropriate in this case, as California has very many systems in place to ensure fair and evenhanded application of its property tax system among its many taxpayers. Even within the State of California, values for tax assessments are never determined even by superior courts, but by independent boards with knowledge of and training in California's property tax system. There is no need for the federal courts to interfere with this complex and well-balanced state system.

20. Bed Bath & Beyond's only claim appears to be that the assessed tax values of the California counties such as the County of Sonoma are different from what they and their analysts think it should be. However, Bed, Bath & Beyond has not presented any basis for its belief that the numerous taxing authorities in California are all using appraisal methods in violation of the many different systems of applicable law governing them. The County of Sonoma's strong state interest in upholding its established tax system strongly supports abstention.

## IV

## THE COURT SHOULD DENY THE MOTION BECAUSE IT IS
## UNSUBSTANTIATED

21. With regard to Sonoma County, the requested discounts are quite steep and are not supported by any real evidence in support thereof, but simply because they claim the reductions are merited. However, the Delaware Bankruptcy Court has held that such conclusory appraisals based on confidential studies and sales of the debtor's assets are not sufficient to overcome the presumption of correct assessment of taxes. (*Cable & Wireless, supra*, 331 B.R. at pp. 579-580.) This Court should do the same.

## V.

## THE COURT SHOULD DENY THE MOTION BECAUSE THE
## VALUES ADVOCATED BY BED BATH & BEYOND DO NOT COMPLY
## WITH CALIFORNIA LAW AND BECAUSE THE ASSETS WERE
## CORRECTLY VALUED BY THE SONOMA COUNTY ASSESSOR

22. The information Bed Bath & Beyond has provided about its valuation methodology indicates that this methodology does not conform to California law. Bed Bath & Beyond ignores the fact that the definition of full cash value that is used to value California property is defined in section 110 of the R&T Code as "the amount at which property would be taken in payment of a just debt from a *solvent* debtor." (Cal. Rev. & Tax. Code §110 (*emphasis added*).) It does not include sales Debtor made after the lien date under exigent circumstances. Per the Assessor's Handbook 504 p. 130, sales of assets from a bankruptcy estate should not necessarily be considered valid indicators of market value under the definition of Revenue and Taxation Code section 110. (See Assessors' Handbook 504, p. 50, 130 [recognizing that the buyer of property from a bankrupt's estate has the ability to take advantage of the exigencies of the seller.]).

23. In California, the Assessor's values are entitled to a presumption of correctness, thereby putting the burden of proof on the taxpayer. (Cal. Rev. & Tax. Code, § 167.) Subject to exceptions set by law, it is presumed that the assessor has properly performed official duties. (Cal. Evid. Code § 664; 18 C.C.R. §321, subd. (a); *Texaco Producing v. County of Kern*, 66 Cal. App. 4th 1029 (Cal. 1998)). The effect of this presumption is to impose upon the applicant the burden of proving that the value on the assessment roll is not correct, or where applicable, the property in question has not been otherwise correctly assessed. (Cal. Evid. Code § 660; *Texaco Producing, supra*, at p. 1046.) The law requires that the applicant present independent evidence relevant to the full value of the property or other issue presented by the applicant. (18 C.C.R. § 321, subd. (a).) Further, it is well settled that the timely filing of a proof of claim is prima facie evidence of the validity and amount of the claim pursuant to Federal Rule of Bankruptcy

Procedure 3001(f). *See also, In re Mid-American Waste Sys.*, 284 B.R. 53, 65 (Bankr. Del. 2002).

Once a proof of claim is properly executed and filed, "it is a debtor who bears the initial burden

of going forward to produce evidence sufficient to negate the prima facie validity of the filed

claim." *In re Desert Village Ltd. P'ship*, 321 B.R. 443, 446 (Bankr. N.D. Ohio 2004). Only if the

debtor meets the burden of producing sufficient evidence which, if believed, would refute at least

one of the allegations essential to the claim, does the burden of going forward shift back to the

creditor. *Morton v. Morton (In re Morton)*, 298 B.R. 301, 307 (B.A.P. 6th Cir. 2003). A debtor

taxpayer disputing a tax claim in bankruptcy has the burden of proving it does not owe the tax.

