Creditor, Treasurer/Tax Collector for the
County of Santa Cruz
701 Ocean Street, Rm. 100
Santa Cruz, CA 95060
Telephone: (831) 454-2510
Fax: (831) 454-2660
Email: edith.driscoll@santacruzcountyca.gov

U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ

2023 OCT 18 ⯈ 2: 41

JEANNE A. NAUGHTON

BY: _____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 23-13359 (VFP) |
| BED, BATH, & BEYOND, INC., et al., | Chapter 11 |
| Debtors, | **SANTA CRUZ COUNTY TREASURER-TAX COLLECTOR'S RESPONSE TO DEBTOR'S MOTION TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS AS TO CERTAIN CALIFORNIA TAXING AUTHORITIES** |
| | Date: October 24, 2023<br>Time: 10:00 a.m. (ET)<br>Judge: Honorable Vincent F. Papalia<br>Courtroom: 3B |

Creditor, County of Santa Cruz Treasurer-Tax Collector ("SCTTC"), hereby responds to Debtor's Motion to Determine Tax Liability and Stay Proceedings as to Certain California Taxing Authorities (the "Motion") (Doc. 2181).

## I.  INTRODUCTION

Debtors seek to re-assess the 2023 fair market value bases upon which to compute their Santa Cruz County, California business property taxes for tax year 2023 for the Debtor's business property located in Santa Cruz County, California, pursuant to Section 505(a) of the Bankruptcy Code. Debtor's proposed approach to its revised 2023 fair market values is not an accepted valuation methodology under California law.

1   Creditor, SCCTTC respectfully requests that the court abstain from re-determining Debtors'

2   tax liability. Property tax assessment in California is complex, and the Bankruptcy Court would be

3   required to apply substantive California law on issues that are intended to be decided by a local

4   Assessment Appeals Board ("AAB") under the California Constitution, jeopardizing the uniformity

5   of assessment. Further, if the Court undertakes Debtor's Motion, there will be a substantial burden

6   imposed on the Santa Cruz County Assessor, as all its appraiser staff and their legal advisor, Office

7   of the County Counsel, are located exclusively, in California.

8   Therefore, SCCTTC respectfully requests the Court deny this Motion. Alternatively,

9   SCCTTC objects to the Debtors introduction of any evidence at the hearing on the Motion,

10  including, without limitation, Debtors' self-serving "appraisal," and other evidence which could

11  not have been considered pursuant to applicable nonbankruptcy law.

12  **II.    FACTS**

13  As of January 1, 2023, Debtor operated one location in the County of Santa Cruz

14  (Declaration of Sheri Thomas in Support of Response to Debtor's Motion ("Thomas Decl.", ¶ 6.))

15  On April 23, 2023 (the "Petition Date"), the debtors filed a voluntary petition for relief under

16  Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

17  Th Assessor is required to annually assess taxable business personal property as of the lien

18  date (January 1). Business Personal Property includes all "Equipment out on lease, rent, or

19  conditional sale to others" used in the operation of a business. Business Personal Property is

20  reported to the Assessor annually on a form known as the Business Property Statement (Form 571-

21  L) (Thomas Decl., ¶ 3.)

22  Form 571-L constitutes an official request from the Assessor for the taxpayer to declare all

23  assessable business property situated in the county which the taxpayer owned, claimed, possessed,

24  controlled, or managed on the tax lien date, and that the taxpayer signs (under penalty of perjury).

25  Failure to file the statement during the time provided in section 441 of the Revenue and Taxation

26  Code will compel the Assessor to estimate the value of your property from other information in the

27  Assessor's possession and add a penalty of 10 percent of the assessed value as required by section

28  463 of the Revenue and Taxation Code. (Thomas Decl., ¶ 4.)

On or about May 4, 2023, Debtors filed their 2023 571-L business property tax statement with the Assessor, with the statements signed true, correct, and complete by their VP of Tax. (Thomas Decl., ¶ 7.) The Assessor assessed the property exactly as it was reported by Debtors. (*Id.*)

SCCTTC is responsible for the collection of ad valorum taxes assessed against real property and personal property located in the County of Santa Cruz. *See* Cal. Rev. & Tax. Code § 2903. SCCTTC issued one tax bill for fiscal year 2023 for the personal property and fixtures located within Debtors' Santa Cruz County location. Debtors incurred the tax liabilities claimed due pursuant to California Revenue & Taxation Code §§ 2191.3, 2191.4 and 2193. (Thomas Decl., ¶ 9).

SCCTTC 's deadline to file a claim has not passed. Simultaneous with this Response, SCCTTC is filing an unsecured tax claim.

