# EXHIBIT A

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (admitted *pro hac vice*)<br>Emily E. Geier, P.C. (admitted *pro hac vice*)<br>Derek I. Hunter (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>joshua.sussberg@kirkland.com<br>emily.geier@kirkland.com<br>derek.hunter@kirkland.com<br><br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>*Co-Counsel for Debtors and Debtors in Possession* |

| In re: | Chapter 11 |
|---|---|
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

# ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 1142)

The relief set forth on the following pages, numbered two (2) through eleven (11), is

**ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 1142) |

Upon the *Debtors' Motion for Entry of an Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), authorizing and approving, among other things, (a) the Lease Sale Procedures, and (b) the Debtors' right to consummate Lease Sales, including through Assumption and Assignment Agreements between the Debtors and the prospective assignee, all as more fully set forth in the Motion, and upon entry of the *Order (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422]; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Assumption and Assignment Agreement attached hereto as **Exhibit 1** (the "Assumption and Assignment Agreement"), as applicable. References to the Debtors in this Order and the Assumption and Agreement shall apply with equal force to the Wind-Down Debtors and the Plan Administrator (each as defined in the *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "Plan") attached to the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order")). In accordance with the Plan and the Confirmation Order, the Wind-Down Debtors and the Plan Administrator, as the case may be, shall succeed to all rights and remedies of the Debtors under the Assumption and Assignment Agreement or this Order, and shall be substituted for the Debtors as the party in interest to perform under the Assumption and Assignment Agreement and this Order.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the Debtors having complied with the Lease Sale Procedures, and that the Debtors' entry into the Assumption and Assignment Agreement with Hobby Lobby Stores, Inc. or its designee ("Assignee") is in the best interest of the Debtors and their estates and provides for the highest or best offer for the Lease (as defined in the Assumption and Assignment Agreement); and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Debtors or the Plan Administrator, as applicable, and Assignee are authorized to enter into and perform under the Assumption and Assignment Agreement, and to implement the Assumption and Assignment Agreement and the transactions contemplated thereunder and hereunder. The Assumption and Assignment Agreement and all of the terms and conditions thereof is hereby approved in all respects.

2. Pursuant to sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Plan Administrator is hereby authorized and directed to (a) sell and assume and assign to Assignee, in accordance with the terms of the Assumption and Assignment Agreement, the Lease (as identified in the Assumption and Assignment Agreement), free and clear of any and all licenses,

**Error! Unknown document property name.**

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

tenants and/or subtenants, license and concession agreements for all or any part of the Premises, and all liens, claims and encumbrances, with such license and concession agreements for all or any part of the Premises, and all liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors, the Debtors' estates or the Landlord (as defined below) or the Assignee may have with respect thereto, and (b) execute and deliver to Assignee such documents or other instruments as Assignee deems necessary to assign and transfer the Lease to Assignee.

3. Assignee has demonstrated adequate assurance of future performance and has satisfied the requirements set forth in section 365(b)(1)(C) of the Bankruptcy Code with respect to the Lease. Assignee is a good faith purchaser of the Lease within the meaning of section 363(m) of the Bankruptcy Code.

4. Except as otherwise set forth in this Order, there shall be no rent accelerations, assignment fees, increases or any other fees charged to Assignee or the Debtors as a result of the assumption and assignment of the Lease pursuant to this Order.

5. Effective as of the date of entry of this Order and payment of the purchase price by Assignee, the assignment of the Lease by the Debtors to Assignee shall constitute a legal, valid, and effective transfer of such Lease notwithstanding any requirement for approval or consent by any person and vests Assignee with all right, title, and interest of the Debtors in and to such Lease,

**Error! Unknown document property name.**

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

free and clear of all liens, claims, and encumbrances pursuant to sections 363(f) and 365 of the Bankruptcy Code.

6. Any provisions in the Lease that prohibit or condition the assignment of such Lease or allow the landlord of such Lease (hereinafter, the "Landlord") to terminate, declare a breach or default, recapture, impose any penalty, condition any renewal or extension, or modify any term or condition, as a result of the assignment of such Lease constitute unenforceable anti-assignment provisions and are void and of no force and effect as against the Debtors and Assignee in connection with the assumption and assignment of the Lease pursuant to this Order. The Lease shall remain in full force and effect, without existing defaults, subject only to payment of the Cure Costs (defined below).

