IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

```
IN RE:                         . Case No. 23-13359-VFP
                               .
BED BATH & BEYOND, INC.,       . Clarkson S. Fisher U.S. Courthouse
et al.,                        . 402 East State Street
                               . Trenton, NJ 08608
         Debtors.              .
                               . October 23, 2023
. . . . . . . . . . . . . . .  . 10:06 a.m.
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

```
For the Unsecured         Pachulski Stang Ziehl & Jones
Creditors Committee:      By:  BRADFORD SANDLER, ESQ.
                               COLIN ROBINSON, ESQ.
                          919 North Market Street, 17th Floor
                          Wilmington, DE  19801

For F3 Metalworx, Inc.,   O'Brien Thornton LLC
Creditor:                 By:  MERRILL O'BRIEN, ESQ.
                          160 Park Street
                          Montclair, NJ  07042

For the Counties of       Porzio, Bromberg & Newman, P.C.
Los Angeles, Riverside,   By:  JOHN S. MAIRO, ESQ.
Fresno, and Santa Clara:  100 Southgate Parkway
                          Morristown, NJ  07962


Audio Operator:           Kiya Martin
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (CONTINUED):

For Ben Rosenzweig and      Bryan Cave Leighton Paisner LLP
Marjorie L. Bowen:          By:  JARRET P. HITCHINGS, ESQ.
                            301 S. College Street, Suite 2150
                            Charlotte, NC  28202

- - -

1        (Proceedings commenced at 10:06 a.m.)
2        THE COURT:  All right.  Good morning, everyone.  This
3   is Judge Kaplan, and I will be starting the calendar, which is
4   primarily all Bed Bath & Beyond matters, covering for Judge
5   Papalia who is progressing well and should be back with you
6   all, hopefully, shortly.
7        As usual, if you need to be heard and I haven't
8   called upon you, please use the raise hand function.  The Court
9   is in receipt of the notice of agenda for this morning.  It
10  seems that most of the matters are going to be adjourned.
11  There's a few matters that we have on.
12        Let me turn to counsel for the plan administrator,
13  Mr. Sandler.  Good morning.
14        MR. SANDLER:  Good morning, Your Honor.  Can you hear
15  me okay?
16        THE COURT:  Yes, we can.
17        MR. SANDLER:  Fantastic.  For the record, Your Honor,
18  Brad Sandler, Pachulski Stang Ziehl and Jones, on behalf of
19  Michael Goldberg, the plan administrator of Bed Bath & Beyond
20  and its affiliated entities.
21        Your Honor, you're right.  The agenda today is short.
22  There's only three items going forward.  Items 1, 2, and 3.
23  And I think Items 1 and 2, I think we'll be able to go pretty
24  fast on.  And actually, I guess there's another matter that
25  we'll mention to Your Honor dealing with the sale of the North

1  Carolina real estate where we're looking for a comfort order.

2  THE COURT: All right.

3  MR. SANDLER: So, with that, Your Honor, let me give
4  you, maybe what might make sense is to give you a little bit of
5  a status report as to where things are since the plan went
6  effective on September 28th, if that makes sense, and then I'll
7  flip into the agenda. And I don't think today will take very
8  long.

9  THE COURT: No, that's fine. Please go ahead.

10  MR. SANDLER: So, as I said, the plan went effective
11  September 28. The plan administrator took over and, the way
12  the plan is structured, as Your Honor may recall, the plan
13  administrator essentially replaces the directors and officers
14  of the company, then assumes the management of the enterprise.

15  Since then, frankly, he has been drinking from a fire
16  hose trying to get his arms around the situation because now
17  it's one person who essentially is taking charge of everything.
18  He doesn't have the full team of management and obviously,
19  AlixPartners, that help run the business. He has retained
20  eight employees, former employees, or I guess current employees
21  of the company to assist him with the operations. He's met
22  with the Oversight Committee.

