J. Alexandra Rhim, Esq. (admitted *pro hac vice*)
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
E-mail: arhim@hrhlaw.com

**BERNSTEIN-BURKLEY, P.C.**
Keri P. Ebeck, Esquire
Bar No. 262092017
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
(412) 456-811

*Attorneys for Realty Income Corporation*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BED BATH & BEYOND, INC., *et al.*, | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors | : | (Jointly Administered) |

**DECLARATION OF DEMETRI LAHANAS IN SUPPORT OF REALTY INCOME CORPORATION'S SUPPLEMENTAL OBJECTION TO DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO ASSUME AND ASSIGN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASE FOR STORE NO. 1107**

I, Demetri Lahanas, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am Assistant Vice President and Senior Counsel of Realty Income Corporation ("RIC" or "Landlord").

2. I have personal knowledge of the facts set forth below; am authorized to make this Declaration; and, if called to testify, would testify competently as to the facts set forth herein.

### Business Records

3. As part of my duties at RIC, I am required to know and in fact am familiar with RIC's

policies and procedures for handling records (the "Records") and other information about the leases managed by RIC. Further, in my role at RIC, I have supervised and directed various administrative and paralegal teams regarding management and preservation of the Records.

4. Once documents evidencing a lease transaction between RIC (and of its affiliates) and a tenant are executed, they are delivered to an employee of RIC who has a duty to safeguard them. Copies of such documents are placed in RIC's files, and the originals are placed in a separate documentation file, which is stored in a secure area. Original documents are not removed from the secure area except by, or under the supervision of, an authorized officer, and the records are immediately returned to the secure area once the task requiring their removal is complete.

5. Such lease-related documents are saved with RIC's document management systems and accessible through such systems. Following the acquisition of VEREIT (defined below), RIC saved all lease, related documents, and such other closing documents in such management system. RIC created and maintained a standard filing structure for each acquisition. After acquisition, the various departments (such as Legal, Property Management, Accounts Receivable and others) would save all related and generated documents in that system. All of these records are maintained and made in the regular course of RIC's business, at or near the acts, conditions, or events to which they relate, by an officer or employee who has a business duty to accurately record such acts, conditions, or events.

6. RIC maintains detailed and comprehensive computerized records of all financial transactions between RIC and its tenants. RIC officers and employees, in the regular course of RIC's business and as part of their business duties, input data reflecting payments, charges, and other transactions into RIC's computer system, which is specifically designed for this purpose. Information about any particular transaction is recorded in RCI's computer system at or near the time of the transaction and is thereafter checked and reconciled for accuracy. Based on the systems in place, there is assurance that RIC's maintains records and transaction histories in an accurate manner.

Background

7. RIC is the fee owner and landlord of the shopping center commonly known as Red Oak Village (the "Shopping Center") located at 1050 McKinley Place Drive, San Marcos, Texas 78666 including the premises located there known as Store No. 1107 (the "Premises"), which is the subject of Debtor's (defined below) motion seeking to assume and assign the lease pertaining to the Premises.

8. Lincoln PO Red Oak Village, L.P. ("Lincoln Village") was the original fee owner and landlord in connection with the Premises and the Shopping Center. On or about December 22, 2010, pursuant to a Purchase Agreement, Cole MT San Marcos TX, LLC ("Cole MT") purchased the real property comprising Lots 1 and 2 in the Shopping Center (wherein the Premises is located). On December 18, 2010, pursuant to a Special Warranty Deed, Cole MT became the assignee and fee owner of Lots 1 and 2 of Lincoln Village in connection with the Premises and Shopping Center. A true and correct copy of the Special Warranty Deed is attached hereto as Exhibit 1.

9. Pursuant to a merger transaction that closed on or about August 12, 2021, RIC acquired all equity interests in VEREIT, Inc. ("VEREIT"). Cole MT was a wholly-owned subsidiary of VEREIT. Following the August 12 merger, through its acquisition of all interests in VEREIT, Cole MT became a subsidiary of RIC, which became the successor and holder of all of Cole MT's, respective, right, title and interest in the Property, Premises and the Lease Agreement (defined below). The merger with VEREIT and RIC's acquisition of interests in Cole MT are described in RIC's 10-K Filing and Exhibit 21.1 (subsidiaries).[1]

Subject Lease | Other Tenant Leases

10. Landlord and debtor Bed Bath & Beyond, Inc. ("Debtor" or "Tenant") are parties to

---

[1] True copies of the 10-K Filing and Exhibit 21.1 are attached as Exhibits 4 and 5 to the Declaration of J. Alexandra Rhim filed separately and concurrently herewith.

that certain Lease Agreement dated September 29, 2005 (the "Lease Agreement," as amended) and such other related agreements that govern Debtor's lease and tenancy of the Premises. A true and correct copy of the Lease Agreement is appended hereto as Exhibit 2.

