RECORDING REQUESTED BY AND

**WILLIAM SLADEK, ESQ.**
Jenkens & Gilchrist
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE, made and entered into as of the 21st day of July, 2005, by and between **LINCOLN PO RED OAK VILLAGE, L.P.**, a Delaware limited partnership (the "Landlord"), and **MARMAXX OPERATING CORP.**, a Delaware corporation (the "Tenant"), provides:

1. **Lease.** The provisions set forth in a written lease between the parties hereto dated as of July 21, 2005 (the "Lease") are hereby incorporated by reference in this Memorandum.

2. **Demised Premises.** The Demised Premises are more particularly described as follows:

The Demised Premises consist of a one-story building, to be constructed by Landlord as provided in the Lease, and contain thirty thousand (30,000) square feet of floor area having a frontage of one hundred fifty (15) feet and other dimensions as shown and labelled Area A upon the plan attached to the Lease. The Demised Premises are a portion of the Shopping Center land more particularly described in Schedule A attached hereto as a part hereof. In addition, the Tenant shall have the exclusive right to use certain service areas adjacent to the Demised Premises which contain an exterior loading dock and trash storage area.

3. **Term and Option to Extend Term.** The original term of the Lease shall be the period of ten (10) years and a fraction of month commencing on the Commencement Date (as described below) and terminating on the last day of the month during which the tenth (10th) anniversary of the Commencement Date shall occur, except, however, that if the Commencement Date shall be a first day of a calendar month then the original term of this lease shall be the period of ten (10) years commencing on the Commencement Date and terminating on the day prior to the tenth (10th) anniversary thereof.

Tenant shall have the right, at its election, to extend the term of the Lease for four (4) extension periods of five (5) years each, each commencing upon the expiration of the original term, or the original term as thus previously extended. In addition, Tenant shall have the right, at its election, to extend the original term, or the original term as it may have been previously extended as aforesaid, for an extension period of a fraction of a year ending upon the January 31st next following the expiration of the original term, or the original term as previously extended, as the case may be. Such extensions shall be granted upon the terms and conditions set forth in the Lease.

4.    Commencement Date.

An "Opening Day" shall be any Monday through Friday (except for legal holidays) between April 1 and the following May 15, and between August 20 and the following October 31. The "Commencement Date" shall be the first Opening Day after the later to occur of the following dates:

(1) the sixtieth (60th) day after both the completion of Landlord's Construction Work and the receipt by Tenant of notice thereof from Landlord; and

(2) the sixtieth (60) day after (i) a store operating under the tradename Bed Bath & Beyond containing not less than 23,000 square feet of ground floor area is open for business to retail customers in the Shopping Center and (ii) a store operating under the tradename Best Buy (or a replacement regional or national retail tenant reasonably acceptable to Tenant) containing not less than thirty thousand (30,000) square feet of ground floor area is open for

g:\legal\twynne\marshalls\tx\san marcos\mooflse doc                1

business to retail customers in the Shopping Center; and

(3) the tenth (10th) day after Landlord shall have delivered to Tenant (or Tenant shall have obtained) a current certificate of occupancy (or its equivalent) for the Demised Premises, if the same shall be issuable in accordance with local law or custom (provided that if Tenant performs its fixturing illegally and such delays issuance of same, such shall be deemed delivered as if Tenant had not done so); and

(4) the sixtieth (60th) day after Landlord shall have completed "shell construction" of not less than one hundred twenty thousand (120,000) square feet of building floor area in Landlord's Parcel (excluding the Demised Premises), "shell construction" shall mean the foundation, all exterior walls, roof, and all doors and windows (including glass or aesthetically suitable temporary substitutes for such glass); and

(5) the sixtieth (60th) day after Landlord shall have delivered to Tenant the necessary governmental permits and approvals for Tenant's identification panel on the Pylon Sign, as provided in Paragraph 3 of Schedule B to the Lease; and

(6) the tenth (10th) day after completion of construction of the Common Areas (defined in Paragraph 2 of Schedule B to the Lease ), and

(7) September 15, 2006.

Notwithstanding anything in the Lease contained to the contrary, if the Demised Premises shall be opened for business with customers prior to the Commencement Date determined as above provided, such date of opening shall be the Commencement Date.

