Bk        Vol       Pg
70021072  OPR       3211      2

**WHEN RECORDED, RETURN TO:**

**Robins, Kaplan, Miller & Ciresi L.L.P.**
**2800 LaSalle Plaza**
**800 LaSalle Avenue**
**Minneapolis, MN 55402-2015**
**Attn: Martina Sailer, Esq.**
**(Best Buy Store #828A)**

---

Space Above This Line for Recorder's Use

MEMORANDUM OF LEASE AGREEMENT

This Memorandum of Lease Agreement (this "Memorandum") is executed as of May 29, 2007, by and between LINCOLN PO RED OAK VILLAGE, L.P., a Texas limited partnership ("Landlord"), and BEST BUY STORES, L.P., a Virginia limited partnership ("Tenant").

WITNESSETH:

WHEREAS, Landlord and Tenant have entered into a Lease (the "Lease") dated as of March 30, 2007, the terms, provisions and conditions of which are incorporated herein by reference to the same extent as if recited in their entirety herein, whereby Landlord has leased to Tenant the premises (the "Premises") located in Red Oak Village (the "Shopping Center"), in San Marcos, Texas, said Shopping Center being more particularly described on <u>Exhibit A</u> attached hereto.

Special reference is hereby made to the following terms and provisions of the Lease:

1.  **Term; Option to Extend.** The term of the Lease (the "Lease Term") shall be for a period of ten (10) "Lease Years," as that term is defined in the Lease. The term shall commence on the "Commencement Date" which is the earlier of (i) two hundred sixty (260) days after the Actual TI Date, as that term is defined in the Lease, or (ii) the date Tenant opens for business to the public at the Premises. The term shall expire on the last day of the tenth (10th) consecutive "Lease Year," unless sooner terminated or extended as provided in the Lease.

Tenant is given the right to extend the Lease Term for four (4) additional periods of five (5) years per period, upon the same terms and conditions as provided in the original term of the Lease.

2.  **Tenant's Fixtures and Signs.** Subject to all applicable laws, Tenant, at its sole cost and expense, may install and operate its standard interior and exterior electric and other

1

(2444)
MP2 15345585.1

signs, machinery and other mechanical equipment in and on the Premises. Landlord shall, in accordance with Tenant's plans and specifications attached to the Lease as Exhibit D, obtain all requisite approvals for, and construct, Tenant's standard storefront structure, including building design, height and signage, for Tenant's installation, at Tenant's sole cost and expense, which includes Tenant's standard 25'3" x 15'6" yellow and black ticket sign tilted five (5) degrees, with dimensions as shown on Exhibit D of the Lease and mounted on Tenant's standard storefront structure, as depicted on Exhibit D of the Lease. Tenant may also install and maintain in the Premises such pipes, conduits and ventilating ducts as are required or desirable for the business conducted by Tenant therein. Tenant shall at all times have the right to remove all signs, fixtures, machinery, equipment, appurtenances or other property heretofore or hereafter furnished or installed by Tenant; provided it repairs any damage caused thereby, it being expressly understood and agreed by the parties that said property shall not become part of the Premises but shall at all times be and remain the property of Tenant and as such shall not be subject to any landlord's lien or other creditor's remedy otherwise available to Landlord, unless Landlord obtains a judgment lien against Tenant.

Subject to the provisions of Article 12 of the Lease, on or before the Scheduled TI Date, Landlord shall, at its sole cost and expense, obtain all requisite approvals for and construct two (2) Shopping Center pylon signs for Tenant's installation on each side of the pylons of its standard pylon sign panel having a minimum area of panel as shown on Exhibit D of the Lease for Tenant's standard yellow and black tilted ticket at the locations designated on Exhibit B of the Lease and as shown on Exhibit D of the Lease. Landlord agrees the structure for said Shopping Center pylon sign shall be designed so as to permit Tenant to affix the appropriate double-sided sign panel to the pylon structure without on-site fabrication of fastenings or a method thereof. In addition to the foregoing and not in substitution therefor, if Landlord shall construct any additional pylon sign(s) for the Shopping Center, Tenant shall be entitled to space on any such additional Shopping Center pylon sign(s), as well as on all other pylon or free-standing signs for or in the Shopping Center, with space and location of panel on all such signs based on the pylon sign panels as shown on Exhibit D of the Lease.

