05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

② $\Delta \Delta T \# 1-1983$ ㉛ 11 ∅

DOC# 400749

1229 830

### DECLARATION OF
### COVENANTS, CONDITIONS AND RESTRICTIONS

THIS DECLARATION, is made and entered into as of the date of the last execution hereof, which date is the _24_ day of _May_, 1996, by and between MARY ANN HOOD, TRUSTEE, and LOWE'S HOME CENTERS, INC., a North Carolina corporation ("Lowe's"); (the foregoing parties hereinafter collectively referred to as (the "Parties");

### W I T N E S S E T H :

WHEREAS, Lowe's is the owner of that certain tract of land located in Hays County, Texas as more particularly described as "Lowe's Property" on Exhibit A attached hereto and shown on the site plan attached as Exhibit B (the "Site Plan"), both of which exhibits are made by this reference a part hereof; and

WHEREAS, Seller is the owner of certain tracts of land located in Hays County, Texas, located contiguous with and adjacent to Lowe's Property, which property is designated on Exhibit B as "Seller Property" and is more particularly described in Exhibit C attached hereto and made a part hereof; and

NOW, THEREFORE, the Parties hereby declare that all of the parcels within the bounds of the real property described on Exhibit A and Exhibit C shall be held, sold and conveyed subject to the following easements, restrictions, covenants and conditions which are for the purpose of protecting the value and desirability of, and which shall run with the real property and be binding on all parties having any right, title or interest in the described properties or any part thereof, their heirs, successors and assigns and shall inure to the benefit of each owner thereof.   Further, in consideration of the premises, the promises and covenants of the Parties hereto, the mutual benefits and advantages accruing to them, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### ARTICLE I
### DEFINITIONS

Section 1.1   "Common Area" shall mean all real property owned by the Parties for the common use and enjoyment of the Owners, including non-dedicated streets.   The Common Area is referred to as "Common Area" on Exhibit B.

Section 1.2   "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title to any parcel which is a part of the Properties, as hereinafter defined, but excluding those having such interest merely as security for the performance of any obligation.

Section 1.3   "Parcel" shall mean and refer to any parcel of land shown on Exhibit B with the exception of the Common Area.   "Outparcel" shall mean and refer to any parcel of land shown for identification (and not for survey) purposes as a lettered reserve on Exhibit B.   Every Outparcel shall be a Parcel from the date of recording of a subdivision map showing the Outparcel, so that all references

1

OFFICIAL PUBLIC RECORDS
Hays County, Texas

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229  831

herein to Parcels shall apply with equal force to Outparcels; however, references to Outparcels shall be specific to Outparcels as herein defined.

Section 1.4    "Properties" shall mean and refer to that certain real property described on the attached Exhibit A and Exhibit C.

ARTICLE II

EASEMENTS

Section 2.1    Definitions and Documentation. For the purposes of this Article, the following will apply:

(a)    A Party granting an easement is called the "Grantor", it being intended that the grant shall thereby bind and include not only such Party but also its successors and assigns.

(b)    A Party to whom the easement is granted is called the "Grantee", it being intended that the grant shall benefit and include not only such Party but its successors, assigns, occupants and permittees; although not for the direct benefit of permittees, the Grantee may permit from time to time its occupants and permittees to use such easements; provided, however, that no such permission nor the division of the dominant estate shall permit or result in a use of the easement in excess of the use contemplated at the date of the creation of such easement.

(c)    The term "Building(s)" means the building(s) which has (have) been, will be or may be constructed within a Party's Permissible Building Area, (as that term is hereinafter defined in Section 2.1(j), but such term does not include Common Area Improvements (as that term is hereinafter defined in Section 2.1(g)).

(d)    The term "Common Area Improvements" means all improvements which will be or may be constructed under the terms of this Declaration, all perimeter sidewalks, and all other improvements which would be part of the "Common Area" under the above definition, and all improvements constructed from time to time in replacement of the same or in such redesign of the same as may be agreed to by the Parties.

(e)    The term "Common Utility Facilities" means utility systems and facilities from time to time situated on or serving the Properties, up to  the building wall of any Building, for use or service in common by both Parties or for the service of the Common Area, such as the following: storm drainage, retention and disposal facilities and sanitary sewer systems, manholes, underground domestic and fire protection water systems, underground natural gas systems, underground electric power cables and systems, underground telephone and television cables and systems, and all other utility systems and facilities for such common use or service, including, without limitation, those installed under the provisions of this Declaration and as replacements thereto.

(f)    The term "Improvements" means Building(s) and the Common Area Improvements on a Parcel.

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229  832

(g)    The word "in" with respect to an easement granted "in" a particular Parcel means, as the context may require, "in", "to", "on", "over", "through", "upon", "across", and "under", or any one or more of the foregoing.

(h)    The term "Party" means Seller or Lowe's and "Parties" means of the foregoing, or any successor person(s) acquiring any interest of a Party in or to any portion of such Party's Parcel.

(i)    The term "Permissible Building Area" means an area designated as such on the Site Plan within which a Building of a certain size and height may be constructed as hereinafter more fully provided.  No building, structure or improvements (other than Common Area Improvements) shall be erected or maintained outside of a Permissible Building Area.

(j)    The term "Separate Utility Facilities" means any of the following not installed under the terms of this Declaration and not for use in common by other Parties or for service of the Common Area: storm drainage facilities and sanitary sewer systems (including, without limitation, underground storm and sanitary sewer systems), underground domestic and fire protection water systems, underground natural gas systems, under ground electric power, cables and systems, underground telephone and television cables and systems, and all other utility systems and facilities reasonably necessary for the use or service of any Improvement ( as that term is hereinafter defined in Section 2.1(h)) situated on any Parcel.

(k)    INTENTIONALLY DELETED.

(l)    All easements granted herein are non-exclusive and are irrevocable and perpetual.

(m)    All easements herein shall be easements appurtenant and not easements in gross.

(n)    In the event a Party transfers or conveys a portion of its Parcel in accordance with the terms of this Declaration, those easements granted under this Article 2 which benefit, bind, and burden the remainder of the Parcel not transferred or conveyed shall benefit, bind, and burden the portion of the Parcel so transferred or conveyed, and those easements granted under this Article 2 which benefit, bind, and burden the portion so transferred or conveyed shall benefit, bind, and burden the remainder of the Parcel of which it was a part.

(o)    All easements granted hereunder shall exist by virtue of this Declaration, without the necessity of confirmation by any other document.  Likewise, upon the termination of any easement (in whole or in part) or its release in respect of all or any part of any Parcel, in accordance with the terms hereof, the same shall be deemed to have been terminated or released without the necessity of confirmation by any other document.  However, upon the request of a Party, the other Parties will sign and acknowledge a document memorializing the existence (including the location and any conditions), or the termination (in whole or in part), or the release (in whole or in part), as the case may be, of any easement, if the form and substance of the document is approved by the other Parties.  No grant of an easement

3

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 833

pursuant to this Article 2 shall impose any greater obligation on any Party to construct or maintain its Building except as expressly provided in this Declaration.

Section 2.2    Easements for Use of Common Area.  Each Party hereby grants to the other Party easements in the Common Area on its (Grantor's) Parcel for:

(a)    ingress to and egress from the Grantee's parcel;

(b)    the passage of vehicles (Provided, however, either Party may conduct parking lot sales and display merchandise in that portion of the Common Areas directly in front of either Party's building so long as it does not interfere with ingress and egress; is in accordance with customary practices at other similar stores; and is not in violation of any applicable law code or ordinance.  Further, notwithstanding anything herein to the contrary, subject to any restrictions of record, either Party shall have the right but not the obligation, to install and maintain a bank teller machine in their parking lot at a location that will not impede traffic flow on or between the Properties);

(c)    the passage and accommodation of pedestrians (provided, however, either Party may display merchandise and conduct sidewalk sales on the sidewalks on its own Property so long as pedestrian passage is not obstructed and otherwise enclose and/or redesign its sidewalks without the need of obtaining any other Party's consent); and

(d)    the doing of such other things as are authorized or required to be done on the Common Area under this Declaration;

Provided, however, that such easements are limited to such portions of the Common Area of the Grantor's Parcel as are now or hereafter from time to time set aside or intended to be set aside, maintained and authorized for such use under this Declaration, including those portions of the Common Area shown on the Exhibit B.  Nonetheless, it is specifically understood that those portions of the Common area shown on Exhibit B shall be subject to change upon mutual written and recorded agreement of the Parties.

Provided further that the Parties hereby specifically disclaim any intention to create any reciprocal parking easements between the Lowe's Property and the Seller Property.

Each Party hereby reserves the right to eject from the Common Area on its Parcel any person not authorized to use the same.  In addition, each Party reserves the right to close off the Common Area of its parcel for such reasonable periods of time as may be legally necessary in the reasonable opinion of its attorneys to prevent the acquisition of prescriptive rights by anyone.  Before closing off any part of the  Common Areas as provided above, such Party must give notice to the other Parties of its intention to do so and must coordinate its closing with the activities of the other Parties so that no unreasonable interference with the operation of the Properties occurs.

The easements provided for in this Section 2.2 are subject to the rights to use the Common Area for other purposes provided for in this Declaration; provided, however, that no changes

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229  834

shall be made in the Common Area or in the location or design of Common Area Improvements, except as otherwise herein provided.

Enjoyment of the easements granted by this Section shall commence on the date the Common Area in question is substantially completed.

Section 2.3    Easements for Access Roads.  Each Party hereby grants to the other Party easements for pedestrian and vehicular traffic in those strips of land (not less than the widths therefor shown on the Exhibit B) on its (Grantor's) Parcel which are shown on the Exhibit B as shaded roadways (hereinafter collectively referred to as the "Access Roads") for the purpose of providing ingress to and egress from the Grantee's Parcel,  to Wonder World Drive, IH-35 frontage road and the proposed Leah Drive, together with the following rights and subject to the following restrictions and reservations:

(a)    The use of the Access Road easements by any person entitled to the use thereof shall be in common with all other such persons.  The Access Road easements and the land upon which they are located shall be considered in all respects part of the Common Area, and the improvements thereon shall be considered in all respects part of the Common Area Improvements;

(b)    As further provided in Section 2.12 herein, Grantors of the Access Road easements agree not to obstruct or interfere in any way with the free flow of pedestrian and vehicular traffic over the roadways which comprise the Access Road, except to the extent necessary for reasonable repair and maintenance, traffic regulation and control, and to prevent a dedication thereof or the accrual of any prescriptive rights to any Person therein; and

(c)    The access points and drive lanes as shown on the Site Plan shall not be changed without the written permission of the other   Parties, which consent shall not be unreasonably withheld, delayed, or conditioned.  Provided, however, upon written request by the Party requesting permission for any change, the Party receiving such request should respond in writing to the request within thirty (30) days of receipt, and if no such response is received by the requesting Party within such thirty (30) days period, permission for such changes shall be deemed granted.

Section 2.4    Easements for Utility Facilities.  Each Party hereby grants to the other Parties perpetual easements to its (Grantor's) Parcel, except within such Party's Permissible Building Area, as shown on Exhibit B, for the installation, use, operation, maintenance, repair, replacement, relocation and removal of Common Utility Facilities and Separate Utility Facilities serving the Parcel of the Grantee.

All Separate Utility Facilities installed in the Common Area, whether installed under this Section or otherwise, and all Common Utility Facilities, shall be underground if reasonably possible and the location of the Separate Utility Facilities shall be subject to the approval of the Party across whose Parcel the same are to be located.

Except as otherwise provided herein, the Grantee of any easement for Separate Utility Facilities under this Section shall be responsible, as between such Grantee and the Grantor, for the installation, maintenance, repair and removal at Grantee's cost of all Separate Utility Facilities installed by

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 835

the Grantee pursuant to the easement grant, as well as for all Separate Utility Facilities installed by the Grantee on its own parcel. Any such installation, maintenance, repair, replacement, relocation and removal of Separate Utility Facilities shall be performed by Grantee only after thirty (30) days advance notice to Grantor of Grantee's intention to do such work. However, in the case of an emergency, any such work may be immediately performed after giving such advance notice to Grantor as is practicable under the circumstances. In addition, the Parties agree that all such installation, maintenance, repair and removal shall be performed in a manner that causes as little disturbance to Grantor as may be practicable under the circumstances and any and all portions of the surface area of Grantor's Parcel which may have been excavated, damaged or otherwise disturbed as a result of such work shall be restored, at the sole cost and expense of Grantee, to essentially the same condition as the same were in prior to the commencement of any such work. No such work or restoration, except emergency repair work, shall be carried on during the period from October 14 through the next succeeding January 4, or on any weekends.

The Grantee shall defend, indemnify and hold Grantor harmless from and against any and all liens, losses, liabilities, costs or expenses (including reasonable attorney's fees), incurred in connection with Grantee's exercise of the Separate Utility Facilities easements under this Section 2.4, except to the extent occasioned by Grantor's negligent or wrongful act or omission to act.

The Grantor of any easement for Separate Utility Facilities under this Section 2.4 may use the utility facilities installed pursuant to such easement; provided, however, that the increase in costs incurred in order to make such utility facilities adequate to serve Grantor's additional use shall be borne by such Grantor; and provided, further, that Grantor gives written notice within the time period called for under subparagraph (a) and otherwise complies with the requirements of subparagraphs (b), (c) and (d) of the following paragraph of this Section 2.4.

Except during the period from November 1 through the following January 15th, the Grantor of any easement under this Section 2.4 may relocate on its Parcel any Separate Utility Facilities or Common Utility Facilities installed thereon under any easement granted by it; provided, however, that such relocation:

(a)    may be performed only after Grantor has given Grantee thirty (30) days' written notice of its intention to relocate such facilities;

(b)    shall not interfere with or diminish the utility services to the Grantee (however, temporary interferences with and diminutions in utility services shall be permitted if they occur during the non-business hours of the Grantee, and Grantee has been so notified under Subsection 2.4(a). Grantor shall promptly reimburse Grantee for all reasonable costs, expenses and losses incurred by Grantee as a result of such interferences or diminutions, or both, if such interference caused cessation of Grantee's normal business operations.);

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 836

(c)     shall not reduce or unreasonably impair the usefulness or function of the facilities in question;

(d)     shall be located underground, as reasonably possible; and

(e)     shall be performed without cost or expense to Grantee, and, if Common Utility Facilities or Separate Utility Facilities which provide service to the Grantee are involved, in accordance with plans approved by the Grantee.

All Common Utility Facilities lying within any Common Area shall for all purposes be deemed to be included within the definition of Common Area Improvements.

Nothing herein shall be construed to grant any Party the right to utilize or drain into any detention facilities or retention located on any other Party's Parcel.

Section 2.5     Construction Easements. Each Party hereby grants to the other Party easements in the Common Area of its (Grantor's) Parcel, and prior to the construction of any Improvements thereon, where applicable in the Permissible Building Area on its Parcel, for the following:

(a)     The initial construction of the Improvements contemplated within this Declaration.

(b)     With respect to any Parcels on which fresh dirt is dumped, the area shall be sloped to meet any contiguous property within the Center or public roads, and shall be smoothed in a level manner consistent with the contours of the adjoining property or in accordance with a grading plan approved by the Grantor, which approval shall not be unreasonably withheld, conditioned or delayed.

The location of all easements under this Section 2.5 shall be subject to the approval of Grantor.

