**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Jessica D. Mikhailevich
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Email:    jessica.mikhailevich@troutman.com

-and-

Kenneth A. Listwak (*pro hac vice* application pending)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500
Email:    ken.listwak@troutman.com

*Counsel for Ollie's Bargain Outlet, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 1157, 1360, 2695, 2696, 2697, 2698, 2704, and 2706** |

**DECLARATION OF ROBERT HELM IN SUPPORT OF THE ASSUMPTION AND**
**ASSIGNMENT OF A CERTAIN UNEXPIRED LEASE**

I, ROBERT HELM, hereby declare pursuant to 28 U.S.C. § 1746, under penalty of perjury

as follows:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

165240069v4

1.   I am the Chief Financial Officer ("CFO") and Senior Vice President ("SVP") of Ollie's Bargain Outlet, Inc. ("Ollie's") and its publicly traded parent company, Ollie's Bargain Outlet Holdings, Inc. (included in the definition of "Ollie's", unless separately specified as the "Public Company").  I am over eighteen years of age and make this declaration based on: (i) my personal knowledge; (ii) information learned from my review of relevant documents; (iii) information supplied to me by individuals and advisors employed or retained by the Public Company and/or Ollie's; or (iv) my opinion based on my experience, knowledge, and information concerning the facts set forth herein.

2.   I am competent to testify as witness and make this declaration in support of the assignment of that certain *Lease Agreement* between Lincoln PO Red Oak Village, L.P. and Bed Bath & Beyond Inc., dated on or about September 29, 2005 (the "Lease") with respect to the leased premises 1050 McKinley Place Drive Bldg 2, Suite 220, San Marcos, TX 78666 ("Store No. 1107"), pursuant to the *Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422] (the "Lease Sale Procedures Order").

3.   I have extensive experience in the retail industry.  I have been the CFO of Ollie's since October 2022.  As a part of my duties as CFO, I am intimately familiar with Ollie's business model and operations, including, but not limited to, the category and quality of merchandise sold in Ollie's stores, the layout, appearance, design, and operations of Ollie's stores, Ollie's marketing and sale practices (including pricing), and Ollie's merchandise sourcing and acquisition practices. I am an executive member of Ollie's Real Estate Executive Committee, heavily involved in site selection (including meeting at least monthly to discuss potential sites), establishing lease terms and conditions, and performing final review of new store leases.

165240069v4

4. Prior to my role as CFO of Ollie's, I served as CFO of retailer The Children's Place starting in April 2021. While at the Children's Place, I sat on the company's real estate committee for several years and served in a leadership role on the committee. I joined the Children's Place in 2016 as a Vice President and Controller. Prior to this, I served as Vice President and Controller for retailers FreshDirect and rag & bone. I was previously the Vice President, U.S. Regional Controller at retailer Ralph Lauren. I began my career in public accounting and auditing, including at KPMG LLP.

**Ollie's Qualified Bid**

5. On June 22, 2023, pursuant to the Lease Sale Procedures Order, Ollie's submitted a Qualified Bid (as defined in the Lease Sale Procedures Order) for several leases of the above-captioned debtors (the "Debtors"), including the Lease to Store No. 1107. In accordance with the Lease Sale Procedures Order, Ollie's submitted along with its bid, information concerning adequate assurance, which included a copy of the Public Company's most recent Form 10-Q, a hyperlink to the Public Company's From 10-K for the fiscal year ending January 28, 2023, and information regarding Ollie's retail operations.[2] The information accompanying Ollie's Qualified Bid contains information supporting Ollie's ability to comply with the requirements of section 365 of the Bankruptcy Code, including Ollie's extremely strong financial positison. Ollie's is willing and able to perform under the Lease.

6. I have been actively involved in the due diligence and negotiations leading up to the proposed sale transaction. The sale process, sale and sale price and all negotiations with the Debtors were conducted at arms-length and in good faith, with the parties being represented by

---

[2] As of the time Ollie's submitted its Qualified Bid, it had been in operation for over 40 years and had 480 retail locations across 29 states. As of November 15, 2023, Ollie's has been in operation for over 41 years and has 510 stores open in 30 states.

3

165240069v4

separate legal counsel, and were not tainted by fraud, collusive bidding, or other misconduct. There is no agreement between Ollie's and any other party to control the sale price for the Lease.

