| |
|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| Mark S. Lichtenstein, Esq.<br>AKERMAN LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, New York 10020<br>Tel. No. (212) 880-3800<br>Email: mark.lichtenstein@akerman.com<br><br>*Counsel for Michael Goldberg, as Plan Administrator for Debtors* |

| In re: | Case No.: 23-13359 (VFP) |
|---|---|
| BED BATH & BEYOND INC., *et al.*,[1] | Chapter 11 |
| Debtors. | Judge: Vincent F. Papalia |

## NOTICE OF HEARING ON MOTION OF MICHAEL GOLDBERG, AS PLAN ADMINISTRATOR, FOR ENTRY OF AN ORDER ENFORCING THE TERMS OF THE CHAPTER 11 JOINT PLAN INJUNCTION

**PLEASE TAKE NOTICE** that on **January 23, 2023 at 10:00 a.m.**, the undersigned, counsel for Michael Goldberg, as Plan Administrator for the Wind-Down Debtors (the "Movant"), shall move before the Honorable Vincent F. Papalia, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of New Jersey, Courtroom 3B, 50 Walnut Street, Newark, NJ 07102, for entry of an order granting Motion for Entry of an Order Enforcing the Terms of the Chapter 11 Joint Plan Injunction (the "Motion") against the People of the State of New York with respect to *The People of the State of New York v. Buy Buy Baby, Inc.* pending in the Nassau District Court under Docket Numbers CR-021755-22NA and CR-006855-23N.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083

74151775;1

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall: (i) be in writing, (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received within at least seven (7) days prior to the return date, on **January 16, 2023 at 4:00 PM**.

**PLEASE TAKE FURTHER NOTICE** that pursuant to D.N.J. L.B.R. 9013, the Movant waives oral argument and consents to the disposition on the papers. A proposed form of Order has been submitted. Oral argument is hereby waived unless opposition is submitted, in which case the Movant would request oral argument. In the event that no opposition is filed, the Order may be entered.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion papers may be obtained at no charge at https://restructuring.ra.kroll.com/bbby/ or via PACER at http://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: New York, New York  
      January 8, 2024

**AKERMAN LLP**

By:   */s/ Mark S. Lichtenstein*  
     Mark S. Lichtenstein  
     1251 Avenue of the Americas, 37th Floor  
     New York, New York 10020  
     Tel. No. (212) 880-3800  
     E-mail: mark.lichtenstein@akerman.com

*Counsel for the Plan Administrator*

74151775;1

| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY** | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| Mark S. Lichtenstein, Esq.<br>AKERMAN LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, New York 10020<br>Tel. No. (212) 880-3800<br>Email: mark.lichtenstein@akerman.com<br><br>*Counsel for Michael Goldberg, as Plan Administrator for Debtors* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.,*[1]<br><br>Debtors. | Case No.: 23-13359 (VFP)<br><br>Chapter 11<br><br>Judge: Vincent F. Papalia |

### MOTION OF MICHAEL GOLDBERG, AS PLAN ADMINISTRATOR, FOR ENTRY OF AN ORDER ENFORCING THE TERMS OF THE <u>CHAPTER 11 JOINT PLAN INJUNCTION</u>

Michael Goldberg, as Plan Administrator (the "Plan Administrator") for Wind-Down Debtor Buy Buy Baby, Inc. (the "Debtor"), together with its affiliated debtors (collectively, the "Wind Down Debtors") in the above-captioned cases, by and through counsel, submits this motion for an order enforcing the Chapter 11 Plan Injunction against The People of the State of New York ("NYS ") and the Nassau County Fire Marshall (the "Fire Marshall") and to preclude them from seeking any criminal penalties and monetary recoveries against the Debtor, the Wind Down Debtors or the Plan Administrator, individually or in his capacity as fiduciary of the Wind Down Debtors' estates as appointed by this Court, other than as a monetary claimant against the Debtor's

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083

74065036;4

estate. In support thereof, the Plan Administrator, on behalf of himself and the Wind Down Debtors, respectfully states as follows:

