| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Robert J. Feinstein (admitted *pro hac vice*)<br>Bradford J. Sandler<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>Hearing Date: February 14, 2024 at<br>                        10:00 a.m.<br>Judge:   The Honorable Vincent F.<br>              Papalia,<br>U.S.B.J. |

## OPPOSITION OF THE PLAN ADMINISTRATOR TO MOTION FOR ORDER ALLOWING GENERAL UNSECURED CLAIM OF LEVTEX LLC

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and 73 affiliated debtors (the

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

"Debtors"), files this opposition (the "Opposition") to the *Motion for Entry of Order Allowing General Unsecured Claim of LevTex LLC* [Docket No. 2705] (the "Motion"). In support of the Opposition, the Plan Administrator states as follows:

## I. PRELIMINARY STATEMENT[3]

1. Pursuant to the Motion, LevTex LLC ("LevTex") asks that this Court enter an order allowing Claim 3942 (the "Claim 3942") filed in the amount of $395,484.69 as a general unsecured claim. *See* Letter Brief [Docket 2705-7] at 1. Claim 3942, however, asserts two claims: a general unsecured claim for $322,315.92 (the "GUC Claim") and an administrative claim pursuant to Bankruptcy Code section 503(b)(9) for $73,168.77 (the "503(b)(9) Claim"). *See* Exhibit 5 to the Motion [Docket 2705-5] at 5. Given the discrepancy between the Motion and Claim 3942, counsel to the Plan Administrator confirmed with counsel to LevTex that LevTex is not, pursuant to the Motion, waiving its 503(b)(9) Claim.

2. While the Plan Administrator has no objection to the total amount of Claim 3942 he asks that the Court deny the Motion on the following grounds:

   a. No portion of Claim 3942 is entitled to administrative status under Bankruptcy Code section 503(b)(9). As LevTex itself acknowledges, the goods purchased by the Debtors within the 20 days prior to the Petition Date were drop-shipped directly from LevTex to the Debtors' customers. *Certification of Charles Ginn* [Docket No. 2705-1] at ¶ 6. As the Debtors never received possession of the goods, LevTex's claim under 503(b)(9) can not qualify for administrative status. *See* Section III(A), *infra*.

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

    b. Claim 3942 should not be "allowed" at this time, even as a general unsecured claim, because LevTex received over one million dollars in payments during the 90 days prior to the Petition Date, which the Plan Administrator is pursuing on behalf of the estates. Pursuant to the Plan, Claim 3942 is "deemed Disallowed" pursuant to section 502(d) of the Bankruptcy Code until such time as the cause of action against LevTex has been resolved and all sums due have been paid. *See* Section III(B), *infra*.

## II. FACTUAL AND PROCEDURAL BACKGROUND[4]

### A. The Bankruptcy Cases

3. On April 23, 2023 (the "Petition Date"), each of the above-captioned Debtors, including Bed Bath & Beyond, Inc. ("BBB") filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases") before the United States Bankruptcy Court for the District of New Jersey (the "Court"). During the Bankruptcy Cases, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases were procedurally consolidated and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. On May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 218].

---

[4] The facts in this Opposition are supported by the Declaration of Michael Goldberg submitted with this Opposition.

5. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order"). The Bar Date Order set July 7, 2023 as the date by which all Claims against the Debtors must be filed (the "Bar Date").

6. On September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

7. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims.[5]

---

[5] Pursuant to the Plan, "Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court." Plan, Article IV, at § B.

8. Pursuant to the Plan, the Plan Administrator currently has until March 27, 2024 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[6] Nineteen thousand four hundred and seven (19,407) proofs of claim have been filed against the Debtors, including approximately thirteen hundred (1300) claims that seek administrative priority. Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed.[7]

B. **The Motion and the LevTex Claims**

9. Debtor Liberty Procurement Co. Inc scheduled a general unsecured claim for LevTex in the amount of $80,714.14.[8]

10. LevTex filed the following proofs of claim (the "LevTex Claims"):[9]

| Claim No. | Date Filed | Debtor | Amount/Priority |
|---|---|---|---|
| 3942 | 6/07/23 | Liberty Procurement Co., Inc. | $395,484.69 ($73,168.77 (A) + $322,315.92 (GUC) |

---

[6] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28.

[7] The Plan provides, "Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim." Plan, Article IV, at § A. "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed) . . . provided that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order." Plan, Article I.A, at § 14.

[8] *See* Schedule 5268971.

[9] Claim 2177 and Claim 3012 appear to be duplicates of Claim 3942. This Opposition is not a formal objection to the LevTex Claims, and the Plan Administrator reserves his rights to object to all the LevTex Claims on any and all grounds, including the ones set forth herein.

| 3012 | 5/26/23 | Bed Bath & Beyond Inc | $395,484.69 ($73,168.77 (A) + $322,315.92 (GUC) |
| 2177 | 5/22/23 | Bed Bath & Beyond Inc | $395,484.69 ($73,168.77 (A) + $322,315.92 (GUC) |

11. On or about June 22, 2023, LevTex transferred Claim 3942 to TradeGuard LLC. *See Transfer of Claim Other Than For Security* [Doc. 1200].

