**UNITED STATES BANKRUPTCY COURT**
**District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel for the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

## PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan

Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and

affiliated debtors (the "Debtors"), moves this Court for the entry of an order, substantially in the

form attached hereto as **Exhibit A**, pursuant to section 105(a) of Title 11 of the United States

Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

"Bankruptcy Rules"), and Rule 3007-1(c) of the Local Rules of the United States Bankruptcy

Court for the District of New Jersey (the "Local Rules"), extending the period within which the

Plan Administrator may object to Claims of all priority levels (including but not limited to all

Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for

payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims) by

one hundred eighty-seven (187) days, from March 27, 2024 through and including September 30,

2024.[3] In support of this Motion, the Plan Administrator respectfully represents as follows:

## JURISDICTION

1.     The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is

a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested are Bankruptcy Rule

9006(b)(1) and Local Rule 3007-1(c).

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A.     The Bankruptcy Cases

3.     On April 23, 2023 (the "Petition Date"), each of the above-captioned

Debtors, including Bed Bath & Beyond, Inc. ("BBB") filed a voluntary petition under chapter

11 of the Bankruptcy Code (the "Bankruptcy Cases") before the United States Bankruptcy

Court for the District of New Jersey (the "Court"). During the Bankruptcy Cases, the Debtors

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

[4] The facts in this Motion are supported by the Declaration of Michael Goldberg (the "Goldberg Declaration"), which is attached hereto as **Exhibit B**.

continued to operate their businesses and manage their properties as debtors and debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases

were procedurally consolidated and jointly administered pursuant to Rule 1015(b) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      On May 5, 2023, the United States Trustee for the District of New Jersey

(the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "Committee"). *See Notice of Appointment of Official

Committee of Unsecured Creditors* [Docket No. 218].

5.      On or about May 30, 2023, the Debtors filed their schedules and

statements [Doc. Nos. 499-573], which were amended on or about July 12, 2023 [Doc. No.

1327] (the "Schedules").

6.      On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for

Submitting Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II)

Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative

Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of

Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the

"Bar Date Order").

7.      The Bar Date Order set July 7, 2023 as the General Claims Bar Date and

October 20, 2023 as the Governmental Bar Date.

8.      On September 14, 2023, the Court entered the *Findings of Fact,

Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and

(II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its

Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended*

*Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2160] (as amended, the "Plan").

9.      On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. *See* Plan, Article IV, at § B.

10.      On the Effective Date, the Plan Administrator also became the administrator of the Combined Reserve[5] and the WARN Reserve.[6] *See* Plan, Article VI.C. The Combined Reserve (which, as discussed below, is the primary source of funding for Allowed Administrative and Priority Claims), totaled $10 million when it was turned over to the Plan Administrator, $2.8 million of which is subject to a set aside for the Texas Taxing Authorities. *See* Confirmation Order, at ¶ 141 ("The Debtors and Texas Taxing Authorities shall, within five Business Days of entry of the Confirmation Order, mutually agree to a holdback amount from the Combined Reserve, which amount shall be between $500,000 and $2.8 million, for the payment of Texas Tax Claims, with all parties' rights reserved as to the ultimate amount of such

---

[5] The "*Combined Reserve*" means "the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the terms of the Final DIP Order, in the aggregate amount of $15 million less any amounts paid from the Combined Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." Plan, Article I.A, at § 31. "*Priority Claims Reserve*" means "a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $10 million less any amounts that were paid from the Priority Claims Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." Plan, Article I.A, at § 119. "*Wind-Down Reserve*" means "a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $5 million less any amounts that were paid from the Wind-Down Reserve pursuant to and consistent with the terms of the Plan prior to the Effective Date." Plan, Article I.A, at § 157.

[6] The "*WARN Reserve*" means "a reserve with the meaning ascribed to such term in the Final DIP Order in the amount of $16 million less any amounts that were paid from the WARN Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." *See* Plan, Article I.A, at § 152.

Texas Tax Claims").[7]  The WARN Reserve was $0.00 prior to the Effective Date; therefore, no WARN Reserve was turned over to the Plan Administrator.

