# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND, INC., et al.<br><br>Debtors. | Case No.: 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>Hearing Date: March 19, 2024<br>at 10:00 a.m. |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY LEVTEX LLC FOR ENTRY OF AN ORDER ALLOWING PROOF OF CLAIM #3942

**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
DAVID H. STEIN, ESQ.
Telephone: (732) 636-8000
*Attorneys for Levtex, LLC*

#14336816.1

The Debtors' schedules, Levtex's proofs of claim, Levtex's motion for allowance (Dkt. 2705), and the Plan Administrator's opposition to that motion for allowance (Dkt. 2892) collectively raised three issues:

- the total amount that the Debtors owe Levtex;

- Levtex's right, if any, to administrative expense priority under section 503(b)(9) for a portion of its claim; and

- Levtex's alleged liability for preferences (and the effect of that liability on the allowance of its claims).

Since the Plan Administrator filed his opposition to Levtex's motion for allowance, the parties have reached an agreement that resolves the first and third of those issues, and leaves this Court to decide only the second issue. Specifically, the parties have agreed that :

- the Debtors owe Levtex a total of $395,484.69 (not including any additional proof of claim that under section 502(h), Levtex may file for payment in settlement of the preference claims); and

- Levtex shall pay the Plan Administrator an agreed sum in settlement of the preference claims by March 15, 2024.

Hence, this Court need only decide the priority issue. If the Court concludes that Levtex is entitled to administrative expense priority as to the portion of its claim arising from "drop shipments" to the Debtors' customers in the twenty days before the Debtors filed their petitions, this Court should allow $73,168.77 of Levtex's claim as an administrative expense priority, and the balance ($322,315.92) as a general unsecured claim. If, however, the Court concludes that no portion of Levtex's claim is entitled to administrative expenses priority, the Court should allow Levtex's claim in the amount of $395,484.69 as a general unsecured claim. (Under the parties' agreement, Levtex may also file a claim under section 502(h) for the amount that Levtex paid under the settlement on the preference claim.) So, in this Reply Brief, Levtex addresses that sole remaining issue—whether any portion of its claim is entitled to priority under section 503(b)(9)/ Levtex respectfully submits that it is such priority.

There are no factual issues as to Levtex's right to priority (or the lack of such right), and, accordingly, the issue is relatively simple. The undisputed evidence demonstrates that:

- the Debtors purchased goods from Levtex;

- the Debtors instructed Levtex to ship certain of those goods directly to the Debtors' customers, via Federal Express ("FedEx"), using the Debtors' FedEx account;

- once Levtex gave the goods to FedEx, Levtex had no further control over the goods—only the Debtors could stop or redirect the shipment. FedEx would follow the instructions of the Debtors, and only the Debtors—not Levtex or the Debtors' customers.

- the Debtors, and only the Debtors, were liable to FedEx for the shipping charges. Reply Certification of Charles Ginn, ¶¶ 4-8. In other words, once Levtex delivered the goods to FedEx, and until the goods were in the hands of the customers, the goods were under the exclusive, complete, and total dominion and control of the Debtors (through its chosen trucking company, FedEx). So, when the goods were delivered to FedEx, Levtex creditor relinquished custody, control and title to the Debtors, and the Debtors received benefit for the sale of goods to its customers and the resulting accounts receivable —the real benefit out of the deal.

In his opposition to Levtex's motion for allowance, the Plan Administrator argues that such dominion and control does not constitute "possession" for section 503(b)(9) purposes. In support of that argument, the Plan Administrator cites several cases. With one exception, however, none of those cases recite that the drop shipment was done under the debtor's account. (Indeed, some of the cases do not even involve direct shipments to consumers.) The one exception is In re SRC Liquidation, LLC, 573 B.R. 537 (D. Del. 2017). In SRC, the Court does state that the account in question was the debtor's UPS account. Id. at 539. But in support of its holding, the SRC Court cited several of the other cases that the Plan Administrator cites (e.g., In re World Imports, Ltd., 862 F.3d 338 (3d Cir. 2017)), without noting this key fact and without analyzing its potential significance.

