**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| In re: | Chapter 11 |
|---|---|
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**MOTION OF PLAN ADMINISTRATOR
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SETTLEMENT OF AD
VALOREM TAX CLAIMS OF TEXAS TAXING AUTHORITIES, (II) AUTHORIZING
THE USE OF $2.8 MILLION SET ASIDE TO SATISFY CLAIMS OF TEXAS TAXING
AUTHORITIES, AND (III) GRANTING RELATED RELIEF**

Michael Goldberg, in his capacity as Plan Administrator (the "Plan Administrator") for the Wind-Down Debtors established in the above-captioned case, by and through his undersigned counsel, hereby moves this Court (the "Motion"),[2] for the entry of an order, substantially in the form submitted herewith (the "Proposed Order"), pursuant to section 105(a)

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Capitalized terms use but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9013-1 – 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), (i) authorizing, but not directing, the Plan Administrator to negotiate and enter into settlements of the Claims of the Texas Taxing Authorities[3] relating to taxable years 2022 and 2023 (the "Texas Tax Claims") in his discretion without any further order or action of the Court, (ii) authorizing, but not directing, the Plan Administrator to satisfy any Allowed Texas Tax Claims from the Texas Reserve (defined below) without any further order or action of the Court, (iii) authorizing the payment of the Tax Advisors' (defined below) fees and expenses, solely as they relate to the Texas Tax Claims, from the Texas Reserve, and (iv) granting related relief. In support of this Motion, the Plan Administrator respectfully represents as follows:

## PRELIMINARY STATEMENT

1. By this Motion, the Plan Administrator seeks an efficient path to resolve the Debtors' Texas Tax Relief Pleadings (defined below), and various objections thereto. Throughout these cases, the Texas Taxing Authorities have sought to protect their interests, both in connection with the Final DIP Order and the Confirmation Order (as such terms are defined

---

[3] The term "Texas Taxing Authorities" means Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, City of El Paso, Fort Bend County WCID #02, Fort Bend County, City of Frisco, Grayson County, Gregg County, Harris County, Hidalgo County, Jefferson County, Lewisville Independent School District, City of McAllen, McLennan County, City of Mesquite, Montgomery County, Nueces County, Parker CAD, Rockwall CAD, San Marcos CISD, Smith County, Tarrant County, Tom Green CAD, Victoria County, Wichita County Tax Office, Randall County Tax Office, Brazoria County, Brazoria County Special Road & Bridge, Alvin Independent School District, Alvin Community College, Brazoria County Drainage District #4, Pearland Municipal Management, Brazoria Municipal Utility District #06, Woodlands Metro Municipal Utility District, Woodlands Road Utility District, Clear Creek Independent School District, Humble Independent School District, Pasadena Independent School District, Spring Branch Independent School District, City of Houston, Lubbock Central Appraisal District, Maricopa County (AZ), Midland County, City of Lake Worth, Crowley Independent School District, Grapevine-Colleyville Independent School District, Frisco Independent School District, Plano Independent School District, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Denton County, Guadalupe County, Hays County, Midland Central Appraisal District, Taylor County Central Appraisal District, City of Waco, Waco Independent School District, Williamson County, Collin County, Collin College, City of Plano, McKinney ISD, City of McKinney, and City of Sherman. .

below).  As a result of the efforts of the Texas Taxing Authorities, the Debtors agreed to reserve $2.8 million for the sole purpose of paying Texas Taxing Authorities claims.

2.     On the Effective Date, the Plan Administrator was appointed to, among other things, administer these chapter 11 cases and to object to, negotiate, settle, or otherwise resolve Disputed Claims, subject to certain limitations and procedures more fully set forth in the Plan and as discussed below.  Since that time, the Plan Administrator has been active in discharging his duties under the Plan and Confirmation Order and administering these chapter 11 cases.  As such, the Plan Administrator has had an opportunity to begin to evaluate the Texas Tax Claims (which are the subject of ongoing review and analysis) and the Texas Tax Relief Pleadings (defined below) in the context of the Plan and Confirmation Order.

3.     As a result, the Plan Administrator has pursued a comprehensive process to consensually resolve (or if necessary, litigate) the Texas Tax Claims and Texas Tax Relief Pleadings, and files this Motion to facilitate a resolution of this process out of an abundance of caution.  Additionally, the Plan Administrator seeks to pay the fees and expenses of his Tax Advisors (defined below), solely as to the Texas Tax Claims, from the Texas Reserve. Accordingly, the relief requested will facilitate a streamlined and efficient process calculated to maximize value and decrease litigation costs for the benefit of all stakeholders and should be approved by the Court.

