| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Robert J. Feinstein (admitted *pro hac vice*)<br>Bradford J. Sandler<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>**Hearing**: April 9, 2024 at 10:00 am<br>**Judge**: The Honorable Vincent F. Papalia |

**SUR-REPLY OF THE PLAN ADMINISTRATOR TO MOTION FOR ORDER ALLOWING GENERAL UNSECURED CLAIM OF LEVTEX LLC**

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors"), files this sur-reply in further support of his opposition [Doc. No. 2892]

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

(the "Opposition") to the *Motion for Entry of Order Allowing General Unsecured Claim of Levtex LLC* [Doc. No. 2705] (the "Motion").[3] As Levtex LLC ("Claimant") notes in its *Reply Memorandum* [Doc. No. 2923-1] (the "Reply"), on or about March 10, 2024, the Plan Administrator and Claimant entered into a Settlement Agreement that resolved all issues relevant to the Motion other than whether $73,168.77 of Claim 3942 is entitled to priority pursuant to Bankruptcy Code section 503(b)(9) (the "503(b)(9)(Claim").[4] Moreover, the dispute is confined to one aspect of Section 503(b)(9), whether the goods that are the subject of Claimant's 503(b) Claim (the "Goods") were "received by the debtor". As is set forth in the Opposition and below, they were not.

## Introduction

1.      Two things are undisputed with respect to the Motion: (1) the Goods that are the subject of Claimant's 503(b) Claim were drop-shipped directly from Claimant to the customers who ordered them from the Debtors' website (the "Customers"), and (2) the Debtors never had physical possession of the Goods.[5] In the Opposition, the Plan Administrator cited no less than 5 cases (including directly applicable binding authority from the Third Circuit) that hold that possession of the Goods by a common carrier (here, Federal Express ("FedEx")) and/or by

---

[3] Capitalized terms that are not defined herein have the definitions given to them in the Opposition.

[4] Section 503(b)(9) provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including---the value of any ***goods received by the debtor*** within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9) (emphasis added).

[5] Claimant acknowledges that the Goods were drop-shipped to the Debtors' customers. *See Reply Certification of Charles Ginn* [Docket No. 2923] ("Certification II"), at ¶ 4 ("The 'domestic' transactions involved delivering the goods to Debtors' agents-Federal Express ("FedEx")-in the United States, ***with the goods being directly shipped to the Debtor's customers***. . . . Delivering the goods to FedEx in the United States, with the goods being shipped to the Debtors' customers, is very common in the retail industry, especially since the COVID-19 pandemic started in 2020. (This method of delivering goods directly to Levtex's customer is often called "drop shipping"."); *Certification of Charles Ginn* [Docket No. 2705-1] at ¶ 6 ("Certification I")(("The 'domestic' transactions involved delivering the goods to Debtors' agents-Federal Express-in the United States, ***with the goods being directly shipped to the Debtor's customers***.") (emphasis added).

nondebtor third party customers (i.e., the Debtors' Customers) do not qualify as having been "received by the debtor" under section 503(b)(9). *See* Opposition, ¶¶ 21-22. In response, Claimant cites one case (a bailment case that applies U.K. law) that is clearly inapplicable. *See infra*. As neither the Debtors nor any agent of the Debtors ever had physical possession of the Goods that are the subject of the 503(b) Claim, Claimant has failed to establish that it is entitled to priority.

**Goods In The Possession Of A Common Carrier Have Not Been "Received By The Debtor" For The Purpose Of Section 503(B)(9).**

2.     As noted was noted in the Opposition, in *In re World Imps., Ltd*., 862 F.3d 338 (3d Cir. 2017) ("World Imports"), the court considered whether goods were "received by the debtor" for the purpose of section 503(b)(9) when they were delivered by the seller to a common carrier for shipment or, later, when the debtor took physical possession of the goods at the port. The Court first held, "Based on the ordinary meaning of 'received,' the legislative context of the Bankruptcy Code, and persuasive decisions finding that Congress meant to use the [Uniform Commercial Code] definitions for this particular amendment to the Bankruptcy Code, we hold goods are "received" when the debtor or its agent takes physical possession of them." *Id*. at 342; U.C.C. § 2-103(1)(c)( "Receipt" of goods means taking physical possession of them.").

