**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq. (admitted *pro hac vice*)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax:  212-808-7897

Email:  rlehane@kelleydrye.com
         jraviele@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel:  973-503-5900

*Counsel for Oak Street Investment Grade Net Lease*
*Fund Series 2021-1, LLC*

---

| | | |
|---|---|---|
| -----------------------------------------------------------x | | |
| In re | : | Chapter 11 |
| | : | |
| BED BATH & BEYOND, INC., *et al.*, | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| -----------------------------------------------------------x | | |

**OBJECTION OF LANDLORD OAK STREET INVESTMENT GRADE NET LEASE**
**FUND SERIES 2021-1, LLC TO LEASE ASSUMPTION AND ASSIGNMENT NOTICE**

       Oak Street Investment Grade Net Lease Fund Series 2021-1, LLC ("Landlord"),

landlord to debtor Bed Bath & Beyond Inc. ("Tenant" and, together with its affiliates,

"Debtors"[2]) with respect to the leased premises located at 3700 West Torrance Boulevard in

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  .

[2]    References herein to Debtors shall include the Plan Administrator, which was appointed pursuant to the Plan and Confirmation Order (as defined below) as the party in interest to be substituted for Debtors to perform under the Designation Rights Agreement and Order (as defined below).

Torrance, California (the "Leased Premises"), submits this objection (the "Objection") to the proposed assumption and assignment of the unexpired lease of nonresidential real property for Debtors' store number 3076 (the "Lease") to A&M Properties, Inc. ("A&M") and BBBY Acquisition Co. LLC ("DOM" and, together with A&M, the "Proposed Assignees") pursuant to the Lease Assumption Notice (the "Second Assignment Notice").[3]  The Landlord respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The proposed assignment of the Lease should be denied and the Lease deemed rejected upon the expiration of the designation rights period on April 5, 2024.  Despite months of marketing, negotiation with potential tenants, and multiple extensions of the agreed time to assume or reject the Lease under a designation rights agreement, the Proposed Assignees have failed to reach agreement or satisfy their burden to provide the Landlord with adequate assurance of future performance under the Lease.  A&M is not a retailer and cannot, without a suitable co-tenant, satisfy the use requirements of the Lease and the applicable operating easement agreement.  Based on the limited information provided to Landlord to date, the Proposed Assignees are not similar in terms of financial condition or operating experience as Debtors when the Lease was originally executed.

2.    If the Court is inclined to approve assignment of the Lease, the Debtors or the Proposed Assignees must be required to promptly pay the Landlord Cure Amount plus any additional pecuniary losses suffered by Landlord, including reasonable attorneys' fees, as well as satisfy any Adjustment Amounts and indemnification obligations that come due after

---

[3]    The Second Assignment Notice was not filed on the docket in these cases.  A copy of the Second Assignment Notice is attached hereto as **Exhibit A**.

assignment.   The Proposed Assignees should also be required to enter into a short-form assumption and assignment agreement to put the parties in privity.

3.      Since receiving the Second Assignment Notice, Landlord has been in negotiations with Debtors and Proposed Assignees to attempt to resolve its concerns regarding the Proposed Assignees.  During this time, Landlord has been exceedingly flexible, agreeing to numerous extensions of A&M's initial February 29, 2024 deadline to designate the lease for assignment or rejection.  Unfortunately, after extending the deadline for over a month, it appears that the Proposed Assignees are still unable to agree and finalize a settlement regarding the outstanding issues.  The Landlord is not willing to extend the designation period further, but has begun negotiations with the Plan Administrator to resolve the issues regarding the Lease without imposing any additional costs and allowing the estate to realize the entire economic benefit available under the designation rights agreement in connection with an assignment of the lease.

## FACTUAL BACKGROUND

4.      The Leased Premises are part of a retail shopping center (the "<u>Shopping Center</u>") and subject to the Operation and Easement Agreement, dated April 28, 1994 (the "<u>OEA</u>").  The OEA sets forth certain covenants related to the Shopping Center, which includes the Leased Premises.  Section 5.1(A) of the OEA restricts the permitted use of the Shopping Center to retail sales or services and states:

> No part of the Shopping Center shall be used for other than retail sales or services.  No use or service shall be permitted in the Shopping Center which is inconsistent with the operation of a first-class retail shopping center.

OEA ¶ 5.1(A).

5.      On or about December 20, 2019, Edison TOCA0001 LLC ("<u>Edison</u>") and Tenant entered into the Lease.  Tenant designated the Leased Premises as store number 3076.

During January 2021, Edison and Landlord entered into that certain *Assumption and Assignment of Leases* whereby Edison assigned its right, title, and interest under the Lease to Landlord.

6.    This Lease is a traditional triple net lease.  Lease ¶ 6(B).  Tenant is responsible for the monthly rent due under the Lease, as well as all utility charges, real estate taxes, and all other sums relating to the Leased Premises.  *Id*.

7.    The lease commenced on December 20, 2019, with a term of 181 months and an initial expiration date of January 31, 2035.  *Id.* ¶¶ 1(C), 1(D), 1(H).  Tenant has four (4) separate options to renew the Lease as follows:  (i) 60 months, (ii) 60 months, (iii) 48 months, and (iv) 60 months.  *Id.* ¶ 1(E).  If Tenant exercised all of the options under the Lease, the term would be extended for a total of 19 years and expire on January 31, 2054.  *Id.*

8.    Regarding the use of the Leased Premises, the Lease provides, in pertinent part, that:

> Tenant may use the Premises for (i) retail and ancillary uses associated therewith, and (ii) any other use permitted by Law which does not materially detract from the value, or impair in any material manner the post-Term use, of the Property, in all cases subject to all Laws and Permitted Encumbrances….

