| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**McDonnell Crowley, LLC**<br>115 Maple Avenue<br>Red Bank, NJ 07701<br>(732) 383-7233<br>Brian T. Crowley<br>bcrowley@mchfirm.com<br><br>-and-<br><br>**THE LAW OFFICES OF RICHARD J. CORBI PLLC**<br>1501 Broadway, 12th Floor<br>New York, NY 10036<br>(646) 571-2033<br>Richard J. Corbi (*pro hac vice* forthcoming)<br>rcorbi@corbilaw.com<br><br>*Counsel to Taussig Risk Capital Advisors, Inc.* | |
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**OBJECTION OF TAUSSIG RISK CAPITAL ADVISORS, INC. TO PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT FED. R. BANKR. P. 9019 (I) APPROVING SETTLEMENT RESOLVING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY CORPORATION; (II) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (III) GRANTING RELATED RELIEF**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Taussig Risk Capital Advisors, Inc. ("**TRCA**"), by and through its undersigned counsel, hereby files this objection (the "**Objection**")[2] to the *Plan Administrator's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 (I) Approving Settlement Resolving Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (II) Resolving, in part, Safety Proofs of Claim Nos. 10483 & 18738; (III) Granting Related Relief* (the "**Disguised Sale Motion**") [Doc. No. 2941]. TRCA also submits the *Declaration of Hugh F. Hill, IV in Support of TRCA's Objection to the Plan Administrator's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 (I) Approving Settlement Resolving Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (II) Resolving, in part, Safety Proofs of Claim Nos. 10483 & 18738; (III) Granting Related Relief* (the "**Hill Declaration**") in further support of the TRCA Objection. TRCA also submits the Declaration of Richard J. Corbi *in Support of TRCA's Objection to the Plan Administrator's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 (I) Approving Settlement Resolving Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (II) Resolving, in part, Safety Proofs of Claim Nos. 10483 & 18738; (III) Granting Related Relief* (the "**Corbi Declaration**") in further support of the TRCA Objection. In support of the Objection, TRCA respectfully states as follows:

## PRELIMINARY STATEMENT

1.    "The conduct of bankruptcy proceedings not only should be right but must seem right." *See In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966). These proceedings have been far from being right or seeming right. TRCA is not a jilted bidder seeking a "do over." Rather, TRCA is a sophisticated purchaser of captive insurance companies like non-Debtor Oak Insurance

---

[2] Capitalized terms used but not described herein shall have the meanings ascribed to them in the Disguised Sale Motion.

Company, Inc. and other insurance assets of distressed companies. In fact, TRCA immediately contacted the Debtors' advisors and submitted an indication of interest (the "**IOI**") on May 4, 2023, a week and half after the Petition Date. *See* Corbi Declaration, **Exhibit A**. TRCA informed the Debtors that Oak Insurance as well as the other insurance assets were valuable assets that a sale of which would provide immediate liquidity to the Debtors, remove extensive liabilities off their balance sheet, and provide enhanced recoveries to the general unsecured creditors. *See id.*

2.      Again, TRCA is neither a jilted bidder seeking a "do over" nor an 11th hour bidder presenting a higher bid seeking to undo an auction after the auction and disrupting a fair and equitable process. Instead, it is the conduct of the Debtors and Cobbs Allen Capital, LLC dba CAC Specialty ("**CAC**") that have resulted in this motion practice.

*TIMELINE*

3.      On May 4, 2023, TRCA submitted an IOI to the Debtors' then lead counsel, Kirkland & Ellis, LLP and other advisors listed in the Debtors' bid procedures motion and order. [Doc. Nos. 29 & 92].

4.      On May 23, 2023, TRCA entered into an NDA with the Debtors, which then granted TRCA access to the data room, upon information and belief, maintained by Lazard. *See* Corbi Declaration, **Exhibit B**.

5.      On June 1, 2023, Lazard informed TRCA that it was still working with the Debtors in order to provide additional information in response to TRCA's identification of additional assets for recovery. *See* Corbi Declaration, **Exhibit C**.

6.      After not hearing any response from the Debtors, TRCA contacted counsel for the Committee on June 26, 2023 to apprise them of TRCA's IOI and interest in moving forward with a transaction. *See* Corbi Declaration, **Exhibit D**.

7.     On July 11, 2023, the Debtors advisors' informed TRCA that it was preparing to "market their insurance portfolio" and would include TRCA in the process. *See* Corbi Declaration, **Exhibit E**.

