UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**McDonnell Crowley, LLC**
115 Maple Avenue
Red Bank, NJ 07701
(732) 383-7233
Brian T. Crowley
bcrowley@mchfirm.com

-and-

**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
1501 Broadway, 12th Floor
New York, NY 10036
(646) 571-2033
Richard J. Corbi (*pro hac vice* forthcoming)
rcorbi@corbilaw.com

*Counsel to Taussig Risk Capital Advisors, Inc.*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

## <u>DECLARATION OF RICHARD J. CORBI, ESQ.</u>

I, Richard J. Corbi, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein:

1.     I am an attorney-at-law of the State of New York.  I am the founder of The Law Offices of Richard J. Corbi PLLC.  My office is located at 1501 Broadway, 12th Floor, New York, New York 10036.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

2.      I submit this declaration (the "**Declaration**")[2] in support of the Objection to the *Plan Administrator's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 (I) Approving Settlement Resolving Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (II) Resolving, in part, Safety Proofs of Claim Nos. 10483 & 18738; (III) Granting Related Relief* [Doc. No. 2941] and the *Declaration of Hugh F. Hill, IV in Support of TRCA's Objection to the Plan Administrator's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 (I) Approving Settlement Resolving Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (II) Resolving, in part, Safety Proofs of Claim Nos. 10483 & 18738; (III) Granting Related Relief* (the "**Hill Declaration**") in further support of the TRCA Objection.

3.      I am counsel to TRCA in these Chapter 11 Cases.

4.      I am simultaneously filing an application for *pro hac vice* admission to this Court in this Case.

5.      A true and correct copy of the IOI submitted to the Debtors on May 4, 2023 is attached hereto as **Exhibit A**.

6.      A true and correct copy of the May 23, 2023 e-mail notifying the Debtors of the executed NDA is attached hereto as **Exhibit B**.

7.      A true and correct copy of the e-mail dated June 1, 2023 from Lazard informing TRCA that it was still working with the Debtors in order to provide additional information is attached hereto as **Exhibit C**.

8.      A true and correct copy of the email dated June 26, 2023 in which TRCA contacted counsel for the Committee to apprise them of TRCA's IOI is attached hereto as **Exhibit D**.

---

[2] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Disguised Sale Motion or Objection, as applicable.

9.      A true and correct copy of the e-mail dated July 11, 2023 from the Debtors advisors' informing TRCA that it was preparing to "market their insurance portfolio" and would include TRCA in the process is attached hereto as **Exhibit E**.

10.      A true and correct copy of the e-mail dated August 17, 2023 from the Debtors informing TRCA that the estate had retained CAC to market the insurance assets and TRCA's e-mail contacting CAC with the IOI (which they did not know existed at the time), are attached hereto as **Exhibit F**.

11.      A true and correct copy of the e-mail dated September 22, 2023 in which TRCA executed another NDA, this time to CAC, is attached hereto as **Exhibit G**.

12.      A true and correct copy of the e-mail dated December 11, 2023 from TRCA to CAC in connection with Safety's timeline to submit a bid and TRCA's frustration that different deadlines applied to Safety is attached hereto as **Exhibit H**.

13.      A true and correct copy of the Tentative Ruling from *In re Verity Health System of California, Inc.*, Case No. 18-2051 (Bankr. C.D. Ca. Dec. 15, 2020) is attached hereto as **Exhibit I**.

14.      A true and correct copy of the ruling portion of the August 24, 2021 Hearing Transcript from *In re Fresh Acquisitions, LLC*, Case No. 21-30721 [Doc. No. 399] (Bankr. N.D. Tex.) is attached hereto as **Exhibit J**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Dated:  April 11, 2024                    **THE LAW OFFICES OF RICHARD J. CORBI PLLC**

                                          _/s/ Richard J. Corbi_
                                          Richard J. Corbi, Esq. (_pro hac vice_ forthcoming)
                                          1501 Broadway, 12th Floor
                                          New York, NY  10036
                                          Telephone:  (646) 571-2033
                                          Email: rcorbi@corbilaw.com

## Exhibit A



**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor

New York, NY 10036

May 4, 2023

**VIA E-MAIL**

Joshua Sussberg, Esq.
Kirkland & Ellis LLP
601 Lexington Ave.
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Email: joshua.sussberg@kirkland.com

Re:   *In re Bed Bath & Beyond, Inc., et al.*, **Case No. 23-13359 (VFP) (Bankr. D.
N.J.) – Taussig Risk Capital Advisors Indication of Interest of Oak Insurance
Company, Inc.**

Dear Ms. Sussberg:

My firm is counsel to Taussig Risk Capital Advisors.  We write in connection with the
Chapter 11 proceedings of *In re Bed Bath & Beyond, Inc., et al.*, pending in the Bankruptcy Court
for the District of New Jersey, Case No. 23-13359, and are pleased to submit herewith our
indication of interest to acquire 100% of the captive insurance assets (the "***Insurance Assets***") of
the non-debtor affiliate Oak Insurance Company, Inc.,[1] (the "***Debtors***") under the terms and
conditions set out in this Indication of Interest (the "***IoI***").  The potential acquisition of the Debtors'
Insurance Assets by Taussig Risk Capital Advisors ("***TRCA***")[2] is hereafter referred to as the
"***Transaction***."

1.   **Transaction rationale**

TRCA is an investment management firm that, among other things, purchases captive and
over-capitalized self-insurance programs of financially distressed and stressed companies both in
and out of bankruptcy proceedings.

TRCA recovers this paid-in equity for companies in bankruptcy by: (i) liberating excess
collateral; (ii) providing immediate liquidity the Debtors' estates; (iii) assuming the liability
exposure; (iv) covering ongoing direct and indirect costs; and (v) eliminating the day-to-day

---

[1] *See* Exhibit B of *Declaration of Holly Etlin, Chief Restructuring Officer and Chief Financial Officer of Bed, Bath
& Beyond, Inc., in Support of the Debtors Chapter 11 Petitions and First Day Motions* [Doc. No. 10].

[2] Attached as **Exhibit A** is a tear sheet generally describing TRCA's business.

O: (646) 571-2033      M: (516) 582-0649      rcorbi@corbilaw.com      www.corbilaw.com



managerial burden.   Attached to this IoI is memorandum detailing TRCA's experience and methodologies as well as pleadings from TRCA's attempted captive insurance purchase in *In re Verity Health System of California, Inc., et al.,* Case No. 18-20151 (Bankr. C.D. Ca.) ("***Verity***").[3] TRCA is currently involved in several chapter 11 proceedings purchasing insurance assets.

## 2.  Interest

Our IoI would entail the acquisition of 100% of the Insurance Assets.

The IoI is based on (1) the information you have provided us with to date and (2) under the following assumptions and conditions:

- The information provided to us is true and correct;

- More detailed financial and commercial information (checklist to be provided) will be provided to TRCA to come to an indicative offer;

- 100% of the Insurance Assets;

- Negotiations on a transaction are on an exclusive basis;

- Access to all available information related to Debtors' as well as its management, in the presence of a member of a representative of the Debtors;

- The transaction will not have a materially negative impact on the business relationships of the Debtors', including, but not limited to, its customers or/and its strategic partners.

## 3.  Next steps

TRCA asserts that it has the required team and resources to execute a Transaction in a swift and efficient manner.  Once delivered with the necessary information, TRCA can prepare a detailed indicative bid.

The required information to come to an indicative bid includes:

- Group chart and organizational structure

- Financials:

---

[3] Attached as **Exhibits B-D** are certain pleadings filed by TRCA in the Verity chapter 11 case.



o   Financial statements and actuarial materials related to the captive or collateralized self-insurance program;

o   Any other relevant materials you may already have regarding your insurance program;

o   Most recent loss run from a third-party administrator or insurer.

o   Actuarial reports.

After acceptance of an indicative bid, TRCA will perform due diligence and finalize definitive documentation.

**4.  Exclusivity**

TRCA and the Debtors are mutually granted, to one and the other, signing exclusivity on the terms of this IoI for a period commencing on the date of this IoI and ending on May 28, 2022, at 11:59 p.m. (**eastern standard time**)[4] (the "***Exclusivity Period***").  During the Exclusivity Period the Debtors shall not directly or indirectly sell or transfer or enter into any agreement or arrangement (whether oral or written and whether or not conditional) to sell or transfer, any material portion of the Insurance Assets of the Debtors subject matter of this Transaction.  The exclusivity period shall be automatically renewed with periods of 1 month unless one of the parties terminates the exclusivity period with two weeks' written notice.

**5.  Costs**

Each party shall bear its own costs relating to the negotiation, preparation, execution and performance of definitive agreements and the Transaction contemplated by those definitive agreements.  TRCA reserves the right to seek a break-up fee and expense reimbursement from the Debtors' estates in the event that TRCA is designated as a stalking horse bidder for the Insurance Assets.

**6.  Duration of provisions of the IoI**

The provisions of this IoI can be terminated by either party in the event in the reasonable opinion of that party any one or more of the conditions precedents to come to a Transaction is unsatisfied and is, in the reasonable opinion of the terminating party, unlikely to be satisfied.

---

[4] The same deadline as bids are due pursuant to the bidding procedures order entered on April 25, 2023 [Doc. No. 92].



Termination in accordance with this paragraph will be without any liability on the part of the terminating party and will have immediate effect, except for sections 5, 7 and 8 which will survive termination.

**7.  Confidentiality**

TRCA and the Debtors agree to keep this bid letter and its content strictly confidential, unless and until, TRCA permits this IoI to be disclosed connection with the Debtors' bankruptcy proceedings.

**8.  Governing law/Jurisdiction**

This IoI and the obligations of the Parties shall be governed by and construed in accordance with the laws of New York, without regard to its conflict of law provisions and the Parties subject themselves to the jurisdiction of the Bankruptcy Court for the District of New Jersey.

We look forward to hearing from you shortly.

Very truly yours,

*/s/ Richard J. Corbi*

Richard J. Corbi

cc:    Hugh Hill (hhill@taussigcapital.ch)
Johnathon Baque (jbaque@tci-advisors.com)
Emily E. Geier (emily.geier@kirkland.com)
Derek I. Hunter (derek.hunter@kirkland.com)
Michael D. Sirota (msirota@coleschotz.com)
Warren A. Usatine (wusatine@coleschotz.com)
Felice R. Yudkin (fyudkin@coleschotz.com)
David S. Kurtz (david.kurtz@lazard.com)
Jason Wooten (jason.wooten@lazard.com)
Christian Tempke (christian.tempke@lazard.com)
Brendan Shea and Erik Overman (project.butterfly.2023.wg@lazard.com)

enclosures

## **Exhibit A**



# GENERATING LIQUIDITY IN BANKRUPTCY FROM

## LEGACY INSURANCE ASSETS

MARCH 2021

Insurance assets can be a

# HIDDEN SOURCE OF LIQUIDITY

...but this capital is often trapped



# CAPTIVE INSURERS

## & High Deductible Self-Insurance

Captive and self-insurance programs are commonly over-capitalized relative to actuarial liability estimates. This is done to ensure solvency in even the most-extreme circumstances.

Recovering this paid-in equity for companies in bankruptcy often takes years and comes at significant expense.

Taussig helps these companies by:

➢ Liberating excess collateral

➢ Providing immediate liquidity

➢ Assuming the liability exposure

➢ Covering ongoing direct and indirect costs

➢ Eliminating the day-to-day managerial burden



# WHAT WE DO

Although each situation is different, our client needs
typically fall into the following buckets:

## Assume the Obligation to Pay Claims

We will assume the obligation to pay claimants, reimburse (fronting) insurers or arrange for replacement policies.  Taussig assumes collateral obligations to insurers, bonding companies, regulators and other parties

## "Stand in Your Shoes"

We assume direct and indirect costs related to legacy insurance programs, relieving you from the managerial burden, expense and economic risks

## Manage Legacy Program

We manage the legacy program and risk bearing entities.  This includes oversight of the third-party administrators, maximizing reinsurance recoveries, working with regulators to name just a few of the post-transaction services

TAUSSIG RISK
CAPITAL ADVISORS

# OUR CLIENTS

Our best fit aligns with the following:

## Business  Circumstances

➢ Bankruptcy / Pre-bankruptcy

➢ Financial Distress

➢ Acute Liquidity Needs

➢ Fundamental Corporate Change
  (M&A, restructuring, etc.)

## Self-insurance Programs Relating to:

➢ Workers Compensation

➢ General Liability

➢ Auto / Vehicle

➢ Environmental Remediation

➢ Victim's Tort Claimants Trust Resolution



# GETTING STARTED

We can submit a proposal *quickly* with just the following information:

Financial statements and actuarial materials related to the captive or collateralized self-insurance program

Any other relevant materials you may already have regarding your insurance program

Most recent Loss Run from a third-party administrator or insurer



TAUSSIG RISK
CAPITAL ADVISORS

Example:

# CAPTIVE INSURER

Captive Insurance Companies and other self-insurance entities are typically excluded from the bankruptcy estate, as insurance entities are handled by state regulators and not bankruptcy courts. This can lead to significant equity value (i.e. more assets than liabilities) trapped and inaccessible.

Taussig Risk Capital Advisors can solve this by purchasing the company for cash, and its assets and liabilities at negotiated discount of the equity value.

Investors gain the opportunity to manage the assets of the captive (which are typically all-cash / cash equivalents pre-acquisition) for the duration of the run-off period.

Taussig Risk Capital Advisors manages the captive and seeks to maximize returns by minimizing its liabilities.

## MODEL EXAMPLE:

➢ Bankrupt Company is paid cash

➢ Investors take ownership of the remaining balance sheet

➢ Taussig Risk Capital Advisors manages the Captive Insurer

➢ Final Net Outcome is dependent on liabilities paid and the profit the investor can realize on assets

| CAPTIVE INSURANCE COMPANY | BALANCES TODAY | POST CLOSING |
|---|---|---|
| Assets | $10,000,000 | Held by Investors (managed by Investor) |
| Liabilities | ($7,000,000) | Held by Investors (managed by Taussig) |
| Equity | $3,000,000 | Bankrupt Company is paid a % of equity in cash |


TAUSSIG RISK
CAPITAL ADVISORS

Private and Confidential

# HEALTH PLAN AUDIT & RECOVERY

**Over 70%** of large medical bills submitted to employer self-funded healthcare and worker's compensation insurance plans contain excessive, incorrect or duplicative charges.

Taussig helps companies that manage these plans recover overpayments...and we do it **entirely on contingency.**



*\*Data based on an ongoing review of medical bills in excess of $4,000 submitted to the self-funded employee health insurance plan of a top-5 US retailer.*

Why the
# OPPORTUNITY EXISTS

Massive inefficiency within the healthcare market **has lead to systemic billing inaccuracies across the industry** – and it is unlikely to change anytime soon.

These overcharges are primarily the result of:

➢ Incompatible systems and complex billing rates across healthcare providers

➢ A lack of uniformity around procedures, approaches to treatment, and lengths of treatment

➢ Large informational asymmetry between providers (hospitals/doctors) and payors (claims administrators, insurers, patients); and

➢ Misaligned economic incentive for providers by linking compensation to a by task "coding" (i.e. piece-work) system.



# RECOVERY & FEES

Potential recovery amounts vary, but on average, our clients should expect to recover ~10% of overall healthcare spend over time.

The available legal and procedural remedies for recovering past overpayments are particularly favorable to companies that are insolvent, in bankruptcy, or in wind-down. The law defines these erroneous and excessive payments as "fraudulent" and extends the lookback window on recovery up to four years for these companies.

Taussig is paid only on success at a rate of 30% of recovered assets.



Working with some of America's largest companies to review and efficiently manage their employee healthcare spending has led us to conclude that, when reviewed over time, **there are always overpayments.**



About
# TAUSSIG RISK CAPITAL ADVISORS



### JOE TAUSSIG | CEO
**TAUSSIG CAPITAL HOLDINGS**

Joe Taussig is the founder of Taussig Capital Holdings, a recognized pioneer in structured insurance solutions. Joe has advised on over 30 Structural Alpha vehicles, including publicly traded companies Greenlight Capital Reinsurance and Third Point Reinsurance.

Joe served as a U.S. Marine in Vietnam as a Force Recon Patrol leader (the Marine's version of Navy SEALS) and was an Infantry Company Commander during the Battle of Hué City.



### HUGH HILL | CEO
**TAUSSIG RISK CAPITAL ADVISORS**

Hugh is focused on the intersection of insurance and financial markets. He is an attorney with expertise in the U.S. and international legal systems. Hugh has deep knowledge of bankruptcy law and cross-border finance and compliance, specializing in insurance and reinsurance.

Hugh is the Founder and Managing Member of a New York based SEC-licensed broker-dealer. He has served as a director, officer, and internal and external counsel for several companies, including a New York based insurance company and several large private equity firms.

TAUSSIG RISK
CAPITAL ADVISORS





Taussig Risk Capital Advisors

info@tci-advisors.com

939-545-0568

# DISCLAIMERS

This presentation (the "Presentation") does not constitute an offer to sell or a solicitation of an offer to buy any security and may not be relied upon in connection with the purchase or sale of any security. Any such offer would be made only by means of a formal offering memorandum. No such offer or solicitation will be made prior to the delivery of a confidential investment memorandum, private placement memorandum, or similar offering documents ("Offering Documents"). Offers and sales will be made only in accordance with applicable securities laws and pursuant to the Offering Documents, the limited partnership agreement, subscription agreements and other definitive documentation.

The information set forth herein does not purport to be complete and is qualified in its entirety by reference to the Offering Documents. This Presentation is not a part of or supplemental to the Offering Documents or such definitive documentation. This Presentation will be superseded in its entirety by the Offering Documents and any supplements thereto.

Projections and other forward-looking information contained in this Presentation, including all statements of opinion and/or belief, are based on a variety of estimates and assumptions, including, among others, market analysis, estimates and similar information. These estimates and assumptions are inherently uncertain and are subject to numerous business, industry, market, regulatory, competitive and financial risks. There can be no assurance that the assumptions made in connection with the projections will prove accurate, and actual results may differ materially, including the possibility that an investor may lose some or all of its invested capital.

This presentation is confidential. By acceptance hereof, you agree that (i) the information contained herein may not be used, reproduced or distributed to others, in whole or in part, without prior written consent; (ii) you will keep confidential all information contained herein not already in the public domain; and (iii) you will only use the information contained herein for informational purposes.



## Exhibit B



SCOTT TALKOV, State Bar No. 264676
CHRISTOPHER M. KIERNAN, State Bar No. 319804
**TALKOV LAW CORP.**
2900 Adams St Ste C225
Riverside, California 92504
Telephone: (951) 888-3300
Email: scott@talkovlaw.com
      chris@talkovlaw.com

Richard J. Corbi (*pro hac vice pending*)
**The Law Offices of Richard J. Corbi, PLLC**
1501 Broadway, 12th Floor
New York, New York 10036
Telephone: (646) 571-2033
Email: rcorbi@corbilaw.com

Counsel for Annapolis Consulting Group, Inc. and
TCI Holdings, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:18-bk-20151-ER |
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*, | Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER |
| Debtors and Debtors In Possession. | Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER |
| ☒ Affects All Debtors | Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER |
| ☐ Affects Verity Health System of California, Inc. | Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER |
| ☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation | Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Hon. Judge Ernest M. Robles |

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Debtors and Debtors In Possession.

OBJECTION OF ANNAPOLIS CONSULTING GROUP, INC. AND TCI HOLDINGS, INC. TO DEBTORS' MOTION TO APPROVE TERMS AND CONDITIONS OF A PRIVATE SALE OF EQUITY INTERESTS IN MARILLAC INSURANCE COMPANY, LTD. TO RANDALL & QUILTER II HOLDINGS LIMITED PURSUANT TO § 363; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LISA WALL AND PETER C. CHADWICK THEREOF

Hearing:

Date:      December 16, 2020
Time:      10:00 a.m.
Location: Courtroom 1568
              255 E. Temple St., Los Angeles, CA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Annapolis Consulting Group, Inc. ("ACG") and TCI Holdings, Inc., ("TCI", together with ACG, "ACG/TCI"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to Verity Health System of California, Inc. ("VHS") and the above-referenced affiliated debtors, the post-effective date debtors and debtors in possession (the "Post Effective Date Debtors" or, prior to the plan effective date, the "Debtors") in the above-captioned cases chapter 11 bankruptcy cases (the "Cases") Notice and Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof (the "Motion")[1].  ACG/TCI also submits the *Declaration of Hugh F. Hill IV in Support of Annapolis Consulting Group, Inc. and TCI Holdings, Inc.'s Objection to the Notice and Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points*

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in the Motion, unless otherwise noted.

- 1 -

*and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* (the "Hill

Declaration") in further support of this Objection. ACG/TCI respectfully states as follows:

## PRELIMINARY STATEMENT

1.      ACG/TCI is not a jilted bidder seeking a "do over." Rather, ACG/TCI is a

sophisticated purchaser of captive insurance companies like Marillac who, along with counsel,

contacted the Debtors to purchase Marillac long before the retention of Lockton in 2019. In fact,

within days of the Debtors filing their Chapter 11 petitions, ACG immediately reached out to the

Debtors informing them that Marillac was a valuable asset that a sale would provide immediate

liquidity to the Debtors, remove extensive liabilities off its balance sheet, and provide enhanced

recoveries to the general unsecured creditors. Representatives from ACG/TCI and its counsel met

with the Debtors CEO, Richard G. Adcock and General Counsel Elspeth D. Paul, at the Debtors

headquarters in Los Angeles, California on September 26, 2018 to present a letter of intent to purchase

the Marillac assets.

2.      As is discussed below, not only is ACG/TCI's bid superior, but the Court should either

accept the ACG/TCI bid or, in the alternative, require the Debtors to conduct an auction within the

purview of the Bankruptcy Court to prevent rise in costs and delay and so that bidders such as

ACG/TCI are not forced to continually bid against themselves in a vacuum. In the event that the Court

directs the Debtors to conduct an auction, ACG/TCI request it be deemed the stalking horse bidder and

receive similar stalking horse bid protections (break-up fee and expense reimbursement) as provided to

the proposed bidder in the Motion.

### *ACG/TCI BID*

3.      In response to the Motion, ACG/TCI submits an enhanced cash bid of $1.6 million. All

other terms remain the same as the bid set forth in the Motion, including the forgiveness of $2.2

million of premium receivable due from the Debtors to Marillac and the provision of a five year, $5

million per occurrence "tail insurance" policy for the Debtors current general and professional liability

("GLPL") insurance coverage. As set forth in the Hill Declaration, the cash for the purchase of the

Marillac assets is in a fully funded escrow account. Attached to the Hill Declaration are copies of the

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1   SPA and sale order (the "Order") modified for the ACG/TCI improved bid.  *See Hill Declaration*,

2   **Exhibit B**.

3   *TIMELINE*

4   4.      Since September of 2018, ACG/TCI has been actively seeking to purchase the shares of

5   Marillac from the Debtors.  Over a dozen offers have been submitted, many at the request of the

6   Debtors, through the TCI's affiliate, ACG.  These offers have been made directly to the Debtors and /

7   or to the Debtors' counsel, the Debtors' bankers (Cain Brothers), and the Debtors' insurance brokers

8   (Lockton).

9   5.      ACG submitted its first bid in an in-person meeting with Debtors' CEO and General

10  Counsel on September 26, 2018.  Subsequently, a draft stock purchase agreement was also provided to

11  the Debtors.

12  6.      In response to the fourth bid submitted via ACG, dated November 12, 2018, the

13  Debtors agreed to a thirty (30) day exclusivity period commencing November 15, 2018 for ACG to

14  conduct due diligence and make a binding offer to purchase Marillac.  The exclusivity period was

15  subsequently extended due to delays in accessing certain material claims and related data.  An

16  exhaustive due diligence process was undertaken, including meetings with Marillac's managers (Aon-

17  Cayman) and regulators in the Cayman Islands.

18  7.      After months of extensive diligence and negotiations, a cash offer of $1,250,000 was

19  made to the Debtors for the purchase the shares of Marillac on March 7, 2019.  This offer was ignored

20  for nearly a month, until, on April 4, 2019, the Debtors' bankers announced that any potential sale

21  would be on-hold until at least Q3 2019.  Nevertheless, in response to the concerns raised by the

22  Debtors with respect to continuing insurance coverage before certain operating asset sales, a revised

23  bid was submitted on April 25, 2019.  This bid went un-responded to until July of 2019.

24  8.      At the request of Debtors' counsel, ACG updated its diligence materials and a revised

25  bid was submitted to the Debtors on July 24, 2019, offering cash consideration of $1,500,000 for

26  Marillac.  As with prior bids, this offer went un-responded to until late September 2019, when the

27

28

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1  Debtors' counsel announced that their insurance brokers, Lockton, would now manage the sale of

2  Marillac for the Debtors.

3        9.      In early October of 2019, the Debtors counsel provided a revised stock purchase

4  agreement for Marillac which, amongst other things, also added in the requirement for 'tail coverage'

5  (i.e. an extended period to report claims beyond the insurance policy's term) of the existing GLPL

6  insurance policy. Additionally, the requirement was added that the purchaser of Marillac assume the

7  Debtors' existing relationship with the Debtors' claims management provider (Sedgewick). On

8  October 4, 2019, another bid was submitted.

9        10.     On October 11, 2019, at the prompting of Lockton, another bid was submitted, offering

10  either $2,850,000 cash at close or $3,850,000 in payments spread over two years. Extensive

11  documentation work was undertaken with the Debtors' counsel, including drafting all necessary

12  assumption agreements, schedules, and related transaction documents.

13        11.     On November 8, 2019, a further revised bid was submitted to Lockton, offering

14  $2,100,000 cash at close or $3,100,000 in payments spread over two years. The change in cash

15  offered in various bids can be attributed to changing outstanding insurance claim development as well

16  as changes in tail coverage requirements and considerations.

17        12.     Each bid submitted included stalking horse or similar deal protections to what is

18  requested in the Motion to allow the Debtors' to maximize Marillac's value and fully shop any offer

19  made by ACG. Such protections were considered non-controversial in the discussions with Debtors,

20  Debtors' counsel, the Debtors' bankers, and Lockton.

21        13.     On December 2, 2019, after repeated requests from the Debtors' counsel to 'improve its

22  bid', ACG, through its outside counsel, informed Debtors counsel that it could not proceed without

23  some form of deal protections given their ever-shifting requirements with respect to the size and length

24  of the requested tail coverage.

25        14.     In January, March and May of 2020, attempts were made to revitalize the discussions

26  with Debtors' counsel. Offers were also made for partial or a staged acquisition of Marillac. These

27

28

efforts were unfortunately fruitless as ACG could not change its last offer without material

involvement from the Debtors' counsel, which was generally not forthcoming.

15.     On August 25, 2020, Debtors' counsel responded to one of the regular inquiries placed by ACG's outside counsel expressing continued interest in purchasing Marillac. Armed with ACG's multiple prior bids and acquisition solution structure, Lockton informed ACG and TCI that any bid for Marillac must be received by August 28, 2020. Late that evening, updated diligence materials began to be provided by Lockton.

16.     With less than 72 hours' notice after two years of bidding and over six months of being generally ignored, and with numerous requested diligence items still outstanding, ACG/TCI submitted a bid on August 28, 2020 (the "8-28 Bid"). *See Hill Declaration*, **Exhibit A**.

17.     The economic terms of the 8-28 Bid are 100% identical to the terms offered by R&Q in the Motion: $1,000,000 cash payable at closing; forgiveness of the $2,200,000 premium receivable; and five (5) year, $5,000,000 per occurrence tail coverage of the general and professional liability insurance policy provided by Marillac to Verity.

18.     There were only two differences with the bid in the Motion. First, ACG/TCI requested a $250,000 breakup fee. Second, ACG/TCI also requested three (3) weeks of confirmatory due diligence, as the 8-28 Bid had been submitted on three (3) days' notice at the end of August, and there were numerous diligence items requested still outstanding. Targeting an October 1, 2020 close, ACG/TCI committed to purchase Marillac ". . . at a price equal or better to the price set forth above."

19.     After the 8-28 Bid was submitted, there were a series of teleconferences with Lockton focusing on ACG/TCI and its financial status. On the morning of September 4, 2020, Lockton informed ACG/TCI that its offer was rejected, no stalking horse protections would apply, and that Debtors' counsel would file a sale motion with another (better) bidder during the week of September 7.

20.     On September 8, TCI and ACG were re-granted access to the Marillac data room. Little additional information was provided in the almost three months that followed. R&Q completed their due diligence over the next ten weeks to present an offer virtually identical to the one put forth by

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

ACG/TCI in the 8-28 Bid. It bears mentioning that ACG/TCI had three days before submitting the 8-28 Bid and had requested three more weeks of confirmatory due diligence.

21. Despite numerous requests to both Lockton and Debtors' counsel to be informed when the Marillac sale motion was filed, ACG/TCI's outside counsel discovered this past weekend that the Motion was filed late on the evening before Thanksgiving. Given the holiday weekend, ACG/TCI again found itself in the unenviable position of having three business days to prepare and submit this Objection and binding SPA. The revised ACG/TCI bid attached to the Hill Declaration is identical to the offer presented to the Court in the Motion (which is in turn a mirror of ACG/TCI's 8-28 Bid) except that the cash deliverable at close purchase price has been increased by 60%.

22. Accordingly, the Motion cannot be approved and the Court must either approve the ACG/TCI bid or, in the alternative, direct that the Debtors conduct a public auction.

## **RELEVANT BACKGROUND**

23. On August 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "Chapter 11 Cases") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court")

24. Marillac is the Debtors' captive insurer, and is organized in the Cayman Islands. VHS (whose assets have now been contributed to the Liquidating Trust) is the sole owner of Marillac, and the Debtors are the sole customers of Marillac

25. Marillac issued insurance policies providing GLPL deductible and excess coverage to the Debtors. Marillac and one or more of the Debtors also entered into a Deductible Liability Protection Policy Agreement with Marillac where Marillac agreed to insure payment of the Debtors' deductible obligations under a workers' compensation insurance policy with Old Republic.

26. The Debtors engaged Lockton, to identify potential buyers of the Debtors' Shares in Marillac and Lockton commenced discussions with those potential buyers in August of 2019 (for the year prior to Lockton's engagement, ACG had submitted its offers to purchase Marillac directly to the Debtors and / or through their counsel or bankers). [*See* Docket No. 3988].

27.     On August 14, 2020, the Court entered an *Order Confirming Modified Second
Amended Joint Chapter 11 Plan of Liquidation (Dated July 2, 2020) of the Debtors, the Prepetition
Secured Creditors, and the Committee* [Docket No. 5504].  The Plan provides for establishment of the
VHS Liquidating Trust on the effective date of the Plan, which occurred on September 4, 2020
[Docket No. 6044].  The Plan further contemplates that "VHS, in its capacity as a Debtor and/or a
Post-Effective Date Debtor, and/or the Liquidating Trustee shall take such action as reasonably
necessary and advisable to effectuate the sale, disposition, or other administration of the issued and
outstanding equity interests in, or assets of, Marillac.  The net Cash proceeds of such sale, disposition,
or other administration, if any, shall be used to pay Holders of Claims as set forth in this Plan or as
otherwise agreed pursuant to a Creditor Settlement Agreement."  Second Amended Plan, § 5.7.

28.     On the evening of November 25, 2020, the day before the Thanksgiving Holiday
weekend, the Debtors filed the Motion.

## **OBJECTION**

29.     For the reasons set forth below, ACG/TCI submits that the Debtors' Motion should be
denied and (i) the Court direct the Debtors to accept the ACG/TCI improved bid or, (ii) in the
alternative, that the Debtors should be required to comply with the Bankruptcy Code and conduct a
competitive auction of the Marillac assets with ACG/TCI deemed the stalking horse bidder with
appropriate bid protections.

### A. The Debtors Have Not Exercised their Sound Business Judgement Pursuant to Section 363 of the Bankruptcy Code.

30.     In conducting a sale under section 363 of the Bankruptcy Code, a debtor has a fiduciary
duty to maximize value by selecting the highest and best offer for its assets. *In re Flour City Bagels,
LLC*, 557 B.R. 53, 78 (Bankr. W.D.N.Y. 2016) (court denied debtors' sale of assets because, among
other things, the debtors failed to carry their burden that the sale price was indeed the highest and best
for the estate).  For a sale to be approved pursuant to section 363 of the Bankruptcy Code, the debtor
must have exercised sound business judgment.  *In re Ditech Holding Corp.*, 606 B.R. 544, 580 (Bankr.
S.D.N.Y. 2019) ("To obtain court approval of such a sale, the debtor or trustee must prove that the sale
is an exercise of its sound business judgment.").  "As fiduciaries, the debtor in possession and its

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

managers are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property." *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) (citations omitted). "The job of a debtor-in-possession [is] to get the creditors paid." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (citations omitted). It is "to maximize the value of the estate, not of a particular group of claimants." *Matter of Cent. Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1987).

31.     In order for a debtor to exercise its business judgment, it must be the case that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Wonderwork, Inc.*, 611 B.R. 169, 195 (Bankr. S.D.N.Y. 2020) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). *See also In re 8 West 58th Street Hospitality, LLC*, 2017 WL 3575856, *3 (Bankr. S.D.N.Y. 2017) (explaining the standard for approval of a sale under section 363 is whether the debtor exercised sound business judgment, and that business judgment requires the directors of a corporation to act on an informed basis).

32.     The Debtors would like to convince the Court that the sale of the Marillac assets is one which results from a "good faith effort to provide the highest available recoveries to the various stakeholders under the totality of the circumstances," *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 313 (Bankr. S.D.N.Y. 2016), but that is simply not the case. The Motion neglects to inform the Court that ACG/TCI and its representatives met in-person with the Debtors' representatives three weeks after the Petition Date to discuss the purchase of Marillac, engaged with the Debtors repeatedly for over two years to modify its bid, and submitted multiple term sheets and definitive documentation for the Marillac assets. By leaving out numerous material facts regarding ACG/TCI's two+ years effort to purchase Marillac set forth above, including the most-recent 72 hour fire-drill at the end of August of 2020 followed by almost three months of inactivity and current bid in the Motion mirroring the terms ACG/TCI's last bid in the aforementioned fire-drill, the Motion is misleading as it paints a picture of a robust and good faith effort where in fact there was none.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

33.     Additionally, the Motion lacks adequate assurance that the sale of Marillac reflects an accurate valuation since the Debtors failed to test Marillac's market value pursuant to a court-approved bidding procedures process or even a quasi-auction like market check process. *See In re Planned Systems, Inc.*, 82 B.R. 919, 922-923 (Bankr. S.D. Ohio 1988) (court denied debtors' private sale and ordered the debtors to conduct a public auction because evidence was not presented that the private sale to the proposed private buyer or respondent buyer was in the best interests of the debtors' estates); *In re Innkeepers USA Tr.*, 442 B.R. 227, 232 (Bankr. S.D.N.Y. 2010) (concluding the debtors did not exercise due care "in electing to move forward with [a] plan term sheet and the proposed valuation implied therein" after observing "[t]he Debtors did not run any marketing process" nor "contact[] any potential investors outside the capital structure . . . .").

**B.  The Court Should Reopen the "Auction" to Facilitate a Competitive Sale Process That Will Maximize Value to the Debtors' Stakeholders**

34.     The Debtors have a fiduciary duty to maximize the value of their estate by selecting the highest or otherwise best bid for their assets. *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010); *see, e.g., In re GSC, Inc.*, 453 B.R. 132, 169 (Bankr. S.D.N.Y. 2011); *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

35.     In the context of a section 363 sale, a bankruptcy court has "broad discretion and flexibility . . . to enhance the value of the estates before it," including by reopening bidding to consider a higher proposal from a new party. *In re Metaldyne Corp.*, 409 B.R. 661, 668–69 (Bankr. S.D.N.Y. 2009) (quoting *In re Fin. News Network, Inc.*, 980 F.2d 165, 169 (2d Cir. 1992)); *In re Fin. News Network, Inc.*, 980 F.2d 165, 170 (2d Cir. 1992) ("There are cases where the bankruptcy court's discretion must be sufficiently broad so that in making its decision it can compass these competing considerations [of finality in the bidding process and fairness to the bidders against the interests of creditors in securing the highest sales price] as best it can.").  The Court should not follow "rigid adherence to [bidding] procedures that govern the sale as to elevate them over the substance of a bankruptcy court's principal responsibility, which is to secure for the benefit of creditors the best

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

possible bid." *In re Metaldyne Corp.*, 409 B.R. at 668–69 (citations and quotations omitted). *See also*

*In re G.S. Distrib., Inc.*, 331 B.R. 551, 559-560 (Bankr. S.D.N.Y. 2005) (bankruptcy court did not

approve private sale proposed by debtors because such private sale was not in the best interest of the

estate); *In re Global Crossing, Ltd.*, 295 B.R. 726, 745 (Bankr. S.D.N.Y. 2003) (court explained that:

"If this Court were to believe, for half a second, that the Debtors spurned a better offer to the detriment

of their fiduciary duties, this Court would not hesitate to invoke its powers.").

36.     Indeed, in *In re Sunland, Inc.*, 507 B.R. 753, 760 (Bankr. D.N.M. 2014), the bankruptcy

court reopened the auction process where the post-sale bid was approximately 25% higher than the

prevailing bid—noting that the overbid "is too high for the Court to ignore." *Id*. at 760; *see also In re*

*Muscongus Bay Co.*, 597 F.2d 11, 12-13 (1st Cir. 1979) (affirming bankruptcy court's decision to

consider a higher upset bid where the "estate gained a 21.5% Price increase by the extension of the

bidding period"); *In re GGSI Liquidation, Inc.*, 280 B.R. 425 (N.D. Ill. 2002), *add'd*, 368 F.3d 761

(7th Cir. 2004) (decision to consider later bid that was 16% higher than the winning bid at the auction

was not an abuse of discretion).  Similarly, in *In re Food Barn Stores, Inc.,* Eighth Circuit Court of

Appeals affirmed the lower court's decision to reopen an auction when a higher bid was announced at

the sale hearing. 107 F.3d 558, 564-568 (8th Cir. 1997).  Here, the ACG/TCI bid, which remains

subject to higher and better offers, represents 60% more in immediate cash consideration paid to the

Liquidating Trust than the current bid in the Motion.  Therefore, the Court cannot ignore the materially

higher bid of ACG/TCI.

37.     There is no question that the ACG/TCI offer is higher and better than the purported

winning bid.  ACG/TCI has made an offer on substantially the same terms and timeline as the

'purported' winning bid in the Motion.  Accordingly, the Court cannot approve the Motion in the face

of the superior bid by ACG/TCI.

**C.  The Expense Reimbursement Is Unreasonable, Unnecessary and Should Not Be
     Approved by the Court.**

38.     Although the Motion contemplates a "private" sale of the Marillac assets, the Debtors

inexplicably seek this Court's imprimatur to pay a $150,000 expense reimbursement (the "Expense

Reimbursement") to the buyer identified in the Motion in the event another bidder appears at the sale

1  hearing and such bid is accepted. Despite the Debtors' factually unsupported assertions that the

2  Marillac assets were properly marketed and no public auction is required (*see* Motion at ¶¶ 8-12; pp.

3  13-14, 16) and that the Debtors have informed the Buyer of the Debtors' fiduciary obligations, the

4  Expense Reimbursement is unreasonable in the context of this private sale, unnecessary and not in the

5  best interest of the Debtors' estates and their creditors. The revised bid attached to the Hill

6  Declaration is identical to the offer presented to the court by R&Q except that the purchase price has

7  been increased by ACG. Indeed, courts in the Ninth Circuit have not approved such bid protections,

8  even if such bid protections have the support of the debtors' largest constituencies, when such bid

9  protections are not in the best interest of the debtors' estates. *See In re Am. W. Airlines*, 166 B.R. 908,

10  913-914 (Bankr. D. Ariz. 1994) (court did not approve break-up fee because it was not in the best

11  interest of the debtors' estates or their creditors). Therefore, the Court cannot approve the Expense

12  Reimbursement. However, should the Court accept the improved ACG/TCI bid, ACG/TCI requests

13  that it receive stalking horse bid protections as contemplated in the Motion so that a robust,

14  Bankruptcy Code complaint 363 auction can occur.

15

16  DATED: December 2, 2020                    **TALKOV LAW CORP.**

17

18                                    *Scott Talkov*

                                By: _____

19                                      Scott Talkov
                                      Christopher M. Kiernan
20                                      Attorneys for Annapolis Consulting Group,
                                      Inc. and TCI Holdings, Inc.

21

22                                    **The Law Offices of Richard J. Corbi,**
                                    **PLLC**
23

24                                    *Richard J. Corbi*
                                    _____
25                                      Richard J. Corbi (*pro hac vice pending*)
                                      Attorneys for Annapolis Consulting Group,
26                                      Inc. and TCI Holdings, Inc.

27

28

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

## DECLARATION OF HUGH F. HILL IV

I, Hugh F. Hill IV, hereby state and declare as follows:

1.     I submit this declaration (the "Declaration")[2] in support of the *Annapolis Consulting Group, Inc. and TCI Holdings, Inc.'s Objection to the Notice and Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof.*

2.     I am a Partner in TCI and serve as a Senior Advisor to ACG. As noted in the Objection, ACG is an affiliate of TCI. Except as otherwise noted, the facts set forth herein are personally known to me and, if called as a witness, I could and would testify thereto.

3.     The principles of TCI and ACG have decades of experience in acquiring, managing, and successfully running-off pools of self-insurance liabilities. Sean Logan, the founder of ACG, has personally managed the wind-down of over twenty captive insurance companies domiciled in Cayman, Bermuda, Barbados, Anguilla and other domestic jurisdictions. Joseph Taussig, the eponymous founder of TCI, has incepted an average of one insurance company per year over the last three decades in various jurisdictions, including the Cayman Islands. The vast majority of these thirty-plus insurance entities created by Taussig via TCI and its predecessor entities were principally or exclusively focused on insuring or reinsuring self-insurance risk, including captive insurance companies. TCI's investors collectively represent over $8 billion in committed capital.

4.     As discussed further in the Objection, attached as **Exhibit A** is the 8-28 Bid.

5.     As discussed further in the Objection, attached as **Exhibit B** is a modified SPA to reflect the ACG/TCI bid.

6.     As discussed further in the Objection, attached as **Exhibit B** is a modified Order to reflect the ACG/TCI bid.

7.     The cash purchase price of $1.6 million is in an escrow account ready to be disbursed to the Liquidating Trust at the direction of the Liquidating Trustee or Post-Effective Date Debtors. In fact,

---

[2] Capitalized terms used in this Declaration, but not defined, shall have the meanings ascribed to them in the Objection.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1  I have asked representatives of Lockton and the Debtors where to submit the $100,000 Earnest Money

2  Deposit, as we stand ready to immediately wire it upon receipt of such instructions.

3         8.     Accordingly, the ACG/TCI bid is in the best interests of the Liquidating Trust and its

4  beneficiaries.

5        I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry,

6  the foregoing is true and correct.

7        Executed this 2nd day of December, 2020, in New York, New York.

8

9                         */s/ Hugh F. Hill IV*[3]
                       HUGH F. HILL IV

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [3] Pursuant to the Court's *Amended General Order 20-06* (made applicable by *Amended General Order 20-09*), the Debtors
(i) are unable to obtain the foregoing party's holographic signature due to a lack of required technology, (ii) obtained the
27  party's permission to sign the document on the party's behalf, and (iii) will obtain and file the holographic signature required
pursuant to LBR 9011-1(a) upon request of the Court. *See Am. General Order 20-06*, at ¶ 8 (Bankr. C.D. Cal. Sep. 11, 2020);
28  *see also Am. General Order 20-09*, at ¶ 2 (Bankr. C.D. Cal. Oct. 9, 2020).

# EXHIBIT A




# Taussig Capital ("TCI") & Annapolis Consulting Group ("ACG")

## Marillac Acquisition Proposal- Updated August 28, 2020

| Offer | | |
|---|---|---|
| | **Target** | Marillac Insurance Company, Ltd. (Cayman) ("Marillac") |
| | **Domicile** | Cayman Islands |
| | **Transaction Type** | 100% Stock Acquisition – 363 Bankruptcy Sale |
| | **Buyer** | Taussig Capital Inc., through its affiliate ACG and / or its assigns. TCI is a Puerto Rican corporation with regulated insurance subsidiaries in Vermont and Puerto Rico. |
| | **Seller** | Marillac is a wholly owned subsidiary of US parent company of Verity Health System of California, Inc. ("Verity"). Verity is in Chapter 11 bankruptcy in the Central District of California and has confirmed its Plan of Liquidation. |
| | **Consideration** | Cash: Buyer to pay Seller not less than $3.2 million- payable at close in cash, and Buyer shall forgive the existing $2.2 million premium receivable due from Verity. <br> Tail Insurance Coverage: Buyer shall provide 5 year, $5 million per occurrence, tail insurance coverage of Verity's existing claims made insurance coverage provided by Marillac for Healthcare Professional Liability / General Liability claims. Effective upon close. |
| | **Close** | October 1, 2020 (or as soon as approved by Bankruptcy Court) |
| Conditions | | |
| | **Approvals** | <ul><li>US Bankruptcy Court</li><li>Verity Creditor Committee</li><li>Cayman Island Monetary Authority</li><li>Any other party or regulatory authority whose consent is required pursuant to Verity's Plan of Liquidation or otherwise.</li></ul> |

CONFIDENTIAL

 



|  | Old Republic Letter of Credit | The cash securing the approximately $39.5 million US Bank Letter of Credit in favor of Old Republic Insurance Company must not be drawn down up to and through close. |
|  | Stalking Horse Protection | For a §363 sale of Marillac, stalking horse protection with a $250k breakup fee to be paid to Buyer should we not be the successful bidder, along with a $100k expense reimbursement |
|  | No Prospective Business / Continuation of Corporate Entity | Marillac, post-Close, will enter into run-off. Entity will maintain separate corporate status for 5 years minimum to provided requested tail coverage. No prospective coverage will be offered to Verity or any successor entities. |
| Exclusivity | 21 Days from Acceptance of this Bid | Verity will grant the Buyer 21 days exclusivity to perform confirmatory due diligence / commence necessary regulatory approvals. At the end of this period, provided that there are no material differences from what is currently presented during this process, Buyer will present Seller with a binding SPA at a price equal or better to the price set forth above. This SPA will then be submitted to the Bankruptcy Court for approval and / or submitted pursuant to an auction process with the Stalking Horse Protections agreed to above. |
| Confirmations | Assets & Liabilities | Confirmation of existing assets based on most-recent financials from Aon. Confirmation of no undisclosed liabilities. |
|  | Premiums / Receivables | Confirmation of current amounts of excess insurance to Old Republic / Chubb and any reinsurance recoverables |

# EXHIBIT B

**STOCK PURCHASE AGREEMENT**

**by and among**

**VERITY HEALTH SYSTEM OF CALIFORNIA,**

**MARILLAC INSURANCE COMPANY, LTD.**

**and**

**TCI HOLDINGS INC.**

**Dated as of December ___ , 2020**

## Table Of Contents

**Page**

ARTICLE 1 DEFINITIONS .................................................................. 1
  1.1    Defined Terms ................................................................. 1
  1.2    Interpretation and Construction ............................................. 8

ARTICLE 2 THE TRANSACTION; PURCHASE PRICE ..................................... 9
  2.1    Sale and Purchase ............................................................ 9
  2.2    Purchase Price ............................................................... 9
  2.3    Adjustment for Indemnity Payments ............................................ 9

ARTICLE 3 CLOSING ...................................................................... 9
  3.1    Closing ...................................................................... 9
  3.2    Closing Deliveries by Seller ................................................. 9
  3.3    Closing Deliveries by Buyer ................................................. 10

ARTICLE 4 REPRESENTATIONS AND WARRANTIES REGARDING SELLER ................... 11
  4.1    Ownership of Shares; Encumbrances ........................................... 11
  4.2    Seller's Authority .......................................................... 11
  4.3    No Conflict ................................................................. 12
  4.4    Brokerage Fees .............................................................. 12

ARTICLE 5 REPRESENTATIONS AND WARRANTIES REGARDING THE
          COMPANY ............................................................... 12
  5.1    The Company ................................................................. 12
  5.2    No Conflict ................................................................. 12
  5.3    Consents and Approvals ...................................................... 13
  5.4    Permits ..................................................................... 13
  5.5    Financial Statements ........................................................ 13
  5.6    Tax Matters ................................................................. 14
  5.7    Compliance with Applicable Laws ............................................. 14
  5.8    Legal Proceedings ........................................................... 14
  5.9    Certain Obligations of the Company .......................................... 14
  5.10   Insurance Matters ........................................................... 15
  5.11   Brokerage Fees .............................................................. 15
  5.12   Employee Matters ............................................................ 15
  5.13   No Material Adverse Effect .................................................. 16
  5.15   Knowledgeable Person ........................................................ 16
  5.16   NO OTHER REPRESENTATIONS .................................................... 16

ARTICLE 6 REPRESENTATIONS AND WARRANTIES OF BUYER ................................................ 17

    6.1    Organization ...........................................................................................17
    6.2    Buyer's Authority ...................................................................................17
    6.3    No Conflict ............................................................................................17
    6.4    Consents and Approvals ........................................................................17
    6.5    Compliance with Laws ..........................................................................17
    6.6    Legal Proceedings .................................................................................18
    6.7    Brokerage Fees ......................................................................................18
    6.8    Availability of Funds .............................................................................18
    6.9    Solvency ................................................................................................18
    6.10   Nature of Investment ............................................................................18
    6.11   Independent Investigation .....................................................................19
    6.12   Approvals ..............................................................................................19

ARTICLE 7 CONDUCT OF THE COMPANY PENDING CLOSING; BANKRUPTCY
        MATTERS .................................................................................................. 19

    7.1    Conduct of Business .............................................................................19
    7.2    Other Bidders Prior to Sale Order .........................................................20
    7.3    Bankruptcy Court Approval ..................................................................20
    7.4    Appeal of Sale Order .............................................................................21
    7.5    Seller's Broker ......................................................................................21

ARTICLE 8 COVENANTS ...................................................................................................... 21

    8.1    Access to Information and Confidentiality ............................................21
    8.2    Efforts to Close .....................................................................................22
    8.3    Public Announcements ..........................................................................23
    8.4    Supplemental Disclosure .......................................................................23
    8.5    Expenses ...............................................................................................24
    8.6    Release of Guaranties ...........................................................................24
    8.7    Operation Following Closing ................................................................24
    8.8    Cancellation of Tower ...........................................................................24
    8.9    TP A Release ........................................................................................24

ARTICLE 9 CONDITIONS TO OBLIGATIONS OF SELLER ........................................................ 25

    9.1    Accuracy of Representations and W arranties .........................................25
    9.2    Performance of Covenants and Agreements ...........................................25
    9.3    Consents to Transaction; Releases .........................................................25
    9.4    TPA Agreements ...................................................................................25
    9.5    Consent to Assignment and Assumption (Old Republic Agreement) ...........25
    9.6    Legal Proceedings .................................................................................26
    9.7    Existing Policy Matters .........................................................................26

ARTICLE 10 CONDITIONS TO OBLIGATIONS OF BUYER ............................................. 26

   10.1   Accuracy of Representations and W arranties ................................................26

   10.2   Performance of Covenants and Agreements ..................................................27

   10.3   Fulfillment of Conditions ................................................................................27

   10.4   Legal Proceedings ..........................................................................................27

ARTICLE 11 TERMINATION ............................................................................................ 27

   11.1   Termination .....................................................................................................27

   11.2   Effect of Termination ......................................................................................28

ARTICLE 12 TAX MATTERS ........................................................................................... 29

   12.1   Payment of Pre-Closing Taxes .......................................................................29

   12.2   Tax Returns; Filing Responsibility .................................................................29

   12.3   Prohibited Tax Actions ...................................................................................30

   12.4   Access to Tax Records ....................................................................................30

   12.5   Tax Proceedings .............................................................................................31

   12.6   Transfer Taxes ................................................................................................31

   12.7   Tax Refunds ....................................................................................................31

   12.8   Closing/Post-Closing Matters ........................................................................32

ARTICLE 13 INDEMNIFICATION ................................................................................... 32

   13.1   Indemnification ...............................................................................................32

   13.2   Survival ...........................................................................................................33

   I 3.3 Additional Limitations on Liability .................................................................33

   1 3.4 Exclusive Remedy ..........................................................................................34

ARTICLE 14 MISCELLANEOUS ..................................................................................... 34

   14.1   Notices ............................................................................................................34

   14.2   Entire Agreement ...........................................................................................35

   14.3   Successors and Assigns ...................................................................................35

   14.4   Third Party Beneficiary ..................................................................................35

   14.5   Severability .....................................................................................................35

   14.6   Specific Performance and Other Remedies ....................................................35

   14.7   Amendment .....................................................................................................36

   14.8   Waiver .............................................................................................................36

   14.9   Governing Law; Consent to Jurisdiction; WAIVER OF JURY TRIAL .........36

   14.10  Further Assurances ........................................................................................36

   14.11  Disclosure Schedules ......................................................... 37

   14.12  Counterparts ...................................................................................................37

   14.13  Privilege and Related Matters ........................................................................37

# STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT is entered into on the _____ day of December, 2020 (the "***Effective Date***"), by and among Verity Health System of California, Inc., a California nonprofit public benefit corporation (**"Seller"**), Marillac Insurance Company, Ltd., a Cayman Islands insurance company (the "***Company***"), and TCI Holdings Inc., a Puerto Rican domiciled holding company ("***Buyer***"). The Company, Seller, and Buyer are each referred to herein as a "***Party***" and collectively as the "***Parties***".

## RECITALS

WHEREAS, Seller owns all of the issued and outstanding equity interests in the Company, denominated as shares of stock (the **"Shares"**)**;**

WHEREAS, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, the Shares, for the consideration set forth herein and upon the terms and conditions hereinafter set forth;

WHEREAS, Seller and certain Seller Affiliates (as defined below) filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***") with the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "***Bankruptcy Court***"), lead Case No. 2:18-bk-201510ER of Seller, which case is jointly administered with those of its debtor affiliates (the debtor cases collectively, the "***Bankruptcy Case***"); and

WHEREAS, the Parties intend to effectuate the transactions contemplated by this Agreement through a private sale of the Shares approved by the Bankruptcy Court pursuant to Section 363 of Title 11 of the Bankruptcy Code.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the representations, warranties, covenants and agreements contained herein, the Parties hereto agree as follows:

## ARTICLE 1 DEFINITIONS

1.1 <u>Defined Terms</u>. As used in this Agreement, each of the following terms shall have the meaning given to it below:

"***1933* Act"** has the meaning assigned to such term in <u>Section 6.10</u>.

"***Accountant***' has the meaning assigned to such term in <u>Section 12.2(a)</u>.

"***Affiliate***" means, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" means, when used with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract, or otherwise, and the terms "controlling" and "controlled" have correlative meanings. For the avoidance of doubt, from and after Closing, the Company shall be an Affiliate of Buyer.

"***Agreement***' means this Stock Purchase Agreement, as the same may be amended or supplemented from time to time.

"***Alternative Transaction***" means any transaction involving a merger, consolidation, business combination, purchase or disposition of all or substantially all of the assets of the Company or all or a portion of the stock of the Company, other than the transactions contemplated by this Agreement.

**"Aon"** means Aon Insurance Managers (Cayman) Ltd.

**"Ancillary Agreements"** shall mean the Assignment and Assumption Agreement, the General Release and any other agreement or instrument entered into by one or more of the Parties in connection with this Agreement.

**"Assignment and Assumption Agreement"** means an Assignment and Assumption Agreement substantially in the form attached hereto as Exhibit A, providing for the assignment to Buyer of all obligations of Seller or any Seller Affiliate under the Assumed Contracts and the Exempt Contracts, and the acceptance and assumption of such obligations by Buyer, effective contemporaneously with the Closing.

**"Assumed Contracts"** means those contracts for which assignment of the rights and obligations of a Debtor must be approved by order of the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code, and which contracts impact directly the business or operation of the Company, including but not limited to, those listed on Schedule 1.1(a).

**"Balance Sheet Date"** means the date of the Most Recent Balance Sheet.

**"Bankruptcy Case"** has the meaning assigned to such term in the recitals.

**"Bankruptcy Code"** has the meaning assigned to such term in the recitals.

**"Bankruptcy Court"** means the Bankruptcy Court for the Central District of California.

**"Business Day"** means any day other than a Saturday, Sunday or legal holiday on which banks in Los Angeles, California and Bermuda are authorized or obligated by Law to close.

**"Buyer"** has the meaning assigned to such term in the introductory paragraph.

**"Buyer Indemnified Parties"** has the meaning assigned to such term in Section 13.1(a).

**"Buyer Tax Returns"** has the meaning assigned to such term in Section 12.2(a).

**"CIMA"** means the Cayman Islands Monetary Authority.

**"Closing"** means the closing of the transactions contemplated by this Agreement.

**"Closing Date"** means the date on which the Closing occurs.

**"Closing Date Effective Time"** means 12:01 A.M. on the Closing Date, Los Angeles, California time.

**"Company**' has the meaning assigned to such term in the introductory paragraph.

**"Disclosure Schedules"** means the disclosure schedules of even date herewith of Seller or Buyer, as the same may be amended or supplemented in accordance with the terms hereof.

**"Effective Date"** has the meaning assigned to such term in the introductory paragraph.

**"Encumbrances"** means liens, charges, pledges, options, mortgages, deeds of trust, security interests, claims, restrictions (whether on voting, sale, transfer, disposition, or otherwise), easements, preferential purchase rights, rights of first offer, rights of first refusal, drag along rights, tag along rights, and other

encumbrances of every type and description, whether imposed by Law, agreement, understanding, or otherwise.

"***Enforceability Exceptions***" has the meaning assigned to such term in Section 4.2.

"***Exempt Contracts***" means those contracts identified on Schedule 1.1(b).

"***Existing Financing***" means any existing indebtedness for borrowed money of the Seller or Company as set forth in those agreements listed on Schedule 5.11(a).

"***Financial Statements***" means: (a) the audited balance sheet, income statement, statement of members' equity and statement of cash flows for the Company as of the end of, and for the 12- month period ending June 30, 2020; and (b) the Most Recent Balance Sheet and the unaudited income statement, statement of members' equity and statement of cash flows for the Company for the period from the beginning of the current fiscal year to the Balance Sheet Date.

"***GAAP***" means United States generally accepted accounting principles as in effect on the date of determination in accordance with this Agreement and consistently applied, with, in the case of any Financial Statements, such exceptions to such United States generally accepted accounting principles as may be noted or otherwise referred to therein or on any Disclosure Schedule.

"***General Release***" means a general release, substantially in the form attached hereto as Exhibit B, providing for the release (as of Closing) by Buyer and Company of Seller and Seller Affiliates, and by Seller and Seller Affiliates of Buyer and the Company.

"***Governmental Approvals***" has the meaning assigned to such term in Section 8.2(a).

"***Governmental Entity***" means any foreign, domestic, federal, territorial, state or local governmental entity, court, tribunal, judicial or other non-private arbitral body, commission, board, bureau, agency or instrumentality, or any regulatory, administrative or other department, agency, or any political or other subdivision, department or branch of any of the foregoing. "Governmental Entity" includes, for the avoidance of doubt, any "Governmental Unit" as defined in 11 U.S.C. § 101(27).

"***Indemnified Parties***" has the meaning assigned to such term in Section 13.1(b).

"***Indemnifying Party***" means a Party required to provide indemnification under Section 13.1.

"***Knowledgeable Person***" means Ty Conner.

"***Law***" means any federal, state, local or foreign law, statute, regulation, ordinance, rule, judgment, order, decree, concession, grant, directive, guideline, policy statement, requirement, or other governmental restriction or any similar form of decision or determination by, or any interpretation or administration of any of the foregoing by, any Governmental Entity.

"***Losses***" means any losses, costs, liabilities, obligations, claims, damages (excluding special, punitive, exemplary, incidental, consequential, indirect, lost profits, diminution in value or other losses based upon a "multiple of profits," "multiple of earnings" or similar valuation methodology), deficiencies, expenses (including reasonable attorneys' fees, court costs, and other costs of suit), fines, penalties, judgments, awards and assessments.

"***Material Adverse Effect***" means an event, circumstance, development, change or effect that (a) materially impairs the ability of Seller or the Company to consummate the transactions contemplated by this Agreement, or (b) is materially adverse to the Company or its financial condition or results of operations, taken

as a whole, <u>provided, however,</u> that no event, circumstance, development, change or effect resulting from any of the following shall be deemed to constitute, or shall be taken into account in determining whether there has been, a Material Adverse Effect: (i) any change in general regulatory or political conditions, including any engagements of hostilities, acts of war or terrorist activities generally affecting the industries in which Company operates; (ii) any continuation of an adverse trend or condition that existed prior to the Effective Date, which affected the finances of Company, and of which Buyer was actually aware of as of the Effective Date (including loss of business from the debtors in the Bankruptcy Case or as a result of any deterioration of the financial condition of the Company (for example, requests for increases to the amounts of letters of credit and any related collateral)); (iii) any change in any Laws or industry standards, conditions or trends generally affecting the industries in which the Company operates; (iv) any changes in GAAP, Statutory Principles or the interpretation thereof; (v) any change in the financial, banking, securities or currency markets (including any increased costs for financing or suspension of trading in, or limitation on prices for, securities on any domestic or international securities exchange); (vi) any changes in global or national economic, monetary, or financial conditions, including changes in prevailing interest rates, credit markets, currency exchange rates, market conditions, changes related to or arising with respect to the European Union (including the exit of the United Kingdom therefrom) or any failure or bankruptcy (or any similar event) of any Governmental Entity, financial services or banking institution or insurance company generally affecting the industries in which the Company operates; (vii) any changes resulting from, arising out of or relating to the execution or announcement of this Agreement or the taking of any actions by a Party required or permitted pursuant to this Agreement or the taking or not taking of any actions at the request of, or with the consent of, any other Party; (viii) effects resulting from any acts or omissions of Buyer after the date of this Agreement (other than actions or omissions specifically contemplated by this Agreement), (ix) any failure by the Company to meet any projections or forecasts or estimates of gross or net revenue or earnings for any period, (x) the Covid-19 pandemic; or (xi) any matter set forth in the Disclosure Schedules (as supplemented pursuant hereto). Any fact, circumstance, or breach or inaccuracy by Seller or the Company of any representation, warranty, covenant, or other obligation in this Agreement, shall not be considered a Material Adverse Effect if Buyer had actual knowledge or was actually aware, as of the Effective Date, of such fact, circumstance, breach or inaccuracy or the existence or occurrence of any fact or event which caused any such breach or inaccuracy; <u>provided, further,</u> that any Loss, claim, occurrence, change or effect that would otherwise constitute a Material Adverse Effect but is cured to the reasonable satisfaction of Buyer prior to the Closing Date shall not be considered a Material Adverse Effect. For the avoidance of doubt, a Material Adverse Effect shall be measured only against the performance of the Company (taken as a whole) anticipated at the time of Closing and not against any past or forward-looking statements, financial projections or forecasts of the Company.

"*Material Contract*" has the meaning assigned to such term in <u>Section 5.9(c)</u>.

"*Most Recent Balance Sheet*' means the balance sheet of the Company as of October 31, 2020.

"*Old Republic*" means Old Republic Insurance Company.

"*Old Republic Agreement*' means that certain Program Endorsement Agreement dated July 1, 2015, by and between Seller (as "Daughters of Charity Health System") and Old Republic.

"*Outside Closing Date*" has the meaning assigned to such term in <u>Section 11.1(d)</u>.

"*Parties*" has the meaning assigned to such term in the introductory paragraph.

"*Party*" has the meaning assigned to such term in the introductory paragraph.

"*Permits*" means licenses, permits, franchises, consents, approvals, variances, exemptions, and other authorizations of or from Governmental Entities.

"***Permitted Encumbrances***" means: (a) liens for Taxes, impositions, assessments, fees, rents or other governmental charges levied or assessed or imposed not yet delinquent and for which appropriate reserves have been established in accordance with GAAP or Statutory Principles; (b) statutory liens arising in the ordinary course of business securing payments not yet delinquent; (c) preferential purchase rights and other similar arrangements with respect to which written consents or waivers are obtained for this transaction or as to which the time for asserting such rights has expired at the Closing Date without an exercise of such rights; (d) Encumbrances created by Buyer, or its successors and assigns; (e) any Encumbrance that is released as a result of the Sale Order on or prior to Closing; (f) the terms and conditions of the US Bank LOC Documents (as defined on Schedule 9.3(4)); (g) Permits; and (h) those items set forth on Schedule 1.1(a).

"***Person***" means any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, enterprise, unincorporated organization, or Governmental Entity.

"***Pre-Closing Tax Period***' means any taxable period ending on or before the Closing Date and, in the case of any Straddle Period, the portion of such period ending on and including the Closing Date.

"***Proceedings***" means all proceedings, actions, claims, suits, investigations, and inquiries by or before any Governmental Entity or private or quasi-private tribunal.

"***Purchase Price***" has the meaning assigned to such term in Exhibit C.

"***Reasonable Efforts***" means efforts in accordance with reasonable commercial practice and without the incurrence of unreasonable expense in light of the objective to be accomplished and the context of the transactions contemplated by this Agreement.

"***Required Capitalization***" means minimum capital and surplus, cash-on-hand, tangible net equity, shareholder's equity, net worth and/or similar capitalization and/or solvency thresholds as required or imposed by any Governmental Authority or under any agreement or instrument to which a Person is bound or to which a Person's assets or operations are subject, or otherwise under any applicable Law, and as determined in accordance with GAAP and/or Statutory Principles, as applicable, in each case whether such reserve is required or imposed in connection with the transactions contemplated hereby (including the seeking or granting of any Governmental Approval or the consent to assignment of any Assumed Contract or Exempt Contract) or otherwise.

"***Sale Hearing***" means the hearing before the Bankruptcy Court on Seller's motion or application pursuant to which Seller seeks authority to sell the Shares in accordance with Section 363(f) of the Bankruptcy Code free and clear of all Encumbrances, other than Permitted Encumbrances.

"***Sale Order***" has the meaning assigned to such term in Section 7.3(b).

"***Sedgwick***" means Sedgwick Claims Management Services, Inc.

"***Seller***" has the meaning assigned to such term in the introductory paragraph.

"***Seller Affiliate***" means, as of any particular date of determination, any Affiliate of Seller. For the avoidance of doubt, from and after the Closing, the Company shall not be a Seller Affiliate.

"***Seller Indemnified Parties'***" has the meaning assigned to such term in Section 13.1(b).

"***Seller Parties***" has the meaning assigned to such term in Section 8.1(b).

"***Seller Tax Returns***" has the meaning assigned to such term in Section 12.2(a).

"*Shares*" has the meaning assigned to such term in the recitals.

"*Solvent*" has the meaning set assigned to such term in Section 6.9.

"*Statutory Principles*" means statutory accounting principles promulgated by the National Association of Insurance Commissioners, as in effect in the Cayman Islands on the date of this Agreement, consistently applied throughout the periods involved, with, in the case of any Statutory Statements, such exceptions to such principles as may be noted or otherwise referred to therein.

"*Straddle Tax Period*" means a taxable period that includes but does not end on the Closing Date.

"*Subsidiary*" means any corporation, partnership, limited liability company or other entity of which the securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other Persons performing similar functions are directly or indirectly owned by a Person.

"*Superseded Agreements*" has the meaning assigned to such term in Section 14.2.

"*Support Obligations*" has the meaning assigned to such term in Section 8.6.

"*Tax*" or "*Taxes*" means any federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, customs duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated tax or any other tax of any kind whatsoever imposed by any Taxing Authority, including any interest, fines, penalty or other like assessment or addition thereto, whether disputed or not.

"**Tax** *Code*" means the Internal Revenue Code of 1986, as amended.

"**Tax** *Proceeding*" has the meaning assigned to such term in Section 12.5.

"**Tax** *Return*" means any return or report, declaration, claim for refund or information return relating to Taxes, including any related schedules, attachments, and including any amendment thereto.

"*Taxing Authority*" means, with respect to any Tax, the Governmental Entity or political subdivision thereof that imposes such Tax, and the agency (if any) charged with the collection of such Tax for such entity or subdivision, including any governmental or quasi-governmental entity or agency that imposes, or is charged with collecting, social security or similar charges or premiums.

"*Third Party*" means any Person other than (a) Seller or any Seller Affiliate (including the Company, until Closing) or (b) Buyer, or any of its Affiliates (including the Company, from and after Closing).

"**TPA** *Agreements*" means (i) that certain Services Agreement dated January 1, 2007, by and between Seller (as "Verity Health Systems f/k/a The Daughters of Charity Health System"), on one hand, and Sedgwick Claims Management Services, Inc., on the other hand, as amended and as may be amended from time to time, and (ii) that certain Administrative Service Agreement between Daughters of Charity Health System and Caronia Corporation effective as of August 1, 2005, and entered into by and between Daughters of Charity Health System and Sedgwick Claims Management Services, Inc., as of August 1, 2007, and entered into by and between Verity Health System and Sedgwick Claims Management Services, Inc. as of August 1, 2016, as amended and as may be amended from time to time.

"*Treasury Regulations*" means one or more treasury regulations promulgated under the Code by the Treasury Department of the United States.

1.2 <u>Interpretation and Construction</u>. In interpreting and construing this Agreement, the following principles shall be followed:

(a)     the terms "herein," "hereof," "hereby," and "hereunder," or other similar terms, refer to this Agreement as a whole and not only to the particular Article, Section or other subdivision in which any such terms may be employed;

(b)     unless otherwise indicated herein, references to Articles, Sections and other subdivisions refer to the Articles, Sections, and other subdivisions of this Agreement;

(c)     all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP;

(d)     no consideration shall be given to the captions of the Articles, Sections, subsections, or clauses, which are inserted for convenience in locating the provisions of this Agreement and not as an aid in its construction;

(e)     the word "includes" and its syntactical variants mean "includes, but is not limited to" and corresponding syntactical variant expressions;

(f)     the plural shall be deemed to include the singular, and vice versa and references to one gender include the other gender;

(g)     "writing", "written" and comparable terms refer to printing, typing and other means of reproducing words (including electronic media) in a visible form;

(h)     unless otherwise stated herein, references to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder;

(i)     references to any agreement or contract are to that agreement or contract as amended, modified or supplemented from time to time in accordance with the terms hereof and thereof;

(j) references to any Person include the successors and permitted assigns of that Person;

(k) this Agreement has been drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement; and

(l) each exhibit, attachment, and schedule to this Agreement is a part of this Agreement, but (except as the Disclosure Schedules, by their nature, describe exceptions to the representations and warranties made in this Agreement) if there is any conflict or inconsistency between the main body of this Agreement and any exhibit, attachment or schedule, the provisions of the main body of this Agreement shall prevail.

## **ARTICLE 2 <u>THE TRANSACTION; PURCHASE PRICE</u>**

2.1     <u>Sale and Purchase</u>. At the Closing, upon the terms and subject to the conditions in this Agreement, Seller shall sell, assign, transfer, deliver, and convey to Buyer, and Buyer shall purchase and accept from Seller, the Shares, together with any and all rights, privileges and interests arising therefrom.

2.2     <u>Purchase Price</u>. Reference is made to <u>Exhibit C</u>, which sets forth the Purchase Price and the manner of delivery thereof. On the Effective Date, Buyer shall deposit one hundred thousand dollars ($100,000) with an independent third party mutually agreed by the Parties (the "***Deposit***"). At the Closing, the amount of the Deposit will be released to Seller and credited toward Buyer's payment of the cash portion of

the Purchase Price.

     2.3   <u>Adjustment for Indemnity Payments</u>. Any indemnity payments made under this Agreement will be treated as an adjustment to the Purchase Price for all Tax purposes unless otherwise required by Law.

## ARTICLE 3 <u>CLOSING</u>

     3.1   <u>Closing</u>. Subject to fulfillment or, to the extent permissible, a waiver by the Party entitled to the benefit of such waiver, of the Closing conditions set forth in <u>Article 9</u> and <u>Article 10,</u> as applicable (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or, to the extent permissible, waiver by the Party entitled to the benefit of those conditions at the Closing), the Closing shall take place at 10:00 a.m., Los Angeles, California time, on the third Business Day following satisfaction or waiver of the conditions to close in <u>Article 9</u> and <u>Article 10</u> hereof or at such other time as Seller and Buyer may agree. The Closing shall take place virtually by an electronic exchange (i.e., facsimile or electronic mail) of signatures and other Closing deliveries. Unless otherwise agreed, all Closing transactions shall be deemed to have occurred simultaneously.

     3.2   <u>Closing Deliveries by Seller</u>. At the Closing, Seller will deliver (or cause the Company to deliver, as applicable) the following documents:

     (a) A certificate executed by the Seller, dated the Closing Date, as to the conditions set forth in <u>Sections 10.1</u> and <u>10.2.</u>

     (b) The certificates, instruments, and documents listed below:

         (i)    certificate representing the Shares, duly endorsed in blank and accompanied by a stock power, duly endorsed by Seller in blank, for transfer of good and valid title to the Shares to Buyer;

         (ii)    originals (where available) and copies of all of the books, records, data and information relating to the assets, properties, business, finances, conduct, and operations of the Company, including accounting records, reinsurance records, records relating to any Taxes, copies of all Material Contracts, items relating to the legal existence, share ownership, corporate management or other such corporate records (including, but not limited to, bylaws, registers of shareholders, registers of directors and officers, minute books, stock transfer ledgers, and other corporate documents), copies of all directions made by and correspondence with any Governmental Authorities to Company, and all filings made with any Governmental Authorities, that are in the possession or under the control of the Seller, the Company, and/or Aon (all of which may be delivered at the Company's offices);

         (iii)    the written resignations of all officers, directors or managers, as the case may be, of the Company, such resignations to be effective concurrently with the Closing, which shall include written confirmation that such directors and officers have no outstanding claims against Company;

         (iv)    Written confirmation from CIMA dated not more than ten (10) days prior to the Closing Date as to the good regulatory standing of the Company with CIMA;

         (v)    a certificate dated not more than ten (10) days prior to the Closing Date as to the good standing of the Company, issued by the Cayman Islands Registrar of Companies; and

         (vi)    a certificate from Seller of non-foreign status substantially in the form of the

sample certification set forth in Treasury Regulation §1.1445- 2(b)(2)(iv)(B).

(c)     Resolutions of Seller as sole shareholder of the Company (duly executed by Seller) and resolutions of the Company (if required under the governing documents of the Company) authorizing the consummation of the transactions contemplated by this Agreement, in form and substance acceptable to Buyer in its reasonable discretion.

(d)     The Assignment and Assumption Agreement, duly executed by Seller and/or any Seller Affiliate, as applicable.

(e)     The General Release, duly executed by Seller.

3.3 Closing Deliveries by Buyer. At the Closing, Buyer will deliver the following to Seller:

(a)     A certificate executed on behalf of Buyer, dated the Closing Date, as to the conditions set forth in Sections 9.1 and 9.2.

(b)     A certificate dated not more than ten (10) days prior to the Closing Date as to the good standing of Buyer, issued by the Secretary of State of the State of the state of Buyer's organization or incorporation.

(c)     Evidence of the release of Seller and its Affiliates of any Support Obligations as required by the provisions of Section 8.6.

(d)     Evidence of the release of Company from obligations to Lockton Companies and Affiliate thereof with respect to transactional advisory services in respect of the sale of the Shares.

(e)     Resolutions of the Buyer authorizing the consummation of the transactions contemplated by this Agreement, in form and substance acceptable to Seller in its reasonable discretion.

(f)     The Assignment and Assumption Agreement, duly executed by Buyer.

(g)     The General Release, duly executed by Buyer and the Company.

(h)     Such other certificates, instruments, and documents required by this Agreement or as may be reasonably requested by Seller prior to the Closing Date to carry out the intent and purposes of this Agreement.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES REGARDING SELLER

As qualified by the matters described in the Disclosure Schedules, Seller represents and warrants to Buyer as follows:

4.1     Ownership of Shares; Encumbrances. Seller through the Liquidating Trustee under the Seller's confirmed Chapter 11 plan holds of record and owns beneficially all of the issued Shares, free and clear of all Encumbrances (to the extent, and subject to the entry and terms of the Sale Order), other than (a) Encumbrances that arise out of any actions taken by or on behalf of Buyer or its Affiliates; and (b) Permitted Encumbrances. The Shares comprise the entire issued equity capitalization of the Company, and no Person has any right to acquire, whether by the exercise of a right in the nature of an option or otherwise, any of the Shares or any other equity security in the Company.

4.2     Seller's Authority. Seller has full power and authority to execute, deliver, and, subject to Bankruptcy Court approval by entry of the Sale Order, perform its obligations hereunder and to consummate

the transactions contemplated hereby. This Agreement has been duly executed and delivered by Seller and constitutes a valid and legally binding obligation of Seller enforceable against Seller in accordance with its terms, subject to any applicable bankruptcy, insolvency, reorganization, moratorium, arrangement, fraudulent transfer or other similar Law affecting creditors' rights generally, and subject to principles of equity, including concepts of materiality, reasonableness, good faith and fair dealing, election of remedies, estoppel and other similar doctrines affecting the enforceability of agreements generally (collectively, the "***Enforceability Exceptions***").

4.3      No Conflict. Subject to entry of the Sale Order and any Governmental Approvals, except as set forth on Schedule 4.3 and except as may not reasonably be expected to have a Material Adverse Effect and except as may result from any facts or circumstances relating solely to Buyer or any of its Affiliates, the execution, delivery, and performance of this Agreement by Seller and the consummation by Seller of the transactions contemplated hereby do not and will not:

(a)      violate or breach the organizational documents of Seller;

(b)      violate or breach any Law binding upon such Seller; or

(c)      result in any material breach of, or constitute a material default under, or give to others any rights of termination, acceleration or cancellation of, or result in the creation of any Encumbrance (other than a Permitted Encumbrance) on the Shares.

4.4      Brokerage Fees. Except as set forth on Schedule 4.4, Seller has not retained any financial advisor, broker, agent, or finder on account of this Agreement or the transactions contemplated hereby (the "***Seller's Broker***").

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES REGARDING THE COMPANY

As qualified by the matters described in the Disclosure Schedules and for informational purposes only (for which there is no remedy at Law or in equity, other than the rights of Buyer under Sections 10.1 and 11.1(c)), the Seller represents and warrants to Buyer as follows:

5.1      The Company.

(a)      Organization and Authority. The Company is a licensed Class B insurance company (for Cayman Islands purposes, but not United States tax purposes) duly formed and validly existing under the Laws of, and is in good standing in, the Cayman Islands. The Company has all requisite company power and authority and holds all licenses and regulatory approvals necessary to carry on its business as now being conducted.

(b)      No Subsidiaries; No Partnerships. The Company does not own any equity securities in any other Person other than for investment, and the Company is not subject to any obligation or requirement to make any equity investment to or in, any Person. The Company is not a member of any partnership nor is Company a participant in any joint venture or similar arrangement.

5.2      No Conflict. Except as set forth on Schedule 5.2, and except as may result from any facts or circumstances relating solely to Buyer or its Affiliates and assuming entry of the Sale Order, all consents, approvals, authorizations, and other actions described in Section 5.3 have been obtained and all filings and notifications listed on Schedule 5.3 have been made, the execution, delivery, and performance of this Agreement by the Company and Seller and the consummation of the transactions contemplated hereby will not, except as may not reasonably be expected to have a Material Adverse Effect:

(a)     violate or breach the organizational documents of the Company;

(b)     violate or breach any Law binding upon the Company; or

(c)     result in any material breach of, or constitute a material default under, or give to others any rights of termination, acceleration or cancellation of, any Material Contract (as defined below), or result in the creation of any Encumbrance (other than a Permitted Encumbrance) on the Shares.

5.3     <u>Consents and Approvals</u>. No consent, approval, authorization, license, order or permit of or declaration, filing or registration with, or notification to, any Governmental Entity, or any other Person, is required to be made or obtained by the Company in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, except as set forth on Schedule 5.3.

5.4     <u>Permits</u>. Set forth on <u>Schedule 5.4</u> are all Permits necessary or required for the conduct of the business of the Company as presently conducted and except as disclosed on <u>Schedule 5.4,</u> the Company holds all such Permits. Except as disclosed on <u>Schedule 5.4</u> (and except as would not, as aggregated with any Proceedings in the nature of those required to be disclosed under <u>Section 5.8</u>, be reasonably foreseeable to involve exposure to or liability of the Company in excess of $100,000), no Proceeding is pending or threatened with respect to any alleged failure by the Company to have any such Permit or not to be in compliance therewith.

5.5     <u>Financial Statements</u>.

(a) The Financial Statements are attached as <u>Schedule 5.5(a)</u>. The Financial Statements have been prepared from, and are in accordance in all material respects with, the books and records of the Company, which books and records are maintained materially in accordance with GAAP or Statutory Principles (except as noted on <u>Schedule 5.5(a)</u> or in the Financial Statements), as applicable, consistently applied throughout the periods indicated, and such books and records have been maintained in all material respects on a basis consistent with the past practice of the Company. The balance sheets included in the Financial Statements (including the related notes and schedules) fairly present in all material respects the financial position of the Company as of the date of such balance sheet, and each statement of income and cash flows included in the Financial Statements (including the related notes and schedules) fairly presents in all material respects the results of operations and changes in cash flows, as the case may be, of the Company for the periods set forth therein, in each case in accordance with GAAP or Statutory Principles, as applicable, consistently applied during the periods involved (except: (i) as noted on <u>Schedule 5.5(a)</u> or in the Financial Statements; (ii) that unaudited Financial Statements do not reflect year-end adjustments; and (iii) for the absence in unaudited Financial Statements of any footnotes).

(b) Except as set forth on <u>Schedule 5.5(b)</u> or as reflected on the Financial Statements, as of the Effective Date the Company does not have any indebtedness, liability or obligation that would be required by GAAP or Statutory Principles, as applicable, to be reflected as a liability on a balance sheet other than liabilities and obligations: (i) that have arisen since the Balance Sheet Date in the ordinary course of business; (ii) pursuant to or in connection with this Agreement or the transactions contemplated hereby; or (iii) which have not had, individually or in the aggregate, a Material Adverse Effect.

5.6     <u>Tax Matters</u>. Except as disclosed on <u>Schedule 5.6</u>:

(a)     The Company has filed, or has had filed on its behalf, in a timely manner (within any applicable extension periods) with the appropriate Taxing Authority all Tax Returns required to be filed with

respect to Taxes of the Company (if any), and such Tax Returns (if any) are true, complete and correct in all material respects;

(b)     All Taxes due and payable on all filed Tax Returns of or with respect to the Company (if any) have been paid in full;

(c)     There are no outstanding requests, agreements or waivers extending the statutory period of limitations applicable to the assessment, collection or payment of any federal, state, local or foreign income or other Taxes or with respect to any Tax Returns required to be filed by or with respect to the Company;

(d)     None of the Tax Returns of the Company are currently being audited or examined by any Taxing Authority; and

(e)     The Company is not a party to any Tax allocation, Tax-sharing agreement or Tax indemnification agreement (other than agreements the primary purpose of which is not to address Taxes) that will survive Closing.

5.7     <u>Compliance with Applicable Laws</u>. The Company is in compliance with all applicable Laws, except as disclosed on <u>Schedule 5.7;</u> or (b) for such noncompliance with Laws as may not reasonably be expected to have a Material Adverse Effect.

5.8     <u>Legal Proceedings</u>. Except as disclosed on <u>Schedule 5.8</u> (and except as would not, as aggregated with any Proceedings in the nature of those required to be disclosed under <u>Section 5.4</u>, be reasonably foreseeable to involve exposure to or liability of the Company in excess of $100,000), there are no Proceedings pending or, to the knowledge of the Knowledgeable Person, threatened against the Company.

5.9     <u>Certain Obligations of the Company</u>.

(a)     <u>Schedule 5.9(a)</u> sets forth a list of all material agreements related to the Existing Financing.

(b)     <u>Schedule 5.9(b)</u> sets forth a list of all material contracts between the Company, on one hand, and, *inter alios,* any Seller or Seller Affiliate on the other hand.

(c)     Except for contracts of the nature described in <u>Sections 5.9(a)</u> and <u>5.9(b), Schedule 5.9(c)</u> sets forth a list of each written contract or agreement to which the Company is a party which: (i) requires or entitles the Company to make or receive payments of at least $250,000 annually; or (ii) if canceled, terminated or expired by its terms would have a Material Adverse Effect (each of the documents set forth on <u>Schedules 5.9(a)</u> through (c) being a "***Material Contract***").

(d)     Except as set forth on <u>Schedule 5.9(d)</u>, the Company has made available or provided to Buyer and its representatives materially complete copies of (i) each of the Material Contracts and (ii) all presently-effective amendments, supplements and modifications thereto.

(e)     As of the Effective Date, Seller has delivered full, correct, and complete copies of all of the Material Contracts to Buyer as held in the books and records of the Company. All Material Contracts, are valid, binding and in full force and effect and are enforceable by the Company, in accordance with their terms subject, as to enforcement, to the Enforceability Exceptions. Except as set forth in <u>Schedule 5.9(e)</u> of the Disclosure Schedule, the Company and/or Seller, as applicable, have performed all material obligations required to be performed by the Company and/or Seller to date under the Material Contracts, and Company and Seller are not in material breach or default thereunder.

5.10    Insurance Matters.

(a)    Except as set forth on Schedule 5.10(a), all insurance policies maintained with respect to the Company are in full force and effect and all premiums due and payable on such policies have been paid.

(b)    Schedule 5.10(b) contains a complete list of all policies of insurance in effect on the Effective Date maintained by the Company which provide insurance coverage relating to the business of the Company. The Company has not received written notice from the insurer under any such insurance policies cancelling or materially amending any such policy. The Company and/or Seller, as applicable, have performed all material obligations required to be performed by the Company and/or Seller to date under such policies of insurance, and Company and Seller are not in material breach or default thereunder.

(c)    Company has filed all material reports, statements, registrations, filings or submissions required to be filed with any insurance Governmental Authority, and no material deficiencies have been asserted by any insurance Governmental Authority with respect to any such reports, statements, registrations, filings and submissions that have not been cured or otherwise resolved.

(d)    The Company has not underwritten or otherwise written direct insurance coverage and (i) there are no branches, places of business or permanent establishments of the Company carrying on any direct insurance business, and (ii) the Company does not currently carry on direct insurance business in any jurisdiction.

5.11    Brokerage Fees. Except as set forth on Schedule 5.11, neither Seller nor the Company nor any of their Affiliates has retained any financial advisor, broker, agent, or finder on account of this Agreement or the transactions contemplated hereby.

5.12    Employee Matters. The Company has not had any employees. The Company does not have any liabilities as to any retired or former employees. No retired or former employee or director of the Company or any of their dependents are receiving benefits or scheduled to receive benefits from the Company in the future, including, but not limited to, pension benefits, pension option election, retiree medical insurance coverage, retiree life insurance coverage or any other retirement benefits. The Company does not have and has never had any employee benefit plan.

5.13    No Material Adverse Effect. To the knowledge of the Knowledgeable Person, there is no event, circumstance, development, change or occurrence which, individually or together with any other event, change or occurrence, has, or would reasonably be expected to have, a Material Adverse Effect.

5.14    Accounts. Schedule 5.14 of the Disclosure Schedule lists the name of each bank, savings and loan association, securities or commodities broker or other financial institution holding any funds or assets of the Company.

5.15    Knowledgeable Person. The Knowledgeable Person possesses in-depth knowledge about the operations of Company, no less than the knowledge that would normally be held by an executive officer of a similarly-situated company.

5.16    NO OTHER REPRESENTATIONS. EXCEPT TO THE EXTENT SET FORTH IN ARTICLE 4 AND THIS ARTICLE 5, AND THE SALE ORDER, THE COMPANY AND SELLER MAKE NO REPRESENTATION OR WARRANTY WHATSOEVER TO OR FOR THE BENEFIT OF BUYER, OR ANY OF ITS AFFILIATES, AND THE COMPANY AND SELLER HEREBY DISCLAIM ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT, OR INFORMATION MADE, COMMUNICATED, OR FURNISHED (ORALLY OR IN WRITING) TO BUYER OR ANY OF ITS REPRESENTATIVES (INCLUDING ANY OPINION, INFORMATION, PROJECTION,

OR ADVICE THAT MAY HAVE BEEN OR MAY BE PROVIDED BY ANY MANAGER, OFFICER, EMPLOYEE, AGENT, CONSULTANT, LEGAL OR FINANCIAL ADVISER OR REPRESENTATIVE OF THE COMPANY OR SELLER OR ANY AFFILIATE THEREOF). BUYER IS ACQUIRING THE SHARES OF THE COMPANY (AND, INDIRECTLY, THE BUSINESS AND ASSETS OF THE COMPANY) "AS IS" AND "WHERE IS." EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN ARTICLE 4 AND THIS ARTICLE 5, AND THE SALE ORDER, THE COMPANY AND SELLER HEREBY EXPRESSLY DISCLAIM AND NEGATE ANY REPRESENTATION OR WARRANTY, EXPRESSED OR IMPLIED, AT COMMON LAW, BY STATUTE, OR OTHERWISE, RELATING TO THE CONDITION OF THE ASSETS OR FINANCES OF THE COMPANY (INCLUDING ANY IMPLIED OR EXPRESSED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS). THE COMPANY AND SELLER MAKE NO REPRESENTATIONS OR WARRANTIES TO BUYER OR ANY OF ITS AFFILIATES REGARDING THE PROBABLE SUCCESS OR PROFITABILITY OF THE BUSINESS OF THE COMPANY OR BUYER'S INVESTMENT THEREIN.

## ARTICLE 6
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to the Company and Seller as follows:

6.1     <u>Organization</u>. Buyer is a c-corporation duly formed, validly existing, and in good standing under the Laws of the Commonwealth of Puerto Rico.

6.2     <u>Buyer's Authority</u>. Buyer has full power and authority to execute, deliver, and perform this Agreement. The execution, delivery, and performance by Buyer, and the consummation of the transactions contemplated hereby, have been duly authorized by all necessary action of Buyer. This Agreement has been duly executed and delivered by Buyer and constitutes a valid and legally binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except that such enforceability may be limited by the Enforceability Exceptions.

6.3     <u>No Conflict</u>. Assuming all consents, approvals, authorizations, and other actions described in <u>Section 6.4</u> have been obtained and all filings and notifications listed in <u>Section 6.4</u> have been made, and except as may result from any facts or circumstances relating solely to Seller or its Affiliates, the execution, delivery and performance of this Agreement by Buyer do not and will not:

(a)     violate or breach the governing documents of Buyer;

(b)     violate or breach any Law binding upon Buyer, except as would not hinder, prevent or delay Buyer from performing its obligations hereunder; or

(c)     result in any material breach of, or constitute a material default under, or give to others any rights of termination, acceleration or cancellation of, any contract to which Buyer is a party or to which any of its assets or operations are subject.

6.4     <u>Consents and Approvals</u>. No consent, approval, authorization, license, order or permit of or declaration, filing or registration with, or notification to, any Governmental Entity, or any other Person, is required to be made or obtained by Buyer or any Affiliate thereof in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby other than as set forth in <u>Schedule 6.4</u> hereof.

6.5     <u>Compliance with Laws</u>. Buyer is not in violation of or in default under any Law or order applicable to Buyer or its assets the effect of which would hinder, prevent or delay such Buyer from performing

its obligations hereunder. Buyer further represents that (in each case directly or indirectly): (a) no part of the funds used by Buyer to acquire the Shares shall be derived from, or related to, any activity that may contravene United States federal or state or non-United States Laws, including anti-money laundering Laws, (b) no capital commitment, contribution or payment to the Company by Buyer and no distribution by the Company to Buyer shall be in violation of any applicable anti-money laundering Laws, including, without limitation, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the United States Department of the Treasury Office of Foreign Assets Control regulations and (c) all capital contributions or payments to the

Company by Buyer will be made through an account located in a jurisdiction that does not appear on the list of boycotting countries published by the United States Department of Treasury, as in effect at the time of such contribution or payment.

6.6     Legal Proceedings. There are no Proceedings against Buyer or its Affiliates pending or, to the actual knowledge of Buyer, threatened, seeking to restrain, prohibit, or obtain damages or other relief in connection with this Agreement or the transactions contemplated hereby.

6.7     Brokerage Fees. Neither Buyer nor any of its Affiliates has retained any financial advisor, broker, agent, or finder or paid or agreed to pay any financial advisor, broker, agent, or finder on account of this Agreement or the transactions contemplated hereby and Buyer shall be solely responsible for the payment of all fees or other amounts to its lenders without right to any contribution or reimbursement from Seller.

6.8     Availability of Funds. Buyer has available on the date hereof and will have available on the Closing Date funds on hand sufficient to pay the Purchase Price as required at Closing. Buyer will have available, or will cause the Company to have available, funds on hand sufficient to (a) ensure the Company maintains the Required Capitalization, and (b) pay the Purchase Price as and when due.

6.9     Solvency. Immediately after giving effect to the consummation of the transactions contemplated by this Agreement, Buyer will be Solvent. For purposes of this Section 6.9, "**Solvent**" means, with respect to Buyer, that:

(a)     the fair saleable value (determined on a going concern basis) of the assets of Buyer shall be greater than the total amount of Buyer's undiscounted liabilities (including all liabilities, whether or not reflected in a balance sheet prepared in accordance with GAAP or Statutory Principles, as applicable, and whether direct or indirect, fixed or contingent, secured or unsecured, disputed or undisputed);

(b)     Buyer shall be able to pay its debts and obligations in the ordinary course of business as they become due; and

(c)     Buyer shall have adequate capital (including Required Capitalization) to carry on its businesses and all businesses in which it is about to engage.

In entering into this Agreement and consummating the transactions contemplated hereby, Buyer does not intend to directly or indirectly hinder, delay or defraud any present or future creditors of Buyer or the Company.

6.10     Nature of Investment. Buyer is acquiring the Shares for its own account as an investment without the present intent to sell, transfer or otherwise distribute the same to any other Person. Buyer acknowledges that the Shares are not registered pursuant to the Securities Act of 1933 (the "**1933 Act**") and that none of the Shares may be transferred, except pursuant to an applicable exception under the 1933 Act. Buyer is an "accredited investor" as defined under Rule 501 promulgated under the 1933 Act.

6.1 1     Independent Investigation. Buyer hereby acknowledges and affirms that it has completed its own

independent investigation, analysis and evaluation of the Company, that it has made all such reviews and inspections of the business, assets, results of operations and condition (whether the deteriorating financial condition of the Company, or otherwise) of the Company as it has deemed necessary or appropriate, that in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby it has relied on its own independent investigation, analysis and evaluation of the Company and the representations, warranties and covenants of Seller and the Company contained herein, and that, as of the Effective Date, it has no actual knowledge of any breach of the representations and warranties in Article 4 or Article 5.

6.12 Approvals. Without limiting the foregoing, to the actual knowledge of Buyer, there is no material fact or circumstance relating to Buyer's or any of its Affiliates' businesses, operations, financial condition or legal status, including any officer's, director's or current employee's status, that would reasonably be expected to impair the ability of the Parties to this Agreement to obtain any authorization, consent, order, declaration or approval of, or ability to contract with, any Governmental Entity or Third Party necessary for the consummation of the transactions contemplated by this Agreement.

## ARTICLE 7
## CONDUCT OF THE COMPANY PENDING CLOSING; BANKRUPTCY MATTERS

7.1 Conduct of Business. Except as otherwise provided in this Agreement, during the period from the Effective Date to the Closing, the Company shall operate in the ordinary course of business and use Reasonable Efforts to preserve, maintain, and protect its material assets, rights, and properties; provided, however, that (a) the Company shall not be required hereunder to make any payments or enter into or amend any contractual agreements, arrangements, or understandings to satisfy the foregoing obligation other than consistent with past practice, and (b) the Company shall not be prohibited hereunder from making draws under any letter of credit or debt financing instrument to which the Company is a party, or otherwise taking such good-faith actions in respect of the Bankruptcy Case as are reasonable in light of the circumstances. For the avoidance of doubt, except as required by applicable Law, required by the Bankruptcy Court, or otherwise expressly permitted by the terms of this Agreement, Seller shall not cause Company to (and, to the extent affecting the Company's business, Seller shall not) do any of the following in connection with the Company's business without the prior written consent of Buyer:

(a)     hire or offer employment with Company to any individual;

(b)     other than acquisitions, dispositions or transfers in the ordinary course of business consistent with past practice, acquire, dispose of or transfer any asset or property of Company;

(c)     (i) split, combine, subdivide, consolidate or reclassify any of the issued and outstanding shares or equity securities of Company or authorize the issuance of any other shares or securities in respect of, in lieu of or in substitution for the Shares or other interests representing Company's issued and outstanding shares or equity securities, (ii) purchase, redeem or otherwise acquire any Shares or other interests representing outstanding shares or equity securities of any of Company or any rights, warrants or options to acquire any

such Shares or interests or (iii) amend the organizational documents of Company or adopt or enter into a plan of complete or partial liquidation, dissolution, merger, amalgamation, consolidation, restructuring, recapitalization, business combination or other reorganization of Company;

(d)     make, change or revoke any election related to Taxes, settle or compromise any Tax liability, enter into any closing agreement related to Tax, consent to any extension or waiver of the limitations period applicable to any Tax claim or assessment, change any taxable period or any Tax accounting method, amend any Tax Returns, surrender any right to claim a Tax refund, offset or other reduction in Tax liability;

(e)     act, or omit to act (or authorize any third party to act, or omit to act), in such a manner so as to cause a breach of any Material Contract, commitment, obligation, covenant, or agreement made by Company;

(f)     issue any insurance policies or reinsurance contracts or underwrite any new insurance or reinsurance business;

(g)     incur any indebtedness;

(h)     act or omit to act (or authorize any third party to act, or omit to act), in bad faith and with the intention to cause, or with reckless disregard towards causing, any representation or warranty contained in Article 4 or 5 of this Agreement to become inaccurate;

(i)     declare, set aside or pay any dividends, or make any distributions;

(j)     cause Company to disburse any Company funds to Seller's Broker; or

(k)     agree, whether in writing or otherwise, to do any of the foregoing.

7.2     Other Bidders Prior to Sale Order. Buyer expressly acknowledges and agrees that prior to the entry of the Sale Order, Seller may seek out and determine the best and highest offer reasonably available for the Shares in accordance with the Bankruptcy Code.

7.3     Bankruptcy Court Approval.

(a)     The Parties acknowledge that this Agreement, the sale of the Shares and the assignment and assumption of the Assumed Contracts and Exempt Contracts are subject to Bankruptcy Court approval.

(b)     Seller shall, at the Sale Hearing, exercise Reasonable Efforts to obtain a Sale Order approving this Agreement as a private sale.

(c)     Seller shall not further market the Shares to other bidders or directly or indirectly, take any action to solicit or initiate any offer or proposal or indication of interest in connection with an Alternative Transaction, but may as a fiduciary respond to due diligence requests from other potential bidders. For purposes of this Agreement, the term **"Sale Order"** shall mean an order of the Bankruptcy Court authorizing the sale of the Shares (and the assumption and assignment of the Assumed Contracts and Exempt Contracts) to Buyer that is not materially substantially dissimilar from the form attached hereto as Exhibit D.

(d)     Seller agrees to proceed in good faith to obtain Bankruptcy Court approval of the sale of Shares contemplated herein with a determination that Buyer is a good faith purchaser pursuant to Bankruptcy Code Section 363(m) and to file such declarations and other evidence as may be required to support a finding

of good faith.

      (e)     Seller agrees to seek from the Bankruptcy Court an expense reimbursement for Buyer in the amount of $150,000 in the event a higher and better bid is submitted at the Sale Hearing and that rival bid is approved by the Bankruptcy Court. Seller will propose that the expense reimbursement be payable from the proceeds of any sale to such a rival bidder.

      7.4    <u>Appeal of Sale Order</u>. In the event an appeal is taken or a stay pending appeal is requested from the Sale Order, Seller shall immediately notify Buyer of such appeal or stay request and shall provide to Buyer promptly a copy of the related notice of appeal or request for an order of stay. Seller shall also provide Buyer with written notice of any motion or application filed in connection with any appeal from either of such orders.

      7.5    <u>Seller's Broker</u>. Seller shall be solely responsible for payment of all fees and commissions to Seller's Broker in connection with the services Seller's Broker provides with respect to the sale contemplated by this Agreement and neither Buyer nor Company shall be responsible for such fees and commissions.

# ARTICLE 8
# COVENANTS

    8.1  <u>Access to Information and Confidentiality</u>.

      (a)     <u>Record Preservation by Buyer</u>. After the Closing, Buyer shall preserve and keep all books and records (excluding Tax Records, which are addressed in <u>Section 12.4</u>) relating to the business or operations of the Company, whether on or before or after the Closing Date, for a period of at least seven (7) years from the Closing Date (the "<u>Preservation Deadline</u>"). If Seller desires to make copies of all or any part of such books and records, Seller shall give Buyer at least sixty (60) calendar days' written notice before the expiration of the Preservation Deadline, and Seller and/or any Seller Party (as defined below) shall be given an opportunity, at its cost and expense, to make copies of all or any part of such books and records as Seller and/or Seller Party may select.

      (b)     <u>Access to Records</u>. Following the Closing, Buyer shall permit the designees of Seller, Seller Affiliates, , Seller's estate representative(s) or any liquidating trustee(s) of Seller's or Sellers' Affiliates' bankruptcy estates ("***Seller Parties***") to have reasonable access and duplicating rights during normal business hours, upon reasonable prior notice to Buyer, to the books, records and personnel relating to the business of the Company, to the extent that such access may be reasonably required in connection with: (i) the transactions contemplated herein (other than in connection with any dispute between the Buyer and Seller hereunder, which such access shall be determined in accordance with the normal rules and procedures of discovery); (ii) any regulatory filing or matter (including any Tax matters); or (iii) the Bankruptcy Case; <u>provided, however,</u> that any such access by such Persons shall not unreasonably interfere with the conduct of the businesses of the Company and such Persons shall reimburse Buyer promptly for all reasonable out-of-pocket costs and expenses (including attorneys' fees, but excluding reimbursement for general overhead, salaries and employee benefits) in connection with any such request. Buyer shall use commercially reasonable efforts to maintain such books and records in an easily accessible format (including electronically) and at accessible locations.

    8.2  <u>Efforts to Close</u>.

      (a)     Subject to the terms and conditions herein provided, the Parties shall, and each of them shall cause their respective Affiliates to, use commercially reasonable efforts to take, or cause to be taken (including by their respective officers and directors), all actions and to do, or cause to be done, all things,

necessary, proper or advisable under this Agreement and applicable Laws to consummate and make effective as promptly as practicable after the date hereof the transactions contemplated by this Agreement, including (i) preparing (and filing or delivering, as the case may be) as promptly as practicable (and, in respect of the application to be filed with the Cayman Islands Monetary Authority, no later than five (5) Business Days following the Effective Date) all necessary applications, notices, petitions, filings, ruling requests, and other documents and to obtain as promptly as practicable all consents, waivers, licenses, orders, registrations, approvals, permits, rulings, authorizations and clearances necessary or advisable to be obtained from any Governmental Entity for, by or on behalf of Seller, Company, or Buyer, as applicable, in order to consummate the transactions contemplated by this Agreement (collectively, but excluding the Sale Order (and the Sale Hearing), the "***Governmental Approvals***") and (ii) as promptly as practicable taking all other steps as may be necessary to obtain all such Governmental Approvals (including, without limitation, promptly, truthfully and fully responding to requests for information and other inquiries of Governmental Entities and other third parties). Seller shall prepare and file or cause to be filed with the applicable Governmental Authority in the Cayman Islands, any and all filings or notifications, including any "change of control" or similar filings, necessary to obtain consent and approval of the acquisition by such applicable Governmental Authority in the Cayman Islands, in accordance with the provisions hereof. No Party shall take or omit to take, or permit or cause an Affiliate of such Party to take or omit to take, any action that the Person taking such action or making such omission should be reasonably aware would have the effect of delaying, impairing or impeding the receipt of any Governmental Approval.

(b)     The Parties shall: (i) cooperate in all respects with each other in connection with any communication, filing or submission relating to the receipt of any Governmental Approval; (ii) keep the other Parties and/or their respective counsel promptly informed of material communications relating to the receipt of any Governmental Approval; (iii) consult with each other in advance of any meeting or conference with any Governmental Entity; and (iv) permit counsel for the other Parties to review in advance any submission, filing or communication (and documents submitted therewith) intended to be given by it to any Governmental Entity and consider in good faith the views of the other Parties in connection with any proposed communication with any Governmental Entity; provided, however, that materials may be redacted (1) as necessary to comply with contractual arrangements or applicable Laws and (2) as necessary to address reasonable privilege concerns.  In furtherance (and not in limitation) of the other provisions of this Section 8.2, Buyer agrees to provide, as promptly as is practicable, such security and assurances as may be reasonably requested by any Governmental Entity or other Third Party whose consent or approval is sought in connection with the transactions contemplated hereby, including as to Buyer's financial capability, resources, background, ownership and creditworthiness.

(c)     With respect to consents and approvals necessary or advisable to be obtained by Seller or Company from a Third Party that is not a Governmental Entity (which consents and approvals are, accordingly, not Governmental Approvals), the Seller or Company will use its Reasonable Efforts to obtain, and Buyer will use its Reasonable Efforts to assist them in obtaining, such consents and approvals, including providing to such Third Parties such financial statements with respect to Buyer as such Third Parties may reasonably request. As used in this Section 8.2(d), the obligation of the Seller or Company to use Reasonable Efforts shall not include assumption of a liability or the payment of any money to any Third Party.

8.3     Public Announcements. Except to the extent required by applicable Law (including requirements of stock exchanges and other similar regulatory bodies), from and after the Effective Date, Buyer and Seller shall consult with each other and agree upon the timing and content of any announcements regarding this Agreement or the transactions contemplated hereby to the financial community, industry observers, news media, Governmental Entities, employees, licensors, vendors, customers or the general public.

8.4     Supplemental Disclosure. From time to time prior to the Closing, Seller may by written notice

to Buyer supplement Seller's Disclosure Schedule (each, a "**Schedule Supplement**") solely with respect to any new matters (each, a "*NewMatter*") arising or coming to Seller's or the Company's attention after the Effective Date (promptly after Seller becomes aware of such New Matter); provided, however, that Seller may not include in any Schedule Supplement any matter arising on or prior to the Effective Date of which either Seller or the Company has actual knowledge as of the Effective Date (each, a "**Barred Matter**"). If the New Matters set forth in any Schedule Supplement constitute or relate to any event, circumstance, development, change or occurrence which has had, or would be reasonably expected to have, a Material Adverse Effect, Buyer may, by written notice to Seller, terminate this Agreement; provided, however, that if Buyer has the right to, but does not elect to terminate this Agreement by the earlier of (i) seven (7) Business Days after its receipt of such Schedule Supplement and (ii) the Outside Closing Date, then Buyer shall be deemed to have irrevocably waived its right to terminate this Agreement with respect to such matter and any other recourse against Seller in connection therewith (other than claims for arising from actual fraud or criminal conduct on the part of Seller in connection with the transactions contemplated by this Agreement); provided, further, that if a New Matter arises less than seven (7) Business Days prior to the Closing Date, Seller shall immediately notify Buyer thereof and Buyer shall not be obligated to proceed with the Closing notwithstanding the satisfaction of the conditions set forth in Articles 9 and 10 until the earlier of (x) seven (7) Business Days after its receipt of such Schedule Supplement and (y) the Outside Closing Date. Notwithstanding anything to the contrary contained in this Section, no Schedule Supplement shall have the effect of curing any breach by Seller of any of its covenants set forth in this Agreement or of depriving Buyer of any remedy otherwise permitted hereunder arising from any breach by Seller of any of its covenants set forth in this Agreement.

8.5     Expenses. Except as otherwise expressly provided in this Agreement (including pursuant to Sections 8.2 and 11.2), all fees and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such fee or expense, whether or not the Closing shall have occurred. Acquisition Expenses shall be paid solely by Seller and in no event shall Seller use Company funds to pay any Acquisition Expenses. "**Acquisition Expenses**" shall constitute the following (in each case, of the Company): legal expenses, consultancy fees, administrative expenses related to Buyer's due diligence requests or Seller's due diligence deliveries, any expenses of the Aon related to the Acquisition (as opposed to the operation of the Company in the ordinary course of business), Aon consulting expenses, fees associated with the CIMA filing, and similar expenses incurred in connection with the acquisition (other than costs and expenses incurred by Buyer).

8.6     Release of Guaranties. With respect to each guaranty, letter of credit, indemnity, performance or surety bond or similar credit support arrangement issued by or for the account of Seller or any of its Affiliates or any other Person in relation to the business of the Company (or otherwise related to the Company) shown on Schedule 8.6 (collectively, the "**Support Obligations**"), Buyer shall obtain, prior to the Closing Date, substitute credit support arrangements in replacement for the Support Obligations, and shall cause Seller and its Affiliates, and, where applicable, their sureties or letter of credit issuers or other Persons obligated in respect thereof, to be fully and unconditionally released from their respective obligations under the Support Obligations, in form and substance reasonably satisfactory to Seller.

8.7     Operation Following Closing. From the Closing Date until the fifth (5th) anniversary of the Closing Date, without written consent of Seller, the Company shall not, and Buyer shall cause the Company not to: (a) consolidate with or merge into any other corporation or entity, or transfer all or substantially all of its properties and assets or outstanding voting securities to any individual, corporation or other entity (other than to an Affiliate of Buyer that that agrees in writing to assume all obligations of the Company (subsequent to Closing) hereunder, that is able to pay all such obligations of the Company, and has been approved for merger or consolidation or transfer by an applicable Governmental Authority; (b) fail to maintain the Required Capitalization; (c) fail to comply with the Assumed Contracts or any other contract material to the business of the Company (or permit the breach thereof by any Third Party); (d) fail to be Solvent; or (e) become a party to

any bankruptcy, insolvency or restructuring Proceeding (other than an involuntary Proceeding initiated by a Third Party which is dismissed with prejudice not later than sixty (60) days from the initiation thereof).

8.8     <u>Cancellation of Tower</u>. On and effective as of the Closing Date, the Company shall (in the manner approved in advance by Seller in its reasonable discretion), cancel the Tower (as defined on <u>Schedule 5.10(b))</u> and shall deliver the amount(s) of premium returned, if any, to Seller in accordance with <u>Exhibit C</u>.

8.9     <u>TPA Release</u>. Following Closing, Buyer shall make commercially reasonable efforts to cause Sedgwick to execute a release of Seller and any Seller Affiliates, as applicable, from all obligations under the TPA Agreements, which release shall be in form and substance satisfactory to Seller in its reasonable discretion.

# ARTICLE 9
## CONDITIONS TO OBLIGATIONS OF SELLER

The obligations of Seller and the Company to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment as of the Closing Date (or waiver by Seller) of each of the following conditions (the benefit of which conditions are intended to be cumulative with, and not in limitation of, the other rights of Seller or the Company hereunder):

9.1     <u>Accuracy of Representations and Warranties</u>. All representations and warranties of Buyer contained in this Agreement shall be true and correct in each case on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on the Closing Date, except to the extent that the failure of such representations and warranties to be true and correct would not, individually or in the aggregate, have an adverse effect on Seller or Company or hinder, prevent or delay Buyer from performing its obligations hereunder.

9.2     <u>Performance of Covenants and Agreements</u>. Buyer shall have performed and complied in all material respects with all covenants and agreements required by this Agreement to be performed or complied with by it on or prior to the Closing Date, and all deliveries contemplated by <u>Section 3.3</u> shall have been made.

9.3     <u>Consents to Transaction; Releases</u>. There shall have been obtained all Governmental Approvals, Third Party consents and releases (in each case as specified on <u>Schedule 9.3)</u>, which approvals, consents and releases shall be in form and substance satisfactory to Seller (and Buyer, to the extent such approvals, consents, and releases affect Company) in their reasonable discretion.

9.4     <u>TPA Agreements</u>.

(a)     Seller shall have completed the transfer of its rights and obligations under the TPA Agreements to Company prior to Closing (whether by an assignment and assumption or by cancellation of the TPA Agreements and execution by Marillac of new third party administration agreement(s) with Sedgwick in the form acceptable to Buyer in its reasonable discretion). Seller understands and agrees that any assignment and assumption or new third party administration agreement(s) shall provide that the term of Sedgwick's engagement shall expire on April 30, 2021 (with Sedgwick's data transfer responsibilities extending beyond the date of expiration).

(b)     Old Republic shall have consented to termination of all third party administration agreement(s) between Sedgwick and Company and the entry by Buyer (or Company, as applicable) into replacement agreement(s) with a new third party administrator effective as of April 1, 2021.

(c)     Sedgwick shall have delivered an assignment and assumption and release agreement in form and substance satisfactory to Seller in its reasonable discretion.

9.5        Consent to Assignment and Assumption (Old Republic Agreement). Old Republic shall have consented to the assignment of the Old Republic Agreement to Buyer and the release of Seller and any Seller Affiliates, as applicable, from all obligations under the Old Republic Agreement and all policies issued by Old Republic relating thereto, and Seller's payment obligations under all policies issued by Old Republic relating thereto, which consent and release shall be in form and substance satisfactory to Seller in its reasonable discretion (and shall acknowledge the assumption, effective as of the Closing, by Buyer and/or the Company of all obligations and liabilities in respect thereof), provided, however, that this condition shall be deemed satisfied in the case that Buyer enters into a replacement agreement with Old Republic and Old Republic executes a release of Seller and any Seller Affiliates, as applicable, from all obligations under the Old Republic Agreement and all policies issued by Old Republic relating thereto, which release shall be in form and substance satisfactory to Seller in its reasonable discretion.

9.6        Legal Proceedings. No preliminary or permanent injunction or other order, decree, or ruling issued by a Governmental Entity, and no statute, rule, regulation, or executive order promulgated or enacted by a Governmental Entity, which restrains, enjoins, prohibits, or otherwise makes illegal the consummation of the transactions contemplated hereby shall be in effect nor shall there be pending any action or proceeding by or before any Governmental Entity (excluding any suits or other proceedings initiated by Buyer or its Affiliates) challenging the lawfulness of or seeking to prevent any of the transactions contemplated by this Agreement or seeking monetary or other relief by reason of the consummation of any of such transactions.

9.7        Existing Policy Matters. As specified on Schedule 9.7, certain existing insurance policies in favor of the Company shall have been renewed, canceled (with tail coverage provided by the Company or otherwise obtained, as designated) or modified, with return of premiums for any cancellation or modification paid at Closing, in each case as satisfactory to Seller in its reasonable discretion.

**ARTICLE 10**
**CONDITIONS TO OBLIGATIONS OF BUYER**

The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment as of the Closing Date (or waiver by Buyer) of each of the following conditions (the benefit of which conditions are intended to be cumulative with, and not in limitation of, the other rights of Buyer hereunder):

10.1 Accuracy of Representations and Warranties. All representations and warranties contained in Article 4 and Article 5 shall be true and correct in each case on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on the Closing Date, except to the extent that the failure of such representations and warranties to be true and correct would not, individually or in the aggregate, have a Material Adverse Effect. Notwithstanding the foregoing, the representations and warranties in Sections 4.1 through 4.4, Sections 5.1 through 5.4 and Sections 5.8 through Section 5.12 shall be true and correct in all respects in each case on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on the Closing Date, irrespective of whether failure of such representations and warranties to be true and correct would, individually or in the aggregate, have a Material Adverse Effect.

10.2    Performance of Covenants and Agreements. Seller and the Company shall have performed and complied in all material respects with all covenants and agreements required by this Agreement to be performed or complied with by such Seller or the Company on or prior to the Closing Date, and all deliveries contemplated by Section 3.2 shall have been made.

10.3    Fulfillment of Conditions. The conditions described in Sections 9.3, 9.4, 9.5, 9.6, and 9.7 shall be satisfied.

10.4    Legal Proceedings. No preliminary or permanent injunction or other order, decree or ruling issued by a Governmental Entity, and no statute, rule, regulation or executive order promulgated or enacted by a Governmental Entity, which restrains, enjoins, prohibits, or otherwise makes illegal the consummation of the transactions contemplated hereby shall be in effect nor shall there be pending any action or proceeding by or before any Governmental Entity challenging the lawfulness of or seeking to prevent any of the transactions contemplated by this Agreement or seeking monetary or other relief by reason of the consummation of any of such transactions.

# ARTICLE 11
# TERMINATION

11.1    Termination. This Agreement may be terminated, and the transactions contemplated hereby may be abandoned, at any time before the Closing as follows:

(a)    by the Parties if any Law or final, non-appealable order of a court of competent jurisdiction restrains, enjoins or otherwise prohibits or makes illegal the transactions contemplated by this Agreement (including, for the avoidance of doubt, if the Bankruptcy Court enters an order dismissing the Bankruptcy Case);

(b)    by Seller, by written notice to Buyer, if Buyer has: (i) breached its obligation to pay the Purchase Price pursuant to Sections 2.2 and 3.3; or (ii) breached in any material respect any other representation, warranty, covenant, agreement or obligation in this Agreement which would cause any of the conditions set forth in Article 9 not to be satisfied, and such breach, in the case of this clause (ii), if capable of being cured, has not been cured within 5 days following written notification thereof; provided, however, that if, at the end of such 5-day period, Buyer is endeavoring in good faith, and proceeding diligently, to cure such breach, Buyer shall have an additional 5 days in which to effect such cure;

(c)    by Buyer, by written notice to Seller, if Seller or the Company has breached any representation, warranty, covenant, agreement or obligation in this Agreement which would cause any of the conditions set forth in Article 10 not to be satisfied and: (i) such breach, if capable of being cured, has not been cured within 5 days following written notification thereof; provided, however, that if, at the end of such 5-day period, Seller or the Company (as applicable) is endeavoring in good faith, and proceeding diligently, to cure such breach, Seller and the Company shall have an additional 5 days in which to effect such cure; and (ii) such breach (to the extent not cured) would result in a Material Adverse Effect;

(d)    by written notice from the Seller to Buyer, or Buyer to Seller, as the case may be, in the event the Closing has not occurred on or prior to December 30, 2020, or such later date as Buyer and Seller may agree in writing (the "**Outside Closing Date**"); provided, however, that (i) Seller may extend the Outside Closing Date for up to ninety (90) additional days if (x) all conditions to closing set forth in Article 10 that are capable of satisfaction by Seller and the Company (and are not, by their nature, to be satisfied as of Closing) are satisfied other than the condition set forth in Section 10.3 and (y) Seller and the Company are still actively

seeking in good faith to satisfy the condition set forth in <u>Section 10.3,</u> (ii) Buyer may extend the Outside Closing Date for up to thirty (30) additional days if (x) all conditions to closing set forth in <u>Article 10</u> that are capable of satisfaction by Buyer (and are not, by their nature, to be satisfied as of Closing) are satisfied other than the condition set forth in <u>Section 10.3</u> and (y) Buyer is still actively seeking in good faith to satisfy the condition set forth in <u>Section 10.3</u>, (iii) Buyer cannot terminate this Agreement under this provision if the failure of the Closing to occur is the result of the failure on the part of Buyer to perform any of its covenants hereunder, and (iv) Seller may not terminate this Agreement under this provision if the failure of the Closing to occur is the result of the failure on the part of Seller or the Company to perform any of its or their covenants hereunder;

   (e) by either party if, in connection with the Bankruptcy Case, Seller and/or the Company receives, determines to accept and/or closes an Alternative Transaction constituting a better and higher offer for the Shares (or for all or substantially all of the Company's assets); and

   (f) by mutual written consent of Buyer and Seller.

  11.2 <u>Effect of Termination</u>.

   (a) The rights of termination provided under <u>Section 11.1</u> are in addition to any other rights a Party may have under this Agreement (including under <u>Section 14.6</u>) or otherwise, and the exercise of a Party's right of termination will not constitute an election of remedies. If this Agreement is terminated pursuant to <u>Section 11.1</u>, then (i) this Agreement will be of no further force or effect; <u>provided, however, that</u> <u>Sections 8.3</u> and <u>11.2</u>, and <u>Article 14</u> will survive the termination of this Agreement and will remain in full force and effect; and (ii) such termination will be without liability of or to any Party; <u>provided, further, however,</u> if such termination (1) is pursuant to <u>Section 11.1(b)</u> or <u>11.1(c)</u>, the non-terminating Party shall be liable for the terminating Party's reasonable fees and expenses incurred in connection with the transactions contemplated by this Agreement, or (2) shall result from a material and willful breach by any Party to this Agreement (it being understood that the failure to cure a breach shall not, by itself, be a material and willful breach of this Agreement), then such Party shall be fully liable for any and all damages sustained or incurred by the other Party.

   (b) Upon termination of this Agreement for any reason, Buyer shall return or destroy all documents and other materials of the Company or Seller, whether obtained before or after the execution of this Agreement, in accordance with the terms of various confidentiality agreements between Affiliates of the Buyer and Verity Health System of California, Inc. (collectively and together with any amendments, the "***Confidentiality Agreement***"), and all information received by Buyer shall be treated in accordance with the terms of the Confidentiality Agreement.

   (c) In the case of any termination of this Agreement by Seller under <u>Section 11.1(b),</u> the Deposit shall be forfeited in its entirety to Seller (which forfeiture shall not limit Seller or the Company from pursuing any other remedy available at Law or in equity). The Deposit shall otherwise be returned to Buyer.

<div align="center">

**ARTICLE 12**
**<u>TAX MATTERS</u>**

</div>

  12.1 <u>Payment of Pre-Closing Taxes</u>. Seller agrees to be responsible for all Taxes of the Company for all taxable periods ending before the Closing Date (including the period that ends on the Closing Date as a matter of law) and the period up to and including the Closing Date for any Straddle Period, provided, that such Taxes shall not include any Taxes that (a) arise due to actions taken by Buyer (or any Affiliate thereof, including, for the avoidance of doubt, the Company) after the Closing that are outside of the ordinary course

of business, or (b) are attributable to any breach by Buyer or Affiliate thereof (including, for avoidance of doubt, the Company) of any provision in Article 12.

     12.2   Tax Returns; Filing Responsibility.

       (a)   Periods Ending Before Closing. Seller shall prepare or cause to be prepared, and file or cause to be filed, all Tax Returns of the Company for any taxable year or period ending on or before the Closing Date that are required to be filed after the Closing Date **("Buyer Reviewed Returns").** At least thirty (30) days prior to the date on which any Buyer Reviewed Return is required to be filed (taking into account any valid extensions), Seller shall submit such Buyer Reviewed Return (including any relevant schedules, work papers and other documentation then- available), to Buyer for Buyer's review and consent not to be unreasonably withheld, conditioned or delayed. Buyer shall provide written notice to Seller of its disagreement with any items in such Buyer Reviewed Return within ten (10) days of its receipt of such Buyer Reviewed Return and Seller shall accept all reasonable comments. If Buyer fails to provide such notice, such Buyer Reviewed Return shall become final and binding upon the Parties hereto, and Seller shall timely and properly file such Buyer Reviewed Returns. Such Buyer Reviewed Returns will be prepared in a manner consistent with prior Tax Returns of the Company to the extent permitted by applicable Law. Buyer shall prepare, or cause to be prepared, and file, or cause to be filed, on a timely basis all Tax Returns with respect to the Company for a Straddle Period **("Buyer Tax Returns").** To the extent that a Buyer Tax Return relates to a Straddle Period **("Seller Reviewed Returns"),** such Seller Reviewed Returns shall be prepared consistent with the past practice of the Company except as otherwise required by applicable Law. At least thirty (30) days prior to the date on which any Seller Reviewed Return is required to be filed (taking into account any valid extensions), Buyer shall submit such Seller Reviewed Return (including any relevant schedules, work papers and other documentation then-available) and a schedule allocating the Taxes to the pre-Closing and post-Closing portion of the Straddle Period, to Seller for Seller's review and consent not to be unreasonably withheld, conditioned or delayed. Seller shall provide written notice to Buyer of its disagreement with any items in such Seller Reviewed Return or any Straddle Period allocation within ten (10) days of its receipt of such Seller Reviewed Return or any Straddle Period allocation and Buyer shall accept all reasonable comments. If Seller fails to provide such notice, such Seller Reviewed Return, and any Straddle Period allocation, shall become final and binding upon the Parties hereto, and Buyer shall timely and properly file such Seller Reviewed Returns. If Buyer and Sellers are unable to resolve any dispute regarding any Seller Reviewed Return, Buyer Reviewed Return, or Straddle Period allocation within five (5) days after Seller or Buyer, as applicable, delivers such notice of disagreement, then the dispute will be finally and conclusively resolved by a nationally recognized firm of independent certified public accountants mutually appointed by Buyer and Seller **("Accountant")** provided that such dispute shall not in any way disrupt or delay the timely filing of such Tax Return as prepared by Buyer or Seller, as applicable (but reflecting the agreed comments of Seller or Buyer, as applicable, except, for the avoidance of doubt, excluding any specific comments on which the Parties were unable to reach agreement). Buyer or Seller, as applicable shall file or cause to be filed any amended Tax Return as needed to conform to the Accountant's final determination. The fees and expenses of the Accountant shall be borne equally by Seller, on the one hand and Buyer on the other hand.

       (b)   Straddle Period Taxes. For purposes of this Agreement, in the case of a Straddle Period, the portion Taxes which relates to the portion of such Tax period ending on and including the Closing Date shall (i) in the case of any Taxes other than Taxes based upon or related to income, gains or receipts, or employment or payroll Taxes, be deemed to be the amount of such Tax for the entire Tax period multiplied by a fraction the numerator of which is the number of days in the Tax period ending on and including the Closing Date and the denominator of which is the number of days in the entire Tax period; and (ii) in the case of any Tax based upon or related to income, gains or receipts, or employment or payroll Taxes, be deemed equal to the amount which would be payable if the relevant Tax period ended on the Closing Date. All determinations necessary to give effect to the foregoing allocations shall be made in a

manner consistent with reasonable prior practice of the Company.

12.3  Prohibited Tax Actions. Buyer or any Affiliate thereof shall not, and shall not permit any of its Affiliates (including, after the Closing for the avoidance of doubt, the Company) to, (a) except as provided in Section 12.2(a), re-file, supplement, or amend any Tax Return of the Company for any Pre-Closing Tax Period or Straddle Period, (b) voluntarily approach any Taxing Authority regarding any Taxes or Tax Returns of the Company that were originally due on or before the Closing Date, (c) make an election under Section 338 of the Tax Code (or any comparable applicable provision of state, local or non-U.S. Tax Law) with respect to the transactions contemplated by this Agreement, (d) make any Tax election for the Company effective on or before the Closing Date, or (e) take any action that is outside the ordinary course of business after the Closing relating to Taxes that creates a Tax liability to Seller, any Seller Affiliate or the Company for a taxable period (or portion thereof) ending on or before the Closing Date.

12.4  Access to Tax Records. Buyer, the Company and Seller shall cooperate fully, as and to the extent reasonably requested by the other Party, in connection with the filing of Tax Returns and any audit, litigation or other proceeding with respect to Taxes. Such cooperation shall include the retention and (upon the other Party's request) the provision of records and information which are reasonably relevant to any such proceeding and making employees available on a mutually convenient basis to provide additional information and explanation of any material provided hereunder. Buyer and Seller agree (a) to retain all books and records with respect to Tax matters pertinent to the Company, as applicable, relating to any taxable period beginning on or before the Closing Date until the expiration of the statute of limitations (and any extensions thereof) of the respective taxable periods, and to abide by all record retention agreements entered into with any Taxing Authority; and (b) to give the other Party reasonable written notice prior to transferring, destroying or discarding any such books and records and, if the other Party so requests, Buyer or Seller, as the case may be, shall allow the other Party to take possession of such books and records. Buyer and Seller further agree, upon request, to use their Reasonable Efforts to obtain any certificate or other document from any Taxing Authority or any other Person as may be necessary to mitigate, reduce or eliminate any Tax that could be imposed (including, but not limited to, with respect to the transactions contemplated hereby). Buyer and Seller further agree, upon request, to provide the other Party with all information that either Party may be required to report pursuant to the Code and Treasury Regulations promulgated thereunder.

12.5  Tax Proceedings. Each Party hereto shall give prompt notice to the other Parties hereto of the assertion of any claim, or the commencement of any suit, action or proceeding with respect to any Tax liability or Tax Return of the Company (a **"Tax Proceeding"**) that relates to a Pre-Closing Tax Period or a Straddle Period. Seller shall have the right, at its own expense, to control all Tax Proceedings that relate solely to a Pre-Closing Tax Period but with reasonable reference to and co-operation with Buyer. If Seller assumes such defense, Buyer shall have the right to participate in the defense thereof and employ counsel, at its own expense, separate from the counsel employed by Seller and Seller shall not settle or otherwise compromise the Tax Proceeding without the prior written consent of Buyer, which consent shall not be unreasonably withheld, conditioned or delayed. If Seller does not assume such defense, Seller shall have the right to participate fully in the defense thereof and employ counsel, at its own expense, separate from the counsel of Buyer, and Buyer shall control (at its expense) such Tax Proceedings and Buyer shall not agree to any settlement with respect to such Tax Proceeding if such settlement could adversely affect any Tax liability of Seller (including any Affiliate thereof) or the Company without Seller's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Buyer shall control the handling, disposition and settlement of any other Tax Proceeding; provided that in the case of a Tax Proceeding relating to a Straddle Period, Seller shall have the right to participate fully in the defense thereof and employ counsel, at its own expense, separate from the counsel of Buyer and Buyer shall not agree to any settlement with respect to such Tax Proceeding if such settlement could adversely affect any Tax

liability of the Seller (or any Affiliate thereof) or the Company without Seller's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. To the extent of any conflict between this Section 12.5 and Article 13, this Section 12.5 shall control.

12.6     Transfer Taxes. Buyer shall pay one hundred percent (100%) of all federal, state and local transfer, documentary, sales, filing, recordation, use, stamp, registration or other similar Taxes resulting only from the purchase of Company as contemplated by this Agreement. If required by applicable Law, Seller shall collect from Buyer at Closing any transfer Taxes described in this Section 12.6.

12.7     Tax Refunds. Any Tax refunds that are received (or, in the case of a Straddle Period, that would have been received if the Straddle Period ended on the end of the Closing Date) by Buyer or any of its Affiliates (including, following the Closing, for the avoidance of doubt, the Company), and any amounts credited against any Tax to which Buyer or any of its Affiliates (including, following the Closing, for the avoidance of doubt, the Company) become entitled, that relate to any Pre-Closing Tax Period (or the portion of any Straddle Period ending on the end of the Closing Date) shall be for the account of Seller. Buyer shall pay over to Seller as additional purchase price for the Shares, any such refund received in cash or the amount of any such credit within thirty (30) days after entitlement thereto, in each case, net of any Taxes and reasonable out-of-pocket expenses incurred in connection with such refund or credit. At Seller's written request, Buyer shall timely and properly prepare, or cause to be prepared, and file, or cause to be filed any claim for refund, amended Tax Return, or other Tax Return required to obtain any available Tax refunds from any Pre-Closing Tax Period.

12.8 Closing/Post-Closing Matters. From and after the Closing and until no longer required by Law, Buyer shall: (a) accept receipt of the Company's Internal Revenue Service withholding tax form (IRS Form W-8BEN-E) and recognize Company as a "non- financial foreign entity" for purposes of the Foreign Account Tax Compliance Act **("FATCA");** (b) acknowledge and recognize that the Company is a "controlled foreign corporation" for purposes of U.S. federal tax under Internal Revenue Section 957; and (c) make or cause to be made the appropriate Internal Revenue Service remittances and filings related to Buyer's purchase of the Company.

# ARTICLE 13
# INDEMNIFICATION

13.1 Indemnification.

(a)     Subject to Sections 13.2 and 13.3, for a period of one (1) year after the Closing, Seller shall indemnify, defend, and hold harmless Buyer and its Affiliates (including, after Closing, the Company) and their respective stockholders, partners, members, officers, directors, representatives, employees, agents, fiduciaries, control persons, and successors and assigns (collectively, the **"Buyer Indemnified Parties"**) from and against all Losses incurred or suffered by any Buyer Indemnified Party resulting from any breach of any representation, warranty, covenant or agreement of Seller contained in this Agreement and any Taxes of Company for any taxable period ending prior to the Closing Date, and with respect to any Straddle Period, the portion of such period ending prior to the Closing Date. Buyer may offset any indemnification obligation of Seller to the Buyer Indemnified Parties against any amounts held by Buyer otherwise due to Seller.

(b)     Subject to Section 13.2 and Section 13.3, for a period of one (1) after the Closing, Buyer and the Company shall, jointly and severally, indemnify, defend and hold Seller and its Affiliates,

and their respective their respective stockholders, partners, members, officers, directors, representatives, employees, agents, fiduciaries, control persons, successors and assigns (collectively, the **"Seller Indemnified Parties"** and, together with Buyer Indemnified Parties, the **"Indemnified Parties"**) harmless from and against all Losses incurred or suffered by any Seller Indemnified Party resulting from (i) any breach of any covenant or agreement contained in this Agreement of: (1) Buyer (to be performed from and after the Effective Date); or (2) the Company (to be performed from and after the Closing), and (ii) any obligation or liability that is among the obligations and liabilities assumed by Buyer under the Assignment and Assumption Agreement, and (iii) any breach of any representation or warranty of Buyer, and (iv) any Taxes of Company for any taxable period ending on or before the Closing Date, and with respect to any Straddle Period, the portion of such period ending on and including the Closing Date, and (iv) any other obligation or liability of the Company arising from and after the Closing. The foregoing indemnification provisions shall not apply to any Losses resulting from the gross negligence or intentional misconduct of Seller or (prior to the Closing Date) Company.

13.2    <u>Survival</u>.

(a)    The representations and warranties set forth in <u>Articles 4</u> and 5 shall survive the Closing for a period of three (3) months, provided that (i) no claim for indemnification in respect of breaches of representations and warranties may be brought by an Indemnified Party unless and until the aggregate indemnifiable Losses suffered by such Indemnified Party have exceeded Ten Thousand Dollars ($10,000), and (ii) the aggregate liability of any Indemnifying Party in respect of breaches of representations and warranties shall be One Hundred Thousand Dollars ($100,000.00). The foregoing limitations shall not apply to any claims based on actual fraud or criminal misconduct. For the avoidance of doubt, nothing in this <u>Section 13.2(a)</u> shall limit a party's right to compel specific performance or injunctive relief under this Agreement.

(b)    The Parties' other covenants, agreements and obligations set forth herein shall survive indefinitely unless a different period is set forth herein.

13.3    <u>Additional Limitations on Liability</u>.

(a)    No Indemnifying Party shall have any liability under this <u>Article 13</u> to indemnify any Indemnified Party with respect to a Loss to the extent that the Loss arose from or was exacerbated by any action taken directly or indirectly by any Indemnified Party on or after the Closing Date.

(b)    Any Indemnified Party that becomes aware of a Loss for which it seeks indemnification under this <u>Article 13</u> shall use Reasonable Efforts to mitigate the Loss including claiming insurance coverage and payment of insurance claims and taking any actions reasonably requested by the Indemnifying Party, and an Indemnifying Party shall not be liable for any Loss to the extent that it is attributable to the Indemnified Party's failure to mitigate.

(c)    No Party shall have any liability for any Loss which would not have arisen but for any alteration or repeal or enactment of any Law after the Closing Date.

(d)    The Losses suffered by any Indemnified Party shall be calculated after giving effect to any amounts covered by Third Parties, including insurance proceeds, in each case net of the reasonable Third Party out-of-pocket costs and expenses associated with such recoveries (it being understood and agreed that the Indemnified Parties shall use their Reasonable Efforts to seek insurance recoveries in respect of Losses to be indemnified hereunder). If any insurance proceeds or other recoveries from Third Parties are actually realized (in each case calculated net of the reasonable Third Party out-of-pocket costs and expenses associated with such recoveries) by an Indemnified Party subsequent to the receipt by such Indemnified Party of an indemnification payment hereunder in respect of the claims to which such insurance proceedings or Third

Party recoveries relate, the Indemnified Party shall hold such amounts in trust and appropriate refunds shall be made promptly to the Indemnifying Party regarding the amount of such indemnification payment.

   (e)  The Losses suffered by any Indemnified Party shall be calculated after giving effect to any tax benefits received or to be received by such Indemnified Party. For purposes of this Section 13.3(e), "tax benefits" means any item of loss, deduction, credit, refund or any other Tax item that decreases Taxes paid or payable. Tax benefits are to be determined using the assumption that each party pays federal, state, local and non-U.S. Tax at the highest applicable tax rate for the Indemnified Party in question.

   (f) In no case shall Seller's aggregate indemnification obligation under Section 13.1 exceed the amount of the Purchase Price.

  1 3.4 Exclusive Remedy. After the Closing, the indemnification provisions set forth in this Article 13 are and shall be the sole and exclusive remedy of each Party (including the Seller Indemnified Parties, the Buyer Indemnified Parties and the Company) with respect to this Agreement, other than claims for actual fraud with an intent to deceive for which a Party suffering Losses arising therefrom may bring suit outside this Agreement; provided, however, this sentence shall not be deemed a waiver by any Party of its right to seek specific performance or injunctive relief in accordance with Section 14.6 in the case of another Party's failure to comply with the covenants made by such other Party to be performed after the Closing or to limit any Party's rights arising from and specific to any of the Ancillary Agreements. The parties agree and acknowledge that the indemnification provisions hereof shall, in addition to third-party claims, also cover claims for Losses incurred directly by a Party as a result of the other Party's default under the Agreement, also known as direct or "first party" claims.

## ARTICLE 14 MISCELLANEOUS

  14.1 Notices. Any notice, demand or communication required, permitted, or desired to be given hereunder shall be deemed effectively given when personally delivered, on the next Business Day after being sent by overnight courier, or five (5) calendar days after being deposited in the United States mail, with postage prepaid thereon, certified or registered mail, return receipt requested, addressed as follows:

   If to Buyer or (following Closing) the Company:

    TCI Holdings Inc.
    B7 Tabonuco Suite 1108, Guaynabo, 00968, Puerto Rico
    Attention: General Counsel

   with a copy (which shall not constitute Notice) to:

    Annapolis Consulting Group
    326 First Street, Unit 103| Annapolis, Maryland 21403
    Attention: Sean Logan

    -and-

    The Law Offices of Richard J. Corbi PLLC
    1501 Broadway, 12th Floor, New York, NY 10036
    Attention: Richard J. Corbi

   If to Seller or the Company (before Closing):

    Verity Health System of California, Inc.
    6300 Canoga Avenue, Suite 1500W

Woodland Hills, CA 93117
Attention: Howard Grobstein, Liquidating Trustee

with a copy (which shall not constitute Notice) to:

Dentons US LLP
601 South Figueroa St., Suite 2500 Los Angeles, CA
90017 Attention: Samuel R. Maizel, Esq.

or at such other address as one Party may designate by notice hereunder to the other Parties.

14.2    Entire Agreement. This Agreement, the Disclosure Schedules, the exhibits and schedules, and the documents referred to in this Agreement contain the entire understanding between the Parties with respect to the transactions contemplated hereby and supersede all prior or contemporaneous agreements, understandings, representations and statements, oral or written, between the parties on the subject matter hereof (the "*Superseded Agreements")*, which Superseded Agreements shall be of no further force or effect.

14.3    Successors and Assigns. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective successors and permitted assigns of the Parties hereto; provided, however, that no Party hereto may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other parties and any purported attempt to do so is void *ab initio* (it being understood that Seller shall not unreasonably withhold, delay or condition its consent to an assignment by Buyer and/or the Company of the obligations of Buyer and/or the Company (subsequent to Closing) to an Affiliate of Buyer).

14.4    Third Party Beneficiary. None of the provisions contained in this Agreement are intended by the Parties, nor shall they be deemed, to confer any benefit on any person not a party to this Agreement, except for the Parties' successors and permitted assigns, and except for any liquidating trustee or plan administrator for Seller's estate.

14.5    Severability. If any term, provision, condition or covenant of this Agreement or the application thereof to any Person or circumstance shall be held to be invalid or unenforceable to any extent in any jurisdiction, then the remainder of this Agreement and the application of such term, provision, condition or covenant in any other jurisdiction or to Persons or circumstances other than those as to whom or which it is held to be invalid or unenforceable, shall not be affected thereby, and each term, provision, condition and covenant of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

14.6    Specific Performance and Other Remedies. Each Party hereby acknowledges that the rights of each other Party to consummate the transactions contemplated hereby are special, unique and of extraordinary character and that, if any Party violates or fails or refuses to perform any covenant or agreement made by him or it herein, the non-breaching Parties may be without an adequate remedy at law. If any Party violates or fails or refuses to perform any covenant or agreement made by such Party herein, the non-breaching Parties may, subject to the terms hereof and in addition to any remedy at law for damages or other relief, institute and prosecute an action in any court of competent jurisdiction to enforce specific performance of such covenant or agreement or seek any other equitable relief. The Parties hereby agree not to raise any objections to the availability of the equitable remedy of specific performance to prevent or restrain breaches or threatened breaches of this Agreement by the other Parties and to specifically enforce the terms and provisions of this Agreement to prevent breaches or threatened breaches of, or to enforce compliance with, the covenants and obligations of such other Party.

14.7    Amendment. This Agreement may not be amended except by an instrument in writing signed by Buyer, Seller and the Company.

14.8    Waiver. Any term, covenant or condition of this Agreement may be waived at any time by the Party which is entitled to the benefit thereof but only by a written agreement signed by the Party expressly waiving such term or condition. The subsequent acceptance of performance hereunder by a Party shall not be deemed to be a waiver of any preceding breach by any other Party of any term, covenant or condition of this Agreement, other than the failure of such other Party to perform the particular duties so accepted, regardless of the accepting Party's knowledge of such preceding breach at the time of acceptance of such performance. The waiver of any term, covenant or condition shall not be construed as a waiver of any subsequent breach or failure to perform, or of any other term, covenant or condition of this Agreement.

14.9    Governing Law; Consent to Jurisdiction; WAIVER OF JURY TRIAL.

(a) This Agreement shall be construed, performed, and enforced in accordance with, and governed by, the laws of the State of California (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. In the event Seller is not subject to the jurisdiction of the Bankruptcy Court, the Parties agree that any matters arising under or in connection with this Agreement shall be brought in the state and federal courts sitting in for Los Angeles County, California. The Parties hereby consent to the jurisdiction of such court (as applicable) and waive their right to challenge any proceeding involving or relating to this Agreement on the basis of lack of jurisdiction over the Person or forum non conveniens.

(b) THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT.

14.10    Further Assurances. Seller shall execute, acknowledge and deliver to Buyer any and all other assignments, consents, approvals, conveyances, assurances, documents and instruments reasonably requested by Buyer at any time and shall take any and all other actions reasonably requested by Buyer at any time for the purpose of more effectively assigning, transferring, granting, conveying and confirming to Buyer, the Shares. After consummation of the transaction contemplated in this Agreement, the Parties agree to cooperate with each other and take such further actions as may be necessary or appropriate to effectuate, carry out and comply with all of the terms of this Agreement, the documents referred to in this Agreement and the transactions contemplated hereby.

14.11    Disclosure Schedules. Seller has set forth information on the Disclosure Schedules in a section that corresponds to the section of this Agreement to which the information relates. The Parties acknowledge and agree that (a) the Disclosure Schedules include certain items and information solely for informational purposes for the convenience of Buyer; and (b) the disclosure by Seller of any matter in the Disclosure Schedules shall not be deemed to constitute an acknowledgment by Seller that the matter is required to be disclosed by the terms of this Agreement or that the matter is material.

14.12    Counterparts. This Agreement may be executed by the Parties in any number of copy counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Counterpart signature pages to this Agreement transmitted by facsimile transmission, by electronic

mail in portable document format (".pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing an original signature.

14.13 <u>Privilege and Related Matters</u>. The Parties agree that neither Buyer nor the Company shall take any action to attempt to disqualify Dentons US LLP from representing Seller or any of its respective Affiliates in connection with any dispute relating to this Agreement, any agreement executed in connection herewith (including any Ancillary Agreement) or the transactions contemplated hereby based on the representation by Dentons US LLP in connection therewith on or prior to the Closing Date. All communications between the Company and Dentons US LLP pre-Closing shall be deemed to be attorney-client confidences that belong, from and after Closing, solely to Seller and not the Company or Buyer. Accordingly, from and after the Closing, neither the Company nor Buyer shall have access to any such communications, or to the files of Dentons US LLP (including as respecting the negotiation and consummation of the transactions contemplated hereby).

*[Signatures on following pages]*

IN WITNESS WHEREOF, the Parties have executed this Agreement, or caused this Agreement to be executed by their duly authorized representatives, all as of the Effective Date.

**BUYER        COMPANY**

TCI HOLDINGS INC.                                    MARILLAC INSURANCE COMPANY, LTD.


By:  By:

Name: Joseph K. Taussig                              Name:

Title: CEO    Title


**SELLER**

VERITY HEALTH SYSTEM OF CALIFORNIA, INC.


By:
Name:
Title:

Exhibit A

Form of Assignment and Assumption Agreement

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "***Agreement***") is entered into as of _____, 2020 (the "***Effective Date***"), by and between Verity Health System of California, Inc., a California nonprofit public benefit corporation (***"Seller"),¹*** and TCI Holdings Inc., a Puerto Rican domiciled holding company, (***"Buyer'"***). The Seller and Buyer are each referred to herein as a "***Party***" and collectively as the "***Parties***". Capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below).

### RECITALS

A.      Seller, Buyer, and Marillac Insurance Company Ltd., a Cayman Islands limited company, entered into a Stock Purchase Agreement dated as of December _____, 2020 (the ***"Purchase Agreement').***

B.      Pursuant to the Purchase Agreement, Seller agreed to sell and assign to Buyer, and Buyer agreed to purchase and assume from Seller, the rights of Seller to the Assumed Contracts and the Exempt Contracts as set forth on ***Exhibit A*** attached hereto (collectively, the ***"Subject Contracts"),²***and the obligations of Seller in respect of the Subject Contracts, subject to the terms and conditions set forth in the Purchase Agreement.

C.      Seller desires to transfer the Subject Contracts (and all of its rights, obligations and liabilities in respect of such Subject Contracts) to Buyer, and Buyer desires to accept such transfer and assume such rights, and assume such obligations and liabilities in respect of the Subject Contracts, in each case upon the terms and subject to the conditions set forth in the Purchase Agreement and this Agreement.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      Effective as of the Effective Date, Seller hereby sells, conveys, assigns, transfers and delivers to Buyer all of Seller's right, title and interest in, to and under the Subject Contracts.

2.      Effective as of the Effective Date, Buyer hereby (a) purchases and accepts the assignment, transfer and conveyance of Seller's right, title and interests in, under and to the Subject Contracts; and (b) subject in each case to the terms and conditions set forth in the Purchase Agreement, assumes, undertakes and agrees to pay, satisfy, perform or discharge in accordance with the terms thereof all of the obligations under the Subject Contracts.

3.      Each Party hereto shall execute and cause to be delivered to each other Party hereto such instruments, powers of attorney, and other documents, and shall take such other actions, as such other Party may reasonably request for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement. None of the provisions contained in this Agreement are intended by the Parties, nor shall they be deemed, to confer any benefit on any person not a party to this Agreement, except for the Parties' successors and permitted assigns, and except for any liquidating trustee or plan administrator for Seller's estate.

---

¹ Dentons NTD: Additional Seller-side parties to be added as necessary.

² Dentons NTD: Defined term "Exempt Contracts" to be added to Purchase Agreement to describe all contracts not subject to Bankruptcy Code Section 365.

4.      The terms of the Purchase Agreement, including, but not limited to, the terms related to the Subject Contracts, are incorporated herein by this reference. The Parties hereto acknowledge and agree that the terms of the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      This Agreement shall be construed, performed, and enforced in accordance with, and governed by, the laws of the State of California (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. In the event Seller is not subject to the jurisdiction of the Bankruptcy Court, the Parties agree that any matters arising under or in connection with this Agreement shall be brought exclusively in the state and federal courts sitting in or for Los Angeles County, California. The Parties hereby consent to the jurisdiction of such court (as applicable) and waive their right to challenge any proceeding involving or relating to this Agreement on the basis of lack of jurisdiction over the Person or forum non conveniens.

6.      This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

7.      If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date.

**SELLER:**

Verity Health System of California, Inc., a California nonprofit public benefit corporation

By:—
Name:
Title:

**BUYER:**

TCI Holdings Inc.,  a Puerto Rican domiciled holding company

By:
Name: Joseph K. Taussig
Title: CEO

[Signature Page to Assignment and Assumption Agreement]

EXHIBIT A Subject

Contracts (to be

listed)

Exhibit B

Form of General Release

# GENERAL RELEASE

THIS GENERAL RELEASE ("**_Release Agreement_**") is effective as of _____ __ , 2020 ("**_Effective Date_**"), by and among Verity Health System of California, Inc., a California nonprofit public benefit corporation **("Seller"),** Marillac Insurance Company, Ltd., a Cayman Islands insurance company (the "**_Company_**"), and TCI Holdings, Inc., a Puerto Rican domiciled holding company ("**_Buyer_**"). The Seller, Company and Buyer are each referred to herein as a **_"Party"_** and collectively as the "**_Parties_**".

## RECITALS

A.      The Parties have entered into that certain Stock Purchase Agreement dated December___ , 2020 (the "**_Purchase Agreement_**"), pursuant to which Seller has agreed to sell to Buyer all of the issued and outstanding equity interests in the Company;

B.      As a condition to the consummation of the transactions contemplated by the Purchase Agreement, each of Seller on the one hand, and Buyer and the Company, on the other hand, is required to deliver the releases set forth in this Release Agreement; and

C.      Each of Seller, on the one hand, and Buyer and the Company, on the other hand, desires to give this Release Agreement in order to induce the other to enter into and perform its obligations under the Purchase Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises set forth above, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereto hereby agree as follows:

1. <u>Definitions</u>. As used in this Release Agreement, the following capitalized terms have the meanings ascribed to them.

1.1      "**_Claims_**" means all claims, demands, Losses, charges, covenants, responsibilities, warranties, obligations, debts, violations, suits, counterclaims, cross claims, liabilities, costs, expenses (including attorneys' fees and court costs), rights to terminate and rescind, rights of action and causes of action of any kind or nature, as to each, whether known or unknown, disputed or undisputed, contingent or noncontingent, liquidated or unliquidated, or otherwise.

1.2      "**_Constituents_**" means past, present and future affiliate entities, parent entities, subsidiaries, divisions, owners, shareholders, members, trustees, receivers, executors, representatives, administrators, and the respective officers, directors, agents, managers, principals, members, employees, insurers, successors, assigns, representatives and professionals of each of them. For the avoidance of doubt, as this Release is provided as of the closing of the transactions contemplated by the Purchase Agreement, Buyer and the Company are each a "Constituent" of each other, and are excluded from "Constituents" with reference to Seller or its parent, subsidiary or affiliate entities.

1.3      "**_Excluded Matters_**" means (i) contractual obligations under and pursuant to the Purchase Agreement and the related documents, instruments, agreements and certificates executed and delivered on the date hereof in connection therewith, and (ii) any Claims brought by any party other than the Parties hereto or their Constituents.

1.4      "**_Losses_**" means all damages, liabilities, accounts, suits, awards, judgments, payments,

diminutions in value and other losses, costs and expenses, however suffered or characterized, including interest, costs and expenses of investigating and prosecuting any Claim, reference proceeding, lawsuit, arbitration or any appeal; all associated actual attorneys' fees, whether or not the Claim, reference proceeding, lawsuit or arbitration is ultimately defeated and, all amounts paid to compromise or settle any Claim, reference proceeding, lawsuit or arbitration.

    1.5    "***Seller Released Parties***" means Seller and its Constituents.

    1.6    "***Buyer Released Parties***" means Buyer and its Constituents.

2. <u>General Releases</u>.

    2.1 <u>Release by Seller</u>. Seller, for itself and its Constituents (for the avoidance of doubt, excluding the Company), hereby releases and forever discharges the Buyer Released Parties from any and all Claims based upon anything that has occurred or existed, or failed to occur or exist, from the beginning of time to the Effective Date, except for the Excluded Matters and the obligations under this Release Agreement. Seller acknowledges that this general release extends to claims which Seller or any of its Constituents does not know or suspect to exist in favor of such person or entity at the time of executing this Release Agreement, which if known may have materially affected its decision to enter into this Release Agreement. It is understood that the facts in respect of which this Release Agreement is given may hereafter turn out to be other than or different from the facts in that connection known or believed to be true. It is expressly acknowledged, and the risk assumed, that the facts may turn out to be so different and that this Release Agreement shall be in all respects effective and not subject to termination or rescission by any such difference in facts.

    2.1.1 <u>Seller's Waiver of California Civil Code Section 1542</u>.

        (a)    Seller, for itself and its Constituents (for the avoidance of doubt, excluding the Company), acknowledges that it is familiar with Section 1542 of the California Civil Code, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

        (b)    With respect to those Claims being released pursuant to <u>Section 2.1,</u> Seller, for itself and its Constituents (for the avoidance of doubt, excluding the Company), acknowledges that it is releasing unknown Claims and waives all rights it has or may have under California Civil Code Section 1542 or any similar state or local statute or ordinance under applicable law or other common law principle of similar effect. For purposes of this <u>Section 2.1,</u> Seller and its Constituents (for the avoidance of doubt, excluding the Company) shall be considered to be a creditor of the Buyer Released Parties.

Seller, by its authorized signatory, acknowledges and agrees to the matters described in this <u>Section 2.1</u> by providing its initials in the space provided below:

Seller

    2.2 <u>Release by the Buyer</u>. The Buyer, for itself and its Constituents, hereby releases and forever

discharges the Seller Released Parties from any and all Claims, whether known or unknown, based upon anything that has occurred or existed, or failed to occur or exist, from the beginning of time to the Effective Date, except for the Excluded Matters and the obligations under this Release Agreement. The Buyer acknowledges that this general release extends to Claims which the Buyer or any of its Constituents does not know or suspect to exist in favor of such person at the time of executing this Release Agreement, which if known may have materially affected its decision to enter into this Release Agreement. It is understood that the facts in respect of which this Release Agreement is given may hereafter turn out to be other than or different from the facts in that connection known or believed to be true. It is expressly acknowledged, and the the risk assumed, that the facts may turn out to be so different and this Release Agreement shall be in all respects effective and not subject to termination or rescission by any such difference in facts.

2.2.1 The Buyer's Waiver of California Civil Code Section 1542.

(a)    The Buyer, for itself and its Constituents, acknowledges that it is familiar with Section 1542 of the California Civil Code, which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b)    With respect to those Claims being released pursuant to Section 2.2, the Buyer, for itself and its Constituents, acknowledges that it is releasing unknown Claims and waives all rights it has or may have under California Civil Code Section 1542 or any similar state or local statute or ordinance under applicable law or other common law principle of similar effect. For purposes of this Section 2.2, the Buyer and its Constituents shall be considered to be a creditor of each of the Seller Released Parties.

The Buyer, by its authorized signatory, acknowledges and agrees to the matters described in this Section 2.2 by providing its initials in the space provided below:

Buyer

3.      Representations and Warranties. Each Party hereto represents and warrants to the others that, in entering into this Release Agreement, it (i) is doing so freely and voluntarily upon the advice of counsel and business advisors of its own choosing (or declined to do so, free from coercion, duress or fraud); (ii) has read and fully understands the terms and scope of this Release Agreement; (iii) realizes that it is final and conclusive, and intends it to be final and conclusive, as to the matters set forth in this Release Agreement; and (iv) has not assigned, transferred or conveyed to any third party all or any part of or partial or contingent interest in any of the Claims which are called for to be released by this Release Agreement, that it is aware of no third party who contends or claims otherwise, and that it shall not purport to assign, transfer or convey any such Claim in the future.

4.      Covenants.

4.1      Covenants of Seller. Seller irrevocably covenants to refrain and cause each of its Constituents to refrain from (i) asserting any Claim, or commencing, initiating or causing to be commenced, any proceeding of any kind against any Buyer Released Party, based upon any matter purported to be released pursuant to this Release Agreement, and (ii) assigning, transferring or conveying to any third party all or any part of or partial or contingent interest in any of the Claims which are called for to be released by this Release Agreement.

4.2      Covenants of the Buyer. The Buyer irrevocably covenants to refrain and cause each of its Constituents to refrain from (i) asserting any Claim, or commencing, initiating or causing to be commenced, any proceeding of any kind against any Seller Released Party, based upon any matter purported to be released pursuant to this Release Agreement, and (ii) assigning, transferring or conveying to any third party all or any part of or partial or contingent interest in any of the Claims which are called for to be released by this Release Agreement.

5.      Miscellaneous.

5.1      Buyer agrees that it shall cause its Constituents to comply with this Release Agreement, and shall be liable for the actions or omissions of Buyer's Constituents in respect of this Release Agreement. Seller agrees that it shall cause its Constituents to comply with this Release Agreement, and shall be liable for the actions or omissions of Seller's Constituents in respect of this Release Agreement.

5.2      This Release Agreement cannot be modified, altered or otherwise amended except by an agreement in writing signed by all of the Parties hereto.

5.3      This Release Agreement, together with the agreements referenced in this Release Agreement, constitutes the entire understanding between and among the Parties with respect to the subject matter of this Release Agreement. This Release Agreement supersedes any prior negotiations and agreements, oral or written, with respect to its subj ect matter. No representations, warranties, agreements or covenants have been made with respect to this Release Agreement, and in executing this Release Agreement, none of the Parties is relying upon any representation, warranty, agreement or covenant not set forth in this Release Agreement.

5.4      This Release Agreement may be executed in copy counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.

A signed copy of this Release Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Release Agreement.

5.5     This Release Agreement shall be binding upon and inure to the benefit of the Parties released pursuant to this Release Agreement and their respective successors and permitted assigns.

5.6     All terms used in any one number or gender shall extend to mean and include any other number and gender as the facts, context, or sense of this Release Agreement may require. Neither this Release Agreement nor any uncertainty or ambiguity in this Release Agreement shall be construed or resolved against the drafter, whether under any rule of construction or otherwise. On the contrary, this Release Agreement has been reviewed by all Parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the Parties. If any provision of this Release Agreement is susceptible to two or more constructions, one of which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision shall be given the meaning that renders it enforceable.

5.7     Any provision of this Release Agreement which is prohibited, unenforceable or not authorized in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition, unenforceability or non-authorization without invalidating the remaining provisions hereof or affecting the validity, enforceability or legality of such provision in any other jurisdiction.

5.8     Each of the Parties acknowledges that it had the right and opportunity to seek independent legal counsel of its own choosing in connection with the execution of this Release Agreement, and each of the Parties represents that it has either done so or that it has voluntarily declined to do so, free from coercion, duress or fraud.

5.9     This Release Agreement shall be construed, performed, and enforced in accordance with, and governed by, the laws of the State of California (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the Parties to this Release Agreement irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with this Release Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. In the event Seller is not subject to the jurisdiction of the Bankruptcy Court (or the Bankruptcy Court declines to hear any dispute arising under this Agreement), the Parties to this Release Agreement agree that any matters arising under or in connection with this Release Agreement shall be brought exclusively in the state and federal courts sitting in or for Los Angeles County, California. The Parties to this Release Agreement hereby consent to the jurisdiction of such court (as applicable) and waive their right to challenge any proceeding involving or relating to this Agreement on the basis of lack of jurisdiction over the person or entity or forum non conveniens.

**[SIGNATURE PAGE FOLLOWS]**

In witness whereof, the Parties have executed this Release Agreement to be executed as of the date first set forth above.

**BUYER**

TCI HOLDINGS, INC.

By:   _

Name:

Title:

**COMPANY**

MARILLAC INSURANCE COMPANY, LTD.

By:

Name:

Title:

**SELLER**

VERITY HEALTH SYSTEM OF CALIFORNIA, INC.

By:   _

Name:

Title:

[Signature Page to General Release]

Exhibit C

Purchase Price Matters

US $1,600,000 Cash at Closing

Forgiveness of the Professional and General Liability policy premiums.

Within the later of (i) three (3) months of the Closing Date or (ii) Buyer's actual receipt thereof, Buyer covenants to return to Seller premium from the cancellation of the Tower.

Issuance of an extended reporting period endorsements to the insured for a five year period covering losses of up to $5 million in the occurrence on the PL/GL primary layer without any aggregate limits. The assumption of these liabilities has already been reflected in the purchase price, so no further premium is required.

Exhibit D

Sale Order

SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
NICHOLAS A. KOFFROTH (Bar No. 287854)
nicholas.koffroth@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Post-Effective Date Debtors and
Special Counsel to the Liquidating Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,<br><br>    Reorganized Debtors.<br><br>☒ Affects All Debtors<br><br>☐ Affects Verity Health System of California, Inc.<br>☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center<br>☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures  - San Jose Dialysis, LLC<br><br>    Debtors and Debtors In Possession. | Lead Case No. 2:18-bk-20151-ER<br><br>Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER<br>Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER<br>Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER<br>Case No. 2:18-bk-20171-ER<br>Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER<br>Case No. 2:18-bk-20175-ER<br>Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER<br>Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER<br>Case No. 2:18-bk-20181-ER<br><br>Hon. Judge Ernest M. Robles<br><br>**ORDER GRANTING MOTION TO APPROVE TERMS AND CONDITIONS OF A PRIVATE SALE OF THE STOCK IN MARILLAC INSURANCE COMPANY, LTD. (CAYMAN) TO TCI HOLDINGS, INC.**<br>Hearing:<br>Date:      December 16, 2020<br>Time:      10:00 a.m.<br>Location: Courtroom 1568<br>               255 E. Temple St., Los Angeles, CA |

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

This matter came before the Court on the *Notice of Motion and Motion to Approve Terms and Conditions of a Private Sale of Stock in Marillac Insurance Company, Ltd. (Cayman) to Randall & Quilter II Holdings Limited* [Docket No.      ] (the "<u>Motion</u>"),[1] filed by Verity Health System of California, Inc. ("VHS") and the above-referenced affiliated debtors, the Post-Effective Date Debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (the "<u>Sellers</u>"), for the entry of an order, pursuant to §§ 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 9007, and 9014, and LBR 6004-1.[2] This order (the "<u>Sale Order</u>") relates to the sale of the stock of Marillac Insurance Company, Ltd. (Cayman) ("<u>Marillac</u>"), the Sellers' offshore captive insurance company (the "<u>Purchased Stock</u>"), pursuant to the Stock Purchase Agreement dated November        , 2020, attached as Exhibit A to the Motion (the "SPA").

The Court, having reviewed the Motion and the Objection and considered the statements, arguments and representations of the parties made at the hearing on the Motion (the "<u>Sale Hearing</u>"); and the entire record of these cases; and the Court, having determined that the relief sought in the Motion is in the best interests of the Sellers, the Liquidating Trustee, its beneficiaries and other stakeholders in these cases, and that the legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein and for the reasons set forth in the Court's tentative ruling, which the Court adopts as its final ruling [Docket No.      ] and which is incorporated herein by reference; and all objections to the Motion, having been settled by stipulation are approved by the Court; and after due deliberation and sufficient good cause appearing therefor:

/ / /

/ / /

/ / /

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion or the SPA, as applicable.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "LBR" references are to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the bankruptcy estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A), (M), (N) and (O). Venue of these cases is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Statutory Predicates</u>. The statutory predicates for the relief requested in the Motion are (i) §§ 105(a), 363(b), (f), (k), (l) and (m), (ii) Rules 2002(a)(2), 2002(c)(1) and (d), 6004 (a), (b), (c), (e), (f) and (h), 9006, 9007, 9013 and 9014, and (iii) LBR 6004-1 and 9013-1.

C.    <u>Notice</u>. As evidenced by the affidavits of service previously filed with the Court, the Liquidating Trustee has provided proper, timely, adequate and sufficient notice with respect to the following: (i) the Motion and the relief sought therein, including the entry of this Sale Order and the transfer and sale of the Purchased Stock, as set forth in the SPA; and (ii) the Sale Hearing and no further notice of the Motion, the relief requested therein or the Sale Hearing is required. The Liquidating Trust has also complied with all obligations to provide notice of the Sale Hearing. A reasonable opportunity to object and to be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.    <u>Title in the Purchased Stock</u>. The Purchased Stock constitutes property of VHS as Reorganized Debtor, which is the sole and lawful owner of the Purchased Stock.

E.    <u>Arm's Length Transaction</u>. The SPA and other documents and instruments (the "<u>Transaction Documents</u>") related to and connected with this transaction (the "<u>Transaction</u>") and the consummation thereof were negotiated and entered into by the Sellers and TCI Holdings, Inc. (the "Purchaser"), as Purchaser under the SPA without collusion, in good faith and through an arm's length bargaining process. Neither the Purchaser nor any of its affiliates or representatives is an "insider" of the Sellers or the Liquidating Trust, as that term is defined in § 101(31). None of the Sellers, the

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, made applicable to this proceeding pursuant to Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

Liquidating Trust, the Purchaser or their respective representatives engaged in any conduct that would cause or permit the Purchaser, any of the other Transaction Documents or the Transaction to be avoided under § 363(n), or have acted in any improper or collusive manner. The terms and conditions of the SPA and the other Transaction Documents, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against the Purchaser or any other party as set forth in § 363(n). The consideration provided by Purchaser is fair, adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivisions, including the State of California and the Cayman Islands.

F.  <u>Good Faith Purchaser</u>. Purchaser has proceeded in good faith and without collusion in all respects in connection with the sale process, in that: (i) Purchaser, in proposing and proceeding with the Transaction in accordance with the SPA, recognized that the Sellers were free to deal with other interested parties, subject to the provisions of the SPA; (ii) Purchaser agreed to provisions in the SPA that would enable the Sellers to accept a higher and better offer; (iii) all payments to be made by the Purchaser and other agreements entered into or to be entered into between the Purchaser and the Sellers in connection with the Transaction have been disclosed; (iv) the negotiation and execution of the SPA and related Transaction Documents were conducted in good faith and constituted an arm's length transaction; (v) the Purchaser did not induce or cause the chapter 11 filings by the Sellers; and (vi) the SPA was not entered into, and the Transaction being consummated pursuant to and in accordance with the SPA is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Sellers. The Purchaser is therefore entitled to all of the benefits and protections provided to a good-faith purchaser under § 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction, any terms or conditions of the Transaction or the Purchaser's status as a "good faith" purchaser.

G.  <u>Justification for Relief</u>. Good and sufficient reasons for approval of the SPA and the other Transaction Documents and the Transaction have been articulated to this Court in the Motion and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

1    at the Sale Hearing, and the relief requested in the Motion and set forth in this Sale Order is in the best

2    interests of the Liquidating Trust and its beneficiaries. The Sellers have demonstrated through the

3    Motion and other evidence submitted at the Sale Hearing both (i) good, sufficient and sound business

4    purpose and justification and (ii) compelling circumstances for the transfer and sale of the Purchased

5    Stock as provided in the SPA outside the ordinary course of business, and (iii) such transfer and sale is

6    an appropriate exercise of business judgment and in the best interests of the Sellers and the Liquidating

7    Trust and its beneficiaries.

8        H.    Free and Clear. In accordance with §§ 105(a), 363(b), and 363(f), the consummation of

9    the Transaction pursuant to the Transaction Documents shall be a legal, valid, and effective transfer and

10   sale of the Purchased Stock and shall vest in the Purchaser, through the consummation of the

11   Transaction, all of the Sellers' right, title, and interest in and to the Purchased Stock, free and clear of

12   all liens, claims, interests, rights of setoff, recoupment, netting and deductions, rights of first offer, first

13   refusal and any other similar contractual property, legal or equitable rights, and any successor or

14   successor-in-interest liability theories (collectively, the "Encumbrances"). The Sellers have

15   demonstrated that one or more of the standards set forth in § 363(f)(1)-(5) have been satisfied. Those

16   holders of Encumbrances who did not object, or who withdrew their objections, to the sale or the Motion

17   are deemed to have consented pursuant to § 363(f)(2). Those holders of Encumbrances who did object

18   fall within one or more of the other subsections of § 363(f).

19       I.    Prompt Consummation. The Sellers have demonstrated good and sufficient cause to

20   waive the stay requirement under Rule 6004(h). Time is of the essence in consummating the

21   Transaction, and it is in the best interests of the Sellers and the Liquidating Trust and its beneficiaries

22   to consummate the Transaction within the timeline set forth in the Motion and the SPA. The Court finds

23   that there is no just reason for delay in the implementation of this Order, and expressly directs entry of

24   judgment as set forth in this Order.

25       J.    Highest and Best Offer. The Sellers solicited offers for the Purchased Stock. The sale

26   process was conducted in a non-collusive manner and the sale to the Purchaser is in the best interests

27   of the Sellers and the Liquidating Trust and its beneficiaries and other stakeholders in the cases. There

28

was extensive marketing of the Purchased Stock by Lockton since 2019 as well as in 2020. The Sellers properly consulted with the Liquidating Trustee, Wells Fargo as the indenture trustee for the 2005 Bonds and the Committee[4] prior to selecting the Purchaser's bid as the highest and best offer for the Purchased Stock. The transfer and sale of the Purchased Stock to the Purchaser on the terms set forth in the SPA constitutes the highest and best offer for the Purchased Stock and will provide a greater recovery for the Sellers and the Liquidating Trust and its beneficiaries than would be provided by any other available alternative. The Sellers' and Liquidating Trustee's determination that the SPA constitutes the highest or best offer for the Purchased Stock constitutes a valid and sound exercise of their business judgment.

K.  <u>Legal and Factual Bases</u>. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The relief requested in the Motion is GRANTED and APPROVED in all respects to the extent provided herein.

2.  All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or provided for herein, including any reservation of rights included in such objections, are overruled on the merits with prejudice.

3.  Notice of the Motion, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with §§ 102(1) and 363, and Rules 2002, 6004, 9006, and 9007.

4.  Pursuant to §§ 105(a), 363(b) and 363(f), the Transaction, including the transfer and sale of the Purchased Stock to the Purchaser on the terms set forth in the SPA, is approved in all

---

[4] Specifically, the constituents consulted by the Sellers include the Howard Grobstein as Liquidating Trustee, the Post-Effective Date Official Committee of Unsecured Creditors and Wells Fargo Bank National Association, as bond indenture trustee ("Wells Fargo") under those certain bond indentures, dated as of February 1, 2005, as amended and supplemented, supported by the obligations arising in connection with those certain Loan Agreements, dated February 1, 2005, between the Daughters of Charity Health System and California Statewide Communities Development Authority for the benefit of the Series A, G and H Revenue Bonds (the "2005 Bonds").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

1  respects, and the Liquidating Trust is authorized and directed to consummate the Transaction in

2  accordance with the SPA, including, without limitation, by executing all of the Transaction

3  Documents (and any ancillary documents or instruments that may be reasonably necessary or desirable

4  to implement the SPA or the Transaction) and taking all actions necessary and appropriate to

5  effectuate and consummate the Transaction (including the transfer and sale of the Purchased Stock) in

6  consideration of the Purchase Price (as set forth in Exhibit C to the SPA) upon the terms set forth in

7  the SPA. The Sellers and the Purchaser shall have the right to make any mutually agreeable, non-

8  material changes to the SPA, which shall be in writing signed by both parties, without further order of

9  the Court provided, that after reasonable notice, the Post-Effective Date Official Committee of

10  Unsecured Creditors (the "Committee") and Wells Fargo as indenture trustee for the 2005 Bonds do not

11  object to such changes. Any timely objection by the aforementioned parties to any agreed non-material

12  changes to the SPA may be resolved by the Court on shortened notice.

13       5.     As of the closing of the Transaction as set forth in the SPA (the "Closing"), the

14  Transaction set forth in the SPA shall effect a legal, valid, enforceable and effective transfer and sale

15  of the Purchased Stock to the Purchaser free and clear of all Encumbrances as further set forth in the

16  SPA and this Sale Order. Upon the execution of the SPA and subject to the terms and conditions

17  thereof, the Transaction shall be enforceable against and binding upon, and not subject to rejection or

18  avoidance by, the Sellers, any successor thereto including a trustee or estate representative appointed

19  in the Bankruptcy Cases, including, but not limited to, the Liquidating Trust, the Sellers' estates, all

20  holders of any Claim(s) (as defined in the Bankruptcy Code) against the Sellers, whether known or

21  unknown, any holders of Encumbrances on all or any portion of the Purchased Stock, and all other

22  persons and entities.

23       6.     Subject to the fulfillment of the terms and conditions of the SPA, this Sale Order shall,

24  as of the Closing, be considered and constitute for all purposes a full and complete general assignment,

25  conveyance, and transfer of the Purchased Stock and/or a bill of sale transferring all of the Sellers'

26  rights, title and interest in and to the Purchased Stock to the Purchaser. Consistent with, but not in

27  limitation of the foregoing, each and every federal, state, and local governmental agency or

28

department, except as stated herein, is hereby authorized and directed to accept all documents and instruments necessary and appropriate to consummate the transactions contemplated by the SPA and approved in this Sale Order. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

7. Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Purchased Stock is hereby directed to surrender possession of such Purchased Stock either to (a) the Sellers before the Closing or (b) to the Purchaser or its designee upon the Closing, and to cooperate with the Sellers and the Purchaser in the Sellers' and the Purchaser's fulfillment of their obligations hereunder and pursuant to the SPA.

8. The transfer of the Purchased Stock pursuant to the Transaction Documents shall be a legal, valid, and effective transfer and shall, in accordance with, among other provisions, §§ 105(a), 363(b), and 363(f), and upon consummation of the Transaction, including, without limitation, payment of the Purchase Price to the Liquidating Trust, vest the Purchaser with all right, title, and interest in the Purchased Stock, free and clear of all Encumbrances. Upon closing of the Transaction, the Purchaser shall take title to and possession of the Purchased Stock as set forth in the SPA. The transfer of the Purchased Stock from the Sellers to the Purchaser constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the State of California.

9. Following the Closing, no holder of any Encumbrance against the Sellers or the Liquidating Trust or upon the Purchased Stock shall: (i) attempt to assert or enforce an Encumbrance against the Purchased Stock or the Purchaser; and/or (ii) interfere with the Purchaser's respective rights in, title to or use and enjoyment of the Purchased Stock. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Sellers to sell and transfer the Purchased Stock to the Purchaser.

10. The Purchaser shall not be deemed, as a result of any action taken in connection with, or as a result of the Transaction (including the transfer and sale of the Purchased Stock), to the maximum extent permitted by law by reason of any theory of law or equity with respect to any claims or liens against Sellers or the Purchased Stock, to: (i) be a successor, continuation or alter ego (or other

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

such similarly situated party) to or of the Sellers or their estates by reason of any theory of law or equity, including, without limitation, any bulk sales law, doctrine or theory of successor liability, or any theory or basis of liability, regardless of source of origin; or (ii) have, *de facto* or otherwise, merged with or into the Sellers; or (iii) be a mere continuation, *alter ego,* or substantial continuation of the Sellers. The Purchaser is not assuming any of the Sellers' debts.

11.     This Sale Order (i) shall be effective as a determination that, on Closing, all Encumbrances existing against the Purchased Stock before the Closing have been unconditionally released, discharged and terminated, and that the transfers and conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all persons and entities. If, following a reasonable written request made by the Sellers, any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances against the Purchased Stock shall not have delivered to the Sellers for use at or in connection with Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances which the person or entity has with respect to the Purchased Stock, then the Purchaser and/or the Sellers are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Stock.

12.     In accordance with the SPA, concurrently with the Closing, the Purchaser shall pay that portion of the Purchase Price due at Closing, by wire transfer of immediately available funds, to the Liquidating Trust subject to the adjustments set forth in the SPA. Any direct expenses of the Sale shall be disclosed by Sellers to the Liquidating Trustee, Wells Fargo as indenture trustee for the 2005 Bonds and the Committee in advance of the Closing.

13.     The terms and provisions of this Sale Order, as well as the rights granted under the Transaction Documents, shall continue in full force and effect and are binding upon the Sellers, the Liquidating Trust and any successor, or chapter 7 or chapter 11 trustee applicable to the Sellers, notwithstanding any such conversion, dismissal or order entry. Nothing contained in the chapter 11 plan in the Sellers' cases as confirmed by the confirmation order [Docket No. 5504], nor any order

dismissing the cases or converting the cases to a case under chapter 7, shall conflict with or derogate from the provisions of the SPA, any documents or instruments executed in connection therewith, or the terms of this Sale Order, provided however, that in the event of a conflict between this Sale Order and an express or implied provision of the SPA, this Sale Order shall govern. The provisions of this Sale Order and any actions taken pursuant hereto shall survive any conversion or dismissal of the cases and the entry of any other order that may be entered in the cases, including any order (i) converting the cases from chapter 11 to chapter 7; (ii) appointing a trustee or examiner in the cases; or (iii) dismissing the cases.

14. The Transaction contemplated by the SPA and other Transaction Documents are undertaken without collusion and in "good faith," as that term is defined in § 363(m). The Purchaser is a good faith purchaser within the meaning of § 363(m) and, as such, is entitled to the full protections of § 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate the Transaction shall not affect the validity of the sale of the Purchased Stock free and clear of Encumbrances to the Purchaser. The SPA and the Transactions contemplated thereby cannot be avoided under § 363(n).

15. The failure to specifically include any particular provision of the SPA or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Bankruptcy Court that the Transaction, the SPA and the other Transaction Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

16. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rules 6004(h), 7062, or 9014, if applicable, or any other LBR or otherwise, this Sale Order shall not be stayed for 14-days after the entry hereof, but shall be effective and enforceable immediately upon entry pursuant to Rule 6004(h). Time is of the essence in approving the Transaction (including the transfer and the sale of the Purchased Stock).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

17.     Unless otherwise provided in this Sale Order, to the extent any inconsistency exists between the provisions of the SPA and this Sale Order, the provisions contained in this Sale Order shall govern.

18.     This Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the SPA and this Sale Order in all respects, and further, including, without limitation, to (i) compel delivery of the Purchased Stock to the Purchaser free and clear of Encumbrances; (ii) compel the delivery of the Purchase Price or performance of other obligations owed to the Sellers; (iii) interpret, implement, and enforce the provisions of this Sale Order; and (iv) protect the Purchaser against (A) claims made relating to any liabilities retained by Seller, (B) any claims of successor or vicarious liability (or similar claims or theories) related to the Purchased Stock, or (C) any Encumbrances asserted on or against the Purchaser or the Purchased Stock.

19.     Notwithstanding anything to the contrary in the Motion, any Cure Notice or assumption notice, any purchase agreement, or this Sale Order (i) none of the insurance policies or any related agreements (collectively, the "Chubb Insurance Contracts") issued at any time by Federal Insurance Company, ACE American Insurance Company, Illinois Union Insurance Company and each of their affiliates and successors (collectively, "Chubb"), or any rights, benefits, claims, rights to payments and/or recoveries under the Chubb Insurance Contracts shall be sold, assigned or otherwise transferred to the Purchaser in connection with the Sale; (ii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (iii) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts; provided, however, that to the extent any claim with respect to any Purchased Stock arises that is covered by the Chubb Insurance Contracts and the proceeds of the applicable Chubb Insurance Contract would be payable to the Sellers (as opposed to a third party claimant), the Sellers may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"); provided, further, however, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

20.    The Post-Effective Date Debtors, the Liquidating Trust, the Committee and Wells Fargo as indenture trustee for the 2005 Bonds rights, and their ability to participate and be heard at hearings concerning the Sale, are hereby reserved. To the extent that the Liquidating Trust, Wells Fargo as indenture trustee for the 2005 Bonds or the Committee desire to file pleadings related to such hearings, their respective times for filing an objection or response shall be the same as granted to the Sellers pursuant to the notice in each such instance.

**IT IS SO ORDERED.**

###

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
PHONE (213) 623-9300

**<u>Exhibit B</u>**

**Proposed Form of Cure Notice**

**[TO BE FILED]**

Case 2:18-bk-20151-ER   Doc 2052-20   Filed 04/10/20   Entered 04/10/20 19:25:51   Desc
Main Document   Page 84 of 90      Page 109 of 264
Certification of Richard A. Cochran, Esq. with attachments

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2900 Adams St Ste C-225, Riverside, CA, 92504

A true and correct copy of the foregoing document entitled (*specify* **OBJECTION OF ANNAPOLIS CONSULTING GROUP, INC. AND TCI HOLDINGS, INC. TO DEBTORS' MOTION TO APPROVE TERMS AND CONDITIONS OF A PRIVATE SALE OF EQUITY INTERESTS IN MARILLAC INSURANCE COMPANY, LTD. TO RANDALL & QUILTER II HOLDINGS LIMITED PURSUANT TO § 363; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LISA WALL AND PETER C. CHADWICK THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/2/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On 12/2/2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**(Via FedEx Overnight)**
The Honorable Ernest M. Robles
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560/Courtroom 1568
Los Angeles, CA 90012-3300

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/2/2020 | Christopher M. Kiernan | *Christopher M Kiernan* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**     CONTINUED:

Counsel to Debtor Verity Health Systems of California, Inc.:
- Tania M. Moyron tania.moyron@dentons.com
- Samuel R. Maizel samuel.maizel@dentons.com
- Nicholas A. Koffroth nicholas.koffroth@dentons.com
- Henry C. Kevane hkevane@pszjlaw.com
- Shirley S. Cho scho@pszjlaw.com

Additional Attorneys/Parties:
- Alexandra Achamallah aachamallah@milbank.com, rliubicic@milbank.com
- Melinda Alonzo ml7829@att.com
- Robert N Amkraut ramkraut@foxrothschild.com
- Kyra E Andrassy kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com;
  Simon Aron saron@wrslawyers.com
- Lauren T Attard lattard@bakerlaw.com, agrosso@bakerlaw.com
- Allison R Axenrod allison@claimsrecoveryllc.com
- Keith Patrick Banner kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Cristina E Bautista cristina.bautista@kattenlaw.com, ecf.lax.docket@kattenlaw.com
- Tanya Behnam tbehnam@polsinelli.com,
  tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- James Cornell Behrens jbehrens@milbank.com,  gbray@milbank.com;
  mshinderman@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com
- Jacob Beiswenger jbeiswenger@omm.com, jacob-beiswenger-5566@ecf.pacerpro.com;swarren@omm.com
- Bruce Bennett bbennett@jonesday.com
- Peter J Benvenutti pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Leslie A Berkoff lberkoff@moritthock.com, hmay@moritthock.com
- Steven M Berman sberman@slk-law.com, mceriale@shumaker.com
- Stephen F Biegenzahn efile@sfblaw.com
- Scott E Blakeley seb@blakeleyllp.com, ecf@blakeleyllp.com
- Karl E Block kblock@loeb.com, jvazquez@loeb.com;ladocket@loeb.com;kblock@ecf.courtdrive.com
- J Scott Bovitz bovitz@bovitz-spitzer.com
- Dustin P Branch branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com
- Michael D Breslauer mbreslauer@swsslaw.com
  wyones@swsslaw.com;mbreslauer@ecf.courtdrive.com;wyones@ecf.courtdrive.com
- Chane Buck cbuck@jonesday.com
- Lori A Butler butler.lori@pbgc.gov, efile@pbgc.gov
- Howard Camhi hcamhi@mrllp.com, bankruptcy@mrllp.com;
  camhih98234@notify.bestcase.com;echun@mrllp.com;jkissinger@mrllp.com
- Barry A Chatz barry.chatz@saul.com, jurate.medziak@saul.com
- Shirley Cho scho@pszjlaw.com
- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Louis J. Cisz lcisz@nixonpeabody.com, jzic@nixonpeabody.com
- Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;olivia@lesliecohenlaw.com
- Marcus Colabianchi mcolabianchi@duanemorris.com
- Kevin Collins kevin.collins@btlaw.com, Tabitha.davis@btlaw.com
- Joseph Corrigan Bankruptcy2@ironmountain.com
- David N Crapo dcrapo@gibbonslaw.com, elrosen@gibbonslaw.com
- Mariam Danielyan md@danielyanlawoffice.com, danielyan.mar@gmail.com
- Brian L Davidoff bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                         **F 9013-3.1.PROOF.SERVICE**

- Aaron Davis aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- Lauren A Deeb lauren.deeb@nelsonmullins.com, maria.domingo@nelsonmullins.com
- Daniel Denny ddenny@milbank.com
- Kerry L Duffy kduffy@bzbm.com, cchou@bzbm.com
- Anthony Dutra adutra@hansonbridgett.com
- Kevin M Eckhardt kevin.eckhardt@gmail.com, keckhardt@hunton.com
- Lei Lei Wang Ekvall lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- David K Eldan david.eldan@doj.ca.gov, cynthia.gomez@doj.ca.gov
- Andy J Epstein taxcpaesq@gmail.com
- Richard W Esterkin richard.esterkin@morganlewis.com
- Christine R Etheridge christine.etheridge@ikonfin.com
- M Douglas Flahaut flahaut.douglas@arentfox.com
- Michael G Fletcher mfletcher@frandzel.com, sking@frandzel.com
- Alan W Forsley alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fllawyers.net,
  addy.flores@flpllp.com,laura.rucker@flpllp.com; Joseph D Frank jfrank@fgllp.com,
  mmatlock@fgllp.com;csmith@fgllp.com;jkleinman@fgllp.com;csucic@fgllp.com
- William B Freeman bill.freeman@kattenlaw.com, nicole.jones@kattenlaw.com,ecf.lax.docket@kattenlaw.com
- Eric J Fromme efromme@tocounsel.com, stena@tocounsel.com
- Amir Gamliel amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Jeffrey K Garfinkle jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com
- Thomas M Geher tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- Lawrence B Gill lgill@nelsonhardiman.com,
  rrange@nelsonhardiman.com;ksherry@nelsonhardiman.com;mmarkwell@nelsonhardiman.com
- Paul R. Glassman pglassman@sycr.com
- Matthew A Gold courts@argopartners.net
- Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Marshall F Goldberg mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- Richard H Golubow rgolubow@wghlawyers.com,
  pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Barry R Gore bgore@goreassociates.com, nnarag@goreassociates.com;r40600@notify.bestcase.com
- Arnold L Graff agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net,jcraig@wrightlegal.net
- Barbara R Gross barbara@bgross.law, luz@bgross.law
- David M. Guess guessd@gtlaw.com
- Anna Gumport agumport@sidley.com
- Mary H Haas maryhaas@dwt.com
- Craig N Haring charing@blankrome.com
- Melissa T Harris harris.melissa@pbgc.gov, efile@pbgc.gov
- James A Hayes jhayes@zinserhayes.com, jhayes@jamesahayesaplc.com
- Michael S Held mheld@jw.com
- Lawrence J Hilton lhilton@onellp.com
  lthomas@onellp.com,info@onellp.com,rgolder@onellp.com,lhyska@onellp.com,nlichtenberger@onellp.com
- Robert M Hirsh rhirsh@lowenstein.com
- Florice Hoffman fhoffman@socal.rr.com, floricehoffman@gmail.com
- Lee F Hoffman leehoffmanjd@gmail.com, lee@fademlaw.com
- Marshall J Hogan mhogan@swlaw.com, knestuk@swlaw.com
- Michael Hogue hoguem@gtlaw.com, SFOLitDock@gtlaw.com;navarrom@gtlaw.com
- Matthew B Holbrook mholbrook@sheppardmullin.com, amartin@sheppardmullin.com
- David I Horowitz david.horowitz@kirkland.com, keith.catuara@kirkland.com;
  terry.ellis@kirkland.com;elsa.banuelos@kirkland.com;ivon.granados@kirkland.com
- Virginia Hoyt scif.legal.bk@scif.com
  Brian D Huben hubenb@ballardspahr.com, carolod@ballardspahr.com
- Joan Huh joan.huh@cdtfa.ca.gov
- Carol A Igoe cigoe@calnurses.org, ttschneaux@calnurses.org

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 F 9013-3.1.PROOF.SERVICE

- Benjamin Ikuta bikuta@hml.law
- Peter L Isola PIsola@hinshawlaw.com, CKingsley@hinshawlaw.com
- Lawrence A Jacobson laj@cohenandjacobson.com
- John Mark Jennings johnmark.jennings@kutakrock.com, mary.clark@kutakrock.com
- Monique D Jewett-Brewster mjb@hopkinscarley.com, eamaro@hopkinscarley.com
- Crystal Johnson M46380@ATT.COM
- Gregory R Jones gjones@mwe.com, rnhunter@mwe.com
- Jeff D Kahane jkahane@duanemorris.com, dmartinez@duanemorris.com
- Steven J Kahn skahn@pszyjw.com
- Cameo M Kaisler salembier.cameo@pbgc.gov, efile@pbgc.gov
- Ivan L Kallick ikallick@manatt.com, ihernandez@manatt.com
- Ori Katz okatz@sheppardmullin.com, lsegura@sheppardmullin.com
- Gerald P Kennedy gerald.kennedy@procopio.com,
- kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Payam Khodadadi pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- Christian T Kim ckim@dumas-law.com, ckim@ecf.inforuptcy.com
- Jane Kim jkim@kellerbenvenutti.com
- Monica Y Kim myk@lnbrb.com, myk@ecf.inforuptcy.com
- Benjamin R King bking@loeb.com, karnote@loeb.com;ladocket@loeb.com;bking@ecf.courtdrive.com
- Gary E Klausner gek@lnbyb.com
- David A Klein david.klein@kirkland.com
- Nicholas A Koffroth nick.koffroth@dentons.com, chris.omeara@dentons.com
- Joseph A Kohanski jkohanski@bushgottlieb.com, kprestegard@bushgottlieb.com;gmccoy@bushgottlieb.com
- Jolene E Kramer bankruptcycourtnotices@unioncounsel.net, jkramer@unioncounsel.net
- David S Kupetz dkupetz@sulmeyerlaw.com,dperez@sulmeyerlaw.com;
  dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- Jeffrey S Kwong jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Darryl S Laddin bkrfilings@agg.com
- Robert S Lampl advocate45@aol.com, rlisarobinsonr@aol.com
- Richard A Lapping richard@lappinglegal.com
- Paul J Laurin plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com
- Nathaniel M Leeds nathaniel@mitchelllawsf.com, sam@mitchelllawsf.com
- David E Lemke david.lemke@wallerlaw.com,chris.cronk@wallerlaw.com;
  Melissa.jones@wallerlaw.com;cathy.thomas@wallerlaw.com
- Lisa Lenherr llenherr@wendel.com, bankruptcy@wendel.com
- Elan S Levey elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov
- Kerri A Lyman klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com;nmorneault@Steptoe.com
- Tracy L Mainguy bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net
- Samuel R Maizel samuel.maizel@dentons.com,
- alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howar
  d@dentons.com;joan.mack@dentons.com;derry.kalve@dentons.com
- Lloyd S Mann lmann@mannzarpas.com
- Alvin Mar alvin.mar@usdoj.gov, dare.law@usdoj.gov
- Craig G Margulies Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Kevin Meek kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Hutchison B Meltzer hutchison.meltzer@doj.ca.gov, Alicia.Berry@doj.ca.gov
- Angela Z Miller amiller@phillipslytle.com, styrone@phillipslytle.com
- Christopher Minier becky@ringstadlaw.com, arlene@ringstadlaw.com
- John A Moe john.moe@dentons.com, glenda.spratt@dentons.com
- Susan I Montgomery susan@simontgomerylaw.com, assistant@simontgomerylaw.com;
  simontgomerylawecf@gmail.com;montgomerysr71631@notify.bestcase.com
- Monserrat Morales Monsi@MarguliesFaithLaw.com,Vicky@MarguliesFaithLaw.com;
  Helen@marguliesfaithlaw.com;Angela@MarguliesFaithlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- Kevin H Morse kmorse@clarkhill.com, blambert@clarkhill.com
- Marianne S Mortimer mmartin@jmbm.com
- Tania M Moyron tania.moyron@dentons.com; chris.omeara@dentons.com; nick.koffroth@dentons.com;kathryn.howard@dentons.com;Sonia.martin@dentons.com; Isabella.hsu@dentons.com;lee.whidden@dentons.com;Jacqueline.whipple@dentons.com
- Randall P Mroczynski randym@cookseylaw.com
- Alan I Nahmias anahmias@mbnlawyers.com, jdale@mbnlawyers.com
- Akop J Nalbandyan jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- Jennifer L Nassiri jennifernassiri@quinnemanuel.com
- Charles E Nelson nelsonc@ballardspahr.com, wassweilerw@ballardspahr.com
- Sheila Gropper Nelson shedoesbklaw@aol.com
- Mark A Neubauer mneubauer@carltonfields.com, mlrodriguez@carltonfields.com;smcloughlin@carltonfields.com;ecfla@carltonfields.com
- Fred Neufeld fneufeld@sycr.com, tingman@sycr.com
- Bryan L Ngo bngo@fortislaw.com, BNgo@bluecapitallaw.com;SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com
- Abigail V O'Brient avobrient@mintz.com, docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com;ABLevin@mintz.com
- John R OKeefe jokeefe@metzlewis.com, slohr@metzlewis.com
- Matthew J Olson matthew.olson@dorsey.com, stell.laura@dorsey.com
- Scott H Olson solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Giovanni Orantes go@gobklaw.com, gorantes@or256law.com, cmh@gobklaw.com, gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- R Gibson Pagter gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com
- Paul J Pascuzzi ppascuzzi@ffwplaw.com, docket@ffwplaw.com
- Lisa M Peters lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com
- Christopher J Petersen cjpetersen@blankrome.com, gsolis@blankrome.com
- Mark D Plevin mplevin@crowell.com, cromo@crowell.com
- Steven G. Polard steven.polard@ropers.com, calendarlao@ropers.com;melissa.tamura@ropers.com;anthony.arriola@ropers.com
- David M Powlen david.powlen@btlaw.com, pgroff@btlaw.com
- Christopher E Prince cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Lori L Purkey bareham@purkeyandassociates.com
- William M Rathbone wrathbone@grsm.com, jmydlandevans@grsm.com;sdurazo@grsm.com
- Jason M Reed Jason.Reed@Maslon.com
- Jeffrey M. Reisner jreisner@steptoe.com, #-FirmPSDocketing@Steptoe.com; klyman@steptoe.com;nmorneault@Steptoe.com
- Michael B Reynolds mreynolds@swlaw.com, kcollins@swlaw.com
- J. Alexandra Rhim arhim@hrhlaw.com
- Emily P Rich erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net
- Robert A Rich , candonian@huntonak.com
- Lesley A Riis lriis@dpmclaw.com
- Debra Riley driley@allenmatkins.com
- Jason E Rios jrios@ffwplaw.com, docket@ffwplaw.com
- Julie H Rome-Banks julie@bindermalter.com
- Mary H Rose mrose@buchalter.com
- Douglas B Rosner drosner@goulstonstorrs.com
- Gregory A Rougeau grougeau@brlawsf.com
- Megan A Rowe mrowe@dsrhealthlaw.com, lwestoby@dsrhealthlaw.com
- Gregory M Salvato gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Nathan A Schultz nschultz@goodwinlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- Mark A Serlin ms@swllplaw.com, mor@swllplaw.com
- Seth B Shapiro seth.shapiro@usdoj.gov
- David B Shemano dshemano@shemanolaw.com
- Joseph Shickich jshickich@riddellwilliams.com
- Mark Shinderman mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Kyrsten Skogstad kskogstad@calnurses.org, rcraven@calnurses.org
- Michael St James ecf@stjames-law.com
- Joseph L Steinfeld jsteinfeld@askllp.com,
- lmiskowiec@askllp.com;mudem@askllp.com;bmcgrath@askllp.com;kcasteel@askllp.com
- Andrew Still astill@swlaw.com, kcollins@swlaw.com
- Jason D Strabo jstrabo@mwe.com, cfuraha@mwe.com;rorloff@mwe.com
- Sabrina L Streusand Streusand@slollp.com
- Ralph J Swanson ralph.swanson@berliner.com, sabina.hall@berliner.com
- Michael A Sweet msweet@foxrothschild.com, swillis@foxrothschild.com;pbasa@foxrothschild.com
- James M Toma james.toma@doj.ca.gov, teresa.depaz@doj.ca.gov
- Gary F Torrell gtorrell@health-law.com
- Gary D Underdahl , lmiskowiec@askllp.com Gary D Underdahl gunderdahl@askllp.com, lmiskowiec@askllp.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Cecelia Valentine cecelia.valentine@nlrb.gov
- Jason Wallach jwallach@ghplaw.com, g33404@notify.cincompass.com
- Kenneth K Wang kenneth.wang@doj.ca.gov, Jennifer.Kim@doj.ca.gov; Stacy.McKellar@doj.ca.gov;yesenia.caro@doj.ca.gov
- Phillip K Wang phillip.wang@rimonlaw.com, david.kline@rimonlaw.com
- Ashley R Wedding awedding@fabozzimillerlaw.com, dsandoval@fabozzimillerlaw.com
- Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- Adam G Wentland awentland@tocounsel.com, lkwon@tocounsel.com
- Latonia Williams lwilliams@goodwin.com, bankruptcy@goodwin.com
- Michael S Winsten mike@winsten.com
- Rebecca J Winthrop rebecca.winthrop@nortonrosefulbright.com, diana.cardenas@nortonrosefulbright.com
- Jeffrey C Wisler jwisler@connollygallagher.com, dperkins@connollygallagher.com
- Neal L Wolf nwolf@hansonbridgett.com, lchappell@hansonbridgett.com
- Christopher K.S. Wong christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Claire K Wu ckwu@sulmeyerlaw.com,
- mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- ☐ Steven D Wyllie steven.wyllie@nlrb.gov
- Hatty K Yip hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- Andrew J Ziaja aziaja@leonardcarder.com,
- sgroff@leonardcarder.com;msimons@leonardcarder.com;lbadar@leonardcarder.com
- Rose Zimmerman rzimmerman@dalycity.org

**2. SERVED BY UNITED STATES MAIL**:          **CONTINUED**:

| [JUDGES COPY VIA MAIL PER GENERAL ORDER 20-01 – GENERAL ORDER 20-03] Honorable Mark D. Houle United States Bankruptcy Court Central District of California 3420 Twelfth Street, Suite 365 Riverside, CA 92501-3819 | **DEBTOR:** Verity Health System of California, Inc. 2040 E. Mariposa Avenue El Segundo, CA 90245 | **COUNSEL FOR DEBTOR** Tania M. Moyron Samuel R. Maizel DENTONS US LLP 601 South Figueroa Street, Suite 2500 Los Angeles, California 90017-5704  Henry C. Kevane Shirley S. Cho |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | PACHULSKI STANG ZIEHL & JONES LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111 |
|---|---|---|

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**<u>Exhibit C</u>**



1  SCOTT TALKOV, State Bar No. 264676
2  CHRISTOPHER M. KIERNAN, State Bar No. 319804
   **TALKOV LAW CORP.**
3  2900 Adams St Ste C225
   Riverside, California 92504
4  Telephone: (951) 888-3300
   Email: scott@talkovlaw.com
5          chris@talkovlaw.com

6
7  Richard J. Corbi (*admitted pro hac vice*)
   **The Law Offices of Richard J. Corbi, PLLC**
8  1501 Broadway, 12th Floor
   New York, New York 10036
   Telephone: (646) 571-2033
9  Email: rcorbi@corbilaw.com

10
11 Counsel for Annapolis Consulting Group, Inc. and
   TCI Holdings, Inc.

12              **UNITED STATES BANKRUPTCY COURT**

13        **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

14

15 | In re | Lead Case No. 2:18-bk-20151-ER |
16 | VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*, | Jointly Administered With:<br>Case No. 2:18-bk-20162-ER<br>Case No. 2:18-bk-20163-ER |
17 | Debtors and Debtors In Possession. | Case No. 2:18-bk-20164-ER<br>Case No. 2:18-bk-20165-ER<br>Case No. 2:18-bk-20167-ER |
18 | ☒ Affects All Debtors | Case No. 2:18-bk-20168-ER<br>Case No. 2:18-bk-20169-ER |
19 | | Case No. 2:18-bk-20171-ER |
20 | ☐ Affects Verity Health System of California, Inc. | Case No. 2:18-bk-20172-ER<br>Case No. 2:18-bk-20173-ER |
21 | ☐ Affects O'Connor Hospital<br>☐ Affects Saint Louise Regional Hospital | Case No. 2:18-bk-20175-ER |
22 | ☐ Affects St. Francis Medical Center<br>☐ Affects St. Vincent Medical Center | Case No. 2:18-bk-20176-ER<br>Case No. 2:18-bk-20178-ER |
23 | ☐ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation | Case No. 2:18-bk-20179-ER<br>Case No. 2:18-bk-20180-ER |
24 | ☐ Affects Saint Louise Regional Hospital Foundation | Case No. 2:18-bk-20181-ER |
25 | ☐ Affects St. Francis Medical Center of Lynwood Foundation | |
26 | ☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc. | Hon. Judge Ernest M. Robles |
27 | ☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services | |
28 | ☐ Affects Verity Medical Foundation | |

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Debtors and Debtors In Possession.

**NOTICE OF MOTION AND MOTION OF ANNAPOLIS CONSULTING GROUP, INC. AND TCI HOLDINGS, INC. TO REOPEN THE AUCTION CONDUCTED IN RESPONSE TO THE DEBTORS' MOTION TO APPROVE TERMS AND CONDITIONS OF A PRIVATE SALE OF EQUITY INTERESTS IN MARILLAC INSURANCE COMPANY, LTD. TO RANDALL & QUILTER II HOLDINGS LIMITED PURSUANT TO § 363; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LISA WALL AND PETER C. CHADWICK THEREOF**

Hearing:

Date:      January 13, 2021
Time:      10:00 a.m.
Location: Courtroom 1568
               255 E. Temple St., Los Angeles, CA

   **PLEASE TAKE NOTICE** that at the above referenced date, time and location, Annapolis Consulting Group, Inc. ("ACG") and TCI Holdings, Inc., ("TCI", together with ACG, "ACG/TCI"), will move (the "Motion") the United States Bankruptcy Court for the Central District of California (the "Court"), pursuant to §§ 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), for the entry of an order: (i) re-open the auction conducted in open court on December 16, 2020 (the "Auction"), disqualify R&Q as a bidder and replace the Debtors' counsel and Lockton with counsel for the Liquidating Trustee (and former creditors' committee) to run the auction process, and conduct a new auction on regular notice in accordance with the Bankruptcy Rules or, (ii) in the alternative, deem ACG/TCI the winning bidder for the Marillac assets at $2.2 million, and (iii) granting such other relief as is just and appropriate under the circumstances.

   **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and the Declarations of Hugh F. Hill IV and Richard J. Corbi, Esq., the arguments of counsel, and other admissible evidence properly brought

before the Court at or before the hearing on this Motion, if any.  In addition, ACG/TCI request that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that any party opposing or responding to the Motion must file and serve the response ("Response"), pursuant to LBR 9013-1(f), on the moving party and the United States Trustee not later than 14 days before the date designated for the hearing.  A Response must be a complete written statement of all reasons in opposition thereto or in support, declarations and copies of all evidence on which the responding party intends to rely, and any responding memorandum of points and authorities.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to file and serve a timely objection to the Motion may be deemed by the Court to be consent to the relief requested therein.

DATED: December 19, 2020

**TALKOV LAW CORP.**

*Christopher M Kiernan*

By: _____

Scott Talkov
Christopher M. Kiernan
Attorneys for Annapolis Consulting Group,
Inc. and TCI Holdings, Inc.

**The Law Offices of Richard J. Corbi, PLLC**

*Richard J. Corbi*
_____

Richard J. Corbi (*admitted pro hac vice*)
Attorneys for Annapolis Consulting Group, Inc. and
TCI Holdings, Inc.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

## MEMORANDUM OF POINTS AND AUTHORITIES

Annapolis Consulting Group, Inc. ("ACG") and TCI Holdings, Inc., ("TCI", together with ACG, "ACG/TCI"), by and through its undersigned counsel, hereby files this Motion to Reopen the Auction Conducted in Response to the Debtors' Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof (the "Motion"). ACG/TCI also submits the *Declaration of Hugh F. Hill IV in Support of Annapolis Consulting Group, Inc. and TCI Holdings, Inc.'s Motion to Reopen the Auction Conducted in Response to the Debtors' Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* (the "Hill Declaration") in further support of this Motion. ACG/TCI respectfully states as follows:

## PRELIMINARY STATEMENT

1. "The conduct of bankruptcy proceedings not only should be right but must seem right." *See In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966). These auction proceedings have been far from being right or seeming right. Again, ACG/TCI is neither a jilted bidder seeking a "do over" nor an 11th hour bidder presenting a higher bid seeking to undo an auction after the auction and disrupting a fair and equitable process. Instead, it is the conduct of the Debtors and R&Q that have resulted in this motion practice. As the Court is aware, ACG/TCI participated in the auction conducted in open court on December 16, 2020 (the "Auction") and decided that it did not wish to bid beyond $2.2 million for the Marillac assets. As a result, R&Q was deemed the winning bidder at $2.3 million and ACG/TCI was deemed the backup bidder at $2.2 million. That was the end of this potential transaction for ACG/TCI. ACG/TCI returned deposits, transactions were unwound, and wrote off over $100,000 of professional fees.

2. Or so ACG/TCI thought until its undersigned counsel was contacted by counsel for the Debtors on the morning of December 17, 2020, less than eighteen (18) hours after the Auction. The

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1   Debtors informed ACG/TCI that R&Q's counsel did not have the authority to enter the bid it made at

2   the Auction and that ACG/TCI was now the winning bidder at $2.2 million.  At the request of the

3   Debtors, ACG/TCI immediately executed sale documents and prepared to close the acquisition of

4   Marillac.  Ten (10) hours later, the Debtors abruptly reneged on their prior statements, and stated that

5   R&Q was now the winning bidder.

6        3.      ACG/TCI played by the rules, prior to, during and after the Auction yet R&Q and the

7   Debtors did not.  As such, the Debtors cannot seek this Court's imprimatur to use ACG/TCI's back up

8   bid when it needs it at any given moment and then toss it aside when it is no longer needed.  That is

9   not how the bankruptcy process works.

10  ***TIMELINE***

11       4.      Beginning late on the evening of December 16, 2020, Debtors' counsel frantically

12  emailed ACG/TCI's counsel to speak either later that evening or first thing in the following morning.

13  *See generally*, Hill Declaration.

14       5.      On December 17, 2020 at approximately 8:00 a.m. (eastern), counsel for ACG/TCI was

15  contacted by Debtors' counsel and informed that (i) counsel for R&Q did not have requisite client

16  authority to submit a $2.3 million bid at the Auction; and (ii) as a result, ACG/TCI was the winning

17  bidder at the Auction with a bid of $2.2 million per the Court's amended Tentative Ruling (defined

18  below).  As a result, Debtors' counsel informed ACG/TCI's counsel that it intended to proceed with

19  ACG/TCI as the winning bidder at $2.2 million.  *See generally*, Hill Declaration.

20       6.      For the next several hours, ACG/TCI and its counsel began working feverishly with

21  Debtors' counsel to finalize and execute the transactions documents including the final SPA, sale order

22  and 363(m) declaration, as well as readying regulatory filings, and queuing a $2.2 million wire.  *See*

23  *generally*, Hill Declaration.

24       7.      After sending the 363(m) declaration and sale order to Debtors' counsel at around noon

25  eastern time on December 17, 2020, ACG/TCI awaited the final SPA and confirmation so that

26  ACG/TCI could wire the funds and formally close the transaction.  At 4:53 p.m. (eastern), Debtors

27  counsel, in complete contravention to its words, statements, and course of conduct over the prior

28

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

twenty (20) hours, emailed ACG/TCI's counsel, without any explanation, that the Debtors were closing the transaction with R&Q for $2.3 million. Despite multiple requests, no explanation was provided as to what caused the Debtors to completely shift positions and abandon their prior course of conduct and reverse course back to R&Q so quickly after using the ACG/TCI as a boomerang, to be tossed aside and ignored when no longer needed.

8.      ACG/TCI then spent the next twenty-four (24) hours attempting in good faith to resolve this with the Debtors, who ultimately ignored such requests, necessitating the filing of this Motion.

9.      Accordingly, ACG/TCI requests that the Court: (i) re-open the auction, disqualify R&Q as a bidder and replace the Debtors' counsel and Lockton with counsel for the Liquidating Trustee (and former creditors' committee) to run the auction process, and conduct a new auction on regular notice in accordance with the Bankruptcy Rules or, (ii) in the alternative, deem ACG/TCI the winning bidder at $2.2 million.

## **RELEVANT BACKGROUND**

10.      On August 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "Chapter 11 Cases") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court").

11.      On November 25, 2020, the Debtors filed a *Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* [Docket No. 6271] (the "Sale Motion").[1]

12.      On December 2, 2020, ACG/TCI filed its objection to the Sale Motion [Docket No. 6280].

13.      On December 9, 2020, the Debtors filed a reply to the ACG/TCI objection [Docket No. 6287].

14.      On December 15, 2020, the Court issued a tentative ruling (the "Tentative Ruling").

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Sale Motion.

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

15.     On December 15, 2020, the Debtors filed a *Supplement in Support of Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, Ltd. And Response to Tentative Ruling* [Docket No. 6309].

16.     On December 16, 2020, the Court conducted the Auction and issued an amended Tentative Ruling.

17.     Since being informed that R&Q's "winning bid" was made without authority, ACG/TCI's counsel has vigorously attempted to work with Debtors' counsel to close the sale of Marillac.  After being informed that R&Q's attorney had no authority to bid beyond $2.1 million at the Auction, ACG/TCI proceeded to execute the 363(m) Declaration forwarded by Mr. Richards, agree to further SPA amendments requested by Mr. Richards to benefit the Debtors, and spent tens of thousands of dollars (as well as unquantifiable amounts of credibility) to prepare to immediately close the acquisition of Marillac.  *See generally*, Hill Declaration.  ACG/TCI had $2.2 million ready to wire and was ready to begin filing the application to acquire Marillac with CIMA by 1 p.m. EST on December 17, 2020. *See generally*, Hill Declaration.  However, since late Thursday evening, Debtors' counsel has ceased all communication with ACG/TCI despite numerous attempts by ACG/TCI's counsel to contact Debtors' counsel.

18.     While ignoring ACG/TCI's counsel repeated requests, the Debtors filed its *Supplement Re Auction and Motion to Approve Terms and Conditions of Sale of Equity Interests in Marillac Insurance Company, Ltd.* (the "Supplement") [Docket No. 6334] late Friday afternoon, December 18, 2020.  As referenced in the Supplement, ACG/TCI requested, both directly and through counsel, a "principal to principal conference call and also requested Movants and the Court conduct another auction and explain the circumstances in open Court, expressing, among other things, frustration with the process." [Docket No. 6334, p. 2, lns. 9-11].  Debtors' counsel never responded to ACG/TCI, instead filing the Supplement in hopes of getting out in front of the erratic behavior that occurred in the past forty-eight hours.

19.     ACG/TCI has been told two different versions in two days as to why the Debtors were not going forward with R&Q.  First, it was R&Q's lawyer did not have requisite client authority at the

auction despite telling the Court otherwise. Second, it was a "typo" to an exhibit. These excuses raise

more questions than answers, especially among sophisticated investors and professionals.

## **OBJECTION**

20.     For the reasons set forth below, ACG/TCI requests that the Court: (i) re-open the

auction, disqualify R&Q as a bidder and disqualify Debtors' counsel and Lockton from participating in

the auction process, and conduct a new auction on regular notice in accordance with the Bankruptcy

Rules or, (ii) in the alternative, deem ACG/TCI the winning bidder at $2.2 million.

### A.     The Debtors Have Not Exercised their Sound Business Judgement Pursuant to Section 363 of the Bankruptcy Code.

21.     In conducting a sale under section 363 of the Bankruptcy Code, a debtor has a fiduciary

duty to maximize value by selecting the highest and best offer for its assets. *In re Flour City Bagels,*

*LLC*, 557 B.R. 53, 78 (Bankr. W.D.N.Y. 2016) (court denied debtors' sale of assets because, among

other things, the debtors failed to carry their burden that the sale price was indeed the highest and best

for the estate). For a sale to be approved pursuant to section 363 of the Bankruptcy Code, the debtor

must have exercised sound business judgment. *In re Ditech Holding Corp.*, 606 B.R. 544, 580 (Bankr.

S.D.N.Y. 2019) ("To obtain court approval of such a sale, the debtor or trustee must prove that the sale

is an exercise of its sound business judgment."). "As fiduciaries, the debtor in possession and its

managers are **obligated to treat all parties to the case fairly**, maximize the value of the estate, and

protect and conserve the debtor's property." *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr.

S.D.N.Y. 1998) (citations omitted) (emphasis added). The Debtors' duty is "to maximize the value of

the estate, not of a particular group of claimants." *Matter of Cent. Ice Cream Co.*, 836 F.2d 1068, 1072

(7th Cir. 1987).

22.     In accepting a bid for a sale of assets, the highest and best does not always mean

highest and best price. Ability to close and other non-economic factors, among other things, are

considered by courts in determining what is the highest and best bid. *See In re United Healthcare Sys.,*

*Inc.*, Civil Action No. 97-1159, 1997 U.S. Dist. LEXIS 5090 (D.N.J. Mar. 26, 1997) (highest bid was

not best bid); *In re HHH Choices Health Plan, LLC*, 554 B.R. 697, 713 (Bankr. S.D.N.Y. 2016)

(same).

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

23.     The Debtors have not demonstrated an exercise of their sound business judgment by their continued abuse and optionality with regards to ACG/TCI .  The Debtors use ACG/TCI when it suits their needs and dismiss ACG/TCI when they are no longer needed by the Debtors.

24.     The Debtors allege that ACG/TCI changed its bid by requesting to use R&Q's $100,000 Earned Interest Deposit as a credit towards its $2.2 million.  Because R&Q informed the Debtors they could not close, the Debtors' estate would retain the $100,000 deposit, as is usually the case when a successful bidder fails to close.  The Debtors never informed ACG/TCI about the ability to use the $100,000 as a credit.  Instead, the Debtors appear to have invented this, a third excuse, as to not proceed with the ACG/TCI winning bid when ACG/TCI was no longer useful to the Debtors.  *See* Supplement, Docket. No. 6334, p. 2, ln. 26; p. 3, lns. 1-3.  Regardless of whether ACG/TCI was permitted to use the R&Q $100,000 Earned Interest Deposit as a credit, ACG/TCI informed Debtors' counsel on the morning and afternoon of December 17, 2020 that it would go forward with its $2.2 million winning bid and close the acquisition of Marillac.

25.     Furthermore, R&Q has demonstrated that they cannot close, as is evidenced by their lawyer Robert Oliner's after the fact confessed lack of authority at the Auction and the "typo."  The ACG/TCI winning bid has none of the defects of R&Q's bid and as such, can close immediately.  Accordingly, ACG/TCI should be deemed the winning bidder with its $2.2 million bid.

**B.    The Court Should Reopen the "Auction" to Remedy the Defects in the Post-Auction Process Committed by the Debtors and R&Q or in the Alternative, Deem ACG/TCI the Winning Bidder.**

26.     The Debtors have a fiduciary duty to maximize the value of their estate by selecting the highest or otherwise best bid for their assets. *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010); *see, e.g., In re GSC, Inc.*, 453 B.R. 132, 169 (Bankr. S.D.N.Y. 2011); *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

27.     In the context of a section 363 sale, a bankruptcy court has the ability to reopen an auction, especially to address irregularities in the process. *See In re Global Crossing, Ltd.*, 295 B.R.

726, 745 (Bankr. S.D.N.Y. 2003) (court explained that: "If this Court were to believe, for half a second, that the Debtors spurned a better offer to the detriment of their fiduciary duties, this Court would not hesitate to invoke its powers."); *In re Financial News Network, Inc.*, 980 F.2d 165, 170 (2d Cir. 1992) (affirming the district court's ruling allowing the bankruptcy court to reopen the auction); *In re Food Barn Stores, Inc.*, 107 F.3d 558 at 568 (affirming the decision to reopen bidding to consider and accept higher offers, placing substantial emphasis on what is in the best interest of the estate when deciding whether to reopen bidding in a properly conducted auction); *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 762-63 (7th Cir. 2004) (affirming the bankruptcy court's approval of the debtors' decision to reopen bidding upon receiving a higher bid after the close of the auction and observing that "financial gain for the estate and its creditors might suffice as a basis for reopening the bidding without an additional showing that the initial bids were grossly inadequate or that the original bidding was tainted by fraud or some other irregularity"); *In re W. Biomass Energy, LLC*, Case No. 12-21085, 2013 Bankr. LEXIS 3166, at *6-9 (Bankr. D. Wy. Aug. 3, 2013) (court reopened auction because, *inter alia*, the auction benefitted only one party and there were other irregularities).

28.    Since the conclusion of the Auction, this process has consisted of irregularities, discrepancies and changing reasons for the Debtors seeking to use the ACG/TCI winning bid and shifting excuses for why R&Q could not close.  First, it was the "lawyer [for R&Q] didn't have the authority" to bid over $2.1 million at the Auction.  Second, it was a "typo" (albeit an expensive one).  Third, it was a phantom bid change when ACG/TCI requested that the Debtors' use a deposit that became the Debtors' property when the other bidder (R&Q) failed to close.  Since the conclusion of the Auction and set forth in the Hill Declaration, the pattern of behavior of the Debtors and R&Q raises serious questions about the process and requires this Court's intervention.

29.    The only way to remedy these defects is for the Court to reopen the auction, disqualify R&Q's bid, disqualify Lockton and Debtors' counsel from conducting the auction on behalf of the Debtors' estates, and appoint the Liquidating Trustee's counsel (the former creditors' committee counsel) to lead the auction with the Liquidating Trustee.  In the event the Court, consistent with its Tentative Ruling, believes that further marketing is not necessary and a new auction is not required,

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1  ACG/TCI requests that the Court deem ACG/TCI the purchaser of Marillac with its winning bid of

2  $2.2 million.

3      30.    Alternatively, to the extent that the Court declines to enter on order on the relief

4  requested without holding a hearing on the Motion, ACG/TCI requests that: (i) the Court stay the

5  entrance of the *Order Granting Motion to Approve Terms and Conditions of a Sale of the Stock in*

6  *Marillac Insurance Company, Ltd. to Randall & Quilter II Holdings Limited and the Back-Up Bid of*

7  *Annapolis Consulting Group/TCI Holdings* [*See* Docket No. 6337] until the Motion is heard, (ii) set a

8  hearing on the Motion for January 13, 2021 at 10:00 a.m. pursuant to Local Bankruptcy Rule 9013-1

9  and Federal Rule of Bankruptcy Procedure 9013, and (3) order all parties to appear at the January 13,

10  2021 hearing so that the auction may held at the hearing.

11      **C.  Reservation of Rights.**

12      31.    ACG/TCI reserve all rights to conduct discovery and pursue any and all claims against

13  the Debtors, the Debtors' counsel, Lockton and R&Q in the appropriate forum.

15  DATED: December 19, 2020                    **TALKOV LAW CORP.**

16                                              *Christopher M Kiernan*

17                                   By: _____

18                                        Scott Talkov
                                          Christopher M. Kiernan
19                                        Attorneys for Annapolis Consulting Group,
                                          Inc. and TCI Holdings, Inc.

21                                        **The Law Offices of Richard J. Corbi, PLLC**

22                                        *Richard J. Corbi*
                                   _____
23                                        Richard J. Corbi (*admitted pro hac vice*)
                                          Attorneys for Annapolis Consulting Group, Inc. and
24                                        TCI Holdings, Inc.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

## DECLARATION OF RICHARD J. CORBI, ESQ.

I, Richard J. Corbi, Esq., hereby state and declare as follows:

1.        I submit this declaration (the "<u>Declaration</u>")[2] in support of: (I) the *Motion of Annapolis Consulting Group, Inc. and TCI Holdings, Inc. to Reopen the Auction Conducted in Response to the Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* (the "<u>Motion</u>"); (II) in response to the *Debtors' Supplement in Support of Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, Ltd. And Response to Tentative Ruling* [Docket No. 6309]; and (III) in support of the *Declaration of Hugh F. Hill, IV Motion of Annapolis Consulting Group, Inc. and TCI Holdings, Inc. to Reopen the Auction Conducted in Response to the Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* (the "<u>Hill Declaration</u>") and response to the *Debtors' Supplement in Support of Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, Ltd. And Response to Tentative Ruling* [Docket No. 6309].

2.        I am an attorney and founder of The Law Offices of Richard J. Corbi PLLC with offices located in New York, New York.  I am a member of the bar of the State of New York and the District Court for the Southern District of New York

3.        I am counsel to ACG/TCI in these Chapter 11 Cases.

4.        I am admitted *pro hac vice* in this Bankruptcy Court for the Central District of California in these Chapter 11 Cases. [Docket No. 6298]

5.        As referenced in the Hill Declaration, roughly seven (7) hours after the conclusion of the 12/16 Hearing, I received an e-mail from Mr. Robert Richards of Dentons (US) LLP requesting to speak that evening or first thing in the morning the following day.  A true and correct copy of that e-mail is

---

[2] Capitalized terms used in this Declaration, but not defined, shall have the meanings ascribed to them in the Motion.

attached to the Hill Declaration as **Exhibit A**.  Given the time difference, I was asleep at that time and spoke with Debtors' counsel the following morning at around 8:00 a.m. (EST) as a result of the e-mail I received.

6.     Per the telephonic and written representations of Mr. Richards, I was informed that R&Q's counsel, Oliner had not been authorized to bid at the $2.3 million amount on behalf of R&Q at the 12/16 Hearing.  A true and correct copy of that email is attached to the Hill Declaration as **Exhibit B**.

7.     As referenced in the Hill Declaration, after roughly five (5) hours of non-responsiveness, at approximately 4:53 p.m. (EST), Mr. Richards contacted me by e-mail to inform me that R&Q had done a complete reversal, and now R&Q had actually decided to pay the $2.3 million after all.  A true and correct copy of that email is attached to the Hill Declaration as **Exhibit C**.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 19th day of December, 2020, in New York, New York.

*Richard J. Corbi*
RICHARD J. CORBI, ESQ.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

- 12 -

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

## DECLARATION OF HUGH F. HILL IV

I, Hugh F. Hill IV, hereby state and declare as follows:

1.      I submit this declaration (the "Declaration")[3] in support of the *Motion of Annapolis Consulting Group, Inc. and TCI Holdings, Inc. to Reopen the Auction Conducted in Response to the Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* (the "Motion") and response to the *Debtors' Supplement in Support of Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, Ltd. And Response to Tentative Ruling* [Docket No. 6309].

2.      I am a Partner in TCI and serve as a Senior Advisor to ACG.  As noted in the Objection, ACG is an affiliate of TCI.  Except as otherwise noted, the facts set forth herein are personally known to me and, if called as a witness, I could and would testify thereto.

3.      I refer and expressly incorporate my prior declarations made to this Court.

4.      On December 16, 2020, commencing at approximately 10:10 am PST, I participated in the Court-supervised auction for the sale of 100% of the equity of Marillac (the "12/16 Hearing") on behalf of ACG & TCI.  I formally appeared telephonically (as did representatives from ACG, TCI and ACG/TCI's financial partner in the Marillac acquisition) and acted through our counsel, Richard Corbi, Esq., who was expressly authorized to speak with binding authority on our behalf.

5.      During the 12/16 an attorney and partner of Duane Morris LLP, Ron Oliner ("Oliner") purported to appear on behalf of R&Q.  Oliner claimed in open court and on the record that he had full authority to act on behalf of R&Q at the 12/16 Hearing.

6.      In good faith, and in reliance on Oliner's representations to this Court, I actively participated in the 12/16 Hearing.  Our opening bid in the 12/16 Hearing was $1.6 million, with $100,000 bid increments.  Oliner vigorously participated in the 12/16 Hearing, topping each of our bids within seconds by $100,000 increments, even requesting, again purportedly on behalf of R&Q, that the Court

---

[3] Capitalized terms used in this Declaration, but not defined, shall have the meanings ascribed to them in the Motion.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

reverse its ruling from the prior day expressly not permitting the payment of any bid protections such as an expense reimbursement or break-up fee.  At no time during the 12/16 Hearing, did Oliner indicate in any way shape or form that he acted with anything other than perfect authority on behalf of R&Q.

7.     Given the Debtors' constantly shifting positions, we did not have enough time to seriously evaluate the current status of Marillac to offer anything beyond $2.2 million at the 12/16 Hearing.

8.     Oliner, again purporting to act on behalf of R&Q, offered $2.3 million for Marillac and was declared by this Court, to be the winner of the auction and buyer of Marillac. The Court further ordered that we, TCI & ACG, were the 'backup bidder' at $2.2 million.

9.     While disappointed, we respected the Court's decision and proceeded to unwind the steps taken (funds dedicated, Cayman counsel paid, deposits made, other costly steps, etc.) to complete the Marillac acquisition, at no small economic cost.

10.     Roughly seven (7) hours after the conclusion of the 12/16 Hearing, our counsel, Mr. Corbi, received an e-mail from Dentons requesting to speak that evening or first thing in the morning the following day.  A true and correct copy of that e-mail is attached hereto as **Exhibit A**.  Given the time difference, Mr. Corbi was, like myself, asleep at that time.   When we both came online at approximately 8:00 a.m. EST on December 17, we were surprised by the messages communicated by the Debtors' counsel, Robert Richards, Esq., Global Chair of the Bankruptcy Practice of Dentons.  Per the telephonic and written representations of Mr. Richards, Oliner had not been authorized to bid on behalf of R&Q at the 12/16 Hearing in the capacity that Oliner had represented.  A true and correct copy of that email is attached hereto as **Exhibit B**.

11.     Mr. Richards asked if we, TCI & ACG, were still willing to honor our commitment at the 12/16 Hearing to purchase Marillac for $2.2 million.

12.     We, of course in continued good faith, agreed to honor our commitment and Mr. Richards' requests to purchase Marillac, in light of R&Q's reneging on its purported commitment during the 12/16 Hearing.  I executed the 363(m) Declaration forwarded by Mr. Richards, agreed to further SPA amendments requested by Mr. Richards to benefit the Debtors, and spent tens of thousands of

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

dollars (as well as unquantifiable amounts of credibility) to prepare to immediately close the acquisition of Marillac. We had $2.2 million ready to wire and the application to acquire Marillac ready to begin the filing process with CIMA by 1:00 p.m. EST on December 17, 2020. All other business was stopped and opportunities foregone to close the sale on December 17 as requested by Mr. Richards. As we told Mr. Richards, all we required was an email from him confirming that we were the winning bidder so we could wire the money, close the transaction, file the application with CIMA and buy Marillac.

13.  In representations to ACG/TCI's counsel, Mr. Richards said he would send the requested email as soon as they determined whether or not to keep R&Q's $100,000 earnest money deposit. Given the history of the proceedings, ACG/TCI refused to wire the money or execute the revised final SPA (which we had not received from the Debtors) and 363(m) Declaration (such declaration was executed subject to receiving the winning bidder email confirmation), or submit the CIMA application without written confirmation from the Debtors' counsel that their oral representations were in fact factual and that we were the winning bidder.

14.  After roughly five (5) hours of non-responsiveness, at approximately 4:53 p.m. EST, Mr. Richards contacted Mr. Corbi (by email) to inform him that R&Q had done a complete reversal, and now R&Q had actually decided to pay the $2.3 million after all. No explanation was provided to myself or counsel to ACG & TCI for the complete reversal of position by Debtors' counsel and R&Q. A true and correct copy of that email is attached hereto as **Exhibit C**.

15.  While greatly aggrieved by this continuing pattern of behavior and disregard for the rules of equity and this Court, we sat down our partners who were immediately inclined to commence litigation and, in good faith, proposed to Dentons that we would not pursue litigation over the conduct of the last forty-eight (48) hours if they would re-open the bidding process before this Court and actually conduct a fair, transparent, and honest auction with TCI/ACG as the starting bid at $2.2 million. We, as many of us are former bankruptcy attorneys, recognize the clear duty to the estate that the Debtors' counsel has and wished to facilitate that as greatly as possible, despite what had transpired.

16.  I also requested a principal to principal conversation with the Liquidating Trustee, both directly and through counsel, to attempt a resolution. Unfortunately, like the last twenty-seven (27)

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

months of good faith offers, the offers to re-open the auction and / or engage with the Liquidating Trustee were also ignored

17. Despite these acts, we remain committed to this transaction. Since our first offer to purchase Marillac in September of 2018, we have and will be the Debtors' best avenue for monetizing the Marillac asset and the best-protection for its insureds.

18. We previously agreed and continued to agree to reimburse the Debtors for any expenses/costs incurred should the sale of Marillac close after December 31, 2020. Accordingly, there should actually be a full and fair process for the sale of Marillac under the auspices of this Court and the Liquidating Trustee.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 19th day of December, 2020, in New York, New York.

_/s/ Hugh H. Hill[4]_
HUGH H. HILL

---

[4] Pursuant to the Court's *Amended General Order 20-06* (made applicable by *Amended General Order 20-09*), the Debtors (i) are unable to obtain the foregoing party's holographic signature due to a lack of required technology, (ii) obtained the party's permission to sign the document on the party's behalf, and (iii) will obtain and file the holographic signature required pursuant to LBR 9011-1(a) upon request of the Court. *See Am. General Order 20-06*, at ¶ 8 (Bankr. C.D. Cal. Sep. 11, 2020); *see also Am. General Order 20-09*, at ¶ 2 (Bankr. C.D. Cal. Oct. 9, 2020).

# EXHIBIT A

The Law Offices of Richard Corbi - RE: ACG/TCI - Verity - Marillac - Non Monetary Points

Case 23-01305-JKS Doc 58-38 Filed 04/11/24 Entered 04/11/24 10:51:25 Desc
Certification of Richard Corbi, Esq. w/ exhibits Page 135 of 264

12/16/20, 10:16 AM

Page 10 of 37



Richard Corbi <rcorbi@corbilaw.com>

# RE: ACG/TCI - Verity - Marillac - Non Monetary Points

1 message

**Richards, Robert E.** <robert.richards@dentons.com>
To: Richard Corbi <rcorbi@corbilaw.com>

Wed, Dec 16, 2020 at 9:28 PM

Please give me a call on my mobile tonight or first thing in the morning.  630 235 2470



Robert E. Richards
Global Chair, Restructuring, Insolvency & Bankruptcy

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 312 876 7396   |   M +1 630 235 2470   |   US Internal 17396
robert.richards@dentons.com
Bio   |   Website

Dentons US LLP
233 South Wacker Drive, Suite 5900, Chicago, IL 60606-6361

Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > Hamilton Harrison & Mathews > Mardemootoo Balgobin > HPRP > Zain & Co. > Delany Law > Dinner Martin > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, December 16, 2020 11:05 AM
**To:** Richards, Robert E. <robert.richards@dentons.com>

**Cc:** Hugh Hill <hhill@taussigcapital.ch>
**Subject:** ACG/TCI - Verity - Marillac - Non Monetary Points

[External Sender]

Hi Bob,

I spoke with ACG/TCI on the non monetary points.  We're good on your MAE issue.  I'm circling back with Marathon on the additional information for ORIC.

Thanks,

Rich

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

# <u>EXHIBIT B</u>

The Law Offices of Richard Corbi mail - RE: ACG/TCI - Verity - Marillac    4/16/20, 10:18 AM
Case 22-31320-15F1 RDD Doc 5278 Filed 04/11/24 Entered 04/11/24 09:05:25 Desc
Certification of Richard Corbi Esq. with exhibits    Page 138 of 264



Richard Corbi <rcorbi@corbilaw.com>

---

# RE: ACG/TCI - Verity - Marillac
1 message

---

**Richards, Robert E.** <robert.richards@dentons.com>                Thu, Dec 17, 2020 at 10:33 AM
To: Richard Corbi <rcorbi@corbilaw.com>
Cc: "Moyron, Tania M." <tania.moyron@dentons.com>

It was a phone call with R&Q's counsel.

We need to discuss the rest of your email with the Liquidating Trustee and will circle back with you today once we have done that.

In the meantime to move things along, please review and comment on the 363(m) declaration I sent you already  and when we send them to you, the Sale Order and Final ACG SPA.

Thanks.

---

**DENTONS**    Robert E. Richards
Global Chair, Restructuring, Insolvency & Bankruptcy

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 312 876 7396   |   M +1 630 235 2470   |   US Internal 17396
robert.richards@dentons.com
Bio   |   Website

Dentons US LLP
233 South Wacker Drive, Suite 5900, Chicago, IL 60606-6361

Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > Hamilton Harrison & Mathews > Mardemootoo Balgobin > HPRP > Zain & Co. > Delany Law > Dinner Martin > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, December 17, 2020 9:02 AM
**To:** Richards, Robert E. <robert.richards@dentons.com>
**Subject:** Re: ACG/TCI - Verity - Marillac

**[External Sender]**

Hi Bob,

Can you respond to my email below regarding the communications from R&Q to Duane Morris to Dentons?  Was the authority in writing or was it a phone call?  Also, please confirm in writing that we are the winning bidder at $2.2 as discussed on our call this morning.

Thanks,

Rich

On Thu, Dec 17, 2020 at 9:05 AM Richard Corbi <rcorbi@corbilaw.com> wrote:

Good morning Bob,

My client requests that the $100,000 deposit that R&Q has with debtors be credited to the $2.2 million purchase price.  The Debtors have our $100,000 deposit to credit towards the sale.

As the backup bidder we will proceed at $2.2 million.  Please send the draft of the sale order.

Also, is there an email or other written documentation between R&Q and its counsel, Duane Morris (the attorney at the auction and anyone else on the phone or in this deal) who said the limit was $2.1 million?

Thanks,

Rich

--

# Richard J. Corbi

### The Law Offices of Richard J. Corbi PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

# Richard J. Corbi

### The Law Offices of Richard J. Corbi PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply

e-mail and then delete this message and its attachments.

# EXHIBIT C



<span style="color:gray">Richard Corbi &lt;rcorbi@corbilaw.com&gt;</span>

---

# RE: ACG/TCI - Verity - Marillac
1 message

---

**Moyron, Tania M.** <tania.moyron@dentons.com>                                     Thu, Dec 17, 2020 at 5:34 PM
To: Richard Corbi <rcorbi@corbilaw.com>, "Richards, Robert E." <robert.richards@dentons.com>


Thanks for the email, Rich.  The Judges in the Central District don't do Chambers' conferences, but do
status conferences, etc.  We'll file a supplement to the motion and happy to discuss any concerns at
your convenience.  Best.


大成 **DENTONS**        Tania M. Moyron
                     Partner

                     Visit the **New Dynamic Hub**, available to our clients and communities as part of Dentons'
                     commitment across 75+ countries, to address accelerating change resulting from the pandemic.

                     D +1 213 243 6101   |   M +1 310 402 4284   |   US Internal 36101
                     tania.moyron@dentons.com
                     Bio   |   Website

                     Dentons US LLP


                     Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International >
                     Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín
                     Rencoret > Hamilton Harrison & Mathews > Mardemootoo Balgobin > HPRP > Zain & Co. >
                     Delany Law > Dinner Martin > For more information on the firms that have come together to
                     form Dentons, go to dentons.com/legacyfirms


                     Dentons is a global legal practice providing client services worldwide through its member firms and
                     affiliates. This email may be confidential and protected by legal privilege. If you are not the intended
                     recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete
                     this copy from your system. Please see dentons.com for Legal Notices.

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, December 17, 2020 1:59 PM
**To:** Richards, Robert E. <robert.richards@dentons.com>

**Cc:** Moyron, Tania M. <tania.moyron@dentons.com>
**Subject:** Re: ACG/TCI - Verity - Marillac

**[External Sender]**

Bob,

I will get back to you regarding a chambers' conference with the judge that I brought up.  This is highly suspect and the court needs to hear what has occurred.  This is not a typical winning bidder, back up bidder situation.  Please tell me what change took place between 8 am eastern and 5 pm eastern.

Rich

On Thu, Dec 17, 2020 at 4:53 PM Richards, Robert E. <robert.richards@dentons.com> wrote:

R&Q has decided to proceed with its final $2.3 million bid from yesterday's auction which ACG declined to overbid.

I will send you a form of SPA as back up bidder shortly.

It was good working with you on this.

 **Robert E. Richards**
Global Chair, Restructuring, Insolvency & Bankruptcy

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 312 876 7396   |   M +1 630 235 2470   |   US Internal 17396
robert.richards@dentons.com
Bio   |   Website

Dentons US LLP
233 South Wacker Drive, Suite 5900, Chicago, IL 60606-6361

Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > Hamilton Harrison & Mathews > Mardemootoo Balgobin > HPRP > Zain & Co. > Delany Law > Dinner Martin > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, December 17, 2020 3:26 PM
**To:** Richards, Robert E. <robert.richards@dentons.com>; Moyron, Tania M. <tania.moyron@dentons.com>
**Subject:** ACG/TCI - Verity - Marillac

**[External Sender]**

Hi Bob and Tania,

Are you sending the SPA over?  I have a lot of people on my side asking what's going on and would like an update.

Thanks,

Rich

--

## Richard J. Corbi

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

The Law Offices of Richard J. Corbi, PLLC Mail - Corbi (Solera) - married with attachments
Case 22-18303-RLM-7 Doc 53-38 Filed 04/11/22 Entered 04/11/22 09:51:50 Desc
Certification of Richard J. Corbi Main Document Esq. with attachments Page 146 of 264
4/9/20, 10:25 AM

rcorbi@corbilaw.com | www.corbilaw.com


ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.


--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649


rcorbi@corbilaw.com | www.corbilaw.com


ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2900 Adams St Ste C-225, Riverside, CA, 92504

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION OF ANNAPOLIS CONSULTING GROUP, INC. AND TCI HOLDINGS, INC. TO REOPEN THE AUCTION CONDUCTED IN RESPONSE TO THE DEBTORS' MOTION TO APPROVE TERMS AND CONDITIONS OF A PRIVATE SALE OF EQUITY INTERESTS IN MARILLAC INSURANCE COMPANY, LTD. TO RANDALL & QUILTER II HOLDINGS LIMITED PURSUANT TO § 363; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LISA WALL AND PETER C. CHADWICK THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/19/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 12/19/2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**(Via FedEx Overnight)**
The Honorable Ernest M. Robles
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560/Courtroom 1568
Los Angeles, CA 90012-3300

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/19/2020 | Christopher M. Kiernan | *Christopher M Kiernan* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:    CONTINUED:

Counsel to Debtor Verity Health Systems of California, Inc.:
- Tania M. Moyron tania.moyron@dentons.com
- Samuel R. Maizel samuel.maizel@dentons.com
- Nicholas A. Koffroth nicholas.koffroth@dentons.com
- Henry C. Kevane hkevane@pszjlaw.com
- Shirley S. Cho scho@pszjlaw.com

Additional Attorneys/Parties:
- Alexandra Achamallah aachamallah@milbank.com, rliubicic@milbank.com
- Melinda Alonzo ml7829@att.com
- Robert N Amkraut ramkraut@foxrothschild.com
- Kyra E Andrassy kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
  Simon Aron saron@wrslawyers.com
- Lauren T Attard lattard@bakerlaw.com, agrosso@bakerlaw.com
- Allison R Axenrod allison@claimsrecoveryllc.com
- Keith Patrick Banner kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Cristina E Bautista cristina.bautista@kattenlaw.com, ecf.lax.docket@kattenlaw.com
- Tanya Behnam tbehnam@polsinelli.com,
  tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- James Cornell Behrens jbehrens@milbank.com,  gbray@milbank.com;
  mshinderman@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com
- Jacob Beiswenger jbeiswenger@omm.com, jacob-beiswenger-5566@ecf.pacerpro.com;swarren@omm.com
- Bruce Bennett bbennett@jonesday.com
- Peter J Benvenutti pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Leslie A Berkoff lberkoff@moritthock.com, hmay@moritthock.com
- Steven M Berman sberman@slk-law.com, mceriale@shumaker.com
- Stephen F Biegenzahn efile@sfblaw.com
- Scott E Blakeley seb@blakeleyllp.com, ecf@blakeleyllp.com
- Karl E Block kblock@loeb.com, jvazquez@loeb.com;ladocket@loeb.com;kblock@ecf.courtdrive.com
- J Scott Bovitz bovitz@bovitz-spitzer.com
- Dustin P Branch branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com
- Michael D Breslauer mbreslauer@swsslaw.com
  wyones@swsslaw.com;mbreslauer@ecf.courtdrive.com;wyones@ecf.courtdrive.com
- Chane Buck cbuck@jonesday.com
- Lori A Butler butler.lori@pbgc.gov, efile@pbgc.gov
- Howard Camhi hcamhi@mrllp.com, bankruptcy@mrllp.com;
  camhihr98234@notify.bestcase.com;echun@mrllp.com;jkissinger@mrllp.com
- Barry A Chatz barry.chatz@saul.com, jurate.medziak@saul.com
- Shirley Cho scho@pszjlaw.com
- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Louis J. Cisz lcisz@nixonpeabody.com, jzic@nixonpeabody.com
- Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;olivia@lesliecohenlaw.com
- Marcus Colabianchi mcolabianchi@duanemorris.com
- Kevin Collins kevin.collins@btlaw.com, Tabitha.davis@btlaw.com
- Joseph Corrigan Bankruptcy2@ironmountain.com
- David N Crapo dcrapo@gibbonslaw.com, elrosen@gibbonslaw.com
- Mariam Danielyan md@danielyanlawoffice.com, danielyan.mar@gmail.com
- Brian L Davidoff bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

- Aaron Davis aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- Lauren A Deeb lauren.deeb@nelsonmullins.com, maria.domingo@nelsonmullins.com
- Daniel Denny ddenny@milbank.com
- Kerry L Duffy kduffy@bzbm.com, cchou@bzbm.com
- Anthony Dutra adutra@hansonbridgett.com
- Kevin M Eckhardt kevin.eckhardt@gmail.com, keckhardt@hunton.com
- Lei Lei Wang Ekvall lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- David K Eldan david.eldan@doj.ca.gov, cynthia.gomez@doj.ca.gov
- Andy J Epstein taxcpaesq@gmail.com
- Richard W Esterkin richard.esterkin@morganlewis.com
- Christine R Etheridge christine.etheridge@ikonfin.com
- M Douglas Flahaut flahaut.douglas@arentfox.com
- Michael G Fletcher mfletcher@frandzel.com, sking@frandzel.com
- Alan W Forsley alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fllawyers.net,
  addy.flores@flpllp.com,laura.rucker@flpllp.com; Joseph D Frank jfrank@fgllp.com,
  mmatlock@fgllp.com;csmith@fgllp.com;jkleinman@fgllp.com;csucic@fgllp.com
- William B Freeman bill.freeman@kattenlaw.com, nicole.jones@kattenlaw.com,ecf.lax.docket@kattenlaw.com
- Eric J Fromme efromme@tocounsel.com, stena@tocounsel.com
- Amir Gamliel amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Jeffrey K Garfinkle jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com
- Thomas M Geher tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- Lawrence B Gill lgill@nelsonhardiman.com,
  rrange@nelsonhardiman.com;ksherry@nelsonhardiman.com;mmarkwell@nelsonhardiman.com
- Paul R. Glassman pglassman@sycr.com
- Matthew A Gold courts@argopartners.net
- Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Marshall F Goldberg mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- Richard H Golubow rgolubow@wghlawyers.com,
  pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Barry R Gore bgore@goreassociates.com, nnarag@goreassociates.com;r40600@notify.bestcase.com
- Arnold L Graff agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net,jcraig@wrightlegal.net
- Barbara R Gross barbara@bgross.law, luz@bgross.law
- David M. Guess guessd@gtlaw.com
- Anna Gumport agumport@sidley.com
- Mary H Haas maryhaas@dwt.com
- Craig N Haring charing@blankrome.com
- Melissa T Harris harris.melissa@pbgc.gov, efile@pbgc.gov
- James A Hayes jhayes@zinserhayes.com, jhayes@jamesahayesaplc.com
- Michael S Held mheld@jw.com
- Lawrence J Hilton lhilton@onellp.com,
  lthomas@onellp.com,info@onellp.com,rgolder@onellp.com,lhyska@onellp.com,nlichtenberger@onellp.com
- Robert M Hirsh rhirsh@lowenstein.com
- Florice Hoffman fhoffman@socal.rr.com, floricehoffman@gmail.com
- Lee F Hoffman leehoffmanjd@gmail.com, lee@fademlaw.com
- Marshall J Hogan mhogan@swlaw.com, knestuk@swlaw.com
- Michael Hogue hoguem@gtlaw.com, SFOLitDock@gtlaw.com;navarrom@gtlaw.com
- Matthew B Holbrook mholbrook@sheppardmullin.com, amartin@sheppardmullin.com
- David I Horowitz david.horowitz@kirkland.com, keith.catuara@kirkland.com;
  terry.ellis@kirkland.com;elsa.banuelos@kirkland.com;ivon.granados@kirkland.com
- Virginia Hoyt scif.legal.bk@scif.com
  Brian D Huben hubenb@ballardspahr.com, carolod@ballardspahr.com
- Joan Huh joan.huh@cdtfa.ca.gov
- Carol A Igoe cigoe@calnurses.org, ttschneaux@calnurses.org

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    F 9013-3.1.PROOF.SERVICE

- Benjamin Ikuta bikuta@hml.law
- Peter L Isola PIsola@hinshawlaw.com, CKingsley@hinshawlaw.com
- Lawrence A Jacobson laj@cohenandjacobson.com
- John Mark Jennings johnmark.jennings@kutakrock.com, mary.clark@kutakrock.com
- Monique D Jewett-Brewster mjb@hopkinscarley.com, eamaro@hopkinscarley.com
- Crystal Johnson M46380@ATT.COM
- Gregory R Jones gjones@mwe.com, rnhunter@mwe.com
- Jeff D Kahane jkahane@duanemorris.com, dmartinez@duanemorris.com
- Steven J Kahn skahn@pszjw.com
- Cameo M Kaisler salembier.cameo@pbgc.gov, efile@pbgc.gov
- Ivan L Kallick ikallick@manatt.com, ihernandez@manatt.com
- Ori Katz okatz@sheppardmullin.com, lsegura@sheppardmullin.com
- Gerald P Kennedy gerald.kennedy@procopio.com,
- kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Payam Khodadadi pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- Christian T Kim ckim@dumas-law.com, ckim@ecf.inforuptcy.com
- Jane Kim jkim@kellerbenvenutti.com
- Monica Y Kim myk@lnbrb.com, myk@ecf.inforuptcy.com
- Benjamin R King bking@loeb.com, karnote@loeb.com;ladocket@loeb.com;bking@ecf.courtdrive.com
- Gary E Klausner gek@lnbyb.com
- David A Klein david.klein@kirkland.com
- Nicholas A Koffroth nick.koffroth@dentons.com, chris.omeara@dentons.com
- Joseph A Kohanski jkohanski@bushgottlieb.com, kprestegard@bushgottlieb.com;gmccoy@bushgottlieb.com
- Jolene E Kramer bankruptcycourtnotices@unioncounsel.net, jkramer@unioncounsel.net
- David S Kupetz dkupetz@sulmeyerlaw.com,dperez@sulmeyerlaw.com; dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- Jeffrey S Kwong jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Darryl S Laddin bkrfilings@agg.com
- Robert S Lampl advocate45@aol.com, rlisarobinsonr@aol.com
- Richard A Lapping richard@lappinglegal.com
- Paul J Laurin plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com
- Nathaniel M Leeds nathaniel@mitchelllawsf.com, sam@mitchelllawsf.com
- David E Lemke david.lemke@wallerlaw.com,chris.cronk@wallerlaw.com; Melissa.jones@wallerlaw.com;cathy.thomas@wallerlaw.com
- Lisa Lenherr llenherr@wendel.com, bankruptcy@wendel.com
- Elan S Levey elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov
- Kerri A Lyman klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com;nmorneault@Steptoe.com
- Tracy L Mainguy bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net
- Samuel R Maizel samuel.maizel@dentons.com,
- alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com;derry.kalve@dentons.com
- Lloyd S Mann lmann@mannzarpas.com
- Alvin Mar alvin.mar@usdoj.gov, dare.law@usdoj.gov
- Craig G Margulies Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Kevin Meek kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Hutchison B Meltzer hutchison.meltzer@doj.ca.gov, Alicia.Berry@doj.ca.gov
- Angela Z Miller amiller@phillipslytle.com, styrone@phillipslytle.com
- Christopher Minier becky@ringstadlaw.com, arlene@ringstadlaw.com
- John A Moe john.moe@dentons.com, glenda.spratt@dentons.com
- Susan I Montgomery susan@simontgomerylaw.com, assistant@simontgomerylaw.com; simontgomerylawecf@gmail.com;montgomerysr71631@notify.bestcase.com
- Monserrat Morales Monsi@MarguliesFaithLaw.com,Vicky@MarguliesFaithLaw.com; Helen@marguliesfaithlaw.com;Angela@MarguliesFaithlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                           **F 9013-3.1.PROOF.SERVICE**

- Kevin H Morse kmorse@clarkhill.com, blambert@clarkhill.com
- Marianne S Mortimer mmartin@jmbm.com
- Tania M Moyron tania.moyron@dentons.com; chris.omeara@dentons.com;
  nick.koffroth@dentons.com; kathryn.howard@dentons.com;Sonia.martin@dentons.com;
  Isabella.hsu@dentons.com;lee.whidden@dentons.com;Jacqueline.whipple@dentons.com
- Randall P Mroczynski randym@cookseylaw.com
- Alan I Nahmias anahmias@mbnlawyers.com, jdale@mbnlawyers.com
- Akop J Nalbandyan jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- Jennifer L Nassiri jennifernassiri@quinnemanuel.com
- Charles E Nelson nelsonc@ballardspahr.com, wassweilerw@ballardspahr.com
- Sheila Gropper Nelson shedoesbklaw@aol.com
- Mark A Neubauer mneubauer@carltonfields.com,
  mlrodriguez@carltonfields.com;smcloughlin@carltonfields.com;ecfla@carltonfields.com
- Fred Neufeld fneufeld@sycr.com, tingman@sycr.com
- Bryan L Ngo bngo@fortislaw.com,
  BNgo@bluecapitallaw.com;SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com
- Abigail V O'Brient avobrient@mintz.com,
  docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com;ABLevin@mintz.com
- John R OKeefe jokeefe@metzlewis.com, slohr@metzlewis.com
- Matthew J Olson matthew.olson@dorsey.com, stell.laura@dorsey.com
- Scott H Olson solson@vedderprice.com, scott-olson-
  2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Giovanni Orantes go@gobklaw.com, gorantes@oranteslaw.com, cmh@gobklaw.com,
  gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- R Gibson Pagter gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com
- Paul J Pascuzzi ppascuzzi@ffwplaw.com, docket@ffwplaw.com
- Lisa M Peters lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com
- Christopher J Petersen cjpetersen@blankrome.com, gsolis@blankrome.com
- Mark D Plevin mplevin@crowell.com, cromo@crowell.com
- Steven G. Polard steven.polard@ropers.com, calendarlao@
- ropers.com;melissa.tamura@ropers.com;anthony.arriola@ropers.com
- David M Powlen david.powlen@btlaw.com, pgroff@btlaw.com
- Christopher E Prince cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Lori L Purkey bareham@purkeyandassociates.com
- William M Rathbone wrathbone@grsm.com, jmydlandevans@grsm.com;sdurazo@grsm.com
- Jason M Reed Jason.Reed@Maslon.com
- Jeffrey M. Reisner jreisner@steptoe.com, #-FirmPSDocketing@Steptoe.com;
  klyman@steptoe.com;nmorneault@Steptoe.com
- Michael B Reynolds mreynolds@swlaw.com, kcollins@swlaw.com
- J. Alexandra Rhim arhim@hrhlaw.com
- Emily P Rich erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net
- Robert A Rich , candonian@huntonak.com
- Lesley A Riis lriis@dpmclaw.com
- Debra Riley driley@allenmatkins.com
- Jason E Rios jrios@ffwplaw.com, docket@ffwplaw.com
- Julie H Rome-Banks julie@bindermalter.com
- Mary H Rose mrose@buchalter.com
- Douglas B Rosner drosner@goulstonstorrs.com
- Gregory A Rougeau grougeau@brlawsf.com
- Megan A Rowe mrowe@dsrhealthlaw.com, lwestoby@dsrhealthlaw.com
- Gregory M Salvato gsalvato@salvatolawoffices.com,
  calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Nathan A Schultz nschultz@goodwinlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- Mark A Serlin ms@swllplaw.com, mor@swllplaw.com
- Seth B Shapiro seth.shapiro@usdoj.gov
- David B Shemano dshemano@shemanolaw.com
- Joseph Shickich jshickich@riddellwilliams.com
- Mark Shinderman mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Kyrsten Skogstad kskogstad@calnurses.org, rcraven@calnurses.org
- Michael St James ecf@stjames-law.com
- Joseph L Steinfeld jsteinfeld@askllp.com,
- lmiskowiec@askllp.com;mudem@askllp.com;bmcgrath@askllp.com;kcasteel@askllp.com
- Andrew Still astill@swlaw.com, kcollins@swlaw.com
- Jason D Strabo jstrabo@mwe.com, cfuraha@mwe.com;rorloff@mwe.com
- Sabrina L Streusand Streusand@slollp.com
- Ralph J Swanson ralph.swanson@berliner.com, sabina.hall@berliner.com
- Michael A Sweet msweet@foxrothschild.com, swillis@foxrothschild.com;pbasa@foxrothschild.com
- James M Toma james.toma@doj.ca.gov, teresa.depaz@doj.ca.gov
- Gary F Torrell gtorrell@health-law.com
- Gary D Underdahl , lmiskowiec@askllp.com Gary D Underdahl gunderdahl@askllp.com, lmiskowiec@askllp.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Cecelia Valentine cecelia.valentine@nlrb.gov
- Jason Wallach jwallach@ghplaw.com, g33404@notify.cincompass.com
- Kenneth K Wang kenneth.wang@doj.ca.gov, Jennifer.Kim@doj.ca.gov;
  Stacy.McKellar@doj.ca.gov;yesenia.caro@doj.ca.gov
- Phillip K Wang phillip.wang@rimonlaw.com, david.kline@rimonlaw.com
- Ashley R Wedding awedding@fabozzimillerlaw.com, dsandoval@fabozzimillerlaw.com
- Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,
  REC_KM_ECF_SMO@bclplaw.com
- Adam G Wentland awentland@tocounsel.com, lkwon@tocounsel.com
- Latonia Williams lwilliams@goodwin.com, bankruptcy@goodwin.com
- Michael S Winsten mike@winsten.com
- Rebecca J Winthrop rebecca.winthrop@nortonrosefulbright.com, diana.cardenas@nortonrosefulbright.com
- Jeffrey C Wisler jwisler@connollygallagher.com, dperkins@connollygallagher.com
- Neal L Wolf nwolf@hansonbridgett.com, lchappell@hansonbridgett.com
- Christopher K.S. Wong christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Claire K Wu ckwu@sulmeyerlaw.com,
- mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- ☐ Steven D Wyllie steven.wyllie@nlrb.gov
- Hatty K Yip hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- Andrew J Ziaja aziaja@leonardcarder.com,
- sgroff@leonardcarder.com;msimons@leonardcarder.com;lbadar@leonardcarder.com
- Rose Zimmerman rzimmerman@dalycity.org

## 2. **SERVED BY UNITED STATES MAIL**:        **CONTINUED**:

| [JUDGES COPY VIA MAIL PER GENERAL ORDER 20-01 – GENERAL ORDER 20-03] Honorable Mark D. Houle United States Bankruptcy Court Central District of California 3420 Twelfth Street, Suite 365 Riverside, CA 92501-3819 | DEBTOR: Verity Health System of California, Inc. 2040 E. Mariposa Avenue El Segundo, CA 90245 | COUNSEL FOR DEBTOR Tania M. Moyron Samuel R. Maizel DENTONS US LLP 601 South Figueroa Street, Suite 2500 Los Angeles, California 90017-5704 Henry C. Kevane Shirley S. Cho |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

|  |  | PACHULSKI STANG ZIEHL & JONES LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111 |
| --- | --- | --- |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

## **Exhibit D**



SCOTT TALKOV, State Bar No. 264676
CHRISTOPHER M. KIERNAN, State Bar No. 319804
**TALKOV LAW CORP.**
2900 Adams St Ste C225
Riverside, California 92504
Telephone: (951) 888-3300
Email: scott@talkovlaw.com
        chris@talkovlaw.com

Richard J. Corbi (Admitted *pro hac vice*)
**The Law Offices of Richard J. Corbi, PLLC**
1501 Broadway, 12th Floor
New York, New York 10036
Telephone: (646) 571-2033
Email: rcorbi@corbilaw.com

Counsel for Annapolis Consulting Group, Inc. and
TCI Holdings, Inc.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re | Lead Case No. 2:18-bk-20151-ER |
|---|---|
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*, | Jointly Administered With: Case No. 2:18-bk-20162-ER |
| Debtors and Debtors In Possession. | Case No. 2:18-bk-20163-ER |

☒ Affects All Debtors

☐ Affects Verity Health System of California, Inc.
☐ Affects O'Connor Hospital
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation

Case No. 2:18-bk-20164-ER
Case No. 2:18-bk-20165-ER
Case No. 2:18-bk-20167-ER
Case No. 2:18-bk-20168-ER
Case No. 2:18-bk-20169-ER
Case No. 2:18-bk-20171-ER
Case No. 2:18-bk-20172-ER
Case No. 2:18-bk-20173-ER
Case No. 2:18-bk-20175-ER
Case No. 2:18-bk-20176-ER
Case No. 2:18-bk-20178-ER
Case No. 2:18-bk-20179-ER
Case No. 2:18-bk-20180-ER
Case No. 2:18-bk-20181-ER

Hon. Judge Ernest M. Robles

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Debtors and Debtors In Possession.

**ANNAPOLIS CONSULTING GROUP, INC. AND TCI HOLDINGS, INC. MOTION TO STAY ENTRANCE OF THE ORDER APPROVING THE TERMS AND CONDITIONS OF SALE AND EQUITY INTERESTS IN MARILLAC INSURANCE COMPANY, LTD. TO RANDALL & QUILTER II HOLDINGS LIMITED**

**[RELATED TO DOCKET NO. 6271]**

Hearing:

Date:         December 16, 2020
Time:         10:00 a.m.
Location: Courtroom 1568
                 255 E. Temple St., Los Angeles, CA

Annapolis Consulting Group, Inc. ("ACG") and TCI Holdings, Inc., ("TCI", together with ACG, "ACG/TCI"), by and through its undersigned counsel, hereby submits this motion to Stay Entrance of the Order Approving Terms and Conditions of Sale and Equity Interests in Marillac Insurance Company, Ltd. To Randall & Quilter II Holdings Limited (the "Motion") ACG/TCI respectfully states as follows:

## I.      MOTION TO STAY ENTRANCE OF ORDER APPROVING TERMS AND CONDITIONS OF SALE OF

On December 15, 2020, the hearing was held on the Verity Health System of California, Inc. ("VHS") and the above-referenced affiliated debtors, the post-effective date debtors and debtors in possession (the "Post Effective Date Debtors" or, prior to the plan effective date, the "Debtors") in the above-captioned cases chapter 11 bankruptcy cases (the "Cases") *Notice and Motion to Approve Terms and Conditions of a Private Sale of Equity Interests in Marillac Insurance Company, LTD. to Randall & Quilter II Holdings Limited Pursuant to § 363; Memorandum of Points and Authorities and Declarations of Lisa Wall and Peter C. Chadwick in Support Thereof* (the "Sale Hearing") [Dkt. No. 6271]. [See Dkt. No. 6310.]  At the Sale Hearing, the Court conducted an auction (the "Auction") of Marillac Insurance Company, LTD. ("Marillac"), at which Randall & Quilter II Holdings Limited

("R&Q") and ACG/TCI were permitted to bid. [*See* Dkt. No. 6310.]  R&Q was confirmed as the winning bidder at $2.3 million cash (plus other consideration as set forth in the Stock Purchase Agreement (the "SPA")). [*See id*.]  ACG/TCI was confirmed as the back-up bidder at $2.2 million cash (plus other consideration as set forth in the SPA). [*See id*.]   The Court issued its amended tentative ruling (the "Amended Tentative Ruling") on December 15, 2020, in which it ordered the Debtors to lodge an order as set forth in the Amended Tentative Ruling. [*See id*.]

In the forty-eight (48) hours since the Amended Tentative Ruling was issued, events have occurred that have raised doubts as to the validity of R&Q's winning bid. Specifically, on Thursday, December 17, 2020, Debtors' counsel contacted ACG/TCI's counsel to inform him that R&Q's counsel may not have had authority to make a bid above $2.2 million.

Since being made aware that there were serious concerns about the validity of R&Q's winning bid, ACG/TCI's counsel has vigorously attempted to work with Debtors' counsel on a resolution. However, since late Thursday evening, Debtors' counsel has ceased all communication with ACG/TCI since late Thursday evening despite numerous attempts by ACG/TCI's counsel to contact Debtors' counsel.

Despite not responding to ACG/TCI's counsel repeated requests, the Debtors filed its *Supplement Re Auction and Motion to Approve Terms and Conditions of Sale of Equity Interests in Marillac Insurance Company, Ltd.* (the "Supplement") [Dkt. No. 6334] late Friday afternoon, December 18, 2020.  As provided in the Supplement, ACG/TCI requested a "principal to principal conference call and also requested Movants and the Court conduct another auction and explain the circumstances in open Court, expressing, among other things, frustration with the process." [Dkt. No. 6334, p. 2, lns. 9-11].  Debtors' counsel never responded to ACG/TCI, instead filing the Supplement in hopes of getting out in front of the strange circumstances that have occurred in the past forty-eight hours.

Accordingly, ACG/TCI has been forced to draft and file a motion that will be filed later this evening providing additional facts and information regarding the events that have occurred since the

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CALIFORNIA 92504
PHONE (951) 888-3300

1  Sale Hearing.  The motion will provide a more substantive basis for ACG/TCI's objection to R&Q's

2  winning bid.

## II.    CONCLUSION

4        Accordingly, ACG/TCI request the following relief:

5        1.      That the Court withhold or stay entrance of the Order Approving the Terms and

6  Conditions of Sale and Equity Interests in Marillac Insurance Company, Ltd. to Randall & Quilter II

7  Holdings Limited until further briefing regarding this Motion and the Supplement;

8        2.      That the Court schedule a hearing on ACG/TCI's impending motion that will be filed

9  later this evening, Friday December 18, 2020.

10       3.      Any other relief that the Court deems proper.

12  DATED: December 18, 2020                    **TALKOV LAW CORP.**

13                                               *Christopher M Kiernan*

14                                   By:  _____

15                                        Scott Talkov
                                         Christopher M. Kiernan
16                                       Attorneys for Annapolis Consulting Group,
                                         Inc. and TCI Holdings, Inc.

18                                       **The Law Offices of Richard J. Corbi,**
19                                       **PLLC**

21                                       _____

22                                       Richard J. Corbi (Admitted *pro hac vice*)
                                         Attorneys for Annapolis Consulting Group,
23                                       Inc. and TCI Holdings, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2900 Adams St Ste C-225, Riverside, CA, 92504

A true and correct copy of the foregoing document entitled (*specify* **OBJECTION OF ANNAPOLIS CONSULTING GROUP, INC. AND TCI HOLDINGS, INC. TO DEBTORS' MOTION TO APPROVE TERMS AND CONDITIONS OF A PRIVATE SALE OF EQUITY INTERESTS IN MARILLAC INSURANCE COMPANY, LTD. TO RANDALL & QUILTER II HOLDINGS LIMITED PURSUANT TO § 363; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LISA WALL AND PETER C. CHADWICK THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/18/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On 12/18/2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**(Via FedEx Overnight)**
The Honorable Ernest M. Robles
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560/Courtroom 1568
Los Angeles, CA 90012-3300

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/18/2020 | Christopher M. Kiernan | *Christopher M Kiernan* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:    CONTINUED:

Counsel to Debtor Verity Health Systems of California, Inc.:
- Tania M. Moyron tania.moyron@dentons.com
- Samuel R. Maizel samuel.maizel@dentons.com
- Nicholas A. Koffroth nicholas.koffroth@dentons.com
- Henry C. Kevane hkevane@pszjlaw.com
- Shirley S. Cho scho@pszjlaw.com

Additional Attorneys/Parties:
- Alexandra Achamallah aachamallah@milbank.com, rliubicic@milbank.com
- Melinda Alonzo ml7829@att.com
- Robert N Amkraut ramkraut@foxrothschild.com
- Kyra E Andrassy kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com Simon Aron saron@wrslawyers.com
- Lauren T Attard lattard@bakerlaw.com, agrosso@bakerlaw.com
- Allison R Axenrod allison@claimsrecoveryllc.com
- Keith Patrick Banner kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Cristina E Bautista cristina.bautista@kattenlaw.com, ecf.lax.docket@kattenlaw.com
- Tanya Behnam tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- James Cornell Behrens jbehrens@milbank.com, gbray@milbank.com; mshinderman@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com
- Jacob Beiswenger jbeiswenger@omm.com, jacob-beiswenger-5566@ecf.pacerpro.com;swarren@omm.com
- Bruce Bennett bbennett@jonesday.com
- Peter J Benvenutti pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Leslie A Berkoff lberkoff@moritthock.com, hmay@moritthock.com
- Steven M Berman sberman@slk-law.com, mceriale@shumaker.com
- Stephen F Biegenzahn efile@sfblaw.com
- Scott E Blakeley seb@blakeleyllp.com, ecf@blakeleyllp.com
- Karl E Block kblock@loeb.com, jvazquez@loeb.com;ladocket@loeb.com;kblock@ecf.courtdrive.com
- J Scott Bovitz bovitz@bovitz-spitzer.com
- Dustin P Branch branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com
- Michael D Breslauer mbreslauer@swsslaw.com wyones@swsslaw.com;mbreslauer@ecf.courtdrive.com;wyones@ecf.courtdrive.com
- Chane Buck cbuck@jonesday.com
- Lori A Butler butler.lori@pbgc.gov, efile@pbgc.gov
- Howard Camhi hcamhi@mrllp.com, bankruptcy@mrllp.com; camhihr98234@notify.bestcase.com;echun@mrllp.com;jkissinger@mrllp.com
- Barry A Chatz barry.chatz@saul.com, jurate.medziak@saul.com
- Shirley Cho scho@pszjlaw.com
- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Louis J. Cisz lcisz@nixonpeabody.com, jzic@nixonpeabody.com
- Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;olivia@lesliecohenlaw.com
- Marcus Colabianchi mcolabianchi@duanemorris.com
- Kevin Collins kevin.collins@btlaw.com, Tabitha.davis@btlaw.com
- Joseph Corrigan Bankruptcy2@ironmountain.com
- David N Crapo dcrapo@gibbonslaw.com, elrosen@gibbonslaw.com
- Mariam Danielyan md@danielyanlawoffice.com, danielyan.mar@gmail.com
- Brian L Davidoff bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                **F 9013-3.1.PROOF.SERVICE**

- Aaron Davis aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- Lauren A Deeb lauren.deeb@nelsonmullins.com, maria.domingo@nelsonmullins.com
- Daniel Denny ddenny@milbank.com
- Kerry L Duffy kduffy@bzbm.com, cchou@bzbm.com
- Anthony Dutra adutra@hansonbridgett.com
- Kevin M Eckhardt kevin.eckhardt@gmail.com, keckhardt@hunton.com
- Lei Lei Wang Ekvall lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- David K Eldan david.eldan@doj.ca.gov, cynthia.gomez@doj.ca.gov
- Andy J Epstein taxcpaesq@gmail.com
- Richard W Esterkin richard.esterkin@morganlewis.com
- Christine R Etheridge christine.etheridge@ikonfin.com
- M Douglas Flahaut flahaut.douglas@arentfox.com
- Michael G Fletcher mfletcher@frandzel.com, sking@frandzel.com
- Alan W Forsley alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fllawyers.net,
  addy.flores@flpllp.com,laura.rucker@flpllp.com; Joseph D Frank jfrank@fgllp.com,
  mmatlock@fgllp.com;csmith@fgllp.com;jkleinman@fgllp.com;csucic@fgllp.com
- William B Freeman bill.freeman@kattenlaw.com, nicole.jones@kattenlaw.com,ecf.lax.docket@kattenlaw.com
- Eric J Fromme efromme@tocounsel.com, stena@tocounsel.com
- Amir Gamliel amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Jeffrey K Garfinkle jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com
- Thomas M Geher tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- Lawrence B Gill lgill@nelsonhardiman.com,
  rrange@nelsonhardiman.com;ksherry@nelsonhardiman.com;mmarkwell@nelsonhardiman.com
- Paul R. Glassman pglassman@sycr.com
- Matthew A Gold courts@argopartners.net
- Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Marshall F Goldberg mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- Richard H Golubow rgolubow@wghlawyers.com,
  pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Barry R Gore bgore@goreassociates.com, nnarag@goreassociates.com;r40600@notify.bestcase.com
- Arnold L Graff agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net,jcraig@wrightlegal.net
- Barbara R Gross barbara@bgross.law, luz@bgross.law
- David M. Guess guessd@gtlaw.com
- Anna Gumport agumport@sidley.com
- Mary H Haas maryhaas@dwt.com
- Craig N Haring charing@blankrome.com
- Melissa T Harris harris.melissa@pbgc.gov, efile@pbgc.gov
- James A Hayes jhayes@zinserhayes.com, jhayes@jamesahayesaplc.com
- Michael S Held mheld@jw.com
- Lawrence J Hilton lhilton@onellp.com,
  lthomas@onellp.com,info@onellp.com,rgolder@onellp.com,lhyska@onellp.com,nlichtenberger@onellp.com
- Robert M Hirsh rhirsh@lowenstein.com
- Florice Hoffman fhoffman@socal.rr.com, floricehoffman@gmail.com
- Lee F Hoffman leehoffmanjd@gmail.com, lee@fademlaw.com
- Marshall J Hogan mhogan@swlaw.com, knestuk@swlaw.com
- Michael Hogue hoguem@gtlaw.com, SFOLitDock@gtlaw.com;navarrom@gtlaw.com
- Matthew B Holbrook mholbrook@sheppardmullin.com, amartin@sheppardmullin.com
- David I Horowitz david.horowitz@kirkland.com, keith.catuara@kirkland.com;
  terry.ellis@kirkland.com;elsa.banuelos@kirkland.com;ivon.granados@kirkland.com
- Virginia Hoyt scif.legal.bk@scif.com
  Brian D Huben hubenb@ballardspahr.com, carolod@ballardspahr.com
- Joan Huh joan.huh@cdtfa.ca.gov
- Carol A Igoe cigoe@calnurses.org, ttschneaux@calnurses.org

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-3.1.PROOF.SERVICE

- Benjamin Ikuta bikuta@hml.law
- Peter L Isola PIsola@hinshawlaw.com, CKingsley@hinshawlaw.com
- Lawrence A Jacobson laj@cohenandjacobson.com
- John Mark Jennings johnmark.jennings@kutakrock.com, mary.clark@kutakrock.com
- Monique D Jewett-Brewster mjb@hopkinscarley.com, eamaro@hopkinscarley.com
- Crystal Johnson M46380@ATT.COM
- Gregory R Jones gjones@mwe.com, rnhunter@mwe.com
- Jeff D Kahane jkahane@duanemorris.com, dmartinez@duanemorris.com
- Steven J Kahn skahn@pszjyw.com
- Cameo M Kaisler salembier.cameo@pbgc.gov, efile@pbgc.gov
- Ivan L Kallick ikallick@manatt.com, ihernandez@manatt.com
- Ori Katz okatz@sheppardmullin.com, lsegura@sheppardmullin.com
- Gerald P Kennedy gerald.kennedy@procopio.com,
- kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Payam Khodadadi pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- Christian T Kim ckim@dumas-law.com, ckim@ecf.inforuptcy.com
- Jane Kim jkim@kellerbenvenutti.com
- Monica Y Kim myk@lnbrb.com, myk@ecf.inforuptcy.com
- Benjamin R King bking@loeb.com, karnote@loeb.com;ladocket@loeb.com;bking@ecf.courtdrive.com
- Gary E Klausner gek@lnbyb.com
- David A Klein david.klein@kirkland.com
- Nicholas A Koffroth nick.koffroth@dentons.com, chris.omeara@dentons.com
- Joseph A Kohanski jkohanski@bushgottlieb.com, kprestegard@bushgottlieb.com;gmccoy@bushgottlieb.com
- Jolene E Kramer bankruptcycourtnotices@unioncounsel.net, jkramer@unioncounsel.net
- David S Kupetz dkupetz@sulmeyerlaw.com,dperez@sulmeyerlaw.com; dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- Jeffrey S Kwong jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Darryl S Laddin bkrfilings@agg.com
- Robert S Lampl advocate45@aol.com, rlisarobinsonr@aol.com
- Richard A Lapping richard@lappinglegal.com
- Paul J Laurin plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com
- Nathaniel M Leeds nathaniel@mitchelllawsf.com, sam@mitchelllawsf.com
- David E Lemke david.lemke@wallerlaw.com,chris.cronk@wallerlaw.com; Melissa.jones@wallerlaw.com;cathy.thomas@wallerlaw.com
- Lisa Lenherr llenherr@wendel.com, bankruptcy@wendel.com
- Elan S Levey elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov
- Kerri A Lyman klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com;nmorneault@Steptoe.com
- Tracy L Mainguy bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net
- Samuel R Maizel samuel.maizel@dentons.com,
- alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com;derry.kalve@dentons.com
- Lloyd S Mann lmann@mannzarpas.com
- Alvin Mar alvin.mar@usdoj.gov, dare.law@usdoj.gov
- Craig G Margulies Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Kevin Meek kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Hutchison B Meltzer hutchison.meltzer@doj.ca.gov, Alicia.Berry@doj.ca.gov
- Angela Z Miller amiller@phillipslytle.com, styrone@phillipslytle.com
- Christopher Minier becky@ringstadlaw.com, arlene@ringstadlaw.com
- John A Moe john.moe@dentons.com, glenda.spratt@dentons.com
- Susan I Montgomery susan@simontgomerylaw.com, assistant@simontgomerylaw.com; simontgomerylawecf@gmail.com;montgomerysr71631@notify.bestcase.com
- Monserrat Morales Monsi@MarguliesFaithLaw.com,Vicky@MarguliesFaithLaw.com; Helen@marguliesfaithlaw.com;Angela@MarguliesFaithlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- Kevin H Morse kmorse@clarkhill.com, blambert@clarkhill.com
- Marianne S Mortimer mmartin@jmbm.com
- Tania M Moyron tania.moyron@dentons.com; chris.omeara@dentons.com; nick.koffroth@dentons.com; kathryn.howard@dentons.com; Sonia.martin@dentons.com; Isabella.hsu@dentons.com; lee.whidden@dentons.com; Jacqueline.whipple@dentons.com
- Randall P Mroczynski randym@cookseylaw.com
- Alan I Nahmias anahmias@mbnlawyers.com, jdale@mbnlawyers.com
- Akop J Nalbandyan jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- Jennifer L Nassiri jennifernassiri@quinnemanuel.com
- Charles E Nelson nelsonc@ballardspahr.com, wassweilerw@ballardspahr.com
- Sheila Gropper Nelson shedoesbklaw@aol.com
- Mark A Neubauer mneubauer@carltonfields.com, mlrodriguez@carltonfields.com;smcloughlin@carltonfields.com;ecfla@carltonfields.com
- Fred Neufeld fneufeld@sycr.com, tingman@sycr.com
- Bryan L Ngo bngo@fortislaw.com, BNgo@bluecapitallaw.com;SPicariello@fortislaw.com;JNguyen@fortislaw.com;JNguyen@bluecapitallaw.com
- Abigail V O'Brient avobrient@mintz.com, docketing@mintz.com;DEHashimoto@mintz.com;nleali@mintz.com;ABLevin@mintz.com
- John R OKeefe jokeefe@metzlewis.com, slohr@metzlewis.com
- Matthew J Olson olson.matthew@dorsey.com, stell.laura@dorsey.com
- Scott H Olson solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Giovanni Orantes go@gobklaw.com, gorantes@oranteslaw.com, cmh@gobklaw.com, gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- R Gibson Pagter gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com
- Paul J Pascuzzi ppascuzzi@ffwplaw.com, docket@ffwplaw.com
- Lisa M Peters lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com
- Christopher J Petersen cjpetersen@blankrome.com, gsolis@blankrome.com
- Mark D Plevin mplevin@crowell.com, cromo@crowell.com
- Steven G. Polard steven.polard@ropers.com, calendarlao@ropers.com;melissa.tamura@ropers.com;anthony.arriola@ropers.com
- David M Powlen david.powlen@btlaw.com, pgroff@btlaw.com
- Christopher E Prince cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Lori L Purkey bareham@purkeyandassociates.com
- William M Rathbone wrathbone@grsm.com, jmydlandevans@grsm.com;sdurazo@grsm.com
- Jason M Reed Jason.Reed@Maslon.com
- Jeffrey M. Reisner jreisner@steptoe.com, #-FirmPSDocketing@Steptoe.com; klyman@steptoe.com;nmorneault@Steptoe.com
- Michael B Reynolds mreynolds@swlaw.com, kcollins@swlaw.com
- J. Alexandra Rhim arhim@hrhlaw.com
- Emily P Rich erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net
- Robert A Rich , candonian@huntonak.com
- Lesley A Riis lriis@dpmclaw.com
- Debra Riley driley@allenmatkins.com
- Jason E Rios jrios@ffwplaw.com, docket@ffwplaw.com
- Julie H Rome-Banks julie@bindermalter.com
- Mary H Rose mrose@buchalter.com
- Douglas B Rosner drosner@goulstonstorrs.com
- Gregory A Rougeau grougeau@brlawsf.com
- Megan A Rowe mrowe@dsrhealthlaw.com, lwestoby@dsrhealthlaw.com
- Gregory M Salvato gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Nathan A Schultz nschultz@goodwinlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- Mark A Serlin ms@swllplaw.com, mor@swllplaw.com
- Seth B Shapiro seth.shapiro@usdoj.gov
- David B Shemano dshemano@shemanolaw.com
- Joseph Shickich jshickich@riddellwilliams.com
- Mark Shinderman mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Kyrsten Skogstad kskogstad@calnurses.org, rcraven@calnurses.org
- Michael St James ecf@stjames-law.com
- Joseph L Steinfeld jsteinfeld@askllp.com,
- lmiskowiec@askllp.com;mudem@askllp.com;bmcgrath@askllp.com;kcasteel@askllp.com
- Andrew Still astill@swlaw.com, kcollins@swlaw.com
- Jason D Strabo jstrabo@mwe.com, cfuraha@mwe.com;rorloff@mwe.com
- Sabrina L Streusand Streusand@slollp.com
- Ralph J Swanson ralph.swanson@berliner.com, sabina.hall@berliner.com
- Michael A Sweet msweet@foxrothschild.com, swillis@foxrothschild.com;pbasa@foxrothschild.com
- James M Toma james.toma@doj.ca.gov, teresa.depaz@doj.ca.gov
- Gary F Torrell gtorrell@health-law.com
- Gary D Underdahl , lmiskowiec@askllp.com Gary D Underdahl gunderdahl@askllp.com, lmiskowiec@askllp.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Cecelia Valentine cecelia.valentine@nlrb.gov
- Jason Wallach jwallach@ghplaw.com, g33404@notify.cincompass.com
- Kenneth K Wang kenneth.wang@doj.ca.gov, Jennifer.Kim@doj.ca.gov; Stacy.McKellar@doj.ca.gov;yesenia.caro@doj.ca.gov
- Phillip K Wang phillip.wang@rimonlaw.com, david.kline@rimonlaw.com
- Ashley R Wedding awedding@fabozzimillerlaw.com, dsandoval@fabozzimillerlaw.com
- Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- Adam G Wentland awentland@tocounsel.com, lkwon@tocounsel.com
- Latonia Williams lwilliams@goodwin.com, bankruptcy@goodwin.com
- Michael S Winsten mike@winsten.com
- Rebecca J Winthrop rebecca.winthrop@nortonrosefulbright.com, diana.cardenas@nortonrosefulbright.com
- Jeffrey C Wisler jwisler@connollygallagher.com, dperkins@connollygallagher.com
- Neal L Wolf nwolf@hansonbridgett.com, lchappell@hansonbridgett.com
- Christopher K.S. Wong christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Claire K Wu ckwu@sulmeyerlaw.com,
- mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- ☐ Steven D Wyllie steven.wyllie@nlrb.gov
- Hatty K Yip hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- Andrew J Ziaja aziaja@leonardcarder.com,
- sgroff@leonardcarder.com;msimons@leonardcarder.com;lbadar@leonardcarder.com
- Rose Zimmerman rzimmerman@dalycity.org

**2. SERVED BY UNITED STATES MAIL**:  **CONTINUED**:

| [JUDGES COPY VIA MAIL PER GENERAL ORDER 20-01 – GENERAL ORDER 20-03] Honorable Mark D. Houle United States Bankruptcy Court Central District of California 3420 Twelfth Street, Suite 365 Riverside, CA 92501-3819 | **DEBTOR:** Verity Health System of California, Inc. 2040 E. Mariposa Avenue El Segundo, CA 90245 | **COUNSEL FOR DEBTOR** Tania M. Moyron Samuel R. Maizel DENTONS US LLP 601 South Figueroa Street, Suite 2500 Los Angeles, California 90017-5704 Henry C. Kevane Shirley S. Cho |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**

|  |  | PACHULSKI STANG ZIEHL & JONES LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111 |
|--|--|--|

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**<u>Exhibit B</u>**



Richard Corbi <rcorbi@corbilaw.com>

---

## Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
1 message

---

**Hugh Hill** <hhill@taussigcapital.ch>                                    Tue, May 23, 2023 at 4:51 AM
To: "Young, Mary Catherine" <marycatherine.young@kirkland.com>, Richard Corbi <rcorbi@corbilaw.com>, "Overman, Erik" <erik.overman@lazard.com>
Cc: "Hunter, Derek I." <derek.hunter@kirkland.com>, "Tempke, Christian" <christian.tempke@lazard.com>, "Sosnick, Noah Z." <noah.sosnick@kirkland.com>

All, please see the executed NDA attached. Please send whatever is readily available at your earliest convenience. thank you

Hugh

---

**From:** Hugh Hill
**Sent:** Monday, May 22, 2023 5:24:16 PM
**To:** Young, Mary Catherine; Richard Corbi; Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

All thank you for your time last week. As I mentioned, if we can get a recent copy of Oak's financial statement, we should be able to very quickly give you ballpark on the amount of money we can realize for the estate in the very-near term.

regards

Hugh

---

**From:** Richard Corbi <rcorbi@corbilaw.com> on behalf of Young, Mary Catherine <marycatherine.young@kirkland.com>
**Sent:** Friday, May 19, 2023 8:10:05 AM
**To:** Richard Corbi; Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Fwd: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
**When:** Friday, May 19, 2023 10:30 AM-11:00 AM.
**Where:** https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09

---------- Forwarded message ---------

From: **Young, Mary Catherine** <marycatherine.young@kirkland.com>
Date: Fri, May 19, 2023 at 8:06 AM
Subject: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
To: Richard Corbi <rcorbi@corbilaw.com>, Overman, Erik <erik.overman@lazard.com>
Cc: Hunter, Derek I. <derek.hunter@kirkland.com>, Tempke, Christian <christian.tempke@lazard.com>, Sosnick, Noah Z. <noah.sosnick@kirkland.com>


Mary Catherine Young is inviting you to a scheduled Zoom meeting.


Join Zoom Meeting

https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09


Meeting ID: 956 5473 1708

Passcode: 255431

One tap mobile

+16465588656,,95654731708#,,,,,,0#,,255431# US (New York)

+16469313860,,95654731708#,,,,,,0#,,255431# US


Dial by your location

        +1 646 558 8656 US (New York)

        +1 646 931 3860 US

        +1 301 715 8592 US (Washington DC)

        +1 305 224 1968 US

        +1 309 205 3325 US

        +1 312 626 6799 US (Chicago)

        +1 360 209 5623 US

        +1 386 347 5053 US

        +1 507 473 4847 US

        +1 564 217 2000 US

        +1 669 444 9171 US

        +1 669 900 6833 US (San Jose)

        +1 689 278 1000 US

+1 719 359 4580 US

+1 253 205 0468 US

+1 253 215 8782 US (Tacoma)

+1 346 248 7799 US (Houston)

+44 203 901 7895 United Kingdom

+44 208 080 6591 United Kingdom

+44 208 080 6592 United Kingdom

+44 330 088 5830 United Kingdom

+44 131 460 1196 United Kingdom

+44 203 481 5237 United Kingdom

+44 203 481 5240 United Kingdom

+32 2 585 5574 Belgium

+32 2 588 4188 Belgium

+32 2 788 0172 Belgium

+32 2 788 0173 Belgium

+32 1579 5132 Belgium

+32 2 290 9360 Belgium

+49 69 5050 0951 Germany

+49 69 5050 0952 Germany

+49 695 050 2596 Germany

+49 69 7104 9922 Germany

+49 69 3807 9883 Germany

+49 69 3807 9884 Germany

+852 5808 6088 Hong Kong SAR

+852 5803 3730 Hong Kong SAR

+852 5803 3731 Hong Kong SAR

Meeting ID: 956 5473 1708

Passcode: 255431

Find your local number: https://kirkland.zoom.us/u/aV3Fg5hxJ


Join by SIP

The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL]: In re B... and... Indication of Interest for Oak Insurance Company, Inc. 4/6/24, 1:01 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 170 of 264

95654731708@zoomcrc.com

Join by H.323

162.255.37.11 (US West)

162.255.36.11 (US East)

221.122.88.195 (China)

115.114.131.7 (India Mumbai)

115.114.115.7 (India Hyderabad)

213.19.144.110 (Amsterdam Netherlands)

213.244.140.110 (Germany)

103.122.166.55 (Australia Sydney)

103.122.167.55 (Australia Melbourne)

209.9.211.110 (Hong Kong SAR)

149.137.40.110 (Singapore)

64.211.144.160 (Brazil)

149.137.68.253 (Mexico)

69.174.57.160 (Canada Toronto)

65.39.152.160 (Canada Vancouver)

207.226.132.110 (Japan Tokyo)

149.137.24.110 (Japan Osaka)

Meeting ID: 956 5473 1708

Passcode: 255431

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, May 19, 2023 7:47 AM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

The Law Offices of Richard J. Corbi LLC Mail - Re: [EXTERNAL] re re B...lient D/F 0.1 1entitication ot Interest tor Owned Finance Company, Inc 4/6/24, 1:01 PM

10:30 works for us. Do you want to send a dial in or would you like me to ?

Sent from my iPhone


On May 18, 2023, at 11:20 PM, Overman, Erik <erik.overman@lazard.com> wrote:


Rich – Would 10:30 tomorrow morning work?


Otherwise we could make 11:00 work or come back with times for Monday morning.


Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030


On May 18, 2023, at 21:28, Richard Corbi <rcorbi@corbilaw.com> wrote:

 Erik,


Are we having our call tomorrow or Monday?

Sent from my iPhone


On May 18, 2023, at 5:18 PM, Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Erik,


The mornings are generally better for my client.  Tomorrow morning and
Monday morning are free.


Cheers,

Rich

Sent from my iPhone

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 172 of 264
The Law Offices of Richard J. Corbi LLC Mail - Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case... ation of Interest for Oak Insurance Company, Inc.    4/6/24, 1:01 PM

On May 18, 2023, at 4:25 PM, Overman, Erik
<erik.overman@lazard.com> wrote:

Rich – Thanks for following up.

We think it makes sense to have a call with the K&E team and
your clients as you suggested. Are there some times that
would work tomorrow or Monday on your end?

Let us know and we can get something on the calendar.

Thanks again

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, May 18, 2023 3:15 PM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke,
Christian <christian.tempke@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et
al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of
Interest for Oak Insurance Company, Inc.

Hi Erik,

I'm following up on the NDA and when we could get on a call
together with our respective clients.  My clients are anxious to
get this moving.

Cheers,

Rich

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL] Re re B...uine Diffuct/Imentation of Interest for Owl Insurance Company, Inc.    4/6/24, 1:01 PM
Certification of Richard J. Corbi    Esq. with attachments    Page 173 of 264

On Sun, May 14, 2023 at 9:24 PM Richard Corbi
<rcorbi@corbilaw.com> wrote:

> Hi Erik,
>
> It was good connecting with you on Friday.  I wanted to
> follow up regarding the NDA.  Once you send it over, we
> can get it processed and sent back to you.
>
> Cheers,
>
> Rich
>
> On Thu, May 11, 2023 at 6:44 PM Richard Corbi
> <rcorbi@corbilaw.com> wrote:
>
>> Hi Erik,
>>
>> I'm actually out of the office at a client meeting right
>> now.  Tomorrow after 2 pm works. I have to administer a
>> final exam at St. John's law school from 10-1 tomorrow.
>>
>> I look forward to discussing.
>>
>> Thanks,
>>
>> Rich
>>
>> Sent from my iPhone
>>
>>> On May 11, 2023, at 6:36 PM, Overman,
>>> Erik <erik.overman@lazard.com> wrote:
>>>
>>> Rich –
>>>
>>> Thanks for reaching out with this and
>>> appreciate the interest. I tried your office
>>> line a bit ago and was hoping to discuss. Is

there a time that would work well for you tomorrow? Let me know and I can give you a call.

Thanks again

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, May 4, 2023 11:49 AM
**To:** joshua.sussberg@kirkland.com
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Johnathon Baque <jbaque@tci-advisors.com>; emily.geier@kirkland.com; derek.hunter@kirkland.com; Sirota, Michael <msirota@coleschotz.com>; wusatine@coleschotz.com; fyudkin@coleschotz.com; Kurtz, David <david.kurtz@lazard.com>; Wooten, Jason <jason.wooten@lazard.com>; Tempke, Christian <christian.tempke@lazard.com>; Project Butterfly 2023 WG <project.butterfly.2023.wg@lazard.com>
**Subject:** [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Good morning Mr. Sussberg,

It has been a while since we've worked together on a matter.  As set forth in more detail in the attached letter, my client, Taussig Risk Capital Advisors, has an interest in potentially purchasing the non-debtor Oak Insurance Company, Inc. out of the above-referenced bankruptcy case.

The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL] Re B... Ithe Offer) // Perfection of Interest for Owl Insurance Company, Inc.    4/6/24, 1:01 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 175 of 264

I am simultaneously sending this to the
Debtors' representatives listed in the bid
procedures order.  We understand that you
have a lot going on in the case and look
forward to hearing from you soon.  The
Taussig team and myself are available to
discuss this potential transaction.


Cheers,

Rich

--

**Richard J. Corbi**

**The Law Offices of Richard J.
Corbi** PLLC

1501 Broadway, 12th Floor | New
York, NY 10036

O: (646) 571-2033 | M: (516) 582-
0649

rcorbi@corbilaw.com | www.
corbilaw.com


ATTORNEY-CLIENT PRIVILEGED
COMMUNICATION - DO NOT
FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The
contents of this e-mail message
and any attachments are intended
solely for the personal and
confidential use of the recipient(s)
named above. This
communication is intended to be
and to remain confidential and
may be subject to applicable
attorney/client and/or work product
privileges. If you are not the
intended recipient of this message,
or if this message has been
addressed to you in error, please
immediately alert the sender by
reply e-mail and then delete this
message and its attachments.

The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL] In re Bellus Delta 1/Benification of interest for Orenenance Company, Inc.    4/6/24, 1:01 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 176 of 264

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED

The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL] Re re B...ance Direct) Orientation of interest for Owner Insurance Company, Inc.    4/6/24, 1:01 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 177 of 264

COMMUNICATION - DO NOT FORWARD OR
COPY - CONFIDENTIALITY NOTICE: The
contents of this e-mail message and any
attachments are intended solely for the
personal and confidential use of the recipient(s)
named above. This communication is intended
to be and to remain confidential and may be
subject to applicable attorney/client and/or work
product privileges. If you are not the intended
recipient of this message, or if this message
has been addressed to you in error, please
immediately alert the sender by reply e-mail
and then delete this message and its
attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

 **BBBY - Form NDA - May 2023 signed.pdf**
198K

## Exhibit C



Richard Corbi <rcorbi@corbilaw.com>

---

# RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
**1 message**

---

**Shea, Brendan** <brendan.shea@lazard.com>                                Thu, Jun 1, 2023 at 6:27 PM
To: Richard Corbi <rcorbi@corbilaw.com>, Hugh Hill <hhill@taussigcapital.ch>
Cc: "Overman, Erik" <erik.overman@lazard.com>, "Young, Mary Catherine" <marycatherine.young@kirkland.com>,
"Hunter, Derek I." <derek.hunter@kirkland.com>, "Tempke, Christian" <christian.tempke@lazard.com>, "Sosnick, Noah
Z." <noah.sosnick@lazard.com>, Project Butterfly 2023 <project.butterfly.2023@lazard.com>

Hi Rich,

Apologies for the delay – we are working with the company and this and will provide as soon as we can.

Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, June 1, 2023 5:51 PM
**To:** Hugh Hill <hhill@taussigcapital.ch>
**Cc:** Shea, Brendan <brendan.shea@lazard.com>; Overman, Erik <erik.overman@lazard.com>; Young, Mary
Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian
<christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@lazard.com>; Project Butterfly 2023
<project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) -
Indication of Interest for Oak Insurance Company, Inc.

Erik and Brendan,

Do you have an estimated time of when the Oak materials will be uploaded to the data room?

Thanks,

Rich

On Thu, Jun 1, 2023 at 2:25 PM Hugh Hill <hhill@taussigcapital.ch> wrote:

All, I was looking at the consolidated balance sheet and it suggests that Oak has $9.157m of unrestricted cash (ie potential equity value) that could be monetized fairly quickly.

Also, I saw that there was approx. $57.5m of cash collateralized LoCs posted to insurance companies. Assuming (conservatively) that they are 20% over-collateralized with respect to the subject risk, this could be another $11.5m of value to be quickly monetized.

thank you

Hugh

---

**From:** Hugh Hill
**Sent:** Tuesday, May 30, 2023 2:25:22 PM
**To:** Shea, Brendan; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Brendan,

Any more information from the company on Oak Insurance?

thank you

Hugh

---

**From:** Hugh Hill
**Sent:** Friday, May 26, 2023 6:30:22 AM
**To:** Shea, Brendan; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you very much. If it would be helpful, I can jump on a call at any time with any of the employees or external insurance brokers who handled these matters to expedite the process.

regards

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, May 25, 2023 10:16:52 PM
**To:** Hugh Hill; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) -

The Law Offices of Richard J. Corbi | Mail - RE: [EXTERNAL]: In re B...Bed, Bath & Beyond, Inc., et al. - Indication of Interest for Oak Insurance Company, Inc. 4/6/24, 1:03 PM

Indication of Interest for Oak Insurance Company, Inc.

Thanks Hugh – we have requested this and will revert.

Best,
Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Thursday, May 25, 2023 10:16 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you Brendan.

Would you please request whatever the last filings with Vermont were for Oak? Typically this would've been an annual audit or actuarial report. It would most-likely be in the custody of the internal risk management team and / or the insurance brokers who handled BBB. David Kastin (the GC) would probably also know where the information is.

Thank you again

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, May 25, 2023 8:52:30 AM
**To:** Hugh Hill; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Hugh,

The consolidating financials that we have in folder 3.3.1 is the extent of the information currently available. We can request any actuarial / audited work to the extent it exists.

Best,

Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Thursday, May 25, 2023 7:41 AM
**To:** Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you for the invite. It is most likely just me being dense, but I am having trouble finding the financial statements for Oak. Would you please point me in the right direction? Also any actuarial / audited work handy for Oak?

I see from the consolidated BS that there's about ~19m in total and liabilities btw 10-15? or am I off the mark?

Regardless, it looks like there is a deal to be had here that would result in an immediate cash release to BBB in the mid-7 figures. Sandy (the VT captive commissioner) and I have a very good working relationship but let's ballpark some numbers before we get her blessing.

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, May 24, 2023 7:15:34 PM
**To:** Overman, Erik
**Cc:** Hugh Hill; Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Besides Hugh and myself,

Please add the following: jbaque@tci-advisors.com; joey@taussigcapital.ch

On Wed, May 24, 2023 at 5:23 PM Overman, Erik <erik.overman@lazard.com> wrote:

Hi Rich – We'll be providing VDR access shortly and will follow up with a countersigned NDA. The VDR includes financial information on captive insurance entity. Please let us know who other than Hugh should receive access.

Thanks

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, May 24, 2023 9:27 AM
**To:** Hugh Hill <hhill@taussigcapital.ch>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Overman, Erik <erik.overman@lazard.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Erik,

Any word on the information request as well as the counter signed NDA?

Thanks,

Rich

On Tue, May 23, 2023 at 4:51 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

> All, please see the executed NDA attached. Please send whatever is readily available at your earliest convenience. thank you
>
> Hugh
>
> ---
>
> **From:** Hugh Hill
> **Sent:** Monday, May 22, 2023 5:24:16 PM
> **To:** Young, Mary Catherine; Richard Corbi; Overman, Erik
> **Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
> **Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
>
> All thank you for your time last week. As I mentioned, if we can get a recent copy of Oak's

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: In re B...ation of Interest for Oak Insurance Company, Inc    4/6/24, 1:03 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 184 of 264

financial statement, we should be able to very quickly give you ballpark on the amount of money we can realize for the estate in the very-near term.

regards

Hugh

---

**From:** Richard Corbi <rcorbi@corbilaw.com> on behalf of Young, Mary Catherine <marycatherine.young@kirkland.com>
**Sent:** Friday, May 19, 2023 8:10:05 AM
**To:** Richard Corbi; Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Fwd: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
**When:** Friday, May 19, 2023 10:30 AM-11:00 AM.
**Where:** https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09

---------- Forwarded message ---------
From: **Young, Mary Catherine** <marycatherine.young@kirkland.com>
Date: Fri, May 19, 2023 at 8:06 AM
Subject: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
To: Richard Corbi <rcorbi@corbilaw.com>, Overman, Erik <erik.overman@lazard.com>
Cc: Hunter, Derek I. <derek.hunter@kirkland.com>, Tempke, Christian <christian.tempke@lazard.com>, Sosnick, Noah Z. <noah.sosnick@kirkland.com>

Mary Catherine Young is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09

Meeting ID: 956 5473 1708

Passcode: 255431

One tap mobile

+16465588656,,95654731708#,,,,,,0#,,255431# US (New York)

+16469313860,,95654731708#,,,,,,0#,,255431# US

Dial by your location

        +1 646 558 8656 US (New York)

The Law Offices of Richard J. Corbi | LC Mail – RE: [EXTERNAL] : In re B... Ltd. 0470.1 //Certification of Interest of Commerzance Company, Inc.    4/6/24, 1:03 PM

+1 646 931 3860 US

+1 301 715 8592 US (Washington DC)

+1 305 224 1968 US

+1 309 205 3325 US

+1 312 626 6799 US (Chicago)

+1 360 209 5623 US

+1 386 347 5053 US

+1 507 473 4847 US

+1 564 217 2000 US

+1 669 444 9171 US

+1 669 900 6833 US (San Jose)

+1 689 278 1000 US

+1 719 359 4580 US

+1 253 205 0468 US

+1 253 215 8782 US (Tacoma)

+1 346 248 7799 US (Houston)

+44 203 901 7895 United Kingdom

+44 208 080 6591 United Kingdom

+44 208 080 6592 United Kingdom

+44 330 088 5830 United Kingdom

+44 131 460 1196 United Kingdom

+44 203 481 5237 United Kingdom

+44 203 481 5240 United Kingdom

+32 2 585 5574 Belgium

+32 2 588 4188 Belgium

+32 2 788 0172 Belgium

+32 2 788 0173 Belgium

+32 1579 5132 Belgium

+32 2 290 9360 Belgium

+49 69 5050 0951 Germany

+49 69 5050 0952 Germany

The Law Offices of Richard J. Corbi - RE: [EXTERNAL] Re re B...under DIP/D.I. mentation of interest for Coinsurance Company, Inc...    4/6/24, 1:03 PM

+49 695 050 2596 Germany

+49 69 7104 9922 Germany

+49 69 3807 9883 Germany

+49 69 3807 9884 Germany

+852 5808 6088 Hong Kong SAR

+852 5803 3730 Hong Kong SAR

+852 5803 3731 Hong Kong SAR

Meeting ID: 956 5473 1708

Passcode: 255431

Find your local number: https://kirkland.zoom.us/u/aV3Fg5hxJ


Join by SIP

95654731708@zoomcrc.com


Join by H.323

162.255.37.11 (US West)

162.255.36.11 (US East)

221.122.88.195 (China)

115.114.131.7 (India Mumbai)

115.114.115.7 (India Hyderabad)

213.19.144.110 (Amsterdam Netherlands)

213.244.140.110 (Germany)

103.122.166.55 (Australia Sydney)

103.122.167.55 (Australia Melbourne)

209.9.211.110 (Hong Kong SAR)

149.137.40.110 (Singapore)

64.211.144.160 (Brazil)

149.137.68.253 (Mexico)

69.174.57.160 (Canada Toronto)

65.39.152.160 (Canada Vancouver)

207.226.132.110 (Japan Tokyo)

149.137.24.110 (Japan Osaka)

Meeting ID: 956 5473 1708

Passcode: 255431

_____

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, May 19, 2023 7:47 AM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

10:30 works for us. Do you want to send a dial in or would you like me to ?

Sent from my iPhone

> On May 18, 2023, at 11:20 PM, Overman, Erik <erik.overman@lazard.com> wrote:

> Rich – Would 10:30 tomorrow morning work?

> Otherwise we could make 11:00 work or come back with times for Monday morning.

> Erik Overman

> Lazard Frères & Co. LLC

> Office: (212) 632-1526

> Mobile: (312) 316-7030

>> On May 18, 2023, at 21:28, Richard Corbi <rcorbi@corbilaw.com> wrote:

>> Erik,

>> Are we having our call tomorrow or Monday?

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL] Re re B...Under 9019 / Identification of Interest for Reinsurance Company, Inc. 4/6/24, 1:03 PM

Sent from my iPhone

On May 18, 2023, at 5:18 PM, Richard Corbi
<rcorbi@corbilaw.com> wrote:

Hi Erik,

The mornings are generally better for my client. Tomorrow morning
and Monday morning are free.

Cheers,

Rich

Sent from my iPhone

On May 18, 2023, at 4:25 PM, Overman, Erik
<erik.overman@lazard.com> wrote:

Rich – Thanks for following up.

We think it makes sense to have a call with the K&E
team and your clients as you suggested. Are there
some times that would work tomorrow or Monday on
your end?

Let us know and we can get something on the
calendar.

Thanks again

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: In re Bed, Bath & Beyond... Indication of Interest for Oak Insurance Company, Inc.   4/6/24, 1:03 PM

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, May 18, 2023 3:15 PM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>;
Tempke, Christian <christian.tempke@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond,
Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) -
Indication of Interest for Oak Insurance Company, Inc.

Hi Erik,

I'm following up on the NDA and when we could get
on a call together with our respective clients.  My
clients are anxious to get this moving.

Cheers,

Rich

On Sun, May 14, 2023 at 9:24 PM Richard Corbi
<rcorbi@corbilaw.com> wrote:

> Hi Erik,
>
> It was good connecting with you on Friday.  I
> wanted to follow up regarding the NDA.  Once you
> send it over, we can get it processed and sent back
> to you.
>
> Cheers,
>
> Rich
>
> On Thu, May 11, 2023 at 6:44 PM Richard Corbi
> <rcorbi@corbilaw.com> wrote:
>
>> Hi Erik,
>>
>> I'm actually out of the office at a client meeting
>> right now.  Tomorrow after 2 pm works. I have to
>> administer a final exam at St. John's law school
>> from 10-1 tomorrow.

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] Re re B...hlike DIP for Transtation of interest for Commerce Company, Inc    4/6/24, 1:03 PM

I look forward to discussing.


Thanks,

Rich


Sent from my iPhone


> On May 11, 2023, at 6:36 PM,
> Overman, Erik
> <erik.overman@lazard.com>
> wrote:


> Rich –


> Thanks for reaching out with this
> and appreciate the interest. I tried
> your office line a bit ago and was
> hoping to discuss. Is there a time
> that would work well for you
> tomorrow? Let me know and I can
> give you a call.


> Thanks again


> Erik Overman

> Lazard Frères & Co. LLC

> Office: (212) 632-1526

> Mobile: (312) 316-7030

> _____

> **From:** Richard Corbi
> <rcorbi@corbilaw.com>
> **Sent:** Thursday, May 4, 2023
> 11:49 AM
> **To:**
> joshua.sussberg@kirkland.com
> **Cc:** Hugh Hill

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 191 of 264

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL]: In re B...hal. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.    4/6/24, 1:03 PM

hhill@taussigcapital.ch>;
Johnathon Baque <jbaque@tci-advisors.com>;
emily.geier@kirkland.com;
derek.hunter@kirkland.com;
Sirota, Michael
<msirota@coleschotz.com>;
wusatine@coleschotz.com;
fyudkin@coleschotz.com; Kurtz,
David <david.kurtz@lazard.com>;
Wooten, Jason
<jason.wooten@lazard.com>;
Tempke, Christian
<christian.tempke@lazard.com>;
Project Butterfly 2023 WG
<project.butterfly.2023.wg@lazard.com>
**Subject:** [EXTERNAL]: In re Bed,
Bath & Beyond, Inc., et al., Case
No. 23-13359 (VFP) (Bankr.
D.N.J.) - Indication of Interest for
Oak Insurance Company, Inc.

Good morning Mr. Sussberg,

It has been a while since we've
worked together on a matter.  As
set forth in more detail in the
attached letter, my client, Taussig
Risk Capital Advisors, has an
interest in potentially purchasing
the non-debtor Oak Insurance
Company, Inc. out of the above-
referenced bankruptcy case.

I am simultaneously sending this to
the Debtors' representatives listed
in the bid procedures order.  We
understand that you have a lot
going on in the case and look
forward to hearing from you soon.
The Taussig team and myself are
available to discuss this potential
transaction.

Cheers,

Rich

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York,

NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.
corbilaw.com

ATTORNEY-CLIENT PRIVILEGED
COMMUNICATION - DO NOT
FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The
contents of this e-mail message and any
attachments are intended solely for the
personal and confidential use of the
recipient(s) named above. This
communication is intended to be and to
remain confidential and may be subject
to applicable attorney/client and/or work
product privileges. If you are not the
intended recipient of this message, or if
this message has been addressed to
you in error, please immediately alert the
sender by reply e-mail and then delete
this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J.
Corbi** PLLC

1501 Broadway, 12th Floor | New York,
NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED
COMMUNICATION - DO NOT FORWARD
OR COPY - CONFIDENTIALITY NOTICE:
The contents of this e-mail message and
any attachments are intended solely for
the personal and confidential use of the
recipient(s) named above. This
communication is intended to be and to

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] Re re B...inite DIP/14-1 reification of interest for Conveniedrance Company, Inc    4/6/24, 1:03 PM

remain confidential and may be subject to
applicable attorney/client and/or work
product privileges. If you are not the
intended recipient of this message, or if
this message has been addressed to you
in error, please immediately alert the
sender by reply e-mail and then delete this
message and its attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information,
and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you
have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and
destroy this communication and all copies thereof, including all attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are
intended solely for the personal and confidential use of the recipient(s) named above. This
communication is intended to be and to remain confidential and may be subject to applicable
attorney/client and/or work product privileges. If you are not the intended recipient of this
message, or if this message has been addressed to you in error, please immediately alert the
sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are
intended solely for the personal and confidential use of the recipient(s) named above. This
communication is intended to be and to remain confidential and may be subject to applicable
attorney/client and/or work product privileges. If you are not the intended recipient of this message,
or if this message has been addressed to you in error, please immediately alert the sender by reply
e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] In re B... Line DIP[x] 1 mification of Interest for Commerce Company, Inc...    4/6/24, 1:03 PM

## Richard J. Corbi

### The Law Offices of Richard J. Corbi PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

## Exhibit D



Richard Corbi <rcorbi@corbilaw.com>

---

# Re: BBB -Follow Up
1 message

---

**Bradford J. Sandler** <bsandler@pszjlaw.com>                                    Mon, Jun 26, 2023 at 8:44 PM
To: Richard Corbi <rcorbi@corbilaw.com>

Rich – Will review and revert.  Needless to say, a lot going on in the case right now.  Appreciate your patience.

Best, Brad.

Bradford J. Sandler
Pachulski Stang Ziehl & Jones LLP
Cell:  +1.215.266.8904 | NY/DE:  +1.484.275.5442
bsandler@pszjlaw.com

From: Richard Corbi <rcorbi@corbilaw.com>
Date: Monday, June 26, 2023 at 6:31 PM
To: Bradford Sandler <bsandler@pszjlaw.com>
Subject: BBB -Follow Up

Hi Brad,

As I mentioned on Friday, attached is our lol we sent the debtors.  We've gotten some information, but the debtor's have still been assessing their options and there has been a delay in the follow up information requests.  From what we've gleaned from the limited information there is probably $3-4 million in the captive and $10 million+ in the LOCs.

Please do not circulate.

Cheers,
Rich

--

Richard J. Corbi
The Law Offices of Richard J. Corbi PLLC
1501 Broadway, 12th Floor | New York, NY 10036
O: (646) 571-2033 | M: (516) 582-0649
rcorbi@corbilaw.com<mailto:rcorbi@corbilaw.com> | www.corbilaw.com<https://urldefense.proofpoint.com/v2/url?
u=http-3A__www.corbilaw.com&d=DwMFaQ&c=Cw6jQ1O21v_aGXA_UaKobx5Hu7RYVWKFNSkSTAdyM40&r=
oHpnlh_qDzmvBZ6YGnnDBWIBCO3BwHBe990KQPpY0L8&m=3IUa39WgMiL3Z2CiDIqS0vrsEyraGX
lhQuzStQWBTC4&s=rqtLnnuvgfa3nT4TkMjT3lSCliXSGsfD4sJ4HKG_5NE&e=>

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY
NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and
confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and
may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this
message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail

and then delete this message and its attachments.

## **Exhibit E**

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond- Insured Letters of Credit- $53m of cash    4/6/24, 1:12 PM

 Gmail

Richard Corbi <rcorbi@corbilaw.com>

---

**RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash**
1 message

**Shea, Brendan** <brendan.shea@lazard.com>
To: Richard Corbi <rcorbi@corbilaw.com>
Cc: Hugh Hill <hhill@taussigcapital.ch>, "Overman, Erik" <erik.overman@lazard.com>, "Young, Mary Catherine" <marycatherine.young@kirkland.com>, "Hunter, Derek I." <derek.hunter@kirkland.com>
"Sosnick, Noah Z." <noah.sosnick@kirkland.com>, Project Butterfly 2023 <project.butterfly.2023@lazard.com>

Hi Richard,

The company is still preparing to market their insurance portfolio. Once they are ready, they've told us they will include you in their process.

Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, July 6, 2023 5:23 PM
**To:** Shea, Brendan <brendan.shea@lazard.com>
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>
Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

Hi Brendan,

Do you have any updates on our proposed transaction?

Thanks,

Rich

On Fri, Jun 23, 2023 at 1:30 PM Shea, Brendan <brendan.shea@lazard.com> wrote:

Thank you Hugh.

We will raise with the Company to the extent they are not aware. They are still deciding on their path forward as it relates to insurance hence some of the delay in getting back to you. We are keep
follow up once we have more clarity from them.

Best,
Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Friday, June 23, 2023 9:31 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.s
<project.butterfly.2023@lazard.com>
**Subject:** [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

Brendan,

I was reviewing the attached LoC schedule and noted that approximately $50m of these LoCs held by insurance counterparties appear to expire on July 1 (May 1 notice dates and 60 day windows
sometimes drawdown the cash balance of LoCs if new LoCs are not issued upon expiration.  Not surprisingly, it becomes much harder to extract the equity value of those LoCs when they've been

Based on prior experience, that equity value is most-likely greater than >$10m, given that insurance companies usually like to hold collateral that is at least 120% of the actual subject liabilities.

I'm sure the company is aware of this, but I did want to bring it to your attention as well.

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond - Insurance Letters of Credit - $63m Dispute    4/6/24, 1:12 PM

regards

Hugh

| UNITED STATES FIDELITY AND GUARANTY | United States | USD | 2,623,000.00 | 2,623,000.00 | Bed Bath and Beyond Inc. | Y | | 90 | 3/31/2023 |
|---|---|---|---|---|---|---|---|---|---|
| ARCH INSURANCE COMPANY | United States | USD | 2,216,659.62 | 2,216,659.62 | Bed Bath and Beyond Inc. | Y | 2/29/1900 | | 7/24/2023 |
| SENTRY INSURANCE A MUTUAL COMPANY | United States | USD | 200,000.00 | 200,000.00 | CHRISTMAS TREE SHOPS, INC., | Y | | 60 | 5/1/2023 |
| FEDERAL INSURANCE COMPANY | United States | USD | 1,576,705.00 | 1,576,705.00 | Bed Bath and Beyond Inc. | Y | | 60 | 5/1/2023 |
| ARCH INSURANCE COMPANY | United States | USD | 5,370,040.00 | 5,370,040.00 | Bed Bath and Beyond Inc. | Y | | 60 | 5/1/2023 |
| SAFETY NATIONAL CASUALTY CORP. | United States | USD | 39,750,000.00 | 39,750,000.00 | Bath & Beyond Inc. | Y | | 60 | 5/1/2023 |
| SAFETY NATIONAL CASUALTY | United States | USD | 4,250,000.00 | 4,250,000.00 | Bed Bath and Beyond Inc. | N | | | |
| TRAVELERS CASUALTY AND SURETY CO. | United States | USD | 1,526,084.72 | 1,526,084.72 | BED BATH & BEYOND INC. | N | | | |

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, June 22, 2023 5:54 PM
**To:** Richard Corbi; Hugh Hill; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Rich,

Let us check in with the Company.

Best,
Brendan

_____

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, June 22, 2023 5:44 PM
**To:** Hugh Hill <hhill@taussigcapital.ch>; Overman, Erik <erik.overman@lazard.com>; Shea, Brendan <brendan.shea@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.s <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Brendan and Erik,

Any update on the below?

Thanks,

Rich

On Tue, Jun 20, 2023 at 2:14 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Brendan and Erik,

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: Re Bed, Bath & Beyond - insurance letters on Oak - 6e3m-b-user...    4/6/24, 1:12 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 203 of 264

Any update on the status of our below requests?

Cheers,

Rich

On Thu, Jun 15, 2023 at 4:45 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Brendan and Erik,

We have reviewed the Oak Insurance materials that were just put in the data room and have some follow up questions and requests to speed the process along.

1) The contact person who handled insurance internally for the Debtors.

2) Willis brokerage / captive contact.

3) Whatever filings Willis prepared regarding the Oak cell in Encore. We need to get the reserves by year.  It looks like there was a loss portfolio transfer d 2016-2021 records.

4) The latest loss run.

Finally, on the regulatory approval front, Tausig is meeting with the Vermont regulators in a few weeks on another matter and can socialize this potential tra

Please let us know if a call will be helpful.

Cheers,

Rich

On Wed, Jun 14, 2023 at 9:41 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

Thank you very much for the update- anything (even if unaudited) is most-appreciated.

Who is the captive manager for Oak in Vermont?

based upon what I've been able to glean from the balance sheet, it looks like Oak has btw $4-9m of equity that can be unlocked

Thank you again

Hugh

Sent from my iPhone

On Jun 14, 2023, at 9:13 AM, Shea, Brendan <brendan.shea@lazard.com> wrote:

Hi Hugh,

Apologies for the delay. Last I heard is that the latest financial statements are currently being audited, and they don't have an actuarial report.

We will follow up for the unaudited version or any other update.

Best,
Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Tuesday, June 13, 2023 5:13 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>
**Cc:** Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Brendan, any estimate as to when we might see more information regarding Oak Insurance and / or the $57m worth of self-insurance/deductibles?

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: In re Bed, Bath & Beyond, ... Insurance Company, Inc. - Indi...    4/6/24, 1:12 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 204 of 264

If it would be helpful, I am happy to jump on the phone for 10 mins to guide the data request as I've done this many times on other cases.

thank you

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, June 1, 2023 6:27:58 PM
**To:** Richard Corbi; Hugh Hill
**Cc:** Overman, Erik; Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Rich,

Apologies for the delay – we are working with the company and this and will provide as soon as we can.

Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, June 1, 2023 5:51 PM
**To:** Hugh Hill <hhill@taussigcapital.ch>
**Cc:** Shea, Brendan <brendan.shea@lazard.com>; Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <d <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Erik and Brendan,

Do you have an estimated time of when the Oak materials will be uploaded to the data room?

Thanks,

Rich

On Thu, Jun 1, 2023 at 2:25 PM Hugh Hill <hhill@taussigcapital.ch> wrote:

> All, I was looking at the consolidated balance sheet and it suggests that Oak has $9.157m of unrestricted cash (ie potential equity value) that co
>
> Also, I saw that there was approx. $57.5m of cash collateralized LoCs posted to insurance companies. Assuming (conservatively) that they are 2
> the subject risk, this could be another $11.5m of value to be quickly monetized.
>
> thank you
>
> Hugh
>
> ---
>
> **From:** Hugh Hill
> **Sent:** Tuesday, May 30, 2023 2:25:22 PM
> **To:** Shea, Brendan; Richard Corbi; Overman, Erik
> **Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
> **Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
>
> Brendan,
>
> Any more information from the company on Oak Insurance?
>
> thank you
>
> Hugh
>
> ---
>
> **From:** Hugh Hill
> **Sent:** Friday, May 26, 2023 6:30:22 AM
> **To:** Shea, Brendan; Richard Corbi; Overman, Erik
> **Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
> **Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond / Insurance Letter on Oak...

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 205 of 264

4/6/24, 1:12 PM

Thank you very much. If it would be helpful, I can jump on a call at any time with any of the employees or external insurance brokers who handle[
process.

regards

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, May 25, 2023 10:16:52 PM
**To:** Hugh Hill; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thanks Hugh – we have requested this and will revert.

Best,
Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Thursday, May 25, 2023 10:16 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick
Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you Brendan.

Would you please request whatever the last filings with Vermont were for Oak? Typically this would've been an annual audit or actuarial report. I [
the internal risk management team and / or the insurance brokers who handled BBB. David Kastin (the GC) would probably also know where th[

Thank you again

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, May 25, 2023 8:52:30 AM
**To:** Hugh Hill; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Hugh,

The consolidating financials that we have in folder 3.3.1 is the extent of the information currently available. We can request any actuarial / audited work to the extent it exists.

Best,

Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Thursday, May 25, 2023 7:41 AM
**To:** Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick
Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you for the invite. It is most likely just me being dense, but I am having trouble finding the financial statements for Oak. Would you please[
any actuarial / audited work handy for Oak?

I see from the consolidated BS that there's about ~19m in total and liabilities btw 10-15? or am I off the mark?

Regardless, it looks like there is a deal to be had here that would result in an immediate cash release to BBB in the mid-7 figures. Sandy (the V[
very good working relationship but let's ballpark some numbers before we get her blessing.

The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP)    4/6/24, 1:12 PM

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, May 24, 2023 7:15:34 PM
**To:** Overman, Erik
**Cc:** Hugh Hill; Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Besides Hugh and myself,

Please add the following: jbaque@tci-advisors.com; joey@taussigcapital.ch

On Wed, May 24, 2023 at 5:23 PM Overman, Erik <erik.overman@lazard.com> wrote:

Hi Rich – We'll be providing VDR access shortly and will follow up with a countersigned NDA. The VDR includes financial information on captive insurance entity. Please let us
access.

Thanks

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, May 24, 2023 9:27 AM
**To:** Hugh Hill <hhill@taussigcapital.ch>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Overman, Erik <erik.overman@lazard.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Chr
Noah Z. <noah.sosnick@kirkland.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Erik,

Any word on the information request as well as the counter signed NDA?

Thanks,

Rich

On Tue, May 23, 2023 at 4:51 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

All, please see the executed NDA attached. Please send whatever is readily available at your earliest convenience. thank you

Hugh

---

**From:** Hugh Hill
**Sent:** Monday, May 22, 2023 5:24:16 PM
**To:** Young, Mary Catherine; Richard Corbi; Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

All thank you for your time last week. As I mentioned, if we can get a recent copy of Oak's financial statement, we should be able to very qu
money we can realize for the estate in the very-near term.

regards

Hugh

---

**From:** Richard Corbi <rcorbi@corbilaw.com> on behalf of Young, Mary Catherine <marycatherine.young@kirkland.com>
**Sent:** Friday, May 19, 2023 8:10:05 AM
**To:** Richard Corbi; Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Fwd: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
**When:** Friday, May 19, 2023 10:30 AM-11:00 AM.
**Where:** https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond - Insurance Letters of Credit - 565m of O&M...    4/6/24, 1:12 PM

---------- Forwarded message ---------
From: **Young, Mary Catherine** <marycatherine.young@kirkland.com>
Date: Fri, May 19, 2023 at 8:06 AM
Subject: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
To: Richard Corbi <rcorbi@corbilaw.com>, Overman, Erik <erik.overman@lazard.com>
Cc: Hunter, Derek I. <derek.hunter@kirkland.com>, Tempke, Christian <christian.tempke@lazard.com>, Sosnick, Noah Z. <noah.sosnick@kirkland.com>


Mary Catherine Young is inviting you to a scheduled Zoom meeting.


Join Zoom Meeting

https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09


Meeting ID: 956 5473 1708

Passcode: 255431

One tap mobile

+16465588656,,95654731708#,,,,,0#,,255431# US (New York)

+16469313860,,95654731708#,,,,,0#,,255431# US (New York)


Dial by your location

        +1 646 558 8656 US (New York)

        +1 646 931 3860 US

        +1 301 715 8592 US (Washington DC)

        +1 305 224 1968 US

        +1 309 205 3325 US

        +1 312 626 6799 US (Chicago)

        +1 360 209 5623 US

        +1 386 347 5053 US

        +1 507 473 4847 US

        +1 564 217 2000 US

        +1 669 444 9171 US

        +1 669 900 6833 US (San Jose)

        +1 689 278 1000 US

        +1 719 359 4580 US

        +1 253 205 0468 US

        +1 253 215 8782 US (Tacoma)

        +1 346 248 7799 US (Houston)

        +44 203 901 7895 United Kingdom

        +44 208 080 6591 United Kingdom

        +44 208 080 6592 United Kingdom

        +44 330 088 5830 United Kingdom

        +44 131 460 1196 United Kingdom

        +44 203 481 5237 United Kingdom

        +44 203 481 5240 United Kingdom

        +32 2 585 5574 Belgium

        +32 2 588 4188 Belgium

        +32 2 788 0172 Belgium

        +32 2 788 0173 Belgium

        +32 1579 5132 Belgium

        +32 2 290 9360 Belgium

        +49 69 5050 0951 Germany

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
The Law Offices of Richard J. Corbi PLLC Mail - Re: [EXTERNAL]: re Bed, Bath & Beyond, Insurance Letters of Credit - 663mb-0-oak-t...        4/6/24, 1:12 PM
Certification of Richard J. Corbi    Esq. with attachments    Page 208 of 264

+49 69 5050 0952 Germany

+49 695 050 2596 Germany

+49 69 7104 9922 Germany

+49 69 3807 9883 Germany

+49 69 3807 9884 Germany

+852 5808 6088 Hong Kong SAR

+852 5803 3730 Hong Kong SAR

+852 5803 3731 Hong Kong SAR

Meeting ID: 956 5473 1708

Passcode: 255431

Find your local number: https://kirkland.zoom.us/u/aV3Fg5hxJ


Join by SIP

95654731708@zoomcrc.com


Join by H.323

162.255.37.11 (US West)

162.255.36.11 (US East)

221.122.88.195 (China)

115.114.131.7 (India Mumbai)

115.114.115.7 (India Hyderabad)

213.19.144.110 (Amsterdam Netherlands)

213.244.140.110 (Germany)

103.122.166.55 (Australia Sydney)

103.122.167.55 (Australia Melbourne)

209.9.211.110 (Hong Kong SAR)

149.137.40.110 (Singapore)

64.211.144.160 (Brazil)

149.137.68.253 (Mexico)

69.174.57.160 (Canada Toronto)

65.39.152.160 (Canada Vancouver)

207.226.132.110 (Japan Tokyo)

149.137.24.110 (Japan Osaka)

Meeting ID: 956 5473 1708

Passcode: 255431

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, May 19, 2023 7:47 AM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary Cat
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

---

10:30 works for us. Do you want to send a dial in or would you like me to ?

Sent from my iPhone

On May 18, 2023, at 11:20 PM, Overman, Erik <erik.overman@lazard.com> wrote:


Rich – Would 10:30 tomorrow morning work?

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond - Insurance Letters of Credit - 663m-b-User    4/6/24, 1:12 PM



Otherwise we could make 11:00 work or come back with times for Monday morning.

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

> On May 18, 2023, at 21:28, Richard Corbi <rcorbi@corbilaw.com> wrote:

 Erik,

Are we having our call tomorrow or Monday?

Sent from my iPhone

>> On May 18, 2023, at 5:18 PM, Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Erik,

The mornings are generally better for my client.  Tomorrow morning and Monday morning are free.

Cheers,

Rich

Sent from my iPhone

>>> On May 18, 2023, at 4:25 PM, Overman, Erik <erik.overman@lazard.com> wrote:

Rich – Thanks for following up.

We think it makes sense to have a call with the K&E team and your clients as you suggested. Are there some times that would work tomorrow o
end?

Let us know and we can get something on the calendar.

Thanks again

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, May 18, 2023 3:15 PM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insur

Hi Erik,

I'm following up on the NDA and when we could get on a call together with our respective clients.  My clients are anxious to get this moving.

Cheers,

Rich

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 210 of 264

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond, unsecured Letters of Credit - 665m-b Oak In...    4/6/24, 1:12 PM

On Sun, May 14, 2023 at 9:24 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Erik,

It was good connecting with you on Friday.  I wanted to follow up regarding the NDA.  Once you send it over, we can get it processed and ser

Cheers,

Rich

On Thu, May 11, 2023 at 6:44 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Erik,

I'm actually out of the office at a client meeting right now.  Tomorrow after 2 pm works. I have to administer a final exam at St. John's law s
tomorrow.

I look forward to discussing.

Thanks,

Rich

Sent from my iPhone

> On May 11, 2023, at 6:36 PM, Overman, Erik <erik.overman@lazard.com> wrote:

Rich –

Thanks for reaching out with this and appreciate the interest. I tried your office line a bit ago and was hoping to discuss. Is there a ti
work well for you tomorrow? Let me know and I can give you a call.

Thanks again

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, May 4, 2023 11:49 AM
**To:** joshua.sussberg@kirkland.com
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Johnathon Baque <jbaque@tci-advisors.com>; emily.geier@kirkland.com; derek.hunter@k
Sirota, Michael <msirota@coleschotz.com>; wusatine@coleschotz.com; fyudkin@coleschotz.com; Kurtz, David <david.kurtz@laza
Wooten, Jason <jason.wooten@lazard.com>; Tempke, Christian <christian.tempke@lazard.com>; Project Butterfly 2023 WG
<project.butterfly.2023.wg@lazard.com>
**Subject:** [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for C
Company, Inc.

Good morning Mr. Sussberg,

It has been a while since we've worked together on a matter.  As set forth in more detail in the attached letter, my client, Taussig Ris
Advisors, has an interest in potentially purchasing the non-debtor Oak Insurance Company, Inc. out of the above-referenced bankru

I am simultaneously sending this to the Debtors' representatives listed in the bid procedures order.  We understand that you have a
the case and look forward to hearing from you soon.  The Taussig team and myself are available to discuss this potential transactio

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: Re Bed, Bath & Beyond / Uninsured Letters of Credit - best in class...

4/6/24, 1:12 PM

Cheers,

Rich

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland... Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return... destroy this communication and all copies thereof, including all attachments.

Case 23-13359-VFP Doc 2958-2 Filed 04/11/24 Entered 04/11/24 10:09:25 Desc
The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] Re: Bed, Bath & Beyond- Unsecured Creditors Credit - 6e3m·b1cb3 : 4/6/24, 1:12 PM
Certification of Richard J. Corbi Esq. with attachments Page 212 of 264

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL] Re: Bed, Bath & Beyond - Unsecured Letters of Credit - BP3m-BP0-B5... 4/6/24, 1:12 PM

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond: Insurance Letters of Credit - 66.5m: EUILD E...    4/6/24, 1:12 PM

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

**Exhibit F**

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash    4/6/24, 1:15 PM

 Gmail                                                                   Richard Corbi <rcorbi@corbilaw.com>

---

**RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash**
1 message

---

**Shea, Brendan** <brendan.shea@lazard.com>
To: Richard Corbi <rcorbi@corbilaw.com>, Project Butterfly 2023 <project.butterfly.2023@lazard.com>
Cc: Hugh Hill <hhill@taussigcapital.ch>, "Young, Mary Catherine" <marycatherine.young@kirkland.com>, "Hunter, Derek I." <derek.hunter@kirkland.com>, "Sosnick, Noah Z." <noah.sosnick@kirkland...

Hi Richard,

They just decided on a broker and are using CAC. The main contact is below if you'd like to reach out:



Ross Rotelfeld
Senior Vice President, Mergers & Acquisitions

C 214-636-7929

Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, August 11, 2023 2:43 PM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Sosnick, Noah Z. <noah.sosnick@kirkland...
**Subject:** Re: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

Good afternoon Brendan,

Can you provide an update on where the debtor's are in this process?

Thanks,

Rich

On Fri, Jul 28, 2023 at 10:56 AM Shea, Brendan <brendan.shea@lazard.com> wrote:

> Thanks Hugh. I'll pass this feedback to the Company, but in each instance that I have done this, they've indicated they are waiting until they have hired their broker and are ready to launch a proce

> ---

> **From:** Hugh Hill <hhill@taussigcapital.ch>
> **Sent:** Friday, July 28, 2023 10:46 AM
> **To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>
> **Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>
> **Subject:** Re: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

> Before you get an insurance broker involved, I will make an appeal for us to submit a stalking horse bid. Insurance brokers tend to favor insurance company cu
> model) and having us, as a financial buyer, in at the outset of the process will ultimately lead to a better outcome for the estate and its creditors.

> Happy to discuss at any time

> Hugh

> ---

> **From:** Shea, Brendan <brendan.shea@lazard.com>
> **Sent:** Friday, July 28, 2023 10:27:31 AM
> **To:** Richard Corbi
> **Cc:** Young, Mary Catherine; Hunter, Derek I.; Sosnick, Noah Z.; Hugh Hill
> **Subject:** RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 217 of 264

Richard,


Apparently the broker hasn't been decided upon yet. It may be WTW but it may be someone else. I'll let you know once the broker is confirmed.


Best,
Brendan

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Friday, July 28, 2023 10:23 AM
**To:** Richard Corbi <rcorbi@corbilaw.com>
**Cc:** Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tem <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>; Hugh Hill <hhill@taussigcapital.ch>
**Subject:** RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

I had heard it was going to be WTW, but I'll confirm and revert.

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, July 28, 2023 10:22 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>
**Cc:** Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tem <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>; Hugh Hill <hhill@taussigcapital.ch>
**Subject:** Re: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash


Thanks.  Who is running the process?


On Fri, Jul 28, 2023 at 10:20 AM Shea, Brendan <brendan.shea@lazard.com> wrote:

Hi Richard,


The Company is still preparing for a process on the insurance portfolio. Your contact information will be given to the broker running that process and they will reach out to you when they are rea


Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, July 28, 2023 10:18 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>
**Cc:** Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.te <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>; Hugh Hill <hhill@taussigcapital.ch>
**Subject:** Re: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash


Good morning Lazard and Kirkland teams,


Are there any updates on the process for the Oak assets?  Any updates to our questions below?


Thank you,

Rich


On Tue, Jul 11, 2023 at 11:11 AM Richard Corbi <rcorbi@corbilaw.com> wrote:

Thank you Brendan.  With that in mind, we still have the follow up questions and would like to speak with the appropriate point person.  I have re-listed our questions below.

1) The contact person who handled insurance internally for the Debtors.

2) Willis brokerage / captive contact.

3) Whatever filings Willis prepared regarding the Oak cell in Encore. We need to get the reserves by year.  It looks like there was a loss portfolio transfer done a few years ago so Willis woul

4) The latest loss run.

On Tue, Jul 11, 2023 at 11:09 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 218 of 264

thank you Brendan. Who is going to handle the sale of the captive insurance company and the collateralized LOCs? From prior experience, it's often be
insurance brokers.

Happy to discuss further at your convenience

regards

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Tuesday, July 11, 2023 10:56:06 AM
**To:** Richard Corbi
**Cc:** Hugh Hill; Overman, Erik; Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

Hi Richard,

The company is still preparing to market their insurance portfolio. Once they are ready, they've told us they will include you in their process.

Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, July 6, 2023 5:23 PM
**To:** Shea, Brendan <brendan.shea@lazard.com>
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirk
Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash

Hi Brendan,

Do you have any updates on our proposed transaction?

Thanks,

Rich

On Fri, Jun 23, 2023 at 1:30 PM Shea, Brendan <brendan.shea@lazard.com> wrote:

> Thank you Hugh.
>
> We will raise with the Company to the extent they are not aware. They are still deciding on their path forward as it relates to insurance hence some of the delay in getting back to you. W
> follow up once we have more clarity from them.
>
> Best,
> Brendan
>
> ---
> **From:** Hugh Hill <hhill@taussigcapital.ch>
> **Sent:** Friday, June 23, 2023 9:31 AM
> **To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
> **Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah
> <project.butterfly.2023@lazard.com>
> **Subject:** [EXTERNAL]: re Bed, Bath & Beyond- Insurance Letters of Credit- $53m of cash
>
> Brendan,
>
> I was reviewing the attached LoC schedule and noted that approximately $50m of these LoCs held by insurance counterparties appear to expire on July 1 (May 1 notice dates and 60 d
> sometimes drawdown the cash balance of LoCs if new LoCs are not issued upon expiration.  Not surprisingly, it becomes much harder to extract the equity value of those LoCs when th
>
> Based on prior experience, that equity value is most-likely greater than >$10m, given that insurance companies usually like to hold collateral that is at least 120% of the actual subject li

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond, insurance letters or credit - 665m-bi-case...    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 219 of 264

I'm sure the company is aware of this, but I did want to bring it to your attention as well.

regards

Hugh

| UNITED STATES FIDELITY AND GUARANTY | United States | USD | 2,623,000.00 | 2,623,000.00 | Bed Bath and Beyond Inc. | Y | 90 | 3/ |
| ARCH INSURANCE COMPANY | United States | USD | 2,216,659.62 | 2,216,659.62 | Bed Bath and Beyond Inc. | Y | 2/29/1900 | 7/ |
| SENTRY INSURANCE A MUTUAL COMPANY | United States | USD | 200,000.00 | 200,000.00 | CHRISTMAS TREE SHOPS, INC., | Y | 60 | 5 |
| FEDERAL INSURANCE COMPANY | United States | USD | 1,576,705.00 | 1,576,705.00 | Bed Bath and Beyond Inc. | Y | 60 | 5 |
| ARCH INSURANCE COMPANY | United States | USD | 5,370,040.00 | 5,370,040.00 | Bed Bath and Beyond Inc. | Y | 60 | 5 |
| SAFETY NATIONAL CASUALTY CORP. | United States | USD | 39,750,000.00 | 39,750,000.00 | Bath & Beyond Inc. | Y | 60 | 5 |
| SAFETY NATIONAL CASUALTY | United States | USD | 4,250,000.00 | 4,250,000.00 | Bed Bath and Beyond Inc. | N | | |
| TRAVELERS CASUALTY AND SURETY CO. | United States | USD | 1,526,084.72 | 1,526,084.72 | BED BATH & BEYOND INC. | N | | |

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, June 22, 2023 5:54 PM
**To:** Richard Corbi; Hugh Hill; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Rich,

Let us check in with the Company.

Best,
Brendan

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, June 22, 2023 5:44 PM
**To:** Hugh Hill <hhill@taussigcapital.ch>; Overman, Erik <erik.overman@lazard.com>; Shea, Brendan <brendan.shea@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Brendan and Erik,

Any update on the below?

Thanks,

Rich

The Law Offices of Richard J. Corbi | Lo Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond / Insurance Letters of Credit - 663m of User...    4/6/24, 1:15 PM

On Tue, Jun 20, 2023 at 2:14 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Brendan and Erik,

Any update on the status of our below requests?

Cheers,

Rich

On Thu, Jun 15, 2023 at 4:45 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Hi Brendan and Erik,

We have reviewed the Oak Insurance materials that were just put in the data room and have some follow up questions and requests to speed the process along.

1) The contact person who handled insurance internally for the Debtors.

2) Willis brokerage / captive contact.

3) Whatever filings Willis prepared regarding the Oak cell in Encore. We need to get the reserves by year.  It looks like there was a loss portfolio t
2016-2021 records.

4) The latest loss run.

Finally, on the regulatory approval front, Tausig is meeting with the Vermont regulators in a few weeks on another matter and can socialize this po

Please let us know if a call will be helpful.

Cheers,

Rich

On Wed, Jun 14, 2023 at 9:41 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

Thank you very much for the update- anything (even if unaudited) is most-appreciated.

Who is the captive manager for Oak in Vermont?

based upon what I've been able to glean from the balance sheet, it looks like Oak has btw $4-9m of equity that can be unlocked

Thank you again

Hugh

Sent from my iPhone

On Jun 14, 2023, at 9:13 AM, Shea, Brendan <brendan.shea@lazard.com> wrote:

Hi Hugh,

Apologies for the delay. Last I heard is that the latest financial statements are currently being audited, and they don't have an actuarial report.

We will follow up for the unaudited version or any other update.

Best,
Brendan

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Tuesday, June 13, 2023 5:13 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>
**Cc:** Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke
Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Brendan, any estimate as to when we might see more information regarding Oak Insurance and / or the $57m worth of self-insurance/dec

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: In re Bed, Bath & Beyond... Insurance Letters of Credit - 663m of cash...    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 221 of 264

If it would be helpful, I am happy to jump on the phone for 10 mins to guide the data request as I've done this many times on other cases.

thank you

Hugh

---

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, June 1, 2023 6:27:58 PM
**To:** Richard Corbi; Hugh Hill
**Cc:** Overman, Erik; Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Rich,

Apologies for the delay – we are working with the company and this and will provide as soon as we can.

Best,
Brendan

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, June 1, 2023 5:51 PM
**To:** Hugh Hill <hhill@taussigcapital.ch>
**Cc:** Shea, Brendan <brendan.shea@lazard.com>; Overman, Erik <erik.overman@lazard.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, l <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Project Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Erik and Brendan,

Do you have an estimated time of when the Oak materials will be uploaded to the data room?

Thanks,

Rich

On Thu, Jun 1, 2023 at 2:25 PM Hugh Hill <hhill@taussigcapital.ch> wrote:

> All, I was looking at the consolidated balance sheet and it suggests that Oak has $9.157m of unrestricted cash (ie potential equity value
>
> Also, I saw that there was approx. $57.5m of cash collateralized LoCs posted to insurance companies. Assuming (conservatively) that t the subject risk, this could be another $11.5m of value to be quickly monetized.
>
> thank you
>
> Hugh
>
> ---
>
> **From:** Hugh Hill
> **Sent:** Tuesday, May 30, 2023 2:25:22 PM
> **To:** Shea, Brendan; Richard Corbi; Overman, Erik
> **Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
> **Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
>
> Brendan,
>
> Any more information from the company on Oak Insurance?
>
> thank you
>
> Hugh
>
> ---
>
> **From:** Hugh Hill
> **Sent:** Friday, May 26, 2023 6:30:22 AM

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: Re: Bed, Bath & Beyond, ... Insurance Company of Oak ... Bes... Indication ...    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 222 of 264

**To:** Shea, Brendan; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you very much. If it would be helpful, I can jump on a call at any time with any of the employees or external insurance brokers wh
process.

regards

Hugh

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, May 25, 2023 10:16:52 PM
**To:** Hugh Hill; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thanks Hugh – we have requested this and will revert.

Best,
Brendan

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Thursday, May 25, 2023 10:16 AM
**To:** Shea, Brendan <brendan.shea@lazard.com>; Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com
Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you Brendan.

Would you please request whatever the last filings with Vermont were for Oak? Typically this would've been an annual audit or actuaria
the internal risk management team and / or the insurance brokers who handled BBB. David Kastin (the GC) would probably also know

Thank you again

Hugh

**From:** Shea, Brendan <brendan.shea@lazard.com>
**Sent:** Thursday, May 25, 2023 8:52:30 AM
**To:** Hugh Hill; Richard Corbi; Overman, Erik
**Cc:** Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** RE: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Hi Hugh,

The consolidating financials that we have in folder 3.3.1 is the extent of the information currently available. We can request any actuarial / audited work to the extent it

Best,
Brendan

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Thursday, May 25, 2023 7:41 AM
**To:** Richard Corbi <rcorbi@corbilaw.com>; Overman, Erik <erik.overman@lazard.com>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com
Butterfly 2023 <project.butterfly.2023@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Thank you for the invite. It is most likely just me being dense, but I am having trouble finding the financial statements for Oak. Would yo
any actuarial / audited work handy for Oak?

I see from the consolidated BS that there's about ~19m in total and liabilities btw 10-15? or am I off the mark?

The Law Offices of Richard J. Corbi LLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond  insurance (letters of credit - $635m+Cash)...                                    4/6/24, 1:15 PM

Regardless, it looks like there is a deal to be had here that would result in an immediate cash release to BBB in the mid-7 figures. Sand... very good working relationship but let's ballpark some numbers before we get her blessing.

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, May 24, 2023 7:15:34 PM
**To:** Overman, Erik
**Cc:** Hugh Hill; Young, Mary Catherine; Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.; Project Butterfly 2023
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.

Besides Hugh and myself,

Please add the following: jbaque@tci-advisors.com; joey@taussigcapital.ch

On Wed, May 24, 2023 at 5:23 PM Overman, Erik <erik.overman@lazard.com> wrote:

Hi Rich – We'll be providing VDR access shortly and will follow up with a countersigned NDA. The VDR includes financial information on captive insurance entity. Pl... access.

Thanks

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Wednesday, May 24, 2023 9:27 AM
**To:** Hugh Hill <hhill@taussigcapital.ch>
**Cc:** Young, Mary Catherine <marycatherine.young@kirkland.com>; Overman, Erik <erik.overman@lazard.com>; Hunter, Derek I. <derek.hunter@kirkland.com>; Te... Noah Z. <noah.sosnick@kirkland.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc

Hi Erik,

Any word on the information request as well as the counter signed NDA?

Thanks,

Rich

On Tue, May 23, 2023 at 4:51 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

All, please see the executed NDA attached. Please send whatever is readily available at your earliest convenience. thank you

Hugh

**From:** Hugh Hill
**Sent:** Monday, May 22, 2023 5:24:16 PM
**To:** Young, Mary Catherine; Richard Corbi; Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, I...

All thank you for your time last week. As I mentioned, if we can get a recent copy of Oak's financial statement, we should be able to... money we can realize for the estate in the very-near term.

regards

Hugh

**From:** Richard Corbi <rcorbi@corbilaw.com> on behalf of Young, Mary Catherine <marycatherine.young@kirkland.com>
**Sent:** Friday, May 19, 2023 8:10:05 AM
**To:** Overman, Erik
**Cc:** Hunter, Derek I.; Tempke, Christian; Sosnick, Noah Z.
**Subject:** Fwd: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company,...

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: Re Bed, Bath & Beyond - Insurance Letters on Oak... 4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 224 of 264

**When:** Friday, May 19, 2023 10:30 AM-11:00 AM.
**Where:** https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09

---------- Forwarded message ---------
From: **Young, Mary Catherine** <marycatherine.young@kirkland.com>
Date: Fri, May 19, 2023 at 8:06 AM
Subject: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, Inc.
To: Richard J Corbi <rcorbi@corbilaw.com>, Overman, Erik <erik.overman@lazard.com>
Cc: Hunter, Derek I. <derek.hunter@kirkland.com>, Tempke, Christian <christian.tempke@lazard.com>, Sosnick, Noah Z. <noah.sosnick@kirkland.com>

Mary Catherine Young is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

https://kirkland.zoom.us/j/95654731708?pwd=NitXOG9tVlM0bEM1ZTVCNTdSaXUvQT09

Meeting ID: 956 5473 1708

Passcode: 255431

One tap mobile

+16465588656,,95654731708#,,,,,,0#,,255431# US (New York)

+16469313860,,95654731708#,,,,,,0#,,255431# US

Dial by your location

        +1 646 558 8656 US (New York)

        +1 646 931 3860 US

        +1 301 715 8592 US (Washington DC)

        +1 305 224 1968 US

        +1 309 205 3325 US

        +1 312 626 6799 US (Chicago)

        +1 360 209 5623 US

        +1 386 347 5053 US

        +1 507 473 4847 US

        +1 564 217 2000 US

        +1 669 444 9171 US

        +1 669 900 6833 US (San Jose)

        +1 689 278 1000 US

        +1 719 359 4580 US

        +1 253 205 0468 US

        +1 253 215 8782 US (Tacoma)

        +1 346 248 7799 US (Houston)

        +44 203 901 7895 United Kingdom

        +44 208 080 6591 United Kingdom

        +44 208 080 6592 United Kingdom

        +44 330 088 5830 United Kingdom

        +44 131 460 1196 United Kingdom

        +44 203 481 5237 United Kingdom

        +44 203 481 5240 United Kingdom

        +32 2 585 5574 Belgium

        +32 2 588 4188 Belgium

        +32 2 788 0172 Belgium

        +32 2 788 0173 Belgium

        +32 1579 5132 Belgium

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: Re Bed, Bath & Beyond - Insurance Letters of Credit - 563m of Cash ...    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 225 of 264

+32 2 290 9360 Belgium

+49 69 5050 0951 Germany

+49 69 5050 0952 Germany

+49 695 050 2596 Germany

+49 69 7104 9922 Germany

+49 69 3807 9883 Germany

+49 69 3807 9884 Germany

+852 5808 6088 Hong Kong SAR

+852 5803 3730 Hong Kong SAR

+852 5803 3731 Hong Kong SAR

Meeting ID: 956 5473 1708

Passcode: 255431

Find your local number: https://kirkland.zoom.us/u/aV3Fg5hxJ


Join by SIP

95654731708@zoomcrc.com


Join by H.323

162.255.37.11 (US West)

162.255.36.11 (US East)

221.122.88.195 (China)

115.114.131.7 (India Mumbai)

115.114.115.7 (India Hyderabad)

213.19.144.110 (Amsterdam Netherlands)

213.244.140.110 (Germany)

103.122.166.55 (Australia Sydney)

103.122.167.55 (Australia Melbourne)

209.9.211.110 (Hong Kong SAR)

149.137.40.110 (Singapore)

64.211.144.160 (Brazil)

149.137.68.253 (Mexico)

69.174.57.160 (Canada Toronto)

65.39.152.160 (Canada Vancouver)

207.226.132.110 (Japan Tokyo)

149.137.24.110 (Japan Osaka)

Meeting ID: 956 5473 1708

Passcode: 255431

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, May 19, 2023 7:47 AM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest for Oak Insurance Company, I


10:30 works for us. Do you want to send a dial in or would you like me to ?

Sent from my iPhone


On May 18, 2023, at 11:20 PM, Overman, Erik <erik.overman@lazard.com> wrote:

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: re Bed, Bath & Beyond, insurance letters of credit - 363 m - user...    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 226 of 264



Rich – Would 10:30 tomorrow morning work?

Otherwise we could make 11:00 work or come back with times for Monday morning.

Erik Overman

Lazard Frères & Co. LLC

Office: (212) 632-1526

Mobile: (312) 316-7030

> On May 18, 2023, at 21:28, Richard Corbi <rcorbi@corbilaw.com> wrote:
>
> Erik,
>
> Are we having our call tomorrow or Monday?
> Sent from my iPhone

>> On May 18, 2023, at 5:18 PM, Richard Corbi <rcorbi@corbilaw.com> wrote:
>> Hi Erik,
>>
>> The mornings are generally better for my client.  Tomorrow morning and Monday morning are free.
>>
>> Cheers,
>> Rich
>> Sent from my iPhone

>>> On May 18, 2023, at 4:25 PM, Overman, Erik <erik.overman@lazard.com> wrote:
>>>
>>> Rich – Thanks for following up.
>>>
>>> We think it makes sense to have a call with the K&E team and your clients as you suggested. Are there some times that would work t
>>> end?
>>>
>>> Let us know and we can get something on the calendar.
>>>
>>> Thanks again
>>>
>>> Erik Overman
>>>
>>> Lazard Frères & Co. LLC
>>>
>>> Office: (212) 632-1526
>>>
>>> Mobile: (312) 316-7030

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, May 18, 2023 3:15 PM
**To:** Overman, Erik <erik.overman@lazard.com>
**Cc:** Hunter, Derek I. <derek.hunter@kirkland.com>; Tempke, Christian <christian.tempke@lazard.com>
**Subject:** Re: [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Interest fo

Hi Erik,

I'm following up on the NDA and when we could get on a call together with our respective clients.  My clients are anxious to get this m

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi   Esq. with attachments    Page 227 of 264

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL]: Re Bed, Bath & Beyond - Insurance letters on Oak - bestin-class...    4/6/24, 1:15 PM

Cheers,

Rich

On Sun, May 14, 2023 at 9:24 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

> Hi Erik,
>
> It was good connecting with you on Friday.  I wanted to follow up regarding the NDA.  Once you send it over, we can get it process
>
> Cheers,
>
> Rich
>
> On Thu, May 11, 2023 at 6:44 PM Richard Corbi <rcorbi@corbilaw.com> wrote:
>
>> Hi Erik,
>>
>> I'm actually out of the office at a client meeting right now.  Tomorrow after 2 pm works. I have to administer a final exam at St. Jo
>> tomorrow.
>>
>> I look forward to discussing.
>>
>> Thanks,
>>
>> Rich
>>
>> Sent from my iPhone
>>
>>> On May 11, 2023, at 6:36 PM, Overman, Erik <erik.overman@lazard.com> wrote:
>>>
>>> Rich –
>>>
>>> Thanks for reaching out with this and appreciate the interest. I tried your office line a bit ago and was hoping to discuss. I
>>> work well for you tomorrow? Let me know and I can give you a call.
>>>
>>> Thanks again
>>>
>>> Erik Overman
>>>
>>> Lazard Frères & Co. LLC
>>>
>>> Office: (212) 632-1526
>>>
>>> Mobile: (312) 316-7030
>>>
>>> _____
>>>
>>> **From:** Richard Corbi <rcorbi@corbilaw.com>
>>> **Sent:** Thursday, May 4, 2023 11:49 AM
>>> **To:** joshua.sussberg@kirkland.com
>>> **Cc:** Hugh Hill <hhill@taussigcapital.ch>; Johnathon Baque <jbaque@tci-advisors.com>; emily.geier@kirkland.com; dere
>>> Sirota, Michael <msirota@coleschotz.com>; wusatine@coleschotz.com; fyudkin@coleschotz.com; Kurtz, David <david.k
>>> Wooten, Jason <jason.wooten@lazard.com>; Tempke, Christian <christian.tempke@lazard.com>; Project Butterfly 2023
>>> <project.butterfly.2023.wg@lazard.com>
>>> **Subject:** [EXTERNAL]: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - Indication of Int
>>> Company, Inc.
>>>
>>> Good morning Mr. Sussberg,
>>>
>>> It has been a while since we've worked together on a matter.  As set forth in more detail in the attached letter, my client, T
>>> Advisors, has an interest in potentially purchasing the non-debtor Oak Insurance Company, Inc. out of the above-reference

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] re Bed, Bath & Beyond - unsecured Letters of Credit - 6e3m-6H05dx...          4/6/24, 1:15 PM

I am simultaneously sending this to the Debtors' representatives listed in the bid procedures order. We understand that y
the case and look forward to hearing from you soon. The Taussig team and myself are available to discuss this potential

Cheers,

Rich

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR
COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any
attachments are intended solely for the personal and confidential use of the
recipient(s) named above. This communication is intended to be and to remain
confidential and may be subject to applicable attorney/client and/or work product
privileges. If you are not the intended recipient of this message, or if this message
has been addressed to you in error, please immediately alert the sender by reply e-
mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR
COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any
attachments are intended solely for the personal and confidential use of the
recipient(s) named above. This communication is intended to be and to remain
confidential and may be subject to applicable attorney/client and/or work product
privileges. If you are not the intended recipient of this message, or if this message
has been addressed to you in error, please immediately alert the sender by reply e-
mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR
COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any
attachments are intended solely for the personal and confidential use of the
recipient(s) named above. This communication is intended to be and to remain
confidential and may be subject to applicable attorney/client and/or work product
privileges. If you are not the intended recipient of this message, or if this message
has been addressed to you in error, please immediately alert the sender by reply e-
mail and then delete this message and its attachments.

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] - Re: Bed, Bath & Beyond: Unsecured Letters of Credit - Gershenson... 4/6/24, 1:15 PM

Case 23-13359-VFP Doc 2958-2 Filed 04/11/24 Entered 04/11/24 10:09:25 Desc
Certification of Richard J. Corbi Esq. with attachments Page 229 of 264

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property
Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us imme
destroy this communication and all copies thereof, including all attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] Re Bed, Bath & Beyond: 4insurance letters of credit - best in class...   4/6/24, 1:15 PM

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

The Law Offices of Richard J. Corbi PLLC Mail - RE: [EXTERNAL] - Re Bed, Bath & Beyond - Unsecured Letters of Credit - \$63m or Less...    4/6/24, 1:15 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 232 of 264

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.



Richard Corbi <rcorbi@corbilaw.com>

---

## RE: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.

1 message

---

**Ross Rodefeld** <ross.rodefeld@cacspecialty.com>                    Thu, Aug 17, 2023 at 4:49 PM
To: Richard Corbi <rcorbi@corbilaw.com>
Cc: Hugh Hill <hhill@taussigcapital.ch>, "Hunter, Derek I." <derek.hunter@kirkland.com>, "Sosnick, Noah Z." <noah.sosnick@kirkland.com>, "Young, Mary Catherine" <marycatherine.young@kirkland.com>, Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>

Hi Richard,

Are you available tomorrow for a quick call (all ET)?

10:30-11

11:30-12

12:30-1



Ross Rodefeld

Senior Vice President, Mergers & Acquisitions

C 214-636-7929

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, August 17, 2023 10:24 AM
**To:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Hunter, Derek I. <derek.hunter@kirkland.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>
**Subject:** In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.

Good afternoon Ross,

The Law Offices of Richard J. Corbi PLLC Mail - RE: In re Bestwall & ... 2023959V-f-f/ Teamkr. B/MGR-FM for Oak Insurance Company, Inc    4/6/24, 1:16 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 234 of 264

My firm is counsel to Taussig Risk Capital Advisors, Inc. ("TRCA") and am writing in connection with the May 4, 2023 IoI that I sent to Debtors regarding TRCA's interest in purchasing the non-Debtor Oak Insurance Company.  Brendan Shea at Lazard gave me your contact information. We executed an NDA in May 2023 and received access to the data room that Lazard had set up.


However, we have additional diligence requests that we raised with Lazard and Kirkland on June 15, 2023.  Those diligence points are as follows:

1) The contact person who handled insurance internally for the Debtors.

2) Willis brokerage / captive contact.

3) Whatever filings Willis prepared regarding the Oak cell in Encore. We need to get the reserves by year.  It looks like there was a loss portfolio transfer done a few years ago so Willis would have the 2016-2021 records.

4) The latest loss run.

Please let us know when there is a good time to have a call once you have digested the IoI and related diligence items.  Please also provide us with additional contact points from your team and the K&E team on this transaction.

Cheers,

Rich


--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com


ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

## **Exhibit G**

The Law Offices of Richard J. Corbi - Gmail - Re: In re Bed, Bath & ...23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.    4/6/24, 1:23 PM

 Gmail

Richard Corbi <rcorbi@corbilaw.com>

# Re: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.

1 message

**Hugh Hill** <hhill@taussigcapital.ch>                                        Fri, Sep 22, 2023 at 5:06 PM
To: Ross Rodefeld <ross.rodefeld@cacspecialty.com>
Cc: Richard Corbi <rcorbi@corbilaw.com>, Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>, "Hunter, Derek I."
<derek.hunter@kirkland.com>, "Sosnick, Noah Z." <noah.sosnick@kirkland.com>, "Young, Mary Catherine"
<marycatherine.young@kirkland.com>

Please send bill a docusign, otherwise I'll try and take care of this when I am back in front of my computer probably tomorrow morning

Sent from my iPhone

> On Sep 22, 2023, at 4:38 PM, Ross Rodefeld <ross.rodefeld@cacspecialty.com> wrote:

Richard,

Please review and sign the attached joinder.  Thanks.

<image001.jpg>

Ross Rodefeld

Senior Vice President, Mergers & Acquisitions

C 214-636-7929

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, September 22, 2023 10:59 AM
**To:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
**Cc:** Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>; Hunter, Derek I.
<derek.hunter@kirkland.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary
Catherine <marycatherine.young@kirkland.com>; Hugh Hill <hhill@taussigcapital.ch>
**Subject:** Re: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - IoI for
Oak Insurance Company, Inc.

Hi Ross,

Do you have any updates?

Thanks,

Rich

On Tue, Sep 19, 2023 at 11:12 AM Richard Corbi <rcorbi@corbilaw.com> wrote:

> Good morning Ross,
>
> Do you have any updates for us?
>
> Thanks,
>
> Rich
>
> On Mon, Sep 11, 2023 at 1:56 PM Ross Rodefeld <ross.rodefeld@cacspecialty.com> wrote:
>
>> Hey Rich,
>>
>> We are making slow progress.  Let's plan to reconnect in a week or so.  Thanks.
>>
>>
>> Ross Rodefeld
>>
>> Senior Vice President, Mergers & Acquisitions
>>
>> C 214-636-7929
>>
>> _____
>>
>> **From:** Richard Corbi <rcorbi@corbilaw.com>
>> **Sent:** Friday, September 8, 2023 10:03 AM
>> **To:** Andre Eichenholtz <andre.eichenholtz@cacspecialty.com>
>> **Cc:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>; Hunter, Derek I.
>> <derek.hunter@kirkland.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 238 of 264

The Law Offices of Richard J. Corbi PLLC Mail - Re: In re Bed, Bath & ... 23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.    4/6/24, 1:23 PM

Catherine <marycatherine.young@kirkland.com>; Hugh Hill <hhill@taussigcapital.ch>
**Subject:** Re: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - IoI
for Oak Insurance Company, Inc.

Good morning Andre and Ross,

Do you have any updates regarding our potential transaction?

Thanks,

Rich

On Thu, Aug 31, 2023 at 2:01 PM Hugh Hill <hhill@taussigcapital.ch> wrote:

> Thanks Andre. Anything you can send us in the interim (collateral balances,
> actuarial, unaudited financial statements, etc) would be most appreciated.
>
> thank you again
>
> Hugh
>
> ---
>
> **From:** Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>
> **Sent:** Thursday, August 31, 2023 1:59:43 PM
> **To:** Richard Corbi; Ross Rodefeld
> **Cc:** Hugh Hill; Hunter, Derek I.; Sosnick, Noah Z.; Young, Mary Catherine
> **Subject:** RE: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) -
> IoI for Oak Insurance Company, Inc.
>
> Richard,
>
> We will have a better update towards the end of next week.  Let's connect then.  Have a great
> weekend.
>
> Regards,
>
> André
>
> ---
>
> **From:** Richard Corbi <rcorbi@corbilaw.com>
> **Sent:** Wednesday, August 30, 2023 1:29 PM
> **To:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
> **Cc:** Hugh Hill <hhill@taussigcapital.ch>; Hunter, Derek I. <derek.hunter@kirkland.com>;

The Law Offices of Richard J. Corbi LLC Mail - Re: In re Bed, Bath & ...23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc    4/6/24, 1:23 PM

Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary Catherine
<marycatherine.young@kirkland.com>; Andre Eichenholtz <Andre.eichenholtz@
cacspecialty.com>
**Subject:** Re: In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) -
IoI for Oak Insurance Company, Inc.

Hi Ross and Andre,

Do you have any updates since we spoke last?

Thanks,

Rich

On Thu, Aug 17, 2023 at 6:08 PM Richard Corbi <rcorbi@corbilaw.com> wrote:

Let's do 10:30 Ross.

Sent from my iPhone

On Aug 17, 2023, at 4:49 PM, Ross Rodefeld <ross.rodefeld@cacspecialty.
com> wrote:

Hi Richard,

Are you available tomorrow for a quick call (all ET)?

10:30-11

11:30-12

12:30-1

<image001.jpg>

Ross Rodefeld

Senior Vice President, Mergers & Acquisitions

The Law Offices of Richard J. Corbi PLLC Mail - Re: In re Bed, Bath & ....23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.   4/6/24, 1:23 PM

C 214-636-7929

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, August 17, 2023 10:24 AM
**To:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Hunter, Derek I. <derek.hunter@kirkland.com>; Sosnick, Noah Z. <noah.sosnick@kirkland.com>; Young, Mary Catherine <marycatherine.young@kirkland.com>
**Subject:** In re Bed, Bath & Beyond, Inc., et al., Case No. 23-13359 (VFP) (Bankr. D.N.J.) - IoI for Oak Insurance Company, Inc.

Good afternoon Ross,

My firm is counsel to Taussig Risk Capital Advisors, Inc. ("TRCA") and am writing in connection with the May 4, 2023 IoI that I sent to Debtors regarding TRCA's interest in purchasing the non-Debtor Oak Insurance Company. Brendan Shea at Lazard gave me your contact information. We executed an NDA in May 2023 and received access to the data room that Lazard had set up.

However, we have additional diligence requests that we raised with Lazard and Kirkland on June 15, 2023.  Those diligence points are as follows:

1) The contact person who handled insurance internally for the Debtors.

2) Willis brokerage / captive contact.

3) Whatever filings Willis prepared regarding the Oak cell in Encore. We need to get the reserves by year.  It looks like there was a loss portfolio transfer done a few years ago so Willis would have the 2016-2021 records.

4) The latest loss run.

Please let us know when there is a good time to have a call once you have digested the IoI and related diligence items.  Please also provide us with additional contact points from your team and the K&E team on this transaction.

Cheers,

Rich

--

# Richard J. Corbi

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
The Law Offices of Richard J. Corbi PLLC Mail - Re: Pre Bed, Bath & ...(26-13659)(VFP) (Bankr. E...TG for Oak Interprise Company Inc    4/6/24, 1:23 PM
Certification of Richard J. Corbi    Esq. with attachments    Page 241 of 264

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
The Law Offices of Richard J. Corbi PLC Mail - Re: NDA Bed Bath & ...726 90597(4-P) (Bankr. E-Mail) - BBB for Oak Insurance Company Inc   4/6/24, 1:23 PM
Certification of Richard J. Corbi    Esq. with attachments    Page 243 of 264

CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

--

## Richard J. Corbi

### The Law Offices of Richard J. Corbi PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

<BBB - CAC NDA 6.6.23 (Executed)_Joinder_Template.pdf>

CAC Specialty™   **image001.jpg**
3K

## **Exhibit H**



## Re: BB&B- LOI

1 message

---

**Richard Corbi** <rcorbi@corbilaw.com>                                    Wed, Dec 20, 2023 at 1:32 PM
To: Ross Rodefeld <ross.rodefeld@cacspecialty.com>, Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>
Cc: Hugh Hill <hhill@taussigcapital.ch>

Good afternoon Ross,

With the holiday weekend approaching, does your side have any questions or wish to discuss my client's LOI?  I want to coordinate schedules and times in the event a conference call is needed.

I have the same questions as Hugh.  Was the December 11, 2023 bid deadline the universal bid deadline imposed on all parties?  Has our bid been shared with anyone outside of the plan administrator, oversight committee and counsel to the same?

Thanks,
Rich

On Tue, Dec 19, 2023 at 9:20 PM Hugh Hill <hhill@taussigcapital.ch> wrote:

> Ross,
>
> Thank you for getting back to me. What exactly is the deadline imposed on Safety? Do any other interested parties have to respect the December 11 deadline imposed on us? Will we be able to review the Safety bid as well, given that they have seemingly been granted ~10 additional days?
>
> As you may perceive, we have some concerns with the process. Please let me know if you have time to discuss.
>
> thank you again.
>
> regards
>
> Hugh
>
> ---
>
> **From:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
> **Sent:** Tuesday, December 19, 2023 2:54:21 PM
> **To:** Hugh Hill; Richard Corbi; Andre Eichenholtz
> **Subject:** RE: BB&B- LOI
>
> Hi Hugh,

Yes, we were expecting Safety's number by Friday, then Monday.  Now we're told that it is going through necessary approvals and that it will be released tomorrow.

Once we are comfortable with SN's position (i.e., there are no further back and forth questions to SN), we plan to submit our findings/comparison to the plan administrator.

Will post you after this, realistically I would expect next week.

Thanks,



Ross Rodefeld

Senior Vice President, Mergers & Acquisitions

C 214-636-7929

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Tuesday, December 19, 2023 1:04 PM
**To:** Richard Corbi <rcorbi@corbilaw.com>; Ross Rodefeld <ross.rodefeld@cacspecialty.com>; Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>
**Subject:** Re: BB&B- LOI

Ross, any update? Last Friday you had indicated we would have more information by yesterday.

Thank you

Hugh

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Friday, December 15, 2023 5:49:49 PM
**To:** Ross Rodefeld; Andre Eichenholtz
**Cc:** Hugh Hill
**Subject:** Re: BB&B- LOI

Ross,

The Law Offices of Richard J. Corbi PLLC Mail - Re: BB&B- LOI    4/6/24, 1:48 PM

Case 23-13359-VFP    Doc 2958-2    Filed 04/11/24    Entered 04/11/24 10:09:25    Desc
Certification of Richard J. Corbi    Esq. with attachments    Page 247 of 264

On November 15, 2023, you e-mailed to request my client's updated bid by December 11, 2023 to coincide with your scheduled call with Safety National, the date their bid would be in your hands.

We stuck to that original deadline and submitted our updated LOI on December 11, 2023, notwithstanding that on December 5, 2023 you requested (without any explanation) a possible earlier deadline of December 8, 2023 and despite the fact Safety National has had diligence information not made available to my clients, despite our numerous requests.

Today, after five (5) days of follow up, you responded that you would have Safety National's bid today (December 15, 2023) or Monday, December 18, 2023.

Normally, in a federal bankruptcy court auction process, everyone has to play by the same rules.  As you may or not know, bankruptcy courts are courts of law and equity.

Please advise as to why Safety was provided an extra week to submit their bid, especially when you have had my client's bid for a week already.

Cheers,

Rich


On Fri, Dec 15, 2023 at 9:19 AM Hugh Hill <hhill@taussigcapital.ch> wrote:

> Thank you Ross for getting back to us.
>
> Wasn't the bid deadline Monday the 11th as previously announced? Why is Safety National being allowed an extra week?
>
> They have much of the information we have requested the last few months but have not received. Given that advantage, they should be expected to move faster than us.
>
> regards
>
> Hugh
>
> ---
>
> **From:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
> **Sent:** Friday, December 15, 2023 9:06:22 AM
> **To:** Richard Corbi
> **Cc:** Hugh Hill; Andre Eichenholtz
> **Subject:** RE: BB&B- LOI

The Law Offices of Richard J. Corbi PLLC Mail - Re: BB&B- LOI

Case 23-13359-VFP   Doc 2958-2   Filed 04/11/24   Entered 04/11/24 10:09:25   Desc 4/6/24, 1:48 PM
Certification of Richard J. Corbi   Esq. with attachments   Page 248 of 264

Hugh – we should be in a position to reconnect on this next week.  We're expecting SN's proposal today/Monday.  Thanks.



Ross Rodefeld

Senior Vice President, Mergers & Acquisitions

C 214-636-7929

---

**From:** Richard Corbi <rcorbi@corbilaw.com>
**Sent:** Thursday, December 14, 2023 6:06 PM
**To:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
**Cc:** Hugh Hill <hhill@taussigcapital.ch>; Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>
**Subject:** Re: BB&B- LOI

Good afternoon Ross and Andre,

I'm following up on the LOI we sent Monday.  Please let us know if you have any questions or wish to discuss.

Cheers,

Rich

On Wed, Dec 13, 2023 at 6:01 AM Richard Corbi <rcorbi@corbilaw.com> wrote:

> Good morning Ross and Andre,
>
> I'm following up on the LOI we sent on Monday. I'm flying most of the day today but will be free around 4 pm eastern if you need to have a a call to discuss anything.
>
> Cheers,
>
> Rich

The Law Offices of Richard J. Corbi LLC Mail - Re: BB&B- LOI

4/6/24, 1:48 PM

Sent from my iPhone

On Dec 11, 2023, at 5:26 PM, Ross Rodefeld <ross.rodefeld@cacspecialty.com> wrote:

Thanks Hugh, confirming receipt.  Will be back to you shortly.

<image001.jpg>

Ross Rodefeld

Senior Vice President, Mergers & Acquisitions

C 214-636-7929

---

**From:** Hugh Hill <hhill@taussigcapital.ch>
**Sent:** Monday, December 11, 2023 3:52 PM
**To:** Ross Rodefeld <ross.rodefeld@cacspecialty.com>
**Cc:** Andre Eichenholtz <Andre.eichenholtz@cacspecialty.com>; Richard Corbi
<rcorbi@corbilaw.com>
**Subject:** BB&B- LOI

Ross,

Please see attached. In sum, our offer will produce $32.59 million in cash for
the estate & its creditors ($16.84 million at close of our trade + the return of
the $15.75 million held by Safety National).

I would note that our targeted closing date (January 15, 2024) is aspirational,
as we would like to move as quickly as possible. That being said, we are
keenly aware of the requirements of the bankruptcy court process that will
ultimately dictate timing.

Please let me know if there are any questions or issues in receipt. I am
available this evening at 1-646-300-2811 until 7:30pm EST, then again
tomorrow morning after 5am EST to discuss.

regards

Hugh

Case 23-13359-VFP Doc 2958-2 Filed 04/11/24 Entered 04/11/24 10:09:25 Desc
Certification of Richard J. Corbi Esq. with attachments Page 250 of 264

The Law Offices of Richard J. Corbi PLLC Mail - Re: Bea's List                                                                4/6/24, 1:48 PM

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are
intended solely for the personal and confidential use of the recipient(s) named above. This
communication is intended to be and to remain confidential and may be subject to applicable
attorney/client and/or work product privileges. If you are not the intended recipient of this message,
or if this message has been addressed to you in error, please immediately alert the sender by reply
e-mail and then delete this message and its attachments.

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY -
CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended
solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work
product privileges. If you are not the intended recipient of this message, or if this message has been
addressed to you in error, please immediately alert the sender by reply e-mail and then delete this
message and its attachments.

The Law Offices of Richard J. Corbi PLLC Mail - Re: Bed ... Bath    4/6/24, 1:48 PM

--

**Richard J. Corbi**

**The Law Offices of Richard J. Corbi** PLLC

1501 Broadway, 12th Floor | New York, NY 10036

O: (646) 571-2033 | M: (516) 582-0649

rcorbi@corbilaw.com | www.corbilaw.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

## Exhibit I

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, December 16, 2020**                    **Hearing Room   1568**

10:00 AM
**2:18-20151    Verity Health System of California, Inc.**                    **Chapter 11**

 **#15.40** Hearing re [6271] Motion To Approve Terms And Conditions of A Private Sale of
    Equity Interests In Marillac Insurance Company, Ltd. To Randall & Quilter II
    Holdings Limited Pursuant To § 363.

         Docket  0

 **Tentative Ruling:**

  12/15/2020

  **Note: Telephonic Appearances Only. The Courtroom will be unavailable for in-
  court appearances. If you wish to make a telephonic appearance, contact Court
  Call at 888-882-6878, ext. 188 no later than one hour before the hearing. The cost
  for persons representing themselves has been waived.**

   The Court will conduct an auction of Marillac, at which Randall and ACG/TCI
  will be permitted to bid, in accordance with the procedures set forth below.

  **Pleadings Filed and Reviewed:**
  1) Notice and Motion to Approve Terms and Conditions of a Private Sale of Equity
    Interests in Marillac Insurance Company, Ltd. to Randall & Quilter II Holdings
    Limited Pursuant to § 363 [Doc. No. 6271] (the "Sale Motion")
    a) Notice of Exhibit "B" to [Sale Motion] [Doc. No. 6308]
    b) Declaration of Service by Kurtzman Carson Consultants, LLC Regarding
      Docket Numbers 6270 and 6271 [Doc. No. 6290]
  2) Objection of Annapolis Consulting Group, Inc. to Debtors' [Sale Motion] [Doc.
    No. 6280]
  3) Response in Support of [Sale Motion] [Doc. No. 6287]

## I. Facts and Summary of Pleadings

  On August 31, 2018 (the "Petition Date"), Verity Health System of California, Inc.
("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary
petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors' cases are
being jointly administered. Doc. No. 17.
  Marillac Insurance Company, Ltd. ("Marillac") is the Debtors' captive insurer and

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, December 16, 2020**                         **Hearing Room**      **1568**

<u>10:00 AM</u>
**CONT...**      **Verity Health System of California, Inc.**                         **Chapter 11**

is organized in the Cayman Islands. VHS is the sole owner of Marillac, and the Debtors are the sole customers of Marillac. Marillac has issued insurance policies providing general and professional liability ("GLPL") coverage to the Debtors.

   On August 14, 2020, the Court confirmed the *Modified Second Amended Joint Chapter 11 Plan of Liquidation (Dated July 2, 2020) of the Debtors, the Prepetition Secured Creditors, and the Committee* (the "Plan"). *See* Doc. No. 5504. The Plan provides that certain of the Debtors shall remain in existence subsequent to the Effective Date of the Plan for the purpose of winding up various operations (the "Post-Effective Date Debtors"). As relevant to Marillac, the Plan provides that "VHS, in its capacity as a Debtor and/or Post-Effective Date Debtor, and/or the Liquidating Trustee shall take such action as reasonably necessary and advisable to effectuate the sale, disposition, and or other administration of the issued and outstanding equity interests in, or assets of, Marillac. The net Cash proceeds of such sale, disposition, or other administration, if any, shall be used to pay Holders of Claims as set forth in this Plan or as otherwise agreed pursuant to a Creditor Settlement Agreement." Plan at § 5.7.

   On November 25, 2020, the Post-Effective Date Debtors and the Liquidating Trustee (collectively, the "Movants") filed a motion to approve the private sale of Marillac to Randall & Quilter II Holdings Limited ("Randall") for the purchase price of (a) $1 million in cash, (b) the assumption of the obligation to provide GLPL tail coverage of $5 million per occurrence, and (c) the forgiveness of $2.2 million of premium receivable. *See* Doc. No. 6271 (the "Sale Motion"). Movants request that Randall be granted an expense reimbursement of $150,000 in the event a higher bid is approved at the hearing on the Sale Motion (the "Sale Hearing"). Movants state that Randall would not have agreed to purchase Marillac absent the requested expense reimbursement.

   Annapolis Consulting Group, Inc. ("ACG") and TCI Holdings, Inc. ("TCI," and together with ACG, "ACG/TCI") filed an opposition to the Sale Motion (the "Opposition"), in which ACG/TCI state that they have submitted a bid for Marillac superior to Randall's, and that the Court should either approve the ACG/TCI bid or require an auction. ACG/TCI request that if an auction is conducted, ACG/TCI be deemed the stalking horse bidder and receive the same expense reimbursement proposed by the Movants for Randall.

   In reply to the Opposition, Movants state that they are evaluating the bids of Randall and ACG/TCI and that Movants will file an update on the status of both bids and Movant's position related thereto on December 15, 2020. Movants request that

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, December 16, 2020**                          **Hearing Room    1568**

10:00 AM
**CONT...        Verity Health System of California, Inc.**                          **Chapter 11**

the Court conduct an auction between Randall and ACG/TCI on the date originally
noticed for the Sale Motion, as opposed to requiring a further auction process.
Movants note that Marillac has been extensively marketed and that a delay in closing
the sale beyond December 31, 2020 will result in losses of approximately $175,000
(consisting of $130,000 of lost premium refund from excess reinsurers plus $45,000
in additional monthly fees required to be paid to a third party administrator).

## II. Findings and Conclusions

Section 363(b) authorizes an estate representative to sell estate property out of the
ordinary course of business, subject to court approval. "The court's obligation in §
363(b) sales is to assure that optimal value is realized by the estate under the
circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282,
288 (B.A.P. 9th Cir. 2005).

At the Sale Hearing, the Court will conduct an auction at which Randall and
ACG/TCI will be permitted to bid for Marillac. Since Marillac has been extensively
marketed by the Debtors' insurance broker, the Lockton Companies, LLC
("Lockton"), the Court does not find it necessary to require the Movants to conduct a
separate auction process. In fact, a separate auction would reduce the value received
for Marillac since premium refunds will be forfeited if the sale does not close prior to
December 31, 2020.

The Court notes that ACG/TCI and Movants devote substantial space in their
papers to allegations concerning the manner in which the Debtors conducted the
marketing process. According to ACG/TCI, the Debtors failed to meaningfully engage
with ACG/TCI and did not give appropriate consideration to ACG/TCI's bids.
Movants dispute these allegations.

The sole concern of the Court is ensuring that Marillac is sold for the highest
price. Since both ACG/TCI and Randall will now be participating in the auction, what
previously occurred during the marketing process is no longer relevant. At this
juncture, allegations concerning what the Debtors and/or Lockton did or did not do
during the marketing process are of no assistance to the Court, and such allegations
will not be entertained at the Sale Hearing.

The Court declines to approve the requested $150,000 expense reimbursement for
Randall. Bid protections such as an expense reimbursement are approved only if the
bid protection enhances the bidding process:

[T]he dominant issue that faces a court when determining the propriety of a

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, December 16, 2020**                                                    **Hearing Room    1568**

<u>10:00 AM</u>
**CONT...**        **Verity Health System of California, Inc.**                                    **Chapter 11**

> break-up fee is whether the offer made by the party seeking the fee will
> enhance or hinder the bidding process. If the break-up fee encourages bidding,
> it will be approved, if it stifles bidding, it will not be approved. A break-up fee
> may discourage an auction process and preclude further bidding when the fee
> is so large as to make competing bids too expensive. Thus, when the fee is so
> large that it chills the bidding process, it will not be protected by the business
> judgment rule.

*In re Integrated Res., Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y.), *aff'd,* 147 B.R. 650
(S.D.N.Y. 1992).

    Here, Movants initially sought a private sale to Randall, did not designate Randall
as the stalking horse bidder, and agreed to conduct an auction only after ACG/TCI
objected to the Sale Motion. **[Note 1]** An expense reimbursement is an oxymoron in
the context of a private sale in which no auction is contemplated. Here, Randall has
sought to obtain the benefit of bid protections without bearing the corresponding cost
of subjecting its bid to an auction. As set forth in the Declaration of Lisa K. Wall, an
Executive Vice President at Lockton, Randall's "offer is dependent on the Sale
proceeding as a private sale," but is simultaneously dependent on the $150,000
expense reimbursement. Wall Decl. at ¶ 12. The Court declines to permit Randall to
benefit from bid protections where Randall has attempted to circumvent the auction
process that is the very reason why bid protections are granted.

    The Court also declines to designate ACG/TCI as the stalking horse bidder and
award it bid protections. As noted, bid protections are approved only to facilitate the
bidding process. Here, ACG/TCI and Randall have both emerged as bidders despite
the fact that no auction was originally contemplated. At this point, bid protections
would do nothing to encourage other bidders. In addition, it does not appear to the
Court that bid protections are necessary to induce either ACG/TCI or Randall to
participate in the auction.

    The bids submitted by both ACG/TCI and Randall involve the forgiveness of $2.2
million of premium receivable and the provision of $5 million in GLPL insurance
coverage. The only difference between the bids is the cash amount. The provisions
regarding GLPL insurance coverage and premium forgiveness were a key aspect of
the sale transaction negotiated by the Movants. Therefore, no variation to these
provisions will be permitted at the auction. The auction will be conducted based only
on the cash portion of the bids.

    ACG/TCI's cash bid of $1.6 million will be deemed the opening bid. The initial

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Wednesday, December 16, 2020**                                    **Hearing Room    1568**

<u>10:00 AM</u>

**CONT...**        **Verity Health System of California, Inc.**                        **Chapter 11**

overbid shall be $1.7 million, with subsequent overbids to be in increments of
$100,000. The overbid increment is subject to adjustment by the Court to facilitate
bidding.

    As of the issuance of this tentative ruling, Movants' statement of position
regarding whether ACG/TCI or Randall has submitted the best bid is not yet on file.
The Court will take Movants' statement into consideration in determining whether
ACG/TCI or Randall has submitted the highest and best bid. *See In re 160 Royal
Palm, LLC*, 600 B.R. 119, 129 (S.D. Fla.), *aff'd*, 785 F. App'x 829 (11th Cir.
2019), *cert. denied sub nom. KK-PB Fin., LLC v. 160 Royal Palm, LLC*, No. 19-1456,
2020 WL 6037217 (U.S. Oct. 13, 2020) (emphasis in original) ("[W]hile a debtor has
a duty to 'maximize the return to a bankruptcy estate,' which 'often does require [the]
recommendation of the highest monetary bid, *overemphasis of this usual outcome
overlooks a fundamental truism, i.e., a "highest" bid is not always the "highest and
best" bid.* The inclusion of "best" in that conjunction is not mere surplusage.').

    At the conclusion of the auction, the Court will take testimony from the winning
bidder to determine whether that bidder is entitled to the protections of § 363(m). To
facilitate a prompt closing, the order approving the sale shall be effective immediately
upon entry, notwithstanding Bankruptcy Rules 6004(h) and 6006(d).

    The procedures proposed by Movants pertaining to the assumption and assignment
of executory contracts and unexpired leases are approved. With respect to
assumption/assignment issues, the following deadlines shall apply (capitalized terms
have the meaning set forth in the Sale Motion):

   1) Friday, December 18, 2020: Deadline for Movants to file the Cure Notice
   2) Wednesday, December 30, 2020: Deadline for counterparties to Assigned
      Contracts to file an Assumption Objection
   3) Wednesday, January 6, 2021: Deadline for Post-Effective Date
      Debtors/Liquidating Trustee to file and serve any reply to an Assumption
      Objection
   4) Wednesday, January 13, 2021, at 10:00 a.m.: Assumption Objection Hearing

**Note 1**

    Although the Sale Motion acknowledges the possibility that "the Court can
consider any higher and better bid presented at the sale hearing," Sale Motion at 9, the
relief requested is the approval of a private sale. *See* Sale Motion at 5 (requesting
approval of "an expense reimbursement of $150,000 if another bidder is approved by
the Court despite this being proposed as a private sale").

## Exhibit J

1      THE COURT:  What?

2      MR. PHELAN:  A short piece of information.  My

3  clients have instructed me to say, and I believe them.  They're

4  not getting one more dime in this case.  And I just want the

5  Court to take that into consideration.

6      THE COURT:  Okay, fine.  All right.  Well, it pains

7  me to do this in a lot of ways since I suspect conversion is

8  likely going to result from this ruling.  But I am denying the

9  motion.  I cannot possibly approve this sale as proposed.  The

10  standard under a 363 sale motion has been articulated many

11  times as requiring the bankruptcy court to look at is there a

12  sound business justification for the proposed transaction.

13  Also, is it a reflection of reasonable business judgment.

14      I do not have the evidence to find that.  I, for one

15  thing, worry greatly that the marking process was not

16  sufficiently fair and fulsome because I am of the belief, based

17  on Mr. Gonzales's comments, that bidders may have thought, oh,

18  we have a $13 million bid here to beat or even $11 million and

19  I'm not going to read any further.  I'm not interested.  And I

20  do not believe this should be treated as an $11 or $13 million

21  bid.

22      I cannot find that the purchase price is a fair

23  value.  I have no evidence, no evidence -- remember follow the

24  facts.  I have no evidence that the buyer is ready, willing,

25  and able to close or pay the whole list of assumed liabilities

Case 21-30725-jVl Doc 892 Filed 08/11/24 Entered 08/12/24 12:14:10 Page 208 of 212
Certification of Richard J. Corbi   Esq. with attachments   Page 260 of 264

208

1  that I guess were in Schedule 2.3 in full or when.  I have no

2  evidence to determine that these purchasers are good faith

3  purchasers for value.

4       They didn't testify and again, I am baffled at the

5  notion that they wouldn't fund these assumed liabilities so

6  that there could be the role of the Court and creditors to look

7  at what the filed claims are and look at are any of them

8  objectionable and make sure the pot of money only pays those

9  which should be paid.  I had evidence that some of these taxes

10 that would be assumed are left over from a prior bankruptcy and

11 were never paid.  So again, I had no evidence that the buyer is

12 ready, willing, and able to close and pay these assumed

13 liabilities in full or when.

14      I agree that this does not feel like a straight 363

15 sale of assets.  Whether Braniff prohibits its approval or not,

16 I think that we have a compromise of estate claims embodied in

17 it that was not sufficiently noticed and I cannot find under

18 AWECO standards that the compromise is fair and equitable in

19 the best interest of the estate when considering all the risks

20 and rewards of further litigation.

21      I just don't have enough solid evidence at this point

22 as far as what's being compromised, the bona fides of the

23 claims, the merits of the claims, the collectability.  So I

24 understand the creditors here and I'm supposed to consider the

25 paramount interest of the creditors.  We have creditors who

1  don't like this transaction.  They vehemently objected and

2  they're ready to roll the dice.  I mean and they're getting

3  zero, the unsecured creditors under this transaction, so

4  they're willing to roll the dice on the prospect that maybe

5  they would get more than zero if I don't approve this.

6        So I guess I would just add I haven't been convinced

7  by the evidence that this going concern purchase price exceeds

8  the value of the parts.  I just haven't been.  So painful.

9  This is I guess the fourth attempt at Chapter 11 and maybe a

10  going concern emergence isn't possible at this point.  That

11  pains me.  It bothers me greatly, but I just don't feel like

12  the evidence supports a finding that there's a sound business

13  justification for this transaction.

14        So that's the ruling of the Court.

15     (Proceedings concluded at 3:51 p.m.)

16                    * * * * *

17

18

19

20

21

22

23

24

25

210

**C E R T I F I C A T I O N**

1
2          I, DIPTI PATEL, COURTNEY MONTGOMERY, and KAREN
3  WATSON, court approved transcribers, certify that the foregoing
4  is a correct transcript from the official electronic sound
5  recording of the proceedings in the above-entitled matter, and
6  to the best of our ability.
7
8  /s/ Dipti Patel
9  DIPTI PATEL
10
11 /s/ Courtney Montgomery
12 COURTNEY MONTGOMERY
13
14 /s/ Karen Watson
15 KAREN WATSON
16
17 LIBERTY TRANSCRIPTS           DATE: August 26, 2021
18
19
20
21
22
23
24
25

**WWW.LIBERTYTRANSCRIPTS.COM**

211

1                              **INDEX**

2                                                       **PAGE**

3   COMMENCEMENT OF PROCEEDINGS                             3

4   OPENING STATEMENTS

5    By:  Mr. Brookner                                     10

6    By:  Ms. Carson                                       13

7    By:  Ms. Johnsen                                      29

8    By:  Mr. Phelan                                       33

9    By:  Ms. Kippes                                       37

10   By:  Mr. Sutherland                                   39

11

12  CLOSING STATEMENTS

13   By:  Mr. Kaufman                                     185

14   By:  Mr. Sutherland                                  192

15   By:  Mr. Phelan                                      196

16   By:  Ms. Johnsen                                     200

17   By:  Mr. Novotny                                     201

18   By:  Ms. Kippes                                      204

19   By:  Ms. Crocker                                     206

20

21  RULING BY THE COURT                                   207

22  END OF PROCEEDINGS                                    209

23  INDEX                                             211/212

24

25

212

```
 1                            INDEX

 2   WITNESSES:

 3   FOR THE DEBTOR:

 4   NATHAN CALVERT

 5        Direct Examination by Mr. Kaufman            42

 6        Cross-Examination by Ms. Johnsen             69

 7   MARK SHAPIRO

 8        Direct Examination by Mr. Kaufman            75

 9        Cross-Examination by Ms. Johnsen            114

10        Questions by the Court                      124

11        Redirect Examination by Mr. Kaufman         127

12

13   FOR THE COMMITTEE:

14   DAVID GONZALES

15        Direct Examination by Ms/ Johnsen           132

16        Cross-Examination by Mr. Kaufman            167

17        Redirect Examination by Ms. Johnsen         181

18

19   EXHIBITS:                             ID        EVD

20   FOR THE DEBTOR:

21    1 through 49                         44         45

22    50                                   44        131

23   FOR THE COMMITTEE:

24    1 through 37                        137        137

25
```