UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
PH: (212) 561-7700
FAX: (212) 567-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

Order Filed on April 11, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

BED BATH & BEYOND INC., et al.,[1]

Debtors.

Chapter 11

Case No. 23-13359 (VFP)

### STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY CORPORATION; (B) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered 2 through 19, is hereby **ORDERED**.

**DATED: April 11, 2024**

Honorable Vincent F. Papalia
**United States Bankruptcy Judge**

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4870-1557-4444.5 08728.003

(Page 2)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No.: | 23-13359 (VFP) |
| Caption of Order: | STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED RELIEF |

This stipulation and order (the "Stipulation") is entered into by and between Michael Goldberg, solely in his capacity as plan administrator (the "Plan Administrator")[2] appointed in the chapter 11 bankruptcy cases of Bed Bath & Beyond Inc. ("BB&B") and certain of its affiliates described in the Recitals below (collectively, and together with BB&B, the "Debtors"), on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, and Safety National Casualty Corporation and those certain of its property casualty insurance affiliates that issued one or more policies to the Debtor(s) (collectively, "Safety" and, together with the Plan Administrator, the "Parties" and each a "Party"), with respect to that certain (a) *Commutation Addendum to the Indemnity Agreement Between Safety National Casualty Corporation and Bed Bath & Beyond Inc.* attached as **Exhibit 1** hereto (the "Commutation Addendum") and (b) *Claims Administration Funding and Indemnity Agreement by and between Safety and the Plan Administrator* attached as **Exhibit 2** hereto (the "Claims Administration Funding and Indemnity Agreement"), the terms of which are incorporated herein by this reference.

## RECITALS

**WHEREAS**, on April 23, 2023 (the "Petition Date"), each of the above-captioned Debtors, including BB&B, filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"); and

---

[2]  The Plan Administrator has been appointed pursuant to the Debtors' confirmed Plan (as defined herein).  The Plan Administrator is responsible for and has the authority to administer certain post-confirmation responsibilities under the Plan on behalf of the Wind-Down Debtors (as defined in the Plan).

4870-1557-4444.5 08728.003

(Page 3)
Debtors:                BED BATH & BEYOND INC., *et al.*
Case No.:               23-13359 (VFP)
Caption of Order:       STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER
                        DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY
                        NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY
                        PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED
                        RELIEF

**WHEREAS**, during the chapter 11 cases, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

**WHEREAS**, these cases were administratively consolidated and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") at Case No. 23-13359 (VFP); and

**WHEREAS**, on May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). *See* Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 218]; and

**WHEREAS**, on or about May 30, 2023, the Debtors filed their schedules and statements [Doc. Nos. 499-573], which were amended on or about July 12, 2023 [Doc. No. 1327] (the "Schedules"); and

**WHEREAS**, on May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order"); and

**WHEREAS**, the Bar Date Order set July 7, 2023 as the General Claims Bar Date and October 20, 2023 as the Governmental Bar Date; and

(Page 4)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No.: | 23-13359 (VFP) |
| Caption of Order: | STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED RELIEF |

**WHEREAS**, on September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [ECF No. 2172] (the "Confirmation Order"), confirming the Second Amended Joint Chapter 111 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates [ECF No. 2160] (as amended, the "Plan"); and

**WHEREAS**, on September 29, 2023, the effective date of the Plan occurred (the "Plan Effective Date"). On the Plan Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. *See* Plan, Article IV, at § B.on September 14, 2023, the Bankruptcy Court entered an Order [ECF No. 2172] (the "Confirmation Order") confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [ECF No. 2160] (the "Plan"). The Plan and the Confirmation Order provide for and authorize the appointment of the Plan Administrator; and

**WHEREAS**, prior to the Petition Date, Safety issued certain policies providing workers' compensation insurance, general liability insurance, and automobile liability insurance to one or more of the Debtors in various states. A true and correct list of all such policies related to this settlement is attached hereto as Exhibit "B" to the Commutation Addendum (together, the "Subject Policies"); and

(Page 5)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No.: | 23-13359 (VFP) |
| Caption of Order: | STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED RELIEF |

**WHEREAS**, Safety and the Debtors were parties to the following additional general liability insurance policies that are not subject to the Commutation Addendum (collectively, the "non-Subject Policies"):

| Term | Number |
|---|---|
| 2020/2021 | GL4062767 |
| 2021/2022 | GL4062767 |
| | GL4046928 |
| 2022/2023 | GL4062767 |
| | GL4046928 |
| 2023/2024 | GL4062767 |
| | GL4046928 |

and

**WHEREAS**, Safety issued the Subject Policies in conjunction with a series of additional agreements governing the relationship between Safety and the Debtors as described therein (collectively, the "Program Agreements" and, together with the Subject Policies, the "Safety Program"); and

**WHEREAS**, the Safety Program was in effect from March 1, 2012 through March 1, 2024; and

**WHEREAS**, the Subject Policies are loss-sensitive, meaning that in addition to premium, the Debtors are obligated to pay certain deductibles self-funded retentions and loss and other charge reimbursement obligations that reflect, in part, the actual losses and expenses under the Safety Program, subject to contractual limitations.  The billing and reimbursement process

