UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

```
IN RE:                      .      Case No. 23-13359-VFP
                            .
                            .
BED BATH & BEYOND, INC., .          M.L.K. Federal Building
et al.,                     .      50 Walnut Street, 3rd Floor
                            .      Newark, NJ 07102
            Debtors.        .
                            .      April 11, 2024
. . . . . . . . . . . . . .        11:03 a.m.
```

TRANSCRIPT OF MOTION ON SHORTENED TIME TO APPROVE A PARTIAL
SETTLEMENT OF CLAIMS
BEFORE HONORABLE VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

```
For the Plan             Pachulski Stang Ziehl & Jones, LLP
Administrator:           By:  MICHAEL GOLDBERG, ESQ.
                               PAUL JOHN LABOV, ESQ.
                         780 Third Avenue, 34th Floor
                         New York, NY  10017

                         Pachulski Stang Ziehl & Jones, LLP
                         By:  BRADFORD J. SANDLER, ESQ.
                         919 N. Market Street, 17th Floor
                         Wilmington, DE  19801
```

TELEPHONIC APPEARANCES:

```
For Taussig Risk         Law Offices of Richard J. Corbi, PLLC
Capital Advisors, Inc.:  By:  RICHARD J. CORBI, ESQ.
                         1501 Broadway, 12th Floor
                         New York, NY  10036
```

```
Audio Operator:          Mariela Primo
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

```
For the Plan            Pachulski Stang Ziehl & Jones, llP
Administrator:          By:  VICTORIA A. NEWMARK, ESQ.
                        10100 Santa Monica Blvd, 13th Floor
                        Los Angeles, CA  90067
```

- - -

1          THE COURT:  Okay.  Good morning.  This is the United

2    States Bankruptcy Court for the District of New Jersey.  We're

3    here on various matters today but on right now is a motion on

4    shortened time in the case of Bed Bath & Beyond, 23-13359, to

5    approve a settlement or at least a partial settlement of claims

6    filed by Safety National Casualty Corporation.

7          May I have appearances, please?

8          MR. GOLDBERG:  Good morning, Your Honor.  On behalf

9    of the plan administrator, Michael Goldberg, Brad Sandler and

10   my partner, Paul Labov, of Pachulski, Stang, Ziehl and Jones.

11         THE COURT:  Okay, good morning.

12         And on the phone?

13         MR. CORBI:  Good morning, Your Honor.  Richard Corbi,

14   Law Offices of Richard J. Corbi, PLLC, counsel for Taussig Risk

15   Advisors.  And my pro hac application was filed this morning.

16   My local counsel will not be appearing because we want to keep

17   the cost down for the client.

18         THE COURT:  And who's your client?  I'm sorry.

19         MR. CORBI:  Taussig Risk Capital Advisors.

20         THE COURT:  Oh, okay.

21         All right, any other appearances?

22                    (No audible response)

23         THE COURT:  Having heard no response, I just want to

24   say that I entered an order shortening time about eight days

25   ago setting the hearing on this matter for today, and there was

1  service required as set forth in the order and the order also

2  provided that objections could be filed one day prior to the

3  hearing or presented orally at the hearing.  So, why don't you

4  go ahead and start?  And I know that one of the motions is to

5  seal so if we come across an issue that relates to that, then

6  we'll address that.

7         MR. SANDLER:  Sounds good, Your Honor.  And I was

8  remiss.  I --

9                    (Telephonic disturbance)

10        THE COURT:  Hello?  Who was that?

11                    (No audible response)

12        MR. SANDLER:  I was remiss, Your Honor.  My

13 colleague, Victoria Newmark, is on the line, also Pachulski,

14 Stang, Ziehl & Jones.  So, I wanted to make sure that the

15 record is clear about that.

16        First of all, Your Honor, yes, thank you very much

17 for hearing us on shortened notice both to you and to your

18 staff.  We know that we filed this motion on shortened notice

19 and the reason for that, as we stated, is because we have a

20 letter of credit that Safety National will draw down on in a

21 couple of days at this point, April 15th.

