**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: May 7, 2024<br>                    at 10:00 a.m. |

**SUPPLEMENTAL OPPOSITION OF THE PLAN ADMINISTRATOR TO AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY (11 U.S.C. § 362)**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION.................................................................................................2

II.   ARGUMENT .....................................................................................................5

    A.    Movants have not established "cause" to modify the Plan Injunction....................5

        *(i)*    *Continuing the State Court Action will greatly prejudice the estates because the Debtors are self-insured for any claim under $1 million and granting relief will result in the estates being drained by prohibitive Defense Costs.* .......................6

        *(ii)*    *The hardship to the Movants by maintenance of the Plan Injunction does not considerably outweigh the hardship to the bankruptcy estates.*.................................................................16

        *(iii)*    *Movants have not established any likelihood of prevailing on the merits.*....................................................................16

    B.    The Plan Injunction is enforceable against Movants. ............................................17

III.  CONCLUSION ..................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*DePippo v. Kmart Corp.*,
    335 B.R. 290 (S.D.N.Y. 2005).................................................................................... 13, 14

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284 ..................................................................................... 6, 12

*Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*,
    219 B.R. 716 (S.D. West Va. 1998)............................................................................ 14, 15

*Houston v. Edgeworth (In re Edgeworth)*,
    993 F.2d 51 (5th Cir. 1993) ....................................................................................... 13, 14

*In re Chemtura Corp.*,
    09-11233-JLG, 2016 Bankr. LEXIS 4056, (Bankr. S.D.N.Y. Nov. 23, 2016).......... 12, 15

*In re CJ Holding Co.*,
    2018 Bankr. LEXIS 2437 (Bankr. S.D.Tex. Aug. 15, 2018).......................................... 14

*In re EnCap Golf Holdings, LLC*,
    2008 Bankr. LEXIS 2146 (Bankr. D. N.J. Aug. 4, 2008) .............................................. 13

*In re iHeartMedia, Inc.*,
    2019 Bankr. LEXIS 1617 (Bankr. S.D.Tex. May 28, 2019) .......................................... 11

*In re Jet Florida Systems, Inc.*,
    883 F.2d 970 (11th Cir. 1989) ...................................................................................... 15

*In re Kabbage Inc.*,
    2023 Bankr. LEXIS 671 (Bankr. D. De. March 15, 2023).............................................. 17

*In re Residential Capital, LLC*,
    2012 Bankr. LEXIS 3624, (Bankr. S.D.N.Y. Aug. 7, 2012) .......................................... 12

*In re SquareTwo Fin. Servs. Corp.*,
    2017 Bankr. LEXIS 2570 .......................................................................................... 5, 12

*In re SunEdison, Inc.*,
    557 B.R. 303 (Bankr. S.D.N.Y. 2016) .......................................................................... 12

*In re Trump Ent. Resorts, Inc.*,
    526 B.R. 116(Bankr. D. Del. 2015) ................................................................................ 6

*In re W.R. Grace & Co.*,
    2007 Bankr. LEXIS 1214, (Bankr. D. Del. Apr. 13, 2007) ............................................ 6

*Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*,
    141 B.R. 574 (Bankr. D. Del 1992) ................................................................................ 6

*Jones v. Pilgrim's Pride, Inc.*
    741 F. Supp. 2d 1272 (N.D. Ala. 2010)........................................................................ 14

*Moreno-Cuevas v. Town Sports Int'l, LLC (In re Town Sports Int'l)*,
    2023 U.S. Dist. LEXIS 227402 ............................................................................. 5, 6, 18

*Perez v. Cumberland Farms, Inc.*,
    213 B.R. 622 (D. Mass. 1997) ...................................................................................... 15

**Statutes**

11 U.S.C. § 105(a) ................................................................................................ 17, 18
11 U.S.C. § 524 ......................................................................................................... 13
11 U.S.C. § 524(a) ............................................................................................... 13, 15
11 U.S.C. § 524(e) ............................................................................................... 13, 14
11 U.S.C. § 1141(c) .................................................................................................... 17
11 U.S.C. § 1141(d)(3) ............................................................................................... 17

**Rules**

Fed. R. Bankr. P. 9019 ................................................................................................. 4

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[1] and 73 affiliated debtors (the

"Debtors"), files this supplemental opposition (the "Supplemental Opposition") to the *Amended*

*Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 and Request for Waiver of*

*14 Day Stay Imposed by Bankruptcy Rule 4001(a)(3)* [Docket No. 2723] (the "Amended Motion")

filed on behalf of Penelope and Joseph Duczkowski ("Movants").[2]  In support of the Supplemental

Opposition, the Plan Administrator states as follows:[3]

## I.      **INTRODUCTION**[4]

1.      Penelope Duczkowski is personal injury claimant who alleges she was injured

when a wok fell on her foot in a Bed Bath & Beyond store in New Jersey in November of 2020.[5]

In the lawsuit that Movants filed against debtor Bed Bath & Beyond, Inc. ("BBB") in February

of 2022 in the Superior Court of Union County, New Jersey (Case No. UNN-L-000580-22) (the

"State Court Action"), Ms. Duczkowski alleges actual damages "in excess of $50,000.00," as

does her husband, Joseph Duczkowski, for loss of consortium.[6] The State Court Action was

stayed by the Debtors' chapter 11 filings on April 23, 2023 (the "Petition Date").  Three days

later, counsel to BBB filed a *Notice of Filing of Bankruptcy* in the State Court Action.[7]  On June

23, 2023, the State Court Action was dismissed "without prejudice subject to reinstatement . . . if

---

[1] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[2] Movants filed their initial *Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362* [Docket No. 2679]  on November 10, 2023. The Amended Motion was filed on November 28, 2023. The Plan Administrator filed a Limited Objection and Reservation of Rights [Docket No. 2760] on January 2, 2024 (the "Objection").

[3] The facts in this Supplemental Opposition are supported by the *Declaration of Michael Goldberg*, which is attached hereto as **Exhibit A** (the "Goldberg Dec.").

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

[5] *See* Certification of Counsel [Docket No. 2723-3-1], at 25.

[6] *See* Complaint (Exhibit A) to Certification of Counsel [Docket No. 2723-3].

[7] A true and correct copy of the *Notice of Filing of Bankruptcy* is attached as **Exhibit 1** to the Goldberg Dec.

the Bankruptcy proceedings to do fully dispose of all the issues between the parties."[8] On August

9, 2023 (one month after the General Bar Date),[9] Movants filed a proof of claim (docketed as

Claim No. 18851) against BBB as a general unsecured claim for $3,000,000.00 (the

"Duczkowski Claim").[10]

2.      Pursuant to the *Debtors' Second Amended Joint Chapter 11 Plan* (the "Plan"),

which went effective on September 29, 2023, Movants hold a Class 6 General Unsecured Claim,

that has not yet been Allowed.[11]  If Movants' Claim is Allowed,[12] they will be entitled to their

*pro rata* share of the consideration that the Plan provides for Class 6 "in full and final

satisfaction, compromise, settlement, release, and discharge of [their] Claim" (the "Class 6 Plan

Treatment").[13]

3.      Pursuant to Article X.F of the Plan, like all other Creditors, Movants are:

> enjoined and precluded, from and after the Effective Date ***through
> and until the date upon which all remaining property of the
> Debtors' Estates vested in the Wind-Down Debtors has been
> liquidated and distributed in accordance with the terms of the Plan***
> from taking any of the following actions against, as applicable, the

---

[8] A true and correct copy of the *Order of Dismissal* is attached as **Exhibit 2** to the Goldberg Dec.

[9] Pursuant to the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584], July 7, 2023 as the date by which most Claims against the Debtors had to be filed (the "General Bar Date").

[10] A true and correct copy of the Duczkowski Claim is attached as **Exhibit 3** to the Goldberg Dec.

[11] On September 14, 2023, the Court entered *the Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates [Docket No. 2160] (as amended, the "Plan"). On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors. Plan, Article IV, at § B.

[12] Pursuant to the Plan, the Plan Administrator currently has until September 30, 2024 to object to Claims, which date may be extended by the Court upon the request of the Plan Administrator.  Plan, Article I.A, at § 28.

[13] Pursuant to the Plan, Class 6 includes all General Unsecured Claims, which are treated as follows, "In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims." Plan, Article III.B (6).

> Debtors, Wind-Down Debtors . . . : (1) *commencing or continuing in
> manner any action or other proceeding of any kind on account
> of or in connection with or with respect to any such Claims,
> Interests, Causes of Action or liabilities*; (2) enforcing, attaching,
> collecting, or recovering by any manner or means any judgment,
> award, decree, or order against such Entities on account of or in
> connection with or with respect to any such Claims, Interests,
> Causes of Action or liabilities . . . ; and (5) commencing or
> continuing in any manner any action or other proceeding of any kind
> on account of or in connection with or with respect to any such
> Claims, Interests, Causes of Action or liabilities discharged,
> released, exculpated, or settled pursuant to the Plan.

Plan, Article X.F (the "Plan Injunction") (emphasis added).

4.    The Plan also provides for a "complete settlement, compromise, and release,
effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature
whatsoever . . . ." Plan, Article X.A (the "Plan Settlement").[14] It also provides for a "release and
discharge" of Claims and Causes of Action against the Debtors as of the Effective Date. Plan,
Article X.D (the "Plan Release").[15]

5.    Movants seek to modify the automatic stay or Plan Injunction "to be allowed to
continue the State Court Action against the Debtor solely to recover against the Debtor's
insurers." *See Memorandum of Law* [Docket 2723-2], at 5. Movants state that they "will not seek

---

[14]Plan, Article X.A ("Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits
provided pursuant to the Plan . . . the distributions, rights, and treatment that are provided in the Plan shall be in
complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of
Action of any nature whatsoever . . . whether known or unknown, against, liabilities of, Liens on, obligations of,
rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property
shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including
demands, liabilities, and Causes of Action that arose before the Effective Date . . . ").

[15] Plan, Article X.D. ("As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing
Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims
and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties
may have under any applicable statute, including but not limited to . . . or any doctrine or principle of law restricting
the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which
claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would
have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner
arising from, in whole or in part, the Debtors  . . . .").

enforcement of any judgment against the Debtor or its assets other than the Policy." *Id*. Movants

argue that the Court has discretion to modify the Plan Injunction on the grounds that:

> [T]he Plan Injunction constitutes an extreme and unnecessary
> hardship upon them because it prohibits them from continuing the
> State Court Action in order to recover from the Debtor's insurers.
> Conversely, the only hardship to the Debtor in modifying the Plan
> Injunction would be that the Debtor would need to devote time
> cooperating with its insurer(s) to defend the State Court Action, a
> harm which is dwarfed by the harm which will be suffered by
> [Movants] if they cannot recover from the Debtor's insurers.

*Id*. at 9-10.

6.    As is set forth below, Movants have failed to establish "cause" for relief from the

Plan Injunction. Debtors have no insurance for any personal injury claim that is liquidated for

under $1 million, and the cost to defend this suit and others like it (should the Court grant relief

will drain these administratively precarious estates in hundred cent dollars to the detriment of the

estates' other creditors and in violation of the expectations and priorities established pursuant to

the Plan. Furthermore, Movants have not produced any evidence of the likelihood that they will

succeed in establishing a claim above the $1 million self-insured retention. Why should other

creditors pay to fund Movant's gamble?  Accordingly, the Court should deny the Motion.

## II.    ARGUMENT

### A.    Movants have not established "cause" to modify the Plan Injunction.

7.    As a preliminary matter, on the Effective Date, the automatic stay of section 362

was replaced by the Plan Injunction and is no longer in effect. *See Moreno-Cuevas v. Town

Sports Int'l, LLC (In re Town Sports Int'l)*, 2023 U.S. Dist. LEXIS 227402, *12 (D. Del. Dec. 21,

2023). Accordingly, the Plan Administrator will treat the Motion as requesting relief from the

Plan Injunction.  *Id*. (treating a request for relief from the automatic stay as a request for relief

from a plan injunction); *In re SquareTwo Fin. Servs. Corp.,* 2017 Bankr. LEXIS 2570, at *10

(Bankr. S.D.N.Y. Sept. 11, 2017) (same); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *24 (S.D.N.Y. Aug. 4, 2006) (same).

8.      Courts considering whether to grant relief from a plan injunction apply a "cause" standard, incorporating the same "cause" analysis as they apply for section 362. *In re Town Sports Int'l*, 2023 U.S. Dist. LEXIS 227402, at *12; *Grayson v. WorldCom, Inc.* (*In re WorldCom, Inc.*), 2006 U.S. Dist. LEXIS 55284, at *245. Courts in the Third Circuit consider three factors when balancing competing interests of debtors and movants in connection with stay relief: (1) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the nonbankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits. *In re Town Sports Int'l*, 2023 U.S. Dist. LEXIS 227402, at *13; *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015); *In re W.R. Grace & Co.,* 2007 Bankr. LEXIS 1214, *8 (Bankr. D. Del. Apr. 13, 2007); *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.),* 141 B.R. 574, 576 (Bankr. D. Del 1992).

> ***(i)  Continuing the State Court Action will greatly prejudice the estates because the Debtors are self-insured for any claim under $1 million and granting relief will result in the estates being drained by prohibitive Defense Costs.***

9.      The first and most important factor considered by courts is prejudice to the bankruptcy estate. *In re Town Sports Int'l*, 2023 U.S. Dist. LEXIS 227402, at *13. Cause exists only if harm to Movants by maintenance of the Plan Injunction "considerably outweighs" the harm to the Debtors from the lifting of the Plan Injunction. *Id*. It does here.

