**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: May 7, 2024 |
| | at 10:00 a.m. |

**OPPOSITION OF THE PLAN ADMINISTRATOR TO MOTION FOR ORDER
MODIFYING THE AUTOMATIC STAY AND PLAN INJUNCTION TO ALLOW
MOVANT TO CONTINUE PENDING LITIGATION AGAINST THE DEBTOR, TO
RECOVER SOLELY AGAINST DEBTOR'S INSURER, WAIVING THE PROVISIONS
OF FED. R. BANKR. P. 4001 (A) (3) AND FOR RELATED RELIEF**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in thesechapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **INTRODUCTION**.................................................................................................2

II.    **ARGUMENT**......................................................................................................5

      A.    Movant has not established "cause" to modify the Plan Injunction. .......................5

            *(i)*    *Continuing the State Court Action will greatly prejudice the estates because the Debtors are self-insured for any claim under $1 million and granting relief will result in the estates being drained by prohibitive Defense Costs.* .......................6

            *(ii)*    *The hardship to the Movant by maintenance of the Plan Injunction does not considerably outweigh the hardship to the bankruptcy estates.* ..................................................................16

            *(iii)*    *Movant has not established any likelihood of prevailing on the merits.* ...........................................................................16

      B.    The Plan Injunction is enforceable against Movant.................................................17

III.    **CONCLUSION** ................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*DePippo v. Kmart Corp.*,
    335 B.R. 290 (S.D.N.Y. 2005)...................................................................... 13, 15

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284 ........................................................................ 5, 12

*Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*,
    219 B.R. 716 (S.D. West Va. 1998)............................................................... 15, 16

*Houston v. Edgeworth (In re Edgeworth)*,
    993 F.2d 51 (5th Cir. 1993) ........................................................................... 14, 15

*In re Chemtura Corp.*,
    09-11233-JLG, 2016 Bankr. LEXIS 4056, (Bankr. S.D.N.Y. Nov. 23, 2016).......... 12, 15

*In re CJ Holding Co.*,
    2018 Bankr. LEXIS 2437 (Bankr. S.D.Tex. Aug. 15, 2018)........................................... 14

*In re EnCap Golf Holdings, LLC*,
    2008 Bankr. LEXIS 2146 (Bankr. D. N.J. Aug. 4, 2008) ........................................... 13

*In re iHeartMedia, Inc.*,
    2019 Bankr. LEXIS 1617 (Bankr. S.D.Tex. May 28, 2019) ........................................... 11

*In re Jet Florida Systems, Inc.*,
    883 F.2d 970 (11th Cir. 1989) ........................................................................... 15

*In re Kabbage Inc.*,
    2023 Bankr. LEXIS 671 (Bankr. D. De. March 15, 2023) ........................................... 18

*In re Residential Capital, LLC*,
    2012 Bankr. LEXIS 3624, (Bankr. S.D.N.Y. Aug. 7, 2012) ........................................... 13

*In re SquareTwo Fin. Servs. Corp.*,
    2017 Bankr. LEXIS 2570 ........................................................................... 5, 12

*In re SunEdison, Inc.*,
    557 B.R. 303 (Bankr. S.D.N.Y. 2016)........................................................................... 12

*In re Trump Ent. Resorts, Inc.*,
    526 B.R. 116(Bankr. D. Del. 2015) ........................................................................... 6

*In re W.R. Grace & Co.*,
    2007 Bankr. LEXIS 1214, (Bankr. D. Del. Apr. 13, 2007) ........................................... 6

*Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*,
    141 B.R. 574 (Bankr. D. Del 1992) ........................................................................... 6

*Jones v. Pilgrim's Pride, Inc.*
    741 F. Supp. 2d 1272 (N.D. Ala. 2010)........................................................................... 15

*Moreno-Cuevas v. Town Sports Int'l, LLC (In re Town Sports Int'l)*,
    2023 U.S. Dist. LEXIS 227402 ........................................................................... 5, 6, 19

*Perez v. Cumberland Farms, Inc.*,
    213 B.R. 622 (D. Mass. 1997) ........................................................................... 16

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................... 16, 17
11 U.S.C. § 524 ........................................................................................................................ 13
11 U.S.C. § 524(a) ....................................................................................................... 13, 14, 15
11 U.S.C. § 524(e) ................................................................................................................... 13
11 U.S.C. § 1141(c) ................................................................................................................. 17
11 U.S.C. § 1141(d)(3) ............................................................................................................ 16

**Rules**

Fed. R. Bankr. P. 9019 ............................................................................................................... 4

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[1] and 73 affiliated debtors (the

"Debtors"), files this opposition (the "Opposition") to the *Motion for Order Modifying The*

*Automatic Stay And Plan Injunction To Allow Movant To Continue Pending Litigation Against*

*The Debtor, To Recover Solely Against Debtor's Insurer, Waiving The Provisions Of Fed. R.*

*Bankr. P. 4001 (A) (3) And For Related Relief* [Docket No. 2936] (the "Motion") filed on behalf

of Alfred Zeve ("Movant").    In support of the Opposition, the Plan Administrator states

as follows:[2]

---

[1] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[2] The facts in this Opposition are supported by the *Declaration of Michael Goldberg*, which is attached hereto as **Exhibit A** (the "Goldberg Dec.").

# I.    INTRODUCTION[1]

1.    Alfred Zeve ("Movant") is personal injury claimant who alleges he was injured when he slipped and fell in a Bed Bath & Beyond store in Dallas, Texas in February of 2021.[2] In the lawsuit that Movant filed against debtor Bed Bath & Beyond, Inc. ("BBB") in February of 2023 in the District Court of Dallas County, Texas (Case No. DC-23-01958) (the "State Court Action"), Movant alleged actual damages of "$250,000.00 or less. . . ." [3] The State Court Action was stayed by the Debtors' chapter 11 filings on April 23, 2023 (the "Petition Date").  On April 25, 2023, counsel to the Debtors filed a *Notice of Suggestion in Bankruptcy* in the State Court Action.[4]  On July 21, 2023 (two weeks after the General Bar Date),[5] Movant filed a proof of claim (docketed as Claim No. 14513) against BBB as a general unsecured claim related to his alleged personal injuries for $245,000.00 (the "Proof of Claim").[6]

2.    Movant asks the Court to, "modify the Automatic Stay [and the Plan Injunction] to permit him to continue to judgment and to enforce any judgment he receives, by execution, levy or otherwise, against the Debtor's insurer and the Policy." *See Memorandum of Law* [Docket 2936-2], at 3. He states that he "will not seek enforcement of any judgement against the Debtor or its assets other than the Policy."  *Id.*

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

[2] *See Plaintiff's Original Petition,* (Exhibit A) to Certification of Michael Zimmerman [Docket No. 2936-1], ¶ 11.

[3] *See Plaintiff's Original Petition,* (Exhibit A) to Certification of Michael Zimmerman [Docket No. 2936-1], ¶ 4 ("Plaintiff seeks only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties and attorneys' fees and costs.").

[4] *See Notice of Suggestion in Bankruptcy,* (Exhibit B) to Certification of Michael Zimmerman [Docket No. 2936-1].

[5] Pursuant to the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584], July 7, 2023 as the date by which most Claims against the Debtors had to be filed (the "General Bar Date").

[6] A true and correct copy of the Zeve Claim is attached as **Exhibit 1** to the Goldberg Declaration.

3.      Pursuant to the *Debtors' Second Amended Joint Chapter 11 Plan* (the "Plan"),

which went effective on September 29, 2023, Movant holds a Class 6 General Unsecured Claim,

that has not yet been Allowed.[7] If Movant's Claim is Allowed,[8] he will be entitled to his *pro*

*rata* share of the consideration that the Plan provides for Class 6 "in full and final satisfaction,

compromise, settlement, release, and discharge of [his] Claim" (the "Class 6 Plan Treatment").[9]

Pursuant to Article X.F of the Plan, like all other Creditors, Movant is:

> enjoined and precluded, from and after the Effective Date ***through
> and until the date upon which all remaining property of the
> Debtors' Estates vested in the Wind-Down Debtors has been
> liquidated and distributed in accordance with the terms of the Plan***
> from taking any of the following actions against, as applicable, the
> Debtors, Wind-Down Debtors . . . : (1) ***commencing or continuing in
> any manner any action or other proceeding of any kind on account
> of or in connection with or with respect to any such Claims,
> Interests, Causes of Action or liabilities***; (2) enforcing, attaching,
> collecting, or recovering by any manner or means any judgment,
> award, decree, or order against such Entities on account of or in
> connection with or with respect to any such Claims, Interests,
> Causes of Action or liabilities . . . ; and (5) commencing or
> continuing in any manner any action or other proceeding of any kind
> on account of or in connection with or with respect to any such
> Claims, Interests, Causes of Action or liabilities discharged,
> released, exculpated, or settled pursuant to the Plan.

