| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Robert J. Feinstein (admitted *pro hac vice*)<br>Bradford J. Sandler<br>Paul J. Labov<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**PLAN ADMINISTRATOR'S MOTION PURSUANT TO SECTION 105
OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER (I) APPROVING
SETTLEMENT AGREEMENT WITH THE CHUBB COMPANIES;
(II) WITHDRAWING PROOF OF CLAIM NO. 11413;
<u>AND (III) GRANTING RELATED RELIEF</u>**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BB&B")[2] and affiliated debtors (the "Debtors"), by and through his undersigned counsel, hereby files this motion (the "Motion") pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and, to the extent applicable, Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of the order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement by and between the Plan Administrator on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, on the one hand, and Federal Insurance Company, on behalf of itself and all of its U.S.-based affiliates, predecessors, and successors (collectively, the "Chubb Companies"), on the other hand, and attached as **Exhibit 1** to the Proposed Order (the "Settlement Agreement")[3]; (ii) withdrawing proof of claim no. 11413; and (iii) granting related relief. In support of this Motion, the Plan Administrator respectfully represents as follows:

### Jurisdiction and Venue

1.  The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[2] Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] The capitalized terms used in this section, to the extent not defined herein, shall have the meanings given to them in the Settlement Agreement.

2. The Plan Administrator confirms his consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are section 105 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019.

## Background

### A. The Bankruptcy Cases

5. On April 23, 2023 (the "Petition Date"), each Debtor, including BB&B, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). During the Chapter 11 Cases, the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases were procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).

6. On May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 218].

7. On or about May 30, 2023, the Debtors filed their schedules and statements [Doc. Nos. 499-573], which were amended on or about July 12, 2023 [Doc. No. 1327] (the "Schedules").

8. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing*

3

*Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order").

9. The Bar Date Order set July 7, 2023 as the General Claims Bar Date and October 20, 2023 as the Governmental Bar Date.

10. On September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 111 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2160] (as amended, the "Plan").

11. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. *See* Plan, Article IV, at § B.

12. Pursuant to the Plan, for any Claim or Cause of Action (each as defined in the Plan) where the amount in controversy is greater than $10 million and the settlement amount is less than 70%, the Plan Administrator shall have the authority to release or settle such Claims or Causes of Action upon an affirmative vote of two members of the Oversight Committee.

  **B.  The Cost Plus Insurance Program and the Letter of Credit**

13. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, extended amended, modified, endorsed or supplemented from time to time, collectively, the "Cost Plus Policies") to Cost Plus, Inc. ("Cost Plus"), a non-Debtor former subsidiary of BB&B, as named insured, and certain of the Cost Plus Policies also provide coverage to certain affiliates or subsidiaries of Cost Plus.

4

14. Prior to the Petition Date, the Chubb Companies, Cost Plus and/or BB&B also entered into certain written agreements in connection with the Cost Plus Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements"), including, but not limited to, that certain Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004 (the "2004 RISA").

15. Pursuant to the Cost Plus Policies and Insurance Agreements (collectively, the "Cost Plus Insurance Program"),[4] the Chubb Companies provide, *inter alia*, certain workers' compensation, automobile liability, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein.

16. Pursuant to the Cost Plus Insurance Program, the insureds are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Cost Plus Insurance Program (collectively, the "Obligations").

17. Pursuant to Amendment Nos. 8 and 9 to the 2004 RISA, BB&B guarantees and is obligated to pay to the Chubb Companies certain of the Obligations and is jointly and severally liable for such Obligations (the "BB&B Guaranty").

---

[4] As used in this Motion, the defined term "Cost Plus Insurance Program" shall not include any of the insurance policies issued by the Chubb Companies to any of the Debtors or their predecessors (other than Cost Plus) as named insureds or any agreements related thereto (such insurance policies and related agreements, collectively, the "BB&B Insurance Program"). For the avoidance of doubt, nothing shall alter, modify, amend, affect, impact, or prejudice in any respect any of the terms and conditions of the BB&B Insurance Program and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses of the Chubb Companies, the Plan Administrator, the Debtors, the Debtors' estates, any of the Debtors' affiliates or successors, or any other individual or entity, as applicable, under the BB&B Insurance Program.

