# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PERSONAL COMMUNICATIONS DEVICES, LLC, *et al.*, | No. 13-74303 (AST) <br> 13-74304 (AST) |
| Debtors. | (Jointly Administered) |
| DEVICES LIQUIDATION TRUST, | Adv. Pro. No. 13-8174 |
| Plaintiff, | |
| vs. | |
| PINEBRIDGE VANTAGE PARTNERS, L.P., *et al.*, | |
| Defendants. | |
| DEVICES LIQUIDATION TRUST, | Adv. Pro. No. 13-8173 |
| Plaintiff, | |
| vs. | |
| PHILIP CHRISTOPHER *etc.* | |
| Defendants. | |

## ORDER PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY CODE LIFTING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO ALLOW FOR REIMBURSEMENT AND ADVANCEMENT OF DEFENSE COSTS, AND DIRECTING PARTIES TO RETURN TO MEDIATION

Motions[1] have been filed in connection with these adversary proceedings (the "Adversary

Proceedings") by Phillip Christopher [Bankr. Dkt. No. 257], Kostas Kastamonitis [Bankr. Dkt.

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motions.

No. 274], George Appling [Bankr. Dkt. No. 671], FT Chong and Winston Chow [Bankr. Dkt. No. 696], and Susan Nokes and Jonathan Stearns [Bankr. Dkt. No. 726] (collectively, the "Defendants"), for an order pursuant to sections 105 and 362 of Title 11 of the United States Code (the "Bankruptcy Code") lifting the automatic stay, to the extent necessary, to allow National Union Fire Insurance Co. of Pittsburgh, PA ("AIG") to reimburse and advance defense costs to the Defendants under all applicable directors and officers liability policies, and to allow Federal Insurance Co. ("Federal") to reimburse and advance defense costs to the Defendants under the terms of the Excess Federal Policy if and when the AIG Policy is exhausted (collectively, the "Policies"). Due and proper notice of the Motions have been provided.

On December 3, 2014, this Court entered the Stipulation and Agreed Order Regarding the Motion of Philip Christopher, imposing a "soft cap" of $350,000 for reimbursement and advancement of legal expenses (the "Christopher Stipulation"). [Bankr. Dkt. No. 531]  On May 20, 2015, this Court entered the Stipulation and Order Regarding the Motion of Kostas Kastamonitis, imposing a "soft cap" of $60,000 for reimbursement and advancement of legal expenses (the "Kastamonitis Stipulation"). [Bankr. Dkt. No. 633] On November 30, 2015, this Court entered the Interim Order Regarding the Motion of George Appling, imposing a "soft cap" of $100,000 for reimbursement and advancement of legal expenses (the "Interim Order") [13-08174 Dkt. No. 230, 13-08173 Dkt. No. 154].

Hearings have been held before this Court on November 13, 2015 and January 20, 2016. Based on the foregoing,

**IT IS HEREBY ORDERED** that:

1. The automatic stay is hereby lifted to the extent that AIG is authorized to reimburse and advance defense costs and reimburse expenses as follows: to Jonathan Stearns in the sum

of Five Hundred Thousand Dollars ($500,000); to Phillip Christopher in the sum of Four

Hundred Thousand Dollars ($400,000); and to each of Kostas Kastamonitis, George

Appling, FT Chong, Winston Chow and Susan Nokes in the sum of Three Hundred

Thousand Dollars ($300,000) each; these authorizations are inclusive of all amounts each

individual was authorized to receive prior to entry of this Order; for the avoidance of

doubt, Phillip Christopher has previously received authorization for up to Three Hundred

and Fifty Thousand Dollars ($350,000), Kostas Kastamonitis has previously received

authorization for up to Sixty Thousand Dollars ($60,000), and George Appling has

previously received authorization for up to One Hundred Thousand Dollars ($100,000),

which amounts are included in the authorizations hereunder.

2.  If and to the extent there is a complete depletion of the Policies and/or an excess liability

judgment is entered in one or both of these Adversary Proceedings (a judgment or

judgments which exceeds the remaining amounts available under the Policies), the Court

reserves the right to order each or any Defendant to pay to Plaintiff any amounts paid

under the Policies to such Defendant pursuant to the terms of this or prior Orders or

otherwise related to the Policies.

3.  With respect to the reimbursement and advancement of defense costs and reimbursement

of expenses, the Defendants are directed to maintain copies of all invoices forwarded to

and paid by AIG, in the same format as provided to AIG (including as redacted for

privilege), but shall not be required to provide such invoices to the Devices Liquidation

Trust or any other party.

4.  Counsel for Plaintiff shall, within twenty one (21) days following entry of this Order, file

under seal a statement as to all fees and expenses it has incurred in connection with these

Adversary Proceedings, and shall file not under seal a copy of the Policies and a statement as to all fees incurred by and paid to the Creditors Committee of Debtors in connection with these Adversary Proceedings prior to the Effective Date of the confirmed Plan of Reorganization.

