| |
|---|
| **UNITED STATES BANKRUPTCY COURT** |
| **DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| Bradford J. Sandler |
| Paul J. Labov |
| Colin R. Robinson |
| PACHULSKI STANG ZIEHL & JONES LLP |
| 780 Third Avenue, 34th Floor |
| New York, NY 10017 |
| Telephone:  (212) 561-7700 |
| Facsimile:  (212) 561-7777 |
| bsandler@pszjlaw.com |
| plabov@pszjlaw.com |
| crobinson@pszjlaw.com |
| |
| *Counsel to the Plan Administrator* |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: May 29, 2024 |
| | at 10:00 a.m. |

**PLAN ADMINISTRATOR'S OMNIBUS SUR-REPLY TO ZEVE AND DUCZKOWSKI MOTIONS FOR ORDER MODIFYING THE AUTOMATIC STAY AND/OR THE PLAN INJUNCTION**

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and 73 affiliated debtors (the

"Debtors"), files this omnibus sur-reply to the:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

(i) *Supplemental Certification & Letter Brief* [Docket No. 3288] (the "<u>Zeve Reply</u>") filed

on behalf of Alfred Zeve ("<u>Zeve</u>") in response to the Plan Administrator's *Opposition* [Docket No.

3067] (the "<u>Zeve Opposition</u>") to the *Motion for Order Modifying The Automatic Stay And Plan*

*Injunction To Allow Movant To Continue Pending Litigation Against The Debtor, To Recover*

*Solely Against Debtor's Insurer, Waiving The Provisions Of Fed. R. Bankr. P. 4001 (A) (3) And*

*For Related Relief* [Docket No. 2936] (the "<u>Zeve Motion</u>"); and

(ii) *Reply Brief in Support of Motion for Relief* [Docket No. 3293] (the "<u>Duczkowski</u>

<u>Reply</u>") filed on behalf of Joseph & Penelope Duczkowski ("<u>Duczkowski</u>") in response to the Plan

Administrator's *Opposition* [Docket No. 2987] (the "<u>Duczkowski Opposition</u>") to *Amended*

*Motion for Relief from Automatic Stay* [Docket No. 2723] (the "<u>Duczkowski Motion</u>").[3]

For the reasons set forth below and in the *Oppositions*, the Court should deny the Motions.[4]

1.    There are four important facts that Movants fail to address in the Replies: (i) the

Debtors assumed their Insurance Policies pursuant to the Plan; (ii) the applicable assumed

Insurance Policy has a $1 million SIR that requires the Debtors to pay Defense Costs as a part of

the SIR; and (iii), most importantly, if the Motions are granted and the Plan Administrator

defends the State Court Actions, the Defense Costs must be paid by the Debtors' estates from

assets that are allocated to senior classes of Creditors pursuant to the Plan, thereby reducing their

recoveries.  Movants are seeking to skip the line and force the estates to treat their general

unsecured claims as administrative claims. In essence, they seek to have their claims elevated

among similarly situated claims - an outcome expressly prohibited by and totally antithetical to,

---

[3] Duczkowski and Zeve are collectively, the "<u>Movants</u>". The Duczkowski Motion and the Zeve Motion are collectively, the "<u>Motions</u>". The Duczkowski Reply and the Zeve Reply are collectively, the "<u>Replies</u>". The Duczkowski Opposition and the Zeve Opposition are collectively, the "Oppositions".

[4] Capitalized Terms that are not defined in this Sur-Reply have the meanings given to them in the Oppositions.

the Bankruptcy Code and the Plan. In addition, as the Court is aware and as the Plan

Administrator has previously reported, the estates are likely administratively insolvent. If the

Court grants the Motions and the Plan Administrator is forced to incur Defense Costs, creditors

who provided post-petition goods/services to the estates are going to get impermissibly

subordinated in violation of the Plan. Accordingly, the Court should deny the Motions.

2. In his Reply, Zeve continues to argue that modifying the Plan Injunction to permit

him to litigate his claim in the State Court Action "will not result in a diminution of estate assets

since Movant is limiting his recovery to available insurance proceeds." *Zeve Reply* (Letter Brief)

[3288-1] at 7. It continues, "The only hardship to the Debtor in modifying the Plan Injunction

would be that Goldberg would be required to devote a minimal amount of time cooperating with

its insurer(s) to defend the State Court Action. . . ." *Id*. at 6-7. Zeve, however, ignores the salient

and determinative fact in this case—that if the Court grants the Motions, the estates will be

forced to incur substantial Defense Costs at the expense of other creditors. *See Zeve Opposition*,

¶¶ 8-16; *Duzcowski Opposition*, ¶¶ 9-17.

3. Duzcowski insists that the answer to the problem of the estates and other creditors

being forced to bear the burden of the Defense Costs is for Safety National to assume the defense

and pay the associated Defense Costs. *See Duzcowski Reply*, at 5-7. However, Safety National

has not elected to take over the defense of these matters, and Duzcowski does not point to any

provision of the Insurance Policy or the SIR that gives the Plan Administrator (or anyone else for

that matter) the right or the power to force Safety National to do so.

