**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

Order Filed on June 4, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

BED BATH & BEYOND INC., *et al.*,[1]

Debtors.

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

## ORDER GRANTING MOTION OF THE PLAN ADMINISTRATOR PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT AGREEMENT WITH THE CHUBB COMPANIES; (II) WITHDRAWING PROOF OF CLAIM NO. 11413; AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through seven (7), is

**ORDERED**.

**DATED: June 4, 2024**

_____
**Honorable Vincent F. Papalia
United States Bankruptcy Judge**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Upon the *Plan Administrator's Motion Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving a Settlement Agreement with the Chubb Companies; (II) Withdrawing Proof of Claim No. 11413; and (III) Granting Related Relief* (the "Motion")[2]; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Parties negotiated the terms and conditions of the Settlement Agreement in good faith, at arm's length, and free of any collusion; and this Court having found that the terms and conditions contained in the Settlement Agreement are fair, equitable, reasonable and in the best interests of the Debtors, their estates, creditors and equity holders and is a valid and sound exercise of the Plan Administrator's business judgment and should be approved; and this Court having found that the Plan Administrator's notice of the Motion was sufficient under the circumstances and that no other of further notice is necessary; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      The Settlement Agreement attached hereto as **Exhibit 1** and all of the terms thereof are hereby approved.

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

3.      The Plan Administrator is hereby authorized and empowered to enter into the Settlement Agreement, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, and to take any and all actions necessary and appropriate to consummate and perform the terms and conditions of the Settlement Agreement.

4.      To the extent necessary, the Chubb Companies are also authorized to enter into and take any and all actions necessary and appropriate to consummate and perform the terms and conditions of the Settlement Agreement including, but not limited to, drawing on and releasing the Letter of Credit in accordance with the terms of the Settlement Agreement.

5.      Upon and following the Settlement Effective Date, the Plan Administrator (nor, for the avoidance of doubt, any party claiming by or through him nor any of the Debtors, the Debtors' estates, or the Debtors' successors or affiliates) shall not have any right, title or interest whatsoever in the Retained Amounts or the proceeds thereof.

6.      Upon and following the Settlement Effective Date, the Chubb Companies shall have all right, title, and interest in the Retained Amounts, and the Chubb Companies are authorized, in their sole discretion, to draw upon the Retained Amounts, hold and/or apply the Retained Amounts and the proceeds thereof and take other actions with respect thereto without further notice to the Plan Administrator or order of the Court.

7.      The Stays, to the extent applicable, shall be deemed lifted without further court order to permit the Chubb Companies to perform Claim Administration.

8.      The following releases set forth in the Settlement Agreement are hereby approved:

    i.  In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, the Plan Administrator,

3

on behalf of himself and all parties claiming by, through, or under the Plan
Administrator, the Debtors, the Debtors' estates, all of the Debtors'
successors and affiliates, and the agents, employees, representatives,
officers, advisory board members, oversight committee members,
attorneys, experts, shareholders, directors, parents, subsidiaries, affiliates,
successors, assigns, trustees and predecessors in interest of each of the
foregoing (collectively, the "PA Entities") hereby waive, release, acquit,
and forever discharge each of the Chubb Companies and their respective
agents, employees, representatives, officers, attorneys, experts,
shareholders, directors, parents, subsidiaries, affiliates, successors, assigns,
trustees and predecessors in interest (collectively, the "Chubb Entities")
from any and all claims, counterclaims, rights, demands, obligations, causes
of action, actions, costs, damages, losses, liabilities, and attorneys' fees,
arising under any federal, state, or local statute, regulation, ordinance, or
common law (including, but not limited to, any and all such pursuant to §§
362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code),
whether asserted or unasserted, known or unknown, fixed or contingent,
liquidated or unliquidated, matured or unmatured, foreseen or unforeseen,
actually or potentially existing, which the PA Entities may have against any
or all of the Chubb Entities from the beginning of time through the
Settlement Effective Date arising out of or related to the Cost Plus Insurance
Program, the BB&B Guaranty, the Letter of Credit, the Retained Amounts,
the Claims Administration, and/or the Request; provided, however, that the

4

release set forth in this paragraph shall not apply to the Chubb Companies' obligations under the Cost Plus Policies or the obligations expressly contained in this Agreement. For the avoidance of doubt, the releases set forth in this paragraph shall not apply to the BB&B Insurance Program.

ii.  In consideration of promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, the Chubb Entities waive, release, acquit and forever discharge each of the PA Entities from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Chubb Entities may have against any or all of the PA Entities from the beginning of time through the Settlement Effective Date arising out of or related to the Cost Plus Insurance Program, the BB&B Guaranty, the Letter of Credit, the Retained Amounts, the Claims Administration, and/or the Request; provided, however, that the release set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement. For the avoidance of doubt, the releases set forth in this paragraph shall not apply to the BB&B Insurance Program.

