UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Fran B. Steele, Esq.
Robert J. Schneider, Jr., Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: fran.b.steele@usdoj.gov
Email: robert.j.schneider@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 23-13359 (VFP) |
| | *Jointly Administered* |
| BED BATH & BEYOND INC., *et al*,[1] | Chapter 11 |
| Debtors. | Honorable Vincent F. Papalia |
| | Hearing: July 9, 2024 at 2:30 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION TO REQUEST RELIEF AND APPOINTMENT OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS SUBMITTED TO THIS COURT BY "ML1"**

Andrew R. Vara, the United States Trustee for Regions Three and Nine ("U.S. Trustee") by and through his undersigned counsel, in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby submits this objection ("Objection") to the *Motion to Request Relief and Appointment of Official Committee of Equity Security Holders* ("Motion") submitted to this Court by "ML1," and respectfully states as follows:

**INTRODUCTION**

1.     Under the liquidation plan filed in this case, on the plan's effective date all equity security interests in Bed Bath & Beyond, Inc. and related debtor entities ("Debtors") were

---

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number May be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

1

cancelled, and the official committee of unsecured creditors appointed in this case was dissolved. Indeed, from the day the plan and supporting disclosure statement were filed until day the plan was confirmed almost two months later, it was clear that the Debtors intended to liquidate their assets and pay nothing to holders of equity interests.

2.	As a result, even if a timely request had been made (which it was not), there was no need to appoint an equity security holders' committee before the Debtors' plan was confirmed, when ML1 and other former shareholders still held equity interests in the Debtors. And there is even less need to do so now that ML1 and other former shareholders' equity interests have been extinguished.

3.	In addition, there is no need to change the membership of the official committee of unsecured creditors, because it no longer exists.

4.	For these reasons, the Motion should be denied.

## JURISDICTION

5.	This Court has jurisdiction under 28 U.S.C. § 157(b) to hear and determine this Objection.

6.	Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of cases filed under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

7.	Under 28 U.S.C. § 586(a)(3)(E) and (5), the U.S. Trustee has the duty to appoint official committees of creditors and equity security holders pursuant to 11 U.S.C. § 1102(a) and monitor any committees so appointed.

8. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be raise and be heard on this Objection. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

9. On April 23, 2023 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. *See* Dkt. 1.

10. On April 24, 2023, this Court entered an *Order Directing Joint Administration of Chapter 11 Cases*. *See* Dkt. 75.

11. Pre-petition, the Debtors operated as a home furnishing retailer in the United States, Canada, Mexico, and Puerto Rico, "offer[ing] everything from bed linens to cookware to electric appliances, home organization, baby care, and other items." *See* Dkt. 10 ¶ 4.

12. The Debtors filed their chapter 11 cases to effect "a full chain wind-down" that would encompass "all of [their] assets, including [] the liquidation of inventory in all retail stores and distribution centers," and contemplated "an efficient, public, and flexible auction process to realize the full value of existing assets." *Id.* at ¶¶ 8 & 9.

13. On May 5, 2023, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("Creditors' Committee"). *See* Dkt. 218.

14. On July 20, 2023, the Debtors filed a *Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* ("Plan"). *See* Dkt. 1429.

15. In a *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* ("Disclosure Statement"), the Debtors explained that they had sold the "Bed Bath & Beyond" name and intellectual property to Overstock.com and the

3

"buybuy BABY" name and intellectual property to Dream on Me Industries, Inc. *See* Dkt. 1437 at 3, 55-56. The Disclosure Statement also explained that the Debtors were "continu[ing] to monetize the value of their inventory . . . and their leasehold interests." *Id*. at 3.

16. The Disclosure Statement further explained that, on the Plan's Effective Date,[2] the following equity interests in the Debtors ("Equity Interests") would "be deemed cancelled" and the Debtors' "duties and obligations" thereunder would "be deemed satisfied in full, canceled, released, discharged, and of no force or effect":

> all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors[.]

*Id*. at 20, Art. IV.D.

17. In addition, the Disclosure Statement explained that the holders of Equity Interests would receive nothing under the Plan. *Id*. at 4, 9 & 20.

