| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| --- | --- |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| Robert J. Feinstein (admitted *pro hac vice*) Bradford J. Sandler Colin R. Robinson PACHULSKI STANG ZIEHL & JONES LLP 780 Third Avenue, 34th Floor New York, NY 10017 Telephone:  (212) 561-7700 Facsimile:  (212) 561-7777 rfeinstein@pszjlaw.com bsandler@pszjlaw.com crobinson@pszjlaw.com  *Counsel to the Plan Administrator* | |
| In re:  BED BATH & BEYOND INC., *et al.*,[1]            Debtors. | Chapter 11  Case No. 23-13359 (VFP)  (Jointly Administered)  Hearing Date: July 9, 2024                at 2:30 p.m. |

### PLAN ADMINISTRATOR'S OPPOSITION TO FORMER AND CANCELED SHAREHOLDER'S MOTION FOR REDACTION OF CERTAIN INFORMATION AND APPOINTMENT OF POST-EFFECTIVE DATE EQUITY SECURITY HOLDERS COMMITTEE

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................**2**

II.   FACTS ........................................................................................................**6**

    A.    The Bankruptcy Filings.................................................................................6

    B.    The Plan Process ........................................................................................7

    C.    The Equity Interests ....................................................................................9

    D.    The Former Shareholder Motion ................................................................12

III.  ARGUMENT ..............................................................................................**13**

    A.    Former Shareholder has not met his burden under Bankruptcy Code
section 1102(a) and the Motion to appoint an Equity Committee must be
denied. .......................................................................................................13

    B.    Laches bars Former Shareholder's request for appointment of an Equity
Committee...................................................................................................16

    C.    Former Shareholder is not a party in interest and cannot bring a motion to
appoint a committee under Bankruptcy Code section 1102(a). ...............17

    D.    If the Motion is construed as a motion for relief under Rule 9024, the
Motion should also be denied. .................................................................19

        i.    The "New Information" in the Motion is not new and Former
Shareholder cannot meet his burden under Fed. R. Civ. P. 60(b)(2)........20

        ii.   The allegations of fraud and misrepresentation are baseless and
unsupported and Former Shareholder cannot meet his burden under
Fed. R. Civ. P. 60(b)(3)............................................................................23

    E.    Former Shareholder's request to redact his personal information should be
denied.........................................................................................................24

IV.   CONCLUSION............................................................................................**25**

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bandai Am. Inc. v. Bally Midway Mfg. Co.*,
  775 F.2d 70 (3d Cir. 1985)...............................................................................23

*Bohus v. Beloff*,
  950 F.2d 919 (3d Cir. 1991)..............................................................................20

*Brown v. Pennsylvania R. Co.*,
  282 F.2d 522 (3d Cir. 1960)..............................................................................23

*Compass Tech. v. Tseng Lab.*,
  71 F.3d 1125 (3d Cir. 1995)..............................................................................20

*EEOC v. A&P*,
  735 F.2d 69 (3d Cir. 1984)................................................................................16

*Harris v. Martin*,
  834 F.2d 361 (3d Cir. 1988)..............................................................................20

*In re A C & S Inc.*,
  775 Fed. Appx. 78 (3d Cir. 2019).....................................................................24

*In re ABC Automotive Prods. Corp.*,
  210 B.R. 437 (Bankr. E.D. Pa. 1997) ...............................................................15

*In re eToys, Inc.*,
  331 B.R. 176 (Bankr. D. Del. 2005) ..................................................................14

*In re Express Car & Truck Rental, Inc.*,
  455 B.R. 434 (Bankr. E.D. Pa. 2011 ................................................................23

*In re Kalvar Microfilm*,
  195 B.R. 599 (Bankr. D. Del. 1996) ..................................................................14

*In re New Century TRS Holdings, Inc.*,
  No. 07-10416, 2013 Bankr. LEXIS 4021,
  at *12-14 (Bankr. D. Del. Sept. 26, 2013) ........................................................14

*In re Residential Capital, LLC*,
  480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012)......................................................13

*In re Spansion, Inc.*,
  421 B.R. 151 (Bankr. D. Del. 2009) .........................................................13, 15

*In re WorldCom, Inc.*,
  351 B.R. 130 (Bankr. S.D.N.Y. 2006) ..............................................................19

*InFirst Bank v. Jager*
  (*In re Jager*),
  597 B.R. 796 (Bankr. W.D. Pa. 2019) ............................................................................ 20

*Johns-Manville Sales Corp. v. Doan*
  (*In re Johns-Manville Corp.*),
  26 B.R. 919 (Bankr. S.D.N.Y. 1983) .............................................................................. 15

*Nixon v. Warner Communications Inc.*,
  435 U.S. 589 (1978) ........................................................................................................ 24

*Plisco v. Union R. Co.*,
  379 F.2d 15 (3d Cir. 1967) .............................................................................................. 20

*Truck Insurance Exchange v. Kaiser Gypsum Co.*,
  602 U.S. ___ (2024) ........................................................................................................ 17

*United States v. Koreh*,
  59 F.3d 431 (3d Cir. 1995) .............................................................................................. 16

*Video Software Dealers Ass'n v. Orion Pictures Corp.*
  (*In re Orion Pictures Corp.*),
  21 F.3d 24 (2d Cir. 1994) ................................................................................................ 24

**STATUTES**

11 U.S.C. § 107 ..................................................................................................................... 25

11 U.S.C. § 1102 .............................................................................................................. 13, 17

11 U.S.C. § 1109 ................................................................................................................... 17

**RULES**

Fed. R. Bankr. P. 9024 .......................................................................................................... 19

Fed. R. Civ. P. 60(b) ................................................................................................... 19, 20, 23

**MISCELLANEOUS**

Bed Bath & Beyond Inc., Annual Report (Form 10-K), p. 30 (June 14, 2023) ........................... 21

Michael Goldberg, in his capacity as the Plan Administrator (the "<u>Plan Administrator</u>") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[1] and affiliated debtors (the

"<u>Debtors</u>"), files this opposition (the "<u>Opposition</u>") to the *Motion for Appointment of an Official*

*Committee of Equity Security Holders* (the "<u>Motion</u>")[2] filed on behalf of an unidentified

individual purported to be a former shareholder of Bed Bath & Beyond, Inc. (the "<u>Former</u>

<u>Shareholder</u>" or "<u>Movant</u>").  In support of the Opposition, the Plan Administrator states as

follows:

# I.    <u>PRELIMINARY STATEMENT</u>

1.    It has been over nine (9) months since this Court confirmed the Debtors'

Amended Plan (which is final and not subject to appeal), pursuant to which all equity interests

("<u>Interests</u>") in Bed Bath & Beyond, Inc. ("<u>BBB</u>") were extinguished.[3]  The Debtors' Amended

Plan and Disclosure Statement fully disclosed that Interests would be extinguished and that

Holders of Interests (Class 9) would receive no distributions or any other consideration on

account of their Interests. Given that the anticipated distributions to Holders of Allowed Class 6

General Unsecured Creditors were, at the time, anticipated to be between 0 and 2.5 cents on the

dollar to repay an estimated $1.8 billion to $2.4 billion of general unsecured claims[4] (though

now, as the Plan Administrator has previously testified, the estates are administratively

---

[1]    Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[2]    As of the service of this Opposition, there is no docket number for the Motion.  The Plan Administrator is responding to the REDACTED version of the Motion that was emailed to his counsel on June 14, 2024.

[3]    Capitalized terms that are not defined herein have the meanings given to them in the Plan.

[4]    *See Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1437], at p. 8 (listing a projected amount of claims to be $1.8 billion - $2.4 billion for general unsecured creditors and a projected recovery under the plan of 0% - 2.5% for general unsecured creditors); *see also* Solicitation Procedures Order [Docket No. 1716], at ¶¶ 2-3 (conditionally approving the Disclosure Statement as providing Holders of Claims and Interest with sufficient notice).

insolvent[5]), the former shareholders in BBB, even if their shares were not canceled, which they were, could not have received any distributions or other consideration consistent with the Absolute Priority Rule of the Bankruptcy Code.

2.      Now, 265 days after all of the Interests in BBB were canceled, Former Shareholder asks this Court to do the impossible—to appoint a committee of equity security holders for a company that has no equity and to potentially unwind a Plan that has already been confirmed and substantially consummated and for which the time to object or appeal confirmation has long since passed.  Former Shareholder did not move this Court or (to the Plan Administrator's knowledge) ask the Office of the United States Trustee (the "<u>OUST</u>") to appoint an official committee of equity security holders prior to confirmation or even prior to the Effective Date of the Plan. While other now-former shareholders in BBB filed objections to the Plan, Former Shareholder did not.[6] While other now-former shareholders in BBB appealed from the Confirmation Order, Former Shareholder did not.[7] While other now-former shareholders in BBB sought an emergency stay of the Confirmation Order pending appeal, Former Shareholder did not.[8]  Former Shareholder, to the extent he is a former shareholder, sat idly by laying in wait now causing substantial harm to the actual creditors of BBB who are owed billions of dollars by

---

[5]    *See Declaration of Michael Goldberg in Support of the Motion for Entry of Order Extending Time to Object to Claims* [Docket No. 2906], p. 24 ¶ 13 ("Absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full.").

