**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | . |

## PLAN ADMINISTRATOR'S MOTION FOR SANCTIONS
## PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011

Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, Michael Goldberg,

in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-

1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), moves this Court

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

4868-7502-5096.7 08728.003

for an order, substantially in the form attached as **Exhibit A**, imposing sanctions (the

"Sanctions") on the unidentified individual purported to be a former shareholder of Bed Bath &

Beyond (the "Former Shareholder") in an amount equal to the legal and financial fees and costs

(including collection costs) incurred by the Plan Administrator in responding to Former

Shareholder's frivolous and legally deficient *Motion for the Appointment of an Official*

*Committee of Equity Security Holders* (the "Former Shareholder Motion").[3]  In support of his

request for Sanctions, the Plan Administrator states as follows:

## I.    PRELIMINARY STATEMENT

1.      On September 14, 2023, this Court confirmed the Debtors' Amended Plan (which

is final and not subject to appeal), pursuant to which all equity interests ("Interests") in Bed Bath

& Beyond, Inc. ("BBB") were extinguished.[4] Now, over nine months later, an anonymous

individual who claims to be a former shareholder of BBB--a claim that cannot be verified

because he insists on secrecy and has not disclosed his identity to the Plan Administrator in

violation of the Court's Scheduling Order [Doc. 3314] —asks this Court, on the basis of

factually unsupported accusations, to appoint a committee of equity security holders for a

company that has no equity and to potentially unwind a plan that has already been confirmed and

substantially consummated and for which the time to object or appeal has long since passed.[5] Not

only should the Court deny the Former Shareholder Motion (which the Plan Administrator has

---

[3] As of the service of this Motion, there is no docket number for the Former Shareholder Motion. The Plan Administrator is responding to the REDACTED version of the motion that was emailed to his counsel on June 14, 2024.

[4]    Capitalized terms that are not defined herein have the meanings given to them in the Plan.

[5] Aside from the due process issues with not knowing "who" filed the Former Shareholder Motion, for the purposes of this Sanctions Motion, the Plan Administrator assumes *arguendo* that the Former Shareholder did, in fact, own shares in BBB that were cancelled pursuant to the Amended Plan.

opposed),[6] but the Court should impose Sanctions on the Former Shareholder under Federal Rule

of Bankruptcy Procedure 9011 ("Bankruptcy Rule 9011") for filing and prosecuting such a

meritless motion.

2.      The main purpose of Bankruptcy Rule 9011 "is to deter frivolous claims and curb

abuses of the legal system, thereby speeding up and reducing the costs of litigation." *Binghamton*

*Masonic Temple v. Bares,* 168 F.R.D. 121, 126 (N.D.N.Y. 1996).[7]  The rule is intended to

"discourage pleadings that are frivolous, legally unreasonable, or without factual foundation,

even though the paper was not filed in subjective bad faith." *Aphton Corp. v. Sonafi Pasteur (In*

*re Aphton Corp.)*, 423 B.R. 76, 96 (Bankr. D. DE. 2010). It applies to all individuals who sign

pleadings, *pro se* litigants and attorneys alike.[8]

3.      The motion field by Former Shareholder is precisely the sort of abuse of process

Bankruptcy Rule 9011 is designed to deter. Former Shareholder had a full and fair opportunity to

participate in the chapter 11 cases and chose not to do so. Now, long after the time to seek the

appointment of an equity committee, object to confirmation, appeal from the confirmation order

and seek a revocation order has passed, he comes to Court with a pleading full of

unsubstantiated, salacious accusations, cites zero supporting case law and, to top it off, refuses to

---

[6] On June 24, 2024, the Plan Administrator filed and served his *Opposition to Former and Canceled Shareholder's Motion for Redaction of Certain Information and Appointment of Post-Effective Date Equity Security Holders Committee* (the "Opposition") [Doc No. 3332]. The Opposition is incorporated herein by this reference.

[7] Bankruptcy Rule 9011 is the equivalent sanctions rule to Federal Rule of Civil Procedure 11 ("Rule 11"). *See e.g.*, *Ettinger & Assocs,. v. Miller (In re Miller),* 730 F.3d 198, 204 n.4 (3d Cir. 2013). The terms "Rule 11" and "Bankruptcy Rule 9011" may be used interchangeably in this Motion.

[8] *Pro se* litigants are subject to Bankruptcy Rule 9011 sanctions and, like attorneys, are judged by an objective standard of reasonableness. *See Olick v. Kearney (In re Olick)*, 466 B.R. 680, 689 (E.D. Pa. 2011) ("[P]ro se litigants are subject to Bankruptcy Rule 9011 sanctions and, like attorneys, are judged by an objective standard of reasonableness, which is defined as 'an objective knowledge or belief that at the time of the filing of a challenged paper that the claim was well grounded in law and fact.'"). *Accord, In re Jones*, 632 B.R. 138, 147 (Bankr. S.D. Ohio 2021) ("Although *pro se* parties may be entitled to some leniency, ultimately *pro se* litigants are not exempted from the duties of Rule 9011, including the obligation to put forth nonfrivolous arguments.").

disclose his name to the representative of the estates. Former Shareholder, who has no financial interest in these cases as a result of the cancellation of all of the Interests in BBB, is causing these administratively insolvent estates to incur thousands of dollars in attorneys fees that could go to creditors who have actual skin in the game. Sanctions are appropriate to deter Former Shareholder, who has already indicated that he is going to file additional complaints, from this senseless yet damaging course of conduct.

4.      The Plan Administrator understands that Former Shareholder is not represented by counsel and is cognizant of the challenges that entails. The obligations imposed by Bankruptcy Rule 9011, however, apply to unrepresented parties as well as attorneys, and the fact that he is not represented by counsel does not excuse him from failing to comply with an order issued by this Court and disregarding the directive to provide his name to the Plan Administrator. It also does not excuse the extreme tardiness of filing a motion to appoint a committee for equity holders *9 months after* a Plan has been confirmed that extinguished all Interests. To comply with Rule 9011(b), the signing party (*pro se* or not) must conduct a "reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988).  Former Shareholder did neither.

5.      His request for the appointment of a committee of equity security holders cannot, and should not, be granted as a matter of law. Bankruptcy Code section 1102 does not authorize the appointment of an equity committee where there are no equity holders. Even assuming arguendo that Former Shareholder had sought the appointment of an equity committee pre-confirmation and prior to the cancellation of Interests, where, as here, equity has always been hopelessly out-of-the-money, one would not have been appointed. Furthermore, Former Shareholder no longer has standing to seek the appointment of an equity committee (or otherwise

participate in or be heard on any issue in these chapter 11 cases) because he is no longer even a

party in interest under Bankruptcy Code section 1109(b). Finally, Former Shareholder has not

made any allegation that would, or come anywhere near his burden of proof to, challenge the

validity or finality of the Confirmation Order to the extent that the unsupported "factual"

allegations in his motion could be construed as seeking relief under Bankruptcy Rule 9024.

6.      The Debtors' Amended Plan and Disclosure Statement fully disclosed that

Interests would be extinguished and that Holders of Interests (Class 9) would receive no

distributions or any other consideration on account of their Interests. Given that the anticipated

distributions to Holders of Allowed Class 6 General Unsecured Creditors were, at the time,

anticipated to be between 0 and 2.5 cents on the dollar to repay an estimated $1.8 billion to $2.4

billion of general unsecured claims[9] (though now, as the Plan Administrator has previously

testified, the estates are administratively insolvent),[10] the former shareholders in BBB, even if

their shares had not been canceled, which they were, could not have received any distributions or

other consideration consistent with the Absolute Priority Rule of the Bankruptcy Code.

7.      Former Shareholder did not move this Court or (to the Plan Administrator's

knowledge) ask the Office of the United States Trustee (the "OUST") to appoint an official

committee of equity security holders prior to confirmation or even prior to the Effective Date of

the Amended Plan. While other now-former shareholders in BBB filed plan objections, Former

---

[9] *See Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1437], at p. 8 (listing a projected amount of claims to be $1.8 billion - $2.4 billion for general unsecured creditors and a projected recovery under the plan of 0% - 2.5% for general unsecured creditors); *see also* Solicitation Procedures Order [Docket No. 1716], at ¶¶ 2-3 (conditionally approving the Disclosure Statement as providing Holders of Claims and Interest with sufficient notice).

[10] *See Declaration of Michael Goldberg in Support of the Motion for Entry of Order Extending Time to Object to Claims* [Docket No. 2906], p. 24 ¶ 13 ("Absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full.").

Shareholder did not.[11] While other now-former shareholders in BBB appealed from the

Confirmation Order, Former Shareholder did not.[12] While other now-former shareholders in

BBB sought an emergency stay of the Confirmation Order pending appeal, Former Shareholder

did not.[13] Former Shareholder, to the extent he is one, sat idly by lying in wait and now, nine

months later, is causing substantial harm to the actual creditors of BBB who are owed billions of

dollars by filing a frivolous motion that is not well grounded in law or fact.

       8.      Former Shareholder seems to be under the misimpression that he still holds

equity, which he does not. He also seems to be under the misimpression that 9 months post-

confirmation, this Court can simply wave an imaginary magic wand and undo the Amended

Plan, reinstate the Interests, and appoint an equity committee to renegotiate a new plan that

provides a return to Interest Holders. He is plainly wrong. He cites no case law to support his

theories because none exists.  Rather, Former Shareholder has asked the Court for a "do-over" to

re-investigate the Debtors' assets and liabilities and to object to the Amended Plan because he

believes he has more and better information than the Debtors and their legal and financial

advisors (Kirkland & Ellis and Alix Partners), the Committee and its legal and financial advisors

(Pachulski Stang Ziehl & Jones and Alvarez &Marsal), the DIP Lender and its legal and

financial advisors (Proskauer Rose and M3 Partners), the United States Trustee, the hundreds of

---

[11] Numerous stakeholders filed objections to the Amended Plan, including two holders of common stock in BBB [Doc. No. 2192] (the "Shareholder Objections").

