**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF BRADFORD J. SANDLER IN SUPPORT OF**
**THE PLAN ADMINISTRATOR'S MOTION FOR SANCTIONS**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011**

Pursuant to 28 U.S.C. § 1746, I, Bradford J. Sandler, under penalty of perjury,

declare as follows:

1.      I am a partner in the law firm of Pachulski Stang Ziehl & Jones LLP,

counsel to the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

1

Inc.)[2] and 73 affiliated debtors (the "Debtors"). I give this declaration in support of the *Plan Administrator's Motion for Sanctions Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure* (the "9011 Motion"). Pursuant to the 9011 Motion, the Plan Administrator moves this Court for entry of an order imposing sanctions (the "Sanctions") on the unidentified individual purported to be a former shareholder of Bed Bath & Beyond (the "Former Shareholder") in an amount equal to the legal and financial fees and costs (including collection costs) incurred by the Plan Administrator in responding to Former Shareholder's frivolous and legally deficient *Motion for the Appointment of an Official Committee of Equity Security Holders* (the "Former Shareholder Motion").

2.      On or about April 23, 2024, Former Shareholder requested the appointment of an equity committee by letter to the Court. *See Notice of Receipt of Letter Requesting Relief* [Doc. No. 2991].

3.      On or about June 5, 2024, more than eight (8) months after the Effective Date of the Plan, Former Shareholder filed a formal request for the appointment of an equity committee by submitting a version of the Former Shareholder Motion to the Court under seal with a request for redaction of his personal identifying information because, he alleged, "I believe giving Mr. Sandler this information – as the lead counsel for BOTH the Plan Administrator, as well as the UCC – ***will be putting my family in danger.***" *See* email from Former Shareholder to the Honorable Vincent F. Papalia dated June 11, 2024.

4.      On June 10, 2024, the Court held a scheduling hearing on the Former Shareholder Motion. *See* Transcript of June 10 Hearing [Doc. No. 3317] (the "June 10

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

Transcript"). At the hearing, I indicated that the Plan Administrator would seek sanctions if the matter were to move forward:

> Your Honor, this is really adding up the administrative expenses to the case. Frankly, we view it as being frivolous. If we have to get into the merits, we certainly will. We reserve all rights for sanctions for somebody who is filing a paper that is, in our opinion, so late that it arises to the level of being egregious and for the purposes of harassment.

June 10 Transcript at 11, lines 2-7.

> Just one last point because I want to be very clear about something. Obviously, as ML1 is proceeding, it is highly unusual. Arguably, it's contrary to the rules. But I want to be very, very clear that from the plan administrator's perspective, we view this as being not only egregious but certainly frivolous. And we reserve all rights under 9011, including rights to seek all types of reimbursement of attorneys fees and other expenses that the estates incur or are charged with by any motion that is filed by ML1.

*Id*. at 19, lines 19-25 – 20, lines 1-3.

5.    In addition, I argued that it would violate due process and amount to sanctionable conduct under Federal Rules of Bankruptcy Procedure if Former Shareholder did not identify himself to the Plan Administrator:

> And, Your Honor, I'm not sure how we actually go forward without knowing the identity of ML1. We don't understand who it is. We don't know his bias. We don't know anything about ML1's background. It is creating, really, a situation, Your Honor, that, frankly, challenges effective due process for the other parties. And, Your Honor, I think that based on certainly Rule 9011, I think that if ML1 wants to come forward, just like, frankly, the other 19,000 claimants in this case who have filed proofs of claim or have been listed as claimants, [he] can come forward. And there have been some shareholders that have come forward. This is not the only shareholder that has popped up in this case. Of course, the shareholders, after the plan was confirmed, and under Class 9, their equity was canceled. We haven't really heard from the shareholders, at least not actively in Court. But, Your Honor, we think that, at this point, if ML1 wants to proceed, both under due process, under the Federal Rules of Bankruptcy Procedure, and just like the thousands of other folks who have participated in these proceedings, without exaggeration, I can even say tens of thousands of people, ML1 should also come forward and identify him or herself.

June 10 Transcript at 11, lines 8-25 – 12, lines 1 – 4.

6.      The Court made it quite clear during the course of the hearing that Former

Shareholder **must provide his name** to counsel to the Plan Administrator:

> The Court: So, I was asking Ms. Geier, I believe, if she had any other comments
> or questions about the procedure that I outlined, which was essentially that ***Mr.
> ML discloses his name***, address, email, and phone number to the parties on this
> call, other than, Mr. Kurzon.

June 10 Transcript at 28, lines 6-11 (emphasis added).

> The Court: . . . . I ruled provisionally or temporarily on your redaction request by
> saying that the papers can be filed with your personal identifying information
> omitted, but they got to be provided to Mr. Sandler, Ms. Steele and Ms. Geier
> without the redactions. And they agreed to keep it confidential until you agree
> otherwise or the Court orders otherwise.

*Id*. at 33, lines 8-14.

7.      On June 12, 2024, the Court issued its *Order Establishing Procedures*

*Relating to Shareholder's Motions for Redaction of Certain Information and Appointment of*

*Equity Security Committee* [Doc. No. 3314] (the "Scheduling Order"), which provides:

> The Shareholder, within two (2) business days of entry of this Order, shall: (i) file
> with this Court a copy of the Motions with his personal identifying information
> redacted and replaced with the information contained in paragraph two (2) of this
> Order and (ii) serve copies of the Motions (***without any redactions***) on counsel
> for the Plan Administrator (Bradford J. Sandler, Esq.), counsel for the Former
> Debtors (Emily E. Geier, Esq.) and counsel for the Office of the United States
> Trustee (Fran B. Steele, Esq.), each by electronic mail.

Scheduling Order, ¶ 1 (emphasis added).

8.      The Scheduling Order also set the following dates: opposition due: June

24, 2024; reply due: June 28, 2024; hearing: July 9, 2024 at 2:30 p.m.

9.      On June 14, 2024, Former Shareholder emailed a version of his moving

papers to me in which he still failed to disclose his name, identifying himself only as "Bed Bath

and Beyond Shareholder".

10.      On June 24, 2024, the Plan Administrator filed his *Opposition* to the

Former Shareholder Motion [Doc. No. 3332] (the "Opposition").[3]  The OUST also filed an

opposition [Doc. No. 3331].

11.      On June 24, 2024, I caused a copy of the *Opposition* to be served on

Former Shareholder under the pseudonym "Bed Bath and Beyond Shareholder" via email at the

email address he provided in his June 14, 2024 moving papers and via first class mail to at the

private mail box address he provided in his June 14, 2024 moving papers. I have not filed a

certificate of service on the docket out of an abundance of caution given the confidentiality

provisions in ¶ 4 of the Scheduling Order. (*nb:* "Counsel for the Plan Administrator, the Former

Debtors, and the Office of the United States Trustee shall maintain as confidential and not

disclose to any third parties the personal identifying information of the Shareholder, who

identified himself as M.L1 at the June 10th conference, subject to further Order of this Court. It

is the intention of this Court that all the confidentiality provisions of this Order be considered

provisional and subject to modification, in whole or in part, and further proceedings before this

Court, as described in this Order.").

12.      On June 25, 2024, I caused a draft copy of the Sanctions Motion to be

served via email, overnight delivery, and first class mail on Former Shareholder in accordance

with Federal Rule of Bankruptcy Procedure 9011(c)(1)(A), along with a request that Former

Shareholder withdraw the Former Shareholder Motion. A true and correct copy of my June 25,

2024 letter and draft 9011 Motion are attached to this declaration as Exhibit A.  Thirty days

---

[3] As of the service of the Opposition, there was no docket number for the Former Shareholder Motion. The Plan
Administrator responded to the version of the Former Shareholder motion that was emailed to his counsel on June
14, 2024, In which the Former Shareholder still failed to disclose his name.

have passed since we served the draft 9011 Motion on Former Shareholder, and he has not

withdrawn the Former Shareholder Motion.

