| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| Bradford J. Sandler<br>Paul J. Labov<br>Beth E. Levine (admitted *pro hac vice*)<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>blevine@pszhlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

## PLAN ADMINISTRATOR'S MOTION TO ENFORCE INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BB&B")[2] and affiliated debtors (the "Debtors"), by and through his undersigned counsel, hereby files this motion (this "Motion") and respectfully states as follows:

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2]   Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

## Relief Requested

1.    Pursuant to sections 105, 524, and 1141 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Article X.F of the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*, dated September 11, 2023 [Docket No. 2172, Exh. A] (the "Plan"),[3] and Paragraph 137 of the Court's *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*, entered September 14, 2023 [Docket No. 2172] (the "Confirmation Order"), the Plan Administrator seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) enforcing the discharge and injunction provisions of the Plan and Confirmation Order to prohibit Anthony Mitchell ("Mitchell"), an alleged former shareholder of BB&B, from continuing to prosecute, in violation of the Plan and Confirmation Order, the action styled *Mitchell v. Cohen et al.*, Case No. 24-cv-01042-RFB-DJA (D. Nev.) in the United States District Court for the District of Nevada (the "Violative Action"), and (ii) granting related relief.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.), Article XIII of the Plan, and Paragraph 151 of the Confirmation Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  This Court has authority to enforce its own orders.  11 U.S.C. § 105(a); *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("[W]here the plain terms

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

of a court order unambiguously apply, as they do here, they are entitled to their effect."). The Plan Administrator confirms consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory predicates for the relief sought in this Motion are sections 105, 524, and 1141 of the Bankruptcy Code.

**Background**

## I.    Overview of the Chapter 11 Cases

5.    On April 23, 2023 (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Court jointly administered the Debtors' Chapter 11 Cases for procedural purposes only pursuant to  Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[4] Prior to confirmation, the Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan. No party requested the appointment of a trustee or examiner in these Chapter 11 Cases.

6.    On May 5, 2023, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "UCC").[5]

---

[4]    *See Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered April 24, 2023 [Docket No. 75].

[5]    *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated May 5, 2023 [Docket No. 218].

7.      On May 31, 2023, the Court entered an Order, which, among other things, established July 7, 2023 as the deadline for creditors to file proofs of claim against the Debtors (the "General Bar Date").[6]

8.      On September 14, 2023 (the "Confirmation Date"), the Court entered the Confirmation Order, which, among other things, confirmed the Debtors' Plan.  The Plan is annexed to the Confirmation Order as Exhibit A.   The Plan went effective on September 29, 2023 (the "Effective Date").[7]   On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving Claims, prosecuting Causes of Action, liquidating the Debtors' remaining Assets, and making Distributions in accordance with the terms of the Plan and the Plan Administrator Agreement.[8]  Under the Plan, "all property of the Estates" vested in the Wind-Down Debtors "for the purpose of liquidating the Estates[.]"  Plan, Art. IV.F.2; Conf. Order at ¶ 74 (containing substantially the same language).

## II.     Material Provisions of the Plan and Confirmation Order

9.      Because the Effective Date has occurred, the terms of the Plan and the Confirmation Order are binding, effective, and fully enforceable.[9]  In addition, the Court retained "exclusive jurisdiction" to, among other things:

---

[6]     *See Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 530(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief*, entered May 31, 2023 [Docket No. 584] (the "Bar Date Order").

[7]     *Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates and (II) Occurrence of Effective Date*, dated September 29, 2023 [Docket No. 2311].

[8]     *See* Plan, Art. VII.

[9]     Conf. Order at ¶ 128 ("On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan . . . and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), [and] all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan[.]").

issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan . . .

**hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including**: . . . **with respect to the releases, injunctions, and other provisions contained in Article X of the Plan**, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions . . . anything that may arise in connection with the Consummation, interpretation, implementation, or **enforcement of the Plan and the Confirmation Order** . . . [or] related to section 1141 of the Bankruptcy Code[.]

Plan, Art. XIII.9–10 (emphasis added).  Certain relevant provisions of the Plan and Confirmation Order are discussed below.

### A.    *Effect of Plan on Claims, Interests, and Causes of Action*

10.    The Plan effectuated a "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against or in the Debtors and the properties of the Estates "in consideration for the distributions and other benefits provided pursuant to the Plan."  Plan Art. X.A.  Specifically, with respect to Claims and Interests, the Plan entitles each holder of an Allowed Claim[10] or Allowed Interest,[11] as applicable,

---

[10]    The term "Claim" is defined in the Plan as "a claim, as defined in section 101(5) of the Bankruptcy Code, and any Cause of Action or liability asserted against a Debtor."  Plan, Art. I.A.27.  The term "Cause of Action" is broadly defined under the Plan to include, among other things,

any action, Claim, cross claim, third party claim, damage, judgment, cause of action, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, interest, guaranty, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise. . . .

Plan, Art. I.A.25.

[11]    The term "Interest" is defined in the Plan as "any equity security (as defined in section 101(16) of the Bankruptcy Code."  Plan, Art. I.A.87.

to receive specified treatment thereunder "in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest[.]" Plan, Art. III.B.  Article III of the Plan sets forth the treatment each holder of an Allowed Claim or Allowed Interest is entitled to receive pursuant to the Plan.  *See* Plan, Arts. III.B.1–10.

11.    In particular, all Interests in BB&B and all Section 510(b) Claims[12] were "cancelled, released, and extinguished" and are "of no further force or effect[.]"  Plan, Arts. III.B.9–10.  The Plan states that each holder of an Interest in BB&B is not "entitled to any recovery or distribution . . . on account of such Interest[]" and that each holder of a Section 510(b) Claim is not entitled to "receive any distribution on account of such Section 510(b) Claim."  Plan, Arts. III.B.9(b), III.B.10(b).  Further, Paragraph 98 of the Confirmation Order provides:

> On the later of the Effective Date and the date on which distributions are made pursuant to the Plan . . . any remaining obligations of the Debtors under any . . . Securities, shares . . . or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors **shall be deemed cancelled solely** as to the Debtors and their affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder[.]

Conf. Order at ¶ 98.  Thus, by operation of the Plan, Mitchell does not and cannot currently hold shares of BB&B.

### B.    Plan Injunction

12.    Article X.F of the Plan and Paragraph 114 of the Confirmation Order establish a broad injunction (the "Plan Injunction").  *See* Plan, Art. X.F; Conf. Order at ¶ 114.  Article X.F of the Plan provides, in pertinent part:

---

[12]    The term "Section 510(b) Claim" is defined in the Plan as "any Claim subject to subordination under section 510(b) of the Bankruptcy Code."  Plan, Art. I.A.139.

