| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| Robert J. Feinstein (admitted *pro hac vice*) | |
| Bradford J. Sandler | |
| Colin R. Robinson | |
| PACHULSKI STANG ZIEHL & JONES LLP | |
| 780 Third Avenue, 34th Floor | |
| New York, NY 10017 | |
| Telephone:  (212) 561-7700 | |
| Facsimile:  (212) 561-7777 | |
| rfeinstein@pszjlaw.com | |
| bsandler@pszjlaw.com | |
| crobinson@pszjlaw.com | |
| | |
| *Counsel to the Plan Administrator* | |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: August 8, 2024 at 2:30 p.m. |

## PLAN ADMINISTRATOR'S SUR-REPLY TO FORMER AND CANCELED SHAREHOLDER'S MOTION FOR REDACTION OF CERTAIN INFORMATION AND APPOINTMENT OF POST-EFFECTIVE DATE EQUITY SECURITY HOLDERS COMMITTEE

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the

"Debtors"), files this sur-reply (the "Sur-Reply") in further support of his opposition [Docket No.

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2]   Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

3332] (the "Opposition")[3] to the *Motion for Appointment of an Official Committee of Equity Security Holders* (the "Motion") filed on behalf of an unidentified individual purporting to be a former shareholder of Bed Bath & Beyond, Inc. (the "Former Shareholder").  In support of the Sur-Reply, the Plan Administrator states as follows:

## PRELIMINARY STATEMENT

1.      In the Opposition, the Plan Administrator conclusively established that the still unidentified  Former Shareholder is not entitled to the appointment of an Equity Committee because (1) as a result of the cancelation of all Interests (i.e., equity), there are no equity holders for a committee to represent; (2) Former Shareholder's post-Effective Date request comes far too late in these proceedings; (3) the appointment of an equity committee is unwarranted where, as here, it would provide no benefit to the post-confirmation estates; (4) the Motion is barred by laches and time pursuant to section 1144 of the Bankruptcy Code; (5) Former Shareholder lacks standing to bring the Motion as he is not a party in interest; and (6) to the extent the Motion is construed as motion for relief pursuant to Rule 9024, it should be denied because the Former Shareholder has not come forward with (a) any actual newly discovered evidence or (b) clear and convincing evidence of fraud, misrepresentation, or misconduct.  The Plan Administrator also established that the Former Shareholder has not demonstrated cause for redacting his personal information.

2.      This Court expressly instructed Former Shareholder that any reply he submitted be addressed solely "to matters contained in the opposition filed by the United States Trustee and

---

[3]     Capitalized terms that are not defined herein have the meanings given to them in the Opposition.

the Plan Administrator."[4]  However, in his reply in support of the Motion (the "Reply"), Former

Shareholder deliberately flouted the Court's instructions (and also flouted the Court's instruction

for him to identify himself to the Plan Administration, which he still has not done, despite the

Court instructing him to do so on at least two occasions), choosing instead to submit to this Court

a seventy-two-page screed that does not even reach the substantive issues raised in the

oppositions filed by the Plan Administrator and the United States Trustee until page thirty-seven!

    3.    The Reply exemplifies Former Shareholder's pattern of complete disregard for

this Court's authority and directions.  First, the Reply is untimely.[5]  Moreover, the Reply goes

well beyond the scope of the Plan Administrator's Opposition and the *United States Trustee's*

*Objection to Motion to Request Relief and Appointment of Official Committee of Equity Security*

*Holders Submitted to this Court by "ML1"* [Docket No. 3331] (the "UST Objection").  The

Reply introduces new arguments (largely in the form of inadmissible hearsay and entirely

irrelevant information)[6] in contravention of the Court's directive that his Reply "address and be

limited to the matters raised" in the Plan Administrator's Opposition and UST Objection.[7]

---

[4]  By email dated July 10, 2024, (the "July 10 Email"), this Court responded to Former Shareholder's second request for an extension of time to respond to the Opposition by requiring (1) that the Reply be filed and served not later than Tuesday, July 23 at 5 p.m. EST and (2) that Former Shareholder "immediately send the Plan Administrator, by electronic mail, a copy of the Motion without redaction of any personal identifiers."  In the same email, the Court instructed the Former Shareholder that "[a]dditionally, a version of your reply (with personal identifiers redacted) must be mailed to the Court and that redacted version will be filed on the docket. An unredacted version must also be mailed to the Court and that will be filed on the docket under seal."  July 10, 2024 email from Christy McDonald, Law Clerk to Judge Papalia.  It is impossible to tell from the version of the Reply emailed to counsel for the Plan Administrator whether any portion of the Reply was redacted.  As of the service of this Sur-Reply, there is no docket number for the Motion or Reply.  The Plan Administrator is responding to the presumptively redacted version of the Reply that was emailed to his counsel on July 23, 2024.

