**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**PLAN ADMINISTRATOR'S MOTION PURSUANT TO SECTION 105
OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER (I) APPROVING THE
CLOSE-OUT AGREEMENT WITH ARCH; (II) WITHDRAWING PROOFS OF
CLAIM NOS. 10344 AND 11343; AND (III) GRANTING RELATED RELIEF**

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BBB")[2] and affiliated debtors (the "Debtors"), by and through his undersigned counsel, hereby files this motion (the "Motion") pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and, to the extent applicable, Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of the order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) approving the Close-Out Agreement by and between the Plan Administrator, on the one hand, and Arch Insurance Company on behalf of itself and its subsidiary Arch Specialty Insurance Company (collectively, and solely in their capacities as insurers, "Arch"), on the other hand, and attached as **Exhibit 1** to the Proposed Order (the "Arch Agreement")[3]; (ii) withdrawing proofs of claim nos. 10344 and 11343; and (iii) granting related relief.  In support of this Motion, the Plan Administrator respectfully represents as follows:

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The Plan Administrator confirms his consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent

---

[2]     Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3]     The capitalized terms used in this section, to the extent not defined herein, shall have the meanings given to them in the Arch Agreement.

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 105 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019.

## Background

### A.    The Bankruptcy Cases

5.      On April 23, 2023 (the "Petition Date"), each Debtor, including BBB, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). During the Chapter 11 Cases, the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases were procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On May 5, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 218].

7.      On or about May 30, 2023, the Debtors filed their schedules and statements [Doc. Nos. 499-573], which were amended on or about July 12, 2023 [Doc. No. 1327] (the "Schedules").

8.      On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date,*

*(III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving*

*Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "<u>Bar Date Order</u>").

9.        The Bar Date Order set July 7, 2023 as the General Claims Bar Date and October

20, 2023 as the Governmental Bar Date.

10.        On September 14, 2023, the Court entered the *Findings of Fact, Conclusions of*

*Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the*

*Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc.

No. 2172] (the "<u>Confirmation Order</u>"), confirming the *Second Amended Joint Chapter 111 Plan*

*of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2160] (as amended, the "<u>Plan</u>").

11.        On September 29, 2023, the effective date of the Plan occurred (the "<u>Effective</u>

<u>Date</u>").  On the Effective Date, the Plan Administrator became the sole representative of the Wind-

Down Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims

reconciliation, and objecting to claims.  *See* Plan, Article IV, at § B.

12.        Pursuant to the Plan, for any Claim or Cause of Action (each as defined in the Plan)

where the amount in controversy is greater than $10 million and the settlement amount is less than

70%, the Plan Administrator shall have the authority to release or settle such Claims or Causes of

Action upon an affirmative vote of two members of the Oversight Committee.

B.        <u>The BBB Insurance Program</u>

13.        Arch issued to BBB and its various affiliates certain insurance policies providing

coverage for Workers Compensation and Employers Liability Insurance, Excess Workers

Compensation, Commercial General Liability, Automobile Liability, and Canadian General

Liability commencing March 1, 2007  through March 1, 2008 and then for annual policy periods

commencing March 1, 2008 up to and including the policy period incepting March 1, 2011 and

expiring March 1, 2012 as identified on Schedule A to the Arch Agreement (together with any and all endorsements and addenda thereto, collectively the "BBB Insurance Policies").

14.     In conjunction with the BBB Insurance Policies, Arch and BBB executed certain agreements including, without limitation, that certain Loss Sensitive Program Agreement effective as of March 1, 2007, that certain Loss Sensitive Program Agreement effective as of March 1, 2008, and that certain Loss Sensitive Program Agreement effective as of March 1, 2009 detailing certain of the liabilities, obligations and rights of Arch and BBB, which together with any addenda, program specifications tables and/or schedules thereto and any other similar agreements related thereto, are hereinafter collectively incorporated herein by reference and called the "BBB Agreements."

15.     The BBB Insurance Policies and the BBB Agreements constitute the "BBB Insurance Program."

16.     The BBB Insurance Program created certain obligations for which BBB was responsible to reimburse Arch (the "BBB Reimbursement Obligations").

17.     As of June 26, 2024, Arch holds certain security as collateral for the BBB Reimbursement Obligations in an aggregate amount of Five Million Three Hundred Seventy Thousand and Forty US Dollars ($5,370,040) held in the form of the proceeds of that certain Letter of Credit (LC # NUSCGS033822) issued by JPMorgan Chase Bank, N.A. (the "LOC Proceeds" and together with the Letter of Credit, as amended, confirmed, supplemented or replaced, the "BBB Collateral").

18.     On or about July 6, 2023, and in accordance with the Bar Date Order, Arch timely filed two proofs of claim (collectively, the "Arch POCs") asserting claims against BBB, which

Arch POCs are identified on the Debtors' claims register as proof of claim no. 10344 and proof of claim no. 11343, respectively.

19.      Pursuant to the Plan, on the Effective Date, among other things, the Debtors assumed the BBB Insurance Program and all of the Debtors' rights and obligations under the BBB Insurance Program vested, unaltered and in their entireties, with the Plan Administrator, as set forth more fully in the Plan.

### C.    **The Proposed Arch Agreement**

20.      The Plan Administrator requested a close-out of all present and future BBB Reimbursement Obligations arising from the BBB Insurance Program and a reduction, return, or release of certain of the BBB Collateral (the "Request").

21.      The Plan Administrator and Arch engaged in discussions and negotiations regarding this Request and, following these discussions and negotiations, entered into the Arch Agreement including the terms described below.

