**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email:    bsandler@pszjlaw.com
              plabov@pszjlaw.com
              crobinson@pszjlaw.com

Peter O. Larsen (*pro hac vice* forthcoming)
Raye Elliott (*pro hac vice* forthcoming)
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
Email:    peter.larsen@akerman.com
              raye.elliott@akerman.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re:<br><br>20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc., *et.al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-13359(VFP)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc.,<br><br>        Plaintiff,<br>v.<br><br>INTERNAL REVENUE SERVICE, an agency of the United States of America,<br><br>        Defendant. | Adv. No. **Refer to Summons** |

---

[1] The last four digits of Debtor Bed Bath & Beyond, Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby/.

## COMPLAINT

Michael Goldberg, in his capacity as Plan Administrator (the "Plan Administrator" or "Plaintiff") for 20230930-DK-Butterfly-1, Inc. f/k/a Bed Bath and Beyond, Inc.[2] and affiliated debtors (the "Debtors"), by and through undersigned counsel, files this adversary complaint against Defendant, Internal Revenue Service (the "IRS"), an agency of the United States of America, and alleges as follows:

## Nature of the Action

1.      The Plan Administrator brings this action on behalf of Debtors against Defendant to recover the overpayment of federal income tax plus accrued interest thereon that has been retained by Defendant under the Internal Revenue Code of 1986, as amended from time to time (the "IRC"). The Plan Administrator asserts various theories of recovery, including improper denial of the Debtors' claims for refund, turnover of property, unjust enrichment, and declaratory relief.

## The Parties

2.      The Plan Administrator is the sole representative of the Debtors and assumed responsibility for collecting assets of the bankruptcy estate, as more fully set forth in the Debtors' confirmed Chapter 11 Plan as discussed below.

3.      Defendant, IRS, is an agency of the United States of America.

## Jurisdiction and Venue

4.      The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 505(a).

---

[2] Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond, Inc. which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond, Inc." was changed to 20230930-DK-Butterfly-1, Inc.

5.      This is a core proceeding under 28 U.S.C. § 157(b).

6.      Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and legal predicates for relief requested by this Complaint are sections 105, 505, 541, and 542 of title 11, United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 7001, *et. seq.*

## Factual Background

### A.      General Case Background

8.      On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below). No trustee or examiner has been appointed in this case.

9.      On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. 2160] (as amended, the "Plan").

10.     On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). *See* Docket No. 2311. On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia,* investigating, prosecuting

and compromising any and all of the Debtors' claims and causes of action. *See, e.g.,* Plan at Art. IV.F, VII.A.

**B.    Refund Claims Filed With IRS**

11.    Prior to the commencement of these bankruptcy cases, the Debtors were leading retailers that operated retail stores and e-commerce sites throughout the United States.

12.    For its tax years ending March 3, 2018 and March 2, 2019 (collectively, the "Tax Years"), the Debtor formerly known as Bed Bath & Beyond, Inc. ("BBB") timely filed Form 1120, *U.S. Corporation Income Tax Return* (the "Original Tax Returns").

13.    On the Original Tax Returns, BBB applied the enhanced contribution deduction for charitable contributions of inventory pursuant to § 170(e)(3) of the IRC.

14.    On December 15, 2022, BBB timely filed Form 1120X, *Amended U.S. Corporation Income Tax Return*, for the tax year ending March 3, 2018, representing BBB's refund claim for that period (the "2018 Refund Claim").

15.    The 2018 Refund Claim sought a refund of overpaid income tax in the amount of $13,637,620, plus accrued interest (the "2018 Refund").

16.    On May 25, 2023, BBB timely filed Form 1120X, *Amended U.S. Corporation Income Tax Return*, for the tax year ending March 2, 2019, representing BBB's refund claim for that period (the "2019 Refund Claim").  The 2018 Refund Claim and 2019 Refund Claim are collectively referred to herein as the "Refund Claims".

17.    The 2019 Refund Claim sought refund of overpaid income tax in the amount of $9,352,953, plus accrued interest (the "2019 Refund" and, together with the 2018 Tax Refund, the "Refunds").

