<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel for the Plan Administrator*

</td><td></td></tr>
</table>

|  |  |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**PLAN ADMINISTRATOR'S SECOND MOTION FOR ENTRY OF AN
ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS**

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan

Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and

affiliated debtors (the "Debtors"), moves this Court for the entry of an order, substantially in the

form attached hereto as **Exhibit A**, pursuant to section 105(a) of Title 11 of the United States

Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

"Bankruptcy Rules"), and Rule 3007-1(c) of the Local Rules of the United States Bankruptcy

Court for the District of New Jersey (the "Local Rules"), extending the period within which the

Plan Administrator may object to Claims of all priority levels (including but not limited to all

Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for

payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims) to the

latter of: (a) March 31, 2025 or (b) one hundred eighty (180) days following the date that a Proof

of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on

behalf of a holder of such Claim.[3] In support of this Motion, the Plan Administrator respectfully

represents as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core

proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case in this

district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested are Bankruptcy Rule 9006(b)(1)

and Local Rule 3007-1(c).

## FACTUAL AND PROCEDURAL BACKGROUND[4]

**A.      General Background**

3.      On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with

this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

[4] The facts in this Motion are supported by the Declaration of Michael Goldberg (the "Goldberg Declaration"), which is attached hereto as **Exhibit B**.

operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

4.     Pursuant to the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order"), the Court set (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); and (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"). Pursuant to the Plan and the Bar Date Order, October 13, 2023 was the last date by which creditors asserting claims entitled to administrative priority pursuant to Bankruptcy Code section 503 were required to file requests for payment ("Administrative Claims Bar Date").[5] Professional Fee Claims were required to be filed by October 29, 2023.

5.     On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming

---

[5] Bar Date Order, ¶ 6; Plan, Article I.A, at § 12.  The Confirmation Order further provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*

[Docket No. 2160] (the "Plan").

6.     On September 29, 2023, the effective date of the Plan occurred (the "Effective

Date"). [Doc. No. 2311] On the Effective Date, the Plan Administrator became the sole

representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims,

performing claims reconciliation, and objecting to claims.[6]

7.     On the Effective Date, the Plan Administrator also became the administrator of

the Combined Reserve[7] and the WARN Reserve.[8] *See* Plan, Article VI.C. The Combined

Reserve (which, as discussed below, is the primary source of funding for Allowed

Administrative and Priority Claims), totaled $10 million when it was turned over to the Plan

Administrator, $2.8 million of which is subject to a set aside for the Texas Taxing Authorities.

*See* Confirmation Order, at ¶ 141 ("The Debtors and Texas Taxing Authorities shall, within five

Business Days of entry of the Confirmation Order, mutually agree to a holdback amount from

---

[6] Pursuant to the Plan, "Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court." Plan, Article IV, at § B.

[7] The "*Combined Reserve*" means "the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the terms of the Final DIP Order, in the aggregate amount of $15 million less any amounts paid from the Combined Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." Plan, Article I.A, at § 31. "*Priority Claims Reserve*" means "a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $10 million less any amounts that were paid from the Priority Claims Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." Plan, Article I.A, at § 119. "*Wind-Down Reserve*" means "a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $5 million less any amounts that were paid from the Wind-Down Reserve pursuant to and consistent with the terms of the Plan prior to the Effective Date." Plan, Article I.A, at § 157.

[8] The "*WARN Reserve*" means "a reserve with the meaning ascribed to such term in the Final DIP Order in the amount of $16 million less any amounts that were paid from the WARN Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." *See* Plan, Article I.A, at § 152.

the Combined Reserve, which amount shall be between $500,000 and $2.8 million, for the

payment of Texas Tax Claims, with all parties' rights reserved as to the ultimate amount of such

Texas Tax Claims"). The WARN Reserve was $0.00 prior to the Effective Date; therefore, no

WARN Reserve was turned over to the Plan Administrator.

## B.    The Claims.

8.    Pursuant to the Plan, the Plan Administrator originally had until March 27, 2024

to object to Claims (the "Claim Objection Bar Date").[9]  Pursuant to an order entered on March

19, 2024 [Doc. No. 2933] (the "First Extension Order"), the Court extended the Claims

Objection Bar Date to September 30, 2024.[10] The First Extension Order further provided, "This

Order shall be without prejudice to the rights of the Plan Administrator to seek further

extensions of the Claims Objection Bar Date."

9.    As of August 29, 2024, creditors have filed 20,260 proofs of claim against the

Debtors ("Total Claims").[11]  The current amount of asserted General Unsecured Claims is

$3,039,680,861. While it is likely that many of the Administrative, Priority and Secured Claims

are overstated and/or should be reclassified as General Unsecured Claims, according to the

official claims register generated by the Debtors' claims and noticing agent, Kroll, the Current

Asserted Amount[12] of such claims are listed below.

---

[9] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28.

[10] On February 26, 2024, the Plan Administrator filed *his Motion for Entry of An Order Extending the Period to Object to Claims* (the "First Extension Motion") [Doc. No. 2906].

[11] Total Claims includes 789 proofs of claim that were filed after 2/14/24, the date the Plan Administrator pulled the claims figures for the First Extension Motion.

[12] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted

| Administrative, Priority and Secured Claims Summary as of 8/29/2024 | | |
|---|---|---|
| **Claim Type** | **No. of Claims[13]** | **Current Asserted Amount** |
| Administrative Claims (11 U.S.C. § 503)[14] | 1368 | $46,756,991.00 |
| Priority Claims (11 U.S.C. § 507)[15] | 1362 | $556,618,451.00 |
| Secured Claims (11 U.S.C. § 506) | 623 | $73,287,092.00 |

10.     While the Plan Administrator and his professionals will need substantial

additional time to (a) continue to review the Administrative, Priority and Secured Claims to

determine whether the Claims should be Allowed or whether they should be reduced,

reclassified or disallowed entirely, and (b) prepare and file appropriate objections, as is detailed

---

Amount of any satisfied claim is $0.00. The reduction and allowance of the Texas Tax Claims and the California Tax Claims (discussed below) is not yet reflected in the Current Asserted Amount of the Priority, Administrative and/or Secured Claims figures. In addition, the Current Asserted Amount assumes that each Original Claim in *the Notice of Adjustment to Proofs of Claim Without Objection (Amended Administrative, Priority and Secured Claims)* [Doc. No. 3493] are expunged. To the extent they are not, the claims figures will be higher.

[13] The "No. of Claims" includes all claims that have been filed in each category since the Petition Date and includes claims that have been disallowed, satisfied and/or modified and/or allowed pursuant to court order, objection, stipulation or notice of adjustment.

