**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:    rfeinstein@pszjlaw.com
          bsandler@pszjlaw.com
          plabov@pszjlaw.com
          crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**CERTIFICATION OF NO OBJECTION REGARDING**
**PLAN ADMINISTRATOR'S MOTION PURSUANT TO SECTION 105 OF THE**
**BANKRUPTCY CODE FOR ENTRY OF AN ORDER (I) APPROVING THE CLOSE-**
**OUT AGREEMENT WITH ARCH; (II) WITHDRAWING PROOFS OF CLAIM NOS.**
**10344 AND 11343; AND (III) GRANTING RELATED RELIEF**

1.      On August 13, 2024, Michael Goldberg, solely in his capacity as the Plan

Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath &

Beyond Inc.)[2] and affiliated debtors (the "Debtors") filed the *Plan Administrator's Motion*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the Certificate *of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving the Close-Out Agreement with Arch; (II) Withdrawing Proofs of Claim Nos. 10344 and 11343; and (III) Granting Related Relief [Docket No. 3453] (the "Motion").

2.     The Plan Administrator served the Motion on August 13, 2024, upon the parties listed in the Certificate of Service [Docket No. 3455].

3.     Pursuant to the Notice of Plan Administrator's Motion Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving the Close-Out Agreement with Arch; (II) Withdrawing Proofs of Claim Nos. 10344 and 11343; and (III) Granting Related Relief [Docket No. 3454], the deadline for parties to file objections and responses to the Motion was on September 3, 2024 (the "Objection Deadline").  No objections or responses to the Motion were filed on the docket on or before the Objection Deadline.  The Plan Administrator has not received any informal responses to the Motion on or before the Objection Deadline.

4.     The proposed order (the "Proposed Order") that was appended to the Motion is attached hereto as **Exhibit A**.  The Plan Administrator respectfully requests that the Court enter the attached Proposed Order at the earliest convenience of the Court.

Dated:  September 9, 2024

/s/ Colin R. Robinson
Robert J. Feinstein, Esq. (admitted pro hac vice)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:    (212) 561-7700
Email:           rfeinstein@pszjlaw.com
                      bsandler@pszjlaw.com
                      plabov@pszjlaw.com
                      crobinson@pszjlaw.com
Counsel to the Plan Administrator

## Exhibit A

**Proposed Order**

| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| Robert J. Feinstein, Esq. (admitted *pro hac vice*)<br>Bradford J. Sandler, Esq.<br>Paul J. Labov, Esq.<br>Colin R. Robinson, Esq.<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone:  (212) 561-7700<br>Facsimile:  (212) 561-7777<br>Email:      rfeinstein@pszjlaw.com<br>           bsandler@pszjlaw.com<br>           plabov@pszjlaw.com<br>           crobinson@pszjlaw.com |
| *Counsel to the Plan Administrator* |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING MOTION OF THE PLAN ADMINISTRATOR PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER
(I) APPROVING THE CLOSE-OUT AGREEMENT WITH ARCH;
(II) WITHDRAWING PROOFS OF CLAIM NOS. 10344 AND 11343; AND
(III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered one (1) through five (5), is

**ORDERED**.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Upon the *Plan Administrator's Motion Pursuant to Section 105 of the Bankruptcy Code for Entry of an Order (I) Approving the Close-Out Agreement with Arch; (II) Withdrawing Proofs of Claim Nos. 10344 and 11343; and (III) Granting Related Relief* (the "<u>Motion</u>")[1]; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Parties negotiated the terms and conditions of the Arch Agreement in good faith, at arm's length, and free of any collusion; and this Court having found that the terms and conditions contained in the Arch Agreement are fair, equitable, reasonable and in the best interests of the Debtors, their estates, creditors and equity holders and is a valid and sound exercise of the Plan Administrator's business judgment and should be approved; and this Court having found that the Plan Administrator's notice of the Motion was sufficient under the circumstances and that no other of further notice is necessary; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      The Arch Agreement attached hereto as **<u>Exhibit 1</u>** and all of the terms thereof are hereby approved.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Arch Agreement, as applicable.

