UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Filed on November 22, 2024 by Clerk
U.S. Bankruptcy Court
District of New Jersey

|                                    |                                        |
|------------------------------------|----------------------------------------|
| IN RE:                             | · Case No. 23-13359-VFP                 |
|                                    | ·                                       |
|                                    | · (Jointly Administered)                |
|                                    | ·                                       |
| BED BATH & BEYOND, INC., et al.,   | · Martin Luther King Building &         |
|                                    | · U.S. Courthouse                       |
|                                    | · 50 Walnut Street                      |
|                                    | · Newark, NJ 07102                      |
|         Debtors.                   | ·                                       |
|                                    | · September 10, 2024                    |
| · · · · · · · · · · · · · ·        | · 12:03 p.m.                            |

**REDACTED TRANSCRIPT OF MOTION FOR SANCTIONS**
BEFORE THE HONORABLE VINCENT P. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Debtor and the Plan Administrator Michael Goldberg: | Pachulski Stang Ziehl & Jones<br>By:  BRADFORD SANDLER, ESQ.<br>919 North Market Street, 17th Floor<br>Wilmington, DE  19801 |
| | Pachulski Stang Ziehl & Jones<br>By:  BETH E. LEVINE, ESQ.<br>780 Third Avenue, 34th Floor<br>New York, NY 10017 |
| For ML: | No identifying information was given |

Audio Operator:        Mariela Primo

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

1          THE COURT:  Okay.  We're now onto Bed Bath & Beyond,

2  23-13359, and I do want to address the calendar here because

3  the only matter that's contested -- well, the only matter

4  that's on for hearing is the motion for sanctions under 9011,

5  Document 3432, and I don't have an objection to that.  So, it's

6  uncontested on the docket.

7          I do have also that were filed at various times on

8  Friday and throughout the weekend up to yesterday, various

9  e-mails and motions by Mr. ML to have this be a closed door

10  hearing and also for a stay of my prior order requiring him to

11  comply with a still prior order, and they were just filed.

12  They're not on for today, Mr. ML.  They're just not on.

13          So, in terms of timing, just like the other time when

14  you requested a closed door hearing verbally just before the

15  hearing, I can't do that.  I have no authority to do that, and

16  it's not fair to me or the other parties to do that without

17  giving them an opportunity to be heard.

18          So, the question is now and what I have really is a

19  uncontested motion for sanctions, and I know Mr. ML does not

20  agree to pay sanctions or be subject to sanctions, but that's

21  what I have.

22          And I guess I don't now what to do other than to say

23  I'm going to proceed with the motion for sanctions, and,

24  frankly, under the Local Rules 9013-3(d) all motions will be

25  decided without oral argument unless opposition is filed, and

1  if a motion is contested, the Court will permit oral argument

2  -- this is (d)(2) the Court will permit oral argument only from

3  the movant or the party that has filed opposition to the

4  motion, and the Court even then retains discretion to decide

5  contested motions without oral argument.

6        So, I'm thinking that in a sense I moot the closed

7  door request for today by just deciding the motion for

8  sanctions without oral argument, and then we'll talk about

9  scheduling whether, you know, there should be any -- whether

10  and when the motion for a stay and closed door hearing should

11  be granted in the future, and I'll take -- I'll hear from the

12  parties on that.  Is this Mr. Sandler or Ms. Levine?

13        MR. SANDLER:  Good afternoon, Your Honor.  Brad

14  Sandler and Beth Levine for the plan administrator.

15        THE COURT:  Okay.

16        MR. SANDLER:  Your Honor, we are -- we're certainly

17  prepared to move forward on anything that Your Honor would like

18  us to move forward on, and if Your Honor, you know, wants to

19  rule on the papers, that's fine.  You know, I'm happy to make a

20  statement about the 9011 motion, which, you know, in my almost

21  30 years of practice, Your Honor, this is the first time that

22  I've actually pursued a 9011 motion, and that's because of the

23  seriousness of the situation, but we're happy to proceed

24  however Your Honor would like to proceed.

25        THE COURT:  Okay.  Mr. ML?

1          MR. ML:  Mr. ML here.  I guess I have a few

2  questions, but I was confused by the previous comments about

3  not taking oral argument.  So, I guess I'm just kind of curious

4  if I'm able to do that here or not.

5          THE COURT:  Well, saying that you're not going to

6  have oral argument means that there won't be any oral argument.

7  That's what it means.

8          And I don't have any opposition from you, so that's

9  the reason I read those rules is because either -- whether I --

10 whether the motion is uncontested because you didn't oppose it

11 and you didn't file any paper opposing it, or I even consider

12 it contested and say I'm going to -- I'm going to go ahead and

13 decide it without oral argument because it's just not fair to

14 anybody to try to deal with a closed -- you know, I think I

15 told you the other time a closed door session or hearing before

16 a court is extraordinary relief, and it's almost never granted.

17 And I -- you know, I'm not going to do it on one day's notice

18 or weekend's notice.  It's just not how things work, and --

19         MR. ML:  Understood.

20         THE COURT:  -- believe me, I've read your papers.  I

21 understand what your position is, and I'm ready to rule, and

22 I'm ready to rule under those circumstances without oral

23 argument.

24         MR. ML:  I understand, Your Honor.  I think all I can

25 say then is I'm at the mercy of the Court and have been since

1  day one.  I, you know, continue to try to emphasize that I want

2  to be an ally of the Court, truth and justice and, you know,

3  speak out against things that I feel like are not getting

4  acknowledged.

5  But the lack of time, I've reached out to the Court

6  on August 16th, August 17th, the 20th from just -- regarding

7  the timing specifically of the motion for closed door hearing.

8  Just last week there was -- there was another adversary case I

9  believe that it was that approved a closed door hearing.

10  And the nature of me being pro se and my inability to

11  understand normal procedure, especially from the perspective of

12  my ongoing struggles, as well-documented, evidences, it shows

13  as such that, you know, I can't litigate the arguments or even

14  understand what should or shouldn't be filed, but the 21 days

15  specifically is -- was an impossibility.  To take 21 days prior

16  to today, the order wasn't even entered by then.

