| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. 9004-1(b)** CHRISTOPHER D. LOIZIDES, ESQ LOIZIDES, P.A. 1225 King Street, Suite 800 Wilmington, Delaware 19801. Telephone:  302-654-0248 Email: loizides@loizides.com *Attorney for Laura Alevy and David Alevy* | |
| In re: BED BATH & BEYOND INC., *et al.* Debtors.[1] | Case No. 23-13359(VFP) (Joint Admin.) Chapter 11 Hearing Date: March 4, 2025 at 10:00 a.m. Judge: Papilla |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF LAURA ALEVY AND DAVID ALEVY TO OBTAIN AN ORDER (I) MODIFYING THE AUTOMATIC STAY AND PLAN INJUNCTION TO ALLOW MOVANTS TO PURSUE PERSONAL INJURY LITIGATION AGAINST THE DEBTOR(S), (II) FOR LEAVE TO FILE PROOFS OF CLAIM AFTER THE BAR DATE AND (III) WAIVING THE PROVISIONS OF FED. R. BANKR. P. 4001(a)(3)**

CHRISTOPHER D. LOIZIDES, ESQ
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, Delaware 19801.
Telephone:  302-654-0248
Email: loizides@loizides.com

Dated: February 10, 2025

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………..i

INTRODUCTION………………………………………………………………1

BACKGROUND FACTS………………………………………………………..1

A.    The Accident and Ms. Alevy's Injuries……………………………………1

B.    The Bed, Bath & Beyond Bankruptcy……………………………………..4

LEGAL ARGUMENT…………………………………………………………...7

I.    The Plan Injunction, to the Extent Applicable, Should be Modified to Permit Movants to Commence Litigation in Georgia … …………………………………………..…7

II.    The Plan Injunction Should not be Interpreted to Give an Effective Discharge to the Debtors' Insurers…………………………………………………………...9

III.    Movants Should Be Permitted to File Proofs of Claim after the Bar Date…….12

A.    Movants, Known Creditors, to the Extent They did not Receive Actual Notice, are not Bound by the Bar Date………………………………………………………..12

B.    In the Alternative, Movants Did not File Proofs of Claim Due to Excusable Neglect…………………………………………………………………13

1.    There is Zero Danger of Prejudice to The Debtors or Their Estates……..14

2.    The Length of Delay is not Material……………………………………...15

3.    The Reason for the Delay is Excusable……………………………………16

4.    Movants Have Always Acted in Good Faith……………………………17

Waiver of the Fourteen Day Stay Provision of Fed. R. Bankr. P. 4001(A)(3)…………..17

CONCLUSION…………………………………………………………….…17

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

<u>Chemetron Corp. v. Jones</u>, 72 F.3d 341 (3d Cir. 1995)…………………....…………  12

<u>Copelin v. Spirco, Inc.</u>, 182 F.3d 174 (3d Cir. 1999)……………………………….…..9

<u>First Fid. Bank v. McAteer</u>, 985 F.2d 114 (3d Cir. 1993) ………………………..………9

<u>Greyhound Lines, Inc. v. Rogers (In re Eagle Bus. Mfg, Inc.)</u>,
62 F.3d 730 (5th Cir. 1995)…………………………………………………………..15-16

<u>Harrington v. Purdue Pharma L.P.</u>, 144 S. Ct. 2071 (2024)……………………….…….11

<u>Hawxhurst v. Pettibone Corp.</u>, 40 F.3d 175 (7th Cir. 1994)……………………….……..9

<u>In re Conston, Inc.</u>, 181 B.R. 769 (D. Del. 1995)……………………………………….13

<u>In re Dewey Beach Enters., Inc.</u>, 110 B.R. 681 (Bankr. D. Del. 1990)…………………13

<u>In re Harbor Tank Storage Co.</u>, 385 F.2d 111, 114 (3d Cir. 1967)……………………..13

<u>In re Mireskandari</u>, No. 18-32759-JKS, 2019 Bankr. LEXIS 1427
(Bankr. D.N.J. May 6, 2019)…………………………………………………………….7

<u>In re O'Brien Environmental Energy, Inc.</u>, 188 F.3d 116 (3d Cir. 1999)…………..14-15

<u>In re R.H. Macy & Co.</u>, 166 B.R. 799, 802 (S.D.N.Y. 1994) …………………………15

<u>In re SelectBuild Illinois, LLC</u>, 2015 WL 3452542 (Bankr. D. Del. May 28, 2015)…..10

