**HUSCH BLACKWELL LLP**
David Stauss (NJ I.D. #013862005)
1801 Wewatta Street, Suite 1000
Denver, CO 80202
Telephone: 303.749.7200
Facsimile: 303.749.7272
Email: david.stauss@huschblackwell.com

**HUSCH BLACKWELL LLP**
Caleb T. Holzaepfel, Esq.
Admitted *pro hac vice*
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
Telephone:  423.755.2654
Email:  caleb.holzaepfel@huschblackwell.com

*Attorneys for Safety National Casualty Corporation*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | : | |
| | : | Case No. 23-13359 (VFP) |
| Debtors.[1] | : | (Jointly Administered) |

---

## OBJECTION OF SAFETY NATIONAL CASUALTY CORPORATION AS TO NOTICE OF MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY AND PLAN INJUNCTION TO ALLOW MOVANTS TO PURSUE PERSONAL INJURY LITIGATION AGAINST THE DEBTOR(S), FOR LEAVE TO FILE PROOFS OF CLAIM AFTER THE BAR DATE, AND WAIVING THE PROVISIONS OF FED. R.  BANKR. P. 4001(a)(3)

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

Safety National Casualty Corporation ("Safety National"), by and through the undersigned counsel, hereby files this objection and reservation of rights (the "Objection") as to the *Notice of Motion for Order Modifying the Automatic Stay and Plan Injunction to Allow Movants to Pursue Personal Injury Litigation Against the Debtor(s), for Leave to File Proofs of Claim After the Bar Date, and Waiving the Provisions of Fed. R. Bankr. P. 4001(a)(3)* filed by Laura Alevy and David Alevy [Dkt. No. 3855] (the "Motion"). In support of this Objection, Safety National respectfully states as follows:

1. On February 10, 2025, movants Laura Alevy ("Ms. Alevy") and David Alevy ("Mr. Alevy", collectively with Ms. Alevy, "Movants") filed their Motion, requesting relief from the automatic stay and plan injunction to commence litigation against Reorganized Debtor Bed Bath & Beyond, Inc. and their debtor affiliates (collectively, the "Debtors") to recover against Safety National and for leave to file proofs of claim after the bar date. Movants have yet to file lawsuits in state court. Ms. Alevy alleges injuries sustained on April 3, 2023, while she was a patron/business invitee in a Bed Bath & Beyond store located in Cumming, Georgia (the "Injury Claim"). Mr. Alevy alleges loss of consortium in connection with the Injury Claim (the "Loss of Consortium Claim", together with the Injury Claim, the "Claims"). The Motion requests that Movants be allowed to commence litigation in Georgia state court to pursue the Claims against Debtors to the extent of applicable insurance.

2. Safety National provided general liability insurance coverage to Debtors pursuant to certain insurance policies and related documents (the "Safety National Insurance Policies") subject to a $1 Million Self-Insured Retention Limit (the "SIR").

3. On May 31, 2023, this Court issued its *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing*

*Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date,*
*(III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving*
*Notice Thereof, and (V) Granting Related Relief* [Dkt. No. 584] (the "Bar Date Order").

4.      The Bar Date Order established July 7, 2023 (the "General Claims Bar Date"), as
the last date for each person or entity to submit a proof of claim against the Debtors.

5.      On September 14, 2023, this Court issued its *Findings of Fact, Conclusions of Law,*
*and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second*
*Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Dkt. No.
2172] approving Debtors' *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. And*
*Its Debtor Affiliates* (as may be modified, the "Plan") [Dkt. No. 2160].

