<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:     rfeinstein@pszjlaw.com
           bsandler@pszjlaw.com
           plabov@pszjlaw.com
           crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

</td></tr>
</table>

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

## PLAN ADMINISTRATOR'S THIRD MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the

"Debtors"), moves this Court for the entry of an order, substantially in the form attached hereto

as **Exhibit A**, pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy

Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

Rule 3007-1(c) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), extending the period within which the Plan Administrator may object to Claims of all priority levels (including but not limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims) and Interests to the latter of: (a) September 29, 2025 or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim.[3] In support of this Motion, the Plan Administrator respectfully represents as follows:

## JURISDICTION

1.     The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested are Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c).

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A.     General Background

3.     On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

[4] The facts in this Motion are supported by the Declaration of Michael Goldberg (the "Goldberg Declaration"), which is attached hereto as **Exhibit B**.

1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

4.      Pursuant to the Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief [Docket No. 584] (the "Bar Date Order"), the Court set (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); and (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"). Pursuant to the Plan and the Bar Date Order, October 13, 2023, was the last date by which creditors asserting claims entitled to administrative priority pursuant to Bankruptcy Code section 503 were required to file requests for payment ("Administrative Claims Bar Date").[5] Professional Fee Claims were required to be filed by October 29, 2023.

5.      On September 14, 2023 (the "Confirmation Date"), the Court entered the Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates [Docket No. 2172] (the "Confirmation Order"), confirming the Second

---

[5] Bar Date Order, ¶ 6; Plan, Article I.A, at § 12.  The Confirmation Order further provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates [Docket No. 2160] (the "Plan").

6.      On September 29, 2023, the effective date of the Plan occurred (the "Effective Date") [Docket No. 2311]. On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims.[6]

## B.    The Claims

7.      As of February 24, 2025, creditors have filed 20,621 proofs of claim against the Debtors ("Total Claims"). The current amount of asserted General Unsecured Claims is $3,032,437,467.51.  Since the Effective Date, 1,447 Claims that asserted some portion as Secured, Administrative or Priority have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims; 1,597 of such Claims remain active. While the Plan Administrator and his Professionals have concluded that many (if not most) of the Claims that assert Administrative, Priority and Secured status are overstated and/or should be reclassified as Class 6 General Unsecured Claims, according to the official claims register generated by the Debtors' claims and noticing agent, Kroll, the Current Asserted Amount[7] of such claims are listed below.

---

[6] Pursuant to the Plan, "Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator and the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court." Plan, Article IV.B.

[7] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00. The reduction and allowance of the Texas Tax Claims and the California

| Administrative, Priority and Secured Claims Summary as of 2/24/2025 | |
|---|---|
| **Claim Type** | **Current Asserted Amount** |
| Administrative Claims (11 U.S.C. § 503)[8] | **$42.9 million** |
| Priority Claims (11 U.S.C. § 507) | **$558.1 million** |
| Secured Claims (11 U.S.C. § 506) | **$62.5 million** |

**C.**    **Allowance of Claims**

8.    Pursuant to the Plan, unless a Court order has been entered Allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed.[9]

9.    Pursuant to the Plan, the Plan Administrator originally had until March 27, 2024 to object to Claims (the "Claim Objection Bar Date").[10]  Pursuant to an order entered on March

---

Tax Claims (discussed below) is not yet reflected in the Current Asserted Amount of the Priority, Administrative and/or Secured Claims figures.

[8] This figure does not includes $3,166,393 for Administrative Claims asserted by way of motion that do not appear to have corresponding proofs of claim on the Kroll register. More specifically, there are 12 requests for payments of Administrative Claims that were filed on the docket on which hearings have not yet been set [Docket Nos. 2460, 2459, 2458, 2457, 2456, 2447, 2446, 2444, 2443, 2441, 2439, 2430] (the "Administrative Payment Motions"). The Plan Administrator filed a protective objection on October 19, 2023 [Docket No. 2513]. Four of the movants in the Administrative Payment Motions (totaling $3,166,393.00) do not appear to have corresponding proofs of claim on the Kroll register: (i) Pinnacle Hills LLC [Docket No. 2443] $771,144.95; (ii) Avalara, Inc. [Docket No. 2446] $29,621.30; (iii) Google LLC [Docket No. 2447] $2,339,378.82, and (iv) DDRTC Marketplace at Mill Creek LLC [Docket No. 2457] $26,248.36. The term "Administrative Claims" as used in this Motion and Order includes Administrative Claims that are asserted by way of an Administrative Payment Motion.

[9] The Plan provides, "Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim." Plan, Article IV, at § A. "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed) . . . provided that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order." Plan, Article I.A, at § 14.

19, 2024 [Docket No. 2933] (the "First Extension Order"), the Court extended the Claims

Objection Bar Date to September 30, 2024. On September 29, 2024, the Court entered the

*Second Order Extending the Period Within Which the Plan Administrator May Object to Claims*

[Docket No. 3541] (the "Second Extension Order") extending the Claims Objection Bar Date

from September 30, 2024 through March 31, 2025 (the "Second Extension Period").  The

Second Extension Order further provided, "This Order shall be without prejudice to the rights of

the Plan Administrator to seek further extensions of the Claims Objection Bar Date." For the

reasons set forth below, this Motion seeks such an extension.

## D.    Payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims (Class 1), and Allowed Other Secured Claims (Class 2)

10.     The Plan contemplates payment of Allowed Administrative Claims on the

Effective Date (if Allowed at that time) or as they become Allowed.[11] The Plan contemplates

payment of Allowed Priority Tax Claims in regular monthly installments over 5 years in

accordance with 11 U.S.C. § 1129(a)(9)(c). *See* Plan, Article II.A.[12] However, payment on

account of Allowed Administrative Claims and Allowed Priority Tax Claims (as well as Allowed

---

[10] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28.

