> **THIS OMNIBUS OBJECTION SEEKS TO RECLASSIFY CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT 1</u> ATTACHED TO THE PROPOSED ORDER.**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> Robert J. Feinstein, Esq. (admitted *pro hac vice*) <br> Bradford J. Sandler, Esq. <br> Paul J. Labov, Esq. <br> Colin R. Robinson, Esq. <br> PACHULSKI STANG ZIEHL & JONES LLP <br> 780 Third Avenue, 34th Floor <br> New York, NY 10017 <br> Telephone: (212) 561-7700 <br> Facsimile: (212) 561-7777 <br> Email: rfeinstein@pszjlaw.com <br>　　　　bsandler@pszjlaw.com <br>　　　　plabov@pszjlaw.com <br>　　　　crobinson@pszjlaw.com <br><br> *Counsel to the Plan Administrator* | |
| In re: <br><br> BED BATH & BEYOND INC., *et al.*,[1] <br><br>　　　　　　　　　　　Debtors. | Chapter 11 <br><br> Case No. 23-13359 (VFP) <br><br> (Jointly Administered) <br><br> **Hearing Date:　　　April 22, 2025** <br> **Hearing Time:　　　10:00 a.m. (ET)** <br> **Response Deadline: April 15, 2025** <br><br> **ORAL ARGUMENT WAIVED UNLESS RESPONSES ARE TIMELY FILED** |

**PLAN ADMINISTRATOR'S
FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIMS
(<u>Reclassify Bondholder Claims to Class 6 General Unsecured Claims</u>)**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4900-7966-5440.2 08728.003

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), files his *Fifteenth Omnibus Objection (Substantive) to Certain Claims (Reclassify Bondholder Claims to Class 6 General Unsecured Claims)* (the "Objection").[3] Pursuant to the Objection, the Plan Administrator moves the Court for entry an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), that reclassifies each claim listed on **Exhibit 1** to the Proposed Order (the "Disputed Claims") as a Class 6 General Unsecured Claim. The holder of each Disputed Claim (each a "Claimant") has filed a proof of claim that asserts a claim under the 2014 Senior Unsecured Notes (as defined by the Plan) which the Plan unequivocally treats as a Class 6 General Unsecured Claim. Each Claimant, however, contends that its claim is entitled to treatment as either: (i) a priority unsecured claim pursuant to Bankruptcy Code section 507(a); (ii) an administrative claim pursuant to Bankruptcy Code section 503(b), or (iii) a secured claim. For the reasons set forth below, each Disputed Claim should be reclassified as a Class 6 General Unsecured Claim. At this time, the Plan Administrator merely seeks a reclassification of each Disputed Claim and does not seek to disallow or reduce the amount of any Disputed Claim. He reserves the right to do so pursuant to future objection. In support of the Objection, the Plan Administrator respectfully states as follows:[4]

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

[4] The Objection is supported by the Declaration of Michael Goldberg attached as **Exhibit B** (the "Goldberg Dec.").

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Plan Administrator confirms consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Objection are sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

**BACKGROUND**

**A.    General Background**

4. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

5. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a*

*Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").

6. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). [Doc. No. 2311] On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims.[5]

7. The Plan Administrator currently has until March 31, 2025 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[6] On March 4, 2025, the Plan Administrator filed his *Third Motion for Order Extending the Period to Object to Claims* [Doc. No. 3928, 3929] (the "Extension Motion"), pursuant to he seeks to extend the Claims Objection Bar Date to September 29, 2025. Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed.[7]

---

[5] Pursuant to the Plan, "Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court." Plan, Article IV, at § B.

[6] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28. The original Claims Objection Bar Date was March 27, 2024. The Court extended the deadline to September 30, 2024 [Doc. No. 2933] and then to March 31, 2025 [Doc. No. 3541].

[7] The Plan provides, "Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases

4900-7966-5440.2 08728.003                     4

8. As of February 24, 2025, creditors have filed 20,621 proofs of claim against the Debtors ("Total Claims"), including over thirteen hundred (1,300) claims that assert administrative status pursuant to Bankruptcy Code section 503(b), over thirteen hundred (1,300) that assert priority pursuant to Bankruptcy Code section 507 and over six hundred (600) that alleged they are secured. The current amount of asserted Class 6 General Unsecured Claims is over $3 billion.

