| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Bradford J. Sandler<br>Paul J. Labov<br>Colin R. Robinson<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>**Hearing Date:**     **April 22, 2025**<br>**Hearing Time:**     **10:00 a.m. (ET)**<br>**Response Deadline:**  **April 15, 2025**<br><br>**ORAL ARGUMENT WAIVED**<br>**UNLESS RESPONSES ARE**<br>**TIMELY FILED** |

**PLAN ADMINISTRATOR'S OBJECTION TO CLAIMS**
**FILED BY MING CHE**

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the Certificate *of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly

affiliated debtors (the "Debtors") files this *Objection to the Claims Filed by Ming Che* (the "Objection").[3] Pursuant to the Objection and the Declaration of Michael Goldberg attached as **Exhibit A** (the "Goldberg Dec."), the Plan Administrator moves the Court for entry an order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Order") (a) disallowing the following claims: (i) Claim 4443 (filed against BBBYCF LLC), (ii) Claim 4519 (filed against BBB Value Services Inc.), (iii) Claim 4520 (filed against BWAO LLC), (iv) Claim 4775 (filed against Chef C Holdings LLC), (v) Claim 4841 (filed against BBBY Management Corporation), (vi) Claim 4938 (filed against Buy Buy Baby, Inc.), (vii) Claim 5173 (filed against Bed Bath & Beyond of California Limited Liability Company), (viii) Claim 6149 (filed against Decorist, LLC), (ix) Claim 6171 (filed against Harmon Stores, Inc.), (x) Claim 6662 (filed against BBB Canada LP Inc.), (xi) Claim 7440 (filed against BBBYTF LLC), (xii) Claim 7441 (filed against bed 'n bath Stores Inc.), and (xiii) Claim 8492 (filed against Liberty Procurement Co. Inc.) in their entirety (the "Disallowed Claims"), and (b) reclassifying Claim 8343 (filed against Bed Bath & Beyond, Inc.) as a Class 6 General Unsecured Claim (the "Reclassified Claim"). (The Disallowed Claims and the Reclassified Claim are, collectively, the "Disputed Claims").

As is further detailed on Exhibit 1 to the Declaration of Michael Goldberg, Ming Che ("Claimant") filed 14 identical proofs of claim against 14 different Debtors for $865,000.00 each ($3,350.00 of which is alleged to be entitled to priority pursuant to Bankruptcy Code section 507(a)(7)). Each of the Disputed Claims is a 2014 Senior Unsecured Notes Claim (as defined by the Plan), which the Plan unequivocally treats as a Class 6 General Unsecured Claim. In addition, the only Debtor who was liable on the 2014 Senior Unsecured Notes was debtor Bed

---

known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms use but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

4922-5574-3782.2 08728.003                                      2

Bath & Beyond, Inc. ("BBB"). Accordingly, the Plan Administrator requests an order disallowing each Disallowed Claim and reclassifying the Reclassified Claim as a Class 6 General Unsecured Claim.[4] In support of the Objection, the Plan Administrator respectfully states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Plan Administrator confirms consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Objection are sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## BACKGROUND

**A.    General Background**

4. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to

---

[4] A true and correct copy of Claim 8343 (redacted to hide private financial and personal information) is attached as **Exhibit 2** to the Goldberg Declaration.

operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

5. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").

6. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). [Doc. No. 2311] On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims.[5]

7. The Plan Administrator currently has until March 31, 2025 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[6] On March 4, 2025, the Plan Administrator filed his *Third Motion for Order Extending the Period to Object to Claims* [Doc. No. 3928, 3929] (the "Extension

---

[5] Pursuant to the Plan, "Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court." Plan, Article IV, at § B.

[6] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28. The original Claims Objection Bar Date was March 27, 2024. The Court extended the deadline to September 30, 2024 [Doc. No. 2933] and then to March 31, 2025 [Doc. No. 3541].

Motion"), pursuant to he seeks to extend the Claims Objection Bar Date to September 29, 2025. Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed.[7]

8.  As of February 24, 2025, creditors have filed 20,621 proofs of claim against the Debtors ("Total Claims"), including over thirteen hundred (1,300) claims that assert administrative status pursuant to Bankruptcy Code section 503(b), over thirteen hundred (1,300) that assert priority pursuant to Bankruptcy Code section 507 and over six hundred (600) that alleged they are secured. The current amount of asserted Class 6 General Unsecured Claims is over $3 billion.

**B.  Schedules and Claims Process**

9.  On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

10.  On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II)*

---

[7] The Plan provides, "Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim." Plan, Article IV, at § A. "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed) . . . provided that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order." Plan, Article I.A, at § 14.

*Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

11. The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules, as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim (the "Rejection Damages Bar Date").

