| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Mark Lichtenstein, Esq.<br>AKERMAN LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, NY 10020<br>Telephone:  (212) 880-3800<br>Facsimile:  (212) 880-8965<br>Email:         mark.lichtenstein@akerman.com<br><br>*Counsel to the Plan Administrator* |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>                              Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

### APPLICATION IN LIEU OF MOTION WITH SUPPORTING LAW AND FACTS IN SUPPORT OF ENTRY OF STIPULATION AND CONSENT ORDER BETWEEN PLAN ADMINISTRATOR AND IRON MOUNTAIN

**TO: THE HONORABLE JUDGE VINCENT F. PAPALIA,**
       **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**:

Michael Goldberg, in his capacity as Plan Administrator (the "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (the "Wind-Down Debtors") (also known as Bed Bath & Beyond Inc. and affiliated Debtors, the "Debtors"), pursuant to D.N.J. LBR 919-4(b), submits this application (the "Application") seeking approval and entry of the proposed *Stipulation and Consent Order Resolving Certain Obligations* (the "Stipulation") with Iron Mountain Management LLC ( "Iron Mountain"). A copy of the proposed Stipulation is attached hereto as **Exhibit 1**. In support of the Application, the Plan Administrator respectfully states as follows:

---

[1] The last four digits of Debtor Bed Bath & Beyond, Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

80697758;5

## PROCEDURAL HISTORY

1. On April 23, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 24, 2023, the Court entered an order [Docket No. 75] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases under Bankruptcy Rule 1015(b).

2. On August 1, 2023, the Debtors filed the Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates [Docket No. 1713] (the "Disclosure Statement"). On September 11, 2023, the Debtors filed the Second Amended Joint Chapter 11 Plan [Docket No. 2160] (the "Plan").

3. On September 14, 2023, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Plan [Docket No. 2172] (the "Confirmation Order").

4. The Plan became effective on September 29, 2023 (the "Effective Date"). As of the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors, with responsibility for, among other things, resolving claims, conducting claims reconciliation, and prosecuting claim objections.

5. On July 6, 2023, Iron Mountain filed a proof of claim against the Debtors in the amount of $840,385.55 (Claim No. 11420, the "Claim") relating to the Accounts (defined below). In addition, Iron Mountain asserts that $562,969.29 remains due and owing on a post-petition basis in connection with those Accounts.

6. As of the Effective Date, the Plan Administrator assumed responsibility for resolving claims and administering the wind-down of the Debtors' estates. The Plan Administrator now seeks to resolve Iron Mountain's outstanding balances on the Accounts, including the Closure Costs (each as defined below).

## STATEMENT OF FACTS

7. The Debtors maintained several accounts with Iron Mountain for the storage of physical inventory and electronic data, including two tape storage accounts (Nos. 55113.188278 and 55119.18768, the "Tape Accounts") and one cloud storage account (No. 44090.186297, the "Cloud Account," and together with the Tape Accounts, the "Accounts").

8. Prior to and shortly after Plan confirmation, the Debtors indicated their intent to discontinue storage services with Iron Mountain. However, Iron Mountain continued to store physical inventory and provide cloud services and invoices continue to accrue and remain unpaid.

9. In connection with discussions related to effecting a discontinuance of Iron Mountain's services and a compromise of the amounts due thereunder, Iron Mountain provided the Plan Administrator with cost estimates, based on standard pricing schedules, for retrieving, administering, and destroying the physical inventory, in addition to ongoing post-petition storage fees and charges associated with the Accounts. These estimated closure costs exceed $500,000 (the "Closure Costs").

10. Considering the Debtors' limited estate funds and the significant Closure Costs quoted by Iron Mountain, the Plan Administrator and Iron Mountain engaged in good-faith negotiations concerning the Accounts, the outstanding balances and the Closure Costs. Both parties evaluated the costs and risks associated with litigating the disputes versus reaching a consensual

resolution. The Plan Administrator believes the resulting Stipulation is in the best interests of the Debtors and their estates.

