| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br> Marianna Udem <br> Brigette McGrath <br> ASK LLP <br> 60 East 42nd Street, 46th Floor <br> New York, NY 10165 <br> Telephone: (212) 267-7342 <br> Facsimile: (212) 918-3427 <br> mudem@askllp.com <br> bmcgrath@askllp.com <br><br> *Special Counsel to the Plan Administrator* | |
| In re: <br><br> BED BATH & BEYOND, INC., *et al.*,[1] <br><br>        Debtor. | Chapter 11 <br><br> Case No. 23-13359 (VFP) <br><br> (Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.),[2] <br><br>        Plaintiff, <br><br> v. <br><br> Tabletops Unlimited, Inc., <br><br>        Defendant. | Adv. No. **(VFP)** |

**COMPLAINT TO RECOVER TRANSFERS PURSUANT TO 11 U.S.C. § 542, UNJUST ENRICHMENT AND BREACH OF CONTRACT AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

1

Michael Goldberg, in his capacity as Plan Administrator (the "Plaintiff" or "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) and its affiliated debtors (each, a "Debtor" and collectively, the "Wind-Down Debtors" or "Debtors") in the above-captioned case, files this complaint (the "Complaint") to recover transfers against Tabletops Unlimited, Inc. (the "Defendant"), for turnover of the Debtors' property, unjust enrichment, breach of contract, and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1. Plaintiff seeks to recover damages and freight costs from Defendant incurred by the Debtors for Defendant's goods purchased by the Debtors that arrived damaged. Plaintiff seeks turnover of property of the estate, or the value of such property, in the possession of Defendant pursuant to section 542 of Bankruptcy Code, breach of contract and unjust enrichment.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The underlying chapter 11 bankruptcy case is captioned *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP).

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O). Plaintiff consents to entry of final orders and judgment by the Court.

5. Venue of the Debtors' chapter 11 case and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and legal predicates for the relief sought herein are sections 502, 542, of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

7. On April 23, 2023 (the "Petition Date"), each Debtor, including Bed Bath & Beyond Inc. ("BB&B"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). During the Chapter 11 Cases, the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases were procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).

8. On September 14, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [ECF No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [ECF No. 2160] (as amended, the "Plan").

9. On September 29, 2023, the effective date of the Plan occurred (the "Plan Effective Date"). On the Plan Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors, and all non-released Causes of Action of the Estates

3

automatically vested in the Wind-Down Debtors. *See* Plan, Article IV, at § F. Under Art. I, § A, Non-Released Causes of Action include, among other things, "any claim arising from any contract or for breach of duties imposed by law or in equity," and "any claim based on or related to…breach of contract…"

10. Pursuant to Article XIII of the Plan, the Bankruptcy Court retains exclusive jurisdiction over all matters arising out of, or related to the Chapter 11 Cases and the Plan, including jurisdiction to "resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any Non-Released Claims, including D&O Claims."

## THE PARTIES

11. Pursuant to the Plan and the Confirmation Order, Plaintiff assumed responsibility for, *inter alia*, investigating, prosecuting, and compromising any and all of the Wind Down Debtors' causes of action including claims under chapter 5 of the Bankruptcy Code.

12. Upon information and belief, Defendant was, at all relevant times a vendor or creditor that provided housewares to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business has been and is located at 23000 Avalon Boulevard, Carson, California 90745. Plaintiff is informed and believes, and on that basis, alleges that Defendant is a corporation residing in and subject to the laws of California.

## FACTUAL BACKGROUND

13. As more fully discussed in the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond, Inc. and Its Debtor Affiliates* (the "Disclosure Statement"),[3] the Debtors were the largest home goods retailer in the United States, offering everything from bed linens to cookware to home organization, baby care, and more. At

---

[3] Case No. 23-13359, ECF No. 1690.

4

their peak, the Debtors operated over 970 stores across all 50 states and had additional operations spanning Canada, Mexico, and Puerto Rico.

14.    As with many brick and mortar retailers, the Debtors were very negatively impacted by the COVID-19 pandemic. However, the twelve months prior to the Petition Date were the most difficult and turbulent in the Debtors' storied history. From "meme stock" mania to credit agreement defaults and back again, the Debtors explored various potentially value-maximizing alternatives in an effort to turn around their business and stave off chapter 11. In response to both macroeconomic factors and more specific business challenges, the Debtors' leadership formulated and attempted to implement a turnaround plan that was designed to refocus the business on its founding principles and restore consumer confidence. To that end, the Debtors secured credit agreement waivers and amendments and were able to access the equity markets in February and March of 2023 in a last-ditch effort to avoid bankruptcy. But, in store sales continued to decline—with fourth quarter sales falling by almost $1 billion dollars year over year—and strained vendor credit relationships which led to a lack of inventory. Ultimately, the Debtors were unable to service their funded debt obligations while simultaneously supplying sufficient inventory to their store locations.

