| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Bradford J. Sandler, Esq.<br>Paul J. Labov, Esq.<br>Colin R. Robinson, Esq.<br>PACHULSKI STANG ZIEHL & JONES LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>bsandler@pszjlaw.com<br>plabov@pszjlaw.com<br>crobinson@pszjlaw.com<br><br>Peter O. Larsen (*pro hac vice* admission pending)<br>Raye Elliott (*pro hac vice* admission pending)<br>AKERMAN LLP<br>50 North Laura Street, Suite 3100<br>Jacksonville, FL 32202<br>Telephone: (904) 798-3700<br>Facsimile: (904) 798-3730<br>peter.larsen@akerman.com<br>raye.elliott@akerman.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc., *et.al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359(VFP)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc.,<br>Plaintiff,<br><br>v.<br><br>TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, an agency of the State of Texas,<br>Defendant. | Adversary Proceeding No. _____ |

# **COMPLAINT**

80943483;3

Michael Goldberg, in his capacity as Plan Administrator (the "Plan Administrator" or "Plaintiff") for 20230930-DK-Butterfly-1, Inc.[1] f/k/a Bed Bath and Beyond, Inc.[2] and affiliated debtors (the "Debtors"), by and through undersigned counsel, files this adversary complaint against the Texas Comptroller of Public Accounts, an agency of the State of Texas (the "Comptroller") and alleges as follows:

## Nature of the Action

1. The Plan Administrator brings this action against Defendant for turnover of certain tax overpayments made by the Debtors to the Comptroller and for objection to and disallowance of proofs of claim filed in this bankruptcy case by the Comptroller.

## The Parties

2. The Plan Administrator is the sole representative of the Debtors and assumed responsibility for collecting assets of the bankruptcy estate, as more fully set forth in the Debtors' confirmed Chapter 11 Plan as discussed below.

3. Defendant, the Comptroller, is an executive branch agency of the State of Texas, which collects taxes on behalf of the State.

## Jurisdiction and Venue

4. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 505(a).

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

---

[1] Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond, Inc. which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond, Inc." was changed to 20230930-DK-Butterfly, Inc.

[2] The last four digits of Debtor Bed Bath & Beyond, Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/bbby/.

6. Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for relief requested by this Complaint are sections 105, 505, and 542 of title 11, United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 7001, *et. seq.*

## Factual Background

### A. General Case Background

8. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below). No trustee or examiner has been appointed in this case.

9. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. 2160] (as amended, the "Plan").

10. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). *See* Docket No. 2311. On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia,* investigating, prosecuting and compromising any and all of the Debtors' claims and causes of action. *See, e.g.,* Plan at Art. IV.F, VII.A.

**B.    Overpayments to the Comptroller**

11.    Prior to the commencement of these bankruptcy cases, the Debtors were leading retailers throughout the United States and had stores located in the State of Texas.

12.    Pursuant to Texas tax statutes, the Debtors regularly collected and remitted sales taxes to the Comptroller that were due and owing on goods sold by the Debtors.

13.    Texas tax statutes provide retailers with a 1.25% discount on the amount of sales taxes they collect in exchange for the retailers "prepaying" a reasonable estimate of their sales tax liability to the Comptroller in advance of the sales tax due date.

14.    For the periods of March and April, 2023, the Debtor formerly known as Bed Bath & Beyond, Inc. ("BBB") submitted estimated sales taxes to the Comptroller in excess of what it actually owed to the Comptroller in the total amount of $1,351,310.79 (the "BBB Overpayment").

15.    For the period of April, 2023, the Debtor formerly known as Buy Buy Baby, Inc. ("Baby") submitted estimated sales taxes to the Comptroller in excess of what it actually owed to the Comptroller in the amount of $232,578.07 (the "Baby Overpayment" and, together with the BBB Overpayment, the "Overpayments.")

16.    The Comptroller is currently holding the Overpayments and owes these debts to BBB and Baby.

**C.    Schedules and Claims Process**

17.    On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

80943483;3

18. On May 31, 2023, the Court entered the Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief [Doc. No. 584] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

19. The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules, as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim.

20. In the ordinary course of business, including subsequent to the Petition Date, the Debtors maintained books and records (the "Books and Records") that reflect, among other things, the nature and amount of the liabilities owed to their creditors. The Plan Administrator and his professionals (including the Claims Agent) are in the process of reviewing, comparing, and

reconciling proofs of claim (including any supporting documentation) with the Debtors' Schedules and its Books and Records. This reconciliation process includes identifying particular Claims and categories of Claims that may be subject to objection.

