## CERTIFICATION IN SUPPORT OF MOTION

I, Jeffrey Mead Kurzon, hereby certify under penalty of perjury as follows:

U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ

2025 MAY 21  P 1: 23

JEANNE A. NAUGHTON
DEPUTY CLERK

1. I am an attorney licensed in the States of New York and Massachusetts. I operate a virtual law firm from my home in Peterborough, NH (not admitted in NH) and have practiced as a business attorney since 2003. While I am not a bankruptcy specialist, I have a working knowledge of constitutional, contractual and property law, and have previously appeared in the U.S. District Court of the Southern District of New York and the Second Circuit Court of Appeals.

2. I was a shareholder of Bed Bath & Beyond Inc. ("BBBY" or "BBBYQ," as the ticker changed during these proceedings) through both direct registration at AST (now Equiniti Trust Company, LLC) and through various brokerage and retirement accounts.

3. As of September 26, 2023, I held 58,008 directly registered shares via BBBY's transfer agent, Equiniti (formerly AST). *(See attached Exhibit A, redacted for personal account information.)*

4. My directly registered shares were initially acquired while residing in New York, NY (February–March 2023), and later Peterborough, NH (April–September 2023). An AST statement dated July 19 reflected 51,935 shares with a market value of $19,719.72. I also held approximately several thousand additional shares in brokerage and retirement accounts.

5. The Debtors' First Day Declaration by Holly Etlin, Chief Restructuring Officer and CFO, states:

"As of the Petition Date, approximately 739,056,836 shares of voting common stock were outstanding."
(See Declaration of Holly Etlin, Dkt. No. 10, ¶ 29, p. 72.)

6. In contrast, the Debtors' contemporaneous motion for postpetition financing states:

"As of the Petition Date, approximately 428,120,000 shares of voting common stock were outstanding."
(See DIP Motion, Dkt. No. 25, ¶ 29, p. 21.)

7. Docket No. 219, the List of Equity Security Holders filed on May 8, 2023, shows that Cede & Co. (FAST Account) alone reported holding 776,404,408 shares of common stock—excluding the shares held directly by registered shareholders like myself.

8. These figures cannot be reconciled. Whether the accurate total is 739 million or 428 million, the 776 million shares reported by Cede & Co. exceed either figure—indicating material oversubscription, synthetic dilution, or both. No reconciliation or audit has explained how the Depository Trust Company's nominee could report holding more shares than were issued or outstanding. To my knowledge, no such reconciliation has occurred.

9. In March 2024, I contacted counsel to the Plan Administrator requesting voluntary production of the shareholder ledger. In response, Mr. Robert Feinstein of Pachulski Stang Ziehl & Jones LLP acknowledged that the Plan Administrator

9

is obligated to investigate third-party claims, but he declined my request and invited me to file a motion.[1]

10. As referenced in my prior letter motion (Dkt. No. 3452), I also have an unresolved dispute with SoFi Securities and its custodian Apex Clearing. In March 2024, I informed Mr. Feinstein of the following:

"I held 1,000 BBBYQ shares with SoFi Securities, custodied by Apex Clearing Corporation. I suspect fraud because they 'sold' the securities for a penny, despite the shares having been canceled. I contend that something which does not exist cannot be sold. They told me to 'pound sand.' I reported the matter to the NH Department of Securities Regulation. If they did this to me, they likely did it to others."
(See Dkt. No. 3452, p. 3.)

10. This incident adds weight to my concerns. It suggests that, following cancellation, some broker-dealers continued transacting in nonexistent shares—raising further questions as to whether share ownership records were ever reconciled.

11. In multiple recent and pending Chapter 11 cases, I have observed a troubling pattern: Debtors, often represented by large law firms with strong ties to Wall Street, routinely seek to seal or withhold the equity holder lists. While legally permissible, such practices prevent transparency and hinder the identification of synthetic share issues. That the Plan Administrator's counsel resisted voluntary disclosure here— despite my valid purpose as both a former shareholder and an attorney investigating fraud—exemplifies the systemic barriers that equity holders face in post-confirmation oversight.

---

[1] Movant reserves the right to submit this correspondence under seal or in camera if the Court deems it necessary.

