**Jeffrey Mead Kurzon**
P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com
(212) 203-8918

U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ

2025 JUN -4  A 11: 47

JEAN ... BRIGHTON

BY ........
DEPUTY CLERK

Clerk of the Court
United States Bankruptcy Court
District of New Jersey
Martin Luther King Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

June 2, 2025

Re: In re Bed Bath & Beyond Inc., et al., Case No. 23-13359 (VFP)

**Second Supplemental Filing in Support of Motion to Compel Disclosure**

Dear Clerk of Court:

Enclosed for filing is a second supplemental submission in support of my *pro se*
motion, dated May 19, 2025, seeking disclosure and reconciliation of the
shareholder ledger as of the Plan's effective date (Dkts No. 4126, 4127 and
Scheduling Order 4128).

This submission includes: (1) supplemental exhibits A-F with new material evidence
and clarifications; and (2) a revised proposed order, which is contained in the text of
the Supplement.

For the Court's convenience, I am including a Section list and Exhibit List (aka Table
of Contents).

Respectfully submitted,

Jeffrey Mead Kurzon, pro se

1

Original Motion – Dkt No. 4126, First Supplement – Dkt No. 4127

Scheduling Order – Dkt No. 4128 – June 17, 2025 – Newark, NJ

## TABLE OF CONTENTS

### SECOND SUPPLEMENTAL FILING IN SUPPORT OF MOTION TO COMPEL

| Section | Page |
|---|---|
| Clerk Cover Letter | 1 |
| Table of Contents | 2 |
| I.      INTRODUCTION AND PROCEDURAL POSTURE | 3 |
| II.     PURPOSE OF THIS SECOND SUPPLEMENT AND SUMMARY OF RELIEF REQUESTED | 3 |
| III. THE LEGAL BASIS FOR THE REQUESTED RELIEF: AMBIGUITY AND OBFUSCATION IN THE CANCELLATION OF INTERESTS: THE "ALLOWED INTEREST" PARADOX | 4 |
| IV. ADDITIONAL RELEVANTS DATES | 12 |
| V. ADDITIONAL EVIDENCE TO ASSIST IN COMPLETING THE RECORD | 13 |
| VI. MOVANT OPTED OUT OF THE RELEASE BECAUSE AS A CORPORATE LAWYER, MOVANT SAW NO CONSIDERATION AND DID NOT UNDERSTAND THE BENEFIT OF OPTING INTO THE RELEASE | 14 |
| VII. KEY QUESTION: WHAT HAPPENED TO THE INTERESTS THAT WERE NOT "ALLOWED INTERESTS?" | 16 |
| VIII. DISCUSSION ON CLASS UNITY | 18 |
| IX. CORE LEGAL AND STRUCTURAL DEFECT OF THE PLAN AND THE PLAN ADMINISTRATOR'S IMPLEMENTATION THEREOF | 22 |
| X. PROOF OF INTEREST AS SEEN IN NEVADA DISTRICT *IN Re META MATERIALS INC.* | 22 |
| XI. STRUCTURAL RISK TO THE ESTATE AND PUBLIC TRUST | 23 |
| XII. PROPOSED PATH FORWARD / RELIEF REQUESTED | 27 |
| XIII. CONCLUSION AND [SECOND AMENDED] PROPOSED ORDER | 30 |
| Certificate of Service | 33 |
| Exhibits A-F with cover pages (35 pages – attached) | |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

In re:

Bed Bath & Beyond Inc., et al.,

Debtors.[1]

Case No. 23-13359 (VFP)

Chapter 11 (Jointly Administered)

**SECOND SUPPLEMENTAL FILING IN SUPPORT OF MOTION TO COMPEL**

### I.  INTRODUCTION AND PROCEDURAL POSTURE

Movant Jeffrey Mead Kurzon, appearing pro se as a member of Class 9, respectfully submits this second supplemental filing in further support of the Motion to Compel Disclosure and Reconciliation of Shareholder Ledger to Maximize Estate Value (Dkt Nos. 4126 and 4127, and see 4128).

Movant submits the following additional evidence (Exhibits A-F) under oath and in furtherance his primary goal of clarity and transparency for Class 9 so that this action be resolved as quickly as possible for the benefit of all classes. As detailed herein, the purpose of this motion is truth, transparency and to maximize the estate's value.

## II. PURPOSE OF THIS SECOND SUPPLEMENT AND SUMMARY OF RELIEF REQUESTED

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Not having a full understanding of what exactly is Class 9 so that the Debtor's estate value can be maximized and definitely determined (i.e. if Class 9 is ambiguously defined and/or uncertain, no prospective buyer can pay the creditors 100% and then purchase the equity for the residual assets such as the tax assets, which upon information and belief, are worth in the billions of dollars).

If there is no definitive "cap table" for Class 9, no defined set of beneficiaries for Class 9, representing the equity that once did – or may still – exist, then how can the estate be sold? And how even can the Plan Administrator act as a fiduciary to something that is not clearly defined?

Under **11 U.S.C. Section 1123(a)(4),** a plan must treat all members of a class equally. Movant, a holder of directly registered shares hereby affirms that he held such shares through the Plans "Effective Date" of September 29, 2023.

This motion does not aim to attack the plan, delay distributions or point fingers for the ambiguity and constitutional lapses, or to litigate the issues, but rather asks the Court to court to treat all members of Class 9 equally and to compel the Plan Administrator to state on the record a clear and definitive capitalization of the Debtor as of the Plan Effective Date so that the Debtor at least has an opportunity to reorganize, as is the ostensible purpose of a Chapter 11 bankruptcy (as opposed to a ch. 7 liquidation).

## III. THE LEGAL BASIS FOR THE REQUESTED RELIEF: AMBIGUITY AND OBFUSCATION IN THE CANCELLATION OF INTERESTS: THE "ALLOWED INTEREST" PARADOX

Movant is a Class 9 member as a holder of Interests and has the right to seek this motion for clarity and transparency. Movant has timely raised constitutional questions pursuant to 28 U.S.C. Section 2403 (Dkt no. 4126, page 4) and Movant has asserted his

standing under 11 U.S.C. 1109(b). Movant has further reserved all rights and waived

none and has repeated the same at each opportunity throughout the proceedings, such as

the afternoon of June 10, 2024 when Movant asked the court to 'count the horse's teeth'

in support of shareholder ML1's motion for a shareholder committee.

On May 5, 2023, the Debtors filed a **"List of Equity Security Holders"** pursuant

to Bankruptcy Rule 1007(a)(3), which was docketed as Dkt. No. 219 on which Movant

was revealed to hold 503 shares. The list includes approximately 46 pages of names and

share amounts for holders of the Debtors' common stock, preferred stock, and warrants.

While the largest entry reflects Cede & Co. holding over 776 million common shares, the

list also includes hundreds of names with individual quantities suggestive of direct

registration (e.g., 503 shares, 5,000 shares, etc.).

Crucially, there is no indication that this list was reconciled or used to define

which equity holders constituted **"Allowed Interests"** under the Plan. There is also no

evidence that any Class 9 member received notice of a process to file a "proof of interest"

or otherwise have their equity position adjudicated or formally acknowledged. As a

result, the Plan's provision that "all Allowed Interests shall be cancelled" (Dkt. 2160, Art.

III, Section B.9.b.) introduces a structural ambiguity: only some Interests were arguably

cancelled, while others—potentially including those held in street name, inside or outside

the AST ledger—were not.

This raises significant concerns under 11 U.S.C. § 1123(a)(4), which requires

equal treatment of all interests within a class. Without a transparent process for

allowance, and without explicit cancellation of all Interests regardless of allowance

status, the Plan may have created an unequal subclass of surviving or uncanceled equity

positions. Worse, those in beneficial positions through brokerages may have been disenfranchised without notice or opportunity to be heard on this issue.

In Docket 2631, the Declaration of the Plan Administrator Michael Goldberg in relation to Movants Neely Das and Gabriel Rostom emergency motion, Mr. Goldberg stated something interesting and yet inconsistent with the plain language of the Plan (**emphasis added**):

> 6. Pursuant to the Plan, **all common stock Interests (as defined in the Plan)** in Debtor Bed Bath & Beyond, Inc. ("BBB") were "cancelled, released, and extinguished." **See Plan, Art. III.B.9.** Section IV.D of the Plan provided for the cancellation of all securities of the Debtors, including common stock, preferred stock and warrants, as of the Effective Date of the Plan without need for any further action.

Did Mr. Goldberg mean here he cancelled all Interests, period, or all common stock Interests (defined in the Plan), meaning he cancelled all "Allowed Interests" as called for in the plan. Such ambiguity is clearly not in the interest of justice.

Dkt No. 2631 Mr. Goldberg's Declaration continues, adding further ambiguity (**emphasis added**):

> 7. In order to effectuate the administrative cancellation of the CUSIP numbers associated with the BBB common stock, preferred stock and warrants, on October 18, 2023, counsel for the Debtors prepared on my behalf, Null, Void and Worthless Event Questionnaires (the "NVWQ") for each class of security. A true and correct copy of the NVWQ for Common Stock is attached hereto as Exhibit A, the NVWQ for Preferred Stock is attached hereto as Exhibit B, and the NVWQ for Warrants is attached hereto as Exhibit C. These Exhibits are incorporated herein for all purposes. **Equiniti, BBB's transfer agent**, submitted the three attached NVWQs to Depository Trust Corporation ("DTC") to complete the deletion process. I have been informed by DTC that the process has been completed and all CUSIP numbers for BBB common stock, preferred stock and warrants have been cancelled.

The three exhibits were dated as of October 18, 2023, and yet AST/Equiniti informed the Movant that its services terminated "September 30, 2023." (See Section VIII infra "EQ terminated on September 30, 2023 as the transfer agent for Bed, Bath and Beyond.") Mr. Goldberg owes the Court and Class 9 transparency on where the shareholder ledger is now maintained, whether it is in his sole possession, or to whom, if anyone, it has been transferred to, if anyone, beyond AST/Equiniti.

**Plan Art. III.B.9 provides (emphasis added):**

9. Class 9 - Interests in BBB

a. Classification: Class 9 consists of **all Interests** in BBB.

b. Treatment: Each **Allowed Interest** in BBB shall be canceled, released, and extinguished, and will be of no further force or effect and no **Holder of Interests** in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests.

c. Voting: Class 9 is Impaired. Holders of Interests in BBB are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

It appears that the Plan's language is unclear for whatever reason (it switches from describing Class 9 as "**all Interests**" but then switches to cancel only "**Allowed Interests**," but no matter the reason, the result is the same and this motion is necessary: Class 9 is undefined. What is an "Allowed Interest" – subject to cancellation is a matter for judicial interpretation, as Movant was never given notice to schedule his Interests, as e.g. *In Re Meta Materials, Inc.* is doing currently in the District of Nevada (See Section X infra "Proof of Interest as Seen in Nevada District").

Article III, Section D of the Plan ("Elimination of Vacant Classes") provides no solution either, as it refers to only voting, and not post-reorganization distribution rights.

D. Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim
or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy
Court as of the date of the Confirmation Hearing shall be deemed eliminated from
the Plan for purposes of voting to accept or reject the Plan and for purposes of
determining acceptance or rejection of the Plan by such Class pursuant to section
1129(a)(8) of the Bankruptcy Code.

