| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Robert J. Feinstein (admitted *pro hac vice*)<br>Bradford J. Sandler<br>Beth E. Levine (admitted *pro hac vice*)<br>Edward A. Corma<br>PACHULSKI STANG ZIEHL & JONES LLP<br>1700 Broadway, 36th Floor<br>New York, New York 10019<br>Telephone:  (212) 561-7700<br>Facsimile:  (212) 561-7777<br>rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>blevine@pszjlaw.com<br>ecorma@pszjlaw.com<br><br>*Counsel to the Plan Administrator* |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>Hearing: June 17, 2025 at 10:00 a.m. |

**PLAN ADMINISTRATOR'S OPPOSITION TO
MOTION TO COMPEL DISCLOSURE OF SHAREHOLDER LEDGER AND
RECONCILE SHARE DISCREPANCY TO MAXIMIZE ESTATE VALUE**

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), files this opposition (the "Opposition") to the *Motion to Compel Disclosure of*

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

*Shareholder Ledger and Reconcile Shareholder Discrepancy to Maximize Estate Value* (the "Motion") [Docket No. 4126], the *Supplemental Evidence and Clarification* (the "Supplemental Filing") [Docket No. 4127]*,* and the *Second Supplemental Filing in Support of Motion to Compel Disclosure* (the "Second Supplemental Filing") [Docket No. 4143] filed by Jeffrey Mead Kurzon ( "Mr. Kurzon") who purports to be a former shareholder of Bed Bath & Beyond Inc. ("BBB"). In support of the Opposition, the Plan Administrator states as follows:

## PRELIMINARY STATEMENT

1. Here we go again. Mr. Kurzon was a shareholder of BBB until his stock, like that of all other stockholders, was cancelled under the confirmed Plan[3] and Confirmation Order. Notwithstanding his prior appearance before this Court and this Court's previous ruling that because their shares were canceled by operation of the Plan, stockholders have no recovery under the confirmed Plan, Mr. Kurzon continues to harass the Plan Administrator and to waste both the estates' assets and judicial resources.

2. Despite his lack of standing, Mr. Kurzon seeks an order (i) compelling the Plan Administrator to (a) provide him with the shareholder ledger maintained by Equiniti Trust Company (formerly AST) as of the Effective Date of the Plan and (b) compelling the Plan Administrator to "submit a written explanation and reconciliation of the discrepancy between the number of shares reported as held by Cede & Co . . . (as shown in Dkts. 219 and 2631) and the number of shares reported outstanding by the Debtors" (collectively the "Requested

---

[3] Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Opposition.

Information"), and (ii) preserving "the rights of [former] equity holders to pursue further relief, claims, or remedies as warranted." *See* Motion at 2.[4]

3. This not the first time Mr. Kurzon has asked this Court to compel the Plan Administrator to provide the Requested Information. On July 30, 2024, Mr. Kurzon wrote a letter to this Court [Docket No. 3452] in which, *inter alia*, he (i) sought the relief now requested in this Motion and (ii) supported the motion of another purported BBB shareholder for appointment of an equity committee (the "Equity Committee Motion") [Docket No. 3477]. At the hearing on the Equity Committee Motion (at which this Court denied the Equity Committee Motion), this Court stated that it would not entertain Mr. Kurzon's request that the Plan Administrator be compelled to provide the Requested Information, because that request was procedurally improper.[5]

4. As discussed in greater detail below, the Motion should be denied, because (i) the Mr. Kurzon has no standing to bring the Motion because his shares were extinguished under the terms of the Plan and the Confirmation Order, and he is therefore not entitled to any recovery under the Plan, *see* Plan, Arts. III.B.9, IV.D, and VII.B and Confirmation Order, ¶ 98, (ii) the Motion is procedurally improper because (a) a motion to compel the production of information cannot be brought where, as here, there is no failure to respond to a pending subpoena or discovery request, (b) in the absence of unanswered interrogatories or oral or written deposition questions in an adversary proceeding or contested matter, there is no basis for requiring the Plan Administrator to submit written explanations of anything, (c) to the extent Mr. Kurzon seeks to

---

[4] Mr. Kurzon has not amended his motion. To the extent Mr. Kurzon purports to seek additional or different relief by way of the Supplemental Filing or the Second Supplemental Filing, such effort is procedurally improper and should not be countenanced.

