**Jeffrey Mead Kurzon**
P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com
(212) 203-8918

Clerk of the Court
United States Bankruptcy Court
District of New Jersey
Martin Luther King Jr. Federal Building,
50 Walnut Street, Newark, NJ 07102

June 11, 2025

Re: In re Bed Bath & Beyond Inc., et al., Case No. 23-13359 (VFP)

**Dear Clerk of Court,**

Enclosed for filing is my *pro se* reply in further support of the motion dated May 19, 2025, seeking disclosure and reconciliation of the shareholder ledger as of the Plan's Effective Date (Dkts. 4126, 4127, 4128, and 4143). This reply responds to the Plan Administrator's Opposition filed at Dkt. 4146.

Included as an exhibit is a brief summary of my communications with counsel for the Plan Administrator. While these communications may fall under Federal Rule of Evidence 408 and/or constitute attorney work product, I am submitting the summary under extreme time pressure and publicly to assist the Court in evaluating the procedural history and context of this matter. Given the accelerated timeline and the surprising characterization of my motion as "frivolous," I have done my best to prepare this reply quickly and in good faith.

For the Court's convenience, a short table of contents is included. I will bring printed copies of the communications referenced in Exhibit A to the hearing on June 17, 2025, should Judge Papalia find in camera review helpful to completing the record.

Respectfully submitted,

/s/ Jeffrey Mead Kurzon

Jeffrey Mead Kurzon, *pro se*

## MOTION PROCEDURAL HISTORY

Original Motion – Dkt No. 4126, First Supplement – Dkt No. 4127, Second Supplement – Dkt No. 4143, Plan Administrator's Opposition – Dkt No. 4146

Scheduling Order – Dkt No. 4128 – June 17, 2025 – Newark, NJ

Movant shall attend the June 17 hearing in person and bring true business record copies and/or originals (as applicable since some originals are digital) of all evidence submitted in the Motion, Supplements and this Reply.

## TABLE OF CONTENTS
## REPLY TO PLAN ADMINISTRATOR'S OPPOSITION

| Section | Page |
|---|---|
| Clerk Cover Letter | 1 |
| Table of Contents | 2 |
| PRELIMINARY STATEMENT | 3 |
| REPLY POINT I: MOVANT HAS STANDING TO RAISE THIS ISSUE | 5 |
| REPLY POINT II: THE MOTION IS PROCEDURALLY PROPER | 8 |
| REPLY POINT III: THE PLAN ADMINISTRATOR HAS NOT DENIED THE SHARE COUNT DISCREPANCY | 11 |
| REPLY POINT IV: THIS MOTION IS NOT FRIVOLOUS AND SHOULD NOT BE SANCTIONED | 13 |
| Reservation of Rights Regarding Online Disinformation and Digital Misconduct | 14 |
| Conclusion | 15 |
| Exhibit A- Summary of Movant's Communications with Plan Administrator via Counsel | 17 |
| Certificate of Service | 19 |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

In re:

Bed Bath & Beyond Inc., et al.,

Debtors.[1]

Case No. 23-13359 (VFP)

Chapter 11 (Jointly Administered)

Hearing Date: June 17, 2025 at 10:00 a.m.

### REPLY OF JEFFREY MEAD KURZON TO PLAN ADMINISTRATOR'S OPPOSITION TO MOTION TO COMPEL DISCLOSURE OF SHAREHOLDER LEDGER AND RECONCILE SHARE DISCREPANCY TO MAXIMIZE ESTATE VALUE

**PRELIMINARY STATEMENT**

This Reply is respectfully submitted by Jeffrey Mead Kurzon ("Movant") in response to the Plan Administrator's Opposition [Dkt. 4146] to the Motion to Compel Disclosure of the Shareholder Ledger and Reconcile Share Discrepancy. The relief sought is narrow and non-monetary: to confirm that all Class 9 shareholders, whether directly registered through the Debtor's transfer agent (AST/Equiniti) or held in street name through brokers, whether in USA, Canada, Korea or in between, were treated

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

equally under 11 U.S.C. § 1123(a)(4), and that the number of shares cancelled did not exceed or ortherwise differ from the number actually authorized and/or issued.

