UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|                          |   |                              |
|--------------------------|---|------------------------------|
|                          | . | Case No. 23-13359-VFP        |
| IN RE:                   | . |                              |
|                          | . | (Jointly Administered)       |
|                          | . |                              |
| BED BATH & BEYOND, INC., | . | Martin Luther King Building &|
| et al.,                  | . | U.S. Courthouse              |
|                          | . | 50 Walnut Street             |
|                          | . | Newark, NJ 07102             |
|           Debtors.       | . |                              |
|                          | . | June 17, 2025                |
| . . . . . . . . . . . .  | . | 11:32 a.m.                   |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE VINCENT P. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plan<br>Administrator: | Pachulski Stang Ziehl & Jones<br>By:  BRADFORD SANDLER, ESQ.<br>919 North Market Street, 17th Floor<br>Wilmington, DE  19801 |
| | Pachulski Stang Ziehl & Jones<br>By:  BETH E. LEVINE, ESQ.<br>780 Third Avenue, 34th Floor<br>New York, NY 10017 |
| For Mr. Kurzon: | JEFFREY KURZON, Pro Se |
| Audio Operator: | Mariela Primo |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

1          THE COURT:  Okay.  I'm going to call Bed Bath &

2    Beyond, 23-13359.  It's Mr. Jeffrey Kurzon's motion to compel

3    disclosure of shareholder ledger and reconcile share

4    discrepancy to maximize estate value and other related relief.

5          May I have appearances, please?

6          MR. SANDLER:  Good morning, Your Honor.  For the Plan

7    Administrator, Brad Sandler and Beth Levine of Pachulski,

8    Stang, Ziehl and Jones.

9          THE COURT:  Good morning.

10         MS. LEVINE:  Good morning, Your Honor.

11         MR. KURZON:  Good morning, Your Honor.  Jeffrey

12   Kurzon, pro se on behalf of Class 9, solely for myself.  And

13   previously I was here on a anonymous shareholders motion as a

14   participant and I had indicated to the Court that I might be

15   representing my father's 1,000 shares that are held in a

16   brokerage account.  That's not the case now.  My brother is

17   also an attorney and since our family business is the custodian

18   of the Keogh Plan where those shares are held, it would be

19   inappropriate for me to represent my father's shares.

20         And, in any case, the narrow relief I'm seeking today

21   I think would have the effect of impacting all of Class 9.

22         THE COURT:  So, Mr. Kurzon, as you just said, you're

23   an attorney, right?

24         MR. KURZON:  Yes, but not before this Court.  Before

25   this Court I'm a shareholder, only a shareholder.

1          THE COURT:  Well, okay, but you're an attorney and I

2    think you know, I don't know, maybe I'm being presumptuous but

3    you're an attorney and you're representing yourself, you're

4    perfectly able to do so and have that right.  What you're not

5    able to do is what you said which is to represent other people

6    unless they authorize it or the Court authorizes it.

7          MR. KURZON:  That's right.

8          THE COURT:  It sounded like what you're saying it's a

9    class action but there's no class action here.  So you're here

10   on behalf of Jeffrey Kurzon --

11         MR. KURZON:  That's right, Your Honor.

12         THE COURT:  -- and the shares you own.  Not anyone

13   else.

14         MR. KURZON:  That's right, Your Honor.

15         THE COURT:  Okay.  But the way you entered your

16   appearance suggested otherwise.

17         MR. KURZON:  Okay.  I understand.  Well, I guess I

18   don't want to so-called gun jump.  I want to just explain to

19   the Court, number one, my duty of truthfulness and, number two,

20   that the plan is the plan and that was confirmed by Judge

21   Kaplan.  And I respect the plan, I'm not here to attack it.

22   I'm here to respect the judicial process.  And that's why I

23   mentioned my father's shares.

