> **THIS OMNIBUS OBJECTION SEEKS TO RECLASSIFY AND DISALLOW CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT 1</u> ATTACHED TO THE PROPOSED ORDER.**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
plabov@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

In re:

BED BATH & BEYOND INC., *et al.*,[1]

            Debtors.

Chapter 11

Case No. 23-13359 (VFP)

(Jointly Administered)

**Hearing Date:**       **July 29, 2025**
**Hearing Time:**       **10:00 a.m. (ET)**
**Response Deadline:**  **July 22, 2025**

**ORAL ARGUMENT WAIVED UNLESS RESPONSES ARE TIMELY FILED**

# PLAN ADMINISTRATOR'S
## TWENTIETH OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIMS
### (<u>503(b)(9) Claims No. 2</u>)

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4904-5841-4415.1 08728.003

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), files his *Twentieth Omnibus Objection (Substantive) to Certain Claims (503(b)(9) Claims No. 2)* (the "Objection").[3] Each claimant ("Claimant") that has filed a proof of claim (the "Disputed Claims") listed on **Exhibit 1** to the proposed order granting this Objection (the "Proposed Order"),[4] asserts that the claim is, in whole or in part, entitled to priority as an Administrative Claim under Bankruptcy Code section 503(b)(9). In some instances, a Claimant has also alleged that some or all of the Disputed Claim is entitled to administrative priority under Bankruptcy Code section 503(b)(1) and/or priority under Bankruptcy Code section 507(a)(4). As is set forth below and on **Exhibit 1** to the Proposed Order, none of the Disputed Claims qualify for priority treatment under section 503(b)(9), 503(b)(1) or 507(a)(4), and the Plan Administrator asks the Court to reclassify each such Disputed Claim as a Class 6 General Unsecured Claim. In addition, in a number of instances (identified on Exhibit 1 to the Proposed Order), a Disputed Claim was filed after the 503(b)(9) Bar Date. In those instances, the Plan Administrator asks the Court to disallow the Disputed Claim in its entirety. In support of the Objection, the Plan Administrator respectfully states as follows:[5]

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

[4] The Proposed Order is attached to the Objection as **Exhibit A**.

[5] The Objection is supported by the Declaration of Michael Goldberg attached as **Exhibit B** (the "Goldberg Dec.").

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Plan Administrator confirms consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Objection are sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").[6]

## BACKGROUND

### A. General Background

4. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to

---

[6] Bankruptcy Rule 3007(e) authorizes the Plan Administrator to join up to 100 claims in an omnibus objection where the objection is based on the grounds that the claims: (1) duplicate other claims; (2) have been filed in the wrong case; (3) have been amended by subsequently filed proofs of claim; (4) were not timely filed; (5) have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (7) are interests, rather than claims; or (8) assert priority in an amount that exceeds the maximum amount under §507 of the Code. Fed. R. Bankr. P. 3007(d)-(e). District of New Jersey Local Bankruptcy Rule 3007-1 expands the permissible categories for omnibus objections. It provides, "An omnibus objection to claims may be filed to reduce the amount of a claim or to modify a claim's priority status." D.N.J. LBR 3007-2. *See* 2017 Comment to D.N.J. LBR 3007-2 ("This Rule is new. Promulgated under Bankruptcy Rule 3007(c), the rule expands the grounds upon which an omnibus objection may be based beyond those set forth under Bankruptcy Rule 3007(d).")

operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

5. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").

6. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). [Doc. No. 2311] On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. (Plan, Article IV, at § B)

**B.    Claim Objection Bar Date**

7. The Plan Administrator currently has until September 29, 2025 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[7] Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. (Plan, Article I.A, at § 14).

---

[7] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28. The original Claims Objection Bar Date was March 27, 2024. Pursuant to subsequent orders, the Court extended the deadline to September 30, 2024 [Doc. No. 2933], March 31, 2025 [Doc. No. 3541] and September 29, 2025 [Doc. No. 3963].

