**Jeffrey Mead Kurzon**
P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com
(212) 203-8918

**FILED**
JEANNE A. NAUGHTON, CLERK
JUL -7 2025
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____DEPUTY

**COVER LETTER TO CLERK**

Clerk of the Court
United States Bankruptcy Court
District of New Jersey
Martin Luther King Jr. Federal Building,
50 Walnut Street, Newark, NJ 07102

July 3, 2025

Re: In re Bed Bath & Beyond Inc., et al., Case No. 23-13359 (VFP)

**Dear Clerk of Court,**

      Enclosed for filing is a *pro se* **Reservation of Rights** — in connection but not limited to — the motion dated May 19, 2025, seeking disclosure and reconciliation of the shareholder ledger as of the Plan's Effective Date (Dkts. 4126, 4127, 4128, 4143, 4146, 4150 and 4155) (the "Motion"). This Reservation of Rights waives none and further reserves all rights under law, equity and colorable extension of public policy to shape new law, in this court, in other United States federal and state courts, and beyond (e.g. in Canadian and other non-US courts where material facts and circumstances may have occurred to harm the undersigned and/or similarly situated members of Class 9).

      For the Court's convenience, page 2 herein in a summary of relevant dates and docket numbers connected to the Motion.

**Respectfully submitted,**

/s/ Jeffrey Mead Kurzon

Jeffrey Mead Kurzon, *pro se*

*[handwritten annotation:]* ~~on~~ Last docket No. as of scan/3:01 pm 7/3/2025 JMK and pre-post office JMK

1

## MOTION PROCEDURAL AND ABBREVIATED HISTORY

| Docket (Summary) Name | Date on Docket | Docket No.[1] |
|---|---|---|
| Notice of Hearing | June 9, 2024 | 3312 |
| Hearing in Newark | June 10, 2024* | NA |
| Transcript of June 10, 2024 Hearing ("Count the horse's teeth") | June 13, 2024* | 3317 |
| Letter to Judge Papalia | August 13, 2024 | 3452 |
| Response from Court re 3452 | August 16, 2024 | 3463 |
| Motion for Shareholder Ledger | May 22, 2025 | 4126 |
| 1st Supplement (8K) | May 22, 2025 | 4127 |
| Hearing Scheduled for June 17, 2025 | May 22, 2025 | 4128 |
| 2nd Supplement (additional evidence) | June 4, 2025 | 4143 |
| Goldberg Objection | June 10, 2025 | 4146 |
| Kurzon Reply | June 13, 2025 | 4150 |
| Hearing in Newark | June 17, 2025 | NA |
| Transcript Available | June 24, 2025 | 4155 |

[*Ordered July 3, 2025 and currently under review by the undersigned.]

**Note:** For clarity and continuity, key docket entries are cited herein, including but not limited to:

- **Dkt. No. 2311** (Notice of Entry of Order),

- **Dkt. No. 2172** (Findings of Fact and Conclusions of Law by Judge Kaplan, including the Second Amended Plan), and

- **Dkt. No. 2161** (Amended Plan Supplement).

*[handwritten annotation: "Jmk ~ Need transcript. Anyone wanna swap? Jmk"]*

---

[1] As of the date of this filing, all docket filings are available at https://restructuring.ra.kroll.com/bbby except transcripts which are available at the Clerk's office or from www.jjcourt.com.

2

The United States Constitution and the United States Bankruptcy Code (11 U.S.C. § 101 et seq.) govern these proceedings. To the extent that any provision of the confirmed Plan or its enforcement contradicts constitutional guarantees or statutory mandates, it is respectfully asserted that such provision would be unenforceable and *ultra vires*.

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

In re:

Bed Bath & Beyond Inc., et al.,

Debtors.[2]

Case No. 23-13359 (VFP)

Chapter 11 (Jointly Administered)

## RESERVATION OF RIGHTS BY
## *PRO SE* SHAREHOLDER JEFFREY MEAD KURZON

**PRELIMINARY STATEMENT**

Reservation of Rights filer and *pro se* party Jeffrey Mead Kurzon ("Jeffrey" or "the undersigned"), Movant under Dkt. Nos. 4126 and following, submits this statement to preserve his legal and equitable rights. Jeffrey seeks recovery and recognition of value for his 58,008 directly registered AST/Equiniti shares, as well as thousands of additional broker-held shares, which are clearly documented in the Court record and in prior privileged correspondence with both the Court and the Defendants (as defined below).

