| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Robert J. Feinstein, Esq. (admitted *pro hac vice*)<br>Bradford J. Sandler, Esq.<br>Erin Gray, Esq. (admitted *pro hac vice*)<br>Edward A. Corma, Esq.<br>PACHULSKI STANG ZIEHL & JONES LLP<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Telephone:  (212) 561-7700<br>Facsimile:  (212) 561-7777<br>Email:  rfeinstein@pszjlaw.com<br>         bsandler@pszjlaw.com<br>         egray@pszjlaw.com<br>         ecorma@pszjlaw.com<br><br>*Counsel to the Plan Administrator* |

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered)<br><br>**Hearing Date:         August 12, 2025**<br>**Hearing Time:        10:00 a.m. (ET)**<br>**Response Deadline:  August 5, 2025**<br><br>**ORAL ARGUMENT WAIVED**<br>**UNLESS RESPONSES ARE**<br>**TIMELY FILED** |

**PLAN ADMINISTRATOR'S REPLY TO CLAIMANT'S RESPONSE TO TWENTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIMS (503(b)(9) Claims No. 3)**

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4937-7811-8748.2 08728.003

affiliated debtors (the "Debtors"), files this reply to the response submitted by Ozeri ("Ozeri") to the *21st Omnibus Objection (Substantive) to Certain Claims (503(b)(9) Claims No.3)* (the "Objection") [Doc. No. 4169].[3]

1. Pursuant to the Objection, the Plan Administrator objected to Claim 10322 ("Claim 10322") filed by Ozeri for $161,477.49, $3,727.90 of which Ozeri alleged is entitled to priority under Bankruptcy Code section 503(b)(9). A copy of Claim 10322 is attached hereto as **Exhibit A**.

2. In the Objection, the Plan Administrator argued that Claim 10322 was not entitled to administrative status because the goods were drop-shipped directly to the Debtor's customers; therefore, the goods were not "received by the debtor" as required by section 503(b)(9).

3. In its response,[4] Ozeri admits that it is a "drop ship vendor" and that the Debtors were never in physical possession of the goods. *See* Ozeri Response at 1 ("As a drop-ship vendor, the goods we sold to Bed Bath & Beyond may not have physically entered the premises of Bed Bath & Beyond . . ."). It argues, however, without any citation to authority, that the goods "legally became the property of [BBB] with each shipment" and "were labeled as shipped from [BBB]. . ." *Id.*

4. While the phrase "received by the debtor" is not defined in the Bankruptcy Code, the Third Circuit Court of Appeals has held that for the purpose of section 503(b)(9) "goods are 'received' when the debtor or its agent takes physical possession of them." *In re World Imps.,*

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

[4] A copy of the Ozeri Response is attached as **Exhibit B.** As of the filing of this Reply, the Ozeri Response has not been filed on the docket.

*Ltd.*, 862 F.3d 338, 342 (3d Cir. 2017). Numerous courts have held that goods delivered to customers under drop-shipment arrangements are not "received" by the debtor for purposes of section 503(b)(9). *See Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.,* 2012 U.S. Dist. LEXIS 122615, *18 (D. N.H. Aug. 29 2012) ("The phrase 'received by the debtor' as used in Section 503(b)(9) means: possessed by the debtor, either actually or constructively. ***[U]nder Section 503(b)(9), delivery to, or possession by, a debtor's customer under a drop-shipment arrangement does not constitute constructive possession by the debtor for Section 503(b)(9) purposes***.") (emphasis added); *In re World Imps*, 516 B.R. 296, 300 (Bankr. E.D. Pa. 2014) ("As the goods delivered under drop-shipment arrangements were not 'received' by the Debtor for purposes of § 503(b)(9), the Sunrise and Weisheng drop-shipments are not entitled to administrative priority."). *See e.g., In re Adi Liquidation, Inc.,* 572 B.R. 543, 551 (Bankr. D. Del. 2017) ("[Creditor] cannot, as a matter of law, satisfy the requirement that [the debtor] must have "received" the goods with respect to deliveries made to non-debtor third parties."); *In re Circuit City Stores, Inc.*, 432 B.R. 225, 230 (Bankr. E.D. Va. 2010) ("[T]he Court holds that the definition of "received" means "having taken into physical possession," and that this definition should be applied as the federal definition of the term "received" for purposes of interpreting § 503(b)(9) of the Bankruptcy Code.").

