# **EXHIBIT C**

```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW JERSEY

IN RE:                        .    Case No. 23-13359-VFP
                              .    Ch. 11
                              .
BED BATH & BEYOND, INC.,      .    M.L.K. Federal Building
et al.,                       .    50 Walnut Street, 3rd Floor
                              .    Newark, NJ 07102
              Debtors.        .
                              .    April 9, 2024
 . . . . . . . . . . . . . .  .    10:33 a.m.


          TRANSCRIPT OF NOTICE OF MOTION FOR ENTRY OF AN
     ORDER ALLOWING THE GENERAL UNSECURED CLAIM OF LEVTEX LLC

                 BEFORE HONORABLE VINCENT F. PAPALIA
                 UNITED STATES BANKRUPTCY COURT JUDGE



APPEARANCES:

For the Official           Pachulski, Stang, Ziehl & Jones LLP
Committee of               By:  BRADFORD J. SANDLER, ESQ.
Unsecured Creditors:       919 N. Market Street, 17th Floor
                           Wilmington, DE 19801

For Levtex LLC:            Wilentz, Goldman & Spitzer, P.A.
                           90 Woodbridge Center Drive
                           Woodbridge, NJ 07095




Audio Operator:            Mariela Primo



 Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.
```

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

1  THE COURT: We're on to Bed, Bath and Beyond, 23-
2  13359. It's the motion by Levtex or -- let me just make sure I
3  pronounce that right -- Levtex LLC to allow its unsecured claim
4  partly as a general unsecured claim and partly as a 503(b)(9)
5  claim.

6  My understanding is that the larger portion of the
7  claim, the unsecured claim asserted by the debtor has been
8  resolved and that this issue really -- that all that is left
9  for me to decide is the seventy-three or so thousand that was
10 asserted as a 503(b)(9) claim. Is that correct?

11 MR. SANDLER: That's correct, Your Honor.

12 THE COURT: All right. So, let me just start out --
13 Mr. Sandler, I know you're ready, but I always like to -- I
14 like to start out myself because I have a couple things I want
15 to understand or confirm. And in one of the things you start
16 out saying is that there are a couple of things that are
17 undisputed as to the motion. That the goods subject to the
18 503(b)(9) claim were dropped directly from Levtex to the
19 debtors' customers and that the debtor never had physical
20 possession of the goods.

21 MR. SANDLER: That's correct, Your Honor.

22 MR. STEIN: Well, that is not entirely correct.
23 There was the debtors' intermediary which was FedEx. That was
24 their agent -- that was the account that Levtex used. So, when
25 Levtex drop shipped the goods, it went through FedEx which was

1  booked by the debtor.
2      THE COURT: Well, I'm not sure what the dispute is on
3  that. I'm not sure, Mr. Stein, exactly what you're disputing
4  there because my next question was going to be I thought it was
5  also undisputed that FedEx is a common carrier.
6      MR. SANDLER: Correct, Your Honor. So, here's what I
7  think is undisputed. Let me kind of step back. I think what's
8  undisputed is what you said, that the goods were drop shipped.
9  They were shipped from -- a customer from Bed, Bath and Beyond
10 ordered the goods and Levtex then shipped the goods through
11 FedEx.
12     FedEx -- they were using our -- Bed, Bey and Beyond's
13 account number to pay FedEx and then FedEx delivered the goods
14 to the customer. You are correct. Your question was, as I
15 heard it, is that there was never physical possession by Bed,
16 Bath and Beyond of the goods. That is correct. I don't
17 believe there is any dispute that there was never physical
18 possession by Bed, Bath and beyond. The --
19     THE COURT: I think, Mr. Stein, if I may, perhaps,
20 add or supplement what you said, I think what he's saying is
21 that the debtor had constructive possession when the goods were
22 placed with FedEx. That's what I think he's saying.
23     MR. STEIN: That's correct, Judge.
24     MR. SANDLER: And the is really the issue, is whether
25 by using FedEx as a common carrier, is that constructive

