> **THIS OMNIBUS OBJECTION SEEKS TO DISALLOW OR PARTIALLY DISALLOW CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT 1</u> ATTACHED TO THE PROPOSED ORDER.**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> Robert J. Feinstein, Esq. (admitted *pro hac vice*) <br> Bradford J. Sandler, Esq. <br> Erin Gray, Esq. (admitted *pro hac vice*) <br> Edward A. Corma, Esq. <br> PACHULSKI STANG ZIEHL & JONES LLP <br> 1700 Broadway, 36th Floor <br> New York, NY 10019 <br> Telephone: (212) 561-7700 <br> Facsimile: (212) 561-7777 <br> Email: rfeinstein@pszjlaw.com <br>          bsandler@pszjlaw.com <br>          egray@pszjlaw.com <br>          ecorma@pszjlaw.com <br><br> *Counsel to the Plan Administrator* | |
| In re: <br><br> BED BATH & BEYOND INC., *et al.*,[1] <br><br>                 Debtors. | Chapter 11 <br><br> Case No. 23-13359 (VFP) <br><br> (Jointly Administered) <br><br> **Hearing Date:**     **December 23, 2025** <br> **Hearing Time:**     **10:00 a.m. (ET)** <br> **Response Deadline:**     **December 16, 2025** <br><br> **ORAL ARGUMENT WAIVED UNLESS RESPONSES ARE TIMELY FILED** |

**PLAN ADMINISTRATOR'S
TWENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS
(<u>Partially Satisfied Texas Tax Claims</u>)**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors" or the "Wind-Down Debtors"), files his *Twenty-Sixth Omnibus Objection to Certain Claims (Partially Satisfied Texas Tax Claims)* (the "Objection").[3] The purpose of this Objection is to reconcile the proofs of claim (the "Texas Tax Claims") listed on **Exhibit 1** of the proposed order granting this Objection (the "Proposed Order") to: (a) the agreed allowed amounts of the Texas Tax Claims pursuant to numerous agreements reached between the Plan Administrator and the applicable Texas appraisal district (the "Appraisal Districts") and/or the Texas Taxing Authorities[4] (the "Claimants") with respect to ad valorem taxes owing for 2022 and 2023 (the "Texas Tax Agreements"); (b) payments made by the Debtors and the Plan Administrator pursuant to the Texas Tax Agreements, and (c) the remaining balances which are Allowed Priority Tax Claims.[5] The Plan Administrator files this objection purely for the

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

[4] The term "Texas Taxing Authorities" means Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, City of El Paso, Fort Bend County WCID #02, Fort Bend County, City of Frisco, Grayson County, Gregg County, Harris County, Hidalgo County, Jefferson County, Lewisville Independent School District, City of McAllen, McLennan County, City of Mesquite, Montgomery County, Nueces County, Parker CAD, Rockwall CAD, San Marcos CISD, Smith County, Tarrant County, Tom Green CAD, Victoria County, Wichita County Tax Office, Randall County Tax Office, Brazoria County, Brazoria County Special Road & Bridge, Alvin Independent School District, Alvin Community College, Brazoria County Drainage District #4, Pearland Municipal Management, Brazoria Municipal Utility District #06, Woodlands Metro Municipal Utility District, Woodlands Road Utility District, Clear Creek Independent School District, Humble Independent School District, Pasadena Independent School District, Spring Branch Independent School District, City of Houston, Lubbock Central Appraisal District, Maricopa County (AZ), Midland County, City of Lake Worth, Crowley Independent School District, Grapevine-Colleyville Independent School District, Frisco Independent School District, Plano Independent School District, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Denton County, Guadalupe County, Hays County, Midland Central Appraisal District, Taylor County Central Appraisal District, City of Waco, Waco Independent School District, Williamson County, Collin County, Collin College, City of Plano, McKinney ISD, City of McKinney, and City of Sherman.

