> **THIS OMNIBUS OBJECTION SEEKS TO DISALLOW CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT 1</u> ATTACHED TO THE PROPOSED ORDER.**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> Robert J. Feinstein, Esq. (admitted *pro hac vice*) <br> Bradford J. Sandler, Esq. <br> Erin Gray, Esq. (admitted *pro hac vice*) <br> Edward A. Corma, Esq. <br> PACHULSKI STANG ZIEHL & JONES LLP <br> 1700 Broadway, 36th Floor <br> New York, NY 10019 <br> Telephone: (212) 561-7700 <br> Facsimile: (212) 561-7777 <br> Email:  rfeinstein@pszjlaw.com <br>  bsandler@pszjlaw.com <br>  egray@pszjlaw.com <br>  ecorma@pszjlaw.com <br><br> *Counsel to the Plan Administrator* | |
| In re: <br><br> BED BATH & BEYOND INC., *et al.*,[1] <br><br>       Debtors. | Chapter 11 <br><br> Case No. 23-13359 (VFP) <br><br> (Jointly Administered) <br><br> **Hearing Date:  January 13, 2026** <br> **Hearing Time:  10:00 a.m. (ET)** <br> **Response Deadline: January 6, 2026** <br><br> **ORAL ARGUMENT WAIVED UNLESS RESPONSES ARE TIMELY FILED** |

**PLAN ADMINISTRATOR'S TWENTY-EIGHTH**
**OMNIBUS OBJECTION TO CLAIMS**
<u>**(AMENDED CLAIMS)**</u>

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

4903-9254-1562.1 08728.003

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors" or the "Wind-Down Debtors"), files his *Twenty-Eighth Omnibus Objection to Claims (Amended Claims)* (the "Objection").[3] Each claimant (the ("Claimant") listed on **Exhibit 1** to the proposed order granting this Objection (the "Proposed Order")[4] filed an original proof of claim (a "Disputed Claim") and a second proof of claim (the "Surviving Claim") that the Plan Administrator is informed and believes was intended to amend and supersede the Disputed Claim. Accordingly, the Plan Administrator seeks an order disallowing each Disputed Claim set forth on **Exhibit 1** to the Proposed Order. The Surviving Claims shall remain subject to other and further objection.[5]

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Plan Administrator confirms consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

[4] The Proposed Order is attached to the Objection as **Exhibit A**.

[5] The Objection is supported by the Declaration of Michael Goldberg attached as **Exhibit B** (the "Goldberg Dec.").

3.      The statutory predicates for the relief sought in this Objection are sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").[6]

## BACKGROUND

A.      **General Background**

4.      On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

5.      On the Petition Date, the Debtors filed (i) a motion to approve store closing procedures and liquidation sales (the "Closing Motion")[7] and (ii) a motion to approve bidding procedures for and a sale of, among other things, the Debtors' intellectual property. (the "Sale

---

[6] Bankruptcy Rule 3007(e) authorizes the Plan Administrator to join up to 100 claims in an omnibus objection where the objection is based on the grounds that the claims: (1) duplicate other claims; (2) have been filed in the wrong case; (3) have been amended by subsequently filed proofs of claim; (4) were not timely filed; (5) have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (7) are interests, rather than claims; or (8) assert priority in an amount that exceeds the maximum amount under §507 of the Code. Fed. R. Bankr. P. 3007(d)-(e). District of New Jersey Local Bankruptcy Rule 3007-1 expands the permissible categories for omnibus objections. It provides, "An omnibus objection to claims may be filed to reduce the amount of a claim or to modify a claim's priority status." D.N.J. LBR 3007-2. *See* 2017 Comment to D.N.J. LBR 3007-2 ("This Rule is new. Promulgated under Bankruptcy Rule 3007(c), the rule expands the grounds upon which an omnibus objection may be based beyond those set forth under Bankruptcy Rule 3007(d).")

[7] *See* Debtors' Motion for Entry of an Order (I)(A) Approving the Auction and Bidding Procedures; (B) Approving Stalking Horse Bid Protections; (C) Scheduling Bid Deadlines and an Auction; (D) Approving the Form and Manner of Notice Thereof; (E) Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets, and (D) Granting Related Relief [Doc. No. 29].

Motion").[8] The Closing Motion was approved by the Court on an interim basis on April 25, 2023 [Doc. No. 102] and on a final basis on June 7, 2023 [Doc. No. 641] (the "Closing Orders").[9] The Sale Motion was approved by the Court on an interim basis on April 25, 2023 [Doc. No. 92] and on a final basis on June 28, 2023 [Doc. No. 1117] (the "Sale Orders").[10]

6.   On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2160] (the "Plan").

7.   On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). [Doc. No. 2311]

8.   On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. (Plan, Article IV, at § B)

9.   During the chapter 11 cases and pursuant to the Plan, all of the Wind-Down Debtors' Assets have been (or are being) liquidated. Before the Effective Date, the Debtors sold

---

[8] *See* Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief [Doc. No. 28].

