---

**THIS OMNIBUS OBJECTION SEEKS TO RECLASSIFY AND/OR DISALLOW
CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS
OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON
EXHIBIT 1 ATTACHED TO THE PROPOSED ORDER.**

---

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:  rfeinstein@pszjlaw.com
         bsandler@pszjlaw.com
         egray@pszjlaw.com
         ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:      March 17, 2026**<br>**Hearing Time:      10:00 a.m. (ET)**<br>**Response Deadline:  March 10, 2026** |
| | **ORAL ARGUMENT WAIVED UNLESS RESPONSES ARE TIMELY FILED** |

**PLAN ADMINISTRATOR'S THIRTY-FIRST OMNIBUS OBJECTION TO CLAIMS
(RECLASSIFICATION OF EMPLOYEE CLAIMS NO. 5)**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors" or the "Wind-Down Debtors"), files his *Thirty-First Omnibus Objection to Claims (Reclassification of Employee Claims No. 5)* (the "Objection").[3] Each claimant ("Claimant") who filed a proof of claim (the "Disputed Claims") listed on **Exhibit 1** to the proposed order granting this Objection (the "Proposed Order"),[4] asserts a claim that the Claimant contends is entitled, in whole or in part, to priority under Bankruptcy Code section 507(a)(4) or (a)(5), administrative priority pursuant Bankruptcy Code section 503(b)(1)(A), or is secured.

As is set forth below and on **Exhibit 1** to the Proposed Order, none of the Disputed Claims qualify for priority, administrative or secured status that they seek, and the Plan Administrator asks the Court to reclassify each Disputed Claim (in whole or in part) as a Class 6 General Unsecured Claim. In many (if not most) instances, the Plan Administrator contends that all or some portion of each Disputed Claim is not owing at all. The Plan Administrator, however, is not seeking to reduce or disallow any of the Disputed Claims at this time, only to reclassify them as Class 6 General Unsecured Claims.[5] The Plan Administrator is currently deferring reconciling and filing objections to the vast majority of General Unsecured Claims given that it is unclear at this time whether there will be a distribution to Class 6. He reserves his right to do

---

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (defined below) and Confirmation Order (defined below), as applicable.

[4] The Proposed Order is attached to the Objection as **Exhibit A**.

[5] The exception to this is where a Disputed Claim has been amended by or is a duplicate of another Disputed Claim or where the Disputed Claim was filed after the Bar Date. In those instances, the Plan Administrator seeks an order disallowing the Disputed Claim.

so, however, at a future date. In support of the Objection, the Plan Administrator respectfully

states as follows:[6]

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order*

*of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle,

C.J.). The Plan Administrator confirms consent to the Court entering a final order in connection

with this Objection to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought in this Objection are sections 105

and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2, and 9013-1

of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the

"Local Rules").[7]

---

[6] The Objection is supported by the Declaration of Michael Goldberg attached as **Exhibit B** (the "Goldberg Dec.").

[7] Bankruptcy Rule 3007(e) authorizes the Plan Administrator to join up to 100 claims in an omnibus objection where the objection is based on the grounds that the claims: (1) duplicate other claims; (2) have been filed in the wrong case; (3) have been amended by subsequently filed proofs of claim; (4) were not timely filed; (5) have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (7) are interests, rather than claims; or (8) assert priority in an amount that exceeds the maximum amount under §507 of the Code. Fed. R. Bankr. P. 3007(d)-(e). District of New Jersey Local Bankruptcy Rule 3007-1 expands the permissible categories for omnibus objections. It provides, "An omnibus objection to claims may be filed to reduce the amount of a claim or to modify a claim's priority status." D.N.J. LBR 3007-2. *See* 2017 Comment to D.N.J. LBR 3007-2 ("This Rule is new. Promulgated under Bankruptcy Rule 3007(c), the rule expands the grounds upon which an omnibus objection may be based beyond those set forth under Bankruptcy Rule 3007(d).")

