**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:    rfeinstein@pszjlaw.com
          bsandler@pszjlaw.com
          egray@pszjlaw.com
          ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:    March 17, 2026**<br>**Hearing Time:    10:00 a.m. (ET)**<br>**Responses Due:    March 10, 2026** |

### PLAN ADMINISTRATOR'S FIFTH MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the

"Debtors" or the "Wind-Down Debtors"), moves this Court for the entry of an order,

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

4938-2184-5387.3 08728.003

substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1(c) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), extending the period within which the Plan Administrator may object to Claims of all priority levels (including but not limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for payment and/or motions on the docket - Priority Claims (including but not limited to Priority Tax Claims and Other Priority Claims) and/or General Unsecured Claims) and Interests to the latter of: (a) Wednesday, September 30, 2026 or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim.[3] In support of this Motion, the Plan Administrator respectfully represents as follows:

## JURISDICTION

1.    The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested are Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c).

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

**FACTUAL AND PROCEDURAL BACKGROUND**[4]

**A.      General Background**

3.      On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

4.      Pursuant to the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order"), the Court set (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); and (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"). Pursuant to the Plan and the Bar Date Order, October 13, 2023, was the last possible date by which creditors asserting claims entitled to administrative priority pursuant to Bankruptcy Code section 503 were required to file requests for payment ("Administrative Claims Bar Date").[5] Professional Fee Claims were required to be filed by October 29, 2023.

---

[4] The facts in this Motion are supported by the Declaration of Michael Goldberg (the "Goldberg Declaration"), which is attached hereto as **Exhibit B**.

[5] Bar Date Order, ¶ 6; Plan, Article I.A, at § 12. The Confirmation Order further provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date

5.      On September 14, 2023 (the "Confirmation Date"), the Court entered the

*Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a*

*Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath &*

*Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming

the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates*

[Docket No. 2160] (the "Plan").

6.      During the chapter 11 cases and pursuant to the Plan, all of the Wind-Down

Debtors' Assets have been (or are being) liquidated. Before the Effective Date, the Debtors sold

the Bed Bath & Beyond, buybuy Baby, and Harmon brands and related intellectual property

(including the right to use those names in connection with the buyers' businesses). Any post-

confirmation operations associated with the above names are unrelated to the Wind-Down

Debtors and will not affect recoveries to creditors under the Plan.

7.      Pursuant to the Plan, all securities were cancelled (e.g., common stock, warrants,

etc.).  (Plan, Arts. III.B.9, IV.D, VII.B; Confirmation Order, ¶ 98).  Holders of Interests (e.g., any

form of equity, including, without limitation, common stock) are not entitled to any recovery.

(Plan, Article III.B.9(b) ("Each Allowed Interest in BBB shall be canceled, released and

extinguished, and will be of no further force and effect, and no Holder of Interests in BBB shall

be entitled to any recovery or distribution under the Plan on account of such Interests.")).

8.      On September 29, 2023, the effective date of the Plan occurred (the "Effective

Date") [Docket No. 2311].

---

shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

B.      **The Plan Administrator's Operations**

9.      On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, liquidating the Assets of the estates, prosecuting Causes of Action, resolving Claims, performing claims reconciliation, and objecting to Claims. (Plan, Arts. VII & IV.B).

10.     Since his appointment, the Plan Administrator (with the assistance of his staff and Professionals) has, among other things: (i) reconciled, settled and/or objected to thousands of Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"); (ii) recovered and collected significant value related to the Debtors' remaining Assets, such as reserves held by credit card companies, excess collateral held by insurance companies, prepayments held by vendors and refunds owed by various federal, state and local taxing authorities; (iii) concluded Asset sales; (iv) investigated, filed, prosecuted and/or settled over 250 Causes of Action; (v) negotiated extensively with taxing authorities over the amounts and priority of alleged tax claims, resolving many of those claims; (vi) responded to a plethora of motions filed by parties in interest in the bankruptcy court seeking, *inter alia*, Allowance of Claims and relief from the automatic stay; (vii) prepared and filed Post Confirmation Operating Reports; (viii) prepared and filed all required federal, state and local tax returns; and (ix) made distributions on account of Allowed DIP Claims (Class 3) and Allowed FILO Claims (Class 4), and certain Allowed Secured Claims (Class 2) (i.e., the Allowed Texas Tax Claims).

