| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Robert J. Feinstein, Esq. (admitted *pro hac vice*)<br>Bradford J. Sandler, Esq.<br>Erin Gray, Esq. (admitted *pro hac vice*)<br>Edward A. Corma, Esq.<br>PACHULSKI STANG ZIEHL & JONES LLP<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Telephone:  (212) 561-7700<br>Facsimile:  (212) 561-7777<br>Email:    rfeinstein@pszjlaw.com<br>        bsandler@pszjlaw.com<br>        egray@pszjlaw.com<br>        ecorma@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>                              Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

## PLAN ADMINISTRATOR'S POST CONFIRMATION STATUS REPORT
### (9/29/23 – 12/31/25)

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to

20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

"Debtors" or the "Wind-Down Debtors") files this *Post-Confirmation Status Report* for the period September 29, 2023 through December 31, 2025 (the "Reporting Period").[3]

1. On April 23, 2023 (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

2. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").

3. During the chapter 11 cases and pursuant to the Plan, all of the Wind-Down Debtors' Assets are being liquidated (or have been liquidated). Before the Effective Date, the Debtors sold the Bed Bath & Beyond, buybuy Baby and Harmon brands and related intellectual property (including the right to use those names in connection with the buyers' businesses). Any post-confirmation operations associated with the above names are unrelated to the Wind-Down Debtors and will not affect recoveries to creditors under the Plan.

4. Pursuant to the Plan, all securities were cancelled (e.g., common stock, warrants, etc.). Plan, Arts. III.B.9, IV.D, and VII.B; Confirmation Order, ¶ 98.  Holders of Interests (e.g., any form of equity, including, without limitation, common stock) are not entitled to any recovery. Plan, Article III.B.9(b) ("Each Allowed Interest in BBB shall be canceled, released and extinguished, and will be of no further force and effect, and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests.").

---

[3] Capitalized terms that are not defined herein have the definitions given to them in the Plan.

5.    On September 29, 2023, the effective date of the Plan occurred (the "Effective Date") [Docket No. 2311].

6.    On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, liquidating the Assets of the estates, prosecuting Causes of Action, resolving Claims, performing claims reconciliation, and objecting to Claims. (Plan, Article VII).

7.    Since his appointment, the Plan Administrator (with the assistance of his staff and Professionals) has, among other things: (i) reconciled, settled and/or objected to thousands of Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"); (ii) recovered and collected significant value related to the Debtors' remaining Assets, such as reserves held by credit card companies, excess collateral held by insurance companies, prepayments held by vendors and refunds owed by various federal, state and local taxing authorities; (iii) concluded Asset sales; (iv) investigated, filed, prosecuted and/or settled over 250 Causes of Action; (v) negotiated extensively with taxing authorities over the amounts and priority of alleged tax claims, resolving many of those claims; (vi) responded to a plethora of motions filed by parties in interest in the bankruptcy court seeking, *inter alia*, Allowance of Claims and relief from the automatic stay; (vii) prepared and filed Post Confirmation Operating Reports; (viii) prepared and filed all required federal, state and local tax returns; and (ix) made distributions on account of Allowed DIP Claims (Class 3) and Allowed FILO Claims (Class 4), and certain Allowed Secured Claims (Class 2) (the Allowed Texas Tax Claims). The Plan Administrator continues to investigate, liquidate and collect Assets, pursue additional recovery via Causes of Action and reconcile Claims.

8.    For informational purposes, a brief summary of the Wind-Down Debtors' estates is set forth below.

**A.    Collections**

9.    Starting on the Effective Date with unrestricted cash of approximately $11 million, the Plan Administrator has collected an additional $187 million through the end of the Reporting Period. Attached as **Exhibit A** is a table summarizing collections (a) for the current quarter (10/1/2025-12/31/2025) (the "Current Quarter") and (b) from the Effective Date through the end of the Reporting Period.

**B.    Payments from Unrestricted Cash and Collections**

10.    From the unrestricted cash and collections, the Plan Administrator has made distributions on account of Allowed Claims and Plan Administrator Expenses totaling $197 million through the Reporting Period. Attached as **Exhibit B** is a table summarizing payments (a) for the Current Quarter and (b) from the Effective Date through the end of the Reporting Period.

