**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
egray@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** **September 15, 2026**<br>**Hearing Time:** **10:00 a.m. (ET)**<br>**Responses Due:** **September 8, 2026** |

**PLAN ADMINISTRATOR'S SIXTH MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS**

Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors" or the "Wind-Down Debtors"), moves this Court for the entry of an order,

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1(c) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), extending the period within which the Plan Administrator may object to Claims of all priority levels (including but not limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for payment and/or motions on the docket - Priority Claims (including but not limited to Priority Tax Claims and Other Priority Claims) and/or General Unsecured Claims) and Interests to the latter of: (a) March 31, 2027 or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim.[3] In support of this Motion, the Plan Administrator respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested are Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c).

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A. General Background

3. On April 23, 2023, (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below).

4. Pursuant to the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order"), the Court set (a) July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"); and (b) October 20, 2023, as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"). Pursuant to the Plan and the Bar Date Order, October 13, 2023, was the last possible date by which creditors asserting claims entitled to administrative priority pursuant to Bankruptcy Code section 503 were required to file requests for payment ("Administrative Claims Bar Date").[5] Professional Fee Claims were required to be filed by October 29, 2023.

---

[4] The facts in this Motion are supported by the Declaration of Michael Goldberg (the "Goldberg Declaration"), which is attached hereto as **Exhibit B**.

[5] Bar Date Order, ¶ 6; Plan, Article I.A, at § 12. The Confirmation Order further provides, "Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date

5. On September 14, 2023 (the "Confirmation Date"), the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2172] (the "Confirmation Order"), confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (the "Plan").

6. During the chapter 11 cases and pursuant to the Plan, all of the Wind-Down Debtors' Assets have been (or are being) liquidated. Before the Effective Date, the Debtors sold the Bed Bath & Beyond, buybuy Baby, and Harmon brands and related intellectual property (including the right to use those names in connection with the buyers' businesses). Any post-confirmation operations associated with the above names are unrelated to the Wind-Down Debtors and will not affect recoveries to creditors under the Plan.

7. Pursuant to the Plan, all securities were cancelled (e.g., common stock, warrants, etc.). (Plan, Arts. III.B.9, IV.D, VII.B; Confirmation Order, ¶ 98). Holders of Interests (e.g., any form of equity, including, without limitation, common stock) are not entitled to any recovery. (Plan, Article III.B.9(b) ("Each Allowed Interest in BBB shall be canceled, released and extinguished, and will be of no further force and effect, and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests.")).

8. On September 29, 2023, the effective date of the Plan occurred (the "Effective Date") [Docket No. 2311].

---

shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date." Confirmation Order, ¶ 123.

## B. The Plan Administrator's Operations

9. On the Effective Date, the Plan Administrator became the sole representative of the Wind-Down Debtors and assumed responsibility for, *inter alia*, liquidating the Assets of the estates, prosecuting Causes of Action, resolving Claims, performing claims reconciliation, and objecting to Claims. (Plan, Arts. VII & IV.B).

10. Since his appointment, the Plan Administrator (with the assistance of his staff and Professionals) has, among other things: (i) reconciled, settled and/or objected to thousands of Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"); (ii) recovered and collected significant value related to the Debtors' remaining Assets, such as reserves held by credit card companies, excess collateral held by insurance companies, prepayments held by vendors and refunds owed by various federal, state and local taxing authorities; (iii) concluded Asset sales; (iv) investigated, filed, prosecuted and/or settled Causes of Action; (v) negotiated extensively with taxing authorities over the amounts and priority of alleged tax claims, resolving many of those claims; (vi) responded to a plethora of motions filed by parties in interest in the bankruptcy court seeking, *inter alia*, Allowance of Claims and relief from the automatic stay; (vii) prepared and filed Post Confirmation Operating Reports; (viii) prepared and filed all required federal, state and local tax returns; and (ix) made distributions on account of Allowed DIP Claims (Class 3) and Allowed FILO Claims (Class 4), and certain Allowed Secured Claims (Class 2) (i.e., the Allowed Texas Tax Claims).

11. More specifically, with respect to Causes of Action (which remain the primary future source of recoveries under the Plan), as of August 18, 2026, the Plan Administrator has (i) filed 260 adversary proceedings pursuant Bankruptcy Code sections 547 that seek to recover

preferential payments (the "Preference Actions"), 26 of which remain active; and (ii) 18 adversary proceedings pursuant Bankruptcy Code sections 542 that seek to recover tax refunds, overpayments, collateral and/or other cash assets the Plan Administrator contends the defendant is holding (the "Turnover Actions") (and some of which also object to the defendant's claims), 7 of which remain active.

