Order Filed on August 31, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Ed Corma, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |

**STIPULATION AND CONSENT ORDER**
**BETWEEN THE PLAN ADMINISTRATOR, SAFETY**
**NATIONAL CASUALTY CORPORATION & DARDANA HALIMI**

The relief set forth on the following pages, numbered two (2) through ten (10), is hereby **ORDERED**.

**DATED: August 31, 2026**

Honorable Vincent F. Papalia
United States Bankruptcy Judge

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained at https://restructuring.ra.kroll.com/bbby.

This stipulation and consent order (the "Stipulation") is made by and between Dardana Halimi (the "Claimant"), Safety National Casualty Corporation ("Safety National") and Michael Goldberg, in his capacity as the Plan Administrator (the "Plan Administrator") to 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) and affiliated Debtors (the "Debtors" or the "Wind-Down Debtors").[2] Claimant, Safety National and the Plan Administrator, by and through their undersigned counsel, shall be collectively referred to herein as the "Parties" or individually as a "Party."

**RECITALS**

A. Claimant alleges that she sustained personal injuries (the "Claimant's Claims") on September 20, 2020 at a store operated by Debtor Bed Bath & Beyond., Inc. ("BBB") located at 620 Sixth Avenue, New York, New York (the "Incident"). The Wind-Down Debtors, Safety National and the Plan Administrator dispute the Claimant's Claims.

B. On May 19, 2021, Claimant commenced a civil action against BBB, in the Supreme Court of the State of New York, County of New York, assigned Index No.: 154918/2021 (the "State Court Lawsuit").

C. On April 23, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

---

2 Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to 20230930-DK-Butterfly, Inc. [Filing ID No. 230921001833 DOS ID 315602].

The cases are jointly administered under the lead case, *In re Bed Bath & Beyond, Inc.*, et al., Case No. 23-13359 (Bankr. D. NJ) (VFP).[3]

D. On May 31, 2023, the Court entered its *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, Rejection Damages Bar Date, and Administrative Claims Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 584] (the "Bar Date Order"). The Bar Date Order established July 7, 2023, as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "Bar Date").

E. On May 8, 2023, Claimant filed a proof of claim against BBB pursuant to which she asserted a claim in the amount of $30,000,000 for alleged damages arising from the Incident, which was assigned Claim Number 417 (the "Claim 417"). On May 15, 2023, Claimant also filed a proof of claim against BBB and Bed, Bath & Beyond of Manhattan, Inc. pursuant to which she asserted a claim in the amount of $30,000,000 for alleged damages arising from the Incident, which was assigned Claim Number 1280 ("Claim 1280"). (Claim 417 and Claim 1280 are the "Proofs of Claim"). Claim 1280 was subsequently expunged.

F. On September 14, 2023, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor*

3 Unless otherwise indicated, docket references in this Stipulation refer to the lead case docket.

*Affiliates* [Docket No. 2172] (the "Confirmation Order").[4] The Effective Date of the *Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* [Docket No. 2160] (the "Plan") occurred on September 29, 2023 [Docket No. 2311], and the Plan Administrator was appointed pursuant to the terms of the Plan.

G. On the Effective Date, the Plan Administrator became the sole representative of the Debtors and assumed responsibility for, *inter alia*, resolving claims, performing claims reconciliation, and objecting to claims. Pursuant to the Plan, "Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, in consultation with the DIP Agent or FILO Agent, shall have the sole authority to File and prosecute objections to Claims, and the Wind-Down Debtors shall have the sole authority, in consultation with the DIP Agent or FILO Agent, to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court." Plan, Article IV, at § B.

[4] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Confirmation Order.

H. Pre-petition, Safety National Casualty Corporation ("Safetv National") provided general liability insurance coverage to Debtors pursuant to certain insurance policies and related documents (the "Safety National Insurance Policies") subject to a $1 Million Self-Insured Retention Limit (the "SIR").