*Raleigh v. Illinois Dept. of Revenue*, 530 US 15, 21-26 (2000). The unsupported statements and

assertions made by Bed Bath & Beyond in the instant Motion simply do not meet the burden of

presenting evidence sufficient to defeat the presumption of validity of the County of Sonoma's

tax claim. *See e.g. In re Cobb*, 135 B.R. 640 (Bankr. D. Neb. 1992) (in the case of tax claims, the

burden of proof and persuasion is upon the debtor taxpayer and Bankruptcy Rule 3001(f) does

not serve to shift the burden of proof to the taxing agency.)

24. Recent Bed Bath & Beyond transactions and sales have not been shown to be
admissible for the taxes at issue here. The comparable sales approach to valuation necessarily
requires comparable circumstances in the sales being compared. Under California law, a
comparable sale for valuation purposes cannot be used if the sale takes place more than
90 days after the lien date. (Cal. Rev. & Tax. Code,§ 402.5.) Here, it has not been shown that the
sales used for value took place within 90 days of the lien date for the taxes at issue.

25. Bed Bath & Beyond has also failed to demonstrate that it made individual
adjustments for the properties compared. (Cal. Code Regs., tit. 18, § 4; *Main & Von Karman
Associates v. County of Orange* (1994) 23 Cal. App. 4th 337, 342-343.)

26. Furthermore, sales of assets from bankruptcy estates are not indicative of appropriate
California tax assessment values due to exigencies often surrounding such sales. (AH 504,
Assessment of Personal Property and Fixtures, pp.76, 130.) (*See e.g.., Cable & Wireless, supra,*

12

331 B.R. at pp. 579-580 [use of bankruptcy sale to value assets is "fundamentally flawed"].)

27. Rather than asking this Court to apply applicable State law, as the Court is required to do, Debtors appear to be arguing that the valuation methods prescribed under the laws of California are erroneous.  Debtors then attempt to circumvent State law by lumping all the assessments of their property across jurisdictions together and asking this court to consider its post-lien date sales during Debtors' insolvency. Contrary to Debtors' argument, "full cash value," as defined in section 110 of the R&T Code, does not include sales Debtor made after the lien date under exigent circumstances. In short, Debtors' asserted valuations do not comply with California property tax rules, and have failed to introduce evidence or case law that would serve to defeat the fact that the Assessor's valuations are entitled to the presumption of correctness.

## VI

## RESERVATION OF RIGHTS

28. The County of Sonoma reserves its rights to amend, modify, or supplement this Objection.

## VII

## CONCLUSION

29. The instant Motion only involves State law issues, which are more complex than what Debtors would have this Court believe. There are no core bankruptcy matters that would be served where this Court to entertain the instant  Motion, and the evidentiary hearings that would be required to determine the Motion would necessarily place  significant burden on the Court's docket. As such, the Court should find that abstention is appropriate in the interest of comity under 28 U.S.C. § 1334(c)(1) and abstain from hearing the Motion and determining the taxes Debtors have attempted to place at issue by filing the instant Motion. If the Court chooses to hear the Motion, the Court should deny the relief requested by Debtors in the Motion for the reasons stated above.

## IX

## ADDITIONAL INFORMATION

30. The County of Sonoma Claim at issue is for Business Personal Property, Assessment 800-003-314-000, retail location 2785 Santa Rosa Avenue, with an assessed value of $253,957, which Debtors seek in its Motion to have reduced to only to $30,723. Debtors incurred the tax liabilities owed to the County of Sonoma pursuant to California Revenue & Taxation Code §§ 2191.3, 2191.4 and 2193. The 2023 tax bills are entitled to priority under Bankruptcy Code section 508(a)(8) because it was last due and payable without penalty within one year before the date the Debtors filed the instant Motion.

Dated:  October 12, 2023          CREDITOR COUNTY OF SONOMA TREASURER-

TAX COLLECTOR


*Brooke Koop for Erick Roeser*

By: /s/_____

Erick Roeser by Brooke Koop
Auditor-Controller-Treasurer-Tax Collector