## III.   CALIFORNIA PROPERTY TAX PROCEDURE

The basis for assessment of all real and personal property in California is the California Constitution. Specifically, all property tax assessments are established by the provisions of either article XIII or article XIII A (the constitutional article adopted following the passage of Proposition 13). The California Constitution requires uniformity of taxation of all property in California (Cal. Const., art. XIII, § 1) and requires that all property be assessed in the county, city, and district in which it is situated. Cal. Const., art. XIII, § 14.

There are several steps for property taxation in California all of which are governed by numerous standards, procedures, and protections to ensure fair and uniform application of local property tax assessments. Most of the Legislature's enactments with respect to ad valorem assessment are found in the California Revenue and Taxation Code (hereinafter "R&T Code"). In addition, the State Board of Equalization ("BOE") is mandated to prescribe rules and regulations to govern local boards of equalization when equalizing and county assessors when assessing in compliance with the rulemaking procedures adopted by the California Office of Administrative Law. The BOE has adopted various Property Tax Rules which are contained in Title 18 of the California Code of Regulations. These rules can be found at https://www.boe.ca.gov/proptaxes/ahcont.htm (last visited October 12, 2023) (hereinafter and cited

1    to as "Property Tax Rules").[1]

2         Local Assessors also rely on the Assessors' Handbook, which "is a series of manuals

3    developed by the staff of the [BOE] in an open process". The objective of the Assessors' Handbook

4    is to give county assessors, their staff, and other interested parties an understanding of the principles

5    of property assessment and real and personal property appraisal for property tax purposes. The

6    Assessors' Handbook presents the BOE staff's interpretation of rules, laws, and court decisions on

7    property assessment." (See https://www.boe.ca.gov/proptaxes/ahcont.htm, last visited October 12,

8    2023).

9    **A. Assessment of Personal Property**

10        The standard of valuation prescribed by the Legislature is that "[all] taxable property shall

11    be assessed at its full cash value." Cal. Rev. & Tax. Code, § 401. "Full cash value," as defined in

12    section 110 of the R&T Code, "means the amount at which property would be taken in payment of

13    a just debt from a solvent debtor." Cal. Rev. & Tax. Code, § 110. "Notably, the net earnings to be

14    capitalized are not those of the present owner of the property, but those that would be anticipated

15    by a prospective purchaser." *De Luz Homes, Inc. v. County of San Diego*, 45 Cal. 2d 546, 562 (Cal.

16    1955). Thus, the definition of fair market value does not include the sales transactions by a debtor

17    in bankruptcy.

18        Significantly, regarding personal property taxes, the assessment is made based upon

19    information supplied by the taxpayer. (Thomas Decl., ¶¶ 4-7).

20    **B. Review of Property Tax Assessment by the Assessment Appeals Board**

21        A property owner dissatisfied with the annual assessment must file an application for

22    reduction with the AAB, which has authority to "equalize the values of all property on the local

23    assessment roll by adjusting individual assessments." Cal. Const., art. XIII, § 16; Cal. Rev. & Tax.

24    Code §1603(a).

25        The functioning of the AAB is governed by sections 1601 through 1645.5 of the R&T Code

26    and sections 301 through 326 of the Property Tax Rules. Section 1604(c) of the R&T Code requires

27

28    _____
[1] Section 15606(c) of the California Government Code authorizes the State Board of Equalization to "prescribe rules
and regulations to govern local board of equalizing when equalizing…"

the AAB to hear evidence and make final determination on an application for reduction of assessment of property within two (2) years of timely filing of the application. Cal. Rev. & Tax. Code §1604(c).

In appeals involving personal property and fixtures, it may be necessary for the assessor to perform an audit of the taxpayer's records to reach a final value conclusion. The Assessor would also be required to appear at the hearing to defend its valuation, only after the taxpayer met its burden, and would do so based on accepted valuation methodologies prescribed within the R&T Code. (Thomas Decl., ¶ 14).

Subject to exceptions set by law, it is presumed that the assessor has properly performed official duties. Cal. Evid. Code § 664; 18 C.C.R. §321, subd. (a); *Texaco Producing v. County of Kern*, 66 Cal. App. 4th 1029 (Cal. 1998). The effect of this presumption is to impose upon the applicant the burden of proving that the value on the assessment roll is not correct, or where applicable, the property in question has not been otherwise correctly assessed. Cal. Evid. Code § 660; *Texaco Producing, supra*, at p. 1046. The law requires that the applicant present independent evidence relevant to the full value of the property or other issue presented by the applicant. 18 C.C.R. § 321, subd. (a).