7. The applicable cure costs to assume and assign the Lease (the "Cure Costs") are hereby fixed in the amount $275,000.00. Within three (3) business days of the Closing Date, the Debtors' estates shall pay the Landlord the Cure Costs. Payment of the Cure Costs by the Debtors' estates shall constitute the cure of all defaults arising under the Lease that are required to be cured by section 365(b)(1)(A) of the Bankruptcy Code (after giving effect to section 365(b)(2) of the Bankruptcy Code). For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall remain liable for any additional obligations under the Lease that arise under section 365(d)(3) of the Bankruptcy Code between the date of the entry of this Order and the Closing Date. Moreover, to the extent that any such obligations are not paid in accordance with the terms of the Lease prior to the Closing Date, the Landlord shall be entitled to request,

**Error! Unknown document property name.**

(Page | 6)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

upon such notice and a hearing as the Bankruptcy Code and the Bankruptcy Rules require or this Court otherwise orders, immediate payment of such obligations under section 365(d)(3) of the Bankruptcy Code from the Debtors and their estates, and all rights of the Debtors and their estates in connection with any such request shall be reserved.

8. Upon payment of the applicable Cure Costs, the Debtors and the Landlord are hereby barred and permanently enjoined from asserting against one another or Assignee any default, claim, or liability existing, accrued, arising, or relating to the Lease for the period prior to the entry of this Order; *provided, however*, that nothing herein shall impair or prejudice the Landlord's rights with respect to the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the premises subject to the Lease with regard to events that occurred prior to the effective date of assumption and assignment of the Lease to Assignee.

9. Assignee shall be deemed to be substituted for the Debtors as a party to the Lease and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Lease from and after the Assumption Date.

10. The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order. The provisions of this Order authorizing the assignment of the Leases shall be self-executing, and neither the Debtors nor Assignee shall be required to execute or file assignments, consents or other instruments in order to effectuate, consummate, and/or implement provisions of this Order. Each and every federal, state, and local governmental

**Error! Unknown document property name.**

(Page | 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to effect, consummate, and/or implement the transactions contemplated by this Order. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to effectuate, consummate, and/or implement to the extent necessary the provisions of this Order.

11. To the extent the Lease contains use restrictions which would otherwise prohibit Assignee from operating at the applicable leased premises in the ordinary course of its business, including any restrictions on the sale of some or all of the items and goods typically sold by Assignee, Landlord agrees that such use by Assignee is permitted for purposes of this assignment.

12. Notwithstanding any term of the Lease to the contrary, any extension, renewal option, or other rights contained in such Lease that purports to be personal only to a Debtor or Debtors or to a named entity in such Lease or to be exercisable only by a Debtor or Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by Assignee, in accordance with the terms of such Lease. The Debtors have timely exercised any applicable extension or renewal options under the Lease, and the Lease is in all in full force and effect. The Debtors have not previously rejected the Lease and the Debtors' period to assume or reject the Lease has not otherwise expired.

13. Notwithstanding anything in the Motion, or the Assumption and Assignment Agreement to the contrary, and except as set forth in this Order, from and after the assumption and assignment to Assignee of the Leases in accordance with this Order, Assignee shall comply with

**Error! Unknown document property name.**

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

the terms of the Lease in their entirety (as may be modified in any written agreement between Assignee and the Landlord (a "Landlord Agreement")), including, without limitation, any indemnification obligations expressly contained in the Lease and any rent, common area maintenance, insurance, taxes, or similar charges expressly contained in the Lease. With respect to any provision of the Lease providing for calculation of rent based on a percentage of annual sales, for the annual period in which the Closing Date occurs, Assignee shall only be responsible for the prorated portion of percentage rent attributable to the period after the Closing Date calculated on a per diem basis.

14. Notwithstanding any provision of the Lease (including any related reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement (each, an "REA") or any ground or master lease (each, a "Master Lease")) to the contrary, including a covenant of continuous operation or a "go dark" provision, Assignee shall not be required to operate its business from the leased premises for a reasonable period of time after the entry of this Order, in order to perform alterations and remodeling which shall be done in a manner consistent with the terms of the Lease and to replace and modify existing signage to the extent necessary to operate at the premises as an Assignee store and consistent with Assignee's operations and the terms of the Lease. Notwithstanding any provision of the Lease to the contrary (including any related REA or Master Lease), to the extent the Landlord's consent is required for any such alteration or signage modification, the Landlord's consent thereto shall not be unreasonably withheld, conditioned, or delayed.