23  Your Honor may recall under the plan, there's an
24  Oversight Committee to oversee what the plan administrator is
25  doing as it's laid out in the plan. The Oversight Committee is

1  a four member committee which is a little unique.  Two members
2  come from the Creditors Committee, former Creditors Committee.
3  It's Ryder and Intersoft.  They were both members.
4         A representative from Sixth Street, the DIP lender
5  and prepetition lender, and then a gentleman, Jeff Stein, who
6  together, they constitute the Oversight Committee.  And
7  Mr. Stein, by the way, is also the CRO of Rite Aid.
8         So since he took over, he's been reviewing the
9  numerous administrative claims that the pending lease issues
10 working with numerous tax authorities across the country.  He's
11 conducted various interviews to bring on a professional staff
12 to handle certain types of matters for the plan administrator,
13 including what may be potential litigation in a variety of
14 contexts.
15        He has, as of yesterday, completed and filed
16 operating reports for all of the debtors.  There is an appeal
17 that a shareholder has filed.  He's been working on that.  And
18 there's also, importantly, various transactions that the plan
19 administrator has been working on that were in process and he
20 has worked to try to complete those transactions so that we
21 can, frankly, get funds into this economically challenged
22 estate.
23        And today, Your Honor, in that effort, we really have
24 two matters that I would say are certainly critical to getting
25 funding into the estate.  We'll go through them on the agenda.

1           But unless Your Honor has any specific questions,
2  I'll just flip to the first item on the agenda.
3           THE COURT:  No, that's fine.  Please, let's go
4  through the agenda.  Thank you.
5           MR. SANDLER:  Okay.
6           THE COURT:  Thank you for the update.
7           MR. SANDLER:  Sure.
8           So the first matter is the resolution of the, I'll
9  call it the Michaels, Hobby Lobby, and Brookfield dispute over
10 the Pinnacle Hills lease.  As Your Honor knows, that was
11 extremely contentious.  I want to really thank the various
12 parties who were involved, as well as their respective teams,
13 led by Ken Rosen, Bob Lehane, and Bob Malone, and again, each
14 of their respective teams, as well as their co-counsel, and
15 certainly, Your Honor's effort in getting the parties to come
16 together and develop a commercially reasonable path forward.
17          Essentially what it does, it provides $2.1 million
18 for the lease from Hobby Lobby.  One point five million will go
19 to Sixth Street; 325,000 will go to Michaels; and 275,000 will
20 go to Brookfield.  We think this is a terrific result for the
21 estate and, frankly, for all of the parties.  And, Your Honor,
22 we filed the order yesterday at Docket Number 2527.  And absent
23 any questions, Your Honor, we would ask that you enter that
24 order today.
25          THE COURT:  All right.  Does any counsel wish to be

1  heard?  I do want to express my appreciation for the
2  professionalism and the hard work of counsel in reaching an
3  accord.  This does save the estate countless hours of litigated
4  time and expense pursuing appellate proceedings with respect to
5  a number of issues, and I think it's a very workable
6  resolution.  I've read through the proposed order.
7           Unless anyone wishes to be heard, I'm satisfied with
8  the resolution.  I think it's certainly in the best interest of
9  the post-confirmation debtor going forward, as well as the
10 respective parties.
11          Becca Earl, we're going to need just a cover sheet
12 with my signature on the proposed order.
13          THE CLERK:  Okay.
14          THE COURT:  All right.
15          I see no one wishing to be heard, so we'll mark that
16 order to be entered and I'll take care of that as soon as
17 possible.
18          MR. SANDLER:  Great.  Thank you very much, Your
19 Honor.
20          THE COURT:  Thank you.
21          MR. SANDLER:  Moving on to the second item on the
22 agenda, that's going to be decided on the papers, so there's
23 nothing to address on that.
24          I'm going to skip Item Number 3 and I'm going to
25 suggest that we actually leave that until the end, Your Honor,

1  because I think there will be some discussion on that.

2  There is Item Number 4, which is really looking for a
3  comfort order under the plan.  We don't technically need an
4  order, but because we're selling real estate, the parties would
5  like an order of the Court.