11. Debtor concurrently issued the Tenant Estoppel Certificate Dated September 29, 2005 (the "Estoppel Certificate") which referenced, among other things: a Letter Agreement dated July 18, 2005 between Marmaxx Operating Corp. ("Marshalls") and Debtor regarding exclusive use matters and a Letter Agreement dated October 25, 2005 between Ross Dress For Less, Inc. ("Ross") and Debtor regarding exclusive use matters. True and correct copies of the Estoppel Certificate and the letter agreements are appended hereto collectively as Exhibit 3.

12. Pursuant to letter agreements, Debtor twice exercised the option to extend the term of the Lease Agreement from February 1, 2017 through January 31, 2022 and thereafter from February 1, 2022 through January 31, 2027. True and correct copies of the letter agreements are appended hereto, collectively, as Exhibit 4.

13. Marmaxx Operating Corp. ("Marshalls") leases its space from the Landlord pursuant to a Lease Agreement dated as of July 21, 2005 between the Landlord and Marshalls (the "Marshalls Lease"). A Memorandum of Lease Agreement was further recorded on September 12, 2005 (the "Marshalls MOL"). The Marshalls Lease and Marshalls MOL contain use exclusive provisions as further described in the concurrently filed Declaration of Matthew MacDonald (the "MacDonald Declaration"). A true and correct copy of the Marshalls MOL is attached hereto as Exhibit 5.

14. PetsMart leases its space from the Landlord pursuant to a Lease Agreement dated as of August 4, 2005 between the Landlord and PetsMart (the "PetsMart Lease"). A Memorandum of Lease Agreement was further recorded on December 15, 2006 (the "PetsMart MOL"). A true copy of the PetsMart MOL is attached hereto as Exhibit 6. The PetsMart Lease and PetsMart MOL contain use exclusive provisions as further described in the concurrently filed Declaration of

Matthew MacDonald (the "MacDonald Declaration").

15. Best Buy Stores, L.P. ("Best Buy") leases its space from the Landlord pursuant to a Lease Agreement dated as of March 30, 2007 between the Landlord and Best Buy (the "Best Buy Lease"). A Memorandum of Lease Agreement was also recorded on July 18, 2007 (the "Best Buy MOL"). A true copy of the Best Buy MOL is attached hereto as Exhibit 7. The Best Buy Lease and Best Buy MOL contains use exclusive provisions as further described in the concurrently filed Declaration of Matthew MacDonald (the "MacDonald Declaration").

Operating Easement Agreements

16. The Lease Agreement at Section 12.5.2 provides that the Lease Agreement is further *subject* to an operating easement agreement with Lowe's Home Centers, Inc. ("Lowes") as follows:

*The Declaration of Covenants, Conditions and Restrictions, dated May 24, 1996 between Mary Ann Hood, Trustee and Lowe's Home Centers, Inc., recorded on May 28, 1996* (the "Lowe's OEA") as amended by the First Amendment, dated on or about June 20, 2005 and the Second Amendment, dated on or about June 13, 2006, which contain certain use limitations and exclusives. Lowe's is the fee owner of and presently operating the property that is the subject of the Lowe's OEA. A true copy of the Lowe's OEA together with its amendments is attached hereto as Exhibit 8.

17. The Lease Agreement at Section 12.5.2 further provides that the Lease Agreement is further *subject* to an operating easement agreement with Sam's Real Estate Business Trust ("Sam's Club") as follows: *The Easements with Covenants and Restrictions Affecting Land in favor of Sam's Real Estate Business Trust* (the "Sam's OEA"). Sam's Club is the fee owner of and presently operating the property that is the subject of the Sam's OEA. A true copy of the Sam's OEA is appended as *Exhibit O* to the Lease Agreement (attached hereto as Exhibit 2).

18. The aforementioned documents appended hereto as Exhibits 1 through 8 are documents routinely and customarily maintained by employees and agents of RIC following the

VEREIT acquisition and, thus, are deemed generated and maintained in the regular course of RIC's business operations. These documents are routinely maintained as part of RIC's legal records pertaining to its lease transactions as they were compiled and uploaded by RIC's legal department following the VEREIT merger. I can regularly access these records, as I did in retrieving these documents for purposes of this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 15, 2023

*/s/ Demetri Lahanas*
Demetri Lahanas
Assistant Vice President and Senior Counsel