5. Duplicate of the originals of the Lease are in the possession of the Landlord and Tenant and reference should be made thereto with respect to any questions arising in connection therewith. The addresses for Landlord and Tenant are as follows:

Landlord:
**Lincoln PO Red Oak Village, L.P.
c/o Lincoln Property Company
3300 Lincoln Plaza
500 N. Akard
Dallas, TX 75201
Attn: Robert Dozier**

Tenant:
**Marmaxx Operating Corp.
770 Cochituate Road
Framingham, Massachusetts 01701
Attn: Vice President-Real Estate**

6. The Lease contains certain restrictions upon the remainder of the Shopping Center property described in Schedule A, as set forth in Schedule B of the Lease, including without limitation, the following:

(A) Landlord agrees that Landlord's Parcel shall not be used (a) for any non-retail purposes (repairs, alterations and offices incidental to retailing, and banks and small loan offices, not being deemed non-retail), or (b) for any entertainment purposes such as a bowling alley, skating rink, cinema, bar, nightclub, discotheque, amusement gallery, poolroom, health club, massage parlor, sporting event, sports or game facility, off-track betting club (c) or for any establishment which sells or displays pornographic materials or (d) for any establishment which sells or displays used merchandise or second hand goods. No restaurants or establishments selling food prepared on premises for consumption on or off premises shall be located in Landlord's Parcel within 200 linear feet of the closest demising wall of the Demised Premises. Anything in this paragraph 4(A) to the contrary notwithstanding, Landlord and Tenant hereby agree as follows: professional offices which offer services to the general public and which are normally found in first class shopping centers such as dentists, accountants, lawyers, doctors, real estate and stock brokerage offices ("Professional Offices") and service oriented office uses which are normally found in first class shopping centers such as travel agencies, insurance agencies, weight loss clinics and financial institutions ("Service Oriented Uses") shall be permitted within the buildings labeled as Retail 1 and Retail 2 on the Lease Plan, provided that such Professional Offices and Service Oriented Uses shall not

exceed 10,000 square feet in the aggregate. (Collectively the uses described herein are referred to as the "Prohibited Uses").

(B) Landlord agrees that, from the date hereof until expiration of the term of this lease, no other premises in Landlord's Parcel shall at any time contain more than twenty five thousand (25,000) square feet of floor area therein used or occupied for, or devoted to, the sale or display of off-price apparel and related accessories (the merchandise referred to above is herein referred to as the "Protected Merchandise"). The computation of such floor area shall include on half (1/2) of all floor area in any aisles, corridors or similar spaces adjacent to or abutting any racks, gondolas, shelves, cabinets, counters or other fixtures or equipment containing or used for the sale or display of the Protected Merchandise. The foregoing uses described in this Paragraph 4(B) are hereinafter collectively referred to as a "Competing Use."

(C) The provisions of this Paragraph 4 shall not apply with respect to rights previously granted to tenants or occupants under leases or agreements existing as of the date hereof (collectively "Existing Leases") for only so long as such Existing Leases continue in full force and effect and only to the extent such Existing Leases permit such Prohibited Uses or the Competing Uses. Landlord agrees not to amend any Existing Leases to permit the Prohibited Uses or the Competing Uses. Landlord warrants and represents that the only Existing Leases which grant tenants or occupants the right to use their respective premises for the Prohibited Uses or the Competing Uses are listed on Schedule J attached hereto.

7. It is understood and agreed that the only purpose of this Memorandum of Lease is to give notice of the Lease; it being distinctly understood and agreed that said Lease constitutes the entire lease and agreement between Landlord and Tenant with respect to the Demised Premises. The Lease contains additional rights, terms and conditions not enumerated in this instrument. This instrument is not intended to vary the terms of the Lease, including such rights, terms and conditions and in the event of any inconsistency between the provisions of this Memorandum of Lease and the Lease, the provisions of the Lease shall control.

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum pursuant to due authorization.