Tenant may place on the interior and exterior of the Premises any sign which conforms to applicable legal requirements. Subject to all applicable legal requirements, Tenant shall have the right, at its sole cost and expense, to install its standard prototype signage on all sides and rear of the building with, at Tenant's expense, either its standard yellow 6' letter sets or a yellow and black ticket sign, as shown on Exhibit D of the Lease.

Subject to applicable laws, Tenant shall have the right to designate its colors and sign face for its panel on any pylon or free-standing sign to which Tenant is allowed space or Tenant's storefront signage and structure.

It is expressly agreed between Landlord and Tenant that Landlord shall be solely responsible, at Landlord's sole cost and expense on or before the Scheduled TI Date, for obtaining any and all permits and approvals required and/or necessary to enable Tenant to install Tenant's signage as specified in the Lease.

(2444)
MP2 15345585.1

Landlord shall have no right to (i) place or maintain any signs of any type, other than those of Tenant, on the Premises, including the exterior walls and roof thereof, or (ii) permit any person or entity, other than a retail tenant of the Shopping Center, to place or maintain any signage of any type in the Shopping Center.

    3.    **Alterations to Shopping Center.** Landlord will not place or permit to be placed by any person or entity other than Tenant any building, wall, landscaping, fence or other improvement or make any other alterations or changes, other than those of a de minimus nature, other than improvements shown as existing or planned, in the area identified as the "Tenant's Protected Area" on the Site Plan attached to the Lease as Exhibit B, other than improvements in Tenant's Protected Area shown on the Site Plan attached to the Lease as Exhibit B, or other improvements or changes to the Shopping Center or upon any outparcel(s) thereto other than improvement(s) shown as existing or planned on the Site Plan without Tenant's prior written approval, which approval shall be granted, withheld or conditioned in Tenant's reasonable discretion, or permit the Common Areas to be used in such a way which interferes with Tenant's operation of its business from the Premises.

Subsequent to the Scheduled TI Date, as such term is defined in the Lease, Landlord agrees to exercise its commercially reasonable efforts to minimize any interference with the completion of the construction of the Premises, the fixturing and merchandising thereof, or the operation of Tenant's business therefrom, and further agrees, from and after the date Tenant opens for business to the public from its Premises, (a) to limit all construction staging to the rear of the Shopping Center; (b) to permit no construction of, or scaffolding upon, the front of any building in the Shopping Center between the dates of October 1st and January 1st of any Lease Year, except in the event of an emergency; and (c) to have any scaffolding within the Shopping Center removed within seventy-two (72) hours of completion of the work for which it was necessary. In the event Landlord shall fail to correct any violation of Article 28 of the Lease within three (3) business days from its receipt of written notice thereof from Tenant, Tenant shall be entitled to liquidated damages of Two Thousand and No/100 Dollars ($2,000.00) per day for each day thereafter that such condition remains a violation under the Lease.

Landlord and Tenant agree that the Shopping Center shall not contain any outparcels except in the locations shown on the Site Plan attached to the Lease as Exhibit B. Any building or improvement to be constructed on such approved outparcel shall be as follows:

    (a)    single-story structures of not more than the building area shown on Exhibit B of the Lease;

    (b)    limited to twenty-six (26) feet in height to the highest point of any roof, wall, parapet, or screening or other improvement; and

    (c)    have a self-contained parking field in compliance with all applicable Laws as if it were a free-standing site without benefit of cross-parking rights as to the balance of the Shopping Center.