Each Grantee agrees to pay the Grantor that additional cost of construction, maintenance, repair and replacement of any improvement or structure constructed by Grantor which arises on account of Grantee's exercise of its easement rights under this Section 2.5. Each Grantee further agrees to use due care in the exercise of the rights granted under this Section 2.5 and, in the event the exercise of the rights granted under this Section 2.5 requires Grantee to enter upon the parcel of Grantor, to first obtain the consent of Grantor as to the methods and timing in the exercise of such rights.

Each Party covenants and agrees, respectively, that its exercise of such easements shall not result in damage or injury to the Buildings or other Improvements of any other Party, and shall not interfere with or interrupt the business operation conducted by any other Party in the Center. Provided further, the Parties agree that once the final topcoat of asphalt paving has been placed on the Lowe's Property, all construction traffic from the Seller's Property will be limited to the use of the adjacent roadways, without crossing over Lowe's Property, except as otherwise provided in this Declaration. In addition, each Grantee, at its sole cost and expense, shall promptly repair, replace or restore any and all improvements of Grantor which have been damaged or destroyed in the exercise by Grantee of the easements granted under this Section 2.5 and shall defend, indemnify and hold Grantor harmless from and against all liens, losses, liabilities, costs or expenses (including reasonable attorneys' fees) incurred in

7

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 837

connection with or arising out of Grantee's exercise of said easements, except to the extent occasioned by Grantor's negligent or wrongful act or omission to act.

Grantee's improvements in such easements shall, for purposes of maintenance, operation, insurance, taxes, repairs, reconstruction and restoration under this Declaration, be deemed to be part of the Grantee's parcel and Building and shall be deemed not to be part of the Grantor's Parcel or Building for such purposes.

Except as reasonably necessary for and during the construction of any building, no structure of a temporary character shall be erected or allowed to remain on any Parcel.

Section 2.6    Adjacent Building Construction. In the event a Building on Seller's Parcel is constructed adjacent to the Building on Lowe's Parcel the same shall be constructed by Seller in such manner as to meet all applicable fire and building code requirements, fully sprinklered having as a part thereof sufficient fire walls, all so that no additional improvements shall be required to be made by Lowe's to its Building to satisfy applicable governmental codes, ordinances and requirements.

Section 2.7    Self-Help Easements. Each Party hereby grants to the other Parties easements in the Common Area of its (Grantor's) Parcel for the installation, construction, repair, maintenance, relocation and removal of any and all Separate utility facilities and Common Area Improvements, if such installation, construction, repair, maintenance, relocation or removal is required or permitted under the other provisions of this Declaration. Each Grantee of the easements granted under this Section 2.7 shall defend, indemnify and hold Grantor harmless from and against all liens, losses, liabilities, costs or expenses (including attorney's fees) incurred in connection with or arising out of Grantee's exercise of said easements, except to the extent occasioned by the Grantor's negligent or wrongful act or omission to act. The duration of the easements granted under this Section shall be coterminous with the respective provisions of the Declaration which give the Grantee the right or the obligation to perform the work described in this Section.

Section 2.8    Exterior Light Easements. Each Party hereby grants to the other Parties who share a common boundary with Grantor, an easement to install, maintain, repair and replace, at the individual expense (including electricity) of Grantee, lights for the purpose of highlighting the exterior of the Grantee's Building, such lights to be placed on light standards within that portion of the Common Area on Grantor's Parcel contiguous to the Grantee's Parcel and within fifty (50) feet from the face of the Grantee's Building (the exact light standards to be used to be agreed upon by Grantor and Grantee), together with an easement of ingress to and egress from such light standards to accomplish such purpose. The position, location, type and character of such lights shall be subject to the approval of Grantor. Each Grantee agrees to use due care in the exercise of the rights granted under this Section 2.8 and to obtain Grantor's consent as to the methods and timing in the exercises of such rights, and further agrees, at Grantee's expense, to promptly repair, replace and restore any and all improvements of Grantor which have been damaged or destroyed by Grantee in the exercise of the rights granted under this Section 2.8

8

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 838

and to defend, indemnify and hold Grantor harmless from all loss, liability, cost or expense incurred in connection with or arising out of the exercise of such rights. The easements incurred in connection with or arising out of the exercise of such rights. The easements granted under this Section 2.8 shall terminate on the expiration of the term of this Declaration.

Section 2.9    Abandonment of Easements. After the expiration of the term of this Declaration, the perpetual easements granted Sections 2.3 and 2.4 hereof, or all or any part or parts thereof, may be abandoned and terminated, if the use thereof shall have ceased and cessation thereof continues for a continuous period of five (5) years. Thereafter the then record owner of the fee of the Parcel burdened with such easement may give written notice by United States certified mail, return receipt requested, mailed to the then record owner of the fee of the Parcel benefited by such easement and the then record owner, if any, of any leasehold interest in such benefited Parcel, stating that such easement has been abandoned and may place of record in the official Real Property Records of Hays County, Texas, an affidavit that such abandonment has taken place and that such notice has been properly given. If the then record owner of the fee of the benefited Parcel fails to place of record in the official Real Property Records of Hays  County, Texas, within ninety (90) days after the giving of such notice, an affidavit that such easement has not ceased to be used for such continuous five (5) year period, such easement shall thereupon be conclusively deemed abandoned and any person having or thereafter acquiring an interest in the Parcel previously burdened shall hold and take such interest free of and unencumbered by such easement.

Section 2.10    INTENTIONALLY DELETED.

Section 2.11    Easements to Public Utilities. Any grant or other conveyance of an easement permitted by Section 2.10 hereof to a public utility by Grantor on its Parcel shall, without necessity of further recital in the conveyancing instrument, be deemed to include the following conditions, covenants and restrictions to which such public utility and its successors shall be bound unless specifically stated otherwise in such instrument.

(a)    The easement is non-exclusive;

(b)    All facilities installed pursuant to the easement shall be underground, except for manhole and manhole covers which shall be flush with adjacent grade, and except as otherwise shown on plans approved by Grantor;

(c)    Grantor retains the right to use the surface areas as Grantor sees fit;

(d)    Grantor reserves the right to require Grantee to relocate its facilities (and vacate the easement) to another location on Grantor's Parcel, subject to the conveyance of a similar easement, all at Grantor's cost and expense;

(e)    Grantee shall not, in its use or installation, interfere with other installations and easements in the area;

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 839

(f)     Grantee shall protect its facilities against uses of the surface made by Grantor and others;

(g)     Grantee shall make adequate provisions for the safety and convenience of all persons using the area;

(h)     Grantee, following installation or other work, shall replace and restore the areas and improvements to the condition in which they were immediately prior to performance of such installation and work;

(i)     Grantee shall defend, indemnify and hold harmless Grantor against all loss, liability, and costs (including reasonable attorney's fees) which may result to Grantor from the negligent act or omission of, its agents, employees and contractors; and

(j)     Grantee shall not permit any claim, lien or encumbrance to attach against Grantor's Parcel or any interest therein.

Section 2.12    No Barrier Agreement.  No barriers, fences, grade changes or other obstructions shall be erected so as to impede or interfere in any way with the free flow of vehicular and pedestrian traffic between those portions of the Properties from time to time devoted to pedestrian access, vehicular roadways or parking area, or in any manner unreasonably restrict or interfere with the use and enjoyment by any of the Parties of the rights and easements created by this Article II.  The preceding sentence shall not prohibit the reasonable designation and relocation of traffic and pedestrian lanes.  In addition, each owner may temporarily close or block traffic on its Parcel for the time necessary for the purpose of protecting ownership rights and preventing creation of easements to the public and unrelated third parties (provided, however, that prior to closing off any portion of the Common Area, as herein provided, such Owner shall give fifteen (15) days written notice to each other Owner of its intention to do so and shall attempt to coordinate such closing with each other Owner, so that no unreasonable interference in the passage of pedestrians or vehicles shall occur), and may temporarily fence off portions of its Parcel as reasonably required for the purpose of repair, construction and reconstruction.

ARTICLE III
RESTRICTIONS

Section 3.1    Land Use and Building Type.  Every Parcel shall be used only for financial institutions, service shops, offices, and retail stores selling retail merchandise normally carried in other shopping centers and restaurants with over fifty (50%) percent of gross revenues from food sales.  No structures shall be erected or allowed to remain on any Parcel unless the plans and specifications as described below for such structure meet all applicable municipal and county ordinances and regulations. Proposed building footprint, site plan and elevation drawings of all building sides shall be presented to and approved in writing by the non-submitting Party prior to the commencing of any clearing, grading or construction of a building of any kind on a Parcel.  Provided, however, upon submission of such drawings, the Party receiving the same shall approve or disapprove such drawings within thirty (30) days of receipt

10

1229 840

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

and if no such response is received by the submitting Party within said thirty (30) day period approval of such drawings shall be deemed granted.

Section 3.2    Completion of Improvements. Upon completion of the foundation, an actual field survey of the foundation shall be presented to the non-submitting Party to ensure that it has been constructed in accordance with the building footprint and site plan. All improvements shall comply with the plans as presented by the submitting Party unless changes are approved in writing by the non-submitting Party. The right to make inspections necessary to assure compliance is reserved to the non-submitting Party. Weather permitting, all paving and landscaping will be finished upon completion of the building, but in no event shall it be installed later than ninety (90) days after the building is occupied. Total construction time from pouring footings to the completion of the building ready for occupancy shall not exceed one (1) year.

Section 3.3    Nuisances. Subject to the provisions of Section 3.1, no Parcel shall be used for anything other than purposes which may be permitted by applicable zoning regulations, nor shall anything be done on any Parcel which is a nuisance or any annoyance to the community.

Section 3.4    Use Restrictions.

(a)    During the term of this Agreement no portion of the Properties may be used for any of the following purposes without the written consent of Seller and Lowe's.

(i)    A tavern, bar, nightclub, discotheque or any other establishment selling alcoholic beverages for on-premises consumption; provided, however, the foregoing shall not prohibit the operation of a restaurant where the sale of alcoholic beverages therein comprises less than fifty (50%) percent of the restaurant's gross revenues.

(ii)    A bowling alley or game room.

(iii)    A theater (motion picture or legitimate), except as and where shown on Exhibit B.

(iv)    A health club or spa, except as and where shown on Exhibit B.

(v)    A service station or truck stop, except for an automobile retail service station as and where shown on Exhibit B subject to the following conditions: (A)    any such service station must be operated under a national or regional trade name (such as for purposes of example only Exxon, Texaco, Shell, Diamond Shamrock, etc.); (B) in the event that the service station improvements become vacant for a period longer than six (6) months for any reason other than an Excused Closing (as hereinafter defined), the Owner of the Parcel shall within thirty (30) days following receipt of written demand from the other Party raze and remove such service station improvements and landscape the Parcel in a sightly manner. For purposes hereof, Excused Closing shall mean Force Majeure or temporary closures due to restoration, reconstruction, expansion, alteration or remodeling.

(vi)    A flea market

(vii)    A school

(viii)    A car wash, except on an Outparcel and where the same shall have constructed and shall use sanitary sewer, water and stormwater drainage lines entirely separate from those utilized by the Lowe's Parcel.

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 841

 (b) During the term of this Agreement no portion of the Properties may ever be used for any of the following uses whatsoever:

  (i) An adult type bookstore or other establishment selling or exhibiting pornographic materials.

  (ii) A massage parlor.

  (iii) A skating rink.

  (iv) A mortuary.

  (v) A mobile home or trailer court, labor camp, junkyard or stockyard.

  (vi) A land fill, garbage dump or for the dumping, disposing, incineration or reduction of garbage.

 Section 3.5 INTENTIONALLY DELETED.

 Section 3.6 Use Restrictions on the Seller Property.  No portion of Seller Property shown on Exhibit B may be used for any of the following purposes (provided that such restrictions shall only apply to Seller Property for a continuous period of time not to exceed one (1) year after Lowe's Property is no longer used by Lowe's as a retail and/or warehouse home improvement center, lumber yard or building materials supply center):

  (a) A hardware store containing more than 9,000 square feet of leasable floor area.

  (b) An appliance and/or home electronics store containing more than 5,000 square feet of leasable floor area, except that this restriction shall not apply to a "Best Buy" or "Circuit City" or other merchandiser of similar size and reputation as the same are operated and typically stocked as of the date hereof.

  (c) A lawn and garden store containing more than 3,000 square feet of leasable floor area.

  (d) A paint and/or decor center containing more than 5,000 square feet of leasable floor area.

  (e) A retail and/or warehouse home improvement center, lumber yard, building materials supply center, substantially similar to that now operated by Lowe's, Home Depot, Home Owner's Warehouse, Home Quarters, Hechinger's, Builders Square, 84 Lumber, Wickes, Hughes Lumber, McCoys, Sutherlands and Payless Cashways.

  Subject to these restrictions, Seller reserves the right to subdivide, convey, lease or assign the Seller Property or any portion thereof through any means including, but not limited to, subdivision, lease, ground lease, condominium declaration or air-lot condominium declaration.

 Section 3.7 Outparcel Development.  Any Outparcel sold or developed on the Properties will only be developed under the following guidelines:

  (a) Any building constructed on any of the Outparcels shown on Exhibit B shall not exceed 6,000 square feet, except for Reserve Tract A, which shall not exceed 11,000 square feet.

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

**1229  842**

(b)    Any building constructed on any of the Outparcels shall not exceed 22 feet in height, as measured from the finished elevation of the parking area of the Properties.

(c)    Any rooftop equipment installed on any Outparcel shall be screened in a manner reasonably satisfactory to Seller and Lowe's;

(d)    No rooftop signs shall be erected on any building constructed on any Outparcel.

(e)    Freestanding identification signs may be erected on any Outparcel so long as (I) such sign's top edge is lower than the bottom edge of the Lowe's pylon sign depicted on Exhibit B; (ii) each sign's surface area does not exceed 80% of the surface area of the Lowe's pylon sign; (iii) any sign on the Parcel comprising the Reserve Tracts F and G must be placed at least one hundred sixty (160) feet from the Lowe's thirty-foot drive entrance to the IH-35 frontage road; (iv) the front edge of each sign must be at least ten (10) feet back from any property line of each Outparcel along the IH-35 frontage road; and (v) the sign meets all applicable minimum municipal and county ordinances and regulations. Notwithstanding the foregoing, however, Seller shall be allowed to erect a shopping center pylon sign at the IH-35 frontage road entrance drive to its property, so long as such sign is no closer than four hundred fifty (450) feet to the Lowe's pylon sign. Additionally, the Parties may erect entrance-exit signs to facilitate the free flow of traffic to, on and across their Parcels, which entrance-exit signs shall be of a monument type, not to exceed three(3) feet, three (3) inches in height.

(f)    Any Outparcel shall be kept neat, orderly, planted in grass and trimmed until improved and constructed.

(g)    Any building, structure, or improvement constructed on any of the Outparcels shall be used for retail, restaurant or office purposes only. Banks, financial institutions and health spas shall be deemed retail purposes subject to the further limitations set forth in Section 3.6.

(h)    Any Party or independent owner purchasing or leasing from Seller and having an ownership or leasehold interest in an Outparcel shall repair any damage caused to any of the utility facilities, as described in Section 2.4 of this Declaration, serving the Properties and the Outparcel caused by such Party, or a lessee or user of the Outparcel, to the extent the Outparcel benefits from any of the utility facilities serving the Properties and the Outparcel.