7. To the best of my knowledge, none of Ollie's or the Public Company, their affiliates, or the directors, officers, partners, or employees of Ollie's or the Public Company or their affiliates is an affiliate, director, officer, partner, or managing agent or "insider" of any of the Debtors or is otherwise affiliated with any such entity. I understand the definitions of the terms "affiliate" and "insider" as set forth in the Bankruptcy Code.

8. Ollie's is purchasing the Lease in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and has proceeded in good faith in connection with all aspects this transaction.

9. Ollie's has offered to purchase the Lease free and clear of all liens, claims, encumbrances, and interests, to the fullest extent authorized under section 363(f) of the Bankruptcy Code and other applicable law.

## Selection of Ollie's as Successful Bidder

10. On June 27, 2023, the Debtors filed the *Notice of Successful and Backup Bidder with Respect to the Phase 1 Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Lease* [Docket No. 1114] (the "Notice of Successful Bidder"). The Notice of Successful Bidder identified Ollie's as the successful bidder for the Lease to Store No. 1107 and stated that the deadline to object to the assumption and assignment of the Lease to Ollie's was July 11, 2023 at 5:00 p.m. (ET).

## Ollie's Business Model

11. Ollie's prides itself on providing its customers incredible deals and steep discounts—it does so by offering mainly closeout merchandise and some overstock inventory,

165240069v4

which are both terms of art in the retail industry. Closeout merchandise consists of goods that are no longer made by the manufacturer or no longer sold by their intended retailers; overstock inventory consists of those goods that a manufacturer still has on hand after their intended buyers have purchased their contractually required allotments. Viewed out of appropriate context, this may make Ollie's appear similar to a "surplus" or "liquidation" store, when viewing these terms of art with the appropriate nuance and in the context of the industry, it becomes clear that these are very distinct concepts. Surplus stores, in the retail world, are stores that sell government, industrial, and/or military surplus—not consumer goods. Ollie's does not sell this type of merchandise. Liquidation outlets are establishments such as auction houses, brokering the sale of merchandise that is being liquidated. Ollie's does not liquidate retailer or manufacturer products—other entities, such as brokers or financial institutions undertake this work and Ollie's, from time to time, purchases certain of that inventory from those liquidators. These goods are then sold alongside closeout, private label, and other products, often on the same shelf and without distinction. Ollie's customers do not partake in an auction or liquidation process, like customers of an auction house or brokerage do. Further, Ollie's does not conduct any "going out of business" sales, fire sales, or anything similar in its 510 stores in 30 states. In short, to the extent that any of Ollie's inventory could be considered "liquidated", any actual liquidation occurred further up in the supply chain and far removed from Ollie's locations and customers.

12.    Ollie's also offers remanufactured and refurbished goods. These too are terms of art in the retail industry. While it may be tempting to conflate these goods for "second hand" or "used" goods that are sold in a thrift store, nothing could be further from the truth. Remanufactured goods come directly from a manufacturer and are sold in first class, unused condition—the merchandise has simply been returned to the manufacturer for recertification, repair if necessary,

5

testing, and repackaging, before selling to the end consumer. This is starkly different from used or second-hand goods, which had been previously owed by an end consumer, used by an end consumer, and then resold to a thrift retailer. Ollie's does not sell these types of goods, as opposed to, for example, Goodwill, the Salvation Army, Savers, or Plato's Closet.

13. Notably, the word "surplus" does not appear once in the entire 10-K Filing and there are absolutely no references therein to Ollie's business model in connection with liquidation sales, second-hand goods, used goods, or operation of a thrift store. If Ollie's operated its business—even at a *de minimis* level—in any of these arenas, certainly at least a single reference would have to be made to such operations in its 10-K filing with the SEC.

14. Due to its business model, Ollie's product mix on a SKU level varies more than a typical retailer. However, from a broader product category perspective, Ollie's stock is consistent. Ollie's does not specialize in any of the niches that the co-tenants in the Shopping Center are known for and no fluctuation in Ollie's stock would conceivably push Ollie's into any of those niche categories. For example, Ollie's sells a *de minimis* amount of tools—whether the same electric drills were available week-to-week may change, but no variation in Ollie's typical stock would ever dramatically change the floor space dedicated to tools so as to make Ollie's a hardware or home improvement store. As discussed below, Ollie's never comes close to exceeding the incidental use thresholds in applicable co-tenant exclusives. This is unsurprising, as Ollie's is currently a co-tenant with the other retailers in various locations across the U.S.[3] If anything, given that home goods was the leading product category in net sales for Ollie's past three fiscal years, Ollie's is a natural replacement for Bed Bath & Beyond within the shopping center. *See* 10-K

---

[3] Ollie's is a co-tenant of Marshalls in 11 locations, Lowe's in 9 locations, PETsMART in 8 locations, Best Buy in 5 locations, and Sam's Club in 4 locations.