## PRELIMINARY STATEMENT AND BACKGROUND

### I. The Nassau County Criminal Action

1. On April 4, 2023, the Debtor was cited for various charges in violation of the Nassau County Fire Prevention ordinance (the "NC-FPO") found in the leased premises located at 895 E. Gate Blvd., Garden City East, New York 11530-2142 (the "Premises"), and was directed to appear for an arraignment on April 18, 2023 before the Nassau District Court, which appearance was subsequently adjourned (the "Nassau Co. Action"). These charges originate from the Debtor's failure to conduct tests on sprinkler/fire alarm systems prior to the Plan Administrator's appointment in this case and before confirmation of the Chapter 11 Plan in this case.

2. On October 10, 2023, the Debtor was found to be guilty in absentia, and the Court set a sentencing hearing for December 12, 2023, which sentencing has now been adjourned to after January 31, 2024 to permit the Plan Administrator to file this motion to enforce the Plan Injunction against NYS and the Fire Marshall. .

3. On October 31, 2023, the District Court of Nassau County, Criminal Term, sent a letter (the "Nassau D. Ct. Ltr.") to Cristal Lambert (former Senior Corporate Counsel for the Debtors) confirming receipt of two envelopes dated July 10, 2023 containing the bankruptcy petition and advising that the District Court Law Dept. determined that the pending cases against the Debtor were not subject to the automatic stay. A copy of the Nassau D. Ct. Ltr. is attached hereto as **Exhibit "A."** .

4. When the Plan Administrator very recently learned of the pendency of these criminal proceedings, he reached out, through counsel, to the Clerk of Nassau County seeking to obviate the

criminal action based on (i) the Plan Injunction (as defined below), (ii) the Debtor being out of business, and (iii) all of the remaining assets of the Debtors, in wind-down mode, being subject to the secured creditor's lien. Pursuant to the Confidential Memorandum dated October 31, 2023, attached to the Nassau D. Ct. Ltr., the District Attorney's office has taken the position that the automatic stay does not apply to criminal actions, notwithstanding the specific facts of this case which involve a third party fiduciary appointed by the Court with no ability to remedy alleged fire code violations regarding a leased property that was surrendered to the Landlord (as defined below) well before his appointment.

5. The positions taken by the Nassau County District Attorney's Office and/or the Fire Marshall has placed the recently appointed Plan Administrator in an untenable position as the alleged fire code violations in the Premises predate the Plan Administrator's appointment in this case and he has no opportunity to remedy such violations. Indeed, the underlying lease of the Premises was rejected as of July 31, 2023, and the Debtor is no longer the tenant of the Premises and lacks access to the Premises to cure the alleged violations. As a practical matter, to the extent the cause of such violations remain outstanding, such conditions can only be remedied by the Landlord. Finally the Debtors' estates lack any funds to remedy the alleged fire code violations as all assets of the Debtors' estates are encumbered and are being administered for the benefit of the Debtors' secured creditor. There are presently no unencumbered assets available to address the violations. Unless and until the Plan Administrator is successful in litigating Debtors' estates causes of action vested in him through the Plan, there will be no funds to satisfy even a portion of the monetary amount sought in connection with the violations.

6. The Plan Administrator has the utmost respect for fire authorities and other municipal creditors and would like to maximize their recoveries. In an effort to be practical and

3

cooperative, the Plan Administrator proposes that the Fire Marshall file a proof of claim to be allowed for whatever damages and/or fines that have accumulated regarding the Premises while the Debtor was in operation prior to the Plan Administrator's appointment.

7. Absent a consensual or adjudicated resolution permitting NYS and the Fire Marshall an exclusive remedy of filing a late proof of claim, he Plan Administrator has no recourse other than to seek to enforce the Plan Injunction to the extent: 1) the Fire Marshall continues to seek to compel the Plan Administrator to remedy violations in real property that belongs to and is controlled by a landlord; and/or 2) the Fire Marshall is seeking to incarcerate the Plan Administrator (or any of the Debtor(s) executives) for fire code violations that preceded his appointment. Ultimately whether or not the automatic stay applies is not even relevant, as the Plan Injunction governs post-confirmation and post-effective date matters.