12. On November 17, 2023, LevTex filed the Motion, which, on its face seeks allowance of Claim 3942 as a general unsecured claim. *See* Letter Brief, Docket 2705-7 at 1. However, as is noted above, Claim 3942 asserts a general unsecured claim for $322,315.92 and an administrative claim pursuant to Bankruptcy Code section 503(b)(9) for $73,168.77.

13. According to the Motion, the total claim of $395,484.69 consists of two portions: $321,730 for "import" transactions and $73,754.69 for "domestic" transactions. *Certification of Charles Ginn* [Docket No. 2705-1] at ¶ 7. "The 'import' transactions involved LevTex delivering the goods and related documents to the Debtors' agents in China. The 'domestic' transactions involved delivering the goods to Debtors' agents-Federal Express-in the United States, ***with the goods being directly shipped to the Debtor's customers***." *Id.* at ¶ 6 (emphasis added). As is noted on Exhibit 1 to the Motion, the 503(b)(9) Claim is entirely comprised of "domestic" transactions. *See* Exhibit 1 to the Motion [Docket 2705-1] at 2. In other words, according to its own Motion, the good purchased by the Debtors in the 20 days prior to the bankruptcy were shipped directly to the Debtors' customers, not to the Debtors.[10]

14. This corresponds to what the Plan Administrator has been able to determine from the Debtors' books and records. More specifically, the invoices that are the subject of the 503(b)(9) Claim are for goods (the "Goods") that were ordered online by the Debtors' customers and then

---

[10] Contrary to LevTex's claim, Federal Express was not the Debtors' agent. *See infra* at III(A).

shipped directly from LevTex to the customer. The Debtors never received possession of the Goods.

C. **The Preferential Payments**

15. Pursuant to the Plan, the Plan Administrator has the right and the duty to investigate, prosecute and/or compromise the Debtors' Causes of Action, including Preference Actions.[11]

16. In the course of those duties, the Plan Administrator (with the assistance of his professionals) identified $1,145,817.70 in payments that were made by the Debtors to LevTex in the 90 days prior to the Petition Date (the "Preferential Payments"). On or about November 15, 2023, counsel to the Plan Administrator made a demand on LevTex for the return of the Preferential Payments (less allowed new value) and invited LevTex to provide evidence of any defenses it may have to an action to recover the Preferential Payments under Bankruptcy Code section 547(b) of the Bankruptcy Code. The parties have discussed settlement possibilities, but have not reached an agreement. As of February 7, 2024, the Plan Administrator has not yet filed suit against LevTex.

---

[11] The Plan provides, "Subject to the terms of the Plan, among other duties normal and customary of a director and officer responsible for winding down the affairs of a business, the Plan Administrator shall have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and Wind Down Debtors' Claims and Causes of Action." Plan, Article IV.F, at § 4; Article I.A, at § 25 ("Causes of Action"); Article I.A, at § 16 ("Avoidance Actions").

## III.    ARGUMENT

### A.    The Motion should be denied to the extent that LevTex seeks administrative priority pursuant to Bankruptcy Code section 503(b)(9) for any portion of Claim 3942.

17.    Section 503(b)(9) provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including--- the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

18.    Section 503(b)(9) elevates the status of certain pre-petition claims, and is therefore, an exception to the general rules of classification and allowance of claims. As the Bankruptcy Court for the Eastern District of Pennsylvania noted:

> This section is an exception to the treatment of unsecured creditors who supply goods or services prepetition. *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 240 (Bkrtcy.N.D.Tex.2009). It is intended to work in conjunction with § 546(c) for sellers who have valid reclamation claims. *Ningbo Chenglu Paper Products Mrf. Co., Ltd v. Momenta, Inc. (in re Momenta, Inc.*), 11-cv-479, 2012 U.S. Dist. LEXIS 122615, 12 WL 3765171, at *4 (D.N.H. Aug. 29, 2012). Section 503(b)(9) "provides a supplemental remedy for those sellers who would be preferred reclamation sellers, but for a minor disqualification under section 546(a)." *Id.* Not being intended to create a new class of creditors, § 503(b)(9) is to be strictly construed. *See Howard Delivery Serv. Inc. v. Zurich Am. Insur. Co.*, 547 U.S. 651, 655, 126 S.Ct. 2105, 2106, 165 L. Ed. 2d 110 (2006) (noting discrete exceptions to the general equality principle must be "clearly authorized by Congress").