11.    Pursuant to the Plan and Bar Date Order, October 13, 2023 was the last date by which creditors asserting claims entitled to administrative priority pursuant to Bankruptcy Code section 503 were required to file requests for payment ("Administrative Claims Bar Date"). *See* Plan, Article I.A, at § 12. Professional Fee Claims were required to be filed by October 29, 2023. *Id.*

12.    As of February 14, 2024, creditors have filed 19,443 proofs of claim against the Debtors ("Total Claims").  While it is likely that many of the Administrative, Priority and Secured Claims are wildly overstated and/or should be reclassified as general unsecured claims, according to the official claims register generated by the Debtors' claims and noticing agent, Kroll, the current asserted amount of such claims is listed under the "Asserted Amount" below. While the Plan Administrator (and his professionals) have not yet had an opportunity to review and reconcile the vast majority of the alleged Administrative, Priority and Secured Claims, excluding just one arguably baseless $10 billion claim (to which the Plan Administrator intends to object), yields the figures under the "Adjusted Asserted Amount" below.[8]

---

[7] On the Effective Date, $5.91 million was transferred by the Debtors from the Combined Reserve to the Professional Fee Escrow Account (which is maintained by former Debtors' counsel) to fund the Professional Fee Reserve. The Plan Administrator is informed and believes that the balance in the Professional Fee Reserve is $2.15 million.

[8] Claimant Brandon Adam Meadows filed Claim No 18124 on 10/26/2023 for "money". The total amount of the claim is listed as $425,000,000.00. However, the claimant goes on in the subsections of the proof of claim to claim the following priorities (which are included in the Kroll "Asserted Amount" figures): (a) $425,000,000.00 as a Secured Claim, (b) $425,000,000.00 as a 503(b)(9) Claim; (c) $10 billion as an Administrative Claim, and (d) $164,733.30 as a Priority Claim. The figures listed under "Adjusted Asserted Amounts" exclude Claim 18124.

| Administrative, Priority and Secured Claims Summary as of 2/14/2024 | | | |
|---|---|---|---|
| Claim Type | Number of Proofs of Claim | Asserted Amount | Adjusted Asserted Amount (Excluding Claim 18124) |
| Administrative Claims (11 U.S.C. § 503)[9] | 1,331 | $ 10,488,739,054.00 | $ 63,739,054.00 |
| Priority Claims (11 U.S.C. § 507)[10] | 1,092 | $ 574,905,906.00 | $ 574,741,173.00 |
| Secured Claims | 607 | $ 502,121,529.00 | $ 77,121,529.00 |

13.     In addition, there are 12 requests for payments of Administrative Claims
that were filed on the docket on which hearings have not yet been set [Doc. Nos. 2460, 2459,
2458, 2457, 2456, 2447, 2446, 2444, 2443, 2441, 2439, 2430] (the "Administrative Payment
Motions"). The Plan Administrator filed a protective objection on October 19, 2023 [Doc. No.
2513]. Four of the movants in the Administrative Payment Motions (totaling $3,166,393.00) do
not appear to have corresponding proofs of claim on the Kroll register.[11] Adding the Adjusted
Asserted Amount of the Administrative Claims from the Kroll register of $63.8 million plus
$3.2 million asserted in the Administrative Payment Motions without corresponding proofs of
claim, yields a total of $67 million in "Adjusted Asserted Administrative Claims" that are
subject to reconciliation and objection.

---

[9] This category includes 713 proofs of claim that assert rights under Bankruptcy Code section 503(b)(9) totaling an Asserted Amount of $431,676,074.00. If the amount claimed as a 503(b)(9) Claim pursuant to Claim 18124 is excluded, the total amount of adjusted 503(b)(9) Claims is $6,676,074.00.