Levtex respectfully submits that there is no linguistic, legislative history, logical, or public policy reason why the right of a seller of goods to priority under section 503(b)(9) should depend on whether its customer (the debtor) choses FedEx (or UPS) as the customer's shipping agent rather than a private trucking

3

company or forms a subsidiary to handle shipping. The Plan Administrator and the cases that he cites do not explain why retailers, such as the Debtors, cannot choose FedEx or UPS as their agent. To accept the Plan Administrator's argument would be to hold that section 503(b)(9) does not apply to a major aspect of the business of the retail industry—"drop shipping," a major aspect of retail business that has exploded since the commencement of the COVID-19 pandemic. Reply Certification of Charles Ginn, ¶ 6. Indeed, under the Plan Administrator's argument, if a retail company used a third-party fulfillment house, section 503(b)(9) would not apply. Again, nothing supports such elevation of form over substance.

Further, the Plan Administrator ignores contrary case law. In In re O.W. Bunker Holding North America Inc., 606 B.R. 513 (D. Conn. 2019), the debtors conducted the United States operations of an international group of global marine fuel companies (the "OWB Group"). Id. at 514. The OWB Group provided fuel oil to vessels. Id. Dolphin Marine Fuels, LLC ("Creditor") sold fuel to the OWB Group, but delivered the fuel directly the vessels that the OWB Group's customer owned. Id. at 515. That is, the fuel was directly delivered to the end user. Creditor sought administrative expense priority for the unpaid invoices for the fuel delivered in the 20-day 503(b)(9) period, but the Debtors contended that *they* never "received" the fuel, and hence "never had physical possession" of it. Id. at 515-516.

The OWB Court thoroughly analyzed the language of the Bankruptcy Code and the Uniform Commercial Code, and considered many of the cases that the Plan Administrator cites (e.g., In re World Imports, Ltd., 862 F.3d 338 (3d Cir. 2017)). Id. at 516-523. The Court summarized the applicable principles as follows:

> These cases answer the first part of the question raised by the parties; "received by the debtor" in section 503(b)(9) is either: (i) physical possession of the goods by the debtor; or (ii) constructive possession, when a bailee or an agent of the debtor physically possesses the goods. The second part of the question as to whether goods were "received by the debtor" turns on the Vessel's contractual relationship with the OW Bunker Group. In accordance with the OW Bunker Group Terms, the Vessel possessed the bunkers solely as a bailee of the OW Bunker Group, which includes OWB USA. Because the relationship between the OW Bunker Group and the Vessel cannot be ignored, Dolphin's administrative expense claim is allowed.

#14336816.1

Id. at 523.  Notably, the end customer, the owner of the Vessel, was held to be a bailee, even though the Vessel would use/consume the fuel.  Id. at 524.  The OWB court quoted definitions of "bailee" and "bailment,", which it summarized by stating that "[c]onsistently, these definitions of 'bailee' refer to a person who takes possession of goods while ownership and title remain with the bailor."  Id. at 524-525.  The OWB court concluded that because the owner of the Vessel was a bailee, the Debtors had "constructive possession" of the fuel, and Creditor's claim was entitled to administrative expense priority under section 503(b)(9).  Id. at 526.  Surely, if the owner of the Vessel, which bought the fuel for its own use, is a "bailee," FedEx, which would not consume or resell Levtex's goods, was the Debtors' bailee.

For the foregoing reasons, Levtex requests that the Court order that $73,168.77 of its claim is entitled to administrative expense priority, and the balance ($322,315.92) is allowed as a general unsecured claim.  If, however, the Court concludes that none of Levtex's claim is entitled to administrative expense priority under section 503(b)(9), Levtex request that the Court enter an order allowing Levtex's claim in the amount of $395,484.69 as a general unsecured claim.  (In either event, the Court's ruling will not affect Levtex's right to file a proof of claim under section 502(h) in the amount that Levtex pays the Plan Administrator in settlement of the preference claims.)

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**
*Attorneys for Levtex, LLC*

By:   */s/ David H. Stein*
     DAVID H. STEIN, ESQ.

Dated:  March 11, 2024

#14336816.1