## JURISDICTION

4.     The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested are section 105(a) of the Bankruptcy Code and Local Rules 9013-1 – 9013-4 .

## BACKGROUND

A. **General Background**

6. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below). No trustee or examiner has been appointed in this case.

7. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

8. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). *See* Docket No. 2311. On the Effective Date, the Plan Administrator became the sole representative of the Wind Down Debtors and assumed responsibility for, *inter alia*, evaluating, objecting to, and litigating claims, as well as settling, compromising, and resolving any Disputed Claim, subject to certain limitations and procedures, all as more fully set forth in the Plan and discussed below. *See, e.g.,* Plan, at Art. IV.F, IX.B.

B.  **The Texas Taxing Authorities and the Texas Tax Claims**

9. On June 15, 2023, the Court entered its *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No 729] (the "Final DIP Order"). The Final DIP Order approved, *inter alia*, the DIP Facility (defined therein) and the Debtors' use of Cash Collateral, all as more fully set forth therein. Additionally, paragraphs 61 and 62 of the Final DIP Order provided that,

> 61. Texas Taxing Authorities. Notwithstanding any provisions of the Motion, the Interim Order, this Final Order, or the other DIP Documents, any valid, binding, perfected, enforceable, and non-avoidable liens currently held by the Texas Taxing Authorities16 on account of allowed secured claims for taxes on any DIP Collateral that under applicable non-bankruptcy law are granted priority over a prior perfected security interest or lien (the "Texas Tax Liens") shall neither be primed by nor subordinated to any DIP Liens or Adequate Protection Liens granted under the Interim Order or this Final Order, and upon the sale of any DIP Collateral subject to the Texas Tax Liens, the Texas Tax Liens shall be paid by the Debtors in accordance with the Approved Budget and shall attach to the Priority Claims Reserve and WARN Reserve to the extent of any shortfall, with the same order of priority which the Texas Tax Liens had on the applicable DIP Collateral. All parties' rights to object to the priority, validity, amount, enforceability and extent of any purported claims and liens asserted by the Texas Taxing Authorities are fully reserved.
>
> 62. Notwithstanding any other provisions of this Final Order, the Debtors are authorized, but not directed, to use funds from the Priority Claims Reserve and WARN Reserve to pay valid, undisputed, enforceable, non-avoidable, allowed claims for sales taxes, use taxes, income taxes, and property taxes, as well as other governmental taxes, fees, and assessments in various jurisdictions ("Taxes and Fees") solely to the extent that such Taxes and Fees exceed the amounts set forth in the Approved Budget.

Final DIP Order, ¶¶ 61-62 (footnote omitted).

10. On September 11, 2023, the Debtors filed their *Debtors' (I) Omnibus Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings* [Docket No. 2156] (the "Omnibus Texas Tax Objection"). The Omnibus Texas Tax Objection sought entry of an order (i) establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in certain Texas counties set forth therein and to stay state proceedings and (ii) modifying or reducing applicable Texas Taxing Authority Claims correspondingly. Similarly, on that same date, the Debtors filed their *Debtors Motion to Determine Tax Liability and Stay Proceedings* [Docket No. 2157] (the "Texas Tax Determination Motion," and together with the Omnibus Texas Tax Objection, the "Texas Tax Relief Pleadings"). The Texas Tax Determination Motion sought entry of an order establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in Bell and Potter-Randal counties, Texas and to stay related state proceedings.

11. On various dates, certain of the Texas Taxing Authorities filed responses to the Texas Tax Relief Pleadings. *See* Docket Nos. 2432, 2483, 2484, 2487, 2492. 2497. Although certain agreed orders have been entered with respect to the Omnibus Texas Tax Objection,[4] the Texas Tax Relief Pleadings remain pending and are currently set for hearing on March 12, 2024, at 10:00 a.m. (Eastern Time). *See* Docket No. 2897. Additionally, a joint motion [Docket No. 2664] by the Texas Taxing Authorities seeking to compel payment of certain taxes relating to tax year 2022 is set to be heard at the March 12th hearing.

---

[4] *See* Docket Nos. 2782 and 2786.