3.     The *World Market* court further held that a common carrier is **not** the debtor's agent for section 503(b)(9). The Court explained that "delivery" to a common carrier for shipment and "receipt" by the buyer are two legally distinct concepts, even where title to the goods and risk of loss pass to the buyer upon delivery:

> While it is true that a buyer may be deemed to have received goods when his agent takes physical possession of them, ***common carriers are not agents***. Constructive receipt thus does not include "FOB delivery" to a common carrier, as the Bankruptcy Court and District

> Court assumed. ***Delivery, or transfer of title or risk of loss, has been treated as distinct from actual receipt of goods by the buyer***. The official comment to the UCC's definition of receipt makes this distinction: "Receipt" must be distinguished from delivery particularly in regard to the problems arising out of shipment of goods, whether or not the contract calls for making delivery by way of documents of title, since the seller may frequently fulfill his obligations to "deliver" even though the buyer may never "receive" the goods. UCC § 2-103 cmt. 2 . . . A seller may deliver goods to a common carrier—thereby relinquishing title and risk of loss—some time before the goods are received by the buyer or its agent.

*World Imports,* 862 F.3d at 344. The Court of Appeals continued:

> [U]nder the UCC and Chapter 11, receipt does not occur until after the seller's ability to stop delivery ends—namely, upon the buyer's physical possession. . . . While actual possession by an agent on behalf of a buyer constitutes constructive receipt, *our caselaw is clear that common carriers do not qualify as agents*. . . . Thus, the common carrier in this case did not act as an agent for World Imports. . . . ***In sum, there is no support for the idea that a buyer constructively receives goods when they are delivered to a common carrier, even if title and risk of loss pass at that time***.

*Id*. at 345-46 (emphasis added). *See e.g.*, *In re Marin Motor Oil, Inc.,* 740 F.2d 220, 225 (3d Cir. 1984)(holding, in the context of the phrase "received such goods by the debtor" in section 546(c) of the Bankruptcy Code, "U.C.C. § 2-705 . . . views goods given by a seller to a common carrier for delivery to a buyer **as being in the possession of the common carrier not the buyer**.").[6]

4.  Without citing a single case that supports its position, Claimant argues that because Claimant billed the shipping charges to the Debtors' FedEx account, the Third Circuit's holding in *World Market* does not apply. *See* Reply at 3. There is no such limitation or any discussion of any such limitation in *World Market*. (Surely if passing of title, possession and risk

---

[6] Claimant alleges without support that "once Levtex gave the goods to FedEx, Levtex had no further control over the goods—only the Debtors could stop or redirect the shipment. FedEx would follow the instructions of the Debtors and only the Debtors—not Levtex or the Debtors customers." *Reply* at 3. Even assuming arguendo that were true, it is legally irrelevant. U.C.C. section 2-705(1) gives a seller an independent right to stop delivery of goods in the possession of a carrier or other bailee when the seller discovers the buyer to be insolvent until such time as one of the conditions set forth in U.C.C. 2-705(2) has been met.

of loss are insufficient to make FedEx the Debtors' agent, the fact that the Debtor paid the shipping charges is too.)  Moreover, the Opposition cited (and the Reply all but ignored) case law that is directly on point. In *In re SRC Liquidation, LLC*, 573 B.R. 537 (D. Del. 2017) ("<u>SRC Liquidation</u>"), the court concluded that a claim for goods that a vendor drop-shipped to a debtor's customers (and billed to the debtor's UPS account) did not qualify for priority treatment under section 503(b)(9). In doing so, it held:

> [T]he Court finds that [seller] failed to carry its burden to demonstrate its entitlement to an administrative priority for the value of the goods identified in its 503(b)(9) claim. As stipulated by the parties, these goods were delivered by [seller] to a common carrier (UPS) for shipping via the Debtor's account to a third party customer during the relevant twenty day period. The Debtor never physically possessed the goods. Only UPS possessed the goods, and as a carrier UPS does not qualify as an agent. *World Imps*., 2017 U.S. App. LEXIS 12254, 2017 WL 2925429, at *5. The goods were never received by the Debtor from [seller] within the meaning of section 503(b)(9).

*Id.* at 542. *See also* Opposition at ¶¶ 21-22 and cases cited therein.