*Id.* ¶ 4(A).  Notwithstanding this Lease provision, the Leased Premises are subject to the more limited use of only retail sales and services per the OEA as set forth in paragraph 4 above.

9.    Additionally, the identity, experience, proposed use, and creditworthiness of Tenant were all critically important for enticing Landlord to enter into the Lease.  Section 21(B) of the Lease provides, in pertinent part:

> Tenant acknowledges that Landlord has relied both on the business experience and creditworthiness of Tenant and upon the particular purpose for which Tenant intends to use the Premises in entering into this Lease….

*Id.* ¶ 21(B).

10.     Because of that reliance, the Lease strictly limits Tenant's right to assign

the lease as follows:

> Tenant shall not assign, transfer or convey this Lease or any
> interest therein, whether by operation of law or otherwise, unless,
> following such transfer, the Tenant has a public, senior unsecured
> – domestic investment grade credit rating from Moody's, Standard
> & Poor's or Fitch that is equal to or better than Baa3 for Moody's,
> BBB- for Standard & Poor's or BBB- for Fitch….

*Id.*

## PROCEDURAL HISTORY

11.     On April 23, 2023, Debtors filed voluntary petitions for relief under

Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of

New Jersey (the "Court").

12.     On May 3, 2023, Debtors filed their motion to establish procedures for the

sale of leases (the "Sale Procedures Motion")[4] through an auction in an effort to capture value

from certain leases, including the Lease.  Sale Procedures Motion ¶ 10.  The Sale Procedures

Motion was granted by order of the Court on May 22, 2023.[5]

13.     On June 27, 2023, Debtors filed a notice advising of the results of the

auction ("Notice of Successful Bidder"),[6] which asserted that A&M successfully bid $100,000

for the Lease.  Notice of Successful Bidder at 8.

14.     On June 30, 2023, Debtors filed a notice of assignment (the "First

Assignment Notice")[7] indicating Debtors' intent to assume and assign the Lease to A&M as of

July 18, 2023 with a proposed cure amount of $0.00.  First Assignment Notice at 7.

---

[4]    Docket No. 193.
[5]    Docket No. 422.
[6]    Docket No. 1114.
[7]    Docket No. 1157.

15.      On July 12, 2023, Landlord filed an objection to the First Assignment Notice (the "Objection to First Assignment Notice").[8]

16.      On July 20, 2023, Debtors filed a joint plan of reorganization (as subsequently amended, the "Plan"),[9] and on July 21, 2023 they filed a disclosure statement (the "Disclosure Statement").[10]  On September 14, 2023, the Court entered an order approving the Disclosure Statement and confirming the Plan (the "Confirmation Order").[11]  On September 29, 2023, the Plan went effective.[12]

17.      On October 4, 2023, after negotiations among the parties, the Objection to the First Assignment Notice was resolved when the Court entered an order (the "Designation Rights Order")[13] approving an agreement between Debtors, A&M, and Landlord permitting the assignment of designation rights for the Lease to A&M (the "Designation Rights Agreement").[14] The Designation Rights Agreement gave A&M "the sole, exclusive, and continuing right to select, identify and designate that the Lease shall be either: (i) rejected or (ii) assumed and assigned to [A&M] and/or an affiliate or acceptable designee."  Designation Rights Agreement ¶ 1.

18.      However, this right is not absolute.  The Designation Rights Agreement provides A&M with the ability to designate the Lease for assignment only to the extent that the intended use of the Leased Premises is subject to the terms and conditions of the Lease and OEA, *id*. ¶ 2(b)(ii), including the prohibition on uses outside of retail sales or services.

---

[8]    Docket No. 1320.
[9]    Docket No. 1429.
[10]   Docket No. 1437.
[11]   Docket No. 2172.
[12]   Docket No. 2311.
[13]   Docket No. 2410.
[14]   Designation Rights Order, Ex. 1.

19.    As further set forth in the Designation Rights Agreement:

For the avoidance of doubt, the Designation Rights Order shall only approve the sale of Designation Rights and not the potential assumption and assignment of the Lease to Assignee which will be accomplished by a separate Lease Sale Order.

Designation Rights Agreement ¶ 1.

20.    Prior to receiving the Second Assignment Notice, Landlord was advised that A&M intended to designate the Lease for assignment to A&M and DOM as co-tenants.

21.    A&M and DOM provided certain financial documents to Landlord in connection with the Second Assignment Notice.   A&M did not provide any information to Landlord indicating that it has experience operating retail stores.   In the financial documents, DOM states that it "is in the business of selling baby related products including cribs, mattresses, strollers, car seats and accessories to retail outlets and online consumers throughout the United States and Canada."   Second Assignment Notice at 29.   Notably, DOM does not state that it operates any retail stores; however, some press outlets have reported that DOM re-opened eleven (11) Buy Buy Baby stores in the eastern U.S. in November 2023 following its purchase of that Debtor's trademark and intellectual property.[15]

22.    The parties have attempted to negotiate a settlement of outstanding issues related to the Second Assignment Notice since it was served on Landlord on February 12, 2024. In the interest of pursuing a potential settlement, Landlord was flexible with A&M and DOM and agreed to extend the deadline under the Designation Rights Agreement numerous times, including, most recently, through April 5, 2024.   However, as of the filing of this Objection, the Proposed Assignees have not been able to agree and finalize a proposed settlement that would address the outstanding issues.   Therefore, Landlord is filing this objection to protect its interests.