8.     On August 17, 2023, TRCA was informed by the Debtors' then advisors, that the estate had retained CAC to market the insurance assets. TRCA immediate contacted CAC, re-sent the IOI (which they did not existed at the time), and scheduled an introductory call to move the transaction forward. *See* Corbi Declaration, **Exhibit F**.

9.     On September 22, 2023, TRCA executed another NDA with the Debtors advisors, this one with CAC. *See* Corbi Declaration, **Exhibit G**.

### *TRCA BIDS*

10.     On October 10, 2023, TRCA submitted its first letter of intent to CAC (the "**First LOI**"), subject to certain caveats based on lack of information repeatedly requested by TRCA, notably an updated actuarial report. *See* Hill Declaration, **Exhibit A**.

11.     Throughout October, November and early December of 2023, TRCA communicated with CAC in connection with updated diligence from the Debtors. CAC requested that TRCA submit their "best and final" LOI by December 11, 2023.

12.     On December 11, 2023, TRCA submitted its best and final, LOI (the "**December LOI**") to CAC. *See* Hill Declaration, **Exhibit B**. The December LOI offers, among other things, at least $1 million more to the Debtors' estates than the current Safety proposal.

13.     Despite repeated representations from CAC that Safety would submit a bid on December 11, 2023 as well, that did not occur. TRCA repeatedly requested whether Safety submitted a bid as well on the same timeframe and whether CAC's informal auction process applied equally to Safety. CAC informed TRCA that the deadlines moved for Safety. *See* Corbi

4

Declaration, **Exhibit H**.  TRCA patiently complied with the ad hoc deadlines imposed by the

Debtors in connection with the Debtors' insurance assets, but never heard anything from CAC or

other professionals of the Debtors despite repeated attempts by TRCA.

14.    Following TRCA's submission of its December LOI, the Debtors and CAC ceased all

communications with TRCA.  Attempts to contact the Plan Administrator and members of the

oversight committee went ignored.

15.    On April 2, 2024, the Plan Administrator filed the Disguised Sale Motion and a request

for this Court to hear the Motion on shortened notice.  In his request to hear the Disguised Sale

Motion on shortened notice, the Plan Administrator, in a conclusory manner without any

evidentiary support, stated that if the transactions contemplated in the Disguised Sale Motion were

not approved by April 15, 2024, then the proposed transaction would have to be revised based on a

draw of the letters of credit. *See Application for Order Shortening Time* [Doc. No. 2943].

16.    On April 3, 2024, this Court granted the Plan Administrator's requested to hear the

Disguised Sale Motion.  [Doc. No. 2944].

17.    The Disguised Sale Motion fails to inform this Court of the informal auction process

the Debtors conducted in connection with the insurance assets.  Nor does the Disguised Sale Motion

inform this Court of TRCA's December LOI and explain how the Plan Administrator's proposal is

better for the estates than TRCA's proposal.  Although the Plan Administrator styles his Motion as

a settlement pursuant to Rule 9019 and the bankruptcy claims reconciliation process, the Motion is

functionally a private sale motion in favor of Safety.  TRCA's affiliates have successfully litigated

these types of debtor requests. *See, e.g.,* Tentative Ruling *In re Verity Health System of California,*

*Inc.*, Case No. 18-2051 (Bankr. C.D. Ca. Dec. 15, 2020) (court denied debtors' private sale motion

and required the debtors to conduct an in-court auction, in which TRCA's entities were bidders).[3]

**OBJECTION**

18.    For the reasons set forth below, TRCA submits that the Plan Administrator's Disguised Sale Motion be denied and this Court should direct the Debtors should be required to comply with the Bankruptcy Code and conduct a competitive auction for the Debtors' insurance assets.