(Page 6)
Debtors:            BED BATH & BEYOND INC., *et al.*
Case No.:           23-13359 (VFP)
Caption of Order:   STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER
                    DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY
                    NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY
                    PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED
                    RELIEF

continues after the expiration date of the Subject Policies because loss activity continues to accrue;

and

**WHEREAS,** pursuant to the Safety Program, among other things, the Debtors' obligations

are secured by (a) two letters of credit issued by JP Morgan Chase Bank, N.A. for the benefit of

Safety in the aggregate amount of $44,000,000 (LOC #NUSCGS033272 and LOC

#NUSCGS033785) (the "Letters of Credit"); and (b) secured by additional assets totaling

approximately $15,000,000 held in trust pursuant to (i) that certain *Trust Agreement* dated as of

February 24, 2021 among Oak Insurance Company Inc. IC (the "Captive"), the Debtors, Safety,

and Well Fargo Bank, National Association in respect of liabilities arising under the Subject

Policies (the "Captive Trust"); and (ii) that certain *Trust Agreement* dated as of May 1, 2012

among Safety, the Insured and Wells Fargo, National Association (the "Indemnity Trust" and

together with the Letters of Credit and the Captive Trust, the "Collateral").; and

**WHEREAS,** Safety has not drawn on the Letters of Credit or applied any of the Collateral

held in trust to satisfy the Debtors' obligations under the Subject Policies; and

**WHEREAS,** in connection with the Chapter 11 Cases, Safety filed a proof of claim

asserting an unliquidated claim backed by the Collateral (POC #10483) and a second proof of

claim amending its initial proof of claim (POC #18738) (as amended, the "Safety POC"); and

**WHEREAS,** the Parties engaged in negotiations concerning the treatment of the Safety

POC and the division of the Collateral between Safety and the Plan Administrator, on behalf of

himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates (the

"Estates"); and

4870-1557-4444.5 08728.003

(Page 7)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No.: | 23-13359 (VFP) |
| Caption of Order: | STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED RELIEF |

**NOW, THEREFORE**, in consideration of the foregoing, the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties enter into this Stipulation and agree to be bound by its terms.

## SETTLEMENT

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Effective Date.**  This Stipulation shall become effective upon the date (the "Effective Date"): (i) that it is "So Ordered" by the Bankruptcy Court and such Order becomes final, without any appeal or modification thereof, and (ii) that all applicable appeal periods have expired and no appeals or other challenges are pending, subject only to the terms set forth herein.

3.    **Court Approval.** Following the execution of this Stipulation by all Parties, the Plan Administrator will promptly seek approval of this Stipulation by the Bankruptcy Court. During the period between the execution of this Stipulation by the Parties and the Effective Date, this Stipulation shall constitute a binding agreement, and the Parties shall do nothing contrary to the terms set forth herein.

4.    **Execution of the Commutation Addendum and Claims Administration Funding and Indemnity Agreement.**  The Parties acknowledge that the entry of the Order approving this Stipulation shall constitute due authorization for the Plan Administrator to enter into and to perform under the Commutation Addendum and Claims Administration Funding and Indemnity Agreement on behalf of himself, the Debtors, and the Debtors' Estates.

4870-1557-4444.5 08728.003

(Page 8)
Debtors:              BED BATH & BEYOND INC., *et al.*
Case No.:             23-13359 (VFP)
Caption of Order:     STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER
                      DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY
                      NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY
                      PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED
                      RELIEF

5.    **Partial Satisfaction of Safety POC.**  Safety hereby confirms that, upon its receipt of the Consideration as defined in the Commutation Addendum, Safety shall amend the Safety POC to reserve its rights or assert pre-petition claims, as the case may be, only in relation to the non-Subject Policies.  Safety shall remove any claim as to the Subject Policies in the amended Safety POC.

6.    **Compromise of Claims.**  The Parties acknowledge that this Stipulation is a compromise of disputed claims related to the Collateral, the Safety POC, and the Safety Program, and that neither Party admits, and each expressly denies, any liability on its part.

7.    **Authority to Dissolve the Captive Trust and Indemnity Trust.**  Upon the Effective Date, the Plan Administrator is authorized to cause steps to be taken to wind up the Captive Trust and Indemnity Trust under applicable non-bankruptcy law subject to and in accordance with the Agreements.

8.    **Costs and Expenses.** The Parties shall be responsible for and shall bear their own costs, expenses and attorneys' fees incurred in connection with this Stipulation, Commutation Addendum and Claims Administration Funding and Indemnity Agreement and the negotiations related to and the preparation and performance of this Stipulation, Commutation Addendum and Claims Administration Funding and Indemnity Agreement, and they shall not seek reimbursement of any such costs, expenses and attorneys' fees from any other Party.