22        So, we have a settlement where their collateral is

23 going to be -- a large amount of their collateral is going to

24 be released to the estate and we wanted to make sure that we

25 got an order which really is a comfort order, but we wanted to

1  make sure we got an order entered so that these funds would be

2  available to the estate.  So, we appreciate that.

3          In terms of the motion to seal, Your Honor, I think

4  what I'd like to do is really take that first just because

5  there is sensitive information, there was commercial

6  information in these documents that could be sensitive to

7  competitors and others, we thought it was important to file the

8  motion under seal.  There has been no objection to that motion

9  so we would ask that you enter the order granting the motion to

10  file under seal.

11          THE COURT:  All right, does anyone wish to be heard

12  on that?

13                  (No audible response)

14          THE COURT:  All right, so there is this motion to

15  seal and as Mr. Sandler stated, there's Section 107 of the

16  Bankruptcy Code that requires the Court to seal information

17  that is in the nature of confidential research, development or

18  commercial information and that is a shall, not a may and

19  that's in Video Software Dealers Association v. Orion Pictures,

20  21 F.3d 24, 27 (2d Cir. 1994).

21          And the Courts in this circuit have noted that 107(b)

22  is meant to shield entities from disclosure of commercial

23  information that is disclosed would result in unfair advantage

24  to competitors and cause commercial injury and that is a

25  flexible standard and it varies according to the nature of the

1   transaction or settlement and the specific extent and interest

2   or involvement, an impact on the settlement on the bankruptcy

3   case.

4        And I will say that I myself reviewed the redacted

5   version versus the unredacted version and I saw two things.

6   One is that the redactions are limited.  They're not extensive

7   in terms of I would say maybe, you know, in percentages maybe

8   less than ten percent of the document is redacted.  But more

9   substantively, the information that I saw in there, I

10  understand where -- although I don't understand all the

11  details, I understand where that would be considered

12  confidential and commercial business information that should

13  not be disclosed.  And there were no objections filed and

14  service was made, so I'll grant the sealing motion.

15       On the order, Mr. Sandler, and this came up in this

16  case before with the lease that ultimately went to Hobby Lobby

17  and the sealing, there was a lot of sealing there, and the

18  order just needs to say -- and I know that we have a form order

19  but it just needs to say that the redacted version, you know,

20  will be public and that the unredacted version won't be.

21       MR. SANDLER:  So, we'll revise the form of order.

22       THE COURT:  Yes, just use that form.

23       MR. SANDLER:  Okay.

24       THE COURT:  And that'll take care of it.  So that

25  part of the motion is granted.

7

1            So, do you want to give a little bit of background?

2  Because it's a significant settlement it looks like to me.

3            MR. SANDLER:  It is significant.  It's meaningful to

4  the estate.  And as I mentioned when I was here on Tuesday, the

5  estates have somewhere in the neighborhood of about close to

6  20,000 -- over 19,000 claims that have been filed in the

7  estate.  The estate has limited resources, as I mentioned,

8  roughly about 7.2 million, somewhere in that range, million

9  dollars.  There have been billions of dollars asserted in

10  claims.

11            And, importantly, the secured lender, Sixth Street,

12  has a lien on substantially all of the assets, even assets that

13  you may recall, Your Honor, Sixth Street had a rollup of the

14  DIP loan.  There was a five for one rollup and that encumbered

15  $240 million of unencumbered assets.  So, virtually, everything

16  in the estate, whether it's, you know, avoidance actions,

17  whether it's, you know, the proceeds from the settlement,

18  virtually everything is liened up.  And Sixth Street is still

19  owed about $380 million.  So, they are far --

20            THE COURT:  Still owe $380 million?

21            MR. SANDLER:  $380 million.

22            THE COURT:  So, they were paid less than 300?

23            MR. SANDLER:  Yeah, thereabouts, I guess, yeah, in

24  that range.

25            And, in any event, so, you know, as we're moving

1 forward in the case, we're obviously trying to monetize as many

2 assets as we possibly can.  And the Safety National policies

3 really focus on I'll say three really key areas, auto, general

4 liability and worker's comp.