10.     The Debtors are their own insurer for all personal injury claims under $1 million. The general liability policy that is applicable to the Duczkowski Claim is GL 4062767 (the "Policy") with Safety National Casualty Corporation ("Safety National"). The Policy was

assumed by the Debtors pursuant to the Plan, and the Confirmation Order imposes upon the Plan

Administrator duties of cooperation with Safety National.[16]

11.     Pursuant to a Self-Insured Retention Endorsement (the "<u>SIR Endorsement</u>"), the

Policy has a $1 million per occurrence self-insured retention (the "<u>SIR</u>").  *See* SIR Endorsement

at 1.[17]  The SIR Endorsement provides:

> **SELF-INSURED RETENTION**. Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount. ***After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention.*** Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form. The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

SIR Endorsement § I(A), at 1 (emphasis added).[18]

---

[16] Plan, Article V.D.  The Confirmation Order provides: As proscribed under the Safety National Insurance Policies, after the Effective Date, the Debtors and/or Wind-Down Debtors, through the Plan Administrator, shall maintain a duty to cooperate and assist in the defense of any claim, proceeding, or suit against the Debtors for damages payable by the Safety National Insurance Policies. Pursuant to Bankruptcy Rule 9001(5), the Plan Administrator shall be designated as the person authorized to act on behalf of the Debtors (or, after the Effective Date, the Wind-Down Debtors) in defense of any claim, proceeding, or suit against the Safety National Insurance Policies for the purpose of liquidating the claim to seek to collect against the Safety National Insurance Policies. The Plan Administrator shall be further authorized to assist in the defense of such claims including by, though not limited to, providing documents and information required in the defense of any claims, proceeding, or suit, and signing interrogatory answers and other discovery responses. The Plan Administrator shall be authorized to execute such discovery materials based upon knowledge and information gained from the review of documents or other information in the Plan Administrator's possession in the Plan Administrator's actual knowledge and not based on personal knowledge of the Plan Administrator. The intent of this paragraph is to provide adequate provisions of the Debtors' defense obligations under the Safety National Insurance Policies, and nothing in this paragraph shall alter, modify, amend, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Debtors (or, after the Effective Date, the Wind-Down Debtors) or the Safety National Parties under the Safety National Insurance Policies." Confirmation Order at ¶ 145.

[17] A true and correct copy of the SIR Endorsement is attached as **Exhibit 4** to the Goldberg Dec**.**

[18] "Defense Costs" are "Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or

(Continued…)

12.    The SIR Endorsement continues:

> **SELF-INSURED RETENTION PER OCCURRENCE**. If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, ***it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule***, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

SIR Endorsement § I(A)(1), at 1-2 (emphasis added).

13.    The SIR Endorsement further provides, "With respect to any claim or "suit" under this policy that has been tendered to us and ***that may exceed*** the applicable Self-Insured Retention amount, we ***may*** pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit". If we do so, you must promptly reimburse us for our payment." *Id.* § I(C), at 2 (emphasis added).[19] It continues, "You may not settle any claim or "suit" that exceeds [$1 million] without our written permission to do so. If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy." *Id.* § II(D)(1), at 3.

14.    Accordingly, Movants are seeking relief from the Plan Injunction to liquidate a claim in the State Court Action, the first $1 million of which can <u>only</u> be recovered against the

---

testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy. SIR Endorsement § III, at 5.

[19] In a seemingly contrary provision, the SIR Endorsement provides, "We shall have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed [$1 million]. If we do avail ourselves of that right, you must cooperate with us. In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit," you shall **not** be liable to reimburse us for those "defense costs". SIR Endorsement § II(D)(2), at 3 (emphasis added).

Debtors, as their own insurers.  Because Defense Costs (including attorney's fees) are included in the $1 million SIR, the Plan Administrator would have to use very limited estate resources to defend the State Court Action.

15.     From 2012-2020 (the years for which the personal injury cases were fairly developed and might provide an accurate predictor of costs associated with cases that were pending on the Petition Date), the Debtors paid $12.14 million in attorney's fees related to personal injury claims, or an average of $1.52 million per year. During that time, only 3 cases exceeded the $1 million SIR (inclusive of Defense Costs and settlement/judgment amounts).

16.     The State Court Action was still in the early stages before it was dismissed on account of the Debtors' bankruptcy.[20] If the Court grants relief from the Plan Injunction to permit the State Court Action to move forward, the Plan Administrator will have choose whether to (a) defend the case (which will, absent settlement, involve motion practice, discovery, pretrial proceedings and trial), causing the estates to incur tens or even hundreds of thousands of dollars in attorneys' fees; or (b) not defend the case in which case, either (i) Movants will take a default judgement against the Debtors (exposing the estates to a claim by Safety National that it has breached the terms of the Policy); or (ii) Safety National will step in to defend and it may then assert an administrative claim against the Debtors.[21]  Under any possible scenario, the estates risk

---

[20] A true and correct copy of the *Case Management Order* issued in the State Court Action is attached as **Exhibit 5** to the Goldberg Dec.

[21] In connection with Safety National's *Objection to Alfred Zeve's Motion For Order Modifying The Automatic Stay And Plan Injunction To Allow Movant To Continue Pending Litigation Against The Debtor, To Recover Solely Against Debtor's Insurer, Waiving The Provisions Of Fed. R. Bankr. P. 4001 (A) (3) And For Related Relief* [Docket No 2977] (the "Zeve Objection"), Safety National states, "Debtors are obligated under the Safety National Insurance Policies to defend or resolve claims below the SIR limit. The Safety National Insurance Policies, among other things, also obligate Debtors to indemnify and reimburse Safety National for any defense costs Safety National incurs below the SIR limit. To the extent the Plan Injunction is lifted for Zeve to pursue the Zeve Claim, the Estate will either (i) be required to defend the Zeve Claim in the State Court Lawsuit, or (ii) if the Estate chooses not to defend, will incur administrative claim obligations to Safety National for its defense of the Zeve Claim in the State Court Lawsuit." Zeve Objection at 6-7.

being drained for the benefit of two individuals who hold, at best, a disputed, unliquidated Class 6 General Unsecured Claim.[22]

17.    Each dollar that the Plan Administrator spends in Defense Costs is a dollar that is contractually obligated to senior creditors under the Waterfall Recovery mechanism in confirmed Plan. *See* Plan, Article IV.B. Moreover, should the Plan Administrator be able to collect sufficient Assets to make even a *de minimis* distribution to Holders of Allowed Class 6 General Unsecured Creditors, their *pro rata* recoveries will also be diminished by the money that the estates have had to spend in Defense Costs. Why should other creditors pay for Movants attempt to hit-the-jackpot by getting an over-the-SIR judgment, especially where, as here, as the Plan Administrator has previously noted the estates may well be administratively insolvent.[23]

18.    Furthermore, the Plan Administrator will have to spend time and incur expenses to respond to and defend against the State Court Action as he and his small staff are trying to wind-down the Debtors and make distributions to creditors. Finally, granting relief from the Plan Injunction to Movants will embolden other personal injury claimants to seek relief which will expose the estates to tens or hundreds of thousands of dollars in Defense Costs. On the Petition Date, approximately 55 personal injury cases were being litigated against the Debtors, 53 of which requested damages within the SIR of $1 million and two of which requested damages in excess of $1 million.

19.    Numerous courts have denied relief from stay and/or plan injunctions to plaintiffs who wanted to move against the debtor's insurers because the debtor's estate would have to

---

[22] The Plan Administrator does not concede Safety National's interpretation of the Policy or the SIR Endorsement. He reserves all rights, arguments, claims and defenses under the Policy and the SIR Endorsement.

[23] *See Declaration of Michael Goldberg in Support of Motion for Order Extending Period to Object to Claims* [Docket No. 2906], 5-6 ("Goldberg Dec. II") ("Absent a significant reduction in the Asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full.").

incur defense costs or where the debtor was otherwise self-insured. In *In re iHeartMedia, Inc.*,

2019 Bankr. LEXIS 1617 (Bankr. S.D.Tex. May 28, 2019), a creditor sought relief from the

automatic stay/plan injunction to "proceed against insurance proceeds" in connection with a pre-

petition personal injury action. As the court noted, "If that were the actual relief sought,

[creditor] might prevail." *Id*. at *6. However, the debtor's general liability policy, which it had

assumed in connection with plan confirmation, had a $3 million deductible. In denying relief

from the stay/injunction, the court explained:

> Because [the debtor] is liable for the $3,000,000.00 deductible on
> any claim paid under its Insurance Policy, [creditor's] attempt to
> collect a claim against the Insurance Policy, would necessarily
> invoke the reimbursement provisions of the contract. The Insurer
> will not waive its reimbursement rights. Thus, [creditor's] attempt
> to collect against the Insurance Policy directly affects the
> bankruptcy estate, which is barred under either the automatic stay or
> the discharge injunction.

2019 Bankr. LEXIS 1617, *12-13 (citations omitted). The court continued:

> Although [creditor] characterizes its claim as a claim against the
> insurance proceeds, that is simply incorrect. Its claim is against [the
> debtor], the insured. Any claim necessarily invokes the Insurer's
> right to reimbursement from [the debtor], whether that payment is
> required prior to claim payment under an SIR, or as reimbursement
> under a deductible is irrelevant. . . .[T]he controlling question is
> whether the litigation would place the financial burden solely on the
> insurer or implicate the debtor. 993 F.2d at 54. The Insurance Policy
> in this case, with its $3,000,000.00 reimbursable deductible falls
> within the latter category, implicating the Debtor's finances.
> Accordingly, [creditor] has failed to carry its burden demonstrating
> cause for relief from the automatic stay.

2019 Bankr. LEXIS 1617, *15-16. In this case, the litigation puts the burden of up to $1 million

in Defense Costs on the Debtors. It more than "implicates" the Debtors' finances, it has the

possibility of crushing them.

20. *In re SquareTwo Fin. Servs. Corp.,* 2017 Bankr. LEXIS 2570 (Bankr. S. D. N. Y.

Sept 11, 2017), the bankruptcy court denied relief from the plan injunction to class action

litigation claimants because, in part, the reorganized debtor would have been forced to use its

own funds to defend. In that case, there were both reorganized debtors and debtors who were

liquidating, and the court concluded that both would be prejudiced, noting:

> Since no insurer has assumed responsibility to pay for the costs
> and/or damages associated with the Counterclaims, if that litigation
> goes forward, [Reorganized debtor-defendant] will be denied its
> fresh start because it will be forced to use its own funds to defend
> against the discharged claims. *See In re Chemtura Corp.*, 09-11233-
> JLG, 2016 Bankr. LEXIS 4056, at *56 (Bankr. S.D.N.Y. Nov. 23,
> 2016) (granting motion to enforce discharge injunction to bar post-
> confirmation prosecution of discharged tort claims, even if only to
> fix insurers liability under the policy, since the debtor "will be
> denied its 'fresh start' because it will be obligated by [the policies]
> to pay defense costs associated with the Benzene Lawsuits, which
> are personal injury actions on account of discharged debts."). See
> also *In re WorldCom Inc.*, 2007 WL 841948, at *7 (finding seventh
> *Sonnax Factor* weighed against movant because the "increased costs
> associated with litigation in a separate forum would prejudice the
> Reorganized Debtors."). [Liquidating debtor defendant] is in a
> slightly different position since it may have access to Estate funds
> in the Wind Down Account to underwrite costs associated with the
> prosecution of the Counterclaims. Nonetheless, it will be no less
> aggrieved if the Class Claimants get relief from the Plan Injunction.
> That is because continued prosecution of the Counterclaims will
> prevent the Dissolving Debtors' personnel from focusing on matters
> relating to the wind down of the businesses and thereby delay the
> prompt resolution of these cases. *Cf. In re SunEdison, Inc.*, 557 B.R.
> 303, 307-08 (Bankr. S.D.N.Y. 2016) (denying lift stay motion in
> part because holding otherwise would "divert the Debtors' resources
> and personnel at a critical time in the case"). Finally, the holders of
> the 1.5 Lien Lender Claims will also be prejudiced by the continued
> prosecution of the Counterclaims and the use of Estate funds in
> connection with that litigation, since any funds remaining in the
> Wind Down Account after the Wind Down Costs are paid are
> earmarked for their benefit.  . . . Thus, application of Factor # 7
> weighs against the Class Claimants.

*Id*. at *21 (emphasis added).  *See also In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3624,

at *16 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying plaintiff's motion to lift automatic stay where no

insurer had assumed responsibility to pay for damages and allowing action to proceed would

require debtors to pay damages directly from policy deductible); *DePippo v. Kmart Corp*., 335

B.R. 290, 298 (S.D.N.Y. 2005) (denying relief from the plan injunction to personal injury

claimants where the debtors (Kmart) had a $2 million self-insured retention and would be forced

to incur the cost of litigation and stating, "Kmart does not maintain primary liability insurance.

Its only insurance provides coverage above a two-million-dollar self-insured retention.

(Therefore, because Kmart's debt has been discharged in bankruptcy, there is no money to cover

plaintiff's claim. Moreover, if the action against Kmart were permitted to proceed, it would have

to pay litigation costs, which is contrary to the fresh start policy of the Bankruptcy Code."); *In re*

*EnCap Golf Holdings, LLC*, 2008 Bankr. LEXIS 2146, at *12 (Bankr. D. N.J. Aug. 4, 2008)

("Because the Self-Insured Retention has not been exhausted, [insurance company] has no

obligation to make payments under the [insurance policy] and [creditor's] right to commence an

arbitration against [insurance company] cannot be implemented. Accordingly, there is no cause

to grant relief from the automatic stay in favor of [creditor].").

21.    In *Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51 (5th Cir. 1993), the

court held that Bankruptcy Code section 524(e) does not prohibit a plaintiff from joining a

discharged chapter 7 debtor in a wrongful death suit to pursue a recovery against the debtor's

insurer. In doing so, however, the court explained:

> [The debtor] has not asserted that he will be required to pay the costs
> of his defense against appellants' suit or that the insurance company
> denied coverage or is defending under a reservation of rights. ***Such***
> ***threats to [the debtor's] pocketbook might require a different***
> ***result under § 524.*** Thus, as long as the costs of defense are borne
> by the insurer and there is no execution on judgment against the
> debtor personally, section 524(a) will not bar a suit against the
> discharged debtor as the nominal defendant.

*Id*. at 54 (emphasis supplied).