Plan, Article X.F (the "Plan Injunction") (emphasis added). The Plan provides for a "complete

settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and

---

[7] On September 14, 2023, the Court entered *the Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates [Docket No. 2160] (as amended, the "Plan"). On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors. Plan, Article IV, at § B.

[8] Pursuant to the Plan, the Plan Administrator currently has until September 30, 2024 to object to Claims, which date may be extended by the Court upon the request of the Plan Administrator. Plan, Article I.A, at § 28.

[9] Pursuant to the Plan, Class 6 includes all General Unsecured Claims, which are treated as follows, "In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (i) the Shared Proceeds Pool, only if such proceeds are available after all senior Claims (other than the DIP Claims and FILO Claims) are paid in full and (ii) any remaining Distributable Proceeds available after payment in full of all senior Claims." Plan, Article III.B (6).

Causes of Action of any nature whatsoever . . . ." Plan, Article X.A (the "Plan Settlement").[10] It

also provides for a "release and discharge" of Claims and Causes of Action against the Debtors

as of the Effective Date. Plan, Article X.D (the "Plan Release").[11]

       4.      Movant argues that the Court has discretion to modify the Plan Injunction on the

grounds that:

> The Plan Injunction constitutes an extreme and unnecessary
> hardship upon [Movant] because it prohibits [Movant] from
> continuing the State Court Action in order to recover from the
> Debtor's insurers. Conversely, the only hardship to the Debtor in
> modifying the Plan Injunction would be that the Debtor would need
> to devote time cooperating with its insurer(s) to defend the State
> Court Action, a harm which is dwarfed by the harm which will be
> suffered by [Movant] if he cannot recover from the Debtor's
> insurers.

*Id.* at 7-8. As is set forth below, Movant has failed to establish "cause" for relief from the Plan

Injunction. Debtors have no insurance for any personal injury claim that is liquidated for under

$1 million, and the cost to defend this suit and others like it (should the Court grant relief) will

drain these administratively precarious estates in hundred cent dollars to the detriment of the

estates' other creditors and in violation of the expectations and priorities established pursuant to

the Plan. Furthermore, Movant has not produced any evidence of the likelihood that he will

---

[10] Plan, Article X.A ("Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever . . . whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date . . . ").

[11] Plan, Article X.D ("As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to . . . or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors  . . . .").

succeed in establishing a claim above the $1 million self-insured retention. On the contrary, in

complaint filed in the State Court Action and in the Zeve Claim filed in the bankruptcy cases,

Movant clearly states that his claim is $250,000 or below.  Accordingly, the Court should deny

the Motion.

## II.    ARGUMENT

### A.    Movant has not established "cause" to modify the Plan Injunction.

5.    As a preliminary matter, on the Effective Date, the automatic stay of section 362

was replaced by the Plan Injunction and is no longer in effect. *See Moreno-Cuevas v. Town

Sports Int'l, LLC (In re Town Sports Int'l)*, 2023 U.S. Dist. LEXIS 227402, *12 (D. Del. Dec. 21,

2023). Accordingly, the Plan Administrator will treat the Motion as requesting relief from the

Plan Injunction.  *Id*. (treating a request for relief from the automatic stay as a request for relief

from a plan injunction); *In re SquareTwo Fin. Servs. Corp.,* 2017 Bankr. LEXIS 2570, at *10

(Bankr. S.D.N.Y. Sept. 11, 2017) (same); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*

2006 U.S. Dist. LEXIS 55284, at *24 (S.D.N.Y. Aug. 4, 2006) (same).

6.    Courts considering whether to grant relief from a plan injunction apply a "cause"

standard, incorporating the same "cause" analysis as they apply for section 362. *In re Town

Sports Int'l*, 2023 U.S. Dist. LEXIS 227402, at *12; *Grayson v. WorldCom, Inc. (In re

WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *245.  Courts in the Third Circuit consider

three factors when balancing competing interests of debtors and movants in connection with stay

relief: (1) whether any great prejudice to either the bankruptcy estate or the debtor will result

from continuation of the civil suit; (2) whether the hardship to the nonbankruptcy party by

maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the

probability of the creditor prevailing on the merits. *In re Town Sports Int'l*, 2023 U.S. Dist.

LEXIS 227402, at *13; *In re Trump Ent. Resorts, Inc*., 526 B.R. 116, 120 (Bankr. D. Del. 2015);

*In re W.R. Grace & Co.,* 2007 Bankr. LEXIS 1214, *8 (Bankr. D. Del. Apr. 13, 2007); *Izzarelli*

*v. Rexene Prods. Co. (In re Rexene Prods. Co.),* 141 B.R. 574, 576 (Bankr. D. Del 1992).

> **(i)  Continuing the State Court Action will greatly prejudice the estates
> because the Debtors are self-insured for any claim under $1 million and
> granting relief will result in the estates being drained by prohibitive
> Defense Costs.**

7.      The first and most important factor considered by courts is prejudice to the

bankruptcy estate. *In re Town Sports Int'l*, 2023 U.S. Dist. LEXIS 227402, at *13. Cause exists

only if harm to Movant by maintenance of the Plan Injunction "considerably outweighs" the

harm to the Debtors from the lifting of the Plan Injunction. *Id.* It does here.

8.      The Debtors are their own insurer for all personal injury claims under $1 million.

The general liability policy that is applicable to the Zeve Claim is GL 4062767 (the "<u>Policy</u>")

with Safety National Casualty Corporation ("<u>Safety National</u>"). The Policy was assumed by the

Debtors pursuant to the Plan, and the Confirmation Order imposes upon the Plan Administrator

duties of cooperation with Safety National.[12]

---

[12] Plan, Article V.D.  The Confirmation Order provides: As proscribed under the Safety National Insurance Policies, after the Effective Date, the Debtors and/or Wind-Down Debtors, through the Plan Administrator, shall maintain a duty to cooperate and assist in the defense of any claim, proceeding, or suit against the Debtors for damages payable by the Safety National Insurance Policies. Pursuant to Bankruptcy Rule 9001(5), the Plan Administrator shall be designated as the person authorized to act on behalf of the Debtors (or, after the Effective Date, the Wind-Down Debtors) in defense of any claim, proceeding, or suit against the Debtors for the purpose of liquidating the claim to seek to collect against the Safety National Insurance Policies. The Plan Administrator shall be further authorized to assist in the defense of such claims including by, though not limited to, providing documents and information required in the defense of any claims, proceeding, or suit, and signing interrogatory answers and other discovery responses. The Plan Administrator shall be authorized to execute such discovery materials based upon knowledge and information gained from the review of documents or other information in the Plan Administrator's possession in the Plan Administrator's actual knowledge and not based on personal knowledge of the Plan Administrator. The intent of this paragraph is to provide adequate provisions of the Debtors' defense obligations under the Safety National Insurance Policies, and nothing in this paragraph shall alter, modify, amend, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Debtors (or, after the Effective Date, the Wind-Down Debtors) or the Safety National Parties under the Safety National Insurance Policies." Confirmation Order at ¶ 145.

9.      Pursuant to a Self-Insured Retention Endorsement (the "SIR Endorsement"), the

Policy has a $1 million per occurrence self-insured retention (the "SIR").  *See* SIR Endorsement

at 1.[13]  The SIR Endorsement provides:

> **SELF-INSURED RETENTION**. Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount. ***After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention.*** Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form. The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

SIR Endorsement § I(A), at 1 (emphasis added).[14]

10.     The SIR Endorsement continues:

> **SELF-INSURED RETENTION PER OCCURRENCE**. If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, ***it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule***, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

---

[13] A true and correct copy of the SIR Endorsement is attached as **Exhibit 2** to the Goldberg Dec**.**

[14] "Defense Costs" are "Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy. SIR Endorsement § III, at 5.

SIR Endorsement § I(A)(1), at 1-2 (emphasis added).

11.     The SIR Endorsement further provides, "With respect to any claim or "suit" under

this policy that has been tendered to us and ***that may exceed*** the applicable Self-Insured

Retention amount, we ***may*** pay any or all of the Self-Insured Retention amount and "defense

costs" on your behalf to defend or to effect settlement of such claim or "suit". If we do so, you

must promptly reimburse us for our payment." *Id.* § I(C), at 2 (emphasis added).[15] It continues,

"You may not settle any claim or "suit" that exceeds [$1 million] without our written permission

to do so. If you fail to obtain our written permission, we shall have no obligation to provide

coverage for that claim or "suit" under this policy." *Id.* § II(D)(1), at 3.