18. As collateral and/or security for the Obligations and the BB&B Guaranty, and as required and pursuant to the Cost Plus Insurance Program, BB&B provided to the Chubb Companies that certain irrevocable letter of credit number NUSCGS033844 issued by JPMorgan Chase Bank, N.A. (the "<u>Issuing Bank</u>") in the current amount of $1,576,705 (as amended, confirmed, supplemented or replaced, and together with the proceeds thereof, collectively, the "<u>Letter of Credit</u>"), which is held by, or under the control of, the Chubb Companies.

19. In accordance with the Bar Date Order, the Chubb Companies timely filed, among other proofs of claim, a proof of claim (the "<u>BB&B Guaranty POC</u>"), which is listed on the Claims Register as proof of claim no. 11413, asserting a claim against BB&B in the estimated amount of $984,870.00, plus additional contingent and unliquidated amounts on account of the BB&B Guaranty.

20. Pursuant to the Plan, on the Effective Date, among other things, all of the Debtors' rights and obligations under the Cost Plus Insurance Program vested, unaltered and in their entireties, with the Plan Administrator, as set forth more fully in the Plan.

C. **The Proposed Settlement Agreement**

21. The Plan Administrator requested that the Chubb Companies reduce, return, or release all or a portion of the Letter of Credit (the "<u>Request</u>").

22. The Chubb Companies and the Plan Administrator engaged in discussions and negotiations regarding this Request.

23. The Plan Administrator and the Chubb Companies entered into the Settlement Agreement including the terms described below.

24. The Settlement Agreement requires, among other things, the Plan Administrator to seek and obtain entry of an order in the form of the Proposed Order attached hereto as **Exhibit A** approving the Settlement Agreement.

**Relief Requested**

25. By this Motion, the Plan Administrator seeks the entry of an order in an abundance of caution, substantially in the form of the Proposed Order, pursuant to section 105 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019 approving the settlement between the Plan Administrator and the Chubb Companies on the terms contained in the Settlement Agreement.

26. A summary of pertinent terms of the Settlement Agreement include:[5]

    (a)   Draw Down and Release of the Letter of Credit.[6]

        (1)   The Retained LOC Proceeds. Within fifteen (15) business days after the Settlement Effective Date (as defined herein), the Chubb Companies shall submit to the Issuing Bank via overnight mail a request for a draw on the Letter of Credit in the amount of $500,000.00 (the "Retained LOC Proceeds") in accordance with and subject to the terms of the Letter of Credit and/or non-bankruptcy law.

        (2)   Release of the Letter of Credit. Within twenty (20) business days after the date on which the Chubb Companies confirm receipt of the amount of the draw for the Retained LOC Proceeds from the Issuing Bank, the Chubb Companies shall fully and finally release the Letter of Credit to the Issuing Bank with instructions that the Letter of Credit may be

---

[5] Descriptions of the terms of the Settlement Agreement contained in this Motion are meant for informative purposes only, and in the event that there is any conflict between this Motion and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[6] On or about April 25, 2024, the Chubb Companies received a notice from the Issuing Bank that the Letter of Credit will not be renewed and shall expire on June 30, 2024. In the event that the Settlement Effective Date does not occur before June 10, 2024, paragraph 2(a) and (b) of the Settlement Agreement shall be deemed void, and on June 10, 2024 or within seven (7) calendar days thereafter, the Chubb Companies shall submit to the Issuing Bank via overnight mail a request for a draw on the Letter of Credit in the full amount thereof in accordance with and subject to the terms of the Letter of Credit and/or non-bankruptcy law (the "Full Draw"). Within twenty (20) business days after the date on which the Chubb Companies confirm receipt of the amount of the Full Draw from the Issuing Bank, and subject to the occurrence of the Settlement Effective Date, the Chubb Companies shall pay the difference between the amount of the Full Draw and the Retained LOC Proceeds to the Plan Administrator via ACH or wire transfer at the Chubb Companies' sole discretion pursuant to the ACH or wire instructions provided by the Plan Administrator, along with a W-9.

cancelled in accordance with and subject to the terms of the Letter of Credit and/or non-bankruptcy law.