5. Each Defendant may, after sixty (60) days following entry of this Order, file a request for an increase in the above "soft caps," which request shall include a statement filed under seal of all fees and expenses incurred and paid from the Policies in connection with these Adversary Proceedings. Plaintiff may file opposition to any such request within fourteen (14) days of such request. No hearing on any such request shall be held unless set by the Court.

6. Within ten (10) days following entry of this Order, the parties shall meet and confer (in person or by telephone) to establish dates to resume mediation of all issues in these Adversary Proceedings; Plaintiff shall thereafter coordinate dates to resume the mediation with the mediator; the mediation shall resume in no less than ninety (90) days following entry of this Order and shall conclude within one hundred and fifty (150) days following entry of this Order; the mediator shall file a report as to the status of mediation on or before **June 30, 2016**.

7. Nothing contained in this Order is intended to modify or change any of the terms and conditions of the AIG Policy or the Excess Federal Policy.

8.  This Court shall retain jurisdiction with respect to all matters related to or arising from the implementation of this Order.



Dated: February 4, 2016
     Central Islip, New York

Alan S. Trust
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re:

PERSONAL COMMUNICATIONS DEVICES,
LLC, et al.,

                              Debtors.

-------------------------------------------------------X

    Chapter 11
    (Jointly Administered)

    Case No. 13-74303 (AST)

**SO-ORDERED STIPULATION PURSUANT TO § 362(d) OF THE
BANKRUPTCY CODE LIFTING THE AUTOMATIC STAY, TO
THE EXTENT NECESSARY FOR PAYMENT OF DEFENSE
COSTS UNDER DEBTORS' INSURANCE POLICIES**

This So-Ordered Stipulation (the **"Stipulation and Order"**) lifts the Automatic Stay

under Bankruptcy Code § 362(d), to the extent necessary, for payment of Defense Costs Under

Debtors' Insurance Policies made as of the date below, by and between Devices Liquidation

Trust (the **"Trust"**) and Kostas Kastamonitis (**"Kastamonitis"**, and together with the Trust,

the **"Parties"** and each individually a **"Party").**

<u>**RECITALS**</u>

**WHEREAS**, Kastamonitis is a former Vice-President of Personal Communications

Devices, LLC (**"PCD"**);

**WHEREAS**, on September 27, 2012, PCD commenced an action against, *inter alia,*

Kastamonitis in the Supreme Court of the State of New York, County of Suffolk, [Index

No. 30060/12] (the **"Kastamonitis Litigation"**);

**WHEREAS,** PCD filed its Second Amended Complaint on April 10, 2013;

**WHEREAS,** on August 19, 2013, PCD and PCD Holdings (collectively, the

**"Debtors"**) commenced their chapter 11 bankruptcy cases in this Court;

**WHEREAS,** on September 18, 2013, the Kastamonitis Litigation was removed to the

United States District Court for the Eastern District of New York (the **"District Court"**) on

the ground that it was "related to" the Debtors' chapter 11 cases;

**WHEREAS,** the Kastamonitis Litigation was then referred to this Court from the District Court, by way of an order entered by the District Court on October 23, 2013, and is currently pending in this Court under Adversary Proceeding No. 13-08173;

**WHEREAS,** on October 24, 2013, the Court authorized the Official Committee of Unsecured Creditors appointed in the Debtors' bankruptcy cases (the **"Committee"**) to commence and prosecute certain causes of action, including the Kastamonitis Litigation, on behalf of the Debtors' bankruptcy estates;

**WHEREAS,** on April 29, 2014, pursuant to the First Amended Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code Proposed by Debtors and the Official Committee of Unsecured Creditors, the Committee was dissolved, and all causes of action accruing to the Debtors, including the Kastamonitis Litigation, vested in the Trust;

**WHEREAS,** on September 4, 2014, the Trust was substituted as the plaintiff in the Kastamonitis Litigation;

**WHEREAS,** Kastamonitis has asserted defenses in the Kastamonitis Litigation, most recently by the refiling of Kastamonitis' Second Amended Answer on or about December 5, 2014;

**WHEREAS,** at all relevant times during Kastamonitis' tenure as an officer and manager of the Debtor, the Debtor maintained certain liability insurance policies including, but not limited to: (a) a policy issued by National Union Fire Insurance Co. of Pittsburgh, PA (**"AIG"**), Policy Number 02-581-72-53, that provides coverage for directors and officers as well as the Debtors (the **"AIG Policy"**), and (b) an excess policy issued by Federal Insurance

2

Co. (now managed by Chubb), Policy Number 8211-9674, that also provides such coverage (the "**Excess Federal Policy**," and together with the AIG Policy, the "**Insurance Policies**");

**WHEREAS,** Kastamonitis asserts that the AIG Policy provides for, among other things, coverage of Kastamonitis' defense costs associated with the claims asserted against him in the Second Amended Complaint in the Kastamonitis Litigation;

**WHEREAS,** to date, Kastamonitis has incurred unreimbursed defense costs with respect to the claims asserted against him in the Second Amended Complaint;