4. Tellingly, Movants fail to address no less than ten cases cited by the Plan

Administrator which support his position that the Court should deny relief because the estate will

have to incur defense costs. *See Zeve Opposition,* ¶¶ 17-20; *Duzcowski Opposition,* ¶¶ 19-23

*citing In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir. 1989); *DePippo v. Kmart Corp.*,

335 B.R. 290, 298 (S.D.N.Y. 2005); *In re iHeartMedia, Inc.*, 2019 Bankr. LEXIS 1617 (Bankr.

S.D.Tex. May 28, 2019); *In re CJ Holding Co.*, 2018 Bankr. LEXIS 2437 (Bankr. S.D.Tex. Aug.

15, 2018); *In re SquareTwo Fin. Servs. Corp.,* 2017 Bankr. LEXIS 2570 (Bankr. S. D. N. Y. Sept

11, 2017); *In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3624 (Bankr. S.D.N.Y. Aug. 7,

2012);  *In re EnCap Golf Holdings, LLC*, 2008 Bankr. LEXIS 2146 (Bankr. D. N.J. Aug. 4,

2008); *Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*,

219 B.R. 716, 721 (S.D.W.V. 1998); *Perez v. Cumberland Farms, Inc.,* 213 B.R. 622, 624 (D.

Mass. 1997). Movants do cite *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir.

1993) but fail to note that the Fifth Circuit specifically limited its ruling to a case in which the

defense costs were to be borne by the insurer, not the estate.

5.      Instead, Movants focus on Safety National's obligation to pay any claim above $1

million SIR irrespective of whether the Debtors pay the SIR and what sort of claim Safety

National might have against the Debtors' estates.  *See Zeve Reply* (Letter Brief) [Docket No

3288-1] at 3, ¶ g ("Insurer is mistaken that no insurance exists absent payment by the Debtor of

the SIR. . . . Failure of the debtor to pay the SIR does not excuse the insurer from performance

under the contract, but gives rise to an unsecured claim by the insurer for any damages incurred

by reason of the debtor's breach of the policy."); *Duczowski Reply*, at 10-11.

6.      The Plan Administrator is neither arguing nor conceding that (i) Safety National is

not liable to pay amounts over the $1 million SIR or (ii) the validity or priority of any claim that

Safety National might have against the estates with respect to the SIR. These issues are not

before the Court on the Motions, and the Plan Administrator specifically reserves any and all

rights and defenses he has with respect to the Insurance Policy and the SIR visa a vis Safety National.

7.      The issue here is the payment of Defense Costs as the State Court Actions are litigated to settlement or judgment. The Plan Administrator would welcome Safety National assuming the defense of (and the Defense Costs related to) these (and the other 50 plus personal injury actions that were pending on the Petition Date) and its agreement that it has no claim against the estates for indemnification and/or reimbursement of Defense Costs, but there is no such agreement with Safety National. Accordingly, the estates remain liable for the Defense Costs related to the State Court Actions, which would have to be paid in the ordinary course of business. As one commentator explains, "[A]n insured with an SIR serves as its own primary insurer, i.e., it assumes the responsibility to defend itself and pay any losses that fall within the SIR. The insurer that issues such a policy is, in effect, an excess carrier: it does not defend, and it generally has no obligation to indemnify, until the SIR is satisfied." *See* Iain Nasatir, *The Rights and Duties of Insurers and Insureds under Self-Insured Retentions*, 50 The Brief 44, 44 (Fall 2020) reprinted at https://www.nge.com/portalresource/BRF_v050n01_Fall2020-Lamden-Nasatir.pdf.[5] This is not just some entry on an indemnification claim ledger that can all be tallied up later. There will be real legal bills to be paid each and every month to counsel who will have to defend the Debtors in the State Court Actions if the Court grants relief.

8.      Movants did not cite one case in which a court granted relief from a plan injunction to proceed with a state court action where the debtor would be forced to incur defense

---

[5] Mr. Nasatir in a partner in Pachulski Stang Ziehl & Jones.

costs under an SIR policy that had been assumed by the debtor.[6] Furthermore, Duzcowski's

argument that the Plan Administrator is spending estate resources in connection with other

litigation and therefore should do so to defend personal injury actions is absurd. The Plan

Administrator has an obligation to and is pursuing affirmative recoveries as plaintiff in actions

against third parties to collect monies for the benefit of estates and their creditors. That is an

entirely different situation that one on which the estates are forced to incur dollar for dollar

defense costs to defend against a potential recovery that will only be paid, if at all, by the

insurance company, if the ultimate recovery is over $ 1million.