9.    Nothing shall alter, modify, amend, affect, impact, or prejudice in any respect any of the terms and conditions of the BB&B Insurance Program and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses of the Chubb Companies, the Plan Administrator, the Debtors, the Debtors' estates, any of the Debtors' affiliates or successors, or any other individual or entity, as applicable, under the BB&B Insurance Program.

10.    Upon and following the Settlement Effective Date, the BB&B Guaranty POC shall be hereby deemed withdrawn and may be designated as withdrawn on the Claims Register.  For the avoidance of doubt, nothing shall withdraw, release, waive, alter, impact, amend, or modify any other proofs of claim filed by any of the Chubb Companies in the Bankruptcy Cases.

11.    Except as expressly set forth in this Order or in the Settlement Agreement, nothing shall alter, impact, amend, or modify the terms and conditions of the Cost Plus Insurance Program, the Plan and/or the Confirmation Order.

12.    This Order and the Settlement Agreement are binding upon, and shall inure to the benefit of, the Parties and their respective administrators, successors and assigns, including, without limitation, any successor to the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' affiliates and successors.

13.    The terms and conditions of this Order are immediately effective and enforceable upon its entry, and for the avoidance of doubt the stays provided for by Rules 4001(a)(3) and 6004(h) of the Federal Rules of Bankruptcy Procedure, if and to the extent applicable, shall be, and hereby are, waived.

14.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

6

15.     The requirement set forth in Local Rule 9019-3 that the Plan Administrator file a notice of proposed compromise or settlement is hereby deemed satisfied by the contents of the Motion and Settlement Agreement or otherwise waived.

16.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

## Exhibit 1

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the ___ day of May 2024 by and among Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") appointed in the chapter 11 bankruptcy cases of 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BB&B")[1] and certain of its affiliates described in the Recitals below (collectively, and together with BB&B, the "Debtors"), on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, on the one hand, and Federal Insurance Company, on behalf of itself and all of its U.S.-based affiliates, predecessors, and successors (collectively, the "Chubb Companies"), on the other hand. The Plan Administrator and Chubb Companies shall be referred to herein each as a "Party," and collectively as the "Parties."

## RECITALS

**WHEREAS**, on April 23, 2023 (the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court") commencing bankruptcy cases which have been jointly administered at Case No. 23-13359 (VFP) (the "Bankruptcy Cases");

**WHEREAS**, prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, extended amended, modified, endorsed or supplemented from time to time, collectively, the "Cost Plus Policies") to Cost Plus, Inc. ("Cost Plus"), a non-Debtor former subsidiary of BB&B, as named insured, and certain of the Cost Plus Policies also provide coverage to certain affiliates or subsidiaries of Cost Plus;

**WHEREAS**, prior to the Petition Date, the Chubb Companies, Cost Plus and/or BB&B also entered into certain written agreements in connection with the Cost Plus Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, and collectively, the "Insurance Agreements") including, but not limited to, that certain Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004 (the "2004 RISA");

**WHEREAS**, a true and correct list of the Cost Plus Policies and the Insurance Agreements is attached to this Agreement as **Exhibit A**;[2]

---

[1]    Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[2]    **Exhibit A** is non-exhaustive. The Parties reserve the right but have no obligation to amend **Exhibit A** to add any Cost Plus Policy and/or Insurance Agreement not already identified therein, subject to the Parties' agreement in writing to any such amendment.

**WHEREAS**, pursuant to the Cost Plus Policies and Insurance Agreements (collectively, the "Cost Plus Insurance Program"),[3] the Chubb Companies provide, *inter alia*, certain workers' compensation, automobile liability, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein;

**WHEREAS**, pursuant to the Cost Plus Insurance Program, the insureds are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Cost Plus Insurance Program (collectively, the "Obligations");

**WHEREAS**, pursuant to Amendment Nos. 8 and 9 to the 2004 RISA, BB&B guarantees and is obligated to pay to the Chubb Companies certain of the Obligations and is jointly and severally liable with Cost Plus for such Obligations (the "BB&B Guaranty");