18. The Plan provided that on the Plan's Effective Date the Debtors' remaining assets would vest in the Wind-Down Debtors, who, at the direction of the Plan Administrator and oversight from the Oversight Committee, would be responsible for monetizing and thereafter distributing those assets to Holders of Allowed Claims in accordance with the waterfall terms of the Plan. *See* Dkt. 1429, Art. IV.

19. The Plan classified holders of Equity Interests in Class 9, and provided them the following treatment: "Each Allowed Interest in [the Debtors] shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in [the Debtors]

---

[2] Capitalized terms not otherwise defined in this Objection have the meanings given to them in the Plan.

4

shall be entitled to any recovery or distribution under the Plan on account of such Interests." *Id.*, Art. III.B.9.a. & Art. IV.D.

20. The Plan further provided that, on the Effective Date, "the terms of the Plan shall be . . . deemed binding upon . . . any and all Holders of . . . Interests," and the Creditors' Committee "shall dissolve." *Id.*, Art. XIV.A. & C.

21. On July 31, 2023, the Debtors filed an Amended Plan. *See* Dkt. 1687. The Amended Plan did not alter the treatment to be provided to holders of Equity Interests. *See* Dkt. 1688 (redline).

22. On August 1, 2023, the Debtors filed a Solicitation Version of the Amended Plan. *See* Dkt. 1712.

23. On August 2, 2023, the Court entered an *Order (I) (A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in Connection with therewith, (D) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Certain Dates and Deadlines With Respect Thereto, and (E) Granting Related Relief, and (II) (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief.* *See* Dkt. 1716.

24. A combined hearing on the Disclosure Statement and Plan was scheduled for September 12, 2023. *Id.* September 1, 2023 was set as the deadline to file an objection to the Plan. *Id.* Exh. 2.

25. ML1 did not object to the Plan's proposed treatment of holders of Equity Interests.

5

26. On September 11, 2023, the Debtors filed a Second Amended Plan. *See* Dkt. 2160. The Second Amended Plan did not alter the treatment to be provided to holders of Equity Interests. *See* Dkt. 2160-1 (redline).

27. On September 14, 2023, the Court entered an order confirming the Second Amended Plan ("Confirmation Order"). *See* Dkt. 2172.

28. ML1 did not appeal the Confirmation Order.

29. Pursuant to the Confirmation Order, on the Effective Date the terms of the Second Amended Plan became binding on all parties in interest, including holders of Equity Interests. *Id.* at 35, § II.B ¶ 81; *see also id.* at 62, § II.X ¶ 128.

30. The Confirmation Order also provided that on the Effective Date "any . . . documents directly or indirectly evidencing, creating, or relating to any . . . ownership interest in, the Debtors, giving rise to any . . . Interests in the Debtors . . . shall be deemed cancelled[.]" *Id.* at 44, ¶ II.M.

31. On September 29, 2023, the Debtors filed a *Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed, Bath & Beyond Inc. and its Debtor Affiliates and (III) Occurrence of Effective Date*, which advised all parties in interest that the Effective Date occurred on September 29, 2023. *See* Dkt. 2311.

32. On June 1, 2024—which was approximately eight months after the Effective Date—the U.S. Trustee received an email from a former holder of Equity Interests that contained various attachments including a Notice of Motion, a Certificate of Service, a Proposed Order, a Statement as to Why no Brief is Necessary, and a Certification of Facts ("Certification").

33. On June 10, 2024, a hearing was held before this Court regarding the movant's request to remain anonymous. Pursuant to the Court's directive, the movant will be referred to as "ML1" for purposes of the Motion. The Motion and attachments have been sealed by the Court, with unredacted versions supplied to the U.S. Trustee and the Plan Administrator.

34. The Motion seeks the appointment of an official committee of equity security holders under 11 U.S.C. § 1102(a)(2)—as well as the modification of the Creditors' Committee's membership under 11 U.S.C. § 1102(a)(4) (mistakenly cited as 11 U.S.C. § 1102(b)(2))—due to "Lack of Shareholder Representation," "Conflicts of Interest," "Significant Developments Impacting the Estate and Shareholder Rights," and "Public Perception and Substantial Ongoing Interest From Shareholders." *See* Certification.