[6]    Numerous stakeholders filed objections to the Amended Plan, including two holders of common stock in BBB [Doc. No. 2192] (the "<u>Shareholder Objections</u>").

[7]    On September 29, 2023, the Objecting Shareholders appealed from the Confirmation Order [Docket No. 2305]. The appeal, which was docketed as *Neelay Das, et al v. Bed, Bath & Beyond, Inc., et al*, Civil Action No. 23-cv-20878 (D.N.J. 2023) was dismissed by the District Court by order dated May 7, 2024 [Doc. No. 3075] for failure to prosecute.

[8]    The Objecting Shareholders also subsequently filed (and the Court denied) the following: (i) *Motion for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* [Doc.No. 2450] and (ii) *Emergency Motion for Stay and Associated Relief Pending Appeal Pursuant to Fed. R. Bank. P. 8013(d) and 8007* [Doc. No. 2455].

filing a frivolous motion. To say the least, this Motion should be denied on both substantive and

procedural grounds, and the Former Shareholder should be subject to sanctions for abusing the

legal system.[9]

3.      As a preliminary matter, the Plan Administrator cannot verify that Former

Shareholder is a former shareholder of BBB, because he refuses to disclose his identity in

violation of the Court's *Order Establishing Procedures Relating to Shareholder's Motions for*

*Redaction of Certain Information and Appointment of Equity Security Holders Committee*

[Docket No. 3314]. Aside from the due process issues with not knowing "who" is bringing the

Motion, for the purposes of this Opposition, the Plan Administrator assumes Former

Shareholder's representation is true.

4.      Second, Former Shareholder's request for the appointment of a committee of

equity security holders cannot, and should not, be granted as a matter of law. Bankruptcy Code

section 1102 does not authorize the appointment of an equity committee where there are no

equity holders. Here, none exist—the Amended Plan and Confirmation Order clearly provide

that all equity interests were canceled and no new equity was issued, and in accordance with the

confirmed Amended Plan, all equity interests were actually canceled. Moreover, the Motion is

simply too late and would provide no benefit to the estates. Even assuming arguendo that

Former Shareholder had sought the appointment of an equity committee pre-confirmation and

prior to the cancellation of Interests, where, as here, equity has always been hopelessly out-of-

the-money, one would not have been appointed under Bankruptcy Code section 1102.

5.      Third, Former Shareholder no longer has standing to seek the appointment of an

equity committee (or otherwise participate in or be heard on any issue in these chapter 11 cases)

---

[9]      The Plan Administrator reserves the right to seek sanctions via a separate motion.

because, as a result of his Interests being canceled, he is no longer a party in interest under

Bankruptcy Code section 1109(b).

      6.     Finally, Former Shareholder has not made any allegation that would, or come

anywhere near his burden of proof to, challenge the validity or finality of the Confirmation Order

to the extent that the unsupported "factual" allegations in the Motion could be construed as

seeking relief under Rule 9024 of the Federal Rules of Bankruptcy Procedures (the "Rules").

      7.     The Plan Administrator understands that Former Shareholder is not represented

by counsel and is cognizant of the challenges that entails; however, that does not excuse a party

from failing to comply with an order issued by this Court and disregarding the directive to

provide his personal identifying information to the Plan Administrator. It also does not excuse

the extreme tardiness of filing a motion to appoint a committee for equity holders *9 months after*

a Plan has been confirmed that extinguished all Interests.  Former Shareholder seems to be under

the misimpression that he still holds equity; he does not.  He also seems to be under the

misimpression that 9 months post-confirmation, this Court can simply wave an imaginary magic

wand and undo the Amended Plan, reinstate the Interests, and appoint an Equity Committee to

renegotiate a new plan that provides a return to Interest Holders. He is plainly wrong.  He cites

no case law to support his theories because none exists.  Rather, in a moment of imagined clarity,

Former Shareholder is asking this Court for a "do-over" to re-investigate the Debtors' assets and

liabilities and to object to the Amended Plan because he believes he has more and better

information than the Debtors and their legal and financial advisors (Kirkland & Ellis and Alix

Partners), the Committee and its legal and financial advisors (Pachulski and A&M), the DIP

Lender and its legal and financial advisors (Proskauer and M3), the United States Trustee, the

hundreds of creditors and shareholders who participated openly in the pre-confirmation

proceedings, and the Plan Administrator and his advisors (Pachulski among many others).

8.      As was noted above, notwithstanding Former Shareholder's conjured belief that

he has better information than everyone else, the time to legitimately seek the appointment an

equity committee has long passed.  Furthermore, all of the information that would have enabled

him to conduct this "investigation" was publicly available to him (and to other then-existing

equity Interest Holders as well as the creditors who are owed billions of dollars) free of charge

pre-confirmation.  All of these national advisors have concluded, with evidence submitted to and

admitted by the Court, that the Debtors' estates were and are insolvent.  Notably, with the tens of

thousands of former shareholders of BBB, none of them (to the knowledge of the Plan

Administrator) sought the appointment of an equity committee during the pre-confirmation

stages of these cases.  They did not waste their time and energy on their unfortunate investment;

they did not waste the time and energy of the estates' numerous advisors; and they did not waste

limited judicial resources of this Court.  The substantial widely available and public information

of publicly traded BBB made clear prior to the filing of these bankruptcy cases that the Debtors

were insolvent; they are only more so today.  For all the procedural and substantive reasons

stated herein, the Plan Administrator respectfully requests the Court to deny Former

Shareholder's Motion with prejudice.

## II.      FACTS

### A.      The Bankruptcy Filings

9.      On April 23, 2023 (the "Petition Date"), each of the Debtors filed a voluntary

petition under chapter 11 (collectively the "Chapter 11 Cases") of title 11 of the United States

Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the District of

New Jersey. The Chapter 11 Cases were procedurally consolidated and jointly administered

pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"). Prior to confirmation, the Debtors continued to operate their businesses and manage

their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No party requested the appointment of a trustee or examiner.

10.     On May 5, 2023, the OUST for the District of New Jersey appointed an official

committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the

"Unsecured Creditors' Committee"). *See Notice of Appointment of Official Committee of

Unsecured Creditors* [Doc. No. 218].

**B.     The Plan Process**

11.     On July 21, 2023, the Debtors filed their motion [Docket No. 1438] for

conditional approval of the adequacy of the *Disclosure Statement Relating to the Joint Chapter*

*11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1437] (the "Disclosure

Statement"), in order to commence solicitation of votes on the *Debtors' Joint Chapter 11 Plan*

[Docket No. 1429] (as amended, the "Plan"), and to schedule a consolidated hearing to consider

both the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan.

12.     On August 2, 2023, the Court entered an order [Docket No. 1716] (the

"Solicitation Procedures Order") that conditionally approved the Disclosure Statement,

established procedures for soliciting votes for or against the Plan and deadlines for the filing of

objections to both the Plan and the Disclosure Statement, and consolidated the hearing on final

approval of the Disclosure Statement and confirmation of the Plan as permitted by section

105(d)(2)(B)(vi) of the Bankruptcy Code.

13.     As a part of the solicitation process, the Debtors served the *Notice of Non-Voting*

*Status To Holders of Impaired Claims and Interests Deemed to Reject the Plan* on Class 9

Interest Holders which provided Interest Holders with notice of the Confirmation Hearing, and

applicable objection deadlines, how to obtain free copies of the Plan and Disclosure Statement and how to opt-out of the Releases (as defined below). *See* Solicitation Procedures Order (Exhibit 4B), at 184-193.  Presumably Former Shareholder received actual notice of the Solicitation Procedures Order, though the Plan Administrator can not verify service because he will not disclose his name. In any event, the Debtors also provided notice of the Confirmation Hearing, and applicable voting and objection deadlines by publication in the New York Times. *See* Proof of Publication [Docket No. 1856].

14. As was noted above, numerous stakeholders filed objections to the Plan, including two holders of common stock in BBB [Docket No. 2192] (the "Shareholder Objections").

15. On September 11, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliat*es [Docket No. 2160] (the "Amended Plan"), and on September 12, 2023, the Court held a hearing on the final approval of the Disclosure Statement and confirmation of the Amended Plan.[10]  The Court overruled, *inter alia*, the Shareholders Objections, and on September 14, 2023, the Court entered an Order confirming the Amended Plan [Docket No. 2172] (the "Confirmation Order").

16. The Amended Plan went effective on September 29, 2023, and, as more fully described below, the then-existing equity was canceled in accordance with the Plan.[11]

17. On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving Claims, prosecuting Causes of Action, liquidating the Debtors' remaining Assets and making Distributions in accordance with

---

[10]  *See Transcript of Confirmation Hearing* [Doc. No. 2175].

[11]  *See Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates and (II) Occurrence of Effective Date* [Docket No. 2311].

the terms of the Amended Plan and the Plan Administrator Agreement. *See* Amended Plan,

art. VII. As is his mandate, the Plan Administrator and his professionals have spent the last nine

months working to collect and liquidate estate Assets, investigate and prosecute Causes of

Action, resolve and/or object to Administrative and Priority Claims and make distributions.