[12] On September 29, 2023, the Objecting Shareholders appealed from the Confirmation Order [Docket No. 2305]. The appeal, which was docketed as *Neelay Das, et al v. Bed, Bath & Beyond, Inc., et al*, Civil Action No. 23-cv-20878 (D.N.J. 2023) was dismissed by the District Court by order dated May 7, 2024 [Doc. No. 3075] for failure to prosecute.

[13]   The Objecting Shareholders also subsequently filed (and the Court denied) the following: (i) *Motion for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* [Doc.No. 2450] and (ii) *Emergency Motion for Stay and Associated Relief Pending Appeal Pursuant to Fed. R. Bank. P. 8013(d) and 8007* [Doc. No. 2455].

creditors and shareholders who participated openly in the pre-confirmation proceedings, and the

Plan Administrator and his advisors (Pachulski among many others).

9.      The time to legitimately seek the appointment an equity committee has long

passed. Furthermore, all of the information that would have enabled him to conduct an

"investigation" was publicly available to him (and to other then-existing equity Interest Holders

as well as the creditors who are owed billions of dollars) free of charge pre-confirmation. All of

these national advisors have concluded, with evidence submitted to and admitted by the Court,

that the Debtors' estates were and are insolvent. Notably, with the tens of thousands of former

shareholders of BBB, none of them (to the knowledge of the Plan Administrator) sought the

appointment of an equity committee during the pre-confirmation stages of these cases. They did

not waste their time and energy on their unfortunate investment; they did not waste the time and

energy of the estates' numerous advisors; and they did not waste limited judicial resources of this

Court. The substantial widely available and public information of publicly traded BBB made

clear prior to the filing of these bankruptcy cases that the Debtors were insolvent; they are only

more so today.

10.     The Former Shareholder Motion isn't just a waste of time and the estate's money,

it is an abuse of process. There is no legal basis and no evidentiary support to justify the

appointment of a post-effective date equity committee or the cloak and dagger secrecy requested

by Former Shareholder, which is needlessly complicating matters and increasing the costs.

Accordingly, the Plan Administrator asks the Court to impose the requested Sanctions.

## II.      FACTS

### A.      The Bankruptcy Filings

11.     On April 23, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") before the United

States Bankruptcy Court for the District of New Jersey. The chapter 11 cases were procedurally consolidated and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Prior to confirmation, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party requested the appointment of a trustee or examiner.

12.     On May 5, 2023, the OUST for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Unsecured Creditors' Committee"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 218].

**B.      The Plan Process**

13.     On July 21, 2023, the Debtors filed their motion [Doc.No. 1438] for conditional approval of the adequacy of the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 1437] (the"Disclosure Statement"), in order to commence solicitation of votes on the *Debtors' Joint Chapter 11 Plan* [Docket No. 1429] (as amended, the "Plan"), and to schedule a consolidated hearing to consider both the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan.

14.     On August 2, 2023, the Court entered an order [Doc. No. 1716] (the "Solicitation Procedures Order") that conditionally approved the Disclosure Statement, established procedures for soliciting votes for or against the Plan and deadlines for the filing of objections to both the Plan and the Disclosure Statement, and consolidated the hearing on final approval of the Disclosure Statement and confirmation of the Plan as permitted by section 105(d)(2)(B)(vi) of the Bankruptcy Code.

15.     As a part of the solicitation process, the Debtors served the *Notice of Non-Voting Status To Holders of Impaired Claims and Interests Deemed to Reject the Plan* on Class 9 Interest Holders which provided Interest Holders with notice of the Confirmation Hearing, and applicable objection deadlines, how to obtain free copies of the Plan and Disclosure Statement and how to opt-out of certain of the Releases (as defined below). *See* Solicitation Procedures Order (Exhibit 4B), at 184-193. Presumably Former Shareholder received actual notice of the Solicitation Procedures Order, though the Plan Administrator can not verify service because he will not disclose his name. In any event, the Debtors also provided notice of the Confirmation Hearing, and applicable voting and objection deadlines by publication in the New York Times. *See* Proof of Publication [Doc. No. 1856].

16.     As was noted above, numerous stakeholders filed objections to the Plan, including two holders of common stock in BBB [Doc. No. 2192] (the "Shareholder Objections").

17.     On September 11, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2160] (the "Amended Plan"), and on September 12, 2023, the Court held a hearing on the final approval of the Disclosure Statement and confirmation of the Amended Plan.[14] The Court overruled, *inter alia*, the Shareholders Objections, and on September 14, 2023, the Court entered an Order confirming the Amended Plan [Doc. No. 2172] (the "Confirmation Order").

18.     The Amended Plan went effective on September 29, 2023, and, as more fully described below, the then-existing equity was canceled in accordance with the Amended Plan.[15]

---

[14] *See Transcript of Confirmation Hearing* [Doc. No. 2175].

[15] *See Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates and (II) Occurrence of Effective Date* [Docket No. 2311].

19.　　On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving Claims, prosecuting Causes of Action, liquidating the Debtors' remaining Assets and making Distributions in accordance with the terms of the Amended Plan and the Plan Administrator Agreement. *See* Amended Plan, Article VII.  As is his mandate, the Plan Administrator and his professionals have spent the last nine months working to collect and liquidate estate Assets, investigate and prosecute Causes of Action, resolve and/or object to Administrative and Priority Claims and make distributions.

**C.**　　**The Equity Interests**

20.　　Prior to the Petition Dates, the common stock in BBB was publicly traded on the NASDAQ. It was delisted on May 3, 2023.[16]

21.　　Pursuant to the Amended Plan, however, all Interests in BBB -- including any previously owned by Former Shareholder -- were classified in Class 9. Amended Plan, Art. III.B.9(a) ("Class 9 consists of all Interests in BBB.").[17]  The Plan further provides, "Each Allowed Interest in BBB shall be canceled, released and extinguished, and will be of no further force and effect, and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests." *Id.*, Art. III.B.9(b). It also provides, "Class 9 is impaired. Holders of Interests in BBB are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan." *Id.*, Art. III.B.9(c); Confirmation Order, at ¶ 15 ("Holders of Interests in Class 9 and Class 10 (the "Deemed Rejecting Classes") are Impaired under the Plan and are entitled to no recovery under the Plan and are, therefore, deemed to have rejected the Plan.").

---

[16] Market Watch, "Nasdaq kicks off Bed Bath & Beyond delisting process," available at
https://www.marketwatch.com/story/bed-bath-and-beyond-stock-set-for-nasdaq-delisting-at-market-open5b0e68e6.
[17] "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code." *See* Amended Plan, Art. I.A.87.

22.    The Amended Plan was and is clearly a liquidating plan that wipes out equity and does not provide for the issuance of new equity interests. Confirmation Order, at ¶ 27 ("The Plan does not provide for the issuance of new equity interests."). In sum, under the Amended Plan and the Confirmation Order, as of September 29, 2023: (a) All Interests in BBB -- including any previously owned by Former Shareholder -- were canceled. Confirmation Order, at ¶ 98. (b) Broad releases were granted by Creditors and Interest Holders who did not opt-out (with respect to third party releases)[18] in favor of, among others, the Debtors, the Creditors' Committee and their Professionals (the "Releases"). Confirmation Order, at ¶ 107.[19] (c) An injunction was issued (the "Plan Injunction") which permanently enjoined Former Shareholder and other former Interest Holders from, among other things, (a) "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such . . . Interests . . ."; (b) "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such  . . . Interests . . ." and/or (c) "commencing or continuing in any

---

[18] There is, of course, no way to know if Former Shareholder followed the procedure to "opt-out" of the third party releases because he continues to refuse to disclose his name to the Plan Administrator. In any event, whether or not the Former Shareholder followed the procedures to "opt-out" of any third-party release is irrelevant to the merits of his request to appoint an equity committee.

[19] Paragraph 107 of the Confirmation Order provides, "As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts . . .  the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement . . .the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims and Causes of Action related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan."

manner any action or other proceeding of any kind on account of or in connection with or with

respect to any such . . . Interests . . . discharged, released, exculpated, or settled pursuant to the

Plan." Confirmation Order, at ¶ 114. (d) All statutory committees were dissolved. Confirmation

Order, at ¶ 138.[20]

23.     Shortly after the Effective Date, on October 18, 2023, the CUSIP numbers

associated with the extinguished Interests, as well as the Debtors' other securities were

canceled.[21]

**D.    The Former Shareholder Motion**

24.     On or about April 23, 2024, Former Shareholder requested the appointment of an

equity committee by letter to the Court. *See Notice of Receipt of Letter Requesting Relief* [Doc.

No. 2991]. On or about June 5, 2024, Former Shareholder filed a formal request for the

appointment of an equity committee by submitting a version of the Former Shareholder Motion

to the Court under seal with a request for redaction of his personal identifying information

because, he alleges, "I believe giving Mr. Sandler this information – as the lead counsel for

BOTH the Plan Administrator, as well as the UCC – ***will be putting my family in danger.***" *See*

email from Former Shareholder to Judge Papalia dated June 11, 2024. The Court scheduled a

---

[20] "Dissolution of Statutory Committees. On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases."