13.    On June 28, 2024, Former Shareholder emailed the Court and counsel to

the Plan Administrator (among others) and requested additional time to submit his reply. The

Plan Administrator did not oppose the request. The Court granted the request and extended his

deadline to reply to the Opposition to Tuesday, July 9, 2024. The Court also took the hearing on

the motion off calendar temporarily.

14.    On July 7, 2024, Former Shareholder again emailed the Court and counsel

to the Plan Administrator (among others) and requested additional time to submit his reply.  On

July 9, 2024, the Plan Administrator opposed the request, noting, among other things:

> **Finally**, the Former Shareholder has failed to comply with this Court's directive
> in the Scheduling Order that the Former Shareholder "serve copies of the Motions
> (without any redactions) on counsel for the Plan Administrator[.]"[7] As of the date
> hereof, counsel for the Plan Administrator has yet to receive an unredacted
> version of the Motion and, as such, the Former Shareholder continues to proceed
> in anonymity—contrary to the principle of transparency that is fundamental to the
> bankruptcy process. The Former Shareholder should not be rewarded by receiving
> the Requested Additional Extension or any other additional extensions.

Letter to Honorable Vincent F. Papalia [Doc. No. 3345] at 3.

15.    The Court subsequently granted Former Shareholder's request and set the

following dates and deadlines: reply due: July 23, 2024; sur-reply due: August 2, 2024; hearing:

August 8, 2024 at 2:30 p.m. *See* July 10 email to Former Shareholder from Christy McDonald.

16.    The July 10 email also stated, "In Mr. Sandler's letter of July 9, 2024, he

stated that an unredacted version of the Motion was never sent to the Plan Administrator. To

address that concern, the **Court is instructing you to immediately send the Plan**

**Administrator, by electronic mail, a copy of the Motion without redaction of any personal**

**identifiers**." *Id.*

17.     To date, Former Shareholder has still not disclosed his name to counsel to the Plan Administrator, and there is no way for the Plan Administrator to confirm whether Former Shareholder is, in fact, a former shareholder.

18.     The Plan Administrator has incurred and will continue to incur substantial attorneys' fees and costs to respond to the Former Shareholder Motion, which have been (and will be) further increased by his insistence on concealing his identity from the Plan Administrator, in violation of the Court's June 12 Scheduling Order and the Court's July 10 email.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: July 24, 2024                    /s/ *Bradford J. Sandler*_____

**Exhibit A**
**June 25, 2024 Letter**

4895-4562-4786.2 08728.003



**PACHULSKI STANG ZIEHL & JONES**

Bradford J. Sandler                    June 25, 2024                    302.778.6424
bsandler@pszjlaw.com

**LOS ANGELES**
10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

**NEW YORK**
780 THIRD AVENUE, 34TH FL.
NEW YORK, NEW YORK 10017-2024
212.561.7700

**WILMINGTON**
919 NORTH MARKET STREET, 17TH FLOOR
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

**HOUSTON**
700 LOUISIANA STREET, STE. 4500
HOUSTON, TEXAS 77002
713.691.9385

**SAN FRANCISCO**
ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

**Via Email, Overnight Delivery and First Class Mail**

Bed Bath and Beyond Shareholder



Re:    **Bed Bath and Beyond**

Dear Sir:

Enclosed please find a draft version of the *Plan Administrator's Motion for Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 9011* (the "Draft Sanctions Motion"). The Draft Sanctions Motion has **NOT** been filed with the Bankruptcy Court; however, in accordance with Rule 9011(c) of the Federal Rules of Bankruptcy Procedure, the Plan Administrator intends to file it 21 days from the date of service if, for the reasons explained in the Draft Sanctions Motion, you do not withdraw your *Motion for Appointment of Official Committee of Equity Security Holders*.

Sincerely,

Bradford J. Sandler

BJS

4877-6540-7435.1 08728.003

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Robert J. Feinstein (admitted *pro hac vice*)<br>Bradford J. Sandler<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone:  (212) 561-7700<br>Facsimile:  (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | **DRAFT** |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>Hearing Date: **No Hearing Set**<br>. |

## PLAN ADMINISTRATOR'S MOTION FOR SANCTIONS
## PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011

Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, Michael Goldberg,

in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-

1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), moves this Court

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

1

for an order imposing sanctions (the "Sanctions") on the unidentified individual purported to be a

former shareholder of Bed Bath & Beyond (the "Former Shareholder") in an amount equal to the

legal and financial fees and costs (including collection costs) incurred by the Plan Administrator

in responding to Former Shareholder's frivolous and legally deficient *Motion for the*

*Appointment of an Official Committee of Equity Security Holders* (the "Former Shareholder

Motion").[3]  In support of his request for Sanctions, the Plan Administrator states as follows:

## I.    PRELIMINARY STATEMENT

1.    On September 14, 2023, this Court confirmed the Debtors' Amended Plan (which

is final and not subject to appeal), pursuant to which all equity interests ("Interests") in Bed Bath

& Beyond, Inc. ("BBB") were extinguished.[4] Now, over nine months later, an anonymous

individual who claims to be a former shareholder of BBB--a claim that cannot be verified

because he insists on secrecy and has not disclosed his identity to the Plan Administrator in

violation of the Court's Scheduling Order [Doc. 3314] —asks this Court, on the basis of

factually unsupported accusations, to appoint a committee of equity security holders for a

company that has no equity and to potentially unwind a plan that has already been confirmed and

substantially consummated and for which the time to object or appeal has long since passed.[5] Not

only should the Court deny the Former Shareholder Motion (which the Plan Administrator has

---

[3] As of the service of this Motion, there is no docket number for the Former Shareholder Motion. The Plan
Administrator is responding to the REDACTED version of the motion that was emailed to his counsel on June 14,
2024.

[4]    Capitalized terms that are not defined herein have the meanings given to them in the Plan.

[5] Aside from the due process issues with not knowing "who" filed the Former Shareholder Motion, for the purposes
of this Sanctions Motion, the Plan Administrator assumes *arguendo* that the Former Shareholder did, in fact, own
shares in BBB that were cancelled pursuant to the Amended Plan.

opposed),[6] but the Court should impose Sanctions on the Former Shareholder under Federal Rule

of Bankruptcy Procedure 9011 ("Bankruptcy Rule 9011") for filing and prosecuting such a

meritless motion.

2.    The main purpose of Bankruptcy Rule 9011 "is to deter frivolous claims and curb

abuses of the legal system, thereby speeding up and reducing the costs of litigation." *Binghamton*

*Masonic Temple v. Bares,* 168 F.R.D. 121, 126 (N.D.N.Y. 1996).[7]  The rule is intended to

"discourage pleadings that are frivolous, legally unreasonable, or without factual foundation,

even though the paper was not filed in subjective bad faith." *Aphton Corp. v. Sonafi Pasteur (In*

*re Aphton Corp.)*, 423 B.R. 76, 96 (Bankr. D. DE. 2010). It applies to all individuals who sign

pleadings, *pro se* litigants and attorneys alike.[8]

3.    The motion field by Former Shareholder is precisely the sort of abuse of process

Bankruptcy Rule 9011 is designed to deter. Former Shareholder had a full and fair opportunity to

participate in the chapter 11 cases and chose not to do so. Now, long after the time to seek the

appointment of an equity committee, object to confirmation, appeal from the confirmation order

and seek a revocation order has passed, he comes to Court with a pleading full of

unsubstantiated, salacious accusations, cites zero supporting case law and, to top it off, refuses to

---

[6] On June 24, 2024, the Plan Administrator filed and served his *Opposition to Former and Canceled Shareholder's Motion for Redaction of Certain Information and Appointment of Post-Effective Date Equity Security Holders Committee* (the "Opposition") [Doc No. 3332]. The Opposition is incorporated herein by this reference.