Except as otherwise provided in the Plan or the Confirmation Order,
all Entities[13] who have held, hold, or may hold Claims, Interests,
Causes of Action, or liabilities that: (a) are subject to compromise
and settlement pursuant to the terms of the Plan; (b) have been
released by the Debtors pursuant to the Plan; (c) have been released
by third parties pursuant to the Plan, (d) are subject to exculpation
pursuant to the Plan; or (e) are otherwise discharged, satisfied,
stayed or terminated pursuant to the terms of the Plan, are
permanently enjoined and precluded . . . from taking any of the
following actions against, as applicable, the Debtors, Wind-Down
Debtors, the Released Parties, or the Exculpated Parties:
(1) commencing or continuing in any manner any action or other
proceeding of any kind on account of or in connection with or with
respect to any such Claims, Interests, Causes of Action or
liabilities . . . and (5) commencing or continuing in any manner any
action or other proceeding of any kind on account of or in
connection with or with respect to any such Claims, Interests,
Causes of Action or liabilities discharged, released, exculpated, or
settled pursuant to the Plan.

Plan, Art. X.F; *see also* Conf. Order at ¶ 114 (containing substantially the same language). In the

Confirmation Order, which also contains the Plan Injunction, the Court expressly found, among

other things, that the Plan Injunction set forth in Article X.F of the Plan was "essential" and

"necessary to implement the Plan and to preserve and enforce the discharge . . . [and] the

Third-Party Release[.]" Conf. Order at ¶¶ 45, 114. The Plan Injunction was approved pursuant to

the Confirmation Order. Conf. Order at ¶ 101.

13.     As set forth in the Confirmation Order, "[a]ll injunctions or stays contained in the

Plan or the Confirmation Order (including the [Plan] Injunction) shall remain in full force and

effect in accordance with their terms." Conf. Order ¶ 137.

---

[13]    The term "Entity" is defined in the Plan as "hav[ing] the meaning set forth in section 101(15) of the Bankruptcy
Code.

### III.    The Violative Action

14.    On or around June 26, 2024—approximately nine months following the Effective Date—Mitchell, an alleged former shareholder of the Debtors, commenced the Violative Action by filing a complaint, a copy of which is annexed hereto as **Exhibit B** (the "Violative Complaint"),[14] in the United States District Court for the District of Nevada.  In the Violative Complaint, Mitchell alleges that he purchased shares of BB&B stock and asserts various causes of action for, among other things, alleged violations of federal securities laws and regulations, including the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 promulgated thereunder (such causes of action, the "Violative Causes of Action"), against several defendants, including BB&B and certain others. "  *See, e.g.*, Violative Complaint at pg. 1, ¶¶ 1–2.  Through the Violative Action, Mitchell seeks to recover monetary damages, as well as pre- and post-judgment interest, attorneys' fees, expert fees, and other costs.  *See, e.g.*, Violative Complaint at pg. 29.  As set forth in the Violative Complaint, the Violative Causes of Action are based upon Mitchell's purported prepetition purchase and ownership of shares of BB&B stock between July 2022 and April 2023, as well as various alleged events related thereto. *See, e.g.*, Violative Complaint at ¶¶ 17–35.

15.    Promptly following the commencement of the Violative Action, counsel for the Plan Administrator contacted Mitchell.  Among other things, counsel for the Plan Administrator notified Mitchell that he had violated the Plan Injunction by filing the Violative Complaint and demanded that it be withdrawn.  Thereafter, counsel for the Plan Administrator engaged in further dialogue with Mitchell regarding Mitchell's violation of the Plan Injunction and reiterated the

---

[14]    To date, the Plan Administrator has not been served with the Complaint.

demand that the Violative Complaint be withdrawn.  To date, however, Mitchell has not withdrawn the Violative Compliant.

**Basis for Relief**

16.    As set forth above, the Plan, which addressed all Claims against and Interests in the Debtors, was confirmed on September 14, 2023 and became effective on September 29, 2023.  The Plan and Confirmation Order, including, without limitation, all discharge, injunction, exculpation, and release provisions contained therein, are binding on all holders of Claims against and Interests in the Debtors, including Mitchell, regardless of whether the claimant or interest holder voted in favor of the Plan or filed a Proof of Claim or Proof of Interest.  *See* Plan, Art. III.B ("[E]ach holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described [herein] in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest . . . .");  Plan, Art. X.A; Conf. Order at ¶ 128 ("On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan . . . and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), [and] all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan[.]").  Accordingly, Mitchell is explicitly enjoined from bringing the Violative Action against the Debtors.[15]

---

[15]    In addition, as counsel for the Plan Administrator advised Mitchel in an email dated July 7, 2024, even assuming that the Violative Complaint is not barred by the Plan Injunction, and it is, because Mitchell's shares were extinguished by operation of the Plan, he has no basis for bringing claims against the Debtor arising out of his purchase of those shares.  *See In re Bed Bath & Beyond Inc. Section 16B Litig.*, 2024 U.S. Dist. LEXIS 104712 at * (S.D.N.Y. Jun. 11, 2024) (dismissing shareholders' prepetition 16(b) action against BB&B as moot because the shareholder plaintiffs' stock had been cancelled by operation of the Plan).

17.    The Court has ample authority to issue the Proposed Order.  As detailed above, the Court expressly retained jurisdiction to hear and resolve and disputes regarding, among other things, (i) the release, injunctions, and other provisions contained in Article X of the Plan, as well as to enter any orders necessary or appropriate to implement those provisions, (ii) anything arising in connection with the enforcement of the Plan and Confirmation Order, and (iii) relating to section 1141 of the Bankruptcy Code.   Plan, Art. XIII.10.   Moreover, section 105(a) of the Bankruptcy Code provides bankruptcy courts with broad statutory authority to enforce their own orders, including confirmation orders.  *See* 11 U.S.C. § 105(a); *see Bailey*, 557 U.S. at 150.

18.    The unambiguous terms of the Plan Injunction set forth in Article X.F of the Plan plainly preclude Mitchell from commencing and prosecuting the Violative Action against BB&B. Plan Art. X.F.  Because Mitchell has not withdrawn the Violative Complaint, Mitchell remains in violation of the Plan Injunction under the express terms of the Plan.[16]  For these reasons, the Plan Administrator respectfully submits that the relief requested herein is in accordance with the relevant provisions of the Plan and Confirmation Order and is in the best interests of the Estates.

## Notice

19.    Notice of this Motion has been provided to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) all parties that have filed a renewed request for service of papers under Bankruptcy Rule 2002 pursuant to the Effective Date Notice; and (c) Mitchell.  The Plan Administrator respectfully submits that such notice is sufficient under the circumstances and that no other or future notice is required.

---

[16]    Mitchell failed to file a proof of claim in these Chapter 11 Cases and the General Bar Date has long passed.  As a result, to the extent Mitchell held any Claims against the Debtors, Mitchell is barred from receiving any distributions on account of such Claims under the Plan in accordance with the Bar Date Order.  *See* Bar Date Order at ¶ 7.

## No Prior Request

20.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Reservation of Rights

21.     The Plan Administrator reserves all rights in connection with and relating to the Violative Action including, without limitation, the right to request sanctions against Mitchell, and to seek all other available remedies in any appropriate court.