[5]  On July 23, 2024, the Court provided a further extension to 8:00 p.m. ET for Former Shareholder to email his Reply to the parties.  Former Shareholder did not email his Reply until 12:25 a.m. ET on July 24, 2024.

[6]  For example, inexplicably, the Reply contains two pages detailing litigation between JPMorgan and Lehman, Reply, pp. 50-51, a page long "Political History of the Company," Reply, p. 54, and **seven** pages of entirely irrelevant excerpts from what appears to be the Twitter account of Holly Etlin, the Debtors' former Chief Financial Officer and Chief Restructuring Officer.  Reply, pp. 58-64.

[7]  The Plan Administrator will not address the arguments in the Reply that exceed the scope of the Plan Administrator's Opposition and will not address arguments directed solely in reply to the UST Objection.

        3

4.      Moreover, an unredacted version of the Reply *still* has not been served on the

Plan Administrator; nor has an unredacted copy of the Motion ever been served on the Plan

Administrator, both omissions in violation of the Court's Scheduling Order[8] and the Court's

directive to Former Shareholder via email dated July 20, 2024 to "immediately send the Plan

Administrator, by electronic mail, a copy of the Motion without redaction of any personal

identifiers." Upon information and belief, Former Shareholder also has not provided his personal

information to the Office of the United States Trustee.

5.      Most importantly, though, the legal arguments in the Reply are fundamentally

flawed and fail to refute the central reason why Former Shareholder's Motion must be denied:

Bankruptcy Code section 1102 does not authorize the appointment of an equity committee where

there are no equity holders, and here, **none exist**. The Amended Plan and Confirmation Order

clearly provide that all equity interests were canceled and no new equity was issued, and in

accordance with the confirmed Amended Plan, all equity interests were, in fact, canceled.

6.      Former Shareholder admits this fact repeatedly throughout his Reply.  On this

basis alone, the Former Shareholder's Motion must be denied.  Additionally, as demonstrated

below, **Former Shareholder misstates the holdings of cases** in order to support his incorrect

legal arguments, **and, in some instances, falsely cites and quotes cases, including citing to**

**cases that appear not to exist**.  Furthermore, Former Shareholder's arguments attacking the

Confirmation Order and seeking to stay all actions of the Wind-Down Debtors and the Plan

Administrator are not only procedurally improper, but also time-barred under Bankruptcy Code

section 1144 and must be denied on that basis, and beyond the statutory limitation, Former

---

[8]     *Order Establishing Procedures Relating to Shareholder's Motions for Redaction of Certain Information and Appointment of Equity Security Committee* [Docket No. 3314] (the "Scheduling Order")

Shareholder has not established, and cannot establish, any excusable neglect to explain his silence during the pre-confirmation proceedings or for months post-Effective Date that would justify granting his Motion.  Indeed, as the Court is aware, other shareholders were active in these bankruptcy proceedings, and one shareholder appealed the Confirmation Order (which appeal was dismissed for lack of prosecution).

7.    Finally, Former Shareholder has been given ample opportunity to present legal arguments in support of his Motion and to comply with the Court's directives to send unredacted copies of his pleadings to the Plan Administrator and others.  But rather than complying, Former Shareholder has instead chosen to brush off the Court's orders, and through his online social media posts, mock this process and cause the wasting of valuable estate resources the Plan Administrator has spent responding to the Motion to the detriment of the Debtors' creditors who are owed billions of dollars.

8.    For all the reasons stated herein and in the Opposition, the Former Shareholder's Motion should be denied with prejudice.

**A.**    **The Former Shareholder's Legal Arguments Are Fundamentally Flawed.**

9.    As demonstrated below, Former Shareholder's legal arguments are incorrect, and his reliance on inapposite cases, false quotes, and nonexistent cases further underscores the weaknesses of his argument and his lack of credibility.