22.      The Arch Agreement requires, among other things, the Plan Administrator to seek and obtain entry of an order in the form of the Proposed Order attached hereto as **Exhibit A** approving the Arch Agreement.

### **Relief Requested**

23.      By this Motion, the Plan Administrator seeks the entry of an order in an abundance of caution, substantially in the form of the Proposed Order, pursuant to section 105 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019 approving the settlement between the Plan Administrator and Arch on the terms contained in the Arch Agreement.

24.    A summary of pertinent terms of the Arch Agreement include:[4]

1.    Within seven (7) business days after the Close-Out Effective Date (as defined in the Arch Agreement), Arch shall pay the amount of Five Hundred Thousand US Dollars ($500,000.00) (the "Close-Out Payment") to the Plan Administrator via ACH or wire transfer at Arch's sole discretion pursuant to the ACH or wire instructions and W-9 provided by the Plan Administrator to Arch. The difference between the amount of the LOC Proceeds and the Close-Out Payment shall be referred to as the "Close-Out Amount."

2.    On and after the Close-Out Effective Date, Arch shall (i) indefeasibly retain the Close-Out Amount and any and all other amounts previously paid or provided to, or deposited with, Arch by BBB and/or any of the other Debtors (or any predecessor or affiliate) in connection with the BBB Insurance Program or otherwise related to the BBB Insurance Program including, without limitation, any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to Arch at any time that may otherwise be due at any time from Arch to the Plan Administrator in connection with the BBB Insurance Program, if any (all of the foregoing together with the Close-Out Amount, collectively, the "Retained BBB Collateral"); and (ii) have all right, title, and interest in the Retained BBB Collateral including, without limitation, the right to hold, use and/or apply the Retained BBB Collateral and the proceeds thereof for any purpose and take any other actions in Arch's sole discretion without further notice to the Plan Administrator or any of the other BBB Releasors or order of the Court.  For the purposes of this paragraph, the automatic stay imposed by section 362(a) of the Bankruptcy Code and any injunction or release provision in the Plan, any order or any other document (collectively, the "Stay/Injunction"), if and to the extent applicable, shall be lifted without further order of the Court.

3.    On and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and on behalf of all of the other BBB Releasors and any party claiming by or through him or them (i) shall forever waive and release, and shall hereby be deemed to forever waive and release, all of the Plan Administrator's and the other BBB Releasors' rights, title and interest, if any, in and to the Retained BBB Collateral; and (ii) agrees that (a) none of the Plan Administrator nor any of the other BBB Releasors shall have any right, title or interest whatsoever in the Retained BBB Collateral, and (b) except as expressly set forth herein, no collateral and/or security shall be reduced, released, paid, or returned to the Plan Administrator or any of the

---

[4]    Descriptions of the terms of the Arch Agreement contained in this Motion are meant for informative purposes only, and in the event that there is any conflict between this Motion and the terms of the Arch Agreement, the terms of the Arch Agreement shall control.

other BBB Releasors and Arch shall not make any payments to the Plan Administrator or any of the other BBB Releasors in connection with the BBB Insurance Program.

4.      In consideration of the promises contained in the Arch Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and all parties claiming by, through, or under him, the Debtors, the Debtors' estates, all of the Debtors' successors and affiliates, and the present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, trustees, oversight committee members, and advisory board members of each of the foregoing (collectively, the "BBB Releasors") hereby fully and irrevocably release waive, acquit, and forever discharge Arch and each of its present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, and experts (collectively, the "Arch Releasors") of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the BBB Releasors had or claim to have or may have against any or all of the Arch Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling (as defined herein), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in the Arch Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

5.      In consideration of the promises contained in the Arch Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Releasors hereby fully and irrevocably release, waive, acquit, and forever discharge each of the BBB Releasors of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation,

attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Releasors had or claim to have or may have against any or all of the BBB Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in the Arch Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

6.      On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by Arch and/or the Plan Administrator.  For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Bankruptcy Cases by Arch and/or any of Arch's affiliates.

7.      Nothing in the Arch Agreement shall serve to relieve Arch of any of its obligations as the insurer under the BBB Insurance Program. On and after the Close-Out Effective Date, and subject to the Reservation of Rights (as defined in the Arch Agreement), (i) Arch shall, in its discretion, (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the BBB Insurance Policies (each, an "Covered Claim") to the extent required under the terms of the BBB Insurance Policies, (b) have the right, to the extent not already possessed, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Covered Claim (all of the foregoing, collectively, the "Claims Handling"); (ii) the Stay/Injunction, to the extent applicable, shall be lifted as provided in the Approval Order to permit Arch to perform the Claims Handling; and (iii) the Plan Administrator, on behalf of himself and the other BBB Releasors, waives any right to perform any Claims Handling or to participate therein.  For the avoidance of doubt, (i) nothing in the Arch Agreement or the Approval Order (as defined in the Arch Agreement) grants, or should be deemed to grant, any claimant relief from the Stay/Injunction to proceed with their claims without first obtaining relief therefrom from the Court, if and to the extent applicable, and (ii) except as specifically set forth in the Arch Agreement, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BBB Insurance Program; provided, that, for the avoidance of doubt, nothing requires or obligates Arch to pay any amounts within any self-

insured retention and, on and after the Close-Out Effective Date, neither the Plan Administrator nor the Debtors shall be required to pay any self-insured retention under the BBB Insurance Policies.