76875014;3

18.     The Refund Claims recomputed the charitable contribution deduction for donated inventory using the computation method set forth in Section 170(e)(1) of the IRC and Reg. §1.170A-1 instead of the previously applied method set forth in Section 170(e)(3) of the IRC.

19.     The Refund Claims were filed to apply the method in Section 170(e)(1) of the IRC, in accordance with the guidance and instructions set forth in IRS Notice 2008-90, which provides that if a contribution of inventory otherwise satisfies the requirements of Section 170 and the regulations thereunder, the IRS "will not challenge a taxpayer's computation of the deductible amount and the required adjustment to cost of goods sold under either (1) §170(e)(3) and §1.170A-4A(c), or (2) §170(e)(1) and §1.170A-1(c)."

20.     The IRS issued two notices of disallowance dated March 26, 2024 (the "Notices of Disallowance"), disallowing the Refunds in full. Copies of the Notices of Disallowance are attached hereto and incorporated herein as Exhibit A.[3]

21.     The IRS's stated basis for the disallowance of the Refunds was that the IRS believes that BBB irrevocably elected the enhanced charitable contribution deduction under § 170(e)(3) of the IRC and cannot compute its income in accordance with the methods reflected in the Refund Claims.

---

[3] The IRS conducted an examination of BBB's income tax returns for its taxable years 2015 through 2021. BBB understands that the IRS auditors sent the audit workpapers to the Joint Committee on Taxation ("JCT") for final review, approval and closure of the audit. BBB understands that the Notices of Disallowance were included as part of the package sent to JCT because they involve taxable years that were part of the audit period, but since the Notices of Disallowance have already been issued, the Refund Claims are not subject to substantive review by JCT. In addition, BBB is in agreement with the audit findings other than the Notices of Disallowance of the refund claims. Accordingly, this action is solely related to the denials of the refund claims and this action is not intended to affect the review by the JCT nor affect the approval of those audit findings by the JCT. Please refer to Form 3363-A annexed hereto as Exhibit B, which specifically states "I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance."

22.    Nothing in the IRC, Treasury Regulations, legislative history or informal guidance (including Notice 2008-90 or Chief Counsel Advice 201012061) prescribes any time limit for computing the charitable contribution under either § 170(e)(1) or § 170(e)(3) of the IRC.

23.    The doctrine of "election" set forth in the Notices of Disallowance is not applicable in this case, and is also not contained within the IRC or Treasury Regulations.

24.    The IRS's basis for denying the Refund Claims in the Notices of Disallowance does not apply to computation of charitable contributions under Section 170(e) of the IRC, which computation does not even constitute an "election" under the IRC or Treasury Regulations.

25.    The IRC and Treasury Regulations do not contain any applicable limits that would apply in this case nor do they require any specific time or manner for a taxpayer to apply Section 170(e)(1) or (e)(3).

26.    Courts have consistently permitted taxpayers to file amended returns/claims for refund unless the IRC and Treasury Regulations set forth an express statutory or regulatory limit on a taxpayer's ability to do so.

27.    Even assuming, *arguendo*, that the IRS determined that BBB could not apply Section 170(e)(1) on an amended tax return, the IRS's disallowance of the Refund Claims would nonetheless be erroneous, as BBB would then be entitled to full payment of the Refund Claims because BBB would be permitted to recover the basis of the inventory through its cost of goods sold. *See, e.g., Max Sobel Wholesale Liquors v. Commissioner*, 630 F.2d 670 (9th Cir. 1980).

28.    Thus, even if the basis for the denials of the Refund Claims set forth in the Notices of Disallowance were somehow valid (which, for the reasons set forth herein, it does not), BBB would nonetheless be entitled to the Refunds in full based on an adjustment of the basis recovery in BBB's cost of goods sold.

76875014;3

29.     The IRC provides that cost basis of inventory goods are to be recovered when such goods are sold or disposed.  The denial of the Refund Claims violates these rules, as it results in a permanent disallowance of BBB's recovery of basis for goods purchased for sale in the ordinary course of business that have been disposed of. The IRS's denial of the Refund Claims has a punitive impact, which is not only inconsistent with the recovery of basis provisions of the IRC but also contrary to the stated and intended purpose of the charitable contribution deduction (the IRS's position discourages taxpayers from donating inventory to a charitable organization and instead would encourage taxpayers to dispose of the inventory in other ways such as throwing it in the garbage) in order to ensure recovery of basis of goods.