[14] This figure includes $3,166,393 for Administrative Claims asserted by way of motion that do not appear to have corresponding proofs of claim on the Kroll register. More specifically, there are 12 requests for payments of Administrative Claims that were filed on the docket on which hearings have not yet been set [Doc. Nos. 2460, 2459, 2458, 2457, 2456, 2447, 2446, 2444, 2443, 2441, 2439, 2430] (the "Administrative Payment Motions"). The Plan Administrator filed a protective objection on October 19, 2023 [Doc. No. 2513]. Four of the movants in the Administrative Payment Motions (totaling $3,166,393.00) do not appear to have corresponding proofs of claim on the Kroll register: (i) Pinnacle Hills LLC [Doc. No. 2443] $771,144.95; (ii) Avalara, Inc. [Doc. No. 2446] $29,621.30; (iii) Google LLC [Doc. No. 2447] $2,339,378.82, and (iv) DDRTC Marketplace at Mill Creek LLC [Doc. No. 2457] $26,248.36. The term "Administrative Claims" as used in this Motion and Order includes Administrative Claims that are asserted by way of an Administrative Payment Motion.

[15] 1139 of the Total Claims assert priority status pursuant to Bankruptcy Code section 507 totaling $355,374,091.36 (the "Stand Alone Priority Claims"), and 223 of the proofs of claim that are already included in the Administrative Claims category also assert a priority portion pursuant to Bankruptcy Code section 507 totaling $201,244,359.23 (the "Joint Priority Claims")  (together, the Stand Alone Priority Claims and the Joint Priority Claims are the "Priority Claims"). Accordingly, the aggregate amount of asserted Priority Claims is $556,618,450.59.

below, the Plan Administrator and his team have made a great deal of progress since filing the

First Extension Motion.[16]

### C.    The Claims Resolution Process.

11.    The Plan Administrator has identified numerous categories of Claims that were

filed with alleged Administrative, Priority or Secured portions (each as defined below):

Landlord Claims, 503(b)(9) Claims, Trade Claims, Tax Claims, Customer Claims, IT Claims,

Insurance Claims, PI Claims and Other Claims. In addition to the substantive objections that the

Plan Administrator has brought and/or will bring (if appropriate) (the "Substantive

Objections"), within each category, there are: (a) claims that simply need to be reclassified as

general unsecured claims, and (b) claims that should be disallowed on non-substantive grounds

(duplicates claims against same debtor, duplicate claims filed against multiple debtors, claims

that have been amended and superseded, contingent claims) (the "Non-Substantive

Objections"). As is further detailed below, the Plan Administrator has made significant progress

on both Substantive and Non-Substantive analysis and objections.[17]

---

[16] Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. The Plan provides, "Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or a Final Order of the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim." Plan, Article IV, at § A. "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed) . . . provided that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order." Plan, Article I.A, at § 14.

[17] This is not meant to be a complete list of all of the claims or categories identified by the Plan Administrator for reconciliation and/or objection.

12.     *Brandon Adam Meadows Claims*: On August 27, 2024, the Plan Administrator obtained an order disallowing proof of claim 12957 filed in the amount of $1,000,500,000.00 and proof of claim 18124 filed in the amount of $10,850,164,733.30. [Doc. 3491]. Claimant Brandon Adam Meadows alleged that significant portions of both disallowed claims were Administrative, Secured and/or Priority.

13.     *Landlord Claims*: The Plan Administrator has identified over 260 substantive proofs of claims filed by landlords that assert some portion as an Administrative Claim (the "Landlord Claims"). On May 24, 2024, the Plan Administrator filed and served his *Notice Of Adjustment To Proofs Of Claim Without Objection (Satisfied Administrative Lease Claims) [Doc. 3294]* pursuant to which he notified each claimant that its claim would be expunged because it had been satisfied in connection with the assumption assignment of the applicable lease.[18] The Claims Agent subsequently expunged those 18 Landlord Claims. The Plan Administrator and his professionals are in the process of reviewing and preparing objections (where appropriate) to the remaining 245 Landlord Claims, which arise from leases that were rejected. The Plan Administrator has also entered  into stipulations settling lease claims with F3Metalworks, Inc. [Doc. 3474], Realty Income Corporation [Doc. No. 3471], Junction Road Madison Investors, LLC [Doc. 2966], and RPT Realty, L.P. [Doc. No. 2965].

14.     *503(b)(9) Claims*: The Plan Administrator has identified approximately 96 substantive proofs of claims filed by vendors that assert some portion as entitled to priority under Bankruptcy Code section 503(b)(9) (the "503(b)(9) Claims"). The Plan Administrator

---

[18] Article IX, Section D of the Plan provides, "Adjustments to Claims Without Objection. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to adjust or remove any Claim that has been paid in full or satisfied, or any Claim that has been amended or superseded; provided that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be adjusted or removed from the Claims Register."

opposed a motion filed by vendor *Levtex LLC* [Doc. No. 2705], and on April 12, 2024, he

obtained an order denying 503(b)(9) status to goods that were drop-shipped from the vendor to

the Debtors' customers. [Doc. No. 2967]. The Plan Administrator and his professionals are in

the process of reviewing and preparing objections (where appropriate) to the remaining

503(b)(9) Claims, numerous of which have the same issue with respect to drop-shipments.

15.     *Other Trade Claims:* The Plan Administrator has identified numerous  proofs of

claims filed by vendors that assert some portion as a Priority, Administrative or Secured Claim

(the "Other Trade Claims"), and he and his professionals are in the process of reviewing and

preparing objections (where appropriate) to the Other Trade Claims.

16.     *Customer Claims:* The Plan Administrator has identified approximately 1195

proofs of claims filed by customers based on gift cards and/or merchandise returns that assert

some portion as a Priority, Administrative or Secured Claim (the "Customer Claims"). On

August 22, 2024, the Plan Administrator filed his *First Omnibus Objection (Substantive) to*

*Certain Claims (Reclassified Gift Card/Merchandise Credit Claims No. 1)* [Doc. No. 3475] that

seeks to reclassify 100 of those Customer Claims as Class 6 General Unsecured Claims. The

matter is set for hearing on September 24, 2024 at 10: 00 a.m.. Assuming that the Court sustains

the objection, the Plan Administrator will bring similar objections to the other 1095 Customer

Claims.

17.     *Information Technology Claims*: The Plan Administrator has identified numerous

proofs of claims filed by providers of informational technology services that assert some portion

as a Priority, Administrative or Secured Claim (the "IT Claims"). The Plan Administrator has

also entered  into stipulations settling IT Claims with Microsoft Corporation and Workday, Inc.,

and he and his professionals are in the process of reviewing and preparing objections (where appropriate) to the remaining IT Claims.