3.      The Plan Administrator is authorized to enter into the Arch Agreement on behalf
of himself and all of the other BBB Releasors and to take any and all actions necessary and
appropriate to consummate and perform all of the terms and conditions of the Arch Agreement.

4.      To the extent necessary, Arch is also authorized to enter into the Arch Agreement
and to take any and all actions necessary and appropriate to consummate and perform all of the
terms and conditions of the Arch Agreement including, but not limited to, paying the Close-Out
Payment to the Plan Administrator accordance with the terms of the Arch Agreement.

5.      On and after the Close-Out Effective Date, none of the Plan Administrator, any of
the other BBB Releasors, or any person or entity claiming by and/or through him and/or them shall
have any rights, title, or interests in the Retained BBB Collateral or the proceeds thereof.

6.      On and after the Close-Out Effective Date, Arch shall have all right, title, and
interest in the Retained BBB Collateral and is authorized to draw upon the Retained BBB
Collateral, hold and use the proceeds and take other actions related to the Retained BBB Collateral,
in each case in Arch's sole discretion and without further order of the Court.

7.      The Stay/Injunction, to the extent applicable, is lifted to permit Arch to conduct the
Claims Handling.

8.      The following releases set forth in the Arch Agreement are hereby approved:

    i.      In consideration of the promises contained herein, and for other good and
valuable consideration, the receipt and sufficiency of which is hereby
acknowledged, on and after the Close-Out Effective Date, the Plan
Administrator, on behalf of himself and all parties claiming by, through, or
under him, the Debtors, the Debtors' estates, all of the Debtors' successors
and affiliates, and the present, past, and future parents, subsidiaries, and
affiliated corporations, divisions, affiliates, predecessors, principals,
partners, representatives, successors, agents, assigns, owners, directors,
officers, employees, stockholders, attorneys, experts, trustees, oversight
committee members, and advisory board members of each of the foregoing
(collectively, the "BBB Releasors") hereby fully and irrevocably release
waive, acquit, and forever discharge Arch and each of its present, past, and

future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, and experts (collectively, the "Arch Releasors") of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the BBB Releasors had or claim to have or may have against any or all of the Arch Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling (as defined herein), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

ii.  In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Releasors hereby fully and irrevocably release, waive, acquit, and forever discharge each of the BBB Releasors of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Releasors had or claim to have or may have against any or all of the BBB Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

3

9.      Nothing in this Order or the Arch Agreement (i) expands, contracts or otherwise alters the insurance coverage provided by the BBB Insurance Program or the terms and conditions of the BBB Insurance Program; (ii) permits any holder of a Covered Claim to recover the same amounts from Arch and again from any other person or entity, including the Plan Administrator, the Debtors, and/or the Debtors' estates, (iii) creates or permits a direct right of action by any holder of a Covered Claim against Arch; (iv) precludes or limits, in any way, the rights of Arch to contest and/or litigate with any person or entity the existence, primacy, and/or scope of available insurance coverage under any alleged applicable policy; (v) is a determination as to insurance coverage under the BBB Insurance Program; (vi) relieves any holder of a Covered Claim from any obligation to have filed a proof of claim in the Chapter 11 Cases; or (vii) alters, modifies, amends, affects, impacts, or prejudices in any way or respect any of the terms and conditions of and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses under any insurance policy and/or any related agreement that is not part of the BBB Insurance Program and/or any surety bond and/or any agreement related thereto.

10.      On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by Arch and/or the Plan Administrator.  For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Chapter 11 Cases by Arch and/or any of Arch's affiliates.

11.      Except as expressly set forth in this Order or in the Arch Agreement, nothing amends, alters, or modifies the terms and conditions of the Plan and/or the Confirmation Order.