17  So, the 21-day window to be able to serve whether it

18  was the closed door request or whether it was a motion to stay

19  the order pending a forthcoming motion or whether it was that

20  forthcoming motion itself, none of those would have even been

21  possible within 21 days because the order hadn't been entered

22  then.

23  And I think what I really just want to underscore is

24  I must absolutely ask, you know, the Court's mercy and the --

25  the no objection was not only because I didn't even know I was

26  supposed to or needed to or -- we're talking about fairness,

1  and, you know, my ability to represent myself and obviously the

2  lack thereof appropriately just -- and understand what my

3  rights are and what -- whether or not I even have a right to be

4  heard here and today or whether I am even an party in interest,

5  these are questions that I feel like I am not getting any

6  feedback from whether it is the plan administrator counsel, the

7  U.S. Trustee or any other, you know, potential solution to

8  where I'm -- I'm open arms in terms of what I want to be able

9  to share, and it seems like nobody really wants to hear them.

10         And I do appreciate the ongoing and, you know,

11  especially over the last five, six -- five months, you know,

12  the ongoing leniency from the Court and all parties involved,

13  but I also -- I feel a little helpless just from the

14  perspective of I'm trying to come forward in good faith.  I

15  hear that the assertions I'm making are not being received with

16  the intent -- they're being frivolous and very punitive and

17  very defamatory, and I understand that the protection itself is

18  really my underscoring effort to address that.

19         And I think what I'm concerned about is the

20  (indiscernible) whether or not I even have an order of

21  protection because am I even a party in interest.  I think all

22  of those are debatable to where there's no way I could argue

23  that against the best law firm in the world.

24         So, I think just my inability to afford counsel being

25  the underscored reason behind all of this, of course I should

1  object to the motion to sanction against me.  I have no idea

2  how to do that or (indiscernible) to do so.

3        But, again, I just want to emphasize that I'm at the

4  mercy of the Court, and I think the nature of which I bring

5  forward these assertions and trying to understand and get

6  answers for innumerous former shareholders and current

7  creditors and that needs to be, you know, continually expressed

8  is there's a number of concerns that the estate is not

9  maximizing recovery, that there's countless clawbacks that are

10  being pursued, the claims are grossly over estimated, and our

11  inability to even have correspondence with the Court or the

12  plan administrator or any other parties is really just why I am

13  here.

14        If we have substantial answers, and whether that is a

15  we, you know, in air quotes or whether it just needs to be me

16  because that's why we're here today, I'll defer to the Court's

17  best judgment, but I again just want to emphasize that I'm at

18  the mercy of the Court and I'm trying to bring forth things

19  that I think are very serious and I have not yet been able to

20  do so.

21        THE COURT:  Well --

22        MR. ML:  So, thank you.

23        THE COURT:  Thank you.  Well, I have to respond in

24  part to what you said because the -- Mr. ML, because you strike

25  me as an intelligent person and obviously an educated person,

1  and there's a notice of hearing on plan administrator's motion

2  for sanctions pursuant to Rule 9011, and that motion, that

3  notice says that you have to submit any objection seven days

4  before.  It's Document Number 3434, and that was entered back

5  in July, July 24th.

6          And, you know, and then to say you haven't got

7  responses, I just -- I have to take exception to that.  You

8  have peppered the Court with extensive e-mails asking

9  repetitive questions over and over again and asking for legal

10  advice over and over again, and we respond when we can, but we

11  have other cases as well, Mr. ML.

12          And this is not just -- we're not here just to

13  address questions that you have in the abstract.  We're here to

14  address motions, trials, hearings, and there's rules that have

15  to be followed even if you're pro se, and I'm sorry you can't

16  afford a lawyer.  That's a problem.  That's a problem, but it

17  happens all the time, as you heard earlier on.

18          So, that, you know -- that's the way this process

19  goes because it has to go that way.  It can't be -- it would be

20  a never ending circle or this would never end if I were to say

21  -- to take up your suggestion that you can't respond because

22  you're not represented, so then what?  Then I never address

23  anything?  That's a rhetorical question.  You don't have to

24  answer it because the answer is of course not.  I have to

25  address these.  That's my job.  That's what I do, and not only

1   that, the motion for sanctions was adjourned for two weeks to

2   today, from August 27th to today, and now we still don't have

3   any response from you.

4          So, I, you know -- that's why I'm -- I'm not treating

5   it as uncontested.  I know what you're -- I know that -- what

6   you said in prior pleadings, but you didn't respond to this

7   motion.  So, I am treating it as uncontested, and even if it

8   were contested, I would decide it without oral argument because

9   of your last minute request, again, the second time, to have a

10  closed door hearing right at the eve of the completely open

11  hearing where the presumption is that court proceedings are

12  open to the public, and it's a very strong presumption.

13         And it seems to me you want your side to be heard

14  only by the Court and maybe to the exclusion of Mr. Sandler and

15  his firm and not anyone else, but then everyone else has to be

16  open and public, and that's just not the way it works.  So, I'm

17  ready to decide.

18         As I said, this is the plan administrator's motion

19  for sanctions pursuant to Federal Rule of Bankruptcy Procedure

20  9011 against Mr. ML, who is a former shareholder of the

21  debtors.  The motion was made under Rule 9011 after the

22  shareholder filed his motion for the appointment of an equity

23  security holders committee.

24         The plan administrator argues that the motion for the

25  appointment of the equity security holders committee was

10

1 legally untenable and factually unsupported, and then

2 accompanied by a request for secrecy, sealed documents, in

3 camera hearings and all kinds of other requests for responses

4 from the Court regarding legal advice or procedural matters

5 that are plainly addressed in the papers, like I just said

6 about the hearing date, and that these proceedings have driven

7 up the costs for these already administratively insolvent

8 estates, that the time to ask for the appointment of an equity

9 security holders committee was before the plan was confirmed

10 and the shareholders' stock cancelled nine months ago.

11        The time to object to the valuation of the debtor's

12 assets and proposed distributions or lack thereof was also at

13 that time, and that there was no legal grounds to do so, as

14 argued in the plan administrator's objection to the motion for

15 the appointment of an equity security holders committee and in

16 the motion under Rule 9011.