<u>In re The Grand Union Company</u>, 204 B.R. 864 (Bankr. D. Del. 1997)…………..…...14

<u>In re Texas Tamale Co.</u>, 219 B.R. 732 (Bankr. S.D. Tex. 1998)………………………16

<u>Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.</u>
<u>(In re Mid-Atlantic Handling Sys., LLC)</u>, 304 B.R. 111, 130 (Bankr. D.N.J. 2003)…..7

<u>Pioneer Investment Services Company v.</u>
<u>Brunswick Associates Limited Partnership</u>, 507 U.S. 380 (1993)……………….. 13,14

**Statutes and Rules**

11 U.S.C. § 362……………………………………………………………………..7

11 U.S.C. § 524(e) ……………………………………………………………9

11 U.S.C. § 1141(d)(3)……………………………………………..…...……..11

28 U.S.C. § 157(b)(5) …………………………………………………..….…..8

Fed. R. Bankr. P. 4001(a)(3)………………………………………………..17

Fed. R. Bankr. P. 9006(b)(1)(2)………………………………………… 13

## INTRODUCTION

Laura Alevy ("**Ms. Alevy**") suffered substantial personal injuries from an incident (the

"**Accident**") occurring on April 3, 2023 at the Bed Bath & Beyond store located at 1545 Market

Place Boulevard, Cumming, GA 30041 (the "**Store**"). Ms. Alevy now seeks relief from the plan

injunction to commence litigation in the courts of the State of Georgia. Her husband, David

Alevy (**"Mr. Alevy"** or with Ms. Alevy, "**Movants**"), seeks the same relief to pursue a claim for

loss of consortium. Movants also seek leave to file a proofs of claim after the bar date. In

support of this motion (the "**Motion**"), Movants respectfully submit the following:

## BACKGROUND FACTS

### A. The Accident and Ms. Alevy's Injuries

The Debtors were engaged in the business of operating retail stores throughout the United

States, including in the State of Georgia, and advertised, marketed, promoted, distributed and

sold a wide range of consumer goods.

On April 3, 2023 at the Bed, Bath & Beyond store located at 1545 Market Place

Boulevard, Cumming, GA 30041 (the "**Store**"), which, on information and belief, was at all

relevant times owned and operated by debtor Bed Bath & Beyond, Inc. (the "**Debtor**"), Ms.

Alevy was walking in the Store and fell forward to the ground. *See* Certification of Laura Alevy

in support of the Motion (the "**Alevy Cert.**"), at ¶2. She hit her face as she was falling and by the

time she hit the ground, she was crying uncontrollably. *Id.* Ms. Alevy's upper lip started to

swell, and her forehead began to hurt. *Id.* An employee tried to help her up, but she could not

move. *Id.* The employee helped Ms. Alevy to call her husband, who called an ambulance once

he got to the Store. Ms. Alevy rode in the ambulance to Northside Hospital Forsyth to receive

medical attention for her injuries. *Id.*

As a result of the Accident, Ms. Alevy has suffered serious physical injuries, including to her head, left shoulder, right hip, right groin, right wrist, neck, and lower back.  Alevy Cert. at ¶3. She has also suffered a permanent injury from a concussion. *Id.*  She is still experiencing headaches, dizziness, memory loss, and the inability to function as she did before the Accident. *Id.*  Since the Accident, she relies more on her husband now to take care of her.  *Id.*

Ms. Alevy retained Steven Leibel, Esq. of Leibel, P.C. ("***Trial Counsel***") to represent her with respect to her claims arising from the Accident.  Mr. Leibel has been a trial attorney in Georgia for the last 45 years with extensive experience in personal injury and medially related issues.  *See* Certification of Steven Leibel (the "***Leibel Cert.***") in support of the Motion at ¶3.  He formerly served as a Commission member of the Brain and Spinal Injury Trust Fund Commission of the State and Georgia, and is well acquainted with brain injuries and their sequelae. *Id.* His professional experience includes record verdicts, including the fourth largest verdict in the United States in 2014.  *Id.*

As noted above, among the injuries Ms. Alevy sustained as a result of the Accident is a concussion. Leibel Cert. at ¶5. Ms. Alevy had a preexisting condition of headaches from an automobile accident and the Accident significantly exacerbated that condition.  *Id.*

In Attorney Leibel's direct experience as a personal injury attorney in Georgia, an injured party suffering from Post Concussion Syndrome should be able to recover significantly more than $1 million in damages.  Leibel Cert. at ¶6.  In this case, Ms. Alevy is suffering from a significant exacerbation of a pre-existing concussion syndrome.  *Id.* She has had additional problems with headaches, memory loss, cognitive impairment, and loss of income.  *Id.* It has also

caused her a loss of relationship with her husband, as she has been unable to care for him with his MS condition. *Id.* Hence, Mr. Alevy has suffered loss of consortium.