6.      The Plan assumed the Safety National Insurance Policies on the Effective Date.

7.      The Effective Date of the Plan (the "Effective Date") occurred on September 29,
2023 [Dkt. No. 2311].

## OBJECTION AND RESERVATION OF RIGHTS

8.      Movants seek to modify the automatic stay and plan injunction to pursue and file
Claims against Debtors beyond the General Claims Bar Date and the Effective Date of the Plan,
which will necessarily prejudice Debtors and their estates. Movants had constructive knowledge
of these Chapter 11 Cases and admitted actual knowledge of these cases for at least fourteen (14)
months prior to filing the Motion but consciously chose to delay acting on their claim until the
eleventh hour.  Moreover, to the extent these speculative Claims could materialize, the SIR limits
the Safety National Insurance Policies, so coverage is not triggered until Debtors meet the SIR
limits.  Finally, relief from the Plan Injunction is likely to incur administrative costs to the estates

without purpose and with an unlikely path of recovery from insurance. As such, 11 U.S.C. § 524(e)

does not provide an exception as reason to lift the Plan Injunction.

### *The Motion Should Be Denied Because Movants had Constructive Knowledge of the Bar Date Such That Due Process is Satisfied and Their Claims Against Debtors Have Been Expunged.*

9.       "[W]hen a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims." *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009). Whether the creditor is known or unknown to the debtor informs "proper notice." *Id*. The Debtor identifies known creditors as those whose identity is known or "reasonably ascertainable" through "reasonably diligent efforts." *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 46 (Bankr. D. Del. 2012) (citations omitted). Conversely, "an 'unknown' creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor.]" *Id*. (citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995)).

10.      The Movants constitute unknown creditors. A letter dated April 13, 2023 (the "Letter") sent to debtors about an incident at one of their hundreds of stores does not make the sender a "known" creditor. *Taj Mahal Assocs.*, 156 B.R. 928, 940 (Bankr. D. N.J. 1993) (determining claimants were "unknown", as they were one of several hundred potential claimants, noting debtor "received approximately 1,717 hotel complaint reports and 953 casino reports. These 'reports' are the type that [claimants] filed with [debtor]. Very few reports actually turn out to be complaints asserted against the [debtor].").

11.      The Letter sent on the eve of bankruptcy was merely a fact-gathering exercise. *See* Motion, Exhibit 1. Similarly, the response to the Letter from Third Party Claims Administrator for Safety National was standard protocol for information gathering. *See* Motion, Exhibit 2. The Letter lacked descriptions, allegations, or assertions of claims against the Debtors. *See* Motion, Exhibit

1. Debtors routinely receive such letters, which merely indicate an incident and serve as a tool for pre-lawsuit discovery, with few leading to actual claims. Like the creditors in the *Taj Mahal Assocs.*, there can be no doubt that the Movants were "unknown creditors."

12.    Due process requires unknown creditors receive constructive notice of the claims bar date, typically satisfied by publication. *New Century TRS Holdings*, 465 B.R. at 48 (citing *Chemetron*, 72 F.3d at 348). The publication notice must be "reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for response." *Id.* at 48 (citing *Chemetron*, 72 F.3d at 346).

13.    The debtor must act "reasonably in selecting means likely to inform persons affected" but has no duty to ensure "each person actually received notice." 465 B.R. at 48 (citations omitted) (finding publication in the national edition of *The Wall Street Journal* reasonable and appropriate because debtors operated a nationwide business).

14.    Debtors provided reasonable and sufficient notice to unknown claimants by publishing the Bar Date Notice in *The New York Times*, national edition. *See Proof of Publication*, at Docket No. 638.  Moreover, and practically speaking, Debtors' bankruptcy and the mass closure of 970 stores in all 50 states was widely covered in news outlets, likely notifying Movants of the filing and its impact on their Claims.[2] Therefore, notice to Movants was reasonable, and due process was satisfied.