[11] The Plan provides, "[E]ach Holder of an Allowed Administrative Claims shall be paid the unpaid portion of its Allowed Administrative Claim from the Combined Reserve on the latest of: (a) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable;. . . . Holders of Allowed Administrative Claims shall receive payment in full from (a) first, the Combined Reserve; (ii) second, the Shared Proceeds Pool; and (iii) third, any remaining Distributable Proceeds after payment in full of all Allowed DIP Claims and Allowed FILO Claims." Plan, Article II.A.

[12] Section 1129(a)(9) requires a plan to provide, "(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash— (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii)in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))." 11 U.S.C.§ 1129(a)(9)(c).

Other Priority Claims (Class 1), and Allowed Other Secured Claims (Class 2)) is limited to (a) first, the funds in the Combined Reserve; and (b) second, the availability of funds under the Plan's Sharing Mechanism in the Waterfall Recovery.

11.     The Plan provides, "The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date." Plan, Article VIII.B. The Plan further provides, "Any contrary provision hereof notwithstanding, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (i) the Combined Reserve or WARN Reserve as applicable, and (ii) Distributable Proceeds to the extent available from the Waterfall Recovery." Plan, Article IV.C.

12.     ***The Combined Reserve:*** The Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2), totaled $10 million when it was turned over to the Plan Administrator on the Effective Date.[13] $2.8 million of the Combined Reserve was subject to a set aside for the Texas

---

[13] The "*Combined Reserve*" means "the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the terms of the Final DIP Order, in the aggregate amount of $15 million less any amounts paid from the Combined Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." Plan, Article I.A, at § 31. "*Priority Claims Reserve*" means "a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $10 million less any amounts that were paid from the Priority Claims Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date." Plan, Article I.A, at § 119. "*Wind-Down Reserve*" means "a reserve with the meaning ascribed to it in the Final DIP Order in the amount of $5 million less any amounts that were paid from the

Taxing Authorities ($1.8 million of which has been drawn to pay the their claims and associated expenses pursuant to court order [Doc. No. 3516].[14] There is currently $2,525,584.54 in Allowed Administrative Claims which are unpaid pending a determination as to the ultimate pool of Allowed Administrative Claims such that the Plan Administrator will be able to determine each Holder's pro rata share of the Combined Reserve.[15]

13.      ***The Sharing Mechanism***: There is a sharing mechanism (the "Sharing Mechanism") under the Plan that has the potential to increase the amount of funds available for distribution to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Other Allowed Priority Claims (Class 1) and Other Secured Claims (Class 2) by allowing the Wind Down Debtors' estates to participate in certain percentage recoveries from Causes of Action which are deposited into a Shared Proceeds Pool.[16] The Sharing Mechanism, however, does not kick in until the "Initial Sharing Threshold" is met. The Initial Sharing Threshold is, "the point in time at which the combined aggregate recoveries to Holders of Allowed Claims in Classes 3 and 4 exceeds $515,000,000.00, *plus* interest and fees on account of such Claims." *See* Plan, Article I.A(81).[17]

---

Wind-Down Reserve pursuant to and consistent with the terms of the Plan prior to the Effective Date." Plan, Article I.A, at § 157.

[14] *See* Confirmation Order, at ¶ 141. ("The Debtors and Texas Taxing Authorities shall, within five Business Days of entry of the Confirmation Order, mutually agree to a holdback amount from the Combined Reserve, which amount shall be between $500,000 and $2.8 million, for the payment of Texas Tax Claims, with all parties' rights reserved as to the ultimate amount of such Texas Tax Claims").

[15] The WARN Reserve was $0.00 prior to the Effective Date; therefore, no WARN Reserve was turned over to the Plan Administrator.

[16] The "'*Shared Proceeds Pool*' means all funds allocated to the Debtors or the applicable Successor Entity, as applicable, in accordance with the Sharing Mechanism." Plan, Article I.A(143).

[17] The Plan Provides, "On or after the Effective Date, the Debtors shall make distributions on account of Allowed Claims in accordance with Article III.B herein using the Distributable Proceeds. In accordance with the Final DIP Order, (a) Distributable Proceeds of Prepetition Collateral shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority: (i) *first*, on account of Allowed FILO Claims; (ii) *second*, on account of DIP Claims; (iii) *third*, on account of Allowed Administrative Claims (other than DIP Claims) and Priority Tax Claims; (iv) *fourth*, on account of Allowed Other Secured Claims; (v) *fifth*, on account of Allowed Other Priority Claims; (vi) *sixth*, on account of any Allowed Junior Secured Claims; and (vii) *seventh*, on account of any Allowed

14.     Prior to the Effective Date, the Plan Administrator understands that the Debtors

paid $226.9 million to the Holders of the Allowed DIP Claims (Class 3) and the Allowed FILO

Claims (Class 4). Since the Effective Date, the Plan Administrator has made payments totaling

$112.7 million on account of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims

General Unsecured Claims; and (b) Distributable Proceeds of DIP Collateral that does not constitute Prepetition Collateral shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority: (i) *first*, on account of Allowed DIP Claims; (ii) *second*, on account of Allowed FILO Claims; (iii) *third*, on account of Allowed Administrative Claims (other than DIP Claims) and Priority Tax Claims; (iv) *fourth*, on account of Allowed Other Secured Claims; (v) *fifth*, on account of Allowed Other Priority Claims; (vi) *sixth*, on account of any Allowed Junior Secured Claims; and (vii) *seventh*, on account of any Allowed General Unsecured Claims (collectively, the "Waterfall Recovery"); *provided* that the foregoing shall be subject to paragraph 60 of the Final DIP Order, which provides that: (x) prior to the Initial Sharing Threshold, 100% of the proceeds of DIP Collateral and Prepetition Collateral shall be distributed to holders of Allowed DIP Claims or Allowed FILO Claims, as applicable; (y); whereupon the Initial Sharing Threshold is reached and until the Secondary Sharing Threshold is reached, (i) 80% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 20% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (ii) 60% of the proceeds of the D&O Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 40% of the proceeds of the D&O Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable, (iii) 50% of the proceeds of the Other Liability Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Other Liability Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (iv) 50% of the proceeds of the Interchange Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Interchange Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (v) 100% of the proceeds of the Preference Actions shall be distributed to the Debtors or the applicable Successor Entity, as applicable; and (vi) 100% of the proceeds of Prepetition Collateral and DIP Collateral not enumerated in clauses (i)-(vi) of the foregoing shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable; and (z) whereupon the Secondary Sharing Threshold is reached, (i) 65% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 35% of the proceeds of the Shipping and Price Gouging Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (ii) 50% of the proceeds of the D&O Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the D&O Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable, (iii) 50% of the proceeds of the Other Liability Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Other Liability Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (iv) 50% of the proceeds of the Interchange Claims shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 50% of the proceeds of the Interchange Claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable; (v) 100% of the proceeds of the Preference Actions shall be distributed to the Debtors or the applicable Successor Entity, as applicable; and (vi) 80% of the proceeds of Prepetition Collateral and DIP Collateral not enumerated in clauses (i)-(vi) of the foregoing shall be distributed to Holders of Allowed FILO Claims or Allowed DIP Claims, as applicable, and 20% of the proceeds of such claims shall be distributed to the Debtors or the applicable Successor Entity, as applicable (the foregoing clauses (x) and (y), the "Sharing Mechanism"); *provided*, *further*, that pursuant to this Plan, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (a) the Combined Reserve or WARN Reserve as applicable, and (b) Distributable Proceeds to the extent available from the Waterfall Recovery. For the avoidance of doubt, Holders of Allowed FILO Claims or Allowed DIP Claims shall not receive any recovery from the Shared Proceeds Pool after Payment in Full (as defined in the Final DIP Order) of the DIP Claims and FILO Claims." Plan, Article IV.B.

(Class 4).[18] Accordingly, the Initial Sharing Threshold has not been met, and there are $0.00

Distributable Proceeds in the Shared Proceeds Pool.[19]

**E.**     **Collections**

15.     Since his appointment, the Plan Administrator and his Professionals have been

diligently working to recover Assets, prosecute Causes of Action and increase the likelihood of

producing Distributable Proceeds under the Sharing Mechanism.

16.     The Plan Administrator has filed 253 preference actions as adversary proceedings

in this Court (the "Preference Actions") pursuant to which he seeks to recover preferential

payments (gross of attorneys' fees and costs) of $130.8 million. As of February 24, 2025,

106 Preference Actions are still pending. To date, the Plan Administrator has collected $16.7

million in preference recoveries (net of fees and costs).

17.     The Plan Administrator has also initiated the following additional causes of

action, all of which remain pending and in various stages of litigation:  (i) *In re Bed, Bath &*

*Beyond, Inc. et al (Goldberg v. New Jersey Economic Development Authority),* Adv. No. 24-

01443 ( (Bankr. D.N.J. June 3, 2024) (seeks to recover $19.3 million in refunds); (ii) *In re Bed,*

*Bath & Beyond, Inc. et al (Goldberg v. Internal Revenue Service),* Adv. No. 24-01533 (Bankr.

D.N.J. August 16, 2024) (seeks to recover $22.9 million in refunds); (iii) *20230930-DK-*

---

[18] This figure is net of the Plan Administrator's Wind Down Expenses and associated post-confirmation Professional fees and expenses. *See* Plan, Article II (B)(4)( "Post-Confirmation Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtors or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.").

[19] "*Distributable Proceeds*" means "subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve." *See* Plan, Article I.A, at § 58.

*Butterfly-1, Inc., v. HBC Investments LLC et al*, Case No. 24-cv-3370, (S.D.N.Y. May 2, 2024)

(alleges in excess of $310  million in damages); (iv) *20230930-DK-Butterfly-1, Inc. v. Ryan*

*Cohen et al*. (S.D.N.Y. August 1, 2024) (alleges in excess of $47 million in damages); (v)

*20230930-DK-Butterfly-1, Inc. v. Edelman et al*., Case No. 652164/2024 (Sup.Ct. N.Y. York,

April 26, 2024) (alleging in excess of $343 million in damages).[20]

18.    The Plan Administrator has also collected and liquidated other Assets. More

specifically, he has collected $17.9 million in credit reserve returns, $13.2 million in various tax

refunds, $32.2 million in release of cash and collateral associated with LPT transactions, $12.8

million in release of customs collateral, $14.1 million in vendor refunds and rebates, and

$26.8 million in miscellaneous sales and recoveries.

**F.    Claims Resolution & Objections.**

19.    During the Second Extension Prior, the Plan Administrator has continued to focus

primarily on reconciling, negotiating and objecting to Claims that assert administrative, priority

and/or or secured status.

20.    *Tax Claims*. The Plan Administrator has identified 484 proofs of claim as claims

filed by taxing authorities that allege that they are entitled to Priority, Secured or Administrative

status (the "Tax Claims"). The Plan Administrator and his Professionals continue to work to

resolve them with the appraisal districts and comptrollers in 46 states, as well as with the Internal

Revenue Service and Puerto Rico. Numerous taxing authorities are holding refunds that are owed

to the Debtors (the "Tax Refunds"), and are claiming a right of setoff.  Accordingly, the Plan

Administrator is prioritizing those claims in connection with the recovery of the Tax Refunds.

---

[20] The Plan Administrator is also prosecuting other litigation, including litigation commenced prior to the Effective
Date.

21.     *Customer Claims:* During the Second Extension Period, the Plan Administrator obtained orders reclassifying approximately 1,100 claims based on customer refunds and customer gift cards (the "Customer Claims") that asserted Secured, Priority, and/or Administrative status as Class 6 General Unsecured Claims [Doc. Nos. 3540, 3676, 3696, 3730, 3731, 3732, 3733, 3734, 3735, 3736, 3737, 3738, and 3739].  The Plan Administrator and his Professionals have identified another 182 Customer Claims that assert Secured, Priority, and/or Administrative status . The Plan Administrator and his Professionals are in the process of reviewing these claims and will file objections where appropriate.