B. **Schedules and Claims Process**

9. On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

10. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

---

before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim." Plan, Article IV, at § A. "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed) . . . provided that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order." Plan, Article I.A, at § 14.

11. The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules, as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim (the "Rejection Damages Bar Date").

12. With respect to Administrative Claims, the Bar Date Order provides:

> Except as otherwise provided herein, all persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert an Administrative Expense Claim pursuant to 503(b), other than claims arising pursuant to section 503(b)(9), or 507(a)(2), shall submit a written proof of such Claim so that it is actually received by the Notice and Claims Agent before (a) on July 7, 2023 for claims incurred through June 27, 2023, (b) for all claims arising after June 27, 2023, on the 15th day of the month following the month in which the claim arose, and (c) fourteen days following the effective date of any confirmed plan (the "Administrative Claims Bar Date"), in accordance with this Bar Date Order; provided, however, that notwithstanding anything to the contrary herein, counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected— shall be required to file Administrative Claims no later than July 21, 2023.

Bar Date Order, ¶ 6.[8] The Effective Date of the Plan was September 29, 2023, so the last Administrative Claims Bar Date for claims incurred after July 7, 2023 was October 13, 2023.

13. On June 5, 2023, the Debtors caused a bar date notice to be published in The New York Times. [Doc. No. 638.] With the assistance of Kroll Restructuring Administration LLC (the "Claims Agent"), on May 31, 2023, the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the Case Management Order. [Doc. No. 893]. The Bar Date Order and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims Agent at https://restructuring.ra.kroll.com/bbby.

14. In the ordinary course of business, including subsequent to the Petition Date, the Debtors maintained books and records (the "Books and Records") that reflect, among other things, the nature and amount of the liabilities owed to their creditors. The Plan Administrator and his professionals (including the Claims Agent) are in the process of reviewing, comparing, and reconciling proofs of claim (including any supporting documentation) with the Debtors' Schedules and its Books and Records. This reconciliation process includes identifying particular Claims and categories of Claims that may be subject to objection.

C. **The Disputed Claims**

15. According to the Debtors' Disclosure Statement, pre-petition debtor Bed Bath & Beyond, Inc. was obligated under the three tranches of unsecured debt securities: (a) **3.479%**

---

[8] The Confirmation Order provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

**senior notes due 2024 (the "2024 Notes"):** On July 17, 2014, Bed Bath & Beyond issued $300 million of 3.478% senior unsecured notes due August 1, 2024 (approximately $215.4 million of which remains outstanding as of the Petition Date). No other Debtor guaranteed or was otherwise obligated under the 2024 Notes. (b) **4.915% senior notes due 2034 (the "2034 Notes"):** On July 17, 2014, Bed Bath & Beyond, Inc. issued $300 million of 4.915% senior unsecured notes due August 1, 2034 (approximately $209.7 million of which remained outstanding as of the Petition Date). No other Debtor guaranteed or was otherwise obligated under the 2034 Notes. (c) **5.165% senior notes due 2044 (the "2044 Notes"):** On July 17, 2014, Bed Bath & Beyond issued $900 million of 5.165% senior unsecured notes due August 1, 2044 (approximately $604.8 million of which remains outstanding as of the Petition Date). No other Debtor guaranteed or was otherwise obligated under the 2044 Notes. *See* Disclosure Statement [Doc. No. 1713 at 57].

16. The Plan defined the 2024 Notes, the 2034 Notes and the 2044 Notes as the "2014 Senior Unsecured Notes." Plan, Article I(A)(2). ("'2014 Senior Unsecured Notes' means, collectively: (a) the 3.479% senior unsecured notes due August 1, 2024, in the currently outstanding principle amount of $215.4 million; (b) the 4.915% senior unsecured notes due August 1, 2034, in the currently outstanding principle amount of $209.7 million; and (c) the 5.165% senior unsecured notes due August 1, 2044, in the currently outstanding principle amount of $604.8 million, each of which are governed by the 2014 Notes Indenture."). It further defined the "2014 Senior Unsecured Notes Claim" as "any Claim derived from or based upon the 2014 Senior Unsecured Notes." Id.