12. With respect to Administrative Claims, the Bar Date Order provides:

> Except as otherwise provided herein, all persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert an Administrative Expense Claim pursuant to 503(b), other than claims arising pursuant to section 503(b)(9), or 507(a)(2), shall submit a written proof of such Claim so that it is actually received by the Notice and Claims Agent before (a) on July 7, 2023 for claims incurred through June 27, 2023, (b) for all claims arising

after June 27, 2023, on the 15th day of the month following the month in which the claim arose, and (c) fourteen days following the effective date of any confirmed plan (the "Administrative Claims Bar Date"), in accordance with this Bar Date Order; provided, however, that notwithstanding anything to the contrary herein, counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected— shall be required to file Administrative Claims no later than July 21, 2023.

Bar Date Order, ¶ 6.[8] The Effective Date of the Plan was September 29, 2023, so the last Administrative Claims Bar Date for claims incurred after July 7, 2023 was October 13, 2023.

13. On June 5, 2023, the Debtors caused a bar date notice to be published in The New York Times. [Doc. No. 638.] With the assistance of Kroll Restructuring Administration LLC (the "Claims and Noticing Agent"), on May 31, 2023, the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the Case Management Order. [Doc. No. 893]. The Bar Date Order and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/bbby.

14. In the ordinary course of business, including subsequent to the Petition Date, the Debtors maintained books and records (the "Books and Records") that reflect, among other things, the nature and amount of the liabilities owed to their creditors. The Plan Administrator and his professionals (including the Claims Agent) are in the process of reviewing, comparing, and reconciling proofs of claim (including any supporting documentation) with the Debtors'

---

[8] The Confirmation Order provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

Schedules and its Books and Records. This reconciliation process includes identifying particular Claims and categories of Claims that may be subject to objection.

**C.     The Disputed Claims**

15.     According to the Debtors' Disclosure Statement, pre-petition debtor Bed Bath & Beyond, Inc. was obligated under the three tranches of unsecured debt securities: (a) **3.479% senior notes due 2024 (the "2024 Notes"):** On July 17, 2014, Bed Bath & Beyond issued $300 million of 3.478% senior unsecured notes due August 1, 2024 (approximately $215.4 million of which remains outstanding as of the Petition Date). No other Debtor guaranteed or was otherwise obligated under the 2024 Notes. (b) **4.915% senior notes due 2034 (the "2034 Notes"):** On July 17, 2014, Bed Bath & Beyond, Inc. issued $300 million of 4.915% senior unsecured notes due August 1, 2034 (approximately $209.7 million of which remained outstanding as of the Petition Date). No other Debtor guaranteed or was otherwise obligated under the 2034 Notes. (c) **5.165% senior notes due 2044 (the "2044 Notes"):** On July 17, 2014, Bed Bath & Beyond issued $900 million of 5.165% senior unsecured notes due August 1, 2044 (approximately $604.8 million of which remains outstanding as of the Petition Date). No other Debtor guaranteed or was otherwise obligated under the 2044 Notes. Disclosure Statement [Doc. No. 1713 at 57].

16.     The Plan defined the 2024 Notes, the 2034 Notes and the 2044 Notes as he "2014 Senior Unsecured Notes."[9] It further defined the "2014 Senior Unsecured Notes Claim" as "any Claim derived from or based upon the 2014 Senior Unsecured Notes." Id.

17.     The Plan unequivocally treats 2014 Senior Unsecured Notes Claims as Class 6 General Unsecured Claims:

---

[9] Plan, Article I(A)(2) provides, "'2014 Senior Unsecured Notes' means, collectively: (a) the 3.479% senior unsecured notes due August 1, 2024, in the currently outstanding principle amount of $215.4 million; (b) the 4.915% senior unsecured notes due August 1, 2034, in the currently outstanding principle amount of $209.7 million; and (c) the 5.165% senior unsecured notes due August 1, 2044, in the currently outstanding principle amount of $604.8 million, each of which are governed by the 2014 Notes Indenture."

> "General Unsecured Claim" means any Claim other than (a) an Administrative Claim, (b) an Other Secured Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a FILO Claim, (f) a Junior Secured Claim, (g) an Intercompany Claim, (h) a DIP Claim, or (i) an ABL Claim; provided, however, that any Junior Secured Deficiency Claim shall be a General Unsecured Claim. ***For the avoidance of doubt, General Unsecured Claims include the 2014 Senior Unsecured Notes Claims.***

Plan, Article I(77) (emphasis added).

18. Each of the Disputed Claims is a 2014 Unsecured Notes Claim. As is further detailed on Exhibit 1 to the Goldberg Declaration, Claimant filed 14 identical proofs of claim for $865,000.00 each ($3,350.00 of which Claimant alleges is entitled to priority pursuant to Bankruptcy Code section 507(a)(7)) for a total of $12,110,000.00 (with $46,900 alleged as priority). The face of the Disputed Claims state that the basis is "Investment in 2024 Notes due Aug 2024". The attachments to the Disputed Claims show: (a) an individual investment account holding (as of May 31, 2023), a quantity of $389,000 of Bed Bath & Beyond bonds (CUSIP 075896AA8) with a maturity date of 8/1/2024 and (b) a SEP-IRA account holding (as of May 31, 2023), a quantity of $476,000 of Bed Bath & Beyond bonds (CUSIP 075896AA8) with a maturity date of 8/1/2024.