11. The attached Stipulation sets forth in greater detail the terms of the resolution, but there are 3 key terms. *First*, within five (5) days of the Bankruptcy Court's approval of this Stipulation, the Plan Administrator shall pay $30,000.00 (the "Settlement Payment") to Iron Mountain in satisfaction of the Closure Costs. *Second*, upon receipt of the Settlement Payment, Iron Mountain is authorized and directed to destroy all remaining inventory and electronic data in a manner and on a timeline as Iron Mountain determines to be appropriate in its sole discretion. *Third*, following remittance of the Settlement Payment, Iron Mountain shall release all claims it may hold against the Debtors in connection with the Accounts, including the Closure Costs.

## LEGAL ARGUMENT

12. If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. See *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999); *see also In re Martin*, 91 F.3d 389, n.2 (3d Cir. 1996) ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification for the use of estate property. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

13. Here, the Plan Administrator exercised sound business judgment in negotiating a consensual resolution with Iron Mountain for a $30,000 settlement payment. The $30,000 settlement

80697758;5

payment is a small percentage of the amount due under the Accounts and the Closure Costs. In evaluating the relative costs and benefits of litigation versus settlement—particularly in light of financial constraints—the Plan Administrator determined that a consensual resolution would best serve the interests of the estates.

14. In evaluating a settlement, the Court must determine that it is "fair and equitable." *See Protective Comm. for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006). Bankruptcy Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

15. In determining whether the proposed settlement is fair and equitable, two principles should guide this Court. First, "[c]ompromises are favored in bankruptcy," 10 Lawrence P. King, Collier on Bankruptcy, ¶ 9019.01, at 9019–2 (15th ed. rev. 1997) (citing *In re Sassalos*, 160 B.R. 646, 653 (D. Ore. 1993)), and are "a normal part of the reorganization process." *TMT Trailer*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods.*, Co., 308 U.S. 106, 130 (1939)); *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake.").

16. Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the [movant,] but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *see generally In re Blair*, 538 F.2d 849, 851 (9th Cir.

1976) (explaining that a court should not conduct a "mini-trial" on the merits of a proposed settlement).

17. Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis*, 165 B.R. at 123; *In re Tech. for Energy Corp.*, 56 B.R. 307, 311–12 (Bankr. E.D. Tenn. 1985); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985); 10 *Collier on Bankruptcy* ¶ 9019.02, at 9019–4.

18. The Third Circuit specifically sets forth four factors to be considered by the court in determining the fairness, reasonableness, and adequacy of a settlement, as follows: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (reiterating the *Martin* factors); *In re Nutraquest, Inc.*, 434 F. 3d at 644–47 (same).

19. In this case, the four *Martin* factors weigh in favor of approval of the Stipulation. Because (a) there is uncertainty regarding the outcome of potential litigation over the validity and amount of Iron Mountain's Closure Costs and amounts due in connection with the Accounts, (b) even if successful in litigation, the Plan Administrator could face delays and administrative hurdles given the nature of the services, the potential for continued post-petition obligations, and the uncertainty of disposing of the stored inventory and electronic data, (c) litigating the dispute would involve significant costs, delay, and administrative burden to the estate, and (d) the proposed resolution preserves estate resources and allows for efficient wind-down in a manner consistent with the best interests of creditors, the Plan Administrator respectfully submits that the proposed

80697758;5

settlement is fair, equitable, and well within the range of reasonableness required under applicable law.

20. No previous application for the relief sought herein has been made to this or any other Court.

21. **WHEREFORE**, the Plan Administrator respectfully requests that the Court approve the Stipulation and grant the relief requested herein and such other relief as is just and proper under the circumstances.

**Dated:** April 15, 2025

*s/Mark Lichtenstein*, Esq.
AKERMAN LLP
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Telephone:   (212) 880-3800
Facsimile:    (212) 880-8965
Email: mark.lichtenstein@akerman.com

*Counsel to the Plan Administrator*