15.    As described in Article III, Section B.6 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

16.    Prior to the Petition Date, the Debtors maintained business relationships with various business entities and individuals, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

17.    During the ninety (90) days before and including the Petition Date, that is between January 23, 2023, and April 23, 2023 (the "Preference Period"), the Debtors continued to operate

their business, including the transfer of money, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

18. Upon information and belief, during the course of their relationship, Defendant and one or more of the Debtors entered into agreements for the purchase of houseware goods from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents, including an agreement dated July 14, 2016 (the "Damage Allowance Agreement") and the Vendor Compliance Guide set forth as Exhibit A hereto (collectively, the "Agreements"). The Agreements concerned and related to the goods provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The Damage Allowance Agreement in particular sets forth the chargeback percentages to which the Debtors were entitled based upon damage allowances for damaged goods delivered to the Debtors, and in some cases, advertising allowances and volume of sales allowances. The damages claimed by the Debtors are set forth on the Damage Allowance Summary, which is attached hereto and incorporated by reference as Exhibit B. Such details include "Invoice Date," "Invoice Amount," "Invoice Due Date," and the "Supplier Number."

19. Plaintiff is seeking to recover owed damage allowances, volume allowances, RTV's, deductions, chargebacks and program monies pursuant to the Agreements.

20. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional allowances and deductions the Debtors were entitled to under the Agreement. It is Plaintiff's intention to recover all property of the Debtors in accordance with the Bankruptcy Code and for the benefit of all creditors of the Debtors' estates. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the damage allowances, deductions and rebates (ii) additional transfers, (iii) modifications of and/or revision

to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Turnover of Property or the Value of Such Property – 11 U.S.C. § 542)

21. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

22. Pursuant to the terms of the Agreements, the Debtors were entitled to receive funds for various damages, deductions, chargebacks, rebates and program monies in connection with vendor programs such as damages, rebates, and advertising campaigns, among other things (the "Damage Allowances").

23. During the year 2023, the Debtors incurred $69,039.48 in damages and freight costs allowed as repayment by the Defendant pursuant to the Agreements (the "Turnover Amount") as set forth on Exhibit B.

24. Defendant is currently holding the Turnover Amount in the amount of $69,039.48 as set forth as Exhibit B. The Turnover Amount are damages and freight costs owed by Defendant pursuant to the Agreements.

25. The Turnover Amount constitutes property of one or more of the Debtors' estates under section 541 of the Bankruptcy Code.

26. Defendant has no claim or right to maintain possession of the Turnover Amount.

27. Defendant should be compelled to deliver the Turnover Amount or the value of such Turnover Amount to the Debtors pursuant to 11 U.S.C. § 542.

**Second Claim for Relief**
**(Breach of Contract)**

28. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

29. The Agreements are valid contracts between Defendant and the Debtors.

30. Defendant has failed to fully perform under the Agreements by failing make payment on and/or return no less than $69,039.48 in payments to Debtors for damages, freight costs, deductions, chargebacks and program monies.

31. Debtors have been damaged by Defendant's failure to make contractually obligated payments pursuant to the Agreements in an amount no less than $69,039.48.

**Third Claim for Relief**
**(Unjust Enrichment)**

32. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

33. Debtors provided a benefit to the Defendant, through purchasing the Defendant's goods pursuant to the Agreements.

34. Defendant accepted the benefit by selling its goods to the Debtors.

35. Defendant's retention of the amounts owed for damage allowances, deductions, chargebacks and program monies would be inequitable without payment to Plaintiff for the value of the benefit.

36. As a direct and proximate result of Defendant's unjust enrichment, the Plaintiff has suffered monetary damages, loss of use of monies and costs in bringing this action.

### Fourth Claim for Relief
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

37. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

38. Defendant is currently in possession of the Turnover Amount, which is property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code. Defendant has not turned over such property, and has no right to retain such property.

39. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against Plaintiff or the Debtors must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the Turnover Amount.

40. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Turnover Amount.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief against Defendant:

A. On Plaintiff's First Claim for Relief, that the Court enter an order compelling Defendant to immediately turn over the Turnover Amount or equivalent value;

B. On Plaintiff's Second Claim for Relief, that the Court enter an order compelling Defendant to immediately turn over the Turnover Amount or equivalent value due to Breach of the Contract;

      C.      On Plaintiff's Third Claim for Relief, that the Court enter an order compelling Defendant to immediately turn over the Turnover Amount or equivalent value due to Unjust Enrichment;

      D.      On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors or Plaintiff until Defendant returns the Turnover Amount to Plaintiff pursuant to section 502(d) and (j) of the Bankruptcy Code; and

      E.      Such other and further relief as this Court may deem just and proper.

Dated: April 22, 2025

                                  **ASK LLP**

                                  By: /s/ *Brigette McGrath*
                                  Brigette McGrath Esq., NJ SBN 01000-2011
                                  Gary Underdahl, Esq., MN SBN 0301693
                                  ASK LLP
                                  2600 Eagan Woods Drive, Suite 400
                                  St. Paul, MN  55121
                                  Telephone: (651) 289-3857
                                  Fax: (651) 406-9676
                                  Email: gunderdahl@askllp.com

                                  *-and-*

                                  Marianna Udem, Esq., NJ SBN 03659-2006
                                  60 East 42nd Street, 46th Fl.
                                  New York, NY  10165
                                  Telephone: (212) 267-7342
                                  Fax: (212) 918-3427

                                  *Attorneys for Plaintiff*