**D.    The Sales and Use Tax Claims**

21.    The Comptroller filed Claim 17782 on October 10, 2023 for Debtor BBB in the amount of $3,435,304.58 of which $3,165,643.87 was designated as a priority claim. Claim 17782 consists of (a) a claim for sales and use tax of $1,367,463.10 for the period of September 2017 through October 2019, interest of $321,928.95, and a penalty of $136,746.32; and (b) a claim for sales and use tax of $1,371,697.72 for the period of November 2019 through April 2023, interest of $104,554.10, and a penalty of $132,914.39.

22.    The Comptroller also filed Claim 17781 on October 10, 2023 for Debtor Baby in the amount of $1,286,549.60 of which $1,203,817.69 was designated as a priority claim. Claim 17781 consists of (a) a claim for sales and use tax of $625,118.86 for the period of August 2013 through February 2020, interest of $189,175.70, and a penalty of $62,511.89; (b) a claim for sales and use tax of $362,773.83 for the period of March 2020 through April 2023, interest of $23,587.77, and a penalty of $19,903.86; and (c) a claim for sales and use tax of $535,156.07 for the period of February 2023 and a penalty of $316.16.

23.    The Comptroller filed Claim 16907 on September 12, 2023 for Debtor BBBYTF, LLC ("BBBYTF") in the amount of $942,518.87 of which $868,071.01 was designated as a priority claim.  Claim 16907 consists of (a) a claim for sales and use tax of $585,569.46 for the period of September 2016 through December 2021, interest of $102,592.86, and a penalty of $58,556.95; and (b) a claim for sales and use tax of $175,348 for the period of February 2022 through April 2023, interest of $4,560.69, and a penalty of $15,890.91.

24. Claim 17782, Claim 17781, and Claim 16907 (collectively, the "Sales and Use Tax Claims") are not for the Debtors' failure to collect and remit sales tax to the Comptroller on their sales. Instead, they are amounts the Comptroller claims are due because of errors allegedly made by the Debtors in calculating sales tax, failing to have substantiation for sales for which the Debtors did not collect sales tax because they were sales made to tax exempt organizations, or use tax allegedly due on expenses incurred by the Debtors.

25. The Sales and Use Tax Claims filed by the Comptroller are substantially and/or entirely overstated. The Comptroller filed the Sales and Use Tax Claims as a result of these bankruptcy cases and are based entirely on error rates and estimates of past liability for periods prior to the periods covered by the Claims from prior audits of the Debtors or projections from audit sample periods that do not actually reflect the business or tax liabilities of the Debtors during the periods at issue. The Comptroller did not conduct full or complete audits of BBB, Baby, and BBBYTF for the periods covered by the Sales and Use Tax Claims.

**E.    The Duplicate Franchise Tax Claims**

26. The Comptroller filed Claim 15517 on July 31, 2023 for Debtor BBB in the amount of $847,603.58 as a priority claim for Texas franchise tax owed for fiscal year ending February 28, 2022.

27. The Comptroller also filed Claim 15507 for Debtor Baby, Claim 15512 for Debtor One Kings Lane, LLC, Claim 15515 for Debtor Alamo Bed Bath & Beyond, Inc., Claim 15516 for Debtor BBBYTF, Claim 15518 for Debtor Liberty Procurement Co., Inc., Claim 15519 for Debtor San Antonio Bed Bath & Beyond, Inc., Claim 15522 for Debtor BBB Value Services, Inc., and Claim 17907 for Debtor Deerbrook Bed Bath & Beyond, Inc. all in the amount of $847,603.58

80943483;3

as priority claims for the same Texas franchise tax owed for fiscal year ending February 28, 2022 set forth in Claim 15517.

28. The Comptroller filed Claim 13938 on July 3, 2023 for Debtor BBB in the amount of $423,801.79 as an administrative expense claim for estimated Texas franchise tax owed for fiscal year ending February 28, 2023.

29. The Comptroller also filed Claim 12863 for Debtor San Antonio Bed Bath & Beyond, Inc., Claim 12864 for Debtor One Kings Lane, LLC, Claim 12871 for Debtor Liberty Procurement Co., Inc., Claim 12892 for Debtor BBB Value Services, Inc., Claim 12908 for Debtor BBBYTF, Claim 13939 for Debtor Alamo Bed Bath & Beyond, Inc., Claim 14031 for Debtor Baby, and Claim 17906 for Debtor Deerbrook Bed Bath & Beyond, Inc. also as administrative expense claims for the same estimated Texas franchise tax owed for fiscal year ending February 28, 2023 as set forth in Claim 13938.