12. On July 30, 2024, I submitted a letter to the Court (Dkt. No. 3452) highlighting the material discrepancy: Cede & Co. claimed to hold 776 million shares (Dkt. No. 219), while total shares outstanding were only 739 million—or possibly just 428 million, depending on the filing. This discrepancy was never resolved prior to confirmation.

13. The Court acknowledged my letter on August 16, 2024 (Dkt. No. 3463), and directed that I file a formal motion.

14. As of this motion, the Plan Administrator has not produced the AST shareholder ledger as of either the confirmation or equity cancellation date. No reconciliation of Cede & Co.'s reported holdings with the total share count has been made public.

15. The Plan was confirmed on September 14, 2023, and became effective September 29, 2023. (See Kroll Restructuring Case Summary.) Since that time, no explanation has been provided as to how Cede & Co. could have reported holding more shares than were legally outstanding.

16. This failure to reconcile shareholder data—despite ample opportunity—undermines the legitimacy of the plan and may have deprived shareholders of property without due process of law.

17. This is not a speculative grievance. It is a concrete and quantifiable discrepancy. The Plan Administrator's own filings (Dkt. 2631 Attachments 1 and 2) show that approximately 701 million common shares were cancelled as of October 18, 2023. The highest share count ever formally acknowledged by the Debtors was

11

approximately 739 million (Dkt. 10), meaning the cancellation may have been proper—if that figure reflected all outstanding shares, and if no synthetic or duplicate shares remained unaccounted for. However, without the complete ledger as of the cancellation date, this remains unknowable. The Debtors' prior filing (Dkt. 219) listed over 776 million shares held by Cede & Co. as of May 2023, and no public filing has ever reconciled this number with the 701 million ultimately nullified. That lingering 75 million share gap remains unexplained and poses systemic risk. Moreover, this issue carries material implications for the estate. Bed Bath & Beyond spent an estimated $11.7 billion on share buybacks in the years preceding its collapse—resources that could have gone toward long-term stability, employee retention or creditor recovery. As Investopedia reports:

"For example, Bed Bath & Beyond declared bankruptcy in April 2023 after spending **$11.7 billion on share buybacks** from the time of the financial crisis up to its collapse. The company's workforce had shrunk from 65,000 employees in 2017 to just 20,000 in 2023, but it was still spending hundreds of millions buying back stock." (See: https://www.investopedia.com/articles/financial-advisors/121415/stock-buybacks-good-thing-or-not.asp **(emphasis added)** last visited May 19, 2025).

If even a fraction of those buybacks were executed against counterfeit or oversubscribed shares, then the estate may have colorable claims for recovery—claims that would directly benefit creditors and, potentially, equity holders. The accuracy of the equity ledger is therefore critical to assessing the estate's potential assets.

18. I assert my standing under 11 U.S.C. § 1109(b) and respectfully request that the Court ensure the transparency and fiduciary integrity of the Plan Administrator by ordering disclosure and reconciliation.

19. Further, this discrepancy raises significant constitutional concerns:

   **Due Process Clause – Fourteenth Amendment:** Canceling potentially counterfeit shares without verification or shareholder notice deprived equity holders of property without due process.

   **Fifth Amendment – Takings Clause:** Government-sanctioned extinguishment of property rights, without compensation or lawful procedure, may constitute a taking under color of law.

   **Commerce Clause – Article I, Section 8:** At least one of my transactions cleared through Canaccord Genuity, a Canadian investment firm. The cancellation of shares held via international intermediaries raises questions about interstate and international commerce, and whether the equities market infrastructure implicated by the cancellation falls within the scope of federal oversight. These concerns warrant judicial scrutiny and may implicate dormant Commerce Clause doctrines, especially where foreign-cleared equity positions are canceled without individualized notice or reconciliation.

20. Pursuant to 28 U.S.C. § 2403, I reserve the right to request certification of these unresolved constitutional and jurisdictional questions and to seek redress in federal court if necessary.