Mr. Goldberg's second sentence in paragraph 6 of Docket 2631 states "Section

IV.D of the Plan **provided for the cancellation of all securities of the Debtors,**

**including common stock, preferred stock and warrants, as of the Effective Date of**

**the Plan without need for any further action." (emphasis added)**

The use of vague and ambiguous language, citing further vague and ambiguous

language, is not comforting to Movant as a member of Class 9, but if Mr. Goldberg states

that the Plan says to cancel all securities of the Debtors, then he should have no problem

stating what it is exactly that he has cancelled. He cannot switch between BBB and

Debtors —as he did in Dkt No. 2631—to hide the total of what he cancelled.

**Article IV, Section D** inserts further ambiguity as to what was cancelled, but

reinforces that Movant has standing for this motion in that it references "evidencing a

right." It states **(emphasis added):**

D. Cancellation of Notes, Instruments, Certificates, and Other Documents

On the later of the Effective Date and the date on which distributions are made
pursuant to the Plan (if not made on the Effective Date), **except for the purpose**
**of evidencing a right to and allowing Holders of Claims and Interests to**
**receive a distribution under the Plan,** allowing the 2014 Senior Unsecured
Notes Trustee to exercise its charging lien in accordance with the 2014 Notes
Indenture, or to the extent otherwise specifically provided for in the Plan, the
Confirmation Order, or any agreement, instrument, or other document entered
into in connection with or pursuant to the Plan or the Liquidation Transactions, all
notes, bonds, indentures, certificates, Securities, shares, purchase rights, options,
warrants, collateral agreements, subordination agreements, intercreditor

agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the WindDown Debtors, as applicable, any non-Debtor Affiliates shall be deemed satisfied in full, cancelled, released, discharged, and of no force or effect; provided that notwithstanding anything to the contrary in the Plan, the Liens securing the DIP Claims and FILO Claims shall not be released and such Liens shall remain in full force and effect until Payment in Full (as defined in the Final DIP Order) of the DIP Claims or FILO Claims, as applicable, and the Liens securing the DIP Claims and FILO Claims shall continue with the same validity and priority set forth in the Final DIP Order.

Based on the Plan, and Mr. Goldberg's own declaration to the Court, Movant has a right to know the totality of Class 9 and a reconciliation thereto. Class 9 members have a right to learn if their membership in Class 9 is "evidence of a right" and "distributions" are mentioned implying there could be distributions (assuming all junior classes get paid). It should be self-evident that Movant's Interests as shown in his 58,008 shares of common stock held at AST through cancellation mean nothing but an arbitrary number (as a numerator), and must be compared to and reconciled with the whole (the denominator), which is known as total shares outstanding (TSO).

11 U.S.C. Section 1123(a)(4) should not allow for unequal treatment of Interests by cancelling some (e.g. by Mr. Goldbergs Dkt No. 2631 – Atts 1-3 letters to the DTC) but not others. If the Cede & Co. shares were cancelled as of October 18, 2023, on what date were the remainer of the non-Cede shares cancelled? Why is there no clear attestation or writing to this effect from either Goldberg or AST/Equiniti? Without proper notice of his shares being not "Allowed Interests" it is possible that Movant's shares are still in existence. Other members of Class 9 exist in this same void.

Movant affirms he received no notice of cancellation or 1099 tax statement from AST, but only was told they were "worthless" in response to an email query to inspect the ledger (See Section 8, infra).

"Proof of Interest" is not a defined term in the Plan. Upon information and belief, no member of Class 9 received instruction to file a proof of interest and the record seems to show that Mr. Goldberg only affirmatively cancelled "beneficial shares" (aka "Street shares") at Cede & Co..

The General Claims Bar Date was July 7, 2023, and any notice related to General Claims was only aimed at creditors, not shareholders or members of future Class 9, which had yet to even be defined by the time of the General Claims Bar Date. It would be illogical and against the spirit of 11 U.S.C. Section 1123(a)(4) to bifurcate Class 9 into two categories – 1) "Allowed Interests" and 2) not "Allowed Interests," and if this happened, it would seem to possibly contradict Mr. Goldberg's own declaration in Dkt No. 2631.

Mr. Goldberg in Dkt No. 2631 states with respect to the attachments:

> Equiniti, BBB's transfer agent, submitted the three attached NVWQs to Depository Trust Corporation ("DTC") to complete the deletion process. I have been informed by DTC that the process has been completed and all CUSIP numbers for BBB common stock, preferred stock and warrants have been cancelled.

Mr. Goldberg attaches only the cancellation of the common stock (Ex. A), the preferred Stock (Ex. B) and the warrants (Ex. C), but offers no reconciliation and no communication direct with AST/Equiniti to affirm that he even knows the totality of the Debtors' Interests (the TSO), a fact that must be known to recognize his role as a fiduciary to all classes, and most importantly for the Debtor to emerge from this Ch. 11.

The Plan (Dkt. 2160) provides that "on the Effective Date, all **Allowed Interests** shall be cancelled, released, and extinguished..." (see Art. III.B.9). This clause appears at first to effectuate a standard cancellation of equity, but on closer inspection reveals but one critical ambiguity with serious due process implications.

Nowhere does the Plan provide for the cancellation of all Interests—only those deemed "Allowed." Yet "Allowed" is a defined term under Article I.A.14, contingent on one of the following, the interest being scheduled and not marked as disputed, contingent, or unliquidated, a Proof of Claim being filed and not objected to, a court order allowing the Interest, or stipulation, agreement, or resolution by the parties (some of which in this action contain redactions, thus making Class 9 unknowable).

This structure – buried in obscure legalese - potentially created a two-class subclass within Class 9—those whose Interests were "Allowed" and thus cancelled, and those whose Interests were never adjudicated at all.

The latter group likely includes countless retail holders whose shares were held in street name and then directly registered via DRS but who never received individualized notice of the need to file a proof of interest. Many of these investors, including the undersigned with 58,008 AST-registered shares and additional broker-held shares, reasonably believed that ownership as of the Effective Date entitled them to equal treatment in cancellation or recovery with all members of Class 9.

Instead, the Plan cancels only "Allowed Interests," leaving all other Interests in a legal limbo—neither canceled nor recognized. This ambiguity is not merely academic. It obscures the finality of cancellation, masks the existence of unresolved equity interests, and permits post-effective-date discretion or opacity in resolving or ignoring residual

11

claims. If even a corporate attorney such as Movant cannot determine whether their own Class 9 Interest was canceled—whether "Allowed" or not—how could a non-attorney household investor possibly know? This failure of notice, clarity, and procedural fairness undermines the integrity of the Plan's purported finality, is colorably unconstitutional on many levels and strongly supports the need for a full reconciliation of the shareholder ledger and/or a formal proof of interest process to ensure compliance with §1123(a)(4) (aka fairness), 1125 (aka "adequate information"), and constitutional due process.

## IV. ADDITIONAL RELEVANTS DATES

Movant acknowledges the following dates, but has not reviewed the transactions in their entirety as, upon information and belief, certain aspects of the consummated transactions were redacted, and Class 9 may have been harmed by this opacity.

The dates are: Bidding Procedures Order Entered: April 25, 2023, Stalking Horse Deadline: June 12, 2023, Notice of Assumed Contracts Deadline: June 13, 2023, Final Bid Deadline: June 16, 2023, Auction for Non-lease Assets (excluding buybuy BABY): June 21, 2023, Auction for buybuy BABY Assets Only: June 28, 2023, Overstock Sale Hearing: June 27, 2023, Cure and Sale Objection Deadline: July 5, 2023, Sale Hearing (buybuy BABY Assets): July 11, 2023, Section 341 Meeting (Creditors' Meeting) Held Telephonically: June 5, 2023, at 11:00 a.m. (ET).

Not having a full understanding of what exactly is Class 9 so that the Debtor's estate value can be maximized and definitely determined (i.e. if Class 9 is ambiguously defined and/or uncertain, no prospective buyer can pay the creditors 100% and then purchase the equity for the residual assets including the tax assets, which upon information and belief, are worth in the billions of dollars).

If there is no definitive "cap table" for Class 9—definitively stating the TSO—, then how can the estate be sold? And how even can the Plan Administrator act as a fiduciary to something that is not definitively defined?

## V. ADDITIONAL EVIDENCE TO ASSIST IN COMPLETING THE RECORD

Movant submits the following evidence under oath and in furtherance of his motion filed at Docket No. 4126, together with the First Supplement at Docket No. 4127. Movant's primary goal is clarity and transparency for Class 9 so that this action be resolved as quickly as possible for the benefit of all classes.

Under 11 U.S.C. Section 1123(a)(4), a plan must treat all members of a class equally, and yet it still appears to date that Movant's shares were not treated equally, by the Plan Adminstrator or even brokers holding the shares. Movant, a holder of directly registered shares (See Exhibit A, Dkt. No. 4126) hereby affirms that he held such shares through the Plans "Effective Date" of September 29, 2023. Movant, also affirms that in various brokerage accounts he held additional long "street shares" and no short or derivative positions whatsoever. **See attached hereto as Exhibit A**, summarized herein:

| Transfer Agent or Broker | Document Date | Common Shares | Type | Notes* |
|---|---|---|---|---|
| AST / Equiniti | October 1, 2023 | 58,008 | Directly Registered | I was able to login and procure this immediately after the Effective Date; since such time, logging provides an error message. |
| Sofi Securities LLC (clearing by Apex Clearing Corporation) | **October 26, 2023** | 1,000 | Beneficial | Dispute pending; these 1,000 shares were "sold" for $0.01 despite not existing, an impossibility |
| E*Trade from Morgan Stanley | October 18, 2023 | 122 | Beneficial | |

| MooMoo | October 18, 2023 | 1,000 | Beneficial | Margin account; 300/1000 purchased 9/28/23 |
|---|---|---|---|---|
| TdAmeritrade | October 18, 2023 | 44 | Beneficial | Now Schwab |
| Fidelity | October 18, 2023 | 27 | Beneficial | IRA |
| Fidelity | October 18, 2023 | 1,200 | Beneficial | Roth IRA |
| Fidelity | October 18, 2023 | 215 | Beneficial | Cash Account |
| TOTAL CLASS 9 Interests | | 61,616 | | |

*Documents in Exhibit A redacted for privacy and security (the Court is free to inspect the originals upon request as Movant will bring originals to the June 17 hearing).

Movant therefore had at least 61,616 shares of the Debtor's common stock as of the Plan's Cancellation Date.

**Attached hereto as Exhibit B** is the first five pages of the November 7, 2023 complaint Movant submitted to the New Hampshire Department of State Bureau of Securities Regulation. Omitted are the exhibits for brevity, but reference is made to page 2 of Exhibit A hereto, which is a true copy of the "sale" record delivered by Sofi post Effective Date. This dispute with Sofi (and third-party Apex Clearing Corporation) is still unresolved and Movant reserves all rights in respect thereto. Movant includes this to show that certain brokers were "trading" the Interests post-cancellation, which appears to be in contravention of this Court's Order and securities laws. That the Plan Administrator's counsel seemingly took no interest in this issue with Sofi further necessitates a motion like this (See Dkt. No. 3452).

## VI. MOVANT OPTED OUT OF THE RELEASE BECAUSE AS A CORPORATE LAWYER, MOVANT SAW NO CONSIDERATION AND DID NOT UNDERSTAND THE BENEFIT OF OPTING INTO THE RELEASE

14

Movant objected to and opted out of the Third-Party Release as of August 14,

2023. (**See attached Exhibit C** – Eballot confirmation and full text of release). Upon

information and belief, the Third-Party Release did not provide any consideration to the

Movant as a proposed "Releasing Party" and offered no incentive for the Movant to

release anyone for vague and unspecified consideration. The voting deadline for the

Third-Party Release was September 1, 2024, which Movant met.

The plan was subsequently amended, but no additional noticing or opt-out opportunity

was provided to Movant for any purported release.