[5] *See Transcript of Motions Hearing Before the Honorable Vincent P. Papalia, United States Bankruptcy Court*, dated August 8, 2024 [Docket No. 3458] (the "Transcript"), annexed hereto as **Exhibit A** at 76:16-22.

revoke the Confirmation Order pursuant to Bankruptcy Code section 1144, such request is untimely, and (d) there is no basis for this Court to grant relief from the Confirmation Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable here by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iii) as a result of the Plan Injunction, there are no rights of the former equity holders vis-à-vis the Debtors, the wind-down Debtors, the Released Parties, or the Exculpated Parties that can be preserved.

## BACKGROUND

### I. Overview Of the Chapter 11 Cases

5. On April 23, 2023, each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Court jointly administered the Debtors' Chapter 11 Cases for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[6] Prior to confirmation, the Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (defined below). No party requested the appointment of a trustee or examiner in these Chapter 11 Cases.

6. On September 14, 2023, the Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11*

---

[6] *See Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered April 24, 2023 [Docket No. 75].

4932-4468-3589.8 08728.003                           4

*Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").[7] The Plan is annexed to the Confirmation Order as Exhibit A. The Plan went effective on September 29, 2023 (the "Effective Date").[8] Mr. Kurzon did not file an objection to confirmation of the Plan and did not appeal the Confirmation Order.

## II. Material Provisions of the Plan And Confirmation Order

7. Because the Effective Date has occurred, the terms of the Plan and the Confirmation Order are binding, effective, and fully enforceable.[9] Certain relevant provisions of the Plan and Confirmation Order are discussed below.

### A. Effect of Plan on Claims, Interests, and Causes of Action

8. The Plan effectuated a "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests,[10] and Causes of Action of any nature whatsoever" against or in the Debtors and the properties of the Estates "in consideration for the distributions and other benefits provided pursuant to the Plan." Plan Art. X.A.

9. The Plan explicitly provides for cancellation of all Interests and the Securities that evidence such Interests. Thus it provides that "Securities . . . giving rise to any Claims against or Interests in the Debtors . . . shall be deemed cancelled without any need for a Holder to take further action with respect thereto . . . and the duties and obligations of the Debtors or the Wind-

---

[7] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[8] *Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates and (II) Occurrence of Effective Date*, dated September 29, 2023 [Docket No. 2311] (the "Notice of Entry").

[9] Confirmation Order at ¶ 128 ("On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan . . . and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), [and] all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan[.]").

[10] The term "Interest" is defined in the Plan as "any equity security (as defined in section 101(16) of the Bankruptcy Code." Plan, Art. I.A.87.

Down Debtors, as applicable, any non-Debtor Affiliates shall be deemed satisfied in full, cancelled, released, discharged, and of no force or effect . . . Plan, Art. IV.D.  Similarly, the Plan provides that "[a]fter the Effective date the Plan Administrator . . . (2) shall be deemed to have cancelled pursuant to this Plan all Interests." Plan, Art. VII.B.

10. Article III of the Plan makes clear that even if an Interest is "Allowed," it will still be "cancelled, released, and extinguished" and will be "of no further force or effect[.]," Plan, Art. III.B.9, and that no Holder of an Interest "shall be entitled to any recovery or distribution . . . on account of such Interest[]." *Id*.[11]  Further, Paragraph 98 of the Confirmation Order provides:

> On the later of the Effective Date and the date on which distributions are made pursuant to the Plan . . . any remaining obligations of the Debtors under any . . . Securities, shares . . . or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors **shall be deemed cancelled solely** as to the Debtors and their affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder[.]