This Motion is not about personal recovery. It is about procedural integrity, transparency, and the preservation of estate credibility in a system already plagued by structural opacity in the share reconciliation process. What stands before this Court is not just a request for routine clarification; it is a moment of reckoning in what may ultimately be recognized as a scandal greater than FTX or Madoff. The rot affecting U.S. capital markets, fueled in part by synthetic dilution, rehypothecation, naked short selling, captured regulators and the erosion of investor protections since the 1999 repeal of Glass-Steagall, has now reached the doors of the bankruptcy system and this court.

Movant has presented verified DRS holdings, a documented pattern of ignored or deflected communications, and the Plan Administrator's refusal, or failure, to examine the AST/Equniti ledger, despite a fiduciary obligation to do so. Movant was listed in Dkt No. 219 from May 2023, the last known publication of the shareholder ledger and is still only labelled as "purported" former shareholder. The Motion was timely brought before distribution, and yet has been met not with cooperation, but with hostility and mischaracterizations, including a request for sanctions that seeks to punish transparency rather than support it.

These facts, taken together, suggest either gross negligence or an active effort to avoid confronting discrepancies that could expose broader structural failures, possibly even fraud. If these issues are not addressed by the Court, it risks more than a miscarriage of justice in a single case: it risks undermining faith in the Chapter 11 process itself,

4

shielding those who profited through unlawful means, and silencing those attempting to preserve integrity.

## REPLY POINT I: MOVANT HAS STANDING TO RAISE THIS ISSUE

While the Plan Administrator argues that all shareholder rights were extinguished upon Plan confirmation, courts have held that former stakeholders may retain standing to seek enforcement or clarification of confirmed Plan terms, particularly when discrepancies affect equitable treatment of a class. Movant does not seek distribution, damages, or relief under 11 U.S.C. § 1144 or Rule 60(b). Instead, Movant asks this Court to compel a verification of facts that affect the fundamental fairness, constitutionality and internal consistency of the Plan's execution as to Class 9.

Movant has Article III standing because he has suffered a concrete and particularized injury traceable to the Plan Administrator's refusal to reconcile Class 9 equity interests, and this Court has the power to redress that harm. As recognized in *In re East Coast Foods, Inc.*, 66 F.4th 1214 (9th Cir. 2023), constitutional standing governs such matters  and Movant is an aggrieved equity holder under both constitutional and statutory standards.  (See **Jones Day,** *Ninth Circuit: Standard for Constitutional Standing Applies to Bankruptcy Appeals*, Sept. 22, 2023, https://www.jonesday.com/en/insights/2023/09/ninth-circuit-standard-for-constitutional-standing-applies-to-bankruptcy-appeals (last visited June 10, 2025).)

Movant further has express rights under the Plan itself (Dkt No. 2160) which states in part:

> On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan . . . shall be deemed cancelled. (See Article IV –

Means for Implementation of the Plan, Section D "Cancellation of Notes,
Instruments, Certificates and Other Documents")

Movant has made abundantly clear, through detailed documentary evidence

attached to his motion and two supplemental filings, that he held 58,008 directly

registered shares of common stock through AST (now Equiniti) and over 3,000 additional

shares via various Wall Street brokerage accounts at the time of cancellation, the Plan's

Effective Date of September 29, 2023. Yet, before even entering the preliminary

statement in their voluminous 112-page opposition, comprised in large part of irrelevant

transcript excerpts, counsel for the Plan Administrator describes Movant as someone who

merely "**purports to be a former shareholder of Bed Bath & Beyond Inc.**" Is it

frivolous to not at least see **Dkt. No. 219** where Movant's name is clearly listed? How

could four such esteemed attorneys use **this circular logic** and be so flip with words if

not done maliciously?

Such language is not only inaccurate and inflammatory, but emblematic of a

disturbing pattern that warrants sanction against the Plan Administrator and his counsel

Pachulski, no less than four attorneys with their name on the opposition. Rather than

perform their fiduciary duty to consult the shareholder ledger as of the Effective Date,

counsel has instead chosen to cast aspersions on a licensed attorney—an officer of the

courts of the Southern and Eastern Districts of New York, the Second Circuit Court of

Appeals, and the United States Supreme Court by implying he is fabricating his status

helping to further online ridicule. That is gaslighting, not advocacy.