24         I can also tell you that when I first appeared in

25   this courtroom and I believe Your Honor was here virtually with

1  Kirkland and Ellis and I assume Pachulski was here, I was

2  totally unprepared.  In fact, I didn't really know what MJL or

3  ML1 or whatever his name is was asking but I understand that he

4  was seeking a shareholder's committee, something that I tried

5  to do and expressed because I thought that having a

6  shareholder's committee would represent shareholder's interest.

7  And when I entered my appearance just now, what I was trying to

8  imply is that under 11 U.S.C. 1123(a)(4) is that all members of

9  a class should be treated equally.

10         So, if something applies to me, then I would just

11  assume that it would apply to other members.  But before we get

12  into arguments, I want to address two matters of truthfulness

13  to the Court.

14         One is, at that hearing, I didn't think that I was

15  well, I wasn't prepared, and I made a representation that there

16  were four horses in my parents yard and that seemed a little

17  bit crazy to me at the time and it still seems crazy.  So, in

18  the past week I investigated at the Peterborough New Hampshire

19  Police Department and I asked about it, if there's a police

20  report or anything to that effect.  My mother now says it was

21  only three horses.

22         THE COURT:  Three what?

23         MR. KURZON:  Three horses.  It's a country, so

24  animals escape and --

25         THE COURT:  Well, what does that have to do with

1  this?

2          MR. KURZON:  Well, because at the last hearing I said

3  that there were four horses but now my mother has told me

4  there's three horses.

5          THE COURT:  I'm going to get past that.

6          MR. KURZON:  Okay.

7          THE COURT:  I'm past it.

8          MR. KURZON:  Okay, good.

9          THE COURT:  I don't need to deal with that.

10         MR. KURZON:  The other item is that everything --

11         THE COURT:  I appreciate you telling me, but I'm not

12 sure what it has to do with what we're talking about.

13         MR. KURZON:  Yes, well I just want to be a hundred

14 percent truthful and I'm happy to testify under oath that

15 everything I say is sworn testimony.  And in that regard --

16         THE COURT:  You're an officer of the court.

17         MR. KURZON:  Yes.  So I have a duty to be truthful at

18 all times, not just to the Court but to others.  But in my

19 papers, specifically 4126, I said my only client at this time

20 is something to do with a medical device.  I've learned since

21 filing that that it's actually a wellness device not a medical

22 device.

23         So, I just want to clarify that for the record but

24 everything else I've put forward, including my statements that

25 I held 58,008 shares, directly registered, that was as of the

6

1 plan effective date.  And the receipts that I submitted,

2 Exhibit A in 4126 and Exhibit A in the set that's supplement on

3 the first page, I believe it's dated October 1st, shows the

4 58,008 shares.  So, I clearly held shares which were interest

5 under the plan.

6          THE COURT:  I'm with you.  I'm also past that you're

7 a shareholder.

8          MR. KURZON:  Okay.

9          THE COURT:  You submitted all kinds of sworn

10 statements that you're a shareholder, or you were a

11 shareholder, and you were, I think, based on the record that I

12 have before me, you were a shareholder.  So, you know we would

13 have to deal with the issue of the plan and what the plan did

14 to shares and -- which is to cancel them and extinguish them.

15          MR. KURZON:  Right.  So, but what was cancelled --

16 so, what's a little bit confusing is that the opposition to

17 this motion, which is essentially a request that the

18 shareholder ledger be disclosed, what's confusing is that the

19 opposition has said that I'm a purported shareholder.

20          So I have to make it very clear that not only was I a

21 shareholder in terms of my brokerage shares which were

22 cancelled by the notice to, I guess, Cede & Co.  Brokerage

23 shares were cancelled.  There was never any similar notice sent

24 to directly registered shareholders such as myself.  And the

25 plan says that all allowed interests -- or, it says each

1 allowed interest shall be cancelled.  But then, when I asked --

2          THE COURT:  I'm sorry.  I generally don't want people

3 to interrupt during other party's presentation, but it sounds

4 like you have an objection as to kind of like --

5          MS. LEVINE:  So, Your Honor --

6          THE COURT:  It feels like you have a relevance or

7 type of thing?