C. **Schedules and Claims Process**

8. On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

9. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

10. The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules, as the

deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim (the "Rejection Damages Bar Date").

11. With respect to other Administrative Claims *other than claims arising pursuant to section 503(b)(9),* the Bar Date Order provides:

> Except as otherwise provided herein, all persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert an Administrative Expense Claim pursuant to 503(b), **other than claims arising pursuant to section 503(b)(9)**, or 507(a)(2), shall submit a written proof of such Claim so that it is actually received by the Notice and Claims Agent before (a) on July 7, 2023 for claims incurred through June 27, 2023, (b) for all claims arising after June 27, 2023, on the 15th day of the month following the month in which the claim arose, and (c) fourteen days following the effective date of any confirmed plan (the "Administrative Claims Bar Date"), in accordance with this Bar Date Order; provided, however, that notwithstanding anything to the contrary herein, counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected— shall be required to file Administrative Claims no later than July 21, 2023.

Bar Date Order, ¶ 6.[8] The Effective Date of the Plan was September 29, 2023, so the last Administrative Claims Bar Date for claims incurred after July 7, 2023 was October 13, 2023.

12. Claims that are arise under Bankruptcy Code section 503(b)(9) are subject to the General Claims Bar Date of **July 7, 2023** (the "503(b)(9) Bar Date"). *See* Bar Date Order at ¶ 2.

13. The Bar Date Order also contains specific instructions and requirements for 503(b)(9) claims:

---

[8] The Confirmation Order provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

> In addition to the requirements set forth in (a) above, any Proof of Claim asserting a 503(b)(9) Claim must also: (i) include the value of the good delivered to and received by the Debtors in the twenty days prior to the Petition Date; (ii) attach documentation of the date on which the goods were delivered to and received by the Debtors; (iii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; (iv) attach documentation of any reclamation demand made to any Debtor under section 546(c) of the Bankruptcy Code (if applicable); and (v) set forth whether any portion of the 503(b)(9) Claim was satisfied by payments made by the Debtors pursuant to any order of the Court authorizing the Debtors to pay prepetition Claims.

Bar Date Order at ¶ 8(b).

14. On June 5, 2023, the Debtors caused a bar date notice to be published in The New York Times. [Doc. No. 638.] With the assistance of Kroll Restructuring Administration LLC (the "Claims Agent"), on May 31, 2023, the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the Case Management Order. [Doc. No. 893]. The Bar Date Order and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims Agent at https://restructuring.ra.kroll.com/bbby.

## RELIEF REQUESTED

15. In the ordinary course of business, including subsequent to the Petition Date, the Debtors maintained books and records (the "Books and Records") that reflect, among other things, the nature and amount of the liabilities owed to their creditors. The Plan Administrator and his professionals (including the Claims Agent) are in the process of reviewing, comparing, and reconciling proofs of claim (including any supporting documentation) with the Debtors' Schedules and its Books and Records. This reconciliation process includes identifying the particular Claims and categories of Claims that are subject to this Objection. For the reasons set

forth below and on Exhibit 1 to the Proposed Order, the Plan Administrator objects to each Disputed Claim.

## BASIS FOR RELIEF

**A.    Each Disputed Claim fails to satisfy the requirements of Bankruptcy Code section 503(b)(9) and the Bar Date Order.**

16.    The Claimants holding each Disputed Claim assert that the claim is, in whole or in part, entitled to priority as an Administrative Claim under Bankruptcy Code section 503(b)(9), which provides, "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including---the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).  As is set forth below and on Exhibit 1 to the Proposed Order, none of the Disputed Claims qualifies for priority treatment under section 503(b)(9).