Although Jeffrey advocates for broader fairness to Class 9 shareholders, he represents only himself at this time. Throughout his good-faith efforts to engage with Plan Administrator Michael Goldberg ("Goldberg"), and his counsel Pachulski Stang

---

[2] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4

Ziehl & Jones LLP ("Pachulski"), including Robert J. Feinstein ("Feinstein") and Bradford J. Sandler ("Sandler") (collectively, the "Defendants," and inclusive of any future individuals or entities who may be added), Jeffrey has encountered a pattern of gaslighting, obstruction, and bad-faith evasive conduct.

Rather than honoring their obligations of comity, transparency, and good faith under the confirmed Plan, and rather than seeking to maximize estate value in accordance with fiduciary duty, the Defendants have acted in a manner that Jeffrey believes has diminished value, violated the rights of Class 9, and prioritized self-interest over legal integrity and public trust.

Based upon information and belief, Jeffrey is preparing a formal complaint against the Defendants seeking at least $10 billion in damages, calculated in part from his estimation that Class 9 shareholders should receive a minimum of $10 per share, distributed pro rata under the Plan and the absolute priority rule. He does not seek legal fees or unjust enrichment, but rather justice for all Class 9 shareholders, recognition of his own rightful recovery, and a corrective remedy against institutional abuse.

Additionally, it is noted that George M. Kurzon, Jr., Jeffrey's father, held shares in the Debtor prior to his passing on July 2, 2025. Out of ethical caution and transparency, those shares—held via a retirement account where a family business acted as custodian—shall be excluded from any future class action claims due to Jeffrey's potential conflict of interest involving that business and its members, which are his mother and brother who is also an attorney by profession.

## JUNE 17, 2025 HEARING IN NEWARK, NEW JERSEY

The June 17, 2025 hearing before the Honorable Judge Papalia in Newark, New Jersey, was brief, somewhat awkward, and emblematic of the confusion and procedural unfairness that have characterized these proceedings. The transcript has been publicly available for over a week. In the immediate aftermath of the hearing, both the undersigned and the Defendants submitted competing proposed orders to Chambers — highlighting the core, still-unanswered issue: **What constitutes an "Allowed Interest" under the confirmed Plan?**

This question remains unresolved despite over a year of correspondence and pleading. The Defendants, including the Plan Administrator and his counsel, have consistently acted in bad faith toward the undersigned. Most notably, in Dkt. No. 4146, they described Jeffrey as a "purported shareholder," disregarding his sworn testimony, documentary evidence of ownership of 58,008 AST-registered shares, and months of good-faith engagement seeking clarity.

Only at the June 17 hearing — and under judicial scrutiny — did the Defendants finally concede, implicitly and grudgingly, that Jeffrey is in fact a shareholder. This last-minute shift amounts to **trial-by-ambush** and reveals a deeper structural failure of transparency. Plan Administrator Michael Goldberg, by all observable accounts, has hidden behind his legal counsel, avoiding direct responsibility and refusing to clarify the rights of Class 9 shareholders. Whether this conduct rises to the level of fraud on the Court, or merely reflects negligence or breach of fiduciary duty, remains to be determined by the record. What is clear, however, is that Goldberg and his attorneys have betrayed their obligation of good faith under the Plan — both to Jeffrey and to all other members of Class 9 who continue to await a just and lawful resolution.

6

June 17 marked Jeffrey's third appearance before Judge Papalia. His first appearance occurred on June 10, 2024, the same day after attending a friend's memorial service that same morning. At that hearing, Jeffrey attempted to share the phrase "Count the horse's teeth," an allegory his father taught him about due diligence — a phrase that now rings prophetic given the estate's refusal to show the ledger. The second appearance, on August 8, 2024, is documented in the transcript attached to Goldberg's objection at Dkt. No. 4146. On that occasion, Jeffrey argued against sanctions being levied on another *pro se* shareholder and urged the Court to appoint a Shareholder Committee, as he had attempted in a parallel bankruptcy proceeding in Delaware, where naked shorting was suspected.

At the June 17 hearing, attorneys from Pachulski — including Bradford Sandler and Beth Levine — sat silent while Judge Papalia suggested that "all shares are cancelled." But that raises a pivotal legal question: Are *all* shares cancelled, or only "Allowed Shares"? And if only "Allowed" shares are cancelled, then who decides what is "Allowed"? Why have neither this Court nor the Defendants given a clear and unambiguous answer and instead chosen weaponized ambiguity and silence?