5. Furthermore, delivery of goods to a common carrier (i.e., Federal Express, United States Postal Service, United Parcel Service and the like) does not render the goods in the Debtors "constructive possession" for the purpose of 503(b)(9). In *In re World Imps., Ltd*., 862 F.3d 338 (3d Cir. 2017), the court considered whether goods were "received by the debtor" for the purpose of section 503(b)(9) when they were delivered by the seller to a common carrier for shipment or, later, when the debtor took physical possession of the goods at the port. The Court

first held, "Based on the ordinary meaning of 'received,' the legislative context of the Bankruptcy Code, and persuasive decisions finding that Congress meant to use the [Uniform Commercial Code] definitions for this particular amendment to the Bankruptcy Code, we hold goods are "received" when the debtor or its agent takes physical possession of them." *Id*. at 342; U.C.C. § 2-103(1)(c)( "Receipt" of goods means taking physical possession of them."). The *World Imports* court further held that a common carrier is **not** the debtor's agent for section 503(b)(9). The court explained that "delivery" to a common carrier for shipment and "receipt" by the buyer are two legally distinct concepts, even where title to the goods and risk of loss pass to the buyer upon delivery:

> While it is true that a buyer may be deemed to have received goods when his agent takes physical possession of them, ***common carriers are not agents***. Constructive receipt thus does not include "FOB delivery" to a common carrier, as the Bankruptcy Court and District Court assumed. ***Delivery, or transfer of title or risk of loss, has been treated as distinct from actual receipt of goods by the buyer***. The official comment to the UCC's definition of receipt makes this distinction: "Receipt" must be distinguished from delivery particularly in regard to the problems arising out of shipment of goods, whether or not the contract calls for making delivery by way of documents of title, since the seller may frequently fulfill his obligations to "deliver" even though the buyer may never "receive" the goods. UCC § 2-103 cmt. 2 . . . A seller may deliver goods to a common carrier—thereby relinquishing title and risk of loss—some time before the goods are received by the buyer or its agent.

*World Imports,* 862 F.3d at 344. The Court of Appeals continued:

> [U]nder the UCC and Chapter 11, receipt does not occur until after the seller's ability to stop delivery ends—namely, upon the buyer's physical possession. . . . While actual possession by an agent on behalf of a buyer constitutes constructive receipt, ***our caselaw is clear that common carriers do not qualify as agents*** . . . . Thus, the common carrier in this case did not act as an agent for World Imports. . . . ***In sum, there is no support for the idea that a buyer constructively receives goods when they are delivered to a common carrier, even if title and risk of loss pass at that time***.

*Id*. at 345-46 (emphasis added). *See e.g.*, *In re Marin Motor Oil, Inc.,* 740 F.2d 220, 225 (3d Cir. 1984)(holding, in the context of the phrase "received such goods by the debtor" in section 546(c) of the Bankruptcy Code, "U.C.C. § 2-705 . . . views goods given by a seller to a common carrier for delivery to a buyer **as being in the possession of the common carrier not the buyer**."). In *In re SRC Liquidation, LLC*, 573 B.R. 537 (D. Del. 2017) ("SRC Liquidation"), the United States District Court for the District of Delaware also concluded that a claim for goods that a vendor drop-shipped to a debtor's customers (and billed to the debtor's UPS account) did not qualify for priority treatment under section 503(b)(9). In doing so, it held:

> [T]he Court finds that [seller] failed to carry its burden to demonstrate its entitlement to an administrative priority for the value of the goods identified in its 503(b)(9) claim. As stipulated by the parties, these goods were delivered by [seller] to a common carrier (UPS) for shipping via the Debtor's account to a third party customer during the relevant twenty day period. The Debtor never physically possessed the goods. Only UPS possessed the goods, and as a carrier UPS does not qualify as an agent. *World Imps.*, 2017 U.S. App. LEXIS 12254, 2017 WL 2925429, at *5. The goods were never received by the Debtor from [seller] within the meaning of section 503(b)(9).

*Id.* at 542.