1  possession or was FedEx an agent of Bed, Bath and Beyond. And
2  that's really the question today.
3         THE COURT: I'm not sure if that clarifies things.
4         MR. STEIN: No, it clarifies. I was jumping ahead to
5  the next issue.
6         THE COURT: Yes. I was getting there in steps. I'm
7  a little slower.
8         MR. STEIN: No, no, that's fine.
9         THE COURT: But then, you know, I actually -- I want
10 to understand your argument. I completely understand your
11 argument. But I'm a bankruptcy judge sitting in Newark --
12        MR. STEIN: I understand.
13        THE COURT: -- and the Third Circuit is the Third
14 Circuit and I'm supposed to follow them. And that World
15 Imports case, although it came out the other way --
16        MR. STEIN: Right.
17        THE COURT: -- ultimately, really, it came out, you
18 know, that there was a valid 503(b)(9) claim. I mean, doesn't
19 that case address this and am I allowed not to follow --
20        MR. STEIN: Well, I mean, the language in the case is
21 constructive possession, and we would certainly argue that once
22 the goods hit FedEx on the debtors' own account, we lost
23 control in terms of the ability to effect the stoppage in
24 transit or redirect the goods to some other place. It was
25 under the debtors' control. It was the debtors' account. The

1  debtor paid for the shipping.
2          We relinquished control of those goods.  The debtor
3  got the benefit of the account in the receivable and there was
4  nothing left for us other than to wait for the debtor to pay
5  us.  So, as far as I'm concerned, possession, delivery --
6  everything was effected when we tendered the goods to FedEx.
7          THE COURT:  But, number one, didn't the Third Circuit
8  go to great pains to distinguish between delivery and receipt?
9          MR. STEIN:  Yes.
10         THE COURT:  I mean -- and I'm a common sense person
11 and I understand completely what you're saying -- what's the
12 difference?  I get it.  I understand it.  But they dealt with
13 the issue and they said -- they said in that instance, I guess
14 it was a shipping thing, a boat or a whatever that was
15 transporting the goods and the -- as I understood the facts of
16 World Imports, the debtor, you know, paid for the delivery.
17 The debtor paid for the shipment and lost control.  And the
18 seller had no longer any ability to direct the delivery or stop
19 the delivery after it left.
20         And, in fact, that was critical to the -- I can't
21 even really say it's dicta because it was critical to the
22 decision because the bankruptcy court and the district court,
23 as I read it, didn't give a 503(b)(9) claim because they found
24 that the constructive possession or delivery occurred at the
25 time it was shipped -- it was placed with the shipper which was

1  more than 20 days before the filing.  And then they reversed
2  the district court and the bankruptcy court because they said,
3  no, you can't do that, you have to go by when they actually
4  physically came in possession of it.
5          MR. STEIN:  Well, I mean, the only thing I could add,
6  Your Honor, is that the debtor controlled -- if the goods were
7  returned, they went back to the debtor.  They didn't come back
8  to my client.  And that's the only other way I can distinguish
9  it, so --
10         THE COURT:  I have to say, Mr. Sandler, his argument
11 is really a common sense one, right?  It's that the distinction
12 that is being made here in these circumstances is without a
13 substantive difference, right?  Because what is the difference
14 if for one second it stopped in the debtors' warehouse in Union
15 and then went to the customer.  Or FedEx bypassed the warehouse
16 in Union and went right to the -- what's the difference?
17         MR. SANDLER:  So, the difference comes down to
18 possession and --
19         THE COURT:  What's the substantive difference?
20         MR. SANDLER:  Well, the substantive difference is the
21 Third Circuit and Congress.
22         THE COURT:  Okay.
23         MR. SANDLER:  That's the difference.  This statute
24 has to be strictly construed and the Third Circuit has already
25 ruled on this statute.  They have already ruled on this issue

Exhibit C    Page 8 of 18

7

1  and the <u>SRC Liquidation</u> case in Delaware which came after this
2  applied <u>World Imports</u> appropriately.  By the way, same example.
3  It was goods that were shipped using, in that case UPS, another
4  common carrier, using, in that case, the debtor's account with
5  UPS to ship the goods.
6           THE COURT:  Who's the same?
7           MR. SANDLER:  Same fact pattern.
8           THE COURT:  I know.  But --
9           MR. SANDLER:  So --
10          THE COURT:  -- I'm not really bound by them, I'm
11 bound by them, I'm bound by the Third Circuit --
12          MR. SANDLER:  That's correct.
13          THE COURT:  Yes.
14          MR. SANDLER:  That's correct, but the Third Circuit
15 has ruled on it.  And to the extent that there's an issue with
16 the statute -- and dropshipping has become very popular over
17 the last several years -- no question about it.  I mean,
18 obviously, it's been done for many, many years, even pre-Covid,
19 but it's become even more popular.
20          And to the extent there was an issue, just like
21 Congress has amended the Bankruptcy Code in the past, Congress
22 has the power to change it.  But until they do so, right, we
23 are bound, in this Circuit, we are bound by the Third Circuit
24 and that's who we follow and, certainly, that's who the plan
25 administrator intends to follow.