[5] The Proposed Order is attached to the Objection as **Exhibit A**.

purpose of giving direction to the Claims Agent so that it can update the Official Claims Register to reflect the reduction, allowance and partial satisfaction of the Texas Tax Claims pursuant to the Texas Tax Agreements. Accordingly, the Plan Administrator asks that the Court enter the Proposed Order which finds, *inter alia*, that (a) each of the Texas Tax Claims listed on Exhibit 1 thereto has been reduced and Allowed at the amount set forth on the applicable shaded row under Column G ("Total Allowed Tax Claim") and that each Allowed Texas Tax Claim has been satisfied such that the amount outstanding on the Allowed Texas Tax Claim, if any, is the amount set forth on the applicable shaded row under Column J ("Total Outstanding Allowed Tax Claim").[6]

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Plan Administrator confirms consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Objection are sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2, and 9013-1

---

[6] The Objection is supported by the Declaration of Michael Goldberg attached as **Exhibit B** (the "Goldberg Dec.").

of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").[7]

## BACKGROUND

A. **General Background**

4. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

5. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").

6. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). [Doc. No. 2311] On the Effective Date, the Plan Administrator became the sole

---

[7] Bankruptcy Rule 3007(e) authorizes the Plan Administrator to join up to 100 claims in an omnibus objection where the objection is based on the grounds that the claims: (1) duplicate other claims; (2) have been filed in the wrong case; (3) have been amended by subsequently filed proofs of claim; (4) were not timely filed; (5) have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (7) are interests, rather than claims; or (8) assert priority in an amount that exceeds the maximum amount under §507 of the Code. Fed. R. Bankr. P. 3007(d)-(e). District of New Jersey Local Bankruptcy Rule 3007-1 expands the permissible categories for omnibus objections. It provides, "An omnibus objection to claims may be filed to reduce the amount of a claim or to modify a claim's priority status." D.N.J. LBR 3007-2. *See* 2017 Comment to D.N.J. LBR 3007-2 ("This Rule is new. Promulgated under Bankruptcy Rule 3007(c), the rule expands the grounds upon which an omnibus objection may be based beyond those set forth under Bankruptcy Rule 3007(d).")

4924-5770-8391.3 08728.003                      4

representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. (Plan, Article IV, at § B)

7.  During the chapter 11 cases and pursuant to the Plan, all of the Wind-Down Debtors' Assets have been (or are being) liquidated. Before the Effective Date, the Debtors sold the Bed Bath & Beyond, buybuy Baby, and Harmon brands and related intellectual property (including the right to use those names in connection with the buyers' businesses). Any post-confirmation operations associated with the above names are unrelated to the Wind-Down Debtors and will not affect recoveries to creditors under the Plan.

**B.    Claim Objection Bar Date**

8.  The Plan Administrator currently has until March 30, 2026 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[8] Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. (Plan, Article I.A, at § 14).

**C.    Schedules and Claims Process**

9.  On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. No. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

10. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II)*

---

[8] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28. The original Claims Objection Bar Date was March 27, 2024. Pursuant to subsequent orders, the Court extended the deadline to September 30, 2024 [Doc. No. 2933], March 31, 2025 [Doc. No. 3541], September 29, 2025 [Doc. No. 3963] and March 30, 2026 [Doc. No. 4337].

*Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

11. The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules, as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim (the "Rejection Damages Bar Date").

12. With respect to other Administrative Claims other than claims arising pursuant to section 503(b)(9), the Bar Date Order provides:

> Except as otherwise provided herein, all persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert an Administrative Expense Claim pursuant to 503(b), other than claims arising pursuant to section 503(b)(9), or 507(a)(2), shall submit a written proof of such Claim so that it is actually received

> by the Notice and Claims Agent before (a) on July 7, 2023 for claims incurred through June 27, 2023, (b) for all claims arising after June 27, 2023, on the 15th day of the month following the month in which the claim arose, and (c) fourteen days following the effective date of any confirmed plan (the "Administrative Claims Bar Date"), in accordance with this Bar Date Order; provided, however, that notwithstanding anything to the contrary herein, counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected— shall be required to file Administrative Claims no later than July 21, 2023.

Bar Date Order, ¶ 6.[9] The Effective Date of the Plan was September 29, 2023, so the last Administrative Claims Bar Date for claims incurred after July 7, 2023 was October 13, 2023.