[9] *See* Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief.

[10] On June 28, 2023, the Court entered its Order (I) Approving the Sale of Acquired Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Their Obligations Under the Stalking Horse Purchase Agreement, (III) Approving Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief [Doc. No. 1117].

the Bed Bath & Beyond, buybuy Baby, and Harmon brands and related intellectual property (including the right to use those names in connection with the buyers' businesses). Any post-confirmation operations associated with the above names are unrelated to the Wind-Down Debtors and will not affect recoveries to creditors under the Plan.

B.  **Claim Objection Bar Date**

10. The Plan Administrator currently has until March 30, 2026 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[11] Pursuant to the Plan, unless a Court order has been entered allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. (Plan, Article I.A, at § 14).

C.  **Schedules and Claims Process**

11. On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. No. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

12. On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date

---

[11] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28. The original Claims Objection Bar Date was March 27, 2024. Pursuant to subsequent orders, the Court extended the deadline to September 30, 2024 [Doc. No. 2933], March 31, 2025 [Doc. No. 3541], September 29, 2025 [Doc. No. 3963] and March 30, 2026 [Doc. No. 4337].

Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

13. The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules, as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim (the "Rejection Damages Bar Date").

14. With respect to other Administrative Claims other than claims arising pursuant to section 503(b)(9), the Bar Date Order provides:

> Except as otherwise provided herein, all persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert an Administrative Expense Claim pursuant to 503(b), other than claims arising pursuant to section 503(b)(9), or 507(a)(2), shall submit a written proof of such Claim so that it is actually received by the Notice and Claims Agent before (a) on July 7, 2023 for claims incurred through June 27, 2023, (b) for all claims arising after June 27, 2023, on the 15th day of the month following the month in which the claim arose, and (c) fourteen days following the effective date of any confirmed plan (the "Administrative Claims Bar Date"), in accordance with this Bar Date Order;

> provided, however, that notwithstanding anything to the contrary herein, counterparties to unexpired leases of non-residential real property—which leases have not been assumed, assumed and assigned, or rejected— shall be required to file Administrative Claims no later than July 21, 2023.

Bar Date Order, ¶ 6.[12] The Effective Date of the Plan was September 29, 2023, so the last Administrative Claims Bar Date for claims incurred after July 7, 2023 was October 13, 2023.

15. On June 5, 2023, the Debtors caused a bar date notice to be published in The New York Times. [Doc. No. 638.] With the assistance of Kroll Restructuring Administration LLC (the "Claims Agent"), on May 31, 2023, the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the Case Management Order. [Doc. No. 893]. The Bar Date Order and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims Agent at https://restructuring.ra.kroll.com/bbby.

### D. Claims Asserted Against the Estates

16. As of October 31, 2025, creditors have filed 20,897 proofs of claim against the Debtors ("Total Claims"). To date, the Plan Administrator has filed 27 rounds of omnibus objections to Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"). Through his efforts (including negotiated resolutions), over 1,700 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as

---

[12] The Confirmation Order provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

Class 6 General Unsecured Claims. There are approximately 1,400 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

17. While the Plan Administrator and his Professionals have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of October 31, 2025 (excluding the Allowed Claims of the Debtors' pre-petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[13]

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 10/31/2025[14] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $36 million |
| Priority Claims (11 U.S.C. § 507) (Including Priority Tax Claims and Other Priority Claims) | $348.5 million | $196 million |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $55 million |
| General Unsecured Claims | $4.2 billion | $2.8 billion |

E. **Source of Funding for Allowed Administrative and Priority Class Claims**

18. The Plan provides for a Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2). The Combined Reserve totaled $10 million when it was turned over to the Plan Administrator on the Effective Date. Pursuant to the Confirmation Order, $2.8 million of the

---

[13] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

[14] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00.

Combined Reserve was subject to a set aside for the Texas Taxing Authorities. As of June 30, 2025, the Plan Administrator had paid $1.6 million to the Texas Taxing Authorities (and professionals responsible for negotiating the Texas Tax Claims) from the Combined Reserve on account of their Allowed Class 2 Claims. Currently, there is $8.5 million in the Combined Reserve.[15]

19.    As set forth above, the amount of alleged Administrative and Priority Class Claims greatly exceeds the amount of the Combined Reserve. Accordingly, in the Plan Administrator's business judgment, until he knows the universe of Allowed Administrative and Priority Class Claims, he is not paying any of them to ensure that each Holder of an Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Other Secured Claim and Allowed Other Priority Claim eventually receives its appropriate *pro rata* share of the Combined Reserve.