## BACKGROUND

### A.    General Background

4.    On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

5.    On the Petition Date, the Debtors filed (i) a motion to approve store closing procedures and liquidation sales (the "Closing Motion")[8] and (ii) a motion to approve bidding procedures for and a sale of, among other things, the Debtors' intellectual property. (the "Sale Motion").[9] The Closing Motion was approved by the Court on an interim basis on April 25, 2023 [Doc. No. 102] and on a final basis on June 7, 2023 [Doc. No. 641] (the "Closing Orders"].[10] The Sale Motion was approved by the Court on an interim basis on April 25, 2023 [Doc. No. 92] and on a final basis on June 28, 2023 [Doc. No. 1117] (the "Sale Orders").[11]

---

[8] *See* Debtors' Motion for Entry of an Order (I)(A) Approving the Auction and Bidding Procedures; (B) Approving Stalking Horse Bid Protections; (C) Scheduling Bid Deadlines and an Auction; (D) Approving the Form and Manner of Notice Thereof; (E) Approving the Form APA, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets, and (D) Granting Related Relief [Doc. No. 29].

[9] *See* Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief [Doc. No. 28].

[10] *See* Final Order (I) Authorizing the Debtors to Assume the Consulting Agreements, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief.

[11] On June 28, 2023, the Court entered its Order (I) Approving the Sale of Acquired Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Their Obligations Under the Stalking Horse Purchase Agreement, (III) Approving Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief [Doc. No. 1117].

6.      On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Doc. No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Doc. No. 2160] (the "Plan").

7.      On September 29, 2023, the effective date of the Plan occurred (the "Effective Date"). [Doc. No. 2311]

8.      On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. (Plan, Article IV, at § B)

9.      During the Chapter 11 Cases and pursuant to the Plan, all of the Wind-Down Debtors' Assets have been (or are being) liquidated. Before the Effective Date, the Debtors sold the Bed Bath & Beyond, buybuy Baby, and Harmon brands and related intellectual property (including the right to use those names in connection with the buyers' businesses). Any post-confirmation operations associated with the above names are unrelated to the Wind-Down Debtors and will not affect recoveries to creditors under the Plan.

## B.    Claim Objection Bar Date

10.     The Plan Administrator currently has until March 30, 2026 to object to Claims (the "Claim Objection Bar Date"), which date may be extended by the Court upon the request of the Plan Administrator.[12] Pursuant to the Plan, unless a Court order has been entered allowing it,

---

[12] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28. The original Claims Objection Bar Date was March 27, 2024. Pursuant to subsequent orders, the Court extended the deadline to September 30, 2024 [Doc. No. 2933],

no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. (Plan, Article I.A, at § 14).

**C.**     **Schedules and Claims Process**

11.     On May 30, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Doc. No. Nos. 499-568, 570-573] (collectively, and as each may have been amended from time to time, the "Schedules and Statements") in the Chapter 11 Cases.

12.     On May 31, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Doc. No. 584] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (collectively, the "Proofs of Claim") in these Chapter 11 cases.

13.     The Bar Date Order established (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"); (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from

---

March 31, 2025 [Doc. No. 3541], September 29, 2025 [Doc. No. 3963] and March 30, 2026 [Doc. No. 4337].

the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for

damages arising from such rejection; and (d) at least thirty (30) calendar days from the date on

which the Debtors provided notice of an amendment or supplement to the Schedules, as the

deadline for when claimants holding Claims that the filing, amendment, or supplement affected

must file Proofs of Claim with respect to such claim (the "Rejection Damages Bar Date").