11.     More specifically, with respect to Causes of Action (which remain the primary future source of recoveries under the Plan), as of February 6, 2026, the Plan Administrator has (i) filed 260 adversary proceedings pursuant Bankruptcy Code sections 547 that seek to recover

preferential payments (the "Preference Actions"), 51 of which remain active; and (ii) 18

adversary proceedings pursuant Bankruptcy Code sections 542 that seek to recover tax refunds,

overpayments, collateral and/or other cash assets the Plan Administrator contends the defendant

is holding (the "Turnover Actions") (and some of which also object to the defendant's claims),

10 of which remain active. The Plan Administrator has also initiated (and/or continued to

prosecute) the following additional Causes of Action outside of this Court which are still

pending: (1) *20230930-DK-Butterfly-1, Inc., v. HBC Investments LLC et al*, Case No. 24-cv-

3370 (S.D.N.Y. May 2, 2024); (2) *20230930-DK-Butterfly-1, Inc. v. Ryan Cohen et al*. (S.D.N.Y.

August 1, 2024); (3) *Bed Bath & Beyond Inc., et al v. Anthem, Inc., f/k/a WellPoint, Inc. d/b/a*

*Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, et al*., Case

No.  2:22-cv-01256-SGC (N.D. Ala. Sep. 27, 2022); (4*) Bed Bath & Beyond Inc. v. Orient*

*Overseas Container Line Limited and OOCL (Europe) Limited*, Case No. 23-02 (Federal

Maritime Commission, April 27, 2023); (5) *20230930-DK-Butterfly-1, Inc. v. BAL Container*

*Line Co., Limited*, Case No. 25-02 (Federal Maritime Commission, Jan.7, 2025); (6) *20230930-*

*DK-BUTTERFLY-1, Inc. v. Evergreen Marine Corp. (Taiwan) Ltd., et al*, Case No. 24-12

(Federal Maritime Commission, Feb. 21, 2021); (7) *Bed Bath & Beyond Inc. v. Yang Ming*

*Marine Transport Corp.*, Case No. 23-10 (Federal Maritime Commission, September 7, 2023);

(8) *In re Insulin Pricing Litigation* (*RAD SUB-TRUST A et al  v. Eli Lilly & Co., et al,* Case No.

2:246-cv-00456 (D.N.J. Jan. 14, 2026). The Plan Administrator also initiated (and/or continued

to prosecute) the following additional Causes of Action outside of this Court which are now

settled: (1) *20230930-DK-Butterfly-1, Inc. v. MSC Mediterranean Shipping Company SA*, Case

No. 23-12 (Federal Maritime Commission, Nov. 28, 2023); (2) *20230930-DK-Butterfly-1, Inc. v.*

*Edelman et al*., Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024). The Plan

Administrator has settled claims against numerous shippers without formal litigation, including Ocean Network Express (ONE), Hapag Lloyd, and COSCO Shipping Lines. The Plan Administrator continues to investigate potential Causes of Action and will continue to commence cases where he believes the estates may benefit.

12.    Starting on the Effective Date with unrestricted cash of approximately $11 million, the Plan Administrator has collected an additional $187 million through December 31, 2025, from which he has made distributions on account of Class 3 Claims (Allowed DIP Claims) and Class 4 Claims (Allowed FILO Claims) and Plan Administrator Expenses totaling $197 million.

**C.    The Asserted Claims**

13.    Pursuant to the Plan, unless a Court order has been entered Allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. (Plan, Article I.A, at § 14.)

14.    Pursuant to the Plan, the Plan Administrator originally had until March 27, 2024 to object to Claims (the "Claim Objection Bar Date").[6]  Pursuant to an order entered on March 19, 2024 [Docket No. 2933], the Court extended the Claims Objection Bar Date to September 30, 2024. On September 29, 2024, the Court entered the *Second Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 3541] extending the Claims Objection Bar Date from September 30, 2024 through March 31, 2025. On March 26, 2025, the Court entered the *Third Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 3963] extending the Claims Objection Bar Date from March 31, 2025 through September 29, 2025. On September 25, 2025, the Court

---

[6] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28.

entered the *Fourth Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 4337] (the "Fourth Extension Order") extending the Claims Objection Bar Date from September 29, 2025 through March 30, 2026 (the "Fourth Extension Period"). The Fourth Extension Order further provided, "This Order shall be without prejudice to the rights of the Plan Administrator to seek further extensions of the Claims Objection Bar Date."