**C.    Claims Against the Estates**

11.    As of April 29, 2026, creditors have filed 20,988 proofs of claim against the Debtors ("Total Claims"). To date, the Plan Administrator has filed 31 rounds of omnibus objections to Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"). Through his efforts (including negotiated resolutions), 1,952 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims. There are approximately 843 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

12.     While the Plan Administrator and his Professionals have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of April 29, 2026 (excluding the Allowed Claims of the Debtors' pre-petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[4]

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 04/29/26[5] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $29.0 million |
| Priority Claims (11 U.S.C. § 507) (Including Priority Tax Claims and Other Priority Claims) | $348.5 million | $116.1 million |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $48.1 million |
| General Unsecured Claims | $4.2 billion | $2.7 billion |

## D.   Payments from the Combined Reserve

13.     The Plan provides for a Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2). The Combined Reserve totaled $10 million when it was turned over to the Plan Administrator on the Effective Date.  Pursuant to the Confirmation Order, $2.8 million of the Combined Reserve was subject to a set aside for the Texas Taxing Authorities. During the Reporting Period, the Plan

---

[4] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

[5] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00.

Administrator paid $1.6 million to the Texas Taxing Authorities from the Combined Reserve on account of their Allowed Class 2 Claims. Currently, there is $8.6 million in the Combined Reserve.

14.     As set forth above, the amount of alleged Administrative and Priority Class Claims greatly exceeds the amount of the Combined Reserve. Accordingly, in the Plan Administrator's business judgment, until he knows the universe of Allowed Administrative and Priority Class Claims, he is not paying any of them to ensure that each Holder of an Allowed Administrative and Priority Class Claim eventually receives its appropriate pro rata share of the Combined Reserve.

15.     Numerous provisions of the Plan and Plan Documents state that the Plan Administrator's expenses will be paid from the Combined Reserve.[6]  Others state that the Plan Administrator's compensation and/or expenses will be paid from the "Wind Down Debtors' assets".[7]  To date, the DIP Lenders and the FILO Lenders have permitted the Plan Administrator's

---

[6] *See* Plan, Article VII.B.(" The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors, and the Plan Administrator as set forth in the Plan and Wind-Down Budget; provided that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes."). *See also* Plan, Article VII.A.4 ("Plan Administrator Expenses. All costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Wind-Down Debtors, or in any manner connected, incidental or related thereto, in effecting distributions from the Wind-Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid from the Combined Reserve as set forth in the Plan Supplement."); Plan, Article VII.A.3 ("Compensation of the Plan Administrator. The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Combined Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Combined Reserve if such amounts relate to any actions taken hereunder."); Plan, Article VII.A.2 ("Retention of Professionals. The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors from the Combined Reserve upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Combined Reserve.").

[7] The Plan Administrator Agreement [Plan Supplement [Docket 2161]] provides that the "The Plan Administrator shall be compensated from the Wind-Down Debtors' assets. . ." Docket 2161-1 at § 2.13. *See also* Plan, Article I.A.109 ("'*Plan Administrator*' means the person, selected by the DIP Agent, the FILO Agent, and the Creditors' Committee, and reasonably acceptable to the Debtors, to administer the Wind-Down Debtors. For the avoidance of doubt, all costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan

---

expenses and compensation to be paid from the disposition of the Wind Down Debtors' Assets that are subject to their liens.

**E.**      <u>**Future Distributions on Account of Allowed Claims**</u>

16.      It is important to note how the Plan works with respect to payments on account of Allowed Claims. First, pursuant to the Plan, unless a Court order has been entered Allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (as may be extended from time to time by the Bankruptcy Court) has passed. Plan, Article I.A, at § 14.  Pursuant to the Plan and subsequent orders of this Court, the Plan Administrator currently has until September 30, 2026 to object to Claims (the "<u>Claim Objection Bar Date</u>"). Plan, Article I.A, at § 28. The Plan Administrator intends to move the Court for an additional extension(s) of the Claims Objection Bar Date.

17.      The Plan contemplates payment of Allowed Administrative Claims on the Effective Date (if Allowed at that time) or as they become Allowed. Plan, Article II.A. Allowed Priority Tax Claims may be paid in regular monthly installments over 5 years in accordance with 11 U.S.C. § 1129(a)(9)(c)[8].  Plan, Article II.A. However, payment on account of Allowed Administrative Claims and Allowed Priority Tax Claims (as well as Allowed Other Priority Claims (Class 1), and Allowed Other Secured Claims (Class 2)) is limited to (a) first, the funds in the Combined

---

Administrator in the performance of the Plan Administrator's duties, shall be paid from the Wind Down Debtors' assets. The identity of the Plan Administrator shall be disclosed in the Plan Supplement.")