12. The Plan Administrator has also initiated (and/or continued to prosecute) the following additional Causes of Action outside of this Court which are still pending: (1) *20230930-DK-Butterfly-1, Inc. v. Ryan Cohen et al*. (S.D.N.Y. August 1, 2024); (2) *Bed Bath & Beyond Inc., et al v. Anthem, Inc., f/k/a WellPoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, et al*., Case No. 2:22-cv-01256-SGC (N.D. Ala. Sep. 27, 2022); (3*) Bed Bath & Beyond Inc. v. Orient Overseas Container Line Limited and OOCL (Europe) Limited*, Case No. 23-02 (Federal Maritime Commission, April 27, 2023) (on appeal); (4) *20230930-DK-Butterfly-1, Inc. v. BAL Container Line Co., Limited*, Case No. 25-02 (Federal Maritime Commission, Jan.7, 2025); (5) *20230930-DK-BUTTERFLY-1, Inc. v. Evergreen Marine Corp. (Taiwan) Ltd., et al*, Case No. 24-12 (Federal Maritime Commission, Feb. 21, 2021); (6) *Bed Bath & Beyond Inc. v. Yang Ming Marine Transport Corp.*, Case No. 23-10 (Federal Maritime Commission, September 7, 2023), (6) *In re Insulin Pricing Litigation* (*RAD SUB-TRUST A et al v. Eli Lilly & Co., et al,* Case No. 2:246-cv-00456 (D.N.J. Jan. 14, 2026), and (7) *Bed Bath & Beyond Inc v* KEURIG GREEN MOUNTAIN, INC., Case No. 1:26-cv-04074 (S.D. N.Y., May 15, 2026).

13. The Plan Administrator also initiated (and/or continued to prosecute) the following additional Causes of Action outside of this Court which are now settled: (1) *20230930-DK-Butterfly-1, Inc. v. MSC Mediterranean Shipping Company SA*, Case No. 23-12 (Federal

Maritime Commission, Nov. 28, 2023); (2) *20230930-DK-Butterfly-1, Inc. v. Edelman et al*., Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024). The Plan Administrator has also settled claims against numerous shippers without formal litigation, including Ocean Network Express (ONE), Hapag Lloyd, and COSCO Shipping Lines. The Plan Administrator continues to investigate potential Causes of Action and will continue to commence cases where he believes the estates may benefit.

**C. Collections**

14. Starting on the Effective Date with unrestricted cash of approximately $11 million, the Plan Administrator has collected an additional $220 million through June 30, 2026. Attached as **Exhibit C** is a table summarizing collections from the Effective Date through June 30, 2026.

**D. Payments from Unrestricted Cash and Collections**

15. From the unrestricted cash and collections, the Plan Administrator has made distributions on account of Allowed Claims and Plan Administrator Expenses totaling $228 million through June 30, 2026. Attached as **Exhibit D** is a table summarizing payments from the Effective Date through June 30, 2026.

**E. Claims Asserted Against the Estates**

16. Pursuant to the Plan, unless a Court order has been entered Allowing it, no Claim is deemed to be Allowed until the Claims Objection Bar Date (along with any bankruptcy court approved extension thereof) has passed. (Plan, Article I.A, at § 14.)

17. Pursuant to the Plan, the Plan Administrator originally had until March 27, 2024 to object to Claims (the "Claim Objection Bar Date").[6] The current Claims Objection Bar Date is September 30, 2026.[7]

18. As of August 1, 2026, creditors have filed 21,041 proofs of claim against the Debtors ("Total Claims"). To date, the Plan Administrator has filed 34 rounds of omnibus objections to Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"). Through his efforts (including negotiated resolutions), 1981 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims. There are approximately 832 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

19. While the Plan Administrator and his Professionals have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of August 1, 2026 (excluding the Allowed Claims of the Debtors' pre-

---

[6] Pursuant to the Plan, the "*Claims Objection Bar Date* means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors)." Plan, Article I.A, at § 28.