I. Following the Effective Date, Claimant reached out the Safety National in order to seek recovery for Claimant's Claims from the Safety National Insurance Policies. Following good faith negotiations, Safety National and Claimant have entered into a settlement agreement whereby, in relevant part, Safety National shall remit certain funds to Claimant (the "Settlement Payment") in exchange for a release and dismissal of the State Court Lawsuit (the "Settlement Agreement") with prejudice. Claimant has agreed to not seek recovery from the Debtors' Estates on account of Claimant's Claims and or the Proofs of Claim, and that her Proofs of Claim be disallowed upon receipt of the Settlement Payment in accordance with the Settlement Agreement. Furthermore, Safety National has agreed to waive and release any and all claims, causes of actions and/or rights to recovery, reimbursement and/or indemnification and any and all defense costs, fees and/or expenses related thereto (whether arising under the Safety National Insurance Policies and the SIR or otherwise) against the Debtors and their estates, the Wind-Down Debtors and their estates and the Plan Administrator related to Claimant's Claims, the State Court Lawsuit, the Proofs of Claim, the Settlement Agreement/or Settlement Payment.

J. The Parties have conducted good faith negotiations with respect to the Incident and the Claimant's Claims, which the Parties desire to resolve on the terms set forth herein.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AND UPON COURT APPROVAL OF THIS STIPULATION, IT IS ORDERED THAT:**

1. The Parties hereby stipulate and agree that the Plan Injunction shall be modified to permit Claimant to dismiss the State Court Lawsuit with prejudice following consummation of the Settlement Agreement with Safety National and receipt of the Settlement Payment from Safety National (the "Injunction Modification"). The Plan Injunction is not lifted for any other purpose. Should the Settlement Agreement with Safety National fail to be consummated for any reason: (a) the Injunction Modification is null and void and the Plan Injunction shall remain fully in effect unless and until Claimant obtains an order from the Bankruptcy Court modifying it, which the Plan Administrator reserves his rights to oppose, and (b) this Stipulation and the Settlement Agreement (and all communications related thereto) shall not be admissible as evidence by Claimant in support of any application to the Bankruptcy Court lift or modify the Plan Injunction.

2. Counsel to Claimant shall notify the Plan Administrator in writing by email within 5 business days of the receipt of the payment of the Settlement Payment to Claimant to confirm that the Settlement Payment has been made in accordance with the Settlement Agreement (the "Settlement Payment Confirmation"). The Plan Administrator and the Debtors' claims agent are authorized and directed to expunge the Proofs of Claim upon presentation of the Settlement Payment Confirmation without further notice to or approval from the Bankruptcy Court.

3. This Stipulation resolves all claims, demands, and causes of action that Claimant has filed or could file against the Debtors and their estates, the Wind-Down Debtors and their estates and the Plan Administrator. Effective upon receipt of the Settlement Payment in accordance

with the Settlement Agreement, Claimant releases any and all claims, demands and causes of action of any nature whatsoever (whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown) against the Debtors and their estates, the Wind-Down Debtors and their estates and the Plan Administrator (and their respective subsidiaries, affiliates, managed entities, directors, officers, employees, attorneys, agents, insurer(s), third party administrators under any insurance policies, and their successors and assigns (the "Released Parties") that are held by Claimant, on Claimant's own behalf and on behalf of Claimant's heirs, administrators, personal representatives, executors, assigns, attorneys including but not limited to all claims related to Claimant's Claims, the State Court Lawsuit, the Incident, and the Proofs of Claim (the "Released Claims"). Nothing herein shall have any effect on any Settlement Agreement between Safety National and Claimant. The Released Claims contemplated by this paragraph are expressly conditioned upon Safety National's payment to Claimant of the Settlement Payment.

4. Safety National waives and releases any and all claims, causes of actions and/or rights to recovery, reimbursement and/or indemnification and any and all defense costs, fees and/or expenses related thereto (whether arising under the Safety National Insurance Policies and the SIR or otherwise) against the Debtors and their estates, the Wind-Down Debtors and their estates and the Plan Administrator related to Claimant's Claims, the State Court Lawsuit, the Proofs of Claim, the Settlement Agreement/or Settlement Payment.