## IV.    **ARGUMENT**

### A. Abstention is Proper

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court has "broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Sarfani, Inc. v. Miss. Dept. of Revenue (In re Sarfani, Inc.)*, 527 B.R. 241, 252 (Bankr. N.D. Miss. 2015). Section 505(a)(1) provides an additional basis for permissive abstention, because it provides that a court may, but is not required to, determine a debtor's tax liabilities. *Id.*

Bankruptcy courts consider the following factors when deciding whether to exercise authority under section 505, including, importantly for purposes of this response: (1) "the complexity of the tax issue"; (2) "the burden on the bankruptcy court's docket"; and (3) "the potential prejudice to the debtor, the taxing authority, and creditors." *In re New Haven Projects*

*LLC, supra*, 225 F.3d at 289 (finding that unsecured creditors would not meaningly benefit from section 505 review and such review would frustrate the purpose of the statute).

Section 505 was not intended to become a super-assessment tribunal over state taxing agencies. *Metromedia Fiber Network, Inc. v. Various State & Local Taxing Auth. (In re Metromedia Fiber Network, Inc.)* 299 B.R. 251, 282 (Bankr. S.D.N.Y. 2003), (quoting *Arkansas Corp. Comm'n v. Thompson*, 313 U.S. 132, 145, (1941)).

1.    *California Property Tax Law is Complex and Equalization Should be in the Hands of the Local Assessment Appeals Board.*

California property tax law is extremely complex. Debtors' Motion ignores this and ask the court to take an approach to valuation that is not consistent with California law. See *CM Reed Almeda 1-3062, LLC v. Harris Cnty. (In re CM Reed Almeda 1-3062, LLC)*, 2017 Bankr. LEXIS 1155, *24-25 (BAP 9th Cir. 2017) (observing that the court would have to analyze Texas law governing the assessment of property taxes and disputes regarding those assessments under the Debtor's section 505 motion.)

There are three major appraisal approaches for estimating value (cost, comparative sales, and income). The nature of the property, its market, and the availability of data will normally indicate which approach(es) is most applicable. This is supported by Property Tax Rule 3, which states, in part: "[i]n estimating value as defined in section 2, the assessor shall consider one or more of the following [approaches to value], as may be appropriate for the property being appraised[.]" 18 C.C.R. § 3. Moreover, Property Tax Rule 324 requires that the taxpayer appealing an assessment value "shall be bound by the same principles of valuation that are legally applicable to the assessor." 18 C.C.R. § 324. Although Debtors discuss fair market value in their motion, Debtors make no reference to any other principles governing valuation in California. (See generally, Lambert Decl.) There is simply no basis for the court to analyze the debtors' tax liability differently simply because Debtors filed bankruptcy. See *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000).

There is an efficient review process available to Debtors within each of the local taxing authorities jurisdiction, and "it seems most appropriate that the debtor in chapter 11 proceed with the systems already in place" for determining its state tax liability, "rather than substituting this

court for that process." *In re the Village at Oakwell Farms, Ltd.*, 428 B.R. 372, 375 (Bankr. W.D. Tex. 2010). "Why the court should need to 'start from scratch'…when there is a more efficient tribunal that can determine the valuation issues under applicable state law?" *In re CM Reed Almeda 1-3062, LLC*, 2017 Bankr. LEXIS at *24-25; see also *In re Altegrity, Inc.*, 544 B.R. 772, 778 (Bankr. D. Del. 2016) (Delaware bankruptcy court abstained from determining debtor's Oklahoma tax liability, because debtor was already pursuing relief before Oklahoma Tax Commission).

2.    *Uniformity of Assessment is at Stake*

A significant factor in determining whether a bankruptcy court will exercise discretion under section 5050 is uniformity of assessment. *New Haven Projects LLC v. City of New Haven* (*In re New Haven Projects LLC*) 225 F.3d 283, 288 (2d Cir. 2000); see also *Central Valley Ag Enterprises*, 531 F.3d 750, 764 (9th Cir. 2008) (recognizing that uniformity of assessment is a basis for abstention); *In re Cable & Wireless USA, Inc.*, 331 B.R. 568, 577-78 (Bankr. D. Del. 2005) ("Each tax authority must enjoy and apply a uniformity of assessment within its tax jurisdiction."); *In re ANC Rental Corp.*, 316 B.R. 163,159 (Bankr. D. Del. 2004) (abstention is often used where uniformity of assessment is an issue); *In re Metromedia Fiber, Inc.*, 299 B.R. 251, 281 (Bankr. S.D.N.Y. 2003).