**Error! Unknown document property name.**

(Page | 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

15. The Landlord shall cooperate in good faith and use commercially reasonable efforts to execute and deliver, upon the request of Assignee, any instruments, applications, consents, or other documents that may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals, or other necessary documents required for alteration, installation of signage, opening, and operating the Premises; *provided that* the Landlord does not incur any out of the ordinary material out-of-pocket costs as a result of such cooperation.

16. Notwithstanding anything to the contrary in this Order or the Assumption and Assignment Agreement, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant this Order. For the avoidance of doubt, nothing, including the Lease Sale Procedures and this Order, alters or modifies the terms and conditions of any insurance policies issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and/or any agreements related thereto or effectuates a sale, assignment or transfer of any such policies or agreements or any of the rights, benefits, rights to payment, recoveries, claims and/or proceeds under such policies or agreements.

17. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

**Error! Unknown document property name.**

(Page | 10)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

18. The Debtors and Assignee are authorized to take any and all actions reasonably necessary or appropriate to consummate the Assumption and Assignment Agreement and the transactions contemplated thereunder and hereunder.

19. The Court's findings of fact and conclusions of law delivered at the conclusion of the Court's hearing on August 30, 2023 regarding various proposed lease assignments, including the proposed assignment of the Lease to Michaels Stores, Inc. ("Michaels") which has now been withdrawn, are vacated solely with respect to the Lease and solely as to the Landlord. Notwithstanding anything to the contrary in this Order, in full and complete satisfaction of any and all claims arising from or relating in any way to the auction and sale process and proposed assignment of the Lease to Michaels, the parties have agreed that within three (3) business days of the Closing Date, the Debtors' estates shall pay Michaels or its designee $325,000 from the proceeds of the assignment of the Lease to Assignee (the "Michaels Allocation"). Subject to payment of the Michaels Allocation by the Debtors to Michaels or its designee, Michaels, the Landlord, the Assignee, and the Debtors (including the Debtors' estates) shall be deemed to have released, and shall be deemed to be permanently barred and permanently enjoined from asserting against one another, any claim, cause of action, or liability, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the date that the Debtors filed these chapter 11 cases, in contract or in tort, in law, or in equity or pursuant to any other theory of state, federal, or other law, arising, or

**Error! Unknown document property name.**

(Page | 11)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH HOBBY LOBBY STORES, INC. (STORE NO. 3076) |

relating in any way, directly or indirectly, to the assignment of the Lease to the Assignee, the Debtors' lease auction and sale process with respect to the Lease, the proposed assignment of the Lease by the Debtors to Michaels (including any matter directly or indirectly related to the hearing and bench decision delivered in connection therewith on August 30, 2023), except as otherwise expressly set forth in this Order and, for the avoidance of doubt, not including the obligations of the Assignee under the Lease to the Landlord from and after the Closing Date.

20. In the event of any inconsistencies between this Order, the Motion, and the Assumption and Assignment Agreement, this Order shall govern.

21. Notwithstanding Bankruptcy Rules 6004(h) or 6006(d), or any other Bankruptcy Rule or Local Rule, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

22. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

24. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Error! Unknown document property name.**

## Exhibit 1

**Assumption and Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2023, is by and between BED BATH & BEYOND INC. ("Assignor") and Hobby Lobby Stores, Inc., an Oklahoma corporation, or its designee ("Assignee"). All provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases") on April 23, 2023 (the "Petition Date");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume (the "Transaction") the unexpired lease between Assignor and the lease counterparty (the "Landlord") identified on Schedule A attached hereto (the "Assigned Asset" or the "Lease") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "Lease Sale Procedures") subject to approval by the Court in the Chapter 11 Cases of the proposed form of sale order acceptable to Assignee and Assignor approving this Agreement (the "Sale Order"); and

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties (the "Parties") hereto agree as follows:

## AGREEMENT

1. <u>Assignment and Assumption</u>. On that date which is one business day after the entry of the Sale Order (the "Closing"):

(a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset, including, without limitation, the right to possession of the Premises.

(b) Except as specifically set forth in this Agreement, Assignee hereby assumes all of the terms, conditions and covenants of the Lease as tenant under the Lease effective as of the Closing.