6  Let me flip it over to my colleague, Colin Robinson,
7  who is on with me, Your Honor, and he'll handle Item 4 first
8  and then we'll flip back to 3 and that will conclude the agenda
9  today.

10  THE COURT:  Now 4 relates to 550 Montgomery
11  Investment LLC?

12  MR. SANDLER:  Correct.

13  THE COURT:  Yeah.

14  MR. SANDLER:  Correct.

15  THE COURT:  All right.

16  MR. ROBINSON:  Good morning, Your Honor.  Colin
17  Robinson, Pachulski Stang Ziehl and Jones, also for the plan
18  administrator.

19  THE COURT:  Good morning.

20  MR. ROBINSON:  Yes, Your Honor.  Number 4 is another
21  sale agreement.

22  As Mr. Sandler described, this is one of the sale
23  transactions that really started pre-effective date and just
24  carried over post-effective date.  We filed a notice of the
25  sale order at Docket 2517.

1            Your Honor, at a high level, it's a great result for
2   the post-effective date estate.  It's the sale of the property
3   located in Claremont, North Carolina, for a purchase price of
4   $4 million, includes the land and personal property that's
5   there at that facility.
6            The plan administrator has had time to get up to
7   speed on this proposed sale, review it, and has given it his
8   blessing and signed it and we seek approval of it today as,
9   Your Honor, we think it falls within his authority under the
10  plan and confirmation order.
11           THE COURT:  All right.
12           Does any one of the panelists wish to be heard?
13                  (No audible response)
14           THE COURT:  The Court has reviewed the notice of the
15  filing and the underlying agreement of sale.  It certainly
16  falls within the purview of the plan administrator, and it's
17  appropriate, and the Court will enter the order.
18           Is there a separate order attached, or does it have
19  to be submitted?  I didn't see the proposal.
20           MR. ROBINSON:  Your Honor, we'll send it to you.
21           THE COURT:  Send it to my chambers.  I do see it as
22  Exhibit C.  I believe it's Exhibit C.
23           MR. ROBINSON:  It is, Your Honor, but we will send it
24  to chambers after the hearing.
25           THE COURT:  That's fine.  Thank you.

1            MR. ROBINSON:  Thank you.

2            THE COURT:  We'll mark that granted and order to be
3   submitted.

4            MR. ROBINSON:  And, Your Honor, moving to Item 3 on
5   the agenda.  Your Honor, before we take on Item 3, it relates
6   to a administrative expense claim request filed by F3
7   Metalworx.

8            Your Honor, we're seeking the adjournment of it
9   today.  As Mr. Sandler alluded to, the Plain Administrator is
10  getting up to speed on a majority, a lot of admin claims that
11  are sitting out there and trying to review them and make,
12  judgment calls on how to proceed.  This is one that was sitting
13  there.  A C&O was filed.  We did file a preliminary objection
14  after the C&O was filed.

15           And essentially, Your Honor, what the plan
16  administrator would like to do is to adjourn this so we can try
17  to work out a resolution.  We think, due to the size of the
18  requested admin claim, that a resolution makes the most sense
19  and is the best use of estate resources.  Unfortunately, as of
20  the time of the hearing, we're not able to work out a
21  resolution yet with counsel for F3 Metalworks.

22           But we just think an adjournment for a short time,
23  and I believe we may have asked till December.  I think that
24  was just -- we really would just need out until the next
25  hearing date, which I believe we're back in front of the Court