**WITNESS:**

Lincoln PO Red Oak Village, L.P.,
a Delaware limited partnership

By: Lincoln GP Red Oak Village, Inc.
a Texas corporation,
general partner

By: _____
Name: Robert Dozier
Title: Executive Vice President

**WITNESSES AS TO BOTH:**

MARMAXX OPERATING CORP., a Delaware corporation

By _____
Ann McCauley
Secretary/Clerk

By _____
Mary B Reynolds
Vice President/Treasurer

g \legal\twynne\marshalls\tx\san marcos\mooflse doc        3

## LANDLORD'S ACKNOWLEDGMENT

STATE OF Texas  )
                ) SS.
CITY/COUNTY OF Dallas )

The foregoing instrument was acknowledged before me this 4th day of August, 2005 by Robert Dozier and _____ on behalf of LINCOLN PO RED OAK VILLAGE, L.P.

_Jennifer Rodgers_
Notary Public
My Commission Expires:

JENNIFER RODGERS
MY COMMISSION EXPIRES
June 9, 2007

g:\legal\twynne\marshalls\tx\san marcos\mooflse doc         4

## TENANT'S ACKNOWLEDGMENT

COMMONWEALTH OF MASSACHUSETTS    )
                                 ) SS.
COUNTY OF MIDDLESEX              )

On this 6th day of September, 2005, before me, the undersigned notary public, personally appeared Ann McCauley as Secretary/Clerk and Mary B. Reynolds as Vice President/Treasurer, respectively, of Marmaxx Operating Corp. on behalf of the corporation, proved to me through satisfactory evidence of identification, which is personal knowledge of the identity of both, to be the people whose names are signed on the preceding document and who acknowledged that they signed it voluntarily for its stated purpose.


Notary Public
My Commission Expires:

DIANNE M GOODNISS
Notary Public
Commonwealth of Massachusetts
My Commission Expires Aug 29, 2008

## SCHEDULE A

### DESCRIPTION OF SHOPPING CENTER AND DEMISED PREMISES

The Demised Premises consist of a one-story building, to be constructed by Landlord as herein provided, and contain approximately twenty eight thousand three hundred eighty four (28,384) square feet of floor area having a frontage and width of one hundred fifty (150) feet and other dimensions as shown upon the plan attached hereto ("the Lease Plan"), and are a portion of the premises within the Shopping Center referred to hereinbelow labeled Area A on the Lease Plan. The area labeled Tenant's Critical Area on the Lease Plan shall not be modified in any way without Tenant's consent, which may be withheld at Tenant's sole and absolute discretion, except to the extent required by any governmental authority. The area outside Tenants Critical Area shall not be modified in any way which would materially adversely affect the visibility of Tenant's storefront signs or accessibility of the Demised Premises to and from any other portion of the Shopping Center or the Main Streets, or which would result in a reduction in the number of parking spaces below the requirements of Schedule B, paragraph 2 below. In addition, Tenant shall have the exclusive right to use certain service areas adjacent to the Demised Premises which contain an exterior loading dock and trash storage area for Tenant's delivery and removal activities and for Tenant's compactor, dumpster and/or trash receptacles. It is expressly understood and agreed that said service areas shall not be included in computing minimum rent pursuant to Section 5 1 of the lease or Tenant's Fraction (defined in Section 6 1) for purposes of Article VI and Paragraph 10 of Schedule B. If after completion of Landlord's Construction Work the Demised Premises shall contain more or less than the floor area required above then, in addition to all other remedies of Tenant, as a result thereof, the minimum rent payable by Tenant pursuant to Section 5 1 shall be increased or reduced proportionately, but in no event shall Tenant pay rent on more than 29,000 square feet of floor area. Landlord agrees that the name of the Shopping Center shall not contain the trade name of any business operated in the Shopping Center (for example, the Shopping Center shall not be named the Lowe's Shopping Center"

The Demised Premises are situated within the so-called Red Oak Village Shopping Center, to be constructed by Landlord as herein provided, at the southeast corner of the intersection of Interstate 35 and Wonderworld Drive (herein collectively referred to as "the Main Streets") in San Marcos, Texas. The Shopping Center is the land, together with the buildings and other structures from time to time thereon, shown on the Lease Plan, and is more particularly described as follows

### LEGAL DESCRIPTION

TRACT 1: Lot(s) 5 and 6, SECTION 1 MCKINLEY PLACE, a subdivision in Hays County, Texas, according to the map or plat thereof, recorded in Volume 9, Page(s) 186 of the Plat Records of Hays County, Texas.