(2444)
MP2 15345585.1

4. **Exclusivity and Use.** Subject only to the exclusive and restricted use provisions of Exhibit H of the Lease, Tenant may initially use and Landlord represents, warrants and covenants to and with Tenant that Tenant may lawfully use the Premises for sales, rental, service and warehousing (and if applicable, installation in motor vehicles) of the product categories listed below (collectively the "Best Buy Uses"), and, subject to the exclusive and prohibited use provisions set forth on Exhibit H of the Lease other products typically sold in the majority of Tenant's stores and any other lawful use, and, subject to the rights of tenants of the Shopping Center under leases in existence as of the effective date of the Lease, which tenants are listed on Exhibit H of the Lease, Landlord shall not permit any person or entity other than Tenant (or Tenant's parent company, affiliates, assignees, sublessees and assigns) in space leased directly or indirectly from Landlord within a radius of one (1) mile of the Shopping Center, to sell, rent, service (including diagnostic testing, maintenance and repair) and/or warehouse (and, if applicable, install in motor vehicles) the following product categories (regardless of whether new, used or refurbished): electronic equipment and appliances (including, without limitation, televisions, stereos, radios and DVD or video machines); major household appliances (including, without limitation, refrigerators, freezers, stoves, microwave ovens, dishwashers, washers and dryers); personal computers and peripherals, computer software; digital, downloadable and streamable entertainment; car radios, stereos, tape decks or phones; entertainment software (including compact discs, music videos, DVDs and prerecorded tapes); accessories and connectors for products sold by Tenant (including, without limitation, cable connectors, surge protectors, cables, wires and batteries); telephones, telecopy, facsimile and photocopy machines; photographic cameras or equipment; office equipment, supplies or furniture; sporting goods; books and magazines; any substitutes for or items which are a technological evolution of the foregoing items and any other related items without Tenant's prior written consent which may be granted or withheld in Tenant's sole and absolute discretion; provided the foregoing shall not prevent the operation of (i) one (1) store which is primarily an office supply store, one (1) store which is primarily a bookstore and one (1) store which is primarily a sporting goods retailer.

In addition to the foregoing and the prohibited and exclusive use provisions of Exhibit H of the Lease, Tenant shall have the right to (a) sell gourmet and other food items in support of and incidental to the foregoing product categories, and (b) use up to ten percent (10%) of the Premises for a non-alcoholic beverage kiosk or bar, including seating area, with food, snack and bakery items incidental thereto. "Landlord," for purposes of Article 30 of the Lease, shall be defined to include Landlord, and (i) if Landlord is a corporation, its principal shareholders; or (ii) if Landlord is a partnership, its partners and any principal shareholders or partners of any partner which is a corporation or shareholder; or (iii) if Landlord is a trust, the beneficiaries of any such trust, including the principal shareholders or partners of any beneficiary which is a corporation or trust, all of whom shall execute an agreement to be bound to Article 30 of the Lease. In no event shall Tenant be bound by any exclusives granted by Landlord to any other party or occupant without Tenant's prior written consent, which may be granted or withheld in Tenant's sole and absolute discretion, except only the exclusive use provisions set forth in Exhibit H of the Lease.

5. **Parking.** Landlord covenants and agrees that the parking areas of the Shopping Center shall at all times satisfy the requirements of any applicable governmental codes, ordinances and requirements (measuring a minimum of nine (9') feet by twenty (20') feet and as shown on Exhibit B attached to the Lease.

4

(2444)
MP2 15345585.1

Landlord covenants and agrees that the parking, ingress and/or egress areas in Tenant's Protected Area shall at all times be as shown on the Site Plan attached to the Lease as <u>Exhibit B</u>, and the number of parking spaces shown thereon shall at all times satisfy any and all governmental requirements related thereto. Landlord agrees that it is required to obtain Tenant's prior written approval and consent, which shall be given at Tenant's sole and absolute discretion, in order to alter, change, or reduce the parking, ingress and/or egress areas in Tenant's Protected Area as depicted on the Site Plan, attached to the Lease as <u>Exhibit B</u>.