(i)    In the event any building, structure or other improvement on an Outparcel shall be damaged or destroyed by any casualty, the owner, lessee or user of the Outparcel shall within forty-five (45) days of such damage or destruction (a) commence to repair and/or reconstruct such improvements to the condition required by this paragraph and Section 5.1; or (b) level such improvement, remove the debris from the Outparcel and keep the Outparcel neat, orderly, planted in grass and trimmed, until subsequently improved and constructed upon.

(j)    Any of the restrictions set forth in this Section 3.7 may be waived, amended, modified, released, or terminated in writing at any time and from time to time by Seller and Lowe's; provided that either Party shall not waive, amend, modify, release, or terminate this Declaration without

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229  843

the prior written consent of the other Party.  However, Seller and/or Lowe's, as the case may be, shall not amend or modify any of the foregoing restrictions if any such amendment or modification would impose additional restrictions on an Outparcel without the prior written consent of the fee owner of the Outparcel. The fee owner of such Outparcel, however, may impose additional, restrictions on an Outparcel as such fee owner deems appropriate, subject to any exceptions thereto imposed on said fee owner at the time of conveyance of said Outparcel by Seller to said fee owner.

(k)     Seller may subdivide, convey, lease or assign any Outparcel or any portion thereof through any means including, but not limited to, subdivision, lease, ground lease, condominium declaration or air-lot condominium declaration.

(l)     Contingent upon applicable governmental approval, the Owners of Outparcels E and F shall, upon improvement of the same, construct the curb cut access points to the Lowe's IH-35 main drive entry as shown on Exhibit B, except that notwithstanding anything to the contrary on such Exhibit, the curb cut access points shall be of a minimum width of thirty-six (36) feet.

(m)     The foregoing restrictions and agreements are imposed on each of the Outparcels for the benefit of the Properties.  The agreements, restrictions and covenants herein made shall be deemed restrictive covenants running with the land and shall be binding upon each of the Outparcels and any person who may from time to time own, lease, or otherwise have an interest in any of the Outparcels.

ARTICLE IV

CONSTRUCTION

Section 4.1     Leah Road Construction.  Lowe's shall, in the course of construction of its improvements to its Parcel, construct at its expense, that portion of the Leah Road Extension depicted on Exhibit B extending along the boundary of the Lowe's Parcel as, and to the extent, the same shall be required to be undertaken by the applicable municipal and county governmental authorities having jurisdiction thereover.  In conjunction therewith, Lowe's shall have and is hereby granted the right to a temporary easement over, across and on the Seller's Property for the purpose of cutting the appropriate slope for such Leah Road Extension, for road construction staging and for access in connection with the same.

Section 4.2     No Build Area.  No building may be or shall be erected within the area designated on Exhibit B as the "No Build Area".

Section 4.3     Thirty (30) Foot Temporary Easement.  Each Party hereby grants to the other Party temporary easements in those portions of (grantor's) Parcel which lie within thirty (30) feet of the southwesterly boundary line of the Seller's Property and the Lowe's Property for improvement construction and grading purposes so long as the grantee or its construction work does not interfere with or impair the business of the grantor or access to or upon grantor's property.

14

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 844

Section 4.4    Minimum Access Points.  In connection with construction of improvements on their respective Parcels (except regarding Outparcels as are specifically addressed in Section 3.7(1) above), the Parties shall establish and construct the minimum access points between the Parcels as designated on Exhibit B.

Section 4.5    Construction Easements for the Benefit of Lowe's.  In connection with Lowe's construction of improvements on its Parcel, Lowe's is hereby granted temporary construction easements over, under and through the Seller's Parcel as reasonably necessary for the following purposes:

(a)    to construct and grade a sixty (60) foot drainage swale which shall run parallel to the entire joint property line between the Seller's Parcel and Lowe's Parcel; and

(b)    to grade, excavate, remove and fill soils on the Seller's Parcel in an area ten (10) feet wide running along and extending from  the Seller's Parcel boundary line with the Lowe's Parcel adjacent to the proposed Lowe's building shown on Exhibit B in a manner consistent with and meeting Lowe's building requirements.

ARTICLE V

MISCELLANEOUS

Section 5.1    Damage and Destruction.  In the event of the destruction and damage to any extent to the buildings and improvements on the Properties, the affected Party shall either (1)  diligently commence and pursue completion of the repair or restoration and or (2) within ninety (90) days after the destruction or damage clear away the ruins and leave the Parcel in a clean, orderly, sightly and safe condition.  Further, in the event that the affected Party elects not to rebuild its improvements, the use restrictions placed on the non-affected Party's site by the affected Party herein, except for those cited in Sections 3.3 and 3.4(b) hereof, shall be null and void and of no further force and effect.

Section 5.2    Maintenance.  Each Party hereto shall maintain the buildings and the Common Areas on its Site in good order and condition and state of repair in accordance with the standards of good shopping center operation including (but not limited to) sweeping and removal of trash, litter and refuse, painting and striping of parking areas, repair and replacement of paving as necessary, maintenance of landscaped areas (including replacement and replanting), removal of ice and snow from driveways and parking areas, and maintenance and repair or lighting standards and signs.  Each of the Parties covenants that it, in addition to other requirements of this Section, will keep the inside and outside of all glass in the doors and windows of its buildings clean; will maintain its buildings at its own expense in a clean, orderly and sanitary condition and free of insects, rodents, vermin and other pests; will not permit accumulation of garbage, trash rubbish and other refuse, and will remove same at its own expense, and will keep such refuse in proper containers or compactors in places designated therefore until called for to be removed; and will keep the common areas on its Site clear of accumulations  of  ice and snow.  The Parties confirm their  intention  that  the   maintenance  and  repair of the Shopping Center  Site should be of  such a

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229  845

character that the Shopping Center Site's appearance will be that of a unified shopping center and, accordingly, the Parties agree to cooperate with each other in good faith with respect to said maintenance and repair and to the extent reasonably possible coordinate such repair and maintenance.

Subject to the mutual agreement of the parties hereto, a third party may be appointed as an agent of the parties to maintain the Common Areas in the manner as above outlined. Said third party may receive for such agency a fee that is mutually acceptable to all parties to cover supervision, management, accounting and similar fees.

Section 5.3    Estoppel Certificates. Each Party shall upon not less than thirty (30) days from receipt of written notice from the other Party execute and deliver to such other Party a certificate in recordable form stating that (i) either this Agreement is unmodified and in full force and effect or is modified (and stating the modification); and (ii) whether or not to the best of its knowledge the other Party is in default in any respect under this Agreement and if in default, specifying such default.

Section 5.4    Perpetuity of Agreement. Except as specifically set forth in this Agreement, the easements, covenants, conditions, restrictions and agreements contained herein binding and benefiting the Parties shall be deemed to be perpetual and shall be construed to run with the land.

Section 5.5    Parking Requirements. The Properties, including all Outparcels shall be self-supporting with respect to parking and shall each contain not less than 5.0 paved full size automobile parking spaces for each 1,000 square feet of building floor area constructed thereon, or the number of parking spaces required by applicable law, whichever is greater. Provided however, nine (9) spaces per each 1,000 square feet of building floor area constructed thereon will be required for restaurants.

Section 5.6    Notices. Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given upon deposit in the United States Mail as Certified Mail, Return Receipt Requested, postage prepaid, and addressed to the party being notified at the address given below (or such other address which any party may designate for itself from time to time hereafter by written notice to the other parties):

Seller: Mary Ann Hood, Trustee
Attn.: Steve Durhman
P.O. Box 684601
(100 East Anderson Lane, Suite 200, 78752)
Austin, Texas 78768-4601

Lowe's: Lowe's Home Centers, Inc.
Attn: Senior Vice President/Real Estate
Box 1111
(1203 School Street, Wilkesboro, NC 28697)
North Wilkesboro, North Carolina 28656

Section 5.7    Assignment. The rights and obligations of any party hereunder may be assigned in whole or in part to one or more ground lessees which rights and obligations shall be expressly assumed

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 846

by such ground lessee or lessees for the term of the ground lease or leases between such party and such ground lessee or lessees.

    Section 5.8    Limitation of Liability. Any person acquiring fee or leasehold title to any of the Properties or any portion thereof, shall be bound by this Declaration only as to the parcel or portion of the parcel acquired by such person. In addition, such person shall be bound by this Declaration only during the period such person is the fee or leasehold owner of such parcel or portion of the parcel; and, upon conveyance or transfer of the fee or leasehold interest shall be released from liability hereunder, except as to the obligations, liabilities or responsibilities that accrue prior to such conveyance or transfer. Although persons may be released under this Paragraph, the easements, covenants and restrictions in this Declaration shall continue to be benefits to and servitudes upon said tracts running with the land.

    Section 5.9    Adjacent Seller Parcels. Seller may, in his sole discretion, subject the parcels of the property adjacent to the Properties which are owned by Seller (the "Adjacent Seller Parcels") to the terms and conditions of this Declaration at which time the Adjacent Seller Parcels shall be subject to the obligations created herein and shall benefit from the rights granted to Seller herein. If such additional Outparcels are incorporated in the Shopping Center and if there are any continuing liabilities of the parties based on proration of land area, then the proration shall be adjusted accordingly.

    Section 5.10    Insurance; Indemnification; Waiver of Subrogation. Each Party will at all times maintain or cause to be maintained with respect to its Parcel: (i) casualty insurance against loss or damage by fire, lightning and other risks customarily covered by an all-risks policy of property and casualty for the full replacement cost of the Improvements located thereon and (ii) commercial general liability insurance (including contractual liability coverage) against claims for bodily injury, death or property damage occurring on, in or about such Party's Parcel combined single limit coverage of not less than ONE MILLION DOLLARS ($1,000,000.00) with respect to any one person, in the amount of ONE MILLION DOLLARS ($1,000,000.00) with respect to any one accident or disaster, and in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) with respect to property damage. Nothing herein shall be construed from prohibiting a Party with a net worth in excess of ONE HUNDRED MILLION DOLLARS ($100,000,000.00), as determined by generally accepted accounting principle, from self-insuring.

        To the extent not covered by the insurance policies described above, each Party (the "Indemnitor") will pay, and indemnify and save harmless the other Party (the "Indemnitee") from and against, all liabilities, losses, damages, costs, expenses (including attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature arising from: (i) any injury to or death of a person or loss of or damage to property, including the Indemnitee's real property and the personal property of any tenant of the Indemnitee, occurring on the Indemnitee's Parcel; (ii) any use or condition of the Indemnitor's Parcel; and (iii) any negligence or tortious acts of the Indemnitor or any of his tenants, licensees, invitees, customers, agents or employees.

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229  847

Each party (the "Releasor") hereby releases the other Party (the "Releasee") from any and all liability or responsibility to the Releasor or anyone claiming through or under the Releasor by way of subrogation or otherwise for any incurred loss or damage to any person or property caused by fire or other casualty or other such loss, damages, or other insured event or negligence of the Releasee, or anyone for whom such Releasee may be responsible; provided, however, that this release shall be applicable and in force and effect only with respect to loss or damage occurring during such time as the Releasor's policy or policies of insurance shall contain a waiver of subrogation endorsement, to the effect that any such release shall not adversely affect or impair said policy or policies or prejudice the right of the Releasor to recover thereunder.

Section 5.11    Term and Enforcement. The easements, restrictions and obligations created and imposed herein shall be effective upon the date hereof, shall run with the land, and shall inure to the benefit of and be binding upon the parties, their heirs, executors, administrators, beneficiaries, successors, successors-in-title, assigns and tenants, including any ground lessee under a ground lease and the customers, employees and invitees of such parties. Said easements, restrictions and obligations shall be unaffected by any change in the ownership of any property covered by this Declaration or by any change of use, demolition, reconstruction, expansion or other circumstances, except as specified herein. Each of the rights created hereunder may be enforceable in a court of equity by the owner of any property covered by this Agreement and by any mortgagee of said property; however, enforcement hereunder shall be sought solely against the then owner of the property or of the parcel (or the owner of an interest in such property or parcel) alleged to be in default subject to the limitation on liability as set forth in Section 5.8 hereof.

Section 5.12    Harmony. Seller and Lowe's agree to cooperate in creating a harmonious exterior appearance for the improvements to be constructed by them on the Properties. After initial construction of the Buildings, no Party shall make alterations that will substantially change the exterior of its Buildings without the consent of the other Parties, such consent not to be unreasonably withheld. Lowe's may make changes in its buildings and improvements not consistent with the overall design of its initial building and a majority of its stores at the time of the changes. The Parties acknowledge that Lowe's initial design of its Building is hereby approved by Seller.

Section 5.13    No Covenant to Continuously Operate. Neither Party is obligated to continuously operate a business on their Property except as otherwise provided in this Declaration, and, specifically, Lowe's is not obligated to continuously operate or operate for any specific period of time a Lowe's building supply or home improvement retail warehouse on its Property. Nothing contained in this Declaration shall be construed, interpreted or otherwise read to require either Party to operate a business on the their Property or to prevent either Party from closing its business on its Property.

Section 5.14    Severability. In the event any provision or portion of this Agreement is held by any court of competent jurisdiction to be invalid or unenforceable, such holding will not effect the

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

1229 848

remainder hereof, and the remaining provisions shall continue in full force and effect at the same extent as would have been the case had such invalid or unenforceable provision or portion never been a part hereof.

Section 5.15    Breach. In the event of breach or threatened breach of this Declaration, only all Owners of more than 20,000 square feet of enclosed building area of the Seller Property or the record owner of Lowe's Property so long as it or any affiliate has an interest as owner or lessee of Lowe's Property, shall be entitled to institute proceedings for full and adequate relief from the consequences of said breach or threatened breach. In the event of a breach hereof, the non-prevailing Party shall pay the reasonable attorney's fees of the prevailing Party(s).

Section 5.16    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first written above.

WITNESS:

_____

MARY ANN HOOD, TRUSTEE

By: _Mary Anne Hood, Trustee_
Name: _____
Its: _____

ATTEST:

_Kevin D. Bennett_
Kevin D. Bennett
Assistant Secretary

LOWE'S HOME CENTERS, INC.

By: _Gregory Dodge_
J. Gregory Dodge
Senior Vice President

STATE OF _____
COUNTY OF _____

19

05/21/96/San Marcos, TX/Declaration of Covenants, Conditions and Restrictions

STATE OF _Texas_

COUNTY OF _Hays_

1229 849

Before me, _Diana Endsley_ a notary public on this day personally appeared Mary Ann Hood, Trustee, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this 24th day of _May_, 199_6_.

My commission expires: _____

Notary Public

DIANA ENDSLEY
MY COMMISSION EXPIRES
August 27, 1996

STATE OF NORTH CAROLINA
COUNTY OF WILKES

Before me, _Jackie K. Huffman_, a notary public on this day personally appeared J. Gregory Dodge known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the Senior Vice President of Lowe's Home Centers, Inc., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation.

Given under my hand and official seal this 23rd day of _May_, 1996.

MY COMMISSION EXPIRES:
3-25-2001

My commission expires: _____

Notary Public

JACKIE K. HUFFMAN
NOTARY
PUBLIC
WILKES COUNTY, N.C.

20

1229 850

EXHIBIT "A

Lot 1, Section 1, MCKINLEY PLACE ADDITION, an addition in
the City of San Marcos, Hays County, Texas, according to the
map or plat thereof, recorded in Vol. ___, Page 156, Plat
Records of Hays County, Texas.