6

165240069v4

Filing at 5. Attached to this declaration as **Exhibits A** and **B** are diagrams setting out the layout of Ollie's stores located in Denton, TX, and Dodge City, KS, respectively (the "Store Layout Diagrams"). These Store Layout Diagrams show, among other items, the way Ollie's lays out its prototypical stores and are a reasonable approximation of how Ollie's would lay out Store No. 1107. The Store Layout Diagrams show the percentage of floor space dedicated to each category of merchandise sold—none of these crosses any of the incidental use threshold appliable to the Lease and these boundaries within the stores do not change.

15. Finally, while Ollie's does have "semi-lovely" and functional stores, its stores are not dirty, low class, chaotic, or unsafe. Indeed, while Ollie's may not have especially elegant décor in its stores—not unlike Bed Bath & Beyond, the prior tenant of Store No. 1107—Ollie's business model is predicated on drawing consumers through a welcoming and safe environment. Indeed, Ollie's offers its customers a "unique, fun and engaging treasure hunt shopping experience" (*see* 10-K filing at p. 1), not unlike Bed Bath & Beyond's shopping experience that drew in customers "ever searching for that perfect 'treasure'" (*see* Docket No. 10, at ¶ 14). Ollie's products are consistent with a first class shopping center, as Ollie's offers well-regarded, recognizable brand name merchandise—the quality of its offerings is crucially important to Ollie's business model. Ollie's prides itself on being a model tenant and resides in many "first class" shopping centers across the country.

### The Objections

16. On July 14, 2023, the Realty Income Corporation ("Landlord"), the current landlord under the Lease, filed the Objection of Landlord Realty Income Corporation to Debtors' Motion for Order Authorizing Debtors to Assume and Assign Real Property Lease for Store No. 1107 [Docket No. 1360] (the "Initial Objection"). I have reviewed the Initial Objection and understand

165240069v4

that it raises issues with respect to the adequate assurance information provided by Ollie's and the outstanding amounts due to cure defaults under the Lease. Issues concerning Ollie's proposed use were mentioned only briefly. It is my understanding that the issues regarding cure amount have been resolved and that Landlord's proposed cure amount is $159.91. Ollie's does not oppose this cure amount. It is likewise my understanding that the objection with respect to the information provided by Ollie's regarding adequate assurance of future performance has been resolved.

17. On November 15, 2023, the Landlord filed *Realty Income Corporation's Supplemental Objection to Debtors' Motion for Order Authorizing Debtors to Assume and Assign Unexpired Non-Residential Real Property Lease for Store No. 1107* [Docket No. 2695] (the "Objection"), the *Declaration of Matthew Macdonald in Support of Realty Income Corporation's Supplemental Objection to Debtors' Motion for Order Authorizing Debtors to Assume and Assign Unexpired Non-Residential Real Property Lease for Store No. 1107* [Docket No. 2696] (the "MacDonald Declaration"), the *Declaration of Demetri Lahanas in Support of Realty Income Corporation's Supplemental Objection to Debtors' Motion for Order Authorizing Debtors to Assume and Assign Unexpired Non-Residential Real Property Lease for Store No. 1107* [Docket No. 2697] (with the exhibits thereto as resubmitted at Docket No. 2704, the "Lahanas Declaration"), and the *Declaration of J. Alexandra Rhim in Support of Realty Income Corporation's Supplemental Objection to Debtors' Motion for Order Authorizing Debtors to Assume and Assign Unexpired Non-Residential Real Property Lease for Store No. 1107* [Docket No. 2698] (with the exhibits thereto as resubmitted at Docket No. 2706 the "Rhim Declaration" and, together with the MacDonald Declaration and the Lahanas Declaration, the "Declarations").[4]

---

[4] Capitalized terms not defined herein have the meanings ascribed to them in the Initial Objection, the Objection, and the Lease, as applicable. Unless otherwise specified, the documents cited to herein are attached as Exhibits to the

18. I have reviewed the Initial Objection, the Objection, the Declarations, and the exhibits to each. It is my understanding that, through the Objection, Landlord raises issues regarding Ollie's proposed use of Store No. 1107 and, specifically, that such use would violate use restrictions or exclusivity provisions contained in the Lease or other documents made applicable through the terms of the lease.