## II.    The Garden City Lease

5. On April 1, 2001, the Debtor, as tenant, and landlord Feinco, LLC (together with its successors and assigns, the "Landlord") entered into a commercial lease, as amended, for the Premises.(the "Lease").

6. On July 26, 2023, the Debtor and Landlord executed a Lease Termination Agreement [ECF No. 1605, Exh. 1 hereto], which terminated the Lease as of July 31, 2023 and released the Debtor, *inter alia*, for any causes of action [ECF No. 1605, Exh. 1 at ¶5].

7. On July 28, 2023, this Court approved the Lease Termination Agreement and entered an *Order Pursuant to Sections 365 and 363 Approving the Lease Termination Agreement with R&F Garden City, LLC* [ECF No. 1605].  Therefore, since July 28, 2023, the Debtor has had no control or access to the Premises to remedy the violations.

## III.    The Confirmation Order and Plan Injunction

4

74065036;4

8. On September 11, 2023, the Debtors, including the Debtor against whom the violations were assessed, filed their *Second Amended Joint Chapter 11 Plan* of Bed Bath & Beyond Inc. and its Debtor Affiliates [Docket No. 2160] (the "Plan"). On September 14, 2023, the Court entered an Order confirming the Plan (the "Confirmation Order") [Docket No. 2172].

9. On September 29, 2023, the Debtors filed the *Notice of (i) Entry of the Order (a) Approving the Disclosure Statement on a Final Basis and (b) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates and (ii) Occurrence of Effective Date* [ECF No. 2311], advising of the effective date of the Plan on September 29, 2023 (the "Effective Date"). Pursuant to the Plan, on the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for purposes of resolving certain claims, performing claims reconciliation, and objecting to claims in accordance with the terms of the Plan Administrator Agreement.

10. Article X(F) of the Plan provides, in part, that "all Entities who have held, hold, or may hold Claims or Interests that ... are subject to exculpation are permanently enjoined, from and after the Effective Date . . ., from taking any of the following actions against, as applicable, the Debtors, . . ., or the Exculpated Parties, . . .," among other things:

> F. **Injunction** Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates vested in the Wind-Down Debtors has been liquidated and distributed in accordance with the terms of the Plan, from taking any of the following actions against, as applicable, the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree,

5

or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan. For the avoidance of doubt, and notwithstanding the foregoing, nothing in this section shall release, compromise, impair, exculpate or in any way affect any Non-Released Claims, including the D&O Claims.

11. The Plan Injunction became effective upon entry of the Confirmation Order on September 14, 2023.

12. This Court retains exclusive jurisdiction "over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XIII of the Plan." (*Id.* at 58). The Plan provides further that the Court has "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to: . . . issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;" to "resolve any cases, controversies, suits, disputes or Causes of Action. . .;" to "hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or the Judicial Code. " (ECF No. 2160, Plan at 59).

## LEGAL ARGUMENT

13. The District Court of Nassau County and the Nassau County District Attorney's position that the automatic stay does not enjoin the Nassau County District Court proceedings to

continue pursuant to the police powers exception in Section 362(b)(4) of the Bankruptcy Code is entirely irrelevant here because this action is barred *not* by the automatic stay, but by the Plan Injunction and the Confirmation Order.

14. Any injunctive effect under the automatic stay terminated on the Effective Date of a confirmed bankruptcy plan. *See* 11 U.S.C. § 362(c)(2)(C). The Plan states that "all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code… shall remain in full force an effect until the effective date." The Effective Date occurred on September 29, 2023, at which time the automatic stay terminated and the Plan Injunction took over.

15. Plan injunctions are different from the automatic stay and, even if the criminal proceeding would potentially not be stayed pursuant to the automatic stay, the Plan Injunction now bars any action against the Debtor, the Plan Administrator, and the Wind-Down Debtors.