<u>In re World Imps</u>, 516 B.R. 296, 297-98 (Bankr. E.D. Pa. 2014).

19.    To prevail on its 503(b)(9) Claim, LevTex must establish: (1) that LevTex sold goods to the Debtors; (2) the goods ***were received by the Debtors*** within twenty days prior to filing; and (3) the goods were sold to the Debtors in the ordinary course of business. *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009) (emphasis added).

20.     LevTex seeks to have Claim 3942 allowed "substantially in its filed form" which includes the allegation that $73,168.77 is entitled to 503(b)(9) priority. Yet, LevTex has not established (and can not establish) that the Goods it sold to the Debtors were "received by the debtor" in the 20 days prior to the bankruptcy. By its own admission, all the goods that the Debtors purchased from LevTex within the 20 days prior to the Petition Date (i.e., the "domestic" transactions) were shipped directly from LevTex to the Debtors' customers.

21.     The phrase "received by the debtor" is not defined in the Bankruptcy Code; however, numerous courts have held that goods delivered to customers under drop-shipment[12] arrangements are not "received" by the debtor for purposes of section 503(b)(9). *See Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.*, 2012 U.S. Dist. LEXIS 122615, *18 (D. N.H. Aug. 29 2012) ("The phrase 'received by the debtor' as used in Section 503(b)(9) means: possessed by the debtor, either actually or constructively. [U]nder Section 503(b)(9), delivery to, or possession by, a debtor's customer under a drop-shipment arrangement does not constitute constructive possession by the debtor for Section 503(b)(9) purposes."); *In In re World Imps*, 516 B.R. 296, 300 (Bankr. E.D. Pa. 2014) ("As the goods delivered under drop-shipment arrangements were not 'received' by the Debtor for purposes of § 503(b)(9), the Sunrise and Weisheng drop-shipments are not entitled to administrative priority."). *See e.g., In re World Imps., Ltd*., 862 F.3d 338, 346 (3d Cir. 2017) ("[R]eceipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent."); *In re Adi Liquidation, Inc*., 572 B.R. 543, 551 (Bankr. D. Del. 2017) ("[Creditor] cannot, as a matter of law, satisfy the requirement that [the debtor] must have "received" the goods with respect to deliveries made to non-debtor third parties."); *In re Circuit

---

[12] "Drop shipping" is defined as "to ship (goods) from a manufacturer or wholesaler directly to a customer instead of to the retailer who took the order." Miriam-Webster Online https://www.merriam-webster.com/dictionary/drop-ship (last accessed Feb. 7, 2024).

*City Stores, Inc.,* 432 B.R. 225, 230 (Bankr. E.D. Va. 2010) ("[T]he Court holds that the definition of "received" means "having taken into physical possession," and that this definition should be applied as the federal definition of the term "received" for purposes of interpreting § 503(b)(9) of the Bankruptcy Code.").

22. The Debtors never received physical possession of the Goods. Nor did they receive constructive possession. As the Third Circuit has specifically ruled, delivery of goods to a common carrier (i.e., Federal Express) does not render the goods in the Debtors "constructive possession" for the purpose of 503(b)(9). *See In re World Imps., Ltd.*, 862 F.3d at 346 ("[T]here is no support for the idea that a buyer constructively receives goods when they are delivered to a common carrier, even if title and risk of loss pass at that time."); *In re SRC Liquidation, LLC*, 573 B.R. 537, 542 (Bankr. D. Del. 2017) ("The Debtor never physically possessed the goods. Only UPS possessed the goods, and as a carrier UPS does not qualify as an agent. . . . The goods were never received by the Debtor from [seller] within the meaning of section 503(b)(9).").

23. Accordingly, to the extent LevTex seeks allowance of the 503(b)(9) Claim, the Court should deny the Motion.

**B. The Motion should be denied because Claim 3942 is deemed disallowed pursuant to the Plan and Bankruptcy Code section 502(d).**

24. The Court should also deny the Motion on the grounds that LevTex received the Preferential Payments, which it has not yet repaid to the estates. The Plan specifically provides:

> Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the

> Debtors by that Entity have been turned over or paid to the Debtors, the Plan Administrator or the Wind-Down Debtors, as applicable.

Plan, Article IV, at § F.

25. The Plan further provides, "Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes." Plan, Article I.A, at § 14.

26. As was noted above, LevTex received over a million in payments during the 90 days prior to the Petition Date, and the Plan Administrator has made a demand with respect to repayment. At this juncture, pursuant to the terms of the Plan, Claim 3942 (and the other LevTex Claims) are deemed disallowed. Accordingly, the Court should deny the Motion.

## IV.    CONCLUSION

For the foregoing reasons, the Plan Administrator respectfully requests that the Court deny the Motion.

Dated: February 7, 2024                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
          bsandler@pszjlaw.com
          crobinson@pszjlaw.com

*Counsel to the Plan Administrator*