[10] 1092 of the Total Claims assert priority status pursuant to Bankruptcy Code section 507 totaling $370,007,594.34 (the "Stand Alone Priority Claims"), and 213 of the proofs of claim that are already included in the Administrative Claims category also assert a priority portion pursuant to Bankruptcy Code section 507 totaling $204,898,312.15 (the "Joint Priority Claims")  (together, the Stand Alone Priority Claims and the Joint Priority Claims are the "Priority Claims"). Accordingly, the aggregate amount of asserted Priority Claims is $574,905,906.49.

[11] They are: (i) Pinnacle Hills LLC [Doc. No. 2443] $771,144.95; (ii) Avalara, Inc. [Doc. No. 2446] $29,621.30; (iii) Google LLC [Doc. No. 2447] $2,339,378.82, and (iv) DDRTC Marketplace at Mill Creek LLC [Doc. No. 2457] $26,248.36. The term "Administrative Claims" as used in this Motion and Order includes Administrative Claims that are asserted by way of an Administrative Payment Motion.

14.     Pursuant to the Plan, the Plan Administrator currently has until March 27, 2024 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[12]

15.     The Plan Administrator and his professionals will need substantial time to (a) continue to review almost 3000 Administrative, Priority and Secured Claims to determine whether the Claims should be Allowed or whether they should be reduced, reclassified or disallowed entirely, and (b) prepare and file appropriate objections.

## **RELIEF REQUESTED**

16.     By this Motion, and pursuant to Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c),[13] the Plan Administrator seeks an extension of the Claims Objection Bar Date for one hundred eighty-seven (187) days, through and including the later of: (a) September 30, 2024, or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim.

17.     The Plan Administrator further requests that the order approving this Motion be without prejudice to the rights of the Plan Administrator to seek further extension of the Claims Objection Bar Date.

---

[12] "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28.

[13] Local Rule 3007-1 governs the timing by which claims objections should be brought. It provides, in relevant part, "A request for an extension of the time to object to the allowance of a claim must be brought by motion filed before the expiration of the time to object."

**BASIS FOR RELIEF**

18.      As discussed above, the Plan vests the discretion to object to Claims in

the Plan Administrator. Bankruptcy Rule 9006(b) also makes clear that the Court may extend

unexpired time periods with or without notice. Specifically, Rule 9006(b) states in relevant part

that:

> (1) *In General* . . . when an act is required or allowed to be done at
> or within a specified period by [the Bankruptcy Rules] or by a
> notice given thereunder or by order of court, the court for cause
> shown may at any time in its discretion . . . with or without motion
> or notice order the period enlarged if the request therefor is made
> before the expiration of the period originally prescribed or as
> extended by a previous order . . .

Fed. R. Bankr. P. 9006(b)(1). The Claims Objection Bar Date has not expired as of the filing of

the Motion; accordingly, the Court is authorized to grant the relief requested herein.

19.      Since his appointment on September 29, 2023, the Plan Administrator

(with the assistance of his staff and professionals) has, among other things, (i) begun the process

of reconciling the Administrative, Priority and Secured Claims; (ii) worked to collect the

Debtors' remaining Assets, such as reserves held by credit card companies, excess collateral

held by insurance companies and taxing authorities, prepayments held by vendors and refunds

owed by the IRS and state and local taxing authorities; (iii) has concluded asset sales; (iv) has

retained counsel to investigate and prosecute Non-Released Claims under the Plan such as

Preference Actions, the Shipping and Gouging Claims, the Securities Claims, potential claims

against directors and officers and other potential claims; (v) has negotiated extensively with

California and Texas taxing authorities over the amounts of alleged Administrative, Priority and

Secured tax claims; (vi) has  responded to a plethora of motions filed by parties in interest in the

bankruptcy court seeking, *inter alia*, allowance of claims and relief from the automatic stay; (vi)

has prepared and filed Post Confirmation Operating Reports, and (vii) has made distributions on account of Allowed DIP Claims and Allowed FILO Claims totaling $33.15 million ($25.00 million in loan paydown and $8.15 million in interest).[14]

20.    Given all of the Plan Administrator's duties and responsibilities and the magnitude of the asserted Administrative and Priority Claims, the Plan Administrator needs additional time to evaluate and object to Claims. The Plan Administrator's first priority with respect to Claims is reconciling the Administrative Claims. The Plan contemplates payment of Administrative Claims on the Effective Date (if Allowed at that time) or as they become Allowed;[15] however, payment on account of Allowed Administrative Claims is limited to availability of funds in the applicable waterfall funding source.