12. On September 1, 2023, the Texas Taxing Authorities filed their *Joint Limited Objection of the Texas Taxing Authorities to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond, Inc. and its Debtor Affiliates* [Docket No. 2112] (the "Texas Taxing Authority Confirmation Objection"), raising various objections to the treatment of the Texas Tax Claims under the Plan. The Texas Taxing Authorities' Confirmation Objection was resolved through certain agreed amendments to the Confirmation Order.[5]

13. Paragraph 141 of the Confirmation Order provides that, *inter alia*, unless subsequently disallowed, (i) the Texas Taxing Authority Claims shall constitute Class 2 Other Secured Claims under the Plan,[6] (ii) nothing in the Confirmation Order or Plan impaired or altered the Texas Taxing Authorities rights under paragraphs 61-62 of the Final DIP Order, and (iii) the Debtors and the Texas Taxing Authorities would mutually agree to a reserve amount of between $500,000 – $2.8 million from the Combined Reserve[7] for the payment of the Texas Tax Claims. The Plan Administrator ultimately set aside an amount up to $2.8 million, as was agreed

---

[5] *See* Transcript of Hrg. Sept. 12, 2023, at 69:5-10 (Debtors' counsel: "We have agreed in resolution of [the Texas Taxing Authority Confirmation Objection] and I just wanted to note for the record that the debtors are going to make payment of the 2022 tax claims referenced in their objection within 24 hours of entry of the order. So, I just wanted to put that on record and give counsel to the Texas taxing authorities that comfort.").

[6] Article III.B.2.b of the Plan provides that the treatment of Other Secured Claims is "In full and final satisfaction of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder thereof will receive, with the consent of the DIP Agent: (a) payment in full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired."

[7] Article I.A.31 of the Plan defines "Combined Reserve" as "the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the terms of the Final DIP Order, in the aggregate amount of $15 million less any amounts paid from the Combined Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date."

to shortly after the Confirmation Hearing by and between the Debtors and the Texas Taxing Authorities (the "Texas Reserve").

14. Shortly after the Confirmation Date, the Debtors paid approximately $2 million of the Texas Tax Claims related to taxable year 2022, leaving approximately $800,000 in asserted amounts from tax year 2022 unpaid on account of the Texas Tax Claims. According to the Texas Taxing Authorities, approximately $2.9 million in asserted Texas Tax Claims related to the 2023 taxable year remain pending or otherwise unsatisfied.

15. The Plan Administrator, with the assistance of his professionals, including Assessment Technologies, Ltd. d/b/a AT Tax Advisory ("AT Tax Advisory") and Blackwell & Duncan, PLLC ("Blackwell," and together with AT Tax Advisory, the "Tax Advisors"),[8] are evaluating the Texas Tax Claims, the Texas Tax Relief Pleadings, as well as the Plan and Confirmation Order, and have been engaging with the Texas Taxing Authorities regarding the resolutions of the Texas Tax Claims and the Texas Tax Relief Pleadings. Accordingly, the Plan Administrator files this Motion out of an abundance of caution and to facilitate a consensual process resolving the Texas Tax Claims, consistent with the terms of the Plan and Confirmation Order.

---

[8] AT Tax Advisory, formerly an Ordinary Court Professional of the Debtors, has been engaged by the Plan Administrator through the Wind-Down Debtors in connection with the evaluation and potential litigation of the Texas Tax Claims, among other state taxing authorities. Under the terms of the AT Tax Advisory's retention, the AT Tax Advisory is generally entitled to a fee of 25% of the difference between the asserted amount of a Texas Tax Claim and the Allowed amount of such Claim. Similarly, the Wind-Down Debtors, through the Plan Administrator, have engaged Blackwell, as counsel, to assist with certain tax litigation and appeals as to the Texas Tax Authorities on an hourly fee basis.

**RELIEF REQUESTED**

16. By this Motion, and pursuant to section 105(a) of the Bankruptcy Code and Local Rules 9013-1 – 9013-4, the Plan Administrator seeks entry of an order, substantially in the form of the Proposed Order, (i) authorizing, but not directing, the Plan Administrator to negotiate and enter into settlements of the Texas Tax Claims in his sole and independent discretion without any further order or action of the Court, (ii) authorizing, but not directing, the Plan Administrator to satisfy any Allowed Texas Tax Claims from the Texas Reserve without any further order or action of the Court, (iii) authorizing the payment of the Tax Advisors' fees and expenses, solely as they relate to the Texas Tax Claims, from the Texas Reserve, and (iv) granting related relief.