**<u>The Case Relied Upon By Claimant Does Not Stand For The Proposition That The Debtors "Received The Goods" For The Purpose Of Section 503(b)(9).</u>**

5. Claimant relies upon once case, *In re O.W. Bunker Holding North America Inc,.,* 606 B.R. 513 (D. Conn. 2017).  In that case, the debtor had a contract to supply "bunker fuel" (fuel used on board a ship) to a customer. The debtor bought the bunker fuel from seller and seller delivered it to the debtor's customer 20 days before the debtor filed chapter 11. The contract between the debtor and the debtor's customer did not establish a straight forward sale of the fuel (in which case, delivery to the customer would not constitute physical or constructive possession by the debtor).  Instead, the contract clearly defined the customer as the debtor's "bailee," authorized the customer only to use the fuel only for "propulsion" until full payment

had been made, and the debtor retained title to the goods (i.e., the fuel) pending full payment. Applying the plain language of the contract and the U.K. law (which applied to the contract), the bankruptcy court found that the debtor's customer was the debtor's bailee. Therefore, the court concluded that the debtor had "constructive possession" of the goods (i.e. the fuel) when they were delivered to its customer-bailee. Accordingly, the debtor had "received" the goods for the purpose of section 503(b)(9) because it was deemed to have possession.

6. From this case, Claimant argues, "Surely if the owner of the Vessel [the debtor's customer], which bought the fuel for its own use, is a "bailee," FedEx, which would not consume or resell Levtex's goods, was the Debtors' bailee." *Reply*, at 5. This holding is simply inapplicable to the 503(b)(9) Claim here. Goods in the possession of a buyer's bailee (other than a common carrier) are deemed under the U.C.C. to be in the constructive possession of the buyer. *See* U.C.C. § 2-705(2)(b).[7] As the case law makes clear, neither FedEx nor the Debtor's Customers are deemed to constructively possess the Goods under the U.C.C. 2-705(2), Bankruptcy Code section 503(b)(9) and well-established, uncontested case law.

**Claimant Has Failed To Establish That Its 503(B)(9) Claim Is Entitled To Priority**

7. The thrust of Claimant's argument is a policy one. It essentially argues that because drop-shipping is "a major aspect of the retail business that has exploded since commencement of the COVID-19 pandemic" this Court should ignore clear, binding case law and amend section 503(b)(9) of the Bankruptcy Code to read "received by the debtor, the debtor's customers and/or Federal Express, DLH, or UPS." One can think of many provisions of

---

[7] U.C.C. section 2-705(2) provides, "As against such buyer the seller may stop delivery until (a) receipt of the goods by the buyer; or (b) ***acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or*** (c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or (d) negotiation to the buyer of any negotiable document of title covering the goods." (emphasis added).

the Bankruptcy Code that Congress could have (or perhaps should have) amended in response to the COVID-19 pandemic, but that is up to Congress and it has not done so to date.

8.  Even prior to the COVID-19 pandemic, other sellers argued that courts should relax (or amend) section 503(b)(9) requirements to accommodate the "commercial reality" of drop-shipping to no vail. As the District Court noted in *Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.,* 2012 U.S. Dist. LEXIS 122615 (D. N.H. Aug. 29, 2012) (unpublished):

> In common drop-shipment scenarios, [seller] says, "received" should be defined in context — in a way that accounts for the commercial reality of drop-shipment arrangements. It points to the fact that drop-shipment arrangements are not only common, but often call for flexibility, and that a buyer's decision to direct delivery to a third-party should not permit the buyer to later deny receipt of the goods. . . . As a general matter, [seller's] point is well-taken. That is, in some contexts commercial reality might well counsel application of an expansive definition of "received." But the statutory construction it proposes here does not fit the context. Priorities in bankruptcy, such as the administrative expenses listed in Section 503(b), 11 U.S.C. Sec. 503(b)(1)-(9), stand as discrete exceptions to the general equality principle. As such, they must be strictly construed and be "clearly authorized by Congress." Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655, 126 S. Ct. 2105, 165 L. Ed. 2d 110 (2006). Therefore, [seller's] claim to priority turns not on "commercial reality" with respect to the delivery of purchased goods, but on whether Congress "clearly authorized" the specific priority [seller] seeks.

*Id*. at *10-11. As the Claimant has failed to meet its burden, the Court should find that the 503(b)(9) Claim is not entitled to priority and it should be allowed only as a general unsecured claim.

| | |
|---|---|
| Dated:  April 2, 2024 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | |
| | */s/ Bradford J. Sandler* |
| | Robert J. Feinstein (admitted *pro hac vice*) |
| | Bradford J. Sandler |
| | Colin R. Robinson |
| | PACHULSKI STANG ZIEHL & JONES LLP |
| | 780 Third Avenue, 34th Floor |
| | New York, NY 10017 |
| | Telephone:  (212) 561-7700 |
| | Facsimile:  (212) 561-7777 |
| | Email: rfeinstein@pszjlaw.com |
| | bsandler@pszjlaw.com |
| | crobinson@pszjlaw.com |
| | |
| | *Counsel to the Plan Administrator* |