---

[15]   https://njbiz.com/buybuy-baby-is-back-with-familiar-faces-but-new-focus/ (last visited April 5, 2024)

**OBJECTION**

I.    **THE PROPOSED ASSIGNEES DO NOT SATISFY THE USE REQUIREMENTS UNDER THE LEASE AND THE OEA**

23.    The Court should deny assignment of the Lease to the Proposed Assignees because they are not retailers and do not satisfy the use requirements of the Lease and OEA.

24.    The Designation Rights Agreement requires that the proposed use of the Leased Premises be in compliance with the terms and conditions of the Lease and OEA. Designation Rights Agreement ¶ 2(b)(ii).  The OEA restricts the permitted use of the Shopping Center to "retail sales or services" consistent with "the operation of a first-class retail shopping center."  OEA ¶ 5.1(A).  Similarly, the Lease permits "retail and ancillary uses associated." Lease ¶ 4(A).  And, although the Lease allows other "use[s] permitted by Law," such other uses may "not materially detract from the value, or impair in any material manner the post-Term use, of the Property" and must still comply with the OEA's restrictions. *Id.*

25.    Upon information and belief, A&M is not a retailer and does not operate any retail sales or services; instead, A&M is a developer that is planning to develop a property neighboring the Leased Premises.

26.    Upon information and belief, DOM is primarily a manufacturer and not a retailer.  Its only brick-and-mortar experience appears to be operating certain Buy Buy Baby locations since November 2023.  Before that, DOM was strictly a supplier.  Such operating experience is substantially different from Debtors' operating experience when the Lease commenced.

27.    Furthermore, nothing in the Second Assignment Notice indicates that the Proposed Assignees intend to comply with the permitted use under the Lease and OEA.  On the

contrary, through the proposed lease assignment order, the Proposed Assignees are seeking a

blanket invalidation of any use restrictions in the Lease and OEA:

> To the extent the Lease contains use restrictions which would otherwise prohibit Assignee from operating at the applicable leased premises in the ordinary course of its business, including any restrictions on the sale of some or all of the items and goods typically sold by Assignee, Landlord agrees that such use is permitted for purposes of this assignment.

Second Assignment Notice, Exhibit A, 13.  There is no valid justification for such request.  If the

Lease is assigned, the Proposed Assignees are required to take assignment of the Lease and OEA

subject to all of their provisions without modification.

## II.    DEBTORS HAVE NOT MEET THEIR BURDEN TO PROVIDE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE LEASE

28.    The Court should also deny assignment of the Lease to the Proposed

Assignees because Debtors have not met their burden of demonstrating adequate assurance of

future performance of the Lease.

29.    Debtors may assume and assign an unexpired lease only if "adequate

assurance of future performance by the assignee of such contract or lease is provided, whether or

not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2)(b).  *See In re Sun*

*TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

30.    If there has been a default under an unexpired lease, then Debtors may not

assume and assign the lease without curing such default.  Section 365(b)(1) of the Bankruptcy

Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default…;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

31.     Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Lease.  *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

32.     While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction" in light of the facts of each case.  *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009).  The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985).  By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate.  *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

33.     To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, the Landlord must receive the following information from the Proposed Assignees (collectively, the "Adequate Assurance Information"):

a.     Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2022 and 2023 for the Proposed Assignees and any guarantors;

b.     Any and all documents regarding the Proposed Assignees' and any guarantor's experience operating retail stores;

c.     The number of retail stores the Proposed Assignees and any guarantor operates and all trade names used;

d.     The Proposed Assignees' and any guarantor's 2024 and 2025 business plans, including sales and cash flow projections;

e.     A statement setting forth the Proposed Assignees' intended use of the Leased Premises; and

f.     Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease.

Landlord will also need similar information for the Debtors in the year when the Debtors entered into the Lease to appropriately evaluate the ability of the Proposed Assignees to provide adequate assurance of future performance.

34.     Debtors have not demonstrated that the Proposed Assignees can perform under the Lease.  They have provided Landlord with limited financial information and no documentation regarding any experience operating as a retailer or their intentions with the Leased Premises.  Neither A&M nor DOM have provided information sufficient to substantiate that they are in the same financial condition and have the same operating experience as Debtors when the Lease commenced in 2019.  As noted above, the status of the Tenant was an important consideration of the Landlord when it entered into the Lease, which Tenant expressly

acknowledged. *See* Lease ¶ 21B. Unless and until the Landlord receives all of the Adequate

Assurance Information and it is satisfactory, the Debtors have not satisfied their burden pursuant

to 11 U.S.C. § 365(b)(3).

### III.    IF THE LEASE IS ASSIGNED, LANDLORD REQUIRES ADDITIONAL SECURITY FOR THE PERFORMANCE OF LEASE OBLIGATIONS

35.    Section 365(l) of the Bankruptcy provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned
> pursuant to this section, the lessor of the property may require a
> deposit or other security for the performance of the debtor's
> obligations under the lease substantially the same as would have
> been required by the landlord upon the initial leasing to a similar
> tenant.