### *The Plan Administrator's Motion is a Disguised 363 Sale Motion and Should Not be Approved*

19.    Courts do not have to "rubber stamp" a proposed settlement, sale or other action proposed just "because the trustee or [debtor] so moves." *In re National Health & Safety Corp.*, Bankruptcy No. 99-18339DWS, 2000 Bankr. LEXIS 745, at \*10, 16 (Bankr. E.D. Pa. July 5, 2000) (court denied approval of settlement because it was not in the best interest of the estate despite being in the debtors' best interest). The settlement proponent bears the burden to meet the standards under Rule 9019 and Section 363 of the Bankruptcy Code. *See In re Diocese of Camden*, 653 B.R. 722, 735 (Bankr. D.N.J. 2023). Courts do not approve settlement motions when they are functionally disguised sale motions because a "compromise" of a claim is an asset of the estate that is the equivalent of a sale that implicates Section 363 of the Bankruptcy Code. *See, e.g., In re Mickey Thomson Entm't Group, Inc.*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) ((relying on *In re Martin*, 92 F.3d 389, 394-395 (3d Cir. 1996) (court denied trustee's settlement motion and directed the trustee to conduct an auction)); *In re Lage*, Case No. DL 18-02766, 2019 Bankr. LEXIS 2420, at \*1, 5 (Bankr. W.D. Mich. Aug. 1, 2019) (court denied "unlawful sale under the guise of a supposed settlement motion" because of the trustee's "complete disregard of statutory requirements and court rules"); *In re Arkoosh Produce, Inc.*, Bankruptcy Case No. 00-41817, 2003 Bankr. LEXIS 2222, at

---

[3] A true and correct copy of the Tentative Ruling is attached to the Corbi Declaration as **Exhibit I.**

*38-39 (Bankr. D. Del. July 1, 2003) (court denied approval of settlement motion because it was

structured as a settlement and sale of certain claims and litigation); *In re Cilwa*, C/A No. 15-00263-

HB, 2015 Bankr. LEXIS 3952 (Bankr. D.S.C. Nov. 18, 2015) (court denied trustee's application

"couched as a settlement"); *Burtch v. Avent, Inc.*, 527 B.R. 150, 156-157 (D. Del. 2015) (district

court reversed bankruptcy court's approval of settlement because of reduced notice parties in

interest and the proper evaluation of proposed releases); *In re Louise's Inc.*, 211 B.R. 798, 802 (D.

Del. 1997) (district court reversed settlement approval because settlement was "tainted" with issues

such as plan exclusivity, in connection with the proposed settlement motion); *In re Golden Empire

Air Rescue, Inc.*, BAP Nos. EC-07-1086-JuMkPa, EC-07-1087-JuMkPa, 2007 LEXIS 4880, at *23

(B.A.P. 9th Cir. Oct. 25, 2007) ("Setting up formal bidding procedures and allowing the bidding

process to play out would have helped assure that the highest and best price was received for the

benefit of the silent creditors.").

20.    The *Mickey Thomson* court explained that "When confronted with a motion to

approve a settlement under Rule 9019(a), a bankruptcy court is obliged to consider, as part of the

'fair and equitable' analysis, whether any property of the estate that would be disposed of in

connection with the settlement might draw a higher price through a competitive process and be the

proper subject of a section 363 sale. Whether to impose formal sale procedures is ultimately a

matter of discretion that depends upon the dynamics of the particular situation." *Mickey Thomson*,

292 B.R. at 421-422 (citations omitted).  Here, the Plan Administrator never contacted TRCA in

connection with its December LOI.  In fact, the many e-mails from TRCA representatives went

ignored.  Accordingly, this Court is not presented with any evidence that the proposed transactions

would yield the highest return to the estate.

21.    Alternatively, if this Court were to examine the Bankruptcy Rule 9019 in connection

with the proposed "settlement," the Plan Administrator has fallen woefully short of meeting those standards.

22.    The Plan Administrator has failed to demonstrate the probability of success in the litigation.    On the one hand, the Plan Administrator believes that his chances are "good" in prevailing in any litigation with Safety, but "does not have the resources to engage in such litigation." *See* Disguised Sale Motion, ¶ 27.    However, the Plan Administrator fails to disclose the cash in the bankruptcy estate, the burn rate each month and any litigation analysis of the claims against Safety.    A settlement proposed must present "legal or factual support" sufficient for the court to "evaluate the reasonableness" of the settlement.    *In re DiStefano*, Case No. 16-10694, 2022 Bankr. LEXIS 2450, at *16 (Bankr. N.D.N.Y. Sept. 6, 2022) (denying settlement motion due to "dearth of information provided").    Therefore, this Court cannot approve the proposed transactions.