9.    **Authority.**  Each person signing this Stipulation represents and warrants that they have been duly authorized and have the requisite authority to execute and deliver this Stipulation on behalf of such Party, to bind their respective client or clients to the terms and conditions of this

-8-

4870-1557-4444.5 08728.003

(Page 9)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No.: | 23-13359 (VFP) |
| Caption of Order: | STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED RELIEF |

Stipulation and to act with respect to the rights and claims that are being altered or otherwise affected by this Stipulation.

10.    **Non-Reliance.**    The Parties represent and acknowledge that, in executing this Stipulation, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Stipulation or otherwise, other than as specifically stated in this Stipulation.

11.    **Advice of Counsel.**    The Parties further declare that, in making this Stipulation, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel (for whose expense each shall be solely responsible) and that they have had a reasonable period of time to consider this Stipulation.

12.    **Construction.**    Each Party has reviewed this Stipulation and that each fully understands and voluntarily accepts all the provisions contained in this Stipulation.    This Stipulation was the product of negotiations between the Parties and any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Stipulation.

13.    **Entire Agreement.**    This Stipulation and the Exhibits hereto sets forth the entire agreement between the Parties concerning the subject matter hereof and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

4870-1557-4444.5 08728.003

(Page 10)

Debtors:            BED BATH & BEYOND INC., *et al.*
Case No.:           23-13359 (VFP)
Caption of Order:   STIPULATION AND CONSENT ORDER (A) SETTLING DISPUTE OVER
                    DISPOSITION OF COLLATERAL BACKING OBLIGATIONS TO SAFETY
                    NATIONAL CASUALTY COMPANY; (B) RESOLVING, IN PART, SAFETY
                    PROOFS OF CLAIM NOS. 10483 & 18738; AND (C) GRANTING RELATED
                    RELIEF

14.    **Reservation of Rights as to the non-Subject Policies.**  For the avoidance of doubt, nothing herein shall be deemed to effect or to modify the rights, claims (existing and future), and obligations of Safety and the Plan Administrator in relation to the non-Subject Policies, and nothing herein shall effect or modify the same.

15.    **Modification.**  No modification of this Stipulation shall be binding or enforceable unless in writing and signed by the Parties.

16.    **Successors and Assigns.**  This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

17.    **Governing Law and Jurisdiction.**  This Stipulation shall be construed and enforced in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Missouri without regard to the conflicts of laws or principles thereof.  The Parties acknowledge that the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between the Parties with respect to this Stipulation.

18.    **Counterparts.**  This Stipulation may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

19.    **Survival.**  Subject to the occurrence of the Effective Date, the representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

*-Signature Page to Follow-*

4870-1557-4444.5 08728.003

DATED:  New York, New York
        April 1, 2024

MICHAEL GOLDBERG, Plan Administrator
By his Attorneys,

*/s/ Bradford J. Sandler*

ROBERT J. FEINSTEIN (admitted *pro hac vice*)
BRADFORD J. SANDLER
PAUL J. LABOV
COLIN R. ROBINSON
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, New York 10117
Telephone:    (212) 561-7700
Email:        rfeinstein@pszjlaw.com
              bsandler@pszjlaw.com
              plabov@pszjlaw.com
              crobinson@pszjlaw.com

St. Louis, MO

DATED:  [city, state]
        April 2 , 2024

SAFETY NATIONAL CASUALTY COMPANY,
By its Attorneys,

DocuSigned by:

Nick Kriegel

9922BE0FD4D346E...
Nick Kriegel,
Senior Vice President – Operations & General
Counsel of Safety National Casualty Corporation

-11-

4870-1557-4444.5 08728.003

## Exhibit 1

**Commutation Addendum**

*Execution Version*

# COMMUTATION ADDENDUM

**To the**
**INDEMNITYAGREEMENT**
**Between**
**SAFETY NATIONAL CASUALTY CORPORATION (hereafter "Safety")**
**and**
**BED BATH & BEYOND INC.**

This Commutation Addendum, effective April 1, 2024, (the "Effective Date", subject to the provisions of Paragraph 7 below) shall be attached to and made a part of the above-captioned Indemnity Agreement, and any amendments and/or addenda thereto including but not limited to Policy and Funding Schedule Exhibits, which Indemnity Agreement became effective April 1, 2024 (hereafter collectively "Indemnity Agreement"), and is expressly incorporated herein by reference.

WHEREAS this Commutation Addendum applies to all Workers Compensation and Employers Liability, Commercial Automobile and certain Commercial General Liability insurance policies issued by Safety to the Insured with effective dates beginning March 1, 2012 which policies are identified as Subject Policies on each separately issued Policy and Funding Schedule Exhibit to the Indemnity Agreement which Exhibits are expressly incorporated herein by reference (hereafter "Subject Policies")[1]; and

WHEREAS, Safety and its affiliates and subsidiaries including, without limitation, their successors, and Michael Goldberg as plan administrator for Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) under the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates which was confirmed by the U.S. Bankruptcy Court for the District of New Jersey on September 14, 2023, Case No. 23-13359-VFP (Bankr. D.N.J. Sept. 14, 2023) [ECF No. 2172] (collectively, the "Insured" and, with Safety, each a "Party" and collectively the "Parties") previously executed the Indemnity Agreement effective March 1, 2012 and a Trust Agreement as of May 1, 2012 among Safety, the Insured and Wells Fargo, National Association (the "Indemnity Trust"), which contemplated the establishment and maintenance of a deductible and/or retrospective premium program in support of certain large deductible provisions of the Subject Policies which are collectively referenced in the Indemnity Agreement are referred to herein as the "Insured's Obligations"; and