5      And as is traditional with a lot of insurance

6 companies, they maintain either letters of credit or other

7 forms of collateral.  And here they really have I'll say two

8 buckets of collateral.  They have an LC that's $44 million,

9 that's what they're going to draw down on on April 15th absent

10 this agreement being approved and then they have another fund

11 of $15 million.  So, basically, you know, for horseshoes, about

12 $59 million of collateral.

13      THE COURT:  It's a fund as opposed to property or --

14      MR. SANDLER:  It's a fund, yeah.  And the purpose of

15 that money is, you know, these are loss sensitive policies and

16 so that means, you know, in addition to like premiums, there

17 are self-funded retentions, there are a variety of other

18 deductibles and chargebacks that get hit against those

19 policies.  And so as is, typical, you don't know when these

20 policies are going to be tapped, right, because worker's comp,

21 for example, there's no statute of limitations so I could

22 assert a claim two years down the road and it could hit these

23 policies.  So, the estate wouldn't get all the money back

24 assuming there are no claims until many, many, many years down

25 the road.

9

1          And Safety National filed two proofs of claim in the

2 case both unliquidated because they don't know what their

3 exposure is and so the plan administrator worked with Safety

4 National to come up with a resolution where they would release

5 some of their collateral to the estates and that's essentially

6 what this motion is.

7          It is an agreement whereby the insurer, Safety

8 National, will release roughly $39 million of the collateral to

9 the estate so this is coming early, right, instead of waiting

10 years down the road, and then there are still continuing

11 obligations that the parties will have under certain policies.

12 These aren't all the policies that Safety National has.  This

13 is just a subset of policies and that's the reason why we call

14 them the subject policies.

15          In any event, this is a tremendous resolution for the

16 estate.  It's a great settlement for the estate as you can

17 imagine.  And the plan administrator which is, obviously, the

18 estate now is governed by the plan, not by Section 363, an

19 objection that was filed about an hour ago, maybe less than

20 that, alluded to.

21          THE COURT:  Oh, I didn't see that objection.

22          MR. SANDLER:  Yeah, there was an objection that was

23 filed I think somewhere after ten o'clock this morning.  I can

24 give you the docket Number, Your Honor.

25          THE COURT:  One second.

1          MR. SANDLER:  I just have to pull my computer up.  It

2     is Docket Number 2958.

3          THE COURT:  2958.

4          MR. SANDLER:  And I must say, Your Honor, I haven't

5     read the entirety of the objection but the objection seems to

6     miss the mark in describing the release of collateral as being

7     a sale, also suggesting that somehow the plan administrator is

8     subject to 363 of the Bankruptcy Code even though we're post

9     confirmation and the plan governs the disposition of assets of

10    the estate.

11         THE COURT:  Okay, I did not see this.

12         MR. SANDLER:  Your Honor, you want to take a few

13    minutes and then -- so you have a chance to read the objection?

14         MR. CORBI:  Your Honor, it's Richard Corbi for

15    Taussig Advisors.  I filed the objection about an hour ago.

16         THE COURT:  Okay.

17         MR. SANDLER:  In any event, Your Honor, so it is

18    clear that the settlement is in the best interest of the

19    estate.  It is clear that if the settlement is not approved,

20    that the insurer, Safety National, will draw down on the LC,

21    the $44 million LC.  It is clear as a matter of law that the

22    plan administrator is governed by the confirmation order and

23    the plan, not by Section 363.  It is clear that this is not a

24    sale, this is a release of collateral.

25         And for all those reasons, Your Honor, we would ask

1 that the Court grant the motion.

2            THE COURT:  All right, let me just read this

3 objection.

4            MR. SANDLER:  Sure.

5                          (Pause)

6            THE COURT:  Well, I've read the objection and I mean

7 it seems to be based on essentially that this is a disguised

8 sale and that it should be conducted pursuant to 363 and you've

9 said, you know, the plan was confirmed and the plan allows for

10 the sale of assets without Court approval or allows for the

11 settlement really in many instances without Court approval, but

12 I'm not sure about this one.  I think this one -- is this one

13 above the limit for --

14            MR. SANDLER:  It is above the threshold but only --

15 the threshold -- what happens under the plan, Your Honor,

16 there's a threshold.  Beneath the threshold the plan

17 administrator has absolute discretion.  Above the threshold the

18 plan administrator needs oversight committee approval which he

19 has and then still no Court approval is required, no notice, in

20 fact.  But because of the size of this in an abundance of

21 caution, we thought it made sense to get a comfort order

22 basically to authorize this.  Even though it's not required, we

23 went the extra step and we decided it made sense to get that.