22.    In *In re CJ Holding Co.*, 2018 Bankr. LEXIS 2437 (Bankr. S.D.Tex. Aug. 15,

2018), the bankruptcy court denied relief from the plan injunction in precisely the type of case

foreshadowed by the *Edgeworth* court. In that case, the plaintiffs (who did not file a proof of

claim against the debtors) sought post-confirmation relief from the plan injunction to pursue their

pre-petition personal injury claims against the debtors' insurers. The debtors' primary general

liability insurance had $1 million cap and a $1 million deductible. It also had a $5 million self-

insured retention before the excess layer kicked in. The court explained:

> The underlying tenet of the Fifth Circuit's holding is a balancing of
> the financial fresh start policy underlying the bankruptcy process
> with the limitation set forth in 11 U.S.C. § 524(e). *See Greiner v.
> Columbia Gas Transmission Corp. (In re Columbia Gas
> Transmission Corp.)*, 219 B.R. 716, 720 (S.D. West Va. 1998). The
> Court's analysis in *Jones v. Pilgrim's Pride, Inc.* is instructive on this
> issue. 741 F. Supp. 2d 1272 (N.D. Ala. 2010). In denying the
> plaintiff's request to pursue litigation claims solely for the purpose
> of collecting insurance proceeds, the Pilgram's Pride Court noted
> that there was effectively no primary insurance as the Debtor had a
> large self-insured retention. *Id.* at 1277-1278. *See also Columbia
> Gas Transmission Corp.*, 219 B.R. at 720; *DePippo v. Kmart Corp.*,
> 335 B.R. 290, 298 (S.D.N.Y. 2005. The relevant facts are largely
> undisputed. Mr. and Mrs. Nunez admit that they did not file a proof
> of claim. No assertion is made that they are not bound by the terms
> of the confirmed plan in this case. Rather, Mr. and Mrs. Nunez argue
> that although the Liberty Policy has a $1 million deductible and that
> a $5 million self-insured retention exists before any proceeds of the
> excess policy are available to satisfy their claims, it is not clear that
> the Debtors will have to actually pay those amounts. In essence, Mr.
> and Mrs. Nunez argue that the Edgeworth exception should apply
> because the Debtors could choose to breach their contractual
> obligations and refuse to pay the $1 million deductible or the $5
> million self-insured retention. The argument fails to address the fact
> that Liberty is holding the Debtor's cash as security for its
> performance. The Court is convinced that this is the type of situation
> recognized by the Edgeworth Court. In  this case, C&J Well is
> required to pay the first million, and five of the following six million
> in related expenses/recoveries. No legitimate argument exists that
> such circumstances would not frustrate C&J Well's discharge and
> the fresh start policy engrafted into the Bankruptcy Code. Mr. and
> Mrs. Nunez also argue that the fact that the Debtors' relevant

> insurance agreements were assumed under the confirmed plan
> requires a different analysis. The Court disagrees. The Edgeworth
> balancing remains unchanged. *See In re Chemtura Corp*., 2016
> Bankr. LEXIS 4056, at *61-62 (Bankr. S.D.N.Y. Nov. 23, 2016).

*Id*. at *8-10. *See also In re Jet Florida Systems, Inc*., 883 F.2d 970, 976 (11th Cir. 1989) (holding that § 524(a) does not preclude actions against a discharged debtor as a nominal defendant so plaintiff can purse an insurer but stating, "We are, however, concerned by the prospect that reversing the decision of the bankruptcy court in this case would frustrate the fresh-start policy embodied in the Code in one way -- by requiring the bankrupt to spend sums in defending this lawsuit. We are cognizant that in actions such as these, the cost of litigation can sometimes surpass the actual amount of liability. Therefore, to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation."); *Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 721 (S.D.W.V. 1998) (holding that permitting plaintiff to pursue her negligence suit against discharged debtor would violate the Bankruptcy Code's fresh-start policy because " [the debtor] has provided evidence that it, not [insurer], is responsible for costs of defending the lawsuit. Requiring [the debtor] to pay the costs of litigating its liability on Greiner's claim, which costs could be quite high, would violate the fresh-start policy of the Bankruptcy Code."); *Perez v. Cumberland Farms, Inc.,* 213 B.R. 622, 624 (D. Mass. 1997) ("Any economic loss to the Debtor would . . . result in the violation of the statutory injunction of 11 U.S.C. § 524(a)).

23.    The Bed, Bath & Beyond cases involve a liquidation; therefore, there is no reorganized debtor's "fresh start" to protect. There is, however, the expectation of creditors that is represented in the contract called the Plan. To allow these suits to go forward will open the floodgates and the Defense Costs will drain the estates resources (coming out of the secured

creditor's collateral and if there is anything left over after its Allowed Claims are satisfied, then

the pockets of other creditors who share under the Waterfall Recovery mechanism), all for the

benefit of the Holders of (at best) a Class 6 General Unsecured Claim that will, in the end, likely

fall within the SIR, and therefore, no insurance will be available.  How many dollars must the

estate (aka other creditors) spend to fund this gamble for the Movants?  Furthermore, the Plan

Administrator will have to spend time and incur expenses to respond to and defend against the

State Court Action as he and his small staff are trying to wind-down the Debtors and make

distributions to creditors.

### (ii) The hardship to the Movants by maintenance of the Plan Injunction does not considerably outweigh the hardship to the bankruptcy estates.

24.     The harm to Movants from keeping the Plan Injunction in place is that they are

deprived of the ability to potentially get their claim over $1,000,000, so they can obtain some

recovery from Safety National. The possibility of Movants' Claim exceeding $1 million is, as

noted above, very low. Eight years of loss data show only 3 claimants have pierced the $1

million settlement mark. And, as noted above, their gamble comes on the backs of other creditors

who bargained for the Debtors' assets to be distributed in accordance with the Plan. This factor

too weighs against modifying the Plan Injunction.

### (iii) Movants have not established any likelihood of prevailing on the merits.

25.     This factor weighs against modifying the Plan Injunction as Movants have

provided no evidence of the probability of his success on the merits of the State Court Action,

much less any evidence that their Claim will exceed the SIR.

26.     As the harm to the estates and other Creditors far outweighs the potential and

speculative prejudice to the Movants, the Court should deny relief from the Plan Injunction.

**B.**     **The Plan Injunction is enforceable against Movants.**

27.    Movants assert that the Plan Injunction is a *de facto* discharge (forbidden to a

liquidating debtor under 11 U.S.C. § 1141(d)(3)) and is unenforceable against them.

*Memorandum of Law*, at 8-9.  Not so. A temporary injunction, like the Plan Injunction, which

lasts only so long as the liquidating debtor has assets does not affect a *de facto* discharge and is

within the court's authority to issue pursuant to Bankruptcy Code section 105(a). As Judge

Greenblatt explained in *In re Kabbage Inc.,* 2023 Bankr. LEXIS 671 (Bankr. D. De. March 15,

2023) when approving a similar plan injunction:

> While the plan provides for the liquidation of the debtors, it does not
> create a separate post-confirmation liquidating trust that would be
> eligible to take free and clear title to the debtors' assets under §
> 1141(c). Instead, those assets remain with the legal entities that
> consisted of the prepetition debtors, which are referred to after the
> effective date of the plan as the Wind Down Estates. Those entities
> are directed by the Wind Down Officer. Because the legal entities
> that made up the prepetition debtors will not end up as corporate
> shells upon the effective date but will instead hold assets that are
> intended to be distributed to creditors under the plan, the parties had
> good reason to protect the debtors and the Wind Down Estates from
> the holders of prepetition claims who might seek to defeat the
> operation of the plan by taking action against the post-bankruptcy
> entities on account of their prepetition claims.

*Id.* at *3. The court continued:

> The debtors here, of course, do not need injunctive protection once
> they no longer have any assets. Their only concern was preventing
> creditors from acting against the post-effective date entities while
> they do have assets. The debtors have no interest in "trafficking in
> corporate shells." Once the entities have distributed their assets in
> accordance with the plan, and are reduced to corporate shells, there
> is no longer any need to protect them. . . . The readily available
> solution, therefore, is to afford those entities not permanent
> injunctive relief, but rather temporary injunctive relief that will
> remain in effect only as long as those entities hold assets. . . . The
> plan has thus been revised to so provide that the relief afforded to
> the debtors and the Wind Down Estates is temporary rather than
> permanent. The Court is satisfied that this is precisely the type of

interstitial, gap-filling authority that § 105(a) was intended to authorize.

*Id.* at *6-7.

28.     The State Court Action is enjoined by the Plan Injunction until such time as the Plan Administrator has liquidated all the Debtors' Assets and distributed them pursuant to the Plan. As is set forth in Goldberg Dec. II, while the Plan Administrator has made substantial progress, he has not liquidated all of the Debtor's Assets or distributed them under the Plan.

29.     Furthermore, this Court already approved the Plan Injunction in connection with confirmation, and Movants, who had notice of the bankruptcy proceeding on or about April 26, 2023, did not object to confirmation of the Plan or appeal the Confirmation Order that approved the Plan Injunction. *See In re Town Sports Int',* 2023 U.S. Dist. LEXIS 227402 (denying relief from the plan injunction to a pre-petition litigation claimant when the claimant did not object to confirmation). Movants cannot rely on that argument now to collaterally attack the Confirmation Order.

### III.     <u>CONCLUSION</u>

30.     In short, Movants have failed to establish "cause" to modify the Plan Injunction. The damage to the estates of having to incur up to a $1 million in Defense Costs far exceeds the harm to the Movants who have produced no evidence at all that their Claim will exceed the $1 million SIR. And even if it did, why should senior creditors, whose recoveries were bargained for pursuant to the confirmed Plan have to pay to fund Movants' gamble?  Movants' longshot attempt to "hit the jackpot" with a claim that exceeds $1 million will come out of the pockets of other, senior creditors and may even reduce the recovery to Class 6 General Unsecured Creditors (if there is one) in violation of the Plan.  Accordingly, the Court should deny the Motion.

Dated:  April 22, 2024          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
       bsandler@pszjlaw.com
       crobinson@pszjlaw.com


*Counsel to the Plan Administrator*

# EXHIBIT A

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | |
| **DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| Robert J. Feinstein (admitted *pro hac vice*) | |
| Bradford J. Sandler | |
| Colin R. Robinson | |
| PACHULSKI STANG ZIEHL & JONES LLP | |
| 780 Third Avenue, 34th Floor | |
| New York, NY 10017 | |
| Telephone:  (212) 561-7700 | |
| Facsimile:  (212) 561-7777 | |
| rfeinstein@pszjlaw.com | |
| bsandler@pszjlaw.com | |
| crobinson@pszjlaw.com | |
| | |
| *Counsel to the Plan Administrator* | |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: May 7, 2024 at 10:00 a.m. |

## DECLARATION OF PLAN ADMINISTRATOR MICHAEL GOLDBERG IN SUPPORT OF SUPPLEMENTAL OPPOSITION TO AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

Pursuant to 28 U.S.C. § 1746, I, Michael Goldberg, under penalty of perjury, declare as follows:

1.  I am the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath &

Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors"). I give this declaration in support of my

---

[1]  The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2]  Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

Supplemental Opposition (the "Supplemental Opposition") to the *Amended Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 and Request for Waiver of 14 Day Stay Imposed by Bankruptcy Rule 4001(a)(3)* [Docket No. 2723] (the "Amended Motion") filed on behalf of Penelope and Joseph Duczkowski ("Movants").[3]

2.      Except as otherwise indicated, the statements in this declaration are based on: (a) my personal knowledge of the Debtors' business operations since my appointment as Plan Administrator; (b) my review of relevant documents including the Amended Motion; (c) information provided to me by, or discussions with, members of my management team, other employees, or the Debtors' other advisors; and/or (d) my general experience and knowledge. I am authorized to submit this declaration. If called upon to testify, I can and will testify competently as to the facts set forth herein.

3.      A true and correct copy of the *Notice of Suggestion in Bankruptcy* filed in the State Court Action is attached as **Exhibit 1**.

4.      A true and correct copy of the *Notice of Dismissal* in the State Court Action is attached as **Exhibit 2**.

5.      A true and correct copy of the Proof of Claim filed by Movants is attached as **Exhibit 3**.

6.      The Debtors are their own insurer for all personal injury claims under $1 million. The general liability policy that is applicable to the Duczkowski Claim is GL 4062767 (the "Policy") with Safety National Casualty Corporation ("Safety National"). The Policy was assumed

---

[3] Capitalized terms that are not defined in this Declaration have the meaning given to them in the Supplemental Opposition.

by the Debtors pursuant to the Plan, and the Confirmation Order imposes upon me, as Plan Administrator, certain duties of cooperation with Safety National.

7.      Pursuant to a Self-Insured Retention Endorsement (the "SIR Endorsement"), the Policy has a $1 million per occurrence self-insured retention (the "SIR"). The SIR includes Defense Costs.

8.      A true and correct copy of the SIR Endorsement is attached as **Exhibit 4**.

9.      Historically, the Debtors were required to pay all legal expenses, other defense costs (experts, et cetera) and judgments or settlement amounts up to the $1 million SIR before Safety National paid anything under the SIR Policy. Safety National did not "front" Defense Costs and then seek reimbursement from the Debtors.

10.     I am informed and believe that from 2012-2020 (the years for which the personal injury cases were fairly developed and might provide an accurate predictor of costs associated with cases that were pending on the Petition Date), the Debtors paid $12.14 million in attorney's fees related to personal injury claims, or an average of $1.52 million per year. During that time, only 3 cases exceeded the $1 million SIR (inclusive of Defense Costs and settlement/judgment amounts).

11.     A true and correct copy of the *Case Management Order* issued in the State Court Action is attached as **Exhibit 5.**

12.     If the Court grants relief from the Plan Injunction to permit the State Court Action to move forward, I will have choose whether to (a) defend the case (which will, absent settlement, involve motion practice, discovery, pretrial proceedings and trial), causing the estates to incur tens or even hundreds of thousands of dollars in attorneys' fees; or (b) not defend the case in which case, either (i) Movants will take a default judgement against the Debtors (exposing the estates to a claim by Safety National that it has breached the terms of the Policy); or (ii) Safety National will

step in to defend and it may then assert an administrative claim against the Debtors.[4]  Under any possible scenario, the estates risk being drained for the benefit of two individuals who hold, at best, a disputed, unliquidated Class 6 General Unsecured Claim.

13.      Each dollar that I spend in Defense Costs is a dollar that is contractually obligated to senior creditors under the Waterfall Recovery mechanism in confirmed Plan. Moreover, should the I be able to collect sufficient Assets to make even a *de minimis* distribution to Holders of Allowed Class 6 General Unsecured Creditors, their *pro rata* recoveries will also be diminished by the money that the estates have had to spend in Defense Costs. Why should other creditors pay for Movants attempt to hit-the-jackpot by getting an over-the-SIR judgment, especially where, as here, as I previously noted, the estates may well be administratively insolvent. *See Declaration of Michael Goldberg in Support of Motion for Order Extending Period to Object to Claims* [Docket No. 2906], 5-6 ("Goldberg Dec. II") ("Absent a significant reduction in the Asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full.").