12.     Accordingly, Movant is seeking relief from the Plan Injunction to liquidate a

claim in the State Court Action, the first $1 million of which can <u>only</u> be recovered against the

Debtors, as their own insurers.  Because Defense Costs (including attorney's fees) are included

in the $1 million SIR, the Plan Administrator would have to use very limited estate resources to

defend the State Court Action.

13.     From 2012-2020 (the years for which the personal injury cases were fairly

developed and might provide an accurate predictor of costs associated with cases that were

pending on the Petition Date), the Debtors paid $12.14 million in attorney's fees related to

personal injury claims, or an average of $1.52 million per year. During that time, only 3 cases

exceeded the $1 million SIR (inclusive of Defense Costs and settlement/judgment amounts).

---

[15] In a seemingly contrary provision, the SIR Endorsement provides, "We shall have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed [$1 million]. If we do avail ourselves of that right, you must cooperate with us. In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit," you shall **<u>not</u>** be liable to reimburse us for those "defense costs". SIR Endorsement § II(D)(2), at 3 (emphasis added).

14.     The State Court Action was filed 2 month prior to the Petition Date. If the Court grants relief from the Plan Injunction to permit the State Court Action to move forward, the Plan Administrator will have choose whether to (a) defend the case (which will, absent settlement, involve motion practice, discovery, pretrial proceedings and trial), causing the estates to incur tens or even hundreds of thousands of dollars in attorneys' fees; or (b) not defend the case in which case, either (i) Movant will take a default judgement against the Debtors (exposing the estates to a claim by Safety National that it has breached the terms of the Policy); or (ii) Safety National may step in to defend and it may then assert an administrative claim against the Debtors.[16]  Under any possible scenario, the estates risk being drained for the benefit of an individual who holds, at best, a disputed, unliquidated Class 6 General Unsecured Claim that is filed in the liquidated amount of $245,000, well under the SIR.[17]

15.     Each dollar that the Plan Administrator spends in Defense Costs is a dollar that is contractually obligated to senior creditors under the Waterfall Recovery mechanism in confirmed Plan. *See* Plan, Article IV.B. Moreover, should the Plan Administrator be able to collect sufficient Assets to make even a *de minimis* distribution to Holders of Allowed Class 6 General Unsecured Creditors, their *pro rata* recoveries will also be diminished by the money that the estates have had to spend in Defense Costs. Why should other creditors pay for Movant's attempt

---

[16] In connection with Safety National's *Objection to Alfred Zeve's Motion For Order Modifying The Automatic Stay And Plan Injunction To Allow Movant To Continue Pending Litigation Against The Debtor, To Recover Solely Against Debtor's Insurer, Waiving The Provisions Of Fed. R. Bankr. P. 4001 (A) (3) And For Related Relief* [Docket No 2977] (the "SN Objection"), Safety National states, "Debtors are obligated under the Safety National Insurance Policies to defend or resolve claims below the SIR limit. The Safety National Insurance Policies, among other things, also obligate Debtors to indemnify and reimburse Safety National for any defense costs Safety National incurs below the SIR limit. To the extent the Plan Injunction is lifted for Zeve to pursue the Zeve Claim, the Estate will either (i) be required to defend the Zeve Claim in the State Court Lawsuit, or (ii) if the Estate chooses not to defend, will incur administrative claim obligations to Safety National for its defense of the Zeve Claim in the State Court Lawsuit." Zeve Objection at 6-7.

[17] The Plan Administrator does not concede Safety National's interpretation of the Policy or the SIR Endorsement. He reserves all rights, arguments, claims and defenses under the Policy and the SIR Endorsement.

to hit-the-jackpot by getting an over-the-SIR judgment, especially where, as here, as the Plan

Administrator has previously noted the estates may well be administratively insolvent.[18]

16.    Furthermore, the Plan Administrator will have to spend time and incur expenses

to respond to and defend against the State Court Action as he and his small staff are trying to

wind-down the Debtors and make distributions to creditors. Finally, granting relief from the Plan

Injunction to Movant will embolden other personal injury claimants to seek relief which will

expose the estates to tens or hundreds of thousands of dollars in Defense Costs. On the Petition

Date, approximately 55 personal injury cases were being litigated against the Debtors, 53 of

which requested damages within the SIR of $1 million and two of which requested damages in

excess of $1 million.

17.    Numerous courts have denied relief from stay and/or plan injunctions to plaintiffs

who wanted to move against the debtor's insurers because the debtor's estate would have to

incur defense costs or where the debtor was otherwise self-insured. In *In re iHeartMedia, Inc*.,

2019 Bankr. LEXIS 1617 (Bankr. S.D.Tex. May 28, 2019), a creditor sought relief from the

automatic stay/plan injunction to "proceed against insurance proceeds" in connection with a pre-

petition personal injury action. As the court noted, "If that were the actual relief sought,

[creditor] might prevail." *Id*. at *6. However, the debtor's general liability policy, which it had

assumed in connection with plan confirmation, had a $3 million deductible. In denying relief

from the stay/injunction, the court explained:

> Because [the debtor] is liable for the $3,000,000.00 deductible on
> any claim paid under its Insurance Policy, [creditor's] attempt to
> collect a claim against the Insurance Policy, would necessarily
> invoke the reimbursement provisions of the contract. The Insurer

---

[18] *See Declaration of Michael Goldberg in Support of Motion for Order Extending Period to Object to Claims*
[Docket No. 2906], 5-6 ("Goldberg Dec. II") ("Absent a significant reduction in the Asserted Administrative Claims
and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it
is unlikely that Allowed Administrative Claims will be paid in full.").

> will not waive its reimbursement rights. Thus, [creditor's] attempt to collect against the Insurance Policy directly affects the bankruptcy estate, which is barred under either the automatic stay or the discharge injunction.

2019 Bankr. LEXIS 1617, *12-13 (citations omitted). The court continued:

> Although [creditor] characterizes its claim as a claim against the insurance proceeds, that is simply incorrect. Its claim is against [the debtor], the insured. Any claim necessarily invokes the Insurer's right to reimbursement from [the debtor], whether that payment is required prior to claim payment under an SIR, or as reimbursement under a deductible is irrelevant. . . .[T]he controlling question is whether the litigation would place the financial burden solely on the insurer or implicate the debtor. 993 F.2d at 54. The Insurance Policy in this case, with its $3,000,000.00 reimbursable deductible falls within the latter category, implicating the Debtor's finances. Accordingly, [creditor] has failed to carry its burden demonstrating cause for relief from the automatic stay.

2019 Bankr. LEXIS 1617, *15-16. In this case, the litigation puts the burden of up to $1 million in Defense Costs on the Debtors. It more than "implicates" the Debtors' finances, it has the possibility of crushing them.

18.    *In re SquareTwo Fin. Servs. Corp.,* 2017 Bankr. LEXIS 2570 (Bankr. S. D. N. Y. Sept 11, 2017), the bankruptcy court denied relief from the plan injunction to class action litigation claimants because, in part, the reorganized debtor would have been forced to use its own funds to defend. In that case, there were both reorganized debtors and debtors who were liquidating, and the court concluded that both would be prejudiced, noting:

> Since no insurer has assumed responsibility to pay for the costs and/or damages associated with the Counterclaims, if that litigation goes forward, [Reorganized debtor-defendant] will be denied its fresh start because it will be forced to use its own funds to defend against the discharged claims. *See In re Chemtura Corp.*, 09-11233-JLG, 2016 Bankr. LEXIS 4056, at *56 (Bankr. S.D.N.Y. Nov. 23, 2016) (granting motion to enforce discharge injunction to bar post-confirmation prosecution of discharged tort claims, even if only to fix insurers liability under the policy, since the debtor "will be denied its 'fresh start' because it will be obligated by [the policies]

to pay defense costs associated with the Benzene Lawsuits, which are personal injury actions on account of discharged debts."). See also *In re WorldCom Inc.*, 2007 WL 841948, at *7 (finding seventh *Sonnax Factor* weighed against movant because the "increased costs associated with litigation in a separate forum would prejudice the Reorganized Debtors."). [Liquidating debtor defendant] is in a slightly different position since it may have access to Estate funds in the Wind Down Account to underwrite costs associated with the prosecution of the Counterclaims. Nonetheless, it will be no less aggrieved if the Class Claimants get relief from the Plan Injunction. That is because continued prosecution of the Counterclaims will prevent the Dissolving Debtors' personnel from focusing on matters relating to the wind down of the businesses and thereby delay the prompt resolution of these cases. *Cf. In re SunEdison, Inc.*, 557 B.R. 303, 307-08 (Bankr. S.D.N.Y. 2016) (denying lift stay motion in part because holding otherwise would "divert the Debtors' resources and personnel at a critical time in the case"). Finally, the holders of the 1.5 Lien Lender Claims will also be prejudiced by the continued prosecution of the Counterclaims and the use of Estate funds in connection with that litigation, since any funds remaining in the Wind Down Account after the Wind Down Costs are paid are earmarked for their benefit. . . . Thus, application of Factor # 7 weighs against the Class Claimants.