(3) <u>Retention of Certain Amounts by the Chubb Companies</u>. On and after the Settlement Effective Date, and except as expressly provided in paragraph 2(b) hereof, the Chubb Companies shall indefeasibly retain the Retained LOC Proceeds and any and all other amounts previously paid or deposited with or provided to the Chubb Companies by any of the Debtors in connection with the Cost Plus Insurance Program including, but not limited to, all collateral and other security provided to the Chubb Companies in respect of and to secure the BB&B Guaranty, and further including but not limited to any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to the Chubb Companies at any time that may otherwise be due at any time from the Chubb Companies to the Plan Administrator in connection with the Cost Plus Insurance Program, if any (collectively, the "<u>Credits</u>," and together with the Retained LOC Proceeds, the "<u>Retained Amounts</u>").

(b) <u>Plan Administrator Divested of All Right, Title and Interest in the Retained Amounts</u>. On the Settlement Effective Date, the Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, hereby forever waives and releases all of his and their rights, title and interest, if any, in and to the Retained Amounts. For the avoidance of doubt, upon and following the Settlement Effective Date, none of the Plan Administrator, any party claiming by or through the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' successors and affiliates, shall have any right, title or interest whatsoever in the Retained Amounts.

(c) <u>The Chubb Companies' Right, Title and Interest in the Retained Amounts</u>. The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, agrees that, upon and following the Settlement Effective Date, the Chubb Companies shall have all right, title, and interest in the Retained Amounts. The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, agrees that, except as expressly provided in paragraph 2(b) hereof, no collateral and/or security shall be reduced, released, or returned to the Plan Administrator, the

8

Debtors, the Debtors' estates, and/or the Debtors' successors and affiliates, and no payments shall be made by the Chubb Companies to the Plan Administrator, the Debtors, the Debtors' estates, or any of the Debtors' successors or affiliates in connection with the Cost Plus Insurance Program.  Upon and following the Settlement Effective Date, (i) the Chubb Companies shall have the right to hold, use and/or apply the Retained Amounts and the proceeds thereof for any purpose and in their sole discretion and take any other actions without further notice to the Plan Administrator, the Debtors, the Debtors' estates, or any of the Debtors' successors or affiliates or order of the Court and (ii) for these purposes, the automatic stay imposed by Section 362(a) of the Bankruptcy Code and any injunction or release provision in the Plan, any order or any other document (collectively, the "Stays"), if and to the extent applicable, shall be lifted without further order of the Court.

(d) The Chubb Companies' Continued Administration of Claims.  Upon and following the Settlement Effective Date and subject to the Reservation of Rights (as defined herein), (i) the Chubb Companies shall (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the Cost Plus Policies (each, an "Insured Claim") to the extent required under the terms of the Cost Plus Policies, (b) have the right, to the extent not already possessed by the Chubb Companies, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Insured Claim, in the case of each of the foregoing in the Chubb Companies' sole discretion (collectively, "Claim Administration"); (ii) the Stays, to the extent applicable, shall be deemed lifted without further court order to permit the Chubb Companies to perform Claim Administration; and (iii) the Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, waives any right to perform Claim Administration or to participate therein.  For the avoidance of doubt, nothing in this Agreement or the Bankruptcy Court Order grants, or should be deemed to grant, any claimant relief from the Stays or, if applicable, to proceed with their claims without first seeking and receiving relief from the Stays from the Court, to the extent applicable.  Except as specifically set forth herein, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the Cost Plus Insurance Program or requires or obligates the Chubb Companies to pay any amounts within any self-insured retention.  For the avoidance of doubt, nothing herein alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BB&B Insurance Program, and nothing alters, amends, or otherwise modifies the Chubb

9

Companies' rights or ability to handle any claims asserted against any insureds under the Cost Plus Insurance Program.

(e) <u>BB&B Guaranty POC</u>. On the Settlement Effective Date and without further action required by the Chubb Companies or the Plan Administrator, the BB&B Guaranty POC shall be deemed withdrawn. For the avoidance of doubt, nothing herein withdraws, releases, waives, alters, impacts, amends, or modifies any other proofs of claim filed by any of the Chubb Companies in the Bankruptcy Cases.