**WHEREAS,** on January 20, 2015, Kastamonitis and AIG entered into a Funding/Non- Waiver Agreement (the "**Funding Agreement**") providing for, among other things, the advancement under the AIG Policy of certain defense costs on the terms and conditions set forth in the Funding Agreement; and with the Trust having reviewed said Funding Agreement, in accordance with the terms set forth therein; and

**WHEREAS,** after engaging in discussions, the Parties have agreed as detailed below:

**NOW THEREFORE,** the Parties hereby stipulate that:

1.     Solely to the extent provided herein, the Trust consents to relief from the automatic stay imposed by 11 U.S.C. § 362(a), to allow for the advancement of "Defense Costs" (as defined in the AIG Policy at Section 2(k)) to Kastamonitis in accordance with the AIG Policy and the Funding Agreement.

2.     AIG is hereby authorized to advance Defense Costs to Kastamonitis in connection with the Kastamonitis Litigation in accordance with the terms and conditions set

forth in the Funding Agreement, the AIG Policy and this Stipulation and Order, including the procedures set forth in paragraph 3 below.

3.    Following entry of this Stipulation and Order by the Court, the Parties shall abide by the following procedures with respect to Kastamonitis' request for advancement of Defense Costs under the Funding Agreement and the AIG Policy:

A.    Within five (5) days following the conclusion of each calendar month, counsel for Kastamonitis shall submit to counsel for the Trust his written request for advancement of Defense Costs for the prior calendar month, which request shall include copies of redacted bills for review, reflecting only fees and costs incurred in connection with the Kastamonitis Litigation (the **"Defense Costs Request"**)[1];

B.    The Trust shall raise objections, if any, regarding the proposed Defense Costs Request within ten (10) days of receipt of same (the **"Objection Period"**);

C.    If no objections are raised by the Trust prior to the expiration of the Objection Period, Kastamonitis shall submit the Defense Costs included in the Defense Costs Request to AIG for payment;

D.    If objections are raised by the Trust within the Objection Period, the Parties will attempt to reach a consensual resolution during the following ten (10) days (the **"Discussion Period"**); and

E.    If a consensual resolution of the Trust's objection(s) cannot be reached within the Discussion Period, the Parties agree to request an expedited hearing, subject to the Court's calendar, to resolve the pending dispute.

4.    Kastamonitis' first request for advancement of Defense Costs shall include all fees incurred in connection with the Kastamonitis Litigation during the period from November 2013 through February 2015 (with insurer's payment not to exceed $22,950.00), exclusive of payments due, for March and April of 2015)

---

[1] Nothing provided herein shall amend, modify or change Kastamonitis' obligations governing the submission and approval of the Defenses Costs to AIG as required by the terms of the Funding Agreement.

4

5.      Exclusive of the first advancement set forth herein above (¶ 4), and notwithstanding anything to the contrary herein or in the Funding Agreement, absent further Order of the Court, AIG shall not advance to Kastamonitis, and Kastamonitis shall not accept, more than $60,000 of Defense Costs in the aggregate (the "**Soft Cap**").   Nothing herein shall prejudice the current or future position of Kastamonitis or the Trust, and such parties reserve all rights, with respect to the lifting or modifying of the **Soft Cap**.

6.      Notwithstanding anything to the contrary herein or in the Funding Agreement, absent further Order of the Court, the relief granted herein shall terminate upon ten (10) days' written notice served by either Party upon counsel to the other Party and, following the effective date of such termination, AIG shall not make, and Kastamonitis shall not accept, any further advances of Defense Costs incurred solely during the period following the effective date of such termination. Within two (2) business days of delivery or receipt of any termination notice pursuant to this paragraph, counsel to Kastamonitis shall provide AIG with a copy of such notice.

7.      Except as expressly provided herein, nothing contained in this Stipulation and Order is intended to modify or change any of the terms or conditions of the Insurance Policies or the Funding Agreement.

8.      Except as provided for in the Funding Agreement or in this Stipulation and Order, the Parties reserve all of their respective rights and claims in and to (a) the Kastamonitis Litigation, and (b) the Insurance Policies.

9.      Until such time as the Court enters a final decree closing the Debtors' pending bankruptcy case, the Court shall retain jurisdiction with respect to any and all matters related to or arising from the implementation of the terms of this Stipulation and Order.

10.    This Stipulation and Order is immediately valid and fully effected upon its entry and

the 14 day stay pursuant to Fed. R. Bankr. Proc. 400l(a) is hereby waived.