9.      Denying relief will not result in giving a discharge to Safety National in violation

of Bankruptcy Code section 524(e). It will simply respect the priorities and provisions of the

Plan. In *In re Tailored Brands, Inc*., 2021 Bankr. LEXIS 1375 (Bankr. S.D. Tex May 20, 2021),

the court denied plaintiff relief from the plan injunction to proceed on a pre-petition lawsuit

where the debtor had an SIR of $500,000 and would be forced to incur defense costs. In doing

so, the court noted:

> The practical effect of [the debtor's] self-insured retention
> reinforces the conclusion that [plaintiff] is foreclosed from pursuing
> his claims in state court. Under its employment insurance policy,

---

[6] Every case cited by Movants is inapplicable to the current case. *See Home Insurance Co. of Illinois v. Hopper*, 294 Ill. App. 3d 626 (1st Dist. 1988)(coverage dispute case decided under Illinois law in which the payment of defense costs was not at issue); *Keck, Mahin & Cate*, 241 B.R. 583 (N.D. Ill. 1999) (confirming debtor law firm's plan over the objection of the debtor's malpractice carrier); *First Fidelity Bank v. McTeer*, 985 F.2d 114 (3d Cir. 1993)(chapter 13 case in which the issue was whether proceeds of a credit life insurance policy were property of the estate); *Albany Ins. Co. v. Bengal Marine, Inc*., 857 F.2d 250 (5th Cir., 19088) (coverage dispute under Louisiana's direct action statute); *In re Federal Press Co*., 104 B.R. 56 (Bankr. N.D. Ind. 1989) (holding that the debtor's insurance contracts were still in effect post-petition and assuming they were executory, declining to force the debtor to reject them); *In re W.G. Wade Shows, Inc*., 234 B.R. 185, 187 ((Bankr. M.D. Fla. 1999)(upholding—over the objection of the insurance company-the court's earlier ruling granting relief from the discharge injunction to permit a plaintiff to continue a lawsuit where the order expressly prohibited the plaintiffs "from seeking to collect or enforce any judgment against the Debtor or the Debtor's property' . . . including costs of litigation.*"); In re Vanderveer Estates Holding, LLC*, 328 B.R. 18 (Bankr. E.D.N.Y. 2005) (holding that where the debtor had not assumed its insurance policy and insurance company was defending pre-petition tort suits, the failure of the debtor to pay the SIR would give the insurance company a general unsecured claim for damages against the debtor); *Argonaut Ins. Co. v. Ames Dep't Stores (In re Ames Dep't Stores),* 1995 U.S. Dist. LEXIS 6704 (S.D.N.Y. 1995) (same).

> [the debtor] was required to exhaust its self-insured retention before
> the policy's coverage took effect. This requirement effectively left
> [the debtor] uninsured with respect to the first $500,000 it incurred
> in relation to [plaintiff's] action. Section 524(a)'s discharge
> injunction precludes [plaintiff] from forcing [the debtor] to incur
> uninsured defense costs or liability. . . . . Though he is precluded
> from establishing [the debtor's] liability in state court, [plaintiff] is
> not without redress. [The debtor] agreed to the allowance of a
> $250,000 general unsecured claim on account of [plaintiffs]
> employment discrimination allegations. This resolution effectively
> provides [plaintiff] the same relief afforded to other litigants with
> unliquidated or contingent claims against [the debtors]—a judicial
> liquidation of his claim. . . . The Bankruptcy Code assures [the
> debtor] finality. Effectuating this promise of finality requires
> [plaintiff] to accept the redress the Code offers similarly situated
> creditors.

*Id*. at *14-15.

10.     The Plan Administrator is aware that these claims (and other personal injury

claims (the "PI Claims")) must be liquidated at some point (whether by estimation or

otherwise).[7] It would be deeply harmful to the estates, however, to grant the Motions and permit

these claims to be adjudicated in the State Court Actions at this time, when it is still unclear

whether the estates will be able to pay all Allowed Administrative and Priority Claims in full

(not to mention whether there will be any return to Class 6 General Unsecured Creditors) and the

estates will be drained by Defense Costs to the detriment of other senior creditors. Accordingly,

Movants have failed to establish "cause" to modify the Plan Injunction, and the Court should

deny the Motions.

---

[7] With respect to Zeve's claim, he filed both a Complaint and a Proof of Claim that seeks damages of less than
$250,000.00 (i.e., three quarters of a million less than the SIR), which the Plan Administrator would consent to
Allow today as a Class 6 General Unsecured Claim in exchange for an agreement, *inter alia*, to a permanent
dismissal with prejudice of the State Court Action.  Zeve now asserts that the Proof of Claim was an "initial estimate
of personal injury damages and economic loss". Supplemental Certification of Michael Zimmerman  [Docket No.
3288] at ¶ 6. That assertion defies Zeve's allegation in its own complaint in the State Court Action in which he
alleged actual damages of "$250,000.00 or less. . . ." *Plaintiff's Original Petition,* (Exhibit A) to Certification of
Michael Zimmerman [Docket No. 2936-1], ¶ 4 ("Plaintiff seeks only monetary relief of $250,000 or less, excluding
interest, statutory or punitive damages and penalties and attorneys' fees and costs."). Proofs of claim are signed
under penalty of perjury and the Plan Administrator reserves all his rights with respect to the Proof of Claim.

Dated:  May 28, 2024                                 **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Paul J. Labov*

Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: bsandler@pszjlaw.com
        plabov@pszjlaw.com
        crobinson@pszjlaw.com

*Counsel to the Plan Administrator*