**WHEREAS**, as collateral and/or security for the Obligations and the BB&B Guaranty, and as required and pursuant to the Cost Plus Insurance Program, BB&B provided to the Chubb Companies that certain irrevocable letter of credit number NUSCGS033844 issued by JPMorgan Chase Bank, N.A. (the "Issuing Bank") in the current amount of $1,576,705 (as amended, confirmed, supplemented or replaced, and together with the proceeds thereof, collectively, the "Letter of Credit"), which is held by, or under the control of, the Chubb Companies;

**WHEREAS**, on May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order");

**WHEREAS**, in accordance with the Bar Date Order, the Chubb Companies timely filed, among other proofs of claim, a proof of claim (the "BB&B Guaranty POC"), which is listed on the Claims Register as proof of claim no. 11413, asserting a claim against BB&B in the estimated amount of $984,870.00, plus additional contingent and unliquidated amounts on account of the BB&B Guaranty;

**WHEREAS**, on September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*

---

[3]    As used in this Agreement, the defined term "Cost Plus Insurance Program" shall not include any of the insurance policies issued by the Chubb Companies to any of the Debtors or their predecessors (other than Cost Plus) as named insureds or any agreements related thereto (such insurance policies and related agreements, collectively, the "BB&B Insurance Program"). For the avoidance of doubt, nothing shall alter, modify, amend, affect, impact, or prejudice in any respect any of the terms and conditions of the BB&B Insurance Program and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses of the Chubb Companies, the Plan Administrator, the Debtors, the Debtors' estates, any of the Debtors' affiliates or successors, or any other individual or entity, as applicable, under the BB&B Insurance Program.

2

DocuSign Envelope ID: 2B4...

[Docket No. 2172] (the "Confirmation Order"), confirming the Debtors' *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan");

**WHEREAS**, the Effective Date (as defined in the Plan) of the Plan occurred on September 29, 2023;

**WHEREAS**, pursuant to the Plan, on the Effective Date, among other things, all of the Debtors' rights and obligations under the Cost Plus Insurance Program vested, unaltered and in their entireties, with the Plan Administrator, as set forth more fully in the Plan;

**WHEREAS**, the Plan Administrator requested that the Chubb Companies reduce, return, or release all or a portion of the Letter of Credit (the "Request");

**WHEREAS**, the Chubb Companies and the Plan Administrator engaged in discussions and negotiations regarding this Request, which resulted in this settlement; and

**WHEREAS**, the Parties are entering into this Agreement to settle and resolve any and all claims, disputes, and issues between the Parties related to the Cost Plus Insurance Program, the BB&B Guaranty, the Letter of Credit, and the Request.

**NOW, THEREFORE**, in consideration of the foregoing, the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties enter into this Agreement and agree to be bound by its terms.

## AGREEMENT

1.      Incorporation.  The Recitals set forth above are incorporated herein as though fully set forth at length.

2.      Draw Down and Release of the Letter of Credit.[4]

    (a)      The Retained LOC Proceeds.  Within fifteen (15) business days after the Settlement Effective Date (as defined herein), the Chubb Companies shall submit to the Issuing Bank via overnight mail a request for a draw on the

---

[4]     On or about April 25, 2024, the Chubb Companies received a notice from the Issuing Bank that the Letter of Credit will not be renewed and shall expire on June 30, 2024.  In the event that the Settlement Effective Date does not occur before June 10, 2024, paragraph 2(a) and (b) hereof shall be deemed null and void, and on June 10, 2024 or within seven (7) calendar days thereafter, the Chubb Companies shall submit to the Issuing Bank via overnight mail a request for a draw on the Letter of Credit in the full amount thereof in accordance with and subject to the terms of the Letter of Credit and/or non-bankruptcy law (the "Full Draw").  Within twenty (20) business days after the date on which the Chubb Companies confirm receipt of the amount of the Full Draw from the Issuing Bank, and subject to the occurrence of the Settlement Effective Date, the Chubb Companies shall pay the difference between the amount of the Full Draw and the Retained LOC Proceeds to the Plan Administrator via ACH or wire transfer at the Chubb Companies' sole discretion pursuant to the ACH or wire instructions provided by the Plan Administrator, along with a W-9.

Letter of Credit in the amount of $500,000.00 (the "Retained LOC Proceeds") in accordance with and subject to the terms of the Letter of Credit and/or non-bankruptcy law.

(b)    Release of the Letter of Credit.  Within twenty (20) business days after the date on which the Chubb Companies confirm receipt of the amount of the draw for the Retained LOC Proceeds from the Issuing Bank, the Chubb Companies shall fully and finally release the Letter of Credit to the Issuing Bank with instructions that the Letter of Credit may be cancelled in accordance with and subject to the terms of the Letter of Credit and/or non-bankruptcy law.