**ARGUMENT**

**I.  ML1 has not demonstrated the need for an official committee of holders of the Debtors' Equity Interests**

35. Under 11 U.S.C. § 1102(a)(1), "as soon as practicable after the order for relief under . . . chapter 11 . . . the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate." The U.S. Trustee formed the Creditors' Committee twelve days after the Petition Date, and did not deem it appropriate to appoint any additional committees of the Debtors' creditors or holders of the Debtors' Equity Interests.

36. Under 11 U.S.C. § 1102(a)(2), "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." No request for the appointment of an official committee of holders of Equity Interests was made prior to the Plan's confirmation.

7

37. If an official committee is appointed, it may, among other things: **(i)** "consult with the . . . debtor in possession concerning the administration of the case"; **(ii)** "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan"; **(iii)** "participate in the formulation of a plan"; and **(iv)** "request the appointment of a trustee or examiner under [11 U.S.C. § 1104]."

38. In determining whether appointment of an equity security holders' committee is "necessary" as required by section 1102(a)(2), courts consider such factors as: **(i)** the stage of the case at the time the request is made; **(ii)** whether there is a substantial likelihood that equity security holders will receive a meaningful distribution in the case; and **(iii)** whether equity security holders' interests can be represented adequately without an official equity security holders' committee. *See In re Spansion, Inc.*, 421 B.R. 151, 164 (Bankr. D. Del. 2009); *In re Williams Commc'ns Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002).

39. As the movant, ML1 bears the burden to prove that the appointment of an official committee of holders of the Debtors' Equity Interests is necessary. *See Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 68 B.R. 155, 157 (S.D.N.Y. 1986). "The appointment of official equity committees should be the rare exception." *Williams Commc'ns Grp.*, 281 B.R. at 223; *see also* 7 Collier on Bankruptcy ¶ 1102.03[2] (16th ed. 2024) ("Appointment of committees of equity security holders is the exception rather than the rule in chapter 11 cases."). ML1 cannot meet that burden here because: **(i)** the Plan has already been confirmed and the Effective Date has occurred, so the Equity Interests no longer exist; **(ii)** ML1 and similarly situated holders of Equity Interests never stood to receive a distribution under the Plan as proposed; and **(iii)** ML1 and other holders of Equity Interests could have taken an active role

8

during the pre-confirmation stage of the case without the need for an official committee, and—because the Plan proposed a liquidation of assets that would not even pay unsecured creditors in full—the Creditors' Committee adequately represented the interests of both the unsecured creditors and the lower-priority holders of Equity Interests.

      **A.    Appointment of an official committee is not necessary because the confirmed Plan extinguished the Debtors' Equity Interests**

40. One factor that weighs heavily in determining whether to order the appointment of an equity security holders' committee is the timing of the request. Although section 1102(a)(2) has no time limits, as a practical matter "the potential effectiveness of an official committee is, to a large degree, determined by the stage a reorganization proceeding has reached." *Johns-Manville*, 68 B.R. at 161. Because the statutory duties of an official committee include matters that can only occur prior to plan confirmation—*i.e.*, consulting with a debtor in possession, working toward the formulation of a plan, moving for a chapter 11 trustee—"a committee will most effectively exercise its responsibilities at the beginning of a reorganization, prior to the formulation of a plan." *Id*.

41. As a result, once a plan has been submitted for voting, "[i]t is far too late for a committee to exercise its most important function—negotiating a reorganization plan[.]" *Id*. at 163; *see also In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996) ("The late timing of the motion ties in to the only remaining purpose of an equity committee in this case, which would be to object to confirmation, and litigate the valuation issue," and "[t]he [] costs associated with the formation of an equity committee cannot be justified in light of this purpose."). This is particularly so where, as here, the plan "proposes no distribution to existing common equity holders, whose interest will be cancelled." *Spansion*, 421 B.R. at 154; *see also id*. at 164 n.23 ("At this late time, there is little purpose to forming an official equity committee

9

and requiring the estate to bear the associated costs.").