## C.    The Equity Interests

18.    Prior to the Petition Date, the common stock in BBB was publicly traded on the

NASDAQ. It was delisted on May 3, 2023.[12]

19.    Pursuant to the Amended Plan, however, all Interests in BBB—including any

previously owned by Former Shareholder—were classified in Class 9. *See* Amended Plan, art.

III.B.9(a) ("Class 9 consists of all Interests in BBB.").[13]  The Amended Plan further provides,

"[e]ach Allowed Interest in BBB shall be canceled, released and extinguished, and will be of no

further force and effect, and no Holder of Interests in BBB shall be entitled to any recovery or

distribution under the Plan on account of such Interests." *Id.*, art. III.B.9(b).  It also provides,

"Class 9 is impaired. Holders of Interests in BBB are deemed to have rejected the Plan pursuant

to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the

Plan." *Id.*, art. III.B.9(c); Confirmation Order, at ¶ 15 ("Holders of Interests in Class 9 and Class

10 (the 'Deemed Rejecting Classes') are Impaired under the Plan and are entitled to no recovery

under the Plan and are, therefore, deemed to have rejected the Plan.").

---

[12]    Market Watch, "Nasdaq kicks off Bed Bath & Beyond delisting process," available at
https://www.marketwatch.com/story/bed-bath-and-beyond-stock-set-for-nasdaq-delisting-at-market-open5b0e68e6.

[13]    "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code." *See* Amended Plan,
art. I.A.87.

20.     The Amended Plan was and is clearly a liquidating plan that wipes out equity and does not provide for the issuance of new equity interests. *See* Confirmation Order, at ¶ 27 ("The Plan does not provide for the issuance of new equity interests.").

21.     In sum, under Amended Plan and the Confirmation Order, as of September 29, 2023:

> (a)     All Interests in BBB—including any previously owned by Former Shareholder—were canceled without need for any further action and "the duties and obligations of the Debtors or the Wind Down Debtors, as applicable, and any non-Debtor Affiliates shall be deemed satisfied in full, canceled, released, discharged and of no force or effect. . . ." Confirmation Order, at ¶ 98.

> (b)     Broad releases by Creditors and Interest Holders who did not opt-out[14] were granted  in favor of, among others, the Debtors, the Unsecured Creditors' Committee and their Professionals (the "Releases"). *See* Confirmation Order, at ¶ 107.[15]

---

[14] There is, of course, no way to know if Former Shareholder followed the procedure to "opt-out" of the Releases because he continues to refuse to disclose his name to the Plan Administrator.  In any event, whether or not the Former Shareholder followed the procedures to "opt-out" of any third-party release is irrelevant to the merits of his request to appoint an equity committee.

[15] Paragraph 107 of the Confirmation Order provides, "As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts . . . the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement . . .the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims and Causes
(Continued…)

(c)    An injunction was issued (the "Plan Injunction") which

permanently enjoined Former Shareholder and other former Interest

Holders from, among other things, (a) "commencing or continuing in any

manner any action or other proceeding of any kind on account of or in

connection with or with respect to any such . . . Interests . . ."; (b)

"enforcing, attaching, collecting, or recovering by any manner or means

any judgment, award, decree, or order against such Entities on account of

or in connection with or with respect to any such  . . . Interests . . ." and/or

(c) "commencing or continuing in any manner any action or other

proceeding of any kind on account of or in connection with or with respect

to any such . . . Interests . . . discharged, released, exculpated, or settled

pursuant to the Plan."  Confirmation Order, at ¶ 114.

(d)    All statutory committees were dissolved. Confirmation Order, at

¶ 138.[16]

22.    Shortly after the Effective Date, on October 18, 2023, the CUSIP numbers

associated with the extinguished Interests, as well as the Debtors' other securities were

canceled.[17]

---

of Action related to any act or omission that is determined in a final order by a court of competent jurisdiction to
have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be
entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to
the Plan."

[16]  Paragraph 138 of the Confirmation Order provides: "**Dissolution of Statutory Committees**. On the Effective
Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be
released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases."

[17]  As the Plan Administrator has previously stated, "In order to effectuate the administrative cancellation of the
CUSIP numbers associated with the BBB common stock, preferred stock and warrants, on October 18, 2023,
counsel for the Debtors prepared on my behalf, Null, Void and Worthless Event Questionnaires (the 'NVWQ')
for each class of security. A true and correct copy of the NVWQ for Common Stock is attached hereto as Exhibit
(Continued…)

D.      **The Former Shareholder Motion**

23.      On or about April 23, 2024, Former Shareholder requested the appointment of an

equity committee by letter to the Court. *See Notice of Receipt of Letter Requesting Relief*

[Docket No. 2991]. On or about June 5, 2024, Former Shareholder filed a formal request for the

appointment of an equity committee by submitting a version of the Motion to the Court under

seal with a request for redaction of his personal identifying information because, he alleges, "I

believe giving Mr. Sandler this information – as the lead counsel for BOTH the Plan

Administrator, as well as the UCC – ***will be putting my family in danger.***" *See* Email from

Former Shareholder to Judge Papalia dated June 11, 2024. The Court scheduled a scheduling

hearing [Docket No. 3312], which counsel to the Plan Administrator attended on June 10, 2024.

*See Transcript Regarding Hearing Held June 10, 2024* [Docket No. 3317] (the "June 10

Transcript"). On June 12, 2024, the Court issued its *Order Establishing Procedures Relating to*

*Shareholder's Motions for Redaction of Certain Information and Appointment of Equity Security*

*Committee* [Docket No. 3314] (the "Scheduling Order"), which provides:

> The Shareholder, within two (2) business days of entry of this Order,
> shall: (i) file with this Court a copy of the Motions with his personal
> identifying information redacted and replaced with the information
> contained in paragraph two (2) of this Order and (ii) serve copies of
> the Motions (***without any redactions***) on counsel for the Plan
> Administrator (Bradford J. Sandler, Esq.), counsel for the Former
> Debtors (Emily E. Geier, Esq.) and counsel for the Office of the
> United States Trustee (Fran B. Steele, Esq.), each by electronic mail.

---

A, the NVWQ for Preferred Stock is attached hereto as Exhibit B, and the NVWQ for Warrants is attached hereto
as Exhibit C. These Exhibits are incorporated herein for all purposes. Equiniti, BBB's transfer agent, submitted
the three attached NVWQs to Depository Trust Corporation ("DTC") to complete the deletion process. I have
been informed by DTC that the process has been completed and all CUSIP numbers for BBB common stock,
preferred stock and warrants have been canceled." *See Declaration of Michael Goldberg in Support of Objections*
to (i) the *Emergency Motion of Common Stock Equity Interest Holders For Certification of Direct Appeal to the*
*United States Court of Appeals for the Third Circuit* and (ii) the *Emergency Motion of Common Stock Equity*
*Interest Holders for Stay and Associated Relief Pending Appeal Pursuant to Fed. R. Bankr. P. 8013(d) and 8007*
[Doc. No. 2631], at ¶ 7.

Scheduling Order, ¶ 1 (emphasis added).  On June 14, 2024, Former Shareholder emailed

REDACTED versions of his moving papers to counsel to the Plan Administrator in which he

still fails to disclose his name.

### III.    <u>ARGUMENT</u>

**A.    Former Shareholder has not met his burden under Bankruptcy Code section
1102(a) and the Motion to appoint an Equity Committee must be denied.**

24.    Bankruptcy Code section 1102(a) permits the appointment of an additional

committee of equity security holders only if necessary to assure the adequate representation of

equity security holders. *See* 11 U.S.C. § 1102.  "Appointment of an additional Committee is an

extraordinary remedy that courts are reluctant to grant." *In re Residential Capital, LLC*, 480 B.R.

550, 557 (Bankr. S.D.N.Y. 2012).  The movant has the burden of proving that an additional

committee is needed for adequate representation. *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr.

D. Del. 2009).  The movant must show that:

> (i) there is a substantial likelihood that they will receive a
> meaningful distribution in the case under a strict application of the
> absolute priority rule, and (ii) they are unable to represent their
> interests in the bankruptcy case without an official committee. *Exide
> Tech. v. State of Wisconsin Inv. Bd*., 2002 U.S. Dist. LEXIS 27210,
> 2002 WL 32332000, *1 (D. Del. Dec. 23, 2002) . . . . The court's
> appointment of an additional committee is considered
> "extraordinary relief" and should be "the rare exception." *Dana
> Corp*., 344 B.R. at 38, *Exide Tech*., 2002 U.S. Dist. LEXIS 27210,
> 2002 WL 32332000 at *1.

*Id*. at 156 (refusing to appoint official committee of equity holders when scheduled assets were

less than liabilities because this indicated the corporation was insolvent).  Former Shareholder

cannot meet his burden, and therefore, Former Shareholder's motion must be denied.

25.    First and foremost, the Court cannot appoint a post-confirmation equity

committee to represent equity holders because there are *no* equity holders to represent.  As the

Amended Plan and Confirmation Order make clear, all Interests (i.e., equity) were canceled

effective as of September 29, 2023.  *See* Amended Plan, art. III.B.9(a); Confirmation Order, at ¶¶

15 and 27.  There are simply *no* holders of any equity interests in the Debtors that require

representation, and thus no one to assure adequate representation of.