[21] As the Plan Administrator has previously stated, "In order to effectuate the administrative cancellation of the CUSIP numbers associated with the BBB common stock, preferred stock and warrants, on October 18, 2023, counsel for the Debtors prepared on my behalf, Null, Void and Worthless Event Questionnaires (the "NVWQ") for each class of security. A true and correct copy of the NVWQ for Common Stock is attached hereto as Exhibit A, the NVWQ for Preferred Stock is attached hereto as Exhibit B, and the NVWQ for Warrants is attached hereto as Exhibit C. These Exhibits are incorporated herein for all purposes. Equiniti, BBB's transfer agent, submitted the three attached NVWQs to Depository Trust Corporation ("DTC") to complete the deletion process. I have been informed by DTC that the process has been completed and all CUSIP numbers for BBB common stock, preferred stock and warrants have been canceled." *See Declaration of Michael Goldberg in Support of Objections* to (i) the *Emergency Motion of Common Stock Equity Interest Holders For Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* and (ii) the *Emergency Motion of Common Stock Equity Interest Holders for Stay and Associated Relief Pending Appeal Pursuant to Fed. R. Bankr. P. 8013(d) and 8007* [Doc. No. 2631], at ¶ 7.

scheduling hearing [Doc. No. 3312], which counsel to the Plan Administrator attended on June

10, 2024. *See* Transcript of June 10 Hearing [Doc. No. 3317] (the "June 10 Transcript").

25.     On June 12, 2024, the Court issued its *Order Establishing Procedures Relating to*

*Shareholder's Motions for Redaction of Certain Information and Appointment of Equity Security*

*Committee* [Doc. No. 3314] (the "Scheduling Order"), which provides:

> The Shareholder, within two (2) business days of entry of this Order,
> shall: (i) file with this Court a copy of the Motions with his personal
> identifying information redacted and replaced with the information
> contained in paragraph two (2) of this Order and (ii) serve copies of
> the Motions (***without any redactions***) on counsel for the Plan
> Administrator (Bradford J. Sandler, Esq.), counsel for the Former
> Debtors (Emily E. Geier, Esq.) and counsel for the Office of the
> United States Trustee (Fran B. Steele, Esq.), each by electronic mail.

Scheduling Order, ¶ 1 (emphasis added).  On June 14, 2024, Former Shareholder emailed

REDACTED versions of his moving papers to counsel to the Plan Administrator in

which he still fails to disclose his name.

26.     On June 24, 2024, the Plan Administrator filed his *Opposition* to the Former

Shareholder Motion. The OUST also filed an Opposition [Doc. No. 3331].

27.     On June 25, 2024, in accordance with the safe harbor provisions of Federal Rule

of Bankruptcy Procedure 9011(c)(1)(A), the Plan Administrator served a draft copy of this

Motion on Former Shareholder *via* email, overnight delivery and first class mail with a request

that Former Shareholder withdraw the Former Shareholder Motion.  To date, Former

Shareholder has not withdrawn his motion.

### III.    BASIS FOR SANCTIONS

**A.    The Standard Under Bankruptcy Rule 9011**

28.    Bankruptcy Rule 9011 embodies two requirements: (1) the signature requirement,[22] and (2) the representations requirement. The Plan Administrator understands that, while it has not been made available to him, that Former Shareholder signed the papers that were submitted under seal to the Court.[23] While this may satisfy the signature requirement, it, of course, does not address the due process concerns that arise from the fact that the Former Shareholder has refused to disclose his identity to the representative of the estates or the fact that Former Shareholder violated the Scheduling Order by failing to do so.

29.    With respect to the "representations requirement," Bankruptcy Rule 9011(b) provides:

> **(b) Representations to the court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]—
>
>> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[22] Bankruptcy Rule 9011(a) provides, "Signature. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Fed. R. Bankr. P. 9011(a).

[23] *See* June 10 Transcript, at 12, lines 13-17 ("The issue here is really the confidentiality. And as to that point, Mr. ML, I mean, the papers I have here that were, I guess, filed under seal do contain your signature and do contain other identifying information.")

(**3**) the allegations and other factual contentions have evidentiary
support or, if specifically so identified, are likely to have
evidentiary support after a reasonable opportunity for further
investigation or discovery; and
(**4**) the denials of factual contentions are warranted on the evidence
or, if specifically so identified, are reasonably based on a lack of
information or belief.

Fed. R. Bankr. P. 9011(b).

30.    Bankruptcy Rule 9011 is intended to discourage pleadings that are "'frivolous,
legally unreasonable, or without factual foundation, even though the paper was not filed in
subjective bad faith.'" *Lieb v. Topstone Indus. Inc*., 788 F.2d 151, 157 (3d Cir. 1986)(*quoting
Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)).[24] The rule "requires litigants
to 'stop-and-think' before initially making legal or factual contentions. It also, however,
emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a
position after it is no longer tenable . . . ." Fed. R. Civ. P. 11, advisory committee's note to 1993
amendment. As the Court of Appeals for the Third Circuit has noted:

> The rule imposes on counsel a duty to look before leaping and may
> be seen as a litigation version of the familiar railroad crossing
> admonition to "stop, look, and listen." The signature of counsel on
> a pleading certifies that a reasonable investigation of the facts and a
> normally competent level of legal research support the presentation
> . . . . The pleader may not escape liability because he did not intend
> to bring about additional delay or expense. If reasonable preparatory
> steps would have avoided those consequences, sanctions are
> appropriate. "There is no room for a pure heart, empty head defense
> under Rule 11." Schwarzer, *Sanctions Under the New Federal Rule
> 11 -- A Closer Look*, 104 F.R.D. 181, 187 (1985).

---

[24] Sanctions under Bankruptcy Rule 9011 do not require a finding of bad faith. *In re Rivera*, 342 B.R. 435, 460
(Bankr. D.N.J. 2006) ("This court need not find 'bad faith' or a nefarious intent in order to conclude that Bankruptcy
Rule 9011 representations were breached."), *aff'd Schwartz v. United States Tr. Office (In re Rivera)*, 2007 U.S.
Dist. LEXIS 47345 (D.N.J. June 27, 2007). "Even if not carried out for such an inappropriate purpose, a lack of
reasonable investigation would nonetheless serve as a basis for the imposition of sanctions under Rule 11." *Bradgate
Associates, Inc. v. Fellows, Read & Associates, Inc.,* 999 F.2d 745, 752-53 (3d Cir. 1993).

*Lieb v. Topstone Indus. Inc*., 788 F.2d at 157.

31.    The Former Shareholder Motion is both legally unreasonable and without factual foundation. Reasonableness is "'an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact.'" *In re Taylor*, 655 F.3d 274, 284 (3rd Cir. 2011) (*citing Ford Motor Co. v. Summit Motor Prods., Inc*., 930 F.2d 277, 289 (3d Cir. 1991). Courts have identified five factors to consider in determining whether the signer conducted a reasonable investigation of the facts and law prior to signing the applicable pleading: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity for reliance on a client for the underlying factual information; (3) the plausibility of the legal position advocated; (4) whether the case was referred to the signer by another member of the Bar; and (5) the complexity of the legal and factual issues implicated. *See e.g., Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d at 95 (citing FED. R. CIV. P. 11 advisory committee note). Applying the above factors, Sanctions are clearly warranted.

**B.    Factor 1: Former Shareholder had ample time to conduct his factual and legal investigation prior to confirmation and/or the Effective Date.**

32.    Former Shareholder submitted his moving papers 9 months after the Effective Date, and almost 14 months after the Petition Dates. He had ample opportunity to investigate the Debtors' Assets and Debts, review the Amended Plan and Disclosure Statement, object to Confirmation and/or ask the OUST or this Court to appoint an equity committee pre-confirmation, and yet he failed to do so. All of the pleadings, schedules, statements and operating reports are (and have been) publicly available on the Kroll site for these cases at https://restructuring.ra.kroll.com/bbby/Home-DocketInfo). Instead, he sat idly by despite *all* of the information that would have enabled him to conduct this "investigation" was publicly available to him (and to other then-existing equity Interest Holders) free of charge pre-

confirmation.  Given how much time he had to investigate and act before now, it is prejudicial to

the estates to have to respond to a frivolous motion that should have been brought months ago

(although as noted above would not be successful) and for which the crux of the relief requested

is untenable.[25] Former Shareholder's delay in both conducting his "investigation" and in bringing

the motion are unreasonable, prejudicial to the estates and weighs in favor of imposing

Sanctions.

**C.**     **Factor 2: Former Shareholder did not rely on a client for the facts underlying the Former Shareholder Motion.**

        33.     As he is representing himself, to the extent that the Former Shareholder Motion is

based on "facts," Former Shareholder did not have to rely on a client. He has relied on his own

"investigation," thoughts and interpretation for which he is held accountable under Bankruptcy

Rule 9011.

**D.**     **Factor 3: Former Shareholder's legal positions are entirely implausible.**

        34.     A legal position is unwarranted for Bankruptcy Rule 9011 purposes if it has no

chance of success under controlling precedent**.** *See In re Jones*, 632 B.R. 138, 147 (Bankr. S.D.