[7] Bankruptcy Rule 9011 is the equivalent sanctions rule to Federal Rule of Civil Procedure 11 ("Rule 11"). *See e.g*., *Ettinger & Assocs,. v. Miller (In re Miller),* 730 F.3d 198, 204 n.4 (3d Cir. 2013). The terms "Rule 11" and "Bankruptcy Rule 9011" may be used interchangeably in this Motion.

[8] *Pro se* litigants are subject to Bankruptcy Rule 9011 sanctions and, like attorneys, are judged by an objective standard of reasonableness. *See Olick v. Kearney (In re Olick)*, 466 B.R. 680, 689 (E.D. Pa. 2011) ("[P]ro se litigants are subject to Bankruptcy Rule 9011 sanctions and, like attorneys, are judged by an objective standard of reasonableness, which is defined as 'an objective knowledge or belief that at the time of the filing of a challenged paper that the claim was well grounded in law and fact.'"). *Accord, In re Jones*, 632 B.R. 138, 147 (Bankr. S.D. Ohio 2021) ("Although *pro se* parties may be entitled to some leniency, ultimately *pro se* litigants are not exempted from the duties of Rule 9011, including the obligation to put forth nonfrivolous arguments.").

disclose his name to the representative of the estates. Former Shareholder, who has no financial interest in these cases as a result of the cancellation of all of the Interests in BBB, is causing these administratively insolvent estates to incur thousands of dollars in attorneys fees that could go to creditors who have actual skin in the game. Sanctions are appropriate to deter Former Shareholder, who has already indicated that he is going to file additional complaints, from this senseless yet damaging course of conduct.

4.      The Plan Administrator understands that Former Shareholder is not represented by counsel and is cognizant of the challenges that entails. The obligations imposed by Bankruptcy Rule 9011, however, apply to unrepresented parties as well as attorneys, and the fact that he is not represented by counsel does not excuse him from failing to comply with an order issued by this Court and disregarding the directive to provide his name to the Plan Administrator. It also does not excuse the extreme tardiness of filing a motion to appoint a committee for equity holders *9 months after* a Plan has been confirmed that extinguished all Interests. To comply with Rule 9011(b), the signing party (*pro se* or not) must conduct a "reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988).  Former Shareholder did neither.

5.      His request for the appointment of a committee of equity security holders cannot, and should not, be granted as a matter of law. Bankruptcy Code section 1102 does not authorize the appointment of an equity committee where there are no equity holders. Even assuming arguendo that Former Shareholder had sought the appointment of an equity committee pre-confirmation and prior to the cancellation of Interests, where, as here, equity has always been hopelessly out-of-the-money, one would not have been appointed. Furthermore, Former Shareholder no longer has standing to seek the appointment of an equity committee (or otherwise

participate in or be heard on any issue in these chapter 11 cases) because he is no longer even a

party in interest under Bankruptcy Code section 1109(b). Finally, Former Shareholder has not

made any allegation that would, or come anywhere near his burden of proof to, challenge the

validity or finality of the Confirmation Order to the extent that the unsupported "factual"

allegations in his motion could be construed as seeking relief under Bankruptcy Rule 9024.

6.      The Debtors' Amended Plan and Disclosure Statement fully disclosed that

Interests would be extinguished and that Holders of Interests (Class 9) would receive no

distributions or any other consideration on account of their Interests. Given that the anticipated

distributions to Holders of Allowed Class 6 General Unsecured Creditors were, at the time,

anticipated to be between 0 and 2.5 cents on the dollar to repay an estimated $1.8 billion to $2.4

billion of general unsecured claims[9] (though now, as the Plan Administrator has previously

testified, the estates are administratively insolvent),[10] the former shareholders in BBB, even if

their shares had not been canceled, which they were, could not have received any distributions or

other consideration consistent with the Absolute Priority Rule of the Bankruptcy Code.

7.      Former Shareholder did not move this Court or (to the Plan Administrator's

knowledge) ask the Office of the United States Trustee (the "OUST") to appoint an official

committee of equity security holders prior to confirmation or even prior to the Effective Date of

the Amended Plan. While other now-former shareholders in BBB filed plan objections, Former

---

[9] *See Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*
[Docket No. 1437], at p. 8 (listing a projected amount of claims to be $1.8 billion - $2.4 billion for general unsecured
creditors and a projected recovery under the plan of 0% - 2.5% for general unsecured creditors); *see also* Solicitation
Procedures Order [Docket No. 1716], at ¶¶ 2-3 (conditionally approving the Disclosure Statement as providing
Holders of Claims and Interest with sufficient notice).

[10] *See Declaration of Michael Goldberg in Support of the Motion for Entry of Order Extending Time to Object to
Claims* [Docket No. 2906], p. 24 ¶ 13 ("Absent a significant reduction in the asserted Administrative Claims and
meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is
unlikely that Allowed Administrative Claims will be paid in full.").

Shareholder did not.[11] While other now-former shareholders in BBB appealed from the

Confirmation Order, Former Shareholder did not.[12] While other now-former shareholders in

BBB sought an emergency stay of the Confirmation Order pending appeal, Former Shareholder

did not.[13] Former Shareholder, to the extent he is one, sat idly by lying in wait and now, nine

months later, is causing substantial harm to the actual creditors of BBB who are owed billions of

dollars by filing a frivolous motion that is not well grounded in law or fact.

8.      Former Shareholder seems to be under the misimpression that he still holds

equity, which he does not. He also seems to be under the misimpression that 9 months post-

confirmation, this Court can simply wave an imaginary magic wand and undo the Amended

Plan, reinstate the Interests, and appoint an equity committee to renegotiate a new plan that

provides a return to Interest Holders. He is plainly wrong. He cites no case law to support his

theories because none exists.  Rather, Former Shareholder has asked the Court for a "do-over" to

re-investigate the Debtors' assets and liabilities and to object to the Amended Plan because he

believes he has more and better information than the Debtors and their legal and financial

advisors (Kirkland & Ellis and Alix Partners), the Committee and its legal and financial advisors

(Pachulski Stang Ziehl & Jones and Alvarez &Marsal), the DIP Lender and its legal and

financial advisors (Proskauer Rose and M3 Partners), the United States Trustee, the hundreds of

---

[11] Numerous stakeholders filed objections to the Amended Plan, including two holders of common stock in BBB
[Doc. No. 2192] (the "Shareholder Objections").

[12] On September 29, 2023, the Objecting Shareholders appealed from the Confirmation Order [Docket No. 2305].
The appeal, which was docketed as *Neelay Das, et al v. Bed, Bath & Beyond, Inc., et al*, Civil Action No. 23-cv-20878
(D.N.J. 2023) was dismissed by the District Court by order dated May 7, 2024 [Doc. No. 3075] for failure to prosecute.

[13]   The Objecting Shareholders also subsequently filed (and the Court denied) the following: (i) *Motion for
Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* [Doc.No. 2450] and (ii)
*Emergency Motion for Stay and Associated Relief Pending Appeal Pursuant to Fed. R. Bank. P. 8013(d) and 8007*
[Doc. No. 2455].

creditors and shareholders who participated openly in the pre-confirmation proceedings, and the

Plan Administrator and his advisors (Pachulski among many others).

9.    The time to legitimately seek the appointment an equity committee has long

passed. Furthermore, all of the information that would have enabled him to conduct an

"investigation" was publicly available to him (and to other then-existing equity Interest Holders

as well as the creditors who are owed billions of dollars) free of charge pre-confirmation. All of

these national advisors have concluded, with evidence submitted to and admitted by the Court,

that the Debtors' estates were and are insolvent. Notably, with the tens of thousands of former

shareholders of BBB, none of them (to the knowledge of the Plan Administrator) sought the

appointment of an equity committee during the pre-confirmation stages of these cases. They did

not waste their time and energy on their unfortunate investment; they did not waste the time and

energy of the estates' numerous advisors; and they did not waste limited judicial resources of this

Court. The substantial widely available and public information of publicly traded BBB made

clear prior to the filing of these bankruptcy cases that the Debtors were insolvent; they are only

more so today.