## Conclusion

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order, granting the relief requested herein, and such other and further relief as is just and proper under the circumstances.

Dated:  August 1, 2024                           */s/ Bradford J. Sandler*

Bradford J. Sandler
Paul J. Labov
Beth E. Levine (admitted *pro hac vice*)
Colin R. Robinson
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:     (212) 561-7700
Email:         bsandler@pszjlaw.com
               plabov@pszjlaw.com
               blevine@pszjlaw.com
               crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

**<u>Exhibit A</u>**

**Proposed Order**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| --- | --- |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| Bradford J. Sandler<br>Paul J. Labov<br>Beth E. Levine (admitted *pro hac vice*)<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>blevine@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

## ORDER GRANTING PLAN ADMINISTRATOR'S MOTION TO ENFORCE INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER

The relief set forth on the following pages, numbered two (2) through three (3), is

**ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

| Debtors: | BED BATH & BEYOND INC., *et al.* |
|---|---|
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER GRANTING PLAN ADMINISTRATOR'S MOTION TO ENFORCE INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER |

Upon the motion (the "Motion")[2] of the Plan Administrator, pursuant to sections 105, 524, and 1141 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Article X.F of the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*, dated September 11, 2023 [Docket No. 2172, Exh. A] (the "Plan"), and Paragraph 137 of the Court's *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*, entered September 14, 2023 [Docket No. 2172] (the "Confirmation Order"), seeking entry of an order (this "Order") (i) enforcing the discharge and injunction provisions of the Plan and Confirmation Order to prohibit Anthony Mitchell ("Mitchell"), an alleged former shareholder of BB&B, from continuing to prosecute, in violation of the Plan and Confirmation Order, the action styled *Mitchell v. Cohen et al.*, Case No. 24-cv-01042-RFB-DJA (D. Nev.) in the United States District Court for the District of Nevada (the "Violative Action"), and (ii) granting related relief; and upon consideration of the record of these Chapter 11 Cases; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court; consideration of the Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates,

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | ORDER GRANTING PLAN ADMINISTRATOR'S MOTION TO ENFORCE INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER |

their creditors and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted.

2.      No later than ten (10) days after entry of this Order, Mitchell shall take all appropriate actions to dismiss Mitchell's Violative Action against BB&B and any other of the Debtors.

3.      The Plan Administrator is authorized to take any and all actions reasonably necessary or appropriate to effectuate the relief granted pursuant to this Order.

4.      Notwithstanding any applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, or any other applicable rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit B</u>**

**Violative Complaint**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| ANTHONY MITCHELL,<br><br>       *Plaintiff,*<br><br>   v.<br><br>RYAN COHEN, an individual; ROBINHOOD FINANCIAL LLC, a Delaware Limited Liability Company; ROBINHOOD SECURITIES, LLC, a Delaware Limited Liability Company; ROBINHOOD MONEY, LLC, a Delaware Limited Liability Company; THE DEPOSITORY TRUST & CLEARING CORPORATION, a New York Corporation; 20230930-DK-BUTTERFLY-1, INC., a New York Corporation doing business as BED BATH & BEYOND; OVERSTOCK.COM, INC., a Delaware Corporation doing business as BED BATH & BEYOND; RC VENTURES LLC, a Delaware Limited Liability Company; SUE E. GOVE, an individual,<br><br>       *Defendants.* | Case No. _____<br><br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

ANTHONY MITCHELL ("Mitchell" or "Plaintiff"), hereby brings this action for violations of the federal securities laws and fraud against RYAN COHEN ("Cohen"), ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, ROBINHOOD MONEY, LLC (Robinhood defendants hereafter collectively referred to as "Robinhood"), THE DEPOSITORY TRUST & CLEARING CORPORATION ("Depository Trust"), 20230930-DK-BUTTERFLY-1, INC. doing business as BED BATH & BEYOND ("BBB-1"), and

OVERSTOCK.COM, INC., doing business as BED BATH & BEYOND ("BBB-2") (Bed Bath & Beyond defendants hereafter collectively referred to as "Bed Bath"), RC VENTURES LLC ("RC Ventures") and states as follows:

1.     Plaintiff incorporates herein by reference, the same as if set forth herein factual allegations against defendants containing in the Second amended class action complaint filed in the United States District Court District of Columbia case No. 1:22-cv-02541-TNM. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

<u>NATURE OF THE ACTION</u>

2.     This complaint is seeking to recover damages caused by Defendants' violations of the federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder. Plaintiff asserts claims against COHEN under Sections 9(a), 9(f), 10(b), 20(a) and 20(A) of the Exchange Act and Rule 10b-5, and against BED BATH under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.

<u>PARTIES</u>

3.     At all times mentioned in this Complaint Plaintiff ANTHONY MITCHELL is an individual residing in the city of Henderson, within the County of Clark, in the State of Nevada.

4.     Plaintiff is informed and believes and thereupon alleges that Defendant RYAN COHEN is the former CEO of Chewy, Inc., an online retailer of pet food and other pet-related products. Cohen currently serves as the Chairman of the Board of Directors of GameStop Corp. He also purports to be an activist investor with an alleged long-term

interest in turning around troubled companies.

5.      Plaintiff is informed and believes and thereupon alleges that Defendant
ROBINHOOD FINANCIAL LLC is a company established in Delaware. Defendant may
be served by its registered agent Incorporating Services, Ltd. at 3500 South DuPont Hwy.
Dover, DE 19901.

6.      Plaintiff is informed and believes and thereupon alleges that Defendant
ROBINHOOD SECURITIES, LLC is a company established in Delaware. Defendant
may be served by its registered agent Incorporating Services, Ltd. at 3500 South DuPont
Hwy. Dover, DE 19901.

7.      Plaintiff is informed and believes and thereupon alleges that Defendant
ROBINHOOD MONEY, LLC is a company established in Delaware. Defendant may be
served by its registered agent Incorporating Services, Ltd. at 3500 South DuPont Hwy.
Dover, DE 19901.

8.      Plaintiff is informed and believes and thereupon alleges that Defendant THE
DEPOSITORY TRUST & CLEARING CORPORATION is a company incorporated in
New York with a principal place of business at 570 Washington Blvd, Jersey City, NJ
07310.

9.      Plaintiff is informed and believes and thereupon alleges that Defendant
20230930-DK-BUTTERFLY-1, INC. is a company incorporated in New York with a
principal place of business at 650 Liberty Ave, Union, NJ 07083.

10.     Plaintiff is informed and believes and thereupon alleges that Defendant
OVERSTOCK.COM, INC. is a company incorporated in Delaware.

3
COMPLAINT

11.     Defendant RC Ventures LLC ("RC Ventures") is a Delaware limited liability company founded and controlled by Cohen, with its principal place of business in Miami, Florida. Cohen used RC Ventures to purchase and sell Bed Bath's common stock and call options.