**1.    Former Shareholder Has Conceded
that All Equity Interests Were Cancelled.**

10.    In the Opposition, the Plan Administrator established that the Amended Plan and Confirmation Order canceled all equity interests.  Opposition, ¶ 25.  Although this is the most critical basis for denial of his Motion, Former Shareholder's Reply fails to refute this key fact. To the contrary, repeatedly throughout his Reply, the Former Shareholder admits that all equity

interests were canceled under the Plan. *See* Reply, p. 8 ("I can attest to owning over 700,000

shares of bed bath and beyond **at the time of cancellation**") (emphasis added); *see also* Reply,

p. 40 ("**The fact that our equity interests were canceled pursuant to the plan** does not

necessarily preclude him from being considered a party in interest . . . .") (emphasis added). This

admission alone is sufficient to controvert all of Former Shareholder's arguments that he has met

his burden under Bankruptcy Code section 1102, if it were applicable, which it is not. These

statements also support the fact that he is not a party in interest and is not entitled to be heard

under Bankruptcy Code section 1102(a). *See e.g.*, *In re Bed Bath & Beyond Inc. Section 16(b)

Litigation*, No. 22 Civ. 9327 (DEH), slip. op. at 7-8 (S.D.N.Y. June 11, 2024), ECF No. 96

(dismissing the claims of two former shareholders of BBB because their BBB shares were

extinguished pursuant to the Plan and the plaintiffs thus failed to establish "some continuing

financial interest in the outcome of this litigation").

### 2. The Cases Cited By Former Shareholder Are Inapposite or Misquoted.

11.    Further, the cases cited by Former Shareholder to support his proposition that the

Court can appoint an equity committee post-confirmation, *see* Reply, pp. 37-39, are completely

inapposite.  In both *In re Pilgrim's Pride Corp.*[9] and *In re Oneida Ltd.*,[10] the ad hoc shareholders

sought to appoint an equity committee **before** confirmation of a plan.  *See In re Pilgrim's Pride

Corp.*, 407 B.R. at 221-22 (noting that the equity committee should play a role in valuation,

negotiation of a plan, and the plan confirmation process); *see also In re Oneida Ltd.*, 2006 Bankr.

LEXIS 780, at *10 (noting that appointment of an official equity committee "would not result in

unnecessary delay of a confirmation hearing on the Debtors' plan").  And, the decision in *In re*

---

[9]    407 B.R. 211 (Bankr. N.D. Tex. 2009)

[10]    No. 06-10489, 2006 Bankr. LEXIS 780, 2006 WL 1288576 (Bankr. S.D.N.Y. May 4, 2006)

*Energy Future Holdings Corp.,* 575 B.R. 616 (Bankr. D. Del. 2017), had nothing to do with the

appointment of an equity committee at any point in the debtors' case, let alone after

confirmation.  Rather, in that case, the court considered the issue of whether it should grant a

motion for reconsideration of an order approving a termination fee in a merger agreement

between the debtors and another entity interested in purchasing the debtors' assets.  *Id.* at 620

("Before the Court is a motion for reconsideration of an order approving, among other things, a

Termination Fee in the amount of $275 million.").

12.    Nor do *In re Adelphia* Communications *Corp.*[11] and *In re Oneida Ltd.,*[12] cited by

the Former Shareholder, support his argument that the complexity of a bankruptcy case can

justify a delay in requesting the appointment of an equity committee. Reply, p. 39.  The issue

before the district court in *In re Adelphia Communications* was whether to grant an ad hoc

committee's request for leave to file an expedited appeal of four orders from the bankruptcy

court related to establishing a process for resolving inter-debtor issues.  333 B.R. at 653-54.

There simply was no applicable discussion of the appointment of an equity committee.[13]  And,

contrary to Former Shareholder's assertion, Reply, p. 39, in *In re Oneida Ltd.*, the court did not

address the issue of whether a four-month delay in seeking the appointment of an equity

committee was reasonable. 2006 Bankr. LEXIS 780 (Bankr. S.D.N.Y. May 4, 2006).  In fact, the

ad hoc committee in *Oneida* filed its motion to appoint an equity committee less than one-month

after the commencement of the chapter 11 case. *See Voluntary Petition (Chapter 11)*, *In re*

---

[11]    333 B.R. 649 (S.D.N.Y. 2005).