8.    The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to Arch that (i) he is the representative of the Debtors' estates in the Bankruptcy Cases and is entitled to enter into and execute the Arch Agreement; (ii) he is the sole and exclusive owner of the claims, causes of action, rights, and other interests which he is releasing by the Arch Agreement and he has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and will not assign, transfer, or convey any claim, cause of action, right, or other interest in the same to any person or entity; (iii) no party other than the Plan Administrator, including any party or creditor in any bankruptcy case commenced at any time under the Bankruptcy Code by any of the Debtors, their successors, or their affiliates, has any right in or to the BBB Collateral and/or the Retained BBB Collateral; and (iv) to the extent required under the terms of the Plan, the Confirmation Order, and/or any documents related thereto, he has consulted with the Oversight Committee (as defined in the Plan) regarding entering into the Arch Agreement and has obtained the Oversight Committee's consent and approval to enter into the Arch Agreement and obtained any other required approvals or permissions to enter into the Arch Agreement and that no further approvals or permissions are necessary for him to enter into the Arch Agreement.

## **Basis for Requested Relief**[5]

25.    Bankruptcy Rule 9019[6] provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. Bankr. R. 9019(a).

26.    Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc*., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Under this authority, the United

---

[5] As noted above, the Plan Administrator has broad authority to enter into settlements without Court authority. The Plan Administrator hereby seeks an order approving the Arch Agreement in an abundance of caution.

[6] Relief is hereby sought pursuant to Bankruptcy Rule 9019 to the extent applicable.

States Court of Appeals for the Third Circuit has emphasized that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Martin v. Myers (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)) (alterations in original); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (settlement and compromise are "a normal part of the process of reorganization"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (stating that there is a "strong presumption in favor of voluntary Arch Agreements"); *In re Petersburg Regency LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015) ("Settlements are favored in bankruptcy as they minimize litigation and expedite the administration of the bankruptcy estate." (internal quotations omitted)); *In re Culmtech, Ltd.*, 118 B.R, 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and . . . much of litigation in bankruptcy estates results in settlements").

27.    Moreover, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Thus, taken together, Bankruptcy Rule 9019(a) and section 105(a) grant bankruptcy courts the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998).

28.    The decision to approve a settlement "lies within the sound discretion of the Bankruptcy Court." *Petersburg Regency*, 540 B.R. at 535. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must assess whether the settlement is "fair and reasonable" and in the "best interests of the estate." *Id.* The Court must "assess and

balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.

29.     In striking this balance, the Court should consider "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." *Id.* The Court should not conduct a "mini-trial" on the merits but "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Petersburg Regency*, 540 B.R. at 353 (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. den.*, 464 U.S. 822 (1983)). Courts generally defer to a plaintiff or trustee's business judgment when there is a legitimate business justification for the decision. *See In re Martin*, 91 F.3d at 395.

30.     A review of the four factors from *In re Martin* demonstrates that the Arch Agreement is in the best interests of the estates and of all creditors, and a reasonable exercise of the Plan Administrator's business judgment.

31.     *Probability of Success*. The Plan Administrator's probability of success on the issues resolved by the Arch Agreement is uncertain. The BBB Insurance Program entitles Arch to retain the BBB Collateral to secure, among other things, the BBB Reimbursement Obligations. Estimating and liquidating Arch's claims would be costly and time-consuming, and the outcome of any such endeavor is inherently uncertain. Accordingly, the Plan Administrator's likelihood of success on the merits is unclear, at best.

32.     *Difficulties of Collection*. After Court approval of the Arch Agreement, Arch will pay the Close-Out Payment to the Plan Administrator in accordance with the terms of the Arch Agreement. As the payment of the Close-Out Payment without the Arch Agreement would have

likely required extensive efforts (and resulting costs) on the part of the Plan Administrator and his professionals, and as it may have taken a great deal of time to secure such release, it is clear that this factor weighs heavily in favor of approving the Arch Agreement.

33.     *Complexity of Litigation.*  While there is no current litigation, insurance claims and contracts are often complex to litigate, typically involving extensive fact discovery.  Accordingly, this factor also weighs in favor of approving the Arch Agreement.

34.     *Paramount Interests of Creditors*.  Finally, the Arch Agreement is in the paramount interest of creditors.  Pursuant to the Arch Agreement, Arch is waiving certain of its claims against the Debtors' estates and paying the Close-Out Payment to the Plan Administrator.  This relieves a substantial burden on the Plan Administrator in addressing Arch's claims, streamlines the claims resolution process, and allows for greater potential distributions to creditors.  The benefit to the estates and other creditors is unquestionable.  Further, the Arch Agreement arises out of arm's-length bargaining between the Plan Administrator and Arch.

35.     For all these reasons, the Plan Administrator submits that his entry into the Arch Agreement is a sound exercise of his business judgment and that the compromises reached with Arch reflected in the Arch Agreement are fair, reasonable, and in the best interest of the Debtors' estates and creditors. The Plan Administrator respectfully requests that the Court approve and authorize entry into the Arch Agreement.

## **The Requirements of Local Rule 9019-3 Are Satisfied**

36.     The Plan Administrator respectfully submits that all information required pursuant to Local Rule 9019-3 is encompassed in the Motion and Arch Agreement.  Accordingly, the Plan Administrator requests that the Court waive the requirement to file any separate notice pursuant to Local Rule 9019-3.

### Waiver of Memorandum of Law

37.    The Plan Administrator respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Plan Administrator relies is set forth herein and the Motion does not raise any novel issues of law.

### No Prior Request

38.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Notice

39.    Notice of the Motion is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings.**  Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Notice and Claims Agent shall not be required to file updated service lists.