30.     Accordingly, BBB was permitted to apply Section 170(e)(1) in computing its charitable contributions on the Refund Claims, and the IRS's refusal to grant the Refunds is wholly erroneous, arbitrary and capricious.

31.     Thus, BBB is entitled to full payment of the Refunds, plus accrued interest.

<u>**Count I**</u>
**(Turnover of Property Pursuant to 11 U.S.C. § 542)**

32.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

33.     Defendant is in possession, custody and control of the Refunds in an amount not less than $22,990,573 plus accrued and unpaid interest thereon.

34.     Defendant is not a custodian for the Refunds.

35.     The Refunds constitute a valid and existing debt, due and owing by Defendant to the Debtors.

36.     The Refunds are property of the Debtors' estates under § 541 and constitutes a debt that is matured, payable on demand, or payable on order.

76875014;3

37.     Despite being requested to do so, Defendant has not turned over or paid the Refunds to the Plaintiff.

38.     Accordingly, pursuant to § 542, Defendant should be compelled to immediately turn over and deliver to the Plaintiff the Refunds in an amount not less than $22,990,573 or such other amount determined to be due to the Debtor by the Court.

**<u>Count II</u>**
**(Unjust Enrichment)**

39.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

40.     In the alternative to Count I, but without waiving any allegation with respect thereto, the Plaintiff makes the following additional allegations in support of Count II.

41.     BBB conferred a benefit upon Defendant pursuant to the overpayment of tax that resulted in the Refunds, leaving Defendant in possession of amounts to which it is not entitled under any applicable fact or law.

42.     BBB reasonably expected to be compensated by Defendant by return of the Refunds in accordance with applicable law.

43.     Defendant's receipt of benefit without just compensation to the Debtors has unjustly enriched Defendant in an amount not less than $22,990,573, plus accrued interest thereon.

44.     Plaintiff has no adequate remedy at law to recover the Refunds.

45.     Accordingly, as a result of Defendant's unjust enrichment at the Debtors' expense, Plaintiff is entitled to restitution from Defendant in an amount not less than $22,990,573, plus accrued interest thereon.

## Count III
### (Declaratory Relief)

46.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

47.     An actual, present controversy exists between the Plaintiff and Defendant in that Defendant contends that the Debtors are not entitled to the Refunds based on the defense of "election" set forth in the Notices of Disallowance. Plaintiff asserts that the doctrine of election does not apply to a method of computation under Section 170(e) of the IRC.

48.     Defendant disputes the Plaintiff's contentions and that Plaintiff would be entitled to any of the relief sought in this complaint.

### Prayer for Relief

WHEREFORE, Michael Goldberg, in his capacity as Plan Administrator respectfully requests and prays that the Court:

i.      Pursuant to Count I, enter judgment requiring Defendant to immediately turn over and deliver to Plaintiff the Refunds in an amount not less than $22,990,573, plus any accrued interest thereon, and/or such other amount determined to be due to the Debtor by the Court;

ii.     Pursuant to Count II, enter judgment against Defendant for unjust enrichment and award Plaintiff restitution damages on account of Defendant's unjust enrichment in an amount not less than $22,990,573, plus any accrued interest thereon;

iii.    Pursuant to Count III, for declaratory relief that the doctrine of election does not apply to BBB's computation of charitable contributions for the 2018 and 2019 Tax Years; and

iv.     Award Plaintiff prejudgment interest at the applicable statutory or otherwise legally allowed applicable rate;

v.      Award Plaintiff costs, and expenses of this suit; and

9

vi.    Grant the Plaintiff such other and further relief the Court deems just.