18.    *Insurance Company Claims*: The Plan Administrator negotiated and obtained court approval for a series of loss portfolio transfer transactions (the "LPT Transactions') that resolved significant claims filed by the Debtors' insurance companies (general liability, workers compensation, et cetera) and transferred the estates' continuing exposure (certain deductibles, self-insured retentions and other reimbursement obligations) to the insurers.[19] More specifically, on April 11, 2024, the Court entered the *Stipulation and Consent Order (A) Settling Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (B) Resolving,  in Part, Safety Proof of Claim NOS. 10483 and 18738; and (C) Granting Related Relief* [Doc. No. 2963]. On March 6, 2024, the Court entered the *Stipulation and Consent Order Resolving Dispute over Disposition of Collateral Backing Obligations to the Travelers Indemnity Company and Resolving Travelers Proof of Claim No. 8004* [Doc. No. 2915]. On June 4, 2024, the Court entered its *Order Granting Motion for the Plan Administrator Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving Settlement Agreement with Chubb Companies; (II) Withdrawing Proof of Claim No. 11413; and (III) Granting Related Relief* [Doc. No. 3308]. A hearing on the Plan Administrator's *Motion Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving the Close-Out Agreement with Arch; (II) Withdrawing Proofs of Claim Nos. 10344 and 11343; and (III) Granting Related Relief* [Doc. No 3453] is set for September 10, 2024.

---

[19] To the extent that individuals have filed proof of claim against the Debtors based on liabilities that have been transferred to the insurance companies pursuant to the LPT Transactions, those proofs of claim will be subject to objection as well.

19.     *Tax Claims*: The Plan Administrator has identified over 500 hundred substantive claims filed by taxing authorities that assert Priority, Administrative or Secured (the "Tax Claims") status and has been working to resolve them with the appraisal districts and comptrollers in 46 states, as well as with the Internal Revenue Service and Puerto Rico. As is described below, the Plan Administrator has made significant progress in connection with tax claims filed by taxing authorities in Texas and in California.

20.     *Texas Tax Claims*. On September 11, 2023, the Debtors filed their (I) *Omnibus Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings* [Doc. No. 2156] (the "Omnibus Texas Tax Objection"). The Omnibus Texas Tax Objection sought entry of an order (i) establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in certain Texas counties set forth therein and to stay state proceedings and (ii) modifying or reducing applicable claims filed by the Texas Taxing Authorities.  On that same date, the Debtors filed their *Motion to Determine Tax Liability and Stay Proceedings* [Doc. No. 2157] (the "Texas Tax Determination Motion," and together with the Omnibus Texas Tax Objection, the "Texas Tax Relief Pleadings"). The Texas Tax Determination Motion sought entry of an order establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in Bell and Potter-Randal counties and to stay related state proceedings. Post-Effective Date, the Plan Administrator prosecuted the motions on behalf of the estates and began negotiating with the applicable claimants. On April 9, 2024, the Plan Administrator obtained authority to settle and pay the Texas Tax Claims from funds that had been escrowed for that purpose in connection with confirmation. *See Order (I) Authorizing the Settlement of Ad Valorem Tax Claims of Texas Taxing Authorities, (II) Authorizing the Use of $2.8 Million Set Aside to Satisfy Claims of Texas*

*Taxing Authorities, and (III) Granting Related Relief.* [Doc. No. 2954]. The Plan Administrator

was able to negotiate settlements with nearly all of the Texas Taxing Authorities, encompassing

approximately seventy-eight (78) proofs of claim and those where a settlement was not reached

have been otherwise resolved and paid in connection with 2023 *Ad Valorem* tax claims. On

August 26, 2024, the Plan Administrator filed his Notices of Withdrawal of the Texas Tax

Relief Pleadings. [Doc. Nos. 3184, 3185]. A joint motion [Doc. No. 2664] by the Texas Taxing

Authorities seeking to compel payment of certain taxes relating to tax year 2022 is set to be

heard on October 16, 2024. Here again, the Plan Administrator was able to negotiate a

resolution with the Texas Taxing Authorities, which, if approved, will resolve all Texas Taxing

Authority claims relating to 2022 *Ad Valorem* taxes.

21.     *California Tax Claims*. On September 15, 2023, the Debtors filed their (I)

*Omnibus Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay*

*Proceedings* [Doc. No. 2180] (the "Omnibus California Tax Objection"). The Omnibus

California Tax Objection sought entry of an order (i) establishing the property market value

bases upon which to compute taxes for tax year 2023 for the Debtors' property in certain

California counties set forth therein and to stay state proceedings and (ii) modifying or reducing

applicable claims filed by the California Taxing Authorities. On that same date, the Debtors

filed their *Motion to Determine Tax Liability and Stay Proceedings* [Doc. No. 2181] (the

"California Tax Determination Motion," and together with the Omnibus California Tax

Objection, the "California Tax Relief Pleadings"). The California Tax Determination Motion

sought entry of an order establishing the property market value bases upon which to compute

taxes for tax year 2023 for the Debtors' property in certain counties and to stay related state

proceedings. Post-Effective Date, the Plan Administrator prosecuted the motions on behalf of

the estates and began negotiating with the applicable claimants. On January 1, 2024, the court

entered an order sustaining the Omnibus California Tax Objection with respect to certain

claimants. [Doc. No. 2784]. The Plan Administrator has subsequently negotiated stipulations

with several of the California Taxing Authorities pursuant to which their claims have been

reduced, allowed and paid. Accordingly, on February 27, 2024, the Plan Administrator

withdrew the California Tax Determination Motion as to  (i) the County of Fresno; (ii) the

County of Los Angeles; (iii) San Mateo County Treasurer-Tax Collector and (iv) the County of

Santa Clara. [Doc. No. 2911]. On August 26, 2024, the Plan Administrator withdrew the

California Tax Relief Pleadings with respect to the remining claimants. [Doc. Nos. 3487, 3486].

In total, all – approximately twenty-seven (27) claims – relating to 2023 *Ad Valorem*  taxes have

been resolved.