12.      This Order and the Arch Agreement are binding upon and shall inure to the benefit of the Parties and their respective administrators, heirs, executors, legal representatives, successors

and permitted assigns, including, without limitation, any successor to the Plan Administrator, the

Debtors, the Debtors' estates, and/or the Debtors' affiliates and successor.

13.     The terms and conditions of this Order are immediately effective and enforceable

upon its entry, and for the avoidance of doubt the stays provided for by Rules 4001(a)(3) and

6004(h) of the Federal Rules of Bankruptcy Procedure, if and to the extent applicable, shall be,

and hereby are, waived.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

15.     The requirement set forth in Local Rule 9019-3 that the Plan Administrator file a

notice of proposed compromise or settlement is hereby deemed satisfied by the contents of the

Motion and Arch Agreement or otherwise waived.

16.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation or interpretation of this Order.

## **Exhibit 1**

**Arch Agreement**

Execution Version

# CLOSE-OUT AGREEMENT

THIS CLOSE-OUT AGREEMENT (the "Agreement") is made and entered into as of August 12, 2024 by and between Michael Goldberg solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) ("BBB") and the other Debtors (as defined herein), and Arch Insurance Company on behalf of itself and its subsidiary Arch Specialty Insurance Company (collectively, and solely in their capacities as insurers, "Arch"). Each of Arch and the Plan Administrator is a "Party" and are collectively the "Parties."

## Recitals

WHEREAS, Arch issued to BBB and its various affiliates certain insurance policies providing coverage for Workers Compensation and Employers Liability Insurance, Excess Workers Compensation, Commercial General Liability, Automobile Liability, and Canadian General Liability commencing March 1, 2007 through March 1, 2008 and then for annual policy periods commencing March 1, 2008 up to and including the policy period incepting March 1, 2011 and expiring March 1, 2012 as identified on Schedule A hereto (together with any and all endorsements and addenda thereto, collectively the "BBB Insurance Policies"); and

WHEREAS, in conjunction with the BBB Insurance Policies, Arch and BBB executed certain agreements including, without limitation, that certain Loss Sensitive Program Agreement effective as of March 1, 2007, that certain Loss Sensitive Program Agreement effective as of March 1, 2008, and that certain Loss Sensitive Program Agreement effective as of March 1, 2009 detailing certain of the liabilities, obligations and rights of Arch and BBB, which together with any addenda, program specifications tables and/or schedules thereto and any other similar agreements related thereto, are hereinafter collectively incorporated herein by reference and called the "BBB Agreements"); and

WHEREAS, the BBB Insurance Policies and the BBB Agreements constitute the "BBB Insurance Program"); and

WHEREAS, the BBB Insurance Program created certain obligations for which BBB was responsible to reimburse Arch (the "BBB Reimbursement Obligations"); and

WHEREAS, as of June 26, 2024, Arch holds certain security as collateral for the BBB Reimbursement Obligations in an aggregate amount of Five Million Three Hundred Seventy Thousand and Forty US Dollars ($5,370,040) held in the form of the proceeds of that certain Letter of Credit (LC # NUSCGS033822) issued by JPMorgan Chase Bank, N.A. (the "LOC Proceeds" and together with the Letter of Credit, as amended, confirmed, supplemented or replaced, the "BBB Collateral"); and

WHEREAS, on April 23, 2023, BBB and certain affiliates (collectively, "Debtors") filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of

New Jersey (the "Court") commencing bankruptcy cases which have been jointly administered at Case No. 23-13359 (VFP) (the "Bankruptcy Cases"); and

WHEREAS, on or about July 6, 2023, and in accordance with the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584], Arch timely filed two proofs of claim (collectively, the "Arch POCs") asserting claims against BBB; and

WHEREAS, the Arch POCs are identified on the Debtors' claims register as proof of claim no. 10344 and proof of claim no. 11343, respectively; and