17        The chronology is well-known.  The papers, the motion

18 for the equity security holders committee was filed nine months

19 after the effective date.  The argument is that Mr. ML had

20 ample opportunity to investigate the debtors' assets, debts,

21 review the plan and disclosure statement, object to

22 confirmation and/or ask for the U.S. Trustee to appoint an

23 equity committee preconfirmation, but he did not do so when --

24 and wants to do all that now nine months after the case was

25 confirmed.

11

1        And, interestingly, in some of the papers or at least

2   in one of the papers that Mr. ML recently submitted he refers

3   to the first day hearings in this case where the debtors'

4   counsel made the presentation that included a possible sale of

5   the debtors' assets as a going concern and continuing the word

6   that was used was iconic Bed Bath & Beyond name, and it didn't

7   work out that way.  It didn't work out that way after an

8   extensive marketing process by -- coordinated and managed by

9   the debtor and its advisors, including some of the -- as Mr. ML

10  notes many times, largest and most well respected law firms and

11  financial advisors in the world.

12        The same thing with the creditors' committee that now

13  represents the plan administrator, their financial advisors and

14  their administrators.  The same thing with the secured

15  creditors who are apparently themselves out of the money for

16  maybe millions or hundreds of millions of dollars.  Their

17  lawyers and financial advisors all went through with the

18  process, saw what happened, and unfortunately the assets were

19  not able to be sold as a going concern, and the debtor is --

20  was liquidated.  The shares were cancelled, and here we are now

21  many months later with the plan confirmed and the plan

22  administrator pursuing claims as is required under the various

23  plan confirmation and related documents.

24        So, as noted, this is now -- and I don't -- as I

25  said, I don't have opposition from the shareholder, although he

1  did submit numerous and various lengthy communications to the

2  Court in the interim that obviously took a significant amount

3  of time to prepare, and it -- and even by his own words, Mr. ML

4  has been following this case form the inception and before the

5  inception.  He's been a very, very interested party in the

6  sense of his shareholder interest, and now it's disclosed that

7  he also has a bondholder interest since the beginning.  That's

8  the way I see it based on his own statements.

9         So, as noted, on September 14th, 2023 this Court

10  confirmed the debtors' amended plan that among other things

11  cancelled all equity interest in the debtor nine months ago or

12  ten months ago now.

13         ML did not file an objection to the amended plan, did

14  not appeal or seek a stay of the confirmation order.  Instead,

15  nine months after that confirmation he filed a motion to

16  appoint an equity holders committee.  At the time he filed that

17  motion there were no equity holders as a result of the plan

18  because of the cancellation of those interests, so that there

19  was no one for any committee to represent.

20         And even, as I noted in the prior decision, that

21  motion was past the 180-day window to request revocation of an

22  order of confirmation on the basis of fraud.  That's 11 U.S.C.

23  1144, and fraud has been generally alleged by Mr. ML, but not

24  in any way that's specific or would come close to meeting the

25  standard for doing so, if he had filed such a motion, and even

1  then the Code provides that you can't just undo a confirmation

2  order.  You have to provide such protections as are necessary

3  to protect any entity requiring rights in good faith and

4  reliance on the order of confirmation, and that's absolutely

5  necessary because people proceed and rely on those -- on the

6  confirmation order, as they have to.  And to simply unwind it

7  as Mr. ML wants to do is -- would wreak havoc, create

8  tremendous expense and further burden on an already insolvent

9  estate.

10          So, and Mr. ML -- and then I have to note that Mr. ML

11  has recently indicated he intends to file a motion, although

12  not filed yet, to appoint an examiner, and even though this

13  Court is not in the business of giving legal advice, we

14  responded to -- in the interest of all involved, in the

15  interest of limiting the expense, delay and waste of resources

16  that's inherent in these kinds of proceedings, that Section

17  1104 expressly says you can only appoint an examiner before

18  confirmation of a plan.

19          So, as noted, the --

20          MR. ML:  Your Honor --

21          THE COURT:  I'm sorry?

22          MR. ML:  I'm sorry to hop in, but I think that's the

23  circle that I get in is whether it's an examiner of

24  preconfirmation and whether it's an 1104 or 1106, you know,

25  including, you know, 1106(a)(3) which is all matters relevant

1  to the case, and a case is through the completion of the final

2  decree.  So, without understanding my rights and whether or not

3  we are a party in interest, and it sounds like I'm not as a

4  shareholder, but I am as a bondholder, and especially

5  cumulatively, you know, in aggregate the amount of former

6  shareholders that also own bonds and the materiality of those

7  bonds, there still are substantial concerns about the estate.

8         And I'm not saying 1104 or 1106, you know, it all

9  gets back to the 1109 right to be heard, and are we even a

10 party in interest, and my inception or the initial reasons for

11 coming forth is substantial concerns that we wanted to get on

12 the record or even ask questions about, and we still have not

13 been able to even ask questions to the plan administrator or

14 estate.

15         And I think that's really where we are most concerned

16 is it sounds like we are being expected to understand 8500

17 various documents with notably 250 plus hours of redactions,

18 and I understand that the due diligence was all done, but

19 equity holders were not included in any of that due diligence

20 or valuation or understanding of the financial viability of the

21 company as it was defined by the financial advisors that

22 literally represented the estate before the bankruptcy for

23 easily a year before the bankruptcy, all the way through the

24 bankruptcy and now after the bankruptcy.

25         So, in terms of the concerns that are still very

1 evident with respect to the substantially overstated amount of

2 unsecured claims, not only over thousands that should be voided

3 and are seemingly for no reason on the register, I don't know

4 why they are, but there's no avenue for us to bring forth these

5 concerns because we're individual planned.  We don't have the

6 funds because the equity would simply be wiped out from the --

7          THE COURT:  I'm --

8          MR. ML:  -- financial analysis that was done on the

9 business.

10          So, I think our biggest concern is the fact that we

11 don't really have any avenue to bring forth concerns or have

12 any answers or really just ask any questions, and my biggest

13 concern there was just that that was my emphasis to try to do

14 so.