A recent MRI of Ms. Alevy shows brain matter consistent with post-concussion syndrome. *Id.* As a result of this fall, she is not able to teach to a classroom and has lost income. *Id.* She was making $4,000 per month prior to the fall. *Id.* She is now making $1,400 per month. *Id.* She has suffered over $500,000 in both medical and lost wage claims. *Id.* Mr. Leibel believes the case has a value of up to $2,000,000. *Id.*

On April 14, 2023, Mr. Leibel sent a letter (the "***Spoliation Letter***") via certified mail, return receipt requested, to the Debtor at its address in Cumming Georgia and also to its registered agent in Georgia.[1]  Leibel Cert. at ¶7.  A true and correct copy of the Spoliation Letter is attached as Exhibit "1" to the Leibel Cert.

Among other things, the Spoliation Letter:

    a.  Informed the Debtor of the Accident and Ms. Alevy's injuries occurring on April 3, 2023 at the Store;

    b.  Requested, pursuant to O.C.G.A. § 33-3-28, a copy of the declaration page of any policy of insurance that covered Ms. Alevy's injuries;

    c.  Requested any statements or video recordings with respect to the Accident; and

    d.  Instructed the Debtor to place a litigation hold on relevant documents including videos and photography.

Leibel Cert. at ¶8.

---

[1] According to the signed returned receipt included in Exhibit "1" to the Leibel Cert., an agent of the Debtor signed to acknowledge receipt of the Spoliation Letter on April 15, 2023.  While there is no signed return receipt from the Debtor's Georgia registered agent, the USPS tracking information (included in Exhibit "1") reflects that the registered agent received the Spoliation Letter on April 15, 2023.  Leibel Cert. at ¶9.

Sandra Hazelton, liability claims specialist with the Third Party Claims Administrator for Safety National, Debtor's insurer, wrote Attorney Leibel a letter dated June 1, 2023 acknowledging receipt of the Spoliation Letter and making certain informational requests, including through a HIPPA release form. Leibel Cert. at ¶10. A true and correct copy of Ms. Hazelton's June 1, 2023 letter is attached as Exhibit "2" to the Leibel Cert.

### B.  **The Bed, Bath & Beyond Bankruptcy**

On April 23, 2023 (the "***Petition Date***"), the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in this Court, thereby commencing this bankruptcy case. By Order dated April 25, 2023 (ECF 93) Kroll Restructuring Administration LLC (the "***Claims Agent***") was appointed claims and balloting agent in these cases. Kroll subsequently mailed notice of the commencement of these cases on creditors and other parties in interest. *See* Affidavits of Service by the Claims Agent at ECF nos. 604, 630, 694 and 1282. Neither Movants nor Trial Counsel appear on these service lists. A search of the claims register on the Claims' Agent website also reveals that Movants' claims were not scheduled. In any event, neither Movants nor Trial Counsel have any record or recollection of receiving notice of the Debtors' bankruptcy filing. *See* Alevy Cert. at ¶4; Leibel Cert. at ¶11.

Thereafter, on May 10, 2023, Debtors filed the *Motion re: Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* (the "***Bar Date Motion***" ECF 295). The Bar Date Motion was granted by Order dated May 21, 2023 and established July 7, 2023 (the "***Bar Date***") as the general bar date in these cases.

A notice of the bar date (the "***Bar Date Notice***") appears on the Claims Agent's website, although without a CM/ECF number.  Undersigned counsel has searched the docket appearing on the Claims Agent's website for the affidavit or affidavits of service related to the Bar Date Notice and has been unable to locate any.  In any event, neither Movants nor Trial Counsel have any record or recollection of receiving notice of the Bar Date.  Alevy Cert. at ¶5; Leibel Cert. at ¶12.

On September 14, 2023, this Court entered its "*Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates*" [ECF 2172] ("***Confirmation Order***") confirming the "*Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates"* [ECF 1712] (as confirmed, the "***Plan***").  As the Plan is one of liquidation, the Debtors did not receive a discharge under 11 U.S.C. § 1141(d).  However, Article X of the Plan provides for certain releases, injunctions and related provisions.  Most of these provisions are inapplicable to Movants and their claims.  In particular, as to the Plan release, as Movants did not vote to accept the Plan, neither is a "Releasing Party" under Plan Art. I §A¶132. It may be noted too that the Debtors' insurance carriers are not among the "Released Parties" as defined in Plan. Plan Art. I §A¶131. Nor do the exculpation provisions apply to pre-bankruptcy personal injury claims.  Plan Art. X.E.