15.    The Bar Date Order states in no uncertain terms that:

---

[2] *See, e.g.,* https://www.bizjournals.com/atlanta/news/2023/04/24/bed-bath-beyond-starts-liquidating-stores-after.html; https://www.cnn.com/2023/04/23/business/bed-bath-beyond-bankruptcy/index.html; https://www.usatoday.com/story/money/retail/2023/04/25/bed-bath-and-beyon-stops-taking-coupons-bankruptcy/11734051002/; https://www.foxbusiness.com/lifestyle/bed-bath-beyond-coupons-accepted-big-lots-the-container-store-bankruptcy; https://www.nytimes.com/interactive/2023/04/28/business/bed-bath-beyond-closing.html.

7.      In accordance with Bankruptcy Rule 3003(c)(2) any holder of a Claim that is not

exceted from the requirements of the Bar Date Order and fails to timely submit a Proof of Claim

in the appropriate form shall be forever barred, estopped, and enjoined from (a) voting on any

chapter 11 plan filed in these Chapter 11 Cases on account of such Claim, (b) participating in any

distribution in these Chapter 11 Cases on account of such Claim, and (c) receiving further notices

regarding such Claim.

Bar Date Order ¶ 7.

16.    Except for certain exclusions that are inapplicable here, the General Claims Bar

Date applies to all claims against the Debtors that arose prior to April 23, 2023. Because Movants'

Claims arose prior to April 23, 2023, and they received proper notice as demonstrated above, they

were required to file a proof of claim by the General Claims Bar Date – and failed to do so.

17.    Moreover, the confirmed Plan states, in relevant part, that:

Any Claim or Interest that has been or is hereafter listed in the Schedules as
contingent, unliquidated, or disputed, and for which no Proof of Claim is or
has been timely Filed, is not considered Allowed and shall be expunged
without further action by the Debtors and without further notice to any party
or action, approval, or order of the Bankruptcy Court.

Plan, Art. I.A.14 (emphasis added)

18.    Any Claims that could have been asserted by Movants have now been expunged by

operation of the Plan and the Bar Date Order. Accordingly, this Court should deny the Motion.

***The Motion Should Be Denied Because Movants Cannot Show Excusable Neglect.***

19.    As discussed in the Motion, when unknown creditors receive constructive notice,

but they fail to timely act, they may seek leave to file a claim based on "excusable neglect." *New

Century TRS Holdings, Inc.*, 465 B.R. at 50. Courts consider four factors: "(1) the danger of

prejudice to the debtor, (2) the length of the delay and its potential impact on the judicial

proceedings, (3) the reason for the delay, including whether it was within the reasonable control

of the movant, and (4) whether the movant acted in good faith." *Id.*; *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

20.    The Movants fail to grasp the core issue with their argument. Movants assert that the Claims are not prejudicial to the Debtors or their estates because "the Debtors' Plan is a liquidating 'pot' plan and the addition of a single additional claim against unsecured claims estimated to range from $1.8 billion to $2.4 billion … will make no practical difference in this case…." Motion, at 19. However, Movants completely fail to account for the costs associated with the assumed Safety National Insurance Policies and the SIR, which expressly includes Debtors' obligation to pay for litigation costs should these Claims be brought in state court. The SIR significantly impacts *Pioneer* factors, which equally weigh against relief.

21.    As previously noted, Debtors assumed the Safety National Insurance Policies under 11 U.S.C. § 365 pursuant to the Plan.  Moreover, this was *not* a plan of liquidation – rather of plan of reorganization.  *See generally* Plan.  The fact that Debtors are winding down and liquidating assets does not somehow relieve Debtors from their SIR obligations under the Safety National Insurance Policies.

22.    First, Debtors are prejudiced because they are obligated to pay up to the $1 million SIR amount if litigation is commenced.  Litigation would force Debtors to expend substantial time and financial resources until insurance coverage is triggered (if at all), which would be prejudicial to Debtors' fresh start. *In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 937 (Bankr. D. N.J. 1993) ("If this court were to allow a Proof of Claim to be filed almost two years after the Debtor's confirmation, this court would deny the Debtor the 'fresh start' to which it is entitled.").  While this is a "pot plan" – Debtors are currently administratively insolvent.  Simply stated, the estates cannot afford to defend and pay this claim up to the $1 Million SIR.