22.     *Landlord Claims*: The Plan Administrator and his Professionals have identified 265 claims filed by the Debtors' former landlords (the "Landlords") based on leases of non-residential real property that assert Priority, Secured or Administrative status (the "Landlord Claims"). The Plan Administrator and his Professionals are in the process of reviewing these claims and will file objections where appropriate. As a general matter, however, the Plan Administrator is informed and believes that all post-petition rent owing to the Landlords was paid prior to the Effective Date.

23.     *Trade Claims:* The Plan Administrator and his Professionals identified 241 proofs of claims filed by vendors that assert some portion as a Priority, Administrative or Secured (the "Trade Claims"), and are in the process of reviewing and preparing objections (where appropriate) to the Trade Claims. Numerous Trade Claims assert some portion is entitled to priority under Bankruptcy Code section 503(b)(9) (the "503(b)(9) Claims").  On April 12, 2024, the Plan Administrator obtained an order denying 503(b)(9) status to goods that were drop-shipped from the vendor to the Debtors' customers. [Docket No. 2967]. The Plan Administrator and his Professionals are in the process of reviewing and preparing objections (where

appropriate) to the remaining 503(b)(9) Claims, numerous of which have the same issue with respect to drop-shipment.

24.    *Personal Injury Claims*: As the Court is aware, due to the fact that the Debtors were self insured up to $1 million (including defense costs), while the vast majority of personal injury claims (the "PI Claims") will be uninsured Class 6 General Unsecured Claims, the defense costs associated with liquidating those claims will be paid in hundred cent dollars. Accordingly, the Plan Administrator has tried to approach PI Claims in the most cost effective way possible. To that end, during the Second Extension Period, the Plan Administrator and his Professionals (a) sought and obtained an order allowing certain PI Claims as Class 6 General Unsecured Claims [Doc. No 3740]; (b) entered into a stipulated order resolving the motion for relief from stay brought by personal injury claimant Akdemir [Doc. Nos. 3672, 3728]; (c) entered into a stipulated order with personal injury claimant and relief from stay movant Duczkowsk that provided a framework for mediation. [Doc. Nos. 3581, 3588]; and (d) entered into a stipulated order with personal injury claimant and relief from stay movant Zeve that provided a framework for mediation. [Doc. Nos. 3692, 3694].

25.    *Bondholder Claims*: The Plan Administrator and his Professionals have identified 53 proofs of claims filed as "bondholder" claims that assert some portion is entitled to Priority, Administrative or Secured status (the "Bondholder Claims") and are in the process of reviewing and preparing objections (where appropriate). As a general matter, to the extent that the Bondholder Claims are based on 2014 Senior Unsecured Notes Claim, the Plan unequivocally treats such claims as Class 6 General Unsecured Claims and such claims should be reclassified.[21]

---

[21] '2014 Senior Unsecured Notes' means, collectively: (a) the 3.479% senior unsecured notes due August 1, 2024, in the currently outstanding principle amount of $215.4 million; (b) the 4.915% senior unsecured notes due August 1, 2034, in the currently outstanding principle amount of $209.7 million; and (c) the 5.165% senior unsecured notes due August 1, 2044, in the currently outstanding principle amount of $604.8 million, each of which are governed by

26.    *Employee Claims*: The Plan Administrator and his Professionals have identified 140 proofs of claims filed as "employee" claims that assert some portion is entitled to Priority, Administrative or Secured status (the "Employee Claims") and are in the process of reviewing and preparing objections (where appropriate). As a general matter, the Plan Administrator is informed and believes that all obligations to Employees that would have been entitled to priority pursuant to Bankruptcy Code sections 507(a)(4) and (a)(5) and/or Bankruptcy Code section 503(b) were paid by the Debtors prior to the Effective Date.

27.    *Equity Holder Claims*: The Plan Administrator and his Professionals have identified 13 proofs of claims based on equity interests that assert some portion is entitled to Priority, Administrative or Secured status (the "Equity Holder Claims"). He intends to seek an order disallowing such claims on the grounds that all Interests were extinguished under the Plan.[22] In addition, as the Court is aware, during the First Extension Period, an alleged former shareholder who identified himself only as "ML" filed a motion to appoint an equity committee, which the Plan Administrator and the UST opposed.[23] The Court denied the motion on August 21 2024 [Doc. No. 3473]. On September 12, 2024, the Court entered its *Order Granting Plan Administrator's Motion For Sanctions Pursuant to FRBP 9011* pursuant to which the Court ordered ML to pay damages in the amount of $2,500.00 [Doc. No. 3514] (the "Sanctions Order"). ML appealed the Sanctions Order [Doc. 3542, 3544], but failed to file his Designation of Record and Issues on appeal. He has also failed to pay any of the sanctions award.  Finally,

---

the 2014 Notes Indenture." Plan, Article I(A)(2).  "'2014 Senior Unsecured Notes Claim' means any Claim derived from or based upon the 2014 Senior Unsecured Notes." Plan, Article I(A)(2).

[22] '2014 Senior Unsecured Notes' means, collectively: (a) the 3.479% senior unsecured notes due August 1, 2024, in the currently outstanding principle amount of $215.4 million; (b) the 4.915% senior unsecured notes due August 1, 2034, in the currently outstanding principle amount of $209.7 million; and (c) the 5.165% senior unsecured notes due August 1, 2044, in the currently outstanding principle amount of $604.8 million, each of which are governed by the 2014 Notes Indenture." Plan, Article I(A)(2).  "'2014 Senior Unsecured Notes Claim' means any Claim derived from or based upon the 2014 Senior Unsecured Notes." Plan, Article I(A)(2).

[23] *See* Docket Nos. 3312, 3314, 3331, 3332, 3440, 3477.

during the Second Extension Period, the Plan Administrator sought and obtained an order

enforcing the Plan Injunction to prohibit Anthony Mitchell, an alleged former shareholder from

continuing to prosecute lMitchell v. Cohen et al., Case No. 24-cv-01042-RFB-DJA (D. Nev.) in

the United States District Court for the District of Nevada. [Doc. No. 3498]].