17. The Plan unequivocally treats 2014 Senior Unsecured Notes Claims as Class 6 General Unsecured Claims. It provides:

> "General Unsecured Claim" means any Claim other than (a) an Administrative Claim, (b) an Other Secured Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a FILO Claim, (f) a Junior Secured Claim, (g) an Intercompany Claim, (h) a DIP Claim, or (i) an ABL Claim; provided, however, that any Junior Secured Deficiency Claim shall be a General Unsecured Claim. ***For the avoidance of doubt, General Unsecured Claims include the 2014 Senior Unsecured Notes Claims.***

Plan, Article I(77) (emphasis added).

18. Each Disputed Claim identified on Exhibit 1 to the Proposed Order has been identified by the Plan Administrator and his Professionals as a 2014 Senior Unsecured Notes Claim that asserts (i) a priority unsecured claim pursuant to Bankruptcy Code section 507(a); (ii) an administrative claim pursuant to Bankruptcy Code section 503(b), and/or or (iii) a secured claim. Pursuant to the Plan, sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rules 3007-1, 3007-2, and 9013-1, the Plan Administrator asks the Court to reclassify each of the Disputed Claims as a Class 6 General Unsecured Claim.[9]

---

[9] Bankruptcy Rule 3007(e) authorizes the Plan Administrator to join up to 100 claims in an omnibus objection where the objection is based on the grounds that the claims: (1) duplicate other claims; (2) have been filed in the wrong case; (3) have been amended by subsequently filed proofs of claim; (4) were not timely filed; (5) have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (7) are interests, rather than claims; or (8) assert priority in an amount that exceeds the maximum amount under §507 of the Code. Fed. R. Bankr. P. 3007(d)-(e). District of New Jersey Local Bankruptcy Rule 3007-1 expands the permissible categories for omnibus objections. It provides, "An omnibus objection to claims may be filed to reduce the amount of a claim or to modify a claim's priority status." D.N.J. LBR 3007-2. *See* 2017 Comment to D.N.J. LBR 3007-2 ("This Rule is new. Promulgated under Bankruptcy Rule 3007(c), the rule expands the grounds upon which an omnibus objection may be based beyond those set forth under Bankruptcy Rule 3007(d).")

**RELIEF REQUESTED**

19. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The Plan Administrator has the right and the duty to object to the allowance of any Claim that is improper. *See* Plan, Article IV, at § B; 11 U.S.C. § 1106(a)(1).

20. When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). A proof of claim filed in accordance with section 501 of the Bankruptcy Code and the Bankruptcy Rules typically constitutes "prima facie evidence of the validity and amount of the claim." Fed R. Bankr. P. 3001(f). To receive the benefit of prima facie validity, however, the proof of claim must "allege facts sufficient to support the claim." *Allegheny*, 954 F.2d at 167 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."). Initially, the burden of proof lies on the claimant; if the claimant supports his claim with sufficient facts or documentation, the claim is deemed prima facie valid. *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 697 (Bankr. D. Del. 2016) (*citing Allegheny*, 954 F.2d at 173–74); *Lampe v. Lampe,* 665 F.3d 506, 514 (3d Cir. 2011).

21. A party wishing to dispute a claim that meets the burden of prima facie validity must produce evidence in sufficient force to negate the claim's prima facie validity. *Allegheny*, 954 F.2d at 173. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his

or her claim by a preponderance of the evidence. *Id*. at 174. Ultimately, the burden of persuasion is on the claimant. *Id*.

22. The Plan Administrator asks the Court to reclassify each of the Disputed Claims identified on **Exhibit 1** to the Proposed Order as Class 6 General Unsecured Claims for the following reasons:

(a) Under the Plan, 2014 Senior Unsecured Notes Claims are treated as Class 6 General Unsecured Claims.