19. The Disallowed Claims should be expunged because none of the Debtors against which the Disallowed Claims are asserted are obligors on or guarantors of the 2014 Senior Unsecured Notes. The Reclassified Claim (the only claim filed against BBB) should be reclassified as a Class 6 General Unsecured Claim as required by the Plan.

## BASIS FOR RELIEF

20. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . .

objects." 11 U.S.C. § 502(a). The Plan Administrator has the right and the duty to object to the allowance of any Claim that is improper. *See* Plan, Article IV, at § B; 11 U.S.C. § 1106(a)(1).

21. When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). A proof of claim filed in accordance with section 501 of the Bankruptcy Code and the Bankruptcy Rules typically constitutes "prima facie evidence of the validity and amount of the claim." Fed R. Bankr. P. 3001(f). To receive the benefit of prima facie validity, however, the proof of claim must "allege facts sufficient to support the claim." *Allegheny*, 954 F.2d at 167 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."). Initially, the burden of proof lies on the claimant; if the claimant supports his claim with sufficient facts or documentation, the claim is deemed prima facie valid. *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 697 (Bankr. D. Del. 2016) (*citing Allegheny*, 954 F.2d at 173–74); *Lampe v. Lampe,* 665 F.3d 506, 514 (3d Cir. 2011).

22. A party wishing to dispute a claim that meets the burden of prima facie validity must produce evidence in sufficient force to negate the claim's prima facie validity. *Allegheny*, 954 F.2d at 173. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id*. at 174. Ultimately, the burden of persuasion is on the claimant. *Id*.

23. The Plan Administrator objects to the Disallowed Claims on the grounds that they are unenforceable against the Debtors against which they are asserted (11 U.S.C. § 502(b)(1)).

He objects to the Reclassified Claim on the grounds that it is not entitled to pre-petition priority pursuant to the Plan or 11 U.S.C. § 507(a)(7).

A.  **The Disallowed Claims are unenforceable against the Debtors against which they are asserted and their property pursuant to 11 U.S.C. § 502(b)(1).**

24. If an objection to a claim is brought, the Court "shall" determine the amount of the claim as of the petition date and "shall" allow the claim in that amount, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

25. As was noted above, only Debtor BBB was obligated on the 2014 Senior Unsecured Notes. Accordingly, the Disallowed Claims should be disallowed in their entirety because they do not allege facts sufficient to establish any legal liability of the Debtors against whom they were filed to Claimant. To the extent that the Court does not disallow the Disallowed Claims in full, the Plan Administrator requests (for the reasons set forth below) that any allowed amounts be reclassified as Class 6 General Unsecured Claims.

B.  **The Reclassified Claim should be reclassified as a Class 6 General Unsecured Claim as required by the Plan.**

26. Claimant asserts that $3,350.00 of the Reclassified Claim (and each of the Disallowed Claims) is entitled to priority as a deposit pursuant to 11 U.S.C. § 507(a)(7). As was noted above, both the face of the Disputed Claims and the attachments establish that the Disputed Claims allege 2014 Senior Unsecured Note Claims, which the Plan states unequivocally are Class 6 General Unsecured Claims.

27. Even assuming arguendo that the Plan was not dispositive on this issue (which it is), it is obvious from the face of the Disputed Claim that no portion of the claim is related to the "purchase, lease, or rental of property, or the purchase of services, for the personal, family, or

household use of such individuals, that were not delivered or provided."[10] And Claimant has provided no evidence which would support such a finding. Accordingly, the Reclassified Claim should be reclassified as a Class 6 General Unsecured Claim.

## **RESERVATION OF RIGHTS**

28. Nothing contained in this Objection or any actions taken by the Plan Administrator pursuant to the relief requested herein is intended or should be construed as (a) an admission as to the validity or amount of any claim against the Debtors; (b) a waiver of the Plan Administrator's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. The Plan Administrator expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to any other claims (filed or not) that may be asserted. Should one or more of the grounds of objection stated in this Objection be overruled, the Debtors and the Plan Administrator reserve the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits.

## **NOTICE**

29. Notice of this Objection is governed by paragraph 124 of the Confirmation Order, which provides:

---

[10] The following claims are seventh in order of priority, "allowed unsecured claims of individuals, to the extent of $3,350 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7).

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

30. Pursuant to Paragraph 124, notice of the Objection and the hearing thereon was given to (i) the Claimant; (ii) the U.S. Trustee; (iii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iv) all parties who are registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances

## NO PRIOR REQUEST

31. No prior request for the relief sought in this Objection has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order, (1) disallowing and expunging the Disputed Claims, and (2) reclassifying the Reclassified Claim as a Class 6 General Unsecured Claim, and (3) granting such other and further relief as is just and proper under the circumstances.

Dated: March 17, 2025

*/s/ Bradford J. Sandler*
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
**PACHULSKI STANG ZIEHL & JONES LLP**
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: bsandler@pszjlaw.com
plabov@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to the Plan Administrator*