## Count I
### (Objection to Sales and Use Tax Claims)

30. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

31. This is an objection to the Sales and Use Tax Claims filed by the Comptroller pursuant to 11 U.S.C. § 502(a) and a request for a determination of the sales and use tax actually owed to the Comptroller pursuant to 11 U.S.C. § 505.

32. The Sales and Use Tax Claims are erroneous, were based on invalid audit methodologies and were also incorrectly based on estimates that had numerous faulty factual assumptions instead of an actual audit of the sales and purchases for the periods covered by the Claims.

33. For BBB, the error rate for Claim 17782 was based on the prior audit period of October 1, 2010 through August 31, 2017 that is not representative of the period covered by Claim 17782.

34. For Baby, the error rate for Claim 17781 was based on the prior audit period of August 1, 2009 through July 31, 2013 that is not representative of the period covered by Claim 17781.

35. For BBBYTF, the error rate for Claim 16907 was based on only two sample months of May 2018 and October 2019 that were not representative of the period covered by Claim 16907 but which were erroneously applied to the whole period of September 2016 through April 2023.

36. The error rates used to make the projections that form the basis of the Sales and Use Tax Claims were grossly incorrect and were not representative of the Debtors' tax compliance and sales and business practices, volumes and compliance for the periods covered by the Sales and Use Tax Claims.

37. As a result of the Covid-19 Pandemic that began in earnest in the United States in March 2020, a considerable amount of BBB's and Baby's sales were made online instead of in-store which were handled by BBBBYTF.

38. From March 2020 to February 2023, approximately 40% to 50% of BBB's and Baby's sales were made online, rather than in stores.

39. BBB and Baby do not make tax exempt sales to tax exempt organizations online because the tax exempt organization must show an exemption certificate issued by the Comptroller proving that they are exempt from Texas sales tax which cannot be done with BBB and Baby online.

40. As a result, BBB's and Baby's sales to tax exempt organizations fell dramatically during and after the pandemic which further caused additional inaccuracies in the Comptroller's estimated error rate from a prior audit.

41. Further, during the pandemic, BBB and Baby implemented a software-based approach toward a stock keeping unit "SKU" taxation which made the Debtors' sales tax collection and reporting far more accurate than it was during the prior audit periods from which the estimated error rates were derived for BBB and Baby. Therefore, the error rates used for the assessments of BBB and Baby are substantially erroneous and do not accurately reflect the tax compliance of BBB and Baby during the periods covered by the Claims.

42. Additionally, BBB and Baby curtailed almost all spending during the pandemic which dramatically reduced the amount spent on expenses and fixed assets. BBB and Baby also stopped building out new stores and stopped remodeling existing stores. Accordingly, the use tax assessed based upon volumes of expenditures and error rates from the prior audit periods was also substantially or entirely overstated.

43. Each of the Sales and Use Tax Claims is overstated because of error rates used from prior audits that are not representative of the claim periods or the use of audit sample periods that are not representative of the entire claim periods.

44. A significant portion of the Sales and Use Tax Claims are for use tax which would not be a priority claim and those portions of the Claims, if found to be valid, should be reclassified as general unsecured claims.

### Count II
**(Objection to Franchise Tax Claims)**

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

10

80943483;3

46. This is an objection to Claims 15507, 15512, 15515, 15516, 15518, 15519, 15522, and Claim 17907 (collectively, the "Duplicate 2022 Franchise Tax Claims") and Claims 12863, 12864, 12871, 12892, 12908, 13939, 14031, 17906 (collectively, the "Duplicate 2023 Franchise Tax Claims").

47. With respect to the Duplicate 2022 Franchise Tax Claims and the Duplicate 2023 Franchise Tax Claims, the Comptroller filed multiple proofs of claim representing a single obligation of the Debtors. As such, the Duplicate 2022 Franchise Tax Claims and the Duplicate 2023 Franchise Tax Claims are not enforceable against the Debtors or their property and should be disallowed.

48. Plaintiff also objects to Claim 13938 as an administrative expense claim because the period covered by the claim is March 1, 2022 through February 28, 2023 which is a prepetition period and therefore not entitled to administrative expense priority.