21. In light of mounting evidence of systemic failure, including the CFTC's recent announcement that staff have been placed on administrative leave pending investigation of potential misconduct (See *CFTC Staff on Leave Pending Investigation*, available at: https://www.cftc.gov/PressRoom/PressReleases/9071-

13

25 (last visited May 19, 2025)), Movant respectfully submits that this case may reflect a broader pattern of regulatory and congressional capture—where agencies entrusted with safeguarding market integrity instead insulated those most responsible for its distortion. Statutes such as 7 U.S.C. § 19 obligate regulators like the CFTC to consider public interest, market efficiency, and investor protection in rulemaking and enforcement. Yet those duties appear to have been abdicated. In such circumstances, the judiciary stands as the last functioning bastion of our constitutional republic, uniquely empowered to uphold the rule of law where administrative and legislative bodies have faltered. The rights at stake—property, contract, and due process—are not merely economic; they are bedrock guarantees of liberty and civic trust. A Court that declines to examine how more shares were canceled than were ever lawfully issued would, in effect, ratify that failure. Movant submits that it is not only within this Court's discretion, but within its constitutional duty, to demand transparency, fidelity, and a truthful reconciliation of the public record.

22. Accordingly, I respectfully request that the Court enter an order:

- (a) compelling the Plan Administrator to produce the AST shareholder ledger as of September 14 and 29, 2023, and

- (b) requiring a written reconciliation of the number of shares reported by Cede & Co. with the actual total outstanding shares.

23. On October 27, 2023, the Plan Administrator's counsel filed two letters with the Court (Dkt. 2631, Attachments 1 and 2), transmitting "Null, Void, and Worthless"

14

instructions to the DTC. These filings confirm that, as of October 18, 2023, the Cede & Co. balance of common stock was 701,290,253 shares, and the preferred stock balance was 170 shares. This reflects a reduction of over 75 million common shares from the 776,404,408 reported by Cede & Co. in the List of Equity Security Holders filed on May 8, 2023 (Dkt. 219). The cause of this drop has never been explained on the public record. While it is possible that the decrease reflects DRS conversions like my own, that assumption remains speculative without access to the full shareholder ledger from Equiniti as of the cancellation date. No party can confirm whether this 75 million-share decline reflects valid redemptions, synthetic exposure collapses, or accounting irregularities. **This uncertainty alone justifies immediate disclosure and reconciliation under the Court's inherent and equitable powers.**

24. On March 27, 2024, I sent a written request to Equiniti Trust Company, LLC (formerly AST), the Debtors' former transfer agent, seeking information necessary to understand the Debtors' capital structure at the time of equity cancellation. Specifically, I asked (1) how many shares were outstanding as of September 29, 2023, (2) how many were registered with Cede & Co., and (3) how many were directly registered with AST. I made this request in good faith, as an attorney and shareholder, for the proper purpose of investigating financial misconduct. On March 28, 2024, Equiniti responded by confirming that it had served as transfer agent until **September 30, 2023**, and that **"all shares have been canceled and are worthless."** However, Equiniti refused to provide any further information and instead referred me to the Kroll restructuring website. I

15

replied that I would be seeking judicial intervention and advised them to consult legal counsel. These communications further support the need for Court-ordered disclosure of the shareholder ledger, which remains in Equiniti's possession.[2]

25. I respectfully request that the Court preserve the rights of all equity holders, including myself, to assert legal or equitable claims based on any discrepancies revealed through the compelled disclosure.

26. This motion seeks only limited, post-confirmation factual relief necessary to preserve the integrity of the estate—including with the aim of maximizing value for creditors and protecting the rights of former shareholders. In light of recent defamatory commentary circulated online, Movant affirms that he has no hidden affiliations, conflicts of interest, or external agenda. Other than managing his own affairs—including positions in similarly situated public companies—Movant currently represents only a single unrelated client in connection with a new medical device project, wholly distinct from this matter. This motion is brought in good faith and in the public interest.

27. I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 19, 2025
Respectfully submitted,
/s/ Jeffrey Mead Kurzon
Jeffrey Mead Kurzon
Pro Se, Pro Bono (Not Pro Hac Vice), Pro Patria, Pro Publico
P.O. Box 454, Peterborough, NH 03458
Jeff@Kurzon.com | 212-203-8918

---

[2] Movant reserves the right to submit this correspondence under seal or in camera if the Court deems it necessary.

**Exhibit A – Attached**

Movant's Proof of Interest (Redacted Equiniti/AST Statement dated as of September 26, 2023 showing registered common share ownership of 58,008 shares of BBBYQ)

17