Additionally, on June 27, 2024, in Harrington v. Purdue Pharma L.P., 603 U.S.

204 (2024), the Supreme Court ruled that the Bankruptcy Code does not authorize

nonconsensual third-party releases of claims against non-debtors as part of a Chapter 11

reorganization plans. It is therefore colorable to claim that the release is not binding on

any of Class 9 since the plan was amended post noticing and Movant asserts such Claim

if it benefits Class 9, particularly in relation to the relief such in this motion.

As as a shareholder trying to access the docket in its entirety to search for relevant

entries, Movant was stonewalled by counsel for the Plan Adminstrator (see e.g. Dkt No.

4126, para. 9) and also by Kroll during the pendency of this motion (see Section VII

*infra*). This is another reason that the court must intervene, since Class 9 cannot even

reasonably access the records of this action without professional help, which creates the

need for motion practice and wastes judicial economy.

### KEY DEFINITIONS AND TREATMENT OF CLASS 9:

14. **"Allowed"** means, with respect to any Claim or Interest, except as otherwise
provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed
by the Bar Date or a request for payment of Administrative Claim timely Filed by the
Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the

15

Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim or Interest Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court, or ( d) a Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; provided that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order. Any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after and subject to the Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed.

63. **"Entity"** shall have the meaning set forth in section 101 (15) of the Bankruptcy Code.

79. **"Holder"** means an Entity holding a Claim or Interest, as applicable.

87. **"Interest"** means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

"Proof of Interest" is not a defined term. Upon information and belief, no member of Class 9 received instructions to file a proof of interest or even a Proof of Claim for their Interests.

## VII. KEY QUESTION: WHAT HAPPENED TO THE INTERESTS THAT WERE NOT "ALLOWED INTERESTS?"

Was the Plan Administrator's cancellation of the 701 million DTC common shares what caused the broker-level cancellations in the Exhibit A (and in the case of Sofi, a false "sale")? But critically, were the non-Allowed Interests cancelled as well? Or, what was the sum total of cancelled shares – or Interests – cancelled as of the Plan's Effective Date (September 29, 2023.)

**Attached hereto is Exhibit D**, Language sent to Kroll on May 28., 2025. Movant sent bbbyinfo@ra.kroll.com the following in relevant part:

Dear Kroll BBBY Team,

As a pro se party in interest in the Bed Bath & Beyond Chapter 11 case (Case No. 23-13359), I respectfully request a complete docket index or export — ideally in spreadsheet or PDF format — listing all docket entries, dates, and document descriptions. This is essential for preparing my filings and reviewing the record accurately.

I understand from our phone call that you typically direct parties to the online docket. However, due to the volume of entries (well over 4,000), a complete list would help ensure procedural fairness and support judicial economy.

Additionally, I would appreciate it if you could confirm:

Whether any formal notice was sent to Class 9 equity holders requesting a Proof of Interest, such as was done in the Meta Materials, Inc. case now pending before the Bankruptcy Court in Nevada.

Whether any affidavits of service or noticing declarations include AST, Equiniti or other transfer agents, as equity holder record keepers.

Thank you in advance for your assistance and professional support.

**Attached hereto as page 2 of Exhibit D** is Kroll's Response received on May 28, 2025:

Thank you for contacting the restructuring information center for Bed Bath & Beyond, including buybuy BABY. This inbox is no longer regularly monitored, and you will not receive an additional response to your email. However, all change of address requests submitted to this inbox will be processed and confirmed by Kroll. . . . **"All proofs of claim, with the exception of claims on**

17

**behalf of government agencies, must be submitted so as to be actually received on or before July 7, 2023."**

On May 28, 2025, Movant notified counsel for the Plan Adminstrator and for the US Trustee via email with, inter alia, "The auto-reply provided no guidance on how Class 9 equity holders—many of whom held shares via AST . . . could verify whether they were affected or included. I attach my original email and the auto-response for your review." As of the date of this filing Movant has received no response from either.

## VIII. DISCUSSION ON CLASS UNITY

Movant received no notification from AST/Equiniti that his shares were cancelled as such was provided by his brokers (See Exhibit A). Movant was unable to access his shares sometime estimated to be in October 2023, but on October 1, 2023 was able to print out the attached definitive statement (See Exhibit A). Thereafter, Movant, exercising his rights as a Class 9 member – and acting in good faith as an attorney investigating securities fraud and exercising state law rights under NY General Business Corporation (N.Y. B.C.L.) § 624 sent the following message to AST on March 27, 2024 **(see Exhibit E)**, attempting to be sure that the shareholder ledger was reconciled as part of his investigation into securities fraud.

Movant's inquiry was legally grounded and tied to a broader investigation of systemic financial fraud tied to the company's equity cancellation. The response received from HelpAST@equiniti.com on March 28, 2024 at 3:35pm was in relevant part **(emphasis added)**:

Dear Jeff Kurzon,

Thanks for contacting our Shareholder Services Department.

EQ terminated on September 30, 2023 as the transfer agent for Bed, Bath and Beyond. The company filed for bankruptcy in April 2023 and closed their books on September 30, 2023.

**All shares have been canceled and are worthless.** There is no additional information to provide to you.

Please refer to the Kroll website for information on the bankruptcy:

Within twenty minutes on March 28, I wrote back:

"I advise Equiniti to seek advice of counsel. You have not adequately answered my inquiry and improperly denied my reasonable request. I will now need to go to the bankruptcy court (and/or other courts) to seek the information in your possession that I have requested, which you are refusing to provide. I reserve all rights and waive none.

Sincerely,

Jeffrey M. Kurzon, Esq.

NY Attorney"

On April 3, an additional response was received from HelpAST@equiniti.com as follows in relevant part:

We have received your request below.

As Transfer Agent, EQ is unable to provide the requested information. May we suggest contacting Bed Bath and Beyond Inc. directly to fulfill this request.

If you have additional questions, you can call our office toll-free in the US at 1-800-937-5449 or directly at 1-718-921-8124. Our representatives are available to assist you Monday through Friday from 8:00  8:00 p.m. Eastern Time.

Shareowner Services

Upon filing my 2023 federal tax return, I claimed a total loss on the shares based on this representation ("all shares have been cancelled and are worthless"), which I have no way to know is true or not without inspection of the ledger and clarity as to what is Class 9. Movant hereby reserves his rights to make an IRS whistleblower complaint, as well as to amend and restate his 2024 tax return for the 2023 tax year.

Upon information and belief, the Kroll docket does not account for the cancelation of the AST/Equiniti Shares, and Movant was told his shares were cancelled by AST only after a NY Business law Section 624 request. Investing in capital markets in "limited liability" corporations should not involve endless bankruptcy docket review, or motion practice, but Movant has valid reasons to believe the shareholder ledger was never reconciled and potentially improperly treated as either 1) not cancelled 2) partially cancelled or 3) inappropriately cancelled, especially given that that the Plan's language creates a void by only directing that the ambiguously defined "Allowed Interests" be cancelled, in direct violation of the requirement to treat all members of a class equally.

As previously specified in Dkt. Nos. 4126 and 3452, Counsel to the Plan Administrator has not been cooperative in providing information. Movant attempted to protect fellow Class 9 member ML1 by opposing Counsel to the Plan's administrators motion for sanctions against ML1 (see Dkt. No. 3452 – Letter to Judge Papalia, dated July 30, 2024, which also details Movant's attempts to solve the uncertainty around Class 9 out of court to save judicial resources).

On Wednesday, May 21, 2025, Movant sent a good faith settlement offer via email to the certificate of service list below that proposed an on the record certification as to Class 9's TSO and a limited one-time inspection right of the Movant to verify the shareholder ledger (as now the Movant has no reason to trust the Plan Administrator or his Counsel).

Approximately twenty-four hours after attempting to settle (email entitled "Proposal to Resolve Motion Regarding Shareholder Ledger and AST Records (Filed May 19, 2025)") and hearing no response or even an acknowledgement (!), Movant on

May 22 sent via email and USPS Priority Mail a preservation notice was sent to

HelpAST@equiniti.com entitled "Legal Preservation Notice – Bed Bath & BeyondInc.

[sic] (BBBYQ) Shareholder Records D.N.J. Bankruptcy Case No. 23-13359 (VFP)

Anticipated Proceedings Under Fed. R. Civ. P. 27 (EDNY/SDNY)." A full copy of the

preservation letter is **attached hereto as Exhibit F**. Movant received a response from

HelpAST@Equiniti.com on May 22, 2025 acknowledging the email. The response stated

in relevant part:

> "Bed Bath & Beyond Inc. has been terminated as of September 30, 2023,
> following its bankruptcy filing in April 2023. At this time, there is no additional
> information available regarding the status of the company or shareholder.
>
> If you have questions, you can reply to this email or call our office toll-free in the
> US at 1-800-937-5449 or directly at 1-718-921-8124. Our representatives are
> available to assist you Monday through Friday from 8:00 a.m. to 8:00 p.m.
> Eastern Time."

Movant respectfully submits that obtaining a certification from the Plan

Administrator is a more judicially efficient and cost-effective means of resolving the

outstanding equity ledger discrepancy than requiring Movant to initiate a separate action

pursuant to Rule 27 of the Federal Rules of Civil Procedure in the Southern or Eastern

District of New York, or to seek extraordinary relief under Rule 20 of the Rules of the

Supreme Court of the United States pursuant to the All Writs Act. Without access to the

ledger as of September 29, 2023, Movant's property – his potential loss thereof – is

deprived under of color of law, without due process, and cannot serve as a meaningful

basis for which the Debtor's estate value can be maximized since it will remain

undefined, unclarified and unspecified. No buyer of the estate wants to buy the Debtor

with an unreconciled cap table and the Plan Administrator is incapable of serving as a

fiduciary to a class that is so poorly defined, if at all defined based on its ambiguities.

Transparency here demands light, and that means an inspection of the ledger and a reconciliation thereof.

## IX. CORE LEGAL AND STRUCTURAL DEFECT OF THE PLAN AND THE PLAN ADMINISTRATOR'S IMPLEMENTATION THEREOF

The Plan contains potential deliberate ambiguity in that the Plan's "treatment" provision shifts from "Allowed Interests" to "Holders of Interests," conflating two categories. This linguistic pivot lacks clarity and legal certainty, especially for those never given the opportunity to have their interests "Allowed." The Plan Administrator hiding behind his obstructive counsel worsens the ambiguity and has potentially added to the source of nearly two years of online speculation in chat and video forums (e.g. the PP Show") as to just "just what the heck is happening," such that Movant's and other Class 9 members clearly are having their rights under the Plan and the constitution trampled under the color of law. Based on the Declaration of the Plan Administrator in Dkt No. 2631 and the silence in the face of good faith inquiries from the Movant, a member of the bar of sister courts, there has yet to be a reconciliation of Class 9 and it is beginning to seem deliberate, and for what purpose and to what end, Movant can only speculate. The fact is that Debtor and Plan Administrator canceled 701M Cede common shares but failed to count or reconcile AST/Equiniti holdings and provide to the public – and to members of Class – a true TSO and reconciliation of the Class. Without a cap table for the Debtor, no true finality or fiduciary discharge is possible.

## X. PROOF OF INTEREST AS SEEN IN NEVADA DISTRICT *IN Re META MATERIALS INC.*

No formal notice or proof-of-interest procedure was seemingly ever directed to AST/Equuinit or beneficial shareholders, in contrast to *In re Meta Materials Inc.* (Case

No. 24-50792)(hlb) United States Bankruptcy Court, District of Nevada, which implemented such a procedure to presumably preserve equity due process. In fact, since Movant's statement obtained from logging in on October 1, 2023 (See Exhibit A), AST, upon information and belief, has not communicated with any Class 9 member other than generic replies to inquiries. Without inspection of the ledger as of September 29, 2023 neither Movant, the Plan Administrator, the Court, nor any other member of Class 9 can be sure that side deals were not cut in violation of 1123(a)(4) treating members of the same class differently.