Confirmation Order at ¶ 98 (emphasis added). Thus, by operation of the Plan and the Confirmation Order, like all former shareholders, Mr. Kurzon, does not and cannot currently hold shares of BB&B.

### B. Plan Injunction

11. Article X.F of the Plan and Paragraph 114 of the Confirmation Order establish a broad injunction (the "Plan Injunction"). *See* Plan, Art. X.F; Confirmation Order at ¶ 114. Article X.F of the Plan provides, in pertinent part:

---

[11] In the Second Supplemental Filing, relying on Article III.B.9 f the Plan, Mr. Kurzon asserts that only "Allowed Interests" are being cancelled, thus in his view, potentially creating a "two-class subclass within Class 9." Second Supplemental Filing at 10.  This is simply wrong. Article III of the Plan deals with the treatment (and classification) of "**Allowed**" Claims and Interests.  Articles IV and VII deal with the cancellation of all Interests, whether or not they are Allowed.

> Except as otherwise provided in the Plan or the Confirmation Order, all Entities[12] who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded . . . from taking any of the following actions against, as applicable, the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities . . . and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.

Plan, Art. X.F; *see also* Confirmation Order at ¶ 114 (containing substantially the same language). In the Confirmation Order, which also contains the Plan Injunction, the Court expressly found, among other things, that the Plan Injunction set forth in Article X.F of the Plan was "essential" and "necessary to implement the Plan and to preserve and enforce the discharge . . . [and] the Third-Party Release[.]" Confirmation Order at ¶¶ 45, 114. The Plan Injunction was approved pursuant to the Confirmation Order. Confirmation Order at ¶ 101.

12. As set forth in the Confirmation Order, "[a]ll injunctions or stays contained in the Plan or the Confirmation Order (including the [Plan] Injunction) shall remain in full force and effect in accordance with their terms." Confirmation Order ¶ 137.

---

[12] The term "Entity" is defined in the Plan as "hav[ing] the meaning set forth in section 101(15) of the Bankruptcy Code.

### C. Mr. Kurzon Received Notice of All Relevant Documents

13. Mr. Kurzon is an experienced attorney who received ample notice of these cases and the relevant documents. Mr. Kurzon was scheduled by the Debtors as an equity holder. *See* List of Equity Holders [Doc. No. 219] at 21, and while holders of the Debtors' equity interests were not subject to the deadlines set forth in the Bar Date Order, the Debtors' claims and noticing agent Kroll Restructuring Administration LLC ("Kroll") served Mr. Kurzon with the *Notice of Deadline Requiring Submission of Proofs of Claim on or Before July 7, 2023, and Related Procedures for Submitting Proofs of Claim in the Above-Captioned Chapter 11 Cases* (the "Bar Date Notice") on June 2, 2023. *See* Affidavit of Service [Doc. No. 892] at 59 (Exhibit D).

14. Further, in accordance with the *Order (I) (A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan, (C) Approving the Forms of Ballots and Notices in Connection Therewith, (D) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Certain Dates and Deadlines with Respect Thereto, and (E) Granting Related Relief, and (II) (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief* (the "Solicitation Procedures Order") [Doc. No. 1716], on August 7, 2023, Kroll served Mr. Kurzon with a *Notice of Non-Voting Status to Holders of Impaired Claims and Interests Deemed to Reject the Plan* (the "Impaired Non-Voting Notice"), *See* Affidavit of Service [Doc. No. 2135], at 236 (Exhibit M). On that same day, Kroll served Mr. Kurzon with a *Notice of Combined Hearing on the Disclosure Statement, Confirmation of the Plan Filed by the Debtors, and Related Voting and Objection* Deadlines (the "Combined Hearing

Notice"), *see* Kroll Affidavit of Service [Doc. No. 2135], at 769 (Exhibit O).[13] Kroll also served the Impaired Non-Voting Notice via overnight mail or next business day service on banks, brokers, dealer agents, nominees or their agents (collectively the "Class 9 Nominees"), along with instructions and sufficient quantities to distribute it to the beneficial holders of the Debtors' publicly traded debt securities. *See* Affidavit of Service [Doc. No. 2135], at 88-91 (Exhibit J).