Movant does not claim to be a bankruptcy expert; rather, he likens himself to the

"Little Dutch Boy," trying to hold together the dam of justice while simultaneously

learning complex bankruptcy law and balancing real life obligations. Nevertheless, the legal issues raised are fundamental:

**How can any purchaser of the estate pay superior classes of creditors 100% and distribute the remainder to shareholders if the question of who qualifies as a shareholder is undefined and undetermined?**

Instead of cooperating with a fellow officer of the court, who has clearly expressed willingness to engage with discretion and professionalism, counsel has opted to obscure basic truths and deny a reasonable due process request by someone who lost approximately $20,000 investing in the Debtor.

Rather than clearly define what constitutes an "**Allowed Interest**" under the Plan, or reconcile why the record reflects cancellation of only 701 million Cede-held shares but no corresponding evidence of cancellation of directly registered shares at AST/Equiniti, counsel seeks sanctions.

Movant respectfully submits that this proceeding cannot reach a fair or lawful conclusion so long as basic facts concerning Class 9 equity interests remain withheld. The Plan Administrator's continued refusal to clarify the total number of outstanding shares, despite repeated good-faith requests, undermines both constitutional due process and the statutory obligation to maximize estate value under the Bankruptcy Code. For example, if a hypothetical acquirer were to satisfy all creditor claims and offer one share in a reorganized entity ("**Newco**") to each valid equity interest holder, or 1 for 7 or any other ratio a purchaser deems worthy, such a distribution could not occur unless the identity and number of those holders are known and verified. The logical inference is troubling: by resisting basic transparency, the Plan Administrator and his counsel appear

to be undermining their fiduciary duties to the estate and this Court and foreclosing the possibility of any meaningful reorganization or restitution to shareholders, **a detriment to every Class 9, not only Class 9**. Movant cannot identify any good-faith basis for this posture.

Attached hereto as **Exhibit A** is a timeline and brief summary of Movant's communications with counsel for the Plan Administrator. These communications may be protected as privileged under Federal Rule of Evidence 408 and/or constitute attorney work product. Movant expressly reserves all rights and will bring hard copies of the full record to the hearing scheduled for June 17, 2025, for in camera review, should the Court wish to examine the pattern of deflection, gaslighting and non-responsiveness that has frustrated Movant's efforts to obtain a simple, verifiable answer as of the Plan's Effective Date: how many total shares were cancelled, and who held them—and where?

## REPLY POINT II: THE MOTION IS PROCEDURALLY PROPER

Contrary to the Plan Administrator's assertions, this motion is not a discovery request within an adversary proceeding, nor does it rely on subpoena power. Rather, it is a post-confirmation request for clarification and implementation, firmly grounded in this Court's inherent equitable powers. Bankruptcy courts retain jurisdiction to interpret and enforce the terms of their own confirmed plans, a principle the Movant has seen applied directly in *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del.), where Judge Owens confirmed a plan that unambiguously canceled "all Existing Equity Interests," not merely "Allowed Interests" as appears to be the case here. See Express Dkt. No. 1130 at p. 30. It bears emphasis that the structure and recordkeeping of U.S. capital markets are susceptible to manipulation and systemic opacity, a concern addressed in Movant's

motion in connection with recent CFTC staff suspensions [see Dkt. No. 4126, para 21],

yet conspicuously ignored by the Plan Administrator and his counsel despite their duty

under the Plan to investigate third-party claims held by the Debtor. Although Express's

Notice of Effective Date was issued on December 31, 2024, Movant's EXPRQ shares

(cusip 30219E202) still appear in his brokerage accounts today, June 11, 2025, and—on

information and belief—are more likely than not still reflected on the ledger maintained

by the transfer agent, Computershare.[2]

Unlike in *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004), where the

post-confirmation trustee lacked standing due to the plan's failure to expressly retain

claims, Movant here brings this motion **pre-distribution** as a **party-in-interest under 11

U.S.C. § 1109(b)**—the provision guaranteeing the right to be heard in Chapter 11

proceedings. Movant is not asserting new post-confirmation claims but is instead seeking

clarification of Class 9 treatment in order to **maximize estate value for *all Classes* and

ensure a fair and accurate reconciliation of the shareholder ledger.**

Where there is evidence of inconsistency between the public float and Cede & Co.

records, and where at least **58,008 directly registered shares**, including Movant's own

(and likely about 81 million more), were omitted from cancellation schedules, it is both

---

[2] Movant is currently engaged in discussions with Computershare after being locked out of his online shareholder account for declining to accept a revised online user agreement containing an irrevocable power of attorney. This incident highlights a broader and growing problem: household investors face increasing barriers to accessing and managing their own equity holdings. The issue is relevant here, as it reflects the same opacity and confusion over what constitutes an "Allowed Interest," and illustrates the larger structural challenge of asserting ownership rights in a fragmented and institutionally dominated market. Movant submits this note as an example of the burdens imposed on good-faith household equity holders seeking return on investment, burdens compounded when a Plan Administrator seeks sanctions against them for simply asking the Court to confirm what should be a simple matter of public record.

reasonable and prudent to seek judicial clarification before Class 9 is irreversibly

disenfranchised.