8          MS. LEVINE:  Your Honor, just to streamline the

9 proceedings, we are prepared to stipulate that as of the

10 effective date, Mr. Kurzon was a shareholder.

11          THE COURT:  There you go.  Not only was a I prepared

12 to find that, I did find it just now, so I'm okay.  You're a

13 shareholder -- you were a shareholder as of the effective date.

14 And now you were getting into your argument about the issue

15 about whether it's an interest or an allowed interest I

16 thought.

17          MR. KURZON:  Well, so I have e-mails with the law

18 firm Pachulski, I believe dating back to October of '23, which

19 was shortly after confirmation.  And I raised issues affecting

20 the estate value, okay?  Because as a shareholder and somebody

21 who, you know, I'm an attorney but I'm not a bankruptcy

22 attorney, but I understand the absolute priority rule and I

23 understand that shareholders get nothing unless all the

24 creditors are paid a hundred percent.  So, my goal is for that

25 to happen.

8

1          THE COURT:  Plus interest.

2          MR. KURZON:  Plus fees, plus expenses.  I want

3  creditors to say that Jeff Kurzon is the best shareholder ever.

4  Now, for that to happen, though, the estate value has to be

5  maximized and for the estate value to be maximized, the plan

6  has to be followed.  And for the plan to --

7          THE COURT:  The plan has to be what?

8          MR. KURZON:  The plan has to be the plan.  The plan -

9  -

10         THE COURT:  Has to be followed.

11         MR. KURZON:  Followed, yes.

12         THE COURT:  It is followed.

13         MR. KURZON:  Well, then how does it make sense that

14  the allowed interests were cancelled but what an allowed

15  interest is, is not defined.

16         THE COURT:  So, I really do want to stop you right

17  there because an allowed interest is defined.  It's defined in

18  the plan definitions and interest is defined.  And --

19         MR. KURZON:  But then there's a -- the definition

20  uses more definitions so the definition of allowed uses the

21  schedule and, you know, I came here from New Hampshire and I

22  drafted a lot of paperwork and that's in the record.  I asked

23  Mr. Feinstein, who's not here, and Mr. Sandler, who is, I asked

24  them on June 5th for a copy of what is an allowed interest --

25  was that scheduled anywhere -- no response.

1          And I asked them for clarification of whether any

2    equity in any successor entity has been issued, received or

3    otherwise allocated because according to 1123(a)(4), all

4    members of a class have to be treated the same.  So, what I

5    don't understand is why the Cede sharers were cancelled, 701

6    million, where the 81 million, supposedly 81 million because of

7    company -- the debtor's public disclosure is that there were

8    782 million shares.  So --

9          THE COURT:  Well, I'm going to interrupt you, though,

10   now, because I read these provisions of the plan.  I read, you

11   know, your objection, your motion, their response.  It's very

12   clear to me whether there's 780 millions shares, 701 million

13   shares, or 50 million shares, they're all cancelled and they're

14   all treated the same.  They're all extinguished.  Whether they

15   were cancelled by Cede & Co., some official notice from them,

16   is not relevant to me because the plan that was confirmed.

17         And you're right, Judge Kaplan entered that order

18   because I wasn't here then, determines that interest --

19   allowed, unallowed -- any interest is cancelled and

20   extinguished.  So, there is no paradox, there is no question,

21   there is no issue about it.  If they missed some -- if Cede &

22   Co. missed some shares, they missed some shares.  They're still

23   cancelled.  They're still cancelled.

24         MR. KURZON:  Cede & Co. is a shareholder itself, just

25   like me.  I am Cede & Co. --

1          THE COURT:  But they're cancelled.  Whatever they

2    hold, cancelled.

3          MR. KURZON:  But, Your Honor, if, respectfully, if

4    all shares were cancelled, then why does the plan say each

5    allowed interest instead of all allowed -- all interest.

6          THE COURT:  Are you making a distinction between each

7    and all?