    **(i)**    *The General Burden of Proof under 503(b).*

17.    While a properly executed and timely filed proof of claim that alleges a pre-petition claim "is deemed allowed, unless a party in interest . . . objects." (11 U.S.C. § 502(a)), where a Claimant alleges that its claim is entitled to administrative expense status under Bankruptcy Code section 503, the claimant must both seek *allowance* and establish *entitlement*. *See* 11 U.S.C. § 503(b) (allowing administrative expenses only "after notice and a hearing".). Because administrative expenses are given priority over both priority unsecured and general unsecured creditors, it is generally accepted that its requirements must be strictly construed). *See In re Jughandle Brewing Co., LLC*, 2024 Bankr. LEXIS 1305, *6 (Bankr. D.N.J. June 3, 2024).

    **(ii)**    *The Requirements of 503(b) (9).*

18. To prevail on a 503(b)(9) claim, a Claimant must establish: (1) that it sold goods to the Debtors; (2) the goods were received by the Debtors within twenty days prior to filing (i.e., on or after April 3, 2023 in this case); and (3) the goods were sold to the Debtors in the ordinary course of business. *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009) (emphasis added). Furthermore, the Bar Date Order specifically provides, *inter alia*, that the Claimant must "attach documentation of the date on which the goods were delivered to and received by the Debtors." Courts strictly construe these requirements because section 503(b)(9) elevates the status of certain pre-petition claims, and is therefore, an exception to the general rules of classification and allowance of claims. *See In re World Imps*, 516 B.R. 296, 297-98 (Bankr. E.D. Pa. 2014).

19. As is detailed on Exhibit 1 to the Proposed Order, each of the Disputed Claims is subject to the objection for one or more of the following reasons:

    a. The Disputed Claim relates to services rather than goods.

    b. The invoices attached to the Disputed Claim relate to goods that were received by the Debtors, if at all, before April 3, 2023.

    c. Claimant failed to attach documentation of the date on which the goods were delivered to and received by the Debtors.

    d. The goods were not actually received by the Debtors because they were "drop shipped" directly to the customer.[9] The phrase "received by the debtor" is not defined

---

[9] As the Debtors' Disclosure Statement notes, "The Debtors offer merchandise through their Bed Bath & Beyond stores and their buy buy BABY stores across North America. In addition to its flagship in-store presence, Bed Bath & Beyond sells products through its website, BedBathandBeyond.com. A portion of any items exclusively sold online includes products that Bed Bath & Beyond does not keep in stock and has "drop-shipped" from vendors directly to customers when ordered. Aside from drop-shipped merchandise, Bed Bath & Beyond fulfills approximately 70% of online orders from the Company's fulfillment centers and fulfills approximately 30% from its stores." Disclosure Statement [Doc. 1713] at 54 of 131

in the Bankruptcy Code; however, numerous courts have held that goods delivered to customers under drop-shipment arrangements are not "received" by the debtor for purposes of section 503(b)(9).[10] In fact, this Court previously denied administrative status to a vendor's 503(b)(9) claim in response to the Plan Administrator's argument that the goods had been shipped directly to the customer, and therefore, the Debtors never "received" the goods. *See Order Allowing the General Unsecured Claim of Levtex, LLC and Denying Request for Allowance of Administrative Expense Priority Under 11 U.S.C. § 503(b)(9)* [Doc. No. 2967].

20. Accordingly, the Plan Administrator asks this Court to hold that each Disputed Claim is not entitled to administrative status under section 503(b)(9) and reclassify each such Disputed Claim as a Class 6 General Unsecured Claim.

**B.   None of the Disputed Claims satisfies the requirements of Bankruptcy Code section 503(b)(1)(A).**

21. As was noted above, certain of the Disputed Claims also improperly assert administrative status pursuant to 11 U.S.C. §§ 507(a)(2) and 503(b). Section 503(b) states, in