Further, why is the AST/Equiniti ledger — the only contemporaneous document that shows ownership as of September 29, 2023, the Plan's Effective Date — being treated as a state secret? This ledger (the "**Ledger**") should be a straightforward piece of evidence. It does not require interpretation, litigation, or evasive silence. It holds the truth — and the key to resolving this case in a lawful, efficient, and transparent manner.

That the estate's fiduciaries would go to such lengths to hide a simple shareholder ledger speaks volumes about the dysfunction at the heart of this proceeding. The time has come to produce the Ledger and restore confidence in the judicial process.

**LITIGATION AS STRATEGY: WHEN SILENCE BECOMES SABOTAGE**

The behavior of Plan Administrator Michael Goldberg and his attorneys at Pachulski Stang Ziehl & Jones LLP reveals a deliberate and cynical litigation strategy: escalate conflict, refuse engagement, and run up fees — all while stonewalling the very shareholders they are duty-bound to serve. This is not administration. It is obstruction.

On June 5, 2025, at 8:48 AM, the undersigned sent a clear and reasonable email to Robert Feinstein and Bradford Sandler, with copies to Michael Goldberg, Fran Steele, and the Office of the United States Trustee. The message — respectful, specific, and sent in advance of the June 17 hearing — made two simple requests:

1. A copy of the list of "Allowed Interests" in Class 9, as referenced in the confirmed Plan (Dkt. No. 2160 or the operative version), and

2. Clarification as to whether any equity in a successor entity ("NewCo") has been issued, reserved, or otherwise allocated pursuant to the Plan.

There was no response. No reply. No courtesy. No good faith. Just stone-cold silence.

This silence was not incidental — it was strategic. And it came from a team of professionals billing the estate hundreds of thousands of dollars while deliberately ignoring a direct, material inquiry from a verified shareholder and *pro se* movant with 58,008 registered shares. Their refusal to answer basic Plan-related questions is not just rude — it is actionable misconduct, potentially rising to the level of a breach of fiduciary duty, Rule 9011(b) violation, and fraud upon the Court.

8

Instead of transparency, Pachulski has chosen gaslighting, referring to the undersigned as a "purported shareholder" (Dkt. No. 4146) despite sworn declarations, public filings, and private correspondence confirming otherwise including privileged communications since October of 2023 when Jeffrey raised the issues to Feinstein and other Pachulski attorneys. Only at the June 17 hearing did they finally concede — under pressure — that the undersigned is indeed a shareholder. By then, the damage had been done.

The result of this coordinated silence is a manufactured conflict, designed not to resolve disputes or finalize this process for the Debtors, but to drag out proceedings in a way that benefits only the billing parties. It's an insult to the Court, to the Code, and to every honest stakeholder in this case. Their conduct exemplifies how fiduciary roles can be weaponized against the very people they are meant to protect.

This pattern will not withstand scrutiny. The record is clear. When faced with the opportunity to resolve this matter in good faith, the Defendants chose escalation — because escalation pays.

### ADDITIONAL QUESTIONS ARISING FROM JUNE 17 AND CONTINUED GASLIGHTING BY THE PLAN ADMINISTRATOR AND COUNSEL

Jeffrey, a practicing attorney for over twenty years, understands that courts exist to resolve disputes — not to manufacture new ones by silencing stakeholders. And yet, that is precisely what has occurred in these proceedings. From the beginning, both the Plan Administrator and his counsel at Pachulski Stang Ziehl & Jones LLP have treated

the undersigned as an adversary, not a participant — despite his verified share ownership, good-faith filings, and consistent attempts to seek clarity.

To what end? If Jeffrey had instead discovered a $250,000 treasure chest and used the funds to retain litigation counsel, would that have changed the response? Or simply escalated the institutional hostility even further? The message sent by the Defendants is clear: disregard the *pro se*, deny him standing, then vilify him when he speaks up.

What emerged clearly at the June 17 hearing is that hundreds of adversary actions remain pending, directly contradicting any suggestion that this case is drawing to a close. Instead, the litigation web continues to grow — and with it, the number of unresolved legal questions that threaten the legitimacy of the process.