6. Finally, this Court also previously denied administrative status to a vendor's 503(b)(9) claim in response to the Plan Administrator's argument that the goods had been shipped directly to the customer through a common carrier, and therefore, the Debtors never "received" the goods. *See Order Allowing the General Unsecured Claim of Levtex, LLC and Denying Request for Allowance of Administrative Expense Priority Under 11 U.S.C. § 503(b)(9)* [Doc. No. 2967].

7. In that case, the claimant argued that once the seller delivered the goods to FedEx for shipment directly to the Debtors' customer (which was billed directly to the Debtors' FedEx account), the goods were in the constructive possession of the Debtors; therefore, the goods had

been "received by the debtor" for the purpose of section 503(b)(9). This Court, following the Third Circuit's ruling in *World Imports*, disagreed, noting:

> And as argued by the plan administrator, this Court is bound by the Third Circuit's holding in *World Imports* 862 F.3d 338. In that case, the Third Circuit very directly and extensively examined the meaning of the word received, in the term received as used in 503(b)(9) and concluded that based on the ordinary meaning of received, in quotes, the legislative context of the Bankruptcy Code and persuasive decisions finding Congress meant to use the UCC definitions for this particular amendment to the Bankruptcy Code that goods are received when the debtor or its agent takes physical possession of them.
>
> And here, the certification of Mr. Ginn, Levtex CFO, says the $73,168 at issue was for goods drop shipped directly from Levtex to -- by FedEx for delivery to the debtors' customers. There is no contention that the debtor at any point in time took physical possession of the goods, rather. Levtex' argument is that once the goods were delivered to FedEx, Levtex relinquished custody control entitled to the debtor and the debtors received the benefit of the goods -- of the sale of the goods to the debtors' customer and the resulting accounts receivable the real benefit of the deal.
>
> As I've said now a couple times, it's tough to argue with that. That's the substance of what happened and if I was writing on a clean slate, I might come out on a different way, but the World Imports decision rejected, specifically, any constructive receipt argument based on the passage of title or risk of loss in favor of a more bright-line test that finds that goods are received for purposes of 503(b)(9), quote, when the debtor or its agent takes physical possession of them. And then it went to great lengths to define a common carrier and distinguish a common carrier from an agent and the -- also the difference between delivery and receipt.
>
> In this case, it is not in dispute nor does it appear that anyone could dispute that FedEx was acting as a common carrier when it took the delivery of the goods from the debtor -- from when it took delivery of the goods from Levtex and then provided them to its customers that in acting as a common carrier, that that is an important distinction because the World Imports case had held specifically, again, that common carriers are not agents, that's a quote at 334.

Transcript of *Notice of Motion for Entry of An Order Allowing General Unsecured Claim of LevTex LLC* (April 9, 2024) at 13-14.[5] Accordingly, the Court denied priority status to the drop-shipper's claim.

8.  It is undisputed that the Debtors never had physical possession of the goods that Ozeri drop-shipped to the Debtors' customers. Ozeri does not contend that the shipper that it used was not a common carrier. (It does not mention or provide any evidence as to the shipper at all.). As Ozeri has failed to establish that the Debtors or an agent of the Debtors physically possessed the subject goods, 503(b)(9) status must be denied and the entirety of Claim 10322 should be reclassified as a Class 6 General Unsecured Claim.

WHEREFORE, the Plan Administrator asks that the Court deny the relief requested by Ozeri and enter the Proposed Order as requested.

| | |
|---|---|
| Dated: August 8, 2025 | */s/ Edward A. Corma* |
| | Robert J. Feinstein, Esq. (admitted *pro hac vice*) |
| | Bradford J. Sandler, Esq. |
| | Erin Gray, Esq. |
| | Edward A. Corma, Esq. |
| | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | 1700 Broadway, 36th Floor |
| | New York, NY 10019 |
| | Telephone: (212) 561-7700 |
| | Facsimile: (212) 561-7777 |
| | Email: rfeinstein@pszjlaw.com |
| | bsandler@pszjlaw.com |
| | egray@pszjlaw.com |
| | ecorma@pszjlaw.com |
| | |
| | *Counsel to the Plan Administrator* |

---

[5] A copy of the Transcript is attached as **Exhibit C**.