1        And, you know, from a practical perspective, as we
2   talk about it, I understand the issue, you know, from Levtex's
3   perspective, I certainly do, and I've been in Mr. Stein's shoes
4   previously.  From the plan administrator's perspective and
5   where the estate is right now, we have a -- roughly, about 7.
6   -- say 7.2, 7.5 million dollars in the estate to pay, right,
7   pursuant to the combined reserve that you may recall was
8   established under the plan, to pay $64 million of asserted
9   administrative claims.
10           THE COURT:  Really?
11           MR. SANDLER:  We --
12           THE COURT:  I didn't know those numbers exactly.
13           MR. SANDLER:  Yeah.  We are looking to -- and just to
14  put it in perspective, Your Honor, there are over thirteen
15  hundred admin claims that have been asserted.  We only want
16  those parties who truly have admin expenses pursuant to the law
17  to get rightfully paid.  Pursuant to the law as been
18  interpreted by the Third Circuit, Levtex is not entitled to
19  payment under 503(b)(9).
20           THE COURT:  Mr. Stein, I mean, you know, I think you
21  make a good argument.  I understand it.  I like it.  I think
22  there is no substantive difference between a drop shipment and
23  a shipment that is whatever -- is shipped by the debtor
24  directly with its own service contracted or owned or otherwise.
25  There's no substantive difference to me.  But that's not what

1  the Third Circuit held, and I don't know what I can do about
2  that.
3      MR. STEIN:  Well, I mean, the only thing that I could
4  add is the risk of loss was totally on the debtor.  They
5  contracted.  It was their carrier and --
6      THE COURT:  But there's always going to be somebody's
7  carrier --
8      MR. STEIN:  I understand that but usually when
9  there's a common carrier there's documents that flow with that
10 and they don't get accepted until the goods are signed off on.
11 So, this was a bit of a unusual situation with FedEx and
12 shipping it on the debtor's account.  That's the only other
13 distinction I can make.
14     THE COURT:  I think that's common.  I think, like,
15 there's probably millions of times that that happens.  And
16 FedEx has a receipt.  You know, right?  They have the piece of
17 paper --
18     MR. STEIN:  Yes.
19     THE COURT:  -- that people sign for and all that.
20     So, all right.  And I looked up common carrier.  I
21 always thought of common carriers in my head as trains and
22 boats and ships but the definition is not that limited at all.
23 It's really people who hold themselves out to the general
24 public as delivering things for hire.  And that's FedEx,
25 they've done pretty well doing that.

1              So, this matter is before the Court on the motion of
2  Levtex LLC to allow its general unsecured claims which
3  consisted, according to its proof of claim, of a general
4  unsecured claim of $322,315.92 and a 503(b)(9) claim of
5  $73,168.77 or a total claim of $395,484.69.  And I guess I
6  should pause there for a second.  There's no -- I didn't see
7  any dispute as to the numbers, that those are the numbers.
8              Okay.  So, the plan administrator in Levtex entered
9  into a settlement agreement that resolved all issues on this
10 motion other than whether the $73,168.77 portion of the
11 503(b)(9) portion of the claim was entitled to priority under
12 that section.  I'll call that the 5039(b)(9) claim.
13             More specifically, as I read the papers and I hear
14 the argument, the dispute is limited to one particular aspect
15 of 503(b)(9) -- whether the goods that are the subject of
16 Levtex's 503(b)(9) claim were received by the debtor.  All of
17 the other relevant facts are either agreed to or undisputed or
18 -- and, really, this is a legal matter.
19             The plan administrator disputes Levtex's position and
20 asserts that there is no dispute.  That the goods that are the
21 subject of the 503(b)(9) claim which dropship directly from
22 Levtex to the debtors' customers who ordered them from the
23 debtors' website and that the debtor never had physical
24 possession of the goods which is not disputed.
25             What the argument here is, is that the debtors had