13. On June 5, 2023, the Debtors caused a bar date notice to be published in The New York Times. [Doc. No. 638.] With the assistance of Kroll Restructuring Administration LLC (the "Claims Agent"), on May 31, 2023, the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the Case Management Order. [Doc. No. 893]. The Bar Date Order and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims Agent at https://restructuring.ra.kroll.com/bbby.

### D.   Claims Asserted Against the Estates

14. As of August 22, 2025, creditors have filed 20,848 proofs of claim against the Debtors ("Total Claims"). To date, the Plan Administrator has filed 25 rounds of omnibus objections to Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative

---

[9] The Confirmation Order provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

and Priority Class Claims"). Through his efforts (including negotiated resolutions), approximately 1,700 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims. At this time, there are approximately 1,400 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

15. While the Plan Administrator and his Professionals have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of August 22, 2025 (excluding the Allowed Claims of the Debtors' pre-petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[10]

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 08/22/2025[11] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $39.9 million |
| Priority Claims (11 U.S.C. § 507) (Including Priority Tax Claims and Other Priority Claims) | $348.5 million | $195.7 million |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $57.2 million |
| General Unsecured Claims | $4.2 billion | $2.8 billion |

E. **Source of Funding for Allowed Administrative and Priority Class Claims**

16. The Plan provides for a Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims

---

[10] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

[11] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00.

(Class 2). The Combined Reserve totaled $10 million when it was turned over to the Plan Administrator on the Effective Date. Pursuant to the Confirmation Order, $2.8 million of the Combined Reserve was subject to a set aside for the Texas Taxing Authorities. As of June 30, 2025, the Plan Administrator had paid $1.8 million to the Texas Taxing Authorities (and professionals responsible for negotiating the Texas Tax Claims) from the Combined Reserve on account of their Allowed Class 2 Claims. Currently, there is $8.5 million in the Combined Reserve.[12]

17. As set forth above, the amount of alleged Administrative and Priority Class Claims greatly exceeds the amount of the Combined Reserve. Accordingly, in the Plan Administrator's business judgment, until he knows the universe of Allowed Administrative and Priority Class Claims, he is not paying any of them to ensure that each Holder of an Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Other Secured Claim and Allowed Other Priority Claim eventually receives its appropriate *pro rata* share of the Combined Reserve.

F.     **Background with Respect to the Texas Tax Claims.**

18. As is set forth on Exhibit 1 to the Proposed Order, the Texas Taxing Authorities filed the Texas Tax Claims in the amounts listed in Column E, which sought payment of ad valorem taxes for 2022 and/or 2023, generally on the same proof of claim form.

19. On September 1, 2023, the Texas Taxing Authorities filed their *Joint Limited Objection of the Texas Taxing Authorities to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond, Inc. and its Debtor Affiliates* [Doc. No. 2112] (the "Texas Taxing Authority

---

[12] There is a waterfall mechanism in the Plan that provides for a sharing of certain proceeds of the Debtors' Assets after creditors holding Allowed Class 3 Claims and Allowed Class 4 Claims receive payments equal to the "Initial Sharing Threshold," which threshold has not yet been met.

Confirmation Objection"), raising various objections to the treatment of the Texas Tax Claims under the Plan.

20. On September 11, 2023, the Debtors filed their *Debtors' (I) Omnibus Objection to Certain Tax Claims and (II) Motion to Determine Tax Liability and Stay Proceedings* [Docket No. 2156] (the "Texas Tax Objection I"). The Texas Tax Objection I sought entry of an order (i) establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in certain Texas counties set forth therein and to stay state proceedings and (ii) modifying or reducing applicable Texas Taxing Authority Claims, correspondingly.

21. On that same date, the Debtors filed their *Debtors Motion to Determine Tax Liability and Stay Proceedings* [Docket No. 2157] (the "Texas Tax Objection II," and together with the Texas Tax Objection I, the "Texas Tax Objections"). Texas Tax Objection II sought entry of an order establishing the property market value bases upon which to compute taxes for tax year 2023 for the Debtors' property in Bell and Potter-Randal counties, Texas and to stay related state proceedings.