**RELIEF REQUESTED**

20.    The Plan Administrator requests that the Court enter the Proposed Order disallowing and expunging each Disputed Claim because each such claim has been amended and superseded by a Surviving Claim.

A.    **Bankruptcy Code Section 502(a)**

21.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The Plan Administrator has the right and the duty to object to the allowance of any Claim that is improper. *See* Plan, Article IV, at § B; 11 U.S.C. § 1106(a)(1).

---

[15] There is a waterfall mechanism in the Plan that provides for a sharing of certain proceeds of the Debtors' Assets after creditors holding Allowed Class 3 Claims and Allowed Class 4 Claims receive payments equal to the "Initial Sharing Threshold," which threshold has not yet been met.

22. When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). A proof of claim filed in accordance with section 501 of the Bankruptcy Code and the Bankruptcy Rules typically constitutes "prima facie evidence of the validity and amount of the claim." Fed R. Bankr. P. 3001(f). To receive the benefit of prima facie validity, however, the proof of claim must "allege facts sufficient to support the claim." *Allegheny*, 954 F.2d at 167 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."). Initially, the burden of proof lies on the claimant; if the claimant supports his claim with sufficient facts or documentation, the claim is deemed prima facie valid. *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 697 (Bankr. D. Del. 2016) (*citing Allegheny*, 954 F.2d at 173–74); *Lampe v. Lampe,* 665 F.3d 506, 514 (3d Cir. 2011).

23. A party wishing to dispute a claim that meets the burden of prima facie validity must produce evidence in sufficient force to negate the claim's prima facie validity. *Allegheny*, 954 F.2d at 173. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id*. at 174. Ultimately, the burden of persuasion is on the claimant. *Id*.

### B. Bankruptcy Code Section 502(b)(1)

24. Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

25. As set forth in the Declaration, based upon a careful review and analysis of the Claims, the Debtors' books and records, and the claims register, the Plan Administrator has determined that each Disputed Claim identified on **Exhibit 1** to the Proposed Order was amended and superseded by one or more subsequently filed claims by, or on behalf of, the same claimant in respect of the same liabilities (i.e., the "Surviving Claims").

26. Failure to disallow and expunge the Disputed Claims will result in claims that have been improperly asserted against the Debtors remaining on the claims register to the prejudice of the Debtors' other creditors. Accordingly, to avoid the possibility of multiple recoveries on account of a single liability and to maintain an accurate claims register, the Plan Administrator submits that the Disputed Claims should be disallowed and expunged in their entirety. The Surviving Claims remain subject to other and further objection.

## SEPARATE CONTESTED MATTERS

27. Each claim subject to this Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by this Court will be deemed a separate order with respect to such claim.

## RESERVATION OF RIGHTS

28. Nothing contained in this Objection or any actions taken by the Plan Administrator pursuant to the relief requested herein is intended or should be construed as (a) an admission as to the validity or amount of any claim against the Debtors; (b) a waiver of the Plan Administrator's or any other party in interest's right to dispute any claim or interest; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

29. The Plan Administrator expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to any other claims (filed or not) or interests that may be asserted. Should one or more of the grounds of objection stated in this Objection be overruled, the Plan Administrator reserves the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits. ***The Plan Administrator also reserves the right to file other and further objections to any Surviving Claim***.

## NOTICE

30. Notice of this Objection is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

31. Pursuant to Paragraph 124, notice of the Objection and the hearing thereon was given to (i) the Claimants holding the Disputed Claims listed on **Exhibit 1** to the Proposed Order at the addresses set forth for notice on the Disputed Claims (which addresses have been redacted for privacy for individual Claimants); (ii) the U.S. Trustee; (iii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iv) all parties who are

registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances

### NO PRIOR REQUEST

32. No prior request for the relief sought in this Objection has been made to this or any other court.

### CONCLUSION

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order attached as **Exhibit A** and granting such other and further relief as is just and proper under the circumstances.

| | |
|---|---|
| Dated: December 8, 2025 | */s/ Edward A. Corma* |
| | Robert J. Feinstein, Esq. (admitted *pro hac vice*) |
| | Bradford J. Sandler, Esq. |
| | Erin Gray, Esq. (admitted *pro hac vice*) |
| | Edward A. Corma, Esq. |
| | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | 1700 Broadway, 36th Floor |
| | New York, NY 10019 |
| | Telephone: (212) 561-7700 |
| | Facsimile: (212) 561-7777 |
| | Email: rfeinstein@pszjlaw.com |
| | bsandler@pszjlaw.com |
| | egray@pszjlaw.com |
| | ecorma@pszjlaw.com |
| | |
| | *Counsel to the Plan Administrator* |