14.    With respect to other Administrative Claims other than claims arising pursuant to

section 503(b)(9), the Bar Date Order provides:

> Except as otherwise provided herein, all persons and entities
> including, without limitation, individuals, partnerships,
> corporations, joint ventures, and trusts, that assert an
> Administrative Expense Claim pursuant to 503(b), other than
> claims arising pursuant to section 503(b)(9), or 507(a)(2), shall
> submit a written proof of such Claim so that it is actually received
> by the Notice and Claims Agent before (a) on July 7, 2023 for
> claims incurred through June 27, 2023, (b) for all claims arising
> after June 27, 2023, on the 15th day of the month following the
> month in which the claim arose, and (c) fourteen days following
> the effective date of any confirmed plan (the "Administrative
> Claims Bar Date"), in accordance with this Bar Date Order;
> provided, however, that notwithstanding anything to the contrary
> herein, counterparties to unexpired leases of non-residential real
> property—which leases have not been assumed, assumed and
> assigned, or rejected— shall be required to file Administrative
> Claims no later than July 21, 2023.

Bar Date Order, ¶ 6.[13] The Effective Date of the Plan was September 29, 2023, so the last

Administrative Claims Bar Date for claims incurred after July 7, 2023 was October 13, 2023.

15.    On June 5, 2023, the Debtors caused a bar date notice to be published in The New

York Times. [Doc. No. 638.] With the assistance of Kroll Restructuring Administration LLC (the

---

[13] The Confirmation Order provides, "Except as otherwise provided in the Plan, requests for payment of
Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative
Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file
and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and
enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their
respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the
Effective Date." Confirmation Order, ¶ 123.

"Claims Agent"), on May 31, 2023, the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the Case Management Order. [Doc. No. 893]. The Bar Date Order and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims Agent at https://restructuring.ra.kroll.com/bbby.

**D.     Claims Asserted Against the Estates**

16.     As of January 26, 2026, creditors have filed 20,956 proofs of claim against the Debtors ("Total Claims"). To date, the Plan Administrator has filed 30 rounds of omnibus objections to Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"). Through his efforts (including negotiated resolutions), 1,910 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims. There are approximately 955 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

17.     While the Plan Administrator and his Professionals have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of January 26, 2026 (excluding the Allowed Claims of the Debtors' pre-petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[14]

---

[14] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 01/26/26[15] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $33.5 million |
| Priority Claims (11 U.S.C. § 507) (Including Priority Tax Claims and Other Priority Claims) | $348.5 million | $126.8 million |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $48.1 million |
| General Unsecured Claims | $4.2 billion | $2.7 billion |

## E.  Source of Funding for Allowed Administrative and Priority Class Claims

18.     The Plan provides for a Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2). The Combined Reserve totaled $10 million when it was turned over to the Plan Administrator on the Effective Date. Pursuant to the Confirmation Order, $2.8 million of the Combined Reserve was subject to a set aside for the Texas Taxing Authorities. As of June 30, 2025, the Plan Administrator had paid $1.6 million to the Texas Taxing Authorities (and professionals responsible for negotiating the Texas Tax Claims) from the Combined Reserve on account of their Allowed Class 2 Claims. Currently, there is $8.5 million in the Combined Reserve.[16]

19.     As set forth above, the amount of alleged Administrative and Priority Class Claims greatly exceeds the amount of the Combined Reserve. Accordingly, in the Plan Administrator's business judgment, until he knows the universe of Allowed Administrative and

---

[15] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00.

[16] There is a waterfall mechanism in the Plan that provides for a sharing of certain proceeds of the Debtors' Assets after creditors holding Allowed Class 3 Claims and Allowed Class 4 Claims receive payments equal to the "Initial Sharing Threshold," which threshold has not yet been met.

Priority Class Claims, he is not paying any of them to ensure that each Holder of an Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Other Secured Claim and Allowed Other Priority Claim eventually receives its appropriate *pro rata* share of the Combined Reserve.