15.    As of February 6, 2026, creditors had filed almost 21,000 proofs of claim against the Debtors ("Total Claims"). During the Fourth Extension Period, the Plan Administrator has continued to focus primarily on reconciling, negotiating and objecting to Administrative and Priority Class Claims, including Priority Tax Claims, and Administrative Claims filed by vendors, landlords, customers and employees. To date, the Plan Administrator has filed 31 rounds of omnibus objections to Administrative and Priority Class Claims. Through his efforts (including negotiated resolutions), over 1,900 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims. At this time, there are approximately 955 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

16.    While the Plan Administrator and his Professionals have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of February 6, 2026 (excluding the Allowed Claims of the Debtors' pre-

petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[7]

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 02/06/2026[8] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $33 million |
| Priority Claims (11 U.S.C. § 507) | $348.5 million | $127 million (of which $123 million are alleged Priority Tax Claims) |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $48 million |
| General Unsecured Claims | $4.2 billion | $2.7 billion |

### D.   Source of Funding for Allowed Administrative and Priority Class Claims

17.   The Plan provides for a Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2). The Combined Reserve totaled $10 million when it was turned over to the Plan Administrator on the Effective Date. Pursuant to the Confirmation Order, $2.8 million of the Combined Reserve was subject to a set aside for the Texas Taxing Authorities. As of December 31, 2025, the Plan Administrator paid $1.6 million to the Texas Taxing Authorities from the Combined Reserve on account of their Allowed Class 2 Claims. Currently, there is $8.6 million in the Combined Reserve.

18.   As set forth above, the amount of alleged Administrative and Priority Class Claims greatly exceeds the amount of the Combined Reserve. Accordingly, in the Plan Administrator's business judgment, until he knows the universe of Allowed Administrative and

---

[7] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

[8] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00.

Priority Class Claims, he is not paying any of them to ensure that each Holder of an Allowed

Administrative Claim eventually receives its appropriate *pro rata* share of the Combined

Reserve.

19.    There is a mechanism (the "Sharing Mechanism") under the Plan that has the

potential to increase the amount of funds available for distribution to Holders of Allowed

Administrative Claims, Allowed Priority Tax Claims, Other Allowed Priority Claims (Class 1)

and Other Secured Claims (Class 2) as well as Allowed Class 6 General Unsecured Claims by

allowing the Wind Down Debtors' estates to participate in certain percentage recoveries from

Causes of Action which are deposited into a Shared Proceeds Pool.[9] The Sharing Mechanism,

however, does not begin until the "Initial Sharing Threshold" is met. The Initial Sharing

Threshold is "the point in time at which the combined aggregate recoveries to Holders of

Allowed Claims in Classes 3 and 4 exceeds $515,000,000.00 *plus* interest and fees on account of

such Claims." Plan, Articles I.A(81) & IV.B.

20.    Prior to the Effective Date, the Plan Administrator understands that the Debtors

paid $227 million to the Holders of the Allowed DIP Claims (Class 3) and the Allowed FILO

Claims (Class 4) including interest and fees of $18 million. From the Effective Date through

December 31, 2025, the Plan Administrator has made payments totaling $161 million on account

of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4) including interest

and fees of $31 million. Accordingly, the amount paid on account of the Allowed DIP Claims

and the Allowed FILO Claims including interest and fees is $388 million, and the Initial Sharing

---

[9] The "'*Shared Proceeds Pool*' means all funds allocated to the Debtors or the applicable Successor Entity, as applicable, in accordance with the Sharing Mechanism." Plan, Article I.A(143).

Threshold has not been met, meaning there are currently \$0.00 Distributable Proceeds in the Shared Proceeds Pool.[10]

## RELIEF REQUESTED

21.     By this Motion, and pursuant to Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c),[11] the Plan Administrator seeks an extension of the Claims Objection Bar Date to the latter of: (a) September 30, 2026 or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim. The Plan Administrator further requests that the order approving this Motion be without prejudice to the rights of the Plan Administrator to seek further extension of the Claims Objection Bar Date.