[8] Section 1129(a)(9) requires a plan to provide, "(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash— (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii)in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))." 11 U.S.C.§ 1129(a)(9)(c).

Reserve;[9] and (b) second, the availability of funds under the Plan's Sharing Mechanism in the Waterfall Recovery.

18. There is a mechanism (the "Sharing Mechanism") under the Plan that has the potential to increase the amount of funds available for distribution to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Other Allowed Priority Claims (Class 1) and Other Secured Claims (Class 2) as well as Allowed Class 6 General Unsecured Claims by allowing the Wind Down Debtors' estates to participate in certain percentage recoveries from Causes of Action which are deposited into a Shared Proceeds Pool.[10] The Sharing Mechanism, however, does not begin until the "Initial Sharing Threshold" is met. The Initial Sharing Threshold is "the point in time at which the combined aggregate recoveries to Holders of Allowed Claims in Classes 3 and 4 exceeds $515,000,000.00 *plus* interest and fees on account of such Claims." Plan, Articles I.A(81) & IV.B.

19. Prior to the Effective Date, the Plan Administrator understands that the Debtors paid $227 million to the Holders of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4) including interest and fees of $18 million. From the Effective Date through the end of the Reporting Period, the Plan Administrator has made payments totaling $161 million on account of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4) including

---

[9] The Plan provides, "The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date." Plan, Article VIII.B. The Plan further provides, "Any contrary provision hereof notwithstanding, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (i) the Combined Reserve or WARN Reserve as applicable, and (ii) Distributable Proceeds to the extent available from the Waterfall Recovery." Plan, Article IV.C. The WARN Reserve was $0.00 prior to the Effective Date; therefore, no WARN Reserve was turned over to the Plan Administrator.

[10] The "'*Shared Proceeds Pool*' means all funds allocated to the Debtors or the applicable Successor Entity, as applicable, in accordance with the Sharing Mechanism." Plan, Article I.A(143).

interest and fees of $31 million. Accordingly, the amount paid on account of the Allowed DIP

Claims and the Allowed FILO Claims including interest and fees is $388 million, and the Initial

Sharing Threshold has not been met, meaning there are currently $0.00 Distributable Proceeds in

the Shared Proceeds Pool.[11]

20.     The Plan Administrator will provide another status report after the close of the first

quarter of 2026 (January 1, 2026 – March 31, 2026).

Dated: May 6, 2026

*/s/ Bradford J. Sandler*

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
 1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:    rfeinstein@pszjlaw.com
          bsandler@pszjlaw.com
          egray@pszjlaw.com
          ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

---

[11]"*Distributable Proceeds*" means "subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve." *See* Plan, Article I.A, at § 58.

**EXHIBIT A**

| COLLECTIONS | | |
|---|---|---|
| Source | Collections Current Quarter (10/01/25-12/31/25) | Collections From Effective Date (9/29/23-12/31/25) |
| Asset Sales | $0 | $10,460,000 |
| Causes of Action (§547)[12] | $1,158,000 | $27,975,000 |
| Causes of Action (§542)[13] | $0 | $0 |
| Causes of Action (Other)[14] | $0 | $33,052,000 |
| Credit Cards: Receivables & Reserve Returns | $1,200,000 | $19,543,000 |
| Insurance: Bond & Collateral Returns | $0 | $41,948,000 |
| Interest | $54,000 | $2,246,000 |
| Other[15] | $181,000 | $15,852,000 |
| Tax: Refunds & Overpayments | $1,106,000 | $19,747,000 |
| Vendors: Rebates and Refunds | $429,000 | $16,515,000 |
| | | |
| **Total** | **$4,128,000** | **$187,339,000** |

---

[12] As of February 6 , 2026, the Plan Administrator has filed 260 adversary proceedings in this Court pursuant Bankruptcy Code sections 547 that seek to recover preferential payments (the "Preference Actions"), 51 of which remain active. Collections amount is net of attorneys' fees and costs. The Plan Administrator has settled numerous preference claims against recipients of preferential payments without formal litigation.

[13] As of February 6 , 2026, the Plan Administrator has filed 18 adversary proceedings in this Court pursuant Bankruptcy Code sections 542 that seek to recover tax refunds, overpayments, collateral and/or other cash assets the Plan Administrator contends the defendant is holding (the "Turnover Actions") (and some of which also object to the defendant's claims), 10 of which remain active.