[7] Pursuant to an order entered on March 19, 2024 [Docket No. 2933], the Court extended the Claims Objection Bar Date to September 30, 2024. On September 29, 2024, the Court entered the *Second Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 3541] extending the Claims Objection Bar Date from September 30, 2024 through March 31, 2025. On March 26, 2025, the Court entered the *Third Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 3963] extending the Claims Objection Bar Date from March 31, 2025 through September 29, 2025. On September 25, 2025, the Court entered the *Fourth Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 4337] extending the Claims Objection Bar Date from September 29, 2025 through March 30, 2026. On March 19, 2026, the Court entered the *Fifth Order Extending the Period Within Which the Plan Administrator May Object to Claims* [Docket No. 4634] (the "Fifth Extension Order") extending the Claims Objection Bar Date from March 30, 2026 through and including September 30, 2026 (the "Fifth Extension Period"). The Fifth Extension Order further provided, "This Order shall be without prejudice to the rights of the Plan Administrator to seek further extensions of the Claims Objection Bar Date."

petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[8]

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 08/01/26[9] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $21.6 million |
| Priority Claims (11 U.S.C. § 507) (Including Priority Tax Claims and Other Priority Claims) | $348.5 million | $115.0 million |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $26.3 million |
| General Unsecured Claims | $4.2 billion | $2.7 billion |

**F. <u>Payments from the Combined Reserve</u>**

20. The Plan provides for a Combined Reserve, which is the only guaranteed source of funding for Allowed Administrative Claims (unclassified), Allowed Priority Tax Claims (unclassified), Allowed Other Priority Claims (Class 1) and Allowed Other Secured Claims (Class 2). The Combined Reserve totaled $10 million when it was turned over to the Plan Administrator on the Effective Date. Pursuant to the Confirmation Order, $2.8 million of the Combined Reserve was subject to a set aside for the Texas Taxing Authorities. The Plan Administrator has paid $1.6 million to the Texas Taxing Authorities from the Combined Reserve on account of their Allowed Class 2 Claims. Currently, there is $8.7 million in the Combined Reserve.

21. As set forth above, the amount of alleged Administrative and Priority Class Claims greatly exceeds the amount of the Combined Reserve. Accordingly, in the Plan Administrator's business judgment, until he knows the universe of Allowed Administrative and

[8] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

[9] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00. This figure does not include an additional $3.2 million in requests for payments of administrative claims that are on the docket (as opposed to being filed as proofs of claim).

Priority Class Claims, he is not paying any of them to ensure that each Holder of an Allowed Administrative and Priority Class Claim eventually receives its appropriate pro rata share of the Combined Reserve.

22. Numerous provisions of the Plan and Plan Documents state that the Plan Administrator's expenses will be paid from the Combined Reserve.[10] Others state that the Plan Administrator's compensation and/or expenses will be paid from the "Wind Down Debtors' assets".[11] To date, the DIP Lenders and the FILO Lenders have permitted the Plan Administrator's expenses and compensation to be paid from the disposition of the Wind Down Debtors' Assets that are subject to their liens.

[10] *See* Plan, Article VII.B.("The Combined Reserve shall also be used by the Plan Administrator to satisfy the expenses of Wind-Down Debtors, and the Plan Administrator as set forth in the Plan and Wind-Down Budget; provided that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Combined Reserve to the extent set forth in the Wind-Down Budget. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes."). *See also* Plan, Article VII.A.4 ("Plan Administrator Expenses. All costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Wind-Down Debtors, or in any manner connected, incidental or related thereto, in effecting distributions from the Wind-Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid from the Combined Reserve as set forth in the Plan Supplement."); Plan, Article VII.A.3 ("Compensation of the Plan Administrator. The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Combined Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Combined Reserve if such amounts relate to any actions taken hereunder."); Plan, Article VII.A.2 ("Retention of Professionals. The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors from the Combined Reserve upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Combined Reserve.").

[11] The Plan Administrator Agreement [Plan Supplement [Docket 2161]] provides that the "The Plan Administrator shall be compensated from the Wind-Down Debtors' assets. . ." Docket 2161-1 at § 2.13. *See also* Plan, Article I.A.109 ("'*Plan Administrator*' means the person, selected by the DIP Agent, the FILO Agent, and the Creditors' Committee, and reasonably acceptable to the Debtors, to administer the Wind-Down Debtors. For the avoidance of doubt, all costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Wind Down Debtors' assets. The identity of the Plan Administrator shall be disclosed in the Plan Supplement.")