5. The terms of this Stipulation shall be immediately effective and enforceable upon entry by the Bankruptcy Court.

6. Nothing in this Stipulation shall be construed as an admission of liability or wrongdoing, and the Debtors, Wind-Down Debtors, Safety National, and the Plan Administrator deny any and all liability and wrongdoing. This Stipulation merely represents a complete compromise of the Claimant's Claims in order to avoid further litigation.

7. Nothing in this Stipulation shall be construed as an interpretation, position, or holding regarding Debtors, Wind-Down Debtors, Safety National, and the Plan Administrator's rights and/or obligations related to or under the Safety National Insurance Policies or any terms thereunder. Rather, this Stipulation is entered into by all Parties as good faith settlement and shall have no bearing or consequence related to any other matter related to Debtors, Wind-Down Debtors, Safety National, the Plan Administrator, or any other claim holder that is not the Claimant.

8. The Parties shall bear their own respective attorneys' fees and costs arising from, among other things, this Stipulation, the Incident, the Proofs of Claim, the Settlement Agreement, the Settlement Payment, the State Court Lawsuit and the Claimant's Claims or the actions of respective counsel to each of the Parties in connection with this matter and all matters related to the investigation, litigation and settlement of the Claimant's Claims.

9. This Stipulation (and the Settlement Agreement to which the Plan Administrator is not a party) contain the entire agreement by and between the Parties with respect to the subject matter hereof, including the settlement, resolution, and liquidation of the State Court Lawsuit, the

Incident, Claimant's Claims, and the Proofs of Claim and supersedes any and all prior agreements and undertakings, whether written or oral, between the Parties relating to the subject matter hereof.

10. This Stipulation is intended by the Parties to binding upon: (a) the Plan Administrator's, the Debtors', and the Wind-Down Debtors' respective successors, agents, assigns, including bankruptcy trustees and estate representatives and (b) Claimant's heirs, administrators, personal representatives, executors, assigns, attorneys, and/or anyone claiming by or through Claimant.

11. The undersigned represent and warrant that they have full authority to execute this Stipulation on behalf of the respective Parties and that the respective Parties have full knowledge of, and have consented to, this Stipulation.

12. This Stipulation may be executed in counterparts and/or by facsimile or other electronic signature, and each such counterpart together with the others shall constitute one and the same instrument.

13. Nothing in this Stipulation, nor any actions taken pursuant hereto, shall constitute admissible evidence in any court against any party in any action or proceeding other than one to enforce the terms of this Stipulation and Order.

14. The Parties agree that each of them has had a full opportunity to participate in the drafting of this Stipulation and any claimed ambiguity shall be construed neither for nor against any of the Parties.

15. This Stipulation shall not be modified, altered, amended, or supplemented except by a writing executed by the Parties or their authorized representatives.

16. The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation of this Stipulation, and the Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Edward A. Corma*
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Bradford J. Sandler, Esq.
Ed Corma, Esq.
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: rfeinstein@pszjlaw.com
bsandler@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Plan Administrator*

**HUSCH BLACKWELL LLP**

*/s/ Caleb Holzaepfel*
Caleb Holzaepfel
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Telephone:423.266.5500
Facsimile:423.266.5499
Email:
caleb.holzaepfel@huschblackwell.com

*Attorneys for Safety National Casualty Corporation*

**ROSENBERG, MINC, FALKOFF & WOLFF, LLP**

/s/
Robert H. Wolff, Esq.
Atty Bar # 00124/1986
Attorneys for Claimant
DARDANA HALIMI
122 East 42nd Street, Suite 3800
New York, New York 10168
(T) (212) 697-9280
(F) (212) 697-9284
rwolff@rmfwlaw.com

*Attorneys for Dardana Halimi*