Uniformity of Assessment is of the utmost importance to the Assessor and required under the California Constitution. This uniformity will be placed at risk should an out of state court, rather than our local Assessment Appeals Board, make a valuation determination at a hearing without the Assessor present, and based on valuation methods that are not accepted under the R&T Code. (Thomas Decl., ¶ 18).

California counties "would be significantly prejudiced by having the taxes at issue determined by a [New Jersey Bankruptcy] court." *In re ANC Rental Corp.*, 316 B.R. at 159 (finding that a Texas taxing authority would "be significantly prejudiced by having the taxes at issue determined by a Delaware court.")

The Santa Cruz County Assessor would be significantly prejudiced if it were required to attend and present evidence at a hearing on the appeal of an assessment. They should not be required to travel out of state, unrepresented by County Counsel, to present evidence in a New Jersey

bankruptcy proceeding. A valuation hearing in New Jersey would be very burdensome on the Assessor. Assessor staff is located exclusively in the County of Santa Cruz within the State of California. Assessor staff only appear in administrative proceedings before the Assessment Appeals Board, which are not formal court proceedings. (Thomas Decl., ¶¶ 16-17). The County's legal advisor is the County Counsel. The attorneys of the Office of the County Counsel are not barred in New Jersey and thus, unable to represent the Assessor at a valuation hearing in a New Jersey court. (Id.)

3.    *Debtor's 505 Motion Unnecessarily Burdens the Court*

Debtors do not present any evidence to demonstrate that the court's consideration of their Section 505 Motion would result in a more efficient administration of this estate. In fact, Debtors ignore the tremendous burden a 505 determination would place on the court's docket. Debtors are not just contesting the tax liability in a single County; Debtors are contesting tax liability in 26 separate and distinct counties. (See Doc. No. 2180 [contesting liability in nine different counties] and Doc. No. 2181 [contesting liability in 17 different counties]).

California property tax law does not permit the bulk valuation of property across counties. Instead, the California Constitution requires that all property be assessed in the county, city, and district in which it is situated. Cal. Const., art. XIII, § 14.  Therefore, each counties' assessment should be determined at a separate and distinct evidentiary hearing. It is unclear how 26 separate hearings in a New Jersey Bankruptcy Court on California property tax issues promotes the purpose of section 505. Given this court's other commitments, there is no reason to believe that it could hear and determine the issues Debtors have raised more efficiently than the local AABs, which are designed exclusively for this purpose. Moreover, because the R&T Code requires that the hearing take place within two years, there is not a risk of delay.

Debtors have not set forth any argument or evidence as to how this court's Section 505(a)(1) determination would benefit other creditors or result in the efficient administration of this case. Instead, it appears that Debtors are attempting to circumvent state property tax law and avoid paying priority tax claims, thereby benefiting only the Debtors (and not the creditors).

**B. Debtors Valuation Does Not Comply with Property Tax Rules**

Debtor has not met their burden for the court to determine valuation under section 505. The property owner has the burden of proving that the assessor has improperly valued the property, and Debtors are bound by same methods of valuation as Assessor. Debtors cannot meet this burden because their appraisal completely ignores the approaches to value accepted under California law. (See generally, Lambert Decl.)

Instead, Debtors seeks to ignore state law by lumping all the assessments of their property across jurisdictions together and asking this court to use its nationwide sales data during Debtors' insolvency. (See Lambert Decl. ¶¶ 6-13; Thomas Decl., ¶¶ 3,15).

Contrary to Debtors' argument, "full cash value," as defined in section 110 of the R&T Code, "means the amount at which property would be taken in payment of a just debt from a solvent debtor." Cal. Rev. & Tax. Code §110 (emphasis added). Per the Assessor's Handbook 504 p. 130, sales of assets from a bankruptcy estate should not necessarily be considered valid indicators of market value under the definition of Revenue and Taxation Code section 110. (See Assessors' Handbook 504, p. 50, 130 [recognizing that the buyer of property from a bankrupt's estate could take advantage of the exigencies of the seller.]).

## V.    CONCLUSION

For the reasons stated herein, the court should abstain from determining Debtor's tax liability pursuant to the Motion to Determine Tax Liability under 11 U.S.C. § 505.

Dated: October **14**, 2023

CREDITOR COUNTY OF SANTA CRUZ
TREASURER-TAX COLLECTOR

By: _Edith Driscoll_ _____
    Edith Driscoll, Santa Cruz County
    Treasurer-Tax Collector