(c) For the avoidance of doubt and notwithstanding any other provision of this Agreement, Assignee shall not be responsible for and is not assuming any liabilities that arose prior to the Closing that remain unsatisfied as of the Closing, including, but not limited to claims, including personal injury, third-party tort or property damage claims, that accrued or arose before the Closing but may come due or be adjudicated after the Closing.

(d) For the avoidance of doubt and notwithstanding any other provision of this Agreement, subject to the terms of the Sale Order, any and all lease payments for the Premises or receipts, rentals, costs, charges, fees or expenses connected with the use or operation of the Premises, including all common area costs, shall be prorated between the parties on the date of Closing and Assignor shall bear its proportion thereof through the day prior to the date of Closing using the best available information at the time of the proration. Subject to the terms of the Sale Order, Assignor shall be responsible for any penalties and interest payable for rent or other items under the Lease where the same are due as a result of an underpayment or late payment by Assignor prior to the date of Closing and Assignee shall be responsible

for such amounts in respect of periods on or following the Closing. For purposes of calculating any proration, Assignor shall be responsible for amounts allocable to the period up to but not including the date of Closing. All such prorations shall be made on the basis of the actual number of days of the year and month which shall have elapsed as of the Closing.

2.  Payment of Purchase Price. As of the date hereof, Assignee has paid a $170,000 deposit (the "Deposit") to Assignor. On the date of Closing, Assignee shall deliver the purchase price for the Assigned Asset in the aggregate amount of $2,100,000 (the "Purchase Price") minus the Deposit already paid, in immediately available funds wired to the account specified by Assignor.

3.  Payment of Cure Costs. Assignor shall be responsible for payment of $275,000, the amount required to be paid to the Landlord in connection with the assumption and assignment of the Lease pursuant to section 365 of the Bankruptcy Code and as set forth in the Sale Order (the "Cure Costs") within three (3) business days of the date of Closing wired to the account specified by Landlord.

4.  Assumption of Liabilities. Payment of the Cure Costs shall represent satisfaction of all defaults or other obligations of Assignor arising or accruing prior to the Closing under the Lease, including, but not limited to the Cure Costs and fees, charges, adjustments, or reconciliations for taxes, insurance, CAM, and other charges, whether billed or unbilled, due or not due (each a "True-Up Charge") regardless of whether such True-Up Charge relates to a period of time prior to the assignment of the Assigned Asset, but without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code. Assignee shall have no liability or obligation arising or accruing under the Assigned Asset prior to the Closing. Assignee shall assume all obligations with respect to the Assigned Asset arising from and after the Closing. The Lease shall be transferred to, and remain in full force and effect for the benefit of, Assignee, in accordance with its terms. Upon assumption by Assignor and payment of the Cure Costs, no default shall exist and any and all prior defaults under the Lease, if any, whether monetary or non-monetary, shall be deemed cured, and Assignee shall have no liability therefore.

5.  No Further Liability of Assignor. Upon payment of the Cure Costs, from and after the Closing, Assignor shall have no further obligations with respect to the Assigned Asset, *provided, however*, that nothing herein shall impair or prejudice the Landlord's rights with respect to the Assignor's available insurance coverage as set forth in the Sale Order.

5.  Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

6.  "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset; provided, however, (i) Assignor warrants and represents: (a) Assignor is the tenant under the Lease; (b) the Lease is in full force and effect; (c) the Lease, as identified on Schedule A, is complete in listing all documents comprising the Lease and there are no other agreements (written or verbal) which grant any possessory interest in and to any space situated on or in the Premises under the Lease or that otherwise give rights with regard to use of the Premises under the Lease or limit the use of the Premises; and (ii) Assignor represents and warrants that there are no service contracts for any of the Assigned Asset which will bind Assignee after the Closing and Assignor shall terminate any and all service contracts with respect to the Lease prior to Closing or as soon as reasonably practicable thereafter. Subject to the foregoing representations and warranties, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset.