1  on November 14th.  And I don't even think, frankly, we'll need
2  that much time to try to work out a resolution before the end
3  of the month, frankly, to resolve this admin claim, discuss it
4  a little more in depth with the plan administrator and come to
5  an agreement with F3 Metalworx.
6          And really that's the basis for the adjournment
7  request, Your Honor, just to give us additional time to work
8  something out.  But --
9          THE COURT:  Let --
10         MR. ROBINSON:  -- that's where we are, Your Honor,
11 and then -- sorry, Your Honor.
12         THE COURT:  No, no.  Go ahead.  Finish.
13         MR. ROBINSON:  And, Your Honor, and if we can't work
14 out a resolution, we believe there's substantive issues with
15 some of the portions of the admin claim that we'd like to
16 address.  But, again, we think the plan administrator would
17 rather worked to a resolution of these that makes the most
18 sense with the limited assets in these estates.
19         THE COURT:  All right.  Thank you.
20         Let me hear from Mr. O'Brien.  Good morning.
21         MR. O'BRIEN:  (No audible response).
22         THE COURT:  We just --
23         MR. O'BRIEN:  Good morning, Your Honor.  Merrill
24 O'Brien from O'Brien Thornton for the creditor of F3 Metalworx.
25         Your Honor, I don't know that we need an adjournment

1  at all even to achieve the plan administrator's objective here.

2  Oh, can you hear me?  I'm sorry.

3  THE COURT: Yes, I can. Thank you.

4  No, go ahead.

5  MR. O'BRIEN: I don't know that we need an
6  adjournment at all to achieve the plan administrator's
7  objectives here.

8  The F3 Metalworx is storing 125 pallets of the
9  debtor's property. They're balance bands, which the debtor
10 used for shelving for its various stores. The debtor had a
11 problem with its prior warehouse and asked F3 Metalworx to
12 store them, and that's laid out in the application. And this
13 isn't a request for administrative fees, Judge. This is a
14 request for allowance and payment of administrative fees for
15 just the post-petition period.

16 The Court has made it clear, both in Your Honor's
17 case management order signed, I believe in May or April, and in
18 the actual case management procedures attached to that order,
19 that deadlines have importance in this case. F3 filed its
20 motion, again not a request, filed its motion on September 29,
21 2023, with the notice that objections were to be filed by the
22 17th of October. No objections were filed.

23 On the 18th, we filed the certificate of no
24 objections, and on the 19th we got a late objection, which was
25 wrong in numerous respects. Before I address those respects

13

1 substantively, let me just say that Your Honor's case
2 management order about procedures in this case said it could be
3 modified by motion.  There's been no motion to modify the order
4 as to the deadlines.
5     The plan says that deadlines are serious and you lose
6 your rights if you don't meet the deadlines.  That's in bold
7 and all caps in the plan and in the disclosure statement
8 approved by the order signed by Your Honor.  Nothing in the
9 application, I'm sorry, in the late filed opposition or
10 objection details why the Court should relax the deadlines in
11 the management order.  And I understand that the plan
12 administrator is drinking water from a fire hose.  But the plan
13 administrator is is represented by a counsel that has, I
14 believe their papers have four counsel on (indiscernible).
15     I got a call on Friday night after we filed the reply
16 declaration from another counsel named Mia.  And they still
17 don't have a plan for what they're going to do with the
18 debtor's 125 pallets.  These are large pallets.  And what
19 they've said is they've rejected by virtue of the effective
20 date order.  The rejection has nothing to do with the pallets
21 and the property of the estate.  Nobody can move that property
22 or touch it, and we have to preserve it under the automatic
23 stay.  So what the plan administrator proposes is a unilateral
24 change of the contract to make my client continue to store and
25 preserve the debtor's property without paying for it.

1           All this motion asks for is payment for the post-
2  petition storage fees, which are reasonable -- Your Honor has a
3  certification to that effect in the motion. -- and which were
4  negotiated with the debtor.  The debtor itself spoke to my
5  client in August and the debtor and the Committee, represented
6  by the same counsel as the plan administrator, have had notice
7  of the admin claim since July 7th.
8           So procedurally, we object to even the procedure by
9  which the plan administrator is attempting to relax the
10 deadlines in Your Honor's case management order, which the
11 creditor went to numerous efforts to comply with and has
12 complied with.
13          THE COURT:  All right.  Mr. O'Brien, I don't want to
14 get into the substantive arguments, and I appreciate the
15 direction of your argument.  I understand the underlying basis
16 for the motion and, of course, the time sensitivity, and that
17 there are significant dollars involved.  But in essence, the
18 post-confirmation administrator is requesting adjournment of a
19 limited amount of time to address the issue.
20          And whether or not there was a delay of one day in
21 responding consistent with the existing case management orders,
22 had the post administrator filed the motion on shortened time
23 under Rule 9006 to extend the time for reasons to be expressed,
24 the Court, in all likelihood, would have reacted favorably.
25 The Court recognizes, as you must, the amount of work ahead of