TRACT 2: Lot 7, SECTION 1 MCKINLEY PLACE, a subdivision in Hays County, Texas, according to the map or plat thereof, recorded in Volume 10, Page(s) 79 of the Plat Records of Hays County, Texas.

TRACT 3: A 17.037 acre tract of land, more or less, out of the J.M. Veramendi Survey No. 1 in Hays County, Texas and being more particularly described by metes and bounds on Exhibit "A" attached hereto.

TRACT 4: Lot A, MUNICIPAL AIRPORT SUBDIVISION, a subdivision in Hays County, Texas, according to the map or plat thereof, recorded in Volume 8, Page(s) 285 of the Plat Records of Hays County, Texas.

TRACT 5: An 18.252 acre tract of land, more or less, out of the J.M. Veramendi Survey No. 1 in Hays County, Texas and being more particularly described by metes and bounds on Exhibit "B" attached hereto.

FIELD NOTES FOR A 17.037 ACRE TRACT IN THE J.M. VERAMENDI SURVEY NO. 1 IN THE CITY OF SAN MARCOS, HAYS COUNTY, TEXAS.

BEING a 17.037 acre tract or parcel of land out of and being a part of the J.M. Vermendi Survey No. 1 in the City of San Marcos, Hays County, Texas, and being a part of that certain 116.94 acre tract described in a deed from H.L. Schulle, Trustee, to Mary Anne Hood, Trustee, recorded in Volume 263, Page 522, Hays County Deed Records. Herein described tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½ inch iron rod with survey cap found in the southwest line of the said 116.94 acre tract at the south corner of Lot No. 4, Section 1, McKinley Place, a subdivision in said county as recorded in Volume 9, Page 186, Hays County Plat Records, for the west corner of this tract. Said point being in the northeast line of Lot A, Municipal Airport Subdivision, as recorded in Volume 163, Page 161, Hays County Deed Records.

THENCE with the southeast line of Lots No. 4, 5 and 6 of Section 1, McKinley Place Subdivision, N 44 deg. 51 min. 07 sec. E, 185.22 feet to a ½ inch iron rod with survey cap found; N 44 deg. 47 min. 37 sec. E, 200.42 feet to a ½ inch iron rod with survey cap found; N 44 deg. 48 min. 05 sec. E, 199.02 feet to a ½ inch iron rod with survey cap found in the southwest line of McKinley Place Drive, a 60 foot roadway as shown on plat of said subdivision, the east corner of Lot No. 6, for the north corner of this tract.

THENCE with the southwest line of McKinley Place Drive, along a curve to the left whose radius is 330.00 feet; whose long chord bears S 52 deg. 11 min. 43 sec. E, 82.77 feet; 82.99 feet along the arc to a 5/8 inch iron rod set at the end of said curve.

THENCE continuing with the southwest line of McKinley Place Drive, S 59 deg. 32 min. 34 sec. E, 100.00 feet to a 5/8 inch iron rod set at the beginning of a curve to the right.

THENCE with said curve to the right whose radius is 270.00 feet; whose long chord bears S 52 deg. 07 min. 59 sec. E, 69.90 feet; 70.10 feet to a 5/8 inch iron rod set at the end of said curve and termination of said drive, for an interior corner of this tract.

THENCE with the terminus of McKinley Place Drive, N 45 deg. 15 min. 44 sec. E, 60.00 feet to a ½ inch iron rod with survey cap found in the southwest line of Lot No. 1, Section 1, McKinley Place, as recorded in Volume 7, Page 156, Hays County Plat Records, the east corner of said McKinley Place Drive, for an angle corner of this tract.

THENCE with the southwest line of Lot No. 1, Section 1, McKinley Place Subdivision, S 44 deg. 43 min. 02 sec. E, 587.49 feet to a ½ inch iron rod with survey cap found at the north corner of that certain 0.059 acre tract described in a deed from Mary Anne Hood, Trustee, to Century Telephone of San Marcos, Inc., recorded in Volume 1289, Page 21, Hays County Deed Records, for an east corner of this tract.