6. **Termination.** Upon the expiration or sooner termination of the Lease, at the request of either party, Landlord and Tenant shall enter into and record a memorandum evidencing such termination in a form reasonably satisfactory to both parties.

This Memorandum is executed for the purpose of recordation in the Official Records of Hays County, Texas, in order to give notice of the terms and provisions of the Lease and is not intended and shall not be construed to define, limit or modify the Lease. In the event of a conflict between the terms hereof and the terms of the Lease, the terms of the Lease shall control. This Memorandum may be executed in counterpart.

[SIGNATURES ON FOLLOWING PAGE.]

(2444)
MP2 15345585.1

EXECUTED on the date first recited above.

**LANDLORD:**

Signed, sealed and delivered
in the presence of:

**LINCOLN PO RED OAK VILLAGE, L.P.**,
a Texas limited partnership

*Jenny Rodgers*
Witness

By Lincoln/MFIL Red Oak, Ltd.,
the general partner

*Edith Krischke*
Witness

By Lincoln GP Red Oak, Inc.,
its general partner

By: *[signature]*
Name: Robert Dozier
Title: Executive Vice President
Date: May 29, 2007

**TENANT:**

Signed, sealed and delivered
in the presence of:

**BEST BUY STORES, L.P.**,
a Virginia limited partnership

*[signature]*
Witness

By: BBC Property Co.,
a Minnesota corporation
Its: General Partner

*[signature]*
Witness

By: *[signature]*
Name: Alan Winner
Title: Sr. Corporate Counsel

Date: April 18, 2007

6

(2444)
MP2 15345585.1

STATE OF Texas            )
                          ) ss.
COUNTY OF Dallas          )

On May 29, 2007, before me, Jenny Rodgers, a Notary Public in and for said state, personally appeared Robert Dozier, the Executive Vice President of Lincoln PO Red Oak Village, L.P., a Texas limited partnership, by Lincoln/MFIL Red Oak, Ltd., the general partner, by Lincoln GP Red Oak, Inc., its general partner, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Jenny Rodgers_
Notary Public
My Commission Expires: 06-09-11

[Seal: JENNY RODGERS, Notary Public, State of Texas, Comm. Exp. 06-09-11]

STATE OF MINNESOTA       )
                         ) ss
COUNTY OF HENNEPIN       )

On April 18, 2007, before me, Teresa A. Gaukel, a Notary Public in and for said state, personally appeared Alan Winner, the Sr. Corporate Counsel of BBC PROPERTY CO., a Minnesota corporation, the general partner of BEST BUY STORES, L.P., a Virginia limited partnership, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Teresa Gaukel_
Notary Public
My Commission Expires: 1/31/2010


[Seal: TERESA A. GAUKEL, NOTARY PUBLIC - MINNESOTA, MY COMMISSION EXPIRES JAN. 31, 2010]

(2444)
MP2 15345585.1

# EXHIBIT A TO MEMORANDUM OF LEASE AGREEMENT

## Legal Description

**TRACT 1:** Lots 5 and 6, SECTION 1 MCKINLEY PLACE, a subdivision of Hays County, Texas, according to the map or plat thereof, recorded in Book 9, Page 186 of the Plat Records of Hays County, Texas.

**TRACT 3**: Lots 2, 3 and 5 of Final Plat of RED OAK VILLAGE SUBDIVISION, a subdivision of the City of San Marcos, Hays County, Texas, according to Map recorded on December 14, 2005 in Book 13, page 11-14 of the Plat Records of Hays County, Texas.

```
Filed for Record in:
Hays County
On: Jul 18,2007  at  02:42P
Document Number:        70021072
Amount:                    44.00
Receipt Number - 175254
          By,
Lynn Curry, Deputy
Linda C. Fritsche, County Clerk
Hays County
```

(2444)
MP2 15345585.1