Doc# 400749
#Pages: 32
Date : 05-28-1996
Time : 09:10:09 A.M.
Filed & Recorded in
Official Records
of Hays County, TX.
MARGIE VILLALPANDO
COUNTY CLERK
Rec. $ 71.00

1229 851

Exhibit B- Page 1



LAND USAGE STUDY
FOR

**PROPOSED BUILDING SIZES
AND HEIGHTS OF PADS:**

TRACT A - 11,000 S.F., 22 FT HIGH
TRACT B - 6,000 S.F., 22 FT HIGH
TRACT C - 6,000 S.F., 22 FT HIGH
TRACT D - 6,000 S.F., 22 FT HIGH
TRACT E - 6,000 S.F., 22 FT HIGH
TRACT F - 6,000 S.F., 22 FT HIGH
TRACT G - 5,000 S.F., 22 FT HIGH

LAND USAGE STUDY
FOR
PROPOSED

RETAIL DEVELOPMENT
SAN MARCOS, TEXAS

GATEWAY CENTENNIAL DEVELOPME
1202 DEL MAR BLVD. SUITE 206
LAREDO, TEXAS 78041

210 717 2426
FAX 210 717-2546

DURHMAN & BASSETT REALTY GRO
100 EAST ANDERSON LANE, SUITE 200
AUSTIN, TEXAS 78752

512 833 6444
FAX 512 833-6448



PROPOSED BUILDING SIZES
AND HEIGHTS OF PADS:

| | |
|---|---|
| TRACT A - | 11,000 S.F., 22 FT HIGH |
| TRACT B - | 6,000 S.F., 22 FT HIGH |
| TRACT C - | 6,000 S.F., 22 FT HIGH |
| TRACT D - | 6,000 S.F., 22 FT HIGH |
| TRACT E - | 6,000 S.F., 22 FT HIGH |
| TRACT F - | 6,000 S.F., 22 FT HIGH |
| TRACT G - | 6,000 S.F., 22 FT HIGH |

1229 852

RESERVE
TRACT G
.00 acre
CCESS 1.17 acre

WONDER WORLD TRAFFIC
COUNT 9,800 CPD
SOURCE STATE HWY DEPT 1994

LAND USAGE STUDY
FOR
PROPOSED

# RETAIL DEVELOPMENT

## SAN MARCOS, TEXAS

### GATEWAY CENTENNIAL DEVELOPMENT
1202 DEL MAR BLVD. SUITE 206
LAREDO, TEXAS 78041

210 717 2426
FAX 210 717-2546

### DURHMAN & BASSETT REALTY GROUP
100 EAST ANDERSON LANE, SUITE 200
AUSTIN, TEXAS 78752

512 833 6444
FAX 512 833-6448

THOMPSON ARCHITECTURE
NELSON & PLANNING
RITCHEY INTERIORS
INC.

7660 WOODWAY, SUITE 580
HOUSTON, TEXAS, 77063-1528
(713) 266-7250   FAX (713) 782-8609

## STUDY 5/03/96 - 96D

30' ENTRY
DRIVE MINIMUM

30' ENTRY
DRIVE MINIMUM

ENTRY
DRIVE

WONDER WORLD DRIVE

LEAH AVENUE

9 acre

250.00'

NING
INDUSTRIA

250.00'

7 acre

152.31'

NORTH

50'  0'  50'  100'  150'  200'
GRAPHIC SCALE

Exhibit B- Page 2



LEAH AVENUE

1229 853

.79 acre

318.11

50.00'

ZONING
..GHT INDUSTRIAL

100.00'

250.00'

.77 acre

311.20'

152.31'

115.75'

7 acre

130.68

250.00'

.01 acre

524.23' +/-

WONDE...

THOMPSON ARCHITECTURE
NELSON & PLANNING
RITCHEY INTERIORS
INC.

7660 WOODWAY, SUITE 580
HOUSTON, TEXAS.  77063-1520
(713) 266-7250   FAX (713) 782-8609

STUDY 5/03/96 - 96D

NORTH

50'  0'   50' 100' 150' 200'
GRAPHIC SCALE

NOTE:
INITIAL INVESTIGATION INDICATES A
REQUIREMENT FOR ON-SITE STORM
WATER DETENTION AND THAT THE CITY
OF SAN MARCOS, TEXAS ENFORCES
A LANDSCAPE ORDINANCE FOR
NEW DEVELOPMENT.  NEITHER OF
THESE REQUIREMENTS HAVE BEEN
CONSIDERED IN THIS PRELIMINARY
LAND USE STUDY.

REV 5/13/96 LOWE'S LAND AREA

PLOT SCALE 1" = 120'-0"
PLOT DATE 5/13/96

EXHIBIT "B"

DATE _____

Page 3

CENTERLINE OF FREEWAY ELEVATION 640'

# INTERSTATE HIGHWAY 35

1229 854
LOWE'S 101K

I-35 TRAFFIC COUNT
53,000 CPD
SOURCE: STATE HWY DEPT 1994)

FRONT OF PROPERTY ELEVATION 620'

FUTURE LAND ACQUISITION

30' DRIVE ENTRANCE
30' DRIVE ENTRAN

213.44' | 156.85' | 155.70' | 159.85' | 173.00' | 175.50'

249.95'

| RESERVE TRACT A | RESERVE TRACT B | RESERVE TRACT C | RESERVE TRACT D | RESERVE TRACT E | RESERVE TRACT F |
| 1.15 acre | 0.90 acre | 0.89 acre | 0.92 acre | 0.99 acre | 1.00 acre |

MINIMUM CURB CUT ACCESS
TO MAIN DRIVE ENTRY

MINIMUM CURB CUT
TO MAIN DRIVE ENTR

LOWE'S
FUTURE DEVELOPMENT

LOWE'S
FUTURE DEVELOPMENT

NO BUILD AREA

MINIMUM ACCESS POINT

52 | 52 | 56 | 56 | 56 | 56 | 56

LOWE'S 12.63 A

## ZONING C - COMMERCIAL

MINIMUM ACCESS POINT

PROPOSED NEW ROAD

POSSIBLE BUILDING ENVELOPE

LOWE'S 101K

ENTRY DRIVE 30' MINIMUM

FUTURE THEATER SITE

167.57'

LEAH ROAD EXTENSION

623.72'

474.87'

311.28'

50.00'

167.57'

210.55'

250.00'

167.57'

## ZONING MF - 5

ZO
LB - LIGH

Exhibit B - Page 4





POSSIBLE BUILDING
ENVELOPE

LOWE'S 101K

1229 856

FUTURE THEATER
SITE

ENTRY
DRIVE 30' MINIMUM

LEAH ROAD EXTENSION

ZONING
MF - 5

LB - LIGHT

6.53 acre

12.00 acre

1.85 acre

15.46 acre

Exhibit B - Page 6



1229 857

ZONING
MF - 5

12.00 acre

6.53 acre

1.79 acre

ZONING
LB - LIGHT INDUSTRIAL

1.77 acre

1.85 acre

75 acre

3.01 acre

15.46 acre

( COLLECTOR )

Exhibit B- Page 7

1229 858  EXHIBIT C-1

DESCRIPTION OF 22.22 ACRES, MORE OR LESS, OF LAND AREA OF LAND AREA
IN THE J.M. VERAMENDI SURVEY NO. ONE, CITY OF SAN MARCOS, HAYS
COUNTY, TEXAS, BEING A PORTION OF THAT 116.94 ACRE TRACT DESCRIBED
IN A DEED FROM H.L. SCHULLE TO MARY ANNE HOOD, TRUSTEE DATED
NOVEMBER 9,1973 AND RECORDED IN VOLUME 263, PAGE 522 OF THE HAYS
COUNTY DEED RECORDS, AND BEING MORE PARTICULARLY BY METES AND
BOUNDS AS FOLLOWS:

BEGINNING at a 1/2" iron rod found in an old fence corner for the
west corner of the Hood tract and north corner of the Municipal
Airport Subdivision as recorded in Volume 163, page 160 of the Hays
County Deed Records, and being the north corner of that 4.83 acre
tract as shown on the plat of the Municipal Airport Subdivision and
conveyed in a deed from Robert P. Lowman to the City of San Marcos
dated December 8, 1954 and recorded in Volume 163, Page 163 of the
Hays County Deed Records and being in the southeast line of
Interstate Highway No. 35;

THENCE leaving the PLACE OF BEGINNING with the northwest line of
the Hood tract and southeast line of Interstate Highway No. 35, as
shown on that plat numbered 24004-96-3-d dated  March 1, 1996 as
prepared for Del Trautman by Byrn & Associates, Inc. of San Marcos,
Texas, N 44° 17' 17" E  912.83 feet to a 1/2" iron rod set for the
north corner of the herein described tract;

THENCE entering the Hood tract, S 45° 18' 43" E  250.00 feet to a
1/2" iron rod set for a salient corner of this tract;

THENCE S 44° 41' 17" W  226.03 feet to a 1/2" iron rod set for an
interior corner of this tract;

THENCE S 44  51' 00" E  886.20 feet to a 1/2" iron rod set for an
east corner of the herein described tract;

THENCE with the common northwest line of a proposed roadway for the
general southeast line of the herein described tract, the following
four courses:

1.    with   a   left-breaking   curve   having   the   following
      characteristics: central angle = 51 25' 18", radius = 330.00
      feet, arc length = 296.17 feet and a chord which bears S 18°
      44' 41" W  286.33 feet to a 1/2" iron rod set,

2.    S 06  57' 58" E  100.69 feet to a 1/2" iron rod set,

3.    with   a   right-breaking   curve   having   the   following
      characteristics: central angle = 52° 14' 34", radius = 270.00
      feet, arc length = 246.19 feet and a chord which bears S 19°
      09' 19"  W  237.75 feet to a 1/2" iron rod set, and

4.    S 45  16' 36" W  160.00 feet to a 1/2" iron rod set for in a
      fence line of the south corner of the herein described tract,
      being in the common southwest line of the Hood tract and
      northeast line of that 15.92 acre tract described in a deed
      from W.C. Carson, Trustee to W.C. Carson dated September 20,
      1990 and recorded in Volume 845, Page 806 of the Hays County
      Deed Records, from which iron pipe found for the east corner

EXHIBIT C-2                 1229  859

of the Carson 15.92 acre tract bears S 44° 43' 24" E  30.00
feet;

THENCE with the common southwest line of the Hood tract and the
northeast line of the Carson 15.92 acre tract, northeast line of
Runway No. 1 and Runway No. 2 as shown on the plat of Municipal
Airport Subdivision, and northeast line of the aforereferenced City
of San Marcos 4.83 acre tract, being along the remains of an old
fence line, N 44° 43' 24" W  1441.31 feet to the PLACE OF
BEGINNING.

There are contained within these metes and bounds 22.22 acres, more
or less, of land area as prepared from public records and a survey
made on the ground on March 1, 1996 by Byrn & Associates, Inc.  All
1/2" iron rods set are capped with a plastic cap stamped "Byrn
Survey".

David C. Williamson, R.P.L.S. #4190

CLIENT:   Trautman, Del
DATE:     March 1, 1996
SURVEY:   Veramendi, J.M. 1
COUNTY:   Hays, Texas
JOB NO.:  24004-96-3
FND22.22

Page 2 of 2

1229 860          EXHIBIT C-3

DESCRIPTION OF 1.13 ACRES, MORE OR LESS, OF LAND AREA OF LAND AREA

IN THE J.M. VERAMENDI SURVEY NO. ONE, CITY OF SAN MARCOS, HAYS

COUNTY, TEXAS, BEING A PORTION OF THAT 116.94 ACRE TRACT DESCRIBED

IN A DEED FROM H.L. SCHULLE TO MARY ANNE HOOD, TRUSTEE DATED

NOVEMBER 9,1973 AND RECORDED IN VOLUME 263, PAGE 522 OF THE HAYS

COUNTY DEED RECORDS, AND BEING MORE PARTICULARLY BY METES AND

BOUNDS AS FOLLOWS:

COMMENCING at a 1/2" iron rod found in an old fence corner for the
west corner of the Hood tract and north corner of the Municipal
Airport Subdivision as recorded in Volume 163, page 160 of the Hays
County Deed Records, and being the north corner of that 4.83 acre
tract as shown on the plat of the Municipal Airport Subdivision and
conveyed in a deed from Robert P. Lowman to the City of San Marcos
dated December 8, 1954 and recorded in Volume 163, Page 163 of the
Hays County Deed Records and being in the southeast line of
Interstate Highway No. 35;

    THENCE the common northwest line of the Hood tract and
    southeast line of the Hood tract and southeast line of
    962.83 feet to a 1/2" iron rod set for the west corner and
    PLACE OF BEGINNING of the herein described tract, pass on this
    course 912.83 feet a 1/2" iron rod set;

THENCE leaving the PLACE OF BEGINNING and continuing with the
common northwest line of the Hood tract and southeast line of
Interstate Highway No. 35, as shown on that plat numbered 24004-96-
3-d dated March 1, 1996 as prepared for Del Trautman by Byrn &
Associates, Inc. of San Marcos, Texas, N 44 41' 17" E 149.71 feet
to a 1/2" iron rod set to replace a Texas Department of
Transportation concrete monument found during December 1992 for the
northwest corner of the Hood tract and this tract and being the
west corner of that 1.504 acre tract (that was conveyed for
Interstate Highway No. 35 right-of-way) described in a deed from
Mrs. Eulalia L. Guerrero to the State of Texas dated March 11, 1957
and recorded in Volume 170, Page 307 of the Hays County Deed
Records;

THENCE with the common north line of the Hood tract and a southerly
line of the State of Texas/Interstate Highway No. 35 right-of-way,
N 87 55' 37" E 72.71 feet to a 1/2" iron rod set to replace a
1/2" iron rod found during December 1992 for the northwest corner
of the Hood tract and an interior corner of the State of Texas
1.504 acre tract;

THENCE with the common northeast line of the Hood tract and
southwest line of the State of Texas 1.504 acre tract, S 45 08'
00" E 200.20 feet to a 1/2" iron rod set for the east corner of
the herein described tract, from which a 1/2" iron rod found for an
interior corner of the Hood tract and south corner of the State of
Texas tract bears S 45 08' 00" E 112.32 feet;

EXHIBIT C-4

1229 861

THENCE entering the Hood tract, S 44 41' 17" W 202.06 feet to a
1/2" iron rod set for the south corner of the herein described
tract;

THENCE N 45° 18' 43" W  250.00 feet to the PLACE OF BEGINNING.

There are contained within these metes and bounds 1.13 acres, more
or less, of land area as prepared from public records and a survey
made on the ground on March 1, 1996 by Byrn & Associates, Inc.  All
1/2" iron rods set are capped with a plastic cap stamped "Byrn
Survey".


_____
David C. Williamson, R.P.L.S. #4190


COUNTY CLERK'S
[illegible stamp text]
[illegible stamp text]
[illegible stamp text]
of Hays County, Texas,

**MAY 28 1996**

[signature] Miguel I. Villalpando
COUNTY CLERK
HAYS COUNTY, TEXAS


CLIENT:    Trautman, Del
DATE:      March 1, 1996
SURVEY:    Veramendi, J.M. 1
COUNTY:    Hays, Texas
JOB NO.:   24004-96-3
FND1.13

16/44
FN

11-GF# 5115̄8̄ TTN
RETURN TO: HERITAGE TITLE
401 CONGRESS, SUITE 1500
AUSTIN, TEXAS 78701

**RECORD AND RETURN TO:**
Jenkens & Gilchrist,
a Professional Corporation
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Attention: William L. Sladek, Esq.

```
          Bk   Vol   Pg
05018579  OPR  2716  758
```

# FIRST AMENDMENT TO DECLARATION OF
## COVENANTS, CONDITIONS AND RESTRICTIONS

STATE OF TEXAS      §
                    §
COUNTY OF HAYS      §

THIS FIRST AMENDMENT TO DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS (this "**Amendment**") is executed effective as of *JUNE 20* , 2005, by and between MARY ANNE HOOD, TRUSTEE ("**Seller**"), and LOWE'S HOME CENTERS, INC., a North Carolina corporation ("**Lowe's**") (collectively, the "**Parties**").