**I.    Ollie's Proposed Use of Store No. 1107 Does Not Violate the Lease**

19. Section 1.1.27 of the Lease permits Store No. 1107 to be used for, among other things, "any other lawful retail use not specifically prohibited by the provisions of Section 13.1.1…" Lease at § 1.1.27. Ollie's proposed use—the operation of a typical Ollie's store—is certainly lawful and no portion of Ollie's proposed use violates Section 13.1.1.

**A.    Ollie's Does Not Violate Any Use Restrictions Set Forth in the Lease**

20. Article 13 of the Lease governs use restrictions and exclusives. Specifically, Section 13.1.1 provides that "Tenant shall not use the Premises for any of the 'Prohibited Uses' (defined in <u>Exhibit M</u> hereto annexed) or the 'Existing Exclusives' (hereinafter defined in Subsection 13.3.1), to the extent then applicable." Lease at § 13.1.1. Turning to Exhibit M of the Lease, Ollie's proposed use of Store No. 1107 does not involve any of the uses listed therein.

21. Landlord has claimed that Ollie's would violate the Lease's use restriction because it operates a "second hand" store or "surplus" store. Ollie's does not operate either type of store. Ollie's is in the business of operating retail stores with an emphasis on closeout merchandise. Closeout merchandise includes products that are no longer manufactured or sold by the retailer for whom the merchandise was originally produced. This is distinct from a surplus store, which is a

---

Lahanas Declaration as resubmitted at Docket No. 2704, or the Rhim Declaration, as resubmitted at Docket No. 2706, and are referred to in the same manner as in the Objection.

165240069v4

term of art in retail referring to stores such as a government, army, or navy surplus store that sources all of its stock in this manner. Likewise, Ollie's does not sell "second hand" merchandise, *i.e.,* goods that have been sold to a retailer by a consumer for future sale to another consumer. Ollie's does sell some *refurbished* or *remanufactured* goods, which are distinct in the retail industry from "second hand" goods. Indeed, refurbished or remanufactured goods come directly from a manufacturer and are sold in first class condition—the merchandise has simply been returned to the manufacturer for recertification, repair if necessary, testing, and repackaging, before selling to the end consumer. This is in stark contrast to "second hand" goods, like those available at stores such as Goodwill, the Salvation Army, Savers, or Plato's Closet, which have been purchased directly from the consumer and placed on a shelf for resale.

22. Landlord also implies that Ollie's violates the Lease's use restriction by operating a supermarket. The Lease does not define the term "supermarket." However, by any industry-standard or common sense definition of the term, Ollie's is far from a supermarket—a store that offers a wide selection of foods, beverages, and ingredients as its primary product offerings. While Ollie's does sell some food items, in Ollie's 2022 fiscal year "Consumables"—which includes health and beauty aids, candy, and pet food, in addition to packaged food—made up less than 25% of the company's net sales. *See* 10-K Filing at p. 4. Likewise, Ollie's only sells shelf stable, non-perishable food items, has no fresh, refrigerated, or frozen food offerings, and devotes **at most**, 2,000 square feet (a low percentage of typical store size) of its stores to selling these limited food offerings. No supermarket could possibly operate successfully under such practices, with less than 25% of its net sales attributable to food. Accordingly, Ollie's proposed use does not violate any use restrictions set forth in Exhibit M to the Lease.

10

165240069v4

> i. Landlord's Obligations to Its Tenant to Maintain a "First-Class" Shopping Center under the Lease Do Not Impose an Obligation on Ollie's Nor Is Ollie's Proposed Use Inconsistent with a "First-Class" Shopping Center

23. The Landlord argues that Ollie's proposed use would violate the provision of Section 13.1.2 that states: "Landlord shall construct, lease, operate, maintain and manage the Shopping Center as a first-class shopping center comparable to other first-class shopping centers in the state in which the Shopping Center is located." Lease at § 13.1.2.[5] Ollie's proposed use is entirely consistent with the current co-tenants in the "first-class" Shopping Center maintained by Landlord, which includes Ross, Marshalls, and Dollar Tree—all retailers with marketing practices predicated on low price offerings or discounts. Landlord argues that the nature of Ollie's stores are inconsistent with a "first-class" shopping center. Ollie's openly markets itself as a retailer that offers customers low prices in its "semi-lovely" stores—nothing about Ollie's business model would render its operations "low-class" or out of place in the Shopping Center. Ollie's stores are clean, safe, and reasonably aesthetically pleasing. Further, Ollie's stores offer first class, name brand products. Ollie's is located in "first-class" shopping centers across the country.