16. The Plan adopts the definition of "claim" set forth by Bankruptcy Code section 101(5). (ECF No.1712 p. 7). Specifically, Bankruptcy Code section 101(5) provides that a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5); *Ohio v. Kovacs,* 469 U.S. 274 (1985) (obligation to comply with state court injunction requiring it to clean up hazardous waste asserted a right to payment and was a "claim" under the Bankruptcy Code). The Plan adopts the Bankruptcy Code's definition *in toto*. . Therefore, under the terms of the Plan, the existence of a right to payment in any form creates a "Claim" against the Debtors as defined in the Plan.

17. The relief sought by NYS against the Debtor therefore constitutes a "claim" under the Bankruptcy Code and the Plan because it asserts a right to payment that the Plan Administrator,

if there were unencumbered assets in the Debtor's estate, can satisfy only by the payment of money. *Ohio v. Kovacs,* 469 U.S. 274 (1985).

18.     In *Kovacs,* the state of Ohio obtained an injunction against Kovacs requiring the Mr. Kovacs, *inter alia,* to clean up hazardous waste on his property. After Kovacs filed for bankruptcy, the state sought to obtain some of the debtor's post-petition income to pay for unfinished cleanup costs, arguing that the obligation to clean up the property under the state's environmental laws was not a "claim" under the Bankruptcy Code, and therefore, not dischargeable. *Id.* at 281.

19.     The United States Supreme Court disagreed with the state of Ohio, finding instead, that the state of Ohio had a right to payment from the debtor to fund cleanup costs, and therefore, possessed a "claim" under the Bankruptcy Code. *Id.* at 283. In arriving at its decision, the Court considered that the state never suggested that the debtor could "render performance under the affirmative obligation other than by payment of money." *Id.* at 281. Instead, the Court noted, that the state sought satisfaction by an alternative right to payment since the debtor was not in a position to perform the affirmative obligation himself. *Id.* Because the debtor could not perform the function himself, other than by payment of money, the Court held that the injunction to clean up the property was, in essence, nothing more than a right to payment, which constitutes a "claim" under the Bankruptcy Code. *Id.* at 283.

20.     Similar to the facts in *Kovacs,* the Plan Administrator cannot render performance to correct the fire code violations at the Premises which the Plan Administrator has never had access to. The Debtors have ceased all operation. Their business affairs have been wound down. Indeed, on the Effective Date, the remaining assets of all Debtor entities were vested in the Liquidating Trust (the "Trust"). The Debtors, therefore, no longer exist other than as an

8

74065036;4

administrative convenience for the purposes of liquidation. All that remains is the Trust, which was established by the Plan for the very limited purpose of liquidating and distributing the Debtors' remaining assets to the secured creditor in the first instance. If any funds are left over after payment in full of the obligations to the secured creditor, the Plan Administrator shall make distributions to the other holders of allowed claims. The Trust itself, therefore, is wholly incapable of testing the sprinklers and otherwise complying with fire code violations in the Premises. At this point, only the Landlord of the Premises can.

21. Similarly, in *In re Chateaugay Corp.,* 944 F.2d 997 (2d Cir. 1991), the Second Circuit considered the dischargeability of "injunctive" claims which order a debtor to cleanup ongoing pollution. In determining whether such claims are dischargeable under the Bankruptcy Code, the Second Circuit ultimately held that if the agency could have itself incurred the costs and then sued the debtor for reimbursement, the reimbursement claim would be a dischargeable claim. 944 F.2d at 1008. Because, as has already been conclusively demonstrated, the Plan Administrator cannot take any action in regards to the Premises, the Fire Marshall, to the extent the Court allows, can at best have the right to file a late claim against the Debtors' estates. Otherwise, the claims of the NYS and the Fire Marshall should be deemed enjoined by the Plan Injunction from taking any action against the Plan Administrator, individually or in his capacity as fiduciary of the Wind Down Debtors' estates, the Trust, the Debtor and the Wind-Down Debtors.