21.    The Plan provides:

> . . . each Holder of an Allowed Administrative Claims shall be paid the unpaid portion of its Allowed Administrative Claim from the Combined Reserve on the latest of: (a) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon

---

[14] Plan, Article IV.B ("Distributable Proceeds & Waterfall Recovery")

[15] Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date has passed. The Plan provides, "Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim." Plan, Article IV, at § A. "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed) . . . provided that, **with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order.**" Plan, Article I.A, at § 14 (emphasis added). *See also* Plan, Article II.A.

> thereafter as is reasonably practicable;. . . . Holders of Allowed
> Administrative Claims shall receive payment in full from (a) first,
> the Combined Reserve; (ii) second, the Shared Proceeds Pool; and
> (iii) third, any remaining Distributable Proceeds after payment in
> full of all Allowed DIP Claims and Allowed FILO Claims.

Plan, Article II.A.

22.    As was noted above, there are $67 million in Adjusted Asserted Administrative Claims and $575 million of Adjusted Asserted Priority Claims, whereas the Combined Reserve turned over to the Plan Administrator on the Effective Date was $10 million, $2.8 million of which is presently subject to a set aside for the Texas Taxing Authorities. There is currently $0.00 in the Shared Proceeds Pool; and while the Plan Administrator has made distributions totaling $33.15 million on account of the Allowed DIP Claims and the Allowed FILO Claims respectively, there is a still $381.77 million in principal outstanding (plus interest) before there will be any "remaining Distributable Proceeds" to distribute to holders of Allowed Administrative Claims.[16]

23.    The Plan Administrator is working through the process of evaluating the Administrative Claims for the purpose of allowance or objection, but perhaps more importantly, the Plan Administrator needs to determine the realistic pool of Allowed Administrative Claims before he can determine if the funding of the Combined Reserve is sufficient to allow for payment to holders of Allowed Administrative Claims (as they become Allowed), while continuing to reserve for unresolved Administrative Claims given the extraordinary disparity between the funding in the Combined Reserve and the asserted Administrative Claims.

---

[16] "*Distributable Proceeds*" means "subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve." *See* Plan, Article I.A, at § 58.

24.      Absent a significant reduction in the asserted Administrative Claims and

meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set

forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full. To the

extent that the Plan Administrator is only able to make a pro rata distribution on account of

Allowed Administrative Claims, the Plan Administrator will file a motion seeking appropriate

relief to do so.

25.      At this juncture, the Plan Administrator seeks additional time to review,

analyze and object to Claims. The Plan Administrator submits that extending the Claims

Objection Bar Date is in the best interests of all stakeholders. The extension sought will afford

the Plan Administrator and his professionals an opportunity to make more fully informed

decisions concerning the resolution of pending Claims, in the interests of ensuring ratable

distributions among and maximizing value for legitimate creditors.

26.      Furthermore, extension of the Claims Objection Bar Date is not sought

coercively for purposes of delay, nor will it affect or prejudice any claimant's substantive

defense(s) to any objection. Rather, the extension is intended to promote the efficient

administration of these cases and the claims allowance process. Absent the requested extension

of the Claims Objection Deadline, the Plan Administrator will either be precluded from

challenging invalid, misclassified, and/or overstated Claims, or he will be forced to file hastily

prepared protective objections without the benefit of a full review and analysis and will incur

the cost of doing so.

27.      For the reasons set forth above, the Plan Administrator submits that

extending the Claims Objection Bar Date as to Claims of all priority levels (including but not

limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as

requests for payment and/or motions on the docket - Priority Claims and/or General Unsecured

Claims) through and including the later of (a) September 30, 2024, or (b) one hundred eighty

(180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise

asserted or amended in writing by or on behalf of a holder of such Claim – is necessary,

prudent, and in the best interests of all stakeholders. This is the first requested extension.