**BASIS FOR RELIEF**

17. Under Article IX.B of the Plan, as of the Effective Date, the Plan Administrator on behalf of the Wind Down Debtors has the sole authority to, *inter alia*, file and prosecute objections to Claims and to settle, compromise, or otherwise resolve any and all Claims "without any further notice to or action, order, or approval by the Bankruptcy Court."[9]

18. While the relief requested herein does not trigger the need for the Plan Administrator to obtain approval of the Oversight Committee, given the litigation advanced by the Texas Tax Relief Pleadings and the papers of the Texas Taxing Authorities, as well as the

---

[9] The Plan Administrator is not provided with unlimited discretion to settle certain claims under the Plan. Article IV.F.7 of the Plan also provides that, *inter alia*, the Plan Administrator must obtain approval of the Oversight Committee to settle a Claim, unless the amount in controversy does not exceed $10 million, or, to the extent the amount in controversy exceeds $10 million, the settlement amount is at least 70% of the amount in controversy. For any Claim (other than a D&O Claim) where the amount controversy is in excess of $10 million or the settlement amount is less than 70% of the amount in controversy, the Plan Administrator must obtain approval of at least two members of the four member Oversight Committee, all as more fully set forth in the Plan.

terms of the Plan, the Plan Administrator files this Motion seeking clear authority to resolve Texas Tax Claims as described herein out of an abundance of cation

19. Under paragraph 151 of the Confirmation Order and Article XIII of the Plan, the Court retained its jurisdiction to, *inter alia*, interpret and enforce the terms of the Plan and Confirmation Order and to issue such orders and grant such relief as may be necessary to facilitate the relief granted by the Confirmation Order and Plan and distributions to the Holders of Allowed Claims.

20. As set forth above, the Plan Administrator has been vested with the authority to litigate and, if appropriate, settle any Disputed Claim. Moreover, the Confirmation Order has approved the funds set aside into the Texas Reserve following substantial negotiation with the Debtors' professionals.

21. Having now had an opportunity to evaluate the Texas Tax Claims and the Texas Tax Relief Pleadings within the context of the Plan and Confirmation Order, the Plan Administrator would like to perform upon these provisions by implementing a comprehensive process to resolve the Texas Tax Claims by consensual means to the fullest extent possible. As part and parcel thereof, the Plan Administrator also seeks further clarity that he may satisfy any Allowed Texas Tax Claim without further order from the Court from the Texas Reserve. Authorizing payment of Allowed Texas Tax Claims from the Texas Reserve as requested herein will facilitate that which was contemplated in the Confirmation Order in a prompt and efficient manner. As such, the Plan Administrator believes that the relief requested herein will reduce

unnecessary litigation, as well as the attendant costs and delay thereof, for the benefit of all stakeholders, consistent with the terms and spirit of the Plan and Confirmation Order.

22. Additionally, the Plan Administrator further seeks to deduct the cost of the Tax Advisors, solely as to the Texas Tax Claims, from the Texas Reserve. The Tax Advisors' efforts to reconcile and analyze the Texas Tax Claims have benefited all of the Texas Taxing Authorities. As such, and given the establishment of the Texas Reserve for the benefit of the Texas Taxing Authorities, the costs of the Tax Advisors should be borne by the Texas Taxing Authorities rather than other stakeholders.[10]

23. Accordingly, the relief requested is in the best interest of all stakeholders and should be approved by the Court.

## RESERVATION OF RIGHTS

24. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Plan Administrator, Winndown Debtors, or Debtors, as applicable, (ii) a waiver of the Plan Administrator's, Winndown Debtors', or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Plan Administrator's, Winndown Debtors', or any other party-in-interest's rights under the Bankruptcy Code, Plan Documents, or any other applicable non-bankruptcy law, or (iv) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

---

[10] For the avoidance of doubt, this Motion only seeks to deduct the costs of the Tax Advisors, solely as to the Texas Tax Claims, from the Texas Reserve. Other administration costs and the fees of the Plan Administrator's other professionals will be paid as set forth in the Plan and Confirmation Order.

4881-8471-3126.4 08728.003                    11

## NOTICE

25. Notice of this Motion has been provided to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) all parties that have filed a renewed request for service of papers under Bankruptcy Rule 2002 pursuant to the Effective Date Notice; and (c) the Texas Taxing Authorities. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order, granting the relief requested herein, and such other and further relief as is just and proper under the circumstances.

Dated: March 12, 2024

*/s/ Paul J. Labov*
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Email:  bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*