11 U.S.C. § 365(l).

36.    In the ordinary course of its business, Landlord requires security in the

form of cash deposits, personal guaranties, and/or letters of credit when leasing to certain

companies based on their financial situation, operating experience, corporate structure, and/or

balance sheet. If the proposed assumption and assignment of the Lease is approved, Landlord

hereby demands such security in one of the forms required by section 365(l) of the Bankruptcy

Code. If the Court approves assignment of the Lease, Landlord reserves the right to specify the

exact form and amount of such security; however, Landlord would typically require a three-year

letter of credit and personal guaranty upon leasing to certain new tenants.

### IV.    IF THE LEASE IS ASSIGNED, DEBTORS OR PROPOSED ASSIGNEES MUST BE RESPONSIBLE TO PROMPTLY PAY THE CORRECT CURE AMOUNT AND SATISFY PECUNIARY LOSSES AND INDEMNIFICATION OBLIGATIONS UNDER THE LEASE

37.    Landlord disputes the cure amount of $0.00 proposed by Debtors in the

Second Assignment Notice. The correct cure amount for the Lease is $219,202.12 (the

"Landlord Cure Amount"), which includes an estimate of attorneys' fees incurred to date.

Landlord reserves the right to amend the cure amount to include additional amounts that continue to accrue and any other obligations that arise and/or become known to Landlord prior to assumption and assignment of the Lease.

38.     Pursuant to the Lease, Tenant is obligated to pay regular installments of fixed monthly rent, as well as certain real estate taxes and insurance. Pursuant to section 365(b)(1) of the Bankruptcy Code, prior to assumption and assignment of the Lease, Debtors are required to cure all outstanding defaults under the Lease and compensate Landlord for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B). Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary losses, Landlord is entitled to attorneys' fees in connection with Debtors' obligation to cure all monetary defaults under the Lease.

39.     In addition, Debtors or the Proposed Assignees must be required to comply with all contractual obligations to indemnify and hold the Landlord harmless for events which occurred before assumption and assignment, but which were not known to the Landlord as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) Debtors or the Proposed Assignees must be required to satisfy any and all such claims,

notwithstanding anything to the contrary contained in a plan or any court order, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

40.    To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Lease, Landlord reserves the right to amend the Landlord Cure Amount to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2023 and 2024, which have not yet been billed or have not yet become due under the terms of the Lease (the "Adjustment Amounts"). Debtors or the Proposed Assignees must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts were incurred.

41.    Finally, Landlord asserts that, if the Court approves assignment of the Lease, the Proposed Assignees should be required to execute a short-form assumption and assignment agreement with Landlord so that Landlord will be in privity with its new tenants.

## **RESERVATION OF RIGHTS**

42.    Landlord reserves the right to amend and/or supplement this Objection on any basis, including, without limitation, by supplementing its objection to Debtors' proposed cure amount or adequate assurance of future performance information, or by making such other and further objections as may be appropriate based upon any new information provided by

14

Debtors, A&M, or DOM, upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

## <u>CONCLUSION</u>

43.     Debtors have failed to meet their burden of demonstrating adequate assurance of future performance with respect to the proposed assignment of the Lease and, therefore, assignment of the Lease to the Proposed Assignees should be denied.

**WHEREFORE**, Landlord respectfully requests that the Court enter an order: (i) denying the proposed assignment of the Lease to the Proposed Assignees; or (ii) alternatively, if the Court approves assignment of the Lease to the Proposed Assignees, conditioning such assignment on (a) Debtors or the Proposed Assignees providing adequate assurance of future performance in accordance with section 365(b) of the Bankruptcy Code, (b) Debtors or the Proposed Assignees promptly paying the Landlord Cure Amount plus any additional pecuniary losses suffered by Landlord, including reasonable attorneys' fees, (c) the Proposed Assignees continuing to comply with all obligations under the Lease, including payment of the Adjustment Amounts and satisfaction of any indemnification or other Lease obligations in the ordinary course of business, (d) the Proposed Assignees entering into a short-form assumption and assignment agreement with Landlord, and (e) the Proposed Assignees providing security to Landlord pursuant to section 365(l) of the Bankruptcy Code; and (iii) granting such other and further relief as is just and proper.

Dated: April 5, 2024

Respectfully submitted,

*/s/ Robert L. LeHane*
Robert L. LeHane
Jennifer D. Raviele
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
            jraviele@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Oak Street Investment Grade Net Lease Fund Series 2021-1, LLC*

## **Exhibit A**

## **Second Assignment Notice**

<table>
<tr><td>In re:</td><td>Chapter 11</td></tr>
<tr><td>BED BATH & BEYOND INC., <em>et al.</em>,[1]</td><td>Case No. 23-13359 (VFP)</td></tr>
<tr><td>Debtors.</td><td>(Jointly Administered)</td></tr>
</table>

## <u>LEASE ASSUMPTION NOTICE</u>

**PLEASE TAKE NOTICE** that pursuant to that certain Order Approving the Acquisition of Designation Rights Agreement Among Debtors A&M Properties, Inc. and Edison TOC001 LLC (the "<u>DRA Order</u>") [Docket No. 2410],[2] the Purchaser hereby provides notice of its election to assume the Lease and assign it to its designee BBBY Acquisition Co. LLC.  As required by the Order, the following information is provided:

a.      The exact names of the proposed assignees are A&M Properties, Inc. and BBBY Acquisition Co. LLC.

b.      The proposed use of the Premises is retail (Buy Buy Baby).

c.      The proposed form of Lease Sale Order and proposed Agreement are attached hereto as Exhibit A and Exhibit B respectively.

d.      The Financial Information is attached hereto as Exhibit C.