23.    Furthermore, the Plan Administrator makes conclusory statements that the litigation with Safety would be complex, costly and diminish distributions to creditors. *See* Disguised Sale Motion, ¶ 28.    A bankruptcy court may not simply "t[ake] the trustee's word on litigation costs." *In re Am. Reserve Corp.*, 841 F.2d 159, 163 (7th Cir. 1987).    There must be "evidence of what the expected litigation costs were," such that the bankruptcy court may "independently evaluat[e]" the asserted risks.    *Id.*    Yet, the Plan Administrator's assertions lack specificity in connection with the litigation costs and its negative impact on creditors distributions.    Accordingly, this Court cannot approve the Safety settlement transactions. *See In re America's Inc. Ctr. v. Nagel Rice LLC*, No. 20-1506, 2021 U.S. App. LEXIS 24008, at *4-5 (3d Cir. Aug. 12, 2021) (Third Circuit reversed bankruptcy court's approval of settlement motion because no evidence was presented regarding the trustee's probability to obtain a higher judgment had the matter proceeded to litigation as compared

to the cost of the trustee's fees); *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 835 (Bankr. D. Del. 2008) (court did not approve settlement because while the issues were complex and litigation would be expensive and cause delayed creditor distributions, no evidence was presented that such litigation would negatively impact the estate that held over $60 million).

24.    A bankruptcy court may not simply "t[ake] the trustee's word on litigation costs." *In re Am. Reserve Corp.*, 841 F.2d 159, 163 (7th Cir. 1987). There must be "evidence of what the expected litigation costs were," such that the bankruptcy court may "independently evaluat[e]" the asserted risks. *Id.*

25.    The proposed transactions by the Plan Administrator are not in the paramount interests of the estate going forward in light of the competing bid.

### *TRCA Has Standing to Prosecute this Objection to the Disguised Sale Motion*

26.    It is well established that bidders usually do not have standing to object to sale, except in an appeal. *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997). However, a bidder may have standing to object to a sale on the grounds that there were irregularities in how the auction and process was conducted. *In re Family Christian, LLC*, 533 B.R. 600, 620-21 (Bankr. W.D. Mich. 2015). Although the Disguised Sale Motion does not explicitly seek approval of the proposed Safety transactions under Section 363 of the Bankruptcy Code, TRCA submits that it has standing because its primary objection is the process in which the settlement/sale was conducted. TRCA's perspective and insight into the infirmities into the Plan Administrator's process is something this Court should welcome and consider, especially given TRCA's involvement behind the scenes in this case from the Petition Date. *See In re Jon J. Peterson, Inc.*, 411 B.R. 131, 135 (Bankr. W.D.N.Y. 2009) (court held that bidder had standing explaining that "[as] parties with interest, prospective bidders may be positioned to offer valuable insight and perspective. Though arguably

9

not parties in interest, they are welcomed to appear at least as friends of the court.")

27.    Furthermore, courts within this circuit have held that affected parties are "parties in interest" permitted to object to a proposed settlement agreement even if the party lacks standing for other purposes. *See Arkoosh Produce*, 2003 Bankr. LEXIS 2222, at *24 (relying on *Drexel Burnham Lambert Group, Inc. v. Claimants Identified on Schedule I (In re Drexel Burnham Lambert Group, Inc.)*, 995 F.2d 1138 (2d Cir. 1993)); *see also In re Diocese of Camden*, Case No. 20-21257, 2022 Bankr. LEXIS 2244, at *11 (Bankr. D.N.J. Aug. 12, 2022) (insurer standing in discovery and confirmation disputes). In fact, courts have heard the merits of a dispute when one of the litigants was not injured at all. *See, e.g., 303 Creative, LLC. v. Enis*, 143 S. Ct. 2298 (2023).

28.    Accordingly, this Court should consider TRCA's merits objection.

### *The Plan Administrator Has Not Exercised its Sound Business Judgment*

29.    In conducting a sale under Section 363 of the Bankruptcy Code, a debtor has a fiduciary duty to maximize value by selecting the highest and best offer for its assets. *In re Flour City Bagels, LLC*, 557 B.R. 53, 78 (Bankr. W.D.N.Y. 2016) (court denied debtors' sale of assets because, among other things, the debtors failed to carry their burden that the sale price was indeed the highest and best for the estate). For a sale to be approved pursuant to section 363 of the Bankruptcy Code, the debtor must have exercised sound business judgment. *In re Ditech Holding Corp.*, 606 B.R. 544, 580 (Bankr. S.D.N.Y. 2019) ("To obtain court approval of such a sale, the debtor or trustee must prove that the sale is an exercise of its sound business judgment."). "As fiduciaries, the debtor in possession and its managers are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property." *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) (citations omitted). "The job of a debtor-in-possession [is] to get the creditors paid." *In re Ionosphere Clubs, Inc.*, 113 B.R.