WHEREAS, concurrently with the execution of this Commutation Addendum, the Parties executed a Claims Administration Funding and Indemnity Agreement which is effective and incorporated herein and part of the transactions contemplated by this Commutation Addendum in all respects; and

WHEREAS, Safety and the Insured were parties to that certain Trust Agreement dated as of February 24, 2021 among Oak Insurance Company Inc. IC (the "Captive"), Insured, Safety, and Well Fargo Bank, National Association (the "Captive Trust"), in respect of self-insured retention and/or deductible liabilities arising under certain of the Subject Policies and incidents that occurred from March 1, 2016 to prior to March 1, 2021, and the Captive Trust will be terminated, Oak Insurance Company Inc. IC will be dissolved, and such liabilities will remain obligations under the Subject Policies; and

---

[1] A true and correct list of the Subject Policies is attached hereto as **Exhibit 1**. In the event that the Parties identify any additional insurance polices that should be included as Subject Policies, **Exhibit 1** will be automatically deemed amended to include such additional insurance policies.

ACTIVE\1608341387.3

*Execution Version*

WHEREAS, the Indemnity Trust will be terminated; and

WHEREAS, the Parties now desire to commute and release the Insured's continuing liability under the Indemnity Agreement and the Subject Policies, inclusive of the Insured's Obligations for deductibles under any Subject Policy, but not self-insured retentions under Subject Policies providing general liability coverage, as of the Reconciliation Date; and

WHEREAS, both Safety and Insured have negotiated a commutation value (as set forth in the Quote attached as Exhibit A hereto, which Quote is expressly incorporated herein by reference) that is satisfactory to both Parties to resolve the Parties' respective rights, duties and obligations under the Indemnity Agreement and Subject Policies, including, without limitation, all claims arising under the Subject Policies, as set forth herein (the "Commutation").

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, the Parties hereto, intending to be legally bound, agree as follows:

1.  The recitals set forth above are incorporated herein as part of the agreement between the Parties.

2.  In support of the Commutation of the Insured's obligations under the Indemnity Agreement and the Subject Policies, inclusive of the Insured's Obligations for deductibles, the Insured shall pay, and Safety shall accept, a cash payment of thirty eight million nine hundred and two thousand five hundred dollars and 00/100 (**$38,902,500.00**) (the "Consideration").



Within thirty (30) days following receipt of the Consideration, Safety shall remit to Insured the sum of all loss and allocated loss adjustment payments that the Insured paid, if any, on all Subject Policies that are the subject of this Commutation Addendum (the "Reconciliation Payment") between September 30, 2023 and the date that Safety begins funding and paying losses (no later than 30 days post-closing of the transactions contemplated under this Commutation Addendum) under the Subject Policies (such date, the "Reconciliation Date"); provided that the parties, upon receipt of supporting documentation, mutually agree upon the value of such Reconciliation Payment.

Commutation Addendum

ACTIVE\1608341387.3

*Execution Version*



4. Upon Safety's receipt of the Consideration, all of the Insured's Obligations contained in, arising from or resulting under the Indemnity Agreement and Subject Policies shall, effective as of the Effective Date, be deemed to have terminated and the Insured shall have no further obligation to Safety thereunder. Safety shall be entitled to all recoveries under the Subject Policies. ███████████ ████████████████████████████████ Notwithstanding the foregoing, Safety agrees to cooperate and execute any and all documents reasonably necessary for Insured to wind down the Captive and to terminate and obtain release of funds held pursuant to the Indemnity Trust and the Captive Trust.

5. Upon and following the Effective Date and subject to the Reservation of Rights (as defined below), (i) Safety shall have the right to select defense counsel, and shall continue to perform and satisfy the obligation to handle, administer, adjust, settle and/or pay any claim covered under the Subject Policies (each, an "Insured Claim") and the defense costs and other costs associated with the administration and handling of any such Insured Claim (collectively, "Claim Administration") in Safety's absolute and sole discretion and at Safety's sole cost and expense, and (ii), and the Insured waives any right to perform Claim Administration or to participate therein. Except as specifically set forth herein, nothing alters, amends or otherwise modifies the terms and conditions of (and any coverage provided by) the Subject Policies and the Indemnity Agreement.

6. Nothing in this Commutation Addendum is intended to, nor shall anything in this Commutation Addendum be deemed to: (i) expand, contract or otherwise alter the coverage provided by Safety, the rights and obligations of Safety thereunder, or the coverage provided thereunder including, but not limited to, provisions in Safety's insurance program stating that Safety shall not have any duty to defend or pay allocated loss adjustment expenses; (ii) create or permit a direct right of action or otherwise permit the holder of an insured claim to recover self-insured retention amounts from Safety; (iii) precludes or limits, in any way, the rights of Safety to contest and/or litigate with any holder of an insured claim as to the existence, primacy and/or scope of available coverage under any alleged applicable policy; or (iv) is a determination as to coverage under the Safety insurance program. This paragraph shall be referred to as the "Reservation of Rights."