24            THE COURT:  Okay, Mr. -- and then the other part of

25 it is that they submitted a higher bid, it sounds like by a

1  million dollars.  They valued it a million dollars higher?

2          MR. SANDLER:  Yeah.  And the IOI -- Your Honor, by

3  the way, Sixth Street is aware of the IOI and as I said, Sixth

4  Street has a lien on substantially all the assets and Sixth

5  Street is aware of the IOI and Sixth Street also rejected it.

6  So, this money that is being released is Sixth Street's money

7  at the end of the day and Sixth Street is the one who said this

8  is a no go.  There was too much risk.

9          Beyond that, Safety National has also said, because

10 they still have some reinsurance issues -- remember, this

11 doesn't resolve all the issues between Safety National and the

12 estates.  They've said we don't want to deal with any other

13 party.  We are only willing to deal with the estates.  So, we

14 have Safety National, the estates, the plan administrator, the

15 oversight committee, all folks who have looked at this and all

16 folks who have said this makes the most sense for the estates.

17         THE COURT:  Okay, Mr. Corbi, do you want to respond?

18         MR. CORBI:  Yes.  It's Mr. Corbi, Your Honor, Richard

19 Corbi -- it looks like I just cut out -- Mr. Corbi for Taussig

20 Risk Capital Advisors, Your Honor.  Again, thank you for

21 letting me be heard on shortened notice, and taking time to

22 review my objection.

23         This was, basically, an informal auction and sale

24 process that the plan administrator conducted.  The -- outside

25 the plan administrator's April 15th deadline.  We submitted our

1 letter of intent December, or updated letter of intent on

2 December 11, 2023, exactly four months ago, and did not hear

3 anything from the plan administrator or the debtors despite our

4 reaching out.  And what our bid does, it assumes all the

5 liabilities away from the estate and imposes them on my client,

6 my client would administer the asset or the worker's comp

7 claims administration and provide an immediate cash infusion to

8 the estate.

9        Now, as you'll see, our IOI attached to Mr. Hill's

10 declaration who could be available by phone to dial in, but

11 because of the federal judicial rules obviously it's not going

12 to conference and then talk to a live court call.  He can be

13 here to testify as to what we -- go through all the numbers as

14 to why our offer is better and the fact that the debtor's

15 advisors, CAC, ran an auction process but we never heard from

16 them despite reaching out to them.

17        And all we're asking for here is an auction process

18 in full transparency.  Even though the plan administrator

19 couched this as a release of collateral and they want a comfort

20 order and all this sort of protective stuff, they're conducting

21 an auction.  And, similarly, a release of collateral, it's an

22 estate asset, it's a compromise, but also, it could be the sale

23 of an asset.  And we've offered a higher and better bid.  We'd

24 like the opportunity for some plan administrator to discuss

25 with us and go through our numbers, if there are issues that we

1  can resolve or now -- or, you know, make the other parties

2  comfortable.

3       But from my client's view, we signed multiple NDAs,

4  we have been involved in this process since a week after the

5  petition date which is the one-year anniversary that's coming

6  up at the end of this month or early May.  And what we're

7  asking for is to convert this settlement motion into an auction

8  process.  And it's -- the plan administrator on safety win the

9  auction, so be it.  That's what happened in <u>Marillac</u> and

10 <u>Verity</u>, which is attached as Exhibit I to my declaration at

11 2958, where there, the Court denied a private -- it's like a

12 private sale motion, similar to what is being done here which

13 was done post confirmation by a liquidating trustee and

14 conducted an auction, and although my client lost, we actually

15 increased the value to the estate by $1.6 million.  That's what

16 we're asking for.  That's all we're asking for here, Your

17 Honor, and if we lose at the auction, we lose at the auction

18 but it's a fair process.  And I'm happy to answer any other

19 questions you may have.