14.      If the Court grants the requested relief, my staff and I will have to spend time and incur expenses to respond to and defend against the State Court Action as we are trying to wind-down the Debtors and make distributions to creditors.

15.      Finally, granting relief from the Plan Injunction to Movants will embolden other personal injury claimants to seek relief which will expose the estates to tens or hundreds of thousands of dollars in Defense Costs. I am informed and believe that on the Petition Date,

---

[4] I do not concede Safety National's interpretation of the Policy or the SIR Endorsement and I reserve all rights, arguments, claims and defenses under the Policy and the SIR Endorsement.

approximately 55 personal injury cases were being litigated against the Debtors, 53 of which requested damages within the SIR of $1 million and two of which requested damages in excess of $1 million.

16.    For these reasons and for the arguments set forth in the Supplemental Opposition, I ask the Court to deny the Amended Motion.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 22, 2024                          /s/ Michael Goldberg
                                               By: Michael Goldberg
                                               In His Capacity as Plan Administrator to 20230930-
                                               DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond
                                               Inc.) and 73 affiliated debtors

# EXHIBIT 1



WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

April 26, 2023                                                    **Robert Fodera, Esq.**
                                                                 973.735.1465 (direct)
                                                                 718.496.7501 (mobile)
                                                                 Robert.Fodera@wilsonelser.com

Clerk of the Court
Superior Court, Union County
2 Broad Street
Elizabeth, New Jersey 07201

      Re:    **NOTICE OF BANKRUPTCY**
              **Penelope Duczkowski, et ano v. Bed Bath & Beyond, Inc.**
              **Docket No.: UNN-L-580-22**
              **File Number: 19823-00187**

Dear Sir/Madam:

This firm represents Defendant Bed Bath & Beyond Inc. ("Defendant") with respect to the above-referenced matter.

Please be advised that on April 23, 2023, Defendant filed a voluntary Chapter 11 petition for bankruptcy in the United States Bankruptcy Court for the District of New Jersey under Case No. 23-13359-VFP, thereby imposing an automatic stay pursuant to 11 U.S.C. § 362(a).

Enclosed herein please find a copy of the filed Chapter 11 bankruptcy petition along with a Notice of Filing of Bankruptcy Petition on behalf of Defendant Bed Bath & Beyond, Inc. <u>only</u>. Please advise if anything further is needed.

Thank you very much for your attention and courtesies.

Respectfully submitted,
Wilson Elser Moskowitz Edelman & Dicker LLP

*Robert Fodera*
Robert Fodera, Esq.

RF/lv
Encl.

7 Giralda Farms | Madison, NJ 07940 | p 973.624.0800 | f 973.624.0808 | wilsonelser.com

Albany, NY | Atlanta, GA | Austin, TX | Baltimore, MD | Beaumont, TX | Birmingham, AL | Boston, MA | Charlotte, NC | Chicago, IL | Dallas, TX | Denver, CO
Detroit, MI | Edwardsville, IL | Garden City, NY | Hartford, CT | Houston, TX | Jackson, MS | Las Vegas, NV | London, England | Los Angeles, CA | Louisville, KY
Madison, NJ | McLean, VA | Merrillville, IN | Miami, FL | Milwaukee, WI | Nashville, TN | New Orleans, LA | New York, NY | Orlando, FL | Philadelphia, PA | Phoenix, AZ
Raleigh, NC | San Diego, CA | San Francisco, CA | Sarasota, FL | Seattle, WA | Stamford, CT | St. Louis, MO | Washington, DC | West Palm Beach, FL | White Plains, NY

282300978v.1

# EXHIBIT A

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
**Gina Calabria, Esq. (Attorney I.D. No.: 29752002)**
**Robert Fodera, Esq. (Attorney I.D. No.: 048531998)**
**7 Giralda Farms**
**Madison, New Jersey 07940**
**Tel: (973) 624-0800 * Fax: (973) 624-0808**
**Attorneys for Defendant Bed Bath & Beyond Inc.**
**File No.: 19823-00187**

| | |
|---|---|
| PENELOPE DUCZKOWSKI AND JOSEPH DUCZKOWSKI, w/h, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION: UNION COUNTY<br>: DOCKET NO.: UNN-L-0580-22 |
| Plaintiffs, | : |
| v. | :       Civil Action |
| | : |
| BED BATH & BEYOND, INC., | : |
| | : |
| Defendants. | : |
| | : |

### NOTICE OF FILING OF BANKRUPTCY PETITION ON BEHALF OF DEFENDANT, BED BATH & BEYOND, INC., THEREBY IMPOSING AN AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

Defendant Bed Bath & Beyond Inc., by and through the undersigned counsel, hereby provides notice of the filing of a Voluntary Petition for Bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code on April 23, 2023, and pursuant to 11 U.S.C. § 362, an automatic stay of all proceedings as against Defendant Bed Bath & Beyond Inc., in the action above.

A true and correct copy of the Voluntary Petition for Bankruptcy is attached hereto as Exhibit "A."

Accordingly, as a result of the Bankruptcy filing, this action is stayed as against Bed Bath & Beyond Inc. in accordance with 11 U.S.C. § 362.

      **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
      **Attorneys for Defendant Bed Bath & Beyond Inc.**

      By:     /s/ *Robert Fodera*
             Robert Fodera, Esq.

Dated: April 26, 2023

282297990v.1

| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| **District of New Jersey** |
| (State) |
| Case number *(if known)*: _____   Chapter ___11___ |

☐ Check if this is an
amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
| --- | --- | --- |
| 1. | **Debtor's Name** | **Bed Bath & Beyond Inc.** |
| 2. | **All other names debtor used in the last 8 years**  Include any assumed names, trade names, and *doing business as* names | **N/A** |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **1  1  –  2  2  2  5  0  4  8  8** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| **650 Liberty Avenue** | |
| Number        Street | Number        Street |
| | P.O. Box |
| **Union, New Jersey 07083** | |
| City           State    Zip Code | City           State    Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| **Union County** | |
| County | Number        Street |
| | |
| | City           State    Zip Code |

| | | |
| --- | --- | --- |
| 5. | **Debtor's website** (URL) | **https://www.bedbathandbeyond.com/** |
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other. Specify: _____ |

| Debtor | **Bed Bath & Beyond Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

**4422 (Home Furnishings Stores)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☒ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.

| District | _____ | When | _____ MM/DD/YYYY | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ MM/DD/YYYY | Case number | _____ |

| Debtor | **Bed Bath & Beyond Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.

| Debtor | **See Rider 1** | Relationship | **Affiliate** |
|---|---|---|---|
| District | **District of New Jersey** | When | **04/23/2023** |
| Case number, if known | | | MM / DD / YYYY |

---

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

_____
Number        Street

_____
City                                    State        Zip Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

---

| ■ | **Statistical and administrative information** |
|---|---|

---

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

| | | | |
|---|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☒ 25,001-50,000 | |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 | |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 | |
| ☐ 200-999 | | | |

---

| Debtor | **Bed Bath & Beyond Inc.** | Case number *(if known)* | |
| | Name | | |

| 15. Estimated assets (on a consolidated basis) | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |
| 16. Estimated liabilities (on a consolidated basis) | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| | Request for Relief, Declaration, and Signatures |

**WARNING --**   Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **04/23/2023**
MM/ DD / YYYY

**✗** /s/ *Holly Etlin*                                    **Holly Etlin**
Signature of authorized representative of debtor       Printed name

Title   **Chief Financial Officer and Chief Restructuring Officer**

**18. Signature of attorney**   **✗** /s/ *Michael D. Sirota*         Date   **04/23/2023**
Signature of attorney for debtor                      MM/DD/YYYY

**Michael D. Sirota**
Printed name

**Cole Schotz P.C.**
Firm name

**Court Plaza North, 25 Main Street**
Number          Street

**Hackensack**                          **New Jersey**      **07601**
City                                    State          ZIP Code

**(201) 489-3000**                      **msirota@coleschotz.com**
Contact phone                           Email address

**014321986**               **New Jersey**
Bar number                  State

Official Form 201        Voluntary Petition for Non-Individuals Filing for Bankruptcy        page 4

Official Form 201A (12/15)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re: )  Chapter 11
)
BED BATH & BEYOND INC., )  Case No. 23-_____(___)
)
Debtor. )
)

### Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11

1.  If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is   **0-20214**

2.  The following financial data is the latest available information and refers to the debtor's condition on **August 27, 2022/November 26, 2022**

| | | | |
|---|---|---|---|
| (a) | Total assets | $ | **4,401,426,000** |
| (b) | Total debts (including debts listed in 2.c., below) | $ | **5,200,069,000** |
| (c) | Debt securities held by more than 500 holders | | **3** |

Approximate number of holders:

| | | | | |
|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☒ | $ **284,391,000** | **3,650** |
| secured ☐ | unsecured ☐ | subordinated ☒ | $ **225,000,000** | **4,125** |
| secured ☐ | unsecured ☐ | subordinated ☒ | $ **675,010,000** | **2,175** |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | |

| | | |
|---|---|---|
| (d) | Number of shares of preferred stock | **180** |
| (e) | Number of shares of common stock | **739,056,836**[1] |

Comments, if any:   **Debt securities in section 2(c) are as of August 27, 2022. All other information is as of November 26, 2022, the date of the Company's last quarterly filing.**

3.  Brief description of debtor's business:   **An omni-channel retailer offering a wide assortment or merchandise in the home, baby, beauty and wellness markets and operates under the names Bed Bath & Beyond, buybuy BABY and Harmon, Harmon Face Values or Face Values.**

4.  List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:
**N/A**

---

[1]  Total outstanding preferred stock in section 2(d) and common stock in section 2(e) reflects the latest available, unaudited information and is based solely on the Debtor's records.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

United States Bankruptcy Court for the:

**District of New Jersey**

(State)

Case number *(if known)*: _____   Chapter   11

☐ Check if this is an
amended filing

## Rider 1
## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of New Jersey for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Bed Bath & Beyond Inc.

- Bed Bath & Beyond Inc.
- Alamo Bed Bath & Beyond Inc.
- BBB Canada LP Inc.
- BBB Value Services Inc.
- BBBY Management Corporation
- BBBYCF LLC
- BBBYTF LLC
- Bed Bath & Beyond of Annapolis, Inc.
- Bed Bath & Beyond of Arundel Inc.
- Bed Bath & Beyond of Baton Rouge Inc.
- Bed Bath & Beyond of Birmingham Inc.
- Bed Bath & Beyond of Bridgewater Inc.
- Bed Bath & Beyond of California Limited Liability Company
- Bed Bath & Beyond of Davenport Inc.
- Bed Bath & Beyond of East Hanover Inc.
- Bed Bath & Beyond of Edgewater Inc.
- Bed Bath & Beyond of Falls Church, Inc.
- Bed Bath & Beyond of Fashion Center, Inc.
- Bed Bath & Beyond of Frederick, Inc.
- Bed Bath & Beyond of Gaithersburg Inc.
- Bed Bath & Beyond of Gallery Place L.L.C.
- Bed Bath & Beyond of Knoxville Inc.
- Bed Bath & Beyond of Lexington Inc.
- Bed Bath & Beyond of Lincoln Park Inc.
- Bed Bath & Beyond of Louisville Inc.
- Bed Bath & Beyond of Mandeville Inc.

- Bed Bath & Beyond of Manhattan, Inc.
- Bed Bath & Beyond of Opry Inc.
- Bed Bath & Beyond of Overland Park Inc.
- Bed Bath & Beyond of Palm Desert Inc.
- Bed Bath & Beyond of Paradise Valley Inc.
- Bed Bath & Beyond of Pittsford Inc.
- Bed Bath & Beyond of Portland Inc.
- Bed Bath & Beyond of Rockford Inc.
- Bed Bath & Beyond of Towson Inc.
- Bed Bath & Beyond of Virginia Beach Inc.
- Bed Bath & Beyond of Waldorf Inc.
- Bed Bath & Beyond of Woodbridge Inc.
- bed 'n bath Stores Inc.
- Buy Buy Baby of Rockville, Inc.
- Buy Buy Baby of Totowa, Inc.
- Buy Buy Baby, Inc.
- BWAO LLC
- Chef C Holdings LLC
- Decorist, LLC
- Deerbrook Bed Bath & Beyond Inc.
- Harmon of Brentwood, Inc.
- Harmon of Caldwell, Inc.
- Harmon of Carlstadt, Inc.
- Harmon of Franklin, Inc.
- Harmon of Greenbrook II, Inc.
- Harmon of Hackensack, Inc.

- Harmon of Hanover, Inc.
- Harmon of Hartsdale, Inc.
- Harmon of Manalapan, Inc.
- Harmon of Massapequa, Inc.
- Harmon of Melville, Inc.
- Harmon of New Rochelle, Inc.
- Harmon of Newton, Inc.
- Harmon of Old Bridge, Inc.
- Harmon of Plainview, Inc.
- Harmon of Raritan, Inc.
- Harmon of Rockaway, Inc.
- Harmon of Shrewsbury, Inc.
- Harmon of Totowa, Inc.
- Harmon of Wayne, Inc.
- Harmon of Westfield, Inc.
- Harmon of Yonkers, Inc.
- Harmon Stores, Inc.
- Liberty Procurement Co. Inc.
- Of a Kind, Inc.
- One Kings Lane LLC
- San Antonio Bed Bath & Beyond Inc.
- Springfield Buy Buy Baby, Inc.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| BED BATH & BEYOND INC., | ) Case No. 23-_____(___) |
|  | ) |
| Debtor. | ) (Joint Administration Requested) |

### LIST OF EQUITY SECURITY HOLDERS[1]

| Equity Holder | Address of Equity Holder | Type of Equity Security[2] | Percentage of Equity Held |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

---

[1]  This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case. By the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) File A Consolidated List of the Debtors' 30 Largest Unsecured Creditors (B) File A Consolidated List of Creditors in Lieu of Submitting A Separate Mailing Matrix for Each Debtor, (C) Redact Certain Personally Identifiable Information, (D) Waiving the Requirement to File A List of Equity Holders and Provide Notices Directly to Equity Security Holders, and (II) Granting Related Relief* filed contemporaneously herewith, the Debtor is requesting a waiver of the requirement under Bankruptcy Rule 1007 to file a list of all of its equity security holders.