*Id*. at *21 (emphasis added). *See also In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *16 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying plaintiff's motion to lift automatic stay where no insurer had assumed responsibility to pay for damages and allowing action to proceed would require debtors to pay damages directly from policy deductible); *DePippo v. Kmart Corp*., 335 B.R. 290, 298 (S.D.N.Y. 2005) (denying relief from the plan injunction to personal injury claimants where the debtors (Kmart) had a $2 million self-insured retention and would be forced to incur the cost of litigation and stating, "Kmart does not maintain primary liability insurance. Its only insurance provides coverage above a two-million-dollar self-insured retention. (Therefore, because Kmart's debt has been discharged in bankruptcy, there is no money to cover plaintiff's claim. Moreover, if the action against Kmart were permitted to proceed, it would have to pay litigation costs, which is contrary to the fresh start policy of the Bankruptcy Code."); *In re EnCap Golf Holdings, LLC*, 2008 Bankr. LEXIS 2146, at *12 (Bankr. D. N.J. Aug. 4, 2008)

("Because the Self-Insured Retention has not been exhausted, [insurance company] has no obligation to make payments under the [insurance policy] and [creditor's] right to commence an arbitration against [insurance company] cannot be implemented. Accordingly, there is no cause to grant relief from the automatic stay in favor of [creditor].").

19.     In *Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51 (5th Cir. 1993), the court held that Bankruptcy Code section 524(e) does not prohibit a plaintiff from joining a discharged chapter 7 debtor in a wrongful death suit to pursue a recovery against the debtor's insurer. In doing so, however, the court explained:

> [The debtor] has not asserted that he will be required to pay the costs of his defense against appellants' suit or that the insurance company denied coverage or is defending under a reservation of rights. ***Such threats to [the debtor's] pocketbook might require a different result under § 524.*** Thus, as long as the costs of defense are borne by the insurer and there is no execution on judgment against the debtor personally, section 524(a) will not bar a suit against the discharged debtor as the nominal defendant.

*Id*. at 54 (emphasis supplied).

20.     In *In re CJ Holding Co*., 2018 Bankr. LEXIS 2437 (Bankr. S.D.Tex. Aug. 15, 2018), the bankruptcy court denied relief from the plan injunction in precisely the type of case foreshadowed by the *Edgeworth* court. In that case, the plaintiffs (who did not file a proof of claim against the debtors) sought post-confirmation relief from the plan injunction to pursue their pre-petition personal injury claims against the debtors' insurers. The debtors' primary general liability insurance had $1 million cap and a $1 million deductible. It also had a $5 million self-insured retention before the excess layer kicked in. The court explained:

> The underlying tenet of the Fifth Circuit's holding is a balancing of the financial fresh start policy underlying the bankruptcy process with the limitation set forth in 11 U.S.C. § 524(e). *See Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.*), 219 B.R. 716, 720 (S.D. West Va. 1998). The Court's analysis in *Jones v. Pilgrim's Pride, Inc*. is instructive on this

issue. 741 F. Supp. 2d 1272 (N.D. Ala. 2010). In denying the
plaintiff's request to pursue litigation claims solely for the purpose
of collecting insurance proceeds, the Pilgram's Pride Court noted
that there was effectively no primary insurance as the Debtor had a
large self-insured retention. *Id*. at 1277-1278. *See also Columbia
Gas Transmission Corp*., 219 B.R. at 720; *DePippo v. Kmart Corp*.,
335 B.R. 290, 298 (S.D.N.Y. 2005. The relevant facts are largely
undisputed. Mr. and Mrs. Nunez admit that they did not file a proof
of claim. No assertion is made that they are not bound by the terms
of the confirmed plan in this case. Rather, Mr. and Mrs. Nunez argue
that although the Liberty Policy has a $1 million deductible and that
a $5 million self-insured retention exists before any proceeds of the
excess policy are available to satisfy their claims, it is not clear that
the Debtors will have to actually pay those amounts. In essence, Mr.
and Mrs. Nunez argue that the Edgeworth exception should apply
because the Debtors could choose to breach their contractual
obligations and refuse to pay the $1 million deductible or the $5
million self-insured retention. The argument fails to address the fact
that Liberty is holding the Debtor's cash as security for its
performance. The Court is convinced that this is the type of situation
recognized by the Edgeworth Court. In  this case, C&J Well is
required to pay the first million, and five of the following six million
in related expenses/recoveries. No legitimate argument exists that
such circumstances would not frustrate C&J Well's discharge and
the fresh start policy engrafted into the Bankruptcy Code. Mr. and
Mrs. Nunez also argue that the fact that the Debtors' relevant
insurance agreements were assumed under the confirmed plan
requires a different analysis. The Court disagrees. The Edgeworth
balancing remains unchanged. *See In re Chemtura Corp*.,  2016
Bankr. LEXIS 4056, at *61-62 (Bankr. S.D.N.Y. Nov. 23, 2016).

*Id*. at *8-10. *See also In re Jet Florida Systems, Inc*., 883 F.2d 970, 976 (11th Cir. 1989) (holding

that § 524(a) does not preclude actions against a discharged debtor as a nominal defendant so

plaintiff can purse an insurer but stating, "We are, however, concerned by the prospect that

reversing the decision of the bankruptcy court in this case would frustrate the fresh-start policy

embodied in the Code in one way -- by requiring the bankrupt to spend sums in defending this

lawsuit. We are cognizant that in actions such as these, the cost of litigation can sometimes

surpass the actual amount of liability. Therefore, to allow suits of this nature to go forward could

possibly have the effect of draining funds that would more properly be used in the revitalization

of the reorganized corporation."); *Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 721 (S.D.W.V. 1998) (holding that permitting plaintiff to pursue her negligence suit against discharged debtor would violate the Bankruptcy Code's fresh-start policy because " [the debtor] has provided evidence that it, not [insurer], is responsible for costs of defending the lawsuit. Requiring [the debtor] to pay the costs of litigating its liability on Greiner's claim, which costs could be quite high, would violate the fresh-start policy of the Bankruptcy Code."); *Perez v. Cumberland Farms, Inc.,* 213 B.R. 622, 624 (D. Mass. 1997) ("Any economic loss to the Debtor would . . . result in the violation of the statutory injunction of 11 U.S.C. § 524(a)).

21.     The Bed, Bath & Beyond cases involve a liquidation; therefore, there is no reorganized debtor's "fresh start" to protect. There is, however, the expectation of creditors that is represented in the contract called the Plan. To allow these suits to go forward will open the floodgates and the Defense Costs will drain the estates resources (coming out of the secured creditor's collateral and if there is anything left over after its Allowed Claims are satisfied, then the pockets of other creditors who share under the Waterfall Recovery mechanism), all for the benefit of the Holder of (at best) a Class 6 General Unsecured Claim that will, in the end, likely fall within the SIR, and therefore, no insurance will be available.  How many dollars must the estate (aka other creditors) spend to fund this gamble for the Movant?  Furthermore, the Plan Administrator will have to spend time and incur expenses to respond to and defend against the State Court Action as he and his small staff are trying to wind-down the Debtors and make distributions to creditors.

> ***(ii) The hardship to the Movant by maintenance of the Plan Injunction does
> not considerably outweigh the hardship to the bankruptcy estates.***

22.    The harm to Movant from keeping the Plan Injunction in place is that he is deprived of the ability to potentially get his claim over $1,000,000, so he can obtain some recovery from Safety National. The possibility of Movant's Claim exceeding $1 million is, as noted above, very low. Eight years of loss data show only 3 claimants have pierced the $1 million settlement mark. And, as noted above, his gamble comes on the backs of other creditors who bargained for the Debtors' assets to be distributed in accordance with the Plan. This factor too weighs against modifying the Plan Injunction.

### *(iii) Movant has not established any likelihood of prevailing on the merits.*

23.    This factor weighs against modifying the Plan Injunction as Movant has provided no evidence of the probability of his success on the merits of the State Court Action, much less any evidence that his Claim will exceed the SIR. On the contrary, both the complaint in the State Court Action and his proof of claim manifestly state that his Claim is well under the SIR.