(f) <u>Release by the PA Entities</u>. In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, the Plan Administrator, on behalf of himself and all parties claiming by, through, or under the Plan Administrator, the Debtors, the Debtors' estates, all of the Debtors' successors and affiliates, and the agents, employees, representatives, officers, advisory board members, oversight committee members, attorneys, experts, shareholders, directors, parents, subsidiaries, affiliates, successors, assigns, trustees and predecessors in interest of each of the foregoing (collectively, the "<u>PA Entities</u>") hereby waive, release, acquit, and forever discharge each of the Chubb Companies and their respective agents, employees, representatives, officers, attorneys, experts, shareholders, directors, parents, subsidiaries, affiliates, successors, assigns, trustees and predecessors in interest (collectively, the "<u>Chubb Entities</u>") from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the PA Entities may have against any or all of the Chubb Entities from the beginning of time through the Settlement Effective Date arising out of or related to the Cost Plus Insurance Program, the BB&B Guaranty, the Letter of Credit, the Retained Amounts, the Claims Administration, and/or the Request; <u>provided</u>, <u>however</u>, that the release set forth in this paragraph shall not apply to the Chubb Companies' obligations under the Cost Plus Policies or the obligations expressly contained in this Agreement. For the avoidance of doubt, the releases set forth in this paragraph shall not apply to the BB&B Insurance Program.

10

(g)     <u>Release by the Chubb Entities</u>. In consideration of promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, the Chubb Entities waive, release, acquit and forever discharge each of the PA Entities from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Chubb Entities may have against any or all of the PA Entities from the beginning of time through the Settlement Effective Date arising out of or related to the Cost Plus Insurance Program, the BB&B Guaranty, the Letter of Credit, the Retained Amounts, the Claims Administration, and/or the Request; <u>provided</u>, <u>however</u>, that the release set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement. For the avoidance of doubt, the releases set forth in this paragraph shall not apply to the BB&B Insurance Program.

(h)     <u>Representations and Warranties by Plan Administrator</u>.

       (1)     <u>Released Claims</u>. The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to the Chubb Companies that he is the representative of the Debtors' estates in the Bankruptcy Cases and is entitled to enter into and execute this Agreement and that he is the sole and exclusive owner of the claims, causes of action, rights, and other interests which he is releasing by this Agreement and that he has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and will not assign, transfer, or convey any claim, cause of action, right, or other interest in the same to any person or entity.

       (2)     <u>No Other Right to Release or Return of Collateral</u>. The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to the Chubb Companies that no party other than the Plan Administrator, including any party or creditor in any bankruptcy case commenced at any time under the Bankruptcy Code by any of the Debtors, their

11

      successors, or their affiliates, has any right in or to the Letter of Credit or the Retained Amounts.

   (3) <u>Oversight Committee</u>.  The Plan Administrator represents and warrants that he has consulted with the Oversight Committee (as defined in the Plan) regarding entering into this Agreement and has obtained the Oversight Committee's consent and approval to enter into this Agreement and obtained any other required approvals or permissions to enter into this Agreement and that no further approvals or permissions are necessary for him to enter into this Agreement.

(i) <u>Indemnification of the Chubb Entities by the PA Entities</u>.  If a claim is made against the Chubb Entities, or any of them, based upon any alleged entitlement to any of the Retained Amounts or any other proceeds of the Letter of Credit by any non-Party, the PA Entities shall defend, indemnify, and hold harmless the Chubb Entities from any and all claims, demands, damages, costs, expenses, actions, or causes of action on account of or in any way growing out of any such possible claim of entitlement, and to repay any sum of money that the Chubb Entities, or any of them, may hereafter be compelled to pay as a result of any such claim of entitlement, including, but not limited to, amounts paid to defend against such a claim of entitlement.

## **Basis for Requested Relief**[7]

27. Bankruptcy Rule 9019[8] provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. Bankr. R. 9019(a).

28. Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  Under this authority, the United

---

[7] As noted above, the Plan Administrator has broad authority to enter into settlements without Court authority. The Plan Administrator hereby seeks an order approving the Settlement Agreement in an abundance of caution.

[8] Relief is hereby sought pursuant to Bankruptcy Rule 9019 to the extent applicable.

States Court of Appeals for the Third Circuit has emphasized that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Martin v. Myers (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)) (alterations in original); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (settlement and compromise are "a normal part of the process of reorganization"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (stating that there is a "strong presumption in favor of voluntary settlement agreements"); *In re Petersburg Regency LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015) ("Settlements are favored in bankruptcy as they minimize litigation and expedite the administration of the bankruptcy estate." (internal quotations omitted)); *In re Culmtech, Ltd.*, 118 B.R, 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and . . . much of litigation in bankruptcy estates results in settlements").