AGREED TO AND ACCEPTED:

Dated: Uniondale, New York                WESTERMAN BALL EDERER MILLER
       April 28, 2015                     ZUCKER & SHARFSTEIN, LLP


                                          By:    /s/Richard F. Harrison, Esq.
                                              Richard F. Harrison, Esq.
                                              Eric G. Waxman III, Esq.
                                              1201 RXR Plaza
                                              Uniondale, New York 11556
                                              (516) 622-9200 telephone
                                              (516) 622-9212 facsimile
                                              rharrison@westermanllp.com
                                              ewaxman@westermanllp.com
                                              Counsel for Defendant, Kostas Kastamonitis

                                          PERKINS COLE LLP

                                          By:    /s/Schuyler G. Carroll, Esq.
                                              Schuyler G. Carroll, Esq.
                                              Barry J. Reingold, Esq.
                                              Tina N. Moss, Esq.
                                              30 Rockefeller Plaza, 22nd Floor
                                              New York, New York 10012
                                              Telephone: (212) 262-6900
                                              Facsimile: (212) 977-1649
                                              scarroll@perkinscoie.com
                                              breingold@perkinscoie.com
                                              tmoss@perkinscoie.com
                                              Counsel for Plaintiff, Devices Liquidation Trust


**SO-ORDERED:**



                                                    _____
                                                         Alan S. Trust
**Dated: May 20, 2015**                              **United States Bankruptcy Judge**
**Central Islip, New York**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PERSONAL COMMUNICATIONS DEVICES, LLC, *et al.*, | No. 13-74303 (AST)<br>        13-74304 (AST) |
| Debtors. | (Jointly Administered) |
| DEVICES LIQUIDATION TRUST, | Adv. Pro. No. 13-8174 |
| Plaintiff, | |
| vs. | |
| PINEBRIDGE VANTAGE PARTNERS, L.P., *et al.*, | |
| Defendants. | |
| DEVICES LIQUIDATION TRUST, | Adv. Pro. No. 13-8173 |
| Plaintiff, | |
| vs. | |
| PHILIP CHRISTOPHER *et ano.*, | |
| Defendants. | |

**INTERIM ORDER PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY
CODE LIFTING THE AUTOMATIC STAY, TO THE EXTENT
NECESSARY, TO ALLOW FOR ADVANCEMENT OF DEFENSE
COSTS UNDER THE DEBTORS' INSURANCE POLICIES TO MR. APPLING**

Upon the motion of George Appling, dated September 22, 2015 (the "Motion")[1] for an

order pursuant to sections 105 and 362 of Title 11 of the United States Code (the "Bankruptcy

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

Code") lifting the automatic stay, to the extent necessary, to allow National Union Fire Insurance

Co. of Pittsburgh, PA ("AIG") to advance defense costs to Mr. Appling under all applicable

directors and officers liability policies; and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; and the Devices

Liquidation Trust (the "Trust") having filed and served its objection ("Objection") to the Motion;

and Mr. Appling having filed and served his reply ("Reply") to the Objection; and a hearing

having been held before this Court on November 13, 2015 (the "Hearing"), and the parties

having been heard on the Motion;

**IT IS HEREBY ORDERED** that:

1. The automatic stay is hereby lifted to the extent that, until further order of this Court with

   respect to the Motion, AIG is authorized, on an interim basis, to advance defense costs

   and reimburse expenses to Mr. Appling up to the total sum of One Hundred Thousand

   Dollars ($100,000).

2. With respect to such advancement of defense costs and reimbursement of expenses, Mr.

   Appling is directed to maintain a copy of all invoices forwarded to and paid by AIG, in

   the same format as provided to AIG (including as redacted for privilege), but, pending

   further order of the Court, shall not be required to provide such invoices to the Devices

   Liquidation Trust or any other party.

3. Counsel for the following parties in these adversary proceedings (the "Insurance

   Defendants"), together with counsel for the Trust, shall confer regarding the

   establishment of a global protocol providing for the payment of defense costs of all

   Insurance Defendants:  George Appling, Winston Chow, F.T. Chong, Jonathan Stearns,

2

Susan Nokes, Philip Christopher, and Kostas Kastamonitis, subject to and consistent with the Court's instructions set forth at the Hearing.

4. The hearing (the "Continued Hearing") on the Motion, and the Objection and Reply thereto, is hereby continued to January 20, 2016 at 12:00 noon, with such continued hearing to be held at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 100 Federal Plaza, Courtroom 960, Central Islip, NY 11722.

5. The hearing on the Motion to Lift the Automatic Stay filed by FT Chong and Winston Chow, which was originally scheduled for December 2, 2015, will be postponed to the Continued Hearing on January 20, 2016.

6. Nothing contained in this Order is intended to modify or change any of the terms and conditions of the AIG Policy.

7. This Court shall retain jurisdiction with respect to all matters related to or arising from the implementation of this Order.