(c)    Retention of Certain Amounts by the Chubb Companies.  On and after the Settlement Effective Date, and except as expressly provided in paragraph 2(b) hereof, the Chubb Companies shall indefeasibly retain the Retained LOC Proceeds and any and all other amounts previously paid or deposited with or provided to the Chubb Companies by any of the Debtors in connection with the Cost Plus Insurance Program including, but not limited to, all collateral and other security provided to the Chubb Companies in respect of and to secure the BB&B Guaranty, and further including but not limited to any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to the Chubb Companies at any time that may otherwise be due at any time from the Chubb Companies to the Plan Administrator in connection with the Cost Plus Insurance Program, if any (collectively, the "Credits," and together with the Retained LOC Proceeds, the "Retained Amounts").

3.    Plan Administrator Divested of All Right, Title and Interest in the Retained Amounts.  On the Settlement Effective Date, the Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, hereby forever waives and releases all of his and their rights, title and interest, if any, in and to the Retained Amounts.  For the avoidance of doubt, upon and following the Settlement Effective Date, none of the Plan Administrator, any party claiming by or through the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' successors and affiliates, shall have any right, title or interest whatsoever in the Retained Amounts.

4.    The Chubb Companies' Right, Title and Interest in the Retained Amounts.  The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, agrees that, upon and following the Settlement Effective Date, the Chubb Companies shall have all right, title, and interest in the Retained Amounts.  The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, agrees that, except as expressly provided in paragraph 2(b) hereof, no collateral and/or security shall be reduced, released, or returned to the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' successors and affiliates, and no payments shall be made by the Chubb Companies to the Plan Administrator, the Debtors, the Debtors' estates, or any of the Debtors' successors or affiliates in connection with the Cost Plus Insurance Program.

Upon and following the Settlement Effective Date, (i) the Chubb Companies shall have the right to hold, use and/or apply the Retained Amounts and the proceeds thereof for any purpose and in their sole discretion and take any other actions without further notice to the Plan Administrator, the Debtors, the Debtors' estates, or any of the Debtors' successors or affiliates or order of the Court and (ii) for these purposes, the automatic stay imposed by Section 362(a) of the Bankruptcy Code and any injunction or release provision in the Plan, any order or any other document (collectively, the "Stays"), if and to the extent applicable, shall be lifted without further order of the Court.

5.    The Chubb Companies' Continued Administration of Claims. Upon and following the Settlement Effective Date and subject to the Reservation of Rights (as defined herein), (i) the Chubb Companies shall (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the Cost Plus Policies (each, an "Insured Claim") to the extent required under the terms of the Cost Plus Policies, (b) have the right, to the extent not already possessed by the Chubb Companies, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Insured Claim, in the case of each of the foregoing in the Chubb Companies' sole discretion (collectively, "Claim Administration"); (ii) the Stays, to the extent applicable, shall be deemed lifted without further court order to permit the Chubb Companies to perform Claim Administration; and (iii) the Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, waives any right to perform Claim Administration or to participate therein. For the avoidance of doubt, nothing in this Agreement or the Bankruptcy Court Order grants, or should be deemed to grant, any claimant relief from the Stays or, if applicable, to proceed with their claims without first seeking and receiving relief from the Stays from the Court, to the extent applicable. Except as specifically set forth herein, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the Cost Plus Insurance Program or requires or obligates the Chubb Companies to pay any amounts within any self-insured retention. For the avoidance of doubt, nothing herein alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BB&B Insurance Program, and nothing alters, amends, or otherwise modifies the Chubb Companies' rights or ability to handle any claims asserted against any insureds under the Cost Plus Insurance Program.

6.    BB&B Guaranty POC. On the Settlement Effective Date and without further action required by the Chubb Companies or the Plan Administrator, the BB&B Guaranty POC shall be deemed withdrawn. For the avoidance of doubt, nothing herein withdraws, releases, waives, alters, impacts, amends, or modifies any other proofs of claim filed by any of the Chubb Companies in the Bankruptcy Cases.

7.    Bankruptcy Court Approval. The Chubb Companies shall prepare, at their own expense, a motion (the "9019 Motion") for the Plan Administrator to file seeking approval of this Agreement as executed by the Parties pursuant to Federal Rule of Bankruptcy Procedure 9019. The 9019 Motion shall be served by the Plan Administrator at the Plan Administrator's own expense on a list of entities that is acceptable to the Chubb Companies. The Plan Administrator shall be obligated to cooperate fully with the Chubb Companies in responding to or defending against any challenges or objections to the 9019 Motion and, further, the Plan Administrator shall

seek and must receive the Chubb Companies' consent prior to shortening the notice period for or extending any deadline to object to the 9019 Motion.