42. Further, where, as here, a liquidating plan has not only been submitted but has already been confirmed, "there is no necessity to appoint a committee for equity security holders because their interests have been extinguished by the Debtors' Plan and they will receive nothing from the estate." *In re eToys, Inc.*, 331 B.R, 176, 186 (Bankr. D. Del. 2005); *see also In re Genesis Health Ventures, Inc.*, 204 F. App'x 144, 146 (3d Cir. 2006) (affirming denial of motion for post-confirmation appointment of equity security holders' committee), *cert. denied sub nom.*, *Hayes v. Genesis Health Ventures, Inc.*, 550 U.S. 167 (2007); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), 2013 WL 5377962, at *4 (Bankr. D. Del. Sept. 26, 2013) (denying motion for post-confirmation appointment of equity security holders' committee because, "[a] th[at] point in the case, it is well past the time to perform those duties that are typical for an official committee"); 7 Collier on Bankruptcy ¶ 1102.03[2] ("Many chapter 11 cases are hopelessly insolvent . . . . In such cases, the interests of existing stockholders will be wiped out in a plan and stockholders do not need a committee to look out for their interests.").

43. The post-confirmation appointment of an equity security holders' committee, and the resulting disruption of parties' reliance on the confirmed plan, is disfavored because of "the long recognized public policy supporting the finality of bankruptcy judgments." *Genesis Health Ventures*, 204 F. App'x at 146.

44. Here, pursuant to the Confirmation Order—a final order that ML1 chose not to appeal—all Equity Interests were cancelled on the Effective Date. *See* Dkt. 2172 at 44, § II.M ¶ 98; *see also* 11 U.S.C. § 1141(d)(1)(B) (unless otherwise provided in the plan or confirmation order, "the confirmation of a plan . . . terminates all rights and interests of equity security holders and general partners provided for by the plan"). Thus, neither ML1 nor any other person or

10

entity that used to hold Equity Interests does so anymore.

45. Because there are no longer any holders of Equity Interests, there is no constituency for an official committee to represent.[3] As a result, appointment of an official committee of holders of Equity Interests is not "necessary," and the Motion should be denied.

### B. There was never a substantial likelihood of a distribution to holders of Equity Interests

46. A salient factor in determining whether appointment of an equity security holders' committee is necessary is the existence of a "substantial likelihood" that there will be sufficient funds to clear unsecured creditors and reach equity securities holders. *See, e.g.*, *Spansion*, 421 B.R. at 156; *Williams Commc'ns Grp*, 281 B.R. at 223. "[I]f equity holders have no reasonable prospect of receiving a meaningful distribution . . . an equity committee could serve no legitimate role[.]" *Spansion*, 421 B.R. at 156.

47. To successfully move for appointment of an equity security holders committee, the movant must show not merely that there is a possibility of a distribution to equity security holders, but that there is a "substantial likelihood" for such a distribution. *See In re Celsius Network LLC*, 645 B.R. 165, 174 (Bankr. S.D.N.Y. 2022) ("[T]he fact that equity holders **may** be entitled to recovery depending on this Court's ruling in certain disputes in these Chapter 11 Cases is insufficient to satisfy the Requesting Equity Holders' high burden that there is a 'substantial likelihood' of recovery.") (quoting *Williams Commc'ns Grp*, 281 B.R. at 223) (emphasis in original).

48. Under 11 U.S.C. § 1129(a)(7)(A)(ii), a debtor can only confirm a plan if each impaired class would receive at least the amount it would receive in a chapter 7 liquidation. In a

---

[3] Indeed, as ML1 no longer holds an Equity Interest in the Debtors, it is not clear that ML1 is at this stage of the case a "party in interest" with standing to raise this matter. *See* 11 U.S.C. § 1109(b).

11

liquidation scenario the debtor's equity security holders are dead last in priority, and can only receive or retain anything if the claims of all classes of higher priority are paid in full, with interest. *See* 11 U.S.C. § 726(a)(6). In the Confirmation Order this Court found that the Plan met the requirements of section 1129(a)(7). *See* Dkt. 2172 at 27, § I.P.i ¶ 58.