26.     Moreover, even if the Court were to find that the non-existent equity security

holders were not adequately represented, the Court should not exercise its discretion to appoint

an equity committee at this stage in the Chapter 11 Cases. Former Shareholder's request to

appoint an equity committee is too late.  As the court noted in *In re eToys, Inc.*, 331 B.R. 176

(Bankr. D. Del. 2005) when it denied a request to appoint a post-confirmation equity committee:

> [Former shareholder] also seeks the appointment of an equity
> committee and counsel to permit him to continue to investigate this
> case. The Court concludes that such a request is not warranted.
> Though section 1102(a)(2) authorizes the Court to order the
> appointment of additional committees of creditors or equity security
> holders, it may do so only 'if necessary to assure adequate
> representation' of those parties. ***In this case there is no necessity to
> appoint a committee for equity security holders because their
> interests have been extinguished by the Debtors' Plan and they will
> receive nothing from the estate***. (See Plan at §§ 4.10.2 & 7.1(b).)
> Therefore, the Court will deny the request for appointment of an
> equity committee and counsel because it will provide no benefit to
> the estate and is simply too late.

*Id.* at 186 (emphasis added). Several other courts have also denied motions to appoint an official

committee when they were filed too late. *See e.g.*, *In re New Century TRS Holdings, Inc.*, No.

07-10416, 2013 Bankr. LEXIS 4021, at *12-14 (Bankr. D. Del. Sept. 26, 2013) (denying a post-

confirmation motion for appointment of a borrower's committee "at this late stage in the

bankruptcy case"); *In re Kalvar Microfilm*, 195 B.R. 599, 601 (Bankr. D. Del. 1996) (denying a

motion to appoint an equity committee after the plan had been negotiated and filed, deciding

that the only remaining purpose of an equity committee would be to objection to confirmation

and litigate valuation issues).  Here, this Motion comes nine (9) months after the Court has

confirmed the Debtors' Amended Plan, which has been substantially consummated and which

canceled all Interests—a bell that cannot be un-rung. The Motion is too late and should be

denied.

27. Additionally, the estates are administratively insolvent and do not have the

capacity for additional costs associated with the appointment of an equity committee—a

committee that will provide no benefit to the estates. Equity holders, such as Former

Shareholder, had the opportunity to participate in the chapter 11 proceedings (*see e.g.*, the

Shareholder Objections) but instead chose not to (most likely because they reviewed the publicly

available information and rationale concluded that equity was completely out of the money). It

is simply too late and unbeneficial to appoint an equity committee at this point, and Former

Shareholder's Motion should be denied.[18]

28. Even prior to confirmation, the appointment of an equity committee would have

been unwarranted because equity was out of the money. *See In re Spansion, Inc*., 421 B.R. at

156-57 ("[I]f equity holders have no reasonable prospect of receiving a meaningful distribution,

an equity committee could serve no legitimate role in negotiating a plan. *See Williams*, 281 B.R.

at 220 (If equity holders have no economic interest left to protect, neither the debtors nor the

creditors should have to bear the expense of negotiating what would be, in essence, a 'gift' for

the equity holders.) Therefore, in weighing the cost of appointing an official committee of equity

security holders against the potential benefit of such a committee, a court should consider

---

[18] Former Shareholder argues that the Unsecured Creditors Committee did not adequately represent his interest as an equity holder. As the Court noted in the Confirmation Order, "the U.S. Trustee appointed the Official Committee of Unsecured Creditors to represent the *interests of the unsecured creditors of the Debtors* in the Chapter 11 Cases." *Confirmation Order*, ¶ 5. Members of a creditors' committee have a fiduciary duty to the holders of the class of claims they represent. *In re ABC Automotive Prods. Corp.,* 210 B.R. 437 (Bankr. E.D. Pa. 1997). They must pursue their statutory function for the benefit of their constituency with an undivided loyalty. *Johns-Manville Sales Corp. v. Doan* (*In re Johns-Manville Corp*.), 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983).

whether there is a substantial likelihood that the equity security holders will receive a

distribution.").

**B.   Laches bars Former Shareholder's request for appointment of an Equity
Committee**

29.     The Court should also deny the Motion on the grounds of laches because Former

Shareholder has waived his right to seek appointment of an equity committee.  To raise a defense

of laches, one must show "(1) lack of diligence by [the] party against whom the defense is

asserted and (2) prejudice to the party asserting the defense." *United States v. Koreh*, 59 F.3d

431, 445 (3d Cir. 1995); *see also EEOC v. A&P*, 735 F.2d 69, 80 (3d Cir. 1984) ("The elements

of the equitable defense of laches are (1) lack of diligence by the party against whom the defense

is asserted, and (2) prejudice to the party asserting the defense.").  Both elements are met here.

30.     This case commenced fourteen (14) months ago.  Former Shareholder did not

move this Court or (to the Plan Administrator's knowledge) ask the OUST to appoint an official

committee of equity security holders prior to confirmation or even prior to the Effective Date of

the Plan.  He also did not file an objection (as other now-former shareholders did), did not file an

appeal of the Confirmation Order (as other now-former shareholders did), and did not seek an

emergency stay of the Confirmation Order pending appeal (as other now-former shareholders

did). Instead, he sat idly by despite *all* of the information that would have enabled him to

conduct this "investigation" was publicly available to him (and to other then-existing equity

Interest Holders) free of charge pre-confirmation.

31.     It is also prejudicial to the estates to have to respond to a frivolous motion that

should have been brought months ago (although as noted above would not be successful) and for

which the crux of the relief requested is untenable. As the Plan Administrator has previously

testified, the estates are administratively insolvent. *See Declaration of Michael Goldberg in*

*Support of the Motion for Entry of Order Extending Time to Object to Claims* [Docket No. 2906], p. 24 ¶ 13 ("Absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full.").  It is detrimental to the estates to have to waste limited resources on responding to a meritless, late Motion.  Therefore, Former Shareholder's Motion should be barred under the doctrine of laches. He has not acted diligently in bringing the Motion, and bringing it now is prejudicial to the estates.

**C.**    **Former Shareholder is not a party in interest and cannot bring a motion to appoint a committee under Bankruptcy Code section 1102(a).**

32.    Furthermore, Former Shareholder has no standing as  a party in interest to even request the court to order the appointment of a committee of equity security holders pursuant to Bankruptcy Code section 1102(a).  Section 1102(a) of the Bankruptcy Code provides, "[o]n request of a *party in interest* the court may order the appointment of additional committees . . . ." (emphasis added).  Section 1109 of the Bankruptcy Code provides, "(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109.  Former Shareholder does not qualify under any of these specific categories. While the definition of "party in interest" is broad, this term is limited to parties that have a financial interest in the estate's assets or represent parties that do. *See Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. ___ (2024) (analyzing section 1109 and noting that "[a] common thread uniting the seven listed parties is that each may be directly affected by a reorganization plan either because they have a financial interest in the estate's assets . . . or because they represent parties that do . . . .").

Because Former Shareholder's Interests have been canceled and extinguished, he no longer has a financial interest in these Chapter 11 Cases.

33.  Such a finding would be consistent with the U.S. District Court for the Southern District of New York's decision issued earlier this month in *In re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No. 22 Civ. 9327 (the "District Court Action").  In the District Court Action, the court addressed whether two former shareholders of BBB retained a financial interest and standing in their securities litigation.  Dismissing their claims because the Amended Plan extinguished their equity, the court explained:

> [C]onfirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan." 11 U.S.C. § 1141(a) . . . . Here, the plain language of the Bankruptcy Plan states that all shares in BBBY were "canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the Plan on Account of such Interests" as of the effective date, September 29, 2023. Slocum Decl. Ex. 8 at 102-03. The Plan effected a "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against the debtors or their property. Hunter Decl. Ex. A at 127. And it decrees that the holders of claims, interests, and causes of action against BBBY are "permanently enjoined and precluded" from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan." *Id.* at 131. **In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy Plan, Plaintiffs fail to establish "some continuing financial interest in the outcome of this litigation."** *Gollust*, 501 U.S. at 126.

*Order and Opinion*, *In Re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No. 22 Civ. 9327

(DEH), at 7-8 (S.D.N.Y. June 11, 2024) (emphasis added);[19] *see also In re WorldCom, Inc.*, 351

B.R. 130, 134-35 (Bankr. S.D.N.Y. 2006) (holding that plaintiff lost standing to bring a derivative

claim where his shares in a company were "canceled" and he would "receive no distributions" under

the company's reorganization plan).  Just as the litigants before the U.S. District Court for the

Southern District of New York, the confirmed Amended Plan binds Former Shareholder; the

Amended Plan canceled, released, and extinguished Former Shareholder's Interest; and the

Amended Plan effected a complete settlement, compromise, and release of any Claims, Interests,

and Causes of Action Former Shareholder may have had against the Debtors or their property.[20]

In other words, Former Shareholder no longer has any financial interest in the chapter 11

proceedings, is not a "party in interest," and cannot bring a motion to appoint a committee under

section 1102(a) (or be heard on any other matter in these cases).