Ohio 2021).  "Arguments for extensions, modifications, or reversals of existing law or for

creation of new law do not violate subdivision (b)(2) provided they are "nonfrivolous." This

establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification

for patently frivolous arguments." Fed. R. Civ. P. 11, advisory committee's note to 1993

amendment. As is set forth in detail below, each of Former Shareholder's legal positions has no

---

[25] On this basis, in the *Opposition*, the Plan Administrator asks for a finding that the Former Shareholder Motion is barred by the doctrine of laches. To raise a defense of laches, one must show "(1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense." *United States v. Koreh*, 59 F.3d 431, 445 (3d Cir. 1995); *see also EEOC v. A&P*, 735 F.2d 69, 80 (3d Cir. 1984) ("The elements of the equitable defense of laches are (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.").

chance of success. He does not even attempt to cite any law supporting his positions or to

support an argument in favor of an extension or modification of existing law. This factor weighs

heavily in favor of imposing Sanctions.

35.     _Former Shareholder's request for the appointment of an equity committee has no_

_chance for success under controlling precedent_. Bankruptcy Code section 1102(a) permits the

appointment of an additional committee of equity security holders only if necessary to assure the

adequate representation of equity security holders. _See_ 11 U.S.C. § 1102. "Appointment of an

additional Committee is an extraordinary remedy that courts are reluctant to grant." _In re_

_Residential Capital, LLC_, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012).  The movant has the

burden of proving that an additional committee is needed for adequate representation. _In re_

_Spansion, Inc._, 421 B.R. 151, 156 (Bankr. D. Del. 2009). The movant must show that:

> (i) there is a substantial likelihood that they will receive a
> meaningful distribution in the case under a strict application of the
> absolute priority rule, and (ii) they are unable to represent their
> interests in the bankruptcy case without an official committee. Exide
> Tech. v. State of Wisconsin Inv. Bd., 2002 U.S. Dist. LEXIS 27210,
> 2002 WL 32332000, *1 (D. Del. Dec. 23, 2002) . . . . The court's
> appointment of an additional committee is considered
> "extraordinary relief" and should be "the rare exception." Dana
> Corp., 344 B.R. at 38, Exide Tech., 2002 U.S. Dist. LEXIS 27210,
> 2002 WL 32332000 at *1.

_Id_. at 156 (refusing to appoint official committee of equity holders when scheduled assets were

less than liabilities because this indicated the corporation was insolvent).

36.     First and foremost, the Court cannot appoint a post-confirmation equity

committee to represent equity holders because there are _no_ equity holders to represent.  As the

Amended Plan and Confirmation Order make clear, all Interests (i.e., equity) were canceled

effective as of September 29, 2023.  _See_ Amended Plan, art. III.B.9(a); Confirmation Order, at ¶¶

15 and 27. There are simply _no_ holders of any equity interests in the Debtors that require

representation, and thus no one to assure adequate representation of. *See In re eToys, Inc.*, 331

B.R. 176, 186 (Bankr. D. Del. 2005) ("[Former shareholder] also seeks the appointment of an

equity committee and counsel to permit him to continue to investigate this case. The Court

concludes that such a request is not warranted. Though section 1102(a)(2) authorizes the Court to

order the appointment of additional committees of creditors or equity security holders, it may do

so only 'if necessary to assure adequate representation' of those parties. In this case there is no

necessity to appoint a committee for equity security holders because their interests have been

extinguished by the Debtors' Plan and they will receive nothing from the estate.").

37.    Moreover, even if the Court were to find that the non-existent equity security

holders were not adequately represented, the Court should not exercise its discretion to appoint

an equity committee at this stage in the Chapter 11 Cases. Former Shareholder's request to

appoint an equity committee is too late. *See In re eToys, Inc.*, 331 B.R. at 186 (denying request

for appointment of a post-confirmation equity committee and counsel "because it will provide no

benefit to the estate and is simply too late.")*; In re New Century TRS Holdings, Inc.*, No. 07-

10416, 2013 Bankr. LEXIS 4021, at *12-14 (Bankr. D. Del. Sept. 26, 2013) (denying a post-

confirmation motion for appointment of a borrower's committee "at this late stage in the

bankruptcy case"); *In re Kalvar Microfilm*, 195 B.R. 599, 601 (Bankr. D. Del. 1996) (denying a

motion to appoint an equity committee after the plan had been negotiated and filed, deciding that

the only remaining purpose of an equity committee would be to objection to confirmation and

litigate valuation issues).

38.    Additionally, the estates are administratively insolvent and do not have the

capacity for additional costs associated with the appointment of an equity committee—a

committee that will provide no benefit to the estates. Equity holders, such as Former

Shareholder, had the opportunity to participate in the chapter 11 proceedings (*see e.g.*, the

Shareholder Objections) but instead chose not to (most likely because they reviewed the publicly

available information and rationale concluded that equity was completely out of the money).  It

is simply too late and unbeneficial to appoint an equity committee at this point.[26] Even prior to

confirmation, the appointment of an equity committee would have been unwarranted because

equity was out of the money. *See In re Spansion, Inc.*, 421 B.R. at 156-57 ("[I]f equity holders

have no reasonable prospect of receiving a meaningful distribution, an equity committee could

serve no legitimate role in negotiating a plan. *See Williams*, 281 B.R. at 220 (If equity holders

have no economic interest left to protect, neither the debtors nor the creditors should have to bear

the expense of negotiating what would be, in essence, a 'gift' for the equity holders.) Therefore,

in weighing the cost of appointing an official committee of equity security holders against the

potential benefit of such a committee, a court should consider whether there is a substantial

likelihood that the equity security holders will receive a distribution.").

39.     *Former Shareholder is not a party in interest and cannot bring a motion to*

*appoint a committee under Bankruptcy Code sections 1102(a) and 1109.*  Former Shareholder

has no standing as a party in interest to even request the court to order the appointment of a

committee of equity security holders pursuant to section 1102(a), which only permits a "*party in*

*interest*" to request the appointment of an additional committee. Section 1109 of the Bankruptcy

Code provides, "(b) A party in interest, including the debtor, the trustee, a creditors' committee,

---

[26] Former Shareholder  argues that the Unsecured Creditors Committee did not adequately represent his interest as an equity holder. As the Court noted in the Confirmation Order, the U.S. Trustee appointed the Official Committee of Unsecured Creditors to represent the *interests of the unsecured creditors of the Debtors* in the Chapter 11 Cases." *Confirmation Order*, ¶ 5. Members of a creditors' committee have a fiduciary duty to the holders of the class of claims they represent. *In re ABC Automotive Prods. Corp.,* 210 B.R. 437 (Bankr. E.D. Pa. 1997). They must pursue their statutory function for the benefit of their constituency with an undivided loyalty.  *Johns-Manville Sales Corp. v. Doan* (*In re Johns-Manville Corp.*), 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983).

an equity security holders' committee, a creditor, an equity security holder, or any indenture

trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11

U.S.C. § 1109. Former Shareholder does not qualify under any of these specific categories.

While the definition of "party in interest" is broad, this term is limited to parties that have a

financial interest in the estate's assets or represent parties that do. *See Truck Insurance Exchange*

*v. Kaiser Gypsum Co.*, 602 U.S. ___ (2024) (analyzing section 1109 and noting that "[a]

common thread uniting the seven listed parties is that each may be directly affected by a

reorganization plan either because they have a financial interest in the estate's assets . . . or

because they represent parties that do . . . ."). Because Former Shareholder's Interests have been

canceled and extinguished, he no longer has a financial interest in these Chapter 11 Cases, and is

not a party in interest with standing to request the appointment of an additional committee.

40.     Such a finding would be consistent with the decision of the U.S. District Court for

the Southern District of New York in *In re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No.

22 Civ. 9327 (the "District Court Action"), in which the court addressed whether two former

shareholders of BBB retained a financial interest and standing in their securities litigation.

Dismissing their claims because the Amended Plan extinguished their equity, the court

explained:

> [C]onfirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor
> . . . and any creditor, equity security holder, or general partner in the
> debtor, whether or not the claim or interest of such creditor, equity
> security holder, or general partner is impaired under the plan." 11
> U.S.C. § 1141(a) . . . . Here, the plain language of the Bankruptcy
> Plan states that all shares in BBBY were "canceled, released, and
> extinguished, and will be of no further force or effect and no Holder
> of Interests in BBBY shall be entitled to any recovery or distribution
> under the Plan on Account of such Interests" as of the effective date,
> September 29, 2023. Slocum Decl. Ex. 8 at 102-03. The Plan
> effected a "complete settlement, compromise, and release, effective
> as of the Effective Date, of Claims, Interests, and Causes of Action

of any nature whatsoever" against the debtors or their property. Hunter Decl. Ex. A at 127. And it decrees that the holders of claims, interests, and causes of action against BBBY are "permanently enjoined and precluded" from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan." Id. at 131. **In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy Plan, Plaintiffs fail to establish "some continuing financial interest in the outcome of this litigation."** Gollust, 501 U.S. at 126.

*Order and Opinion*, *In Re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No. 22 Civ. 9327 (DEH), at *7-8 (S.D.N.Y. June 11, 2024) (emphasis added);[27] *see also In re WorldCom, Inc.*, 351 B.R. 130, 134-35 (Bankr. S.D.N.Y. 2006) (holding that plaintiff lost standing to bring a derivative claim where his shares in a company were "canceled" and he would "receive no distributions" under the company's reorganization plan). Just as the litigants in the District Court Action were bound by the extinguishment of their Interests pursuant to the Amended Plan, so is the Former Shareholder; the Amended Plan canceled, released, and extinguished Former Shareholder's Interest; and the Amended Plan effected a complete settlement, compromise, and release of any Claims, Interests, and Causes of Action Former Shareholder may have had against the Debtors or their property.[28] In other words, Former Shareholder no longer has any financial interest in the chapter 11 proceedings, is not a "party in interest," and cannot bring a motion to appoint a committee under section 1102(a) (or be heard on any other matter in these cases).