10.    The Former Shareholder Motion isn't just a waste of time and the estate's money,

it is an abuse of process. There is no legal basis and no evidentiary support to justify the

appointment of a post-effective date equity committee or the cloak and dagger secrecy requested

by Former Shareholder, which is needlessly complicating matters and increasing the costs.

Accordingly, the Plan Administrator asks the Court to impose the requested Sanctions.

## II.    FACTS

### A.    The Bankruptcy Filings

11.    On April 23, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") before the United

States Bankruptcy Court for the District of New Jersey. The chapter 11 cases were procedurally consolidated and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Prior to confirmation, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party requested the appointment of a trustee or examiner.

12.    On May 5, 2023, the OUST for the District of New Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Unsecured Creditors' Committee"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 218].

**B.    The Plan Process**

13.    On July 21, 2023, the Debtors filed their motion [Doc.No. 1438] for conditional approval of the adequacy of the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 1437] (the"Disclosure Statement"), in order to commence solicitation of votes on the *Debtors' Joint Chapter 11 Plan* [Docket No. 1429] (as amended, the "Plan"), and to schedule a consolidated hearing to consider both the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan.

14.    On August 2, 2023, the Court entered an order [Doc. No. 1716] (the "Solicitation Procedures Order") that conditionally approved the Disclosure Statement, established procedures for soliciting votes for or against the Plan and deadlines for the filing of objections to both the Plan and the Disclosure Statement, and consolidated the hearing on final approval of the Disclosure Statement and confirmation of the Plan as permitted by section 105(d)(2)(B)(vi) of the Bankruptcy Code.

15.     As a part of the solicitation process, the Debtors served the *Notice of Non-Voting Status To Holders of Impaired Claims and Interests Deemed to Reject the Plan* on Class 9 Interest Holders which provided Interest Holders with notice of the Confirmation Hearing, and applicable objection deadlines, how to obtain free copies of the Plan and Disclosure Statement and how to opt-out of certain of the Releases (as defined below). *See* Solicitation Procedures Order (Exhibit 4B), at 184-193. Presumably Former Shareholder received actual notice of the Solicitation Procedures Order, though the Plan Administrator can not verify service because he will not disclose his name. In any event, the Debtors also provided notice of the Confirmation Hearing, and applicable voting and objection deadlines by publication in the New York Times. *See* Proof of Publication [Doc. No. 1856].

16.     As was noted above, numerous stakeholders filed objections to the Plan, including two holders of common stock in BBB [Doc. No. 2192] (the "Shareholder Objections").

17.     On September 11, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliat*es [Docket No. 2160] (the "Amended Plan"), and on September 12, 2023, the Court held a hearing on the final approval of the Disclosure Statement and confirmation of the Amended Plan.[14] The Court overruled, *inter alia*, the Shareholders Objections, and on September 14, 2023, the Court entered an Order confirming the Amended Plan [Doc. No. 2172] (the "Confirmation Order").

18.     The Amended Plan went effective on September 29, 2023, and, as more fully described below, the then-existing equity was canceled in accordance with the Amended Plan.[15]

---

[14] *See Transcript of Confirmation Hearing* [Doc. No. 2175].

[15] *See Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates and (II) Occurrence of Effective Date* [Docket No. 2311].

19.     On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving Claims, prosecuting Causes of Action, liquidating the Debtors' remaining Assets and making Distributions in accordance with the terms of the Amended Plan and the Plan Administrator Agreement. *See* Amended Plan, Article VII.  As is his mandate, the Plan Administrator and his professionals have spent the last nine months working to collect and liquidate estate Assets, investigate and prosecute Causes of Action, resolve and/or object to Administrative and Priority Claims and make distributions.

## C.     **The Equity Interests**

20.     Prior to the Petition Dates, the common stock in BBB was publicly traded on the NASDAQ. It was delisted on May 3, 2023.[16]

21.     Pursuant to the Amended Plan, however, all Interests in BBB -- including any previously owned by Former Shareholder -- were classified in Class 9. Amended Plan, Art. III.B.9(a) ("Class 9 consists of all Interests in BBB.").[17]  The Plan further provides, "Each Allowed Interest in BBB shall be canceled, released and extinguished, and will be of no further force and effect, and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests." *Id.*, Art. III.B.9(b). It also provides, "Class 9 is impaired. Holders of Interests in BBB are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan." *Id.*, Art. III.B.9(c); Confirmation Order, at ¶ 15 ("Holders of Interests in Class 9 and Class 10 (the "Deemed Rejecting Classes") are Impaired under the Plan and are entitled to no recovery under the Plan and are, therefore, deemed to have rejected the Plan.").

---

[16] Market Watch, "Nasdaq kicks off Bed Bath & Beyond delisting process," available at https://www.marketwatch.com/story/bed-bath-and-beyond-stock-set-for-nasdaq-delisting-at-market-open5b0e68e6.
[17] "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code." *See* Amended Plan, Art. I.A.87.

22.     The Amended Plan was and is clearly a liquidating plan that wipes out equity and does not provide for the issuance of new equity interests. Confirmation Order, at ¶ 27 ("The Plan does not provide for the issuance of new equity interests."). In sum, under the Amended Plan and the Confirmation Order, as of September 29, 2023: (a) All Interests in BBB -- including any previously owned by Former Shareholder -- were canceled. Confirmation Order, at ¶ 98. (b) Broad releases were granted by Creditors and Interest Holders who did not opt-out (with respect to third party releases)[18] in favor of, among others, the Debtors, the Creditors' Committee and their Professionals (the "Releases"). Confirmation Order, at ¶ 107.[19] (c) An injunction was issued (the "Plan Injunction") which permanently enjoined Former Shareholder and other former Interest Holders from, among other things, (a) "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such . . . Interests . . ."; (b) "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such  . . . Interests . . ." and/or (c) "commencing or continuing in any

---

[18] There is, of course, no way to know if Former Shareholder followed the procedure to "opt-out" of the third party releases because he continues to refuse to disclose his name to the Plan Administrator. In any event, whether or not the Former Shareholder followed the procedures to "opt-out" of any third-party release is irrelevant to the merits of his request to appoint an equity committee.

[19] Paragraph 107 of the Confirmation Order provides, "As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts . . .  the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement . . .the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims and Causes of Action related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan."

manner any action or other proceeding of any kind on account of or in connection with or with

respect to any such . . . Interests . . . discharged, released, exculpated, or settled pursuant to the

Plan." Confirmation Order, at ¶ 114. (d) All statutory committees were dissolved. Confirmation

Order, at ¶ 138.[20]

23.     Shortly after the Effective Date, on October 18, 2023, the CUSIP numbers

associated with the extinguished Interests, as well as the Debtors' other securities were

canceled.[21]

**D.     The Former Shareholder Motion**

24.     On or about April 23, 2024, Former Shareholder requested the appointment of an

equity committee by letter to the Court. *See Notice of Receipt of Letter Requesting Relief* [Doc.

No. 2991]. On or about June 5, 2024, Former Shareholder filed a formal request for the

appointment of an equity committee by submitting a version of the Former Shareholder Motion

to the Court under seal with a request for redaction of his personal identifying information

because, he alleges, "I believe giving Mr. Sandler this information – as the lead counsel for

BOTH the Plan Administrator, as well as the UCC – ***will be putting my family in danger.***" *See*

email from Former Shareholder to Judge Papalia dated June 11, 2024. The Court scheduled a

---

[20] "Dissolution of Statutory Committees. On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases."