12.     Defendant Sue E. Gove ("Gove") served as the interim CEO of Bed Bath from June 2022 to October 2022. Gove was appointed as the permanent CEO of Bed Bath in October 2022 and currently serves in that role. Since May 2019, Gove has also served as a member of the Company's Board of Directors, including as the Chair of the Strategy Committee of the Board of Directors from March 2022 to June 2022. The Strategy Committee was responsible for evaluating the Company's options for buybuy BABY's future.

JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 9(a), 9(f), 10(b), 20(a) and 20A of the Exchange Act (15 U.S.C. §§ 78(i), 78j(b), 78t(a) and 78t-1), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     The Court has personal jurisdiction over Defendants for the following reasons: (1) Defendants are present within or have minimum contacts within the State of Nevada and the district of Delaware; (2) Defendants have purposefully availed themself of the privileges of conducting business in the State of Nevada and in this district; (3) Defendants have sought protection and benefit from the laws of the State of Nevada; and

(4) Defendants regularly conduct business within the State of Nevada and within this district, and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of Nevada and in this district.

16.    Venue is proper in this District pursuant to Section 27(a) of the Exchange Act (15 U.S.C. §78aa(a)), and 28 U.S.C. § 1391(b). Many of the acts and conduct that constitute the violations of law complained of herein occurred in substantial part in this District, including the dissemination of materially misleading information on the Internet that was accessible in this District.

## **FACTUAL BACKGROUND**

17.    Between July 2022 and April 2023 Plaintiff purchased 8847 shares of Bed Bath stock ("BBBY shares") from Robinhood.

18.    On October 20, 2023, Plaintiff noticed that his 8847 shares were no longer in Robinhood's account and contacted Robinhood's support.

19.    Robinhood provided Plaintiff with a full accounting of his BBBY purchase history and informed him that his shares "hold no value" and that the instructions to remove the BBBY shares from the Robinhood platform were given to Robinhood investor relations from Depository Trust a few days prior.

20.    Plaintiff conducted an investigation and discovered that Defendants involved in the scheme to defraud Plaintiff as described in more detail below.

21.    Plaintiff discovered that the class lawsuit was filed in the United States District Court District of Columbia, case No. 1:22-cv-02541-TNM ("Class complaint"). The class complaint, factual allegations of which are incorporated herein, alleges among other

things the following:

22.     Bed Bath is a home goods retailer with a chain of big-box stores that sells products for the home such as bed linens, bath accessories, kitchen textiles, dinnerware and electric appliances. It also owns and operates a specialty retailer called buybuy BABY Inc. ("buybuy BABY"), which sells products meant for infants and children. Over the last few years, the Bed Bath has experienced a dramatic decline in sales and earnings, persistent losses, and a significant loss of market share to behemoths such as Amazon.com Inc. ("Amazon"), Walmart Inc. ("Walmart") and Target Corporation ("Target"). Bed Bath has effectively lost relevance with customers, and its poor financial performance has been accompanied by a lethal combination of sky-high debt and an endangered cash balance that has now left it days away from filing for bankruptcy.

23.     However, the severity of these problems was known to the Defendants with a high degree of specificity before the market was able to fully understand their implications, and billionaire Cohen used his access to Bed Bath executives and his information advantage to exit his large position in the Bed Bath at a substantial profit. Along the way, Cohen manipulated the market for Bed Bath securities to create liquidity and secretly sold the entirety of his interests in Bed Bath while abandoning ordinary investors, who looked to him for guidance.

24.     Cohen became one of the principal leaders of the "meme stock" movement. Meme stocks are stocks that gained viral popularity on discussion threads on Reddit and/ or social media platforms like Twitter, where online communities of retail investors dedicated their attention to particular stocks, sometimes for purposes of initiating a

squeeze on short investors and hedge funds, and other times based on genuine beliefs about a company's prospects. Cohen publicly embraced these retail investors, affirmatively told them that he was in the best position to look out for their long-term interests and that his turnaround strategies would be far more effective than anything conjured by more experienced executives with management responsibilities because they earned undeserved, risk-free and excessive compensation detached from actual results. By the time Cohen purchased nearly 10% of the Bed Bath's outstanding shares in March 2022, he was one of the key leaders of the meme stock movement. By his own admission, the mere disclosure of his interest in a particular company would encourage retail investors to purchase that stock and lead to an exponential rise in its price. Cohen had also tweeted about his investments to hundreds of thousands of followers and saw evidence of dramatic stock price movements solely due to his words and actions.

25.    In March 2022, after Cohen threatened to take control of Bed Bath's Board of Directors, Bed Bath quickly entered into a cooperation agreement (hereafter the "Cooperation Agreement") with him that required him to stand down in exchange for influence and access. Key terms of the Cooperation Agreement allowed Cohen to obtain three new seats on the Board, and outsized influence over a new Board Strategy Committee charged with evaluating options for buybuy BABY's future. buybuy BABY was then considered the "crown jewel" of Bed Bath, but the subsidiary's financial performance turned lackluster and its value greatly diminished right before Cohen formed a secret plan to dump all his holdings.

26.    Cohen was initially fixated on buybuy BABY, stating that he believed it was

worth at least several billion dollars, and that a sale or spinoff of this asset would be the solution to the Bed Bath's longstanding struggles with soaring debt and a deteriorating balance sheet. Unbeknownst to investors, but known to Cohen weeks before the Class Period commenced, the Bed Bath had rejected Cohen's proposal to sell or spinoff buybuy BABY because a serious liquidity crisis threatened its ability to remain a going concern. Investors did not learn all of these facts until after the Class Period ended and Cohen had already cleaned out his account.

27.    At the time he dumped his holdings, Cohen knew that Bed Bath's liquidity and credit crises had worsened beyond repair and that buybuy BABY's sale or spinoff was off the table. This caused Cohen to sour on Bed Bath's securities and sell his holdings, but he did not disclose these facts as he was required to do by the federal securities laws. Cohen knew that the Board had rejected his proposal to sell or spinoff buybuy BABY weeks before he formed a plan to liquidate his entire position, as demonstrated by the following facts:

-   Cohen controlled multiple Board seats and was an active participant in Bed Bath's affairs and communicated with the Board and management about Bed Bath's strategy. For instance, Cohen's communication with the Board precipitated the termination of Bed Bath's previous Chief Executive Officer ("CEO") in June 2022;

-   Also in June 2022, Bed Bath hired a consultant to focus on cash and balance sheet optimization, demonstrating that the Board and management were aware that problems with liquidity had worsened. The Strategy Committee, dominated by Cohen's appointees, would not overlook whether a sale of buybuy BABY enhanced or undermined the goals

of increasing cash and optimizing the balance sheet;