[12]    No. 06-10489, 2006 Bankr. LEXIS 780 (Bankr. S.D.N.Y. May 4, 2006)

[13]    The only reference to the appointment of a committee was in connection with a discussion of the finality of
certain orders.  The court stated, "an order denying a motion for the appointment of an official committee to
represent creditors is not final, because 'it does not exclude [creditors] from participation in the proceeding; it
merely denies them the advantage of official committee status.'" *In re Adelphia Communs. Corp.*, 333 B.R. at
657 (quoting *In re Johns-Manville Corp.*, 824 F.2d 176, 180 (2d Cir. 1987)).

*Oneida Ltd.*, No. 06-10489 (Bankr. S.D.N.Y. Mar. 19, 2006), ECF No. 1; *Mot. of the Ad Hoc*

*Committee of Equity Holders for an Order Compelling the Acting United States Trustee to*

*Appoint an Official Committee of Equity Security Holders*, *In re Oneida Ltd.*, No. 06-10489

(Bankr. S.D.N.Y. Apr. 14, 2006), ECF No. 144.

13.     Finally, Former Shareholder falsely attributes quotes to cases in his Reply.  As

noted above, the court in *In re Energy Future Holdings Corp.*[14] did not address the appointment

of an equity committee and did not state that "the appointment of an equity committee is

necessary to ensure a fair and equitable outcome." Reply, p. 40.  The court in *In re Mansfield*

*Ferrous Castings, Inc.*, 96 B.R. 779 (Bankr. N.D. Ohio 1988) did not find "the present

management of the debtor cannot be relied upon to protect the interests of equity holders."

Reply, p. 38.  *In re Finova Group, Inc.*, 2006 WL 538752 (Bankr. D. Del. Mar. 1, 2006)—a case

cited to and quoted in the Reply on page 39—does not exist to the best of the Plan

Administrator's knowledge and after a diligent search, and to the extent that Former Shareholder

cited nonexistent authority, he should be sanctioned by this Court for so doing.[15]

3.     **Former Shareholder's Attack on the**
        **Confirmation Order and Plan Are To No Avail.**

14.     Former Shareholder's arguments attacking the Confirmation Order and confirmed

Plan are similarly faulty, because they are both procedurally improper and time barred.  Former

Shareholder's assertions that the Plan and Disclosure Statement purposefully undervalued assets,

were the product of fraud and conflicts of interest, and that any and all actions performed by the

---

[14]    575 B.R. 616 (Bankr. D. Del. 2017).

[15]    Counsel for the Plan Administrator cannot locate this case on Lexis, Westlaw, Bloomberg Law, or Google; however, counsel did a find a reference to the purported case on Chatgpt.  "Without question, it is improper and unacceptable for litigants—**including *pro se* litigants**—to submit non-existent judicial opinions with fake quotes and citations . . . . sanctions may be imposed for submitting false and nonexistent legal authority to the Court."  *Anonymous v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-04232 (JLR), 2024 U.S. Dist. LEXIS 127114 (S.D.N.Y. July 18, 2024) at *20 (citations omitted) (emphasis added).

Wind-Down Debtors and Plan Administrator should be immediately stayed, *see* Reply, pp. 3 and

46, are in essence allegations seeking to revoke the Confirmation Order.  But a request for such

relief must be brought pursuant to an adversary proceeding.  *See* Fed. R. Bankr. P. 7001(5).

Additionally, under Fed. R. Bankr. P. 9024 and Bankruptcy Code section 1144, the deadline to

bring such allegations and seek to revoke the Confirmation Order passed on March 12, 2024—

180 days after the date of the entry of the Confirmation Order.  *See*  Fed. R. Bankr. P. 9024 ("a

complaint to revoke an order confirming a plan may be filed only within the time allowed by §

1144"); 11 U.S.C. § 1144 (setting a deadline of "180 days after the date of the entry of the order

of confirmation").

## B.    <u>Former  Shareholder Has Not Demonstrated Excusable Neglect</u>

15.    In the Opposition, the Plan Administrator demonstrated that the Motion should be

denied for the additional reason that the request for appointment of an equity committee came far

too late, even if the stock was not canceled, which it was as admitted in the Reply.  Opposition at

¶ 26.  Former Shareholder concedes that it took "so long to engage the court," Reply, p. 7, and

lists several reasons for why it has taken him so long to do so and to file his Motion.  *Id.* at 7-8.