40.    Pursuant to Paragraph 124, notice of the Motion and the hearing thereon was given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date; and (iii) all parties who are registered to receive electronic notice in these Chapter 11 Cases.  The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

**WHEREFORE**, the Plan Administrator respectfully requests that this Court enter an order substantially in the same form as the Proposed Order attached hereto as **Exhibit A**: (i) granting the Motion, (ii) approving the Arch Agreement attached hereto as **Exhibit 1** to the Proposed Order, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: August 13, 2024

/s/ Colin R. Robinson
Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
Email:    rfeinstein@pszjlaw.com
            bsandler@pszjlaw.com
            plabov@pszjlaw.com
            crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**ORDER GRANTING MOTION OF THE PLAN ADMINISTRATOR PURSUANT TO**
**SECTION 105 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER**
**(I) APPROVING THE CLOSE-OUT AGREEMENT WITH ARCH;**
**(II) WITHDRAWING PROOFS OF CLAIM NOS. 10344 AND 11343; AND**
**(III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through six (6), is

**ORDERED**.

---

[1]     The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Upon the *Plan Administrator's Motion Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving the Close-Out Agreement with Arch; (II) Withdrawing Proofs of Claim Nos. 10344 and 11343; and (III) Granting Related Relief* (the "<u>Motion</u>")[2]; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Parties negotiated the terms and conditions of the Arch Agreement in good faith, at arm's length, and free of any collusion; and this Court having found that the terms and conditions contained in the Arch Agreement are fair, equitable, reasonable and in the best interests of the Debtors, their estates, creditors and equity holders and is a valid and sound exercise of the Plan Administrator's business judgment and should be approved; and this Court having found that the Plan Administrator's notice of the Motion was sufficient under the circumstances and that no other of further notice is necessary; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED**.

2.    The Arch Agreement attached hereto as **<u>Exhibit 1</u>** and all of the terms thereof are hereby approved.

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Arch Agreement, as applicable.

3.    The Plan Administrator is authorized to enter into the Arch Agreement on behalf of himself and all of the other BBB Releasors and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of the Arch Agreement.

4.    To the extent necessary, Arch is also authorized to enter into the Arch Agreement and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of the Arch Agreement including, but not limited to, paying the Close-Out Payment to the Plan Administrator accordance with the terms of the Arch Agreement.

5.    On and after the Close-Out Effective Date, none of the Plan Administrator, any of the other BBB Releasors, or any person or entity claiming by and/or through him and/or them shall have any rights, title, or interests in the Retained BBB Collateral or the proceeds thereof.

6.    On and after the Close-Out Effective Date, Arch shall have all right, title, and interest in the Retained BBB Collateral and is authorized to draw upon the Retained BBB Collateral, hold and use the proceeds and take other actions related to the Retained BBB Collateral, in each case in Arch's sole discretion and without further order of the Court.

7.    The Stay/Injunction, to the extent applicable, is lifted to permit Arch to conduct the Claims Handling.

8.    The following releases set forth in the Arch Agreement are hereby approved:

    i.    In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and all parties claiming by, through, or under him, the Debtors, the Debtors' estates, all of the Debtors' successors and affiliates, and the present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, trustees, oversight committee members, and advisory board members of each of the foregoing (collectively, the "BBB Releasors") hereby fully and irrevocably release waive, acquit, and forever discharge Arch and each of its present, past, and

3

future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, and experts (collectively, the "Arch Releasors") of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the BBB Releasors had or claim to have or may have against any or all of the Arch Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling (as defined herein), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

ii. In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Releasors hereby fully and irrevocably release, waive, acquit, and forever discharge each of the BBB Releasors of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Releasors had or claim to have or may have against any or all of the BBB Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

9.     Nothing in this Order or the Arch Agreement (i) expands, contracts or otherwise alters the insurance coverage provided by the BBB Insurance Program or the terms and conditions of the BBB Insurance Program; (ii) permits any holder of a Covered Claim to recover the same amounts from Arch and again from any other person or entity, including the Plan Administrator, the Debtors, and/or the Debtors' estates, (iii) creates or permits a direct right of action by any holder of a Covered Claim against Arch; (iv) precludes or limits, in any way, the rights of Arch to contest and/or litigate with any person or entity the existence, primacy, and/or scope of available insurance coverage under any alleged applicable policy; (v) is a determination as to insurance coverage under the BBB Insurance Program; (vi) relieves any holder of a Covered Claim from any obligation to have filed a proof of claim in the Chapter 11 Cases; or (vii) alters, modifies, amends, affects, impacts, or prejudices in any way or respect any of the terms and conditions of and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses under any insurance policy and/or any related agreement that is not part of the BBB Insurance Program and/or any surety bond and/or any agreement related thereto.

10.     On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by Arch and/or the Plan Administrator.  For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Chapter 11 Cases by Arch and/or any of Arch's affiliates.

11.     Except as expressly set forth in this Order or in the Arch Agreement, nothing amends, alters, or modifies the terms and conditions of the Plan and/or the Confirmation Order.

12.     This Order and the Arch Agreement are binding upon and shall inure to the benefit of the Parties and their respective administrators, heirs, executors, legal representatives, successors

and permitted assigns, including, without limitation, any successor to the Plan Administrator, the

Debtors, the Debtors' estates, and/or the Debtors' affiliates and successor.

13.     The terms and conditions of this Order are immediately effective and enforceable

upon its entry, and for the avoidance of doubt the stays provided for by Rules 4001(a)(3) and

6004(h) of the Federal Rules of Bankruptcy Procedure, if and to the extent applicable, shall be,

and hereby are, waived.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

15.     The requirement set forth in Local Rule 9019-3 that the Plan Administrator file a

notice of proposed compromise or settlement is hereby deemed satisfied by the contents of the

Motion and Arch Agreement or otherwise waived.