Dated: August 16, 2024

*/s/ Paul J. Labov*
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:    bsandler@pszjlaw.com
          plabov@pszjlaw.com
          crobinson@pszjlaw.com

and

Peter O. Larsen (*pro hac vice* forthcoming)
Raye Elliott (*pro hac vice* forthcoming)
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
Email:    peter.larsen@akerman.com
          raye.elliott@akerman.com

*Counsel to the Plan Administrator*

76875014;3

# EXHIBIT A



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International**
1719 Route 10
Parsippany. NJ 07054

**Date:**
  March 26, 2024
**Taxpayer ID number (last 4 digits):**
  0488
**Form:**
  1120-X
**Tax period ended:**
  March 3, 2018
**Amount claimed:**
  $13,637,620.00
**Date claim received:**
  12/19/2022
**Person to contact:**
  Kimberly Spina
**Employee ID number:**
  07-05172
**Contact telephone number:**
  973-829-7445
**Fax number:**
  877-538-2540
**Response due date:**
  April 25, 2024

20230930-DK-Butterfly-1, Inc.
(f/k/a Bed Bath & Beyond Inc.) and Subsidiaries
P.O. Box 1596
Union, NJ 07083

Dear Mr. Michael Goldberg,

We examined your claim and propose:

**Full disallowance** - as explained at the end of this letter. If you accept our findings, sign, date and return one copy of the enclosed Form 3363, Acceptance of Proposed Disallowance of Claim for Refund or Credit, and Form 2297, Waiver of Statutory Notification of Claim Disallowance. Note: If your claim involves a joint return, both taxpayers must sign the forms.

**If you don't agree with our findings**
You can contact the person shown above to request a meeting or telephone conference with me. If you still don't agree with our findings, you can request a conference with our Independent Office of Appeals (Appeals).

If the claimed refund or proposed change to tax, penalties or both is:

- $25,000 or less for each referenced tax period; send us a letter requesting Appeals consideration that tells us what you don't agree with and the reasons why.
- More than $25,000 for any referenced tax period; you must follow the instructions in the enclosed Publication 3498 to prepare a formal protest.

**What we'll do if you don't reply by the response due date**
We'll process your case based on the proposed findings and send you a statutory notice of claim disallowance. The notice will explain how to bring suit in court for the recovery of any tax, penalties, or other amounts. The law permits you to file suit within 2 years from the date we mail the notice.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

**Letter 569 (Rev. 4-2021)**
Catalog Number 40248G

Thank you for your cooperation.

Sincerely,

Digitally signed by Kimberly R.
Spina
Date: 2024.03.26 11:58:35 -04'00'

Kimberly Spina
Senior Internal Revenue Agent

Enclosures:
Form 3363
Form 2297
Publication 3498
Attachment: Memorandum on Disallowance

Reason for Disallowance:
On December 19, 2022, you filed a claim using Form 1120X for a refund of $(13,637,620) for tax year 201802. As a result of our review, we have disallowed your claim.  Please see the attached memo outlining the reasons for disallowance.

**Letter 569 (Rev. 4-2021)**
Catalog Number 40248G

20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond, Inc.) and Subsidiaries
EIN: ████ 0488

Attachment:
**Memorandum on Disallowance**

For tax years ending March 3, 2018, ("TY 201802") and March 2, 2019, ("TY 201902") the Taxpayer ("TP"), formerly conducting business under the name "Bed Bath & Beyond, Inc.,"[1] filed Forms 1120, U.S. Corporation Income Tax Return, and claimed deductions for charitable contributions on Line 19 of Page 1. On these originally filed returns, TP claimed the enhanced contribution deduction under IRC § 170(e)(3) for contributions of inventory.  The amount of contribution TP could claim was subject to the taxable income limitation under IRC § 170(b)(2).

On December 15, 2022, TP filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for TY 201802.  TP stated that based on Notice 2008-90 they "elect" to apply the enhanced deduction to some or all of their donations made during the taxable year.  They indicated they are applying the "general section 170 rules" under Treas. Reg. § 1.170A-1(c)(4) so that the costs incurred in the year of contribution for inventory donated within the same taxable year will remain in Cost of Goods Sold (COGS) and thus be deducted under IRC § 162.

After the opening conference was held on March 9, 2023, TP notified the IRS that they also intend to file an amended return for TY 201912.  The amended return was filed with similar changes to their charitable contribution deduction.  The TP emailed the Form 1120X directly to the Team Coordinator on May 25, 2023.  TP included the same explanation of changes to their computation of the deduction for charitable contributions with the 201902 amended return as was included with the 201802 amended return.