22.    *Personal Injury Claims*: Since the Effective Date multiple individuals have filed

motions for relief from the automatic stay to liquidate their pre-petition personal injury claims

in various state courts. Three such motions are currently pending and are set for hearings and/or

status conferences on September 10, 2024.[20]  As the Court is aware, because the Debtors'

general liability insurance has a one million dollar self-insured retention for claims that arise

after March 1, 2020 (including defense costs), each dollar spent fighting these actions in state

court results in a dollar for dollar reduction of funds available to pay Administrative, Priority

and other General Unsecured Creditors, thereby elevating pre-petition general unsecured claims

to administrative priority status.  Accordingly, the Plan Administrator opposed (and opposes)

relief from stay.[21] As a result of the hearing the Court held on the Zeve and Duczkowski

matters, the Plan Administrator has been working closely with state court counsel to the

---

[20] *See* Zeve [Doc. No. 2936], Akdemir [Doc. No 3195], and Duczkowski [2679].
[21] *See* Duczkowski [Doc. Nos. 2760, 2987, 3299], Zeve [Doc. Nos. 3067, 3299].

movants and counsel to its insurer Safety National to develop a set of alternative dispute

resolution procedures to govern the approximately 100 personal injury claims filed against the

Debtors (the "Proposed ADR Procedures").  The Plan Administrator expects to file a motion to

approve the Proposed ADR Procedures by the end of September.

23.    *Equity Holder Claims*: The Plan Administrator has identified alleged

Administrative, Secured and Priority Claims filed by former equity holders in BBB (the "Equity

Holder Claims") and is in the process of preparing an objection that seeks to disallow such

claims on the grounds that all Interests were extinguished under the Plan.[22] As the Court is

aware, however, during the First Extension Period, an alleged former shareholder who has

identified himself only as "ML" filed a motion to appoint an equity committee, which the Plan

Administrator and the UST opposed.[23] The Court denied the motion on August 21 2024 [Doc.

No. 3473]. The Plan Administrator's *Motion for Sanctions* against ML [Doc. No. 3432] is

currently set for hearing on September 10, 2024.

24.    *Non-Substantive Objections*: The Plan Administrator has identified hundreds of

Administrative, Priority and/or Secured Claims that are subject to Non-Substantive Objections.

Some of these objections may be brought pursuant to the Plan's "notice of adjustment"

procedure; others will require a formal objection and the Plan Administrator is in the process of

preparing both. On August 28, 2024, the Plan Administrator filed and served the *Notice of*

*Adjustment to Proofs of Claim Without Objection (Amended Administrative, Priority and*

---

[22] Pursuant to the  Plan all Interests in BBB were classified in Class 9.Plan, Art. III.B.9(a) ("Class 9 consists of all Interests in BBB.").  The Plan further provides, "Each Allowed Interest in BBB shall be canceled, released and extinguished, and will be of no further force and effect, and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests." *Id.*, Art. III.B.9(b). It also provides, "Class 9 is impaired. Holders of Interests in BBB are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan." *Id.*, Art. III.B.9(c); Confirmation Order, at ¶ 15 ("Holders of Interests in Class 9 and Class 10 (the "Deemed Rejecting Classes") are Impaired under the Plan and are entitled to no recovery under the Plan and are, therefore, deemed to have rejected the Plan.").

[23] *See* Doc. Nos. 3312, 3314, 3331, 3332, 3440, 3477.

*Secured Claims) [Doc.3493]* pursuant to which he notified each claimant that its claim will be

expunged because it had been amended by a superseding proof of claim. Pursuant to this Notice

of Adjustment, 182 claims that assert some portion as Administrative, Priority and/or Secured

will be purged. The Plan Administrator will continue to file Notices of Adjustments and/or

Omnibus Objections to seek disallowance of these claims.

### D. Collections.

25. *Causes of Action (Preferences):* In addition to working to reduce the pool of

Administrative, Secured and Priority Claims, the Plan Administrator is also continuing to

investigate and prosecute Causes of Action for the benefit of the Estates. On or about May 16-

17, 2024, the Plan Administrator filed 207 preference actions as adversary proceedings in this

Court (the "Preference Actions") pursuant to which he seeks to recover preferential payments

(gross of attorneys fees and costs) of $87.6 million. As of August 30, 2024, 163 Preference

Actions are still pending. To date, the Plan Administrator has collected $5.2 million in

preference recoveries (net of fees and costs).

26. *Causes of Action (Other):* The Plan Administrator has also initiated the

following additional causes of action: (i) *In re Bed, Bath & Beyond, Inc. et al (Goldberg v. New

Jersey Economic Development Authority),* Adv. No. 24-01443 ( (Bankr. D.N.J. June 3, 2024)

(seeks to recover $19.3 million in refunds); (ii) *In re Bed, Bath & Beyond, Inc. et al (Goldberg

v. Internal Revenue Service),* Adv. No. 24-01533 (Bankr. D.N.J. August 16, 2024) (seeks to

recover $22.9 million in refunds); (iii) *20230930-DK-Butterfly-1, Inc., v. HBC Investments

LLC et al*, Case No. 24-cv-3370, (S.D.N.Y. May 2, 2024) (alleges in excess of $310 million in

damages); (iv) *20230930-DK-Butterfly-1, Inc.. v. Ryan Cohen et al*. (S.D.N.Y. August 1, 2024)

(alleges in excess of $47 million in damages); (v) *20230930-DK-Butterfly-1, Inc. v. Edelman et*

*al.*, Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024) (alleging in excess of $343 million in damages).[24]

27.     *Other Collections:* The Plan Administrator has also collected and liquidated other assets. More specifically, he has collected $17.9 million in credit reserve returns, $11.7 million in various tax refunds, $31.7 million in release of cash and collateral associated with LPT transactions,$7.1 million in release of customs collateral, $9.3 million in vendor refunds and rebates, and $22.9 million in miscellaneous sales and recoveries.

## RELIEF REQUESTED

28.     By this Motion, and pursuant to Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c),[25] the Plan Administrator seeks an extension of the Claims Objection Bar Date to the latter of: (a) March 31, 2025 or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim.

29.     The Plan Administrator further requests that the order approving this Motion be without prejudice to the rights of the Plan Administrator to seek further extension of the Claims Objection Bar Date.

## BASIS FOR RELIEF

---

[24] The Plan Administrator is also prosecuting other litigation, including litigation commenced prior to the Effective Date.

[25] Local Rule 3007-1 governs the timing by which claims objections should be brought. It provides, in relevant part, "A request for an extension of the time to object to the allowance of a claim must be brought by motion filed before the expiration of the time to object."

30.     As discussed above, the Plan vests the discretion to object to Claims in the Plan

Administrator. Bankruptcy Rule 9006(b) also makes clear that the Court may extend unexpired

time periods with or without notice. Specifically, Rule 9006(b) states in relevant part that:

> (1) *In General* . . . when an act is required or allowed to be done at
> or within a specified period by [the Bankruptcy Rules] or by a
> notice given thereunder or by order of court, the court for cause
> shown may at any time in its discretion . . . with or without motion
> or notice order the period enlarged if the request therefor is made
> before the expiration of the period originally prescribed or as
> extended by a previous order . . .