WHEREAS, on September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the Debtors' *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2160] (the "Plan"); and

WHEREAS, on September 29, 2023, the Effective Date (as defined in the Plan) of the Plan occurred; and

WHEREAS, pursuant to the Plan, on the Effective Date, among other things, the Debtors assumed the BBB Insurance Program and all of the Debtors' rights and obligations under the BBB Insurance Program vested, unaltered and in their entireties, with the Plan Administrator, as set forth more fully in the Plan; and

WHEREAS, pursuant to the Plan, the Plan Administrator has full discretion to settle any Claim or Cause of Action (as defined in the Plan) where the amount at issue is Ten Million Dollars (US $10,000,000) or less, and no Court approval is required for any such settlement; and

WHEREAS, the Plan Administrator now desires to extinguish all of its and the Debtors' financial obligations under the BBB Insurance Program and forever settle all outstanding balances due to Arch under the BBB Insurance Program as a result thereof, and have Arch continue to adjust and settle all claims and claims expenses under the BBB Insurance Program, and Arch is willing to do so;[1] and

---

[1] For the avoidance of doubt, nothing shall alter, modify, amend, affect, impact, and/or prejudice in any way any insurance policies and/or related agreements that are not part of the BBB Insurance Program as defined herein, any surety bonds and/or related agreements, and/or any of the terms and conditions of or the legal, equitable, or contractual rights, obligations, claims, or defenses under or with respect to any of the foregoing.

**WHEREAS,** the Plan Administrator requested a close-out of all present and future BBB Reimbursement Obligations arising from the BBB Insurance Program and a reduction, return, or release of certain of the BBB Collateral (the "Request"); and

**WHEREAS,** the Parties are entering into this Agreement to settle and resolve any and all claims, disputes, and issues between the Parties related to the BBB Insurance Program, the BBB Collateral, and the Request.

**NOW, THEREFORE,** in consideration of the mutual premises, covenants and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties enter into this Agreement and agree to be bound by its terms.

### Agreement

1.    Within seven (7) business days after the Close-Out Effective Date (as defined herein), Arch shall pay the amount of Five Hundred Thousand US Dollars ($500,000.00) (the "Close-Out Payment") to the Plan Administrator via ACH or wire transfer at Arch's sole discretion pursuant to the ACH or wire instructions and W-9 provided by the Plan Administrator to Arch. The difference between the amount of the LOC Proceeds and the Close-Out Payment shall be referred to herein as the "Close-Out Amount."

2.    The Plan Administrator shall file and serve a motion (the "Motion") seeking entry of an order (the "Approval Order") approving this Agreement as executed by the Parties pursuant to section 105 of the Bankruptcy Code and/or Federal Rule of Bankruptcy Procedure 9019. The Motion shall be in form and substance acceptable to Arch in its sole discretion and shall be served by the Plan Administrator at the Plan Administrator's own expense on a list of entities that is acceptable to Arch in its sole discretion.  The Plan Administrator shall cooperate, and shall be required to cooperate, fully with Arch in responding to or defending against any challenges or objections to the Motion and, further, the Plan Administrator shall not shorten the notice period or extend any objection deadline for the Motion without Arch's express prior written consent.

3.    The Approval Order shall be in form and substance reasonably acceptable to Arch and shall provide, among other things, that: (i) the Agreement is approved; (ii) the Plan Administrator is authorized to enter into this Agreement on behalf of himself and all of the other BBB Releasors (as defined herein) and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of this Agreement; (iii) to the extent necessary, Arch is authorized to enter into this Agreement and to take any and all actions necessary and appropriate to consummate and perform the terms and conditions of this Agreement, including, but not limited to, drawing on, applying, releasing, and/or returning BBB Collateral, as applicable; (iv) on and after the Close-Out Effective Date, none of the Plan Administrator, any of the other BBB Releasors, or any person or entity claiming by and/or through him and/or them shall have any rights, title, or interests in the Retained BBB Collateral (as defined herein) or the proceeds thereof; (v) on and after the Close-Out Effective Date, Arch shall have all right, title, and interest in the Retained BBB Collateral and is authorized to draw upon the Retained BBB Collateral, hold and use