15          And coming forward with the initial order of

16 protection and then being ordered to still deliver my personal

17 information to the parties that I was de facto requesting

18 protection from, then it just -- it's a circle of what are my

19 rights, do I have a right to be heard, am I a party in

20 interest, what does the order of protection really grant me,

21 and from what I can tell the order of protection and the pro se

22 nature of my inability to afford counsel, I am pro se, I do not

23 have legal background of any kind, it -- the concerns that I

24 want to bring forth, they include all of that wrapped into it.

25          And I think whether it's an 1104, and 1106 or, you

1  know, whether equitable powers need to be deployed under 105,

2  the concerns are still very much there, and --

3          THE COURT:  I understand --

4          MR. ML:  -- I think just --

5          THE COURT:  I understand, Mr. ML.  The problem is --

6          MR. ML:  Yeah.

7          THE COURT:  -- that what you say is not accurate.

8  The problem with what you say is that the shareholders did have

9  notice of all this.  It's in certificate of service filed with

10 the Court, and the problem is that you did have an opportunity

11 to be heard.  You had an opportunity to take discovery.  You

12 had an opportunity to proceed -- to participate in the process,

13 and you didn't, and that's the problem.

14         So, let me just continue with my decision because I

15 said I wasn't granting oral argument, but you went and did the

16 oral argument.

17         So, in any event, the motion is brought under Rule

18 9011 as is required by Rule 9011(c)(1)(A).  The motion was made

19 separate from other motions and described the specific conduct

20 alleged to have violated the rule.

21         The administrator also waited 21 days to allow ML to

22 withdraw his motion before he filed the sanctions motion with

23 the Court on June 25th in accordance with the 21-day safe

24 harbor provisions of Bankruptcy Rule 9011(c)(1)(A).  The plan

25 administrator served a draft copy of the motion via e-mail,

1   overnight delivery and first class mail to the post office box

2   designated by ML with a request that ML withdraw his motion to

3   appoint an equity committee.  He didn't do so and -- in the

4   21-day period, and the motions was filed on July 24th, which is

5   actually approximately 30 days after.

6          So, the procedural requirements of Rule 9011 were

7   met, and now I move to the substantive requirements.  Rule 9011

8   provides that when a party files a motion or other paper with

9   the Court, the attorney or unrepresented person, and I note

10  specifically that Rule 9011 deals with pro se parties,

11  unrepresented persons, is certifying to the best of that

12  person's knowledge, information and belief formed after

13  reasonable inquiry, reasonable under the circumstances, that is

14  not being presented for any improper purpose such as to harass

15  or cause unnecessary delay or increase -- needlessly increase

16  the cost of litigation, the claims, defenses, or other legal

17  contentions therein are warranted by existing law or by non-

18  frivolous argument for the extension, modification or reversal

19  of existing law or the establishment of new law, and that's the

20  one that I really am focusing on.  The allegations --

21          MR. ML:  So, where does --

22          THE COURT:  -- I'm not --

23          MR. ML:  -- Bankruptcy Rule 9018 fit in there --

24          THE COURT:  I'm speaking.  I'm speaking, sir.  I just

25  need to continue my decision.  The allegations --

1          MR. ML:  Okay.

2          THE COURT:  -- and other factual extensions have

3   evidentiary support or specifically entered -- identified or

4   likely to have evidentiary support after reasonable opportunity

5   for further investigation or discovery, and denial of factual

6   contentions are warranted on the evidence or specifically

7   identified are reasonably based on lack of information and

8   belief.

9          The purpose of Rule 9011 is to deter frivolous claims

10  and abuses of the legal system, thereby speeding up and

11  reducing the cost of litigation.  That's <u>Binghamton Masonic</u>

12  <u>Temple</u>, 168 F.R.D. 121 at 126 (1991).

13         The rule is intended to discourage pleadings that are

14  frivolously legally, unreasonable, as well as factual

15  information that is not supported; <u>Aphton Equipment v. Sonafi</u>,

16  423 B.R. 76 at 96 (Bankr. Dist. of Delaware).

17         In scrutinizing a motion or other paper against these

18  requirements, courts must apply an objective standard of

19  reasonableness under the circumstances; <u>Snow Machines, Inc. v.</u>

20  <u>Hedco</u>, 838 F.2d 718, 727 (Third Circuit 1998).

21         Importantly, pro se litigants are subject to 9011

22  sanctions, and like attorneys are judged by an objective

23  standard of reasonableness, <u>In re Olick</u>, 466 B.R. 680 at 689

24  (ED of PA).

25         Pro se litigants are subject to Bankruptcy Rule 9011

1  sanctions and like attorneys are judged by an objective

2  standard of reasonableness, which is defined as an objective

3  knowledge or belief at the time of the filing to challenge

4  paper that the claim was well-grounded in law and in fact,

5  accord In re Jones, 632 B.R. 138 at 147 (Bankr. S.D. Ohio

6  2021).

7       Although pro se parties may be entitled to some

8  leniency, ultimately pro se litigants are not exempted from the

9  duties of Rule 9011, including the obligation to put forth non-

10 frivolous arguments.

11      To comply with Rule 9011(b) the signing party,

12 whether or not pro se, must conduct a reasonable investigation

13 of the facts and a normally competent level of research to

14 support the presentation; Mary Ann Pensiero, Inc. v. Lingle,

15 847 F.2d 90 at 94 (Third Circuit 1988).

16      And also the Court has also identified -- the Third

17 Circuit has identified five factors in determining whether the

18 signor conducted a reasonable investigation of the facts and

19 law, including the amount of time available to the signor for

20 conducting legal and factual investigation, it was ample here,

21 the necessity or for reliance on a client for underlying

22 factual information.  There's no need because it's pro se and

23 not represented and certainly did a lot of his own

24 investigation.

25      Here is the key one, the plausibility of the legal

1  position advocated, and here ML candidly in his last -- in the

2  last hearing before the Court acknowledged that he didn't have

3  any legal authority to support the appointment of an equity

4  security holders commission -- committee in these

5  circumstances, i.e. nine months after confirmation, plan

6  substantially underway and equity interests cancelled.