However, pursuant to Article X, Section F. (at 53-54), the Plan enjoins holders of five categories[2] of "Claims" as defined in 11 U.S.C. § 101(5), from, *inter alia*, "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection

---

[2] These five categories are Claims that "(a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan . . ."  Movants' claims plainly do not fall under categories (b) – (c).  Nor do their claims fall under category (a) as their claims were never compromised.  It is unclear whether their claims fall under category (e).

with or with respect to" claims against the Debtor (the "***Plan Injunction***").  <u>See also</u> Confirmation

Order at ¶137 at 65 (providing for temporary continuation of the automatic stay and for the Plan

injunction to "remain in full force and effect in accordance with [its] terms").  It may be noted that

the Plan Injunction is not permanent but remains in place "until date upon which all remaining

property of the Debtors' Estates vested in the Wind-Down Debtors has been liquidated and

distributed in accordance with the terms of the Plan."  Plan Art. X § F.

The Plan also contains provisions concerning insurance.  Plan Art. V § D ("Insurance

Policies") provides that "the Wind-Down Debtors shall be deemed to have assumed all Insurance

Policies that identify one of the Debtors as the first named insured or as a counterparty thereto in

their entireties pursuant to sections 105 and 365 of the Bankruptcy Code." Article V section D also

expressly contemplates the possibility that the Court may grant personal injury claimants relief

from the Plan Injunction to pursue their claims:

> [T]he automatic stay of section 362(a) of the Bankruptcy Code and the injunctions
> set forth in Article X of the Plan, if and to the extent applicable, shall be deemed
> lifted without further order of this Bankruptcy Court, solely to permit . . .(II) the
> Insurers to administer, handle, defend . . . where . . . an order has been entered by
> this Bankruptcy Court granting a claimant relief from the automatic stay or the
> injunctions set forth in Article X of the Plan to proceed with its claim . . ."

Ms. Alevy engaged undersigned counsel to represent Movants' interests in this

bankruptcy case in or around June, 2024.  *See* Certification of Christopher D. Loizides in support

of the Motion (the "***Loizides Cert.***") at ¶.  Following discussions with other counsel in this case,

it appeared that the Debtors and other parties were considering filing a motion to establish global

procedures for the resolution of personal injury claims. *Id.* at ¶4.  However, by November or

December, 2024, it became apparent that no such motion would be filed.  *Id.* at ¶5.  Also,

following further investigation in the late Fall and early Winter, it appears that it is not certain

whether there will be a dividend to general unsecured creditors and if one is made, it appears that

this will not take place for some time and likely be of a small value. *Id.* at ¶5.


# LEGAL ARGUMENT

## I.    The Plan Injunction, to the Extent Applicable, Should be Modified to Permit Movants to Commence Litigation in Georgia

Movants request that the Court modify the Plan Injunction to permit them to commence litigation in Georgia, to prosecute such action(s) to judgment(s) and through any appeals, and to enforce any judgment(s) they, or either of them, receive, by execution, levy or otherwise, against non-Debtors, non-Debtor property, the Debtors' insurer(s) and any applicable insurance policies. As discussed further in part III below, Movants also request that they be permitted to liquidate their claims in Georgia state court.

While section 362 is technically not applicable here, Courts often apply caselaw concerning the automatic stay of Code section 362 to requests to modify a plan injunction. In this District, the Court often applies a twelve-part test:

> To determine whether it is necessary to allow prosecution to continue in another forum, courts consider whether: (1) relief would result in a partial or complete resolution of issues; (2) there is a connection with or interference with the bankruptcy case; (3) the other proceeding involves the debtor as a fiduciary; (4) a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) the debtor's insurer has assumed full responsibility for defending it; (6) the action primarily involves third parties; (7) litigation in another forum would prejudice the interest of creditors; (8) the judgment claim arising from the other action is subject to equitable subordination; (9) the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) stay relief would further the interests of judicial economy and lead to an expeditious and economical resolution of litigation; (11) the parties are ready for trial in the other proceeding; and (12) imposition or relief from the stay will cause significant harm to either of the parties.

Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys.,

LLC), 304 B.R. 111, 130 (Bankr. D.N.J. 2003); In re Mireskandari, No. 18-32759-JKS, 2019

Bankr. LEXIS 1427, *4-*5 (Bankr. D.N.J. May 6, 2019).

All of the relevant factors cited above, to the extent they are applicable, weigh heavily

towards granting the Motion.  In considering these factors, it is essential to bear in mind that this

Court lack jurisdiction over personal injury claims.  28 U.S.C. § 157(b)(5).  Accordingly,

ultimately Movants' claims would be adjudicated in the United States District Court for the District

of New Jersey or the United States District Court for the Northern District of Georgia.

| # | Description | Favors | Why? |
|---|---|---|---|
| 1 | Partial or complete relief | Movants | Relief would result in the adjudication of Movants' claims in a single forum |
| 2 | Interference with bankruptcy | Movants | Prosecution of unsecured claims in a case where zero dividend is now available will have no effect on this post-confirmation case |
| 3 | Proceeding as a fiduciary | Not applicable | |
| 4 | Specialized tribunal | Movants | Georgia courts familiar applicable state law and in the same situs as the parties, witnesses and evidence are much better suited to resolve personal injury cases than a Federal District Court in New Jersey |
| 5 | Assumption by Debtors' insurer | Movants | While insurers often deny that they will defend, but they typically do in reality for obvious reasons |
| 6 | Primarily involved third parties | Movants | As a practical matter, this is a dispute between Movants and Debtors' insurer(s). |
| 7 | Litigation in another forum would prejudice creditors | Movants | No conceivable prejudice.  The alternative is the United States District Court of New Jersey or in Georgia. |
| 8 | Equitable subordination | Not applicable | |
| 9 | Judicial lien | Not applicable | |
| 10 | Judicial Economy | Strongly favors Movants | This Court lacks authority to adjudicate personal injury claims.  As all witnesses, evidence and and parties are located in Georgia, it would be vastly inefficient for this matter to be adjudicated in Federal Court in New Jersey |
| 11 | Parties ready for trial | Not applicable. | |
| 12 | Relief from stay will cause harm | Movants | Prosecution of an unsecured claim in an (conceivably) administratively insolvent case where some of the claims are covered by insurance would have no effect on the bankruptcy case |

In sum, it makes no sense for the Court to prevent the adjudication of Movants' claims

in the forum where they belong—Georgia State court.  The Accident occurred in Georgia and all witnesses and relevant evidence are located there.  Georgia state law applies.  This Court may not adjudicate the claims under 28 U.S.C. § 157(b)(5); rather, in the absence of relief from the Plan Injunction, the New Jersey District Court will either try the case or transfer it to the United States District Court for the Northern District of Georgia—neither of which makes any sense.

## II.    The Plan Injunction Should Not be Interpreted to Give an Effective Discharge to the Debtors' Insurers

Section 524(e) of the Bankruptcy Code provides that "discharge of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  This principle has been applied to insurance carriers.  In First Fid. Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993) ("McAteer"), the Third Circuit held that "the protection from liability afforded the debtor under the Code does not affect the liability of the debtor's insurers."  In McAteer, the debtor bought a life insurance policy that named the lienholder on his truck as the primary beneficiary.  Debtor and his spouse later filed for bankruptcy and "crammed down" the lienholder.  When the debtor died, his co-debtor spouse argued that the lienholders' rights were limited by the terms of the confirmed chapter 13 plan, to which the lienholder had not objected.

The Court Appeals reversed the bankruptcy and district courts, holding that "[w]hile it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties."  McAteer at 118.  Accord Copelin v. Spirco, Inc., 182 F.3d 174, 182 (3d Cir. 1999)("Generally, independent obligations of a parent corporation are not discharged by its subsidiary's bankruptcy absent a general discharge provision."); In re Conston, Inc., 181 B.R. 769, 773 (D. Del. 1995) (". . .the statutory definition of discharge, by its own terms, does not cause the underlying debt to vanish.")

The limited effect of confirmation and discharge on the liability of an insurer was addressed at length in Hawxhurst v. Pettibone Corp., 40 F.3d 175, 177 (7th Cir. 1994) ("Hawxhurst").  In Hawxhurst, the plaintiff brought a products liability suit against the manufacturer of a baggage handling machine.  The manufacturer later filed for bankruptcy.  Plaintiff did not file proofs of claim by the bar date.  The committee later filed a motion to disallow all personal injury claims where no proof of claim had been filed.  Plaintiff did not contest the motion, and his claim was disallowed.  The court confirmed the debtor's plan and granted a discharge under section 1141.