23.    Second, Movants file this Motion and request this relief nineteen (19) months after the Bar Date, and seventeen (17) months after the Plan was confirmed, illustrating a significant delay and prejudicial impact on judicial proceedings. *See Taj Mahal Assocs.*, 156 B.R. at 938 (disallowing claim asserted more than one year, but less than two years after plan confirmation); *New Century TRS Holdings*, 465 B.R. 38 at 52 (disallowing late-filed claim asserted almost four years after the bar date and eighteen months after confirmation); *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3rd Cir. 2000) (finding delay of four years after bar date and two years after confirmation date prejudicial to debtor).

24.    Lastly, the delay was within the reasonable control of the Movants, who intentionally neglected their rights.  Movants had constructive knowledge of the bankruptcy before the Bar Date. *See supra* ¶ 13.  Movants' counsel declared his knowledge of Debtors' bankruptcy no later than December 2023 – fourteen (14) months prior to the filing of the Motion. *See* Leibel Certification, ¶ 13. Movants and their counsel did not act appropriately, asserting their alleged rights at the eleventh hour, long after the Plan's confirmation, while Debtors' estate administers assets. *See New Century TRS Holdings*, 465 B.R. 38, at 52-53 ("Despite learning of her claim sometime in 2010, [claimant] waiting until July 2011 to file a proof of claim" and this delay "caused and will cause substantial prejudice to the Trust and other creditors."); *In re Smidth & Co.*, 413 B.R. 161, 168 (Bankr. D. Del. 2009) (failure to promptly take action "and only assert its rights in the final moments of this bankruptcy case does not constitute good faith").

25.    Therefore, the Court should not afford Movants the exception of "excusable neglect" and this Motion should be denied.

**The Motion Should Be Denied Because the Insurer Exception Under section 524(e) of the Bankruptcy Code Does Not Apply and Lifting the Injunction is Likely to Incur Costs to the Estates.**

26.     Section 524(a)(2) of the Bankruptcy Code enjoins "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). "The debt itself is not extinguished, but the discharge acts as an injunction against any action pursued by creditors to recover on a claim against the **debtor**." *In re Valaris PLC*, 2025 WL 392482, at *3 (Bankr. S.D. Tex. Feb. 4, 2025) (citing *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993) (emphasis added)). However, section 524(e) of the Bankruptcy Code allows creditors to collect the existing debt from liable non-debtor entities, known as the "insurer exception." *Edgeworth*, 993 F.2d at 53.

27.     The "insurer exception" applies to "not affect a personal injury claimant's efforts to recover from the debtor's insurer so long as the insurer covers all defense costs and all potential liability." *In re Gutches*, 430 B.R. 342, 346 (Bankr. E.D. Penn. 2009); *see also In re Morris*, 570 B.R. 708 (Bankr. M.D. Penn. 2017) (allowing claimant to proceed against insurer because the cost of debtor's defense would be covered by the insurance policy).

28.     However, "a claimant may not recover damages from the debtor directly, nor force the debtor to incur 'substantial' defense costs." *In re Tailored Brands, Inc.*, 2021 WL 2021472, at *3 (Bankr. S.D. Tex. May 20, 2021).

29.     Thus, when insurance coverage requires a SIR, requiring the debtor to cover defense and liability payments up to a certain amount before triggering coverage, the insurer exception does not apply. 2025 WL 392482, at *4; *Tailored Brands*, 2021 WL 2021472, at *3 ("An application of the insurer exception must be predicated on the debtor's complete insulation from any interference with its fresh start in economic life.").

30.     The Safety National Insurance Policies provide that the Debtors are self-insured for general liability causes of action up to the SIR limit - $1 Million per incident. Safety National provides coverage to Debtors on general liability claims (like the Movants' Claims) when the SIR limit is met.