## **RELIEF REQUESTED**

28.     By this Motion, and pursuant to Bankruptcy Rule 9006(b)(1) and Local Rule

3007-1(c),[24] the Plan Administrator seeks an extension of the Claims Objection Bar Date to the

latter of: (a) September 29, 2025 or (b) one hundred eighty (180) days following the date that a

Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or

on behalf of a holder of such Claim. The Plan Administrator further requests that the order

approving this Motion be without prejudice to the rights of the Plan Administrator to seek further

extension of the Claims Objection Bar Date.

## **BASIS FOR RELIEF**

29.     As discussed above, the Plan vests the discretion to object to Claims in the Plan

Administrator. Bankruptcy Rule 9006(b) also makes clear that the Court may extend unexpired

time periods with or without notice. Specifically, Rule 9006(b) states in relevant part that:

> (1) *In General* . . . when an act is required or allowed to be done at
> or within a specified period by [the Bankruptcy Rules] or by a
> notice given thereunder or by order of court, the court for cause
> shown may at any time in its discretion . . . with or without motion
> or notice order the period enlarged if the request therefor is made
> before the expiration of the period originally prescribed or as
> extended by a previous order . . .

Fed. R. Bankr. P. 9006(b)(1). The Claims Objection Bar Date has not expired as of the filing of

the Motion; accordingly, the Court is authorized to grant the relief requested herein.

---

[24]    Local Rule 3007-1 governs the timing by which claims objections should be brought. It provides, in relevant part, "A request for an extension of the time to object to the allowance of a claim must be brought by motion filed before the expiration of the time to object."

30.    Since his appointment on September 29, 2023 and as noted in detail above, the

Plan Administrator (with the assistance of his staff and professionals) has, among other things,

(i) worked actively to reconcile and object to Administrative, Priority and Secured Claims; (ii)

worked to collect the Debtors' remaining Assets, such as reserves held by credit card companies,

excess collateral held by insurance companies and taxing authorities, prepayments held by

vendors and refunds owed by the IRS and state and local taxing authorities; (iii) has concluded

Asset sales; (iv) is prosecuting Causes of Action; (v) has negotiated extensively with taxing

authorities over the amounts of alleged Administrative, Priority and Secured tax claims and has

resolved many of those claims; (vi) has  responded to a plethora of motions filed by parties in

interest in the bankruptcy court seeking, *inter alia*, allowance of claims and relief from the

automatic stay; (vi) has prepared and filed Post Confirmation Operating Reports, and (vii) has

made distributions on account of Allowed DIP Claims (Class 3) and Allowed FILO Claims

(Class 4).

31.    Given all of the Plan Administrator's duties and responsibilities and the

magnitude of the asserted Administrative, Priority and Secured Claims, the Plan Administrator

needs additional time to evaluate and object to Claims. The Plan Administrator's first priority

with respect to Claims is reconciling the Administrative Claims and the Priority Tax Claims. The

Plan Administrator is working through the process of evaluating the Administrative Claims for

the purpose of allowance or objection, but perhaps more importantly, the Plan Administrator

needs to determine the realistic pool of Allowed Administrative Claims before he can determine

if the funding of the Combined Reserve is sufficient to allow for payment to holders of Allowed

Administrative Claims (as they become Allowed), while continuing to reserve for unresolved

Administrative Claims given the extraordinary disparity between the funding in the Combined Reserve and the asserted Administrative Claims.

32.      As has been noted previously, absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution Waterfall Recovery set forth in the Plan, it is unlikely that Allowed Administrative Claims will be paid in full, much less Allowed Priority Tax Claims, Allowed Other Priority Claims (Class 1) or Allowed Other Secured Claims (Class 2). To the extent that the Plan Administrator is only able to make a pro rata distribution on account of Allowed Administrative Claims, the Plan Administrator will file a motion seeking appropriate relief to do so.

33.      The Plan Administrator submits that extending the Claims Objection Bar Date is in the best interests of all stakeholders. The extension sought will afford the Plan Administrator and his Professionals an opportunity to make more fully informed decisions concerning the resolution of pending Claims, in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

34.      Furthermore, extension of the Claims Objection Bar Date is not sought coercively for purposes of delay, nor will it affect or prejudice any claimant's substantive defense(s) to any objection. Rather, the extension is intended to promote the efficient administration of these cases and the claims allowance process. Absent the requested extension of the Claims Objection Deadline, the Plan Administrator will either be precluded from challenging invalid, misclassified, and/or overstated Claims, or he will be forced to file hastily prepared protective objections without the benefit of a full review and analysis and will incur the cost of doing so.

35.      For the reasons set forth above, the Plan Administrator submits that extending the Claims Objection Bar Date as to Claims of all priority levels (including but not limited to all

Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for

payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims)

through and including the later of (a) September 29, 2025, or (b) one hundred eighty (180) days

following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or

amended in writing by or on behalf of a holder of such Claim – is necessary, prudent, and in the

best interests of all stakeholders. This is the third requested extension.

### **RESERVATION OF RIGHTS**

36.     The Plan Administrator hereby reserves the right to seek further extension or

extensions of the Claims Objection Bar Date.

### **NOTICE**

37.     Notice of this Motion is governed by paragraph 124 of the Confirmation Order,

which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in
>
> this Confirmation Order, notice of all subsequent pleadings in the Chapter 11
>
> Cases after the Effective Date will be limited to the following parties: (a) the
>
> Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan
>
> Administrator, (d) any party known to be directly affected by the relief sought by
>
> such pleadings; and (e) any party that specifically requests additional notice in
>
> writing to the Debtors or Wind-Down Debtors, as applicable, or files a request
>
> for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and
>
> Claims Agent shall not be required to file updated service lists.

38.     Pursuant to Paragraph 124, notice of the Motion and the hearing thereon was

given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy Rule

2002 after the Effective Date, and (iii) all parties who are registered to receive electronic notice

in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is

sufficient under the circumstances.

WHEREFORE, the Plan Administrator respectfully requests that the Court enter the

Proposed Order, extending the Claims Objection Bar Date as requested herein, and such other

and further relief as is just and proper.