(b) To the extent that any Claimant asserted secured status, the Claimant did not (and can not) provide any evidence of security given the Plan treatment. Even assuming arguendo that the Plan treatment were not dispositive (which it is), no Claimant has met its burden to provide evidence of security.[10]

(c) To the extent that any Claimant asserted priority status pursuant to 11 U.S.C. § 507, the Claimant did not (and can not) establish priority given the Plan treatment. Even assuming arguendo that the Plan treatment were not dispositive (which it is), no Claimant has established that any Disputed Claim qualifies for priority treatment under any subsection of 11 U.S.C. § 507.

(d) To the extent that any Claimant asserted administrative status pursuant to 11 U.S.C. §§ 507(a)(2) and 503(b), the Claimant did not (and can not) establish administrative status given the Plan treatment. Even assuming arguendo that the

---

[10] Bankruptcy Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Fed. R. Bankr. P. 3001(d). If a creditor cannot demonstrate that its claim is secured by a lien or other security interest in the property of the debtor's estate, the claim must be treated as unsecured.

Plan treatment were not dispositive (which it is), no Claimant has established that any Disputed Claim arose from a post-petition transaction with the Debtors and that the Disputed Claim provided an actual and concrete benefit to the Debtors' estates.[11]

(e) To the extent that any Claimant asserted administrative status pursuant to 11 U.S.C. §§ 507(a)(2) and 503(b)(9), the Claimant did not (and can not) establish administrative status given the Plan treatment.[12] Even assuming arguendo that the Plan treatment were not dispositive (which it is), no Claimant has established that (i) that it sold goods to the Debtors; (ii) the goods were received by the Debtors within twenty days prior to filing; and (iii) the goods were sold to the Debtors in the ordinary course of business.[13]

23. Accordingly, each Disputed Claims on **Exhibit 1** to the Proposed Order should be reclassified as a Class 6 General Unsecured Claim.

---

[11] Section 503 states, in relevant part, "After notice and a hearing, there shall be allowed administrative expenses, . . . including – (1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). To establish administrative expense priority the burden is on the claimant to demonstrate that the obligation claimed as an administrative expenses (1) arose out a post-petition transaction with the debtor in possession and (2) directly and substantially benefitted the estate. *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999). The administrative claimant carries "'the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.'" *Id*. at 534 (*quoting In re O'Brien Environmental Energy, Inc.*, No. 94-26723, slip op. at 30 (Bankr. D.N.J. Nov. 8, 1996)); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 172-73 (3rd Cir. 2012) ("The party asserting an administrative expense claim bears the burden of demonstrating that it deserves administrative expense status.").

[12] Section 503(b)(9) provides, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . . including---the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

[13] *See In re Goody's Family Clothing, Inc*., 401 B.R. 131, 133 (Bankr. D. Del. 2009).

## SEPARATE CONTESTED MATTERS

24. Each claim subject to this Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by this Court will be deemed a separate order with respect to such claim.

## RESERVATION OF RIGHTS

25. Nothing contained in this Objection or any actions taken by the Plan Administrator pursuant to the relief requested herein is intended or should be construed as (a) an admission as to the validity or amount of any claim against the Debtors; (b) a waiver of the Plan Administrator's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

26. The Plan Administrator expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to any other claims (filed or not) that may be asserted. Should one or more of the grounds of objection stated in this Objection be overruled, the Plan Administrator reserves the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits.

## NOTICE

27. Notice of this Objection is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent

pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

28. Pursuant to Paragraph 124, notice of the Objection and the hearing thereon was given to (i) the Claimants holding the Disputed Claims listed on **Exhibit 1** to the Proposed Order at the addresses set forth for notice on the Disputed Claims (which addresses have been redacted for privacy for individual Claimants); (ii) the U.S. Trustee; (iii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iv) all parties who are registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances

## NO PRIOR REQUEST

29. No prior request for the relief sought in this Objection has been made to this or any other court.

## **CONCLUSION**

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order attached as **Exhibit A**, reclassifying each of the Disputed Claims listed on **Exhibit 1** as a Class 6 General Unsecured Claim and granting such other and further relief as is just and proper under the circumstances.

Dated: March 13, 2025

*/s/ Bradford J. Sandler*
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
        bsandler@pszjlaw.com
        plabov@pszjlaw.com
        crobinson@pszjlaw.com

*Counsel to the Plan Administrator*