49. Furthermore, Claim 13938 was filed as an estimate of Texas franchise tax owed by the Debtors prior to the Debtors having filed their franchise tax return for tax year ending February 28, 2023. Claim 13938 should be reduced to the amount set forth in the Debtors' filed Texas franchise tax return which is $321,727.

## Count III
### (Turnover of Overpayments)

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

51. The Comptroller is in possession of the Overpayments.

52. The Overpayments are property of the Debtors' estate under § 541.

53. The Overpayments constitute debts that the Comptroller owes to the Debtors that are property of the estate and that are matured, payable on demand, or payable on order.

54. The Comptroller has indicated that it intends to use the Overpayments as a set off against the Sales and Use Tax Claims as well as the Texas franchise tax claims described in paragraphs 26-29 above (collectively, the "Franchise Tax Claims").

55. If not for the Overpayments, the Sales and Use Tax Claims and the Franchise Tax Claims would ordinarily be paid as unsecured tax claims and/or Priority Tax Claims pursuant to the Plan and Confirmation Order.

56. The Plan provides for payment of Priority Tax Claims from the Combined Reserve which consists of the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay and (V) Granting Related Relief (Doc. 729) (the "Final DIP Order").

57. Pursuant to the Final DIP Order, the Priority Claims Reserve consists of a $10 million reserve to be used to pay Chapter 11 administrative expense claims and Priority Tax Claims.

58. Pursuant to the Order (I) Authorizing the Settlement of Ad Valorem Tax Claims of Texas Taxing Authorities, (II) Authorizing the Use of $2.8 Million Set Aside to Satisfy Claims of Texas Taxing Authorities, and (III) Granting Related Relief (Doc. 2954), $2.8 million of the Priority Claims Reserve was used to pay Texas ad valorem tax claims, leaving $7.2 million in the Priority Claims Reserve.

59. While the Plan Administrator is still in the process of filing objections to many of the Priority Tax Claims, the Plan Administrator does not believe there will be sufficient funds in

80943483;3

the Priority Claims Reserve to fully pay all Chapter 11 administrative expense claims and Priority Tax Claims in full.

60. Under 11 U.S.C. § 553, the application of set off is permissive and is within the equitable discretion of the Court.

61. If the Comptroller is permitted to use the Overpayments to set off against the Sales and Use Tax Claims and Franchise Tax Claims, the Comptroller would be receiving significantly more than other similarly situated Priority Tax and/or Unsecured Claimants.

62. Such use of setoff would not be consistent with the purposes of the Bankruptcy Code as a whole.

63. Accordingly, pursuant to § 542, the Comptroller should be compelled to turn over the Overpayments to the Debtors.

**Prayer for Relief**

WHEREFORE, Michael Goldberg, in his capacity as Plan Administrator respectfully requests and prays that the Court:

i. Pursuant to Count I, enter judgment disallowing the Sales and Use Tax Claims;

ii. Pursuant to Count II, enter judgment disallowing the Duplicate 2022 Franchise Tax Claims and Duplicate 2023 Franchise Tax Claims in their entirety, designating Claim 13938 as a priority claim instead of an administrative expense claim, and reducing claim 13938 to the amount of the Debtors' filed franchise tax return;

iii. Pursuant to Count III, enter judgment compelling the Comptroller to turn over the Overpayments;

iv. Award Plaintiff costs, and expenses of this suit; and

v. Grant the Plaintiff such other and further relief the Court deems just.

Dated: April 23, 2025

                                         */s/ Colin R. Robinson*
                                         Bradford J. Sandler, Esq.
                                         Paul J. Labov, Esq.
                                         Colin R. Robinson, Esq.
                                         **PACHULSKI STANG ZIEHL & JONES LLP**
                                         780 Third Avenue, 34th Floor
                                         New York, NY 10017
                                         Telephone:   (212) 561-7700
                                         Facsimile:    (212) 561-7777
                                         Email:         bsandler@pszjlaw.com
                                                                    plabov@pszjlaw.com
                                                                    crobinson@pszjlaw.com

                                         and

                                         Peter O. Larsen (*pro hac vice* admission pending)
                                         Raye Elliott (*pro hac vice* admission pending)
                                         **AKERMAN LLP**
                                         50 North Laura Street, Suite 3100
                                         Jacksonville, FL 32202
                                         Telephone:   (904) 798-3700
                                         Facsimile:    (904) 798-3730
                                         Email:         peter.larsen@akerman.com
                                                                    raye.elliott@akerman.com

                                         Counsel to the Plan Administrator