After receiving the "Order Directing the Clerk to Accept All Proofs of Interest" (entered on the Docket December 19, 2024), Movant sent in to the *Meta* court a Proof of Interest on January 10, 2025, and then amended and restated the same on January 27, 2025 (to correct the omission that a reverse stock split was not accounted for in the original filing).

Movant brings the "Proof of Interest" concept interest to this action in the event that it is still timely that this filing be considered a "Proof of Interest" for reservation of rights, or should the court find this process worthy of consideration as a potential remedy for harms made on Class 9, and for consideration as a potential path forward for Class 9.

## XI. STRUCTURAL RISK TO THE ESTATE AND PUBLIC TRUST

Any post-confirmation litigation or enforcement action—e.g., for securities fraud—may yield billions for the Debtor, far beyond the remaining amounts due Creditors. Without clarity on who holds equity rights, recovery allocation would be ungovernable and unjust. Fiduciaries such as the Plan Administrator cannot perform their duties if they cannot identify the beneficiaries. This jeopardizes both the integrity of the reorganization and confidence in the bankruptcy system itself.

The equity destruction isn't isolated — it is part of a systemic, massively leveraged, and undisclosed short-selling structure where the true number of "beneficial shares" behind Cede & Co.'s cancelled 701 million shares is unknowable without discovery.

The cancellation of Class 9 shares without verifying ownership or reconciling synthetic exposure is not just a clerical issue — it potentially shields systemic fraud.

This case is not taking place in a vacuum. According to Citigroup's most recent Form 10-Q for the period ending March 31, 2025 (filed at SEC.gov, last visited: June 1, 2025), the bank reported $99.18 billion in liabilities under "securities sold, not yet purchased" — a technical term for short positions. This figure, representing just one major institution, reflects a systemic dynamic in which trillions of dollars in synthetic or borrowed equity claims may circulate without matching economic ownership or accountability.

When these positions must be covered — such as in the event of an equity reemergence, dividend issuance, or court-ordered reconciliation — the consequences are not theoretical. They are potentially explosive.

Thus, the refusal to disclose a definitive Class 9 ledger is not merely an administrative oversight. It is a failure to confront systemic risk and possible ongoing fraud. The question isn't whether individual shareholders like Movant owned shares. The question is how many synthetic or falsely duplicated claims the system is hiding, to what degree have they been manipulating prices of securities and whether bankruptcy in this case, and in many others, is being used to paper over the evidence.

**Supplemental Clarification on the Status of Class 9 and the AST Ledger**

The Debtor's confirmed Plan provides for the cancellation of equity interests in Class 9. However, a critical ambiguity remains unresolved: what precisely was canceled, and by whom?

Specifically, the Plan and related notices appear to cancel the entitlements of beneficial holders under the DTC system — yet do not demonstrate that the legal title held by Cede & Co. (701 million shares) was ever formally canceled on the issuer ledger maintained by AST.

To date, no proof has been entered into the record showing that AST received notice or effectuated a cancellation of legal shares. This raises a threshold legal question: Were only the beneficial entitlements under Cede canceled, or were the legal shares held by Cede & Co. also canceled on the books of AST?
If the latter did not occur, then Cede may remain the legal holder of record for approximately 701 million shares, and any closure of this case without reconciling that reality leaves Class 9 structurally undefined.

Without a definitive and reconciled shareholder ledger as of September 29, 2023 — distinguishing between canceled entitlements (broker shares) and actual share cancellations — there can be no finality, no compliance with § 1123(a)(1)–(4), and no fair or lawful exit from Chapter 11.

### This issue is at the core of the June 17 hearing:

This Court should not permit selective opacity when it comes to defining Class 9. To date, no verified list of actual Class 9 holders has been filed by the Plan Administrator, despite the fact that ownership of publicly traded securities is essential to determining: who was entitled to vote, who was subject to cancellation, and whether §

25

1123(a)(4) (equal treatment within a class) has been fulfilled. If this case is to be wrapped up, it must be wrapped up transparently.

Movant respectfully requests that the Court enter an order requiring the Plan Administrator to publicly file:

- A verified list of all Class 9 shareholders of record and beneficial interest holders as of the Effective Date (September 29, 2023), sourced from AST/Equniti.

The burden should not fall on individual pro se shareholders to investigate their own erasure from the estate, while the Plan Administrator, DTC, and AST retain unilateral access to the full cap table. Why should one shareholder be forced to litigate for visibility, while all others are protected by secrecy?

If Class 9 is truly canceled, it should be easy to publish its final composition. If it cannot be published, then it may not have been properly canceled.

This goes to the heart of procedural fairness and the integrity of the bankruptcy process. A simple filing — the final Class 9 ledger — can either confirm or unravel the assumption of finality.

### Overissued Shares = Synthetic Debt

When brokers sell stock that doesn't exist (naked shorting), they create unsecured synthetic liabilities—a shadow debt market with no cap table accountability. That's not just securities fraud—it's a counterfeit capital engine.

### Controlled Stock Prices = Captive Market

If market participants (major banks and their hedge fund clients) can suppress price discovery on publicly traded companies, then the Fed and Treasury don't need to

directly intervene in failing sectors. They just let the shorts do the dirty work, crush

equity, wipe pensions, and quietly transfer assets via bankruptcy "reorgs" and swaps.

### Tariffs & Treasuries = Global Leverage

The U.S. finances its global footprint with Treasury debt—but naked shorting

equities lets Wall Street mint money without Fed oversight. The China tariff narrative? Is

it cover for a deeper imbalance: are we taxing international goods because we've already

hollowed out value in our own capital markets?

### So yes, BBBYQ matters. It Matters a Lot.

It's the ledger as of the Effective Date they don't want Class 9 to see. This is not

just about one shareholder. This is about restoring the rule of law, clarifying the

bankruptcy record, and ensuring every investor—from New Hampshire to New Jersey to

Korea—knows whether they were counted, and whether they form a part of Class 9,

entitled to any surplus recovery from the estate or equity in any emergent company. That

is equity. That is justice.

## XII. PROPOSED PATH FORWARD / RELIEF REQUESTED

The Plan Administrator and Debtor cannot emerge from Chapter 11 without resolving

the cap table. This is particularly urgent where tens of millions of valid equity interests

may remain either uncounted or unjustly canceled. To exit bankruptcy with legal and

financial finality, Movant respectfully proposes the following amended and restated

relief:

- **A full reconciliation of Class 9 Interests**, including all shares held directly at AST/Equiniti;

- **Disclosure of the final share count and list of holders as of the Plan's Effective Date**, September 29, 2023.

This narrowly tailored relief resolves the ambiguity surrounding the phrase "Allowed Interests" in the confirmed Plan and protects the estate's ability to reorganize, ensures equal treatment under 11 U.S.C. § 1123(a)(4), and preserves long-term strategic optionality.

Movant respectfully requests that the Court issue a clarifying order or direct a post-effective-date amendment to the Plan under Bankruptcy Rule 9024. Specifically, the order or amendment should:

1. Confirm that all Interests in Class 9—regardless of "allowance" status, registration method, or listing on the Rule 1007(a)(3) Equity Schedule (Dkt. 219)—were intended to be canceled, released, and extinguished as of the Effective Date, September 29, 2023.

2. Direct the Plan Administrator to disclose the total number of common and preferred equity shares and warrants outstanding as of the Effective Date, including those held beneficially via Cede & Co. and directly via AST/Equiniti.

3. Certify the total number of Class 9 equity interests canceled under the Plan, thereby creating a definitive cap table and confirming that no surviving equity interest exists absent further order of this Court.

This relief does not unwind the Plan or threaten the estate. It completes the Plan. It ensures procedural fairness, establishes a clean post-bankruptcy equity structure, and enables the Debtors or a third-party buyer to pursue a value-maximizing reorganization.

### Preserving Reorganization Potential and Strategic Optionality

Clarifying the scope and composition of Class 9 is essential not only to comply with § 1123(a)(4), but also to preserve reorganization potential. Without a disclosed, finite cap table as of the Effective Date, any buyer or successor entity is left in legal uncertainty.

Movant makes no representation as to the applicability of Internal Revenue Code § 382 or any specific tax strategy. However, the broader principle remains: no estate can reorganize or be acquired if its equity structure is undefined. Whether or not NOLs are preserved, buyers will not proceed where they cannot confirm whether equity was properly canceled or whether residual interests linger in uncertainty.

### Clarification of Class 9 and Plan Terms

Under the current Plan structure (Dkt. 2160), only "Allowed Interests" were subject to cancellation. This introduces ambiguity regarding the treatment of equity interests not listed, scheduled, objected to, or formally adjudicated.

Movant therefore requests **production or judicial authentication of the AST/Equiniti ledger of directly registered Class 9 holders as of September 29, 2023**, in order to verify whether his 58,008 shares—and those of similarly situated shareholders—were subject to cancellation under the Plan and whether they were "Allowed Interest."

Absent access to this ledger, neither Movant nor the Court can verify whether the Plan has been implemented in accordance with § 1123(a)(4) or constitutional due process. Any equity interest that was canceled without proper notice or inclusion in the allowed class presents a due process issue and casts doubt on finality.

### Specific Requested Relief

For the reasons stated above and in Movant's prior filings (Dkt. 4126 and Dkt. 4127), the following relief is respectfully requested:

1. **Production or judicial authentication of the shareholder ledger** as of September 29, 2023, including the identity and share count of all holders whose interests were treated as "Allowed";

2. **Reconciliation of all Class 9 interests**—whether listed, scheduled, DRS-held, or held in brokerage accounts—against the total number of shares outstanding on the Effective Date;

3. **Clarification via amended order or memorandum** that the Plan canceled all equity interests in Class 9—not just those formally "Allowed"—or, alternatively, direction that any remaining equity not listed on Dkt. 219 be deemed extinguished absent objection by a date certain.

This relief is narrowly tailored to protect due process, ensure fair treatment under the Bankruptcy Code, and allow this estate to emerge cleanly, without lingering uncertainty that could later cloud or compromise any successor transaction.

### National Uniformity and the Need for Clarification

Article I, Section 8, Clause 4 of the U.S. Constitution empowers Congress "[t]o establish... uniform Laws on the subject of Bankruptcies throughout the United States." Yet in practice, the treatment of equity interests—particularly in cases involving DTCC/Cede & Co., synthetic dilution, or transfer agent opacity—has been inconsistent. Cases like EXPRQ and BBBYQ show that structurally similar shareholder classes are treated differently post-confirmation, not due to substantive law, but because of ambiguities, incomplete ledgers, and failure to clarify the meaning of "Allowed Interests."

This Court has the discretion—and, arguably, the constitutional responsibility—to ensure that all Class 9 equity holders are treated uniformly, transparently, and in a way that preserves market confidence in the bankruptcy system.

### XIII. CONCLUSION AND [SECOND AMENDED] PROPOSED ORDER

The ambiguity surrounding the definition and treatment of Class 9 equity Interests—especially the distinction between "Allowed" and other Interests—renders the Plan vulnerable to uncertainty, unequal treatment, and reduced estate value. If Class 9

Interests were not uniformly cancelled, and if no formal reconciliation process took place on or before September 29, 2023, then the Plan Administrator and any potential buyers lack the foundational data needed to enable reorganization or equitable recovery. As such, Movant respectfully urges this Court to compel production of the shareholder ledger maintained by the transfer agent as of September 29, 2023, or such other relief as the Court deems just and proper to quantify and treat Class 9 Interests fairly.