15. As a result, Mr. Kurzon was advised that the Debtors were seeking to confirm the Plan, that he would receive no distribution on account of his equity, that he could obtain a copy of the Plan and Disclosure Statement for free on Kroll's website, the date, time and place of the confirmation hearing and how to object to the Plan. He also received specific instructions as to how to opt out of the Plan's third-party releases, which he did, by his own admission. *See* Second Supplemental Filing at 15 and Exhibit C.

## ARGUMENT

### I. Mr. Kurzon Has No Standing To Bring the Motion

16. Mr. Kurzon contends that he has standing to bring his motion pursuant to Bankruptcy Code Section 1109(b) which provides: "(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109.[14] Mr. Kurzon is wrong because he does not qualify under any of these specific categories. While the definition of "party in interest" is broad, this term is limited to parties that have a financial interest in the estate's assets or represent parties that do. *See Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268,

---

[13] A copy of the Impaired Non-Voting Notice is attached as Exhibit H to the Affidavit of Service, and a copy of the Combined Hearing Notice is attached as Exhibit A to the Affidavit of Service. [Docket No. 2135].

[14] *See Certification In Support of Motion* [Docket No. 4126] ¶ 18.

269 (2024) (analyzing section 1109 and noting that "[a] common thread uniting the seven listed parties is that each may be directly affected by a reorganization plan either because they have a financial interest in the estate's assets . . . or because they represent parties that do . . . ."). In contrast, here, because Mr. Kurzon's Interests have been canceled and extinguished, and the express terms of the Plan state that he is entitled to no recovery, he no longer has a financial interest in these Chapter 11 Cases.

17. This is consistent with the U.S. District Court for the Southern District of New York's decision in *In re Bed Bath & Beyond Inc. Section 16(b) Litigation*, 2024 U.S. Dist. LEXIS 104712 (S.D.N.Y. Jun. 11, 2024) (the "District Court Action"). In the District Court Action, the court addressed the question of whether two former shareholders of Bed Beth & Beyond retained a financial interest and standing in their securities litigation. Dismissing their claims because the Plan extinguished their equity, the court explained:

> [C]onfirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan." 11 U.S.C. § 1141(a) . . . . Here, the plain language of the Bankruptcy Plan states that all shares in BBBY were "canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the Plan on Account of such Interests" as of the effective date, September 29, 2023. Slocum Decl. Ex. 8 at 102-03. The Plan effected a "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against the debtors or their property. Hunter Decl. Ex. A at 127. And it decrees that the holders of claims, interests, and causes of action against BBBY are "permanently enjoined and precluded" from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan." *Id.* at 131. **In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy Plan, Plaintiffs fail to establish "some continuing**

> **financial interest in the outcome of this litigation."** *Gollust*, 501
> U.S. at 126.

*Id.*. at \*10 - \*11 (emphasis added); *see also In re WorldCom, Inc.*, 351 B.R. 130, 134-35 (Bankr. S.D.N.Y. 2006) (holding that plaintiff lost standing to bring a derivative claim where his shares in a company were "canceled" and he would "receive no distributions" under the company's reorganization plan).

18. As was the case for the litigants before the S.D.N.Y. District Court, the confirmed Plan binds Mr. Kurzon; the Plan canceled, released, and extinguished his Interests, and the Plan effected a complete settlement, compromise, and release of any Claims, Interests, and Causes of Action that Mr. Kurzon may have had against the Debtors or their property.[15] In other words, Mr. Kurzon no longer has any financial interest in the chapter 11 proceedings, is not a "party in interest," and cannot bring the instant Motion (or be heard on any other matter in these cases).