The Plan Administrator's argument—that Movant lacks standing under § 1109(b)

because his Interests have allegedly been canceled—misconstrues both the law and the

nature of the relief sought. It also disregards Movant's constitutional rights, including,

but not limited to, due process.

The Opposition asserts:

> "In contrast, here, because Mr. Kurzon's Interests have been canceled and
> extinguished, and the express terms of the Plan state that he is entitled to no
> recovery, he no longer has a financial interest in these Chapter 11 Cases." (Dkt.
> 4146 at 16)

**This reasoning is circular and unsubstantiated**: it presumes that cancellation

has occurred in order to argue that Movant lacks standing, while refusing to produce the

very evidence—namely, the AST/Equiniti shareholder ledger—that could confirm or

refute that premise. Worse, the Plan Administrator's threat of sanctions appears less

grounded in law than in deterrence, aimed at silencing a *pro se* shareholder raising

plausible concerns about unequal treatment and systemic irregularities in Class 9. If

counsel is so certain that Movant's Interests were canceled, they should welcome the

opportunity to confirm that fact through full ledger disclosure. Their ongoing refusal to

do so undermines the Plan's integrity and raises serious questions about compliance with

11 U.S.C. §§ 1123(a)(4) and 1125. The Plan Administrator's "tell" is that he called a

fellow sworn officer of the Courts, Movant, who is bound by an oath and a duty of

honesty before all tribunals, a "purported shareholder" implying he has failed to even

inspect the shareholder ledger, and neglected a 10-second check of Dkt. No. 219, which

may imply a basic investigation into securities fraud on the estate (a claim that should

benefit creditors) has not even begun where statutes of limitations could be ticking.

   As shown in Exhibit A, Movant made numerous good-faith attempts to resolve

these questions without court intervention. At every turn, Movant sought clarity and

transparency, not conflict. It is precisely because those efforts were met with silence or

evasion that judicial oversight is now both warranted and necessary.

## REPLY POINT III: THE PLAN ADMINISTRATOR HAS NOT DENIED THE SHARE COUNT DISCREPANCY

   The Plan Administrator devotes considerable attention to jurisdictional and

procedural defenses but fails to meaningfully address the core issue at hand: the apparent

discrepancy between the number of shares reported as held by Cede & Co. as of the

Effective Date (approximately 701 million), and the total number of issued and

outstanding shares, which the Debtor's own 8-K [Dkt. 4127, Attachment 1] confirms to

be 782,005,210 as of July 20, 2023.

   The Debtor's September 14, 2023 Form 8-K—signed by Executive Vice

President and Chief Legal Officer David M. Kastin—states that:

> "The Company has no preferred shares issued or outstanding and has
> 782,005,210 shares of common stock issued and outstanding as of July 20, 2023.
> On the effective date of the Plan, all of these shares will be canceled, released,
> and extinguished and will be of no further force or effect pursuant to the Plan."

   This filing is problematic on its face. It references a share count from nearly two

months prior to the Effective Date, provides no reconciliation or update for intervening

activity, and introduces uncertainty rather than clarity. Even more concerning is that

approximately **701 million shares** were recorded as canceled—primarily those held in

street name via Cede & Co.—yet the remaining **~81 million shares**, including Movant's

11

**58,008 DRS shares at AST/Equiniti**, appear to have been omitted from the cancellation record. Compounding this confusion is the unannounced appearance of **170 preferred shares and warrants**, absent from the Plan or any disclosure under § 1125, that were nonetheless included in cancellation schedules. If such preferred equity and warrants truly existed, the Plan Administrator has an obligation to disclose their issuance and legal basis.