8          MR. KURZON:  Well, it says each allowed interest,

9    which is a defined term.  Kirkland could have said all, all

10   interests are cancelled.  It didn't say all interest.  It said

11   each allowed interest but didn't --

12         THE COURT:  It says all shares.  I think, the thing

13   is, it says it so many times.  It says Class 9 consists of all

14   interest in BBB.

15         MR. KURZON:  Yes.

16         THE COURT:  It doesn't say -- and so it says --

17         MR. KURZON:  But look right under that, Your Honor.

18         THE COURT:  It says each allowed interest shall be

19   cancelled, released and extinguished and have no further force

20   or effect and no holder of interest in BBB shall be entitled to

21   any recovery or distribution under the plan.  And they're

22   deemed to have rejected it, all of them, whether allowed

23   unallowed, half allowed.  Then, if your gripe is with the

24   difference between the word allowed in (b) and interest in the

25   heading, I'm clarifying it now.  Even though I don't have to

1  issue declaratory rulings, all interest were cancelled.  It

2  couldn't be any clearer -- all interests were cancelled.

3          MR. KURZON:  Okay.  If that's true, Your Honor --

4          THE COURT:  Yes.

5          MR. KURZON:  -- and I want to believe that it is

6  true, because then we have solved the problem that --

7          THE COURT:  That's why I wanted to get to this.

8          MR. KURZON:  Okay.

9          THE COURT:  I think it's your issue and I'm telling

10 you that they're all cancelled.

11         MR. KURZON:  Okay.  That's great.

12         THE COURT:  You don't need to reconcile.  You don't

13 need lists, you don't need it from me, you know.

14         MR. KURZON:  Well, Judge --

15         THE COURT:  And putting aside there is a major

16 procedural/substantive defect in your motion because you're

17 moving to compel something but there's nothing that I have

18 before me, like a subpoena or a notice to produce or an

19 adversary proceeding or contested matter where there was as

20 formal request made that the Court can enforce.  You made

21 informal requests, which I appreciate, and you should make

22 informal requests, but you know, there's nothing for me to

23 enforce.

24         So, I could deny it on those grounds independently,

25 okay, and I would and I will.  But I'm just saying to you, I

1 thought your issue, because you used the word paradox, and I

2 don't think it's a paradox.  I think it's the opposite of a

3 paradox.  I think it's crystal clear that all interest in Bed,

4 Bath & Beyond, Inc. -- cancelled.

5          MR. KURZON:  Okay.  So that's $782 million --

6          THE COURT:  All of them.

7          MR. KURZON:  -- common shares.

8          THE COURT:  And your tax return is right.

9          MR. KURZON:  Okay.

10          THE COURT:  If you took a loss because your interest

11 was cancelled, you're right.

12          MR. KURZON:  Okay.  So that I can go home and sleep

13 on it and feel good about coming here today, I would like to

14 submit a post-hearing statement.  This will, of course, not be

15 binding because I understand any amendment has to be agreed by

16 the plan administrator and the DIP, or the FILO lender.  So, I

17 want --

18          THE COURT:  But wait a minute, wait a minute.

19          MR. KURZON:  -- to just make a proposal --

20          THE COURT:  We're here on your motion --

21          MR. KURZON:  But my motion is also a reservation of

22 rights and I'm trying to avoid litigation.  I'm trying to

23 protect the plan, defend the plan, not collateral attack the

24 plan, so my clarifying amendment to the plan is to say,

25 basically, what Your Honor just said, is that all common shares

1 are cancelled.

2          THE COURT:  It says it already.  It doesn't need to

3 be clarified.

4          MR. KURZON:  But if it said it, it would say it.  It

5 say each allowed interest.  It doesn't say it.

6          THE COURT:  I am telling you, this is the plan that

7 my Court confirmed and I am telling you that all shares in Bed,

8 Bath & Beyond, preferred, common and warrants cancelled.

9          MR. KURZON:  Including the Cede & Co. shares?

10          THE COURT:  Including whatever Cede & Co. --

11          MR. KURZON:  Including the AST shares -- I apologize

12 -- including the AST shares?