---

[10] *See Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.,* 2012 U.S. Dist. LEXIS 122615, *18 (D. N.H. Aug. 29 2012) ("The phrase 'received by the debtor' as used in Section 503(b)(9) means: possessed by the debtor, either actually or constructively. [U]nder Section 503(b)(9), delivery to, or possession by, a debtor's customer under a drop-shipment arrangement does not constitute constructive possession by the debtor for Section 503(b)(9) purposes."); *In re World Imps*, 516 B.R. 296, 300 (Bankr. E.D. Pa. 2014) ("As the goods delivered under drop-shipment arrangements were not 'received' by the Debtor for purposes of § 503(b)(9), the Sunrise and Weisheng drop-shipments are not entitled to administrative priority."). *See e.g., In re World Imps., Ltd.,* 862 F.3d 338, 346 (3d Cir. 2017) ("[R]eceipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent."); *In re Adi Liquidation, Inc.,* 572 B.R. 543, 551 (Bankr. D. Del. 2017) ("[Creditor] cannot, as a matter of law, satisfy the requirement that [the debtor] must have "received" the goods with respect to deliveries made to non-debtor third parties."); *In re Circuit City Stores, Inc*., 432 B.R. 225, 230 (Bankr. E.D. Va. 2010) ("[T]he Court holds that the definition of "received" means "having taken into physical possession," and that this definition should be applied as the federal definition of the term "received" for purposes of interpreting § 503(b)(9) of the Bankruptcy Code."). Delivery of goods to a common carrier (i.e., Federal Express) does not render the goods in the Debtors "constructive possession" for the purpose of 503(b)(9). *See In re World Imps., Ltd.*, 862 F.3d at 346 ("[T]here is no support for the idea that a buyer constructively receives goods when they are delivered to a common carrier, even if title and risk of loss pass at that time."); *In re SRC Liquidation, LLC,* 573 B.R. 537, 542 (Bankr. D. Del. 2017) ("The Debtor never physically possessed the goods. Only UPS possessed the goods, and as a carrier UPS does not qualify as an agent. . . . The goods were never received by the Debtor from [seller] within the meaning of section 503(b)(9).").

relevant part, "After notice and a hearing, there shall be allowed administrative expenses, . . . including – (1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). To establish administrative expense priority under this provision, the burden is on the claimant to demonstrate that the obligation claimed as an administrative expenses (1) arose out a post-petition transaction with the debtor in possession and (2) directly and substantially benefitted the estate. *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999). The administrative claimant carries "'the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.'" *Id*. at 534 (*quoting In re O'Brien Environmental Energy, Inc.*, No. 94-26723, slip op. at 30 (Bankr. D.N.J. Nov. 8, 1996)); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 172-73 (3rd Cir. 2012) ("The party asserting an administrative expense claim bears the burden of demonstrating that it deserves administrative expense status."). As the Third Circuit has previously noted:

> These requirements balance two important goals. By giving priority to those claims that help keep the debtor-in-possession functioning, "sections 503 and 507 advance the estate's interest in survival above all other financial goals." *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990). By limiting priority to those claims that are actual and necessary, the Code prevents the estate from being consumed by administrative expenses, and preserves the estate for the benefit of the creditors. *See Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs, Inc*., 178 F.3d 685, 690 (3d Cir. 1999) (holding that "Chapter 11 is intended to rehabilitate the debtor and avoid forfeiture by creditors") (quotations and brackets omitted). Consistent with the objective of preserving the estate for creditors, the burden to demonstrate that an expense deserves administrative priority lies with the party asserting such priority.

*In re Marcal Paper Mills, Inc.,* 650 F.3d 311, 315 (3d. Cir. 2011).

22. The Disputed Claims asserted as administrative expense claims should be reclassified because such claims do not satisfy the requirements of section 503(b)(1)(A) of the Bankruptcy Code. Claimants have failed to provide any evidence demonstrating their claims arose from post-petition transactions with the Debtors and that their claims provided an actual and concrete benefit to the Debtors' estates. Because the Claimants have not satisfied their heavy burden under section 503(b)(1)(A), the Disputed Claims asserted as administrative expense claims under 503(b)(1) should be reclassified as Class 6 General Unsecured Claims.

C. **None of the Disputed Claims satisfy the requirements of Bankruptcy Code section 507(a)(4)**

23. As was noted above, certain of the Disputed Claims also improperly assert priority status pursuant to 11 U.S.C. §§ 507(a)(4), which provides a fourth order of priority for:

> allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).[11] As is set forth on Exhibit 1 to the Proposed Order, none of the Disputed Claims satisfies section 507(a)(4) and each Disputed Claim should be reclassified as a Class 6 General Unsecured Claim.