Accordingly, the undersigned reserves the right to raise the following questions, at the appropriate time and in the appropriate forum:

1. How can adversary proceedings alleging harm to Creditors remain active if the Third-Party Release was purportedly designed to make all parties whole? If those harms are still actionable, then either the Release failed its stated purpose, or it has been applied in a selective and unlawful manner.

2. Can a Section 355 transaction under the Internal Revenue Code be lawfully used to spin off or isolate assets from the bankruptcy estate while simultaneously canceling the Class 9 ownership interest — without fair disclosure, valuation, or recovery (not to mention potentially selective treatment in violation of § 1123(a)(4))? If so, it invites serious allegations of fraudulent conveyance and breach of the absolute priority rule.

3. Can Third-Party Releases — especially those negotiated between ABL lenders, Predecessor Agents, and the Creditors' Committee — be used to preserve a going concern while extinguishing the interests of Class 9 shareholders, including those who opted out, without violating RICO statutes or due process rights? This question demands scrutiny in light of the U.S. Supreme Court's recent guidance in *Purdue Pharma*, which confirmed limits on non-consensual releases.

These are not abstract hypotheticals. They strike at the core of equity, legality, and systemic integrity in bankruptcy reorganization. If left unaddressed, they risk enabling a blueprint for institutional abuse, in which insiders reap value while rightful owners are silenced and erased. Honorable Judge Papalia seemed to indicate on the record on June 17 that Jeffrey did in fact opt-out of the Third-Party Release.

The undersigned reserves all rights to pursue answers to these questions — before this Court or any other tribunal empowered to enforce the law and protect the public trust.

### IMPROPER USE OF PLAN INJUNCTION AND EXCULPATION TO SHIELD POTENTIAL MISCONDUCT

The undersigned reserves all rights to challenge the Plan's injunction and exculpation provisions to the extent they purport to immunize acts of **bad faith, concealment, or breach of fiduciary duty**—particularly where such actions harmed Class 9. **No court has the authority to shield wrongdoing by decree**, and to the extent these provisions have chilled participation or protected select insiders, they may be **unenforceable** as applied. The undersigned expressly reserves the right to challenge their scope in this or any future forum.

### RULE 27 PROCEEDING IN THE SOUTHERN DISTRICT OF NEW YORK

11

Should this Court decline to compel disclosure of the full shareholder ledger, the undersigned reserves the right to **seek leave to file a Rule 27 petition in the Southern District of New York,** or another appropriate federal court, to preserve and obtain such evidence — including testimony or documents in the possession of Equiniti Trust Company and any third parties who may be concealing material information relevant to Class 9 equity.

**CONCLUSION**

If certain not "Allowed" or "cancelled" but not really cancelled shares survive, or are quietly used as fuel to power the next phase of reorganization, then all Class 9 shareholders must be treated equally under § 1123(a)(4). Anything less violates the confirmed Plan, the Bankruptcy Code, and basic fairness. Whether shares are directly registered, broker-held, or sold behind the courthouse by a trenchcoat-wearing band of raccoons on Cottage Street, the law demands uniform treatment. Defendants should not be permitted to cherry-pick which shares survive for non-transparent and non-disclosed purposes.

**No ledger, no truth. No truth, no peace. No peace, no end to the ever-growing docket.** For these reasons, and in the interest of justice and judicial efficiency, the undersigned respectfully requests that this Court enter an Order:

1. **Clarifying Judge Papalia's oral ruling** of June 17, 2025 regarding the cancellation of shares and the plain English meaning of "Allowed Interests";

2. **Compelling the Plan Administrator to produce the full shareholder ledger,** including the total number of issued and outstanding shares as of the Plan's Effective Date (September 29, 2023), so the Debtor may exit Chapter 11 with a clean, accurate, and legally supportable capitalization table;

3. **Scheduling a status conference** to de-escalate hostilities between the undersigned and the Defendants, and potentially avoid what could become a $10 billion adversary proceeding; and

4. **Granting leave to the undersigned to file a Rule 27 petition** in the Southern District of New York or another appropriate federal district court, for the purpose of preserving and obtaining pre-suit testimony and documentary evidence — including but not limited to the full shareholder ledger maintained by Equiniti Trust Company as of the Plan's Effective Date — should this Court decline to order immediate disclosure; and

5. **Granting such other and further relief** as this Court deems just and proper to preserve the integrity of the reorganization process, protect Class 9 stakeholders, and ensure that finality rests not on omission, obfuscation, or fraud — but on truth.