1  physical possession of the goods -- had constructive possession
2  of the goods because they were placed with the debtors' chosen
3  shipper or common carrier, FedEx, and then the debtor retained
4  control over the disposition and delivery of the goods and that
5  Levtex lost control at that time.  But also undisputed or not
6  addressed by Levtex is that FedEx is a common carrier.
7         And as I said, I kind of looked at this myself
8  because it was a point that I wanted to understand and one of
9  the things -- I just did a search in the internet and one of
10 the things I asked is the definition of a common carrier.  And
11 in the Britannica website it said, under marketing and
12 transportation firms, a common carrier provides services to any
13 and all companies between predetermined points on a scheduled
14 basis.
15        The U.S. Postal Service is a common carrier as are
16 FedEx and the Amtrack Railway System.  And then I found others
17 that said -- it was, they said, well, you know, examples are
18 FedEx and UPS or examples are this -- and it just kept coming
19 up and over and over again.  And then there was a distinction
20 between a common carrier and contract carrier and the
21 difference there is that a common carrier holds himself out as
22 to being ready to carry goods for the public at large for hire
23 or reward.  And a contract carrier says I'm only going to do it
24 for a certain limited number of people, like, for example, you
25 know, shipping firms that just do appliances or whatever.

1        So, beyond it not being disputed, I think it's common
2   knowledge and common usage that FedEx is a common carrier.  The
3   plan administrator cites several cases including what, you
4   know, seems to me to be directly on point, binding authority
5   from the Third Circuit that holds that possession of goods by a
6   common carrier or non-debtor third-party customers, does not
7   qualify as having been received by the debtor under 503(b)(9).
8   And that's the <u>World Imports</u> case 862 F.3d 338.

9        In response, Levtex cites a case that is really
10  distinguishable on several grounds.  It's a bailment case,
11  number one, and it's applying the laws of the United Kingdom.
12  And then it's also, you know, from another district, another
13  bankruptcy court that's not binding here.  But even if it were
14  binding, I'm finding that it's -- and even if it was more
15  persuasive, that it's a District of Connecticut case in the
16  sense that they're in the Second Circuit, it's not binding on
17  me and I have the Third Circuit and the Third Circuit is
18  binding.

19       And then so Levtex essentially argues that it had --
20  the debtor had constructive possession which is enough.  And as
21  I said during the argument, I understand that argument.  I
22  think it makes a lot of sense but it's not what the Third
23  Circuit held.  So, 503(b)(9) provides that after notice and
24  hearing, there shall be allowed administrative expenses other
25  than claims allowed under 502(f) of this title, including the

1  value of any goods received by the debtor within 20 days before
2  commencement of the case under this title in which the goods
3  have been sold to the debtor in ordinary course of such
4  debtor's business.
5       And as argued by the plan administrator, this Court
6  is bound by the Third Circuit's holding in World Imports 862
7  F.3d 338. In that case, the Third Circuit very directly and
8  extensively examined the meaning of the word received, in the
9  term received as used in 503(b)(9) and concluded that based on
10 the ordinary meaning of received, in quotes, the legislative
11 context of the Bankruptcy Code and persuasive decisions finding
12 Congress meant to use the UCC definitions for this particular
13 amendment to the Bankruptcy Code that goods are received when
14 the debtor or its agent takes physical possession of them.
15      And here, the certification of Mr. Ginn, Levtex CFO,
16 says the $73,168 at issue was for goods drop shipped directly
17 from Levtex to -- by FedEx for delivery to the debtors'
18 customers. There is no contention that the debtor at any point
19 in time took physical possession of the goods, rather. Levtex
20 argument is that once the goods were delivered to FedEx, Levtex
21 relinquished custody control entitled to the debtor and the
22 debtors received the benefit of the goods -- of the sale of the
23 goods to the debtors' customer and the resulting accounts
24 receivable the real benefit of the deal.
25      As I've said now a couple times, it's tough to argue

1 with that. That's the substance of what happened and if I was
2 writing on a clean slate, I might come out on a different way,
3 but the World Imports decision rejected, specifically, any
4 constructive receipt argument based on the passage of title or
5 risk of loss in favor of a more bright-line test that finds
6 that goods are received for purposes of 503(b)(9), quote, when
7 the debtor or its agent takes physical possession of them. And
8 then it went to great lengths to define a common carrier and
9 distinguish a common carrier from an agent and the -- also the
10 difference between delivery and receipt.