22. The Texas Taxing Authorities' Confirmation Objection was resolved through certain agreed amendments to the Confirmation Order.[13] Paragraph 141 of the Confirmation Order provides that, *inter alia*, unless subsequently disallowed, (i) the Texas Tax Claims shall constitute Class 2 Other Secured Claims under the Plan,[14] (ii) nothing in the Confirmation Order

---

[13] *See* Transcript of Hrg. Sept. 12, 2023, at 69:5-10 (Debtors' counsel: "We have agreed in resolution of [the Texas Taxing Authority Confirmation Objection] and I just wanted to note for the record that the debtors are going to make payment of the 2022 tax claims referenced in their objection within 24 hours of entry of the order. So, I just wanted to put that on record and give counsel to the Texas taxing authorities that comfort.").

[14] Article III.B.2.b of the Plan provides that the treatment of Other Secured Claims is "In full and final satisfaction of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder thereof will receive, with the consent of the DIP Agent: (a) payment in

or Plan impaired or altered the Texas Taxing Authorities rights under paragraphs 61-62 of the Final DIP Order, and (iii) the Debtors and the Texas Taxing Authorities would mutually agree to a reserve amount of between $500,000 – $2.8 million from the Combined Reserve[15] for the payment of the Texas Tax Claims.[16] The Plan Administrator ultimately set aside an amount up to $2.8 million, as was agreed to shortly after the Confirmation Hearing by and between the Debtors and the Texas Taxing Authorities (the "Texas Reserve").

23. Shortly after the Confirmation Date, the Debtors paid approximately $2 million of the Texas Tax Claims related to taxable year 2022, leaving approximately $800,000 in asserted amounts from tax year 2022 unpaid on account of the Texas Tax Claims.

24. Post-confirmation, the Plan Administrator and his advisors began negotiating with the Appraisal Districts and the Texas Tax Authorities to resolve the Texas Tax Claims.

---

full in Cash from the Combined Reserve or as otherwise provided for in the DIP Budget; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired."

[15] Article I.A.31 of the Plan defines "Combined Reserve" as "the collapsed Priority Claims Reserve and Wind-Down Reserve created pursuant to the terms of the Final DIP Order, in the aggregate amount of $15 million less any amounts paid from the Combined Reserve pursuant to the terms of the Final DIP Order prior to the Effective Date."

[16] The Final DIP Order [Doc. No. 729] approved, inter alia, the DIP Facility (defined therein) and the Debtors' use of Cash Collateral. In addition, it provided, "61. Texas Taxing Authorities. Notwithstanding any provisions of the Motion, the Interim Order, this Final Order, or the other DIP Documents, any valid, binding, perfected, enforceable, and non-avoidable liens currently held by the Texas Taxing Authorities16 on account of allowed secured claims for taxes on any DIP Collateral that under applicable non-bankruptcy law are granted priority over a prior perfected security interest or lien (the "Texas Tax Liens") shall neither be primed by nor subordinated to any DIP Liens or Adequate Protection Liens granted under the Interim Order or this Final Order, and upon the sale of any DIP Collateral subject to the Texas Tax Liens, the Texas Tax Liens shall be paid by the Debtors in accordance with the Approved Budget and shall attach to the Priority Claims Reserve and WARN Reserve to the extent of any shortfall, with the same order of priority which the Texas Tax Liens had on the applicable DIP Collateral. All parties' rights to object to the priority, validity, amount, enforceability and extent of any purported claims and liens asserted by the Texas Taxing Authorities are fully reserved. 62. Notwithstanding any other provisions of this Final Order, the Debtors are authorized, but not directed, to use funds from the Priority Claims Reserve and WARN Reserve to pay valid, undisputed, enforceable, non-avoidable, allowed claims for sales taxes, use taxes, income taxes, and property taxes, as well as other governmental taxes, fees, and assessments in various jurisdictions ("Taxes and Fees") solely to the extent that such Taxes and Fees exceed the amounts set forth in the Approved Budget." Final DIP Order, ¶¶ 61-62 (footnote omitted).