## RELIEF REQUESTED

20.    As is set forth with greater specificity on **Exhibit 1**, the basis for each Disputed Claim is, by in large, some combination of the following: (i) wages, salaries, bonuses and/or paid time off (the "Wage Claims"); (ii) matching contributions to a 401(k) plan (the "401(k) Claims"); (iii) separation pay (the "Severance Claims"); and (v) restricted cash awards (the "Restricted Cash Award Claims") (collectively, the "Employee Obligations"). In addition, a number of Claimants seek priority or administrative status related to alleged pre-petition labor violations (the "Labor Claims"). The Plan Administrator believes that the Debtors have no liability on many (if not most) of the Disputed Claims; however, at this time, the Plan Administrator merely seeks an order reclassifying each Disputed Claim as a Class 6 General Unsecured Claim on the grounds that the Disputed Claims are not entitled to priority under Bankruptcy Code section 507(a)(4) or 507(a)(5) or administrative priority pursuant Bankruptcy Code section 503(b)(1)(A). Nor are they secured.

## BASIS FOR RELIEF

**A.    None of the Disputed Claims satisfy the requirements of Bankruptcy Code Sections 507(a)(4) or (a)(5).**

21.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The Plan Administrator has the right and the duty to object to the allowance of any Claim that is improper. *See* Plan, Article IV, at § B; 11 U.S.C. § 1106(a)(1).

22.     When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). A proof of claim filed in accordance with section 501 of the Bankruptcy Code and the Bankruptcy Rules typically constitutes "prima facie evidence of the validity and amount of the claim." Fed R. Bankr. P. 3001(f). To receive the benefit of prima facie validity, however, the proof of claim must "allege facts sufficient to support the claim." *Allegheny*, 954 F.2d at 167 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."). Initially, the burden of proof lies on the claimant; if the claimant supports his claim with sufficient facts or documentation, the claim is deemed prima facie valid. *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 697 (Bankr. D. Del. 2016) (*citing Allegheny*, 954 F.2d at 173–74); *Lampe v. Lampe,* 665 F.3d 506, 514 (3d Cir. 2011).

23.     A party wishing to dispute a claim that meets the burden of prima facie validity must produce evidence in sufficient force to negate the claim's prima facie validity. *Allegheny*, 954 F.2d at 173. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id*. at 174. Ultimately, the burden of persuasion is on the claimant. *Id*.

24.     Each of the Disputed Claims assert priority status pursuant to 11 U.S.C. §§ 507(a)(4) and/or 507(a)(5). Section 507(a)(4) provides a fourth order of priority for:

> allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business,

whichever occurs first, for—(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . .

11 U.S.C. § 507(a)(4).[17]  Section 507(a)(5) provides a fifth order of priority for:

allowed unsecured claims for contributions to an employee benefit plan—(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (B) for each such plan, to the extent of—(i) the number of employees covered by each such plan multiplied by $[15,150.00]; 2 less (ii)the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

25.    The priority period for Sections 507(a)(4) and (a)(5) is October 25, 2022 – April 22, 2023 (the "Priority Period"). The priority limit is $15,150.00 (the "Priority Limit"). According to the Debtors books & records, none of the Disputed Claims satisfies section 507(a)(4) & (a)(5) because: (a) the Disputed Claim was not earned during the Priority Period (or, with respect to benefits, did not arise from services rendered during the Priority Period) and/or (b) post-petition payments to the Claimant on account of wages or benefits earned during the Priority Period already meet or exceed the Priority Limit. Accordingly, each Disputed Claim should be reclassified as a Class 6 General Unsecured Claim, subject to other and further objection.

**(a) Wage Claims.**

26.    Some of the Disputed Claims assert Wage Claims which the Claimants contend are entitled to priority status. As is set forth below, however, the Debtors paid all such Wage Claims.

27.    On the Petition Date, the Debtors filed their *Motion for Entry of Interim and Final Orders (1) Authorizing the Debtors to (a) Pay Prepetition Wages, Salaries Other Compensation*

---

[17] The 507(a)(4) limit was increased to $17,150 for cases filed after April 1, 2025.