## BASIS FOR RELIEF

22.     As discussed above, the Plan vests the discretion to object to Claims in the Plan Administrator.  Bankruptcy Rule 9006(b) also makes clear that the Court may extend unexpired time periods with or without notice.  Specifically, Rule 9006(b) states in relevant part that:

> (1) *In General* . . . when an act is required or allowed to be done at or within a specified period by [the Bankruptcy Rules] or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . .

Fed. R. Bankr. P. 9006(b)(1). The Claims Objection Bar Date has not expired as of the filing of the Motion; accordingly, the Court is authorized to grant the relief requested herein.

---

[10] "*Distributable Proceeds*" means "subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve." *See* Plan, Article I.A, at § 58.

[11] Local Rule 3007-1 governs the timing by which claims objections should be brought. It provides, in relevant part, "A request for an extension of the time to object to the allowance of a claim must be brought by motion filed before the expiration of the time to object."

23.     The Plan Administrator has initiated hundreds of Causes of Action in an effort to
bring additional monies into the estates and has objected to almost two thousand Administrative
and Priority Class Claims (including those made in connection with the Preference Actions and
the Turnover Actions).

24.     Given all of the Plan Administrator's duties and responsibilities, the progress he
and his Professionals have made and the magnitude of the asserted Administrative and Priority
Class Claims, the Plan Administrator needs additional time to evaluate and object to Claims. The
Plan Administrator is working through the process of evaluating the Administrative and Priority
Class Claims for the purpose of allowance or objection, but perhaps more importantly, the Plan
Administrator needs to determine the realistic pool of Allowed Administrative Claims before he
can determine if the funding of the Combined Reserve is sufficient to allow for payment to
holders of Allowed Administrative Claims (as they become Allowed), while continuing to
reserve for unresolved Administrative Claims given the disparity between the funding in the
Combined Reserve and the asserted Administrative Claims.

25.     As has been noted previously, absent a significant reduction in the asserted
Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the
distribution Waterfall Recovery set forth in the Plan, it is unlikely that Allowed Administrative
Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims (Class 1) or Allowed Other
Secured Claims (Class 2) will be paid in full. To the extent that the Plan Administrator is only
able to make a *pro rata* distribution on account of Allowed Administrative Claims, the Plan
Administrator will file a motion seeking appropriate relief to do so.

26.     The Plan Administrator submits that extending the Claims Objection Bar Date is
in the best interests of all stakeholders. The extension sought will afford the Plan Administrator

and his Professionals an opportunity to make more fully informed decisions concerning the resolution of pending Claims, in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

27.     Furthermore, extension of the Claims Objection Bar Date is not sought coercively for purposes of delay, nor will it affect or prejudice any claimant's substantive defense(s) to any objection.  Rather, the extension is intended to promote the efficient administration of these cases and the claims allowance process. Absent the requested extension of the Claims Objection Deadline, the Plan Administrator will either be precluded from challenging invalid, misclassified, and/or overstated Claims, or he will be forced to file hastily prepared protective objections without the benefit of a full review and analysis and will incur the cost of doing so.

28.     For the reasons set forth above, the Plan Administrator submits that extending the Claims Objection Bar Date as to Claims through and including the latter of (a) September 30, 2026, or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim – is necessary, prudent, and in the best interests of all stakeholders. This is the fifth requested extension.

## RESERVATION OF RIGHTS

29.     The Plan Administrator hereby reserves the right to seek further extension or extensions of the Claims Objection Bar Date.

## NOTICE

30.     Notice of this Motion is governed by paragraph 124 of the Confirmation Order, which provides:

**Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator, (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

31.    Pursuant to Paragraph 124, notice of the Motion and the hearing thereon was given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iii) all parties who are registered to receive electronic notice in these chapter 11 cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

WHEREFORE, the Plan Administrator respectfully requests that the Court enter the Proposed Order, extending the Claims Objection Bar Date as requested herein, and such other and further relief as is just and proper.

Dated:  February 19, 2026

*/s/ Edward A. Corma, Esq.*
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
 Email:    rfeinstein@pszjlaw.com
              bsandler@pszjlaw.com
              egray@pszjlaw.com
              ecorma@pszjlaw.com

*Counsel to the Plan Administrator*