[14] The Plan Administrator has also initiated (and/or continued to prosecute) the following additional Causes of Action outside of this Court which are still pending: (1) *20230930-DK-Butterfly-1, Inc., v. HBC Investments LLC et al*, Case No. 24-cv-3370 (S.D.N.Y. May 2, 2024); (2) *20230930-DK-Butterfly-1, Inc. v. Ryan Cohen et al.* (S.D.N.Y. August 1, 2024); (3) *Bed Bath & Beyond Inc., et al v. Anthem, Inc., f/k/a WellPoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, et al.*, Case No. 2:22-cv-01256-SGC (N.D. Ala. Sep. 27, 2022); (4) *Bed Bath & Beyond Inc. v. Orient Overseas Container Line Limited and OOCL (Europe) Limited*, Case No. 23-02 (Federal Maritime Commission, April 27, 2023); (5) *20230930-DK-Butterfly-1, Inc. v. BAL Container Line Co., Limited*, Case No. 25-02 (Federal Maritime Commission, Jan.7, 2025); (6) *20230930-DK-BUTTERFLY-1, Inc. v. Evergreen Marine Corp. (Taiwan) Ltd., et al*, Case No. 24-12 (Federal Maritime Commission, Feb. 21, 2021); (7) *Bed Bath & Beyond Inc. v. Yang Ming Marine Transport Corp.*, Case No. 23-10 (Federal Maritime Commission, September 7, 2023), and (8) *In re Insulin Pricing Litigation (RAD SUB-TRUST A et al v. Eli Lilly & Co., et al*, Case No. 2:246-cv-00456 (D.N.J. Jan. 14, 2026). The Plan Administrator also initiated (and/or continued to prosecute) the following additional Causes of Action outside of this Court which are now settled: (1) *20230930-DK-Butterfly-1, Inc. v. MSC Mediterranean Shipping Company SA*, Case No. 23-12 (Federal Maritime Commission, Nov. 28, 2023); (2) *20230930-DK-Butterfly-1, Inc. v. Edelman et al.*, Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024). The Plan Administrator has settled claims against numerous shippers without formal litigation, including Ocean Network Express (ONE), Hapag Lloyd, and COSCO Shipping Lines.

[15] Includes, among other things, recoveries of Canadian refunds, utility deposits, restitution payments and unclaimed property.

**EXHIBIT B**

| PAYMENTS FROM UNRESTRICTED CASH & COLLECTIONS | | | |
|---|---|---|---|
| **Claimants** | **Plan Class** | **Payments Current Quarter (10/1/25-12/31/25)** | **Payments From Effective Date (9/29/23-12/31/25)** |
| Administrative & Priority Class Claims | | | |
| Administrative Claims | Unclassified | $0 | $30,000 |
| Other Priority Claims | 1 | $0 | $0 |
| Other Secured Claims | 2 | $0 | $0 |
| DIP Claims & FILO Claims | 3 & 4 | $2,949,000 | $161,533,000 |
| **Subtotal** | | **$2,949,000** | **$161,563,000** |
| Plan Administrator Expenses | | | |
| Bank Fees | N/A | $,2,000 | $1,771,000 |
| Bankruptcy Counsel | N/A | $649,000 | $5,159,000 |
| Claims Agent Fees | N/A | $52,000 | $1,378,000 |
| Contingent, Legal and Consulting Fees | N/A | $83,000 | $3,953,000 |
| Lease Deposit Return | N/A | $0 | $947,000 |
| Other | N/A | $29,000 | $750,000 |
| Outstanding Checks & Payments Turned Over to Plan Administrator | N/A | $0 | $3,433,000 |
| Plan Administrator & Staff Expenses | N/A | $776,000 | $7,088,000 |
| Tax Compliance Fees | N/A | $86,000 | $2,105,000 |
| Tax Counsel | N/A | $366,000 | $1,389,000 |
| Tax Payments Canada & Other | N/A | $0 | $1,244,000 |
| US Trustee Fees | N/A | $57,000 | $2,079,000 |
| Workers Compensation Funding | N/A | $0 | $4,350,000 |
| **Subtotal** | | **$2,100,000** | **$35,646,000** |
| **Total** | | **$5,049,000** | **$197,209,000** |