## G. Future Distributions on Account of Allowed Claims

23. The Plan contemplates payment of Allowed Administrative Claims on the Effective Date (if Allowed at that time) or as they become Allowed. Plan, Article II.A. Allowed Priority Tax Claims may be paid in regular monthly installments over 5 years in accordance with 11 U.S.C. § 1129(a)(9)(c).[12] Plan, Article II.A. However, payment on account of Allowed Administrative Claims and Allowed Priority Tax Claims (as well as Allowed Other Priority Claims (Class 1), and Allowed Other Secured Claims (Class 2)) is limited to (a) first, the funds in the Combined Reserve;[13]and (b) second, the availability of funds under the Plan's Sharing Mechanism in the Waterfall Recovery.

24. There is a mechanism (the "Sharing Mechanism") under the Plan that has the potential to increase the amount of funds available for distribution to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Other Allowed Priority Claims (Class 1) and Other Secured Claims (Class 2) as well as Allowed Class 6 General Unsecured Claims by allowing the Wind Down Debtors' estates to participate in certain percentage recoveries from

[8] Section 1129(a)(9) requires a plan to provide, "(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash— (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii)in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))." 11 U.S.C.§ 1129(a)(9)(c).

[13] The Plan provides, "The Combined Reserve shall be used to pay Holders of all Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims their respective Pro Rata share of the Combined Reserve, to the extent that such Other Priority Claims, Priority Tax Claims, Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims have not been paid in full on or before the Effective Date." Plan, Article VIII.B. The Plan further provides, "Any contrary provision hereof notwithstanding, Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims (other than Professional Fee Claims or Allowed DIP Claims), and Allowed Other Secured Claims shall, unless otherwise provided for in the DIP Budget, be paid exclusively from (i) the Combined Reserve or WARN Reserve as applicable, and (ii) Distributable Proceeds to the extent available from the Waterfall Recovery." Plan, Article IV.C. The WARN Reserve was $0.00 prior to the Effective Date; therefore, no WARN Reserve was turned over to the Plan Administrator.

Causes of Action which are deposited into a Shared Proceeds Pool.[14] The Sharing Mechanism, however, does not begin until the "Initial Sharing Threshold" is met. The Initial Sharing Threshold is "the point in time at which the combined aggregate recoveries to Holders of Allowed Claims in Classes 3 and 4 exceeds $515,000,000.00 *plus* interest and fees on account of such Claims." Plan, Articles I.A(81) & IV.B.

25. Prior to the Effective Date, the Plan Administrator understands that the Debtors paid $227 million to the Holders of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4) including interest and fees of $18 million. From the Effective Date through the end of the Reporting Period, the Plan Administrator has made payments totaling $188 million on account of the Allowed DIP Claims (Class 3) and the Allowed FILO Claims (Class 4) including interest and fees of $34 million. Accordingly, the amount paid on account of the Allowed DIP Claims and the Allowed FILO Claims including interest and fees is $415 million, and the Initial Sharing Threshold has not been met, meaning there are currently $0.00 Distributable Proceeds in the Shared Proceeds Pool.[15]

**<u>RELIEF REQUESTED</u>**

26. By this Motion, and pursuant to Bankruptcy Rule 9006(b)(1) and Local Rule 3007-1(c),[16] the Plan Administrator seeks an extension of the Claims Objection Bar Date to the latter of: (a) March 31, 2027 or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on

[14] The "'*Shared Proceeds Pool'* means all funds allocated to the Debtors or the applicable Successor Entity, as applicable, in accordance with the Sharing Mechanism." Plan, Article I.A(143).

[15]"*Distributable Proceeds*" means "subject only to funding the Professional Fee Escrow Account on the Effective Date, all (i) Cash, (ii) Cash proceeds generated from the use, sale, lease, liquidation or other disposition of Estate property, and (iii) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Wind Down Debtors, in each case excluding the Combined Reserve." *See* Plan, Article I.A, at § 58.

[16] Local Rule 3007-1 governs the timing by which claims objections should be brought. It provides, in relevant part, "A request for an extension of the time to object to the allowance of a claim must be brought by motion filed before the expiration of the time to object."

behalf of a holder of such Claim. The Plan Administrator further requests that the order approving this Motion be without prejudice to the rights of the Plan Administrator to seek further extension of the Claims Objection Bar Date.