7.      Sale Order. Each party's obligation under this Agreement is expressly subject to and conditioned upon the entry of the Sale Order by the Bankruptcy Court in form and substance reasonably satisfactory to Assignor and Assignee, that shall, among other things, (a) approve, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Assignor of this Agreement, (ii) the transfer and assignment of the Assigned Asset to Assignee on the terms set forth herein and free and clear of all liens, encumbrances, security interests, pledges, claims and/or other interests, and (iii) the performance by Assignor of its obligations under this Agreement; (b) authorize and empower Assignor to assign to Assignee the Lease; (c) order that, notwithstanding Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, the Sale Order shall take effect immediately upon entry; (d) order that there shall be no rent accelerations, assignment fees, increases or other fees charged or chargeable to Assignee as a result of the sale and assignment of the Lease; (e) establish the Cure Costs as the amount necessary to cure all defaults under the Lease; (f) authorize Landlord to execute and deliver, upon the reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approval of other necessary documents required for the alteration, opening and operating of the Premises by Assignee; (g) authorize the rejection of all license and concession agreements pursuant to which Assignor has granted any party a license, access or right to use all or any portion of the Premises for any purpose whatsoever; (h) find that Assignee is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, not a successor of Assignor, and grant Assignee the protections of section 363(m) of the Bankruptcy Code; (i) find that Assignee shall have no liability or responsibility for any liabilities or other obligations of Assignor arising under or related to the Assigned Asset other than as expressly set forth in this Agreement, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity; (j) find that the assignment contemplated by this Agreement shall not be avoided pursuant to section 363(n) of the Bankruptcy Code; (k) find that all tenant contributions due and owing under the Lease have been paid in full; and (l) find that all exclusives and use restrictions contained in the Lease benefitting Assignor continue in full force and effect, notwithstanding any closures or cessations in business operations by Assignee or Assignor.  Notwithstanding anything to the contrary herein, certain customary modifications in connection with the occupancy and operation of Assignee at the Premises must be approved by Landlord and/or set forth in the Sale Order authorizing any assignment of such Lease(s) to Assignee, including modifications with respect to, among other provisions, requirements in connection with use, continuous operations, increased deposit, rent or other obligations related to assignment, signage for, improvements to, and buildout of the Premises, unless waived in writing by Assignee in its sole discretion.

To the extent such Sale Order is not approved by the Court, neither Assignee nor Assignor shall have any obligations under this Agreement or, solely with respect to Assignee, the entire Purchase Price, including the Deposit, shall be returned to Assignee within five (5) business days of the Court's denial or any other event that makes the entry of such Sale Order impossible, provided that Assignee (a) shall negotiate the terms of the Sale Order and modifications of the Lease (if any) with Assignor in good faith and (b) participate in the hearing to approve the Sale Order, if reasonably requested in writing by Assignor and if applicable; *provided* that such participation may be through remote attendance.

8.      Assignor's Delivery of Documents. Assignor shall deliver to Assignee each of the following: (i) an executed counterpart of this Agreement; (ii) all applicable state, county and municipal transfer declarations and any other required governmental certificates, provided that Assignor shall use commercially reasonable efforts to obtain and deliver such documentation to Assignee; (iii) if Assignor has any assignable rights under any Non-Disturbance Agreement, Reciprocal Easement Agreement, or any other agreement with respect to each Premises, an assignment of such rights executed by Assignor, subject to the consent of such assignment from the applicable counterparty; and (iv) all other documents (including assignments of operating agreements affecting the Premises and closing statements), affidavits, instruments and writings reasonably required to be executed and delivered by Assignor at or prior to the entry of the Sale Order or otherwise required by law or reasonably requested by Assignee, if not previously delivered.

9. <u>No Holdover</u>.  Assignor shall fully vacate the Assigned Asset no later than three days before entry of the Sale Order. In the event Assignor fails to fully vacate the Assigned Asset as provided herein, Assignee shall have no obligation pursuant to the Lease(s) to pay any further rent, additional rent, or percentage rent unless and until Assignee complies with this Agreement.

10. <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

11. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

12. <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

13. <u>No Reliance</u>. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

14. <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

15. <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR**:
Bed Bath & Beyond Inc.

By: _____
Name: _____
Title: _____

**ASSIGNEE**:
Hobby Lobby Stores, Inc., an Oklahoma corporation

By: _____
Name: J. Scott Nelson
Title: Assistant Vice President

## **SCHEDULE A**

**Description of Assigned Asset**

| Store No. | City, State, Zip Code | Banner | Cure Costs |
|---|---|---|---|
| 1142 | Rogers, AR 72758 | Bed Bath & Beyond | $275,000 |