1 the post-confirmation administrator in addressing what amounts
2 to dozens, if not hundreds, of claims.
3            And I don't see prejudice because we'll account for
4 the time it takes to get from today to November 14th.  You'll
5 either account for it in a global resolution with the post-
6 confirmation administrator or the Court will rule on it
7 cognizant that your client is being put upon, I'll use that as
8 a legal term, to store the debtor's assets on a post-
9 confirmation basis.  But I want to afford the post-confirmation
10 administrator the opportunity to see if there is a resolution
11 financially that makes sense for the estate and for your
12 client.
13            So I'm inclined to just not address the substance of
14 the motion, put it on for November 14th with other matters, and
15 I will entertain if there is a resolution in advance of that.
16 You certainly can bring it before me.  If there's a consent
17 order resolving the pending motion, it need not wait until
18 November 14th.
19            If there's an issue that becomes emergent for your
20 client or for the post-confirmation administrator, I'm also
21 happy to take a conference call with you to discuss what can be
22 done to meet the needs of both parties respectfully.  I just
23 don't want to get into the merits of the motion because now
24 Mr. Robinson or Mr. Sandler needs to respond and that defeats
25 the whole underlying request for an adjournment.  So I'm

1  inclined to carry it to the 14th, reserving all your rights
2  under the existing -- as you've laid out in your papers.
3           MR. O'BRIEN:  Thank you, Judge.
4           THE COURT:  Thank you, Mr. O'Brien.  I appreciate
5  your cooperation.
6           MR. ROBINSON:  Thank you, Your Honor.
7           THE COURT:  So we'll carry this matter to the 14th.
8  I do anticipate, and we're going to have to discuss scheduling,
9  that we are going to have Judge Papalia in a position to hear
10 these matters.  As I've indicated, the 14th is his calendar.
11 If there is a problem, I certainly will get involved so as not
12 to slow down the process or prejudice anyone's rights.  I'll
13 adjust my calendar as well.
14          All right.  Either Mr. Robinson or Mr. Sandler, where
15 do we go from here?
16          MR. SANDLER:  Your Honor, I think that wraps up the
17 agenda today.
18          THE COURT:  Well --
19          MR. SANDLER:  So, we thank you very much for your
20 time.
21          THE COURT:  I know Mr. Mairo wanted to be heard.
22 With respect to the tax claims that are being adjourned to the
23 14th, he submitted a correspondence to the Court concerned
24 about any order that would be entered.  We also have, I just
25 want to clarify, there is a matter at Docket Number 2403, an

1  order seeking authorization allowing the advanced payment for
2  the D&O policy.  There is no objection to that, and I believe
3  an order has been submitted.  So --
4           MR. SANDLER:  It has been, Your Honor.
5           MR. MAIRO:  Thank you, Your Honor.
6           THE COURT:  So that will be --
7           MR. SANDLER:  Let me just address the --
8           THE COURT:  Yes.
9           MR. SANDLER:  In terms of the tax issues, Your Honor,
10 as I mentioned earlier, we're kicking everything out.  We're
11 not seeking orders on anything.  We're kicking everything out
12 on the tax motions to the 14th.
13          THE COURT:  All right.  Thank you, Mr. Sandler.
14          I think, Mr. Mairo, that was your issue.  Did you
15 want to be heard otherwise, Mr. Mairo?
16          MR. MAIRO:  Thank you, Your Honor.  Just for the
17 record, John Mairo on behalf of the County of Los Angeles,
18 County of Riverside, County of Fresno, as well as Santa Clara.
19          If I'm understanding Mr. Chandler [sic] right,
20 there's not going to be any orders with respect to any
21 defaulting parties.  No orders will be entered with respect to
22 the tax motions prior to November 14th.  Is that correct?
23 Because that's not what the agenda said.  So I just want to be
24 clear on the record that's the case.
25          MR. SANDLER:  Yeah, Your Honor.  Just, again, as I