THENCE with the northwest line of the Century Telephone tract, S 45 deg. 25 min. 30 sec. W, 49.94 feet to the west corner of same, a ½ inch iron rod with survey cap found for an interior corner of this tract.

THENCE with the southwest line of the Century Telephone tract, S 44 deg. 41 min. 44 sec. E, 54.41 feet to the south corner of same, a 5/8 inch iron rod set in the curving northwest line of Leah Avenue, a 60 foot roadway as shown on the Plat of Lot 3, Block 1, Section 2, McKinley Place, a subdivision as recorded in Volume 8, Page 204, Hays County Plat Records, for the east corner of this tract.

THENCE with the northwest line of Leah Avenue, along a curve to the left whose radius is 330.00 feet; whose long chord bears S 10 deg. 26 min. 26 sec. W, 283.68 feet; 293.22 feet along the arc to a 5/8 inch iron rod set to replace a 60d nail found at the end of said curve.

THENCE continuing with the northwest line of Leah Avenue, S 15 deg. 07 min. 36 sec. E, 99.99 feet to a 5/8 inch iron rod set to replace a 60d nail found at the beginning of a curve to the right.

THENCE with said curve to the right whose radius is 270.00 feet; whose long chord bears S 14 deg. 54 min. 21 sec. W, 270.92 feet; 283.81 feet along the arc to a 5/8 inch iron rod set at the end of said curve.

THENCE continuing with the northwest line of Leah Avenue, S 45 deg. 09 min. 50 sec. W, 126.26 feet to a ½ inch iron rod with survey cap found where same intersects the southwest line of the before mentioned 116.94 acre tract, the east corner of that certain 1.056 acre tract described in a deed from SLC6a Joint Ventures to W.C. Carson, recorded in Volume 2074, Page 401, Hays County Deed Records, for the south corner of this tract.

THENCE with the southwest line of the 116.94 acre tract, the northeast line of the Carson 1.056 acre tract and northwest line of that certain 15.92 acre tract described in a deed from W.C. Carson, Trustee, to W.C. Carson, recorded in Volume 845, Page 806, Hays County Deed Records and northeast line of that certain 0.629 acre tract described in a deed from the City of San Marcos to W.C. Carson recorded in Volume 1642, Page 141, Hays County Deed Records, N 44 deg. 36 min. 46 sec. W, at 49.84 feet pass a 1 inch iron pipe found at the north corner of the 1.056 acre tract and east corner of the Carson 15.92 acre tract, at 1021.89 feet pass the north corner of the Carson 15.92 acre tract and east corner of the 0.629 acre tract, in all, 1071.80 feet to a ½ inch iron rod with survey cap found at the north corner of the Carson 0.629 acre tract, for an angle corner of this tract.

THENCE continuing with the southwest line of the 116.94 acre tract and northeast line of the Municipal Airport Subdivision, N 44 deg. 40 min. 01 sec. W, 199.44 feet to the POINT OF BEGINNING, containing 17.037 acres of land.

FIELD NOTES FOR AN 18.252 ACRE TRACT IN THE J.M. VERAMENDI SURVEY NO. 1 IN THE CITY OF SAN MARCOS, HAYS COUNTY, TEXAS.

BEING an 18.252 acre tract or parcel of land out of and being a part of the J.M. Veramendi Survey No. 1 in the City of San Marcos, Hays County, Texas, and being a part of that certain 15.92 acre tract described in a deed from W.C. Carson, Trustee, to W.C. Carson, recorded in Volume 845, Page 806, Hays County Deed Records, and being all