## RECITALS

A.    The Parties have previously executed that certain Declaration of Covenants, Conditions, and Restrictions dated May 24, 1996, recorded in Book 1229, Page 830 of the Real Property Records of Hays County, Texas (the "**Declaration**"), encumbering the property described on Exhibit A attached to the Declaration and the property described on Exhibit C attached to the Declaration (the "**Seller Property**") (collectively, the "**Properties**") and imposing certain covenants, restrictions and conditions therein set forth for the benefit of the owners of the Properties.

B.    Seller has heretofore conveyed certain portions of the Seller Property to certain third parties.

C.    Seller continues to own the remaining Seller Property more fully described on **Exhibit A** attached hereto (the "**Remaining Seller Property**").

D.    The Parties desire to amend the Declaration in accordance with the terms and provisions of this Amendment.

## AGREEMENTS

NOW, THEREFORE, for and in consideration of the premises, the Parties hereby agree as follows:

1

DALLAS4 732682v1 15413-00298

Bk    Vol    Pg
05018579 OPR  2716   759

1.  Unless otherwise defined in this Amendment, all capitalized terms used herein shall have the same meaning as they are given in the Declaration.

2.  The "No Build Area" described in Section 4.2 of the Declaration and designated on the Site Plan attached to the Declaration as Exhibit B is hereby deleted and shall no longer be effective, and shall be replaced with the "No Build Area" shown on the Site Plan attached hereto as **Exhibit "B-1"** and incorporated herein for all purposes.

3.  . Lowe's hereby approves and consents to the Site Plan (including the proposed building footprints shown thereon) and the elevation drawings attached hereto as **Exhibit "C"** for the improvements and development which Seller or a successor owner of all or any portion of the Remaining Seller Property intends to construct and implement on the Remaining Seller Property.

4.  The Parties hereby ratify and confirm the terms and provisions of the Declaration, as modified by this Amendment, and hereby confirm that they have authority to enter into this Amendment and that no other consent or approval, or the joinder of any other party, is required to make this Amendment effective.

5.  This Amendment may be executed in a number of identical counterparts. If so executed, each of such counterparts shall be deemed to be an original for all purposes, and all such counterparts shall, collectively, when taken together, constitute the Amendment.

EXECUTED as of the date first referenced above.

**PARTIES**:


_____
MARY ANNE HOOD, TRUSTEE


LOWE'S HOME CENTERS, INC.,
a North Carolina corporation

By: _David E Shelton_____
Name: __David E. Shelton_____
Title: __Senior Vice President_____

DALLAS4 732682v1 15413-00298

Bk    Vol    Pg
05018579 OPR   2716   760

1.  Unless otherwise defined in this Amendment, all capitalized terms used herein shall have the same meaning as they are given in the Declaration.

2.  The "No Build Area" described in Section 4.2 of the Declaration and designated on the Site Plan attached to the Declaration as Exhibit B is hereby deleted and shall no longer be effective, and shall be replaced with the "No Build Area" shown on the Site Plan attached hereto as **Exhibit "B-1"** and incorporated herein for all purposes.

3.  . Lowe's hereby approves and consents to the Site Plan (including the proposed building footprints shown thereon) and the elevation drawings attached hereto as **Exhibit "C"** for the improvements and development which Seller or a successor owner of all or any portion of the Remaining Seller Property intends to construct and implement on the Remaining Seller Property.

4.  The Parties hereby ratify and confirm the terms and provisions of the Declaration, as modified by this Amendment, and hereby confirm that they have authority to enter into this Amendment and that no other consent or approval, or the joinder of any other party, is required to make this Amendment effective.

5.  This Amendment may be executed in a number of identical counterparts.  If so executed, each of such counterparts shall be deemed to be an original for all purposes, and all such counterparts shall, collectively, when taken together, constitute the Amendment.

EXECUTED as of the date first referenced above.

**PARTIES**:

MARY ANNE HOOD, TRUSTEE

LOWE'S HOME CENTERS, INC.,
a North Carolina corporation

By:
Name:    David E. Shelton
Title:    Senior Vice President

2

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of *Los Angeles* }ss

On *JUNE 20, 2005* before me, *ANIK DRMANDJIAN, NOTARY PUBLIC*
<div style="margin-left:3em;font-size:smaller">Date                 Name and Title of Officer (e.g., "Jane Doe, Notary Public")</div>

personally appeared *MARY ANNE HOOP.*,
<div style="margin-left:3em;font-size:smaller">Name(s) of Signer(s)</div>

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

**ANIK DRMANDJIAN**
Commission # 1352964
Notary Public - California
Los Angeles County
My Comm. Expires Apr 22, 2006

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

*Anik Drmandjian*
<div style="text-align:center;font-size:smaller">Signature of Notary Public</div>

---

### OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

**Description of Attached Document**

Title or Type of Document *FIRST AMENDMENT TO DECLARATION of COVENANTS, CONDITION and RESTRICTIONS*

Document Date *JUNE 20, 2005*  Number of Pages *2 pages*

Signer(s) Other Than Named Above _____

**Capacity(ies) Claimed by Signer**

Signer's Name _____

☑ Individual
☐ Corporate Officer — Title(s) _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☑ Trustee
☐ Guardian or Conservator
☐ Other _____

Signer Is Representing _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave  P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

Bk    Vol    Pg
05018579 DPR  2716   762

## ACKNOWLEDGMENT

STATE OF _North Carolina_ §
§
COUNTY OF _Wilkes_ §

BEFORE ME, the undersigned Notary Public, on this day personally appeared _David L. Shelton_ the _Senior Vice President_ of LOWE'S HOME CENTERS, INC., who is

_✓_ known to me
_____ proved to me through his/her _____ driver's license
                                    (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this _14_ day of _June_, 2005.

[SEAL]                          _Melissa Richardson_

"OFFICIAL SEAL"            NOTARY PUBLIC, STATE OF _North Carolina_
Notary Public, North Carolina
County of Wilkes
Melissa Richardson
My Commission Expires 2/20/2007

4

# EXHIBIT "A"

```
                                    Bk   Vol   Pg
                          05018579 OPR  2716  763
```



DALLAS4 732682v1 15413-00298

Bk    Vol    Pg
05018579 OPR  2716   764

## EXHIBIT "A"

**TRACT I:**
Lots Five (5) and Six (6), SECTION 1 McKINLEY PLACE, a subdivision in Hays County, Texas, according to the map or plat thereof recorded in Volume 9, Page 186, of the Plat Records of Hays County, Texas.

**TRACT II:**
Lot Seven (7), SECTION 1 McKINLEY PLACE, a subdivision in Hays County, Texas, according to the map or plat thereof recorded in Volume 10, Page 79, of the Plat Records of Hays County, Texas.

**TRACT III:**
Being a 17.037 acre tract or parcel of land out of and being a part of the J. M. Veramendi Survey No. One, City of San Marcos, Hays County, Texas, and being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof;

FIELD NOTES FOR A 17.037 ACRE TRACT IN THE J.M. VERAMENDI SURVEY NO. 1 IN THE CITY OF SAN MARCOS, HAYS COUNTY, TEXAS.

BEING a 17.037 acre tract or parcel of land out of and being a part of the J.M. Vermendi Survey No. 1 in the City of San Marcos, Hays County, Texas, and being a part of that certain 116.94 acre tract described in a deed from H.L. Schulle, Trustee, to Mary Anne Hood, Trustee, recorded in Volume 263, Page 522, Hays County Deed Records. Herein described tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½ inch iron rod with survey cap found in the southwest line of the said 116.94 acre tract at the south corner of Lot No. 4, Section 1, McKinley Place, a subdivision in said county as recorded in Volume 9, Page 186, Hays County Plat Records, for the west corner of this tract. Said point being in the northeast line of Lot A, Municipal Airport Subdivision, as recorded in Volume 163, Page 161, Hays County Deed Records.

THENCE with the southeast line of Lots No. 4, 5 and 6 of Section 1, McKinley Place Subdivision, N 44 deg. 51 min. 07 sec. E, 185.22 feet to a ½ inch iron rod with survey cap found; N 44 deg. 47 min. 37 sec. E, 200.42 feet to a ½ inch iron rod with survey cap found; N 44 deg. 48 min. 05 sec. E, 199.02 feet to a ½ inch iron rod with survey cap found in the southwest line of McKinley Place Drive, a 60 foot roadway as shown on plat of said subdivision, the east corner of Lot No. 6, for the north corner of this tract.

THENCE with the southwest line of McKinley Place Drive, along a curve to the left whose radius is 330.00 feet; whose long chord bears S 52 deg. 11 min. 43 sec. E, 82.77 feet; 82.99 feet along the arc to a 5/8 inch iron rod set at the end of said curve.

THENCE continuing with the southwest line of McKinley Place Drive, S 59 deg. 32 min. 34 sec. E, 100.00 feet to a 5/8 inch iron rod set at the beginning of a curve to the right.

THENCE with said curve to the right whose radius is 270.00 feet; whose long chord bears S 52 deg. 07 min. 59 sec. E, 69.90 feet; 70.10 feet to a 5/8 inch iron rod set at the end of said curve and termination of said drive, for an interior corner of this tract.

05018579
Bk   Vol   Pg
OPR   2716   765

# EXHIBIT "A"

THENCE with the terminus of McKinley Place Drive, N 45 deg. 15 min. 44 sec. E, 60.00 feet to a ½ inch iron rod with survey cap found in the southwest line of Lot No. 1, Section 1, McKinley Place, as recorded in Volume 7, Page 156, Hays County Plat Records, the east corner of said McKinley Place Drive, for an angle corner of this tract.

THENCE with the southwest line of Lot No. 1, Section 1, McKinley Place Subdivision, S 44 deg. 43 min. 02 sec. E, 587.49 feet to a ½ inch iron rod with survey cap found at the north corner of that certain 0.059 acre tract described in a deed from Mary Anne Hood, Trustee, to Century Telephone of San Marcos, Inc., recorded in Volume 1289, Page 21, Hays County Deed Records, for an east corner of this tract.

THENCE with the northwest line of the Century Telephone tract, S 45 deg. 25 min. 30 sec. W, 49.94 feet to the west corner of same, a ½ inch iron rod with survey cap found for an interior corner of this tract.

THENCE with the southwest line of the Century Telephone tract, S 44 deg. 41 min. 44 sec. E, 54.41 feet to the south corner of same, a 5/8 inch iron rod set in the curving northwest line of Leah Avenue, a 60 foot roadway as shown on the Plat of Lot 3, Block 1, Section 2, McKinley Place, a subdivision as recorded in Volume 8, Page 204, Hays County Plat Records, for the east corner of this tract.

THENCE with the northwest line of Leah Avenue, along a curve to the left whose radius is 330.00 feet; whose long chord bears S 10 deg. 26 min. 26 sec. W, 283.68 feet; 293.22 feet along the arc to a 5/8 inch iron rod set to replace a 60d nail found at the end of said curve.

THENCE continuing with the northwest line of Leah Avenue, S 15 deg. 07 min. 36 sec. E, 99.99 feet to a 5/8 inch iron rod set to replace a 60d nail found at the beginning of a curve to the right.

THENCE with said curve to the right whose radius is 270.00 feet; whose long chord bears S 14 deg. 54 min. 21 sec. W, 270.92 feet; 283.81 feet along the arc to a 5/8 inch iron rod set at the end of said curve.

THENCE continuing with the northwest line of Leah Avenue, S 45 deg. 09 min. 50 sec. W, 126.26 feet to a ½ inch iron rod with survey cap found where same intersects the southwest line of the before mentioned 116.94 acre tract, the east corner of that certain 1.056 acre tract described in a deed from SLC6a Joint Ventures to W.C. Carson, recorded in Volume 2074, Page 401, Hays County Deed Records, for the south corner of this tract.

THENCE with the southwest line of the 116.94 acre tract, the northeast line of the Carson 1.056 acre tract and northwest line of that certain 15.92 acre tract described in a deed from W.C. Carson, Trustee, to W.C. Carson, recorded in Volume 845, Page 806, Hays County Deed Records and northeast line of that certain 0.629 acre tract described in a deed from the City of San Marcos to W.C. Carson recorded in Volume 1642, Page 141, Hays County Deed Records, N 44 deg. 36 min. 46 sec. W, at 49.84 feet pass a 1 inch iron pipe found at the north corner of the 1.056 acre tract and east corner of the Carson 15.92 acre tract, at 1021.89 feet pass the north corner of the Carson 15.92 acre tract and east corner of the 0.629 acre tract, in all, 1071.80 feet to a ½ inch iron rod with survey cap found at the north corner of the Carson 0.629 acre tract, for an angle corner of this tract.

THENCE continuing with the southwest line of the 116.94 acre tract and northeast line of the Municipal Airport Subdivision, N 44 deg. 40 min. 01 sec. W, 199.44 feet to the POINT OF BEGINNING, containing 17.037 acres of land.

## EXHIBIT "B-1"

Bk   Vol   Pg
05018579 DPR   2716   766



DALLAS4 732682v1 15413-00298



# EXHIBIT "C"

```
                                          Bk    Vol   Pg
                            05018579 OPR  2716  768
```



DALLAS4 732682v1 15413-00298

Bk    Vol    Pg
05018579 OPR    2716    769



EL-01

COTTONWOOD VILLAGE
SAN MARCOS, TEXAS
LINCOLN PROPERTY COMPANY

O'BRIEN & ASSOCIATES, INC.
ARCHITECTURE • INTERIORS • PLANNING

Bk    Vol    Pg
05018579  OPR   2716   770

05018579    Bk  Vol  Pg
OPR  2716  771





```
          Bk     Vol    Pg
          05018579  OPR    2716    773

          Filed for Record in:
          Hays County
          On: Jul 05,2005  at  10:52A
          Document Number:         05018579
          Amount:                     44.00
          Receipt Number - 127980
                  By,
          Lynn Curry, Deputy

Lee Carlisle, County Clerk
          Hays County
```

# **** Electronically Filed Document ****

Hays County Texas
Linda C. Fritsche
County Clerk

---

## Document Number: 2010-10035444
## Recorded As    : ELECTRONIC RECORDING

| | |
|---|---|
| **Recorded On:** | December 28, 2010 |
| **Recorded At:** | 08:27:12 am |
| **Number of Pages:** | 39 |
| **Book-VI/Pg:** | Bk-OPR   VI-4036   Pg-596 |
| **Recording Fee:** | $164.00 |

**Parties:**

        **Direct- DOZIER ROBERT**

**Indirect-**

| | |
|---|---|
| **Receipt Number:** | 262327 |
| **Processed By:** | Christina Rodriguez |

---

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



I hereby certify that this instrument was filed for record in my office on the date and
time stamped hereon and was recorded on the volume and page of the named records
of Hays County, Texas

*Linda C. Fritsche*

Linda C. Fritsche, County Clerk

AFTER RECORDING MAIL TO:
**Republic Title of Texas, Inc.**
**2626 Howell Street, 10th Floor**
**Dallas, Texas 75204-4064**
**10R36861 SJ6**

## AFFIDAVIT

STATE OF TEXAS          §

COUNTY OF HAYS          §

BEFORE ME, the undersigned Notary Public, on this day personally appeared ROBERT DOZIER, to me well known, who, after being by me duly sworn, deposes and says:

I am a signatory to that certain Second Amendment to Declaration of Covenants, Conditions and Restrictions ("2nd Amendment"), which amended the instrument recorded May 24, 1996 in Book 1229, Page 830 of the Real property Records of Hays County, Texas ("Original Declaration") and as such am qualified to make the following statement:

Attached hereto is a true and correct copy of that certain Second Amendment to Declaration of Covenants, Conditions and Restrictions among Lincoln PO Red Oak Village, L.P., Lowe's Home Centers, Inc., Halle Properties, LLC, Engineer Business Center, LLC, CNL APF Partners, LP, CenturyTel of San Marcos, Inc., Sam's Real Estate Business Trust and Texas Cinema ("2nd Amendment"), which was erroneously never recorded in the Real Property Records of Hays County, Texas.