**B. Ollie's Does Not Violate Any Exclusives Set Forth in the Lease**

24. Just as Ollie's proposed use of Store No. 1107 is fully compliant with any use restrictions set out in the Lease, such use also does not run afoul of any exclusives made applicable to Store No. 1107 through the Lease. The "Existing Exclusives" are set forth in Exhibit K-1 to the

---

[5] Landlord also points to use restrictions from Lease Exhibit M, none of which Ollie's would violate—Item 14 (prohibiting "Pornographic Use" and limiting bookstores to those in "first-class" shopping centers; Ollie's would never run afoul of this restriction, nor is it a bookstore), Item 28 (prohibiting certain office space, except for that ancillary to a retail operation or that typical of a "first-class" shopping center; Ollie's does not operate office space apart from that incidental to its retail operations), and Section 35 (prohibiting restaurants except for those found in "first-class" shopping centers; Ollie's is not a restaurant).

11

165240069v4

Lease and lists Existing Exclusives in favor of PETsMART and Marshalls. *See* Lease, at Ex. K-1. Ollie's proposed use of Store No. 1107 is fully compliant with both Existing Exclusives.

    i.    <u>Ollie's Does Not Violate the PETsMART Exclusive or Related MOL</u>

25.    Landlord incorrectly claims that Ollie's proposed use would violate section (b) of the PETsMART exclusive provision because it lists as "Prohibited Uses" the operation of a "used clothing or thrift store or liquidation outlet." *See id.* at Sec. 1(b); PETsMART MOL. Ollie's operates a ***closeout*** retail business, which is wholly different from any of the prohibited uses in the PETsMART exclusive. As discussed above, Ollie's does not sell "second hand"—or, as stated in the PETsMART exclusive, "used" or "thrift"—goods. *Id.* Ollie's operations consist of the sale of new merchandise, with a focus on the sale of closeout goods. Any refurbished or remanufactured goods are not "used" or "thrift" goods for the reasons explained herein and represent a *de minimis* portion of products offered in Ollie's stores. Likewise, Ollie's does not operate a "liquidation" store, as its business model is not like that of an auction house or broker, liquidating a retailer or manufacturer's inventory. As noted above, Ollie's does not conduct any "going out of business" sales or fire sales. To the extent any of Ollie's merchandise is involved in a liquidation process in any sense, any such liquidation was conducted by *other* actors further up the supply chain, well removed from Ollie's stores and customers.

26.    Further, Ollie's proposed use of Store No. 1107 does not encroach on the "Tenant's Primary Business" (as defined in the PETsMART exclusive)—while Ollie's does sell some pet food and accessories, it falls well under the "incidental" use threshold, as Ollie's devotes far less than 1,000 square feet or 5% of the sales area of its stores to such goods. *See* Lease at Ex. K-1, Sec. 1(a). Ollie's does not sell pets, provide animal services of any kind, or otherwise engage in

any other portions of the "Tenant's Primary Use." For these reasons, Ollie's does not violate the PETsMART exclusive.

    ii. <u>Ollie's Does Not Violate the Marshalls Exclusive, the Marshalls Letter Agreement, or the Marshalls MOL</u>

27. Ollie's proposed use does not violate any portion of the Marshalls exclusive, made applicable through the Lease, the July 18, 2005 letter agreement between Bed Bath & Beyond and Marshalls, attached to the Estoppel Certificate and as Exhibit N to the Lease (the "<u>Marshalls Letter Agreement</u>"), or the Marshalls MOL, despite the Landlord's claims to the contrary.

    a. *It is Physically Impossible for Ollie's to Violate the 25,000 Square Foot Cap on Protected Merchandise.*

28. Landlord alleges that Ollie's would violate the provisions of the Marshalls exclusive contained in the Lease, the Marshalls MOL, and the Marshalls Letter Agreement that prohibit a tenant from using 25,000 square feet or more of Store No. 1107 for the purposes of selling or displaying off-price apparel and accessories. The Marshalls Letter Agreement provides, in relevant part, that neither Bed Bath & Beyond, nor any assignee of the Lease, "shall use, occupy or devote more than 25,000 square feet of floor area in the BBB Premises for the sale or display of off-price apparel and related products." Marshalls Letter Agreement at ¶ 2. Meanwhile, section (a) of the Marshalls exclusive and section 6(B) of the Marshalls MOL contain the same restriction, and each provide that "no other premises in Landlord's Parcel shall at any time contain more than twenty five thousand (25,000) square feet of floor area . . . used or occupied for, or devoted to, the