22. Although not applicable to this case as noted above, the Bankruptcy Code section 364(b)(4) police power exception to the automatic stay would not apply even in the pre-confirmation context. In each case where government proceedings were determined not to be enjoined by the automatic stay pursuant to section 364(b)(4), the relevant government actors all sought to prevent ongoing public harm caused by the debtor's actions in the various cases. In each

9

case, the government was allowed to continue its enforcement proceeding despite the automatic stay because the government was found to be exercising its police powers. The reasoning behind each case is inescapable - the courts found each time that the state sought to prevent the debtor in each case from continuing to harm the public. See e.g. *United States v. Nicolet,* 857 F.2d 202, 207 (3d Cir. 1988); *Commonwealth Oil Refining Co., Inc, v. U.S. Env. Prot. Agency, (In re Commonwealth Oil Refining Co., Inc),* 805 F2d 1175 (5th Cir. 1986); and *Safety Kleen, Inc. v. Wyche, (In re Safety Kleen, Inc.),* 274 F.3d 846 (4th Cir. 2001).

23.     The Debtor is no longer in possession of the Premises and no ongoing harm is being caused by the Debtor's actions or inactions. The same is true regarding the Plan Administrator. The Landlord or a new tenant, if one exists, are the only entities capable of complying with the fire code requirements. If the Premises present such a risk, the property can also be condemned and leveled and the NYS and Fire Marshall may take any and all actions against the Landlord and/or a new tenant (if one exists) free of the blocking effects of the Plan Injunction. Therefore, to the extent the automatic stay is applicable and the Plan Injunction is not, the NYS and/or the Fire Marshall would still be enjoined from seeking relief against the Plan Administrator for actions or inactions that occurred prior to his appointment.

## **CONCLUSION**

For the foregoing reasons, the Plan Administrator respectfully requests that the Court enter an order: 1) enforcing the Plan Injunction; 2) enjoining the Nassau Co. Action from continuing; and 3) allowing the Fire Marshall to file a late filed claim in these cases against the Debtor for any fines and/or penalties incurred by the Debtor's estate as a result of the violations specified in the Nassau Co. Action.

Dated: New York, New York
        January 8, 2024

**AKERMAN LLP**

By: */s/ Mark S. Lichtenstein*
    Mark S. Lichtenstein
    1251 Avenue of the Americas, 37th Floor
    New York, New York 10020
    Tel. No. (212) 880-3800
    E-mail: mark.lichtenstein@akerman.com

*Counsel for the Plan Administrator*

# EXHIBIT A

12

74065036;4



**DISTRICT COURT OF NASSAU COUNTY
CRIMINAL TERM
99 MAIN STREET
HEMPSTEAD, NY 11550**
PHONE: (516) 493-4210
FAX: (516) 493-4112

October 31, 2023

Re: The People of the State of New York vs. Buy Buy Baby Inc.
Docket #s: CR-021755-22NA
CR-006855-23NA

Dear Cristal Lambert,

    I am in receipt of your two hand delivered envelopes dated July 10, 2023 regarding the two criminal proceedings pending in this court referenced above. Be advised that each envelope contains identical documents which include a cover letter referencing the 2022 case and a copy of a bankruptcy petition referencing the 2023 case. Since both dockets are in regards to your same store address I am assuming that your office meant to address both of the above District Court cases and I have treated them as such.

    I consulted the District Court Law Department for an opinion on the documents you submitted and they provided me with their opinion today. Please be advised that they determined in their analysis that pending criminal cases do not qualify for an automatic stay under the Bankruptcy law. I have enclosed a copy of their memo to my office. Of course you can move in the Bankruptcy court for a stay and to provide you with some time to do that I will not proceed to refer these cases for collection before January 3, 2024.

Sincerely,

*James K. Sullivan*

James K. Sullivan
Principal Court Clerk
Criminal Term
(516) 493-4070
jksulliv@nycourts.gov