## **RESERVATION OF RIGHTS**

28.     The Plan Administrator hereby reserves the right to seek further

extension or extensions of the Claims Objection Bar Date.

## **NOTICE**

29.     Notice of this Motion is governed by paragraph 124 of the Confirmation

Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in
> this Confirmation Order, notice of all subsequent pleadings in the Chapter 11
> Cases after the Effective Date will be limited to the following parties: (a) the
> Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan
> Administrator, (d) any party known to be directly affected by the relief sought by
> such pleadings; and (e) any party that specifically requests additional notice in
> writing to the Debtors or Wind-Down Debtors, as applicable, or files a request
> for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and
> Claims Agent shall not be required to file updated service lists.

30.     Pursuant to Paragraph 124, notice of the Motion and the hearing thereon

was given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy

Rule 2002 after the Effective Date, and (iii) all parties who are registered to receive electronic

notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice

is sufficient under the circumstances.

WHEREFORE, the Plan Administrator respectfully requests that the Court enter the Proposed Order, extending the Claims Objection Bar Date as requested herein, and such other and further relief as is just and proper.

Dated: February 26, 2024                    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler* _____
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
780 Third Avenue, 34th Floor New York, NY
10017 Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com
*Counsel to the Plan Administrator*

# EXHIBIT A

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**District of New Jersey** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Robert J. Feinstein<br>Bradford J. Sandler<br>Paul J. Labov<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile:  (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel for the Plan Administrator* |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

### ORDER EXTENDING THE PERIOD WITHIN WHICH
### THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS

The relief set forth on the following pages, numbered two (2) through and

including three (3), is hereby **ORDERED**:

Upon consideration of the *Motion for Entry of an Order Extending the Period*

*Within Which the Plan Administrator May Object to Claims* (the "Motion") [Doc. No. ___] filed

by Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator")

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER EXTENDING THE PERIOD WITHIN WHICH |
| | THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS |

---

to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the

"Debtors"), and it appearing that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and all other parties in interest; and the Court having jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that

no other or further notice need be provided; and no objections to the Motion having been filed;

and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The time period within which the Plan Administrator may file objections

to Claims of all priority levels – including but not limited to all Secured Claims, Administrative

Claims (whether filed as proofs of claims or as requests for payment and/or motions on the

docket), Priority Claims and/or General Unsecured Claims is extended through and including

the later of (a) September 30, 2024, or (b) one hundred eighty (180) days following the date that

a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by

or on behalf of a holder of such Claim (the "Claims Objection Bar Date").

3.      This Order shall be without prejudice to the rights of the Plan

Administrator to seek further extensions of the Claims Objection Bar Date.

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

Debtors:            BED BATH & BEYOND INC., *et al.*
Case No.            23-13359-VFP
Caption of Order:   ORDER EXTENDING THE PERIOD WITHIN WHICH
                    THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS

---

4.     This Court shall retain exclusive jurisdiction to interpret and enforce the

provisions of this Order in all respects and further to hear and determine all matters arising from

the construction and implementation of this Order.

# EXHIBIT B

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel for the Plan Administrator*
</td><td></td></tr>
</table>

| In re: | Chapter 11 |
|---|---|
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF PLAN ADMINISTRATOR MICHAEL GOLDBERG
IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER EXTENDING
THE PERIOD TO OBJECT TO CLAIMS**

Pursuant to 28 U.S.C. § 1746, I, Michael Goldberg, under penalty of perjury,

declare as follows:

1.      I am the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed

Bath & Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors"). I give this declaration in

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

support of the *Motion for Entry of Order Extending Time to Object to Claims* (the "Motion"). Pursuant to the Motion, I seek entry of an order extending the time to object to Claims of all priority levels (including but not limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims) by one hundred eighty-seven (187) days, from March 27, 2024 through and including September 30, 2024.[3]

2.       Except as otherwise indicated, the statements in this declaration are based on: (a) my personal knowledge of the Debtors' business operations since my appointment as Plan Administrator; (b) my review of relevant documents including the Motion; (c) information provided to me by, or discussions with, members of my management team, other employees, or the Debtors' other advisors; and/or (d) my general experience and knowledge. I am authorized to submit this declaration. If called upon to testify, I can and will testify competently as to the facts set forth herein.