PLEASE TAKE FURTHER  NOTICE that the deadline to object to assignment/cure shall be ten (10) business days after Landlord's receipt of this Lease Assumption Notice, and the Landlord shall have a period of ten (10) business days after its receipt of this Lease Assumption to file an objection in the United States Bankruptcy Court with respect to the assignment and assumption of the Lease as set forth herein.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Order.

Dated: February 12, 2024

A&M PROPERTIES INC.


By: _____

Name: _____

Title: _____P{resident_____

**EXHIBIT A**

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

</td></tr>
<tr><td>

In re:

BED BATH & BEYOND INC., *et al.*,[1]

                       Debtors.

</td><td>

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

</td></tr>
</table>

**[*PROPOSED*] ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE
BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT
AGREEMENT WITH DREAM ON ME, INC.**

The relief set forth on the following pages, numbered two (2) through ten (10), is

**ORDERED.**

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

(Page | 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

Upon the *Debtors' Motion for Entry of an Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), authorizing and approving, among other things, (a) the Lease Sale Procedures, and (b) the Debtors' right to consummate Lease Sales, including through Assumption and Assignment Agreements between the Debtors and the prospective assignee, all as more fully set forth in the Motion, and upon entry of the *Order (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 422]; and upon the First Day Declaration; and the Court having approved and entered the *Order Approving the Acquisition of Designation Rights Agreement Among Debtors A&M Properties, Inc. and Edison TOC001 LLC* [Docket No. 2410] (the "Designation Rights Order"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion. References to the Debtors in this Order and the Designation Rights Agreement shall apply with equal force to the Wind-Down Debtors and the Plan Administrator (each as defined in the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates (the "Plan") attached to the Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates [Docket No. 2172] (the "Confirmation Order")). In accordance with the Plan and the Confirmation Order, the Wind-Down Debtors and the Plan Administrator, as the case may be, shall succeed to all rights and remedies of the Debtors under the Designation Rights Agreement or this Order, and shall be substituted for the Debtors as the party in interest to perform under the Designation Rights Agreement and this Order.

2

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the Debtors and the Plan Administrator having complied with the Lease Sale Procedures, and that the Plan Administrator's entry into the Assumption and Assignment Agreement with BBBY Acquisition Co. LLC and A&M Properties, Inc. (collectively, "Assignee") is in the best interest of the Debtors and their estates and provides for the highest or best offer for the Lease (as defined in the Assumption and Assignment Agreement); and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor IT IS HEREBY ORDERED THAT:

1.    The Plan Administrator and Assignee (as defined in the Assumption and Assignment Agreement) are authorized to enter into and perform under the Assumption and Assignment Agreement, and to implement the Assumption and Assignment Agreement and the transactions contemplated thereunder and hereunder. The Assumption and Assignment Agreement and all of the terms and conditions thereof is hereby approved in all respects.

2.    Pursuant to sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Plan Administrator is hereby authorized and directed to (a) sell and assume and assign to Assignee, in accordance with the terms of the Assumption and Assignment Agreement, the Lease (as identified in the Assumption and Assignment Agreement), free and clear of any and all

3

(Page | 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

licenses, tenants and/or subtenants, license and concession agreements for all or any part of the Premises, and all liens, claims and encumbrances, with such license and concession agreements for all or any part of the Premises, and all liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto, and (b) execute and deliver to the Assignee such documents or other instruments as the Assignee deems necessary to assign and transfer the Lease to Assignee.

3.        Assignee has demonstrated adequate assurance of future performance and has satisfied the requirements set forth in section 365(b)(1)(C) of the Bankruptcy Code with respect to the Lease. Assignee is a good faith purchaser of the Lease within the meaning of section 363(m) of the Bankruptcy Code.

4.        There shall be no rent accelerations, assignment fees, increases or any other fees charged to Assignee or the Debtors as a result of the assumption and assignment of the Lease.

5.        Effective as of the date of entry of this Order (the "Closing Date"), the assignment of the Lease by the Plan Administrator to Assignee shall constitute a legal, valid, and effective transfer of such Lease notwithstanding any requirement for approval or consent by any person and vests Assignee with all right, title, and interest of the Debtors in and to such Lease, free and clear of all liens, claims, and encumbrances pursuant to sections 363(f) and 365 of the Bankruptcy Code.

SF 4858-1448-2584.3 08728.003

(Page | 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

6.      Any provisions in the Lease that prohibit or condition the assignment of such Lease or allow the landlord of such Lease (hereinafter, the "Landlord") to terminate, declare a breach or default, recapture, impose any penalty, condition any renewal or extension, or modify any term or condition, as a result of the assignment of such Lease constitute unenforceable anti-assignment provisions and are void and of no force and effect as against the Debtors and Assignee in connection with the assumption and assignment of the Lease. The Lease shall remain in full force and effect, without existing defaults, subject only to payment by of the appropriate Cure Costs (defined below), if any.

7.      The applicable cure costs to assume and assign the Lease (the "Cure Costs") are hereby fixed in the amount of $0.00, except as forth in this Order, on the record of the Hearing (if any), as otherwise agreed between the Landlord, the Plan Administrator, and the Assignee, or as determined by Court order, as the case may be; provided, however, that Landlord shall not be barred from seeking additional amounts from the Debtors on account of any defaults occurring between the deadline to object to Cure Costs set forth in the Assumption and Assignment Notice and the Assumption Date.