164, 169 (Bankr. S.D.N.Y. 1990) (citations omitted). It is "to maximize the value of the estate, not of a particular group of claimants." *Matter of Cent. Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1987).

30. In order for a debtor to exercise its business judgment, it must be the case that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Wonderwork, Inc.*, 611 B.R. 169, 195 (Bankr. S.D.N.Y. 2020) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). *See also In re 8 West 58th Street Hospitality, LLC*, 2017 WL 3575856, *3 (Bankr. S.D.N.Y. 2017) (explaining the standard for approval of a sale under section 363 is whether the debtor exercised sound business judgment, and that business judgment requires the directors of a corporation to act on an informed basis).

31. The Debtors would like to convince the Court that the Safety transaction is one which results from a "good faith effort to provide the highest available recoveries to the various stakeholders under the totality of the circumstances," *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 313 (Bankr. S.D.N.Y. 2016), but that is simply not the case. The Motion neglects to inform the Court that TRCA and its representatives submitted an IOI to the Debtors' representatives a week and half after the Petition Date to discuss the purchase of the insurance assets, engaged with the Debtors and later Plan Administrator representatives repeatedly in connection with its bid, and submitted multiple LOIs for the insurance assets. By leaving out numerous material facts regarding TRCA's efforts to purchase the Debtors' insurance assets set forth above, the Disguised Sale Motion is misleading as it paints a picture of a robust and good faith effort where in fact there was none.

32. Additionally, the Disguised Sale Motion lacks adequate assurance that the proposed

11

Safety transaction reflects an accurate valuation since the Debtors failed to test the insurance
assets' market value pursuant to a court-approved bidding procedures process or even a quasi-
auction like market check process. *See In re Planned Systems, Inc.*, 82 B.R. 919, 922-923 (Bankr.
S.D. Ohio 1988) (court denied debtors' private sale and ordered the debtors to conduct a public
auction because evidence was not presented that the private sale to the proposed private buyer or
respondent buyer was in the best interests of the debtors' estates); *In re Innkeepers USA Tr.*, 442
B.R. 227, 232 (Bankr. S.D.N.Y. 2010) (concluding the debtors did not exercise due care "in
electing to move forward with [a] plan term sheet and the proposed valuation implied therein"
after observing "[t]he Debtors did not run any marketing process" nor "contact[] any potential
investors outside the capital structure . . . .").

***The Court Should Direct the Plan Administrator to Conduct an Auction of the Debtors'
Insurance Assets to Facilitate a Competitive Sale Process that Will Maximize Value to the
Debtors' Stakeholders***

33.    The Debtors have a fiduciary duty to maximize the value of their estate by selecting
the highest or otherwise best bid for their assets. *See In re Moore*, 608 F.3d 253, 263 (5th Cir.
2010); *see, e.g., In re GSC, Inc.*, 453 B.R. 132, 169 (Bankr. S.D.N.Y. 2011); *In re Atlanta
Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("It is a well-established
principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with
respect to such sales is to obtain the highest price or greatest overall benefit possible for the
estate.").

34.    In the context of a section 363 sale, a bankruptcy court has "broad discretion and
flexibility . . . to enhance the value of the estates before it," including by reopening bidding to
consider a higher proposal from a new party. *In re Metaldyne Corp.*, 409 B.R. 661, 668–69 (Bankr.
S.D.N.Y. 2009) (quoting *In re Fin. News Network, Inc.*, 980 F.2d 165, 169 (2d Cir. 1992)); *In re*

*Fin. News Network, Inc.*, 980 F.2d 165, 170 (2d Cir. 1992) ("There are cases where the bankruptcy

court's discretion must be sufficiently broad so that in making its decision it can compass these

competing considerations [of finality in the bidding process and fairness to the bidders against the

interests of creditors in securing the highest sales price] as best it can.")). The Court should not

follow "rigid adherence to [bidding] procedures that govern the sale as to elevate them over the

substance of a bankruptcy court's principal responsibility, which is to secure for the benefit of

creditors the best possible bid." *Metaldyne*, 409 B.R. at 668–69 (citations and quotations omitted).