7. (i) Following (i) execution of this Commutation Addendum; (ii) approval of this Commutation Addendum and all other agreements, of any kind, that may be attendant to this Commutation Addendum, including the Indemnity Agreement between the parties, by the U.S. Bankruptcy Court for the District of New Jersey or any other court having jurisdiction over this transaction and (iii) receipt of the Consideration and the funding of the Claims Payment Fund described in the Indemnity Agreement, attached hereto and incorporated by reference as **Exhibit 2** (sub-parts (i), (ii), (iii), the "Conditions Precedent"), and in consideration of the mutual covenants and promises contained in this Commutation Addendum and except with respect to the right to enforce the provisions of this Commutation Addendum, Safety, on behalf of itself and all parties claiming by, through or under it, including its agents, employees, representatives, officers, attorneys, advisors, shareholders, directors, principals, partners, managers, members, successors, assigns, parents, subsidiaries, affiliates, equity holders, trustees, beneficiaries, and predecessors in interest of each of the foregoing (collectively, the "Safety National Release Parties") hereby forever and irrevocably waive, release, discharge, and acquit the Insured and Plan Administrator, and each of their professionals, agents, employees, affiliates and representatives, of and from any and all claims, counterclaims, rights, demands, obligations,

causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any statute, federal, state, or local regulation, ordinance or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that the Safety National Release Parties may have against the Insured from the beginning of time and following the Effective Date arising out of or related to the Subject Policies and the Indemnity Agreement; *provided, however,* that the releases set forth in this paragraph shall not apply to the obligations expressly contained in this Commutation Addendum, including, without limitation, Safety's rights to all recoveries on Subject Policies.

(ii) Following satisfaction of the Conditions Precedent, and in consideration of the mutual covenants and promises contained in this Commutation Addendum and except with respect to the right to enforce the provisions of this Commutation Addendum, including, without limitation, the right to receive all amounts, if any, owed to Insured pursuant to the Reconciliation, and the Insured, on behalf of themselves and all parties claiming by, through or under them, including their agents, employees, representatives, officers, attorneys, advisors, shareholders, directors, principals, partners, managers, members, successors, assigns, parents, subsidiaries, affiliates, equity holders, trustees, beneficiaries, and predecessors in interest of each of the foregoing (collectively, the "Insured Release Parties") hereby forever and irrevocably waive, release, discharge, and acquit the Safety National Release Parties of and from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any statute, federal, state, or local regulation, ordinance or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that the Insured Release Parties may have against any or all of the Safety National Release Parties from the beginning of time and following the Effective Date arising out of or related to the Subject Policies, the Indemnity Agreement, and all related documents; *provided, however,* that the releases set forth in this paragraph shall not apply to the obligations expressly contained in this Commutation Addendum, including, without limitation, Insured's rights to a Reconciliation Payment, if any.

8. Each Party represents and warrants that it has full power and authority to enter into this Commutation Addendum and the transactions contemplated hereby and to its obligations hereunder. This Commutation Addendum has been duly executed and delivered by each Party and this addendum constitutes, assuming the due authorization, execution and delivery by the other Party hereto, a legal, valid and binding obligation, enforceable against each Party in accordance with the terms hereof.

9. Unless the invalidity or unenforceability of any provision or portion thereof frustrates the intent of the Parties or the purpose of this Commutation Addendum, such invalidity or unenforceability shall not affect the validity or enforceability of the other provisions or portions thereof. In the event that such provision shall be declared unenforceable by a court of competent jurisdiction, such provision or portion thereof, to the extent declared unenforceable, shall be stricken. However, in the event any such provision or portion thereof shall be declared unenforceable due to its scope, breadth or duration, then it shall be modified to the scope, breadth or duration permitted by law and shall continue to be fully enforceable as so modified.

10. This Commutation Addendum constitutes the entire agreement between the Parties with respect to the Commutation transactions contemplated hereby, and supersedes all prior agreements and understandings, written and oral, among the Parties with respect to the subject matters hereof. Any

*Execution Version*

amendment or modification hereto shall be null and void unless made in writing by amendment to this Commutation Addendum and executed by both Parties.

11. This Commutation Addendum shall be governed by, interpreted under and construed in accordance with the law of the State of Missouri and, to the extent applicable the U.S. bankruptcy law, without regard to conflicts or choice of law principles.

12. This Commutation Addendum may be executed electronically or in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Commutation Addendum shall become effective when one or more counterparts have been signed by each Party hereto and delivered to the other Party hereto.

13. Nothing in this Commutation Addendum is intended or shall be construed to give any person, other than the Parties hereto, any legal or equitable right, remedy or claim under or in respect of this Commutation Addendum or any provision contained herein.