20      THE COURT:  So, the one question I was going to have

21 was whether the cases you cite are post-confirmation cases

22 where the plan allows the settlement, without Court approval,

23 and I'm not sure of the answer to that.

24      MR. CORBI:  Well, the <u>Merrilac</u> case I cite is post-

25 confirmation, and Court approval was required by the Court.

1          THE COURT:  Was required by the Court, but not by the

2     plan, is that what you're saying?

3          MR. CORBI:  I have to double check the plan.

4          THE COURT:  Okay.

5          All right, Mr. Sandler?

6          MR. SANDLER:  Well, first off, the plan is clear

7     here.  If you look at Article 4, I guess you say Section F,

8     Subsection (4) and you look at the -- there are only two

9     paragraphs in that section -- but you look at the last sentence

10    of the first paragraph and you look at the second paragraph

11    which is a small paragraph, it's clear we don't need -- plan

12    administrator doesn't need Court approval.  That's number one.

13         THE COURT:  But you're asking for it though?

14         MR. SANDLER:  We are asking for it, we are, just

15    because of the size of the transaction, but we don't need it.

16         Secondly, that paragraph also says the plan

17    administrator can dispose of collateral and basically without

18    Court approval and he can settle any claims without Court

19    approval.  He needs oversight committee approval which he has.

20         In terms of -- there are a couple of cases, RCP

21    (phonetic) which is 212 Bankr. Lexis 5390 (E.D.Pa.) and In re

22    Golf, 322 B.R. 874 (Bankr. D. Nebraska) both address the issue

23    that 363 doesn't apply post-confirmation.  We have a

24    confirmation order here.

25         The other point that I would raise now is I'm not

1 even sure what standing that Mr. Corbi's client even has in

2 this case.  To my knowledge, Mr. Corbi's client is not a

3 creditor in the case, nor has any other interest in the case

4 other than just submitting a non-binding IOI saying that, you

5 now, they want to come in and purchase assets that are not for

6 sale, number one.  As I said, this was a release of collateral

7 that the plan administrator and Sixth Street, the secured

8 lender, have decided is the best path to maximize value.

9          Additionally, there is significant concern to the

10 estate because on April 15th which I believe is Monday, Your

11 Honor, that Safety National is going to draw down on a $44

12 million letter of credit which would be absolutely a disaster

13 to us.

14          THE COURT:  One second, if I may interrupt for a

15 second.

16          MR. SANDLER:  Sure.

17          THE COURT:  The exhibit to the letter of intent or

18 indication of intent from December says a net cash to the

19 estate is 32,585,000 and what is the net cash to the estate in

20 --

21          MR. SANDLER:  This is roughly $39 million, Your

22 Honor.

23          THE COURT:  Thirty-nine, okay.

24          MR. SANDLER:  Your Honor, for all the reasons that

25 we've said in the motion, legal reasons that I've mentioned

1  because of the plan, there's no question because of the fact

2  that we have the secured lender whose money this ultimately is

3  on board with this.  We have, you know, at best a party that

4  has no standing and is a jilted bidder with a non-binding IOI

5  seeking to come in and disrupt a process that has been

6  negotiated between Safety National and the estate over months

7  would be absolutely insane, Your Honor.

8          THE COURT:  Okay, Mr. Corbi, do you want to respond?

9          MR. CORBI:  Your Honor, just to -- sure.  Just to the

10 issue of standing in Paragraphs 26 to 28 of the objection we do

11 have standing because in <u>In re Family Christian, LLC</u>, 533 B.R.

12 600, 620-621 (Bankr. W.D. Mich), a bidder would have standing

13 to object to irregularity of how the process was conducted.

14         And we're not a jilted bidder coming in at the last

15 minute.  My client was here before the committee was here, and

16 May 4th we jumped in and submitted an IOI to Kirkland & Ellis

17 and Lazard, and we have been in this process from the beginning

18 of the case.  We filed multiple NDAs.  And when the plan was --

19 the plan administrator of the estate, CAC to  market the

20 assets of the insurance portfolio, we entered into another NDA.