[2]  Outstanding warrants are not reflected in ownership.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| BED BATH & BEYOND INC., | ) Case No. 23-_____(___) |
|  | ) |
| Debtor. | ) (Joint Administration Requested) |

### <u>CORPORATE OWNERSHIP STATEMENT</u>

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, there are no corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interests.

**Fill in this information to identify the case:**

Debtor name:  **Bed Bath & Beyond Inc, et al.**

United States Bankruptcy Court for the  **District of New Jersey**
                                          (State)

Case number (*If known*):

☐ Check if this is an
   amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders[1]

12/15

A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | BNY MELLON 500 ROSS ST 12TH FLOOR PITTSBURGH, PA 15262 | CLAYTON COLQUITT (412)-236-5807 CLAYTON.COLQUITT@BNYMELLON.COM | UNSECURED BONDS | | | | $1,184,694,000.00 |
| 2 | PERSONALIZATIONMALL 51 SHORE DR BURR RIDGE, IL 60527 | ROBERT TURNER (630)-910-6000 ROBERTT@PMALL.COM | TRADE PAYABLE | | | | $11,095,721.42 |
| 3 | INTERSOFT DATA LABS INC 1330 W FULTON MARKET CHICAGO, IL 60607 | RALPH LIUZZO (410)-461-4723 RALPH.LIUZZO@INTSOF.COM | TRADE PAYABLE | | | | $6,836,763.63 |
| 4 | FEDERAL HEATH SIGN COMPANY LLC P.O. BOX 678203 TAMPA, FL 33626 | SUSAN ALDRIDGE (800)-342-2597 SALDRIDGE@FEDERALHEATH.COM | TRADE PAYABLE | | | | $6,770,268.26 |
| 5 | KDM POPSOLUTIONS GROUP 10450 MEDALLION CINCINNATI, OH 45241 | BILL ZIMMERMAN (513)-769-3500 B.ZIMMERMAN@KDMPOP.COM | TRADE PAYABLE | | | | $6,641,012.24 |
| 6 | COMMISSION JUNCTION INC 530 E. MONTECITO STREET #106 SANTA BARBARA, CA 93103 | SOPHIE RAMOS (805)-971-3037 CJAR@CJ.COM | TRADE PAYABLE | | | | $6,162,076.79 |
| 7 | IDX 101 RIVER RIDGE JEFFERSONVILLE, IN 47130 | ROBERT GIOVINO (800)-939-4170 ROBERT.GIOVINO@IDXCORPORATION.COM | TRADE PAYABLE | | | | $4,920,884.34 |

---

[1]  On a consolidated basis.  The information herein shall not constitute an admission of liability by, nor is it binding on, and Debtors with respect to all or any portion of the claims listed below.  Moreover, nothing herein shall affect any Debtor's right to challenge the amount or characterization of any claim at a later date.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8 | NATIONAL TREE COMPANY 2 COMMERCE DRIVE CRANFORD, NJ 07016 | DONNA CYRIL (800)-280-8733 DONNA@NATIONALTREE.COM | TRADE PAYABLE | | | $4,527,134.54 |
| 9 | NORTH AMERICAN CORPORATION 2101 CLAIRE COURT GLENVIEW, IL 60025 | KRISTIE SCHNIER (847)-832-4000 KSCHNIER@NA.COM | TRADE PAYABLE | | | $4,384,027.43 |
| 10 | KEECO LLC 30736 WIEGMAN ROAD HAYWARD, CA 94544 | ANDREA GRASSI (212)-685-9077 ANDREAG@GRASSIASSOCIATESINC.COM | TRADE PAYABLE | | | $4,231,687.55 |
| 11 | FEDEX P.O. BOX 371461 PITTSBURGH, PA 15250 | GREGORY DI SESSA (201)-787-0091 GJDISESSA@FEDEX.COM | TRADE PAYABLE | | | $3,884,415.89 |
| 12 | TEMPUR-PEDIC 2 COMMERCE DRIVE CRANFORD, NJ 07016 | CINDY TREAGER (859)-455-2483 CINDY.TREAGER@TEMPURSEALY.COM | TRADE PAYABLE | | | $3,733,616.10 |
| 13 | FACEBOOK, INC. 15161 COLLECTIONS CENTER DRIVE CHICAGO, IL 60693 | MARVIN ROBLES (512)-543-2942 IDOAN@FACEBOOK.COM | TRADE PAYABLE | | | $3,428,867.98 |
| 14 | ARTSANA USA INC 1826 WILLIAM PENN WAY LANCASTER, PA 17601 | STEVE RUBIN (877)-424-4226 STEVE.RUBIN@ARTSANA.COM | TRADE PAYABLE | | | $3,323,738.80 |
| 15 | LIFETIME BRANDS INC 150 EAST 58TH STREET NEW YORK, NY 10155 | CAROL MARKS (609)-241-7321 CAROL.MARKS@LIFETIMEBRANDS.COM | TRADE PAYABLE | | | $3,279,438.28 |
| 16 | KEPLER GROUP LLC P O BOX 419271 BOSTON, MA 02241 | HANNAH GROBMYER (646)-524-6896 HGROBMYER@KEPLERGRP.COM | TRADE PAYABLE | | | $3,260,123.50 |
| 17 | WILLIAM CARTER CO. 3438 PEACHTREE ROAD NE ATLANTA, GA 30326 | VANNESCIA WATKINS-BANKS (646)-677-0866 VANNESCIA.WATKINS-BANKS@CARTERS.COM | TRADE PAYABLE | | | $3,143,426.77 |
| 18 | TESTRITE PRODUCTS CORP. 1900 S BURGUNDY PLACE ONTARIO, CA 91761 | CLAUDIA VEGA (909)-605-9899 CLAUDIA.V@TESTRITE-USA.COM | TRADE PAYABLE | | | $3,051,808.69 |
| 19 | VERIZON BUSINESS NETWORK ONE VERIZON WAY BASKING RIDGE, NJ 07920 | NORMA MCEWAN (866)-925-0077 NORMA.MCEWAN@VERIZON.COM | TRADE PAYABLE | | | $2,962,792.95 |
| 20 | Pinterest, Inc. 651 BRANNAN ST SAN FRANCISCO, CA 94107 | COLE REUTTER (415)-62-7100 AR@PINTEREST.COM | TRADE PAYABLE | | | $2,839,480.57 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 21 | BRIDGETREE LLC 133 NORTH MAIN STREET MOORESVILLE, NC 28115 | MICHELE BOVE (704)-604-8708 MBOVE@BRIDGETREE.COM | TRADE PAYABLE | | | | $2,658,031.85 |
| 22 | CITRUS AD INTERNATIONAL INC P.O. BOX 7410138 Chicago, IL 60674 | STEPHANIE RICHMOND (813)-451-4794 STEPHANIE.RICHMOND@CITRUSAD.COM | TRADE PAYABLE | | | | $2,639,065.54 |
| 23 | KEURIG GREEN MOUNTAIN INC. PO BOX 414159 BOSTON, MA 02241 | ANDREW ARCHAMBAULT (781)-460-4507 ARCHAMBAULT@KEURIG.COM | TRADE PAYABLE | | | | $2,637,919.04 |
| 24 | THE KNOT WORLDWIDE INC PO BOX 32177 NEW YORK, NY 10087 | ASHLEY BERGEN (877)-331-7752 ABERGEN@THEKNOTWW.COM | TRADE PAYABLE | | | | $2,628,538.02 |
| 25 | SHARKNINJA SALES COMPANY 89 A STREET NEEDHAM, MA 02494 | CAROL WEINBERG (855)-427-5127 CWEINBERG@SHARKNINJA.COM | TRADE PAYABLE | | | | $2,622,349.48 |
| 26 | LENOX CORPORATION 1414 RADCLIFFE STREET BRISTOL, PA 19007 | CYNTHIA LAFFERTY (732)-642-7332 CYNTHIA_LAFFERTY@LENOX.COM | TRADE PAYABLE | | | | $2,578,451.71 |
| 27 | BLUE YONDER INC 15059 N SCOTTSDALE RD SCOTTSDALE, AZ 85254 | DEBORAH COLEY (480)-308-3000 DEBORAH.COLEY@BLUEYONDER.COM | TRADE PAYABLE | | | | $2,483,355.00 |
| 28 | F 3 METALWORX INC 12069 EAST MAIN ROAD NORTH EAST, PA 16428 | LORENA UNTALAN (716)-439-8771 LUNTALAN@F3METALWORX.COM | TRADE PAYABLE | | | | $2,480,004.13 |
| 29 | MADIX INC. 500 AIRPORT RD TERRELL, TX 75160 | SCOTT SCHERBAK (800)-527-2129 SSCHERBA@MADIXINC.COM | TRADE PAYABLE | | | | $2,453,870.05 |
| 30 | GRANITE TELECOMMUNICATIONS LLC P.O. BOX 983119 BOSTON, MA 02298 | LISA BURTON (866)-847-5500 LMARIEBURTON@GRANITENET.COM | TRADE PAYABLE | | | | $2,413,661.88 |

# OMNIBUS RESOLUTION OF THE
# BOARD OF DIRECTORS, OF BED BATH & BEYOND INC.

## April 22, 2023

The requisite members of the board of directors (the "**Board**") of Bed Bath & Beyond Inc., a New York corporation ("**Bed Bath & Beyond**" or the "**Company**"), organized and existing under the internal laws of New York, as set forth in the Company's charter of incorporation, hereby take the following actions and adopt the following resolutions pursuant to the Company's bylaws and the applicable laws of the state or country of incorporation of the Company.

1. <u>Resolutions</u>

**WHEREAS**, the Board, having reviewed and considered (i) the filing of a voluntary petition for relief for the Company under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "**Bankruptcy Code**") pursuant to applicable law and in accordance with the requirements of the Company's governing documents and applicable law (the "**Restructuring Matters**"); and (ii) to the extent applicable, authorizing entry into and performance under the DIP Facility Documents as defined herein,

**WHEREAS**, on February 2, 2023, pursuant to Article IV, Section 1 of the Bylaws of the Company, the Board previously appointed Holly Etlin as Interim Chief Financial Officer of the Company,

**WHEREAS**, pursuant to Article IV, Section 1 of the Bylaws of the Company, the Board deems it advisable and in the best interests of the Company and its shareholders to appoint Holly Etlin as Chief Financial Officer,

**WHEREAS**, the Board having reviewed and considered the materials presented by the management of the Company and the Company's financial and legal advisors, and having had adequate opportunity to consult such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Company,

**NOW, THEREFORE, IT IS HEREBY RESOLVED**, that, pursuant to the articles of incorporation and applicable governing documents of the Company, the undersigned do hereby adopt the following resolutions:

### *Chapter 11 Filing*

**RESOLVED**, in the business judgment of the Board it is desirable and in the best interest of the Company, the stakeholders, the creditors, and other parties in interest, that the Company files or causes to be filed voluntary petitions for relief (the "**Bankruptcy Petitions**") under the provisions of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States, and, in accordance with the requirements in the Company's governing documents and applicable law, hereby consents to, authorizes and approves, the filing of the Bankruptcy Petitions;

RESOLVED, any director or other duly appointed officer of the Company (collectively, the "**Authorized Persons**"), which shall include the Chief Restructuring Officer, the Chief Executive Officer, Chief Financial Officer, General Counsel, any Executive Vice President, or any Senior Vice President, shall be, and each of them individually hereby is, authorized and directed for and on behalf of the Company to take all actions (including, without limitation, to negotiate and execute any documents, certificates, supplemental agreements, and instruments) to act as signatory and attorney on behalf of the Company in respect of the Restructuring Matters and/or any persons to whom such Authorized Persons and/or officers delegate certain responsibilities, be, and hereby are, authorized to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company's or any of its subsidiary's businesses.

### Appointment of Chief Restructuring Officer

RESOLVED, that Holly Etlin be, and hereby is, appointed to serve as the Chief Restructuring Officer of each Company;

RESOLVED, the Chief Restructuring Officer shall have such authority with respect to the Companies as is described in that certain engagement letter dated as of April 21, 2023, by and among the Company and AP Services, LLC (the "**Engagement Letter**");

RESOLVED, that Ms. Etlin shall be and is hereby authorized to manage the chapter 11 cases and court-supervised liquidation and sale process, and shall report directly to and serve at the direction of an ad hoc committee of the following directors of the Boards, Carol Flaton, Pamela Corrie, Jonathan Foster, and Joshua Schechter, in accordance with the terms and conditions of the Engagement Letter and these resolutions;

RESOLVED, that the Engagement Letter is hereby approved, and any Authorized Person, acting alone or with one or more Authorized Persons, be, and each of them hereby is, authorized, empowered, and directed to execute, deliver, and perform each Company's obligations under the Engagement Letter on behalf of the Companies and in its name with such changes therein or additions, deletions, or modifications thereto as the Authorized Person signing the same may approve, such approval may be conclusively evidenced by such Authorized Person's execution and delivery of the Engagement Letter.

### Appointment of Chief Financial Officer

RESOLVED, that Holly Etlin be, and hereby is, appointed and elected to serve as an officer of the Company and to hold the position of Chief Financial Officer;

RESOLVED, that Ms. Etlin shall serve in accordance with the Bylaws, as shall be in effect from time to time, with such other authority and responsibility as is customary for such position and title and shall act in such capacity until her successor is duly elected and qualified or, if earlier, until her successor has been duly elected or until her death, resignation or removal; and

RESOLVED, that, as an officer of the Company, Ms. Etlin is authorized to sign and deliver any agreement in the name of the Company and to otherwise obligate the Company in any respect relating to matters of the business of the Company, and to delegate such authority

in her discretion, within the policies of the Company as approved from time to time by the Board.

### *Retention of Professionals*

**RESOLVED**, each of the Authorized Persons, be, and hereby are, authorized, empowered, and directed to employ on behalf of the Company: (i) the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "**Kirkland**") as bankruptcy counsel; (ii) the law firm of Cole Schotz as local bankruptcy counsel; (iii) Lazard as investment banker; (iv) AlixPartners LLP as restructuring advisor; (v) Deloitte as tax advisor; (vi) Kroll Restructuring Administration as claims and noticing agent; and (vii) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Authorized Persons deem necessary, appropriate or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorized Persons, be, and hereby are authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

**RESOLVED**, each of the Authorized Persons, be, and hereby are, authorized, empowered and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation that the Authorized Persons in their absolute discretion deem necessary, appropriate or desirable in accordance with these resolutions.