24.    As the harm to the estates and other Creditors far outweighs the potential and speculative prejudice to the Movant, the Court should deny relief from the Plan Injunction.

**B.    The Plan Injunction is enforceable against Movant.**

25.    Movant asserts that the Plan Injunction is a *de facto* discharge (forbidden to a liquidating debtor under 11 U.S.C. § 1141(d)(3)) and is unenforceable against them. *Memorandum of Law*, at 6-7.  Not so. A temporary injunction, like the Plan Injunction, which lasts only so long as the liquidating debtor has assets does not affect a *de facto* discharge and is within the court's authority to issue pursuant to Bankruptcy Code section 105(a). As Judge Greenblatt explained in *In re Kabbage Inc.,* 2023 Bankr. LEXIS 671 (Bankr. D. De. March 15, 2023) when approving a similar plan injunction:

> While the plan provides for the liquidation of the debtors, it does not create a separate post-confirmation liquidating trust that would be eligible to take free and clear title to the debtors' assets under §

> 1141(c). Instead, those assets remain with the legal entities that consisted of the prepetition debtors, which are referred to after the effective date of the plan as the Wind Down Estates. Those entities are directed by the Wind Down Officer. Because the legal entities that made up the prepetition debtors will not end up as corporate shells upon the effective date but will instead hold assets that are intended to be distributed to creditors under the plan, the parties had good reason to protect the debtors and the Wind Down Estates from the holders of prepetition claims who might seek to defeat the operation of the plan by taking action against the post-bankruptcy entities on account of their prepetition claims.

*Id*. at *3. The court continued:

> The debtors here, of course, do not need injunctive protection once they no longer have any assets. Their only concern was preventing creditors from acting against the post-effective date entities while they do have assets. The debtors have no interest in "trafficking in corporate shells." Once the entities have distributed their assets in accordance with the plan, and are reduced to corporate shells, there is no longer any need to protect them. . . . The readily available solution, therefore, is to afford those entities not permanent injunctive relief, but rather temporary injunctive relief that will remain in effect only as long as those entities hold assets. . . . The plan has thus been revised to so provide that the relief afforded to the debtors and the Wind Down Estates is temporary rather than permanent. The Court is satisfied that this is precisely the type of interstitial, gap-filling authority that § 105(a) was intended to authorize.

*Id*. at *6-7.

26.     The State Court Action is enjoined by the Plan Injunction until such time as the Plan Administrator has liquidated all the Debtors' Assets and distributed them pursuant to the Plan. As is set forth in Goldberg Dec. II, while the Plan Administrator has made substantial progress, he has not liquidated all of the Debtor's Assets or distributed them under the Plan.

27.     Furthermore, this Court already approved the Plan Injunction in connection with confirmation, and Movant, who had notice of the bankruptcy proceeding on or about April 25, 2023, did not object to confirmation of the Plan or appeal the Confirmation Order that approved

the Plan Injunction. *See In re Town Sports Int',* 2023 U.S. Dist. LEXIS 227402 (denying relief

from the plan injunction to a pre-petition litigation claimant when the claimant did not object to

confirmation). Movant cannot rely on that argument now to collaterally attack the Confirmation

Order.

### III.    CONCLUSION

28.    In short, Movant has failed to establish "cause" to modify the Plan Injunction.

The damage to the estates of having to incur up to a $1 million in Defense Costs far exceeds the

harm to the Movant who has produced no evidence at all that his Claim will exceed the $1

million SIR. And even if it did, why should senior creditors, whose recoveries were bargained

for pursuant to the confirmed Plan have to pay to fund Movant's gamble?  Movant's longshot

attempt to "hit the jackpot" with a claim that exceeds $1 million will come out of the pockets of

other, senior creditors and may even reduce the recovery to Class 6 General Unsecured Creditors

(if there is one) in violation of the Plan.  Accordingly, the Court should deny the Motion.

Dated:  April 26, 2024              **PACHULSKI STANG ZIEHL & JONES LLP**

                                    */s/ Bradford J. Sandler*
                                    Robert J. Feinstein (admitted *pro hac vice*)
                                    Bradford J. Sandler
                                    Colin R. Robinson
                                    PACHULSKI STANG ZIEHL & JONES LLP
                                    780 Third Avenue, 34th Floor
                                    New York, NY 10017
                                    Telephone:  (212) 561-7700
                                    Facsimile:  (212) 561-7777
                                    Email: rfeinstein@pszjlaw.com
                                           bsandler@pszjlaw.com
                                           crobinson@pszjlaw.com


                                    *Counsel to the Plan Administrator*

# EXHIBIT A

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

</td></tr>
</table>

|  |  |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
|  | Hearing Date: May 7, 2024<br>at 10:00 a.m. |

**DECLARATION OF PLAN ADMINISTRATOR MICHAEL GOLDBERG IN SUPPORT
OF MOTION FOR ORDER MODIFYING THE AUTOMATIC STAY AND PLAN
INJUNCTION TO ALLOW MOVANT TO CONTINUE PENDING LITIGATION
AGAINST THE DEBTOR, TO RECOVER SOLELY AGAINST DEBTOR'S INSURER,
WAIVING THE PROVISIONS OF FED. R. BANKR. P. 4001 (A) (3) AND FOR
RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Michael Goldberg, under penalty of perjury, declare as follows:

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

1.      I am the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath &

Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors"). I give this declaration in support of my

Opposition (the "Opposition") to the *Motion for Order Modifying The Automatic Stay And Plan*

*Injunction To Allow Movant To Continue Pending Litigation Against The Debtor, To Recover*

*Solely Against Debtor's Insurer, Waiving The Provisions Of Fed. R. Bankr. P. 4001 (A) (3) And*

*For Related Relief* [Docket No. 2936] (the "Motion") filed on behalf of Alfred Zeve ("Movant").[3]

2.      Except as otherwise indicated, the statements in this declaration are based on: (a)

my personal knowledge of the Debtors' business operations since my appointment as Plan

Administrator; (b) my review of relevant documents including the Amended Motion; (c)

information provided to me by, or discussions with, members of my management team, other

employees, or the Debtors' other advisors; and/or (d) my general experience and knowledge. I am

authorized to submit this declaration. If called upon to testify, I can and will testify competently

as to the facts set forth herein.

3.      A true and correct copy of the Proof of Claim filed by Movant is attached as **Exhibit**

**1**.

4.      The Debtors are their own insurer for all personal injury claims under $1 million.

The general liability policy that is applicable to the Zeve Claim is GL 4062767 (the "Policy") with

Safety National Casualty Corporation ("Safety National"). The Policy was assumed by the Debtors

pursuant to the Plan, and the Confirmation Order imposes upon me, as Plan Administrator, certain

duties of cooperation with Safety National.

---

[2]    Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which
was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly
known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833
DOS ID 315602].

[3] Capitalized terms that are not defined in this Declaration have the meaning given to them in the Opposition.

5.      Pursuant to a Self-Insured Retention Endorsement (the "SIR Endorsement"), the Policy has a $1 million per occurrence self-insured retention (the "SIR"). The SIR includes Defense Costs.

6.      A true and correct copy of the SIR Endorsement is attached as **Exhibit 2**.

7.      Historically, the Debtors were required to pay all legal expenses, other defense costs (experts, et cetera) and judgments or settlement amounts up to the $1 million SIR before Safety National paid anything under the SIR Policy. Safety National did not "front" Defense Costs and then seek reimbursement from the Debtors.

8.      I am informed and believe that from 2012-2020 (the years for which the personal injury cases were fairly developed and might provide an accurate predictor of costs associated with cases that were pending on the Petition Date), the Debtors paid $12.14 million in attorney's fees related to personal injury claims, or an average of $1.52 million per year. During that time, only 3 cases exceeded the $1 million SIR (inclusive of Defense Costs and settlement/judgment amounts).

9.      If the Court grants relief from the Plan Injunction to permit the State Court Action to move forward, I will have choose whether to (a) defend the case (which will, absent settlement, involve motion practice, discovery, pretrial proceedings and trial), causing the estates to incur tens or even hundreds of thousands of dollars in attorneys' fees; or (b) not defend the case in which case, either (i) Movant will take a default judgement against the Debtors (exposing the estates to a claim by Safety National that it has breached the terms of the Policy); or (ii) Safety National may step in to defend and it may then assert an administrative claim against the Debtors.[4]  Under any

---

[4] I do not concede Safety National's interpretation of the Policy or the SIR Endorsement and I reserve all rights, arguments, claims and defenses under the Policy and the SIR Endorsement.

possible scenario, the estates risk being drained for the benefit of an individual who holds, at best, a disputed, unliquidated Class 6 General Unsecured Claim.