29.     Moreover, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Thus, taken together, Bankruptcy Rule 9019(a) and section 105(a) grant bankruptcy courts the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998).

30.     The decision to approve a settlement "lies within the sound discretion of the Bankruptcy Court." *Petersburg Regency*, 540 B.R. at 535. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must assess whether the settlement is "fair and reasonable" and in the "best interests of the estate." *Id.* The Court must "assess and

13

balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.

31. In striking this balance, the Court should consider "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." *Id.* The Court should not conduct a "mini-trial" on the merits but "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Petersburg Regency*, 540 B.R. at 353 (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. den.*, 464 U.S. 822 (1983)). Courts generally defer to a plaintiff or trustee's business judgment when there is a legitimate business justification for the decision. *See In re Martin*, 91 F.3d at 395.

32. A review of the four factors from *In re Martin* demonstrates that the Settlement Agreement is in the best interests of the estates and of all creditors, and a reasonable exercise of the Plan Administrator's business judgment.

33. *Probability of Success.* The Plan Administrator's probability of success on the issues resolved by the Settlement Agreement is uncertain. The Cost Plus Insurance Program entitles the Chubb Companies to retain the Letter of Credit to secure, among other things, the BB&B Guaranty. Estimating and liquidating the Chubb Companies' claims would be costly and time-consuming, and the outcome of any such endeavor is inherently uncertain. Accordingly, the Plan Administrator's likelihood of success on the merits is unclear, at best.

34. *Difficulties of Collection.* After Court approval of the Settlement Agreement, the Chubb Companies will effectuate the release of the Letter of Credit to the Issuing Bank in accordance with the terms of the Settlement Agreement. As the release of the Letter of Credit

14

without the Settlement Agreement would have likely required extensive efforts (and resulting costs) on the part of the Plan Administrator and his professionals, and as it may have taken a great deal of time to secure such release, it is clear that this factor weighs heavily in favor of approving the Settlement Agreement.

35. *Complexity of Litigation.* While there is no current litigation, insurance claims and contracts are often complex to litigate, typically involving extensive fact discovery. Accordingly, this factor also weighs in favor of approving the Settlement Agreement.

36. *Paramount Interests of Creditors.* Finally, the Settlement Agreement is in the paramount interest of creditors. Pursuant to the Settlement Agreement, the Chubb Companies are waiving certain of their claims against the Debtors' estates and are releasing the Letter of Credit. This relieves a substantial burden on the Plan Administrator in addressing the Chubb Companies' claims, streamlines the claims resolution process, and allows for greater potential distributions to creditors. The benefit to the estates and their other creditors is unquestionable. Further, the Settlement Agreement arises out of arm's-length bargaining between the Plan Administrator and the Chubb Companies.

37. For all these reasons, the Plan Administrator submits that his entry into the Settlement Agreement is a sound exercise of his business judgment and that the compromises reached with the Chubb Companies reflected in the Settlement Agreement are fair, reasonable, and in the best interest of the Debtors' estates and creditors. The Plan Administrator respectfully requests that the Court approve and authorize entry into the Settlement Agreement.

### The Requirements of Local Rule 9019-3 Are Satisfied

38. The Plan Administrator respectfully submits that all information required pursuant to Local Rule 9019-3 is encompassed in the Motion and Settlement Agreement. Accordingly, the

Plan Administrator requests that the Court waive the requirement to file any separate notice pursuant to Local Rule 9019-3.

## Waiver of Memorandum of Law

39. The Plan Administrator respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Plan Administrator relies is set forth herein and the Motion does not raise any novel issues of law.

## No Prior Request

40. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

41. Notice of the Motion is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings.** Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

42. Pursuant to Paragraph 124, notice of the Motion and the hearing thereon was given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date; and (iii) all parties who are registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

**WHEREFORE**, the Plan Administrator respectfully requests that this Court enter an order substantially in the same form as the Proposed Order attached hereto as **Exhibit A**: (i) granting the Motion, (ii) approving the Settlement Agreement attached hereto as **Exhibit 1** to the Proposed Order, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: May 23, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Colin R. Robinson*
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:  rfeinstein@pszjlaw.com
   bsandler@pszjlaw.com
   plabov@pszjlaw.com
   crobinson@pszjlaw.com

*Counsel to the Plan Administrator*