**Dated: November 30, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PERSONAL COMMUNICATIONS DEVICES, LLC, *et al.*, | No. 13-74303 (AST)<br>    13-74304 (AST) |
| Debtors. | (Jointly Administered) |
| DEVICES LIQUIDATION TRUST, | Adv. Pro. No. 13-8174 |
| Plaintiff, | |
| vs. | |
| PINEBRIDGE VANTAGE PARTNERS, L.P., *et al.*, | |
| Defendants. | |
| DEVICES LIQUIDATION TRUST, | Adv. Pro. No. 13-8173 |
| Plaintiff, | |
| vs. | |
| PHILIP CHRISTOPHER *et ano.*, | |
| Defendants. | |

**INTERIM ORDER PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY
CODE LIFTING THE AUTOMATIC STAY, TO THE EXTENT
NECESSARY, TO ALLOW FOR ADVANCEMENT OF DEFENSE
COSTS UNDER THE DEBTORS' INSURANCE POLICIES TO MR. APPLING**

Upon the motion of George Appling, dated September 22, 2015 (the "Motion")[1] for an

order pursuant to sections 105 and 362 of Title 11 of the United States Code (the "Bankruptcy

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

128722500.1

Code") lifting the automatic stay, to the extent necessary, to allow National Union Fire Insurance

Co. of Pittsburgh, PA ("AIG") to advance defense costs to Mr. Appling under all applicable

directors and officers liability policies; and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; and the Devices

Liquidation Trust (the "Trust") having filed and served its objection ("Objection") to the Motion;

and Mr. Appling having filed and served his reply ("Reply") to the Objection; and a hearing

having been held before this Court on November 13, 2015 (the "Hearing"), and the parties

having been heard on the Motion;

**IT IS HEREBY ORDERED** that:

1. The automatic stay is hereby lifted to the extent that, until further order of this Court with

   respect to the Motion, AIG is authorized, on an interim basis, to advance defense costs

   and reimburse expenses to Mr. Appling up to the total sum of One Hundred Thousand

   Dollars ($100,000).

2. With respect to such advancement of defense costs and reimbursement of expenses, Mr.

   Appling is directed to maintain a copy of all invoices forwarded to and paid by AIG, in

   the same format as provided to AIG (including as redacted for privilege), but, pending

   further order of the Court, shall not be required to provide such invoices to the Devices

   Liquidation Trust or any other party.

3. Counsel for the following parties in these adversary proceedings (the "Insurance

   Defendants"), together with counsel for the Trust, shall confer regarding the

   establishment of a global protocol providing for the payment of defense costs of all

   Insurance Defendants:  George Appling, Winston Chow, F.T. Chong, Jonathan Stearns,

Susan Nokes, Philip Christopher, and Kostas Kastamonitis, subject to and consistent with the Court's instructions set forth at the Hearing.

4.  The hearing (the "Continued Hearing") on the Motion, and the Objection and Reply thereto, is hereby continued to January 20, 2016 at 12:00 noon, with such continued hearing to be held at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 100 Federal Plaza, Courtroom 960, Central Islip, NY 11722.

5.  The hearing on the Motion to Lift the Automatic Stay filed by FT Chong and Winston Chow, which was originally scheduled for December 2, 2015, will be postponed to the Continued Hearing on January 20, 2016.

6.  Nothing contained in this Order is intended to modify or change any of the terms and conditions of the AIG Policy.

7.  This Court shall retain jurisdiction with respect to all matters related to or arising from the implementation of this Order.



**Dated: November 30, 2015**
**Central Islip, New York**

_Alan S. Trust_
**Alan S. Trust**
**United States Bankruptcy Judge**

3

**Presentment Date and Time: October 1, 2020 at 12:00 p.m. (Eastern Time)**
**Objection Date and Time: September 28, 2020 at 12:00 p.m. (Eastern Time)**
**Hearing Date and Time (Only if Objections Filed): To Be Announced**

**CONDON & FORSYTH LLP**
Joseph E. Czerniawski, Esq.
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 894-6824
Email: jczerniawski @condonlaw.com

*Counsel for Valentine Uhovski*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| P8H, INC. d/b/a PADDLE 8, | Case No.: 20-10809 (SMB) |
| Debtor, | Chapter 11 |

**NOTICE OF PRESENTMENT OF STIPULATION AND ORDER BETWEEN THE
CHAPTER 11 TRUSTEE, THE UNSECURED CREDITOR COMMITTEE, AND
VALENTINE UHOVSKI TO PERMIT INSURER TO PAY DEFENSE COSTS OF
VALENTINE UHOVSKI COVERED BY DEBTOR'S INSURANCE POLICY**

　　　　**PLEASE TAKE NOTICE** that the undersigned will present the annexed stipulation

and order (the "Stipulation and Order") to the Honorable Stuart M. Bernstein, United States

Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), at One Bowling Green, New York, New York, 10004, Room

723 for approval and signature on **October 1, 2020** at 12:00 p.m. (Prevailing Eastern Time).

　　　　**PLEASE TAKE FURTHER NOTICE**, that any responses or objections

("Objections") to the Stipulation and Order shall be in writing, shall conform to the Federal

Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of

New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the

Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with

1

General Order M399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, so as to be so filed and received no later than September 28, 2020 at 12:00 p.m. (Eastern Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Stipulation and Order, a hearing (the "Hearing") will be held to consider such Stipulation and Order before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, New York, 10004-1408 on a date to be announced.