8.  Bankruptcy Court Order. The order approving the 9019 Motion (the "Bankruptcy Court Order") shall, *inter alia*: (i) be in form and substance reasonably acceptable to the Chubb Companies; (ii) approve this Agreement in full and authorize and direct the Plan Administrator to enter into this Agreement on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of this Agreement; (iii) to the extent necessary, authorize the Chubb Companies to enter into and take any and all actions necessary and appropriate to consummate and perform the terms and conditions of this Agreement, including, but not limited to, drawing on and/or releasing the Letter of Credit; (iv) provide that, upon and following the Settlement Effective Date, the Plan Administrator (nor, for the avoidance of doubt any party claiming by and through him nor any of the Debtors, the Debtors' estates, or any of the Debtors' successors or affiliates) shall not have any rights, title, or interests in the Retained Amounts or the proceeds thereof; (v) provide, upon and following the Settlement Effective Date, that the Chubb Companies shall have all right, title, and interest in the Retained Amounts and authorize the Chubb Companies, in their sole discretion, to draw upon the Retained Amounts, hold and use the proceeds and take other actions in their sole discretion and without further order of the Court; (vi) provide that the Stays, to the extent applicable, are lifted to permit the Chubb Companies to handle, administer, adjust, settle and/or pay Insured Claims; (vii) restate and specifically approve the releases set forth herein; and (viii) have become final, which, notwithstanding anything to the contrary in the Bankruptcy Court Order, shall occur after the Bankruptcy Court Order is entered by the Court, without any appeal or modification thereof, and all applicable appeal periods shall have expired and no appeals or other challenges are pending (the "Final Order").

9.  Settlement Effective Date. Notwithstanding any provision in the Bankruptcy Court Order or any other order of the Court to the contrary, the effective date of this Agreement (the "Settlement Effective Date") shall be the first business day after the Bankruptcy Court Order becomes a Final Order.

10.  Release by the PA Entities. In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, the Plan Administrator, on behalf of himself and all parties claiming by, through, or under the Plan Administrator, the Debtors, the Debtors' estates, all of the Debtors' successors and affiliates, and the agents, employees, representatives, officers, advisory board members, oversight committee members, attorneys, experts, shareholders, directors, parents, subsidiaries, affiliates, successors, assigns, trustees and predecessors in interest of each of the foregoing (collectively, the "PA Entities") hereby waive, release, acquit, and forever discharge each of the Chubb Companies and their respective agents, employees, representatives, officers, attorneys, experts, shareholders, directors, parents, subsidiaries, affiliates, successors, assigns, trustees and predecessors in interest (collectively, the "Chubb Entities") from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known

6

or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the PA Entities may have against any or all of the Chubb Entities from the beginning of time through the Settlement Effective Date arising out of or related to the Cost Plus Insurance Program, the BB&B Guaranty, the Letter of Credit, the Retained Amounts, the Claims Administration, and/or the Request; provided, however, that the release set forth in this paragraph shall not apply to the Chubb Companies' obligations under the Cost Plus Policies or the obligations expressly contained in this Agreement. For the avoidance of doubt, the releases set forth in this paragraph shall not apply to the BB&B Insurance Program.

11.    Release by the Chubb Entities.  In consideration of promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, the Chubb Entities waive, release, acquit and forever discharge each of the PA Entities from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Chubb Entities may have against any or all of the PA Entities from the beginning of time through the Settlement Effective Date arising out of or related to the Cost Plus Insurance Program, the BB&B Guaranty, the Letter of Credit, the Retained Amounts, the Claims Administration, and/or the Request; provided, however, that the release set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement. For the avoidance of doubt, the releases set forth in this paragraph shall not apply to the BB&B Insurance Program.

12.    Plan and Confirmation Order.  Except as expressly set forth in this Agreement, nothing shall alter, impact, amend, or modify the terms and conditions of the Plan and/or the Confirmation Order.

13.    Section 1542 Release.  With respect to the matters released herein, the Chubb Entities and the PA Entities expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

14.    Covenants Not to Sue.  The PA Entities, on behalf of themselves and all parties claiming by, through or under them, jointly and severally covenant and agree not to commence or prosecute any action, arbitration or proceeding against the Chubb Entities arising out of or relating to the matters released hereby.  The Chubb Entities, on behalf of themselves and all parties claiming by through or under them, jointly and severally covenant and agree not to commence or prosecute any action or proceeding against the PA Entities arising out of or relating to the matters released hereby.