49. In addition, where an impaired class of unsecured creditors or equity security interests has not accepted the plan, the plan may nevertheless be confirmed as long as no lower priority class will receive or retain anything under the plan until the unaccepting class has been paid in full. *See* 11 U.S.C. § 1129(b)(2)(B), (C). Here, the Class 6 unsecured creditors and Class 9 holders of Equity Interests were impaired and did not vote to accept the Plan. Nevertheless, in the Confirmation Order this Court found that the Plan was "fair and equitable" under section 1129(b)(1) because—consistent with the section 1129(b)(2) "absolute priority rule"—even though Class 6 unsecured creditors will not be paid in full, Class 9 holders of Equity Interests will not receive or retain anything. *See* Dkt. 2171 at 30, § I.P.p ¶ 65.

50. It was clear from early on that the Debtors were liquidating; at best, they hoped to sell some of their assets as a going concern while liquidating the rest. By July 2023, when the Plan was filed, the Debtors' former holders of Equity Interests were on notice that the Plan proposed to extinguish their Equity Interests and pay them nothing.

51. Upon reviewing the Plan and Disclosure Statement it was incumbent upon holders of Equity Interests to request that a committee be immediately appointed if they hoped to somehow negotiate a different result. Yet they did not do so. Having sat on their rights until after their interests were extinguished, the Debtors' former holders of Equity Interests should not now be heard to complain about the result of the case.

52. Even if they had moved timely under section 1102(a)(2), however, it would not

have been necessary to appoint an official committee of equity security holders because there was never a substantial likelihood that the liquidation of the Debtors' assets would produce enough money to pay all unsecured creditors in full plus interest, much less to allow holders of Equity Interests to retain an equity interest or receive a distribution. *See, e.g, In re SunEdison, Inc.*, 556 B.R. 94, 102 (Bankr. S.D.N.Y. 2016) (denying motion for equity security holders' committee in liquidating case because "the stockholders of a 'hopelessly insolvent' case have no economic interest in the case, and under the absolute priority rule, are not entitled to any distribution under a plan absent the consent of the unsecured creditors"); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 69698 (Bankr. C.D. Cal. 2008) (denying motion for equity security holders' committee in liquidating case because "there [was] no evidence" that the liquidation of the debtors' assets "w[ould] put the equity security holders 'in the money'").

53. In light of the foregoing, as there is not now, and never was, a substantial likelihood that the holders of the Debtors' Equity Interests could receive a distribution or retain any equity interests through the Plan, the Motion should be denied.

**C. Appointment of an official committee is not necessary because holders of the Debtors' Equity Interests could have participated the case without one and, in any event, their interests were adequately represented by other stakeholders**

54. Even if a movant can demonstrate a substantial likelihood that equity security holders will receive a distribution, it must also demonstrate that the interests of equity holders cannot be adequately represented without an official committee. *See, e.g.*, *Spansion*, 421 B.R. at 156; *Williams Commc'ns Grp*, 281 B.R. at 223.

55. Although nothing can be done now that the Debtors' Equity Interests have been cancelled, before the Plan was confirmed ML1 and other holders of Equity Interests could have objected to the Plan and otherwise participated in the Debtors' chapter 11 case. They could also

13

have formed an unofficial ad hoc committee and pooled their resources to obtain legal counsel. Had they done so, either on their own or through an ad hoc committee, if this Court found that they "ma[de] a substantial contribution" in the Debtors' chapter 11 cases they could have recovered their actual, necessary expenses as well as reasonable compensation for their attorney under 11 U.S.C. § 503(b)(3)(D) and (4). *See, e.g.*, *SunEdison*, 556 B.R. at 105; *Spansion*, 421 B.R. at 163; *Williams Commc'ns Grp*, 281 B.R. at 223-24.

56. Although ML1 asserts that financial concerns precluded such a course of action, while "this may be a heavy financial burden to shoulder depending on the degree to which shareholders choose to participate in the case, [] the law does not require the creditors of an insolvent estate to bear this additional financial burden because the shareholders cannot." *SunEdison*, 556 B.R. at 105.