**D.     If the Motion is construed as a motion for relief under Rule 9024, the Motion should
also be denied.**

34.     To the extent that Former Shareholder's Motion could conceivably be construed

as a motion pursuant to Rule 9024 to grant relief from the Confirmation Order, that Motion must

also be denied because the allegations within the Motion lack merit and do not come anywhere

near the heavy burden imposed under Rule 9024. Bankruptcy Rule 9024 incorporates Rule 60 of

the Federal Rules of Civil Procedure.  Under Fed. R. Civ. P. 60(b), a court may grant relief from

a final judgment, order, or proceeding "on motion and just terms" in narrow circumstances.

---

[19]   A true and correct copy of the Order and Opinion is attached as Exhibit A.

[20]   This conclusion would not change even if Former Shareholder "opted-out" of the releases under the Amended
Plan, because that provision only pertained to the Holders of Interest's release of non-debtor third parties, such
as the Unsecured Creditors' Committee and the ABL Lenders—not the release of the Debtors or their property.
Therefore, the Amended Plan effected a release of Former Shareholder's claims against the Debtors and their
property. *See* Amended Plan, art. X.A.–X.D.; *see also* Confirmation Order, at ¶¶ 106–08.

Relief under Rule 60(b) is appropriate only when "the overriding interest in the finality and repose of judgments may properly be overcome." *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1988). Here, Former Shareholder's Motion makes no mention of Bankruptcy Rule 9024 or Fed. R. Civ. P. 60, but the Motion makes allegations of newly discovered evidence and fraud, misrepresentation, and misconduct, which, in an abundance of caution, the Plan Administrator will address in turn.

> i.  **The "New Information" in the Motion is not new and Former Shareholder cannot meet his burden under Fed. R. Civ. P. 60(b)(2).**

35.     Former Shareholder cannot demonstrate that the "new information" in his Motion is new or could not have been discovered through reasonable diligence, and should his Motion be construed as a motion under Fed. R. Civ. P. 60(b)(2), it must be denied. Federal Rule of Civil Procedure 60(b)(2) provides that a court may relieve a party from an order for newly discovery evidence that, with reasonable diligence, could not have discovered in time. However, a party raising Rule 60(b)(2) "bears a heavy burden." *Compass Tech. v. Tseng Lab.*, 71 F.3d 1125, 1130 (3d Cir. 1995); *see also Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967). The party must show that newly discovered evidence is "(1) material and not merely cumulative (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991); *see also InFirst Bank v. Jager (In re Jager)*, 597 B.R. 796 (Bankr. W.D. Pa. 2019) (concluding that debtors were not entitled to relief under Rule 60(b)(2) because the debtors had knowledge of the evidence and thus it was "not new evidence").

36.     Here, Former Shareholder alleges that there  is "new information . . . not available during the plan confirmation process [that] suggests that shareholders' interests and financial standing of the company were not appropriately valued." The new information Former

Shareholder points to is the Debtors' net operating losses as disclosed in BBB's Annual Report

(Form 10-K) for the fiscal year ending February 25, 2023; the "undetermined" value of insurance

policies and annuities and causes of action listed in the Debtors' Schedules of Assets and

Liabilities; the lawsuit against Hudson Bay Capital; and the causes of action brought against

former board members of the Debtors.  None of these claims are new to anyone who has been

following these cases.

37.     Neither the net operating losses nor the fact that the Debtors valued certain assets

as "undetermined" are newly discovered information.  The net operating losses were reported on

BBB's Annual Report (Form 10-K) for the fiscal year ending February 25, 2023, which was filed

with the U.S. Securities and Exchange Commission on June 14, 2023—three months before

confirmation. *See* Bed Bath & Beyond Inc., Annual Report (Form 10-K), p. 30 (June 14, 2023).[21]

The Debtors filed their *Schedules of Assets and Liabilities* [Docket Nos. 519-573] on May 30,

2023—nearly four months before confirmation—identifying the Debtors' interests in its

insurance policies or annuities as having an "undetermined" value.  *See e.g.*, *Schedules of Assets*

*and Liabilities for Bed Bath & Beyond Inc.* [Docket No. 568], p. 34 (listing Bed Bath & Beyond

Inc.'s interest in several insurance policies and annuities as having an undetermined value).

38.     The Hudson Bay Capital litigation and litigation against former directors of BBB

(collectively the "Litigation") are also not "newly discovered evidence."[22] The Confirmation

---

[21]   Notably, the Introductory Note of this filing states: "Holders of the Company's equity securities will likely be
entitled to no recovery on their investment following the Chapter 11 Cases, and recoveries to other stakeholders
cannot be determined at this time. The Company cautions that trading in the Company's securities given the
pendency of the Chapter 11 Cases is highly speculative and poses substantial risk. Trading prices for the
Company's securities bear little or no relationship to the actual value realized, if any, by holders of the Company's
securities in the Chapter 11 Cases. Accordingly, the Company urges extreme caution with respect to existing and
future investment in its securities." *Id.*)

[22]   On May 2, 2024, the Plan Administrator filed a complaint, initiating *20230930-DK-BUTTERFLY-1, INC., f/k/a
BED BATH & BEYOND INC., v. HBC INVESTMENTS LLC and HUDSON BAY CAPITAL MANAGEMENT LP*,
(Continued…)

Order and Amended Plan expressly provides that the Plan Administrator will have the right and

authority to prosecute the Litigation and that the Disclosure Statement and Amended Plan

provided adequate notice with respect to such Causes of Action. The Confirmation Order states:

> [A]ll Causes of Action shall automatically vest in the Wind-Down
> Debtors, and the Plan Administrator, subject to the oversight of the
> Oversight Committee, shall have the right and authority to
> investigate, commence, prosecute, or settle, as appropriate, any and
> all of the Non-Released Claims, whether arising before or after the
> Petition Date. Additionally, the Plan and Plan Supplement provide
> meaningful disclosure with respect to the potential Causes of Action
> that the Plan Administrator may retain, and all parties in interest
> received adequate notice with respect to such Causes of Action. The
> provisions regarding Causes of Action in the Plan are appropriate
> and in the best interests of the Debtors, their respective Estates, and
> Holders of Claims and Interests.

Confirmation Order, at ¶ 47; *see also* Confirmation Order, at ¶ 94 ("the Plan Administrator shall

have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and

Wind Down Debtors' Claims and Causes of Action"). The Amended Plan's definition of "Non-

Released Claims" makes clear that it includes claims against the Debtors' current and former

directors, officers, and managers, and claims arising under the Securities Act and the Securities

Exchange Act of 1934. *See* Amended Plan, art. I.A.99. Therefore, Former Shareholder, as a

purported former shareholder, had adequate notice that the Plan Administrator had the right and

authority to prosecute the claims and causes of action that the Plan Administrator is now

prosecuting. As such, Former Shareholder cannot meet his burden under Rule 60(b)(2).

---

which is pending as Case No. 24-cv-3370 in the United States District Court for the Southern District of New York.  On April 26,2024, the Plan Administrator filed a complaint, initiating *20230930-DK-BUTTERFLY-1, INC. F/K/A BED BATH & BEYOND INC., et al v. HARRIET EDELMAN, et al*, which is pending as Case No. 652164/2024 in the Supreme Court of  New York (County of New York).

**ii.   The allegations of fraud and misrepresentation are baseless and unsupported and Former Shareholder cannot meet his burden under Fed. R. Civ. P. 60(b)(3).**

39.     The Motion also accuses the Debtors, the Unsecured Creditors' Committee, and their respective professionals of fraud and misrepresentations, but again, these bald and unfounded allegations do not come anywhere near the burden under Fed. R. Civ. P. 60(b) to challenge the validity or finality of the Confirmation Order.  Under Civil Rule 60(b)(3), alleged fraud, misrepresentation, or misconduct "must be proven by clear and convincing evidence." *In re Express Car & Truck Rental, Inc.*, 455 B.R. 434, 441 n. 9 (Bankr. E.D. Pa. 2011) (citing *Brown v. Pennsylvania R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)). The party seeking relief under Rule 60(b)(3) must show that the alleged fraud, misrepresentation, or misconduct barred it from "fully and fairly presenting its defense," and had a material effect on the outcome of the lawsuit. *Id.* (citing *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985)).

40.     Former Shareholder has made several baseless allegations of fraud and misrepresentation in the Motion.  The Motion asserts: (i) the Debtors were "deliberately driven into bankruptcy to conceal and capitalize on numerous instances of fraud within the company;" (ii) there are conflicts of interest involving numerous professional service firms; and (iii) "gross negligence and potential securities fraud by numerous parties."  Each of these is a baseless assertion—*no* evidence has been provided.  On this ground alone, the Motion fails under Rule 60(b)(3).

41.     Further, the fraud and misrepresentation allegations are so vague and lacking of detail that it is impossible to respond or address them.[23]  Additionally, the one semi-specific inflammatory allegation regarding Pachulski Stang Ziehl & Jones LLP ("PSZJ") that can be

---

[23]   The Motion also states that "if this motion is rejected, in the coming weeks [ML1] will be filing complaints . . . ."  Under Fed. R. Bankr. P. 9024 and Bankruptcy Code section 1144, the deadline to file such a complaint seeking to revoke the Confirmation Order has passed.

addressed is simply false and shows Former Shareholder's lack of understanding of basic facts.