---

[27]   A true and correct copy of the Order and Opinion is attached as **Exhibit B**.

[28]   This conclusion would not change even if Former Shareholder "opted-out" of the third party releases under the Amended Plan, because the opt-out provision only pertained to the Holders of Interest's release of non-debtor third parties, such as the Unsecured Creditors' Committee and the ABL Lenders—not the release of the Debtors or their property. Therefore, the Amended Plan effected a release of Former Shareholder's claims against the Debtors and their property. *See* Amended Plan, art. X.A.–X.D.; *see also* Confirmation Order, at ¶¶ 106–08.

41.    _To the extent that Former Shareholder's Motion could conceivably be construed_

_as a motion pursuant to Rule 9024 to grant relief from the Confirmation Order, that motion must_

_also be denied because the allegations within the motion lack any evidentiary support_.

Bankruptcy Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedure. Under Fed.

R. Civ. P. 60(b), a court may grant relief from a final judgment, order, or proceeding "on motion

and just terms" in narrow circumstances.  Relief under Rule 60(b) is appropriate only when "the

overriding interest in the finality and repose of judgments may properly be overcome." _Harris v._

_Martin_, 834 F.2d 361, 364 (3d Cir. 1988).  Here, Former Shareholder's Motion makes no

mention of Bankruptcy Rule 9024 or Fed. R. Civ. P. 60, but the motion makes allegations of

newly discovered evidence and fraud, misrepresentation, and misconduct, which, in an

abundance of caution, the Plan Administrator will address in turn.

42.    Former Shareholder cannot demonstrate that the "new information" in his motion

is new or could not have been discovered through reasonable diligence.  Federal Rule of Civil

Procedure 60(b)(2) provides that a court may relieve a party from an order for newly discovery

evidence that, with reasonable diligence, could not have discovered in time.  However, a party

raising Rule 60(b)(2) "bears a heavy burden." _Compass Tech. v. Tseng Lab._, 71 F.3d 1125, 1130

(3d Cir. 1995); _see also Plisco v. Union R. Co._, 379 F.2d 15, 17 (3d Cir. 1967).  The party must

show that newly discovered evidence is "(1) material and not merely cumulative (2) could not

have been discovered prior to trial through the exercise of reasonable diligence, and (3) would

probably have changed the outcome of the trial." _Bohus v. Beloff_, 950 F.2d 919, 930 (3d Cir.

1991); _see also InFirst Bank v. Jager (In re Jager)_, 597 B.R. 796 (Bankr. W.D. Pa. 2019)

(concluding that debtors were not entitled to relief under Rule 60(b)(2) because the debtors had

knowledge of the evidence and thus it was "not new evidence"). Former Shareholder alleges that

there is "new information . . . not available during the plan confirmation process [that] suggests

that shareholders' interests and financial standing of the company were not appropriately

valued."

43.    The new information Former Shareholder points to is the Debtors' net operating

losses as disclosed in BBB's Annual Report (Form 10-K) for the fiscal year ending February 25,

2023; the "undetermined" value of insurance policies and annuities and causes of action listed in

the Debtors' Schedules of Assets and Liabilities; the lawsuit against Hudson Bay Capital; and the

causes of action brought against former board members of the Debtors.  None of these claims are

new to anyone who has been following these cases.

44.    Neither the net operating losses nor the fact that the Debtors valued certain assets

as "undetermined" are newly discovered information. The net operating losses were reported on

BBB's Annual Report (Form 10-K) for the fiscal year ending February 25, 2023, which was filed

with the U.S. Securities and Exchange Commission on June 14, 2023—three months before

confirmation. *See* Bed Bath & Beyond Inc., Annual Report (Form 10-K), p. 30 (June 14, 2023).[29]

The Debtors filed their *Schedules of Assets and Liabilities* [Docket Nos. 519-573] on May 30,

2023—nearly four months before confirmation—identifying the Debtors' interests in its

insurance policies or annuities as having an "undetermined" value.  *See e.g.*, *Schedules of Assets

and Liabilities for Bed Bath & Beyond Inc.* [Docket No. 568], p. 34 (listing Bed Bath & Beyond

Inc.'s interest in several insurance policies and annuities as having an undetermined value).

---

[29] Notably, the Introductory Note of this filing states: "Holders of the Company's equity securities will likely be entitled to no recovery on their investment following the Chapter 11 Cases, and recoveries to other stakeholders cannot be determined at this time. The Company cautions that trading in the Company's securities given the pendency of the Chapter 11 Cases is highly speculative and poses substantial risk. Trading prices for the Company's securities bear little or no relationship to the actual value realized, if any, by holders of the Company's securities in the Chapter 11 Cases. Accordingly, the Company urges extreme caution with respect to existing and future investment in its securities." *Id.*

45.    The Hudson Bay Capital litigation and litigation against former directors of BBB

(collectively the "Litigation") are also not "newly discovered evidence."[30] The Confirmation

Order and Amended Plan expressly provides that the Plan Administrator will have the right and

authority to prosecute the Litigation and that the Disclosure Statement and Amended Plan

provided adequate notice with respect to such Causes of Action. The Confirmation Order states:

> [A]ll Causes of Action shall automatically vest in the Wind-Down
> Debtors, and the Plan Administrator, subject to the oversight of the
> Oversight Committee, shall have the right and authority to
> investigate, commence, prosecute, or settle, as appropriate, any and
> all of the Non-Released Claims, whether arising before or after the
> Petition Date. Additionally, the Plan and Plan Supplement provide
> meaningful disclosure with respect to the potential Causes of Action
> that the Plan Administrator may retain, and all parties in interest
> received adequate notice with respect to such Causes of Action. The
> provisions regarding Causes of Action in the Plan are appropriate
> and in the best interests of the Debtors, their respective Estates, and
> Holders of Claims and Interests.

Confirmation Order, at ¶ 47; *see also* Confirmation Order, at ¶ 94 ("the Plan Administrator shall

have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and

Wind Down Debtors' Claims and Causes of Action"). The Amended Plan's definition of "Non-

Released Claims" makes clear that it includes claims against the Debtors' current and former

directors, officers, and managers, and claims arising under the Securities Act and the Securities

Exchange Act of 1934. *See* Amended Plan, art. I.A.99. Therefore, Former Shareholder, as a

purported former shareholder, had adequate notice that the Plan Administrator had the right and

---

[30] On May 2, 2024, the Plan Administrator filed a complaint, initiating *20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC., v. HBC INVESTMENTS LLC and HUDSON BAY CAPITAL MANAGEMENT LP*, which is pending as Case No. 24-cv-3370 in the United States District Court for the Southern District of New York. On April 26,2024, the Plan Administrator filed a complaint, initiating *20230930-DK-BUTTERFLY-1, INC. F/K/A BED BATH & BEYOND INC., et al v. HARRIET EDELMAN, et al*, which is pending as Case No. 652164/2024 in the Supreme Court of New York (County of New York).

authority to prosecute the claims and causes of action that the Plan Administrator is now prosecuting.

46.     The allegations of fraud and misrepresentation are baseless and unsupported. The Former Shareholder Motion also accuses the Debtors, the Unsecured Creditors' Committee, and their respective professionals of fraud and misrepresentations, but again, these bald and unfounded allegations do not come anywhere near the burden under Fed. R. Civ. P. 60(b) to challenge the validity or finality of the Confirmation Order. Under Civil Rule 60(b)(3), alleged fraud, misrepresentation, or misconduct "must be proven by clear and convincing evidence." *In re Express Car & Truck Rental, Inc.*, 455 B.R. 434, 441 n. 9 (Bankr. E.D. Pa. 2011) (citing *Brown v. Pennsylvania R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)). The party seeking relief under Rule 60(b)(3) must show that the alleged fraud, misrepresentation, or misconduct barred it from "fully and fairly presenting its defense," and had a material effect on the outcome of the lawsuit. *Id.* (citing *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985)). Former Shareholder has made several baseless allegations of fraud and misrepresentation. He asserts: (i) the Debtors were "deliberately driven into bankruptcy to conceal and capitalize on numerous instances of fraud within the company;" (ii) there are conflicts of interest involving numerous professional service firms; and (iii) "gross negligence and potential securities fraud by numerous parties." Each of these is a baseless assertion—***no*** evidence has been provided. Further, the fraud and misrepresentation allegations are so vague and lacking of detail that it is impossible to respond or address them.[31]  Additionally, the one semi-specific inflammatory allegation regarding Pachulski Stang Ziehl & Jones LLP that can be addressed is simply false and shows

---

[31] The Former Shareholder Motion also states that "if this motion is rejected, in the coming weeks [ML1] will be filing complaints . . . ." Under Fed. R. Bankr. P. 9024 and Bankruptcy Code section 1144, the deadline to file such a complaint seeking to revoke the Confirmation Order (180 days after entry) passed on March 12, 2024.

Former Shareholder's lack of understanding of basic facts. PSZJ does not simultaneously

represent the Plan Administrator and the Unsecured Creditors' Committee because on the

Effective Date, the Unsecured Creditors' Committee dissolved. *See* Amended Plan, art. XIV.C.

It is clear that Former Shareholder has not met his burden under Fed. R. Civ. P. 60(b)(3).