[21] As the Plan Administrator has previously stated, "In order to effectuate the administrative cancellation of the CUSIP numbers associated with the BBB common stock, preferred stock and warrants, on October 18, 2023, counsel for the Debtors prepared on my behalf, Null, Void and Worthless Event Questionnaires (the "NVWQ") for each class of security. A true and correct copy of the NVWQ for Common Stock is attached hereto as Exhibit A, the NVWQ for Preferred Stock is attached hereto as Exhibit B, and the NVWQ for Warrants is attached hereto as Exhibit C. These Exhibits are incorporated herein for all purposes. Equiniti, BBB's transfer agent, submitted the three attached NVWQs to Depository Trust Corporation ("DTC") to complete the deletion process. I have been informed by DTC that the process has been completed and all CUSIP numbers for BBB common stock, preferred stock and warrants have been canceled." *See Declaration of Michael Goldberg in Support of Objections* to (i) the *Emergency Motion of Common Stock Equity Interest Holders For Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* and (ii) the *Emergency Motion of Common Stock Equity Interest Holders for Stay and Associated Relief Pending Appeal Pursuant to Fed. R. Bankr. P. 8013(d) and 8007* [Doc. No. 2631], at ¶ 7.

scheduling hearing [Doc. No. 3312], which counsel to the Plan Administrator attended on June

10, 2024. *See* Transcript of June 10 Hearing [Doc. No. 3317] (the "June 10 Transcript").

25.     On June 12, 2024, the Court issued its *Order Establishing Procedures Relating to*

*Shareholder's Motions for Redaction of Certain Information and Appointment of Equity Security*

*Committee* [Doc. No. 3314] (the "Scheduling Order"), which provides:

> The Shareholder, within two (2) business days of entry of this Order,
> shall: (i) file with this Court a copy of the Motions with his personal
> identifying information redacted and replaced with the information
> contained in paragraph two (2) of this Order and (ii) serve copies of
> the Motions (***without any redactions***) on counsel for the Plan
> Administrator (Bradford J. Sandler, Esq.), counsel for the Former
> Debtors (Emily E. Geier, Esq.) and counsel for the Office of the
> United States Trustee (Fran B. Steele, Esq.), each by electronic mail.

Scheduling Order, ¶ 1 (emphasis added).  On June 14, 2024, Former Shareholder emailed

REDACTED versions of his moving papers to counsel to the Plan Administrator in

which he still fails to disclose his name.

26.     On June 24, 2024, the Plan Administrator filed his *Opposition* to the Former

Shareholder Motion. The OUST also filed an Opposition [Doc. No. 3331].

27.     On June 25, 2024, in accordance with the safe harbor provisions of Federal Rule

of Bankruptcy Procedure 9011(c)(1)(A), the Plan Administrator served a draft copy of this

Motion on Former Shareholder *via* email, overnight delivery and first class mail with a request

that Former Shareholder withdraw the Former Shareholder Motion.  To date, Former

Shareholder has not withdrawn his motion.

### III.      BASIS FOR SANCTIONS

#### A.      The Standard Under Bankruptcy Rule 9011

28.      Bankruptcy Rule 9011embodies two requirements: (1) the signature requirement,[22] and (2) the representations requirement. The Plan Administrator understands that, while it has not been made available to him, that Former Shareholder signed the papers that were submitted under seal to the Court.[23] While this may satisfy the signature requirement, it, of course, does not address the due process concerns that arise from the fact that the Former Shareholder has refused to disclose his identity to the representative of the estates or the fact that Former Shareholder violated the Scheduling Order by failing to do so.

29.      With respect to the "representations requirement," Bankruptcy Rule 9011(b) provides:

> **(b) Representations to the court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]—
>
> > **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> > **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[22] Bankruptcy Rule 9011(a) provides, "Signature**.** Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Fed. R. Bankr. P. 9011(a).

[23] *See* June 10 Transcript, at 12, lines 13-17 ("The issue here is really the confidentiality. And as to that point, Mr. ML, I mean, the papers I have here that were, I guess, filed under seal do contain your signature and do contain other identifying information.")

(**3**) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(**4**) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

30.     Bankruptcy Rule 9011 is intended to discourage pleadings that are "'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'" *Lieb v. Topstone Indus. Inc*., 788 F.2d 151, 157 (3d Cir. 1986)(*quoting Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)).[24] The rule "requires litigants to 'stop-and-think' before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable  . . . ." Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment.  As the Court of Appeals for the Third Circuit has noted:

> The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to "stop, look, and listen." The signature of counsel on a pleading certifies that a reasonable investigation of the facts and a normally competent level of legal research support the presentation . . . . The pleader may not escape liability because he did not intend to bring about additional delay or expense. If reasonable preparatory steps would have avoided those consequences, sanctions are appropriate. "There is no room for a pure heart, empty head defense under Rule 11." Schwarzer, *Sanctions Under the New Federal Rule 11 -- A Closer Look*, 104 F.R.D. 181, 187 (1985).

---

[24] Sanctions under Bankruptcy Rule 9011 do not require a finding of bad faith. *In re Rivera*, 342 B.R. 435, 460 (Bankr. D.N.J. 2006) ("This court need not find 'bad faith' or a nefarious intent in order to conclude that Bankruptcy Rule 9011 representations were breached."), *aff'd Schwartz v. United States Tr. Office (In re Rivera)*, 2007 U.S. Dist. LEXIS 47345 (D.N.J. June 27, 2007). ("Even if not carried out for such an inappropriate purpose, a lack of reasonable investigation would nonetheless serve as a basis for the imposition of sanctions under Rule 11." *Bradgate Associates, Inc. v. Fellows, Read & Associates, Inc.,* 999 F.2d 745, 752-53 (3d Cir. 1993).

*Lieb v. Topstone Indus. Inc*., 788 F.2d at 157.

31.    The Former Shareholder Motion is both legally unreasonable and without factual foundation. Reasonableness is "'an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact.'" *In re Taylor*, 655 F.3d 274, 284 (3rd Cir. 2011) (*citing Ford Motor Co. v. Summit Motor Prods., Inc*., 930 F.2d 277, 289 (3d Cir. 1991).  Courts have identified five factors to consider in determining whether the signer conducted a reasonable investigation of the facts and law prior to signing the applicable pleading: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity for reliance on a client for the underlying factual information; (3) the plausibility of the legal position advocated; (4) whether the case was referred to the signer by another member of the Bar; and (5) the complexity of the legal and factual issues implicated. *See e.g., Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d at 95 (citing FED. R. CIV. P. 11 advisory committee note).  Applying the above factors, Sanctions are clearly warranted.

**B.    Factor 1: Former Shareholder had ample time to conduct his factual and legal investigation prior to confirmation and/or the Effective Date.**

32.    Former Shareholder submitted his moving papers 9 months after the Effective Date, and almost 14 months after the Petition Dates. He had ample opportunity to investigate the Debtors' Assets and Debts, review the Amended Plan and Disclosure Statement, object to Confirmation and/or ask the OUST or this Court to appoint an equity committee pre-confirmation, and yet he failed to do so. All of the pleadings, schedules, statements and operating reports are (and have been) publicly available on the Kroll site for these cases at https://restructuring.ra.kroll.com/bbby/Home-DocketInfo). Instead, he sat idly by despite *all* of the information that would have enabled him to conduct this "investigation" was publicly available to him (and to other then-existing equity Interest Holders) free of charge pre-

confirmation.  Given how much time he had to investigate and act before now, it is prejudicial to

the estates to have to respond to a frivolous motion that should have been brought months ago

(although as noted above would not be successful) and for which the crux of the relief requested

is untenable.[25] Former Shareholder's delay in both conducting his "investigation" and in bringing

the motion are unreasonable, prejudicial to the estates and weighs in favor of imposing

Sanctions.

### C.    Factor 2: Former Shareholder did not rely on a client for the facts underlying the Former Shareholder Motion.

33.    As he is representing himself, to the extent that the Former Shareholder Motion is

based on "facts," Former Shareholder did not have to rely on a client. He has relied on his own

"investigation," thoughts and interpretation for which he is held accountable under Bankruptcy

Rule 9011.

### D.    Factor 3: Former Shareholder's legal positions are entirely implausible.

34.    A legal position is unwarranted for Bankruptcy Rule 9011 purposes if it has no

chance of success under controlling precedent.  *See In re Jones*, 632 B.R. 138, 147 (Bankr. S.D.