- On July 14, 2022, the Chairman of the Board of Directors told investors that the Strategy Committee, dominated by Cohen's Board nominees, had already studied the issue and "identified several options" for buybuy BABY. By that time, the value of buybuy BABY had already deteriorated to the point that its sale or spinoff would not resolve Bed Bath's financial problems. Cohen's appointees on the Strategy Committee and his communications with management gave him access to and knowledge of these facts;

- Cohen communicated with Bed Bath's Chief Financial Officer ("CFO") and other senior executives in conference calls;

- On the evening of August 16, 2022, after Cohen had already dumped most of his Bed Bath common stock, The Wall Street Journal (hereafter "The WSJ") reported that Bed Bath was "hunting" for an extension of an existing credit line that would provide hundreds of millions of dollars in relief and would be backed by an equity interest in buybuy BABY. This article was published in the print edition of the paper on the next day, when Cohen liquidated his remaining holdings in Bed Bath;

- On August 31, 2022, within two weeks of Cohen's sales, Bed Bath executed a final version of an amended loan agreement that contained extremely onerous restrictions preventing asset sales in excess of an aggregate amount of $10 million and locking up buybuy BABY as collateral to secure the obligations;

- Bed Bath has admitted that it had worked on this loan agreement for "several weeks," confirming that it was being finalized as Cohen was dumping shares and options on unsuspecting investors. News about the law firm hired by Bed Bath to advise on the loan

agreement emerged on the day Cohen revealed that he dumped his entire stake. The loan agreement involved negotiations between an administrative agent, sixteen different lenders, six different law firms, management, Bed Bath's Board (including Cohen's Board nominees) and other counterparties. It is inconceivable that the substance of the contract, including the covenants prohibiting Cohen's desired sale of buybuy BABY, was not known to Cohen at the time he sold his shares and options; and

- Subsequent reporting in the press in September 2022 confirmed that the expanded loan package was contingent on including buybuy BABY as collateral.

- Armed with this information, Cohen formed a plan to sell all his shares and options. But, knowing that this information would destroy retail investor interest in Bed Bath, starting on August 12, 2022, Cohen began to manipulate the market for Bed Bath securities by publicly encouraging retail investors to buy while he planned to sell. With misleading statements, filings, and a false Twitter post with a moon-emoji suggesting he believed Bed Bath's stock price was going "to the moon," he rallied hundreds of thousands of his followers to drive up its price.

- Investors unambiguously understood Cohen's moon-emoji tweet to mean that he expected Bed Bath's stock price to rise dramatically. As a result, trading volume and Bed Bath's stock price surged over the next few days. On August 15, 2022 after-market hours and on August 16, 2022, Cohen encouraged further buying by strategically filing delayed SEC Forms (which were due several months earlier and had nothing to do with any change in circumstances), both reminding investors that he was then a holder of more than 10% of Bed Bath's stock. Cohen subsequently admitted understanding (and on nine

previous occasions confirmed to him) that the price of Bed Bath's stock dramatically rises when he files these Forms because of how retail investors perceive his moves. As such, Cohen deliberately filed these Forms when he did in order to stimulate retail activity and increase liquidity to sell his own securities. In one of these filings, Cohen further failed to disclose that he had already formed a plan to sell Bed Bath securities in violation of the Exchange Act.

- After the market closed on August 16, 2022, Cohen submitted to the SEC a Form 144 regarding his intention to sell shares. While the SEC encourages filing these forms on its EDGAR system, which would immediately provide investors access, he instead submitted it by email, which the SEC publishes the following day or thereafter. Cohen's delay allowed him to surreptitiously liquidate his holdings at artificially high prices and volume, stoked by his encouragement that retail investors buy, not sell, Bed Bath shares. On August 17, 2022, after the market closed, Cohen's Form 144 was publicly released, and identified a "potential" plan to sell but was otherwise untruthful. In the Form 144, Cohen falsely stated that he had not sold any securities when the Form was submitted. However, Lead Plaintiff's review of intraday and aftermarket trade data demonstrates with certainty that Cohen had already sold massive amounts of Bed Bath securities at that time.

- On August 17, 2022, CNBC specifically asked Bed Bath to comment on the information disclosed in Cohen's Form 144 and its implications. Bed Bath did not candidly disclose the truth about Bed Bath's deteriorated relationship with Cohen, instead stating that it was "pleased to have reached a constructive agreement" with Cohen and his LLC, and had

"been working expeditiously over the past several weeks with external financial advisors
and lenders on strengthening our balance sheet." But the agreement with Cohen was
anything but "constructive" at the time, since he had sold all of his holdings, because of
the strategic plans that Bed Bath had chosen with the very "financial advisors and
lenders" Bed Bath referenced.

- On August 18, 2022, after the market closed, Cohen finally disclosed that he had sold his
entire stake in Bed Bath. As a result, Bed Bath's stock price plunged over the next three
trading days. It closed at $11.03 on August 19, 2022 from its previous day's closing price
of $18.55, on heavy trading volume, dropped further to close at $9.24 on August 22,
2022, and again slid to close at $8.78 on August 23, 2022.

28.    More detailed Cohen's Pump-and-Dump Scheme is described in the class
complaint attached as **Exhibit A**.

29.    On August 17, 2022, CNBC published a story entitled "Bed Bath & Beyond
shares fall after investor Ryan Cohen reveals intent to sell entire stake." The centerpiece
of the story was a report on Cohen's Form 144, describing its contents, and speculating
that "[i]f Cohen hypothetically managed to sell all of his Bed Bath common stock at
Wednesday's closing price of $23.08, he'd net about $60 million, according to a CNBC
calculation. Cohen's hypothetical profits could [sic] [be] larger if he also sold the options
contracts." Lauren Thomas and Jesse Pound, Bed Bath & Beyond shares fall after investor
Ryan Cohen reveals intent to sell entire stake, CNBC, (August 17, 2022, 4:41 PM),
https://www.cnbc.com/2022/08/17/bed-bath-beyond-shares-fallmore-than-10percent-
after-investor-ryan-cohen-reveals-intent-to-sell-entire-stake.html. CNBC directly reached

out to Bed Bath for comment on Cohen's Form 144. In response, an emailed statement

attributed to a woman with authority to speak on behalf of Bed Bath said that Bed Bath

was "pleased to have reached a constructive agreement with RC Ventures in March and

are committed to maximizing value for all shareholders. Specifically, we have been

working expeditiously over the past several weeks with external financial advisors on

strengthening our balance sheet."

30.    On August 18, 2022, before the market opened, Bed Bath filed a Current Report

on Form 8-K, in which it disclosed that Bed Bath had made the following statements in

response to media inquiries on August 17, 2022:

> We were pleased to have reached a constructive agreement with RC Ventures in
> March and are committed to maximizing value for all shareholders. We are
> continuing to execute on our priorities to enhance liquidity, make strategic
> changes and improve operations to win back customers, and drive cost
> efficiencies; all to restore our company to its heritage as the best destination for
> the home, for all stakeholders. Specifically, we have been working expeditiously
> over the past several weeks with external financial advisors and lenders on
> strengthening our balance sheet, and Bed Bath will provide more information in
> an update at the end of this month.