However, Former Shareholder's reasons for delay do not meet the standard for excusable neglect

under *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993).

16.    Excusable neglect refers to two separate concepts.  *In re Legarde*, 654 B.R. 74, 86

(Bankr. E.D. Pa. 2023).  First, "neglect" empowers the Court to "accept late filings caused by

inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's

control." *Id.* (quoting *Pioneer Inv. Servs.*, 507 U.S. at 388).  Second, to determine if a late filing

is "excusable," a court should consider all relevant circumstances, including "danger of prejudice

to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason

for the delay, including whether it was within the reasonable control of the movant, and whether

the movant acted in good faith." *In re Legarde*, 654 B.R. at 86 (citing *Pioneer Inv. Servs.*, 507

U.S. at 395).

17.    Here, Former Shareholder's reasons fall short of either prong of this standard. His

social media posts[16] demonstrate that he has been tracking the Debtors' and their bankruptcy

cases for years, including the events leading up to the Debtors filing for bankruptcy. *See* Ex. A,

p. 10 ( Reddit post of four months ago provides: "I . . . do nothing but post dd for the last three

years relating to bbby and gme, enjoy!").[17]    Former Shareholder reposted an April 26, 2023

Twitter post about the April 25, 2023 delisting of the Bed Bath & Beyond Stock.  *See* Ex. A., p.

1.  As early as June 12, 2023, Former Shareholder was aware that the Debtors' bankruptcy cases

would impact holders of equity interests in the Debtors, and posted as such on his social media

account. *See Id.*  (posting a screenshot from Fidelity about Bed Bath & Beyond Inc. releasing

new information to shareholders). And it is clear from his social media postings that he was

continuing to monitor and analyze the bankruptcy case in September of 2023.  *See* Ex. A, p. 2

("Docket 2189 filed 9/18/23 is a breakdown of legal fees and services for AlixPartners provided

in August 2023.  While we currently have limited information, we can use the legal services to

form an opinion on what may be occurring.").  In February 2024, still four months before he

filed the Motion, Former Shareholder agreed that the "community didn't act in getting lawyer

representation" even though Former Shareholder was "extremely vocal about it for a couple

weeks." Ex. A., p. 3.  Thus, the tardiness of Former Shareholder's Motion was not due to

---

[16]    Copies of select social media posts posted by Former Shareholder are attached collectively as **Exhibit A**.
Former Shareholder identified his postings to his X account on page 9 of the Opposition, and the handle for that
account is @147Aurora.  The Plan Administrator identified Former Shareholder's Reddit account based on
several Reddit posts in which he refers to his posts on X under his handle: @147Aurora**.** *See* Ex. A, p. 7.

[17]    *See also* Ex. A, p. 8 (Reddit comment from 10 months ago:  "I think it's highly relevant that bbby is one of most
shorted stocks in history . . . but also has the largest—if not second largest—retail presence in history."); Ex. A,
p. 9 (Reddit comment from 10 months ago:  "[E]verything that has gone by thus far in the most expensive and
FASTEST voluntary ch 11 restructuring has been nothing but bullish to the debtor estate.").

neglect—it was due to a voluntary choice to sit on the sidelines and watch the case continue on without him.

18.     Former Shareholder's late filing is also not excusable.  Former Shareholder brought the Motion 14 months after the commencement of the Cases and over 250 days after all equity interests in BBB were canceled pursuant to the Plan and the Confirmation Order.  The Court cannot grant the relief the Former Shareholder seeks without unwinding the Plan—relief that would surely prejudice the post-confirmation estates.  It is also prejudicial to the estates to have to respond to a motion that should have been brought months ago (although it would not have been successful) and for which the crux of the relief requested is untenable.  Therefore, Former Shareholder cannot excuse his tardiness in filing the Motion as excusable neglect.

## C.     Former Shareholder's Social Media Activity Contradicts His Reasons for His Request to Redact His Personal Information.

19.     In the Opposition, the Plan Administrator established that Former Shareholder's request to redact his personal information should be denied because he has not demonstrated "cause" under Bankruptcy Code section 107.  Opposition ¶¶ 42-43.  Former Shareholder still has not articulated a sufficient cause to overcome the strong presumption of public access to court records, and, indeed, his actions belie the existence of any basis for redaction.