16.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation or interpretation of this Order.

## Exhibit 1

**Arch Agreement**

Execution Version

# CLOSE-OUT AGREEMENT

THIS CLOSE-OUT AGREEMENT (the "Agreement") is made and entered into as of August 12, 2024 by and between Michael Goldberg solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BBB") and the other Debtors (as defined herein), and Arch Insurance Company on behalf of itself and its subsidiary Arch Specialty Insurance Company (collectively, and solely in their capacities as insurers, "Arch"). Each of Arch and the Plan Administrator is a "Party" and are collectively the "Parties."

## Recitals

**WHEREAS**, Arch issued to BBB and its various affiliates certain insurance policies providing coverage for Workers Compensation and Employers Liability Insurance, Excess Workers Compensation, Commercial General Liability, Automobile Liability, and Canadian General Liability commencing March 1, 2007 through March 1, 2008 and then for annual policy periods commencing March 1, 2008 up to and including the policy period incepting March 1, 2011 and expiring March 1, 2012 as identified on Schedule A hereto (together with any and all endorsements and addenda thereto, collectively the "BBB Insurance Policies"); and

**WHEREAS**, in conjunction with the BBB Insurance Policies, Arch and BBB executed certain agreements including, without limitation, that certain Loss Sensitive Program Agreement effective as of March 1, 2007, that certain Loss Sensitive Program Agreement effective as of March 1, 2008, and that certain Loss Sensitive Program Agreement effective as of March 1, 2009 detailing certain of the liabilities, obligations and rights of Arch and BBB, which together with any addenda, program specifications tables and/or schedules thereto and any other similar agreements related thereto, are hereinafter collectively incorporated herein by reference and called the "BBB Agreements"; and

**WHEREAS**, the BBB Insurance Policies and the BBB Agreements constitute the "BBB Insurance Program"; and

**WHEREAS**, the BBB Insurance Program created certain obligations for which BBB was responsible to reimburse Arch (the "BBB Reimbursement Obligations"); and

**WHEREAS**, as of June 26, 2024, Arch holds certain security as collateral for the BBB Reimbursement Obligations in an aggregate amount of Five Million Three Hundred Seventy Thousand and Forty US Dollars ($5,370,040) held in the form of the proceeds of that certain Letter of Credit (LC # NUSCGS033822) issued by JPMorgan Chase Bank, N.A. (the "LOC Proceeds" and together with the Letter of Credit, as amended, confirmed, supplemented or replaced, the "BBB Collateral"); and

**WHEREAS**, on April 23, 2023, BBB and certain affiliates (collectively, "Debtors") filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of

New Jersey (the "Court") commencing bankruptcy cases which have been jointly administered at Case No. 23-13359 (VFP) (the "Bankruptcy Cases"); and

WHEREAS, on or about July 6, 2023, and in accordance with the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584], Arch timely filed two proofs of claim (collectively, the "Arch POCs") asserting claims against BBB; and

WHEREAS, the Arch POCs are identified on the Debtors' claims register as proof of claim no. 10344 and proof of claim no. 11343, respectively; and

WHEREAS, on September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the Debtors' *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2160] (the "Plan"); and

WHEREAS, on September 29, 2023, the Effective Date (as defined in the Plan) of the Plan occurred; and

WHEREAS, pursuant to the Plan, on the Effective Date, among other things, the Debtors assumed the BBB Insurance Program and all of the Debtors' rights and obligations under the BBB Insurance Program vested, unaltered and in their entireties, with the Plan Administrator, as set forth more fully in the Plan; and

WHEREAS, pursuant to the Plan, the Plan Administrator has full discretion to settle any Claim or Cause of Action (as defined in the Plan) where the amount at issue is Ten Million Dollars (US $10,000,000) or less, and no Court approval is required for any such settlement; and

WHEREAS, the Plan Administrator now desires to extinguish all of its and the Debtors' financial obligations under the BBB Insurance Program and forever settle all outstanding balances due to Arch under the BBB Insurance Program as a result thereof, and have Arch continue to adjust and settle all claims and claims expenses under the BBB Insurance Program, and Arch is willing to do so;[1] and

---

[1] For the avoidance of doubt, nothing shall alter, modify, amend, affect, impact, and/or prejudice in any way any insurance policies and/or related agreements that are not part of the BBB Insurance Program as defined herein, any surety bonds and/or related agreements, and/or any of the terms and conditions of or the legal, equitable, or contractual rights, obligations, claims, or defenses under or with respect to any of the foregoing.

Docusign Envelope ID: A5ED68A6-76B2-4EE7-BAFB-5DB357A995AD

**WHEREAS,** the Plan Administrator requested a close-out of all present and future BBB Reimbursement Obligations arising from the BBB Insurance Program and a reduction, return, or release of certain of the BBB Collateral (the "Request"); and

**WHEREAS,** the Parties are entering into this Agreement to settle and resolve any and all claims, disputes, and issues between the Parties related to the BBB Insurance Program, the BBB Collateral, and the Request.

**NOW, THEREFORE,** in consideration of the mutual premises, covenants and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties enter into this Agreement and agree to be bound by its terms.

## Agreement

1.   Within seven (7) business days after the Close-Out Effective Date (as defined herein), Arch shall pay the amount of Five Hundred Thousand US Dollars ($500,000.00) (the "Close-Out Payment") to the Plan Administrator via ACH or wire transfer at Arch's sole discretion pursuant to the ACH or wire instructions and W-9 provided by the Plan Administrator to Arch. The difference between the amount of the LOC Proceeds and the Close-Out Payment shall be referred to herein as the "Close-Out Amount."