The IRS believes that TP irrevocably elected the enhanced method for computing the charitable contribution deduction under IRC § 170(e)(3).  Elective choices are binding after the period for filing expires and can only be changed thereafter with the consent of the Commissioner (*Pacific Nat'l Co. v. Welch*, 304 U.S. 191 (1938)).

Under the judicial doctrine of election as stated by the Tax Court in *Grynberg v. Commissioner*, 83 T.C. 255 (1984), an election has been made when two elements are met: (1) there must be a free choice between two or more alternatives, and (2) there must an overt act by the taxpayer communicating the choice.  The facts prove that TP met both elements of the election doctrine.  TP computed and claimed the enhanced contribution deduction on their originally filed returns for both tax years ending March 3, 2018, and March 2, 2019.  This is evidenced by the filing of Form 8283 claiming the enhanced contribution deduction.

---

[1] On September 21, 2023, the Taxpayer changed their corporate name from "Bed Bath & Beyond, Inc." to "20230930-DK-Butterfly-1, Inc.," and such change is reflected in an amendment filing to their certificate of incorporation.

20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond, Inc.) and Subsidiaries
EIN: ██████0488

Attachment:
**Memorandum on Disallowance**


*Grynberg* lays out examples of arguments that are not valid exceptions to the irrevocability of elections.  Among others, the Tax Court listed oversight, poor judgment, unawareness of tax consequences of making an election, and unexpected subsequent events to be insufficient arguments to mitigate the binding effect of elections.  An unexpected subsequent event such as loss of profits, changes in consumer trends, and bankruptcy are determined to be insufficient reasons for allowing a change in election. TP made an election to compute the deduction under the enhanced contribution method and are requesting to undo their election.  However, the Tax Court has ruled that an "election" cannot be revoked on an amended return after the filing deadline for the original return has passed (*see Alabama Pipe Co. v. Commissioner*, 23 T.C. 95 (1954), regarding irrevocability of an election under section 170(a)(2)).

In addition, TP failed to submit a sufficient claim for refund as required by Treas. Reg. § 301.6402-2(b)(1).  Under IRC § 170(e)(1) and Treas. Reg. § 170A-1(c)(4), a taxpayer can claim the cost basis of donated inventory as COGS only when the inventory is produced or acquired in the same taxable year as it was donated. TP's explanatory letter did not include sufficient facts of the exact basis for the refund because they failed to establish that the charitable contributions in 201802 and 201902 for which they now seek to deduct as COGS on amended returns were current-year acquisitions.  The TP filed Forms 8283 with their originally filed tax returns for both 201802 and 201902 that listed "VARIOUS" in Section B, Part I, Section 5, Column d as the "date acquired by the donor." With the absence of any additional information included on the form, or with the amended return, the Service must revert to the form instructions where it states, "if you are donating a group of similar items and you acquired the items on various dates (but have held all the items for at least 12 months), you can enter 'Various.'"  Based on the TP's submission on Form 8283, the word "various" must be interpreted as items donated that have been held for longer than 12 months.  Thus, even if Notice 2008-90 was applicable, it would not produce the effects that TP claims on their amended returns.

TP made irrevocable elections on their originally filed returns to apply the enhanced method for computing the deductions for their charitable contributions of inventory.  The two-prong criteria for applying election doctrine are satisfied in this case and the TP does not meet any of the exceptions that would allow them to change their election on an amended return.  TP did not submit a sufficient claim for refund because they failed to state facts demonstrating that the contributions were current-year acquisitions.  For the reasons set forth above, the claims filed on Forms 1120X for years ending March 3, 2018, and March 2, 2019, are denied.



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International**
1719 Route 10
Parsippany. NJ 07054

**Date:**
  March 26, 2024
**Taxpayer ID number (last 4 digits):**
  0488
**Form:**
  1120-X
**Tax period ended:**
  March 2, 2019
**Amount claimed:**
  $9,352,953.00
**Date claim received:**
  05/25/2023
**Person to contact:**
  Kimberly Spina
**Employee ID number:**
  07-05172
**Contact telephone number:**
  973-829-7445
**Fax number:**
  877-538-2540
**Response due date:**
  April 25, 2024

20230930-DK-Butterfly-1, Inc.
(f/k/a Bed Bath & Beyond Inc.) and Subsidiaries
P.O. Box 1596
Union, NJ 07083

Dear Mr. Michael Goldberg,

We examined your claim and propose:

**Full disallowance** - as explained at the end of this letter. If you accept our findings, sign, date and return one copy of the enclosed Form 3363, Acceptance of Proposed Disallowance of Claim for Refund or Credit, and Form 2297, Waiver of Statutory Notification of Claim Disallowance. Note: If your claim involves a joint return, both taxpayers must sign the forms.