Fed. R. Bankr. P. 9006(b)(1). The Claims Objection Bar Date has not expired as of the filing of

the Motion; accordingly, the Court is authorized to grant the relief requested herein.

31.     Since his appointment on September 29, 2023 and as noted in detail above, the

Plan Administrator (with the assistance of his staff and professionals) has, among other things,

(i) worked actively to reconcile and object to Administrative, Priority and Secured Claims; (ii)

worked to collect the Debtors' remaining Assets, such as reserves held by credit card

companies, excess collateral held by insurance companies and taxing authorities, prepayments

held by vendors and refunds owed by the IRS and state and local taxing authorities; (iii) has

concluded asset sales; (iv) is prosecuting Causes of Action; (v) has negotiated extensively with

the California and Texas taxing authorities over the amounts of alleged Administrative, Priority

and Secured tax claims and has resolved those claims; (vi) has  responded to a plethora of

motions filed by parties in interest in the bankruptcy court seeking, *inter alia*, allowance of

claims and relief from the automatic stay; (vi) has prepared and filed Post Confirmation

Operating Reports, and (vii) has made distributions on account of Allowed DIP Claims and

Allowed FILO Claims.

32.     Given all of the Plan Administrator's duties and responsibilities and the

magnitude of the asserted Administrative and Priority Claims, the Plan Administrator needs

additional time to evaluate and object to Claims. The Plan Administrator's first priority with

respect to Claims is reconciling the Administrative Claims. The Plan contemplates payment of

Administrative Claims on the Effective Date (if Allowed at that time) or as they become

Allowed; however, payment on account of Allowed Administrative Claims is limited to

availability of funds in the applicable waterfall funding source.

33.     The Plan provides:

> . . . each Holder of an Allowed Administrative Claims shall be paid
> the unpaid portion of its Allowed Administrative Claim from the
> Combined Reserve on the latest of: (a) the Effective Date if such
> Administrative Claim is Allowed as of the Effective Date; (b) the
> date such Administrative Claim is Allowed or as soon as
> reasonably practicable thereafter; and (c) the date such Allowed
> Administrative Claim becomes due and payable, or as soon
> thereafter as is reasonably practicable;. . . . Holders of Allowed
> Administrative Claims shall receive payment in full from (a) first,
> the Combined Reserve; (ii) second, the Shared Proceeds Pool; and
> (iii) third, any remaining Distributable Proceeds after payment in
> full of all Allowed DIP Claims and Allowed FILO Claims.

Plan, Article II.A.

34.     As was noted above, there are $46.8 million in Asserted Current Administrative

Claims and $557 million of Asserted Current Priority Claims, whereas the Combined Reserve

turned over to the Plan Administrator on the Effective Date was $10 million, $2.8 million of

which was set aside for the Texas Taxing Authorities (and $1,424,458.00 of which has been

drawn to pay those taxes). There is currently $0.00 in the Shared Proceeds Pool; and while the

Plan Administrator has made payments totaling $76.6 million in principal and $17.4 million in

interest on account of the Allowed DIP Claims and the Allowed FILO Claims, there is still

$348.8 million in principal outstanding (plus interest) before there will be any "remaining Distributable Proceeds" to distribute to holders of Allowed Administrative Claims.[26]

35.     The Plan Administrator is working through the process of evaluating the Administrative Claims for the purpose of allowance or objection, but perhaps more importantly, the Plan Administrator needs to determine the realistic pool of Allowed Administrative Claims before he can determine if the funding of the Combined Reserve is sufficient to allow for payment to holders of Allowed Administrative Claims (as they become Allowed), while continuing to reserve for unresolved Administrative Claims given the extraordinary disparity between the funding in the Combined Reserve and the asserted Administrative Claims.

36.     Absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full. To the extent that the Plan Administrator is only able to make a pro rata distribution on account of Allowed Administrative Claims, the Plan Administrator will file a motion seeking appropriate relief to do so.

37.     At this juncture, the Plan Administrator seeks additional time to review, analyze and object to Claims. The Plan Administrator submits that extending the Claims Objection Bar Date is in the best interests of all stakeholders. The extension sought will afford the Plan Administrator and his professionals an opportunity to make more fully informed decisions concerning the resolution of pending Claims, in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

---

[26] "*Distributable Proceeds*" means "subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve." *See* Plan, Article I.A, at § 58.

38.     Furthermore, extension of the Claims Objection Bar Date is not sought coercively for purposes of delay, nor will it affect or prejudice any claimant's substantive defense(s) to any objection. Rather, the extension is intended to promote the efficient administration of these cases and the claims allowance process. Absent the requested extension of the Claims Objection Deadline, the Plan Administrator will either be precluded from challenging invalid, misclassified, and/or overstated Claims, or he will be forced to file hastily prepared protective objections without the benefit of a full review and analysis and will incur the cost of doing so.

39.     For the reasons set forth above, the Plan Administrator submits that extending the Claims Objection Bar Date as to Claims of all priority levels (including but not limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims) through and including the later of (a) March 31, 2025, or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim – is necessary, prudent, and in the best interests of all stakeholders. This is the second requested extension.

**RESERVATION OF RIGHTS**

40.     The Plan Administrator hereby reserves the right to seek further extension or extensions of the Claims Objection Bar Date.

**NOTICE**

41.     Notice of this Motion is governed by paragraph 124 of the Confirmation Order, which provides:

**Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator, (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

42.     Pursuant to Paragraph 124, notice of the Motion and the hearing thereon was given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iii) all parties who are registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

WHEREFORE, the Plan Administrator respectfully requests that the Court enter the Proposed Order, extending the Claims Objection Bar Date as requested herein, and such other and further relief as is just and proper.

Dated:  September 3, 2024              PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
780 Third Avenue, 34th Floor New York, NY
10017 Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com
*Counsel to the Plan Administrator*

# EXHIBIT A

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**District of New Jersey** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| Robert J. Feinstein<br>Bradford J. Sandler<br>Paul J. Labov<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile:  (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>crobinson@pszjlaw.com |
| *Counsel for the Plan Administrator* |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

### SECOND ORDER EXTENDING THE PERIOD WITHIN WHICH
### THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS

The relief set forth on the following pages, numbered two (2) through and

including three (3), is hereby **ORDERED**:

Upon consideration of the *Second Motion for Entry of an Order Extending the*

*Period Within Which the Plan Administrator May Object to Claims* (the "Motion") [Doc. No.