the proceeds and take other actions related to the Retained BBB Collateral, in each case in Arch's sole discretion and without further order of the Court; (vi) the Stay/Injunction (as defined herein), to the extent applicable, is lifted to permit Arch to conduct the Claims Handling (as defined herein); and (vii) the releases set forth herein, which releases shall be restated in the Approval Order in full, are approved. To the extent of any inconsistency between (i) this Agreement and the Approval Order on the one hand, and (ii) any other document, agreement, or order (including, but not limited to, the Plan or the Confirmation Order) on the other hand, the terms of this Agreement and the Approval Order shall control. To the extent of any inconsistency between (i) this Agreement and (ii) the Approval Order, the terms of this Agreement shall control.

4.      Notwithstanding any provision in the Approval Order or any other order of the Court to the contrary, the effective date of this Agreement (the "Close-Out Effective Date") shall be, and shall occur on, the first business day after the Approval Order has been entered by the Court and has become a final, non-appealable order that has not been modified, has not been appealed or challenged, and has no appeals or challenges pending with respect thereto.

5.      On and after the Close-Out Effective Date, Arch shall (i) indefeasibly retain the Close-Out Amount and any and all other amounts previously paid or provided to, or deposited with, Arch by BBB and/or any of the other Debtors (or any predecessor or affiliate) in connection with the BBB Insurance Program or otherwise related to the BBB Insurance Program including, without limitation, any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to Arch at any time that may otherwise be due at any time from Arch to the Plan Administrator in connection with the BBB Insurance Program, if any (all of the foregoing together with the Close-Out Amount, collectively, the "Retained BBB Collateral"); and (ii) have all right, title, and interest in the Retained BBB Collateral including, without limitation, the right to hold, use and/or apply the Retained BBB Collateral and the proceeds thereof for any purpose and take any other actions in Arch's sole discretion without further notice to the Plan Administrator or any of the other BBB Releasors or order of the Court. For the purposes of this paragraph, the automatic stay imposed by section 362(a) of the Bankruptcy Code and any injunction or release provision in the Plan, any order or any other document (collectively, the "Stay/Injunction"), if and to the extent applicable, shall be lifted without further order of the Court.

6.      On and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and on behalf of all of the other BBB Releasors and any party claiming by or through him or them (i) shall forever waive and release, and shall hereby be deemed to forever waive and release, all of the Plan Administrator's and the other BBB Releasors' rights, title and interest, if any, in and to the Retained BBB Collateral; and (ii) agrees that (a) none of the Plan Administrator nor any of the other BBB Releasors shall have any right, title or interest whatsoever in the Retained BBB Collateral, and (b) except as expressly set forth herein, no collateral and/or security shall be reduced, released, paid, or returned to the Plan Administrator or any of the other BBB Releasors and Arch shall not make any payments to the Plan Administrator or any of the other BBB Releasors in connection with the BBB Insurance Program.

7.      In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Plan Administrator, on behalf of himself and all parties claiming by, through, or under him, the Debtors, the Debtors' estates, all of the Debtors' successors and affiliates, and the present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, trustees, oversight committee members, and advisory board members of each of the foregoing (collectively, the "BBB Releasors") hereby fully and irrevocably release waive, acquit, and forever discharge Arch and each of its present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, and experts (collectively, the "Arch Releasors") of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the BBB Releasors had or claim to have or may have against any or all of the Arch Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling (as defined herein), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

8.      In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Releasors hereby fully and irrevocably release, waive, acquit, and forever discharge each of the BBB Releasors of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Releasors had or claim to have or may have against any or all of the BBB Releasors from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BBB Insurance Program, the BBB Collateral, the Retained BBB Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance

and/or related agreements that are not part of the BBB Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto.