7        MR. ML:  Can you repeat that?  I'm sorry.  I'm not

8  following.  What was that last part?  I'm not following what

9  that -- what did you mean by that?

10       THE COURT:  What did I mean by that?  I meant what I

11  said, which was that --

12       MR. ML:  My inability to litigate --

13       THE COURT:  -- you acknowledged at the last hearing

14  and I pointed out at the last hearing that you did not have any

15  legal authority to support the appointment of an equity

16  security holders committee in these circumstances nine months

17  after plan confirmation with the plan --

18       MR. ML:  But was that --

19       THE COURT:  -- substantially underway --

20       MR. ML:  -- based on being hopelessly insolvent --

21       THE COURT:  You're interrupting me again.

22       MR. ML:  -- recovery though?

23       THE COURT:  You're interrupting me again, and I can't

24  -- the court reporter can't take that down.

25       And I said nine months after plan confirmation, after

1  equity interests were cancelled and plan was substantially

2  underway.  So, there was no support for that, and that was

3  pointed out in the last decision and in the moving papers and

4  acknowledged by you, at least that's certainly my recollection.

5      And whether the case was referred to the signor by

6  another member of the bar is just not applicable.

7      And the complexity of the legal and factual issues

8  implicated, there is -- I'm not going to deny that there's some

9  complexity of the legal and factual issues for sure.  There's

10 some complex things, but what's not complex and was not in

11 doubt, certainly after the motion, the opposition was filed to

12 the motion for the equity holders committee to -- that there

13 was no legal support for that, and as I said, there is no law

14 that supports the appointment of an equity holders committee in

15 these circumstances.

16     ML didn't withdraw the motion even after it was

17 pointed out to him by both the plan administrator and the U.S.

18 Trustee that the U.S. -- that the Bankruptcy Code does not

19 authorize appointment of an equity committee where there are no

20 equity holders, where the plan has been confirmed for nine

21 months and is significantly underway and really cannot be

22 feasibly unwound as was being sought.

23     And Mr. ML also did not address the argument that --

24 in the U.S. Trustee's opposition and the opposition of the plan

25 administrator that ML was seeking the appointment of an equity

1  committee preconfirmation and prior to the -- that had he

2  sought that prior to the cancellation of all equity interests,

3  this Court wouldn't have appointed one because equity was

4  always hopelessly out of the money, and that was supported by

5  the disclosure statement, Docket 1437 at Page 8, listing

6  projected amount of claims to be 1.8 to 2.4 billion for general

7  unsecured creditors and a recovery of zero to 2.5 percent, and

8  then supplemented by the declaration of Michael Goldberg, the

9  plan administrator, in support of a motion extending time to

10  object to claims, Docket Number 2906 at Page 24, Paragraph 13

11  where he states that without a significant reduction in

12  asserted administrative claims and meaningful recoveries on

13  affirmative claims, it is unlikely that allowed administrative

14  claims will be paid in full.

15       So, in other words, even in this case it doesn't

16  appear that administrative claims will be paid in full, which

17  means that the claims after that that are even before unsecured

18  -- general unsecured creditors like priority claims, tax claims

19  and the like, they will not be paid -- they would not be paid,

20  that general unsecured claims would not be paid at all, and

21  then certainly under the -- you know, under the absolute

22  priority rule and otherwise, you know, equity holders are not

23  entitled to any payment in those circumstances.

24       A legal position is unwarranted for Bankruptcy Rule

25  9011 purposes if it has no chance of success on the controlling

1  precedent, see <u>In re Jones</u>, 632 B.R. 138 at 147 (Bankr.

2  S.D. Ohio 2021).

3          As the movant ML had the burden of proving that an

4  additional committee was needed for adequate representation, <u>In</u>

5  <u>re Spansion</u>, 421 B.R. 151 at 156 (Bankr. Dist. Del. 2009),

6  movant must show that there's a substantial likelihood that

7  they will receive a meaningful distribution in the case under

8  strict application of the absolute priority rule.

9          Here, as is shown by the undisputed facts, the

10 opposite is true.  There's no distribution to equity under a

11 strict application of the absolute priority rule, and that they

12 are unable to represent their interests in the bankruptcy

13 without an official committee, you know, I guess that one is

14 subject to some debate.  Certainly, other shareholders appeared

15 and made their positions known, Mr. ML chose not to.  Other

16 shareholders appeared, actually appealed a decision and sought

17 a stay of the confirmation order, appealed the confirmation

18 order and sought a stay and -- but ML didn't.

19         So, as to the meaningful -- so as the appointment of

20 an equity committee, as this Court previously found, Mr. ML did

21 not come close to establishing justification for this

22 extraordinary relief.

23         See, for example, <u>In re Etoys</u>, 331 B.R. at 186,

24 denying request for appointment of post-confirmation equity

25 committee and counsel because it would provide no benefit to

1 the estate and is simply too late.

2         <u>In re New Century TRS Holdings</u>, Bankruptcy Lexis 421

3 at 12 to 14, denying post-confirmation appointment of a

4 borrower's committee at the late stage of the bankruptcy case.

5         <u>In re Kalvar Microfilm</u>, 195 B.R. 599, 601 (Bankr.

6 Delaware), denying the motion to appoint an equity committee

7 after the plan had been negotiated and filed, but not

8 confirmed, deciding that the only remaining purpose of the

9 equity committee would be an objection to confirmation and to

10 litigate valuation issues, which those parties could do

11 themselves.

12         Thus, Mr. ML's motion to appoint an equity committee

13 violated the requirement that the allegations -- that the legal

14 arguments are viable or could be a viable extension of existing

15 law.

16         Also, as to the factual contentions and allegations,

17 Mr. ML makes broad ranging amorphous, really unsupported

18 allegations of fraud, conflicts of interests, other wrongdoing,

19 but those are conclusions.  Those are not evidence.  There's no

20 evidence that -- to support those things, that an equity

21 holder's -- I'm sorry, that some parties may have been involved

22 in -- some of the same parties and lawyers and financial

23 advisors may have been advised in other cases -- involved in

24 other cases is not conflict of interest.  And, you know, there

25 was -- it does not establish a conflict of interest.  It's just

1    a statement of fact.  That happens all the time.