Almost four years later, plaintiff filed a motion to modify the discharge injunction and to permit him to file a late proof of claim.  Id. at 178.  The bankruptcy court denied plaintiff's request to file a late proof of claim, but modified the discharge injunction to permit plaintiff to recover insurance proceeds.  After the district court affirmed, debtor appealed to the Seventh Circuit.

The Court of Appeals affirmed.  In rejecting debtor's argument that the disallowance of plaintiff's claim barred him from recovering insurance proceeds, the Court held:

> The mere fact that a claimant is unable to participate in a reorganization plan, however, does not relieve any other entity from liability for the debt, nor does it negate the existence of the debt. . .. Permitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding.

Hawxhurst at 179-80.

One court had occasion to apply the holdings in McAteer and Hawxhurst in In re SelectBuild Illinois, LLC, 2015 WL 3452542, at *8 (Bankr. D. Del. May 28, 2015) (Carey, J. ("SelectBuild").  There, a general contractor, as an additional insured under the debtor/subcontractor's liability policy, sought to recover against the insurer.  The Court held that

the general contractor would not be enjoined from naming the debtor as a nominal party in order

to collect under the policy.  SelectBuild, at *8 ("Other courts have determined that a bankruptcy

discharge does not preclude a suit brought nominally against the debtor in order to seek relief

against the insurer.")

Here, Movants seek recovery from Safety National (or any other insurer).  A third party

such as Safety National did not (and could not) have received protection from a discharge.  It

would be more than ironic if a third party received a *de facto* discharge of liability in a case

where even the debtor itself is ineligible for a discharge under 11 U.S.C. § 1141(d)(3).

Movants also stress that by the terms of the Plan itself, the Plan Release and the

Exculpation do not protect Debtors' insurers.  Also, as Movants did not submit ballots, they are

not bound by the Plan Release anyway.  And because their claims have nothing to do with the

reorganization process, Ms. Alevy's claim for personal injury and Mr. Alevy's claim for loss of

consortium are not the types of claims that could be affected by the Exculpation.

As for the Plan Injunction, it is intended principally to provide an enforcement

mechanism for the, the Plan Release and the Exculpation.  It cannot create new substantive rights

for the Debtors.  As noted above, the Plan Release and the Exculpation are entirely inapplicable

to Movants' claims. Movants would also stress that while plan injunctions are routinely included

in plans of reorganization these days, the Supreme Court's decision last year in Harrington v.

Purdue Pharma L.P., 144 S. Ct. 2071 (2024) that non-consensual third-party releases are not

authorized by the Bankruptcy Code throws some doubt on the legitimacy of this practice,

especially where plan injunctions are used to shield third party insurers from liability.

Here, again assuming that the Plan Injunction is enforceable against Movants, then

Movants submit that the Court should exercise its discretion to modify the Plan Injunction. If

enforceable against Movants, the Plan Injunction constitutes an extreme and unnecessary

hardship upon them because it prohibits Movants from commencing litigation in order to recover

from the Debtors' insurer(s). Conversely, the only hardship to the Debtors in modifying the Plan

Injunction would be that the Debtors might need to devote some time cooperating with their

insurer(s) to defend the state court action, a harm which is dwarfed by the harm which would be

suffered by Movants if they cannot recover from the Debtors' insurers at all.

### III.    Movants Should Be Permitted to File Proofs of Claim After the Bar Date

#### A.  Movants, Known Creditors, to the Extent They Did not Receive Actual Notice, are not Bound by the Bar Date

The sufficiency of notice to a creditor depends on whether the creditor's identity is

"known" or "unknown."   As to "known" creditors "due process entitl[es] them to actual notice

of the bankruptcy proceedings."  Chemetron Corp. v. Jones, 72 F.3d 341, 345-46 (3d Cir. 1995).

As to "unknown" creditors, notice by publication may be "sufficient to satisfy the requirements

of due process . . . "Id.

> A known creditor –
>
>  is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa
> Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 108 S.
> Ct. 1340 (1988).  An "unknown" creditor is one whose 'interests are either conjectural or
> future or, although they could be discovered upon investigation, do not in due course of
> business come to knowledge [of the debtor].''" Mullane v. Central Hanover Bank &
> Trust Co., 339 U.S. 306, 317, 94 L. Ed. 865, 70 S. Ct. 652 (1950). A creditor's identity is
> "reasonably ascertainable" if that creditor can be identified through "reasonably diligent
> efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4, 77 L. Ed. 2d 180,
> 103 S. Ct. 2706 (1983).