31.     Debtors are obligated under the Safety National Insurance Policies to defend or resolve claims below the SIR limit.

32.     The Safety National Insurance Policies, among other things, also obligate Debtors to indemnify and reimburse Safety National for any defense costs Safety National incurs below the SIR limit.

33.     The Movants' Claims are speculative, with Movants asserting they are worth more than $1 million. Even so, Debtors are obligated for all costs up to this amount. To date, Debtors have not incurred any obligations under the Safety National Insurance Policies applicable to the SIR.  Thus, to the extent the Plan Injunction is lifted for Movants to commence litigation, the estates will either (i) be required to defend the Claims in the state court, or (ii) if the estates choose not to defend, will incur administrative claim obligations to Safety National for its defense of the Claims in state court up to the $1 million SIR amount.

34.     Relief from the Plan Injunction would only serve to cost a cash-strapped Estate valuable resources.

***Reservation of Rights***

35.     As of the filing of this Objection, no proposed stipulation has been filed on the docket nor have the Debtors filed any objection to the Motion. Safety National objects to any proposed order that attempts to modify the rights or defenses held by Safety National under the Safety National Insurance Policies, any other applicable policy or contractual agreements between

10

the Debtors and Safety National, the Bankruptcy Code, or other applicable law.  Accordingly,

Safety National hereby expressly reserves all of it rights, claims, counterclaims, defenses, and

remedies under the Bankruptcy Code, its insurance policy, any applicable contractual agreements

between the Debtors and Safety National, and other applicable law.

WHEREFORE the reasons set forth above, Safety National respectfully requests the

Motion be denied.

Dated:  February 25, 2025                    Respectfully Submitted,

*/s/ David Stauss*
David Stauss (NJ I.D. #013862005)
**HUSCH BLACKWELL LLP**
1801 Wewatta Street, Suite 1000
Denver, CO 80202
T: 303.749.7200; F: 303.749.7272
Email: david.stauss@huschblackwell.com

Caleb T. Holzaepfel, Esq. (admitted *pro hac vice*)
**HUSCH BLACKWELL LLP**
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
T: 423.755.2654; F: 423.266.5500
Email:  caleb.holzaepfel@huschblackwell.com

*Attorneys for Safety National Casualty Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of February, 2025, a true and correct copy of Safety National's *Objection* has been electronically filed with the Court via the CM/ECF system and will be served by electronic means through the CM/ECF system to the below and to all registered CM/ECF participants.

| Debtors' Counsel | Counsel to the Plan Administrator |
| --- | --- |
| Kirkland & Ellis LLP | Robert J. Feinstein |
| Attn: Joshua A. Sussberg, | Bradford J. Sandler |
| Attn: Emily E. Geier | Pachulski Stang Ziehl & Jones LLP |
| Attn: Derek I. Hunter | 780 Third Avenue, 34th Floor |
| 601 Lexington Avenue | New York, NY 10017 |
| New York, New York 10022 | rfeinstein@pszjlaw.com |
| joshua.sussberg@kirkland.com | bsandler@pszjlaw.com |
| emily.geier@kirkland.com | |

derek.hunter@kirkland.com

<u>United States Trustee</u>
Fran B. Steele, Esq.
Alexandria Nikolinos
One Newark Center, Suite 2100
Newark, NJ 07102
Fran.B.Steele@usdoj.gov
alexandria.nikolinos@usdoj.gov

<u>Debtors' Counsel</u>
Cole Schotz P.C.
Michael D. Sirota
Warren A. Usatine
Felice R. Yudkin
25 Main Street Hackensack
New Jersey 07601
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

<u>Counsel to Laura Alevy and David Alevy</u>
Christopher D. Loizides, Esq.
Loizides, P.A.
1225 King Street, Suite 800
Wilmington, Delaware 19801
loizides@loizides.com

*/s/ David Stauss*
David Stauss (NJ I.D. #013862005)