Dated: March 4, 2025

/s/ Bradford J. Sandler
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:(212) 561-7700
Email:rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*

# EXHIBIT A

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| Robert J. Feinstein, Esq. (admitted *pro hac vice*)<br>Bradford J. Sandler, Esq.<br>Paul J. Labov, Esq.<br>Colin R. Robinson, Esq.<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Email:     rfeinstein@pszjlaw.com<br>           bsandler@pszjlaw.com<br>           plabov@pszjlaw.com<br>           crobinson@pszjlaw.com |
| *Counsel to the Plan Administrator* |

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

### THIRD ORDER EXTENDING THE PERIOD WITHIN WHICH
### THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS

The relief set forth on the following pages, numbered two (2) through and including three

(3), is hereby **ORDERED**:

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Debtors:          BED BATH & BEYOND INC., *et al*.
Case No.          23-13359-VFP
Caption of Order: THIRD ORDER EXTENDING THE PERIOD WITHIN WHICH
                  THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS

---

Upon consideration of the *Plan Administrator's Third Motion for Entry of an Order Extending the Period to Object to Claims* (the "Motion") [Docket. No. ____] filed by Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice need be provided; and no objections to the Motion having been filed; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The time period within which the Plan Administrator may file objections to Claims of all priority levels – including but not limited to all Secured Claims, Administrative Claims (whether filed as proofs of claims or as requests for payment and/or motions on the docket), Priority Claims and/or General Unsecured Claims and Interests is extended through and including the later of (a) September 29, 2025, or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or

---

[2]     Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

| | |
|---|---|
| Debtors: | BED BATH & BEYOND INC., *et al.* |
| Case No. | 23-13359-VFP |
| Caption of Order: | THIRD ORDER EXTENDING THE PERIOD WITHIN WHICH THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS |

amended in writing by or on behalf of a holder of such Claim (the "Claims Objection Bar Date").

3.      This Order shall be without prejudice to the rights of the Plan Administrator to seek further extensions of the Claims Objection Bar Date.

4.      This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of this Order in all respects and further to hear and determine all matters arising from the construction and implementation of this Order.

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel for the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF PLAN ADMINISTRATOR MICHAEL GOLDBERG IN SUPPORT OF THIRD MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS

Pursuant to 28 U.S.C. § 1746, I, Michael Goldberg, under penalty of perjury,

declare as follows:

1.    I am the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed

Bath & Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors"). I give this declaration in

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

support of the *Third Motion for Entry of Order Extending Time to Object to Claims*

(the "<u>Motion</u>"). Pursuant to the Motion, I seek entry of an order extending the time to object to

Claims of all priority levels (including but not limited to all Secured Claims, Administrative

Claims - whether filed as proofs of claims or as requests for payment and/or motions on the

docket - Priority Claims and/or General Unsecured Claims and Interests) through and including

September 29, 2025.[3]

        2.     Except as otherwise indicated, the statements in this declaration are based

on: (a) my personal knowledge of the Debtors' business operations since my appointment as

Plan Administrator; (b) my review of relevant documents including the Motion; (c) information

provided to me by, or discussions with, members of my management team, other employees, or

the Debtors' other advisors; and/or (d) my general experience and knowledge. I am authorized

to submit this declaration. If called upon to testify, I can and will testify competently as to the

facts set forth herein.

        3.     As of February 24, 2025, creditors have filed 20,621 proofs of claim against the

Debtors ("<u>Total Claims</u>"). The current amount of asserted General Unsecured Claims is

$3,032,437,467.51. Since the Effective Date, 1,447 Claims that asserted some portion as

Secured, Administrative or Priority have been disallowed, expunged or reclassified as Class 6

General Unsecured Claims; 1,597 of such Claims remain active. While my team and I have

concluded that many (if not most) of the Claims that assert Administrative, Priority and Secured

status are overstated and/or should be reclassified as Class 6 General Unsecured Claims,

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "<u>Plan</u>").

according to the official claims register generated by the Debtors' claims and noticing agent,

Kroll, the Current Asserted Amount[4] of such claims are listed below.

| Administrative, Priority and Secured Claims Summary as of 2/24/2025 | |
|---|---|
| **Claim Type** | **Current Asserted Amount** |
| Administrative Claims (11 U.S.C. § 503)[5] | **$42.9 million** |
| Priority Claims (11 U.S.C. § 507) | **$558.1 million** |
| Secured Claims (11 U.S.C. § 506) | **$62.5 million** |

4.     The Combined Reserve, which is the only guaranteed source of funding for

Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified),

Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2), totaled

$10 million when it was turned over to me on the Effective Date. $2.8 million of the Combined

Reserve was subject to a set aside for the Texas Taxing Authorities ($1.8 million of which has

been drawn to pay the their claims and associated expenses pursuant to court order [Doc. No.

3516]. There is currently $2,525,584.54 in Allowed Administrative Claims which are unpaid

pending a determination as to the ultimate pool of Allowed Administrative Claims such that the

---

[4]     The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00. The reduction and allowance of the Texas Tax Claims and the California Tax Claims (discussed below) is not yet reflected in the Current Asserted Amount of the Priority, Administrative and/or Secured Claims figures.

[5]     This figure does not includes $3,166,393 for Administrative Claims asserted by way of motion that do not appear to have corresponding proofs of claim on the Kroll register. More specifically, there are 12 requests for payments of Administrative Claims that were filed on the docket on which hearings have not yet been set [Docket Nos. 2460, 2459, 2458, 2457, 2456, 2447, 2446, 2444, 2443, 2441, 2439, 2430] (the "Administrative Payment Motions"). The Plan Administrator filed a protective objection on October 19, 2023 [Docket No. 2513]. Four of the movants in the Administrative Payment Motions (totaling $3,166,393.00) do not appear to have corresponding proofs of claim on the Kroll register: (i) Pinnacle Hills LLC [Docket No. 2443] $771,144.95; (ii) Avalara, Inc. [Docket No. 2446] $29,621.30; (iii) Google LLC [Docket No. 2447] $2,339,378.82, and (iv) DDRTC Marketplace at Mill Creek LLC [Docket No. 2457] $26,248.36. The term "Administrative Claims" as used in this Motion and Order includes Administrative Claims that are asserted by way of an Administrative Payment Motion.