Below is the seconded and amended and restated proposed order of this motion:

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

In re:
Bed Bath & Beyond Inc., et al.,
Debtors.

Case No. 23-13359 (VFP)
Chapter 11 (Jointly Administered)

**[SECOND AMENDED AND RESTATED] [PROPOSED ORDER]**

**ORDER GRANTING MOTION TO COMPEL DISCLOSURE AND
RECONCILIATION OF SHAREHOLDER LEDGER**

Upon the motion of Jeffrey Mead Kurzon, pro se shareholder (Dkts. 4126, 4127, and [___]), oral argument having been heard on June 17, 2025, and for good cause shown,

**IT IS HEREBY ORDERED THAT:**

1. The Plan Administrator shall, within seven (7) days of the entry of this Order, file under seal and serve upon Movant a copy of the shareholder ledger or equivalent record maintained by AST (or any other applicable transfer agent) identifying all Class 9 equity holders as of the Plan's Effective Date, September 29, 2023.

2. The Plan Administrator shall also file a sworn declaration indicating whether any reconciliation, audit, or verification process was conducted to determine the total number of Class 9 shares outstanding as of the Plan's Effective Date.

3. The Court shall retain jurisdiction to enforce this Order and to determine any
   further relief necessary to ensure equal treatment of Class 9 claimants and to
   preserve or enhance estate value.

**IT IS FURTHER ORDERED THAT:**

Nothing in this Order shall be construed to modify, vacate, or otherwise affect the terms
of the confirmed Plan, the Confirmation Order, or any distributions made thereunder.
This Order is entered solely for the purpose of facilitating reconciliation of the
shareholder ledger and associated disclosures as of the Plan's Effective Date.

**IT IS FURTHER ORDERED THAT:**

Nothing in this Order shall waive or limit the rights of Movant or any equity holder to
seek appropriate relief consistent with applicable law and the terms of the confirmed
Plan.

**IT IS SO ORDERED.**

Dated: _____
Newark, New Jersey

**Hon. Vincent F. Papalia**
**United States Bankruptcy Judge**

This Second Supplement is submitted under penalty of perjury pursuant to 28

U.S.C. § 1746.

Respectfully submitted,

Jeffrey M. Kurzon, Pro Se

## CERTIFICATE OF SERVICE

I, Jeffrey Mead Kurzon, certify that on June 2, 2025, I submitted by Priority Mail Express the within Second Supplemental Filing in Support of Motion to Compel Disclosure and Reconcilliation of Shareholder Ledger to Compel Disclosure of Shareholder Ledger and Reconcile Share Discrepancy to Maximize Estate Value to the Clerk of the United States Bankruptcy Court, District of New Jersey, and that I served copies via email immediately thereafter (or as soon as practicable) on the following parties of interest, together with the accompanying cover letter to the Clerk and Exhibits A through F:

By USPS Priority Mail Express to:
• Clerk of the Court
United States Bankruptcy Court, District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

By Email (on June 2, 2025, or as soon as practicable thereafter):

• Plan Administrator:
Michael Goldberg
michael.goldberg@akerman.com
(cc to counsel below)

• Counsel for the Plan Administrator:
Bradford J. Sandler – bsandler@pszjlaw.com
Robert J. Feinstein – rfeinstein@pszjlaw.com

• Debtors' Lead Counsel:
Kirkland & Ellis LLP
Joshua A. Sussberg – joshua.sussberg@kirkland.com
Emily Geier – emily.geier@kirkland.com

• Debtors' Local Counsel:
Michael D. Sirota, Esq.
COLE SCHOTZ P.C.
msirota@coleschotz.com

• Office of the United States Trustee for Region 3:
ustpregion03.ne.ecf@usdoj.gov
Fran B. Steele, Esq. – Fran.B.Steele@usdoj.gov
One Newark Center

1085 Raymond Blvd., Suite 2100
Newark, NJ 07102

I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 2, 2025
/s/ Jeffrey Mead Kurzon
Jeffrey Mead Kurzon
Pro Se, Pro Bono (Not Admitted; Not Pro Hac Vice), Pro Patria, Pro Publico
P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com | 212-203-8918

# EXHIBIT A

A



Operations Center
6201 15th Avenue, Brooklyn,
NY 11219
astfinancial.com,
help@astfinancial.com
(800) 937-5449

October 01, 2023

**JEFFREY MEAD KURZON**    REDACTED
PETERBOROUGH NH 03458

Registration:    **JEFFREY MEAD KURZON**
Company:    **BED BATH & BEYOND INC**
Account:    REDACTED

To Whom It May Concern:

As of Sunday, October 01, 2023, the open holdings in BED BATH & BEYOND INC account number Redacted are:

**Certificates:**

| Certificate Number | Issuance Date | Amount |
|---|---|---|
| Total Shares | | 0.000 |

If you are not in possession of any of the certificates listed, notify us immediately by reporting them lost or stolen on our website or in writing to the AST address above – Attn: Lost Securities. Please include the missing certificate number(s).

**Book Entry/DRS Shares (electronically held)**

| DRS Number | Issuance Date | Amount |
|---|---|---|
| BK*0006126 | 16-Feb-2023 | 100.000 |
| BK*0007252 | 30-Mar-2023 | 403.000 |
| BK*0008364 | 11-May-2023 | 800.000 |
| BK*0009427 | 12-Jun-2023 | 1216.000 |
| BK*0009615 | 22-Jun-2023 | 6200.000 |
| BK*0009616 | 22-Jun-2023 | 7003.000 |
| BK*0009780 | 03-Jul-2023 | 16200.000 |
| BK*0009996 | 11-Jul-2023 | 10365.000 |
| BK*0010261 | 18-Jul-2023 | 5411.000 |
| BK*0010315 | 19-Jul-2023 | 4237.000 |
| BK*0011109 | 15-Aug-2023 | 1111.000 |
| BK*0011513 | 28-Aug-2023 | 133.000 |
| BK*0011551 | 29-Aug-2023 | 1111.000 |
| BK*0012053 | 08-Sep-2023 | 2000.000 |
| BK*0012242 | 13-Sep-2023 | 1333.000 |
| BK*0014660 | 26-Sep-2023 | 385.000 |
| Total Shares | | 58008.000 |

**Dividend Reinvestment or Direct Stock Purchase Shares**

| Total Shares | | 0.000 |
|---|---|---|

| Total Market Value: | As of 29-Sep-2023 | $4,640.64 |
|---|---|---|

Share prices are as of close of business the business day preceding this letter and are provided by a third party. AST does not guarantee the accuracy of such information and neither AST nor its provider will be liable for any informational errors, or for any actions taken in reliance on such prices.

Sincerely,
AST Shareholder Services

A1



**Invest**

SoFi Securities LLC
234 1st Street
San Francisco, CA 94105
Phone (855) 525-7634

*October 1, 2023 – October 31, 2023*

PAGE 4 OF 11

ACCOUNT NUMBER  REDACTED  *JML*

JEFF KURZON

▲ ACCOUNT ACTIVITY (CONTINUED)

**BUY / SELL TRANSACTIONS** (continued)

| TRANSACTION | DATE | ACCOUNT TYPE | DESCRIPTION | QUANTITY | PRICE | DEBIT | CREDIT | COMMISSION |
|---|---|---|---|---|---|---|---|---|
| BOUGHT | | | | | | | | |
| SOLD | 10/26/23 | M | BED BATH & BEYOND INC COMMON STOCK PENNY FOR THE LOT CUSIP: 075896100 | 1,000 | | | 0.01 | |

REDACTED *JML*

REDACTED *JML*

A2

# E✱TRADE

from Morgan Stanley

Page 7 of 8

**CLIENT STATEMENT** | For the Period October 1-31, 2023

## Account Detail

Self-Directed Brokerage Account    JEFFREY M KURZON

*Redacted*

## ACTIVITY

### CASH FLOW ACTIVITY BY DATE

Activity      Settlement

*Redacted gnh*

## TRANSFERS, CORPORATE ACTIONS AND ADDITIONAL ACTIVITY

### CORPORATE ACTIONS

| Activity Date | Activity Type | Description | Comments | Quantity |
|---|---|---|---|---|
| 10/18 | Exchange Delivered Out | BED BATH & BEYOND INC | NO STOCKHOLDERS EQUITY | (122.000) |

## MESSAGES

**Senior Investor Helpline**
For any inquiries or potential concerns, senior investors or someone acting on their behalf may contact our Firm by calling (800) 280-4534.
**Important Information Regarding Your Account Summary**
The Account Summary section on this statement reflects information from the date your account was transferred to Morgan Stanley Smith Barney LLC or, if this is a new account, the date the account was opened. To
view all historical data, (i.e., Realized Gain/(Loss) Information) please visit etrade.com/gainloss.

A3



moomoo

| Out | 2023-10-18 | BBBYQ(BED BATH AND BEYOND) | –1,000 | 2531962 | Remove Worthless #BBBYQ |

**Ending Overview**

Redacted Jmh

A4

## Statement for Account #

[Redacted]

10/01/23 - 10/31/23

### Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/ Cash Activity* | Description | Symbol/ CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 10/10/23 | 10/10/23 | Cash | Journal - Other | PURCHASE FDIC INSURED DEPOSIT ACCOUNT | - | - | 0.00 | (4.14) | 0.00 |
| 10/18/23 | 10/18/23 | Cash | Delivered - Other | BED BATH AND BEYOND DELISTED 10/2/23 REMOVE WORTHLESS SECURITY Auto Reorg#65714(REMOVE WORTHLESS | BBBYQ | 44- | 0.00 | - | 0.00 |

Redacted  [signature]

**Closing Balance**                                                                                          $4.74

TD Bank NA

FDIC Insured Deposit Account (IDA) balances reflected in your brokerage account are FDIC-insured up to applicable limits and held by one or more banks ("Program Banks"). Three of the Program Banks are Charles Schwab Bank, SSB; Charles Schwab Premier Bank, SSB; and Charles Schwab Trust Bank, each an affiliate of TD Ameritrade.

### Important Information

                                                                                                            $4.74

**BREAKPOINTS**
Certain purchases of Class A Mutual Funds may be eligible for breakpoints on, and waivers of, the sales charge. To learn more about breakpoint discounts, go to http://www.finra.org/industry/issues/breakpoints.  For more information on waiver eligibility, please refer to the fund prospectus.

A5

INVESTMENT REPORT
October 1, 2023 - October 31, 2023

Account #

JEFFREY MEAD KURZON - TRADITIONAL IRA

# Activity

## Other Activity Out

| Settlement Date | Security Name | Symbol/ CUSIP | Description | Quantity | Price | Transaction Cost | Amount |
|---|---|---|---|---|---|---|---|
| 10/18 | BED BATH AND BEYOND COM USD0.01 *EXPIRED POSITION* EXPIRATION #REORCM05154089900000 | 075896100 | Expired | -27,000 | - | - | - |

**Total Other Activity Out**

# Additional Information and Endnotes

**Estimated Annual Income (EAI) & Estimated Yield (EY)** - EAI for fixed income is calculated using the coupon rate. For all other securities, EAI is calculated using an indicated annual dividend (IAD). The IAD is an estimate of a security's dividend payments for the next 12 months calculated based on prior and/or declared dividends for that security. EY reflects only the income generated by an investment and not changes in its price which may fluctuate. Interest and dividend rates are subject to change at any time and may be affected by current and future economic, political and business conditions. EAI and EY are provided for informational purposes only and should not be used or relied on for making investment, trading or tax decisions. EAI and EY are based on data obtained from information providers believed to be reliable, but no assurance can be made as to accuracy, timeliness or completeness. Please refer to the Help/Glossary on Fidelity.com for additional information regarding these **calculations.**

**Copyright 2022, S&P Global Market Intelligence.** Reproduction of any information, data or material, including ratings ("Content") in any form is prohibited except with the prior written permission of the relevant party. Such party, its affiliates and suppliers ("Content Providers") do not guarantee the accuracy, adequacy, completeness, timeliness or availability of any Content and are not responsible for any errors or omissions (negligent or otherwise), regardless of the cause, or for the results obtained from the use of such Content. In no event shall Content Providers be liable for any damages, costs, expenses, legal fees, or losses (including lost income or lost profit and opportunity costs) in connection with any use of the Content. A reference to a particular investment or security, a rating or any observation concerning an investment that is part of the Content is not a recommendation to buy, sell or hold such investment or security, does not address the suitability of an investment or security and should not be relied on as investment advice. Credit ratings are statements of opinions and are not statements of fact.