## II. The Motion Is Procedurally Improper

19. The Motion must also be denied because it is procedurally improper. While it styles itself as a "motion to compel" production of the Requested Material, as this Court observed at the hearing on the Equity Committee Motion: "[y]ou don't just move to compel something until after you have a subpoena or a discovery request that's not complied with. I don't see anything like that . . . ." Transcript at 22:13-15. Similarly, there is no basis for compelling the Plan Administrator to "submit a written explanation and reconciliation," Motion at 2, in the absence of outstanding unanswered interrogatories or deposition questions. There is no pending adversary proceeding or contested matter pending in which discovery was sought, let

---

[15] That Mr. Kurzon "opted-out" of the releases under the Plan does not chance this conclusion because the "opt-out" provision only pertains to the Holders of Interests' release of non-debtor third parties, such as the Unsecured Creditors' Committee and the ABL Lenders—not the release of the Debtors or their property. Therefore, the Plan effected a release of Mr. Kurzon's claims against the Debtors and their property. *See* Plan, art. X.A.–X.D.; *see also* Confirmation Order, at ¶¶ 106–08.

alone outstanding discovery requests that the Plan Administrator has failed to answer. Accordingly, there is no basis for a motion to compel or an order compelling production.

20. The Motion is also procedurally improper to the extent it could conceivably be construed as either a motion pursuant to Bankruptcy Code section 1144 for revocation of the Confirmation Order or pursuant to Bankruptcy Rule 9024 (incorporating Federal Rule of Civil Procedure 60(b) ("FRCP 60(b)")) for relief from the Confirmation Order. A motion for revocation must be brought "at any time before 180 days after the date of the entry of the order of confirmation," 11 U.S.C. § 1144, and that date has long passed.[16] And pursuant to FRCP 60(b), relief from a final judgment, order, or proceeding may only be granted for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FRCP 60(b). None of those reasons have been alleged in any of Mr. Kurzon's submissions to this Court and this provision is therefore of no help to him.

---

[16] The Confirmation Order was entered on September 29, 2023. *See* Notice of Entry [Docket No. 2311]. One hundred and eighty days from entry of the Confirmation Order was March 27, 2024.

### III. The Motion Should Be Denied To the Extent It Seeks To Preserve the Rights Of Equity Holders To Pursue Claims That Are Barred By the Plan Injunction

21. Mr. Kurzon seeks an order that will "preserve the rights of equity holders to pursue further relief, claims, or remedies as warranted" based upon the Requested Information.[17] This relief must be denied to the extent he seeks to preserve any right of any former equity holder to assert claims against any of the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties because the unambiguous terms of the Plan Injunction set forth in Article X.F of the Plan plainly preclude such actions.  Plan Art. X.F.

### CONCLUSION

22. For the reasons stated above, the Plan Administrator respectfully requests that the Court deny the Motion and respectfully requests that the Court grant any additional relief the Court deems just and proper under the circumstances, including reimbursement of reasonable attorneys' fees and other sanctions for requiring the estates to waste estate resources responding to Mr. Kurzon's frivolous motion.

---

[17] As discussed above, Mr. Kruzon has no right to the Requested Information.

| | |
|---|---|
| Dated:  June 10, 2025 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | */s/* Bradford J. Sandler |
| | Robert J. Feinstein (admitted *pro hac vice*) |
| | Bradford J. Sandler |
| | Beth E. Levine (admitted *pro hac vice*) |
| | Edward A. Corma |
| | PACHULSKI STANG ZIEHL & JONES LLP |
| | 1700 Broadway, 36th Floor |
| | New York, New York 10019 |
| | Telephone:  (212) 561-7700 |
| | Facsimile:  (212) 561-7777 |
| | rfeinstein@pszjlaw.com |
| | bsandler@pszjlaw.com |
| | blevine@pszjlaw.com |
| | ecorma@pszjlaw.com |
| | |
| | *Counsel to the Plan Administrator* |