The record is incomplete and internally inconsistent. Movant is not alleging fraud but is raising a facially valid concern about whether all Class 9 Interests were properly and equitably extinguished. This is not a personal grievance, but a systemic inquiry grounded in 11 U.S.C. § 1109(b), the U.S. Constitution's guarantee of due process, and this Court's inherent equitable powers. If the estate canceled fewer or more shares than were ever legally issued, the resulting discrepancy implicates the rights of all Class 9 stakeholders, not just Movant, and requires judicial clarification. Such relief need not undo the Plan, but may instead serve to preserve its integrity and ensure compliance with 11 U.S.C. § 1123(a)(4), so that no equity holder is arbitrarily disenfranchised or treated unequally.

It is worth repeating: how can any future recovery—whether in cash or equity through a reorganized entity such as "Newco"—be lawfully and fairly distributed if the identity and number of rightful Class 9 beneficiaries remain undefined? This lack of clarity threatens not only equitable treatment for Class 9 but also the enforceability and legitimacy of any post-confirmation value realization. **Creditors and state attorneys general take heed**: if the beneficiaries of cancellation cannot be identified, then any

future recovery—whether via litigation, clawback, or Newco equity—risks being tainted by procedural infirmity and subject to legal challenge.

**Promoters online take heed as well**: shouting "we won" while mocking the Movant is not only premature—it is revealing. Movant is a long-only, *pro se* Class 9 shareholder pursuing truth and transparency first, and any rightful recovery second. There can be no meaningful "exit" without a clean and verified cap table—something any legitimate acquirer would require to distribute equity or cash in compliance with bankruptcy law and corporate governance standards.

## REPLY POINT IV: THIS MOTION IS NOT FRIVOLOUS AND SHOULD NOT BE SANCTIONED

The request for sanctions is unwarranted. Movant has participated respectfully and in good faith. Seeking reconciliation of share data in a case with public interest and systemic implications is not harassment; it is diligence. The estate should welcome transparency as a foundation for closure.

Given the gaslighting, obfuscation and improper use of Rule 11 against Movant, Movant respectfully asks that the Court grant Movant his costs – not to be paid for by the estate, but by the law firm Pachulski in an amount to be less than $1,000 (printing, postage, car rental, gas, parking, hotel). It would have been much easier for all parties and the court, and **more beneficial to all Classes**, had Pachulski just entered into a formal or informal NDA with Movant and answered his questions and corrected the record such as Movant offered by settlement. Instead, it appears that Pachulski is deliberately hiding the shareholder list and protecting who knows what – it does not seem to be the value of the

estate for Class 9 or any superior class if they do not offer equal treatment under

1123(a)(4) or good faith communications with members of Class 9.


## RESERVATION OF RIGHTS REGARDING ONLINE DISINFORMATION AND DIGITAL MISCONDUCT

Movant respectfully submits that, since raising concerns about systemic share

irregularities in both Judge Owen's courtroom (In re Express) and in this proceeding, he

has been subjected to what appears to be a coordinated campaign of defamation,

harassment, and deliberate digital disinformation by anonymous accounts. These efforts

may be traceable to individuals or entities with a direct or indirect financial interest in

concealing material irregularities or discouraging shareholder inquiry. Movant expressly

reserves all rights under law to identify pseudonymous or anonymous actors and to

pursue all available remedies against those found to be acting maliciously, fraudulently,

or in furtherance of market manipulation or estate misconduct. These tactics threaten not

only Movant's reputation and physical and mental well-being but also the integrity of the

reorganization process itself, and they risk chilling participation by other *pro se* or

minority stakeholders. Intimidation, misrepresentation, and coordinated disinformation

campaigns must not be allowed to succeed where transparency and due process are

required.

The online vitriol—including seemingly coordinated posts on platforms such as

Reddit and X—frequently misrepresents Movant's identity, motives, and legal standing.

These attacks appear designed to cast Movant as a "bad actor," or "plant," despite the fact

that he has at all times acted in his own name, in accordance with this Court's procedures,

and consistent with his ethical duties as a licensed attorney. He has complied with all

applicable disclosure requirements and taken proactive steps to clarify any perceived ambiguities. The suggestion that this motion is frivolous or malicious is not only unfounded—it appears to be part of a broader attempt to suppress scrutiny of the shareholder ledger and related records.