13          THE COURT:  Yes, I mean, but --

14          MR. KURZON:  Directly registered.

15          THE COURT:  -- I'm just saying what's already there.

16 I'm not issuing any new rulings.  This is what's in there.

17 It's done, it's over.  There are no interests in Bed Bath &

18 Beyond at this point in time.

19          MR. KURZON:  But isn't it relevant how many interests

20 there were?

21          THE COURT:  You tell me why.

22          MR. KURZON:  Because it's Chapter 11 and there's a

23 possibility for an exit.  So, if I'm a billionaire and I see

24 that all these creditors are owed money and I'm sympathetic to

25 that, I'll write the estate a check for whatever they're owed

1  and take the equity and take the tax benefits.  But if I don't

2  know how to distribute it to the equity because I don't know

3  how many there were --

4          THE COURT:  Yes, but there's no equity to distribute

5  it to.

6          MR. KURZON:  Not at the time, not at this moment, but

7  there could be.

8          THE COURT:  Yes, so, and that's another thing.  I

9  can't do advisory or declaratory rulings and I certainly can't

10 amend a plan on a document that you bring to court on a -- you

11 know, two years after the plan was confirmed.  I can't do it.

12         MR. KURZON:  The plan has a good faith provision in

13 it and the plan also has an amendment provision.  So I'm just

14 asking for the benefit of the Court to file a post-hearing

15 statement which has a proposed amendment which can be accepted

16 or rejected.  And it essentially says, for the avoidance of

17 doubt and not withstanding on any other provision of the plan,

18 the term allowed interest as used in a respect to Class 9,

19 shall include all common shareholders.

20         Now, if they want to clarify that even further and

21 say I'll common, all preferred, all warrants, fine.  I don't

22 have the right to speak for preferred or warrants, I didn't

23 hold those, I only held common.  So this is just a request to

24 file a proposed amendment.

25         THE COURT:  I can't do it.  I can't do that.  I mean,

1  you could submit it to them or whatever you want -- you submit

2  to them whatever you want but I'm not doing that today and I'm

3  saying to you I'm not supposed to give advisory rulings.  That

4  would require a whole host of things and notices and objections

5  and all things -- but it's not necessary, Mr. Kurzon.  It's not

6  necessary because, again, you know what, we're right full

7  circle.  We're all the way back to where we started because

8  there's no question that you, Jeffrey Kurzon, your shares are

9  cancelled.  That's it.

10         MR. KURZON:  Under 1123(a)(4), everybody's shares are

11  cancelled then.

12         THE COURT:  There you go.

13         MR. KURZON:  Okay.

14         THE COURT:  Yes.

15         MR. KURZON:  Well, that's what it is.  Thank you,

16  Your Honor.

17         THE COURT:  All right.  So, in other words, you're

18  accepting -- what are you saying?  Are you withdrawing your

19  motion or what are you doing?

20         MR. KURZON:  Well, it sounds like you've rule on it

21  already.

22         THE COURT:  I've ruled on it in a -- yes, I mean, I

23  have other things to say but the bottom line is that, the

24  bottom line is that the motion was procedurally and

25  substantively defective because there's no adversary proceeding

1  or contested matter in which you issued some kind of notice or

2  process to compel something.  And that's the ground to deny it.

3  Mr. Kurzon, like you said, I was trying to help.

4          MR. KURZON:  Yes.

5          THE COURT:  I was trying to cut to the chase scene.

6  I was trying to remove the doubt that you apparently have about

7  what happened to interest even though it says it 27 times in

8  the plan and disclosure statement.

9          MR. KURZON:  Well, Your Honor, I'm not sure if you're

10 aware but there's a whole cottage industry of speculations on

11 the internet about this case and --

12         THE COURT:  And I can't -- what is a bankruptcy judge

13 in New Jersey going to do about a cottage industry that trades,

14 if there is one, that trades in cancelled shares?  They better

15 -- you know, I think people better be careful before they buy

16 --

17         MR. KURZON:  It's not about trading, it's --

18         THE COURT:  I would say --

19         MR. KURZON:  -- about the hopefulness of Class 9 to

20 potentially get some recovery because the injury behind this

21 issue is that it's a suspicion of naked shorting of shares.