---

[11] The 507(a)(4) limit was increased to $17,150 for cases filed after April 1, 2025.

D.  **Disputed Claims that were filed after July 7, 2023 should be disallowed.**

24. As was noted above, the Court set July 7, 2023 as the last date by which claims pursuant to section 503(b)(9) must be filed. The Bar Date Order made clear that creditors who failed to do so would not be entitled to participate in distributions, stating:

> In accordance with Bankruptcy Rule 3003(c)(2) any holder of a Claim that is not excepted from the requirements of the Bar Date Order and fails to timely submit a Proof of Claim in the appropriate form shall be forever barred, estopped, and enjoined from (a) voting on any chapter 11 plan filed in these Chapter 11 Cases on account of such Claim, (b) participating in any distribution in these Chapter 11 Cases on account of such Claim, and (c) receiving further notices regarding such Claim.

Bar Date Order at ¶ 7. *See also* Fed. R. Bankr. P. 3003(c)(2)("A creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."). A claims bar date is "'a drop-dead date' that bars claimants who fail to file a proof of claim by such date as set by the court from seeking payment from debtors." *In re Maxus Energy Corp.*, 639 B.R. 51, 64 (Bankr. D. Del. 2022). Accordingly, the Plan Administrator asks the Court to disallow each of the Disputed Claims identified on Exhibit 1 to the Proposed Order as having been filed after July 7, 2023.

## SEPARATE CONTESTED MATTERS

25. Each claim subject to this Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by this Court will be deemed a separate order with respect to such claim.

## RESERVATION OF RIGHTS

26. Nothing contained in this Objection or any actions taken by the Plan Administrator pursuant to the relief requested herein is intended or should be construed as (a) an

admission as to the validity or amount of any claim against the Debtors; (b) a waiver of the Plan Administrator's or any other party in interest's right to dispute any claim or interest; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

27.     The Plan Administrator expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to any other claims (filed or not) or interests that may be asserted. Should one or more of the grounds of objection stated in this Objection be overruled, the Plan Administrator reserves the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits. ***The Plan Administrator also reserves the right to file other and further objections to any Disputed Claim that is reclassified as a Class 6 General Unsecured Claim pursuant to the Proposed Order***.

## NOTICE

28.     Notice of this Objection is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule

>2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

29. Pursuant to Paragraph 124, notice of the Objection and the hearing thereon was given to (i) the Claimants holding the Disputed Claims listed on **Exhibit 1** to the Proposed Order at the addresses set forth for notice on the Disputed Claims (which addresses have been redacted for privacy for individual Claimants); (ii) the U.S. Trustee; (iii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iv) all parties who are registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances

## NO PRIOR REQUEST

30. No prior request for the relief sought in this Objection has been made to this or any other court.

**CONCLUSION**

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order attached as **Exhibit A** and granting such other and further relief as is just and proper under the circumstances.

Dated: June 24, 2025　　　　　　　　　　　*/s/ Bradford J. Sandler*

　　　　　　　　　　　　　　　　　　　　Robert J. Feinstein, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Bradford J. Sandler, Esq.
　　　　　　　　　　　　　　　　　　　　Paul J. Labov, Esq.
　　　　　　　　　　　　　　　　　　　　Edward A. Corma, Esq.
　　　　　　　　　　　　　　　　　　　　**PACHULSKI STANG ZIEHL & JONES LLP**
　　　　　　　　　　　　　　　　　　　　1700 Broadway, 36th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 561-7700
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 561-7777
　　　　　　　　　　　　　　　　　　　　Email: rfeinstein@pszjlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　bsandler@pszjlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　plabov@pszjlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　ecorma@pszjlaw.com

　　　　　　　　　　　　　　　　　　　　*Counsel to the Plan Administrator*