Dated: July 3, 2025

*"Our courage must never waver," - GAREN*

Respectfully submitted*,

/s/ Jeffrey Mead Kurzon

**Jeffrey Mead Kurzon**
*Pro Se* Shareholder and Movant

Dated: July 3, 2025

*Filed *pro se* under duress, threat of improper sanctions, institutional silence and a dose of justifiable anger — but still firmly and unequivocally in good faith. The undersigned reserves all rights and objections to any future attempt to recharacterize his filings, tone, or persistence as grounds for sanction. Advocacy rooted in equity, truth, and lived harm is not sanctionable — it is constitutional and the bedrock of who we are as a nation.

13

## CERTIFICATE OF SERVICE

I, Jeffrey Mead Kurzon, certify that on July 3, 2025, I submitted by Priority Mail Express the within RESERVATION OF RIGHTS to the Clerk of the United States Bankruptcy Court, District of New Jersey, and that I served copies via email immediately thereafter (or as soon as practicable) on the following parties of interest, together with the accompanying Cover Letter:

By USPS Priority Mail Express to:
• Clerk of the Court
United States Bankruptcy Court, District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

By Email (on July 3, 2025, or as soon as practicable thereafter):

• Plan Administrator:
Michael Goldberg
michael.goldberg@akerman.com
(cc to counsel below)

• Counsel for the Plan Administrator:
Bradford J. Sandler – bsandler@pszjlaw.com
Robert J. Feinstein – rfeinstein@pszjlaw.com
Beth E. Levine – blevine@pszjlaw.com
Edward A. Corma – ecorma@pszjlaw.com

• Debtors' Lead Counsel:
Kirkland & Ellis LLP
Joshua A. Sussberg – joshua.sussberg@kirkland.com
Emily Geier – emily.geier@kirkland.com

• Debtors' Local Counsel:
Michael D. Sirota, Esq.
COLE SCHOTZ P.C.
msirota@coleschotz.com

• Office of the United States Trustee for Region 3:
ustpregion03.ne.ecf@usdoj.gov
Fran B. Steele, Esq. – Fran.B.Steele@usdoj.gov
One Newark Center

1085 Raymond Blvd., Suite 2100
Newark, NJ 07102

**NEW SERVICE PARTY ADDED AS FOR THEIR INFORMATION ONLY AND NOT TO IMPLY ANY WRONGDOING**

**Equiniti Trust Company, LLC**
Attn: Legal Department
6201 15th Avenue
Brooklyn, NY 11219

VIA EMAIL

HelpAST@equiniti.com and

investors@astfinancial.com

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 3, 2025
/s/ Jeffrey Mead Kurzon
Jeffrey Mead Kurzon
*Pro Se*

P.O. Box 454
Peterborough, NH 03458
Jeff@Kurzon.com | 212-203-8918

**PRIORITY MAIL EXPRESS**

**FLAT RATE ENVELOPE**

ONE RATE ■ ANY WEIGHT

PEEL FROM THIS CORNER

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PS10001000006

EP13F July 2022
OD: 12 1/2 x 9 1/2

**DELIVERY OPTIONS (Customer Use Only)**
- SIGNATURE REQUIRED
- No Saturday Delivery
- Sunday/Holiday Delivery Required

TO: (PLEASE PRINT) PHONE ( 973 ) 645-4764

Clerk of the Court
United States Bankruptcy Court
District of New Jersey
Martin Luther King Jr. Federal Building
50 Walnut St, Newark, NJ
ZIP: 07102

RE: RESERVATION OF RIGHTS
BED BATH & BEYOND, INC.
(VFP)

**DELIVERY (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Date Accepted | Scheduled Delivery Date | Postage |
|---|---|---|---|
| 03456 | 7/3/25 | 7/7/25 | $ 31.40 |

Time Accepted: 3:37 PM
Scheduled Delivery Time: 6:00 PM
Flat Rate
Employee Initials: DK
Total Postage & Fees: $ 31.40

■ Domestic shipments include $100 of insurance (restrictions apply).
■ Signature included upon request.

* Money Back Guarantee to U.S., select APO/FPO/DPO and select International destinations.
† Money Back Guarantee for U.S. destinations only.
‡ Insurance does not cover certain items.

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.





R2304W119785-09