11 In this case, it is not in dispute nor does it appear
12 that anyone could dispute that FedEx was acting as a common
13 carrier when it took the delivery of the goods from the debtor
14 -- from when it took delivery of the goods from Levtex and then
15 provided them to its customers that in acting as a common
16 carrier, that that is an important distinction because the
17 World Imports case had held specifically, again, that common
18 carriers are not agents, that's a quote at 334.

19 Thus, the World Imports case rejected the argument
20 that constructive receipt includes delivery to a common
21 carrier, that's id and the Levtex says, well, those cases don't
22 address why a retailer can't choose FedEx or UPs as their
23 agents, deliver the goods to them and then lose control and
24 then that equals constructive delivery. It could, but they
25 didn't designate him as an agent and the Third Circuit said

1  FedEx is not an agent but a common carrier.

2              So, then I also rely on the D.C. Circuit Court that
3  held that a common carrier refers to a common commercial
4  enterprise that holds itself out to the public and take all who
5  are willing to pay the fare; CSI Aviation Services v. The U.S.
6  Department of Transportation 637 F.3d 408 and 415, citing
7  Black's Law Dictionary.

8              Accordingly, you know, this Court, even though it may
9  acknowledge the appeal of Levtex's argument, is compelled to
10 follow the Third Circuit and World Imports and find that the
11 subject goods were not received by the debtor within 20 days of
12 its bankruptcy filing because they were never received by the
13 debtor under the Third Circuit's test and distinction between
14 delivery and receipt.

15             And it went to great lengths to make that decision
16 and, as I noted previously, in that case the distinction was
17 crucial because it changed the delivery date -- or the receipt
18 date, from the date of delivery, which was outside the 20 days,
19 to the date of receipt which was within the 20 days.  So, the
20 claimant there got the benefit of 503(b)(9).

21             I can't, the Third Circuit can, but I can't say that
22 in the same circumstance except that now it went with FedEx
23 that because it's going to result in the 503(b)(9) claimant
24 getting a better result is I should not follow World Imports.
25 I've got to follow it.  So, that's my ruling, and the motion

16

1  will be denied. And, you know, if Levtex is not happy with
2  that and they want to try to make some law, that's up to them
3  but I can't do it.
4           MR. STEIN: I appreciate Your Honor putting the time
5  into it. Consistent with our settlement reached with the ASK
6  which is the liquidating trustee's agent, we'll submit a form
7  of order which will acknowledge the general unsecured claim at
8  $395,044.69 and for that portion of the administrative
9  priority, it will be denied, and I'll put that in an order if
10 that's --
11          THE COURT: And you'll run that by Mr. Sandler before
12 you send it to me and --
13          MR. STEIN: Of course. Of course. I just want it
14 clear for the record. That's all.
15          THE COURT: It's no problem.
16          MR. STEIN: Thank you, Your Honor.
17          THE COURT: Like I say, I understand the tough
18 position Levtex is in on that but --
19          MR. STEIN: We might as well try.
20          THE COURT: -- I'm only a bankruptcy court in Newark.
21 I can't change what the Third Circuit does.
22          MR. STEIN: We appreciate it. Thank you, Your Honor.
23          MR. SANDLER: Thank you, Your Honor.
24          THE COURT: Thank you.
25          MR. SANDLER: I appreciate it.

1    MR. STEIN:  Have a good day.
2
3                              * * * * *
4                         **C E R T I F I C A T I O N**
5        I, ALYCE H. STINE, court approved transcriber,
6 certify that the foregoing is a correct transcript from the
7 official electronic sound recording of the proceedings in the
8 above-entitled matter, and to the best of my ability.
9
10 /s/ Alyce H. Stine
11 ALYCE H. STINE
12 J&J COURT TRANSCRIBERS, INC.          DATE:  April 15, 2024
13
14
15
16
17
18
19
20
21
22
23
24