25. On April 9, 2024, the Court entered the *Order (I) Authorizing the Settlement of Ad Valorem Tax Claims of the Texas Taxing Authorities, (II) Authorizing the Use of $2.8 Million Set Aside to Satisfy the Claims for the Texas Taxing Authorities, and (III) Granting Related Relief* [Doc. No. 2954] (the "Settlement Order"), which provides:

> The Plan Administrator is authorized, but not directed, to enter into settlements of the Texas Tax Claims relating to taxable years 2022 and 2023, as he may determine in his sole and independent discretion, without any further order or action of the Court. The Plan Administrator is further authorized to pay any Allowed Texas Tax Claim from the Texas Reserve, without further order or action of the Court.

Settlement Order at ¶ 2.

26. The Plan Administrator then entered into settlements and made payments with respect to the Texas Tax Claims as is set forth below.

### G. 2023 Taxes.

27. With respect to the Texas Tax Claims that represented claims for 2023 ad valorem taxes (the "2023 Taxes"), the Plan Administrator entered into agreements with the certain Appraisal Districts (the "2023 Tax Stipulations") that: (a) adjusted the appraised property values (the "Agreed Adjusted Property Values") for the 2023 Taxes; (b) required that the Appraisal Districts to correct the appraisal rolls to reflect the Agreed Adjusted Property Values; (c) resolved Texas Tax Objection I, and (d) dismissed certain state court litigation. Attached as **Exhibit C** is a list of the 2023 Tax Stipulations. Copies of the 2023 Tax Stipulations are available upon request.

28. The Allowed amount of the 2023 Taxes was then calculated based on the Agreed Adjusted Property Values set forth in the 2023 Tax Stipulations. The Allowed amount of the 2023 Taxes is set forth on Exhibit 1 to the Proposed Order under Column G ("Total Allowed Tax Claim" - row "2023"). The Plan Administrator subsequently paid the Allowed amount of the

2023 Taxes. Payments on the Allowed 2023 Taxes are detailed on Exhibit 1 to the Proposed Order under Column H ("Payments on Allowed Tax Claim" - row 2023) (the "2023 Texas Tax Payments").

29. Accordingly, the Plan Administrator submits that the 2023 Taxes have been paid in full.[17]

### H. 2022 Taxes.

30. As was noted above, shortly after the Confirmation Date, the Debtors paid approximately $2 million of the Texas Tax Claims related to taxable year 2022, leaving approximately $800,000 in asserted amounts from tax year 2022 unpaid on account of the Texas Tax Claims. More specifically, after the confirmation hearing, the Debtors paid the base tax on the 2022 tax amounts, but not the pre-petition interest and penalties or post-petition interest thereon.

31. On November 6, 2023, the Texas Taxing Authorities filed their *Joint Motion to Compel Payment of Remaining Amounts Due on "Year 2022 Ad Valorem Business Personal Property Taxes* (the "Motion to Compel") [Docket No. 2664].

32. On or about September 13, 2024, the Court entered the *Stipulation and Consent Order Resolving Joint Motion of Texas Taxing Authorities to Compel Payment of Remaining Amounts Due on Year 2022 Ad Valorem Business Personal Property Taxes [Docket No. 2664]* (the "2022 Tax Stipulation") [Doc. No 3516]. Pursuant to the 2022 Tax Stipulation, the Plan

---

[17] There is two exceptions. The Plan Administrator is still holding the funds owing on account of the 2023 Taxes on Claim No. 10 of Collin County Tax Assessor/Collector (Collin County, Collin College, City of Plano, City of McKinney, and McKinney Independent School District) and claim No. 26 for the City of Sherman. The Plan Administrator is prepared to tender those funds as soon as the order approving this Motion it entered.

Administrator agreed to pay and did pay certain amounts to the Texas Taxing Authorities and the Parties further agreed as follows:

> WHEREAS, the Plan Administrator and the Texas Taxing Authorities have agreed that the Texas Taxing Authorities shall have Allowed Priority Tax Claims for the unpaid 2022 tax balances following application of the $750,000 in payments from the Plan Administrator, which claims shall be paid in accordance with the Plan. Said amounts are itemized on the attached Exhibits D-F and are automatically allowed as Priority Tax Claims accordingly without need for further amendment of the Texas Taxing Authorities' claims by the Tax Firms. No further amounts, including without limitation, for interest and penalties shall be due and owing. Further, the claims agent shall be authorized to update the claims register accordingly.