*and Reimbursable Expenses and (b) Continue Employee Benefit Programs and (II) Granting
Related Relief* (the "Priority Wage Motion") [Doc. No. 11]. Pursuant to the Priority Wage
Motion, the Debtors sought authority to pay $76 million in pre-petition compensation and
benefits to their workforce (consisting of 14,000 nonseasonal employees, 6000 of which worked
full-time and 8,000 of which worked part-time) (the "Employees") which the Debtors outlined as
follows:

| Employee Related Obligation | Amount |
|---|---:|
| Employee Compensation | $29,400,000.00 |
| Independent Contractor Compensation | $389,000.00 |
| Payroll Processing Fees | $6,200,000.00 |
| Withholding and Deduction Obligations | $10,900,000.00 |
| Reimbursable Expenses | $1,200,000.00 |
| Health Insurance Programs | $7,500,000.00 |
| Life and AD&D Insurance and Disability | $344,000.00 |
| Workers' Compensation Program | $14,700,000.00 |
| Paid Leave | $4,400,000.00 |
| Supplemental Benefits Programs | $500,000.00 |
| **Total** | $76,133,000 |

28.    The Priority Wage Motion was approved by this Court on an interim basis on
April 24, 2023 [Doc. No. 77] (the "Interim Priority Wage Order") and on a final basis on May
18, 2023 [Doc. No. 388] ( the "Final Priority Wage Order"). Pursuant to the Final Priority Wage
Order, the Debtors were authorized to pay all pre-petition and post-petition Employee
Compensation to the Employees in the ordinary course of business without further order of the
Court and (with the exception of Insiders) even in excess of the limits set forth in Bankruptcy
Code sections 507(a)(4) and 507(a)(5). The Plan Administrator is informed and believes that the
Debtors did so. Furthermore, the payroll that was paid post-petition on or about April 27, 2023,
was for the two weeks ending April 22, 2023, and in each instance, that payroll counted towards
the Claimants' Priority Limit.

29.     Based on the information above, the Plan Administrator is informed and believes (a) that all Wage Claims owing to the Debtors' Employees (including Claimants) have been paid in full; and (b) that to the extent any Wage Claim was not paid in full, that post-petition payments to the Claimant on account of wages and/or benefits earned during the Priority Period equal or exceed the Priority Limit; therefore, any Wage Claim is not entitled to priority.

30.     While the Plan Administrator is informed and believes that the Debtors have no liability to any Claimant with respect to a Wage Claim, at this time, in the interests of efficiency, the Plan Administrator seeks only to reclassify any Disputed Claim that is a Wage Claim as a Class 6 General Unsecured Claim, subject to other and further objection.

### (b) 401(k) Claims.

31.     Some of the Disputed Claims assert claims for matching contributions to the BBB 401(k) Plan to which the Claimants contend they are entitled for 2022 and/or 2023.

32.     Prepetition, the Company sponsored the Bed Bath & Beyond Inc. 401(k) Savings Plan (the "BBB 401(k) Plan") and the Bed Bath & Beyond Inc. Puerto Rico Retirement Plan (the "BBB PR Plan"). Any matching contribution to the BBB 401(k) Plan was discretionary and fully dependent on the ability of the Debtors to fund the match. *See* Summary Plan Document for the BBB 401(k)) Plan at Article III, at 3 ("**Discretionary Matching Contribution.** The Employer may make a discretionary matching contribution."), attached hereto as **Exhibit C**.

33.     In March of 2023, BBB advised employees, "This year, due to the current financial position of the Company, we have diligently reviewed and analyzed the possibility of making matching contributions for the 2022 Plan Year (calendar year).  Unfortunately, while we had hoped to be positioned to match, the Company determined that it will be unable to fund

matching contributions to any of the Company-sponsored retirement plans." *See* March 2023 letter to employees, attached hereto as **Exhibit D**.