**BASIS FOR RELIEF**

27. As discussed above, the Plan vests the discretion to object to Claims in the Plan Administrator. Bankruptcy Rule 9006(b) also makes clear that the Court may extend unexpired time periods with or without notice. Specifically, Rule 9006(b) states in relevant part that:

> (1) *In General* . . . when an act is required or allowed to be done at or within a specified period by [the Bankruptcy Rules] or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . .

Fed. R. Bankr. P. 9006(b)(1). The Claims Objection Bar Date has not expired as of the filing of the Motion; accordingly, the Court is authorized to grant the relief requested herein.

28. The Plan Administrator has initiated hundreds of Causes of Action in an effort to bring additional monies into the estates and has objected to almost two thousand Administrative and Priority Class Claims (including those made in connection with the Preference Actions and the Turnover Actions).

29. Given all of the Plan Administrator's duties and responsibilities, the progress he and his Professionals have made and the magnitude of the asserted Administrative and Priority Class Claims, the Plan Administrator needs additional time to evaluate and object to Claims. The Plan Administrator is working through the process of evaluating the Administrative and Priority Class Claims for the purpose of allowance or objection, but perhaps more importantly, the Plan Administrator needs to determine the realistic pool of Allowed Administrative Claims before he can determine if the funding of the Combined Reserve is sufficient to allow for payment to

holders of Allowed Administrative Claims (as they become Allowed), while continuing to reserve for unresolved Administrative Claims given the disparity between the funding in the Combined Reserve and the asserted Administrative Claims.

30. As has been noted previously, absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution Waterfall Recovery set forth in the Plan, it is unlikely that Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims (Class 1) or Allowed Other Secured Claims (Class 2) will be paid in full. To the extent that the Plan Administrator is only able to make a *pro rata* distribution on account of Allowed Administrative Claims, the Plan Administrator will file a motion seeking appropriate relief to do so.

31. The Plan Administrator submits that extending the Claims Objection Bar Date is in the best interests of all stakeholders. The extension sought will afford the Plan Administrator and his Professionals an opportunity to make more fully informed decisions concerning the resolution of pending Claims, in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

32. Furthermore, extension of the Claims Objection Bar Date is not sought coercively for purposes of delay, nor will it affect or prejudice any claimant's substantive defense(s) to any objection. Rather, the extension is intended to promote the efficient administration of these cases and the claims allowance process. Absent the requested extension of the Claims Objection Deadline, the Plan Administrator will either be precluded from challenging invalid, misclassified, and/or overstated Claims, or he will be forced to file hastily prepared protective objections without the benefit of a full review and analysis and will incur the cost of doing so.

33. For the reasons set forth above, the Plan Administrator submits that extending the Claims Objection Bar Date as to Claims through and including the latter of (a) March 31, 2027, or (b) one hundred eighty (180) days following the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim – is necessary, prudent, and in the best interests of all stakeholders. This is the sixth requested extension.

## RESERVATION OF RIGHTS

34. The Plan Administrator hereby reserves the right to seek further extension or extensions of the Claims Objection Bar Date.

## NOTICE

35. Notice of this Motion is governed by paragraph 124 of the Confirmation Order, which provides:

> **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator, (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

36. Pursuant to Paragraph 124, notice of the Motion and the hearing thereon was given to (i) the U.S. Trustee; (ii) all parties who filed requests for notice under Bankruptcy Rule 2002 after the Effective Date, and (iii) all parties who are registered to receive electronic notice in these chapter 11 cases. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

WHEREFORE, the Plan Administrator respectfully requests that the Court enter the Proposed Order, extending the Claims Objection Bar Date as requested herein, and such other and further relief as is just and proper.

Dated: August 21, 2026

*/s/ Edward A. Corma, Esq.*
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
egray@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Erin Gray, Esq. (admitted *pro hac vice*)
Edward A. Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
egray@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**SIXTH ORDER EXTENDING THE PERIOD WITHIN WHICH**
**THE PLAN ADMINISTRATOR MAY OBJECT TO CLAIMS**

The relief set forth on the following pages, numbered two (2) through and including three (3), is hereby **ORDERED**:

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

Upon consideration of the *Plan Administrator's Sixth Motion for Entry of an Order Extending the Period to Object to Claims* (the "Motion") [Docket No ___] filed by Michael Goldberg, solely in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and affiliated debtors (the "Debtors"), and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice need be provided [Doc. Nos. ____, ____]; and no objections to the Motion having been filed; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The time period within which the Plan Administrator may file objections to Claims of all priority levels – including but not limited to all Secured Claims, Administrative Claims (whether filed as proofs of claims or as requests for payment and/or motions on the docket), Priority Claims (including but not limited to Priority Tax Claims and Other Priority Claims) and/or General Unsecured Claims and Interests is extended through and including the later of (a) March 31, 2027, or (b) one hundred eighty (180) days following the date that a Proof

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim (the "Claims Objection Bar Date").