1  just stated, that's correct.  That's what we're doing.  We're
2  kicking everything out until the 14th.
3            THE COURT:  All right.  And I'm not signing any
4  orders, so we're good.
5            MR. SANDLER:  Right.
6            THE COURT:  All right.  Thank you.
7            MR. MAIRO:  And, Your Honor, if I may be heard --
8            THE COURT:  Yes.
9            MR. MAIRO:  -- just on one other issue with that.
10           THE COURT:  Sure.
11           MR. MAIRO:  So, with respect to the 14th, my clients
12 would like that hearing to potentially be a hearing on legal
13 issues that have been raised, specifically, whether the Court
14 has jurisdiction with respect to one of the counties and
15 whether abstention is appropriate.  And I heard what Your Honor
16 said that possibly that's going to be before Judge Papalia.
17 But that's something that my clients would like to potentially
18 see happen on the 14th is that to be a hearing as opposed to it
19 being just a status conference.
20           THE COURT:  Well, I will suggest -- I understand
21 that's your client's preference.  Why don't you communicate
22 with Mr. Sandler and see if the parties come to an agreement on
23 what the substance of the agenda will be on the 14th.  If there
24 isn't an agreement, then it'll be either Judge Papalia's call
25 or my call as to how we proceed.  All right.

Case 23-13359-VFP    Doc 2625    Filed 10/26/23    Entered 10/26/23 22:36:09    Desc Main
Document    Page 19 of 20

19

1        MR. MAIRO:  Fair enough.  Thank you, Your Honor.

2        THE COURT:  Thank you, Mr. Mairo.

3        Mr. Hitchings, you wish to be heard?

4        MR. HITCHINGS:  Yes, Your Honor.  Thank you very
5   much.  Jarret Hitchings of Bryan Cave Leighton Paisner.

6        I believe Your Honor addressed my question.  I'm
7   counsel to Ben Rosenzweig and Marjorie Bowen, the movants in
8   the final matter on the agenda that was filed under CNO, and I
9   believe Your Honor said that order would be entered.  But if
10  that's not the case, happy to address any questions the Court
11  might have.

12       THE COURT:  I don't have questions.  I've reviewed
13  the proposed order and the underlying obligations and policy.
14  The Court takes no issue with entry of the order.

15       MR. HITCHINGS:  Thank you, Your Honor.

16       THE COURT:  Thank you.

17       Just for the record, there have been various hands
18  raised, I believe, by some who may be listening in on the
19  hearing.  Our procedures only call for recognition of those who
20  sought presenter status and for whom we've given approval for
21  as a means to be consistent with the dictates of the judicial
22  conference and the new remote access policies.

23       Having said that, I do appreciate everybody's
24  participation, and be well.  And either my chambers or Judge
25  Papalia's chambers will be reaching out for the parties with

1  respect to the 14th.
2          MR. SANDLER:  Okay.  Thank you very much --
3          THE COURT:  All right.
4          MR. SANDLER:  -- Your Honor.  We appreciate --
5          THE COURT:  Thank you.
6          MR. SANDLER:  -- your time today.
7          THE COURT:  You're welcome.
8          COUNSEL:  Thank you, Your Honor.
9          THE COURT:  Take care.
10             (Proceedings adjourned at 10:30 a.m.)
11                         * * * * *
12
13                  **C E R T I F I C A T I O N**
14      I, KAREN K. WATSON, court approved transcriber,
15 certify that the foregoing is a correct transcript from the
16 official electronic sound recording of the proceedings in the
17 above-entitled matter and to the best of my ability.
18
19 /s/ Karen K. Watson
20 KAREN K. WATSON, CET-1039
21 J&J COURT TRANSCRIBERS, INC.         DATE:  October 26, 2023
22
23
24
25