of that certain 0.258 acre tract described in a deed from Brian F. McCoy, et ux, to W.C. Carson, recorded in Volume 1642, Page 117, Hays County Deed Records, and being all of that certain 0.629 acre tract described in a deed from the City of San Marcos to W.C. Carson, recorded in Volume 1642, Page 141, Hays County Deed Records, and being all of that certain 1.056 acre tract described in a deed from the City of San Marcos to W.C. Carson, recorded in Volume 1642, Page 147, Hays County Deed Records and being all of that certain 1.056 acre tract described in a deed from SLC61 Joint Venture to W.C. Carson, recorded in Volume 2074, Page 401, Hays County Deed Records. Herein described tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½ inch iron rod with survey cap found at the intersection of the southwest line of that certain 116.94 acre tract described in a deed from H.L. Schulle, Trustee, to Mary Anne Hood, Trustee, recorded in Volume 263, Page 522, Hays County Deed Records, with the northwest line of Leah Avenue, a 60 foot roadway as shown on the plat of Lot 1, Block A, Cottonwood Crossing, a subdivision as recorded in Volume 10, Page 151, Hays County Deed Records, the east corner of the before mentioned 1.056 acre tract recorded in Volume 2074, Page 401, Hays County Deed Records, for the east corner of this tract.

THENCE with the northwest line of Leah Avenue and southeast line of the last mentioned 1.056 acre tract, S 45 deg. 18 min. 31 sec. W, 924.10 feet to a 5/8 inch iron rod set at the beginning of a curve to the right.

THENCE with said curve to the right whose radius is 15.00 feet; whose long chord bears S 75 deg. 33 min. 01 sec. W, 14.70 feet; 15.36 feet along the arc to a 5/8 inch iron rod set at the end of said curve in the northeast line of Cottonwood Parkway, a future 70 foot roadway, the south corner of the 1.056 acre tract, for the south corner of this tract.

THENCE with the south line of the 1.056 acre tract, N 02 deg. 28 min. 47 sec. W, 57.49 feet to the west or southwest corner of same, a 5/8 inch iron rod set in the southeast line of the before mentioned 15.92 acre tract, for an interior corner of this tract.

THENCE with the southeast line of the 15.92 acre tract, S 45 deg. 19 min. 03 sec. W, 40.66 feet to a ½ inch iron rod found where same intersects the northeast line of Cottonwood Parkway, the future 70 foot roadway for an angle corner of this tract.

THENCE with the northeast line of Cottonwood Parkway, N 44 deg. 42 min. 42 sec. W, 99.99 feet to a ½ inch iron rod found at the beginning of a curve to the right.

THENCE with said curve to the right whose radius is 406.21 feet; whose long chord bears N 23 deg. 35 min. 27 sec. W, 292.22 feet; 298.92 feet along the arc to a 5/8 inch iron rod set at the end of said curve.

THENCE continuing with the east or northeast line of Cottonwood Parkway, N 02 deg. 30 min. 34 sec. W, 157.64 feet to a 5/8 inch iron rod set at the beginning of a curve to the left.

THENCE with said curve to the left whose radius is 703.87 feet; whose long chord bears N 23 deg. 49 min. 35 sec. W, 511.06 feet; 523.01 feet to a ½ inch iron rod with survey cap found at the end of said curve, the west corner of the before mentioned 0.258 acre tract and south corner of the before mentioned 0.629 acre tract.

THENCE continuing with the northeast line of Cottonwood Parkway and southwest line of the 0.629 acre tract, N 45 deg. 09 min. 49 sec. W, 50.10 feet to a ½ inch iron rod with survey cap found at the west corner of the 0.629 acre tract, for the west corner of this tract.

THENCE with the northwest line of the 0.629 acre tract, N 44 deg. 48 min. 48 sec. E, 547.70 feet to the north corner of same, a ½ inch iron rod with survey cap found in the southwest line of the before mentioned Hood 116.94 acre tract, for the north corner of this tract.

THENCE with the southwest line of the Hood 116.94 acre tract, the northeast line of the 0.629 acre, 15.92 acre and 1.056 acre tract, S 44 deg. 36 min. 46 sec. E, at 49.91 feet pass the east corner of the 0.629 acre and north corner of the Carson 15.92 acre tract, at 1021.96 feet pass a 1 inch iron pipe found at the east corner of the 15.92 acre and north corner of the 1.056 acre tract, in all, 1071.80 feet to the POINT OF BEGINNING, containing 18.252 acres of land.

Filed for Record in:
Hays County
On: Sep 12,2005 at 04:14P
Document Number:      05026695
Amount:                  44.00
Receipt Number - 132591
By,
Olga Martinez, Deputy
Lee Carlisle, County Clerk
Hays County

A-3