This Affidavit is given to induce all parties dealing with the Property to act in reliance upon the matters herein contained.

EXECUTED this 22nd day of December, 2010.

_____
Robert Dozier

STATE OF TEXAS            §
COUNTY OF DALLAS          §

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me this 22ⁿᵈ day of December, 2010, by Robert Dozier.

Jenny Rodgers
Notary Public, State of Texas
Print Name: Jenny Rodgers
My Commission Expires: 06-09-11

JENNY RODGERS
Notary Public,
State of Texas
Comm. Exp. 06-09-11

*159- 7- 2006 xx xx - DCCR - Amend 2*

RECORD AND RETURN TO:
Mayer Brown Rowe & Maw LLP
700 Louisiana, Suite 3600
Houston, Texas 77002
Attention: Robert L. Morgan

**TEXAS – San Marcos**
**Sam's Club Store #4958-00**
**Lowe's Store No. 0159**

## SECOND AMENDMENT TO DECLARATION OF
## COVENANTS, CONDITIONS AND RESTRICTIONS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HAYS | § |

THIS SECOND AMENDMENT TO DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS (this "**Second Amendment**") is executed effective as of _____, 2006, by and among **LINCOLN PO RED OAK VILLAGE, L.P.**, a Delaware limited partnership ("**Seller**"), **LOWE'S HOME CENTERS, INC.**, a North Carolina corporation ("**Lowe's**"), **HALLE PROPERTIES, LLC**, an Arizona limited liability company ("**Halle**"), **ENGINEER BUSINESS CENTER, LLC**, a California limited liability company ("**EBC**"), **CNL APF PARTNERS, LP**, a Delaware limited partnership ("**CNL**"), **CENTURYTEL OF SAN MARCOS, INC.**, a *TEXAS* corporation ("**CenturyTel**"), and **SAM'S REAL ESTATE BUSINESS TRUST**, a Delaware statutory trust ("**Sam's**"), being the present owners of certain portions of the Seller Property (as hereinafter defined) (Seller, Lowe's, Halle, EBC, CNL, CenturyTel and Sam's being herein collectively referred to as the "**Owners**"); said Owners being joined herein by **TEXAS CINEMA CORPORATION**, a Texas corporation (the "**Cinema**"), for the limited purposes set forth in Section 13 of this Second Amendment.

### RECITALS:

A.  Seller's predecessor in title, Mary Ann Hood, Trustee ("**Hood**"), and Lowe's have previously executed that certain Declaration of Covenants, Conditions, and Restrictions dated May 24, 1996, recorded in Book 1229, Page 830 of the Real Property Records of Hays County, Texas (the "**Original Declaration**"), as amended by (i) that certain "First Amendment to Declaration of Covenants, Conditions and Restrictions" (the "**First Amendment**"), dated June 20, 2005, executed by Hood and Lowe's, recorded in Book 2716, Page 758, of the Real Property Records of Hays County, Texas, (ii) that certain "Acknowledgment Relating to Declaration of Covenants, Conditions and Restrictions (Discount Tire)" (the "**Halle Acknowledgment**"), dated June 9, 2005, executed by Halle, recorded in Book 2716, Page 725, of the Real Property Records of Hays County, Texas, (iii) that certain "Acknowledgment Relating to Declaration of Covenants, Conditions and Restrictions (Jack in the Box)" (the "**EBC Acknowledgment**"), dated June 28, 2005, executed by EBC, recorded in Book 2716, Page 733, of the Real Property Records of Hays County, Texas, (iv) that certain "Acknowledgment

Relating to Declaration of Covenants, Conditions and Restrictions (Shell)" (the "**CNL Acknowledgment**"), dated June 27, 2005, executed by CNL, recorded in Book 2716, Page 712, of the Real Property Records of Hays County, Texas, and (v) that certain "Acknowledgment Relating to Declaration of Covenants, Conditions and Restrictions (CenturyTel)" (the "**CenturyTel Acknowledgment**"), dated June 10, 2005, executed by CenturyTel, recorded in Book 2716, Page 752, of the Real Property Records of Hays County, Texas (the Original Declaration, as amended by the First Amendment, the Halle Acknowledgment, the EBC Acknowledgment, the CNL Acknowledgment, and the CenturyTel Acknowledgment, being herein referred to as the "**Declaration**"), encumbering the property described on **Exhibit A** attached to the Declaration and incorporated herein by reference (the "**Lowe's Property**"), and the property described on **Exhibit C** attached to the Declaration and incorporated herein by reference (the "**Seller Property**") (collectively, the "**Properties**"), and imposing certain covenants, restrictions and conditions therein set forth for the benefit of the owners of the Properties.

B.     Hood has heretofore conveyed certain portions of the Seller Property. The current fee title owners of such portions of the Seller Property are:

(1)     Halle is the current owner of the property described on **Schedule I** attached to the Halle Acknowledgment and incorporated herein by reference (the "**Halle Property**");

(2)     EBC is the current owner of the property described on **Schedule I** attached to the EBC Acknowledgment and incorporated herein by reference (the "**EBC Property**");

(3)     CNL is the current owner of the property described on **Schedule I** attached to the CNL Acknowledgment and incorporated herein by reference (the "**CNL Property**");

(4)     CenturyTel is the current owner of the property described on **Schedule I** attached to the CenturyTel Acknowledgment and incorporated herein by reference (the "**CenturyTel Property**"); and

(5)     Seller is the current owner of the remainder of the Seller Property, more fully described on **Exhibit A** attached to the First Amendment and incorporated herein by reference.

C.     By warranty deed dated effective December 23, 2005, Seller has conveyed to Sam's that portion of the Seller Property more fully described on **Exhibit A** attached to this Second Amendment and made a part hereof for all purposes (the "**Sam's Property**").

D.     The Owners desire to further amend the Declaration in accordance with the terms and provisions of this Second Amendment.

## AGREEMENTS:

NOW, THEREFORE, for and in consideration of the premises, the Owners hereby agree as follows:

1.  Unless otherwise defined in this Second Amendment, all capitalized terms used herein shall have the same respective meanings as they are given in the Declaration.

2.  **Exhibit "B"** attached to the Declaration (therein referred to as the "**Site Plan**") is deleted in its entirety and shall be without further force or effect; and **Exhibit "B"** attached to this Second Amendment is substituted as and shall hereafter constitute and be **Exhibit "B"** (the "**Site Plan**") to the Declaration.

3.  Section 1.1 of the Declaration (the definition of "Common Area") is deleted in its entirety, and the following is substituted as and shall hereafter constitute and be Section 1.1 of the Declaration:

    "<u>Section 1.1</u> "Common Area" shall mean all portions of the Properties owned by the Parties that are intended for the common use and enjoyment of all Owners, including non-dedicated streets. The Common Area shall not include any portion of the Properties on which Buildings or other structural improvements exist from time to time."

4.  The first and second sentences of Section 1.3 of the Declaration (the definitions of "Parcel" and "Outparcel") are deleted in their entirety, and the following sentences are substituted as and shall hereafter constitute and be the first and second sentences of Section 1.3 of the Declaration:  "With respect to each Owner, "Parcel" shall mean and refer to the portion or portions of the Properties to which record title is/are held by such Owner.  "Outparcel" shall mean and refer to those parcels of land labelled and shown for identification (and not for survey) purposes as the "Outparcels" on <u>Exhibit B</u> hereto."

5.  Section 2.1(i) of the Declaration (the definition of "Permissible Building Area") is deleted in its entirety, and the following is hereby substituted as and shall hereafter constitute and be Section 2.1(i) of the Declaration:

    "(i)    The term "Permissible Building Area" means any portion of a Parcel on which one (1) or more Buildings, each of a certain size or height, may be constructed as hereinafter more fully provided.  No Building, structure or other improvements (other than Common Area Improvements) shall be erected or maintained outside of a Permissible Building Area.  As it relates to any Parcel, Permissible Building Area will include the entire Parcel except for a fifteen (15) foot wide strip around the perimeter of the Parcel, which fifteen (15) foot wide strip may be used for common utility facilities."

    Notwithstanding the provisions of Section 2.1(i) of the Declaration, as amended above, all of the existing improvements on the Properties, as of the date of this Second Amendment, and all existing expansions, remodelings, renovations or reconstructions thereof or thereto, as of the date of this Second Amendment, are hereby grandfathered

and shall not be required to satisfy the provisions of the definition of Permissible Building Area set forth above.

6.  Section 2.3 of the Declaration is amended to provide:

(i)  None of the "Access Roads," "access points" and/or "drive lanes" currently described in said Section 2.3 as being "shaded" or "shown" on the Site Plan to the Declaration are so shaded or shown, and the requirement of Section 2.3 that such items or areas be shaded or shown on the Site Plan hereafter shall not apply;

(ii)  The reciprocal easements granted in said Section 2.3 on, over and across such Access Roads, access points and drive lanes are intended to be and hereafter shall be construed as easements on, over and across the Access Roads, access points and drive lanes that exist from time to time on the respective Parcels in the Properties; and

(iii)  Each Owner shall have the right from time to time to reconfigure the Access Roads, access points and drive lanes that then exist on such Owner's Parcel, without the consent of any other Owner or Party, so long as the ingress and egress for pedestrian and vehicular traffic between adjacent Parcels is not obstructed or materially interfered with.

7.  Section 2.4 of the Declaration is amended by deleting the words "as shown on Exhibit B" in the first paragraph thereof and inserting the words "as defined in Section 2.1(i) hereinabove" in substitution for the deleted words.

8.  Section 3.1 of the Declaration is amended to delete any requirement therein that the Owner of the Sam's Property or the Owner of the Lowe's Property submit to any other Owner or Party to the Declaration for approval any of the plans and specifications for any buildings or other improvements constructed or to be constructed thereon.

9.  Section 3.2 of the Declaration is amended to delete any requirement therein that the Owner of the Sam's Property or the Owner of the Lowe's Property (i) deliver to any Owner or Party to the Declaration a foundation survey of the buildings or other improvements constructed on the Sam's Property or the Lowe's Property, respectively, (ii) submit to any Owner or Party to the Declaration the plans and specifications for any alterations to the buildings or other improvements on the Sam's Property or the Lowe's Property, respectively, (iii) complete construction of the buildings or other improvements on the Sam's Property or the Lowe's Property, respectively, within one (1) year after commencement of such construction, and/or (iv) complete the landscaping for the Sam's Property or the Lowe's Property, respectively within ninety (90) days after completion of construction of the improvements on the Sam's Property or the Lowe's Property, respectively.

10.  Section 3.4(a)(v) of the Declaration is amended to provide that (i) the portion of the Sam's Property labelled on the Site Plan attached as Exhibit "B" hereto as the "Sam's Service Station Parcel" may be used for a retail service station or fueling station (a

"Service Station"), which does not include the repair or maintenance of automobiles, use as a truck stop, or the overnight storage or overnight parking of automobiles, so long as Sam's or Wal-Mart Real Estate Business Trust ("Wal-Mart"), or an "Affiliate" (as hereinbelow defined) of Sam's or Wal-Mart, is the owner of fee title to the Sam's Property or is the lessee of the Sam's Property; (ii) such Service Station shall be operated under a national or regional trade name (such as, for purposes of example only, Exxon, Texaco, Shell, BP, etc.) or by Sam's or Wal-Mart, as applicable; (iii) no Owner or Party to the Declaration shall have the right to require demolition of the improvements on the Sam's Service Station Parcel in the event such buildings or other improvements are closed for more than six (6) months or any other period of time; and (iv) prior to transfer of fee title to the Sam's Property to any person or entity other than Wal-Mart or an Affiliate of Sam's or Wal-Mart (unless Sam's, Wal-Mart or an Affiliate of either will continue as the lessee of the Sam's Property after such transfer), or prior to the termination of the Lease to Sam's, Wal-Mart or an Affiliate of either (if applicable), Sam's (or Wal-Mart, if applicable) shall raze and remove the Service Station improvements from the Sam's Service Station Parcel and landscape or pave the former Service Station in a sightly manner. For purposes hereof, an "Affiliate" of Sam's or Wal-Mart, as applicable, shall mean an entity that controls, is controlled by, or is under common control with Sam's or Wal-Mart, as applicable. For purposes hereof, "control" shall mean and require the ownership of at least fifty percent (50%) of the voting stock or other beneficial ownership interest of the controlled entity.

11. None of the provisions of Section 3.6 of the Declaration shall prevent or restrict the operation on the Sam's Property, or on any adjacent or proximate property owned or controlled by Sam's that is not within the legal description of the Properties, of a typical Sam's Club Store or Wal-Mart SuperCenter store, as the same may be configured, inventoried and operated from time to time.

12. The Owners acknowledge that the Outparcels (referred to in the Declaration as Reserve Tracts A through G as depicted on Exhibit B to the Original Declaration) have not been platted or developed in a manner consistent with the property lines indicated for such Reserve Tracts on said Exhibit B (the seven Reserve Tracts have in fact been platted or developed as six tracts of land). Therefore, the Owners agree that, from and after the date of this Second Amendment, all collective or individual references in the Declaration to all or any of the Outparcels, the Reserve Tracts or the Reserves, as applicable, shall mean and refer to Outparcels A, B, C, E, F and G, collectively or respectively, as applicable, as such Outparcels are labeled and depicted on Exhibit B to this Second Amendment. From and after the date of this Second Amendment, there is no longer a tract labeled or referred to as Outparcel D. Further, Section 3.7(a) of the Declaration is hereby revised to read as follows: "Any building constructed on any of the Outparcels shown on Exhibit B shall not exceed 6,000 square feet in area, except for Outparcel A, which shall not exceed 11,000 square feet in area, and Outparcel E, which shall not exceed 6,100 square feet in area, subject in all cases, however, to satisfaction of the parking requirements set forth in Section 5.5 of this Declaration."

13. Section 4.4 of the Declaration is deleted in its entirety, and the following is substituted as and shall hereafter constitute and be Section 4.4 of the Declaration:

"Section 4.4  Minimum Access Points.  In connection with the construction of improvements on their respective Parcels (except regarding Outparcels as are specifically addressed in Section 3.7(1) above), each Owner shall establish and construct access points between such Owner's Parcel and any adjacent Parcels, so as to provide ingress and egress for pedestrian and vehicular traffic to and from adjacent Parcels, which access points may be modified from time to time by such Owner in accordance with the provisions of Section 2.3 of this Declaration."