13

sale or display of off-price apparel and related accessories." Lease at Ex. K-1, Sec. 2(a); Marshalls MOL at ¶ 6(a).[6]

29. It is ***physically impossible*** for Ollie's proposed use of Store No. 1107 to violate this provision—Store No. 1107 has only 23,000 square feet in total floor area, so even if 100% of the store were dedicated to selling off-price apparel and related accessories ("Protected Merchandise"), Ollie's use would be compliant. Lease at § 1.1.28. However, far from utilizing a full 23,000 square feet for the sale of off-price apparel and accessories, apparel and accessories account, at most, for a *de minimis* portion of Ollie's stores at approximately under 2% of square footage.

    *b. Ollie's Does Not Sell Used or Second Hand Goods*

30. The Landlord also claims that Ollie's would violate the Marshalls exclusive and the Marshalls MOL because it prohibits the sale of "used" or "second hand" goods. *See* Lease at Ex. K-1, Sec. 2(b); Marshalls MOL at ¶ 6(a). It bears repeating—Ollie's does **not** sell used or second hand goods, but rather, exclusively sells new merchandise with a focus on closeout inventory. Refurbished or remanufactured goods are sold directly from the manufacture in first-class condition and are not used. For these reasons, more fully articulated above, Ollie's does not violate this portion of the Marshalls exclusive or the Marshalls MOL.

---

[6] Landlord separately claims that Ollie's proposed used violates the Marshalls Lease. Landlord has provided no evidence whatsoever as to the terms of the Marshalls Lease independent of what is contained in Exhibit K-1 to the Lease to Store No. 1107 or the Marshalls MOL. As a Tenant under the Lease would have had no notice of provisions in the Marshalls Lease apart from through in Exhibit K-1 to the Lease to Store No. 1107 or the Marshalls MOL, to the extent there are any differences in the use restriction language in the Marshalls Lease, Ollie's should not be bound by such differing language.

165240069v4

**C. Ollie's Does Not Violate Any of the OEA's Made Applicable through the Lease**

31. Section 12.5.2 of the Lease requires the Tenant to adhere to certain operation and easement agreements—Ollie's proposed use of Store No. 1107 is compliant with all of them. Nonetheless, Landlord wrongly asserts that Ollie's would violate the terms of the Sam's OEA and the Lowe's OEA.

   i. <u>Ollie's Does Not Violate the Sam's OEA</u>

32. Landlord asserts that Ollie's proposed use of Store No. 1107 would violate section 3 of the Sam's OEA, which prohibits operation of, among other things, "a discount department store or other discount store", a "variety, general or 'dollar' store", and a "grocery store or supermarket." *See* Sam's OEA, Sec. 3. Landlord contends that "Ollie's operates as this type of prohibited store model and sells the sale of such items [sic]" and thus violates the Sam's OEA. Objection at Legal Argument ¶ 8. This is simply not true, and Ollie's proposed use of Store No. 1107 is fully compliant with the Sam's OEA.

33. While Ollie's business model is predicated on providing discounted goods to its customers, section 3 of the Sam's OEA defines "discount department store" and "discount store", in relevant part, as "a discount department store or discount store containing more than 35,000 square feet of building space used for the purpose of selling a full line of hard goods and soft goods . . . at a discount retail operation similar to that of a Wal-Mart store or a Wal-Mart SuperCenter store." *Id*. Given that Store No. 1107 has only 23,000 square feet of floor space (and 1,000 square feet of office space), it is **<u>physically impossible</u>** for Ollie's to violate this provision of the Sam's OEA. *See* Lease at § 1.1.28.

34. Although the Sam's OEA does not define "variety, general or 'dollar'" store, based on accepted definitions of those terms in the retail industry, Ollie's does not operate such stores.

15

Indeed, all three stores are single price point or low price point stores, typified by offerings that do not exceed a certain low-dollar threshold. In contrast, the product offerings at Ollie's, while discounted from their original MSRP, can exceed several hundred dollars, and the average price point at an Ollie's store is high single digits. Accordingly, Ollie's is not a variety, general, or dollar store and its proposed use of Store No. 1107 does not violate this provision of the Sam's OEA.