## A.       RESERVES

3.       On the Effective Date, I became the administrator of the Combined Reserve and the WARN Reserve. The Combined Reserve totaled $10 million when it was turned over to me, $2.8 million of which is presently subject to a set aside for the Texas Taxing Authorities.

4.       I am informed and believe that $5.91 million was transferred by the Debtors from the Combined Reserve to the Professional Fee Escrow Account (which is maintained by former Debtors' counsel) to fund the Professional Fee Reserve on the Effective

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

Date. I am informed and believe that the balance in the Professional Fee Reserve is $2.15 million.

5.       I am informed and believe that the WARN Reserve was $0.00 prior to the Effective Date; therefore, no WARN Reserve was turned over to me.

**B.     CASE STATUS**

6.       Since my appointment on September 29, 2023, I (with the assistance of my staff and professionals) have, among other things, (i) begun the process of reconciling the Administrative, Priority and Secured Claims; (ii) worked to collect the Debtors' remaining Assets, such as reserves held by credit card companies, excess collateral held by insurance companies and taxing authorities, prepayments held by vendors and refunds owed by the IRS and state and local taxing authorities; (iii) concluded asset sales; (iv) retained counsel to investigate and prosecute Non-Released Claims under the Plan such as Preference Actions, the Shipping and Gouging Claims, the Securities Claims, potential claims against officers and directors, and potential other claims; (v) negotiated extensively with California and Texas taxing authorities over the amounts of alleged Administrative, Priority and Secured tax claims; (vi) responded to a plethora of motions filed by parties in interest in the bankruptcy court seeking, *inter alia*, allowance of claims and relief from the automatic stay; (vi) prepared and filed Post Confirmation Operating Reports, and (vii) made distributions on account of Allowed DIP Claims and Allowed FILO Claims totaling $33.15 million ($25.00 million in loan paydown and $8.15 million in interest).

**C.     CLAIMS**

7.       According to the claims and noticing agent Kroll, as of February 14, 2024, creditors have filed 19,443 proofs of claim against the Debtors ("Total Claims"). While it

is likely that many of the Administrative, Priority and Secured Claims are wildly overstated and/or should be reclassified as general unsecured claims, according to the official claims register generated by Kroll, the current asserted amount of such Claims is listed under the "Asserted Amount" below. Excluding just one arguably baseless $10 billion claim, yields the figures under the "Adjusted Asserted Amount" below.[4]

| Administrative, Priority and Secured Claims Summary as of 2/14/2024 | | | |
|---|---|---|---|
| **Claim Type** | **Number of Proofs of Claim** | **Asserted Amount** | **Adjusted Asserted Amount (Excluding Claim 18124)** |
| Administrative Claims (11 U.S.C. § 503)[5] | 1,331 | $ 10,488,739,054.00 | $ 63,739,054.00 |
| Priority Claims (11 U.S.C. § 507)[6] | 1,092 | $ 574,905,906.00 | $ 574,741,173.00 |
| Secured Claims | 607 | $ 502,121,529.00 | $ 77,121,529.00 |

8.    In addition, there are 12 requests for payments of Administrative Claims that were filed on the docket on which hearings have not yet been sent [Doc. Nos. 2460, 2459, 2458, 2457, 2456, 2447, 2446, 2444, 2443, 2441, 2439, 2430] (the "Administrative Payment

---

[4] Claimant Brandon Adam Meadows filed Claim No 18124 on 10/26/2023 for "money". The total amount of the claim is listed as $425,000,000.00. However, the claimant goes on in the subsections of the proof of claim to claim the following priorities (which are included in the Kroll "Asserted Amount" figures): (a) $425,000,000.00 as a Secured Claim, (b) $425,000,000.00 as a 503(b)(9) Claim; (c) $10 billion as an Administrative Claim, and (d) $164,733.30 as a Priority Claim. The figures listed under "Adjusted Asserted Amounts" exclude Claim 18124.