8.      Within three (3) business days of the Closing Date, the Assignee shall pay the Landlord the Cure Costs. Payment of the Cure Costs by the Assignee shall constitute the cure of all defaults arising under the Lease that are required to be cured by section 365(b)(1)(A) of the Bankruptcy Code (after giving effect to section 365(b)(2) of the Bankruptcy Code). For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall remain liable for any additional obligations under the Lease that arise under section 365(d)(3) of the

5

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

Bankruptcy Code between the date of the entry of this Order and the Closing Date. Moreover, to the extent that any such obligations are not paid in accordance with the terms of the Lease prior to the Closing Date, the Landlord shall be entitled to request, upon such notice and a hearing as the Bankruptcy Code and the Bankruptcy Rules require or this Court otherwise orders, immediate payment of such obligations under section 365(d)(3) of the Bankruptcy Code from the Debtors and their estates, and all rights of the Debtors and their estates in connection with any such request shall be reserved.

9.      Upon payment of the applicable Cure Costs, the Debtors and the Landlord are hereby barred and permanently enjoined from asserting against one another or the Assignee any default, claim, or liability existing, accrued, arising, or relating to the Lease for the period prior to the entry of this Order; provided, however, that nothing herein shall impair or prejudice the Landlord's rights with respect to the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the premises subject to the Lease with regard to events that occurred prior to the effective date of assumption and assignment of the Lease to Assignee.

10.      Assignee shall be deemed to be substituted for the Debtors as a party to the Lease and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Lease from and after the Assumption Date.

11.      The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order. The provisions of this Order authorizing the assignment of the Leases shall be self-executing, and neither the Debtors nor Assignee shall be required to

(Page | 7):
Debtors:            BED BATH & BEYOND INC., *et al.*
Case No.            23-13359-VFP
Caption of Order:   ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE
                    BANKRUPTCY CODE APPROVING THE ASSUMPTION AND
                    ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC.

execute or file assignments, consents or other instruments in order to effectuate, consummate, and/or implement provisions of this Order. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to effect, consummate, and/or implement the transactions contemplated by this Order. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to effectuate, consummate, and/or implement to the extent necessary the provisions of this Order.

12.     To the extent the Lease contains use restrictions which would otherwise prohibit Assignee from operating at the applicable leased premises in the ordinary course of its business, including any restrictions on the sale of some or all of the items and goods typically sold by Assignee, Landlord agrees that such use by Assignee is permitted for purposes of this assignment.

13.     Notwithstanding any term of the Lease to the contrary, any extension, renewal option, or other rights contained in such Lease that purports to be personal only to a Debtor or Debtors or to a named entity in such Lease or to be exercisable only by a Debtor or Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the Assignee, in accordance with the terms of such Lease. The Debtors have timely exercised any applicable extension or renewal options under the Lease, and the Lease is in all in full force and effect. The Debtors have not previously rejected the Lease and the Debtors' period to assume or reject the Lease has not otherwise expired.

14.     Notwithstanding anything in the Motion, or the Assumption and Assignment Agreement to the contrary, and except as set forth in this Order, from and after the assumption

7

(Page | 8)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

and assignment to Assignee of the Leases in accordance with this Order, Assignee shall comply with the terms of the Lease in their entirety (as may be modified in any written agreement between Assignee and the Landlord (a "Landlord Agreement")), including, without limitation, any indemnification obligations expressly contained in the Lease and any rent, common area maintenance, insurance, taxes, or similar charges expressly contained in the Lease. With respect to any provision of the Lease providing for calculation of rent based on a percentage of annual sales, for the annual period in which the Closing Date occurs, Assignee shall only be responsible for the prorated portion of percentage rent attributable to the period after the Closing Date calculated on a per diem basis.

15.    Notwithstanding any provision of the Lease (including any related reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement (each, an "REA") or any ground or master lease (each, a "Master Lease")) to the contrary, including a covenant of continuous operation or a "go dark" provision, Assignee shall not be required to operate its business from the leased premises for a reasonable period of time after the entry of this Order, in order to perform alterations and remodeling which shall be done in a manner consistent with the terms of the Lease and to replace and modify existing signage to the extent necessary to operate at the premises under as a Assignee store and consistent with its business operations and the terms of the Lease. Notwithstanding any provision of the Lease to the contrary (including any related REA or Master Lease), to the extent the Landlord's consent is required for any such alteration or signage modification, the Landlord's consent thereto shall not be unreasonably withheld, conditioned, or delayed.

8

| (Page | 9) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

16.    The Landlord shall cooperate in good faith and use commercially reasonable efforts to execute and deliver, upon the request of Assignee, any instruments, applications, consents, or other documents that may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals, or other necessary documents required for alteration, installation of signage, opening, and operating the Premises; provided that the Landlord does not incur any out of the ordinary material out-of-pocket costs as a result of such cooperation.

17.    Notwithstanding anything to the contrary in this Order or the Assumption and Assignment Agreement, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant this Order. For the avoidance of doubt, nothing, including the Lease Sale Procedures and this Order, alters or modifies the terms and conditions of any insurance policies issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and/or any agreements related thereto or effectuates a sale, assignment or transfer of any such policies or agreements or any of the rights, benefits, rights to payment, recoveries, claims and/or proceeds under such policies or agreements.