*See also In re G.S. Distrib., Inc.*, 331 B.R. 551, 559-560 (Bankr. S.D.N.Y. 2005) (bankruptcy court

did not approve private sale proposed by debtors because such private sale was not in the best

interest of the estate); *In re Global Crossing, Ltd.*, 295 B.R. 726, 745 (Bankr. S.D.N.Y. 2003)

(court explained that: "If this Court were to believe, for half a second, that the Debtors spurned a

better offer to the detriment of their fiduciary duties, this Court would not hesitate to invoke its

powers."); *Peterson*, 411 B.R. at 137 (court denied approval of bidding procedures and required

the debtors to re-run the auction where all bidders were subject to the same treatment and

procedures); *In re Las Cruces Country Club, Inc.*, 585 B.R. 239, 248 (Bankr. D.N.M. ) (court

denied sale motion and directed the trustee to conduct a public auction of the assets "to ensure the

integrity of the sale process" and because "the mediator's de facto auction of the estate's assets

was not a transparent process subject to adequate judicial oversight."); *In re G&D Inv. Props.,*

*LLC*, Case No. 12-61081, 2014 Bankr. LEXIS 4946, at *17-19 (Bankr. W.D. Mich. June 5, 2014)

(court denied plan sale, held the auction void and directed the debtor to conduct an auction of the

debtor's equity in compliance with notice and marketing requirements pursuant to Section 363 of

the Bankruptcy Code and *Bank of America Nat. Trust and Sav. Ass'n v. North LaSalle Street*

*Partnership*, 526 U.S. 434 (1999)); *In re Hickey Properties, Inc.*, Case No. 94-10180, 1995 Bankr.

LEXIS 595, at *11-12 (Bankr. D. Vt. Mar. 23, 1995) (court directed auction of debtor's equity post-confirmation to determine proper value of the equity interests).

35. Indeed, in *In re Sunland, Inc.*, 507 B.R. 753, 760 (Bankr. D.N.M. 2014), the bankruptcy court reopened the auction process where the post-sale bid was approximately 25% higher than the prevailing bid—noting that the overbid "is too high for the Court to ignore." *Id.* at 760; *see also In re Muscongus Bay Co.*, 597 F.2d 11, 12-13 (1st Cir. 1979) (affirming bankruptcy court's decision to consider a higher upset bid where the "estate gained a 21.5% Price increase by the extension of the bidding period"); *In re GGSI Liquidation, Inc.*, 280 B.R. 425 (N.D. Ill. 2002), *aff'd*, 368 F.3d 761 (7th Cir. 2004) (decision to consider later bid that was 16% higher than the winning bid at the auction was not an abuse of discretion). Similarly, in *In re Food Barn Stores, Inc.*, Eighth Circuit Court of Appeals affirmed the lower court's decision to reopen an auction when a higher bid was announced at the sale hearing. 107 F.3d 558, 564-568 (8th Cir. 1997). Here, the TRCA bid in the December LOI, which remains subject to higher and better offers, represents $1 million more in immediate cash consideration paid to the Debtors' estates than the current transaction contemplated in the Disguised Sale Motion. Therefore, the Court cannot ignore the materially higher bid of TRCA.

36. There is no question that the TRCA offer is higher and better than the purported Safety transaction proposal. Accordingly, the Court cannot approve the Disguised Sale Motion in the face of the superior bid by TRCA.

## *Because the Debtors and Plan Administrator Conducted an Informal Auction Process, this Court Must Convert this Motion Practice to a Formal Auction Process*

37. The Debtors have a fiduciary duty to maximize the value of their estate by selecting the highest or otherwise best bid for their assets. *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010); *see, e.g., In re GSC, Inc.*, 453 B.R. 132, 169 (Bankr. S.D.N.Y. 2011); *In re Atlanta*

14

*Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

38.  Specifically, "[t]he duty to seek the best available price applies only when a company embarks on a transaction on its own initiative or in response to an unsolicited offer that will result in a change of control." *Lyondell Chemical Co. v. Ryan*, 970 A.2d 235, 242 (Del. 2009). This duty applies equally to chapter 11 debtors conducting a process that "constitute[s] an auction." *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992). "In an auction [in a chapter 11 case], the officers and directors of [the debtor] have a duty, analogous to the duty in *Revlon*, to attract the highest price for the estate." *Id.* (relying on *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986)); *see also LTV Steel Co., Inc.*, 333 B.R. 397, 410 (Bankr. N.D. Ohio 2005) ("[W]here a board initiates an active bidding process, such as that which occurred throughout the LTV Steel bankruptcy case, so-called *Revlon* duties are triggered, and the deferential standards of the business judgment rule do not apply.")