14. This Commutation Addendum shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns and legal representatives. This Commutation Addendum is not assignable by either Party except by operation of law or by mutual written consent of the Parties, and any attempt by either Party to assign this Commutation Addendum without such valid operation of law or written consent of the other Party shall be void.

15. The terms of this Commutation Addendum may be waived only by a written instrument signed by the Party waiving compliance. No delay on the part of any Party in exercising any right, power of privilege hereunder shall operate as a waiver thereof; nor shall any waiver on the part of any Party of any right, power, privilege, nor any single or partial exercise of any such right, power or privilege, preclude any further exercise thereof or the exercise of any other such right, power or privilege.

16. This Commutation Addendum is the product of informed negotiations between the Parties hereto and their representatives, and may involve compromises of previously asserted positions. This Commutation Addendum has been jointly prepared by the Parties hereto, is being entered into voluntarily, and the terms hereof will not be construed in favor of or against any Party to this Commutation Addendum by reason of its participation in such preparation.

17. In consideration of the mutual covenants and agreements contained herein, each Party hereto does hereby agree that this Commutation Addendum, and each and every provision hereof, is and shall be enforceable by and between them according to its terms, and each Party does hereby agree that it shall not contest the validity or enforceability thereof.

SIGNATURES FOLLOW ON NEXT PAGE

*Execution Version*

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties have executed this Commutation Addendum by their duly authorized representatives on the date(s) so indicated.

**SAFETY NATIONAL CASUALTY CORPORATION**

**MICHAEL GOLDBERG**, solely in his capacity as the Plan Administrator to 20230930-dk-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.)

BY: _____

BY: _____

Name: Nicholas A. Kriegel

Name: Michael Goldberg

Title: Senior Vice President – Operations

Title: Plan Administrator

Date: April 1, 2024

Date: April 1, 2024

**<u>Exhibit 1</u>**

**Subject Policies**

| Policy Period | WC Limit | WC Deductible | General Liability Retention | General Liability Aggregate Limit | Auto Liability Retention | Carrier | Policy Number |
|---|---|---|---|---|---|---|---|
| 3/1/2012-3/1/2013 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 8/1/2012-3/1/2013 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2013-3/1/2014 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2013-3/1/2014 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2014-3/1/2015 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802, LDS4050525 / PS4045803, PS4050526 / CAS4045800 / GL4045801 |
| 3/1/2014-3/1/2015 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2015-3/1/2016 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802, LDS4050525 / PS4045803, PS4050526 / CAS4045800 / GL4045801 |
| 3/1/2015-3/1/2016 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2016-3/1/2017 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2016-3/1/2017 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2017-3/1/2018 | Statutory | 1,000,000 | 1,000,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2017-3/1/2018 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2018-3/1/2019 | Statutory | 1,000,000 | 1,000,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2018-3/1/2019 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2019-3/1/2020 | Statutory | 1,000,000 | 1,000,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2019-3/1/2020 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2020-3/1/2021 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS 4045803 / CAS4045800 |
| 3/1/2020-3/1/2021 | n/a | n/a | 250,000 | 6,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2021-3/1/2022 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CA6675897 |

*Execution Version*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/1/2022-3/1/2023 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CA6675897 |
| 3/1/2023-3/1/2024 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CA6675897 |

ACTIVE\160834138̄7.3

**Exhibit 2**

Indemnity Agreement

*Execution Version*

# CLAIMS ADMINISTRATION FUNDING AND INDEMNITY AGREEMENT

This Claims Administration Funding and Indemnity Agreement (hereafter "Agreement") is entered into on April 1, 2024 (hereafter "Effective Date"), by and between **Safety National Casualty Corporation** which applicable Company(ies) shall be indicated on the signatory page hereof (hereafter "Safety") and BB&B (as defined below and hereafter "Indemnitor").

## WITNESSETH

WHEREAS, Safety has agreed to enter in a deductible commutation of all insurance policies, each and all of which are listed in and incorporated by reference into this Agreement as "Exhibit A", issued by Safety to Michael Goldberg as plan administrator for Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BB&B"). These insurance policies include deductible workers' compensation and employers' liability insurance policies providing coverage in the State of New Jersey, among other jurisdictions, (the "Subject Policies"); and,

WHEREAS, as part of the deductible commutation affecting the Subject Policies, Safety has identified certain listed claims in the attached Exhibit B ("the Claims") that are disputed and will remain in litigation following the effective date of the deductible commutation; and,

WHEREAS, in that the Claims are disputed, and in the interest of supporting the deductible commutation, Indemnitor has agreed to provide finite indemnification to Safety for Loss (defined more fully herein below) arising out of the Claims; and,

WHEREAS, Safety and the Indemnitor further desire to set forth their mutual rights, duties and obligations to one another via agreement concerning the indemnity provided by Indemnitor and to set forth a mechanism for the funding of Loss payments arising from the Claims;

NOW, THEREFORE, for good and other valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1. **DEFINITIONS**