21 We submitted an IOI in October and we submitted an IOI on

22 December 11th pursuant to the bid deadline set by the plan

23 administrator's advisors.  We're not disrupting any process.

24         In other words, with regards to the April 15

25 deadline, the debtors had argued four months ago.  They could

1  have reached out to us and discussed with us but, again, the

2  April 15 deadline is their failure to plan and that doesn't

3  constitute an emergency.  And, again, we'd also ask to have a

4  sale process in this.

5        THE COURT:  I'm being told it's a disaster.  It's not

6  an emergency but a disaster, a $44 million draw on a letter of

7  credit.

8        MR. CORBI:  Well, if the plan administrator wants to

9  meet with my client over the next couple of days, we can

10 resolve our issue or show that we have a better bid, then we

11 would walk away if we don't.

12       THE COURT:  All right.

13       MR. SANDLER:  Your Honor, Mr. Corbi's client, as you

14 just heard, and I wasn't aware of this, he's been dealing all

15 the way back to when the debtors were in possession, going back

16 to Kirkland & Ellis.  People have known about his client out

17 there.  Sixth Street has known about it.  Safety National has

18 known about it.  Kirkland & Ellis knew about it.  Nobody was

19 interested.

20       And now a deal is on the table that is going to

21 maximize value to the estate and if it doesn't happen by

22 Monday, it is absolutely a horrific result for the estate,

23 especially an estate where I said there are 19,000 claims

24 pending.  The secured creditor is still owed roughly $380

25 million.  There's only $7.2 million to pay $64 million of admin

1  claims right now.

2          THE COURT:  And the stipulation that you want me to

3  order is just approving the stipulation, as I read it.

4          MR. SANDLER:  Yeah, just approving the settlement,

5  just blessing it.

6          THE COURT:  Where is the settlement approval

7  language?

8          MR. SANDLER:  The stipulation consent order says the

9  relief set forth on the following pages numbered 2 through 19

10 is order.

11         THE COURT:  Yes, and I'm saying where is the -- it

12 says Court approval at following the execution of stipulation

13 by all parties, plan administrator will seek Court approval.

14 That's the stipulation.  And where's the order?  I just have to

15 get my hands on the order.

16         MR. SANDLER:  Just the front page of it, Your Honor,

17 there's a signature line where it says stipulation and consent

18 order.  There should be -- at least on my copy there's a

19 signature line.

20         THE COURT:  That's what I'm saying.  There's no

21 separate order approving the stipulation.

22         MR. SANDLER:  Would you like us to submit a separate

23 order?

24         THE COURT:  No.

25         MR. SANDLER:  Okay.

1          THE COURT:  I don't need a separate order.  I'm just

2    trying to find out exactly what the relief is that is being

3    granted just here, is supposed to be granted.

4          MR. SANDLER:  It's just approving the settlement of

5    the proofs of claim and the release of collateral in exchange

6    for that.

7          THE COURT:  Right.  It's not approving it pursuant to

8    9019 --

9          MR. SANDLER:  No.

10         THE COURT:  -- or 363.

11         MR. SANDLER:  Correct.

12         THE COURT:  I didn't see that.  All right.

13         Okay, this matter is before the Court on shortened

14   notice for approval of a settlement of two proofs of claim

15   filed by Safety National Casualty Insurance Corporation on

16   liquidated amounts.  The basis for the shortened notice was

17   that if the settlement was not approved before the 15th of

18   April which is Monday of next week, there would be a draw down

19   on a $44 million letter of credit that would have significant

20   negative impact on the estate and its creditors, described as a

21   disaster by the plan administrator's counsel but as a non-

22   emergency by counsel for the objector.

23         And there was an objection filed this morning which

24   was in accordance with the order and I have reviewed -- I can't

25   say I've reviewed all the exhibits which are hundreds of pages,

1  but I have reviewed the objection itself and the December

2  letter of intent or indication of intent I should say.