### *Use of Cash Collateral, Debtor-in-Possession Financing, and Adequate Protection*

**RESOLVED**, to the extent applicable to the Companies, in the business judgment of the Authorizing Bodies it is desirable and in the best interest of the Companies, their stakeholders, their creditors, and other parties in interest to obtain the benefits of (i) the use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which is security for certain of the Companies' prepetition secured lenders (the "**Prepetition Secured Lenders**") under certain credit facilities by and among the Companies, the guarantors party thereto, and the lenders party thereto; and (ii) the incurrence of debtor-in-possession financing obligations ("**DIP Financing**") by entering into that certain Superpriority Senior Secured Debtor-in-Possession Term Loan Credit Agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among Bed Bath & Beyond, certain of the Companies, the financial institutions from time to time party thereto and their successors and assigns (collectively the "**DIP Lenders**"), Sixth Street Specialty Lending, Inc. in its capacity as administrative agent for the DIP Lenders (in such capacity and together with any successor or assigns, the "**DIP Agent**") on the terms set forth therein;

**RESOLVED**, in order to use and obtain the benefits of DIP Financing and the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, each Company will provide certain adequate protection to the Prepetition Secured Lenders (the "**Adequate Protection Obligations**") as documented in proposed interim and final orders (collectively, the "**Financing Orders**") to be submitted for approval of the Bankruptcy Court, and, to the extent that each Company is required to obtain consent from the Prepetition Secured Lenders to enter

into any of the DIP Facility Documents, as defined herein, such consent has been (or will be) obtained from the Consenting Creditors;

RESOLVED, in the business judgment of the Authorizing Bodies, the form, terms, and provisions of the DIP Credit Agreements and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents required to consummate the transaction considered by the Financing Orders (collectively, the "**DIP Facility Documents**"), substantially in the forms circulated to the Authorizing Bodies, and each Company's execution, delivery and performance of its obligations under the DIP Facility Documents, including without limitation the grant of security interests under the DIP Facility Documents, and any borrowings or guaranty therewith, be, and hereby are, in all respects, authorized and approved:

RESOLVED, each Company will obtain benefits from the incurrence of the borrowings under the DIP Credit Agreement and the other obligations under the DIP Credit Agreement and the other Loan Documents (as defined in the DIP Credit Agreement) which are necessary and convenient to the conduct, promotion, and attainment of the business of such Company;

RESOLVED, to the extent applicable, each Company shall be, and is hereby, authorized to enter into the DIP Facility Documents and incur the obligations thereunder (the "**DIP Obligations**"), including the borrowing of the loans under the DIP Credit Agreement, and other obligations related to the DIP Financing and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Facility Documents, including granting liens on and security interests in its assets, including the Collateral (as defined in the DIP Credit Agreement), to the DIP Agent, and each of the Authorized Persons be, and hereby are, authorized, empowered, and directed in the name of, and on behalf of, each Company to execute deliver, and perform all of the obligations and the transactions contemplated under each of the DIP Facility Documents in the name and on behalf of each Company, with such changes, additions, and modifications thereto as such Authorized Person shall approve, with such approval to be conclusively evidenced by such Authorized Person's execution and delivery thereof;

RESOLVED, each of the Authorized Persons be, and hereby are, authorized, in the name and on behalf of each Company, to take all such further actions, or cause all such further actions to be taken and to execute and deliver all such further agreements, documents, instruments, certificates recordings, and filings, in the name and on behalf of each Company, as in the determination of such Authorized Person shall be necessary, proper, or advisable in order to fully carry out the intent and accomplish the purposes of the foregoing resolutions and to consummate the transactions contemplated thereby, such authority to be conclusively evidenced by the execution of any document or the taking of any such action by such Authorized Person;

RESOLVED, each of the Authorized Persons be, and hereby are, authorized, in the name and on behalf of each Company, to enter into any guarantees as described or contemplated by the DIP Facility Documents or any other documents, certificates, instruments, agreements, intercreditor agreements, any extension amendment, any incremental agreement, or any other amendment required to consummate the transactions contemplated by the DIP Facility Documents and perform its obligations thereunder and to guarantee the payment and performance of the DIP Obligations of the Companies and any other guarantor thereunder;

RESOLVED, each of the Authorized Persons be, and hereby are, authorized, empowered, and directed in the name of, and on behalf of, each Company to seek authorization to incur the DIP Obligations and approval to use Cash Collateral pursuant to the Financing

Orders, and any Authorized Person be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary to implement the postpetition financing, including the Adequate Protection Obligations to the Prepetition Secured Lenders in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for entry into the DIP Facility Documents and the use of Cash Collateral in connection with the chapter 11 case, which agreements may require the Companies to grant adequate protection and liens to the Prepetition Secured Lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Companies pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Person approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

RESOLVED, each of the Authorized Persons be, and hereby are, authorized, directed, and empowered, in the name of, and on behalf of, the Company to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, each of the transactions contemplated by the DIP Facility Documents and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or required documents to which the Company is or will be party or any order entered into in connection with the chapter 11 case (together with the DIP Facility Documents and the Financing Orders, collectively, the "**Financing Documents**") and to incur and pay or cause to be paid all related fees and expenses, with such changes, additions and modifications thereto as an Authorized Person executing the same shall approve;

RESOLVED, the Company, as debtors and debtors-in-possession under the Bankruptcy Code be, and hereby are, authorized, empowered, and directed to incur any and all obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the Financing Documents, including granting liens on its assets to secure such obligations; and

RESOLVED, each of the Authorized Persons, be, and hereby are, authorized, empowered, and directed in the name of, and on behalf of, the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the postpetition financing or any of the Financing Documents or to do such other things which shall in his or her sole business judgment be necessary, desirable, proper, or advisable in order to perform the DIP Obligations and to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his or her or their execution thereof.

### *Further Actions and Prior Actions*

RESOLVED, the Company is hereby authorized to authorize (and the Company hereby authorizes) any direct or indirect subsidiary of the Company or any entity of which such Company or any subsidiary of such Company is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorized in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary or such Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law).

**RESOLVED**, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by the Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute, acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Restructuring Matters.

**RESOLVED**, each of the Authorized Persons (and their designees and delegates) be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolution adopted herein.

**RESOLVED**, the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the governing documents of the Company, or hereby waives any right to have received such notice.

**RESOLVED**, all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Board.

**RESOLVED**, any Authorized Person be, and each of them hereby is, authorized to do all such other acts, deeds and other things as the Company itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

*       *       *       *       *

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | **Bed Bath & Beyond Inc.** |
| United States Bankruptcy Court for the: | **District of New Jersey** |
| | (State) |
| Case number (If known): | |

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ Amended Schedule

☒ *Chapter 11 or 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒ Other document that requires a declaration **List of Equity Security Holders, Corporate Ownership Statement, and Certification of Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

| | | |
|---|---|---|
| Executed on | **04/23/2023** | ☒ /s/ *Holly Etlin* |
| | MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | | **Holly Etlin** |
| | | Printed name |
| | | **Chief Financial Officer and Chief Restructuring Officer"** |
| | | Position or relationship to debtor |

**Official Form 202**          **Declaration Under Penalty of Perjury for Non-Individual Debtors**

# EXHIBIT 2

**PREPARED BY THE COURT**

|  |  |
|---|---|
| PENELOPE DUCZKOWSKI AND JOSEPH DUCZKOWSKI, W/H | SUPERIOR COURT OF NEW JERSEY CIVIL LAW DIVISION UNION COUNTY |
| Plaintiff(s), | Docket No: UNN-L- 580-22 |
| v. | |
| BED BATH & BEYOND, ETAL | **ORDER OF DISMISSAL** (Bankruptcy) |
| Defendant(s). | |

The Court, having been advised that the Defendant Bed Bath & Beyond, in the above

entitled action has filed a Bankruptcy petition in the United States Bankruptcy Court, hereby

dismiss the Complaint against said defendant without prejudice subject to reinstatement without

formal motion and without cost if the Bankruptcy proceedings do not fully dispose of all issues

between the parties.

**HON. JOHN G HUDAK, J.S.C.**

Dated:
Cc: All Counsel

# EXHIBIT 3

**United States Bankruptcy Court, District of New Jersey (Newark)**

**Fill in this information to identify the case (Select only one Debtor per claim form)**

| | | | |
|---|---|---|---|
| ☑ Bed Bath & Beyond Inc. (Case No. 23-13359) | ☐ Alamo Bed Bath & Beyond Inc. (Case No. 23-13360) | ☐ BBB Canada LP Inc. (Case No. 23-13361) | ☐ BBB Value Services Inc. (Case No. 23-13362) |
| ☐ BBBY Management Corporation (Case No. 23-13363) | ☐ BBBYCF LLC (Case No. 23-13364) | ☐ BBBYTF LLC (Case No. 23-13365) | ☐ bed 'n bath Stores Inc. (Case No. 23-13396) |
| ☐ Bed Bath & Beyond of Annapolis, Inc. (Case No. 23-13366) | ☐ Bed Bath & Beyond of Arundel Inc. (Case No. 23-13367) | ☐ Bed Bath & Beyond of Baton Rouge Inc. (Case No. 23-13368) | ☐ Bed Bath & Beyond of Birmingham Inc. (Case No. 23-13369) |
| ☐ Bed Bath & Beyond of Bridgewater Inc. (Case No. 23-13370) | ☐ Bed Bath & Beyond of California Limited Liability Company (Case No. 23-13371) | ☐ Bed Bath & Beyond of Davenport Inc. (Case No. 23-13372) | ☐ Bed Bath & Beyond of East Hanover Inc. (Case No. 23-13373) |
| ☐ Bed Bath & Beyond of Edgewater Inc. (Case No. 23-13374) | ☐ Bed Bath & Beyond of Falls Church, Inc. (Case No. 23-13375) | ☐ Bed Bath & Beyond of Fashion Center, Inc. (Case No. 23-13376) | ☐ Bed Bath & Beyond of Frederick, Inc. (Case No. 23-13377) |
| ☐ Bed Bath & Beyond of Gaithersburg Inc. (Case No. 23-13378) | ☐ Bed Bath & Beyond of Gallery Place L.L.C. (Case No. 23-13379) | ☐ Bed Bath & Beyond of Knoxville Inc. (Case No. 23-13380) | ☐ Bed Bath & Beyond of Lexington Inc. (Case No. 23-13381) |
| ☐ Bed Bath & Beyond of Lincoln Park Inc. (Case No. 23-13382) | ☐ Bed Bath & Beyond of Louisville Inc. (Case No. 23-13383) | ☐ Bed Bath & Beyond of Mandeville Inc. (Case No. 23-13384) | ☐ Bed, Bath & Beyond of Manhattan, Inc. (Case No. 23-13397) |
| ☐ Bed Bath & Beyond of Opry Inc. (Case No. 23-13385) | ☐ Bed Bath & Beyond of Overland Park Inc. (Case No. 23-13386) | ☐ Bed Bath & Beyond of Palm Desert Inc. (Case No. 23-13387) | ☐ Bed Bath & Beyond of Paradise Valley Inc. (Case No. 23-13388) |
| ☐ Bed Bath & Beyond of Pittsford Inc. (Case No. 23-13389) | ☐ Bed Bath & Beyond of Portland Inc. (Case No. 23-13390) | ☐ Bed Bath & Beyond of Rockford Inc. (Case No. 23-13391) | ☐ Bed Bath & Beyond of Towson Inc. (Case No. 23-13392) |
| ☐ Bed Bath & Beyond of Virginia Beach Inc. (Case No. 23-13393) | ☐ Bed Bath & Beyond of Waldorf Inc. (Case No. 23-13394) | ☐ Bed Bath & Beyond of Woodbridge Inc. (Case No. 23-13395) | ☐ Buy Buy Baby of Rockville, Inc. (Case No. 23-13398) |
| ☐ Buy Buy Baby of Totowa, Inc. (Case No. 23-13399) | ☐ Buy Buy Baby, Inc. (Case No. 23-13400) | ☐ BWAO LLC (Case No. 23-13401) | ☐ Chef C Holdings LLC (Case No. 23-13402) |
| ☐ Decorist, LLC (Case No. 23-13403) | ☐ Deerbrook Bed Bath & Beyond Inc. (Case No. 23-13404) | ☐ Harmon of Brentwood, Inc. (Case No. 23-13405) | ☐ Harmon of Caldwell, Inc. (Case No. 23-13406) |
| ☐ Harmon of Carlstadt, Inc. (Case No. 23-13407) | ☐ Harmon of Franklin, Inc. (Case No. 23-13408) | ☐ Harmon of Greenbrook II, Inc. (Case No. 23-13409) | ☐ Harmon of Hackensack, Inc. (Case No. 23-13410) |
| ☐ Harmon of Hanover, Inc. (Case No. 23-13411) | ☐ Harmon of Hartsdale, Inc. (Case No. 23-13412) | ☐ Harmon of Manalapan, Inc. (Case No. 23-13413) | ☐ Harmon of Massapequa, Inc. (Case No. 23-13414) |
| ☐ Harmon of Melville, Inc. (Case No. 23-13415) | ☐ Harmon of New Rochelle, Inc. (Case No. 23-13416) | ☐ Harmon of Newton, Inc. (Case No. 23-13417) | ☐ Harmon of Old Bridge, Inc. (Case No. 23-13418) |
| ☐ Harmon of Plainview, Inc. (Case No. 23-13419) | ☐ Harmon of Raritan, Inc. (Case No. 23-13420) | ☐ Harmon of Rockaway, Inc. (Case No. 23-13421) | ☐ Harmon of Shrewsbury, Inc. (Case No. 23-13422) |
| ☐ Harmon of Totowa, Inc. (Case No. 23-13423) | ☐ Harmon of Wayne, Inc. (Case No. 23-13424) | ☐ Harmon of Westfield, Inc. (Case No. 23-13425) | ☐ Harmon of Yonkers, Inc. (Case No. 23-13426) |
| ☐ Harmon Stores, Inc. (Case No. 23-13427) | ☐ Liberty Procurement Co. Inc. (Case No. 23-13428) | ☐ Of a Kind, Inc. (Case No. 23-13429) | ☐ One Kings Lane LLC (Case No. 23-13430) |
| ☐ San Antonio Bed Bath & Beyond Inc.(Case No. 23-13431) | ☐ Springfield Buy Buy Baby, Inc. (Case No. 23-13432) | | |