10.     Each dollar that I spend in Defense Costs is a dollar that is contractually obligated to senior creditors under the Waterfall Recovery mechanism in confirmed Plan. Moreover, should the I be able to collect sufficient Assets to make even a *de minimis* distribution to Holders of Allowed Class 6 General Unsecured Creditors, their *pro rata* recoveries will also be diminished by the money that the estates have had to spend in Defense Costs. Why should other creditors pay for Movant's attempt to hit-the-jackpot by getting an over-the-SIR judgment, especially where, as here, as I previously noted, the estates may well be administratively insolvent. *See Declaration of Michael Goldberg in Support of Motion for Order Extending Period to Object to Claims* [Docket No. 2906], 5-6 ("Goldberg Dec. II") ("Absent a significant reduction in the Asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full.").

11.     If the Court grants the requested relief, my staff and I will have to spend time and incur expenses to respond to and defend against the State Court Action as we are trying to wind-down the Debtors and make distributions to creditors.

12.     Finally, granting relief from the Plan Injunction to Movant will embolden other personal injury claimants to seek relief which will expose the estates to tens or hundreds of thousands of dollars in Defense Costs. I am informed and believe that on the Petition Date, approximately 55 personal injury cases were being litigated against the Debtors, 53 of which requested damages within the SIR of $1 million and two of which requested damages in excess of $1 million.

13.     For these reasons and for the arguments set forth in the Supplemental Opposition, I ask the Court to deny the Amended Motion.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 26, 2024                    /s/ Michael Goldberg
                                         By: Michael Goldberg
                                         In His Capacity as Plan Administrator to 20230930-
                                         DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond
                                         Inc.) and 73 affiliated debtors

# EXHIBIT 1

**United States Bankruptcy Court, District of New Jersey (Newark)**

**Fill in this information to identify the case (Select only one Debtor per claim form)**

| | | | |
|---|---|---|---|
| ☑ Bed Bath & Beyond Inc. (Case No. 23-13359) | ☐ Alamo Bed Bath & Beyond Inc. (Case No. 23-13360) | ☐ BBB Canada LP Inc. (Case No. 23-13361) | ☐ BBB Value Services Inc. (Case No. 23-13362) |
| ☐ BBBY Management Corporation (Case No. 23-13363) | ☐ BBBYCF LLC (Case No. 23-13364) | ☐ BBBYTF LLC (Case No. 23-13365) | ☐ bed 'n bath Stores Inc. (Case No. 23-13396) |
| ☐ Bed Bath & Beyond of Annapolis, Inc. (Case No. 23-13366) | ☐ Bed Bath & Beyond of Arundel Inc. (Case No. 23-13367) | ☐ Bed Bath & Beyond of Baton Rouge Inc. (Case No. 23-13368) | ☐ Bed Bath & Beyond of Birmingham Inc. (Case No. 23-13369) |
| ☐ Bed Bath & Beyond of Bridgewater Inc. (Case No. 23-13370) | ☐ Bed Bath & Beyond of California Limited Liability Company (Case No. 23-13371) | ☐ Bed Bath & Beyond of Davenport. Inc. (Case No. 23-13372) | ☐ Bed Bath & Beyond of East Hanover Inc. (Case No. 23-13373) |
| ☐ Bed Bath & Beyond of Edgewater Inc. (Case No. 23-13374) | ☐ Bed Bath & Beyond of Falls Church, Inc. (Case No. 23-13375) | ☐ Bed Bath & Beyond of Fashion Center, Inc. (Case No. 23-13376) | ☐ Bed Bath & Beyond of Frederick, Inc. (Case No. 23-13377) |
| ☐ Bed Bath & Beyond of Gaithersburg Inc. (Case No. 23-13378) | ☐ Bed Bath & Beyond of Gallery Place L.L.C. (Case No. 23-13379) | ☐ Bed Bath & Beyond of Knoxville Inc. (Case No. 23-13380) | ☐ Bed Bath & Beyond of Lexington Inc. (Case No. 23-13381) |
| ☐ Bed Bath & Beyond of Lincoln Park Inc. (Case No. 23-13382) | ☐ Bed Bath & Beyond of Louisville Inc. (Case No. 23-13383) | ☐ Bed Bath & Beyond of Mandeville Inc. (Case No. 23-13384) | ☐ Bed, Bath & Beyond of Manhattan, Inc. (Case No. 23-13397) |
| ☐ Bed Bath & Beyond of Opry Inc. (Case No. 23-13385) | ☐ Bed Bath & Beyond of Overland Park Inc. (Case No. 23-13386) | ☐ Bed Bath & Beyond of Palm Desert Inc. (Case No. 23-13387) | ☐ Bed Bath & Beyond of Paradise Valley Inc. (Case No. 23-13388) |
| ☐ Bed Bath & Beyond of Pittsford Inc. (Case No. 23-13389) | ☐ Bed Bath & Beyond of Portland Inc. (Case No. 23-13390) | ☐ Bed Bath & Beyond of Rockford Inc. (Case No. 23-13391) | ☐ Bed Bath & Beyond of Towson Inc. (Case No. 23-13392) |
| ☐ Bed Bath & Beyond of Virginia Beach Inc. (Case No. 23-13393) | ☐ Bed Bath & Beyond of Waldorf Inc. (Case No. 23-13394) | ☐ Bed Bath & Beyond of Woodbridge Inc. (Case No. 23-13395) | ☐ Buy Buy Baby of Rockville, Inc. (Case No. 23-13398) |
| ☐ Buy Buy Baby of Totowa, Inc. (Case No. 23-13399) | ☐ Buy Buy Baby, Inc. (Case No. 23-13400) | ☐ BWAO LLC (Case No. 23-13401) | ☐ Chef C Holdings LLC (Case No. 23-13402) |
| ☐ Decorist, LLC (Case No. 23-13403) | ☐ Deerbrook Bed Bath & Beyond Inc. (Case No. 23-13404) | ☐ Harmon of Brentwood, Inc. (Case No. 23-13405) | ☐ Harmon of Caldwell, Inc. (Case No. 23-13406) |
| ☐ Harmon of Carlstadt, Inc. (Case No. 23-13407) | ☐ Harmon of Franklin, Inc. (Case No. 23-13408) | ☐ Harmon of Greenbrook II, Inc. (Case No. 23-13409) | ☐ Harmon of Hackensack, Inc. (Case No. 23-13410) |
| ☐ Harmon of Hanover, Inc. (Case No. 23-13411) | ☐ Harmon of Hartsdale, Inc. (Case No. 23-13412) | ☐ Harmon of Manalapan, Inc. (Case No. 23-13413) | ☐ Harmon of Massapequa, Inc. (Case No. 23-13414) |
| ☐ Harmon of Melville, Inc. (Case No. 23-13415) | ☐ Harmon of New Rochelle, Inc. (Case No. 23-13416) | ☐ Harmon of Newton, Inc. (Case No. 23-13417) | ☐ Harmon of Old Bridge, Inc. (Case No. 23-13418) |
| ☐ Harmon of Plainview, Inc. (Case No. 23-13419) | ☐ Harmon of Raritan, Inc. (Case No. 23-13420) | ☐ Harmon of Rockaway, Inc. (Case No. 23-13421) | ☐ Harmon of Shrewsbury, Inc. (Case No. 23-13422) |
| ☐ Harmon of Totowa, Inc. (Case No. 23-13423) | ☐ Harmon of Wayne, Inc. (Case No. 23-13424) | ☐ Harmon of Westfield, Inc. (Case No. 23-13425) | ☐ Harmon of Yonkers, Inc. (Case No. 23-13426) |
| ☐ Harmon Stores, Inc. (Case No. 23-13427) | ☐ Liberty Procurement Co. Inc. (Case No. 23-13428) | ☐ Of a Kind, Inc. (Case No. 23-13429) | ☐ One Kings Lane LLC (Case No. 23-13430) |
| ☐ San Antonio Bed Bath & Beyond Inc.(Case No. 23-13431) | ☐ Springfield Buy Buy Baby, Inc. (Case No. 23-13432) | | |