Dated: September 9, 2020
    New York, New York

**CONDON & FORSYTH LLP**

/s/ Joseph E. Czerniawski
Joseph E. Czerniawski, Esq.
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 894-6824
Email: jczerniawski @condonlaw.com

*Counsel for Valentine Uhovski*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>P8H, INC. d/b/a PADDLE 8,<br><br>           Debtor, | Case No.: 20-10809 (SMB)<br><br>Chapter 11 |

### STIPULATION AND ORDER AMONG THE CHAPTER 11 TRUSTEE, THE UNSECURED CREDITORS COMMITTEE, AND VALENTINE UHOVSKI TO PERMIT INSURER TO PAY DEFENSE COSTS OF VALENTINE UHOVSKI COVERED BY DEBTOR'S INSURANCE POLICY

**WHEREAS** on March 16, 2020 (the "Petition Date") P8H, INC. d/b/a PADDLE 8 (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York; and

**WHEREAS** on May 1, 2020, the Official Committee of Unsecured Creditors of the Estate of the Debtor commenced an adversary proceeding against Uhovski, Docket No. 20-01081, alleging, *inter alia*, that he breached fiduciary duties that he owed to creditors (the "Adversary Proceeding Action"); and

**WHEREAS**, prior to the Petition Date, the Debtor, as insured, purchased a Management Liability Policy No. DOH021158466 (the "Insurance Policy") with a limit of liability for Directors' and Officers' coverage up to USD $1,000,000 and no deductible. The Insurance Policy covers the Debtor and its directors and officers and, among other things, entitles the directors and officers to reimbursement of certain costs, charges, fees (including attorneys' fees and expert fees) and similar expenses incurred in connection with defending or investigating claims against the directors and officers (such costs, charges, fees and expenses, in each case as and to the extent reimbursable under the applicable insurance policy, "Defense Costs").

3

**WHEREAS** the Insurance Policy was issued by CFC Underwriting Limited (the "Insurer"). The Insurance Policy was effective from May 1, 2019 to May 16, 2020 (extended from May 1, 2020 by the Extension Endorsement) and Mr. Uhovski was the CEO of the Debtor from November 2019 to February 2020 and is insured pursuant to the Insurance Policy;

**WHEREAS** Mr. Uhovski has submitted the Adversary Proceeding Action to the Insurer as a claim under the Insurance Policy and, subject to a complete reservation of rights, the Insurer has agreed to advance Defense Costs on account of Mr. Uhovski to his counsel in relation to the Adversary Proceeding Action; and

**WHEREAS**, Megan E. Noh, as Chapter 11 Trustee of the Debtor, has no objection to the payment of Defense Costs to Uhovski's counsel on the terms and conditions of this Stipulation.

It is hereby **STIPULATED AND AGREED** that this Court's so-ordering of this stipulation reflects its approval of the Insurer's payment of Valentine Uhovski's Defense Costs in accordance with the Insurance Policy and this Stipulation.  Insurer may make payments equaling eighty percent (80%) of the total of Uhovki's Defense Costs based on the invoices submitted to the Insurer from Uhovski's counsel during the course of the Adversary Proceeding and/or related proceedings; and

It is further **STIPULATED AND AGREED** that the Insurer shall hold back and reserve the remaining twenty percent (20%) of the value of the Defense Costs based on the invoices from Uhovski's counsel during the course of the Adversary Proceeding and/or related proceedings (the "Reserved Defense Costs"); and

It is further **STIPULATED AND AGREED** that Uhovski's counsel shall notify the Trustee when invoices are submitted for payment to the Insurer during the course of the Adversary Proceeding, and/or related proceedings, and inform the Trustee solely of the total amount of each invoice submitted to the Insurer; and

4

It is further **STIPULATED AND AGREED** that Uhovski's counsel may make an application to the Court at the conclusion of the Adversary Proceeding and/or related proceedings for final approval of all fees paid and for the payment of the Reserved Defense Costs, and such application will be brought on notice with an opportunity to be heard; and

It is further **STIPULATED AND AGREED** that the details of the process for the submission of such application to the Court by Uhovski's counsel for payment of the Reserved Defense Costs will be agreed upon by the undersigned counsel at a later date, but such agreement will provide appropriate protections for the preservation of legal privileges and confidentiality with regards to the invoices from Uhovski's counsel; and

It is further **STIPULATED AND AGREED** that the automatic stay is hereby modified pursuant to section 362 of the Bankruptcy Code to permit the Insurer to pay Defense Costs on account of Uhovski to his counsel in the Adversary Proceeding, pursuant to the terms and conditions of the Insurance Policy and this Stipulation.