15.    Reservation of Rights.  Nothing in this Agreement (i) expands, contracts or otherwise alters the insurance coverage provided by the Cost Plus Insurance Program or the terms

DocuSign Envelope ID: 2554745 D4BBD-49EF-AD52-B34D26AA4B0A

and conditions of the Cost Plus Insurance Program; (ii) permits the holder of an Insured Claim to recover the same amounts from the Chubb Companies and again from any other person or entity, including the Plan Administrator, the Debtors, and/or the Debtors' estates, (iii) creates or permits a direct right of action by any holder of an Insured Claim against the Chubb Companies; (iv) precludes or limits, in any way, the rights of the Chubb Companies to contest and/or litigate with any person or entity the existence, primacy, and/or scope of available insurance coverage under any alleged applicable policy; (v) is a determination as to insurance coverage under the Cost Plus Insurance Program; or (vi) relieves any holder of an Insured Claim from any obligation to have filed a proof of claim in the Bankruptcy Case(s). This paragraph shall be referred to as the "Reservation of Rights."

16.    Entire Agreement. To the extent of any inconsistency between (i) this Agreement and the Final Order approving this Agreement on the one hand, and (ii) any other document, agreement, or order (including, but not limited to, the Plan or the Confirmation Order) on the other hand, the terms of this Agreement and the Final Order approving the Agreement shall control.

17.    Counterparts. This Agreement may be executed in counterparts, including facsimile or PDF signatures and digital signatures using digital signature software that electronically captures, or otherwise allows a signatory to adopt, an identifying mark as such person's signature to this Agreement (e.g., Docusign®), each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

18.    Jurisdiction. Any action, controversy, dispute, claim, or question directly or indirectly arising out of or relating to this Agreement or the Cost Plus Insurance Program including, without limitation, the interpretation, performance, or non-performance by any party, any breach thereof, or any claims arising thereunder, shall be referred to and resolved solely in accordance with the terms and conditions of the Cost Plus Insurance Program including, but not limited to, any arbitration, choice of law, forum, or jurisdiction provision therein; provided, further, that to the extent any action, controversy, dispute, claim, or question involves, in any way, the terms of this Agreement and the terms of the Cost Plus Insurance Program, the parties agree that the terms of the Cost Plus Insurance Program shall govern.

19.    Construction. For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective Parties and their counsel, and any rule of construction of contracts that would otherwise provide ambiguities are to be construed against the drafting party shall not be applied against any person.

20.    Successors and Assigns. This Agreement is binding upon, and shall inure to the benefit of, the Parties, and their respective administrators, successors and assigns, including, without limitation, any successor to the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' affiliates and successors. However, except as expressly stated herein nothing herein is intended to benefit any third party.

21.    Representations and Warranties. Each Party hereto represents and warrants that it has carefully read this Agreement in its entirety; that it has had an adequate opportunity to consider it and to consult with any advisor of its choice about it; that it understands all of its terms; that it has consulted with independent counsel of its choice, who answered to its satisfaction all questions

that it had regarding this Agreement; that its undersigned representative is duly authorized to enter into this Agreement on its behalf; that it voluntarily assents to all the terms and conditions contained herein; that by signing this Agreement it is bound by the terms and conditions contained herein; and that it is signing this Agreement voluntarily and of its own free will.

22.    Additional Representations and Warranties by Plan Administrator.

(a)    Released Claims.  The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to the Chubb Companies that he is the representative of the Debtors' estates in the Bankruptcy Cases and is entitled to enter into and execute this Agreement and that he is the sole and exclusive owner of the claims, causes of action, rights, and other interests which he is releasing by this Agreement and that he has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and will not assign, transfer, or convey any claim, cause of action, right, or other interest in the same to any person or entity.

(b)    No Other Right to Release or Return of Collateral.  The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to the Chubb Companies that no party other than the Plan Administrator, including any party or creditor in any bankruptcy case commenced at any time under the Bankruptcy Code by any of the Debtors, their successors, or their affiliates, has any right in or to the Letter of Credit or the Retained Amounts.

(c)    Oversight Committee.  The Plan Administrator represents and warrants that he has consulted with the Oversight Committee (as defined in the Plan) regarding entering into this Agreement and has obtained the Oversight Committee's consent and approval to enter into this Agreement and obtained any other required approvals or permissions to enter into this Agreement and that no further approvals or permissions are necessary for him to enter into this Agreement.