57. In addition, "the statutory focus of § 1102(a)(2) is not whether the equity holders are 'exclusively' represented, but whether they are 'adequately' represented.'" *Spansion,* 421 B.R. at 163 (internal quotation marks omitted).

58. Courts have held that the continued fiduciary duty of a chapter 11 debtor's corporate management ensures that the interests of equity holders will be adequately represented. *See, e.g.*, *Celsius*, 645 B.R. at 173 ("The usual presumption is that the Board will pay due (perhaps special) regard to the interests of shareholders.") (internal quotation marks and alterations omitted); *In re Eastman Kodak Co.*, No. 12-10202 (ALG), 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) ("[T]he existence of a functioning board of directors supports the inference that equity's interests will be adequately represented notwithstanding the absence of an official equity committee."); *Nat'l R.V. Holdings*, 390 B.R. at 699 ("When the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and

shareholders, fall upon the officers and directors," and movant did "not present[] any evidence that the Debtors' officers or directors have either breached their fiduciary duties to the equity security holders or are incapable of properly discharging their fiduciary duties in these jointly administered cases."); *see also Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he insolvency of a company does not absolve the board of its fiduciary duty to shareholders.").

59. Courts have also held that an official committee of unsecured creditors adequately represents the interests of equity security holders in a liquidating case, because the Committee "has a duty to maximize the value of the [Debtors'] estates[,] which would inhere to the benefit of shareholders." *Eastman Kodak*, 2012 WL 2501071, at *3; *see also Celsius*, 645 B.R. at 173 ("The Requesting Equity Holders will also be represented by the [Official] Committee [of Unsecured Creditors]. The Committee has a duty to maximize the value of the Debtors' estates."); *SunEdison*, 556 B.R. at 103-04 ("[T]he Creditors' Committee in an insolvent case will 'adequately represent' any interest equity has in maximizing the value of the estate and insuring that it is properly managed."); *Williams Commc'ns Grp*, 281 B.R. at ("[T]he unsecured creditors have similar motivations . . . with the Shareholders to critically examine the Debtors' and banks' valuations. A higher valuation is in both the Creditors' Committee's and Shareholders' interest.").

60. To prevail on the Motion ML1 has the burden to provide this Court with evidence, not innuendo. But the Motion is devoid of any evidence that holders of the Debtors' Equity Interests could have received a better result had an official committee of equity security holders been involved in Plan negotiations. After all, unsecured creditors had an official committee, yet they were unable to negotiate a 100% recovery—and the only chance Equity

15

Interests had of receiving or retaining anything through the Plan was if unsecured creditors were paid in full.

61.   Here, given the existence of the Debtors' corporate management and the Creditors' Committee, as well as the ability of holders of Equity Interests to make their concerns known before the Plan was confirmed, it was never necessary to appoint an official committee of equity security holders. It would be pointless to do so now.

62.   In light of the foregoing, the Motion should be denied.

II.   **ML1 has not demonstrated the need to modify the membership of the Creditors' Committee**

63.   Under 11 U.S.C. § 1102(a)(4), "[o]n request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under [section 1102(a)], if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders."

64.   At no time prior to the Plan's confirmation was any request made for the appointment of an additional committee of creditors or modification of the Creditors' Committee's membership.

65.   In the Motion, ML1 requests "the modification of the existing committee's membership," and complains that the Creditors' Committee "inexplicably does not include any equity holders." *See* Certification.

66.   As the Creditors' Committee was dissolved on the Effective Date, there is no point in changing its membership because it no longer exists and plays no ongoing role in this case.

67.   In addition, only creditors can serve on an official committee of unsecured creditors, and ML1 has not identified any equity security holders that would so qualify.

16

68. In light of the foregoing, the Motion should be denied to the extent it seeks modification of the Creditors' Committee.

## RESERVATION OF RIGHTS

69. The U.S. Trustee reserves all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter, or modify this Objection.

## CONCLUSION

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other relief as the Court deems just and proper.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: */s/ Fran B. Steele*
    Fran B. Steele
    Trial Attorney

By: */s/ Robert J. Schneider, Jr.*
    Robert J. Schneider, Jr.
    Trial Attorney

Dated: June 24, 2024