PSZJ does not simultaneously represent the Plan Administrator and the Unsecured Creditors'

Committee because on the Effective Date, the Unsecured Creditors' Committee dissolved. *See*

Amended Plan, art. XIV.C.  It is clear that Former Shareholder has not met his burden under Fed.

R. Civ. P. 60(b)(3), and should the Motion be construed as a motion pursuant to Fed. R. Civ. P.

60(b)(3), it must be denied.

**E.**    **Former Shareholder's request to redact his personal information should be denied.**

42.    Former Shareholder's request to redact his personal information should be denied,

because he has not demonstrated "cause" under Bankruptcy Code section 107.  Courts have

recognized a strong presumption of public access to court records. *See e.g.*, *Nixon v. Warner*

*Communications Inc.*, 435 U.S. 589, 597–98 (1978).  The preference for public access is "rooted

in the public's first amendment right to know about the administration of justice." *Video*

*Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 25 (2d

Cir. 1994). "This policy of open inspection, codified generally in § 107(a) of the Bankruptcy

Code, evidences congress's strong desire to preserve the public's right of access to judicial

records in bankruptcy proceedings." *Id.*; *see also In re A C & S Inc.*, 775 Fed. Appx. 78, 79 (3d

Cir. 2019) ("In *In re Orion Pictures Corp.*, the Second Circuit Court of Appeals stated that § 107

codified the common law, and evidenced Congress' strong desire to preserve the public's right of

access to judicial records in bankruptcy proceedings. We agree.").  Section 107(c) of the

Bankruptcy Code provides:

> (c)(1) The bankruptcy court, ***for cause***, may protect an individual,
> with respect to the following types of information to the extent the
> court finds that disclosure of such information would create undue
> risk of identity theft or other unlawful injury to the individual or the
> individual's property:

(A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

(B) Other information contained in a paper described in subparagraph (A). . . .

(3) The United States trustee, bankruptcy administrator, trustee, and any auditor serving under section 586(f) of title 28—

(A) **shall have full access to all information contained in any paper filed or submitted in a case under this title**; and

(B) shall not disclose information specifically protected by the court under this title.

11 U.S.C. § 107 (emphasis added).

43.     Former Shareholder has not articulated a sufficient cause—or, in fact, any cause—to overcome the strong presumption of public access to court records.  More problematic, Former Shareholder has not provided the Plan Administrator—in violation of the Scheduling Order—with his name.

## IV.     <u>CONCLUSION</u>

44.     For the reasons stated above, the Plan Administrator respectfully requests that the Court deny the Motion and respectfully requests that the Court grant any additional relief the Court deems just and proper under the circumstances.

*[Remainder of page left intentionally blank]*

Dated:  June 24, 2024                    **PACHULSKI STANG ZIEHL & JONES LLP**

                                         */s/ Bradford J. Sandler*
                                         Robert J. Feinstein (admitted *pro hac vice*)
                                         Bradford J. Sandler
                                         Colin R. Robinson
                                         PACHULSKI STANG ZIEHL & JONES LLP
                                         780 Third Avenue, 34th Floor
                                         New York, NY 10017
                                         Telephone:  (212) 561-7700
                                         Facsimile:  (212) 561-7777
                                         Email: rfeinstein@pszjlaw.com
                                                bsandler@pszjlaw.com
                                                crobinson@pszjlaw.com


                                         *Counsel to the Plan Administrator*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BED BATH & BEYOND INC.
SECTION 16(b) LITIGATION

22 Civ. 9327 (DEH)

**OPINION**
**AND ORDER**

DALE E. HO, United States District Judge:

Before the Court are Defendants RC Ventures LLC and Ryan Cohen's (collectively,

"Defendants'") amended omnibus motion to dismiss ("Defs.' Mot."), ECF No. 64, as well as

Nominal Defendant Bed Bath and Beyond's ("BBBY's") motion for substitution as plaintiff and

to stay consideration of the amended omnibus motion to dismiss ("BBBY's Mot."), ECF No. 82.

For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss and

**DENIES** BBBY's motion for substitution as the real party in interest and to stay consideration of

the motion to dismiss.

## BACKGROUND

Plaintiffs Todd Augenbaum and Judith Cohen bring suit under Section 16(b) of the

Securities Exchange Act, which "requires corporate insiders, including owners of more than ten

percent of a company's stock [and directors], to disgorge what are colloquially known as short-

swing profits, i.e., any profits made from buying and selling or selling and buying within a six-

month period a security based on that company's stock." *Klein on behalf of Qlik Techs., Inc. v.

Qlik Techs., Inc.*, 906 F.3d 215, 219 (2d Cir. 2018).[1] "Suits under 16(b) can be brought by the

company that issues the relevant stock or, if the issuer shall fail or refuse to bring such suit

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation
marks, brackets, and ellipses unless otherwise indicated.  Any references to Rules are to the
Federal Rules of Civil Procedure.

within sixty days after request or shall fail diligently to prosecute the same thereafter, by any

owner of any security of the issuer." *Id*.

Plaintiffs were shareholders of BBBY, a publicly traded company on the Nasdaq.

Augenbaum Compl. ¶¶ 2, 4, ECF No. 1; Cohen Am. Compl, ECF No. 28. ¶ 7.  Defendant Ryan

Cohen is the manager of Defendant RC Ventures ("RCV"), an investment company.

Augenbaum Compl. ¶ 3; Cohen Am. Compl. ¶ 9.  Plaintiffs allege that during a six-month

period, while Defendants beneficially owned 10% or more of BBBY's common stock and/or

were directors of BBBY, Defendants earned windfall short-swing profits "while other investors

in the Company's common stock . . . suffered a dramatic loss."  *See* Augenbaum Compl. ¶ 1;

Cohen Am. Compl. ¶ 1.

### A.  Cooperation Agreement

On or around March 24, 2022, BBBY and Defendant Cohen entered into a Cooperation

Agreement, pursuant to which Defendant Cohen would appoint three new members to BBBY's

board of directors ("the Board") while Defendants maintained ownership of at least 4.04% of

BBBY's then outstanding common stock.  Cohen Am. Compl. ¶¶ 30, 32; *see also* Hunter Decl.

Ex. B, ECF No. 85-2.  The Cooperation Agreement, which terminated according to its terms in

2023, forbade BBBY from "assist[ing] in any lawsuit, claim or proceeding" against Defendants.

*See* Hunter Decl. Ex. B §§ 2(a), 13, 14.

### B.  District and Bankruptcy Court Proceedings

On August 2 and September 9, 2022, Plaintiffs made separate litigation demands on the

Board.  Augenbaum Compl. ¶ 32; Cohen Am. Compl. Ex. A, ECF No. 28-1.  On October 21,

2022, BBBY declined Plaintiffs' request to file suit.  Augenbaum Compl. ¶ 33; Cohen Am.

Compl. Ex. B, ECF No. 28-2; Slocum Decl. Ex. 7, ECF No. 66-8.  On October 31, 2022, and

November 15, 2022, Plaintiffs filed separate suits as owners of BBBY securities against

Defendants.  *See* Augenbaum Compl.; Cohen Compl., ECF No. 1, *Cohen v. Cohen*, 22 Civ.

9733.  On December 12, 2022, the Court ordered the consolidation of Plaintiffs' suits against

BBBY.  *See* Order, ECF No. 20.

On April 25, 2023, while the District Court proceedings were ongoing, BBBY and its

affiliates filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of New Jersey

and subsequently filed a Suggestion of Bankruptcy on this docket.  *See generally* Bankr. Notice,

ECF No. 50.  The filing notified the parties that Section 362(a) of the Bankruptcy Code operates

as an automatic stay of, *inter alia*, judicial proceedings against the debtor—including those

commenced before the Bankruptcy Court case was filed, *see id.* at 2—and that "any action taken

against [BBBY and certain of its affiliates ("the Debtors," or "Wind-Down Debtors")] without

obtaining from the Bankruptcy Court relief from the automatic stay may be void *ab initio*."  *Id.*

On April 27, 2023, Plaintiff Augenbaum filed a response in this Court to the suggestion

of bankruptcy, arguing that "the Bankruptcy Code's automatic stay provision is not applicable"

in this case.  ECF No. 51 at 1.[2]  Plaintiff Cohen joined that response one week later.  ECF No. 53

at 1.  Plaintiffs never filed a formal motion seeking relief from the Plan's automatic stay nor took

any other substantial action to protect their Section 16(b) rights in the Bankruptcy Court.

On September 14, 2023, BBBY's Chapter 11 Plan ("the Plan" or "Bankruptcy Plan") was

confirmed, with an effective date of September 29, 2023.  Hunter Decl. Ex. A at 1-3, ECF No.