47.    Former Shareholder's baseless, unsupported claims and his implausible legal

theories weigh heavily in favor of awarding Sanctions.

**E.    Factor 4: The legal and factual issues are not complex.**

48.    The Plan Administrator understands that Former Shareholder is a *pro se* litigant

and that legal concepts like "standing" and "mootness" sound complex, but the issues here are

actually quite legally and factually simple. Former Shareholder could have asked (or moved) to

have an equity committee appointed prior to confirmation and he did not. By virtue of

confirmation of the Amended Plan, Former Shareholder no longer owns any stock in BBB, nor

does anyone else. Accordingly, there are no grounds to appoint a post-confirmation equity

committee because there are no equity holders to represent. Furthermore, Former Shareholder

himself, in his "*Statement as to Why No Brief is Necessary*" states, "It is respectfully submitted

that no brief is necessary in the Court's consideration of this motion, as it does not involve

complex issues of law." Therefore, this factor weighs in favor of imposing Sanctions.

**F.    Factor Five: The case was not referred to Former Shareholder by another member
of the Bar.**

49.    As Former Shareholder is not an attorney, this factor is not applicable to this case.

**IV.    THE REQUESTED SANCTIONS**

50.    Having established that Former Shareholder failed to make a reasonable inquiry

prior to filing his motion, that the motion was not well grounded in law or in fact, and that the

Former Shareholder was given notice and a reasonable opportunity to withdraw his pleading and

did not, the Plan Administrator requests that the Court award monetary sanctions in an amount of

his professional fees and costs incurred in connection with responding to the Former Shareholder

Motion in an amount to be established at the hearing on this Motion.[32]  *See Doering v. Union*

*County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) ("We have stated that, by

awarding attorney fees to prevailing defendants in an effort to discourage plaintiffs from

bringing baseless actions or making frivolous motions, the Rule's primary purpose is not

"wholesale fee shifting but [rather] correction of litigation abuse." *Gaiardo v. Ethyl Corp*., 835

F.2d 479, 483 (3d Cir. 1987).").

## V.      CONCLUSION

51.      Responding to Former Shareholder's legally untenable and factually unsupported

pleading, along with his attendant requests for secrecy, sealed documents and in camera

hearings, is driving up costs for these already beleaguered estates. Enough is enough. The

Amended Plan was confirmed and Former Shareholder's stock was cancelled 9 months ago. The

time to ask for the appointment of an equity committee was then, not now. The time to object to

the valuation of the Debtors' assets was then, not now. The time to object to proposed

distributions (or lack thereof) to Class 9 Interest Holders was then, not now. The time to object to

confirmation and/or appeal from the Confirmation Order was then, not now. And there are

simply no legal grounds to do so now. Accordingly, Plan Administrator respectfully requests that

the Court impose Sanctions under Bankruptcy Rule 9011 and grant any additional relief the

Court deems just and proper under the circumstances.

---

[32] Bankruptcy Rule 9011(c)(2) provides, "*Nature of sanction; limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2).

Dated:  July 24, 2024                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
        bsandler@pszjlaw.com
        crobinson@pszjlaw.com


*Counsel to the Plan Administrator*

**Exhibit A**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**[PROPOSED] ORDER GRANTING PLAN ADMINISTRATOR'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011**

The relief set forth on the following pages, numbered two (2) through and including three (4), is hereby **ORDERED**:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4868-7502-5096.7 08728.003

The Court has considered the *Motion for Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 9011* filed by Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "**Debtors**") [Doc No. ____] (the "Motion") and the response to the Motion filed by the unidentified individual purported to be a former shareholder of Bed Bath & Beyond (the "Former Shareholder") [Doc. No. ____] (the "Opposition"); and the court having held a hearing on the Motion on _____, 2024, and the court having found that Plan Administrator gave adequate notice of the Motion pursuant to Federal Rule of Bankruptcy Procedure 9011(c) prior to filing the Motion; and that Former Shareholder did not withdraw his *Motion for the Appointment of an Official Committee of Equity Security Holders* (the "Former Shareholder Motion") [Doc. No. _____]; and that the request for the appointment of a committee of equity security holders pursuant to Bankruptcy Code section 1102 is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and that the allegations and other factual contentions set forth in the Former Shareholder Motion in support of the appointment of a committee of equity security holders pursuant to Bankruptcy Code section 1102 have no evidentiary support and, to the extent specifically identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and having found that Former Shareholder failed to conduct a reasonable inquiry into the facts and law prior to filing the Former Shareholder Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§

1408 and 1409; and it appearing that no other or further notice need be provided; and after due

deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Opposition is overruled.

2.      The Motion is GRANTED as set forth herein.

3.      Former shareholder is ordered to pay the Plan Administrator $_____ in

sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011.

4.      This Court shall retain exclusive jurisdiction to interpret and enforce the

provisions of this Order in all respects and further to hear and determine all matters arising from

the construction and implementation of this Order.

**Exhibit B**

**Order & Opinion**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | 22 Civ. 9327 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court are Defendants RC Ventures LLC and Ryan Cohen's (collectively,

"Defendants'") amended omnibus motion to dismiss ("Defs.' Mot."), ECF No. 64, as well as

Nominal Defendant Bed Bath and Beyond's ("BBBY's") motion for substitution as plaintiff and

to stay consideration of the amended omnibus motion to dismiss ("BBBY's Mot."), ECF No. 82.

For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss and

**DENIES** BBBY's motion for substitution as the real party in interest and to stay consideration of

the motion to dismiss.

## BACKGROUND

Plaintiffs Todd Augenbaum and Judith Cohen bring suit under Section 16(b) of the

Securities Exchange Act, which "requires corporate insiders, including owners of more than ten

percent of a company's stock [and directors], to disgorge what are colloquially known as short-

swing profits, i.e., any profits made from buying and selling or selling and buying within a six-

month period a security based on that company's stock." *Klein on behalf of Qlik Techs., Inc. v.*

*Qlik Techs., Inc.*, 906 F.3d 215, 219 (2d Cir. 2018).[1] "Suits under 16(b) can be brought by the

company that issues the relevant stock or, if the issuer shall fail or refuse to bring such suit

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses unless otherwise indicated. Any references to Rules are to the Federal Rules of Civil Procedure.

within sixty days after request or shall fail diligently to prosecute the same thereafter, by any

owner of any security of the issuer." *Id*.

Plaintiffs were shareholders of BBBY, a publicly traded company on the Nasdaq.

Augenbaum Compl. ¶¶ 2, 4, ECF No. 1; Cohen Am. Compl, ECF No. 28. ¶ 7.  Defendant Ryan

Cohen is the manager of Defendant RC Ventures ("RCV"), an investment company.

Augenbaum Compl. ¶ 3; Cohen Am. Compl. ¶ 9.  Plaintiffs allege that during a six-month

period, while Defendants beneficially owned 10% or more of BBBY's common stock and/or

were directors of BBBY, Defendants earned windfall short-swing profits "while other investors

in the Company's common stock . . . suffered a dramatic loss."  *See* Augenbaum Compl. ¶ 1;

Cohen Am. Compl. ¶ 1.

### A.  Cooperation Agreement

On or around March 24, 2022, BBBY and Defendant Cohen entered into a Cooperation

Agreement, pursuant to which Defendant Cohen would appoint three new members to BBBY's

board of directors ("the Board") while Defendants maintained ownership of at least 4.04% of

BBBY's then outstanding common stock.  Cohen Am. Compl. ¶¶ 30, 32; *see also* Hunter Decl.

Ex. B, ECF No. 85-2.  The Cooperation Agreement, which terminated according to its terms in

2023, forbade BBBY from "assist[ing] in any lawsuit, claim or proceeding" against Defendants.

*See* Hunter Decl. Ex. B §§ 2(a), 13, 14.

### B.  District and Bankruptcy Court Proceedings

On August 2 and September 9, 2022, Plaintiffs made separate litigation demands on the

Board.  Augenbaum Compl. ¶ 32; Cohen Am. Compl. Ex. A, ECF No. 28-1.  On October 21,

2022, BBBY declined Plaintiffs' request to file suit.  Augenbaum Compl. ¶ 33; Cohen Am.

Compl. Ex. B, ECF No. 28-2; Slocum Decl. Ex. 7, ECF No. 66-8.  On October 31, 2022, and

November 15, 2022, Plaintiffs filed separate suits as owners of BBBY securities against

2

Defendants.  *See* Augenbaum Compl.; Cohen Compl., ECF No. 1, *Cohen v. Cohen*, 22 Civ.

9733.  On December 12, 2022, the Court ordered the consolidation of Plaintiffs' suits against

BBBY.  *See* Order, ECF No. 20.

On April 25, 2023, while the District Court proceedings were ongoing, BBBY and its

affiliates filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of New Jersey

and subsequently filed a Suggestion of Bankruptcy on this docket.  *See generally* Bankr. Notice,

ECF No. 50.  The filing notified the parties that Section 362(a) of the Bankruptcy Code operates

as an automatic stay of, *inter alia*, judicial proceedings against the debtor—including those

commenced before the Bankruptcy Court case was filed, *see id.* at 2—and that "any action taken

against [BBBY and certain of its affiliates ("the Debtors," or "Wind-Down Debtors")] without

obtaining from the Bankruptcy Court relief from the automatic stay may be void *ab initio*."  *Id.*

On April 27, 2023, Plaintiff Augenbaum filed a response in this Court to the suggestion

of bankruptcy, arguing that "the Bankruptcy Code's automatic stay provision is not applicable"

in this case.  ECF No. 51 at 1.[2]  Plaintiff Cohen joined that response one week later.  ECF No. 53

at 1.  Plaintiffs never filed a formal motion seeking relief from the Plan's automatic stay nor took

any other substantial action to protect their Section 16(b) rights in the Bankruptcy Court.