Ohio 2021).  "Arguments for extensions, modifications, or reversals of existing law or for

creation of new law do not violate subdivision (b)(2) provided they are "nonfrivolous." This

establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification

for patently frivolous arguments." Fed. R. Civ. P. 11, advisory committee's note to 1993

amendment. As is set forth in detail below, each of Former Shareholder's legal positions has no

---

[25] On this basis, in the *Opposition*, the Plan Administrator asks for a finding that the Former Shareholder Motion is barred by the doctrine of laches. To raise a defense of laches, one must show "(1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense." *United States v. Koreh*, 59 F.3d 431, 445 (3d Cir. 1995); *see also EEOC v. A&P*, 735 F.2d 69, 80 (3d Cir. 1984) ("The elements of the equitable defense of laches are (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.").

chance of success. He does not even attempt to cite any law supporting his positions or to

support an argument in favor of an extension or modification of existing law. This factor weighs

heavily in favor of imposing Sanctions.

35.    _Former Shareholder's request for the appointment of an equity committee has no_

_chance for success under controlling precedent_. Bankruptcy Code section 1102(a) permits the

appointment of an additional committee of equity security holders only if necessary to assure the

adequate representation of equity security holders. _See_ 11 U.S.C. § 1102. "Appointment of an

additional Committee is an extraordinary remedy that courts are reluctant to grant." _In re_

_Residential Capital, LLC_, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012).  The movant has the

burden of proving that an additional committee is needed for adequate representation. _In re_

_Spansion, Inc._, 421 B.R. 151, 156 (Bankr. D. Del. 2009). The movant must show that:

> (i) there is a substantial likelihood that they will receive a
> meaningful distribution in the case under a strict application of the
> absolute priority rule, and (ii) they are unable to represent their
> interests in the bankruptcy case without an official committee. Exide
> Tech. v. State of Wisconsin Inv. Bd., 2002 U.S. Dist. LEXIS 27210,
> 2002 WL 32332000, *1 (D. Del. Dec. 23, 2002) . . . . The court's
> appointment of an additional committee is considered
> "extraordinary relief" and should be "the rare exception." Dana
> Corp., 344 B.R. at 38, Exide Tech., 2002 U.S. Dist. LEXIS 27210,
> 2002 WL 32332000 at *1.

_Id_. at 156 (refusing to appoint official committee of equity holders when scheduled assets were

less than liabilities because this indicated the corporation was insolvent).

36.    First and foremost, the Court cannot appoint a post-confirmation equity

committee to represent equity holders because there are _no_ equity holders to represent.  As the

Amended Plan and Confirmation Order make clear, all Interests (i.e., equity) were canceled

effective as of September 29, 2023.  _See_ Amended Plan, art. III.B.9(a); Confirmation Order, at ¶¶

15 and 27. There are simply _no_ holders of any equity interests in the Debtors that require

representation, and thus no one to assure adequate representation of. *See In re eToys, Inc.*, 331

B.R. 176, 186 (Bankr. D. Del. 2005) ("[Former shareholder] also seeks the appointment of an

equity committee and counsel to permit him to continue to investigate this case. The Court

concludes that such a request is not warranted. Though section 1102(a)(2) authorizes the Court to

order the appointment of additional committees of creditors or equity security holders, it may do

so only 'if necessary to assure adequate representation' of those parties. In this case there is no

necessity to appoint a committee for equity security holders because their interests have been

extinguished by the Debtors' Plan and they will receive nothing from the estate.").

37.    Moreover, even if the Court were to find that the non-existent equity security

holders were not adequately represented, the Court should not exercise its discretion to appoint

an equity committee at this stage in the Chapter 11 Cases. Former Shareholder's request to

appoint an equity committee is too late. *See In re eToys, Inc.*, 331 B.R. at 186 (denying request

for appointment of a post-confirmation equity committee and counsel "because it will provide no

benefit to the estate and is simply too late.")*; In re New Century TRS Holdings, Inc.*, No. 07-

10416, 2013 Bankr. LEXIS 4021, at *12-14 (Bankr. D. Del. Sept. 26, 2013) (denying a post-

confirmation motion for appointment of a borrower's committee "at this late stage in the

bankruptcy case"); *In re Kalvar Microfilm*, 195 B.R. 599, 601 (Bankr. D. Del. 1996) (denying a

motion to appoint an equity committee after the plan had been negotiated and filed, deciding that

the only remaining purpose of an equity committee would be to objection to confirmation and

litigate valuation issues).

38.    Additionally, the estates are administratively insolvent and do not have the

capacity for additional costs associated with the appointment of an equity committee—a

committee that will provide no benefit to the estates. Equity holders, such as Former

Shareholder, had the opportunity to participate in the chapter 11 proceedings (*see e.g.*, the

Shareholder Objections) but instead chose not to (most likely because they reviewed the publicly

available information and rationale concluded that equity was completely out of the money).  It

is simply too late and unbeneficial to appoint an equity committee at this point.[26] Even prior to

confirmation, the appointment of an equity committee would have been unwarranted because

equity was out of the money. *See In re Spansion, Inc.*, 421 B.R. at 156-57 ("[I]f equity holders

have no reasonable prospect of receiving a meaningful distribution, an equity committee could

serve no legitimate role in negotiating a plan. *See Williams*, 281 B.R. at 220 (If equity holders

have no economic interest left to protect, neither the debtors nor the creditors should have to bear

the expense of negotiating what would be, in essence, a 'gift' for the equity holders.) Therefore,

in weighing the cost of appointing an official committee of equity security holders against the

potential benefit of such a committee, a court should consider whether there is a substantial

likelihood that the equity security holders will receive a distribution.").

39.    *Former Shareholder is not a party in interest and cannot bring a motion to*

*appoint a committee under Bankruptcy Code sections 1102(a) and 1109.*  Former Shareholder

has no standing as a party in interest to even request the court to order the appointment of a

committee of equity security holders pursuant to section 1102(a), which only permits a "*party in*

*interest*" to request the appointment of an additional committee. Section 1109 of the Bankruptcy

Code provides, "(b) A party in interest, including the debtor, the trustee, a creditors' committee,

---

[26] Former Shareholder  argues that the Unsecured Creditors Committee did not adequately represent his interest as an equity holder. As the Court noted in the Confirmation Order, the U.S. Trustee appointed the Official Committee of Unsecured Creditors to represent the *interests of the unsecured creditors of the Debtors* in the Chapter 11 Cases." *Confirmation Order*, ¶ 5. Members of a creditors' committee have a fiduciary duty to the holders of the class of claims they represent. *In re ABC Automotive Prods. Corp.,* 210 B.R. 437 (Bankr. E.D. Pa. 1997). They must pursue their statutory function for the benefit of their constituency with an undivided loyalty.  *Johns-Manville Sales Corp. v. Doan* (*In re Johns-Manville Corp.*), 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983).

20

an equity security holders' committee, a creditor, an equity security holder, or any indenture

trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11

U.S.C. § 1109. Former Shareholder does not qualify under any of these specific categories.

While the definition of "party in interest" is broad, this term is limited to parties that have a

financial interest in the estate's assets or represent parties that do. *See Truck Insurance Exchange*

*v. Kaiser Gypsum Co.*, 602 U.S. ___ (2024) (analyzing section 1109 and noting that "[a]

common thread uniting the seven listed parties is that each may be directly affected by a

reorganization plan either because they have a financial interest in the estate's assets . . . or

because they represent parties that do . . . ."). Because Former Shareholder's Interests have been

canceled and extinguished, he no longer has a financial interest in these Chapter 11 Cases, and is

not a party in interest with standing to request the appointment of an additional committee.

40.     Such a finding would be consistent with the decision of the U.S. District Court for

the Southern District of New York in *In re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No.

22 Civ. 9327 (the "District Court Action"), in which the court addressed whether two former

shareholders of BBB retained a financial interest and standing in their securities litigation.