31.    As the Interim CEO of Bed Bath in August 2022, Sue E. Gove ("Gove") had

ultimate authority over the statements identified in Paragraphs 27 and 28, and authorized

their release and dissemination. In June 2022, just before her appointment as Interim

CEO, Bed Bath entered into a settlement agreement for past improper practices

acknowledging its CEO's "responsibility to oversee the accuracy, completeness and

timeliness" of "material public disclosures made by Bed Bath to its security holders or the

investment community." The settlement agreement, which Bed Bath posts on the

corporate governance portion of its website, also requires the CEO and CFO to comply with policies and procedures set by a Disclosure Committee "to ensure that information required to be disclosed by Bed Bath in its filings with the SEC and other material information that Bed Bath discloses to the investment community is reported accurately and timely." Thus, Gove's specific responsibilities required her to oversee the contents of the August 17, 2022 emailed statement to CNBC and the August 18, 2022 Form 8-K. In addition, Gove, as Chairman of the Strategy Committee until July 2022, knew that material, nonpublic information about Bed Bath was shared with Cohen.

32.    The statements identified in Paragraphs 27 and 28 were materially misleading when made because Bed Bath omitted to disclose that Cohen and RC Ventures had already formed a plan to liquidate all their holdings and, in fact, had already liquidated the vast majority if not all of their holdings before these statements were made. In addition, by speaking about Bed Bath's attempt to "enhance liquidity" and seek additional financing to "strengthen" its balance sheet, Bed Bath put these issues at play but failed to disclose that the 2022 Credit Agreement eliminated the strategic plan vigorously advanced by Cohen, undermining any incentive for him to remain a holder of Bed Bath securities. As a result, Bed Bath's relationship with Cohen was no longer "constructive," and Cohen's decision to exit from his positions undermined Bed Bath's stated goal of "maximizing value for all shareholders."

33.    Indeed, reactions from retail investors confirm the materially misleading nature of Bed Bath's statements identified in Paragraphs 179 and 180. At 8:01 PM on August 17, 2022, a user posted a thread on r/WallStreetBets entitled "$BBBY AND RYAN COHEN

COMPLAINT

UPDATE!" that posted a link to an article published by Reuters regarding Bed Bath's statements identified in Paragraphs 27 and 28. The thread received over 1,800 upvotes. A comment on the thread stated: "Very nice. Actual bullish news right after to counter that pathetic misleading headline earlier about RC liquidating. Next two days should be interesting after this dip." Another user named u/Glass_Cellist_345 interpreted Bed Bath's statements to mean that "they've agreed to leverage buy buy baby to bring in Capitol. BULLISH AF!" Another user commented: "To the moon baby[.]" And user u/Jfri33ss asked whether "[t]his means buy BBBY… Right?"

34.    The statements identified in Paragraphs 27 and 28 were recklessly misleading when made for, at least, the following reasons:

A)    Gove and other senior executives knew or recklessly disregarded that Cohen had lost interest in Bed Bath securities because the 2022 Credit Agreement effectively destroyed Cohen's turnaround strategy and his ultimate interest in retaining his holdings;

B)    Gove and other senior executives knew or recklessly disregarded the facts described in Paragraph 184 (A) because the Strategy Committee of the Board of Directors, which Gove chaired, and other senior executives at Bed Bath informed Cohen about the options considered for buybuy BABY's future before Cohen liquidated the entirety of his interests in Bed Bath securities; and

C)    Even if Bed Bath or Gove did not know that Cohen had already formed a plan to sell the entirety of his holdings, their failure to check whether Cohen had done so or otherwise investigate or question whether he rendered Bed Bath's statements recklessly misleading when made.

35.    Due to the wrongful conduct detailed herein, Plaintiff suffered significant losses.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Promulgated Thereunder Against Defendants Cohen, RC Ventures, Bed Bath and Gove)**

36.    Plaintiff incorporates the above paragraphs herein by reference.

37.    Defendants made various misleading statements of material fact and omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading. Defendants' misleading statements were designed to, and, did: (i) deceive the investing public, including Plaintiff, as alleged herein; (ii) artificially inflate and maintain the market price of Bed Bath's securities; and (iii) cause Plaintiff to purchase or otherwise acquire Bed Bath's shares and options at artificially inflated prices.

38.    Specifically, Cohen made misleading statements on Twitter and filed documents with the SEC that contained false and misleading statements as particularized above.

39.    Bed Bath made misleading statements on August 17, 2022, and August 18, 2022, as particularized in previous paragraphs and in class complaint attached as **Exhibit A**.

40.    Cohen and Bed Bath either had actual knowledge of the materially misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff or, in the alternative, acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially misleading nature of the statements made, although such facts were readily available to them. In addition to the facts alleged herein demonstrating a strong inference of scienter, certain information showing that Defendants acted knowingly or with reckless disregard for the

truth is peculiarly within these Defendants' knowledge and control. As the senior managers and/or directors of Bed Bath, Defendants had knowledge of the details of Bed Bath's internal affairs that virtually all investors did not.

41.     Defendants had a duty to disseminate timely, accurate, and truthful information regarding Bed Bath's business, operations, management and prospects when they made positive representations in public. As a result of the dissemination of the aforementioned misleading statements and material omissions, the market price of Bed Bath's securities was artificially inflated.

42.     In ignorance of the adverse facts concerning Bed Bath's operations, management and prospects, which were concealed by the misrepresentations and omissions alleged herein, Plaintiff purchased or otherwise acquired Bed Bath's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

43.     Bed Bath's securities were traded on an active and efficient market. Plaintiff directly relying on the materially misleading statements described herein, and/or relying upon the integrity of the market, purchased or otherwise acquired shares of Bed Bath's securities at prices artificially inflated by Defendants' wrongful misconduct. Had Plaintiff known the truth, he would not have purchased or otherwise acquired said securities or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff the true value of Bed Bath's securities was substantially lower than the prices paid by Plaintiff. The market price of

COMPLAINT

Bed Bath's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff.

44.    By reason of the conduct alleged herein, Cohen and Bed Bath either knowingly or recklessly violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder.

45.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with his respective purchases, acquisitions and sales of Bed Bath's securities. Cohen and Bed Bath are thus liable for damages in connection with these losses under Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder.

## COUNT II
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) & (c) Promulgated Thereunder Against Defendant Cohen)

46.    Plaintiff incorporates the above paragraphs herein by reference.

47.    Cohen employed devices and artifices to defraud, and carried out a plan, scheme and course of conduct which was intended to, and did: (a) deceive the investing public, including Plaintiff, as alleged herein; and (b) caused Plaintiff to purchase Bed Bath's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, made the misleading statements alleged below and in the class complaint incorporated herein and attached as Exhibit A, and engaged in additional unlawful acts as alleged herein.