20.     First, in contradiction to Bankruptcy Rule 9011's requirement that every written motion and paper submitted to this Court by a pro se litigant be signed by the litigant and include the litigant's address and phone number, the Reply is unsigned and without address.

21.     Second, although Former Shareholder claims that his information should remain redacted because he is fearful of reprisal from the Plan Administrator and the "Community",[18]

---

[18]     *See* Reply, pp. 9-10; *see also* Email from Former Shareholder to Judge Papalia dated June 11, 2024 ("I believe giving Mr. Sandler this information – as the lead counsel for BOTH the Plan Administrator, as well as the UCC – *will be putting my family in danger.*").

these reasons appear to be a façade.  Since the filing of his Motion, Former Shareholder has been

posting online and actively engaging with others about the status of the Motion[19] and the

sanctions motion filed by the Plan Administrator, often in extraordinarily aggressive tones.  In

one instance, Former Shareholder posted online, "Judge P isn't sanctioning me dipsh*t it's the

corrupt lawyer for the corrupt Plan Administrator. . . . F**in shill."  Ex. A, p. 4.  *See also* Ex. A.,

p. 6 ("The court isn't trying to fine me yet.  A shill lawyer representing shorts is.").  These are

hardly the words of a meek and beleaguered individual who is truly fearful of reprisal as

suggested in Former Shareholders' submissions to and correspondence with the Court.  Former

Shareholder should not be able to feign helplessness and hide under a veil of anonymity in this

Court while simultaneously hurling insults at the Plan Administrator and his counsel, this court,

and others through his online posts.

Third, and more problematic, Former Shareholder still has not provided the Plan

Administrator—in violation of the Scheduling Order and the Court's directive of July 20, 2024—

with his name.  And even more problematic, it is not clear that Former Shareholder  provided

unredacted copies of his Motion and Reply to the Court as was required.  Former Shareholder's

request to redact his personal information should be denied, and his unredacted Motion and

Reply should be filed on the docket.

---

[19]  *See, e.g.*, Ex. A, p. 5 (seeking information from the "community" regarding "toxic conversations with the Plan
Man.").

## II.    <u>CONCLUSION</u>

22.    As demonstrated in the Opposition and in this Reply, Former Shareholder has not

demonstrated that an equity committee should be appointed at this juncture or that his personal

information should be redacted.  Accordingly, this Court should deny the Motion and grant such

additional relief as it deems just and proper under the circumstances.

Dated:  August 2, 2024                  **PACHULSKI STANG ZIEHL & JONES LLP**

                                        */s/ Bradford J. Sandler*
                                        Robert J. Feinstein (admitted *pro hac vice*)
                                        Bradford J. Sandler
                                        Colin R. Robinson
                                        PACHULSKI STANG ZIEHL & JONES LLP
                                        780 Third Avenue, 34th Floor
                                        New York, NY 10017
                                        Telephone:  (212) 561-7700
                                        Facsimile:  (212) 561-7777
                                        Email: rfeinstein@pszjlaw.com
                                                bsandler@pszjlaw.com
                                                crobinson@pszjlaw.com

                                        *Counsel to the Plan Administrator*

# EXHIBIT A

# EXHIBIT A[1]

[1]Annotations in red have been inserted to highlight key phrases for the Court's convenience. All other photos and commentary are direct screenshots from Former Shareholder's suspected accounts.

 **MJL🦋 reposted**

**POTATO_IN_MY_ASS** 🥔 @POTATO_INMYASS · Apr 26, 2023          ···

$BBBY filed for Chapter 11 Bankruptcy not Chapter 7, the delist is only a suspension as the company attempts to reorganize, @apple and @marvel did the same thing. 🤡

💬 13          🔁 13          ♡ 158          ‖ 8.6K          🔖  ⬆



🐻 **MJL🦋 reposted**

🐻 **MJL🦋**  @147Aurora · Jun 12, 2023

Replying to @147Aurora

😱 $BBBY $BBBYQ



 🧸 **MJL**🦋 **reposted**

**jake2b** ✔ @sboho · Sep 16, 2023 ···

$BBBYQ now *why* would Ryan Cohen and RC Ventures be a necessary party to be served Notice of a Hearing regarding AlixPartners' application to the Judge to approve their Completion Fee?