2.   The Plan Administrator shall file and serve a motion (the "Motion") seeking entry of an order (the "Approval Order") approving this Agreement as executed by the Parties pursuant to section 105 of the Bankruptcy Code and/or Federal Rule of Bankruptcy Procedure 9019. The Motion shall be in form and substance acceptable to Arch in its sole discretion and shall be served by the Plan Administrator at the Plan Administrator's own expense on a list of entities that is acceptable to Arch in its sole discretion.  The Plan Administrator shall cooperate, and shall be required to cooperate, fully with Arch in responding to or defending against any challenges or objections to the Motion and, further, the Plan Administrator shall not shorten the notice period or extend any objection deadline for the Motion without Arch's express prior written consent.

3.   The Approval Order shall be in form and substance reasonably acceptable to Arch and shall provide, among other things, that: (i) the Agreement is approved; (ii) the Plan Administrator is authorized to enter into this Agreement on behalf of himself and all of the other BBB Releasors (as defined herein) and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of this Agreement; (iii) to the extent necessary, Arch is authorized to enter into this Agreement and to take any and all actions necessary and appropriate to consummate and perform the terms and conditions of this Agreement, including, but not limited to, drawing on, applying, releasing, and/or returning BBB Collateral, as applicable; (iv) on and after the Close-Out Effective Date, none of the Plan Administrator, any of the other BBB Releasors, or any person or entity claiming by and/or through him and/or them shall have any rights, title, or interests in the Retained BBB Collateral (as defined herein) or the proceeds thereof; (v) on and after the Close-Out Effective Date, Arch shall have all right, title, and interest in the Retained BBB Collateral and is authorized to draw upon the Retained BBB Collateral, hold and use

the proceeds and take other actions related to the Retained BBB Collateral, in each case in Arch's sole discretion and without further order of the Court; (vi) the Stay/Injunction (as defined herein), to the extent applicable, is lifted to permit Arch to conduct the Claims Handling (as defined herein); and (vii) the releases set forth herein, which releases shall be restated in the Approval Order in full, are approved. To the extent of any inconsistency between (i) this Agreement and the Approval Order on the one hand, and (ii) any other document, agreement, or order (including, but not limited to, the Plan or the Confirmation Order) on the other hand, the terms of this Agreement and the Approval Order shall control. To the extent of any inconsistency between (i) this Agreement and (ii) the Approval Order, the terms of this Agreement shall control.

4.      Notwithstanding any provision in the Approval Order or any other order of the Court to the contrary, the effective date of this Agreement (the "Close-Out Effective Date") shall be, and shall occur on, the first business day after the Approval Order has been entered by the Court and has become a final, non-appealable order that has not been modified, has not been appealed or challenged, and has no appeals or challenges pending with respect thereto.

5.      On and after the Close-Out Effective Date, Arch shall (i) indefeasibly retain the Close-Out Amount and any and all other amounts previously paid or provided to, or deposited with, Arch by BBB and/or any of the other Debtors (or any predecessor or affiliate) in connection with the BBB Insurance Program or otherwise related to the BBB Insurance Program including, without limitation, any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to Arch at any time that may otherwise be due at any time from Arch to the Plan Administrator in connection with the BBB Insurance Program, if any (all of the foregoing together with the Close-Out Amount, collectively, the "Retained BBB Collateral"); and (ii) have all right, title, and interest in the Retained BBB Collateral including, without limitation, the right to hold, use and/or apply the Retained BBB Collateral and the proceeds thereof for any purpose and take any other actions in Arch's sole discretion without further notice to the Plan Administrator or any of the other BBB Releasors or order of the Court. For the purposes of this paragraph, the automatic stay imposed by section 362(a) of the Bankruptcy Code and any injunction or release provision in the Plan, any order or any other document (collectively, the "Stay/Injunction"), if and to the extent applicable, shall be lifted without further order of the Court.

6.      On and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and on behalf of all of the other BBB Releasors and any party claiming by or through him or them (i) shall forever waive and release, and shall hereby be deemed to forever waive and release, all of the Plan Administrator's and the other BBB Releasors' rights, title and interest, if any, in and to the Retained BBB Collateral; and (ii) agrees that (a) none of the Plan Administrator nor any of the other BBB Releasors shall have any right, title or interest whatsoever in the Retained BBB Collateral, and (b) except as expressly set forth herein, no collateral and/or security shall be reduced, released, paid, or returned to the Plan Administrator or any of the other BBB Releasors and Arch shall not make any payments to the Plan Administrator or any of the other BBB Releasors in connection with the BBB Insurance Program.

4

7.      In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and all parties claiming by, through, or under him, the Debtors, the Debtors' estates, all of the Debtors' successors and affiliates, and the present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, trustees, oversight committee members, and advisory board members of each of the foregoing (collectively, the "<u>BBB Releasors</u>") hereby fully and irrevocably release waive, acquit, and forever discharge Arch and each of its present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, and experts (collectively, the "<u>Arch Releasors</u>") of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the BBB Releasors had or claim to have or may have against any or all of the Arch Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling (as defined herein), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

8.      In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Releasors hereby fully and irrevocably release, waive, acquit, and forever discharge each of the BBB Releasors of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Releasors had or claim to have or may have against any or all of the BBB Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance

and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

9.      With respect to the matters released herein, the Arch Releasors and the BBB Releasors expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

10.     On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by Arch and/or the Plan Administrator. For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Bankruptcy Cases by Arch and/or any of Arch's affiliates.