**If you don't agree with our findings**
You can contact the person shown above to request a meeting or telephone conference with me. If you still don't agree with our findings, you can request a conference with our Independent Office of Appeals (Appeals).

If the claimed refund or proposed change to tax, penalties or both is:

- $25,000 or less for each referenced tax period; send us a letter requesting Appeals consideration that tells us what you don't agree with and the reasons why.
- More than $25,000 for any referenced tax period; you must follow the instructions in the enclosed Publication 3498 to prepare a formal protest.

**What we'll do if you don't reply by the response due date**
We'll process your case based on the proposed findings and send you a statutory notice of claim disallowance. The notice will explain how to bring suit in court for the recovery of any tax, penalties, or other amounts. The law permits you to file suit within 2 years from the date we mail the notice.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

**Letter 569 (Rev. 4-2021)**
Catalog Number 40248G

Thank you for your cooperation.

Sincerely,

Digitally signed by Kimberly R.
Spina
Date: 2024.03.26 12:15:46 -04'00'

Kimberly Spina
Senior Internal Revenue Agent

Enclosures:
Form 3363
Form 2297
Publication 3498
Attachment: Memorandum on Disallowance

Reason for Disallowance:
On May 25, 2023 you filed a claim using Form 1120X for a refund of $(9,352,953) for tax year 201902. As a result of our review, we have disallowed your claim.  Please see the attached memo outlining the reasons for disallowance.

**Letter 569 (Rev. 4-2021)**
Catalog Number 40248G

20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond, Inc.) and Subsidiaries
EIN: ████0488

Attachment:
**Memorandum on Disallowance**

For tax years ending March 3, 2018, ("TY 201802") and March 2, 2019, ("TY 201902") the Taxpayer ("TP"), formerly conducting business under the name "Bed Bath & Beyond, Inc.,"[1] filed Forms 1120, U.S. Corporation Income Tax Return, and claimed deductions for charitable contributions on Line 19 of Page 1. On these originally filed returns, TP claimed the enhanced contribution deduction under IRC § 170(e)(3) for contributions of inventory. The amount of contribution TP could claim was subject to the taxable income limitation under IRC § 170(b)(2).

On December 15, 2022, TP filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for TY 201802. TP stated that based on Notice 2008-90 they "elect" to apply the enhanced deduction to some or all of their donations made during the taxable year. They indicated they are applying the "general section 170 rules" under Treas. Reg. § 1.170A-1(c)(4) so that the costs incurred in the year of contribution for inventory donated within the same taxable year will remain in Cost of Goods Sold (COGS) and thus be deducted under IRC § 162.

After the opening conference was held on March 9, 2023, TP notified the IRS that they also intend to file an amended return for TY 201912. The amended return was filed with similar changes to their charitable contribution deduction. The TP emailed the Form 1120X directly to the Team Coordinator on May 25, 2023. TP included the same explanation of changes to their computation of the deduction for charitable contributions with the 201902 amended return as was included with the 201802 amended return.

The IRS believes that TP irrevocably elected the enhanced method for computing the charitable contribution deduction under IRC § 170(e)(3). Elective choices are binding after the period for filing expires and can only be changed thereafter with the consent of the Commissioner (*Pacific Nat'l Co. v. Welch*, 304 U.S. 191 (1938)).

Under the judicial doctrine of election as stated by the Tax Court in *Grynberg v. Commissioner*, 83 T.C. 255 (1984), an election has been made when two elements are met: (1) there must be a free choice between two or more alternatives, and (2) there must an overt act by the taxpayer communicating the choice. The facts prove that TP met both elements of the election doctrine. TP computed and claimed the enhanced contribution deduction on their originally filed returns for both tax years ending March 3, 2018, and March 2, 2019. This is evidenced by the filing of Form 8283 claiming the enhanced contribution deduction.