___] filed by Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Debtors:        BED BATH & BEYOND INC., *et al.*
Case No.        23-13359-VFP
Caption of Order:    SECOND ORDER EXTENDING THE PERIOD WITHIN WHICH
                     THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS

---

Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and

affiliated debtors (the "Debtors"), and it appearing that the relief requested in the Motion is in the

best interests of the Debtors' estates, their creditors, and all other parties in interest; and the

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28

U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

and it appearing that no other or further notice need be provided; and no objections to the Motion

having been filed; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The time period within which the Plan Administrator may file objections

to Claims of all priority levels – including but not limited to all Secured Claims, Administrative

Claims (whether filed as proofs of claims or as requests for payment and/or motions on the

docket), Priority Claims and/or General Unsecured Claims is extended through and including

the later of (a) March 31, 2025, or (b) one hundred eighty (180) days following the date that a

Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or

on behalf of a holder of such Claim (the "Claims Objection Bar Date").

3.      This Order shall be without prejudice to the rights of the Plan

Administrator to seek further extensions of the Claims Objection Bar Date.

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al*. |
| Case No. | 23-13359-VFP |
| Caption of Order: | SECOND ORDER EXTENDING THE PERIOD WITHIN WHICH THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS |

4.      This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of this Order in all respects and further to hear and determine all matters arising from the construction and implementation of this Order.

# EXHIBIT B

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel for the Plan Administrator*

</td><td></td></tr>
</table>

|  |  |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF PLAN ADMINISTRATOR MICHAEL GOLDBERG IN SUPPORT OF SECOND MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS

Pursuant to 28 U.S.C. § 1746, I, Michael Goldberg, under penalty of perjury,

declare as follows:

1.    I am the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed

Bath & Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors"). I give this declaration in

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

support of the *Second Motion for Entry of Order Extending Time to Object to Claims*

(the "Motion"). Pursuant to the Motion, I seek entry of an order extending the time to object to

Claims of all priority levels (including but not limited to all Secured Claims, Administrative

Claims - whether filed as proofs of claims or as requests for payment and/or motions on the

docket - Priority Claims and/or General Unsecured Claims) through and including March 31,

2025.[3]

      2.      Except as otherwise indicated, the statements in this declaration are based

on: (a) my personal knowledge of the Debtors' business operations since my appointment as

Plan Administrator; (b) my review of relevant documents including the Motion; (c) information

provided to me by, or discussions with, members of my management team, other employees, or

the Debtors' other advisors; and/or (d) my general experience and knowledge. I am authorized

to submit this declaration. If called upon to testify, I can and will testify competently as to the

facts set forth herein.

      3.      According to the Debtors' Claims and Noticing Agent Kroll ("Kroll"), as of

August 29, 2024, creditors have filed 20,260 proofs of claim against the Debtors ("Total

Claims"), and the current amount of asserted General Unsecured Claims is $3,039,680,861.

While it is likely that many of the Administrative, Priority and Secured Claims are overstated

and/or should be reclassified as General Unsecured Claims, according to the official claims

register generated by Kroll, the Current Asserted Amount of such claims are listed below.

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

| Administrative, Priority and Secured Claims Summary as of 8/29/2024 | | |
|---|---|---|
| Claim Type | No. of Claims | Current Asserted Amount |
| Administrative Claims (11 U.S.C. § 503) | 1368 | $46,756,991.00 |
| Priority Claims (11 U.S.C. § 507) | 1362 | $556,618,451.00 |
| Secured Claims (11 U.S.C. § 506) | 623 | $73,287,092.00 |

4.      My team and I have identified numerous categories of Claims that were filed with alleged Administrative, Priority or Secured portions (each as defined below): Landlord Claims, 503(b)(9) Claims, Trade Claims, Tax Claims, Customer Claims, IT Claims, Insurance Claims, PI Claims and Other Claims. In addition to the substantive objections that we have brought and/or will bring (if appropriate) (the "Substantive Objections"), within each category, there are: (a) claims that simply need to be reclassified as general unsecured claims, and (b) claims that should be disallowed on non-substantive grounds (duplicates claims against same debtor, duplicate claims filed against multiple debtors, claims that have been amended and superseded, contingent claims) (the "Non-Substantive Objections"). As is further detailed below, we have made significant progress on both Substantive and Non-Substantive Objections.

5.      *Brandon Adam Meadows Claims*: On August 27, 2024, the Court entered an order [Doc. 3491] disallowing proof of claim 12957 filed in the amount of $1,000,500,000.00 and proof of claim 18124 filed in the amount of $10,850,164,733.30, both of which alleged that significant portions were entitled to Administrative, Secured and/or Priority status.

6.      *Landlord Claims*: My team and I have identified over 260 substantive proofs of claims filed by landlords that assert some portion as an Administrative Claim (the "Landlord Claims"). On May 24, 2024, my counsel filed and served the *Notice Of Adjustment To Proofs*

*Of Claim Without Objection (Satisfied Administrative Lease Claims) [Doc. 3294]* pursuant to which we notified each claimant that its claim would be expunged because it had been satisfied in connection with the assumption assignment of the applicable lease. The Claims Agent subsequently expunged those 18 Landlord Claims. My team and I are in the process of reviewing and preparing objections (where appropriate) to the remaining 245 Landlord Claims, which arise from leases that were rejected. I have has also entered into stipulations settling lease claims with F3Metalworks, Inc. [Doc. 3474], Realty Income Corporation [Doc. No. 3471], Junction Road Madison Investors, LLC [Doc. 2966], and RPT Realty, L.P. [Doc. No. 2965].

7.    *503(b)(9) Claims*: My team and I have identified approximately 96 substantive proofs of claims filed by vendors that assert some portion as entitled to priority under Bankruptcy Code section 503(b)(9) (the "503(b)(9) Claims"). I opposed a motion filed by vendor *Levtex LLC* [Doc. No. 2705], and on April 12, 2024, obtained an order denying 503(b)(9) status to goods that were drop-shipped from the vendor to the Debtors' customers. [Doc. No. 2967]. My team and I are in the process of reviewing and preparing objections (where appropriate) to the remaining 503(b)(9) Claims, numerous of which have the same issue with respect to drop-shipments.

8.    *Other Trade Claims:* My team and I have identified numerous  proofs of claims filed by vendors that assert some portion as a Priority, Administrative or Secured Claim (the "Other Trade Claims") and are in the process of reviewing and preparing objections (where appropriate) to the Other Trade Claims.