9. With respect to the matters released herein, the Arch Releasors and the BBB Releasors expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

10. On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by Arch and/or the Plan Administrator. For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Bankruptcy Cases by Arch and/or any of Arch's affiliates.

11. Nothing herein shall serve to relieve Arch of any of its obligations as the insurer under the BBB Insurance Program. On and after the Close-Out Effective Date, and subject to the Reservation of Rights (as defined herein), (i) Arch shall, in its discretion, (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the BBB Insurance Policies (each, an "Covered Claim") to the extent required under the terms of the BBB Insurance Policies, (b) have the right, to the extent not already possessed, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Covered Claim (all of the foregoing, collectively, the "Claims Handling"); (ii) the Stay/Injunction, to the extent applicable, shall be lifted as provided in the Approval Order to permit Arch to perform the Claims Handling; and (iii) the Plan Administrator, on behalf of himself and the other BBB Releasors, waives any right to perform any Claims Handling or to participate therein. For the avoidance of doubt, (i) nothing in this Agreement or the Approval Order (as defined herein) grants, or should be deemed to grant, any claimant relief from the Stay/Injunction to proceed with their claims without first obtaining relief therefrom from the Court, if and to the extent applicable, and (ii) except as specifically set forth in this Agreement, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BBB Insurance Program; provided, that, for the avoidance of doubt, nothing requires or obligates Arch to pay any amounts within any self-insured retention and, on and after the Close-Out Effective Date, neither the Plan Administrator nor the Debtors shall be required to pay any self-insured retention under the BBB Insurance Policies.

12. The Plan Administrator, on behalf of himself and all of the other BBB Releasors and all parties claiming by, through or under him or them, covenants and agrees not to commence or prosecute any action, arbitration or proceeding against any of the Arch Releasors arising out of or relating to the matters released hereby. Arch, on behalf of itself and all of the other Arch Releasors and all parties claiming by through or under it or them, jointly and severally covenant and agree not to commence or prosecute any action or proceeding against any of the BBB Releasors arising out of or relating to the matters released hereby.

Docusign Envelope ID: A5ED68A6-76B2-4EE7-BAFB-5B9307A995AD

13. Nothing in this Agreement or the Approval Order (i) expands, contracts or otherwise alters the insurance coverage provided by the BBB Insurance Program or the terms and conditions of the BBB Insurance Program; (ii) permits any holder of a Covered Claim to recover the same amounts from Arch and again from any other person or entity, including the Plan Administrator, the Debtors, and/or the Debtors' estates, (iii) creates or permits a direct right of action by any holder of a Covered Claim against Arch; (iv) precludes or limits, in any way, the rights of Arch to contest and/or litigate with any person or entity the existence, primacy, and/or scope of available insurance coverage under any alleged applicable policy; (v) is a determination as to insurance coverage under the BBB Insurance Program; (vi) relieves any holder of a Covered Claim from any obligation to have filed a proof of claim in the Bankruptcy Cases; or (vii) alters, modifies, amends, affects, impacts, or prejudices in any way or respect any of the terms and conditions of and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses under any insurance policy and/or any related agreement that is not part of the BBB Insurance Program and/or any surety bond and/or any agreement related thereto. This paragraph shall be referred to as the "Reservation of Rights."

14. Except as expressly set forth in this Agreement, nothing amends, alters, or modifies the terms and conditions of the Plan and/or the Confirmation Order.

15. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective administrators, heirs, executors, legal representatives, successors and permitted assigns, including, without limitation, any successor to the Plan Administrator, the Debtors, the Debtors' estates, and/or the Debtors' affiliates and successor; provided, however, except as expressly stated herein, nothing herein is intended to benefit any third party.

16. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to any conflict of laws principles that would cause the application of the laws of any other jurisdiction. Any disputes concerning this Agreement shall be subject to arbitration in accordance with the terms contained in the BBB Agreements.