2           You know, there's an allegation of national security

3    concerns.  What national security concerns are involved in

4    this?  I have nothing in support of that.

5           MR. ML:  And I have --

6           THE COURT:  No.

7           MR. ML:  I'm happy to address the rhetorical

8    question, but I don't understand.  I'm --

9           THE COURT:  No, because there's no reason to respond

10   at this point because up to now I haven't gotten any response

11   to that.  I haven't gotten any information on that.  What --

12          MR. ML:  Because I don't know how.  I don't -- I

13   tried to submit -- I don't understand.  Facts are being

14   determined that I can't speak up and I don't have a right to --

15   but I don't have a right to be heard, and I feel like I'm being

16   told that I just need to sit there and listen.  And I don't

17   feel like there's accurate representation of a number of things

18   that were just overviewed.

19          And I think repeating that other shareholders were

20   represented, which I would contest that they were not actual --

21   like and that their intent was not aligned with the intent

22   behind my request at all.  The 1.8 to 2.5 billion --

23          THE COURT:  But, Mr. ML, I'm sorry.  I have to

24   interrupt you.

25          MR. ML:  -- is a surreptitious number.

1          THE COURT:  Mr. ML, I have to interrupt you now.

2    That's -- you're not -- that's not the point.  The point is

3    that those other shareholders objected on whatever grounds.

4    They don't have to be perfectly aligned with yours.  That's not

5    the point.

6          The point is that you did not object.  The point is

7    that you did not avail yourself of all those opportunities, not

8    that they were different -- not that yours are different.  Of

9    course they're different or maybe they're different, but that's

10   not the point.

11         MR. ML:  Well, I mean so the conflict of interest

12   that I have not been able to even provide an outline of and be

13   able to submit to the Court, yet there's one statement that's

14   made in the equity hearing itself on August 8th, but we --

15   they're -- we haven't talked about any of the financial

16   advisors associated with the debtor that are -- that have been

17   retained by the debtor for over a year, and how they represent

18   the company for the year leading up to the bankruptcy and then

19   represent the creditors on the other side, as well as the DIP

20   lender.  Mr. Hillman was with Proskauer Rose, and he represents

21   Sixth Street.

22         Like there's literally a dozen examples of the exact

23   same dynamic going on, and I think the concern and frustration

24   that I have is that I'm hearing that concerns are too late.  I

25   should have, could have, would have when I had the chance, and

1  I didn't.

2      And I think what I'm most disappointed about I think

3  is just I'm again trying to come forth in good faith.  I am

4  trying to share information, and I just need to underline again

5  that that's something that I have been completely unable to do,

6  and I have a substantial amount of concerns that still remain.

7      And I think, you know, that whether the sanctions are

8  going to be imposed, it sounds like they're going to be, it

9  doesn't make the concerns go away of the claims register,

10  including over 5,000 claims that need to be removed from it,

11  and it really kind of underlines my previous concerns that I

12  feel like I don't have a right to be heard.

13      The Bankruptcy Rule 9091-8 that specifically talked

14  about protections of someone who has an order of protection on

15  their person, as well as the fact that I'm a pro se litigant

16  with no legal expertise, I think all of those combined it

17  really just -- we continue to hear fair proceedings, and I do

18  not feel this has been fair.

19      And I again appreciate the leniency and all respects

20  to the unorthodox nature of my correspondence and lack of

21  understanding of legal procedure, but there is absolutely still

22  concern here, and I just -- I feel like I -- I feel like I'm

23  going to get the hammed laid down on me just simply because of

24  my inability to communicate and do -- be able to work with the

25  various counsel that, again, we have substantial questions that

28

1  are seemingly being told that we're not privy to the answers to

2  them.

3       THE COURT:  Okay.  All right.  You know, I just have

4  to -- I have to just note that you just did it again with the

5  conflict of interest, that it's not a conflict of interest just

6  because you say it is, and it's not a conflict of interest

7  because the same firms were involved in other cases or

8  represented the debtor before the filing.  Those are just --

9  you know, there may be a circumstance, I can't think of it off

10  the top of my head right this second where that might be a

11  problem, but (a) that's not what you're even saying, and (b)

12  that's not what -- it's not been asserted anywhere here.  So I

13  can't accept that.

14       So, in any event, what -- here's -- what I do accept

15  though is that I do believe that Mr. ML is genuine in his

16  subjective belief.  Remember, I'm operating under an objective

17  standard.  I do believe Mr. ML's subjectively to himself

18  believes that there was wrongdoing or some kind of other

19  improper conduct here.  However, that's not the standard, and

20  9011 does not require a finding of bad faith, In re Rivera, 342

21  B.R. 435 at 460, quoting Bankruptcy D.N.J. 2006.

22       This Court need not find bad faith and nefarious

23  intent in order to conclude that 9011 representations were

24  briefed, affirmed at 2007 Lexis 4735 D.N.J. 2007.

25       Even if not carried out for an improper --

1  inappropriate purpose, the lack of reasonable investigation

2  would nonetheless serve as a basis for the imposition of

3  sanctions under Rule 11; <u>Bradgate Associates v. Fellows, Reed &</u>

4  <u>Associates</u>, 999 F.2d 745, 752, 753 (Third Cir. 1993).

5  You know, as I've said numerous occasions, Mr. -- the

6  primary basis and the primary prong on which I base this

7  finding of a violation of Rule 9011 is the lack of support for

8  the legal contention that a equity committee should be

9  appointed in the circumstances of this case.  It was just too

10  late, and it also lacks, you know, proper factual support.  I'm

11  also finding that for all the reasons I previously stated.

12  Unfortunately, it appears that some type of sanctions

13  are necessary to deter Mr. ML, who has already indicated his

14  intent to file additional motions and complaint and has also

15  not yet complied with orders of this court from continuing this

16  conduct.

17  So, here I have to do some balancing because

18  9011(c)(2) provides that a sanction imposed for violation of

19  rule shall be limited to what is sufficient to deter repetition

20  of such conduct or comparable conduct by others similarly

21  situated.  The sanction may consist of or include directives of

22  a non-monetary nature, an order to pay a penalty into court,

23  or, if imposed a motion and warranted for effective deterrence,

24  an order directing payment to the movant of some or all of the

25  reasonable attorneys' fees and other expenses incurred as a

1  direct result of the violation.