Chemetron Corp. v. Jones, 72 F.3d at 346.

Movants are a "known" creditors under these standards.  As reflected in the Leibel

Certification, the Spoliation Letter was sent to the Debtor informing the Debtor of Ms. Alevy's

injury.  A short time thereafter, the claims administrator for the Debtor's insurer responded to

Mr. Leibel's Spoliation Letter.  It can hence be inferred that the Debtors received, reviewed and

understood the Spoliation Letter—otherwise, how did the claims administrator know to respond?

Accordingly, to the extent that Movants were not provided with actual notice of the Bar

Date, Movants' rights cannot be affected by the Bar Date.  In re Dewey Beach Enters., Inc., 110

B.R. 681, 684 (Bankr. D. Del. 1990) ("In those instances where no prior notice of the bar date

has been given, enlargement of the time period may be constitutionally required. In re Harbor

Tank Storage Co., 385 F.2d 111, 114 (3d Cir. 1967)").

### B.  In The Alternative, Movants Did not File Proofs of Claim Due to Excusable Neglect

To the extent that the Court holds that the Bar Date was binding on Movants, Movants

assert that their not filing a proofs of claim by the Bar Date was due do excusable neglect.

Fed. R. Bankr. P. 9006(b)(1)(2) provides that, except as to certain circumstances not present

here, "when an act is required or allowed to be done at or within a specified period by these rules

or by a notice given thereunder or by order of court, the court for cause shown may . . . on

motion made after the expiration of the specified period permit the act to be done where the

failure to act was the result of excusable neglect."

The Supreme Court in Pioneer Investment Services Company v. Brunswick Associates

Limited Partnership, 507 U.S. 380 (1993) articulated a test for determining whether "excusable

neglect" exists under Rule 9006(b):

> Because Congress has provided no other guideposts for determining what sorts of
> neglect will be considered "excusable," we conclude that the determination is at
> bottom an equitable one, taking account of all relevant circumstances surrounding
> the party's omission.  These include, as the Court of Appeals found, the danger of
> prejudice to the debtor, the length of the delay and its potential impact on judicial
> proceedings, the reason for the delay, including whether it was within the
> reasonable control of the movant, and whether the movant acted in good faith.

Pioneer Investments Services, 507 U.S. at 395.

Following Pioneer, the Court of Appeals for the Third Circuit in In re O'Brien

Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999) reversed the decisions of the

Bankruptcy Court and District Court that held that an administrative claimant had not shown

"excusable neglect."  In reaching that decision, the Court held that the mere fact that the debtor

had not accounted for the claim at issue was insufficient to show prejudice under Pioneer.  The

Court held that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should

be a conclusion based on facts in evidence." In re O'Brien, 188 F.3d at 127.

In determining whether prejudice exists, the Court looked to "the size of the claim with

respect to the rest of the estate; whether allowing the late claim would have an adverse impact on

the judicial administration of the case; whether the plan was filed or confirmed with knowledge

of the existence of the claim; the disruptive effect that the late filing would have on the plan or

upon the economic model upon which the plan was based; and whether allowing the claim would

open the floodgates to other similar claims."  The Court in O'Brien then went on to analyze the

concept of excusable neglect.  The Court reasoned that the concept included actions that

involved a lack of care on the part of the claimant.  Id. at 128.  See also In re The Grand Union

Company, 204 B.R. 864 (Bankr. D. Del. 1997) (Walsh, C.J.) (excusable neglect found where

claimants did not effectively communicate with their counsel concerning the bar date notice).

Application of the standards in Pioneer shows that Movants should be permitted to file

proofs of claim after the Bar Date.

### 1.    There is Zero Danger of Prejudice to the Debtors or their Estates

The first factor that courts should consider when determining whether to allow a late filed

claim is the danger of prejudice to the debtor.  Id.  When assessing this factor, a debtor is *not*

prejudiced by a late filed claim simply because it did not account for such claim in the funding of its plan of organization or liquidation.  In re O'Brien, 188 F.3d at 126 (citing In re R.H. Macy & Co., 166 B.R. 799, 802 (S.D.N.Y. 1994) (the depletion of resources otherwise available for timely filed claims does not constitute prejudice).