Plan Administrator will be able to determine each Holder's pro rata share of the Combined Reserve.[6]

5.      There is a sharing mechanism (the "Sharing Mechanism") under the Plan that has the potential to increase the amount of funds available for distribution to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Other Allowed Priority Claims (Class 1) and Other Secured Claims (Class 2) by allowing the Wind Down Debtors' estates to participate in certain percentage recoveries from Causes of Action which are deposited into a Shared Proceeds Pool. The Sharing Mechanism, however, does not kick in until the "Initial Sharing Threshold" is met. The Initial Sharing Threshold is, "the point in time at which the combined aggregate recoveries to Holders of Allowed Claims in Classes 3 and 4 exceeds $515,000,000.00, *plus* interest and fees on account of such Claims." *See* Plan, Article I.A(81).

6.      Prior to the Effective Date, I am informed and believe that the Debtors paid $ 226.9 million to the Holders of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4). Since the Effective Date, I have made payments totaling $112.7 million on account of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4).[7] Accordingly, the Initial Sharing Threshold has not been met, and there are $0.00 Distributable Proceeds in the Shared Proceeds Pool.

7.      Since my appointment, my team and I have been diligently working to recover Assets, prosecute Causes of Action and increase the likelihood of producing Distributable Proceeds under the Sharing Mechanism.

---

[6] The WARN Reserve was $0.00 prior to the Effective Date; therefore, no WARN Reserve was turned over to me.

[7] This figure is net of the my Wind Down Expenses and associated post-confirmation Professional fees and expenses. *See* Plan, Article II (B)(4).

8.      We have filed 253 preference actions as adversary proceedings in this Court (the "Preference Actions") pursuant to which we seek to recover preferential payments (gross of attorneys' fees and costs) of $130.8 million. As of February 24, 2025, 106 Preference Actions are still pending. To date, we have collected $16.7 million in preference recoveries (net of fees and costs).

9.      I have also initiated the following additional causes of action, all of which remain pending and in various stages of litigation:  (i) *In re Bed, Bath & Beyond, Inc. et al (Goldberg v. New Jersey Economic Development Authority),* Adv. No. 24-01443 ( (Bankr. D.N.J. June 3, 2024) (seeks to recover $19.3 million in refunds); (ii) *In re Bed, Bath & Beyond, Inc. et al (Goldberg v. Internal Revenue Service),* Adv. No. 24-01533 (Bankr. D.N.J. August 16, 2024) (seeks to recover $22.9 million in refunds); (iii) *20230930-DK-Butterfly-1, Inc., v. HBC Investments LLC et al*, Case No. 24-cv-3370, (S.D.N.Y. May 2, 2024) (alleges in excess of $310 million in damages); (iv) *20230930-DK-Butterfly-1, Inc. v. Ryan Cohen et al*. (S.D.N.Y. August 1, 2024) (alleges in excess of $47 million in damages); (v) *20230930-DK-Butterfly-1, Inc. v. Edelman et al*., Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024) (alleging in excess of $343 million in damages).[8]

10.     We have collected and liquidated other Assets. More specifically, we have collected $17.9 million in credit reserve returns, $13.2 million in various tax refunds, $32.2 million in release of cash and collateral associated with LPT transactions, $12.8 million in release of customs collateral, $14.1 million in vendor refunds and rebates, and $26.8 million in miscellaneous sales and recoveries.

---

[8] We are also prosecuting other litigation, including litigation commenced prior to the Effective Date.

11.    During the Second Extension Prior, my team and I have continued to focus primarily on reconciling, negotiating and objecting to Claims that assert administrative, priority and/or or secured status.

12.    *Tax Claims*. We have identified 484 proofs of claim as claims filed by taxing authorities that allege that they are entitled to Priority, Secured or Administrative status (the "Tax Claims"). We are continuing to work to resolve them with the appraisal districts and comptrollers in 46 states, as well as with the Internal Revenue Service and Puerto Rico. Numerous taxing authorities are holding refunds that are owed to the Debtors (the "Tax Refunds"), and are claiming a right of setoff.  Accordingly, we are prioritizing those claims in connection with the recovery of the Tax Refunds.

*13.    Customer Claims:* During the Second Extension Period, my team and I obtained orders reclassifying approximately 1,100 claims based on customer refunds and customer gift cards (the "Customer Claims") that asserted Secured, Priority, and/or Administrative status as Class 6 General Unsecured Claims [Doc. Nos. 3540, 3676, 3696, 3730, 3731, 3732, 3733, 3734, 3735, 3736, 3737, 3738, and 3739].  We have have identified another 182 Customer Claims that assert Secured, Priority, and/or Administrative status . We are in the process of reviewing these claims and will file objections where appropriate.

14.    *Landlord Claims*: My team and I have identified  265 claims filed by the Debtors' former landlords (the "Landlords") based on leases of non-residential real property that assert Priority, Secured or Administrative status (the "Landlord Claims"). We are in the process of reviewing these claims and will file objections where appropriate. As a general matter, however, I am informed and believe that all post-petition rent owing to the Landlords was paid prior to the Effective Date.

15.     *Trade Claims:* My team and I have identified 241 proofs of claims filed by vendors that assert some portion as a Priority, Administrative or Secured (the "Trade Claims"), and are in the process of reviewing and preparing objections (where appropriate). Numerous Trade Claims assert some portion as entitled to priority under Bankruptcy Code section 503(b)(9) (the "503(b)(9) Claims"). On April 12, 2024, I obtained an order denying 503(b)(9) status to goods that were drop-shipped from the vendor to the Debtors' customers. [Docket No. 2967]. My team and I are in the process of reviewing and preparing objections (where appropriate) to the remaining 503(b)(9) Claims, numerous of which have the same issue with respect to drop-shipment.