**Moody's® Copyright 2022, Moody's Investors Service, Inc.** ("Moody's"). Moody's ratings ("Ratings") are proprietary to Moody's or its affiliates and are protected by copyright and other intellectual property laws. Ratings are licensed to Licensee by Moody's. RATINGS MAY NOT BE COPIED OR OTHERWISE REPRODUCED, REPACKAGED, FURTHER TRANSMITTED, TRANSFERRED, DISSEMINATED, REDISTRIBUTED OR RESOLD, OR STORED FOR SUBSEQUENT USE FOR ANY SUCH PURPOSE, IN WHOLE OR IN PART, IN ANY FORM OR MANNER OR BY ANY MEANS WHATSOEVER, BY ANY PERSON WITHOUT MOODY'S PRIOR WRITTEN CONSENT. Moody's® is a registered trademark.

Please go to Fidelity.com/disclosures to review important legal and regulatory disclosures. Historical statements, confirms and other regulatory documents are available to access and download at Fidelity.com/statements.

For more information about your statement, please refer to our **Frequently Asked Questions** document at Fidelity.com/statements.

MR_CE_BPMLCPBBBFHCT_BBBBB 20231031

17 of 18

A6

INVESTMENT REPORT
October 1, 2023 - October 31, 2023

Account #
**JEFFREY MEAD KURZON - ROTH IRA**

# Activity

## Securities Bought & Sold (continued)

| Settlement Date | Security Name | Symbol/CUSIP | Description | Quantity | Price | Transaction Cost | Amount |
|---|---|---|---|---|---|---|---|
| Total Securities Bought | | | | | | | $0.04 |
| Net Securities Bought & Sold | | | | | | | -$0.04 |

## Other Activity Out

| Settlement Date | Security Name | Symbol/CUSIP | Description | Quantity | Price | Transaction Cost | Amount |
|---|---|---|---|---|---|---|---|
| 10/18 | BED BATH AND BEYOND COM USD0.01 *EXPIRED POSITION* EXPIRATION #REORCM00615406900000 | 075896100 | Expired | -1,200.000 | | | |

**Total Other Activity Out**

## Core Fund Activity

*For more information about the operation of your core account, please refer to your Customer Agreement.*

| Settlement Date | Account Type | Transaction | Description | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/13 | CASH | You Sold | FDIC INSURED DEPOSIT AT LEADER BANK IRA NOT COVERED BY SIPC MORNING TRADE @1 | -0.040 | $1.0000 | -$0.04 | -$0.04 |

**Total Core Fund Activity**

MR_CE_BPMLCPBBBFHCT_BBBBB 20231031

s

14 of 18

A7

# Activity

**INVESTMENT REPORT**
October 1, 2023 - October 31, 2023

Account
JEFFREY MEAD KURZON - INDIVIDUAL

## Dividends, Interest & Other Income

*(Includes dividend reinvestment)*

| Settlement Date | Security Name | Symbol/ CUSIP | Description | Quantity | Price | Amount |
|---|---|---|---|---|---|---|

*Redacted*

## Other Activity Out

| Settlement Date | Security Name | Symbol/ CUSIP | Description | Quantity | Price | Total Cost Basis | Transaction Cost | Amount |
|---|---|---|---|---|---|---|---|---|
| 10/18 | BED BATH AND BEYOND COM USD0.01 *EXPIRED POSITION* EXPIRATION #REORCM0051540690000 | 075896100 | Expired | -215.000 | | $36.51 | | |
| 10 | | | | | | | | |

**Total Other Activity Out**

MR_CE_BPMLCHBBOBRXL_BBBBB 20231031

# EXHIBIT B

B

Redacted    Jeffrey M. Kurzon, Esq.*
Peterborough, NH 03458
Jeff@Kurzon.com | Cell: 646 416 0382

November 7, 2023

State of New Hampshire -Department of State
Bureau of Securities Regulation
State House, Room 204
Concord New Hampshire 03301-4989

Re: Suspected Securities Wrongdoing re Bed Bath & Beyond Inc. Common Stock (BBBYQ)

To Whom it May Concern:

Please find enclosed a complaint form directed at **Sofi Securities, LLC** of California and **Apex Clearing Corporation** of Texas.

BBBYQ filed chapter 11 bankruptcy in April this year and the court ordered the stock cancelled on or around September 30.

On October 26 or 27 (SoFi has provided inconsistent statements) SoFi and/or Apex "sold" my 1,000 (one thousand) shares of BBBYQ. This "sale" was not authorized by me, and I believe is in direct confrontation with the order of the bankruptcy court. Something that is canceled and extinguished, and does not exist, cannot be sold.

I expect that if there is an amendment to the Second Amended Plan, or the Plan Administrator is successful in recovering value for shareholders, it is possible that my "stock" purchased through SoFi and held through Apex clearing, could be of value. In any event, the "sale" is highly suspicious, and I would like investigated for securities fraud and other illegal activities of the parties involved.

Prior to filing this complaint, I attempted to speak with an attorney or compliance officer at SoFi or Apex, however, either they are too busy or they are hiding because they did a wrong.

Please see attached complaint and exhibits. Thank you for your service and please let me know if I may assist you with your investigation. I reserve all rights and waive none.

Sincerely,

/s/ Jeffrey M. Kurzon

Jeffrey M. Kurzon, Esq.

Att.

*Admitted in New York and Massachusetts

B1

# State of New Hampshire
## Department of State
## Bureau of Securities Regulation

<u>Mailing Address</u>
State House, Room 204
Concord New Hampshire 03301-4989

<u>Location</u>
State House Annex
25 Capitol St.
Concord, New Hampshire 03301
TTY/TDD Relay (603) 225-4033

## <u>COMPLAINT FORM</u>

We appreciate your interest and will proceed with a preliminary investigation as soon as this form is returned, along with any documentary evidence that you may have. *Please remember to attach a copy of any written materials (i.e. checks, contracts, advertisements, letters, etc.) that may relate to your complaint*

## I. Personal Information

| Kurzon | Jeffrey | Mead | 11/2/2023 |
|---|---|---|---|
| LAST NAME | FIRST | MIDDLE | CURRENT DATE |
| *Redacted* HOME ADDRESS | Peterborough CITY | NH STATE | 03458 ZIP | *Redacted* PHONE NO. |

| BUSINESS ADDRESS | CITY *Redacted* STATE | ZIP | PHONE NO. |
|---|---|---|---|
| Attorney TRADE/OCCUPATION | 06-17- *Redacted* DATE OF BIRTH | Single MARITAL STATUS | |

## II. Basis of Complaint

1. With what company, corporation, or association did you invest

Sofi Securities, LLC
NAME                                                855-456-7634
                                                    PHONE NO.

234 1st Street        San Francisco    CA        94105
ADDRESS               CITY             STATE      ZIP

2. List person(s) involved in this transaction:

| Apex Clearing | Corporation | | | | |
|---|---|---|---|---|---|
| LAST NAME | FIRST | MIDDLE | | POSITION | PHONE NO. |
| 350 N. St. Paul St.,130 ADDRESS | Dallas CITY | TX STATE | 75201 ZIP | | |

| LAST NAME | FIRST | MIDDLE | | POSITION | PHONE NO. |
|---|---|---|---|---|---|
| ADDRESS | CITY | STATE | ZIP | | |

B2

3. How did you learn of the investment? (check more than one, if necessary)

☐ Personal Visit   ☐ Telephone Call   ☐ Sales Letter   ☐ Radio

☐ Advertisement   ☐ Newspaper   ☐ Television   ☐ Phone Book

☐ Presentation   ☒ Other (please explain) <u>Friend</u>

4. In what did you purchase or invest (e.g. common stock, promissory note, mutual fund, limited partnership interest, T-bond, investment contract, fractional interest in an oil and gas lease)?

Bed Bath & Beyond Inc. (BBBYQ) Common Stock

5. How many units did you purchase?

1,000 (One Thousand)

6. What was the total amount of your investment? $ <u>$188.15 (6a. see attached)</u>
6a. Please state whether payment was made with cash, check, or charge and enclose a copy of your receipt.
7. On what date was the investment made? <u>Various between 2/7/23 and 8/28/23</u>
8. Did you sign any contract or receive any document to evidence your investment? If yes, please enclose a copy. ☒ Yes   ☐ No

9. List any oral representations made to you by the agent/salesperson.

_____

_____

_____

_____

10. Did you receive an offering circular or prospectus? If yes, please enclose a copy. ☐ Yes   ☒ No

11. Was any other person(s) present when you invested or were solicited to invest? If yes, please list   ☐ Yes   ☒ No

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Name | Address | Phone No. |
| _____ | _____ | _____ |
| Name | Address | Phone No. |

12. Do you know of any other person who invested in the company, corporation, or association? ☒ Yes   ☐ No   If yes, please list

| | | |
|---|---|---|
| <u>Unwilling</u> | <u>to list</u> | _____ |
| Name | Address | Phone No. |
| _____ | _____ | _____ |
| Name | Address | Phone No. |

B3

13. Have you notified or filed a complaint with any of the following?

☐ Private Attorney
☐ Consumer Protection Division
☐ Better Business Bureau
☐ Local Police Department
☐ U.S. Securities and Exchange Commission (SEC)
☐ Local Newspaper
☐ U.S. Attorney's Office
☐ Federal Bureau of Investigation
☐ National Association of Securities Dealers (NASD)

X - I reserve all rights and waive none.

14. Brief summarization of allegations and complaint:

~~On April 23, 2023 Bed Bath & Beyond, Inc. filed ch. 11 bankruptcy but the stock kept trading (Case No. 23-13359) as BBBYQ. On or around September 30, the bankruptcy court ordered that all common stock be canceled. I held 1,000 (one thousand) shares of BBBYQ purchased with Sofi and held in custody by Apex.~~

~~On October 26, or October 27 (records provided by Sofi Securities LLC are inconsistent - see attached), SoFi sold my securities (using Apex) without my consent. The statement shows "penny for the lot" and they did not even have the decency to give me the penny!~~

~~How can a security be sold 1) without the instructions of the holder and 2) against the order of the bankruptcy court (aka, a canceled stock cannot be sold). Please investigate for what seems like illegal securities fraud / larceny. See attached.~~

(Please be sure to attach all documentation received in connection to the transaction.)

I hereby certify that the above information is true and correct to the best of my knowledge.

/s/ Jeffrey M. Kurzon

_____            November 6, 2023
Signature                                    Date

Note: The original complaint and cover to NHDSR contain a hand signature, but otherwise this is a true and complete copy of the November 7, 2023 submission.