**Defamation *per se*** claims do not need to specify damages. Movant reserves all rights under law to unmask, expose, and—if necessary—seek legal redress against individuals or networks responsible for defaming him, particularly where such conduct may amount to obstruction of justice or witness intimidation. While the personal toll of these attacks is real, the greater harm lies in their apparent intent: to delegitimize shareholder oversight and deter future lawful challenges. Amplified messaging—such as the Plan Administrator's dismissive "here we go again" opener or the conclusory sanctions demand—reflects this same dismissive posture. These rhetorical flourishes do not substitute for legal substance and only reinforce the need for judicial oversight.

## CONCLUSION

No ledger, no truth. For the foregoing reasons, Movant respectfully requests that this Court enter an Order:

1. Compelling the Plan Administrator to disclose the full shareholder ledger—including the total number of issued and outstanding shares as of the Plan's Effective Date—so that the Debtor may exit Chapter 11 with a clean, accurate, and legally supportable capitalization table;

2. Compelling a reconciliation between the shares reported by Cede & Co. and the total shares issued, in order to preserve Class 9 integrity, confirm that no Class 9

Interests were overlooked, overcounted, or inequitably treated in violation of 11

U.S.C. § 1123(a)(4); and

3. Granting such other and further relief as the Court deems just and proper to

preserve the integrity of the reorganization process, protect Class 9 stakeholders,

and ensure finality rests on truth—not omission and fog.

Dated: June 11, 2025

Respectfully submitted,

/s/ Jeffrey Mead Kurzon
Jeffrey Mead Kurzon*
P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com | 212-203-8918
*Pro Se* Former Shareholder, Member of Class 9

*Filed under severe time constraints, in good faith, and against an improper sanctions
threat

## Exhibit A – Summary of Movant's Communications with Plan Administrator's Counsel

This Exhibit is submitted in good faith under extreme time duress to assist the Court and all parties in understanding the substantive and procedural context of communications between *pro se* Movant Jeffrey Kurzon and counsel for the Plan Administrator. Movant has consistently sought to resolve these issues without burdening the Court and tried to stay out of court as much as possible. This summary, together with the Reply to the Opposition, was prepared in less than 24 hours, primarily in response to the Plan Administrator's sanction threat—but it also reveals a troubling pattern of gaslighting, evasion, and potential willful breach of fiduciary duty, particularly given Movant's status as an officer of other federal courts.

All communications are privileged to the extent applicable, including under Federal Rule of Evidence 408 and the attorney work product doctrine. Movant expressly reserves all rights and waives none. Movant is JMK.

| Date | Sender | Recipient(s) | Subject / Thread Summary | Response Received | Notable Issues / Attachments | Notes / Red Flags |
|------|--------|--------------|--------------------------|-------------------|------------------------------|-------------------|
| July 10, 2024 | JMK | Pachulski, Chambers, et al. | Clarification of representation, SoFi share dispute, support for ML extension | No | Discussion of SoFi/Apex selling phantom shares; no reply to proposal for conference call | \*\*Ignored substantive call for dialogue\*\*; \*\*Failure to address retail issues raised\*\* |
| July 26, 2024 | JMK | Pachulski incl. Feinstein and Sandler | Third Attempt: request for TSO as of 9/29/23 and # | None | Also called for no sanctions on ML1 as they | Pachulski did not seem to check the AST ledger for ML1's |

| | | | held at AST with "Please help me understand" | | protest too much | holdings either; showing pattern |
|---|---|---|---|---|---|---|
| Oct 28, 2023 | JMK | Pachulski (Feinstein) | Follow-up with PDF evidence and questions | No | Attachment: Oct 28 PDF detailing share discrepancy inquiry | **Silence in response to flagged share count issues** |
| Mar 12, 2024 | JMK | Pachulski | Motion to compel shareholder list; discovery questions | Yes | Response disputes necessity of motion | **Feinstein response misrepresents Kurzon's request**, conflating 9/23 ledger vs 9/29 TSO |
| May 21, 2025 | JMK | Chambers, Pachulski, Labov, Geier | Follow-up thread on motion to compel, AST ledger | Yes (multiple) | Emails show Plan Administrator avoiding commitment to actual ledger verification | **No clear answer** despite multiple prompts |
| May 21, 2025 | JMK | Kirkland, Pachulski, US Trustee (see Service list) | Settlement proposal | None | JMK proposed a reasonable settlement to fix issue | Recipients had 24+ hours to consider; they chose silence and JMK revoked offer on May 22, 2025 |
| June 10, 2025 | JMK | Pachulski | Final follow-up before sanctions reply | No | Summary email, no response ahead of Docket 4146 | **Total silence despite known deadline** |