22 So, if the price of the shares was deliberately manipulated,

23 that's an issue for Mr. Goldberg to seek recovery of.  And I

24 don't see how Mr. Goldberg can investigate securities fraud, as

25 his fiduciary duty would be, unless he looks at the ledger.

1          THE COURT:  He started actions, didn't you have

2    actions pending?

3          MR. SANDLER:  Yes, Your Honor.

4          THE COURT:  They have actions.

5          MR. SANDLER:  Many, many, in facts, hundreds of

6    actions.

7          MR. KURZON:  Hundreds of actions?  Okay.  So, that's

8    positive.

9          THE COURT:  Good.

10         MR. KURZON:  That's positive news.  I'm glad I came

11   here today.

12         THE COURT:  I mean, I don't know what to say.

13         MR. KURZON:  I learned something.

14         THE COURT:  I think a naked short means you sell a

15   short -- the stock short even though you don't have the

16   underlying shares.

17         MR. KURZON:  You don't have a borrow permission.  You

18   just print a picture.

19         THE COURT:  Yes.  So, just to continue that analogy,

20   it couldn't be more naked because there's no shares.  There's

21   no shares.  They're completely -- don't exist.  And if somebody

22   buys that like they buy the Brooklyn Bridge, then that's up to

23   them.  But this is not what we do here in bankruptcy court,

24   it's just not.  I can't control --

25         MR. KURZON:  But what you do do is --

1          THE COURT:  -- I can't control naked short selling in

2   illegal markets --

3          MR. KURZON:  But you do --

4          THE COURT:  -- because I have no jurisdiction.  It

5   doesn't get to me.

6          MR. KURZON:  Your Honor, I'm sorry to interrupt but

7   you do enforce the plan and the Class 9, assuming if all -- if

8   all creditors are paid and there's still money left over in the

9   pot, that would benefit Class 9.

10          THE COURT:  Yes.  I guess, you know what --

11          MR. KURZON:  And then you have to distribute --

12          THE COURT:  -- if that ever happens --

13          MR. KURZON:  You have to distribute to Class 9.

14          THE COURT:  -- we'll cross that bridge if and when we

15   come to it.  I have a feeling that I might not be here when

16   that point, if that point ever arrives because from my

17   understanding is that, at the moment, the case is

18   administratively insolvent and there's hundreds of millions of

19   dollars owed to secured creditors still and unsecured

20   creditors, or billions -- I don't know -- billions, billions.

21          So, you know, I can't speculate, sir, I cannot

22   speculate.  So --

23          MR. KURZON:  Okay.  Well, instead of filing my post-

24   hearing statement, I think I've pretty much said it on the

25   record.  What I'll do is I'll give Mr. Sandler a copy labeled

1   draft as a way to just show the Court that I'm acting in good

2   faith in trying to constructively help the estate.

3          And I'll also try to e-mail a copy of it to the

4   attorneys for the Sixth Street, which I believe is the senior

5   secured lender so that, you know, if they want to amend the

6   plan to remove any sort of inquiries like I've made because all

7   shares have been cancelled, all 782 million common, however

8   many preferred there were and however many warrants, that being

9   then there's a cap table so that if and when the lawsuits are

10  successful and Mr. Goldberg fills the pot to pay all the

11  creditors, he'll know where to send the money to the

12  shareholders, who they were and that seems like a very

13  reasonable way to do bankruptcy law.  But I'm a rookie here, so

14  I really defer to your knowledge, Your Honor.

15         THE COURT:  All right.  Okay.  Well, I guess my

16  question was just simply are you withdrawing your motion

17  because if you want me to rule, I'll just rule right now and --

18  I mean, I did rule, really, basically, but I could fill in a

19  few gaps.