A copy of the 2022 Texas Tax Stipulation is attached as Exhibit D.

33. The Plan Administrator subsequently paid the Allowed amount of the 2022 Taxes. Payments on the Allowed 2022 Taxes are detailed on Exhibit 1 to the Proposed Order under Column H ("Payments on Allowed Tax Claim" - row 2022) (the "2022 Texas Tax Payments").

34. Accordingly, the Plan Administrator is informed and believes that all of the Texas Tax Claims have been satisfied except for the amounts listed on Exhibit 1 to the Proposed Order under Column J ("Total Outstanding Allowed Tax Claim"), which the 2022 Tax Stipulation provides are to be automatically Allowed as Priority Tax Claims.

## RELIEF REQUESTED

35. After the 2023 Texas Tax Payments and the 2022 Texas Tax Payments, the Plan Administrator is informed and believes that the Texas Tax Claims have been reduced and satisfied with the exception of the amounts listed under Column J (Total Outstanding Allowed Tax Claim), which shall be treated as Allowed Priority Tax Claims.

36. Because the proofs of claim themselves often include multiple years and multiple accounts, the 2023 Texas Tax Stipulations and the exhibits to the 2022 Texas Tax Stipulation do

not always refer to the applicable proof of claim numbers and the Texas Taxing Authorities did not file amended claims to reflect the reduced values on the 2023 Texas Taxes based on the Plan Administrator's agreements with the Appraisal Districts, the Plan Administrator files this objection purely for the purpose of giving direction to the Claims Agent so that it can update the Official Claims Register to reflect the reduction, allowance and partial satisfaction of the Texas Tax Claims.

37. Accordingly, the Plan Administrator asks that the Court enter the Proposed Order which finds, *inter alia*, that (a) each of the Texas Tax Claims listed on Exhibit 1 thereto has been reduced and Allowed at the amount set forth on the applicable shaded row under Column G ("Total Allowed Tax Claim") and that each Allowed Texas Tax Claim has been satisfied such that the amount outstanding on the Allowed Texas Tax Claim, if any, is the amount set forth on the applicable shaded row under Column J ("Total Outstanding Allowed Tax Claim").

## SEPARATE CONTESTED MATTERS

38. Each claim subject to this Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by this Court will be deemed a separate order with respect to such claim.

## RESERVATION OF RIGHTS

39. Nothing contained in this Objection or any actions taken by the Plan Administrator pursuant to the relief requested herein is intended or should be construed as (a) an admission as to the validity or amount of any claim against the Debtors; (b) a waiver of the Plan Administrator's or any other party in interest's right to dispute any claim or interest; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; (e) an admission as to the

validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

40. The Plan Administrator expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to any other claims (filed or not) or interests that may be asserted. Should one or more of the grounds of objection stated in this Objection be overruled, the Plan Administrator reserves the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits.

## NOTICE

41. Notice of this Objection is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

42. Pursuant to Paragraph 124, notice of the Objection and the hearing thereon was given to (i) the Claimants holding the Texas Tax Claims listed on **Exhibit 1** to the Proposed Order at the addresses set forth for notice on the proofs of claim; (ii) the U.S. Trustee; (iii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iv) all parties who are registered to receive electronic notice in these Chapter 11 Cases; and (v)

4924-5770-8391.3 08728.003                                    16

the applicable Appraisal Districts or, if represented, their counsel. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances

## NO PRIOR REQUEST

43. No prior request for the relief sought in this Objection has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order attached as **Exhibit A** and granting such other and further relief as is just and proper under the circumstances.

Dated:  November 19, 2025

/s/ Edward A. Corma
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
**PACHULSKI STANG ZIEHL & JONES LLP**
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
         bsandler@pszjlaw.com
         egray@pszjlaw.com
         ecorma@pszjlaw.com

*Counsel to the Plan Administrator*