34.    For obvious reasons, the Company made no matching contribution for 2023.

35.    By February 2024, all of the BBB 401(k) Plan's assets were distributed and the Plan was terminated.

36.    Accordingly, the Plan Administrator is informed and believes that the Debtors have no liability to any Claimant with respect to 401(k) Claim. At this time, however, in the interests of efficiency, the Plan Administrator seeks only to reclassify any Disputed Claim that is a 401(k) Claim as a Class 6 General Unsecured Claim, subject to other and further objection.

### *(c) Restricted Cash Award Claims.*

37.    Some of the Disputed Claims assert claims for awards pursuant to the BBB 2018 Incentive Compensation Program (the "Incentive Plan"). Pursuant to the Incentive Plan, the Debtors awarded restricted stock (later changed to cash) ("Restricted Cash Awards") to certain Employees on an annual basis. Restricted Cash Awards were generally awarded in May of each year (2018, 2019, 2020, 2021 and 2022). Each award was "restricted" for a full year or longer, during which time the Employee was not eligible to receive payment on account of the Restricted Cash Award.

38.    Article XII of the Incentive Plan makes clear, any Restricted Cash Award Claims are general unsecured claims, stating, " UNFUNDED PLAN 12.1 Unfunded Status of Plan. The Plan is intended to constitute an "unfunded" plan for incentive and deferred compensation. With respect to any payments as to which a Participant has a fixed and vested interest but that are not yet made to a Participant by the Company, nothing contained herein shall give any such

Participant any rights that are greater than those of a general unsecured creditor of the Company." *See* **Exhibit E** attached hereto.

39.     In addition to the Incentive Plan provision (which makes clear that any Restricted Cash Award Claims are general unsecured claims), the Plan Administrator is informed and believes that the Debtors did not grant any Restricted Cash Awards after May of 2022, which is outside the Priority Period  Accordingly, the Plan Administrator asks the Court to reclassify any Disputed Claim that is a Restricted Cash Award Claim as a Class 6 General Unsecured Claim, subject to other and further objection.

### (d) Severance Claims.

40.     Some of the Disputed Claims assert Severance Claims. The Plan Administrator is informed and believes that all Severance Claims have either: (a) been satisfied; (b) are not owing; (c) are not entitled to priority pursuant to Bankruptcy Code section 507(a)(4) because they were not earned within the Priority Period and/or (d) to the extent any Severance Claim was not paid in full, post-petition payments to the Claimant on account of wages and/or benefits earned within the Priority Period equal or exceed the Priority Limit.

41.     Pre-petition, the Company had offered discretionary severance to certain Employees who were terminated without cause (the "Discretionary Severance"). By March of 2023, however, the Debtors had stopped offering Discretionary Severance due to the company's extreme financial distress. The Plan Administrator is informed and believes that all Employees who were offered Discretionary Severance at the time of termination were paid.

42.     Furthermore, the Plan Administrator is informed and believes that the Debtors paid all obligations owing to Employees (if any) pursuant to the Worker Adjustment and Retraining Notification Act (the "Federal WARN Act") and its state law equivalents including

New Jersey's *Millville Dallas Airmotive Plan Job Loss Notification Act*, N.J. Stat. § 34:21-2, (the "NJ WARN Act"). In addition to its notice requirements, the NJ WARN Act requires an employer to provide severance pay to affected employees equal to one week of pay for each full year of employment ("NJ Severance"). The Plan Administrator is informed and believes that the Debtors fully paid each Claimant who was entitled to NJ Severance.

43.    Finally, to the extent that a Severance Claim is made pursuant to a pre-petition employment contract ("Contractual Severance"), the Plan Administrator is informed and believes that the Contractual Severance is not entitled to priority pursuant to Bankruptcy Code section 507(a)(4) either because (a) the severance was not earned within the Priority Period and/or (b) because post-petition payments to Claimant on account of pre-petition wages and benefits earned during the Priority Period already meet or exceed the Priority Limit.