3. This Order shall be without prejudice to the rights of the Plan Administrator to seek further extensions of the Claims Objection Bar Date.

4. This Court shall retain jurisdiction to interpret and enforce the provisions of this Order in all respects and further to hear and determine all matters arising from the construction and implementation of this Order.

# EXHIBIT B

## Declaration

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Robert J. Feinstein, Esq. (admitted *pro hac vice*)<br>Bradford J. Sandler, Esq.<br>Erin Gray, Esq. (admitted *pro hac vice*)<br>Edward A. Corma, Esq.<br>PACHULSKI STANG ZIEHL & JONES LLP<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>Email: rfeinstein@pszjlaw.com<br>bsandler@pszjlaw.com<br>egray@pszjlaw.com<br>ecorma@pszjlaw.com<br><br>*Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |

**DECLARATION OF PLAN ADMINISTRATOR MICHAEL GOLDBERG IN SUPPORT OF SIXTH MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD TO OBJECT TO CLAIMS**

Pursuant to 28 U.S.C. § 1746, I, Michael Goldberg, under penalty of perjury, declare as follows:

1. I am the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[2] and 73 affiliated debtors (the "Debtors" or the "Wind-Down Debtors")). I give this

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtor's proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc*., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

declaration in support of the *Sixth Motion for Entry of Order Extending Time to Object to Claims* (the "Motion"). Pursuant to the Motion, I seek entry of an order extending the time to object to Claims of all priority levels (including but not limited to all Secured Claims, Administrative Claims - whether filed as proofs of claims or as requests for payment and/or motions on the docket - Priority Claims and/or General Unsecured Claims) and Interests through and including March 31, 2027.[3]

2. Except as otherwise indicated, the statements in this declaration are based on: (a) my personal knowledge of the Debtors' business operations since my appointment as Plan Administrator; (b) my review of relevant documents including the Motion; (c) information provided to me by, or discussions with, members of my management team, other employees, or the Debtors' other advisors; and/or (d) my general experience and knowledge. I am authorized to submit this declaration. If called upon to testify, I can and will testify competently as to the facts set forth herein.

3. Since my appointment, I (with the assistance of my staff and Professionals) have, among other things: (i) reconciled, settled and/or objected to over 1,900 Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"); (ii) recovered and collected significant value related to the Debtors' remaining Assets, such as reserves held by credit card companies, excess collateral held by insurance companies, prepayments held by vendors and refunds owed by various federal, state and local taxing authorities; (iii) concluded Asset sales; (iv) investigated, filed, prosecuted and/or settled Causes of Action; (v) negotiated extensively with taxing authorities over the amounts and priority of

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or in the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and Its Debtor Affiliates* [Docket No. 2160] (as amended, the "Plan").

alleged tax claims, resolving many of those claims; (vi) responded to a plethora of motions filed by parties in interest in the bankruptcy court seeking, *inter alia*, Allowance of Claims and relief from the automatic stay; (vii) prepared and filed Post Confirmation Operating Reports; (viii) prepared and filed all required federal, state and local tax returns; and (ix) made distributions on account of Allowed DIP Claims (Class 3) and Allowed FILO Claims (Class 4), and certain Allowed Secured Claims (Class 2) (i.e., the Allowed Texas Tax Claims).

4. More specifically, with respect to Causes of Action (which remain the primary future source of recoveries under the Plan), as of August 18, 2026, my Professionals and I have (i) filed 260 adversary proceedings pursuant Bankruptcy Code sections 547 that seek to recover preferential payments (the "Preference Actions"), 26 of which remain active; and (ii) 18 adversary proceedings pursuant Bankruptcy Code sections 542 that seek to recover tax refunds, overpayments, collateral and/or other cash assets I contend the defendant is holding (the "Turnover Actions") (and some of which also object to the defendant's claims), 7 of which remain active.