14. Section 5.5 of the Declaration is amended to provide that the required parking ratio on the Sam's Property shall be 4.5 parking spaces for each 1,000 square feet of building improvements.

15. Section 5.6 of the Declaration is hereby modified to provide that all notices and other communications required or permitted to be given under the Declaration shall be in writing and shall be mailed by certified or registered mail, postage prepaid, or shall be sent by Federal Express, Airborne Express, or similar overnight delivery service, addressed to the respective Owners as set forth on the respective signature pages of the Owners attached to this Second Amendment. Notices shall be effective upon receipt or refusal. In the event that any person acquires a fee interest in any portion of the Properties, said person shall be entitled to provide a request for notice to the Owners listed herein, which request, in order to be effective, must also be recorded in the Real Property Records of Hays County, Texas. Any Owner shall be entitled to change its address for notice by providing notice of such change and recording a copy of the notice of such change in the Real Property Records of Hays County, Texas. Until such time as the notice of change is effective pursuant to the terms of this Section 5.6 and until such time as it is recorded as required above, the last address of said Owner shall be deemed to be the proper address of said Owner.

16. Section 5.9 of the Declaration is clarified to provide that none of the provisions of the Declaration shall encumber or have any application to any adjacent or proximate property owned or controlled by Sam's that is not within the legal description of the Properties, even though the business operations on the Sam's Property and the business operations on such adjacent or proximate property may be integrated or related, or share parking, access or utilities.

17. Sections 5.7 and 5.11 of the Declaration are amended to provide that a ground lessee is a party entitled to enforce the Declaration only if and for so long as a recorded memorandum of such ground lease specifically so provides; otherwise, the Owner of the Parcel or Outparcel subject to such ground lease shall be the Party under the Declaration with respect to such Parcel or Outparcel for all purposes.

18. Section 5.12 of the Declaration is amended to provide that such Section shall not apply to any buildings or other improvements constructed, altered or reconstructed on the Sam's Property or the Lowe's Property.

19. Section 5.15 of the Declaration is amended to provide that the record fee title Owner of the Sam's Property shall be a Party to the Declaration for all purposes, even though the

buildings or other improvements on the Sam's Property may be less than 20,000 square feet in building area.

20. The Cinema has joined in the execution of this Second Amendment solely to evidence its knowledge of and consent to this Second Amendment, as required pursuant to the terms of Section 26 of that certain "Reciprocal Easement Agreement" dated June 19, 1998, executed by and between Mary Ann Hood, Trustee, and PBA Development, Inc., recorded in Book 1426, Page 001 of the Real Property Records of Hays County, Texas.

21. In the event and to the extent of any conflict between the terms and provisions of this Second Amendment and the terms and provisions of the Declaration, the terms of this Second Amendment shall supersede and control. The Owners hereby ratify and confirm the terms and provisions of the Declaration, as modified by this Second Amendment.

22. This Second Amendment may be executed in a number of identical counterparts. If so executed, each of such counterparts shall be deemed to be an original for all purposes, and all such counterparts shall, collectively, when taken together, constitute this Second Amendment.

EXECUTED effective as of the date first referenced above.

## [SEPARATE SIGNATURE PAGES ATTACHED]

SIGNATURE PAGE
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

Address for Notices:

c/o Lincoln Property Company
Commercial, Inc.
3300 Lincoln Plaza
500 N. Akard
Dallas, TX 75201
Attn: Robert Dozier

With a Copy to:

Jenkens & Gilchrist, P.C.
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
Attn: William L. Sladek, Esq.

SELLER:

**LINCOLN PO RED OAK VILLAGE, L.P.,** a
Delaware limited partnership

By:  Lincoln/MFIL Red Oak, Ltd., a Texas
limited partnership

By:  Lincoln GP Red Oak, Inc., a Texas
corporation

By: _Kout Dzi_
Name: _Robert Dozier_
Title: _Executive Vice President_

ACKNOWLEDGMENT

STATE OF TEXAS           §
                         §
COUNTY OF _Dallas_       §

BEFORE ME, the undersigned Notary Public, on this day personally appeared
_Robert Dozier_, the _Executive Vice President_ of Lincoln GP Red Oak, Inc., a Texas
corporation and general partner of Lincoln/MFIL Red Oak, Ltd., a Texas limited partnership and
general partner of **LINCOLN PO RED OAK VILLAGE, L.P.,** a Delaware limited partnership,
who is

_X_ known to me
_____ proved to me through his/her _____ driver's license
                                        (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged
to me that he/she executed the same on behalf of said limited partnership for the purposes and
consideration expressed therein.

GIVEN under my hand and seal of office on this _13th_ day of _June_, 2006.

[SEAL]

_Jennifer Rodgers_
NOTARY PUBLIC, STATE OF TEXAS

JENNIFER RODGERS
MY COMMISSION EXPIRES
June 9, 2007

24557715.9 03-Feb-06 08:59 04298777                    8

<div align="center">

**SIGNATURE PAGE**
**TO**
**SECOND AMENDMENT TO DECLARATION OF**
**COVENANTS, CONDITIONS AND RESTRICTIONS**

</div>

Address for Notices:

Lowe's Home Centers, Inc.
Highway 268 East
North Wilkesboro, NC 28659
Attn: Property Management Dept. (REO)

With a Copy to:

Lowe's Home Centers, Inc.
Highway 268 East
North Wilkesboro, NC 28659
Attn: Legal Dept. (REO)

**LOWE'S:**

**LOWE'S HOME CENTERS, INC.**, a North
Carolina corporation

By: _David E Shelton_

Name: _____

Title: _____
DAVID E. SHELTON
SENIOR VICE PRESIDENT

<div align="center">

**ACKNOWLEDGMENT**

</div>

STATE OF NORTH CAROLINA §
§
COUNTY OF WILKES §

BEFORE ME, the undersigned Notary Public, on this day personally appeared _David E. Shelton_, the _Sr. Vice President_ of **LOWE'S HOME CENTERS, INC.**, who is

✓ known to me
_____ proved to me through his/her _____ driver's license
<div align="center">(State)</div>

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this 29th day of November, 2006.

[SEAL]

_Amanda J Wyatt_
NOTARY PUBLIC, STATE OF NORTH CAROLINA

AMANDA T WYATT
Notary Public, North Carolina
Wilkes County
My Commission Expires
April 24, 2010

**SIGNATURE PAGE**
**TO**
**SECOND AMENDMENT TO DECLARATION OF**
**COVENANTS, CONDITIONS AND RESTRICTIONS**

Address for Notices:

c/o Discount Tire Company
20225 N. Scottsdale Road
Scottsdale, AZ 85255-6456
Attn: President

With a Copy to:

c/o Discount Tire Company
20225 N. Scottsdale Road
Scottsdale, AZ 85255-6456
Attn: General Counsel

HALLE (Discount Tire):

HALLE PROPERTIES, LLC, an Arizona
limited liability company

By: _____
Name: ___James Silhasek_____
Title: ___Agent_____

**ACKNOWLEDGMENT**

STATE OF ARIZONA        §
                        §
COUNTY OF MARICOPA §

BEFORE ME, the undersigned Notary Public, on this day personally appeared
_____James Silhasek_____ the ____Agent_____ of **HALLE PROPERTIES,
LLC,** who is

___x___ known to me
_____ proved to me through his/her _____ driver's license
                                          (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged
to me that he/she executed the same on behalf of said limited liability company for the purposes
and consideration expressed therein.

GIVEN under my hand and seal of office on this _3rd_ day of __October__, 2006.

[SEAL]                      _____
                           NOTARY PUBLIC, STATE OF ARIZONA

OFFICIAL SEAL
LUCINDA CHIPMAN
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires Aug. 26, 2008

24557715.9 10-Jul-06 15:06 04298777                    10

SIGNATURE PAGE
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

Address for Notices:

_____
_____
_____
Attn: _____

EBC (Jack in the Box):

**ENGINEER BUSINESS CENTER, LLC,** a
California limited liability company

By: _____
Name: DAVE A DUFOUR
Title: MAG. MEMBER

With a Copy to:

_____
_____
_____
Attn: _____

## ACKNOWLEDGMENT

STATE OF CALIFORNIA    §
                                          §
COUNTY OF SAN DIEGO  §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Dave A. Dufour the Managing Member of **ENGINEER BUSINESS CENTER, LLC,** who is

___X___ known to me
_____ proved to me through his/her _____ driver's license
                                                              (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said limited liability company for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this 29 day of August, 2006.

[SEAL]

_____
NOTARY PUBLIC, STATE OF CALIFORNIA

DEBRA H. MINARD
Commission # 1389327
Notary Public - California
San Diego County
My Comm. Expires Dec 9, 2006

24557715 9  10-Jul-06 15:06  04298777                 11

SIGNATURE PAGE
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

Address for Notices:

~~Jack in the Box Inc.~~
~~9330 Balboa Avenue~~
~~San Diego, CA 92123-1516~~
Attn: _____

With a Copy to:

_____
_____
_____
Attn: _____

**JACK IN THE BOX EASTERN DIVISION**
**L.P., a Texas limited partnership**

By:   **JBX General Partner LLC,**
      a Delaware limited liability company,
      as general partner

By:   **Jack in the Box Inc.,**
      a Delaware corporation, sole
      member of the limited liability company

By: _____
Name: Michael J. Snider
Title: Assistant Secretary

## ACKNOWLEDGMENT

STATE OF CALIFORNIA    §
                       §
COUNTY OF SAN DIEGO    §

On _____ __, 2006, before me, _____, Notary Public, personally appeared _____, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

[SEAL]

_____
NOTARY PUBLIC, STATE OF CALIFORNIA

_____
Optional Section:
Capacity Claimed By Signer:  Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.

_____ Individual
_____ Corporate Officer _____ (Title)
_____ Partner(s)          _____ Limited _____ General
_____ Trustee(s)
_____ Other - Authorized Person

Signer is representing: Jack in the Box Eastern Division Limited Partnership, By: JBX General Partner LLC, A Delaware limited liability company, as General Partner By: Jack in the Box Inc., a Delaware corporation as sole member of the limited liability company

24557715 9 10-Jul-06 15:06 04298777                    12

State of California          )
                            )
County of San Diego         )

On <u>August 28, 2006</u>, before me, <u>Delard D. Barnes</u>, Notary Public, personally appeared Michael J. Snider, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public

```
DELARD D. BARNES
COMM. #1379413
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Nov. 7, 2006
LS01
```

SEAL
--------------------------------------------------------------------------

OPTIONAL SECTION:

<u>Capacity Claimed by Signer</u>. Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.

_____ Individual
  X   Corporate Officer(s)_____  <u>Assistant Secretary</u>
                                        Title(s)
_____ Partner(s)   _____ Limited   _____General
_____ Trustee(s)
_____ Other (Authorized Person)

Signer is Representing:   <u>JBX General Partner LLC, a Delaware limited liability company, General partner of Jack in the Box Eastern Division L.P., a Texas limited partnership, and Jack in the Box Inc., a Delaware Corporation as sole member of the limited liability company</u>
                              Name of Entity(ies)

Title or Type of Document: <u>2nd Amendment to Declaration of CCR's, JIB 866</u>

Number of Pages: _____          Date of Document:
Copyright 1993 National Notary Association, Canoga Park C

—12A—

<div align="center">

SIGNATURE PAGE
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

</div>

<u>Address for Notices:</u>

*450 S. Orange Avenue*
*Orlando, FL 32801*
_____
Attn: *Asset Management*

**CNL (Shell):**

**CNL APF PARTNERS, LP**, a Delaware limited
partnership, successor by merger to USRP
FUNDING 2002-A, L.P., a Texas limited
partnership

<u>With a Copy to:</u>

_____
_____
_____
Attn: _____

**By:**  **CNL APF GP Corp.**, a Delaware
corporation, as General Partner

By: _____
Name: *T. Glenn Kindred*
Title: *Senior Vice President*

<div align="center">

**ACKNOWLEDGMENT**

</div>

STATE OF FLORIDA          §
                          §
COUNTY OF ORANGE          §

BEFORE ME, the undersigned Notary Public, on this day personally appeared *T. Glenn Kindred* the *Senior Vice President* of **CNL APF GP Corp.**, a Delaware corporation, as General Partner of **CNL APF PARTNERS, LP**, a Delaware limited partnership, who is

_X_ known to me
_____ proved to me through his/her _____ driver's license
                                        (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said limited partnership for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this *3rd* day of *April*, 2006.

[SEAL]        *Anne Deborah Bousek*
            NOTARY PUBLIC, STATE OF FLORIDA



NOTARY PUBLIC
STATE OF FLORIDA
ANNE DEBORAH BOUSEK
MY COMMISSION # DD487307
EXPIRES: Nov. 1, 2009
(407) 398-0153  Florida Notary Service.com

24557715 9  03-Feb-06 08:59  04298777                    13

**SIGNATURE PAGE**
**TO**
**SECOND AMENDMENT TO DECLARATION OF**
**COVENANTS, CONDITIONS AND RESTRICTIONS**

Address for Notices:

_P. O. BOX 828_
_SAN MARCOS, TX_
_78667-0828_
Attn: _John L. NAVARRETTE_

With a Copy to:

_____
_____
_____
Attn: _____

**CENTURYTEL:**

**CENTURYTEL OF SAN MARCOS, INC.,** a
_TEXAS_ corporation

By: _John L. Navarrette_
Name: _John L. NAVARRETTE_
Title: _Operations Manager - TX MKTs_

**ACKNOWLEDGMENT**

STATE OF TEXAS          §
                        §
COUNTY OF HAYS          §

BEFORE ME, the undersigned Notary Public, on this day personally appeared
_John L Navarrette_ the _Operations Manager_ of
**CENTURYTEL OF SAN MARCOS, INC.,** who is

_____ known to me
__✓__ proved to me through his/her _Texas_ driver's license
                                         (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged
to me that he/she executed the same on behalf of said corporation for the purposes and
consideration expressed therein.

GIVEN under my hand and seal of office on this _25_ day of _Aug_, 2006.

[SEAL]                   _Elsmith_
                         NOTARY PUBLIC, STATE OF TEXAS

EMILY L. SMITH
Notary Public
STATE OF TEXAS
My Comm. Exp. Feb. 9-2007

24557715 9  10-Jul-06 15:34  04298777                    14

SIGNATURE PAGE
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

Address for Notices:

Sam's Real Estate Business Trust
2001 S.E. 10th Street
Bentonville, AR  72716-0550
Attn: Property Management (Texas)
        Sam's Club #4958-00

With a Copy to:
Sam's Real Estate Business Trust
2001 S.E. 10th Street
Bentonville, AR  72716-0550
Attn: Legal Department
        Sam's Club #4958-00

SAM'S:

SAM'S REAL ESTATE BUSINESS TRUST, a
Delaware statutory trust

By: _____
Name:  Robert Stoker
Title:    Assistant Vice President

Approved as to legal terms only
by  BEU
WAL-MART, LEGAL DEPT.
Date:  04/27/2006

ACKNOWLEDGMENT

STATE OF ARKANSAS        §
                                          §
COUNTY OF BENTON       §

BEFORE ME, the undersigned Notary Public, on this day personally appeared _____Robert W. Stoker_____, an Assistant Vice President of **SAM'S REAL ESTATE BUSINESS TRUST,** who is

    __X__  known to me
    _____  proved to me through his/her _____ driver's license
                                                              (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said statutory trust for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this 27th day of April, 2006.