35. Landlord concludes that because Ollie's sells food items, it is therefore a grocery store or a supermarket. The Sam's OEA defines "grocery store" and "supermarket" to mean "a food store or a food department containing more than 10,000 square feet of building space used for the purpose of selling food for off premises consumption, which shall include but not be limited to the sale of dry, refrigerated or frozen groceries, meat, seafood, poultry, produce, delicatessen or bakery products, refrigerated or frozen dairy products, or any grocery products normally sold in such stores or departments." Sam's OEA, Sec. 3. As noted above, Ollie's devotes *at most* 2,000 square feet of its stores to food sales and does not sell any fresh, refrigerated, or frozen foods; and less than 25% of Ollie's revenue in fiscal year 2022 derived from its consumables business (which includes much more than just food items). Simply put, Ollie's is not a grocery store or supermarket and does not violate the Sam's OEA.

ii. <u>Ollie's Does Not Violate the Lowe's OEA</u>

36. The Landlord contends that the Lowe's OEA prohibits "the sale of retail home improvement building materials." Objection at Legal Argument ¶ 8. The language specifying what uses Lowe's OEA prohibits is below:

> a) A hardware store containing more than 9,000 square feet of leasable floor area.
>
> b) An appliance and/or home electronics store containing more than 5,000 square feet of leasable floor area, except that this restriction shall not apply to a "Best

16

    Buy" or "Circuit City" or other merchandiser of similar size and reputation as the same are operated and typically stocked as of the date hereof;

  c) A lawn and garden store containing more than 3,000 square feet of leasable floor area;

  d) A paint and/or décor center containing more than 5,000 square feet of leasable floor area; or

  e) A retail and/or warehouse home improvement center, lumber yard, building materials supply center, substantially similar to that now operated by Lowe's, Home Depot, Home Owner's Warehouse, Home Quarters, Hechinger's, Builders Square, 84 Lumber, Wickes, Hughes Lumber, McCoys, Sutherlands and Payless Cashways.

*See* Loew's OEA at 3.6 (a)-(e)

  37. Ollie's does not violate Section 3.6(a) as it is, in no way, a hardware store—Ollie's sells some tools, but dedicates under 100 square feet to such sales in its stores. For sections 3.6(b)-(d), Ollie's is well under the threshold to be in violation of these use restrictions. With respect to section 3.6(b), while Ollie's sells some small appliances and home electronics, it dedicates well under 5,000 square feet of its stores to selling such items and cannot reasonably be considered an appliance store or home electronics store. Along the same lines as to section 3.6(c), Ollie's sells some items found in a home and garden store but uses far fewer than 3,000 square feet in its stores for such sales and is not a home and garden store. Likewise with respect to section 3.6(d), Ollie's sells some paint and some limited home décor, such as wall hangings, but again, the floor space used in Ollie's store for these items is far below 5,000 square feet. Simply because Ollie's sells some limited paint and home décor products, it is not, by nature, a paint or décor center. Finally, with respect to section 3.6(e), as noted above Landlord incorrectly argues that this provision "prohibits the sale of retail home improvement building materials" (Objection at Legal Argument ¶ 8)—yet the plain language of this provision prohibits operation of "a retail and/or warehouse home improvement center, lumber yard, building materials supply center, substantially similar to

17

that now operated by Lowe's" and certain of Lowe's competitors. While Ollie's sells some limited home improvement items, it is not a home improvement center, lumber yard, or building materials supply center, and its business is not akin to Lowe's or the competitors named in the OEA. For all of these reasons, Ollie's proposed use of Store No. 1107 does not violate the Lowe's OEA.

### D. The Use Restrictions in the Best Buy Lease and Related MOL are Inapplicable to the Lease by Its Own Terms

38.  For the reasons articulated in this declaration and as argued by counsel in the concurrently-filed reply brief, it is my understanding that the use restrictions in the Best Buy Lease and MOL do not apply to the Lease or to Ollie's as a would-be assignee.

*[Signature Page Follows]*

165240069v4

I declare under penalty of perjury that the foregoing statements made by me are true and correct and I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: November 22, 2023

By: */s/ Robert Helm*
Robert Helm
Chief Financial Officer and Senior Vice President
Ollie's Bargain Outlet, Inc.

165240069v4