[5] This category includes 713 proofs of claim that assert rights under Bankruptcy Code section 503(b)(9) totaling an Asserted Amount of $431,676,074.00. If the amount claimed as a 503(b)(9) Claim pursuant to Claim 18124 is excluded, the total amount of adjusted 503(b)(9) Claims is $6,676,074.00.

[6] 1092 of the Total Claims assert priority status pursuant to Bankruptcy Code section 507 totaling $370,007,594.34 (the "Stand Alone Priority Claims"), and 213 of the proofs of claim that are already included in the Administrative Claims category also assert a priority portion pursuant to Bankruptcy Code section 507 totaling $204,898,312.15 (the "Joint Priority Claims") (together, the Stand Alone Priority Claims and the Joint Priority Claims are the "Priority Claims"). Accordingly, the aggregate amount of asserted Priority Claims is $574,905,906.49.

Motions"). Four of the movants in the Administrative Payment Motions (totaling $3,166,393.00) do not appear to have corresponding proofs of claim on the Kroll register.[7]

9.    Adding the Adjusted Asserted Amount of the Administrative Claims from the Kroll register of $63.8 million plus $3.2 million asserted in the Administrative Payment Motions without corresponding proofs of claim, yields a total of $67 million in "Adjusted Asserted Administrative Claims" that are subject to reconciliation and objection.

10.    Pursuant to the Plan, I have until March 27, 2024 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon my request.

11.    My staff, professionals and I need substantial additional time to (a) continue to review almost 3000 Administrative, Priority and Secured Claims to determine whether the Claims should be Allowed or whether they should be reduced, reclassified or disallowed entirely, and (b) prepare and file appropriate objections. Extending the Claims Objection Bar Date is in the best interests of all stakeholders. The extension sought will afford my professionals and I an opportunity to make more fully informed decisions concerning the resolution of pending Claims, in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors. This is the first requested extension.

### D.    DISTRIBUTIONS

12.    As was noted above, there are currently $67 million of Adjusted Asserted Administrative Claims and $575 million of Adjusted Asserted Priority Claims, whereas the Combined Reserve turned over on the Effective Date was $10 million, $2.8 million of which is

---

[7] They are: (i) Pinnacle Hills LLC [Doc. No. 2443] $771,144.95; (ii) Avalara, Inc. [Doc. No. 2446] $29,621.30; (iii) Google LLC [Doc. No. 2447] $2,339,378.82, and (iv) DDRTC Marketplace at Mill Creek LLC [Doc. No. 2457] $26,248.36. The term "Administrative Claims" as used in this Motion and Order includes Administrative Claims that are asserted by way of an Administrative Payment Motion.

presently subject to a set aside for the Texas Taxing Authorities. There is currently $0.00 in the

Shared Proceeds Pool; and while we have made distributions totaling $33.15 million on account

of the Allowed DIP Claims and the Allowed FILO Claims respectively, there is a still $381.77

million in principal outstanding (plus interest) before there will be any "remaining Distributable

Proceeds" to distribute to holders of Allowed Administrative Claims.

13.     Absent a significant reduction in the asserted Administrative Claims and

meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set

forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full. To the

extent that I determine that I am only able to make a pro rata distribution on account of Allowed

Administrative Claims, I will file a motion seeking appropriate relief to do so.


I declare under penalty of perjury that the foregoing statements are true and correct to the best of
my knowledge, information and belief.

Dated: February 26, 2024                    */s/ Michael Goldberg*_____
                                            By: Michael Goldberg
                                            In His Capacity as Plan Administrator to 20230930-
                                            DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond
                                            Inc.) and 73 affiliated debtors