18.    The Plan Administrator is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

SF 4858-1448-2584.3 08728.003

| (Page \| 10) | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 OF THE BANKRUPTCY CODE APPROVING THE ASSUMPTION AND ASSIGNMENT AGREEMENT WITH DREAM ON ME, INC. |

19.     The Plan Administrator and Assignee are authorized to take any and all actions reasonably necessary or appropriate to consummate the Assumption and Assignment Agreement and the transactions contemplated thereunder and hereunder.

20.     In the event of any inconsistencies between this Order, the Motion, and the Assumption and Assignment Agreement, this Order shall govern.

21.     Notwithstanding Bankruptcy Rules 6004(h) or 6006(d), or any other Bankruptcy Rule or Local Rule, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

SF 4858-1448-2584.3 08728.003

EXHIBIT B

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2024 , is by and between Bed Bath & Beyond Inc. ("Assignor"), BBBY Acquisition Co. LLC and A&M Properties, Inc. (collectively, "Assignee) and EDISON TOC001 LLC ("Landlord"). All provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"), jointly administered under case *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) (the "Chapter 11 Cases") on April 23, 2023 (the "Petition Date");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume (the "Transaction") the unexpired lease between Assignor and Landlord identified on Schedule A attached hereto (the "Assigned Asset" or the "Lease") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Order Approving the Acquisition of Designation Rights Agreement Among Debtors, A&M Properties, Inc. and Edison TOC001 LLC* [Docket No. 2410] subject to approval by the Court in the Chapter 11 Cases of the proposed form of sale order acceptable to Assignee and Assignor approving this Agreement (the "Sale Order"); and

WHEREAS, Landlord consents to the assumption by Assignor and assignment to Assignee of the Lease as set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties (the "Parties") hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption. Effective upon entry of the Sale Order, but not later than February 29, 2024 or such later date agreed to in writing by Assignor, Assignee and Landlord (the "Closing"):

(a)      Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset, including, without limitation, the right to possession of the Premises.

(b)      Except as specifically set forth in this Agreement, Assignee hereby assumes all of the terms, conditions and covenants of the Lease as tenant under the Lease effective as of the Closing.

2.      Payment of Purchase Price. Within three business days of entry of the Sale Order, Assignee shall deliver the purchase price for the Assigned Asset in the aggregate amount of $200,000.00 (the "Purchase Price") plus Cure Costs, which Purchase Price includes the amounts required to be paid to Landlord in connection with the assumption and assignment of the Lease pursuant to section 365 of the Bankruptcy Code, as identified on Schedule A hereto (the "Cure Costs"), in immediately available funds wired to the account specified by Assignor; *provided* that in the event the final Cure Costs include obligations or duties not identified on Schedule A hereto or in excess of the amounts listed on Schedule A

hereto, absent written consent from Assignee to pay such additional and/or increased Cure Costs as part of its Purchase Price or Assignor's agreement to pay the same, Assignee may terminate this Agreement.

3. **Assumption of Liabilities**. Payment of the Cure Costs shall represent satisfaction of all defaults or other obligations of Assignor arising or accruing prior to the Closing under the Lease, including, but not limited to the Cure Costs and fees, charges, adjustments, or reconciliations for taxes, insurance, CAM, and other charges, whether billed or unbilled, due or not due (each a "True-Up Charge") regardless of whether such True-Up Charge relates to a period of time prior to the assignment of the Assigned Asset, but without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code. Assignee shall assume all obligations with respect to the Assigned Asset arising from and after the Closing. The Lease shall be transferred to, and remain in full force and effect for the benefit of, Assignee, in accordance with its terms, as modified herein and as may be amended. Upon assumption by Assignor and payment of the Cure Costs by Assignee, no default shall exist and any and all prior defaults under the Lease, if any, whether monetary or non-monetary, shall be deemed cured, and Assignee shall have no liability therefore.

4. **No Further Liability of Assignor**. Upon payment of the Cure Costs, from and after the Closing, Assignor and Landlord shall have no further obligations and duties to one another with respect to the Assigned Asset; provided that nothing herein shall impair or prejudice the Landlord's right to recover from the Assignor's available insurance coverage with respect to third-party claims asserted in connection with the Assignor's use and occupancy of the Assigned Asset on account of events that occurred prior to the Closing.

5. **Further Assurances**. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

6. **"As Is Where Is" Transaction**. Assignee hereby acknowledges and agrees that Assignor and the Landlord (as to the Landlord, other than the representations and warranties in the Lease) make no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset; provided, however, (i) Assignor and Landlord warrant and represent: (a) Assignor is the tenant under all of the Lease; (b) the Lease is in full force and effect; (c) the Lease, as identified on Schedule A, is complete in listing all documents comprising the Lease and there are no other agreements (written or verbal) which grant any possessory interest in and to any space situated on or in the Premises under the Lease or that otherwise give rights with regard to use of the Premises under the Lease or limit the use of the Premises; and (ii) Assignor represents and warrants that there are no service contracts for any of the Assigned Asset which will bind Assignee after the Closing and Assignor shall terminate any and all service contracts with respect to the Lease prior to Closing or as soon as reasonably practicable thereafter. Subject to the foregoing representations and warranties, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset.