39.  Here, the Debtors have "initiate[d] an active bidding process" for the insurance assets of Bed, Bath & Beyond between Safety and TRCA. *LTV Steel*, 333 B.R. at 410. The substance of the process "constitute[d] an auction." *Integrated Res.*, 147 B.R. at 659.

40.  In the context of a section 363 sale, a bankruptcy court has the ability to reopen an auction, especially to address irregularities in the process. *See In re Global Crossing, Ltd.*, 295 B.R. 726, 745 (Bankr. S.D.N.Y. 2003) (court explained that: "If this Court were to believe, for half a second, that the Debtors spurned a better offer to the detriment of their fiduciary duties, this Court would not hesitate to invoke its powers."); *In re Financial News Network, Inc.*, 980 F.2d

15

165, 170 (2d Cir. 1992) (affirming the district court's ruling allowing the bankruptcy court to

reopen the auction); *In re Food Barn Stores, Inc.*, 107 F.3d 558 at 568 (affirming the decision to

reopen bidding to consider and accept higher offers, placing substantial emphasis on what is in the

best interest of the estate when deciding whether to reopen bidding in a properly conducted

auction); *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 762-63 (7th Cir. 2004) (affirming the

bankruptcy court's approval of the debtors' decision to reopen bidding upon receiving a higher bid

after the close of the auction and observing that "financial gain for the estate and its creditors might

suffice as a basis for reopening the bidding without an additional showing that the initial bids were

grossly inadequate or that the original bidding was tainted by fraud or some other irregularity");

*In re W. Biomass Energy, LLC*, Case No. 12-21085, 2013 Bankr. LEXIS 3166, at *6-9 (Bankr. D.

Wy. Aug. 3, 2013) (court reopened auction because, *inter alia*, the auction benefitted only one

party and there were other irregularities); *In re Fresh Acquisitions, LLC*, Aug. 24, 2021 Hearing

Transcript, 207:15-16, 22-23; 208:21-23, Case No. 21-30721 [Doc. No. 399] (Bankr. N.D. Tex.

Aug. 24, 2021) (bankruptcy court denied bid procedures motion because, among other things, the

purchase price was not indicative of fair value and no solid evidence existed in connection with

what was being compromised, the merits and collectability of claims).[4]

41.    This process has consisted of irregularities, discrepancies and other infirmities. The

pattern of behavior of the Debtors and CAC raises serious questions about the process and requires

this Court's intervention.

42.    The only way to remedy these defects is for the Court to deny the Disguised Sale

Motion and direct the Plan Administrator to conduct an auction of the Debtors' insurance assets.

---

[4] A true and correct copy of the *Fresh Acquisition* Aug. 24, 2021 Hearing Transcript is attached to the Corbi
Declaration as **Exhibit J**.

## RESERVATION OF RIGHTS

43.   TRCA reserves the right to supplement and/or amend this Objection.

44.   In the event this Court conducts an evidentiary hearing in connection with this motion practice, TRCA reserves all discovery rights and the right to conduct depositions of the following:

- Brendan Shea (Lazard);

- Ross Redefeld (CAC);

- Andre Eichenholtz (CAC);

- Michael Goldberg (Plan Administrator);

- Members of the Oversight Committee as set forth in the *Notice of Filing of Amended Plan Supplement* [Doc. No. 2161];

- Various advisors of the Debtors' estates.

*[remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, TRCA respectfully requests that this Court enter an order denying the Disguised Sale Motion, direct the Plan Administrator to conduct an auction for the Debtors' insurance assets, and granting such other, further and different relief as this Court deems just, proper, and equitable.

**McDonnell Crowley, LLC**
*Co-Counsel to Taussig Rick Capital Advisors, Inc.*

By:___*/s/ Brian T. Crowley*_____
BRIAN T. CROWLEY

-AND-

**The Law Offices of Richard J. Corbi PLLC**
*Co-Counsel to Taussig Risk Capital Advisors, Inc.*

By:___*/s/ Richard J. Corbi*_____
RICHARD J. CORBI
(*PRO HAC VICE* FORTHCOMING

Dated: April 11, 2024