   1.1 The term "Allocated Loss Adjustment Expenses" ("ALAE") as used in this Agreement shall mean all costs, expenditures, and supplementary payments where applicable as are incurred by or on behalf of Safety which can be allocated to a specific Claim in connection with the investigation, adjustment, defense and/or settlement of such Claim, including, but not limited to, investigation costs; negotiation costs; declaratory judgment costs; expert medical and other testimony; autopsy; medical cost containment expenses, including bill auditing expenses for medical or vocational services rendered, hospital and other treatment utilization reviews including pre-certification/pre-admission; preferred provider network/organization expenses; costs of birth and death certificates and medical treatment records; medical examination costs and expenses, including diagnostic examinations and services, laboratory, x-ray and reasonable and necessary transportation expenses related thereto; reasonable attorney fees; court costs and alternative dispute resolution costs; arbitration fees; costs for copies of any public records; costs of deposition and court-reporter or recorded statements; costs of surveillance; reasonable costs and expenses of subrogation and any similar fee; appeal bond costs and appeal filing fees; prejudgment interest and interest on any judgment or award, only when such interest is not added to such judgment. For the avoidance of doubt, ALAE shall include unallocated loss adjustment expense ("ULAE"), which includes all external administrative claims handling expenses. However, ALAE or ULAE shall not include any allocated expenses of any kind unless they are direct third party expenses.

   1.2 The term "Loss(es)" means the obligation of Safety arising from the Claims, including ALAE as defined herein.

   1.3 The term "Third Party Administrator" ("TPA") shall mean the claims administrator retained to handle the Claims.

2. **INDEMNIFICATION**



2.2     It is the intent of this Agreement that the Indemnitor shall, in every case to which this Agreement applies, abide by and accept the Claims Loss determinations and settlements of Safety. However, the Indemnitor is not responsible for Safety's actions that are deemed wanton or reckless in the payment and handling of Claims covered by this Indemnity Agreement.



4.    **SECURITY INTEREST**



5.    **CLAIMS ADMINISTRATION**

5.1     Safety shall have the ultimate right and authority to investigate, adjust, defend and/or settle all Claims. Safety shall determine what constitutes Loss arising from the Claims and as to Safety's liability thereunder and as to the amount or amounts which it shall be proper for Safety to pay thereunder. Indemnitor shall be bound by the judgment of Safety as to the liability and obligation of Safety under the Subject Policy(ies).

5.3     All records, files, correspondence, and other materials pertaining to the Claims administered by the TPA shall be the sole property of Safety.

**6.  NOTICE**

Any and all notices or other communications required or permitted by this Agreement or by law to be served on or given to a party hereto by the other party shall be in writing and deemed duly given or served on the date of service, when delivered personally, or the third day after mailing if mailed by first-class, certified or registered mail, postage prepaid, and properly addressed as follows:

a)  **If to Safety:**  c/o of Safety National Casualty Corporation, 1832 Schuetz Road, St. Louis, Missouri 63146. Attention: General Counsel.

b)  **If to the Indemnitor:** Michael I. Goldberg, BB&B Plan Administrator, Akerman LLP, 201 East Las Olas Boulevard, Suite 1800, Fort Lauderdale, FL 33301 and Stephen Schwab, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, IL 60606.

**7.  MEDIATION AND ARBITRATION**

7.1     Prior to submitting any dispute arising out of or related to this Agreement to arbitration pursuant to Article 7, the parties shall attend mediation with a representative with complete settlement authority in attendance.  If no resolution is reached at such mediation, the dispute shall be submitted to arbitration pursuant to the following provisions of this Article 7.

7.2     In the event of any dispute between Safety and the Indemnitor with reference to the interpretation, application, formation or validity of this Agreement, or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon written request of either party, will be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen.  If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators.  If the two arbitrators fail to agree on the selection of a third arbitrator within thirty (30) days of their appointment, each of them shall name three individuals as prospective third arbitrators, of whom the other shall decline two, and the third arbitrator shall be chosen by drawing lots. Unless otherwise agreed by the parties hereto, all arbitrators shall be active or retired officers of insurance or reinsurance companies, insurance brokerage firms or agencies, or state insurance regulatory officials, attorneys or judges with at least ten (10) years of insurance law experience, the arbitrators shall be disinterested and not have a personal or financial interest in the result of the arbitration.

7.3     All arbitrators shall interpret this Agreement as an honorable engagement and not merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law, and they shall make their award with a view of effecting the general purpose of this agreement in a reasonable manner. Each party shall submit its case to the arbitrators within thirty (30) days of the appointment of the third arbitrator.  The arbitrators shall render their decision, in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal shall be allowed.  The arbitrators shall make their decision within sixty (60) days following the termination of the hearing, unless the parties consent to an extension.

7.4     The decision in writing by a majority of the arbitrators, when filed with the parties, shall be final and binding on all parties to the proceeding. Such decision shall be a condition precedent to any right of legal action arising out of the arbitration proceeding which either party may have against the other.

7.5     Judgment upon the award rendered may be entered in any court possessing competent jurisdiction. The arbitrators shall have the power to award interest but shall not have the power to award treble damages, exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise. Each party will bear the expenses of its own and will jointly and equally bear with the other party the expense of the third arbitrator of the arbitration.  Said arbitration will take place in St. Louis, Missouri, unless otherwise agreed by the parties hereto.