3         And then by way of further background, Safety

4  National provided worker's comp, general liability and auto

5  insurance to the debtor in several states.  The policies are

6  loss sensitive, meaning that Bed Bath & Beyond was required to

7  pay certain self-funded retentions under the policy -- under

8  the policies, there's more than one policy.  And Safety was

9  secured by two letters of credit issued by JPMorgan Chase in

10 the amount of $44 million plus $15 million on another form of

11 collateral, a fund it was described as.

12        To date Safety has not drawn on any letter of credit

13 or collateral but as indicated, it will on April 15th unless

14 this settlement is approved.  The settlement provides that

15 Safety will draw down on $38.9 million on the letter of credit

16 and after that, will fund losses with no further obligation on

17 the part of the debtors.  And there's also a commutation

18 addendum which deals with I guess kind of a true up as this all

19 proceeds.

20        The debtors assert that while Court approval is not

21 -- not the debtors.  The plan administrator asserts that while

22 Court approval is not required under the plan and cited Article

23 4, Section 4, Subsection 4, that because of the amount of money

24 involved, they are seeking in essence the order of the Court as

25 a comfort that the approval is proper -- that the settlement is

1  proper and also that the litigation to address these issues

2  would be very costly and complex and take a significant amount

3  of time.

4          And then if the coverage is denied, it will diminish

5  the estate.  And then the $39 million, according to the debtor,

6  will be -- the plan administrator will be released to the

7  estate.  That this settlement has been approved not only by the

8  plan administrator but by the oversight committee and by Sixth

9  Street which holds a lien on it.

10          So, the objection, as I stated, is basically based on

11  this being disguised a 363 sale and that a 363 sale process

12  should be required here in order to maximize the benefit to the

13  estate and allow -- I'm sorry, I have to get the exact name --

14  Taussig Risk Capital Advisors who submitted letters --

15  indications of intent and has been involved in discussions with

16  the debtor's counsel and then after that, plan administrator

17  and submitted various indications of interest but received no

18  affirmative response from the debtor or the plan administrator

19  so that this should be -- the Court should order that an

20  auction be conducted citing various cases including one that

21  deals with a post-confirmation transaction.

22          But here, we're dealing with a post-confirmation

23  transaction and a plan that, and there's no dispute as to this,

24  that provides that the plan administrator is authorized to

25  settle claims and proofs of claims such as this one or these

1    two in his discretion and in certain circumstances, with the

2    approval of the oversight committee and then also as

3    represented today and in the motion, the approval of the Sixth

4    Street lenders who have a lien on this asset.  And it's been

5    represented in the motion that all those parties approve and

6    represented today that all those parties were aware of the

7    interest of Taussig Risk Capital Advisors and determined to

8    proceed with this settlement.

9          And there's also an objection.  In response, the plan

10   administrator says this is not a 363 sale, it's a settlement of

11   a claim and 363 compliance is not required and also that

12   Taussig has no standing because it's just at most an

13   unsuccessful bidder.

14         Addressing the standing issue first as it's set forth

15   in the objection, Courts in this circuit have held that an

16   unsuccessful bidder does not have standing to object to a

17   proposed sale which this is not, but does not have standing in

18   any event.  But the argument is that Taussig is a party-in-

19   interest and has standing as a party-in-interest under 1019 or

20   the case law that it cited.

21         You know, I can say that I never honestly understood

22   the Third Circuit law that says an unsuccessful bidder doesn't

23   have standing to object to a sale, but that's what they say,

24   and I'm bound by the Third Circuit.  But I'm not even sure we

25   get there with this and that it's necessary to get there

1 because it's not even an unsuccessful -- it's not a sale

2 process although there was one that was perhaps contemplated if

3 it would yield better results.   That did not happen.

4       But even if I assume that Taussig does have standing,

5 I would overrule the objection and enter the stipulation and

6 consent order as a sound exercise of the business judgment of

7 the plan administrator.   I'm not really even being asked to --

8 there's nothing that says that this is under 363 or even, you

9 know, it's just really a settlement of the proofs of claim on

10 which the plan administrator is seeking what it calls a comfort

11 order.