**Claim Number: 18851**

Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | Who is the current creditor? | Penelope Duczkowski and Joseph Duczkowski |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| | | |
| --- | --- | --- |
| 2. | Has this claim been acquired from someone else? | ☑ No |
| | | ☐ Yes. From whom? |

| | | | |
| --- | --- | --- | --- |
| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Pansini, Mezrow & Davis  1525 Locust Street  15th Floor  1525 Locust St., 15th Floor Philadelphia, PA  19103  Philadelphia  PA  19102 | |
| | | Contact phone 215-732-5555 | Contact phone |
| | | Contact email kstaniskis@pansinilaw.com | Contact email |

| | | |
| --- | --- | --- |
| 4. | Does this claim amend one already filed? | ☑ No |
| | | ☐ Yes.  Claim number on court claims registry (if known)_____       Filed on _____  MM / DD / YYYY |

| | | |
| --- | --- | --- |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| | | ☐ Yes. Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

| | | |
| --- | --- | --- |
| 6. | Do you have any number you use to identify the debtor? | ☐ No |
| | | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  4  4  2  2 |

| | | |
| --- | --- | --- |
| 7. | How much is the claim? | $ 3,00,000.00     . Does this amount include interest or other charges?  ☑ No  ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | | |
| --- | --- | --- |
| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.  Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).  Limit disclosing information that is entitled to privacy, such as health care information.  Personal injury claim. |

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                    $_____

**Amount of the claim that is secured:**        $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| 13. | Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☑ No | |
| | | ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

| 14. | Is all or part of the claim being asserted as an administrative expense claim? | ☑ No | |
| | | ☐ Yes. **Indicate the amount of your claim for costs and expenses of administration of the estates pursuant to 503(b), other than section 503(b)(9), or 507(a)(2). Attach documentation supporting such claim.  If yes, please indicate when this claim was incurred:** | |
| | | ☐ **On or prior to June 27, 2023:** | $_____ |
| | | ☐ **After June 27, 2023:** | $_____ |
| | | **Total Administrative Expense Claim Amount:** | $_____ |

**THIS SECTION SHOULD ONLY BE USED BY CLAIMANTS ASSERTING AN ADMINISTRATIVE EXPENSE CLAIM ARISING AGAINST ONE OF THE ABOVE DEBTORS FOR POSTPETITION ADMINISTRATIVE CLAIMS. THIS SECTION SHOULD NOT BE USED FOR ANY CLAIMS THAT ARE NOT OF A KIND ENTITLED TO PRIORITY IN ACCORDANCE WITH 11 U.S.C. §§ 503(B) AND 507(A)(2); PROVIDED, HOWEVER; THIS SECTION SHOULD NOT BE USED FOR CLAIMS PURSUANT TO SECTION 503(B)(9) OF THE BANKRUPTCY CODE.**

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Steven M Mezrow*

08/09/2023

_____
Signature

**Name of the person who is completing and signing this claim:**

| Name | Steven M. Mezrow, Esquire | | |
| | First name | Middle name | Last name |
| Title | Attorney, Pansini, Mezrow & Davis | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1525 Locust St., 15th Fl. | | |
| | Number        Street | | |
| | Philadelphia        PA        19102 | | |
| | City | State | ZIP Code |
| Contact phone | 215-732-5555 | Email | kstaniskis@Pansinilaw.com |

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:

City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

-------------------------------------------------------------------------------------------------------------

Attachment Filename:

TS - COMPLAINT.pdf

**KROLL**

**PANSINI, MEZROW & DAVIS**
**BY:   MICHAEL O. PANSINI, ESQUIRE**
**I.D.   #44455**
**BY:   STEVEN M. MEZROW, ESQUIRE**
**I.D.   #43746**
**BY:   DAVID B. PIZZICA, ESQUIRE**
**I.D.   #308937**
**1525 Locust Street, 15th Floor**
**Philadelphia, PA 19102**
**(215) 732-5555**                                              **Attorneys for Plaintiffs**

_____

| | | |
|---|---|---|
| **PENELOPE DUCZKOWSKI AND** | : | **SUPERIOR COURT OF NEW JERSEY** |
| **JOSEPH DUCZKOWSKI, w/h** | : | **UNION COUNTY** |
| **1028 Moore Road** | : | **CIVIL DIVISION** |
| **Thorofare, NJ 08086** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **BED, BATH & BEYOND, INC.** | : | |
| **650 Liberty Avenue** | : | |
| **Union, NJ 07083** | : | |

_____

## CIVIL ACTION COMPLAINT - NOTICE TO DEFEND
## 2S - PREMISES LIABILITY

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-1701

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene viente (20) dias, de plazo al partir de la fecha de la demanda y la notification.  Hace falta asentar una comparencia escrita o en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continua la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede dicidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado inmediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion de Liceneados de Filadelphia
Servicio de Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

**PANSINI, MEZROW & DAVIS**
**BY:   MICHAEL O. PANSINI, ESQUIRE**
**I.D.   #44455**
**BY:   STEVEN M. MEZROW, ESQUIRE**
**I.D.   #43746**
**BY:   DAVID B. PIZZICA, ESQUIRE**
**I.D.   #308937**
**1525 Locust Street, 15th Floor**
**Philadelphia, PA   19102**
**(215) 732-5555**                                    **Attorneys for Plaintiffs**
_____

| | | |
|---|---|---|
| **PENELOPE DUCZKOWSKI AND** | : | **SUPERIOR COURT OF NEW JERSEY** |
| **JOSEPH DUCZKOWSKI, w/h** | : | **UNION COUNTY** |
| **1028 Moore Road** | : | **CIVIL DIVISION** |
| **Thorofare, NJ 08086** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **BED, BATH & BEYOND, INC.** | : | |
| **650 Liberty Avenue** | : | |
| **Union, NJ 07083** | : | |

_____

## <u>COMPLAINT</u>

1.      Plaintiff, **PENELOPE DUCZKOWSKI,** is an adult individual residing at 1028

Moore Road, Thorofare, NJ 08096.

2.      Plaintiff, **JOSEPH DUCZKOWSKI,** is an adult individual residing at 1028

Moore Road, Thorofare, NJ 08096.

3.      Defendant, **BED, BATH & BEYOND, INC.,** is a corporation organized and

existing under and by virtue of the laws of the Commonwealth of Pennsylvania which

regularly does business in and about the City and County of Philadelphia. Upon

information and belief, at all times relevant hereto, Defendant was and is an incorporated

company organized under the laws of the State of New York with its principal place of

business at 650 Liberty Avenue, Union, New Jersey.

4.      At all times material hereto, the Defendant, **BED, BATH AND BEYOND,**

**INC.,** owned and, by and through its agents, servants, workmen, and/or employees acting in the course of their employment and within the scope of their authority, maintained, supervised, and possessed a Bed, Bath and Beyond store located at 1755 Deptford Center Road, Deptford, NJ 08096 ("the premises").

5. On or about November 12, 2020, Plaintiff, **PENELOPE DUCZKOWSKI** was a business invitee, and for a period of time prior thereto, there existed on the aforesaid premises displayed merchandise, including but not limited to woks, which were negligently displayed causing a danger, menace, nuisance, trap, and/or hazard to persons lawfully upon the aforesaid premises, including Plaintiff.

6. On or about November 12, 2020, the Plaintiff, **PENELOPE DUCZKOWSKI,** lawfully present on the aforesaid premises, was caused to be injured as a result of falling merchandise with the aforementioned defective and hazardous condition(s) then existing upon the aforesaid premises, resulting in serious and permanent injuries ("the incident").

7. Defendant, **BED, BATH AND BEYOND, INC.,** by and through its agents, servants, workmen, and/or employees acting in the course of their employment and within the scope of their authority, knew or should have known of the existence of the aforementioned defects prior to the incident and Defendant, **BED, BATH AND BEYOND, INC.,** was obliged to correct, remedy, repair and/or eliminate said defects.

**COUNT I**
**NEGLIGENCE**
**PENELOPE DUCZKOWSKI v. BED, BATH AND BEYOND, INC.**

8. The averments of preceding paragraphs are incorporated herein and made a part hereof by reference.

3

9.     The carelessness and negligence of the Defendant, **BED, BATH AND BEYOND, INC.,** by and through its agents, servants, workmen, and/or employees, consisted of the following:

(a)    failing to properly inspect the said premises and displays of merchandise;

(b)    failing to properly display merchandise;

(c)    failing to warn customers of the defective and/or hazardous condition(s) of which they were aware or should have been aware;

(d)    failing to correct, remedy, repair, and/or eliminate the defective and/or hazardous condition(s) of which they were aware or should have been aware;

(e)    failing to maintain the premises in a condition which would protect and safeguard persons lawfully upon the premises and prevent them from falling;

(f)    allowing and committing the aforesaid defect(s) to remain on the aforesaid premises so as to constitute a menace, danger, nuisance, trap and/or hazard to persons lawfully upon the premises; and,

(g)    otherwise failing to exercise due and proper care under the circumstances.

10.     By reason of the aforesaid negligence of the Defendant as hereinbefore alleged, the Plaintiff, **PENELOPE DUCZKOWSKI**, suffered severe and permanent injuries, exacerbation or pre-existing foot/toe conditions, and nervous shock and aggravation and/or exacerbation of all known and unknown preexisting medical conditions.  The Plaintiff, **PENELOPE DUCZKOWSKI,** suffered internal injuries of an unknown nature; she suffered severe aches, pains, mental anxiety and anguish, and a severe shock to her entire nervous system, and other injuries the full extent of which are

4

not yet known. She has in the past and will in the future undergo severe pain and suffering as a result of which she has been in the past and will in the future be unable to attend to her usual duties and occupation, all to her great financial detriment and loss.  The Plaintiff, **PENELOPE DUCZKOWSKI**, believes and therefore avers that her injuries are permanent in nature.

11.    As a result of the aforesaid occurrence, the Plaintiff, **PENELOPE DUCZKOWSKI**, has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and may be required to expend additional sums for the same purposes in the future.

12.    As a result of the aforesaid occurrence, the Plaintiff, **PENELOPE DUCZKOWSKI**, has been prevented from attending to her usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to her great detriment and loss.

13.    As a result of the aforesaid occurrence, the Plaintiff, **PENELOPE DUCZKOWSKI**, has suffered physical pain, mental anguish and humiliation and she may continue to suffer same for an indefinite period of time in the future.

WHEREFORE, Plaintiff, **PENELOPE DUCZKOWSKI**, demands damages of the Defendant, **BED, BATH AND BEYOND, INC.**, herein in a sum in excess of Fifty Thousand Dollars ($50,000.00), plus delay damages, costs, interests, and other damages permitted by law.

**COUNT II**
**PER QUOD**
**JOSEPH DUCZKOWSKI v. BED, BATH AND BEYOND, INC.**

14.     The averments of preceding paragraphs are incorporated herein and made a part hereof by reference.

15.     Plaintiff, **JOSEPH DUCZKOWSKI**, is the spouse of **PENELOPE DUCZKOWSKI**, and as such has incurred expenses in the treatment of his spouse's injuries, and may in the future be caused to incur additional expense as he has in the past.

16.     As a result of the aforesaid occurrence, the Plaintiff, **JOSEPH DUCZKOWSKI**, to his great damage and loss, has been deprived of the society, companionship, services and assistance of his spouse, to which he is legally entitled.

WHEREFORE, Plaintiff, **JOSEPH DUCZKOWSKI,** demands damages of the Defendant, **BED, BATH AND BEYOND, INC.,** herein in a sum in excess of Fifty Thousand Dollars ($50,000.00), delay damages, costs, interests, and other damages permitted by law.

**DESIGNATION OF TRIAL COUNSEL**

**PLEASE TAKE NOTICE** that Michael O. Pansini, Esquire, is hereby designated as trial counsel in the within cause of action.

**JURY DEMAND**

**PLEASE TAKE NOTICE** that Plaintiffs hereby demand a trial by jury as to all issues.

## **INTERROGATORIES**

**PLEASE TAKE NOTICE** that Plaintiffs demand answers to Uniform Interrogatories

C and C(2) pursuant to the Rules of Court.

**Respectfully submitted,**

**PANSINI, MEZROW & DAVIS**

DATE: <u>**February 25, 2022**</u>         **BY:**    **/s/ Michael O. Pansini**
**MICHAEL O. PANSINI, ESQUIRE**
**STEVEN M. MEZROW, ESQUIRE**
**DAVID B. PIZZICA, ESQUIRE**
**Attorneys for Plaintiffs**

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only |
|---|
| Payment type: ☐ ck ☐ cg ☐ ca |
| Chg/Ck Number: |
| Amount: |
| Overpayment: |
| Batch Number: |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Michael O. Pansini, Esquire | (215) 732-5555 | Union |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| Pansini, Mezrow & Davis | |

| Office Address | Document Type |
|---|---|
| 1525 Locust Street Philadelphia, PA 19102 | Complaint |
| | Jury Demand ■ Yes ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Penelope Duczkowski and Joseph Duczkowski, w/h | Penelope Duczkowski and Joseph Duczkowski v. Bed, Bath & Beyond |

| Case Type Number (See reverse side for listing) | Are sexual abuse claims alleged? | Is this a professional malpractice case? ☐ Yes ■ No |
|---|---|---|
| 605 | ☐ Yes ■ No | If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |

| Related Cases Pending? | If "Yes," list docket numbers |
|---|---|
| ☐ Yes ■ No | |

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | Name of defendant's primary insurance company (if known) |
|---|---|
| ☐ Yes ■ No | ☐ None ☐ Unknown |

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship? | If "Yes," is that relationship? |
|---|---|
| ☐ Yes ■ No | ☐ Employer/Employee ☐ Friend/Neighbor ☐ Other (explain) ☐ Familial ☐ Business |

| Does the statute governing this case provide for payment of fees by the losing party? | ☐ Yes ■ No |
|---|---|

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

| Do you or your client need any disability accommodations? | If yes, please identify the requested accommodation: |
|---|---|
| ☐ Yes ■ No | |
| Will an interpreter be needed? | If yes, for what language? |
| ☐ Yes ■ No | |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

Attorney Signature:

**Side 2**



# Civil Case Information Statement
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 Name Change | 506 PIP Coverage |
| 175 Forfeiture | 510 UM or UIM Claim (coverage issues only) |
| 302 Tenancy | 511 Action on Negotiable Instrument |
| 399 Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) | 512 Lemon Law |
| | 801 Summary Action |
| 502 Book Account (debt collection matters only) | 802 Open Public Records Act (summary action) |
| 505 Other Insurance Claim (including declaratory judgment actions) | 999 Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 Construction | 603Y Auto Negligence – Personal Injury (verbal threshold) |
| 509 Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) | 605 Personal Injury |
| | 610 Auto Negligence – Property Damage |
| 599 Contract/Commercial Transaction | 621 UM or UIM Claim (includes bodily injury) |
| 603N Auto Negligence – Personal Injury (non-verbal threshold) | 699 Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 Civil Rights | 608 Toxic Tort |
| 301 Condemnation | 609 Defamation |
| 602 Assault and Battery | 616 Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 604 Medical Malpractice | |
| 606 Product Liability | 617 Inverse Condemnation |
| 607 Professional Malpractice | 618 Law Against Discrimination (LAD) Cases |

### Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 Environmental/Environmental Coverage Litigation | 514 Insurance Fraud |
| 303 Mt. Laurel | 620 False Claims Act |
| 508 Complex Commercial | 701 Actions in Lieu of Prerogative Writs |
| 513 Complex Construction | |

### Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 Accutane/Isotretinoin | 601 Asbestos |
| 274 Risperdal/Seroquel/Zyprexa | 623 Propecia |
| 281 Bristol-Myers Squibb Environmental | 624 Stryker LFIT CoCr V40 Femoral Heads |
| 282 Fosamax | 625 Firefighter Hearing Loss Litigation |
| 285 Stryker Trident Hip Implants | 626 Abilify |
| 286 Levaquin | 627 Physiomesh Flexible Composite Mesh |
| 289 Reglan | 628 Taxotere/Docetaxel |
| 291 Pelvic Mesh/Gynecare | 629 Zostavax |
| 292 Pelvic Mesh/Bard | 630 Proceed Mesh/Patch |
| 293 DePuy ASR Hip Implant Litigation | 631 Proton-Pump Inhibitors |
| 295 AlloDerm Regenerative Tissue Matrix | 632 HealthPlus Surgery Center |
| 296 Stryker Rejuvenate/ABG II Modular Hip Stem Components | 633 Prolene Hernia System Mesh |
| 297 Mirena Contraceptive Device | 634 Allergan Biocell Textured Breast Implants |
| 299 Olmesartan Medoxomil Medications/Benicar | |
| 300 Talc-Based Body Powders | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**  ☐ Putative Class Action   ☐ Title 59   ☐ Consumer Fraud

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-000580-22

**Case Caption:** DUCZKOWSKI PENELOPE  VS BED, BATH & BEYOND

**Case Initiation Date:** 02/25/2022

**Attorney Name:** MICHAEL O PANSINI

**Firm Name:** PANSINI LAW GROUP

**Address:** 1525 LOCUST ST 15TH FL
PHILADELPHIA PA 19102

**Phone:** 2157325555

**Name of Party:** PLAINTIFF : Duczkowski, Penelope

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** PERSONAL INJURY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Penelope Duczkowski?** NO

**Are sexual abuse claims alleged by: Joseph Duczkowski?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/25/2022
Dated

/s/ MICHAEL O PANSINI
Signed

Electronic Proof of Claim Confirmation:  3335-1-RVPRM-672680694

Claim Electronically Submitted on (UTC) :  2023-08-09T15:17:49.009Z

Submitted by:  Bed Bath & Beyong
kstaniskis@pansinilaw.com

**KROLL**

# EXHIBIT 4

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| | | | |
|---|---|---|---|
| Self-Insured Retention | $ | 1,000,000 | Per "Occurrence" |
| Self-Insured Retention | $ | N/A | Per "Claim" |
| Aggregate Self-Insured Retention Amount (if applicable) | $ | N/A | |

## CHANGE

**I.** The Coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY, MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to apply the additional provisions noted below.

    **A. SELF-INSURED RETENTION**

        Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

        After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention.  Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form.  The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

        **1. SELF-INSURED RETENTION PER OCCURRENCE**

            If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Occurrence amount is the most you will pay for Self-Insured Retention amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or claim.

### 2.    SELF-INSURED RETENTION PER CLAIM

If a Per Claim Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each claim until you have paid the Self-Insured Retention amount and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Claim amount is the most you will pay for Self-Insured Retention amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

### 3.    AGGREGATE SELF-INSURED RETENTION AMOUNT

The Aggregate Self-Insured Retention Amount only applies if an Aggregate Self-Insured Retention Amount is shown in the above Schedule.  If an Aggregate Self-Insured Retention Amount is shown in the Schedule, that amount is the most you will pay for all Self-Insured Retention amounts and "defense costs" incurred under this policy.  The Aggregate Self-Insured Retention Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

### B.    LIMIT OF INSURANCE

The applicable **LIMIT OF INSURANCE** provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule.

### C.    OUR RIGHT TO REIMBURSEMENT

With respect to any claim or "suit" under this policy that has been tendered to us and that may exceed the applicable Self-Insured Retention amount, we may pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit". If we do so, you must promptly reimburse us for our payment.

## II.    CHANGES IN THE CONDITIONS SECTION OF EACH OF THE ABOVE-LISTED COVERAGE FORMS

### A.    The following is added to the **BANKRUPTCY** Condition:

Satisfaction of the Self-Insured Retention amounts by you is a condition precedent to our liability for amounts in excess of the Self-Insured Retention regardless of insolvency or bankruptcy or inability to pay by you.  Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay by the "insured" or the "insured's" estate will not operate to:

1.    Deplete or reduce the Self-Insured Retention;
2.    Increase our liability under this policy; or
3.    Relieve us of our obligations under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In no event will we assume responsibility or obligations of the "insured".

**B.** The following is added to the **DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE, INJURY, POLLUTION INCIDENT, CLAIM OR SUIT**(as applicable to the above-listed Coverage Form) Condition:

The "insured" must promptly give our authorized representative and our Claims Department a complete report of the existence of any claim or "suit" involving the following factors or probabilities:

1. If the "ultimate net loss" for a claim or "suit" or multiple claims or "suits" arising out of any one "occurrence" or offense may, or is likely to, exceed 50% of the Self-Insured Retention; or

2. If an "occurrence", offense, claim or "suit" involves:

    a. Death;
    b. Brain or spinal injury;
    c. Amputation;
    d. Loss of use of an arm, eye or leg;
    e. Severe burns involving more than 25% of the body;
    f. Multiple fractures;
    g. Permanent and total disability;
    h. Sexual abuse or molestation;
    i. Significant psychological or neurological involvement;
    j. Severe internal body organ damage or loss;
    k. Severe cosmetic deformity or disfigurement;
    l. A hospital stay of two weeks or longer;
    m. An alleged error or omission of the "insured", the "insured's" claims service organization, or us or a claim for punitive damages against any of them; or
    n. An actual or potential conflict of interest between the "insured" and us, or between the "insured's" claims service organization and us.

**C.** The following is added to the **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition:

If the "insured" had rights to recover all or part of any payment we have made in excess of the Self-Insured Retention, those rights are transferred to us.  The "insured" must do nothing after loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.  Any amounts recovered will first be applied to reimburse us to the extent of our actual payment.

**D.** **DEFENSE & SETTLEMENT** shall be added as follows:

1. You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so.  If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2. We will have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention.  If we avail ourselves of that right, you must cooperate with us.  In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit", you shall not be liable to reimburse us for those "defense costs".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

3.  We may investigate and settle any claim or "suit" as we consider appropriate both within and in excess of the applicable Self-Insured Retention but we shall obtain your consent prior to entering into any settlement of a claim or "suit" that is equal to or less than the Self-Insured Retention amount.  If, however, you do not consent to any settlement within the Self-Insured Retention amount that is recommended by us and instead elect to contest the claim or continue with any legal proceedings involving the claim, our liability for the claim shall not exceed the amount determined by subtracting the Self-Insured Retention amount from the amount for which we recommended settlement, including "defense costs" incurred with our consent, to the date of such refusal.  Further we shall have no liability with respect to such claim if the result of the above calculation is zero or negative.  We will not continue to defend or settle any claim or "suit" after the Limit of Insurance of the applicable coverage has been exhausted by payments of judgments or settlements.

**E.   CLAIMS ADMINISTRATION** shall be added as follows:

You agree to maintain a continuous contract, with an independent claims service administrator approved for use by us, at your expense without reimbursement from us, and that such claims service administrator will report to us on a monthly basis all claims activity, including identity of claimants and the date, type, estimated payments, description and disposition of all claims.

**F.   SELF-INSURED RETENTION REPORTING** shall be added as follows:

You or the authorized claim service administrator must monitor the cumulative Self-Insured Retention amounts and "defense costs" incurred during the policy period and report those total amounts to us on a quarterly basis.  However, regardless of the quarterly reporting requirements, if the total of all incurred losses and "defense costs" should, at any time during the policy period, attain a total amount equal to 75% of the Aggregate Retention amount, you are required to make an immediate report to us of the total incurred losses and "defense costs" sustained at that time.

The required quarterly report must be in a format acceptable to us and shall include a listing of all individual losses and "defense costs" incurred as of the date of the report.

Within forty-five (45) days after the end of the policy term, you must give a listing of all existing claims or "suits" within the Self-Insured Retention amounts. Such listing shall include a description of each claim, "occurrence" or offense; date of the "occurrence" or offense; and the current status of the claim or "suit". Thereafter and on a quarterly basis, you shall provide an updated status of all claims or suits, paid and reserved, until all claims or "suits" are closed and settled.

Compliance with the reporting requirements set forth above, is a condition precedent to coverage.  In the event of non-compliance, we shall not be required to establish prejudice resulting from reporting noncompliance and shall be automatically relieved of liability with respect to the claim.

**G.  MIDTERM CANCELLATION** shall be added as follows:

If an Aggregate Self-Insured Retention Amount is shown in the above Schedule, in the event of a midterm cancellation, the Aggregate Self-Insured Retention Amount shall not be subject to any pro rata reduction.  Such Aggregate Self-Insured Retention Amount will apply as if the policy term had not been shortened.

**H.  GOOD FAITH** shall be added as follows:

You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**I.   HOLD HARMLESS AGREEMENT** shall be added as follows:

The "insured" will hold us harmless and indemnify us for any and all damages or attorney fees or other costs or expenses which are imposed upon us because of the acts or omissions of the "insured" or of the "insured's" employees, agents or independent contractors in the course of the investigation, settlement or defense of any claim or "suit" to which this insurance applies.

**J.   REPRESENTATIONS** shall be added as follows:

You agree that the procurement of insurance for all or any part of the Self-Insured Retention amounts shown in the above Schedule will cause there to be no coverage under this policy.

**K.   DISPUTE RESOLUTION** shall be added as follows:

If we and the "insured" do not agree whether coverage is provided under this policy or this Endorsement, or do not agree concerning the timing or amount of settlement of a claim or "suit", then either party may submit the matter to a court of competent jurisdiction or may make a written demand for arbitration. Where required by state law, the "insured" shall have the option of instead submitting the matter to a court of competent jurisdiction.   We have the absolute right to determine when a claim or "suit" should be settled and may proceed to settle the claim or "suit" if the "insured" refuses to do so upon our demand, or if the "insured" refuses to contribute the amount of the Self-Insured Retention.

When a matter is submitted for arbitration, we and the "insured" may agree to use one arbitrator.  If the parties fail to agree on one arbitrator, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, each will name two arbitrators of which the other party will decline one, and the final selection will be made by drawing lots.  If either party fails to appoint an arbitrator within 30 days of receiving written notice, delivered by certified mail, requesting it to do so, the requesting party will name both arbitrators.  Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding unless state laws do not allow for binding arbitration without the consent of the "insured" in which case the decision will be binding unless, upon commencement of the arbitration, the "insured" has made written demand for non-binding arbitration.  A decision rendered in a non-binding arbitration shall not preclude either party from submitting the matter to a court of competent jurisdiction following the rendering of such decision. Unless a non-binding decision has been elected, upon our request or the request of the "insured", a judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction.

**III.  ADDITIONAL DEFINITIONS**

The following are added to the **DEFINITIONS** Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1. All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2. All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 03/01/2020          Policy No. GL 4062767          Endorsement No.

Insured BED BATH & BEYOND INC.                                Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

# EXHIBIT 5

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
**Gina Calabria, Esq. (Attorney I.D. No.: 29752002)**
**Robert V. Fodera, Esq. (Attorney I.D. No.:048531998)**
**7 Giralda Farms**
**Madison, NJ 07940**
**Tel: (973) 624-0800 * Fax: (973) 624-0808**
**Attorneys for Defendant Bed Bath & Beyond Inc.**
**File No.: 19823-00187**

| | |
|---|---|
| PENELOPE DUCZKOWSKI AND JOSEPH DUCZKOWSKI, w/h, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION: UNION COUNTY<br>: DOCKET NO.: UNN-L-0580-22 |
| Plaintiffs, | : |
| v. | :  Civil Action |
| | : |
| BED BATH & BEYOND, INC., | :  **CASE MANAGEMENT ORDER** |
| | : |
| Defendant. | : |
| | : |

      **THIS MATTER** having been opened to Court based upon a Case Management Conference held on March 16, 2023, before the Honorable Mark P. Ciarrocca, P.J. Cv., and counsel for all parties having attended and participated in the Case Management Conference on March 16, 2023, and good cause having been shown;

      **IT IS** on this  27  day of  March , 2023;

      **ORDERED** that the discovery end date be and hereby is extended to **August 31, 2023**; and it is further

      **ORDERED** that the following discovery is to be completed:

    1.  Depositions of party and fact witnesses to be conducted by **June 1, 2023**;

    2.  Plaintiffs' expert reports to be served by **July 1, 2023**;

    3.  Defendant's expert reports to be served by **August 1, 2023**;

    4.  Expert depositions to be completed by **August 31, 2023**;

and it is further

281162363v.2
281162363v.2

**ORDERED** that non-binding arbitration is scheduled for **September 14, 2023**; and it is further

**ORDERED** that this Order shall be deemed automatically served upon all counsel simultaneously with its online posting in E-Courts in accordance with R. 1:5-1(a).

Unopposed

/s/ Mark P. Ciarrocca

_____

Mark P. Ciarrocca, P.J. Cv.