**Claim Number: 14513**

Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **Who is the current creditor?** | Alfred Zeve |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| | | |
| --- | --- | --- |
| 2. | **Has this claim been acquired from someone else?** | ☑ No |
| | | ☐ Yes. From whom? _____ |

| | | | |
| --- | --- | --- | --- |
| 3. | **Where should notices and payments to the creditor be sent?** | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | c/o The Zimmerman Law Firm | |
| | | 3501 West Waco Drive | |
| | | | |
| | | Waco | |
| | | TX | |
| | | 76710 | |
| | | Contact phone 2547529689 | Contact phone _____ |
| | | Contact email ksmith@zlawhelp.com | Contact email _____ |

| | | |
| --- | --- | --- |
| 4. | **Does this claim amend one already filed?** | ☑ No |
| | | ☐ Yes.   Claim number on court claims registry (if known)_____   Filed on ____ / ____ / _____  MM / DD / YYYY |

| | | |
| --- | --- | --- |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
| | | ☐ Yes. Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
| --- | --- |

| | | |
| --- | --- | --- |
| 6. | **Do you have any number you use to identify the debtor?** | ☐ No |
| | | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| | | |
| --- | --- | --- |
| 7. | **How much is the claim?** | $ 245,000.00   **. Does this amount include interest or other charges?** |
| | | ☑ No |
| | | ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | | |
| --- | --- | --- |
| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. |
| | | Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). |
| | | Limit disclosing information that is entitled to privacy, such as health care information. |
| | | Personal injury |

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                           $_____

**Amount of the claim that is secured:**      $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| 13. | Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☑ No | |
|---|---|---|---|
| | | ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

| 14. | Is all or part of the claim being asserted as an administrative expense claim? | ☑ No | |
|---|---|---|---|
| | | ☐ Yes. **Indicate the amount of your claim for costs and expenses of administration of the estates pursuant to 503(b), other than section 503(b)(9), or 507(a)(2). Attach documentation supporting such claim. If yes, please indicate when this claim was incurred:** | |
| | | ☐ **On or prior to June 27, 2023:** | $_____ |
| | | ☐ **After June 27, 2023:** | $_____ |
| | | **Total Administrative Expense Claim Amount:** | $_____ |

**THIS SECTION SHOULD ONLY BE USED BY CLAIMANTS ASSERTING AN ADMINISTRATIVE EXPENSE CLAIM ARISING AGAINST ONE OF THE ABOVE DEBTORS FOR POSTPETITION ADMINISTRATIVE CLAIMS. THIS SECTION SHOULD NOT BE USED FOR ANY CLAIMS THAT ARE NOT OF A KIND ENTITLED TO PRIORITY IN ACCORDANCE WITH 11 U.S.C. §§ 503(B) AND 507(A)(2); PROVIDED, HOWEVER; THIS SECTION SHOULD NOT BE USED FOR CLAIMS PURSUANT TO SECTION 503(B)(9) OF THE BANKRUPTCY CODE.**

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*MAZ*                                                    07/21/2023

_____
Signature

**Name of the person who is completing and signing this claim:**

| Name | Michael A. Zimmerman |
|---|---|
| | First name            Middle name            Last name |
| Title | The Zimmerman Law Firm |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 3501 West waco Drive |
| | Number        Street |
| | Waco                    Tx                    76710 |
| | City                                State            ZIP Code |
| Contact phone | 2547529689 | Email | ksmith@zlawhelp.com |

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:

City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

-------------------------------------------------------------------------------------------------------------

Attachment Filename:

1)Original Petition - Premises - Expedited(fmc).pdf

**KROLL**

FILED
2/10/2023 4:23 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Shunta Jackson DEPUTY

DC-23-01958

NO. _____

| | | |
|---|---|---|
| **ALFRED ZEVE,**<br>   **Plaintiff,** | §<br>§<br>§ | **IN THE DISTRICT COURT OF** |
| **V.** | §<br>§<br>§ | **DALLAS COUNTY, TEXAS** |
| **BED BATH & BEYOND INC d/b/a BED BATH & BEYOND,**<br>   **Defendant.** | §<br>§ 101st<br>§<br>§ | **\_\_\_\_\_ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, ALFRED ZEVE, Plaintiff herein, complaining of and about BED BATH & BEYOND INC d/b/a BED BATH & BEYOND, Defendant herein, who were acting in conformity with the allegations in this Petition and for cause of action would show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends that discovery be conducted under Discovery Level 1 of the *Texas Rules of Civil Procedure.*

### PARTIES AND SERVICE

2.    Plaintiff Alfred Zeve is an individual residing in Dallas County, Texas.

3.    Defendant Bed Bath & Beyond Inc d/b/a Bed Bath & Beyond is a foreign for-profit corporation registered to do business in the state of Texas. Defendant may be served pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code by serving its registered agent: C T Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201-3136. Service of said Defendant as described above can be effected by personal service.

**JURISDICTION AND VENUE**

4.      Plaintiff seeks only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs.

5.      The subject matter in controversy is within the jurisdictional limits of this Court.

6.      This Court has jurisdiction over Defendant Bed Bath & Beyond Inc d/b/a Bed Bath & Beyond because it is a corporation that purposely availed itself of the privilege of conducting activities in the State of Texas and establish minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

7.      In addition, and in the alternative, Plaintiff would show that Defendant Bed Bath & Beyond Inc d/b/a Bed Bath & Beyond had continuous and systematic contacts with the State of Texas sufficient to establish general jurisdiction over said Defendant.

8.      In addition, and in the alternative, Plaintiff would also show that the cause of action arose from or relates to the contacts of Defendant Bed Bath & Beyond Inc d/b/a Bed Bath & Beyond to the State of Texas, conferring specific jurisdiction with respect to said Defendant.

9.      Venue in Dallas County is proper in this cause under TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) because all or a substantial part of the events or omissions giving rise to this lawsuit occurred here.

10.      All conditions precedent have been met or have occurred.

**FACTS**

11.      On or about February 27, 2021, Plaintiff entered the Bed Bath & Beyond Inc d/b/a Bed Bath & Beyond store located at 13910 Dallas Parkway in Dallas, Texas, 75240 as a business

invitee and patron. While in the store, Plaintiff slipped and fell on liquid that was left on the

entrance floor by Defendant's employees, causing him to suffer physical injuries as a proximate

and direct result of that dangerous condition. Upon information and belief, the liquid/water had

been on the floor for a sufficient length of time that Defendant's employees knew of or should

have discovered the condition.

### RESPONDEAT SUPERIOR

12.     Under the doctrine of *respondeat superior*, Defendant is vicariously liable for the

actions of their respective employee(s) who were acting within the course and scope of their

employment with Defendant.

### PLAINTIFF'S CLAIM AGAINST DEFENDANT

13.     At all times material hereto, Defendant was the owner and operators of the Bed

Bath & Beyond Inc d/b/a Bed Bath & Beyond located at 13910 Dallas Parkway in Dallas, Texas,

75240 and Defendant's employed the employees working in said restaurant.

14.     At all times material hereto, Plaintiff was an invitee on the premises.

15.     Defendant and/or its employees knew or should have known of the dangerous

condition created by the water on the floor.

16.     The condition presented an unreasonable risk of harm to store patrons, such as

Plaintiff.

17.     Defendant failed to make the condition reasonably safe and failed to provide

Plaintiff with an adequate warning of the condition.

18.     Plaintiff fell and was injured as a direct and proximate result of Defendant's failures

to make the condition reasonably safe and to warn Plaintiff of the condition.

**DAMAGES FOR PLAINTIFF**

19.     As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendant's acts as described herein, Plaintiff was caused to suffer injuries to his person and to incur the following damages:

a.   Reasonable medical care and expenses in the past. These expenses were incurred by him for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in the Texas counties in which they were incurred;

b.   Physical pain and suffering in the past;

c.   Physical pain and suffering which will, in all probability, be incurred in the future;

d.   Physical impairment in the past; and

e.   Physical impairment which, in all probability, will be suffered in the future.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

**LAW OFFICES OF ZIMMERMAN,
COTNER, RESSETAR, BENNETT & LANE**
A Professional Corporation
3501 West Waco Drive
Waco, Texas 76710
(254) 752-9688
(254) 752-9680 (fax)

BY:_____
    MICHAEL A. ZIMMERMAN
    State Bar No. 22271400
    mzimmerman@zlawhelp.com

    **ATTORNEYS FOR PLAINTIFF**

Electronic Proof of Claim Confirmation:  3335-1-DJELU-334756692

Claim Electronically Submitted on (UTC) :  2023-07-21T17:06:25.118Z

Submitted by:  Alfred Zeve
              ksmith@zlawhelp.com

**KROLL**

# EXHIBIT 2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| Self-Insured Retention | $ | 1,000,000 | Per "Occurrence" |
|---|---|---|---|
| Self-Insured Retention | $ | N/A | Per "Claim" |
| Aggregate Self-Insured Retention Amount (if applicable) | $ | N/A | |

## CHANGE

**I.**    The Coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY, MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to apply the additional provisions noted below.