Dated: New York, New York
        September 9, 2020

| | |
|---|---|
| **THE LAW OFFICES OF RICHARD J. CORBI PLLC** | **CONDON & FORSYTH LLP** |
| /s/ Richard J. Corbi | /s/ Joseph E. Czerniawski |
| Richard J. Corbi, Esq. | Joseph E. Czerniawski, Esq. |
| 1501 Broadway, 12th Floor | 7 Times Square, 18th Floor |
| New York, New York 10036 | New York, New York 10036 |
| Telephone: (646) 571-2033 | Telephone: (212) 894-6824 |
| Email: rcorbi@corbilaw.com | Email: jczerniawski @condonlaw.com |
| *Counsel for the Official Committee of Unsecured Creditors* | *Counsel for Valentine Uhovski* |

**PRYOR CASHMAN LLP**

/s/ Richard Levy, Jr.
Richard Levy, Jr.
Conrad K. Chiu
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
rlevy@pryorcashman.com
cchiu@pryorcashman.com

*Counsel for Megan E. Noh, the Chapter 11
Trustee*

**SO ORDERED:  October 1, 2020**

**/s/ STUART M. BERNSTEIN**
Stuart M. Bernstein
United States Bankruptcy Judge

6

7

# EXHIBIT "B"

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| Self-Insured Retention | $ | 1,000,000 | Per "Occurrence" |
|---|---|---|---|
| Self-Insured Retention | $ | N/A | Per "Claim" |
| Aggregate Self-Insured Retention Amount (if applicable) | $ | N/A | |

## CHANGE

I.   The Coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY, MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to apply the additional provisions noted below.

**A. SELF-INSURED RETENTION**

Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention. Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form. The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

**1. SELF-INSURED RETENTION PER OCCURRENCE**

If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Occurrence amount is the most you will pay for Self-Insured Retention amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or claim.

2.  **SELF-INSURED RETENTION PER CLAIM**

If a Per Claim Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each claim until you have paid the Self-Insured Retention amount and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Claim amount is the most you will pay for Self-Insured Retention amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

3.  **AGGREGATE SELF-INSURED RETENTION AMOUNT**

The Aggregate Self-Insured Retention Amount only applies if an Aggregate Self-Insured Retention Amount is shown in the above Schedule.  If an Aggregate Self-Insured Retention Amount is shown in the Schedule, that amount is the most you will pay for all Self-Insured Retention amounts and "defense costs" incurred under this policy.  The Aggregate Self-Insured Retention Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

B.  **LIMIT OF INSURANCE**

The applicable **LIMIT OF INSURANCE** provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule.

C.  **OUR RIGHT TO REIMBURSEMENT**

With respect to any claim or "suit" under this policy that has been tendered to us and that may exceed the applicable Self-Insured Retention amount, we may pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit".  If we do so, you must promptly reimburse us for our payment.

II.  **CHANGES IN THE CONDITIONS SECTION OF EACH OF THE ABOVE-LISTED COVERAGE FORMS**

A.  The following is added to the **BANKRUPTCY** Condition:

Satisfaction of the Self-Insured Retention amounts by you is a condition precedent to our liability for amounts in excess of the Self-Insured Retention regardless of insolvency or bankruptcy or inability to pay by you.  Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay by the "insured" or the "insured's" estate will not operate to:

1.  Deplete or reduce the Self-Insured Retention;
2.  Increase our liability under this policy; or
3.  Relieve us of our obligations under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In no event will we assume responsibility or obligations of the "insured".

**B.** The following is added to the **DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE, INJURY, POLLUTION INCIDENT, CLAIM OR SUIT** (as applicable to the above-listed Coverage Form) Condition:

The "insured" must promptly give our authorized representative and our Claims Department a complete report of the existence of any claim or "suit" involving the following factors or probabilities:

1. If the "ultimate net loss" for a claim or "suit" or multiple claims or "suits" arising out of any one "occurrence" or offense may, or is likely to, exceed 50% of the Self-Insured Retention; or

2. If an "occurrence", offense, claim or "suit" involves:

   a. Death;
   b. Brain or spinal injury;
   c. Amputation;
   d. Loss of use of an arm, eye or leg;
   e. Severe burns involving more than 25% of the body;
   f. Multiple fractures;
   g. Permanent and total disability;
   h. Sexual abuse or molestation;
   i. Significant psychological or neurological involvement;
   j. Severe internal body organ damage or loss;
   k. Severe cosmetic deformity or disfigurement;
   l. A hospital stay of two weeks or longer;
   m. An alleged error or omission of the "insured", the "insured's" claims service organization, or us or a claim for punitive damages against any of them; or
   n. An actual or potential conflict of interest between the "insured" and us, or between the "insured's" claims service organization and us.

**C.** The following is added to the **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition:

If the "insured" had rights to recover all or part of any payment we have made in excess of the Self-Insured Retention, those rights are transferred to us.  The "insured" must do nothing after loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.  Any amounts recovered will first be applied to reimburse us to the extent of our actual payment.