23.    Indemnification of the Chubb Entities by the PA Entities.  If a claim is made against the Chubb Entities, or any of them, based upon any alleged entitlement to any of the Retained Amounts or any other proceeds of the Letter of Credit by any non-Party, the PA Entities shall defend, indemnify, and hold harmless the Chubb Entities from any and all claims, demands, damages, costs, expenses, actions, or causes of action on account of or in any way growing out of any such possible claim of entitlement, and to repay any sum of money that the Chubb Entities, or any of them, may hereafter be compelled to pay as a result of any such claim of entitlement, including, but not limited to, amounts paid to defend against such a claim of entitlement.

24.    Costs and Expenses.  The Parties agree to be responsible for and to bear their own costs, expenses and attorneys' fees incurred in connection with this Agreement and the negotiations related to and the preparation and performance of this Agreement, and not to seek reimbursement of any such costs, expenses and attorneys' fees from any other Party.

25.    <u>Notices</u>.  All notices, requests, waivers, consents and other communications hereunder shall be in writing and shall be mailed first class certified mail or by nationally recognized overnight courier service, or by personal delivery, with postage or other applicable delivery fees prepaid and addressed as follows:

<u>If to the Chubb Companies</u>:

Catherine Glenn
Senior Counsel – Commercial Litigation – Global Legal
436 Walnut Street – WA04K
Philadelphia, PA 19106

and

Wendy M. Simkulak, Esquire
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103

<u>If to the Plan Administrator</u>:

Michael I. Goldberg
Akerman LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301

and

Stephen Schwab
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606

26.    <u>Headings</u>.  The underlined headings of the paragraphs contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

27.    <u>Governing Law</u>.  To the extent not subject to federal law, this Agreement shall be construed, and the rights and obligations of the Parties hereunder determined, in accordance with the law of the Commonwealth of Pennsylvania.

28.    <u>No Amendment or Modification</u>.  It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect whatsoever with the sole exception of by a writing duly executed by authorized representatives of each of the Parties, and the Parties further acknowledge and agree that they will make no claim at

any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever. No failure on the part of any Party to this Agreement to exercise, and no delay on its part in exercising, any right or remedy under this Agreement will operate as a waiver thereof, nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy.

29.    <u>No Admission.</u>  The Parties acknowledge and agree that this Agreement is being entered into for the purpose of avoiding the expense, delay and uncertainty of litigation and nothing contained herein shall constitute, be introduced, treated, deemed or otherwise interpreted or construed as (a) an admission, waiver, evidence or concession by any of the Parties hereto of any fact, liability or wrongdoing, or (b) evidence in any judicial or arbitration proceeding, except to enforce or defend the terms herein.

30.    <u>Non-Contravention.</u>  Each Party represents and warrants to the other that the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated thereby will not contravene such Party's organizational documents and will not conflict with or result in (i) a breach of or default under any agreement or order applicable to such Party, or (ii) a breach by such Party of any applicable law.

31.    <u>Survival</u>.  The representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

[*Signatures follow*]

11

*Execution Version*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year first above written.

**FEDERAL INSURANCE COMPANY,**
**ON BEHALF OF ITSELF AND ALL OF ITS U.S.-**
**BASED AFFILIATES AND SUCCESSORS**

By: *Pamela Bachstadt*
Name: Pamela Bachstadt
Title:   Vice President, Credit Management

**THE PLAN ADMINISTRATOR, ON BEHALF**
**OF HIMSELF, THE DEBTORS, THE**
**DEBTORS' ESTATES, AND ALL OF THE**
**DEBTORS' SUCCESSORS AND AFFILIATES**

By:
Name:   Michael Goldberg
Title:   Plan Administrator

*Execution Version*

# Exhibit A

**Cost Plus Policies:**

| Policy Number | Policy Period | Insurer | Type of Coverage |
|---|---|---|---|
| 71603733 | 8/1/2001-8/1/2002 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2002-8/1/2003 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2003-8/1/2004 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2004-8/1/2005 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2005-8/1/2006 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2006-8/1/2007 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2007-8/1/2008 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2008-8/1/2009 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2009-8/1/2010 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2010-8/1/2011 | Federal Insurance Company | Workers' Compensation |
| 71603733 | 8/1/2011-8/1/2012 | Federal Insurance Company | Workers' Compensation |
| 73508980 | 8/1/2003-8/1/2004 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2004-8/1/2005 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2005-8/1/2006 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2006-8/1/2007 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2007-8/1/2008 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2008-8/1/2009 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2009-8/1/2010 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2010-8/1/2011 | Federal Insurance Company | Automobile Liability |
| 73508980 | 8/1/2011-8/1/2012 | Federal Insurance Company | Automobile Liability |
| 73558208 | 8/1/2009-8/1/2010 | Federal Insurance Company | Automobile Liability |
| 73558208 | 8/1/2010-8/1/2011 | Federal Insurance Company | Automobile Liability |
| 73558208 | 8/1/2011-8/1/2012 | Federal Insurance Company | Automobile Liability |
| 35776470 | 8/1/2003-8/1/2004 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2004-8/1/2005 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2005-8/1/2006 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2006-8/1/2007 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2007-8/1/2008 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2008-8/1/2009 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2009-8/1/2010 | Federal Insurance Company | General Liability |
| 35776470 | 8/1/2010-8/1/2011 | Federal Insurance Company | General Liability |