85-1; *id*. at Ex. F at 2, ECF No. 85-2.  The Bankruptcy Plan held that each share of stock in

BBBY was "canceled, released, and extinguished, and w[ould] be of no further force or effect

and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the

Plan on account of such Interests."  *Id.* at 102-03.  It provided that "all property of the Estates

---

[2] This number reflects the ECF page number.

shall vest in the Wind-Down Debtors, free and clear of all Liens, Claims, charges, or other

encumbrances." Hunter Decl. Ex. A at ¶ 74.  It further provided that "all Causes of Action shall

automatically vest in the Wind-Down Debtors," and appointed the Plan Administrator to be "the

sole representative of, and [to] act for, the Wind-Down Debtors." *Id.* ¶¶ 95, 126.

      Under the Plan, BBBY and the Plan Administrator were granted the right to "*exclusively*

enforce any and all Causes of Action" and were deemed to have "the *exclusive* right, authority,

and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise,

release, withdraw, or litigate to judgment" the same. *Id.* at 111 (emphases added).  The Plan

effected the "complete settlement, compromise, and release, effective as of the Effective Date, of

Claims, Interests, and Causes of Action of any nature whatsoever" against "the Debtors or any of

their assets or properties." *Id.* at 127.  The Plan defined a "Claim" as a claim under Section

101(5) of the Bankruptcy Code, as well as "any Cause of Action or liability asserted against a

Debtor." *Id.* at 84.  It defined "Causes of Action" to include any "controversy, demand, right,"

or "suit," whether "assertable directly or derivatively." *Id.* at 83.  In bold letters, the Plan

decreed that holders of these Claims and Causes of Action were "**permanently enjoined and**

**precluded**" from "**commencing or continuing in any manner any action or other proceeding**

**of any kind on account of or in connection with or with respect to any such Claims,**

**Interests, Causes of Action or liabilities discharged, released, exculpated, or settled**

**pursuant to the Plan.**" *Id.* at 57, 132.

      On October 10, 2023, Defendants sought leave to file a Rule 12(b)(1) motion to dismiss,

citing the cancellation of Plaintiffs' stock pursuant to the Bankruptcy Plan.  Oct. 6, 2023 Letter 1,

ECF No. 58.  The Court granted Defendants leave to file an amended omnibus motion to dismiss

under Rules 12(b)(1) and 12(b)(6) and stayed discovery pending resolution of the motion.  Oct.

25, 2023 Order, ECF No. 61.

On November 6, 2023, this case was reassigned to the undersigned.  *See* Notice of
Reassignment, ECF No. 62.  On November 8, 2023, Defendants filed an amended omnibus
motion to dismiss.  ECF No. 64.  On November 22, 2023, counsel for BBBY, which Plaintiffs
had named as a nominal defendant, appeared.  *See* ECF No. 70.  On December 6, 2023, BBBY
filed a Rule 17(a)(3) Motion, seeking to substitute itself as the plaintiff in place of the existing
Plaintiffs.  ECF No. 82.  Both motions are fully briefed before the Court.

### C.  Plaintiffs' Post-Bankruptcy Plan Purchases

Sixth Street Specialty Lending, Inc. ("Sixth Street"), a publicly traded company,
acquired BBBY's debt as a creditor.  *See* Oct. 6, 2023 Pre-Motion Letter Ex. 1, ECF No. 58-1.
At some point thereafter, in or around October 2023, Plaintiffs acquired equity in Sixth Street.
*See* Oct. 12, 2023 Letters, ECF Nos. 59, 60; *see also* Abraham Decl., Ex. J, ECF No. 74-3
(providing proof of Plaintiff Augenbaum's purchase of Sixth Street equity); Squitieri Decl. Ex.
A, ECF No. 76-1 (providing proof of Plaintiff Cohen's purchase of same).

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)
when the court lacks the statutory or constitutional power to adjudicate the case."  *Nowak v.
Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).  "A case is moot, and
accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a
legally cognizable interest in the outcome" because they no longer "have a personal stake in the
litigation."  *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994).  In
other words, Courts may "only entertain complaints from a complainant with a concrete stake—
and not just a 'keen interest'—in the outcome of the litigation."  *Klein*, 906 F.3d at 220 (citing
*Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013)).

Rule 17 provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "[T]here plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (citing Fed. R. Civ. P. 15 Advisory Committee Notes (1966)). By its terms, the rule allows a motion to be denied as untimely if the movant fails to file within "a reasonable time" after a standing objection is raised. *NCUA Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 256 (2d Cir. 2018). Otherwise, Rule 17(a) motions "should be liberally allowed when the change is *merely formal* and in *no way alters* the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics*, 106 F.3d at 20 (emphases added); *see also Klein*, 906 F.3d at 218 ("Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants.").

## DISCUSSION

The Court determines that Plaintiffs' claims have become moot. Pursuant to its "constitutional power to substitute a real party in interest to avoid mooting [the] case," the Court then considers BBBY's motion for substitution. *See Klein*, 906 F.3d at 219, 226. For the reasons discussed herein, that motion is denied. Accordingly, this case is dismissed.

### A. Plaintiffs' Claims are Moot

"Federal courts have no constitutional power to consider a moot case, which does not present a live controversy . . . . We thus have a duty to consider mootness *nostra sponte*." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013). There is no longer a case or controversy in a Section 16(b) case where the party bringing suit fails to maintain "some

6

*continuing* financial interest in the outcome of the litigation."  *See Gollust v. Mendell*, 501 U.S.

115, 123, 126 (1991) (emphasis added); *see also Klein*, 906 F.3d at 218 (holding that a plaintiff's

claim was moot where it lost "any financial interest in the litigation.").  Plaintiffs had standing as

BBBY shareholders at this suit's commencement.  But as explained below, their Section 16(b)

action became moot following confirmation of BBBY's Bankruptcy Plan.

The confirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor . . . and any

creditor, equity security holder, or general partner in the debtor, whether or not the claim or

interest of such creditor, equity security holder, or general partner is impaired under the plan."

11 U.S.C. § 1141(a); *see also Celli v. First Nat'l Bank (In re Layo)*, 460 F.3d 289, 293 (2d Cir.

2006).  "[A] confirmed plan holds the status of a binding contract between the debtor and its

creditors," or investors, which courts outside bankruptcy are not at liberty to alter.  *See In re

Victory Mkts.*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998).  As with any contract, a bankruptcy plan

must be interpreted according to its plain terms, which control if unambiguous.  *See id.*  ("Where

the language of the plan is unequivocal, therefore, a Court must adopt the plain and natural

meaning only of the words contained within the text of the instrument itself.").

Here, the plain language of the Bankruptcy Plan states that all shares in BBBY were

"canceled, released, and extinguished, and will be of no further force or effect and no Holder of

Interests in BBBY shall be entitled to any recovery or distribution under the Plan on Account of

such Interests" as of the effective date, September 29, 2023.  Slocum Decl. Ex. 8 at 102-03.  The

Plan effected a "complete settlement, compromise, and release, effective as of the Effective

Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against the debtors or

their property.  Hunter Decl. Ex. A at 127.  And it decrees that the holders of claims, interests,

and causes of action against BBBY are "permanently enjoined and precluded" from

"commencing or continuing in any manner any action or other proceeding of any kind on

account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan." *Id.* at 131.

In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy Plan, Plaintiffs fail to establish "some continuing financial interest in the outcome of this litigation." *Gollust*, 501 U.S. at 126. *See also Klein*, 906 F.3d at 218 (after the accused company "was bought out in an all-cash merger," the shareholder—who did not receive any stock in the surviving corporation—"los[t] any financial interest in the litigation."). Accordingly, the Court concludes that intervening circumstances—BBBY's bankruptcy and the effectuation of the Plan—have rendered Plaintiffs' claims moot. *See id.* at 221 (holding that cases become moot "if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, *at any point* during litigation after its initiation.") (emphasis added).

Plaintiffs do not dispute that their BBBY common stock has been canceled and is of no further force and effect. *See generally* Augenbaum's Mem. in Opp'n of Mot. to Dismiss ("Augenbaum Opp'n"), ECF No. 73; Cohen's Mem. in Opp'n of Mot. to Dismiss ("Cohen Opp'n"), ECF No. 75. Instead, Plaintiffs offer four theories to attempt to establish their "continuing financial interest" in this suit. As discussed below, each fails.

First, Plaintiffs argue that a purchase of stock in Sixth Street, a BBBY creditor, constitutes a continuing financial interest in this suit's outcome sufficient to overcome mootness. *See* Cohen Opp'n 16; Augenbaum Opp'n 22-23. The Court adopts the reasoning in *In re WorldCom, Inc.*, 351 B.R. 130 (Bankr. S.D.N.Y. 2006), which considered and rejected the same argument. There, the court held that the plaintiff lost standing to bring a derivative claim where, as here, his shares in a company were "canceled" and he would "receive no distributions" under the company's reorganization plan. *Id*. at 134-35. The plaintiff could not thereafter revive his standing by independently acquiring an interest in a surviving company that merged with the

8

reorganized debtor, because that interest did not "flow from [his] former interest as a

shareholder" of the debtor. *Id.* at 135. Here, Plaintiffs have similarly failed to establish that their

purchase of stock in BBBY's creditor, Sixth Street, "flow[ed] from [Plaintiffs'] former interest

as [] shareholder[s]" of BBBY, and the Court therefore concludes that Plaintiffs' equity in Sixth

Street is not a continuing financial interest under Section 16(b) sufficient to overcome mootness.