On September 14, 2023, BBBY's Chapter 11 Plan ("the Plan" or "Bankruptcy Plan") was

confirmed, with an effective date of September 29, 2023.  Hunter Decl. Ex. A at 1-3, ECF No.

85-1; *id.* at Ex. F at 2, ECF No. 85-2.  The Bankruptcy Plan held that each share of stock in

BBBY was "canceled, released, and extinguished, and w[ould] be of no further force or effect

and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the

Plan on account of such Interests."  *Id.* at 102-03.  It provided that "all property of the Estates

---

[2] This number reflects the ECF page number.

3

shall vest in the Wind-Down Debtors, free and clear of all Liens, Claims, charges, or other

encumbrances." Hunter Decl. Ex. A at ¶ 74. It further provided that "all Causes of Action shall

automatically vest in the Wind-Down Debtors," and appointed the Plan Administrator to be "the

sole representative of, and [to] act for, the Wind-Down Debtors." *Id.* ¶¶ 95, 126.

Under the Plan, BBBY and the Plan Administrator were granted the right to "*exclusively*

enforce any and all Causes of Action" and were deemed to have "the *exclusive* right, authority,

and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise,

release, withdraw, or litigate to judgment" the same. *Id.* at 111 (emphases added). The Plan

effected the "complete settlement, compromise, and release, effective as of the Effective Date, of

Claims, Interests, and Causes of Action of any nature whatsoever" against "the Debtors or any of

their assets or properties." *Id.* at 127. The Plan defined a "Claim" as a claim under Section

101(5) of the Bankruptcy Code, as well as "any Cause of Action or liability asserted against a

Debtor." *Id.* at 84. It defined "Causes of Action" to include any "controversy, demand, right,"

or "suit," whether "assertable directly or derivatively." *Id.* at 83. In bold letters, the Plan

decreed that holders of these Claims and Causes of Action were "**permanently enjoined and**

**precluded**" from "**commencing or continuing in any manner any action or other proceeding**

**of any kind on account of or in connection with or with respect to any such Claims,**

**Interests, Causes of Action or liabilities discharged, released, exculpated, or settled**

**pursuant to the Plan.**" *Id.* at 57, 132.

On October 10, 2023, Defendants sought leave to file a Rule 12(b)(1) motion to dismiss,

citing the cancellation of Plaintiffs' stock pursuant to the Bankruptcy Plan. Oct. 6, 2023 Letter 1,

ECF No. 58. The Court granted Defendants leave to file an amended omnibus motion to dismiss

under Rules 12(b)(1) and 12(b)(6) and stayed discovery pending resolution of the motion. Oct.

25, 2023 Order, ECF No. 61.

4

On November 6, 2023, this case was reassigned to the undersigned. *See* Notice of

Reassignment, ECF No. 62. On November 8, 2023, Defendants filed an amended omnibus

motion to dismiss. ECF No. 64. On November 22, 2023, counsel for BBBY, which Plaintiffs

had named as a nominal defendant, appeared. *See* ECF No. 70. On December 6, 2023, BBBY

filed a Rule 17(a)(3) Motion, seeking to substitute itself as the plaintiff in place of the existing

Plaintiffs. ECF No. 82. Both motions are fully briefed before the Court.

### C. Plaintiffs' Post-Bankruptcy Plan Purchases

Sixth Street Specialty Lending, Inc. ("Sixth Street"), a publicly traded company,

acquired BBBY's debt as a creditor. *See* Oct. 6, 2023 Pre-Motion Letter Ex. 1, ECF No. 58-1.

At some point thereafter, in or around October 2023, Plaintiffs acquired equity in Sixth Street.

*See* Oct. 12, 2023 Letters, ECF Nos. 59, 60; *see also* Abraham Decl., Ex. J, ECF No. 74-3

(providing proof of Plaintiff Augenbaum's purchase of Sixth Street equity); Squitieri Decl. Ex.

A, ECF No. 76-1 (providing proof of Plaintiff Cohen's purchase of same).

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v.

Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). "A case is moot, and

accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a

legally cognizable interest in the outcome" because they no longer "have a personal stake in the

litigation." *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). In

other words, Courts may "only entertain complaints from a complainant with a concrete stake—

and not just a 'keen interest'—in the outcome of the litigation." *Klein*, 906 F.3d at 220 (citing

*Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013)).

Rule 17 provides that a court "may not dismiss an action for failure to prosecute in the

name of the real party in interest until, after an objection, a reasonable time has been allowed for

the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

"[T]here plainly should be no dismissal where substitution of the real party in interest is

necessary to avoid injustice." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11,

20 (2d Cir. 1997) (citing Fed. R. Civ. P. 15 Advisory Committee Notes (1966)). By its terms,

the rule allows a motion to be denied as untimely if the movant fails to file within "a reasonable

time" after a standing objection is raised. *NCUA Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 256

(2d Cir. 2018). Otherwise, Rule 17(a) motions "should be liberally allowed when the change is

*merely formal* and in *no way alters* the original complaint's factual allegations as to the events or

the participants." *Advanced Magnetics*, 106 F.3d at 20 (emphases added); *see also Klein*, 906

F.3d at 218 ("Rule 17(a)(3) allows substitution of the real party in interest so long as doing so

does not change the substance of the action and does not reflect bad faith from the plaintiffs or

unfairness to the defendants.").

## DISCUSSION

The Court determines that Plaintiffs' claims have become moot. Pursuant to its

"constitutional power to substitute a real party in interest to avoid mooting [the] case," the Court

then considers BBBY's motion for substitution. *See Klein*, 906 F.3d at 219, 226. For the

reasons discussed herein, that motion is denied. Accordingly, this case is dismissed.

### A. Plaintiffs' Claims are Moot

"Federal courts have no constitutional power to consider a moot case, which does not

present a live controversy . . . . We thus have a duty to consider mootness *nostra sponte*." *Nat'l*

*Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013). There is no longer a case or

controversy in a Section 16(b) case where the party bringing suit fails to maintain "some

*continuing* financial interest in the outcome of the litigation."  *See Gollust v. Mendell*, 501 U.S. 115, 123, 126 (1991) (emphasis added); *see also Klein*, 906 F.3d at 218 (holding that a plaintiff's claim was moot where it lost "any financial interest in the litigation.").  Plaintiffs had standing as BBBY shareholders at this suit's commencement.  But as explained below, their Section 16(b) action became moot following confirmation of BBBY's Bankruptcy Plan.

The confirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan." 11 U.S.C. § 1141(a); *see also Celli v. First Nat'l Bank (In re Layo)*, 460 F.3d 289, 293 (2d Cir. 2006).  "[A] confirmed plan holds the status of a binding contract between the debtor and its creditors," or investors, which courts outside bankruptcy are not at liberty to alter.  *See In re Victory Mkts.*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998).  As with any contract, a bankruptcy plan must be interpreted according to its plain terms, which control if unambiguous.  *See id.*  ("Where the language of the plan is unequivocal, therefore, a Court must adopt the plain and natural meaning only of the words contained within the text of the instrument itself.").

Here, the plain language of the Bankruptcy Plan states that all shares in BBBY were "canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the Plan on Account of such Interests" as of the effective date, September 29, 2023.  Slocum Decl. Ex. 8 at 102-03.  The Plan effected a "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against the debtors or their property.  Hunter Decl. Ex. A at 127.  And it decrees that the holders of claims, interests, and causes of action against BBBY are "permanently enjoined and precluded" from "commencing or continuing in any manner any action or other proceeding of any kind on

account of or in connection with or with respect to any such Claims, Interests, Causes of Action
or liabilities discharged, released, exculpated, or settled pursuant to the Plan." *Id.* at 131.

In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy
Plan, Plaintiffs fail to establish "some continuing financial interest in the outcome of this
litigation." *Gollust*, 501 U.S. at 126. *See also Klein*, 906 F.3d at 218 (after the accused company
"was bought out in an all-cash merger," the shareholder—who did not receive any stock in the
surviving corporation—"los[t] any financial interest in the litigation."). Accordingly, the Court
concludes that intervening circumstances—BBBY's bankruptcy and the effectuation of the
Plan—have rendered Plaintiffs' claims moot. *See id.* at 221 (holding that cases become moot "if
an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the
lawsuit, *at any point* during litigation after its initiation.") (emphasis added).

Plaintiffs do not dispute that their BBBY common stock has been canceled and is of no
further force and effect. *See generally* Augenbaum's Mem. in Opp'n of Mot. to Dismiss
("Augenbaum Opp'n"), ECF No. 73; Cohen's Mem. in Opp'n of Mot. to Dismiss ("Cohen
Opp'n"), ECF No. 75. Instead, Plaintiffs offer four theories to attempt to establish their
"continuing financial interest" in this suit. As discussed below, each fails.