Dismissing their claims because the Amended Plan extinguished their equity, the court

explained:

> [C]onfirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor
> . . . and any creditor, equity security holder, or general partner in the
> debtor, whether or not the claim or interest of such creditor, equity
> security holder, or general partner is impaired under the plan." 11
> U.S.C. § 1141(a) . . . . Here, the plain language of the Bankruptcy
> Plan states that all shares in BBBY were "canceled, released, and
> extinguished, and will be of no further force or effect and no Holder
> of Interests in BBBY shall be entitled to any recovery or distribution
> under the Plan on Account of such Interests" as of the effective date,
> September 29, 2023. Slocum Decl. Ex. 8 at 102-03. The Plan
> effected a "complete settlement, compromise, and release, effective
> as of the Effective Date, of Claims, Interests, and Causes of Action

of any nature whatsoever" against the debtors or their property. Hunter Decl. Ex. A at 127. And it decrees that the holders of claims, interests, and causes of action against BBBY are "permanently enjoined and precluded" from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan." Id. at 131. **In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy Plan, Plaintiffs fail to establish "some continuing financial interest in the outcome of this litigation."** Gollust, 501 U.S. at 126.

*Order and Opinion*, *In Re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No. 22 Civ. 9327 (DEH), at *7-8 (S.D.N.Y. June 11, 2024) (emphasis added);[27] *see also In re WorldCom, Inc.*, 351 B.R. 130, 134-35 (Bankr. S.D.N.Y. 2006) (holding that plaintiff lost standing to bring a derivative claim where his shares in a company were "canceled" and he would "receive no distributions" under the company's reorganization plan).  Just as the litigants in the District Court Action were bound by the extinguishment of their Interests pursuant to the Amended Plan, so is the Former Shareholder; the Amended Plan canceled, released, and extinguished Former Shareholder's Interest; and the Amended Plan effected a complete settlement, compromise, and release of any Claims, Interests, and Causes of Action Former Shareholder may have had against the Debtors or their property.[28] In other words, Former Shareholder no longer has any financial interest in the chapter 11 proceedings, is not a "party in interest," and cannot bring a motion to appoint a committee under section 1102(a) (or be heard on any other matter in these cases).

---

[27]  A true and correct copy of the Order and Opinion is attached as Exhibit A.

[28]  This conclusion would not change even if Former Shareholder "opted-out" of the third party releases under the Amended Plan, because the opt-out provision only pertained to the Holders of Interest's release of non-debtor third parties, such as the Unsecured Creditors' Committee and the ABL Lenders—not the release of the Debtors or their property.  Therefore, the Amended Plan effected a release of Former Shareholder's claims against the Debtors and their property. *See* Amended Plan, art. X.A.–X.D.; *see also* Confirmation Order, at ¶¶ 106–08.

41.    _To the extent that Former Shareholder's Motion could conceivably be construed_

_as a motion pursuant to Rule 9024 to grant relief from the Confirmation Order, that motion must_

_also be denied because the allegations within the motion lack any evidentiary support_.

Bankruptcy Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedure. Under Fed.

R. Civ. P. 60(b), a court may grant relief from a final judgment, order, or proceeding "on motion

and just terms" in narrow circumstances.  Relief under Rule 60(b) is appropriate only when "the

overriding interest in the finality and repose of judgments may properly be overcome." _Harris v._

_Martin_, 834 F.2d 361, 364 (3d Cir. 1988).  Here, Former Shareholder's Motion makes no

mention of Bankruptcy Rule 9024 or Fed. R. Civ. P. 60, but the motion makes allegations of

newly discovered evidence and fraud, misrepresentation, and misconduct, which, in an

abundance of caution, the Plan Administrator will address in turn.

42.    Former Shareholder cannot demonstrate that the "new information" in his motion

is new or could not have been discovered through reasonable diligence.  Federal Rule of Civil

Procedure 60(b)(2) provides that a court may relieve a party from an order for newly discovery

evidence that, with reasonable diligence, could not have discovered in time.  However, a party

raising Rule 60(b)(2) "bears a heavy burden." _Compass Tech. v. Tseng Lab._, 71 F.3d 1125, 1130

(3d Cir. 1995); _see also Plisco v. Union R. Co._, 379 F.2d 15, 17 (3d Cir. 1967).  The party must

show that newly discovered evidence is "(1) material and not merely cumulative (2) could not

have been discovered prior to trial through the exercise of reasonable diligence, and (3) would

probably have changed the outcome of the trial." _Bohus v. Beloff_, 950 F.2d 919, 930 (3d Cir.

1991); _see also InFirst Bank v. Jager (In re Jager)_, 597 B.R. 796 (Bankr. W.D. Pa. 2019)

(concluding that debtors were not entitled to relief under Rule 60(b)(2) because the debtors had

knowledge of the evidence and thus it was "not new evidence"). Former Shareholder alleges that

there is "new information . . . not available during the plan confirmation process [that] suggests that shareholders' interests and financial standing of the company were not appropriately valued."

43.    The new information Former Shareholder points to is the Debtors' net operating losses as disclosed in BBB's Annual Report (Form 10-K) for the fiscal year ending February 25, 2023; the "undetermined" value of insurance policies and annuities and causes of action listed in the Debtors' Schedules of Assets and Liabilities; the lawsuit against Hudson Bay Capital; and the causes of action brought against former board members of the Debtors.  None of these claims are new to anyone who has been following these cases.

44.    Neither the net operating losses nor the fact that the Debtors valued certain assets as "undetermined" are newly discovered information. The net operating losses were reported on BBB's Annual Report (Form 10-K) for the fiscal year ending February 25, 2023, which was filed with the U.S. Securities and Exchange Commission on June 14, 2023—three months before confirmation. *See* Bed Bath & Beyond Inc., Annual Report (Form 10-K), p. 30 (June 14, 2023).[29] The Debtors filed their *Schedules of Assets and Liabilities* [Docket Nos. 519-573] on May 30, 2023—nearly four months before confirmation—identifying the Debtors' interests in its insurance policies or annuities as having an "undetermined" value.  *See e.g.*, *Schedules of Assets and Liabilities for Bed Bath & Beyond Inc.* [Docket No. 568], p. 34 (listing Bed Bath & Beyond Inc.'s interest in several insurance policies and annuities as having an undetermined value).

---

[29] Notably, the Introductory Note of this filing states: "Holders of the Company's equity securities will likely be entitled to no recovery on their investment following the Chapter 11 Cases, and recoveries to other stakeholders cannot be determined at this time. The Company cautions that trading in the Company's securities given the pendency of the Chapter 11 Cases is highly speculative and poses substantial risk. Trading prices for the Company's securities bear little or no relationship to the actual value realized, if any, by holders of the Company's securities in the Chapter 11 Cases. Accordingly, the Company urges extreme caution with respect to existing and future investment in its securities." *Id.*

45.    The Hudson Bay Capital litigation and litigation against former directors of BBB

(collectively the "Litigation") are also not "newly discovered evidence."[30] The Confirmation

Order and Amended Plan expressly provides that the Plan Administrator will have the right and

authority to prosecute the Litigation and that the Disclosure Statement and Amended Plan

provided adequate notice with respect to such Causes of Action. The Confirmation Order states:

> [A]ll Causes of Action shall automatically vest in the Wind-Down
> Debtors, and the Plan Administrator, subject to the oversight of the
> Oversight Committee, shall have the right and authority to
> investigate, commence, prosecute, or settle, as appropriate, any and
> all of the Non-Released Claims, whether arising before or after the
> Petition Date. Additionally, the Plan and Plan Supplement provide
> meaningful disclosure with respect to the potential Causes of Action
> that the Plan Administrator may retain, and all parties in interest
> received adequate notice with respect to such Causes of Action. The
> provisions regarding Causes of Action in the Plan are appropriate
> and in the best interests of the Debtors, their respective Estates, and
> Holders of Claims and Interests.