48.    Cohen directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct

COMPLAINT

to conceal a plan to sell Bed Bath's common stock and call options based on material, nonpublic information that was known to Cohen before it was known, or could be known, to other investors.

49.    Specifically, Cohen employed the following devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in the following acts, practices and a course of conduct in an effort to secretly sell Bed Bath's securities and conceal their sales from other investors and the market:

- Cohen secretly instigated and coordinated a campaign to promote Bed Bath securities while they had already planned to sell Bed Bath securities, knowing that retail investors would understand Cohen's statements and conduct as an encouragement to purchase Bed Bath securities;

- Cohen leveraged Cohen's Twitter account and used Cohen's notoriety amongst retail investors as devices or artifices to defraud in furtherance of their scheme;

- On August 15, 2022, and August 16, 2022, Cohen used Form 3 and an amendment to Schedule 13D as artifices to deceive and trick investors. Cohen purposely filed Form 3 and an amendment to Schedule 13D to stimulate demand in Bed Bath's securities knowing that the mere act of filing these documents with the SEC would increase trading activity and cause the price of Bed Bath's securities to rise. Cohen delayed the filing of these Forms and failed to timely file them when he was required to do so in violation of the Exchange Act even though he knew or recklessly disregarded that he was required to file them no later than 10 days after Bed Bath's Annual Report was filed with the SEC on Form 10-K in April 2022;

- Cohen formed a plan to sell his holdings before he promoted the purchase of Bed Bath's securities after using material, nonpublic information about Bed Bath's desperate need for financing and its deteriorating liquidity before the market was aware of the severity of these issues. Cohen learned this inside information from his direct communications with the Strategy Committee of Bed Bath's Board of Directors and senior executives of Bed Bath, including the CFO who oversaw the negotiations with lenders and signed the 2022 Credit Agreement in August 2022. Cohen used this material, nonpublic information to his advantage and to the detriment of other investors to manipulate the market of Bed Bath's securities and create liquidity that would allow him to sell his own shares;

- Cohen purposely sent his Form 144 to the SEC after the market had closed and in a manner designed to ensure that its release would be delayed, so that he could secretly sell his entire stake before the market learned about his sales. On the Form 144, Cohen falsely represented that he had not yet sold any Bed Bath securities even though he had engaged in the act of ordering his broker to sell all or most of his holdings before he sent Form 144 to the SEC on the evening of August 16, 2022; and

- Cohen engaged in insider trading and earned over $188 million from his sales of Bed Bath's securities for an approximate profit of over $68 million. Cohen's insider sales also appear to be coordinated with Arnal's insider sales on the same day.

50. As a result of Cohen's fraudulent scheme and failure to disclose material facts, as set forth above, the market price for Bed Bath's securities was artificially inflated.

51. In ignorance of the fact that market prices of Bed Bath's publicly traded securities were artificially inflated, and relying upon the integrity of the market in which Bed

COMPLAINT

Bath's securities trade, and/or on the absence of material adverse information concealed from them as detailed herein, Plaintiff acquired Bed Bath's common stock and options at artificially high prices and were damaged thereby.

52.     At the time Cohen orchestrated this fraudulent scheme, Plaintiff was ignorant of its nature or existence. Had Plaintiff known the truth about this unlawful scheme, Plaintiff would not have purchased or otherwise acquired Bed Bath's securities, or, if he had acquired such securities, he would not have done so at the artificially inflated prices at which they did.

53.     As a direct and proximate result of Cohen's wrongful scheme, Plaintiff suffered damages in connection with his respective purchases and sales of Bed Bath's securities.

54.     By virtue of the foregoing, Cohen violated Section 10(b) of the Exchange Act, and Rule 10b-5(a) & (c) promulgated thereunder and are liable to Plaintiff who has been damaged as a result of such violations.

## COUNT III
### (Violations of Section 20(a) of the Exchange Act Against Defendant Cohen)

55.     Plaintiff incorporates the above paragraphs herein by reference.

56.     Cohen participated in the operation and management of RC Ventures. Cohen conducted and participated, directly and indirectly, in the conduct of the business affairs of RC Ventures. Because of his senior position, Cohen knew or recklessly disregarded the adverse non-public information that RC Ventures concealed from investors.

57.     Gove participated in the operation and management of Bed Bath. Gove conducted and participated, directly and indirectly, in the conduct of the business affairs of Bed Bath.

COMPLAINT

Because Gove served as Bed Bath's CEO Gove knew or recklessly disregarded the adverse non-public information that Bed Bath concealed from investors.

58.     As officers and/or directors of RC Ventures and Bed Bath respectively, Cohen and Gove had a duty to disseminate accurate and truthful information, and to correct promptly any public statements, which had become materially misleading.

59.     Because of their positions of control and authority as senior officers, Cohen and Gove were able to, and did, control the contents of their direct communications with investors, which Cohen and Bed Bath disseminated in the marketplace concerning RC Ventures' and Bed Bath's operations, management, financial condition and prospects. Cohen and Gove exercised their power and authority to cause RC Ventures and Bed Bath respectively to engage in the wrongful acts complained of herein. Cohen and Gove, therefore, were "controlling persons" of RC Ventures and Bed Bath respectively within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bed Bath's securities.

60.     By reason of their senior management positions and/or being controlling persons of RC Ventures or Bed Bath, Cohen and Gove had the power to direct the actions of, and exercised the same to cause, RC Ventures and Bed Bath to engage in the unlawful acts and conduct complained of herein. Each of these Defendants exercised control over the general operations of RC Ventures or Bed Bath and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff complains.

61.     By reason of the above conduct, Cohen and Gove are liable pursuant to Section

20(a) of the Exchange Act for the violations committed by RC Ventures and Bed Bath, respectively.

## **COUNT IV**

**(Violations of Section 9(a)(2) and 9(f) of the Exchange Act Against Defendants Cohen and RC Ventures)**

62.    Plaintiff incorporates the above paragraphs herein by reference.

63.    Defendants Cohen and RC Ventures, directly or indirectly, alone or with one or more other persons, effected a series of transactions in Bed Bath securities, as outlined above, creating actual or apparent active trading activity in such securities, raising the price of such securities, for the purpose of inducing the purchase of Bed Bath securities by others.

64.    Defendants Cohen and RC Ventures willfully engaged in these transactions for the purpose of inducing Plaintiff to purchase Bed Bath securities.

65.    As a direct and proximate result of Defendants Cohen's and RC Ventures' wrongful conduct, Plaintiff has suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Bed Bath securities.

66.    Had Plaintiff known that the prices for Bed Bath securities were artificially and falsely inflated due to Defendants Cohen's and RC Ventures' conduct, he would not have purchased the securities at the prices they paid, or at all.