Add it to the list of things regarding #BBBYQ that make you say *"hmm."*

I've discussed the
Show more



| NOTICE OF HEARING | BYPASSED RECIPIENTS |
|---|---|

💬 17          ↻ 52          ♡ 291          ⅰⅼ 25K          🔖  ⬆️

---

🧸 **MJL**🦋 **reposted**

**Salvatore Linteum** @PhantomBlack699 · Sep 19, 2023 ···

$BBBYQ Docket 2189 Filed 09/18/23 is a breakdown of legal fees and services for AlixPartners provided in August 2023.

While we currently have limited information, we can use the legal services to form an opinion on what may be occurring.

Long thread, please retweet.

💬 12          ↻ 99          ♡ 217          ⅰⅼ 10K          🔖  ⬆️

Retrieved via: https://x.com/147Aurora

**MJL**🦋 ✔ @147Aurora · Feb 28                                    ···

I hope you're right. I am very concerned the community didn't act when we were hearing about MOMENTUM for a couple weeks in a row.

💬 1          ⟲          ♡          ۰�004 154          🔖  ⬆

**Bestest7447** @moonracker7447 · Feb 28                          ···

Are you saying community didn't act in getting lawyer representation?

💬 1          ⟲          ♡ 1          ۰ۆۄ 65          🔖  ⬆

**MJL**🦋 ✔ @147Aurora · Feb 28                                    ···

Yes, I was extremely vocal about it for a couple weeks but was unfortunately gaslit.

💬          ⟲          ♡          ۰ۆۄ 104          🔖  ⬆

Retrieved via: https://x.com/147Aurora                                           **3**



Retrieved via: https://x.com/147Aurora   [Since Deleted]

**4**

 **MJL** 🦋 ✅
@147Aurora

Gentlemen! 👋 @the_travis_b13 @MindandEmotion7 @FamousVariety
@yonderbeing @ThePPseedsShow

My objection responses are going to take me right up to the wire and I
wasn't planning on touching anything related to:
1) Tokenized stocks
2) JPM fraud/Tritton buybacks
3) Icahn involvement

However I wanted to give the Bed Bath and Beyond community the
opportunity to raise those theories/concerns and get them on the record
with the court.

➡️ If there is a TLDR and small list of questions you'd like included on my
responses I would be more than happy to integrate them to see if we can
get additional pressure from the court to address open questions from
former shareholders.

➡️ Additionally, I'm not sure if a website/discord ever got hosted for
such a thing... but if people have several examples of toxic conversations
with the Plan Man where he is being disrespectful to former shareholders
please also provide those or tell me where I can find them *(I would want
more than a couple, tbh).*

Thanks guys! 🙏

$BBBY #BBBY $BBBYQ #BBBYQ

9:00 AM · Jul 22, 2024 · **9,367** Views

Retrieved via: https://x.com/147Aurora

**5**



🐻 MJL🦋 ✓ @147Aurora · Jul 25  ···

The court isn't trying to fine me yet. A shill lawyer representing shorts is.

💬 2      🔁      ♡ 2      ᴵˡᴵ 92      🔖 ⬆️

🐻 MJL🦋 ✓ @147Aurora · Jul 25  ···

Definitely not, maybe I should start a go fund me? 😜 They're not legal expenses until the judge says they are, until then they're just complaints from a shill paid by shorts.

💬 1      🔁      ♡ 1      ᴵˡᴵ 76      🔖 ⬆️



**MJL_16** · 7mo ago

Yep thanks for tagging I'm literally never on reddit anymore. I have a number of posts on x @147aurora ... what I would say about the bonds (and this is just my opinion) but there is NO WAY IN HELL the bonds ARENT rehypothecated to all hell. In my opinion this is NOT necessarily bullish indicator or any endorsement to buy bonds.

 MJL_16 · 5 mo. ago

Thank you! Can you please DM me this information on X? It's a substantial number, and given it likely includes you and your family I would just like to know more about how many family members, specifically.

Here is the sample data from responses in the community. No hard feelings if you dont want to break it down further but anything better than a lump sum would be greatly appreciated – again give its such a large number. 😉

https://twitter.com/147Aurora

2 votes

Retrieved via: https://www.reddit.com/user/MJL_16/

**7**



**r/BBBY** ·

Lambos or Food Stamps? What is the likelihood of current shareholders coming away with a win in the end? -- Part 2

**MJL_16** commented 1 yr. ago

I think it's highly relevant that bbby is one of the most shorted stocks in history (both 'reported' and through bullshit derivatives they keep kicking the can on – for example the Jan 21 puts rolled to 23 which were rolled to 25) but also has the largest – if not second largest – retail presence in history.