11.     Nothing herein shall serve to relieve Arch of any of its obligations as the insurer under the BBB Insurance Program. On and after the Close-Out Effective Date, and subject to the Reservation of Rights (as defined herein), (i) Arch shall, in its discretion, (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the BBB Insurance Policies (each, an "Covered Claim") to the extent required under the terms of the BBB Insurance Policies, (b) have the right, to the extent not already possessed, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Covered Claim (all of the foregoing, collectively, the "Claims Handling"); (ii) the Stay/Injunction, to the extent applicable, shall be lifted as provided in the Approval Order to permit Arch to perform the Claims Handling; and (iii) the Plan Administrator, on behalf of himself and the other BBB Releasors, waives any right to perform any Claims Handling or to participate therein. For the avoidance of doubt, (i) nothing in this Agreement or the Approval Order (as defined herein) grants, or should be deemed to grant, any claimant relief from the Stay/Injunction to proceed with their claims without first obtaining relief therefrom from the Court, if and to the extent applicable, and (ii) except as specifically set forth in this Agreement, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BBB Insurance Program; provided, that, for the avoidance of doubt, nothing requires or obligates Arch to pay any amounts within any self-insured retention and, on and after the Close-Out Effective Date, neither the Plan Administrator nor the Debtors shall be required to pay any self-insured retention under the BBB Insurance Policies.

12.     The Plan Administrator, on behalf of himself and all of the other BBB Releasors and all parties claiming by, through or under him or them, covenants and agrees not to commence or prosecute any action, arbitration or proceeding against any of the Arch Releasors arising out of or relating to the matters released hereby. Arch, on behalf of itself and all of the other Arch Releasors and all parties claiming by through or under it or them, jointly and severally covenant and agree not to commence or prosecute any action or proceeding against any of the BBB Releasors arising out of or relating to the matters released hereby.

Docusign Envelope ID: 45E368AC-76B2-4EE7-BAFB-5D2357A995AD

13.     Nothing in this Agreement or the Approval Order (i) expands, contracts or otherwise alters the insurance coverage provided by the BBB Insurance Program or the terms and conditions of the BBB Insurance Program; (ii) permits any holder of a Covered Claim to recover the same amounts from Arch and again from any other person or entity, including the Plan Administrator, the Debtors, and/or the Debtors' estates, (iii) creates or permits a direct right of action by any holder of a Covered Claim against Arch; (iv) precludes or limits, in any way, the rights of Arch to contest and/or litigate with any person or entity the existence, primacy, and/or scope of available insurance coverage under any alleged applicable policy; (v) is a determination as to insurance coverage under the BBB Insurance Program; (vi) relieves any holder of a Covered Claim from any obligation to have filed a proof of claim in the Bankruptcy Cases; or (vii) alters, modifies, amends, affects, impacts, or prejudices in any way or respect any of the terms and conditions of and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses under any insurance policy and/or any related agreement that is not part of the BBB Insurance Program and/or any surety bond and/or any agreement related thereto.  This paragraph shall be referred to as the "Reservation of Rights."

14.     Except as expressly set forth in this Agreement, nothing amends, alters, or modifies the terms and conditions of the Plan and/or the Confirmation Order.

15.     This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective administrators, heirs, executors, legal representatives, successors and permitted assigns, including, without limitation, any successor to the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' affiliates and successor; provided, however, except as expressly stated herein, nothing herein is intended to benefit any third party.

16.     This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to any conflict of laws principles that would cause the application of the laws of any other jurisdiction.  Any disputes concerning this Agreement shall be subject to arbitration in accordance with the terms contained in the BBB Agreements.

17.     This Agreement has been negotiated at arm's length by parties represented by legal counsel of their choosing, constitutes the entire agreement of the Parties, and supersedes all previous agreements and/or contracts, whether oral or written, between them with respect to the subject matter hereof.  The recitals included in this Agreement are specifically incorporated herein and made a part of this Agreement.

18.     For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective Parties and their counsel, and any rule of construction of contracts that would otherwise provide ambiguities are to be construed against the drafting party shall not be applied against any person.

19.     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, together which shall for all purposes constitute on agreement binding upon each of the Parties.  Exchange of executed signature pages via electronic means (including Portable Document Format (.pdf) signatures and digital signatures using digital

signature software that electronically captures, or otherwise allows a signatory to adopt, an identifying mark as such person's signature to this Agreement (*e.g.,* Docusign®)) shall be sufficient to effectuate this Agreement, provided, however, the Plan Administrator shall provide an original, wet signature to Arch.

20.   The Parties agree to perform all further acts and to execute and deliver or cause to be executed and delivered all documents, instruments, agreements, which may be reasonably necessary to carry out the intents and purposes of this Agreement or to enable the other Party to enforce any of its rights under this Agreement.

21.   Each Party acknowledges, represents, warrants that it has the authority to enter into this Agreement; it has carefully read this Agreement in its entirety; it has had an opportunity to consult with its respective attorneys concerning the meaning, import and legal significance hereto; it understands all of this Agreement's terms; it has consulted with independent counsel of its choice, who answered to its satisfaction all questions that it had regarding this Agreement; its undersigned representative is duly authorized to enter into this Agreement on its behalf; it voluntarily assents to all the terms and conditions contained herein; by signing this Agreement it is bound by the terms and conditions contained in this Agreement; and it is voluntarily executing this Agreement of its own free will.