---

[1] On September 21, 2023, the Taxpayer changed their corporate name from "Bed Bath & Beyond, Inc." to "20230930-DK-Butterfly-1, Inc.," and such change is reflected in an amendment filing to their certificate of incorporation.

20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond, Inc.) and Subsidiaries
EIN: ████0488

Attachment:
**Memorandum on Disallowance**

*Grynberg* lays out examples of arguments that are not valid exceptions to the
irrevocability of elections.  Among others, the Tax Court listed oversight, poor
judgment, unawareness of tax consequences of making an election, and
unexpected subsequent events to be insufficient arguments to mitigate the
binding effect of elections.  An unexpected subsequent event such as loss of
profits, changes in consumer trends, and bankruptcy are determined to be
insufficient reasons for allowing a change in election. TP made an election to
compute the deduction under the enhanced contribution method and are
requesting to undo their election.  However, the Tax Court has ruled that an
"election" cannot be revoked on an amended return after the filing deadline for
the original return has passed (*see Alabama Pipe Co. v. Commissioner*, 23 T.C.
95 (1954), regarding irrevocability of an election under section 170(a)(2)).

In addition, TP failed to submit a sufficient claim for refund as required by Treas.
Reg. § 301.6402-2(b)(1).  Under IRC § 170(e)(1) and Treas. Reg. § 170A-1(c)(4),
a taxpayer can claim the cost basis of donated inventory as COGS only when the
inventory is produced or acquired in the same taxable year as it was donated.
TP's explanatory letter did not include sufficient facts of the exact basis for the
refund because they failed to establish that the charitable contributions in 201802
and 201902 for which they now seek to deduct as COGS on amended returns
were current-year acquisitions.  The TP filed Forms 8283 with their originally filed
tax returns for both 201802 and 201902 that listed "VARIOUS" in Section B, Part
I, Section 5, Column d as the "date acquired by the donor." With the absence of
any additional information included on the form, or with the amended return, the
Service must revert to the form instructions where it states, "if you are donating a
group of similar items and you acquired the items on various dates (but have
held all the items for at least 12 months), you can enter 'Various.'"  Based on the
TP's submission on Form 8283, the word "various" must be interpreted as items
donated that have been held for longer than 12 months.  Thus, even if Notice
2008-90 was applicable, it would not produce the effects that TP claims on their
amended returns.

TP made irrevocable elections on their originally filed returns to apply the
enhanced method for computing the deductions for their charitable contributions
of inventory.  The two-prong criteria for applying election doctrine are satisfied in
this case and the TP does not meet any of the exceptions that would allow them
to change their election on an amended return.  TP did not submit a sufficient
claim for refund because they failed to state facts demonstrating that the
contributions were current-year acquisitions.  For the reasons set forth above, the
claims filed on Forms 1120X for years ending March 3, 2018, and March 2, 2019,
are denied.

# EXHIBIT B

| Form **3363**<br>(May 2023) | Department of the Treasury - Internal Revenue Service<br># **Acceptance of Proposed Disallowance of Claim**<br># **for Refund or Credit** |
| --- | --- |

Name(s), SSN or EIN, and address of taxpayer(s) *(number, street, city or town, state, ZIP code)*

20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) and Subsidiaries
EIN:          0488
P.O. Box 1596
Union, NJ 07083

| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Disallowed | Amount of Claim Allowed |
| --- | --- | --- | --- | --- | --- |
| 201802 | 12/19/2022 | Income | $13,637,620 | $13,637,620 | $ 0 |
| 201902 | 05/25/2023 | Income | $9,352,953 | $9,352,953 | $ 0 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance.

| If you file this acceptance for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.<br><br>For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.<br><br>For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.<br><br>For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.<br><br>For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign. | Your signature | Date |
| --- | --- | --- |
|  | Spouse's signature if a joint return was filed | Date |
|  | Taxpayer's representative sign here | Date |
|  | Partnership/Corporate name<br><br>20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) and Subsidiaries | |
|  | Partners/Corporate officers sign here | Date<br>5/9/24 |
|  | Title  Title<br>Plan Admin | |
|  | Partners/Corporate officers sign here | Date |
|  | Title | |