9.    *Customer Claims:* My team and I have identified approximately 1195 proofs of claims filed by customers based on gift cards and/or merchandise returns that assert some portion as a Priority, Administrative or Secured Claim (the "Customer Claims"). On August 22,

2024, my counsel filed the *First Omnibus Objection (Substantive) to Certain Claims (Reclassified Gift Card/Merchandise Credit Claims No. 1)* [Doc. No. 3475] that seeks to reclassify 100 of those Customer Claims as Class 6 General Unsecured Claims. The matter is set for hearing on September 24, 2024 at 10: 00 a.m.. Assuming that the Court sustains the objection, we will bring similar objections to the other 1095 Customer Claims.

10.    *Information Technology Claims*: My team and I have identified numerous proofs of claims filed by providers of informational technology services that assert some portion as a Priority, Administrative or Secured Claim (the "IT Claims") and are in the process of reviewing and preparing objections (where appropriate). I have also entered  into stipulations settling IT Claims with Microsoft Corporation and Workday, Inc.

11.    *Insurance Company Claims*: My team and I negotiated and obtained court approval for a series of LPT Transactions that resolved significant claims filed by the Debtors' insurance companies (general liability, workers compensation, et cetera) and transferred the estates' continuing exposure (certain deductibles, self-insured retentions and other reimbursement obligations) to the insurers.  More specifically, on April 11, 2024, the Court entered the *Stipulation and Consent Order (A) Settling Dispute Over Disposition of Collateral Backing Obligations to Safety National Casualty Corporation; (B) Resolving,  in Part, Safety Proof of Claim NOS. 10483 and 18738; and (C) Granting Related Relief* [Doc. No. 2963]. On March 6, 2024, the Court entered the *Stipulation and Consent Order Resolving Dispute over Disposition of Collateral Backing Obligations to the Travelers Indemnity Company and Resolving Travelers Proof of Claim No. 8004* [Doc. No. 2915]. On June 4, 2024, the Court entered its *Order Granting Motion for the Plan Administrator Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving Settlement Agreement with Chubb*

*Companies; (II) Withdrawing Proof of Claim No. 11413; and (III) Granting Related Relief*
[Doc. No. 3308]. A hearing on the *Motion Pursuant to Section 105 of the Bankruptcy Code for*
*Entry of an Order (I) Approving the Close-Out Agreement with Arch; (II) Withdrawing Proofs*
*of Claim Nos. 10344 and 11343; and (III) Granting Related Relief* [Doc. No 3453] is set for
September 10, 2024.

12.     *Tax Claims*: My team and I have identified over 500 hundred substantive claims
filed by taxing authorities that assert Priority, Administrative or Secured (the "Tax Claims")
status and we have been working to resolve them with the appraisal districts and comptrollers in
46 states, as well as with the Internal Revenue Service and Puerto Rico. As is described below,
the we have made significant progress in connection with tax claims filed by taxing authorities
in Texas and in California.

13.     *Texas Tax Claims*. On September 11, 2023, the Debtors filed their (I) *Omnibus*
*Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay*
*Proceedings* [Doc. No. 2156] (the "Omnibus Texas Tax Objection"). The Omnibus Texas Tax
Objection sought entry of an order (i) establishing the property market value bases upon which
to compute taxes for tax year 2023 for the Debtors' property in certain Texas counties set forth
therein and to stay state proceedings and (ii) modifying or reducing applicable claims filed by
the Texas Taxing Authorities.  On that same date, the Debtors filed their *Motion to Determine*
*Tax Liability and Stay Proceedings* [Doc. No. 2157] (the "Texas Tax Determination Motion,"
and together with the Omnibus Texas Tax Objection, the "Texas Tax Relief Pleadings"). The
Texas Tax Determination Motion sought entry of an order establishing the property market
value bases upon which to compute taxes for tax year 2023 for the Debtors' property in Bell and
Potter-Randal counties and to stay related state proceedings. Post-Effective Date, I prosecuted

the motions on behalf of the estates and began negotiating with the applicable claimants. On

April 9, 2024, I obtained authority to settle and pay the Texas Tax Claims from funds that had

been escrowed for that purpose in connection with confirmation. *See Order (I) Authorizing the*

*Settlement of Ad Valorem Tax Claims of Texas Taxing Authorities, (II) Authorizing the Use of*

*$2.8 Million Set Aside to Satisfy Claims of Texas Taxing Authorities, and (III) Granting Related*

*Relief.* [Doc. No. 2954]. My team and I were able to negotiate settlements with nearly all of the

Texas Taxing Authorities, encompassing approximately seventy-eight (78) proofs of claim and

those where a settlement was not reached have been otherwise resolved and paid in connection

with 2023 *Ad Valorem* tax claims. On August 26, 2024, my counsel filed Notices of Withdrawal

of the Texas Tax Relief Pleadings. [Doc. Nos. 3184, 3185]. A joint motion [Docket No. 2664]

by the Texas Taxing Authorities seeking to compel payment of certain taxes relating to tax year

2022 is set to be heard on October 16, 2024. My team and I have been able to negotiate a

resolution with the Texas Taxing Authorities, which, if approved, will resolve all Texas Taxing

Authority claims relating to 2022 *Ad Valorem* taxes.

14.    *California Tax Claims*. On September 15, 2023, the Debtors filed their (I)

*Omnibus Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay*

*Proceedings* [Doc. No. 2180] (the "Omnibus California Tax Objection"). The Omnibus

California Tax Objection sought entry of an order (i) establishing the property market value

bases upon which to compute taxes for tax year 2023 for the Debtors' property in certain

California counties set forth therein and to stay state proceedings and (ii) modifying or reducing

applicable claims filed by the California Taxing Authorities. On that same date, the Debtors

filed their *Motion to Determine Tax Liability and Stay Proceedings* [Doc. No. 2181] (the

"California Tax Determination Motion," and together with the Omnibus California Tax

Objection, the "<u>California Tax Relief Pleadings</u>"). The California Tax Determination Motion sought entry of an order establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in certain counties and to stay related state proceedings. Post-Effective Date, I prosecuted the motions on behalf of the estates and began negotiating with the applicable claimants. On January 1, 2024, the court entered an order sustaining the Omnibus California Tax Objection with respect to certain claimants. [Doc. No. 2784]. My team and I subsequently negotiated stipulations with several of the California Taxing Authorities pursuant to which their claims have been reduced, allowed and paid. Accordingly, on February 27, 2024, my counsel withdrew the California Tax Determination Motion as to (i) the County of Fresno; (ii) the County of Los Angeles; (iii) San Mateo County Treasurer-Tax Collector and (iv) the County of Santa Clara. [Doc. No. 2911]. On August 26, 2024, my counsel withdrew the California Tax Relief Pleadings with respect to the remining claimants. [Doc. Nos. 3487, 3486]. In total, all – approximately twenty-seven (27) claims – relating to 2023 *Ad Valorem* taxes have been resolved.