17. This Agreement has been negotiated at arm's length by parties represented by legal counsel of their choosing, constitutes the entire agreement of the Parties, and supersedes all previous agreements and/or contracts, whether oral or written, between them with respect to the subject matter hereof. The recitals included in this Agreement are specifically incorporated herein and made a part of this Agreement.

18. For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective Parties and their counsel, and any rule of construction of contracts that would otherwise provide ambiguities are to be construed against the drafting party shall not be applied against any person.

19. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, together which shall for all purposes constitute on agreement binding upon each of the Parties. Exchange of executed signature pages via electronic means (including Portable Document Format (.pdf) signatures and digital signatures using digital

Docusign Envelope ID: A5EB68A6 76B2 4EE7 BAFB 5B9307A995AD

signature software that electronically captures, or otherwise allows a signatory to adopt, an identifying mark as such person's signature to this Agreement (*e.g.,* Docusign®)) shall be sufficient to effectuate this Agreement, provided, however, the Plan Administrator shall provide an original, wet signature to Arch.

20.     The Parties agree to perform all further acts and to execute and deliver or cause to be executed and delivered all documents, instruments, agreements, which may be reasonably necessary to carry out the intents and purposes of this Agreement or to enable the other Party to enforce any of its rights under this Agreement.

21.     Each Party acknowledges, represents, warrants that it has the authority to enter into this Agreement; it has carefully read this Agreement in its entirety; it has had an opportunity to consult with its respective attorneys concerning the meaning, import and legal significance hereto; it understands all of this Agreement's terms; it has consulted with independent counsel of its choice, who answered to its satisfaction all questions that it had regarding this Agreement; its undersigned representative is duly authorized to enter into this Agreement on its behalf; it voluntarily assents to all the terms and conditions contained herein; by signing this Agreement it is bound by the terms and conditions contained in this Agreement; and it is voluntarily executing this Agreement of its own free will.

22.     The Plan Administrator, on behalf of himself, the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates, represents and warrants to Arch that (i) he is the representative of the Debtors' estates in the Bankruptcy Cases and is entitled to enter into and execute this Agreement; (ii) he is the sole and exclusive owner of the claims, causes of action, rights, and other interests which he is releasing by this Agreement and he has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and will not assign, transfer, or convey any claim, cause of action, right, or other interest in the same to any person or entity; (iii) no party other than the Plan Administrator, including any party or creditor in any bankruptcy case commenced at any time under the Bankruptcy Code by any of the Debtors, their successors, or their affiliates, has any right in or to the BBB Collateral and/or the Retained BBB Collateral; and (iv) to the extent required under the terms of the Plan, the Confirmation Order, and/or any documents related thereto, he has consulted with the Oversight Committee (as defined in the Plan) regarding entering into this Agreement and has obtained the Oversight Committee's consent and approval to enter into this Agreement and obtained any other required approvals or permissions to enter into this Agreement and that no further approvals or permissions are necessary for him to enter into this Agreement.

23.     The Parties agree to be responsible for and to bear their own costs, expenses and attorneys' fees incurred in connection with this Agreement and the negotiations related to and the preparation and performance of this Agreement, and not to seek reimbursement of any such costs, expenses and attorneys' fees from any other Party.

24.     All notices, requests, waivers, consents and other communications hereunder shall be in writing and shall be mailed first class certified mail or by nationally recognized overnight courier service, or by personal delivery, with postage or other applicable delivery fees prepaid and addressed as follows:

<u>If to Arch:</u>

Arch Insurance Group Inc.
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107
Attention: Regan Shulman
Telephone: (201) 743- 4224
Email: rshulman@archinsurance.com


<u>If to the Plan Administrator:</u>

Michael I. Goldberg
Akerman LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301

and

Stephen Schwab
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606

25.    The Parties acknowledge and agree that this Agreement is being entered into for the purpose of avoiding the expense, delay and uncertainty of litigation and nothing contained herein shall constitute, be introduced, treated, deemed or otherwise interpreted or construed as (a) an admission, waiver, evidence or concession by any of the Parties hereto of any fact, liability or wrongdoing, or (b) evidence in any judicial or arbitration proceeding, except to enforce or defend the terms herein.