2        Here, as I noted, there's been the indication of

3  further motions, including for the appointment of an examiner.

4  That is expressly not permitted under 1104 after confirmation

5  of the plan.

6        And then ML, who again always has consistently

7  claimed a lack of legal acumen and an ability to understand

8  legal principles, then moves to 105, Section 105 of the

9  bankruptcy court to say -- of the Code to say that I can do it

10  under my equitable powers, but, you know -- and that's a kind

11  of a sophisticated legal argument that not everyone would be

12  able to make, but unfortunately for Mr. ML, that argument has

13  gone to -- has gone all the way to the Supreme Court of the

14  United States, and the supreme Court said 105 serves only to

15  carry out, in quote, authorities expressly conferred elsewhere

16  in the Code.  It does not create substantive rights; _Harrington_

17  _v. Purdue Pharma_, 144 Supreme Court 2007, 2082 (2024).  See

18  also _Collier on Bankruptcy_ at Paragraph 10501 at Pages 105 to

19  6.

20        And the -- I'm sorry, I had the -- then -- and also

21  it cannot be used to contradict or eviscerate other provisions

22  of the Code, which is what Mr. ML would effectively be asking

23  me to do under 105 by saying, well, even though it says on its

24  face that before a plan is confirmed, I can do it after a plan

25  is confirmed, well, the Supreme Court has said, no, that is not

1  appropriate, and I can't do that.

2          So, and turning again to the sanctions, the courts

3  consider several factors, including whether the conduct was

4  wilful or negligent, whether it was part of a pattern activity

5  or an isolated event, whether it affected the entire pleading

6  or one particular counter defense, whether the person has

7  engaged in similar conduct in other litigation, whether it was

8  intended to injure, what effect it had on the litigation

9  process and time or expense, whether the person is trained in

10 the law, what amount of final financial resources of the

11 responsible person is needed to deter that person from

12 repetitive conduct in the same case; see C.K. Liquidation

13 Corp., 321 B.R. 362 (First Circuit BAP 2005) quoting Advisory

14 Note.

15         So, a sanction should be limited to what is

16 sufficient to deter repetition of such conduct or comparable

17 conduct by others similarly situated.

18         Based on those factors and because I -- I credit Mr.

19 ML's statements to the Court, although they're not really

20 supported by any factual documentary evidence that this -- that

21 he has lost a substantial amount of money on BBB shares, that

22 he has not been able to work as much as he would or should

23 because he's been focused on this, that it has caused a

24 tremendous amount of strife in his family.  So, on this record,

25 I think and award of $2500, payable $500 per month for five

1  months, is appropriate, but with additional relief, non-

2  monetary relief that will require ML to request this Court's

3  permission by a letter or form of motion prior to filing any

4  form -- any future motions on notice to the plan administrator,

5  the U.S. Trustee and other potentially affected parties before

6  it will be permitted to be filed.

7       And also I'm going to say one more time that Mr. ML

8  has to comply with my prior orders, and I think we finally got

9  some paperwork on that just recently as yesterday evening, but,

10  you know, we need to see that and haven't had an opportunity to

11  deal with it yet.

12       So, that's the Court's ruling, and from there I guess

13  the other administrative matter or matters that need to be

14  dealt with are Mr. ML's recently filed motions to stay my

15  orders for production of his personal information.  And, again,

16  I would be derelict if I didn't note again that on your

17  argument that you -- that I'm requiring the information, your

18  personal information to be provided to Mr. Sandler specifically

19  and his firm, that that's inappropriate.  I dealt with that at

20  least twice before.

21       I said to you then and I repeat to you now that,

22  Number 1, I ordered that you disclose it because it's just

23  unfair to not have -- to not know who you're up against.  It's

24  just not -- you always have to know who you're up against at

25  some point in time because there's discovery.  There's other

33

1  things that happen.  There's all kinds of reasons why you have

2  to know who you're up against, and you know who you're up

3  against.  You know it very well, and like many other things,

4  it's kind of like a one way street, that, yes, you get to know

5  whatever is available for Mr. Sandler and his firm and on the

6  docket and in public information, but he can't do anything --

7  he can't know about you, which is just not appropriate.  That's

8  Number 1.

9          Number 2 is that, as I said the -- another time, you

10  -- whether you have fear of some type of retribution from

11  others in your amorphous, ill-defined and really I don't

12  understand community, in quotes, then that's the community.

13  That's them, and that's not Mr. Sandler.

14          MR. ML:  Those are my only concerns, Your Honor --

15          THE COURT:  That's not Mr. Sandler.  And third is I

16  directed an order that Mr. Sandler and his firm not disclose

17  your personal identifiable information to anyone else.  So,

18  that's a substantial protection, and that just seems to be

19  disregarded.  So, that's --

20          MR. ML:  Your Honor, if I may.  I don't understand

21  how Rule 107(b) that says protect a person with respect to

22  scandalous or just defamatory manner contained in a paper filed

23  on the case of this title, as well as Bankruptcy Rule 901-8

24  that specifically says protecting against scandalous,

25  defamatory matters containing any paper entered as

1  (indiscernible).  It -- I do not understand the order, and I --

2  it directly puts me and my family in harm's way to serve it to

3  the parties from which I am bringing forth concerns on, and I

4  don't --

5          THE COURT:  I --

6          MR. ML:  I don't understand what the order of

7  protection is for if it doesn't protect me.

8          THE COURT:  No, but that's -- just, again, that's --

9  I'm sorry, that's just not how the system works.  As I said

10 many times now, the -- there is a presumption of public access

11 to all the information.  There's a matter of fundamental

12 fairness that in order to respond to parties, in order to deal

13 fairly in litigation, you have to know who you're dealing with.

14         And you just want to -- again, you want it to just be

15 a one way street, that you don't have to disclose anything

16 about yourself personally to anyone and Mr. Sandler has to

17 disclose it to everyone.