In this case, the authorized filing of proofs of claim will not prejudice the Debtors or their estates because (i) the Debtors' Plan is a liquidating "pot" plan and the addition of a single additional claim against unsecured claims estimated to range from $1.8 billion to $2.4 billion (Amended Disclosure Statement, ECF 1713 at 8) will make no practical difference in this case; (ii) similarly, as there are thousands of pre-petition unsecured claims against the Debtors, the addition of one more would not, in light of the magnitude of the Debtors' cases, measurably dilute distributions to other creditors; (iii) Debtors would still have the ability to defend against the merits of the claims; and (iv) because the Debtors knew about the claims, as demonstrated by the facts that the Debtors received and responded (through the third party administrator) to the Spoliation Letter, the Debtors cannot claim surprise from the filing of proofs of claim by Movants.

The Debtors may offer a "floodgates" argument.  The Court should view any such argument with skepticism.  Thus far, the docket reflects that only a handful creditors have moved for the right to file claims after the Bar Date.  In any case, any other such motions may be addressed if and when they are filed on a case-by-case basis.

### 2.    The Length of Delay Is Not Material

The second factor that courts consider is the length of delay and the effect that the filing will have on judicial proceedings.  Pioneer, 407 U.S. at 395.

In this case, the length of Movants' delay is not significant in view of the stage of the

Debtors' cases.  Compare to Greyhound Lines, Inc. v. Rogers (In re Eagle Bus. Mfg., Inc.), 62

F.3d 730 (5th Cir. 1995) (a six-to-eight-month delay for filing a late proof of claim was not

egregious).  Movants engaged counsel after learning of the bankruptcy, who waited to file this

Motion only because it appeared that a procedures motion was in the works.  Loizides Cert. at

¶4.  Undersigned counsel also contacted Debtors' counsel in July, 2024 to inform Debtors about

the claim.  Accordingly, Movants' delay in not material.  *Id.*

### 3.    The Reason for the Delay Is Excusable

The third factor that courts consider is the reason for the delay.  Pioneer, 407 U.S. at 395.

When assessing whether a creditor's failure to timely file a claim is based upon excusable

neglect, courts have acknowledged that "the mere use of the word neglect encompasses

omissions caused by carelessness."  In re O'Brien, 188 F.3d at 125.  When determining whether

such carelessness is "excusable," courts should take into account all of the relevant

circumstances surrounding the party's omission.  Id. (citing Pioneer, 407 U.S. at 395 – "Chapter

11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures

by creditors.").

In In re Texas Tamale Co., 219 B.R. 732 (Bankr. S.D. Tex. 1998), the court did not allow

a late proof of claim filing when the creditor acted in bad faith by deliberately waiting to assert

his claim in order to destroy the debtor's chances of completing its confirmed plan and to harass

the debtor.

Here, Movants did not deliberately wait to file.  Movants do not appear to have received

notice of the bankruptcy filing or of the Bar Date.  In any event, as Movants did not have actual

knowledge of the Bar Date until after it had passed, any "neglect" here was minimal and fully

excused.

### 4.    Movants Have Always Acted in Good Faith

Finally, Movants have always acted in good faith.  Movants had absolutely no reason to

delay this matter.

### Waiver of the Fourteen Day Stay Provision of Fed. R. Bankr. P. 4001(a)(3)

In the event that the Bankruptcy Court grants relief from the Plan Injunction, this Court

has the discretion to balance the equities and enter an order waiving the fourteen (14) day stay

provisions as contained in Fed. R. Bankr. P. 4001 (a)(3) (to the extent this rule even applies). In

examining the relative hardships, the Movants has suffered extensive personal injuries and will

likely suffer irreparable harm since her sole source of recovery is available insurance proceeds,

which could diminish in value. Accordingly, it is respectfully requested that the Court waive the

fourteen (14) day stay provisions of Fed. R. Bankr. P. 4001 (a)(3) so that Movants may seek to

recover their claims against any available insurance policies without delay and to avoid the

continuing and irreparable harm being visited upon them.

### CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court enter an Order

modifying the Plan Injunction to allow them to commence litigation in the courts of the State of

Georgia, to prosecute such action to judgment, to enforce any judgment(s) they receive in such

action against non-Debtors, non-Debtor property, and the Debtors' insurer(s) and insurance

policies, whether by execution, levy, collection or otherwise; to permit them to file proofs of

claim after the Bar Date with the allowed amount of such claims to be adjudicated in Georgia; to

waive the 14-day stay provided by Fed. R. Bankr. P. 4001(a)(3); and granting such other and

further relief as the Court may deem equitable and just under the circumstances.

DATED: February 10, 2025

/s/ Christopher D. Loizides
CHRISTOPHER D. LOIZIDES, ESQ
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, Delaware 19801.
Telephone: 302-654-0248
Email: loizides@loizides.com

.