16.     *Personal Injury Claims*: As the Court is aware, due to the fact that the Debtors were self insured up to $1 million (including defense costs), while the vast majority of personal injury claims (the "PI Claims") will be uninsured Class 6 General Unsecured Claims, the defense costs associated with liquidating those claims will be paid in hundred cent dollars. Accordingly, I have tried to approach PI Claims in the most cost effective way possible. To that end, during the Second Extension Period, my team and I: (a) sought and obtained an order allowing certain PI Claims as Class 6 General Unsecured Claims [Doc. No 3740]; (b) entered into a stipulated order resolving the motion for relief from stay brought by personal injury claimant Akdemir [Doc. Nos. 3672, 3728]; (c) entered into a stipulated order with personal injury claimant and relief from stay movant Duczkowsk that provided a framework for mediation. [Doc. Nos. 3581, 3588]; and (d) entered into a stipulated order with personal injury claimant and relief from stay movant Zeve that provided a framework for mediation. [Doc. Nos. 3692, 3694].

17.     *Bondholder Claims*: My team and I have identified 53 proofs of claims filed as "bondholder" claims that assert some portion is entitled to Priority, Administrative or Secured

status (the "Bondholder Claims") and are in the process of reviewing and preparing objections

(where appropriate). As a general matter, to the extent that the Bondholder Claims are based on

2014 Senior Unsecured Notes Claim,  the Plan unequivocally treats such claims as Class 6

General Unsecured Claims and such claims should be reclassified.

18.     *Employee Claims*: My team and I have identified 140 proofs of claims filed as

"employee" claims that assert some portion is entitled to Priority, Administrative or Secured

status (the "Employee Claims") and are in the process of reviewing and preparing objections

(where appropriate). As a general matter, I am informed and believes that all obligations to

Employees that would have been entitled to priority pursuant to Bankruptcy Code sections

507(a)(4) and (a)(5) and/or Bankruptcy Code section 503(b) were paid by the Debtors prior to

the Effective Date.

19.     *Equity Holder Claims*: My team and I have identified 13 proofs of claims based

on equity interests that assert some portion is entitled to Priority, Administrative or Secured

status (the "Equity Holder Claims"). We intend to seek an order disallowing such claims on the

grounds that all Interests were extinguished under the Plan. As the Court is aware, during the

First Extension Period, an alleged former shareholder who identified himself only as "ML" filed

a motion to appoint an equity committee, which the UST and I opposed.[9] The Court denied the

motion on August 21 2024 [Doc. No. 3473]. On September 12, 2024, the Court entered its *Order*

*Granting Plan Administrator's Motion For Sanctions Pursuant to FRBP 9011* pursuant to which

the Court ordered ML to pay damages in the amount of $2,500.00 [Doc. No. 3514] (the

"Sanctions Order"). ML appealed the Sanctions Order [Doc. 3542, 3544], but failed to file his

Designation of Record and Issues on appeal. He has also failed to pay any of the sanctions

award.  Finally, during the Second Extension Period, I sought and obtained an order enforcing

---

[9] *See* Docket Nos. 3312, 3314, 3331, 3332, 3440, 3477.

the Plan Injunction to prohibit Anthony Mitchell, an alleged former shareholder from continuing

to prosecute lMitchell v. Cohen et al., Case No. 24-cv-01042-RFB-DJA (D. Nev.) in the United

States District Court for the District of Nevada. [Doc. No. 3498]].

20.    Since my appointment on September 29, 2023 and as noted in detail above, my

team and I have, among other things, (i) worked actively to reconcile and object to

Administrative, Priority and Secured Claims; (ii) worked to collect the Debtors' remaining

Assets, such as reserves held by credit card companies, excess collateral held by insurance

companies and taxing authorities, prepayments held by vendors and refunds owed by the IRS

and state and local taxing authorities; (iii) concluded Asset sales; (iv) are prosecuting Causes of

Action; (v) have negotiated extensively with taxing authorities over the amounts of alleged

Administrative, Priority and Secured tax claims and has resolved many of those claims; (vi) have

responded to a plethora of motions filed by parties in interest in the bankruptcy court seeking,

*inter alia*, allowance of claims and relief from the automatic stay; (vi) have prepared and filed

Post Confirmation Operating Reports, and (vii) have made distributions on account of Allowed

DIP Claims (Class 3) and Allowed FILO Claims (Class 4).

21.    Given all of the my duties and responsibilities and the magnitude of the asserted

Administrative, Priority and Secured Claims, I need additional time to evaluate and object to

Claims. My first priority with respect to Claims is reconciling the Administrative Claims and the

Priority Tax Claims. My team and I are working through the process of evaluating the

Administrative Claims for the purpose of allowance or objection, but perhaps more importantly,

I need to determine the realistic pool of Allowed Administrative Claims before I can determine if

the funding of the Combined Reserve is sufficient to allow for payment to holders of Allowed

Administrative Claims (as they become Allowed), while continuing to reserve for unresolved

Administrative Claims given the extraordinary disparity between the funding in the Combined

Reserve and the asserted Administrative Claims.

22.     As has been noted previously, absent a significant reduction in the asserted

Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the

distribution Waterfall Recovery set forth in the Plan, it is unlikely that Allowed Administrative

Claims will be paid in full, much less Allowed Priority Tax Claims, Allowed Other Priority

Claims (Class 1) or Allowed Other Secured Claims (Class 2). To the extent that the I am only

able to make a pro rata distribution on account of Allowed Administrative Claims, I will file a

motion seeking appropriate relief to do so.

23.     Extending the Claims Objection Bar Date is in the best interests of all

stakeholders. The extension sought will afford my professionals and I an opportunity to make

more fully informed decisions concerning the resolution of pending Claims, in the interests of

ensuring ratable distributions among and maximizing value for legitimate creditors. This is the

third requested extension.


I declare under penalty of perjury that the foregoing statements are true and correct to the best of
my knowledge, information and belief.

Dated: March 4, 2025                         */s/ Michael Goldberg*_____
                                            By: Michael Goldberg
                                            In His Capacity as Plan Administrator to 20230930-
                                            DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond
                                            Inc.) and 73 affiliated debtors