84

KURZON – NHBSR COMPLAINT DATED AS OF NOVEMBER 7, 2023

List of Attachments:

A. Record from SoFi mobile app dated October 26, 2023
B. Record from SoFi dated October 27, 2023 **[Well, when was it? October 26 or 27?]**
C. Correspondence with SoFi, October 31- November 6, 2023
D. Correspondence sent to SoFi November 3 (acknowledged in Exhibit C above)
E. Redacted SoFi account statement October 1- October 31 **[Note: here "sale" consideration is $0.01 but in Exhibits A and B, it is $0.00. Well, which was it?]**
F. Exhibit F – APEX Correspondence
G. Exhibit G – Email from SoFi with List of Adherence Contracts (effective February 1, 2022)
   a. Sofi Securities Customer Agreement
   b. Margin Disclosure Statement & Credit Terms & Policies
   c. Apex Customer Margin & Short Account Agreement
   d. SoFi Securities Fee Sheet

Other Sources (last visited November 7, 2023):

https://restructuring.ra.kroll.com/bbby/Home-DocketInfo# (see e.g. Docket 2160, filed September 11, 2023) "SECOND AMENDED JOINT CHAPTER 11 PLAN OF BED BATH & BEYOND INC. AND ITS DEBTOR AFFILIATES" that states top of page 27 **"Each Allowed Interest in BBB shall be canceled, released, and extinguished, and will be of no further force or effect** and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests."

B5

# EXHIBIT C

C

71848-09

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
emily.geier@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF**
**IMPAIRED CLAIMS AND INTERESTS DEEMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT** on August 2, 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. 1716] (the "Order"): (a) authorizing Bed Bath & Beyond Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1712] (as

---

[1]   The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these Chapter 11 Cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.  The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 650 Liberty Avenue, Union, New Jersey 07083.

C1

71848-09

modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 1713] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, pending final approval at the Combined Hearing (as defined below); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan or final approval of the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan.** Specifically, under the terms of the Plan, as a Holder of a Claim or Interest (as currently asserted against the Debtors) that is receiving no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan and final approval of the adequacy of the Disclosure Statement (the "Combined Hearing") will commence on **September 12, 2023 at 2:30 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard before the Honorable Judge Vincent F. Papalia, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Courtroom 3B, Newark, New Jersey 07102.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **September 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline"). Any objection to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on USB flash drives in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be **actually received** on or before the Combined Objection Deadline.

| *Debtors* | |
|---|---|
| **Bed Bath & Beyond, Inc.**<br>650 Liberty Avenue<br>Union, New Jersey 07083<br>Attn: Holly Etlin and David Kastin | |
| ***Counsel to the Debtors*** | ***Counsel to the Debtors*** |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C.,<br>Derek I. Hunter, and Ross J. Fiedler<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn: Charles B. Sterrett | **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Esq., Warren A. Usatine,<br>Esq., and Felice R. Yudkin, Esq. |

---

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

C2

71848-09

| Counsel to the Committee |
|---|
| **Pachulski Stang Ziehl & Jones LLP**<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn: Robert J. Feinstein; Bradford J. Sandler; Paul J. Labov; and Colin R. Robinson |

| United States Trustee |
|---|
| **Office of The United States Trustee**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Fran Steele, John Schanne, and Alexandria Nikolinos |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S./Canada Toll-Free) or +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Solicitation Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232. You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/bbby, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**PLEASE TAKE FURTHER NOTICE THAT ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

IF YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE, PLEASE COMPLETE, SIGN, AND DATE THE RELEASE OPT-OUT FORM ATTACHED AS **ATTACHMENT A** AND SUBMIT IT PROMPTLY THROUGH THE DEBTORS' CASE WEBSITE ACCORDING TO THE INSTRUCTIONS SET FORTH ON THE RELEASE OPT-OUT FORM.

THE RELEASE OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. PREVAILING EASTERN TIME.

YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

---

C3

71848-09

Dated: August 7, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       joshua.sussberg@kirkland.com
             emily.geier@kirkland.com
             derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

C4

71848-09

**Attachment A**

**Release Opt-Out Form**

C5

71848-09

---

## OPTIONAL: RELEASE OPT-OUT FORM

You are receiving this opt-out form (the "Opt-Out Form") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* (the "Plan"). **You are deemed to grant the Third-Party Release set forth below unless you affirmatively opt out by completing and returning this form in accordance with the directions herein or file an objection to the Third-Party Release with the Bankruptcy Court on or before September 1, 2023 at 4:00 p.m. (prevailing Eastern Time).**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.

**If you choose to opt out of the Third-Party Release set forth in Article X.D of the Plan, please promptly complete, sign, and date this Opt-Out Form and electronically submit it to Kroll Restructuring Administration LLC's (the "Notice and Claims Agent") online voting portal (the "E-Ballot Portal") or the opt-out portal designated for holders of publicly traded securities (the "Public Securities Opt-Out Portal") at https://restructuring.ra.kroll.com/bbby. Holders may only submit their Opt-Out Form through the Notice and Claims Agent's online E-Ballot Portal or Public Securities Opt-Out Portal, which can be accessed by visiting https://restructuring.ra.kroll.com/bbby/, clicking on the "Submit E- Ballot" or "Public Securities Opt-Out" section of the website, and completing the Opt-Out Form in accordance with the applicable instructions. Paper copies of this Opt-Out Form that are returned to the Debtors or the Notice and Claims Agent will not be counted and electronic copies that are submitted by facsimile or electronic means (other than the online Ballot Portal) will not be accepted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**

**Unique Opt-Out ID#: _____**

**Please note that Holders of publicly traded securities in Class 9 (Interests in BBB) do not require a Unique Opt-Out ID to submit an opt-out election through the Public Securities Opt-Out Portal.**

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE"). IF THE OPT-OUT FORM IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt-out form, please contact the Notice and Claims Agent immediately by: (a) calling the Notice and Claims Agent at (833) 570-5355 (U.S. /Canada Toll-Free), +1 (646) 440-4806 (International), (b) e-mailing the Notice and Claims Agent at BBBYInfo@ra.kroll.com with a reference to "In re: Bed Bath & Beyond Inc. - Opt-Out Inquiry" in the subject line, or (c) writing to the Notice and Claims Agent at Bed Bath & Beyond Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232.

**Article X.D of the Plan provides for a third-party release (the "Third-Party Release"):**

      **As of the Effective Date, and to the fullest extent allowed by applicable law, each Releasing Party is deemed to have released and discharged each of the Debtors and Released Parties from any and all Claims and Causes of Action, whether known or unknown, including waiving any and all rights any of the foregoing parties may have under any applicable statute, including but not limited to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY," or any doctrine or principle of law restricting the release of claims that a releasor does not know or suspect to exist at the time of**

C6

71848-09

executing a release, which claims, if known, may have materially affected the releasor's decision to give the release, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any intercompany transaction, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, or the Asset Sale Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the ABL Claims, the ABL Obligations, the FILO Claims, the FILO Obligations, the Prepetition Credit Agreement, the Prepetition Credit Facility Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Liquidation Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of Consummation or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims and Causes of Action related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the "third party release" set forth above does not release any post-Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any Asset Sale Transaction, or any document, instrument, or agreement (including the Liquidation Documents and other documents, instruments, and agreements set forth in the Plan Supplement) executed to implement the Plan or any Asset Sale Transaction.

Without limiting the foregoing, from and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that is given the opportunity to opt out of the releases contained in this Article X.D and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (other than the DIP Agent, the DIP Lenders, the ABL Agent, the FILO Lenders, or the FILO Agent) that opted out of (or otherwise did not participate in) the releases contained in this Article X.D may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. For the avoidance of doubt, the terms of this paragraph shall not apply to the Plan Administrator. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XIII of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third-party release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating any Asset Sale

C7

71848-09

Transaction and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the third-party release; (e) in the best interests of the Debtors and their respective Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.

Any contrary provision hereof notwithstanding, nothing contained in this Plan, including the foregoing release shall release, compromise, impair or in any way affect any Non-Released Claims, including the D&O Claims.

*　　*　　*

Under the Plan, "*Released Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) the Retained Professionals; and (e) with respect to each of the foregoing entities in clauses (a) through (d), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; and (f) the D&O Parties; *provided* that no party, including a D&O Party, shall be a Released Party with respect to any Non-Released Claims. Notwithstanding anything to the contrary herein, (i) the Debtors do not release the D&O Parties, and (ii) the term "Released Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

Under the Plan, "*Releasing Party*" means each of the following, solely in its capacity as such: (a) the ABL Lenders; (b) the Predecessor ABL Agent; (c) the Creditors' Committee; (d) with respect to each of the foregoing entities in clauses (a) through (c), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (e) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) all Holders of Claims or Interest who vote to accept the Plan; *provided* that no party, including a D&O Party, shall be a "Releasing Party" with respect to any Non-Released Claims. For the avoidance of doubt, the term "Releasing Party" does not include: (a) the Debtors or the Wind-Down Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the ABL Agent; (e) the FILO Lenders; or (f) the FILO Agent.

**Important information regarding the Third-Party Release:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN, AS SET FORTH ABOVE. YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN ONLY IF YOU (A) TIMELY SUBMIT THE FORM BELOW OR (B) TIMELY FILE WITH THE BANKRUPTCY

3

C8

71848-09

COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES **CONTAINED IN ARTICLE X OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.** THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION. BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE X.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**OPTIONAL RELEASE ELECTION.** **YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE X.D OF THE PLAN IF YOU CHECK THE BOX BELOW:**

| |
|---|
| **[X] By checking this box, you elect to opt OUT of the Third-Party Release** |

**Certifications.**

By signing this Opt-Out Form, the undersigned certifies:

(a) that, as of the Voting Record Date, either: (i) the undersigned is a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan or (ii) the undersigned is an authorized signatory of a Holder of a Claim or Interest against the Debtors that is not entitled to vote on the Plan;

(b) that the Holder has received a copy of the *Notice of Non-Voting Status to Holders of Unimpaired Claims or Interests Deemed to Reject the Plan* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has submitted the Release Opt-Out Form with respect to all of its Claims or Interests; and

(d) that no other Opt-Out Form with respect to these Claims or Interests has been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | **Jeffrey Mead Kurzon** |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | **Jeffrey Mead Kurzon** |
| | (If other than the Holder) |
| Title: | **Natural Person** |
| Address: | Peterborough, NH 03458 |
| | Redacted |
| Telephone Number: | |
| Email: | Jeff@Kurzon.com |
| Date Completed: | 08/14/2023 |

If your address or contact information has changed, please note the new information here.

C9

71848-09

**IF YOU HAVE MADE THE OPTIONAL OPT-OUT ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND SUBMIT IT *PROMPTLY* BY THE METHOD BELOW.**

---

By electronic, online submission:

To submit your Opt-Out Form via the online E-Ballot Portal, please visit https://restructuring.ra.kroll.com/bbby, click on the "Submit E-Ballot" or "Public Securities Opt-Out" section of the website (as applicable) and follow the instructions to submit your Opt-Out Form.

**IMPORTANT NOTE:   You will need the following information to retrieve and submit the electronic version of your Opt-Out Form:**

**Unique Opt-Out ID#: _____**

**Please note that holders of publicly traded securities in Class 9 (Interests in BBB) do not require a Unique Opt-Out ID to submit an opt-out election through the Public Securities Opt-Out Portal.**

The E-Ballot Portal and Public Securities Opt-Out Portal are the sole manner in which Opt-Out Forms will be accepted.  Opt-Out Forms submitted in hard copy format, or in electronic format by facsimile or email will not be counted.