## CERTIFICATE OF SERVICE

I, Jeffrey Mead Kurzon, certify that on June 11, 2025, I submitted by Priority Mail Express the within REPLY OF JEFFREY MEAD KURZON TO PLAN ADMINISTRATOR'S OPPOSITION TO MOTION TO COMPEL DISCLOSURE OF SHAREHOLDER LEDGER AND RECONCILE SHARE DISCREPANCY TO MAXIMIZE ESTATE VALUE to the Clerk of the United States Bankruptcy Court, District of New Jersey, and that I served copies via email immediately thereafter (or as soon as practicable) on the following parties of interest, together with the accompanying cover letter and Exhibit A:

By USPS Priority Mail Express to:
• Clerk of the Court
United States Bankruptcy Court, District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

By Email (on June 11, 2025, or as soon as practicable thereafter):

• Plan Administrator:
Michael Goldberg
michael.goldberg@akerman.com
(cc to counsel below)

• Counsel for the Plan Administrator:
Bradford J. Sandler – bsandler@pszjlaw.com
Robert J. Feinstein – rfeinstein@pszjlaw.com
Beth E. Levine – blevine@pszjlaw.com
Edward A. Corma – ecorma@pszjlaw.com

• Debtors' Lead Counsel:
Kirkland & Ellis LLP
Joshua A. Sussberg – joshua.sussberg@kirkland.com
Emily Geier – emily.geier@kirkland.com

• Debtors' Local Counsel:
Michael D. Sirota, Esq.
COLE SCHOTZ P.C.
msirota@coleschotz.com

• Office of the United States Trustee for Region 3:
ustpregion03.ne.ecf@usdoj.gov

Fran B. Steele, Esq. – Fran.B.Steele@usdoj.gov
One Newark Center
1085 Raymond Blvd., Suite 2100
Newark, NJ 07102

I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 11, 2025
/s/ Jeffrey Mead Kurzon
Jeffrey Mead Kurzon
*Pro Se*, *Pro Bono* (Not Admitted; Not *Pro Hac Vice*), *Pro Patria*, *Pro Publico*
P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com | 212-203-8918

Service, July 2022. All rights reserved.

PRIORITY MAIL EXPRESS®

**FOR DOMESTIC AND INTERNATIONAL USE**

**PLACE MAILING LABEL HERE**

PRIORITY MAIL EXPRESS®

UNITED STATES POSTAL SERVICE®

EI 944 407 305 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 912 ) 203 8918

Jeffrey M. Kurzon
P.O. Box 454
Peterborough, NH 03458

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED

TO: (PLEASE PRINT)   PHONE ( 973 ) 645-4764

Clerk of the Court
United States Bankruptcy Court
District of New Jersey
Martin Luther King Jr. Federal Bldg.
50 Walnut Street Newark, NJ
07102

ZIP + 4® (US. ADDRESSES ONLY)

**PAYMENT BY ACCOUNT** (if applicable)
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code  03456

Date Accepted (MM/DD/YY) 10/11/25

Time Accepted 1:35 ☐AM ☒PM

Scheduled Delivery Date (MM/DD/YY) 10/13/25

Scheduled Delivery Time 10:30 PM

Postage $ 31.40

Insurance Fee $

Return Receipt Fee

Live Animal Transportation Fee

COD Fee $

☐ Military

Special Handling/Fragile $

Weight  lbs. oz.

Sunday/Holiday Premium Fee $

Acceptance Employee Initials SK

Total Postage & Fees $ 31.40

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY) Time ☐AM ☐PM

Delivery Attempt (MM/DD/YY) Time ☐AM ☐PM

Employee Signature

Employee Signature

LABEL 11-B, NOVEMBER 2023   PSN 7690-02-000-9996



EP13F July 2022
OD: 12 1/2 x 9 1/2

PS10001000006

PRIORITY MAIL EXPRESS®

T RATE
ELOPE
E ■ ANY WEIGHT

URGENT PRO SE REPLY
CASE No. 23-13359 (VFP)

Schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

☞ **PEEL FROM THIS CORNER**

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.