20         MR. KURZON:  Well because the plan does not say all

21  interest, it says each allowed interest, I cannot withdraw my

22  motion but I will respect your decision of course.

23         THE COURT:  Okay.  Well, I already said why I denied

24  it on procedural and substantive grounds.  I said that but I

25  also, in an effort to help, I did say to you that what just

1  could not be clearer from the plan and is not a paradox is that

2  all equity interests in Bed Bath & Beyond, Inc. have been

3  cancelled.  It just can't be clearer.  So there's no basis to

4  disclose the full shareholder ledger, but if it's to determine

5  that the shares are cancelled, there's no need for it either

6  because the shares are cancelled.

7       And then to submit a written explanation and

8  reconciliation of the discrepancy between a number of shares

9  held by Cede & Co. and a number of shares outstanding as to the

10  debtor, there's also another -- it's really kind of a non-

11  starter because, you know, besides there not being any matter

12  in which that request is pending, none of the -- even if there

13  were.

14       And you're an attorney so maybe you know this, I'm

15  not sure, but maybe you know this but if someone sends you a

16  document request, discovery request, there's no -- and it says

17  I want you to add these three columns and tell me what the

18  total is, it's not -- you don't have to create anything.  You

19  have to produce things that are -- that you have in your

20  possession, custody and control but you don't get to force

21  somebody to reconcile discrepancies.

22       So, I would deny that even if there were a proper

23  discovery request, I would deny that.  Where is my -- I have a

24  cite for that actually -- one second.

25       MR. KURZON:  Your Honor, I know we're in New Jersey

1 but in New York there is the Business Corporation Law that

2 allows a valid inspection of business documents under 624 of

3 the New York Business Appropriation Law.

4          THE COURT:  Okay, well, that's not before me --

5          MR. KURZON:  And I tried to use that with both the

6 plan administrator and with the transfer agent and was denied

7 in each case.  You know, it's a little confusing to navigate

8 the interplay between, you know, Judge Kaplan who's an Article

9 III judge and you with the Article I judge and then the New

10 York State law being in a New Jersey courtroom dealing with

11 federal bankruptcy.  But, you know, the ledger doesn't lie.

12 I'm looking for truth and if you're telling me that I don't

13 have a right to see the ledger --

14          THE COURT:  I'm not telling you -- I'm saying to you

15 that you didn't put it in the correct procedural and

16 substantive posture in this motion and that, further, that

17 there's no right -- there's no -- even if there were, there's

18 no right to compel a party to create a document and do things

19 like reconcile shares that is not something already -- that was

20 already produced and existing in their custody or control.

21          I mean, like, for example, Brown v. Warden Ross

22 Correctional Institute 2011 WL at 1877706 at *5, Southern

23 District of Ohio, May 16, 2011.  No duty to create documents

24 simply to comply with discovery requests.  Same thing in

25 Smallwood v. Collins 2010 WL 2044953 at *3, Southern District

22

1 Ohio, May 21, 2010.  Defendants have no duty to create a report

2 for plaintiff or produce documents that did not exist or not in

3 their custody or control.

4          So, that I couldn't do any way.  And then to preserve

5 the rights of equity holders to pursue further release claims

6 and remedies, is you are asking me for an advisory opinion.

7 Whatever rights and remedies you have or lost or you opted out,

8 so whatever rights and remedies shareholders lost as a result

9 of the plan, they lost.

10          But whatever rights they have they have and I can't

11 issue an opinion in a vacuum and an advisory opinion because

12 there's no controversy before me.  And that's <u>Maxus Energy</u>

13 <u>Corp.</u> 641 BR 467, 508, (Bankr. D. Del. 2022).  And so if

14 there's an actual case of controversy that's before me, I'll

15 deal with it.  But I can't deal with it in the abstract.  I'm

16 sure you're familiar with that.