44.    Accordingly, even assuming arguendo that the Debtors have any liability to any Claimant with respect to a Severance Claim, at this time, in the interests of efficiency, the Plan Administrator seeks only to reclassify any Disputed Claim that is a Severance Claim as a Class 6 General Unsecured Claim, subject to other and further objection.

### (e) Labor Claims.

45.    Finally, a number of Claimants seek priority or administrative status related to Labor Claims. Yet, none of such Disputed Claims establish that any alleged violations qualify for priority under section 507(a)(4) or (a)(5) or 503(b)(1). The Plan Administrator requests that the Court enter the Proposed Order reclassifying each Disputed Claim as a Class 6 General Unsecured Claim.[18]

---

[18] In one instance the Claimant has asserted unliquidated priority claims for alleged pre-petition labor violations on behalf of a purported class. *See* Claims 7178, 7282, and 7302. Claimants request for priority on behalf of the purported class must be disallowed because Claimant (a) Claimant's individual claims do not qualify for priority and

**B.**     **None of the Disputed Claims are Entitled to Administrative Expense Priority**

**Pursuant to Bankruptcy Code section 503(b)(1).**

46.     While a properly executed and timely filed proof of claim that alleges a *pre-petition claim* "is deemed allowed, unless a party in interest . . . objects." (11 U.S.C. § 502(a)), where a Claimant alleges that its claim is entitled to administrative expense status under Bankruptcy Code section 503, the claimant must both seek *allowance* and establish *entitlement*. *See* 11 U.S.C. § 503(b) (allowing administrative expenses only "after notice and a hearing".). Because administrative expenses are given priority over both priority unsecured and general unsecured creditors, it is generally accepted that its requirements must be strictly construed). *See In re Jughandle Brewing Co., LLC*, 2024 Bankr. LEXIS 1305, *6 (Bankr. D.N.J. June 3, 2024).

47.     As was noted above, each of the Disputed Claims improperly asserts administrative status pursuant to 11 U.S.C. §§ 507(a)(2) and 503(b). Section 503(b) states, in relevant part, "After notice and a hearing, there shall be allowed administrative expenses, . . . including – (1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). To establish administrative expense priority under this provision, the burden is on the Claimant to demonstrate that the obligation claimed as an administrative expense (1) arose out a post-petition transaction with the debtor in possession and (2) directly

---

(b) Claimant neither sought nor obtained an order certifying the purported class prior to confirmation of the Plan, nor at any time thereafter. *See e.g. In re Ephedra Prods. Liability Lit.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (court denied class certification request made after plan was sent to creditors for voting); In re FIRSTPLUS Fin., Inc., 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) (motion for class certification denied where it was filed one month prior to plan confirmation hearing); *In re Sacred Heart Hospital of Norristown*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) (court denied motion to file class proof of claim and extension of bar date, reasoning that, "[i]t is clearly disruptive to the formulation of a plan to frustrate a debtor's logical assumptions regarding the amounts of total claims by compelling the debtor to alter or extend an established bar date.").

and substantially benefitted the estate. *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999). The administrative claimant carries "'the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.'" *Id*. at 534 (*quoting In re O'Brien Environmental Energy, Inc.*, No. 94-26723, slip op. at 30 (Bankr. D.N.J. Nov. 8, 1996)); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 172-73 (3rd Cir. 2012) ("The party asserting an administrative expense claim bears the burden of demonstrating that it deserves administrative expense status."). As the Third Circuit has previously noted:

> These requirements balance two important goals. By giving priority to those claims that help keep the debtor-in-possession functioning, "sections 503 and 507 advance the estate's interest in survival above all other financial goals." *Zagata Fabricators, Inc. v. Superior Air Prods*., 893 F.2d 624, 627 (3d Cir. 1990). By limiting priority to those claims that are actual and necessary, the Code prevents the estate from being consumed by administrative expenses, and preserves the estate for the benefit of the creditors. *See Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs, Inc*., 178 F.3d 685, 690 (3d Cir. 1999) (holding that "Chapter 11 is intended to rehabilitate the debtor and avoid forfeiture by creditors") (quotations and brackets omitted). Consistent with the objective of preserving the estate for creditors, the burden to demonstrate that an expense deserves administrative priority lies with the party asserting such priority.