5. My Professionals and I have also initiated (and/or continued to prosecute) the following additional Causes of Action outside of this Court which are still pending: (1) *20230930-DK-Butterfly-1, Inc. v. Ryan Cohen et al*. (S.D.N.Y. August 1, 2024); (2) *Bed Bath & Beyond Inc., et al v. Anthem, Inc., f/k/a WellPoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, et al*., Case No. 2:22-cv-01256-SGC (N.D. Ala. Sep. 27, 2022); (3*) Bed Bath & Beyond Inc. v. Orient Overseas Container Line Limited and OOCL (Europe) Limited*, Case No. 23-02 (Federal Maritime Commission, April 27, 2023) (on appeal); (4) *20230930-DK-Butterfly-1, Inc. v. BAL Container Line Co., Limited*, Case No. 25-02 (Federal Maritime Commission, Jan.7, 2025); (5) *20230930-DK-BUTTERFLY-1, Inc. v.*

*Evergreen Marine Corp. (Taiwan) Ltd., et al*, Case No. 24-12 (Federal Maritime Commission, Feb. 21, 2021); (6) *Bed Bath & Beyond Inc. v. Yang Ming Marine Transport Corp.*, Case No. 23-10 (Federal Maritime Commission, September 7, 2023), (6) *In re Insulin Pricing Litigation* (*RAD SUB-TRUST A et al v. Eli Lilly & Co., et al,* Case No. 2:246-cv-00456 (D.N.J. Jan. 14, 2026), and (7) *Bed Bath & Beyond Inc v* KEURIG GREEN MOUNTAIN, INC., Case No. 1:26-cv-04074 (S.D. N.Y., May 15, 2026).

6. My Professionals and I also initiated (and/or continued to prosecute) the following additional Causes of Action outside of this Court which are now settled: (1) *20230930-DK-Butterfly-1, Inc. v. MSC Mediterranean Shipping Company SA*, Case No. 23-12 (Federal Maritime Commission, Nov. 28, 2023); (2) *20230930-DK-Butterfly-1, Inc. v. Edelman et al.*, Case No. 652164/2024 (Sup.Ct. N.Y. York, April 26, 2024). I have also settled claims against numerous shippers without formal litigation, including Ocean Network Express (ONE), Hapag Lloyd, and COSCO Shipping Lines.

7. I continue to investigate potential Causes of Action and will continue to commence cases where I believe the estates may benefit.

8. Starting on the Effective Date with unrestricted cash of approximately $11 million, I have collected an additional $220 million through June 30, 2026. Attached as **Exhibit C** to the Motion is a table summarizing collections from the Effective Date through June 30, 2026.

9. From the unrestricted cash and collections, I have made distributions on account of Allowed Claims and Plan Administrator Expenses totaling approximately $228 million through June 30, 2026. Attached to the Motion as **Exhibit D** is a table summarizing payments from the Effective Date through June 30, 2026.

10. As of August 1, 2026, creditors have filed 21,041 proofs of claim against the Debtors ("Total Claims"). To date, my Professionals and I have filed 34 rounds of omnibus objections to Administrative Claims (unclassified), Priority Tax Claims (unclassified), Other Priority Claims (Class 1) and Other Secured Claims (Class 2) (collectively, the "Administrative and Priority Class Claims"). Through these efforts (including negotiated resolutions), 1981 Administrative and Priority Class Claims have been disallowed, expunged or reclassified as Class 6 General Unsecured Claims. There are approximately 832 additional Administrative and Priority Class Claims pending review, resolution and/or objection.

11. While my Professionals and I have concluded that the majority of the Asserted Administrative and Priority Class Claims are overstated and will be disallowed, significantly reduced, withdrawn and/or reclassified as Class 6 General Unsecured Claims, below is a summary of the outstanding Claims asserted against the Debtors as of the Effective Date and as of August 1, 2026 (excluding the Allowed Claims of the Debtors' pre-petition secured lenders (i.e., the Class 3 (Allowed DIP Claims) and Allowed Class 4 Claims (Allowed FILO Claims)):[4]

| Claim Type | Asserted Amounts as of 09/29/2023 | Current Asserted Amounts as of 08/01/26[5] |
|---|---|---|
| Administrative Claims (11 U.S.C. § 503) | $60.6 million | $21.6 million |
| Priority Claims (11 U.S.C. § 507) (Including Priority Tax Claims and Other Priority Claims) | $348.5 million | $115.0 million |
| Other Secured Claims (11 U.S.C. § 506) | $57.5 million | $26.3 million |
| General Unsecured Claims | $4.2 billion | $2.7 billion |

[4] All Claims figures were provided by the Debtors' Claims and Noticing Agent, Kroll.