[SEAL]                    _____
                              NOTARY PUBLIC, STATE OF ARKANSAS

MARIUM SEIDEL
"NOTARY PUBLIC"
State of Arkansas, Benton County
My Commission Expires 8/13/2015

24557715 9  03-Feb-06 08:59  04298777                    15

**SIGNATURE PAGE**
**TO**
**SECOND AMENDMENT TO DECLARATION OF**
**COVENANTS, CONDITIONS AND RESTRICTIONS**

Address for Notices:

The Cinema
1250 Won Drworld Dr
San Marcos Tx 78666
Attn: David Roberts

With a Copy to:

Jim Duvall
112 North LBJ Drive
San Marcos, TX 78666
Attn: _____

**THE CINEMA:**

**TEXAS CINEMA CORPORATION**, a Texas
corporation

By: _____
Name: David Roberts
Title: President

**ACKNOWLEDGMENT**

STATE OF _Texas_ §
§
COUNTY OF _Hays_ §

BEFORE ME, the undersigned Notary Public, on this day personally appeared
_D. Roberts_ the _President_ of **TEXAS CINEMA**
**CORPORATION**, who is

✓ known to me
_____ proved to me through his/her _____ driver's license
(State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged
to me that he/she executed the same on behalf of said corporation for the purposes and
consideration expressed therein.

GIVEN under my hand and seal of office on this 1st day of _Aug_ , 2006.

[SEAL]

Betty J Newlin
NOTARY PUBLIC, STATE OF _Texas_

BETTY J. NEWLIN
Notary Public, State of Texas
My Commission Expires
December 31, 2007

24557715 9  10-Jul-06 15:06  04298777                    16

CONSENT
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

La Jolla Bank ("Lender"), as beneficiary under that certain Deed of Trust (the "Deed of Trust") executed by Engineer Business Center, LLC, recorded in Volume 5347, Page 4859 of the Real Property Records of Hays County, Texas, secured by the Jack in the Box Property, does hereby consent to the execution of the attached First Amendment to Declaration of Covenants, Conditions and Restrictions.

IN WITNESS WHEREOF, Lender has executed this Consent this _5_ day of October_____, 2006.

LA JOLLA BANK

By: _____
Name: David Yoden
Title: Director of Loans

ACKNOWLEDGMENT

STATE OF California §
                              §
COUNTY OF San Diego §

BEFORE ME, the undersigned Notary Public, on this day personally appeared David Yoder_____ the Director of Loans____ of LA JOLLA BANK, who is

__✓__ known to me
_____ proved to me through his/her _____ driver's license
                                                          (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this _5th_ day of _Oct._, 2006.

[SEAL]                    _____
                          NOTARY PUBLIC, STATE OF California

JENNIFER J. NOVAK
Commission # 1424130
Notary Public - California
San Diego County
My Comm. Expires Jun 13, 2007

24557715 9  10-Jul-06 15:06  04298777                    17

**CONSENT**
**TO**
**SECOND AMENDMENT TO DECLARATION OF**
**COVENANTS, CONDITIONS AND RESTRICTIONS**

WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO BANK MINNESOTA, N.A., TRUSTEE ("Lender"), as beneficiary under that certain Deed of Trust (the "Deed of Trust") executed by USRP Funding 2002-A, L.P. Engineer Business Center, LLC, recorded in  Volume 1762, Page 1 of the Real Property Records of Hays County, Texas, secured by the USRP Property, does hereby consent to the execution of the attached First Amendment to Reciprocal Easement Agreement.

IN WITNESS WHEREOF, Lender has executed this Consent this 17 day of April, 2006.

WELLS FARGO BANK, N.A., successor by merger to
WELLS FARGO BANK MINNESOTA, N.A., TRUSTEE

By:     CNL Financial Services, L.P., a Delaware
        limited partnership, as Property Manager,
        pursuant to the authority granted under that
        certain Limited Power of Attorney from
        Indenture Trustee, dated as of March 24, 2005

        By:     CNL Financial Services GP Corp., a
                Delaware corporation, as its general partner

                By: _____
                Name: Steven D. Shackelford
                Title: CFO

**ACKNOWLEDGMENT**

STATE OF Florida      §
                      §
COUNTY OF Orange      §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Steven D. Shackelford the CFO of CNL Financial Services GP Corp., a Delaware corporation, as the general partner of CNL Financial Services, L.P., a Delaware limited partnership, as Property Manager for WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO BANK MINNESOTA, N.A., TRUSTEE, pursuant to the authority granted under that certain Limited Power of Attorney from Indenture Trustee, dated as of March 24, 2005, who is

_____ known to me
_____ proved to me through his/her _____ driver's license
                                    (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this 17 day of April, 2006.

[SEAL]     Elaine Grayson
           My Commission DD167433
           Expires November 24, 2008
                                    Elaine Grayson
                                    NOTARY PUBLIC, STATE OF Florida

24557715 9 03-Feb-06 08:59 04298777                    18

## CONSENT
## TO
## SECOND AMENDMENT TO DECLARATION OF
## COVENANTS, CONDITIONS AND RESTRICTIONS

**JP MORGAN CHASE BANK, N.A.** ("Lender"), as beneficiary under that certain Construction Deed of Trust, Assignment, Security Agreement and Financing Statement (the "Deed of Trust") executed by **LINCOLN PO RED OAK VILLAGE, L.P.**, a Delaware limited partnership, recorded in Volume 2716, Page 827, of the Official Public Real Property Records of Hays County, Texas, covering the Seller Property, does hereby consent to the execution of the attached Second Amendment.

IN WITNESS WHEREOF, Lender has executed this Consent this 5ᵗʰ day of _July_, 2006.

**JP MORGAN CHASE BANK, N.A.**

By: _____
Name: _Dale W. Renner_
Title: _VP_

## ACKNOWLEDGMENT

STATE OF _Texas_ §
§
COUNTY OF _Dallas_ §

BEFORE ME, the undersigned Notary Public, on this day personally appeared _Dale W. Renner_ the _Vice President_ of **JP MORGAN CHASE BANK, N.A.**, who is

✓ known to me
_____ proved to me through his/her _____ driver's license
(State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said national banking association for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this 5ᵗʰ day of _July_, 2006.

[SEAL]

NANCY D. WEBB-MARTIN
Notary Public, State of Texas
My Commission Expires
March 15, 2007

_____
NOTARY PUBLIC, STATE OF _Texas_

CONSENT
TO
SECOND AMENDMENT TO DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS

**AIG GLOBAL REAL ESTATE INVESTMENT CORP.** ("AIG"), as beneficiary under that certain Deed of Trust and Security Agreement (the "Deed of Trust") executed by **LINCOLN PO RED OAK VILLAGE, L.P.,** a Delaware limited partnership, recorded in Volume 2718, Page 777, of the Official Public Real Property Records of Hays County, Texas, covering the Seller Property, does hereby consent to the execution of the attached Second Amendment.

IN WITNESS WHEREOF, AIG has executed this Consent this _1st_ day of _September_, 2006.

**AIG GLOBAL REAL ESTATE INVESTMENT CORP.**

By: _____
Name: _Mark Hertz_
Title: _Managing Director_

**ACKNOWLEDGMENT**

STATE OF _New York_ §
                                    §
COUNTY OF _Nassau_ §

BEFORE ME, the undersigned Notary Public, on this day personally appeared _Mark Hertz_ the _Managing Director_ of **AIG GLOBAL REAL ESTATE INVESTMENT CORP.,** who is

___✓___ known to me
_____ proved to me through his/her _____ driver's license
                                                                    (State)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of said corporation for the purposes and consideration expressed therein.

GIVEN under my hand and seal of office on this _1st_ day of _September_, 2006.

[SEAL]

_____
NOTARY PUBLIC, STATE OF _New York_

TAHANI YASSINE
Notary Public, State of New York
No. 01YA6108452
Qualified in Nassau County
Term Expires April 19, 2008

24557715.9 03-Feb-06 08:59 04298777                    20

**EXHIBIT "A"**

**[Description of the Sam's Property]**

**15.724 ACRES**
**J.M. VERAMENDI LEAGUE NO. ONE**

A DESCRIPTION OF A 15.724 ACRE (APPROXIMATELY 684,956 S.F.) TRACT OF LAND OUT OF THE J.M. VERAMENDI LEAGUE NO. ONE, SITUATED IN HAYS COUNTY, TEXAS, BEING A PORTION OF AN 18.252 ACRE TRACT CONVEYED TO LINCOLN PO RED OAK VILLAGE, L.P., BY GENERAL WARRANTY DEED, DATED JULY 1, 2005, RECORDED IN VOLUME 2716, PAGE 650, OF THE OFFICIAL PUBLIC RECORDS OF HAYS COUNTY, TEXAS AND A PORTION OF A 17.037 ACRE TRACT (TRACT 3), CONVEYED TO LINCOLN PO RED OAK VILLAGE, L.P., BY GENERAL WARRANTY DEED, DATED JULY 1, 2005, RECORDED IN VOLUME 2716, PAGE 659, BOTH OF THE OFFICIAL PUBLIC RECORDS OF HAYS COUNTY, TEXAS; SAID 15.724 ACRES BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a 1/2" rebar found for a south corner of the 18.252 acre tract, being also in the proposed northeast right-of-way line of Cottonwood Parkway (70' right-of-way width), and in the northeast line of a 0.347 acre tract recorded in Volume 1642, page 399, of the Official Public Records of Hays County, Texas;

THENCE along the proposed northeast right-of-way line of Cottonwood Parkway, the northeast line of the 0.347 acre tract, and the southwest line of the 18.252 acre tract, the following two (2) courses;

1. North 45°59'53" West, a distance of 100.00 feet to a 1/2" rebar found for the beginning of a curve to the right, from which a 1/2" rebar found bears South 44°04'14" West, a distance of 70.06 feet;

2. 81.22 feet along the arc of said curve to the right, having a radius of 406.21 feet, and through a central angle of 11°27'24", the chord of which bears North 40°11'33" West, a distance of 81.09 to a 1/2" rebar with cap set for a southwest corner of the herein described tract, from which a 1/2" rebar with cap set bears on a chord North 19°05'59" West, a distance of 215.26 feet;

THENCE leaving the proposed northeast right-of-way line of Cottonwood Parkway, over and across the 18.252 acre tract and the 17.037 acre tract, the following twenty-three (23) courses:

1. North 55°10'20" East, a distance of 19.11 feet to a 1/2" rebar with cap set;

2. North 19°24'03" East, a distance of 135.62 feet to a 1/2" rebar with cap set;

3. North 10°08'09" West, a distance of 20.52 feet to a 1/2" rebar with cap set;

4. North 45°39'36" East, a distance of 40.31 feet to a 1/2" rebar with cap set;

5. North 09°26'34" East, a distance of 10.06 feet to a 1/2" rebar with cap set;

6. South 88°28'01" West, a distance of 24.09 feet to a 1/2" rebar with cap set;

7. North 57°38'24" West, a distance of 39.16 feet to a 1/2" rebar with cap set;

8. North 23°44'48" West, a distance of 47.15 feet to a 1/2" rebar with cap set;

9. North 10°08'48" East, a distance of 33.20 feet to a 1/2" rebar with cap set;

10. North 44°02'24" East, a distance of 31.38 feet to a 1/2" rebar with cap set;

11. North 00°57'36" West, a distance of 28.28 feet to a 1/2" rebar with cap set;

12. North 45°57'36" West, a distance of 59.10 feet to a 1/2" rebar with cap set;

13. North 00°57'36" West, a distance of 35.36 feet to a 1/2" rebar with cap set;

14. North 44°02'24" East, a distance of 12.00 feet to a 1/2" rebar with cap set;

15. North 45°57'36" West, a distance of 18.79 feet to a 1/2" rebar with cap set;

16. North 44°02'24" East, a distance of 53.00 feet to a 1/2" rebar with cap set;

17. North 45°57'36" West, a distance of 28.79 feet to a 1/2" rebar with cap set;

18. North 44°02'24" East, a distance of 333.14 feet to a 1/2" rebar with cap set;

19. North 45°57'36" West, a distance of 45.76 feet to a 1/2" rebar with cap set;

20. North 44°02'23" East, passing at 233.93 feet the common line of the 18.252 acre tract and 17.037 acre tract, continuing for a total distance of 537.06 feet to a 1/2" rebar with cap set;

21. South 45°57'36" East, a distance of 194.73 feet to a 1/2" rebar with cap set;

22. North 74°54'25" East, a distance of 88.21 feet to a 1/2" rebar with cap set;

23. North 83°50'44" East, a distance of 119.59 feet to a 1/2" rebar with cap set in the southwest line of the 17.037 acre tract, being also in the west right-of-way line of Leah Avenue (60' right of way width) and being the beginning of a non-tangent curve to the left, from which a 1/2" rebar with cap set bears on a chord North 17°50'37" East, a distance of 189.95'

THENCE along the common line of the 17.037 acre tract and Leah Avenue, the following four (4) courses:

1. 100.43 feet along the arc of said non-tangent curve to the left, having a radius of 330.00 feet, and through a central angle of 17°26'13", the chord of which bears South 07°36'03" East, a distance of 100.04 feet to a 1/2" rebar with cap set;

2. South 16°19'08" East, a distance of 100.00 feet to a 1/2" rebar found for the beginning of a curve to the right;

3. 283.67 feet along the arc of said curve to the right, having a radius of 270.00 feet, and through a central angle of 60°11'51", the chord of which bears South 13°40'17" West, a distance of 270.81 feet to a 1/2" rebar with cap set;

4. South 43°46'22" West, a distance of 126.04 feet to a 1/2" rebar found for the south corner of the 17.037 acre tract, being also in the northwest right-of-way line of Leah Avenue and the east corner of the 18.252 acre tract, from which a 1/2" rebar found bears South 46°12'41" East, a distance of 60.08 feet;

THENCE along the southeast line of the 18.252 acre tract and the northwest line of Leah Avenue, the following two (2) courses:

1. South 44°02'29" West, a distance of 923.73 feet to a 1/2" rebar found for the beginning of a non-tangent curve to the right, from which a 1/2" rebar found bears South 45°35'58" East, a distance of 60.15 feet;

2. 15.59 feet along the arc of said curve to the right, having a radius of 15.00 feet, and through a central angle of 59°33'34", the chord of which bears South 74°50'50" West, a distance of 14.90 feet to a 1/2" rebar with cap set for a south corner of the 18.252 acre tract, being also in the proposed northeast right-of-way line of Cottonwood Parkway (proposed 70' right-of-way width);

THENCE along the common line of the proposed northeast right-of-way line of Cottonwood Parkway, and the southwest lines of the 18.252 acre tract, the following two (2) courses;

1. North 03°51'30" West, a distance of 57.62 feet to a 1/2" rebar found;

2. South 43°15'44" West, a distance of 41.00 feet to the POINT OF BEGINNING, containing an area of 15.724 acres of land, more or less.

EXHIBIT "B"

[New Site Plan]



B-2









24557715 9  10-Jul-06 15:06  04298777



SITE PLAN

EXHIBIT 'B'
LOWES DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

O'BRIEN & ASSOCIATES, INC.
ARCHITECTURE • INTERIORS • PLANNING

RED OAK VILLAGE
SAN MARCOS, TEXAS
LINCOLN PROPERTY COMPANY

LEGEND

PERMITTED LOCATION
OF SERVICE STATION



24557715 9  10-Jul-06 15:06  04298777





24557715 9  10-Jul-06 15:06  04298777