7. **Sale Order**. Each party's obligation under this Agreement is expressly subject to and conditioned upon the entry of the Sale Order by the Bankruptcy Court in form and substance reasonably satisfactory to the Assignor, Assignee, and Landlord, that shall, among other things, (a) approve, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Assignor of this Agreement, (ii) the transfer and assignment of the Assigned Asset to Assignee on the terms set forth herein and free and clear of all liens, encumbrances, security interests, pledges, claims and/or other interests, and (iii) the performance by Assignor of its obligations under this Agreement; (b) authorize and empower Assignor to assign to Assignee the Lease; (c) order that, notwithstanding Rules 6004(g) and 6006(d) of the Federal Rules of

Bankruptcy Procedure, the Sale Order shall take effect immediately upon entry; (d) order that there shall be no rent accelerations, assignment fees, increases or other fees charged or chargeable to Assignee as a result of the sale and assignment of the Lease; (e) establish the Cure Costs as the amount necessary to cure all defaults under the Lease; (f) authorize Landlord to execute and deliver, upon the reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approval of other necessary documents required for the alteration, opening and operating of the Premises by Assignee; (g) find that Assignee is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, not a successor of Assignor, and grant Assignee the protections of section 363(m) of the Bankruptcy Code; (h) find that Assignee shall have no liability or responsibility for any liabilities or other obligations of the Assignor arising under or related to the Assigned Asset other than as expressly set forth in this Agreement, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity; (i) find that the assignment contemplated by this Agreement shall not be avoided pursuant to section 363(n) of the Bankruptcy Code; (j) find that all tenant contributions due and owing under the Lease have been paid in full; and (k) find that all exclusives and use restrictions contained in the Lease benefitting the Assignor continue in full force and effect, notwithstanding any closures or cessations in business operations by Assignee or Assignor.

To the extent such Sale Order is not approved by the Court, neither Assignee nor Assignor shall have any obligations under this Agreement or, solely with respect to Assignee, the entire Purchase Price shall be returned to Assignee within five (5) business days of the Court's denial or any other event that makes the entry of such Sale Order impossible, provided that Assignee (a) shall negotiate the terms of the Sale Order and modifications of the Lease (if any) with Landlord in good faith and (b) participate in the hearing to approve the Sale Order, if reasonably requested in writing by Assignor and if applicable; *provided* that such participation may be through remote attendance.

8.     Assignor's Delivery of Documents. Assignor shall deliver to Assignee each of the following: (i) an executed counterpart of this Agreement; (ii) all applicable state, county and municipal transfer declarations and any other required governmental certificates, provided that Assignor shall use commercially reasonable efforts to obtain and deliver such documentation to Assignee; (iii) if Assignor has any assignable rights under any Non-Disturbance Agreement, Reciprocal Easement Agreement, or any other agreement with respect to each Premises, an assignment of such rights executed by Assignor, subject to the consent of such assignment from the applicable counterparty; and (iv) all other documents (including assignments of operating agreements affecting the Premises and closing statements), affidavits, instruments and writings reasonably required to be executed and delivered by Assignor at or prior to the entry of the Sale Order or otherwise required by law or reasonably requested by Assignee, if not previously delivered.

9.     Compliance With Law. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

10.     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

11.     Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12.    No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

14.    Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

ASSIGNOR:
Bed Bath & Beyond Inc.

By: _____
Name: _____
Title:_____

ASSIGNEE:
BBBY Acquisition Co. LLC

By: _____
Name: _____
Title:_____

ASSIGNEE:
A&M Properties, Inc.

By: _____
Name: _____
Title:_____

STATE OF _____          )
                                     ) SS.

COUNTY OF _____       )

             And now before me, the undersigned Notary Public in and for the said County, in the State aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of BBBY Acquisition Co. LLC, and he/she, being authorized to do so, has executed the foregoing instrument for the uses and purposes therein set forth.  This is an acknowledgement certificate.  No oath or affirmation was administered to the signer with regard to this notarial act.

         GIVEN under my hand and notarial seal this _____ day of _____, 202____.

                                     _____

                                     Notary Public
                                     My Commission Expires: _____

STATE OF _____          )
                                     ) SS.

COUNTY OF _____       )

             And now before me, the undersigned Notary Public in and for the said County, in the State aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of A&M Properties, Inc., and he/she, being authorized to do so, has executed the foregoing instrument for the uses and purposes therein set forth.  This is an acknowledgement certificate.  No oath or affirmation was administered to the signer with regard to this notarial act.

         GIVEN under my hand and notarial seal this _____ day of _____, 202____.

                                     _____

                                     Notary Public
                                     My Commission Expires: _____

**LANDLORD:**
EDISON TOC001 LLC

By: _____
Name:
Title:

STATE OF _____ )
                              ) SS.
COUNTY OF _____ )

      And now before me, the undersigned Notary Public in and for the said County, in the State aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, a _____, and he/she, being authorized to do so, has executed the foregoing instrument for the uses and purposes therein set forth.  This is an acknowledgement certificate.  No oath or affirmation was administered to the signer with regard to this notarial act.

      GIVEN under my hand and notarial seal this ____ day of _____, 202__.

_____
Notary Public
My Commission Expires: _____

## SCHEDULE A

### Description of Assigned Asset

| Store No. | Address | Description of Lease | Cure Costs |
|-----------|---------|----------------------|------------|
| 3076 | 3700 West Torrance Blvd., Torrance CA | Lease Agreement, dated 12-20-2019<br><br>Operations and Easement Agreement dated April 28, 1994 between NCC Torrance/B Associates Limited Partnership and Sportmart, Inc. and recorded May 2, 1994 in Los Angeles County, California as Instrument # 94 841115 | 0 |

## EXHIBIT C

(Exhibit C to Lease Assumption Notice Available Upon Request)