7.6     This Arbitration Section shall survive termination of this Agreement.

**8.  TERM AND APPLICATION OF AGREEMENT**

This Agreement shall commence on the Effective Date hereof and shall continue in full force and effect until the sooner of (i) Safety agrees that all of the Claims are closed, (ii) a commuted close out calculation of the remaining amount owed for Indemnitor's Obligations and IBNR for the Claims has been completed and Safety has been paid accordingly, pursuant to the mutual consent of the parties or (iii) the Claims Payment Fund has been exhausted by payments for Loss arising from the Claims.

9.  **PROFESSIONAL RELIANCE**

The Indemnitor understands and acknowledges that it shall obtain its own accountant, advisor, attorney or other appropriate professional for any accounting, tax, legal or other necessary expert advice. The Indemnitor further acknowledges it understands that Safety does not provide, and thus nothing contained herein shall be construed to constitute, any legal, tax, or financial advice.

10.  **ASSIGNMENT**

This Agreement may not be assigned without the written consent of the other party. Such consent must be given by the President and Secretary of Safety.

11.  **ENFORCEABILITY**

The invalidity or unenforceability of any particular term or condition of this Agreement will not affect the other terms and provisions hereof, and this Agreement will be construed in all respects as if such invalid or unenforceable term or provision has been omitted.

18.  **WAIVER**

The waiver by either party of any breach of any term, covenant or condition of this Agreement will not be deemed a waiver of any other term, covenant or condition of this Agreement or any subsequent breach of the same or any other term, covenant or condition of this Agreement.

19.  **GOVERNING LAW**

This Agreement shall be governed by, interpreted under and construed in accordance with the law of the State of Missouri and, to the extent applicable the U.S. bankruptcy law, without regard to conflicts or choice of law principles.

20.  **AGREEMENT BINDING**

This Agreement shall be binding upon, and shall inure to the benefit of, Safety and the Indemnitor and their respective heirs, legal representatives, successors and assigns, including, but not limited to, any receiver, trustee or other fiduciary appointed in any federal or state insolvency proceeding or federal bankruptcy case.

21.  **ENTIRE AGREEMENT**

This Agreement supersedes all previous agreements as to the security for the Subject Policy(ies), whether oral or written, between Safety and the Indemnitor, and this Agreement constitutes the entire and sole contract between the parties as to the same subject matter. No amendment, rider or endorsement to this Agreement will be effective unless it is signed by a duly authorized officer of Safety and an authorized representative of the Indemnitor.

SIGNATURES TO FOLLOW ON NEXT PAGE

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized corporate officers or other duly authorized representatives on the date(s) set forth.

☐ SAFETY NATIONAL CASUALTY CORPORATION

By: _____          Date Signed: _____

Name: ___Nicholas A. Kriegel_____

Title: ___Senior Vice President – Operations___

BED, BATH & BEYOND

By: _____          Date Signed: _____

Name: ____Michael Goldberg_____

Title: ____Plan Administrator_____

**EXHIBIT A**

| Policy Period | WC Limit | WC Deductible | General Liability Retention | General Liability Aggregate Limit | Auto Liability Retention | Carrier | Policy Number |
|---|---|---|---|---|---|---|---|
| 3/1/2012-3/1/2013 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 8/1/2012-3/1/2013 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2013-3/1/2014 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2013-3/1/2014 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2014-3/1/2015 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802, LDS4050525 / PS4045803, PS4050526 / CAS4045800 / GL4045801 |
| 3/1/2014-3/1/2015 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2015-3/1/2016 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802, LDS4050525 / PS4045803, PS4050526 / CAS4045800 / GL4045801 |
| 3/1/2015-3/1/2016 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2016-3/1/2017 | Statutory | 1,000,000 | 500,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2016-3/1/2017 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2017-3/1/2018 | Statutory | 1,000,000 | 1,000,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2017-3/1/2018 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2018-3/1/2019 | Statutory | 1,000,000 | 1,000,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2018-3/1/2019 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2019-3/1/2020 | Statutory | 1,000,000 | 1,000,000 | 4,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CAS4045800 / GL4045801 |
| 3/1/2019-3/1/2020 | n/a | n/a | 250,000 | 4,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2020-3/1/2021 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS 4045803 / CAS4045800 |

Indemnity Agreement
ACTIVE\160834136.2

| 3/1/2020-3/1/2021 | n/a | n/a | 250,000 | 6,000,000*/50,000,000 | n/a | Safety National | GL 4046928 |
| 3/1/2021-3/1/2022 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CA6675897 |
| 3/1/2022-3/1/2023 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CA6675897 |
| 3/1/2023-3/1/2024 | Statutory | 1,000,000 | NA | 6,000,000*/50,000,000 | 250,000 | Safety National | LDS4045802 / PS4045803 / CA6675897 |

Indemnity Agreement

ACTIVE\160834364.2

**EXHIBIT B**

**The Claims**

[Filed under seal]