12       And to the extent I am required or able to approve

13 the settlement, first of all, it's in discussion of the

14 Bankruptcy Court and that's the Martin case, 91 F.3d 389, 396

15 and the Court must determine whether the settlement is fair and

16 equitable and in the best interest of the estate, TCI 2

17 Holdings, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).   The Court

18 must assess and balance the value of the claim that is being

19 compromised against the value to the estate of the acceptance

20 of the compromised proposal; Martin at 393.

21       The Court is not required to conduct a mini trial on

22 the merits or take evidence which should canvas the issues and

23 see whether the settlement falls below the lowest point in the

24 range of reasonableness; Cosoff v. Rodman, In re W.T. Grant

25 Co., 699 F.2d 599, 608 (2d Cir. 1983).

1          The factors the Court considers under <u>Martin</u> are the

2    probability of success in litigation, likely difficulties in

3    collection, complexity of litigation involved and the expense,

4    inconvenience, delay necessary in attending it and the

5    paramount interest of creditors.  In considering those factors,

6    while the plan administrator believes he may be successful in

7    litigation, that's always in doubt.  There's never 100 percent

8    certainty of probability of success.  And in most cases

9    settlement is much better for everyone involved and for reasons

10   that will follow.  And I find this is one of them.

11          The likely difficulties in collection, there's not

12   going to be any difficulty in collection against Safety

13   National that I think -- there's no evidence that it's anything

14   other than a very solvent insurance company.

15          The complexity of litigation involved, the expense,

16   inconvenience, delay necessary in attending it, the complexity,

17   you know, even just reviewing the motion and the exhibits

18   attached in the compendium, the back and forth of claims and

19   retentions and self-insurance and deductibles and all that, it

20   would be unquestionably a complex litigation that would be

21   expensive and would result in delays and in this case, if not

22   approved, would result in a draw down of the letter of credit

23   of $44 million which I am being told would be disastrous for

24   the estate.

25          And the paramount interest of creditors, the plan

1  administrator whose obligation is to maximize the estate for

2  the benefit of creditors is on board.  The oversight committee

3  which oversees the plan administrator and making sure that he

4  maximizes that value is on board.  The secured creditor who's

5  out $300 million and or just shy of $300 million and whose

6  collateral this would be is on board.  And it's represented

7  that all those parties, and it's not said otherwise, have known

8  of Taussig's involvement and potential interest all along and

9  they decided to go forward with it.

10       And then the one thing that I have here is the

11  December letter indicates, of Taussig, indicates a $35 million

12  benefit to the estate and I'm being told that this is 39

13  million.  So, even on that basis it's an unassailable exercise

14  of the trustee's business judgment to enter into this

15  settlement agreement in these circumstances.  So, even if there

16  is standing, I would approve this settlement as in the best

17  interest of the estate as determined by the people who have the

18  obligation to execute transactions in a matter that is in the

19  best interest of the estate.

20       So, I'm going to enter the consent order and

21  stipulation for the reasons set forth here and also in the

22  motion and during the course of argument.

23       MR. SANDLER:  Your Honor, thank you very much.  And

24  with that, I believe we have concluded the agenda for today.

25       THE COURT:  I believe that's correct.  Okay.

27

1          MR. SANDLER:  Thank you, Your Honor.

2          THE COURT:  I have nothing further on this matter.  I

3 do have another matter after this so I'll deal with that.

4 Thank you.

5          So, you know, I know you're not happy with the

6 result, Mr. Corbi, but that's my ruling, okay?

7          MR. CORBI:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          MR. SANDLER:  Thank you, Your Honor.

10          THE COURT:  Have a good day.

11          MR. SANDLER:  Have a good day.

12          THE COURT:  Thank you.

13                    * * * * *

14          **C E R T I F I C A T I O N**

15          I, MARY POLITO, court approved transcriber, certify

16 that the foregoing is a correct transcript from the official

17 electronic sound recording of the proceedings in the above-

18 entitled matter, and to the best of my ability.

19

20 /s/ Mary Polito

21 MARY POLITO

22 J&J COURT TRANSCRIBERS, INC.      DATE:  April 16, 2024

23

24

25