### A.    SELF-INSURED RETENTION

Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention.  Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form.  The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

#### 1.    SELF-INSURED RETENTION PER OCCURRENCE

If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Occurrence amount is the most you will pay for Self-Insured Retention amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or claim.

**2.  SELF-INSURED RETENTION PER CLAIM**

If a Per Claim Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each claim until you have paid the Self-Insured Retention amount and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Claim amount is the most you will pay for Self-Insured Retention amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

**3.  AGGREGATE SELF-INSURED RETENTION AMOUNT**

The Aggregate Self-Insured Retention Amount only applies if an Aggregate Self-Insured Retention Amount is shown in the above Schedule.  If an Aggregate Self-Insured Retention Amount is shown in the Schedule, that amount is the most you will pay for all Self-Insured Retention amounts and "defense costs" incurred under this policy.  The Aggregate Self-Insured Retention Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

**B.  LIMIT OF INSURANCE**

The applicable **LIMIT OF INSURANCE** provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule.

**C.  OUR RIGHT TO REIMBURSEMENT**

With respect to any claim or "suit" under this policy that has been tendered to us and that may exceed the applicable Self-Insured Retention amount, we may pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit".
If we do so, you must promptly reimburse us for our payment.

**II.  CHANGES IN THE CONDITIONS SECTION OF EACH OF THE ABOVE-LISTED COVERAGE FORMS**

**A.  The following is added to the BANKRUPTCY Condition:**

Satisfaction of the Self-Insured Retention amounts by you is a condition precedent to our liability for amounts in excess of the Self-Insured Retention regardless of insolvency or bankruptcy or inability to pay by you.  Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay by the "insured" or the "insured's" estate will not operate to:

1.  Deplete or reduce the Self-Insured Retention;
2.  Increase our liability under this policy; or
3.  Relieve us of our obligations under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In no event will we assume responsibility or obligations of the "insured".

**B**. The following is added to the **DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE, INJURY, POLLUTION INCIDENT, CLAIM OR SUIT**(as applicable to the above-listed Coverage Form) Condition:

The "insured" must promptly give our authorized representative and our Claims Department a complete report of the existence of any claim or "suit" involving the following factors or probabilities:

1.  If the "ultimate net loss" for a claim or "suit" or multiple claims or "suits" arising out of any one "occurrence" or offense may, or is likely to, exceed 50% of the Self-Insured Retention; or

2.  If an "occurrence", offense, claim or "suit" involves:

    a.  Death;
    b.  Brain or spinal injury;
    c.  Amputation;
    d.  Loss of use of an arm, eye or leg;
    e.  Severe burns involving more than 25% of the body;
    f.  Multiple fractures;
    g.  Permanent and total disability;
    h.  Sexual abuse or molestation;
    i.  Significant psychological or neurological involvement;
    j.  Severe internal body organ damage or loss;
    k.  Severe cosmetic deformity or disfigurement;
    l.  A hospital stay of two weeks or longer;
    m.  An alleged error or omission of the "insured", the "insured's" claims service organization, or us or a claim for punitive damages against any of them; or
    n.  An actual or potential conflict of interest between the "insured" and us, or between the "insured's" claims service organization and us.

**C.**  The following is added to the **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition:

If the "insured" had rights to recover all or part of any payment we have made in excess of the Self-Insured Retention, those rights are transferred to us.  The "insured" must do nothing after loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.  Any amounts recovered will first be applied to reimburse us to the extent of our actual payment.

**D.  DEFENSE & SETTLEMENT** shall be added as follows:

1.  You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so.  If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2.  We will have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention.  If we avail ourselves of that right, you must cooperate with us.  In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit", you shall not be liable to reimburse us for those "defense costs".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

3. We may investigate and settle any claim or "suit" as we consider appropriate both within and in excess of the applicable Self-Insured Retention but we shall obtain your consent prior to entering into any settlement of a claim or "suit" that is equal to or less than the Self-Insured Retention amount.  If, however, you do not consent to any settlement within the Self-Insured Retention amount that is recommended by us and instead elect to contest the claim or continue with any legal proceedings involving the claim, our liability for the claim shall not exceed the amount determined by subtracting the Self-Insured Retention amount from the amount for which we recommended settlement, including "defense costs" incurred with our consent, to the date of such refusal.  Further we shall have no liability with respect to such claim if the result of the above calculation is zero or negative.  We will not continue to defend or settle any claim or "suit" after the Limit of Insurance of the applicable coverage has been exhausted by payments of judgments or settlements.

**E.   CLAIMS ADMINISTRATION** shall be added as follows:

You agree to maintain a continuous contract, with an independent claims service administrator approved for use by us, at your expense without reimbursement from us, and that such claims service administrator will report to us on a monthly basis all claims activity, including identity of claimants and the date, type, estimated payments, description and disposition of all claims.

**F.   SELF-INSURED RETENTION REPORTING** shall be added as follows:

You or the authorized claim service administrator must monitor the cumulative Self-Insured Retention amounts and "defense costs" incurred during the policy period and report those total amounts to us on a quarterly basis.  However, regardless of the quarterly reporting requirements, if the total of all incurred losses and "defense costs" should, at any time during the policy period, attain a total amount equal to 75% of the Aggregate Retention amount, you are required to make an immediate report to us of the total incurred losses and "defense costs" sustained at that time.

The required quarterly report must be in a format acceptable to us and shall include a listing of all individual losses and "defense costs" incurred as of the date of the report.

Within forty-five (45) days after the end of the policy term, you must give a listing of all existing claims or "suits" within the Self-Insured Retention amounts. Such listing shall include a description of each claim, "occurrence" or offense; date of the "occurrence" or offense; and the current status of the claim or "suit". Thereafter and on a quarterly basis, you shall provide an updated status of all claims or suits, paid and reserved, until all claims or "suits" are closed and settled.

Compliance with the reporting requirements set forth above, is a condition precedent to coverage.  In the event of non-compliance, we shall not be required to establish prejudice resulting from reporting noncompliance and shall be automatically relieved of liability with respect to the claim.

**G.  MIDTERM CANCELLATION** shall be added as follows:

If an Aggregate Self-Insured Retention Amount is shown in the above Schedule, in the event of a midterm cancellation, the Aggregate Self-Insured Retention Amount shall not be subject to any pro rata reduction.  Such Aggregate Self-Insured Retention Amount will apply as if the policy term had not been shortened.

**H.  GOOD FAITH** shall be added as follows:

You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**I.   HOLD HARMLESS AGREEMENT** shall be added as follows:

The "insured" will hold us harmless and indemnify us for any and all damages or attorney fees or other costs or expenses which are imposed upon us because of the acts or omissions of the "insured" or of the "insured's" employees, agents or independent contractors in the course of the investigation, settlement or defense of any claim or "suit" to which this insurance applies.

**J.   REPRESENTATIONS** shall be added as follows:

You agree that the procurement of insurance for all or any part of the Self-Insured Retention amounts shown in the above Schedule will cause there to be no coverage under this policy.

**K.   DISPUTE RESOLUTION** shall be added as follows:

If we and the "insured" do not agree whether coverage is provided under this policy or this Endorsement, or do not agree concerning the timing or amount of settlement of a claim or "suit", then either party may submit the matter to a court of competent jurisdiction or may make a written demand for arbitration. Where required by state law, the "insured" shall have the option of instead submitting the matter to a court of competent jurisdiction.    We have the absolute right to determine when a claim or "suit" should be settled and may proceed to settle the claim or "suit" if the "insured" refuses to do so upon our demand, or if the "insured" refuses to contribute the amount of the Self-Insured Retention.

When a matter is submitted for arbitration, we and the "insured" may agree to use one arbitrator.  If the parties fail to agree on one arbitrator, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, each will name two arbitrators of which the other party will decline one, and the final selection will be made by drawing lots.  If either party fails to appoint an arbitrator within 30 days of receiving written notice, delivered by certified mail, requesting it to do so, the requesting party will name both arbitrators.  Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding unless state laws do not allow for binding arbitration without the consent of the "insured" in which case the decision will be binding unless, upon commencement of the arbitration, the "insured" has made written demand for non-binding arbitration.  A decision rendered in a non-binding arbitration shall not preclude either party from submitting the matter to a court of competent jurisdiction following the rendering of such decision. Unless a non-binding decision has been elected, upon our request or the request of the "insured", a judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction.

**III.  ADDITIONAL DEFINITIONS**

The following are added to the **DEFINITIONS** Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1. All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2. All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 03/01/2020          Policy No. GL 4062767          Endorsement No.

Insured BED BATH & BEYOND INC.                              Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____