**D. DEFENSE & SETTLEMENT** shall be added as follows:

1. You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so.  If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2. We will have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention.  If we avail ourselves of that right, you must cooperate with us.  In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit", you shall not be liable to reimburse us for those "defense costs".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

3.  We may investigate and settle any claim or "suit" as we consider appropriate both within and in excess of the applicable Self-Insured Retention but we shall obtain your consent prior to entering into any settlement of a claim or "suit" that is equal to or less than the Self-Insured Retention amount. If, however, you do not consent to any settlement within the Self-Insured Retention amount that is recommended by us and instead elect to contest the claim or continue with any legal proceedings involving the claim, our liability for the claim shall not exceed the amount determined by subtracting the Self-Insured Retention amount from the amount for which we recommended settlement, including "defense costs" incurred with our consent, to the date of such refusal. Further we shall have no liability with respect to such claim if the result of the above calculation is zero or negative. We will not continue to defend or settle any claim or "suit" after the Limit of Insurance of the applicable coverage has been exhausted by payments of judgments or settlements.

E.  **CLAIMS ADMINISTRATION** shall be added as follows:

You agree to maintain a continuous contract, with an independent claims service administrator approved for use by us, at your expense without reimbursement from us, and that such claims service administrator will report to us on a monthly basis all claims activity, including identity of claimants and the date, type, estimated payments, description and disposition of all claims.

F.  **SELF-INSURED RETENTION REPORTING** shall be added as follows:

You or the authorized claim service administrator must monitor the cumulative Self-Insured Retention amounts and "defense costs" incurred during the policy period and report those total amounts to us on a quarterly basis. However, regardless of the quarterly reporting requirements, if the total of all incurred losses and "defense costs" should, at any time during the policy period, attain a total amount equal to 75% of the Aggregate Retention amount, you are required to make an immediate report to us of the total incurred losses and "defense costs" sustained at that time.

The required quarterly report must be in a format acceptable to us and shall include a listing of all individual losses and "defense costs" incurred as of the date of the report.

Within forty-five (45) days after the end of the policy term, you must give a listing of all existing claims or "suits" within the Self-Insured Retention amounts. Such listing shall include a description of each claim, "occurrence" or offense; date of the "occurrence" or offense; and the current status of the claim or "suit". Thereafter and on a quarterly basis, you shall provide an updated status of all claims or suits, paid and reserved, until all claims or "suits" are closed and settled.

Compliance with the reporting requirements set forth above, is a condition precedent to coverage. In the event of non-compliance, we shall not be required to establish prejudice resulting from reporting noncompliance and shall be automatically relieved of liability with respect to the claim.

G.  **MIDTERM CANCELLATION** shall be added as follows:

If an Aggregate Self-Insured Retention Amount is shown in the above Schedule, in the event of a midterm cancellation, the Aggregate Self-Insured Retention Amount shall not be subject to any pro rata reduction. Such Aggregate Self-Insured Retention Amount will apply as if the policy term had not been shortened.

H.  **GOOD FAITH** shall be added as follows:

You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

I.  **HOLD HARMLESS AGREEMENT** shall be added as follows:

The "insured" will hold us harmless and indemnify us for any and all damages or attorney fees or other costs or expenses which are imposed upon us because of the acts or omissions of the "insured" or of the "insured's" employees, agents or independent contractors in the course of the investigation, settlement or defense of any claim or "suit" to which this insurance applies.

J.  **REPRESENTATIONS** shall be added as follows:

You agree that the procurement of insurance for all or any part of the Self-Insured Retention amounts shown in the above Schedule will cause there to be no coverage under this policy.

K.  **DISPUTE RESOLUTION** shall be added as follows:

If we and the "insured" do not agree whether coverage is provided under this policy or this Endorsement, or do not agree concerning the timing or amount of settlement of a claim or "suit", then either party may submit the matter to a court of competent jurisdiction or may make a written demand for arbitration. Where required by state law, the "insured" shall have the option of instead submitting the matter to a court of competent jurisdiction.   We have the absolute right to determine when a claim or "suit" should be settled and may proceed to settle the claim or "suit" if the "insured" refuses to do so upon our demand, or if the "insured" refuses to contribute the amount of the Self-Insured Retention.

When a matter is submitted for arbitration, we and the "insured" may agree to use one arbitrator.  If the parties fail to agree on one arbitrator, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, each will name two arbitrators of which the other party will decline one, and the final selection will be made by drawing lots.  If either party fails to appoint an arbitrator within 30 days of receiving written notice, delivered by certified mail, requesting it to do so, the requesting party will name both arbitrators.  Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding unless state laws do not allow for binding arbitration without the consent of the "insured" in which case the decision will be binding unless, upon commencement of the arbitration, the "insured" has made written demand for non-binding arbitration.  A decision rendered in a non-binding arbitration shall not preclude either party from submitting the matter to a court of competent jurisdiction following the rendering of such decision. Unless a non-binding decision has been elected, upon our request or the request of the "insured", a judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction.

III. **ADDITIONAL DEFINITIONS**

The following are added to the **DEFINITIONS** Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1. All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2. All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 03/01/2020          Policy No. GL 4062767          Endorsement No.

Insured BED BATH & BEYOND INC.                                          Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____