| Policy Number | Policy Period | Insurer | Type of Coverage |
|---|---|---|---|
| 35776470 | 8/1/2011-8/1/2012 | Federal Insurance Company | General Liability |

**Insurance Agreements:**

- Reimbursement, Indemnification, and Security Agreement, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Federal Insurance Company and Cost Plus, Inc., effective as of August 1, 2001.

- Amendment No. 1 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2001, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Federal Insurance Company and Cost Plus, Inc.

- Reimbursement, Indemnification, and Security Agreement, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Federal Insurance Company and Cost Plus, Inc., effective as of August 1, 2003.

- Reimbursement, Indemnification, and Security Agreement, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Federal Insurance Company and Cost Plus, Inc., effective as of August 1, 2004.

- Amendment No. 1 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Federal Insurance Company and Cost Plus, Inc.

- Amendment No. 2 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company and Cost Plus, Inc.

- Amendment No. 3 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company and Cost Plus, Inc.

- Amendment No. 4 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company, and Cost Plus, Inc., effective as of August 1, 2008.

- Amendment No. 5 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company, and Cost Plus, Inc., effective as of August 1, 2009.

- Amendment No. 6 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company, and Cost Plus, Inc., effective as of August 1, 2010.

2

- Amendment No. 7 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company, and Cost Plus, Inc., effective as of August 1, 2010.

- Amendment No. 8 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company, on the one hand, and Cost Plus, Inc. and Bed Bath & Beyond Inc., on the other hand, effective as of August 1, 2012.

- Amendment No. 9 to the Reimbursement, Indemnification, and Security Agreement effective as of August 1, 2004, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Federal Insurance Company, on the one hand, and Cost Plus, Inc. and Bed Bath & Beyond Inc., on the other hand, effective as of August 1, 2012.

- Premium Agreement, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between Chubb & Son, a division of Federal Insurance Company and Cost Plus, Inc., effective as of August 1, 2008.

3

United States Bankruptcy Court
District of New Jersey

In re:                                                                          Case No. 23-13359-VFP

Bed Bath & Beyond Inc.                                                          Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0312-2 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jun 04, 2024 | Form ID: pdf903 | Total Noticed: 13 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 06, 2024:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Bed Bath & Beyond Inc., 650 Liberty Avenue, Union, NJ 07083-8107 |
| aty | + | Casey McGushin, 3101 Old Jacksonville Road, Springfield, IL 62704-6488 |
| aty | + | Jacob E. Black, Kirkland and Ellis LLP,, 3101 Old Jacksonville Road, Springfield, IL 62704-6488 |
| aty | + | Max M Freedman, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654-5412 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| aty | ^ | MEBN | Jun 04 2024 20:33:42 | Charles B. Sterrett, Kirkland & Ellis, 300 North LaSalle Street, Chicago, IL 60654-5412 |
| aty | ^ | MEBN | Jun 04 2024 20:35:24 | Derek I. Hunter, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |
| aty | ^ | MEBN | Jun 04 2024 20:33:19 | Emily E. Geier, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |
| aty | ^ | MEBN | Jun 04 2024 20:34:26 | Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |
| aty | ^ | MEBN | Jun 04 2024 20:35:32 | Michael A. Sloman, Kirkland and Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |
| aty | ^ | MEBN | Jun 04 2024 20:35:08 | Noah Z. Sosnick, Kirkland and Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |
| aty | ^ | MEBN | Jun 04 2024 20:34:37 | Olivia F. Acuna, Kirkland and Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |
| aty | ^ | MEBN | Jun 04 2024 20:35:16 | Richard U.S. Howell, P.C, KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP, 300 North LaSalle Street, Chicago, IL 60654-5412 |
| aty | ^ | MEBN | Jun 04 2024 20:35:01 | Ross Fiedler, Kirklnd & Ellis LLP, 601 Lexington Avenue, New York, NY 10022-4643 |

TOTAL: 9

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities**

in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 06, 2024                    Signature:        /s/Gustava Winters