*Id*.

Plaintiffs' reliance on *Gollust* is unavailing. As Plaintiff Augenbaum concedes, "the

Supreme Court [in *Gollust*] was not called upon to address" whether a plaintiff could maintain a

financial interest in a suit by buying the stock of a creditor. *See* Augenbaum Opp'n at 22-23. In

*Gollust*, the Supreme Court held only that "a plaintiff, who properly instituted a § 16(b) action as

the owner of a security of the issuer, may continue to prosecute the action after his interest in the

issuer is *exchanged* in a merger for stock in the issuer's new *corporate parent*." 501 U.S. at 118

(emphasis added); *see also id.* at 127-28. Here, by contrast, Plaintiffs have an interest in

BBBY's creditor (rather than in its acquirer), which they obtained via an unrelated transaction

(rather than through an exchange of stock). The Court is aware of no case that stands for the

proposition that a plaintiff may overcome mootness by independently buying stock in a creditor

of an entity after the plaintiff's equity in the entity was extinguished.

Second, Plaintiffs argue that their statutory interest under 15 U.S.C. § 78u-4(a)(4) in a

potential incentive reward for service as a class representative constitutes a continuing financial

interest in this case. Neither of the two class action suits on which they rely—*Jin v. Shanghai*

*Original, Inc.*, 990 F.3d 251 (2d Cir. 2021), and *Espenscheid v. DirectSat USA, LLC*, 688 F.3d

872 (7th Cir. 2012), s*ee* Augenbaum Opp'n 23-24; Cohen Opp'n 18—supports their position.

*Jin* was a putative class action under the New York Labor Law concerning whether a plaintiff

who prevails on his individual claims retained a continuing interest in the litigation sufficient to

9

have standing to appeal the district court's decision decertifying the class. *See* 990 F.3d at 254.
There, the Second Circuit hypothesized without deciding that the plaintiff may have "retained
some economic interest" to appeal via a "potential incentive award for his service as class
representative," had he raised the claim. *Id.* at 259 n.12. *Espenscheid* was also a labor law case;
there, the Seventh Circuit held that the plaintiffs, despite settling their individual claims, retained
a sufficient interest in the case to appeal the decertification of their class because they had
reserved the right to seek an incentive award as class representatives if they succeeded on appeal.
688 F.3d at 874. Neither of these cases is a Section 16(b) case, and neither stands for the
proposition that a potential incentive award under 15 U.S.C. § 78u-4(a)(4) constitutes a sufficient
financial interest in the outcome of a Section 16(b) suit to overcome mootness due to the
extinguishment of a plaintiff's interest in the issuer.[3]

Relatedly, Plaintiff Cohen argues that her statutory right to attorney's fees constitutes a
continuing financial interest in a Section 16(b) suit. Cohen Opp'n 17.[4] The Court is aware of no
caselaw in support of that proposition. Plaintiff Cohen cites *Smolowe v. Delendo Corp.*, 136
F.2d 231 (2d Cir. 1943), which says nothing about whether a party's statutory right to attorney's
fees constitutes a continuing financial interest to maintain a Section 16(b) suit and instead dealt
"solely" with "the construction and constitutionality of Sec[tion] 16(b)," *id.* at 234. Ultimately,
Plaintiffs' claims for attorney's fees, expenses, and incentive awards are contingent claims
against BBBY's estate within the meaning of the Bankruptcy Code and the Plan. *See* 11 U.S.C.

---

[3] The Court also notes that it is unclear how Plaintiffs (or any other former BBBY shareholders)
could continue to serve as representative plaintiffs, given the extinguishment of all BBBY shares
under the Plan.

[4] Plaintiff Cohen appears to argue in the alternative that she is only required to demonstrate that
she was a holder of the corporation's security at the time the action was instituted. *See* Cohen
Opp'n 17, ECF No. 75. While this no doubt establishes standing under Section 16(b), it is, as
discussed herein, insufficient to overcome mootness.

§ 101(5)(A) (defining a claim as a "right to payment, whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured"); Hunter Decl. Ex. A at 84 (defining a "Claim" as,

among other things, "a claim, as defined in section 101(5) of the Bankruptcy Code").  The Plan

extinguished those claims, as discussed above.

Finally, Plaintiff Augenbaum argues, without citation to any authority, that "[e]ven if he

were not entitled to an incentive award, Plaintiff's loss of the value of BBBY Common Stock,

which he held through cancellation to create a common fund, should be a reimbursable expense

from any judgment or settlement obtained, which also gives Plaintiff a continuing financial

interest in this Action."  Augenbaum Opp'n 23-24.  It is not clear to the Court how such an

attenuated relationship to the action would confer a continued financial stake in this litigation's

outcome, and the Court is unaware of any caselaw supporting this claim.

A Section 16(b) claim cannot be maintained by plaintiffs who have been "divested of any

interest in the outcome of the litigation."  *Gollust*, 501 U.S. at 124.  That is the situation here, as

BBBY's Bankruptcy Plan canceled Plaintiffs' stock in BBBY.  As discussed, Plaintiffs'

alternative theories purporting to establish their continuing financial interest in this suit fail.

Accordingly, their claims have become moot.

**B.  BBBY's Motion is Denied**

Ordinarily, when a case becomes moot, a district court no longer has subject matter

jurisdiction and must dismiss the case.  *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135,

140 (2d Cir. 1994).  However, "[a] district court determining whether a case has become moot

maintains jurisdiction to determine whether a substitute plaintiff would avoid that result."  *Klein*,

906 F.3d at 218.  As discussed, "Rule 17(a)(3) allows substitution of the real party in interest so

long as doing so does not change the substance of the action and does not reflect bad faith from

11

the plaintiffs or unfairness to the defendants," *id*., and "where substitution of the real party in

interest is necessary to avoid injustice." *Advanced Magnetics*, 106 F.3d at 20.

On the record before the Court, BBBY has not established that these factors weigh in its

favor. The Court has no way of ascertaining whether BBBY's substitution would "change the

substance of the action," because BBBY filed its motion for substitution without attaching any

proposed amended complaint. *See Klein*, 906 F.3d at 218. BBBY represents in its briefing that

its substitution would be "merely formal" because it "intends to pursue the same Section 16(b)

claim against the same defendants." BBBY's Mot. 13. Whether it seeks to pursue the same

claim is not, however, the end of the Court's analysis. The Court must also determine whether

the change in party in any way "alters the original complaint's factual allegations as to the events

or the participants." *Advanced Magnetics*, 106 F.3d at 20. BBBY notably declines to state

whether it seeks to alter the facts on which this case is brought. Instead, it holds out the

possibility that it might, stating that upon its substitution, "it will seek leave to file an amended

complaint," without specifying how the amended complaint might differ from the operative ones

in this case. BBBY's Mot. 13 n.5. BBBY cannot have it both ways: it cannot claim that its

substitution as plaintiff "is a merely formal change in the alignment of the parties" while

representing that it seeks to amend its pleadings in a manner it declines to specify. *Id*. at 13.

"Even if [BBBY's] proposed substitution m[et] [Rule 17] requirements, it should be

denied if it is being proposed in bad faith." *Klein*, 906 F.3d at 226. "[A] party's failure to

submit a proposed amended complaint or a new pleading demonstrates a lack of good faith."

*Gulley v. Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010); *see also State Trading Corp. of India*

*Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (imputing a lack of good

faith to plaintiff in part because plaintiff "did not file a proposed amended complaint" when it

sought leave to amend); *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1197 (7th Cir. 1985)

(noting that "the normal procedure is for the proposed amendment or new pleading to be submitted" with the motion for leave to amend, and that failure to do so "indicates a lack of diligence and good faith").  The Court cannot conclude that BBBY has acted in good faith here, where BBBY claims both that its substitution would be "merely formal," *Advanced Magnetics*, 106 F.3d at 20, while representing that it will seek leave to amend its pleadings in an unspecified manner.

Finally, the Court cannot conclude that granting substitution is "necessary to avoid injustice" here, where nothing would preclude BBBY from filing its own complaint.  *See Klein*, 906 F.3d at 226.  The limitations period for a Section 16(b) claim is "two years after the date such profit was realized."  15 U.S.C. §78p(b).  Here, Defendants are alleged to have realized short-swing profits on or around August 16, 2022, less than two years ago.  BBBY may, therefore, avoid any theoretical prejudice to its economic interest by filing its own timely Section 16(b) action.

## CONCLUSION

For the reasons given herein, the Court concludes that Plaintiffs' claims are moot and grants Defendants' motion to dismiss.  The Court also denies BBBY's motion for substitution and to stay consideration of the motion to dismiss.[5]

The Clerk of Court is respectfully directed to terminate ECF Nos. 64 and 82 and to close the case.

SO ORDERED.

---

[5] In light of the Court's determination on mootness, and its denial of the motion for substitution, the Court declines to address the Rule 12(b)(6) arguments raised by Defendants.  *See* Defs.' Mem. of L. in Supp. of Am. Omnibus Mot. to Dismiss 15-27, ECF No. 65.

Dated: June 11, 2024
       New York, New York

                                                    _____
                                                            DALE E. HO
                                                    United States District Judge