First, Plaintiffs argue that a purchase of stock in Sixth Street, a BBBY creditor,
constitutes a continuing financial interest in this suit's outcome sufficient to overcome mootness.
*See* Cohen Opp'n 16; Augenbaum Opp'n 22-23. The Court adopts the reasoning in *In re
WorldCom, Inc.*, 351 B.R. 130 (Bankr. S.D.N.Y. 2006), which considered and rejected the same
argument. There, the court held that the plaintiff lost standing to bring a derivative claim where,
as here, his shares in a company were "canceled" and he would "receive no distributions" under
the company's reorganization plan. *Id*. at 134-35. The plaintiff could not thereafter revive his
standing by independently acquiring an interest in a surviving company that merged with the

reorganized debtor, because that interest did not "flow from [his] former interest as a shareholder" of the debtor. *Id.* at 135. Here, Plaintiffs have similarly failed to establish that their purchase of stock in BBBY's creditor, Sixth Street, "flow[ed] from [Plaintiffs'] former interest as [] shareholder[s]" of BBBY, and the Court therefore concludes that Plaintiffs' equity in Sixth Street is not a continuing financial interest under Section 16(b) sufficient to overcome mootness. *Id.*

Plaintiffs' reliance on *Gollust* is unavailing. As Plaintiff Augenbaum concedes, "the Supreme Court [in *Gollust*] was not called upon to address" whether a plaintiff could maintain a financial interest in a suit by buying the stock of a creditor. *See* Augenbaum Opp'n at 22-23. In *Gollust*, the Supreme Court held only that "a plaintiff, who properly instituted a § 16(b) action as the owner of a security of the issuer, may continue to prosecute the action after his interest in the issuer is *exchanged* in a merger for stock in the issuer's new *corporate parent*." 501 U.S. at 118 (emphasis added); *see also id.* at 127-28. Here, by contrast, Plaintiffs have an interest in BBBY's creditor (rather than in its acquirer), which they obtained via an unrelated transaction (rather than through an exchange of stock). The Court is aware of no case that stands for the proposition that a plaintiff may overcome mootness by independently buying stock in a creditor of an entity after the plaintiff's equity in the entity was extinguished.

Second, Plaintiffs argue that their statutory interest under 15 U.S.C. § 78u-4(a)(4) in a potential incentive reward for service as a class representative constitutes a continuing financial interest in this case. Neither of the two class action suits on which they rely—*Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021), and *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012), s*ee* Augenbaum Opp'n 23-24; Cohen Opp'n 18—supports their position. *Jin* was a putative class action under the New York Labor Law concerning whether a plaintiff who prevails on his individual claims retained a continuing interest in the litigation sufficient to

have standing to appeal the district court's decision decertifying the class.  *See* 990 F.3d at 254.

There, the Second Circuit hypothesized without deciding that the plaintiff may have "retained

some economic interest" to appeal via a "potential incentive award for his service as class

representative," had he raised the claim.  *Id.* at 259 n.12.  *Espenscheid* was also a labor law case;

there, the Seventh Circuit held that the plaintiffs, despite settling their individual claims, retained

a sufficient interest in the case to appeal the decertification of their class because they had

reserved the right to seek an incentive award as class representatives if they succeeded on appeal.

688 F.3d at 874.  Neither of these cases is a Section 16(b) case, and neither stands for the

proposition that a potential incentive award under 15 U.S.C. § 78u-4(a)(4) constitutes a sufficient

financial interest in the outcome of a Section 16(b) suit to overcome mootness due to the

extinguishment of a plaintiff's interest in the issuer.[3]

Relatedly, Plaintiff Cohen argues that her statutory right to attorney's fees constitutes a

continuing financial interest in a Section 16(b) suit.  Cohen Opp'n 17.[4]  The Court is aware of no

caselaw in support of that proposition.  Plaintiff Cohen cites *Smolowe v. Delendo Corp.*, 136

F.2d 231 (2d Cir. 1943), which says nothing about whether a party's statutory right to attorney's

fees constitutes a continuing financial interest to maintain a Section 16(b) suit and instead dealt

"solely" with "the construction and constitutionality of Sec[tion] 16(b)," *id.* at 234.  Ultimately,

Plaintiffs' claims for attorney's fees, expenses, and incentive awards are contingent claims

against BBBY's estate within the meaning of the Bankruptcy Code and the Plan.  *See* 11 U.S.C.

---

[3] The Court also notes that it is unclear how Plaintiffs (or any other former BBBY shareholders) could continue to serve as representative plaintiffs, given the extinguishment of all BBBY shares under the Plan.

[4] Plaintiff Cohen appears to argue in the alternative that she is only required to demonstrate that she was a holder of the corporation's security at the time the action was instituted.  *See* Cohen Opp'n 17, ECF No. 75.  While this no doubt establishes standing under Section 16(b), it is, as discussed herein, insufficient to overcome mootness.

Case 23-13359-VFP   Doc 3432   Filed 07/24/24   Entered 07/24/24 15:37:50   Desc Main
Document      Page 45 of 48

§ 101(5)(A) (defining a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); Hunter Decl. Ex. A at 84 (defining a "Claim" as, among other things, "a claim, as defined in section 101(5) of the Bankruptcy Code"). The Plan extinguished those claims, as discussed above.

Finally, Plaintiff Augenbaum argues, without citation to any authority, that "[e]ven if he were not entitled to an incentive award, Plaintiff's loss of the value of BBBY Common Stock, which he held through cancellation to create a common fund, should be a reimbursable expense from any judgment or settlement obtained, which also gives Plaintiff a continuing financial interest in this Action." Augenbaum Opp'n 23-24. It is not clear to the Court how such an attenuated relationship to the action would confer a continued financial stake in this litigation's outcome, and the Court is unaware of any caselaw supporting this claim.

A Section 16(b) claim cannot be maintained by plaintiffs who have been "divested of any interest in the outcome of the litigation." *Gollust*, 501 U.S. at 124. That is the situation here, as BBBY's Bankruptcy Plan canceled Plaintiffs' stock in BBBY. As discussed, Plaintiffs' alternative theories purporting to establish their continuing financial interest in this suit fail. Accordingly, their claims have become moot.

## B. BBBY's Motion is Denied

Ordinarily, when a case becomes moot, a district court no longer has subject matter jurisdiction and must dismiss the case. *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). However, "[a] district court determining whether a case has become moot maintains jurisdiction to determine whether a substitute plaintiff would avoid that result." *Klein*, 906 F.3d at 218. As discussed, "Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from

11

the plaintiffs or unfairness to the defendants," *id.*, and "where substitution of the real party in

interest is necessary to avoid injustice." *Advanced Magnetics*, 106 F.3d at 20.

On the record before the Court, BBBY has not established that these factors weigh in its

favor. The Court has no way of ascertaining whether BBBY's substitution would "change the

substance of the action," because BBBY filed its motion for substitution without attaching any

proposed amended complaint. *See Klein*, 906 F.3d at 218. BBBY represents in its briefing that

its substitution would be "merely formal" because it "intends to pursue the same Section 16(b)

claim against the same defendants." BBBY's Mot. 13. Whether it seeks to pursue the same

claim is not, however, the end of the Court's analysis. The Court must also determine whether

the change in party in any way "alters the original complaint's factual allegations as to the events

or the participants." *Advanced Magnetics*, 106 F.3d at 20. BBBY notably declines to state

whether it seeks to alter the facts on which this case is brought. Instead, it holds out the

possibility that it might, stating that upon its substitution, "it will seek leave to file an amended

complaint," without specifying how the amended complaint might differ from the operative ones

in this case. BBBY's Mot. 13 n.5. BBBY cannot have it both ways: it cannot claim that its

substitution as plaintiff "is a merely formal change in the alignment of the parties" while

representing that it seeks to amend its pleadings in a manner it declines to specify. *Id.* at 13.

"Even if [BBBY's] proposed substitution m[et] [Rule 17] requirements, it should be

denied if it is being proposed in bad faith." *Klein*, 906 F.3d at 226. "[A] party's failure to

submit a proposed amended complaint or a new pleading demonstrates a lack of good faith."

*Gulley v. Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010); *see also State Trading Corp. of India

Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (imputing a lack of good

faith to plaintiff in part because plaintiff "did not file a proposed amended complaint" when it

sought leave to amend); *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1197 (7th Cir. 1985)

12

(noting that "the normal procedure is for the proposed amendment or new pleading to be submitted" with the motion for leave to amend, and that failure to do so "indicates a lack of diligence and good faith").  The Court cannot conclude that BBBY has acted in good faith here, where BBBY claims both that its substitution would be "merely formal," *Advanced Magnetics*, 106 F.3d at 20, while representing that it will seek leave to amend its pleadings in an unspecified manner.

Finally, the Court cannot conclude that granting substitution is "necessary to avoid injustice" here, where nothing would preclude BBBY from filing its own complaint.  *See Klein*, 906 F.3d at 226.  The limitations period for a Section 16(b) claim is "two years after the date such profit was realized."  15 U.S.C. §78p(b).  Here, Defendants are alleged to have realized short-swing profits on or around August 16, 2022, less than two years ago.  BBBY may, therefore, avoid any theoretical prejudice to its economic interest by filing its own timely Section 16(b) action.

## CONCLUSION

For the reasons given herein, the Court concludes that Plaintiffs' claims are moot and grants Defendants' motion to dismiss.  The Court also denies BBBY's motion for substitution and to stay consideration of the motion to dismiss.[5]

The Clerk of Court is respectfully directed to terminate ECF Nos. 64 and 82 and to close the case.

SO ORDERED.

---

[5] In light of the Court's determination on mootness, and its denial of the motion for substitution, the Court declines to address the Rule 12(b)(6) arguments raised by Defendants.  *See* Defs.' Mem. of L. in Supp. of Am. Omnibus Mot. to Dismiss 15-27, ECF No. 65.

Dated:  June 11, 2024
        New York, New York

DALE E. HO
United States District Judge

14