Confirmation Order, at ¶ 47; *see also* Confirmation Order, at ¶ 94 ("the Plan Administrator shall

have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and

Wind Down Debtors' Claims and Causes of Action"). The Amended Plan's definition of "Non-

Released Claims" makes clear that it includes claims against the Debtors' current and former

directors, officers, and managers, and claims arising under the Securities Act and the Securities

Exchange Act of 1934. *See* Amended Plan, art. I.A.99. Therefore, Former Shareholder, as a

purported former shareholder, had adequate notice that the Plan Administrator had the right and

---

[30] On May 2, 2024, the Plan Administrator filed a complaint, initiating *20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC., v. HBC INVESTMENTS LLC and HUDSON BAY CAPITAL MANAGEMENT LP*, which is pending as Case No. 24-cv-3370 in the United States District Court for the Southern District of New York. On April 26,2024, the Plan Administrator filed a complaint, initiating *20230930-DK-BUTTERFLY-1, INC. F/K/A BED BATH & BEYOND INC., et al v. HARRIET EDELMAN, et al*, which is pending as Case No. 652164/2024 in the Supreme Court of New York (County of New York).

authority to prosecute the claims and causes of action that the Plan Administrator is now prosecuting.

46.    The allegations of fraud and misrepresentation are baseless and unsupported. The Former Shareholder Motion also accuses the Debtors, the Unsecured Creditors' Committee, and their respective professionals of fraud and misrepresentations, but again, these bald and unfounded allegations do not come anywhere near the burden under Fed. R. Civ. P. 60(b) to challenge the validity or finality of the Confirmation Order. Under Civil Rule 60(b)(3), alleged fraud, misrepresentation, or misconduct "must be proven by clear and convincing evidence." *In re Express Car & Truck Rental, Inc.*, 455 B.R. 434, 441 n. 9 (Bankr. E.D. Pa. 2011) (citing *Brown v. Pennsylvania R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)). The party seeking relief under Rule 60(b)(3) must show that the alleged fraud, misrepresentation, or misconduct barred it from "fully and fairly presenting its defense," and had a material effect on the outcome of the lawsuit. *Id.* (citing *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985)). Former Shareholder has made several baseless allegations of fraud and misrepresentation. He asserts: (i) the Debtors were "deliberately driven into bankruptcy to conceal and capitalize on numerous instances of fraud within the company;" (ii) there are conflicts of interest involving numerous professional service firms; and (iii) "gross negligence and potential securities fraud by numerous parties."  Each of these is a baseless assertion—***no*** evidence has been provided. Further, the fraud and misrepresentation allegations are so vague and lacking of detail that it is impossible to respond or address them.[31]  Additionally, the one semi-specific inflammatory allegation regarding Pachulski Stang Ziehl & Jones LLP that can be addressed is simply false and shows

---

[31] The Former Shareholder Motion also states that "if this motion is rejected, in the coming weeks [ML1] will be filing complaints . . . ." Under Fed. R. Bankr. P. 9024 and Bankruptcy Code section 1144, the deadline to file such a complaint seeking to revoke the Confirmation Order (180 days after entry) passed on March 12, 2024.

Former Shareholder's lack of understanding of basic facts. PSZJ does not simultaneously represent the Plan Administrator and the Unsecured Creditors' Committee because on the Effective Date, the Unsecured Creditors' Committee dissolved. *See* Amended Plan, art. XIV.C. It is clear that Former Shareholder has not met his burden under Fed. R. Civ. P. 60(b)(3).

47.    Former Shareholder's baseless, unsupported claims and his implausible legal theories weigh heavily in favor of awarding Sanctions.

**E.    Factor 4: The legal and factual issues are not complex.**

48.    The Plan Administrator understands that Former Shareholder is a *pro se* litigant and that legal concepts like "standing" and "mootness" sound complex, but the issues here are actually quite legally and factually simple. Former Shareholder could have asked (or moved) to have an equity committee appointed prior to confirmation and he did not. By virtue of confirmation of the Amended Plan, Former Shareholder no longer owns any stock in BBB, nor does anyone else. Accordingly, there are no grounds to appoint a post-confirmation equity committee because there are no equity holders to represent. Furthermore, Former Shareholder himself, in his "*Statement as to Why No Brief is Necessary*" states, "It is respectfully submitted that no brief is necessary in the Court's consideration of this motion, as it does not involve complex issues of law." Therefore, this factor weighs in favor of imposing Sanctions.

**F.    Factor Five: The case was not referred to Former Shareholder by another member of the Bar.**

49.    As Former Shareholder is not an attorney, this factor is not applicable to this case.

**IV.    THE REQUESTED SANCTIONS**

50.    Having established that Former Shareholder failed to make a reasonable inquiry prior to filing his motion, that the motion was not well grounded in law or in fact, and that the Former Shareholder was given notice and a reasonable opportunity to withdraw his pleading and

did not, the Plan Administrator requests that the Court award monetary sanctions in an amount of his professional fees and costs incurred in connection with responding to the Former Shareholder Motion in an amount to be established at the hearing on this Motion.[32]  *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) ("We have stated that, by awarding attorney fees to prevailing defendants in an effort to discourage plaintiffs from bringing baseless actions or making frivolous motions, the Rule's primary purpose is not "wholesale fee shifting but [rather] correction of litigation abuse." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).").

## V.      CONCLUSION

51.      Responding to Former Shareholder's legally untenable and factually unsupported pleading, along with his attendant requests for secrecy, sealed documents and in camera hearings, is driving up costs for these already beleaguered estates. Enough is enough. The Amended Plan was confirmed and Former Shareholder's stock was cancelled 9 months ago. The time to ask for the appointment of an equity committee was then, not now. The time to object to the valuation of the Debtors' assets was then, not now. The time to object to proposed distributions (or lack thereof) to Class 9 Interest Holders was then, not now. The time to object to confirmation and/or appeal from the Confirmation Order was then, not now. And there are simply no legal grounds to do so now. Accordingly, Plan Administrator respectfully requests that the Court impose Sanctions under Bankruptcy Rule 9011 and grant any additional relief the Court deems just and proper under the circumstances.

---

[32] Bankruptcy Rule 9011(c)(2) provides, "*Nature of sanction; limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2).

Dated:  June 25, 2024    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
   bsandler@pszjlaw.com
   crobinson@pszjlaw.com


*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: _____, 2024 <br> at __:__ _.m. |

**[PROPOSED] ORDER GRANTING PLAN ADMINISTRATOR'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011**

The relief set forth on the following pages, numbered two (2) through and including three (4), is hereby **ORDERED**:

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4868-7502-5096.7 08728.003

The Court has considered the *Motion for Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 9011* filed by Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "**Debtors**") [Doc No. ____] (the "Motion") and the response to the Motion filed by the unidentified individual purported to be a former shareholder of Bed Bath & Beyond (the "Former Shareholder") [Doc. No. ____] (the "Opposition"); and the court having held a hearing on the Motion on _____, 2024, and the court having found that Plan Administrator gave adequate notice of the Motion pursuant to Federal Rule of Bankruptcy Procedure 9011(c) prior to filing the Motion; and that Former Shareholder did not withdraw his *Motion for the Appointment of an Official Committee of Equity Security Holders* (the "Former Shareholder Motion") [Doc. No. ____]; and that the request for the appointment of a committee of equity security holders pursuant to Bankruptcy Code section 1102 is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and that the allegations and other factual contentions set forth in the Former Shareholder Motion in support of the appointment of a committee of equity security holders pursuant to Bankruptcy Code section 1102 have no evidentiary support and, to the extent specifically identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and having found that Former Shareholder failed to conduct a reasonable inquiry into the facts and law prior to filing the Former Shareholder Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§

1408 and 1409; and it appearing that no other or further notice need be provided; and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Opposition is overruled.

2.      The Motion is GRANTED as set forth herein.

3.      Former shareholder is ordered to pay the Plan Administrator $_____ in

sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011.

4.      This Court shall retain exclusive jurisdiction to interpret and enforce the

provisions of this Order in all respects and further to hear and determine all matters arising from

the construction and implementation of this Order.