## **COUNT V**

**(Violations of Section 9(a)(3) and 9(f) of the Exchange Act Against Defendants Cohen and RC Ventures)**

67.    Plaintiff incorporates the above paragraphs herein by reference.

68.    Defendants Cohen and RC Ventures circulated and disseminated materially false

COMPLAINT

and misleading statements as alleged in this Complaint and in Class complaint attached as Exhibit A, which they knew or deliberately disregarded were misleading in that they contained misrepresentations or failed to disclose material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

69.     Defendants Cohen and RC Ventures circulated and disseminated the false and misleading statements with the purpose and to the effect that the price of Bed Bath securities would or was likely to rise.

70.     Defendants Cohen and RC Ventures willfully made false and misleading statements for the purpose of inducing Plaintiff to purchase Bed Bath securities.

71.     As a direct and proximate result of Defendants Cohen's and RC Ventures' wrongful conduct, Plaintiff has suffered damages in that, in reliance on the integrity of the market, he paid artificially inflated prices for Bed Bath securities.

72.     Had Plaintiff known that the prices for Bed Bath securities were artificially and falsely inflated due to Defendants Cohen's and RC Ventures' conduct, he would not have purchased the securities at the prices they paid, or at all.

## COUNT VI
### (Violations of Section 9(a)(4) and 9(f) of the Exchange Act Against Defendants Cohen and RC Ventures)

73.     Plaintiff incorporates the above paragraphs herein by reference.

74.     Defendants Cohen and RC Ventures had authority over or controlled the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and

24
COMPLAINT

failed to disclose material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

75.     Defendant Cohen's and RC Ventures' materially false and misleading statements had the purpose and effect of inflating the price of Bed Bath securities.

76.     Defendants Cohen and RC Ventures also made materially false and misleading statements for the purpose of inducing Plaintiff to purchase Bed Bath securities.

77.     Defendants Cohen and RC Ventures willfully made false and misleading statements for the purpose of inducing Plaintiff to purchase Bed Bath securities.

78.     In reliance on Defendants Cohen's and RC Ventures' materially false and misleading statements, Plaintiff purchased Bed Bath securities at artificially inflated prices.

79.     As a direct and proximate result of Defendants Cohen's and RC Ventures' wrongful conduct, Plaintiff was damaged thereby. Had Plaintiff known that Defendants Cohen's and RC Ventures' statements were materially false and misleading, he would not have purchased the securities at the prices they paid, or at all.

## COUNT VII
### (Violations of Section 20A of the Exchange Act Against Defendants Cohen and RC Ventures)

80.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

81.     This Count is asserted for violations of Section 20A of the Exchange Act, 15 U.S.C. §78t-1, by Defendants Cohen and RC Ventures, who sold Bed Bath securities while in possession of material, non-public information, as alleged herein, including

COMPLAINT

specific facts about Bed Bath's exponential liquidity crisis that resulted in a desperate attempt to seek additional loans after pledging its interests in buybuy BABY, which destroyed Cohen's interest in Bed Bath.

82.     These specific facts were known to Cohen before they were known to other investors and the market and before Cohen engaged in a scheme to pump and dump Bed Bath's securities.

83.     Section 20A(a) of the Exchange Act provides that: Any person who violates any provision of [the Exchange Act] or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

84.     As set forth herein, Cohen and RC Ventures violated Section 10(b), Section 9(a) and Section 9(f) of the Exchange Act for the reasons stated in Counts I through VI above. Additionally, Cohen and RC Ventures violated multiple provisions of the Exchange Act while in possession of material, non-public adverse information concerning Bed Bath.

85.     Cohen's and RC Ventures' sales of Bed Bath securities made between August 16, 2022, and August 17, 2022, were made contemporaneously with Plaintiff's purchases of Bed Bath securities, which were made between July 2022 and April 2023. Plaintiff who purchased Bed Bath securities contemporaneously with Defendants Cohen and RC Ventures have suffered damages.

86.     By reasons of the violations of the Exchange Act alleged herein, Defendants Cohen and RC Ventures are liable to Plaintiff who purchased shares of Bed Bath contemporaneously with Defendants Cohen's and RC Ventures' sales of Bed Bath securities.

87.     Plaintiff, who purchased contemporaneously with Defendants Cohen's and RC Ventures' insider sales of Bed Bath securities, seek disgorgement by Defendants Cohen and RC Ventures of profits and gains from Defendants Cohen's and RC Ventures' transactions.

88.     This Action was brought within five years after the date of the last transaction which is the subject of Defendants Cohen's and RC Ventures' violations of Section 20A.

## COUNT VIII

(Breach of Contract – Against Defendants Robinhood and Depository Trust)

89.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

90.     Plaintiff has fulfilled all of his obligations under the Agreement and is not in breach of any contract or agreement with Defendants Robinhood and Depository Trust.

91.     Defendants Robinhood and Depository Trust have materially breached the Agreement by removing Plaintiff's shares from the Robinhood's account.

92.     As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## COUNT IX

(Breach of Covenant of Good Faith and Fair Dealing – Against Defendants Robinhood and Depository Trust)

27

COMPLAINT

93.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

94.     Implied in all contracts governed by the Uniform Commercial Code is a covenant of good faith and fair dealing, which obligates the parties to act in good faith, to use their best efforts to deal fairly with one another, and to avoid impeding the other party from obtaining the benefits of the contract.

95.     Defendant Robinhood based on Depository Trust's instruction, improperly removed Plaintiff's shares from Robinhood's account.

96.     Buy their conduct set forth above, Defendants Robinhood and Depository Trust have breached the covenant of good faith and fair dealing and have wrongfully deprived, impaired, and injured Plaintiff's rights, benefits and full value of Plaintiff's property despite Plaintiff's performance of all of his contractual obligations owed to Defendant.

COUNT X
(Unjust Enrichment Against Overstock.com, Inc.)

97.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

98.     After Bed Bath and Beyond was removed from the NYSE stock market - Overstock.com changed its name to Beyond Inc. and adopted the Bed Bath & Beyond logo and website bedbathandbeyond.com. Overstock.com continued to sell shares of Bed Bath & Beyond.

99.     At all times relevant to this litigation, Defendant Overstock.com, Inc. owed a legal duty to Plaintiff to not unfairly or unduly take advantage of Plaintiff or commit

COMPLAINT

wrongful acts in order to unjustly enrich itself at Plaintiff's expense or at the expense of
Plaintiff's property or financial interests.

100.    During the relevant period alleged in the complaint, Defendant Overstock.com
unjustly enriched itself by wrongfully converting, taking, utilizing or managing the
property and financial interests of Plaintiff.

101.    Such acts and omissions leading to Defendant Overstock.com's unjust enrichment
was the actual and proximate cause of harm to Plaintiff.

102.    Accordingly, Defendant Overstock.com is liable in damages to Plaintiff in an
amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Requiring Defendants to pay damages sustained by Plaintiff by reason of the acts and
transactions alleged herein;

B. Awarding Plaintiff prejudgment and post judgment interest, as well as his reasonable
attorneys' fees, expert fees and other costs; and

C. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 29, 2024                         Respectfully submitted,

                                            _____

                                            *ANTHONY MITCHELL, pro se*

COMPLAINT