NONE of these other companies were even close to bbby.

While it's important to have a fluid thesis, determining 'will shareholders get anything' seems to lately always solely analyze of what will come from chapter 11 and any potential deal that may or may no happen.

Bankruptcy aside, those obligations don't just 'disappear' and the market structure elements ARE RELEVANT imo and should continuously be brought up along side the legal route the company is taking to protect its future.

sHaReHoLdErS gEt NoThiNg 😊

They naked shorted a stock into oblivion preventing it from effectively managing its business and raising additional capital effectively. Period. Idgaf about any fUnDaMeNtALs bullshit, personally. I'll keep buying forever if that's what it takes. NFA

Edit: if a deal DOES get done... even if it's "$1/share" this bitch WILL squeeze hard af with the massive short interest – both reported and hidden in options and swaps.

FUCK YOU PAY ME


⬆ 115 ⬇     💬 Reply     ⤳ Share     ⋯

Retrieved via: https://www.reddit.com/user/MJL_16/

 **r/BBBY** · Okbet?

**MJL_16** commented 10 mo. ago

What's to talk about? He'll likely be back. Is there something to be concerned about or has literally everything that has gone by thus far in the most expensive and FASTEST voluntary ch 11 restructuring in history been nothing but bullish to the debtor estate. I can literally list a dozen different ways it ends bullish for equity. Name me one bear thesis. Please, I'm honestly asking for one bc I'm balls deep and my conviction is beyond unwavering.

⤴ 2 ⤵    💬 Reply    ↗ Share    ⋯

Retrieved via: https://www.reddit.com/user/MJL_16/                                    **9**

 **r/Teddy** · $BBBY $BBBYQ 📄 Shareholder Rights, Survey Update, and Ch.11 Open Questions

**MJL_16** **OP** commented 4 mo. ago

Edit: lol sorry I missed your last sentence when I answered below... I am definitely NOT Michael from the fucking op show 😜

Haha I was actually thinking about this a lot the last few days... the urgency, just a fyi - is the fuckin 180day bar date is literally days away, I hope you're aware of that and how close it really is.

As for the "we" and the "we're all individual investors" thing... I'm going to go with FUCK NO. 😆 Someone provide me that a rule or statute or code that talks about it being illegal to crowdsource retail ownership. Why is there not a "retail holding reporting llc"? I'm genuinely curious. People are satisfied with a green/red bar from fucking fidelity that shows the buy ratio for the day Roflroflrofl. My lightbulb moment was household investors are getting fucking connnnnned hard lol.

Where did that come from, honestly, the gme "xxxx holder" bullllllllshit? Why does the drs bot ONLY scrape directly registered shares? Where did this "we are all individual shareholders" for legal reasons garbage come from? WHAT MODS specifically... Platinum? Rensole? Runic glory? Some uu ess bee bullshit? I'm going to say adamantly say that sounds like a bunch of horseshit knowing what we know about superstonk, et al. I'm going to ask the drs folks on twitter and superstonk tomorrow but I'm tired rn lol. I bet my post gets taken down. 😜

The mmtlp community is doing/did amazing work with their community share count and it honestly looks like it might be making a massive difference here in the near future... Pulte did his "polite investing group" share count a year ago or whenever that was...

Lemme guess, the first argument someone would make is "bUt ThE ALgOs"... or "It only hUrTs ReTaiL"... I'm gonna call bullshit. Aladdin and the fucking algos are going to push the price wherever they want with derivatives of every kind and every can kick in the book this is a fact. You don't think Fidelity knows EXACTLY how many shares retail holds and trades on it accordingly? You don't this citadel knows that information w pfof they get from apex and robinhood and everywhere else? The only "people" or "entities" in the dark on this data is household investors haha it's likely a WAY more powerful tool than household investors give it credit for. Data is EVERYTHING and we have NONE.

Again, someone show me the law or rule that says crowdsourcing this information is "illegal". Question everything.

Ps idc if you're not on twitter - I have a fuck ton of Bobby and do nothing but post dd for the last three years relating to bbby and gme, enjoy! 🍻

⇧ 7 ⇩    💬 Reply    ➦ Share    ...

Retrieved via: https://www.reddit.com/user/MJL_16/