22.   The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to Arch that (i) he is the representative of the Debtors' estates in the Bankruptcy Cases and is entitled to enter into and execute this Agreement; (ii) he is the sole and exclusive owner of the claims, causes of action, rights, and other interests which he is releasing by this Agreement and he has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and will not assign, transfer, or convey any claim, cause of action, right, or other interest in the same to any person or entity; (iii) no party other than the Plan Administrator, including any party or creditor in any bankruptcy case commenced at any time under the Bankruptcy Code by any of the Debtors, their successors, or their affiliates, has any right in or to the BBB Collateral and/or the Retained BBB Collateral; and (iv) to the extent required under the terms of the Plan, the Confirmation Order, and/or any documents related thereto, he has consulted with the Oversight Committee (as defined in the Plan) regarding entering into this Agreement and has obtained the Oversight Committee's consent and approval to enter into this Agreement and obtained any other required approvals or permissions to enter into this Agreement and that no further approvals or permissions are necessary for him to enter into this Agreement.

23.   The Parties agree to be responsible for and to bear their own costs, expenses and attorneys' fees incurred in connection with this Agreement and the negotiations related to and the preparation and performance of this Agreement, and not to seek reimbursement of any such costs, expenses and attorneys' fees from any other Party.

24.   All notices, requests, waivers, consents and other communications hereunder shall be in writing and shall be mailed first class certified mail or by nationally recognized overnight courier service, or by personal delivery, with postage or other applicable delivery fees prepaid and addressed as follows:

<u>If to Arch:</u>

Arch Insurance Group Inc.
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107
Attention: Regan Shulman
Telephone: (201) 743- 4224
Email: rshulman@archinsurance.com

<u>If to the Plan Administrator:</u>

Michael I. Goldberg
Akerman LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301

and

Stephen Schwab
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606

25.    The Parties acknowledge and agree that this Agreement is being entered into for the purpose of avoiding the expense, delay and uncertainty of litigation and nothing contained herein shall constitute, be introduced, treated, deemed or otherwise interpreted or construed as (a) an admission, waiver, evidence or concession by any of the Parties hereto of any fact, liability or wrongdoing, or (b) evidence in any judicial or arbitration proceeding, except to enforce or defend the terms herein.

26.    No failure or delay by any Party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

27.    No amendment, modification or alteration of this Agreement shall be valid unless it shall be in writing and signed by each of the Parties.  Additionally, no course of conduct or method of doing business shall modify or amend the terms of this Agreement.

28.    Neither this Agreement, nor any of the rights, interests and obligations hereunder, may be assigned by any Party without the prior written consent of the other Parties.

Docusign Envelope ID: A5ED684C-76B2-4EE7-BAFB-5B237A995AD

29.     The representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

*[ Signature Page Follows ]*

Docusign Envelope ID: 3DB40BB7-809F-4C8E-AD34-B9F75D042E54

**Execution Version**

      TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

MICHAEL GOLDBERG, on behalf of himself solely in his capacity as the Plan Administrator to the Debtors and on behalf of the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates

By: _____
        4B41846EFB794A2...

Printed Name: _____Michael Goldberg_____

Title: _____Plan administrator_____

Date: _____August 12, 2024_____

ARCH INSURANCE COMPANY, on behalf of itself and Arch Specialty Insurance Company

By: _____

Printed Name: _____

Title: _____

Date: _____

**Execution Version**

TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

MICHAEL GOLDBERG, on behalf of himself solely in his capacity as the Plan Administrator to the Debtors and on behalf of the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates

By: _____

Printed Name: _____

Title: _____

Date: _____

ARCH INSURANCE COMPANY, on behalf of itself and Arch Specialty Insurance Company

By: _____ *Richard Stock* _____

Printed Name: _____ Richard Stock _____

Title: _____ EVP - CUO Large Account Casualty and Surety

Date: _____ 8/8/2024 _____

Docusign Envelope ID: A5E8694C76B2-4EE7-BAEB-5BP357A995AD

**Execution Version**

## CLOSE-OUT AGREEMENT

### Schedule A

### BBB Insurance Policies

| Policy No. | Policy Period Inception Date |
|---|---|
| 11WCI4934100 | 3/1/2007 |
| 11WCI4934200 | 3/1/2007 |
| 11GPP4934600 | 3/1/2007 |
| 11GPP4934700 | 3/1/2007 |
| 11CAB4934400 | 3/1/2007 |
| 11CAB4934500 | 3/1/2007 |
| 11CAB4934800 | 3/1/2007 |
| 11WCI4934101 | 3/1/2008 |
| 11WCI4934201 | 3/1/2008 |
| 11GPP4934601 | 3/1/2008 |
| 11CAB4934401 | 3/1/2008 |
| 11CAB4934501 | 3/1/2008 |
| 11WCI4956602 | 3/1/2009 |
| 11WCI4934202 | 3/1/2009 |
| 11WCI4934102 | 3/1/2009 |
| 11GPP4934602 | 3/1/2009 |
| 11CAB4934402 | 3/1/2009 |
| 11CAB4934502 | 3/1/2009 |
| 11WCI4934103 | 3/1/2010 |
| 11WCI4934203 | 3/1/2010 |

| | |
|---|---|
| 11WCI4956603 | 3/1/2010 |
| 11GPP4934603 | 3/1/2010 |
| 11CAB4934403 | 3/1/2010 |
| 11CAB4934503 | 3/1/2010 |
| 11WCI4934104 | 3/1/2011 |
| 11WCI4934204 | 3/1/2011 |
| 11WCI4956604 | 3/1/2011 |
| 11GPP4934604 | 3/1/2011 |
| 11CAB4934404 | 3/1/2011 |
| 11CAB4934504 | 3/1/2011 |