15.    *Personal Injury Claims*: Since the Effective Date multiple individuals have filed motions for relief from the automatic stay to liquidate their pre-petition personal injury claims in various state courts. Three such motions are currently pending and are set for hearings and/or status conferences on September 10, 2024.[4]  As the Court is aware, because the Debtors' general liability insurance has a one million dollar self-insured retention for claims that arise after March 1, 2020 (including defense costs), each dollar spent fighting these actions in state court results in a dollar for dollar reduction of funds available to pay Administrative, Priority and other General Unsecured Creditors, thereby elevating pre-petition general unsecured claims

---

[4] *See* Zeve [Doc. No. 2936], Akdemir [Doc. No 3195], and Duczkowski [2679].

to administrative priority status.  Accordingly, I opposed (and continue to oppose) relief from stay.[5] As a result of the hearing the Court held on the Zeve and Duczkowski matters, my team and I have been working closely with state court counsel to the movants and counsel to its insurer Safety National to develop a set of alternative dispute resolution procedures to govern the approximately 100 personal injury claims filed against the Debtors (the "Proposed ADR Procedures"), which we expect to file a motion to approve by the end of September.

16.    *Equity Holder Claims*: My team and I have identified alleged Administrative, Secured and Priority Claims filed by former equity holders in BBB (the "Equity Holder Claims") and are in the process of preparing an objection that seeks to disallow such claims on the grounds that all Interests were extinguished under the Plan. As the Court is aware, however, during the First Extension Period, an alleged former shareholder who has identified himself only as "ML" filed a motion to appoint an equity committee, which I opposed.[6] The Court denied the motion on August 21 2024 [Doc. No. 3473].  A *Motion for Sanctions* against ML [Doc. No. 3432] is currently set for hearing on September 10, 2024.

17.    *Non-Substantive Objections*: My team and I have identified hundreds of Administrative, Priority and/or Secured Claims that are subject to objection because they: (i) have been amended; (ii) are duplicative of other claims filed against the same debtor; (iii) are duplicative of other claims filed against multiple debtors; and/or (iv) are filed against the wrong debtor. Some of these objections may be brought pursuant to the Plan's "notice of adjustment" procedure; others will require a formal objection, and my team and I are in the process of preparing both. On August 28, 2024, my counsel filed and served the *Notice of Adjustment to Proofs of Claim Without Objection (Amended Administrative, Priority and Secured Claims)*

---

[5] *See* Duczkowski [Doc. Nos. 2760, 2987, 3299], Zeve [Doc. Nos. 3067, 3299].

[6] *See* Doc. Nos. 3312, 3314, 3331, 3332, 3440, 3477.

*[Doc.3493]* pursuant to which each claimant was notified that its claim will be expunged because it has been amended by a superseding proof of claim. Pursuant to this Notice of Adjustment, 182 claims that assert some portion as Administrative, Priority and/or Secured will be purged.

18.      *Collections (General)*: In addition to working to reduce the pool of Administrative, Secured and Priority Claims, my team and I are also continuing to collect and liquidate the Debtors' assets. My team and I have collected $17.9 million in credit reserve returns, $11.7 million in various tax refunds, $31.7 million in release of cash and collateral associated with LPT transactions, $7.1 million in release of customs collateral, $9.3 million in vendor refunds and rebates, and $22.9 million in miscellaneous sales and recoveries.

19.      *Collections (Causes of Action (Preferences)):* On or about May 16-17, 2024, my counsel filed 207 preference actions as adversary proceedings in this Court (the "<u>Preference Actions</u>") pursuant to which I seek to recover preferential payments of $87.6 million. As of August 30, 2024, 163 Preference Actions are still pending. To date, I have collected $5.2 million in preference recoveries (net of fees and costs).

20.      *Collections (Causes of Action (Other)):* I have also initiated the following additional causes of action:  (i) *In re Bed, Bath & Beyond, Inc. et al (Goldberg v. New Jersey Economic Development Authority),* Adv. No. 24-01443 ( (Bankr. D.N.J. June 3, 2024) (seeks to recover $19.3 million in refunds); (ii) *In re Bed, Bath & Beyond, Inc. et al (Goldberg v. Internal Revenue Service),* Adv. No. 24-01533 (Bankr. D.N.J. August 16, 2024) (seeks to recover $22.9 million in refunds); (iii) *20230930-DK-Butterfly-1, Inc.,  v. HBC Investments LLC et al*, Case No. 24-cv-3370, (S.D.N.Y. May 2, 2024) (alleges in excess of $310  million in damages); (iv) *20230930-DK-Butterfly-1, Inc.. v. Ryan Cohen et al*. (S.D.N.Y. August 1, 2024) (alleges in

excess of $47 million in damages); (v) *20230930-DK-Butterfly-1, Inc. v. Edelman et al.*, Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024) (alleging in excess of $343 million in damages).

21.     Given all of my duties and responsibilities and the magnitude of the asserted Administrative and Priority Claims, my team and I need additional time to evaluate and object to Claims. Our first priority with respect to Claims is reconciling the Administrative Claims. The Plan contemplates payment of Administrative Claims on the Effective Date (if Allowed at that time) or as they become Allowed; however, payment on account of Allowed Administrative Claims is limited to availability of funds in the applicable waterfall funding source. As was noted above, there are $46.8 million in Asserted Current Administrative Claims and $557 million of Asserted Current Priority Claims, whereas the Combined Reserve turned over to me on the Effective Date was $10 million, $2.8 million of which was set aside for the Texas Taxing Authorities (and $1,424,458.00 of which has been drawn to pay those taxes). There is currently $0.00 in the Shared Proceeds Pool; and while I have made payments totaling $76.6 million in principal and $17.4 million in interest on account of the Allowed DIP Claims and the Allowed FILO Claims, there is still $348.8 million in principal outstanding (plus interest) before there will be any "remaining Distributable Proceeds" to distribute to holders of Allowed Administrative Claims.

22.     Absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution waterfall set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full. To the extent that I determine that I am only able to make a pro rata distribution on account of Allowed Administrative Claims, I will file a motion seeking appropriate relief to do so.

23.      Extending the Claims Objection Bar Date is in the best interests of all

stakeholders. The extension sought will afford my professionals and I an opportunity to make

more fully informed decisions concerning the resolution of pending Claims, in the interests of

ensuring ratable distributions among and maximizing value for legitimate creditors. This is the

second requested extension.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of
my knowledge, information and belief.

Dated: September 3, 2024                    /s/ Michael Goldberg_____
                                            By: Michael Goldberg
                                            In His Capacity as Plan Administrator to 20230930-
                                            DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond
                                            Inc.) and 73 affiliated debtors