26.    No failure or delay by any Party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

27.    No amendment, modification or alteration of this Agreement shall be valid unless it shall be in writing and signed by each of the Parties.  Additionally, no course of conduct or method of doing business shall modify or amend the terms of this Agreement.

28.    Neither this Agreement, nor any of the rights, interests and obligations hereunder, may be assigned by any Party without the prior written consent of the other Parties.

Docusign Envelope ID: A5ED684C-76B2-4EE7-BAFB-5B0367A995AD

29.    The representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

*[ Signature Page Follows ]*

TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

**MICHAEL GOLDBERG**, on behalf of himself solely in his capacity as the Plan Administrator to the Debtors and on behalf of the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates

By: _____

4B41846EFB794A2...

Michael Goldberg

Printed Name: _____

Title: _____Plan administrator_____

Date: _____August 12, 2024_____

**ARCH INSURANCE COMPANY**, on behalf of itself and Arch Specialty Insurance Company

By: _____

Printed Name: _____

Title: _____

Date: _____

**Execution Version**

TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

**MICHAEL GOLDBERG**, on behalf of himself solely in his capacity as the Plan Administrator to the Debtors and on behalf of the Debtors, the Debtors' estates, and all of the Debtors' successors and affiliates

By: _____

Printed Name: _____

Title: _____

Date: _____

ARCH INSURANCE COMPANY, on behalf of itself and Arch Specialty Insurance Company

By: _____
  Richard Stock
  180C44033949490...

Printed Name: _____
  Richard Stock

Title: _____
  EVP – CUO Large Account Casualty and Surety

Date: _____
  8/8/2024

**Execution Version**

## CLOSE-OUT AGREEMENT

### Schedule A

### BBB Insurance Policies

| Policy No. | Policy Period Inception Date |
|---|---|
| 11WCI4934100 | 3/1/2007 |
| 11WCI4934200 | 3/1/2007 |
| 11GPP4934600 | 3/1/2007 |
| 11GPP4934700 | 3/1/2007 |
| 11CAB4934400 | 3/1/2007 |
| 11CAB4934500 | 3/1/2007 |
| 11CAB4934800 | 3/1/2007 |
| 11WCI4934101 | 3/1/2008 |
| 11WCI4934201 | 3/1/2008 |
| 11GPP4934601 | 3/1/2008 |
| 11CAB4934401 | 3/1/2008 |
| 11CAB4934501 | 3/1/2008 |
| 11WCI4956602 | 3/1/2009 |
| 11WCI4934202 | 3/1/2009 |
| 11WCI4934102 | 3/1/2009 |
| 11GPP4934602 | 3/1/2009 |
| 11CAB4934402 | 3/1/2009 |
| 11CAB4934502 | 3/1/2009 |
| 11WCI4934103 | 3/1/2010 |
| 11WCI4934203 | 3/1/2010 |

Docusign Envelope ID: A5ED68AC-76B2-4EE7-BAEB-5B9367A995AD

| | |
|---|---|
| 11WCI4956603 | 3/1/2010 |
| 11GPP4934603 | 3/1/2010 |
| 11CAB4934403 | 3/1/2010 |
| 11CAB4934503 | 3/1/2010 |
| 11WCI4934104 | 3/1/2011 |
| 11WCI4934204 | 3/1/2011 |
| 11WCI4956604 | 3/1/2011 |
| 11GPP4934604 | 3/1/2011 |
| 11CAB4934404 | 3/1/2011 |
| 11CAB4934504 | 3/1/2011 |