18         But, more importantly, than that, I said, and I'm

19 going to repeat again for I don't know how many times, that

20 I've said that that doesn't get disclosed to anyone else other

21 than his firm and the United States Trustee, which you already

22 provided it to the United States Trustee, and that they can't

23 disclose it to anyone else, and that's your protection.  So no

24 one else in the world is seeing your papers, no one else in the

25 world.

1          MR. ML:  What I don't understand is that --

2          THE COURT:  And they --

3          MR. ML:  -- does that open the avenue for --

4          THE COURT:  No one else in the world is seeing your

5    papers in their full unredacted form other than Mr. Sandler and

6    his firm and the U.S. Trustee.  That's a lot.  That's --

7          MR. ML:  I don't --

8          THE COURT:  That's probably beyond --

9          MR. ML:  I don't know that that's true, Your Honor.

10          THE COURT:  That's probably beyond what I should do.

11    It probably should be --

12          MR. ML:  I don't know --

13          THE COURT:  -- more limited than that.

14          MR. ML:  -- that that's true, Your Honor.  I don't

15    ██████████████████████████████████████████████████████

16    ███████████████████████████████████████████████████████

17    █████████████████████████████████████████████████████

18    █████████████████████████████████████████████████████

19    ████████████████████████████████████████████████

20    ███████████████████████████████████████████

21    ██████████████████████████████████████████

22    ██████████████████████████████████████████████████

23    ██████████████████████████████████████████

24    ███████████████████████████████████████████████

25    ██████████████████████████████

1              Is the delivering the information to the parties that
2   I am asserting corporate malfeasance or improper conduct or --
3   et cetera, it -- whether my understanding of what an order of
4   protection did or didn't do was clearly wrong going in from the
5   very beginning.  The purpose of the equity committee request
6   and the order of protection was full admittance that there is
7   no way I can compete or argue fairly the points that need to be
8   argued, and hence I can't and don't want to do that.

9              I was hoping for an equity representative to do it --
10  or to be awarded, so that that could be properly done on behalf
11  of all shareholders, of all former shareholders who are current
12  bondholders, to where there is no avenue for discussion with
13  any -- anyway, so the order of protection and the unwillingness
14  to understand that it puts my family at risk prospectively or
15  retrospectively for any of the type of communication that I've
16  had publically, it concerns me greatly, that I don't how I can
17  be ordered to do that when it directly contradicts the need for
18  107 and 9018.

19             THE COURT:  But I'm trying to say to you there's
20  nothing defamatory or scandalous about providing your name and
21  address to parties you're litigating against.  It's just the
22  way it goes.  It's just the way it goes.

23             But what you should be concerned about in my opinion
24  is the community because that's where it seems like the threats
25  are coming from, and the problem with that is that your

1  community, some people it sounds are in your camp and some

2  people are not in your camp, and you guys have your battles

3  amongst each other.

4          And it sounds like some people know who ML may be,

5  not because of this Court, not because of anything that's

6  happened here, but because of other things.  In all your

7  correspondence to the Court it's ML and Aurora.  It has nothing

8  -- your identify is never disclosed to anybody.

9          So, what I'm having a hard time understanding why

10  you're not understanding that because you do sound like an

11  intelligent person to me.  So, that's it.

12          MR. ML:  I think I'm just --

13          THE COURT:  That's my ruling.

14          MR. ML:  I'm struggling to understand it because I

15  receive things like DMs from a random account that says I saw

16  you in court today.  I receive other threats from people saying

17  that they heard what I said in the objection responses that

18  haven't been disclosed publically yet.

19          THE COURT:  But, sir --

20          MR. ML:  Or that --

21          THE COURT:  Sir, how does someone see you in court

22  when you weren't in court?

23          MR. ML:  I'm not understanding the question.  I --

24          THE COURT:  That's a problem because how did someone

25  see you in court today when you aren't in court?

1          MR. ML:  I took that as figurative, meaning when --

2     it was the same as the hearing itself of the equity committee,

3     after it's concluded to get a message that said -- whether it

4     said saw you in court or heard you in court, I take that as the

5     same in the normal course of conversation.

6          So, anyways, what I'm trying to underline is concerns

7     that it's not as black and white as simply Pachulski is going

8     to get my personal information, and they're not going to do

9     anything with it, and there's not going to be any potential for

10    a cease and desist, a gag order, or suing me and my persons

11    from any amount of --

12         THE COURT:  Well, they have --

13         MR. ML:  -- freedom of --

14         THE COURT:  They have a sanction against you now, and

15    they have a right to try to collect it.  There is no guarantee

16    of any of that -- of any of those things.  So -- but you want

17    this protective shield around you, and you want to be able to

18    shoot your arrows outside the shield at everyone else, and it's

19    just not the way it works.

20         MR. ML:  I was hoping to bring --

21         THE COURT:  That's not fair, sir.  That is not fair.

22         MR. ML:  I agree it's not fair.  I agree it's not

23    fair because I feel like the order of protection specifically

24    should have (indiscernible) me from that, I agree.

25         THE COURT:  Okay.  All right.  That's enough though.

1  We're really -- we really have gone through it enough times at

2  this point.

3        Mr. Sandler, I have your motion.  I'll modify it

4  myself and in accordance with what I said.  So I'm not going to

5  ask you to do that.

6        MR. SANDLER:  Okay.  Fair enough, Your Honor.  I was

7  going to ask you if you would like us to do it, and we

8  certainly were happy to, if that's what you would like.  If

9  Your Honor wants to do it, we certainly understand, and we

10 appreciate Your Honor's time and your thoughtfulness to your

11 ruling.  Thank you, Your Honor.

12       THE COURT:  Thank you.  Okay.  That's it for today.

13 Good afternoon.

14       MR. SANDLER:  Thank you, your Honor.

15       THE COURT:  Good afternoon.

16       MR. ML:  Thank you, Your Honor.

17       THE COURT:  Thank you.

18       MS. LEVINE:  Thank you, Your Honor.

19                    *  *  *  *  *

20

21

22

23

24

25

40

# **C E R T I F I C A T I O N**

I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.      DATE:  September 16, 2024