---

**THE VOTING DEADLINE IS SEPTEMBER 1, 2023 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE THE VOTING DEADLINE.**

---

Please note that if you are a Holder of Class 9 (Interests in BBB) and hold a position in one of the securities described in the chart below through DTC or another similar securities depository, you may not submit an opt-out election through the "Submit E-Ballot" section of the website and must click on the "Public Securities Opt-Out" link located on the left-hand navigation panel of the Debtors' restructuring website at https://restructuring.ra.kroll.com/bbby/ to submit an electronic version of your Opt-Out Form.

| DESCRIPTION | CUSIP/ISIN |
|---|---|
| Common Stock | 075896100 / US0758961009 |
| Warrant | 075896118 / US0758961181 |
| Series A Convertible Preferred Stock | 075896209 / US0758962098 |

C10

71848-09

Eballot Confirmation:                    3335-2-MNLBA-897852759

EBallot Electronically Submitted on (UTC) :2023-08-14T17:44:07.144Z

Submitted by:

C11

# EXHIBIT D

 Gmail

Jeff Kurzon <jeff@kurzon.com>

**Request for Full Docket Index – BBBYQ Case No. 23-13359**

**Jeff Kurzon** <Jeff@kurzon.com>                                   Wed, May 28, 2025 at 3:57 PM
To: bbbyinfo@ra.kroll.com
Cc: Jeff Kurzon <jeff@kurzon.com>

Dear Kroll BBBY Team,

As a pro se party in interest in the Bed Bath & Beyond Chapter 11 case (Case No. 23-13359), I respectfully request a complete docket index or export — ideally in spreadsheet or PDF format — listing all docket entries, dates, and document descriptions. This is essential for preparing my filings and reviewing the record accurately.

I understand from our phone call that you typically direct parties to the online docket. However, due to the volume of entries (well over 4,000), a complete list would help ensure procedural fairness and support judicial economy.

Additionally, I would appreciate it if you could confirm:

1. Whether any formal notice was sent to Class 9 equity holders requesting a Proof of Interest, such as was done in the Meta Materials, Inc. case now pending before the Bankruptcy Court in Nevada.

2. Whether any affidavits of service or noticing declarations include AST, Equiniti or other transfer agents, as equity holder record keepers.

Thank you in advance for your assistance and professional support.

Sincerely,
Jeffrey M. Kurzon
Pro Se Party in Interest
Jeff@Kurzon.com

P.O. Box 454

Peterborough, NH 03458

Phone (Call/Text): 212-203-8918

--

D1

 Gmail

Jeff Kurzon <jeff@kurzon.com>

---

## Request for Full Docket Index – BBBYQ Case No. 23-13359

**bbbyinfo** <ProjectButterflyInfo@duffandphelps.mail.onmicrosoft.com>
To: Jeff Kurzon <Jeff@kurzon.com>

Wed, May 28, 2025 at 3:58 PM

Thank you for contacting the restructuring information center for Bed Bath & Beyond, including buybuy BABY. **This inbox is no longer regularly monitored, and you will not receive an additional response to your email.** However, all change of address requests submitted to this inbox will be processed and confirmed by Kroll.

For more information about these chapter 11 cases, you can visit https://restructuring.ra.kroll.com/bbby. Please note that all claims, including any claims for unused gift cards, will be addressed through the chapter 11 process. Bed Bath & Beyond has established a claims process for creditors to submit proofs of claim, which may be accessed at https://restructuring.ra. kroll.com/bbby/EPOC-Index. **All proofs of claim, with the exception of claims on behalf of government agencies, must be submitted so as to be actually received on or before July 7, 2023.** Please review the information provided in the bar date notice carefully and consult with your attorney should you have any questions. A copy of the bar date notice can be found here: Bar Date Notice

This email is confidential and subject to important disclaimers and conditions, including those regarding confidentiality, legal privilege and certain legal entity disclaimers, available at https://www.kroll.com/disclosure. Our Privacy Policy is available at https://www.kroll.com/en/privacy-policy.

D2

# EXHIBIT E

E

 Gmail                                                    Jeff Kurzon <jeff@kurzon.com>

## Legal Inquiry Re ticker BBBYQ, account number 08342 - 0000015343

**Jeff Kurzon** <Jeff@kurzon.com>                                      Wed, Mar 27, 2024 at 3:51 PM
To: help@astfinancial.com, Help AST <HelpAST@equiniti.com>

Dear EQ,

My law office is investigating civil and criminal financial fraud concerning a security which was registered with AST, which I now understand is owned by EQ, specifically Bed, Bath and Beyond Inc.(ticker BBBYQ, account number 08342 - 0000015343). I was a registered shareholder of 58,008 shares of BBBYQ as of September 29, 2023, which was the date that the federal bankruptcy court in New Jersey cancelled, released and extinguished the common shares. The bankruptcy action is still pending, and this request is timely and "time is of the essence." Attached is proof of my ownership.

Kindly provide me with the following information so that my investigation can continue and I can properly enforce my rights in the appropriate venue(s):

1. What was the total amount of issued and outstanding common shares of BBBYQ as of the close of business on September 29, 2023?
2. How many common shares were registered with AST not held by Cede & Co.?
3. How many common shares were registered with AST as held by Cede & Co.?
4. Any other information salient to my inquiry.

These requests are properly made under Section 624 of the New York Business Corporation Law, as well as the common laws of the United States and the states of New York. These laws grant shareholders the right to inspect certain corporate documents if the request is made in good faith and for a proper purpose. As transfer agent, you are (were) privy to the corporation's stock ledger.

The crimes I suspect are unlawful naked shorting, which is also known as market manipulation, securities fraud, and grand larceny. The civil tort of "conversion" (aka theft) is also being investigated. I do not allege any wrongdoing as against AST or EQ. Therefore, this request has a proper purpose and you have my word as a New York attorney, I am making this request in good faith and with proper legal justifications.

Thank you for your assistance and cooperation in this serious matter.

Sincerely,

Jeffrey M. Kurzon, Esq.
(New York attorney)
Law Office of Jeffrey M. Kurzon
P.O. Box 454
Peterborough, NH 03458

--
-Confidential

📎 **08342_AccountBalanceLetter AST BBBYQ.htm**
152K

E1

# EXHIBIT F

F

 Gmail

Jeff Kurzon <jeff@kurzon.com>

## Re: Legal Preservation Notice – Bed Bath & BeyondInc. (BBBYQ) Shareholder Records D.N.J. Bankruptcy Case No. 23-13359 (VFP) Anticipated Proceedings Under Fed. R. Civ. P. 27 (EDNY/SDNY)

**Jeff Kurzon** <Jeff@kurzon.com>                                                    Thu, May 22, 2025 at 8:48 AM
To: Help AST <HelpAST@equiniti.com>, help@astfinancial.com, investors@astfinancial.com

**Equiniti Trust Company, LLC**
Attn: Legal Department
6201 15th Avenue
Brooklyn, NY 11219

Date: May 22, 2025

*Via Email to* HelpAST@equiniti.com, help@astfinancial.com, and investors@astfinancial.com
*Via USPS (as a formality and courtesy)*

**Re: Legal Preservation Notice – Bed Bath & Beyond Inc. (BBBYQ) Shareholder Records**
**D.N.J. Bankruptcy Case No. 23-13359 (VFP)**
**Anticipated Proceedings Under Fed. R. Civ. P. 27 (EDNY/SDNY)**

To Whom It May Concern:

I am a New York–licensed attorney, a pro se shareholder, and a party in interest (member of Class 9) in the Chapter 11 bankruptcy of Bed Bath & Beyond Inc., pending before Judge Vincent F. Papalia in the United States Bankruptcy Court for the District of New Jersey (Case No. 23-13359). I have actively participated in the case and have filed objections and a pending motion concerning unresolved shareholder claims and the treatment of directly registered shares.

This letter serves as **formal legal notice** that you are now under an obligation to preserve all records and communications in your custody or control related to Bed Bath & Beyond Inc. (CUSIP: 075896100 / ticker: BBBYQ), particularly those involving the shareholder ledger, direct registration, and related correspondence. I further notify you that I am actively evaluating actions in the Southern or Eastern District of New York under **Federal Rule of Civil Procedure 27**, which authorizes discovery to perpetuate testimony and preserve critical evidence in anticipation of litigation.

At this time, I am **not asserting a claim** against Equiniti or AST, and I make no accusations of wrongdoing. However, given the conduct and silence of other parties, it is imperative that you take immediate steps to ensure that no potentially relevant evidence is altered, destroyed, or concealed.

### Scope of Preservation

You are requested to preserve, in full and unaltered form, the following:

1. **The complete shareholder ledger for Bed Bath & Beyond Inc. as of September 29, 2023,** including:

   - Names and addresses of registered holders

   - Share totals and transaction history

   - DRS enrollment and transfer data

   - Audit trails, metadata, and access logs

2. **All internal communications and records** relating to BBBYQ shares from **January 1, 2023 to the present.**

3. **All external communications** between Equiniti/AST and any of the following:

   - The U.S. Trustee or any government official

   - Kirkland & Ellis LLP

   - Pachulski Stang Ziehl & Jones LLP

   - Cole Schotz P.C.

   - Cede & Co. / DTC
     ... regarding:

   - Share cancellations

   - Final shareholder counts

   - Direct registration processes

*F1*

5/31/25, 7:37 PM          Kurzon LLP Mail - Re: Legal Preservation Notice – Bed Bath & Beyond Inc. (BBBY) Shareholder Records D.N.J. Bankruptcy Case...

Case 23-13359-VFP    Doc 4143    Filed 06/04/25    Entered 06/04/25 15:51:37    Desc Main
                              Document    Page 69 of 69

- - Class 9 equity holder treatment or reconciliation

**4. Any document retention, archiving, or destruction policies** applicable to the above items.

You are now on legal notice. Destruction or concealment of any of the above may constitute **spoliation of evidence** or criminal obstruction under **18 U.S.C. § 1519.**

---

**Context: Class 9, Material Omissions, and Shareholder Rights**

I was a common stockholder as of the plan's effective date and filed a timely objection to the confirmed plan by attempting to opt out of the third-party release provisions. I did not consent to any waiver of rights or releases. I reserve all rights to challenge any such release as to myself — particularly if material evidence (such as the shareholder ledger) was withheld at confirmation.

The ledger and related records in your custody are critical to determining whether tens of millions of directly registered shares were improperly excluded from recovery, and whether those shares were ever audited or reconciled against filings by Cede & Co. and others.

---

**Notice of Intent and Good Faith Efforts**

This letter is submitted in good faith — not as a threat, but as part of an effort to ensure transparency, preserve shareholder rights, and protect the procedural integrity of ongoing federal proceedings. I may submit a copy of this notice to the Bankruptcy Court as a supplemental filing.

This preservation demand follows **multiple unanswered attempts** to obtain clarity from parties involved in the bankruptcy. In light of the public interest, systemic risk concerns, and potential fiduciary breaches affecting Class 9, preservation of this evidence is essential.

---

**Requested Confirmation**

Please confirm by **May 30, 2025** that you are preserving the information described above. I remain available to discuss any aspect of this matter respectfully and in confidence.

Sincerely,
**Jeffrey M. Kurzon, Esq.**
NY Bar No. 4164968
Pro Se Shareholder – D.N.J. Case No. 23-13359 (VFP) *(Not Admitted Pro Hac Vice)*
Anticipated Fed. R. Civ. P. 27 Petitioner – SDNY/EDNY
P.O. Box 454, Peterborough, NH 03458
Call/Text: (212) 203-8918
Email: jeff@kurzon.com

F2