17          MR. KURZON:  Yes.

18          THE COURT:  But if you're not, now you are.

19          MR. KURZON:  Yes.  Yes, thank you, Your Honor.

20          THE COURT:  Okay.  So, the motion is -- the

21 constitutional grounds, you know, you got notice so there was

22 due process and there was no taking without due process.  There

23 was no -- it was just -- it's a plan and the plan was confirmed

24 and --

25          MR. KURZON:  Well, Cede got notice.  I didn't get

1  notice.  And the other twenty-seven hundred approximately

2  shareholders on the register didn't get notice the way Cede got

3  notice.

4          THE COURT:  Okay.

5          MR. KURZON:  So that's a slight technicality but --

6          THE COURT:  Right.  But in any event, I can't deal

7  with it because I don't have that before me and I saw proofs of

8  service all over the place on the plan and confirmations of the

9  plan and voting.  And you voted, so you had actual notice.  You

10 didn't vote, you submitted a ballot that opted out.  So you had

11 actual notice.

12         MR. KURZON:  I don't know if that's a vote, Your

13 Honor, I think --

14         THE COURT:  No, you're right.  I corrected myself.

15         MR. KURZON:  Okay.

16         THE COURT:  It wasn't a vote.

17         MR. KURZON:  Yeah.

18         THE COURT:  It was not a vote.

19         MR. KURZON:  I wasn't entitled to vote.

20         THE COURT:  Crystal clear.  No, it's okay.  I deserve

21 to be corrected, it's appropriate to be corrected.  All I'm

22 saying to you is that the actual notice that you had of the

23 proceedings is evidenced by, among other things, the submission

24 of a form that opts out of the release.

25         So, the motion is denied for all those reasons.

24

1                    MR. KURZON:  Okay.  Thank you, Your Honor.

2                    THE COURT:  Thank you.

3                    MS. LEVINE:  Thank you, Your Honor.

4                    THE COURT:  Thank you.

5                    MS. LEVINE:  Should we settle an order?

6                    MR. SANDLER:  Thank you, Your Honor.

7                    THE COURT:  I'm sorry?

8                    MS. LEVINE:  Should we settle an order?

9                    THE COURT:  If you want to, yeah.  Sure.  That's

10   right.  I don't have an order.  You're right.  Yes.

11                   MR. SANDLER:  We'll take care of that, Your Honor.

12                   MS. LEVINE:  We'll take care of that.

13                   THE COURT:  Yes but I mean, you know what, keep it

14   simple -- motion denied for the reasons set forth on the record

15   because then if you start getting into all the nitty gritty,

16   it's going to --

17                   MS. LEVINE:  That was our intent, Your Honor.  We'll

18   send it to Mr. Kurzon first but that will be the substance of

19   it.

20                   THE COURT:  Yes, very simple.  Just send it to Mr.

21   Kurzon.  You have his contact info, right?

22                   MS. LEVINE:  We do.

23                   THE COURT:  I know.  Right?

24                   MR. SANDLER:  We do.  We have his e-mail.

25                   MS. LEVINE:  We do, Your Honor.

1          THE COURT:  And you know the rules are if you have

2    comments, you know, you try to work it out and if not, you

3    know, there's a seven day rule -- submit the form and seven

4    days to object and you have to submit a counter proposed form

5    of order.

6          MS. LEVINE:  Thank you, Your Honor.

7          MR. SANDLER:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          MR. SANDLER:  Appreciate the time.

10          THE COURT:  Yes, no problem.  Sorry you didn't get a

11   -- I just -- I don't know, you know, you don't need to speak

12   because I ruled.

13          MS. LEVINE:  Next time.

14          MR. SANDLER:  Sometimes lawyers are the smartest when

15   they say nothing.

16          THE COURT:  No, no --

17

18          MS. LEVINE:  Thank you, Your Honor.

19          MR. KURZON:  Thank you, Your Honor.

20          THE COURT:  All right.  Thank you.

21                        *  *  *  *  *

22

23

24

25

# C E R T I F I C A T I O N

I, ALYCE H. STINE, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Alyce H. Stine

ALYCE H. STINE

J&J COURT TRANSCRIBERS, INC.  DATE:  June 24, 2025