*In re Marcal Paper Mills, Inc.,* 650 F.3d 311, 315 (3d. Cir. 2011).

48.    The Disputed Claims asserted as administrative expense claims should be reclassified because such claims do not satisfy the requirements of section 503(b)(1)(A) of the Bankruptcy Code. As is noted in the Declaration and on Exhibit 1 to the Proposed Order, Claimants have not provided any evidence demonstrating their claims arose from post-petition transactions with the Debtors and that their claims provided an actual and concrete benefit to the Debtors' estates. Because the Claimants have not satisfied their heavy burden under section

503(b)(1)(A), the Disputed Claims asserted as administrative expense claims under 503(b)(1) should be reclassified as Class 6 General Unsecured Claims, which will remain subject to other and further objection.[19]

## C.    None of the Disputed Claims are entitled to secured status pursuant to Bankruptcy Code section 506.

49.    Some of the Disputed Claims improperly assert secured status. To assert a secured claim, a creditor must demonstrate that its claim is secured by a lien on property in which the debtor's estate has an interest. 11 U.S.C. § 506(a). Moreover, Bankruptcy Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Fed. R. Bankr. P. 3001(d). If a creditor cannot demonstrate that its claim is secured by a lien or other security interest in the property of the debtor's estate, the claim must be treated as unsecured.

50.    Here, the Disputed Claims lack *prima facie* validity of secured status. The applicable Claimants have failed to include any documentation or explanatory support establishing that their claims are secured by any interest in the Debtors' property. As a result, the Disputed Claims asserted as secured claims should be reclassified as Class 6 General Unsecured Claims.

---

[19] Some of the Disputed Claims assert that the claim is, in whole or in part, entitled to priority as an Administrative Claim under Bankruptcy Code section 503(b)(9), which provides, "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including---the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).  As is set forth on Exhibit 1 to the Proposed Order, none of the Disputed Claims qualifies for priority treatment under section 503(b)(9).

## SEPARATE CONTESTED MATTERS

51.     Each claim subject to this Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by this Court will be deemed a separate order with respect to such claim.

## RESERVATION OF RIGHTS

52.     Nothing contained in this Objection or any actions taken by the Plan Administrator pursuant to the relief requested herein is intended or should be construed as (a) an admission as to the validity or amount of any claim against the Debtors; (b) a waiver of the Plan Administrator's or any other party in interest's right to dispute any claim or interest; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

53.     The Plan Administrator expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to any other claims (filed or not) or interests that may be asserted. Should one or more of the grounds of objection stated in this Objection be overruled, the Plan Administrator reserves the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits. ***The Plan Administrator also reserves the right to file other and further objections to any Disputed Claim including any Disputed Claim that is reclassified as a Class 6 General Unsecured Claim pursuant to the Proposed Order***.

## NOTICE

54.     Notice of this Objection is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

55.     Pursuant to Paragraph 124, notice of the Objection and the hearing thereon was given to (i) the Claimants holding the Disputed Claims listed on **Exhibit 1** to the Proposed Order at the addresses set forth for notice on the Disputed Claims (which addresses have been redacted for privacy for individual Claimants); (ii) the U.S. Trustee; (iii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iv) all parties who are registered to receive electronic notice in these Chapter 11 Cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances

## NO PRIOR REQUEST

56.     No prior request for the relief sought in this Objection has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the

Proposed Order attached as **Exhibit A** and granting such other and further relief as is just and

proper under the circumstances.

Dated:  January 30, 2026

*/s/ Edward A. Corma*
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
**PACHULSKI STANG ZIEHL & JONES LLP**
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
        bsandler@pszjlaw.com
        egray@pszjlaw.com
        ecorma@pszjlaw.com

*Counsel to the Plan Administrator*