[5] The "Current Asserted Amount" is the total amount claimed in that category as is asserted on the filed Proofs of Claim except: (a) the Current Asserted Amount of any Disallowed Claim is $0.00; (b) the Current Asserted Amount of any claim that has been Allowed is the Allowed Amount per order or stipulation, and (c) the Current Asserted Amount of any satisfied claim is $0.00. This figure does not include an additional $3.2 million in requests for payments of administrative claims that are on the docket (as opposed to being filed as proofs of claim).

12. Given all of my duties and responsibilities, the progress my Professionals and I have made and the magnitude of the asserted Administrative and Priority Class Claims, I need additional time to evaluate and object to Claims. My Professionals and I are continuing to work through the process of evaluating the Administrative and Priority Class Claims for the purpose of allowance or objection, but perhaps more importantly, to determine the realistic pool of Allowed Administrative Claims before I can determine if the funding of the Combined Reserve is sufficient to allow for payment to holders of Allowed Administrative Claims (as they become Allowed), while continuing to reserve for unresolved Administrative Claims given the disparity between the funding in the Combined Reserve and the asserted Administrative Claims.

13. As has been noted previously, absent a significant reduction in the asserted Administrative Claims and meaningful recoveries added to the Shared Proceeds Pool, under the distribution Waterfall Recovery set forth in the Plan, it is unlikely that Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims (Class 1) or Allowed Other Secured Claims (Class 2) will be paid in full. To the extent that I am only able to make a pro rata distribution on account of Allowed Administrative Claims, I will file a motion seeking appropriate relief to do so.

14. Extending the Claims Objection Bar Date is in the best interests of all stakeholders. The extension sought will afford my Professionals and me an opportunity to make more fully informed decisions concerning the resolution of pending Claims, in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: August 20, 2026

*/s/ Michael Goldberg*
By: Michael Goldberg
In his capacity as Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) and 73 affiliated debtors

# EXHIBIT C

| Source | Collections From Effective Date (9/29/2023-6/30/2026) |
|---|---|
| Asset Sales | $10,460,000 |
| Causes of Action (§547) | $36,076,000 |
| Causes of Action (§542) | $0 |
| Causes of Action (Other) | $55,930,000 |
| Credit Cards: Receivables & Reserve Returns | $19,543,000 |
| Insurance: Bond & Collateral Returns | $42,515,000 |
| Interest | $2,341,000 |
| Other[1] | $15,878,000 |
| Tax: Refunds & Overpayments | $20,921,000 |
| Vendors: Rebates and Refunds | $16,516,000 |
| | |
| **Total** | **$220,180,000** |

[1] Includes, among other things, recoveries of Canadian refunds, utility deposits, restitution payments and unclaimed property.

# EXHIBIT D

| Claimants | Plan Class | Payments From Effective Date (9/29/2023-6/30/2026) |
|---|---|---|
| Administrative & Priority Class Claims | | |
| Administrative Claims | Unclassified | $30,000 |
| Other Priority Claims | 1 | $0 |
| Other Secured Claims | 2 | $0 |
| DIP Claims & FILO Claims | 3 & 4 | $188,147,000 |
| **Subtotal** | | **$188,177,000** |
| Plan Administrator Expenses | | |
| Bank Fees | N/A | $1,773,000 |
| Bankruptcy Counsel | N/A | $5,961,000 |
| Claims Agent Fees | N/A | $1,578,000 |
| Contingent, Legal and Consulting Fees | N/A | $3,995,000 |
| Lease Deposit Return | N/A | $947,000 |
| Other | N/A | $781,000 |
| Outstanding Checks & Payments Turned Over to Plan Administrator | N/A | $3,433,000 |
| Plan Administrator & Staff Expenses | N/A | $8,410,000 |
| Tax Compliance Fees | N/A | $2,224,000 |
| Tax Counsel | N/A | $2,648,000 |
| Tax Payments Canada & Other | N/A | $1,244,000 |
| US Trustee Fees | N/A | $2,159,000 |
| Workers Compensation Funding | N/A | $4,350,000 |
| **Subtotal** | | **$39,503,000** |
| **Total** | | **$227,680,000** |